37. Recently, researchers at the National Institute of Mental Health published a report on atypical antipsychotics, including Seroquel, which found that the majority of patients in each group discontinued their assigned treatment owing to inefficacy or intolerable side effects or for other reasons and that the atypicals, including Seroquel, were no more effective than the older, cheaper, and still available conventional antipsychotic perphenazine. This report echoes the conclusions reported in the *British Medical Journal* in 2000.

38. In January 2006, AstraZeneca was notified that the U.S. Attorney's Office in Los Angeles, California, had commenced an investigation of AstraZeneca's promotional activities related to its products, including Seroquel.

39. Despite AstraZeneca's knowledge regarding the safety risks its drug posed, they continued to ignore, downplay, sidestep, and delay the dissemination of open and frank information that patients and physicians needed to avoid the life-threatening injuries that Seroquel could cause. As a result of this callous disregard for human safety in the name of profits, Plaintiffs have suffered the injuries, damages, and losses complained of herein.

## V. FRAUDULENT CONCEALMENT AND APPLICATION OF THE DISCOVERY RULE

40. The nature of Plaintiffs' injuries and their relationship to Seroquel use were inherently undiscoverable; and, consequently, the discovery rule should be applied to toll the running of the statute of limitations until Plaintiffs knew or through the exercise of reasonable care and diligence should have known of the existence of their claims against AstraZeneca. Plaintiffs did not discover, and through the exercise of reasonable care and due diligence, could not have discovered, their injuries earlier.

41. Further, Plaintiffs did not have knowledge of facts that would lead a reasonable, prudent person to make inquiry to discover Defendants' tortious conduct. Under appropriate application of the "discovery rule," Plaintiffs' suit was filed well within the applicable statutory limitations period.

- 13 -

42. AstraZeneca affirmatively and intentionally lulled, induced, and otherwise prevented Plaintiffs from discovering the existence of their various causes of action against AstraZeneca through its fraudulent acts, omissions, concealments, and suppression of the dangers associated with its drug and other information necessary to put Plaintiffs on notice. Plaintiffs have therefore been kept in ignorance of vital information essential to the pursuit of their claims, without any fault or lack of diligence on their part. Plaintiffs could not reasonably have discovered the fraudulent nature of AstraZeneca's conduct. Accordingly, AstraZeneca is estopped from relying on any statute of limitations to defeat any of Plaintiffs' claims.

## VI.   CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF

#### NEGLIGENCE

43. Plaintiffs hereby incorporate by this reference all other paragraphs of this Complaint as if fully set forth herein at length.

44. AstraZeneca is the designer, manufacturer, and seller of the drug Seroquel.

45. When placed in the stream of commerce in 1997, Seroquel was not accompanied by adequate warnings regarding the significant blood sugar related risks associated with the ingestion of Seroquel, particularly diabetes mellitus. The warnings given by the Seroquel Defendants did not accurately reflect the existence of the risk, let alone the incidence, symptoms, scope, or severity of such injuries.

46. AstraZeneca failed to perform adequate testing concerning the safety of the drug Seroquel in that adequate testing would have shown that Seroquel poses serious risk of blood sugar related problems which would have permitted adequate and appropriate warnings to have been given by AstraZeneca to prescribing physicians, health insurance companies, the various states' formularies, and the consuming public.

47. AstraZeneca had a duty to exercise reasonable care in the design, manufacture, sale, and distribution of the drug, Seroquel, including a duty to assure that the product did not cause users to suffer from unreasonable, dangerous side effects when used alone or in foreseeable combination with other drugs.

48. AstraZeneca was negligent in the design, manufacturing, testing, advertising, marketing, promotion, labeling, warnings given, and sale of Seroquel in that, among other things, the Seroquel Defendants:

    a. failed to provide Americans a warning for diabetes that AstraZeneca concluded the Japanese were entitled to;

    b. failed to use reasonable care to design an atypical anti-psychotic that was safe for its intended and foreseeable uses, not defective, and not unreasonably dangerous;

    c. failed to use reasonable care in designing and manufacturing Seroquel as to make it safe for its intended uses, not defective, and not unreasonably dangerous;

    d. recklessly, falsely, and deceptively represented or knowingly omitted, suppressed, and/or concealed material facts regarding the safety and efficacy of Seroquel from

    prescribing physicians, the medical community at large, health insurers and state formularies;

e. negligently marketed Seroquel despite the fact that risks of the drug were so high and the benefits of the drug were so speculative that no reasonable pharmaceutical company, exercising due care, would have done so;

f. failed to use reasonable care to make reasonable tests, inspections, drug trials, and/or evaluations necessary to discover such defects and unreasonably dangerous conditions associated with AstraZeneca's drug, Seroquel;

g. failed to use reasonable care to investigate and/or use known and/or knowable reasonable alternative designs, manufacturing processes, and/or materials for Seroquel;

h. failed to use reasonable care to warn plaintiffs of dangers known and/or reasonably suspected by AstraZeneca to be associated with Seroquel;

i. failed to timely use reasonable care to discover the dangerous conditions or character of AstraZeneca's drug, Seroquel;

j. failed to use due care in the design, testing and manufacturing of Seroquel so as to prevent the aforementioned risks, including, *inter alia*, diabetes mellitus, and the serious complications stemming therefrom including seizures, coma, death, liver disease, kidney disease, blindness, and other serious side effects including rapid weight gain, pancreatitis, urinary frequency and hyperglycemia;

k. failed to issue proper warnings regarding important possible adverse side effects associated with the use of Seroquel and the comparative severity and duration of such adverse effects, despite the fact that the Seroquel Defendants knew, or should have known, that numerous cases reports, adverse event reports, and other data that associated Seroquel with diabetes mellitus, and the serious complications stemming therefrom including seizures, coma, death, liver disease, kidney disease, blindness, and other serious side effects including rapid weight gain, pancreatitis, urinary frequency and hyperglycemia;

l. failed to conduct adequate pre-clinical testing and post-marketing surveillance to determine the safety of Seroquel;

m. failed to provide adequate training and information to medical care providers for the appropriate use of Seroquel;

n. failed to warn plaintiffs and healthcare providers, prior to actively encouraging and promoting the sale of Seroquel, either directly, or indirectly, orally, in writing, or other media about the following:

    (1) The need for a battery of diagnostic tests to be performed on the patient prior to ingesting Seroquel to discover risk factors and help prevent potentially fatal side effects;

  (2) The need for comprehensive, regular medical monitoring to ensure early discovery of hyperglycemia, diabetes, weight gain, hyperlipidemia, hypertriglyceridemia, pancreatitis, and other potentially fatal side effects;

  (3) The adverse side effects associated with the use of Seroquel, including, but not limited to, diabetes mellitus; and/or

  (4) The possibility of becoming disabled as a result of using Seroquel; and,

 r. failed to timely develop and implement a safer, alternative design of Seroquel, which would meet the same need without the known risks associated with Seroquel and which would not have made the product too expensive to maintain its utility; and

 s. failed to carry out the ongoing duty of pharmacovigilance, including, to continually monitor, test, and analyze epidemiology and pharmacovigilance data regarding safety, efficacy and prescribing practices; to review worldwide adverse event reports, worldwide medical literature and to monitor the Seroquel Defendants own warnings in other countries (including Japan) and learning of or failing to learn of a signal and an association between Seroquel and diabetes, and related health problems, and failing to inform doctors, regulatory agencies, and the public of new safety and efficacy information it learns, or should have learned, about Seroquel once that information becomes available to it.

49. Despite the fact that the Seroquel Defendants knew or should have known that Seroquel caused unreasonable, dangerous side effects which many users would be unable to remedy by any means, the Seroquel Defendants continued to market Seroquel to consumers, including plaintiffs, when there were safer alternative methods available.

50. AstraZeneca knew or should have known that consumers such as plaintiffs would foreseeably suffer injury as a result of AstraZeneca's failure to exercise ordinary care as described above.

51. As a direct and proximate result and legal result of the AstraZeneca's failure to supply appropriate warnings for the drug, Seroquel, and as a direct and legal result of the negligence, carelessness, other wrongdoing and action of the Seroquel Defendants described herein, the Plaintiffs ingested Seroquel and suffered significant injury.

52. AstraZeneca's negligence was a proximate cause of the harm suffered by the plaintiffs.

53. As a direct and proximate cause and legal result of the AstraZeneca's negligence, carelessness, and the other wrongdoing and actions of the Seroquel Defendants as described herein, plaintiffs

have suffered physical injury, medical expense, future medical expense, and have incurred financial expenses and have suffered economic losses.

## SECOND CLAIM FOR RELIEF

### STRICT PRODUCTS LIABILITY – FAILURE TO WARN

54. Plaintiffs hereby incorporate by this reference all other paragraphs of this Complaint as if fully set forth herein at length.

55. Seroquel was marketed to physicians and was marketed and advertised directly to the consuming public. Seroquel, as manufactured and supplied to healthcare professionals and the general public, was unaccompanied by proper warnings regarding the serious risks of ingesting the drug. The information provided to consumers did not reflect Defendants' knowledge that Seroquel was not safe and effective as indicated in its aggressive marketing campaign, nor were consumers made aware that ingesting the drug could result in serious injury, pain and diabetes and/or death. Additionally, Defendants committed overt acts and issued doublespeak in order to downplay the truth which began to surface. This information began to emerge in the form of adverse event reports, medical studies, and the 2003 FDA labeling change mandate. Any attempts by Defendants to satisfy its duty to warn were compromised by the backdrop of the Seroquel Defendants' actions, including but not limited to its 2002 diabetes warning in Japan. As part of the aggressive marketing of Seroquel, sales representatives actively detailed and promoted the drug to physicians, pharmacists and other health care providers by understating, denying and or trivializing risks, overstating benefits, promoting indications outside of the label, and generally diluting the import of the label with aggressive promotion techniques to gain market share. Moreover, defendant improperly misinformed the medical community by intentionally disseminating false and misleading information into the medical literature that understated or minimized the risks and over-stated benefits, and promoted the product for off-label use.

56. Full and proper warnings that accurately and fully reflected the risks of serious injury and/or sudden death due to the ingestion of Seroquel should have been disclosed by Defendants. Plaintiffs were prescribed Seroquel by physicians who utilized the drug in a manner reasonably foreseeable by Defendants. Seroquel was expected to and did reach Plaintiffs without substantial change in its condition as tested, manufactured, designed, labeled, packaged, marketed and distributed. Plaintiffs were not aware of, and could not have reasonably discovered, the unreasonably dangerous nature of Seroquel.

57. The marketing defect resulting from such inadequate and improper warnings, instructions and dissemination of information to the medical community and plaintiffs directly, was the producing cause and legal and direct result of the failure to warn consumers of the defective condition of Seroquel, as manufactured and/or supplied by the Seroquel Defendants and its representatives, Plaintiffs have suffered severe, permanent and disabling injuries and related damages.

## THIRD CLAIM FOR RELIEF

### STRICT PRODUCTS LIABILITY – DESIGN DEFECT

58. Plaintiffs hereby incorporate by this reference all other paragraphs of this Complaint as if fully set forth herein at length.

59. Seroquel was placed into the stream of commerce by the Seroquel Defendants, acting through authorized agents, servants, employees and/or representatives. Plaintiffs were prescribed Seroquel by Plaintiffs' physicians and used the drugs in a manner normally intended, recommended, promoted and marketed by the Seroquel Defendants. Seroquel failed to perform safely when used by ordinary consumers including plaintiffs, even when used as intended or in a reasonably foreseeable manner. Accordingly, Seroquel was defective in its design and was unreasonably danger in that its foreseeable risks exceeded the benefits associated with its design or formulation.

60. The Seroquel ingested by Plaintiffs was expected to and did reach Plaintiffs without substantial change in its condition as tested, manufactured, designed, labeled, packaged, marketed and distributed and plaintiff could not through the exercise of reasonable care, have discovered Seroquel's defects or perceived the danger of its use. Seroquel was defective in design or formulation in that its use posed a greater likelihood of injury than other available antipsychotic medications and was more dangerous than an ordinary consumer could reasonably foresee. As a result of their use of Seroquel, Plaintiffs suffered severe, permanent and disabling injuries and related damages.

## FOURTH CLAIM FOR RELIEF

### FRAUD AND INTENTIONAL MISREPRESENTATION

61. Plaintiffs hereby incorporate by this reference all other paragraphs of this Complaint as if fully set forth herein at length.

62. AstraZeneca through advertising, labeling, direct product detailing by sales representatives to the medical community, and other communications including letters to medical community, and medical literature disseminated made misrepresentations to physicians and the public, including Plaintiffs, about the safety and efficacy of Seroquel. Physicians and their patients, including Plaintiffs, justifiably relied on AstraZeneca's misrepresentations, and Plaintiffs were harmed as a result. Plaintiffs are entitled to recover damages for their injuries produced by AstraZeneca's misrepresentations. Physicians and their patients, including the Plaintiffs, relied on AstraZeneca's misrepresentations, and were harmed as a result. Plaintiffs are entitled to recover actual damages for their injuries as a result of the AstraZeneca's misrepresentations and fraud.

63. Defendants are in the business of manufacturing, marketing, distributing and/or selling these drugs. Through their advertising and through labels on their products, Defendants made misrepresentations to the public at large and specifically to Plaintiff and her physician.

64. Defendants breached their duty to Plaintiff under the RESTATEMENT (SECOND) OF TORTS § 402(B)(1965) regarding the misrepresentations set out above. Defendants represented the product to be safe to use. These were material misrepresentations of fact concerning the character, nature and dangerous propensities of the product manufactured, sold, and marketed by Defendants.

65. Plaintiff and their physicians justifiably relied upon the misrepresentations made by the Seroquel Defendants. Such conduct by the Seroquel Defendants proximately caused injuries and damages to Plaintiffs for which Plaintiffs now seek to recover damages.

### FIFTH CLAIM FOR RELIEF

#### NEGLIGENT MISREPRESENTATION

66. Plaintiffs hereby incorporate by this reference all other paragraphs of this Complaint as if fully set forth herein at length.

67. The Seroquel Defendants, in addition to knowing misrepresentations, made misrepresentations without any reasonable grounds for believing its statements to be true to Plaintiffs, other patients, and the medical and psychiatric communities.

68. The Seroquel Defendants, through its misrepresentations, intended to induce justifiable reliance by Plaintiffs, other patients, and the medical and psychiatric communities.

69. The Seroquel Defendants, through its marketing campaign and communications with treating physicians or psychiatrists, was in a relationship so close to that of Plaintiffs and other patients that it approaches and resembles privity.

70. The Seroquel Defendants owe a duty to the medical and psychiatric communities, Plaintiffs, and other consumers, to conduct appropriate and adequate studies and tests for all its products, including Seroquel, and to provide appropriate and adequate information and warnings.

71. The Seroquel Defendants failed to conduct appropriate or adequate studies for Seroquel. The Seroquel Defendants failed to exercise reasonable care by failing to conduct studies and tests of Seroquel.

72. As a direct and proximate result of the Seroquel Defendant's negligent misrepresentations, Plaintiffs developed diabetes, pancreatitis and/or life threatening complications therefrom and were caused to suffer severe and permanent injuries, pain, and mental anguish, including diminished enjoyment of life, and fear of developing other harmful conditions including, but not limited to, pancreatitis, diabetic ketoacidosis, and diabetic coma. The Seroquel Defendants are liable to Plaintiffs jointly and severally for all general, special and equitable relief to which Plaintiff is entitled by law.

### SIXTH CLAIM FOR RELIEF

### BREACH OF EXPRESS WARRANTY

73. Plaintiffs hereby incorporate by this reference all other paragraphs of this Complaint as if fully set forth herein at length.

74. The Seroquel Defendants are merchants and/or sellers of Seroquel. Defendants sold Seroquel to consumers, including Plaintiffs, for the ordinary purpose for which such drugs are used by consumers. The Seroquel Defendants made representations to Plaintiffs about the quality or characteristics of Seroquel by affirmation of fact, promise and/or description.

75. The representations by the Seroquel Defendants became part of the basis of the bargain between Defendants and Plaintiffs. Seroquel did not comport with the representations made by Defendants in that it was not safe for the use for which it was marketed. Plaintiffs have notified Defendants that Defendants has breached its express warranties. This breach of warranty by Defendants was a proximate cause of the injuries and monetary loss suffered by Plaintiffs.

### SEVENTH CLAIM FOR RELIEF

### BREACH OF IMPLIED WARRANTY

76. Plaintiffs hereby incorporate by this reference all other paragraphs of this Complaint as if fully set forth herein at length.

**1. Warranty of Merchantability**

77. The Seroquel Defendants are merchants and/or sellers of Seroquel. Plaintiffs purchased Seroquel as placed in the stream of commerce by the Seroquel Defendants and used it for the ordinary purpose for which such drugs are used by consumers. At the time it was purchased by Plaintiffs, Seroquel was not fit for the ordinary purpose for which such drugs are used because it was not manufactured, designed or marketed in a manner to accomplish its purpose safely. The Seroquel Defendants' breach of its implied warranty of merchantability was a direct and proximate cause of Plaintiffs' injuries, diseases, and damages complained of herein.

    **2.  WARRANTY OF FITNESS**

78. The Seroquel Defendants placed Seroquel into the stream of commerce with the knowledge that Plaintiffs were purchasing said drugs for a particular purpose. Further, Defendants knew, or should have known, that Plaintiffs were relying on Defendants' skill or judgment to select goods fit for Plaintiffs' purpose.

79. The Seroquel Defendants delivered goods that were unreasonably dangerous and unfit for Plaintiffs' particular purpose, in that they were defectively designed and did not come with adequate warnings.

80. The Seroquel Defendants' failure to select and sell a product which was reasonably safe for its intended use was a direct and proximate cause of Plaintiffs' injuries, diseases, and damages complained of herein.

## EIGHTH CLAIM FOR RELIEF

### UNJUST ENRICHMENT

81. To the detriment of Plaintiffs the Seroquel Defendants have been, and continue to be, unjustly enriched as a result of the unlawful and/or wrongful collection of, inter alia, payments for Seroquel.

82. Plaintiffs were injured by the cumulative and indivisible nature of the Seroquel Defendants' conduct. The cumulative effect of the Seroquel Defendants' conduct directed at physicians and consumers was to artificially create demand for Seroquel at an artificially inflated price. Each aspect of the Seroquel Defendants' conduct combined to artificially create sales of Seroquel.

83. The Seroquel Defendants have unjustly benefited through the unlawful and/or wrongful collection of, inter alia, payments for Seroquel and continue to so benefit to the detriment and at the expense of Plaintiffs.

84. Accordingly, Plaintiffs seek full disgorgement and restitution of the Seroquel Defendants' enrichment, benefits and ill-gotten gains acquired as a result of the unlawful and/or wrongful conduct alleged herein.