# EXHIBIT "A"

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | | |
|---|---|---|
| **In Re:** | § | **Case No. 6:06-md-1769-ACC-DAB** |
| | § | |
| **SEROQUEL PRODUCTS** | § | |
| **LIABILITY LITIGATION** | § | |
| | § | |
| **MDL 1769** | § | |
| ——————————————————— | § | |
| | § | |
| **ALL UNNAMED PLAINTIFFS** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **ASTRAZENECA, LP,** | § | |
| **ASTRAZENECA PHARMACEUTICALS,** | § | |
| **LP, ASTRAZENECA, AB,** | § | |
| **ASTRAZENECA, PLC and** | § | |
| **ASTRAZENECA, UK LIMITED** | § | |

### ORDER PERTAINING TO PRESERVATION OF EVIDENCE AND PRODUCTION PROTOCOL

The following protocol shall be followed for the format of production and preservation of

electronic data by AstraZeneca, LP and AstraZeneca Pharmaceuticals, LP and their domestic

subsidiaries, and affiliates (collectively "defendants").

### A.  Scope

1.      Except as specifically limited herein, the procedures set forth below and protocols

govern the production and preservation of discoverable electronic information (as defined

below) by defendants during the pendency of this litigation.

2.      Except as otherwise set forth herein, the procedures herein and protocols apply

solely to defendants' documents and data existing or subject to being reproduced in electronic

form (in the broadest sense consistent with the Federal Rules of Civil Procedure and the laws of

- 1 -

Delaware, Florida, Missouri, New Jersey and New York), including e-mail, electronic peer-to-peer messages, word processing documents, spreadsheets, electronic slide presentations, databases, and other electronic data items, now existing or hereafter created, containing information relating to facts at issue in the litigation ("discoverable electronic information").

## B.  Documents & Data to Be Produced

1.  Electronic Files, Documents, & Databases

**Emails.**  Electronic mail ("email") containing discoverable electronic information, together with meta-data, as addressed below, associated with each such email, shall be produced in electronic form, in the most useful, usable and searchable format.  Back-up and archival copies of email shall be maintained in accordance with section C, *infra,* pending determination of restoration procedures and protocols discussed in section D.2, *infra*.  Defendants shall take steps intended to prevent any modifications, alterations, or additions to emails from their original state.

**"Office" documents.**  Word processing files, computer presentations (*e.g.*, PowerPoint slides), stand alone databases (*e.g.*, Access), spreadsheets (*e.g.*, Excel) containing discoverable electronic information, together with the meta-data associated with each such document, shall be produced in their "native format" (eg. the form that the defendants most commonly used them in), otherwise in the most useful, usable and searchable format, and on standard media.  Back-up and archival copies of documents (including final versions, related versions, and drafts) shall be maintained in accordance with section C, *infra,* pending determination of restoration procedures and protocols discussed in section D.2., *infra*. Defendants shall take steps intended to prevent any modification, alteration, or addition as is necessary to create a comprehensive collection of such documents in their original state.

**Databases.**  The Defendants shall serve and file a list identifying all databases containing discoverable electronic information together with the available meta-data associated with each such database, without waiving any privilege or the right to review and redact any privileged or other non-discoverable information, as used and maintained in the ordinary course of business (including any forms and variations thereof) within _____ days of the entry of this Order.  To the extent reasonably practicable, production shall include without limitation the software, manuals and computer readable code associated with any reports, file formats, forms, queries, or structure for any databases produced as used and maintained in the ordinary course of business.  Back-up and archival copies of all databases containing discoverable information, regardless of whether identified in attachment D, shall be maintained in accordance with section C, *infra,* pending negotiation of restoration procedures and protocols discussed in section D.2, *infra*.  Defendants shall take steps intended to prevent any modification, alteration, or deletion of the data in such databases but may continue to use such databases and add data to the extent that it does not cause data to be deleted.  If plaintiffs subsequently discover additional databases not included on attachment D, they may request production of such consistent with the procedures outlined herein and defendants shall not unreasonably refuse production.

**Other.**  To the extent any other documents containing discoverable electronic information are identified, the parties shall confer to determine the manner of production of such documents and any meta-data associated therewith.  Defendants shall not unreasonably refuse production of such documents.  Back-up and archival copies of such other documents (including final versions, related versions, and drafts) shall be maintained in accordance with section C, *infra,* pending determination of restoration procedures and protocols discussed in section D.2, *infra*.  Defendants shall take steps

- 3 -

intended to prevent any modification, alteration, or addition as is necessary to create a comprehensive collection of such documents in their original state.

**Software.**  Software and operating manuals shall be produced by defendants to enable plaintiffs to access and view any discoverable electronic information produced pursuant to this Order.  Software shall mean proprietary software or any other software not commercially available for purchase at retail stores in the United States (e.g. Microsoft Office Suite or Corel Office Solutions).  A reasonable number of copies of such software and operating manuals shall be made available for use by the parties receiving the discovery during the pendency of the litigation. Plaintiffs shall not use software produced by defendants for any purpose, commercial or otherwise, other than the prosecution of this litigation.  At the conclusion of the litigation, such software shall be returned to defendants.

2.         System-Level Meta-data

The parties are to confer within ____ days of the entry of this order to identify any system-level meta-data to be produced and file an agreed list of same within ____ days or competing lists if no agreement is reached.  Such data may include back-up and archival data, computer system data and computer access data.

3.         Redaction Software

Defendants shall describe to plaintiffs the procedures and software used to redact any documents or data existing in electronic form such that plaintiffs can identify how information was redacted and can obtain and or evaluate the software.  Additionally, the original form of any redacted data shall be preserved by the defendants so that it can potentially be reviewed if the propriety of a redaction is at issue.

### C.  Preservation of Electronic Data

1.      During the pendency of this litigation, defendants shall maintain electronic document and data retention policies designed to ensure the retention of defendants' discoverable electronic information.  In connection therewith, defendants shall (i) maintain or, as necessary, create back-up procedures designed to back up all network storage devices potentially containing discoverable electronic information; (ii) suspend the routine or automatic deletion of discoverable electronic information, including the automatic deletion or overwriting of electronic mail or removal of unused electronic data and files; (iii) secure the hard drives (or mirror image back-ups of such hard drives) of all computers (whether owned by defendants or their employees) potentially containing discoverable electronic information that are not backed up in the ordinary course of business, before the reformatting, redeployment, or disposal of such hard drives; and (iv) collect and retain all company emails and emails from personal accounts whenever they were used for business (eg., AOL, hotmail, Gmail, yahoo, etc.) that contain potentially discoverable information.  Items (i) and (ii), *supra,* are effective immediately.  Items (iii) and (iv), *supra,* shall be completed within _____ days of the entry of this Order.

The Court presumes that not all of the defendants' electronic media, programs and databases contain discoverable electronic data.  Only the defendants can define, initially, what is, what is not and what may be discoverable electronic information.  To potentially alleviate the requirements imposed by items (ii) and (iii), *supra,* the defendants shall provide lists to the Court and counsel describing (as needed or helpful), detailing and itemizing the following:

a.      a list of electronic data, databases, programs and applications (or any other medium) for which defendants contend that no potentially discoverable data is or was present on;

b.      a list of persons and titles for whom e-mails were sent to or received by (either on the defendants server or through personal email accounts) for which defendants contend that none of their emails contain potentially discoverable data; and

c.   a list of electronic data, databases, programs and applications (or any other medium) that contain potentially discoverable electronic data.

Defendants shall serve and file these lists within _____ days of the entry of this order. Defendants will comply with (i) – (iv), *supra*, inclusive, for all media identified by them pursuant to paragraph c, *supra*.  Upon stipulation signed by counsel for the plaintiffs and defendants, and filed herein, which identifies some or all of the electronic media or persons listed pursuant to paragraph "a" and "b", respectively, as to such designations the defendants can resume their normal electronic retention policies for such data as long as such data does not contain any discoverable information. Defendants may apply to have any electronic media excepted from this order at any time.

2.      Defendants will back up all their email and other computer information on backup storage media (*e.g.* hard drive(s), floppy disk(s), CD-ROM(s), JAZ cartridge(s) or otherwise).

3.      Defendants shall retain an independent consultant to assist it in storing e-mails that have been backed-up from its servers and emails to be collected and retained from personal email accounts.  Defendants shall implement a new retention policy for its e-mails that permits it to collect information from its servers without the need to maintain daily back-ups.  Defendants are to maintain this system until further Order from the Court or dismissal of this action.

4.      Defendants have been maintaining back-ups of certain other network servers likely to contain other discoverable information.  Defendants will retain backups of potentially relevant data, which back ups may be kept in the form normally stored in the regular course of business or on back-up tapes (e.g. DAT, DLT), Jaz cartridges, CD-ROMS or hard drives that are new or have been "wiped" clear of all data prior to accepting back-up data.

5.      The defendants may eliminate duplicate email and cloned email solely to the extent that all procedures for the determination of duplicates are discussed and agreed to in writing by the parties.  A reference to any deleted duplicate email must be maintained so that the receiving party can determine where all copies of the email were maintained.

6. A copy of all preserved electronic information shall be placed with an independent third party escrow agent. Parties shall confer to develop methods to audit the accuracy of production of electronic information using the copy of data preserved at the above mentioned escrow agent. Furthermore, the copy of data at the escrow agent shall serve as an off site backup.

7. All electronic information or data archived or backed up as part of a special back-up, whether due to system upgrade, transition planning, system migration, disaster recovery planning, or any other reason, that potentially contains discoverable electronic information shall be securely retained for the remainder of the litigation.

8. All current or legacy software and hardware necessary to access, manipulate, print, etc., discoverable electronic information that is either "live" or has been archived or backed up shall be securely retained for the remainder of the litigation. If necessary, the parties shall confer to develop procedures designed to minimize any undue hardship associated with the continued retention of such items.

9. Any existing or hereafter created "full" (as opposed to incremental) back-up tape or other back-up storage media (collectively, "back up tape") created on a monthly basis, as well as any full back-up tape created on a periodic basis greater than a month (*e.g.*, quarterly or yearly back-up tapes) that potentially contains discoverable electronic information shall be securely retained until January 31, 2007. No later than December 15, 2006, the parties shall confer concerning the disposition of back-up tapes and present to the Court no later than December 20, 2006, the parties' joint (or if not joint, competing) proposals for the continued treatment of such back-up tapes.

10. Defendants shall obtain certifications on behalf of all employees or independent contractors who (1) work at defendants' facilities for a duration longer than two weeks and (2) are reasonably believed to create, alter or access discoverable electronic information on their non-network storage devices (i.e., desktop hard drives, laptop hard drives, and home computer hard drives), that such devices and any back-up tapes thereof maintained by each such employee or

contractor have been searched for discoverable electronic information and any such data has been copied to a backed-up network storage device for the preservation of same. Defendants shall instruct such employees and contractors in the manner of copying such files so as to retain, without modification or alteration, all meta-data (file creation dates, modification dates, etc.) associated with the files at issue. Defendants shall on a semiannual basis have such employees and contractors that potentially possess discoverable electronic information certify that any newly created data has been copied to a secure, backed-up network storage device to ensure its preservation. The parties shall confer and submit a joint (or if not joint, competing) lists of search terms and procedures that all employees should be instructed to follow when searching for and copying discoverable electronic information within _____ days of the entry of this order ("Search Terms"). Defendants shall instruct their employees to utilize such procedures and search terms to locate, collect and store potentially discoverable electronic data within _____ days of the entry of this order.

11.     Defendants shall implement specific steps to monitor their employees' compliance with the preservation guidelines herein. To that end, the parties shall confer to develop specific procedures to effectuate such monitoring. Further, defendants shall conduct random audits of their employees' non-networked storage devices following receipt of the semiannual certifications required under paragraph C.10 herein. In connection with each semiannual audit, defendants shall search the non-networked storage devices of not less than 10 of their employees believed to possess discoverable electronic information to determine if any discoverable electronic information, not otherwise stored on a network storage device, exists on those employees' non-networked storage devices. If the results of such audits demonstrate substantial non-compliance with the preservation guidelines established herein (i.e., more than two files, in the aggregate, containing discoverable electronic information that were not copied to a network storage device are found on the non-networked storage devices reviewed during a given audit, or 20% of the non-networked storage devices audited during a given audit contain discoverable electronic information that had not been

otherwise copied to a network storage device), defendants shall report the same to plaintiffs within 14 days and the parties shall confer to implement any additional procedures needed to ensure the effective preservation of discoverable electronic information contained on non-networked storage devices. Defendants shall maintain records of any compliance audit undertaken in accordance with this paragraph. The reports of any compliance audit by defendants shall be securely retained by defendants in the event that such information may need to be submitted to the Court.

### D.  Identification of Responsive Electronic Data

1.      All electronic information in the possession of defendants' employees, agents, contractors and consultants must be reviewed for relevance and privilege. For the purposes of this section, possession is defined as existing on any computer that such employee, agent, contractor or consultant has access, whether at defendant's facilities or elsewhere. All relevant material shall be segregated and separated by user into custodial files. All email and electronic data (excluding databases) manually identified or segregated by defendant's employees, agents, contractors, or consultants as containing discoverable electronic information, as well as all electronic data existing within directories reasonably identified as being relevant to this litigation, shall be reviewed in their entirety by defendants for responsiveness and privilege, and thereafter such discoverable electronic information which is neither privileged nor otherwise protected shall be produced electronically in accordance with the guidelines herein.

2.      Within _____ days of the entry of this Order defendants shall produce a catalog or index of all back-up and archival copies of electronic data. The parties shall confer to identify those tapes likely to create a reasonably comprehensive representation of the discoverable electronic information contained on all archival and back-up media of defendants and determine to what extent back up and archival tapes may be restored. In selecting any back-up and archival tapes for

restoration, the parties shall endeavor to avoid the unnecessary restoration of duplicate or non-responsive data.

3.     The parties shall identify query or search terms designed to retrieve discoverable electronic data.  Within the same time period for agreeing to or submitting competing Search Terms under paragraph C.10, the parties will agree to the same list or a different list of search terms (or submit competing lists) to be used to minimize the burden associated with searching all electronic data collected including any data restored in accordance with the procedures herein (excluding databases).  Documents responsive to any agreed or adjudicated query search shall then be reviewed by defendants for responsiveness and privilege, and thereafter produced electronically in accordance with the guidelines herein.  Defendants shall reasonably accommodate plaintiffs' requests for (i) searches of newly created data, and (ii) modified searches on previously searched data.  Restated, plaintiffs may submit search terms pertaining to preemption issue discovery and later ask that the same media be searched with additional terms.  Defendants will be prohibited from using any additional searches other than those developed with the plaintiffs without sharing such search terms and results with plaintiffs.

4.     Defendants' search and review shall be conducted in a manner designed to preserve all meta-data (such as file creation and modification dates) associated with the discoverable electronic information being searched or reviewed.  The defendants shall submit a search and review procedure designed to preserve, without alteration or modification, all meta-data associated with defendants' discoverable electronic information within _____ days of the entry of this Order.

### E.  Orders Pertaining to the Production of Electronic Media

1.     Each individual piece of computer media produced must be clearly labeled with a unique media control or "Bates" number that is indelibly written on, or affixed to, both the media

itself and any enclosure or case produced with the media. This label or marking shall be affixed in a place and manner that does not obliterate any labeling on the original media, and that does not interfere with the ability to examine or use the media.  The file names of electronic data shall be renamed with a bates number (eg. "Let to FDA 1.1.02.doc" to "C0007628.doc") and a separate text file on each CD Rom or other computer media produced shall list the original file names next to the respective assigned bates numbers.

       2.     Electronic records and computerized information must be produced with sufficient information to permit identification of the producing agent and business unit responsible for the production.  This information shall include, without limitation:

a)     The name of the corporation or other entity who is producing the information, along with information such as country, city, site, and department sufficient to uniquely identify the producing agent;

b)     The name or identity of the specific server or computer system from which the back-up was produced or information copied;

c)     To the extent reasonably known, the name or identity of the specific server or computer system upon which the information was originally created; and

d)     To the extent reasonably known, the name or identity of the specific server or computer system upon which the information was maintained during the course of normal business, if different from the system where it was created.

The parties shall confer to develop a standard form containing the information required pursuant to this paragraph and submit same (or competing proposals) within _____ days of the entry of this order.

       3.     For each electronic document produced a load file shall be produced with same identifying the following pieces of information:

          1) Category/Subcategory (type of item);
          2) Date ;
          3) Original file name;
          4) Source (original system or department where stored);
          5) Search (what search terms or other identified the document as relevant);
          6) Starting Bates;

7) Ending Bates;
8) Original person responsible for maintaining (custodian);
9) Is the produced version an original or copy;
10) Revision history;
11) Date produced for discovery;
12) Whether document was previously produced in former discovery phase;  e.g. it came up again in a new search; and
13) The system and software program used.

4.      Electronic records and computerized information must be produced in their most useful, usable and searchable form (with other versions or modes of production available) together with a technical description of the system from which they were derived sufficient to permit rendering the records and information as easily searchable for the receiving party as for the producing party.  To the extent necessary to enable plaintiffs to render the records and information most useful, usable and searchable, this description shall include:

a) The manufacturer's name and model number for electronic hardware used to create and maintain the electronic records;
b) The name and version of the operating system used on the computer where the electronic records were created and maintained;
c) The manufacturer's name, product identification, and version number for any software used to create and maintain the electronic records, along with any proprietary software, written documentation, special parameters, and instructions sufficient to permit those records to be read from the media produced; and
d) The date, if known, when the information was first created, along with the date of its most recent modification.

5.      To the extent that decryption or access passwords are necessary to unlock any computerized information in its original form, including without limitation electronic mail passwords and file decryption passwords, the parties shall confer to develop appropriate steps to allow plaintiffs to access the data without compromising defendants' confidentiality, security, or proprietary interests.

6.      Except for non-responsive, privileged, or otherwise protected information, any record, document, or data item that was created on a computer or computer system and is to be

produced pursuant to this protocol must be produced without redaction, on some form of computer media.  For all such media produced, external labels on the media shall identify the computer(s) from which the copies of computer files were made, and the full names of the individuals or business units who used the computer so identified.  A record shall also be maintained and produced showing how the information on the media was copied.

7.      Should the producing party seek to withhold any document based on some limitation of discovery (including but not limited to a claim of privilege), the producing party shall supply a privilege log listing the documents and data for which such limitation of discovery is claimed within 15 days after any production of electronic or hard copy documents, indicating:

a.      The identity of each document's author, writer, sender;
b.      The identity of each document's recipient, addressee, or person for whom it was intended;
c.      The date of creation or transmittal indicated on each document, or an estimate of that date, indicated as such, if no date appears on the document;
d.      The general subject matter as described on each document, or, if no such description appears, then some other description sufficient to identify the document and the adjudication of the applicability of the privilege without waiving it; and
e.      The claimed grounds for the limitation of discovery (*e.g.*, "attorney-client privilege.").

8.      Should the producing party seek to redact any document or data based on some limitation of discovery (including but not limited to a claim of privilege), the producing party shall supply a redaction list separate from the privilege log addressed above within 15 days after any production of redacted electronic or hard copy documents or data for which such limitation of discovery is claimed, indicating:

a.      The claimed grounds for the redaction;
b.      The nature of the redacted material sufficient to permit the adjudication of the applicability of the privilege without waiving it (*e.g.*, "patient name," "trade secret," etc.); and
c.      A description of the exact process used for redaction.

- 13 -

During the pendency of the litigation, an electronic copy of the original unredacted data shall be securely preserved in such manner so as to preserve without modification, alteration, or addition the content of such data, including any meta-data associated therewith.  However, defendants shall not produce their first privilege log or redaction log until _____ days after they believe that they have produced all discoverable electronic and hard copy information pertinent to preemption discovery issues so as not to hinder the immediate production of such materials.

9.      All computer media must be properly packaged to ensure safe shipping and handling.  If any piece of media produced is known to have any physical defect, electronic defect, or damaged data, or is infected with any virus or other harmful software of any kind, it should be clearly labeled so that appropriate care can be taken during its examination.

10.      All computer media that is capable of write protection should be write protected before production.

11.      All copies of computer files for production shall be created in such a way as to preserve or record the original directory structure and system-level meta-data (file name and path, create, modify, and access date and time, and size).

12.      Following the production of electronic data, defendants shall provide reasonable assistance to plaintiffs in connection with the installation and use of such data and software.

13.      Where documents or electronic data requested herein are not available in electronic form, such documents or data shall be produced on hard copy at an agreed location or failing that at a law office designated by the Plaintiffs in Orlando, Florida.

14.      All data or documents to be produced hereunder shall be produced in English, if available.

15.     The parties shall confer to develop appropriate provisions for authenticating electronic data or documents produced herewith, and for using such at deposition or in any other evidentiary manner.

16.     The parties shall confer to develop appropriate provisions for the distribution of and access to electronic data or documents produced herewith.

### F.  Timing & Sequencing of Electronic Discovery

1.     Defendants shall commence the production of discoverable electronic information by _____

2.     Defendants shall produce custodial/user files no less than _____ days following a request and in no event less than 20 days prior to the deposition of the respective custodian.

3.     Defendants shall make best efforts to sequence the production of discoverable electronic information consistent with plaintiffs' requests concerning such discoverable electronic information.

### G.  Resolution of Disputes Concerning Electronic Discovery

1.     All disputes regarding discovery shall be addressed by the parties in a conference prior to the filing of any motion with the court.

2.     If the parties are unable to resolve the dispute, an appropriate motion may be made to the court at that time.

### I. "Hard copy" Documents

1.     To the extent possible, the litigation will be conducted as a "paperless" case and document and deposition discovery conducted so as to maximize efficient and quick access to document discovery by litigants throughout the country and to minimize document production and distribution costs.

2.     All documents that exist in hard copy form that are responsive to discovery requests or orders shall be produced in electronic image form (in the manner provided herein) so long as the

- 15 -

document's image conveys the same information as if the subject document was produced in a hard copy form.  Documents that present imaging problems shall be promptly identified and thereafter the parties will attempt to mutually resolve the problem amongst themselves.  If the parties are unable to mutually resolve the problem, the issue will resolved by the Court on appropriate motion.

3.      Imaging and document/data identification conventions:

a.      All documents shall be scanned as black and white images at 300 dpi resolution and shall be saved and produced in a Group 4 compression single-page "TIFF" format file on CD-ROMS.  If color is material to appreciating or comprehending the content of a document, parties shall honor reasonable requests for either the production of an original document for inspection and copying or production of a color image of the document.  Each page of a document shall be scanned into an image and if a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as it existed in the original when creating the image file.  Additionally, reasonable efforts shall be used to scan the pages or images at 100% of their original size without reduction and scanned so that the print or image appears straight, not skewed, on the TIFF.

b.      Each page of the scanned document shall have a legible, unique document identifier electronically "burned" onto the image at a location that does not obliterate any information from the source document. There shall be no other legend or stamp placed on the document image unless a document qualifies for designation as confidential (as addressed by other order). In such case the document image may also have burned in an appropriate legend regarding confidentiality at a location that does not obliterate any information from the source document. If a confidential document is later declassified, the party producing the document shall produce a new version of the document without the confidentiality legend.

c.      Document identifiers should correspond and be consistent with the Bates number imprinted on the document. For example, if the Bates number "AZ0000001" was imprinted, the document would bear the name "AZ0000001.tif". Bates numbers should allow for a range of up to 10 million documents or seven (7) numeric digits.

d.      Each document image file shall be named using the document identifier of the first page of the subject document (e.g. - "C0001234.TIF").

e.      Each CD-ROM of documents, data or email produced by a party shall be uniquely named with a sequential number that includes the producing party's unique alpha identifier (e.g., "C001", C002, etc.).  If over 4 CD-ROM's are produced at one time, Defendants will download all such data onto a new hard drive and Plaintiffs will pay the reasonable acquisition costs of the hard drive. Defendants hard drive production shall be accompanied by a letter specifically identifying the number of documents and other items resident on the hard drive.

f.      Document image files (or files containing electronic production of data or email) shall be placed on a CD-ROM (or hard drive as stated in the preceding paragraph) in a subdirectory or subfolder bearing the same name as the CD-ROM it is located on so that files are not in the root directory of the CD-ROM.  The name of each subdirectory shall be the name of the bates number of the first file in the subdirectory (e.g. "C001\C0001234" contains "C0001234.TIF" as its first file). There will be no more than 1,000 files in any given subdirectory and there must always be at least one subdirectory under the disk name subdirectory (e.g. even if there are only 500 files for disk C002 where the file "C0091234.TIF" is the first file, they will all be stored on the disk under a subdirectory called "C002\C0091234").  The following is an example using "CDROM" as a place holder for the drive letter of the CDROM drive:

CDROM:\C002\C0091234\C0091234.TIF (1st file of disk)

- 17 -

CDROM:\C002\C0091234\C0091239.TIF (2nd file of disk)

CDROM:\C002\C0091234\C0091247.TIF (3rd file of disk)

...

CDROM:\C002\C0093324\C0093324.TIF (1001st file of disk)

2. Because of the potential for a large number of documents to be produced, it may not be possible to review the images immediately upon production.  If any problems are encountered with imaged document(s), they shall be identified by the requesting party and thereafter the parties will attempt to mutually resolve the problem.

Approved, entered and so ordered, this _____ day of December, 2006.

_____
MAGISTRATE JUDGE PRESIDING

# EXHIBIT "B"

## Keith Jensen

**From:** Kelber, Tamar B. [tkelber@Sidley.com]

**Sent:** Sunday, 19 November, 2006 05:33 PM

**To:** Keith Jensen

Pursuant to your request, here is an email regarding document preservation.  As we discussed, AstraZeneca's obligations to preserve documents are specified in the federal rules, and those rules provide the appropriate framework for our document preservation efforts.

Although an order is not warranted, to satisfy your interest in the issue, we would agree to the entry of an order that specifically provides that "Each party shall preserve all documents and other records containing information potentially relevant to the subject matter of this litigation.  Each party shall also preserve any physical evidence or potential evidence and shall not conduct any testing that alters the physical evidence without notifying opposing counsel and, unless counsel stipulate to the test, without obtaining the Court's permission to conduct the test.  Subject to further order of the Court, the parties may continue routine erasures of computerized data pursuant to existing programs but shall preserve any printouts of any such data related to Seroquel."

```
Sidley Austin LLP mail server made the following annotations on 11/19/06, 17:38:01:
--------------------------------------------------------------------------------
IRS Circular 230 Disclosure: To comply with certain U.S. Treasury regulations, we in
that, unless expressly stated otherwise, any U.S. federal tax advice contained in th
communication, including attachments, was not intended or written to be used, and ca
used, by any taxpayer for the purpose of avoiding any penalties that may be imposed
taxpayer by the Internal Revenue Service.  In addition, if any such tax advice is us
to by other parties in promoting, marketing or recommending any partnership or other
investment plan or arrangement, then (i) the advice should be construed as written i
with the promotion or marketing by others of the transaction(s) or matter(s) address
communication and (ii) the taxpayer should seek advice based on the taxpayer's parti
circumstances from an independent tax advisor.

********************************************************************************
This e-mail is sent by a law firm and may contain information that is privileged or
If you are not the intended recipient, please delete the e-mail and any attachments
immediately.

********************************************************************************
```

# EXHIBIT "C"

**Keith Jensen**

---

| | |
|---|---|
| **From:** | Keith Jensen |
| **Sent:** | Monday, 20 November, 2006 12:52 PM |
| **To:** | Tamar Kelber; Mike Davis(sidley); James Mizgala |
| **Cc:** | Jonathan Jaffe; Paul Pennock; Mike Pederson; Camp Bailey; Driscoll John; Larry Roth; Fletch Trammell; Larry Gornick; Keith Jensen; Ken Bailey |
| **Subject:** | Re: IT/Prod. Protocol/preservation teleconference |

Issues for discussion/agreement:

1) Quoting Judge Baker: "a full discussion of the nature of records and record retention policies", of course, this requires AZ's "full" disclosure of same before we can have the "full discussion" per his directive (we will therefore expect a full IT explanation from IT personnel of all "native formats" which hold discoverable electronic informatio) I define native format in a less sophisticated way than J. Baker (ie. Excel, Access, tif and a thorough explanation of all AZ's proprietary, license and/or unique software so that we can learn how AZ will comply with J. Baker's other directive to produce in "the most useful version and with an electronic index of documents");

2) How AZ will comply with J. Baker's two directives quoted above for INDA/NDA & for all in the future;

3) The 8 topics in 40.25(2) Man. Comp. Lit. And our proposed order which covers most of them;

4) The issues framed by Mr. Jaffe's list sent last Friday;

5) All of same for all non-US AZ;

6) Additional mostly related topics/issues with Jonathan Jaffe or we will advise of.

Please advise of times TU/W.

Sent via BlackBerry from Cingular Wireless

-----Original Message-----
From: "Kelber, Tamar B." <tkelber@Sidley.com>
Date: Mon, 20 Nov 2006 12:08:54
To:kj@kjensenlaw.com,"Mizgala, James W." <jmizgala@Sidley.com>,"Davis, Michael W." <mdavis@sidley.com>
Cc:jjaffe@weitzlux.com,MPederson@weitzlux.com,PPennock@weitzlux.com,CBailey@bpblaw.com,lroth@roth-law.com,lgornick@lskg-law.com,kbailey@bpblaw.com,jdriscoll@brownandcrouppen.com,ftrammell@bpblaw.com,mperrin@bpblaw.com
Subject: Re: IT/Prod. Protocol/preservation teleconference

Please let me know what specific issues you would like to address and then I can find out who the appropriate people are and when they are available.  Note that we discussed the production format issues with Mike Pederson and Jonathan Jaffe on Friday, and will follow up them when we have answers to the questions they raised.

 -----Original Message-----
 From: kj@kjensenlaw.com <kj@kjensenlaw.com>
 To: Kelber, Tamar B. <tkelber@Sidley.com>; Mizgala, James W. <jmizgala@Sidley.com>; Davis, Michael W. <mdavis@sidley.com>
 CC: Jonathan Jaffe <jjaffe@weitzlux.com>; Mike Pederson <mpederson@weitzlux.com>; Paul Pennock <PPennock@weitzlux.com>; Camp Bailey <cbailey@bpblaw.com>; Larry Roth <lroth@roth-law.com>; Larry Gornick <lgornick@lskg-law.com>; Ken Bailey <kbailey@bpblaw.com>; Driscoll John <jdriscoll@brownandcrouppen.com>; Fletch Trammell <ftrammell@bpblaw.com>; Mike Perrin <mperrin@bpblaw.com>
 Sent: Mon Nov 20 11:53:21 2006
 Subject: IT/Prod. Protocol/preservation teleconference

Tamar/James;

Please advise when tomorrow (TU) or W you and your IT people are available for same.

Thanks, Keith
Sent via BlackBerry from Cingular Wireless


Sidley Austin LLP mail server made the following annotations on 11/20/06, 12:07:18:
--------------------------------------------------------------------------------
----------- IRS Circular 230 Disclosure: To comply with certain U.S. Treasury regulations,
we inform you that, unless expressly stated otherwise, any U.S. federal tax advice
contained in this communication, including attachments, was not intended or written to be
used, and cannot be used, by any taxpayer for the purpose of avoiding any penalties that
may be imposed on such taxpayer by the Internal Revenue Service. In addition, if any such
tax advice is used or referred to by other parties in promoting, marketing or recommending
any partnership or other entity, investment plan or arrangement, then (i) the advice
should be construed as written in connection with the promotion or marketing by others of
the transaction(s) or matter(s) addressed in this communication and (ii) the taxpayer
should seek advice based on the taxpayer's particular circumstances from an independent
tax advisor.
*******************************************************************************************
********** This e-mail is sent by a law firm and may contain information that is
privileged or confidential. If you are not the intended recipient, please delete the e-
mail and any attachments and notify us immediately.
*******************************************************************************************
**********

# EXHIBIT "D"

**Keith Jensen**

---

| | |
|---|---|
| **From:** | Keith Jensen |
| **Sent:** | Tuesday, 21 November, 2006 06:18 PM |
| **To:** | 'Kelber, Tamar B.'; 'Davis, Michael W.'; 'Mizgala, James W.' |
| **Cc:** | 'Jonathan Jaffe'; 'Paul Pennock'; 'Mike Pederson'; 'Camp Bailey'; 'Driscoll John'; 'Larry Roth'; 'Fletch Trammell'; 'Larry Gornick'; 'Ken Bailey' |
| **Subject:** | RE: IT/Prod. Protocol/preservation teleconference |

Tamar, per your request, here are additional topics for discussion/agreement:

1.    conversion of all image formats into a standard format: pdf's, multi-page TIFFs, bitmaps, jpegs --> single page tiffs
2.    A list and/or full disclosure of additional native formats beyond Microsoft Office - ex: Email and Databases (especially large databases bigger than Access, such as SQL)? Including all proprietary systems that help AZ log information to a database. A list or full disclosure of the types of databases they have and what is stored in each, including, a) safety surveillance databases, b) prescription data (ie. IMS, NDC); c) sales call tracking and notes; d) clinical communications.
3.    If email: preferably messages should be extracted to a .msg format. If they use an email system besides Microsoft Exchange, then we can discuss.
4.    If database: we will need to discuss each database; what it is, how the data is stored, whether it can be provided in a format loadable into a SQL Database.
5.    Getting the revision history and meta data for desktop documents: Word, Excel, presentations, pdfs, TIFFs, WordPerfect.
6.    The most useful information for the electronic index directed by J. Baker, i.e. Category/Subcategory, perhaps, even reserving the right to categorize into what buckets items fall.
7.    What search terms have been used and will be used to run the search and what databases were searched -- for example: if we require them to run a search for (Seroquel and FDA) they should let us know whether they included the terms (quetiapine fumarate and FDA).


-----Original Message-----
From: Keith Jensen
Sent: Monday, 20 November, 2006 12:52
To: Tamar Kelber; Mike Davis(sidley); James Mizgala
Cc: Jonathan Jaffe; Paul Pennock; Mike Pederson; Camp Bailey; Driscoll John; Larry Roth; Fletch Trammell; Larry Gornick; Keith Jensen; Ken Bailey
Subject: Re: IT/Prod. Protocol/preservation teleconference

Issues for discussion/agreement:

1) Quoting Judge Baker: "a full discussion of the nature of records and record retention policies", of course, this requires AZ's "full" disclosure of same before we can have the "full discussion" per his directive (we will therefore expect a full IT explanation from IT personnel of all "native formats" which hold discoverable electronic informatio) I define native format in a less sophisticated way than J. Baker (ie. Excel, Access, tif and a thorough explanation of all AZ's proprietary, license and/or unique software so that we can learn how AZ will comply with J. Baker's other directive to produce in "the most useful version and with an electronic index of documents");

2) How AZ will comply with J. Baker's two directives quoted above for INDA/NDA & for all in the future;

3) The 8 topics in 40.25(2) Man. Comp. Lit. And our proposed order which covers most of them;

4) The issues framed by Mr. Jaffe's list sent last Friday;

5) All of same for all non-US AZ;

1

6) Additional mostly related topics/issues with Jonathan Jaffe or we will advise of.

Please advise of times TU/W.

Sent via BlackBerry from Cingular Wireless

-----Original Message-----
From: "Kelber, Tamar B." <tkelber@Sidley.com>
Date: Mon, 20 Nov 2006 12:08:54
To:kj@kjensenlaw.com,"Mizgala, James W." <jmizgala@Sidley.com>,"Davis, Michael W."
<mdavis@sidley.com>
Cc:jjaffe@weitzlux.com,MPederson@weitzlux.com,PPennock@weitzlux.com,CBailey@bpblaw.com,lro
th@roth-law.com,lgornick@lskg-
law.com,kbailey@bpblaw.com,jdriscoll@brownandcrouppen.com,ftrammell@bpblaw.com,mperrin@bpb
law.com
Subject: Re: IT/Prod. Protocol/preservation teleconference

Please let me know what specific issues you would like to address and then I can find out
who the appropriate people are and when they are available.  Note that we discussed the
production format issues with Mike Pederson and Jonathan Jaffe on Friday, and will follow
up them when we have answers to the questions they raised.

 -----Original Message-----
 From: kj@kjensenlaw.com <kj@kjensenlaw.com>
 To: Kelber, Tamar B. <tkelber@Sidley.com>; Mizgala, James W. <jmizgala@Sidley.com>;
Davis, Michael W. <mdavis@sidley.com>
 CC: Jonathan Jaffe <jjaffe@weitzlux.com>; Mike Pederson <mpederson@weitzlux.com>; Paul
Pennock <PPennock@weitzlux.com>; Camp Bailey <cbailey@bpblaw.com>; Larry Roth <lroth@roth-
law.com>; Larry Gornick <lgornick@lskg-law.com>; Ken Bailey <kbailey@bpblaw.com>; Driscoll
John <jdriscoll@brownandcrouppen.com>; Fletch Trammell <ftrammell@bpblaw.com>; Mike Perrin
<mperrin@bpblaw.com>
 Sent: Mon Nov 20 11:53:21 2006
 Subject: IT/Prod. Protocol/preservation teleconference

 Tamar/James;

 Please advise when tomorrow (TU) or W you and your IT people are available for same.

 Thanks, Keith
 Sent via BlackBerry from Cingular Wireless


Sidley Austin LLP mail server made the following annotations on 11/20/06, 12:07:18:
--------------------------------------------------------------------------------
---------- IRS Circular 230 Disclosure: To comply with certain U.S. Treasury regulations,
we inform you that, unless expressly stated otherwise, any U.S. federal tax advice
contained in this communication, including attachments, was not intended or written to be
used, and cannot be used, by any taxpayer for the purpose of avoiding any penalties that
may be imposed on such taxpayer by the Internal Revenue Service. In addition, if any such
tax advice is used or referred to by other parties in promoting, marketing or recommending
any partnership or other entity, investment plan or arrangement, then (i) the advice
should be construed as written in connection with the promotion or marketing by others of
the transaction(s) or matter(s) addressed in this communication and (ii) the taxpayer
should seek advice based on the taxpayer's particular circumstances from an independent
tax advisor.
********************************************************************************************
********** This e-mail is sent by a law firm and may contain information that is
privileged or confidential. If you are not the intended recipient, please delete the e-
mail and any attachments and notify us immediately.
********************************************************************************************
**********


Sidley Austin LLP mail server made the following annotations on 11/21/06, 14:55:12:

---------------------------------------------------------------------------------------------
-----------

IRS Circular 230 Disclosure: To comply with certain U.S. Treasury regulations, we inform
you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this
communication, including attachments, was not intended or written to be used, and cannot
be used, by any taxpayer for the purpose of avoiding any penalties that may be imposed on
such taxpayer by the Internal Revenue Service.  In addition, if any such tax advice is
used or referred to by other parties in promoting, marketing or recommending any
partnership or other entity, investment plan or arrangement, then (i) the advice should be
construed as written in connection with the promotion or marketing by others of the
transaction(s) or matter(s) addressed in this communication and (ii) the taxpayer should
seek advice based on the taxpayer's particular circumstances from an independent tax
advisor.

***************************************************************************************
**********
This e-mail is sent by a law firm and may contain information that is privileged or
confidential.
If you are not the intended recipient, please delete the e-mail and any attachments and
notify us immediately.

***************************************************************************************
**********

# EXHIBIT "E"

## Keith Jensen

| | |
|---|---|
| **From:** | Kelber, Tamar B. [tkelber@Sidley.com] |
| **Sent:** | Tuesday, 28 November, 2006 06:39 PM |
| **To:** | Keith Jensen; CBailey@bpblaw.com; jjaffe@weitzlux.com; PPennock@weitzlux.com; MPederson@weitzlux.com; jdriscoll@brownandcrouppen.com; lroth@roth-law.com; ftrammell@bpblaw.com; lgornick@lskg-law.com; kbailey@bpblaw.com |
| **Cc:** | Gaus, Beth W.; Miller, Rodney K.; Huey, Nathan A. |
| **Subject:** | Re: Document Production Issues |

I don't know.  We can definitely talk about all of the production format issues.

-----Original Message-----
From: Keith Jensen <kj@kjensenlaw.com>
To: Kelber, Tamar B. <tkelber@Sidley.com>; Camp Bailey <CBailey@bpblaw.com>; Jonathan Jaffe <jjaffe@weitzlux.com>; Paul Pennock <PPennock@weitzlux.com>; Mike Pederson <mpederson@weitzlux.com>; Driscoll John <jdriscoll@brownandcrouppen.com>; Larry Roth <lroth@roth-law.com>; Fletch Trammell <ftrammell@bpblaw.com>; Larry Gornick <lgornick@lskg-law.com>; Ken Bailey <kbailey@bpblaw.com>
CC: Gaus, Beth W. <BGaus@Sidley.com>; Miller, Rodney K. <rkmiller@sidley.com>; Huey, Nathan A. <NHuey@Sidley.com>
Sent: Tue Nov 28 18:19:03 2006
Subject: RE: Document Production Issues

Tamar, thanks for accomodating me for Friday.  Will your IT colleagues and you be prepared to discuss all issues we outlined per your request by then?  Thanks, Keith

-----Original Message-----
From: Kelber, Tamar B. [mailto:tkelber@Sidley.com]
Sent: Tue 11/28/2006 3:46 PM
To: Camp Bailey; Keith Jensen; Jonathan Jaffe; Paul Pennock; Mike Pederson; Driscoll John; Larry Roth; Fletch Trammell; Larry Gornick; Ken Bailey
Cc: Gaus, Beth W.; Miller, Rodney K.; Huey, Nathan A.
Subject: RE: Document Production Issues

that's fine.  I have a morning meeting on Friday but could do a call on Friday afternoon.

-----Original Message-----
From: Camp Bailey [mailto:CBailey@bpblaw.com]
Sent: Tuesday, November 28, 2006 3:47 PM
To: Kelber, Tamar B.; Keith Jensen; Jonathan Jaffe; Paul Pennock; Mike Pederson; Driscoll John; Larry Roth; Fletch Trammell; Larry Gornick; Ken Bailey
Cc: Gaus, Beth W.; Miller, Rodney K.; Huey, Nathan A.
Subject: RE: Document Production Issues

If possible, can we schedule it for this Friday?  I think Keith is out of the country to return Thurs. and is one of three people that has taken the point on these issues for our side.


K. Camp Bailey
Attorney at Law

-----Original Message-----
From: Kelber, Tamar B. [mailto:tkelber@Sidley.com]
Sent: Tuesday, November 28, 2006 11:57 AM
To: Keith Jensen; Jonathan Jaffe; Paul Pennock; Mike Pederson; Camp

Bailey; Driscoll John; Larry Roth; Fletch Trammell; Larry Gornick; Ken
Bailey
Cc: Gaus, Beth W.; Miller, Rodney K.; Huey, Nathan A.
Subject: Document Production Issues

We have followed up on the production issues discussed in our last call.
Could we schedule a call to discuss those issues for sometime tomorrow?
(We are working on the preservation questions as well, but do not have
anything specific to discuss yet.)

Sidley Austin LLP mail server made the following annotations on
11/28/06, 11:55:05:
-----------------------------------------------------------------------
-----------------------------
IRS Circular 230 Disclosure: To comply with certain U.S. Treasury
regulations, we inform you that, unless expressly stated otherwise, any
U.S. federal tax advice contained in this communication, including
attachments, was not intended or written to be used, and cannot be used,
by any taxpayer for the purpose of avoiding any penalties that may be
imposed on such taxpayer by the Internal Revenue Service.  In addition,
if any such tax advice is used or referred to by other parties in
promoting, marketing or recommending any partnership or other entity,
investment plan or arrangement, then (i) the advice should be construed
as written in connection with the promotion or marketing by others of
the transaction(s) or matter(s) addressed in this communication and (ii)
the taxpayer should seek advice based on the taxpayer's particular
circumstances from an independent tax advisor.

*******************************************************************************
****************************
This e-mail is sent by a law firm and may contain information that is
privileged or confidential.
If you are not the intended recipient, please delete the e-mail and any
attachments and notify us immediately.

*******************************************************************************
****************************


Sidley Austin LLP mail server made the following annotations on 11/28/06, 15:44:54:
-------------------------------------------------------------------------------------------------
IRS Circular 230 Disclosure: To comply with certain U.S. Treasury regulations, we inform you
that, unless expressly stated otherwise, any U.S. federal tax advice contained in this
communication, including attachments, was not intended or written to be used, and cannot be
used, by any taxpayer for the purpose of avoiding any penalties that may be imposed on such
taxpayer by the Internal Revenue Service.  In addition, if any such tax advice is used or referred
to by other parties in promoting, marketing or recommending any partnership or other entity,
investment plan or arrangement, then (i) the advice should be construed as written in connection
with the promotion or marketing by others of the transaction(s) or matter(s) addressed in this
communication and (ii) the taxpayer should seek advice based on the taxpayer's particular
circumstances from an independent tax advisor.

*********************************************************************************************************
This e-mail is sent by a law firm and may contain information that is privileged or confidential.
If you are not the intended recipient, please delete the e-mail and any attachments and notify us
immediately.

*********************************************************************************************************

12/01/2006

```
Sidley Austin LLP mail server made the following annotations on 11/28/06, 18:39:09:
--------------------------------------------------------------------------------
IRS Circular 230 Disclosure: To comply with certain U.S. Treasury regulations, we in
that, unless expressly stated otherwise, any U.S. federal tax advice contained in th
communication, including attachments, was not intended or written to be used, and ca
used, by any taxpayer for the purpose of avoiding any penalties that may be imposed
taxpayer by the Internal Revenue Service.  In addition, if any such tax advice is us
to by other parties in promoting, marketing or recommending any partnership or other
investment plan or arrangement, then (i) the advice should be construed as written i
with the promotion or marketing by others of the transaction(s) or matter(s) address
communication and (ii) the taxpayer should seek advice based on the taxpayer's parti
circumstances from an independent tax advisor.

********************************************************************************
This e-mail is sent by a law firm and may contain information that is privileged or
If you are not the intended recipient, please delete the e-mail and any attachments
immediately.

********************************************************************************
```

# EXHIBIT "F"

**Keith Jensen**

| | |
|---|---|
| **From:** | Keith Jensen |
| **Sent:** | Friday, 01 December, 2006 06:00 PM |
| **To:** | Kelber, Tamar B.; Davis, Michael W.; Mizgala, James W. |
| **Cc:** | Jaffe, Jonathan; Pennock, Paul; Fletch Trammell; lgornick@lskg-law.com; Pederson, Mike; lroth@roth-law.com; Mike Perrin; jdriscoll@brownandcrouppen.com; Scott Allen; Ken Bailey |
| **Subject:** | Production/Preservation |

Tamar, Mike & James,

Tamar asked about 6 of us in our teleconference that lasted until about 5 pm today whether we would accept all production in single page TIFF's and then potentially identify things we wanted in native format.  Here is our response:

We request that AZ produce everything (eg., all documents, detailer sales notes, records, data and emails, both AZ based and third party used for business) in its native format (Word, Word Perfect, Excel, Powerpoint, Email, Access, SQL & all databases used by AZ for Seroquel, etc.) and if and only if AZ posits that the native format no longer exists than to alternatively produce same in a single page bates-labeled TIFF format with an accompanying load file.  This response comes with the caveat that we need a list of all native formats that discoverable electronic data exists in and information about the current practices and systems used by AZ.  Without such knowledge at this time, we reserve the right to alter the native format request if we learn that other formats would be more useable and/or feasible.

For each document provided to us in native format, please provide a load file with the following pieces of information:
       1) Category/Subcategory (type of item)
       2) Date
       3) Original file name
       4) Source (original system or department where stored)
       5) Search (how the item was identified as relevant)
       6) Starting Bates
       7) Ending Bates
       8) Original person responsible for maintaining (custodian)
       9) Is this an original or copy?
       10) Revision history
       11) Date produced for discovery
       12) Whether document was previously produced in former discovery phase; e.g. it came up again in a new search
       13) The system and software program used

Email messages should be produced as individual emails in .msg format.

As we discussed, we recognize that IF AZ provided the full discussion/disclosure directed by Judge Baker he did not see a need for an IT 30b6 before our submission.  However, because this has not occurred in any form in almost two weeks we strongly feel that such depositions of AZ's IT experts are needed ASAP if we are going to make the best use of the limited time available to us from the Court.  Without an adequate understanding of AZ's systems, we are shooting in the dark in terms of the most efficient and appropriate way to seek these documents from your client.  We certainly do not want any repeat productions which further delay or hinder this MDL.

Accordingly, in the meantime, my side will agree, should the court allow it, to postpone our TU 12/5 filing deadline only until TH 12/7 provided we're given all the information we need to make our filings as contemplated by his Honor by W 12/6.  Please advise.

# EXHIBIT "G"

From: Keith Jensen [mailto:kj@kjensenlaw.com: <mailto:kj@kjensenlaw.com> ]
Sent: Sat 12/2/2006 5:45 PM
To: Kelber, Tamar B.; Davis, Michael W.; Mizgala, James W.
Cc: Jaffe, Jonathan; Pennock, Paul; Fletch Trammell; lgornick@lskg-law.com;
Pederson, Mike; lroth@roth-law.com; Mike Perrin;
jdriscoll@brownandcrouppen.com; Scott Allen; Ken Bailey
Subject: RE: Production/Preservation


Tamar, Mike & James,


As mentioned, attached is a 30b6 notice which we intend to take on the
noticed date if we are not provided the production protocol and preservation
information as directed by his Honor.


_____

From: Keith Jensen
Sent: Friday, 01 December, 2006 18:00
To: Kelber, Tamar B.; Davis, Michael W.; Mizgala, James W.
Cc: Jaffe, Jonathan; Pennock, Paul; Fletch Trammell; lgornick@lskg-law.com;
Pederson, Mike; lroth@roth-law.com; Mike Perrin;
jdriscoll@brownandcrouppen.com; Scott Allen; Ken Bailey
Subject: Production/Preservation


Tamar, Mike & James,


Tamar asked about 6 of us in our teleconference that lasted until about 5 pm
today whether we would accept all production in single page TIFF's and then
potentially identify things we wanted in native format.  Here is our
response:


We request that AZ produce everything (eg., all documents, detailer sales
notes, records, data and emails, both AZ based and third party used for
business) in its native format (Word, Word Perfect, Excel, Powerpoint,
Email, Access, SQL & all databases used by AZ for Seroquel, etc.) and if and
only if AZ posits that the native format no longer exists than to
alternatively produce same in a single page bates-labeled TIFF format with
an accompanying load file.  This response comes with the caveat that we need
a list of all native formats that discoverable electronic data exists in and
information about the current practices and systems used by AZ.  Without

such knowledge at this time, we reserve the right to alter the native format request if we learn that other formats would be more useable and/or feasible.

For each document provided to us in native format, please provide a load file with the following pieces of information:

1) Category/Subcategory (type of item)

2) Date

3) Original file name

4) Source (original system or department where stored)

5) Search (how the item was identified as relevant)

6) Starting Bates

7) Ending Bates

8) Original person responsible for maintaining (custodian)

9) Is this an original or copy?

10) Revision history

11) Date produced for discovery

12) Whether document was previously produced in former discovery phase; e.g. it came up again in a new search

13) The system and software program used

Email messages should be produced as individual emails in .msg format.

As we discussed, we recognize that IF AZ provided the full discussion/disclosure directed by Judge Baker he did not see a need for an IT 30b6 before our submission.  However, because this has not occurred in any form in almost two weeks we strongly feel that such depositions of AZ's IT experts are needed ASAP if we are going to make the best use of the limited time available to us from the Court.  Without an adequate understanding of AZ's systems, we are shooting in the dark in terms of the most efficient and appropriate way to seek these documents from your client.  We certainly do not want any repeat productions which further delay or hinder this MDL.

Accordingly, in the meantime, my side will agree, should the court allow it, to postpone our TU 12/5 filing deadline only until TH 12/7 provided we're

given all the information we need to make our filings as contemplated by his
Honor by W 12/6.  Please advise.

# EXHIBIT "H"

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| In Re:  Seroquel Products Liability Litigation | Case No. 6:06-md-01769-ACC-DAB |
| MDL Docket No.  1769 | **NOTICE OF DEPOSITION PURSUANT TO FED. R. CIV. P. 30(b)(6)** |
| DOCUMENT RELATES TO ALL CASES | |

Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6)

_____

TO:  AstraZeneca Pharmaceuticals LP and AstraZeneca LP, by and through their below-listed attorneys of record

PLEASE TAKE NOTICE that pursuant to Fed. R. Civ. P. 30(b)(6), Plaintiffs will take the oral and videotaped deposition of AstraZeneca Pharmaceuticals LP and AstraZeneca LP (hereinafter collectively referred to as "AZ").  The deposition will be taken before a court reporter or officer authorized to administer oaths and a videographer on the date and at the time and place listed below and that the above-named plaintiff's, their attorneys and/or their experts may attend in person or telephonically.  Plaintiffs counsel may be accompanied by their IT expert, Mr. Jonathan Jaffe.

| | |
|---|---|
| DEPONENT: | **AZ designee(s) who "shall testify as to matters known or reasonably available to the organization".  FRCP 30(b)(6)** |
| DATE, PLACE AND TIME: | **Friday, December 8, 2006 at 9:00 a.m. EST** LAW OFFICES OF LARRY M. ROTH Orlando, FL  32854-7637 Telephone: (407) 872-2239 Facsimile: (407) 872-6927 |
| ESTIMATED LENGTH OF DEPOSITION: | **4-6 hours** |

AZ, pursuant to Fed. R. Civ. P. 30(b)(6), shall designate an individual or individuals **who "shall testify as to matters known or reasonably available to the organization" pertaining to the topics listed below.**

**Time period: Unless otherwise indicated the time period for the topics listed below is** from AZ's first filing with the FDA that pertained to Seroquel, in its INDA or NDA, to the present.

1. Who is AZ's Chief Information Officer (CIO), Sarbanes-Oxley IT compliance manager, head of regulatory affairs and medical monitor for Seroquel or most similar roles if not bearing those titles and what have they done and when to retain, prevent overwriting or deletion of, catalog, search and produce discoverable data.

2. Who are and what is the hierarchy of all persons who have information retention, storage, tracking, searching and production roles which have at any time pertained to Seroquel information.

3. Who is the person most knowledgeable of AZ database(s) of sales call, detailer notes, drug representative reports and what has been done, by whom and when to retain, prevent overwriting or deletion of, catalog, search and produce the discoverable data from same.

4. The identity of all AZ employees who are or were responsible for managing and maintaining its technology infrastructure that includes, but is not limited to, servers or other network storage devices and related peripheral equipment, desktop computers, portable computers, laptop computers, personal digital assistants (PDAs), telephones, and other similar electronic devices.

5. The identity of all nonemployee consultants, consulting firms, contractors, or similar entities retained by AZ who are or were responsible for installing, servicing, managing, or maintaining its technology infrastructure that includes, but is not limited to, servers or other network storage devices and related peripheral equipment, desktop computers, portable computers, laptop computers, personal digital assistants (PDAs), telephones, and other similar electronic devices.

6. A description of and the operation of all groups of connected computer systems used by AZ that permit users to share information and transfer data, including, but not limited to, local area networks (LANs), wide area networks (WANs), client-server networks, virtual private networks (VPNs), and storage area networks (SANs); including all equipment, devices, components, and network resources that establish and maintain the network environment, including, but not limited to, routers, switches, hubs, bridges, firewalls and proxies.

7. A description of and the operation of all available third-party connectivity between the computer systems and network environment used by AZ, including the type of information that is shared, the manner in which the information is transferred, and the identity of any individuals who have authorization to transfer information into or out of the network environment.

8.  A description of and the operation of each individual personal computer system that is or has been used by employees of AZ that includes, but is not limited to, desktop computers, portable computers, laptop computers, personal digital assistants (PDAs), telephones, and other similar electronic devices, including descriptions of equipment and any peripheral technology attached to the computer system, including whether the system is automatically copied or backed up by an AZ server or not and what has been done, by whom and when to retain, prevent overwriting or deletion of, catalog, search and produce the discoverable data from same.

9.  A description of and the operation of the Internet and intranet connectivity of each computer system used by AZ, including, but not limited to, client-server communications and client-client communications facilitated through modem, network, or direct connection.

10. A description of all hardware or software modifications made to the computer systems used by AZ , including type and nature of each modification, dates of modification, software and hardware titles, version numbers, contact information of person(s) performing the modification, and location of data backups made prior to modification.

11. A description of all operating systems, including, but not limited to, Microsoft Windows, Linux, Unix, DOS, Solaris, etc., installed on all or the majority of AZ's computer systems.

12. A description of the title and version number of any and all software installed or executed on each or the majority of of AZ computer systems.

13. A description of policies and procedures governing the use of removable media, such as CD-ROMs, Zip disks, floppy disks, tape drives, removable hard drives, etc., associated with AZ computer systems or network.

14. A description of policies and procedures used for performing backups on all computer systems (both on the server and not) and a description of any hardware or software used to perform such backup, including remote or off-site backup servers as opposed to tapes and the identity of who is most knowledgeable of same and what has been done and by whom to retain, prevent overwriting or deletion of, catalog, search and produce the discoverable data from same.

15. A description of all e-mail accounts used by AZ (AZ or third party accounts – AOL, hotmail, gmail, yahoo, etc., whether paid for by AZ or not) that its employees, representatives and independent contractors, in the performance of their employment or job function, the identity of who is most knowledgeable of how to extract e-mail in searchable form and what has been done and by whom to retain, prevent overwriting or deletion of, catalog, search and produce the discoverable data from same.

16. A description of policies and procedures used to perform backups or for archiving e-mail messages and a description of any hardware or software used to perform such backups or archiving and the identity of who is most knowledgeable of same.

17. A description of any e-mail-based encryption used by AZ, its employees, representatives and independent contractors and the identity of who is most knowledgeable of same.

18. A description of the components and design implementation or distribution of AZ telephone and voice-mail and voice messaging systems, including all hardware, software, and third-party service providers, the identity of who is most knowledgeable of how to extract voice-mail in searchable, cataloged or non-searchable form and what has been done and by whom to retain, prevent overwriting or deletion of, catalog, search and produce the discoverable data from same.

19. A description of the location, amount, nature and type of all audio and video recordings and/or powerpoints that pertain to Seroquel and a description of how long it would take for all of the audio and video recordings to be copied and the powerpoints to be burned to CD and produced.

20. A description of policies and procedures used for performing backups or for archiving any and all voicemail and voice messaging records and a description of any hardware or software used to perform such backups or archiving.

21. A description of all policies and procedures governing employee use of Internet newsgroups, chat rooms, or instant messaging on your computer systems and/or PDA's.

22. A description of all internal and external instant messaging (IM) systems and logs, the identity of who is most knowledgeable of how to extract IM in searchable form and what has been done and by whom to retain, prevent overwriting or deletion of, catalog, search and produce the discoverable data from same.

23. A description of any and all cell phones, PDAs, digital convergence devices, Blackberry's, Palm Pilots, Treos or other portable electronic devices, whether owned by AZ or by others, used by any AZ employees AZ, its employees, representatives and independent contractors, in the performance of their employment or job function, both that are synced back to the server and not synced back to the server.

24. A description of all policies and procedures pertaining to data retention and destruction and a description of all hardware or software used to facilitate the deletion of data subject to any data-retention, overwriting, destruction policies and procedures.

25. A description of any and all servers or other network storage devices, desktop computers, portable computers, laptop computers, personal digital assistants (PDAs), telephones, and other similar electronic devices that have had their hard drives reformatted, wiped, or replaced .

26. A description of any and all information relevant to this legal matter that was deleted, physically destroyed, corrupted, damaged, lost, or overwritten, and whether this information was lost pursuant to the data retention and destruction policies.

27. A description of the location of all electronically stored faxes that pertain to Seroquel and the identity of who is most knowledgeable of same and what has been done and by whom to retain, prevent overwriting or deletion of, catalog, search and produce the discoverable data from same.

28. A description of the location of all AZ web-site content, including archived pages, and sites and pages not available to the public and the identity of who is most knowledgeable of same and what has been done and by whom to retain, prevent overwriting or deletion of, catalog, search and produce the discoverable data from same.

Respectfully submitted,

_____s_____
Larry M. Roth
LAW OFFICES OF LARRY M. ROTH, P.A.
Post Office Box 547637
Orlando, FL  32854-7637
Telephone: (407) 872-2239
Facsimile: (407) 872-6927
E-mail: LROTH@roth-law.com

_____
T. Scott Allen
CRUSE, SCOTT, HENDERSON & ALLEN, L.L.P.
2777 Allen Parkway, 7th Floor
Houston, Texas 77019
Telephone: (713) 650-6600
Facsimile: (713) 650-1720
E-mail: sallen@crusescott.com

_____
K. Camp Bailey
Michael W. Perrin
F. Kenneth Bailey, Jr.
Fletcher Trammell
BAILEY PERRIN BAILEY L.L.P.
The Lyric Centre
440 Louisiana, Suite 2100

_____
Paul J. Pennock
Michael E. Pederson
John Broaddus
WEITZ & LUXENBERG, P.C.
180 Maiden Lane, 17th Floor
New York, NY 10038
Telephone: (212) 558-5500
Facsimile: (212) 363-2721
E-mail: Ppennock@Weitzlux.com
Mpederson@Weitzlux.com
Jbroaddus@Weitzlux.com

_____
Kenneth W. Smith
Justin Witkin
Bryan Aylstock
AYLSTOCK, WITKIN & SASSER, P.L.C.
4400 Bayou Boulevard, Suite 58
Pensacola, FL 32503
Telephone:  (850) 916-7450
Facsimile:  (850) 916-7449
E-mail:  KSmith@AWS-LAW.com
JWitkin@AWS-LAW.com
BAylstock@AWS-LAW.com

Houston, Texas 77002
Telephone:  (713)425-7100
Facsimile:  (713)425-7101
E-mail:  mperrin@bpblaw.com
cbailey@bpblaw.com
kbailey@bpblaw.com
ftrammell@bpblaw.com

_____

John J. Driscoll
BROWN & CROUPPEN, P.C.
720 Olive Street, #1800
St. Louis, MO 63101
Telephone: (314) 421-0216
Facsimile: (314) 421-0359
E-mail: Jdriscoll@brownandcrouppen.com

_____

Keith M. Jensen
David A. Singleton
JENSEN, BELEW & GONZALEZ, P.L.L.C.
1024 N. Main Street
Fort Worth, Texas 76106
Telephone: (817) 334-0762
Facsimile:  (817) 334-0110
E-mail: kj@kjensenlaw.com
dsingleton123@yahoo.com

_____

Lawrence J. Gornick
William A. Levin
LEVIN SIMES KAISER & GORNICK, LLP
One Bush Street, 14th Floor
San Francisco, CA  94014
Telephone: (415)646-7160
Facsimile: (415)981-1270
E-mail: lgornick@lskg-law.com
wlevin@levinslaw.com

_____

Matthew E. Lundy
Lisa L. Stewart
LUNDY & DAVIS, L.L.P
333 N. Sam Houston Parkway East
Suite 375
Houston, Texas 77060
Telephone: (281)272-0797
Facsimile:  (281)272-0781
E-mail: mlundy@lundydavis.com
lstewart@lundydavis.com

_____

Matthew F. Pawa, Esq.
Benjamin A. Krass
LAW OFFICES OF MATTHEW F. PAWA, P.C.
1280 Centre Street, Suite 230
Newton Centre, MA  02459
Telephone: (617) 641-9550
Facsimile: (617) 641-9551
E-Mail: mp@pawalaw.com
bkrass@pawalaw.com

_____

Todd Harvey
WHATLEY DRAKE, L.L.C.
2323 2nd Avenue North
Birmingham, AL  35203
Telephone: (205)328-9576
Facsimile: (205)328-9669

E-mail: THARVEY@whatleydrake.com

CERTIFICATE OF SERVICE

       The undersigned hereby certifies that a true and correct copy of the foregoing document was served on all counsel of record for the defendants by the means indicated below and on those listed on the attached service list by regular mail on the 3rd day of December, 2006.

_ x____ Facsimile
__x___ Email
_____ Overnight Delivery
_____ Hand Delivery
_____ Certfied Mail

_____s_____
One of Plaintiffs Attorneys

# EXHIBIT "I"

3.   The parties are expected to be prepared for trial on all issues [except _____ ] by [date].

Dated: _____      _____

                                   United States District Judge

*Notes:*
     1.   Where initial disclosure is appropriate, provision should be made in the order. See also supra section 40.21, ¶ 6(b). Note that the 2000 amendments to Rule 26(a)(1) contemplate that a party in a complex case may object during the Rule 26(f) conference that initial disclosures are "not appropriate in the circumstances of the action" and by such objection call for a judicial ruling on the question.

     2.   The time for undertaking or completing some aspect of discovery may be stated either by using specific dates or by reference to completion of discovery that should precede it. The listing in this sample order of certain forms of discovery is not intended to suggest that they should be undertaken in this sequence or that each item should be completed before other discovery is undertaken. For example, in many cases, depositions should be conducted by both sides during the same period of time, during which the parties may also be involved in preparing answers to interrogatories and responses to requests for admission.

     3.   The extent to which a schedule for all discovery can be established at the initial conference will depend on the circumstances of the litigation. In some complex cases it may be feasible to establish a timetable only for certain portions of discovery, leaving for subsequent conferences the setting of a schedule for other discovery and a final cutoff date for all discovery. In other cases, a comprehensive discovery schedule—which may even include dates for preparation and submission of a joint statement of contested and uncontested facts, and for identification of trial witnesses and docu-ments—can be established at the initial conference.

     4.   Other restrictions on discovery may be added.[746]

## 40.25   Preservation of Documents, Data, and Tangible Things

[Caption]

Interim Order Regarding Preservation

[The primary purpose of this order is to have the parties meet and confer to develop their own preservation plan. If the court determines that such a conference is unnecessary or undesirable, paragraph 3, Duty to Preserve, may be modified to serve as a stand-alone preservation order.]

1.   Order to Meet and Confer

To further the just, speedy, and economical management of discovery, the parties are ORDERED to meet and confer as soon as practicable, no later than 30 days after the date of this order, to develop a plan for the preservation of documents, data, and tangible things reasonably anticipated to be subject to discovery in this action. The parties may conduct this conference as part of the Rule 26(f) conference if it is scheduled to take place within 30 days of the date of this order. The resulting preservation plan may be submitted to this Court as a proposed order under Rule 16(e).

2.   Subjects for Consideration

The parties should attempt to reach agreement on all issues regarding the preservation of documents, data, and tangible things. These issues include, but are not necessarily limited to:

(a) the extent of the preservation obligation, identifying the types of material to be preserved, the subject matter, time frame, the authors and addressees, and key words to be used in identifying responsive materials;

(b) the identification of persons responsible for carrying out preservation obligations on behalf of each party;

(c) the form and method of providing notice of the duty to preserve to persons identified as custodians of documents, data, and tangible things;

(d) mechanisms for monitoring, certifying, or auditing custodian compliance with preservation obligations;

(e) whether preservation will require suspending or modifying any routine business processes or procedures, with special attention to document-management programs and the recycling of computer data storage media;

(f) the methods to preserve any volatile but potentially discoverable material, such as voicemail, active data in databases, or electronic messages;

(g) the anticipated costs of preservation and ways to reduce or share these costs; and[747]

(h) a mechanism to review and modify the preservation obligation as discovery proceeds, eliminating or adding particular categories of documents, data, and tangible things.

3. Duty to Preserve

(a) Until the parties reach agreement on a preservation plan, all parties and their counsel are reminded of their duty to preserve evidence that may be relevant to this action. The duty extends to documents, data, and tangible things in the possession, custody and control of the parties to this action, and any employees, agents, contractors, carriers, bailees, or other nonparties who possess materials reasonably anticipated to be subject to discovery in this action. Counsel is under an obligation to exercise reasonable efforts to identify and notify such nonparties, including employees of corporate or institutional parties.

(b) "Documents, data, and tangible things" is to be interpreted broadly to include writings; records; files; correspondence; reports; memoranda; calendars; diaries; minutes; electronic messages; voicemail; E-mail; telephone message records or logs; computer and network activity logs; hard drives; backup data; removable computer storage media such as tapes, disks, and cards; printouts; document image files; Web pages; databases; spreadsheets; software; books; ledgers; journals; orders; invoices; bills; vouchers;

checks; statements; worksheets; summaries; compilations; computations; charts; diagrams; graphic presentations; drawings; films; charts; digital or chemical process photographs; video, phonographic, tape, or digital recordings or transcripts thereof; drafts; jottings; and notes. Information that serves to identify, locate, or link such material, such as file inventories, file folders, indices, and metadata, is also included in this definition.

(c) "Preservation" is to be interpreted broadly to accomplish the goal of maintaining the integrity of all documents, data, and tangible things reasonably anticipated to be subject to discovery under Fed. R. Civ. P. 26, 45, and 56(e) in this action. Preservation includes taking reasonable steps to prevent the partial or full destruction, alteration, testing, deletion, shredding, incineration, wiping, relocation, migration, theft, or mutation of such material, as well as negligent or intentional handling that would make material incomplete or inaccessible.

(d) If the business practices of any party involve the routine destruction, recycling, relocation, or mutation of such materials, the party must, to the extent practicable for the pendency of this order, either

    (1) halt such business processes;

    (2) sequester or remove such material from the business process; or

    (3) arrange for the preservation of complete and accurate duplicates or copies of such material, suitable for later discovery if requested.[748]

(e) Before the conference to develop a preservation plan, a party may apply to the court for further instructions regarding the duty to preserve specific categories of documents, data, or tangible things. A party may seek permission to resume routine business processes relating to the storage or destruction of specific categories of documents, data, or tangible things, upon a showing of undue cost, burden, or overbreadth.

4. Procedure in the Event No Agreement Is Reached If, after conferring to develop a preservation plan, counsel do not reach agreement on the subjects listed under paragraph 2 of this order or on other material aspects of preservation, the parties are to submit to the court within three days of the conference a statement of the unresolved issues together with each party's proposal for their resolution of the issues. In framing an order regarding the preservation of documents, data, and tangible things, the court will consider those statements as well as any statements made in any applications under paragraph 3(e) of this order.

Entered this ____ day of ____, 20 __

                                     _____

                                     United States District Judge[749]

## Authors' Comments

For a decision using this form, see *Pueblo of Laguna v. United States*, 60 Fed. Cl. 133 (Fed. Cl. Ct. 2004).

### 40.26   Document Depositories

.261 Order to Meet and Confer to Establish Joint Document Depository
.262 Order to Establish Separate Document Depositories

*40.261   Order to Meet and Confer to Establish Joint Document Depository*

[Caption]

It is ORDERED:[1]

1. Defendants, in consultation with plaintiffs, shall establish and maintain a document depository program (a "depository") in a manner to be agreed on by the parties and/or ordered by the Court. The parties will propose to the court a formula for sharing the cost of maintaining the facility. The depository shall store all materials produced by parties and third-parties in this proceeding that may be needed for more than a single case, including documents, interrogatories, requests for admission, requests for production of documents, deposition transcripts, and similar materials. These materials shall be made available to any litigants in any case in the above-captioned litigation [and to any litigants in any related state court litigation].

2. Counsel must agree on computer hardware and software systems for scanning, viewing, downloading, and printing documents from remote locations. The parties must agree about allocating fees to operate the depository. The document depository must not be operated as a profit center. Each attorney/party seeking access to the depository must sign the agreement regarding rules of usage, protection of confidential documents, and payment of fees.

3. A party fully satisfies its obligation to produce documents to the parties in all cases in this litigation by placing those documents in the depository and serving notice of this placement on counsel in all affected cases. Such notice shall identify the documents produced, using a unique alphanumeric identifier, and notice shall be produced as documents are kept in the usual course of business or documents shall be organized and labeled to correspond with the