Exhibit 1

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**IN RE:  Seroquel Products Liability Litigation,**
**MDL DOCKET NO. 1769**

**This document relates to (ALL CASES)**

_____/

**PROPOSED STIPULATION REGARDING DOCUMENT**
**<u>PRODUCTION PROTOCOL AND PRESERVATION</u>**

For all documents in the possession of and produced by AstraZeneca Pharmaceuticals LP, AstraZeneca LP ("AstraZeneca") and Plaintiffs (collectively "Parties") in this litigation, the parties hereby stipulate to the following protocol:

**I.  DOCUMENT PRODUCTION**

 **A.**  Format of Production.

 **i)**   Hard copy documents.  Defendants shall produce all responsive hard copy documents in Tagged Image File Format ("TIFF") with an accompanying load file and OCR text file.  The cost of converting such documents to TIFF files with OCR shall be shared equally by Plaintiffs and AstraZeneca.

 **ii)**  Electronic documents:

 **(1)**  Unredacted electronic documents shall be produced in single-page TIFF format, with an accompanying load file that contains, to the extent possible and practicable, the following metadata fields:

 **(a)**  Electronic document type;

 **(b)**  Create date;

(c) File name;

(d) Source location;

(e) Starting production number;

(f) Ending production number;

(g) Custodian;

(h) Last date modified;

(i) Date produced for discovery; and

(j) The system and software program used for production.

(2) Documents that present imaging or formatting problems shall be promptly identified and the Parties shall meet and confer to attempt to resolve the problems. The Parties are not required to produce exact duplicates of electronic documents stored in different electronic locations. The Plaintiffs shall produce documents on either DVD or CD, provided by AstraZeneca. AstraZeneca will produce documents on hard drives provided by Plaintiffs, unless and until the parties agree upon on another medium. After review of documents, the Parties may make reasonable requests that certain documents that are identified by production number be produced in their "native" format. After such a request is received, the Parties shall meet and confer with respect to the production of, document integrity of and sharing of costs related to the production of native documents on a document-by-document basis.

(3) Redacted documents shall be produced in single-page TIFF format, with an accompanying load file that contains agreed upon metadata fields above, excluding any field (including any text files) which contain redactions. Documents that present imaging or

formatting problems shall be promptly identified and the Parties shall meet and confer to attempt to resolve the problems.  The Parties are not required to produce exact duplicates of electronic documents stored in different electronic locations.  The Plaintiffs shall produce documents on either DVD or CD, provided by AstraZeneca.  AstraZeneca will produce documents on hard drives provided by Plaintiffs, unless and until the parties agree upon on another medium.

     **iii)** Data bases:  The Parties agree to use good faith efforts to meet and confer over the discoverability of responsive data contained within data bases.  The Parties also agree to use good faith efforts to reach agreement on the format of production, to the extent that any data base information is produced.  The Court's assistance may be sought only after the Parties have failed to reach agreement after good faith discussions.

    **B.** <u>Production Numbering</u>.  Each page of a produced document shall have a legible, unique page identifier ("Production Number") and confidentiality legend (where applicable) electronically "burned" onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document.  No other legend or stamp will be placed on the document image other than the Production Number, confidentiality legend (where applicable), and redactions addressed above.

    **C.** Costs:

    i)  Readily accessible ESI:  While each Party expressly reserves its rights to seek costs relating to this litigation, including the costs of producing documents, initially each Party will bear the costs to process and review its own documents.  Where documents are produced, the receiving Party will bear the production costs incurred by the producing Party.

This is intended to cover costs such as the costs of storage (CDs, DVDs, hard drives), shipping, and costs unique to a particular Party's request(s) (such as engineering time for unique or non-standard requests).

**ii)** Inaccessible and/or legacy ESI:  To the extent that any Party requests data that is not readily accessible, the Parties shall comply with the Federal Rules of Civil Procedure in determining whether the inaccessible data is to be produced and which Party will bear the costs of production, including the costs to process and review such data.  The Parties expressly agree that they will meet and confer concerning inaccessible ESI prior to seeking the Court's assistance.

## II.  **PRESERVATION**

A.       The Parties shall abide by the Federal Rules of Civil Procedure, including but not limited to Fed. R. Civ. P. 26, and preserve all documents relevant to this litigation in a manner consistent with those guidelines.  Specifically, the Parties shall preserve all documents and other records—including electronically stored information—containing information potentially relevant to the subject matter of this litigation.  The Parties shall also preserve any physical evidence or potential evidence and shall not conduct any testing that alters the physical evidence without notifying opposing counsel and, unless counsel stipulate to the test, without obtaining the Court's permission to conduct the test.  The Parties agree to meet and confer regarding the appropriateness of retention of any back-up data and the cost allocation for such retention.

**III.    MEET AND CONFER OBLIGATIONS**

**A.**    The Parties agree that they will use all reasonable efforts to meet and confer regarding discovery, including any proposed changes to this Order.  The Parties also agree that they will seek this Court's assistance only after reasonably exhausting efforts to resolve this matter by agreement.

B.    The Parties agree that AstraZeneca shall serve objections to the Plaintiffs' outstanding Rule 30(b)(6) Deposition no later than Wednesday, December 13, 2006.  The Parties further agree to meet and confer promptly regarding the topics and AstraZeneca's objections.  The Parties have set the date for this meet and confer for Friday, December 15, 2006.


DONE and ORDERED in Orlando, Florida on December ___, 2006.



_____
David A. Baker
United States Magistrate Judge


CH1 3682163v.1

Exhibit 2

The Ad Hoc Committee for Electronic Discovery of the United States District Court for the District of Delaware has developed a default standard for the discovery of electronic documents. This default standard is available for use by the Court and by parties engaged in litigation in the District of Delaware.  The Ad Hoc Committee includes the following members:

Chief Judge Sue L. Robinson

Kevin F. Brady, Esquire, Skadden, Arps, Slate, Meagher & Flom

Mary B. Graham, Esquire, Morris Nichols Arsht & Tunnell

Richard K. Herrmann, Esquire, Blank Rome

William F. Lee, Esquire, Hale and Dorr

Michael A. O'Shea, Esquire, Clifford Chance

George F. Pappas, Esquire, Venable LLP

Matthew D. Powers, Esquire, Weil Gotshal & Manges

Paul A. Ainsworth, Law Clerk to Chief Judge Robinson

Janet A. Gongola, Law Clerk to Chief Judge Robinson

The Judges of the Court express their gratitude to the Ad Hoc Committee members for their work on this project.

## DEFAULT STANDARD FOR DISCOVERY OF
## ELECTRONIC DOCUMENTS ("E-DISCOVERY")

1.  **Introduction.**  It is expected that parties to a case will cooperatively reach agreement on how to conduct e-discovery. In the event that such agreement has not been reached by the Fed. R. Civ. P. 16 scheduling conference, however, the following default standards **shall apply** until such time, if ever, the parties conduct e-discovery on a consensual basis.

2.  **Discovery conference.**  Parties shall discuss the parameters of their anticipated e-discovery at the Fed. R. Civ. P. 26(f) conference, as well as at the Fed. R. Civ. P. 16 scheduling conference with the court, consistent with the concerns outlined below.  More specifically, prior to the Rule 26(f) conference, the parties shall exchange the following information:

- A list of the most likely custodians of relevant electronic materials, including a brief description of each person's title and responsibilities (see ¶ 6).

- A list of each relevant electronic system that has been in place at all relevant times[1] and a general description of each system, including the nature, scope, character, organization, and formats employed in each system.  The parties

---

[1] For instance, in a patent case, the relevant times for a patent holder may be the date the patent(s) issued or the effective filing date of each patent in suit.

should also include other pertinent information about their electronic documents and whether those electronic documents are of limited accessibility.  Electronic documents of limited accessibility may include those created or used by electronic media no longer in use, maintained in redundant electronic storage media, or for which retrieval involves substantial cost.

- The name of the individual responsible for that party's electronic document retention policies ("the retention coordinator"), as well as a general description of the party's electronic document retention policies for the systems identified above (see ¶ 6).

- The name of the individual who shall serve as that party's "e-discovery liaison" (see ¶ 2).

- Provide notice of any problems reasonably anticipated to arise in connection with e-discovery.

To the extent that the state of the pleadings does not permit a meaningful discussion of the above by the time of the Rule 26(f) conference, the parties shall either agree on a date by which this information will be mutually exchanged or submit the issue for resolution by the court at the Rule 16 scheduling conference.

3. **E-discovery liaison.**  In order to promote communication and cooperation between the parties, each party to a case shall designate a single individual through which all e-discovery

2

requests and responses are made ("the e-discovery liaison").
Regardless of whether the e-discovery liaison is an attorney (in-
house or outside counsel), a third party consultant, or an
employee of the party, he or she must be:

> • Familiar with the party's electronic systems and
capabilities in order to explain these systems and answer
relevant questions.

> • Knowledgeable about the technical aspects of e-
discovery, including electronic document storage, organization,
and format issues.

> • Prepared to participate in e-discovery dispute
resolutions.

The court notes that, at all times, the attorneys of record
shall be responsible for compliance with e-discovery requests.
However, the e-discovery liaisons shall be responsible for
organizing each party's e-discovery efforts to insure consistency
and thoroughness and, generally, to facilitate the e-discovery
process.

4. **Timing of e-discovery.** Discovery of electronic
documents shall proceed in a sequenced fashion.

> • After receiving requests for document production,
the parties shall search their documents, other than those
identified as limited accessibility electronic documents, and
produce responsive electronic documents in accordance with Fed.

R. Civ. P. 26(b)(2).

 • Electronic searches of documents identified as of
limited accessibility shall not be conducted until the initial
electronic document search has been completed.  Requests for
information expected to be found in limited accessibility
documents must be narrowly focused with some basis in fact
supporting the request.

 • On-site inspections of electronic media under Fed.
R. Civ. P. 34(b) shall not be permitted absent exceptional
circumstances, where good cause and specific need have been
demonstrated.

     5.  **Search methodology**.  If the parties intend to employ an
electronic search to locate relevant electronic documents, the
parties shall disclose any restrictions as to scope and method
which might affect their ability to conduct a complete electronic
search of the electronic documents.  The parties shall reach
agreement as to the method of searching, and the words, terms,
and phrases to be searched with the assistance of the respective
e-discovery liaisons, who are charged with familiarity with the
parties' respective systems.  The parties also shall reach
agreement as to the timing and conditions of any additional
searches which may become necessary in the normal course of
discovery.  To minimize the expense, the parties may consider
limiting the scope of the electronic search (e.g., time frames,

4

fields, document types).

6. **Format**. If, during the course of the Rule 26(f) conference, the parties cannot agree to the format for document production, electronic documents shall be produced to the requesting party as image files (e.g., PDF or TIFF). When the image file is produced, the producing party must preserve the integrity of the electronic document's contents, i.e., the original formatting of the document, its metadata and, where applicable, its revision history. After initial production in image file format is complete, a party must demonstrate particularized need for production of electronic documents in their native format.

7. **Retention**. Within the first thirty (30) days of discovery, the parties should work towards an agreement (akin to the standard protective order) that outlines the steps each party shall take to segregate and preserve the integrity of all relevant electronic documents. In order to avoid later accusations of spoliation, a Fed. R. Civ. P. 30(b)(6) deposition of each party's  retention coordinator may be appropriate.

The retention coordinators shall:

- Take steps to ensure that e-mail of identified custodians shall not be permanently deleted in the ordinary course of business and that electronic documents maintained by the individual custodians shall not be altered.

5

- Provide notice as to the criteria used for spam and/or virus filtering of e-mail and attachments; e-mails and attachments filtered out by such systems shall be deemed non-responsive so long as the criteria underlying the filtering are reasonable.

Within seven (7) days of identifying the relevant document custodians, the retention coordinators shall implement the above procedures and each party's counsel shall file a statement of compliance as such with the court.

8. **Privilege**. Electronic documents that contain privileged information or attorney work product shall be immediately returned if the documents appear on their face to have been inadvertently produced or if there is notice of the inadvertent production within thirty (30) days of such.

9. **Costs**. Generally, the costs of discovery shall be borne by each party. However, the court will apportion the costs of electronic discovery upon a showing of good cause.

10. **Discovery disputes and trial presentation**. At this time, discovery disputes shall be resolved and trial presentations shall be conducted consistent with each individual judge's guidelines.

Exhibit 3

THE SEDONA CONFERENCE® WORKING GROUP SERIES

**wgs**<sup>SM</sup>

# THE SEDONA PRINCIPLES:

## *Best Practices Recommendations & Principles for Addressing Electronic Document Production*

A Project of The Sedona Conference<sup>SM</sup>
Working Group on
Best Practices for Electronic Document
Retention & Production

January 2004



The Sedona Conference<sup>SM</sup>

THE SEDONA PRINCIPLES

Editor-in-Chief: Jonathan M. Redgrave, Esq.
Executive Editor: Ashish S. Prasad, Esq.
Senior Editors: Jason B. Fliegel, Esq.
Ted S. Hiser, Esq.
Technology Advisor: John H. Jessen



Copyright © 2004,
The Sedona Conference℠

Visit www.thesedonaconference.org

**9.**      *Absent a showing of special need and relevance, a responding party should not be required to preserve, review, or produce deleted, shadowed, fragmented, or residual data or documents.*

*Comment 9.a.      The Scope of Document Discovery under the Federal Rules*

Although Fed. R. Civ. P. 34 was amended in 1970 to add "data compilations" to the list of discoverable documents, there was no suggestion that "data compilations" was intended to turn *all* forms of "data" into a Rule 34 "document." *Cf.* Shira A. Scheindlin & Jeffrey Rabkin, *Electronic Discovery In Federal Civil Litigation: Is Rule 34 Up To The Task?*, 41 B.C. L. REV. 327, 372 (2000) ("Embedded data, Web caches, history, temporary, cookie and backup files—all of which are forms of electronically stored information automatically created by computer programs rather than by computer users—do not obviously fall within the scope of the term 'documents'.").

The best approach to understanding what is a document is to examine what information is readily available to the computer user in the ordinary course of business. If the employee can view the information, it should be treated as the equivalent of a paper "document." Data that can be readily compiled into viewable information, whether presented on the screen or printed on paper, is also a "document" under Rule 34. However, data used by a computer system but hidden and never revealed to the user in the ordinary course of business should not be presumptively treated as a part of the "document," although there are circumstances in which the data may be relevant and should be preserved and produced. *See* Cmt. 12.a, *infra.* Nor should data, such as deleted or residual data, that is not accessible except through forensic means be presumed to be a document that is discoverable in all circumstances. Such data may be discoverable under Rule 34, but the evaluation of the need for and relevance of such discovery should be separately analyzed on a case-by-case basis. *See, e.g., McPeek v. Ashcroft*, 202 F.R.D. 31, 33 (D.D.C. 2001) (court rejected notion that there is an absolute obligation to pursue potentially relevant data on backup tapes); *McPeek v. Ashcroft*, 212 F.R.D. 33, 35-37 (D.D.C. 2003) (rejecting 15 out of 16 of plaintiff's demands for additional searches of backup tapes). At least one state court system—that of Texas—has adopted this viewpoint and created a presumption that heroic efforts to produce data are not ordinarily required. *See* Texas R. Civ. P. 196.4 ("The responding party must produce the electronic or magnetic data that is responsive to the request and is reasonably available to the responding party in its ordinary course of business. If the responding party cannot—through reasonable efforts—retrieve the data or information requested or produce it in the form requested, the responding party must state an objection complying with these rules."); Cmt. 5.e, *supra.*

> *Illustration i.* A party demands that responsive documents, "whether in hard copy or electronic format," be produced. The producing party objects to producing the documents in electronic format and states that production will be made through PDF or TIF images on CD-ROMs. The producing party assembles copies of the relevant hard copy memoranda, prints out copies of relevant e-mails and electronic memoranda, and produces them in a PDF or TIF format that does not include metadata. Absent a special request for metadata (or any reasonable basis to conclude the metadata was relevant to the claims and defenses in the litigation), and a prior order of the court based on a showing of need, this production of documents complies with the ordinary meaning of Rule 34.

> *Illustration ii.* Plaintiff claims that he is entitled to a commission on a transaction, based upon an e-mail allegedly sent by the president of defendant corporation agreeing to the commission. Defendant asserts that there is no record of the e-mail being sent in its e-mail system or the logs of its Internet activity, and that the e-mail is not authentic. In these circumstances, it is appropriate to require production of not only the content of the questioned e-mail, but also of the e-mail header information and metadata, which can play a crucial role in determining whether the questioned message is authentic.

> *Illustration iii.* Plaintiff alleges that the defendant engaged in a fraud regarding software development. The plaintiff shows that the computer program sold by defendant appears to incorporate plaintiff's source code. Plaintiff presents two copies of a letter allegedly sent on the same day to plaintiff, but the letters differ in a material manner. In this case, discovery of the source code data may be appropriate, as well as targeted discovery of any electronic drafts or metadata concerning the suspect letter.

Exhibit 4

Agenda E-18
Rules
September 2005

## REPORT OF THE JUDICIAL CONFERENCE

## COMMITTEE ON RULES OF PRACTICE AND PROCEDURE

## TO THE CHIEF JUSTICE OF THE UNITED STATES AND MEMBERS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES:

The Committee on Rules of Practice and Procedure met on June 15-16, 2005. All members of the Committee attended as well as the Committee's reporter, Professor Daniel R. Coquillette. The Deputy Attorney General, James B. Comey, attended the meeting with John S. Davis, Associate Deputy Attorney General, and Elizabeth Shapiro, Assistant Director, Federal Programs Branch, Civil Division, Department of Justice. Professor Geoffrey C. Hazard and Joseph F. Spaniol, consultants to the Committee, and John K. Rabiej, Chief of the Administrative Office's Rules Committee Support Office also attended.

All of the chairs and reporters of the advisory rules committees were present, with the exception of the reporter to the Appellate Rules Committee, as follows: Judge Samuel A. Alito, chair of the Advisory Committee on Appellate Rules; Judge Thomas S. Zilly, chair, and Professor Jeffrey W. Morris, reporter, of the Advisory Committee on Bankruptcy Rules; Judge Lee H. Rosenthal, chair, and Professor Edward H. Cooper, reporter, of the Advisory Committee on Civil Rules; Judge Susan C. Bucklew, chair, and Professor David A. Schlueter, reporter, of the Advisory Committee on Criminal Rules; and Judge Jerry E. Smith, chair, and Professor

NOTICE
NO RECOMMENDATION PRESENTED HEREIN REPRESENTS THE POLICY OF THE JUDICIAL
CONFERENCE UNLESS APPROVED BY THE JUDICIAL CONFERENCE ITSELF.

for its consideration with a recommendation that they be adopted by the Court and transmitted to Congress in accordance with the law.

The proposed amendments to the Federal Rules of Evidence are in Appendix E with an excerpt from the advisory committee report.

## LONG-RANGE PLANNING

The Committee was provided a report of the March 14, 2005, meeting of the Judicial Conference's committee chairs involved in long-range planning.

## REPORT TO THE CHIEF JUSTICE

In accordance with the standing request of the Chief Justice, a summary of issues concerning select proposed amendments generating significant interest is set forth in Appendix F.

Respectfully submitted,

David F. Levi, Chair

| | |
|---|---|
| David M. Bernick | Mary Kay Kane |
| David J. Beck | John G. Kester |
| James B. Comey | Mark R. Kravitz |
| Charles J. Cooper | J. Garvan Murtha |
| Sidney A. Fitzwater | Thomas W. Thrash |
| Harris L. Hartz | Charles Talley Wells |

Appendix A — Proposed Amendments to the Federal Rules of Appellate Procedure
Appendix B — Proposed Amendments to the Federal Rules of Bankruptcy Procedure
Appendix C — Proposed Amendments to the Federal Rules of Civil Procedure
Appendix D — Proposed Amendments to the Federal Rules of Criminal Procedure
Appendix E — Proposed Amendments to the Federal Rules of Evidence
Appendix F — Report to the Chief Justice on Proposed Amendments Generating Significant Interest

COMMITTEE ON RULES OF PRACTICE AND PROCEDURE
OF THE
JUDICIAL CONFERENCE OF THE UNITED STATES
WASHINGTON, D.C. 20544

**Agenda E-18 (Appendix C)**
**Rules**
**September 2005**

DAVID F. LEVI
CHAIR

PETER G. McCABE
SECRETARY

CHAIRS OF ADVISORY COMMITTEES

SAMUEL A. ALITO, JR.
APPELLATE RULES

THOMAS S. ZILLY
BANKRUPTCY RULES

LEE H. ROSENTHAL
CIVIL RULES

SUSAN C. BUCKLEW
CRIMINAL RULES

JERRY E. SMITH
EVIDENCE RULES

To:     **Honorable David F. Levi, Chair, Standing
Committee on Rules of Practice and Procedure**

From:   **Honorable Lee H. Rosenthal, Chair, Advisory Committee on the
Federal Rules of Civil Procedure**

Date:    **May 27, 2005 (Revised July 25, 2005)**

Re:     **Report of the Civil Rules Advisory Committee**

### Introduction

The Civil Rules Advisory Committee held three hearings in 2005 on proposed rules amendments published for comment in August 2004. The hearings were held on January 12 in San Francisco, January 28 in Dallas, and February 11 and 12 in Washington, D.C. The Committee met at the Administrative Office of the United States Courts on April 14-15, 2005. Draft minutes of the April 2005 meeting are attached. Summaries of the written comments and testimony presented at the hearings are also provided with the several recommendations of proposed rule amendments for adoption.

Parts I and II present action items. Part I recommends transmission for approval of amendments to several rules. Rules 5(e) and 50(b) come first. The next set of rule amendments is a comprehensive package addressing discovery of electronically stored information, including revisions of Rules 16, 26, 33, 34, 37, and 45, as well as Form 35. The last set of rule amendments recommended for approval is a new Supplemental Rule G governing civil forfeiture actions; this package includes conforming changes to other Supplemental Rules, including the title and Rules A, C, and E. Part I includes a conforming amendment to Rule 26(a)(1) that was published with Rule G and conforming amendments to Rules 9(h) and 14 and 26(a)(1)(E) that are recommended for adoption without publication. For each of the four categories of rule amendments recommended for approval, these materials set out a brief introductory discussion, followed by the text of the proposed rule amendment and Committee Note and a summary and explanation of the changes made since publication.

\* \* \* \* \*

64          FEDERAL RULES OF CIVIL PROCEDURE

*Rule 34(b)*

Proposed amended Rule 34(b) provides a procedure for an issue that generally does not arise with paper discovery — electronically stored information exists and can be produced in a number of forms. The form or forms in which it is kept may not be a form that the requesting party can use or use efficiently or that the responding party wants to use for production. The form of producing electronically stored information is increasingly a source of dispute in discovery. The proposed amendment provides a structure and procedure for the parties to identify the form or forms of production that are most useful or appropriate for the litigation; provides guidance to the responding party if no request, order, or agreement specifies the form or forms of production; and provides guidance to the court if there is a dispute.

Proposed amended Rule 34(b) allows, but does not require, a requesting party to specify a form or forms for producing electronically stored information, clarifies that a responding party's objection to a request may include an objection to the specified form, requires a responding party to state the form or forms it intends to use for production in the written response it must file to the production request, and provides "default" forms of production to apply if the requesting party did not specify a form and there is no agreement or order requiring a particular form.

During the public comment period, concern was expressed as to the published language that described the so-called default forms of production. Rule 34(b), as published, stated that if the parties did not agree on forms of producing electronically stored information, and the court did not order specific forms of production, the responding party could produce in a "form in which it is ordinarily maintained, or in an electronically searchable form." These alternatives were intended to provide functional analogues to the existing rule language that provides choices for producing hard-copy documents: the form in which they are kept in the usual course of business or organized and labeled to correspond to the categories in the request. A number of commentators expressed concern that "a form ordinarily maintained" required "native format" production, which can have disadvantages ranging from an inability to redact, leading to privilege problems; an inability to bates-stamp the "document" for purposes of litigation management and control, which is not an insignificant consideration, particularly in complex multi-party cases; and the receiving party's ability to create "documents" from the produced native format data and present them back to the producing party as deposition or proposed trial exhibits that, while based on the native format data produced, are totally unfamiliar to the producing party. The commentators expressed concern that the alternative provided, an "electronically searchable form," might exert pressure for "native format" production due to the difficulties that attend providing an electronically searchable form. Other comments challenged this alternative default as a standard that should not be applied for all cases. A form that is readily searchable on one party's system may not be easily searched, or searched at all, on another party's system. And there is a converse concern that the requesting party might insist on production in a form searchable in its own unique system, imposing undue conversion costs on the producing party. Other information may exist in an electronic form that is not searchable in any meaningful sense. Requiring electronic searchability, moreover, may be unnecessary or even unwanted in some cases. Many parties

Exhibit 5

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

NO. 02-107                    DIVISION "A"                    SECTION 5

EARL THOMAS WATSON and JOYCE LEDEAN WATSON

VERSUS

BAYER CORPORATION, BAYER A.G., BAYER PHARMACEUTICAL DIVISION
NORTH AMERICA, GLAXOSMITHKLINE and MARY ANN RICHTER, M.D.

FILED: _____          _____
                                          DEPUTY CLERK

### BAYER CORPORATION'S MEMORANDUM IN
### SUPPORT OF MOTION TO VACATE
### OR DISSOLVE *EX PARTE* ORDER TO PRESERVE EVIDENCE

#### Introduction

Plaintiffs' motion for an *ex parte* document preservation order not only contravenes Louisiana law, but also omits critical information regarding the other jurisdictions in which the same issue had been addressed. Had plaintiffs followed the proper channels set forth under Louisiana law, defendant Bayer Corporation ("Bayer") would have had the opportunity to advise the Court that sufficient document preservation procedures specific to this litigation are already in place, that Bayer is already subject to two comprehensive and adequate document preservation orders in the federal Baycol Multi-District Litigation, that plaintiffs' proposed order imposes a tremendous and unnecessary financial and administrative burden on Bayer, and that the preservation orders of Alabama courts upon which plaintiffs rely have either been vacated or are subject to well-founded motions to vacate. With such information, the Court could have made an informed decision on plaintiffs' motion, and would have concluded that the Order should not be entered. Plaintiffs' sandbagging tactics should not be rewarded, and the February 21, 2002 order should be vacated.

Plaintiffs, Earl Thomas Watson and Joyce Ledean Watson, filed a petition for damages against Bayer and other defendants for alleged personal injuries from Mr. Watson's use of the prescription drug "Baycol." Bayer was served with the petition on January 14, 2002. Plaintiffs thereafter filed a first supplemental and amended petition on February 7, 2002 before any defendant served an answer.

Between mid-January and mid-February, 2002, plaintiffs' counsel and Bayer's counsel had numerous discussions and correspondence between them concerning Bayer's extension to file responsive pleadings, plaintiffs' medical records, and service issues. Although plaintiffs' counsel knew Bayer's attorneys and had ample opportunities to discuss the issue of document preservation with them, plaintiffs' counsel apparently deliberately chose not to do so.

On February 21, 2002, without notice to Bayer or any other defendant named in this suit, plaintiffs filed an "*Ex Parte* Emergency Motion to Preserve Evidence" and obtained an Order from this Court compelling the defendants to "preserve all documents and information, whether in paper or electronic format, pertaining to Baycol (Cerivastatin) regardless of the actual trade name used." *See* **Exhibit A** attached. The Order required defendants to "suspend all routine destruction of documents, including but not limited to, recycling back-up tapes, automated deletion of e-mail, and reformatting hard drives." *Id.* The Order also mandated that it "be disseminated to all personnel necessary to effectuate compliance." *Id.*

As noted above, before filing their emergency motion and seeking *ex parte* relief, plaintiffs made no effort to contact Bayer or its counsel to determine whether Bayer had instituted document retention protocols or whether its existing system was sufficient to ensure preservation of documents relevant to or discoverable in this case. Undersigned counsel for Bayer first received notice of the *ex parte* motion and ruling on February 21, 2002 as a *fait accompli*, when plaintiffs' counsel gave Bayer's counsel a cover letter attaching copies of the motion and this Court's signed preservation order.[1] *See* **Exhibit B**. Bayer has yet to receive notice by mail of the rendition of the interlocutory order from the Clerk of Court, which is required under La. Code Civ. P. art. 1914(B).

### A.    Baycol Litigation and This Lawsuit

The February 21 order requires Bayer and its co-defendants to institute specific wide-ranging document-retention procedures with respect to materials related to Bayer's cholesterol-reducing drug Baycol (also known as Cerivastatin). Bayer voluntarily withdrew Baycol from the United States market on August 8, 2001. In the aftermath of that withdrawal, over 500 cases have been filed against Bayer throughout the country in state and federal courts. As discussed

---

[1]    When the preservation order was signed, Bayer had not yet filed its responsive pleadings to plaintiffs' petitions and had only moved for and obtained an unopposed order granting it an extension of time to respond. To Bayer's knowledge, some of the named defendants had not been served, and no defendant in this suit had responded to plaintiffs' petition before the *ex parte* preservation order was signed.

herein, the February 21 order imposes burdens over and above the obligations that are necessary for the conduct of the litigation.

**B.    Bayer's Document Preservation Efforts**

Well before plaintiffs filed their lawsuit, Bayer had instituted specific document-preservation efforts to ensure its compliance with its general obligations to preserve documents that may have relevance to Baycol-related litigation. *See* **Exhibit C** attached, Deposition of Carmen W. Ritacco (12/19/01) at 33-34, 71-72.[2] Specifically, on August 14, 2001, within one day of Bayer's receipt of the first Baycol lawsuit filed nationwide, Bayer implemented a document-preservation protocol that required all affected Bayer employees to retain all documents relevant to Baycol litigation. *See* Ritacco Dep., at 33-34, 48-49, 71-72, 76-77, 92-93. That instruction was in place for months before this lawsuit was filed and continues in effect to this day.  Bayer also has employed an outside vendor to copy all electronic documents on Bayer's servers and the hard drives of key personnel. *See* Ritacco Dep. 71-72, 78-80, 82-86. *See also* **Exhibit D** attached, Affidavit of Carmen W. Ritacco ¶¶ 11, 13 (Ritacco Dep., Exhibit 10).[3]

Contrary to what plaintiffs would have this Court believe, Bayer does not routinely or automatically delete or destroy e-mails or other data.  Ritacco Dep. at 66-67, 77-78.  Because Bayer's computer system must recycle tapes to retain information and maintain its integrity, since August 2001 Bayer has implemented procedures to create a special set of backup tapes for Baycol-related data that has been removed from the system's library and kept in an archive at an offsite facility.  Ritacco Dep. at 33-39, 48-50, 58.  Those tapes are not being recycled; every Baycol-related document written to them is preserved; and Bayer has a process and procedure in place to "ghost image" the hard drives of the computers of key personnel to preserve them in a "forever" storage class.  Ritacco Dep. at 65-67, 78-80, 82-88.  No data is being lost.  Ritacco Dep. at 51.

The Judicial Panel on Multidistrict Litigation ("JPML") has established Multi-District Litigation ("MDL") in the United States District Court for the District of Minnesota to

---

[2] Mr. Ritacco was deposed in the *Steiner* case, an Alabama state court Baycol-related case in which plaintiffs sought the same type of *ex parte* document preservation order as that at issue here. In their Motion, plaintiffs here relied on excerpts of Mr. Ritacco's *Steiner* deposition, and presumably this Court relied on those excerpts in issuing the February 21 order. Accordingly, Bayer relies upon the same transcript in this motion.

[3] For the Court's convenience, Bayer also attaches and references Mr. Ritacco's affidavit, which was attached as Exhibit 10 to his deposition and discussed therein (Ritacco Dep. at 59).

consolidate and coordinate the federal Baycol-related lawsuits, MDL-1431. That MDL court has already issued a pretrial order to preserve potentially relevant documents and electronic data. *See* **Exhibit E** attached, *In re: Baycol Products Litig.*, MDL No. 1431, Pretrial Order No. 1, 8(2) (D. Minn. Jan. 16, 2002). Moreover, to address any concerns that plaintiffs' counsel may have regarding document preservation, Bayer has worked jointly with the MDL Plaintiffs' Steering Committee ("PSC") to develop a comprehensive document preservation order. Bayer and the PSC agreed upon the terms of a document preservation order and jointly submitted it to the MDL court, which today adopted and entered that order as submitted. *See* **Exhibit F**, attached.

Although, as plaintiffs' motion argues, *ex parte* document preservation orders have been entered in other jurisdictions, each such order has either been vacated or is currently subject to a motion to vacate or an appeal. Furthermore, as explained further herein, those *ex parte* orders do not comply with Louisiana's procedural requirements for a contradictory hearing or the substantive requirements of Louisiana law.

### C.   Burdens Imposed by the February 21 Order

The February 21 order imposes enormous technical, fiscal, and administrative burdens on Bayer, many of which are clear from the face of the order. Further, as the attached deposition excerpts and affidavit of Carmen W. Ritacco, Information Systems Manager, Bayer Corporation Systems Technical Operations, establish, the overly broad preservation order works an extreme financial hardship on Bayer without a corresponding benefit to the plaintiffs or the Court. But even without Bayer's evidence regarding the precise impact, the essential point remains that the order unjustly assigns responsibilities to Bayer that are far beyond the obligations that should reasonably apply to parties in a lawsuit.

First, in requiring Bayer to "preserve all documents and information, whether in paper or electronic format, pertaining to Baycol (Cerivastatin) regardless of the actual trade name used," the order fails to specifically describe in reasonable detail what is required. This vague and burdensome order leaves Bayer uncertain as to its scope. For example, the order nowhere defines the critical terms "documents pertaining to Baycol," other than to say that it includes "paper [and] electronic format." Does this mean, for example, that a copy of a packing slip or a customer order is a "document pertaining to Baycol" that must be preserved? Does it mean that every copy of every outdated annual report listing Baycol as one of Bayer's products must also be preserved? There may well be millions of documents at Bayer that mention the word

"Baycol," but have no conceivable bearing on this litigation. The order's improper ambiguity on this point creates a potential trap for innocent and routine discarding of wholly irrelevant data and saddles Bayer with substantial and unnecessary costs.

Second, the February 21 order is overly broad. In essence, it effectively requires Bayer to preserve all of its electronic data without regard to whether it relates to Baycol, the drug at issue. Bayer's operating system does not and cannot distinguish stored data by product. Ritacco Dep. at 72-73. Thus, in order to comply with the February 21 order, Bayer would be required to maintain all backup tapes and e-mails for every pharmaceutical division of Bayer, regardless of whether it involves Baycol. *Id.* The negotiated MDL Order for Preservation of Records, on the other hand, takes this factor into consideration and protects the interests of plaintiffs while recognizing the capabilities of the operating system used by Bayer. As the February 21 order stands, however, it would require Bayer to spend exorbitant amounts of money preserving documents that are neither relevant nor discoverable to plaintiffs.

Third, by ordering Bayer to "suspend all routine destruction of documents, including but not limited to, recycling back-up tapes, automatic deletion of e-mail, and reformatting hard drives," the *ex parte* order would impose an unreasonable burden on Bayer and its computer system. As Mr. Ritacco states, the order "appears to preclude the ordinary operation of Bayer's electronic document management system." Ritacco Dep. at 35; Ritacco Aff. §5. Requiring Bayer to recycle back-up tapes does not preserve information but instead compromises the integrity of the data. *Id.* Bayer's system operates by "'high yield reclamation' in which an electronic document management system automatically transfers and compacts data to facilitate the most efficient use of the least amount of [electronic] tape space. Accordingly, while data is still preserved and accessible, its electronic location has been moved automatically...." *Id.* The February 21 order thus frustrates the ordinary workings of Bayer's computer system such that it cannot function as designed; and it adds no document-retention value because the automatic reclamation transfers "do not undermine preservation of or accessibility to data." *Id.*

As Mr. Ritacco further explains, the February 21 order "will impose enormous costs on Bayer and provide no added benefit to plaintiff." Ritacco Dep. at 47. Ritacco Aff. ¶ 6. Indeed, "stopping the Electronic Management System and removing and preserving all 'existing' back-up tapes *would impose a one-time cost of $1.4 million, plus labor costs.*" Ritacco Aff. §8 (emphasis added). *See also* Ritacco Dep. at 47. "It also would require a disruption of the entire Electronic

Management System, including shutting down the reclamation process, removing 2,000 back-up tapes and sending them off-site, purchasing and installing 2,000 new back-up tapes, and restarting the reclamation process. Repeating this process on a monthly and on other periodic bases would place an enormous burden on the system, interrupt normal data processing operations, and result in needless preservation of duplicate data." Ritacco Aff. ¶ 8; Ritacco Dep. at 74. That obligation is especially costly to Bayer: "[B]y requiring Bayer to retain indefinitely all of its back-up tapes rather than 'recycling' unnecessary tapes after data has been transferred and compacted, the Order will require Bayer to purchase some $45,000 worth of additional back-up tapes initially and each month" plus "an additional $45,000 to $50,000 per month in additional labor costs." Ritacco Aff. ¶9; Ritacco Dep. at 74.

Fourth, the February 21 order is not limited to discoverable, not privileged documents that are relevant to the subject matter involved in this pending action, as required by La. Code Civ. P. art. 1422, which defines the scope of discovery in general. This burdensome *ex parte* order is not confined to information that appears reasonably calculated to lead to the discovery of admissible evidence, the only discoverable evidence within the meaning of that code article. Contrary to the ABA Civil Discovery Standards § 29 (August 1999), the order does not limit its requirements to taking "<u>reasonable</u> steps" under the circumstances. It likewise fails to exclude briefs, motions, legal or factual memoranda, notes, communications, or other similar materials that are privileged. Nor does it exclude work product created in anticipation of or during the course of litigation concerning Baycol, which La. Code Civ. P. 1424 protects from disclosure.

Fifth, the present preservation order unfairly applies only to the defendants without imposing any corresponding duties on the plaintiffs to preserve documents and evidence in their control. Any such order should not be unilateral, but should be directed to all parties in this case, including the plaintiffs.

These costly and time-consuming efforts that the February 21 order requires are unnecessary to preserve potentially relevant material because "Bayer already has in place a system whereby Baycol-related information on Bayer's servers will be preserved during this litigation." Ritacco Aff. ¶ 10. Furthermore, Bayer is also subject to MDL preservation orders that fully safeguard relevant documents without the wasteful effort and devastating expense on Bayer and the other defendants that the February 21 *ex parte* order needlessly imposes.

### D.  Related Rulings by Other Courts

When presented with virtually identical circumstances, the United States District Court for the Middle District of Alabama recently vacated the very same document-preservation order that plaintiffs have attached as Exhibit "A" to their *ex parte* motion in this Court.  In *Hester v. Bayer Corporation*, Civil Action 01-D-1301-N (M.D. Ala. Dec. 21, 2001), an Alabama state trial court had entered an *ex parte* document retention order against Bayer.  After the case was removed, the federal court vacated that order because "at the very least, some evidence should be offered to justify such an extreme remedy." *See* **Exhibit G** attached, *Hester* Slip. Op. at 7.  The *Hester* court explained that the document-preservation order was deficient because defendants had been given no opportunity to participate in tailoring the document preservation order to defendants' document management systems:

> Defendants were not given an opportunity to inform the court that they were already taking the appropriate steps as required by law . . . , nor were they given the opportunity to assist in the shaping of said order.  Consequently, Defendants find themselves between the Scylla of the great costs of complying with the broad order, and the Charybdis of the imposition of sanctions which might result from the routine destruction of documents.

*Id.* at 6.  As a result, the *Hester* court reasoned that such an order places Bayer in the untenable position of having to bear enormous, unnecessary costs or risk "sanctions which might result from the routine destruction of documents" having no bearing on the litigation.  *Id.*

Likewise, another state court recently denied a motion by other Baycol plaintiffs seeking an order for injunctive document preservation relief.  *See* **Exhibit H** attached, hearing transcript in *Lavoie* v. *Bayer Corp.*, No. NNH-CV01-0454792 (Conn. Super. Ct. Sept. 24, 2001).  The *Lavoie* judge ruled that "[a]bsent any factual showing [by plaintiff], I'm not going to enter any injunctive relief." *Id.* at 7.  Because the plaintiffs in that case had produced "no witnesses and no evidence to put before [the court] in support of the contention [that] there is a need for preliminary relief," the *Lavoie* court denied their request for a document retention order.  *Id.* at 6.

As noted earlier, on January 16, 2002, the MDL court in MDL-1431, *In re: Baycol Products Litig.*, issued Pretrial Order No. 1, entered an order that provides reasonable and effective requirements for preservation of potentially relevant documents and electronic data:

> [8](d) Preservation of Records.  Each party shall preserve all documents and other records containing information potentially relevant to the subject matter of this litigation.  Each party shall also preserve any physical evidence or potential evidence and shall not conduct any testing that alters the physical evidence without notifying opposing counsel and, unless counsel stipulate to the test,

> without obtaining the Court's permission to conduct the test. Subject to further order of the Court, parties may continue routine erasures of computerized data pursuant to existing programs, but they shall (1) immediately notify opposing counsel about such programs and (2) preserve any printouts of such data. Requests for relief from this directive will receive prompt attention from the Court.

*See* **Exhibit E** attached at 5. Thus, to the extent any document preservation order is necessary in these circumstances, the MDL court order fully protects the plaintiffs here.

At the same time, however, the MDL court's presentation order makes clear that electronic documents present special problems, and thus allows Bayer to continue routine over-writing of computerized data as long as procedures are in place to preserve "any printouts of such data." This provision, moreover, is a standard feature of the suggestions in the Manual for Complex Litigation, and is therefore not unique to the Baycol MDL proceeding. *See* **Exhibit I** attached, Annotated Manual for Complex Litigation (Third) § 21.442, at 83-84 ((West Group 2001).

The Order agreed upon with the MDL PSC proceeding provides further safeguards for document preservation, specifically requiring, among other things, "dedicated electronic mailboxes" for Baycol-related documents and retention of electronic servers and existing back-up tapes for several facilities. *See* **Exhibit F** at 1-2. Significantly, the same counsel for plaintiffs in the instant suit has filed a Baycol-related class action against Bayer in the United States District Court for the Western District of Louisiana, *Perkins v. Bayer A.G., et al.* That action will likely be transferred to MDL-1431, where it will be subject to the existing MDL preservation order. Thus, plaintiffs and their counsel in the instant suit will suffer no prejudice if this Court vacates the February 21 order. Should the Court deem a preservation order is necessary in this case, an order mirroring that in place in the MDL would serve the interests of all parties.

### Argument

This Court's *ex parte* order of February 21 is both procedurally and substantively flawed because (1) it is unnecessary in view of the safeguards and MDL orders already in place; (2) plaintiffs have failed to proceed by contradictory hearing on their motion as the Louisiana Code of Civil Procedure requires and (3) plaintiffs have not made the showing necessary to support the requested relief and order.

I.   **The February 21 Order is Unnecessary Because Sufficient Safeguards for Document Preservation Already Exist**

The preservation of any relevant documents is already ensured in four ways: (1) Bayer is obligated to retain relevant documents under Louisiana law; (2) Bayer has already implemented procedures to preserve Baycol-related documents and data for as long as necessary; (3) MDL-1431 Pretrial Order No. 1 requires Bayer to preserve documents relating to the Baycol litigation; and (4) the negotiated MDL Document Preservation Order contains specific provisions requiring the preservation of any relevant documents. Indeed, the negotiated MDL Order provides better protection for plaintiffs' interest in preservation, inasmuch as it was based on and tailored to Bayer's specific document retention policies.

Bayer and the other defendants appreciate their duty as litigants to preserve relevant evidence when on notice of a claim, and they run the risk of sanctions if they violate that duty. *See Shamis v. Ambassador Factors Corp.*, 34 F. Supp. 2d 879, 888-89 (S.D.N.Y. 1999); *Wm. T. Thompson Co. v. General Nutrition Corp., Inc.*, 593 F.Supp. 1443, 1455 (C.D.Ca. 1984); *Carlucci v. Piper Aircraft Corp.*, 102 F.R.D. 472, 485-86 (S.D.Fla. 1984). Plaintiffs have provided no basis for their assertions that Bayer would violate its duty. Defendants are likewise fully aware of the doctrine of spoliation, which prohibits a litigant from intentionally destroying evidence to deprive an opposing party of its use. *See Constans v. Choctaw Transport, Inc.*, 97-0863, 97-0864 (La. App. 4 Cir. 12/23/97), 712 So.2d 885, 902, *writ denied*, 98-0408, 98-0412 (La. 3/27/98), 716 So.2d 892; *Kammerer v. Sewerage & Water Bd. of New Orleans*, 93-1232 (La. App. 4 Cir. 3/15/94), 633 So.2d 1357, 1358, *writ denied*, 94-0948 (La. 7/1/94), 639 So. 2d 1163. Plaintiffs have not, for example, explained why the doctrine of spoliation or a motion for sanctions would be inadequate in the event that pertinent documents were deliberately destroyed. Furthermore, as Mr. Ritacco has explained in detail, Bayer's prompt and continuing procedures have captured and preserved all Baycol-related data to ensure that they will not be destroyed.

In addition to these duties of preservation that the law in general imposes on Bayer as a litigant, on January 16, 2002, the MDL Court issued an order binding on Bayer that requires that "each party" to the Baycol cases "shall preserve all documents and other records containing information potentially relevant to the subject matter of the litigation," but permitting "routine erasures of computerized data" provided that there is notice to opposing counsel and that "any printouts" be preserved. *See* Exhibit E attached hereto. The MDL court's order mandates preservation of "potentially relevant" materials, but balances any need for assurances regarding

document retention against the need for the parties to be able to run their businesses and continuing routine electronic document transfers and recycling. *Id.* (noting that "parties may continue routine erasures of computerized data pursuant to existing programs"). Moreover, the MDL parties' negotiated preservation order provides additional safeguards regarding document preservation. Thus, even if there were no February 21, 2002 order, Bayer would be obligated to "preserve all documents and other records containing information potentially relevant to the subject matter of this litigation." *Id.*

Moreover, it makes sense that the MDL's order should operate as the presumptive standard for document retention issues presented in cases across the country. Bayer currently has been named as a defendant in over 500 cases nationwide relating to Baycol. To avoid conflicting and contrasting obligations from court to court, it is essential that a single uniform document retention order apply to all affected parties -- one that balances any legitimate needs for document retention with the realities of the parties' electronic data management systems. Because plaintiffs have never made a showing of need with respect to any document retention order, plaintiffs cannot possibly complain that the Order entered by the MDL court is inadequate to satisfy her document retention needs.

Nonetheless, should this Court wish to enter an additional document preservation order in the instant suit, fairness and efficiency requires that the Court enter the same order already in place in the MDL. Entry of that order (Exhibit E attached) will avoid motions and hearings in this Court to resolve the many questions that the present *ex parte* order leaves unanswered. The MDL order protects the plaintiffs by preserving all potentially relevant data, while relieving the defendants of unnecessary and costly expense drastically changing their computer systems. The negotiated order in the MDL (Exhibit F attached) provides specific provisions in furtherance of it.

Unlike these MDL orders, the February 21 order is contrary to the concerns inherent in complex litigation. The relevant pages of the <u>Annotated Manual for Complex Litigation, 3d</u>, are attached hereto as **Exhibit I.** The <u>Manual</u> recognizes that a preservation order "may interfere with the normal operations of the parties and impose perhaps unforeseen burdens," and that "the judge should discuss with counsel at the first opportunity the need for a preservation order, and if one is needed, what terms will best serve the purposes of preserving relevant matter without imposing undue burdens." *Id.* at 83-84.

The Manual further acknowledges that a preservation order may "cause hardship when records are stored in data-processing systems that automatically control the period of retention" and that "[r]evision of existing computer programs to provide for longer retention, even if possible, may be prohibitively expensive. . . ." *Id.* at 84. The Manual states that "[s]uch an order should ordinarily permit destruction after reasonable notice to opposing counsel" and "may also exclude specified categories of documents whose cost of preservation is shown to outweigh substantially their relevance in the litigation . . . or if there are alternative sources for the information." *Id.* Section 33.53 of the Manual, though addressing employment discrimination cases specifically, further recognizes that the parties may disagree "particularly with respect to computerized data that may be periodically erased as new information is electronically stored" and that "[a] separate order of the court may be needed both to clarify what records must be preserved and to provide relief from unduly burdensome retention requirements." *Id.* at 453.

This Court's order of February 21 is contrary to the Manual's suggestions. Without any of the procedures, provisions, and restrictions that the Manual recognizes are necessary, the present order requires the defendants to preserve all documents pertaining to Baycol and to drastically change their computer systems. Moreover, the present order issued *ex parte* without any input from the defendants' counsel, and it addresses none of the concerns that the Manual envisions. In contrast, the MDL preservation order is consistent with the Manual and is fair to the plaintiffs and the defendants.

**II.    The *Ex Parte* Order is Procedurally and Substantively Improper**

    **A.    Plaintiffs had no right to move *ex parte* in violation of Bayer's rights to a contradictory hearing**

La. Code Civ. P. art. 963 provides that a party must proceed by a written motion served on and tried contradictorily with the adverse party whenever the mover is not clearly entitled to the relief requested or must submit supporting proof. It is abundantly clear from plaintiffs' own motion and memorandum that the proposed order required supporting proof. Plaintiffs themselves recognized that fact by attempting to submit "proof" to the Court in the form of deposition excerpts and orders in Alabama litigation attached as exhibits to their supporting memorandum. Thus, their motion unquestionably required a rule to show cause and a contradictory hearing where both parties are represented by counsel. *See Byles Welding & Tractor Co., Inc. v. Butts Sales & Service, Inc.*, 578 So.2d 246 (La. App. 3d Cir. 1991). *See also Boyle v. Boyle*, 483 So.2d 1185 (La. App. 4th Cir. 1986) (the purpose of a contradictory hearing

on a rule to show cause is to allow both parties party to submit evidence to prove or disprove entitlement to the motion). In addition, plaintiffs were required to serve the motion on defendants personally and by the sheriff. *First Federal Sav. & Loan Ass'n of New Iberia v. Stanley*, 578 So.2d 220 (La. App. 3d Cir. 1991). Even when the law authorizes an *ex parte* motion, the mover should still give the adverse party reasonable advance notice to afford it an opportunity to object. *See* Plotkin, 2 La. Civ. Procedure, 236 (West Group 2001).   Plaintiffs have provided no justification for their failure to do so, nor did they cite any Louisiana statutory or case authority entitling them to an *ex parte* order.

Ultimately, the *ex parte* preservation order fails to satisfy even the minimum requirements for procedural due process under U.S. Constitution Amends. 5 and 14 and La. Const. 1974, Art. 1, § 2.   "The right to procedural due process requires "notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case." *State v. 1979 Cadillac Deville*, 627 So.2d 729, 731 (La. App. 2d Cir. 1993); *Succession of Griffith*, 415 So.2d 670, 674 (La. App. 4th Cir. 1982). *See also Wilson v. City of New Orleans*, 479 So.2d 891, 901 (La. 1985) ("The opportunity to present reasons, either in person or in writing, why a proposed action should not be taken is a fundamental requirement of due process."). "An elementary and fundamental requirement of due process is notice reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Fields v. State*, 98-0611 (La. 7/8/98), 714 So.2d 1244, 1258.  In violation of these basic requirements, plaintiffs' motion and this Court's *ex parte* order purport to control the behavior of parties not even within this Court's personal jurisdiction and simply ignore the rights of those within its jurisdiction who were well known to the plaintiffs.

**B.      Plaintiffs failed to meet the requirements for injunctive relief**

When a court orders a party to do something rather than to merely maintain the status quo, the order is a mandatory injunction.  See *Denta-Max v. Maxicare Louisiana, Inc.*, 95-2128 (La. App. 4 Cir. 3/14/96), 671 So.2d 995, 996.  The mover for such relief must do more than make a prima facie showing; he must show that he is entitled to injunctive relief by a preponderance of the evidence. *Bollinger Machine Shop & Shipyard, Inc. v. U.S. Marine, Inc.*, 595 So.2d 756, 758-59, (La. App. 4 Cir.), *writ denied*, 600 So.2d 642 (La. 1992); *Metro Riverboat Assoc., Inc. v. Bally's Louisiana, Inc.*, 97-1672 (La. App. 4 Cir. 1/14/98), 706 So.2d

553, 559, *writ denied*, 98-0679 (La. 5/29/98), 720 So. 2d 339; *Maynard Batture Venture v. Parish of Jefferson*, 96-649 (La. App. 5 Cir. 12/30/96), 694 So.2d 391, 393.

Louisiana's Code of Civil Procedure art. 3601 provides that injunctive relief is appropriate if the applicant can show that it will otherwise suffer irreparable injury, loss, or damage. Under Article 3603, a party may only obtain injunctive relief *ex parte* in the form of a temporary restraining order ("TRO") on a showing that 1) the applicant will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition, and 2) the applicant's attorney can certify to the court that she has made efforts to give the other party notice or can show reasons why notice is not required. *John W. Fisk Co. v. Michel*, 97-2105 (La. App. 4 Cir. 3/25/98), 709 So.2d 1061, 1064. When the Court issues a TRO, it must also set the matter for a preliminary-injunction hearing "at the earliest possible time." La. Code Civ. P. art. 3606. A mandatory injunction can only issue after a contradictory hearing. "An injunction in mandatory form may be properly issued in summary proceedings where all parties had an opportunity to present their case in a full evidentiary hearing." *Bollinger*, 595 So. 2d at 758-59.

Under these legal standards, the February 21 *ex parte* order is unquestionably an injunction in the form of an improper TRO that mandates Bayer to take specific action and refrain from other acts. Among other things, without any prior notice or hearing, the order: (i) compels Bayer to preserve all documents and information pertaining to Baycol; (ii) requires Bayer to suspend all routine destruction of documents and maintain back-up tapes and hard drives at huge expense and incalculable disruption to Bayer's normal document practices; and (iii) commands Bayer to disseminate the order to all personnel necessary to comply with it.

Numerous other courts have concluded that document retention orders such as this one are injunctions that must satisfy the procedural and substantive requirements for an injunctive order. As one court explained in reviewing a proposed document preservation order:

> Given the language of the Plaintiffs' Proposed Order, to the effect that each of the parties is "restrained and enjoined from altering, interlining, destroying, permitting the destruction of, or in any other fashion changing any 'document,'" there can be little doubt that the Plaintiffs seek an exercise of the injunctive powers of the Court.

*In re Potash*, No. 3-93-197, MDL No. 981, 1994 WL 1108312 at *8 n.9 (D. Minn. Dec. 5, 1994).

*See also Abdallah v. Coca-Cola Co.*, No. Civ. A. 1:98CV3679, 1999 WL 527835 at *2 (N.D. Ga. July 16, 1999); *See Humble Oil & Refining Co. v. Harang*, 262 F.Supp. 39, 42 (E.D.La.

1966) (denying a preliminary injunction that sought to prevent the defendant from removing, concealing, or destroying documents or other writings that might disclose information prejudicial to him); *Pepsi-Cola Bottling Co. of Olean v. Cargill, Inc.*, 1995 WL 783610 at **3-4 (D.Minn. Oct. 20, 1995) ("[S]uch an Order, being in the nature of an injunctive remedy, should only issue upon an adequate showing that equitable relief was warranted."). Courts should be reluctant to issue preliminary injunctions where "the moving party substantiates his side of the factual dispute on information and belief." *See Marshall Durbin Farms, Inc. v. National Farmers Organization, Inc.*, 446 F.2d 353, 357 (5th Cir. 1971) (citing *Humble Oil & Refining Co. v. Harang*, cited above); *In re Potash*, 1994 WL 1108312, at *7-8; *Cunningham v. Bower*, Civ. A. No. 89-2101-S, 1989 WL 35993 (D. Kan. Mar. 21, 1989).

    **1.**    **Plaintiffs failed to meet the procedural requirements for a TRO**

    Because the February 21 order to preserve evidence is injunctive relief, plaintiffs were required to comply with the procedural requirements for notice and a hearing under Louisiana law. Plaintiffs did not even attempt to meet any of the requirements for a TRO, including the requirement that the applicant's attorney must certify to the court in writing that she or he made efforts to give the notice or the reasons supporting his claim that notice should not be required. *John W. Fisk Co. v. Michel*, 97-2105 (La. App. 4 Cir. 3/25/98), 709 So.2d 1061, 1064-65. *See also* Comments (a) and (b) to Article 3603 (noting that the notice and irreparable-injury requirements were intended "to reduce the practice of issuing *ex parte* restraining orders without notice of any kind, and to permit the conduct of some type of adversary proceeding before, rather than after, the issuance of injunctive relief. *Cf.* Rule 65(b), Federal Rules of Civil Procedure.").

    Moreover, plaintiffs failed to comply with several other essential requirements for injunctive relief: A TRO must be endorsed with the date and hour of the issuance, state why the order was granted without notice and hearing, and expires by its terms within such time after entry not to exceed ten days. La. Code Civ. P. art. 3604. An order granting injunctive relief must describe in reasonable detail the act or acts sought to be restrained. La. Code Civ. P. art. 3605. When a TRO is granted, the application for a preliminary injunction must be assigned for hearing at the earliest possible time. La. Code Civ. P. art. 3606. A TRO or preliminary injunction "shall not issue unless the applicant furnishes security in the amount fixed by the court, except where the law dispenses with it." La. Code Civ. P. art. 3610. Failure to comply with each of these requirements warrants vacating the February 21 Order.

2.   **Plaintiffs have failed to carry their substantive burden of proof for injunctive relief**

Under Article 3603, "a temporary restraining order can only be granted without notice where the applicant shows by a verified petition or by a supporting affidavit that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition. Even after a contradictory hearing, a trial court may enter a preliminary injunction only when the moving party proves three elements: (1) that the injury, loss, or damage he will suffer if the injunction is not issued may be irreparable; (2) that the mover is entitled to the relief sought; and (3) that the mover will likely prevail on the merits of the case. *St. Raymond v. City of New Orleans*, 99-2438 (La. App. 4 Cir. 5/17/00), 769 So.2d 562, *writs denied*, 2000-2565, 2000-2566 (La. 9/13/00), 767 So. 2d 697; *A to Z Paper Co., Inc. v. Carlo Ditta, Inc.*, 98-1417 (La. App. 4 Cir. 9/9/98), 720 So.2d 703, 708. An injunction "is a harsh, drastic, and extraordinary remedy" that "should issue only if the applicant is threatened with irreparable loss without adequate remedy at law." *HCNO Services, Inc. v. Secure Computing Systems, Inc.*, 96-1693 (La. App. 4 Cir. 4/23/97), 693 So.2d 835, 842, *writ denied*, 97-1353 (La. 9/5/97), 700 So.2d 513. *See also Freeman v. Treen*, 442 So.2d 757, 763 (La. App. 1st Cir. 1983). ("Before issuing the preliminary injunction, the trial court should consider also whether the threatened harm to the plaintiff outweighs the potential for harm or inconvenience to the defendant and whether the issuance of the preliminary injunction will disserve the public interest.") Under these standards, the entry of the February 21 order *ex parte* was improper as a TRO, and plaintiffs do not qualify for injunctive relief even after a contradictory hearing, because plaintiffs cannot – indeed, have made no effort to – satisfy these requirements of Louisiana law.

a.   *No showing of irreparable harm*

Plaintiffs have not and cannot show that they will suffer immediate and irreparable injury without the February 21 order. To do so, plaintiffs would have to establish that they "cannot adequately be compensated in money damages for [their] injury or [suffer] injuries which cannot be measured by pecuniary standards." *HCNO Services v. Secure*, 693 So.2d at 842. Plaintiffs do not satisfy this element for injunctive relief.

The act of filing a lawsuit does not entitle a plaintiff to a document preservation order. Indeed, "the rush of a litigant to the courthouse to seek the court's aid in restraint of an adverse party is not justified merely because it is alleged that, in the absence of judicial prohibition, an

event may occur." *Humble Oil & Refining Co. v. Harang*, 262 F.Supp. 39, 42 (E.D. La. 1966). Instead, a party seeking a document-preservation injunction must offer proof of "an imminent threat of destruction or concealment of the evidentiary documents." *Id.* at 43. The mere theoretical possibility that a party might destroy a document is not sufficient to establish irreparable injury. The reason for this sensible requirement is obvious:

> Were the fact that a party to a law suit would suffer irreparable injury if a document were destroyed the sole test for the issuance of an injunction to prevent its destruction, injunctions should issue in every case in which important documents are within the control of either party. Obviously, this is not done and it cannot and should not be done.

*Id.* (emphasis added).

The same analysis applies here. Plaintiffs have offered no basis for concluding that there is any need for the document preservation order here. To the contrary, as in *Humble Oil*, Plaintiffs have sought this preservation order, not based on a showing of need, but on the unfounded assertion that Bayer is "routinely destroying relevant evidence" and that "additional evidence is probably destroyed by the manufacturing Defendants as each day goes by under a corporate retention policy." Plaintiffs' Memorandum in Support of *Ex Parte* Emergency Motion to Preserve Evidence, page 2. Plaintiffs cannot point to a single instance where a relevant document has been destroyed. If such unfounded and speculative conclusions were an adequate basis for an injunction, a document retention order would be required in every lawsuit.

But even if speculation alone were sufficient – and it is not – Carmen Ritacco's attached deposition testimony and affidavit show that Bayer acted in a timely and responsible fashion to preserve documents relevant to the Baycol litigation well before the present lawsuit even was filed. *See* **Exhibit C**, Ritacco Dep. at 33-34, 48-49; **Exhibit D**, Ritacco Aff. ¶ 10. Within a day of receipt of notice of the first Baycol-related lawsuit, Bayer directed that all relevant documents be preserved. Ritacco Dep., at 76-77; Ritacco Aff. ¶ 10. Moreover, Bayer notified all Bayer employees with Baycol responsibilities and instructed them to preserve all Baycol documents, including information in electronic files. *Id.* These instructions had been in place months before this lawsuit was filed, and they continue in effect today. Baycol-related e-mails, data, and documents are being preserved on a special set of backup tapes stored in a vault apart from Bayer's working computer system and library, and Bayer has engaged experts to copy and store affected hard drives. Ritacco Dep., 33-39, 48-50, 58, 65-67, 86-88.

Under these circumstances, no document preservation order is needed. Indeed, when materially indistinguishable circumstances were presented in another Baycol-related case, a Connecticut court recently denied a motion for a document preservation injunction in that case. *See* **Exhibit H,** *Lavoie* Hr'g Tr. at 6-7. Likewise, the United States District Court for the Middle District of Alabama recently vacated a document preservation order – entered by an Alabama trial court, prior to removal, in another Baycol case – because "at the very least some evidence should be offered to justify such an extreme remedy." *See* **Exhibit G,** *Hester,* slip op. at 7. And, more generally, courts across the country have denied requests for document preservation orders where, as here, the movant cannot prove any imminent threat of document destruction. *See Abdallah v. Coca-Cola Co.,* No. Civ. A. 1:98CV3679, 1999 WL 527835, at *2 (N.D. Ga. July 16, 1999) (denying request for document preservation order because "no basis for concern regarding Coca-Cola's efforts to preserve all documents relevant to this lawsuit"); *Pepsi-Cola Bottling Co. v. Cargill, Inc.,* Civ. No. 3-95-784, 1995 WL 783610, at *3 (D. Minn. Oct. 20, 1995) (denying motion for document preservation order where there was no "adequate showing that equitable relief was warranted"); *In re Potash,* 1994 WL 1108312, at *8 (declining to enter preservation order because "[p]laintiffs do not assert that some recent developments in the case, which arose just prior to the filing of this Motion, have led them to belief that relevant documents were in jeopardy of destruction"); *Humble Oil & Refining Co v. Harang,* 262 F. Supp. 39, 42-44 (E.D. La. 1966) (holding that unsupported affidavit alleging mere threat of document destruction is insufficient to support issuing injunction prohibiting destruction of documents).

Indeed, the harm about which plaintiffs speculate, even if it occurred, would not be irreparable. As explained above, sanctions and the doctrine of spoliation provide remedies to any litigant who suffers destruction of evidence at the hands of an opposing party.

### b. *The balance of equities does not support an injunction*

In addition, the order should be set aside because the balance of the equities falls decidedly against the plaintiffs. As noted above, before a TRO can issue without notice and a hearing, the mover must show that it will suffer irreparable harm before the non-mover can be heard in opposition <u>and</u> that the mover has attempted to notify the non-mover or that notice is unnecessary under the circumstances. Even then, the Court must set the matter for a prompt hearing thereafter. In deciding whether to grant injunctive relief after a hearing, the court must

consider whether the threatened harm to the plaintiff outweighs the potential for harm or inconvenience to the defendant and whether the issuance of the preliminary injunction will disserve the public interests. *Freeman v. Treen*, 442 So.2d at 763. Once again, plaintiffs made no effort to satisfy these requirements, and this Court has made no findings that would reflect that it even considered the issue.

As demonstrated above, plaintiffs submitted no convincing evidence that, absent entry of the order, they would suffer any harm. Bayer has already taken the necessary steps to ensure that the documents and other information relevant to this lawsuit would be preserved.

As to the harm and inconvenience on Bayer, plaintiffs failed to give Bayer any notice or reasonable opportunity to explain the magnitude of the burden that would be imposed upon Bayer by their proposed order. Indeed, Bayer first became aware of the plaintiffs' motion and the *ex parte* order after it was filed and signed. The burden imposed is great: Its literal terms require Bayer to preserve "all" documents "pertaining to Baycol," including requiring the suspension of routine recycling of back-up tapes, deleting of e-mail, and reformatting hard drives, without any showing of relevance or materiality. The order imposes substantial obligations upon Bayer wholly out of proportion to the speculative benefit to plaintiffs.

Apart from the burdens obvious from the face of the order, the evidence demonstrates that the costs Bayer must incur to comply with the order are staggering. Stopping Bayer's electronic management system and removing and preserving "existing" back-up tapes "would impose a one-time cost of $1.4 million, plus labor," and place "an enormous burden on the system, interrupt normal data processing operations, and result in needless preservation of duplicate data." *See* Ritacco Dep. at 74-76, **Exhibit C** attached; Affidavit of Ritacco, ¶ 9, **Exhibit D** attached. Moreover, to retain all back-up tapes indefinitely rather than "recycling" unnecessary tapes will cost nearly $100,000.00 per month. *Id.*

**C.      Even if the February 21 order were deemed a discovery order and not an injunction, it should be set aside**

   **1.      Plaintiffs failed to meet the procedural requirements for a protective discovery order**

To the extent that plaintiffs' motion seeks to preserve discoverable evidence, it is not only an injunction but also arguably in the nature of a protective order subject to the requirements of La. Code Civ. P. arts. 1420, *et seq.* According to La. Code Civ. P. art. 1426, good cause must be shown before a court may issue a protective order. Moreover, a protective

order can only be granted after a contradictory hearing. *See Matherne v. Hannan*, 534 So.2d 991, 992 (La. App. 4th Cir. 1988), *writ denied*, 537 So.2d 1169 (La. 1989). As the Fourth Circuit recognized in *Matherne*, "[P]rotective orders like all rulings, orders, decrees and judgments issued by courts of law must be based on record evidence. 'Orders of court, except in the case of authorized *ex parte* orders, must be predicated upon evidence introduced into the record, affording ample opportunity to those affected thereby to contradict, rebut, and otherwise support their position in the matter.'" Id. at 992, citing *Economy Carpets Mfgs. & Dist., Inc. v. Better Business Bureau of Baton Rouge Area, Inc.*, 330 So.2d 301, 304 (La. 1976). In *Matherne*, the court of appeal vacated a protective order that enjoined parties from discussing any information obtained in discovery with non-parties or expert witnesses to the litigation, because, as is the case here, the injunction was improperly issued without notice to the parties in an adversarial hearing on the issue.

Here, contrary to La. Code Civ. P. art. 1426 and *Matherne*, plaintiffs unilaterally proposed the *ex parte* order without any showing of need, without evidence from Bayer about the impact of such an order, and without tailoring it to the realities of Bayer's document systems. Even a court's authority under La. Code Civ. P. art. 1631 and "inherent" power to control its proceedings would not provide a basis for signing such an order and dispensing with the requirements of the Louisiana Code of Civil Procedure and the jurisprudence for a contradictory hearing and record evidence. *See Matherne*, 534 So.2d at 992.

Significantly, on the same day when they filed their *ex parte* emergency motion to preserve evidence, plaintiffs filed a rule to show cause why they should not be limited to serving 25 interrogatories against each defendant under Civil District Court Rule 9, § 2. Despite recognizing the need for a contradictory hearing on that discovery motion, plaintiffs nonetheless proceeded *ex parte* on their motion to preserve evidence, ignoring CDC Rule 9, § 1, which provides that "[a]ll contradictory motions relating to discovery shall be heard on rule day, or as otherwise ordered by the judge." Further, under CDC Rule 9, § 4, "[n]o motion relative to discovery shall be filed unless accompanied by a certificate of counsel for the moving party stating that counsel have conferred . . . for purposes of amicably resolving the issues. . . ." Contrary to Louisiana law and this Court's Rules, plaintiffs gave <u>no</u> notice to Bayer before moving *ex parte* for the February 21 preservation order. For these procedural reasons, this Court should set aside the February 21 order.

2.    The *ex parte* order exceeds the scope of permissible discovery

Under Louisiana's concept of discovery, "parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. . . ." La. Code Civ. P. art. 1423. The February 21 order is vague, overbroad, and beyond this scope. It unjustly requires the defendants to "preserve all documents and information, whether in paper or electronic format, pertaining to Baycol (Cerivastatin) regardless of the actual trade name used" and to "suspend all routine destruction of documents, including but not limited to, recycling back-up of tapes, automatic deletion of e-mail, and reformatting hard drives." Notably, it contains no requirement of relevance to the claims or defenses of this litigation and provides no mechanism for the parties to resolve their disputes amicably. Unless vacated and modified, the order presently in place will only foment disputes because of its vagueness and overbreadth.

3.    The *ex parte* order is unreasonable and burdensome

As noted above, in *Hester*, Judge De Ment granted Bayer's motion to vacate a document-retention order that imposed significant burdens upon Bayer (**Appendix G**, hereto). After explaining that "considerations of fairness, equity and efficiency enter the calculus," the *Hester* court set forth a two-part framework to govern its analysis: "[1] whether such an order is appropriate in the first place, and if so [2] the proper shape it should take," *Id.* at 3-4. Applying that framework, the court set aside an *ex parte* document-retention order because "[d]efendants were not given the opportunity to inform the court that they already were taking the appropriate steps as required by the law . . . nor were they given the opportunity to assist in the shaping of said order." *Id.* at 6. The district court explained that "at the very least some evidence should be offered to justify such an extreme remedy." *Id.* at 7.

These principles apply equally here. Bayer first received notice of this proposal from plaintiffs *after* this Court signed the *ex parte* order on February 21. Bayer was never given an opportunity, before the order was entered, to demonstrate the burden that the order causes. Nor was Bayer able to inform this Court of the extensive safeguards relating to document preservation already in place. Mr. Ritacco's deposition and affidavit, discussed in detail above, demonstrate the extreme prejudice that Bayer suffers as a result of the order and further demonstrates that such an order is unnecessary. Given these circumstances, the February 21 order is vague, overly broad, unreasonable, burdensome, and improper. It cannot be justified as a reasonable protective order.

What is more, the February 21 order provides no justification for the denial of the procedural and substantive protections afforded to defendants such as Bayer through the relevant rules. This sets a dangerous precedent that a court may enter a sweeping and disruptive order without the procedural protections of La. Code Civ. P. arts. 3601, *et seq.*, concerning injunctive relief, or without the careful planning and tailoring required by La. Code Civ. P. art. 1426, concerning protective discovery orders. Such orders, if permitted, would undoubtedly be used not for legitimate litigation-related purposes to preserve discoverable material, but instead as a means of increasing the costs of litigation and as a bargaining chip to force settlement unrelated to the merits of a pending action.

### III.   This Court Should Grant Expedited Relief to Avoid Irreparable Harm to Bayer and Appellate Review

As Bayer has explained above and in its accompanying motion for expedited hearing on this motion to vacate or dissolve the *ex parte* order, this Court must dissolve the February 21 *ex parte* order as soon as possible. Bayer is facing astronomical expense to preserve paper and electronic data to comply with the existing order.

Further, Bayer faces a deadline of March 25, 2002 for filing a supervisory writ application in the Fourth Circuit to review the February 21 order. Rules 4-2 and 4-3 of the Uniform Rules--Courts of Appeal require a party to first file its Notice of Intention to Apply for Supervisory Writs in the district court, which then sets a reasonable return date or deadline for filing the writ application in the appellate court. That deadline must not exceed 30 days from the date of the ruling to be reviewed. Because this 30-day deadline from the underlying February 21 order will expire on March 25, 2002, Bayer respectfully asks for an expedited hearing and ruling from this Court on this motion to vacate.

Bayer has no choice but to ask for relief from the Court as soon as possible. Bayer wants to give this Court an opportunity to correct the February 21 order before filing its Notice of Intention and proceeding to the Court of Appeal. If this Court promptly vacates the existing order of February 21 or enters a revised order adopting one or more of the MDL orders as prayed for herein, no appellate review will be necessary.

## CONCLUSION

The vague and overbroad preservation order presently in effect is both unnecessary and procedurally and substantively erroneous. After a contradictory hearing, the Court should vacate its order of February 21, 2002, if the Court deems that an order is necessary, and enter a modified order adopting the MDL preservation order.

Respectfully submitted,

_Charles M. Marshall III_
Mary L. Meyer (#19966)
John F. Olinde (#1515)
Charles D. Marshall (#27564)
**CHAFFE, McCALL, PHILLIPS,**
**TOLER & SARPY, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163-2300
Telephone No.: (504) 585-7000
**Attorneys for Bayer Corporation**

## CERTIFICATE OF SERVICE

I do hereby certify that I have on this __4__ day of __March__, 2002, served a copy of the foregoing pleading on counsel for all parties to this proceeding, by fax and by mailing the same by United States mail, properly addressed, and first class postage prepaid.

_Charles M. Marshall_