UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| IN RE:  SEROQUEL PRODUCTS | MDL Docket No.: |
| | 6:06-md-1769-Orl-22DAB |
| LIABILITY LITIGATION | |
| _____ | |
| THIS RELATES TO: | |
| ALL CASES | |
| _____ | |

MDL PLAINTIFFS' OBJECTIONS TO MAGISTRATE'S REPORT
AND RECOMMENDATION OF DECEMBER 22, 2006
AND SUPPORTING MEMORANDUM

TO THE HONORABLE COURT:

The MDL Plaintiffs' hereby file their Objections and Supporting Memorandum directed to the Report and Recommendation ("R&R") dated December 22, 2006 (Dkt. 113).  These Objections and Memorandum are being made pursuant to M.D. Fla. L.R. 6.02(a), and 28 USC §636.

**I.**
**OBJECTIONS TO R&R**[1]

Plaintiffs assert the following objections to the R&R:

1.    The Magistrate Court not granting in its entirety the Joint Motion to Adopt Proposed CMO 2, as negotiated and agreed upon by the parties.  (Dkt. 107, 110) These agreements regarding the manners and methods for both sides to comply with their discovery obligations to the other were carefully balanced, symbiotic, and interrelated.  This would represent the second time Plaintiffs have been

_____

[1]This Court can take additional evidence and make a de novo determination of any issues raised by a Report and Recommendation.  Complex Manual 4th, §11.53, at 117.

deprived of the benefit of a negotiated compromise realized with Defendants in exchange for a realistic timetable for production of Plaintiff Fact Sheets ("PFS").

2.      The Magistrate Court altering the time frames, especially for the Bailey firm's service of roughly 1080 PFS (or "one-sixth") a month beginning January 31, 2007, and each month thereafter until June 30, 2007 (6500+ in six months).  This result hopefully was an unintended consequence of an attempt to give Plaintiffs **relief** from the Court's earlier schedule, which specifically did <u>not</u> require any firm to serve more than 500 PFS per month. (Dkt. 83 at 2)  Defendants have joined in Plaintiffs' assertions and recognition that this timetable is unrealistic and overly burdensome on both sides, especially given this particular plaintiff population.  The accelerated timetable will likely result in numerous cases being dismissed, not on the merits of their cases, but because they can not complete the PFS in time.   The parties proposed timetable was already near the limits of practicable production by Plaintiffs **and, importantly use and digestion by Defendants**, with substantially all of the PFS production being fully completed within the first half of this Court's stated two-year goal for remand.  The steady and reasonable timetable suggested by the parties will also likely **increase** the amount of claims that are **voluntarily dismissed** by Plaintiffs' counsel.  With adequate time for Plaintiffs to provide thorough and complete answers to the PFS questions, any untenable claims will be easier to identify and can be properly expunged from this litigation.   Incomplete responses to PFS serve no-one's interests and will only further obscure the true merits of the claims.  Finally, the massive amounts of additional work required to advance this MDL are not contingent on, nor slowed in any way, by the schedule proposed and agreed to by the parties.

3.      The Magistrate Court only accepting parts of joint proposals.  Partial acceptance of the parties' joint proposals stifles continued cooperation and turns the concept

of "meet and confer" on its head.  Plaintiffs originally conceded to the format of Defendant's otherwise onerous PFS, solely in return for a rolling production schedule (much like that requested and granted to Defendants).  Overly broad fact sheets need time to complete, especially with handicapped plaintiffs.  Fact sheets boiled down to essential information could and still can be completed much quicker.  In this situation, Plaintiffs cooperation with Defendants got them the "worst of both worlds," an overly broad fact sheet and an unrealistic timetable to get them completed.  The Magistrate Court accepted the form of the PFS, but deprived the Plaintiffs' their benefit of the bargain.  Likewise, when the Parties turned to Defendants' document production, Plaintiffs withdrew their discovery requests in consideration of the difficulties expressed by Defense counsel on getting it done in an unrealistic timetable.  Again, the consideration given for Plaintiffs' grant of relief to Defendants was that Plaintiffs would be given the same relief.  Such did not occur.  Plaintiffs respectfully object to continually being deprived of the benefits of their cooperation.

4.   Requiring the severance of over 6500 individual multi-party filings in Massachusetts, triggered solely by a presentation given without advance notice to Plaintiff's counsel.  These claims have been properly joined under Rule 20 where all plaintiffs have taken the same drug, made and distributed by the same drug company, marketed under the same nationwide sales efforts, involving the exact same labeling and warnings issues, and sharing otherwise identical legal and factual allegations.

5.   Requiring re-filing or dismissal of a severed claim upon a finding of misjoinder is not consistent with Rule 21.

**II.**
**RELIEF REQUESTED PER LOCAL RULE 6.02**

The District Court is respectfully requested to enter the following relief, stated in alternatives, including modifications, in the event full rejection of the R&R is not granted:

1.      Reject selective acceptance of the parties' agreement and enter the proposed CMO 2 in its entirety.  This will solve many of the problems raised by Plaintiffs' objections, including: to restore the careful balance struck by the parties, allow the production of a better product by Plaintiffs, **decrease** the incidence of Plaintiffs being deprived a fair shot to present their claims, **increase** the dismissals of newly discovered untenable claims, and will affirm the benefits of cooperation among the parties.

2.      Only in the event that CMO 2 is not adopted, consider:

   a.   Revisiting the format of the PFS to eliminate irrelevant and superfluous questions that greatly increase the difficulty and time required for Plaintiffs to complete the PFS; and/or

   b.   Adopt a two-staged PFS process whereby crucial information and authorizations are provided quickly to Defendants via Plaintiffs' proposed PFS, with a future obligation to provide the additional information sought in the current onerous PFS.

These alternative proposals will adequately provide Defendants with the pertinent and relevant information needed to understand Plaintiffs' individual claims, including allowing medical records to be obtained via a HIPAA authorization. These proposals, as should any schedule adopted for production of PFS, must

include a grace period for compliance along with some reasonable advanced notice of expectations.

3.   No severance should be required at this time as there has been proper permissive joinder under Rule 20.  These cases can proceed much more efficiently during the entire pre-trial proceedings in this MDL if they are allowed to remain in their current complaint groups.  Nothing prevents these cases from being individually disposed of, separated for remand or trial, or otherwise individually advanced due to the fact that there are other named Plaintiffs in the same complaint.  Plaintiffs respectfully disagree with the suggestion that severing these thousands of claims into individual complaints will **lessen** the complications and burdens of the parties, the local clerk's office, this Court, as well as the transferor clerk's office and court upon remand.

4.   In the event that severance of the current groupings was deemed appropriate, allow claims to be severed according to the State in which a Plaintiff alleges its injuries occurred.

5.   In the event that some form of severance is deemed appropriate, allow continued input by Plaintiffs into the specific mechanics and schedules adopted by the Court.  Plaintiffs' goals would be to eliminate unnecessary burdens on the Clerk, the Court, and the parties.

6.   Require that future significant allegations such as improper venue or misjoinder of claims are brought through advance notice and procedure, rather than by ambush tactics.

7.     Be given additional access to the Court by all parties in a less formal setting to foster a greater appreciation of the efforts and issues the parties are undertaking to avoid another "flabbergasted" situation from arising.  In the event that such access was deemed inappropriate, Plaintiffs would be willing to discuss the appointment of a Special Master to be involved as a liaison the Court between the regularly scheduled hearings in front of Judge Baker.

### III.
### INTRODUCTION AND OVERVIEW

From the first status conference and direction from the court in this matter on September 7, 2006 until the present, counsel for both Plaintiffs and Defendants have been engaged in a whirlwind of activity in attempts to steer this litigation in the most organized, thoughtful and appropriate manner possible.  Despite the parties' substantial efforts to manage this litigation on the appropriate tracks necessary to meet the court's stated goal of remand within two years from transfer, the court is apparently not satisfied thus far with the pace nor mechanics that the parties have suggested.  This appeal is filed to address the court's stated concerns and to suggest that the parties have been very conscientious and thoughtful in terms of considering the best way to achieve the court's goals.  In this regard, Plaintiffs respectfully ask for reconsideration of the issues brought forth in this memorandum.

### IV.

### PLAINTIFF FACT SHEETS

The PFS issue is one of the root problems faced to date in this Court.  While it is good that the parties have started the PFS process, such need not be the sole focus of this MDL.  At most, this should be a peripheral issue in the background of the more important issues this MDL must tackle for resolution.  Contrary to the suggestions of Defendants, most of the work to be done in no way awaits the completion of the very last PFS.

These objections focus on the time frames in the R&R set for service of the PFS.  No appeal would have been brought by Plaintiffs on the PFS schedule had their shorter version of the Fact Sheet been used.  Plaintiffs' suggested PFS focused more on the "meat" of a Plaintiffs' background and claims, and would have greatly accelerated the process of allowing Defendants to obtain medical records on each.  However, Defendants' former lead counsel, Sidley Austin demanded a much more onerous version (Dkt. 45), and would not negotiate on any other outstanding matters unless their version was adopted.

At the initial Status Conference before this Court on September 7, 2006 Co-Lead Counsel Paul Pennock made it very clear that there was at that time and would continue to be a dispute with Sidley lawyers as to the final form and scope of the PFS.  (Dkt. 32, at 31-32, 41-42)  Yet, Plaintiffs started moving forward in giving the Defendants the essential information and authorizations by serving them with the short form version of the PFS. (Dkt. 44)  This was not acceptable to the Sidley lawyers.  (Dkt. 45)  Plaintiffs finally and reluctantly agreed to Sidley's longer and more onerous PFS form, but only in exchange for return to reasonable time frames. (Dkt. 64)  After reaching that agreement, Sidley lawyers did not even finalize the form of their PFS until early November (Dkt. 64).  Until that form was accepted, the Plaintiff firms in this MDL had absolutely no way to "know" what specific questions would be asked and in which scope and format such questions would take.  Substantial work was required once this format was distributed to the firms, and shortly thereafter, forwarded to the clients along with instructions and admonishments to complete them as thoroughly, but quickly as possible.  *See the attached affidavit of Laurence Tien regarding*   This crucial fact seems to get overlooked. Plaintiffs would <u>never</u> have agreed to the Sidley lawyers' PFS if they had known that because of this compromise this PFS would ultimately become a yoke of their own potential destruction. This point has apparently not been recognized by the Magistrate, or perhaps by this Court.  This critical misunderstanding must be addressed to avoid Plaintiffs' continued shackle to a PFS form with which they cannot comply under the time frames suggested by the R & R.  If CMO 2 is not adopted in its entirety, then Plaintiffs' PFS short form, Exhibit "A", must be used in some form.

**Restore CMO 2 in its entirety**

The overarching objection to the R&R is simply the fact that the Court has adopted only portions of the Joint Stipulations which led to the proposed Case Management Orders 1 and 2 ("CMO 1 and 2") and not the agreement in its entirety.  The Joint Stipulations were the result of full and complete negotiations and compromises between the Plaintiffs and AZ.  (Dkt.107, 110)  The Magistrate has essentially left intact those portions of this negotiated compromise concerning Defendant's relaxed production and discovery burdens.   At the same time, the Magistrate has totally altered those portions of the same interrelated agreement which were pertinent and important to Plaintiffs.  Plainly, the outline of the proposed stipulation proffered in Court on December 12, 2006 (Dkt. 107), following extended, late night review and negotiation, which resulted in the cooperative drafting of proposed CMO 1 and 2, was the result of compromises, give and take.

Because AZ was unable to comply with discovery Plaintiffs requested, as well as that which the Magistrate ordered on 12/11/06.  (Dkt. 106, at 74-75)  Plaintiffs gave up certain rights in order for AZ to have the benefits of a discovery schedule it wanted.  This was in return for Plaintiffs receiving a reasonable schedule for service of AZ's onerous PFS.  As noted in the Joint Motion, both these agreements (AZ discovery schedule and Plaintiff Fact Sheet service and PFS) were interrelated.  It was requested that they remain linked and not to be parceled out.  (Dkt. 110-4)   The ability to cooperate and make compromises with opposing parties is crucial to an orderly resolution of the ultimate disputes.  "Meet and confer" has little value if one party is constantly worried about being later deprived the benefit of their compromise.  In this case, the R & R disregards the parties' agreement and for some firms sets a more onerous timetable than existed even prior to the parties' compromise.  (Dkt. 83 at 2, limiting any single firm's production obligation to no more than 500 per month)  This was the type of schedule the Magistrate had previously been told, in very candid terms, (Dkt. 84, at 14-15) that Plaintiffs could not meet given this client population.  The scheduling impossibility is not due to the number of Plaintiffs involved, but due to the onerous and burdensome Sidley PFS form.  Thus,

on both times that compromises have been adopted piece-meal, Defendants have been given the benefits of the bargain Plaintiffs agreed to, but the corresponding benefit to Plaintiffs has been emasculated.  One should not stand without the other.  The format of the PFS is the sole trigger for all of the resistance and insistence on behalf of a more protracted timetable.  A more detailed PFS can be accomplished; however the additional information requires adequate time to respond. The full adoption of CMO 2 will correct these problems and still allow the parties and court to accomplish their jobs.  CMO 2 should be reinstated in its entirety or revisited altogether to restore a fair balance for both sides involved.

**<u>Alternatively, Plaintiffs' version of the PFS should be used</u>**

The Plaintiffs would not face these problems if they had not agreed to the PFS the Sidley lawyers wanted. That agreement reached in Chicago was to accept the Sidley lawyers' PFS form, but only as a *quid pro quo* to allow the Plaintiffs the necessary and ample time to actually complete these onerous forms.  This critical factor has been told to the Magistrate on several occasions.  (See Dkt. 80, 84 at14-15)  Yet, the Magistrate Court has, unfortunately, continually overlooked the fact that the Sidley lawyers' PFS form would never have been agreed to if Plaintiffs had known a more stringent and demanding time frame would be ultimately established in the R&R, or other Court Orders.  (Dkt. 83)  It is not that the Plaintiffs do not want to meet the stated time frames.  Moving this litigation on and putting pressure on the Defendants is a breath of fresh air, as Mr. Pennock has advised the Court previously.  (Dkt 84, at 74; 68, at 26)  However, it is now the Defendants who are taking unfair advantage of the Plaintiffs' conditional and intertwined agreement to the Sidley lawyers' demanded PFS while walking away from the agreed upon time for completion and production.

The R&R quotes heavily from a case which, although its substantive holdings are in-apposite to the situation before this Court, nevertheless supports the Plaintiffs' Objections.  The case is <u>In Re: Phenylpropanolamina (PPA) Products Liability Litigation</u>, 460 F. 3d 1217 (9th Cir. 2006) (<u>PPA</u>).  In essence, that case dealt with substantive dismissals of various claims for

repeated and patent violations of court orders. The dismissals in the <u>PPA</u> case occurred nearly two (2) years after the initial Status Conference. <u>Id.</u> at 1223, 1233. Thus, the substantive holdings of the 9th Circuit, as it analyzed the reasons why cases should be dismissed or not, do not pertain to what is now before this Court. Although the R&R is based upon the proposition that the Plaintiffs as one of the parties, are "on probation" (Dkt. 107, at 12) for not cooperating, nor attempting to move this case along, the present chronology where we stand compared to the <u>PPA</u> case, in fact demonstrates the contrary.

Many comments made by the <u>PPA</u> court support the Plaintiffs' position herein. For example, quoting from other MDL cases, it is stated that "counsel must, for their part 'collaborate with the trial judge from the outset in fashioning workable programmatic procedures, and thereafter alert the court in a timely manner as operating experience points up infirmities warranting further judicial attention'." <u>Id.</u> at 1232, <u>quoting</u> <u>Massaro v. Chesley</u>, 111 F.3d 220, 229 (1st Cir. 1997) (<u>San Juan Dupont Plaza Hotel Fire Litigation</u>). The Manual for Complex Litigation also points out that "counsel act cooperatively and professionally" and "the judge and counsel to develop and carry out a comprehensive plan for conduct of pre-trial . . . proceedings." <u>Manual for Complex Litigation Fourth</u>, §10, at 7 (2004). In fact this is exactly what Plaintiffs' counsel have done. Instead, the Magistrate Court imposed, without collaborative consultation, its own PFS procedures. It is important to remember, as <u>PPA</u> observed, "for it all to work, multi district litigation assumes cooperation by counsel and macro -- rather than micro -- judicial management." <u>Id.</u> at 1231. Also, the Court should not forget that, again as <u>PPA</u> sets forth, "due process and fundamental fairness may not be sacrificed to provide assembly-line justice." <u>Id.</u> at 1250.

> MDL 1407 is quite a complicated proceeding, involving hundreds of actions and thousands of individual claims against many defendants. In consultation with Lead and Liaison Counsel and steering committees, the district court crafted case management orders to "uncomplicate" the mutli-district proceedings. Congress contemplated that an MDL court should do this to secure the "just and efficient conduct" of actions coordinated for pretrial purposes under 28 U.S.C. §1407 (a).

Id. at 1252.   The Court must not also overlook either one of the important factors is the disposition of these cases on the merits, Id. at 1228, and making sure individual plaintiffs have their day in court.

Further, it should be pointed out that PPA supports the position of the Plaintiffs in that AZ does not need the Sidley lawyers' lengthy, onerous tome of a fact sheet.  In PPA, involving thousands of individual claims in hundreds of cases, the PFS was in fact a simple document.  As this Court knows, the PFS "protocol [is] in lieu of interrogatories to streamline the process."  Id. at 1224.  In PPA the PFS Questionnaire,

> to be signed under oath seeking information about the plaintiffs' injuries, medical history, current medical condition, identification of the product claimed to have caused the injury, specifics of the injury suffered, and the identity of the plaintiffs' healthcare providers.  It also includes blank authorizations to be signed by the plaintiffs to allow defendants to collect medical and other records.

Id. at 1224.  This is quite unlike the Sidley lawyers' PFS in this case.  As PPA noted, their PFS called for "basic information about ingestion and injury that was critical to plaintiffs' cases, as well as to the defense, for without the information plaintiffs' claims would lack merit."  Id. at 1236.

As previously stated, Plaintiffs herein acceded to the Sidley lawyers' much more onerous, detailed, complicated and convoluted PFS but only if they were entitled to, as a basis of the negotiating a compromise, reasonable time frames in which to answer these lengthy PFS forms directed at people with mental illnesses.  This Court has always recognized the unique nature of the Seroquel Plaintiffs due to their mental incapacities.  (Dkt. 32, at 29)  On many other occasions, other courts have allowed a far simpler PFS from what the Sidley lawyers demanded herein, and what is more akin to Plaintiffs' version of a fact sheet.  See, e.g., In re:  Silica Products Liability Litigation (MDL), 398 F.Supp.2d 563, 756 (exh. 33), 764 (exh. 34), 765 (ex. B) (S.D. Tex. 2005) (silicosis claims).

The Court, and Magistrate, are requested, most respectfully, to look at scrutinize the Sidley PFS to determine its unreasonable nature and breadth. (Dkt. 64) (Exhibit "B" herein). First, look at the definition of "you." The Plaintiffs request the Court to consider being in the shoes of individuals who have mental illnesses, regardless of the residual medical complications resulting from Seroquel, and consider having to complete this Sidley fact sheet in the time frames required.   When the Court examines the onerous Sidley lawyers' PFS there is much unnecessary and irrelevant information for purposes of case analysis. Here are some examples of the overbroad information in the Sidley lawyers' PF:

1.      Identifying by name and specialty, address and phone number, "dates of treatment" and "reason for treatment" for <u>ten (10) years</u> in history for every "healthcare provider" that the plaintiff ever saw.  This includes,

> any hospital, clinic, center, physician's office, infirmary, medical or diagnostic laboratory [blood work details] or other facility that provides medical, dietary, opthamology, psychiatric, or psychological care or advice, and any pharmacy, weight loss center, <u>dentist,</u> x-ray department, laboratory, physical therapist, or physical therapy department, rehabilitation specialists, physician, physiatrist, <u>osteopath,</u> <u>homeopath,</u> chiropractor, psychologist, therapist, nurse, herbalist, nutritionist, dietician, or other person or entities involved in evaluation, diagnosis, care and/or treatment.

2.      The dates of attendance in high school.

3.      The dates of attendance in college.

4.      The name, address, phone number, job title, duties, and all dates employed for ten (10) years.

5.      All dates in which the person would have been unemployed during their entire life.

6.      Having to identify every pharmacy, drug, or other supplier where every prescription was filled (totally unrelated to Seroquel) for ten (10) years previous, including the address and phone number and "dates you filled prescriptions." [Note:  Why in the world is this necessary when medical releases are being given to the AZ Defendants?]

7.      Having to be specific over a ten (10) year period on what dates in which over a six month period the individual plaintiff consumed the most alcohol?

8.      Having to answer about 22 different illnesses and the dates of diagnosis and treatment for the entire life of the individual plaintiff. [Note: Again, medical and HIPAA releases are being given to the Defendants.]

9.      Twelve (12) different categories of medicine prescriptions are required to be answered and if ever taken, the "dose and dates of usage" are required to be specified.

10.     The Plaintiffs are required for their parents, siblings, children and grandparents, to answer whether or not any of these people ever suffered from ten (10) different illnesses.

11.     Having to provide information concerning prior lawsuits that are totally unrelated for purposes of this general MDL litigation, and not the specific individual plaintiff discovery concerning civil, criminal or administrative lawsuits, including the lawyers' names and addresses, the dates filed, the captions of the cases.

12.     There are nineteen (19) different categories of documents that have to be produced by the Plaintiffs, including pharmacy records going back to ten (10) years, and photographs, drawings, journals, slides, videos, DVDs or any other media relating to your alleged injury or your life after the incident; worker's compensation, social security or other disability proceeding documents; copies of all pleadings, including but not limited to complaints, answers, answers to interrogatories, deposition notices, transcripts or depositions, settlement papers, releases, etc. for any personal injury suffered "during your life" totally unrelated to Seroquel.

13.     "All websites or blogs which are maintained or created by you", regardless of whether or not they have anything at all to do with Seroquel.

The inclusion of these superfluous questions tends to be the precise reason clients have difficulty completing their PFS and not wanting to proceed with their claims.  *See attached Exhibit "C", Affidavit of Laurence G. Tien detailing the efforts required to complete a PFS.*  The point to be made here is that this information is not necessary to allow this Court to conclude this MDL proceeding and transfer individual back to the transferor court within the two (2) year period of time.  The Plaintiffs' PFS was more concise, more compatible and relevant.

Finally, there is one additional item that Liaison Counsel wishes to clear up with the Court.  Some seem to believe that when an individual client contacts a lawyer, that individual

actually supplies all information requested by the Sidley form PFS at the time of intake.  It seems to be the prevailing belief that at the time of intake the attorney or professional staff person in the attorney's office actually goes through the Sidley lawyers' PFS to gain all this information. That, most respectfully, is not how the legal world works.  There is most certainly intake conducted when a client is signed up, all of which took place before the advent of the Sidley lawyers' PFS which was not finalized till November 2006.  That intake, however, is more reflective of the Plaintiff's PFS and provides the actual necessary information for Defendants to start segregating out cases.  (See Dkt. 44)

Without seeming to be trite, most assuredly the type of information which has just been quoted above, including a plaintiff's grandparents' history of "obesity, diabetes, hyperglycemia, hypertension or high blood pressure, vascular problems or poor circulation, glucose intolerance, glandular disease, high cholesterol or triglycerides, or alcoholism", is not generally discussed what a lawyer talks to a client about initially.  The underlying assumption of the R&R seems to be that the Sidley lawyers' PFS and all requested information, either in one form or another if not the actual document itself, is actually completed when the client first walks in the door.  In fact, case intake focuses on the information on which to conclude that a reasonable basis for litigation exists.  This would include drugs which were prescribed, whether the client did take Seroquel, when, for what periods of time, the reasons for which Seroquel was take, what complications and illnesses resulted from Seroquel, who were the doctors and physicians, and where did you get Seroquel prescribed or as a sample.  This type of data is contained in Plaintiffs' version of the PFS.

## V.
## <u>SEVERANCE OF CASES</u>

Plaintiffs object to the Magistrate Court's requirement of severance of the cases.  It is requested, pursuant to Local Rule 6.02, that the portion of the R&R be rejected *in toto*.

Initially, the Plaintiffs note that the issue of severance has not been adequately examined by the Magistrate.  It is not ripe for an R&R at this point in time.  As the Magistrate Court noted

at Page 2, it addressed this issue *"sua sponte."*   Plaintiffs have not had a fair opportunity to prepare a record on this issue and request that the Court postpone consideration of severance until such a record can be made.

The Plaintiffs further object to the Magistrate Court's wholesale adoption of a presentation made by defense counsel, not previously seen by counsel for Plaintiffs, on December 11, 2006.  In essence, the Plaintiffs were <u>blind-sided</u>, as they had no notice that such a demonstration would take place and had not had an opportunity to raise objections to the presentation's content or prepare a presentation of their own.  Despite the fact that he had never seen Defendant's presentation and that a discussion of severance was not on an agenda, the Magistrate Court criticized Co-Lead Counsel, Camp Bailey, for not being able to respond to questions about the details of his clients' pleadings.

At the hearing, Liaison Counsel questioned the propriety of addressing an issue as important and pivotal as severance extemporaneously.   (Dkt. 105, at 9, 20)  This tactic is in contrast to Plaintiffs' practice of supplying material that will be presented to the Court before its use, as they did on November 20, 2006, by supplying a PowerPoint® to Defense counsel.[2]

There is no way to verify this PowerPoint® information at the present time, or within the limited time constraints of this appeal. It was improper to criticize Mr. Bailey, as the Magistrate Court did at Page 2, for not being able to answer off the top of his head the specifics of the "100 or so cases with 6,500 plaintiffs" or to determine, based on Defendants' presentation alone, *sua sponte* no less, that all plaintiffs had been "improperly joined."  Further, the Magistrate Court had no jurisdiction with regard to order severance *sua sponte*.   Whatever cases are "filed in

---

[2]Plaintiffs' Liaison Counsel asked for copies at the time of the hearing since this information had never been seen (Dkt. 105, at 9/11-13; 20/14-23 and was told that he "might be able to give it to you before we leave courtroom today").  Liaison Counsel did not get a copy of the PowerPoint® presentation that day, nor after an E-mail, four days later, was asking for that information on December 15, 2006.  Finally, a second E-mail on December 18, 2006 was sent, and it was not until later that day Liaison Counsel obtained a copy of this presentation made to the Magistrate Court on December 11 so that it could be distributed to all MDL Plaintiffs' counsel.

Massachusetts", those cases are not presently in the Middle District.  Therefore, neither this Court nor the Magistrate Court has jurisdiction over them until they have been properly transferred and docketed in the Middle District.

Indeed, there was no discussion of the theories alleged by the consolidated plaintiffs in their petitions or the extent to which common injuries were alleged.  Neither was Defendants' presentation accompanied by a Rule 21 motion for severance or any suggestion that such a motion would be immediately appropriate.

On December 22, 2006, Magistrate Judge Baker issued his R&R, in which he recommends that severance of all plaintiffs' claims into single petitions.  The R&R contains no examination of the petitions in support of its conclusion that the plaintiffs' claims "do not appear to seek relief arising from the same transaction or occurrence."  The petitions at issue were not attached as an exhibit to Defendants' presentation and no specific petition or allegation is referenced in the R&R.

Plaintiffs respectfully object to Magistrate Judge Baker's recommendation that all plaintiffs' claims be immediately severed into individual petitions for two reasons.  First, all plaintiffs' claims in the consolidated petitions arise out of the same transaction or occurrence and present at least one common question of law and are thus not misjoined.  Second, even if section (a) of Rule 20 is not met, severance of plaintiffs' claims into individual petitions will not prevent Defendants from being embarrassed, delayed or being put to any expense.

**The Consolidation of the Massachusetts Plaintiffs' Claims Satisfies Rule 20(a)**

The Massachusetts plaintiffs' claims satisfy Rule 20(a) for permissive joinder.  The consolidated plaintiffs, severally, assert rights to relief arising out of Defendants' consistent and protracted failure to adequately disclose the risks of developing diabetes that Defendants knew were associated with Seroquel.  Also, the common question of whether Defendants' acts constitute a failure to warn of such risks is a question of law that will arise in each plaintiffs' action.

The plain purpose of Rule 20 is to promote **_trial_** convenience and expedite the resolution

of disputes, thereby eliminating unnecessary lawsuits. *Alexander v. Fulton County, Georgia*, 207 F.3d 1303, 1323 (11th Cir. 2000). The United States Supreme Court instructs the lower courts to "employ a liberal approach to permissive joinder of claims *and* parties in the interest of judicial economy: 'Under the Rules, the impulse is towards entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'" *Id*. (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966).

In *Triggs v. John Crump Toyota,* 154 F.2d 1284 (11th Cir. 1998) a class action removed for diversity, the court found proper joinder under Rule 20 even though 98% of all plaintiffs had no claim against a particular defendant. Id. at 1288. Triggs involved claims of excess lease payments and charges improperly passed on to plaintiffs, although in individual different transactions. Triggs is also contrary to the R&R where the Bailey firm has joined by multiple plaintiffs bringing the same allegations all against the same drug – Seroquel – for the same claims of relief against the same manufacturer, for the same defects and misconduct by AZ, resulting in injuries and damages to each as a consequence. In both Alexander and Triggs none of the previously joined plaintiffs had the same damages, but Rule 20 was found to be satisfied.

Reliance by the R&R on In Re: Phenylpropanolamina (PPA) Products Liability Litigation, 460 F. 3d 1217 (9th Cir. 2006) (hereinafter PPA) as precedent for a ruling on severance in this case is erroneous. The PPA case did in fact require severance of cases and the filing of individual complaints. Id. at 1243-1244. However, a critical factor in the PPA Court's decision to sever, which does not exist in this litigation, is that the defective ingredient at issue was used in a wide variety of products such as decongestants and weight control pills. There were numerous defendants that marketed different products which caused different injuries. In

other words, severance was required in CMO 13 and CMO 15 in the PPA litigation as a means of product identification.  Id. at 1224.

The PPA plaintiffs filed suits including numerous plaintiffs in which neither the specific product was involved nor the specific defendant identified.    Id. at 1243-1244, 1251.   In the Seroquel litigation, AZ is the identified defendant as the manufacturer and distributor of the drug.  There is no uncertainty of this on their part.  Product identification is not at issue here as in PPA.   Thus, the necessity of severance in PPA does not show that AZ would be prejudiced without severance.

Plaintiffs further object to the Magistrate's recommendation that there not be joinder of multiple plaintiffs in a single complaint.   By definition, the Judicial Panel on Multi-District Litigation has determined that there are common questions of law and fact under Section 1407(a).

The Court is referred to one of the Bailey firm's transferred cases from Massachusetts. (Dkt. 10) That Complaint clearly demonstrates the presence of that which was absent from the PPA litigation, to wit:  Seroquel was the product ingested, AZ was the manufacturer involved, and the alleged consequences resulted from that plaintiff's use of that drug..  In AZ's answer filed to that complaint in June they did raise misjoinder as an affirmative defense. (Dkt. 2-22, Case 1:06-cv-10713-NG)  That answer was filed in Massachusetts in June, and the case has been in this Court since September.  Yet, no motion to sever has ever been filed.  Thus, where is any prejudice?

This case  is not the situation such as faced the as PPA MDL, with hundreds of cases asserting claims based upon ingestion of more than one PPA-containing product, or indiscriminately listing manufacturers as defendants, or "[d]eciphering which complaints properly matched up products and defendants would entail reading thousands of pieces of paper." 460 F.3d at 1253.

What the Magistrate Court requires is that there be 6,561 different lawsuits filed.  There is no Record basis or support in the R&R for any such requirement. Such recommendation also unfairly targets the Bailey firm.  The Plaintiffs may choose to file 106 cases that contain as many as 6,500 plaintiffs, all of whom have alleged use Seroquel and injuries arising therefrom.

There is no showing on this Record of any misjoinder under Fed. R. Civ. P. 21.  There is no Record evidence, nor anything in the R&R, which indicates that permissive joinder will in any way interfere with, delay or obfuscate this Court's proceedings.  Further, the Magistrate Court had no Record before it, other than Defendants' impromptu argument on the issue, to find that "because these multiple plaintiff cases do not appear to seek relief arising from the same transaction or occurrence, severance of the individual plaintiffs is proper."

In addition, the R&R does not comply with Eleventh Circuit or other case law on severance and misjoinder.  Of course, Plaintiffs' joinder of parties is generally encouraged in the interest of justice. Overlap between Plaintiffs to any degree is not required.  Rule 20 requires only a single common question of fact or law.  See Dougherty v. Mieczkowski, 661 F.Supp. 267, 278 (D. Del. 1987) ("By its terms, Rule 20(a) only requires a single basis for commonality, in either law or fact, for the joinder to be acceptable.")   The complaints filed by the Bailey firm in Massachusetts District Court clearly meet, and exceed this standard.  The Court only has to look at an exemplar complaint now in the Middle District.  (Valerie Abeyta, et al. v. AstraZeneca LP, Case No. MA 1 06-10713, Dkt. 10)

Rule 20 allows the joinder of these plaintiffs that assert claims arising out of the same transaction or occurrence, or series of transactions or occurrences, and that contain any common question of law or fact.  Id.

Plaintiffs' claims arise out of the same series of transactions or occurrences

According to the Eleventh Circuit, courts determining whether plaintiffs joined under Rule 20 assert claims arising out of the same transaction or occurrence have looked to Rule 13(a), governing compulsory counterclaims.  Id.  Under Rule 13(a), "[t]ransaction is a word of flexible meaning.  It may comprehend a series of many occurrences, depending not so much

upon the immediateness of their connection as upon their logical relationship." *Id.* (cting *Moore v. New York Cotton Exchange*, 270 U.S. 593, 610 (1926).  Thus, under Eleventh Circuit law, all "'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence." *Id.* (citing *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974).

In *In re Norplant Contraceptive Products Liability Litigation*, the United States District Court for the Eastern District of Texas held that plaintiffs who alleged injuries based on the same product, and the defendant's failure to warn of known risks associated with that product, were properly joined under Rule 20.  168 F.R.D. 579 (E.D. Tex. 1996).

Plaintiffs in *Norplant* alleged that defendants "failed in their nationwide promotional materials to adequately warn plaintiffs of the risks and severity of side effect associated with the use of Norplant." *Id.* at 581.  Citing *Gibbs* and *Mosley*, the *Norplant* court found that plaintiffs' contention that "the Defendants' liability under theories of negligence, misrepresentation, and fraud arises out of the same series of occurrences wherein Defendants failed to adequately warn Plaintiffs, thus satisfying Rule 20(a)." *Id.*

Further, the *Norplant* court found that the "common question" prong was satisfied by plaintiffs' "allegations of negligence, misrepresentation, and fraud arising out of the alleged series of acts and omissions committed by Defendants." *Id.*

In finding proper joinder under Rule 20, the *Norplant* court distinguished a more restrictive application of the Rule by Judge Bechtle in *In re Bone Screw Products Liability Litigation*. *Id.*  Defendants urged the court to adopt a requirement that plaintiffs be bundled according to the hospital or medical provider from which they received the device. *Id.*  However, plaintiffs alleged that the *Norplant* device was marketed **nationally** in a consistent manner. *Id.*  In other words, the same company-wide marketing strategy would give rise to any given plaintiff's claim, regardless of the facility at which the device was implanted. *Id.*  The significance of the allegations of nationally uniform marketing was that all claims necessarily

arose from the same transaction or occurrence, as only one series of transactions or occurrences was alleged. *Id*.

The most recent interpretation of Rule 20(a) by an MDL court supports the *Norplant* ruling. *In re Medtronic*, D. Minn., Memorandum & Order, January 8, 2006, attached hereto as Exhibit "D." *Medtronic* involves product liability claims on behalf of plaintiffs from across the country based on defective medical devices. Citing the Supreme Court's admonition to allow joinder of plaintiffs and claims liberally in *Gibbs*, and applied by *Mosley*, the *Medtronic* court adopted a proposal by plaintiffs to bundle cases according to state of residence. *Id*. Inherent in this decision is a finding that all plaintiffs' claims arise from the same transaction or occurrence.

Based on a clear interpretation of Rule 20 by the United States Supreme Court in *Gibbs*, and applied in *Norplant* and *Medtronic*, plaintiffs respectfully request that the Court decline to adopt Magistrate Judge Baker's recommendation of individual severance under Rule 21. If the Court is inclined to order severance to any degree, plaintiffs respectfully request that, as in *Medtronic*, claims be severed according to the state in which a plaintiff alleges its injury occurred.

## Severance is not Timely under Rule 20(b)

If severance of consolidated cases is ordered under Rule 20(a), this Court should delay requiring plaintiffs to "disaggregate" themselves until the completion of discovery. Under Rule 20(b), entitled "Separate **Trials**", this Court may order the severance of cases to prevent Defendants from being delayed or prejudiced.

During the discovery phase, there is no demonstrable prejudice or delay to Defendants by plaintiffs' joinder for two reasons. First, Defendants will receive long-form fact sheets on each consolidated plaintiff from which they will gather all information necessary to assert motions in support of their various defenses. Second, the Court can always order separate trials pursuant to Rule 20(b) or 42(b).

Among other things, each plaintiff's fact sheet contains verified information about the plaintiff's dates of usage of Seroquel, the doctor(s) that prescribed the drug, the exact nature of plaintiff's injuries and facts supporting plaintiff's damages.   In addition, each plaintiff will provide Defendants with an executed HIPAA authorization with which Defendants can order plaintiff's complete pharmacy, employment, psychiatric and diabetes treatment records.

This information, which Defendants have already begun to receive, will provide **all** factual information supporting each plaintiff's claim.   Thus, to the extent that the purpose of severing claims is to allow Defendants to discover factual peculiarities of consolidated plaintiffs' claims, this purpose is more than adequately addressed by the production of a plaintiff's fact sheet.  Indeed, Rule 8's pleading requirement would provide Defendants with barely a fraction of the information contained in the plaintiff's fact sheet.

Further, if severance is appropriate, it is only in the context of promoting trial convenience according to the plain language of Rule 20(b).   The purpose of Rule 20 is to "promote **trial** convenience and expedite the resolution of disputes…"   *Mosley*, 207 F.3d at 1323.   Where cases are similar enough to consolidate for discovery purposes, individual severance does not promote judicial economy.  *Directv, Inc. v. Hosey*, 289 F.Supp.2d 1259, 1262 (D. Kan. 2003).

Thus, if this Court determines that plaintiffs' claims are misjoined, severance will serve no purpose during the discovery phase.   Further, a finding of misjoinder entitles the misjoined plaintiffs to the remedy of severance under Rule 21.   Any procedure that results in the dismissal and re-filing of a plaintiff's action is wholly improper and opposite the explicit language of Rule 21.

## VI.
## OTHER CASE MANAGEMENT ISSUES:

The Plaintiffs respectfully object to what has been characterized by the R&R as non-advancement of this case being due to failure by Plaintiffs to fully cooperate.  Plaintiffs could point fingers at where delay and problems have arisen in the past, but rather only look forward to keeping this case on track.  These issues are not raised to incite a response against Defendants, but rather to point out that Plaintiffs have been diligently trying to achieve the wishes and orders of this Court.  Plaintiffs are disappointed that they have contributed to Magistrate Baker being "flabbergasted" over our efforts.  Plaintiffs hope the suggestion raised by these Objections and Memorandum will be well received and adopted by the Court so that this MDL can continue to proceed on the most orderly and appropriate timetable possible.

WHEREFORE, the Court is requested to Reject the R&R of December 22, 2006, accept the CMO 2 as submitted in the Joint Motion, and if not, then to modify and alter the R&R as requested above.

RESPECTFULLY SUBMITTED this _____12th_____ day of January, 2007.

  **/s/ Larry M. Roth**
**Larry M. Roth**
**Plaintiffs' Liaison Counsel**
**Florida Bar No. 208116**
**LAW OFFICE OF LARRY M. ROTH, P.A.**
**1615 Edgewater Drive, Suite 180 [32804]**
**Post Office Box 547637**
**Orlando,  Florida  32854-7637**
**Telephone:   407 - 872-2239**
**Facsimile:    407 - 872-6927**
**E-mail:        LROTH@roth-law.com**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this  12th day of January, 2007, I electronically filed the foregoing **MDL PLAINTIFFS' OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION OF DECEMBER 22, 2006 AND MEMORANDUM** with the Clerk of the Court by using the CM/ECF system which will send a Notice of Electronic Filing to the counsel listed on the attached Service List.  I further certify that I mailed the foregoing document and the Notice of Electronic Filing by First-Class U. S. Mail delivery to the non-CM/ECF Participants listed on the attached Service List.

> /s/ Larry M. Roth
> **Larry M. Roth**
> **Plaintiffs' Liaison Counsel**
> **Florida Bar No. 208116**
> **LAW OFFICE OF LARRY M. ROTH, P.A.**
> **Post Office Box 547637**
> **Orlando, Florida  32854-7637**
> **Telephone:   407 - 872-2239**
> **Facsimile:    407 - 872-6927**
> **E-mail:        LROTH@roth-law.com**

## SERVICE LIST
(As of December 15, 2006)

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No.  1769 - Orl - 22DAB**

| | |
|---|---|
| Paul J. Pennock, Esq.<br>Michael E. Pederson, Esq.<br>Weitz & Luxenberg, P.C.<br>180 Maiden Lane - 17th Floor<br>New York, NY 10038<br>Telephone:  (212) 558-5500<br>Ppennock@weitzlux.com<br>Mpederson@weitzlux.com | Camp Bailey, Esq.<br>Fletcher Trammell, Esq.<br>Michael W. Perrin, Esq.<br>Bailey Perrin Bailey LLP<br>The Lyric Centre<br>440 Louisiana, Suite 2100<br>Houston, TX  77002<br>Telephone:  (713) 425-7240<br>cbailey@bpblaw.com<br>mperrin@bpblaw.com |
| Larry Roth, Esq.<br>Law Offices of Larry M. Roth, P.A.<br>Post Office Box 547637<br>Orlando, FL  32854-7637<br>Telephone:  (407) 872-2239<br>LROTH@roth-law.com | Tommy Fibich, Esq.<br>Fibich, Hampton & Leebron, L.L.P.<br>1401 McKinney, Suite 1800<br>Five Houston Center<br>Houston, TX  77010<br>Telephone:  (713) 751-0025<br>tfibich@fhl-law.com |
| Matthew F. Pawa, Esq.<br>Law Offices of Matthew F. Pawa, P.C.<br>1280 Centre St., Suite 230<br>Newton Centre, MA 02459<br>Telephone:  (617) 641-9550<br>Mp@pawalaw.com | John Driscoll, Esq.<br>Brown & Crouppen, PC<br>720 Olive St.<br>St. Louis, MO  63101<br>Telephone:  (314) 421-0216<br>Jdriscoll@brownandcrouppen.com<br>asmith@brownandcrouppen.com<br>blape@brownandcrouppen.com |
| Keith M. Jensen, Esq.<br>Jensen, Belew & Gonzalez, PLLC<br>1024 North Main<br>Fort Worth, TX 76106<br>Telephone:  (817) 334-0762<br>kj@kjensenlaw.com | Scott Allen, Esq.<br>Cruse, Scott, Henderson & Allen, L.L.P.<br>2777 Allen Parkway, 7th Floor<br>Houston, Texas 77019<br>Telephone: (713) 650-6600<br>sallen@crusescott.com |

## SERVICE LIST
(As of December 15, 2006)

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No. 1769 - Orl - 22DAB**

| | |
|---|---|
| Matthew E. Lundy, Esq.<br>Lundy & Davis, LLP<br>333 North Sam Houston Parkway East<br>Suite 375<br>Houston, TX  77060<br>Telephone:  (281) 272-0797      .<br>mlundy@lundydavis.com | W. Todd Harvey, Esq.<br>Whatley Drake, LLC<br>2323 2nd Avenue North<br>Birmingham, AL  35203<br>Telephone:  (205) 328-9576<br>THARVEY@whatleydrake.com<br>ecf@whatleydrake.com |
| Lawrence J. Gornick, Esq.<br>William A. Levin, Esq.<br>Dennis J. Canty, Esq.<br>Levin Simes Kaiser & Gornick, LLP<br>44 Montgomery Street<br>36th Floor<br>San Francisco, CA  94104<br>Telephone:  (415) 646-7160<br>lgornick@lskg-law.com<br>dcanty@lskg-law.com<br>llsimes@levins-law.com<br>jkaiser@lskg-law.com<br>echarley@lskg-law.com<br>ddecarli@lskg-law.com<br>bsund@lskg-law.com<br>astavrakaras@lskg-law.com | Gregory P. Forney, Esq.<br>Shaffer Lombardo Shurin<br>911 Main Street, Suite 2000<br>Kansas City, MO 64105<br>Telephone:  (816) 931-0500<br>gforney@sls-law.com<br>rbish@sls-law.com<br>***Attorney for Defendant,***<br>***Marguerite Devon French*** |
| Robert L. Salim, Esq.<br>Robert L. Salim Attorney at Law<br>PO Box 2069<br>Natchitoches, LA 71457-2069<br>Telephone:  (318) 352-5999<br>robertsalim@cp-tel.net | Eric B. Milliken, Esq.<br>3 Sir Barton Ct.<br>Newark, DE 19702<br>***Pro Se*** |

26

## SERVICE LIST
(As of December 15, 2006)

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No.  1769 - Orl - 22DAB**

| | |
|---|---|
| Justin Witkin, Esq.<br>Ken Smith, Esq.<br>Aylstock, Witkin & Sasser, PLC<br>4400 Bayou Boulevard, Suite 58<br>Pensacola, FL  32503<br>Telephone:  (850) 916-7450<br>Jwitkin@AWS-LAW.com<br>ablankenship@aws-law.com<br>aburrus@aws-law.com<br>asmith@aws-law.com<br>ksmith@aws-law.com<br>noverholtz@aws-law.com<br>jsafe@aws-law.com | Louisiana Wholesale Drug Co. Inc.<br>C/O Gayle R. White<br>Registered Agent<br>Highway 167N<br>Sunset, LA 70584<br>***Pro Se*** |
| Aaron C. Johnson, Esq.<br>Summers & Johnson<br>717 Thomas<br>Weston, MO 64098<br>Telephone:  (816) 640-9940<br>firm@summersandjohnson.com | Catherine Solomon<br>(current address unknown)<br>***Pro Se*** |
| Todd S. Hageman, Esq.<br>Simon and Passanante, PC<br>701 Market St., Suite 1450<br>St. Louis, MO 63101<br>Telephone:  (314) 241-2929<br>thageman@spstl-law.com | Randy Niemeyer<br>15863 Pike 43<br>Bowling Green, MO 63334<br>***Pro Se*** |
| Thomas Campion, Esq.<br>Andrew C. White, Esq.<br>Drinker Biddle & Reath, LLP<br>500 Campus Drive<br>Florham Park, New Jersey 07932-1047<br>Telephone:  (973) 360-1100<br>tcampion@dbr.com<br>andrew.white@dbr.com<br><br>***Attorneys for Defendants Janssen Pharmaceutical Products and Johnson & Johnson Co.*** | Mary B. Cotton<br>John D. Giddens, P.A.<br>226 North President Street<br>Post Office Box 22546<br>Jackson, MS 39225-2546<br>(601) 355-2022<br>betsy@law-inc.com |

## SERVICE LIST
(As of December 15, 2006)

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No. 1769 - Orl - 22DAB**

| | |
|---|---|
| Michael Davis, Esq.<br>James Mizgala, Esq.<br>Sidley Austin LLP<br>Bank One Plaza<br>One South Dearborn Street<br>Chicago, IL 60603<br>Telephone: (312) 853-7731<br>mdavis@sidley.com<br>jmizgala@sidley.com<br>***Attorneys for Defendants AstraZeneca LP***<br>***and AstraZeneca Pharmaceuticals, LP*** | Timothy Reese Balducci, Esq.<br>The Langston Law Firm, PA<br>P.O. Box 787<br>100 South Main Street<br>Booneville, MS 38829-0787<br>Telephone: (662) 728-3138<br>tbalducci@langstonlaw.com |
| Elizabeth Raines, Esq.<br>Baker, Sterchi, Cowden & Rice, LLC<br>2400 Pershing Road, Suite 500<br>Kansas City, MO 64108<br>Telephone: (816) 471-2121<br>raines@bscr-law.com<br>***Attorney for Defendant AstraZenca, PLC*** | Kenneth W. Bean, Esq.<br>Sandberg, Phoenix & von Gontard<br>One City Centre<br>15th Floor<br>St. Louis, MO 63101-1880<br>Telephone: (314) 231-3332<br>kbean@spvg.com<br>***Attorney for Defendant Dr. Asif Habib*** |
| Robert L. Ciotti, Esq.<br>Carlton Fields, P.A.<br>4221 W. Boy Scout Boulevard<br>Suite 1000<br>Tampa, FL 33607-5736<br>Telephone: (813) 223-7000<br>rciotti@carltonfields.com<br>***Attorney for Defendants, Astrazeneca***<br>***Pharmaceuticals, LP and Astrazeneca LP*** | Aaron K. Dickey, Esq.<br>Goldenberg and Heller, PC<br>P.O. Box 959<br>2227 S. State Road 157<br>Edwardsville, IL 62025<br>Telephone: (618) 650-7107<br>aaron@ghalaw.com |
| Jona R. Hefner, Esq.<br>3441 W. Memorial, Suite 4<br>Oklahoma City, OK 73134-7000<br>Telephone: (405) 286-3000<br>attorneyokc@hotmail.com | Mark P. Robinson, Jr., Esq.<br>Robinson, Calcagnie & Robinson<br>620 Newport Center Drive, 7th Floor<br>Newport Beach, CA 92660<br>Telephone: (949) 720-1288<br>mrobinson@robinson-pilaw.com |

## SERVICE LIST
(As of December 15, 2006)

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No.  1769 - Orl - 22DAB**

| | |
|---|---|
| David P. Matthews, Esq.<br>Abraham, Watkins, Nichols, Sorrels,<br>Matthews & Friend<br>800 Commerce Street<br>Houston, TX 77002-1776<br>Telephone: (713) 222-7211<br>dmatthews@abrahamwatkins.com<br>agoff@abrahamwatkins.com<br>jrhoades@abrahamwatkins.com<br>jwebster@abrahamwatkins.com | Robert A. Schwartz, Esq.<br>Bailey & Galyen<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744<br>bschwartz@galyen.com |
| David Dickens<br>Miller & Associates<br>105 North Alfred Street<br>Alexandria, Virginia 22314-3010<br>(703) 519-8080<br>ddickens@doctoratlaw.com | Howard Nations<br>Lori A. Siler<br>4515 Yoakum Boulevard<br>Houston, TX 77006-5895<br>Telephone: (713) 807-8400<br>nations@howardnations.com |
| Salvatore M. Machi<br>Ted Machi & Associates, PC<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058 | Scott Burdine, Esq.<br>Hagans Burdine Montgomery<br>Rustay & Winchester, P.C.<br>3200 Travis, Fourth Flo<br>Telephone: (713) 222-2700<br>sburdine@hagans-law.com |
| Pete Schneider, Esq.<br>Grady, Schneider & Newman, L.L.P.<br>801 Congress, 4th Floor<br>Houston, Texas 77002<br>(713) 228-2200<br>pschneider@gsnlaw.com | Lizy Santiago, Esq.<br>Abraham, Watkins, Nichols,<br>Sorrels, Matthews & Friend<br>800 Commerce Street<br>Houston, TX 77002-1776<br>(713) 222-7211<br>lsantiago@abrahamwatkins.com |

**SERVICE LIST**

(As of December 15, 2006)

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No.  1769 - Orl - 22DAB**

| | |
|---|---|
| Fred T. Magaziner<br>Marjorie Shiekman<br>A. Elizabeth Balakhani<br>Shane T. Prince<br>Eben S. Flaster<br>DECHERT LLP<br>2929 Arch Street<br>Philadelphia, PA 19103<br>(215) 994-4000<br>fred.magaziner@dechert.com<br>shane.prince@dechert.com<br>marjorie.shiekman@dechert.com<br>eben.flaster@dechert.com<br>elizabeth.balakhani@dechert.com | |