UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| In Re: § | Case No. 6:06-md-1769-ACC-DAB |
| § | |
| SEROQUEL PRODUCTS § | ALL CASES |
| LIABILITY LITIGATION § | |
| § | |
| MDL 1769 § | |
| _____ § | |

**PLAINTIFFS' MEMORANDUM REGARDING
PRODUCTION OF *ACCESSIBLE* DATA BY AZ**

1. AstraZeneca's ("AZ") memorandum does not make reference to a single federal rule or any recently effective amendment to same. These rules demonstrate that AZ is not entitled to what it seeks.[1] Rule 26 states: "the party from whom discovery is sought must show that the information is *not* reasonably *accessible* because of undue burden or cost. *If that showing is made*, the court may nonetheless order discovery …" F.R.C.P. 26(b)(2)(B)(emphasis added). AZ is attempting to shift costs for its accessible data.

2. The parties agreed in CMO #2 to separately handle *accessible* and *inaccessible* electronically stored information ("ESI").[2] See, CMO #2, III, D. Everything addressed by AZ's

---

[1] Having not been provided any information as to what were the type or amount of AZ's costs that they sought to shift, given AZ's prior disavowal of the January 5, 2007, deadline in CMO #2 by a week, having just learned of this Honorable Court's adoption of the Report and Recommendation and given unusual ice and snow in Fort Worth which has effectively shut down one of Plaintiffs' counsel's offices, Plaintiffs respectfully submit that it is fair and excusable to file this memorandum today. CMO #2 required that "[o]n or before January 5, 2007, A[Z] shall provide … plaintiffs with a list of databases that correspond to the 14 categories identified" CMO #2, II.F. AZ produced same on January 12, 2007.

[2] D. Costs. 1. Documents and readily accessible electronically stored information ("ESI"): … initially each Party will bear the costs to process and review its own documents and readily accessible ESI. The parties shall submit simultaneous briefs on January 16, 2007 addressing how to allocate all, some or none of the cost of producing such documents and readily accessible ESI.

2. Inaccessible and/or legacy ESI: To the extent that any Party requests data that is not readily accessible, the Parties shall comply with the Federal Rules of Civil Procedure in determining whether the inaccessible data is to be produced and which Party will bear what portion of the

- 1 -

memorandum relates exclusively to documents and ESI that are readily accessible.  In other words, 100% of the costs AZ seeks to shift in its memo relate to information for which: a) AZ has not made a Rule 26(b)(2)(B) showing, and b) AZ itself concedes is "readily accessible".

   3.   The importance of this can not be overstated.

> It is worth emphasizing again that cost-shifting is potentially appropriate only when *inaccessible* data is sought.  When a discovery request seeks accessible data—for example, active on-line or near-line data—it is typically inappropriate to consider cost-shifting.

*Zubulake v. UBS Warburg LLC,* 216 F.R.D. 280, 284 (S.D.N.Y. 2003)(italics in original).

   4.   AZ devoted numerous pages and cites to something that has never been an issue – if AZ produced hard copy pages that were already in a format to go into a document depository or AZ produced original hard copies to the depository AZ would bear the cost of getting the documents to the depository and Plaintiffs would bear the costs of copying or scanning them. Plaintiffs said this in open Court on December 11, 2006.  See, Transcript, 50-51.  AZ concedes, as it must, that the cost of making documents available is AZ's cost and only AZ's cost.

   5.   AZ specifically admitted in the context of Rule 34 that it is AZ's obligation to "permit the requesting party the opportunity to copy".  Doc. 123 at 4.  Restated, it is AZ's cost burden to get the documents/data in a form that Plaintiffs can inspect or copy them.  This is also true for ESI as the amendments to Rule 34 include ESI.  F.R.C.P. 34(a)("a request … to produce and permit the party making the request …. to inspect, copy … documents or electronically stored information – including … images … data or data compilations stored in any medium from which information can be obtained – translated, if necessary, by the respondent into

---

   costs of production, if any, including the costs to process or review unique or nonstandard data. The Parties shall confer concerning inaccessible ESI prior to seeking the Court's assistance.

reasonably usable form"). Accordingly, just like with paper, the cost of producing ESI is the responding party's, the cost of "taking it away" is the requesting party's.

6. If AZ changes the format of production this remains true. When AZ chose the format of production Plaintiffs objected and would not agree to AZ changing the ground rules for discovery and shifting the cost to Plaintiffs of AZ's chosen production format. Plaintiffs are doing their own OCR of the NDA and INDA. Plaintiffs do not need and refuse to pay for AZ's decision to produce TIFF files, with OCR and agreed meta-data. If this Honorable Court considers shifting any of AZ's production costs for its readily accessible data to Plaintiffs, Plaintiffs move to have all AZ's documents produced in their native format (as Plaintiffs originally requested). See, Doc 92-2, p. 40, Ex. F. Of course, production in native format (eg., ".doc", ".txt"., ".xlt", ".wpd", ".ppt") would, under AZ's authority, allow Plaintiffs to incur the costs of external hard drives – the cost of "taking away" what is produced - that's it. And, this would be the correct result.

7. AZ concedes the costs of reviewing their documents should be theirs but never makes the claim those reviews will inefficiently be done from original paper documents. Of course, not. AZ will scan them, then review them. Again, Plaintiffs agree that if and when there is needed copying involved (eg. AZ producing an original document in a depository that they have no intent to copy) that is solely Plaintiffs cost. That is not the issue here. And, all of the correct holdings to the never-disputed proposition that plaintiffs pay copy costs as described above – does not make it the issue.

8. AZ refused to produce its *accessible* data in the format Plaintiffs requested and Plaintiffs preferred – its most useable, useful and searchable format – its native format.[3]

---

[3] Within hours of AZ's first suggestion on 12/2/06 that Plaintiffs should accept TIFF's Plaintiffs emailed AZ advising that **"[Plaintiffs] request that AZ produce everything** (eg., all documents, detailer

Plaintiffs had a right to request the format of production. F.R.C.P. 34(b)("The request may specify the form or forms in which electronically stored information is to be produced."). The parties have joined issue only due to AZ's refusal to so produce. AZ is producing likely tens of millions of *accessible* files from custodians. The Plaintiffs only agreed to AZ's preferred format of production (TIFF's with OCR and metadata) because the data will allegedly be searchable the same as if it would be if AZ agreed to produce in native format. AZ's request, without authority, that Plaintiffs should pay some portion of the costs of AZ making its documents/ESI available in AZ's chosen manner suggests that AZ has the right to create an unsearchable electronic data dump.

> Producing electronically stored information with the ability to search by electronic means removed or degraded is the electronic discovery version of the "document dump," the production of large amounts of paper with no organization or order.

U.S. Order 06-20, Comments to Rule 34(b), Eff. Dec. 1, 2006. Restated, AZ argues: a) Plaintiffs do not get to choose the format of production (even though the Rules say they do); b) we, AZ, can make you share in the cost of the way we choose to produce it; or c) if you don't share in AZ's cost to make it available the way AZ has chosen we'll give you an unsearchable data dump.

9. But an electronic data dump is not AZ's right. Plaintiffs had a right to designate the format of production and they did – native which is fully searchable. AZ had a right to object to that format and/or bring the format issue before this Court as the rules contemplate, which AZ did not do. F.R.C.P. 34(b). Rather, AZ insisted that it continue doing what it represented it had already been doing before it negotiated with Plaintiffs – reviewing and/or creating and reviewing

---

sales notes, records, data and emails, both AZ based and third party used for business) **in its native format** (Word, Word Perfect, Excel, Powerpoint, Email, Access, SQL & all databases used by AZ for Seroquel, etc.)". This email is on file. Doc 92-2, p. 40, Ex. F. (emphasis added).

TIFF's, with OCR's and accompanying metadata. Even if this were not true, even if AZ had no intent to utilize OCR's or metadata of their TIFF's, AZ should still incur the costs of same as

10. Plaintiffs are disadvantaged by, reap no unique benefit from, and AZ has unique benefits from AZ's chosen format of production. All of the benefits of AZ's chosen method of production are mutual benefits.

11. Plaintiffs are disadvantaged by the production of spreadsheets in TIFF's which will lose their native ability to conduct calculations and searches within the original mode (eg. Excel spreadsheets). When you print an Excel spreadsheet the paper does not reveal what still may be hidden columns or other unprinted spreadsheets contained within the same file to the reader. Hence, AZ's chosen mode of production degrades the production itself as well as the usefulness and useability of what AZ is producing.

12. When AZ redacts and has resultant metadata production issues it is advancing its own assertion of a privilege – a unique advantage to AZ – costs incurred in AZ's assertion of a privilege should be borne by AZ. AZ also benefits because when it does not produce on paper AZ need not incur the cost of manning or maintaining a document depository.

13. AZ claims that Plaintiffs should bear a portion of the OCR costs because Plaintiffs benefit from this. The searchability of documents will be degraded not improved from their native format when they are scanned to TIFF's than OCR'd. Plaintiffs don't benefit, they suffer from inaccurate searches. Plaintiffs would have had greater search capabilities in native format. Any benefit from AZ's chosen format of production is also a benefit to AZ (eg., easier authentication, not dealing with the bulk of paper).

14. AZ stated that its agreement to produce ESI in "imaged (TIFF) format, with the negotiated fields … is consistent with standard practice today." Doc 123 at 10. AZ is correct.

But AZ cited what Eli Lilly was *ordered* to produce without cost-shifting in the Zyprexa litigation erroneously in support of its desire to get cost-shifting here when it has *agreed* to do what Eli Lilly was *ordered* to do. Without any cost-shifting to Plaintiffs whatsoever, Eli Lilly (in arguably the most analogous situation on earth) was "ORDERED" (emphasis in original) to follow a production protocol which stated:

> 9. Electronic Source Documents: Electronic Text Files. For documents that exist natively in electronic format, Defendant shall produce text files for produced documents reflecting the full text that has been electronically extracted from the original, native electronic files ("Extracted Text"). The Extracted Text shall be provided in ASCII text format and shall be labeled and produced on Production Media in accordance with the provisions of paragraph 7. The text files will be named with the unique Bates Number of the first page of the corresponding document followed by the extension ".TXT". Defendant shall not be obligated to produce Extracted Text for documents that have been redacted in accordance with applicable law or Court order; however, Defendant shall produce OCR text for such documents in accordance with paragraph 10.
>
> *3 10. OCR Text. For documents that exist natively in electronic format that Defendant has redacted in accordance with applicable law or Court order, Defendant shall produce Optical Character Recognition (OCR) text files for such documents. The OCR text shall be provided in ASCII text format and shall be labeled and produced on Production Media in accordance with the provisions of paragraph 7. The text files will be named with the unique Bates Number of the first page of the corresponding document followed by the extension ".TXT". Defendant's production of OCR text shall not constitute any certification as to the reliability, accuracy or completeness of the OCR text. The parties shall meet and confer concerning the production of OCR text for documents existing originally in hard-copy form.

*In re Zyprexa Prods. Liab. Litig.*, No. MDL 1596, 2004 WL 3520246 (E.D.N.Y. 2004).

15. AZ also asserts that Plaintiffs should pay some portion of the costs of the metadata file production (assuming any such cost can be teased out of production of an OCR/scan – which Plaintiffs deny). Again, Eli Lilly was ordered to produce, without cost-shifting, the 19 metadata

fields listed below on the left and based on the Zyprexa holding AZ should similarly be ordered to produce the 20 metadata fields on the right (as set forth in CMO #2).

| *FIELD* | |
|---|---|
| Addressee | Electronic document type; |
| Author | Create date; |
| Binary File Extension | File name & file location |
| Binary File Name | Source location; |
| BCC | Starting production number; |
| Box Number | Ending production number; |
| Copyee | Custodian; |
| Confidentiality | Last date modified; |
| Custodian | Date produced for discovery; |
| Description | The system and software program used for production; |
| Document Date | Author; |
| Document Type | Recipient(s); |
| Group ID | Document date (if different from create date); |
| Mailbox Name | cc(s); |
| Pages | bcc(s); |
| PSN Begin Number | Subject; |
| PSN End Number | Title; |
| PSN Prefix | Attachment information (for e-mails); |
| Redact Flag | Full text of the document extracted from the original native format in searchable form (eg. a ".txt" file); and |
|  | Whether the document was previously produced. |

*In re Zyprexa Prods. Liab. Litig.,* No. MDL 1596, 2004 WL 3520246 (E.D.N.Y. 2004) (Exhibit B to opinion).

      16.    Further, upon information and belief from a person who has been intimately involved with the mechanics of ESI discovery in numerous MDL's, the Plaintiffs in the following MDL's were never required to pay a single dime to receive the Defendants' accessible ESI often including OCR and the same type of metadata at issue: Zyprexa, Diet Drugs, Rezulin, Propulsid, Accutane, Lariam, Neurontin, Meridia, Vioxx, Viagra and Ortho Evra.

17. Plaintiffs respectfully submit that a review of both the four factors contained in this Court's 2001 discovery handbook[4] and the *Zubalake* decision which starts from the unrefuted notion "that cost-shifting is potentially appropriate only when *inaccessible* data is sought" [emphasis in original] reveals that this Court's factors, most certainly according to *Zubalake*, should only be utilized when analyzing *inaccessible* ESI production. This Court's four factors are below on the left. They closely correlate with one or more of *Zubalake's* seven factors for analyzing cost-shifting for *inaccessible* data as set forth on the right.

| | |
|---|---|
| (i) whether the cost of producing is disproportional to the anticipated benefit of requiring its production;<br>(ii) the relative expense and burden on each side of producing it;<br>(iii) the relative benefit to the parties of producing it; and<br>(iv) whether the responding party has any specialized or customized system for storing or retrieving the information. | 1. The extent to which the request is specifically tailored to discover relevant information;<br>2. The availability of such information from other sources;<br>3. The total cost of production, compared to the amount in controversy;<br>4. The total cost of production, compared to the resources available to each party;<br>5. The relative ability of each party to control costs and its incentive to do so;<br>6. The importance of the issues at stake in the litigation; and<br>7. The relative benefits to the parties of obtaining the information. |

*Middle District Handbook* ,VII.A.4(d) and *Zubulake v. UBS Warburg LLC,* 216 F.R.D. 280, 284 (S.D.N.Y. 2003). Engaging in a cost-shifting analysis on *accessible* data like that in question violates the holding of the only authority cited to this Court, *Zubalake*, that addresses when and

---

[4] Middle District Discovery: *A Handbook on Civil Discovery Practice in the United States District Court for the Middle District of Florida*. In pertinent part the Introduction thereto states: "[t]his handbook is neither substantive law nor inflexible rule; it is an expression of generally acceptable discovery practice in the Middle District. Judges and lawyers practicing in the Middle District should regard the handbook as highly persuasive in addressing discovery issues."

whether a cost-shifting analysis should occur.[5] If, nonetheless, this Honorable Court finds the analysis appropriate, a few undisclosed inescapable facts make clear that AZ should not be permitted to get these Plaintiffs to share in its costs of producing ESI by its chosen means:

    a. if no person in America had ever sued AZ in federal court for Seroquel, AZ would still have to produce the same information (highly likely in the same format which AZ correctly describes as "standard practice today");

    b. AZ has been responding to a subpoena issued by the State of California since October, 2006, and will likely have to produce the same information to it; and

    c. AZ has been responding to a subpoena issued by the State of Alaska since October, 2006, and will likely have to produce the same information to it.[6]

18. Hence, as to Middle District factor "i" the cost of production is not disproportional to the benefit as that cost is arguably zero ($0.00) as AZ must produce same to other unrelated litigants. As to factor "ii" "the *relative* expense and burden" (emphasis added), AZ grossed over $2.5 billion on Seroquel alone last year, Plaintiff's estimate that 99% or more of their clients earn less than $50,000 a year – it is these Plaintiffs who in the end one way or another will incur any such shifted expense of production. The same analysis applies for burden. As to factor "iii" "the relative benefit to the parties", as AZ will be required to produce the information and utilize it to prepare for many trials that are wholly distinct to this MDL, its relative benefit is great. Again, Plaintiffs, lose the enhanced search capabilities of their requested native format production. Plaintiffs can not address factor "iv" but contest AZ's conclusory statement that a billion dollar

---

[5] "[N]ot even local court rules can diminish rights afforded to parties by the [federal] rules [of civil procedure]" *Johnson v. U.S,.* 660 F.3d 616, 620-21 (5th Cir. 2006), citing, *Brown v. Crawford County, Ga.*, 960 F.2d 1002, 1008 (11th Cir.1992).

[6] On October 26, 2006, the Associated Press Reported: "A[Z] received subpoenas from state regulators in C[A] and A[L] last month [September, 2006] seeking information about [Seroquel] the drug maker disclosed Thursday. … [AZ] said it received a subpoena from the C[A AG] seeking information about the marketing and sale of Seroquel in the state. The subpoena also sought information about the drug's status on the 'state's formulary,' … A[Z] received a separate subpoena from the A[L AG] last month [September, 2006] seeking information about the safety and efficacy of Seroquel, as well as marketing practices for the drug … Seroquel … generated worldwide sales of $2.76 billion."

corporation who has hired at least four national law firms to date has no access to "specialized or customized" systems and that it was somehow forced to contract out for such services when such software can be purchased on-line for less than $10,000, and in sometimes instances less than $500.

19. If after this, this Honorable Court remains inclined to consider permitting AZ to cost-shift on what will be their repeatedly produced ESI in the format they chose, Plaintiffs submit that such cost shift should be limited as follows. The cost of scanning and OCRing a page is essentially the same as making a copy of the same page. Therefore, if AZ were making a copy to OCR a page and that costs 14 cents and it costs 15 cents a page to scan and OCR, the only cost shifting the Court should entertain is the one penny per page difference. But from this difference the Court should subtract AZ's traditional cost of making, manning and maintaining a physical depository (which are producer's costs not requester's costs). Plaintiffs therefore continue to believe that the equitable way to handle the issue is that to the extent the costs of scanning/OCRing of documents is more than 15% greater than the costs of copying same, then the parties should be ordered to attempt to agree on how to share that difference and if they fail to come to the Court for resolution of how, if at all, this 15% should be divided.

20. Making a cost-shifting ruling now straddles the Plaintiffs with an unknown and unknowable liability that is determined from AZ's unilateral *carte blanche* custodial productions. Restated, after AZ refused Plaintiffs requested native format production, they not only get the benefit of producing the same data in multiple unrelated litigations, but they get to force the Plaintiffs herein to eat a portion of their costs of producing in a less searchable format. Plaintiffs have immaterially greater knowledge now about AZ's record keeping and record retention policies then they did on December 11, 2006, when this Honorable Court ordered AZ to produce

IT deponents for 30(b)(6) depositions in court.  A week after CMO #2 required it, Plaintiffs did receive a list of AZ databases and more recently an attempt to match same against a list of likely categories of databases.  But even after the Plaintiffs conduct their interviews of AZ personnel regarding those databases on January 22nd they will still highly likely not have sufficient information (and no evidence as these are not depositions) by which Plaintiffs could make a record on what the actual costs are likely to be that AZ seeks to shift to the Plaintiffs.

21. Plaintiffs, of course, having been denied the benefit of their bargain on CMO #2 as to fact sheets confidently submit that it is wholly unfair that AZ retain their benefit to the same bargain on CMO #2 –drastically reduced discovery, no definitive timetable for same and no IT depositions.

22. Accordingly, whether or not, but most certainly if this Honorable Court shifts any of AZ's costs of production to Plaintiffs, Plaintiffs respectfully request that AZ produce these IT deponents and this Court institute some definitive deadlines by which AZ must complete each of their 80 custodial productions.  Plaintiffs propose 10 per month for a total of 8 months and the ordered IT depositions in response to the previously served IT deposition notice in two weeks.

23. For these reasons, AZ's request to shift costs of producing *accessible* ESI should be denied.

Respectfully submitted,

 /s/ Keith M. Jensen_____
Keith M. Jensen
David A. Singleton
JENSEN, BELEW & GONZALEZ, P.L.L.C.
1024 N. Main Street
Fort Worth, Texas 76106
Telephone: (817) 334-0762
Facsimile:  (817) 334-0110
E-mail: kj@kjensenlaw.com
dsingleton123@yahoo.com

## CERTIFICATE OF SERVICE

      I hereby certify that I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system and that I mailed the foregoing to the non-CM/ECF participants listed on the attached service list on January 17, 2006.

                                                                                            /s/ Keith M. Jensen_____
                                                                                            One of Plaintiffs Attorneys

**SERVICE LIST**
(As of December 15, 2006)

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No. 1769 - Orl - 22DAB**

| | |
|---|---|
| Paul J. Pennock, Esq.<br>Michael E. Pederson, Esq.<br>Weitz & Luxenberg, P.C.<br>180 Maiden Lane - 17th Floor<br>New York, NY 10038<br>Telephone: (212) 558-5500<br>Ppennock@weitzlux.com<br>Mpederson@weitzlux.com | Camp Bailey, Esq.<br>Fletcher Trammell, Esq.<br>Michael W. Perrin, Esq.<br>Bailey Perrin Bailey LLP<br>The Lyric Centre<br>440 Louisiana, Suite 2100<br>Houston, TX 77002<br>Telephone: (713) 425-7240<br>cbailey@bpblaw.com<br>mperrin@bpblaw.com |
| Larry Roth, Esq.<br>Law Offices of Larry M. Roth, P.A.<br>Post Office Box 547637<br>Orlando, FL 32854-7637<br>Telephone: (407) 872-2239<br>LROTH@roth-law.com | Tommy Fibich, Esq.<br>Fibich, Hampton & Leebron, L.L.P.<br>1401 McKinney, Suite 1800<br>Five Houston Center<br>Houston, TX 77010<br>Telephone: (713) 751-0025<br>tfibich@fhl-law.com |
| Matthew F. Pawa, Esq.<br>Law Offices of Matthew F.Pawa, P.C.<br>1280 Centre St., Suite 230<br>Newton Centre, MA 02459<br>Telephone: (617) 641-9550<br>Mp@pawalaw.com | John Driscoll, Esq.<br>Brown & Crouppen, PC<br>720 Olive St.<br>St. Louis, MO 63101<br>Telephone: (314) 421-0216<br>Jdriscoll@brownandcrouppen.com<br>asmith@brownandcrouppen.com<br>blape@brownandcrouppen.com |

# SERVICE LIST
(As of December 15, 2006)

## In Re: Seroquel Products Liability Litigation
## MDL Docket No. 1769 - Orl - 22DAB

| | |
|---|---|
| Keith M. Jensen, Esq.<br>Jensen, Belew & Gonzalez, PLLC<br>1024 North Main<br>Fort Worth, TX 76106<br>Telephone: (817) 334-0762<br>kj@kjensenlaw.com | Scott Allen, Esq.<br>Cruse, Scott, Henderson & Allen, L.L.P.<br>2777 Allen Parkway, 7th Floor<br>Houston, Texas 77019<br>Telephone: (713) 650-6600<br>sallen@crusescott.com |
| Matthew E. Lundy, Esq.<br>Lundy & Davis, LLP<br>333 North Sam Houston Parkway East<br>Suite 375<br>Houston, TX 77060<br>Telephone: (281) 272-0797   .<br>mlundy@lundydavis.com | W. Todd Harvey, Esq.<br>Whatley Drake, LLC<br>2323 2nd Avenue North<br>Birmingham, AL 35203<br>Telephone: (205) 328-9576<br>THARVEY@whatleydrake.com<br>ecf@whatleydrake.com |
| Lawrence J. Gornick, Esq.<br>William A. Levin, Esq.<br>Dennis J. Canty, Esq.<br>Levin Simes Kaiser & Gornick, LLP<br>44 Montgomery Street<br>36th Floor<br>San Francisco, CA 94104<br>Telephone: (415) 646-7160<br>lgornick@lskg-law.com<br>dcanty@lskg-law.com<br>llsimes@levins-law.com<br>jkaiser@lskg-law.com<br>echarley@lskg-law.com<br>ddecarli@lskg-law.com<br>bsund@lskg-law.com<br>astavrakaras@lskg-law.com | Gregory P. Forney, Esq.<br>Shaffer Lombardo Shurin<br>911 Main Street, Suite 2000<br>Kansas City, MO 64105<br>Telephone: (816) 931-0500<br>gforney@sls-law.com<br>rbish@sls-law.com<br>***Attorney for Defendant,***<br>***Marguerite Devon French*** |

## **SERVICE LIST**
(As of December 15, 2006)

### In Re: Seroquel Products Liability Litigation
### MDL Docket No. 1769 - Orl - 22DAB

| | |
|---|---|
| Robert L. Salim, Esq.<br>Robert L. Salim Attorney at Law<br>PO Box 2069<br>Natchitoches, LA 71457-2069<br>Telephone: (318) 352-5999<br>robertsalim@cp-tel.net | Eric B. Milliken, Esq.<br>3 Sir Barton Ct.<br>Newark, DE 19702<br>*Pro Se* |
| Justin Witkin, Esq.<br>Ken Smith, Esq.<br>Aylstock, Witkin & Sasser, PLC<br>4400 Bayou Boulevard, Suite 58<br>Pensacola, FL 32503<br>Telephone: (850) 916-7450<br>Jwitkin@AWS-LAW.com<br>ablankenship@aws-law.com<br>aburrus@aws-law.com<br>asmith@aws-law.com<br>ksmith@aws-law.com<br>noverholtz@aws-law.com<br>jsafe@aws-law.com | Louisiana Wholesale Drug Co. Inc.<br>C/O Gayle R. White<br>Registered Agent<br>Highway 167N<br>Sunset, LA 70584<br>*Pro Se* |
| Aaron C. Johnson, Esq.<br>Summers & Johnson<br>717 Thomas<br>Weston, MO 64098<br>Telephone: (816) 640-9940<br>firm@summersandjohnson.com | Catherine Solomon<br>(current address unknown)<br>*Pro Se* |

## SERVICE LIST
(As of December 15, 2006)

### In Re: Seroquel Products Liability Litigation
### MDL Docket No. 1769 - Orl - 22DAB

| | |
|---|---|
| Todd S. Hageman, Esq.<br>Simon and Passanante, PC<br>701 Market St., Suite 1450<br>St. Louis, MO 63101<br>Telephone: (314) 241-2929<br>thageman@spstl-law.com | Randy Niemeyer<br>22442 Pike 309<br>Bowling Green, MO 63334-5209<br>*Pro Se* |
| Thomas Campion, Esq.<br>Steven M. Selna<br>Heidi E. Hilgendorff, Esq.<br>Drinker Biddle & Reath, LLP<br>500 Campus Drive<br>Florham Park, New Jersey 07932-1047<br>Telephone: (973) 360-1100<br>tcampion@dbr.com<br>steven.selna@dbr.com<br>heidi.hilgendorff@dbr.com<br><br>***Attorneys for Defendants Janssen Pharmaceutical Products and Johnson & Johnson Co.*** | Mary B. Cotton<br>John D. Giddens, P.A.<br>226 North President Street<br>Post Office Box 22546<br>Jackson, MS 39225-2546<br>(601) 355-2022<br>betsy@law-inc.com |
| Michael Davis, Esq.<br>James Mizgala, Esq.<br>Sidley, Austin, LLP<br>Bank One Plaza<br>One South Dearborn Street<br>Chicago, IL 60603<br>Telephone: (312) 853-7731<br>mdavis@sidley.com<br>jmizgala@sidley.com<br>***Attorneys for Defendants AstraZeneca LP and AstraZeneca Pharmaceuticals, LP*** | Timothy Reese Balducci, Esq.<br>The Langston Law Firm, PA<br>P.O. Box 787<br>100 South Main Street<br>Booneville, MS 38829-0787<br>Telephone: (662) 728-3138<br>tbalducci@langstonlaw.com |

4

**SERVICE LIST**
(As of December 15, 2006)

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No. 1769 - Orl - 22DAB**

| | |
|---|---|
| Elizabeth Raines, Esq.<br>Baker, Sterchi, Cowden & Rice, LLC<br>2400 Pershing Road, Suite 500<br>Kansas City, MO 64108<br>Telephone: (816) 471-2121<br>raines@bscr-law.com<br>***Attorney for Defendant AstraZenca, PLC*** | Kenneth W. Bean, Esq.<br>Sandberg, Phoenix & von Gontard<br>One City Centre<br>15th Floor<br>St. Louis, MO 63101-1880<br>Telephone: (314) 231-3332<br>kbean@spvg.com<br>***Attorney for Defendant Dr. Asif Habib*** |
| Robert L. Ciotti, Esq.<br>Carlton Fields, P.A.<br>4221 W. Boy Scout Boulevard<br>Suite 1000<br>Tampa, FL 33607-5736<br>Telephone: (813) 223-7000<br>rciotti@carltonfields.com<br>***Attorney for Defendants, Astrazeneca Pharmaceuticals, LP and Astrazeneca LP*** | Aaron K. Dickey, Esq.<br>Goldenberg and Heller, PC<br>P.O. Box 959<br>2227 S. State Road 157<br>Edwardsville, IL 62025<br>Telephone: (618) 650-7107<br>aaron@ghalaw.com |
| Jona R. Hefner, Esq.<br>3441 W. Memorial, Suite 4<br>Oklahoma City, OK 73134-7000<br>Telephone: (405) 286-3000<br>attorneyokc@hotmail.com | Mark P. Robinson, Jr., Esq.<br>Robinson, Calcagnie & Robinson<br>620 Newport Center Drive, 7th Floor<br>Newport Beach, CA 92660<br>Telephone: (949) 720-1288<br>mrobinson@robinson-pilaw.com |

## SERVICE LIST
(As of December 15, 2006)

## In Re: Seroquel Products Liability Litigation
## MDL Docket No. 1769 - Orl - 22DAB

| | |
|---|---|
| David P. Matthews, Esq.<br>Abraham, Watkins, Nichols, Sorrels, Matthews & Friend<br>800 Commerce Street<br>Houston, TX 77002-1776<br>Telephone: (713) 222-7211<br>dmatthews@abrahamwatkins.com<br>agoff@abrahamwatkins.com<br>jrhoades@abrahamwatkins.com<br>jwebster@abrahamwatkins.com | Robert A. Schwartz, Esq.<br>Bailey & Galyen<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744<br>bschwartz@galyen.com |
| David Dickens<br>Miller & Associates<br>105 North Alfred Street<br>Alexandria, Virginia 22314-3010<br>(703) 519-8080<br>ddickens@doctoratlaw.com | Howard Nations<br>Lori A. Siler<br>4515 Yoakum Boulevard<br>Houston, TX 77006-5895<br>Telephone: (713) 807-8400<br>nations@howardnations.com |
| Salvatore M. Machi<br>Ted Machi & Associates, PC<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058 | Scott Burdine, Esq.<br>Hagans Burdine Montgomery Rustay & Winchester, P.C.<br>3200 Travis, Fourth Flo<br>Telephone: (713) 222-2700<br>sburdine@hagans-law.com |

## SERVICE LIST
(As of December 15, 2006)

### In Re: Seroquel Products Liability Litigation
### MDL Docket No. 1769 - Orl - 22DAB

| | |
|---|---|
| Pete Schneider, Esq.<br>Grady, Schneider & Newman, L.L.P.<br>801 Congress, 4th Floor<br>Houston, Texas 77002<br>(713) 228-2200<br>pschneider@gsnlaw.com | Lizy Santiago, Esq.<br>Abraham, Watkins, Nichols,<br>Sorrels, Matthews & Friend<br>800 Commerce Street<br>Houston, TX 77002-1776<br>(713) 222-7211<br>lsantiago@abrahamwatkins.com |
| Fred T. Magaziner<br>Marjorie Shiekman<br>A. Elizabeth Balakhani<br>Shane T. Prince<br>Eben S. Flaster<br>DECHERT LLP<br>2929 Arch Street<br>Philadelphia, PA 19103<br>(215) 994-4000<br>fred.magaziner@dechert.com<br>shane.prince@dechert.com<br>marjorie.shiekman@dechert.com<br>eben.flaster@dechert.com<br>elizabeth.balakhani@dechert.com | David Dickens<br>Miller & Associates<br>105 North Alfred Street<br>Alexandria, Virginia 22314-3010<br>(703) 519-8080<br>ddickens@doctoratlaw.com |