# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**IN RE: Seroquel Products Liability Litigation**

**MDL DOCKET NO. 1769**

_____

**This Document Relates to ALL CASES**

### ASTRAZENECA LP AND ASTRAZENECA PHARMACEUTICALS LP'S MOTION AND SUPPORTING MEMORANDUM TO ESTABLISH DEADLINES FOR DISCOVERY AND DISPOSITIVE MOTIONS,  AND TO ADOPT AN EXPEDITED DISCOVERY PROGRAM

Defendants AstraZeneca Pharmaceuticals LP and AstraZeneca LP (collectively "AstraZeneca"), by and through undersigned counsel, pursuant to Middle District Local Rule 3.01(a), and in response to Magistrate Judge Baker's request at the February 8, 2007 Status Conference, hereby move for the adoption of [Proposed] CMO No. 4, because the proposal will assist the Court in facilitating the just and efficient resolution of this MDL.  For the reasons set forth in AstraZeneca's accompanying Memorandum of Law, the Court should adopt and enter AstraZeneca's [Proposed] CMO No. 4 in its entirety.

## MEMORANDUM OF LAW

### I.      INTRODUCTION

Defendants AstraZeneca LP and AstraZeneca Pharmaceuticals LP ("AstraZeneca") are continuing to meet and confer with plaintiffs on a joint CMO, and hope to reach agreement before the upcoming status conference.  At the last status conference, this Court asked the parties to reach agreement on deadlines for close of generic fact discovery, as well as the filing of *Daubert* and dispositive motions.  In their meet-and-confer efforts, however, the parties ambitiously tried to reach agreement on a more comprehensive CMO that would have contained many additional interim deadlines within the broader final deadlines the Court wanted to be set now.  While the parties have yet to agree upon those additional interim deadlines, AstraZeneca submits herewith a proposed CMO No. 4 setting forth the deadlines the Court requested – including cut-offs for generic fact discovery of AstraZeneca; a cut-off for generic expert discovery; and cut-offs for the filing of generic expert *Daubert* motions and potentially dispositive motions.

While the parties continue to negotiate further specifics, the Court should adopt the core deadlines set forth in AstraZeneca's proposed CMO No. 4 at this time, including:

- Generic fact discovery of AstraZeneca:  completed by February 1, 2008.[1]

- Generic expert designations, reports and depositions:  completed between February 1, 2008 and May 2, 2008.

---

[1]  The proposed CMO additionally provides that "AstraZeneca shall complete production of documents for the 80 custodians, which has already commenced on a rolling basis pursuant to CMO 2, by September 30, 2007.  The parties shall meet and confer regarding production of documents from any additional custodians, and shall report to the Court by March 16, 2007."  [Proposed] CMO No. 4, ¶ I.A.2.

- Generic expert *Daubert* motions:  filed by May 23, 2008; responses due by June 23, 2008; and replies (if any, by leave of court) by July 15, 2008.

- Dispositive motions:  filed at any time, but no later than July 1, 2008; responses due 30 days after the motion at issue is filed; replies (if any, by leave of court) due 21 days after responses.

*See* [Proposed] CMO No. 4, at pp. 1-2.

Perhaps most controversial has been the expedited case-specific discovery program proposed by AstraZeneca for 100 randomly selected plaintiffs in this MDL.  Plaintiffs have most notably questioned the number of plaintiffs that should be required to participate in this program, even though the usefulness of case-specific discovery in a substantial subset of randomly selected cases has not genuinely been questioned.  Thus, AstraZeneca's proposed CMO No. 4 includes a short provision adopting *in concept* a case-specific discovery program involving a significant, representative subset of plaintiffs in this MDL, with specifics to be negotiated further and set forth in a subsequent order.[2]

AstraZeneca is prepared to proceed with case-specific discovery in all of the cases pending in this MDL, but recognizes the substantial burden individualized discovery will entail given the more than seven thousand plaintiffs in this MDL.  Thus, AstraZeneca developed, and hereby proposes, an expedited case-specific discovery program in an effort to achieve many of the benefits that could be obtained from case-specific discovery while minimizing the burden and expense of such necessary discovery.  As explained below (*see*

---

[2]  A fuller elaboration of the provisions of an expedited case-specific discovery program, as proposed to plaintiffs for purposes of *negotiation* by AstraZeneca, is contained in Part II of Exhibit "A" attached hereto.  Exhibit A contains the longer-form draft CMO No. 4 sent to plaintiffs' counsel in AstraZeneca's effort to negotiate a more ambitious CMO, instead of the shorter form CMO No. 4 submitted herewith.

part II.B.5, *infra*), the only way the Court and the parties can meaningfully determine whether an alternative dispute resolution ("ADR") program would help resolve this MDL is to allow case-specific discovery in at least a substantial subset of cases.

It is well settled that, in addition to "consolidated" proceedings, MDL transferee courts are responsible for "coordinated" proceedings.  28 U.S.C. § 1407(a); *accord*, *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 34 (1998).  Coordinated case-specific discovery – including substantial discovery of individual plaintiffs, their physicians, and in most cases their proposed experts – has been managed by numerous MDL courts, including those in the *Zyprexa*, *Bextra/Celebrex*, *Baycol*, *Welding Fume*, *St. Jude*, *PPA*, *Rezulin*, *Diet Drug*, *Bone Screw*, *Fosamax*, and *Aredia* MDLs.  (*See infra*, Part II.B.1.)

As these courts have recognized, conducting case-specific discovery in the MDL provides several important benefits, facilitating the "just and efficient" conduct of the litigation and resolution of a substantial number of cases.  28 U.S.C. § 1407(a).  It enables many common or recurring issues to emerge in a way only concrete factual discovery can, and thereby provides a basis for the MDL court's determination of questions of wide applicability that could not be resolved without such discovery.  An order providing for case-specific discovery in this MDL will also further the JPML's determination to assign these related Seroquel actions to this Court so that it could "dispos[e] of spurious claims quickly" prior to remand.  *In re Seroquel Products Liability Litig.* (MDL-1769), Transfer Order at 2 (J.P.M.L. July 6, 2006).  Experience in other MDLs has shown that coordinated case-specific discovery weeds out many meritless claims, narrowing the docket to only those cases that might truly merit remand for trial.  Further, discovery in a subset of cases enables the parties

and the Court to make informed decisions about whether to proceed with such discovery in other cases, while also providing a concrete factual basis for the claims in the MDL which might help facilitate the potential for meaningful ADR consideration.

Allowing AstraZeneca to conduct such plaintiff-specific discovery in this MDL will not impose any undue burden on those plaintiffs whose cases are selected for expedited treatment, given that their cases will all necessarily be subject to such discovery upon remand in any event.  Conducting this discovery in the MDL will allow the parties and the Court to identify and address recurring issues of general or wide applicability in a coordinated and consistent manner, before any cases are returned to the transferor or other appropriate courts on any remand.  In contrast, management of this MDL *without* permitting case-specific discovery in a sufficiently large and representative number of cases would leave undecided many issues that can be addressed on a coordinated basis; threaten to spawn *de facto* successor MDLs across the country to perform the work avoided here due to the absence of case-specific discovery; load the dockets of courts upon remand with numerous cases likely to be dismissed long before trial; and, generally, maximize the burden of this litigation on the transferor or other courts upon remand.

## II.   ARGUMENT

### A.   The Court Should Adopt CMO No. 4's Proposed Schedule And Deadlines For "Generic" Discovery In This MDL

The deadlines set forth in AstraZeneca's proposed CMO No. 4 are suggested in an effort to abide by the Court's desire to complete this MDL in two years.  They include time periods for the completion of all generic fact discovery against AstraZeneca; generic expert

discovery and related *Daubert* motions; and dispositive motions (*e.g.*, motions for total or partial summary judgment). Specifically, CMO No. 4 filed herewith provides:

• All "generic" fact discovery against AstraZeneca shall be completed by February 1, 2008, which is the date requested by plaintiffs. Further, by September 30, 2007, AstraZeneca shall complete the document production for the 80 custodians that is already underway pursuant to CMO No. 2. The parties will continue to meet and confer about productions from any additional custodians, and report to the Court by March 16, 2007.

• All "generic expert" discovery shall begin February 1, 2008 and be completed by May 2, 2008. During this period, plaintiffs shall identify their generic experts and provide expert reports, followed a reasonable time later by AstraZeneca's responsive generic expert identifications and reports; and the parties shall also complete generic expert deposition discovery. The parties will continue to meet and confer about the specific interim dates for this process, and report to the Court by March 16, 2007.

• Generic expert *Daubert* motions shall be filed by May 23, 2008 – with responses due by June 23rd, and replies (if permitted) by July 15th.

• Dispositive motions may be filed at any time, but filed no later than July 1, 2008 – with responses due 30 days after filing of the motion at issue, and replies (if permitted) 21 days after the responses.

This is certainly an ambitious schedule. But it may be achievable with substantial effort and cooperation among the parties and their counsel. If adopted, the schedule set forth in AstraZeneca's proposed CMO No. 4 would further the Court's expressed desire to bring

these MDL proceedings to a close with respect to "generic" discovery within the Court's suggested two-year time frame.

> **B.** **This Court Should Coordinate Case-Specific Discovery, Including At Least The Limited "Expedited Case-Specific Discovery Program" Proposed By AstraZeneca**

AstraZeneca's proposed CMO No. 4 also includes a provision adopting in concept a program in which case-specific fact and expert discovery, as well as related *Daubert* and dispositive motion practice, shall proceed with respect to a significant "subset" of plaintiffs selected randomly from the cases in this MDL. *See* [Proposed] CMO No. 4, ¶ II. The particulars of that program, including the number of plaintiffs included in this program (AstraZeneca suggested 100 in its negotiations with plaintiffs), are to be set forth in a subsequent CMO. *Id.*

MDLs exist to provide "coordinated *or* consolidated pretrial proceedings" in order to promote the "just and efficient conduct" of the litigation. 28 U.S.C. § 1407(a) (emphasis added). As the Supreme Court explained in *Lexecon*, the authority of transferee courts to manage "coordinated" proceedings under section 1407 is construed broadly, and is not limited to the litigation of "identical issues on common evidence." 523 U.S. at 34. Instead, "a proceeding that relates only to a single individual's case or claim can nonetheless be coordinated," and MDL proceedings need not be "concluded at the point that only case-specific proceedings remain." *In re Patenaude*, 210 F.3d 143, 145 (3d Cir. 2000). Accordingly, MDL transferee courts may adopt procedures to facilitate the determination of issues that "overlap" in multiple cases, even if the issues are not common to all cases in the MDL. *Id.* at 143; *see also Lexecon*, 523 U.S. at 34.

Hence, any view of these MDL proceedings as focused solely, or even primarily, on coordinating common issue discovery from the defendants is premised on an unduly restrictive conception of the duties of an MDL transferee court.  Many other MDL courts responsible for pharmaceutical and medical device litigation have recognized the value and importance of conducting case-specific discovery in the MDL, and good cause exists to adopt AstraZeneca's proposed case-specific discovery program in this MDL.

1.      **The Court Should Exercise Its Authority Under Section 1407(a) To Coordinate Case-Specific Discovery In This MDL, Just As The Overwhelming Majority Of Other MDL Courts Have Done**

The oversight of both generic and case-specific discovery is a vital part of the mass tort MDL court's function.  Indeed, it would be unusual for an MDL transferee court not to allow case-specific discovery in a substantial number of cases pending in the MDL, particularly in MDL proceedings (such as this one) involving pharmaceuticals or medical devices.  MDL courts have permitted case-specific discovery in the overwhelming majority of such actions.  *See*, *e.g.*, *In re Bextra and Celebrex Marketing, Sales Practices and Prods. Liab. Litig.* (MDL No. 1699), PTO 18, ¶¶ 2–4 (N.D. Cal. Nov. 17, 2006) (Ex. B); *In re Fosamax Prods. Liab. Litig.* (MDL No. 1789), CMO 3, ¶ 8 (S.D.N.Y. Nov. 1, 2006) (Ex. C); *In re Welding Fume Prods. Liab. Litig.* (MDL No. 1535), 2006 U.S. Dist. LEXIS 64077 (N.D. Ohio Aug. 28, 2006); *In re Aredia and Zometa Prods. Liab. Litig.* (MDL No. 1760), CMO, §§ X–XI (M.D. Tenn. Jul. 28, 2006) (Ex. D); *In re Baycol Prods. Liab. Litig.* (MDL-1431), PTO 149 (D. Minn. Feb. 8, 2006) (Ex. E); *In re Zyprexa Prods. Liab. Litig.* (MDL No. 1596), CMO 4, § VI (E.D.N.Y. Aug. 18, 2004) (Ex. F), CMO 18 (Jul. 27, 2006) (Ex. G); *In re St. Jude Medical Inc. Silzone Heart Valves Prods. Liab. Litig.* (MDL No. 1396), PTO

20, ¶ 1(E) (D. Minn. Sept. 9, 2002) (Ex. H); *In re Rezulin Prods. Liab. Litig.* (MDL No.

1348), PTO 2, ¶ 2.1 (S.D.N.Y., amended Dec. 13, 2002) (Ex. I), PTO 4, ¶ 3 (Dec. 5, 2000)

(Ex. J), and PTO 82, ¶¶ 1-2 (Apr. 29, 2002) (Ex. K); *In re Phenylpropanolamine (PPA)*

*Prods. Liab. Litig.* (MDL No. 1407), Final Pretrial Order, § III (B) (W.D. Wash. Dec. 13,

2004) (Ex. L), CMO 17C, at 3 (June 23, 2004) (Ex. M); *In re Diet Drugs Prods. Liab. Litig.*

(MDL No. 1203), PTO 292 (E.D. Pa. Sept. 24, 1998) (Ex. N), PTO 417, ¶¶ 6-8 (Jan. 6, 1999)

(Ex. O); *In re Orthopedic Bone Screw Prods. Liab. Litig.* (MDL No. 1014), 1998 U.S. Dist.

LEXIS 21857, at *17-19 (E.D. Pa. Jan. 12, 1998).  In fact, several MDL transferee courts

have refused to remand cases until *all* fact discovery was complete in each case in the MDL.

*See*, *e.g.*, *PPA*, Final Pretrial Order, § III (B); *PPA*, CMO 17C, at 3 (requiring completion of

fact discovery prior to remand); *Diet Drugs*, PTO 292 & PTO 417, ¶¶ 6-8; *Bone Screw*, 1998

U.S. LEXIS 21857, at *17-19 (same).

    Notably, in the *Zyprexa* MDL, which involves another atypical antipsychotic drug

and thus raises a number of analogous allegations and issues, the MDL court allowed for

substantial case-specific discovery from the plaintiffs, not merely discovery from defendant

Eli Lilly & Co.  The discovery plan in that MDL called not only for the production of

plaintiff fact sheets, but also depositions of the plaintiffs and their treating physicians.  *See*

*Zyprexa*, CMO 4, §§ VI(G)-(H).  In addition, the court later established briefing schedules to

address the procedural and substantive issues that arose by virtue of that case-specific

discovery.  *See Zyprexa*, CMO 14 (E.D.N.Y. May 3, 2006).

    Before requiring case-specific discovery with respect to all plaintiffs, a number of

MDL courts have first required case-specific discovery in a *subset* of cases pending in the

MDL (as presently proposed here by AstraZeneca).  For instance, recently in the *Welding Fume* MDL, the MDL court ordered discovery in 100 cases "with a broad variety of diagnoses, plaintiffs' attorneys, and applicable states' law."  *Welding Fume*, 2006 U.S. Dist. LEXIS 64077, at *15.  Likewise, in the pending *Bextra/Celebrex* MDL, the MDL court adopted a discovery plan that allowed for case-specific discovery from a substantial subset of plaintiffs.  *See Bextra and Celebrex*, PTO 18, ¶¶ 2-4 (ordering discovery in 45 cases).  As the court emphasized, allowing such discovery "may prepare these cases for early resolution (via motion, settlement, trial, or other resolution tool) in these proceedings, consistent with this Court's charge to promote the just and efficient conduct of the civil actions in these proceedings, to assure uniform and expeditious treatment in pretrial procedures, and to avoid undue delay or cost."  *Id*. ¶ 2.

Further still, in the *Baycol* MDL, the MDL court instituted a "pilot program" in which 200 plaintiffs were selected at random from the tens of thousands then pending for case-specific discovery in that MDL.  *In re Baycol Prods. Liab. Litig.* (MDL No. 1431), PTO 89 (D. Minn. July 18, 2003) (Ex. P).  Of that subset of cases, 198 were dismissed pursuant to the program.  As a result, this procedure disposed of spurious cases that might have otherwise languished for years in the MDL, and served to ferret out entire groups of cases that could fairly be resolved in the MDL without the need for any remand or trial.  Drawing on the lessons learned in this initial pilot program, the *Baycol* court entered an order setting a rolling timetable for case-specific discovery in all the cases – including depositions of the plaintiffs

as well as their physicians and other fact witnesses, while also requiring the serving of Rule 26 expert reports.  *See Baycol*, PTO 149 (D. Minn. Feb. 8, 2006).[3]

In many of these MDLs, the plaintiffs were required not only to provide fact discovery but also a case-specific expert report setting forth a causal link between the product and the alleged harm to each individual plaintiff, pursuant to the seminal *Lore v. Lone Pine Corp.*, 1986 N.J. Super. LEXIS 1626 (Law Div. 1986).  In the *Bone Screw* MDL, for example, the MDL court required that, before any remand, all case-specific discovery must be completed and each plaintiff must provide one expert report on injury and causation. *Bone Screw*, 1998 U.S. Dist. LEXIS 21857, at *17-19.  In the *Diet Drug* MDL, the MDL court held that all case-specific fact discovery and medical expert discovery must be completed before remand.  *See Diet Drugs*, PTO 292 (E.D. Pa. Sept. 24, 1998), and PTO 417 ¶¶ 6-8 (Jan. 6, 1999).[4]

---

[3]  By September 30, 2006, that court had dismissed 6,758 cases (over 3,000 of them within the preceding year alone).  *See* Statistical Analysis of Multidistrict Litigation 2006, Summary by Docket at 27 (J.P.M.L. 2006); Statistical Analysis of Multidistrict Litigation 2005, Summary by Docket at 24 (J.P.M.L. 2005).

[4]  Notably, when plaintiffs in the behemoth *Diet Drug* MDL argued for a sweeping remand on the ground that general discovery from defendants was completed and only case-specific discovery remained, the MDL court rejected the temptation to clear its docket.  *See In re Diet Drugs Prods. Liab. Litig.* (MDL No. 1203), 2003 U.S. Dist. LEXIS 18069, at *12 (E.D. Pa. Aug. 25, 2003).  Instead of dumping tens of thousands of unprepared cases upon transferor courts on remand, the court acknowledged its experience gained with the issues and the importance of preserving the MDL – because it was "clear that consolidated or coordinated pretrial proceedings involving common facts ha[d] not yet run their course,"  *id*. at *6, and "continued administration of discovery and other pretrial matters through the MDL process will provide much needed consistency and reduce duplication of effort and expense."  *Id*. at *7.

In short, the overwhelming majority of MDL courts in analogous or comparable proceedings have provided for case-specific discovery in all or a significant number of the cases pending in the MDL, in order to increase efficiencies and aid in the just and swift resolution of the litigation.  This Court should likewise exercise its broad authority under section 1407(a) to coordinate case-specific discovery in this MDL.

> **2.      Conducting Case-Specific Discovery In This MDL Will Advance This Litigation And Ease The Burden On Transferor Courts In The Event Cases Are Remanded**

AstraZeneca respectfully submits that there is good cause for this Court to permit case-specific discovery of plaintiffs in this MDL.  Conducting such discovery in these coordinated proceedings will not only serve to advance this litigation, but will also indisputably ease the weighty burden on the transferor or other courts to which these cases may eventually be remanded at the close of this MDL (if not resolved here).  Conducting case-specific discovery in this MDL along the lines proposed by AstraZeneca is not only feasible, but it also will be convenient for the parties and witnesses, fair, and efficient (*see* 28 U.S.C. § 1407(a)) for a number of reasons.

First, this Court obviously can initiate case-specific discovery faster and more efficiently than the transferor courts.  Without an order from this Court, there is great risk that *no* meaningful plaintiff-specific discovery will occur in the foreseeable future.  If cases in this MDL are not subject to meaningful case-specific discovery until after remand, they will remain dormant with respect to this important case development work.  As a result, cases will stagnate and there is a risk that evidence may be lost and memories may fade.  Moreover, the JPML specifically instructed this Court to dispose of "spurious claims

quickly" in this MDL (Transfer Order, *supra*, at 2), but many of those baseless claims will come to light and reveal themselves only by virtue of case-specific discovery.

Second, conducting case-specific discovery in this MDL will facilitate the emergence of many common issues and other questions of general or broad interest in these cases. In the absence of a developed factual record with respect to a sufficiently large and representative subset of cases, such issues and questions might otherwise remain obscured. In this way, case-specific discovery will enable this Court to resolve important recurring issues of wide applicability in a consistent and comprehensive manner, and to enter coordinated rulings on key legal issues that affect all or a large group of cases. *See Diet Drugs*, 2003 U.S. Dist. LEXIS 18069, at *11; *see also In re Long Distance Telecommunication Litig*., 612 F. Supp. 892, 903 (E.D. Mich. 1985) ("one of the basic purposes of the multidistrict process, and of the JPML's transfer orders . . . is to achieve consistent rulings on the common issues among the transferred cases"). Such important legal, procedural and evidentiary matters include, for instance, *Daubert* motions and motions for summary judgment. *See, e.g*., *PPA*, CMO 17C at 3; *In re Norplant Contraceptive Prods. Liab. Litig*., 215 F. Supp. 2d 795, 830-31 (E.D. Tex. 2002). Plainly, this Court is best positioned to evaluate and rule upon critical substantive, procedural and evidentiary issues that apply broadly to all or many of the cases pending in this MDL. As other MDL courts have recognized, conducting case-specific discovery in at least a substantial subset of cases is an important, if not essential, tool that enables transferee courts effectively to perform their duties under 28 U.S.C. § 1407(a).

Third, another reason to conduct case-specific discovery in the MDL relates to its well-proven docket management function.  In the *Baycol* MDL, for example, the court's "pilot program" demonstrated that, when the cases were subject to case-specific discovery, a very high percentage of plaintiffs (over 90%) chose to discontinue their lawsuits.  Similarly, after the court made case-specific discovery a prerequisite for remand in the *PPA* MDL, approximately 70% of the cases were dismissed.[5]  In its proposed case-specific discovery program here, AstraZeneca has taken into account this expected attrition by asking plaintiffs' counsel to identify what number of cases above 100 should be included within the initially assigned pool of cases that will be subject to case-specific discovery (which number has yet to be identified).  But more fundamentally, if any plaintiffs are going to dismiss their cases in response to the scheduling of case-specific discovery, then those dismissals should take place here in these coordinated proceedings to avoid needlessly burdening the transferor or other courts that would otherwise receive those cases upon remand.  Plainly, the interests of judicial economy will be better served if cases destined for dismissal during the discovery process are dismissed before remand.

In short, this Court can, and should, commence case-specific discovery immediately. Only this Court can ensure that the procedures for such discovery are uniform, and can

_____

[5]  *See* Statistical Analysis of Multidistrict Litigation 2006, Summary by Docket at 13 (J.P.M.L. 2006) (533 cases pending, 2378 dismissals, 452 remands); Statistical Analysis of Multidistrict Litigation 2005, Summary by Docket at 34 (J.P.M.L. 2005) (1027 cases pending, 2048 dismissals, 256 remands); Statistical Analysis of Multidistrict Litigation 2004, Summary by Docket at 25 (J.P.M.L. 2004) (2889 cases pending, 216 dismissals, 25 remands); Statistical Analysis of Multidistrict Litigation 2003, Summary by Docket at 24 (J.P.M.L. 2003) (1249 cases pending, 8 dismissals, 0 remands); *see also PPA*, CMO 17C (W.D. Wash. June 24, 2004) (establishing completion of discovery as a prerequisite for remand).

oversee that discovery in a comprehensive and efficient manner.  *See*, *e.g.*, *Bone Screw*, 1998 U.S. Dist. LEXIS 21857, at *17-*19 (MDL court oversaw case-specific plaintiff discovery to increase efficiencies).  Only this Court can establish procedural discovery guidelines and make rulings that apply broadly to the many cases in this MDL; further, should discovery disputes arise, only this Court can resolve them in the most consistent, uniform and efficient manner.  By contrast, deferring all case-specific discovery until after remand would not only invite the potential for inconsistent rulings and procedures, it would also threaten the very sort of procedural chaos that led to the creation of this MDL in the first place.

> **3.     Failure To Conduct Case-Specific Discovery Threatens To Undermine The Purposes And Usefulness Of This MDL, And Require Multiple Mini-MDLs Upon Remand**

There are currently over 7,100 plaintiffs in this MDL, from 21 different transferor districts in 15 different transferor states.  If the Court were to remand these cases without conducting any meaningful case-specific discovery, the immense caseload sent back at the close of the MDL proceedings would threaten to require a series of uncoordinated *de facto* mini-MDLs in jurisdictions throughout the country.

Despite the JPML's creation of this MDL, the scattershot effect of this litigation upon remand would spawn a jumble of disjointed, unwieldy, and wholly uncoordinated proceedings as the various courts and jurisdictions try to manage the enormous body of work that remains to be conducted before any of these cases could ever be set for trial.  In such a scenario, numerous courts across the country would face similar procedural and substantive challenges; without the guidance of this Court, however, those courts would likely issue

conflicting rulings on the same or similar issues, leading to precisely the sort of inefficiency and inconsistency that the MDL statute seeks to avoid.

For example, 21 cases involving more than 6,500 plaintiffs were originally filed in the District of Massachusetts; 114 cases with 115 plaintiffs originated in the District of Minnesota; an additional 100 cases originated in the California federal courts; and 13 cases involving 99 plaintiffs were originally filed in the federal courts in Texas. In the event of a remand without any case-specific discovery here, each of these jurisdictions would likely have to adopt their own "coordinated" case procedures, much like this MDL, to manage the litigation and all of the case development and case-specific discovery that was not performed in this MDL. That result not only frustrates the purpose of the JPML's decision, which chose *this* Court to oversee coordinated federal litigation, but it also threatens to undermine the usefulness of this MDL.

The Judicial Panel sent the cases of these 7,000-plus plaintiffs to this Court to centralize the litigation, streamline discovery, prevent inconsistent pretrial rulings, conserve resources, and facilitate the just and efficient conduct and potential resolution of these actions. *See* Transfer Order at 2. If no case-specific discovery were conducted in this MDL – not even in the subset of cases proposed by AstraZeneca – that would threaten to undermine the usefulness of these coordinated proceedings, and thwart the goals sought to be achieved by the JPML, by effectively requiring scattershot litigation spread across the many courts that would receive these cases upon remand. In many of those courts, hundreds of pending cases would require substantial pretrial work including all case-specific discovery,

and years would likely elapse before any significant number of cases could even be ready for trial.

In addition, many plaintiffs – such as those in the many cases originally filed in the District of Massachusetts but not involving residents of that state – may be subject to venue transfers (or dismissals) on *forum non conveniens* grounds, which may increase the number of federal districts that would have to contend with Seroquel cases.  This further magnifies the scattershot, uncoordinated management of this litigation that will ensue if this Court leaves all case-specific discovery and related case development to be conducted solely upon remand.

Regardless of whether the transferor courts handle the increased caseload by creating *de facto* mini-MDLs or by transferring those cases to other jurisdictions, resources would be wasted as counsel (for both defendants and plaintiffs) struggle to comply with a host of disparate pretrial schedules, varying discovery limitations, and potentially competing substantive rulings on issues common to many if not all of the pending cases.  This is precisely the result – delay, confusion, inefficiency, and lack of coordination – that the MDL is expressly designed to avoid.

In short, if this Court adopts a cramped view of its role in these MDL proceedings and denies any case-specific discovery, it would not only deliver cases on remand that are years away from being ready for trial, but it would also fail to take advantage of the opportunity for coordinated and efficient management of this litigation.[6]  Moreover, it would

---

[6]  By contrast, the *Baycol* MDL court acknowledged its "directive" as transferee court to make sure that the "thousands of cases" in those coordinated proceedings were "squeaky clean before they go back" to transferor courts upon remand, *i.e.*, that they were actually

be delivering cases back on remand that require other courts across the country not only to conduct the core discovery required in each case, but also to make potentially conflicting rulings on key legal issues that this Court was unable to make given its refusal to permit any case-specific discovery (even in the subset of cases proposed by AstraZeneca). It should be this Court's role substantially to advance this litigation – to serve as a gatekeeper that eliminates spurious and otherwise meritless cases, and otherwise to prepare, refine and package the remaining cases either for trial upon remand or other expeditious dispute resolution. The Court can best fulfill this role by overseeing and coordinating case-specific discovery *in the MDL*. Adopting AstraZeneca's proposed case-specific discovery program would establish an orderly and efficient proposal for accomplishing those goals.

### 4. The "Expedited Case-Specific Discovery Program" Proposed By AstraZeneca Will Further The Purposes Of This MDL And Should Be Adopted by The Court

AstraZeneca believes that case-specific discovery should be coordinated with respect to every case pending in this MDL, and is prepared to devote all necessary resources to conduct such comprehensive discovery with all deliberate speed. Given the sheer magnitude of the number of plaintiffs with claims now pending before this Court, however, AstraZeneca's counsel has tried in good faith to devise alternative procedural mechanisms to achieve many of the benefits generally derived from case-specific discovery while minimizing to the extent practicable the burden and expense associated with such important and necessary discovery.

---

"ready" for "trial" at the close of the MDL. *Baycol*, Transcript of Proceedings, at 123-24 (D. Minn. Oct. 9, 2003) (Ex. Q).

To this end, AstraZeneca asks the Court to adopt in concept the proposed "Expedited Case-Specific Discovery Program" referenced in its CMO No. 4.  Additional details about this proposed program, as suggested to plaintiffs in negotiation, are contained in Exhibit A hereto.  Under this proposed program, the parties would immediately commence case-specific discovery with respect to some substantial "subset" of randomly selected plaintiffs in this MDL, *see* [Proposed] CMO No. 4, ¶ II, and AstraZeneca has suggested that 100 randomly selected plaintiffs be included, Ex. A, ¶ II.[7]

Conducting full discovery in this "expedited pool" will educate the Court and the parties as to the nature of the various pending claims and their actual underlying factual content, and thus will provide invaluable information about these proceedings which will enable this Court effectively to perform its functions.  It also will enable the parties to make educated decisions as to the future course of these coordinated proceedings and whether similar treatment of other cases would be useful and appropriate.  Rather than speculate about how plaintiffs, their treating physicians, or their purported experts will testify with respect to the core issues implicated by these claims, this proposed case-specific discovery program will begin to provide critical answers to these and other fundamental questions in this litigation.  The MDL courts in the *Baycol*, *Welding Fume*, and *Bextra/Celebrex* litigations adopted comparable expedited discovery programs in a subset of cases in those MDLs, which promoted and facilitated the just and efficient conduct of the coordinated MDL proceedings – and this Court should do the same.

---

[7]  The cases may be selected using the randomizer tool located at http://www.randomizer.org.  Researchers use this tool "to assign participants to experimental conditions." *Id.*

Under AstraZeneca's proposed program, fact discovery will be complete in all 100 cases by February 1, 2008, including depositions of plaintiffs, their treating physicians, and other fact witnesses. In terms of expert discovery, Plaintiffs' case-specific expert reports are due by February 29, 2008, AstraZeneca's expert reports are due April 1, 2008, and expert deposition discovery is to completed by May 2, 2008. Finally, dispositive motions are to be filed by June 1, 2008, and *Daubert* motions by July 15, 2008. Because these dates correspond to the deadlines for the completion of "generic" discovery discussed above, adoption of this case-specific discovery program will not delay the Court's desired close of this MDL.

If the Court adopts AstraZeneca's proposed program, all cases in the expedited pool will likely be resolved, or otherwise be ready for remand and trial, by the fall of 2008. This proposal has three primary advantages. First, the cases will be randomized so that neither side is disadvantaged by the sequencing of cases. In some MDLs, one or both sides complain that the order in which case-specific discovery is conducted creates bias. The use of a randomizer to select cases is intended to remove this risk. Second, the proposal will result in cases sent back to the transferor courts virtually ready for trial or other disposition, with invaluable guidance provided to the trial courts by this Court. Finally, selecting a random sample of 100 cases will enable this Court to examine a host of issues likely to impact many of these cases. The Court will be able to dispose of spurious claims quickly, and to apply its expertise to address the overarching legal issues in the remaining cases.

All three of these advantages counsel in favor of adopting the expedited case-specific discovery program proposed by AstraZeneca. That program will swiftly resolve a number of

cases, and will prepare a substantial number for trial or other disposition.  It will also provide

critical factual information about a substantial subset of the cases pending in this MDL,

which will provide insights with respect to the entire Seroquel litigation.  And it will enable

the Court more readily to perform the crucial coordination functions it is authorized to

perform under 15 U.S.C. § 1407(a), by shining a light on potentially overarching issues

common to many of the plaintiffs' cases.  By focusing this Court and the parties' attention on

these issues, the goals of the JPML will be furthered and the benefits of MDL coordination

may be achieved.

> **5.      Case-Specific Discovery Is Necessary To Facilitate The Possibility Of Meaningful Alternative Dispute Resolution Discussions In This MDL**

Finally, permitting case-specific discovery in at least a substantial subset of cases in

this MDL might also serve to facilitate the possibility of meaningful alternative dispute

resolution ("ADR") consideration.  As AstraZeneca has explained to plaintiffs, it would be

futile to talk about an ADR program at this point in the litigation when AstraZeneca does not

have nearly enough information about plaintiffs' claims and their underlying factual content

to make an informed decision about whether ADR would be helpful in some, all, or none of

these cases.  As confirmed by experience in other MDL litigation, the outcome of a given

case often turns on case-specific information about the plaintiff that emerges through the

record collection and discovery process.  The only way to find out whether ADR might be a

useful tool in this MDL is to work up a group of cases, subject them to case-specific fact and

expert discovery, and then, when both AstraZeneca and plaintiffs have a much better

understanding of the cases, determine whether ADR would perhaps assist in resolving any of

the cases.  Accordingly, these ADR considerations provide yet another reason why the Court

should permit case-specific discovery in some substantial subset of cases in this MDL.

**III.**    **CONCLUSION**

For the foregoing reasons, this Court should adopt and enter AstraZeneca's proposed

CMO No. 4 in its entirety.

Respectfully submitted on this the 26th day of February, 2007.

DATED:  February 26, 2007

/s/ Fred T. Magaziner
Fred T. Magaziner
Shane T. Prince
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA  19103
Telephone: (215) 994-4000
Facsimile: (215) 994-2222
fred.magaziner@dechert.com

*Counsel for AstraZeneca Pharmaceuticals LP*
*and AstraZeneca LP*

**CERTIFICATION OF COUNSEL PURSUANT TO M.D. FLA. L.R. 3.01(g)**

Prior to filing this Motion, counsel for AstraZeneca conferred with counsel for the plaintiffs in a good faith attempt to resolve the issues presented in the motion and [Proposed] CMO No. 4.  Plaintiffs' counsel informed counsel for AstraZeneca that plaintiffs oppose AstraZeneca's Motion and [Proposed] CMO No. 4.


/s/ Shane T. Prince

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the 26th of February, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the non-CM/ECF participants listed on the attached Service List.


<u>/s/ Shane T. Prince</u>

**SERVICE LIST**

(As of December 15, 2006)

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No. 1769**

| | |
|---|---|
| Paul J. Pennock, Esq.<br>Michael E. Pederson, Esq.<br>Weitz & Luxenberg, P.C.<br>180 Maiden Lane - 17th Floor<br>New York, NY 10038<br>Telephone: (212) 558-5500<br>Ppennock@weitzlux.com<br>MPederson@weitzlux.com | Camp Bailey, Esq.<br>Michael W. Perrin, Esq.<br>Fletcher Trammell, Esq.<br>Bailey Perrin Bailey LLP<br>The Lyric Centre<br>440 Louisiana, Suite 2100<br>Houston, TX 77002<br>Telephone: (713) 425-7240<br>cbailey@bpblaw.com<br>mperrin@bpblaw.com |
| Larry Roth, Esq.<br>Law Offices of Larry M. Roth, P.A.<br>Post Office Box 547637<br>Orlando, FL 32854-7637<br>Telephone: (407) 872-2239<br>LROTH@roth-law.com | Tommy Fibich, Esq.<br>Fibich, Hampton & Leebron, L.L.P.<br>1401 McKinney, Suite 1800<br>Five Houston Center<br>Houston, TX 77010<br>Telephone: (713) 751-0025<br>tfibich@fhl-law.com |
| Matthew F. Pawa, Esq.<br>Law Offices of Matthew F. Pawa, P.C.<br>1280 Centre St., Suite 230<br>Newton Centre, MA 02459<br>Telephone: (617) 641-9550<br>Mp@pawalaw.com | John Driscoll, Esq.<br>Brown & Crouppen, PC<br>720 Olive St.<br>St. Louis, MO 63101<br>Telephone: (314) 421-0216<br>Jdriscoll@brownandcrouppen.com<br>asmith@brownandcrouppen.com<br>blape@brownandcrouppen.com |
| Keith M. Jensen, Esq.<br>Jensen, Belew & Gonzalez, PLLC<br>1024 North Main<br>Fort Worth, TX 76106<br>Telephone: (817) 334-0762<br>kj@kjensenlaw.com | Scott Allen, Esq.<br>Cruse, Scott, Henderson & Allen, L.L.P.<br>2777 Allen Parkway, 7th Floor<br>Houston, Texas 77019<br>Telephone: (713) 650-6600<br>sallen@crusescott.com |

| | |
|---|---|
| Matthew E. Lundy, Esq.<br>Lundy & Davis, LLP<br>333 North Sam Houston Parkway East<br>Suite 375<br>Houston, TX 77060<br>Telephone: (281) 272-0797<br>mlundy@lundydavis.com | W. Todd Harvey, Esq.<br>Whatley Drake, LLC<br>2323 2nd Avenue North<br>Birmingham, AL 35203<br>Telephone: (205) 328-9576<br>THARVEY@whatleydrake.com<br>ccf@whatleydrake.com |
| Lawrence J. Gornick, Esq.<br>William A. Levin, Esq.<br>Dennis J. Canty, Esq.<br>Levin Simes Kaiser & Gornick LLP<br>44 Montgomery Street, 36th Floor<br>San Francisco, CA 94104<br>Telephone: (415) 646-7160<br>lgornick@lskg-law.com<br>dcanty@lskg-law.com<br>llsimes@levins-law.com<br>jkaiser@lskg-law.com<br>echarley@lskg-law.com<br>ddecarli@lskg-law.com<br>bsund@lskg-law.com<br>astavrakaras@lskg-law.com | Gregory P. Forney, Esq.<br>Shaffer Lombardo Shurin<br>911 Main Street, Suite 2000<br>Kansas City, MO 64105<br>Telephone: (816) 931-0500<br>gforney@sls-law.com<br>rbish@sls-law.com<br>***Attorney for Defendant,***<br>***Marguerite Devon French*** |
| Robert L. Salim, Esq.<br>Robert L. Salim Attorney at Law<br>PO Box 2069<br>Natchitoches, LA 71457-2069<br>Telephone: (318) 352-5999<br>robertsalim@cp-tel.net | Eric B. Milliken, Esq.<br>3 Sir Barton Ct.<br>Newark, DE 19702<br>***Pro Se*** |

| | |
|---|---|
| Justin Witkin, Esq.<br>Ken Smith, Esq.<br>Aylstock, Witkin & Sasser, PLC<br>4400 Bayou Boulevard<br>Suite 58<br>Pensacola, FL 32503<br>Telephone: (850) 916-7450<br>Jwitkin@AWS-LAW.com<br>ablankenship@aws-law.com<br>aburrus@aws-law.com<br>asmith@aws-law.com<br>ksmith@aws-law.com<br>noverholtz@aws-law.com<br>jsafe@aws-law.com | Louisiana Wholesale Drug Co. Inc.<br>C/O Gayle R. White<br>Registered Agent<br>Highway 167N<br>Sunset, LA 70584<br>***Pro Se*** |
| Aaron C. Johnson, Esq.<br>Summers & Johnson<br>717 Thomas<br>Weston, MO 64098<br>Telephone: (816) 640-9940<br>firm@summersandjohnson.com | Catherine Solomon<br>(current address unknown)<br>***Pro Se*** |
| Todd S. Hageman, Esq.<br>Simon and Passanante, PC<br>701 Market St., Suite 1450<br>St. Louis, MO 63101<br>Telephone: (314) 241-2929<br>thageman@spstl-law.com | Randy Niemeyer<br>22442 Pike 309<br>Bowling Green, MO 63334-5209<br>***Pro Se*** |
| Thomas F. Campion, Esq.<br>Heidi E. Hilgendorff, Esq.<br>Drinker Biddle & Reath, LLP<br>500 Campus Drive<br>Florham Park, New Jersey 07932-1047<br>Telephone: (973) 360-1100<br>Thomas.Campion@dbr.com<br>Heidi.Hilgendorff@dbr.com<br>***Attorneys for Defendants Janssen Pharmaceutical Products and Johnson & Johnson Co.*** | Michael Davis, Esq.<br>James Mizgala, Esq.<br>Sidley Austin LLP<br>Bank One Plaza<br>One South Dearborn Street<br>Chicago, IL 60603<br>Telephone: (312) 853-7731<br>mdavis@sidley.com<br>jmizgala@sidley.com<br>***Attorneys for Defendants AstraZeneca LP and AstraZeneca Pharmaceuticals, LP*** |

| | |
|---|---|
| Elizabeth Raines, Esq.<br>Baker, Sterchi, Cowden & Rice, LLC<br>2400 Pershing Road, Suite 500<br>Kansas City, MO 64108<br>Telephone: (816) 471-2121<br>raines@bscr-law.com<br>***Attorneys for Defendant AstraZeneca, PLC*** | Timothy Reese Balducci, Esq.<br>The Langston Law Firm, PA<br>P.O. Box 787<br>100 South Main Street<br>Booneville, MS 38829-0787<br>Telephone: (662) 728-3138<br>tbalducci@langstonlaw.com |
| Kenneth W. Bean, Esq.<br>Sandberg, Phoenix & von Gontard<br>One City Centre<br>15th Floor<br>St. Louis, MO 63101-1880<br>Telephone: (314) 231-3332<br>kbean@spvg.com<br>***Attorney for Defendant Dr. Asif Habib*** | Robert L. Ciotti, Esq.<br>Carlton Fields, P.A.<br>4221 W. Boy Scout Boulevard<br>Suite 1000<br>Tampa, FL 33607-5736<br>Telephone: (813) 223-7000<br>rciotti@carltonfields.com<br>***Attorney for Defendants AstraZeneca Pharmaceuticals, LP, and AstraZeneca LP*** |
| Aaron K. Dickey, Esq.<br>Goldenberg and Heller, PC<br>P.O. Box 959<br>2227 S. State Road 157<br>Edwardsville, IL 62025<br>Telephone: (618) 650-7107<br>aaron@ghalaw.com | Jona R. Hefner, Esq.<br>3441 W. Memorial, Suite 4<br>Oklahoma City, OK 73134-7000<br>Telephone: (405) 286-3000<br>attorneyokc@hotmail.com |
| Mark P. Robinson, Jr., Esq.<br>Robinson, Calcagnie & Robinson<br>620 Newport Center Drive, 7th Floor<br>Newport Beach, CA 92660<br>Telephone: (949) 720-1288<br>mrobinson@robinson-pilaw.com | David P. Matthews, Esq.<br>Abraham, Watkins, Nichols, Sorrels,<br>Matthews & Friend<br>800 Commerce Street<br>Houston, TX 77002-1776<br>Telephone: (713) 222-7211<br>dmatthews@abrahamwatkins.com<br>agoff@abrahamwatkins.com<br>irhoades@abrahamwatkins.com<br>jwebster@abrahamwatkins.com |

| | |
|---|---|
| Robert A. Schwartz, Esq.<br>Bailey & Galyen<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744<br>bschwartz@galyen.com | Mary B. Cotton<br>John D. Giddens, P.A.<br>226 North President Street<br>P.O. Box 22546<br>Jackson, MS 39225-2546<br>Telephone: (601) 355-2022<br>betsy@law-inc.com |
| Salvatore M. Machi<br>Ted Machi & Associates PC<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744 | Howard Nations<br>Lori A. Siler<br>Howard L. Nations Attorney At Law<br>4515 Yoakum Blvd.<br>Houston, TX 77006-5895<br>Telephone: (713) 807-8400<br>nations@howardnations.com |
| David Dickens<br>Miller & Associates<br>105 North Alfred Street<br>Alexandria, VA  22314-3010<br>(703) 519-8080<br>ddickens@doctoratlaw.com | Scott Burdine, Esq.<br>Hagans Burdine Montgomery<br>Rustay & Winchester, P.C.<br>3200 Travis, Fourth Floor<br>Houston, TX  77006<br>Telephone:  (713) 222-2700<br>sburdine@hagans-law.com |
| Pete Schneider, Esq.<br>Grady, Schneider & Newman, L.L.P.<br>801 Congress, 4th Floor<br>Houston, TX  77002<br>(713) 228-2200<br>pschneider@gsnlaw.com | Lizy Santiago, Esq.<br>Abraham, Watkins, Nichols,<br>Sorrels, Matthews & Friend<br>800 Commerce Street<br>Houston, TX  77002-1776<br>(713) 222-7211<br>lsantiago@abrahamwatkins.com |

| Fred T. Magaziner | |
| Marjorie Shiekman | |
| A. Elizabeth Balakhani | |
| Shane T. Prince | |
| Eben S. Flaster | |
| DECHERT LLP | |
| Cira Centre | |
| 2929 Arch Street | |
| Philadelphia, PA  19103 | |
| (215) 994-4000 | |
| fred.magaziner@dechert.com | |
| shane.prince@dechert.com | |
| marjorie.shiekman@dechert.com | |
| eben.flaster@dechert.com | |
| elizabeth.balakhani@dechert.com | |