# Exhibit J

DEC - 5 2000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - -x

IN RE:

REZULIN PRODUCTS LIABILITY
LITIGATION (MDL-1348)

This Document Relates To: All Cases

- - - - - - - - - - - - - - - - - - - - - - - - - - -x

M ~~(PROPOSED ORDER)~~

MASTER FILE

00 Civ. 2843 (LAK)

## PRETRIAL ORDER NO. 4
(Plaintiff's Fact Sheet)

Lewis A. Kaplan, *District Judge.*

Pursuant to Paragraph 2.5.2.1 of this Court's Pretrial Order No. 2 (Pretrial Schedule), the

Court has been informed that the Plaintiffs' Executive Committee ("PEC") and the defendants

have agreed upon the form of plaintiffs' questionnaire, including requests for medical,

employment and insurance authorizations and other pertinent documents in the form of the

attached Plaintiff's Fact Sheet, and therefore, upon review of the proposed Plaintiff's Fact Sheet,

it is hereby

**ORDERED,** as follows:

1.  **Adoption of Plaintiff's Fact Sheet.** The attached Plaintiff's Fact Sheet,

including requests for medical, employment and insurance authorizations and other pertinent

documents, is to be completed under oath by all plaintiffs pursuant to the schedule and

procedures previously Ordered in Pretrial Order No. 2 (Pretrial Schedule).

Doc #30198270.WPD

RZ 0013129

E-SERVED
03/11/05
03:59 PM ET
Seycol MDL 1431

2.  **Supplementation of Completed Fact Sheet.**  The person completing the Fact Sheet shall have the duty and the right to supplement any response to the Fact Sheet if the party learns that any such response is incomplete or incorrect, or if new information responsive to the Fact Sheet becomes known to that party.

3.  **Depositions of Plaintiffs.**  Subject to further Orders of this Court regarding protocols to be observed in taking depositions, questions at the deposition of a plaintiff shall not seek mere repetition of information provided in that plaintiff's completed Fact Sheet.  However, nothing in this Order shall prevent defendants from asking questions directed at confirming, correcting, supplementing, updating, explaining and/or expanding the information provided in a completed Fact Sheet to the extent permitted by the Federal Rules of Civil Procedure.

4.  **Specific Objections Pursuant to Applicable State Law.**  To the extent that any party contends that a response to any item requested in the Fact Sheet is prohibited by the substantive state law applicable to their case, they must serve a written objection to providing that response, including the legal basis for that objection, at or before service of the completed Fact Sheet.

5.  **Privilege Claims.**  To the extent that any information, documents or authorizations required to be provided in response to the Fact Sheet are withheld on the grounds of privilege, a privilege log shall be provided of the information, documents or authorizations withheld.

6.  **Redaction of Information.**  To the extent that any information is redacted from any document for any reason, a redaction log of the redacted information that sets forth the legal basis for the redaction shall be provided to the defendants.  Upon request, the attorneys for

E-SERVED
03/11/05
03:59 PM ET
Boycol MDL 1433

the defendants may inspect, on an "attorneys' eyes only" basis, such redacted material. If there is a dispute whether any redacted material qualifies for redaction, counsel may move for a ruling, which may require this Court's *in camera* inspection of the redacted material on the issue of whether that information is entitled to redaction.

7. **Validity of Authorizations**. All authorizations to obtain records provided pursuant to this Order, or any other Order of this Court, shall remain valid during the entire time that the action of the plaintiff who provided the authorization is pending in this Court, any transferor Court or any Court to which such action is remanded. No such authorization shall be valid after the action of the plaintiff who provided the authorization is concluded, either by settlement or by entry of final judgement.

8. **Notification of Request for Records**. Whenever defendants request records pursuant to authorizations provided with the Fact Sheet , the principal attorney for that plaintiff, as identified in Item I.A.5 of the completed Fact Sheet, shall be provided with a copy of that request for records.

9. **Copies of Records Received Pursuant to Authorization.** Whenever records are received by defendants in response to a request pursuant to authorizations provided with the Fact Sheet, a copy of those records shall be provided to the principal attorney for that plaintiff as identified in Item I.A.5. of the completed Fact Sheet.

10. **Documents Previously Produced by Defendants.** Nothing in this Order or the Fact Sheet shall be construed as requiring a plaintiff to produce copies of documents produced by the defendants in these MDL proceedings or in other Rezulin litigation, if those documents were rightfully received by that plaintiff or by his or her counsel.

11. **Admissibility of Information Provided via Fact Sheet.** Neither this Order, nor the completion of a Fact Sheet and the required authorizations, shall prejudice the right of any party to contest the admissibility of any information or documents disclosed.

12. This Order shall apply to all cases docketed in MDL 1348 and will remain in effect in all such cases after remand to transferor courts.

SO ORDERED

Dated: ɪᴠ/ˢ/ᴏᴏ

_____

Lewis A. Kaplan
United States District Judge

# Exhibit K



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - -x

IN RE:

                                     **MASTER FILE**

REZULIN PRODUCTS LIABILITY
LITIGATION (MDL-1348)                       **00 Civ. 2843 (LAK)**

This Document Relates To:  All Cases

- - - - - - - - - - - - - - - - - - - - - - - - -x


## STIPULATION AND [~~PROPOSED~~] ORDER


       The parties, by their undersigned counsel, have met and conferred as to certain issues pertaining to ongoing discovery and have agreed to this joint application respectfully requesting that this Court enter the following Pretrial Order in this MDL proceeding:

             *       *       *       *       *       *


## PRETRIAL ORDER NO. 82


Lewis A. Kaplan, *District Judge.*


      On November 9, 2000, this Court entered Pretrial Order No. 2 (Pretrial Schedule), which addressed discovery in these MDL proceedings. When that Order was entered there were approximately 310 plaintiffs in 128 cases in this MDL.  Pretrial Order No. 2 provided that discovery in all cases was to be completed before January 31, 2002.  Paragraph 2.1.

      On July 26, 2001 the Court entered Pretrial Order No. 27, which extended the time to complete  discovery for an additional six months until July 31, 2002.   As of today, Rezulin litigation in federal court involves more than 3800 plaintiffs named in nearly 600 actions.  In

RZ 0151129

addition, new cases continue to be filed and transferred so that it has become impracticable to set a single date for the completion of discovery of the plaintiffs in all cases.

Therefore, in order to provide the parties with a reasonable time to complete discovery including discovery regarding the claims of each of the MDL plaintiffs and in order to provide for timely remand of cases that are trial ready, it is hereby

**ORDERED,** as follows:

1.      When a plaintiff has provided discovery in compliance with paragraph 2.5 of Pretrial Order No. 2 and with Pretrial Order No. 4,  and complete medical records have been produced to or obtained by defendants, the defendants may proceed with depositions and other discovery in regard to that plaintiff's claims.  Such discovery shall be completed within 120 days of commencement of those depositions unless one of the parties obtains an extension from the Court for cause, which may include the fact that an excessive number of plaintiffs are subject to discovery of their claims within a given period.

2.      Upon the completion of defendants' discovery, the completion of  discovery and disclosure pursuant to other Pretrial Orders in this MDL proceeding, and the disposition of all applicable motions, cases will be considered for suggestion of remand to their transferor court in a manner and pursuant to a schedule to be determined by this Court. If the defendants contend that the transferor court is not the appropriate United States District Court for the trial of a case in which remand has been requested, they may file the appropriate motion, which will be determined by this Court prior to any suggestion of remand of that case.

3.      If any plaintiff has not completely complied with the discovery requirements set forth above and in the prior Orders of this Court, his or her case shall not be considered for

E-SERVED
03/11/05
03:59 PM ET
Baycol MDL 1431

remand until this Court has determined that the discovery obligations of the plaintiff have been completed and the aforesaid requirements have been met.

4.   The Court may consider applications for a suggestion of remand of a case based upon circumstances not specifically addressed in this Order.

5.   To the extent that this Pretrial Order conflicts with any procedures or deadlines established by prior Orders of this Court in these MDL proceedings, the procedures and deadlines of this Order shall control, however, to the extent there is no such conflict, the prior Orders of this Court in these MDL proceedings shall remain in effect. This Order shall have no effect on deadlines or procedures established by this Court that are not addressed herein.

6.   This Order applies to all cases docketed in MDL 1348.

\*          \*          \*          \*          \*

Respectfully submitted this 4th day of April, 2002:

Melvyn I. Weiss
Regina LaPolla (RL-9578)
Milberg, Weiss, Bershad, Hynes &
Lerach, L.L.P.
One Pennsylvania Place
New York, NY 10019
Telephone: (212) 594-5300

Glenn J. Pogust (GP- 4845)
Kaye Scholer, LLP
425 Park Avenue
New York, New York 10022
Telephone (212) 836-7801

Counsel for the Warner-Lambert
Defendants

Charles A. Mathis, Jr.
Mathis, Adams & Tate, P.C.
Herman, Casey & Kitchens, LLP
Suite 1400 The Equitable Building
100 Peachtree Street
Atlanta, GA 30303

Telephone: (404) 523-5000

Arnold Levin
Levin, Fishbein, Sedran & Berman
Suite 500, 510 Walnut Street
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500

Ramon Rossi Lopez
Lopez, Hodes, Restaino, Milman,
Skikos & Polos
450 Newport Center Drive, 2nd Floor
Newport Beach, CA 92660
Telephone: (949) 640-8222


Plaintiffs' Executive Committee


SO ORDERED

Dated: 4/29/02

Copies mailed 04/29/02
Chambers of Judge Kaplan
PMC

_____
Lewis A. Kaplan
United States District Judge

It is ORDERED that counsel to whom this Order is
sent is responsible for faxing a copy to all counsel
and retaining verification of such in the case file.
Do not fax such verification to Chambers.

E-SERVED
03/11/05
03:59 PM ET
Baycol MDL 1431

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
In re:

REZULIN PRODUCTS LIABILITY
LITIGATION

This Document Relates to: All Actions
------------------------------------------------------x



U. S. DISTRICT COU
APR 3 0 2002
S. D. OF N. Y.

MASTER FILE
00 Civ. 2843 (LAK)
(MDL No. 1348)

## STIPULATION OF THE PARTIES AS
## TO THE CONDUCT OF FUTURE FACT AND EXPERT DISCOVERY

The parties, by and through undersigned counsel, have met and conferred as to certain issues pertaining to ongoing discovery and have agreed to this joint application for an order to expedite the conclusion of fact and expert discovery in the above referenced proceeding providing as follows:

1.     The parties may continue to take depositions pursuant to Pretrial Order No. 12, including depositions of corporate representatives and current or former employees of the Warner-Lambert defendants, up to and through the discovery cut-off of July 31, 2002; and

2.     Expert disclosure and motions as referenced in paragraphs 4, 5 and 6 of Pretrial Order No. 2 shall commence not less than 30 days after the completion of fact discovery. Therefore, plaintiffs' expert disclosures pursuant to Rule 26 shall be provided no later than August 31, 2002, and all other deadlines set forth in paragraphs 4, 5 and 6 of Pretrial Order No. 2 shall be rescheduled accordingly.

RZ 0151130

E-SERVED
03/11/05
03:59 PM ET
Bextra/MDL 1699

WHEREFORE, the parties respectfully request that the Court enter an order as

allowing the parties to conduct fact and expert discovery as outlined above.

Respectfully submitted this 1st of April, 2002:

Melvyn I. Weiss
Regina LaPolla (RL-9578)
Milberg Weiss Bershad Hynes & Lerach LLP
One Pennsylvania Plaza
New York, NY 10119
Telephone: (212) 594-5300

Charles A. Mathis, Jr.
Mathis & Adams, PC
Herman, Mathis, Casey, Kitchens & Gerel LLP
Suite 1400 The Equitable Building
100 Peachtree Street
Atlanta, GA 30303
Telephone: (404) 523-5000

Arnold Levin
Levin, Fishbein, Sedran & Berman
Suite 500
510 Walnut Street
Philadelphia, PA 19106-3697
Telephone: (215) 592-1500

Ramon Rossi Lopez
Lopez, Hodes, Restaino, Milman, Skikos, Polos
450 Newport Center Drive, 2nd Floor
Newport Beach, CA 92660
Telephone: (949) 640-8222

**Plaintiffs' Executive Committee**

Glenn Pogust (GP-4845)
Kaye, Scholer, LLP
425 Park Avenue
New York, NY 10022

**Counsel for Defendants**

SO ORDERED,
Dated: April 29, 2002

Lewis A. Kaplan
United States District Judge

Copies mailed 04/29/02
Chambers of Judge Kaplan

PMC

It __ RDERED that counsel to whom this Order is
sent is responsible for faxing a copy to all counsel
and retaining verification of such in the case file.
Do not fax such verification to Chambers.

Exhibit L

E-SERVED
03/11/05
03:59 PM ET
Barcol MDL 1407

THE HONORABLE BARBARA J. ROTHSTEIN

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| IN RE: PHENYLPROPANOLAMINE (PPA) PRODUCTS LIABILITY LITIGATION<br><br>This document relates to the actions listed on Attachment A | MDL No. 1407<br><br>FINAL MDL PRETRIAL ORDER FOR CASES INCLUDING EPHEDRA CLAIMS |

## FINAL MDL PRETRIAL ORDER

This Final MDL Pretrial Order describes the events that have taken place in MDL 1407 and those items that require further action by the transferor court. A copy of this Final MDL Pretrial Order, along with the case file and materials, will be provided to the transferor court.

## I.   INTRODUCTION

On August 28, 2001, the Judicial Panel for Multidistrict Litigation ("JPML") designated this Court as the transferee court for all individual, consumer class and other federal cases arising out of the sale or use of over-the-counter cough/cold and appetite suppressant products containing phenylpropanolamine ("PPA") for pre-trial consolidation

FINAL MDL PRETRIAL ORDER FOR CASES INCLUDING
EPHEDRA CLAIMS-1
(MDL 1407)

1608644.2

Williams, Kastner & Gibbs PLLC
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600

SERVED
03/11/05
03:59 PM ET
Benicol MDL 1407

1    and coordination. *In re: Phenylpropanolamine ("PPA") Products Liability Litigation*, MDL

2    No. 1407.

3          The proceedings in this MDL 1407 began in earnest with the Order re: Initial

4    Conference dated November 1, 2001, requiring plaintiffs and defendants to submit proposed

5    committee rosters, and scheduling the initial conference for November 16, 2001.  Since then:

6    (1) generic fact discovery has been completed or substantially completed as to most MDL

7    defendants (including written discovery, document production and review, discovery

8    depositions and requests for admissions); (2) a procedure for case-specific fact discovery in

9    each case has been implemented, and discovery has been underway since 2002; (3) Rule 26

10   disclosures of generic experts have been made, the discovery depositions of those experts

11   have been completed, and a process to permit the adoption of those experts' opinions in other

12   cases transferred or being transferred to this MDL has been adopted; (4) trial preservation

13   depositions of several of plaintiffs' and defendants' generic experts are underway or have

14   been taken; (5) and the Court has resolved *Daubert* motions challenging plaintiffs' expert

15   opinions solely as to general causation.

16         Given the foregoing, the Court is satisfied that the PPA aspects of this MDL have

17   sufficiently matured and the Court has issued a Suggestion of Remand for the cases listed on

18   Attachment A to facilitate their remand by the JPML to their transferor courts.  All case-

19   specific PPA fact discovery is complete, and such discovery cannot be reopened without

20   permission of the transferor court.   Although the case-specific PPA fact discovery is

21   complete, there are Ephedra aspects of the case remaining that make it a candidate for

22   transfer to the MDL No. 1598 *In re Ephedra Products Liability Litigation* ("Ephedra MDL

23   No. 1598").  Ephedra MDL No. 1598 was established on April 13, 2004, in the Southern

24   District of New York before Judge Jed S. Rakoff.  Given that Ephedra discovery has not been

25   FINAL MDL PRETRIAL ORDER FOR CASES INCLUDING
     EPHEDRA CLAIMS-2
     (MDL 1407)

Williams, Kastner & Gibbs PLLC
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600

1608644.2

SERVED
03/11/05
03:59 PM ET
Benzol MDL 1431

1   conducted in the PPA MDL, the cases listed on Attachment A would benefit from the

2   coordinated discovery proceedings in the Ephedra MDL No. 1598 that is overseeing

3   coordinated discovery in cases such as these alleging product injuries as a result of Ephedra

4   ingestion.  The cases listed on Attachment A involve common questions of fact with actions

5   previously transferred under 28 U.S.C. § 1407 to the Ephedra MDL No. 1598, and

6   consequently, a tag-a-long notice should be filed with the Clerk of the JPML upon remand.

7   If transferred to the Ephedra MDL, the cases listed on Attachment A will once again return to

8   the transferor court when the Ephedra discovery is complete for further case-specific

9   proceedings, including designation and discovery of case-specific experts, independent

10  medical examinations, pre-trial motion practice and final disposition.  Below is a more

11  detailed overview of the proceedings in MDL 1407 to date concerning the PPA aspects of the

12  cases listed on Attachment A.

13                    **II.   ADMINISTRATION OF CASES**

14  **A.   Lead and Liaison Counsel.**

15          By order entered on November 20, 2001, this Court appointed and assigned certain

16  responsibilities to Lead and Liaison Counsel for Plaintiffs and Defendants.   (Order

17  Appointing Lead and Liaison Counsel (signed Nov. 19, 2001, entered Nov. 20, 2001).  The

18  responsibilities of each are delineated in Memorandum in Support of Proposed Language

19  Ordered by the Court in its November 1, 2001, "Order re:  Initial Conference" (Nov. 14,

20  2001) (hereinafter, "Memo Nov. 14, 2001")).

21  **B.   Committees.**

22          The Court approved and appointed members to various committees designed to manage

23  and advance the litigation, including the Plaintiff's Steering Committee ("PSC").   (Order

24  Appointing Members to Plaintiffs' and Joint Committees (Jan. 17, 2002) (hereafter "Order

25  FINAL MDL PRETRIAL ORDER FOR CASES INCLUDING
    EPHEDRA CLAIMS-3
    (MDL 1407)

Williams, Kastner & Gibbs PLLC
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600

1608644.2

SERVED
03/11/05
03:59 PM ET
Penco MDL 1407

1    Jan. 17, 2002")).  As part of its duties and responsibilities, the PSC assists all plaintiffs in

2    MDL 1407 by overseeing discovery (including conducting extensive discovery of each

3    defendant), by communicating with plaintiff lawyers, by appearing before this Court, by

4    attending status conferences and by preparing motions and responses regarding case-wide

5    discovery matters.   The PSC acts on behalf of or in consultation with Plaintiffs' Lead

6    Counsel in the management of the litigation.   (Order Jan. 17, 2002; Plaintiffs' Lead

7    Counsels' Status Report No. 1 (Nov. 30, 2001)); Memo Nov. 14, 2001).

8    **C.    Common Benefit Fund.**

9        In order to provide for costs and attorneys' fees that the PSC (and its appointed

10    subcommittees) may be entitled to receive for providing case-wide services over the last

11    several years, the court provided for sequestration of four (4%) percent of all payments made

12    by defendants in settlements or in satisfaction of judgments of cases transferred to MDL

13    1407, to be placed in escrow into the common benefit fund (a/k/a MDL 1407 Fee and Cost

14    Trust Account).   Similarly, in those state court cases where plaintiffs have agreed to

15    coordinate with and use the MDL 1407 work product, the court provided for sequestration of

16    three (3%) percent of all such payments.   (The 4% and 3% payments are referred to

17    collectively herein as "MDL Assessment").   The MDL Assessments are to be deposited by

18    defendants into the common benefit fund and the total dollar amounts of these assessments

19    are confidential.  The common benefit fund will provide payment to PSC members and other

20    common benefit attorneys for the PSC's work product to the extent that the court ultimately

21    determines that the service was authorized, necessary and beneficial to plaintiffs.  The MDL

22    Assessment requirement applies to all MDL 1407 payments made by defendants to plaintiffs,

23    regardless of whether a plaintiff's case is disposed of while on the MDL 1407 docket or

24    following remand to the transferor court.

25    FINAL MDL PRETRIAL ORDER FOR CASES INCLUDING
     EPHEDRA CLAIMS-4
     (MDL 1407)

Williams, Kastner & Gibbs PLLC
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600

1608644.2

E-SERVED
03/11/05
03:59 PM ET
Baycol MDL 1431

1   The Common Benefit fund is governed by Amended CMO 8 (Establishing Plaintiffs'

2   Litigation Expense Fund to Compensate and Reimburse Attorneys for Services Performed

3   and Expenses Incurred for Common Benefit), CMO 16 (Establishing MDL 1407 Fee and

4   Cost Trust Account and Procedures) and CMO 20 (Establishing Common Benefit Fee

5   Committee, Procedures, and Standards to Determine Compensable Fees and Costs).   CMO

6   16 effectuates CMO 8 and details the procedures for (1) assessing and depositing these funds

7   into the account; (2) protecting the confidentiality of the information submitted to and from

8   the Trustee; (3) insuring the accuracy of the information provided; (4) reporting by the

9   Trustee to Liaison Counsel; and (5) resolving assessment disputes. (CMO 16).   CMO 20

10   establishes the Common Benefit Fee Committee, and sets forth (1) procedures for the review

11   of common benefit fee and cost applications and subsequent responsibilities, and (2)

12   standards for the review of common benefit fees and costs. (CMO 20).

13   **D.   State/Federal Coordination.**

14   It became evident in the beginning of MDL 1407 that the extensive parallel state and

15   federal PPA litigation, involving many of the same defendants and the same plaintiffs'

16   counsel in both state and federal courts, warranted particular emphasis on coordinated

17   discovery.   To this end, the parties in state and federal court have jointly succeeded in

18   reducing costs and expenses to themselves and the court system by coordinating most generic

19   discovery proceedings.   For example, depositions of defendant representatives and

20   employees were all cross-noticed and, with few exceptions, witnesses were deposed only

21   once for purposes of all cases in the country. Such was also the case during expert discovery.

22   Finally, the parties' presentation of expert testimony under *Daubert* (*see infra* Part III.C.)

23   was coordinated with many state court judges overseeing state court coordinated

24

25   FINAL MDL PRETRIAL ORDER FOR CASES INCLUDING
EPHEDRA CLAIMS-5
(MDL 1407)

**Williams, Kastner & Gibbs PLLC**
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600

1608644.2

proceedings. Overall, serious efforts were made by the parties and this Court to achieve meaningful coordination, which were met with considerable success.

**E.    Denial of Class Certification.**

The Court denied class certification in eight nationwide and one Louisiana statewide personal injury actions and in seven economic injury actions. (Order granting Defendants' Motion to Strike Class Allegations and Deny Class Certification (Jan. 5, 2002); Order Extending Court's June 5, 2002 Order Denying Class Certification to Additional Cases (Feb. 24, 2003); Order Denying Plaintiffs' Motion for Class Certification Pursuant to Rule 23(B)(3) for Economic Injury Claims (Sept. 4, 2003); (Order Denying Plaintiffs' Renewed Motion for Class Certification Pursuant to Rule 23(B)(3) for Economic Injury Claims (Feb. 7, 2003); Order Denying Certification of Kentucky Economic Injury Class (Nov. 5, 2003)).

## III.  DISCOVERY

This MDL has proceeded in a relatively quick and stream-lined fashion, thanks in large measure to the cooperation of the parties. Shortly after commencing this case in the winter of 2001, the court began issuing Case Management Orders ("CMOs") to govern most case-wide issues, as well as case-specific orders. The Court entered 20 CMOs, as well as supplements to them. Some of the specific CMOs are discussed, *infra*, expanding on their specific subject matter. All CMOs are accessible at the Court's website, (www.wawd.uscourts.gov/ wawd/mdl.nsf/main/page.) The primary orders that governed the pretrial management of the discovery in this litigation are CMO Nos. 1, 2, 3, 6, 6A, 10 and 19.

- CMO 1:    established a protocol for generic fact discovery (governing, *inter alia*, written discovery, document production and depositions of defendants' corporate representatives and employees);

FINAL MDL PRETRIAL ORDER FOR CASES INCLUDING
EPHEDRA CLAIMS-6
(MDL 1407)

Williams, Kastner & Gibbs PLLC
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600

1608644.2

SERVED
03/11/05
03:59 PM ET
MDL 1457

- **CMO 2:** set forth a confidentiality order;

- **CMO 3:** provided a document preservation order; and

- **CMO 6, 6A, 10 & 19:** established a protocol for case-specific fact discovery (governing, *inter alia*, written discovery (including a Fact Sheet and Records Authorizations, document production and depositions of plaintiffs and case-specific fact witnesses).

## A.   Generic Fact Discovery.

**1.   Document Discovery.** Extensive fact discovery was conducted against defendants and was substantially completed against most defendants by mid-2003. In an effort to attain consistency and to avoid undue duplication, the parties negotiated and agreed substantially upon master sets of requests for production and interrogatories ("Master Set of Written Discovery") which are attached to CMO 1. No further general document requests or interrogatories were allowed to be propounded on defendants without leave of Court. To the extent that any defendant had previously produced documents and/or made responses to document requests or interrogatories also contained in the Master Set of Written Discovery prior to January 21, 2002, those productions and/or responses were deemed responsive to the same requests contained in the Master Set of Written Discovery. (CMO 1 Parts V.E., V.F.).

Discovery was also conducted be the parties from Yale University and the various hospitals participating in the Hemorrhagic Stroke Project, from the trade association, the Consumer Healthcare Products Association, and from the U.S. Food and Drug Administration.

The PSC created a document depository located in Minneapolis, Minnesota, where millions of documents produced by defendants were stored, reviewed and digitized for use in

FINAL MDL PRETRIAL ORDER FOR CASES INCLUDING
EPHEDRA CLAIMS-7
(MDL 1407)

**Williams, Kastner & Gibbs PLLC**
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600

1608644.2

SERVED
03/11/05
03:59 PM ET
Barco/ MDL 1407

1   discovery and for purposes of creating "trial packages" for all plaintiffs who were interested

2   and who agreed to the set-aside percentage.

3       **2.    Depositions of Common Fact Witnesses.**  The basic principles governing the

4   taking of depositions of defendants' non case-specific (generic) fact witnesses were set forth

5   in CMO 1.  Cross-notices between state court proceedings and the MDL proceedings were

6   encouraged. (CMO 1 Part V.G.).  In the interest of efficiency and federal-state coordination,

7   several defendants cross-noticed the depositions of company witnesses, HSP Investigators

8   and CHPA employees in their respective state court proceedings.

9   **B.    Case-Specific Fact Discovery.**

10      The basic principles of governing the taking of fact discovery of plaintiffs were set

11  forth in CMO 6 (case-specific fact discovery procedure and plan).  Under CMO 6, later

12  modified by CMO 10, cases docketed in the MDL by February 12, 2002, had case-specific

13  discovery cut-off dates of February 28, 2003.  Cases docketed after February 28, 2003,

14  were to have case-specific discovery completed within 12 months of the docket date.

15  (CMO 6 Part VI.).  As discussed further below, however, due to numerous delays many of

16  these case-specific discovery cut-off dates were extended.

17      **1.    Case-Specific Fact Discovery of Plaintiffs.**

18          **a.    Plaintiff Fact Sheets (PFSs).**  Under CMO 6, plaintiffs in every case

19  transferred to MDL 1407 were ordered to complete a plaintiff fact sheet (PFS).  (CMO 6

20  Part II.A.).  Plaintiffs were required to complete and serve on defendants' liaison counsel

21  fact sheets.  In the event of a plaintiff's failure to serve a completed PFS, defendants'

22  liaison counsel was to send a warning letter to that plaintiff.  If, within 30 days of a

23  warning letter, the plaintiff had still failed to serve a completed PFS, defendants were able

25  FINAL MDL PRETRIAL ORDER FOR CASES INCLUDING
EPHEDRA CLAIMS-8
(MDL 1407)

Williams, Kastner & Gibbs PLLC
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600

1608644.2

SERVED
03/11/05
03:59 PM ET
Banco/MDL 1407

1    to seek appropriate relief from the Court if a meet and confer did not otherwise resolve the

2    issue.  (CMO 6 Part III.A.).

3         Under CMO 10, entered seven months after CMO 6, the Court ordered that no case

4    would be considered for remand if any plaintiff had not completely complied with the

5    discovery requirements of its prior orders, including the completion of a PFS.  (CMO 10 ¶ 1).

6    Failure to provide complete PFS responses tolled the period for completion of fact discovery,

7    which would not run until one year after defendants' receipt of a completed PFS and its

8    accompanying authorizations.  (CMO 10 ¶ 3).

9         Finally, CMO 19 provides for the issuance of a Show Cause Order why the Court

10   should not dismiss a case for failure to prosecute, based on a plaintiff's failure to timely file a

11   PFS or cure a PFS that is not complete in all respects within fifteen days of notice of

12   deficiencies.

13          **b.**     **Other Written Discovery**.  In addition to the PFS, defendants were

14   entitled to propound ten (10) interrogatories and ten (10) requests for production (non-

15   duplicative of any issue raised via PFS) on each plaintiff during the case-specific fact

16   discovery time period.  (CMO 6 Parts III.B.-III.C.).  Plaintiffs were to serve responses to

17   each type of request within 45 days of service of them.  Upon remand, the parties may

18   obtain updated medical records.

19          **c.**     **Depositions.**  Defendants were entitled to conduct ten (10) depositions

20   of fact witnesses ("fact witnesses" include plaintiffs' treating physicians) as part of their

21   case-specific discovery.  (CMO 6 Part III.D.).  Defendants were allowed to take additional

22   depositions upon a showing of good cause.  Upon remand, the parties may move the

23   transferor court to take additional depositions including newly identified fact witnesses

24   regarding plaintiff's current medical condition for good cause and necessity.  In the event

25   FINAL MDL PRETRIAL ORDER FOR CASES INCLUDING
    EPHEDRA CLAIMS-9
    (MDL 1407)

Williams, Kastner & Gibbs PLLC
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600

1608644.2

E-SERVED
03/11/05
03:59 PM ET
Baycol MDL 1431

1   good cause and necessity is shown to update the plaintiff's deposition, shortened time limits

2   may be imposed, depending on the circumstances.

3       **2.**    **Case-Specific Fact Discovery of Defendants.**   Plaintiffs were allowed to

4   propound on defendants no more than ten (10) case-specific interrogatories and ten (10) case-

5   specific document requests. (CMO 6 Part IV.A.-IV.B.). Plaintiffs were also allowed to

6   conduct case-specific depositions of witnesses affiliated with defendants. (CMO 6 Part

7   IV.C.).

8   **B.**   **Expert Discovery.**

9       **1.**    **Generally.** Expert discovery was divided into two main categories: generic

10   experts (testifying regarding issues of general applicability, including general causation)

11   and case-specific experts (testifying on behalf of a specific plaintiff). The Court ordered

12   that only generic expert discovery would be conducted in the MDL, leaving case-specific

13   expert discovery for completion upon remand. Under the process established by the MDL

14   Court, experts were disclosed by certain members of the PSC and by defendants.

15   Individual plaintiffs could then adopt those expert disclosures or disclose their own experts.

16   If a plaintiff adopted the experts disclosed by certain members of the PSC with respect to

17   any issues of widespread applicability, that plaintiff may nevertheless later designate

18   different experts to testify at trial on the same issues provided: (1) the later-designated

19   experts rely upon the same or substantially the same evidence, opinions and/or theories

20   relied upon by the PSC expert(s) adopted by that plaintiff; and (2) such opinions, evidence

21   and/or theories have not been previously determined by the MDL to be scientifically

22   unreliable or otherwise inadmissible. Similarly, a defendant may later may later designate

23   expert(s) different from the generic expert(s) disclosed by defendants to testify at trial on

24   the same issues provided that the later-designated expert(s) rely upon the same or

25   FINAL MDL PRETRIAL ORDER FOR CASES INCLUDING
    EPHEDRA CLAIMS-10
    (MDL 1407)

**Williams, Kastner & Gibbs PLLC**
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600

1608644.2

SERVED
03/11/05
03:59 PM ET
Baycol MDL 1431

1    substantially the same evidence, opinions and/or theories relied upon by defendants'

2    previously disclosed generic expert(s).    Expert-specific challenges, such as to the

3    qualifications or specific causation opinions to the later-designated experts, are preserved.

4    These issues are addressed more specifically in prior MDL Orders, including without limit

5    MDL Order entered September 9, 2002.

6    　　　Numerous general causation experts on behalf of both plaintiffs and defendants

7    testified at their depositions.  Discovery as to these experts was to be completed by March

8    10, 2003, with subsequently transferred cases subject to the provisions of CMO 9 which

9    provides for the adoption of, or designation of experts on issues of general applicability.

10    (Order re:  Expert Discovery Schedule (Mar. 22, 2002) and CMO 9).  Several general

11    causation experts also testified at the *Daubert* hearing.  A copy is attached hereto.

12    　　　**2.**    ***Daubert*.**    On April 28 – May 1, 2003, the Court conducted hearings

13    regarding the admissibility of plaintiffs' expert opinions as to general causation pursuant to

14    Federal Rules of Evidence 702 and 703 and *Daubert v. Merrell Dow Pharms., Inc.* 509

15    U.S. 579 (1993).  The Court entered its findings in its Order Granting in Part and Denying

16    in Part MDL Defendants' Motion to Preclude Plaintiffs' Expert Opinions as to General

17    Causation Pursuant to Fed. R. Evid. 702 and 703 and *Daubert,* on June 18, 2003.

18    　　　**3.**    **Case-Specific Expert Discovery.**    Upon remand of the cases back to the

19    transferor courts, case-specific expert discovery must be conducted.  This will include

20    scheduling of plaintiffs' and defendants' designations of case-specific experts, service of

21    reports by the case-specific experts, depositions of case-specific experts and motion

22    practice relating to those experts.    Case-specific experts consist of experts rendering

23    opinions about the medical condition of specific plaintiffs, life-care planners, economists

24    and other case-specific experts rendering non-medical opinions.    This discovery may

25    FINAL MDL PRETRIAL ORDER FOR CASES INCLUDING
EPHEDRA CLAIMS-11
(MDL 1407)

Williams, Kastner & Gibbs PLLC
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600

1608644.2

SERVED
03/11/05
03:59 PM ET
MDL 1407

1   include independent medical examinations of plaintiffs.  In contrast to the expert discovery

2   in the MDL relating solely to general causation, case-specific experts will opine among

3   other things on specific causation with regard to individual plaintiffs as well as damages.

### IV.  PRODUCT IDENTIFICATION ORDERS

4

5   **A.   Identification of Defendants and Products Ingested (CMO 13).**

6          There were numerous cases pending in MDL 1407 that assert claims of individuals who

7   allege to have ingested one or more PPA-containing products.  Certain cases and/or plaintiffs

8   listed numerous manufacturing defendants but failed to state with specificity which products

9   they allegedly ingested and failed to identify the manufacturers of the products that allegedly

10  caused their injuries.  On May 2, 2003, the Court entered CMO 13 which required each

11  plaintiff in a multi-defendant case to file and serve (within 30 days of entry of the order) an

12  affirmation setting forth the PPA product he/she allegedly ingested and the manufacturer of

13  that product.  Defendants could then seek dismissals under CMO 13 for the claims of any

14  plaintiffs who failed to identify them in the PFS, if any, and in their affirmations.  (CMO 13).

15         Because of the potentially burdensome and unnecessary filings of numerous pages and

16  documents, the parties submitted a proposed CMO 13A to the Court to streamline the

17  dismissal process and minimize the amount of filings to obtain dismissals.  CMO 13A

18  provided the defendants whose products are not identified in a plaintiff's affirmation a

19  mechanism for getting dismissed from the claims made by that plaintiff.  (CMO 13A).

20  **B.   Severance of Multiple-Plaintiff Cases (CMO 15).**

21         There were numerous cases pending in MDL 1407 that joined the unrelated claims of

22  numerous plaintiffs who allege to have taken a PPA-containing product.  The plaintiffs in

23  these multi-plaintiff cases failed to specify which products they allegedly ingested and

24  failed to identify the manufacturers of the products that allegedly caused their injuries.  On

25  FINAL MDL PRETRIAL ORDER FOR CASES INCLUDING
    EPHEDRA CLAIMS-12
    (MDL 1407)

Williams, Kastner & Gibbs PLLC
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600

1608644.2

SERVED
03/11/05
03:59 PM ET
Bencol MDL 1431

May 29, 2003, the Court entered CMO 15, which required each plaintiff in a multi-plaintiff[1] case to file and serve an individual new complaint within 30 days of entry of the order.   Under CMO 15, plaintiffs' individual complaints were to provide specific allegations regarding:  (1) the products allegedly ingested; (2) the dates on which the products were ingested; (3) the injury alleged; and (4) the dates of injury. (CMO 15).

CMO 15A served as an adjunct to CMO 15 to give the parties a mechanism to resolve "non-compliant" served complaints and dismissal of original multi-plaintiff complaints.  CMO 15A allowed defendants to move to dismiss with prejudice the original case as to those plaintiffs who failed to properly file an individual new complaint and as to those plaintiffs who filed an individual new complaint which did not identify a product manufactured by the moving defendant. (CMO 15A).

## V.   PROCEDURES FOR REMAND

### A.   Discovery to be Conducted Prior to Remand.

The Court entered CMO 17C which details the procedures and conditions before a case will be considered "ripe for remand." (CMO 17C).  The Court only considers a case ripe for remand if the discovery permitted by CMOs Nos. 1, 6, 6A, 10, 13, 13A, and 15 ("and any additional orders" entered by the Court) has been completed.  All other generic fact and expert discovery permitted by the Court is considered time barred.  The remand process is initiated by defendants, on a monthly basis, filing a list of cases they believe have become ripe for remand during the preceding month.  A plaintiff may also submit cases believed to be ripe.  The Court then issues an Order to Show Cause why the cases listed on the Order should not be suggested for remand, setting dates for responses and

---

[1] "Multi-plaintiff cases" refer to cases that involve more than one plaintiff who alleges that they ingested a product containing PPA. This term does not refer to plaintiffs with derivative claims.

FINAL MDL PRETRIAL ORDER FOR CASES INCLUDING
EPHEDRA CLAIMS-13
(MDL 1407)

Williams, Kastner & Gibbs PLLC
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600

1608644.2

1    replies. Once the Magistrate Judge has ruled on the objections to remand, the Court issues

2    a Suggestion of Remand Order which is forwarded to the Judicial Panel On Multi-District

3    Litigation. The Suggestion of Remand Order triggers the mediation requirements set forth

4    in CMO 18C. The Court will subsequently designate this Final MDL Pretrial Order,

5    along with any supplements and/or amendments thereto, as the Final Pretrial Order in all

6    cases for which the Panel issues an Order for Remand. (CMO 17C).

7    **B.    Remaining Discovery After Remand.**

8        Case-specific expert discovery has been deferred pending remand. The transferor

9    court has jurisdiction over setting the case-specific expert discovery schedule, any other

10   case-specific discovery and any other pre-trial matters not addressed by this Court. (See

11   supra Part III.C.3.).

12   **C.    MDL Mediation Requirement.**

13       Within seven (7) days of a case being named on the Court's Suggestion of Remand

14   Order (See supra Part V.A.), the parties are to notify the Court whether they intend to

15   mediate the case per CMO 18C in a submission entitled "Election Regarding Alternative

16   Dispute Resolution." If the parties elect to mediate, the mediation is to be scheduled

17   within 30 days and completed within 90 days of the date of the Suggestion of Remand

18   Order. If the parties choose not to mediate, they are required to conduct a meet and confer

19   conference with Special Master Professor Francis McGovern within 21 days of the Court's

20   Preliminary Order. (CMO 18C). This Court appointed Professor McGovern as a Special

21   Master to assist the Court in coordinating case management matters between the MDL

22   litigation and the matters pending in state courts. (Order Jan. 17, 2002). Nothing in CMO

23   18C prevents the parties from agreeing to mediate these, or any additional cases or groups

24   of cases before or after remand.

25   FINAL MDL PRETRIAL ORDER FOR CASES INCLUDING
     EPHEDRA CLAIMS-14
     (MDL 1407)

**Williams, Kastner & Gibbs PLLC**
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600

1608644.2

SERVED
03/11/05
03:59 PM ET
Bencol MDL 1407

1    The parties have agreed upon a number of mediators from the following areas:

2    California, Texas, Louisiana, Alabama, Mississippi, North Carolina, South Carolina,

3    Tennessee, Northeast, Midwest and Northwest.  Nothing in CMO 18C prevents the parties

4    from agreeing to a mediator not on that list or agreeing to mediate any additional cases or

5    groups of cases.  (CMO 18C).

6    ## VI.  SUMMARY OF ACTIVITIES UPON REMAND

7    The following activities remain to be completed upon remand of the cases from the

8    Ephedra MDL listed on Attachment A and include but are not limited to:

9    - Case-specific expert designation and discovery;

10   - Independent medical examinations;

11   - Obtain updated medical records and, upon a showing of good cause and necessity,

12   updating the plaintiff's deposition, and/or deposing additional or newly identified

13   fact witnesses.  In the event good cause and necessity is shown to update the

14   plaintiff's deposition, shortened time limits may be imposed, depending on the

15   circumstances;

16   - Any pending motions that the parties bring to the attention of the transferor court;

17   - Pretrial motion practice, including specific causation motions; and

18   - Final disposition.

19   ## VII.  DOCUMENTS TO BE SENT TO TRANSFEROR COURT

20   The clerk of the transferee court will forward to the transferor court (electronically

21   where feasible) a copy of:  (1) this Pretrial Order and attachments; (2) the docket sheet for

22   the particular case being remanded and all documents identified on that docket sheet; and

23   (3) the docket sheet for MDL 1407.  The docket sheet for each particular case being

24   remanded will be deemed to include and incorporate all matters on the MDL 1407 docket

25   FINAL MDL PRETRIAL ORDER FOR CASES INCLUDING
EPHEDRA CLAIMS-15
(MDL 1407)

Williams, Kastner & Gibbs PLLC
Two Union Square, Suite 4100 (98101-2380)
Mail Address: P.O. Box 21926
Seattle, Washington 98111-3926
(206) 628-6600

1608644.2

SERVED
03/11/05
03:59 PM ET
MDL 1407

1   sheet that refer or pertain to "all cases" or that otherwise refer or pertain to the particular

2   case being remanded.

3       In the event a party believes that the docket sheet for a particular case being

4   remanded is not correct or complete for any reason, a party to that case may, with notice

5   to all other parties to the action, file with the transferor court a Designation Amending the

6   Record.   Upon receiving that Designation, the transferor court will make any needed

7   changes to the docket.  If the docket is revised to include additional documents, the parties

8   should provide those documents to the transferor court.

9                           **VIII.  CONCLUSION**

10      This MDL Pretrial Order does not expand or modify any prior order of the Court.

11  The Plaintiffs' Steering Committee and defendants have agreed that, upon receipt from the

12  Judicial Panel of a final remand order for a particular case, this Pretrial Order is to be

13  provided to the appropriate transferor court without the necessity of a motion by any party

14  to that case.

15      DATED at Seattle, Washington this 13th day of _December_, 2004.

16

17

18                      HON. BARBARA JACOBS ROTHSTEIN
                        UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25  FINAL MDL PRETRIAL ORDER FOR CASES INCLUDING
    EPHEDRA CLAIMS-16
    (MDL 1407)

                                            Williams, Kastner & Gibbs PLLC
                                            Two Union Square, Suite 4100 (98101-2380)
                                            Mail Address: P.O. Box 21926
                                            Seattle, Washington 98111-3926
                                            (206) 628-6600

    1608644.2

# Exhibit M

1

2

3

4                                        The Honorable Barbara J. Rothstein

5

6

7                        UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF WASHINGTON
8                                 AT SEATTLE

9    IN RE: PHENYLPROPANOLAMINE
     (PPA) PRODUCTS LIABILITY
10   LITIGATION,                          MDL NO. 1407

11   _____          CASE MANAGEMENT ORDER
                                          NO. 17C REMAND OF CASES
12   This document relates to all
13   actions.

14

15      **This case management order replaces and supercedes Case**

16   **Management Order ("CMO") Nos. 17, 17A and 17B.**

17   **I.   <u>INTRODUCTION</u>**

18      Proceedings in this MDL 1407 began in earnest with the Order

19   re Initial Conference dated November 1, 2001, requiring plaintiffs

20   and defendants to submit proposed committee rosters, and scheduling

21   the initial conference in this MDL for November 16, 2001.  Since

22   then: (1) generic fact discovery (including written discovery,

23   document production and review, discovery depositions, and requests

24   for admissions) has been completed or substantially completed as to

25   most MDL defendants for which "common benefit" discovery is being

26   undertaken by the Plaintiffs; (2) a procedure for case-specific

     ORDER
     Page - 1 -

fact discovery in each case has been implemented, and discovery pursuant thereto in cases subject to these MDL proceedings has been underway since 2002; (3) Rule 26 disclosures of generic experts have been made, discovery depositions of those experts are complete; and a process has been established to permit the adoption of those experts' opinions in other cases transferred or being transferred to this MDL; (4) trial preservation depositions of several of plaintiffs' and defendants' generic experts are underway or have been taken; (5) and *Daubert* motions have been filed challenging plaintiffs' generic medical experts' opinions as to general causation, briefing, and hearings on said motions have been completed, and the Court has issued its Decision on said motions.

Given the foregoing, the Court is satisfied that this Multi-District Litigation has sufficiently matured, such that, subject to the following procedures and conditions, qualified cases may now be considered by the Court for purposes of issuing a Suggestion of Remand Order to facilitate their remand by the Judicial Panel on Multidistrict Litigation ("JPML") to their transferor courts for further case-specific proceedings and final disposition.

## II. **REMAND CRITERIA- RIPENESS**

Generic fact discovery of defendants was required to be completed within specific time periods, as set forth in CMO No. 1, subject to certain extensions of time.  Discovery as to experts on general causation, and issues of general applicability, was required to be completed by no later than March 10, 2003, with subsequently transferred cases subject to the provisions of CMO No.

9, providing for the adoption of or designation of experts on issues of general applicability. Case-specific fact discovery of plaintiffs in each case subject to these MDL proceedings was required to be completed within specific time periods depending on when each case was docketed in these proceedings, as set forth in CMO Nos. 6 and 6A.

In any case docketed in this MDL, a case will only be considered ripe for remand if the case is in compliance with CMOs Nos. 1, 6, 6A, 10, 13, 13A, 15, and any additional orders entered by this Court. Specifically, all of the following criteria must have been completed and/or fulfilled before a case will be considered ripe for remand:

· Plaintiff's fact sheet must be substantially complete per CMO Nos. 6 and 6A and all identified deficiencies must be corrected per CMO Nos. 6, 6A and 10;

· Plaintiff must have executed all appropriate authorizations, including new HIPAA-compliant authorizations if requested by defendants, as required by CMO Nos. 6 and 6A;

· Any permitted and timely filed discovery propounded by defendant(s) pursuant to CMO Nos. 6, 6A, or 10 must have been completed with no discovery disputes remaining unresolved;

· The deadline, as the same may have been extended by stipulation or Court order, for case-specific fact discovery must have passed and not be subject to any extensions under CMO Nos. 6, 6A or 10;

· If applicable to the case, plaintiff must have complied with the requirements of CMO No. 15 and any additional orders entered by this Court;

· The deadline for adopting or identifying generic experts per CMO No. 9 must have passed;

· Any summary judgment motion arising from the Court's *Daubert* Order entered June 18, 2003, applicable to the case must have been ruled upon.

III.    **REMAND PROCEDURE**

    A.  **Spreadsheet of Cases Ripe for Remand**

    On July 1, 2004, liaison counsel for defendants shall provide to the court and to liaison counsel for plaintiffs a spreadsheet listing all cases deemed ripe for remand as of June 1, 2004, using the criteria set forth in Section II of this order.  This spreadsheet shall include the following information as to each case: case caption, MDL cause number, transferor court, identity of all defendants, and fact discovery deadline.  Defense liaison counsel shall provide this spreadsheet to the court and to liaison counsel for plaintiffs in electronic form.

    Counsel shall provide similar spreadsheets on August 2, 2004, September 1, 2004, October 1, 2004, and thereafter as directed by the court. Each of these subsequent spreadsheets shall identify cases that are considered ripe for remand as of the date of the previous spreadsheet, but shall not include any cases that were included on a previous spreadsheet. (For example, the spreadsheet filed on August 2, 2004, will identify those cases that are considered ripe for remand as of July 1, 2004, but not those cases that were included on the July 1, 2004 spreadsheet.)

    While it shall be the responsibility of defense liaison counsel to provide the spreadsheets, any party to a case may file a notice of ripeness for remand on the monthly dates specified by the court.

    B. **Orders to Show Cause**

        The court will issue orders to show cause why each case

designated as ripe for remand should not be remanded. The orders will set forth the dates by which objections and replies shall be filed, together with noting dates.

**C.  Objections and Responses**

Any party to a case may submit an objection to the remand of a particular case as directed in the court's orders to show cause.  Objections shall be limited to ten (10) double-spaced pages, and responses shall be limited to five (5) pages. Objections and responses must be served on liaison counsel, as well as counsel of record in the case to be remanded. To the extent possible, service upon liaison counsel should be electronic. There shall be no hearings permitted on any given show cause order except by leave of court.

**D.  Eligibility for Remand**

The court has appointed Magistrate Judge Theiler to consider and rule on objections filed pursuant to Section III(c), above. Any case in which a show cause order has issued will be deemed eligible for remand if (a) no written objection is filed by the date specified in the court's order, or (b) upon Magistrate judge Theiler overruling all objections to remand of that case.

A party whose case has been deemed not eligible for remand as a result of a successful objection may resubmit the case on the dates set forth herein, after curing the grounds on which the objection was sustained.

**E.  Suggestion of Remand Order**

Following Magistrate Judge Theiler's determination

ORDER
Page - 5 -

regarding eligibility, the court will issue a Suggestion of Remand Order to be forwarded to the JPML, containing the names of the cases the court views as appropriate for remand. Issuance of a Suggestion of Remand Order triggers the Alternative Dispute Resolution requirements contained in CMO 18B for the cases listed in that order.

**F. Conditional Remand Order from the JPML**

Within seven (7) days of the date that a Conditional Remand Order is filed by the JPML with this transferee court, the parties will submit a joint proposed Final MDL Pretrial Order for the Court's signature. Such order will describe the events that have taken place in MDL 1407 and those items that require further action by the transferor court. A copy of the Final MDL Pretrial Order, along with the case file and materials, will be provided to the transferor court.

**IV.  CONCLUSION**

As the remand process progresses, it may become clear that aspects of this procedure could benefit from modification in order to make improvements or to lessen the burden on any participant in this process. Such participants may include the JPML, the parties, this court, any of the transferor courts, the Special Master Francis McGovern, or Magistrate Judge Theiler. The parties are instructed to confer prior to proposing changes to this procedure.

ORDER
Page - 6 -

1        DATED this 23rd day of June, 2004.

2
                          s/ Barbara Jacobs Rothstein
3                         Barbara Jacobs Rothstein
                          United States District Court Judge
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER
Page - 7 -

# Exhibit N

03/11/05
03:59 PM ET

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: DIET DRUGS (Phentermine/       :
Fenfluramine/Dexfenfluramine)          :        MDL Docket No. 1203
PRODUCTS LIABILITY LITIGATION     :

## PRETRIAL ORDER NO. 272

This Order will govern Deposition Discovery Scheduling for non-expert witnesses in all

cases that are part of this coordinated proceeding.

### SCHEDULE FOR NON-EXPERT WITNESS
### DEPOSITION DISCOVERY

Depositions for non-expert witnesses in cases having a Discovery Initiation Date ("DID")

on or before August 1, 1998, may commence on October 1, 1998, and shall be completed no later

than May 1, 1999. Depositions for non-expert witnesses in cases with DIDs after August 1, 1998,

may commence ninety (90) days after the DID and shall be completed no later than two hundred and

seventy (270) days after the DID. Plaintiffs shall be entitled to conduct twenty (20) simultaneous

tracks of depositions. Defendants, collectively, shall also be entitled to conduct twenty (20)

simultaneous tracks of depositions unless otherwise ordered. No depositions shall take place on

weekends during the period November 25 through November 29, 1998 and December 23, 1998

through January 3, 1999.

### PROCEDURE FOR NON-EXPERT WITNESS
### DEPOSITION DISCOVERY

1. Fifteen (15) days before the beginning of the first monthly period (10/1/98) and forty-five

(45) days before the beginning of each subsequent monthly period allotted for deposition discovery,

the Plaintiffs' Management Committee and Defendants' Liaison Counsel shall exchange lists of the

persons to be deposed during the next deposition period. Each list shall state the name and affiliation

of the witness, an estimate of the numbers of hours or days required for the deposition, and the proposed location of the deposition. Within fourteen (14) days of receipt of the lists, counsel shall meet to confirm a schedule for each deposition period. A copy of this schedule shall be provided to the Court and the Special Discovery Master within five (5) days. By noon each Friday, during the period for depositions, counsel shall confirm the deposition schedule for the following week. The parties shall use their best efforts to cooperate in the scheduling of depositions, and avoid multiple depositions of the same witness. Any dispute shall be brought promptly to the attention of the Court and the Special Discovery Master so as not to interfere with the progress of the non-expert witness deposition discovery schedule.

2.   All depositions shall be noticed at least twenty (20) days before the scheduled date for the deposition by notice served on all members of the Plaintiffs' Management Committee and one attorney for each Defendant separately represented. The notice shall contain an estimate of the amount of time which will be required for the completion of the deposition and may include a request for production of documents not previously produced. In addition, if the notice requests that the deponent produce documents in connection with his deposition, such documents (or complete copies thereof) will be produced at the place designated at least ten (10) days prior to the date scheduled for the commencement of the deposition. Once these documents are provided, the parties are encouraged to negotiate stipulations as to the authenticity of such documents so as to expedite the deposition process.

3.   The deposition guidelines, previously outlined in Pretrial Order No. 21, will apply to all depositions

2

4.  Pursuant to Fed. R. Civ. P. 29, the parties may, by written stipulation, agree to conduct non-expert case specific depositions at such times and places as may be convenient for the parties. A copy of all such written stipulations shall be provided to the Special Discovery Master.  In the absence of a written stipulation, the notice and reporting requirements of paragraph 1 shall apply.

5.  Beginning on November 1, 1998, and every two (2) weeks thereafter, Plaintiffs' Management Committee and Defendants' Liaison Counsel shall each submit a joint report advising the Court and the Special Discovery Master of the total number of depositions completed and summarizing the testimony provided.

6.  On or before February 1, 1999, or within six (6) months of the DID, Plaintiffs' Management Committee and Defendants' Liaison Counsel shall submit to the Court and the Special Discovery Master a joint report which shall contain the following:

        (a)    The total number of remaining depositions;

        (b)    The name and affiliation of each remaining witness;

        (c)    The estimated number of hours or days required to complete the remaining depositions; and

        (d)    A schedule for the completion of these depositions within the time limits prescribed by this Order.

## OTHER DISCOVERY

7.      The parties are encouraged to consider other discovery devices permitted in the

Federal Rules of Civil Procedure such as Requests for Admissions pursuant to Rule 36 to the extent

these devices may eliminate or reduce the need for deposition discovery. The parties, however, may

use such additional discovery devices only with prior authorization of the Special Discovery Master.

BY THE COURT:

BECHTLE, J.

Date: Sept. 24, 1998

4

September 10, 1998

$

Exhibit O

03/11/05
03:59 PM ET
Baycol MDL 163

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: DIET DRUGS (Phentermine/     :
Fenfluramine/Dexfenfluramine)        :     MDL Docket No. 1203
PRODUCTS LIABILITY LITIGATION   :

### PRETRIAL ORDER NO. 417
### (Expert Discovery Schedule)

This Order will govern Expert Discovery in all cases that are part of this coordinated proceeding.

### Disclosure and Discovery

Generic Expert Witness

     1.     On or before March 1, 1999, or six (6) months following the Discovery Initiation Date ("DID") in an individual action, Plaintiffs shall identify each generic expert witness who is reasonably expected to testify for Plaintiffs on issues of general or widespread applicability in this litigation including but not limited to experts who would testify on general causation, i.e., the ability or tendency of the drugs to cause any of the injuries alleged (such witnesses shall be hereafter referred to as "Generic Experts"). In addition, Plaintiffs shall simultaneously provide to Defendants for such Generic Expert, the disclosures required by Rule 26(a)(2) of the Federal Rules of Civil Procedure, except that such disclosures need not encompass testimony, if any, which such Generic Expert is expected to offer on issues relating only to liability or damages as to a particular Plaintiff.

     2.     All discovery depositions of Generic Experts identified pursuant to paragraph 1 above shall be taken no later than May 15, 1999, or eight and one-half months (8½) following the DID in an individual action, whichever is later.

3. On or before May 15, 1999, or eight and one-half (8½) months following the DID in an individual action, the Defendants shall identify each Generic Expert who is reasonably expected to testify in response to the expert testimony disclosed pursuant to paragraph 1 of this Order. In addition, Defendants shall simultaneously provide the expert witness disclosures required by Rule 26(a)(2) of the Federal Rules of Civil Procedure, except that such disclosures need not encompass testimony, if any, which such Generic Expert is expected to offer on issues relating only to liability or damages as to a particular Plaintiff.

4. All discovery depositions of Generic Experts identified pursuant to paragraph 3 above shall be taken no later than August 1, 1999, or eleven (11) months following the DID in an individual action, whichever is later.

5. Within ten (10) days of receiving the notice of deposition of any person identified as a Generic Expert pursuant to paragraphs 1 and 3 above, the opposing party shall provide a written statement of its intentions with regard to conducting a separate deposition of the witness for purposes of preserving the witness' testimony for use at trial. All objections to any such preservation deposition, or with regard to the manner, method, and procedure proposed for conducting such preservation deposition, shall be brought to the attention of the Special Discovery Master and shall be fully and finally resolved before the discovery deposition of the expert witness involved. As a general rule, depositions for purposes of preserving an expert's testimony for use at trial shall take place not less than ten (10) days after the discovery deposition of the witness.

2

## Case Specific Expert Witness Disclosure and Discovery

6.      No later than the close of the non-expert witness deposition period allowed for each individual case pursuant to PTO 292, each Plaintiff shall identify each expert witness who is expected to testify for Plaintiff on any issue other than economic damages and, except to the extent such disclosures have already been made, shall make all expert witness disclosures required by Rule 26(a)(2) of the Federal Rules of Civil Procedure.

7.      Within thirty (30) days after the close of the fact witness deposition period allowed for each individual case, each Defendant shall identify each expert witness who is expected to testify for Defendant on any issue other than economic damages and, except to the extent such disclosures have already been made, shall make all expert witness disclosures required by Rule 26(a)(2) of the Federal Rules of Civil Procedure.

8.      After the time for making the disclosures required by paragraph 7, discovery depositions of expert witnesses identified in response to paragraphs 6 and 7 may begin and shall be completed within sixty (60) days after the date by which Defendants are to disclose expert witnesses pursuant to paragraph 7.  The period of time for taking such depositions may be extended by the Special Discovery Master for good cause shown.

## Supplemental Experts Reports

9.      The Court recognizes that there may be limited circumstances where it will be both necessary and appropriate for a party to identify an expert to supplement prior opinions in response to expert opinions disclosed pursuant to this Order.  The circumstances under which the parties will be permitted to offer such supplemental opinions and the procedures governing

3

disclosure and discovery of such supplemental opinions will be decided by the Special Discovery Master, subject to approval by the Court.

## Case Specific Expert Witnesses on Economic Damages

10.   Expert witnesses who are expected to testify only on economic damages issues in particular cases must be identified by a plaintiff and Fed. R. Civ. P. 26(a)(2) disclosures filed in the transferor court and served on each defendant within thirty (30) days of the filing in the transferor Court of the Order of Remand issued by the Judicial Panel for Multi-District Litigation. Within thirty (30) days thereafter, or at such time as the transferor court directs, each defendant shall identify its experts on economic damages, and file and serve its Rule 26(a)(2) disclosures.

## Medical Examinations of Plaintiffs

11.   At any time after the DID in an individual action, Defendants may schedule medical examinations of Plaintiff(s), pursuant to and in accordance with Federal Rule of Civil Procedure 35, except that a Plaintiff shall not be required to travel an unreasonable distance for medical examinations. Disputes concerning whether Plaintiff is being asked to travel an unreasonable distance for a medical examination shall be presented to the Special Discovery Master. In the event that a medical examination is to take place requiring Plaintiff to travel more than fifty (50) miles, and if the Special Discovery Master overrules any objection to such travel, the party requesting the examination shall tender to Plaintiff's counsel five (5) calendar days in

4

03/11/05
03:59 PM ET
col MDL

advance of such examination a sum equal to the reasonable round-trip travel and lodging expenses

to be incurred by Plaintiff, and one attorney for Plaintiff, to attend the examination.

BY THE COURT:

BECHTLE, J.

$1/6/99$

# Exhibit P

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re:  BAYCOL PRODUCTS LITIGATION          MDL No. 1431
                                            (MJD/JGL)

This Document Relates to All Action          Pretrial Order No. 89

_____

At the July Status Conference, the parties were asked to meet and confer and agree to a plan for the management of discovery, the selection of cases for trial, and pretrial procedures.  An agreement was placed on the record during the Status Conference. In an attempt to place this agreement in a written order, the parties now disagree as to its terms.  As the parties have not agreed to a stipulated plan, the Court establishes the following trial program.

IT IS HEREBY ORDERED:

1. Cases for this program will include all cases filed in the District of Minnesota involving a Minnesota resident plaintiff plus a minimum of 200 additional cases selected at random from all MDL filed cases (collectively, "Program Cases). This Court will determine the total number of cases selected and the random selection methodology and promptly provide the case names to the PSC,  Bayer, and GSK.

2. No later than two days before the September 2003 Status Conference, the PSC shall review all Program Cases and advise this Court, Bayer, and GSK which Program Cases the PSC determines warrant discovery for the purpose of trial ("Eligible Cases"). All other Program Cases will be dismissed unless a plaintiff establishes just cause for the continuation of a case. Each Eligible Case must include a completed Plaintiff Fact Sheet.

The PSC shall provide Special Master Haydock on August 4, 2003, August 22, 2003, and September 8, 2003 a report of its selection process.

3. At the September 2003 Status Conference, the PSC and Bayer shall meet with Special Master Haydock and mutually agree on:

A.  Eligible Cases that may be tried; and

B.  A Discovery Plan for the Eligible Cases, to be completed within a few months, to include: the disclosure of relevant plaintiff medical records, the taking of plaintiff depositions, and the disclosure of medical reports and/or the taking of depositions of treating and prescribing physicians.

If the parties are unable to agree, this Court shall determine the Eligible Cases and/or establish a Discovery Plan.

4. Upon completion of this initial Discovery Plan, the PSC, Bayer, and GSK shall meet with Special Master Haydock and agree on:

A.  Cases to be included in a Pretrial Plan (collectively, "Pretrial Cases"); and

B.  A Pretrial Plan, to be completed within a few months, to include the exchange of expert reports, the taking of expert depositions, the filing of dispositive motions, other relevant procedures, and trial dates. This Pretrial Plan anticipates trial dates to be scheduled during Spring 2003. If the parties are unable to agree, this Court shall issue a Pretrial Plan.

5. The parties will defer pending motions before this Court including:

A.  Defendants' Motion to Transfer Venue;

B.  PSC & Weitz Motions for Protective Orders and Bayer's Cross Motion to Compel Weitz to Present Plaintiffs for Depositions;

C.  Defendants' Motion To Establish Pilot Program for Case-Specific Expert Discovery; and

D.  Plaintiffs' Motion to Stay Disclosure of Generic Experts.

No party, in deferring these motions, waives any grounds in support of objections to these motions.

6. Bayer will not  notice depositions of individual plaintiffs in MDL cases except as provided for in this Order.

7. All obligations of all Plaintiffs to complete Plaintiff Fact Sheets, as set forth in prior Orders of this Court,  remain in full force and effect.

8. This Order does not determine what types of cases shall be tried before this Court, or whether cases will be consolidated for trial, or how such cases will be tried.

Date:

_____
Michael J. Davis
United States District Court

Exhibit Q

1

1          UNITED STATES DISTRICT COURT
              DISTRICT OF MINNESOTA
2               FOURTH DIVISION

3    --------------------------------------------------------
                                          )
4    In re:  Baycol Products    )   File No. MDL 1431
          Litigation             )        (MJD/JGL)
5                                    )
                                          )   Minneapolis, Minnesota
6                                    )   October 9, 2003
                                          )   9:30 a.m.
7    --------------------------------------------------------

8          BEFORE THE HONORABLE MICHAEL J. DAVIS
          UNITED STATES DISTRICT COURT JUDGE
9          (STATUS CONFERENCE)

10
          APPEARANCES
11    For the Plaintiffs:     CHARLES ZIMMERMAN, ESQ.
                              ELIZABETH CABRASER, ESQ.
12                            RONALD GOLDSER, ESQ.
                              VICTORIA MANIATIS, ESQ.
13                            RANDY HOPPER, ESQ.
                              JOHN CLIMACO, ESQ.
14
          For the Defendants:    PHILIP BECK, ESQ.
15                            ADAM HOEFLICH, ESQ.
                              GENE SCHAERR, ESQ.
16                            PETER SIPKINS, ESQ.
                              FRED MAGAZINER, ESQ.
17                            SUSAN WEBER, ESQ.
                              DOUGLAS MARVIN, ESQ.
18                            SCOTT SMITH, ESQ.

19    Court Reporter:  LORI A. CASE, RMR-CRR
                              1005 U.S. Courthouse
20                            300 South Fourth Street
                              Minneapolis, Minnesota 55415
21                            (612) 664-5104

22

23

24
                              Proceedings recorded by mechanical stenography;
25                            transcript produced by computer.
                              LORI A. CASE, RMR-CRR   (612)664-5104

122

1    fly in or meet with them or me every two weeks to deal with

2    these issues or be on the telephone, this is where I am

3    pushing you to.

4         MR. BECK:  It sounds to me, Your Honor, in terms

5    of our planning for the schedule, that spring certainly is

6    the outer limits, we ought to be thinking about going to

7    trial in the spring.

8         THE COURT:  Yes.

9         MR. BECK:  Scheduling so that we have adequate

10   time to do Daubert motions, summary judgment, and go to

11   trial in the spring.  Is that fair?

12        THE COURT:  That's fair.  I want -- you will be

13   sitting down with the Special Masters and with the

14   calendar.  My calendar is open as far as you're concerned.

15   And so I want things blocked off.

16        MR. BECK:  Right.

17        THE COURT:  So I don't want you saying, oh, we've

18   got to rush into something and then two weeks before we

19   have a Daubert hearing everyone says, oh, we can't do it

20   because we're not prepared and then we have to kick

21   everything.  That just messes up my block.

22        Give yourself enough time to be prepared and that

23   you know that your witnesses will be available and that we

24   can go ahead with those hearings and so I can make a

25   ruling.  Give me enough time to make a ruling before trial,

LORI A. CASE, RMR-CRR   (612)664-5104

1   so it's not like the day before, so I can -- so we can have

2   a ruling that hopefully will be used by the other courts

3   throughout the land.

4          MR. BECK:  Thank you, Your Honor.

5          THE COURT:  All right.  Mr. Zimmerman, does that

6   help the PSC?

7          MR. ZIMMERMAN:  It does, Your Honor, very much

8   and we appreciate it very much.  I just have one question

9   and that has to do with, you want us to meet now with the

10   Special Masters on the things you just ordered?

11          THE COURT:  Yes.

12          MR. ZIMMERMAN:  Do you also want to meet with

13   counsel in chambers with regard to matters that are not

14   before the Court?

15          THE COURT:  Yes, I do.  Because we are moving in

16   the right direction now, the way I want us to.  I think I

17   have given you my vision.  Maybe I should make it a

18   little -- I can talk back in chambers on how I want to

19   triage the rest of the cases.  Because we've got thousands

20   of cases.  We've got to get those ready.

21          And my directive is, so you understand where I am

22   coming from, since it's evident that I did not certify a

23   class, these cases have to be ready for -- I have to have

24   them ready when they go back to the trial.  And that means

25   we are going to have to do everything that we are doing for

124

1    trial here before they go back.  Because there's no need

2    for the trial court judge to have to go through all this

3    again.  Everything is going to be screened here.

4         And so what's going to happen -- is that the

5    microphone?  Anything that's going to happen, all the judge

6    is going to do is go to trial or maybe have another

7    settlement conference to try to see whether or not

8    something can be settled.

9         But we are going to have the settlement

10   conferences.  We are going to do everything here.  These

11   cases are going to be squeaky clean before they go back.

12        MR. ZIMMERMAN:  I appreciate that, Your Honor.

13   Thanks for the direction and we will --

14        THE COURT:  So that should alert the PSC and all

15   the lawyers involved with this that they will have to --

16   they might as well start getting ready doing the things

17   that they have to do to gear up for trial.  They are not

18   going to be able to put it off for a year or two years

19   thinking that something is going to happen.

20        They are going to have to start getting their

21   doctors ready, getting whatever medical information ready,

22   their witnesses ready, be ready for settlement conferences,

23   and then being sent back off to their districts where they

24   came from or the states where they came from.

25        I am just not going to not do anything with those

1    cases.  Every case that I have is going to be screened

2    thoroughly before they go back, whether or not they are a

3    state court case or a federal case.  All right?

4         MR. BECK:  What time shall we come back, Your

5    Honor?

6         THE COURT:  It's ten to 1:00.  Flights?

7         MR. BECK:  Mine is mid afternoon, but I can push

8    it back a little.  I need to basically get out by about

9    4:00.

10        THE COURT:  2:30, is that enough time?  You can

11   run downstairs and get something to eat and bring it back

12   up and start talking.

13        MR. ZIMMERMAN:  So you want us to talk before

14   2:30?

15        THE COURT:  Yes.  Oh, most definitely.

16        MR. ZIMMERMAN:  Back in chambers at 2:30?

17        THE COURT:  2:30 back here telling me what's

18   going on and then we'll go back in chambers for about a

19   half hour and go from there.

20        (Lunch recess.)

21        THE COURT:  All right.  Special Master Haydock.

22        SPECIAL MASTER HAYDOCK:  Your Honor, we met with

23   the lawyers and have discussed a calendar working backwards

24   from an end of April, April 27th, trial date.  And without

25   being specific as to specific times, the stages of that --

LORI A. CASE, RMR-CRR   (612)664-5104