UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In Re: Seroquel Products Liability Litigation      Case No. 6:06-md-1769-Orl-22DAB

MDL Docket No. 1769

THIS DOCUMENT RELATES TO ALL CASES

**PLAINTIFFS' MOTION FOR ADOPTION OF A SCHEDULE
AND METHOD OF: DEFENDANTS' DOCUMENT PRODUCTION; DEPOSITIONS OF
DEFENDANTS' WITNESSES; GENERALLY APPLICABLE EXPERT DISCOVERY; AND
MOTIONS OF GENERAL APPLICABILITY IN THE MDL WITH MEMORANDUM OF
LAW IN SUPPORT THEREOF**

Plaintiffs in the above entitled matter, by and through their undersigned counsel and pursuant to Middle District Local Rule 3.01, hereby move for the adoption of the attached Schedule and Method of: Defendants' Document Production; Depositions of Defendants' Witnesses; Generally Applicable Expert Discovery; and Motions of General Applicability in this MDL. In support of this Motion, plaintiffs state as follows:

1. Plaintiffs seek a discovery schedule that will meet this Courts stated goal of the completion of all non cases specific discovery and remand of all plaintiffs cases within two years of the creation of this MDL. See, Pretrial Conference Tr. 5:23-25-6:1-10, Nov. 6, 2006.

2. Plaintiffs seek a discovery schedule that will allow plaintiffs to control the development of needed discovery, rather then the discovery process being dictated to them by defendants..

3. Plaintiffs seek a discovery schedule that recognizes the burdens placed on plaintiffs

1

in proving their cases and allows plaintiffs a reasonable opportunity to meet those burdens.

Wherefore, based on that above as well as the reasons set forth in the accompanying Memorandum, plaintiffs respectfully request that the Court adopt the attached Schedule and Method of: Defendants' Document Production; Depositions of Defendants' Witnesses; Generally Applicable Expert Discovery; and Motions of General applicability in this MDL.

## MEMORANDUM OF LAW

### I.  INTRODUCTION

Plaintiffs submit this memorandum in support of their motion for the adoption of the attached Schedule and Method of: Defendants' Document Production; Depositions of Defendants' Witnesses; Generally Applicable Expert Discovery; and Motions of General applicability in this MDL.

Pursuant to this Courts directive at the last status conference on February 8, 2007, the parties were directed to submit a discovery plan for the remainder of the litigation. Additionally, the parties where to keep in mind the directives of this Court, specifically that all work in this MDL should be completed within two years of it's creation, so that the cases can be remanded back to their local districts for trial. See, Status Conference Tr. 19:19-25, Feb. 8, 2007.

With that goal in mind, plaintiffs in "Good Faith" meet and conferred with counsel for defendants at their offices in Philadelphia, pursuant to Middle District Rule 3.01(g). Significantly, the issues that were discussed by the parties at this Philadelphia meeting were not new issues, as they have been part of ongoing discussions since the beginning of this litigation. During this meeting in Philadelphia a discovery outline was discussed and later a written outline was submitted to

defendants for consideration. During the coarse of these talks the parties also discussed issues related to a deposition protocol for conducting depositions of defendants and a Joint Proposal was submitted for this Court's consideration. Additionally, the parties discussed the coordination of the New Jersey and Delaware State Court litigations, in an effort by plaintiffs to meet defendants' desires for efficiency and non duplication of the document production and depositions processes. At the conclusion of this Philadelphia meeting, defendants' counsel offered to provide a draft of a proposed Joint Discovery Order.

This proposal has now been circulated among the parties and unfortunately it bears very little relation to what was discussed in Philadelphia. This proposal is a significant step backward, therefore, it is unacceptable to the plaintiffs. After a brief telephone call with defendants' counsel it was clear that defendants maintained that their proposal was what they wanted to submit to this Court. As a result no joint proposal can be submitted and thus the need for competing proposals.

Plaintiffs seek a reasonable discovery schedule that will satisfy both the stated goals of this MDL Court and at the same time will allow plaintiffs to direct and develop the discovery they need to pursue their claims. Plaintiffs' main points for their proposed discovery schedule are set forth as follows:

> 1. **On or before April 7, 2007, defendants must complete production of all documents and information contained within the Custodial Files for the "First 80" allegedly relevant custodians.**
>
> 2. **For each Custodial File produced herein defendants shall simultaneously supply a signed and dated Certification of Production attesting to the completeness of the production at the time of collection. For those Custodial Files already produce defendants shall have until April 7, 2007 to provide a Certification of Production.**
>
> 3. It is expected that additional defense witnesses will be identified and

plaintiffs should complete their demands for the production of these witnesses Custodial Files by November 1, 2007. For those Custodial Files defendants shall provide a Certification of Production within 45 days.

4. All depositions of defendants' present or former officers and employees shall be completed by February 1, 2008.

5. Depositions of defendants shall be on 45 days notice and no more than 15 depositions of defendants shall take place in any calendar month. No depositions shall be scheduled in August.

6. Rule 26 Expert disclosure for any plaintiffs' expert of general applicability shall be served by March 1, 2008.

7. Rule 26 Expert disclosure for any defense' expert of general applicability shall be served by March 1, 2008.

8. Depositions of the parties experts shall be completed by June 1, 2008.

9. All motions of general applicability (i.e. That may affect all or substantially all of the case pending in this MDL) shall be filed by July 1, 2008.

10. All opposition papers to any motions of general applicability shall be filed by August 1, 2008

Plaintiffs believe they can complete the discovery they need within the time frames set by the Court. In contrast the discovery proposal offered by defendants is in complete contrast to that goal and simply allows defendants to dictate how the discovery process will occur. Moreover, this proposal ignores the burdens plaintiffs must satisfy to prove their cases and will only serve to drag out the discovery process, several years beyond the time frames set by this MDL Court.

## II.    ARGUMENT

### A.    Custodial Production

When the parties were before this Court for the first time they were directed to work on a plan for the production of discovery. In fact this Court directed that certain basic discovery be produced as soon as possible. That included the IND and NDA along with organizational charts from defendants. See, Pretrial Conference Tr. 19:4-18, Sept. 7, 2006  At a later hearing defendants were told to provide plaintiffs with a list of their corporate organizational structure. Despite this directive the production of defendants organizational charts and their list of custodians continued to linger. Allegedly this was all due to some conflict in how discovery was to be produced. Upon the prompting of the Court the parties negotiated a number of discovery production issues and a Joint Case Management Order No. 2 was submitted, whereby plaintiffs reaffirmed their agreement to accept document discovery production based on Custodial File production. In return for this agreement the plaintiffs received some relief on the Fact Sheet production. Although this Court elected to modify plaintiffs part of the agreement, defendants agreed and were told by this Court to provide a list of custodians for plaintiffs inspection. However, once again the production of the list of custodians was delayed until December 24, 2007. In the meantime, and without plaintiffs input defendants selected the first Custodial Files that they would produce, which were delivered on February 9, 2007.

At every turn defendants have sought to dictate the discovery process and their current proposed discovery plan is just another example of this process carried to an unacceptable extreme. If the Court recalls, when faced with an accelerated discovery schedule, due to a professed desire to

file early dispositive motions, defendants withdrew their request to file these motions.

Any further delay in the delay of the production of the defendants' Custodial Files will significantly impact on plaintiffs ability to get them reviewed, the witnesses deposed and any necessary feedback from plaintiffs experts within the time frames expected by this Court. Significantly, it would appear that defendants have been collecting these Custodial Files for several years and this process should be substantially completed by now. See, Exhibit A attached to the enclosed proposed Order. However, before the parties can discuss a schedule it is important that both sides have an acceptable definition of what makes up the Custodial File. To that end plaintiffs submit the following definition as part of the submitted Order: **The Custodial File are those items set forth herein that were or are maintained by the defendants or by an individual employee or former employee of the defendants relating to Seroquel in any way, Custodial File includes but is not limited to: writings, drawings, graphs, charts, photographs, phone records, and other data compilations from which information can be obtained the Custodial File are those items set forth herein that were or are maintained by the defendants or by an individual employee or former employee of the defendants relating to Seroquel in any way. Custodial File includes but is not limited to: all hard copy and electronic documents from all sources including all hard copy files, desktop and laptop computers as well as personal computer devices such as Personal Digital Assistants (PDA), BLACKBERRY, or other such devices. "Documents" shall have the broadest possible meaning and interpretation ascribed to it, including, translated, if necessary, by the respondent through detection devices into reasonably usable form. Additionally, any "Documents" contained on any computers and all devices utilizing microchips all devices utilizing microchips to facilitate processing, analysis, or storage of data.**

Obviously the collection process has been an ongoing one. (See Exhibit A attached hereto) and it would appear defendants began the collection process for some of these files as early as June 2005.

Thus Plaintiffs are unsatisfied with defendants efforts to control the process by which Custodial Files are produced. Currently plaintiffs are to submit lists of files they request and then plaintiffs will be told if the files are available. If the files are not available plaintiffs will have to wait for the production of these Custodial Files sometime in the future. Moreover, when plaintiffs asked for the status of collection for the "First 80" Custodians Files, plaintiffs received no answer. Therefore, plaintiffs are requesting the complete production of the "First 80" of defendants' Custodial Files. Moreover, plaintiffs proposal provides for the completion of the production of the "First 80" Custodial Files almost six months earlier than defendants' proposal. Plaintiffs see no reason why this reasonable expectation for a production schedule can not occur for the vast majority of Custodial Files. If the Court where to accept defendants' proposal it allows them to once again dictate discovery production, which will not even begin until the end of April 2007 and could easily carry over into March or April of 2008. Therefore, rather then delay this discovery production any further plaintiffs propose the following: **On or before April 7, 2007 (the 8 month anniversary of this Court's initial conference in this litigation), defendants must complete production of all documents and information as described herein that were contained within the Custodial File for the "First 80" allegedly relevant custodians (selected by defendants) whose names appear on the attached Exhibit A. All documents contained within these First 80 custodians' files as of, at the earliest, September 7, 2006 shall be produced. (This date is selected on the basis that the defendants have asserted that a later date would be problematic, because they would have**

to "re-do" much of the collection they have already completed.) However, plaintiffs may obtain additional discovery with respect to the November 16, 2006 Food and Drug Administration letter ("November 16th FDA letter") to defendant Astra Zeneca Pharmaceuticals, LP (AZP LP). Inasmuch as this recent letter advised AZP LP that certain Seroquel sales information was "false or misleading because it minimizes the risk of hyperglycemia and diabetes mellitus and fails to communicate important information regarding neuroleptic malignant syndrome, tardive dyskinesia, and the bolded cataracts precaution." In view of this potentially relevant ongoing conduct by the defendant, on or before May 1, 2007, defendant shall collect and supplement all of the Custodial Files for the "First 80" custodians with information/documents in those custodians files (as defined above) that were extant as of February 16, 2007. Nothing herein shall preclude plaintiffs from seeking additional document discovery from AZP LP with respect to this November 16, 2006 FDA letter.

It is expected that the Plaintiffs will identify additional persons for whom they require Custodial Files. Plaintiffs may demand the production of additional Custodial Files but all demands for Custodial Files shall be completed by November 1, 2007. However, nothing herein shall preclude the plaintiffs from applying to this court for Custodial File production and depositions for custodians whom plaintiffs discover after November 1, 2007. In that event(s), and in the event the Court grants such additional discovery, the Court will set the time-lines for the file production and depositions. Nothing herein shall be construed to preclude defendants from objecting to the production of a Custodial File or Files. Plaintiffs proposal is very simple in that it allows plaintiffs to select the Custodial Files that they want

produced and in the Order that they want them produced. At this point defendants have had six months since our first meeting to complete the collection of their Custodial Files. Therefore, plaintiffs should be able to receive every Custodial File by the end of March 30, 2007.

Additionally, as stated above, it is clear that additional witnesses will be identified, some of whom could be very important to plaintiffs' cases. Plaintiffs should be able to promptly receive these newly identified witnesses' Custodial Files after their identification. However, under defendants' proposal they do not plan to begin production of additional custodians (provided they will agree to produce them at all) until sometime after August 15, 2007, nor will they complete production of these files until February 1, 2008. This clearly means that any potential depositions could not begin to happen until sometime in May or June of 2008. This does not help meet the Court or plaintiffs' goal of completing all discovery before September 2008. Therefore, plaintiffs propose that: **Within 45 days of a Custodial File Demand, defendants shall produce the Custodial File and the Certification of Completeness as described below.**

**As to such documents that can not be produced in a custodial-based production or are more logically produced in a non-custodial based production, those documents shall be produced pursuant to demands that Plaintiffs serve in accordance with this Court's Case Management Order No. 2, Sec. II. H., p. 7, dated January 26, 2007.**

B. Certification of Completeness

Plaintiffs also need to have some assurances that the files defendants are producing, as part of the custodial production, are the complete file of the particular custodian. It is clear that without

some certification process plaintiffs run a very significant risk, should they go forward with a deposition without the complete file. There are to be no second depositions, without good cause shown, and the parties may simply not have the time to do them. Therefore, fighting over whether a second deposition is justified will occupy limited and valuable time better spent on other issues. Further, without some timetable for the production of a Certification of Completeness, there is nothing to prevent the defendants from simply holding back on this requirement and thus placing plaintiffs at risk of running out of time to do the deposition, while they wait for assurances that the file is complete. Moreover, should defendants find additional materials they can always supplement the file. Then plaintiffs can then decide if a second deposition is necessary, if the witness has been deposed. Plaintiffs position is not prejudicial to the defendants and it is something that they are in better position to know, while plaintiffs are left guessing whether a file is complete. Therefore the plaintiffs propose the following: **Each document production hereafter made by the defendants shall be simultaneously accompanied with a signed and dated Certification of Production attesting to the completeness of the production at the time of collection. For any document production made to date, defendants shall complete said production (if it is incomplete) and provide a Certification of Production by April 7, 2007.**

      C.      **Scheduling of Defendants Corporate Witness Depositions**

The conduct of custodial depositions is critical to the development of Plaintiffs claims and as such plaintiffs should be free to conduct them at a time and in the order that they desire. Plaintiffs propose to begin custodial depositions of the first 8 custodians of the currently identified "First 80" custodians beginning in April 2007. Thereafter, plaintiffs will conduct no more than 15

custodial depositions per month, so as to be finished with the "First 80" currently identified Record Custodians by the end of October 2007. The goal is to complete all Custodial File depositions by February 1, 2008. Plaintiffs agree that they will not conduct depositions of defendants during the month of August. This time frame allows plaintiffs to complete the necessary discovery within the time frames laid out by the Court and also allows for some limited flexibility for the parties.

Any efforts to slow down or further limit the depositions of these custodians would ignore the reality of the need to do at least 15 of these custodial depositions every month starting in May 2007, if the parties are to complete the tasks that need to get done. Therefore, plaintiffs propose the following: **All depositions of Defendants' present or former officers and employees shall be completed by February 1, 2008.**

Plaintiffs may commence depositions of defendants in accordance with Sec. II. E. of CMO No. 2. **Depositions of defendants shall not be noticed on less than 45 days notice but may be on longer notice and, where practicable, longer notice is encouraged in order to avoid scheduling issues. However, the depositions shall go forward on the noticed dates, unless the parties agree to alternate dates. Any agreed to alternate dates shall be firm dates as though they were the noticed dates. The parties are expected to cooperate professionally and courteously with regard to scheduling of depositions, and intervention of this Court with regard to scheduling issues should be avoided. Absent good cause shown, plaintiffs are permitted only one deposition of each deponent.**

Plaintiffs may not conduct more than 15 depositions of defendants in a calendar month.

Due to frequent scheduling issues for witnesses during the month of August, no depositions shall be noticed for or conducted during that month, unless the parties consent

D.	General Expert Discovery and Motions of General Applicability

Plaintiffs proposal is that expert reports by so called general experts should be produced as per the following schedule: **Rule 26 expert disclosure for any defense expert of general applicability shall be served by April 1, 2008.**

**All depositions of the parties' general experts shall be completed by June 1, 2008.**

**On no less than 30 days notice, the party adducing an expert may conduct a video taped** *de bene esse* **(trial) deposition of the expert. Opposing counsel may attend and cross examine the witness. This Court's deposition protocol order shall apply in all relevant respects to such depositions. Said trial video depositions of such experts may then be used in any future trial of cases remanded from this Court in lieu of live testimony from that expert. Nothing herein shall be construed to preclude any objections to all or some of the expert's testimony, except that no party may object to use of the deposition at trial upon the grounds that the expert is not appearing live. The trial video deposition may not be noticed for a date that is less than 30 days after the discovery deposition of that expert.**

**All motions of general applicability (i.e. that may affect all or substantially all of the cases pending in this MDL) shall be filed by July 1, 2008.**

**All opposition papers to any motions of general applicability shall be filed by August 1, 2008.**

The Court will set hearing dates for any motions of general applicability after such motions are filed. In the event that motions are filed that may require an evidentiary hearing involving experts, the Court will attempt to consult counsel in order that experts' schedules

12

can be reasonably accommodated.

Nothing herein shall be construed as precluding any party from making any motions in any individual cases, in accordance with the federal rules, local rules and this Court's prior orders.

### E. Defendant's Fact Sheet

If this Court should elect to move forward on some number of plaintiffs cases to pursue case specific discovery in this MDL then it is clear that a Defendant' Fact Sheet will need to be utilized. The information requested is often very helpful in providing insight concerning the relationship of the plaintiffs' prescriber and defendants employees. Therefore, plaintiffs request that: **Nothing herein shall preclude a later order by this Court or any remand court directing that Defendants serve what is now commonly referred to as a Defendants' Fact Sheet in the individual cases. The form of such Fact Sheet, if any, will be determined at a later date but will generally encompass information regarding the detail/sales persons who "detailed" the individual plaintiff's prescribing physician and other treating physicians regarding Seroquel.**

### F. Plaintiffs' Alternative Dispute Resolution (ADR) Proposal

Plaintiffs believe that an Alternative Dispute Resolution (ADR) process can be very helpful in resolving the Seroquel MDL. Therefore, Plaintiffs propose the following: **In view of the large number of claims filed in this Court and the history of settlement of nearly all of the approximately 10,000 similar claims involving the atypical anti-psychotic medication Zyprexa, a drug very similar to Seroquel, in MDL 1596, a mechanism for alternative dispute resolution**