## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**IN RE: Seroquel Products Liability Litigation**

**MDL DOCKET NO. 1769**

_____

**This Document Relates to ALL CASES**

### DEFENDANTS' MEMORANDUM REGARDING
### "DISPOSITIVE MOTIONS" IN RESPONSE TO PARAGRAPH 5
### OF THE ORDER DATED MARCH 7, 2007

## I.    INTRODUCTION

Defendants AstraZeneca LP and AstraZeneca Pharmaceuticals LP ("AstraZeneca")

submit this memorandum in response to paragraph 5 of the March 7, 2007 Order (hereinafter

"Order"), directing AstraZeneca to identify "dispositive motions" in two categories – those

that require expert testimony and those that do not:

> **5.    DISPOSITIVE MOTIONS**:  Prior to the Status Conference on **April 12, 2007**, the Defendants shall provide the identity of specific matters they intend to raise by dispositive motions divided into those categories requiring expert testimony for proper consideration and those not requiring such testimony.  This designation should specify the nature of the expert evidence needed for issues in the former category.  Defendants should propose a logical grouping for anticipated motions and justification for any request to increase the page limit for motions.  Subject to consideration of arguments presented at the Conference, the deadline for non expert based motions is **July 31, 2007** and for other dispositive motions and any *Daubert* motions is **February 29, 2008**.

There is also, however, a third category of dispositive motions:  those that can be

filed only after some significant *case-specific discovery* is completed.  Although AstraZeneca

desires, just as the Court does, to begin dispositive motion practice as soon as possible, and

to avoid a crush of dispositive motions "at the end" of this MDL,[1] AstraZeneca will not be able to file the third group of motions – those that depend on the depositions of plaintiffs and their physicians, and review of collected medical records or other relevant documents – until well after July 31, 2007,[2] since this discovery cannot be completed until later.[3]  Hence, AstraZeneca anticipates the following categories of dispositive motions:

     (1)    By July 31, 2007, AstraZeneca expects to file (a) motions that may be based solely on the complaints, and thus may be resolved without any discovery, and (b) motions raising procedural defects.

     (2)    Within 30 days of the close of generic expert discovery (instead of the Order's proposed date of February 29, 2008),[4] AstraZeneca proposes to file motions

---

[1]    Transcript of March 2, 2007 Status Conference [hereinafter "3/2/07 TR"], at 66:2.

[2]    Indeed, as this Court has recognized, AstraZeneca has the procedural "due process" right not to be compelled to file motions for summary judgment before it has had a full and fair opportunity to conduct the discovery needed to support those motions.  *See* 3/2/07 TR at 65:14-15, 79:17-24; *see also Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("due process" demands that parties have the right "to be heard 'at a meaningful time and in a meaningful manner'") (citation omitted).  Generally Rule 56 summary judgment motions are appropriate only "after adequate time for discovery." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *In re Terazosin Hydrochloride Antitrust Litig.*, 164 F. Supp. 2d 1340, 1347 & n. 8 (S.D. Fla. 2000) (summary judgment motion on "causation" issues  "not ripe" until after "the parties have had a full opportunity to conduct [relevant] discovery").  While the court "may impose reasonable time limitations on summary judgment motions for purposes of judicial economy and fairness," *In re School Asbestos Litig.*, 977 F.2d 764, 795 (3d Cir. 1992), it would be fundamentally unreasonable and unfair to require the filing of dispositive motions in this MDL before AstraZeneca has had the opportunity to conduct discovery sufficient to support its summary judgment motions.

[3]    Moreover, depending on the case, AstraZeneca may need to depose case-specific experts before filing many dispositive motions.

[4]    The Order proposes February 29, 2008 as the deadline for *Daubert* motions and related dispositive motions, but generic expert discovery will not be completed until March 15th.  Order, ¶¶ 4, 5.  AstraZeneca proposes that this filing date be changed to 30 days after close of expert discovery, to allow sufficient time for the preparation and filing of these substantial motions.

that will require the completion of generic expert discovery and/or other discovery applicable to a particular identifiable subset of plaintiffs.

(3)    On dates not yet determined, AstraZeneca expects to file motions that depend upon case-specific discovery. The date for filing such motions will have to be established in conjunction with the schedule ultimately adopted by the Court governing case-specific discovery.

## II.    BACKGROUND

More than 7,000 plaintiffs have cases in this MDL. Most plaintiffs allege that their use of Seroquel caused them to develop "diabetes and diabetes-related illnesses." (Transcript of Dec. 11, 2006 Status Conference, at 32:10-12 (statement of plaintiffs' counsel); *see also In re Seroquel Prods. Liab. Litig.*, 447 F. Supp. 2d 1376, 1378 (JPML 2006) (creating this MDL regarding actions "brought by persons allegedly injured by AstraZeneca's Seroquel, an atypical antipsychotic medication that allegedly can cause diabetes and related disorders").

While there is some significant variance, plaintiffs' claims include: strict liability/failure to warn; strict liability/design defect; negligence; breach of implied warranty of merchantability or fitness for a particular use; breach of express warranty; common law fraud (under theories of fraudulent misrepresentation and/or concealment); and claims under certain state consumer fraud statutes. At bottom, plaintiffs' state-law claims sound primarily in "failure to warn" theories. *See* 3/2/07 Tr. at 49:16 (statement of plaintiffs' counsel).[5]

---

[5]    The PFSs do not alone provide enough information for AstraZeneca to move for summary judgment. Although the PFSs are a useful start to the discovery process, they barely scratch the surface of potentially relevant facts that AstraZeneca needs – and is entitled to obtain – in order to move for summary judgment. *See also*, n. 2, *supra*. For example, plaintiffs in many PFSs do not recall why they were prescribed Seroquel, while others provide general responses such as "mental health" or "psychiatric," which require further case-specific discovery. Similarly, plaintiffs' medical records do not provide sufficient information to support dispositive motions in themselves. AstraZeneca needs to discover additional facts and information about

### III. IDENTIFICATION OF DISPOSITIVE MOTIONS

AstraZeneca details below the motions it currently expects to bring in this MDL, corresponding to the three categories outlined above. AstraZeneca reserves the right, of course, to file other motions if warranted by developments in the litigation.[6]

**A. Proposed Initial Motions Based Exclusively Or Primarily On The Pleadings, Or On Procedural Defaults In This MDL (To Be Filed By July 31, 2007)**

**1. Rule 12(c) Motion For Judgment On The Pleadings Re: "Design Defect" And "Implied Warranty" Claims Asserted By Plaintiffs In States That Do Not Recognize Such Claims In The Prescription Drug Context**

AstraZeneca expects to bring a Rule 12(c) motion for judgment on the pleadings seeking dismissal of the "design defect" and "implied warranty" product-liability claims asserted by plaintiffs from states that do not recognize such claims as a matter of law – such as Texas, Pennsylvania and California, among many others. *See Hackett v. G.D. Searle & Co.*, 246 F. Supp. 2d 591, 595 (W.D. Tex. 2002); *Hahn v. Richter*, 673 A.2d 888, 891 (Pa. 1996); *Brown v. Superior Court*, 44 Cal. 3d 1049, 1058-59 (1988); Rest. (2d) Torts § 402A comment k. Such a motion is consistent with Plaintiff counsel's recent acknowledgment that "there is no design defect claim that's really viable" in the "pharmaceutical prescription drug" context such as this one. 3/2/07 TR at 49:12-15 (statement of Mr. Pennock).

---

plaintiffs – from their depositions, depositions of their prescribing and treating physicians and experts, and in some instances other relevant documentary discovery (and perhaps targeted contention interrogatories) – before AstraZeneca can prepare the majority of its motions.

[6] AstraZeneca also reserves the right to file in the transferor courts (or other courts that might receive these cases upon remand) any and all motions that it may have – including motions based on discovery that occurs after remand or in the event this Court opts not to entertain certain motions or categories of motions.

**2.** **Motions Re: Federal Preemption – Including (A) Initial Rule 12(c) Motion For Judgment On Pleadings With Respect To Certain Plaintiffs; And (B) Subsequent Rule 56 Summary Judgment Motion Addressing Additional Preemption Contentions After Further Discovery**

As the Court is aware, one of AstraZeneca's core defenses in this MDL is federal preemption. Many plaintiffs' claims are barred by implied preemption principles, *see, e.g.*, *Geier v. American Honda Motor Co., Inc.*, 529 U.S. 861, 873 (2000), because they conflict with authoritative actions of the U.S. Food & Drug Administration ("FDA") with respect to the proper labeling and marketing of Seroquel, or otherwise would "stand as an obstacle" to accomplishment of the full purposes of the FDA in the exercise of its congressionally delegated authority. *In re Bextra & Celebrex Mktg., Sales Pracs. & Prod. Liab. Litig.*, 2006 WL 2374742, at *2, *6-*10 (N.D. Cal. Aug. 16, 2006); *Colacicco v. Apotex*, 432 F. Supp. 2d 514, 536 (E.D. Pa. 2006); 71 Fed. Reg. 3922, 3934-36 (F.D.A., Jan. 24, 2006); *Ehlis v. Shire Richwood, Inc.*, 233 F. Supp. 2d 1189, 1198 (D.N.D. 2002).

AstraZeneca has several preemption contentions that should serve to bar plaintiffs' claims in whole or significant part. By July 31, 2007, AstraZeneca can and intends to file a Rule 12(c) motion for judgment on the pleadings based on preemption targeting the claims of those plaintiffs who allege (1) that they took Seroquel for the first time only after the Seroquel label included the FDA's federally approved and mandated warnings regarding diabetes-related risk information; and (2) that they contracted "diabetes" as their alleged injury. Initial review of the PFSs received to date suggests that approximately 18% of plaintiffs in this MDL first used Seroquel *after* the FDA–mandated label warned of a diabetes

risk.[7]  As courts across the country have held in analogous circumstances, implied conflict preemption bars state-law claims premised on inadequate-warning theories asserted against pharmaceutical companies that gave FDA-approved warnings.  *See, e.g., In re Bextra & Celebrex*, 2006 WL 2374742, at *6-*10.[8]

Presentation of AstraZeneca's remaining preemption arguments will await completion of further discovery, such as certain regulatory discovery, science-related discovery, and discovery regarding plaintiffs' use of Seroquel.[9]  AstraZeneca proposes to file such a preemption motion in the second round of motion practice (*see* Part III.B., *infra*).

### 3.  Motions Based On Procedural Defaults And Failures To Abide By This Court's Orders In The MDL

Finally, the initial round of motions might also include a dispositive *procedural* motion that will winnow out cases that plaintiffs do not seriously intend to pursue, including,

---

[7]  To cite but one example, the complaint in *Jackson et al. v. AstraZeneca*, originally filed in the Southern District of Texas but transferred to this MDL, includes claims asserted by twelve (12) misjoined plaintiffs who allege they took Seroquel after the FDA-mandated labeling included diabetes-risk information and claim to have suffered "diabetes" as a result.  *See* Complaint, ¶¶ 66, 74, 77, 79, 81-82, 87, 90-91, 93, 96, 142.  While acknowledging the FDA-mandated warning regarding diabetes risks, their Complaint makes a frontal state-law attack on the adequacy of the FDA warning with respect to "diabetes and/or other diabetes-related injuries."  *Id.*, ¶ 142.

[8]  *See also Colacicco*, 432 F. Supp. 2d at 536; *Ehlis*, 233 F. Supp. 2d at 1198; *Needleman v. Pfizer, Inc.*, 2004 WL 1773697, at *3-5 (N.D. Tex. Aug. 6, 2004); *Dusek v. Pfizer*, 2004 WL 2191804, at *10 (S.D. Tex. Feb. 20, 2004); *Abramowitz v. Cephalon*, 2006 WL 560639, at *3 (N.J. Super. Ct. Mar. 3, 2006) ("any state claim that would challenge an FDA approved warning is preempted").

[9]  For instance, AstraZeneca anticipates that further discovery may reveal that any contentions of plaintiffs and their experts that Seroquel should not have been marketed at all, or should have included additional warnings beyond those required by FDA at any given time, conflict with FDA regulatory oversight and the then-current state of scientific knowledge.  These and other preemption contentions are expected to become ripe for presentation after further discovery.

for instance, plaintiffs who fail adequately to comply with the PFS requirements, fail to provide medical records authorizations, or otherwise fail to comply with the Court's procedural dictates in this MDL.  To the extent ripe with respect to particular plaintiffs, AstraZeneca will bring a motion premised on those plaintiffs' procedural defaults on or before July 31, 2007.  (Of course, AstraZeneca reserves the right to file such procedural default motions as to those plaintiffs for whom the issue ripens later.)  There also may be motion practice seeking dismissal of certain defendants that have been improperly sued.

> **B.**     **Proposed Motions That Require Completion Of Generic Expert Discovery Or Discovery Applicable To An Identifiable Subset Of Plaintiffs (To Be Filed After Completion of Expert Discovery)**
>
> > **1.**     **Rule 56 Motion For Total Or Partial Summary Judgment Re: General Causation/*Daubert*-Related Issues Regarding Certain Disease End-Points**

Among the several aspects of plaintiffs' burden to prove causation in pharmaceutical litigation includes proof of "general causation" – *i.e.*, that the drug at issue is capable of causing the particular harm alleged to have been suffered by the plaintiff.  *See, e.g., In re Norplant Contraceptive Prods. Liab. Litig.*, 215 F. Supp. 2d 795, 830 (E.D. Tex. 2002); *cf. McClain v. Metabolife Intern., Inc.*, 401 F.3d 1233, 1237, 1255 (11th Cir. 2005) (requiring expert testimony on general causation and reversing jury verdict because neither expert "utilized a reliable methodology to prove that use of Metabolife 356 actually causes strokes or heart attacks, either generally or in these Plaintiffs").  To satisfy that burden, plaintiffs must proffer expert opinions sufficient to withstand *Daubert* scrutiny, establishing that Seroquel can cause plaintiffs' alleged injuries at issue.  *See In re Norplant*, 215 F. Supp. 2d at

830-33 (granting partial summary judgment as to over 950 "conditions" where plaintiffs failed to provide expert testimony that the drug was known to cause those conditions).[10]

Presently, AstraZeneca envisions filing a single but very substantial dispositive motion with respect to those particular disease end-points and conditions for which the "general causation" evidence does not suffice to go to a jury.  This motion, by its very nature, depends on the related *Daubert* motions AstraZeneca expects to file with respect to Plaintiffs' yet-to-be-identified experts.  The Order proposes February 29, 2008 as the deadline for *Daubert* motions and dispositive motions requiring expert testimony, but generic expert discovery is not set to close until March 15th.  AstraZeneca proposes to file this "general causation" motion (as well as its *Daubert* motions and other dispositive motions related to generic expert testimony) within 30 days of the close of generic expert discovery. This motion will seek total or partial summary judgment to the extent plaintiffs fail to provide reliable expert testimony, sufficient to survive *Daubert* challenge, with respect to particular diseases and conditions.

### 2.    Rule 56 Motion For Total Or Partial Summary Judgment Re: Preemption Contentions Arising From Discovery

In addition to the targeted motion discussed above (pp. 5-6, *supra*), AstraZeneca anticipates advancing its remaining preemption contentions, including ones that arise from or may relate to additional discovery, during this second phase of motion practice.

---

[10]    AstraZeneca expects to have several dispositive lines of argument related to plaintiffs' inability to satisfy the various aspects of their burden to prove causation under the governing law (some of which are discussed elsewhere above).  This motion would concern the "general causation" subset of AstraZeneca's several causation contentions.

### 3.    Rule 56 Motion For Total Or Partial Summary Judgment Re: Plaintiffs That Participated In The "Zyprexa Settlement"

AstraZeneca's initial review of the PFSs received to date suggests that it is likely entitled to judgment with respect to a significant number of plaintiffs in this MDL who participated in the Zyprexa settlement. The PFSs suggest this might be as many of 10% of the plaintiffs in this MDL. These individuals sued Eli Lilly for the same injuries they allege here, and settled their claims after alleging that their use of Zyprexa (not Seroquel) was *the* proximate cause of their injuries such as diabetes (while even identifying Seroquel as an "alternative" to Zyprexa). AstraZeneca believes that it may be entitled to obtain summary judgment as to these plaintiffs based on doctrines such as judicial estoppel, release, accord and satisfaction, and set off.[11]

AstraZeneca's motion in this regard will depend on receipt and analysis of documents regarding these plaintiffs' involvement in the Zyprexa litigation. The PFSs alone are insufficient; AstraZeneca needs to find out more about (i) the particular testimony and

---

[11]    The doctrine of "judicial estoppel" bars "a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996) (judicial estoppel bars plaintiffs from taking inconsistent position in subsequent litigation than one taken in first case against another defendant which resulted in settlement); *accord*, *Commonwealth Ins. Co. v. Titan Tire Corp.*, 398 F.3d 879, 887 (7th Cir. 2004). Further, settlement payment received as "full satisfaction for a specified item of damage" – such as the onset of diabetes here – operates to terminate claims against another defendant for the same injury. Rest. (2d) Torts § 885, comment e. This result would similarly apply where the executed release contains language broad enough to release such claims. Finally, the defendant in the second proceeding is at a minimum entitled to an offset against any future award. *See, e.g., Blasland, Bouck & Lee v. City of N. Miami*, 283 F.3d 1286, 1296 (11th Cir. 2002); *Pfeiffer v. G.E.*, 7 A.D.3d 598, 599 (N.Y. App. Div. 2004); *Brown v. Kneibert Clinic*, 871 S.W.2d 2 (Mo. App. E.D. 1993); *Augustine v. Langlais*, 121 R.I. 802, 804 (R.I. 1979).

positions taken by these plaintiffs and their physicians and experts in the Zyprexa litigation

about what caused plaintiffs' alleged injuries (which is needed to support the judicial

estoppel defense); (ii) the releases and agreements signed by plaintiffs (needed for the release

defense, as well as accord and satisfaction); and also (iii) official court records from the

Zyprexa litigation identifying the plaintiffs who participated in the settlement (which may or

may not correspond to the PFS responses plaintiffs have submitted in this litigation).  It will

not be possible for AstraZeneca to file this motion by July 31, 2007, but once the Zyprexa

litigation information has been obtained and analyzed, AstraZeneca will promptly prepare

such a motion (or motions).

### C.       Proposed Motions That Require Case-Specific Discovery Before They Are Ripe (To Be Filed By Date Later To Be Determined)

AstraZeneca intends to file a number of dispositive motions that depend in whole or

in part on case-specific discovery.  These motions can be filed with respect to a subgroup of

cases as soon as they are ripe.  The Court's rulings on these motions in exemplar groups of

cases will provide guidance with respect to key issues in hundreds or perhaps thousands of

similar cases, and thus streamline the discovery process (and, hopefully, the entire MDL).

### 1.       Rule 56 Motion For Total Or Partial Summary Judgment Re: Learned Intermediary Doctrine/No Causation (Including, *e.g.*, Causation Issues Related To The Continued Prescription And Use Of Seroquel)

As the Court is well aware, one of the most important case-dispositive defenses in

pharmaceutical drug litigation stems from the learned intermediary doctrine.  "The

overwhelming majority of jurisdictions" in the United States "apply the learned intermediary

doctrine to define a pharmaceutical company's duty to warn of risks associated with the use

of a prescription drug," such as Seroquel. *In re Norplant Contraceptive Prods. Liab. Litig.*,

215 F. Supp. 2d 795, 806-09 (E.D. Tex. 2002); *accord*, *Madsen v. America Home Prods.*

*Corp.*, __ F. Supp. 2d __, 2007 WL 738627, at *5-*7 (E.D. Mo. March 7, 2007).  Where, as

here, the learned intermediary doctrine applies, plaintiffs' claims fail as a matter of law

unless plaintiffs can prove that (1) the product warnings given by the drug manufacturer to

healthcare providers were "inadequate"; *and* (2) that the inadequate warnings were what

"proximately caused" the plaintiffs' alleged injuries. *In re Norplant*, 215 F. Supp. 2d at 803-

04; *see also Madsen*, 2007 WL 738627, at *7.[12]  If either requirement cannot be established

by plaintiff, the defendant pharmaceutical company is entitled to summary judgment. *Id.*

AstraZeneca expects to advance dispositive arguments with respect to both of these

elements under the learned intermediary doctrine – arguing that the warnings it provided

were adequate at the time they were given, and that, in any event, plaintiffs cannot satisfy the

proximate causation requirement.  Both of these issues, however, depend on additional

discovery.  Whether the warnings AstraZeneca provided were adequate at the time implicates

expert scientific evidence and testimony, which will not be identified and tested in this MDL

until at least early 2008.  Further, AstraZeneca's independently dispositive arguments based

on plaintiffs' inability to satisfy the "proximate causation" requirement necessarily turn on

the results of case-specific deposition testimony from the plaintiffs' prescribing physicians.

Whenever the testimony of a plaintiff's physician reveals that he or she would have

---

[12]     The learned intermediary doctrine applies to all claims premised on any failure-to-warn or inadequate-disclosure theories – including not only product liability claims sounding in strict liability or negligence and common law fraud claims, but state statutory consumer fraud claims as well. *See*, *e.g.*, *In re Norplant*, 955 F. Supp. at 709.

prescribed Seroquel to plaintiff even if the physician had been provided the warnings that the plaintiff claims should have been provided, then the "causal link" between plaintiff's injury and defendant's alleged failure to warn is "broken." *Madsen*, 2007 WL 738627, at *7, *9; *accord*, *Stafford v. Wyeth*, 411 F. Supp. 2d 1318, 1320-21 (W.D. Okla. 2006).

Ultimately, these learned intermediary/no causation issues are at the core of the cases pending in this MDL, but AstraZeneca will be able to file such a motion (or motions) only after taking the depositions of plaintiffs' prescribing physicians.

### 2. Rule 56 Motion For Summary Judgment Re: The "Express Warranty" Claims Asserted By MDL Plaintiffs

Many MDL plaintiffs assert "express warranty" claims here.  Although such claims are often initially asserted by plaintiffs in pharmaceutical litigation, they are typically abandoned prior to trial or otherwise dismissed by the MDL transferee court or by transferor courts on remand.[13]  These claims typically fail on dispositive motion because, ultimately, plaintiffs (1) fail to identify "affirmations of fact" about the drug actually made by defendants and seen by plaintiffs that could constitute an actionable express warranty, *see, e.g.*, *In re Meridia Prods. Liab. Litig.*, 328 F. Supp. 2d 791, 818 (N.D. Ohio 2004); *Basko v. Sterling Drug, Inc.*, 416 F.2d 417, 428 (2d Cir. 1969); (2) fail to establish they personally "relied" on actual identified factual assertions such that the alleged affirmation became a "basis of the bargain" for the particular plaintiffs, *see, e.g.*, *Hill v. Wyeth*, 2007 WL 674251,

---

[13]     *See, e.g.*, In re *Propulsid Prods. Liab. Litig.*, 2003 WL 1090236, at *1 (E.D. La. Mar. 11, 2003) (one of several orders by the MDL court dismissing plaintiffs' express warranty claims against pharmaceutical manufacturer); *Alexander v. Smith & Nephew, P.L.C.*, 98 F. Supp. 2d 1310 (N.D. Okla. 2000) (dismissing plaintiff's express warranty claim against manufacturer upon remand from MDL court).

*3 (E.D. Mo. Feb. 28, 2007); *Yurcic v. Purdue Pharma, L.P.*, 343 F. Supp. 2d 386 (M.D. Pa. 2004); and/or (3) do not prove defendant in fact "breached" the alleged express warranty. *In re Meridia Prods. Liab. Litig.*, 328 F. Supp. 2d at 818.

Any dispositive motion attacking the express warranty claims in this MDL depends upon case-specific discovery from plaintiffs – including, most notably, depositions of plaintiffs (and perhaps also their prescribing physicians). After case-specific discovery, AstraZeneca will be able to identify groups of plaintiffs who are subject to these various dispositive contentions, and then to file a dispositive motion attacking such legally meritless claims. The date for filing this motion, like others dependent on case-specific discovery, will have to be determined at some later point in these proceedings, after significant case-specific discovery is underway.

Alternatively, if the Court wishes to expedite consideration of these issues, it should consider adopting the approach taken in other MDLs and enter a "show cause order" that requires dismissal with prejudice of all MDL plaintiffs' express warranty claims except where plaintiffs responded to the order by identifying with particularity the "specific express warranty" allegedly made by defendant, how plaintiff actually "relied" on it, and "the manner in which it was allegedly breached." *Blinn v. Smith & Nephew Richards, Inc.*, 55 F. Supp. 2d 1353, 1360 (M.D. Fla. 1999) (dismissing express warranty claims for noncompliance with PTO 651 issued in MDL).

### 3. Rule 56 Motion For Total Or Partial Summary Judgment Re: Common Law "Fraud" Claims Asserted By MDL Plaintiffs

After general expert discovery and case-specific discovery from individual plaintiffs, AstraZeneca also anticipates that it will be able to bring a summary judgment motion that

eliminates the common law "fraud" claims asserted by many MDL plaintiffs.  Apart from the fact that none of those claims are pled with the particularity required by Federal Rule of Civil Procedure 9(b), *see, e.g., Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370-71, 1381-82 (11th Cir. 1997), AstraZeneca expects that, as in other pharmaceutical litigation and MDLs, there will be fatal legal and factual defects in these claims exposed in discovery – including the absence of any fraudulent misrepresentation seen or heard by plaintiffs; no actual or detrimental reliance; and/or an inability to prove proximate causation. *See, e.g., Miller v. Pfizer Inc.*, 196 F. Supp. 2d 1095, 1119-1123 (D. Kan. 2002).  As with other motions dependent on case-specific discovery, the date for filing this motion should be the topic of later status conferences and set by the Court at some point in the future. Alternatively, if it wishes to expedite consideration of these claims, the Court might consider entering a "show cause order" similar to the one described above with respect to express warranty claims.

### 4.     Rule 56 Motion For Partial Summary Judgment Re: Plaintiffs' "Off-Label Promotion" Theories

After expert discovery and case-specific discovery has been conducted, AstraZeneca expects that it will be able to bring a motion for partial summary judgment regarding the off-label promotion theories alleged by an as-yet-unidentified subset of plaintiffs in this MDL. This motion will likely address several fundamental legal impediments to plaintiffs' theories (*e.g.*, the theories are not cognizable as "negligence per se" claims); as well as dispositive arguments based on plaintiffs' inability to satisfy the applicable "proximate cause" requirement on these claims, including the absence of a legally cognizable *causal link* between any alleged off-label promotion and either the plaintiffs' use of Seroquel and/or

plaintiffs' alleged injuries. *See, e.g., Talley v. Danek Medical Inc.*, 179 F.3d 154, 159 (4th Cir. 1999); *see also Miller v. Pfizer Inc.*, 196 F. Supp. 2d 1095, 1119-1123 (D. Kan. 2002). This motion, however, depends on the results of discovery that has yet to be conducted. Its filing date should be set by the Court at some later date, once expert and case-specific discovery is substantially underway.

### 5.     Rule 56 Motion For Partial Summary Judgment Re: Statutes Of Limitations And/Or Plaintiffs' Legal Incompetency

Upon case-specific discovery (and after generic "expert" discovery), AstraZeneca may also raise statute-of-limitations arguments in a dispositive motion with respect to at least a subgroup of plaintiffs in this MDL. Judgment as a matter of law is appropriate in the cases in which plaintiffs have no defense to the bar of statutes of limitation.

In addition, while certain plaintiffs may claim that the applicable limitations periods are tolled by mental incapacity, the law in some states bars plaintiffs from asserting tolling where (as here) their complaints fail to allege sufficient facts to show the existence of a legal disability. *See, e.g., Lowe v. Surpas Resource Corp.*, 253 F. Supp. 2d 1209, 1249-50 (D. Kan. 2003); *Hertel v. Sullivan*, 633 N.E.2d 36, 42 (Ill. Ct. App. 1994). In other jurisdictions, summary judgment may be appropriate based on plaintiffs' failure to raise a material issue of fact with respect to their legal incapacity.[14] Thus, after expert discovery and case-specific

---

[14]     *See, e.g., Smith v. Topeff*, 2003 WL 22234900, at *4 (Minn. Ct. App. Sep. 30, 2003) (summary judgment granted despite claim that limitations period was tolled by plaintiff's "mental illness," which "does not by itself presume incompetency"); *Brumfield v. Lowe*, 744 So. 2d 383, 387-388 (Miss. Ct. App. 1999) (summary judgment granted on limitations ground where schizophrenic plaintiff still "capable of managing his own affairs"); *Merman v. Otis Elevator Co.*, 855 F. Supp. 361 (S.D. Fla. 1994) (same); *Bridgeman v. Nebraska State Pen.*, 849 F.2d 1076 (8th Cir. 1988)

discovery has been conducted, AstraZeneca expects that it will be able to bring a motion for summary judgment on this basis for certain plaintiffs.

### 6.     Rule 56 Summary Judgment Motion Re: Lack Of Product Usage

As in other MDLs, AstraZeneca expects that, after case-specific discovery, it will be able to bring a dispositive motion for lack of evidence of product usage with respect to a subset of plaintiffs in this MDL.  Upon careful inspection of all available medical records, pharmacy records, sampling records, and other documentary evidence, as well as depositions of plaintiffs and their prescribing physicians, AstraZeneca expects that it will be entitled to dismissal of all claims brought by or on behalf of persons who cannot produce evidence that they in fact took Seroquel. *See, e.g.*, *Lindstrom v. AC Prods. Liab. Trust*, 264 F. Supp. 2d 583, 591-92 (N.D. Ohio 2003); *Brown v. Philip Morris Inc.*, 228 F. Supp. 2d 506, 513-14 (D.N.J. 2002).

### 7.     Additional Dispositive Motions, Procedural Or Substantive, Arising From Subsequent Proceedings In This MDL

Although AstraZeneca has tried herein to identify the dispositive motions it may wish to file in this MDL, further case developments and discovery may reveal *additional* bases for dispositive motions on substantive or procedural grounds.  AstraZeneca respectfully reserves the right to raise such potentially dispositive issues by motion at the appropriate time.  This would include motions based on any failure to comply with procedural requirements that may subsequently be imposed on plaintiffs by the Court – such as, for instance, a requirement that plaintiffs provide in this MDL the production of case-specific (*Lone Pine*)

---

(summary judgment granted because psychological evaluations did not reveal extreme derangement sufficient to toll statute of limitations).

expert reports on specific causation, which other MDL courts have repeatedly imposed. AstraZeneca will promptly advise the Court of such additional motions and grounds as they may arise.

**D.      AstraZeneca's Position And Requests Regarding Page Limits And Reply Briefs On Its Proposed Dispositive Motions**

AstraZeneca is unable to make fully informed judgments at this time about whether it might need and request additional pages beyond those provided for under this Court's Local Rules 3.01(a)-(c) – *i.e.*, opening briefs (25 pages); opposition briefs (20 pages); reply briefs (only upon leave of court). AstraZeneca expects that many of the motions identified above might be briefed within these page limits. Still, there are a few complex and critically important motions identified above for which AstraZeneca can already anticipate that additional legal briefing will be both appropriate and necessary. These include: (1) the preemption motions discussed above; (2) the Rule 56 motion regarding general causation and related to *Daubert* issues; and (3) the Rule 56 motion based on the learned intermediary doctrine/no causation. Given their content and complexity, it is sufficiently clear at this time that additional pages will be needed. For these motions, AstraZeneca proposes that the parties should be allowed twice the ordinary page limits, so that it is permitted to file opening briefs not to exceed 50 pages, with plaintiffs' oppositions not to exceed 40 pages. In addition, AstraZeneca proposes that it should be allowed leave to file a reply brief not to exceed 20 pages. Such additional pages, and reply briefs, will serve to ensure that the Court has the benefit of fuller and more comprehensive argument on these critically important issues before it considers the merits of these potentially dispositive motions. Given that the Court's rulings will surely be the subject of close appellate scrutiny, and will serve to guide

any remand courts that might later receive these cases, there exists good cause for

AstraZeneca's request.  With respect to the other dispositive motions identified in this filing,

AstraZeneca reserves the right to request leave to file an opening brief in excess of 25 pages

as well as reply briefs, but does not make such a request at this time.

Finally, AstraZeneca requests that oral argument be permitted on all of its potentially

dispositive motions.  Argument is appropriate and necessary – so that the parties have a full

and fair opportunity to present their arguments and counterarguments to the Court, and can

respond to any concerns or questions the Court may have.

Respectfully submitted on this 10th day of April, 2007.


/s/ Fred T. Magaziner
Fred T. Magaziner
Shane T. Prince
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA  19104
Telephone: (215) 994-4000
Facsimile: (215) 994-2222
fred.magaziner@dechert.com

*Counsel for AstraZeneca Pharmaceuticals LP*
*and AstraZeneca LP*

## CERTIFICATE OF SERVICE

I hereby certify that, on the 10th of April, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the non-CM/ECF participants listed on the attached Service List.


/s/ Shane T. Prince

## SERVICE LIST
(As of December 15, 2006)

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No. 1769**

| | |
|---|---|
| Paul J. Pennock, Esq.<br>Michael E. Pederson, Esq.<br>Weitz & Luxenberg, P.C.<br>180 Maiden Lane - 17th Floor<br>New York, NY 10038<br>Telephone: (212) 558-5500<br>Ppennock@weitzlux.com<br>MPederson@weitzlux.com | Camp Bailey, Esq.<br>Michael W. Perrin, Esq.<br>Fletcher Trammell, Esq.<br>Bailey Perrin Bailey LLP<br>The Lyric Centre<br>440 Louisiana, Suite 2100<br>Houston, TX 77002<br>Telephone: (713) 425-7240<br>cbailey@bpblaw.com<br>mperrin@bpblaw.com |
| Larry Roth, Esq.<br>Law Offices of Larry M. Roth, P.A.<br>Post Office Box 547637<br>Orlando, FL 32854-7637<br>Telephone: (407) 872-2239<br>LROTH@roth-law.com | Tommy Fibich, Esq.<br>Fibich, Hampton & Leebron, L.L.P.<br>1401 McKinney, Suite 1800<br>Five Houston Center<br>Houston, TX 77010<br>Telephone: (713) 751-0025<br>tfibich@fhl-law.com |
| Matthew F. Pawa, Esq.<br>Law Offices of Matthew F. Pawa, P.C.<br>1280 Centre St., Suite 230<br>Newton Centre, MA 02459<br>Telephone: (617) 641-9550<br>Mp@pawalaw.com | John Driscoll, Esq.<br>Brown & Crouppen, PC<br>720 Olive St.<br>St. Louis, MO 63101<br>Telephone: (314) 421-0216<br>Jdriscoll@brownandcrouppen.com<br>asmith@brownandcrouppen.com<br>blape@brownandcrouppen.com |
| Keith M. Jensen, Esq.<br>Jensen, Belew & Gonzalez, PLLC<br>1024 North Main<br>Fort Worth, TX 76106<br>Telephone: (817) 334-0762<br>kj@kjensenlaw.com | Scott Allen, Esq.<br>Cruse, Scott, Henderson & Allen, L.L.P.<br>2777 Allen Parkway, 7th Floor<br>Houston, Texas 77019<br>Telephone: (713) 650-6600<br>sallen@crusescott.com |

| | |
|---|---|
| Matthew E. Lundy, Esq.<br>Lundy & Davis, LLP<br>333 North Sam Houston Parkway East<br>Suite 375<br>Houston, TX 77060<br>Telephone: (281) 272-0797<br>mlundy@lundydavis.com | W. Todd Harvey, Esq.<br>Whatley Drake, LLC<br>2323 2nd Avenue North<br>Birmingham, AL 35203<br>Telephone: (205) 328-9576<br>THARVEY@whatleydrake.com<br>ccf@whatleydrake.com |
| Lawrence J. Gornick, Esq.<br>William A. Levin, Esq.<br>Dennis J. Canty, Esq.<br>Levin Simes Kaiser & Gornick LLP<br>44 Montgomery Street, 36th Floor<br>San Francisco, CA 94104<br>Telephone: (415) 646-7160<br>lgornick@lskg-law.com<br>dcanty@lskg-law.com<br>llsimes@levins-law.com<br>jkaiser@lskg-law.com<br>echarley@lskg-law.com<br>ddecarli@lskg-law.com<br>bsund@lskg-law.com<br>astavrakaras@lskg-law.com | Gregory P. Forney, Esq.<br>Shaffer Lombardo Shurin<br>911 Main Street, Suite 2000<br>Kansas City, MO 64105<br>Telephone: (816) 931-0500<br>gforney@sls-law.com<br>rbish@sls-law.com<br>***Attorney for Defendant,***<br>***Marguerite Devon French*** |
| Robert L. Salim, Esq.<br>Robert L. Salim Attorney at Law<br>PO Box 2069<br>Natchitoches, LA 71457-2069<br>Telephone: (318) 352-5999<br>robertsalim@cp-tel.net | Eric B. Milliken, Esq.<br>3 Sir Barton Ct.<br>Newark, DE 19702<br>***Pro Se*** |
| Justin Witkin, Esq.<br>Ken Smith, Esq.<br>Aylstock, Witkin & Sasser, PLC<br>4400 Bayou Boulevard<br>Suite 58<br>Pensacola, FL 32503<br>Telephone: (850) 916-7450<br>Jwitkin@AWS-LAW.com<br>ablankenship@aws-law.com<br>aburrus@aws-law.com<br>asmith@aws-law.com<br>ksmith@aws-law.com<br>noverholtz@aws-law.com<br>jsafe@aws-law.com | Louisiana Wholesale Drug Co. Inc.<br>C/O Gayle R. White<br>Registered Agent<br>Highway 167N<br>Sunset, LA 70584<br>***Pro Se*** |

| | |
|---|---|
| Aaron C. Johnson, Esq.<br>Summers & Johnson<br>717 Thomas<br>Weston, MO 64098<br>Telephone: (816) 640-9940<br>firm@summersandjohnson.com | Catherine Solomon<br>(current address unknown)<br>***Pro Se*** |
| Todd S. Hageman, Esq.<br>Simon and Passanante, PC<br>701 Market St., Suite 1450<br>St. Louis, MO 63101<br>Telephone: (314) 241-2929<br>thageman@spstl-law.com | Randy Niemeyer<br>22442 Pike 309<br>Bowling Green, MO 63334-5209<br>***Pro Se*** |
| Thomas F. Campion, Esq.<br>Heidi E. Hilgendorff, Esq.<br>Drinker Biddle & Reath, LLP<br>500 Campus Drive<br>Florham Park, New Jersey 07932-1047<br>Telephone: (973) 360-1100<br>Thomas.Campion@dbr.com<br>Heidi.Hilgendorff@dbr.com<br>***Attorneys for Defendants Janssen Pharmaceutical Products and Johnson & Johnson Co.*** | Michael Davis, Esq.<br>James Mizgala, Esq.<br>Sidley Austin LLP<br>Bank One Plaza<br>One South Dearborn Street<br>Chicago, IL 60603<br>Telephone:  (312) 853-7731<br>mdavis@sidley.com<br>jmizgala@sidley.com<br>***Attorneys for Defendants AstraZeneca LP and AstraZeneca Pharmaceuticals, LP*** |
| Elizabeth Raines, Esq.<br>Baker, Sterchi, Cowden & Rice, LLC<br>2400 Pershing Road, Suite 500<br>Kansas City, MO 64108<br>Telephone: (816) 471-2121<br>raines@bscr-law.com<br>***Attorneys for Defendant AstraZeneca, PLC*** | Timothy Reese Balducci, Esq.<br>The Langston Law Firm, PA<br>P.O. Box 787<br>100 South Main Street<br>Booneville, MS 38829-0787<br>Telephone: (662) 728-3138<br>tbalducci@langstonlaw.com |
| Kenneth W. Bean, Esq.<br>Sandberg, Phoenix & von Gontard<br>One City Centre<br>15th Floor<br>St. Louis, MO 63101-1880<br>Telephone: (314) 231-3332<br>kbean@spvg.com<br>***Attorney for Defendant Dr. Asif Habib*** | Robert L. Ciotti, Esq.<br>Carlton Fields, P.A.<br>4221 W. Boy Scout Boulevard<br>Suite 1000<br>Tampa, FL 33607-5736<br>Telephone: (813) 223-7000<br>rciotti@carltonfields.com<br>***Attorney for Defendants AstraZeneca Pharmaceuticals, LP, and AstraZeneca LP*** |

| | |
|---|---|
| Aaron K. Dickey, Esq.<br>Goldenberg and Heller, PC<br>P.O. Box 959<br>2227 S. State Road 157<br>Edwardsville, IL 62025<br>Telephone: (618) 650-7107<br>aaron@ghalaw.com | Jona R. Hefner, Esq.<br>3441 W. Memorial, Suite 4<br>Oklahoma City, OK 73134-7000<br>Telephone: (405) 286-3000<br>attorneyokc@hotmail.com |
| Mark P. Robinson, Jr., Esq.<br>Robinson, Calcagnie & Robinson<br>620 Newport Center Drive, 7th Floor<br>Newport Beach, CA 92660<br>Telephone: (949) 720-1288<br>mrobinson@robinson-pilaw.com | David P. Matthews, Esq.<br>Abraham, Watkins, Nichols, Sorrels,<br>Matthews & Friend<br>800 Commerce Street<br>Houston, TX 77002-1776<br>Telephone: (713) 222-7211<br>dmatthews@abrahamwatkins.com<br>agoff@abrahamwatkins.com<br>irhoades@abrahamwatkins.com<br>jwebster@abrahamwatkins.com |
| Robert A. Schwartz, Esq.<br>Bailey & Galyen<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744<br>bschwartz@galyen.com | Mary B. Cotton<br>John D. Giddens, P.A.<br>226 North President Street<br>P.O. Box 22546<br>Jackson, MS 39225-2546<br>Telephone:  (601) 355-2022<br>betsy@law-inc.com |
| Salvatore M. Machi<br>Ted Machi & Associates PC<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744 | Howard Nations<br>Lori A. Siler<br>Howard L. Nations Attorney At Law<br>4515 Yoakum Blvd.<br>Houston, TX 77006-5895<br>Telephone: (713) 807-8400<br>nations@howardnations.com |
| David Dickens<br>Miller & Associates<br>105 North Alfred Street<br>Alexandria, VA  22314-3010<br>(703) 519-8080<br>ddickens@doctoratlaw.com | Scott Burdine, Esq.<br>Hagans Burdine Montgomery<br>Rustay & Winchester, P.C.<br>3200 Travis, Fourth Floor<br>Houston, TX  77006<br>Telephone:  (713) 222-2700<br>sburdine@hagans-law.com |

| | |
|---|---|
| Pete Schneider, Esq.<br>Grady, Schneider & Newman, L.L.P.<br>801 Congress, 4th Floor<br>Houston, TX  77002<br>(713) 228-2200<br>pschneider@gsnlaw.com | Lizy Santiago, Esq.<br>Abraham, Watkins, Nichols,<br>Sorrels, Matthews & Friend<br>800 Commerce Street<br>Houston, TX  77002-1776<br>(713) 222-7211<br>lsantiago@abrahamwatkins.com |
| Fred T. Magaziner<br>Marjorie Shiekman<br>A. Elizabeth Balakhani<br>Shane T. Prince<br>Eben S. Flaster<br>DECHERT LLP<br>Cira Centre<br>2929 Arch Street<br>Philadelphia, PA  19103<br>(215) 994-4000<br>fred.magaziner@dechert.com<br>shane.prince@dechert.com<br>marjorie.shiekman@dechert.com<br>eben.flaster@dechert.com<br>elizabeth.balakhani@dechert.com | |