# EXHIBIT "2"
## (Page 61 - 90)

1   documents are being uploaded and very voluminous and

2   there's no reason --

3           THE COURT:  We can avoid that.

4           MR. MAGAZINER:  -- they're all exactly the same

5   document.

6           THE COURT:  Why don't you --

7           MR. CAMP BAILEY:  I think they're two pages or

8   three pages.  They are the bare minimum what we could do

9   and it is -- it is, we hope, is what we're told to do, I

10  think, it's just adoption complaint.

11          THE COURT:  That's fine.

12          MR. CAMP BAILEY:  It has the barebones of names

13  of the defendants --

14          THE COURT:  I don't have a problem with that.

15          MR. CAMP BAILEY:  -- signature block.

16          THE COURT:  You can make it into one item, but

17  it will have to be docketed twice.  Now, strange as it may

18  sound, you could actually split them up and you can file

19  half them and you could file half of them rather than each

20  of having to file your own.  I mean --

21          MR. MAGAZINER:  What I would like to do --

22          THE COURT:  -- but in the process of doing it

23  you need to have two docket entries, what I understand

24  from the clerk.

25          MR. MAGAZINER:  What I'd like to do is ask

1    Mr. Prince of my office, who's not here today, but who is

2    more familiar with this than anyone else, to work Mr.

3    Bailey or someone from his office and be in contact with

4    someone from the clerk's office and see what we can work

5    out to expedite this, and ease the burden on the clerk.

6    And then if the clerk tells us that for certain things she

7    would need an order from the Court --

8              THE COURT:  I'll enter the order that authorizes

9    you to enter this incorporating document.  But again

10   somebody's going to have the burden of doing two

11   documents.

12             MR. MAGAZINER:  I understand that.

13             THE COURT:  It will save the space on our server

14   as well.  So that's okay with me.

15             MR. MAGAZINER:  Okay.  Thank you.

16             THE COURT:  You all get together and talk to

17   Mollie.

18             MR. CAMP BAILEY:  There may need to be some

19   reconciliation of the ones we have already done because I

20   think we have already uploaded 2 to 3,000.

21             THE COURT:  Don't do it again if you already --

22   you've done a lot of them.

23             MR. MAGAZINER:  If I may just say one of the

24   problems we're running into and trying our best to solve

25   this is that when Mr. Bailey's office files complaints, we

63

1    don't get notification of when the complaint is filed

2    because the backlog in the clerk's office.  So our answer

3    has to be filed -- we don't get notification immediately.

4    In other words, because of the backlog, right, you're

5    filing things but the --

6              THE COURT:  Is that because you -- you should

7    already be on the -- you should be the NEF as soon as it

8    is filed.

9              MR. MAGAZINER:  As I understand it -- Mr. Bailey

10   can speak to this -- there is a delay because of the

11   volume of things that are being filed.  So we're trying to

12   figure out why these are happening and what to do about

13   it, but there has been some delay in our filing the answer

14   because we don't want to file an answer in advance of the

15   complaint, so we have to wait to know that the complaint

16   has been filed.  But I think we're working out that

17   procedure as well.  And if an order from the Court is

18   needed, we will let the Court know we think an order will

19   be useful.

20             MR. ALLEN:  I feel confident on this and Mr.

21   Magaziner and my team and Mr. Bailey we can all agree, and

22   I feel confident of that.

23             MR. PENNOCK:  Your Honor, if I may just address

24   the Court on the third-party discovery.  I don't want the

25   Court to think that we came here unprepared to discuss it.

64

1   We were prepared.  As can you see I had slides on this

2   issue.  And in fact, we have a list of possible

3   third-party deponents that are parties for whom we would

4   like to get discovery.  If we took a short break and we

5   could go over that and get back to the Court immediately

6   on that.  We did work out a list of that.  We did speak

7   about it as to directed.  We did not just conclude we will

8   come down and tell Your Honor that we don't have anything

9   to tell you.  We wanted to tell the Court that we have --

10  certainly from the plaintiffs' side, some ideas of who we

11  would like to depose.  We're just concerned about the

12  defendants not locking us in, if that's all we get or that

13  we have to do those.  Because there's a lot of information

14  we need to get yet to figure out if those are indeed the

15  ones we want.  And if we took a short break we could come

16  back and give you literally a list of the parties that we

17  have already identified in reviewing what we reviewed as

18  to who we might want to get some discovery from.

19          THE COURT:  Again, what I was looking for is for

20  you collectively to get your arms around that -- you say

21  you have done at least some of that -- and come up with a

22  realistic way, identify the ones you can, obviously.

23  Leaving some time for others that you haven't yet

24  identified and figuring out how you're going to get it

25  done within the time strictures that I already set.

1   That's what this is:  Case management.

2          MR. PENNOCK:  We can do that.  We have

3   identified parties.  The parties that I'm thinking of off

4   the top of my head that we went through are, a lot of them

5   are third-party marketers and ad agencies or a couple of

6   them are.  There are what we would call ghost writing

7   company.

8          THE COURT:  You're talking about you've

9   identified all those and sitting down with a calendar and

10  figuring out, gosh, it's going to take six days, six with

11  two lawyers each doing this.  It's going to take -- how

12  are we going to pack these in here?  How many are going to

13  go on the same time?  How many have to go first before you

14  can do another?  How are we going get this done --

15         MR. PENNOCK:  I understand.

16         THE COURT:  -- in the four days I'm going to let

17  you do it, 40 days or whatever.

18         MR. PENNOCK:  And what I'm suggesting or

19  requesting the Court within a short break I think we could

20  give you a pretty reasonable plan for that.  It's obvious

21  to me at least that much of that discovery will be taking

22  place after this document production is complete.  And

23  there's also -- I just need to consult with a couple of

24  counsel on the FDA issue but I believe we can have an

25  answer for you on that and in a very short time.

66

1   Certainly by 4:00 we can be back here and I think we will

2   have it fleshed out in a way that would be --

3          THE COURT:  Well, my plan based on what I heard

4   the first 40 minutes of this conference was that I need

5   defendants to do some more thinking and conferring with

6   you on the -- as I said at the beginning what I saw as the

7   biggest problem here which is, I don't think you're

8   getting the documents you need as quickly as I thought you

9   would and need to for this case to stay on schedule.  And

10  I want to hear -- I heard from Mr. Magaziner that that's

11  not something he could come up within half an hour.  He

12  needs to think all that through and then tell you what it

13  is and then I'm going to hear what the problems are again.

14         MR. ALLEN:  Your Honor, does spring turkey

15  season, is that a formal motion that needs to be brought?

16  In the State of Texas, spring turkey season and we -- I'll

17  just be honest with the Court -- it's kind of -- but I'll

18  be here if we need to.

19      But I think what we're saying is if we have 30

20  minutes to sit down we could try to get this worked out.

21  And we certainly -- as we said, we understand the Court's

22  frustration.  The Court understands ours.  But making us

23  come back tomorrow is somewhat difficult.  And I think if

24  we could just get the opportunity to talk to Mr. Magaziner

25  it may be helpful.

1          MR. PENNOCK:  Third party discovery we're

2    prepared.  We did not come here unprepared.  We certainly

3    have not ignored any word in Your Honor's order in that

4    regard or any other regard.  On that we can come back and

5    say, Your Honor, here's what we're thinking about.  Here's

6    what we think about the FDA, here's the timeline we're

7    thinking about.

8          As far as the problems with the defendant's

9    discovery, I mean, you know, I would suggest -- I doubt

10   very much we're going to get any answers from the

11   defendants.  I don't think they'll be able to give us

12   these very important and substantial answers between now

13   and tomorrow morning, and I'm concerned.

14         THE COURT:  I think they will.  I have

15   confidence in Mr. Magaziner and his colleagues if he puts

16   his mind to it that he can do those things.  He told me

17   that he's -- he and others have spent a long time thinking

18   about this.  They put an awful lot of effort into it.  So

19   they're prepared to do that, I'm sure.  I'll take a little

20   recess and let you confer and see where we're on that.

21         There are a couple of other issues.  One is obviously

22   a huge disagreement between the parties on individual

23   plaintiff discovery.  I raised the subject and threw some

24   ideas out there.  And if anything the parties' views on

25   that are more dispirit now than they were before.  And I'm

1    two minds of that.  And having read what has been

2    submitted and heard the arguments this time and last, I

3    really -- I think I need to get some guidance from the

4    presiding district judge, Judge Conway, to -- and this

5    goes back to your dispositive motions as well, whether

6    we're going to -- it had been my thought we were going to

7    get everything done in this case so that at the time of

8    remand to the transferee court, or if the transferee court

9    retransfers some of these, which I suspect will happen,

10   but anyway, wherever they end up for trial, we'll be able

11   to set them for trial as soon as they get the docket back.

12   That's one way to go.  It's not the only way to go.  And

13   it may be that Judge Conway doesn't want to burden the MDL

14   with all of that.  I understand the arguments both ways.

15   It's -- I heard the arguments.  I could make the

16   arguments.  And that's ultimately going to be Judge

17   Conway's decision.

18        It obviously affects how we go on individual

19   plaintiff's discovery and dispositive motion schedule.

20   Unpacking the Venn diagrams.

21        So those issues are out there.  The other issue we

22   kicked around but not come to terms with is the ADR issues

23   which I have heard the defendants state their general

24   position and don't know whether that's changed at all or

25   how they're viewing this.  Any change in posture?

69

1         MR. MAGAZINER:  Our basic position ADR is we

2    need some discovery of plaintiff before we could have a

3    meaningful discussion about this resolution of the case.

4         THE COURT:  All right.  Well, let's do this:

5    Why don't we take -- it's 3:30.  We will take about a

6    half-hour recess.  I want to suggest to you,

7    Mr. Magaziner, that you and Mr. Freebery, whoever else you

8    need to talk to, take the first 10 or 15 minutes among

9    yourselves to see whether you can -- how much you can

10   flesh out this timeline between now and June 30.  And then

11   be able to present that to plaintiff's counsel in that

12   very brief period of time to be able to report back when

13   we reconvene.  And then talk also about this third party

14   discovery in case management sense and report back on

15   that.  And then we will also talk about the deposition

16   protocol that you proposed when we convene.

17       Does that give you enough guidance?  If you need 45

18   minutes, I'm not going to say you have to back here at

19   4:00 regardless of where you are.  If you got more

20   progress in 15 minutes, we'll let you do that.  If you

21   need to come back tomorrow or Monday or whenever we need

22   to come back, however we need to come back, we will do

23   that.  See how much progress you can make on this short

24   timeframe.  If it's not enough, we will see what we can

25   do.

1           MR. MAGAZINER:  Thank you, Your Honor.

2       Can I clarify for the sake of all parties?  Your

3   Honor said as I -- Your Honor's wish on third-party

4   deposition issues as I understand it is that we propose

5   jointly, if we can, a schedule for the third-party

6   discovery.  When --

7           THE COURT:  Again, it's not a specific schedule,

8   but it's to give me an idea that you -- and I'll give you

9   an example.  In every civil case in this court under local

10  Rule 3.05 we require counsel to meet early in the case and

11  I call it the get-your-arms-around-the-case meeting, and

12  you think through what sorts of things you will need to do

13  and do we need 10 months for discovery or do we need 14

14  months.  I have got a vacation with my family.  I have got

15  hunting season.  I have got, you know, elective surgery.

16  I have got other cases.  You know, you have got different

17  things to -- this case is different.  I understand that.

18  But the principal is the same.  It's your opportunity to

19  get your arms around it and decide, do we need six weeks

20  of these people?  Do we need two weeks of these people?

21  Do we need FDA people, which is like pulling teeth.  We

22  talked about that.  Do we need people who are going to be

23  hard to find.  Do we need people who are in other

24  countries.  Do we need lots of university people that have

25  their own schedules and ways of doing things.  And how

1   many of them can we take at once, which ones have to come

2   first logically.  It's not that you're going to agree on

3   every piece of that.  But you get an idea, is this, you

4   know, just more than you can be humanly done in two months

5   or three months that you set aside.  If so, where are we

6   going to deal with it?  How do we prioritize this?  How

7   many people is it going to be?

8        We're not going to bind you on that.  What I didn't

9   want to have happen, which is what -- the reason I did

10  this is because we get to the fall and you haven't thought

11  through those things and suddenly we have got people who

12  can't be found who are crucial.  We have got university

13  professor that you want who's on sabbatical someplace.

14  It's not convenient for him to be available.  You have got

15  doctors involved.  Doctors are, you all know, pretty

16  difficult to, you know, unless I'm issuing an order for

17  every doctor to be where he's supposed to be, it's hard to

18  get them gathered up when you want them.

19       So I wanted all of that done and not have you

20  identify every single person but generically what kind of

21  people are you going to need, how complicated are they.

22  Again, I'm relying on your experience.  You have all done

23  this before.  It's not a mystery.

24            MR. MAGAZINER:  Thank you for that explanation.

25            MR. ALLEN:  We can do that.

72

1    THE COURT:  We will take a recess.

2    MR. CAMP BAILEY:  During the interim of that

3  break can I ask to maybe sit down with Mollie and invite

4  someone from the defendant to sit down with Mollie to go

5  over, kind of understand --

6    THE COURT:  If you can find her.  She had

7  another.  She had to leave.  She may be back in the

8  clerk's office now.  So you can go down there.  If you can

9  find her, you're welcome to talk to her.

10                    (recess)

11    MR. PENNOCK:  May I proceed?  Paul Pennock for

12  plaintiffs.  As to third party discovery, as noted earlier

13  the plaintiffs have some concepts of whom they'd like to

14  depose, Doctors Diamond and Boorstein are two non parties.

15  One of them is still incarcerated.  The other one just got

16  out.  They're very relevant to clinical trials.  We would

17  like to do those.  These are some other entities:  Zantaz

18  is actually we believe the vendor for the document

19  production by the defendants to this point, and because we

20  have just recently as of two days ago encountered the

21  following problem, the Bates numbers are not matching up

22  with the extracted data that it's supposed to match up

23  with.  We would like to a short 30(b)(6) deposition of

24  this -- it's not 30(b)(6) but third party discovery depo

25  of Zantaz.  We have got Borinson.  We also have Avalare

which is an entity, third party entity we would like to do.  Simpson Healthcare Executives is a company which actually assists in national campaigns, we think assisted AstraZeneca with national campaigns.

McKeeson we believe may have been involved in the sampling of the drug, getting lots of samples out to doctors and including nonpsychiatric providers and telling them they what they should do.  The same thing with this company called Lash.  Also a sampling entity.  Just going out and getting samples of the drugs.  We want -- we may want to take depositions of them or a deposition of them. Excerpt Medica is a medical publication.  We have seen some reference they may have been involved in the development of some of the, what was ultimately published in the literature on the drug Paraxel and MMS are ghostwriters, what we call ghostwriters.  In fact they call them I think ghostwriters.  They engage entities to write things about the drugs and draft studies based on data and then they go out and find an author to put the name on it.

ICI, ICI Zeneca and Imperial Chemical Industries, these three companies we believe may have been involved in clinical trial, setting up the clinical trials and running the clinical trials.  We think certainly they would be on our list of candidates to do discovery.

74

```
 1        Pharm Ed and Quintiles and BiPolar Trading Company,
 2   these are all companies that we have seen referenced that
 3   may have been involved somehow in clinical trials
 4   including the Bipolar Trading Company.  We know that some
 5   money may have gone to them.
 6        We also had IMS on the list that I forgot to put on
 7   there.
 8        And of course ad agencies in general.  We don't have
 9   who they were using, but we would like to get them.
10        So that's sort of an outline that we had already
11   developed of the entities that we're considering.  We
12   talked to the defendants at the break and we think that if
13   the Court would allow us to start getting rolling with
14   notices or how we're going to pursue that discovery in
15   doing it in September, October, November of this year,
16   over that timetable, figuring out between now and some
17   date that the Court wants as to who exactly we want at
18   this point and then proceeding to do that discovery in the
19   fall.
20        We have looked at the NDA and everything that has
21   been produced to this point.  We the plaintiffs do not
22   think that any discovery is necessary against the FDA.  As
23   the Court has noted it's extremely time consuming and
24   difficult to attempt to get that discovery.  We have a lot
25   to do.  We have to sort of pick our battles.  And in any
```

1    event we don't see that we need any FDA.  The defendants

2    have indicated that they think they do want FDA.  I'll let

3    Mr. Magaziner address that.  However, they have not given

4    us any names of anybody they want at the FDA.  And our

5    concern on that is they have been dealing with the FDA for

6    20 years on this drug and they still don't have any names

7    of who they want.  So that's our position on third-party

8    discovery.

9            MR. MAGAZINER:  We're looking at the question of

10   FDA and the probably we're going to seek discovery from

11   from FDA. I don't know who it's going to be.  We've been

12   studying the documents and the files.  And we would think

13   the September, October, November timeframe is a timeframe

14   by which -- in which both parties could take the discovery

15   of the third parties, whoever they ultimately decide needs

16   to be deposed.

17           THE COURT:  As you know it's probably been

18   easier for you to extract a witness out of FDA if you get

19   some court orders so --

20           MR. MAGAZINER:  We understand.

21           THE COURT:  You will need to very specific so

22   that we can approve those for you and --

23           MR. MAGAZINER:  Of course, I understand.

24           THE COURT:  -- fight with general counsel over

25   there and I suspect we will have to have a hearing with

1    them.

2            MR. MAGAZINER:  We will give this a very high

3    priority.  We won't wait until September to seek it.

4            THE COURT:  Because it just simply will not

5    work.

6            MR. MAGAZINER:  We understand that, Your Honor.

7            THE COURT:  All right.  What about the flow of

8    defendant's initial documents?

9            MR. MAGAZINER:  We have discussed this with the

10   plaintiffs.  I think they are in agreement with this plan.

11   We have already discussed the eight and the next 10, the

12   10 being the witnesses whom they have listed as their

13   first highest priority witnesses for deposition.  It's

14   actually nine because one of the first eight custodians

15   is also on their list of 10.  So those 17 we have already

16   discussed.

17       There's 63 more.  By Monday, this coming Monday, the

18   16th of April, we will give plaintiffs the names of 21

19   custodians, 21 additional witnesses for whom document

20   production can be complete on or before May 14.  By

21   Monday, April 23rd, that's a week from this Monday, we

22   will give plaintiffs the names of 21 more witnesses or

23   custodians by whom production will be complete no later

24   than June 11.  And also another 21 by whom production --

25   for whom production will be complete no later than

1    June 29.

2         So we don't have those names today.  We're trying to

3    get a sense of how to prioritize them in terms of our

4    ability to turn out 21 on each of those dates.  But we

5    will give the names of first 21 to plaintiffs by this

6    coming Monday and names of the remaining 42 in two groups

7    of 21 each by Monday, the 23rd.

8         We discussed that during the break with plaintiffs'

9    counsel.  They said they had no objection to that

10   proposal.

11            MR. ALLEN:  Let me make sure the record is

12   clear.  I'm not arguing with Mr. Magaziner's

13   characterization.  If it's meant to be cooperative and we

14   were ordered to try to cooperate at the break, Your Honor,

15   our position has been and remains it should have been

16   done.  So I don't want the record to reflect that somehow

17   we agree that what's happened in the past is okay.  What

18   we agree to now is whatever schedule he just proposed to

19   the Court.  That's the schedule that they should comply

20   within that time period and that we should also, and I

21   think Mr. Magaziner forgot to say, when those files are

22   produced, we need a certification that those files have

23   completely been produced.

24            MR. MAGAZINER:  Yes, I said before the break

25   that when we complete the production we will give the

1   plaintiffs certification.

2           MR. ALLEN:  But make sure we have a clear

3   record, the certification should occur at the time of the

4   final production, not at some later date in the future,

5   Your Honor.

6           MR. MAGAZINER:  That's our intention.  That's

7   what I said before the break.

8       Plaintiffs have repeatedly said that they think this

9   should have been done more quickly.  I don't think Your

10  Honor wants to hear a lengthy explanation of whose fault

11  it is that wasn't done more quickly but if Your Honor

12  wants to hear that, and wants to hear why we're not

13  further along in the process now, we can have that

14  discussion.  Suffice it to say we have understood the

15  Court's sense of urgency.  We are intending to respond to

16  it in the way that I have just outlined, and that includes

17  the certificates of completeness, certifications of

18  completeness that Mr. Allen just referenced.

19          THE COURT:  Let me -- I don't want to hear any

20  more about the background of it.

21      The plaintiffs are satisfied that this will move

22  things forward.  It sounds like it will.  We go forward on

23  that basis.

24      Let me emphasize again to the extent I have not made

25  this clear, with respect to these conferences that we have

1   and are going to continue to have, I really do expect more

2   from both sides in terms of actually talking with each

3   other about the details of the nuts and bolts and sort of

4   things, I really didn't expect -- again, we have had this

5   problem before, that we would be exploring these things

6   almost for the first time here in open court.  These are

7   things that I expect you to talk about in detail whether

8   it's defendant's got a burden to produce things in

9   accordance with what they said they were going to do, and

10  plaintiffs have a burden to move to compel if they need

11  to, but you both got a burden to actually confer in detail

12  about these issues.  I'll be here to resolve them if you

13  can't -- I'm not saying you've got the burden to resolve

14  them.  But you've got a burden to talk about them so that

15  we can narrow the issues.  And the ones that I need to

16  focus on I'll focus on.  And so that you need spend more

17  time in advance of these hearings where you really talk

18  through the issues you want to raise and problems that you

19  have got and try to resolve them.

20      And I'm not saying you haven't done any of that

21  because obviously you have.  You talked about a lot of

22  things and but there shouldn't be things popping up here

23  that you haven't talked about between each other first.

24      Let me go on to the deposition protocol that you

25  proposed back in February.  Well, let me do that first.

1    There's on page 4 of that -- assuming that you still

2    want some version of this approved by the Court, let me

3    point out some issues that I have I want to hear from you

4    about.  Page 4 you talk about the absence of good cause

5    depositions being limited to two days.  Normally a

6    deposition is one day.  What is it about this case that

7    makes it a presumption that two days ought to be allowed

8    for most depositions?

9            MR. ALLEN:  Your Honor, Scott Allen.  I can only

10   give you this as a background.  We're dealing what medical

11   pharmaceutical drug that was developed clearly long before

12   1997.  It was put on the market in 1997.  And it remains

13   on the market to this day.  It has been the subject of

14   extensive regulatory action including but not limited to

15   an action by the FDA requiring a warning change.  I can

16   represent to the Court as somebody that has taken, and I'm

17   not exaggerating, probably in the neighborhood of 400

18   pharmaceutical depositions in my career, that in order to

19   best serve the ends of justice and to get to the root

20   facts of the case two days is the best that we can do.  We

21   have 9,000 individual plaintiffs, and we're talking about

22   as you called it the Venn diagram of motion for summary

23   judgment.  When we tell the defendants limited to one day,

24   it never gets completed in a satisfactory fashion.  Now,

25   I'll tell the you Court this:  We took, many people here

81

1   in the room with me, we took depositions in the Phenfen

2   and the breast implant cases.  I'll tell Court the most

3   depositions took two days.  Some of them took longer but

4   some took shorter.  We had some done in less than a day.

5   But if we put an arbitrary roof, for example, on the

6   individual in charge of regulatory affairs as the Court

7   has well pointed out the dealings with the FDA on the

8   warnings and the safety efficacy, global safety

9   surveillance, they deal with them across the product.  To

10  limit that individual to one day will not do justice.

11          MR. PENNOCK:  Can I interject?  On a practical

12  level, on a practical level this was a timeline for these

13  depositions that was agreed to.  There was tremendous

14  negotiation back and forth on this including in-person

15  meeting in Philadelphia.  And we -- there was a lot of

16  back and forth and a lot of trade offs.  Everything,

17  virtually every word in any order that we submit to Your

18  Honor has an agreed-to order is the result of a great deal

19  of trade off.

20      And one of the major trade offs with respect to us

21  insisting on at least two days was that they wanted us and

22  still want us to make an effort to corral anyone else in

23  the country that may want to partake in this deposition

24  and give them some opportunity at this deposition.  And so

25  in order to ensure that every one has some time at least,

```
1    two days was the bare minimum.  And that's kind of how we
2    reached that issue.
3             MR. ALLEN:  So what Mr. Pennock is saying in a
4    nutshell, all those points I was fixing to make, we did
5    exactly what the Court just told us to do within the last
6    five minutes.  We met extensively.  I flew to New York
7    City.  I sat down with these lawyers right over here.  We
8    met in Philadelphia.  So we did what the court ordered us
9    to do.  We met with the other side two days we agreed
10   upon.  So if the process of meeting and conferring is
11   going to work, those matters that we agree on, when we
12   meet and confer we're hoping the Court will institute.
13   Because I sat down with Mr. McConnell, Mr. Magaziner and
14   others to work out that two day agreement just like the
15   Court just ordered and that's what we came up with.
16            MR. PENNOCK:  If I may segue on that for a
17   second.  So what happened after we agreed to this order
18   that we came down to the Court and a lot of other issues
19   were discussed, and one of the things that came out of the
20   last conference is that we may be limited to deposition,
21   number of depositions we could conduct.  And when we
22   agreed to the entire, every line of this order, there was
23   no set limit in discussions with the plaintiffs and
24   defendants of defendant witnesses.  In fact, we had talked
25   about, you know, allowing us upwards of 80 or 90 depos if
```

```
 1   we saw fit and thought we needed it and the defendants

 2   weren't going to object to that.  It was all a matter of

 3   when and how and so forth.

 4       So this order went in or we agreed to this order with

 5   the understanding that we would -- there was not going to

 6   be a fixed limit.

 7       The Court has instituted at this point a semi-fixed

 8   limit.  I understand the Court has said many times that we

 9   can come back and we will get additional witnesses.  But

10   the only concern I have about this order as we drafted it

11   before the last conference right now is that I am

12   precluded from taking a deposition, an additional

13   deposition of AstraZeneca parties in my state court cases.

14   Not the same witness, not a duplicative deposition, but

15   if, for example, somewhere down the road -- I have a lot

16   of cases moving forward in New Jersey, there are

17   depositions that I would like to take of AstraZeneca that

18   for one reason or another haven't occurred here in the

19   MDL, I just want to make sure this order will not be read

20   or interpreted at any point in the future as precluding me

21   from doing that.  Again additional witnesses, not

22   duplicative.

23           MR. ALLEN:  And so --

24           MR. PENNOCK:  Other than that this order is

25   satisfactory.
```

1          MR. ALLEN:  So to sum up, Your Honor, on that

2    point, we did exactly what the Court asked us to do.  We

3    met and conferred.  So this order other than what

4    Mr. Pennock just said -- am I right, Mr. Pennock? -- it's

5    been agreed to.  So we agreed with this order.  We ask the

6    Court to enter it.

7          THE COURT:  Well, let me just tell you

8    philosophically that as you have relied on, I do want you

9    to do that.  And for a lot of things I'm happy to have you

10   confer and you all been through this you know how to do

11   these things, and you know the particulars of your case.

12   And most of those I just soon not see, but if you need me

13   to bless them, I'll bless them.  But the Court does have

14   some institutional concerns about the expense and delay of

15   litigation.  And that's even more so when it affects

16   nonparties.  And you listed a bunch of people here whose

17   depositions you may want to take to -- some of them

18   undoubtedly you will need more than a day but I bet a

19   bunch of them you don't.

20         MR. ALLEN:  Yes, you are right.

21         THE COURT:  My thought on this one and the

22   reasons I circled it I was reviewing this is, you know, if

23   Mr. Magaziner's happy to do two days a piece with his

24   people, that's fine.  But for the third parties

25   presumptively it ought to be one day.  For those that you

85

1   can identify as you round out who those people are and how

2   significant they are and you need leave to more than one

3   day, I'll do that on a witness-by-witness basis or a

4   subject matter basis.

5          MR. ALLEN:  As we understood it, maybe this is

6   where I got confused, when we actually negotiated this,

7   and Mr. Magaziner may have a different view, but I know

8   what my mind-set was I thought deposition protocol was

9   addressed to the corporate witness depositions.  I didn't

10  consider it as a protocol for the third parties.

11         THE COURT:  Well, it says beginning it covers

12  certain third parties.

13         MR. ALLEN:  But I agree with the Court.  I guess

14  what I'm saying is, Your Honor, we agree with your general

15  philosophy that the third-party witnesses are different

16  than the corporate witnesses.  And if you're telling us

17  that for third-party witnesses they're limited to one day

18  and we have to come to you, I don't have an objection to

19  that.  I don't think anybody on our side does.  So we

20  agree with the Court again.

21         THE COURT:  All right.  Paragraph D in that same

22  page, going over to the next page, is moot.  But it does

23  bring me back to and I don't know whether you had time to

24  talk about actually going forward with some of these

25  depositions, with MIS people and corporate organization

1    people and getting that done in the next two weeks.

2              MR. ALLEN:  Yes, Your Honor.  Among ourselves.

3    Now we did not consult with Mr. Magaziner but we can tell

4    him now, we intend to notice up the third -- the 30(b)(6)

5    depositions next week.  We have people working on it right

6    now.  I know Mr. McConnell indicated a notice has already

7    been served.  So we're in the -- those will be -- if you

8    talk to me today is Thursday, by next Wednesday those

9    notices will be out and they'll be prepared.

10              THE COURT:  And part of that is the under next

11   paragraph G, on page 6 of the proposal, that's referring

12   back to your state court issues.  I guess if you're happy

13   with that, it doesn't matter to me.

14        Over on page 9 you had a provision about disputes

15   that might rise during the depositions suggesting that all

16   matters be addressed to this Court, which again, at least

17   for third parties, if you have to subpoena them is really

18   not quite consistent with Rule 45, although there's case

19   law under Rule 45 that this might be such a case where the

20   local court would defer it back here.  But I can tell you

21   from history that most of the -- generally magistrate

22   judges are reluctant to duck an issue.  We sort of feel

23   duty bound to take what is in our bailiwicks.  On the

24   other hand, this case is -- to the extent those issues

25   arise, there is obviously going to be more background than

1    I'll be familiar with than one of the judges in

2    Philadelphia or someplace else.  And again for party

3    depositions or party employee depositions that aren't

4    really going under Rule 45, that would be less of a

5    concern.  So I just throw that out there.  I may change

6    your language on that to reflect that.

7         Later on in that paragraph you talk about

8    interrupting the depositions to see if you can't get it

9    resolved.  I'm not opposed in principal to that.  I have

10   done it in many cases.  I have also not done it in some

11   cases.  And I'll tell you why.  If there is a particular

12   issue that you thought through -- just sort of a small set

13   of ones that is appropriate to do.  It's got to be

14   something that you didn't -- couldn't reasonably

15   anticipate prior to the deposition, came up during the

16   deposition, and it's sufficiently clear and crystallized

17   that both sides can properly argue it, and I can think

18   about it and decide it quickly enough that I don't need to

19   do a lot of research and you don't either.  So if you

20   think about the sorts of things that come up, there's lots

21   of other things that don't fit that paradigm.  So like I

22   say, I've -- it also depends on what my schedule is.  If

23   I'm in a middle of a suppression hearing or a trial or

24   something, I'm not going to hear you.

25        On the other hand, while today I got a more flexible

88

```
 1   schedule than that, I'm not opposed to it.  But keep in
 2   mind that's the kind of things that you should call us for
 3   is where it's -- again, I don't want reward you for not
 4   having thought about it in advance by letting you get a
 5   ruling off the cuff and it's just not going to be
 6   appropriate, if it's really something that ends up being
 7   in effect a mini version of a dispositive motion.
 8            MR. ALLEN:  I think Mr. Magaziner and I would
 9   agree with that.  I have been in depositions with him
10   before.  I don't think that that's going to be a problem.
11            THE COURT:  All right.
12            MR. ALLEN:  He or his firm.
13            THE COURT:  Those are the issues I had.
14            MR. McCONNELL:  Just one point of clarification
15   regarding the scope of this proposed case management
16   order.  As we negotiated this document with the
17   plaintiffs' lawyers and Mr. Allen and Mr. Pennock quite
18   accurately described the extensive negotiation process, we
19   sort of evolved in our thinking about the scope, and
20   they're absolutely accurate and Your Honor was accurate
21   about the extent to which this would or more accurately
22   would not apply to third parties.  There's just one
23   clarification.  This was designed -- you will see it
24   applies to defendant's employees, AstraZeneca's employees.
25   And we did agree explicitly.  That does not include
```

89

1    deposition of AstraZeneca's sales representatives.  To the

2    extent those depositions do have to take place as part of

3    case specific discovery, they would not be subject to this

4    provision.  I guess at this point they would be subject to

5    the federal rules.  But it wasn't -- this was not intended

6    to embrace those.

7            THE COURT:  Are they employees?

8            MR. McCONNELL:  They're employees but they're a

9    special case.

10           THE COURT:  I understand.

11           MR. McCONNELL:  But and that's the sloppiness of

12   the draftsmanship.  That's my doing.

13           MR. PENNOCK:  We carved those out that they

14   would not be subject to two days of deposition.

15           MR. ALLEN:  And also just so the record -- I

16   agree with Mr. McConnell, it also doesn't apply to

17   plaintiffs.

18           MR. MAGAZINER:  That's correct.

19           MR. McCONNELL:  That's correct.

20           MR. PENNOCK:  I think we're all in agreement on

21   that.

22           THE COURT:  Mr. Magaziner, at the risk of

23   invading the attorney/client relationship here, can you

24   identify for me who at AstraZeneca corporate is in charge

25   of this litigation?

```
 1              MR. MAGAZINER:  It depends.

 2              THE COURT:  Mr. Zook?(phonetic)  Or--

 3              MR. MAGAZINER:  Depend by what you mean by in

 4     charge.  The person immediately in charge who is working

 5     full-time on supervising the outside lawyers is Catherine

 6     Connolly (phonetic) who is in courtroom today.

 7              THE COURT:  Well --

 8              MR. MAGAZINER:  She reports to people above her.

 9              THE COURT:  Somebody, I don't think it's the

10     board or somebody in the executive suite, for example,

11     makes the decision that you have no interest in exploring

12     ADR prior to some date long in the future.  Who's making

13     that decision?

14              MR. MAGAZINER:  I don't think that decision went

15     to the board.  I think we're simply saying to the Court

16     that in order to engage in ADR, we would need discovery of

17     plaintiffs.  That's sort of to us --

18              THE COURT:  Somebody made that decision.

19              MR. MAGAZINER:  We had discussions with our

20     client about that, yes.

21              THE COURT:  Well, is that Mr. Zook or Mr.

22     Engleman?

23              MR. MAGAZINER:  We discussed it with Cathy

24     Connolly and she discussed with others that I don't really

25     know.  We report -- all the outside lawyers who are here
```