**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**IN RE: Seroquel Products Liability Litigation**

**MDL DOCKET NO. 1769**

_____

**This Document Relates to ALL CASES**

**ASTRAZENECA LP AND ASTRAZENECA PHARMACEUTICALS LP'S**
**MOTION AND SUPPORTING MEMORANDUM OF LAW REQUESTING**
**SCHEDULE FOR CASE-SPECIFIC DISCOVERY AND ALTERNATIVE DISPUTE**
**RESOLUTION**

With nearly 7,200 cases on its docket, this Court cannot "promote the just and

efficient conduct of those actions" (28 U.S.C. § 1407(a)) if it accedes to plaintiffs' request to

insulate them from case-specific discovery in this MDL.  AstraZeneca is aware of no recent

product liability MDL that has made discovery a one-way street; MDL courts have learned

that plaintiff-specific discovery of the facts underlying the cases is critical both to motion

practice and to decision-making regarding the potential for Alternative Dispute Resolution

("ADR").  Yet plaintiffs' counsel wish to shield these cases from any meaningful MDL case-

specific discovery and thereby prevent their true facts from being tested, while hoping to use

the sheer volume of cases filed to coerce premature ADR and extract compensation.  That is

_not_ how the system is supposed to work.  Accordingly, AstraZeneca moves for an Order:  (1)

establishing a schedule for case-specific discovery beginning after the June 30, 2007

completion of document production from its first 80 document custodians; and (2) requiring

that, once the parties have completed case-specific discovery in at least 300 cases, the parties meet and confer to determine whether any cases or subset of cases may be amenable to ADR.

At the March conference, Magistrate Judge Baker indicated that at least some case-specific discovery would be conducted in many, and perhaps all, cases.  Counsel were directed to meet and confer, and propose a schedule for that discovery.  But at the April conference, the Magistrate Judge deferred the matter for further discussion at the upcoming May conference, and stated the need for Judge Conway's direction.  In anticipation of that discussion at the May 22 conference, AstraZeneca is now submitting this Motion.

## MEMORANDUM OF LAW

## I.    INTRODUCTION

AstraZeneca has the right to obtain case-specific discovery from each and every plaintiff in this litigation.  The only question is whether AstraZeneca can start taking that discovery soon, in this MDL, or whether it will be prevented from taking discovery until these cases are clustered in dozens of federal courts around the country after remand.

Case-specific discovery should be conducted in this MDL in at least a substantial number of cases, and should begin promptly upon completion of AstraZeneca's production from its first 80 document custodians (to be completed by June 30, 2007).[1]  In recent years, virtually every transferee court has exercised its authority under 28 U.S.C. § 1407(a) to coordinate case-specific discovery in the MDL, and this Court should do the same.

---

[1]     AstraZeneca has dedicated massive resources to comply with the Court's June 30, 2007 deadline for production from its first 80 document custodians; has to date produced over 3.5 million pages of responsive documents sought by Plaintiffs; and intends to produce completed files from all 80 employees by the June 30 deadline.

The Court's duty is to manage the litigation and adopt those procedures that will ensure the "just and efficient" conduct and disposition of these actions. 28 U.S.C. § 1407(a). Case-specific discovery is essential to such a "just and efficient" disposition. If case-specific discovery moves forward in the MDL, then (1) some plaintiffs may choose not to pursue their cases, as has already occurred with all three cases originally filed in this District; (2) some cases will be dismissed either on dispositive motion or because plaintiffs have failed to comply with various procedural obligations; (3) some cases may resolve informally pursuant to settlement negotiations and ADR in the MDL; and (4) the Court will have overseen critical pre-trial preparation in at least some if not all of the remaining cases, which will then virtually be ready for trial or other disposition in the remand courts.

Without case-specific discovery, the Court will be unable to weed out "spurious cases"[2] on dispositive motion or otherwise; plaintiffs with such claims will have no incentive to drop their cases and would instead be allowed to hide among the thicket in this MDL. Further, prior to case-specific discovery, there can be no possibility of meaningful ADR. AstraZeneca will not know enough about the critical facts underlying these actions to evaluate any case for purposes of any settlement.[3]   And without case-specific discovery in a

---

[2]   Case-specific discovery helps achieve one of the JPML's purposes in creating this MDL, which is to have this Court manage these coordinated actions so that "spurious cases" are disposed of "quickly" *in this MDL* before remand. *In re Seroquel Prods. Liab. Litig.* (MDL-1769), Transfer Order at 2 (J.P.M.L. July 6, 2006).

[3]   Some cases – such as the three filed in this District but dismissed after case-specific discovery was soon to commence – have *zero* settlement value. The settlement value is also zero for those cases in which the facts adduced in case-specific discovery reveal that AstraZeneca has dispositive defenses on the undisputed facts (*e.g.*, plaintiff's prescribing physician would have still prescribed Seroquel to that individual with full knowledge of what plaintiff's counsel claim to be the truth,

large and representative sample of cases chosen randomly, neither the parties nor the Court will know how many serious cases are included in this MDL.

The alternative to MDL case-specific discovery is procedural chaos:  thousands of insufficiently developed cases would be remanded to scores of federal courts that are nowhere near ready for trial or dispositive motion practice, and without any guidance from this Court on the significant legal issues.  As a result, a series of *de facto* mini-MDLs will necessarily arise in jurisdictions across the country to manage all of the case-specific discovery work that this Court elected not to coordinate and conduct here, and the Seroquel litigation will be riddled with inconsistent pretrial rulings and conflicting obligations.

Plaintiffs' counsel prefer the old and now-discredited paradigm long favored by the plaintiffs' mass-tort bar:  one in which lawyers employ advertising to amass an enormous inventory of cases, and then point to the massive number of pending actions as a reason to avoid the discovery that would be absolutely routine if the number of plaintiffs were smaller. *See*, *e.g*., *In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 676-77 (S.D. Tex. 2005) (criticizing this paradigm).  In this way, counsel often effectively "inflate[d] the number of Plaintiffs and claims [in the MDL] in order to overwhelm the Defendants and the judicial system," while then hoping to exploit the sheer volume of alleged cases involved to prevent genuine "examin[ation of] the merits of each individual claim in the usual manner."  *Id*. at

---

plaintiff contracted diabetes before taking Seroquel, etc.).  Many potentially dispositive motions AstraZeneca intends to file may not be ripe without case-specific discovery from plaintiffs and their physicians, as AstraZeneca has explained.  *See* AstraZeneca's Memorandum Regarding "Dispositive Motions" In Response To Paragraph 5 Of The Order Dated March 7, 2007 (filed April 10, 2007).  These important legal issues should be determined here, by this Court, on a coordinated basis – just as they have been resolved in the past by other MDL courts.

676.  Yet this practice and its "obvious motivation" – "overwhelming the system to prevent examination of each individual claim and to extract mass settlements" on an *in terrorem* basis – has been exposed and condemned as "vexatious" and, at times, "sanctionable."  *Id*. at 676-78.  This Court should not buy into that paradigm.  Case-specific discovery should go forward in this MDL, and soon.

## II.   ARGUMENT

### A.   AstraZeneca Has The Indisputable Right To Take Affirmative Discovery From All Plaintiffs

Discovery is necessarily a "two-way street."  Transcript of March 2, 2007 Conference, at 100:20-21, 101:2; *see also Warius v. Oregon*, 412 U.S. 470, 475 (1973) ("discovery must be a two-way street").  Indeed, "the fact that a party is conducting discovery, whether by deposition or otherwise, does *not* operate to delay any other party's discovery."  Fed. R. Civ. Proc. 26(d) (emphasis added); *accord*, 8 C.A. Wright, A.R. Miller & R.L. Marcus, FEDERAL PRACTICE & PROCEDURE: CIVIL 2D § 2047, at p. 593 (1994).

If only one or two plaintiffs were suing AstraZeneca, there would be no question that both the plaintiffs and AstraZeneca would be entitled to reciprocal discovery. [4]  Indeed, in the three Seroquel cases filed in this District, the Court's rules allowed the parties equal and reciprocal rights to conduct affirmative discovery and, thus, AstraZeneca's right to case-

---

[4]   It would be unheard of to permit only plaintiff to take discovery, or even to order that plaintiff's discovery was entitled to priority and completion before AstraZeneca could begin discovery about plaintiff.  The Court would surely reject out of hand any argument that plaintiff should be permitted to obtain millions of AstraZeneca documents and to depose dozens of AstraZeneca witnesses, while AstraZeneca was precluded from deposing plaintiff, her physicians, and other relevant fact witnesses.

specific discovery was recognized.[5]  AstraZeneca's rights to equal reciprocal discovery are not extinguished merely because plaintiffs' counsel (through internet advertising) have signed up thousands of allegedly injured individuals and filed complaints on their behalf.  On the contrary, the sheer number of cases in this MDL make it even more critical to get started soon with the case-specific discovery that must be conducted before any of these cases could be ready for trial or other resolution.

**B.**     **The Alternative To MDL Case-Specific Discovery Is Exactly The Sort Of Procedural Chaos, Lack of Coordination, And Inefficiency That This MDL Was Created To Prevent**

Failure to conduct case-specific discovery in the MDL might make it easier to administer this MDL, but it would hardly advance the resolution of the overall Seroquel litigation.  Whatever case-specific discovery is not done here will of necessity have to be done elsewhere.  After remand, a series of uncoordinated "mini-MDLs" will arise in district courts across the country, as these courts separately try to manage the large volume of pre-trial discovery work that must be done before dispositive motions can be filed or cases can be tried.[6]  But that is precisely the sort of procedural chaos, lack of coordination and inefficiency that the JPML's creation of this MDL was designed to prevent.  Instead of leading the way in the just adjudication of these Seroquel actions by rendering the legal rulings that shape and guide all of the cases now coordinated in this MDL, this Court will

---

[5]      *See* Case Management Report form, available at http://www.flmd.uscourts.gov.

[6]      Despite the JPML's creation of this MDL, the scattershot effect of this litigation upon remand would spawn a series of wholly uncoordinated proceedings.  Disparate courts across the country would face similar procedural and substantive challenges without this Court's considered guidance, thereby leading to inconsistent requirements and procedures as well as conflicting rulings on the same or similar issues.

have relegated itself to a diminished judicial role, rather than performing the proper role of

the MDL court, while shifting to other courts the burden of resolving many fundamental

questions. This Court's MDL legacy will be one of missed opportunities, failure to manage

the litigation to eliminate claims that are factually and legally meritless, and a wholesale

remand of insufficiently developed cases that are years away from ever being ready for trial

and still require virtually all case-specific pretrial discovery and motion practice to be

performed.

      C.      **<u>AstraZeneca Is Entitled To Case-Specific Discovery From At Least A Significant Number Of Plaintiffs In This MDL</u>**

      The oversight of case-specific discovery is a vital part of an MDL court's function.

In addition to "consolidated" proceedings, MDL transferee courts are responsible for

"coordinated" proceedings. 28 U.S.C. § 1407(a); *accord*, *Lexecon Inc. v. Milberg Weiss

Bershad Hynes & Lerach*, 523 U.S. 26, 34 (1998) (authority of MDL transferee courts to

manage "coordinated" proceedings is construed broadly and not limited to litigation of

"identical issues on common evidence"). A "proceeding that relates only to a single

individual's case or claim can nonetheless be coordinated," and MDL courts commonly

adopt procedures – including overseeing "case-specific" proceedings and discovery – that

facilitate the determination of issues that "overlap" in multiple cases, even if not common to

all cases in the MDL. *In re Patenaude*, 210 F.3d 143, 145 (3d Cir. 2000); *see also Lexecon*,

523 U.S. at 34. In fact, coordinated case-specific discovery – including discovery of

individual plaintiffs, their physicians, and in many cases also their proposed experts – has

been coordinated by the overwhelming majority of MDL courts in pharmaceutical or medical

device litigation, including those in the *Zyprexa*, *Bextra/Celebrex*, *Baycol*, *Welding Fume*, *Silica*, *St. Jude*, *PPA*, *Rezulin*, *Diet Drug*, *Bone Screw*, *Fosamax*, and *Aredia* MDLs.[7]

Some MDL transferee courts have refused to remand cases until full case-specific discovery was completed in *every* case in the MDL,[8] while others have ordered case-specific discovery in a *substantial subset* of cases pending in the MDL (before then considering whether to require such discovery in all remaining MDL cases prior to remand).[9]  In either

---

[7]     *See*, *e.g.*, *In re Bextra and Celebrex Marketing, Sales Practices and Prods. Liab. Litig.* (MDL No. 1699), PTO 18, ¶¶ 2–4 (N.D. Cal. Nov. 17, 2006); *In re Fosamax Prods. Liab. Litig.* (MDL No. 1789), CMO 3, ¶ 8 (S.D.N.Y. Nov. 1, 2006); *In re Welding Fume Prods. Liab. Litig.* (MDL No. 1535), 2006 U.S. Dist. LEXIS 64077 (N.D. Ohio Aug. 28, 2006); *In re Aredia and Zometa Prods. Liab. Litig.* (MDL No. 1760), CMO, §§ X–XI (M.D. Tenn. Jul. 28, 2006); *In re Baycol Prods. Liab. Litig.* (MDL-1431), PTO 149 (D. Minn. Feb. 8, 2006); *In re Zyprexa Prods. Liab. Litig.* (MDL No. 1596), CMO 4, § VI (E.D.N.Y. Aug. 18, 2004), CMO 18 (Jul. 27, 2006); *In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 576-79 (S.D. Tex. 2005); *In re St. Jude Medical Inc. Silzone Heart Valves Prods. Liab. Litig.* (MDL No. 1396), PTO 20, ¶ 1(E) (D. Minn. Sept. 9, 2002); *In re Rezulin Prods. Liab. Litig.* (MDL No. 1348), PTO 2, ¶ 2.1 (S.D.N.Y., amended Dec. 13, 2002), PTO 4, ¶ 3 (Dec. 5, 2000), and PTO 82, ¶¶ 1-2 (Apr. 29, 2002); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.* (MDL No. 1407), Final Pretrial Order, § III (B) (W.D. Wash. Dec. 13, 2004), CMO 17C, at 3 (June 23, 2004); *In re Diet Drugs Prods. Liab. Litig.* (MDL No. 1203), PTO 292 (E.D. Pa. Sept. 24, 1998), PTO 417, ¶¶ 6-8 (Jan. 6, 1999); *In re Orthopedic Bone Screw Prods. Liab. Litig.* (MDL No. 1014), 1998 U.S. Dist. LEXIS 21857, at *17-19 (E.D. Pa. Jan. 12, 1998).  The unpublished illustrative orders are attached as exhibits to the Appendix accompanying this Motion.

[8]     *See*, *e.g.*, *Baycol*, PTOs 149 and 156 (requiring completion of case-specific fact and expert discovery prior to remand) (included in Appendix); *Bone Screw*, 1998 U.S. Dist. LEXIS 21857, at *17-19 (requiring, prior to remand, all case-specific discovery completed and each plaintiff to provide one case-specific expert report on injury and causation); *PPA*, CMO 17C, at 3 (requiring completion of case-specific fact discovery prior to remand) (included in Appendix); *PPA*, Final Pretrial Order, § III (B) (same) (included in Appendix); *Diet Drugs*, PTO 292 & PTO 417, ¶¶ 6-8 (requiring all case-specific fact discovery and medical expert discovery completed before any remand) (included in Appendix).

[9]     *See*, *e.g.*, *Baycol*, (MDL No. 1431), PTO 89 (D. Minn. July 18, 2003) (establishing "pilot program" for case-specific discovery in over 200 cases), PTO 149 (D. Minn.

circumstance, however, every MDL court recognized that conducting case-specific discovery in the MDL was essential to "prepare these cases for early resolution (via motion, settlement, trial, or other resolution tool) in these [MDL] proceedings, consistent with this Court's charge to promote the just and efficient conduct of the civil actions in these proceedings, to assure uniform and expeditious treatment in pretrial procedures, and to avoid undue delay or cost." *Bextra and Celebrex*, PTO 18, ¶ 2; *see also* n. 7, *supra* (citing cases).

As each of these MDL courts recognized, case-specific discovery enables the transferee court to resolve on dispositive motion important recurring issues of broad applicability in coordinated legal rulings that affect all or a substantial group of cases. *See*, *e.g.*, *Diet Drugs*, 2003 U.S. Dist. LEXIS 18069, at *11; *see also PPA*, CMO 17C at 3 (W.D. Wash. June 23, 2004); *In re Long Distance Telecommunication Litig.*, 612 F. Supp. 892, 903 (E.D. Mich. 1985).[10] Conducting case-specific discovery in this MDL would not only advance this litigation but also ease the otherwise onerous burdens on the remand courts.

Yet another reason to conduct case-specific discovery in the MDL relates to its well-proven docket management function.  AstraZeneca has previously presented information

---

Feb. 8, 2006) (order establishing timetable for case-specific discovery in all cases, including depositions of the plaintiffs, their physicians and other fact witnesses) (included in Appendix); *Welding Fume*, 2006 U.S. Dist. LEXIS 64077, at *15 (initially ordering case-specific discovery in 100 cases); *Bextra and Celebrex*, PTO 18, ¶¶ 2-4 (initially ordering case-specific discovery in at least 45 cases) (included in Appendix).

[10] AstraZeneca has already submitted its views on dispositive motion practice in this MDL.  *See* AstraZeneca's Memorandum Regarding "Dispositive Motions" In Response To Paragraph 5 Of The Order Dated March 7, 2007 (filed April 10, 2007).  Plainly, this Court is best positioned to evaluate and rule upon critical substantive, procedural and evidentiary issues that apply broadly to all or many cases pending in this MDL.  There will be very few dispositive motions until the Court allows significant case-specific discovery.

9

about the *Baycol* MDL and other pharmaceutical mass torts, but this Court need look no further than what has already happened in *this* MDL: plaintiffs in each of the cases in which case-specific discovery was to commence – the three cases originally filed in this District – dismissed their claims rather than undergo discovery. The same will surely happen in many other cases in response to the mere scheduling of case-specific discovery.

Further still, conducting case-specific discovery in the MDL will educate the Court and the parties as to the real nature of the pending claims and their critical underlying factual content. This will facilitate dispositive motion practice and create at least the *possibility* for meaningful ADR. ADR can only be successful if both sides go into the process with a realistic understanding of the underlying facts and ultimate settlement value, if any, of these cases. Thus, ADR before case-specific discovery would be a waste of time and resources.

In short, this Court should commence case-specific discovery soon. Only this Court can ensure that the procedures for such discovery are uniform, and can oversee that discovery in a comprehensive and efficient manner. *See*, *e.g.*, *Bone Screw*, 1998 U.S. Dist. LEXIS 21857, at *17-*19 (overseeing case-specific discovery in MDL to increase efficiencies).

### D.     There Are No Compelling Reasons For Delaying Case-Specific Discovery

There appear to be three principal concerns about conducting case-specific discovery in the MDL: (1) plaintiffs' counsel wish to avoid the burden of case-specific discovery in all, or even some, of the thousands of cases they have filed; (2) they believe that Plaintiff Fact Sheets and medical records provide AstraZeneca with all the information that it needs for ADR purposes and to litigate the cases in the MDL; and (3) they posit that, because there is so much of it to be done, no case-specific discovery could occur in the MDL without

jeopardizing the Court's goal of wrapping up the MDL in two years. *None* of these concerns withstands scrutiny.

      <ins>Case-specific discovery imposes no "undue burden" on Plaintiffs' counsel</ins>: Plaintiffs' counsel should not be allowed to oppose AstraZeneca's right to case-specific discovery in this MDL on the ground that they lack sufficient attorney resources to conduct that discovery. Indeed, Plaintiffs' counsel have an ethical obligation to control their workload, and to take on only as many cases as they can diligently and competently handle: every "lawyer's workload" must be "controlled so that each matter can be handled with diligence and competence." Tex. Discipl. R. of Prof. Conduct 1.01, com. 6; *accord*, Fla. Stat. Ann. Bar Rule 4-1.3 & Com.; ABA Model Rules of Prof. Conduct 1.3 & com. 2[11]; *see also Mulkey v. Meridian Oil Inc.*, 143 F.R.D. 257, 261 (W.D. Okla. 1992) (imposing sanctions and condemning plaintiff attorney "practice of actively seeking new clients when time, resources, and/or competence are not available to handle the filed actions of existing clients"). If plaintiffs' counsel cannot diligently represent every client they signed up throughout all aspects of the litigation – including case-specific discovery – they must either find new or additional counsel for some of their clients, or dismiss some of their cases without prejudice (and plaintiffs' counsel also ought to stop advertising for new plaintiffs if they cannot represent their existing clients). *See, e.g.*, http://www.bpblaw.com/seroquel.html (included in Appendix). Under no circumstances should counsel be allowed to use their own filing of thousands of cases as an argument to deny or delay AstraZeneca's right to discovery. *In re*

---

[11]      It is well settled that "lawyers [must] monitor their workloads and *decline new clients* if taking them on would create overloads." ABA/BNA Lawyers' Manual of Professional Conduct Ethical Opinions (Jan. 24, 1996) (included in Appendix).

*Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 676-77 (S.D. Tex. 2005) (recognizing that "complying with [MDL] discovery orders related to thousands of Plaintiffs can be an overwhelming undertaking," but emphasizing that "at the root of the unwieldy nature of this MDL, including the difficulty in responding fully to discovery, is the fact that Plaintiffs' counsel . . . filed scores of claims without a reliable basis for believing that their clients had a compensable injury" in the "hopes of extracting mass nuisance-value settlements").

> Plaintiff Fact Sheets are insufficient to litigate or evaluate claims:  It is preposterous to suggest that case-specific discovery is unnecessary because AstraZeneca has received Plaintiff Fact Sheets ("PFSs").  PFSs are just the *first step* in plaintiffs' discovery obligations: they require each plaintiff to provide only the most rudimentary information about his or her product use, prescription history, medical background, and claimed injury.[12]  As a practical matter, PFSs (if accurate and complete) may tell AstraZeneca where to look, *i.e.*, where to focus additional discovery resources to obtain the key information relevant to the claims and defenses in these cases.  But PFSs do not provide – and were not designed to provide – AstraZeneca with sufficient information to litigate these cases, prepare dispositive motions in the MDL, and evaluate their merits (if any) for ADR purposes.[13]  Moreover, the woefully inadequate nature of the PFS responses received to date only confirms the need for further

---

[12]   PFSs are akin to initial interrogatories.  Just as it would be absurd to tell plaintiffs that if AstraZeneca answers interrogatories, it will not have to put up its people for depositions, so is it preposterous to suggest that because plaintiffs have provided PFSs, AstraZeneca does not get to depose them or their doctors.

[13]   To cite but one example, PFSs do not contain information about the prescriber's awareness of the risks associated with Seroquel and evaluation of those risks in deciding to prescribe the drug for any particular plaintiff.  At most, some (but not all) PFS responses here contain only the *name* of the prescriber; hence, additional discovery of that prescriber is needed to get at this vital information.

case-specific discovery here – both for purposes of motion practice and any possible ADR. AstraZeneca not only has the right to depose plaintiffs (and others) as to the information included in the PFSs, but if AstraZeneca gets only PFSs without further case-specific discovery – which the PFSs are designed to facilitate (not substitute for) – AstraZeneca cannot evaluate these disparate actions for purposes of any ADR, and cannot be expected to litigate these cases.

<u>Case-specific discovery will advance the Court's remand goals</u>:  The Court has suggested that it intends to complete this MDL within two years.  Prompt launching of case-specific discovery is not incompatible with that goal.  If such discovery begins *soon* in a significant number of cases, much can be accomplished, and many cases resolved or dismissed, even within the Court's speedy timetable.  The sooner discovery begins, the more case-specific discovery can be accomplished within that two-year period and the less burden will be shifted to the other district courts around the country upon remand.  Indeed, the more case-specific discovery allowed, the fewer cases will have to be remanded at all, and the more opportunities this Court will have to issue rulings that will be instructive in the remaining cases upon remand.

Moreover, as other MDL courts have consistently found, initial goals for the closing of an MDL typically give way to the overriding and compelling interests in maintaining jurisdiction over the actions until additional critical coordinated discovery and motion practice has been conducted (instead of prematurely remanding cases to be handled by *de facto* second mini-MDLs around the country).  For instance, when plaintiffs in the behemoth *Diet Drug* MDL argued for a sweeping remand on the ground that general discovery from

defendants was completed and only case-specific discovery remained, the MDL court rejected the temptation to clear its docket.  *See In re Diet Drugs Prods. Liab. Litig.* (MDL No. 1203), 2003 U.S. Dist. LEXIS 18069, at *12 (E.D. Pa. Aug. 25, 2003).  Instead of dumping many thousands of unprepared cases upon transferor courts on remand, the MDL court recognized the importance of preserving the MDL – because it was "clear that consolidated or coordinated pretrial proceedings involving common facts ha[d] not yet run their course,"  *id*. at *6, and "the continued administration of discovery and other pretrial matters through the MDL process will provide much needed consistency and reduce duplication of effort and expense."  *Id*. at *7.  But even if this Court insists on ending the MDL in two years, conducting as much case-specific discovery as possible within that time still creates efficiencies, and ensures that at least some cases will not be remanded until they have withstood the test of meaningful discovery.

III.   **CONCLUSION**

This Court's mandate is to facilitate not only the "efficient," but also the "just," management of this litigation.  28 U.S.C. § 1407(a).  Because AstraZeneca indisputably has the right *at some point* to case-specific discovery in each of the cases presently before this Court for coordination purposes, it should be entitled the opportunity to start to conduct case-specific discovery in all or at least some substantial number of cases *in this MDL* very promptly.  Coordination of significant and meaningful case-specific discovery in the MDL is necessary for the parties and this Court to understand the true factual content of these actions – many (if not all) of which may be factually and legally meritless and thus have a settlement value of zero, *regardless* of whether discovery from AstraZeneca in the abstract does or does

14

not support plaintiff counsel's accusations of wrongdoing.  Management of this MDL without permitting AstraZeneca to conduct any further case-specific discovery would not only leave undecided many common issues that otherwise could be addressed here on a coordinated basis, but would also maximize the burden on remand courts and necessitate *de facto* successor mini-MDLs to perform the work avoided here.

For the foregoing reasons, this Court should grant AstraZeneca's Motion Requesting Schedule For Case-Specific Discovery And Alternative Dispute Resolution.

Respectfully submitted on this the 2nd day of May, 2007.

DATED:  May 2, 2007

/s/ Fred T. Magaziner
Fred T. Magaziner
Shane T. Prince
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA  19103
Telephone: (215) 994-4000
Facsimile: (215) 994-2222
fred.magaziner@dechert.com

*Counsel for AstraZeneca Pharmaceuticals LP*
*and AstraZeneca LP*

**CERTIFICATION OF COUNSEL PURSUANT TO M.D. FLA. L.R. 3.01(g)**

Prior to filing this Motion, counsel for AstraZeneca conferred with counsel for the plaintiffs in a good faith attempt to resolve the issues presented in the Motion. Plaintiffs' counsel informed counsel for AstraZeneca that plaintiffs oppose AstraZeneca's Motion.

/s/ Shane T. Prince

## CERTIFICATE OF SERVICE

I hereby certify that, on May 2, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the non-CM/ECF participants listed on the attached Service List.


/s/ Elliot M. Gardner

**SERVICE LIST**
(As of December 15, 2006)

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No. 1769**

| | |
|---|---|
| Paul J. Pennock, Esq.<br>Michael E. Pederson, Esq.<br>Weitz & Luxenberg, P.C.<br>180 Maiden Lane - 17th Floor<br>New York, NY 10038<br>Telephone: (212) 558-5500<br>Ppennock@weitzlux.com<br>MPederson@weitzlux.com | Camp Bailey, Esq.<br>Michael W. Perrin, Esq.<br>Fletcher Trammell, Esq.<br>Bailey Perrin Bailey LLP<br>The Lyric Centre<br>440 Louisiana, Suite 2100<br>Houston, TX 77002<br>Telephone: (713) 425-7240<br>cbailey@bpblaw.com<br>mperrin@bpblaw.com |
| Larry Roth, Esq.<br>Law Offices of Larry M. Roth, P.A.<br>Post Office Box 547637<br>Orlando, FL 32854-7637<br>Telephone: (407) 872-2239<br>LROTH@roth-law.com | Tommy Fibich, Esq.<br>Fibich, Hampton & Leebron, L.L.P.<br>1401 McKinney, Suite 1800<br>Five Houston Center<br>Houston, TX 77010<br>Telephone: (713) 751-0025<br>tfibich@fhl-law.com |
| Matthew F. Pawa, Esq.<br>Law Offices of Matthew F. Pawa, P.C.<br>1280 Centre St., Suite 230<br>Newton Centre, MA 02459<br>Telephone: (617) 641-9550<br>Mp@pawalaw.com | John Driscoll, Esq.<br>Brown & Crouppen, PC<br>720 Olive St.<br>St. Louis, MO 63101<br>Telephone: (314) 421-0216<br>Jdriscoll@brownandcrouppen.com<br>asmith@brownandcrouppen.com<br>blape@brownandcrouppen.com |
| Keith M. Jensen, Esq.<br>Jensen, Belew & Gonzalez, PLLC<br>1024 North Main<br>Fort Worth, TX 76106<br>Telephone: (817) 334-0762<br>kj@kjensenlaw.com | Scott Allen, Esq.<br>Cruse, Scott, Henderson & Allen, L.L.P.<br>2777 Allen Parkway, 7th Floor<br>Houston, Texas 77019<br>Telephone: (713) 650-6600<br>sallen@crusescott.com |

| | |
|---|---|
| Matthew E. Lundy, Esq.<br>Lundy & Davis, LLP<br>333 North Sam Houston Parkway East<br>Suite 375<br>Houston, TX 77060<br>Telephone: (281) 272-0797<br>mlundy@lundydavis.com | W. Todd Harvey, Esq.<br>Whatley Drake, LLC<br>2323 2nd Avenue North<br>Birmingham, AL 35203<br>Telephone: (205) 328-9576<br>THARVEY@whatleydrake.com<br>ccf@whatleydrake.com |
| Lawrence J. Gornick, Esq.<br>William A. Levin, Esq.<br>Dennis J. Canty, Esq.<br>Levin Simes Kaiser & Gornick LLP<br>44 Montgomery Street, 36th Floor<br>San Francisco, CA 94104<br>Telephone: (415) 646-7160<br>lgornick@lskg-law.com<br>dcanty@lskg-law.com<br>llsimes@levins-law.com<br>jkaiser@lskg-law.com<br>echarley@lskg-law.com<br>ddecarli@lskg-law.com<br>bsund@lskg-law.com<br>astavrakaras@lskg-law.com | Gregory P. Forney, Esq.<br>Shaffer Lombardo Shurin<br>911 Main Street, Suite 2000<br>Kansas City, MO 64105<br>Telephone: (816) 931-0500<br>gforney@sls-law.com<br>rbish@sls-law.com<br>***Attorney for Defendant,***<br>***Marguerite Devon French*** |
| Robert L. Salim, Esq.<br>Robert L. Salim Attorney at Law<br>P.O. Box 2069<br>Natchitoches, LA 71457-2069<br>Telephone: (318) 352-5999<br>robertsalim@cp-tel.net | Eric B. Milliken, Esq.<br>3 Sir Barton Ct.<br>Newark, DE 19702<br>***Pro Se*** |

| | |
|---|---|
| Justin Witkin, Esq.<br>Ken Smith, Esq.<br>Aylstock, Witkin & Sasser, PLC<br>4400 Bayou Boulevard<br>Suite 58<br>Pensacola, FL 32503<br>Telephone: (850) 916-7450<br>Jwitkin@AWS-LAW.com<br>ablankenship@aws-law.com<br>aburrus@aws-law.com<br>asmith@aws-law.com<br>ksmith@aws-law.com<br>noverholtz@aws-law.com<br>jsafe@aws-law.com | Louisiana Wholesale Drug Co. Inc.<br>C/O Gayle R. White<br>Registered Agent<br>Highway 167N<br>Sunset, LA 70584<br>***Pro Se*** |
| Aaron C. Johnson, Esq.<br>Summers & Johnson<br>717 Thomas<br>Weston, MO 64098<br>Telephone: (816) 640-9940<br>firm@summersandjohnson.com | Catherine Solomon<br>(current address unknown)<br>***Pro Se*** |
| Todd S. Hageman, Esq.<br>Simon and Passanante, PC<br>701 Market St., Suite 1450<br>St. Louis, MO 63101<br>Telephone: (314) 241-2929<br>thageman@spstl-law.com | Randy Niemeyer<br>22442 Pike 309<br>Bowling Green, MO 63334-5209<br>***Pro Se*** |
| Thomas F. Campion, Esq.<br>Heidi E. Hilgendorff, Esq.<br>Drinker Biddle & Reath, LLP<br>500 Campus Drive<br>Florham Park, New Jersey 07932-1047<br>Telephone: (973) 360-1100<br>Thomas.Campion@dbr.com<br>Heidi.Hilgendorff@dbr.com<br>***Attorneys for Defendants Janssen Pharmaceutical Products and Johnson & Johnson Co.*** | Michael Davis, Esq.<br>James Mizgala, Esq.<br>Sidley Austin LLP<br>Bank One Plaza<br>One South Dearborn Street<br>Chicago, IL 60603<br>Telephone:  (312) 853-7711<br>mdavis@sidley.com<br>jmizgala@sidley.com<br>***Attorneys for Defendants AstraZeneca LP and AstraZeneca Pharmaceuticals, LP*** |

| | |
|---|---|
| Elizabeth Raines, Esq.<br>Baker, Sterchi, Cowden & Rice, LLC<br>2400 Pershing Road, Suite 500<br>Kansas City, MO 64108<br>Telephone: (816) 471-2121<br>raines@bscr-law.com<br>***Attorneys for Defendant AstraZeneca, PLC*** | Timothy Reese Balducci, Esq.<br>The Langston Law Firm, PA<br>P.O. Box 787<br>100 South Main Street<br>Booneville, MS 38829-0787<br>Telephone: (662) 728-3138<br>tbalducci@langstonlaw.com |
| Kenneth W. Bean, Esq.<br>Sandberg, Phoenix & von Gontard<br>One City Centre<br>15th Floor<br>St. Louis, MO 63101-1880<br>Telephone: (314) 231-3332<br>kbean@spvg.com<br>***Attorney for Defendant Dr. Asif Habib*** | Robert L. Ciotti, Esq.<br>Carlton Fields, P.A.<br>4221 W. Boy Scout Boulevard<br>Suite 1000<br>Tampa, FL 33607-5736<br>Telephone: (813) 223-7000<br>rciotti@carltonfields.com<br>***Attorney for Defendants AstraZeneca Pharmaceuticals, LP, and AstraZeneca LP*** |
| Aaron K. Dickey, Esq.<br>Goldenberg and Heller, PC<br>P.O. Box 959<br>2227 S. State Road 157<br>Edwardsville, IL 62025<br>Telephone: (618) 650-7107<br>aaron@ghalaw.com | Jona R. Hefner, Esq.<br>3441 W. Memorial, Suite 4<br>Oklahoma City, OK 73134-7000<br>Telephone: (405) 286-3000<br>attorneyokc@hotmail.com |
| Mark P. Robinson, Jr., Esq.<br>Robinson, Calcagnie & Robinson<br>620 Newport Center Drive, 7th Floor<br>Newport Beach, CA 92660<br>Telephone: (949) 720-1288<br>mrobinson@robinson-pilaw.com | David P. Matthews, Esq.<br>Abraham, Watkins, Nichols, Sorrels,<br>Matthews & Friend<br>800 Commerce Street<br>Houston, TX 77002-1776<br>Telephone: (713) 222-7211<br>dmatthews@abrahamwatkins.com<br>agoff@abrahamwatkins.com<br>irhoades@abrahamwatkins.com<br>jwebster@abrahamwatkins.com |

| | |
|---|---|
| Robert A. Schwartz, Esq.<br>Bailey & Galyen<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744<br>bschwartz@galyen.com | Mary B. Cotton<br>John D. Giddens, P.A.<br>226 North President Street<br>P.O. Box 22546<br>Jackson, MS 39225-2546<br>Telephone:  (601) 355-2022<br>betsy@law-inc.com |
| Salvatore M. Machi<br>Ted Machi & Associates PC<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744 | Howard Nations<br>Lori A. Siler<br>Howard L. Nations Attorney At Law<br>4515 Yoakum Blvd.<br>Houston, TX 77006-5895<br>Telephone: (713) 807-8400<br>nations@howardnations.com |
| David Dickens<br>Miller & Associates<br>105 North Alfred Street<br>Alexandria, VA  22314-3010<br>(703) 519-8080<br>ddickens@doctoratlaw.com | Scott Burdine, Esq.<br>Hagans Burdine Montgomery<br>Rustay & Winchester, P.C.<br>3200 Travis, Fourth Floor<br>Houston, TX  77006<br>Telephone:  (713) 222-2700<br>sburdine@hagans-law.com |
| Pete Schneider, Esq.<br>Grady, Schneider & Newman, L.L.P.<br>801 Congress, 4th Floor<br>Houston, TX  77002<br>(713) 228-2200<br>pschneider@gsnlaw.com | Lizy Santiago, Esq.<br>Abraham, Watkins, Nichols,<br>Sorrels, Matthews & Friend<br>800 Commerce Street<br>Houston, TX  77002-1776<br>(713) 222-7211<br>lsantiago@abrahamwatkins.com |

Fred T. Magaziner
Marjorie Shiekman
A. Elizabeth Balakhani
Shane T. Prince
Eben S. Flaster
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA  19103
(215) 994-4000
fred.magaziner@dechert.com
shane.prince@dechert.com
marjorie.shiekman@dechert.com
eben.flaster@dechert.com
elizabeth.balakhani@dechert.com