```
            ABA/BNA Lawyers' Manual of Professional Conduct
                          Current Reports
                         ETHICS OPINIONS
                        January 24, 1996
```

Public Interest

   LEGAL SERVICES ORGANIZATIONS--

   Lawyers funded by Legal Services Corp. must prepare for imminent substantial reduction in funding by notifying both existing and future clients of new practice restrictions, withdrawing from and declining some representations that entail conflict with restrictions, seeking alternative funding or replacement counsel when possible, and obtaining clients' consent, when ethically proper, to limiting scope of representations to comply with restrictions.

      (ABA Standing Committee on Ethics and Professional Responsibility, Formal Opinion 96-399, 1/18/96)

   Digest of Opinion: Pending federal legislation would reduce funding to the Legal Services Corp. by at least 25 percent and limit the services that LSC funded lawyers may provide, regarding whom an LSC grantee may represent, the subject matter of representations, and the manner in which representation may be pursued. This committee believes it is important to begin preparing for the monumental changes in legal services funding for the indigent that seem inevitable.

   Existing Clients. ABA Formal Opinion 347 (1981) sets forth the three ethical obligations of legal services lawyers facing reductions in funding; the present opinion expands upon that discussion. First, under Model Rules 1.4(a) and (b) the lawyer must give all clients adequate notice of the impending changes and how they may affect the clients' representations, even though this may produce a flood of calls and visits from concerned clients.

   Second, funding reductions may necessitate withdrawal from many pending matters, and lawyers will need to structure their priorities for the retention of active matters. However, the obligation to maintain professional independence means that legal services lawyers cannot decide which clients to keep and which to let go simply on the basis of whether abandoning certain cases will facilitate future funding.

   Third, efforts should be made to arrange for alternative funding or substitution of lawyers to handle pending matters. Finding competent substitute representation is the easiest way to avoid conflicts that will arise between the funding restrictions and existing representations, since withdrawal is permitted under Rule 1.16(b) if it can be accomplished without material effect on the client's interests. Substitute counsel must, of course, be competent,

          Copyright © 2004 American Bar Association and The Bureau of Nation-
               al                                        Affairs, Inc.

and court approval must be obtained for withdrawal.

Legal services lawyers also have ethical obligations to explore whether continued representation is possible and also what avenues for obtaining alternative representation exist. A representation cannot be terminated solely because it would violate the funding restrictions. Further, each legal services office must make its own determination whether the greater good is served by forgoing LSC funding and maintaining restricted representations or by withdrawing from prohibited matters.

Legal services lawyers must communicate the new restrictions to every client, state that a change in the client's circumstances (such as incarceration or immigrant status) may result in termination of legal services, and obtain written agreement to abide by those restrictions. It is permissible to ask a potential client to consent to possible termination, unless under Rule 1.7(b)(1) it would adversely affect the representation. Under Rules 1.2, 1.7(b), and 2.1, where the lawyer anticipates that funding restrictions will be implicated, the lawyer should advise clients that they would be better off with another lawyer, rather than seek the clients' consent to continue. Where there is only a small chance that practice restrictions will adversely affect a representation, the lawyer may ask the client to agree prospectively to restrictions on the scope of the representation, although consent must be fully informed under the circumstances, including the client's lack of sophistication in legal matters. The lawyer must abide by a client's refusal to consent to limitations on the representation and cannot withdraw solely because the client refuses consent.

Future Clients. Rules 1.1 and 1.3 require lawyers to monitor their workloads and decline new clients if taking them on would create overloads. Legal services lawyers must implement screening devices to ensure that new representations will not violate the funding restrictions. The lawyer should have each new client sign an agreement limiting the scope of the representation to avoid conflict with the new restrictions, and the lawyer may decline the representation if the client refuses to consent. However, consent may not be sought if the conflict would adversely affect the client or so limit the representation as to preclude its effectiveness. In such situations the lawyer should decline the representation pursuant to Rule 1.16(a)(1).

Mandated Pre-Litigation Disclosures. The proposed legislation would require legal services lawyers, when filing a complaint, to identify the client by name and to submit a written statement in which the plaintiff enumerates the facts on which the complaint is based. The required disclosures could conflict with the lawyer's obligations under Rule 1.6.

The lawyer must consult with existing clients about these requirements, including the client's right to refuse to reveal his identity and the consequences of each available course of action, and whether the lawyer will be able to continue the representation or must withdraw from it to maintain

Copyright © 2004 American Bar Association and The Bureau of National Affairs, Inc.

funding. Under Rule 1.7(b) the lawyer may not ask for consent to a limitation on the representation if it would be adversely affected.

The lawyer must advise future clients that they may more easily proceed anonymously if represented by a non-LSC funded lawyer. Where court permission to proceed anonymously is denied, the lawyer may not ask the client's consent to proceed with the litigation if the lawyer believes that to do so would adversely affect the client's representation. However, if the client gives informed consent to continue litigation with disclosure of his name, revelation of the client's name in a complaint is permissible.

Disclosure of the statement of facts required by the proposed legislation is not "impliedly authorized" under Rule 1.6 simply by a client's decision to engage in litigation. Therefore, the lawyer may not make such a statement available to federal auditors without the client's express consent. LSC funded lawyers must use the same caution in deciding whether to seek consent as they will with regard to disclosure of the client's identity.

11 LMPC 26 d10

END OF DOCUMENT

Copyright © 2004 American Bar Association and The Bureau of National Affairs, Inc.



