# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

IN RE:  Seroquel Products          **Case No. 6:06-md-1769-Orl-22DAB**
       Liability Litigation                    **(ALL CASES)**

_____

## MDL PLAINTIFFS' COMBINED MOTION AND MEMORANDUM FOR IMPLEMENTATION OF THE COURT ORDER OF JUNE 11, 2007 ON CASE SPECIFIC DISCOVERY AND ALTERNATIVE DISPUTE RESOLUTION

The MDL Plaintiffs, by and through their undersigned co-lead counsel, hereby file this Combined Motion and Memorandum pursuant to M.D.L.R. 3.01(a) for Implementation of the Court Order of June 11, 2007 (Doc. 225) granting in part and denying in part the Defendants, ASTRAZENECA PHARMACEUTICALS LP and ASTRAZENECA LP's, (hereinafter collectively "AZ" or "Defendants") Motion Requesting Schedule for Case-Specific Discovery and Alternative Dispute Resolution (Doc. 204), with certification of compliance pursuant to M.D.L.R. 3.01(g).

The purpose of this Motion and Combined Memorandum is to establish a procedural framework intended to make this unprecedented and massive case specific discovery process as efficient as it can be made, given its magnitude.

Accordingly, the MDL Plaintiffs would recommend to this Court the following procedural framework for the implementation of its order of June 11, 2007.  As contemplated by Fed. R. Civ. P. 1 and 26, this framework accomplishes case specific discovery in the most cost, time and resource efficient manner that is fair to all parties.  It does not punish Plaintiffs for filing lawsuits, nor to

deprive any Plaintiff of their due process rights and opportunity to have their "day in court."   (By separate motion, Plaintiffs also seek to provide for the implementation, consistent with the case discovery previously stated by Defendants as prerequisite to mediation, an ADR procedure in which AZ has otherwise refused to engage without first obtaining their case specific discovery.)

<u>**OVERVIEW OF PLAINTIFFS' PROPOSALS**</u>

The Plaintiffs propose the following framework, schedule and orderly implementation of the Court's Order of June 11, 2007 (Doc. 2250):

1.   **Selection Date one (1)  month in advance of the Discovery Month**.

The parties have agreed and would propose that for the cases selected August 1, 2007, the discovery would be conducted during the month of September not August. This would permit both sides to make schedule adjustments and travel arrangements. Thus, the group selected on September 1, 2007, would have discovery conducted in October, the group selected on October 1, 2007, would have its discovery conducted during November, and so on.

2.   **Plaintiffs for each Discovery Month from same state.**  Plaintiffs propose that all Plaintiffs in each calendar month group shall have the same state of residence and it is respectfully submitted that Plaintiffs should select the states.  This will permit greater efficiency and reduction of travel costs for both sides because the depositions can be grouped.  Plaintiffs would select *Florida* for the August and September Selection Groups (September and October Discovery Month Groups).  On or before August 1, 2007, Plaintiffs will advise the Defendants and the Court of the state for the October 1, 2007  Selection Group and will advise the state for the ensuing groups

2

two (2) months in advance of the selection date.

3.    **Defendants' Fact Sheet (DFS) and Sales Representative Depositions**.  Plaintiffs propose that with their selections the Defendants will provide responses to the proposed Defendant's Fact Sheet (attached as Exhibit "1").  This will provide some of the discovery Plaintiffs require to conduct the case specific depositions (as Plaintiffs argued in opposition to this case specific program, the general discovery against the Defendants is also necessary to conduct case specific discovery without prejudice to the Plaintiffs or need to re-take such depositions).  However, it is simply incontrovertible that the discovery of sales representatives and Defendants' financial involvement with the physician witnesses must be conducted prior to the physician witnesses' depositions.  The proposed DFS and the timelines for its service will allow for this important discovery.  Additionally, on at least 10 days notice, the Plaintiffs can notice and take the deposition of any representative who detailed either or both of the physician witnesses with respect to Seroquel.

4.    **Timing of DFS service.**  Plaintiffs propose that Defendants will serve the completed DFS together with their selection list within 10 days of the Court's and Plaintiffs' selections.

5.    **Physician witness depositions scheduling.**  Plaintiffs propose that Defendants shall set the subpoenaed dates for depositions of the treating and prescribing doctors *in a single case* on the same day, back to back, so that one attorney can handle both depositions in that case.

6.    **Location of Plaintiffs' depositions.**  At the Plaintiff's attorney's choosing, a

3

Plaintiff's deposition may be conducted in the Plaintiff's state of residence, Orlando or the Plaintiff's attorneys' office.  This would not preclude the parties from agreeing to another location.

7.   **Date of Plaintiff's deposition.**  The Plaintiff's deposition date shall be set by mutual agreement of the parties.  Plaintiffs acknowledge that the Defendants want to conduct the Plaintiff's deposition before his/her physician depositions and will provide deposition dates accordingly.

8.   **No contact by defense attorneys with doctors.**  Due to the stringent protections of many States' laws and HIPAA, Defendants' attorneys shall have no communication with the doctors, other than having a process server serve the subpoena for the deposition.

9.   **Procedure for expedited resolution of discovery disputes.**  Plaintiffs request and Defendants agreed that there should be a procedure permitting the parties, if it is entirely unavoidable (i.e. the deposition is ongoing or before the deposition there is insufficient time for a motion), to telephone or email Magistrate Judge Baker regarding issues that might need resolution prior to or during the deposition.  The parties would sparingly use this procedure and only use it to resolve disputes that might result in the parties having to return for supplemental depositions.  Please note that Plaintiffs would object to any proposal by Defendants calling for a Discovery Master.  Plaintiffs' position is that Magistrate Judge Baker has developed an in depth understanding of the issues surrounding discovery in this MDL and that Judge Baker's direct involvement in the case specific discovery plan is crucial.

10.     **No Saturday/Sunday depositions.**  No depositions shall be taken on a Saturday or a Sunday absent agreement of the parties.

11.     **Time limits on depositions.**  As an exception to previous CMOs, no deposition of an individual Plaintiff or their representative shall exceed 5 hours because of the availability of medical records and Plaintiffs' Fact Sheets, and no deposition of a treating physician and/or prescribing physician shall exceed 4 hours (2 hours for each side).

## ARGUMENT

**1.     Selection Date one (1) month in advance of the Discovery Month.**

Plaintiffs respectfully submit that this provision will reduce the chaos that will result from this discovery program.  For example, if a Plaintiff's case is selected by the Defendants or the Court on the first of the month, we would likely be served with Plaintiffs' deposition notices the same day for a date 10 days hence.  Thus, we would have to contact our clients, tell them they are being deposed, tell them where, tell them they have to drop everything and then get them to the deposition, all within that short time period.  That would be, in a word, impossible.  Incredibly, the Defendants have already said on the record that they want this program because they know that these mentally ill patients will feel a burden from depositions and the Plaintiffs won't "show up" for their deposition thus reducing the cases on file.  As outrageous as it is that Defendants want to take advantage of the illnesses upon which they have based their multi-billion dollar drug, the fact is that they are correct: absent a reasonable approach to scheduling the Plaintiffs' depositions, this situation will happen. In addition, attorneys would have to make quick travel arrangements, which on such short notice, with the over-booked status of many flights could also be impossible.  Plus, the cost of such late

5

booked flights could be multiples of a flight booked 30 days in advance.  The same issues will arise with respect to the doctors.  Allowing the Defendants more time to subpoena the doctor for a date that fits in the scheme of the discovery taking place is simply a good idea for all concerned.

However, Plaintiffs remain steadfastly in agreement with Judge Conway that the discovery should be commenced and completed within a single calendar month and we do not seek any modification of this aspect of the Order.  Indeed, we think that this aspect of the Order is a feature central to giving the Plaintiffs some protection from the Defendants' massive, nationwide, collection of law firms.  If they are allowed to commence discovery too early after the selection date (i.e. before 30 days has run) or for longer than the calendar month as ordered by Judge Conway, ALL of the burden of this process will fall on the Plaintiffs' counsel.  If allowed to, Defendants will push out depositions, scattering them over different months, states and cases.  This scenario will cause a myriad of logistical problems and will substantively impact Plaintiffs' counsel's ability to handle these cases.  With a single group focused in one calendar month, both sides can deal with the cases and the rust of memory and confusion will have less impact than if the cases are dragged out and overlapped with other groups.  If allowed, the Defendants will fully engage this "scatter" tactic.  Moreover, having insisted on this program for over six months,  while failing in their promised and court ordered discovery obligations, the Defendants should not now be heard to complain that having to conduct the discovery each month is too burdensome.  The Plaintiffs are ready to proceed as ordered, and the Defendants should be as well.  They say it can be done, so let them serve the doctors with subpoenas and do it, as opposed to not "do it" but instead simply create an extended, enormous discovery program that will inevitably crush the Plaintiffs' counsel who have undertaken to represent these people that no other firms in this country have been willing to represent.

We respectfully submit that our representation of this large number of clients is a unique feature of the Seroquel litigation that perhaps we have not made clear to the Court. The Plaintiffs' firms here do not represent all of these people because we somehow "got them first". We represent such large numbers of clients here because the other national Mass Tort Plaintiffs' firms that do this work either did not want to take on another atypical anti-psychotic litigation or are far too engaged in other cases to pursue Seroquel (for instance Vioxx, Bextra, Celebrex, Ortho Evra, Guidant, ICD, Medtronic ICD, Renu contact lens solution, Accutane, etc.). Therefore, this unprecedented case specific discovery (pre-MDL settlement and not geared toward a trial of cases) is especially burdensome. Indeed, Plaintiffs believe that if this were a more typical situation where dozens, not merely a handful, of Plaintiff firms had cases, the Defendants would not have proposed such a massive discovery plan. This plan is designed to scare Plaintiffs and test the resources and tenacity of the Plaintiffs' law firms, nothing more. The Defendants therefore need a test of their own. If they want to do it, they should be held to a STRICT deadline for getting it done.

2.    **Plaintiffs for each Discovery Month from the same state.**

As indicated, we request that all Plaintiffs in each calendar month group have the same state of residence and that Plaintiffs should be permitted to select the states. This arrangement will permit greater efficiency and reduction of travel costs for both sides because the depositions can be grouped. Plaintiffs would select *Florida* for the August and September Selection Groups (September and October Discovery Month Groups). On or before August 1, 2007, Plaintiffs will advise the Defendants and the Court of the state for the October 1 Selection Group and will advise the state for the ensuing groups two (2) months in advance of the selection date. By allowing Plaintiffs to select the states, it gives Plaintiffs input that will make the process run more smoothly and perhaps achieve

7

some benefit. For example, Plaintiffs have selected Florida as the state for the first two (2) Discovery months. Therefore, in these first groups discovery will be done in cases that might be tried in the instant court. Less substantively, but just as important, is that Plaintiffs counsel can select states based on logistical considerations that will assist in moving the cases along. It will also allow similar substantive law to be applied across all of the cases for that month.

**3.     Defendants' Fact Sheet (DFS)**.

Plaintiffs propose that with Defendants selections the Defendants will provide responses to the proposed Defendant's Fact Sheet (attached as Exhibit 1). This will provide some of the discovery Plaintiffs require to conduct the case specific depositions (as Plaintiffs argued in opposition to this case specific program, the general discovery against the Defendants is also necessary to conduct case specific discovery without prejudice to the Plaintiffs or need to re-take such depositions).

**A.  Learned Intermediary**

Defendants have consistently asserted that the depositions of the treating and prescribing physicians are central and will result in a large number (seemingly hundreds or thousands) of dismissals. This much is true. We agree that the deposition of a prescribing doctor is central to a prescription drug case and the testimony can severely impact either side's position in the case. Therefore, Plaintiffs must have complete unfettered discovery of what contact and involvement the Defendants had with the prescribing doctors and Plaintiffs must have unfettered discovery of the sales representatives who brought this tortious conduct to the prescribing doctors' doorsteps. Frankly, it is incontrovertible that the sales representatives' and Defendants' financial involvement with the physician witnesses must be discovered prior to the physician witnesses' depositions.

8

The first line of defense to a prescription drug case is that the Defendant discharged its duty by informing the prescribing physicians of any risks associated with a medication.  *See Felix v. Hoffmann-LaRoche, Inc.*, 513 So.2d 1319 (1989); see also *Martin v. Hacker*, 83 N.Y.2d 1, 628 N.E.2d 1308, 607 N.Y.S.2d 598 (1993).  Indeed, every Answer filed by AZ in this litigation asserts the Learned Intermediary defense.  As this Court is undoubtedly aware, the approved "label" or Physician's Desk Reference entry for a medication is but one avenue of risk communication, or lack thereof, by a drug company.  In fact, there can be little realistic dispute that the sales representative "detailing" of prescribing physicians can completely "undo" a label from a duty-discharge vantage point.  The day-to-day  in office and in person discussions of what the label purports to say or not say is routinely central to motion and trial evidence.  Nothing could be more relevant than a Seroquel drug representative telling a doctor the company's position on safety and efficacy as compared with other anti-psychotic medications.   In the trenches of fierce competition between AZ, Janssen Phamaceutica (Risperdal) and Eli Lilly (Zyprexa) for mammoth atypical anti-psychotic profits, much was said to doctors and much of what was said was untrue. This sales representative information is irrefutably material and necessary.

Plaintiffs require the information imparted to doctors for the entire period from when a Plaintiff was on the medication to date.  Many states have a continuing duty to warn that impacts the time period over which this discovery must be provided.  See 63A Am. Jur. 2d Products Liability Sec. 1166, listing cases that establish the following states as recognizing post sale duty to warn: Hawaii, Massachusetts, New York, Delaware, Virginia, Indiana, Wyoming, Arizona, Colorado, Iowa, Kansas, Maryland, Michigan, Minnesota, North Carolina, North Dakota, Oklahoma, Pennsylvania, Washington and Wisconsin.  See also *Watkins v. Ford Motor Company*, 190 F.3d

1213 (11th Cir. 1999) (recognizing that Georgia's duty to warn is continuing); *Cover v. Cohen*, 61

N.Y.2d 261, 461 N.E.2d 864, 473 N.Y.S.2d 378 (1984); *Elsroth v. Johnson & Johnson*, (S.D.N.Y.

1988); *Jones v. Lederle Laboratories*, 785 F.Supp. 1123 (E.D.N.Y. 1992).  Indeed, Florida courts

are beginning to recognize a post sale duty to warn.  *See Sta-Rite Industries v. Levey*, 909 So 2d. 901

(Fla. App. 3 Dist. 2005) (finding that a jury could find that prior incidents concerning a defective

swimming pool pump could give rise to liability).  Thus, once a patient is taking Seroquel, AZ's duty

to disclose risks continues.  This duty does not end on the day of the last prescription written by a

Plaintiff's doctor.  These patients  take the drug for months after the last prescription.  Throughout

the usage period, the sales representatives continue their barrage on the prescribing doctors,

assuaging their concerns and touting the medication.  This continued detailing is not merely

discoverable, but is relevant, admissible evidence at trial regarding the breach of Defendants'

continuing duty. [1]


**B.     Discovery of AZ's dealings with doctors should not be limited to prescribing physicians but must include any physician who might be questioned regarding causation issues.**

In this litigation, all cases will be vigorously defended on the basis that Seroquel was not a

substantial contributing factor to the Plaintiff's diabetes related injuries.  The treating physician

depositions will extensively delve into the physicians' opinions regarding the Plaintiff's risk factors

and the possibility that the drug contributed to the disease.  Clearly, if AZ representatives detailed

---

[1] Clearly, any detailing prior to the prescription also can not be curtailed.  What was put in the prescriber's mind years, months or weeks prior to the prescription is also discoverable, relevant and admissible.

10

a Plaintiff's endocrinologist or internist regarding Seroquel's safety, that is something Plaintiffs are entitled to know. It is no different than the Defendants asking the doctors whether the Plaintiff's lawyers met with the doctor, how long they met, how many times, what was discussed and what if anything was shown to them. The Plaintiffs unquestionably need to know what, if anything was discussed with their physicians on these issues and we need to know that *up to the present time*: a lunch or discussion a week ago is as important with respect to this critical testimony as one that took place years ago.

Similarly, if there has been a relationship with the company that benefitted the physician in any way, we are entitled to that knowledge. It is entirely unclear to us how, under federal rules regarding discovery, this information is not material and necessary to the proper prosecution of these cases. AZ's detailing efforts were extensive and constant. We must have some opportunity to assess if one of the crucial fact witnesses in our case may have been influenced. Surely, if a treating physician worked as an expert for the Plaintiff's firm, or golfed every weekend with the Plaintiff, or spent hours with the Plaintiff over 7 years discussing the risks of the drug, AZ would want to know those facts and they would be entitled to know it. So too, are we entitled to know everything that transpired between these doctors and these physician witnesses. The proposed DFS, combined with the right to conduct depositions of the sales representatives, provides us with information which we need and are entitled to receive.

### C. Documents Plaintiffs seek are extensively intertwined with what occurs when companies push drugs on doctors.

The Defendants know and cannot deny that as much as 67% of their sales were "off label" prescriptions. This did not happen by accident but by design. That design and its implementation

11

requires full sales representative discovery.  Combined with the Learned Intermediary defense and challenges to causation, the "off label" marketing requires that documentary evidence as to what the sales reps where told and when the were told it must be made available to Plaintiffs before the physician depositions.  A pharmaceutical liability case is, in large part, are improper sales practices case. The tortious conduct occurs not just in the corporate offices and boardrooms but at the very point of sale - in the physician's office.  What the company told those employees to do and say and how those employees were incentivised  to "detail, sample and sell" is fundamental evidence, both direct and impeachment.  Therefore, we require the documents asked for in the DFS including information on how the relevant sales representatives performed, were incentivised or critiqued.

4.    **Timing of DFS service.**

Plaintiffs request that the Defendants serve the completed DFS together with their selection list within 10 days of the Court's and Plaintiffs' selections.  It is through the experience of the lawyers before the Court that we are aware of this trove of evidence that we must have it once case specific discovery begins.  Therefore, its production is required as soon as a case is selected.  This evidence should be readily available to Defendants.  With regard to much of it, it should be "push button" discovery.  Regardless, this discovery is indisputably crucial and the Defendants, after 6 months of demanding a case specific discovery program and  even agreeing to do all depositions in all 7,000 cases in the MDL, should not now be heard to say they cannot produce it.  In fact, given how the Defendants have continually pushed for this discovery program, they undoubtedly started putting together a plan for the collection of the sales representative information and actually started collecting it months ago.  In any event, Plaintiffs only seek the discovery from the representatives who detailed the two physician witnesses.

As to Defendants' selections, they can begin to work on those as they start to narrow their list.  As to the Plaintiffs' and the Court's selections, they will have a full 10 days to go out and collect this information from the representatives.  If the Court permits the "same state" selection, they'll know over 2 months in advance the pool of cases and can establish procedures to quickly obtain the information once the case is selected.

**5.      Physician witness deposition scheduling.**

Defendants shall set the subpoenaed dates for depositions of the treating and prescribing doctors *in a single case* on the same day, back to back, so that one attorney can handle both depositions in that case.  We respectfully submit that this makes abundant sense.  These depositions have to be done within a limited time.  It will be impossible to coordinate doctors' and lawyers' schedules.  It is inevitable, therefore, that these will have to occur by compulsory process and the Defendants should set the dates in the subpoenas in a manner that creates the most efficiency.

**6.      Location of Plaintiffs' depositions**.

Plaintiffs propose that, at the Plaintiff's attorney's choosing, Plaintiff's deposition may be conducted in the Plaintiff's state of residence, Orlando or the Plaintiffs' attorneys' office.  This would not preclude the parties from agreeing to another location.  Again, any argument why this efficient logistical feature should be rejected is not apparent.  If Plaintiffs' counsel can bring all Plaintiffs to Liaison Counsel's office in Florida, or another location, and conduct the depositions back to back, day after day, until 10, 20 or 30 are done, it is difficult to imagine why that would be rejected in favor of flying to multiple locations throughout the country - unless the Defendants are simply trying to exhaust the Plaintiff's financial resources. Exhaustion is an improper motive for discovery under the federal rules as well as the rules of ethics.

**7.      Date of Plaintiff's deposition.**

The Plaintiff's deposition date shall be set by mutual agreement of the parties.  Plaintiffs acknowledge that the Defendants want to conduct the Plaintiff's deposition before his/her physician depositions and will provide deposition dates accordingly.  Defendants have overtly stated that they want to set Plaintiff depositions so that they will not appear and have their case dismissed.  We respectfully request that this Court afford some protection against such a Draconian potentiality by allowing the Plaintiff's attorney to set the date for the individual plaintiff.  We recognize the need to set dates with ample time for the defense attorneys to make travel and preparation plans and that the Plaintiff's deposition needs to be conducted before the physician witnesses' depositions.

**8.      No contact by defense attorneys with doctors.**

Due to the stringent protections of many States' laws and HIPAA, Defendants' attorneys shall have no communication with the doctors, other than having a process server serve the subpoena for the deposition.

**9.      Procedure for expedited resolution of discovery disputes.**

Plaintiffs request and defendants agreed that there should be a procedure permitting the parties, if it is entirely unavoidable (i.e. the deposition is ongoing or if before the deposition there is insufficient time for a motion), to telephone or email Magistrate Judge Baker regarding issues that might need resolution prior to or during the deposition.  This procedure would be used sparingly by the parties and only used  to resolve disputes that might result in the parties having to return for supplemental depositions of witnesses.  Please note that Plaintiffs would object to any proposal by Defendants calling for a Discovery Master (Defendants have asked if we would consider agreeing to this, which is why we raise it anticipatorily).  Plaintiffs position is that Magistrate Judge Baker

has developed an in-depth understanding of the issues and history surrounding discovery in this MDL and that Judge Baker's direct involvement in the case specific discovery plan is crucial. Plaintiffs also wish to reserve their right to come back to the Court, should the need arise, in order to seek modification of the ADR and discovery process as needed.

**10.    No Saturday/Sunday depositions.**

No depositions shall be taken on a Saturday or a Sunday absent agreement of the parties. This likely requires little explanation. Suffice it to say that in addition to familial and religious obligations, Plaintiffs' counsel will need the weekends to "re-group" and cannot be compelled to work 6 or 7 days a week doing depositions.

**11.    Time limits on depositions.**

As an exception to previous CMOs, no deposition of an individual Plaintiff or their representative shall exceed 4 hours because of the availability of medical records and Plaintiffs' Fact Sheets, and no deposition of a treating physician and/or prescribing physician shall exceed 4 hours (2 hours time for each side). The Plaintiff's Fact Sheet is extensive. In addition, every single health record in existence, mental and physical, has been made available to the Defendants. The Defendants have asked for and have been given an unprecedented massive discovery program. There ought to be some protection against them wasting time at depositions and thus requiring them to focus on important and necessary topics. This is particularly so because we will likely see inexperienced lawyers at many of these Plaintiff depositions with "scripts" that they will quite literally read off. This is standard operating procedure for these law firms. The undersigned once had a lawyer ask my client, who was 9 months pregnant, whether she had ever had a hysterectomy - because it was on the script in prior litigation. We can ill afford even less egregious and more subtle

15

wastes of time. By limiting the Plaintiff's deposition to 4 hours, the lawyers will be required to truly focus.

As to treating and prescribing doctor depositions, two (2) hours by each side is more than enough time to fully cover the relevant treatment and liability issues. Again, focus should be required. We should not have defense lawyers coming to depositions to obtain a medical education on the relevant medical issues. They should be taking depositions with an eye toward why they said they needed them: to make motions for summary judgment and to determine if the case might be settled through ADR. That reasoning, together with the allegedly needed pure discovery aspect of the deposition, can easily be done in two (2) hours, particularly since there will be two (2) hours of follow up by Plaintiff's counsel. We ask the Court to consider the fact that we will be pulling hundreds of physicians out of their practices. Protection from disorganized, inexperienced or billing-happy lawyers should be given to these doctors. Some states, such as New York, have a codified public policy to prevent excessive depositions of doctors. New York's Civil Practice Law and Rules 3117 was amended in 1977 to permit physician depositions to be used at trial regardless as to a showing of unavailability, "in order to limit the disruption of litigation on medical practices. This amendment was based on a recognition of the difficulty and expense of securing the courtroom attendance of a physician and the diversion of the physician's time from patients and medical duties while awaiting a turn in court." See Patrick M. Connors, *McKinney's CPLR Practice Commentary* C3117:8A (explaining that N.Y. C.P.L.R. 3117(a)(4) "was part of the Judicial Conference's 1977 promulgations...based on a study conducted by Judge William P. McCooe and may be found discussed in the Conferences 1977 Report to the Legislature on the CPLR.") (emphasis added). Such a policy consideration seems apt here.

16

**12.    Attempt to Resolve.**

Pursuant to M.D.L.R. 3.01(g) on Thursday June 14th the undersigned meet with and advised defense counsel of our proposals set forth above.  Thereafter, the parties engaged in additional exchanges concerning the issues raised in the above motion. On June 21st the parties had a final discussion concerning their various proposals. To the extent the parties could agree we have indicated as such in our papers. However, the parties can not agree on a number of points and as a result the Plaintiffs are submitting the above motion.

WHEREFORE, the court is respectfully requested to enter an Order as set forth above.

RESPECTFULLY SUBMITTED this 21 day of June, 2007.



  /s/ **Paul J. Pennock**
**Paul J. Pennock**
**Plaintiffs' Co-Lead Counsel**
**WEITZ & LUXENBERG, P.C.**
**120 Wall St.**
**New York, NY   10005**

**Telephone:   212 558 5504**
**Facsimile:    212 363 2721**
**E-mail:      ppennock@weitzlux.com**

C:\Documents and Settings\jorelli\Desktop\Seroquel Filings\June 11 Implementation.wpd

17

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this <u>21 day of June, 2007</u>, I electronically filed the foregoing

**MDL PLAINTIFFS' COMBINED MOTION AND MEMORANDUM FOR
IMPLEMENTATION OF COURT ORDER OF JUNE 11, 2007 ON CASE SPECIFIC
DISCOVERY AND ALTERNATIVE DISPUTE RESOLUTION**

with the Clerk of the Court by using the CM/ECF system which will send a Notice of Electronic

Filing to the counsel listed on the attached Service List.  I further certify that I mailed or e-mailed

the foregoing document and the Notice of Electronic Filing by First-Class mail delivery to the non-

CM/ECF Participants listed on the attached Service List.

    **/s/ Michael E.Pederson**
**Michael E. Pederson**
**Plaintiffs' Counsel**
**WEITZ & LUXENBERG, P.C.**
**120 Wall St.**
**New York, NY   10005**
**Telephone:   212 558 5591**
**Facsimile:    212 363 2721**
**E-mail:         MPederson@weitzlux.com**

18

## SERVICE LIST
(As of May 15, 2007)

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No.  1769 - Orl - 22DAB**

| | |
|---|---|
| Paul J. Pennock, Esq.<br>Michael E. Pederson, Esq.<br>Weitz & Luxenberg, P.C.<br>180 Maiden Lane - 17th Floor<br>New York, NY 10038<br>Telephone:  (212) 558-5500<br>Ppennock@weitzlux.com<br>Mpederson@weitzlux.com | Camp Bailey, Esq.<br>Fletcher Trammell, Esq.<br>Michael W. Perrin, Esq.<br>Bailey Perrin Bailey LLP<br>The Lyric Centre<br>440 Louisiana, Suite 2100<br>Houston, TX  77002<br>Telephone:  (713) 425-7240<br>cbailey@bpblaw.com<br>mperrin@bpblaw.com |
| Larry Roth, Esq.<br>Law Offices of Larry M. Roth, P.A.<br>Post Office Box 547637<br>Orlando, FL  32854-7637<br>Telephone:  (407) 872-2239<br>LROTH@roth-law.com | Tommy Fibich, Esq.<br>Fibich, Hampton & Leebron, L.L.P.<br>1401 McKinney, Suite 1800<br>Five Houston Center<br>Houston, TX  77010<br>Telephone:  (713) 751-0025<br>tfibich@fhl-law.com |
| Matthew F. Pawa, Esq.<br>Benjamin A. Krass, Esq.<br>Law Offices of Matthew F.Pawa, P.C.<br>1280 Centre St., Suite 230<br>Newton Centre, MA 02459<br>Telephone:  (617) 641-9550<br>Mp@pawalaw.com | John Driscoll, Esq.<br>Brown & Crouppen, PC<br>720 Olive St.<br>St. Louis, MO  63101<br>Telephone: (314) 421-0216<br>Jdriscoll@brownandcrouppen.com<br>asmith@brownandcrouppen.com<br>blape@brownandcrouppen.com |
| Keith M. Jensen, Esq.<br>Jensen, Belew & Gonzalez, PLLC<br>1024 North Main<br>Fort Worth, TX 76106<br>Telephone:  (817) 334-0762<br>kj@kjensenlaw.com | Scott Allen, Esq.<br>Cruse, Scott, Henderson & Allen, L.L.P.<br>2777 Allen Parkway, 7th Floor<br>Houston, Texas 77019<br>Telephone: (713) 650-6600<br>sallen@crusescott.com |

**SERVICE LIST**
(As of May 15, 2007)

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No.  1769 - Orl - 22DAB**

| | |
|---|---|
| Matthew E. Lundy, Esq.<br>Lundy & Davis, LLP<br>333 North Sam Houston Parkway East<br>Suite 375<br>Houston, TX  77060<br>Telephone:  (281) 272-0797      .<br>mlundy@lundydavis.com | W. Todd Harvey, Esq.<br>E. Ashley Cranford<br>Whatley Drake & Kallas, LLC<br>2001 Park Place North, Suite 1000<br>Birmingham, AL  35203<br>Telephone:  (205) 328-9576<br>THARVEY@whatleydrake.com<br>ecf@whatleydrake.com |
| Lawrence J. Gornick, Esq.<br>William A. Levin, Esq.<br>Dennis J. Canty, Esq.<br>Levin Simes Kaiser & Gornick, LLP<br>44 Montgomery Street<br>36th Floor<br>San Francisco, CA  94104<br>Telephone:  (415) 646-7160<br>lgornick@lskg-law.com<br>dcanty@lskg-law.com<br>llsimes@levins-law.com<br>jkaiser@lskg-law.com<br>echarley@lskg-law.com<br>ddecarli@lskg-law.com<br>bsund@lskg-law.com<br>astavrakaras@lskg-law.com | Gregory P. Forney, Esq.<br>Shaffer Lombardo Shurin<br>911 Main Street, Suite 2000<br>Kansas City, MO 64105<br>Telephone:  (816) 931-0500<br>gforney@sls-law.com<br>rbish@sls-law.com<br>*Attorney for Defendant,*<br>*Marguerite Devon French* |
| Robert L. Salim, Esq.<br>Robert L. Salim Attorney at Law<br>PO Box 2069<br>Natchitoches, LA 71457-2069<br>Telephone:  (318) 352-5999<br>robertsalim@cp-tel.net | Eric B. Milliken, Esq.<br>3 Sir Barton Ct.<br>Newark, DE 19702<br>*Pro Se* |

**SERVICE LIST**
(As of May 15, 2007)

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No.  1769 - Orl - 22DAB**

| | |
|---|---|
| Justin Witkin, Esq.<br>Ken Smith, Esq.<br>Aylstock, Witkin & Sasser, PLC<br>4400 Bayou Boulevard, Suite 58<br>Pensacola, FL  32503<br>Telephone:  (850) 916-7450<br>Jwitkin@AWS-LAW.com<br>ablankenship@aws-law.com<br>aburrus@aws-law.com<br>asmith@aws-law.com<br>ksmith@aws-law.com<br>noverholtz@aws-law.com<br>jsafe@aws-law.com | Louisiana Wholesale Drug Co. Inc.<br>C/O Gayle R. White<br>Registered Agent<br>Highway 167N<br>Sunset, LA 70584<br>***Pro Se*** |
| Aaron C. Johnson, Esq.<br>Summers & Johnson<br>717 Thomas<br>Weston, MO 64098<br>Telephone:  (816) 640-9940<br>firm@summersandjohnson.com | Catherine Solomon<br>(current address unknown)<br>***Pro Se*** |
| Todd S. Hageman, Esq.<br>Simon and Passanante, PC<br>701 Market St., Suite 1450<br>St. Louis, MO 63101<br>Telephone:  (314) 241-2929<br>thageman@spstl-law.com | Randy Niemeyer<br>22442 Pike 309<br>Bowling Green, MO 63334-5209<br>***Pro Se*** |

**SERVICE LIST**
(As of May 15, 2007)

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No.  1769 - Orl - 22DAB**

| | |
|---|---|
| Thomas Campion, Esq.<br>Steven M. Selna<br>Heidi E. Hilgendorff, Esq.<br>Drinker Biddle & Reath, LLP<br>500 Campus Drive<br>Florham Park, New Jersey 07932-1047<br>Telephone:  (973) 360-1100<br>tcampion@dbr.com<br>steven.selna@dbr.com<br>heidi.hilgendorff@dbr.com<br><br>***Attorneys for Defendants Janssen Pharmaceutical Products and Johnson & Johnson Co.*** | Mary B. Cotton<br>John D. Giddens, P.A.<br>226 North President Street<br>Post Office Box 22546<br>Jackson, MS 39225-2546<br>(601) 355-2022<br>betsy@law-inc.com |
| Michael Davis, Esq.<br>James Mizgala, Esq.<br>Sidley, Austin, LLP<br>Bank One Plaza<br>One South Dearborn Street<br>Chicago, IL 60603<br>Telephone:  (312) 853-7731<br>mdavis@sidley.com<br>jmizgala@sidley.com<br>***Attorneys for Defendants AstraZeneca LP and AstraZeneca Pharmaceuticals, LP*** | Joseph C. Langston, Esq.<br>The Langston Law Firm, PA<br>P.O. Box 787<br>100 South Main Street<br>Booneville, MS 38829-0787<br>Telephone: (662) 728-3138<br>tbalducci@langstonlaw.com |
| Elizabeth Raines, Esq.<br>Baker, Sterchi, Cowden & Rice, LLC<br>2400 Pershing Road, Suite 500<br>Kansas City, MO 64108<br>Telephone:   (816) 471-2121<br>raines@bscr-law.com<br>***Attorney for Defendant AstraZenca, PLC*** | Kenneth W. Bean, Esq.<br>Sandberg, Phoenix & von Gontard<br>One City Centre<br>15th Floor<br>St. Louis, MO 63101-1880<br>Telephone: (314) 231-3332<br>kbean@spvg.com<br>***Attorney for Defendant Dr. Asif Habib*** |

**SERVICE LIST**
(As of May 15, 2007)

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No.  1769 - Orl - 22DAB**

| | |
|---|---|
| Robert L. Ciotti, Esq.<br>Carlton Fields, P.A.<br>4221 W. Boy Scout Boulevard<br>Suite 1000<br>Tampa, FL 33607-5736<br>Telephone: (813) 223-7000<br>rciotti@carltonfields.com<br>***Attorney for Defendants, Astrazeneca***<br>***Pharmaceuticals, LP and Astrazeneca LP*** | Aaron K. Dickey, Esq.<br>K. Lindsay Rakers, Esq.<br>Goldenberg and Heller, PC<br>P.O. Box 959<br>2227 S. State Road 157<br>Edwardsville, IL 62025<br>Telephone: (618) 650-7107<br>aaron@ghalaw.com |
| Jona R. Hefner, Esq.<br>3441 W. Memorial, Suite 4<br>Oklahoma City, OK 73134-7000<br>Telephone: (405) 286-3000<br>attorneyokc@hotmail.com | Mark P. Robinson, Jr., Esq.<br>Robinson, Calcagnie & Robinson<br>620 Newport Center Drive, 7th Floor<br>Newport Beach, CA 92660<br>Telephone: (949) 720-1288<br>mrobinson@robinson-pilaw.com |
| David P. Matthews, Esq.<br>Lizy Santiago<br>Matthews & Associates<br>2905 Sackett<br>Houston, TX 77098<br>Telephone: (713) 222-8080<br>dmatthews@thematthewslawfirm.com<br>lsantiago@thematthewslawfirm.com | Robert A. Schwartz, Esq.<br>Bailey & Galyen<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744<br>bschwartz@galyen.com |
| David Dickens<br>Miller & Associates<br>105 North Alfred Street<br>Alexandria, Virginia 22314-3010<br>(703) 519-8080<br>ddickens@doctoratlaw.com | Howard Nations<br>Lori A. Siler<br>4515 Yoakum Boulevard<br>Houston, TX 77006-5895<br>Telephone: (713) 807-8400<br>nations@howardnations.com |

**SERVICE LIST**
(As of May 15, 2007)

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No.  1769 - Orl - 22DAB**

| | |
|---|---|
| Salvatore M. Machi<br>Ted Machi & Associates, PC<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058 | Scott Burdine, Esq.<br>Hagans Burdine Montgomery<br>Rustay & Winchester, P.C.<br>3200 Travis, Fourth Floor<br>Houston, TX 77006<br>Telephone: (713) 222-2700<br>sburdine@hagans-law.com |
| Pete Schneider, Esq.<br>Grady, Schneider & Newman, L.L.P.<br>801 Congress, 4th Floor<br>Houston, Texas 77002<br>(713) 228-2200<br>pschneider@gsnlaw.com | Lizy Santiago, Esq.<br>Abraham, Watkins, Nichols,<br>Sorrels, Matthews & Friend<br>800 Commerce Street<br>Houston, TX 77002-1776<br>(713) 222-7211<br>lsantiago@abrahamwatkins.com |
| Fred T. Magaziner<br>Marjorie Shiekman<br>A. Elizabeth Balakhani<br>Shane T. Prince<br>Eben S. Flaster<br>DECHERT LLP<br>2929 Arch Street<br>Philadelphia, PA 19103<br>(215) 994-4000<br>fred.magaziner@dechert.com<br>shane.prince@dechert.com<br>marjorie.shiekman@dechert.com<br>eben.flaster@dechert.com<br>elizabeth.balakhani@dechert.com | Lowell Finson<br>Phillips & Associates<br>3030 North 3rd Street<br>Suite 1100<br>Phoenix, AZ 85012<br>(602) 258-8900, ext. 295<br>lowellf@phillipslaw.ws |

**SERVICE LIST**
(As of May 15, 2007)

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No.  1769 - Orl - 22DAB**

| | |
|---|---|
| Scott Armstrong<br>1719 West Main Street<br>Suite 201<br>Rapid City, SD 57702<br>(605) 399-3994<br>scottarmstrong1235@eathlink.net | Linda S. Svitak<br>Faegre & Benson, LLP<br>90 South 7th Street, Suite 2200<br>Minneapolis, MN 55402-3901<br>(612)766-7000<br>lsvitak@faegre.com<br>wjohnson@faegre.com |
| James J. Freebery<br>McCarter & English, LLP<br>919 N. Market Street, 18th Floor<br>Wilmington, DE 19801<br>(973) 622-4444<br>jfreebery@mccarter.com<br>tpearson@mccarter.com | Richard D. Hailey<br>Ramey & Hailey<br>3891 Eagle Creek Parkway<br>Suite C<br>Indianapolis, IN<br>(317) 299-0400<br>rhailey@sprynet.com |
| Gale D. Pearson<br>Stephen J. Randall<br>Pearson, Randall & Schumacher, P.A.<br>Fifth Street Towers, Suite 1025<br>100 South 5th Street<br>Minneapolis, MN 55402<br>(612) 767-7500<br>attorneys@outtech.com | B. Andrew List<br>Clark, Perdue, Arnold & Scott<br>471 East Broad Street, Suite 1400<br>Columbus, OH 43215<br>(614) 469-1400<br>alist@cpaslaw.com<br>lcollins@cpaslaw.com |
| Ellen R. Serbin<br>Perona, Langer, Beck, Lalande & Serbin<br>300 San Antonio Drive<br>Long Beach, CA 90807-0948<br>(562) 426-6155<br>davidhwang@plblaw.com | Robert H. Shultz<br>Heyl, Royster<br>103 West Vandalia Street<br>P.O. Box 467<br>Edwardsville, IL 62025<br>(618) 656-4646<br>rshultz@hrva.com<br>bwallace@hrva.com |

25

## SERVICE LIST
(As of May 15, 2007)

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No.  1769 - Orl - 22DAB**