**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

IN RE:  **Seroquel Products**　　　　　**Case No. 6:06-md-1769-Orl-22DAB**
　　　　**Liability Litigation**

## MDL PLAINTIFFS' OPPOSITION TO DEFENDANTS' COMBINED MOTION AND MEMORANDUM FOR IMPLEMENTATION OF CASE SPECIFIC DISCOVERY

The MDL Plaintiffs, by and through their undersigned co-lead counsel, hereby file this Reply memorandum in opposition to ASTRAZENECA PHARMACEUTICALS LP and ASTRAZENECA LP's (hereinafter collectively "AZ" or "Defendants") Combined Motion and Memorandum For Implementation of Case-Specific Discovery (Doc. 238) (herein "Defendants' Plan" or "Plan").

## INTRODUCTION

The challenge facing this Court is how best to establish a procedural framework for the implementation of the unprecedented and massive case specific discovery process mandated by this Court's June 11, 2007 Order (Doc. 225) in the most cost, time and resource efficient manner that is fair to all parties. *See* Fed. R. Civ. P. 1; 16.  As this Court is well aware, the goal of this discovery is to allow Defendants to obtain case specific discovery that the Defendants claim is necessary for mediation, and without which, the Defendants are refusing to engage in any kind of ADR procedure.  Plaintiffs are preparing to comply with the Court's June 11 Order to participate in upwards of 90 case-specific depositions per month, but also are desirous for this fast-tracked plan to be implemented in the most efficient and cost-effective manner possible.

Plaintiffs respectfully contend that the Plan submitted by AZ is anything but efficient, cost effective or fair, much less consistent with the goal of a procedural framework for settlement of the cases. Instead, as detailed below, Plaintiffs believe that the hidden goal of Defendants' Plan is to derail the discovery process before it has even started in the hope of creating a discovery filibuster.

## DEFENDANTS' PROPOSAL IS UNWORKABLE

### I.  DEPOSITIONS OF PLAINTIFFS OR THEIR LEGAL REPRESENTATIVES

#### A.  Start date for Plaintiff Depositions

The parties have agreed that the start date for the first-group of depositions should be at the beginning of September as it gives everyone a period of time in which to begin the scheduling process for these depositions. We thus jointly propose this to Court.

#### B.  Plaintiffs Eligible for Deposition

The Court's June 11, 2007 Order provides that Plaintiffs will be deposition-eligible if they have "both substantially completed Plaintiff Fact Sheets ("PFS") and medical record authorizations have been served." Doc. No. 225 at ¶2. Defendants, however, would like to propose an additional limitation on the Plaintiffs eligible for depositions during 2007. Defendants want it limited to those 2,400 Plaintiffs who served a verified PFS with authorizations on or before March 31, 2007, on the alleged grounds that Defendants are more likely to have medical records from these providers. Doc. No. 238 at 2.

Plaintiffs object to this proposal and maintain that, as the Court has ordered, everyone who has submitted a completed PFS with authorizations should be eligible for selection. It is the Defendants' responsibility to order those records that they feel are

critical to conduct these depositions. They have been pushing for this unprecedented program for 6 months. Unless they are approaching Plaintiff-specific discovery with the same foot-dragging approach that they have exhibited with respect to their discovery obligations, then they have had ample time to obtain the records they purportedly require. If there is a problem in a given selected case, it can be dealt with. However, if cases with PFS served two to four months ago can not be selected because the record collection is incomplete, that begs the following question: What have the Defendants been doing with the Fact Sheets and authorizations?

C.     **Selecting Plaintiffs for Deposition and Determining Where Plaintiffs Are Deposed**

Defendants have objected to Plaintiffs choosing the state from which the deposition-eligible cases will be selected each month.  This has been painted as an attempt to seize control of the discovery process. In fact, this is simply a method by which the plan can be implemented in the most cost, time and resource efficient manner possible.

First, Defendants make the outrageous statement that "having chosen to represent" these clients whose cases have been transferred to the MDL, "plaintiffs' counsel cannot now complain they do not have enough lawyers to defend 30 plaintiff depositions in a month and to participate in related depositions of two doctors per case" or ninety depositions in a month, see Doc. No. 238 at   P 4. However, this is not something that Plaintiffs' counsel has ever claimed.  Despite Defendants' significantly greater resources in both personnel and money, Plaintiffs' counsel have not once asserted that we will not fulfill this Court's Orders.  Rather, as dictated by both the federal rules and the Manual for Complex Litigation, we are suggesting mechanisms to save both

sides' time and money. Plaintiffs' only complaints have been regarding the constant roadblocks erected by the Defendants to avoid ADR and trials.

Defendants suggest that Plaintiffs' counsel set the Plaintiffs' depositions dates for their ten selections at the same time that Plaintiffs' designate their ten cases and that Plaintiffs provide the remaining deposition dates two weeks after the Court and Defendants make their selections.

Defendants' proposal does little to encourage a cost, time and resource efficient manner of carrying out this Court's Order. It only effects the "calendaring" of these depositions, but does not assist in actually getting the depositions conducted. Contrary to Defendants' contention that the Plaintiffs are attempting to seize control of the discovery process, Plaintiffs are suggesting ways to prevent the discovery process from seizing control of the parties. It makes little sense for the parties to fly around the country doing depositions, when they can be conducted in one state, at one time, grouped together over a period of two weeks.

Plaintiffs have requested Florida as the first state from which cases are selected. Florida is not merely offered as a convenient place to begin this massive process. Rather this Court is familiar with the law of Florida in the event ripe substantive motions are made, and Plaintiffs also offered to agree to try cases selected from the Florida Plaintiffs' group in this Court.[1] Defendants have rejected this out of hand. In fact, the alternate trial venue for dozens of the Florida resident cases will be the Middle District of Florida. Clearly, if this discovery project is not intended to bring about trials or settlements, then it does not make any sense for the Defendants to have insisted upon it.

---

[1] Plaintiffs would also stipulate to Magistrate Judge Baker trying these cases if Judge Conway's docket might not permit for trials.

Finally, it appears from their papers that the Defendants have conveniently forgotten one of the reasons for their insistence on this discovery plan: ADR. They propose nothing with regard to ADR and by separate motion oppose it. This belies their intentions and casts grave doubt onto any assertion that they make regarding the creation of an efficient discovery process.

### D.      Length of Plaintiffs' Depositions

Plaintiffs have proposed a five hour deposition limit, which is sensible if Defendants are confining themselves to the issues that they have represented to the Court as important for them to discover. They have represented that they need to know if the Plaintiffs used their product, if they suffered injury from that use, what are their injuries, when they used the product, how long they used the product and who are their medical providers. The limitation of five hours will force the Defendants to focus on the issues that are necessary to determine whether a case can be resolved through an ADR process or by motion.[2]

Contrary to Defendants' assertion that more time is needed, due to the mental illnesses from which the Plaintiffs suffer, most of these Plaintiffs are not acute schizophrenics or individuals with severe bipolar disorder. Therefore, their concerns are misplaced.

### E.      Appearance or Non-Appearance of Plaintiffs

Plaintiffs maintain that an automatic dismissal of a Plaintiff's case, due to a non-appearance, is an unduly severe remedy. Further, Defendants are also seeking costs if a Plaintiff fails to give them 48 hours notice of a cancellation of a deposition. Plaintiffs

---

[2] Plaintiffs maintain that this discovery Plan will be insufficient to permit either side to make or defend dispositive motions.

suggest that if Defendants feel they have been aggrieved by any actions of a Plaintiff then they can certainly seek whatever appropriate remedy as permitted under the federal rules. We note that out of only 8 30(b)(6) depositions, Defendants have already failed to show, without any notice, for one[3]; so perhaps they should first "get their house in order."

## II.    PHYSICIAN DEPOSITIONS

### A.    Scheduling of Depositions

This Court has ordered that the depositions of thirty plaintiffs and their treating doctors be completed in one month's time. Plaintiffs agree with the Court that if there is to be a massive program such as this, it can only possibly work if Defendants have a strict, one month time frame within which to do it. Defendants' proposal for a "wide open" schedule will create endless chaos. Contrary to their position to date that they wanted a month to month program, they now want a wide open discovery program that will stretch a given case over many months. With the exception of the Plaintiffs' deposition, an "August's" slate of cases is just as likely to be completed in January as August, and September's in October's and October's in February, and so forth. Defendants' proposal offers disorganization, not structure. They told this Court they would get this discovery done; now they should do it. Otherwise, we will have a handful of cases being completed in the slated month, and in some months 70 or 80 cases being force-fitted.

For this discovery plan to work, the treating physicians' depositions must be scheduled and completed in the slated month and a particular plaintiff's treating doctor

---

[3] Plaintiffs' counsel had flown from Houston to Philadelphia and Defendant and the witness failed to show.

depositions need to be scheduled for the same day, back to back.[4]   Otherwise, this discovery plan will not work.  Back to back depositions of a particular Plaintiff's treating doctors can be done and are a routine feature of complex cases.  Moreover, by limiting the time in which to conduct these depositions, both parties can get the information that they need and move on to the next case.

Additionally, Defendants insist that they be permitted to schedule depositions on the weekends.  This is an outrageous request and is contrary to the federal rules.  While the Defendants apparently do not have any family or religious commitments, Plaintiffs' counsel and physicians do.  We strenuously object to this proposal, which if ordered, might implicate constitutional issues.

**B.      Who Goes First**

Plaintiffs have agreed that the party who notices the deposition and serves the non-party subpoena has priority at the deposition.

**C.      Length of Depositions**

Defendants' proposal is unnecessary and unworkable.  A skilled attorney can get what he needs from a treating doctor within the time limits suggested by the Plaintiffs (2 hours each side).  The Defendants should not he allowed to obtain this program and then send inexperienced attorneys to these depositions with "scripts".  They should send knowledgeable, experienced lawyers who can effectively conduct these depositions in a reasonable time.

---

[4] If Defendants do not complete a physician's deposition, they have not waived their right to take it.  They can still take it if and when the case is being discovered for trial.

### D.    Restrictions on Communications with Physicians

By law, Defendants are not allowed to speak with Plaintiffs' physicians. The Doctors should be subpoenaed for a date certain, back-to-back, as suggested by the Plaintiffs. As set forth in Plaintiffs' motion, Plaintiffs have signed Health Insurance Portability and Accountability Act ("HIPAA") authorizations pursuant to 45 CFR Parts 160 and 164 which authorize treating and prescribing physician to provide medical records to the Defendants. *See* 45 CFR §164.512 (allowing disclosure of medical information insofar as a protective order is in place). The authorizations specifically forbids physicians from "speaking to anyone" concerning the Plaintiffs' care and treatment, and similarly prohibits interviews or statements related to the same. *See* Undated Sample Authorization for Release of Records attached hereto as Exhibit "A". Defendants  should not be allowed to circumvent this authorization limitation by having their employees act as their agents in contacting the physicians. *See* Fla. Rules of Professional Conduct  4-4.2 and 4-5-3.[3]    Any conversations between Defendants' representatives and the treating and prescribing physicians about a specific Plaintiff would be prohibited as outside the scope of the HIPAA authorization. *See, e.g. Ozdemir v. Somerset Medical Center*, 2006 WL 1555495, at *1 (N.D.N.Y May 31, 2005) (release

---

[3]Rule 2.049(c) of the Local Rules for the United States District Court, Middle District of Florida, controls and provides that the professional conduct of all members of the bar of this Court "shall be governed by the Model Rules of Professional Conduct of the American Bar Association as modified and adopted by the Supreme Court of Florida to govern the professional behavior of the members of The Florida Bar."  Rule 4-4.2 of the Florida Rules of Professional Conduct regulates an attorney's communication with a person who is represented by counsel and provides "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer."  In addition, Rule 4-5.3 of the Florida Rules of Professional Conduct imposes upon attorneys  a general supervisory obligation with over non-lawyer employees/agents,   including an obligation to make reasonable efforts to ensure that employees/agents  maintain conduct compatible with the professional obligations of lawyers.

of health information is to be made only through the use of the methods listed in HIPAA, that is, pursuant to a court order, written permission from the patient or representative, or proof that the patient or representative have been informed and given opportunity to object). While AZ may argue that physicians will be cautious about potential HIPAA violations, as noted by one court, the problem is that:

> if *ex parte* interviews are permitted, it *would be left up to the physician to determine what information is subject to disclosure and what remains privileged*. The doctor is not only unskilled at making that determination, any error in judgment could, in addition, expose the physician to liability arising from an improper disclosure.

*Horner v. Rowan*, 153 F.R.D. 597, 601-602 (S.D. Tex. 1994) (emphasis added). *See also United States v. Omni Int'l Corp.*, 634 F.Supp. 1414, 1431 (D.Md. 1986) ("[u]nlike lawyers, who can protect the . . . privilege, [laypersons] have no legal training and cannot be expected to make sophisticated judgments regarding the scope of the privilege"); *MMR/Wallace Power & Indust., Inc. v. Thames*, 764 F.Supp. 712, 726 (D.Conn. 1991) (claim that no privileged information was revealed by lay person "rings hollow . . .in light of [former employee's] own admission that, as a lay person, he did not know what information of communications were protected by the . . .privilege").

In addition, the danger of inadvertent disclosure has been noted to be greater in situations such as here where both witnesses are laypersons. *See, e.g. Lyondell-Citgo Refining, L.P. v. Petioles de Venezuela*, 2003 WL 2299099, at *3 (S.D.N.Y. Dec. 19, 2003) (noting "danger of inadvertent disclosure is compounded" when both parties to communication are laypersons thus lack ability "to assess whether privileged material is being disclosed").

Plaintiffs' proposal for scheduling these depositions by subpoena avoids these risks and simply puts the physician on notice that he is to appear at a deposition for a fixed date and time.   Scheduling is thus simplified and the date is fixed by the subpoena.

### E.      Additional Discovery

Plaintiffs need to conduct discovery of AstraZeneca's sales representatives prior to the prescribing physician depositions.  As more fully set forth in Plaintiffs' Combined Motion and Memorandum for Implementation of the Court Order of June 11, 2007 on Case Specific Discovery and Alternative Dispute Resolution, this discovery is critical to the prosecution of these cases.  The sales representative discovery must happen prior to the prescribing physician's deposition.  Plaintiffs have provided a proposed Defendant Fact Sheet, which will allow and provide for specific discovery of the necessary documentation.  This information is critically important and must be provided with ample time to review it prior to conducting a prescriber's deposition.

WHEREFORE, the Court is respectfully requested to deny Defendant's Motion in its entirety.

RESPECTFULLY SUBMITTED this 3rd  day of July, 2007.

   **/s/ Paul J. Pennock**
   **Paul J. Pennock**
   **Plaintiffs' Co-Lead Counsel**
   **WEITZ & LUXENBERG, P.C.**
   **180 Maiden Lane**
   **New York, NY   10038**
   **Telephone:   (212) 558-5504**
   **Facsimile:     (212) 363-2721**
   **E-mail:   ppennock@weitzlux.com**

## SERVICE LIST
(As of May 15, 2007)

### In Re: Seroquel Products Liability Litigation
### MDL Docket No.  1769 - Orl - 22DAB

| | |
|---|---|
| Justin Witkin, Esq.<br>Ken Smith, Esq.<br>Aylstock, Witkin & Sasser, PLC<br>4400 Bayou Boulevard, Suite 58<br>Pensacola, FL  32503<br>Telephone:  (850) 916-7450<br>Jwitkin@AWS-LAW.com<br>ablankenship@aws-law.com<br>aburrus@aws-law.com<br>asmith@aws-law.com<br>ksmith@aws-law.com<br>noverholtz@aws-law.com<br>jsafe@aws-law.com | Louisiana Wholesale Drug Co. Inc.<br>C/O Gayle R. White<br>Registered Agent<br>Highway 167N<br>Sunset, LA 70584<br>*Pro Se* |
| Aaron C. Johnson, Esq.<br>Summers & Johnson<br>717 Thomas<br>Weston, MO 64098<br>Telephone:  (816) 640-9940<br>firm@summersandjohnson.com | Catherine Solomon<br>(current address unknown)<br>*Pro Se* |
| Todd S. Hageman, Esq.<br>Simon and Passanante, PC<br>701 Market St., Suite 1450<br>St. Louis, MO 63101<br>Telephone:  (314) 241-2929<br>thageman@spstl-law.com | Randy Niemeyer<br>22442 Pike 309<br>Bowling Green, MO 63334-5209<br>*Pro Se* |

**SERVICE LIST**
(As of May 15, 2007)

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No. 1769 - Orl - 22DAB**

| | |
|---|---|
| Thomas Campion, Esq.<br>Steven M. Selna<br>Heidi E. Hilgendorff, Esq.<br>Drinker Biddle & Reath, LLP<br>500 Campus Drive<br>Florham Park, New Jersey 07932-1047<br>Telephone: (973) 360-1100<br>tcampion@dbr.com<br>steven.selna@dbr.com<br>heidi.hilgendorff@dbr.com<br><br>***Attorneys for Defendants Janssen***<br>***Pharmaceutical Products and Johnson &***<br>***Johnson Co.*** | Mary B. Cotton<br>John D. Giddens, P.A.<br>226 North President Street<br>Post Office Box 22546<br>Jackson, MS 39225-2546<br>(601) 355-2022<br>betsy@law-inc.com |
| Michael Davis, Esq.<br>James Mizgala, Esq.<br>Sidley, Austin, LLP<br>Bank One Plaza<br>One South Dearborn Street<br>Chicago, IL 60603<br>Telephone: (312) 853-7731<br>mdavis@sidley.com<br>jmizgala@sidley.com<br>***Attorneys for Defendants AstraZeneca LP***<br>***and AstraZeneca Pharmaceuticals, LP*** | Joseph C. Langston, Esq.<br>The Langston Law Firm, PA<br>P.O. Box 787<br>100 South Main Street<br>Booneville, MS 38829-0787<br>Telephone: (662) 728-3138<br>tbalducci@langstonlaw.com |
| Elizabeth Raines, Esq.<br>Baker, Sterchi, Cowden & Rice, LLC<br>2400 Pershing Road, Suite 500<br>Kansas City, MO 64108<br>Telephone: (816) 471-2121<br>raines@bscr-law.com<br>***Attorney for Defendant AstraZenca, PLC*** | Kenneth W. Bean, Esq.<br>Sandberg, Phoenix & von Gontard<br>One City Centre<br>15th Floor<br>St. Louis, MO 63101-1880<br>Telephone: (314) 231-3332<br>kbean@spvg.com<br>***Attorney for Defendant Dr. Asif Habib*** |

**SERVICE LIST**
(As of May 15, 2007)

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No. 1769 - Orl - 22DAB**

| | |
|---|---|
| Robert L. Ciotti, Esq.<br>Carlton Fields, P.A.<br>4221 W. Boy Scout Boulevard<br>Suite 1000<br>Tampa, FL 33607-5736<br>Telephone: (813) 223-7000<br>rciotti@carltonfields.com<br>***Attorney for Defendants, Astrazeneca***<br>***Pharmaceuticals, LP and Astrazeneca LP*** | Aaron K. Dickey, Esq.<br>K. Lindsay Rakers, Esq.<br>Goldenberg and Heller, PC<br>P.O. Box 959<br>2227 S. State Road 157<br>Edwardsville, IL 62025<br>Telephone: (618) 650-7107<br>aaron@ghalaw.com |
| Jona R. Hefner, Esq.<br>3441 W. Memorial, Suite 4<br>Oklahoma City, OK 73134-7000<br>Telephone: (405) 286-3000<br>attorneyokc@hotmail.com | Mark P. Robinson, Jr., Esq.<br>Robinson, Calcagnie & Robinson<br>620 Newport Center Drive, 7th Floor<br>Newport Beach, CA 92660<br>Telephone: (949) 720-1288<br>mrobinson@robinson-pilaw.com |
| David P. Matthews, Esq.<br>Lizy Santiago<br>Matthews & Associates<br>2905 Sackett<br>Houston, TX 77098<br>Telephone: (713) 222-8080<br>dmatthews@thematthewslawfirm.com<br>lsantiago@thematthewslawfirm.com | Robert A. Schwartz, Esq.<br>Bailey & Galyen<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744<br>bschwartz@galyen.com |
| David Dickens<br>Miller & Associates<br>105 North Alfred Street<br>Alexandria, Virginia 22314-3010<br>(703) 519-8080<br>ddickens@doctoratlaw.com | Howard Nations<br>Lori A. Siler<br>4515 Yoakum Boulevard<br>Houston, TX 77006-5895<br>Telephone: (713) 807-8400<br>nations@howardnations.com |

**SERVICE LIST**
(As of May 15, 2007)

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No. 1769 - Orl - 22DAB**

| | |
|---|---|
| Salvatore M. Machi<br>Ted Machi & Associates, PC<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058 | Scott Burdine, Esq.<br>Hagans Burdine Montgomery<br>Rustay & Winchester, P.C.<br>3200 Travis, Fourth Floor<br>Houston, TX 77006<br>Telephone: (713) 222-2700<br>sburdine@hagans-law.com |
| Pete Schneider, Esq.<br>Grady, Schneider & Newman, L.L.P.<br>801 Congress, 4th Floor<br>Houston, Texas 77002<br>(713) 228-2200<br>pschneider@gsnlaw.com | Lizy Santiago, Esq.<br>Abraham, Watkins, Nichols,<br>Sorrels, Matthews & Friend<br>800 Commerce Street<br>Houston, TX 77002-1776<br>(713) 222-7211<br>lsantiago@abrahamwatkins.com |
| Fred T. Magaziner<br>Marjorie Shiekman<br>A. Elizabeth Balakhani<br>Shane T. Prince<br>Eben S. Flaster<br>DECHERT LLP<br>2929 Arch Street<br>Philadelphia, PA 19103<br>(215) 994-4000<br>fred.magaziner@dechert.com<br>shane.prince@dechert.com<br>marjorie.shiekman@dechert.com<br>eben.flaster@dechert.com<br>elizabeth.balakhani@dechert.com | Lowell Finson<br>Phillips & Associates<br>3030 North 3rd Street<br>Suite 1100<br>Phoenix, AZ 85012<br>(602) 258-8900, ext. 295<br>lowellf@phillipslaw.ws |

6

**SERVICE LIST**
(As of May 15, 2007)

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No.  1769 - Orl - 22DAB**

| | |
|---|---|
| Scott Armstrong<br>1719 West Main Street<br>Suite 201<br>Rapid City, SD 57702<br>(605) 399-3994<br>scottarmstrong1235@eathlink.net | Linda S. Svitak<br>Faegre & Benson, LLP<br>90 South 7th Street, Suite 2200<br>Minneapolis, MN 55402-3901<br>(612)766-7000<br>lsvitak@faegre.com<br>wjohnson@faegre.com |
| James J. Freebery<br>McCarter & English, LLP<br>919 N. Market Street, 18th Floor<br>Wilmington, DE 19801<br>(973) 622-4444<br>jfreebery@mccarter.com<br>tpearson@mccarter.com | Richard D. Hailey<br>Ramey & Hailey<br>3891 Eagle Creek Parkway<br>Suite C<br>Indianapolis, IN<br>(317) 299-0400<br>rhailey@sprynet.com |
| Gale D. Pearson<br>Stephen J. Randall<br>Pearson, Randall & Schumacher, P.A.<br>Fifth Street Towers, Suite 1025<br>100 South 5th Street<br>Minneapolis, MN 55402<br>(612) 767-7500<br>attorneys@outtech.com | B. Andrew List<br>Clark, Perdue, Arnold & Scott<br>471 East Broad Street, Suite 1400<br>Columbus, OH 43215<br>(614) 469-1400<br>alist@cpaslaw.com<br>lcollins@cpaslaw.com |
| Ellen R. Serbin<br>Perona, Langer, Beck, Lalande & Serbin<br>300 San Antonio Drive<br>Long Beach, CA 90807-0948<br>(562) 426-6155<br>davidhwang@plblaw.com | Robert H. Shultz<br>Heyl, Royster<br>103 West Vandalia Street<br>P.O. Box 467<br>Edwardsville, IL 62025<br>(618) 656-4646<br>rshultz@hrva.com<br>bwallace@hrva.com |

7