# EXHIBIT "C"

1

```
1                    UNITED STATES DISTRICT COURT
                      MIDDLE DISTRICT OF FLORIDA
2                         ORLANDO DIVISION

3             Docket No.6:06-MD-1769-Orl-22DAB

4    .  .  .  .  .  .  .  .  .  .  .  .  ..
     IN RE:                          :
5    SEROQUEL PRODUCTS LIABILITY      :
     LITIGATION                       :        Orlando, Florida
6    MDL DOCKET No. 1769              :        November 20, 2006
                                      :        10:00 a.m.
7    ALL CASES                        :
                                      :
8    .  .  .  .  .  .  .  .  .  .  .  .  .:

9

                   TRANSCRIPT OF PRETRIAL CONFERENCE
10           BEFORE THE HONORABLE DAVID A. BAKER
                  UNITED STATES MAGISTRATE JUDGE
11

12   APPEARANCES:

13   For the Plaintiffs:         Paul Pennock

14                               Larry M. Roth

15                               K. Camp Bailey

16                               Fletch Trammell

17                               Matthew E. Lundy

18                               Keith M. Jensen

19                               John J. Driscoll

20                               Lawrence J. Gornick

21                               Michael E. Pederson

22

23

24   Court Reporter:  Sandra K. Tremel, RMR/CRR

25
```

```
 1              APPEARANCES CONTINUED:
 2   For the Plaintiffs:          F. Kenneth Bailey, Jr.
 3                                W. Todd Harvey
 4                                Ken Smith
 5                                Karen Schaeffer
 6   For the Defendant            Lizy Santiago
 7   For the Defendant
 8   AstraZeneca:                 Michael W. Davis
 9                                James W. Mizgala
10                                Tamar B. Kelber
11                                Robert L. Ciotti
12
13   Proceedings recorded by mechanical stenography, transcript
14   produced by computer-aided transcription.
15
16
17
18
19
20
21
22
23
24
25
```

1   documents clearly are not confidential.  I mean they're

2   protected right now because they gave them to us, but we'd

3   like to take them off the list and so forth.  These

4   documents are not trade secrets.  We want to take them off

5   the list.  Thus making things a lot easier in terms of as

6   you say third party depositions and so forth.

7       But to get the ball rolling, I must admit that we

8   probably do need an order of this nature.

9           MR. DAVIS:  Your Honor, and I think I said at

10  the outset when we were first before the Court and Judge

11  Conway that a protective order was a sine quanon in

12  connection with the documents.  We can't emphasize how

13  important it was.  The parties have worked on this.  This

14  is not a protective order that differs in any material

15  respect from the protective orders that have been entered

16  in dozens of MDLs.  I mean, the model for the protective

17  order was protective orders that Mr. Pennock is very

18  familiar with.  It reflects and resembles exactly what has

19  been done in any number of other situations.

20      And again, Your Honor, pursuant to the Court's order

21  of September 21, consistent with the Court's most recent

22  order, we produced the IND and NDA pursuant to the

23  protective order that the parties worked out that we

24  submitted.  And in connection with the Court's order,

25  there was one provision as we read the order that raised a

1  difficulty.  We have had discussions with plaintiffs'

2  Counsel about that one provision, and that's what's --

3  that's the issue that we're discussing and the issue that

4  separates us in terms of what I understood to be the

5  Court's acceptance of the protective order pursuant to,

6  which again, we have produced the IND and the NDA which as

7  the Court knows contains a wealth of critically important

8  information to the plaintiffs.  That's been done.  We met

9  that deadline, that obligation that the Court imposed.

10  And it was pursuant to that protective order as the Court

11  treated it as a stipulation that we produced the IND and

12  the NDA.

13        THE COURT:  Why is it not sufficient for this to

14  continue a stipulation without a court order?

15        MR. DAVIS:  Well, I think, Your Honor, the

16  parties contemplated that it would be a court order, and

17  you know, I think the Court -- the Court's imprimatur on

18  the protective order, one, is critical to our going

19  forward and essential to our going forward.  So that we

20  can come to the Court if they have a disagreement with

21  respect to the order and say there's some provision in

22  there that is not being lived up to.  And similarly to us,

23  if there's something taking place where there's a dispute.

24  We can come to the Court pursuant to the protective order

25  that the parties have agreed to that they worked out over

1    a long period of time.  There is this one narrow --

2           THE COURT:  Precisely why is it better to have

3    that in the form of an order rather than trying to do

4    enforce a stipulation?

5           MR. DAVIS:  Your Honor, I have -- I agree that a

6    stipulation is fine, and we can move to have it pursuant

7    to the stipulation.  But I think it's contemplated by the

8    parties that it would be a protective order entered by the

9    Court, and we have submitted it to the Court.

10          THE COURT:  I tell you why I don't like doing

11   those and routinely I do not.  This is your language.  I

12   don't like your language.  And like I say, it's -- to me

13   it is what it is, but to me it's -- but it's your language

14   and you agree to whatever you want to agree to as between

15   yourselves if you think you know what it means.  And it

16   may be that at some point I'll be called on to interpret

17   or Judge Conway will be called to interpret it to enforce

18   it.  We're used to doing that.  We can handle that even if

19   we don't like the language.  But if I sign it as my order

20   using your language, then I'm interpreting now what is my

21   order.  I'm not comfortable doing that when you're the

22   ones that's drafted it and done it in a way I find

23   confusing.  And to the extent it affects third parties,

24   for me to enter an order without having heard them or for

25   them to have an opportunity to have some input on this,

1   I'm not comfortable with that either.

2       MR. DAVIS:  Well, again, Your Honor, I think in

3   good faith consistent with the Court's order, we produced

4   the NDA and the IND and Court has entered an order saying

5   that this is a stipulation and that the parties, the

6   plaintiffs and the defendants are bound to the language

7   that's contained in the protective order with the

8   exception of this one provision that's being worked out.

9   We would ask the Court to enter it.

10      I recognize that there may be parts of it that the

11  Court has not previously seen.  But I can tell the Court

12  that given the number of plaintiffs' lawyers with whom we

13  have dealt and the amount of effort that we have put into

14  it, it took a long time and it was a long road to travel

15  to get to this language.  And each one of these sentences

16  was looked at exceptionally carefully and parsed by us and

17  by plaintiffs' counsel.  And with all due respect, Your

18  Honor, the plaintiffs' group is quite experienced in MDL

19  and we have substantial experience ourselves.

20      This sort of order that we have tendered to the

21  Court, which I recognize the Court acknowledges, is a

22  stipulation between us and plaintiffs, has been routinely

23  regularly entered in MDLs that we appear in and that

24  plaintiffs' counsel appear in all of the time.

25      So with all due respect -- if there is a time when

1    there is an issue that arises with respect to the

2    protective order, we can explain each and every one of

3    those provisions and explain how it is that it should

4    impact that particular situation.

5        I myself, Your Honor, don't foresee any difficulties

6    arising with respect to the stipulation and the scope and

7    nature of this protective order.

8        The only issue that could be -- that might arise are

9    some issues with respect to what documents have been

10   designated as confidential and whether they should be

11   confidential.  But that is not -- that is not uncommon in

12   these sorts of situations, and the Court deals with it on

13   a rather routine regular basis.  We're not going to be

14   designating what we believe is an overly broad number of

15   documents confidential, and most of the time that gets

16   worked out between us and plaintiffs' counsel regarding

17   the proper designation.  If they pick up the phone with

18   respect to a document that's been designated as

19   confidential and they say, we don't believe it is.  We're

20   not going to spend the Court's time trying to file a

21   motion to secure its protection if indeed it is not.

22       So to the extent that that's a concern, it should not

23   be.  I do not believe we're going to be before the Court

24   very often with respect to the scope and meaning of this

25   protective order given, again, that the parties have

1    worked on it and it is, as the Court says, a stipulation

2    between the parties.

3         MR. PENNOCK:  Your Honor, I have to say, it is

4    honestly and sincerely very refreshing that we're before a

5    Court that recognizes that a lot of this stuff should not

6    be confidential and that the Court does not want, as the

7    Court said at the first hearing, I think you made a

8    comment, I'm sure you don't want a lot of those documents

9    seeing the light of day.  But to make this work, and to do

10   all the things we need to do, I must admit that we do

11   need -- they do need some kind of protection going forward

12   so we can start the ball rolling.

13        THE COURT:  All right.

14        I understand there's some issue about the format of

15   the documents produced by the defendant with respect to

16   the IND and the NDA.

17        MR. PENNOCK:  That's correct.  And Camp is going

18   to address that, if you don't mind.

19        MR. CAMP BAILEY:  I know we have had

20   conversations and Jonathan Jaffe who is on the phone from

21   Weitz & Luxenberg in New York who I think has had a

22   conversation with the defendants' computer people.  When

23   we first came here on September 7, we talked about the

24   obvious necessity for the IND and the NDA and Seroquel.

25   We never discussed the particular format in which it would

1    be produced.  There was a discussion about CDs versus hard

2    drives and all that stuff.  But Mr. Pennock said he's not

3    a computer expert, doesn't care how it's produced as long

4    as it's searchable and readable.  I think under the new

5    federal rules that go into effect here in 10 days, there's

6    a whole bunch of provisions in Rule 34 that talks

7    specifically about the formatting of electronic documents.

8        To make a long story short, when we got the NDA and

9    IND the other day, they were on DVDs that we immediately

10    had Jonathan and his computer people review them.  And

11    what they were, they were in multi-page TIFs with no Bates

12    range on them, no way to identify them from the documents.

13    So basically they were unusable, unreadable.  And there

14    are certain documents that are over a gig in size that

15    even the most sophisticated computer can't even open.  And

16    so we would just like an opportunity to specify the manner

17    in which they produce documents to us to where they're

18    reasonably usable which I think will greatly enable us to

19    try to meet the goals of moving this thing along in a

20    timely fashion.

21        MR. PENNOCK:  Your Honor, if I may, Mr. Jaffe is

22    in charge of the IT department of Weitz & Luxenberg, has

23    been for several years.  He's been involved in numerous

24    document disclosures in different litigations.  And in

25    fact, has helped craft a proprietary document data server

1    or document server that we have used in litigation.  So

2    he's very familiar with all these issues if the Court has

3    any questions for him because, unlike Your Honor, I would

4    not be -- I'm not versed in this information.

5        But he runs a very large IT department at our firm

6    servicing 60 lawyers and 350 support staff and he's very

7    familiar with these issues.

8              MR. DAVIS:  If I may, Your Honor, I don't have

9    the head of our IT department with me, but I do have with

10   me the head of our IT team in terms of the work that's

11   been done in connection with the production of documents

12   and the person who is familiar to plaintiffs' counsel, my

13   partner, Tamar Kelber, who has addressed all of these

14   issues with plaintiffs' counsel.  And with that, Your

15   Honor, I'll ask that Ms. Kelber be permitted to address

16   the Court.

17             MS. KELBER:  We, before producing the IND and

18   the NDA, asked plaintiffs for feedback on the format of

19   the production.  I think we have different recollections

20   of what our discussions were.  But it is true that there

21   was no information provided from the plaintiffs before our

22   production regarding the format that they were interested

23   in.  In the absence of direction and with the deadline

24   looming, we reproduced the IND and the NDA in the same

25   format as it's maintained at AstraZeneca.

1       The reference that Mr. Bailey made with regard to

2   file size follows from the fact there are a lot of files

3   in AstraZeneca's system that are large.  So we took the

4   file as it was and reproduced it on a disk.

5       Since receiving the IND and NDA disks, the plaintiffs

6   have raised a number of issues.  We, last Friday, had a

7   call with their IT person and some people with more

8   specific IT knowledge from our firm.  They gave us a list

9   of questions and we are following up on them.

10      At this time I think we seem to be working the issues

11  out amongst ourselves, and I expect and hope that we will

12  resolve all the issues regarding the specific format of

13  further productions and regarding any supplementation that

14  we need to be done with regard to this production amongst

15  ourselves.

16          MR. JENSEN:  Keith Jensen for plaintiffs.  I'm

17  speaking today -- I don't think it jumps ahead.  There's a

18  lot of overlap of issues, I submit, between the

19  preservation order that we proposed to the defendants.

20  There's also not only a classic preservation order but a

21  production protocol order.  And I would be happy to sit

22  down and present that as Your Honor deems fit later.  But

23  there is a great deal of overlap of the issues addressed

24  in the Manual for Complex Litigation that we're proposing

25  in our preservation and production of protocol order deal

1   with of course the manner in which things will be

2   electronically produced, the manner in which they'll be

3   stored, and the manner in which the parties will be able

4   to communicate with basically native format, as it's

5   called, data from the defendants.

6       If you would like to hear from me now, I would be

7   happy to go through what we're requesting today in that

8   regard and I think you will see that the harmony of the

9   meeting of the issues, if you will, Your Honor.

10          THE COURT:  Well --

11          MR. CAMP BAILEY:  Let's try to resolve the

12  formatting deal first, though.

13          THE COURT:  Are these files actually kept by

14  AstraZeneca in TIF format?

15          MS. KELBER:  They're kept PDF and scanned PDF

16  format.  They have been converted to TIF to be Bates

17  numbered.  So it's a TIF --

18          THE COURT:  I don't think that's true.

19          MS. KELBER:  Well, that's -- that's what -- when

20  we try to Bates number, then that's what we have been told

21  by the IT people.

22          THE COURT:  I think Adobe's got tools that will

23  let you do that without converting to a TIF.

24          MS. KELBER:  I'm happy to look into whether or

25  not if it will be possible to do the Bates numbering in

 1   PDF, but that issue would not resolve the issue of whether

 2   they would like the pages to be broken down as single

 3   pages or as multiple pages.

 4        The issue with regard to the file format is it has

 5   been presented to us is that they would like each document

 6   separated out into individual files for each document.

 7   And that may well be -- individual files for each page of

 8   the documents.  So if you had a 50 page document, it was

 9   produced as a 50 page file.  What they would like is 50

10   separate files and we're looking into whether we can do

11   that and how we can get that done.  And I would expect

12   that we will be able to do that.  It's just that we

13   weren't asked to do that before we had to produce our

14   documents.

15        THE COURT:  Well, I'm assuming that there is a

16   host of different kinds of documents.  Some are probably

17   things that were originally written in Word and then other

18   things that were lab reports and other things that were

19   protocols and other things that were things that were

20   submitted to the FDA and attachments, a lot of duplicates

21   and things started one way and then I suspect you stored

22   them in many different ways on various serves, whatever it

23   is AstraZeneca calls it's NDA or the IND, is that -- do

24   they take all those things and then put them into a single

25   place on the computer and everything that was something

1   else is transformed into a PDF?

2        MS. KELBER:  Exactly.  It's maintained by

3   AstraZeneca in one space as PDFs and that's what we

4   replicated for our production.

5        THE COURT:  And is that created by scanning or

6   by an electronic conversion?

7        MS. KELBER:  Scanning.

8        MR. CAMP BAILEY:  After the first hearing we had

9   on September 7, we got together and kind of had multiple

10  tracks going here.  We have the MDL here.  We also have

11  some state court litigation going up in Delaware and the

12  Delaware CMO that was proposed on, I think, November --

13  September 20th, we specified kind of a specific format

14  that we'd like them in which is kind of the standard in

15  the industry.  And what it is is TIF, single page TIF

16  which has an OCR page that goes with it.  It has a load

17  file that tells everything, kind of where it's going.  I'm

18  botching this all up because I'm not a computer expert. I

19  think that's how most databases today are run.

20      And what I think the Court's talking about

21  specifically is we had a provision that says after initial

22  production and image file format is complete, a party may,

23  if we have an issue with the particular file or something,

24  upon specific request, seek production of electronic

25  documents in their native format, which means we can ask

1    for the Excel spread sheet with all the attached metadata

2    and revision history and all the other stuff like that.

3    But I think in the Zyprexa litigation, in the Resterol

4    litigation, in all these litigations, I think you will

5    find that for a company to even be able to use their own

6    data, it has to be some way searchable.  If the FDA asks

7    AstraZeneca, hey, what did you all send us two years ago?

8    I don't find it believable that there's no searching

9    capabilities in there.  And that's all we're asking is

10   that when they produce it to us, we have to be able to

11   look through it in a reasonable manner as contemplated by

12   the new federal rules and old federal rules.

13          THE COURT:  In terms of the documents already

14   produced and the need for a preservation and protocol

15   directive for the -- going forward for other things that

16   are produced, I want a specific proposal either agreed to

17   or with the disagreements highlighted.  We'll take that up

18   at the next conference which will be in a couple weeks.

19   So we'll get all that resolved shortly.  But we need to

20   formalize it.

21       And let me just tell you what my predilections are,

22   which I think are consistent with the new rules.  And that

23   is that if we're talking about existing files, and I see

24   this phrase "native formatting" and smile a little bit

25   because there's, in some sense there is no such thing

1  because as soon as you look at it you have changed the

2  document electronically, more than just leaving

3  fingerprints on it.

4       And as I say, I'm sure these documents, these items,

5  whatever they are, are different kinds that were created

6  one way and they have been stored and submitted several

7  other ways and then compiled in yet another way and then

8  recompiled in yet another way.  All of those things have

9  potential interest.

10       But in any event, what needs to be produced is the

11  most useful version with other versions available, and

12  there shouldn't be any -- I'm not suggesting there has

13  been, but there should not be any attempt to make it

14  difficult or hide the ball or if defendant actually has

15  already an index, electronic index of the files, that

16  ought to be produced along with the documents.

17       And if there's some -- if there's particularly

18  crucial documents that are already word searchable, they

19  ought to be produced.  I don't know how well the scanning

20  ones that were scanned and created in PDFs, how well the

21  OCR works on that or how accurate that is making them

22  searchable.  But that's an issue that works fairly well.

23  It solves some of your problems, although it's hard to do

24  that on a large volume.

25       But in any event, I want you to continue discussing

1   among yourselves how you're going to solve those problems

2   and, again, if you can't solve them, we'll get them all

3   solved at the next hearing.

4           MR. JENSEN:  May I ask a question, Your Honor?

5   Keith Jensen.

6       I have been a designee on this issue and I have been

7   waiting to ask for this since, actually since September 7,

8   but haven't been able to achieve an agreement on

9   maintaining the status quo so Your Honor has the complete

10  ability to make any orders you deem appropriate or not

11  regarding preservation and protocol, and that is, of

12  course, that any -- as you well know, the Manual for

13  Complex Litigation contemplates as well the new one -- the

14  federal -- new and old federal rules and their comments

15  that once you start litigation that you -- and I have

16  asked for this specific agreement and representation from

17  the defendants.  I've not been able to get this agreement

18  to date, Your Honor.  I have asked them to agree on the

19  record that AZ has suspended the ordinary routine or

20  automatic deletion or overwriting of discoverable

21  electronic information including e-mails.

22      And I could read you what I most recently got from

23  them, but it does not do that.  It in fact only agrees

24  that if you enter an order in the future they might

25  start -- they might start no longer overwriting in the

1    routine or ordinary course of business backup tapes,

2    including e-mails.

3        So I request, if Your Honor deems it appropriate, of

4    course, that even as of today, that defendants agree to

5    that so we have the complete ability to negotiate.

6        The second thing I'd like to rise with Your Honor is,

7    is I have been trying to get this for a while, that you

8    order us to negotiate exactly as the Manual for Complex

9    Litigation -- it's 40.25 as we put in our agenda --

10    contemplates, which is that we have a conference.  And I'd

11    like to have you order the IT people be present.  I think

12    there's no problem with that from either side.  And if

13    we're unable to reach agreement as of that conference date

14    that both parties outline why they want their particular

15    preservation provisions and/or production protocols

16    hypothetically ordered by Your Honor and advocate why

17    within three days of that so Your Honor before we arrive

18    next time has an order and a competing order and briefs to

19    the extent they're necessary on why the parties support or

20    oppose their various provisions.

21        MS. KELBER:  As for the specifics of the

22    discussions amongst the parties, as with the other issues,

23    we have disagreements as to the extent and timing of those

24    discussions.

25        With regard to a specific preservation order, there

1   needs to be a specific showing of the need for a

2   preservation order.  There has been no such showing here.

3   There are all sorts of computer issues with regard to

4   processing of information.  So at this moment, it would

5   not be appropriate for us to entertain any stipulations.

6   But we're, of course, willing to confer with the

7   plaintiffs.  And I understood from your last comment that

8   we would be doing that as part of our discussions on the

9   document production issue. Then we will be prepared to

10   submit something jointly at the next hearing.  I don't

11   think there is a need for anything more specific than

12   that.

13          MR. JENSEN:  Briefly respond, Your Honor.

14      All they told me they are willing to agree to in

15   writing is the following.  The pertinent part is three

16   sentences, but this last sentence says it all.  They're

17   willing to agree "subject to further order of the Court

18   the party may continue routine erasures of computerized

19   data pursuant to the existing programs but shall preserve

20   any printouts of any such data related to Seroquel."

21      What that clearly says is AstraZeneca wants to

22   continue doing precisely what might inadvertently or

23   advertently destroy existing discoverable electronic

24   information.  I think it's appropriate that they be asked

25   to stop that.

1    THE COURT:  Well, they're under existing

2  principles that govern spoliation, and for present

3  purposes I'm going to leave it at that.  If it turns out

4  something has been erased, is unrecoverable or is -- over

5  the next couple of weeks, we'll deal with that issue.  But

6  I do want you to submit either agreed proposals or

7  competing proposals to cover document preservation,

8  production protocol and resolution of this issue about the

9  formatting of things already produced by December 5th.

10  And if you need to cite authority, you can do that too, if

11  there's disagreement on an issue that has some legal

12  precedent.

13    MR. JENSEN:  One more thing.  Here's the issue.

14  Having read the cases and understanding their position

15  that they take the position there is no need for any

16  preservation order, I need to therefore establish that

17  there is a need, therefore, before December 5, I request

18  one 30(b)(6) deposition of a knowledgeable IT person so I

19  can under some of the case law establish the need for a

20  preservation order.  Obviously common first deposition in

21  this case isn't an IT person.  I'd request that I have it

22  before I'm required to submit it to Your Honor on

23  December 5th.

24    MS. KELBER:  I'd like to note we're under

25  obligation under the Federal Rules to preserve documents.

44

1   We're taking those obligations seriously and we're

2   following the rules.

3       I think the suggestion that there needs to be a

4   30(b)(6) deposition at this point puts the cart before the

5   horse.  I would like to be able to have the opportunity to

6   work out a mutually acceptable order and submit it to the

7   Court at the next hearing.

8           THE COURT:  I don't think you need a 30(b)(6) to

9   make your arguments here.  If you have a full discussion

10  as to the nature of the recordkeeping and record retention

11  policy, seems to me you will have sufficient basis to make

12  your arguments.

13      All right.  I set the next hearing for December 8,

14  10:00.

15      Let's talk about the preemption issues.  Judge Conway

16  has indicated to me that she wants to have oral argument

17  on that issue in May of next year.  So my thought would be

18  to have defendant's motion due April 2 with response due

19  April 30.  I know parties have varying views about the

20  impossibility of meeting those dates.  So I'll hear you on

21  that.

22          MR. DAVIS:  Well, Your Honor, the Court will be

23  pleased to know that we're prepared on January 15 to file

24  a motion based on preemption.  So this is one of those

25  occasions where I think we can expedite matters.

1     The motion we would file is a 12(b)(6) motion, and it

2  would be based on -- it's an exemplar motion that would be

3  based on the complaints that are before the Court.  And we

4  would be in a position, we think, to suggest that we file

5  our motion in brief on January 15; that plaintiffs be

6  given 30 days to respond.  And that if the Court would

7  agree, we would have a reply within 15 days.

8     We have every reason to believe that the 12(b)(6)

9  vehicle which we're suggesting is appropriate.  It's been

10  sanctioned by the Supreme Court.  And the rulings that the

11  courts have been entering with respect to preemption would

12  allow us to give to the Court the arguments we make with

13  respect to the preemptive effect of the labeling in place

14  in some of these exemplar cases.

15          MR. TRAMMELL:  Flech Trammell for the

16  plaintiffs.

17     As a practical matter, we agree with the Court,

18  January briefing schedules are impractical given the

19  factual nature of the preemption inquiry.  If the Court

20  knows whatever type of motion they file, they won't

21  necessarily be factual discovery by the Court or what the

22  regulatory history was dealing with this product.  They

23  will make certain assertions about things they represented

24  to the FDA, things the FDA may have told them, things the

25  FDA may have considered.  The FDA will probably also weigh

```
 1            THE COURT:  Well, let me say this.  If you get
 2    your requests out by Wednesday, I would expect Mr. Davis
 3    to be able to identify for me on the 8th any issues he
 4    contemplates in terms of objections or difficulty in
 5    production.  If not chapter and verse, at least topically
 6    so that we can determine whether -- and again, as we
 7    discussed back in September, and as I mentioned it at the
 8    outset today, the rules provide 30 days for this and two
 9    weeks for that and but not everything needs the 30 days.
10    I really -- I know you have done this, but I want you to
11    continue and really take it to heart.  If there's
12    important things like an organization chart or issues like
13    that, I'm just not going to have any patience, either
14    side, making it hard for the other side.  Do the easy
15    stuff easily.  Because it's going to -- it will be to
16    everybody's benefit both in the short-term and the long
17    term.  So I'm not going to require that they file a formal
18    response, but Mr. Davis, be ready to talk about any
19    problems with that on the 8th.
20            MR. DAVIS:  As the Court knows, we will do the
21    very best we can.  We're talking about addressing issues
22    that are figments right now.  I don't have the requests so
23    I'm -- I can't respond other than to say, again, that we
24    don't have a completed plaintiffs' fact sheet and here we
25    are responding to some discovery that hasn't even been or
```