# EXHIBIT "F"

1

```
 1                    UNITED STATES DISTRICT COURT
                       MIDDLE DISTRICT OF FLORIDA
 2                          ORLANDO DIVISION

 3              Docket No.6:06-MD-1769-Orl-22DAB

 4     .  .  .  .  .  .  .  .  .  .  .  .  ..
       IN RE:                          :
 5     SEROQUEL PRODUCTS LIABILITY      :
       LITIGATION                       :         Orlando, Florida
 6     MDL DOCKET No. 1769              :         December 11, 2006
                                        :         2:00 p.m.
 7     ALL CASES                        :
                                        :
 8     .  .  .  .  .  .  .  .  .  .  .  .  ..:

 9
                    TRANSCRIPT OF PRETRIAL CONFERENCE
10              BEFORE THE HONORABLE DAVID A. BAKER
                    UNITED STATES MAGISTRATE JUDGE
11

12     APPEARANCES:

13     For the Plaintiffs:          Larry M. Roth

14                                  K. Camp Bailey

15                                  Fletch Trammell

16                                  Keith M. Jensen

17                                  Lawrence J. Gornick

18                                  Michael E. Pederson

19                                  Dennis Canty

20                                  E. Ashley Cranford

21                                  Keith Altman

22                                  Karren Schaeffer

23                                  Scott Burdine

24                                  Seth Webb

25     Court Reporter:   Sandra K. Tremel, RMR/CRR
```

```
 1              APPEARANCES CONTINUED:

 2    For the Plaintiffs:          Ken Smith

 3                                 Lizy Santiago

 4                                 Angela Nixon

 5                                 Jonathan Jaffe

 6    For the Defendant

 7    AstraZeneca:                 Michael W. Davis

 8                                 Fred Magaziner

 9                                 Tamar B. Kelber

10                                 Robert L. Ciotti

11                                 Shane Prince

12                                 Elizabeth Balakhani

13                                 Eben Flaster

14

15    Proceedings recorded by mechanical stenography, transcript

16    produced by computer-aided transcription.

17

18

19

20

21

22

23

24

25
```

58

1    the Court contemplate a 30(b)(6) IT deposition.

2         We submit that it should be done.  And we submit that

3    it needs to be done for all the reasons, Your Honor -- if

4    Your Honor accepts our proposed order might order us to

5    negotiate from.  We can hardly understand what search

6    terms might be relevant or might not in many cases without

7    finding out what types of electronic data systems they

8    have.  The rest of the reasons are self-apparent.

9         If Your Honor would like any response after they

10   talk, I'm prepared to give that, Your Honor.

11             MR. MAGAZINER:  Your Honor, Mr. Jensen referred

12   several times to the preemption discovery.  As we

13   indicated to the Court in the statement of issues that we

14   prepared and submitted on the 6th of December when Your

15   Honor asked for it to be submitted to you, we have been

16   looking some more at the preemption issue.  We're not

17   presently inclined to file a preemption motion.  I'll be

18   happy at this point to explain the reasons for that

19   disinclination or explain it later or if Your Honor

20   doesn't have time, maybe no explanation will be necessary.

21        But to state it again as clearly as I can, we're

22   presently not intending to file a preemption motion for

23   reasons that I can explain whenever Your Honor thinks it's

24   appropriate.

25        If Your Honor would now like a substantive

1    response --

2            THE COURT:  I'll take it in saying that you

3    don't propose to abandon the issue?

4            MR. MAGAZINER:  No, sir.  May I take a moment to

5    explain it?

6            THE COURT:  Well, this case is not going to work

7    if we have a hearing one month and we have a firm proposal

8    with a definite date and plan we roll out and come in the

9    next month and say we're not going to do that.

10            MR. MAGAZINER:  May I explain, Your Honor?  I'm

11    sure Your Honor is not happy with this but I'd like to

12    explain if I may.

13            THE COURT:  I'm going take a recess, hear my

14    criminal case which will probably take 15 to 20 minutes,

15    and we will reconvene after that.

16                          (Recess)

17            THE COURT:  Mr. Magaziner, I believe you were

18    about to tell me why I shouldn't disregard any statements

19    you make about the future defense of the case.

20            MR. MAGAZINER:  I would like to explain to the

21    Court why we have had a change of -- our thoughts have

22    changed about preemption, Your Honor.  I appreciate the

23    opportunity to do that.

24        What Mr. Davis proposed to the Court at the last

25    conference was a 12(b)(6) motion.  It is a motion, as

60

1    12(b)(6) is by definition a motion based on pleading

2    saying that a complaint does not as a matter of law state

3    a claim upon which relief can be granted.  That was what

4    Mr. Davis proposed, a 12(b)(6) motion.  Not a motion for

5    summary judgment, not a different kind of motion but a

6    12(b)(6).  A rifle shot motion, if you will, directed to

7    one issue.  The issue to which Mr. Davis expected to

8    direct the motion is the issue whether a claim by a

9    plaintiff who alleges Seroquel use after the label

10   changed, which I have referred to earlier, and who alleges

11   as a sole basis for liability that the label was

12   inadequate, the company was negligent in not making the

13   label more informative, whether that claim is preempted,

14   on that issue I don't actually think there is likely going

15   to be any dispute.  If the claim is based on the

16   inadequacy of the label and the injury is the injury

17   warned of on the label, such claims I think are preempted

18   even with all the new decisions coming down from various

19   circuit courts.  I think there's no dispute about that.

20        Two things happened after Mr. Davis said to the Court

21   that we would be interested in filing such a rifle shot

22   12(b)(6) motion.

23        One is we had an opportunity to analyze more

24   carefully the complaints that have been filed.  And I

25   showed some of that to Your Honor in the slide show.  Of

61

1    the 106 plaintiffs in the eight first filed complaints,

2    there are only two who allege post label change use of

3    Seroquel.  So the motion, the rifle shot motion Mr. Davis

4    was describing, the 12(b)(6) motion, if successful would

5    have gotten rid of those two claims.  Or more likely, not

6    even those two plaintiffs because most of the plaintiffs

7    are alleging a bunch of other claims and making other

8    allegations that included in different counts that might

9    not even have been preempted on that basis.  For example,

10   if a plaintiff alleges in a complaint not only was the

11   label inadequate but then your sales representatives came

12   out and said things that were inconsistent with the label,

13   that would be a different challenge if we were trying to

14   deal with that on a preemption motion.

15        So we looked at the complaints more carefully.  And

16   the rifle shot 12(b)(6) motion that Mr. Davis

17   contemplated, we believe, is not going to be very

18   effective in getting rid of many cases.  It may get rid of

19   some portions of some claims for some plaintiffs based on

20   what we have now seen of the complaints.

21        When we learn more about these claims, when we learn

22   more about the Seroquel use, when we learn more about what

23   the theories of liability may be, we may have a

24   blockbuster preemption motion.  But we don't have it now

25   based on the complaints which is what we were saying by

62

1    raising a 12(b)(6) motion.

2          Second thing that happened is plaintiffs asked Your

3    Honor for leave to take discovery and Your Honor agreed

4    they could do that.  So the 12(b)(6) motion was

5    transformed into a summary motion.  Instead of being a

6    motion judging the adequacy of a complaint, to state a

7    claim upon which relief could be granted, became a summary

8    judgment motion which is not uncommon.  But that's what

9    happened here.  So we're no longer dealing with a rifle

10   shot 12(b)(6) motion directed to the adequacy of the

11   pleadings but to now a summary judgment motion.  The

12   plaintiffs then served on us the discovery they wanted.

13   And the discovery that they asked for is in essence all

14   the discovery that plaintiffs will ever ask AstraZeneca to

15   provide in this entire litigation.  They want to know

16   basic --

17             THE COURT:  You're kidding yourself if you think

18   that's true, if you think they won't be following up.

19             MR. MAGAZINER:  Well, if you look at the -- if

20   you look at their discovery request -- and I'm not sure if

21   Your Honor has it but we can provide their discovery

22   request -- their document request, it basically asked for

23   everything that shows what we knew about Seroquel,

24   everything that shows what we communicated to the FDA,

25   everything that shows what it didn't communicate to the

63

1    FDA, all of our marketing documents.  I'm hard pressed to

2    think of categories of documents that they will want on

3    other issues in this case that they have not put into

4    their preemption discovery request.

5         So we're contemplating a rifle shot 12(b)(6) motion

6    focused on their complaint.  They come back with discovery

7    that is the full blown discovery on every issue in the

8    case.  It's not rifle shot discovery.  And we think if we

9    go through this, we are at most going to get rid of, based

10   on the complaints alone, a couple of plaintiffs or a very

11   small sample of plaintiffs.  Two percent maybe, and maybe

12   not even -- and one plaintiff in his or her entirety, just

13   one plaintiff's count of one complaint.

14        Beyond that, because the discovery they have asked

15   for is so expansive.  As we have looked at what they have

16   asked for, I'll be completely frank with Your Honor, it

17   cannot be done in the timeframe that Your Honor

18   contemplated.  I'm sorry to say that, but it cannot be

19   done.  They want all our documents on what we knew, all of

20   our marketing documents, hard copy, e-discovery.  We're

21   accustomed to moving fast.  We want to move as far as we

22   can.  We want to provide the Court with the -- or enable

23   the Court to move this MDL through the court system at

24   record speed.  But, frankly, Your Honor, we cannot provide

25   all the discovery they have asked for in the timetable

64

1    that Your Honor ordered.  Even if we could, Your Honor, to

2    summarize, I think we still would not want to file a

3    12(b)(6) motion at this time because we think it would be

4    not a very efficient use of Your Honor's time, of Judge

5    Conway's time, of our time, or of the plaintiffs' time

6    because it would at the end have such a small impact on

7    the cases based on the complaints that we have studied

8    carefully.

9        What we would propose instead, if this would be

10   something of interest to the Court or to Your Honor or to

11   Judge Conway, is we could propose instead to have an

12   informational briefing on preemption.  We would tell the

13   Court how preemption -- what we think the law is, where

14   the transit law -- where it's going, what we believe the

15   preemption law as it applies to these cases.  Plaintiffs

16   could do the same thing and we could have a session with

17   Judge Conway perhaps in conjunction with a tutorial on

18   some of the scientific and medical issues in the case

19   which is something many courts have found useful to them.

20   We could talk about how preemption might impact it.  And

21   then at the appropriate time when we have learned enough

22   about plaintiffs' cases to know what we're dealing with,

23   when they have had some discovery of us, which no doubt

24   will be proceeding on a parallel track, we could raise

25   preemption in a motion that we think is well considered

65

1   and designed to help resolve many of these cases.

2        At the moment we don't have a preemption motion

3   available that we think would help resolve more than a

4   tiny fraction of the cases and not even, as I said not

5   even one plaintiff's claim, perhaps just one count of two

6   or three plaintiffs claims as we now understand it.

7        I would be happy to answer questions but that is the

8   essence of why we have rethought our position on

9   preemption.  And I apologize to the Court for having

10  disappointed the Court on this.  It's obvious that -- we

11  understand why you're disappointed.  We would love to get

12  rid a lot of cases on preemption, Your Honor.  We just

13  don't think we have the ability to do it at this point

14  with the kind of motion that we were contemplating and

15  that Mr. Davis told the Court we wanted to file a 12(b)(6)

16  rifle shot motion.

17       Thank you, Your Honor.

18            THE COURT:  Have you provided the plaintiffs

19  with the corporate organizational chart?

20            MR. MAGAZINER:  No.  But we're prepared to do

21  that almost immediately.

22            THE COURT:  That should have been done in

23  September.  I really don't understand here on December 11

24  "We're prepared do did it almost immediately."  That is

25  weasel language, and you know it.

66

```
 1              MR. MAGAZINER:  Well, Miss Kelber is going to

 2    address the specifics of the discovery issue.  One of the

 3    problems, Your Honor, is we reach agreements with one

 4    plaintiff's lawyer and then another plaintiff's lawyer

 5    says what the other lawyer agreed to, we don't want.

 6    And --

 7              THE COURT:  That should not keep you from

 8    providing basic information that's going to move this case

 9    forward.

10              MR. MAGAZINER:  I agree.

11              THE COURT:  That's not an adequate excuse.

12              MR. MAGAZINER:  I agree with that, Your Honor.

13         Miss Kelber can address that.  I feel sort of sorry

14    pointing to her at this point.  She's been dealing with

15    the plaintiffs constantly on the phone trying to reach

16    agreements, having them renigged, trying to reach new

17    agreements.  I'm not faulting the plaintiffs, but it's

18    been a moving target.

19              THE COURT:  Some of this hasn't been moving.

20    It's going to move.

21              MR. MAGAZINER:  I understand.  I can't speak to

22    what happened in September of course because I wasn't

23    here.  Ms. Kelber has been involved.

24              THE COURT:  Wrong answer too.  I don't want to

25    hear that.  I don't want to hear that again about what
```