# EXHIBIT A

## McConnell, Stephen

**From:** Freebery, James J. [JFreebery@McCarter.com]
**Sent:** Tuesday, July 10, 2007 10:46 AM
**To:** steve.weisburd@dechert.com; McConnell, Stephen; Balakhani, Elizabeth
**Cc:** Adupre@mccarter.com
**Subject:** FW: Technical Fix Issues


-----Original Message-----
From: Pennock, Paul [mailto:PPennock@weitzlux.com]
Sent: Friday, June 29, 2007 4:09 PM
To: Dupre, Andrew
Cc: Freebery, James J.; fred.magaziner@dechert.com;
stephen.mcconnell@dechert.com; Winchester, Tony; sallen@crusescott.com;
eblizzard@blizzardlaw.com; Pederson, Mike; Jaffe, Jonathan
Subject: Re: Technical Fix Issues


Your in breach or you've dragged it on far too long.  We've been more
than patient.  We'll deal w it next week.

--------------------------
Sent from my BlackBerry Wireless Handheld


-----Original Message-----
From: Dupre, Andrew <ADupre@McCarter.com>
To: Pennock, Paul
CC: Freebery, James J. <JFreebery@McCarter.com>; Magaziner, Fred
<fred.magaziner@dechert.com>; McConnell, Stephen
<stephen.mcconnell@dechert.com>; Winchester, Tony
<Awinchester@mccarter.com>
Sent: Fri Jun 29 14:15:15 2007
Subject: Technical Fix Issues

Dear Paul:

Fred Magaziner forwarded me you email message of June 27th (please see
below) regarding the technical fixes we have agreed to implement as a
result of several meet and confer sessions, the last of which occurred
on June 6.  I have provided several written updates to Mike Pederson
regarding these issues.  I here offer additional responses regarding the
issues that I manage.  I have identified those items which are not
technical issues or that are managed by others.  I'd be happy to discuss
these issues with you or your technical team if you would like.  My
best-

Andrew S. Dupre, Esq.
McCarter & English, LLP
405 North King Street 8th Floor
Wilmington, Delaware 19801
Phone: 302-984-6328
Fax: 302-984-0311

From: Pennock, Paul [mailto:PPennock@weitzlux.com
<mailto:PPennock@weitzlux.com> ]
Sent: Wednesday, June 27, 2007 5:05 PM
To: Magaziner, Fred; McConnell, Stephen
Cc: cbailey@bpblaw.com; kbailey@bpblaw.com; tomp@lpm-triallaw.com;
eblizzard@blizzardlaw.com; ftrammell@bpblaw.com; sallen@crusescott.com;
Pederson, Mike; Jaffe, Jonathan; richl@lpm-triallaw.com;
lgornick@lskg-law.com; LROTH@roth-law.com;
dmatthews@thematthewslawfirm.com

Subject: Continuing IT Production Failures

Your co-counsel wrote us on June 25th regarding the agreements that were reached on or before June 7th. As you will see from reviewing the below, I suggest you have them in Orlando next week to answer for these breaches in our agreements and their general failure to abide by the CMOs and their discovery obligations.

1. Load Files  The corrected load files are to be done by July 7th, per our agreement. Your people now tell us that it will perhaps happen by July 15th. That's not acceptable. We had an agreement about which we informed the Court and this must be done by July 7th.

RESPONSE: AstraZeneca did not promise a July 7 delivery. As you will note from your filing of June 7, 2007 titled "Plaintiffs Joint Statement of Resolved Issues", AstraZeneca's production vendor provided a best estimate of four weeks to complete this job. Plaintiffs repeated that estimate to the court, properly phrasing it as only an estimate. It may actually turn out to be five weeks because the vendor had some technical difficulty implementing the Excel sheet solution. The problem was that the vendor had to write a normalization program to unhide all rows, standardize column width etc.. The vendor initially tried an off-the-shelf normalization program, but it turned out to be unreliable. The Excel problem affected deliveries on Load Files because it took very substantial resources to get the Excel solution working, and those high level technical resources were therefore not available to work on the load files.

As an overall issue, Mike Pederson and I discussed timelines extensively at the last meet and confer. I generally warned that it is impossible to provide a concrete timeline on an untried process. Plaintiffs absolutely insisted on timelines, even if they were relatively rough and would have to be amended later. It is not correct that the estimates that AstraZeneca provided were meant to be or understood as deadlines. Mike Pederson's email of June 7, 2007 addressed to Jim Freebery and others expressly confirms this fact.


2. Meta data consistency. We can not verify your assertion that it has all been corrected until we receive the load files under number 1. above.

RESPONSE: I agree. I'll be happy to assist Jonathan Jaffe (or other member of your technical team) in any quality assurance steps he wants to do on the load files.


3. Swapped MetaData Fields  You also violated the agreements as to the Swapped MetaData Fields. You were supposed to identify the load files that were incorrect within 7 days. You've still not done that.

RESPONSE: This is incorrect. My email of June 14 to Jonathan Jaffe and Mike Pederson states that there appear to be no swapped metadata fields in the underlying TIFFs. AstraZeneca conducted an extensive investigation and found no such errors. Instead, this is a vendor error in the load files which are on schedule to be corrected shortly.


4. Page Breaks. You were to complete this by July 19th. You have already anticipatorily breached this, because your people have now told us perhaps July 31st. Moreover, despite promises to complete this on a rolling basis, you've not done so.

RESPONSE: This solution has already been implemented. The first production containing the new type of extracted text files was the supplemental foreign language document production, delivered to

2

Plaintiffs on June 25. AstraZeneca did not promise a July 19 delivery for all 10.3 million pages, and the date of July 19th appears nowhere in any of our discussions. Again, the vendor provided its best estimate of six weeks to complete this project. As I warned Plaintiffs at the meet and confer on June 6, this particular estimate was very difficult because the solution had not yet been tested. Plaintiffs nonetheless insisted that an estimate for this solution be given that day, and AstraZeneca gave the best estimate available at the time. During implementation, the vendor discovered multiple technical issues with scaling this solution to a production of 10.3 million pages (Plaintiffs had proven it worked only on productions of approximately 1000 pages). These issues took some time to resolve, but now are corrected, hence the ability to provide page breaks in one of the June 25th deliveries. AstraZeneca has already begun to institute this solution on a rolling basis (starting June 25) and will continue to do so.


5. Excel Sheets  Your people have only now given us a timetable with respect to the Excel Sheets. You've now told us that it won't be done by July 31st, instead of the generally understood on our about July 7th. This is another breach.

RESPONSE: AstraZeneca did not promise a July 7 delivery of Excel sheets. Plaintiffs' filing of June 7 does not even provide an estimated timeline for this work, because no estimate was available at the time of the June 6 meet and confer. I frankly (meaning no disrespect) do not know where a July 7 estimate for this work came from. Even if a July 7 date had been given (I do not believe it was), it would have been only an estimate, consistent with all the other estimates listed in Plaintiffs' June 7 filing.

As I stated in #1 above, AstraZeneca had to have its vendor write a normalization protocol from scratch in order to effect this solution. An off-the-shelf normalization would not work for this agreed solution (we tried). This took some time and a not-inconsiderable expense. However, that work is now done, and AstraZeneca is sifting through 10.3 million pages of documents to isolate all the Excel sheets and run the solution on them.


6. Objective Coding  You agreed to tell us whether you had created Objective Coding. You have told us that you have. We would like a listing of the fields that you have collected. Please get back to me by Friday as to whether you will give us the identity of the fields.

RESPONSE: An argument over whether AstraZeneca will go above and beyond CMO2 to provide metadata other than the 17 fields provided therein is a legal, not a technical issue. AstraZeneca met the terms of the agreement made at our meet and confers by investigating this issue and confirming the existence of other metadata.


7. Privilege Logs  We have no current dispute.

RESPONSE: AstraZeneca will therefore continue to produce privilege logs under the current template.

8. Redaction Logs  We need to have one additional phone call with you regarding your assertion that you did not agree to this.

RESPONSE: I'd be happy to be involved in that call if you would like. I sent emails to Jonathan Jaffe on this topic on June 13 and 25. Those inquiries have not yet been answered. To be clear, AstraZeneca has not rejected what appears to be Plaintiffs' demand for redaction logs. We would just like some explanation of why provision of such logs is in Plaintiffs' view not pointless busy work, given that Plaintiffs already have all the information that could possibly be included in a log

3

attached to the redacted documents themselves.

9. Blank Documents  Continue to serve the "blank" pages that you say are being produced b/c they actually have some header and footer and thus technically have to be produced.  As to the non-Excel blank pages, we do not believe this is a "small subset" as you assert.  Pursuant to your timetable, you will identify all of the problematic documents by June 30th.  This date is acceptable and we expect re-service of the corrected documents by July 7th, as agreed.

RESPONSE:  AstraZeneca is nearing completion of its investigation/technical fix of this issue.  Please bear in mind that the vast majority of these "blank" pages actually contain header-footer information that was created by the author of the sheets (though probably in error) and is not privileged.  AstraZeneca is fine with continuing to produce those documents, so long as Plaintiffs are aware and accept that they are not really "blank" and do not constitute production errors in the normal sense of that term.

In addition, there is a minority of blank page errors coming from two sources.  The first are occasional failures of the blank-page remover utility to run when an Excel sheet is converted to TIFF.  Several of the Bates numbered documents identified by Jonathan Jaffe contain this error.  Once those documents were identified, it was easy to have the vendor re-TIFF them.  These pages are true blanks - no information is missing and Plaintiffs still received the entire spreadsheet.

The second problem was exemplified by a document shared by Scott Allen at the June 6 meet and confer.  This document contained a series of mismatched pages.  AstraZeneca has isolated this error to a single production set in which a last minute addition of documents threw off the vendor's Bates process.  AstraZeneca's vendor created a bit map variance detection utility to crawl through the entire production and identify all such documents.  As of today, the vendor has identified this error on approximately 5300 pages of documents out of 10.3 million pages produced (.05%), again all in one production set.

There are some technical issues about how Plaintiffs may want these documents produced (for example, should they keep the old Bates numbers even if the page counts will differ, or get new Bates numbers).  I would like to work with your technical team to produce corrected copies of these documents in a manner that will satisfy Plaintiffs.  Again, the assertion that there is a July 7 deadline for completion of this work is incorrect.


10.  IP10 Production.  This is no longer an issue.

11.  Item 12/CRF's:   We don't know what you're referring to, although we think you might be referring to CANDA.   Please explain and we'll respond to your assertion that it was produced by June 8th.  If it is CANDA, we agree that it was produced.

RESPONSE:  You are correct that Item 12 refers to CANDA.

12.  Foreign Language Documents:  We received the hard drives.

RESPONSE: AstraZeneca remains open to a joint translation effort on these documents.  Plaintiffs have not yet answered AstraZeneca's repeated inquiries on that topic.


13.  30b6 depo Exhibits:  We received a hard drive and your communication saying they are all on there.

14.  We have rejected the Certification.  We are not agreeing to the

4

"key word" search of any kind and never have. Our position on this has been consistent from the beginning. We want everything that touches, concerns or relates to Seroquel, atypical antipsychotic and the injuries alleged to be caused by Seroquel in any way. If it meets the definition of discoverable under the federal rules and this court's orders, then we want it and are entitled to it. If you have only been searching by your "key terms" list, we have a big problem. Also, we have repeatedly insisted that we receive any emails or other documents sent by a custodian, deleted by him/her but preserved in somebody else's files or computer, etc. Whether that preservation person is one of the 80 or not does not matter. We also are not limiting it to AZ's email account but any email account funded by AZ. Now, and particularly years ago, Blackberry Service for example was not on a corporate email system. If it exists, we want it. Also, you were supposed to make sure that any information from any common drives be produced. In essence, you have played a long running game of hide the ball and I'm just thankful that we have a Magistrate Judge who will understand what has been going on here.

RESPONSE: This is not a "technical issue" in the sense of correcting an error or giving documents to Plaintiffs in a format that they might like better. As such, I cannot address it, except to say that it did not form a topic of our meet and confer sessions - I believe it may have been briefly referenced, but it was not discussed in even a cursory manner.


15. Databases.   I've addressed this in my prior email.

RESPONSE:  I cannot address disputes on this issue, except to say that it was not discussed as a "technical issue" at our meet and confers. Because (I believe) little or no database production had yet occurred, the topic arose only as something to work on together in the future, and not something that required an immediate technical fix. I included databases in my update of progress on technical issues (June 25 email) for convenience only, i.e. so I would not have to send two separate emails to the same group of technical experts.


16  Production Key. We did this as we agreed we would - on time.

RESPONSE: AstraZeneca has no problem with the production key.


Andrew S. Dupre, Esq.
McCarter & English, LLP
405 North King Street 8th Floor
Wilmington, Delaware 19801
Phone: 302-984-6328
Fax: 302-984-0311


This email message from the law firm of McCarter & English, LLP is for the sole use of the intended recipient(s)and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email(or helpdesk@mccarter.com) and destroy all copies of the original message.

This email message from the law firm of McCarter & English, LLP is for the sole use of the intended recipient(s)and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email(or helpdesk@mccarter.com) and destroy all copies of the original message.