US District Court
Middle District of Florida

**PLAINTIFFS' EXHIBIT**

Exhibit Number: _____1_____

6:06-md-01769-ACC-DAB

**In Re: Seroquel Products Liability Litigation**

Date Identified: _____

Date Admitted: _____

# Exhibit 1

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| In Re:  Seroquel Products Liability Litigation | Case No. 6:06-md-1769-ACC-DAB |
| MDL 1769 | DECLARATION OF JOHN MARTIN IN SUPPORT OF PLAINTIFFS' MOTION FOR ORDER IMPOSING DISCOVERY SANCTIONS |
| This Document Relates to All Cases | |

I, John Martin, declare as follows:

1. I am President of EDD Labs, and have been retained by plaintiffs in the captioned matter as an expert in the field of electronic discovery.

2. I make this declaration and have prepared the attached report in support of plaintiffs' Motion for Order Imposing Discovery Sanctions. I am prepared to supplement or modify my opinions based upon review and analysis of such additional data as may become available.

I declare under penalty of perjury according to the laws of the United States that the foregoing is true and correct.

Dated: July 23, 2007

_____
John Martin



# AstraZeneca / Seroquel ESI Production Report

Review and Failure Analysis

Review, identification and analysis of AstraZeneca's production and quality standards related to ESI produced in the Seroquel case.

**7/22/2007**

## Introduction

My name is John Martin, President of EDDLabs (Exhibit 1). I have more than 20 years of computer experience in the areas of data management, conversion and migration. For the past 15 years, a large percentage of my work has been in the areas of electronic discovery and litigation support including –

- Electronic Discovery (computers, drives, discs, tape and URL transfers)
    - Forensics
    - Identification
    - Conversion
    - Migration
    - Data Management, including Chain-of-custody and Inventory control
    - Search methodology
    - Deduplication methodology
    - Waveform methodology
    - Data capture and retention methodology
    - Production methodology
    - Consulting and Planning
- Databases (Summation, Concordance, SQL, Access, Btreive and flat-file)
    - Schema designs
    - Data verification and loading
    - Quality control
    - Data Management, including Chain-of-custody and Inventory control
    - Disaster recovery
    - Consulting and Planning
- Physical media (paper and microform)
    - Scanning
    - ICR/OCR/OMR
    - Quality control
    - Data Management, including Chain-of-custody and Inventory control
    - Disaster recovery
    - Consulting and Planning

## Representative Clients / Projects

Examples of my recent electronic discovery work include:

- Pharmaceutical Companies – Barr Labs, Glaxco Smith-Klein and Perdue Pharma
    - Most recently with Williams & Connolly and Winston Strawn on behalf of Barr servicing three (3) different litigation productions from a base of more than 900 custodians on a rolling basis.  Worked with both corporate and outside counsel to develop Search and Deduplication methodologies including tuning, testing and results checking.
    - Through IKON on behalf of GSK servicing an electronic discovery litigation production on a rolling basis.  Deduplicated and converted electronically stored information for review and production.
    - Worked with Meckler to assist in the review and production of electronic data related to the OxyContin litigation after the initial vendor failed to perform to standards.  Provided specialized spreadsheet processing to accurately produce more than 1.2 million pages of spreadsheet files.
- Medical Equipment Companies – Medtronic
    - Most recently with Hogan & Hartson on behalf of Medtronic servicing litigation production from a base of 45 custodians.  Worked with outside counsel to develop Search and Deduplication methodologies including tuning, testing and results checking.
- Insurance Companies – AIG and Allstate
    - Most recently with Gibson Dunn on behalf of AIG related to one of the worst natural disasters in US history.  Consulted with outside counsel on database schema design, comprehensive metadata and proper data flattening methods to achieve a defensible processing and production workflow.
    - Most recently with Sonnenschein on behalf of AllState related to one of the worst natural disasters in US history.  Consulted with outside counsel on MD5 hash based Chain-of-Custody method and proper data flattening methods to achieve a defensible processing and production workflow.
- SEC Investigations –WorldCom and Adelphia
    - WorldCom with Piper Rudnick (now DLA Piper) – Designed the processing and production workflow, as well as managed the sole team processing more than 140 billion emails.  Established cascading Search and Deduplication methodologies to allow multiple rolling custodial productions for the bankruptcy court, the SEC investigation, Congressional inquiries and various other cases drawing from the same data source.
    - Adelphia with Covington Burling – Assisted with the identification and processing of archived custodian data.  Designed an extraction and digital chain-of-custody method that allowed for both Vertical and Horizontal Deduplication across custodians via a Hash value.

I have reviewed the custodial production by AstraZeneca (AZ) in the Seroquel litigation and have found a large number of problems. I explain them below.

## Missing Data

### Voicemail and Faxes from AZ's Unified Messaging (UM) System
**MISSING VOICEMAILS AND FAXES**

Unified Messaging allows AZ employees to access e-mail, voicemail and faxes via their Outlook email as attachments. According to the Swisscom Solutions Press Release ([Exhibit 2](#)), AZ has had an advanced UM system in use since 2004 and an Audix Voicemail system in use even earlier. These systems integrate into AZ's Exchange/Outlook email environment to deliver voicemails, faxes or both to the custodian's Inbox folder.

Per our evaluation of AZ's produced data, we can find no email indicating a Voicemail or a Fax as an attachment. As shown in AZ/SER 0491654 ([Exhibit 3](#)) AZ custodians have received relevant voicemail. We believe that AZ used a flawed search methodology to locate potentially relevant data. Using this flawed method would miss both emails with voicemail or fax attachments because in both cases there is no text component to search. Voicemails are delivered as a sound file and faxes are delivered as a TIFF, Image-Only PDF, or other non-searchable format. Also to date no voicemails have been produced directly from the Audix system. To date AZ has produced no voicemail.

### Video Files
**MISSING MULTIMEDIA**

AZ's production AZ/SER 1612897 ([Exhibit 4](#)) shows there are video files directly related to Seroquel. AZ's production also contains "placeholders" where Video files have been omitted.

Per our evaluation of AZ's produced data, we can find AZ created "placeholders" and documents indicating a Video file, but no actual Video file. To date no Video files have been produced.

### Track Changes Files
**MISSING CUSTODIAN DOCUMENT EDITS**

Track Changes is a Microsoft Office feature that allows a user to view changes that have been made to a document. Track Changes would be used by the custodians in the normal course of business in both Word and Excel documents.

Per our evaluation of AZ's produced data, I can find no documents showing Track Changes. To date no Track Changes documents have been produced.

## Missing Email

**LOW VOLUME**

Some custodians show a low volume number of authored emails.  Vickram Dev, for example to date shows a total of 125 authored emails over a ten (10) year period with 47 of those since January 1, 2004 until the present.

Per our evaluation of AZ's produced data, I believe that the supporting number of authored emails for some custodians is abnormally low for a person in his position.

**PROXIES**

Proxies are usually administrative assistants, secretaries or other employees charged with assisting managers.  It is common to find Proxies within the upper ranks of a corporation.

As is shown in AZ's production AZ/SER 0562051 ([Exhibit 5](#)) emails were sent by Proxies on behalf of AZ employees.   Proxies would have equal access to their Custodian's data and may themselves keep exclusive data on their behalf.  Custodians and their Proxies typically work closely together.  Custodial productions must include Proxies in order to recover all relevant email.

Per our evaluation of AZ's produced data, no Proxy Sourced documents have been produced.  This indicates that AZ has not produced emails authored exclusively or received exclusively by Proxies.

## Unreasonable Keyword Search

AZ's Keyword Search methodology is flawed in many ways:

### Inadequate Scope

As is shown by AZ's provided search terms list ([Exhibit 6](#)) the scope of their very limited search failed to include many obviously relevant terms such as: quetiapine, endocrine, diabetic, metabolic, atypical, second generation, and others.

By failing to adequately develop a comprehensive keywords list, documents that would clearly be relevant would not be located or produced.

### Synonyms

As is shown by AZ's provided search terms list ([Exhibit 6](#)) the scope of their very limited search failed to include synonyms for obviously relevant terms such as: diabetic in addition to diabetes, endocrine in addition to diabetes AZSER0780272 ([Exhibit 7](#)), and others.

By failing to adequately develop synonym lists for key relevant search terms, documents that would clearly be relevant would not be located or produced.

### Acronyms

As is shown by AZ's provided search terms list ([Exhibit 6](#)) they failed to use common acronyms such as DM (for diabetes), they failed to use highly relevant company acronyms such as SLT (Seroquel Leadership Team) or SBT (Seroquel Brand Team) and they used acronyms such as "NIDDM" but didn't use the spelled out term the acronym represents - "Non-Insulin Dependant Diabetes Mellitus".

By failing to adequately search for both the acronym and it corresponding basis, documents that would clearly be relevant would not be located or produced.

### English vs. American English Spellings

As is shown by AZ's provided search terms list ([Exhibit 6](#)) they used hyperglycemia but not hyperglycaemia .

By failing to adequately search for both English and American, documents that would clearly be relevant would not be located or produced.

### Common Misspellings and Abbreviations

As is shown by AZ's provided search terms list ([Exhibit 6](#)) they failed to search for common misspellings and abbreviations for Seroquel.

By failing to accommodate for both common misspellings and abbreviations, documents that would clearly be relevant would not be located or produced.

## Stemming

As is shown by AZ's provided search terms list (Exhibit 6) they used plurals such as "antipsychotics" but not "antipsychotic" and "Tremors" but not "Tremor".

By failing to adequately search for the base singular word using stemming, documents that would clearly be relevant would not be located or produced.

## Format Variations

As is shown by AZ's provided search terms list (Exhibit 6) they failed to use common format variations such as words with spaces or hyphens like "anti-psychotics" or "anti psychotics" for "antipsychotics".

By failing to adequately search for common format variations, documents that would clearly be relevant would not be located or produced.

## Non-Searchable Characters

As is shown by AZ's provided search terms list (Exhibit 6) they used non-searchable characters in search words such as "DTC ad!". The "!" or Bang character may be a reserved search engine character.

By including non-searchable characters, documents that would clearly be relevant would not be located or produced.

## Search Conclusion

Attached is the Plaintiff AZ Search Terms List (Exhibit 8) showing keyword search criteria and a list of keywords and phrases that should eliminate many of the problems identified above. AZ should have taken steps to ensure a comprehensive and defensible keyword search list. Normally this would be finalized by an interview process with designated custodians and other AZ knowledge workers.

This is one of the most deficient keyword lists I have seen in the last decade. The list has glaring inaccuracies and holes. It appears that the list was created by people with little practical knowledge of the subject matter. In all probability it has missed relevant documents.

AstraZeneca / Seroquel ESI Production Report

## Unreasonable Deduplication

Based on our experience and review of the AZ produced TIFF images, Text files and Metadata load files in this case, we believe that a seriously flawed Deduplication method was used.  The use of this flawed method has resulted in numerous errors which have undoubtedly resulted in relevant documents being removed and not produced.

## Custodial Production

We believe that AZ's flawed process has effectively obviated the concept of a custodian all together.  The AZ selected method has eliminated any reasonable way for the Plaintiffs counsel to determine relationships, related message threads and chain-of-custody between Custodians and other AZ employees.  It is impossible to determine if a custodial file contains all of a custodian's documents.  There can be no certainty that metadata for any document identifies all custodians.

## Fielded vs. Hash Method

The standard Deduplication method for electronic discovery is by a hash value ([Exhibit 9](#)).  We believe that AZ is in fact using an inferior (fielded) Deduplication method which has likely resulted in missing relevant documents.

In a Fielded Deduplication method depending on the metadata fields selected, emails that are actually different can be falsely marked as a duplicate and eliminated from the production.   Also, emails that are actually the same can be determined to be different.

Further, this method would actually fail to show all recipients of an email.  This severely flawed Deduplication method would result in missing relevant emails, fail to show vital metadata in what is produced and fail to eliminate some duplicate emails.

This is one of; if not the worst examples of Deduplication that I have ever seen.  This method would have resulted not only in removing relevant documents, but also decimating any semblance of a digital chain-of-custody.

## Technical Errors

The emails, documents and metadata produced lack the most basic standards of production, show severe inconsistency over the entire timeline of the production and show a total failure of any discernable quality control.

## Create Date

ERROR:  The date formats are randomly inconsistent across deliveries.

PROBLEM:  Date and Date range base searches within the database to be unreliable.  Relying on this information would cause Plaintiffs counsel to miss documents in review.

## File Location

ERROR:  This field was not provided.

PROBLEM:  File location is an essential part of a documents chain-of-custody and is essential metadata.

## Source Location

ERROR:  This field was provided, but never populated.

PROBLEM:  Source location is an essential part of a document's chain-of-custody and is essential metadata.

## Starting Production Number

ERROR:  Bates numbers are in an inconsistent format.

PROBLEM:  Would cause improper sorting and searching.  Plaintiffs counsel had to repair to use.   This indicates a lack of basic quality control.

## Ending Production Number

ERROR:  Bates numbers are in an inconsistent format.

PROBLEM:  Would cause improper sorting and searching.  Plaintiffs counsel had to repair to use.   This indicates a lack of basic quality control.

## Custodian

ERROR:  This field was not provided.

PROBLEM:  Custodian is an essential part of a documents chain-of-custody and is essential metadata.  Custodian is normally a single value field indicating the person or source from which the documents were collected.  There is a field called "Sourcename" that contains multiple custodians – however there appears to be no specific custodian associated with a record.

### Last Date Modified

ERROR:  There is a field called "Last Date Saved".

PROBLEM:  In some cases AZ-SER0929181 ([Exhibit 10](#)) emails have this field populated.  This is not applicable Metadata to emails and raises a concern over consistency and transposed Metadata.

### Title

ERROR:  This field is not correctly populated.

PROBLEM:  If the document is an email it is populated with the Subject line.  If it is a document it is populated with the file name instead of the Microsoft Title Metadata of the native file.  This raises a concern over consistency and transposed Metadata.

### Begin Attachments

ERROR:  This field is not populated consistently.

PROBLEM:  Begin Attachments is an essential part of a document's chain-of-custody, associated parent email designation and is essential metadata.  Without this information Plaintiffs counsel cannot consistently identify what document attachments go with an email or even if the attachment has been produced.  This raises a concern over consistency and missing Metadata.

### Folder

ERROR:  This field is not always populated for emails.

PROBLEM:  Folder location of an email is an essential part of an emails chain-of-custody and is essential metadata.  Without this information Plaintiffs counsel cannot consistently identify the folder that contained the email.  This raises a concern over consistency and missing Metadata.

### Page Breaks in Text Files

ERROR:  Inconsistent page breaks in text files.

PROBLEM:  This error causes additional labor burden on Plaintiffs counsel by slowing down the review process.  When a full text search is run, the lack of page breaks corresponding to the same single page TIFF file causes the user to have to read throughout the document to find the "hit".  In a two page document this is a nuisance, in a 200 or 2000 page document it is a critical error.  This raises a concern about the processing methodology used to create produced TIFF files.

### Bates Number Formats

ERROR:  Inconsistent Bates number formats throughout the entire population.

PROBLEM:  Bates numbers are the inventory control system for document productions.  Without a consistent format, Plaintiffs counsel would have no consistent way of ordering documents by Bates sequence.   This raises a concern about the processing methodology used and lack of standards.

## Field Order Variations in Load Files

ERROR:  Metadata field order is randomly changes across load files.

PROBLEM:  Example - "CreateDate" was originally the fourth metadata field.  In the 04-09-2007 production for Boornazian, "Author" was the fourth field.  In the 04-09-2007 production for Boorstein, "BCC was the fourth field.  Without a consistent field order in Load files, Plaintiffs counsel would have no consistent way loading production data without having to manually edit out the inconsistencies.  This raises a concern about the processing methodology used and lack of standards.

## Empty Records in Load Files

ERROR:  Metadata load files are delivered with empty records.

PROBLEM:  Plaintiffs counsel database review system gets loaded with blank records.  In the 04-09-2007 production for Dev, forty-one percent (41%) of the Metadata records were blank.  This raises a concern about the processing methodology used and lack of standards.

## Delimiters in Load Files

ERROR:  Inconsistent Metadata field delimiters in load files.

PROBLEM:  Metadata fields become co-mingled in the Plaintiffs counsel database review system.  Load files randomly use "/" or "|" as a comma "," delimiter.  This raises a concern about the processing methodology used and lack of standards.

## Date Formats

ERROR:  Date formats are inconsistent.

PROBLEM:  The Metadata Date format changes throughout the entire production.  Without a consistently delivered Date, Plaintiffs counsel would not be able to correctly sort by Date order or perform Date range searches properly.  This raises a concern about the processing methodology used and lack of standards.

## Fragmented Custodian Data

ERROR:  Emails and their attachments are delivered out of normal order in different load files weeks or months apart.

PROBLEM:  Without delivering emails with related attachments in normal order ([Exhibit 11](#)) Plaintiffs counsel have no way of reviewing Message/Attachment Groups (MAGs) in context as delivered to a custodian.  In the event that one of the attachments is delivered before the parent email ([Exhibit 12](#)) Plaintiffs counsel have no way of knowing that this is an attachment, that is has a related email or that it may have other related attachment documents.

## Conclusions

Taken together the flawed Keyword Search Term List, the flawed Deduplication Method and the Technical Errors clearly resulted in large amounts of missing relevant data and also resulted in a production that is neither reasonably searchable nor deemed to be reliable.  In my opinion, it would simply be faster and more cost effective to start over.