US District Court
Middle District of Florida

**PLAINTIFFS' EXHIBIT**

Exhibit Number: _____5_____

6:06-md-01769-ACC-DAB

**In Re: Seroquel Products Liability Litigation**

Date Identified: _____

Date Admitted: _____

# Exhibit 5

```
 1                    UNITED STATES DISTRICT COURT
                       MIDDLE DISTRICT OF FLORIDA
 2                          ORLANDO DIVISION

 3              Docket No.6:06-MD-1769-Orl-22DAB

 4     . . . . . . . . . . . . . . ..
       IN RE:                         :
 5     SEROQUEL PRODUCTS LIABILITY    :
       LITIGATION                     :        Orlando, Florida
 6     MDL DOCKET No. 1769            :        December 11, 2006
                                      :        2:00 p.m.
 7     ALL CASES                      :
                                      :
 8     . . . . . . . . . . . . . . .:

 9
                    TRANSCRIPT OF PRETRIAL CONFERENCE
10              BEFORE THE HONORABLE DAVID A. BAKER
                    UNITED STATES MAGISTRATE JUDGE
11

12     APPEARANCES:

13     For the Plaintiffs:        Larry M. Roth

14                                K. Camp Bailey

15                                Fletch Trammell

16                                Keith M. Jensen

17                                Lawrence J. Gornick

18                                Michael E. Pederson

19                                Dennis Canty

20                                E. Ashley Cranford

21                                Keith Altman

22                                Karren Schaeffer

23                                Scott Burdine

24                                Seth Webb

25     Court Reporter:   Sandra K. Tremel, RMR/CRR
```

1  discussions, requiring what AZ filed with the Court on
2  Friday, which are the Delaware Federal Courts e-discovery
3  default standards that they be used to require AstraZeneca
4  for the first time to give us a list of who their
5  e-custodians are, for example, and other basic disclosures
6  required by the Delaware Federal Court.
7       We submit that not ordering such discussions right
8  now, Your Honor, allows AZ to hypothetically dictate the
9  type, if any, timing of database discovery in which may
10 very well impede if not render impossible our ability to
11 comply with the Court's refreshingly aggressive deadlines
12 on preemption issue, discovery and briefing.
13      Second issue, search terms, Your Honor.  Again, right
14 back to the Delaware default standards, AZ brought to our
15 attention and the courts on Friday, they require the
16 parties meet and confer on search terms to be used to
17 search electronic databases.  All this order does is,
18 again, order the parties hypothetically to confer and
19 reach agreement on search terms, words and phrases.  It
20 also allows plaintiffs the ability to ask AZ and have them
21 run potential second searches because, of course, all
22 we're doing when we guess at search terms is exactly that.
23 Prior litigations would indicate that we would have no
24 idea what relevant terms might be because we don't know
25 the terminology like semi-monthly, that they might or

```
 1   bimonthly that opposing counsel, their entire corporation,
 2   might use to designate certain documents.
 3        Hence, we have asked for, very similar to a
 4   deposition transcript, Your Honor, that a concordance be
 5   produced.  Perhaps ironically a software program called
 6   Concordance which would allow the defendants in their
 7   electronic searches to produce -- pardon the repetition --
 8   a concordance of all the search terms, how often they
 9   appear, and how many different documents they appear in.
10   This would allow the plaintiffs' guesses to become
11   slightly more educated guesses as to those search terms.
12   It's all straightforward and reasonable.
13        It ordered also privileged logs and redaction logs,
14   Your Honor.  I think there's two easy issues under those.
15   The prior discussions between counsel, AZ had expressed a
16   justified concern that they didn't want either such log
17   creation or submission to slow down this Court's schedule
18   for preemption discovery and briefing.
19        Hence, the order before Your Honor contemplates that
20   AZ need not produce a privilege log until something is
21   done and provides them an "or."  Either that they produce
22   all discovery they assert is responsive to plaintiffs'
23   already filed and served first request for production or
24   issues they believe are relevant to preemption discovery.
25   Obviously -- there needs to come to that point, we submit,
```

1   Your Honor, before we could have preemption service.
2   Doing it otherwise would allow the potential production to
3   be halfway through before we're required to review all the
4   evidence, take our depos, and respond to their preemption
5   brief.
6       And secondly, in oral discourse as recently as
7   yesterday, Your Honor, they objected to the type of
8   information we're requiring or asking they be required to
9   give in privilege redaction logs.  Those requirements in
10  the proposed order before Your Honor came virtually
11  verbatim out of Judge Fallon's MDL production preservation
12  protocol order entered in the Propulsil products liability
13  litigation as was our first order was based on.
14      Now, hard copies.  The parties have been unable to
15  reach an agreement on hard copies, documents produced by
16  AstraZeneca.  Your Honor, there is really two types of
17  hard copies.  There is ones already in existence in a
18  format ready to send to a document depository either
19  because copies have already been made or because AZ
20  chooses to put original documents in depository.  For
21  those documents this copying and scanning obligation
22  expense is plaintiffs'.  But there is also documents not
23  in a format ready to go to a document depository.  Such as
24  uncollected or unidentified custodian files.  As we sit
25  here today, we don't have any custodial file identities.

```
 1   We don't have an organizational chart, despite the fact
 2   they produced one a year ago in other litigation.  But
 3   they stand on confidential and have chosen not to give it
 4   to us yesterday.
 5        For all these second type of documents, Your Honor,
 6   the cost of scanning/OCRing and copying is substantially
 7   the same.  For example, if the cost of scanning is 13
 8   cents a copy and the cost of a copy is 12 cents a copy,
 9   you need to, we submit, subtract the cost of maintaining,
10   manning and making a physical depository available.  Those
11   are the producer's costs, not the requester's cost.
12        Further, Judge, we believe to the extent that any
13   equity should play a role in your decision, here --
14   sitting here three months after organizational chart
15   discussion began, not even having one, not having any list
16   of electronic systems or databases, not one or any
17   information about what their document production or
18   retention standards or practices are, we believe the
19   plaintiff should not be further prejudiced with
20   AstraZeneca's choice to hypothetically produce what
21   amounts to a paper dump of documents and custodial files.
22   Because we want to adhere to and have the ability to
23   adhere to this Court's refreshingly aggressive schedule
24   for preemption briefings and discovery.
25        Hence, our order proposes this, Your Honor, as a
```

```
 1   software, that allows them to pull the redacted content
 2   from the electronic image and therefore produce a fully
 3   .txt searchable electronic form.
 4         And, again, we don't believe we should be prejudiced
 5   by their advancement of the searchable privilege and
 6   therefore we should get a fully .txt searchable of the
 7   nonredacted content and of the metadata.
 8         Preservation order, Your Honor.  We believe there are
 9   a number of reasons why it's appropriate in this case.
10   First, despite numerous requests and opportunities
11   including Your Honor's directive on November 20th to have
12   a full discussion of nature of recordkeeping and record
13   retention policies, as I indicated, but to be clear, we
14   don't know of a single recordkeeping practice.  We don't
15   know of a single record retention policy despite at least
16   three scheduled multi-person teleconferences to adduce
17   such information on three of which we had our at least one
18   IT person present who was on the phone.  And on two of
19   which we had a second IT person with us who's presently on
20   the phone.  They've yet to bring an IT person to any of
21   these teleconferences.
22         They propounded -- excuse me -- submitted law for the
23   proposition that need a temporary injunction to enter a
24   preservation order.  Your Honor's I'm sure aware that the
25   Pueblo versus U.S. case, '04, the United Medical case is
```

```
 1  U.S. -- is just three months ago, September '06.  They
 2  said, no, we don't need to meet probably injury or
 3  likelihood of success in order to get a preservation
 4  order.  All you need to do is show that there is a
 5  necessity to have it.  And it doesn't -- is not overbroad
 6  in its imposition on the defense.
 7       Here, Your Honor, we submit that the Court needs to
 8  presume they had insufficient record retention policies
 9  which allows under Pueblo versus United States case,
10  against the United States government in that case, the
11  imposition of a preservation order.  In fact, there is a
12  very onerous one, far more onerous than the one we
13  proposed, which I should mention what is in our proposal,
14  Your Honor.
15       We're only in essence trying to change two things
16  that wasn't in AstraZeneca's Friday preservation proposal
17  to us.  Those two things are, one, asking them to be
18  ordered to further preserve what they represented in their
19  Friday filing.  In a very, very limited way, they are a
20  preserver.  That's the second sentence on page 8 of the
21  order.  And the other is that we simply be ordered to
22  confer on things they haven't gotten despite also repeated
23  requests any information on.  When there's any record
24  retention policy or practice on nonbacked up computers.
25       Central to all drugs litigation is what is on drug
```

```
 1   reps laptops.  We have asked them and have not yet been
 2   told since November 20 whether or not drug rep's laptops
 3   are backed up in a normal course, whether or not they made
 4   any efforts to back them up.  The answer might be, yes, we
 5   might agree to all these things.  Then give us the
 6   information to allow us to review these things and whether
 7   or not third-party e-mail accounts, not e-mails used for
 8   Seroquel business.  What if anything has been done to
 9   maintain that information.
10        So those are the only two things we're asking them to
11   do in terms of impositions on them they weren't agreeing
12   to on Friday by their, what they call proposed
13   stipulation.
14        Second, Your Honor, the complexity of this case, the
15   diversity of the type, nature and of the location of
16   information further justifies at least the preservation
17   order we're proposing.  They brought to Your Honor's
18   attention the Sedona conference.  They support the
19   preservation order.  The Manual for Complex Litigation
20   supports it.  And the Pueblo case I cited including the
21   most recent case on the subject the Capricorn v. Siemens
22   case, Pennsylvania '04, also talks about the fact that
23   many complex cases almost as a matter of course now enter
24   such orders.
25        Another large reason is they actually submitted for
```

```
 1  Your Honor's review the Baycol motion to get rid of the
 2  preservation order as apparently advancing their argument
 3  that they would be subject to a preservation order.  But
 4  that was context of Bayer's representation.  And they had
 5  an affidavit on that said, "All Baycol e-mails, data and
 6  documents are being preserved on unique backup tapes held
 7  in a vault by independent experts safeguarding same."
 8  That's on page 16 of their submission.
 9       We have the antithesis here, Your Honor.  Not only
10  have they never made any such representation, they've
11  never given us any information despite your clear
12  directive that they do so.  Part of the reason we need
13  the -- what we didn't want to do but we felt we needed to
14  do to comply with your directive, give them less than
15  local rule notice of an IT 30(b)(6) deposition as we
16  requested last time.  As we had already seen indications
17  that we weren't going to get the cooperation we were
18  asking for in terms of information that would allow us to
19  intelligently make proposal to Your Honor.
20       ==That IT deposition, Your Honor, we submit should go==
21  ==forward whether or not preservation production protocol==
22  ==order is entered, because without it, we lack the ability==
23  ==to effectively negotiate, understand or appreciate their==
24  ==electronic productions.==  And also, the very Delaware
25  default e-discovery standards they promptly submitted to
```

```
 1  and designed to help resolve many of these cases.
 2       At the moment we don't have a preemption motion
 3  available that we think would help resolve more than a
 4  tiny fraction of the cases and not even, as I said not
 5  even one plaintiff's claim, perhaps just one count of two
 6  or three plaintiffs claims as we now understand it.
 7       I would be happy to answer questions but that is the
 8  essence of why we have rethought our position on
 9  preemption.  And I apologize to the Court for having
10  disappointed the Court on this.  It's obvious that -- we
11  understand why you're disappointed.  We would love to get
12  rid a lot of cases on preemption, Your Honor.  We just
13  don't think we have the ability to do it at this point
14  with the kind of motion that we were contemplating and
15  that Mr. Davis told the Court we wanted to file a 12(b)(6)
16  rifle shot motion.
17       Thank you, Your Honor.
18            THE COURT:  Have you provided the plaintiffs
19  with the corporate organizational chart?
20            MR. MAGAZINER:  No.  But we're prepared to do
21  that almost immediately.
22            THE COURT:  That should have been done in
23  September.  I really don't understand here on December 11
24  "We're prepared do did it almost immediately."  That is
25  weasel language, and you know it.
```

```
 1              MR. MAGAZINER:  Well, Miss Kelber is going to
 2   address the specifics of the discovery issue.  One of the
 3   problems, Your Honor, is we reach agreements with one
 4   plaintiff's lawyer and then another plaintiff's lawyer
 5   says what the other lawyer agreed to, we don't want.
 6   And --
 7              THE COURT:  That should not keep you from
 8   providing basic information that's going to move this case
 9   forward.
10              MR. MAGAZINER:  I agree.
11              THE COURT:  That's not an adequate excuse.
12              MR. MAGAZINER:  I agree with that, Your Honor.
13        Miss Kelber can address that.  I feel sort of sorry
14   pointing to her at this point.  She's been dealing with
15   the plaintiffs constantly on the phone trying to reach
16   agreements, having them renigged, trying to reach new
17   agreements.  I'm not faulting the plaintiffs, but it's
18   been a moving target.
19              THE COURT:  Some of this hasn't been moving.
20   It's going to move.
21              MR. MAGAZINER:  I understand.  I can't speak to
22   what happened in September of course because I wasn't
23   here.  Ms. Kelber has been involved.
24              THE COURT:  Wrong answer too.  I don't want to
25   hear that.  I don't want to hear that again about what
```

```
 1   happened before you came in the case.  I do not want to
 2   hear that.  You're in the case.  You're responsible for
 3   everything that's happened ahead of time .
 4           MR. MAGAZINER:  Well, that's why Ms. Kelber is
 5   here with us today, Your Honor, to address it.  I
 6   apologize to the Court.
 7           THE COURT:  What's the problem?
 8           MS. KELBER:  The first problem is the
 9   fundamental positions of the parties regarding how
10   discovery should proceed.  As you saw from our brief, we
11   originally negotiated with plaintiffs the concept of going
12   forward with the custodial production whereby we would
13   identify document custodians.  ==We will give the plaintiffs==
14   ==the opportunity to prioritize the custodians they were==
15   ==most interested in, and move discovery along on a==
16   ==custodial basis.==  ==That has the benefit of getting all of==
17   ==the Seroquel documents for all of the people who are==
18   ==relevant to the plaintiffs as quickly as possible.==  ==That==
19   ==is the quickest way to get discovery to the plaintiffs.==
20      We have in -- we initially had agreement on that from
21   the plaintiffs Mr. Pennock represented in front of the
22   Court.  That was something plaintiffs were willing to do.
23   Consistent with that, we were agreeable to producing a
24   list of all the custodians we had identified, producing
25   organizational charts and working together with the
```

```
 1  plaintiffs to move discovery along in an orderly fashion.
 2      But the plaintiffs' response was that they would be
 3  happy for us to do that and provide that information to
 4  them, but they would not agree to give us the benefit of
 5  such an approach and would only agree -- would require
 6  also written discovery requests, formal responses to
 7  written discovery requests, certification that we had
 8  searched out documents responsive to every single category
 9  of every single request, and then served very broad
10  discovery requests.
11      I submit that the best way and the quickest way to
12  move things along is by custodial production if that is
13  something that we can do.  We're ready to move forward.
14  We have not been ready to produce any documents because we
15  have had ongoing negotiations with the plaintiffs about
16  the format of that production.  I think we're very, very
17  close on the format of the production.  Many of the issues
18  in the plaintiff's most recent filing are issues that we
19  discussed with them on Friday and agreed with them to
20  investigate the answers to their questions.  For example,
21  some of the metadata fields that they're requesting, we
22  discussed on Friday.  We told them on Friday we would
23  check and see if those were available fields.  And we're
24  doing that.  We do not have an answer today to a question
25  that was raised on Friday but I think we're very close to
```

```
 1   Again, I don't understand why here in the middle of
 2   December that's the case when this issue was recognized
 3   and talked about several months ago.  To the extent that
 4   work needed to be done to find those things done, it
 5   should have been done long ago.
 6        So asking for time to get something done when it
 7   should have been done long ago is, again, not a very good
 8   response.
 9        I'm going to direct that both parties file by
10   Wednesday, noon, your final version of this proposed order
11   dealing with this first round of discovery.  Apparently it
12   doesn't matter now whether anything relates to preemption
13   issues or not.  So any issue as to that will fall out.
14   That should be done then by noon Thursday.  If there's a
15   specific objection that you want to raise as to the other
16   side's proposed order, you could file that and then I'll
17   craft together, some sort of order.
18        I want the defendant to be ready to produce witnesses
19   for deposition.  If need be, I'll preside over the
20   depositions here in this courtroom next Wednesday,
21   Thursday and Friday.  I'll issue the nature of the
22   defendant's document retention policy, database
23   organization and organizational chart.
24        If the parties agree to some other method, less
25   onerous then that, that information will be exchanged
```