US District Court
Middle District of Florida

**PLAINTIFFS' EXHIBIT**

Exhibit Number: _____7_____

6:06-md-01769-ACC-DAB

**In Re: Seroquel Products Liability Litigation**

Date Identified: _____

Date Admitted: _____

# Exhibit 7

```
 1                  UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
 2                         ORLANDO DIVISION

 3              Docket No.6:06-MD-1769-Orl-22DAB

 4     . . . . . . . . . . . . . . ..
       IN RE:                        :
 5     SEROQUEL PRODUCTS LIABILITY   :
       LITIGATION                    :        Orlando, Florida
 6     MDL DOCKET No. 1769           :        March 2, 2007
                                     :        10:00 a.m.
 7     ALL CASES                     :
                                     :
 8     . . . . . . . . . . . . . . .:

 9
                    TRANSCRIPT OF PRETRIAL CONFERENCE
10              BEFORE THE HONORABLE DAVID A. BAKER
                    UNITED STATES MAGISTRATE JUDGE
11

12     APPEARANCES:

13     For the Plaintiffs:         Paul Pennock

14                                 Larry M. Roth

15                                 Fletch Trammell

16                                 Kenneth W. Smith

17                                 Lawrence J. Gornick

18                                 Michael E. Pederson

19                                 Scott Allen

20                                 Scott Burdine

21                                 E. Ashley Cranford

22                                 Dennis Canty

23                                 Lowell Finson

24

25     Court Reporter:    Sandra K. Tremel, RMR/CRR
```

```
 1   than six or seven months to get all -- everything you
 2   need.
 3            MR. PENNOCK:  Well, Judge, we have been here, as
 4   the Court is well aware, for six months already.
 5            THE COURT:  That's what troubles me.  You should
 6   have had some -- a lot of this stuff way before now.  If
 7   you haven't gotten it, that's a problem.
 8            MR. PENNOCK:  We're equally troubled by that,
 9   and the -- you know, by Judge Conway's order, we're
10   prevented from taking any depositions until the first 2500
11   fact sheets are served.  And those, we have about 1700
12   served, and by April 1st, which is the deadline, I think
13   we will have our 2500, and then we will be able to proceed
14   with depositions.
15        And I'm certainly in agreement with the Court that we
16   want to proceed with depositions and start discovery and
17   do it on -- based on the files that we have already
18   received and reviewed.  But I don't know that that -- that
19   we will be able to get all those depositions done in six
20   or seven months, although our schedule doesn't call for
21   much longer than that.
22            THE COURT:  Well, the schedules that both of you
23   proposed that you -- you've got some may be achievable and
24   might allow the possibility of the case getting ready.
25   That's not going to work.
```

```
 1   and collect those documents from those 80 custodians, and
 2   you produce them on a custodian basis because, first,
 3   that's really the only doable way to do it, but second, if
 4   you want to depose somebody, you want to depose somebody
 5   when you know you have got all their documents.
 6        If we were to sort of just go in there the way you do
 7   on a typical smaller case and say, let's just try to
 8   corral all the documents in the company relevant to this,
 9   that's something that you can do in a smaller scale case.
10   You can't do that here.
11        We never have all the documents from particular
12   custodians.  They take depositions of witnesses.  It would
13   turn out there are still certain things that haven't been
14   collected or produced, and we have to go back and do depos
15   and do them again.
16        As the plaintiffs recognized in their paper, they
17   don't want to do that.  If they're going to take a
18   deposition of somebody, they want to take one deposition.
19   They want to know that they have everything from that
20   person.
21        So the custodial way is the way that was agreed to
22   earlier.  It's the way we have been working for months in
23   this case.  It's the way that we are working.
24        ==We have a schedule.==  ==We can produce all the documents==
25   ==no later than September.==  ==That's not that far off.==  ==And in==
```

```
 1   ==a case of this magnitude, that's with unprecedented==
 2   ==celerity.==
 3        ==And I think that the only disagreement that we had==
 4   ==coming in was sort of the pace of doing that.  Whether all==
 5   ==the documents would have to be produced in April, which is==
 6   ==absolutely undoable, or, in some of our negotiations,==
 7   ==whether we produce files from 15 a month as opposed to 20==
 8   ==a month.  That's doable.==
 9        ==That's a gap that can be== bridged, and that's a gap
10   that can allow us, once we bridge it, to get this
11   production done, bring in all the documents that are
12   relevant, whether from these 80 custodians or anybody else
13   that any of us figure out, us or the plaintiffs, and get
14   this case in a position to have it ready within two years
15   as Your Honor ordered.
16             MR. PENNOCK:  Your Honor, may I respond?  First,
17   with respect to these 80 custodians which they have
18   selected, part of the initial problem we have and why
19   we're worried that there will be a lot more people who we
20   will actually want documents from, is that I think the
21   earliest time any of these people worked at the company,
22   at least by a -- per a chart that they gave us, was 1997.
23        Now, this drug -- development for this drug began in
24   the late '80s.  I think the IND was filed in like '88 or
25   '89.  And certainly there is an awful lot of information,
```

```
 1   was done, I guess, a year and a half ago.  I mean, we're
 2   talking the earliest date was sometime in like October or
 3   September of two thousand --
 4            THE COURT:  If they were collected two years
 5   ago, why didn't you have them six months ago?
 6            MR. PENNOCK:  I don't know.  We just got this
 7   last week.
 8       And then that's 30 of them were in 2005.  The other
 9   50 were all, according to this document, collected in
10   2006, and every one of those has a collection date of at
11   least July 6, 2006, which is two months before the initial
12   conference almost to the day that this Court held.
13       So I don't -- I understand that they need to go
14   through and update some of these -- some of this
15   collection, although July 6 is the cutoff that we have
16   agreed to.
17       So I'm not sure why we don't have them.  I'm not
18   saying that there is anything intentional at all.  I know
19   this is in all a very large and substantial project for
20   everyone concerned.  But my point is simply that getting
21   those documents sooner than September, much sooner than
22   September, is something that we think should happen, and
23   once we get them we'll commence reviewing them and we may
24   not -- in fact, I will say it's very unlikely we will
25   conduct even a quarter of those 80 custodial depositions.
```

```
 1     I think that the term "custodian," I think all the
 2   lawyers on both sides of the aisle here have failed in our
 3   job to communicate to the Court what we were talking
 4   about.
 5         THE COURT:  Well, no, I understood what you were
 6   talking about.  I just think the term is not useful,
 7   but -- it doesn't change the reality.
 8         MR. MAGAZINER:  It's a term of art that the
 9   lawyers use, and it's not something the Court -- we're
10   using it without informing the Court what it meant.
11         THE COURT:  Oh, no, I understood what you were
12   doing.  I just -- I think it's a poor term.
13         MR. MAGAZINER:  Well, we apologize.
14         THE COURT:  Given what that word normally means.
15   But I don't understand the approach either.  You just --
16   if you roll these out 15 a month starting the 1st of May,
17   you're not going to finish this year.
18      And then after all that is done, plaintiffs still
19   have lots of other people they're going to want to look
20   at, and this isn't going to get done in time.
21         ==MR. MAGAZINER:==  ==Well, we think we can do all of==
22   ==the 80 by -- including updating from the earlier==
23   ==collection dates up through 2006, the middle of 2006, as==
24   ==Mr. Pennock said -- by September 30.==
25       We invite the Court to enter an order telling us we
```

```
 1   need to complete it by September 30th.
 2        If they, as they look at the documents, decide we
 3   don't want witness Jones, we think he's not that
 4   important, so stop collecting witness Jones files but give
 5   us witness Smith's files instead, we'll do that.  We then
 6   need to collect them from witness Smith.
 7        We have a --
 8             THE COURT:  I mean, I think what plaintiffs need
 9   to do is get all the documents as quickly as you can
10   produce them, with certifications from each of these
11   witnesses as to the efforts they undertook to get things
12   from their files and the files for which they have access
13   and their predecessors', I assume we're getting, since
14   people leave the company or change duties, that through
15   this designation process you have identified everybody --
16   somebody -- there are probably some orphan documents out
17   there that no longer have a custodian because somebody's
18   changed titles or changed jobs or people have left, but
19   that all of the documents are produced.
20        And then plaintiffs figures out, out of those 80
21   people or anybody else whose name has popped up in any of
22   the documents, which ones they really want, which ones
23   they really need.  It won't be most of those 80, I
24   wouldn't think, and it would be a few other people.  So
25   that that gets done way sooner than you're talking about
```

```
 1   interest to me, because as far as I was concerned, nothing
 2   that the two of you were talking about is getting this
 3   case ready fast enough.
 4           MR. MAGAZINER:  I'm only responding to
 5   Mr. Pennock's statement that they have not been proposing
 6   a rolling basis for producing custodial files all along.
 7   And they have been.
 8       I agree with Your Honor -- I'll take this off the
 9   screen.
10       I agree with Your Honor that the negotiations that we
11   have had should not be of interest to the Court.  They're
12   of interest to us because we're trying to reach some
13   resolution.  They shouldn't be of interest to the Court.
14       What should be of interest is what can feasibly be
15   done in a way that will allow us to get documents out in a
16   reasonable time and will allow them to review them and to
17   take the depositions of these 80 or however many of the 80
18   they want to depose on the substance of their documents,
19   and whatever other documents they want that are in the
20   custody of other witnesses within the company, and to take
21   the depositions of those people.
22       That's what we're trying to propose.  We believe that
23   we can get the documents that are already in the process,
24   all of them, to them on a 20 a month or 15 a month basis.
25   That will bring us to September 30, even updating the
```

```
 1   or seven for the general, but I don't think any of that
 2   could happen until discovery.
 3           THE COURT:  Well, that's what I'm -- what do you
 4   need to be able to designate these people?
 5           MR. PENNOCK:  Well, we --
 6           THE COURT:  Make them available?
 7           MR. PENNOCK:  Before we would designate those
 8   people, we would need to learn what our case is.  We would
 9   need to have this evidence as to what the company knew and
10   when did they know it.
11       General causation is a perfect example.  It is, you
12   know, absolutely necessary that our general causation
13   experts have available to them not just what's in the
14   medical literature, but what the company had internally in
15   terms of studies that may not have been published,
16   information that has not yet and probably never will be
17   made available to the public.  And that information is
18   almost always the -- a bedrock for the general causation
19   opinion.
20       One of the reasons is, it's a little difficult to
21   cross-examine a general causation expert on their opinion
22   that the drug can cause these problems when their own
23   people inside, their own medical people inside were
24   drawing the same conclusions ten years ago.
25           So we will need to do the discovery against the
```

1    defendant and review these documents and do some number of
2    depositions, which I anticipate to be in the range, as I
3    said, between -- I think I said 30 to 40 depositions.  And
4    once all of that is done, and the entire record of this
5    case can be made available to our regulatory experts and
6    our medical experts and our clinical epidemiologist, then
7    we will be able to issue those expert reports, which I
8    suggested to be a year from yesterday.  That we would have
9    our generic general expert reports issued, and theirs
10   would be due a month from then, and we'd have two months
11   to get all the depositions done, with any general motions
12   being filed on July 1st of 2008.
13        And we will be essentially done with what really
14   needs to happen in this MDL -- there's no way these cases
15   can be remanded without all of that happening in this MDL,
16   and all of that would be done within two years from the
17   first conference.
18        And I think it's realistic.  I know that we're
19   committed to doing it, and that's the plan that I outlined
20   in my order that was attached to the papers filed by my
21   office.
22            THE COURT:  Mr. Magaziner, what areas and number
23   of expert witnesses do you anticipate from your side?
24            MR. MAGAZINER:  It's hard to say until we see
25   what their experts have opined.  Typically -- I'm