US District Court
Middle District of Florida

**PLAINTIFFS' EXHIBIT**

Exhibit Number: _____8_____

6:06-md-01769-ACC-DAB

**In Re:  Seroquel Products Liability
Litigation**

Date Identified:
_____

Date Admitted:
_____

# Exhibit 8

1

```
 1              UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF FLORIDA
 2                  ORLANDO DIVISION

 3          Docket No.6:06-MD-1769-Orl-22DAB

 4    . . . . . . . . . . . . . . . ..
      IN RE:                        :
 5    SEROQUEL PRODUCTS LIABILITY   :
      LITIGATION                    :       Orlando, Florida
 6    MDL DOCKET No. 1769           :       April 12, 2006
                                    :       2:00 p.m.
 7    ALL CASES                     :
                                    :
 8    . . . . . . . . . . . . . .:

 9
              TRANSCRIPT OF PRETRIAL CONFERENCE
10        BEFORE THE HONORABLE DAVID A. BAKER
              UNITED STATES MAGISTRATE JUDGE
11

12    APPEARANCES:

13    For the Plaintiffs:        Paul Pennock

14                               Larry M. Roth

15                               Fletch Trammell

16                               Michael E. Pederson

17                               Scott Allen

18                               E. Ashley Cranford

19                               Lezzlie Hornsby

20                               Jonathan Jaffe

21                               Scott Armstrong

22                               Dennis Canty

23                               Richard Freese

24

25    Court Reporter:     Sandra K. Tremel, RMR/CRR
```

1    no doubt going to be learned intermediary motions that the

2    physicians knew what AstraZeneca knew when they prescribed

3    the drug to our clients.  There will be, and central to

4    any prescription drug pharmaceutical case, absolutely core

5    to the case, is the deposition of the prescribing

6    physician or physicians in the case.  Without that

7    deposition it's very difficult for plaintiffs to meet any

8    of the burdens in proving the failure to warn case.  And

9    in this case, we will have no doubt many of the such

10   depositions at some point in time.  We will need to rebut

11   the cross-examination that occurs in those depositions and

12   at trial.  But in particular, depositions because in many

13   instances, if not most, these doctors do not come to

14   trial.  They testify by deposition.

15       The same is true of the causation, in causation

16   issues for the diabetes doctors.  There will be extensive

17   cross-examination at deposition of these doctors with

18   respect to causation issues involving this drug case

19   specifically and generally.

20       All of these things are burdens that we have to meet

21   and we have to have the discovery to do them, Your Honor.

22   And the problems that have been coming up I think are

23   crucial to all the issues that the Court will probably

24   have to address today.

25       And if you don't mind I'd like to go through what I

1    over two months after the initial conference.  It took us

2    another month and a half working, trying to work with the

3    defendants to get something that was workable, something

4    that we could review, that we could get through in a

5    reasonable and efficient and effective manner.  Not

6    something that was an utter burden that no one could

7    effectively get through in a reasonable period of time.

8        We finally got that in late December.  And, yet, when

9    we go through the -- we have been through the IND and NDA

10   almost in its entirety, everything they have given us.

11   There is a wholesale lack of metadata with respect to this

12   IND and NDA.  The documents were not produced in

13   chronological order even though we would suggest and we

14   don't know yet because we haven't been allowed any

15   depositions, but we suggest that they're probably

16   maintained in some type of reasonable order by the

17   company.

18       There are a lack of serial numbers, there are

19   numerous documents in this disclosure missing any type of

20   identifying number even though that was the manner in

21   which they were produced.  There is no FDA logbook

22   whatsoever, something that's typically found and disclosed

23   in these NDA productions.

24       There is this CANDA safety database.  This was an

25   electronic format database that was, we believe, being

PROCEEDINGS - April 12, 2007

9

1    utilized at the time that this submission was made to the

2    FDA.  We have references as early as 1996 that the CANDA

3    database was being utilized.  It was the manner in which

4    the defendants would, we believe, produce the safety

5    evaluations and reports to the FDA in an electronic

6    format.  We have -- there is nothing in this NDA that we

7    could find that incorporates this CANDA database.

8    Obviously, a central and core aspect of NDA and our review

9    of it.

10        There are -- we know for a fact that internally from

11   the document review we have already done in the so-called

12   custodial files that have been produced that there were

13   reports of diabetes that the company knew about early on.

14   But in the NDA, we can't find those reports that were

15   being made to the FDA.  Now, of course, if they weren't

16   reported to the FDA, we will be happy to learn that fact.

17   But we are missing quite a number of reports.  And I'm not

18   going to read this into the record.  It's from the

19   document that's currently under the confidentiality

20   stipulation.  But the bottom line is we know that there

21   should be reports in this NDA that aren't there.  And the

22   question, of course, today is where are these reports.

23        Zero telephone contacts with the FDA.  We have no

24   internal documentation regarding the FDA-- regarding the

25   NDA and its submission.  In other words, memos to one

PROCEEDINGS - April 12, 2007

10

 1    another saying this is what we're doing.  This is when

 2    we're doing it.  This is why we're doing it and so forth.

 3    There is no other documentation of contacts other than the

 4    usual telephone contact log.  We don't have them.

 5         There's -- in the periodic safety update reports,

 6    PSUR, typically what we have seen is there will be a

 7    discussion section, sort of an overview or a foreshadowing

 8    by the company of what is in the PSUR.  We've found no

 9    such sections in the PSURs that were given to us.

10         There's been no certification of completeness for

11    this production.  Again, it was produced in what we felt

12    to be an unusable format on November 10.  We're several

13    months out.  We have no certification of completeness and

14    I think having gone through it, we know why.  It is not

15    complete.

16         I have to say the same seems to be true for the

17    defendant document production that's occurred to date.

18         This is sort of an outline of the timeline we were to

19    be given custodial files.  In other words, witness files

20    for different company witnesses as of January 5th.  We

21    ultimately got something that we thought, after much

22    debate, would be usable on February 8.  We have got a part

23    of eight witnesses' files, a part of it.  And then there

24    was a supplementation of that on March 16 as indicated

25    there, and March 17.  Part productions.

1          Now, I'd ask the Court to imagine getting huge

2     volumes of electronic documents, dedicating resources and

3     time to review them, and it's obvious that they're partial

4     productions.  But we don't even know what parts we have

5     been given and what parts we haven't.  In any event they

6     are certainly not complete and there's been no

7     certification of the completeness.  And as of two days ago

8     we're still getting partial on the very first eight

9     witnesses.  And again, we received no certification of

10    completeness because they obviously are not.

11          This Court has ruled that things should be given at a

12    steady rate.  A lot of these issues have to some extent

13    been aired or at least mentioned that they were problems

14    earlier on in the year and the Court ruled that these

15    files should be given at a steady rate by June 30th.  We

16    seem to be having a problem with that as well.  I mean, as

17    I say here, I think it's anything but a steady rate.  On

18    April 3, three months after the initial incomplete

19    production of eight files, we got 20 more files which I

20    suspect are incomplete as well, although they were

21    produced only nine days ago and we're not obviously into

22    them very deeply yet.  But I suspect they're incomplete.

23    We certainly received no certification of completeness.

24    And in any event it's certainly not a steady rate.  I mean

25    it's something of, as I put it here, I really think it's

1    something of a document dump.  That's not helpful.  That's

2    not efficient.  And it does not allow us to effectively go

3    about meeting all the burdens that we need to meet in all

4    of the discovery that has to take place in this case, in

5    all of the motion practice that has to take place in this

6    case.

7         I'll skip through this, but essentially, Judge, I

8    just laid out here a definition of what's customarily

9    viewed as a custodial file in other litigations we have

10   been involved in, and it's a very broad production that

11   should be taking place, and we're simply not getting it.

12        Most -- not most importantly, but of extreme

13   importance is the lack of e-mails.  As the Court might

14   imagine, for 10 years now e-mail communication within any

15   entity is one of the primary means of communication and

16   also one of the most fertile areas of evidence.  For

17   everything we have to do that I outlined at the beginning,

18   Vikram Dev is one of the key witnesses in this case.  This

19   is one guy we know we will be deposing out of the 80 names

20   they have given us.  He's absolutely key.  He's one of the

21   chief guys with respect to this whole, all of these

22   issues.  No e-mails.  We believe he was there at least as

23   of 1998.  But we're still not even certain of that because

24   we haven't gotten discovery 30(b)(6)wise to determine

25   that.

PROCEEDINGS - April 12, 2007

16

1    possible claimants, and this drug started in development

2    in mid 1980.  There were no doubt, you know, 100 or more

3    people throughout those years.  Some of whom aren't with

4    AstraZeneca any more that worked on this drug and had

5    relevant information of this drug.  But what we need we

6    certainly don't have yet and we're not necessarily going

7    to have by June 30 even if they do everything that they're

8    supposed to do.

9         And there will need to be along the line here

10   tremendous input, I would suggest to the Court, by we, the

11   plaintiffs' lawyers, on what we think we have to have,

12   what we think we're missing, who the people are that we

13   have to have.  And all of that we think needs to be

14   substantially accomplished before we can get into areas

15   that is the next step up from this before we can get into

16   areas where this material is fundamental to the

17   prosecution of these cases.  In the depositions of the

18   treating and prescribing doctors before we can get there,

19   we need to know what our case looks like, what do we have

20   to defeat and rebut the summary judgment motion, the

21   learned intermediary defense and the other things that I

22   have outlined earlier.  What do we have?  We won't know

23   that until this process has been completed.  And right

24   now, we are -- we're quite stymied in the efforts that we

25   have been trying to make to put this case together.

1    have the bare backbones of this case.

2         And we know there's other issues on the agenda and we

3    will be glad to talk to them.  But as we move forward in

4    this litigation, and all of us who've been involved in

5    MDLs.  Your Honor, I represented doctors for 15 years, the

6    doctors for 15 years at MDLs in drug company litigation.

7    Breast implants, Vioxx, currently.  I represent and I'm on

8    the MDL committee for doctors in hormone replacement

9    therapy.  I'm defending the doctors.  I defended them in

10   Phenfen, I defended them in Propulsid.  We have never not

11   been provided this information.

12        And so any other item that needs to be discussed

13   today has to be taken in context of just common sense.

14   And 200 e-mails from a brand manager and zero e-mails from

15   a critical witness goes beyond explanation.

16        THE COURT:  Have plaintiffs made any

17   30(b)(6)designations?

18        MR. ALLEN:  Have we made designations?  We have

19   been -- and I haven't been on the phone calls -- we're

20   prepared to go forward and take them now.  I know there

21   was a phone call.  Who was on it this week?

22        THE COURT:  Did you by March 31 send out your

23   designations of what your 30(b)(6) categories were?

24        MR. PENNOCK:  We did.  We indicated a number of

25   categories in which we would --

PROCEEDINGS - April 12, 2007

21

1    these issues. And if Mr. Pennock would like to send us a

2    slide show, we will be able to put together a response and

3    respond on the merits to many of these detailed issues

4    he's raised, but I cannot do so today.

5         Mr. Freebery will be able to respond to some.

6              THE COURT:  We will take a recess so that you

7    can you have that discussion and then we will resume.

8              MR. MAGAZINER:  I won't be able to do it in a

9    recess, Your Honor.

10             THE COURT:  I'll bring you back here tomorrow

11   morning at 9:00.  I want these issues discussed before you

12   come to these conferences.  What don't you understand

13   about moving this case forward?

14             MR. MAGAZINER:  They weren't brought to me, Your

15   Honor, so I couldn't discuss them.

16             THE COURT:  Well, but you know you have an

17   obligation to see if there are any problems, is this

18   satisfactory.  Particularly, you haven't certified the

19   completeness of these.  How are you going to get these

20   files produced by the end of June?

21             MR. MAGAZINER:  Mr. Freebery will announce --

22   will describe to the Court where we are.  I am confident

23   that we will meet the Court's deadline.  We're going to

24   meet it without a problem.  It's -- it is a tremendous

25   effort we have undertaken.  It is going well now.  We have

PROCEEDINGS - April 12, 2007

22

1  put in place a huge complicated structure to make sure we

2  meet the Court's deadline.  Plaintiffs have a problem with

3  it, all they have to do is pick up the phone, send me a

4  letter, send me an e-mail and say, we didn't get any

5  e-mails from whatever, Karen Mueller.  Can you look into

6  that.  I would then ask Mr. Freebery and his team to look

7  into and we respond and tell them what the story is.

8  Maybe there are 800,000 pages of e-mails coming the next

9  day.  I don't know.  But they have to give me the issue,

10  express their concern in order for me to respond.  We will

11  then do our investigation and be able to respond.  But

12  Mr. Freebery can describe to you where we are in document

13  production, Your Honor.  I do know that we have produced

14  about two million pages already and we're on track to

15  produce 10 or 15 million more by June 30.

16      May Mr. Freebery address this, Your Honor?

17          THE COURT:  All right.

18          MR. PENNOCK:  If I may I just would like to

19  alert the Court that we did have a telephone conference

20  with Mr. Magaziner.  And the issues surrounding the

21  document production and whether or not we are going to

22  raise problems that we had with the document production

23  was specifically addressed.  And we -- I wouldn't raise

24  conversations I have, but he just said all you have to do

25  is pick up the telephone.  Mr. Bailey I believe was on

PROCEEDINGS - April 12, 2007

23

1    that call, Mr. Camp Bailey was on that call, and we said,

2    we said to Mr. Magaziner, we do have problems with the

3    document production.  They're extensive, and we intend to

4    address them with the Court under categories of this

5    agenda.

6            MR. ALLEN:  And, Your Honor, I think with all do

7    respect to my opposing counsel and my co-counsel, we're

8    now putting form above substance.  It is not our burden.

9    He says we need to call him.  We need to go through the

10   thousands of pages and we need to tell him the obvious

11   that Vicram Dev, and if I mispronounce it I apologize, had

12   zero e-mails and they're brand manager had 200?  It puts

13   the burden on us.  Their burden under the federal rules,

14   under any state I'm aware of and as their promises to us

15   is to give us a complete file.  And so, Your Honor,

16   they're on notice today and the rest of this litigation

17   they have to give us a complete file, not to come before

18   the Court and say, Your Honor, we didn't know.  They're

19   the ones that do know.  They produce the documents.  And

20   we shouldn't have to come and beg before this Court at

21   every hearing and identify more and more problems.  We

22   want the entire file of these witnesses.

23           MR. MAGAZINER:  We're producing the entire file

24   with the witnesses.  All I'm suggesting is if we -- the

25   plaintiffs in their review identify a particular problem

1   documents for all of the 80 custodians out the door and in

2   the plaintiffs' hands.

3       Your Honor, at this time we're in full compliance

4   with the case management order.  We produced over one and

5   a half million documents in the month since we were before

6   Your Honor last.

7       It's over two million documents in total.  We

8   streamlined the collection and review process now.  So

9   things are going to start moving in a more quick manner

10   and it's going to get out in a plaintiff's hands in a

11   much -- in a much quicker time period.

12       We're on target, Your Honor, to meet the Court's

13   June 30, 2007 deadline for a completion of all the

14   documents for all of the 80 identified custodians.

15       And frankly, Your Honor, we're moving as fast as we

16   can.  At this time we have three separate attorney review

17   centers.  We have 225 contract lawyers reviewing these

18   documents from 7 in the morning to 7 in the evening.  We

19   have in the neighborhood of 45 to 50 associates dedicating

20   all their time looking at these documents, to getting them

21   through our process and getting them over to the

22   plaintiffs.

23       But now for the first time, again to echo what

24   Mr. Magaziner said, we're hearing about these specific

25   issues and we're fielding these specific problems the

1    plaintiffs have brought up concerning some of issues.  And

2    for the most part, I don't know that these need to be

3    addressed before Your Honor today, especially if they

4    could have been trouble shot before the hearing.

5         I mean, if and when they contact me or someone on the

6    discovery team, we try to do the best to accommodate any

7    issues they have.  For example, just in the last week they

8    have identified 10 of their first deponents.  We have

9    taken those 10 individuals.  We have moved their

10   production lines up to a priority level and we have them

11   in line to be the next document productions that are going

12   out the door.

13        To address some of their issues, as Mr. Pennock did,

14   though, first concerning the NDA and IND.  Your Honor, we

15   produced 480,000 pages which consists of our entire

16   file -- but for, our entire file for the NDA and IND.

17   That is a global regulatory database.  We gave them our

18   entire gel database and put it up on a system and gave

19   them access to it.  There was no systematic restrictions

20   of anything that came -- was in that database.  The only

21   thing that was redacted in any way was confidential

22   patient information and that was redacted out of it.

23        I understand that there is one database and I don't

24   know if it's one of the ones that plaintiffs talked about

25   because, again, we haven't had these conversations before

 1   yet.  What is in their hands for the first eight is

 2   approximately 1.2 million pages.

 3          THE COURT:  Don't tell me 1.2 million pages.

 4   That doesn't mean anything.  It doesn't mean anything.

 5          MR. FREEBERY:  What is left over is a small

 6   fraction that had either technical issues or that there

 7   was a privileged document that needed negotiation and

 8   we're trying to get that out the door.  We suspect they'll

 9   have complete productions within a week for all the first

10   eight.  Now --

11          THE COURT:  So in the seven or so months that

12   the case has been here you have done eight of these.

13   These are the ones you picked.  And out of the other 32

14   there's been no production whatsoever?

15          MR. FREEBERY:  That's not true.  There are

16   partial productions and that was one of the issues

17   Mr. Pennock brought up, that we have given part

18   production.  Because what we did, we didn't want to --

19          THE COURT:  I thought the whole point of this

20   custodial designation was that they be organized by the

21   witness.

22          MR. FREEBERY:  They will be organized by the

23   witness, Your Honor.  But what we didn't want to do is

24   wait till -- because we wouldn't have anything in their

25   hands now if we waited until we had the complete

PROCEEDINGS - April 12, 2007

29

1    production because of some of the issues dealing with the

2    vendors.  So I think they would be here complaining about

3    that if we didn't give them anything.  Instead, we have

4    given them a head start and given them $2 million (sic) to

5    get started at.  We produced at a steady rate what the

6    Court has ordered us to under the case management order.

7            THE COURT:  How is a steady rate if all the rest

8    of it is going to come out between now and the end of

9    June?

10           MR. FREEBERY:  Again, Your Honor, we have moved

11   these things -- it's almost like an assembly line where we

12   had to start and collect these things.

13           THE COURT:  You had no idea you might have to

14   produce documents when this case started.  You didn't --

15   that didn't come into your mind until March?

16           MR. FREEBERY:  No, and the client has been in

17   the process of identifying the custodians, has been

18   collecting the documents, and once they -- I can tell you

19   that all the documents are out from the client.

20   AstraZeneca now has all of the custodial productions are

21   in the hand of the vendors.  It's just moving it through

22   the system, getting them uploaded, getting out the

23   redacted information, voluntary reporter information, the

24   patient confidential information, and then getting it in a

25   form that that plaintiffs have negotiated and agreed to so

PROCEEDINGS - April 12, 2007

30

1    we can get up on their system so they can use it and have

2    it in a form where it's easily searchable for them, and

3    where, you know, it's usable for trial and all these

4    different jurisdictions.

5         Now, just to move forward.  What we expect to have

6    within the next week all -- the complete productions for

7    their first eight.  Because we have the system, we have

8    everything moved through the system to the final vendor.

9    We think that we're going to be able to follow-up in very

10   short order with complete productions for their next 10,

11   the ones they have identified as deponents.  We're hoping

12   within two weeks to have those in complete productions in

13   their hand.  So at that point they'll have 18 or -- excuse

14   me -- 17, because there's an overlap, 17 full productions

15   in their hand by that point.  And we're going to continue

16   on a rolling basis and we're on a timeline.  We have the

17   schedule in place to make the Court's imposed deadline of

18   June 30th.

19        Again, we haven't filled out a certificate of

20   completeness they complained of, because, number one, he's

21   correct that none of the productions are complete.  Within

22   a week or so hopefully that won't be an issue and they'll

23   have eight certificates of completion in their hand.

24        On the e-mail issue, Your Honor, there's absolutely

25   no systematic restrictions on e-mail.  There is no initial

PROCEEDINGS - April 12, 2007

31

1    date restriction on e-mail.  In fact, 80 percent of the

2    documents that we're producing, Your Honor, are electronic

3    documents.  Only 20 percent are actually in some type of

4    paper form.  But I think that's part of the reason.  I

5    think what they're going to find is when we do get the

6    complete productions run through and in their hands,

7    there's going to be a representative number of e-mails.

8         Again, to get them documents, to get them started to

9    produce on a steady rate, we gave them the easiest

10   documents that we could get out the door first which were

11   the paper documents normally not found in the e-mail form.

12        So I think once they have these productions in their

13   complete form, it's going to be a representative number.

14   If it's not, I mean, again, pick up the phone, call me, we

15   will find out if there's a reason, then we will get them

16   to them.

17        The identification of the 80 custodians was another

18   issue the plaintiffs brought up, and really we're hearing

19   the complaints of this for the first time in the papers

20   they filed this week.  And then here -- but they have

21   assurances, Your Honor, in the case management order that

22   if they want additional -- if they meet some of their

23   responsibilities and they want additional custodians, they

24   can come to us and talk to us and if Court says, yeah, go

25   get those people too, we will do that.  We will follow-up.

PROCEEDINGS - April 12, 2007

32

1   They have not.  So I don't understand why they're coming

2   here complaining that there is --

3              THE COURT:  I don't know who the 80 are and you

4   haven't given them any --

5              MR. ALLEN:  I can answer every one of the

6   questions including that one.

7              MR. MAGAZINER:  May I hand this up to the Court,

8   please?

9              THE COURT:  I'm listening to Mr. Freebery.  You

10  turned this over to him.

11             MR. FREEBERY:  And I'm going to finish up here,

12  Your Honor.

13      But Mr. Allen, again, mentioned the complete

14  productions that none of them are there in their hands.

15  Again, within a week we expect to have the eight there.

16  Within another two weeks of that we expect to have the

17  first 10 the deponents that they have identified.  We're

18  in compliance right now with the Court's case management

19  order.  We're on track to make the 6-30 deadline.

20      Again, in the last month, Your Honor, since I have

21  been on board we given the plaintiffs over one and a half

22  million documents, and it's coming out at a steady rate

23  and we're going to meet the deadlines.

24             MR. MAGAZINER:  May I just hand something to the

25  Court?

PROCEEDINGS - April 12, 2007

35

1  think we need.  If they're so burdened by their own choice

2  of 80 custodial productions, maybe we need to switch to a

3  different system of getting these documents out.

4           MR. MAGAZINER:  Much of this I don't understand.

5  We're going to produce in accordance with the Court's

6  scheduling the complete custodial files with certification

7  for all 80.  Back in December 11, plaintiffs agreed that a

8  custodial production was appropriate.  We submitted it to

9  the Court on December 12, which the Court modified

10  slightly, but not in that regard, agreeing that the first

11  thing that would happen is there would be custodial

12  production.  Thereafter, as Mr. Pennock just said,

13  plaintiffs would have the right to seek additional

14  discovery if after they were reviewed the documents from

15  the custodial productions they felt that there was more

16  that they needed.  It didn't say otherwise.  That's in the

17  Court's order.

18           We are going to complete the production of the 80

19  custodial files by June 30.  We're not going to get them

20  all to them by June 29.  We're doing them in an

21  increasingly rapid pace.  As Mr. Freebery said, we will

22  get them all out in great numbers, as many as a million --

23  as Mr. Freebery said they got out a million and half out

24  in the last month since he first got involved.  We're

25  going to get more than that out each month from here on.

1   They're coming out in great volumes, and they will be

2   complete and they'll be certified by June 30.  That's our

3   promise to the Court.  That was our promise to the

4   plaintiffs.  If they have a particular --

5              THE COURT:  Well, when I set the June 30

6   deadline based on your representations as to how you chose

7   to produce these things, I thought having this conference

8   a third of way through from that time to the deadline that

9   we would have a third of them done by now.  We have got

10  none.

11             MR. MAGAZINER:  It's as Mr. Freebery said, it

12  took us --

13             THE COURT:  But that's the excuse I heard in

14  September.  It's the excuse I heard in November.  It's the

15  excuse I heard in December.  There's just no reason why

16  that should have happened.  There's no reason why the

17  plaintiffs should be subjected to -- I'm totally

18  underwhelmed by the production that's been provided by the

19  defendant to date.

20             MR. MAGAZINER:  I understand that, Your Honor.

21  And I assure you that we're concerned about Your Honor's

22  disappointment.  What I can tell Your Honor is we now have

23  in place with Mr. Freebery and his firm and all the

24  lawyers working with him a process to get all these

25  documents to the Court by June 30.  We put that whole

 1   thing in place because we were mindful of how important it

 2   was to the Court that we complete the production of our

 3   documents on that schedule.  And we will do so.  And we

 4   will do so -- we're not doing so as I said by producing

 5   them all in the last two weeks of June.  They're going to

 6   come out at a steady rate, in increasing numbers week

 7   after week, as Mr. Freebery has described.

 8        Your Honor will recall that we suggested a later

 9   deadline because we were concerned about our ability to

10   meet it.  Your Honor said June 30.  We enhanced our staff

11   even more.  We added many more lawyers, more vendors, more

12   components to this assembly line, as Mr. Freebery said, to

13   make sure that we could do what Your Honor has ordered us

14   to do.  And we will do it.

15        Plaintiffs say that they don't think we will do it,

16   but I guess the proof will be in the pudding.  I'm telling

17   you that I'm confident that we will do it based on the

18   mammoth effort now under way and the processes that we

19   have developed to do it.

20        And to Mr. Allen's point, of course we will certify

21   each custodian to be complete when we have completed that

22   custodians's production.  As Mr. Freebery said, within a

23   week we ought to be able to certify the first eight;

24   within another week or two, the next ten and so forth and

25   so on.  We will complete this process by June 30 and

1    schedule those things even if you haven't got the specific

2    names.

3            MR. ALLEN:  Third-party discovery would

4    necessitate by necessity their documents to determine

5    who -- what third-party vendors, advertisers, producers

6    they need.

7            THE COURT:  But I don't understand how you're

8    possibly going do get those scheduled if you haven't even

9    come to grips with it.

10           MR. ALLEN:  You and I totally agree on that.  I

11   totally agree with the Court.  But we're not waiving it.

12   If in fact we do not have the complete document production

13   it is almost asking me -- the term is putting the cart

14   before the horse.

15           THE COURT:  I'm not saying you should take the

16   discovery, but you should be able to get your arms around

17   the kind of people you need, how many there are, and

18   figure out which weeks in October you're going do these

19   kind of witnesses, which ones you will do in November.

20           MR. ALLEN:  I can tell the Court -- I can tell

21   the Court but he has a slide presentation.

22           THE COURT:  That's what my order anticipates.

23           MR. ALLEN:  Yes, sir.  As we said on the record

24   last hearing.  We need marketers, advertisers, clinical

25   trial researchers.  But we have to get the documents

PROCEEDINGS - April 12, 2007

76

```
 1   them.
 2              MR. MAGAZINER:  We will give this a very high
 3   priority.  We won't wait until September to seek it.
 4              THE COURT:  Because it just simply will not
 5   work.
 6              MR. MAGAZINER:  We understand that, Your Honor.
 7              THE COURT:  All right.  What about the flow of
 8   defendant's initial documents?
 9              MR. MAGAZINER:  We have discussed this with the
10   plaintiffs.  I think they are in agreement with this plan.
11   We have already discussed the eight and the next 10, the
12   10 being the witnesses whom they have listed as their
13   first highest priority witnesses for deposition.  It's
14   actually nine because one of the first eight custodians
15   is also on their list of 10.  So those 17 we have already
16   discussed.
17         There's 63 more.  By Monday, this coming Monday, the
18   16th of April, we will give plaintiffs the names of 21
19   custodians, 21 additional witnesses for whom document
20   production can be complete on or before May 14.  By
21   Monday, April 23rd, that's a week from this Monday, we
22   will give plaintiffs the names of 21 more witnesses or
23   custodians by whom production will be complete no later
24   than June 11.  And also another 21 by whom production --
25   for whom production will be complete no later than
```

1    June 29.

2        So we don't have those names today.  We're trying to

3    get a sense of how to prioritize them in terms of our

4    ability to turn out 21 on each of those dates.  But we

5    will give the names of first 21 to plaintiffs by this

6    coming Monday and names of the remaining 42 in two groups

7    of 21 each by Monday, the 23rd.

8        We discussed that during the break with plaintiffs'

9    counsel.  They said they had no objection to that

10   proposal.

11          MR. ALLEN:  Let me make sure the record is

12   clear.  I'm not arguing with Mr. Magaziner's

13   characterization.  If it's meant to be cooperative and we

14   were ordered to try to cooperate at the break, Your Honor,

15   our position has been and remains it should have been

16   done.  So I don't want the record to reflect that somehow

17   we agree that what's happened in the past is okay.  What

18   we agree to now is whatever schedule he just proposed to

19   the Court.  That's the schedule that they should comply

20   within that time period and that we should also, and I

21   think Mr. Magaziner forgot to say, when those files are

22   produced, we need a certification that those files have

23   completely been produced.

24          MR. MAGAZINER:  Yes, I said before the break

25   that when we complete the production we will give the

```
 1    plaintiffs certification.

 2             MR. ALLEN:  But make sure we have a clear

 3    record, the certification should occur at the time of the

 4    final production, not at some later date in the future,

 5    Your Honor.

 6             MR. MAGAZINER:  That's our intention.  That's

 7    what I said before the break.

 8       Plaintiffs have repeatedly said that they think this

 9    should have been done more quickly.  I don't think Your

10    Honor wants to hear a lengthy explanation of whose fault

11    it is that wasn't done more quickly but if Your Honor

12    wants to hear that, and wants to hear why we're not

13    further along in the process now, we can have that

14    discussion.  Suffice it to say we have understood the

15    Court's sense of urgency.  We are intending to respond to

16    it in the way that I have just outlined, and that includes

17    the certificates of completeness, certifications of

18    completeness that Mr. Allen just referenced.

19             THE COURT:  Let me -- I don't want to hear any

20    more about the background of it.

21       The plaintiffs are satisfied that this will move

22    things forward.  It sounds like it will.  We go forward on

23    that basis.

24       Let me emphasize again to the extent I have not made

25    this clear, with respect to these conferences that we have
```