US District Court
Middle District of Florida

**PLAINTIFFS' EXHIBIT**

Exhibit Number:  16.10

6:06-md-01769-ACC-DAB

**In Re:  Seroquel Products Liability Litigation**

Date Identified:

Date Admitted:

# Exhibit 16.10

## Jaffe, Jonathan

**From:** Dupre, Andrew [ADupre@McCarter.com]
**Sent:** Monday, June 25, 2007 3:05 PM
**To:** Pederson, Mike; Jaffe, Jonathan; Rhonda Radliff
**Cc:** Freebery, James J.; Winchester, Tony; Yeager, Joe; Windfelder, Makenzie
**Subject:** Update on Technical Issues

Hello Mike and Jonathan:

We previously discussed at multiple meet and confer sessions that AstraZeneca would keep Plaintiffs informed of the pace of implementing the agreed resolutions to technical issues as identified in "Plaintiffs Joint Statement of Resolved Issues" filed in the MDL on June 7, 2007. I write today to do so, addressing the issues in the order that they appear in that filing:

1. Corrected Load Files: The vendor's current best estimate for completing this job is July 15. I have ordered the vendor to stagger the production so that it is possible (I believe likely) that we will be able to produce new load files to Plaintiffs for some custodians sooner than that date.

2. Metadata consistency: We have implemented all agreed solutions. All subsequent productions to Plaintiffs will have the agreed Bates, Order, and naming conventions.

3. Swapped MetaData fields: the vendor has completed the agreed investigation of this issue and certified to AstraZeneca that it has found no instances of swapped metadata in the underlying TIFF files. Instead, the vendor has stated that this issue stems solely from inconsistent ordering of objective coding fields in the load files. As we notified you last week, this issue will therefore be entirely corrected by the implementation of #1 and #2 above.

4. Page Breaks: The vendor has completed testing this solution, and is implementing it for subsequent productions. The first production containing this solution will be received by Plaintiffs today - the revised Foreign Language production discussed in #12 below. The vendor's current best estimate for completing new extracted text files for all custodial productions is July 31. I have ordered the vendor to stagger the production so that it is possible (I believe likely) that we will be able to produce new extracted text files to Plaintiffs for some custodians sooner than that date.

5. Excel Sheets: The vendor has constructed a program to implement this solution. The most difficult issue to overcome was normalization of the sheets, so that rows will be unhidden etc. as they would be on a TIFF. The vendor's current best estimate for completing Excel sheets for all custodial productions is July 31. I have ordered the vendor to stagger the production so that it is possible (I believe likely) that we will be able to produce Excel sheets to Plaintiffs for some custodians sooner than that date.

6. Objective Coding: AstraZeneca collected for use by its own lawyers some objective coding fields in excess of the 17 metadata fields identified by CMO2 for all documents. As we have previously discussed, AstraZeneca will produce documents in accordance with the requirements of CMO2.

7. Privilege Logs: AstraZeneca has reconstructed the privilege log for the Initial 8 custodians to contain the agreed control number. We have discovered that the control number field contains a prefix "P" for paper document, "E" for an electronic document collected from the custodian's work computer (such as, for example, a Word document saved to a C: drive), and "ED" for a document collected electronically from AstraZeneca's share drives and networks (such as, for example, a PST). We believe this nomenclature provides extra information to Plaintiffs and therefore should not cause issues with the solution, but please contact me if you disagree. We will provide you a copy of the log in the next few days and will welcome comments on the agreed to changes before reconstructing the balance of the log.

8. Redactions: AstraZeneca has reviewed Jonathan Jaffe's report of 2416 documents containing multiple redactions. My initial review suggests that a substantial portion of those documents are case report forms for which each reason for redaction should be obvious. AstraZeneca has agreed to conduct a line-by-line review for a subset of these documents for which Plaintiffs believe redaction reasons are unclear or particularly important. AstraZeneca awaits Plaintiffs' identification of that subset. In contradiction with the June 7 filing, AstraZeneca does not believe it promised to provide redaction logs. This issue escaped AstraZeneca's attention due to the extremely late submission of the filing (11:40 a.m.

when it had to be filed by noon) by Plaintiffs, and the subsequent dispute that arose over Plaintiffs' attempt to insert non-agreed language into the certification provision. In any event, AstraZeneca does not understand why Plaintiffs would want redaction logs. Unlike privileged documents, redacted documents are produced with all the agreed metadata fields. The metadata for each redacted document contains all the information, including reason for redaction, that could possibly appear on a redaction log. Creation of a separate redaction log appears to AstraZeneca to be an empty exercise. AstraZeneca is willing to discuss this issue further with Plaintiffs if there is some specific reason why Plaintiffs want the same information in log form.

9. Blank documents: AstraZeneca has investigated all of the blank documents submitted by Plaintiffs. The vast majority of these blank documents stem from an inherent problem with TIFFing Excel spreadsheets that contain a header or footer. If the author of the sheet creates it incorrectly (by, for example, inadvertently moving the cursor beyond his intended work area while scrolling down), the TIFF process will invariably create tens of thousands of pages that contain only the header or the footer. These blank pages are not actually blanks, because they contain header/footer information as created by the author of the sheet. AstraZeneca agrees that such information is useless in the vast majority (perhaps all) instances, but the "blank" pages do contain some information that is not privileged and therefore technically should be produced under CMO2. A possible going-forward solution would be for the parties to agree that pages of an Excel sheet containing only a header or a footer need not be TIFFed or produced. AstraZeneca's vendor is capable of implementing that solution if Plaintiffs desire it. In the interim, AstraZeneca's production of Excel sheets in Excel form per #5 above should solve this problem. There is a small subset of non-Excel documents in which blank pages (or mismatched pages in some instances) were produced as a result of an error in the vendor's final media creation cull. The document provided by Scott Allen at the May 30th meet and confer session was an example of this issue. These seem to be isolated errors that concern only a few documents, and the vendor is presently conducting a search using a bit map variance detection utility to identify all of them. The vendor's current best estimate for identifying all such documents is June 30, 2007. AstraZeneca is happy to institute corrections for these documents. Additionally, please identify for us any individual documents if you would like us to address.

10. IP10 production was never actually an issue.

11. Item 12/CRF's: was produced to Plaintiffs on June 8, 2007.

12. Foreign language documents: a production drive of these documents was produced to Plaintiffs on May 30, 2007. AstraZeneca recently discovered that a vendor error caused some of these documents to have Bates numbers that duplicated Bates numbers from other productions. AstraZeneca will deliver today another hard drive with corrected versions of these documents. There were no substantive issues with the production - only the Bates overlay was affected. This new production will be the first production to implement the agreed page break solution.

13. 30(b)(6) deposition documents were produced today, June 25, 2007.

14. Certification of Completeness: AstraZeneca provided Plaintiffs with a revised draft certification on June 12, 2007. Plaintiffs have not yet stated whether they approve this draft. An email of June 18 from Mike Pederson suggests that Plaintiffs wish to substantially expand the certification. AstraZeneca believes more discussion on this topic is required.

15. Databases: The parties met and conferred on the subject of databases on June 20, 2007. This meet and confer followed several requests from AstraZeneca to Plaintiffs to name specific databases they want produced, so that AstraZeneca may begin the lengthy and difficult data extraction process at least for some subset of the desired databases. Plaintiffs declined those earlier requests pending Jonathan Jaffe's return from paternity leave, which occurred on June 19, 2007. During the meet and confer session, Plaintiffs requested that AstraZeneca survey certain information for 59 databases. Plaintiffs would then make their decision about which databases (and fields thereof) they want produced based on that survey. AstraZeneca objected that this proposed survey is duplicative of both the 30(b)(6) depositions of IT witnesses and IT interviews that plaintiffs already conducted. AstraZeneca further objected that Plaintiffs must know some databases that they will definitely want, and that delaying production of those databases in lieu of the proposed survey will jeopardize production of those databases within the discovery deadlines in the MDL. Despite these objections, AstraZeneca agreed to conduct the survey that Plaintiffs request. The parties agreed that Plaintiffs would provide the list of approximately 55 databases, and a list of topics they want surveyed for each one. The parties scheduled a second meet and confer call for Wednesday, June 27, 2007 to discuss the initial results of the survey.

16. Production Key: Plaintiffs provided a production key.

Please contact me if this prompts any questions or concerns.

Andrew S. Dupre, Esq.
McCarter & English, LLP
405 North King Street 8th Floor
Wilmington, Delaware 19801
Phone: 302-984-6328
Fax: 302-984-0311


This email message from the law firm of McCarter & English, LLP is for the sole use of the intended recipient(s)and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email(or helpdesk@mccarter.com) and destroy all copies of the original message.

Andrew S. Dupre, Esq.
McCarter & English, LLP