# EXHIBIT
# 6

----- Original Message -----
From: kbailey@bpblaw.com <kbailey@bpblaw.com>
To: Jim Freebery; Paul Pennock <PPennock@weitzlux.com>; Tom Pirtle <tomp@lpm-triallaw.com>; Camp Bailey <cbailey@bpblaw.com>
Cc: Magaziner, Fred; Tony Winchester; LROTH@roth-law.com <LROTH@roth-law.com>; Glenn Pogust - Kayescholer
Sent: Thu May 17 14:31:23 2007
Subject: Re: Meet-and-confer follow up

It is not the "arrows coming from the front" that is the problem, its "the knives in the back" that I will not tolerate. To now say that "we need to work together" falls deaf on these ears. We have been down this road before and in a childish way, Freddy thinks the way to cover up his short comings is to attempt to divert the Court's attention by making personal attacks on me and my firm. This is the second time for this type of lawyering Dechert style.  Jim Boy, is that the type of "working together" that you support. As your Group likes to say "we will agree to disagree" and you can thank Freddy for it.
Sent via BlackBerry from Cingular Wireless

-----Original Message-----
From: "Freebery, James J." <JFreebery@McCarter.com>
Date: Thu, 17 May 2007 13:54:04
To:PPennock@weitzlux.com,Tomp@lpm-triallaw.com,cbailey@bpblaw.com
Cc:Fred.Magaziner@Dechert.com,"Winchester, Tony" <Awinchester@mccarter.com>,kbailey@bpblaw.com,LROTH@roth-law.com,GPogust@kayescholer.com
Subject: Re: Meet-and-confer follow up

...and Scott Allen called me "Freebird" three times in open court. I hardly attribute that to overwork; rather to the fact that he had just met me, just as I had heard about your concerns regarding CANDA and the balance of production only minutes before needing to address them. I continue to believe the Court would prefer us to work these issues out in advance of Tuesday's hearing and I remain available to discuss.

I'll call you on the cert language.

Jim

-----Original Message-----

From: Pennock, Paul <PPennock@weitzlux.com>
To: Freebery, James J.; Tomp@lpm-triallaw.com <Tomp@lpm-triallaw.com>; cbailey@bpblaw.com <cbailey@bpblaw.com>
CC: Fred.Magaziner@Dechert.com <Fred.Magaziner@Dechert.com>; Winchester, Tony; kbailey@bpblaw.com <kbailey@bpblaw.com>; LROTH@roth-law.com <LROTH@roth-law.com>; GPogust@kayescholer.com <GPogust@kayescholer.com>
Sent: Thu May 17 13:35:22 2007
Subject: RE: Meet-and-confer follow up

Gentleman,

Here's our view of it.  Your client violates court orders and then you come to us and want us to say it's "ok", so that you can avoid facing Judge Baker on it. I'm sorry but we can't operate that way because you, with your motions and your own agenda items, are not operating that way. Following Fred's lead, we want the Court to be aware of the problems we are facing.  Although we see no prejudice to you whatsoever for something like missing verifications, we in contrast are prejudiced by your shoddy document production in that your failures may impact our ability to meet the Court's deadlines. Furthermore, we are concerned that your firm has taken on far more work than you can handle.  This is evidenced by the fact that you have had to hire "contract" lawyers to review documents and, as you've admitted, they have made an enormous number of errors. You hire them cheaply and bill out tremendously, and we have to suffer through your "error rate".  You yourself, Jim, are so overwhelmed by the work your firm has taken on that you didn't even know what the CANDA data base was.  You said in open court that  you would look into getting us the "Canadian" data base.  We think that this and the other failures, such as missing a 30b6 deposition that the defendant itself cross noticed. We had lawyers fly from Houston for that deposition at some significant expense. Also, there are numerous things on your firm's web site regarding your firm's capabilities that we do not think are appropriate claims, in light of how you've handled this to date.  All in all, we unfortunately find ourselves in a position where the defendants' firm has taken on more work than it can handle and we may be prejudiced in our ability to meet the Court's deadlines and must inform the court of this. However, please know that we will not be seeking sanctions for any of the failures.

As to the incomplete production of the First Eight, you assert that these were documents that were held back for privilege, which you later evaluated and decided were not privileged. Frankly, we see no proof that this is what happened.  We've seen no affidavit by Fred or you outlining precisely why it is that you certified a production to be complete, when indeed it was not.  Moreover, the allegedly held back documents were about 18,000 pages.  That's a pretty serious misevaluation of privilege. Frankly, we don't want to be subject to that type of error as we move forward and we don't think that Judge Baker wants things delayed like this.

As to the language of the certification, please call me to discuss it. You can reach me at 212 558 5504.  We have already met with you and conferred on the other issues, just as we discussed the items that you were suggesting for the agenda (e.g. your problems with verifications and the fact sheet "process").

-----Original Message-----
From: Freebery, James J. [mailto:JFreebery@McCarter.com: <mailto:JFreebery@McCarter.com>]
Sent: Wednesday, May 16, 2007 2:56 PM
To: Pennock, Paul; Tomp@lpm-triallaw.com; cbailey@bpblaw.com
Cc: Fred.Magaziner@Dechert.com; Winchester, Tony

Subject: Meet-and-confer follow up

Dear Paul:

I write to memorialize our discussions from yesterday afternoon
concerning Plaintiffs' concerns with respect to AstraZeneca's document
production.  As I stated to you yesterday, it is AstraZeneca's strong
desire to work these issues out in advance of next Tuesday's MDL hearing
so that the Court's valuable time can be directed to other, more
substantive, issues.

First, regarding AstraZeneca's supplemental production of documents for
the initial 8 custodians, your email below attempts to create an issue
where none exists.  AstraZeneca has completely produced (except a
relative handful of documents subject to meet-and-confer requests) all
documents for 38 of the 80 custodians due by June 30, 2007.  An
additional 21 custodians will be completed by June 11, 2007. AstraZeneca
has missed no production deadline, has fully complied with the relevant
MDL orders, and will continue to do so.  To the extent you disagree,
however, AstraZeneca suggests convening a meet-and-confer session to
resolve this and any other potential production issues, before the May
22, 2007 MDL hearing.

In more specific terms, the 503 documents to which your email refers are
produced in accordance with AstraZeneca's continuing duty to produce
documents as they are discovered.  As AstraZeneca works to construct
privilege logs and improve its vendor's production process, documents
initially coded by reviewers as privileged or otherwise non-producible
have received additional scrutiny.  In a small number of cases, the
initial coding call has been changed.  This could be the result of a
variety of factors, such as that a more experienced attorney decided
that a document, while perhaps a close call, is not actually privileged,
or correction of a coder miskeying "irrelevant" for "relevant."
AstraZeneca's coders have reviewed well over 10 million pages of
documents, and it is unrealistic to expect a human coder never to make
an error.  AstraZeneca's coders have a better than 99% correct rate, and
this supplemental production of 503 documents merely corrects - as
AstraZeneca will continue to do - verifiable human error as it is
discovered.  The implication that AstraZeneca should be sanctioned for
continuing to produce documents as they are discovered is simply
unfounded; AstraZeneca likely could be sanctioned for deciding NOT to
produce such documents. AstraZeneca has made and continues to make a
reasonable, good faith effort to provide Plaintiffs with all relevant,
non-privileged documents.  This supplemental production exemplifies that
effort.

This issue also does not, as you suggest, implicate the certification of
completeness because (1) that certification was truthful and entirely
correct when signed; this supplemental production is comprised of
documents discovered later through continuing quality assurance and not
documents that AstraZeneca intentionally withheld, and (2) Plaintiffs
rejected the certification and have thus far declined AstraZeneca's
repeated requests to meet and confer regarding it.  Additionally,
because the continued quality assurance that revealed these documents is
complete for the first 38 custodians, this is not an issue which can
reoccur.  A motion on this topic therefore would be moot.  Finally, your
statement that this is "a very substantial issue" and "a major obstacle
to discovery" is wholly inaccurate because (1) these documents represent
a de minimus percentage of the documents that AstraZeneca has produced
for the Initial 8 custodians, and (2) Plaintiffs' discovery efforts to
date have focused on Rule 30(b)(6) depositions.

Second and relatedly, we discussed Plaintiffs' objections to the wording
of AstraZeneca's "certification of completeness."  As indicated in
previous e-mails to your attention, AstraZeneca is more than willing to
work with you on mutually agreeable language for the certification. We

3