# EXHIBIT 20

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

IN RE: Seroquel Products Liability
Litigation

Case No. 6:06-md-1769-Orl-22DAB

_____/

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration with oral argument on various matters including the following motions filed herein:

| | |
|---|---|
| **MOTION:** | **MDL PLAINTIFFS AND DEFENDANTS' JOINT MOTION REQUESTING THE COURT TO ADOPT AND ENTER PROPOSED CASE MANAGEMENT ORDERS (Doc. No. 110)** |
| **FILED:** | December 20, 2006 |
| **THEREON** it is **RECOMMENDED** that the motion be **GRANTED in part and DENIED in part and MODIFIED as set forth herein.** | |
| **MOTION:** | **MDL PLAINTIFFS AND DEFENDANTS' JOINT MOTION FOR STATUS CONFERENCE, AND/OR ORAL ARGUMENT [FOR ONE HOUR] (Doc. No. 111)** |
| **FILED:** | December 20, 2006 |
| **THEREON** it is **RECOMMENDED** that a ruling on the motion be deferred to the District Judge for consideration in connection with review of this Report and Recommendation. | |

In this multi-district litigation, Plaintiffs have sued Defendants for claims arising for alleged injuries from ingesting AstraZeneca's Seroquel, an atypical antipsychotic medication that allegedly

can cause diabetes and related disorders. Doc. No. 1. On July 10, 2006, the original litigation consisted of 114 actions pending in six districts across the United States. Doc. No. 1. Many other Conditional Transfer Orders have transferred cases since the Initial Transfer Order. *See* Doc. Nos. 2, 3, 13, 21, 22, 25, 33, 34, 36, 40, 43, 46, 47, 57, 65, 78, 90. Many more are expected to be transferred to this Court.

***Severance***

The Court held a status conference on December 11, 2006. At that time, Defendants made a presentation that based on their research, there were 7,297 plaintiffs in Seroquel cases pending throughout the United States, with 6,561 plaintiffs (or 94% of the total plaintiffs) represented by one firm, Bailey Perrin Bailey, with cases filed in Massachusetts. The claims of the 6,561 plaintiffs in the Massachusetts cases are consolidated into approximately 106 cases and the 6,561 plaintiffs are from forty-seven of the fifty United States.

Following Defendants' description of the status of the national cases filed, and without any correction from Camp Bailey, Esq. (nominated to serve as Co-Lead Counsel from the firm of Bailey Perrin Bailey), the Court raised the issue *sua sponte*[1] of whether Plaintiffs in the 100 or so cases with 6,500 plaintiffs had been improperly joined and should be severed pursuant to Federal Rule of Civil Procedure 21. Mr. Bailey, at the hearing, could not satisfactorily articulate the "same transaction or occurrence" required to support permissive joinder under Rule 20(a), but explained that these plaintiffs were bundled in the cases to ease the multi-district aspect of the cases anticipated once the multi-district litigation had been established.

---

[1] In response to the Court's query, Defendants indicated that they were planning to file a motion seeking severance. However, in the interest of moving the matter forward, the Court addresses the issue *sua sponte*. Plaintiffs by responding to this Report and Recommendation will have an appropriate opportunity to make their views known.

At least one appellate court has affirmed the appropriateness of the district court's use of a case management tool requiring the filing of severed claims, rendering dismissals with prejudice for those plaintiffs who fail to timely file severed complaints.

> [I]n the context of multi-district litigation . . . while the rules are the same as for ordinary litigation on an ordinary docket – that is, . . . the district court must weigh the public's interest in expeditious resolution of litigation; the court's need to manage its docket; the risk of prejudice to the defendants; the public policy favoring the disposition of cases on their merits; and the availability of less drastic sanctions- multidistrict litigation is different because of the large number of cases that must be coordinated, its greater complexity, and the court's statutory charge to promote the just and efficient conduct of the actions. 28 U.S.C. § 1407. As a result, the considerations that inform the exercise of discretion in multidistrict litigation may be somewhat different, and may tip the balance somewhat differently, from ordinary litigation on an ordinary docket.
>
> * * *
>
> The goal of the multidistrict litigation process is to "promote the just and efficient conduct" of "civil actions involving one or more common questions of fact" that are pending in different districts. 28 U.S.C. § 1407(a). If realized, hundreds or-as here, thousands-of cases, coordinated, will proceed toward resolution on the merits with less burden and expense overall than were each litigated through pretrial individually.
>
> Section 1407 arose out of the federal courts' experience with a massive prosecution of electrical equipment manufacturers for antitrust violations, which had been rendered manageable only by conducting joint pretrial proceedings. . . . Congress saw a need to create a mandatory version of that procedure to govern cases such as "civil antitrust actions . . . , common disaster (air crash) actions, patent and trademark suits, products liability actions and securities law violation actions, among [and] created the Judicial Panel on Multidistrict Litigation and conferred on the Panel the power to consolidate pretrial proceedings for such cases and to assign them to a single judge who would coordinate them.
>
> It was thought that consolidation and central coordination would avoid these dangers and would yield significant benefits of economy and speed. . . . Transfer proceedings may be commenced either on the Panel's own initiative . . . or by motion of any party. A transfer is effective when the order of transfer is "filed in the office of the clerk of the district court of the transferee district." When the transfer becomes effective, "the jurisdiction of the transferor court ceases and the transferee court has exclusive jurisdiction." A transferee judge exercises all the powers of a district judge in the transferee district under the Federal Rules of Civil Procedure and "may make any

pretrial order that the transferor court might have made in the absence of a transfer." This includes authority to decide all pretrial motions, including dispositive motions such as motions to dismiss, motions for summary judgment, motions for involuntary dismissal under Rule 41(b), motions to strike an affirmative defense, and motions for judgment pursuant to a settlement.... Once pretrial proceedings are completed in the MDL, the Panel remands individual cases to the district court in which the action was originally filed for trial...

A district judge charged with the responsibility of "just and efficient conduct" of the multiplicity of actions in an MDL proceeding must have discretion to manage them that is commensurate with the task. The task is enormous, for the court must figure out a way to move thousands of cases toward resolution on the merits while at the same time respecting their individuality. The court is also confronted with substantial legal questions, such as, [in the drug case on appeal], FDA issues, *Daubert* motions, questions of joinder and federal jurisdiction, class certification, timeliness of claims, and causation. For it all to work, multidistrict litigation assumes cooperation by counsel and macro-, rather than micro-, judicial management because otherwise, it would be an impossible task for a single district judge to accomplish. Coordination of so many parties and claims requires that a district court be given broad discretion to structure a procedural framework for moving the cases as a whole as well as individually, more so than in an action involving only a few parties and a handful of claims. As the Court of Appeals for the First Circuit put it, a district court must be able to "uncomplicate matters" and counsel must, for their part, "collaborate with the trial judge from the outset in fashioning workable programmatic procedures, and thereafter alert the court in a timely manner as operating experience points up infirmities warranting further judicial attention."

Pretrial plans will necessarily vary with the circumstances of the particular MDL. However, the district judge must establish schedules with firm cutoff dates if the coordinated cases are to move in a diligent fashion toward resolution by motion, settlement, or trial. As happened in MDL 1407, the multidistrict process contemplates involvement of representative counsel in formulating workable plans. Once established in consultation with counsel, time limits and other requirements must be met and, "when necessary, appropriate sanctions are imposed . . . for derelictions and dilatory tactics." Manual For Complex Litigation § 10.13 at 13." Close judicial oversight and a clear, specific, and reasonable management program, developed with the participation of counsel, will reduce the potential for sanctionable conduct because the parties will know what the judge expects of them. . . . Although sanctions should not generally be a management tool, a willingness to resort to sanctions, *sua sponte* if necessary, may ensure compliance with the management program." *Id.* at § 10.151 at 15.

In sum, multidistrict litigation is a special breed of complex litigation where the whole

is bigger than the sum of its parts. The district court needs to have broad discretion to administer the proceeding as a whole, which necessarily includes keeping the parts in line. Case management orders are the engine that drives disposition on the merits.

*In re Phenylpropanolamine (PPA) Products Liability Litigation,* 460 F.3d 1217, 1222 & 1229-32 (9th Cir. Aug. 29, 2006) (internal citations and quotations omitted) (holding that the district court did not abuse its discretion in dismissing cases for failure to timely file severed cases between five and twelve weeks late).

Permissive joinder is governed by Federal Rules of Civil Procedure 20 and 21, which provide that multiple plaintiffs may "assert any right to relief jointly, severally, or in the alternative in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action." Fed. R. Civ. P 20(a). Because these multiple plaintiff cases do not appear to seek relief arising from the same transaction or occurrence, severance of the individual plaintiffs is proper. Pursuant to Rule 21, the court may sever any claim against a party, which will proceed separately. Fed. R. Civ. P. 21.

It is respectfully **RECOMMENDED** that all of the plaintiffs' claims (except for consortium claims) be severed. If this Report and Recommendation is adopted, the Clerk should be directed to open new separate files[2] for each named plaintiff (with the consortium exception noted above). Concurrent with the service of each Plaintiff Fact Sheet [PFS] (as set forth below), a new individual complaint for that Plaintiff should be filed in the corresponding case docket along with payment of the required filing fee (or application to proceed *in forma pauperis*). Cases abandoned or dismissed prior to service of the PFS would not be required to comply. Any cases transferred to this Court after

---

[2] The precise mechanics and timing for this task may require further specification to reduce the work burden on the Clerk of the Court.

entry of any Order regarding severance would be subject to this requirement. The disaggregated cases, though filed here, would retain their status as transfer cases, subject to remand upon completion of the multidistrict proceedings.

***Other Case Management Issues***

After protracted argument concerning many discovery and scheduling issues that the parties had not resolved among themselves *prior* to the December 11, 2006 status conference, and following a strenuous admonishment by the Court, counsel were ordered to meet and confer at length until the issues were more fully resolved. Doc. No. 102. The status conference was recessed until the following morning at 11:00 a.m. on December 12, 2006. Doc. No. 104. Counsel were able to agree to several discovery compromises, now memorialized in the two Proposed Case Management Orders filed on December 20, 2006.[3] As the Court told counsel at the December 12 status conference, the undersigned is flabbergasted as to how unprepared the parties are and the case appears to be in worse condition than at the September 2006 Preliminary Pretrial Conference. While counsel appears to have approached negotiating discovery in a more professional manner, they have not set deadlines that as a practical matter, will move this litigation at the pace at which both the undersigned and Judge Conway have repeatedly stated the litigation must proceed to keep the pretrial proceedings on track.

Having said that, the parties filed a proposed case management order that describe (in CMO No. 1): responsibilities of lead and liaison counsel; the frequency of status conferences; service of complaints and amendments; filing of motions; and service of documents. Doc. No. 110-2. The second proposed case management order (CMO No. 2) proposes deadlines for service of Plaintiff Fact

---

[3]Although the Court ordered counsel to file their proposals by 12:00 p.m. on December 20, given the proximity of the Christmas holiday, counsel did not file the documents until 4:48 p.m.

-6-

Sheets, to the effect that at least 500 be filed by January 31, 2007 or stipulated to dismissal, with 500 more per month filed each month thereafter; all PFS from plaintiffs whose cases were filed before September 11, 2006 be served by September 30, 2007; all PFS from plaintiffs whose cases are docketed in the MDL before March 31, 2007 be served by December 31, 2007; and all PFS from plaintiffs whose cases are docketed in the MDL after March 31, 2007 be served within 90 days after docketing; and sets forth notification and cure procedures for absent or deficient PFS. Doc. No. 110-3. CMO No. 2 also sets forth deadlines for AstraZeneca's production of organizational charts for its corporate structure, the Seroquel team, and the drug safety team for the past ten years; listings of (eighty) custodians from whom it is collecting documents; listing of databases concerning document production and preservation; timing for interviews of knowledgeable AstraZeneca IT persons; and withdrawal of all currently pending discovery to AstraZeneca. Doc. No. 110-3. The parties also set forth the format of the production of custodial files, agreements on the preservation of documents, notably with the parties agreed language regarding "spoliation" of evidence. Doc. No. 110-3.

The Court is satisfied with neither the pace nor the mechanics of the parties' proposal, especially with respect to the PFSs. The specific format and content of the agreed PFS has been known since October 2006, and counsel have known since prior to the original filing of these actions that such information would be required from each plaintiff. Particularly in recognition of the difficulties that many of the plaintiffs face in assembling the required information, the lack of anticipation and preparation for the plaintiffs to meet the requirements is inexplicable and disappointing. Likewise, the failure of the Defendant to investigate and understand its own records and documents and to prepare them for production has not met the expectations of the Court as discussed at the September 2006 Conference.

With those observations as background, the Court turns to the specifics of the proposed CMOs (Doc. Nos. 110-2 and 110-3). In general proposed CMO 1 appears helpful in moving the cases forward, subject to the following observations. In ¶ II.A.3. the words "or magistrate" should be deleted as superfluous. Objections by non lead counsel should be filed within five days. All matters presented to the Court must comply with the Local Rules, especially Local Rule 3.01(g). ¶ II.A.4. requires additional explanation from Plaintiffs as to what is contemplated.

In ¶ IV.4. the parties should be aware that the Court may rule on motions without hearing. Motions may be filed up to 20 days prior to the hearing, and responses should be filed within 11 days of service of the motion. Replies are not permitted absent leave of Court.

In ¶ V.A. counsel wishing to be removed from the electronic service list should simply notify the Clerk.

With respect to proposed CMO 2, the Court does not find that the suggested schedule will permit timely consideration of the cases, and their proposal is unclear how cases would be identified for dismissal if plaintiffs fail to meet the schedule. It appears that the Bailey law firm has by far the greatest number of plaintiffs and the greatest problem with timely completion of the PFSs. For other plaintiffs' counsel no showing has been made of inability to get the required information served more quickly. As to the Bailey firm clients, the Court remains unpersuaded that good cause exists for stringing out production to September and December 2007. It is recommended that the schedule proposed be modified to provide that, for cases now pending here, the Bailey clients serve completed PFSs and associated documents (or notices of dismissal) as follows: one-sixth by January 31, 2007 and one-sixth more by the end of each succeeding month ending June 30, 2007. For the non Bailey plaintiffs, one -third would be due January 31 and so on each month until March 31, 2007. By

January 31, 2007, plaintiffs' counsel would be required to serve a designation of the month each client's completed form is due. For plaintiffs whose cases arrive after entry of any scheduling order, PFSs would be due within 45 days after docketing in this Court. Plaintiffs who do not meet the designated deadlines would be subject to possible sanctions, including dismissal of the cases following the procedure outlined in the proposed order.

Plaintiffs' counsel are admonished not to delay production of PFSs during the pendency of the motions and while awaiting the District Judge's disposition of this Report. Whatever schedule is finally imposed will not include any additional period to cover the time these matters are under consideration.

The balance of proposed CMO 2 regarding production and preservation of Defendant's documents still seems unduly cumbersome. Nonetheless, if the parties are confident that their agreement will allow them to present issues to the Court for appropriate consideration and disposition without delays engendered by claims of non production of information, the proposal can be approved.

Notably, the parties did not address the previously discussed issue of bellwether cases, and the Court assumes that there is lingering disagreement about the need for and mechanics of using such cases. As noted at the December 2006 hearing, the grounds argued by Defendant, for the most part, would not benefit from consideration in individual cases. It is recommended that the parties be required to state in writing their respective positions on these issues prior to any future hearing in the case.

At the December 2006 hearing, the Court indicated that the next conference would be January 25, 2007 before the undersigned. In light of the parties request at Doc. No. 111, that **conference is**

**cancelled** (subject to reinstatement) pending the District Judge's decision whether to schedule her own hearing. The discovery motions (Doc. Nos. 92 and 100) are **DENIED as moot.**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on December 22, 2006.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record