# EXHIBIT 46

```
                                                              Page 1
 1         IN THE SUPERIOR COURT
        OF THE STATE OF DELAWARE
 2       IN AND FOR NEW CASTLE COUNTY
                  -  -  -
 3   IN RE:
     SEROQUEL LITIGATION   : MDL NO. 1769
 4                         :
     THIS DOCUMENT RELATES:
 5   TO ALL ACTIONS        :
     ---------------------------------------------
 6   IN RE:                : SUPERIOR COURT
 7   RISPERDAL/SEROQUEL/   : OF NEW JERSEY
     ZYPREXA LITIGATION    : LAW DIVISION
 8                         : MIDDLESEX COUNTY
                           : CASE NO. 274
 9   ---------------------------------------------
     AIMEE DANIELS,        : IN THE CIRCUIT
10                         : COURT OF THE
          V.               : COUNTY OF ST. LOUIS
11                         : STATE OF
     ASTRAZENECA           : MISSOURI
12   PHARMACEUTICALS, L.P.: 05CC-004759
     ET AL.                : DIVISION 6
13   ---------------------------------------------
     SANTOS MALDANADO,     : IN THE CIRCUIT
14   minor, by and through: COURT OF THE
     his natural mother    : COUNTY OF ST. LOUIS
15   and next friend,      : STATE OF
     LOUISE WILSON         : MISSOURI
16        V.               : 06CC-003930
     JANSSEN PHARMACEUTICA: DIVISION 6
17   L.P., ET AL.          :
                  -  -  -
18            May 17, 2007
                  -  -  -
19       C O N F I D E N T I A L
                  -  -  -
20       30(b)(6) deposition of ASTRAZENECA
     PHARMACEUTICALS, L.P., by and through
21   DARRYL DRAPER.
22                -  -  -
            Golkow Technologies, Inc.
23              Suite 760
         1880 John F. Kennedy Boulevard
24      Philadelphia, Pennsylvania  19103
```

## Page 2

```
 1
    LENA BARNETT, minor,  : IN THE CIRCUIT
 2  by and through her    : COURT OF THE
    natural mother and    : COUNTY OF ST. LOUIS
 3  next friend,          : STATE OF
    MARY BARNETT          : MISSOURI
 4       V.               : 06CC-000333
    JANSSEN PHARMACEUTICA : DIVISION 6
 5  L.P., ET AL.          :
    ---------------------------------------
 6  LOIS BAER, as         : IN THE CIRCUIT
    Representative of the : COURT OF THE
 7  Estate of MATTHEW     : COUNTY OF ST. LOUIS
    BAER, Deceased        : STATE OF
 8       V.               : MISSOURI
    JANSSEN PHARMACEUTICA : 06CC-002401
 9  L.P., ET AL.          : DIVISION 6
    ---------------------------------------
10  TERRY STRINGER        : IN THE CIRCUIT
                          : COURT OF THE
11       V.               : COUNTY OF ST. LOUIS
                          : STATE OF
12  JANSSEN PHARMACEUTICA : MISSOURI
    L.P., ET AL.          : 06CC-002173
13                        : DIVISION 6
    ---------------------------------------
14  STEPHEN ROSAS         : IN THE CIRCUIT
                          : COURT OF THE
15       V.               : COUNTY OF ST. LOUIS
                          : STATE OF
16  ASTRAZENECA           : MISSOURI
    PHARMACEUTICALS,      : 05CC-004755
17  L.P., ET AL.          : DIVISION 6
    ---------------------------------------
18  PAMELA MOORE,         : IN THE CIRCUIT
                          : COURT OF THE
19       V.               : COUNTY OF ST. LOUIS
                          : STATE OF
20  JANSSEN PHARMACEUTICA : MISSOURI
    L.P, ET AL.           : 05CC-006375
21                        : DIVISION 6
    ---------------------------------------
22
23
24
```

## Page 3

```
 1  KATHRYN SCHULTZ,     : SUPERIOR COURT OF
    ET. AL.              : THE STATE OF
 2                       : CALIFORNIA IN AND
         V.              : FOR THE COUNTY OF
 3                       : SAN FRANCISCO
    ASTRAZENECA          : CGC-06-453676
 4  PHARMACEUTICALS,     :
    L.P., ET AL.         :
 5  ---------------------------------------
 6
 7
 8          30(b)(6) deposition of
 9  ASTRAZENECA PHARMACEUTICALS, L.P., by and
10  through DARRYL DRAPER, taken pursuant to
11  notice, was held at the Four Seasons
12  Hotel, One Logan Square, Philadelphia,
13  Pennsylvania, commencing at 9:36 a.m., on
14  the above date, before Ann Marie
15  Mitchell, a Federally Approved RDR, CRR,
16  CSR and Notary Public.
17                - - -
```

## Page 4

```
 1  APPEARANCES:
 2
 3  AYLSTOCK, WITKIN & SASSER, PLC
    BY: KENNETH W. SMITH, ESQUIRE
 4  4400 Bayou Boulevard, Suite 58
    Pensacola, Florida 32503-2673
 5  850-916-7450
    ksmith@aws-law.com
 6  Representing Plaintiffs in New Jersey and
    Delaware
 7
 8  SHELLER LUDWIG & SHELLER, PC
    BY: THOMAS E. MELLON, III, ESQUIRE
 9  3rd Floor
    1528 Walnut Street
10  Philadelphia, Pennsylvania 19102
    215-790-7300
11  tmellon@sheller.com
    Representing Plaintiffs in New Jersey
12
13
    PEPPER HAMILTON LLP
14  BY: ANDREA E.K. THOMAS, ESQUIRE
    3000 Two Logan Square
15  Eighteenth and Arch Streets
    Philadelphia, Pennsylvania 19103
16  (215) 981-4000
    thomasa@pepperlaw.com
17  Representing Eli Lilly & Company
18
19  DECHERT LLP
    BY: BRENNAN J. TORREGROSSA, ESQUIRE
20  Cira Centre, 2929 Arch Street
    Philadelphia, PA 19104
21  215-994-2358
    brennan.torregrossa@dechert.com
22  Representing AstraZeneca
23
24
```

## Page 5

```
 1  APPEARANCES (cont.'d):
 2
 3  DECHERT LLP
    BY: A. ELIZABETH BALAKHANI, ESQUIRE
 4  Cira Centre, 2929 Arch Street
    Philadelphia, PA 19104
 5  215-994-2487
    elizabeth.balakhani@dechert.com
 6  Representing AstraZeneca
 7
 8  ALSO PRESENT:
       BAILEY PERRIN BAILEY
 9     RHONDA RADLIFF
       PROJECT MANAGEMENT
```

Page 6

```
              ---
           I N D E X
              ---
Testimony of: DARRYL DRAPER
By Mr. Smith             8

              ---

           E X H I B I T S
              ---

NO.        DESCRIPTION        PAGE

Draper-1   AstraZeneca LP and   12
           AstraZeneca
           Pharmaceuticals
           LP's Cross-Notice
           of Rule 30(b)(6)
           Depositions
Draper-2   Resume               55
Draper-3   Sketch of a System   80
           Map
```

Page 7

```
              ---
      DEPOSITION SUPPORT INDEX
              ---

Direction to Witness Not to Answer
Page Line   Page Line   Page Line
  31  19
  51   8
  66  22
 187  22

Request for Production of Documents
Page Line   Page Line   Page Line



Stipulations

Page Line   Page Line   Page Line



Question Marked
Page Line   Page Line   Page Line
```

Page 8

```
               ---
         DARRYL DRAPER, after having
    been duly sworn, was examined and
    testified as follows:
               ---
             EXAMINATION
               ---
BY MR. SMITH:
    Q.   Good morning, Mr. Draper.
    A.   Good morning.
    Q.   Good to see you again.
         Would you please state your
name and address for the record?
    A.   Darryl Draper.  Do you need
street address or my billing address?
    Q.   Sure.  Please.
    A.   155 Ascot Court, Bear,
Delaware, 19701.
    Q.   And where are you employed,
sir?
    A.   AstraZeneca Pharmaceuticals.
    Q.   And your position there?
    A.   I'm a service performance
manager, is the title.
```

Page 9

```
         MR. TORREGROSSA:  When you
get a chance, Mr. Smith, if I
could enter my appearance.
         MR. SMITH:  Yeah, go ahead.
Why don't we do that.  We'll go
around the table then.
         I'm Kenneth Smith from
Aylstock, Witkin, Kreis &
Overholtz for the plaintiffs in
the MDL in the mass tort
litigation in New Jersey and in
the Delaware Seroquel litigation.
         MR. MELLON:  Good morning,
Tom Mellon with the Scheller firm
for the plaintiffs.
         MS. THOMAS:  Andrea Thomas
for Eli Lilly.
         MS. BALAKHANI:  Liz
Balakhani for AstraZeneca and for
the witness.
         MR. TORREGROSSA:  Brennan
Torregrossa for AstraZeneca and
the witness, and we'd like to mark
this deposition as confidential
```

Page 10

1   under the protective stipulation.
2   If you could put confidential in
3   the legend in the top of the
4   caption, I would appreciate it.
5   And we will be cross noticing this
6   case, and I'll attach those as
7   exhibits at the end of the
8   deposition.
9           If I could just get
10  agreement from counsel that
11  they've agreed to be bound by the
12  MDL protective stipulation.
13          MS. THOMAS: Yes.
14          MR. MELLON: I have agreed.
15          MR. TORREGROSSA: Thank you.
16          MR. SMITH: For the record,
17  plaintiffs object to designating
18  the entire transcript as
19  confidential. And if you don't
20  mind, would you get me a copy of
21  the cross notices before they're
22  introduced, sometime before you
23  introduce them into evidence?
24          MR. TORREGROSSA: Yes, sir.

Page 11

1           MR. SMITH: Appreciate that,
2   thanks.
3   BY MR. SMITH:
4       Q.  Mr. Draper, have you ever
5   had your deposition taken before?
6       A.  No.
7       Q.  Well, there are a few things
8   we should go over then, make it easier.
9           You understand that you're
10  under oath here today and you're
11  testifying just as though you were in
12  court. Okay?
13      A.  Yes.
14      Q.  And if for any reason you
15  don't understand one of my questions, and
16  I'm sure that will happen, would you
17  please let me know and I'll try to
18  rephrase it, say it in a different way,
19  so that we end up talking about the same
20  thing, you and me?
21      A.  Sure.
22      Q.  So you'll let me know.
23          Okay. Then if you answer my
24  question, I'm going to assume that you

Page 12

1   heard the question, understood it and
2   that you gave a complete and truthful
3   answer to it; is that fair?
4       A.  Yes.
5       Q.  Okay. Thanks.
6           Now, let's mark the cross
7   notice and attach the exhibits as
8   Draper-1, if you would, please.
9               - - -
10          (Deposition Exhibit No.
11  Draper-1, AstraZeneca LP and
12  AstraZeneca Pharmaceuticals LP's
13  Cross-Notice of Rule 30(b)(6)
14  Depositions, was marked for
15  identification.)
16              - - -
17          MR. TORREGROSSA: Mr. Smith,
18  if I could just run through,
19  you're, of course, welcome to go
20  through this with the witness.
21  Mr. Draper is here to talk about
22  the following databases: AMOS,
23  DIPLOMAT, COOL, CRF/DEN, DIRM,
24  PLANET, CLINTRACE, SAM, GEL,

Page 13

1   GESISS, AstraZeneca IMPACT, IIRIS,
2   which is I-I-R-I-S, SAMSON, under
3   the agreed upon 30(b)6 notice.
4           He is also the witness you
5   should direct any questions to
6   relating to section 3(a), related
7   to any computer systems or
8   database that concern adverse
9   event reports relating to Seroquel
10  and data from clinical and
11  preclinical studies relating to
12  Seroquel.
13          With respect to 3(b), he has
14  no involvement in that except for
15  the phone and voicemail systems.
16          MR. SMITH: We'll see how it
17  goes. Thank you.
18          MR. TORREGROSSA: Sure.
19  BY MR. SMITH:
20      Q.  I'll give you a moment to
21  look at that, Mr. Draper.
22          MR. TORREGROSSA: Very good.
23  BY MR. SMITH:
24      Q.  All right. Mr. Draper, have

Page 14

1  you had an opportunity to look over
2  Exhibit 1?
3      A.  Yes.
4      Q.  Have you seen that document
5  prior to today?
6      A.  No.
7      Q.  Have you seen any portion of
8  that document prior to today?
9      A.  Yes.
10     Q.  What portions?
11     A.  The portions from Dechert
12 dated May 1 -- I'm sorry, May 1, 2007. I
13 have seen those five pages.
14     Q.  Okay.  Thank you.
15         And when do you believe you
16 might have seen those?
17     A.  Approximately May 10th, May
18 12th.
19     Q.  When did you first become
20 aware that you would be asked to give a
21 deposition in this case?
22     A.  I believe it was that same
23 date, those same dates.
24     Q.  Do you understand -- I'm

Page 15

1  sorry.
2      A.  Around that same time.
3      Q.  I really didn't finish going
4  through some of the things that might be
5  helpful.  One is I shouldn't interrupt
6  you, and then, of course, you shouldn't
7  interrupt me, because it's difficult for
8  the court reporter to take down two
9  people's conversations at the same time.
10         The other thing is in
11 answering a question, if you're giving an
12 affirmative or negative response, if you
13 say yes or no, that's better than shaking
14 your head or saying uh-huh or uh-uh,
15 which are very difficult for the court
16 reporter to get down.  And if you need to
17 explain your answer, you can.
18         Also, if you need to take a
19 break at any time, just say so and we'll
20 do that.  I plan to take a break about
21 once an hour approximately.
22     A.  Okay.
23     Q.  Are you taking any
24 medications that would affect your

Page 16

1  ability to recall information or
2  communicate your responses today?
3      A.  No, I'm not.
4      Q.  Have you ever been convicted
5  of any felony or crime of moral turpitude
6  such as that would involve lying,
7  cheating or stealing?
8      A.  Not that I'm aware of, no.
9      Q.  Do you understand you've
10 been designated as a corporate designee
11 by AstraZeneca on certain topics today,
12 including those that your counsel has
13 previously recited?
14     A.  Yes.
15     Q.  And you've agreed to do
16 that?
17     A.  Yes.
18     Q.  You understand that
19 AstraZeneca is a defendant in this
20 action.  Correct?
21     A.  Yes.
22     Q.  Are you prepared to testify
23 on each of the topics that your counsel
24 listed here today?

Page 17

1      A.  Yes, I believe so.
2      Q.  Can you tell me what you've
3  done to prepare yourself to discuss those
4  matters?
5          MR. TORREGROSSA:  You can
6      answer the question, but in doing
7      so, don't reveal any discussions
8      you've had with counsel or myself.
9          THE WITNESS:  I set up
10     interviews with individuals,
11     one-on-one interviews -- well,
12     interviews with individuals who
13     have knowledge and/or experience
14     with some of these systems.
15 BY MR. SMITH:
16     Q.  Did some of these people
17 work under you?
18     A.  At one time or another, some
19 of these people may have worked under me,
20 yes.
21     Q.  Do these people all still
22 work for AstraZeneca?
23     A.  Most, if not all, are
24 employees of AstraZeneca, yes.

**Page 18**

1  Q. Can you think of anyone you
2  talked to in preparing for today's
3  deposition other than your attorney who
4  is not an employee of AstraZeneca?
5  A. I'm sorry, can you restate
6  the question?
7  Q. Yes.
8      Can you tell me if any of
9  the people you talked to other than your
10 counsel is not an employee of
11 AstraZeneca, anyone you can think of?
12 A. There may have been -- I
13 believe there were a few contractors.
14 They're employed by AstraZeneca, but they
15 don't work for AstraZeneca.
16 Q. Would it be fair to say that
17 they're employed at AstraZeneca but
18 they're somebody else's employees?
19 A. Correct.
20 Q. Okay. We'll get to those
21 later.
22     When I say AstraZeneca, for
23 the purposes of the deposition today, I
24 mean any entity that's involved with the

**Page 19**

1  production and marketing of Seroquel,
2  whether it's AstraZeneca, LP or
3  AstraZeneca Pharmaceuticals, LP, Zeneca,
4  Inc. or a, you know, British or Swedish
5  parent corporation, any of those related
6  entities. And I'll just say AstraZeneca
7  unless -- and if that creates a problem
8  for you, if you'll let me know, then
9  we'll break it up. But I'm going to say
10 AstraZeneca, and I'm going to mean
11 everybody, unless you tell me different.
12 Okay?
13 A. Okay.
14 Q. All right.
15     MR. TORREGROSSA: That's
16 fine with respect to the question
17 who he met with. We, of course,
18 will hold you to the agreement
19 that, under section G, we're not
20 talking about foreign issues or
21 foreign databases. Put that on
22 the record.
23     MR. SMITH: We'll come back
24 to that later. I don't agree with

**Page 20**

1  that. We'll come back to that
2  later.
3  BY MR. SMITH:
4  Q. When you talked to people in
5  preparing for your deposition today, did
6  you go over any system documentation with
7  them of any type?
8      MR. TORREGROSSA: That's a
9  yes or no.
10     THE WITNESS: No.
11     MR. SMITH: Please don't
12 instruct the witness.
13     MR. TORREGROSSA: I just
14 didn't want to get into any
15 attorney/client privilege. But
16 you're right. Nothing he gave
17 revealed that.
18     Go ahead.
19 BY MR. SMITH:
20 Q. Your answer was no?
21 A. I did not review any
22 documents relating to system -- these
23 systems.
24 Q. Okay. When I say

**Page 21**

1  documentation, I mean more than just
2  paper then.
3      So I mean, you could have
4  looked at some documentation for these
5  systems online, couldn't you?
6  A. I did not review any
7  materials, including electronic
8  materials, that would otherwise be on the
9  AstraZeneca network or in AstraZeneca's
10 systems.
11 Q. So with all the people that
12 you talked to, you didn't look at any
13 materials online or in hard copy or
14 otherwise with any of these people.
15     Is that your testimony?
16 A. That's correct.
17 Q. So when you're testifying
18 today, everything is just off the top of
19 your head.
20     Is that what you're saying?
21     MR. TORREGROSSA: Objection
22 to the form.
23 BY MR. SMITH:
24 Q. You can answer.

Page 22

1    A.  I had interviews, spoke
2 directly to people who had information
3 about these systems, and I'm committing
4 to memory that -- those conversations.
5    Q.  Did you take any notes of
6 those interviews?
7    A.  I had written a few -- I
8 wouldn't call them notes.  I did write
9 down a few I guess dates.
10   Q.  Is that for the purpose of
11 refreshing your memory?
12       MR. TORREGROSSA:  Objection
13    to form.
14 BY MR. SMITH:
15   Q.  You can answer.
16   A.  The reason -- the reason I
17 took the notes was in the event that I
18 had difficulty, you know, trying to share
19 this information with you.
20   Q.  Were those handwritten notes
21 or did you make notes in your computer?
22   A.  They were just written on a
23 piece of paper.
24   Q.  Do you still have those

Page 23

1 notes?
2    A.  Yes.
3    Q.  Could you produce them?
4        MR. TORREGROSSA:  Objection
5    to form.
6 BY MR. SMITH:
7    Q.  Could you produce them to
8 me?
9        MR. TORREGROSSA:  Objection
10   to form.  I object to the extent
11   you are suggesting we will produce
12   them to you, but you can answer
13   the question if you understand it.
14       THE WITNESS:  I still have
15   the notes.
16 BY MR. SMITH:
17   Q.  How did you get to today's
18 deposition?
19   A.  By taxi.
20   Q.  Did you bring a briefcase or
21 any papers with you?
22   A.  No, I did not.
23       MR. TORREGROSSA:  Let -- I'm
24   sorry.  Just let him finish the

Page 24

1 question so we don't have a messy
2 record.
3 BY MR. SMITH:
4    Q.  By that I mean to
5 Philadelphia, not just to this room.
6        MR. TORREGROSSA:  And the
7    question again was, did he bring
8    any notes?
9 BY MR. SMITH:
10   Q.  Did you bring a briefcase
11 with you or a laptop to Philadelphia, not
12 just to this room, but did you bring it
13 to the city today?
14       MR. TORREGROSSA:  Thank you.
15       THE WITNESS:  I did come
16   with my computer.  I still have a
17   responsibility to perform my day
18   work, and so I'll have plans to
19   use that computer to answer
20   e-mails regarding systems that I
21   support or have responsibility
22   for.
23 BY MR. SMITH:
24   Q.  Are you able to -- that's a

Page 25

1 laptop, I presume?
2    A.  Yes.
3    Q.  Are you able to access
4 documentation for the systems that you
5 are responsible for via your laptop?
6    A.  Yes.
7    Q.  And where would you --
8    A.  Not -- I'm sorry, can I --
9    Q.  Go ahead.
10   A.  Not all system materials are
11 documentation.
12   Q.  What types of system
13 material and documentation would you have
14 on your laptop on the hard drive?
15   A.  None.
16   Q.  What types of system
17 documentation or materials could you
18 access online?
19   A.  It would be general
20 information about the application.
21   Q.  Would you be able to access
22 training materials for the systems?
23   A.  There -- I may have access
24 to some training materials, yes.

Page 26

1  Q.  If you were looking for
2  training materials on these systems,
3  there would be training materials both
4  for the user and for maintenance.
5  Correct?
6  A.  Yes.
7  Q.  And where would these
8  materials be located?
9  A.  I'm not sure I understand
10 you.
11 Q.  On a particular server or
12 drive somewhere?
13 A.  Yes.
14 Q.  Okay.  Where would that be?
15 A.  On a server or a drive or
16 a -- I'm not sure.
17 Q.  Would there be one
18 centralized location for any of these
19 materials?
20 A.  No.
21 Q.  So the materials pertaining
22 to a particular system would be found
23 somewhere within that system?
24 A.  Some materials are available

Page 27

1  on servers, and those servers on -- you
2  know, in some cases are on a information
3  server or a file share.
4  Q.  Can you describe the file
5  share servers that you have access to?
6  A.  I'm not quite sure what
7  you're asking for.
8      You mean describe the
9  technical components of the file server?
10 Q.  Yes.
11     Where are they located, what
12 type of system is utilized to view those
13 things?
14 A.  Well, AstraZeneca have what
15 are known as infrastructure servers.  And
16 they are generally environments that are
17 used by a number of personnel to store
18 information.
19 Q.  Would you be able to access
20 service level agreements for the systems
21 you are responsible for?
22 A.  Yes.
23 Q.  Phone lists or directories
24 for business users for those systems?

Page 28

1  A.  I'm sorry, could you just
2  state the question again?
3  Q.  Phone lists or directories
4  for business users of the systems you are
5  responsible for?
6  A.  No, not phone lists or
7  directories.
8  Q.  Where would you find e-mails
9  from AstraZeneca personnel discussing the
10 systems that you are responsible for?
11 A.  I'm sorry, could you ask the
12 question again?
13 Q.  Where would you find e-mails
14 from AstraZeneca personnel discussing the
15 systems that you are responsible for?
16 A.  Where would I find e-mails?
17 In the e-mail system, in a mailbox.
18 Q.  I guess that could be
19 Outlook or something.
20     Is it Outlook?
21 A.  Outlook, yes, we use
22 Outlook.
23 Q.  Does everybody at
24 AstraZeneca use a single e-mail server?

Page 29

1      MR. TORREGROSSA:  I'll allow
2  him to answer the question, but
3  this, of course, was Mr. Dowling's
4  testimony.  We went over all of
5  this.
6      But you can answer if you
7  know.
8      THE WITNESS:  Can you ask
9  the question again, please?
10 BY MR. SMITH:
11 Q.  Does everybody at
12 AstraZeneca use a single e-mail server?
13 A.  No.
14 Q.  How many different e-mail
15 servers are there?  I'm not really asking
16 to count them so much as just give me a
17 description of, you know, in general
18 where they are, what kind they are?
19     MR. TORREGROSSA:  Objection,
20 scope, this is outside of the
21 testimony.  We went over this with
22 Mr. Dowling.  I will let you
23 testify on your individual
24 knowledge, if you have any, and

Page 30

```
 1   keep it to the United States,
 2   please.
 3        MR. SMITH: Well, I don't
 4   want his answer restricted to the
 5   United States. There's nothing in
 6   the agreement to that.
 7        MR. TORREGROSSA: But
 8   section G does. Section G of our
 9   agreement is nothing foreign. You
10   agreed to take it off.
11        MR. SMITH: This does not
12   prevent questioning concerning the
13   witness's personal knowledge of
14   these topics that were reported to
15   the United States. And clearly,
16   you know, he's going to have
17   interaction with foreign entities.
18        MR. TORREGROSSA: I have two
19   problems. First of all, it was
20   very clear, and has been clear,
21   that e-mail was something to be
22   discussed with Mr. Dowling, not
23   Mr. Draper. Okay?
24        Having said that, I will let
```

Page 31

```
 1   him testify on his individual
 2   basis, if he knows the answer to
 3   your questions.
 4        I object to any foreign
 5   discussion. We drew a line there.
 6   You made an agreement. I'm
 7   holding you to the agreement.
 8        You can answer the question
 9   as I instructed.
10        THE WITNESS: From my
11   personal --
12        MR. TORREGROSSA: Personal
13   knowledge, US only.
14        THE WITNESS: Personal
15   knowledge.
16        MR. SMITH: Not US only. I
17   want an answer. You'll have to
18   instruct him not to answer.
19        MR. TORREGROSSA: I instruct
20   you not to answer under the
21   agreement of the parties under
22   section G not to discuss foreign
23   related e-mail. You can answer
24   your personal knowledge with
```

Page 32

```
 1   respect to these questions.
 2        MR. SMITH: You're going to
 3   follow your counsel's advice, his
 4   instruction not to answer?
 5        THE WITNESS: Yes.
 6        MR. TORREGROSSA: You can
 7   answer the question with respect
 8   to the United States. And I
 9   believe it was how many servers
10   generally are used.
11            - - -
12        (The court reporter read the
13   pertinent part of the record.)
14            - - -
15        THE WITNESS: I don't have a
16   lot of personal knowledge of the
17   e-mail system or architecture. I
18   know that my account is linked to
19   a server. I believe it's here in
20   the US. I honestly don't know
21   whether or not it's in the US. I
22   know that my account is linked to
23   a specific Exchange server.
24   BY MR. SMITH:
```

Page 33

```
 1        Q.  Do you have any
 2   responsibilities yourself for operating
 3   or maintaining e-mail systems for
 4   AstraZeneca?
 5        A.  No.
 6        Q.  Now, you were requested to
 7   bring to the deposition today, through
 8   your counsel, any documents that you
 9   reviewed in preparation for today's
10   deposition.
11        Did you bring any such
12   documents with you?
13        A.  No.
14        Q.  Are there any such
15   documents?
16        A.  I did not review any
17   documents for the preparation of this
18   deposition.
19        Q.  Have you reviewed the
20   transcript or summary of the transcript
21   of Mr. Dowling's testimony from last
22   week?
23        A.  No.
24        Q.  Can you describe your
```