# EXHIBIT 51

## McConnell, Stephen

**From:** Pennock, Paul [PPennock@weitzlux.com]
**Sent:** Wednesday, July 11, 2007 6:43 PM
**To:** McConnell, Stephen; Jim Freebery; Magaziner, Fred; Munno, Thomas; Kerns, Kevin; Balakhani, Elizabeth; Adupre@mccarter.com
**Subject:** RE: Meet-and-confer re sanctions motion

I don't think your email was helpful on any score. As for avoiding the Court's involvement, that is impossible because of the prejudice we have already sustained.

-----Original Message-----
From: McConnell, Stephen [mailto:stephen.mcconnell@dechert.com]
Sent: Wednesday, July 11, 2007 6:37 PM
To: Pennock, Paul; Jim Freebery; Magaziner, Fred; Munno, Thomas; Kerns, Kevin; Balakhani, Elizabeth; Adupre@mccarter.com
Subject: Re: Meet-and-confer re sanctions motion


Paul,

The purpose of my e-mail was to try to set forth your requests so that we could then see whether we could do anything to address your current concerns raised in your motion and to avoid involving the Court.

If so, please let us know.

Thank you.

- Steve


----- Original Message -----
From: Pennock, Paul <PPennock@weitzlux.com>
To: McConnell, Stephen
Cc: ftrammell@bpblaw.com <ftrammell@bpblaw.com>; lgornick@lskg-law.com <lgornick@lskg-law.com>; cbailey@bpblaw.com <cbailey@bpblaw.com>; kbailey@bpblaw.com <kbailey@bpblaw.com>; sallen@crusescott.com <sallen@crusescott.com>; eblizzard@blizzardlaw.com <eblizzard@blizzardlaw.com>; Pederson, Mike <MPederson@weitzlux.com>; Jaffe, Jonathan <jjaffe@weitzlux.com>
Sent: Wed Jul 11 17:49:21 2007
Subject: RE: Meet-and-confer re sanctions motion

IND/NDA
Your statement is incorrect. Plaintiffs counsel are aware of problems that remain. Plaintiffs counsel on the phone could not delineate them. Just as, for example, none of the several defense lawyers on the phone could tell us if the "key term" search for a particular word would pick up a partial spelling of the word. Collectively, none of you knew.

Org Charts
Our positions have been made clear in numerous discussions, depositions and demands, as well as your commitments.

Custodial Productions
Again, your statements are incorrect and are emblematic of the manner in which AZ and its counsel have dealt with discovery. We said that defendants' counsel should have looked through all of the documents that each custodian had. Munno, or someone else on your side, made reference to looking through all of the documents in the company. We had been led to believe, and so has the Court, that you did look through all of the documents for each custodian. Considering the fact that many

1

of the custodians only worked on Seroquel for years, the "non" Seroquel documents would be few and far between. In any event, you have mislead us and the Court and have produced a set of documents that by definition is incomplete.

Databases
Your characterization of the lengthy discussion is incomplete and thus inaccurate. In any event, we continue to await your production of the databases that contain discoverable information in this litigation, as has been formally demanded and then discussed, ad nauseum, for months. You said that the databases are not ready to be produced, and we pointed out that given the fact that they have been discussed for months, they should have been prepared for production a long time ago.

There was a great deal more said and discussed. Your "Readers Digest" version, requiring a similar reply, is not helpful.


-----Original Message-----
From: McConnell, Stephen [mailto:stephen.mcconnell@dechert.com]
Sent: Wednesday, July 11, 2007 5:16 PM
To: Pennock, Paul
Cc: Munno, Thomas; Magaziner, Fred; Kerns, Kevin; Balakhani, Elizabeth; Jim Freebery; Adupre@mccarter.com
Subject: Meet-and-confer re sanctions motion


Paul,

In today's call, we went over the issues raised in your sanctions motion.

IND-NDA
Plaintiffs' counsel is not currently aware of any IND-NDA documents that plaintiffs do not already have. I understand that you will contact your NDA review team and alert us if they know of any missing documents. (We do not believe there are any).

Organization Charts
Defendants produced organization charts in January and at the 30(b)(6) depositions. We also agreed to produced additional charts in response to your amended set of 76 document requests. Plaintiffs' primary objection is that, although you received several additional charts during depositions, and have requested others through RFPs, you did not receive every company organization chart in January. I am not sure how we can address that complaint -- which we disagree is what the Judge ordered -- but please let us know if there is something more you seek.


Custodial production
Your sanctions motion contends that our search terms were incomplete. Defendants requested that plaintiffs provide additional search terms. Plaintiffs' counsel said that "we'd never be able to come up with a comprehensive list," but agreed to consider providing a list of additional search terms. At the same time, you suggested that nothing less than having defense lawyers read all of the company's documents would satisfy you.

Databases
Plaintiffs request immediate production of all 59 databases they identified (some of those are not actually databases). Defendants provided interviews, depositions, and additional information regarding databases. Some of those databases are enormous and not reasonably

2

searchable. Nonetheless, Defendants are already producing materials from databases in response to certain subject matter document requests.

We believe that our positions are reasonable while yours are extreme. But we remain willing to discuss these issues with you right up to the hearing before Judge Baker.

- Steve


This e-mail is from Dechert LLP, a law firm, and may contain information that is confidential or privileged. If you are not the intended recipient, do not read, copy or distribute the e-mail or any attachments. Instead, please notify the sender and delete the e-mail and any attachments. Thank you.

3

crafted the current certification based on the definition that you proposed in the footnote to your motion to compel. The proposed definition, however, contained a number of typographical/grammatical errors and had to be translated to be coherent. AstraZeneca informed you in the previous correspondence and again yesterday that we are very close to agreement and that AstraZeneca is willing to accept Plaintiffs suggested revisions: (1) Plaintiffs' proposed language regarding PDA's and Blackberry's, and (2) changing the term "relevant" to "related to Seroquel." AstraZeneca is happy to discuss any additional suggestions Plaintiffs may have. I understand our agreement yesterday was that Plaintiffs would discuss these issues internally and then get back to AstraZeneca prior to Tuesday's MDL hearing.

Third, we discussed the CANDA/Item 12 issue again. As AstraZeneca has informed Plaintiffs on a number of occasions over the past few weeks - and again yesterday - the Seroquel Computer Assisted NDA ("CANDA") is identical to the hard-copy Seroquel NDA submission with one exception: Item 12 Case Report Forms ("CRFs"), which were only submitted to the FDA electronically rather than in hard copy. The FDA did not require that AstraZeneca submit a hard copy of Item 12 as a part of its NDA submission.

The original program used to compile the Item 12 CRFs is known as Interleaf. Unfortunately, the program is outdated, rendering the files unreadable without use of some form of special legacy conversion technology. AstraZeneca has so far not been able to read/review the contents of Item 12. It does not know whether the information stored there includes patient or reporter information which must be redacted per federal law. AstraZeneca launched an extensive search for a solution that would allow it to read the CRFs. Earlier this week AstraZeneca IS personnel discovered a software (Quicksilver) that may be able to convert the unreadable Interleaf files to pdfs. AstraZeneca has been working virtually around the clock to try to convert the CANDA Interleaf documents, specifically the Item 12 CRFs, to pdf. We will keep you posted as to their progress, and depending on whether we need to redact patient or other information, quickly provide you with a hard copy of Item 12, and subsequently process its information electronically. Alternatively, and as AstraZeneca informed Plaintiffs a few weeks back, it will do everything possible (sign authorizations, etc.) to enable Plaintiffs to obtain the information from the FDA itself. Again, please let us know if you choose to go this route and what we can do to assist you.

Fourth, we spoke about a number of smaller technical issues Plaintiffs have with their database system in connection with viewing metadata, its searching capabilities, and potential tech flaw documents. We agreed that one of Tom Pirtle's associates will contact me to arrange a sit-down with an attorney and IT expert from each side to discuss and trouble shoot any all of these technical issues in the very near future. I look forward to hearing from Tom and helping to address any problems plaintiffs may be experiencing. In the meantime, if Plaintiffs wish to provide me with Bates numbers for "problem" documents, I'd be happy to begin investigating solutions in advance of the sit-down.

The above four issues represent my understanding of the full extent of Plaintiffs' current "complaints" concerning AstraZeneca's document production. If you have any additional issues, please let me know as soon as possible. Consistent with the Judge Baker's mandate to work these things out without its involvement, I do not believe that the Court's resources should be directed to these smaller issues.

In sum, AstraZeneca believes it has met in good faith all its document production obligations under both the Federal Rules of Civil Procedure and the Orders of the MDL. AstraZeneca stands ready, however, to meet with you and your colleagues again before next Tuesday's hearing to discuss any remaining concerns plaintiffs may have concerning the discovery process.