# EXHIBIT 54

```
                                                                        1

 1                    UNITED STATES DISTRICT COURT
                       MIDDLE DISTRICT OF FLORIDA
 2                          ORLANDO DIVISION

 3                  Docket No.6:06-MD-1769-Orl-22DAB

 4      . . . . . . . . . . . . . . ..
        IN RE:                         :
 5      SEROQUEL PRODUCTS LIABILITY    :
        LITIGATION                     :      Orlando, Florida
 6      MDL DOCKET No. 1769            :      December 11, 2006
                                       :      2:00 p.m.
 7      ALL CASES                      :
                                       :
 8      . . . . . . . . . . . . . . ..

 9
                    TRANSCRIPT OF PRETRIAL CONFERENCE
10              BEFORE THE HONORABLE DAVID A. BAKER
                    UNITED STATES MAGISTRATE JUDGE
11

12      APPEARANCES:

13      For the Plaintiffs:         Larry M. Roth

14                                  K. Camp Bailey

15                                  Fletch Trammell

16                                  Keith M. Jensen

17                                  Lawrence J. Gornick

18                                  Michael E. Pederson

19                                  Dennis Canty

20                                  E. Ashley Cranford

21                                  Keith Altman

22                                  Karren Schaeffer

23                                  Scott Burdine

24                                  Seth Webb

25      Court Reporter:   Sandra K. Tremel, RMR/CRR

                                                                        2

 1             APPEARANCES CONTINUED:

 2      For the Plaintiffs:         Ken Smith

 3                                  Lizy Santiago

 4                                  Angela Nixon
```

```
 5                              Jonathan Jaffe
 6   For the Defendant
 7   AstraZeneca:                Michael W. Davis
 8                               Fred Magaziner
 9                               Tamar B. Kelber
10                               Robert L. Ciotti
11                               Shane Prince
12                               Elizabeth Balakhani
13                               Eben Flaster
14
15   Proceedings recorded by mechanical stenography, transcript
16   produced by computer-aided transcription.
17
18
19
20
21
22
23
24
25
```

                                                                3

```
 1                    P R O C E E D I N G S
 2           THE DEPUTY CLERK:  The case number is
 3   6:06-MD-1769-ORL-22DAB.  In re:  Seroquel Products
 4   Liability Litigation.
 5           Counsel in the courtroom, please state your
 6   appearances for the record.
 7           MR. ROTH:  May it please the Court, on behalf of
 8   the plaintiffs, Larry Roth.  And Your Honor, Mr. Pennock
```

```
 9    unfortunately could not be here today.  He sends his
10    regrets but we're prepared to proceed without him.
11              MR. CAMP BAILEY:  Camp Bailey on behalf
12    plaintiffs.
13              MR. JENSEN:  Keith Jensen for plaintiffs.
14              MR. TRAMMELL:  Fletch Trammell for the
15    plaintiffs.
16              MR. CANTY:  Dennis Canty for the plaintiffs.
17              MR. PEDERSON:  Michael Pederson for the
18    plaintiffs.
19              MR. FLASTER:  Eben Flaster for the defendants.
20              MS. BALAKHANI:  Elizabeth Balakhani for
21    plaintiffs.
22              MR. PRINCE:  Shane Prince for defendants.
23              MR. CIOTTA:  Robert Ciotta, Carlton Fields, for
24    the defendants.
25              MS. KELBER:  Tamar Kelber for defendants.
```

                                                              4

```
 1              MR. DAVIS:  Mike Davis, Sidley Austin,
 2    AstraZeneca.
 3              MR. ROTH:  Fred Magaziner for defendants.
 4              THE DEPUTY CLERK:  Now counsel on the phone,
 5    please state your appearances for the record.
 6              MR. GORNICK:  Larry Gornick for plaintiffs.
 7              MS. SANTIAGO:  Lizy Santiago with Abraham
 8    Watkins for the plaintiff.
 9              MR. WEBB:  Seth Webb for plaintiffs.
10              MS. CRANFORD:  Ashley Cranford for plaintiffs.
11              MR. BURDINE:  Scott Burdine for plaintiffs.
12              MS. SCHAEFFER:  Karren Schaeffer for the
13    plaintiffs.
```

14          MR. SMITH:  Ken Smith for plaintiffs.  Angela
15  Nixon for Robert Schwartz for plaintiffs.
16          MR. ALTMAN:  Keith Altman consultant to
17  plaintiffs.
18          MR. JAFFE:  Jonathan Jaffe for the plaintiffs.
19          THE COURT:  All right.  Let me start out by
20  saying I am hoping to when we're done prepare an order and
21  a report and recommendation to Judge Conway.  In the order
22  I'll dispose of as many of the pending motions as I can.
23  In the report and recommendation, there are some more
24  motions and issues than what I probably have authority to
25  rule on them.  I think it would because of their

                                                            5

 1  centrality and other issues will make a recommendation to
 2  Judge Conway so that she can make the decision in the
 3  first instance based on my report and recommendation and
 4  any comments that counsel have based on that.
 5          And we're going to talk about all of the pending
 6  motions, I hope, and other issues.  So regardless of how
 7  we're going to decide it, discussion here will be
 8  available to Judge Conway along with and obviously, too,
 9  any order I enter somebody disagrees with it, subject to
10  review by the district judge.  So...
11          Let me take up some of the -- I'm going to take up my
12  agenda and other issues that you wanted to present, some
13  of which are the same.  There have been some other motions
14  pending.
15          Mr. Davis, we're going to not see your smiling face
16  as often, is that --
17          MR. DAVIS:  I think we're probably not, but we

```
18   will see how things develop, Your Honor.
19              THE COURT:  So you want to just change your
20   role?  You're not withdrawing from the case?
21              MR. DAVIS:  I'm involved in the Seroquel
22   matters.  Mr. Magaziner, as the motion indicates, will be
23   taking over as lead counsel.  And with the Court's
24   permission I'm withdrawing as liaison and lead counsel.
25              THE COURT:  All right.  Any problems from the
```

                                                                 6

```
 1   plaintiffs on that?  I'm not sure it requires Court
 2   approval.  We have haven't done a formal designation.
 3   Glad to have you here.
 4              MR. ROTH:  Pleasure to be here, Your Honor.  And
 5   to clarify for Your Honor, both the Sidley firm and my
 6   firm are going to be involved in the litigation going
 7   forward.
 8              THE COURT:  That's what I assumed.  I just
 9   wanted to verify that.
10              MR. MAGAZINER:  And if I may, while I have the
11   floor, in the order that -- in the motion that Mr. Davis
12   submitted accompanied by a form of order, we did not
13   ask -- he did not ask that I be appointed liaison counsel,
14   just lead counsel because I was trying to decide given the
15   slight restructuring of the defense team what made the
16   most sense.  With Your Honor's permission I'd like to
17   appoint one of my colleagues to perform the duties of
18   liaison counsel as specified in the order -- in Your
19   Honor's order for liaison counsel.  That would be Marjorie
20   Shickman.  S-H-I-C-K-M-A-N.  We have a form of order
21   prepared and I could hand that up.
22              THE COURT:  Give it to my law clerk.  We will
```

```
23   take a look at it.
24             MR. MAGAZINER:  Thank you, Your Honor.
25             THE COURT:  All right.  While we're talking
                                                              7
 1   about counsel, we also had a motion to withdraw.  I
 2   believe it was opposed.  What's the story on that by
 3   Mr. Russell Ryan.
 4             MR. SMITH:  This is Ken Smith.
 5             THE COURT:  Go ahead.
 6             MR. SMITH:  It's a -- the client is somebody
 7   that we have not been able to get in contact with despite
 8   extensive efforts.  We tried calling him.  He doesn't
 9   return our calls.  We tried contacting him through his
10   doctor.  He's not going to return his calls and we tried
11   to contact him through a different -- an attorney who was
12   representing him on a worker's compensation matter out in
13   California.  He is in Riverdale, California next to Los
14   Angeles.  We can't get him to communicate with us.  So
15   that there's no way that we can help him.
16        I think that we also indicated in the motion that
17   there might be some concern about whether he's, you know,
18   really able to look after his interests.  You know, as far
19   as that part of motion is concerned, I would probably
20   withdraw that at this point in time.  I don't have
21   evidence of that that that is the case.
22             THE COURT:  Well, my inclination would be to
23   recommend to Judge Conway that the case be dismissed
24   without prejudice for failure to prosecute.  If you're not
25   able to communicate with the client and respond to the
                                                              8
 1   Court's orders, the solution to that is that those parties
```

```
 2      in that position drop out of the case.  If there's a
 3      statute of limitations problem, that --
 4              MR. SMITH:  That could be a problem.  I don't
 5      know that it is in this particular case without
 6      researching that, but I would prefer -- I don't know.
 7      It's tough for the Court.  You don't want the case hanging
 8      around.  But I would hate to do anything or have anything
 9      done that would prejudice the client.  I think that
10      probably if the Court is inclined do that, I would suggest
11      that we give him notice that the Court does intend to do
12      that by way of a show cause or something like that if he
13      doesn't contact the Court or other plaintiffs' counsel
14      within so many days then the Court might take that action.
15      I wouldn't want you to do that without giving him some
16      notice.
17              THE COURT:  Well, I'm going to do it in a form
18      of a report and recommendation to the district judge.  The
19      plaintiff personally or you if he contacts you, will have
20      the opportunity to respond.  If there's no response, then
21      I think it's sort of self-proving.  Judge Conway will
22      dismiss that claim.  Anything else with respect to that
23      claim will be moot subject to if he wants to come back in
24      and we will deal with any statute problems that arise or
25      issues that were present at that time.
```
                                                                9
```
 1          All right.  Let me move to my agenda then.
 2          What's the status of the incoming cases?
 3              MR. MAGAZINER:  Your Honor, I don't know if you
 4      were expecting me to be at first lawyer to speak on that,
 5      but this might be a convenient time to present a three or
```

```
 6      four minute Power Point presentation that we prepared
 7      after I got into the case trying to figure out what sort
 8      of cases you had, what the inventory was.  And if Your
 9      Honor would permit me, I could present that to the Court
10      at this time.
11              THE COURT:  Any objection?
12              MR. ROTH:  We haven't seen it Judge.  I'm
13      looking at it for the first time.  So...
14              THE COURT:  You have got the floor,
15      Mr. Magaziner.
16              MR. MAGAZINER:  Thank you, sir.
17          Those numbers represent the number of plaintiffs in
18      the MDL and number of plaintiffs in state court.  We have
19      2,313 plaintiffs presently in the MDL, 4,669 of the number
20      of cases in the process of being transferred to this MDL
21      from the federal courts where they were filed.  The number
22      of plaintiffs is different from the number of cases
23      because the total number of cases in federal and state
24      court is 577.  Many of those cases were filed on behalf of
25      multiple plaintiffs as is shown by that slide.
                                                             10
 1          The plaintiffs in the federal court, almost 7,000
 2      filed their lawsuits in 23 districts and 17 different
 3      states.
 4          This shows where the great majority of those cases
 5      were filed.  Ninety-four percent were filed in the Federal
 6      Court in Massachusetts, and the other five percent are
 7      distributed among all the other districts and states in
 8      the country.  Importantly for issues we might get to
 9      later, there are three lawsuits filed in Florida.
10          Mr. Bailey's firm has 94 percent of all the cases in
```

11  this MDL.  That includes the cases already here and the
12  cases being transferred.  I said cases.  I should have
13  said plaintiffs.  Ninety-four percent of all the
14  plaintiffs presently in the MDL as shown by that slide.
15       Significantly, all but 24 of their plaintiffs in the
16  lawsuits were filed in the District of Massachusetts.  The
17  plaintiffs that the Bailey firm represents were filed --
18  reside in all the states shown in red on that map.  We had
19  noted none of the plaintiffs reside in Massachusetts where
20  all these lawsuits were filed.  One of my colleagues this
21  morning told me she thinks that maybe there's maybe a
22  plaintiff in Massachusetts from among these 6500
23  plaintiffs.  But either none of them or only one of them
24  reside in Massachusetts.  The others reside all over the
25  country.

                                                            11

1        Just for informational purposes, and we would like to
2   talk about a federal/state coordination at some point
3   today or at a later conference.  There are 315 cases in
4   state court.  Seventy-two percent of them are represented
5   by counsel who are also active in this MDL.  Almost all
6   the state court cases have one plaintiff per case.  And at
7   the bottom you will see where those state court cases have
8   been filed.
9        Very quickly, Your Honor, we looked at the first
10  filed complaints from each of the eight firms that have
11  filed more than 10 complaints in the MDL just to see what
12  they told us about the nature of this.  Among those eight
13  complaints there are 106 plaintiffs who reside in 17
14  states.  Fifty-three of the plaintiffs filed lawsuits --

15    that's half of them -- in states where they do not reside.
16    From the complaints themselves, we looked to see why are
17    the plaintiffs taking Seroquel.  One person alleged
18    depression.  And there's no information provided about the
19    other 105 plaintiffs in this group of 106.  These are the
20    injuries alleged by the 106 plaintiffs in those first
21    filed complaints.
22         I would note because of the problems that causes for
23    us is defendants trying to wrap our hands around this
24    litigation that some of them allege only serious health
25    problems.
                                                              12
1          And the last slide I'd like to show Your Honor at
2     this time, and this is significant, is several issues that
3     we will be discussing today is what are the dates of
4     usage.  We have before label change, post label change, et
5     cetera.  Very briefly, Your Honor, the FDA mandated a
6     label change for Seroquel and two other drugs in this
7     class that went into effect in January of 2004.  A
8     shorthand way to describe the label changes, that it
9     warned doctors who prescribed Seroquel of a -- reports of
10    diabetes in patients using Seroquel and the other two
11    drugs in the class that was subject to the same mandatory
12    warning imposed by the FDA in January of 2004.  And
13    because of that label change, there's legal significance
14    both to the issue of preemption, the issue of failure to
15    warn, and several other issues depending on whether a
16    plaintiff used Seroquel before the label change or after
17    the label change.
18         So we looked at these 106 plaintiffs and the eight
19    first filed complaints to see what they had said about

```
20   their use.  And you will see what they said about their
21   use.  One alleged that he used it before the label change.
22   One said after the label change, and one said after the
23   label change but is continuing to use it even now when the
24   complaint was filed.  And 103 we have no information
25   provided.
                                                              13
 1        So that's the very brief overview of the status of
 2   litigation that we were able to put together.
 3        Thank you, Your Honor.
 4            THE COURT:  What is holding up the transfer of
 5   the other cases?
 6            MR. MAGAZINER:  I don't know that anything is
 7   holding them up other than the process from when they're
 8   tagged and there is a time period during which plaintiffs
 9   whose cases are tagged have the right to object to the
10   transfer, and then there's -- after that time period
11   passes, there is some delay between the last date for
12   objection and the date when the judicial panel actually
13   issues the transfer orders.  I don't know that there is
14   any other particular reason for the delay.
15        Is that your understanding?
16            MR. ROTH:  Well, Judge, I know that, I believe
17   it was just in the last couple of days we got two
18   conditional transfer orders from Massachusetts that the
19   clerk's office was trying to get sorted out.  And there
20   was, I believe, several hundred cases, maybe more
21   plaintiffs, but several hundred files in there.  But I
22   don't think anybody has a handle on their process up there
23   as to when they're going to get them all down here.
```

```
24              MR. MAGAZINER:  I think, as Your Honor knows,
25   the conditional transfer order does not actually result in
```
                                                                14
```
 1   a case being transferred.  That's the order which then
 2   gives the parties an opportunity to object to the
 3   transfer, and then if there's no objection, which I
 4   anticipate there would not be for 99.9 percent of these
 5   cases, then the transfer order is issued.
 6              MR. ROTH:  Right.  But the point -- the real
 7   question is, is the judicial administration there in
 8   Massachusetts what, you know, what the delay may be or
 9   maybe there's just not getting to them was my point.  We
10   just don't know.
11              THE COURT:  There are a lot of ways to speed
12   this up.  One is the parties can stipulate to the transfer
13   orders.  You can waive the time periods.  You can -- I can
14   call judges and clerks up in Massachusetts or Judge Conway
15   can or I can call the chairman of the multi-district panel
16   and say, "look, we're trying to adminster these.  It would
17   be easier if we get them all here and get them done."  So
18   it's just a judicial interest we have to move these things
19   along.
20              MR. MAGAZINER:  I can state on the record on
21   behalf of AstraZeneca that we certainly agree to the
22   transfer of both cases that fall within the scope of
23   judicial panel's order creating the MDL.  So we certainly
24   are not -- no case need to be delayed to give us an
25   opportunity to object because we will not object to a
```
                                                                15
```
 1   transfer.
 2              THE COURT:  What I'm thinking is, if it's
```

```
 3      sitting there just waiting for some period of weeks to go
 4      by, if parties would just file a stipulation up with
 5      the -- whether it's got to go to the MDL panel or the
 6      originating district court, just let them know they can go
 7      ahead and process it.
 8              MR. CAMP BAILEY:  Speaking on behalf of
 9      apparently 94 percent of the cases, we have not filed an
10      objection except in one specific case that we have dealt
11      with.
12              THE COURT:  You shouldn't waive an objection
13      when there's no objection.
14              MR. CAMP BAILEY:  There will be cases in the
15      future there may be some fishing grounds to say perhaps
16      that if there is no federal jurisdiction or whatever that
17      we'd still want to preserve.  But otherwise, we have no
18      problem on the existing cases that are somewhere between
19      apparently Massachusetts and Orlando at this point.
20              THE COURT:  Mr. Bailey, let me ask you since
21      we're sort of on this topic, why do we have this joinder
22      of plaintiffs in a single action?  I don't understand the
23      rhyme or reason or legal justification for it.
24              MR. CAMP BAILEY:  When we looked at where to
25      file these cases, there were various jurisdictions that
                                                                  16
 1      AstraZeneca has principal places of business or major
 2      areas of operation.  Those being Delaware --
 3              THE COURT:  I'm talking about a joinder of
 4      plaintiffs.
 5              MR. CAMP BAILEY:  Just for economy, judicial
 6      economy and having them filed and put together and if
 7      we're doing it once we may as well do it for as many
```

```
 8   plaintiffs at a time as possible.
 9            THE COURT:  I understand you save a filing fee
10   that way, but these plaintiffs are not identically
11   situated.  You got them coming from all different states
12   and different law may be applying.  They may have
13   different statute of limitations issues.  They may have --
14   obviously, they have different medical conditions and
15   different history of taking the drugs.  And I mean, this
16   is not a class action.
17            MR. CAMP BAILEY:  It's not a class action but
18   the core body of factual allegations and legal --
19            THE COURT:  That's why we got MDL.
20            MR. CAMP BAILEY:  Right.
21            THE COURT:  But, you know, particularly we're
22   talking about pulling out plaintiffs to do Bell Weather
23   cases.  We're talking about winnowing them out because of
24   statute issues because of, you know, may be a failure to
25   prosecute by one person.  There may be a, you know,
                                                          17
 1   they're taking some other drug that really makes the case
 2   not prosecutable from your point of view.  I don't know of
 3   any principal in the federal rules that just allows you to
 4   aggregate plaintiffs because they have got the same kind
 5   of claim.
 6            MR. CAMP BAILEY:  When we have a group of
 7   plaintiffs come to us and we're going to file essentially
 8   the same complaint on behalf of all 200 plaintiffs or
 9   however many plaintiffs that need to be aggregated or
10   going to have common issues of fact, I don't know other to
11   say we save trees, we save the clerk, we save ourselves
```

```
12    the hassle of filing 60, 70 page complaints multiple
13    times.  When they get transferred down here to the MDL,
14    the practical effect is they'll all be, I assume, given
15    their own case number and given their own treatment
16    whether they all go back en masse.
17          THE COURT:  Each piece gets one of those.  If
18    you have got 600 plaintiffs, it becomes almost impossible
19    for us to give individual treatment to each of those
20    plaintiffs.  I would think the same thing whether it goes
21    back to the originating court.  They're not going to be
22    tried together just because they are filed together.
23          MR. CAMP BAILEY:  Correct.
24          THE COURT:  Let me just alert you that you're
25    probably going to get an order from Judge Conway directing
```
                                                                18
```
1     that you, as to these cases that are here, you know, we've
2     got any number of them, and I know it creates some
3     recordkeeping issues, but it seems to me this is better
4     than the alternative, that each plaintiff is going to have
5     to have his or her own case.
6           MR. CAMP BAILEY:  Well, they do all have their
7     own case.  They're just filed in groups that always
8     contemplated a motion for trial groupings or some further
9     way to identify cases to proceed to trial whether here in
10    the MDL or back when they're transferred back without -- I
11    mean, it's almost the same concept as an MDL within the
12    smaller group of cases that you're not repeating --
13          THE COURT:  It's evident that you haven't
14    grouped them.  I mean, if you -- you know, if you had been
15    able to and had done what you got everybody from
16    California in this case and you got everybody from Arizona
```

```
17    in this case and you broke it down and everybody who's
18    taken it since 1992 in this case, and it's people who
19    stopped taking it in whenever, and it's -- or it's people
20    who have had this general group of symptoms, some logic.
21    But apparently there's no logic to it except, you know,
22    these are the ones that were in the bag when we filed it.
23    I don't see that working.
24              MR. MAGAZINER:  May I address that point?
25              THE COURT:  All right.
```

                                                                19

```
 1              MR. MAGAZINER:  On our agenda that we have
 2    not -- on our own private agenda -- on the AstraZeneca
 3    side, let me put it that way, for things we would like to
 4    do down the road, we will be filing a motion for
 5    severance.  I believe the case law is overwhelmingly clear
 6    that not even two plaintiffs from the same state who use
 7    the drug at the same time can be joined in one complaint
 8    in federal court.  And that has been the consistent ruling
 9    of courts, both MDL and otherwise, for many years.
10         This is a -- these claims are misjoined.
11              THE COURT:  My inclination is to agree with you.
12    This isn't a lot of people got hit by the same train.
13              MR. MAGAZINER:  And what we're going to be
14    asking the Court to do is to sever the existing cases and
15    make them be refiled.  And there may be some streamlined
16    procedure for refiling, refiling on behalf of individual
17    plaintiffs.  And we're also going to ask the Court to
18    enter an order that any new cases filed must be filed on
19    behalf of one plaintiff or plaintiff and spouse per case.
20         So we can expedite our submission of that motion if
```

```
21   Your Honor would like.
22            MR. CAMP BAILEY:  I'm not up to speed on whether
23   the overwhelming majority of courts have that, but we
24   would like to at least have the opportunity to go review
25   that and brief that and see if we can work out some kind
```
                                                                    20
```
 1   of --
 2            THE COURT:  My plan is to, on this issue,
 3   prepare a report and recommendation to Judge Conway that
 4   requires that the plaintiffs disaggregate themselves here
 5   with respect to the claims that are pending here.  You
 6   will have a chance to -- the way the report and
 7   recommendation works is you will have 10 days to disagree
 8   with it or comment on it, both sides will.  And typically
 9   the way it works here is one side disagrees, files an
10   objection, the other side can file a document either
11   objecting or in support or seeking some alternative.  But
12   we usually move pretty quickly on this.
13        All right.
14            MR. ROTH:  Just a housekeeping thing.  Could I
15   request that we get a copy of hard copy of that because I
16   know when we did our Power Point we gave them a -- this is
17   the first time we have seen this.
18            THE COURT:  I'm sure Mr. Magaziner will e-mail
19   it to you.
20            MR. ROTH:  That would be great.
21            MR. MAGAZINER:  Absolutely, Your Honor.  We
22   might be able to give it to you before we leave the
23   courtroom today.
24            THE COURT:  I mean, I might add with respect to
25   Power Points, I'm not a juror here.  If you want to put
```