3    likelihood of success in order to get a preservation

4    order.  All you need to do is show that there is a

5    necessity to have it.  And it doesn't -- is not overbroad

6    in its imposition on the defense.

7         Here, Your Honor, we submit that the Court needs to

8    presume they had insufficient record retention policies

9    which allows under Pueblo versus United States case,

10   against the United States government in that case, the

11   imposition of a preservation order.  In fact, there is a

12   very onerous one, far more onerous than the one we

13   proposed, which I should mention what is in our proposal,

14   Your Honor.

15        We're only in essence trying to change two things

16   that wasn't in AstraZeneca's Friday preservation proposal

17   to us.  Those two things are, one, asking them to be

18   ordered to further preserve what they represented in their

19   Friday filing.  In a very, very limited way, they are a

20   preserver.  That's the second sentence on page 8 of the

21   order.  And the other is that we simply be ordered to

22   confer on things they haven't gotten despite also repeated

23   requests any information on.  When there's any record

24   retention policy or practice on nonbacked up computers.

25        Central to all drugs litigation is what is on drug

                                                        56

1    reps laptops.  We have asked them and have not yet been

2    told since November 20 whether or not drug rep's laptops

3    are backed up in a normal course, whether or not they made

4    any efforts to back them up.  The answer might be, yes, we

5    might agree to all these things.  Then give us the

6    information to allow us to review these things and whether

7    or not third-party e-mail accounts, not e-mails used for

8     Seroquel business.  What if anything has been done to

9     maintain that information.

10        So those are the only two things we're asking them to

11    do in terms of impositions on them they weren't agreeing

12    to on Friday by their, what they call proposed

13    stipulation.

14        Second, Your Honor, the complexity of this case, the

15    diversity of the type, nature and of the location of

16    information further justifies at least the preservation

17    order we're proposing.  They brought to Your Honor's

18    attention the Sedona conference.  They support the

19    preservation order.  The Manual for Complex Litigation

20    supports it.  And the Pueblo case I cited including the

21    most recent case on the subject the Capricorn v. Siemens

22    case, Pennsylvania '04, also talks about the fact that

23    many complex cases almost as a matter of course now enter

24    such orders.

25        Another large reason is they actually submitted for

57

1     Your Honor's review the Baycol motion to get rid of the

2     preservation order as apparently advancing their argument

3     that they would be subject to a preservation order.  But

4     that was context of Bayer's representation.  And they had

5     an affidavit on that said, "All Baycol e-mails, data and

6     documents are being preserved on unique backup tapes held

7     in a vault by independent experts safeguarding same."

8     That's on page 16 of their submission.

9         We have the antithesis here, Your Honor.  Not only

10    have they never made any such representation, they've

11    never given us any information despite your clear

12    directive that they do so.  Part of the reason we need

13    the -- what we didn't want to do but we felt we needed to

14    do to comply with your directive, give them less than

15    local rule notice of an IT 30(b)(6) deposition as we

16    requested last time.  As we had already seen indications

17    that we weren't going to get the cooperation we were

18    asking for in terms of information that would allow us to

19    intelligently make proposal to Your Honor.

20         That IT deposition, Your Honor, we submit should go

21    forward whether or not preservation production protocol

22    order is entered, because without it, we lack the ability

23    to effectively negotiate, understand or appreciate their

24    electronic productions.  And also, the very Delaware

25    default e-discovery standards they promptly submitted to

                                                              58

1     the Court contemplate a 30(b)(6) IT deposition.

2          We submit that it should be done.  And we submit that

3     it needs to be done for all the reasons, Your Honor -- if

4     Your Honor accepts our proposed order might order us to

5     negotiate from.  We can hardly understand what search

6     terms might be relevant or might not in many cases without

7     finding out what types of electronic data systems they

8     have.  The rest of the reasons are self-apparent.

9          If Your Honor would like any response after they

10    talk, I'm prepared to give that, Your Honor.

11         MR. MAGAZINER:  Your Honor, Mr. Jensen referred

12    several times to the preemption discovery.  As we

13    indicated to the Court in the statement of issues that we

14    prepared and submitted on the 6th of December when Your

15    Honor asked for it to be submitted to you, we have been

16    looking some more at the preemption issue.  We're not

17    presently inclined to file a preemption motion.  I'll be

18    happy at this point to explain the reasons for that

19    disinclination or explain it later or if Your Honor

20    doesn't have time, maybe no explanation will be necessary.

21        But to state it again as clearly as I can, we're

22    presently not intending to file a preemption motion for

23    reasons that I can explain whenever Your Honor thinks it's

24    appropriate.

25        If Your Honor would now like a substantive

                                                         59

1    response --

2            THE COURT:  I'll take it in saying that you

3    don't propose to abandon the issue?

4            MR. MAGAZINER:  No, sir.  May I take a moment to

5    explain it?

6            THE COURT:  Well, this case is not going to work

7    if we have a hearing one month and we have a firm proposal

8    with a definite date and plan we roll out and come in the

9    next month and say we're not going to do that.

10            MR. MAGAZINER:  May I explain, Your Honor?  I'm

11    sure Your Honor is not happy with this but I d like to

12    explain if I may.

13            THE COURT:  I'm going take a recess, hear my

14    criminal case which will probably take 15 to 20 minutes,

15    and we will reconvene after that.

16                    (Recess)

17            THE COURT:  Mr. Magaziner, I believe you were

18    about to tell me why I shouldn't disregard any statements

19    you make about the future defense of the case.

20            MR. MAGAZINER:  I would like to explain to the

21    Court why we have had a change of -- our thoughts have

22    changed about preemption, Your Honor.  I appreciate the

23    opportunity to do that.

24         What Mr. Davis proposed to the Court at the last

25    conference was a 12(b)(6) motion.  It is a motion, as

                                                                    60

1     12(b)(6) is by definition a motion based on pleading

2     saying that a complaint does not as a matter of law state

3     a claim upon which relief can be granted.  That was what

4     Mr. Davis proposed, a 12(b)(6) motion.  Not a motion for

5     summary judgment, not a different kind of motion but a

6     12(b)(6).  A rifle shot motion, if you will, directed to

7     one issue.  The issue to which Mr. Davis expected to

8     direct the motion is the issue whether a claim by a

9     plaintiff who alleges Seroquel use after the label

10    changed, which I have referred to earlier, and who alleges

11    as a sole basis for liability that the label was

12    inadequate, the company was negligent in not making the

13    label more informative, whether that claim is preempted,

14    on that issue I don't actually think there is likely going

15    to be any dispute.  If the claim is based on the

16    inadequacy of the label and the injury is the injury

17    warned of on the label, such claims I think are preempted

18    even with all the new decisions coming down from various

19    circuit courts.  I think there's no dispute about that.

20         Two things happened after Mr. Davis said to the Court

21    that we would be interested in filing such a rifle shot

22    12(b)(6) motion.

23         One is we had an opportunity to analyze more

24    carefully the complaints that have been filed.  And I

25    showed some of that to Your Honor in the slide show.  Of

61

1    the 106 plaintiffs in the eight first filed complaints,

2    there are only two who allege post label change use of

3    Seroquel.   So the motion, the rifle shot motion Mr. Davis

4    was describing, the 12(b)(6) motion, if successful would

5    have gotten rid of those two claims.   Or more likely, not

6    even those two plaintiffs because most of the plaintiffs

7    are alleging a bunch of other claims and making other

8    allegations that included in different counts that might

9    not even have been preempted on that basis.   For example,

10   if a plaintiff alleges in a complaint not only was the

11   label inadequate but then your sales representatives came

12   out and said things that were inconsistent with the label,

13   that would be a different challenge if we were trying to

14   deal with that on a preemption motion.

15        So we looked at the complaints more carefully.   And

16   the rifle shot 12(b)(6) motion that Mr. Davis

17   contemplated, we believe, is not going to be very

18   effective in getting rid of many cases.   It may get rid of

19   some portions of some claims for some plaintiffs based on

20   what we have now seen of the complaints.

21        When we learn more about these claims, when we learn

22   more about the Seroquel use, when we learn more about what

23   the theories of liability may be, we may have a

24   blockbuster preemption motion.   But we don't have it now

25   based on the complaints which is what we were saying by

62

1    raising a 12(b)(6) motion.

2        Second thing that happened is plaintiffs asked Your

3    Honor for leave to take discovery and Your Honor agreed

4    they could do that.   So the 12(b)(6) motion was

5    transformed into a summary motion.  Instead of being a

6    motion judging the adequacy of a complaint, to state a

7    claim upon which relief could be granted, became a summary

8    judgment motion which is not uncommon.  But that's what

9    happened here.  So we're no longer dealing with a rifle

10   shot 12(b)(6) motion directed to the adequacy of the

11   pleadings but to now a summary judgment motion.  The

12   plaintiffs then served on us the discovery they wanted.

13   And the discovery that they asked for is in essence all

14   the discovery that plaintiffs will ever ask AstraZeneca to

15   provide in this entire litigation.  They want to know

16   basic --

17        THE COURT:  You're kidding yourself if you think

18   that's true, if you think they won't be following up.

19        MR. MAGAZINER:  Well, if you look at the -- if

20   you look at their discovery request -- and I m not sure if

21   Your Honor has it but we can provide their discovery

22   request -- their document request, it basically asked for

23   everything that shows what we knew about Seroquel,

24   everything that shows what we communicated to the FDA,

25   everything that shows what it didn't communicate to the

                                                        63

1    FDA, all of our marketing documents.  I'm hard pressed to

2    think of categories of documents that they will want on

3    other issues in this case that they have not put into

4    their preemption discovery request.

5        So we're contemplating a rifle shot 12(b)(6) motion

6    focused on their complaint.  They come back with discovery

7    that is the full blown discovery on every issue in the

8    case.  It's not rifle shot discovery.  And we think if we

9    go through this, we are at most going to get rid of, based

10   on the complaints alone, a couple of plaintiffs or a very

11   small sample of plaintiffs.  Two percent maybe, and maybe

12   not even -- and one plaintiff in his or her entirety, just

13   one plaintiff's count of one complaint.

14       Beyond that, because the discovery they have asked

15   for is so expansive.  As we have looked at what they have

16   asked for, I'll be completely frank with Your Honor, it

17   cannot be done in the timeframe that Your Honor

18   contemplated.  I'm sorry to say that, but it cannot be

19   done.  They want all our documents on what we knew, all of

20   our marketing documents, hard copy, e-discovery.  We're

21   accustomed to moving fast.  We want to move as far as we

22   can.  We want to provide the Court with the -- or enable

23   the Court to move this MDL through the court system at

24   record speed.  But, frankly, Your Honor, we cannot provide

25   all the discovery they have asked for in the timetable

                                                              64

1    that Your Honor ordered.  Even if we could, Your Honor, to

2    summarize, I think we still would not want to file a

3    12(b)(6) motion at this time because we think it would be

4    not a very efficient use of Your Honor's time, of Judge

5    Conway's time, of our time, or of the plaintiffs' time

6    because it would at the end have such a small impact on

7    the cases based on the complaints that we have studied

8    carefully.

9        What we would propose instead, if this would be

10   something of interest to the Court or to Your Honor or to

11   Judge Conway, is we could propose instead to have an

12   informational briefing on preemption.  We would tell the

13   Court how preemption -- what we think the law is, where

14    the transit law -- where it's going, what we believe the

15    preemption law as it applies to these cases.  Plaintiffs

16    could do the same thing and we could have a session with

17    Judge Conway perhaps in conjunction with a tutorial on

18    some of the scientific and medical issues in the case

19    which is something many courts have found useful to them.

20    We could talk about how preemption might impact it.  And

21    then at the appropriate time when we have learned enough

22    about plaintiffs' cases to know what we're dealing with,

23    when they have had some discovery of us, which no doubt

24    will be proceeding on a parallel track, we could raise

25    preemption in a motion that we think is well considered

                                                              65

1    and designed to help resolve many of these cases.

2        At the moment we don't have a preemption motion

3    available that we think would help resolve more than a

4    tiny fraction of the cases and not even, as I said not

5    even one plaintiff's claim, perhaps just one count of two

6    or three plaintiffs claims as we now understand it.

7        I would be happy to answer questions but that is the

8    essence of why we have rethought our position on

9    preemption.  And I apologize to the Court for having

10   disappointed the Court on this.  It's obvious that -- we

11   understand why you're disappointed.  We would love to get

12   rid a lot of cases on preemption, Your Honor.  We just

13   don't think we have the ability to do it at this point

14   with the kind of motion that we were contemplating and

15   that Mr. Davis told the Court we wanted to file a 12(b)(6)

16   rifle shot motion.

17       Thank you, Your Honor.

18          THE COURT:  Have you provided the plaintiffs

19    with the corporate organizational chart?

20          MR. MAGAZINER:  No.  But we're prepared to do

21    that almost immediately.

22          THE COURT:  That should have been done in

23    September.  I really don't understand here on December 11

24    "We're prepared do did it almost immediately."  That is

25    weasel language, and you know it.

                                                        66

1          MR. MAGAZINER:  Well, Miss Kelber is going to

2    address the specifics of the discovery issue.  One of the

3    problems, Your Honor, is we reach agreements with one

4    plaintiff's lawyer and then another plaintiff's lawyer

5    says what the other lawyer agreed to, we don't want.

6    And --

7          THE COURT:  That should not keep you from

8    providing basic information that's going to move this case

9    forward.

10          MR. MAGAZINER:  I agree.

11          THE COURT:  That's not an adequate excuse.

12          MR. MAGAZINER:  I agree with that, Your Honor.

13      Miss Kelber can address that.  I feel sort of sorry

14    pointing to her at this point.  She's been dealing with

15    the plaintiffs constantly on the phone trying to reach

16    agreements, having them renigged, trying to reach new

17    agreements.  I'm not faulting the plaintiffs, but it's

18    been a moving target.

19          THE COURT:  Some of this hasn't been moving.

20    It's going to move.

21          MR. MAGAZINER:  I understand.  I can't speak to

22    what happened in September of course because I wasn't

23    here.  Ms. Kelber has been involved.

24              THE COURT:  Wrong answer too.  I don't want to

25    hear that.  I don't want to hear that again about what

                                                          67

1     happened before you came in the case.  I do not want to

2     hear that.  You're in the case.  You're responsible for

3     everything that's happened ahead of time .

4               MR. MAGAZINER:  Well, that's why Ms. Kelber is

5     here with us today, Your Honor, to address it.  I

6     apologize to the Court.

7               THE COURT:  What's the problem?

8               MS. KELBER:  The first problem is the

9     fundamental positions of the parties regarding how

10    discovery should proceed.  As you saw from our brief, we

11    originally negotiated with plaintiffs the concept of going

12    forward with the custodial production whereby we would

13    identify document custodians.  We will give the plaintiffs

14    the opportunity to prioritize the custodians they were

15    most interested in, and move discovery along on a

16    custodial basis.  That has the benefit of getting all of

17    the Seroquel documents for all of the people who are

18    relevant to the plaintiffs as quickly as possible.  That

19    is the quickest way to get discovery to the plaintiffs.

20       We have in -- we initially had agreement on that from

21    the plaintiffs Mr. Pennock represented in front of the

22    Court.  That was something plaintiffs were willing to do.

23    Consistent with that, we were agreeable to producing a

24    list of all the custodians we had identified, producing

25    organizational charts and working together with the

                                                          68

1     plaintiffs to move discovery along in an orderly fashion.

2       But the plaintiffs' response was that they would be

3    happy for us to do that and provide that information to

4    them, but they would not agree to give us the benefit of

5    such an approach and would only agree -- would require

6    also written discovery requests, formal responses to

7    written discovery requests, certification that we had

8    searched out documents responsive to every single category

9    of every single request, and then served very broad

10   discovery requests.

11       I submit that the best way and the quickest way to

12   move things along is by custodial production if that is

13   something that we can do.  We're ready to move forward.

14   We have not been ready to produce any documents because we

15   have had ongoing negotiations with the plaintiffs about

16   the format of that production.  I think we're very, very

17   close on the format of the production.  Many of the issues

18   in the plaintiff's most recent filing are issues that we

19   discussed with them on Friday and agreed with them to

20   investigate the answers to their questions.  For example,

21   some of the metadata fields that they're requesting, we

22   discussed on Friday.  We told them on Friday we would

23   check and see if those were available fields.  And we're

24   doing that.  We do not have an answer today to a question

25   that was raised on Friday but I think we're very close to

                                                          69

1    reaching an agreement.

2       The main outstanding issue to which the parties do

3    not agree is the issue of cost allocation.  We have

4    proposed that costs of production be split between the

5    parties.  The plaintiffs are taking the position,

6      generally, that AstraZeneca must bear that cost.

7          Specifically with regard to hard copies, they are

8      taking the position that we must bear that cost.  We have

9      advised them that we are not aware of any cases which

10     impose upon the producing party the cost of copying hard

11     copy documents and providing them to the plaintiffs.  We

12     have asked if they're aware of any authority.  They have

13     not provided us with any authority.

14         With regard to hard copy documents, you will see in

15     our proposed order, we propose that the copies -- the

16     documents be scanned and OCRed and the cost be shared.

17         We received yesterday the plaintiffs' motion or the

18     plaintiff's new motion regarding document production.  It

19     makes several different proposals.  If you are inclined to

20     address those proposals, I would request the opportunity

21     to file a response to that brief.  It was just filed

22     yesterday and it was styled as a motion.

23         As for the preservation issues, the representation

24     that we have not provided information to the plaintiffs is

25     not true.  As you would see from our brief, we have been

                                                             70

1      having and attempting to provide information to the

2      plaintiffs regarding preservation efforts.  What we have

3      told them is that document hold notices have gone out, and

4      have continued to go out since, I believe, it's 2003.

5          We are instructing all AstraZeneca employees who have

6      anything to do with Seroquel to preserve documents.  We

7      have also advised them that back up media for e-mails have

8      been retained since November of 2002.  What we have not

9      been able to provide them is information on other specific

10     systems.  And we have explained that AstraZeneca does not