```
11   have a single IT person that we could get on the phone
12   with the plaintiffs to explain the various systems in
13   place at AstraZeneca, as AstraZeneca has multiple systems.
14   And we are working to identify the people who are
15   responsible for each system and to find out information
16   from them about their back up procedures.  AstraZeneca
17   does have in place disaster recovery back up procedures,
18   but the back up procedures are directed only to disaster
19   recovery.
20        What we have advised the plaintiffs is not that we're
21   refusing to provide information on this, but that we need
22   to investigate and learn the information ourselves before
23   we can provide it.  And we proposed in our order that we
24   would continue on that investigation and get that
25   information as quickly as possible.  But it is simply not
```
                                                              71
```
 1   possible to provide information about multiple systems in
 2   the course of a few weeks.
 3        So as to the redaction log, the redaction log is
 4   something that was raised in the motion yesterday.  The
 5   redaction log was discussed with the plaintiffs in the
 6   context of the proposed protective order.  The plaintiffs
 7   originally proposed a redaction log and it was agreed that
 8   redaction log would be unduly burdensome, was taken out of
 9   order.
10        If the Court is inclined to address that proposal,
11   I'd ask the opportunity to brief it.
12        As for the privilege log, we have said and maintained
13   that we would agree to produce, of course, a privileged
14   log that corresponds to the requirements of federal rules.
```

15     The last topic I have on my list is that of the
16 plaintiffs' deposition notice.  That notice was filed,
17 sent to us over the weekend last week for a deposition
18 that was on 28 different topics that was supposed to go
19 that same Friday.  We had a discussion with the plaintiffs
20 during which I was under the impression that we had
21 reached an agreement that we would instead of going
22 forward on a motion to compel that deposition, we would
23 move forward in an orderly and coordinated fashion whereby
24 we would provide the plaintiffs with our objections to
25 their deposition notice by this Wednesday.  We will meet

72

1 and confer this Friday about the issues in that and work
2 to negotiate an appropriate solution to the problem.
3 After which, if they still felt they needed to file a
4 motion to compel, they would file a motion to compel.  But
5 there is simply no reason to not allow us an opportunity
6 to respond to their deposition notice and to work together
7 with the plaintiffs to determine the most appropriate
8 depositions.
9      We're making every effort to obtain all relevant and
10 necessary information, but we're not, you know, the
11 plaintiffs, Mr. Jensen represented they had a call where
12 they had their IT person on and we didn't have our IT
13 person on.  Well, this is an employee from one of the law
14 firms that represents plaintiffs on the phone who deals
15 with IT issues.  If there were a counterpart at
16 AstraZeneca to that person, we could have had them on the
17 phone with the plaintiffs, but there simply isn't.  We
18 need to investigate every single system separately, and
19 all we request is the time to do that.

```
20              MR. TRAMMELL:  May plaintiffs respond?
21              THE COURT:  I'm going to move forward.
22         I'm disappointed in the progress.  I thought we had
23    discussed these out at the initial conference where Judge
24    Conway and I were presiding and that there was an
25    understanding.  Everybody here as sophisticated litigators
```
                                                                73
```
 1    you know what the core documents are, the core piece of
 2    information that needs to be produced and that was going
 3    to be produced so that the cases would move forward and we
 4    wouldn't have this posturing that we're getting now.  I'm
 5    disappointed that when I set a hearing three weeks out
 6    that the serious discussions don't take place until the
 7    Friday or the weekend before the Monday hearing so that
 8    the parties really aren't ready.
 9         There's some different ways I can deal with that.  I
10    have given some contemplation to the appointment of a
11    special master to handle discovery matters.  That is both
12    expensive and tedious.  I thought based on our initial
13    discussions that would not be necessary.  I'm now
14    considering whether that would be necessary.  We have got
15    an exchange of various forms of proposed orders that deal
16    with some of these issues, some of which you're close to
17    agreement on, some of which you aren't.  Seems to be very
18    difficult for you to take it to the final step where you
19    actually have an agreement that you both want to live
20    with.
21         Then we've got a real problem with the defendant
22    failing to produce basic information to the plaintiffs.
23    You have an understanding as to what's going on here.  And
```

```
24    the defendant -- what has just been said doesn't even know
25    its own organization.  That's relevant to the issues here.
```
                                                                74
```
 1    Again, I don't understand why here in the middle of
 2    December that's the case when this issue was recognized
 3    and talked about several months ago.  To the extent that
 4    work needed to be done to find those things done, it
 5    should have been done long ago.
 6         So asking for time to get something done when it
 7    should have been done long ago is, again, not a very good
 8    response.
 9         I'm going to direct that both parties file by
10    Wednesday, noon, your final version of this proposed order
11    dealing with this first round of discovery.  Apparently it
12    doesn't matter now whether anything relates to preemption
13    issues or not.  So any issue as to that will fall out.
14    That should be done then by noon Thursday.  If there's a
15    specific objection that you want to raise as to the other
16    side's proposed order, you could file that and then I'll
17    craft together, some sort of order.
18         I want the defendant to be ready to produce witnesses
19    for deposition.  If need be, I'll preside over the
20    depositions here in this courtroom next Wednesday,
21    Thursday and Friday.  I'll issue the nature of the
22    defendant's document retention policy, database
23    organization and organizational chart.
24         If the parties agree to some other method, less
25    onerous then that, that information will be exchanged
```
                                                                75
```
 1    promptly, then we can reconsider that.
 2         Now, both sides have raised some issue about my order
```

```
 3   regarding the plaintiffs' production of fact sheets.
 4   What's the plaintiff's problem?
 5              MR. CAMP BAILEY:  Numerous problems.  It's also
 6   going to be very disappointing to the Court to hear that
 7   while we're undertaking and spending every waking hour of
 8   the day of the week working on this thing, I can speak to
 9   specifically to my cases.  When we -- to kind of refresh
10   the history, when we finally got the final order as
11   proposed by the defendants, we sent that out to our
12   clients, to my firm every client we represent.  In looking
13   at the revised order from the last hearing when we
14   contemplated having it due on December 8th, moving it to
15   December 15, we have now gone back and determined that of
16   our cases filed before September 11, this year, that
17   basically we have got 1,234 cases which are technically
18   due this coming Friday.  And when we send out those 600 --
19   or those 6,000 some odd fact sheets, as of today, we have
20   gotten 122 of them back from our clients.  Of those 122,
21   they aren't all necessarily even in that first tranche of
22   1,234.
23          The problems are, one, the U.S. mail service.  We
24   send those out to our clients.  And the difficulties in
25   this whole process is not that we have any motive or
```
                                                                76
```
 1   desire to prevent them from getting the information they
 2   need on these cases, but the difficulty all arrives from
 3   the mechanics and mechanism of getting these fact sheets
 4   with these specific questions out to our clients and
 5   having them, in some cases, have to go back 30 or 40 years
 6   for information and try to put this all together and get
 7   it back to us in the mail.  In that case it comes back to
```

```
 8      us, and even then there's usually multiple deficiencies,
 9      holes, that require further follow-up by us before we can
10      even get them into a form ready to produce to the
11      defendants.
12          Which is why we ask for it on the 20th.  We would ask
13      for a some kind of relief or some kind of understanding
14      that we're doing everything in our ability to get these
15      done.  We're doing everything in our ability to get
16      defendants the information they need.  But either we would
17      request some kind of relief on the deadline as far as the
18      practicality is concerned on these cases, or, secondly,
19      some kind of alternative exchange of information that does
20      not have all of the fluff and extra questions that we
21      agreed to on behalf of the plaintiffs solely or really
22      originally to get a rolling production that would allow us
23      to produce these on a rolling basis.
24          When we originally negotiated with the other side, we
25      had proposed a one-page fact sheet which gave the Court
```
                                                                77
```
 1      information such as name, who's filling this out, social
 2      security number, gender, date of birth, the address, who's
 3      representing you, what case you are captioned in, plus
 4      your Seroquel usage dates, the reasons you're taking the
 5      drug in the first place, the name and address of the
 6      prescribing physician, the name and address of the
 7      pharmacy where the prescriptions were filled, the
 8      principal injury for which the claim is to be asserted,
 9      the dates of that injury, and the name and address of the
10      physician or facility that diagnosed the principal injury.
11      And was included with a HIPAA authorization which would
```

```
12      allow them to get going on getting those records and that
13      proof so they could begin their evaluation of our cases.
14           Before we came to that Halloween agreement when we
15      went up to Chicago and agreed to use their form in
16      exchange for the rolling production, based on the initial
17      status conference we had here with you on September 7, we
18      went ahead and sent that out to at least my clients, the
19      1800 clients that we had currently in federal court at the
20      time.
21           Since September that we sent that out, we now have
22      over 1,000 of those back in our office with all that core
23      information ready to go with HIPAA authorizations for most
24      of those.  And so another alternative we would propose is
25      to give that information that we have and have no desire
                                                                  78
 1      to hide that or to impede defendants from getting that
 2      information to get them started on all the core
 3      information.  All of the motions and all the things they
 4      talk about here are all focused on basically two things.
 5      Did you use the drug and what are the injuries you're
 6      claiming from that drug.  Which getting these medical
 7      records, getting them -- the process going on getting them
 8      started, plus this basic information will let them go a
 9      long way in getting the initial case evaluation going.
10           We have no problem with this additional information
11      as far as employment records and criminal background
12      history and all the other stuff that's in there that's not
13      a core to the essential part of the case but is
14      information that they have sought to ask because it's
15      their discovery.  We have no problem in supplementing that
16      when those role in.  But as far as being able to meet the
```

17    deadlines, we would propose to start, I guess, with the
18    core information and supplement that on an ongoing basis
19    as it comes in.
20         I would point out that the litigation would not be
21    hampered or slowed down anyway by a longer time period.
22    We need to get those in.  They're still going to be able
23    to make their motion.  Still going to be able to get their
24    understanding of these cases.  And what will result is a
25    better, more complete fact sheet process as we continue to

                                                              79
 1    supplement what we initially give them.
 2         But as we currently stand with the December 15
 3    deadline for our first 1200 plus cases, it does not look
 4    good.  Followed shortly thereafter with many other
 5    deadlines because of the mass cases, more than one
 6    plaintiff in it, we're going to have probably the same
 7    problems following shortly thereafter as well.
 8              THE COURT:  We can dismiss all the cases and
 9    start again.  I don't mean to be sarcastic, but we talked
10    about all these things in September.  And now three months
11    have gone by.  And we seem to be back in a worse condition
12    than we were before then.  I just don't understand.  I
13    thought when we filed these actions you were ready to
14    proceed.  You had the time that was built in to the case
15    with the transfer to the MDL process where I would have
16    thought you would have been doing all of this just as I
17    thought defendant would have been doing all these things.
18    None of this is a surprise to anybody and yet you're
19    acting like, oh, I never could have thought that I would
20    need to do all this work.  You do need to do all this

```
21   work.  And you knew that.  And I am now deeply
22   disappointed in both sides in terms of their -- I don't
23   know how Judge Conway and I could have been more clear
24   about your seriousness in moving these cases and our
25   expectations with respect to counsel.
```
                                                                    80
```
 1        Your is a small firm with a lot of cases.  I assume
 2   that before you took on all those cases you were ready to
 3   proceed.  There's lot of other plaintiffs' lawyers.  I
 4   don't know how many lawyers are billing time to the
 5   defendant here.  But we have got two of the best firms in
 6   the country representing them -- at least two if not more
 7   than two, with some of best lawyers in the country with
 8   lots and lots and lots of resources.
 9        I am flabbergasted at the response I'm getting from
10   both sides here this afternoon.
11             MR. CAMP BAILEY:  We were ready when we filed
12   the cases.  We are ready now to give them the basic
13   information they need.  It was only when they proposed a
14   new form of a fact sheet and added additional questions --
15             THE COURT:  But there's nothing strange in their
16   proposal.
17             MR. CAMP BAILEY:  There's nothing strange.  We
18   agreed to the format of that fact sheet.  The mechanism of
19   that requires us to send that out to our clients.  It's
20   not something that I as a law firm in my database have and
21   can just plug those into the thing.  There is an
22   authorization requirement on there that the client signs
23   off under penalty of perjury that he has considered, that
24   he has gone back and looked for multiple sets of document
25   requests, for employment information going back
```

81

```
 1    potentially 30 or 40 years for health issues, for
 2    basically their entire life that I as an attorney can't
 3    just spit that information out and send it to defendant.
 4    That requires me to send it to these clients, many of whom
 5    have mental health issues and are hard to contact or
 6    communicate with on any regard let alone fill out a
 7    multipage, very serious, very detailed fact sheet, getting
 8    those back to us when they basically went out 30 days ago.
 9    I mean, even the one pagers that we sent out without
10    waiting because we did view your comments as serious and
11    needing to get that information going, we sent out 1,800
12    in September.  We were now sending out around the 1,000
13    mark on that initial production.  And so that just kind of
14    gives you a window of how fast we're able to get these
15    things back from this particular population or anybody for
16    that matter, because it's a detailed process, not that
17    we're not hiding the information.
18         We have also agreed I think or talked about -- we
19    haven't come to the final agreement or mechanics of it --
20    defendants and plaintiffs have agreed to do joint ordering
21    of medical records.  And I'll say with the large
22    percentage of core information which we have as a firm,
23    which the other firms have that they have told me they
24    could provide with the HIPAAs that authorize us to order
25    medical records on their behalf, if we go into on a joint
```

82

```
 1    basis, we will be able to get that process rolling and get
 2    those medical records in because ultimately if we were to
 3    answer all these fact sheets, they're not going to really
 4    take our word for it.  They're going to want to see --
```

```
 5        they're going to want to see the pharmacy record that
 6        shows actually that they have been taking Seroquel.  And
 7        they are going want to see the medical records that they
 8        are actually suffering from one of these diseases.  So
 9        that the key issue is really getting the medical record
10        production going, in our opinion.
11                  THE COURT:  I will offer the counsel if you wish
12        the opportunity to go meet and confer and see if you can't
13        resolve these issues in a way that addresses the concerns
14        that I've expressed.  That will reflect that you are ready
15        to -- both sides are ready to proceed with the case to get
16        each side the information that you need to go forward.
17        And I'm going to offer you a choice on how to proceed in
18        that way.  We can give you my jury room and you can stay
19        in there and we can reconvene tonight or tomorrow morning
20        or if you want to caucus on each side tonight and come
21        back here and meet in the morning and I'll meet with you
22        again later tomorrow, we can do that.  What is your
23        preference?
24                  MR. MAGAZINER:  Your Honor, if we meet in the
25        jury room and try to accomplish what Your Honor desires us
                                                             83
 1        to accomplish this evening, come back, how late would we
 2        be able to come back without imposing on Your Honor's
 3        schedule?
 4                  THE COURT:  Well, I'm going -- I'll go home and
 5        come back.  I live here.
 6                  MR. MAGAZINER:  My own thought would be that it
 7        would useful for us to be in the jury room.  It's 5:00
 8        now.  It would be a way to communicate with the Court when
```

```
 9    we're ready to see Your Honor.  And I think maybe if we
10    just keep at it knowing that we're going to have to call
11    you and Your Honor's willing to come back this evening,
12    that might be the best way.
13              THE COURT:  Well, let me warn you, I have
14    expressed my disappointment here and I have no level of
15    confidence that I have gotten through to you yet on these
16    issues.  From my view of the case, I am now prepared to --
17    I either have or will enter orders that impose significant
18    burdens on both sides that right now neither side wants to
19    live with and both sides say they can't live with.  Well,
20    be that as it may.  That may present an opportunity for
21    you to compromise with each other and get down to the
22    practicalities or it may lead to more posturing.  I can
23    guarantee you that neither side is going to be happy if I
24    sense that posturing is continuing.
25              There are some logical problems with meeting again
```
                                                                     84
```
 1    this evening in terms of court security and I can proceed
 2    without staff help.  It makes the court security officers
 3    nervous to have people running around the building
 4    unescorted after hours.
 5              MR. MAGAZINER:  Particularly lawyers, I guess.
 6         May I confer with Mr. Bailey for one moment?
 7              THE COURT:  All right.
 8              MR. ROTH:  We have made some progress already,
 9    Your Honor, because we agreed on what -- our preference
10    would be that we go to Carlton Fields, which is our
11    Florida counsel's office, hash this thing through.  If
12    Your Honor tells us that you would be willing to come to
13    Carlton Fields so we don't have to deal with the court
```

```
14     security at a later time tonight such as, I hate to
15     suggest this to the Judge, but 8:00 or something like
16     that, we will know we have a relatively short timeframe by
17     which we have to reach some fundamental agreements on some
18     fundamental issues that Your Honor has raised and we think
19     that would be beneficial to the process knowing that we
20     have very tight deadline and that the time for posturing
21     has passed because you're going to show up at 8:00 and
22     hold us all in contempt if we haven't reached an
23     agreement.  If Your Honor prefers we come back in the
24     morning, we will do that if that would be your preference,
25     Your Honor.
                                                              85
 1              THE COURT:  Well, meeting outside the courthouse
 2     is -- out of formal session is problematic because it's
 3     difficult to create a proper record.  I'm not concerned
 4     about security issues, but the lack of a record is
 5     problematic, particularly since we have got so many people
 6     involved.
 7              I will adjourn the hearing, allow you to go meet.  If
 8     you want to meet at Carlton Fields that's fine or wherever
 9     else.
10              I've got a detention hearing scheduled tomorrow at
11     10.  So I'm going to set you -- we will reconvene this
12     hearing tomorrow at 11.  See where we are.
13              We're in recess.
14                      (Recess at 5:05 p.m.)
15                      C E R T I F I C A T E
16
17              I certify that the foregoing is a correct
```

```
18   transcript from the record of proceedings in the
19   above-entitled matter.
20
21
22
23
24   _____           _____
25   Sandra K. Tremel
```