**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**IN RE:  Seroquel Products Liability Litigation**

**MDL DOCKET NO. 1769**

_____

**This Document Relates to ALL CASES**

**ASTRAZENECA's MOTION FOR A ENTRY OF A PROTECTIVE ORDER
AND SUPPORTING MEMORANDUM**

Pursuant to Middle District of Florida Local Rule 3.01(a) and Federal Rule of Civil Procedure 26(c), Defendants AstraZeneca Pharmaceuticals LP, AstraZeneca LP, AstraZeneca AB, AstraZeneca plc, and AstraZeneca U.K. ltd through undersigned counsel, hereby move the Court to adopt and enter the attached Protective Order (*see* Ex. A) in this MDL.

"Good cause" for this motion exists under Federal Rule of Civil Procedure 26(c). Indeed, absent entry of a protective order, the foreign defendants – AstraZeneca AB (a resident of Sweden), and AstraZeneca plc and AstraZeneca U.K. ltd (residents of the United Kingdom) – would be barred from producing most discovery materials by the laws of  Sweden and the U.K. As this Court recognized in requesting defendants to tender an appropriate protective order, when a foreign litigant is subject to discovery in U.S. litigation, "the concept of international comity requires" a trial court to "take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality . . . and for any sovereign interest expressed by a foreign state." *Societe Nationale Industrielle Aerospatiale*, 482 U.S. 522, 543, 546 (1987).  *See also In re Anschuetz & Co., GmbH*, 838 F.2d 1362, 1364 (5th Cir. 1988)

(recognizing that "sensitive interests of sovereign powers are involved and that it would be a serious mistake for the district court not to respect properly such interests in the course of deciding the appropriate discovery techniques to be applied"); *In re Sealed Case*, 825 F.2d 494, 498-99 (D.C. Cir.), *cert. denied*, *Roe v. U.S.*, 484 U.S. 963 (1987) (recognizing that "our government and our people would be affronted if a foreign court tried to compel someone to violate our laws within our borders.  The legal expression of this widespread sentiment is found in basic principles of international comity").

The attached protective order (Ex. A) incorporates the provisions required to accommodate Swedish and UK data protection law.  Moreover, it addresses a new issue that has arisen:  a plaintiffs' attorney has asserted that she is not bound by the confidentiality agreement negotiated by the parties at the outset of this MDL.  *See* Aff. of Glenn Pogust (Ex. B).  This development requires that the confidentiality protocol be entered as a Court order, to protect defendants' confidential business information, plaintiffs' medical records, and other sensitive materials that have been and are being produced in discovery.  The proposed order is (a) similar to the orders adopted and entered in every other MDL involving pharmaceutical drugs, including the Zyprexa litigation, *see In re Zyprexa Prods. Liab. Litig.*, 2004 WL 3520247 (E.D.N.Y. Aug. 9, 2004); (b) substantially similar to protective orders approved by the Eleventh Circuit; *see In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 355-57 (11th Cir. 1987); and (c) the same as the orders that have been adopted and entered by the New Jersey and Delaware state courts presiding over the Seroquel cases being coordinated in those states, *see* Exs. C and D.

## MEMORANDUM OF LAW

I.  **ENTRY OF A PROTECTIVE ORDER IS NECESSARY TO ACCOMMODATE DATA PROTECTION REQUIREMENTS OF FOREIGN LAW.**

   A.  **Swedish and U.K. Law Is More Protective of Privacy than U.S. Law, and "Private" Information Is Broadly Defined.**

   Swedish and U.K. law generally prohibit disclosure of an individual's personal information.  *See* Declaration of Erik Woodcock  (Ex. E) ¶ 11; Declaration of Rosemary Jay (Ex. F) ¶ 12 (lawyers with data protection expertise in Sweden and the U.K).  The source for this prohibition is the European Data Protection Directive, October 24, 1995 (Directive 95/46/EC).  *See* Woodcock Decl. ¶ 7; Jay Decl. ¶ 6.  Legislation has been passed in both Sweden and the U.K. to implement the Directive:  the Swedish Data Protection Act ("Swedish DPA") and the U.K. Data Protection Act ("U.K. DPA").  The Swedish and U.K. DPAs protect the individual against impairment of his privacy interests through the handling of his personal data.  *See* Woodcock Decl. ¶ 8; Jay Decl. ¶ 6.

   The term "personal data" includes any information concerning the personal or material circumstances of an identified or identifiable individual.  *See* Woodcock Decl. ¶ 9; Jay Decl. ¶ 9.  Thus, the scope of  "personal data" is extremely broad and (a) includes, among other things, data conveying any characteristics of an identifiable individual, including name, address or email address, and (b) extends to personal opinions of an identifiable individual that are revealed in electronic data.  *See* Woodcock Decl. ¶ 9; Jay Decl. ¶¶ 9-10.  Given this breadth, the Swedish and U.K. DPAs regulate disclosure of large amounts of electronic personal data that would generally not be deemed confidential under U.S. law.

The Swedish and U.K. DPAs apply to all data that is electronically stored in a database. When hard-copy paper documents such as letters or memoranda are electronically imaged onto CD-ROM disks, those hard-copy documents are transformed into electronic images, which images can easily be sorted and transferred through electronic means. Once the paper document is imaged onto a CD-ROM disk, it becomes electronic data and shares all the characteristics of "electronic data" protected by the DPAs.

"Processing" of electronic personal data is permitted only when the controller has a "justified interest" in processing the personal data and there is no reason to assume that the data subject has an overriding legitimate interest in his data being excluded from processing or use. *See* Woodcock Decl. ¶¶ 12-13; Jay Decl. ¶ 14. This is a balancing test. Once a justified interest has been established, it must be weighed against the privacy interest of the individual whose personal data is being disclosed; only where the interest of the individual does not override the interest of the processing party can such disclosure take place without violating the Swedish and U.K. DPAs. *See* Woodcock Decl. ¶¶ 13, 15; Jay Decl. ¶¶ 14, 16, 18.

For transfer of electronic personal data outside of the European Union — where issues may arise about the level of protection afforded to confidential information — an additional test applies. *See* Woodcock Decl. ¶¶ 20-21; Jay Decl. ¶¶ 25, 26. The Swedish and U.K. DPAs provide that the adequacy of the afforded level of protection shall be assessed in light of all the surrounding circumstances of the data transfer. Under such circumstances, the Swedish and U.K. DPA require that the transfer be narrowed as far as possible, and that the infringement to privacy rights of persons affected be severely curtailed. *See* Woodcock Decl. ¶ 23; Jay Decl. ¶ 27.

Violations of the Swedish and U.K. DPA may be prosecuted as administrative or criminal offenses, punishable by fines and/or imprisonment.  *See* Woodcock Decl. ¶ 8; Jay Decl. ¶ 8.  Also, data subjects may enforce the protective provisions of the DPAs by suing the party processing the data for injunctive relief and/or damages.  *Id.*

> **B.      Entry of the Protective Order Will Make It Possible for the Foreign Defendants To Produce Documents Protected by Their DPAs.**

The overwhelming majority of documents that plaintiffs will seek in discovery from the foreign defendants will fall within the scope of the DPAs.  For instance, every single email by foreign defendant employees is covered by the DPAs.  *See* Woodcock Decl. ¶¶ 9-10; Jay Decl. ¶¶ 9, 11.  Thus, absent some accommodation of the interests protected by Swedish and U.K. law, the foreign defendants would be compelled either to withhold responsive documents from discovery in this MDL or violate Swedish or U.K. law. *See* Woodcock Decl. ¶¶ 18-19, 23-25; Jay Decl. ¶¶ 23-24, 27-29.[1]   The protections afforded to confidential documents under the proposed Protective Order, among other protections that will be undertaken by the foreign

---

[1] Numerous courts have held that discovery orders that would require foreign defendants to risk violations of their own law constitute an abuse of discretion.  *See e.g., Volkswagen, A.G. v. Valdez,* 909 S.W.2d 900, 902-03 (Tex. 1995); *In re Vitamins Antitrust Litig.*, 2001 WL 1049433, at *9 (D.D.C. June 20, 2001); *United States v. First Nat'l Bank*, 699 F.2d 341, 342 (7th Cir. 1983) (reversing order enforcing IRS summons to Greek branch of U.S. bank where compliance would have subjected "employees to the risk of substantial criminal penalties under Greek law"); *In re Westinghouse Elec. Corp. Uranium Contracts Litig.*, 563 F.2d 992, 999 (10th Cir. 1977) (same with regard to Canadian regulations); *Trade Dev. Bank v. Cont'l Ins. Co.*, 469 F.2d 35, 39-40 (2nd Cir. 1972) (same with regard to Swiss law).  *See also United States v. Rubin*, 836 F.2d 1096 (8th Cir. 1988) (affirming trial court decision quashing a subpoena that would have required an officer of a Cayman Islands bank to testify about records for which no waiver of the Caymanian bank secrecy laws had been obtained, where disclosure would have violated Caymanian law and subjected the witness to criminal sanctions).

defendants, would allow them both to produce documents in this litigation and comply with their country's own privacy laws.

Under the general balancing test, the foreign defendants have a "justified interest" in producing documents that contain protected personal data to defend against the claims in this litigation.  *See* Woodcock Decl. ¶¶ 13, 14; Jay Decl. ¶¶ 14, 15.  However, even a "justified interest" would not necessarily authorize the collection, processing, and transmitting of the material in question, if there were reason to believe that the data subjects had an "overriding" interest in preserving the confidentiality of their data.  *See* Woodcock Decl. ¶¶ 15-18; Jay Decl. ¶¶ 14-16, 22-23.  Here, the confidentiality provisions of the proposed Protective Order, among other protections that could be undertaken by the foreign defendants, afford a sufficient level of protection to those privacy interests, so that the privacy interests do not necessarily outweigh the foreign defendants' interest in responding in discovery in this litigation.  In particular, under the proposed Protective Order, the foreign defendants will be allowed to:

- mark documents as "confidential" if they contain personal data as defined in the Swedish and U.K. DPAs, limiting the individuals who will have access to the personal data to those actually litigating these cases (*id.* at ¶ 4(c); and

- redact sensitive personal data to preclude its dissemination (*id.* at ¶ 4(d)).

With respect to the requirements for legal transfer of data outside the European Union, the collective provisions of the proposed Protective Order described above sufficiently reduce the level of the individual's privacy interest such that the foreign defendants' interest can overweigh the individual's interest and permit the transmittal of such data to the United States. *See generally In re Baycol Prods. Liab. Litig.*, MDL No. 1431, Pretrial Order No. 99, at 4

(D. Minn. Dec. 9, 2003) (Ex. G) (protective order incorporating data protection provisions necessary to accommodate German law).

Accordingly, experts in Swedish and U.K. privacy law have confirmed that the foreign defendants may not be able to legally collect, process, or transfer personal data in the absence of the proposed Protective Order attached hereto. *See* Woodcock Decl. ¶ 18; Jay Decl. ¶ 23. This Court should therefore enter the proposed Protective Order, and not place the foreign defendants in the untenable position of having to choose whether to violate their own country's laws, or to disregard U.S. discovery procedures.

## II. THE PROPOSED PROTECTIVE ORDER COMPORTS WITH THE LAW AND WITH THE CONFIDENTIALITY AGREEMENT UNDER WHICH THIS LITIGATION HAS PROCEEDED THUS FAR.

At the outset of this MDL, plaintiffs and the U.S.-resident defendants negotiated a protective agreement to facilitate discovery of confidential documents. Plaintiffs' attorney Gale Pearson, who now has 115 cases pending this MDL, recently has asserted that she is not bound by that agreement. *See* Aff. of Glenn Pogust (Ex. B). Her position not only would place the foreign defendants in an untenable position, it would create delays in document production by U.S. defendants and burden this Court with extensive motion practice over confidentiality issues. To keep discovery moving, this Court should do what other MDL courts have done – enter a protective order.

### A. The Proposed Order Substantially Tracks Similar Orders Approved by the Eleventh Circuit and MDL Courts Across the Country.

Protective orders are *recommended* by the Federal Judicial Center for litigation – such as this MDL – in which "the volume of potentially protected materials is large [and] an

umbrella order will expedite production, reduce costs, and avoid the burden on the court of document-by-document adjudication." MANUAL FOR COMPLEX LITIGATION, FOURTH, § 11.432 (2004). Following the Federal Judicial Center's recommendations, the Eleventh Circuit has recognized that a protective order like the one proposed here "*should be used* to protect documents designated in good faith by the producing party as confidential." *Alexander Grant*, 820 F.2d at 356 (emphasis added).

        Such orders serve critical functions in MDLs and other complex civil litigation because they: (1) "preserve the confidentiality of sensitive materials [and] documents designated in good faith by the parties as confidential";[2] (2) "expedite the flow of discovery material" by simplifying the exchange of voluminous documents and materials without concern for improper disclosure; (3) "promote the prompt resolution of disputes over confidentiality" by providing a consistent court-approved structure to govern such disputes; (4) "conserve judicial resources" by obviating the need for threshold judicial determinations of confidentiality on a document-by-document basis on separate motions, which is "unfeasible" because courts "are simply unable to hold hearings" concerning the confidential nature of each particular document in cases involving voluminous discovery; and (5) formally adopt "procedures [that] allow the litigation to proceed expeditiously without compromising the rights of anyone," including

---

[2] For instance, the proposed order will protect the trade secrets and other confidential business information of defendants. *See*, *e.g.*, *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1313 (11th Cir. 2001); *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002). The order also will protect highly sensitive information about individual plaintiffs' medical, financial, and mental-heath history. *National Transp. Safety Bd. v. Hollywood Memorial Hosp.*, 735 F. Supp. 423, 424 (S.D. Fla. 1990) (recognizing "individual interest" in avoiding unwarranted "disclosure" of "medical or psychiatric records"); *see also A.L.A. v. West Valley City*, 26 F.3d 989, 990 (10th Cir. 1994); *Alexander v. Peffer*, 993 F.2d 1348 (8th Cir. 1993).

"parties" *and* "nonparties" alike.  *Id*. at 355-57.  *See also McCarthy v. Barnett Bank of Polk County*, 876 F.2d 89, 92 & n.4 (11th Cir. 1989) (affirming entry of a protective order, which is particularly appropriate in "complex litigation with thousands of documents" and involving hundreds of plaintiffs) (citing *Alexander Grant*, *supra*); *accord*, *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1122-23 & nn. 18-20 (3d Cir. 1986).

     For these reasons, courts around the country handling mass tort pharmaceutical MDLs have entered orders substantially similar to the one proposed here.  To cite but a few examples:

- *In re Propulsid Prods. Liab. Litig.*, MDL No. 1355, Pretrial Order No. 5, at 1-2 (E.D. La. Nov. 28, 2000) (entering order that applied to "all documents and other products of discovery" and requiring that all third parties given access "consent to the continuing jurisdiction of the Court for purposes of enforcing this Order").  (Ex. H.)

- *In re Baycol Prods. Liab. Litig.*, MDL No. 1431, Pretrial Order No. 99, at 1-2 (D. Minn. Dec. 9, 2003) (entering order applying to "all products of discovery," addressing data protection concerns, and providing for endorsement by third parties).  (Ex. G.)

- *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*, MDL No. 1203, Pretrial Order No. 27, at 1-2 (E.D. Pa., undated) (entering order applying to all documents and requiring third parties to sign confidentiality agreement).  (Ex. I.)

- *In re Vioxx Prods. Liab. Litig.*, MDL No. 1657 , Pretrial Order No. 13, at 1-2 (E.D. La. May 24, 2005) (entering order governing all documents produced or disclosed in the litigation and allowing access to third parties who agreed to be bound by its conditions).  (Ex. J.)

- *In re Zyprexa Litig.*, 2004 WL 3520247, at *1, *3 (E.D.N.Y. Aug. 9, 2004) (entering order applying to "all products of discovery and all information derived therefrom," and requiring third parties to endorse agreement).

The proposed order, like the parties' current confidentiality agreement, tracks these protective orders, including most notably the structure, core provisions, and language of the virtually indistinguishable protective order entered by the MDL court in the *Zyprexa* litigation. *Compare* Ex. A *with In re Zyprexa*, 2004 WL 3520247 (E.D.N.Y. Aug. 9, 2004) (setting forth verbatim terms of the order entered by U.S. District Judge Jack Weinstein).[3]  Further, the provisions of the proposed protective order here substantially track those in the protective order approved and adopted by the district court in the *Alexander Grant*, and affirmed by the Eleventh Circuit.  *Compare* Ex. A *with In re Alexander Grant & Co. Litig.*, 629 F. Supp. 593 (S.D. Fla. 1986) (reprinting terms of the protective order proposed by the parties and approved by the

---

[3]  In fact, the *Zyprexa* protective order is the principal model upon which the proposed protective order here is based.  Although the language does not in all respects track that order verbatim, the core terms are equivalent if not indistinguishable.  For instance, both provide broad protection for "Confidential Discovery Materials," limiting their use to the present litigation and restricting disclosure to an enumerated list of qualified persons; both require all persons given access to endorse the protective order and consent to the Court's continuing jurisdiction for enforcement; both provide the same court-approved procedures for parties objecting to a confidential designation; both require confidential materials to be filed under seal; and both provide that their protections do not expire at the conclusion of the litigation.  *Compare* Ex. A, ¶¶ 2, 6, 10, 12, 15; *with In re Zyprexa*, 2004 WL 3520247, at *1-*7, ¶¶ 2, 5-6, 9, 12, 15.  The same is true with respect to the protective orders approved and adopted by other MDL transferee courts.  As here, each protective order restricts the use of confidential materials to the present litigation, *see Propulsid* Order (Ex. H) ¶ 2; *Baycol* Order (Ex. G) ¶¶ 5, 7; *Diet Drugs* Order (Ex. I) ¶¶ 2, 6; *Vioxx* Order (Ex. J) ¶ 14; requires that persons given access to confidential information endorse the protective order, *see Propulsid* Order (Ex. H) ¶¶ 2, 6; *Baycol* Order (Ex. G) ¶ 5, 8; *Diet Drugs* Order (Ex. I) ¶ 2; *Vioxx* Order (Ex. J) ¶ 12; requires confidential information filed with the Court to be under seal; *see Propulsid* Order (Ex. H) ¶ 10; *Baycol* Order (Ex. G) ¶ 11; *Diet Drugs* Order (Ex. I) ¶ 10; *Vioxx* Order (Ex. J) ¶ 24; and remains in effect after the conclusion of the litigation. *See Propulsid* Order (Ex. H) ¶ 15; *Baycol* Order (Ex. G) ¶ 16; *Diet Drugs* Order (Ex. I) ¶ 15; *Vioxx* Order (Ex. J) ¶ 29.

court), *aff'd*, 820 F.2d 352 (11th Cir. 1987).[4]  Finally, the New Jersey and Delaware state courts presiding over the coordinated state proceedings in this Seroquel litigation have both adopted and entered the proposed protective order as orders of those courts (s*ee* Exs. C and D) – and this Court should do the same.

**B.      A Protective Order Covering All Parties Is Necessary To Facilitate Resolution of Any Future Disputes Regarding Confidentiality Designations.**

The current operating agreement of the parties is not sufficient because new cases are being filed, involving new counsel.  Here, as in other MDLs and complex litigation, a court-entered protective order will provide a *consistent framework* to protect confidential information that, indisputably, will apply to all parties throughout the litigation.  The protective order approved by the Eleventh Circuit in *Alexander Grant* addressed this need for consistency with respect to access to confidential information by providing:  "In the event additional persons become parties to this litigation, they shall not have access to confidential information produced by or obtained from any other party in this action until the newly joined party, by court order, has been made subject to this Protective Order."  629 F. Supp. at 597.  Here, the proposed protective order incorporates a similar provision.

Entry of a protective order would thereby ensure that this Court is not needlessly burdened in new cases (involving new counsel) with precisely the "document-by-document" motion practice over confidentiality that such protective orders are designed to avoid, and which are simply "unfeasible" for courts in cases involving voluminous discovery.  *Alexander Grant*,

---

[4] This Court had expressed concerns about cumbersome language in the parties' confidentiality agreement.  The draft protective order attempts to simplify at least some of that language without changing the substance of the agreement.

820 F.2d at 355-57.  As described above, this concern is not purely hypothetical.  One plaintiffs'

attorney already has asserted that she is not bound by the protective agreement negotiated at the

outset of this MDL.  *See* Aff. of Glenn Pogust (Ex. B) ¶ 7.[5]

> **C.      Entry of a Formal Protective Order Will Not Unduly Prejudice the Interests of Third Parties.**

Finally, this Court has expressed concerns about the potential impact of a formal

protective order on non-parties.  As set forth in Part I, such a limitation on access to discovery

materials is necessary to accommodate the data protection requirements of U.K. and Swedish

law.

Moreover, with respect to discovery materials being produced by U.S.-resident

parties, one of the core purposes and benefits of protective orders is to *limit* access by "third

parties" to confidential discovery materials.  *In re Grand Jury*, 286 F.3d 153, 159 (3d Cir. 2002);

*see also Cipollone,* 785 F.2d at 1121-23; 8 C.A. Wright & A.R. Miller, FEDERAL PRACTICE AND

PROCEDURE, § 2035 (2007).  Thus, in the *Zyprexa* MDL, one of the reasons Judge Weinstein

entered a  protective order was to *prevent access* by non-parties to the parties' designated

confidential materials, except in circumstances considered and approved by the Court.  *See In re

Zyprexa*, 2007 U.S. Dist. LEXIS 10329 (E.D.N.Y. Feb. 17, 2007).  As Judge Weinstein

explained, such protective orders "are designed to permit litigants and the courts to examine a

party's internal records, which may include embarrassing personal medical information, or

---

[5] Some plaintiffs have resisted entry of a protective order based on their contention that the U.S. defendants have designated too many documents as confidential.  As described above, the proposed order establishes procedures for objections to any purported misdesignations.  *See* Ex. A ¶ 4(c).  Moreover, an order is necessary to allow production of documents by the foreign defendants to proceed.  *See supra*, Part I.

valuable business secrets and commercial data, *without unnecessarily exposing them to the public's and competitors' view*." *Id.* at *11 (emphasis added).

In the *Zyprexa* protective order, as in the order proposed here, any third party who can demonstrate a compelling interest and overriding need to obtain protected confidential materials is free to seek relief and, if warranted, access from this Court.  *See* [Proposed] Protection Order (Ex. A) ¶ 9(b).  In this way, the proposed order establishes sensible and time-tested procedures governing confidentiality in this MDL, and orderly mechanisms for the Court, on proper motion, to balance the desires of third parties for access to designated confidential materials against the parties' needs and legal rights for confidentiality protection and privacy.

## CONCLUSION

For the foregoing reasons, this motion should be granted pursuant to Federal Rule of Civil Procedure 26(c), and the Court should adopt and enter the attached proposed Protective Order.

DATED:  August 10, 2007

/s/ Fred T. Magaziner
Fred T. Magaziner
Stephen J. McConnell
Shane T. Prince
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA  19103
Telephone:  (215) 994-4000
Facsimile:   (215) 994-2222
fred.magaziner@dechert.com
stephen.mcconnell@dechert.com

Steven B. Weisburd
DECHERT LLP
300 West 6th Street, Suite 1850
Austin, TX  78701
Telephone:  (512) 394-3000
Facsimile:   (512) 394-3001
steven.weisburd@dechert.com

Susan A. Weber
J. Randal Wexler
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL  60603
Telephone:  (312) 853-7000
Facsimile:   (312) 853-7036
saweber@sidley.com
jwexler@sidley.com

*Counsel for AstraZeneca Pharmaceuticals LP
and AstraZeneca LP*

**CERTIFICATION OF COUNSEL PURSUANT TO M.D. FLA. L.R. 3.01(g)**

Counsel for AstraZeneca met and conferred with counsel for the plaintiffs in a good faith attempt to resolve the issues presented in the Motion.  Plaintiffs advised that they are not in a position to agree to the motion at this time.

/s/ Stephen McConnell

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 10th day of August, 2007, I electronically filed the

foregoing with the Clerk of the Court by using the CM/ECF system.  I further certify that I

mailed the foregoing document and the notice of electronic filing by first-class mail to the non-

CM/ECF participants listed on the attached Service List.


/s/ Lisa Modaff_____

**SERVICE LIST**
(As of December 15, 2006)

**In Re: Seroquel Products Liability Litigation
MDL Docket No. 1769**

| | |
|---|---|
| Paul J. Pennock, Esq.<br>Michael E. Pederson, Esq.<br>Weitz & Luxenberg, P.C.<br>180 Maiden Lane - 17th Floor<br>New York, NY 10038<br>Telephone: (212) 558-5500<br>Ppennock@weitzlux.com<br>MPederson@weitzlux.com | Camp Bailey, Esq.<br>Michael W. Perrin, Esq.<br>Fletcher Trammell, Esq.<br>Bailey Perrin Bailey LLP<br>The Lyric Centre<br>440 Louisiana, Suite 2100<br>Houston, TX 77002<br>Telephone: (713) 425-7240<br>cbailey@bpblaw.com<br>mperrin@bpblaw.com |
| Larry Roth, Esq.<br>Law Offices of Larry M. Roth, P.A.<br>Post Office Box 547637<br>Orlando, FL  32854-7637<br>Telephone: (407) 872-2239<br>LROTH@roth-law.com | Tommy Fibich, Esq.<br>Fibich, Hampton & Leebron, L.L.P.<br>1401 McKinney, Suite 1800<br>Five Houston Center<br>Houston, TX 77010<br>Telephone: (713) 751-0025<br>tfibich@fhl-law.com |
| Matthew F. Pawa, Esq.<br>Law Offices of Matthew F. Pawa, P.C.<br>1280 Centre St., Suite 230<br>Newton Centre, MA 02459<br>Telephone: (617) 641-9550<br>Mp@pawalaw.com | John Driscoll, Esq.<br>Brown & Crouppen, PC<br>720 Olive St.<br>St. Louis, MO 63101<br>Telephone: (314) 421-0216<br>Jdriscoll@brownandcrouppen.com<br>asmith@brownandcrouppen.com<br>blape@brownandcrouppen.com |
| Keith M. Jensen, Esq.<br>Jensen, Belew & Gonzalez, PLLC<br>1024 North Main<br>Fort Worth, TX 76106<br>Telephone: (817) 334-0762<br>kj@kjensenlaw.com | Scott Allen, Esq.<br>Cruse, Scott, Henderson & Allen, L.L.P.<br>2777 Allen Parkway, 7th Floor<br>Houston, Texas 77019<br>Telephone: (713) 650-6600<br>sallen@crusescott.com |

| | |
|---|---|
| Matthew E. Lundy, Esq.<br>Lundy & Davis, LLP<br>333 North Sam Houston Parkway East<br>Suite 375<br>Houston, TX 77060<br>Telephone: (281) 272-0797<br>mlundy@lundydavis.com | W. Todd Harvey, Esq.<br>Whatley Drake, LLC<br>2323 2nd Avenue North<br>Birmingham, AL 35203<br>Telephone: (205) 328-9576<br>THARVEY@whatleydrake.com<br>ccf@whatleydrake.com |
| Lawrence J. Gornick, Esq.<br>William A. Levin, Esq.<br>Dennis J. Canty, Esq.<br>Levin Simes Kaiser & Gornick LLP<br>44 Montgomery Street, 36th Floor<br>San Francisco, CA 94104<br>Telephone: (415) 646-7160<br>lgornick@lskg-law.com<br>dcanty@lskg-law.com<br>llsimes@levins-law.com<br>jkaiser@lskg-law.com<br>echarley@lskg-law.com<br>ddecarli@lskg-law.com<br>bsund@lskg-law.com<br>astavrakaras@lskg-law.com | Gregory P. Forney, Esq.<br>Shaffer Lombardo Shurin<br>911 Main Street, Suite 2000<br>Kansas City, MO 64105<br>Telephone: (816) 931-0500<br>gforney@sls-law.com<br>rbish@sls-law.com<br>***Attorney for Defendant,***<br>***Marguerite Devon French*** |
| Robert L. Salim, Esq.<br>Robert L. Salim Attorney at Law<br>PO Box 2069<br>Natchitoches, LA 71457-2069<br>Telephone: (318) 352-5999<br>robertsalim@cp-tel.net | Eric B. Milliken, Esq.<br>3 Sir Barton Ct.<br>Newark, DE 19702<br>***Pro Se*** |

| | |
|---|---|
| Justin Witkin, Esq.<br>Ken Smith, Esq.<br>Aylstock, Witkin & Sasser, PLC<br>4400 Bayou Boulevard<br>Suite 58<br>Pensacola, FL 32503<br>Telephone: (850) 916-7450<br>Jwitkin@AWS-LAW.com<br>ablankenship@aws-law.com<br>aburrus@aws-law.com<br>asmith@aws-law.com<br>ksmith@aws-law.com<br>noverholtz@aws-law.com<br>jsafe@aws-law.com | Louisiana Wholesale Drug Co. Inc.<br>C/O Gayle R. White<br>Registered Agent<br>Highway 167N<br>Sunset, LA 70584<br>*Pro Se* |
| Aaron C. Johnson, Esq.<br>Summers & Johnson<br>717 Thomas<br>Weston, MO 64098<br>Telephone: (816) 640-9940<br>firm@summersandjohnson.com | Catherine Solomon<br>(current address unknown)<br>*Pro Se* |
| Todd S. Hageman, Esq.<br>Simon and Passanante, PC<br>701 Market St., Suite 1450<br>St. Louis, MO 63101<br>Telephone: (314) 241-2929<br>thageman@spstl-law.com | Randy Niemeyer<br>22442 Pike 309<br>Bowling Green, MO 63334-5209<br>*Pro Se* |
| Thomas F. Campion, Esq.<br>Heidi E. Hilgendorff, Esq.<br>Drinker Biddle & Reath, LLP<br>500 Campus Drive<br>Florham Park, New Jersey 07932-1047<br>Telephone: (973) 360-1100<br>Thomas.Campion@dbr.com<br>Heidi.Hilgendorff@dbr.com<br>***Attorneys for Defendants Janssen Pharmaceutical Products and Johnson & Johnson Co.*** | Michael Davis, Esq.<br>James Mizgala, Esq.<br>Sidley Austin LLP<br>Bank One Plaza<br>One South Dearborn Street<br>Chicago, IL 60603<br>Telephone:  (312) 853-7731<br>mdavis@sidley.com<br>jmizgala@sidley.com<br>***Attorneys for Defendants AstraZeneca LP and AstraZeneca Pharmaceuticals, LP*** |

| | |
|---|---|
| Elizabeth Raines, Esq.<br>Baker, Sterchi, Cowden & Rice, LLC<br>2400 Pershing Road, Suite 500<br>Kansas City, MO 64108<br>Telephone: (816) 471-2121<br>raines@bscr-law.com<br>**Attorneys for Defendant AstraZeneca, PLC** | Timothy Reese Balducci, Esq.<br>The Langston Law Firm, PA<br>P.O. Box 787<br>100 South Main Street<br>Booneville, MS 38829-0787<br>Telephone: (662) 728-3138<br>tbalducci@langstonlaw.com |
| Kenneth W. Bean, Esq.<br>Sandberg, Phoenix & von Gontard<br>One City Centre<br>15th Floor<br>St. Louis, MO 63101-1880<br>Telephone: (314) 231-3332<br>kbean@spvg.com<br>**Attorney for Defendant Dr. Asif Habib** | Robert L. Ciotti, Esq.<br>Carlton Fields, P.A.<br>4221 W. Boy Scout Boulevard<br>Suite 1000<br>Tampa, FL 33607-5736<br>Telephone: (813) 223-7000<br>rciotti@carltonfields.com<br>**Attorney for Defendants AstraZeneca**<br>**Pharmaceuticals, LP, and AstraZeneca LP** |
| Aaron K. Dickey, Esq.<br>Goldenberg and Heller, PC<br>P.O. Box 959<br>2227 S. State Road 157<br>Edwardsville, IL 62025<br>Telephone: (618) 650-7107<br>aaron@ghalaw.com | Jona R. Hefner, Esq.<br>3441 W. Memorial, Suite 4<br>Oklahoma City, OK 73134-7000<br>Telephone: (405) 286-3000<br>attorneyokc@hotmail.com |
| Mark P. Robinson, Jr., Esq.<br>Robinson, Calcagnie & Robinson<br>620 Newport Center Drive, 7th Floor<br>Newport Beach, CA 92660<br>Telephone: (949) 720-1288<br>mrobinson@robinson-pilaw.com | David P. Matthews, Esq.<br>Abraham, Watkins, Nichols, Sorrels,<br>Matthews & Friend<br>800 Commerce Street<br>Houston, TX 77002-1776<br>Telephone: (713) 222-7211<br>dmatthews@abrahamwatkins.com<br>agoff@abrahamwatkins.com<br>irhoades@abrahamwatkins.com<br>jwebster@abrahamwatkins.com |

| | |
|---|---|
| Robert A. Schwartz, Esq.<br>Bailey & Galyen<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744<br>bschwartz@galyen.com | Mary B. Cotton<br>John D. Giddens, P.A.<br>226 North President Street<br>P.O. Box 22546<br>Jackson, MS 39225-2546<br>Telephone:  (601) 355-2022<br>betsy@law-inc.com |
| Salvatore M. Machi<br>Ted Machi & Associates PC<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744 | Howard Nations<br>Lori A. Siler<br>Howard L. Nations Attorney At Law<br>4515 Yoakum Blvd.<br>Houston, TX 77006-5895<br>Telephone: (713) 807-8400<br>nations@howardnations.com |
| David Dickens<br>Miller & Associates<br>105 North Alfred Street<br>Alexandria, VA  22314-3010<br>(703) 519-8080<br>ddickens@doctoratlaw.com | Scott Burdine, Esq.<br>Hagans Burdine Montgomery<br>Rustay & Winchester, P.C.<br>3200 Travis, Fourth Floor<br>Houston, TX  77006<br>Telephone:  (713) 222-2700<br>sburdine@hagans-law.com |
| Pete Schneider, Esq.<br>Grady, Schneider & Newman, L.L.P.<br>801 Congress, 4th Floor<br>Houston, TX  77002<br>(713) 228-2200<br>pschneider@gsnlaw.com | Lizy Santiago, Esq.<br>Abraham, Watkins, Nichols,<br>Sorrels, Matthews & Friend<br>800 Commerce Street<br>Houston, TX  77002-1776<br>(713) 222-7211<br>lsantiago@abrahamwatkins.com |

| | |
|---|---|
| Fred T. Magaziner<br>Marjorie Shiekman<br>A. Elizabeth Balakhani<br>Shane T. Prince<br>Eben S. Flaster<br>DECHERT LLP<br>Cira Centre<br>2929 Arch Street<br>Philadelphia, PA  19103<br>(215) 994-4000<br>fred.magaziner@dechert.com<br>shane.prince@dechert.com<br>marjorie.shiekman@dechert.com<br>eben.flaster@dechert.com<br>elizabeth.balakhani@dechert.com | |