# Exhibit E

## DECLARATION OF ERIK WOODCOCK

Erik Woodcock states the following under penalty of perjury:

1. The facts stated in this Declaration are based upon my personal knowledge and my experience as set forth herein and in the attached *Curriculum Vitae*, Exhibit A, which is a true and accurate summary of my education and professional experience. If sworn as a witness, I believe I would be competent to testify to the matters set forth herein.

2. I am a Swedish lawyer practicing with the firm of Gozzo Advokater in Stockholm, Sweden. I have significant experience and expertise with respect to Swedish law on data protection and the Data Protection Act in particular (the "Swedish DPA").

3. I am advised that AstraZeneca AB, a Swedish company, (the "Company") is a defendant in litigation in the United States concerning the pharmaceutical drug Seroquel, and under U.S. law, will be required to collect relevant documents and respond to document requests that may be issued by plaintiffs in that litigation.

4. I have reviewed a proposed so-called Protective Order, attached as Exhibit 1, that sets forth certain procedures that would be followed in connection with the collection and production of documents in this U.S. litigation. Under the proposed Protective Order, the Company would (a) be able to collect potentially relevant electronic documents for processing and review through application of key-word search terms; (b) be able to mark documents as "confidential" if they contain personal data as defined in the Swedish DPA, which would prevent their public dissemination; and (c) be able to redact sensitive personal data so that it is not disseminated at all.

5. The protective measures identified in Paragraph 4 are important to the Company's compliance with compulsory requirements under the Swedish DPA, as such law generally prohibits the arbitrary registration and use of an individual's personal information by means of wholly or partly automated means of processing.

6. In Sweden, this principle is recognized as a high-ranking principle of the Swedish legal system. *See The Instrument of Government, Chapter 2 Article 3 (SFS nr: 1974:152).*

7. The current Swedish DPA (SFS 1998:204), effective as of 1998, has implemented the principles of this right in detail, accounting for requirements arising from the EU Data Protection Directive of 24 October 1995 (Directive 95/46/EU).

8. The Swedish DPA applies primarily to electronically stored data, and the purpose of this Act is "to protect people against the violation of their personal integrity by processing of personal data" (Swedish DPA, Section 1). Violations of the Swedish DPA may be prosecuted as administrative or criminal offenses. The former are punishable by default fine for non adherence to decisions issued by the competent Swedish authority (Swedish DPA, Section 44 and 45), the latter by fines or imprisonment for up to two years (Swedish DPA, Section 49). Private individuals may also pursue legal claims for damages arising from violation of the Swedish DPA (Swedish DPA, Section 48).

9. The term "personal data" is defined as "All kinds of information that directly or indirectly may be referable to a natural person who is alive" (Swedish DPA, Section 3). The term comprises any characteristics of an identified or an identifiable individual, including, as examples, an individual's name, address, email address, or phone

number. It further extends to personal opinions of an identifiable individual that are revealed in electronic data, even when those opinions are offered in a business context and are strictly limited to business matters. Under the Swedish DPA personal data is divided into two main categories, personal data and sensitive personal data. What amounts to sensitive personal data is set out in the Swedish DPA, *e.g.* data revealing racial or ethnic origin, political opinion, religious or philosophical beliefs or a person's health or sex life. For sensitive personal data additional restrictions apply pursuant to the Swedish DPA, i.e. in addition to the general restrictions applicable to both sensitive and non sensitive data.

10. I have assumed for purposes of this affidavit that the Company's document production would include emails and other documents that express employee opinions on business matters relating to Seroquel. I have further assumed that documents that originally existed in paper format will be electronically imaged and included in a database. In this database, they would be capable of being searched according to certain search criteria. It is my opinion that, at minimum, considerable portions of such a production would be considered "personal data" within the sense of the Swedish DPA.

11. As such, processing of such personal data is generally precluded by the Swedish DPA. The only question is under what circumstances this data may be processed, especially as regards legally supplying such data to third parties.

12. The nature of the Swedish DPA's restrictions against processing of personal data is complicated, especially as regards transfer outside the E.U. and disclosure to third parties. Generally, absent the express consent of the data subject for each item of electronic personal data, the Swedish DPA prevents private bodies from "processing" electronic personal data. It may be noted that processing is broadly defined to include any

3

storage or transfer of such data (Swedish DPA, Section 3). There are further restrictions on the transfer of personal data to countries outside the E.U. that are deemed to have insufficient data protection regimes, such as the United States. But there are limited exceptions to these prohibitions, which have application to the facts here. Each is discussed in turn.

## GENERAL PROVISIONS REGARDING THE "PROCESSING" OF ELECTRONIC PERSONAL DATA BY A "PRIVATE BODY"

13. Personal data may not be processed, unless subject to statutory exemption (Swedish DPA, Section 10). Among other exemptions set forth in Section 10 for processing of non-sensitive personal data that does not amount to transfer outside the E.U. include subpart (f): that processing for a purpose that concerns a legitimate interest of the controller of personal data or of such a third party to whom personal data is provided should be able to be satisfied, if this interest is of greater weight than the interest of the registered person in protection against violation of personal integrity.

14. I have assumed that, in this present case, the Company would have to process electronic personal data to comply with legally binding discovery requests that will be issued upon it in U.S. litigation; and that providing the plaintiffs with Company's responsive documents would be legally required for the Company to successfully defend itself in the U.S. litigation. Finally, I have assumed that failure to comply with court orders to produce documents in the U.S. litigation may expose the Company to severe sanctions. Under such circumstances, the foregoing according to my opinion clearly establishes that the Company has a justified interest in processing the personal data.

4

15. However, establishing a "justified interest" does not alone permit the processing of personal data. The interest must be weighed against the individual's interest in his/her privacy. *See* § 10(f)

16. The level of an individual's interest in privacy is evaluated by, among other items: (1) the volume of personal data to be processed; (2) the nature of the personal data to be processed; and (3) the extent to which other persons have access to the personal data. As an example, the interest of the individual weighs less concerning a very limited processing such as, *e.g.*, a private bodies search for specific e-mails of its employees when such will be divulged to only limited third parties. However, such individual would have a very significant interest regarding a disclosure to an undefined number of recipients during an unlimited period of time. In the context of the balance of interest test adequate safeguards have to be in place. Unless it is reasonably clear how personal data is to be used and by whom it is difficult to perceive how a balance of interest test can be performed and lead to a result where the interest of processing outweighs the interest of the registered person in protection against violation of his or her personal integrity.

17. I have been informed that documents produced in the U.S. litigation in the absence of a protective order that would limit their disclosure are afforded limited, if any, protection from public disclosure. Thus, in the absence of a protective order in the U.S. litigation, the individual's interest in privacy is extremely significant.

18. In the absence of a Protective Order with terms such as those attached as Exhibit 1, the individual's interest in privacy will possibly override the justified interest identified by the Company. Under such circumstances, the Company may not legally be permitted to process the individual's personal data.

5

19. If the Protective Order attached as Exhibit 1 was entered by this Court, along with other protections afforded during the collection and processing of the personal data, in my opinion, the interest of the Company is more likely to overweigh than if no such Protective Order attached was entered by this Court. Each of the provisions of the Protective Order identified in Paragraph 4 serve to reduce the level of the individual's privacy interest by: (a) reducing the amount of personal data that is processed while allowing for some foresee ability as to how the personal data that is to be processed will be processed; (b) greatly reducing the number of persons who would be able to access the individual's personal data; and (c) eliminating the production of the most sensitive form of personal data. Under these circumstances, the Company may be able to legally process the individual's personal data.

## SPECIFIC PROVISIONS WHICH APPLY TO THE TRANSFER OF ELECTRONIC PERSONAL DATA OUTSIDE OF THE EUROPEAN UNION.

20. The Swedish DPA is particularly restrictive of transfer of personal data outside of the European Union (Swedish DPA, Section 33). European and Swedish law requires that it must be established in each particular case whether or not such countries afford sufficient levels of data protection.

21. For those countries, like the United States, where data protection is not deemed to be sufficient, transmittal is generally not permitted unless specific exemptions apply. (Swedish DPA, Section 34)  Among other exemptions set forth in Section 34 permitting transfer of personal data to a third country such as the United Sates is subpart (c): the establishment, exercise or defence of legal claims.

22. According to my opinion, based on a contextual and literary interpretation of the relevant statutory law, the exemption (c) on the establishment, exercise or defense of legal claims can be invoked by the Company as a legal basis for transfer of the contemplated data to the United States, provided the transfer is necessary for the said purpose. It should be noted, however, that as far as I am aware this has not been decided by a Swedish Court of law or the European Court of Justice, and there are arguments according to which this exemption cannot be generally applied to activities such as a U.S. civil discovery, at least not without taking careful regard of the duty to protect the interests of the Data Subjects concerned. It may be noted that notwithstanding the application of an exemption to the prohibition to transfer data to a third country such as the United States, the transfer itself amounts to processing and must, as such, be lawful under the general provisions on processing. Therefore, the balancing test of exemption (f) of Section 10 discussed above needs also be applied when establishing the lawfulness of a transfer of personal data to the United States.

23. Thus, the Swedish DPA does not necessarily entirely rule out transfers of personal data overseas. Instead, it requires a fact-specific inquiry which investigates all the surrounding circumstances of the data transfer. The transfer must be narrowed as far as possible. Any infringement to privacy rights of persons affected must be severely curtailed.

24. In my view, an individual might establish that they have an overriding interest in *preventing* the Company's production of documents in the course of the U.S. civil proceedings in the absence of a Protective Order such as the one attached as Exhibit 1 preventing the onward disclosure of such documents. Indeed, as already noted, the

protection of the documents produced during the course of U.S. civil discovery invokes an interest that is very significant.

25. However, were the Court to enter the Protective Order attached as Exhibit 1, it is my opinion that the Company's interest is more likely to overweigh the interest of the individual. *See supra* ¶ 19. Under such circumstances, the Company may be able to comply with discovery requests in this litigation.

Executed on August 7, 2007.

_____
Erik Woodcock

8

# CURRICULUM VITAE

Erik Woodcock, LL.M.
Birth date: 29th August 1966

## PROFESSIONAL BACKGROUND
**Partner, Gozzo Advokater (www.gozzo.se)**
*November 2005- Present*
Information Technology and Communications (ICT) law practice including, including data protection.

**Law office Advokat Erik Woodcock**
*January 2004 – November 2005*

**Associate, Advokatfirman Vinge, IT group (www.vinge.se)**
*July 2000 – January 2004*
Vinge is one of the largest commercial law firms in Scandinavia.

**Associate, Advokatfirman Delphi & Co, IT and IP group (www.delphilaw.com)**
*Januari 1997 – July 2000*
Delphi & Co is one of Sweden's larger commercially oriented law firms.

**Research Assistant, Faculty of Law, Law and Informatics Research Institute, Stockholm University (www.juridicum.su.se/iri)**
*February 1995 – January 1997*
Worked as a Research Assistant for Professor Peter Seipel.

## EDUCATION
Master of Law, 180 credits, Stockholm University
*1995*

## LANGUAGES
*Swedish: Native language*
*Norwegian and Danish: communicate and read with moderate fluency*
*English: Fluent*

## PROFESSIONAL SOCIETIES
*Swedish Bar Association (admitted as "Advokat" 2002) (www.advokatsamfundet.se)*
*Swedish Society for Computer & Law (ADBJ) (Member of the Board 1999-2001)*
*Swedish Association for the Protection of Industrial Property (sfir)*

\* \* \*

Gozzo Advokater
Nybrogatan 11
SE-114 39 Stockholm

Phone (work): +46 8 662 35 00
Mobile: +46 (0)70 723 24 10
E-mail: ew@gozzo.se