# Exhibit F

## DECLARATION OF ROSEMARY JAY

Rosemary Jay states the following under penalty of perjury:

1. The facts stated in this Declaration are based upon my personal knowledge and my experience as set forth herein and in the attached *Curriculum Vitae*, Exhibit A, which is a true and accurate summary of my education and professional experience. If sworn as a witness, I believe I would be competent to testify to the matters set forth herein.

2. I am an English lawyer practicing with the firm of Pinsent Masons in Manchester, England. I have significant experience and expertise with respect to U.K. law on data protection and the U.K. Data Protection Act of 1998 in particular (the "U.K. DPA").[1]

3. I am advised that AstraZeneca plc and AstraZeneca U.K. ltd., English companies (the "Companies"), are defendants in litigation in the United States concerning the pharmaceutical drug Seroquel, and under U.S. law, will be required to collect relevant documents and respond to document requests that may be issued by plaintiffs in that litigation.

4. I have reviewed a proposed so-called Protective Order, attached as Exhibit 1, that sets forth certain procedures that would be followed in connection with the collection and production of documents in this U.S. litigation. Under the proposed Protective Order, the Companies would (a) be able to collect potentially relevant electronic documents for processing and review through application of key-word search terms; (b) be able to mark

---

[1] In the U.K., in addition to the DPA there are two other sources for privacy law: (1) the U.K. Human Rights Act and (2) the common law of Breach of Confidence. Both sources provide similar protections to the U.K. DPA, and the analysis described in this declaration referencing the U.K. DPA apply equally to those legal principles.

documents as "confidential" if they contain personal data as defined in the U.K. DPA, which would prevent their public dissemination; and (c) be able to redact sensitive personal data so that it is not disseminated at all.

5. The protective measures identified in Paragraph 4 are important to the Companies' compliance with compulsory requirements under the U.K. DPA, as such law regulates the processing of information relating to individuals including the obtaining, holding, use or disclosure of such information by both public and private bodies.

6. The current U.K. DPA, effective as of March 2000, has implemented the requirements arising from the EU Data Protection Directive of 24 October 1995 (Directive 95/46/EC). The object of this Directive is to ensure that Member States protect the fundamental rights and freedoms of natural persons, and in particular their right to privacy with respect to the processing pf personal data. *See Article 1.1 Directive 95/46/EC*

7. In the European Union a directive is binding upon Member States as to the results to be achieved *Article 189(3) of the Treaty of the European Communities* and the courts must construe national law so as to seek to give effect to the objects and purpose of a directive *Von Coulson Case 14/83 [1984] E.C.R. 1891*

8. The U.K. DPA applies to electronically stored data and the processing thereof by the data controller, that is the party which has legal responsibility and power to determine the manner and nature of the processing of that data. (U.K. DPA *section 1(1)*) Failure by the data controller to comply with the Act may result in prosecution in the criminal courts (including fines), enforcement by the regulatory authority (the UK Information Commissioner) or action for enforcement of rights or damages by individuals

2

who are detrimentally affected, depending on the nature of the breach. (U.K. DPA, *Sections 21 and 55 imposing criminal sanctions, Part V enforcement Part II remedies available to individuals*)

9. The term "personal data" is defined as information which relates to a living individual who can be identified from that information or that and other information in the possession of or likely to come into the possession of the data controller (U.K. DPA *section 1(1))*. The information must relate to the individual as examples, an individual's name, address, email address, phone number, opinions held or actions taken. It further extends to opinions recorded about any identifiable individual that are revealed in electronic data.   10. Under the U.K. DPA there are special categories of personal data referred to as sensitive personal data. (U.K. DPA, *section 2*) What amounts to sensitive personal data is set out in the DPA, and includes data consisting of information as to racial or ethnic origin, political opinion, religious or philosophical beliefs, Trade Union membership, a person's health or sex life or the commission or alleged commission of any offence or the existence of any criminal proceedings. (U.K. DPA, *Section 2 (a) to (h)*)

11. I have assumed for purposes of this affidavit that the Companies' document production would include emails and other documents that express employee opinions on business matters relating to Seroquel. I have further assumed that documents that originally existed in paper format will be electronically imaged and included in a database. In this database, they would be capable of being searched according to certain search criteria. It is my opinion that, at minimum, considerable portions of such a production would be considered "personal data" within the sense of the U.K. DPA.

3

12. As such, processing of such personal data is regulated by the U.K. DPA. The only question is under what circumstances this data may be processed, especially regarding legally supplying such data to third parties.

13. The nature of the U.K. DPA's restrictions on disclosure of personal data is complicated. The U.K. DPA prevents bodies from "processing" electronic personal data unless the body has a lawful justification for the activity. ( U.K. DPA *Section 4 and Principle 1 Schedule 1 Part I)* Processing is widely defined and covers (among other things) obtaining, organising, retrieving, disclosing or making personal data available. (U.K. DPA, *section 1(1)*) There are further restrictions on the transfer of personal data to countries outside the European Economic Area (EEA) that are deemed to have insufficient data protection regimes, such as the United States. But there are limited exceptions to these prohibitions, which have application to the facts here. Each is discussed in turn.

## GENERAL PROVISIONS REGARDING THE "PROCESSING" OF ELECTRONIC PERSONAL DATA BY A DATA CONTROLLER

14. Personal data may not be processed, unless the data controller is able to meet at least one of the conditions of lawful justification for the processing (U.K. DPA, *Section 4(1) and (2) Principle 1 Schedule 1 and Schedule 2*) Among other conditions for lawful processing set forth in Schedule 2 are Ground 3 that the processing is necessary for compliance with any legal obligation to which the data controller is subject other than an obligation imposed by contract and Ground 6: the processing is necessary for the purposes of legitimate interests pursued by the data controller or by the third party or parties to whom the data are disclosed, except where the processing is unwarranted in any particular case by reason of prejudice to the rights and freedoms or legitimate interests of the data subject. Ground 6 incorporates an explicit test of balance as well as the test of proportionality. In

4

order to rely on this ground the data controller must ensure that it has taken appropriate steps to safeguard the legitimate privacy interests of the data subjects.

15. I have assumed that, in this present case, the Company would have to process electronic personal data to comply with legally binding discovery requests that will be issued upon it in U.S. litigation; and that providing the plaintiffs with the Companies' responsive documents would be legally required for the Company to successfully defend itself in the U.S. litigation. Finally, I have assumed that failure to comply with court orders to produce documents in the U.S. litigation may expose the Companies to severe sanctions. Under such circumstances, the foregoing clearly establishes that the Companies have a justified interest in processing the personal data.

16. However, establishing a justified interest does not alone permit the processing of personal data. The processing must be proportionate to the interest served and the interest must be weighed against the individual's interest in his/her privacy. This arises by virtue of the requirement that the processing must be "necessary" for the legitimate interests of the party. This is a condition of both Ground 3 and Ground 6. In Ground 6 there is also the explicit requirement to take account of any prejudice to the individuals. The term "necessary" has a specific meaning and incorporates a test of proportionality so that the use or disclosure or other processing of the data must be no more than is reasonably required to meet the legitimate need of the data controller (*see Michael Stone v SE Coast Strategic Health Authority* [2006] EWHC 1668)

## SPECIFIC PROVISIONS WHICH APPLY TO THE PROCESSING OF SENSITIVE PERSONAL DATA

17. Sensitive personal data may not be processed, unless the data controller is able to meet at least one of the conditions of lawful justification for the processing (U.K. DPA, *Section 4(1) and (2) Principle 1 Schedule 1 and* Schedule 3) Among other conditions for lawful processing set forth in Schedule 3, Ground 6 provides that processing may be carried out where it is necessary for the purposes of or in connection with legal proceedings (including prospective legal proceedings) or is necessary for the purpose of obtaining legal advice or is otherwise necessary for the purposes of establishing exercising or defending legal rights.

18. However, establishing a justified interest does not alone permit the processing of sensitive personal data. The processing must be proportionate to the interest served. This arises by virtue of the requirement that the processing must be "necessary" for the purpose. The term "necessary" has a specific meaning and incorporates a test of proportionality so that the use or disclosure or other processing of the data must be no more than is reasonably required to meet the legitimate need of the data controller (*see Michael Stone v SE Coast Strategic Health Authority* [2006] EWHC 1668)

## SPECIFIC PROVISIONS WHICH APPLY TO PROCESSING PERSONAL DATA FOR THE PURPOSE OF LEGAL PROCEEDINGS

19. The fact that a data controller has established that it is entitled to process personal data because one or more of the conditions in Schedule 2 or in the case of sensitive personal data Schedule 3 applies does not exhaust his obligations under the UK Act. He must still makes sure that he meets the other requirements. These include requirements that the processing is carried out in a fair manner and the individual has notice of what will happen to the personal data (U.K. DPA *section 4(1) and Schedule 1)* In addition individuals are given specific rights in relation to the processing of personal data about them which include a right to object to

6

processing in some cases (U.K. DPA *section 10)*. A data controller can be released from these requirements and rights where specific exemptions apply. The disclosure of personal data in U.S. litigation could breach those requirements or give rise to objections to the processing by individuals unless one of the specific exemptions which permits the disclosure of information applies.

20. One exemption applies where it is necessary to make a disclosure for the purposes of or in connection with legal proceedings (including prospective legal proceedings) or necessary for the purpose of obtaining legal advice or otherwise necessary for the purpose of establishing or exercising or defending legal rights (U.K. DPA *section 35)*. The disclosure must be proportionate to the interest served and the interest must be weighed against the individual's interest in his/her privacy. This arises by virtue of two requirements. First that the data controller is only released from the obligation to comply with the requirements of the Act "to the extent that they are inconsistent with the disclosure in question" (U.K. DPA section 27(3)). Second the requirement that the disclosure must be "necessary" for the purpose. (See citation supra). Thus this exemption can only apply where the individuals' privacy interests are protected as far as is compatible with achieving the purpose of the disclosure

**PROTECTION OF PRIVACY INTERESTS**

21. The level of an intrusion into an individual's privacy is evaluated by, among other items: (1) the volume of personal data to be processed; (2) the nature of the personal data to be processed, *e.g.* whether it is sensitive or ordinary personal data; and (3) the extent to which other persons have access to the personal data. As an example, there will be a lower level of intrusion where there is a very limited processing such as, *e.g.*, a private

7

body's search for specific e-mails when such will be divulged to only limited third parties in such a form that they do not amount to sensitive personal data. However, a disclosure to an undefined number of recipients during an unlimited period of time would be a far higher level of intrusion. .

22. I have been informed that documents produced in the U.S. litigation in the absence of a protective order that would limit their disclosure are afforded limited, if any, protection from public disclosure. Thus, in the absence of a protective order in the U.S. litigation, the intrusion into an individual's is potentially extremely significant.

23. In the absence of a Protective Order with terms such as those attached as Exhibit 1, the individual's interest in privacy may override the justified interest identified by the Companies. In addition the Companies may not be able to rely on the exemption for legal proceedings to protect from any charge of unfairness in the processing or attempted objection by an individual. Under such circumstances, the Companies may not legally be permitted to process the individual's personal data so as to make the disclosures.

24. If the Protective Order attached as Exhibit 1 was entered by this Court, along with other protections afforded during the collection and processing of the personal data, in my opinion, the interest of the Companies is more likely to overweigh and the exemption for personal data disclosed in legal proceedings to apply than if no such Protective Order attached was entered by this Court. Each of the provisions of the Protective Order identified in Paragraph 4 serve to protect the individual's privacy interest by: (a) reducing the amount of personal data that is processed; (b) greatly reducing the number of persons who would be able to access the individual's personal data; and (c) eliminating the production of any sensitive form of personal data which is not required for discovery. Under

these circumstances, the Companies should be able to legally process the individual's personal data.

## SPECIFIC PROVISIONS WHICH APPLY TO THE TRANSFER OF ELECTRONIC PERSONAL DATA OUTSIDE OF THE EUROPEAN UNION.

25. The U.K. DPA is restrictive of transfers of personal data outside of the European Union (U.K. DPA, Section 4 (1) and (2) Principle 8 Schedule 1 Part I and Schedule 4). U.K. law in accord with Directive 95/46/EC requires that it must be established in each particular case whether or not such countries afford sufficient levels of data protection.

26. For those countries, like the United States, where data protection is not deemed to be sufficient, transmittal is generally not permitted unless specific derogations apply. (U.K. DPA, Principle 8 (supra) and Schedule 4) Ground 5 of Schedule 4 provides that a transfer may be made where it is necessary for the purpose of or in connection with any legal proceedings (including prospective legal proceedings) or is necessary for the purpose of obtaining legal advice or is otherwise necessary for the purpose of establishing, exercising or defending legal rights. The use of the term "necessary" imports the test of proportionality as set out above. The transfer to the US may be made in reliance on this ground subject to the application of the test of proportionality.

27. Thus, the U.K. DPA does not entirely rule out transfers of personal data overseas. Instead, it requires a fact-specific inquiry which investigates all the surrounding circumstances of the data transfer. The transfer must be narrowed as far as possible. Any unwarranted infringement to privacy rights of persons affected must be curtailed.

28. In my view, an individual might be able to establish that they have an overriding interest in *preventing* the Companies' production of documents in the course of

9

the U.S. civil proceedings in the absence of a Protective Order such as the one attached as Exhibit 1 preventing the onward disclosure of such documents. Indeed, as already noted, the protection of the documents produced during the course of U.S. civil discovery invokes an interest that is very significant.

29. However, were the Court to enter the Protective Order attached as Exhibit 1, it is my opinion that the Company's interest is more likely to overweigh the interest of the individual. *See supra* ¶ 19. Under such circumstances, the Company should be able to comply with discovery requests in this litigation.

Executed on August 9, 2007.

_____
Rosemary Jay