**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

IN RE: SEROQUEL PRODUCTS               MDL DOCKET  NO:
LIABLITY LITIGATION                    6:06-MDL-1769

_____

This Document Relates to: *ALL CASES LISTED ON EXHIBIT "A"*

**PLAINTIFFS' RESPONSE IN OPPOSITION TO ASTRAZENECA'S MOTION FOR**
**PARTIAL JUDGMENT ON THE PLEADINGS REGARDING THE STRICT**
**LIABILITY "DESIGN DEFECT" CLAIMS AND "IMPLIED WARRANTY" CLAIMS**
**AND INCORPORATED MEMORANDUM OF LAW**

Plaintiffs submit this Response in Opposition to AstraZeneca's Motion for Partial
Judgment on the Pleadings Regarding the Strict Liability "Design Defect" Claims and
"Implied Warranty" Claims and Incorporated Memorandum of Law (the "Response").
Defendant contends that, regarding prescription drugs, 27 states bar strict liability design
defect claims, and 11 jurisdictions bar implied warranty claims.  However, Defendant's
Motion is premature, and its arguments largely unsubstantiated, if not simply wrong.

## I.      BACKGROUND

Seroquel, known generically as quetiapine fumarate, belongs to a class of neuroleptic
drugs known as "atypical" antipsychotics.  Plaintiffs have suffered life-threatening injuries,
most commonly the development of treatment-emergent diabetes, after taking Seroquel.
Plaintiffs reside in, and are citizens of, most or all of the United States.

## II.      STANDARD OF REVIEW

The legal standards for review of motions pursuant to Rules 12(c) and 12(b)(6) are
indistinguishable.  *DeMuria v. Hawkes*, 328 F.3d 704, 706 n.1 (2d Cir. 2003).  A court

1

should dismiss a suit under Rule 12(c) only if "it appears beyond doubt that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (emphasis added). "A court's task in ruling on a 12[(c)] motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Official Comm. Of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, L.L.P.*, 322 F.3d 147, 158 (2d Cir. 2003). The Court "must accept all facts in the complaint as true and view them in the light most favorable to the plaintiffs." *Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209, 1213 (11th Cir. 2001). Because a judgment on the pleadings is a decision on the merits, courts are reluctant to grant such motions unless it is *clear* that the merits of the claim can be summarily decided. *See Ortega v. Christian*, 85 F.3d 1521, 1524-25 (11th Cir. 1996); *Abbott Labs. v. Nutramax Prods., Inc.*, 844 F. Supp. 443, 445 (N.D. Ill. 1994); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1369.

### III.   ARGUMENT

A.   The Motion Is Premature Because It Is Yet To Be Determined Which Jurisdictions' Laws Apply To These Cases.

As a preliminary matter, Defendant summarily "presumes"—while providing the Court little, if any, guidance on the issue—that the substantive law of the states of Plaintiffs' residences applies to these cases. This puts the proverbial cart before the horse. Before Defendant may obtain dismissal on the basis of varying jurisdictions' laws, it must undergo at least some conflict of law analysis to determine—as a foundational matter—whether Defendant's state law assertions even apply to Plaintiffs' claims, *much less dispose of them*.

A district court sitting in diversity normally applies the substantive law, including choice-of-law rules, of the forum state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). If, however, there is a change of venue under 28 U.S.C. § 1404(a), a federal court sitting in diversity is obliged to apply the law that would have been applied in the transferor court. *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964). "In an MDL setting, the forum state is usually the state in which the action *was initially filed* before it was transferred to the court presiding over the MDL proceedings." *In re Propulsid Prods. Liab. Litig.*, 208 F.R.D. 133, 140 (E.D. La. 2002) (emphasis added).

Here, Plaintiffs' individual cases were filed in various jurisdictions, including, for example, Massachusetts, Alabama, California, New York, the District of Columbia, South Dakota, Arizona, and Missouri, each with its own applicable, and divergent, choice-of-law rules. For example, Massachusetts law is "not tie[d] . . . to any specific choice-of-law doctrine, but seek[s] instead a functional choice-of-law approach that responds to the interests of the parties, the states involved, and the interstate system as a whole." *Bushkin Assoc., Inc. v. Raytheon Co.*, 473 N.E.2d 662, 668 (Mass. 1985). California, on the other hand, resolves conflict-of-law questions through a "governmental interest" analysis. *Reich v. Purcell*, 432 P.2d 727, 730 (1967).[1] Missouri, by contrast, has adopted the "most significant relationship" test, which requires courts to determine which state has the most significant relationship to the place where the injury occurred, the conduct causing the injury occurred,

---

[1] This approach requires a court to find the proper law to apply based upon the interest on the litigants and the involved states, and a separate choice-of-law inquiry must be made with respect to each issue in a case. *See Offshore Rental Co. v. Cont'l Oil Co.*, 583 P.2d 721, 724 (1978); *Application Group, Inc. v. Hunter Group, Inc.*, 61 Cal.App.4th 881, 72 Cal.Rptr.2d 73, 82 (1998).

the domicile of the parties, and the place where the relationship of the parties, if any, is centered. *Kennedy v. Dixon*, 439 S.W.2d 173, 184 (Mo. 1969).

The interplay between the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, traditional venue statutes, and choice-of-law rules is far from clear. *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 489 F.Supp.2d 932, 935 (D. Minn. 2007). Defendant's Motion lends little clarity to the issues regarding which jurisdictions' substantive laws apply to Plaintiffs' claims. Defendant's Motion, which "presumptively" seeks to apply the state law of Plaintiffs' residences and foregoes any meaningful choice-of-law analysis, is premature, without legal foundation, and must fail.[2]

> **B.**   Assuming *Arguendo* That The State Law Of Plaintiffs' Residences Applies, Defendant Still Has Not Shown That Plaintiffs' Design Defect And Implied Warranty Claims Should Be Dismissed.

Even assuming, for argument's sake, that the substantive laws of Plaintiffs' states of residence should apply, Defendant has not met its burden to prove that Plaintiffs' design defect and implied warranty claims should be summarily dismissed. As shown below, Defendant, in a number of instances, has stretched the cited case law to the breaking point to reach its desired result, while failing to demonstrate that a particular jurisdiction has expressly barred design defect and implied warranty claims in drug cases.

As a general matter, however, Defendant's Motion substantially relies on whether a given jurisdiction has adopted or otherwise addressed the all-but-moribund Comment k

---

[2]   As Defendant admits, it "presumes" that the law of the jurisdiction where each Plaintiff resides is controlling, and that such jurisdictions are where each Plaintiff was prescribed Seroquel, ingested the drug, and allegedly suffered injury. Defendant also acknowledges that 3000 Plaintiffs' cases were originally filed in and transferred from Massachusetts, and attempts to undergo some cursory choice-of-law analysis, but fails to address which states' laws might apply to the other 679 Plaintiffs that are the subject of Defendant's Motion to Dismiss. (Motion at 23-24 & n.17.)

("Comment k") to the Restatement (Second) of Torts § 402A ("Section 402A").  Defendant largely contends that if a given state court (or federal court interpreting state law) has adopted (or even discussed) Comment k, then strict liability drug design defect claims are barred in that state.

Contrary to Defendant's position regarding Comment k, most jurisdictions have begun to allow juries to consider holding drug maker liable for injuries caused by their products based on an injured plaintiff's allegations that the defective design of the product caused the plaintiff's injury.  *See* Restatement (Third) of Torts: Products Liability § 8 reporters' note, cmt. f (Tentative Draft No. 2, 1995).  Indeed, the vast majority of jurisdictions that have considered the question of product liability for pharmaceutical products have explicitly refused to follow the "categorical" immunity approach Defendant advocates for design defect claims involving prescription drugs, instead often adopting a "risk/utility" approach.  *See Weiss v. Fujisawa Pharm. Co.*, No. 5:05-527-JMH, 2006 WL 3533072, at *1 (E.D. Ky. Dec. 7, 2006) ("[A] majority of courts in other jurisdictions have found that the doctrine applies only when the prescription drug's benefits outweigh the risks posed by its use."); Note, *The Past and Future of Comment k: Section (4)(b)(4) of the Tentative Draft Restatement (Third) of Torts—Is it the Beginning of a New Era for Prescription Drugs?*, 45 Syracuse L. Rev. 1291, 1314 (1995).[3]

---

[3]     There are at least three reasons why the majority of state courts have moved away from the blanket protection arguably provided by Comment k.  First, Comment k is something less than a paradigm of clarity, and has proved difficult to interpret and apply.  *See, e.g., Grundberg v. Upjohn Co.*, 813 P.2d 89, 92 (Utah 1991) ("[C]omment k is unclear on the scope of its protection.").  It has been called "a model of confusion" and is said to have "befuddled courts and scholars alike."   Richard L. Cupp, Jr., *Rethinking Conscious Design Liability for Prescription Drugs: The Restatement (Third) Standard Versus a Negligence Approach*, 63 Geo. Wash. L. Rev. 76, 79 (1994); James A. Henderson, Jr. & Aaron Twerski, *Will a New Restatement Help Settle Troubled Waters: Reflections*, 42 Am. U. L. Rev. 1257, 1262 (1993).  Second, Comment k's arguable blanket

One final general point must be made. Those courts, like *Brown*, that may have adopted Comment k and arguably interpreted it as immunizing drug makers against design defect claims ignore an important distinction applicable in Plaintiffs' cases. *Brown* itself holds that a prescription drug manufacturer "is not strictly liable for injuries caused by a prescription drug *so long as* the drug was properly prepared *and accompanied by warnings of its dangerous propensities* that were either known or scientifically knowable at the time of distribution," tracking the language of Comment k. *Id.* at 482-83 (emphasis added). Importantly, Plaintiffs here claim that Defendant *did not* accompany distribution of Seroquel with adequate warnings of the drug's dangerous propensities, such as that it may cause treatment-onset diabetes.[4]   The contrary implication of *Brown's* holding, therefore, is that a drug manufacturer may be held "strictly liable"—even under design defect strict liability—if it is shown that the Defendant failed to warn of known or knowable risks.[5]   In light of this

---

immunity limits courts' discretionary powers and reduces their role as conflict adjudicators.  Given the seriousness and scope of real and potential injury posed by mass-marketed pharmaceuticals, courts wishing to provide relief for injured individuals are likely to seek ways around Comment k.  Teresa Moran Schwartz, *Prescription Products and the Proposed Restatement (Third)*, 61 Tenn. L. Rev. 1357, 1359-60 (1994).  Third, and most important, blanket immunity for manufacturers of medical products can lead to patently unjust results.  The California Supreme Court's decision in *Brown v. Sup. Ct.*, 751 P.2d 470 (Cal. 1988) acknowledged this very problem.  "It seems unjust to grant the same protection from liability to those who gave us thalidomide as to the producers of penicillin."  *Id.* at 481.  Thus, the "categorical" protection for prescription drugs urged by Defendant can lead to the protection of drugs that, by all accounts, should not be on the market.  *See id.*

[4]     California law makes clear that Plaintiffs should have an opportunity to prove their strict liability failure to warn claims.  *Carlin v. Sup. Ct.*, 920 P.2d 1347, 1355 (Cal. 1996).

[5]     *Accord, e.g., Stone v. Smith, Kline & French Labs.*, 447 So.2d 1301, 1304 (Ala. 1984) ("In accordance with Comment k, . . . we agree[] that in the case of an "unavoidably unsafe" yet properly prepared prescription drug, the adequacy of the accompanying warning determines whether the drug, as marketed, *is defective*, or unreasonably dangerous.") (emphasis added); *Bryant-Poff, Inc. v. Hahn*, 453 N.E.2d 1171, 1173 (Ind. 1983) (citing *Ortho Pharm. Co. v. Chapman*, 388 N.E.2d 541, 545 (Ind. Ct. App. 1979) and Comment k for the proposition that: "Because consumers realize that not all dangers may be avoided, however, they also contemplate that manufacturers will supply adequate warnings and instructions advising the user of latent defects and possible dangers.  A manufacturer's failure to meet any one of these consumer expectations renders him liable for the defective product when the defect causes the injury."); *Fellows v. USV Pharm. Corp.*, 502 F.Supp. 297, 300 (D.C. Md. 1980) (determining that Maryland would follow cited and numerous other cases holding "that prescription drug[] . . . manufacturer[s] will not incur liability under [Section 402A generally], unless the manufacturer has failed to provide adequate warnings of the drug's possible dangers.").

fair reading, *Brown*[6] and Comment k do not bar Plaintiffs' design defect claims here because they are coupled with failure-to-warn claims—which the Court must take as true for purposes of determining whether to dismiss Plaintiffs' design defect claims under Rule 12(c).  *Moore*, 267 F.3d at 1213.

Nevertheless, although engaging in such analysis is wasteful and unwarranted because it is wholly premature and without the benefit of any jurisdictional foundation provided by Defendant, and in an abundance of caution, Plaintiff hereinafter responds— jurisdiction by jurisdiction—to Defendant's assertions that Plaintiffs' strict liability, design defect, and/or implied warranty claims are barred by various states' laws.

*Alabama:*  Defendant flatly states that Alabama law bars strict liability "design defect" claims, citing *Stone*, 447 So.2d at 1301.  *Stone* imposes no such bar.  The Alabama Supreme Court in *Stone* merely answered certified questions from the United States Court of Appeals for the Eleventh Circuit ("Eleventh Circuit"), none involving a design defect claim. *Id.* at 1302-1303 ("no contention is made that the drug could be altered or changed by the manufacturer to avoid or reduce the danger").  Therefore, in pertinent part, the Alabama Supreme Court in *Stone* was relegated to answering the certified questions of whether "the *adequacy of the warning* determines *whether an unavoidably unsafe prescription drug is unreasonably dangerous*" and whether the "learned intermediary doctrine" applied.  *Id.* at 1302-1303.  The case is, therefore, inapposite for purposes of determining whether Alabama recognizes defective design claims in the pharmaceutical context.[7]

---

[6]     *Brown*'s authority, of course, is limited to California Plaintiffs' cases, assuming *arguendo* that Defendant's theory that the substantive law of Plaintiffs' residence controls.

[7]     The unreported *Bodie v. Purdue Pharma Co.* Eleventh Circuit *opinion*, cited by Defendant, does not alter this analysis.  No. 05-13834, 2007 WL 1577964, at *5-*6 (11th Cir. June 1, 2007); *compare Gordon v.*

**California:** California may be one of a handful of jurisdiction that still clings to a "blanket immunity" interpretation of Comment k.  As noted above, however, in light of Plaintiffs' allegations, *Brown* and Comment k should not bar Plaintiffs' strict liability design defect claims here because they are coupled with failure-to-warn claims.  *Brown*, 751 P.2d at 482-83.  (*See* Response, *supra at __* & n. __.)  With regard to Plaintiffs' implied warranty claims, *Brown*'s asserted basis for proscribing implied warranty claims against drug makers was that such claims are "incompatible with our determination regarding the scope of a drug manufacturer's liability" for strict liability design defect.  *Brown*, 751 P.2d at 484.  Because *Brown*'s determination regarding the scope of a drug maker's liability for design defect is inapplicable to these facts, for reasons shown above, *Brown* likewise does not bar Plaintiffs' implied warranty claims under California law.

**Connecticut:** The cases cited by Defendant in support of a purported bar under Connecticut law to strict liability design defect claims are also inapposite.  Close review of these cases reveals that they are not design defect cases, but cases in which the respective courts held that the "learned intermediary doctrine" barred the plaintiffs' claims.[8]  Therefore, the Connecticut Supreme Court's discussions of Comment k are not part of its holdings relative to the learned intermediary doctrine, and constitute mere dicta.  Moreover, the

---

*Pfizer Inc.*, No. CV-06-RRA-703-E, 2006 WL 2337002, at *3, *9 (N.D. Ala. May 22, 2006) (addressing Pfizer's effort to avoid remand on basis of fraudulent joinder, in which Pfizer tellingly argued that no design defect claim could be asserted against non-diverse physician who prescribed allegedly defective drug, but surprisingly—given Defendant's position here—failed to argue that strict liability drug design defect claims were, as a general proposition, not cognizable under Alabama law).

[8]    *See Hurley v. Heart Physicians. P.C.*, 898 A.2d 777, 778 (Conn. 2006) ("The principal issue in this appeal is whether the trial court properly rendered summary judgment . . . based on learned intermediary doctrine."); *Vitanza v. Upjohn Co.*, 778 A.2d 829, 832-37 (Conn. 2001) ("The dispositive issue in this case is whether the learned intermediary doctrine bars the present action brought by the named plaintiff."); *Basko v. Sterling Drug Inc.*, 416 F.2d 417, 427 (2d Cir. 1969) ("[W]e reject plaintiff's contention that she was entitled to a directed verdict . . . [s]ince defendant did make various efforts to warn, including the mailing of the 'Dear Doctor' letters . . . .").

Connecticut Supreme Court qualified the scope of Comment k in stating that "[p]rescription drugs *generally* [but not unequivocally] fall within the classification of unavoidably unsafe products." *Vitanza*, 778 A.2d at 836.  Contrary to Defendant's position, there is simply no Connecticut law that bars Plaintiffs' strict liability design defect claims.

**Delaware:** To the extent that *Cline v. Prowler Indus. of Md., Inc.*, 418 A.2d 968, 978-80 (Del. 1980) correctly stands for the proposition that neither the Delaware legislature nor judiciary have adopted a strict products liability doctrine, and to the extent the Court deems Defendant's Motion timely and properly presented, Plaintiffs may concede the viability of any strict liability design defect claims brought under Delaware law.

**District of Columbia:** Defendant's cases are wholly inapposite; moreover, to the extent that the District of Columbia has adopted Section 402A, it appears to employ Comment k only in the negligence, but not strict liability, context.[9]  Defendant cites no cases stating that District of Columbia law bars strict liability design defect claims in the pharmaceutical products liability context.

**Indiana:** In the lone Indiana case cited by Defendant for the proposition that Indiana law bars strict liability design defect claims, no defective design claim was asserted by the plaintiff.  *Chapman*, 388 N.E.2d at 545 ("[Plaintiff] does not contend that there was any fault in the design and manufacture of [the prescription contraceptive at issue] . . . .").  Moreover, the Indiana Court of Appeals in *Chapman* adopted a "risk/utility" interpretation of Comment

---

[9]       *See Dyston v. Winfield*, 113 F.Supp.2d 35, 40 (D.D.C. 2000) ("Comment k's association with strict liability may be misleading. . . . . [M]ost jurisdictions . . . rely on Comment k as authority for applying what is effectively a negligence standard."); *Raynor v. Richardson-Merrell, Inc.*, 643 F.Supp. 238, 247 (D.D.C. 1986) (recognizing, in a strict liability *duty to warn* drug case against a *pharmacy*, that "comment k simply adopts the ordinary negligence concept of duty to warn); *see also Fisher v. Sibley Mem. Hosp.*. 403 A.2d 1130, 1134 (D.C. 1979) (holding that strict products liability did not apply to injury case against hospital involving blood transfusion).

k, rather than the blanket immunity view urged by Defendant.  *Chapman*, 388 N.E.2d at 545 ("As the text of Comment k indicates, the question is whether marketing of the product is justified in light of the known risks.  This involves balancing the public interest in the availability of such a product against the attendant risks.").  Defendant cites no cases stating that Indiana law bars strict liability design defect claims in the pharmaceutical products liability context.[10]

*Iowa:*  The Iowa Supreme Court case cited by Defendant merely determined whether the jury instruction challenged by the plaintiffs—that the "lack of *adequate warning* was a proximate cause of [the injured party's] ingestion of the drug"—had prejudiced the plaintiffs.  *Moore v. Vanderloo*, 386 N.W.2d 108, 117 (Iowa 1986).  No design defect claim was presented or discussed.  *Id.*  To the extent that the *Moore* court further commented in dicta regarding the scope of Comment k, the court stated that for drug products not to be considered "defective" or "unreasonably dangerous," they must be "accompanied by . . . adequate warnings as to potential side effects," rendering such law inapplicable to the facts of this case for purposes of Rule 12(c) dismissal, as shown above.  (*See* Response, *supra* at ___.)  Defendant cites no cases stating that Iowa law bars strict liability design defect claims in the pharmaceutical products liability context.[11]

*Kentucky:*  Like the *Stone* case in Alabama, *Larkin v. Pfizer, Inc.* was limited to the Kentucky Supreme Court's answer to a certified question from the United States Court of Appeals for the Sixth Circuit regarding whether Kentucky law recognized the learned

---

[10]       Indeed, the Indiana Supreme Court in *Hahn* later interpreted *Chapman* to at least suggest the opposite conclusion.  (*See* Response, *supra* n. ___.)

[11]       *Petty v. United States*, also cited by Defendant, also exclusively dealt with a strict liability failure-to-warn, but not design defect, claim.  740 F.2d 1428, 1439 (8th Cir. 1984) ("On appeal, the government contends that the drug manufacturer did not have a duty to warn.").

intermediary doctrine.  153 S.W.3d 758, 761 (Ky. 2004).  Furthermore, this case, like others listed above, involved the court's review of a failure-to-warn claim, *not* a strict liability design defect claim.  *Id.*  Finally, the Defendant's representation regarding Kentucky law is at odds with the Kentucky federal district's determination in *Weiss* in 2006—post *Larkin*— that "Kentucky courts have not defined the scope of [Comment k.]"  *Weiss*, 2006 WL 3533072, at *1.[12]  Defendant cites no cases stating that Kentucky law bars strict liability design defect claims in the pharmaceutical products liability context.

Defendant's assertion that Kentucky law also bars Plaintiff's implied warranty claims is similarly unavailing.  *McMichael v. Am. Red Cross*, raised by Defendant, concerned whether blood containing the hepatitis virus could be deemed an unavoidably unsafe product for purposes of strict liability, which the court treated interchangeably with a claim for implied warranty.  532 S.W.2d 7, 11-12 (Ky. Ct. App. 1975).  The ultimate holding in *McMichael* best distinguishes that case from the relevant facts here: "[T]he concept of strict liability, whether in tort or on implied warranty, rests in substantial part on the theory of the existence of an implied representation by the seller that the product is safe," and "in the case of blood containing hepatitis virus, where the producer could not know or control the condition, there is no implied representation that the blood is free of the virus."  *Id.*  Here, Plaintiffs allege that the AstraZeneca could, *and did*, know and control the condition Seroquel, rendering *McMichael* inapposite.  Further, nothing in *McMichael* suggests a complete bar to Plaintiffs' implied warranty claims under Kentucky law.

---

[12]      The *Weiss* district court determined that before it could rule on that drug maker defendant's motion to dismiss, a full evidentiary hearing must be held, rendering the defendant's motion premature.  *Id.*

*Louisiana:* The Louisiana Products Liability Act, La. Rev. Stat. Ann. § 9:2800.51, *et seq.*, provides the exclusive theories of liability under Louisiana law for manufacturer's whose products cause damage or injury.  *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 261-62 (5th Cir. 2002) ("For causes of action arising after the effective date of the LPLA, negligence, strict liability, and breach of express warranty are not available as theories of recovery against a manufacturer, independent from the LPLA.")  The effective date of the LPLA was September 1, 1988.  Each of Defendant's cases involved claims arising *before* the effective date of the LPLA.  Therefore, the cases are not controlling.  Moreover, the LPLA specifically provides for design defect claims.[13]  Defendant's contention that Louisiana law bars strict products liability design defect claims is meritless.[14]

*Maine:* Defendant's single case in support of Maine's purported proscription against strict liability design defect claims in the pharmaceutical context is, in fact, a case involving a claim against a *chain saw manufacturer* for injury caused by a logger's *chain saw*.  *See St. Germain v. Husqvarna Corp.*, 544 A.2d 1283 (Me. 1988).  It is of no assistance to the Court in determining whether Plaintiffs have asserted viable design defect claims against a drug manufacturer under Maine law.[15]  Thus, Defendant cites no authority supporting the

---

[13]     *Stahl*, 283 F.3d at 261 ("A product is "unreasonably dangerous" under the LPLA if the product meets at least one of the following criteria: . . . (2) The product is unreasonably dangerous in design . . . .").

[14]     In light of the apparently controlling LPLA, to the extent that *Jefferson v. Lead Indus. Ass'n, Inc.*, 930 F.Supp. 241, 245 (E.D. La. 1996) correctly sets forth the current state of Louisiana products liability law, and to the extent the Court deems Defendant's Motion timely and properly presented, Plaintiff may concede that any Common Law (or Civil Law, as applicable) breach of implied warranty claim against Defendant under Louisiana law may not be viable.

[15]     The unreported Maine trial court opinion cited by Defendant provides no further conclusive instruction regarding such claims.  *See Tardy v. Eli Lilly & Co.*, No. CV-03-538, 2004 WL 1925536, at *3 (adopting the learned intermediary doctrine, while cryptically commenting, without citation to binding authority, that the "Maine Supreme Judicial Court has adopted *much of the logic* of the Restatement comments on section 402A") (emphasis added).

proposition that Maine law bars strict liability design defect claims in the pharmaceutical products liability context.

**Maryland:** Defendant's Maryland cases are also unhelpful.  Although Maryland has adopted Section 402A, and "implicitly adopted" Comment k, the *Miles Labs., Inc. v. Doe* case relied upon by Defendant is inapposite because its holding, in relevant part, is limited to answering the certified question of whether Section 402A and Comment k extend to a preparer of human blood products for transfusions, where the recipients of such blood transfusions were infected with the AIDS virus thereby.  556 A.2d 1107, 1112 (Md. 1989). Because infected human blood products were at issue, no "design defect" claim was asserted. None of Defendant's other cases provide that strict liability design defect claims are barred under Maryland law.[16]

**Massachusetts:** With respect to Massachusetts law, Defendant again misinstructs the Court.  The Massachusetts Supreme Judicial Court did not "expressly adopt a 'policy [of] rejecting strict liability' in the prescription drug context 'for drug related injuries,'" as Defendant avers.  (Motion at 14.)  Instead, in *Payton v. Abbott Labs.*, the court simply opined that the "*Restatement (Second) of Torts [Section 402A Comment k]* reject[s] strict liability in favor of negligence for drug related injuries," and reasoned on that basis that plaintiffs' proffered market share theory of liability against the makers of the drug at issue in the case

---

[16]      Indeed, the *Fellows* case, repeatedly cited by Defendant, tracks Plaintiffs' contention that a drug manufacturer's failure to warn of known dangers triggers strict liability, generally, under Section 402A, including claims for defective design. 502 F.Supp. at 300. (*See* Response, *supra* at ___.)  Notably, in *Fellows*, it was undisputed that the defendant adequately warned patients about the drug at issue.  *Fellows*, 502 F.Supp. at 300. Finally, to the extent that the federal district court accurately sets forth in its opinion the current state of Maryland law with respect to Plaintiffs' implied warranty claims, and to the extent the Court deems Defendant's Motion timely and properly presented, Plaintiffs concede that their implied warranty claims under Maryland law may not be viable.  *Id.* at 299-300.

should be denied.  437 N.E.2d 171, 189-190 (Mass. 1982) (emphasis added).  The case is not

on point.  No formal adoption of 402A or Comment k is noted in any case Defendant cites.[17]

Moreover, according Defendant's own argument, assuming *arguendo* that the same doctrinal

rules apply to Plaintiffs' strict liability claims as to their implied warranty claims (Motion at

22), if Plaintiffs' strict liability claims are not barred, neither are their implied warranty

claims under Massachusetts law.

 **Michigan:** To the extent that the district court in *Zammit v. Shire US, Inc.*, 415

F.Supp.2d 760, 766 (E.D. Mich. 2006) correctly sets forth the current status of Michigan

products liability law, and provided the Court deems Defendant's Motion timely and

properly presented, Plaintiffs may concede that their strict liability design defect and implied

warranty claims brought under Michigan law are barred.

 **New York:** New York law does not immunize pharmaceutical companies from strict

liability design defect claims; at most, New York treats Comment k as an affirmative

defense.[18]  In addition, *Martin* and the other New York case cited by Defendant are not

design defect, but instead are failure-to-warn, cases.  628 N.E.2d at 1309-1310 ("The issue

here is whether the warning . . . is adequate as a matter of law.").

---

[17]  Defendant even goes so far as to represent to the Court that "no 'strict liability tort' claim [exists] in Massachusetts 'in products liability cases'" (Motion at 14), but neglects to inform the Court that the Massachusetts strict products liability regime is merely supplanted by that state's version of the Uniform Commercial Code.  *See Kelley v. Ely Lilly & Co.*, No. 05-CV-1882 (RCL) 2007 WL 1238789, at *8 (D.D.C. April 27, 2007) (interpreting Massachusetts law and declaring that "Massachusetts does not have a strict liability tort *apart from liability for breach of warranty under the Uniform Commercial Code*" and "[a]mendments to the Massachusetts version of the Uniform Commercial Code made it clear that the Legislature transformed warranty liability into a remedy *intended to be as fully comprehensive as the strict liability theory of recovery that has been adopted by many other jurisdictions*") (emphasis added).

[18]  *See Martin v. Hacker*, 628 N.E.2d 1308, 1311 (N.Y. 1993) ("Although a prescription drug is by its nature an inherently unsafe product and would in the usual case impute strict liability to its manufacturer, a defense is provided against such liability when the drug is "'properly prepared, and accompanied by proper directions and warning.'")

**North Carolina:** To the extent that strict liability claims under North Carolina law are superseded by statute in accordance with the North Carolina Products Liability Act, N.C. Gen. Stat. Ann. § 99B-1.1, et seq., and to the extent the Court deems Defendant's Motion timely and properly presented, Plaintiffs may concede any strict products liability design defect claims that are improperly brought under the Common Law, instead of the NCPLA, subject to any necessary amendment of such claims by Plaintiffs.

**North Dakota:** Defendant tacitly admits that there is no North Dakota authority that bars strict liability design defect claims under that state's laws, but merely projects that because the North Dakota courts have apparently adopted Section 402A and other comments thereto, it would also adopt Comment k.  Defendant's conjecture provides no basis for the Court to dismiss any of Plaintiffs' claims.

**Ohio:** According to Defendant, Ohio has essentially codified, as well as judicially adopted, Comment k.  But, as amply demonstrated above, any such adherence to Comment k does not automatically render strict liability design defect claims barred under Ohio law, at least in part because Plaintiffs also assert that Defendant failed to adequately warn of Seroquel's dangerous side effects.  (*See* Response, *supra* at ___.)  Moreover, Defendant's cases in no way restrict the prosecution of strict liability design defect claims under Ohio law.  *Temple v. Wean United, Inc.*, 364 N.E.2d 267, 271 (Ohio 1977) (involving injury caused by a punch press, not any prescription medication); *Tracy v. Merrell Dow Pharms., Inc.*, 569 N.E.2d 875, 878 (Ohio 1991) (determining whether the learned intermediary doctrine applied to the facts of that case).  Defendant cites no authority stating that Ohio law bars strict liability design defect claims in the pharmaceutical products liability context.

**Oklahoma:** Far from "exempt[ing]" prescription drugs from strict liability design defect claims, as Defendant represents in its Motion, the Oklahoma Supreme Court in *Edwards v. Basel Pharms.* simply acknowledged the language of Comment k, emphasizing that under Oklahoma law, the user of a prescription drug "must be adequately warned" of a drug's dangerous propensities.  933 P.2d 298, 300 (Okla. 1997)  The *Edwards* court then proceeded to apply the learned intermediary rule, which was the central issue in that failure-to-warn (not design defect) case.  *Id.* at 300-303.  Thus, Defendant cites no authority that bars strict liability design defect claims under Oklahoma law.[19]

**Pennsylvania:** To the extent that *Hahn v. Richter*, 673 A.2d 888 (1996), properly defines current Pennsylvania products liability law, and to the extent that the Court deems Defendant's Motion timely and properly presented, Plaintiffs may concede the viability of any strict liability design defect claims brought under Pennsylvania law.  However, it is not as clear that Pennsylvania law may impose a similar bar to Plaintiffs' implied warranty claims.  Despite the district court's statement in *Parkinson v. Guidant Corp.*, 315 F.Supp.2d 741, 752-53 (E.D. Pa. 2004), that Pennsylvania courts "preclude[] claims for breaches of implied warranty," the cases cited as authority for that proposition in *Parkinson* are distinguishable because in one case, the plaintiffs' implied warranty claims were brought against a pharmacist, and in the other, the court determined that *federal law preempted* the plaintiff's claim.  *See id.* (citing cases).  Without more, Plaintiffs, therefore, cannot concede any implied warranty claims brought under Pennsylvania law, and Defendant has not conclusively established that such claims are barred.

---

[19]     *McKee v. Moore*, also cited by Defendant, is yet another failure-to-warn case.  648 P.2d 21, 22 (Okla. 1982).

**South Dakota:** The federal cases on which Defendant relies are not design defect cases; therefore they are not helpful to the Court's analysis of whether South Dakota law precludes strict liability design defect claims.[20]  Defendant cites no authority that bars strict liability design defect claims under South Dakota law.

**Tennessee:** Again, the cases on which Defendant relies under Tennessee law are not design defect cases, but instead are failure-to-warn and negligence cases.[21]  Therefore, the Tennessee Supreme Court had no opportunity to pass on the viability of a design defect claim under Tennessee law in those cases.  Defendant cites no authority that bars strict liability design defect claims under Tennessee law.

Defendant also has not shown that Plaintiffs' breach of implied warranty claims brought under Tennessee law are barred.  The only case on which Defendant relies for the proposition that Tennessee law bars implied warranty claims against drug makers concluded that no implied warranty was breached because there was no issue with respect to the sufficiency of the warning given by the manufacturer.[22]  Here, as repeatedly noted, Plaintiffs allege that Defendant here did *not* give an adequate warning regarding Seroquel's attendant risks.  Therefore, Defendant's have not shown that Plaintiffs' implied warranty claims under Tennessee law are barred.

---

[20]     *See McElhaney v. Eli Lilly & Co.*, 575 F.Supp. 228, 230 (D.S.D. 1983) ("Plaintiff does not claim defendant's DES is adulterated or impure, nor that it was defectively manufactured *or designed*.") (emphasis added); *Yarrow v. Sterling Drug, Inc.*, 263 F.Supp. 159, 160 (D.S.D. 1967) ("[Plaintiff] contends that defendant drug manufacturer . . . failed to properly warn her doctor of the potential danger of . . . side effects.").

[21]     *See Pittman v. Upjohn Co.*, 890 S.W.2d 425, 427 (Tenn. 1994) ("The complaint alleges that each of the defendants had a duty to warn of the dangerous properties of Micronase . . . ."); *Laws v. Johnson*, 799 S.W.2d 249, 252 (Tenn. Ct. App. 1990) (stating that the suit involved four pharmacists who "Plaintiffs alleged[] were guilty of negligence in dispensing prescription drugs").

[22]     *Dunkin v. Syntex Labs., Inc.*, 443 F.Supp. 121, 125 (W.D. Tenn. 1977) ("This court holds as a matter of law that where a prescription drug is sold by a drug manufacturer which has warned the medical community of specific risks associated with use of the drug, the warranty of merchantability is not breached . . . .").

**Texas:**  Defendant cites not a single case from a Texas state court, presumably because no Texas court has addressed the issue of whether strict liability design defect claims against drug makers are viable under Texas law.  The federal cases cited by Defendant do not recognize any Texas authority supporting what amount to mere predictions regarding the Texas Supreme Court's interpretation and application of Texas law.  Further underscoring the inconclusiveness of Defendant's argument, Defendant omits citation to *Gerber v. Hoffman-La Roche, Inc.*, 392 F.Supp.2d 907, 922 (S.D. Tex. 2005).  *Gerber* is a prescription drug liability case in which the federal district judge harmoniously employed both Comment k *and* Texas case law to hold that the plaintiff's design defect claim failed as a matter of law because plaintiff had adduced no evidence of a *safer alternative design*, as required under Texas law—but did *not* hold that Comment k in any way proscribed such a design defect claim.  *Id.* ("Under Comment K, a prescription drug is unreasonably dangerous in design if it is not accompanied by proper directions and warning.  Texas courts *further require* a plaintiff asserting a design defect cause of action to demonstrate that the defendant could have provided a safer alternative design.).  Unquestionably, Defendant fails to establish that Texas law prohibits strict liability design defect claims in the prescription drug context.

**Utah:**  To the extent that *Grundberg v. Upjohn Co.*, 813 P.2d 89, 99 (Utah 1991) properly defines current Utah products liability law with respect to design defect claims against FDA-approved drugs, and to the extent that the Court deems Defendant's Motion timely and properly presented, Plaintiffs may concede the viability of any strict liability design defect claims brought under Utah law.  Plaintiffs may also concede their Utah implied warranty claims on a similar basis.

**Vermont:** None of the cases Defendant cites deal with drug maker liability for design defects. Instead, they address products liability claims relative to *tractors* and *motorcycles*.[23] Defendant cites no authority that bars design defect claims under Vermont law.[24]

**Virginia:** To the extent that *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 374 S.E.2d 55, 57 n.4 (Va. 1988) and *Wolford v. Budd Co.*, 149 F.R.D. 127, 131 (W.D. Va. 1993) correctly set forth current Virginia products liability law, and to the extent that the Court deems Defendant's Motion timely and properly presented, Plaintiffs may concede the viability of any strict liability design defect claims brought under Virginia law.

**Washington:** Strict liability design defect claims are not barred under Washington law. The seminal case Defendant cites is a failure-to-warn, not design defect, case. *See Young v. Key Pharms., Inc.*, 922 P.2d 59, 69 (Wash. 1996) (Madsen, J., dissenting) ("The sole claim in the case before us is that the manufacturer . . . failed to adequately warn of the risks involved in using [the drug at issue].") Moreover, *Young* apparently holds that a failure-to-warn claim involving a prescription drug sounds in negligence, not strict liability. 922 P.2d at 64-65. However, *Young* fails to address the viability of strict liability design defect claims under Washington law. The Motion contains no law proscribing strict liability design defect claims under Washington law.[25]

---

[23]     *See Webb v. Navistar Int'l Transp. Corp.*, 692 A.2d 343, 343 (Vt. 1996) (tractor); *Zaleski v. Joyce*, 333 A.2d 110, 111 (Vt. 1975) (motorcycle).

[24]     As with many of the other states above, it is beyond comprehension that Defendant can unequivocally declare that "Twenty-Four Jurisdictions [including Vermont] Do Not Recognize Strict Liability 'Design Defect' Claims In The Prescription Drug Context" (Motion at 10), then fail to cite a single case remotely supporting that contention.

[25]     The other cases Defendant cites are distinguishable. *See Rogers v. Miles Labs., Inc.*, 802 P.2d 1346, 1351 ("[W]e hold that strict liability does not apply to blood and blood products."); *Terhune v. A.H. Robins Co.*, 577 P.2d 975, 979 (Wash. 1978) ("It is our conclusion that a manufacturer of a product . . . (if it qualifies otherwise under comment k ), which is obtainable only through the services of a physician, fulfills *its duty if it warns the physician of the dangers attendant upon its use* . . . .") (emphasis added).

*Wyoming:* None of the cases Defendant cites support the notion that Wyoming law bars strict liability design defect claims.  The closest case, *Jacobs v. Dista Prods.*, is another inapposite failure-to-warn case.  693 F.Supp. 1029, 1031 (D. Wyo. 1988).  However, the *Jacobs* court also recognized that there are no Wyoming state court cases addressing the products liability issues in that case, so it was relegated to merely predicting what the Wyoming Supreme Court would decide if it were presented with the case.  *Id.*  This is insufficient to bar design defect and implied warranty claims under Wyoming law.

## CONCLUSION

For all the foregoing reasons, Defendant's Motion to Dismiss Plaintiffs' strict liability design defect and implied warranty claims should be denied.

Respectfully submitted


By: ___/s/ Fletcher V. Trammell___
        F. Kenneth Bailey Jr.
        K. Camp Bailey
        Fletcher V. Trammell
        Bailey Perrin Bailey LLP
        440 Louisiana St., Suite 2100
        Houston, Texas 77002
        (713) 425-7100 Telephone
        (713) 425-7101 Facsimile
        kbailey@bpblaw.com
        cbailey@bpblaw.com
        ftrammell@bpblaw.com

        Co-Lead Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of August, 2007, I electronically filed the foregoing **:** PLAINTIFFS' RESPONSE IN OPPOSITION TO ASTRAZENECA'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS REGARDING THE STRICT LIABILITY "DESIGN DEFECT" CLAIMS AND "IMPLIED WARRANTY" CLAIMS AND INCORPORATED MEMORANDUM OF LAW with the Clerk of the Court by using the CM/ECF system which will send a Notice of Electronic Filing to the counsel listed on the attached Service List..  I further certify that I mailed the foregoing document and the Notice of Electronic Filing by First-Class U. S. Mail delivery to the non-CM/ECF Participants listed on the attached Service List.

/s/ Fletcher V. Trammell_____
Fletcher V. Trammell

SERVICE LIST
In Re: Seroquel Products Liability Litigation
MDL Docket No. 1769

| | |
|---|---|
| Scott Allen<br>Cruse, Scott, Henderson & Allen, L.L.P.<br>2777 Allen Parkway, 7th Floor<br>Houston, TX 77019<br>Tel: (713) 650-6600<br>sallen@crusescott.com | Robert L. Ciotti<br>Carlton Fields, P.A.<br>42212 W. Boy Scout Blvd., Suite 1000<br>Tampa, FL 33607-5736<br>Tel: (813) 223-7000<br>rciotti@carltonfields.com<br>tpaecf@cfdom.net<br>atravis@carltonfields.com<br>*Counsel for Defendants AstraZeneca Pharmaceuticals, L.P, and AstraZeneca LP* |
| Mary B. Cotton<br>John D. Giddens, P.A.<br>P.O. Box 22546<br>Jackson, MS 39225-2546<br>Tel: (601) 355-2022<br>betsy@law-inc.com | Michael Davis<br>James Mizgala<br>Sidley Austin LLP<br>Bank One Plaza<br>One South Dearborn St.<br>Chicago, IL 60603<br>Tel: (312) 853-7731<br>mdavis@sidley.com<br>jmizgala@sidley.com |
| Aaron K. Dickey<br>Goldenberg and Heller, PC<br>P.O. Box 959<br>2227 S. State Route 157<br>Edwardsville, IL 62025<br>Tel: (618) 650-7107<br><br>aaron@ghalaw.com | Heidi Elizabeth Hilgendorff<br>Thomas Campion<br>Drinker Biddle & Reath, LLP<br>500 Campus Dr.<br>Florham Park, NJ 07932-1047<br>Tel: (973) 360-1100<br>thomas.campion@dbr.com<br>heidi.hilgendorff@dbr.com<br>jeffrey.peck@dbr.com<br>*Counsel for Defendants Janssen Pharmaceutical Products and Johnson & Johnson Co.* |
| John J. Driscoll<br>Brown & Crouppen, PC<br>720 Olive St., Suite 1800<br>St. Louis, MO 63101 | Kenneth T. Fibich<br>Fibich, Hampton & Leebron, LLP<br>1401 McKinney St., Suite 1800<br>Five Houston Center Houston, TX 77010 |

| | |
|---|---|
| Tel: (314) 421-0216<br>jdriscoll@brownandcrouppen.com<br>bsmith@brownandcrouppen.com<br>rbrooks@brownandcrouppen.com<br>blape@brownandcrouppen.com | Tel: (713) 751-0025<br>tfibich@fhl-law.com |
| Gregory P. Forney<br>Shaffer, Lombardo & Shurin<br>911 Main St., Suite 2000<br>Kansas City, MO 64105<br>Tel: (816) 931-0500<br>gforney@sls-law.com<br>rbish@sls-law.com<br>*Counsel for Defendant, Marguerite Devon French* | Todd S. Hageman<br>Simon and Passanante, PC<br>701 Market St., Suite 1450<br>St. Louis, MO 63101<br>Tel: (314) 241-2929<br>thageman@spstl-law.com |
| W. Todd Harvey<br>Joe R. Whatley, Jr.<br>2323 2nd Ave. N<br>Birmingham, AL 35203-0647<br>Tel: (205) 328-9576<br>tharvey@whatleydrake.com<br>jwhatley@whatleydrake.com<br>ecf@whatleydrake.com | Jona R. Hefner<br>3441 W. Memorial, Suite 4<br>Oklahoma, OK 73134-7000<br>Tel: (405) 286-3000<br>attorneyokc@hotmail.com<br>attorneyokc@gmail.com |
| Lawrence J. Gornick<br>William A. Levin<br>Dennis J. Canty<br>Levin Simses Kaiser & Gornick, LLP<br>44 Montgomery St., 36th Floor<br>San Francisco, CA 94104<br>Tel: (415) 646-7160<br>lgornick@lskg-law.com<br>dcanty@lskg-law.com<br>llsimes@levins-law.com<br>jkaiser@lskg-law.com<br>echarley@lskg-law.com<br>ddecarli@lskg-law.com<br>bsund@lskg-law.com<br>astavrakaras@lskg-law.com | Scott Burdine<br>Hagans Burdine Montgomery<br>Rustay & Winchester, P.C.<br>3200 Travis, 4th Floor<br>Houston, TX 77006<br>Tel: (713) 222-2700<br>sburdine@hagans-law.com |
| | |

| | |
|---|---|
| Thomas Campion<br>Heidi E. Hilgendorff<br>Drinker Biddle & Reath, LLP<br>500 Campus Dr.<br>Florham Park, NJ 07932-1047<br>Tel: (973) 360-1100<br>thomas.campion@dbr.com<br>heidi.hilgendorff@dbr.com<br>jeffrey.peck@dbr.com<br>*Counsel for Defendants Janssen Pharmaceutical Products and Johnson & Johnson Co.* | Jona R. Hefner<br>3441 W. Memorial, Suite 4<br>Oklahoma, OK 73134-7000<br>Tel: (405) 286-3000<br>attorneyokc@hotmail.com<br>attorneyokc@gmail.com |
| Keith M. Jensen<br>Jensen, Belew & Gonzalez, PLLC<br>1024 North Main<br>Fort Worth, TX 76106<br>Tel: (817) 334-0762<br>kj@kjensenlaw.com<br>kjensenlaw@gmail.com | Aaron C. Johnson<br>Summers & Johnson<br>717 Thomas<br>Weston, MO 64098<br>Tel: (816) 640-9940<br>aaron@summersandjohnson.com<br>firm@summersandjohnson.com |
| Jamie R. Kendall<br>301 Massachusetts Ave.<br>Indianapolis, IN 46204<br>Tel: 317-633-8787<br>jkendall@price-law.com<br>eamos@price-law.com | Mark A. Koehn<br>whrfrat42@yahoo.com |
| Benjamin A. Krass<br>Law Offices of Matthew F. Pawa, P.C.<br>1280 Centre St., Suite 230<br>Newton Centre, MA 02459<br>Tel: (617) 641-9550<br>bkrass@pawalaw.com | D. Andrew List<br>Clark Perdue Arnold & Scott<br>471 East Broad St., Suite 1400<br>Columbus, OH 43215<br>Tel: 877-220-2203<br>alist@cpaslaw.com |
| Matthew E. Lundy<br>Lundy & Davis<br>333 N. Sam Houston Pkwy., E<br>Suite 375<br>Houston, TX 77060<br>Tel: (281) 272-0797<br>mlundy@lundydavis.com<br>jdibbley@lundydavis.com | David P. Matthews<br>Abraham, Watkins, Nichols, Sorrels, Matthews & Friend<br>800 Commerce St.<br>Houston, TX 77002-1776<br>Tel: (713) 222-7211<br>dmatthews@abrahamwatkins.com<br>agoff@abrahamwatkins.com |

| | jrhoades@abrahamwatkins.com<br>jwebster@abrahamwatkins.com |
|---|---|
| James Mizgala<br>Sidley Austin LLP<br>Bank One Plaza<br>One South Dearborn St.<br>Chicago, IL 60603<br>Tel: (312) 853-7731<br>mdavis@sidley.com<br>jmizgala@sidley.com<br>lmodaff@sidley.com<br>efilingnotice@sidley.com<br>*Counsel for Defendants AstraZeneca LP and AstraZeneca Pharmaceuticals LP* | Howard Nations<br>Howard L. Nations Attorney At Law<br>4515 Yoakum Blvd.<br>Houston, TX 77006-5895<br>Tel: (713) 807-8400<br>nations@howardnations.com<br>lori@howardnations.com<br>kim@howardnations.com<br>andrea@howardnations.com<br>charles@howardnations.com<br>lezzlie@howardnations.com |
| Matthew F. Pawa<br>Law Offices of Matthew F. Pawa, P.C.<br>1280 Centre St., Suite 230<br>Newton Centre, MA 02459<br>Tel: (617) 641-9550<br><br>mp@pawalaw.com | Paul J. Pennock<br>Michael E. Pederson<br>Weitz & Luxenburg, P.C.<br>180 Maiden Lane – 17th Floor<br>New York, NY 10038<br>Tel: (212) 558-5500<br>Ppennock@weitzlux.com<br>Lschutlz@weitzlux.com<br>MPederson@weitzlux.com<br>JOrelli@weitzlux.com<br>*Plaintiff's Lead Counsel* |
| Carlos A. Prietto, III<br>Robinson Calcagnie & Robinson<br>620 Newport Center-Drive<br>7th Floor<br>Newport Beach, CA 92660<br>Tel: 940-720-1288<br>cbregman@rcrlaw.net<br>cprietto@rcrlaw.net<br>ctakanabe@rcrlaw.net<br>kschaeffer@rcelaw.net | Fred T. Magaziner<br>Marjorie Shickman<br>A. Elizabeth Balakhani<br>Shane T. Prince<br>Eben S. Flaster<br>Stephen J. McConnell<br>Brennen Joseph Torregrossa<br>Dechert, LLP<br>2929 Arch St., Cira Center<br>Philadelphia, PA 19104-2808<br>Tel: (215) 994-4000<br>Fred.magaziner@dechert.com<br>Marjorie.shiekman@dechert.com<br>shane.prince@dechert.com<br>cheryl.inwek@dechert.com |

| | |
|---|---|
| | Eben.flster@dechert.com<br>elizabeth.balakhani@dechert.com<br>michelle.kirscEh@dechert.com<br><br>*Counsel for Defendant Astrazeneca Pharmaceuticals, LP* |
| William N. Riley<br>Jamie R. Kendall<br>301 Massachusetts Ave.<br>Indianapolis, IN 46204<br>Tel: 317-633-8787<br>wriley@price-law.com<br>eamos@price-law.com | Mark P. Robinson, Jr.<br>Robinson Calcagnie & Robinson<br>620 Newport Center Dr., 7th Floor<br>Newport Beach, CA 92660<br>Tel: (949) 720-1288<br>mrobinson@robinson-pilaw.com<br>mrobinson@rcrlaw.net |
| Larry Roth<br>Law Offices of Larry M. Roth, P.A.<br>P.O. Box 547637<br>Orlando, FL 32854-7637<br>Tel: (407) 872-2239<br>lroth@roth-law.com<br>lcarrington@roth-law.com<br>epoit@roth-law.com<br><br>*Plaintiffs' Liaison Counsel* | Lizy Santiago<br>Abraham, Watkins, Nichols, Sorrels, Matthews & Friend<br>800 Commerce St.<br>Houston, TX 77002-1776<br>Tel: (713) 222-7211<br>lsantiago@thematthewslawfirm.com<br>msalazar@thematthewslawfirm.com<br>lsantiago@abrahamwatkins.com |
| Robert A. Schwartz<br>Bailey & Galyen<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Tel: (281) 335-7744<br>bschwartz@galyen.com<br>anixon@galyen.com | Kenneth W. Smith<br>Aylstock Witkin Kreis & Overholtz<br>803 North Palafox St.<br>Pennsacola, FL 32501<br>Tel: (850) 916-7450<br>ksmith@awkolaw.com<br>kws6619@msn.com<br>rvasquez@awkolaw.com |
| Brennen Joseph Torregrossa<br>Dechert, LLP<br>2929 Arch St., Cira Center<br>Philadelphia, PA 19104-2808<br>Tel: (215) 994-4000<br>brennen.torregrosssa@dechert.com<br>*Counsel for Defendant Astrazeneca Pharmaceuticals, LP* | Ted C. Wacker<br>Robinson Calcagnie & Robinson<br>620 Newport Center Dr., 7th Floor<br>Newport Beach, CA 92660<br>Tel: (949) 720-1288<br>twacker@rcrlaw.net |
| | |

| | |
|---|---|
| W. Todd Harvey<br>Joe R. Whatley, Jr.<br>2323 2nd Ave. N<br>Birmingham, AL 35203-0647<br>Tel: (205) 328-9576<br>tharvey@whatleydrake.com<br>jwhatley@whatleydrake.com<br>ecf@whatleydrake.com | Justin Witkin<br>Ken Smith<br>Aylstock, Witkin & Sasser, PLC<br>4400 Bayou Blvd., Suite 58<br>Pensacola, FL 32503<br>Tel: (850) 916-7450<br>Jwitkins@AWS-LAW.COM<br>ablankenship@aws-law.com<br>aburrus@aws-law.com<br>asmith@aws-law.com<br>ksmith@aws-law.com<br>noverholtz@aws-law.com<br>jsafe@aws-law.com |

NON-ECF SERVICE LIST

| | |
|---|---|
| Bridget Ahmann<br>Faegre & Benson, LLP<br>90 S. 7th St., Ste 2200<br>Minneapolis, MN  55402-3901 | Timothy Reese Balducci<br>The Langston Law Firm, P.A.<br>P.O. Box 787<br>100 South Main St.<br>Booneville, MS 38829<br>Tel: (662) 728-3138<br>tbalducci@langstonlaw.com |
| Kenneth W. Bean<br>Sandberg, Phoenix & von Gontard<br>One City Centre<br>15th Floor<br>St. Louis, MO 63101-1880<br>Tel: (314) 231-3332<br>kbean@spvg.com | Earl Francis Carriveau<br>1012 6th Ave.<br>Lake Charles, LA  70601-4706 |
| Robert F. Clarke<br>Phillips & Associates<br>3030 North Third St., Ste 1100<br>Phoenix, AZ  85012 | Patricia Cook |
| Cannon Curlee | Mark W. Davis<br>Davis & Feder, P.A.<br>P.O. Drawer 6829<br>Gulfport, MS 39506-7018 |
| | |

| | |
|---|---|
| Warren Frazier | James J. Freebery<br>McCarter & English, LLP<br>18th Floor<br>919 N. Market St.<br>Wilmington, DE 19801 |
| Michael T. Gallagher<br>The Gallagher Law Firm<br>2905 Sackett St.<br>Houston, TX 77098 | Gary Reed Gober<br>200 Fourth Ave. North<br>Suite 700<br>Nashville, TN 37219 |
| Richard D. Hailey<br>Ramey & Hailey<br>3891 Eagle Creek Pkwy.<br>Suite C<br>Indianapolis, IN 46254-2600 | Jason Matthew Hatfield<br>Lundy & Davis, LLP<br>300 North College Ave.<br>Suite 309<br>Fayetteville, AR 72701 |
| John Hawkins | Donna Higdon |
| Janssen, L.P.<br>Drinker Biddle & Reath LLP<br>500 Campus Drive<br>Florham Park, NJ 07932-1047 | Johnson & Johnson<br>Drinker Biddle & Reath LLP<br>500 Campus Drive<br>Florham Park, NJ 07932-1047 |
| Krisann C. Kleibacker Lee<br>Faegre & Benson LLP<br>90 S 7th St. Ste. 2200<br>Minneapolis, MN 55402-3901 | Louisiana Wholesale Drug Co. Inc.<br>c/o Gayle R. White<br>Registered Agent<br>Highway 167N<br>Sunset, LA 70584 |
| Salvatore M. Machi<br>Ted Machi & Associates PC<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Tel: (281) 335-7744 | Stephen J. McConnell<br>Dechert, LLP<br>2929 Arch St., Cira Center<br>Philadelphia, PA 19104-2808 |
| Eric B. Milliken<br>3 Sir Barton Ct.<br>Newark, DE 19702-2033 | Randy Niemeyer<br>15863 Pike 43<br>Bowling Green, MO 63334-2620 |
| Gale D. Pearson<br>Pearson, Randall & Schumacher, PA<br>Fifth Street Towers, Suite 1025<br>100 South 5th Street<br>Minneapolis, MN 55402 | Dale Kent Perdue<br>Clark Perdue Arnold & Scott<br>471 East Broad St., Suite 1400<br>Columbus, OH 43215 |

| | |
|---|---|
| Stephen J. Randall<br>Pearson, Randall & Schumacher, PA<br>First Street Towers, Suite 1025<br>100 South 5th Street<br>Minneapolis, MN 55402 | Brenda Rice |
| Evelyn Rodriguez | Robert L. Salim<br>Attorney At Law<br>P.O. Box 2069<br>Natchitoches, LA 71457-2069<br>Tel: (318) 352-5999<br>robertsalim@cp-tel.net |
| Ellen R. Serbin<br>Perona Langer Beck Lallande & Serbin<br>300 San Antonio Dr.<br>Long Beach, CA 90807-0948 | Marjorie Shickman<br>Dechert, LLP<br>2929 Arch St., Cira Center<br>Philadelphia, PA 19104-2808 |
| Robert H. Shultz<br>Heyl, Royster<br>103 W. Vandalia St.<br>P.O. Box 467<br>Edwardsville, IL 62025 | Robert G. Smith<br>Lorance & Thompson, PC<br>Suite 500<br>2900 N Loop W<br>Houston, TX 77092 |
| Catherine Solomon<br>3100 N.E. 83<br>Gladstone, MO 64119 | Linda S. Svitak<br>Faegre & Benson LLP<br>2200 Wells Fargo Center<br>90 South Seventh St.<br>Minneapolis, MN 55402-3901 |
| Seth S. Webb<br>Brown & Crouppen, P.C.<br>720 Olive St., Suite 1800<br>St. Louis, MO 63101-2302 | Mary J. Wrightinton |