UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| In Re: Seroquel Products Liability Litigation<br>MDL Docket No. 1769<br><br>DOCUMENT RELATES TO ALL CASES | Case No. 6:06-md-01769-ACC-DAB<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION REGARDING APPOINTMENT OF A NEUTRAL, INDEPENDENT TECHNICAL EXPERT** |

Despite its title, AstraZeneca's motion asks the Court to appoint *not* an independent, neutral technical expert, but instead an E-Discovery Special Master, to "satisfactorily *resolve* all technical issues." (*See* AstraZeneca's Proposed Order.) To fill this role, AstraZeneca proposes two E-Discovery vendors who regularly do business with pharmaceutical companies such as AstraZeneca, as well as the law firms representing AstraZeneca. To investigate the past problems and weed out the causes, to anticipate new problems and suggest timely solutions, the Court needs an Advisor with advanced systems expertise, not expertise in E-Discovery. As set forth below, AstraZeneca's proposed experts and order should be rejected, and plaintiffs' motion to appoint Hitachi Consulting should be granted.

**A. An IT Advisor Is Required - Not An E-Discovery Special Master**

AstraZeneca suggests that the "technical expert" be charged with "*resolving* all pending e-discovery technology disputes," including the "feasibility and form of production" of databases, "*establishing* efficient technical parameters," and "reporting to the court to provide updates." (*See* AstraZeneca's Proposed Order.) Essentially, this is the very motion which

AstraZeneca stated would likely *not* be brought after the Court denied its July 27 request for a Special Master. (July 27, 2007 Transcript, 98:11-103:13.)

AstraZeneca's request that a third party "resolve" issues, "establish" parameters, determine "feasibility," and provide "updates" to the Court is inimical to the discussions at the August 22 conference.[1] Rather, the parties and the Court discussed an Advisor, who would *investigate* issues for the Court, and inform the *Court's* decisions regarding sanctions or remedies (August 22, 2007 Transcript, 34:9-13). The parties and the Court envisioned an Advisor who will conduct an independent audit of AstraZeneca's E-Discovery processes (*Id.*, 31:18-20), in order to get to the bottom of the technical issues presented by prior productions (33:24-25), to figure out what plaintiffs have not gotten, and why (46:12-14). The Advisor will figure out what problems still remain (29:2-3), ensure that AstraZeneca's processes will be completely transparent (27:2), and ensure that plaintiffs receive the information to which they are entitled in the proper form (27:4-6).

On July 27, 2007, AstraZeneca sought a special master who could "meet with the parties in all the meet and confers that need to occur on the various issues" because "the meet and confers that have occurred to date have been in many instances quite unproductive." (*Id.*, 98:11-99:3). It is increasingly evident that the "breakdown" results not from any lack of effort or professionalism on the part of counsel, but from AstraZeneca's failure to investigate issues, failure to provide accurate information, and (in some cases) complete failure to respond. These events demonstrate a need for an audit of AstraZeneca's systems and processes to ascertain the truth, not a need for a Special Master to supervise meet and confers.

---

[1] Ironically, AstraZeneca objects to a portion of plaintiffs' Proposed Order, claiming it calls upon the IT Advisor to make a determination of "relevance." Plaintiffs' Proposed Order does not. The Order instructs the Advisor to "investigate whether all relevant email… has been produced." Plaintiffs contemplate that the Advisor will receive further guidance from the Court and the parties with respect to relevance.

Search Terms. Following the July 26, 2007 hearing, the parties met and conferred extensively regarding proposed additional search terms. In order to assist the parties in assessing the accuracy and scope of proposed search terms, it was agreed that AstraZeneca would apply the proposed terms to the data it had collected from its witnesses and provide a report detailing the volume of documents which might be found by each term. The report was to form the basis for further discussions regarding the proposed terms, and hopefully result in an agreed list.

When AstraZeneca initially reported the results of the search, it did not appear that all of the agreed terms had been applied. (*See* Jaffe Decl. in Support of Plaintiffs' Motion, ¶9.) When plaintiffs inquired, AstraZeneca indicated that it could "now verify that the… agreed search terms do not appear on the report because they have zero hits for all custodians." (Canty Decl., Exh. 8, p. 3.) When Mr. Jaffe investigated, and found that this was impossible (Canty Decl., Exh. 9), AstraZeneca then confessed that the vendor's search was invalid, and would have to be re-run. (Canty Decl., Exh. 8.)

Further, the initial results of the search indicated that terms such as "DM," "quetiapine" and "Seroquel" still appeared in files not yet culled for production to plaintiffs. When plaintiffs pointed this out, AstraZeneca responded that it had "plumbed the depths" of these errors, and that the documents were in the production process. (Canty Decl., Exh. 8, p. 3). However, in a later discussion with AstraZeneca's vendor, plaintiffs learned that these errors are "yet to be discussed" between AstraZeneca and the vendor, and AstraZeneca "doesn't know why these documents are there." (Canty Decl., Exh. 8 p. 1.). Furthermore, AstraZeneca considers them an "audit issue." (*Id*.)

Voicemail. Plaintiffs have received an update on AstraZeneca's investigation into the preservation, collection and production of voicemail. It appears that, since the July 26 hearing,

3

AstraZeneca has conducted a "file type" search of documents in the possession of its vendor, but still has not "figured out what the vendor did with voicemails it encountered." (Canty Decl., Exh. 10). It appears that AstraZeneca's investigation has been limited to voicemail saved by custodians to hard drive, and has not extended to the Audix system employed by AstraZeneca during the relevant time period. (*Id*.)

Track Changes. After introducing "evidence" seemingly to the contrary at the sanctions hearing, AstraZeneca has now admitted that plaintiffs are correct – no electronic documents with tracked changes have been produced to plaintiffs. (Canty Decl., Exh. 11.).

Multiple Email Mailboxes. As detailed in plaintiffs' concurrent Motion to Appoint Hitachi, AstraZeneca's multiple, changing explanations of this issue do not appear to hold water, and point to an error in the collection process. (Jaffe Decl. in Support of Plaintiffs' Motion, ¶4.). Plaintiffs have heard nothing further from AstraZeneca on this issue.

Remaining Issues with Custodial Production. Shortly after AstraZeneca's July 20, 2007 production of "corrected" load files, Mr. Jaffe identified issues which either were not addressed or were complicated by these "corrections," including problems with the page breaks in extracted text files, native excel file issues, duplicate Bates numbers, blank and missing pages , missing "source" data, and metadata fields which do not match correctly. Mr. Jaffe sent to AstraZeneca emails addressing each of these issues. (Exhibits 7 through 12, Jaffe Decl., in Support of Plaintiffs' Motion). As of this date, with the exception of Exhibit 10, AstraZeneca has not responded to any of these emails, and none of these issues have been resolved.

Where AstraZeneca's Proposed Order provides for generalized decision making by a Special Master, plaintiffs' Order provides clear and specific guidance to an IT Advisor. The Advisor will be empowered to start at the logical place – documentation of what has transpired to

date – cut through any interference, including any occasioned by counsel, get to the technical issues, and "provide transparency," as AstraZeneca has suggested.

### B. Messrs. Jessen and Socha Are Not The Best Choices for IT Advisor

To fill the role of IT Advisor, AstraZeneca proposes Messrs. John Jessen of EED, Inc., and/or George Socha, of Socha Consulting LLC. AstraZeneca touts Mr. Jessen as a "principal *E-discovery trainer* for the federal judiciary…" (AstraZeneca's Motion, at 5.) But, this Court certainly needs no E-Discovery training. AstraZeneca proposes Mr. Socha because of his experience in "*evaluating the adequacy and appropriateness* of policies, procedures, and technological processes *used by vendors...*" (*Id*.) But, it is the Court's role to evaluate the adequacy and appropriateness of the policies, procedures and processes employed by AstraZeneca, and the Court is itself experienced in such evaluation. Furthermore, although AstraZeneca continues to lay all problems at the feet of its various E-Discovery vendors, mounting evidence suggests that the problem is, technically speaking, "GIGO" – garbage in, garbage out. The Advisor must be qualified to examine and evaluate AstraZeneca's systems and collection efforts, not simply its vendors' E-Discovery processes.

The Advisor must also be neutral. Both of AstraZeneca's proposed experts are E-Discovery vendors, and regularly do business with large pharmaceutical companies such as AstraZeneca and the large law firms representing it. Mr. Jessen's business focuses on advising law firms and corporations about the liability risks of retaining too much information. (Canty Decl., Exh. 12, p. 2.) Mr. Jessen cautions his clients to beware of E-Discovery requests from "smart plaintiffs lawyers" because they may be "abuse of process." (*Id*., p. 5) Further, Mr. Jessen's firm, EED, Inc., sponsors events catering to the pharmaceutical industry. (Canty Decl., Exh. 13.) AstraZeneca has confirmed that Mr. Socha also does business with pharmaceutical

companies and the law firms who represent them.  Plaintiffs respectfully request that the court appoint a third party whose business plan does not contemplate significant future business from "Big Pharma" and its attorneys.

As set forth above, AstraZeneca's proposed experts and order should be rejected, and plaintiffs' motion to appoint Hitachi Consulting should be granted.

Dated:  September 10, 2007                                   LEVIN SIMES KAISER & GORNICK LLP


                                                                                      /s/ Dennis J. Canty
                                                                   Lawrence J. Gornick (CA State Bar No. 136290)
                                                                   Dennis J. Canty (CA State Bar No. 207978)
                                                                   44 Montgomery Street, 36th Floor
                                                                   San Francisco, CA  94104
                                                                   Telephone:  415-273-8138
                                                                   Facsimile:  415-981-1270
                                                                   E-mail:        lgornick@lskg-law.com
                                                                                      dcanty@lskg-law.com