



# CommercialPOV

**Litigation today is increasingly focusing on electronic data, and John Jessen, CEO of Electronic Evidence Discovery, is on a mission to make sure the business world is ready.**

**Just as the business world became increasingly data-driven, so has the legal realm. Jessen believes that companies must embrace electronic discovery, because it's simply not going to go away. Jessen spoke with Travis Van about minimizing legal expense, decreasing litigation risk, and understanding the true impact of electronic evidence.**

**Tell me a little bit about electronic data as it relates to the litigation process.**

**Electronic data is now required in all litigation. In fact, it's always been required. From the time the first computer was plugged in—however long ago that might have been—electronic data could have been pursued and brought into the discovery process.**

**But the legal community has never really understood that computers were nothing but big filing cabinets…and that increasingly they were becoming the only filing cabinets. They never developed the knowledge or the skills or the tools necessary to bring electronic data into the legal process. The law hasn't changed one bit. In fact, the Federal Rules Committee—which is a group that determines whether new rules need to be made regarding civil litigation—just wrapped up a study of electronic data and determined that no new rules were needed…that it's discoverable.**

**The vast majority of data created today is electronic data. And of all the data that gets created, very little gets printed. I have seen reports that say that up to 70% of all electronic data does not get printed today, so a big chunk of all data stays in the computer. If you are going to sue**

somebody and you want to get information about what happened, you have to look in the computer…it's the only source for it. Electronic data discovery is not only here to stay, it's growing.

We just reached a tipping point in our industry. In one of the biggest litigations going on today in America, one well-known plaintiff law firm sent a letter to all the corporate defendants saying "we're going to conduct electronic discovery—even if you have paper printouts, we only want the electronic files. We only want paper printouts when they contain handwritten notes or if there is no electronic source file." That's the first time that we've seen a major plaintiff firm in major, major litigation say that the majority of the discovery would be electronic.

## What sorts of things can a company do to protect itself in this proliferation of electronic data?

They can start treating electronic data as an asset that has a life cycle to it. You would not keep an old rusted out truck that didn't work—because it has a life cycle, and it's not providing you a return anymore, so you get rid of it. Paper documents are treated that way, and they're treated that way simply because it costs money to store paper. It's a physical entity, and you have to pay money for storage. Most companies store way too much electronic information. Do you really need every email you ever got, just because you can store it? Do you really need to have backup tapes going back 5 years or 10 years? We did an audit of a company and found 400,000 backup tapes—some as old as 25 years old. And much of that information served no specific purpose. The worst part of it is that a backup tape used in discovery costs about a thousand bucks a tape—to go get the tape, mount it, restore it, pull the data off, search it, and get the data into a format that can be reviewed. You don't want that kind of reliability around. One of the things we're doing with companies are creating records programs that put life cycle information on data. It assigns business value or regulatory requirements to electronic data—keeping what you need, but getting rid of data that no longer has business value or that no longer has regulatory value.

## What stage of litigation are your services brought in?

We are brought in typically when the case has been filed very early in the process by attorneys who want to develop a strategic plan for how to deal with electronic data. It's a mistake to wait too long in the process.

If I decided to sue you, I would first draw up a complaint. The complaint says, 'I'm suing you…and here's why.' But it's very strategic

in not being very specific, because that would give you material to work with. So typically, I would file this complaint and give some pretty vague reasons why. Once I've filed the complaint, that begins a period called "discovery." This is when the two sides start asking each other questions.

One of the most common ways to obtain information is through Interrogatories, which are written questions. In electronic discovery, you might send to the other side a list of questions, such as: do you use email? What email system do you use? How many users use email?

The second form of discovery are Requests for Production. These are written requests for the production of specific things. For example, you could request that the other side give you all of their backup tapes for the last five years, copies of their software, copies of their source codes, etc. Instead of a request about something, it's a request for something.

The third area of discovery is depositions—where you have the chance to ask a human being questions under oath. In electronic discovery, you may question, or depose, the electronic mail administrator of the other side and ask him or her questions about the email system, how it is used, etc.

So discovery defines a period of time leading up the trial. During that time, you are trying to identify, locate, retrieve, review and produce—to the other side—all of the electronic data that's relevant to the issue being litigated.

We help lawyers determine, early on, what electronic data may be useful and how it might be best reviewed. So we go find the data, wherever it might be. We have software that we've developed where we can load hundreds of different data sets—from mainframes or databases—and loads all this data in a way that's defensible in court.

## What types of cases do you work on?

We work on cases of all types and sizes. The smallest case we're working on right now is trying to determine whether a particular file was originally created on a specific floppy disk or not.

On the high end, we're currently working with a Cray Supercomputer with 54 terabytes of data. That's quite a spread of systems and quite a spread of data sizes. But that's very typical for us. We try to identify potentially relevant information wherever it might be, and retrieve it from those systems. And that requires the ability to understand those old systems and have the right hardware and software and knowledge to do it.

**Once we retrieve data, we then work with the attorneys to analyze and process it into a format in which they can review. And one that not only can they review, but that's defensible—that will stand up under scrutiny in the court of law. For example, if you took an email message and printed it to paper and then reviewed that piece of paper to determine whether or not that email was relevant to a given litigation, you could not defend that process.**

**If you took an email message and printed it to a TIFF or JPG graphic format and reviewed that, you could not defend that process. Electronic data files contain more information than you could ever print to paper or to a graphic image. To defend a process in court, you have to show that you used all of the information available in your decision process. For example, a Microsoft Exchange email has over 1200 data attributes relating to it. You can't ignore those attributes when you're considering whether a particular message is potentially relevant to a litigation matter. So electronic discovery becomes a much broader, deeper area than traditional, paper discovery.**

## Do you feel that email is one of the primary concern areas?

**You bet. The biggest risk areas in electronic discovery are email, backup tapes and distributed data—data sitting out on home machines, desktop computers and laptops.**

**Email is a big risk because of the way people use it. It's an ad hoc, casual communications system, and they don't take the same care in creating email as they do in creating other documents. Backup tapes are very expensive to restore, and you get duplicate data and other problems. Distributed data makes it difficult and expensive to find the data and pull it all together.**

## Give an example of a way of using email that would encourage unwanted litigation risk.

**Not having policies about use. Not educating employees about your expectations about how they should be using the system. Allowing people to store email on their desktops is a dangerous thing, because the cost to collect it is very expensive. So companies should centralize the storage of the email so that it can be searched and obtained more quickly and cost effectively.**

## Have you handled any cases where a corporation was audited for mis-use of customer information?

We've done many of those. We've done jobs where two parties had a joint marketing agreement and shared client lists—and then one accused the other of overstepping the scope of how they could use that list. We've done work on mass marketing sweepstakes and how data was used improperly. We also get hired by groups like the FCC and the FTC—and have done work on pyramid schemes where they get a lot of mailing lists and information and then go out and market to them. Of course you've got to use this kind of process, because it's not in paper. Those people keep costs down with electronically-driven systems. To find out what happened, you've got to go into the system and trace the activity through the whole electronic process.

## To what extent does electronic data complicate litigation? Does it bring back truer verdicts on the whole?

I think it all depends on how well prepared you are to deal with it. Companies today that ignore electronic discovery or pretend that it's going to go away are putting themselves in very dangerous positions. The truth is that our legal system is based on applying law to facts. So in order to apply law to the facts, you have to have the facts. Well where are the facts today? They're in the computer. Did you say that to her? Did you sign that contract? These are all things that are electronic today. Electronic data is resulting in a truer picture of the facts. It leads to a better legal system, I think it leads to a more fair one, and I think it gets more to the truth of what happened.

However, does it complicate things? You bet.

## Does this idea that everything that you do electronically is permanent change notions of accountability?

When people realize that what they do on that keyboard is going to come back and haunt them, you do see a lot more diligence. I always took more care with paper. It's such an ingrained habit that when you put things down on paper, you have to craft it; you have to be careful and think about usage of words. That same care doesn't take place in the electronic environment until people get educated about the fact that their email is discoverable. It also carries over into other systems. Every voice mail system today is a digital file that's discoverable.

==We're in an environment now where smart plaintiff lawyers understand this and realize that companies that are not prepared are easy targets. I've seen this far too often…this abuse of process.== If you're a little company, and I find out that you have 40 people who have all

used email, and you've got laptops and you've got 500 backup tapes going back several years—you're in trouble. Because a lawyer can then craft a request and say that you have to look at those 500 backup tapes. There's $500,000…can you afford that, as a little company? I believe we're seeing a whole class of litigation today of savvy lawyers on the other side who are using this as leverage.

## Through your years of exposure to electronic data, has your attitude as a consumer changed?

As a consumer, knowing what I know, there is no privacy. What you do on the computer gets traced, and it gets traced in a lot of ways. We've done studies on this. We've created several accounts on free electronic mail systems and then don't use them in order to see what happens. With time, you start getting tens and hundreds of emails, because obviously they're sharing that information. The concept of privacy in this environment is very low.

I will also address that from the other side. Legitimate corporations go out of their way to protect this information, because it's their livelihood. We do a lot of work in the healthcare environment. We see companies take dramatic steps—more steps than they have to legally—to protect privacy. The sharing of the information, I find, doesn't come from the most legitimate companies. It's people that are out targeting it…which, in a way, that makes it even more dangerous. Because once these kinds of people get your data, then they spread it all over the place.

Home | About GlobalPOV | About the Editors | How to Participate | Subscribe/Contact Us | Archived Issues | Privacy Policy