# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**IN RE: Seroquel Products Liability Litigation**
**MDL DOCKET NO. 1769**
_____

**This Document Relates to All Cases in Exhibit "A" to Document No. 328**

**ASTRAZENECA'S SUPPLEMENT CHOICE-OF-LAW BRIEFING IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS REGARDING CERTAIN STRICT LIABILITY "DESIGN DEFECT" AND "IMPLIED WARRANTY" CLAIMS**

## I.      INTRODUCTION

AstraZeneca hereby submits this supplemental brief to further address the choice-of-law issues identified in the Court's Order dated August 28, 2007 (Doc. 410) [hereinafter "8/28/07 Order"].[1]  The Court has directed AstraZeneca to (1) identify all transferor courts from which each of these cases were transferred; (2) provide a state-by-state analysis of the choice-of-law rules applicable in each of these transferor districts; and then (3) attach as an exhibit a spreadsheet identifying for each plaintiff certain information identified on page 3 of the Order.

First, the answer to the Court's initial question is that the 3,679 plaintiffs whose claims are subject to the pending Motion originally filed their lawsuits in federal district courts in one of fifteen (15) different jurisdictions:  Alabama, California, the District of Columbia, Illinois, Indiana, Louisiana, Massachusetts, Minnesota, New Jersey, New York, Ohio, Oklahoma,

_____

[1] That Order, and this supplemental brief, relate to AstraZeneca's pending Motion for Judgment on the Pleadings Regarding Strict Liability "Design Defect" and Related "Implied Warranty" Claims Asserted by Plaintiffs in Jurisdictions That Do Not Recognize Those Claims in the Prescription Drug Context (Doc. 328) [hereinafter "Motion"].  AstraZeneca does not believe this filing is governed by Local Rule 3.01, because it is submitted pursuant to the Court's Order of August 28, 2007, requesting state-by-state choice-of-law briefing for 15 different jurisdictions. Nonetheless, AstraZeneca has striven for brevity.

Oregon, South Dakota, and Texas.[2]  The vast majority of these plaintiffs – indeed, 3,367, or 92%

of them – filed their actions in a federal court in Massachusetts.

Second, a closer jurisdiction-by-jurisdiction analysis of threshold choice-of-law issues

confirms AstraZeneca's position that the law of the plaintiffs' state of residency as pled in their

complaints (and confirmed by their PFS responses) properly provides the law governing each of

plaintiff's strict liability design-defect and implied-warranty claims, because that is where these

plaintiffs would have been prescribed Seroquel, ingested Seroquel, and then suffered their

claimed injuries allegedly caused by Seroquel.[3]  Those are the most critical factors in this Court's

choice-of-law analysis under each choice-of-law regime discussed below.

In fact, courts in prescription drug mass-tort actions involving plaintiffs from many states

– including MDL courts – have repeatedly concluded that each plaintiff's home state

presumptively provides the governing substantive law on tort claims "by virtue of each state

being where the plaintiffs reside, and, therefore, the states in which the plaintiffs were prescribed

[the drug at issue], where the plaintiffs ingested [the drug], and where the alleged injuries

occurred."  *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. 450, 456, 457-58 (E.D. La. 2006); *In re

Norplant Contraceptive Prods. Liab. Litig.*, 215 F. Supp. 2d 795, 803-811 (E.D. Tex. 2002)

(using the place of the plaintiffs' surgical implantation as a proxy for determining what law

applied to plaintiffs' products liability claims in MDL involving prescription contraceptive); *see*

---

[2] *See* Exhibit A hereto ("Exh. A"), column C.

[3] Indeed, many plaintiffs allege that they resided in a given state "at all pertinent times."  *See*,
*e.g.*, Complaints, ¶ 1, in *Haas v. AstraZeneca Pharms. LP* (Docket No. 6:2007cv00442) and
*Horton v. AstraZeneca Pharms. LP* (Docket No. 6:2007cv00403).  Other plaintiffs merely plead
their state of residency and no other facts specific to that plaintiff.  *See*, *e.g.*, Complaint, ¶ 2,
*Aaron v. AstraZeneca LP* (6:2007cv01846).

*also In re Baycol Prods. Liab. Litig.*, 218 F.R.D. 197, 207 (D. Minn. 2003) (determining that each plaintiff's state of residence would provide the governing law in putative class-action litigation involving a prescription drug for cholesterol); *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 70-71 (S.D.N.Y. 2002) (resident state of each plaintiff in putative class action presumptively provides the law governing tort claims involving a prescription drug for diabetes).

As demonstrated below, the ultimate result is the same under each choice-of-law regime applicable in the 15 transferor jurisdictions. The law of the place in which the plaintiff resides – and thus where plaintiff was prescribed, took, and was allegedly injured by, Seroquel – provides the underlying substantive law for plaintiffs' challenged claims. This is the result under the "most significant relationship" test of section 145 of the RESTATEMENT (2D) OF CONFLICT OF LAWS (hereinafter "RESTATEMENT"), which is explicitly or effectively applied in 10 of the transferor jurisdictions at issue here. *See* pp. 5-21, *infra*. It is also the result under the "governmental interest" analyses in New Jersey and California. *See*, pp. 21-27, *infra*. And the same is true under the distinct choice-of-law rules applied in Alabama, Louisiana, and Minnesota, the three remaining transferor jurisdictions relevant here. *See* pp. 27-30, *infra*.

Third, as the Court requested, AstraZeneca has attached hereto an exhibit that, for each plaintiff subject to the instant Motion, lists the plaintiff's name, docket number, transferor court, and the state law that AstraZeneca contends should apply to that plaintiff's challenged claims. As to each plaintiff, Exhibit A identifies the state substantive law that should apply, which is also the state of each plaintiff's residency, based on the logical inference that plaintiffs' pleaded state of residency is where they would have taken Seroquel and suffered their alleged injury. If plaintiffs' counsel believe that some other state's law governs these claims, the Court's Order

requires that, by September 26, 2007, they explain the basis for any such contentions and demonstrate which other state's law should instead apply.  *See* 8/28/07 Order, at 3.  Thus, if any plaintiff now purports to have taken Seroquel and been injured in some state other than their pleaded state of residency, any such plaintiff should be identified with particularity in plaintiffs' September 26th supplemental response.[4]  Otherwise, the law of plaintiffs' pleaded state of residency provides the substantive law for the claims challenged in the Motion, regardless of which choice-of-law rules apply in the 15 transferor jurisdictions discussed below.

## II.     DISCUSSION

The following analysis groups the transferor jurisdictions by choice-of-law rule:  (1) the "most significant relationship" test, modeled on the test described in section 145 of the RESTATEMENT, which is explicitly or effectively applied in 10 of these transferor jurisdictions; (2) the "governmental interest" analysis applied in California and New Jersey; and (3) the remaining miscellaneous tests, *i.e.*, Alabama's place-of-injury approach, Louisiana's statutory "interest" analysis, and Minnesota's five-factor "significant contacts" test.  Yet no matter which

---

[4] Consistent with F.R.C.P. 11, plaintiffs' counsel were obligated before filing these complaints to have a good-faith basis in both fact and law to assert the challenged claims.  Yet, as AstraZeneca showed in its merits briefing on this Motion, the challenged claims are not viable in the jurisdictions in which these plaintiffs allege in their complaints that they reside.  If plaintiffs' counsel contend that, in asserting the challenged claims, they relied on any particular plaintiff's supposedly having been prescribed and taken Seroquel and then allegedly injured in some other jurisdiction (even though *no* complaint contains such allegations), then plaintiffs' counsel should identify any such outliers with particularity in their September 26th submission.  Otherwise, the only reasonable inference drawn from plaintiffs' allegations is that their pleaded state of residency is where they were prescribed, ingested, and were allegedly injured by, Seroquel.  Indeed, while this Court may give plaintiffs the benefit of "reasonable inferences" drawn from their complaints' "well-pleaded" factual allegations, *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992), it does not indulge speculative inferences premised on hypothetical facts not pled in their complaints.  *See*, *e.g.*, *Aldana v. Del Monte Fresh, N.A., Inc.*, 416 F.3d 1242, 1248-49 (11th Cir. 2005).

test is applied, the result here should be the same:  the substantive law governing each plaintiff's

strict liability design-defect and implied-warranty claims is the law of plaintiff's pleaded state of

residency, where he or she was prescribed, took, and was allegedly injured by, Seroquel.

> **A.** **Under The "Most Significant Relationship" Test Applied In Ten Of The Transferor Jurisdictions, The Law Of The Plaintiff's State Of Residence Governs The Claims Challenged By AstraZeneca's Pending Motion**

Ten of the transferor jurisdictions implicated by AstraZeneca's Motion – Illinois, Indiana,

Massachusetts, New York, Ohio, Oklahoma, Oregon, South Dakota, Texas, and the District of

Columbia – apply some form of the "most significant relationship" choice-of-law test, modeled

after or influenced by the multi-factor analysis delineated in section 145 of the RESTATEMENT.

As shown below, applying this choice-of-law analysis to the challenged claims confirms that –

under the RESTATEMENT, as well as the choice-of-law authorities in each of these 10 transferor

jurisdictions – the law of plaintiffs' pleaded state of residency should provide the underlying

substantive law.

> **1.** **The State With The "Most Significant Relationship" To These Strict Liability Design-Defect And Implied-Warranty Claims Is Where The Plaintiffs Reside And, Thus, Where They Ingested And Were Allegedly Injured By Seroquel**

Section 145 of the RESTATEMENT sets forth the choice-of-law considerations applicable to

tort claims.  In relevant part, section 145 provides:

> (1)  The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties . . . .
>
> (2)  Contacts to be taken into account . . . to determine the law applicable to an issue include:
>
>> (a)     the place where the injury occurred,
>> (b)     the place where the conduct causing the injury occurred,

> (c)     the domicile, residence, nationality, place of incorporation and
>         place of business of the parties, and
>
> (d)     the place where the relationship, if any, between the parties is
>         centered.
>
> These contacts are to be evaluated according to their relative importance with
> respect to the particular issue.

RESTATEMENT (2D) OF CONFLICT OF LAWS § 145 (1971); *see also id.* § 6 (setting forth general

background principles for choice-of-law analysis).  Considering each of the "contacts" to be

taken into account, the state with the "most significant relationship" to these plaintiffs'

challenged claims is the jurisdiction in which they reside, and thus, ingested Seroquel and then

suffered their alleged injuries.

First, the "place where the injury occurred" here would necessarily be the state in which

each of these plaintiffs allegedly suffered diabetes or other claimed physical injury after

ingesting Seroquel.  *See Henderson v. Merck & Co.*, 2005 WL 2600220, *1, *7 (E.D. Pa. 2005)

(place of injury is where plaintiff suffered blood clots and heart attack, allegedly as result of

consuming prescription drugs Bextra and Vioxx).  That would be the state in which the plaintiff

allegedly resides – absent some concrete, particularized showing that there is some reason to

doubt the jurisdictional facts pled in plaintiffs' own complaints and then confirmed in their PFS

responses.  *Cf. In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. at 70.

Second, the "place where the conduct causing the injury occurred" also supports

AstraZeneca's choice-of-law analysis.  In the context of the claims at issue, this relevant contact

includes the place where Seroquel was *ingested* by each plaintiff – because, on plaintiffs' theory

of the case, they would not have suffered their alleged injury had they not ingested Seroquel.

*Dean v. Eli Lilly & Co.*, 2007 WL 1589496, *4 (D.D.C. 2007) ("the conduct causing the injuries

occurred in Massachusetts, where the mother purchased and ingested the drug"); *accord In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. at 70 & n.57; *see also In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. at 458 (for choice-of-law analysis in prescription drug context, "the conduct causing the injury" is "the jurisdiction where each plaintiff resided"). Although this contact might also include any of the many places where Seroquel was designed or AstraZeneca made other judgments about the drug, the weight of the contacts allegedly giving rise to the existence of any causal link between Seroquel and plaintiff's claimed injury necessarily occurred in the same place where plaintiff took the drug, *i.e.*, where that plaintiff resides. *See, e.g.*, *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. at 458 (even if defendant drug company's conduct originated in another state, "it was effectuated and felt by every plaintiff in their own home jurisdiction").[5]

Third, as to "the domicile, residence, nationality, place of incorporation and place of business of the parties," Exhibit A sets forth the pleaded state of residency for each plaintiff subject to the pending Motion in column "D." In addition, as the Court knows, AstraZeneca's principal place of business is in Delaware; AstraZeneca Pharmaceuticals LP is a Delaware limited partnership whose partners are citizens of Delaware, New York, and Sweden; and AstraZeneca LP is a Delaware limited partnership whose partners are citizens of Delaware, New

---

[5] When analyzing "the place where the conduct causing the injury occurred," some courts in the prescription drug context have, to a limited extent, considered the various places where the pharmaceutical company conducted certain activities concerning the drug. *See, e.g.*, *In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. at 458. But "after considering the contacts qualitatively," courts have ultimately concluded that the state where plaintiff resided had "a greater interest in applying its laws to protect and provide redress for a citizen" because that is where the plaintiff "was prescribed a drug" and where plaintiff "purchased it, ingested it," and then allegedly "was injured by" the defendant's drug. *Bearden v. Wyeth*, 482 F. Supp. 2d 614, 622 (E.D. Pa. 2006) (under most significant relationship test, the resident state of decedent in drug products liability case provided governing law because it had most significant relationship to plaintiff's claims).

York, New Jersey, and Sweden.

Fourth, the final and critical factor under section 145 – "the place where the relationship, if any, between the parties is centered" – also overwhelmingly supports AstraZeneca's analysis. *See In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. at 458.  Indeed, any relationship between AstraZeneca and each plaintiff is limited to the place where that particular plaintiff was prescribed Seroquel and then ingested the drug.  Given the absence of any pleaded allegations to the contrary, that would be plaintiff's state of residency.  *See also Bearden*, 482 F. Supp. 2d at 620 ("the parties' relationship was centered in decedent's home state, where he purchased, ingested and allegedly was injured by [the drug]"); *accord Henderson*, 2005 WL 26002200, at *7; *Dean*, 2007 WL 1589496, *4.  Assuming this fact was accurately pled by plaintiffs in their complaints (and confirmed in their PFS responses), this final contact would be the state where that particular plaintiff resides.[6]

In sum, consideration of each of section 145's relevant contacts – including most notably the place in which plaintiffs reside and, thus, where they were prescribed, ingested, and were allegedly injured by, Seroquel – demonstrates overwhelmingly that the state with the "most significant relationship" to each plaintiff's challenged products liability claims is the state in which plaintiff resides.  *Cf. In re Vioxx Prods. Liab. Litig.*, 239 F.R.D. at 457-58 (applying factors identical to RESTATEMENT § 145); *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. at 70. While plaintiffs' counsel might contend as to some particular outlier plaintiff that his or her pleaded state of residence is somehow not in fact where that individual was prescribed, ingested,

---

[6] Notably, plaintiffs cannot credibly contend – and do not even appear to contend – that the parties' relationship is centered anywhere other than the place in which each plaintiff was prescribed and then ingested Seroquel.

and was allegedly injured by Seroquel, any such hypothetical *unpled* facts were certainly in the possession of plaintiffs and their counsel *before* these lawsuits were filed.  Hence, any plaintiffs objecting to the foregoing analysis on the ground that their pleaded state of residency is not where they in fact ingested Seroquel and were allegedly injured by Seroquel should be specifically identified by plaintiffs' counsel, and the bases for such contentions proffered to the Court.  Otherwise, the law of plaintiffs' pleaded state of residency should govern under the "most significant relationship" test and RESTATEMENT section 145.  Indeed, as shown below, that is how courts analyze these sorts of issues in each of the 10 transferor jurisdictions in which some variant of the "most significant relationship" test applies.

> **2.    Analysis Of The Transferor Jurisdictions Applying The "Most Significant Relationship" Test Confirms The Correctness of AstraZeneca's Position**

While there may be variations among the state-specific authorities in the 10 transferor jurisdictions that apply their version of the "most significant relationship" test, the result here remains the same under the choice-of-law authorities in Illinois, Indiana, Massachusetts, New York, Ohio, Oklahoma, Oregon, South Dakota, Texas, and the District of Columbia.

*Illinois*:  Illinois explicitly adopted the RESTATEMENT's "most significant relationship" test in *Ingersoll v. Klein*, 262 N.E.2d 593, 596 (Ill. 1970).  Since then, Illinois courts in products liability cases have repeatedly held that the jurisdiction with the most significant relationship to the alleged tort is the plaintiff's state of residency, particularly where that is the place plaintiff suffered the alleged injury.  *See, e.g., Millar-Mintz v. Abbott Laboratories*, 645 N.E.2d 278, 281-82 (Ill. App. Ct. 1994); *Firkin v. U.S. Polychemical Corp.*, 835 F. Supp. 1048, 1050 (N.D. Ill. 1993); *Mahr v. G.D. Searle & Co.*, 390 N.E.2d 1214, 1228-29 (Ill. App. Ct. 1979).  In *Millar-*

*Mintz*, for instance, plaintiffs brought a products liability suit against the pharmaceutical manufacturers of diethylstilbestrol (DES), alleging that ingestion of the drug by plaintiff's mother caused plaintiff's infertility.  Although plaintiff's mother had ingested the drug in New York, the Illinois appellate court held that plaintiff's state of residency, Illinois, provided the governing law under the "most significant relationship" test because it was where the resident plaintiff discovered and suffered the alleged injury.  *Millar-Mintz*, 645 N.E.2d at 282.  Only one plaintiff subject to AstraZeneca's Motion (Pearl White, Docket No. 6:2007cv00996) filed her case in Illinois, and her complaint alleges that she is an Oklahoma resident.[7]  Therefore, Oklahoma's substantive law should govern her claims, in the absence of any allegations (or proffer by plaintiff's counsel) that this plaintiff somehow took Seroquel and suffered her alleged injury in some state other than her home state of Oklahoma.

**Indiana**:  Indiana has not squarely adopted the RESTATEMENT's most significant relationship test, but the Indiana Supreme Court has fashioned a multi-factor test that incorporates the RESTATEMENT's most significant relationship approach.  *See Simon v. U.S.*, 805 N.E.2d 798, 804-05 (Ind. 2004) ("in tort cases Indiana choice-of-law analysis now involves multiple inquiries").  The court first determines whether the laws of the different states at issue are different enough to affect the outcome.  *Id*.  If such a conflict exists, Indiana courts begin with the "presumption" that the law of the place where the tort occurred should govern – under which "the court applies the substantive laws of the state where the last event necessary to make

---

[7] *See* Exh. A at line 2679.  Plaintiff White's complaint includes no allegations giving rise to any inference that she was prescribed, ingested or was injured by Seroquel in any state other than Oklahoma, her pleaded state of residency.

[defendant] liable for the alleged wrong takes place." *Simon*, 805 N.E.2d at 805.[8]  This

presumption may be overcome only if the court concludes that the place of the tort "'bears little

connection' to the legal action" and is "insignificant." *Simon*, 805 N.E.2d at 806 (citation

omitted).  In such a case, Indiana courts then apply a "most significant relationship" test,

analyzing the very factors of RESTATEMENT section 145.  *Id.*

Here, even assuming a true conflict exists, the "law of the place of the tort" under

Indiana's choice-of-law analysis is the place in which each of these plaintiffs ingested Seroquel

and suffered their claimed injury (*i.e.*, diabetes) that was allegedly caused by Seroquel.  *Alli v.

Eli Lilly & Co.*, 854 N.E.2d 372, 375-76, 378 (Ind. App. 2006) (place where plaintiff suffered

"injury" provides the "place of the tort" for strict liability claims against prescription drug

manufacturers).  As in *Alli*, that would be the state of plaintiffs' residency.  In *Alli*, the plaintiff

sued the defendant pharmaceutical company alleging that her husband's suicide was caused by

his ingestion of the prescription drug Prozac.  *Id.* at 375.  Plaintiff and her husband resided in

Michigan, and the decedent allegedly was prescribed, ingested, and injured by the drug in

Michigan.  *Id.* at 375-76.  Plaintiff argued that the law of Indiana, the state of defendant's

corporate headquarters, should apply – in an effort to circumvent application of Michigan law

under which plaintiffs claims would fail – but the court held that Michigan law clearly applied

under Indiana's choice-of-law analysis.  *Id.* at 376-80.  That is, plaintiff could not overcome

---

[8] As a general matter in Indiana, the place where the tort occurred – *i.e.*, "where the last event
necessary to make [defendant] liable occurred" – provides the underlying tort law, because "in 'a
large number of cases, the place of the tort will be significant and the place with the most
contacts.'"  *Alli v. Eli Lilly and Co.*, 854 N.E.2d at 378 (citation omitted).

Indiana's presumption that the law of the place of the tort applies, given that Michigan was where the plaintiff resided, ingested the drug, and was allegedly injured.  *Id*. at 379-80.[9]

Similarly here, under Indiana choice-of-law analysis, the two plaintiffs who filed their challenged claims in Indiana federal court cannot overcome the presumption that the place in which they reside, took Seroquel and suffered their alleged injury provides the substantive law here.[10]  Moreover, as discussed above, consideration of the factors underlying the "most significant relationship" test only confirms the correctness of AstraZeneca's analysis.  *See* pp. 5-9, *supra*.  Finally, any effort by plaintiffs to rely on Indiana's "public policy exception" here would fail for the same reason a similar effort failed in *Alli*.  *See* 854 N.E.2d at 379-80 (rejecting plaintiff's argument that it violates Indiana public policy "to deny liability under Michigan law when Indiana law might permit it"; "[t]here is nothing immoral, unnatural, unjust or prejudicial to the general interests of the citizens of Indiana" in applying another state's law that exempts "drug manufacturers" from certain product liability claims).

*Massachusetts*:  3,367 of the plaintiffs whose claims are challenged by the instant Motion filed their complaints in Massachusetts federal court – even though only three of them allegedly reside in that state.[11]  As to the remaining plaintiffs, none allege to have had any

---

[9] *See also In re Propulsid Prods. Liab. Litig*., 208 F.R.D. 133, 142-43 (E.D. La. 2002) (under Illinois choice-of-law analysis, products liability claims against pharmaceutical defendants are governed by the law of the state where plaintiff "ingested" the drug that allegedly injured plaintiff, which "would be the law of the state in which each [plaintiff] resides").

[10] Exh. A. at lines 1088, 1089.

[11] According to their complaints and verified PFSs, these plaintiffs reside in the following jurisdictions:  Alabama (59), California (719), Connecticut (10), District of Columbia (1), Iowa (182), Indiana (75), Kentucky (157), Louisiana (119), Massachusetts (3), Maryland (64), Maine (12), Michigan (77), North Carolina (423), North Dakota (9), New York (8), Ohio (577),

contact whatsoever with Massachusetts and, in fact, none allege to have contacts with any forum other than each plaintiff's respective home state.

While the Massachusetts Supreme Judicial Court (SJC) has not "elected by name any particular choice-of-law doctrine," *Cosme v. Whitin Mach. Works, Inc.*, 632 N.E.2d 832, 834 (Mass. 1994), Massachusetts applies a "functional approach [that] is explicitly guided by the Restatement (Second) of Conflict of Laws." *Kramer v. Acton Toyota*, 2004 WL 2697284, *2 (Mass. Super. 2004). Under Massachusetts' "functional approach," courts weigh "'various choice-influencing considerations'" in determining which state has the most significant relationship to the claims at issue. *Cosme*, 632 N.E.2d at 834 (quoting *Bushkin Assocs., Inc. v. Raytheon Co.*, 473 N.E.2d 662 (Mass. 1985)).

In *Cosme*, for instance, the SJC held that Massachusetts had the "dominant interest" in seeing its law applied in that case because that was where the parties *resided* even though the actual injury underlying the case occurred in another state. *Id.* at 836. As the *Cosme* court emphasized, the state of plaintiffs' residency had an overriding interest in seeing its product liability laws were applied to claims of resident plaintiffs. *Id.*; *see also Kramer*, 2004 WL 2697284, at *2-3 (Massachusetts law applied in a products liability case brought by a Massachusetts resident and involving a product acquired in Massachusetts, even though injury-causing accident occurred in Connecticut, because of the "significant weight" associated with applying the law of the forum where the injured plaintiff resides); *Lou ex rel. Chen v. Otis*

Oklahoma (51), Pennsylvania (69), South Dakota (3), Tennessee (181), Texas (239), Utah (11), Virginia (58), Vermont (13), Washington (246) and Wyoming (1). *See* Exh. A.

*Elevator Co.*, 2004 WL 504697, *4 (Mass. Super. 2004) (applying Massachusetts law to tort

claim of Massachusetts resident injured in China).

Here, under Massachusetts' functional approach to assessing which forum has the

dominant interest, the jurisdiction in which these plaintiffs reside – and thus, where they ingested

Seroquel and were allegedly injured – provides the governing law for these plaintiffs' challenged

claims.[12]  Except for the 3 plaintiffs who allege that they reside in Massachusetts, the challenged

claims of the remaining 3,364 plaintiffs are certainly not governed by Massachusetts law merely

because – despite the absence of any appreciable connection with that forum – plaintiffs' counsel

elected to file the complaints in Massachusetts federal court.  Rather, as explained above, the

jurisdiction with the most significant relationship to these plaintiffs' challenged claims is the

state of plaintiffs' alleged residency, *i.e.*, where they were prescribed, ingested, and sustained

any injury from Seroquel.[13]

*New York*:  Under New York law, courts apply the law of the jurisdiction having "the

most significant contacts with the matter in dispute."  *In re Zyprexa Prods. Liab. Litig.*, 489 F.

Supp. 2d 230, 264 (E.D.N.Y. 2007); *AroChem Int'l Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir.

1992) ("In tort actions, if there is a conflict of laws, New York courts apply an 'interest analysis,'

under which the law of the jurisdiction having the greatest interest in the litigation is applied.");

_____

[12] In fact, most of the conceivably relevant contacts here suggest that the *only* jurisdictions with
any meaningful interest in these plaintiffs' claims are those in which each plaintiff resides.  By
contrast, in *Cosme*, the court analyzed various competing contacts in two jurisdictions –
Connecticut, where the plaintiff worked and sustained work-place injury as a result of an
allegedly defective machine, and Massachusetts, where plaintiff resided and also where the
resident defendant manufactured the allegedly defective machine.  632 N.E.2d at 835.

[13] *See* Exhibit A for plaintiffs whose cases were transferred to this MDL from a Massachusetts
federal court, and the resident states alleged by each of these plaintiffs (which is listed in column
"D" as the laws AstraZeneca contends should apply to each plaintiff's challenged claims).

*see generally Cooney v. Osgood Mach., Inc.*, 612 N.E.2d 277 (N.Y. 1993).  Under New York's approach, "'the significant contacts are, almost exclusively, the parties' domiciles and the locus of the tort.'"  *AroChem Int'l*, 968 F.2d at 270 (quoting *Schultz v. Boy Scouts of America, Inc.*, 480 N.E.2d 679, 684 (N.Y. 1985)).  Moreover, in prescription drug tort actions, "New York courts consider the place where the drug was ingested to be the location of the tort."  *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 70 n.57 (S.D.N.Y. 2002) (citing cases).

Thus, plaintiffs' pleaded state of residency – where they allegedly ingested Seroquel – provides the underlying substantive law for plaintiffs' challenged claims under New York's choice-of-law analysis.  Indeed, in *In re Rezulin Prods. Liab. Litig.*, the U.S. District Court for the Southern District of New York applied these choice-of-law principles in a putative class action against a prescription drug manufacturer, specifically in the course of determining which state law provides "the standard governing strict liability claims against pharmaceutical manufacturers."  210 F.R.D. at 70.  As the court concluded, "liability questions" on strict liability claims "presumptively will be governed by the law of the states in which particular members of [the litigation] reside."  *Id.*  Rejecting the suggestion that the drug manufacturer's "home state" should provide the governing law, the court reasoned that the state in which each plaintiff resides has the overriding interest in seeing that "the standards [it] sets for product sales within its borders are complied with" and that its products liability law applies to claims of state residents. *Id.* at 70-71.

This Court should likewise conclude that, under New York's choice-of-law regime, the law of the state in which each plaintiff resides provides the governing substantive law for the challenged claims asserted by each of the 29 plaintiffs who filed their cases in federal court in

New York.[14]  For instance, plaintiff Jeremy J. Veal (Docket No. 6:2007cv00695) filed his lawsuit in the Southern District of New York, but alleged that he resides in *Alabama* and pled no facts suggesting any connection between himself or his claims and any other state, including New York.  The reason for the absence of such allegations was confirmed by plaintiff Veal's PFS responses, which provide that he resides in Alabama, where he was prescribed and took Seroquel and then allegedly suffered and was diagnosed with diabetes.  Consistent with the analysis of the Southern District of New York in *Rezulin* – the same district court where this plaintiff filed his complaint – Mr. Veal's home state, Alabama, supplies the substantive law that governs the strict liability claims he purports to assert.  The same result should hold for all plaintiffs that filed in any New York federal court:  the law governing their challenged claims, under New York's choice-of-law analysis, is the law in which each plaintiff resides and ingested the drug.

*Ohio*:  Ohio has explicitly adopted the RESTATEMENT's most significant relationship test. *Morgan v. Biro Mfg. Co., Inc*., 474 N.E.2d 286, 288-90 (Ohio 1984).  In *Morgan*, a products liability action, a Kentucky resident sought recovery from an Ohio manufacturer for an injury that had occurred in Kentucky.  *Id*. at 286-87.  Given that the plaintiff's state of residence and injury coincided, the Ohio Supreme Court readily concluded that Kentucky had the most significant relationship to the tort.  *Id*. at 288-90; *accord White v. Crown Equip. Corp.*, 827 N.E.2d 859, 862-63 (Ohio Ct. App. 2005) (finding Georgia law controlled products liability

_____

[14] *See* Exh. A at lines 1371-1373, 1375, 1377, 1385, 1400, 1401, 1986, 1988-1990, 1992, 1993, 2853, 3678-3680.

claims of Georgia resident injured in Georgia).[15]  Here, only one plaintiff whose action was transferred to this MDL from an Ohio federal court is subject to the instant Motion – plaintiff Lawrence Bacchus (Docket No. 6:2007cv0052), who alleges he is an Ohio resident.[16]  Clearly, Ohio law should apply to his challenged claims.

*Oklahoma*:  Oklahoma has also expressly adopted the RESTATEMENT's most significant relationship test.  *Brickner v. Gooden*, 525 P.2d 632, 637-38 (Okl. 1974).  In *Brickner*, the Oklahoma Supreme Court considered personal injury tort claims by Oklahoma resident plaintiffs involved in an air crash in Mexico.  *Id*. at 633-34.  Notwithstanding the site of the crash, the court found that plaintiffs' *resident* state, Oklahoma, had the most significant relationship to the tort.  *Id*. at 638.  In the products liability context, courts applying Oklahoma's choice-of-law analysis likewise apply the law of plaintiff's state of residence despite any "mere fortuity" of a tortious occurrence in another jurisdiction.  *Patten v. General Motors Corp., Chevrolet Motor Division*, 699 F. Supp. 1500, 1509 (W.D. Okla. 1987).  Where, as here, the place of plaintiff's residence and alleged injury predictably coincide, such courts have not hesitated to apply that jurisdiction's substantive law.  *See, e.g., Moody v. Ford Motor Co.*, 2006 WL 346433, *2-*3 (N.D. Okla. 2006).  The challenged claims of the 37 plaintiffs who filed their complaints in

---

[15] The only Ohio case addressing choice-of-law issues in the prescription drug context involved the distinct scenario in which plaintiff was allegedly injured many years later by her mother's ingestion of a morning sickness pill and, thus, plaintiff's domicile at the time of suit was less significant to the choice-of-law analysis.  *See In re Bendectin Litig.*, 857 F.2d 290, 305 (6th Cir. 1988).

[16] *See* Exh. A at 2589.

Oklahoma federal court, all of whom allegedly reside in Oklahoma, should undoubtedly be governed by Oklahoma substantive law.[17]

*Oregon*:  Oregon too has explicitly adopted the RESTATEMENT's most significant relationship test.  *Myers v. Cessna Aircraft Corp.*, 553 P.2d 355, 361 366 (Or. 1976).  In *Myers*, the Oregon Supreme Court considered the wrongful death and products liability claims, including "strict liability" claims, of an Oregon plaintiff against a Washington corporation for an aircraft accident that occurred in British Columbia.  *Id*.  The *Myers* court held that plaintiff's resident state of Oregon had the most significant relationship to the tort, given the less significant and "entirely fortuitous" location of the injury.  *Id*. at 367.  Thus, once again, where the place of plaintiff's residence and alleged injury predictably coincide, Oregon courts would apply that jurisdiction's substantive law to govern tort claims.  *See, e.g.*, *Western Helicopter Servs., Inc. v. Rogerson Aircraft Corp.*, 728 F. Supp. 1506, 1511-12 (D. Or. 1990).  The one plaintiff who filed her case in Oregon federal court (Patricia Cook, Docket No. 6:2007cv00521) should have the law of her resident state, California, provide the substantive law.[18]

*South Dakota*:  South Dakota has also explicitly adopted the RESTATEMENT's most significant relationship test.  *Burhenn v. Dennis Supply Co.*, 685 N.W.2d 778, 784-85 (S.D. 2004).  In *Burhenn*, the court considered a tort claim, brought by a plaintiff residing in South Dakota, arising from an injury sustained in Canada, allegedly caused by an Iowa resident company.  *Id*.  Applying the RESTATEMENT section 145's factors, the court found that, notwithstanding the disparate contacts, the plaintiff's resident state had the most significant

---

[17] *See* Exh. A at lines 2680-2716.

[18] *See* Exh. A at 791.

interest and therefore supplied the substantive law.  *Id.*  As explained above, analysis of

RESTATEMENT section 145's factors supports AstraZeneca's choice-of-law argument.  *See* pp. 5-

9, *supra*.  Thus, under South Dakota's choice-of-law analysis, the challenged claims of the one

plaintiff whose case was transferred from South Dakota federal court (Hector Segura, Docket

No. 6:2007cv01660) should be governed by the law of South Dakota, where that plaintiff

resides.[19]

   ***Texas*:**  Texas has expressly adopted the RESTATEMENT's most significant relationship

test.  *Gutierrez v. Collins*, 583 S.W.2d 312, 318-19 (Tex. 1979).  In *Vasquez v. Bridgestone/

Firestone, Inc.*, 325 F.3d 665 (5th Cir. 2003), the Fifth Circuit applied Texas's choice-of-law

rules and determined that the plaintiff's residence and place of injury in Mexico indicated that

Mexico had a more significant relationship to plaintiff's defective products claim than the forum

state of Texas.  *Id.* at 673-74.  In the mass tort context, the choice of law analysis of the *Norplant*

MDL court is instructive.  *See In re Norplant Contraceptive Prods. Liab. Litig.*, 215 F. Supp. 2d

795, 799-805 (E.D. Tex. 2002).  In resolving a motion for partial summary judgment based on

the learned intermediary doctrine as to thousands of plaintiffs' claims, the MDL court analyzed

disparate choice-of-law doctrines.  *Id.*  To harmonize the various potentially applicable laws, the

court effectively adopted the place of surgical implantation as a proxy for determining state

substantive law.  *Id.* at 804, 811.  Similarly here, the plaintiffs' pleaded state of residency

provides a sensible proxy for where they would have taken Seroquel and then suffered their

alleged injury, particularly given the absence of any well-pleaded facts giving rise to any

reasonable inference that plaintiffs ingested or were injured by Seroquel in any other state.

---

[19] *See* Exh. A at line 2854.

Hence, the challenged claims of the 68 plaintiffs whose actions were transferred to this MDL by Texas federal courts should be governed by the law of each plaintiff's home state.[20]

   ***District of Columbia***:  The District of Columbia has fashioned what it calls a "modified governmental interest" approach to govern choice-of-law analysis, but that analysis is largely based upon section 145 of the RESTATEMENT.  *Lakie v. SmithKline Beecham*, 965 F. Supp. 49, 58-59 (D.D.C. 1997) (citing cases).  So, while the test is identified as a form of governmental interest analysis, it is actually tantamount to the most significant relationship test under section 145 of the RESTATEMENT.  *Id.*  Indeed, when applying this test, courts in the District of Columbia consider the factors set forth in section 145 when assessing "which jurisdiction's policy would be most advanced by having its law applied."  *Lakie*, 965 F. Supp. at 59 (internal quotations and citation omitted); *see also Dean v. Eli Lilly & Co.*, 2007 WL 1589496, *4 (D.D.C. 2007) (applying RESTATEMENT § 145's factors).  In *Lakie*, for example, the plaintiff brought suit in the District of Columbia although she resided – and she allegedly purchased, used, and was injured by the allegedly defective denture adhesive – in Virginia.  965 F. Supp. at 59.  The *Lakie* court found that the relevant section 145 factors indicated that Virginia had the strongest interest in having its law apply to the case, and also that Virginia does not recognize the doctrine of strict products liability; thus, the court granted summary judgment as to plaintiff's strict liability claim. *Id.*[21]  Similarly, this Court in applying the same choice-of-law analysis should conclude that the home state of the 7 plaintiffs whose actions were transferred to this MDL by the federal court in

---

[20] *See* Exh. A at lines 1086, 1248, 1250, 2597, 2598, 2678, 2799, 2800, 3280-3336, 3340-3342.

[21] The *Lakie* court refused, however, to dismiss plaintiff's breach of warranty claim.  965 F. Supp. at 59.  Thus, AstraZeneca has not sought judgment on the pleadings with respect to implied warranty claims to which Virginia law applies.

the District of Columbia has the greatest interest, and thus provides the substantive state law, as to each plaintiff's strict liability design-defect and implied-warranty claims here.[22]

\* \* \*

In sum, none of the relevant transferor jurisdictions that have adopted any version of the "most significant relationship" test would apply any law other than that of the state of plaintiffs' residency, where the plaintiff obtained and used the allegedly defective product and then claims to have suffered injury allegedly caused by the defendant's product.  Plaintiffs' counsel may have elected for some reason to file most of these cases in federal courts located in states having no appreciable connection to the plaintiffs' claims, but that does not justify the application of the substantive law of the transferor jurisdictions to the challenged claims here.

**B.     Under The "Governmental Interest" Test Applied In New Jersey And California, The Law Of The Plaintiff's State Of Residence Should Govern The Claims At Issue**

In two of the remaining transferor jurisdictions – California and New Jersey – the courts have adopted a "governmental interest" approach to choice-of-law analysis.  Under this approach, the applicable substantive law will also be the law of the plaintiff's residence – given that the state in which the plaintiff used and was injured by defendant's allegedly defective product has the overriding governmental interest in applying its products liability law to claims asserted by resident plaintiffs.

*California*:  When assessing the law governing tort claims, "California courts have tended to apply the law of the place of the injured's domicile" because "that state has the greatest interest" in seeing that its substantive tort law applies.  *Kasel v. Remington Arms Co.*, 101 Cal.

––––––––––––––––––––––––––––

[22] *See* Exh. A at lines 797, 801, 808, 1984, 1987, 3337, and 3339.

Rptr. 314, 330 (Cal. Ct. App. 1972); *accord Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001). California has, however, adopted a three-step "governmental interest test" for choice-of-law analysis. Under the first step, the court identifies the applicable rule of law in each potentially concerned state to determine if it is materially differs from California law. *Zinser*, 253 F.3d at 1187. If the laws are *not* materially different, the court need not further analyze conflicts issues. *Washington Mutual Bank, FA v. Superior Court*, 15 P.3d 1071, 1080 (Cal. 2001). If the court finds that the laws of the implicated jurisdictions are materially different, it must proceed to the second step and determine what interest, if any, each state has in having its law applied to the case. *Zinser*, 253 F.3d at 1187. If each state has an interest in the litigation, and thus an "actual conflict" exists, the court must take the final step and select the law of the state whose interests would be *more impaired* if its law were not applied. *Id.* In evaluating whether and what competing interests are involved, "relevant contacts are not disregarded, but are examined in connection with the analysis of the interests of the involved states in the issues, the character of the tort and the relevant purposes of the tort rules under consideration." *Kasel*, 101 Cal. Rptr. at 328.

Here, as to the first prong of California's choice-of-law analysis, there is no material difference between the underlying substantive law on strict liability design-defect claims of California and that of the five other jurisdictions where plaintiffs who filed their lawsuits in California federal courts allegedly reside.[23] No substantive-law conflict exists as to these claims

---

[23] Exhibit A identifies the following 99 plaintiffs whose cases were transferred to this MDL from California: 1 Alabama resident (Exh. A, line 66); 14 California residents (lines 777-781, 790, 793, 799, 800, 803, 804, 806, 807, 811); 1 Indiana resident (line 1087); 23 Ohio residents (lines 2576, 2592, 2594, 2596, 2599-2606, 2608, 2811, 2613, 2614, 2617, 2619-2622, 2625-2626); 59

because neither California nor the other jurisdictions where plaintiffs allege that they reside

recognize strict liability design-defect claims in the prescription drug context.  *See* AstraZeneca's

opening and reply briefs (Document Nos. 328 & 395).  The absence of any *actual* conflict as to

these claims moots the need to undertake an exhaustive choice-of-law analysis on those claims

for plaintiffs who filed in California.  *Washington Mutual Bank*, 15 P.3d at 1080.[24]

A seminal prescription drug MDL illustrates how California's governmental interest test

operated in a markedly similar context:  *In re Eli Lilly & Co*., 789 F. Supp. 1448, 1449-1454

(S.D. Ind. 1992) (considering product liability claims arising from use of the antidepressant drug

Prozac).  In *In re Eli Lilly & Co.*, the court, in the context of a Rule 12(b)(6) motion seeking

dismissal of plaintiffs' design defect claims, concluded that neither plaintiffs' resident state of

California nor the forum state of Indiana recognized strict liability design-defect claims in the

prescription drug context; therefore, the laws of the two states did not materially differ, and no

actual conflict existed.  *Id*. at 1452 (further noting that, given the lack of conflict, "the motion to

dismiss the strict liability claim is not premature").  Even assuming the laws differed, the court

found that California must have the greater interest in applying its law to the California resident

plaintiffs.  *Id*. at 1454 (noting that plaintiffs allegedly resided and were injured in California).

---

Pennsylvania residents (lines 2777-2785, 2796-2798, 2801-2825, 2827, 2829-2849); and 1
Washington resident (line 3671).

[24] Importantly, the first prong of at least California's choice-of-law analysis *requires* this Court
"to consider" the "substantive issue of whether [the challenged] causes of action are recognized"
in the jurisdictions implicated by the cases transferred to this MDL from transferor courts in
California.  8/28/07 Order, at p. 1.  However, while there is no actual conflict as to the
challenged strict liability design-defect claims, there is a conflict at least as to the cognizability
of implied-warranty claims in Alabama, Indiana, Ohio and Washington (which were not included
in this aspect of AstraZeneca's Motion).

Regardless of which law was applied, the result was the same: plaintiffs' design-defect claims failed. *Id*.

As explained in AstraZeneca's Motion, neither the forum state of California nor any of these plaintiffs' resident states recognize strict liability design-defect claims in the prescription drug context. In the absence of any material conflict, the Court need not pursue the remaining prongs of the governmental interest analysis, and those challenged claims fail regardless.[25] *In re Eli Lilly & Co*., 789 F. Supp. at 1449-1454; *Washington Mutual Bank, FA v. Superior Court*, 15 P.3d at 1080. But even assuming that a material conflict did exist, the law of plaintiffs' *resident* states would apply to plaintiffs' claims. *In re Eli Lilly & Co*., 789 F. Supp. at 1453-54. While California courts have an interest in applying California law, residency continues to be a compelling factor in California governmental interest analysis. *Kasel*, 101 Cal. Rptr. at 327, 328, 330; *Zinser*, 253 F.3d at 1187; *In re Eli Lilly & Co*., 789 F. Supp. at 1454. This is especially true where, as here, plaintiffs' state of residency is also where plaintiffs were allegedly injured, given the absence of any allegations to the contrary. *Kasel*, 101 Cal. Rptr. at 329 (noting that the state of injury has an interest in regulating conduct within its borders); *In re Eli Lilly & Co*., 789 F. Supp. at 1454. Although AstraZeneca is a Delaware limited partnership, no California court has ever applied the law of defendant's place of business when every other relevant contact and interest coincide in a different state. *Cf. Arno v. Club Med Inc.*, 22 F.3d 1464, 1468 (9th Cir. 1994) (considering cases applying law of defendant's place of business only where it coincides with place of injury). Here, given that plaintiffs' pleaded state of residency is where they would

---

[25] The implied warranty claims of plaintiffs residing in California, Ohio, and Pennsylvania – as detailed in AstraZeneca's Motion – also do not present any material conflict with California forum law, and therefore fail.

have ingested and allegedly been injured by Seroquel, the states of residency have the greatest

governmental interest in having their laws apply to the challenged claims asserted by these

plaintiffs under California's choice-of-law rules.  *In re Eli Lilly & Co.*, 789 F. Supp. at 1453-54.

*New Jersey*:  While New Jersey recognizes the RESTATEMENT when determining choice

of law issues, it employs an additional "governmental interest" analysis to determine which

jurisdiction has the greatest interest in the issue(s) in the underlying litigation.  *See In re Vioxx

Prods. Litig. Litig.*, 239 F.R.D. 450, 454-49 (E.D. La. 2006); *Seiderman v. American Inst. for

Mental Studies*, 667 F. Supp. 154, 156 (D.N.J. 1987).  The analysis begins with the proposition

that, in accordance with section 172 of the RESTATEMENT, the site of the conduct and injury

creates a *presumption* as to the applicable law. *Erny v. Estate of Merola*, 792 A.2d 1208, 1215-

16 (2002).  Courts pursue the remainder of the analysis only if the presumption is rebutted.

Here, only one plaintiff (Carlos DiCiolla, Docket No. 6:2007cv10018) filed a case in

New Jersey federal court, but alleged that he resided in California, which is why his claims were

challenged in AstraZeneca's Motion.  *See* Exh. A. at line 792.  It appears, however, that this

plaintiff's action has been dismissed without prejudice, which may moot further analysis at this

time.[26]  But out of an abundance of caution, if this plaintiff's case is reinstated for any reason

before the Court has the opportunity to rule on the instant Motion, AstraZeneca notes that an

"actual conflict" exists between New Jersey and California law, *i.e.*, the challenged claims do not

exist under California law.  Because an actual conflict arises, if the Court were to undertake New

---

[26] Specifically, the docket report for plaintiff DiCiolla's case suggests that his action was
dismissed without prejudice for want of prosecution in February 2007.

Jersey's governmental interest analysis, it would determine the interests each jurisdiction has in

applying its products liability law as to the challenged claims here.  *See Erny*, 792 A.2d at 1216.

This analysis supports AstraZeneca's choice-of-law contentions here, for the same

reasons that the court in *In re Vioxx Prods. Liab. Litig.* concluded that the law of plaintiffs'

pleaded state of residency properly governed the comparable product liability claims asserted

against the pharmaceutical company defendant in that case.  *See* 239 F.R.D. at 454-49.  As in

*Vioxx*, "each plaintiff's home jurisdiction has a stronger interest" in seeing that its product

liability laws apply than any other jurisdiction here.  *Id.* at 456 ("These interests arise by virtue

of each state being the place where the plaintiffs reside and, therefore, the states in which the

plaintiffs were prescribed" and "ingested" defendant's drug and then suffered their "alleged

injuries"); *see also id.* at 457 (concluding that the "interests of the parties" factor "weighs in

favor of applying the laws of each plaintiff's home jurisdiction to his or her respective claims").

In analyzing the final "most important factor under New Jersey's choice-of-law scheme" – the

"competing interests of the states" – the Court considers the same four contact factors outlined in

RESTATEMENT § 145, *see In re Vioxx Prods. Litig. Litig.*, 239 F.R.D. at 457-58, discussed above

(*see* pp. 5-9, *supra*).  As in *Vioxx*, those factors support AstraZeneca's choice-of-law arguments

here.  Indeed, in *Rowe v. Hoffman-La Roche, Inc.*, 917 A.2d 767, 776 (N.J. 2007), the New

Jersey Supreme Court held that the state where plaintiff resided, Michigan, provided the

substantive law governing his strict liability claims against a drug manufacturer.  The court

reasoned that Michigan – plaintiff's state of residency and where he took defendant's drug and

allegedly sustained injuries – was the state with the overriding interest in having its substantive

law applied.  *Id.* ("To allow a life-long Michigan resident who received an FDA-approved drug

in Michigan and alleges injuries sustained in Michigan to by-pass his own state's law and obtain compensation for his injuries in this State's courts completely undercuts Michigan's interests, while overvaluing [New Jersey's] true interest in this litigation.").[27]

* * *

In short, no court applying California or New Jersey's "governmental interest" choice-of-law approaches would conclude that any law should apply other than that of the state where each plaintiff resides, *i.e.*, where they ingested and then were allegedly injured by Seroquel.  *In re Eli Lilly & Co.*, *supra*, 789 F. Supp. 1448 (California); *Rowe*, *supra*, 917 A.2d 767 (New Jersey).

### C.    Under Each Of The Remaining Choice-Of-Law Rules, The Law Of The Plaintiff's State Of Residence Properly Governs The Claims At Issue

The three remaining transferor forums relevant to AstraZeneca's Motion resolve choice-of-law issues as follows:  (1) Alabama uses the place of "injury" approach; (2) Louisiana requires a statutory "interest" analysis; and (3) Minnesota subscribes to a five-factor "significant contacts" test.  As demonstrated below, each of these approaches, in light of the factual predicate of plaintiffs' challenged claims, all produce the same result.

*Alabama*:  Alabama courts "determine the substantive rights of an injured party according to the law of the state where the injury occurred."  *Etheredge v. Genie Indus., Inc.*, 632 So.2d 1324, 1325 (Ala. 1994) (internal quotations and citation omitted).  *Etheredge* involved a products liability claim arising from an allegedly defective lifting device that injured plaintiff in

---

[27] Because plaintiff DiCiolla alleged that he was injured in his home state of California, all meaningful contacts underscore California's, not New Jersey's, overriding interest in the case. Thus, if New Jersey law were applied to plaintiff DiCiolla's claims, it would thwart the policies of the state with the most obvious interest in the lawsuit.  Thus, California law would apply if this case were reinstated.  *See In re Vioxx Prods. Litig. Litig.*, 239 F.R.D. at 457-58.

North Carolina.  *Id*.  As the court concluded without the need for extended analysis, "we look to North Carolina law to determine the substantive rights of the parties."  *Id*.  Alabama law thus applies to the lone plaintiff who filed in Alabama federal court, Gloria Grayson (Docket No. 6:2007cv00135), who pled that she is an *Alabama* resident, and (as confirmed by her PFS response) was prescribed, ingested, and allegedly injured by Seroquel in *Alabama*.

 *Louisiana*:  Louisiana has a statutory choice-of-law regime that applies a statutory "interest" analysis test similar to the RESTATEMENT section 145.  *See generally In re Vioxx*, 478 F. Supp. 2d 897,  905-06 (E.D. La. 2007).  Article 3545 of the Louisiana Civil Code expressly addresses choice-of-law questions in the products liability context:

> [Tort] liability for injury caused by a product, as well as damages, whether compensatory, special, or punitive, are governed by the law of [Louisiana]: (1) when the injury was sustained in this state by a person domiciled or residing in this state; or (2) when the product was manufactured, produced, or acquired in this state and caused the injury either in this state or in another state to a person domiciled in this state.

LA. CIV. CODE ANN. art. 3542.  Thus, Louisiana law applies to the claims of Louisiana residents injured in that state.  Only two plaintiffs subject to AstraZeneca's Motion filed their claims in Louisiana:  Frederic Charles Becker (Docket No. 6:2006cv01022), and Linda Mae Sonnier (Docket No. 6:2006cv01019).  Both allege they are Louisiana residents, and both expressly pled their claims under Louisiana statutory law.  Moreover, their PFS responses confirm that each is a Louisiana resident who allegedly ingested Seroquel and diagnosed with diabetes in Louisiana.  Because Article 3545 of the Louisiana Civil Code mandates that Louisiana law applies when the

alleged injury was sustained by Louisiana resident in the state, Louisiana substantive law should apply to plaintiffs Becker and Sonnier.[28]

*Minnesota*:  Minnesota applies its own "significant contacts" test consisting of the following five "choice-influencing factors":  (1) predictability of results; (2) maintenance of interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's government interest; and (5) application of the better rule of law.  *Nodak Mut. Ins. Co. v. American Family Mut. Ins. Co.*, 604 N.W.2d 91, 94 (Minn. 2000).  Under these factors, as applied by courts under Minnesota's choice-of-law regime, the law of the plaintiffs' state of residency properly governs the claims challenged by AstraZeneca's Motion.  *See*, *e.g.*, *In re Baycol Prods. Litig.*, 218 F.R.D. 197, 202, 207 (D. Minn. 2003) (concluding under Minnesota's five-part analysis that "strict products liability (design defect)" and "implied warranty" claims against prescription drug manufacturer are governed by "the state law in which the plaintiff lives and in which the injury occurred").  "The first and third factors, predictability of results and simplification of judicial task, have generally not been applied in tort cases."  *Id*. at 207 (citing cases).  Likewise, Minnesota courts have "not placed any emphasis" for almost 20 years on the fifth factor, *i.e*., application of the better rule of law.  *Id*.; *accord Nodak Mut. Ins. Co.*, 604 N.W.2d at 96-97.  Thus, modern Minnesota choice-of-law analysis in tort actions rests primarily on maintaining "interstate order" and advancing the forum's "governmental interests"; the former favors the state with the most significant contacts to the litigation, while the latter favors the place of injury.  *See In re Baycol Prods. Litig*, 218 F.R.D. at 207.

---

[28] *See* Exh. A at lines 1370 and 1376.

Applying Minnesota's choice-of-law analysis to a putative class of potentially 900,000 users of a prescription drug, the *Baycol* MDL court determined that each plaintiff's residence would provide the controlling substantive law.  *Id*.  The court reached this conclusion by presuming that the drug "was prescribed and ingested in the state of the plaintiff's residence, and the alleged injury occurred in the state of the plaintiff's residence."  *Id*.  Accordingly, the *Baycol* MDL court concluded that both relevant factors – maintenance of interstate order, and advancement of the forum's government interest – clearly favored applying the law of plaintiffs' states of residence.  *Id*.  The court then held that "in the event of a conflict, the law of the state in which the plaintiff resides will govern the claim."  *Id*.

Likewise here, the challenged strict liability design-defect and implied-warranty claims asserted by the 60 plaintiffs who filed their claims in Minnesota federal court should be governed by the laws of plaintiffs' pleaded states of residency, which would be where they allegedly took Seroquel and then suffered their claimed injury.[29]  In the absence of any extraordinary showing that any of these plaintiffs took Seroquel and suffered their alleged injuries in some state other than their pleaded states of residency, the law of plaintiffs' home jurisdictions properly provides the governing substantive law on the challenged claims here, just as it did in the *Baycol* MDL.

\* \* \*

In sum, plaintiffs' states of residency – as alleged in their complaints (and then verified by their PFS responses) – should provide the governing substantive law as to the claims challenged by AstraZeneca's Motion.  As other courts have reasoned in mass-tort actions against

---

[29] *See* Exh. A at lines 62, 63, 794, 798, 827, 328, 1246, 1249, 1374, 1378-1380, 1383, 1389-1399, 1402, 1467, 1468, 1557-59, 1985, 1991, 2011, 2012, 2593, 2595, 2607, 2612, 2615, 2616, 2618, 2623, 2624, 2795, 2826, 2828, 3036-3040, 3338, 3354, 3413-3415, and 3429.

pharmaceutical companies, the plaintiff's home state is overwhelmingly, and thus presumptively, the place in which the plaintiff was prescribed the drug, ingested the drug, and was allegedly injured by the drug.  *See In re Rezulin*, *supra*, 210 F.R.D. at 70; *In re Baycol*, *supra*, 218 F.R.D. at 207; *In re Vioxx*, *supra*, 239 F.R.D. at 456.  Here, the only reasonable inference that can be drawn from plaintiffs' well-pleaded allegations in their complaints is that their pleaded states of residency is where they were prescribed, ingested, and allegedly injured by, Seroquel. Moreover, analysis of each jurisdiction's choice-of-law rules leads invariably to the conclusion that – in light of plaintiffs' allegations in their complaints – the law of each plaintiff's resident state should govern his or her claims challenged by AstraZeneca's Motion.

This result is consistent across the board because, in a product defect case where all claims hinge on allegations that plaintiff was prescribed, ingested, and then was allegedly injured by a prescription drug, the state where these events occurred is overwhelmingly the state where each plaintiff resides.  That is, based on plaintiffs' own allegations – and in the absence of any allegations to the contrary, or any proffer from plaintiffs' counsel as to any specifically identified plaintiff – this Court has no basis but to conclude that the jurisdiction where each plaintiff claims to reside is the state where these most significant contacts occurred, and thus would also be the state that has the most compelling governmental interest in providing the underlying law.

## III.    CONCLUSION

For the foregoing reasons, AstraZeneca respectfully submits that the substantive law governing each of the strict liability design-defect and implied-warranty claims asserted by the 3,679 plaintiffs at issue should be the law of plaintiffs' state of residency – as pled in their complaints – because that is presumptively where each plaintiff was prescribed Seroquel, took

Seroquel, and was allegedly injured by Seroquel.  Before filing complaints asserting the challenged claims, plaintiffs' counsel were obligated under Rule 11 to determine that there was a good-faith basis in both fact and law for the claims they were asserting.  Hence, if plaintiffs' counsel are aware of any specific facts that make any of these plaintiffs unique – facts revealing that some state other than their pleaded state of residency is where any plaintiff was prescribed, ingested, and was then allegedly injured by Seroquel, even though no such facts are pled in plaintiffs' complaints – then counsel should identify those plaintiffs and extraordinary facts in their September 26th responsive submission.  In the absence of such a showing, this Court should follow the lead of numerous other MDL courts and conclude that the plaintiffs' challenged claims are governed by the law of plaintiffs' pleaded state of residency.

DATED:  September 12, 2007                    Respectfully submitted,

                                             */s/ Fred T. Magaziner*
                                             Fred T. Magaziner
                                             DECHERT LLP
                                             2929 Arch Street
                                             Philadelphia, PA  19103
                                             Telephone: (215) 994-4000
                                             Facsimile: (215) 994-2222
                                             fred.magaziner@dechert.com

                                             Steven B. Weisburd
                                             Gretchen S. Sween
                                             Eliot J. Walker
                                             DECHERT LLP
                                             300 West 6th Street, Suite 1850
                                             Austin, TX  78701
                                             Telephone: (512) 394-3000
                                             Facsimile: (512) 394-3001
                                             *Counsel for AstraZeneca Pharmaceuticals LP
                                             and AstraZeneca LP*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on September 12, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system through which all participating parties are deemed served.  I further certify that, by using the CM/ECF, the foregoing has been served on plaintiffs' liaison counsel, who is charged with serving any non-CM/ECF participants on the attached Service List.

*/s/ Gretchen S. Sween*

SERVICE LIST

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No. 1769**

| | |
|---|---|
| Scott Allen<br>Cruse, Scott, Henderson & Allen, L.L.P.<br>2777 Allen Parkway, 7th Floor<br>Houston, TX 77019<br>Tel: (713) 650-6600<br>sallen@crusescott.com | Robert L. Ciotti<br>Carlton Fields, P.A.<br>42212 W. Boy Scout Blvd., Suite 1000<br>Tampa, FL 33607-5736<br>Tel: (813) 223-7000<br>rciotti@carltonfields.com<br>tpaecf@cfdom.net<br>atravis@carltonfields.com<br>*Counsel for Defendants AstraZeneca*<br>*Pharmaceuticals, L.P, and AstraZeneca LP* |
| Mary B. Cotton<br>John D. Giddens, P.A.<br>P.O. Box 22546<br>Jackson, MS 39225-2546<br>Tel: (601) 355-2022<br>betsy@law-inc.com | Michael Davis<br>James Mizgala<br>Sidley Austin LLP<br>Bank One Plaza<br>One South Dearborn St.<br>Chicago, IL 60603<br>Tel: (312) 853-7731<br>mdavis@sidley.com<br>jmizgala@sidley.com |
| Aaron K. Dickey<br>Goldenberg and Heller, PC<br>P.O. Box 959<br>2227 S. State Route 157<br>Edwardsville, IL 62025<br>Tel: (618) 650-7107<br>aaron@ghalaw.com | Heidi Elizabeth Hilgendorff<br>Thomas Campion<br>Drinker Biddle & Reath, LLP<br>500 Campus Dr.<br>Florham Park, NJ 07932-1047<br>Tel: (973) 360-1100<br>thomas.campion@dbr.com<br>heidi.hilgendorff@dbr.com<br>jeffrey.peck@dbr.com<br>*Counsel for Defendants Janssen*<br>*Pharmaceutical Products and Johnson &*<br>*Johnson Co.* |

| John J. Driscoll | Kenneth T. Fibich |
|---|---|
| Brown & Crouppen, PC<br>720 Olive St., Suite 1800<br>St. Louis, MO 63101<br>Tel: (314) 421-0216<br>jdriscoll@brownandcrouppen.com<br>bsmith@brownandcrouppen.com<br>rbrooks@brownandcrouppen.com<br>blape@brownandcrouppen. com | Fibich, Hampton & Leebron, LLP<br>1401 McKinney St., Suite 1800<br>Five Houston Center Houston, TX 77010<br>Tel: (713) 751-0025<br>tfibich@fhl-law.com |
| Gregory P. Forney<br>Shaffer, Lombardo & Shurin<br>911 Main St., Suite 2000<br>Kansas City, MO 64105<br>Tel: (816) 931-0500<br>gforney@sls-law.com<br>rbish@sls-law.com<br>*Counsel for Defendant, Marguerite Devon French* | Todd S. Hageman<br>Simon and Passanante, PC<br>701 Market St., Suite 1450<br>St. Louis, MO 63101<br>Tel: (314) 241-2929<br>thageman@spstl-law.com |
| W. Todd Harvey<br>Joe R. Whatley, Jr.<br>2323 2nd Ave. N<br>Birmingham, AL 35203-0647<br>Tel: (205) 328-9576<br>tharvey@whatleydrake.com<br>j whatley@whatleydrake. com<br>ecf@whatleydrake.com | Jona R. Hefner<br>3441 W. Memorial, Suite 4<br>Oklahoma, OK 73134-7000<br>Tel: (405) 286-3000<br>attorneyokc@hotmail.com<br>attorneyokc@gmail.com |

| | |
|---|---|
| Lawrence J. Gornick<br>William A. Levin<br>Dennis J. Canty<br>Levin Simses Kaiser & Gornick, LLP<br>44 Montgomery St., 36th Floor<br>San Francisco, CA 94104<br>Tel: (415) 646-7160<br>lgornick@lskg-law.com<br>dcanty@lskg-law.com<br>llsimes@levins-law.com<br>jkaiser@lskg-law.com<br>echarley@lskg-law. com<br>ddecarli@lskg-law.com<br>bsund@lskg-law.com<br>astavrakaras@lskg-law.com | Scott Burdine<br>Hagans Burdine Montgomery<br>Rustay & Winchester, P.C.<br>3200 Travis, 4th Floor<br>Houston, TX 77006<br>Tel: (713) 222-2700<br>sburdine@hagans-law.com |
| Thomas Campion<br>Heidi E. Hilgendorff<br>Drinker Biddle & Reath, LLP<br>500 Campus Dr.<br>Florham Park, NJ 07932-1047<br>Tel: (973) 360-1100<br>thomas.campion@dbr.com<br>heidi.hilgendorff@dbr.com<br>jeffrey.peck@dbr.com<br>*Counsel for Defendants Janssen*<br>*Pharmaceutical Products and Johnson &*<br>*Johnson Co.* | Jona R. Hefner<br>3441 W. Memorial, Suite 4<br>Oklahoma, OK 73134-7000<br>Tel: (405) 286-3000<br>attorneyokc@hotmail.com<br>attorneyokc@gmail.com |
| Keith M. Jensen<br>Jensen, Belew & Gonzalez, PLLC<br>1024 North Main<br>Fort Worth, TX 76106<br>Tel: (817) 334-0762<br>kj@kjensenlaw.com<br>kjensenlaw@gmail.com | Aaron C. Johnson<br>Summers & Johnson<br>717 Thomas<br>Weston, MO 64098<br>Tel: (816) 640-9940<br>aaron@summersandjohnson.com<br>firm@summersandjohnson.com |
| Jamie R. Kendall<br>301 Massachusetts Ave.<br>Indianapolis, IN 46204<br>Tel: 317-633-8787<br>jkendall@price-law.com<br>eamos@price-law.com | Mark A. Koehn<br>whrfrat42@yahoo.com |

| | |
|---|---|
| Benjamin A. Krass<br>Law Offices of Matthew F. Pawa, P.C.<br>1280 Centre St., Suite 230<br>Newton Centre, MA 02459<br>Tel: (617) 641-9550<br>bkrass@pawalaw.com | D. Andrew List<br>Clark Perdue Arnold & Scott<br>471 East Broad St., Suite 1400<br>Columbus, OH 43215<br>Tel: 877-220-2203<br>alist@cpaslaw.com |
| Matthew E. Lundy<br>Lundy & Davis<br>333 N. Sam Houston Pkwy., E<br>Suite 375<br>Houston, TX 77060<br>Tel: (281) 272-0797<br>mlundy@lundydavis.com<br>jdibbley@lundydavis.com | David P. Matthews<br>Abraham, Watkins, Nichols, Sorrels,<br>Matthews & Friend<br>800 Commerce St.<br>Houston, TX 77002-1776<br>Tel: (713) 222-7211<br>dmatthews@abrahamwatkins.com<br>agoff@abrahamwatkins.com<br>jrhoades@abrahamwatkins. com<br>j webster@abrahamwatkins. com |
| James Mizgala<br>Sidley Austin LLP<br>Bank One Plaza<br>One South Dearborn St.<br>Chicago, IL 60603<br>Tel: (312) 853-7731<br>mdavis@sidley.com<br>jmizgala@sidley.com<br>lmodaff@sidley.com<br>efilingnotice@sidley.com<br>*Counsel for Defendants AstraZeneca LP*<br>*and AstraZeneca Pharmaceuticals LP* | Howard Nations<br>Howard L. Nations Attorney At Law<br>4515 Yoakum Blvd.<br>Houston, TX 77006-5895<br>Tel: (713) 807-8400<br>nations@howardnations.com<br>lori@howardnations.com<br>kim@howardnations.com<br>andrea@howardnations.com<br>charles@howardnations.com<br>lezzlie@howardnations.com |
| Matthew F. Pawa<br>Law Offices of Matthew F. Pawa, P.C.<br>1280 Centre St., Suite 230<br>Newton Centre, MA 02459<br>Tel: (617) 641-9550<br>mp@pawalaw.com | Paul J. Pennock<br>Michael E. Pederson<br>Weitz & Luxenburg, P.C.<br>180 Maiden Lane – 17th Floor<br>New York, NY 10038<br>Tel: (212) 558-5500<br>Ppennock@weitzlux.com<br>Lschutlz@weitzlux.com<br>MPederson@weitzlux.com<br>JOrelli@weitzlux.com<br>*Plaintiff's Lead Counsel* |

| | |
|---|---|
| Carlos A. Prietto, III<br>Robinson Calcagnie & Robinson<br>620 Newport Center-Drive<br>7th Floor<br>Newport Beach, CA 92660<br>Tel: 940-720-1288<br>cbregman@rcrlaw.net<br>cprietto@rcrlaw.net<br>ctakanabe@rcrlaw.net<br>kschaeffer@rcelaw.net | Fred T. Magaziner<br>Marjorie Shickman<br>A. Elizabeth Balakhani<br>Shane T. Prince<br>Eben S. Flaster<br>Stephen J. McConnell<br>Brennen Joseph Torregrossa<br>Dechert, LLP<br>2929 Arch St., Cira Center<br>Philadelphia, PA 19104-2808<br>Tel: (215) 994-4000<br>Fred.magaziner@dechert.com<br>Marjorie.shiekman@dechert.com<br>shane.prince@dechert.com<br>cheryl.inwek@dechert.com<br>Eben.flster@dechert.com<br>elizabeth.balakhani@dechert.com<br>michelle.kirscEh@dechert.com<br>*Counsel for Defendant Astrazeneca*<br>*Pharmaceuticals, LP* |
| William N. Riley<br>Jamie R. Kendall<br>301 Massachusetts Ave.<br>Indianapolis, IN 46204<br>Tel: 317-633-8787<br>wriley@price-law.com<br>eamos@price-law.com | Mark P. Robinson, Jr.<br>Robinson Calcagnie & Robinson<br>620 Newport Center Dr., 7th Floor<br>Newport Beach, CA 92660<br>Tel: (949) 720-1288<br>mrobinson@robinson-pilaw.com<br>mrobinson@rcrlaw.net |
| Larry Roth<br>Law Offices of Larry M. Roth, P.A.<br>P.O. Box 547637<br>Orlando, FL 32854-7637<br>Tel: (407) 872-2239<br>lroth@roth-law.com<br>lcarrington@roth-law.com<br>epoit@roth-law.com<br>*Plaintiffs' Liaison Counsel* | Lizy Santiago<br>Abraham, Watkins, Nichols, Sorrels,<br>Matthews & Friend<br>800 Commerce St.<br>Houston, TX 77002-1776<br>Tel: (713) 222-7211<br>lsantiago@thematthewslawfirm.com<br>msalazar@thematthewslawfirm.com<br>lsantiago@abrahamwatkins.com |

| Robert A. Schwartz<br>Bailey & Galyen<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Tel: (281) 335-7744<br>bschwartz@galyen.com<br>anixon@galyen.com | Kenneth W. Smith<br>Aylstock Witkin Kreis & Overholtz<br>803 North Palafox St.<br>Pennsacola, FL 32501<br>Tel: (850) 916-7450<br>ksmith@awkolaw.com<br>kws6619@msn.com<br>rvasquez@awkolaw. com |
| --- | --- |
| Brennen Joseph Torregrossa<br>Dechert, LLP<br>2929 Arch St., Cira Center<br>Philadelphia, PA 19104-2808<br>Tel: (215) 994-4000<br>brennen.torregrosssa@dechert.com<br>*Counsel for Defendant Astrazeneca Pharmaceuticals, LP* | Ted C. Wacker<br>Robinson Calcagnie & Robinson<br>620 Newport Center Dr., 7th Floor<br>Newport Beach, CA 92660<br>Tel: (949) 720-1288<br>twacker@rcrlaw.net |
| W. Todd Harvey<br>Joe R. Whatley, Jr.<br>2323 2nd Ave. N<br>Birmingham, AL 35203-0647<br>Tel: (205) 328-9576<br>tharvey@whatleydrake.com<br>jwhatley@whatleydrake.com<br>ecf@whatleydrake.com | Justin Witkin<br>Ken Smith<br>Aylstock, Witkin & Sasser, PLC<br>4400 Bayou Blvd., Suite 58<br>Pensacola, FL 32503<br>Tel: (850) 916-7450<br>Jwitkins@AWS-LAW.COM<br>ablankenship@aws-law.com<br>aburrus@aws-law.com<br>asmith@aws-law.com<br>ksmith@aws-law.com<br>noverholtz@aws-law.com<br>jsafe@aws-law.com |

## NON-ECF SERVICE LIST

| Bridget Ahmann<br>Faegre & Benson, LLP<br>90 S. 7th St., Ste 2200<br>Minneapolis, MN 55402-3901 | Timothy Reese Balducci<br>The Langston Law Firm, P.A.<br>P.O. Box 787<br>100 South Main St.<br>Booneville, MS 38829<br>Tel: (662) 728-3138<br>tbalducci@langstonlaw.com |
| --- | --- |

| | |
|---|---|
| Kenneth W. Bean<br>Sandberg, Phoenix & von Gontard<br>One City Centre<br>15th Floor<br>St. Louis, MO 63101-1880<br>Tel: (314) 231-3332<br>kbean@spvg.com | Earl Francis Carriveau<br>1012 6th Ave.<br>Lake Charles, LA 70601-4706 |
| Robert F. Clarke<br>Phillips & Associates<br>3030 North Third St., Ste 1100<br>Phoenix, AZ 85012 | Patricia Cook |
| Cannon Curlee | Mark W. Davis<br>Davis & Feder, P.A.<br>P.O. Drawer 6829<br>Gulfport, MS 39506-7018 |
| Warren Frazier | James J. Freebery<br>McCarter & English, LLP<br>18th Floor<br>919 N. Market St.<br>Wilmington, DE 19801 |
| Michael T. Gallagher<br>The Gallagher Law Firm<br>2905 Sackett St.<br>Houston, TX 77098 | Gary Reed Gober<br>200 Fourth Ave. North<br>Suite 700<br>Nashville, TN 37219 |
| Richard D. Hailey<br>Ramey & Hailey<br>3891 Eagle Creek Pkwy.<br>Suite C<br>Indianapolis, IN 46254-2600 | Jason Matthew Hatfield<br>Lundy & Davis, LLP<br>300 North College Ave.<br>Suite 309<br>Fayetteville, AR 72701 |
| John Hawkins<br>Janssen, L.P.<br>Drinker Biddle & Reath LLP<br>500 Campus Drive<br>Florham Park, NJ 07932-1047 | Donna Higdon<br>Johnson & Johnson<br>Drinker Biddle & Reath LLP<br>500 Campus Drive<br>Florham Park, NJ 07932-1047 |

| | |
|---|---|
| Krisann C. Kleibacker Lee<br>Faegre & Benson LLP<br>90 S 7th St. Ste. 2200<br>Minneapolis, MN 55402-3901 | Louisiana Wholesale Drug Co. Inc.<br>c/o Gayle R. White<br>Registered Agent<br>Highway 167N<br>Sunset, LA 70584 |
| Salvatore M. Machi<br>Ted Machi & Associates PC<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Tel: (281) 335-7744 | Stephen J. McConnell<br>Dechert, LLP<br>2929 Arch St., Cira Center<br>Philadelphia, PA 19104-2808 |
| Eric B. Milliken<br>3 Sir Barton Ct.<br>Newark, DE 19702-2033 | Randy Niemeyer<br>15863 Pike 43<br>Bowling Green, MO 63334-2620 |
| Gale D. Pearson<br>Pearson, Randall & Schumacher, PA<br>Fifth Street Towers, Suite 1025<br>100 South 5th Street<br>Minneapolis, MN 55402 | Dale Kent Perdue<br>Clark Perdue Arnold & Scott<br>471 East Broad St., Suite 1400<br>Columbus, OH 43215 |
| Stephen J. Randall<br>Pearson, Randall & Schumacher, PA<br>First Street Towers, Suite 1025<br>100 South 5th Street<br>Minneapolis, MN 55402 | Brenda Rice |
| Evelyn Rodriguez | Robert L. Salim<br>Attorney At Law<br>P.O. Box 2069<br>Natchitoches, LA 71457-2069<br>Tel: (318) 352-5999<br>robertsalim@cp-tel.net |
| Ellen R. Serbin<br>Perona Langer Beck Lallande & Serbin<br>300 San Antonio Dr.<br>Long Beach, CA 90807-0948 | Marjorie Shickman<br>Dechert, LLP<br>2929 Arch St., Cira Center<br>Philadelphia, PA 19104-2808 |

| | |
|---|---|
| Robert H. Shultz<br>Heyl, Royster<br>103 W. Vandalia St.<br>P.O. Box 467<br>Edwardsville, IL 62025 | Robert G. Smith<br>Lorance & Thompson, PC<br>Suite 500<br>2900 N Loop W<br>Houston, TX 77092 |
| Catherine Solomon<br>3100 N.E. 83<br>Gladstone, MO 64119 | Linda S. Svitak<br>Faegre & Benson LLP<br>2200 Wells Fargo Center<br>90 South Seventh St.<br>Minneapolis, MN 55402-3901 |
| Seth S. Webb<br>Brown & Crouppen, P.C.<br>720 Olive St., Suite 1800<br>St. Louis, MO 63101-2302 | Mary J. Wrightinton |