**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

IN RE: Seroquel Products Liability
Litigation
                                        Case No.  6:06-md-1769-Orl-22DAB

_____/

**ORDER**

**I. INTRODUCTION**

This cause comes before the Court for consideration of Plaintiffs' Response in Opposition to AstraZeneca's Motion Requesting Conversion to Dismissal With Prejudice For Failure to Serve Plaintiff Fact Sheet (Doc. 421), filed on August 30, 2007.  Plaintiffs do not oppose any one motion filed by Defendants, but instead generally contest the implementation of the "dismissal with prejudice" provisions of Case Management Order No. 2.  Therefore, because Plaintiffs' response raises important issues with respect to "all cases potentially subject to dismissal with prejudice under Case Management Order No. 2," the Court deems it necessary to address such issues in an order pertaining to all cases currently pending in this MDL.

**II. BACKGROUND**

Case Management Order No. 2 ("CMO-2"), as it existed prior to the Court's amendment on July 19, 2007, provided, in relevant part:

> C.  If AstraZeneca has not received a completed PFS for a plaintiff within 10 days following the due date set forth above, AstraZeneca will send a Notice of Overdue Discovery to plaintiff's counsel identifying the discovery overdue and stating that, unless the plaintiff complies with the Court's discovery orders, the case will be subject to dismissal.
>
> D.  If AstraZeneca has not received a completed PFS within 20 days after serving a plaintiff with a 10-day notice, AstraZeneca may submit to the Court an

> Order dismissing the Complaint without prejudice, using the form attached as Exhibit A to this Order. Plaintiff shall have 10 business days from the date AstraZeneca submits the dismissal order to file a notice certifying that the plaintiff has served upon AstraZeneca and AstraZeneca has received a completed PFS, and attaching appropriate documentation of receipt. If a plaintiff files such a notice, the plaintiff's claims shall not be dismissed. Unless plaintiff has served AstraZeneca with a completed PFS and has moved to vacate the dismissal without prejudice within 60 days after entry of any such Order of Dismissal Without Prejudice, the order will be converted to a Dismissal With Prejudice upon AstraZeneca's motion.

Doc. 129 at 3-4.

Defendants have filed several motions requesting conversion of dismissals without prejudice to dismissals with prejudice pursuant to the CMO-2 procedures outlined above. Thus far, Defendants appear to have complied with all relevant provisions of CMO-2 in seeking such dismissals. Nevertheless, Plaintiffs have filed a response in opposition to the motions, generally challenging the Court's discretion to dismiss cases in this MDL with prejudice for failure to comply with CMO-2.

### III. ANALYSIS

Plaintiffs appear to set forth two main arguments with respect to the dismissal provisions of CMO-2. First, Plaintiffs contest this Court's prior willingness to extend application of CMO-2 to plaintiffs who have served a substantially complete Plaintiff Fact Sheet ("PFS"), but have not yet verified the information contained in the PFS. Second, Plaintiffs maintain that dismissal with prejudice is, in the context of CMO-2, an unduly harsh sanction that merely seeks to punish certain plaintiffs for what amounts to, at most, negligent disregard of a court order. The Court will address each of Plaintiffs' arguments in turn.

#### A. Plaintiff Fact Sheet Verifications

-2-

Plaintiffs argue that dismissal of a plaintiff's case for mere failure to verify a substantially complete PFS that has already been served on Defendants is wholly unwarranted. Doc. 421 at 2-4. Plaintiffs maintain that Defendants are not in any material way prejudiced by the lack of verification, since they are already in possession of the substantive information contained in the PFS itself and can use that information to conduct discovery, regardless of whether it has been verified. *Id*. at 4.

The Court has once before rejected such arguments from Plaintiffs with regard to dismissals without prejudice, and again rejects such arguments here. In doing so, the Court restates the following from one of its prior orders:

> In response to Plaintiff's argument that the service of a signed verification is a purely "ministerial act" for which the Court should award more time, the Court stresses that verification is an essential part of the PFS production process. An unverified PFS is virtually as worthless to Defendants as no PFS at all. As such, the Court deems Defendants' request for dismissal based on Plaintiff's failure to serve a signed PFS verification entirely consistent with the dismissal procedures outlined in Case Management Order No. 2.

Doc. 13, *Julia Arrowood v. AstraZeneca LP, et al.*, MDL Case No. 6:07-cv-14584-ACC-DAB. Therefore, because PFS verifications serve an important role in Defendants' ability to conduct preliminary discovery in this MDL, the Court again declines to entertain Plaintiffs' request that the Court impose lesser sanctions, or no sanctions at all, with respect to their failure to provide Defendants with timely PFS verifications.

**B. Whether Dismissal With Prejudice is a Proper Sanction**

The standard in the Eleventh Circuit with regard to a court's power to dismiss an action with prejudice is "whether there is a 'clear record of delay or willful contempt and a finding that lesser sanctions would not suffice.'" *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985) (quoting *Hildebrand v. Honeywell, Inc.*, 622 F.2d 179, 181 (5th Cir. 1980)). A district court's decision to dismiss a case with prejudice is reviewed for abuse of discretion. *Jones v. Graham*, 709 F.2d 1457, 1458 (11th Cir. 1983).

## **Clear Record of Delay or Willful Contempt**

Plaintiffs contend that there has been no bad faith or willful disregard of CMO-2 in this MDL. Doc. 421 at 6. Much of the delay in providing discovery to Defendants, Plaintiffs assert, can be attributed to a breakdown in communication between attorney and client. *Id*. at 8. In this regard, Plaintiffs inform that some of their clients are no longer receiving communications from counsel due to factors such as a change in mailing address or phone number, an extended absence from home due to medical conditions which require lengthy hospital stays, or general incapacity caused by mental illness. *Id*. Further, Plaintiffs submit that "previously delayed [discovery documents] continue to flow to Defendants" even after certain discovery deadlines have passed. *Id*. at 7. As such, Plaintiffs maintain, any failure to timely provide discovery materials to Defendants "[a]t most…amounts to negligent disregard of the Court's orders." *Id*. at 6.

The Court recognizes the difficulties associated with gathering detailed medical histories from individuals who suffer from certain mental incapacities, and does not, at this time, believe, nor have Defendants shown, that Plaintiffs have intentionally, or in bad faith, withheld important discovery information from Defendants. However, Plaintiffs must recognize, in turn, that this

MDL proceeding presents special challenges to the Court and the parties, who have all been charged with the monumental task of moving several thousands of individual cases through consolidated pretrial proceedings in a timely manner. The Ninth Circuit has recently articulated some of the unique considerations associated with management of MDL proceedings:

> A district judge charged with the responsibility of "just and efficient conduct" of the multiplicity of actions in an MDL proceeding must have discretion to manage them that is commensurate with the task. The task is enormous, for the court must figure out a way to move thousands of cases toward resolution on the merits while at the same time respecting their individuality. The court is also confronted with substantial legal questions, such as, in MDL 1407, FDA issues, *Daubert* motions, questions of joinder and federal jurisdiction, class certification, timeliness of claims, and causation. For it all to work, multidistrict litigation assumes cooperation by counsel and macro-, rather than micro-, judicial management because otherwise, it would be an impossible task for a single district judge to accomplish. Coordination of so many parties and claims requires that a district court be given broad discretion to structure a procedural framework for moving the cases as a whole as well as individually, more so than in an action involving only a few parties and a handful of claims. As the Court of Appeals for the First Circuit put it, a district court must be able to "uncomplicate matters" and counsel must, for their part, "collaborate with the trial judge from the outset in fashioning workable programmatic procedures, and thereafter alert the court in a timely manner as operating experience points up infirmities warranting further judicial attention." *Massaro v. Chesley (In re San Juan Dupont Plaza Hotel Fire Litig.),* 111 F.3d 220, 229 (1st Cir.1997) (internal quotation marks and citations omitted); *see also* Manual For Complex Litigation, § 10 at 7 ("Fair and efficient resolution of complex litigation requires at least that (1) the court exercise early and effective supervision (and, where necessary, control); (2) counsel act cooperatively and professionally; and (3) the judge and counsel collaborate to develop and carry out a comprehensive plan for conduct of pretrial... proceedings.")
>
> * * *
>
> In sum, multidistrict litigation is a special breed of complex litigation where the whole is bigger than the sum of its parts. The district court needs to have broad discretion to administer the proceeding as a whole, which necessarily includes keeping the parts in line. Case management orders are the engine that drives disposition on the merits.

*In re Phenylpropanolamine (PPA) Products Liability Litigation*, 460 F.3d 1217, 1231-1232 (9th Cir. 2006) (footnote omitted). Thus, while Plaintiffs' delay, when viewed in the context of an ordinary case involving only a few parties, might not establish the sort of "clear record of delay" or "willful contempt" necessary to warrant dismissal with prejudice, the special circumstances of this MDL demand a different result.

In this instance, the disputed dismissal provisions of CMO-2 were the result of continued negotiations among counsel for Plaintiffs and Defendants. It is particularly noteworthy that the agreed-upon procedures regarding service of Plaintiff Fact Sheets and other related documents, as well as potential sanctions for failure to comply, were adopted by the Court verbatim from the parties' joint proposed order. *Compare* Attach., Doc. 110 (*Text of Proposed Order Case Management Order No. 2*), *with* Doc. 129 at 3-4 (Case Management Order No. 2, as adopted by the Court). In fact, in the joint motion requesting the Court to adopt proposed CMO-2, the parties intimated that, "CMO 2 reflects both the practicalities and the real life difficulties with these … MDL Plaintiffs, and the parties have addressed both the needs of Plaintiffs, consistent with the requirements of [AstraZeneca] in receiving and being able to process the PFS, all of which is reflected in proposed CMO2." Doc. 110 at 2-3. Therefore, Plaintiffs' current opposition to the sanctions to be imposed for failure to respond to repeated discovery requests carries little weight, and, in fact, belies Plaintiffs' earlier representation to the Court that proposed CMO-2 adequately reflected "both the practicalities and real life difficulties" associated with this MDL.

The Court also notes that CMO-2 provides Plaintiffs several opportunities in which to cure discovery defaults, with each missed opportunity matched by an increasingly severe sanction. In fact, at this critical juncture, Plaintiffs have been provided more than three full months to cure discovery defaults related to service of Plaintiff Fact Sheets and other supporting documents. Further, Plaintiffs' continued efforts to deliver late discovery documents to Defendants are of no avail, since strict adherence to discovery deadlines, especially those deadlines previously agreed upon by all parties, is absolutely essential to the Court's case management efforts. Therefore, in light of this Court's heightened interest in efficient case management, as well as Plaintiffs' prior agreement to the CMO-2 dismissal provisions at issue, and Plaintiffs' repeated failures to provide requested discovery documents to Defendants, the Court finds that Plaintiffs have shown a sufficient "clear record of delay" to warrant further inquiry into the second prong of the test, i.e., whether lesser sanctions would suffice.

### **Whether Lesser Sanctions Would Suffice**

Plaintiffs urge that, in this instance, the Court can, and should, impose the lesser sanction of dismissal without prejudice, because "only the Plaintiffs themselves would be harmed, and their due process rights thwarted" by converting the dismissals to dismissals with prejudice. *Id.* at 8. Plaintiffs further maintain that dismissal without prejudice will achieve the same result as dismissal with prejudice, for "[f]rom the Defendants' perspective, the cases are already terminated." *Id.*

The Court reminds Plaintiffs that less stringent sanctions have already been imposed and have not, in several cases, been adequate to compel compliance with CMO-2. As previously

discussed by the Court, Plaintiffs have had numerous opportunities to comply with Defendants' repeated requests for discovery over the last three months. If lesser sanctions were sufficient, as Plaintiffs urge, Defendants should now be in possession of all, or substantially all, of the discovery documents they requested three months ago. Instead, there are now over 300 cases in which discovery is alleged to be, at best, incomplete, and that are, thus, subject to dismissal with prejudice. The Court further expects the number of cases subject to dismissal with prejudice to increase considerably in the coming weeks, thereby magnifying Plaintiffs' continued failure to meet discovery deadlines.

As a final note, Plaintiffs' argument that dismissal without prejudice will achieve the same result, in Defendants' eyes, as dismissal with prejudice is simply untenable. Defendants have a substantial interest in knowing exactly how many cases they must ultimately defend against, and any case dismissed without prejudice under CMO-2 may eventually be refiled and again become part of this MDL. In this regard, cases that are dismissed without prejudice are not "terminated," as Plaintiffs maintain, but are only perhaps temporarily at bay. In sum, the Court finds that lesser sanctions have not been, and will not be, sufficient to maintain Plaintiffs' compliance with the Plaintiff Fact Sheet production provisions of CMO-2.

## IV. CONCLUSION

Having found both that Plaintiffs have established a clear record of delay and that lesser sanctions will not suffice, it is the Court's firm belief that dismissing certain cases in this MDL with prejudice for failure to heed numerous and repeated requests for discovery is an appropriate

and just sanction.  Accordingly, it is **ORDERED** that all parties shall continue to be governed by the provisions of Case Management Order No. 2 currently in effect.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on September 14, 2007.

Copies furnished to:

Counsel of Record

Unrepresented Party

ANNE C. CONWAY
United States District Judge