**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

IN RE: SEROQUEL PRODUCTS            MDL DOCKET NO:
LIABLITY LITIGATION                 6:06-MDL-1769

_____

**This Document Relates to:** *ALL CASES LISTED ON EXHIBIT "A" TO*
*DEFENDANTS' SUPPLEMENTAL BRIEFING (DOC. 451)*

<u>**PLAINTIFFS' RESPONSE TO ASTRAZENECA'S SUPPLEMENTAL CHOICE-OF-**</u>
<u>**LAW BRIEFING IN SUPPORT OF ITS MOTION FOR PARTIAL JUDGMENT ON**</u>
<u>**THE PLEADINGS REGARDING CERTAIN STRICT LIABILITY "DESIGN**</u>
<u>**DEFECT" AND "IMPLIED WARRANTY" CLAIMS**</u>

Pursuant to this Court's Order signed August 28, 2007 (Doc. 410, hereinafter the

"Order"), Plaintiffs submit this Response to AstraZeneca's Supplemental Choice-Of-Law

Briefing In Support of Its Motion for Partial Judgment on the Pleadings Regarding the Strict

Liability "Design Defect" Claims and "Implied Warranty" Claims.  As a general matter,

before the Court adopts AstraZeneca's hornbook choice-of-law recitations, which arguably

pertain to the above-referenced claims, the Court should first decide whether such piecemeal,

case-specific inquiry is appropriate at this stage of the litigation.  Indeed, issue-splitting at

this point of the litigation, particularly where it addresses a mere fraction of Plaintiffs' claims

in only half of the cases in the MDL, can only serve to complicate matters rather than to

"promot[e] judicial economy and litigant efficiency."  To the extent that the Court determines

to undertake an unwieldy choice-of-law inquiry relative to these two claims—which it should

not—Plaintiffs object to portions of AstraZeneca's supplemental choice-of-law analysis and

application, as further described herein.  Finally, Plaintiffs attach hereto as Exhibit "A" a

spreadsheet of certain Plaintiffs' cases to which Plaintiffs contest the state-of-residence

designations submitted by AstraZeneca. Plaintiffs further object to AstraZeneca's substantive

law designations of all Plaintiffs' cases listed in AstraZeneca's Exhibit "A" for the reasons

stated below.

As a preliminary matter, the Court should note that Plaintiffs do not desire to impede

the resolution of AstraZeneca's Motion for Judgment on the Pleadings ("Motion") for the

sake of delay only; nor do Plaintiffs intend to suggest or imply that the Court would be acting

outside its authority by undertaking the proposed choice-of-law analysis and ruling on

AstraZeneca's Motion.  Plaintiffs simply question the advisability of such undertaking, and

are compelled to inform the Court that the adoption of AstraZeneca's broad-brush choice-of-

law analysis would prejudice Plaintiffs' claims, and hinder, rather than expedite, the efficient

conclusion of this litigation.

## I.
## DISCUSSION

**A.**     **Should The Court Undertake The Piecemeal Choice-Of-Law Analysis Contemplated By AstraZeneca's Motion?**

Since the inception of this litigation, AstraZeneca has consistently advocated a

"bottom-up" rather than "top-down" approach, preferring to work inefficiently from the

specific to the general, contravening the very purpose of centralized pretrial proceedings,

discovery, and case administration in an MDL.   A ready example of this approach is

AstraZeneca's push for case-specific discovery within the confines of the MDL. Yet, before

the Court immerses itself in a convoluted choice-of-law examination—notwithstanding the

oversimplified, blanket choice-of-law approach AstraZeneca advocates—the Court should

carefully evaluate the scope of AstraZeneca's Motion in light of the Court's role as an MDL transferee.

In a nutshell, AstraZeneca's Motion asks the Court to grant it partial judgment as to two claims (out of 10 in the Master Complaint) with respect to 3679 out of approximately 6536 cases (or slightly over 56%) based on the application of nearly 30 different states' substantive laws permutated from 15 transferor jurisdictions' choice-of-law rules.  Added to the mix are the parties' conflicting interpretations of the relevant states' "design defect" and "implied warranty" cases, such disagreement being readily apparent from the Motion and Plaintiffs' Response thereto.  Moreover, even assuming *arguendo* that such case-by-case choice-of-law analysis is warranted at this juncture, Plaintiffs' due process rights demand that some case-specific factual inquiry must be undertaken to determine whether, for example, a given Plaintiff's place of injury coincides with his state of residence in order to determine accurately (and fairly) the substantive law applicable to his or her claims, as further explained below.

Pursuant to 28 U.S.C. § 1407, the Court must consider whether undertaking AstraZeneca's fragmented, case-specific analysis "will be for the convenience of the parties and will promote the just and efficient conduct" of the case.  Obviously, the choice-of-law inquiry that AstraZeneca urges will force the Court's analysis of Plaintiffs' claims to become extremely complex, presenting the picture of Russian Matryoshka dolls where inside each

doll is a smaller doll—every time the Court examines an issue to determine which state's law will apply to that issue, it then finds an issue inside of that issue.[1]

The purpose of multidistrict litigation ("MDL"), however, is to "promote judicial economy and litigant efficiency by allowing the transferee court to preside over matters *common among all cases*."  *In re: Meridia Prods. Liab. Litig.*, 328 F.Supp.2d 791, 798 (N.D. Ohio 2004) (emphasis added); *see In re Phenylpropanolamine Prods. Liab. Litig.*, No. MDL 1407, 2004 WL 2034587, at *2 (W.D. Wash. Sept. 3, 2004) (same).  "Given this function, the transferee court typically does not rule on cumbersome, case-specific legal inquiries."  *In re: Meridia Prods. Liab. Litig.*, 328 F.Supp.2d at 798; *cf. Zicherman v. Korean Air Lines Co.*, 516 U.S. 217, 220 (1996) (noting that the transferee court dealt with "consolidated procedures on *common issues of liability*") (emphasis added); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, MDL No. 1014, 1997 WL 109595, at *2-*3 (E.D. Pa. March 7, 1997) (finding that partial adjudication of summary judgment motions pertaining to certain plaintiffs' state law claims would slow down the MDL process, thereby deferring state law dispositive motions to the transferor courts).  Thus, "making . . . case-specific rulings are neither the purpose, nor the forte, of a court presiding over a multi-district litigation."  *In re Phenylpropanolamine Prods. Liab. Litig.*, 2004 WL 2034587, at *2.  As the United States Court of Appeals for the Ninth Circuit has noted, "there must be some pretrial motions MDL courts are not authorized to rule upon because section 1407(a) does not transfer the case for the conduct of *all* pretrial proceedings, only those that are '*coordinated and consolidated*.'" *In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 102 F.3d 1524, 1543 (9th Cir. 1996)

---

[1]     *See* Christopher G. Stevenson, Note, *Depecage: Embracing Complexity to Resolve Choice-Of-Law Issues*, 37 Ind. L. Rev. 303, 319 (2003).

(emphasis added), *rev'd on other grounds sub nom. Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998) (emphasis added).[2]

The MDL court in *In re Orthopedic Bone Screw Products Liability Litigation* tackled a similar circumstance of a defendant's partially dispositive motions addressing a handful of claims under multiple states' laws, and denied such motions without prejudice to re-filing such motions later in the transferor courts. 1997 WL 109595, at *1. The court noted there were over 4800 plaintiffs in 2008 civil actions then consolidated in the MDL. *Id.* at n.2. The court found that even if it "were to determine that all of the applicable states' substantive law was uniform with respect to a particular issue, granting [the defendant's partial] motions for summary judgment would not effectively advance this litigation or otherwise 'expedite the termination of this litigation' and, therefore, would serve no useful purpose." *Id.* at *2 (quoting *Manual for Complex Litigation* at 51, Part II.21.34). While acknowledging that 28 U.S.C. § 1407 contemplates an MDL transferee court ruling on dispositive motions, the court reasoned:

> In this instance, efficiency would not be promoted if this court were to rule on the instant motions . . . . Rather, this court would be putting itself in the shoes of the transferor courts, whose duty would be to put themselves in the shoes of the state courts in which they sit. To further complicate matters, any ruling on the instant summary judgment motions that might be contested would have to be appealed to the United States Court of Appeals for the Third Circuit which, in turn, would have to put itself in the shoes of numerous state appellate courts in addition to the Supreme Court of Pennsylvania. If all of the

---

2        *Accord In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig.*, MDL 1373, 2004 WL 315148, at *4 n.6 (S.D. Ind. Jan. 2004) ("The proper manner for raising a case-specific motion in the MDL is to file a notice of intent to file the motion upon remand, but striking the motions and requiring Ford to file them again after remand would be wasteful. The plaintiffs shall file their responses to Ford's motions after remand and according to a schedule established by the transferor court.").

motions were appealed, the Third Circuit would have to repeat this task for each of the court's rulings.  The entire process would be an inefficient and daunting endeavor not contemplated by § 1407.

\* \* \*

[T]he transferor court would be better equipped to render a decision in accordance with its forum state's "choice of law" law and, if applicable, its forum state's substantive law should a conflict exist.  Because of the potential variances in law and fact from case to case, any judgment made by this court may subsequently have to be vacated, altered, or refined.  This fragmentary treatment of closely related issues would not be an efficient use of limited judicial resources, which is a major goal of multidistrict litigation consolidation.

*In re Orthopedic Bone Screws Prods. Liab. Litig.*, 1997 WL 109595, at \*2.  The court concludes that it could not and should not be expected to sit in place of scores of transferor courts to make such determinations of law or fact where appropriate, and denied the motions without prejudice to later consideration by the transferor courts.  *Id.* at \*3.[3]

There exist a large number of "global" issues, common to all cases in the MDL, on which the Court may focus and expend its limited resources.  AstraZeneca may file

---

[3]        There exists the additional danger of distorting legislative intent by choosing certain portions of a state's laws to apply to a particular issue.  William H. Allen & Erin A. O'Hara, *Generation Law and Economics of Conflicts of Laws: Baxter's Comparative Impairment and Beyond*, 51 Stan. L. Rev. 1011, 1034-36 (1999); Erin A. O'Hara & Larry E. Ribstein, *From Politics to Efficiency in Choice of Law*, 67 U. Chi. L. Rev. 1151, 1192-93 (2000); Stevenson, *supra* n.1, at 320.  "[L]egislators may enact a given law only because of its expected interaction with a complementary law.  [For example, it would be] inappropriate to apply a state's wrongful death rule without its damage cap, which may have been an important condition on the adoption of the wrongful death statute."  O'Hara & Larry E. Ribstein, *supra* at 1193.  In another example, state A might provide broad recovery for injuries but adopt defenses or immunities to prevent fraudulent claims, which prevents too broad a recovery.  In contrast, state B might permit all injured plaintiffs to sue for compensation, but prohibit direct actions, cap damages, limit negligence per se, and apply a narrow *res ipsa loquitur* doctrine.  *Id.*; Stevenson, *supra* n.1 at 320.  These bundles of law reflect different legislative decisions providing the optimal combination of legal standards deemed appropriate for that state.  *See id.*  Parties should not be permitted to put "together half a donkey and half a camel, and then ride to victory on the synthetic hybrid."  Frederick K. Juenger, *How Do You Rate a Century?*, 37 Williamette L. Rev. 89, 106 (2001) (quoting Brainerd Currie), *cited in* Stevenson, *supra* n.1.

numerous dispositive motions that arguably canvas issues "common among all cases," such as federal preemption, general causation, and challenges to "core" expert witnesses.  In addition, important, complicated document discovery issues related to AstraZeneca's and third-party document production remain to be resolved.  The Court should not be enticed by AstraZeneca's purported efforts to narrow the issues for trial, where such efforts only serve to exponentially compound the already complex legal and administrative issues before the Court.[4]   In sum, the Court should deny AstraZeneca's Motion, at a minimum without prejudice to re-filing in the transferor courts.

**B.**    **Plaintiffs Object To AstraZeneca's Analysis Of Massachusetts's And New York Choice-Of-Law Rules.**

To the extent that the Court proceeds with a choice-of-law analysis applicable to certain Plaintiffs' strict liability design defect and implied warranty claims, Plaintiffs object to AstraZeneca's interpretation of Massachusetts and New York choice of law rules, as follows:

*__Massachusetts:__*    Plaintiffs object to any characterization by AstraZeneca that Massachusetts applies a pure "significant relationship test" or any particular test "by name." Instead, as AstraZeneca occasionally notes, Massachusetts courts take a "functional approach" in determining which states' laws apply to a plaintiff's claims, an approach that "responds to the interests of the parties, the State involved, and the interstate system as a whole."  *Bushkin Ass'n, Inc. v. Raytheon Co.*, 473 N.E.2d 662, 668 (Mass. 1985).  That

---

[4]     For example, in the sister litigation to this MDL, *In re Zyprexa Products Liability Litigation*, Judge Weinstein waited to address choice-of-law issues for the first time in five individual plaintiffs' cases, within a month of their trial setting.  The five cases were originally filed in his court, not transferred from the J.P.M.L., and proceeded to individual, case-specific treatment only after over 10,000 other cases in the MDL had been resolved.  489 F.Supp.2d 230 (E.D.N.Y. 2007).

functional approach is, as AstraZeneca observes, "guided by" the Restatement (Second) of Conflicts of Laws (1971), which incorporates a "most significant relationship" *component* from Restatement § 145, but also includes analysis of other factors, including the policy considerations of Restatement § 6, such as (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability, and uniformity of result, and (g) ease in the determination and application of the law to be applied. *See, e.g., Lupoli v. N. Util. Nat. Gas, Inc.*, 17 Mass.L.Rptr. 708, 2004 WL1195308, at *1 (Mass. Super. Ct. Feb. 11, 2004); *see also Cosme v. Whitin Mach. Works, Inc.*, 632 N.E.2d 832, 834-37 (Mass. 1994). Finally, Section 146 of the Restatement provides that in matters of personal injury, the law of the state where the injury occurred applies unless another state has a more significant relationship to the occurrence under the policies enumerated in Section 6 of the Restatement. *Id.* Any rote application of a "most significant relationship" test as a substitute for Massachusetts choice-of-law doctrine, therefore, shortchanges applicable Massachusetts law.

   <u>***New York:***</u>   AstraZeneca's statement that New York choice-of-law rules apply "the law of the jurisdiction having the most significant contracts with the dispute in matter," is incorrect.  (AstraZeneca's Supp. Choice-of-Law Br. at 14.)  What New York courts actually apply is the so called  "interest analysis," under which "the law of the jurisdiction having the greatest interest in the litigation applies."  *ArcoChem Int'l Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir. 1992) (citing *Babcock v. Jackson*, 191 N.E.2d 279 (1963)).  This "interest analysis"

has long been interpreted to require two separate inquires: "(1) what are the significant contacts and in what jurisdiction are they located, and (2) whether the purpose of the law is to regulate conduct or allocate loss." *Colon v. Multi-Oak Corp.*, 477 F.Supp.2d 620, 625 (S.D.N.Y 2007). What AstraZeneca fails to recognize is that New York cases have long "distinguished between rules regulating conduct and rules governing loss allocation." *ArcoChem Intern. Inc. v. Buirkle*, 968 F.2d 266, 270 (2d Cir. 1992). "Generally, when the laws in conflict are conduct regulating, the law of the [tort] locus jurisdiction applies." *Id.* However when the laws are loss allocating, "the law of the state where at least one of the parties is domiciled generally applies." *Id.* Here AstraZeneca' strict liability and implied warranty claims clearly involve conduct-regulating not loss-allocating-rules of law. *See Richardson v. Michelin North Am., Inc.*, No. 95 Civ. 760, 1998 WL 135804, at *4 (W.D.N.Y. Mar. 18, 1998) (citations omitted); *Sadkin v. Avis Rent A Car System, Inc.*, 224 A.D.2d 303, 638 N.Y.S.2d 435, 436 (App. Div. 1st Dep't 1996) (holding that the plaintiff's strict liability and warranty claims were based on conduct-regulating rules of law); *U.S. v. Brennan*, 938 F.Supp. 1111, 1120 n. 9 (E.D.N.Y.1996) (recognizing that strict liability laws are conduct-regulating). Thus AstraZeneca's focus on "plaintiffs' pleaded state of residency-where they allegedly ingested Seroquel-" as providing the substantive law for Plaintiffs' claims entirely ignores the second prong of the New York choice of law analysis.

Moreover AstraZeneca's contention that in prescription drug cases, New York courts consider the place where the drug was ingested to be the location of the tort, relies solely on a footnote in *In re Rezulin Prods. Liab. Litig.*, 210 F.R.D. 61, 70 n.50 (S.D.N.Y 2002). The *In re Rezulin* court merely relied on earlier decisions for this proposition without doing any

independent analysis. A review of the *Plummer v. Lederle Labs.* case cited by the *In re Rezulin* court shows that this 1987 diversity case involving injury to a relative of an infant prescribed and administered an oral vaccine in California merely followed the now abandoned *lex locus delicti rule* to apply California law, without doing any kind of interest analysis. *See Plummer v. Lederle Labs.,* 819 F.2d 349, 355 (2d Cir. 1987). The other cases cited by the *In re Rezulin* court for the proposition that the place where the drug was ingested is the location of the tort, *Ashley v. Abbott Labs.,* 789 F.Supp. 552, 567-68 (E.D.N.Y. 1992) and *In Re New York City DES,* 238 A.D.2d  172, 173, 655 N.Y.S.2d 520, 521 (1st Dep't 1997) involved did not discuss whether the tort could have been deemed committed where the drug was manufactured---because in DES cases, a major issue is that plaintiffs, for the most part, cannot not determine which manufacturer sold the DES that caused their harm. Thus in DES cases courts cannot analyze the interest of the state where a drug was manufactured in applying its law to hold corporate citizens accountable.  See *Ashley*, 789 F.Supp. at 567-68 (merely stating DES tort "occurred" in New York where drug was taken and worked its effect without analyzing interest of manufacturers' states in applying their tort laws); *In re New York City DES Litig.*, 238 A.D.2d at 173; 655 N.Y.S.2d at 520 (merely following *Ashley* in holding that it would be "improper and presumptuous" to apply New York DES law to Pennsylvania plaintiff when unlike New York, Pennsylvania had not adopted "market share" liability theory).  Thus, these DES cases can be contrasted to other areas of law such as fraud or breach of contract, where a conduct-regulating tort is considered to have occurred, not where the plaintiff's injury occurs, but where the majority of corporate actions occurs and where the misrepresentations are made. *See, e.g., BFI Group Divinio*

10

*Corp. v. JSC Russian Aluminum*, 481 F.Supp.2d 274, 286-87 (S.D.N.Y. 2007) (citing cases); *Saab v. Citibank,* N.A., No. Civ. 6784, 2001 WL 1382577, at *7 (S.D.N.Y. Nov. 7, 2001) ("Since the present case entails conduct-regulating laws and the parties are domiciled in different countries, the locus of tort will be determinative.").   In sum, this Court cannot automatically assume that under New York's choice-of-law analysis, the law in which each Plaintiff resides and ingested the drug will govern.

C.     **Plaintiffs Object To AstraZeneca's Application Of The Various States' Choice-Of-Law Rules.**

Notwithstanding the above choice-of-law analysis, for reasons stated in Section A of this Brief and further expanded upon below, Plaintiffs cannot agree that the substantive law of Plaintiffs' states of residency should apply in every case.   This is especially true, for example, where the applicable choice-of-law rules direct that the place of injury is also a factor to be considered, such as under Massachusetts's choice-of-law rules, and AstraZeneca merely presumes that the state of residency and state of injury are one-in-the-same in every instance.   (*See* AstraZeneca's Supp. Choice-of Law Br. at 14 ("[T]he jurisdiction in which these plaintiffs reside—*and thus*, where they ingested Seroquel and were allegedly injured— provides the governing law for these plaintiffs' challenged claims.") (emphasis added).)   For example, if Plaintiff 1 resides in "State A," but ingested was injured by Seroquel in "State B," his previous state of residence (unbeknownst to AstraZeneca or the Court at this stage of the proceedings), the Court should not dismiss Plaintiff 1's design defect and/or implied warranty claim based upon State A's substantive law, though it very well may do so mistakenly by granting AstraZeneca's Motion.   Absent additional case-specific discovery to determine the place of Plaintiffs' ingestion of the Seroquel medication that harmed them,

11

AstraZeneca's application of the substantive law of the Plaintiffs' residence is presumptive, violates choice-of-law rules, and impinges Plaintiffs' due process rights.

A real life example of the prejudicial effect of AstraZeneca's residency-based choice-of-law designations exists in Case No. 07-16267 with regard to Plaintiff Michael Kesterson. Mr. Kesterson lived in California at the time he filed his lawsuit, a fact reflected in his Complaint, a state where AstraZeneca argues his strict liability design defect and implied warranty claims are barred.  However, Mr. Kesterson's medical and prescription records from his verified fact sheet show that he was prescribed Seroquel and diagnosed with diabetes in Washington, the state in which he previously resided (and currently resides). Plaintiffs argue in their Response to AstraZeneca's Motion that Washington law does not bar a Washington resident's strict liability design defect claim, while AstraZeneca asserts that such a claim is barred.  More importantly, even AstraZeneca admits that Washington law does not bar Plaintiffs' implied warranty claims, but argues that California law does. Therefore, at a minimum under AstraZeneca's choice-of-law analysis, Mr. Kesterson's implied warranty claim may be barred by his unfortunate move from Washington to California, the state in which he lived when he filed his lawsuit, when all of the events giving rise to his claims apparently occurred in Washington, based on the record presently before the Court.

The problems with AstraZeneca's choice-of-law approach are exacerbated by the fact that AstraZeneca moves for dismissal based on the pleadings.  Here, Plaintiffs' respective petitions merely state that they "currently reside in, and are citizens of" various states.  It is on this basis alone that AstraZeneca seeks to assign the law of their state of residency to

Plaintiffs' strict liability design defect and implied warranty claims. This is simply an insufficient record on which to dismiss Plaintiffs' claims. As Plaintiffs argue in their Response to AstraZeneca's Motion, "[b]ecause a judgment on the pleadings is a decision on the merits, courts are reluctant to grant such motions unless it is clear that the merits of the claim can be summarily decided." (Pls.' Response to AstraZeneca's Motion at 2 (citing *Ortega v. Christian*, 85 F.3d 1521, 1524-25 (11th Cir. 1996); *Abbott Labs. v. Nutramax Prods., Inc.*, 844 F.Supp. 443, 445 (N.D. Ill. 1994); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1369).) Of course, in the case of Mr. Kesterson, for example, additional case-specific discovery prior to a decision to dismiss his strict liability design defect and implied warranty claims should help resolve any doubts regarding the situs of his injury and applicable substantive law.

Moreover, by designating across-the-board Plaintiffs' states of residence as the substantive law applicable to the design defect and implied warranty claims, AstraZeneca again shortcuts the choice-of-law analysis by (1) failing, as a prerequisite, to determine whether a "true conflict" actually exists between the forum states' laws (i.e., the transferor courts' respective states) and the laws of other "interested" states (e.g., the states in which the Plaintiffs took Seroquel); and (2) neglecting to examine the interested states' policy concerns, such as the Restatement (Second) of Conflicts of Laws § 6 factors that comprise the Massachusetts choice-of-law doctrine.

First, before undertaking a choice-of-law analysis, the states that may have an interest in seeing their law applied to a particular issue must have conflicting laws. *See, e.g., Cohen v. McDonnell Douglas Corp.*, 450 N.E.2d 581, 584 n.7 (Mass. 1983) ("We note that the usual

first step in applying conflict of law principles is to ascertain whether there is some conflict among the laws of the various States involved . . . 'that the ultimate selection of law will affect the outcome.'").  A "true conflict" is one where the states with interests in the question presented have different laws, and the application of one state's law would conflict with or impair the interests of another state.  AstraZeneca foregoes this step of the analysis in its entirety.

Second, AstraZeneca bypasses any examination of the various interested states' policy competing policy concerns and the protection of Plaintiffs' (and AstraZeneca's) justified expectations, as well as other points of analysis that comprise, for example, Massachusetts's choice-of-law doctrine.  *See Cosme*, 632 N.E.2d at 834-37; Restatement (Second) of Conflicts of Laws (1971).  ***Most importantly, the identity of the "interested" states—for reasons set forth above—is largely unknowable at this stage of the litigation, absent additional case-specific discovery.***

AstraZeneca's Motion should be denied.  In any case, when and if the Court intends to proceed with a choice-of-law determination for each of the Plaintiffs listed in AstraZeneca's Exhibit "A," then additional briefing will be required from the parties to examine properly all the factors that comprise the various states' choice-of-law doctrines, such as that of Massachusetts, as shown above.

**D.** **As Demonstrated By Plaintiffs' Exhibit "A", Plaintiffs Object To Certain Plaintiffs' Residency Designations Submitted By AstraZeneca, And Plaintiffs Object To All Of AstraZeneca's Choice-Of-Substantive-Law Determinations Relative To The Plaintiffs.**

Pursuant to the Order, Plaintiffs attach hereto Exhibit "A," a spreadsheet in the same format as that submitted by AstraZeneca with its Supplemental Briefing, in which Plaintiffs

specifically contest certain state-of-residency designations submitted by AstraZeneca.   In addition, for the foregoing reasons, Plaintiffs hereby object to <u>all</u> AstraZeneca's designations of the substantive law applicable to the strict liability and design defect claims of the Plaintiffs listed on AstraZeneca's Exhibit "A," attached to its Supplemental Briefing, because AstraZeneca has failed to conduct a thorough, constitutionally valid choice-of-law analysis relative to those Plaintiffs, and such examination cannot be fully and accurately completed absent additional case-specific discovery.   Finally, although this issue is not before the Court given the narrow scope of AstraZeneca's Motion, Plaintiffs expressly object to the application of any of AstraZeneca's choice-of-law designations or analysis to any of Plaintiffs' other substantive law claims, or to any procedural law applicable to such claims (such as statutes of limitation), as no opportunity to examine and brief issues beyond the ambit of AstraZeneca's Motion has been afforded the litigants.

## CONCLUSION

For all the foregoing reasons, Defendant's Motion to Dismiss Plaintiffs' strict liability design defect and implied warranty claims should be denied.  If the Court intends to proceed with a choice-of-law determination for each of the Plaintiffs listed in AstraZeneca's Exhibit "A," then additional case-specific discovery relative to the states of Plaintiffs' residency and, most importantly, states where they ingested Seroquel and were injured, and further briefing should be required from the parties to examine all the factors that comprise the applicable choice-of-law doctrine and to weigh the competing states' interests in having their law apply to these claims.

Respectfully submitted this <u>26th</u> day of September, 2007.

/s/ Fletcher V. Trammell
K. Camp Bailey
F. Kenneth Bailey, Jr.
Michael Perrin
Fletcher V. Trammell
Robert W. Cowan
Laurence Tien
Bailey Perrin Bailey LLP
The Lyric Centre
440 Louisiana St., Suite 2100
Houston, Texas 77002
Telephone:     (713) 425-7100
Facsimile:     (713) 425-7101
Email: cbailey@bpblaw.com
Email: kbailey@bpblaw.com
Email: mperrin@bpblaw.com
Email: ftrammell@bpblaw.com
Email: rcowan@bpblaw.com
Email: ltien@bpblaw.com

**Co-Lead Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 26th day of August, 2007, I electronically filed Plaintiffs' Response to AstraZeneca's Supplemental Choice-Of-Law Briefing In Support Of Its Motion for Partial Judgment On The Pleadings Regarding Certain Strict Liability "Design Defect" and "Implied Warranty" Claims with the Clerk of the Court by using the CM/ECF system which will send a Notice of Electronic Filing to the counsel listed on the attached Service List.

/s/ K. Camp Bailey
K. Camp Bailey

SERVICE LIST
In Re: Seroquel Products Liability Litigation
MDL Docket No. 1769

| | |
|---|---|
| Paul J. Pennock, Esq.<br>Michael E. Pederson, Esq.<br>Weitz & Luxenberg, P.C.<br>180 Maiden Lane - 17th Floor<br>New York, NY 10038<br>Telephone:  (212) 558-5500<br>Ppennock@weitzlux.com<br>Mpederson@weitzlux.com | Camp Bailey, Esq.<br>Fletcher Trammell, Esq.<br>Michael W. Perrin, Esq.<br>Bailey Perrin Bailey LLP<br>The Lyric Centre<br>440 Louisiana, Suite 2100<br>Houston, TX  77002<br>Telephone:  (713) 425-7240<br>cbailey@bpblaw.com<br>mperrin@bpblaw.com |
| Larry Roth, Esq.<br>Law Offices of Larry M. Roth, P.A.<br>Post Office Box 547637<br>Orlando, FL  32854-7637<br>Telephone:  (407) 872-2239<br>lroth@roth-law.com | Tommy Fibich, Esq.<br>Fibich, Hampton & Leebron, L.L.P.<br>1401 McKinney, Suite 1800<br>Five Houston Center<br>Houston, TX  77010<br>Telephone:  (713) 751-0025<br><br>tfibich@fhl-law.com |
| Matthew F. Pawa, Esq.<br>Law Offices of Matthew F.Pawa, P.C.<br>1280 Centre St., Suite 230<br>Newton Centre, MA 02459<br>Telephone:  (617) 641-9550<br>Mp@pawalaw.com | John Driscoll, Esq.<br>Brown & Crouppen, PC<br>720 Olive St.<br>St. Louis, MO  63101<br>Telephone:  (314) 421-0216<br>Jdriscoll@brownandcrouppen.com<br>asmith@brownandcrouppen.com<br>blape@brownandcrouppen.com |
| Keith M. Jensen, Esq.<br>Jensen, Belew & Gonzalez, PLLC<br>1024 North Main<br>Fort Worth, TX 76106<br>Telephone:  (817) 334-0762<br>kj@kjensenlaw.com | Scott Allen, Esq.<br>Cruse, Scott, Henderson & Allen, L.L.P.<br>2777 Allen Parkway, 7th Floor<br>Houston, Texas 77019<br>Telephone: (713) 650-6600<br>sallen@crusescott.com |

| | |
|---|---|
| Matthew E. Lundy, Esq.<br>Lundy & Davis, LLP<br>333 North Sam Houston Parkway East<br>Suite 375<br>Houston, TX  77060<br>Telephone:  (281) 272-0797    .<br>mlundy@lundydavis.com | W. Todd Harvey, Esq.<br><br>E. Ashley Cranford, Esq.<br>Whatley Drake & Kallas, LLC<br>2323 2nd Avenue North<br>Birmingham, AL  35203<br>Telephone:  (205) 328-9576<br>THARVEY@whatleydrake.com<br>ecf@whatleydrake.com |
| Lawrence J. Gornick, Esq.<br>William A. Levin, Esq.<br>Dennis J. Canty, Esq.<br>Levin Simes Kaiser & Gornick, LLP<br>44 Montgomery Street<br>36th Floor<br>San Francisco, CA  94104<br>Telephone:  (415) 646-7160<br>lgornick@lskg-law.com<br>dcanty@lskg-law.com<br>**llsimes@levins-law.com**<br>**jkaiser@lskg-law.com**<br>**echarley@lskg-law.com**<br>**ddecarli@lskg-law.com**<br>**bsund@lskg-law.com**<br>**astavrakaras@lskg-law.com** | Gregory P. Forney, Esq.<br>Shaffer Lombardo Shurin<br>911 Main Street, Suite 2000<br>Kansas City, MO 64105<br>Telephone:  (816) 931-0500<br>gforney@sls-law.com<br>rbish@sls-law.com<br>***Attorney for Defendant,***<br>***Marguerite Devon French*** |
| Robert L. Salim, Esq.<br>Robert L. Salim Attorney at Law<br>PO Box 2069<br>Natchitoches, LA 71457-2069<br>Telephone:  (318) 352-5999<br>robertsalim@cp-tel.net | Eric B. Milliken, Esq.<br>3 Sir Barton Ct.<br>Newark, DE 19702<br>***Pro Se*** |

| | |
|---|---|
| Justin Witkin, Esq.<br>Ken Smith, Esq.<br>Aylstock, Witkin & Sasser, PLC<br>4400 Bayou Boulevard, Suite 58<br>Pensacola, FL  32503<br>Telephone:  (850) 916-7450<br>Jwitkin@AWS-LAW.com<br>ablankenship@aws-law.com<br>aburrus@aws-law.com<br>asmith@aws-law.com<br>mailto:jsale@aws-law.comksmith@aws-law.com<br>noverholtz@aws-law.com<br>jsafe@aws-law.com | Louisiana Wholesale Drug Co. Inc.<br>C/O Gayle R. White<br>Registered Agent<br>Highway 167N<br>Sunset, LA 70584<br>*Pro Se* |
| Aaron C. Johnson, Esq.<br>Summers & Johnson<br>717 Thomas<br>Weston, MO 64098<br>Telephone:  (816) 640-9940<br>firm@summersandjohnson.com | Catherine Solomon<br>(current address unknown)<br>*Pro Se* |
| Todd S. Hageman, Esq.<br>Simon and Passanante, PC<br>701 Market St., Suite 1450<br>St. Louis, MO 63101<br>Telephone:  (314) 241-2929<br>thageman@spstl-law.com | Randy Niemeyer<br>22442 Pike 309<br>Bowling Green, MO 63334-5209<br>*Pro Se* |

19

| | |
|---|---|
| Thomas Campion, Esq.<br>Steven M. Selna<br>Heidi E. Hilgendorff, Esq.<br>Drinker Biddle & Reath, LLP<br>500 Campus Drive<br>Florham Park, New Jersey 07932-1047<br>Telephone:  (973) 360-1100<br>tcampion@dbr.com<br>steven.selna@dbr.com<br>heidi.hilgendorff@dbr.com<br><br>***Attorneys for Defendants Janssen Pharmaceutical Products and Johnson & Johnson Co.*** | Mary B. Cotton<br>John D. Giddens, P.A.<br>226 North President Street<br>Post Office Box 22546<br>Jackson, MS 39225-2546<br>(601) 355-2022<br>betsy@law-inc.com |
| Michael Davis, Esq.<br>James Mizgala, Esq.<br>Sidley, Austin, LLP<br>Bank One Plaza<br>One South Dearborn Street<br>Chicago, IL 60603<br>Telephone:  (312) 853-7731<br>mdavis@sidley.com<br>jmizgala@sidley.com<br>***Attorneys for Defendants AstraZeneca LP and AstraZeneca Pharmaceuticals, LP*** | Timothy Reese Balducci, Esq.<br>The Langston Law Firm, PA<br>P.O. Box 787<br>100 South Main Street<br>Booneville, MS 38829-0787<br>Telephone: (662) 728-3138<br>tbalducci@langstonlaw.com |
| Elizabeth Raines, Esq.<br>Baker, Sterchi, Cowden & Rice, LLC<br>2400 Pershing Road, Suite 500<br>Kansas City, MO 64108<br>Telephone:   (816) 471-2121<br>raines@bscr-law.com<br>***Attorney for Defendant AstraZenca, PLC*** | Kenneth W. Bean, Esq.<br>Sandberg, Phoenix & von Gontard<br>One City Centre<br>15th Floor<br>St. Louis, MO 63101-1880<br>Telephone: (314) 231-3332<br>kbean@spvg.com<br>***Attorney for Defendant Dr. Asif Habib*** |

| | |
|---|---|
| Robert L. Ciotti, Esq.<br>Carlton Fields, P.A.<br>4221 W. Boy Scout Boulevard<br>Suite 1000<br>Tampa, FL 33607-5736<br>Telephone: (813) 223-7000<br>rciotti@carltonfields.com<br>***Attorney for Defendants, Astrazeneca***<br>***Pharmaceuticals, LP and Astrazeneca LP*** | Aaron K. Dickey, Esq.<br>Goldenberg and Heller, PC<br>P.O. Box 959<br>2227 S. State Road 157<br>Edwardsville, IL 62025<br>Telephone: (618) 650-7107<br>aaron@ghalaw.com |
| Jona R. Hefner, Esq.<br>3441 W. Memorial, Suite 4<br>Oklahoma City, OK 73134-7000<br>Telephone: (405) 286-3000<br>attorneyokc@hotmail.com | Mark P. Robinson, Jr., Esq.<br>Robinson, Calcagnie & Robinson<br>620 Newport Center Drive, 7th Floor<br>Newport Beach, CA 92660<br>Telephone: (949) 720-1288<br>mrobinson@robinson-pilaw.com |
| David P. Matthews, Esq.<br>Matthews & Associates<br>2905 Sackett<br>Houston, TX 77098<br>Telephone: (713) 222-8080<br>dmatthews@thematthewslawfirm.com<br>lsantiago@thematthewslawfirm.com | Robert A. Schwartz, Esq.<br>Bailey & Galyen<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744<br>bschwartz@galyen.com |
| David Dickens<br>Miller & Associates<br>105 North Alfred Street<br>Alexandria, Virginia 22314-3010<br>(703) 519-8080<br>ddickens@doctoratlaw.com | Howard Nations<br>Lori A. Siler<br>4515 Yoakum Boulevard<br>Houston, TX 77006-5895<br>Telephone: (713) 807-8400<br>nations@howardnations.com |

| | |
|---|---|
| Salvatore M. Machi<br>Ted Machi & Associates, PC<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058 | Scott Burdine, Esq.<br>Hagans Burdine Montgomery<br>Rustay & Winchester, P.C.<br>3200 Travis, Fourth Floor<br>Houston, TX 77006<br>Telephone: (713) 222-2700<br>sburdine@hagans-law.com |
| Pete Schneider, Esq.<br>Grady, Schneider & Newman, L.L.P.<br>801 Congress, 4th Floor<br>Houston, Texas 77002<br>(713) 228-2200<br>pschneider@gsnlaw.com | Lizy Santiago, Esq.<br>Abraham, Watkins, Nichols,<br>Sorrels, Matthews & Friend<br>800 Commerce Street<br>Houston, TX 77002-1776<br>(713) 222-7211<br>lsantiago@abrahamwatkins.com |
| Fred T. Magaziner<br>Marjorie Shiekman<br>A. Elizabeth Balakhani<br>Shane T. Prince<br>Eben S. Flaster<br>DECHERT LLP<br>2929 Arch Street<br>Philadelphia, PA 19103<br>(215) 994-4000<br>fred.magaziner@dechert.com<br>shane.prince@dechert.com<br>marjorie.shiekman@dechert.com<br>eben.flaster@dechert.com<br>elizabeth.balakhani@dechert.com | Lowell Finson<br>Phillips & Associates<br>3030 North 3rd Street<br>Suite 1100<br>Phoenix, AZ 85012<br>(602) 258-8900, ext. 295<br>lowellf@phillipslaw.ws |
| Scott Armstrong<br>1719 West Main Street<br>Suite 201<br>Rapid City, SD 57702<br>(605) 399-3994<br>scottarmstrong1235@eathlink.net | Linda S. Svitak<br>Faegre & Benson, LLP<br>90 South 7th Street, Suite 2200<br>Minneapolis, MN 55402-3901<br>(612)766-7000<br>lsvitak@faegre.com<br>wjohnson@faegre.com |

| | |
|---|---|
| James J. Freebery<br>McCarter & English, LLP<br>919 N. Market Street, 18th Floor<br>Wilmington, DE 19801<br>(973) 622-4444<br>jfreebery@mccarter.com<br>tpearson@mccarter.com | Richard D. Hailey<br>Ramey & Hailey<br>3891 Eagle Creek Parkway<br>Suite C<br>Indianapolis, IN<br>(317) 299-0400<br>rhailey@sprynet.com |
| Gale D. Pearson<br>Stephen J. Randall<br>Pearson, Randall & Schumacher, P.A.<br>Fifth Street Towers, Suite 1025<br>100 South 5th Street<br>Minneapolis, MN 55402<br>(612) 767-7500<br>attorneys@outtech.com | B. Andrew List<br>Clark, Perdue, Arnold & Scott<br>471 East Broad Street, Suite 1400<br>Columbus, OH 43215<br>(614) 469-1400<br>alist@cpaslaw.com<br>lcollins@cpaslaw.com |
| Ellen R. Serbin<br>Perona, Langer, Beck, Lalande & Serbin<br>300 San Antonio Drive<br>Long Beach, CA 90807-0948<br>(562) 426-6155<br>davidhwang@plblaw.com | Robert H. Shultz<br>Heyl, Royster<br>103 West Vandalia Street<br>P.O. Box 467<br>Edwardsville, IL 62025<br>(618) 656-4646<br>rshultz@hrva.com<br>bwallace@hrva.com |
| William N. Riley<br>Jamie R. Kendall<br>Price, Waterhouse & Riley, LLC<br>301 Massachusetts Avenue<br>Indianapolis, IN 46204<br>(317)633-8787<br>eamos@price-law.com | Earl Francis Carriveau<br>1012 6th Avenue<br>Lake Charles, LA 70601-4706 |

| | |
|---|---|
| Michael T. Gallagher<br>The Gallagher Law Firm<br>2905 Sackett Street<br>Houston, TX 77098<br>(713) 222-8080<br>shawnaf@gld-law.com | Stacy K. Hauer<br>Charles S. Zimmerman<br>651 Nicollet Mall, Suite 501<br>Minneapolis, MN 55402<br>(612) 341-0400<br>(800) 755-0098<br>csz@zimmreed.com |
| Buffy Martines<br>Laminack, Pirtle & Martines<br>440 Louisiana, Suite 1250<br>Houston, TX 77002<br>(713) 292-2750<br>buffm@lpm-triallaw.com | |