# Exhibit
# A

1

```
 1                    UNITED STATES DISTRICT COURT
                      MIDDLE DISTRICT OF FLORIDA
 2                         ORLANDO DIVISION

 3              Docket No.6:06-MD-1769-Orl-22DAB

 4   . . . . . . . . . . . . . . ..
     IN RE:                          :
 5   SEROQUEL PRODUCTS LIABILITY   :
     LITIGATION                      :        Orlando, Florida
 6   MDL DOCKET No. 1769             :        September 27, 2007
                                     :        9:00 a.m.
 7   ALL CASES                       :
                                     :
 8   . . . . . . . . . . . . . . .:

 9
                      TRANSCRIPT OF MOTIONS HEARING
10             BEFORE THE HONORABLE ANNE C. CONWAY
                    UNITED STATES DISTRICT JUDGE
11

12   APPEARANCES:

13   For The Plaintiffs:        Larry M. Roth

14                              K. Camp Bailey

15                              Fletch Trammell

16                              Robert Cowan

17   For the Defendant

18   AstraZeneca:               Fred Magaziner

19                              Mark Haddad

20                              Chris Coutroulis

21                              Rebecca Wood

22                              Steven Weisburd

23   Court Reporter:  Sandra K. Tremel

24   Proceedings recorded by mechanical stenography, transcript

25   produced by computer-aided transcription.
```

1   the CBE regulations and the November 2006 letters, both of

2   which are points that the plaintiffs have put weight on in

3   their written opposition.

4        The CBE regulation is the regulation at 21 CFR

5   314.70.  This is the regulation that allows a manufacturer

6   to give the FDA 30 days' notice of a change in labeling

7   that's needed when the company determines that a greater

8   strength in warning is needed.

9        The plaintiffs say that that destroys preemption.

10  The FDA disagrees and has explained why in the final

11  labeling rule and in its briefs.

12       We think it certainly isn't a regulation that has any

13  impact on preemption here, because for the entire period

14  of September 2003 through November 2006, we know that the

15  agency did not believe that the evidence supported warning

16  that there was a causal relationship.  So we know that it

17  would have been pointless, and indeed misbranding, for the

18  company to put on a warning that the agency had concluded

19  was not scientifically substantiated.

20       So the CBE regulation can't serve as a basis for not

21  finding preemption here.

22       Secondly, this November 2006 letter, the plaintiffs

23  point to that letter because they say it shows that the

24  company engaged in promotional activity that was

25  inconsistent with the FDA-approved warning.  Those are

14

1    really apples and oranges, given the way this motion is

2    presented to this Court.

3         Our motion goes to failure to warn and what the

4    standard of the warning is.  What's the benchmark that we

5    were required to provide in terms of a warning.

6         We think that the FDA-approved warnings statement is

7    that benchmark.  That's what we should be held to in terms

8    of the warning we give.

9         Now, if plaintiffs have separate claims that they

10   think they can make about promotional activity that's

11   inconsistent with that, we will deal with those types of

12   claims at another day on another record.

13        But here we're talking about failure to warn.  We're

14   talking about what is the benchmark, what is our duty.  We

15   think that is driven by federal law alone, by the FDA's

16   decision in September 2003, and on that basis, we would

17   ask that the Court grant our motion.

18             THE COURT:  All right.

19             MR. TRAMMELL:  May it please the Court, Fletch

20   Trammell for the plaintiffs arguing in response to

21   defendant's motion.

22        Your Honor, am I allowed time for rebuttal after he

23   rebuts or --

24             THE COURT:  No.  We're doing it like the

25   appellate court does.  They don't ever let you get back

1        For these reasons, Your Honor, we ask you to deny

2   their motion for preemption.

3            THE COURT:   Thank you.

4            MR. HADDAD:   Your Honor, let me begin with a

5   quote from one of the cases that Mr. Trammell relied on at

6   the outset, Medtronic.   It's from page 501 of 518 of the

7   U.S. Reports.

8        There the Court distinguished the Medtronic decision

9   from -- what it said is, it said Medtronic was "unlike a

10  case in which the federal government has weighed the

11  competing interests relevant to the particular requirement

12  in question, reached an unambiguous conclusion about how

13  those competing considerations should be resolved in a

14  particular case or set of cases, and implemented that

15  conclusion via a specific mandate on manufacturers or

16  producers."

17       Now, that is one of the cases they think is their

18  best case.   And we think it illustrates precisely why

19  court after court in this circumstance, where the agency

20  has specifically addressed the risks and made a judgment

21  and implemented it with respect to the manufacturer, is a

22  situation that requires preemption of contradictory state

23  duties.

24       It is why, for example, in this case the distinction

25  that plaintiffs wish to rely on between has the

1   later briefs and preamble, the Court will see what the

2   facts are and what the FDA's experiences are that have

3   changed and evolved in support of its current position.

4        Even in the Chevron case, which applies a level of

5   deference that we don't think the Court remotely has to

6   get to, the Court acknowledged that agencies can change

7   their minds and have use of all of their time and not

8   thereby use even the strongest level of deference, let

9   alone the deference that's required here.

10        With respect to the Bates vs. Dow case that

11   plaintiffs rely so heavily on, that case is completely

12   inapposite here.  First of all, that was in the context of

13   the Federal Insecticide, Fungicide and Rodenticide Act,

14   FIFRA.  That's a statute unlike this one where the states

15   have a concrete designated role to play in the regulation

16   of insecticides, where states can ban certain

17   insecticides, and most significantly, where the federal

18   agency itself, the EPA, had not made an express safety

19   evaluation of the labeling in question.

20        So the Court acknowledges we're not dealing there

21   with a federally directed labeling.  And beyond that, it

22   wasn't even a case where conflict preemption was at issue.

23   There the Court was explicating the meaning of a statutory

24   express preemption provision.

25        So Bates' comments about, well, you know, a

1   distinction between positive law requirements and tort law

2   requirements arise in that very different context of

3   explicating a statutory framework that's totally different

4   from the statutory framework that the Court has to address

5   here.

6       With respect to the Wells case, the 11th Circuit

7   case, that's a case from 1986.  That involves an

8   over-the-counter drug, not a prescription drug.  It does

9   not involve, once again, the agency not only looking at an

10  issue but coming out and deciding what the warning should

11  be.  And it obviously is also well before Geier and the

12  other cases that have followed since.

13      Just to clear up the record on a couple of other

14  issues there, Mr. Trammell is incorrect when he says that

15  there was an enforcement letter that was sent to

16  AstraZeneca about missing words in any labeling after

17  January of 2004.  That's not in the record.  There's no

18  support for that, and it should be disregarded.

19      More fundamentally, though, and just to close here,

20  the critical point in time is September 2003, because

21  that's where the agency establishes what it thinks is the

22  proper warning.  That's where it balances the risks.

23  That's where it comes to a judgment based on all of the

24  data from across the industry, not only from AstraZeneca,

25  but from every other company, and it reaches a judgment.