# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

In Re: Seroquel Products Liability Litigation          Case No.  6:06-Md.-1769-Orl-22
                                                                              DAB

                                                                              MDL Docket No.  1769

THIS DOCUMENT RELATES TO ALL CASES

## MDL PLAINTIFFS' COMBINED MOTION AND MEMORANDUM FOR PROTECTIVE ORDER BARRING DEFENDANTS' SALES REPRESENTATIVES FROM CONTACT WITH TREATING AND PRESCRIBING PHYSICIANS IN DISCOVERY CASES

The MDL Plaintiffs ("Plaintiffs"), by and through their undersigned counsel, hereby move pursuant to M.D.L.R. 3.01(a) for a discovery Protective Order pursuant to Fed.R.Civ.P. 26(c) prohibiting sales representatives of Defendants' ASTRAZENECA PHARMACEUTICALS LP's and ASTRAZENECA LP's (hereinafter collectively "AZ") from any contact, including oral and written communications, with all case-specific treating and prescribing physicians that are candidates for deposition in a discovery grouping (hereinafter "deposition physicians") until after the deposition physicians are selected and, if selected, until after the physician's deposition is taken.

## INTRODUCTION

Plaintiffs have learned through sworn testimony that sales representatives in this litigation may be preparing the prescribing physicians for deposition.  (See infra p. 4.)  Accordingly, this limited discovery Protective Order is imperative, because the case specific discovery process in this MDL has and will result in a large number of  physicians' depositions being taken across the nation

in a short time period and it is improper for the defendants' employees to speak with the witnesses about the relevant issues prior to the depositions taking place.

## DISCUSSION

I.   **A Protective Order Is Necessary to Prevent The Sales Representatives from Inadvertently or Deliberately Influencing The Deposition Physicians.**

It is undeniable that sales representatives play a crucial role in promoting potentially dangerous drugs.[1]  As this Court knows, under the learned intermediary doctrine defendants argue that their duty to warn was, in part, properly discharged by sales representatives "detailing" and informing physicians of any risks associated with a medicine.  *See, e.g., Bodie v. Purdue Pharmaceuticals Co.*, 2007 WL 1577964, at *3 (11th Cir, June 01, 2007) and *Paparo v. Ortho MNeil Pharmaceuticals*, 2007 WL 121149, at *4 (S.D. Fla, January 11, 2007).  Indeed, AZ has  raised the learned intermediary issue in this MDL.   *See*, December 4, 2006 A*nswer, Affirmative and/or Separate Defenses and Demand for Jury Trial of Defendant Astra, USA*, Affirmative Defense No. 10.  If fact, defense counsel have not only repeatedly emphasized the importance of these physician depositions, but have promised the Court that successful summary judgment motions will be based on these depositions, because these depositions will, in the defendants' mind, render the case without "value."

---

[1]*See, e.g.* Rep. Harry A. Waxman. *Memorandum to the Democratic Members of the Government Reform Committee: The marketing of Vioxx to Physicians.*  May 5, 2005.  Committee on Government Reform Minority Office, United States House of Representatives.  Available at:
http://oversight.house.gov/story.asp?ID=848&Issue=Prescription+Drugs.

MR. MAGAZINER:

12  Very importantly, we're going to have to depose the
13  treaters, and most importantly the prescribers, because,
14  as I've explained to the Court before, but it's worth
15  mentioning again I think, the crucial piece of the puzzle
16  in many of these cases is going to be what would the
17  prescriber say when asked under oath, "Would you
18  prescribe Seroquel to this patient, this plaintiff, even
19  if you knew all about the diabetes risk that the
20  plaintiffs say we have withheld information about from the
21  medical community?"
22  Most of these doctors we believe are going to say,
23  "Yes, I would still prescribe Seroquel." The reason we
24  believe they're going to say that is because they are
25  still prescribing Seroquel even in the face of a warning

1  label that's been on it since 2004 that says there's a
2  diabetes risk.
3  These doctors understand that these patients have
4  conditions which if not treated, for many cases or for
5  many plaintiffs, means they cannot function in society,
6  and that doctors have decided that the risk of diabetes is
7  well worth running in order to obtain the benefit of
8  controlling their mental disorders.
9  The law in most states is that if a doctor says,
10  "Yes, I would still have prescribed Seroquel even if I
11  knew then everything I know now," that that case has no
12  value.

See May 22, 2007, Pretrial Conference Transcript In re: Seroquel Products Liability Litigation MDL

Docket No. 1769, at 41:12-25, 42:1-12.

Thus, there are two crucial classes of material witnesses at issue: sales representatives as the

defendant material witnesses on the learned intermediary defense, and the treating/prescribing

physicians as the major non-defendant material witnesses on that issue and the causation issue as

well.  It is thus stunning that at least one sales representative has actually prepared a physician for

deposition.

In Stephens v.  Astrazeneca, LP, et al., Case No. 6:07-cv-15805, the plaintiff's prescriber,

Thomas Wikstrom, M.D., testified:

> 2   **Q   Have you done anything to prepare for this**
> 3   **deposition today?**
> 4   **A   No.  Very little.  I did speak with the Seroquel**
> 5   **rep.  And I just wanted to review what the average weight**
> 6   **gain was in a year if someone was on Seroquel.  And I did**
> 7   **the same with Risperdal, because that's the medicine she's**
> 8   **been on most of the time and continues to be on.**

(See Deposition of Thomas Wikstrom, M.D., September 26, 2007 at 11:2-8.)

Another doctor has also testified that he asked the defendant for materials to prepare for his

deposition and they were provided:

> 22  **Q.  Did you do anything to prepare for**
> 23.  **your deposition today?**
> 24.  **A.  I looked through the records, and**
> 25.  **I also requested some information from**
>
> 1.   **AstraZeneca on literature pertaining to**
> 2.  **hyperglycemia.**
> 3.  **Q.  And when did you make that request?**
> 4.  **A. Subsequent to my being informed**
> 5.  **that there was going to be some deposition**
> 6.  **regarding Ms. Ellerbee.**
> 7.  **Q.   Who did you make the request to?**
> 8.  **A.   To the medical department at**
> 9.  **AstraZeneca.**
> 10.  **Q.  Have you received a response?**
> 11.  **A.   Yes, I have.**

(See Deposition of Steven R. Schneir, M.D., in Ellerbee v. AstraZeneca LP, et al., Case No. 6:07-cv-

13399, September 20, 2007 at 9:22-25, 10:1-11.)

Obviously, these types of events are improper and must be halted.  Relying on the defendant and defense counsel to halt them has not worked.  The undersigned, as co-lead counsel, discussed this issue more than once with defense counsel and was told that the motion was unnecessary because the representatives would not conduct themselves in such manner.  Unfortunately, as expected, the representatives have not been controlled and an order is needed.  To allow unsupervised contact between these two crucial groups of material witnesses in such high pressure litigation, with so much at stake, is unwarranted.  We must prevent scenarios in which a physician only remembers what he has been recently told by the sales representative or has read on company hand-outs and materials given to "educate" the physician on the alleged risks and benefits of Seroquel.

This order is well within this Court's discretion.  *See, e.g.* Federal Judicial Center, Manual for Complex Litigation §10 (4th Ed. 2004) ("[f]air and efficient resolution of complex litigation requires ...the court to exercise early and effective supervision ..."); *Id.* at §22.1 (noting "broad discretion" of district judges "to achieve both fairness and efficiency").  It is important to remember that the sought protective order is merely a discovery order and AZ is not being denied any information necessary to defend this lawsuit.  The Court has "broad discretion to tailor discovery protective orders to the circumstances of a particular litigation" and prohibit AZ sales representatives from contacting the physicians until after the physician is not selected for deposition or, if selected, until after the deposition.  *See, e.g. In re Zyprexa Litig.*., 474 F.Supp.2d 385, 413 (E.D.N.Y. 2007) ("unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders") (citation omitted);  Federal Judicial Center, Manual for Complex

Litigation §11.432  (4th Ed. 2004) ("courts have broad discretion at the discovery stage to decide when a protective order is appropriate and what degree of protection is required").

Seroquel is still on the market.  It seems undeniable that any discussion of Seroquel could have a potential impact on the prescribing physician's memories of what he/she knew during the prescribing decision,  which is the crux of this failure-to-warn litigation.   The same can be said of treating physicians who will be questioned on causation.   Making the situation more volatile is that sales representatives are not just any employees, but they are tortfeasors who downplayed and concealed the serious life-threatening disease and risks associated with Seroquel.  See September 21, 2006 *In re Seroquel Prod. Liability Litig*. Master Complaint at ¶36.   As the sales force who sold the product, the sales representatives are the actors who are at the heart of Plaintiffs' failure to warn claim and it is hard to believe that the sales force would not be under pressure from AZ to continue to portray Seroquel in a good light.   Thus, each time the sales force visits, buys lunches for or otherwise curries favor with the witnesses in these cases, there is not only a *risk* of improper witness influence, but a virtual *certainty* of it.   Indeed, the very purpose of these massive and highly experienced sales forces is to influence physicians, and they go to great lengths.   There are countless examples of egregious conduct in this and other litigations.   Most recently in this litigation, we discovered in a sales representative's call note that he was doing *gardening* at a physician's office. He actually showed up with flower pots and began planting flowers in front of the doctor's office and noted with pleasure that the doctor saw him.   This is what we are confronting in these cases and

this is why the material witnesses and defendant tortfeasors should not meet or speak prior to deposition.[2]

Courts do exercise their inherent power to issue a protective order to ensure that the witness testimony is not unduly influenced by out-of-court discussions. *See, e.g. In re Levine*, 101 B.R. 260, 262 (D. Colo. 1989) (non-party or party may be sequestered "for cause" in a deposition, especially in situations were fraud is alleged). Courts allow protective orders in all kinds of cases when necessary to protect the interests of the parties. *Joseph v. Entergy,* 918 So.2d 47, 49 (La.App. Court., 4th Cir. 2005) (contempt proceedings in situation where third party defendant barred from contacting third party plaintiff outside a formal setting such as a deposition or judicial forum); *Murata Mfg. Co v. Bel Fuse Inc.,* 2004 WL 1194740, at * *3, 4-6 D.Ill. 2004) (upholding protective order to prevent plaintiff from discussing litigation with defendants' customers, who plaintiff allegedly wanted to depose); *Long Island Lighting Co. v. Allianz Underwriters Ins. Co.*, 771 N.Y.S.2d 123, 124 (N.Y. App. Div, 1st Dep't 2004) (upholding protective order that, inter alia, prohibited parties from unilaterally initiating contact with non-party former employee witnesses prior to depositions to avoid the appearance of impropriety or tactical advantage from ex parte communications while establishing a procedure to allow defendants to contact ex-employees); *Canadian American Oil Co. v. NLRB*, 82 F.3d 469, 474 (D.D.C. 1996) (noting that court could have issued protective order restricting union officials' contact with employee witnesses).

---

[2]It is worth noting that the right of Plaintiffs' counsel to *ex parte* interviews with Plaintiffs' physicians is recognized in all jurisdictions. *See, e.g. In re Vioxx Liability Litig. No. MDL 1657*, 230 F.R.D. 473, 475-478 (E.D.2005) (explaining why Plaintiffs' counsel must be allowed *ex parte* interviews. Also, unlike the sales representatives, Plaintiffs' attorneys have taken an oath to abide strict rules of professional conduct and face severe punishment for ethical violations.

## II.    **A Protective Order in this Case Will Not Violate Defendants' Limited First Amendment Right to Free Commercial Speech.**

Any argument that Defendants might make, as they have during "meet and confers", that a protective order preventing sales representatives from having business contact with the deposition physicians would violate Defendants' First Amendment rights to free commercial speech is simply not supported by law.

### A.    **Commercial Free Speech Cases Are Inapposite To The Motion Before The Court.**

First Amendment commercial free speech cases generally do not involve situations where pending litigation exists between the parties.  Instead, such cases involve situations where the commercial entity challenges the constitutionality of regulations or statutes that completely ban or regulate promotional advertising.  *See, e.g. Virginia Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 752-754, 96 S.Ct. 1817, 1821, 48 L.Ed.2d 346 (1975) (challenge to complete ban on advertising prescription drug prices); *Central Hudson Gas & Elec. Corp. v. PSC of New York*, 447 U.S. 557, 558-59, 100 S.Ct. 2343, 2348-49, 65 L.Ed.2d 341 (1980) (challenge to complete ban on promotional advertising by utilities in the State of New York).  Here, Plaintiffs are not trying to exert a complete ban or regulate general promotional activities, but are trying to limit contact between two crucial groups of material witnesses for a very limited time period.  Thus, the commercial free speech cases are irrelevant to the issue of whether this Court can impose a very limited protective order in the context of ongoing litigation, when necessary for the fair and speedy resolution of this MDL.

8

**B.      If The Commercial Free Speech Cases Are Applied, A Protective Order Would Easily Withstand Constitutional Scrutiny.**

A protective order clearly would not violate established First Amendment commercial speech law.  Even the United States Supreme Court commercial free speech cases acknowledge that commercial speech occupies one of the lowest rungs on the First Amendment hierarchy, enjoying only a "limited measure of protection, commensurate with its subordinate position on the First Amendment values, and is subject to modes of regulation that might be impermissible in the realm of noncommercial expression."  *Bd. of Trustees v. Fox*, 492 US 469, 477, 109 S.Ct. 3028, 3033, 106 L.Ed.2d 388 (1989) (internal quotation marks and citations omitted).  The protective order sought under this Motion certainly satisfies the four-part analysis for the regulation of commercial speech established under the United State Supreme Court's Central Hudson test.  *See Central Hudson Gas & Elec. Corp.*, 447 U.S. at 566; 100 S.Ct. at 2351.  This test first asks whether the speech concerns lawful activity and is not misleading.[3]  *See id.*, 447 U.S. at 566, 100 S.Ct. at 2351.  If so, the next question is whether the governmental interest is substantial.  *Id.*  If the answer is yes, the next question here is whether the regulation or ban directly advances the governmental interest asserted and whether it is not more extensive than necessary to serve that interest.  *Id.*  In the instant case, this Court has a substantial interest in the integrity of the judicial process and judicial economy that is advanced by a temporary ban in contact between the deposition physicians and sales representatives.  Such a protective order is not more extensive than necessary because the sales representatives can still talk to a vast number of other physicians, and the ban will be lifted as soon as the designated

---

[3]The speech here may be both unlawful and misleading, but even if it is neither, the protective order passes the prongs of the test.

physicians' depositions are over.  In sum, there is simply no support that the First Amendment commercial speech cases would prohibit a limited court order regulating commercial conduct, when necessary to protect witnesses from contaminating each others' testimony or otherwise impacting the judicial process.

## III.  <u>Without a Limited Protective Discovery Order,  The Potential for HIPPA Violations Is Great</u>.

Plaintiffs have signed Health Insurance Portability and Accountability Act ("HIPAA") authorizations pursuant to 45 CFR Parts 160 and 164, which authorize  treating and prescribing physician to provide medical records to the Defendants. *See* 45 CFR §164.512 (allowing disclosure of medical information insofar as a protective order is in place).  The authorizations specifically forbid all deposition physicians from "speaking to anyone" concerning the Plaintiffs' care and treatment, and similarly prohibits interviews  or statements related to the  same.   *See* Undated Sample Authorization for Release of Records  attached hereto as Exhibit B.   Defense counsel and Defendants should not be allowed to get around this authorization limitation by having their sales agents/employees act as their agents in contacting  the physicians.  *See* Fla. Rules of Professional Conduct   4-4.2 and 4-5-3.[4]    Any conversations between AZ's sales representatives and the deposition physicians about a specific plaintiff  would  be prohibited as outside the scope of the

---

[4]Rule 2.049(c) of the Local Rules for the United States District Court, Middle District of Florida, controls and provides that the professional conduct of all members of the bar of this Court "shall be governed by the Model Rules of Professional Conduct of the American Bar Association as modified and adopted by the Supreme Court of Florida to govern the professional behavior of the members of The Florida Bar."  Rule 4-4.2 of the Florida Rules of Professional Conduct regulates an attorney's communication with a person who is represented by counsel and provides "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer."  In addition, Rule 4-5.3 of the Florida Rules of Professional Conduct imposes upon attorneys a general supervisory obligation with over non-lawyer employees/agents, including an obligation to make reasonable efforts to ensure that employees/agents maintain conduct compatible with the professional obligations of lawyers

HIPAA authorization.  *See, e.g.  Ozdemir v. Somerset Medical Center*, 2006 WL 1555495, at *1

(N.D.N.Y May 31, 2005) (release of health information is to be made only through the use of the

methods listed in HIPAA, that is, pursuant to a court order, written permission from the patient or

representative, or proof that the patient or representative have been informed and given opportunity

to object).  While AZ may argue that physicians will be cautious about potential HIPAA violations,

as noted by one court, the problem is that:

> if *ex parte*  interviews are permitted, it *would be left up to the
> physician to determine what information is subject to disclosure and
> what remains privileged*.  The doctor is not only unskilled at making
> that determination, any error in judgment could, in addition, expose
> the physician to liability arising from an improper disclosure.

*Horner v. Rowan*, 153 F.R.D. 597, 601-602 (S.D. Tex. 1994) (emphasis added).  *See also United

States v. Omni Int'l Corp*., 634 F.Supp. 1414,  1431 (D.Md. 1986) ("[u]nlike lawyers, who can

protect the. . .privilege, [laypersons] have no legal training and cannot be expected to make

sophisticated judgments regarding the scope of the privilege"); *MMR/Wallace Power & Indust., Inc.

v. Thames*, 764 F.Supp. 712, 726 (D.Conn. 1991) (claim that no privileged information was revealed

by lay person "rings hollow. . .in light of [former employee's] own admission that, as a lay person,

he did not know what information of communications were protected by the. . .privilege").  The

danger of inadvertent disclosure has been noted to be greater in situations such as here where both

witnesses are laypersons. *See, e.g. Lyondell-Citgo Refining, L.P. v. Petioles de Venezuela*, 2003 WL

2299099, at *3 (S.D.N.Y. Dec. 19, 2003) (noting "danger of inadvertent disclosure is compounded"

when both parties to communication are laypersons thus lack ability "to assess whether privileged

material is being disclosed").

The risk of HIPPA violations is one additional important reason to prohibit any sales representatives contact with the subject physicians.

## IV.   Such Limited Protective Discovery Order Would Not Be an Unreasonable Interruption of Defendants' Business or Create Financial Hardship.

It is hornbook law that a party is not excused from responding to a discovery request simply because of financial hardship or because a discovery order is disruptive to how a defendant normally does business.  See, e.g. *United Parcel Service v. The Net, Inc.*, 222 F.R.D. 69, 71 (E.D. N.Y. 2004); *Allstate Ins. Co. v. Hodges,* 855 So.2d 636, 641-42  (Fla. App. Ct., 2d Dist. 2003) (economic concerns related to the cost of complying with a discovery request would not rise to a level of undue burden necessary to support certiorari review of discovery order).   Here, this order will have no real impact upon Defendants' business.  This involves a small number of physicians, scattered about the nation, for a brief, temporary period of time.  Moreover, these are not potential "new" customers. *All* of these physicians are of course very old customers of Seroquel - they prescribed the drug years ago.  Moreover, the non-prescribing treating physicians should not be customers at all, because they are not likely to be carrying on the regular treatment of schizophrenia or bipolar disease.  Thus, there will be no impact on the Defendants' sales.

Communication of the order will be simple, easy and virtually without cost.  AZ daily uses its capabilities to sent out both mass e-mail and voice mail to its sales representatives.  This capability exists for national messages, as well as regional and sub-regional messages.  The same system that is used to spurn their sales force to more sales can be used to communicate the names of doctors not to detail and when detailing can be resumed.

Given the minimal and brief impact (if any) on AZ's business and the overall small number of deposition physicians compared to AZ's customer pool, the balance weighs in favor of a protective order, especially in the context of the current case specific discovery plan in this mass tort litigation.  See, e.g. *Barratta v. Homeland Houseware, LLC.* 2007 WL 1200129, at *1 (S.D.Fla., April 17, 2007)(court must balance parties' respective interests related to discovery order); *New World Network Ltd. v. M/V/Norwegian Sea*, 2007 WL 1068124, at *1 (S.D. Fla. 2007) (it is not enough that the effect on discovery be burdensome; that burden must be "undue").

## V.    **Attempt to Resolve.**

Pursuant to M.D.L.R. 3.01(g), Plaintiffs have conferred with defense counsel, who do not agree with this proposed discovery Protective Order.   Plaintiffs first made this request to defense counsel months before this motion was filed and have pursued a resolution up until the recent hearing when were told "no".  Defense counsel agreed only to instruct sales representatives not to discuss "the litigation" with physicians.  Plaintiffs submit that this admonition should have been in force for over a year and Defendants should be compelled to answer whether it has been.  In any event, Defendants' suggestion does not resolve the issue of influencing crucial factual testimony through conversation, conduct and written material that could easily be defended as having nothing to do with the *"litigation*."

## **CONCLUSION**

The independent, uninfluenced recollection of what Plaintiffs' physicians were told by the sales representatives about Seroquel is crucial to both Plaintiffs' failure to warn case and AZ's

learned intermediary defense.  Such recollections, which may already be vague because of the passage of time and new and different information that the deposition physicians have received since the prescribing decision, should not be subject to further potential influence by either oral communications or written information left by the sales representatives, who are both material witnesses and potential wrongdoers.  A discovery Protective Order is especially warranted within the context of the intense case specific discovery process planned in this MDL, given how disputes about improper witness influence and HIPAA violations could derail the case-specific discovery process.

WHEREFORE, the court is respectfully requested to enter an Order as set forth above is RESPECTFULLY SUBMITTED this 19th day of October, 2007.

/s/ Paul J. Pennock
Paul J. Pennock
Plaintiffs' Co-Lead Counsel
WEITZ & LUXENBERG, P.C.
180 Maiden Lane, 17th Floor
New York, NY 10038
Telephone:   (212) 558-5500
Facsimile:    (212) 363-2721
E-mail:   ppennock@weitzlux.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of October, 2007, I electronically filed the foregoing

### MDL PLAINTIFFS' COMBINED MOTION AND MEMORANDUM  FOR PROTECTIVE ORDER BARRING DEFENDANTS' SALES REPRESENTATIVES FROM CONTACT WITH TREATING AND PRESCRIBING PHYSICIANS IN DISCOVERY CASES

with the Clerk of the Court by using the CM/ECF system which will send a Notice of Electronic Filing to the counsel listed on the attached Service List.  I further certify that I mailed or e-mailed the foregoing document and the Notice of Electronic Filing by First-Class mail delivery to the non-CM/ECF Participants listed on the attached Service List.

 /s/ Paul J. Pennock                                                
Paul J. Pennock
Plaintiffs' Co-Lead Counsel
WEITZ & LUXENBERG, P.C.
180 Maiden Lane, 17th Floor
New York, NY   10028
Telephone:   (212) 558-5500
Facsimile:   (212) 363-2721
E-mail:        Ppennock@weitzlux.com

T:\DMDL\Seroquel\MDL Seroquel Litigation\Sales Rep Protective Order.wpd

**SERVICE LIST**
(As of September 5, 2007)

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No.  1769 - Orl - 22DAB**

| | |
|---|---|
| Paul J. Pennock, Esq.<br>Michael E. Pederson, Esq.<br>Weitz & Luxenberg, P.C.<br>180 Maiden Lane - 17th Floor<br>New York, NY 10038<br>Telephone:  (212) 558-5500<br>Ppennock@weitzlux.com<br>Mpederson@weitzlux.com | Camp Bailey, Esq.<br>Fletcher Trammell, Esq.<br>Michael W. Perrin, Esq.<br>Bailey Perrin Bailey LLP<br>The Lyric Centre<br>440 Louisiana, Suite 2100<br>Houston, TX  77002<br>Telephone:  (713) 425-7240<br>cbailey@bpblaw.com<br>mperrin@bpblaw.com |
| Larry Roth, Esq.<br>Law Offices of Larry M. Roth, P.A.<br>Post Office Box 547637<br>Orlando, FL  32854-7637<br>Telephone: (407) 872-2239<br>LROTH@roth-law.com | Tommy Fibich, Esq.<br>Fibich, Hampton & Leebron, L.L.P.<br>1401 McKinney, Suite 1800<br>Five Houston Center<br>Houston, TX  77010<br>Telephone:  (713) 751-0025<br>tfibich@fhl-law.com |
| Matthew F. Pawa, Esq.<br>Benjamin A. Krass, Esq.<br>Law Offices of Matthew F.Pawa, P.C.<br>1280 Centre St., Suite 230<br>Newton Centre, MA 02459<br>Telephone:  (617) 641-9550<br>Mp@pawalaw.com | John Driscoll, Esq.<br>Seth Webb, Esq.<br>Brown & Crouppen, PC<br>720 Olive St.<br>St. Louis, MO  63101<br>Telephone:  (314) 421-0216<br>Jdriscoll@brownandcrouppen.com<br>asmith@brownandcrouppen.com<br>blape@brownandcrouppen.com |

**SERVICE LIST**
(As of September 5, 2007)

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No.  1769 - Orl - 22DAB**

| | |
|---|---|
| Keith M. Jensen, Esq.<br>Jensen, Belew & Gonzalez, PLLC<br>1024 North Main<br>Fort Worth, TX 76106<br>Telephone:  (817) 334-0762<br>kj@kjensenlaw.com | Scott Allen, Esq.<br>Cruse, Scott, Henderson & Allen, L.L.P.<br>2777 Allen Parkway, 7th Floor<br>Houston, Texas 77019<br>Telephone: (713) 650-6600<br>sallen@crusescott.com |
| Matthew E. Lundy, Esq.<br>Lundy & Davis, LLP<br>333 North Sam Houston Parkway East<br>Suite 375<br>Houston, TX  77060<br>Telephone:  (281) 272-0797     .<br>mlundy@lundydavis.com | E. Ashley Cranford<br>Whatley Drake & Kallas, LLC<br>2001 Park Place North, Suite 1000<br>Birmingham, AL  35203<br>Telephone:  (205) 328-9576<br>THARVEY@whatleydrake.com<br>ecf@whatleydrake.com |
| Lawrence J. Gornick, Esq.<br>William A. Levin, Esq.<br>Dennis J. Canty, Esq.<br>Levin Simes Kaiser & Gornick, LLP<br>44 Montgomery Street<br>36th Floor<br>San Francisco, CA  94104<br>Telephone:  (415) 646-7160<br>lgornick@lskg-law.com<br>dcanty@lskg-law.com<br>llsimes@levins-law.com<br>jkaiser@lskg-law.com<br>echarley@lskg-law.com<br>ddecarli@lskg-law.com<br>bsund@lskg-law.com<br>astavrakaras@lskg-law.com | Gregory P. Forney, Esq.<br>Shaffer Lombardo Shurin<br>911 Main Street, Suite 2000<br>Kansas City, MO 64105<br>Telephone:  (816) 931-0500<br>gforney@sls-law.com<br>rbish@sls-law.com<br>***Attorney for Defendant,***<br>***Marguerite Devon French*** |

17

## SERVICE LIST
(As of September 5, 2007)

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No.  1769 - Orl - 22DAB**

| | |
|---|---|
| Robert L. Salim, Esq.<br>Robert L. Salim Attorney at Law<br>PO Box 2069<br>Natchitoches, LA 71457-2069<br>Telephone:  (318) 352-5999<br>robertsalim@cp-tel.net | Eric B. Milliken, Esq.<br>3 Sir Barton Ct.<br>Newark, DE 19702<br>*Pro Se* |
| Justin Witkin, Esq.<br>Ken Smith, Esq.<br>Aylstock, Witkin & Sasser, PLC<br>4400 Bayou Boulevard, Suite 58<br>Pensacola, FL  32503<br>Telephone:  (850) 916-7450<br>Jwitkin@AWS-LAW.com<br>ablankenship@aws-law.com<br>aburrus@aws-law.com<br>asmith@aws-law.com<br>ksmith@aws-law.com<br>noverholtz@aws-law.com<br>jsafe@aws-law.com | Louisiana Wholesale Drug Co. Inc.<br>C/O Gayle R. White<br>Registered Agent<br>Highway 167N<br>Sunset, LA 70584<br>*Pro Se* |
| Aaron C. Johnson, Esq.<br>Summers & Johnson<br>717 Thomas<br>Weston, MO 64098<br>Telephone:  (816) 640-9940<br>firm@summersandjohnson.com | Catherine Solomon<br>(current address unknown)<br>*Pro Se* |
| Todd S. Hageman, Esq.<br>Simon and Passanante, PC<br>701 Market St., Suite 1450<br>St. Louis, MO 63101<br>Telephone:  (314) 241-2929<br>thageman@spstl-law.com | Randy Niemeyer<br>22442 Pike 309<br>Bowling Green, MO 63334-5209<br>*Pro Se* |

**SERVICE LIST**
(As of September 5, 2007)

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No.  1769 - Orl - 22DAB**

| | |
|---|---|
| Thomas Campion, Esq.<br>Steven M. Selna<br>Heidi E. Hilgendorff, Esq.<br>Drinker Biddle & Reath, LLP<br>500 Campus Drive<br>Florham Park, New Jersey 07932-1047<br>Telephone:  (973) 360-1100<br>tcampion@dbr.com<br>steven.selna@dbr.com<br>heidi.hilgendorff@dbr.com<br><br>**Attorneys for Defendants Janssen Pharmaceutical Products and Johnson & Johnson Co.** | Mary B. Cotton<br>John D. Giddens, P.A.<br>226 North President Street<br>Post Office Box 22546<br>Jackson, MS 39225-2546<br>(601) 355-2022<br>betsy@law-inc.com |
| Michael Davis, Esq.<br>James Mizgala, Esq.<br>Sidley, Austin, LLP<br>Bank One Plaza<br>One South Dearborn Street<br>Chicago, IL 60603<br>Telephone:  (312) 853-7731<br>mdavis@sidley.com<br>jmizgala@sidley.com<br>**Attorneys for Defendants AstraZeneca LP and AstraZeneca Pharmaceuticals, LP** | Joseph C. Langston, Esq.<br>The Langston Law Firm, PA<br>P.O. Box 787<br>100 South Main Street<br>Booneville, MS 38829-0787<br>Telephone: (662) 728-3138<br>tbalducci@langstonlaw.com |
| Elizabeth Raines, Esq.<br>Baker, Sterchi, Cowden & Rice, LLC<br>2400 Pershing Road, Suite 500<br>Kansas City, MO 64108<br>Telephone:   (816) 471-2121<br>raines@bscr-law.com<br>**Attorney for Defendant AstraZenca, PLC** | Kenneth W. Bean, Esq.<br>Sandberg, Phoenix & von Gontard<br>One City Centre<br>15th Floor<br>St. Louis, MO 63101-1880<br>Telephone: (314) 231-3332<br>kbean@spvg.com<br>**Attorney for Defendant Dr. Asif Habib** |

19

**SERVICE LIST**
(As of September 5, 2007)

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No.  1769 - Orl - 22DAB**

| | |
|---|---|
| Robert L. Ciotti, Esq.<br>Carlton Fields, P.A.<br>4221 W. Boy Scout Boulevard<br>Suite 1000<br>Tampa, FL 33607-5736<br>Telephone: (813) 223-7000<br>rciotti@carltonfields.com<br>**Attorney for Defendants, Astrazeneca**<br>**Pharmaceuticals, LP and Astrazeneca LP** | Aaron K. Dickey, Esq.<br>K. Lindsay Rakers, Esq.<br>Goldenberg and Heller, PC<br>P.O. Box 959<br>2227 S. State Road 157<br>Edwardsville, IL 62025<br>Telephone: (618) 650-7107<br>aaron@ghalaw.com |
| Jona R. Hefner, Esq.<br>3441 W. Memorial, Suite 4<br>Oklahoma City, OK 73134-7000<br>Telephone: (405) 286-3000<br>attorneyokc@hotmail.com | Mark P. Robinson, Jr., Esq.<br>Robinson, Calcagnie & Robinson<br>620 Newport Center Drive, 7th Floor<br>Newport Beach, CA 92660<br>Telephone: (949) 720-1288<br>mrobinson@robinson-pilaw.com |
| David P. Matthews, Esq.<br>Lizy Santiago<br>Matthews & Associates<br>2905 Sackett<br>Houston, TX 77098<br>Telephone: (713) 222-8080<br>dmatthews@thematthewslawfirm.com<br>lsantiago@thematthewslawfirm.com | Robert A. Schwartz, Esq.<br>Bailey & Galyen<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744<br>bschwartz@galyen.com |
| David Dickens<br>Miller & Associates<br>105 North Alfred Street<br>Alexandria, Virginia 22314-3010<br>(703) 519-8080<br>ddickens@doctoratlaw.com | Howard Nations<br>Lori A. Siler<br>4515 Yoakum Boulevard<br>Houston, TX 77006-5895<br>Telephone: (713) 807-8400<br>nations@howardnations.com |

**SERVICE LIST**
(As of September 5, 2007)

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No.  1769 - Orl - 22DAB**

| | |
|---|---|
| Salvatore M. Machi<br>Ted Machi & Associates, PC<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058 | Scott Burdine, Esq.<br>Hagans Burdine Montgomery<br>Rustay & Winchester, P.C.<br>3200 Travis, Fourth Floor<br>Houston, TX 77006<br>Telephone: (713) 222-2700<br>sburdine@hagans-law.com |
| Pete Schneider, Esq.<br>Grady, Schneider & Newman, L.L.P.<br>801 Congress, 4th Floor<br>Houston, Texas 77002<br>(713) 228-2200<br>pschneider@gsnlaw.com | Lizy Santiago, Esq.<br>Abraham, Watkins, Nichols,<br>Sorrels, Matthews & Friend<br>800 Commerce Street<br>Houston, TX 77002-1776<br>(713) 222-7211<br>lsantiago@abrahamwatkins.com |
| Fred T. Magaziner<br>Marjorie Shiekman<br>A. Elizabeth Balakhani<br>Shane T. Prince<br>Eben S. Flaster<br>Brennan Joseph Torregrossa<br>DECHERT LLP<br>2929 Arch Street<br>Philadelphia, PA 19103<br>(215) 994-4000<br>fred.magaziner@dechert.com<br>shane.prince@dechert.com<br>marjorie.shiekman@dechert.com<br>eben.flaster@dechert.com<br>elizabeth.balakhani@dechert.com | Lowell Finson<br>Phillips & Associates<br>3030 North 3rd Street<br>Suite 1100<br>Phoenix, AZ 85012<br>(602) 258-8900, ext. 295<br>lowellf@phillipslaw.ws |

21

**SERVICE LIST**
(As of September 5, 2007)

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No.  1769 - Orl - 22DAB**

| | |
|---|---|
| Scott Armstrong<br>1719 West Main Street<br>Suite 201<br>Rapid City, SD 57702<br>(605) 399-3994<br>scottarmstrong1235@eathlink.net | Linda S. Svitak<br>Russell O. Stewart<br>Krisann Kleibacker Lee<br>Faegre & Benson, LLP<br>90 South 7th Street, Suite 2200<br>Minneapolis, MN 55402-3901<br>(612)766-7000<br>lsvitak@faegre.com<br>wjohnson@faegre.com |
| James J. Freebery<br>McCarter & English, LLP<br>919 N. Market Street, 18th Floor<br>Wilmington, DE 19801<br>(973) 622-4444<br>jfreebery@mccarter.com<br>tpearson@mccarter.com | Richard D. Hailey<br>Ramey & Hailey<br>3891 Eagle Creek Parkway<br>Suite C<br>Indianapolis, IN<br>(317) 299-0400<br>rhailey@sprynet.com |
| Gale D. Pearson<br>Stephen J. Randall<br>Pearson, Randall & Schumacher, P.A.<br>Fifth Street Towers, Suite 1025<br>100 South 5th Street<br>Minneapolis, MN 55402<br>(612) 767-7500<br>attorneys@outtech.com | B. Andrew List<br>Clark, Perdue, Arnold & Scott<br>471 East Broad Street, Suite 1400<br>Columbus, OH 43215<br>(614) 469-1400<br>alist@cpaslaw.com<br>lcollins@cpaslaw.com |

**SERVICE LIST**
(As of September 5, 2007)

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No.  1769 - Orl - 22DAB**

| | |
|---|---|
| Ellen R. Serbin<br>Perona, Langer, Beck, Lalande & Serbin<br>300 San Antonio Drive<br>Long Beach, CA 90807-0948<br>(562) 426-6155<br>davidhwang@plblaw.com | Robert H. Shultz<br>Heyl, Royster<br>103 West Vandalia Street<br>P.O. Box 467<br>Edwardsville, IL 62025<br>(618) 656-4646<br>rshultz@hrva.com<br>bwallace@hrva.com |
| William N. Riley<br>Jamie R. Kendall<br>Price, Waterhouse & Riley, LLC<br>301 Massachusetts Avenue<br>Indianapolis, IN 46204<br>(317)633-8787<br>eamos@price-law.com | Earl Francis Carriveau<br>1012 6th Avenue<br>Lake Charles, LA 70601-4706 |
| Michael T. Gallagher<br>The Gallagher Law Firm<br>2905 Sackett Street<br>Houston, TX 77098<br>(713) 222-8080<br>shawnaf@gld-law.com | Stacy K. Hauer<br>Charles S. Zimmerman<br>651 Nicollet Mall, Suite 501<br>Minneapolis, MN 55402<br>(612) 341-0400<br>(800) 755-0098<br>csz@zimmreed.com |
| Buffy Martines<br>Laminack, Pirtle & Martines<br>440 Louisiana, Suite 1250<br>Houston, TX 77002<br>(713) 292-2750<br>buffm@lpm-triallaw.com | |