UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION


In re:  Seroquel Products Liability Litigation

Case No. 6:06-md-1769

_____

This Document Relates to ALL CASES

_____


ASTRAZENECA'S MOTION AND COMBINED MEMORANDUM
REGARDING THE SCHEDULING AND SCOPE OF FUTURE DISCOVERY

In response to the Court's October 10, 2007 Order (Doc. No. 551),

AstraZeneca hereby submits a statement of its views on the scheduling and scope of future

discovery, and moves the Court to enter an Order as set forth below.

I.      GOALS OF THE MDL

        28 U.S.C. § Section 1407(a) sets forth what *must be* the objectives of this and

every other MDL:  to serve the convenience of the parties and witnesses and to promote the

just and efficient conduct of the litigation.  Therefore, although plaintiffs undoubtedly will

argue that the Court should focus (and possibly restrict) its activities to supervising discovery

of AstraZeneca, the Court's statutory mandate is broader.   To promote justice and efficiency,

the Court must:

        A.      Address Issues Of General Applicability

        These issues include not only fact discovery taken by plaintiffs, but (1) expert

discovery on issues other than case-specific causation (*i.e.,* designation of "generic" experts,

depositions of same, and *Daubert* practice), and (2) motion practice on issues that will affect multiple cases (*e.g.*, the pending motions to dismiss strict liability and certain preempted claims). The Court already has in place orders designed to advance these issues of general applicability. Accordingly, this brief will not focus upon them.

**B.     Manage Case-Specific Activity To Sort Out
        The Cases In This MDL**

As the Court is aware, the mere step of requiring plaintiffs to comply with their written discovery obligations has resulted in the dismissal of over one thousand cases – cases that were cluttering this Court's docket and that would have needlessly burdened myriad other courts if the cases had survived to remand.

To continue with the fair and efficient management of this litigation, the Court should implement procedures that will require plaintiffs and their counsel, as well as the Court and AstraZeneca, to carefully evaluate claims that all too often were filed without investigation. Frivolous cases should not be allowed to remain pending just because plaintiffs have filed thousands of them. *See infra*, Part II.A.

By the same token, if there are in the MDL any cases that may raise colorable issues, those few cases should not remain unexplored because they are lost in the MDL. Rather, a sample of such cases should be prepared for trial, so the Court and the parties can determine the appropriate disposition of such cases. Part II of this motion focuses upon a two-part plan for managing case-specific discovery to achieve these objectives. As the Court has ordered, Part III sets forth AstraZeneca's position on alternative dispute resolution.

## II.   PROPOSALS FOR MANAGING INDIVIDUAL CASES.

### A.   Sorting Out The Cases To Manage
### The Litigation Fairly And Efficiently

Case-specific discovery has confirmed that many of the pending cases should never have been filed.  A few examples of cases now in the discovery program are sufficient to illustrate the point:

- Tim Ell (an Oregon resident) had diabetes for years before he ever used Seroquel; his weight and glucose levels actually improved while he was on the medicine.  Mr. Ell is suicidal and homicidal when untreated.  Nevertheless, *he stopped taking Seroquel shortly before his deposition after his lawyers – his lawyers, not his doctor -- told him that the drug was making his diabetes worse.*  Mr. Ell then returned to Oregon in a manic state, contacted his physician, and threatened to kill him.  The physician testified that Seroquel effectively controls Mr. Ell's delusions and paranoia and has strongly advised Mr. Ell to continue taking Seroquel.[1]

- Deborah Elmore (an Ohio resident) suffers from bipolar and schizoaffective disorders and is a recovering drug addict and alcoholic who has twice attempted suicide. When untreated by antipsychotic medication, Ms. Elmore self-medicates through alcohol. Indeed, her drinking has been so severe that it caused cirrhosis of the liver, and she now requires a transplant. While on Seroquel, Ms. Elmore's psychotic symptoms ceased and she remained sober for the longest period in her adult life. Ms. Elmore's prescriber testified that *Ms. Elmore unilaterally stopped using Seroquel against the prescriber's medical judgment because her attorneys advised her that continuing to use the drug would be harmful to her lawsuit.* The prescriber testified that  there was "no reason why" Seroquel therapy should have been discontinued and that he "fear[ed] for what could literally be [Ms. Elmore's] life" as a result of the decision prompted by plaintiff's counsel.

- Hope Lorditch (a Florida resident) was diagnosed with diabetes in 1999.  She took Seroquel for 30 days in 2003 and 30 days in 2004 – long after her diagnosis – but nevertheless has sued AstraZeneca.

- Samuel Robinson (an Arkansas resident) was an obese schizophrenic with a history of drug and alcohol abuse when he started taking Seroquel.  He had normal glucose levels the entire time he was on the medicine.  However, Mr. Robinson later switched

---

[1]   AstraZeneca is not now burdening the Court with deposition transcripts.  AstraZeneca will supply those transcripts in support of its dispositive motions, of course, but if the Court would like to receive them now, AstraZeneca will file them very promptly.

to Zyprexa and, after nine months, was diagnosed with diabetes.  Mr. Robinson sued and settled with Eli Lilly, but nevertheless has sued AstraZeneca.

- Vounzetta Edgeston (a Wisconsin resident) has bipolar disorder.  She was prediabetic before starting Seroquel, was advised by her prescriber of risks of weight gain and diabetes, and nevertheless chose to take the medicine because it is the only antipsychotic that works for her and is covered by her insurance.  She remains on the medicine to this day.

- Joanne Hinton (a Florida resident) had weight problems before taking Seroquel.  Her prescriber testified that Ms. Hinton was advised that weight gain and diabetes were risks associated with Seroquel.  After Ms. Hinton was diagnosed with diabetes, she and her prescriber discussed whether to continue Seroquel and decided that the benefits outweighed any risks.  Ms. Hinton testified that the medicine works for her and she takes it because she needs it, even though she has seen advertising by plaintiffs' attorneys detailing numerous alleged hazards associated with the medicine.

To efficiently manage this litigation, this Court should implement procedures to avoid dumping thousands of such frivolous cases on transferor courts.

        1.      Many of the plaintiffs filed fact sheets with little regard for their completeness or accuracy.  Rather than fulfilling their obligation to provide AstraZeneca with written discovery, these plaintiffs and their lawyers have served fact sheets replete with blanks and "I don't know" answers.   In spite of repeated requests from AstraZeneca, plaintiffs have refused or simply failed to supplement these deficient responses.

        Plaintiffs should not be allowed to go through the motions of serving discovery without actually providing any information.  Accordingly, AstraZeneca will soon begin filing motions to compel, asking the Court to set deadlines for these plaintiffs to supplement their fact sheets or face dismissal with prejudice.[2]  AstraZeneca anticipates that

---

[2]     In addition, many plaintiffs have failed to produce documents, although they have testified at their depositions that they have responsive materials that should have been produced with their fact sheets.  The parties have been discussing this issue with the PMO.  AstraZeneca anticipates filing motions based on these discovery violations.

this motion practice will substantially reduce the Court's docket.

2.  About twenty percent of the plaintiffs whose depositions have been noticed have failed to appear.  AstraZeneca expects this percentage to increase as the case-specific discovery program progresses.  Cases in which plaintiffs are not willing to comply with the basic obligation to give testimony in support of their claims should not remain pending for eventual remand to transferor courts.  Accordingly, AstraZeneca will ask the Court to dismiss with prejudice those cases in which plaintiffs fail to appear for their depositions.  *See* Fed. R. Civ. P. 37(d).

3.  Testimony in cases subject to case-specific discovery has demonstrated that most of the cases lack even a colorable basis.  Indeed, in many cases, prescribing physicians have testified that they considered the possibility that Seroquel might increase a plaintiff's diabetes risk and nevertheless prescribed the medicine because the physicians determined that any risk was outweighed by the benefit to a seriously mentally ill patient.  *E.g.,* Ms. Edgeston, Ms. Hinton.  Indeed, prescribers have testified that they started or continued Seroquel therapy for patients with diabetes because the patients needed the medicine.  *E.g.,* Mr. Ell, Ms. Lorditch.  Some prescribers have even testified that their patients' diabetes *improved* while on Seroquel.  *E.g.,* Mr. Ell.  Other patients did well on Seroquel but developed diabetes only after taking a different antipsychotic.  *E.g.,* Mr. Robinson.

Such cases should not continue on this Court's docket.  Accordingly, AstraZeneca anticipates filing summary judgment motions in such cases in the near future.

4.     AstraZeneca will shortly ask the Court for entry of a *Lone Pine* order. Such orders require each plaintiff to produce at any early date a case-specific expert report supporting that plaintiff's claim of an injury caused by Seroquel. This departure from the usual discovery sequence is warranted when plaintiffs, as here, have engaged in volume filings of uninvestigated claims.[3] A *Lone Pine* order effectively compels plaintiffs' counsel to take a closer look at their case inventories and weed out those that never should have been filed. Entry such orders in the recent Baycol MDL (*see* Baycol PTOs 114, 131, 149) resulted in the dismissal of thousands of cases and made case-specific discovery much more efficient by limiting the number of cases in which depositions were required.

5.     Once the scope of the MDL has been narrowed by these devices, the Court should require that remaining cases be subject to full discovery and otherwise made

---

[3]     *See, e.g., In re: Orthopedic Bone Screw Prod. Liab. Litig.*, MDL 1014, 1997 WL 303239, at *1 (E.D. Pa. 1997) (issuing pretrial order requiring that "each plaintiff identify and provide [case-specific] expert discovery with respect to at least one duly-qualified, medical expert on the issues of injury and causation"), *included as sample order in* D. Herr, Annotated Manual for Complex Litigation (Third) 643 (2003) (App. B); *Turner v. Firestone Tire & Rubber*, No. 5-95V-152 (E.D. Tex. May 31, 1996) (requiring 106 plaintiffs to produce case-specific reports from a medical expert opining that each plaintiff's alleged injuries were caused by defendants' conduct); *Atwood v. Electric Brake & Clutch Co., Inc.*, 605 N.E.2d 1032, 1038 (Ill. App. 1992) (affirming trial court's decision to bar personal injury claims where plaintiffs failed to comply with case management order requiring them to certify, *inter alia*, that "each plaintiff has identified all of his or her medical or personal injury claims causally related to this case by way of the expert reports"), *appeal denied*, 149 Ill.2d 647 (1993); *In re: Love Canal Actions*, 547 N.Y.S.2d 174, 178-79 (Sup. Ct. 1989) (requiring plaintiffs to produce "reports of treating physicians and medical or other experts, supporting each individual plaintiff's claim of injury and causation" or face dismissal), *aff'd*, 555 N.Y.S.2d 519 (App. Dept. 1990); *Lore v. Lone Pine Corp.*, 1986 WL 637507, at *2 (N.J. Super. 1986) (dismissing with prejudice the claims of plaintiffs who failed to comply with a case management order requiring them to produce, *inter alia*, "[r]eports of treating physicians and medical or other experts, supporting each individual plaintiff's claim of injury and causation").

trial-ready prior to remand.  Coordinating the completion of case-specific discovery in this MDL will allow discovery to proceed more efficiently than it would if left to transferor courts setting conflicting schedules in myriad cases involving the same counsel.

Experience in countless other MDLs suggests that if such a program is implemented here, most cases will disappear from the docket, leaving only a small number that will have to be remanded to the transferor courts for trial.  Those few cases that may have to be remanded for trial in other courts should be remanded on a rolling basis, *i.e.*, following the Court's resolution of issues of general applicability, and once case-specific fact and expert discovery and motion practice is complete in one group of cases, they should be remanded, even though there may be other groups of cases in which case-specific discovery and motion practice will be completed at a later date, followed by remands of those later groups.  A timetable for case-specific discovery, motions, and remands will have to be established, of course, but it is too early now to set such schedules.  Rather, the emphasis now should be to implement a program that will lead to a substantial reduction of the number of cases that will ever have to be remanded.

### B.   Preparing Florida-Resident Cases For Trial

There are currently 138 cases in this MDL that were filed by plaintiffs who reside in Florida ("Florida Resident Cases").  AstraZeneca proposes that a subgroup of these cases should be subject to full discovery and prepared for trials in this Court.  The cases selected for potential trials in this Court should be drawn not only from the 32 cases that plaintiffs have cherry-picked for transfer to this Court, but also from the other 106 cases as to

which plaintiffs are resisting transfer.[4]  AstraZeneca has already proposed a series of steps by which these 106 cases may be transferred, either by consent or by means of the suggestion of remand/remand/transfer process described in AstraZeneca's Motion For An Order To Show Cause Regarding The Florida-Related Cases Pending In This MDL.  *See* Doc. No. 562.

Thus far, 21 of the 138 Florida Resident Cases have been selected for the limited case-specific discovery program already in place.  AstraZeneca proposes that this number be increased to 51 simply by having the Court and each party select its 10 January case-specific discovery selections (which are due on October 26, October 30, and November 1) from among the 117 Florida Resident Cases that have not yet been selected for case-specific discovery.

From the resulting group of 51 Florida Resident Cases in which limited case-specific discovery will be completed by January 31, AstraZeneca proposes that the Court and each party select 8 cases, for a total of 24 cases (the "Trial Group"), to undergo full discovery, motion practice, and, if deemed necessary and appropriate, mediation.[5]  Cases to be tried would thereafter be selected from among those 24 cases.

---

[4]    Of these 32 cases, 14 have been selected for case-specific discovery by plaintiffs.  *See* Doc. Nos. 500, 277, 326, 353, 516, 561.  Interestingly, according to plaintiffs' notice, none of the 6 Florida-resident plaintiffs selected by the Court for case-specific discovery agreed that his or her case may transferred to this Court for trial.  *Compare* Doc. Nos. 290, 316, 340 *with* Doc. No. 500.

[5]    In Part III of this Motion, below, AstraZeneca sets forth its position on alternative dispute resolution, as ordered by the Court.  In short, AstraZeneca proposes to mediate individual Florida cases that have been selected for trial.  In deference to the Court's interest in mediation, AstraZeneca will mediate these cases, even though AstraZeneca continues to believe that most, if not all, of these cases have no merit at all.

As to the Trial Group, AstraZeneca proposes the following schedule:

- On February 15, 2008, the Court and each party should select 8 cases from the 51 Florida Resident Cases that have been subject to limited case-specific discovery.

- Full discovery of these 24 cases should begin on February 15, 2008.

- Fact discovery, including depositions of plaintiffs, prescribing and treating doctors, sales representatives, and any other fact witnesses, should be completed in these cases by June 30, 2008.

- Plaintiffs' designation and reports of their case-specific experts should be completed by July 15, 2008.

- AstraZeneca's designation and reports of its case-specific experts should be completed by August 15, 2008.

- All case-specific expert discovery should be completed by October 15, 2008.

- Dispositive motions should be filed by November 15, 2008.

- Mediation should be completed by November 30, 2008.

III.   **Alternate Dispute Resolution**

The Court has ordered that the parties state their positions on alternative dispute resolution.  AstraZeneca's position is as follows:

In the past, plaintiffs have argued for (a) initiation of discussions geared to a global settlement and (b) mediation of each case as case-specific discovery is completed. The discovery conducted to date shows that alternative (a) is untenable and that alternative

(b) would not be an efficient use of resources at this time.  Instead, in deference to the Court's strong interest in mediation, AstraZeneca proposes to mediate individual Florida-resident cases being prepared for trial.

Plaintiffs' view – openly stated at the last status conference – is that the mere filing of lawsuits *en masse* should entitle plaintiffs to a settlement payoff.  October 2, 2007 MDL Status Conference, Tr. 46:22-25; 47:1-11.  However, written discovery and early depositions have demonstrated that most – and possibly all – of plaintiffs' cases were filed without investigation, and have no merit at all.  *See supra*, Part II.A.  Plaintiffs and their lawyers should not be rewarded for filing claims without concern for their merit, and the Court should not order mediation of all cases subject to the case-specific discovery program.  Such an approach would consume significant time and resources from both sides and from the Court – a commitment that cannot be justified at this time based on the deficiencies in plaintiffs' cases.

AstraZeneca believes the better approach is to establish a mediation program in conjunction with the preparation for trial of individual Florida-resident cases.  This program could operate with the benefit of full discovery, so the Court, the parties, and one or more mediators would have substantial information with which to evaluate whether any of these cases warrant settlement.

## CONCLUSION

The only way to determine whether claims have merit is to put plaintiffs to their proof – starting with enforcing plaintiffs' written discovery obligations and continuing with case-specific discovery.  This approach, coupled with a parallel program to prepare

cases for ADR and trial in this District, will move this MDL forward both fairly and

efficiently.


Respectfully submitted on this the 23rd day of October, 2007,


/s/ Fred T. Magaziner
Fred T. Magaziner
DECHERT LLP
2929 Arch Street
Philadelphia, PA  19103
Telephone: (215) 994-4000
Facsimile: (215) 994-2222
fred.magaziner@dechert.com

Susan A. Weber
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL  60603
Telephone:  (312) 853-7820
Facsimile:  (312) 853-7036
saweber@sidley.com

*Counsel for AstraZeneca Pharmaceuticals LP
and AstraZeneca LP*

## CERTIFICATE OF SERVICE

I hereby certify that, on the 23rd of October, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I further certify that the foregoing document and the notice of electronic filing was served on Plaintiffs' Liaison Counsel in accordance with CMO No. 1.

/s/ A. Elizabeth Balakhani

## SERVICE LIST

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No. 1769**

| | |
|---|---|
| Paul J. Pennock, Esq.<br>Michael E. Pederson, Esq.<br>Weitz & Luxenberg, P.C.<br>180 Maiden Lane - 17th Floor<br>New York, NY 10038<br>Telephone: (212) 558-5500<br>Ppennock@weitzlux.com<br>MPederson@weitzlux.com<br>***Plaintiffs' Lead Counsel*** | Camp Bailey, Esq.<br>Michael W. Perrin, Esq.<br>Fletcher Trammell, Esq.<br>Bailey Perrin Bailey LLP<br>The Lyric Centre<br>440 Louisiana, Suite 2100<br>Houston, TX 77002<br>Telephone: (713) 425-7240<br>cbailey@bpblaw.com<br>mperrin@bpblaw.com<br>***Plaintiffs' Lead Counsel*** |
| Larry Roth, Esq.<br>Law Offices of Larry M. Roth, P.A.<br>Post Office Box 547637<br>Orlando, FL 32854-7637<br>Telephone: (407) 872-2239<br>LROTH@roth-law.com<br>***Plaintiffs' Liaison Counsel*** | Tommy Fibich, Esq.<br>Fibich, Hampton & Leebron, L.L.P.<br>1401 McKinney, Suite 1800<br>Five Houston Center<br>Houston, TX 77010<br>Telephone: (713) 751-0025<br>tfibich@fhl-law.com |
| Matthew F. Pawa, Esq.<br>Law Offices of Matthew F. Pawa, P.C.<br>1280 Centre St., Suite 230<br>Newton Centre, MA 02459<br>Téléphone: (617) 641-9550<br>Mp@pawalaw.com | Robert L. Salim, Esq.<br>Robert L. Salim Attorney at Law<br>P.O. Box 2069<br>Natchitoches, LA 71457-2069<br>Telephone: (318) 352-5999<br>robertsalim@cp-tel.net |
| Keith M. Jensen, Esq.<br>Jensen, Belew & Gonzalez, PLLC<br>1024 North Main<br>Fort Worth, TX 76106<br>Telephone: (817) 334-0762<br>kj@kjensenlaw.com | Scott Allen, Esq.<br>Cruse, Scott, Henderson & Allen, L.L.P.<br>2777 Allen Parkway, 7th Floor<br>Houston, Texas 77019<br>Telephone: (713) 650-6600<br>sallen@crusescott.com |
| Matthew E. Lundy, Esq.<br>Lundy & Davis, LLP<br>333 North Sam Houston Parkway East<br>Suite 375<br>Houston, TX 77060<br>Telephone: (281) 272-0797<br>mlundy@lundydavis.com | E. Ashley Cranford<br>Whatley Drake & Callas<br>2001 Park Place North, Suite 1000<br>Birmingham, AL 35203<br>Telephone: (205) 328-9576<br>ACranford@wdklaw.com |

| | |
|---|---|
| Robert L. Ciotti, Esq.<br>Carlton Fields, P.A.<br>4221 W. Boy Scout Boulevard<br>Suite 1000<br>Tampa, FL 33607-5736<br>Telephone: (813) 223-7000<br>rciotti@carltonfields.com<br>***Attorney for Defendants AstraZeneca Pharmaceuticals, LP, and AstraZeneca LP*** | Gregory P. Forney, Esq.<br>Shaffer Lombardo Shurin<br>911 Main Street, Suite 2000<br>Kansas City, MO 64105<br>Telephone: (816) 931-0500<br>gforney@sls-law.com<br>rbish@sls-law.com<br>***Attorney for Defendant, Marguerite Devon French*** |
| Randy Niemeyer<br>22442 Pike 309<br>Bowling Green, MO 63334-5209<br>***Pro Se*** | Eric B. Milliken, Esq.<br>3 Sir Barton Ct.<br>Newark, DE 19702<br>***Pro Se*** |
| Catherine Solomon<br>3100 N.E. 83<br>Gladstone, MO 64119<br>***Pro Se*** | Louisiana Wholesale Drug Co. Inc.<br>C/O Gayle R. White<br>Registered Agent<br>Highway 167N<br>Sunset, LA 70584<br>***Pro Se*** |
| Aaron C. Johnson, Esq.<br>Summers & Johnson<br>717 Thomas<br>Weston, MO 64098<br>Telephone: (816) 640-9940<br>firm@summersandjohnson.com | Robert A. Schwartz, Esq.<br>Bailey & Galyen<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744<br>bschwartz@galyen.com |
| Todd S. Hageman, Esq.<br>Simon and Passanante, PC<br>701 Market St., Suite 1450<br>St. Louis, MO 63101<br>Telephone: (314) 241-2929<br>thageman@spstl-law.com | Mark P. Robinson, Jr., Esq.<br>Robinson, Calcagnie & Robinson<br>620 Newport Center Drive, 7th Floor<br>Newport Beach, CA 92660<br>Telephone: (949) 720-1288<br>mrobinson@robinson-pilaw.com |
| Thomas F. Campion, Esq.<br>Steven M. Selna, Esq.<br>Drinker Biddle & Reath, LLP<br>500 Campus Drive<br>Florham Park, New Jersey 07932-1047<br>Telephone: (973) 360-1100<br>Thomas.Campion@dbr.com<br>steven.selna@dbr.com<br>***Attorneys for Defendants Janssen Pharmaceutical Products and Johnson & Johnson Co.*** | Michael Davis, Esq.<br>James Mizgala, Esq.<br>Sidley Austin LLP<br>One South Dearborn<br>Chicago, IL 60603<br>Telephone:  (312) 853-7731<br>mdavis@sidley.com<br>jmizgala@sidley.com<br>***Attorneys for Defendants AstraZeneca LP and AstraZeneca Pharmaceuticals, LP*** |

| | |
|---|---|
| Elizabeth Raines, Esq.<br>Baker, Sterchi, Cowden & Rice, LLC<br>2400 Pershing Road, Suite 500<br>Kansas City, MO 64108<br>Telephone: (816) 471-2121<br>raines@bscr-law.com | Timothy Reese Balducci, Esq.<br>The Langston Law Firm, PA<br>P.O. Box 787<br>100 South Main Street<br>Booneville, MS 38829-0787<br>Telephone: (662) 728-3138<br>tbalducci@langstonlaw.com |
| Kenneth W. Bean, Esq.<br>Sandberg, Phoenix & von Gontard<br>One City Centre<br>15th Floor<br>St. Louis, MO 63101-1880<br>Telephone: (314) 231-3332<br>kbean@spvg.com<br>***Attorney for Defendant Dr. Asif Habib*** | John Driscoll, Esq.<br>Brown & Crouppen, PC<br>720 Olive St.<br>St. Louis, MO 63101<br>Telephone: (314) 421-0216<br>Jdriscoll@brownandcrouppen.com<br>asmith@brownandcrouppen.com<br>blape@brownandcrouppen.com |
| Aaron K. Dickey, Esq.<br>Goldenberg and Heller, PC<br>P.O. Box 959<br>2227 S. State Road 157<br>Edwardsville, IL 62025<br>Telephone: (618) 650-7107<br>aaron@ghalaw.com | Matthew J. Hamilton, Esq.<br>Pepper Hamilton<br>3000 Two Logan Square<br>18th & Arch Street<br>Philadelphia, PA 19103<br>Telephone: (215) 981-4000<br>hamiltonm@pepperlaw.com |
| Justin Witkin, Esq.<br>Ken Smith, Esq.<br>Aylstock, Witkin & Sasser, PLC<br>4400 Bayou Boulevard<br>Suite 58<br>Pensacola, FL 32503<br>Telephone: (850) 916-7450<br>Jwitkin@AWS-LAW.com<br>ablankenship@aws-law.com<br>ksmith@aws-law.com<br>noverholtz@aws-law.com | David P. Matthews, Esq.<br>Lizy Santiago, Esq.<br>Matthews & Associates<br>2905 Sackett Street<br>Houston, TX 77098<br>Telephone: (713) 222-8080<br>dmatthews@thematthewslawfirm.com<br>lsantiago@thematthewslawfirm.com<br>msalazar@thematthewslawfirm.com |
| Howard Nations<br>Lori A. Siler<br>Howard L. Nations Attorney At Law<br>4515 Yoakum Blvd.<br>Houston, TX 77006-5895<br>Telephone: (713) 807-8400<br>nations@howardnations.com | Mary B. Cotton<br>John D. Giddens, P.A.<br>226 North President Street<br>P.O. Box 22546<br>Jackson, MS 39225-2546<br>Telephone:  (601) 355-2022<br>betsy@law-inc.com |

| | |
|---|---|
| Salvatore M. Machi<br>Ted Machi & Associates PC<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744 | Jona R. Hefner, Esq.<br>3441 W. Memorial, Suite 4<br>Oklahoma City, OK 73134-7000<br>Telephone: (405) 286-3000<br>attorneyokc@hotmail.com |
| David Dickens<br>Miller & Associates<br>105 North Alfred Street<br>Alexandria, VA 22314-3010<br>(703) 519-8080<br>ddickens@doctoratlaw.com | Pete Schneider, Esq.<br>Grady, Schneider & Newman, L.L.P.<br>801 Congress, 4th Floor<br>Houston, TX 77002<br>(713) 228-2200<br>pschneider@gsnlaw.com |
| Fred T. Magaziner<br>Marjorie Shiekman<br>A. Elizabeth Balakhani<br>Shane T. Prince<br>Eben S. Flaster<br>DECHERT LLP<br>Cira Centre<br>2929 Arch Street<br>Philadelphia, PA 19103<br>(215) 994-4000<br>fred.magaziner@dechert.com<br>shane.prince@dechert.com<br>marjorie.shiekman@dechert.com<br>eben.flaster@dechert.com<br>elizabeth.balakhani@dechert.com | Lawrence J. Gornick, Esq.<br>William A. Levin, Esq.<br>Dennis J. Canty, Esq.<br>Levin Simes Kaiser & Gornick LLP<br>44 Montgomery Street, 36th Floor<br>San Francisco, CA 94104<br>Telephone: (415) 646-7160<br>lgornick@lskg-law.com<br>dcanty@lskg-law.com<br>lsimes@levins-law.com<br>jkaiser@lskg-law.com<br>echarley@lskg-law.com<br>ddecarli@lskg-law.com<br>bsund@lskg-law.com<br>astavrakaras@lskg-law.com |
| Scott Burdine, Esq.<br>Hagans Burdine Montgomery<br>Rustay & Winchester, P.C.<br>3200 Travis, Fourth Floor<br>Houston, TX 77006<br>Telephone: (713) 222-2700<br>sburdine@hagans-law.com | Lowell Finson<br>Phillips & Associates<br>3030 North 3rd Street<br>Suite 1100<br>Phoenix, AZ 85012<br>(602) 258-8900, ext. 295<br>lowellf@phillipslaw.ws |
| Gale D. Pearson<br>Stephen J. Randall<br>Pearson, Randall & Schumacher, P.A.<br>Fifth Street Towers, Suite 1025<br>100 South 5th Street<br>Minneapolis, MN 55402<br>(612) 767-7500<br>attorneys@outtech.com | Robert H. Shultz<br>Heyl, Royster<br>103 West Vandalia Street<br>P.O. Box 467<br>Edwardsville, IL 62025<br>(618) 656-4646<br>rshultz@hrva.com<br>bwallace@hrva.com |

- 16 -

| | |
|---|---|
| Ellen R. Serbin<br>Perona, Langer, Beck, Lalande & Serbin<br>300 San Antonio Drive<br>Long Beach, CA 90807-0948<br>(562) 426-6155<br>davidhwang@plblaw.com | Scott Armstrong<br>1719 West Main Street<br>Suite 201<br>Rapid City, SD 57702<br>(605) 399-3994<br>scottarmstrong1235@eathlink.net |
| Linda S. Svitak<br>Faegre & Benson, LLP<br>90 South 7th Street, Suite 2200<br>Minneapolis, MN 55402-3901<br>(612)766-7000<br>lsvitak@faegre.com<br>wjohnson@faegre.com | James J. Freebery<br>McCarter & English, LLP<br>919 N. Market Street, 18th Floor<br>Wilmington, DE 19801<br>(973) 622-4444<br>jfreebery@mccarter.com<br>tpearson@mccarter.com |
| Richard D. Hailey<br>Ramey & Hailey<br>3891 Eagle Creek Parkway<br>Suite C<br>Indianapolis, IN<br>(317) 299-0400<br>rhailey@sprynet.com | B. Andrew List<br>Clark, Perdue, Arnold & Scott<br>471 East Broad Street, Suite 1400<br>Columbus, OH 43215<br>(614) 469-1400<br>alist@cpaslaw.com<br>lcollins@cpaslaw.com |