**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

IN RE: SEROQUEL PRODUCTS           MDL DOCKET  NO:
LIABILITY LITIGATION               6:06-MDL-1769-ACC-DAB

This document relates to:        ALL CASES

**PLAINTIFFS' MEMORANDUM REGARDING SCHEDULING AND SCOPE OF**
**FUTURE DISCOVERY, VENUE OVER "FLORIDA PLAINTIFFS'" CASES, AND**
**ALTERNATIVE DISPUTE RESOLUTION**
**PURSUANT TO THIS COURT'S ORDER (DOC. 551)**

Pursuant to this Court's Order of October 10, 2007 (Doc. 551), the above-referenced

Plaintiffs ("Plaintiffs") file this Memorandum regarding scheduling and scope of discovery,

venue over the "Florida Plaintiffs" cases, and alternative dispute resolution, and would

respectfully show the Court as follows:

A fork in the road has been reached regarding this litigation's pretrial plan.  The

direction chosen from here will determine whether pretrial discovery in this litigation is

concluded justly and efficiently, or whether it becomes mired in a netherworld of case-

specific discovery that is detached from this Court's primary objective of *common* discovery

and issue resolution.

Looking forward, Plaintiffs recommend a path that follows the "natural progression"

of an MDL proceeding—i.e., a primary focus on general liability, global fact witness, and

expert witness discovery, as well as related motion practice, applicable to all Plaintiffs, that

minimizes the "burgeoning cost of pretrial activity."  *See* Manual for Complex Litigation

(Fourth) § 13 (2004).  Left unchecked, the transaction costs associated with superfluous, and

1

ultimately duplicative, pretrial activity frustrates the "premium [placed] on settling early in the litigation." *See id.* In accordance with the very purpose of the MDL, Plaintiffs' plan for future discovery reins in such costs, while advancing cases toward settlement or trial resolution.

Defendants, by comparison, urge the Court and parties to undertake additional case-specific discovery in the so-called "Florida Plaintiffs" cases, even though Defendants have consistently bitten off more than they can chew in discovery. Defendants cannot meet their obligations with respect to the case-specific discovery already underway and, as the Court is intensely aware, have been woefully deficient in their production of relevant documents and databases. (*See* Order on Pls.' Mot. for Sanctions (Doc. 393).)

In short, Plaintiffs recommend a discovery plan going forward that emphasizes completion of general liability and expert witness discovery, as well as related motion practice, *common to all Plaintiffs' cases*, while deferring case-specific discovery until after the completion of general discovery. Plaintiffs' proposal also limits and concentrates case-specific discovery to a manageable number of cases on which the parties may actually proceed to trial.

## I.
### SCHEDULE AND SCOPE OF FUTURE DISCOVERY AND TREATMENT OF THE "FLORIDA PLAINTIFFS'" CASES

**A. The Court Should Not Be Sidetracked From Its Fundamental Mission To Complete General Liability Discovery And Motion Practice *Common To All Plaintiffs*.**

Defendants' desire to cull through all 6000+ cases currently before the MDL—while serving well Defendants' motive to wedge a functional impasse into these proceedings, and

defense counsel's intent to reap the rewards of "working the file"—does nothing to promote the plain objectives and goals set forth in 28 U.S.C. § 1407.  Upon reference to the statute, defense counsel might observe that these cases have been transferred to this Court purely for "coordinated and *consolidated*" pretrial proceedings.  Indeed, if the primary objective— contrary to the statute—were to conduct case-specific discovery in over 6000 cases, there would be no need for these cases to have been transferred to the Middle District of Florida at all.  Instead, the respective transferor courts—or the courts where venue would ultimately lie—could conduct their own consolidated proceedings, as necessary, and oversee case-specific discovery on a much smaller, more manageable subset of cases.

It is indisputable that the purpose of multidistrict litigation ("MDL") is to "promote judicial economy and litigant efficiency by allowing the transferee court to preside over matters *common among all cases*."  *In re: Meridia Prods. Liab. Litig.*, 328 F.Supp.2d 791, 798 (N.D. Ohio 2004) (emphasis added); *see In re Phenylpropanolamine Prods. Liab. Litig.*, No. MDL 1407, 2004 WL 2034587, at *2 (W.D. Wash. Sept. 3, 2004) (same); *see also In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 102 F.3d 1524, 1543 (9th Cir. 1996) ("section 1407(a) does not transfer the case for the conduct of *all* pretrial proceedings, only those that are '*coordinated and consolidated*'") (emphasis added), *rev'd on other grounds sub nom. Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998).

Furthermore, overemphasis on case-specific discovery—especially where significant common-issue discovery remains outstanding, as here—violates the "natural order" of an MDL.  Conducting case-specific discovery prior to the completion of that discovery concerning the "one or more common issues of fact" contemplated by 28 U.S.C. § 1407

prolongs the MDL indefinitely, forces parties to await completion of discovery that is of no relevance to their particular cases, and frustrates the possibility of settling individual cases between completion of common discovery and case-specific discovery. *In re Factor VIII or IX Concentrate Blood Prods. Litig.*, 169 F.R.D. 632, 638-39 (N.D. Ill. 1996). Indeed, such an approach turns the MDL proceeding on its head because the resolution of "*common* questions of fact" is the impetus (***not to mention statutory justification***) for the consolidated proceeding in the first place, and because a "multidistrict proceeding is not the appropriate mechanism for the conduct of case-specific discovery" that, "[b]y definition, . . . is not of general interest to the parties in all of the individual cases which comprise the MDL." *Id.* at 638; *see In re Bridgestone/Firestone, Inc.*, 128 F.Supp.2d 1196, 1198 (S.D. Ind. 2001) (stating that a *suggestion for remand may be appropriate* "[i]n personal injury/death cases ***where only case-specific discovery and motion practice remains***") (emphasis added).

Of course, Defendants' case-specific discovery plan was never intended to prepare the consolidated cases for remand or trial. It was, by design, intended to sidetrack, if not derail, the MDL process. As a result of Defendants' tactics, case-specific discovery has subsumed the parties' time and resources, impeding their efforts towards completion of the MDL's primary objectives: general liability and expert witness discovery, as well as related motion practice, common to all Plaintiffs. All the while, defense counsel continues billing time, and both sides continue to rack up huge expenses. *See* Manual for Complex Litigation (Fourth) §10.1 ("Judges should tailor case management procedures to the needs of the particular litigation *and to the resources available from the parties* and the judicial system.") (emphasis added). Such hugely increased costs only serve to dissuade any potential

resolution of these cases short of trial.  *See* Manual for Complex Litigation (Fourth) § 13 (2004) ("The benefits of settlement are diminished . . . if it is postponed until discovery is completed.  A better approach may be to target early discovery at information needed for settlement negotiations."); *see also* Manual for Complex Litigation (Fourth) § 11.45 ("Depositions are often overused and conducted inefficiently, and thus tend to be the most costly and time-consuming activity in complex litigation.  The judge should manage the litigation so as to avoid unnecessary depositions, limit the number and length of those that are taken, and ensure that the process of taking depositions is as fair and efficient as possible.").

**B.  The Current Discovery Plan Has Proved Unworkable.**

The current discovery plan, which Defendants pressed the Court to adopt, is broken. This circumstance is neither the fault of the Court nor the Plaintiffs; blame instead lies with the Defendants, whose reticence and delay in complying with their discovery obligations and this Court's orders have made a shambles of general liability discovery and scheduling in this MDL.

With respect to case-specific discovery, despite Defendants' vastly superior resources—including thousands of attorneys across several global law firms—defense counsel has violated the Court's directives in nearly every case designated for case-specific discovery, including the failure to make timely, Court-ordered disclosures.  The Court has also deemed sanctionable Defendants' "purposefully sluggish" general discovery production—a situation that is at least several months from being rectified, even over one year after this Court's initial pretrial conference.  In fact, the Court's express orders

notwithstanding (*see, e.g.,* Order of October 17, 2007 (Doc. 577)), Defendants continue to let their production deadlines pass unfulfilled.

The initial discovery schedule was an ambitious endeavor under the best circumstances—i.e., with both sides in perfect compliance with discovery obligations and all relevant information produced immediately.  Defendants promised such full compliance on the record.[1]  The schedule left no room for error.  Once it became clear that Defendants would not be able, or were unwilling, to sustain the schedule, it necessarily required reevaluation.  All the while, Plaintiffs were either complying with their discovery obligations, or their cases were disposed of via the severest of sanctions for failure to comply: dismissal with prejudice.  While Plaintiffs have been held to a perfection or dismissal standard, Defendants have committed discovery abuse that the Court has already deemed sanctionable, although no sanctions have yet been imposed.  All of this has resulted in an unsupportable double standard and corresponding prejudice to Plaintiffs who have to conduct depositions without the use of relevant documents and who are forced to refute

---

[1]

| | 24 | [McCONNELL]: We have a schedule.  We can produce all the documents |
| | 25 | no later than September [2007].  That's not that far off.  And in |
| | 1 | a case of this magnitude, that's with unprecedented |
| | 2 | celerity. |

(Tr. of Hr'g March 2, 2007 at 16-17.)

| | 7 | MR. MAGAZINER:  We will devote whatever |
| | 8 | resources we need to – on AstraZeneca's side – to take |
| | 9 | the discovery.  It would be ambitious, but we're willing |
| | 10 | to devote those resources to take the discovery in all of |
| | 11 | these cases on any schedule that the Court proposes. |
| | 12 | If we were to try to do that in all 7,000 cases, and |
| | 13 | let's say we have another 18 months, whatever 7,000 |
| | 14 | divided by 18 turns out to be, we would do that many per |
| | 15 | month. |

(Tr. of Hr'g March 2, 2007 at 94.)

defenses without the aid of full general liability discovery. For those Plaintiffs' cases that have already undergone case-specific discovery, such prejudicial circumstances may never be corrected. Truly, the issue is no longer one of merely "scheduling," but instead involves infringement upon and frustration of Plaintiffs' due process rights. For reasons of fairness and justice, the Court should put the cart back behind Defendants' slow, discovery-abusing horse.[2]

As of October 15, 2007, forty-five (45) Plaintiffs' depositions had been conducted by Defendants. It is no surprise to Plaintiffs' counsel, nor, likely, to the Court, that Defendants have identified six of the 45 cases to parade in front of the Court—falsely—as entirely representative of the remaining 6000+ cases. As should be transparent to the Court, Defendants intend for such isolated and anecdotal evidence to taint the record and kick up dust in order to divert the Court's attention from Defendants' failures to comply with their discovery obligations and the Court's schedule and orders. As in all cases, there is conflicting evidence, but Defendants have attempted in their proposal—out of school—to

---

[2]

| | | |
|---|---|---|
| | 23 | [THE COURT]: You're entitled to the documents sooner than that, |
| | 24 | and then you're going to pick the witnesses that you |
| | 25 | really need to take. I don't know why it should take more |
| | 1 | than six or seven months to get all – everything you |
| | 2 | need. |
| | 3 | MR. PENNOCK: Well, Judge, we have been here, as |
| | 4 | the Court is well aware, for six months already. |
| | 5 | THE COURT: That's what troubles me. You should |
| | 6 | have had some – a lot of this stuff way before now. If |
| | 7 | you haven't gotten it, that's a problem. |

(Tr. of Hr'g March 2, 2007 at 12-13.)

mislead the Court (and prejudice Plaintiffs' cases) by asserting that they alone have favorable evidence.[3]

To the contrary, Plaintiffs have also gleaned facts from the case-specific discovery process that would support Defendants' liability and refute defenses in *individual* cases.[4] However, such discovery has no residual value beyond the issues presented in any individual case.   Moreover, the opporutnity cost of such discovery greatly outweighs its value; specifically time spent focused on developing each individual case constitutes time not spent conducting discovery of information applicable to all cases.

Defendants' self-serving identification of six cases through case-specific discovery in which it questions liability—with nothing yet presented in any form of dispositive motion— does not obscure the fact that there is compelling evidence, ***applicable to all cases pending in the MDL***, of systemic false and misleading conduct relating to Defendants' representations regarding the safety and efficacy of Seroquel:

- Defendants' deviations from Seroquel's labeling in its marketing are well documented.  The FDA reprimanded Defendants for making false statements in its promotion of Seroquel immediately after launch.  In a May 1999 letter

---

[3]    A key example of Defendants' failed pre-deposition disclosures in case-specific discovery relates to disclosure of Defendants' payments to prescribers.  The parties' conducted the deposition of Plaintiff Lisa Grant's prescriber, Dr. Shah, on August 30, 2007.  Defendants' first disclosure on July 20, 2007 revealed that AstraZeneca made three (3) payments made to Dr. Shah (who Plaintiffs' counsel later learned regularly performed speaking engagements for AstraZeneca).  On October 10, 2007—more than 30 days after the deposition—Plaintiffs' received an amended disclosure from Defendants showing **121 payments** to Dr. Shah. As a result, Plaintiffs never fully appreciated, prior to the deposition, Dr. Shah's significant business dealings with Defendants and the strong potential for bias in this witness.  Plaintiffs have prepared, and intend to file, a further Motion for Sanctions addressing Defendants' continuing violations of court-ordered discovery relative to their case-specific deposition and discovery program.

[4]    For example, in Plaintiffs' deposition of Dr. Thomas Wikstrom, one of the individual Plaintiff's prescribers, on September 26, 2007, the doctor readily admitted the cause and effect relationship between Seroquel and diabetes and testified to the assurances he had received from Defendants' sales and other representatives as a "consistent message" concerning the lack of causal connection between diabetes, weight gain, and Seroquel.  (Tr. of Depo. of Dr. Thomas Wikstrom at 156-58, 165-66.)

from the FDA to Anthony Rogers, Director of Marketed Products Group (the "May 1999 DDMAC Letter"), the agency referenced its November 24, 1998 Warning Letter requesting information about statements that the FDA found to be false and misleading, including (1) Defendants' claims that Seroquel is effective in a broader range of mental conditions than those for which it was approved, including bipolar disorder and schizoaffective disorder; (2) Defendants' claims as to how Seroquel "works" (the mechanism of action of antipsychotic drugs is unknown); and Defendants' claims that Seroquel had been proven safer and more effective than first generation antipsychotics.[5]

- In 2006, the FDA caught Defendants deceptively downplaying the association between Seroquel and diabetes.[6]   According to the FDA, Defendants' marketing of Seroquel "raises significant public health and safety concerns through its minimization of the risks associated with Seroquel." Among Defendants' false and misleading statements regarding Seroquel's safety were the following: (1) failing to warn doctors of the increased risk of treatment-emergent hyperglycemia-related adverse events in patients treated with Seroquel in its promotions, thus undermining the FDA-approved labeling; (2) misrepresenting the incidence of diabetes in post-marketing adverse event reports; and (3) failing to include relevant risk information about Seroquel. According to the FDA, Defendants' marketing characterizes Seroquel in a manner that "undermine[s]" the approved warning related to diabetes. Defendants' deceptive deviations from its approved labeling resulted, again according to FDA, constituted failures to warn doctors that treating their patients with Seroquel could result in an increased risk of new onset diabetes.

- A September 2004 independent clinical study regarding the relationship between antipsychotic medication treatment and new cases of diabetes among psychiatric patients concluded that "[e]xposure to multiple second-generation anti-psychotics or clozapine or quetiapine [Seroquel] significantly increased the risk of treatment-emergent diabetes mellitus."

- In January 2002, Defendants sent an "Emergency Safety Information" letter to Japanese doctors warning of "**Diabetic ketoacidosis and diabetic coma due to an increase in blood glucose level during administration of Seroquel@ 25mg, lOOmg tablets (quetiapine)**." (Emphasis in original.)  This "Dear Doctor" letter was sent by Defendants to doctors in Japan *two full years* before Defendants began "warning" American doctors—being mindful of

---

[5]      *See* May 1999 DDMAC letter, attached as Exhibit "A" to Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss on the Basis of Federal Preemption (Doc. 365).

[6]      *See* November 2006 DDMAC letter, attached as Exhibit "B" to Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss on the Basis of Federal Preemption (Doc. 365).

9

Defendants' FDA-recognized warning failures noted above—of the increased risk of diabetes as a result of taking Serequel.

Finally, the case-specific discovery that has been and will be accomplished under the current plan faces the real danger of becoming stale or, for other unforeseen reasons, requiring later duplication. The Manual for Complex Litigation cautions that discovery should not be conducted "so far in advance of the anticipated trial date that the product of discovery becomes stale and the parties' preparation outdated." Manual for Complex Litigation (Fourth) § 11.422 (2004). Here, Plaintiffs' often deteriorating health conditions and ongoing medical treatment may very likely render those case-specific Plaintiffs', treaters', and prescribers' depositions taken in August, September, and October of this year, and going forward, outdated by the time of trial, still many months if not years away. Certainly Defendants will insist that such depositions be conducted again at a time closer to trial, most likely in the transferor districts. Such duplication of expensive, time-consuming discovery signals a failure to accomplish the MDL's objective of just, speedy, and inexpensive resolution of this litigation. *See* Manual for Complex Litigation (Fourth) § 11.211 (2004) (internal quotation marks omitted).[7]

Given Defendants' failed general discovery production, tardy or absent case-specific disclosures, and their inability to manage what can only be deemed a disconnected case-specific discovery process—among other discovery violations—the Court should view with caution (and skepticism) Defendants' proposals urging additional case-specific discovery.

---

[7]     Moreover, as noted above, the deposition discovery conducted to date is of little value or use, as Defendants' have failed to comply with their Court-ordered obligations regarding pre-deposition disclosures.

**C.** *In re Zyprexa* **And Other Mass Tort Cases Guide The Efficient Resolution Of This Litigation.**

The sister litigation to this proceeding, *In re Zyprexa Products Liability Litigation*, MDL-1596, indeed provides a roadmap for just, speedy, and inexpensive determination of this litigation. As the Court is familiar, *In re Zyprexa* involves parallel allegations of "off-label" promotion and "failure to warn" against Eli Lilly & Company over its drug Zyprexa, another anti-psychotic drug in the same class as Seroquel. In that MDL proceeding, which commenced in April 2004, the parties engaged in general liability and general causation discovery for approximately the first 18 months to two years, turning to case-specific discovery of in a manageable number of cases (approximately 30) filed in that court (not requiring J.P.M.L. transfer) only after over 10,000 other cases in the MDL had been resolved. *See* 489 F.Supp.2d 230 (E.D.N.Y. 2007); *see also In re Zyprexa*, MDL-1596, 2006 WL 335448, at *1 (E.D.N.Y. February 14, 2006). The *Zyprexa* MDL also utilized numerous Special Masters to oversee discovery and, with particular success, employed Special Master Kenneth Feinberg, Esq. to help facilitate an efficient resolution through settlement, as further discussed below.

Similarly, the *In re Baycol* litigation proceeded with general discovery for approximately two years before case-specific discovery commenced, with thousands of cases having already been resolved either by settlement or agreed stipulations of dismissal. *See In re Baycol Prods. Liab. Litig.*, 495 F.Supp.2d 977, 982 (D. Minn. 2007). Further, case-specific discovery proceeded only as part of a trial program, because the parties had waived the *Lexecon* issues and had agreed to try the cases before the MDL judge. (Tr. of Hr'g March 2, 2007 at 82.)

11

### D. __Defendants' Venue Arguments Fail With Regard To The So-Called "Florida Plaintiffs'" Cases.__

The Supreme Court's decision in *Lexecon v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998), along with 28 U.S.C. §§1391, 1407 and 1404, make clear the two possible mechanisms by which a transferee court may acquire jurisdiction over cases consolidated pursuant to 28 U.S.C. §1407 for the purpose of conducting trial proceedings.

First, certain consolidated Plaintiffs may seek leave to amend their pleadings to allege the propriety of venue in the Middle District of Florida pursuant to section 1391. To date, thirty-six (36) Florida residents, whose cases were originally filed in the District of Massachusetts, have announced their intention to so amend, with other "Florida" cases potentially subject to consenting to venue before this Court. Should the Court grant these Plaintiffs' motions, venue will be established in this Court for all purposes.

Defendants have no role in determining whether Plaintiffs are permitted to amend their pleadings. In other words, no "consent" on Defendants' part is required for any Plaintiff to amend its allegations regarding proper venue under section 1391. Rather, once venue is established, Defendants may object to Plaintiffs' venue allegations through a motion to transfer venue under section 1404 or move to dismiss Plaintiffs' claims on *forum non conveniens* grounds.[8]

Thus, while Defendants have no right to consent to, or oppose, Plaintiffs' ability to make venue allegations, they are afforded a remedy after pleadings are amended and venue is established. Should Defendants prevail on a section 1404 motion, this Court, having

---

[8]     Any *forum non conveniens* argument would seem to contradict the consolidation of these cases under section 1407 because such a motion would have to be premised on an argument that the United States Federal Judicial System is an inappropriate forum for Seroquel claims brought by United States residents.

acquired venue by virtue of the Plaintiffs' amendment regarding section 1391, would have jurisdiction to transfer venue to the District Court it deems appropriate in light of its section 1404 analysis.  However, without a Plaintiff's assertion that venue is proper in this Court, only a transferor court may rule on a section 1404 motion, as *Lexecon* makes clear.  523 U.S. at 40; *see* Gregory Hansel, *Extreme Litigation: An Interview with Judge Wm. Terrell Hodges, Chairman of the Judicial Panel on Multidistrict Litigation*, 19 Me. B.J. 16, 18 (Winter 2004) (stating that section 1407(a) and *Lexecon* "insure that the plaintiff's choice of forum [is] not completely disrupted . . . .").

Second, upon the conclusion of MDL pretrial proceedings, and suggestion of remand to the Judicial Panel on Multidistrict Litigation, the original transferor court may entertain a section 1404 motion to transfer venue back to the Middle District of Florida.  If such a motion is granted, the Court will acquire jurisdiction over transferred cases for all purposes, including trial.

Defendants urge the Court to require all consolidated "Florida Plaintiffs" to show cause why their cases should not be transferred to the Middle District of Florida for trial. Plaintiffs fail to see any practical distinction between such a procedure and this Court's consideration of a motion to transfer venue, which is precisely what *Lexecon* holds it is prohibited from doing.  523 U.S. at 40.  Defendants' suggestion is merely a transparent attempt to "backdoor" venue transfers by requiring Plaintiffs to respond, in effect, to a "phantom" motion to transfer venue that is not on file and which the Court is prohibited from granting under *Lexecon*.  *Id.*

Nevertheless, as described below, Plaintiffs are amenable to consideration of the Court's adoption of a system under which it might select a fair, representative, and manageable number of cases for trial in this Court.

### E.   A Fair, Representative System Of Case Selection, Controlled By The Court, Would Facilitate Case-Specific Discovery Culminating In Trials Before The Court.

Without waiving Plaintiffs' individual rights both to set venue and against self-transfer of cases under *Lexecon*, Plaintiffs may consent to a fair, balanced system whereby the Court selects a manageable number of representative, individual cases—not only from Florida, but also from other jurisdictions where Plaintiffs have consented to venue in the Middle District of Florida—for which to conduct case-specific discovery and trial.  Such cases would be selected from a pool of cases populated by both Plaintiffs' and Defendants' case selections.  Under such a system, both Plaintiffs and Defendants would have the opportunity to nominate an identical number of representative cases to present to the Court for selection, complete with case descriptions and categorized by type of injury and/or other appropriate classifications.  The Court would then select an identical number of Plaintiffs' and Defendants' cases for its case-specific discovery and trial pool.

### F.   Plaintiffs' Proposal For The Schedule And Scope Of Future Discovery.

While the Court, in developing and launching the initial pretrial plan for this litigation, reasonably erred on the side of over inclusiveness with respect to case-specific discovery, it should not hesitate to "modify plan components that prove impractical" as the litigation proceeds.  Manual for Complex Litigation (Fourth) § 10.13; *see id.* § 11.41 ("A plan established early in the litigation needs to take into account the possibility of

14

revisions . . . ."). Against the above backdrop, Plaintiffs urge the Court's reemphasis on general liability and common-issue discovery, and propose the following regarding the future scope of discovery in this litigation:

1. The Court should discontinue further case-specific Plaintiffs' depositions until such time as Defendants have fully complied with their general discovery obligations and all pending discovery Orders, as determined by the Special Master and the Court.

2. Absent the discontinuance recommended in Item 1 above, the Court should terminate case-specific Plaintiffs' depositions after the completion of those Plaintiffs' depositions scheduled for January 2008. At that point, Defendants will have had the opportunity to depose approximately 120 Plaintiffs, well in excess of the 100 depositions that defense counsel claimed were necessary to properly evaluate a sampling of Plaintiffs' claims. (*See* Tr. of Hr'g March 2, 2007 at 93:1-8.) No further case-specific Plaintiffs depositions should be scheduled until such time as Defendants have fully complied with their general, custodial discovery obligations and all pending discovery Orders, as determined by the Special Master and the Court, and further case-specific discovery should relate only to those cases for which venue has been set in this Court, as described in Item 3 below.

3. After such time as Defendants have fully complied with their general, custodial discovery obligations and all pending discovery Orders, as determined by the Special Master and the Court, the Court should select a manageable subset of bellwether or exemplar cases from those Plaintiffs who have chosen to lay venue in this Court, and issue an order setting a trial date and governing case-specific discovery for those cases. The parties may then proceed to prepare those cases for trial.

In addition, Plaintiffs expressly incorporate by reference, as if repeated in full herein, its Motion to Amend Current Deadlines And Various Discovery Orders (Doc. 567) and the relief requested therein, particularly with regard to requested modifications of Case Management Order No. 2 (Doc. 129) and the Court's Order of March 7, 2007 (Doc. 173).

## II.
## ALTERNATIVE DISPUTE RESOLUTION

The Manual for Complex Litigation recommends the appointment of Special Masters in handling complex matters such as settlements. Manual for Complex Litigation (Fourth) §§ 10.14, 11.52 (2004). Special Masters have proven extremely helpful in numerous litigations, but none more relevant than *In re Zyprexa Products Liability Litigation*. There, Special Master Feinberg was instrumental in not only administering a large and complex settlement plan agreed to by the parties, but indeed was instrumental in forging that agreement, preserving it through the difficult passage from "hand shake" to paper, and crafting the details of everything from the criteria utilized to the timing of events. By reason of his extensive experience with the *Zyprexa* litigation, Mr. Feinberg has gained crucial knowledge regarding the science, damages, and unique difficulties involved with resolving atypical anti-psychotic cases. Mr. Feinberg has also assisted parties and courts through a myriad of other litigations as Special Settlement Master, including *In re DES Cases*, *In re Joint Eastern and Southern District Asbestos Litigation*, *In re Eagle-Picher Industries, Inc.*, *In re Agent Orange*, and *In re Andrew Herman, et al. v. Westinghouse*. Most significantly, Mr. Feinberg was appointed in 2001 by the Attorney General of the United States as the Special Master of the federal September 11th Victim Compensation Fund program. Therefore, to provide the necessary mechanism and framework for ADR should the parties opt to discuss settlement in any or all of the cases pending in this MDL, Plaintiffs propose and re-urge their earlier Motion to Appoint Kenneth Feinberg as Special Settlement Master (See Doc. 235).

Respectfully submitted

By:     /s/ K. Camp Bailey         
        F. Kenneth Bailey Jr.
        K. Camp Bailey
        Fletcher V. Trammell
        Robert W. Cowan
        **BAILEY PERRIN BAILEY LLP**
        440 Louisiana St., Suite 2100
        Houston, Texas 77002
        (713) 425-7100 Telephone
        (713) 425-7101 Facsimile
        kbailey@bpblaw.com
        cbailey@bpblaw.com
        ftrammell@bpblaw.com
        rcowan@bpblaw.com
        **Co-Lead Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of October, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a Notice of Electronic Filing to the counsel listed on the attached Service List.

        /s/  Robert W. Cowan        
        Robert W. Cowan

**SERVICE LIST**
(As of September 5, 2007)

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No.  1769 - Orl - 22DAB**

| | |
|---|---|
| Paul J. Pennock, Esq.<br>Michael E. Pederson, Esq.<br>Weitz & Luxenberg, P.C.<br>180 Maiden Lane - 17th Floor<br>New York, NY 10038<br>Telephone:  (212) 558-5500<br>Ppennock@weitzlux.com<br>Mpederson@weitzlux.com | Camp Bailey, Esq.<br>Fletcher Trammell, Esq.<br>Michael W. Perrin, Esq.<br>Bailey Perrin Bailey LLP<br>The Lyric Centre<br>440 Louisiana, Suite 2100<br>Houston, TX  77002<br>Telephone:  (713) 425-7240<br>cbailey@bpblaw.com<br>mperrin@bpblaw.com |
| Larry Roth, Esq.<br>Law Offices of Larry M. Roth, P.A.<br>Post Office Box 547637<br>Orlando, FL  32854-7637<br>Telephone:  (407) 872-2239<br>lroth@roth-law.com | Tommy Fibich, Esq.<br>Fibich, Hampton & Leebron, L.L.P.<br>1401 McKinney, Suite 1800<br>Five Houston Center<br>Houston, TX  77010<br>Telephone:  (713) 751-0025<br><br>tfibich@fhl-law.com |
| Matthew F. Pawa, Esq.<br>Law Offices of Matthew F.Pawa, P.C.<br>1280 Centre St., Suite 230<br>Newton Centre, MA 02459<br>Telephone:  (617) 641-9550<br>Mp@pawalaw.com | John Driscoll, Esq.<br>Brown & Crouppen, PC<br>720 Olive St.<br>St. Louis, MO  63101<br>Telephone:  (314) 421-0216<br>Jdriscoll@brownandcrouppen.com<br>asmith@brownandcrouppen.com<br>blape@brownandcrouppen.com |

| | |
|---|---|
| Keith M. Jensen, Esq.<br>Jensen, Belew & Gonzalez, PLLC<br>1024 North Main<br>Fort Worth, TX 76106<br>Telephone:  (817) 334-0762<br>kj@kjensenlaw.com | Scott Allen, Esq.<br>Cruse, Scott, Henderson & Allen, L.L.P.<br>2777 Allen Parkway, 7th Floor<br>Houston, Texas 77019<br>Telephone: (713) 650-6600<br>sallen@crusescott.com |
| Matthew E. Lundy, Esq.<br>Lundy & Davis, LLP<br>333 North Sam Houston Parkway East<br>Suite 375<br>Houston, TX  77060<br>Telephone:  (281) 272-0797      .<br>mlundy@lundydavis.com | W. Todd Harvey, Esq.<br><br>E. Ashley Cranford, Esq.<br>Whatley Drake & Kallas, LLC<br>2323 2nd Avenue North<br>Birmingham, AL  35203<br>Telephone:  (205) 328-9576<br>THARVEY@whatleydrake.com<br>ecf@whatleydrake.com |
| Lawrence J. Gornick, Esq.<br>William A. Levin, Esq.<br>Dennis J. Canty, Esq.<br>Levin Simes Kaiser & Gornick, LLP<br>44 Montgomery Street<br>36th Floor<br>San Francisco, CA  94104<br>Telephone:  (415) 646-7160<br>lgornick@lskg-law.com<br>dcanty@lskg-law.com<br>**llsimes@levins-law.com**<br>**jkaiser@lskg-law.com**<br>**echarley@lskg-law.com**<br>**ddecarli@lskg-law.com**<br>**bsund@lskg-law.com**<br>**astavrakaras@lskg-law.com** | Gregory P. Forney, Esq.<br>Shaffer Lombardo Shurin<br>911 Main Street, Suite 2000<br>Kansas City, MO 64105<br>Telephone:  (816) 931-0500<br>gforney@sls-law.com<br>rbish@sls-law.com<br>***Attorney for Defendant,***<br>***Marguerite Devon French*** |
| Robert L. Salim, Esq.<br>Robert L. Salim Attorney at Law<br>PO Box 2069<br>Natchitoches, LA 71457-2069<br>Telephone:  (318) 352-5999<br>robertsalim@cp-tel.net | Eric B. Milliken, Esq.<br>3 Sir Barton Ct.<br>Newark, DE 19702<br>***Pro Se*** |

| | |
|---|---|
| Justin Witkin, Esq.<br>Ken Smith, Esq.<br>Aylstock, Witkin & Sasser, PLC<br>4400 Bayou Boulevard, Suite 58<br>Pensacola, FL  32503<br>Telephone:  (850) 916-7450<br>Jwitkin@AWS-LAW.com<br>ablankenship@aws-law.com<br>aburrus@aws-law.com<br>asmith@aws-law.com<br>mailto:jsale@aws-law.comksmith@aws-law.com<br>noverholtz@aws-law.com<br>jsafe@aws-law.com | Louisiana Wholesale Drug Co. Inc.<br>C/O Gayle R. White<br>Registered Agent<br>Highway 167N<br>Sunset, LA 70584<br>*Pro Se* |
| Aaron C. Johnson, Esq.<br>Summers & Johnson<br>717 Thomas<br>Weston, MO 64098<br>Telephone:  (816) 640-9940<br>firm@summersandjohnson.com | Catherine Solomon<br>(current address unknown)<br>*Pro Se* |
| Todd S. Hageman, Esq.<br>Simon and Passanante, PC<br>701 Market St., Suite 1450<br>St. Louis, MO 63101<br>Telephone:  (314) 241-2929<br>thageman@spstl-law.com | Randy Niemeyer<br>22442 Pike 309<br>Bowling Green, MO 63334-5209<br>*Pro Se* |

| | |
|---|---|
| Thomas Campion, Esq.<br>Steven M. Selna<br>Heidi E. Hilgendorff, Esq.<br>Drinker Biddle & Reath, LLP<br>500 Campus Drive<br>Florham Park, New Jersey 07932-1047<br>Telephone:  (973) 360-1100<br>tcampion@dbr.com<br>steven.selna@dbr.com<br>heidi.hilgendorff@dbr.com<br><br>***Attorneys for Defendants Janssen Pharmaceutical Products and Johnson & Johnson Co.*** | Mary B. Cotton<br>John D. Giddens, P.A.<br>226 North President Street<br>Post Office Box 22546<br>Jackson, MS 39225-2546<br>(601) 355-2022<br>betsy@law-inc.com |
| Michael Davis, Esq.<br>James Mizgala, Esq.<br>Sidley, Austin, LLP<br>Bank One Plaza<br>One South Dearborn Street<br>Chicago, IL 60603<br>Telephone:  (312) 853-7731<br>mdavis@sidley.com<br>jmizgala@sidley.com<br>***Attorneys for Defendants AstraZeneca LP and AstraZeneca Pharmaceuticals, LP*** | Timothy Reese Balducci, Esq.<br>The Langston Law Firm, PA<br>P.O. Box 787<br>100 South Main Street<br>Booneville, MS 38829-0787<br>Telephone: (662) 728-3138<br>tbalducci@langstonlaw.com |
| Elizabeth Raines, Esq.<br>Baker, Sterchi, Cowden & Rice, LLC<br>2400 Pershing Road, Suite 500<br>Kansas City, MO 64108<br>Telephone:   (816) 471-2121<br>raines@bscr-law.com<br>***Attorney for Defendant AstraZenca, PLC*** | Kenneth W. Bean, Esq.<br>Sandberg, Phoenix & von Gontard<br>One City Centre<br>15th Floor<br>St. Louis, MO 63101-1880<br>Telephone: (314) 231-3332<br>kbean@spvg.com<br>***Attorney for Defendant Dr. Asif Habib*** |

| | |
|---|---|
| Robert L. Ciotti, Esq.<br>Carlton Fields, P.A.<br>4221 W. Boy Scout Boulevard<br>Suite 1000<br>Tampa, FL 33607-5736<br>Telephone: (813) 223-7000<br>rciotti@carltonfields.com<br>**Attorney for Defendants, Astrazeneca**<br>**Pharmaceuticals, LP and Astrazeneca LP** | Aaron K. Dickey, Esq.<br>Goldenberg and Heller, PC<br>P.O. Box 959<br>2227 S. State Road 157<br>Edwardsville, IL 62025<br>Telephone: (618) 650-7107<br>aaron@ghalaw.com |
| Jona R. Hefner, Esq.<br>3441 W. Memorial, Suite 4<br>Oklahoma City, OK 73134-7000<br>Telephone: (405) 286-3000<br>attorneyokc@hotmail.com | Mark P. Robinson, Jr., Esq.<br>Robinson, Calcagnie & Robinson<br>620 Newport Center Drive, 7th Floor<br>Newport Beach, CA 92660<br>Telephone: (949) 720-1288<br>mrobinson@robinson-pilaw.com |
| David P. Matthews, Esq.<br>Matthews & Associates<br>2905 Sackett<br>Houston, TX 77098<br>Telephone: (713) 222-8080<br>dmatthews@thematthewslawfirm.com<br>lsantiago@thematthewslawfirm.com | Robert A. Schwartz, Esq.<br>Bailey & Galyen<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744<br>bschwartz@galyen.com |
| David Dickens<br>Miller & Associates<br>105 North Alfred Street<br>Alexandria, Virginia 22314-3010<br>(703) 519-8080<br>ddickens@doctoratlaw.com | Howard Nations<br>Lori A. Siler<br>4515 Yoakum Boulevard<br>Houston, TX 77006-5895<br>Telephone: (713) 807-8400<br>nations@howardnations.com |

| | |
|---|---|
| Salvatore M. Machi<br>Ted Machi & Associates, PC<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058 | Scott Burdine, Esq.<br>Hagans Burdine Montgomery<br>Rustay & Winchester, P.C.<br>3200 Travis, Fourth Floor<br>Houston, TX 77006<br>Telephone: (713) 222-2700<br>sburdine@hagans-law.com |
| Pete Schneider, Esq.<br>Grady, Schneider & Newman, L.L.P.<br>801 Congress, 4th Floor<br>Houston, Texas 77002<br>(713) 228-2200<br>pschneider@gsnlaw.com | Lizy Santiago, Esq.<br>Abraham, Watkins, Nichols,<br>Sorrels, Matthews & Friend<br>800 Commerce Street<br>Houston, TX 77002-1776<br>(713) 222-7211<br>lsantiago@abrahamwatkins.com |
| Fred T. Magaziner<br>Marjorie Shiekman<br>A. Elizabeth Balakhani<br>Shane T. Prince<br>Eben S. Flaster<br>DECHERT LLP<br>2929 Arch Street<br>Philadelphia, PA 19103<br>(215) 994-4000<br>fred.magaziner@dechert.com<br>shane.prince@dechert.com<br>marjorie.shiekman@dechert.com<br>eben.flaster@dechert.com<br>elizabeth.balakhani@dechert.com | Lowell Finson<br>Phillips & Associates<br>3030 North 3rd Street<br>Suite 1100<br>Phoenix, AZ 85012<br>(602) 258-8900, ext. 295<br>lowellf@phillipslaw.ws |
| Scott Armstrong<br><br>1719 West Main Street<br><br>Suite 201<br><br>Rapid City, SD 57702<br><br>(605) 399-3994<br><br>scottarmstrong1235@eathlink.net | Linda S. Svitak<br>Faegre & Benson, LLP<br>90 South 7th Street, Suite 2200<br>Minneapolis, MN 55402-3901<br>(612)766-7000<br>lsvitak@faegre.com<br>wjohnson@faegre.com |

| | |
|---|---|
| James J. Freebery<br>McCarter & English, LLP<br>919 N. Market Street, 18th Floor<br>Wilmington, DE 19801<br>(973) 622-4444<br>jfreebery@mccarter.com<br>tpearson@mccarter.com | Richard D. Hailey<br>Ramey & Hailey<br>3891 Eagle Creek Parkway<br>Suite C<br>Indianapolis, IN<br>(317) 299-0400<br>rhailey@sprynet.com |
| Gale D. Pearson<br>Stephen J. Randall<br>Pearson, Randall & Schumacher, P.A.<br>Fifth Street Towers, Suite 1025<br>100 South 5th Street<br>Minneapolis, MN 55402<br>(612) 767-7500<br>attorneys@outtech.com | B. Andrew List<br>Clark, Perdue, Arnold & Scott<br>471 East Broad Street, Suite 1400<br>Columbus, OH 43215<br>(614) 469-1400<br>alist@cpaslaw.com<br>lcollins@cpaslaw.com |
| Ellen R. Serbin<br>Perona, Langer, Beck, Lalande & Serbin<br>300 San Antonio Drive<br>Long Beach, CA 90807-0948<br>(562) 426-6155<br>davidhwang@plblaw.com | Robert H. Shultz<br>Heyl, Royster<br>103 West Vandalia Street<br>P.O. Box 467<br>Edwardsville, IL 62025<br>(618) 656-4646<br>rshultz@hrva.com<br>bwallace@hrva.com |
| William N. Riley<br>Jamie R. Kendall<br>Price, Waterhouse & Riley, LLC<br>301 Massachusetts Avenue<br>Indianapolis, IN 46204<br>(317)633-8787<br>eamos@price-law.com | Earl Francis Carriveau<br>1012 6th Avenue<br>Lake Charles, LA 70601-4706 |

| | |
|---|---|
| Michael T. Gallagher<br>The Gallagher Law Firm<br>2905 Sackett Street<br>Houston, TX 77098<br>(713) 222-8080<br>shawnaf@gld-law.com | Stacy K. Hauer<br>Charles S. Zimmerman<br>651 Nicollet Mall, Suite 501<br>Minneapolis, MN 55402<br>(612) 341-0400<br>(800) 755-0098<br>csz@zimmreed.com |
| Buffy Martines<br>Laminack, Pirtle & Martines<br>440 Louisiana, Suite 1250<br>Houston, TX 77002<br>(713) 292-2750<br>buffm@lpm-triallaw.com | |