UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

ORLANDO DIVISION

| | |
|---|---|
| In Re:  Seroquel Products Liability Litigation<br>MDL Docket No.  1769<br><br>DOCUMENT RELATES TO ALL CASES | Case No. 6:06-md-01769-ACC-DAB<br><br>**PLAINTIFFS' MOTION FOR SANCTIONS<br>DUE TO MISCONDUCT<br>IN CASE-SPECIFIC DISCOVERY** |

I.     INTRODUCTION

By way of this motion, plaintiffs seek relief from substantial prejudice occasioned by

AstraZeneca's failures to make adequate and timely case-specific discovery ("CSD").

AstraZeneca continues to flaunt the clear provisions of CMO4, and the Court's subsequent

emphasis of those provisions at the July 27, 2007 hearing and in its August 3 Order Appointing

Special Master and Directing Discovery ("Order").

AstraZeneca violated the Court's directives in 100% of cases designated for CSD in

August and September, by failing to make proper disclosures of information identifying

materials shown to physicians, prescribing habit information and accounts payable records.  In

approximately 20% of such cases, AstraZeneca made new (yet still incomplete) disclosures just

hours prior to the commencement of physician depositions.  In some cases, disclosures were

made after physician depositions were concluded.  Some of those instances are summarized in

Exhibit 1 to the accompanying Canty Declaration.[1]  In more than 10% of the cases designated for

CSD in August and September, AstraZeneca's counsel first represented in initial disclosures that

---

[1] The chart illustrates in red type those instances in which supplemental disclosures were made within 48 hours
before (and sometimes after) prescriber depositions commenced.

AstraZeneca had made no payments to physician witnesses, only to later produce information to the contrary.

The evidence suggests that AstraZeneca's violations of CMO4 are intentional. The violations are not rare; they occur in almost every case. The violations are not accompanied by apologies or explanations. To the contrary, as explained at one physician's deposition, AstraZeneca contends it has no obligation to provide the information in the time frame ordered by the Court:

> MS. DeCARLI [for plaintiff]: I am going to pass the witness, but I am leaving the deposition open in light of the fact that just 38 hours before the beginning of this deposition we received a significant amount of new records. Astrazeneca's first disclosure was on August 3rd and they waited until September 24th at midnight to disclose records. So, unfortunately, Dr. Johnson, we may have to continue on another day, but I am reserving the right to reopen.
>
> MS. OWENS [for AstraZeneca]: And I recognize that the time was close, but would note that the obligation was to provide it before the deposition and you will agree that it was received before this deposition, correct?
>
> Deposition of F. Johnson, 119:4-17 Canty Dec., ¶3, Ex. 2.

AstraZeneca requested the depositions of Plaintiffs' physicians as fuel for dispositive motions based upon the learned intermediary defense. AstraZeneca possesses a wealth of databases containing the communications with the witnesses, the material shown to the witnesses, the prescribing habits of the witnesses, and the payments made by AstraZeneca to and on behalf of the witnesses. Starting from that vastly superior position, AstraZeneca has chosen one-third of the cases subject to CSD, and (with the aid of fact sheets and medical records) has chosen all of the physician witnesses to be deposed in the CSD program. Now, as if the

prejudice resulting from its failure to make general discovery were not enough, AstraZeneca has designed a campaign to prevent Plaintiffs from effectively examining those physician witnesses.

On July 27, the Court admonished AstraZeneca that if it did not comply with CMO4, there would be a "day of reckoning."  Transcript of July 27, 2007 Hearing, 24:9-13; 54:5-11; Canty Dec., ¶4, Ex. 3.  AstraZeneca failed to heed the warning.  Plaintiffs request that the Court impose the sanction most directly related to the offense: in all cases selected for CSD in August, and September, AstraZeneca's learned intermediary defense should be stricken.

## II.    OVERVIEW OF ASTRAZENECA'S CSD OBLIGATIONS

CMO4 provides that, "within five business days of the designation of Plaintiffs to be subject to case specific discovery, Defendants shall provide all available documentation [fn1] regarding contact with the prescribing physician associated with that Plaintiff."  CMO4, Sec. II.A; Canty Dec., ¶5, Ex. 4.  As set forth in footnote 1, this disclosure requirement includes, at a minimum:  "call notes, the accounts payable records, the IMS information on prescribing habits, and the PIR or professional information request and any non privileged documents relied on or available to defense counsel in preparation for the depositions." *Id*.

On July 27, 2007, with respect to disclosure of call notes, AstraZeneca agreed and the Court ordered that disclosures would be made in a format such that Plaintiffs would have the same ability to search and manipulate the data as did Defendants.  (July 27 Hearing Transcript, 18:5-21:9.)

On August 3, the Court ordered as follows:

As to the case-specific discovery from Defendants set forth in CMO4, Defendants shall provide the call notes for the prescribing physician associated with that Plaintiff in readily accessible **electronic form.** To the extent the accounts payable records, the IMS (or other prescription tracking database) on prescribing habits, and the PIR or professional information for the prescribing physician associated with that Plaintiff are available in

electronic form, Defendant shall provide those in readily accessible electronic form. **[emphasis in original.]**

With respect to materials shown to physicians, the Order further provided that:

Defendants are to assemble an index uniquely identifying all such items (and versions) in such a way as will facilitate location and review of the items provided to specific physicians at particular times. It is the Court's expectation that the efforts of the parties with respect to organizing these materials (and, indeed, with respect to discovery generally) will be directed, insofar as may be reasonably possible, to making the materials readily and promptly available to all parties in a useful format, unambiguously, without duplication. Technically sophisticated representatives from both sides should confer in a non adversarial manner as to the most efficient methods for accomplishing these goals.

Order, Sec. III, p. 2; Canty Dec., ¶5, Ex. 5.

AstraZeneca has failed to meet its CSD obligations as set forth below.

## III.   ASTRAZENECA'S CONTINUED FAILURES TO MAKE DISCOVERY

A.   <u>Failure to Timely Produce Complete Call Note Information</u>

AstraZeneca's first CSD disclosures – in July, for August cases, and in August, for September cases – were substantively deficient, in that call note data was improperly limited to what AstraZeneca considered the "relevant" time frame.  Further, though AstraZeneca had extracted the call note information from databases to an Excel sheet for its own analysis, (Transcript, 19:7 – 20:5), AstraZeneca nevertheless produced the information to Plaintiffs in an unsearchable pdf format.  See example – Getchell Disclosure; Canty Dec., ¶6, Ex. 6.[2]

---

[2] AstraZeneca has designated "Confidential" all of disclosures, including the Call Notes and IMS Data attached to each.  In accordance with the terms of the parties' Confidentiality Agreement, Plaintiffs early on challenged the confidentiality of disclosures in the Getchell case.  Because AstraZeneca failed to take the steps necessary to preserve confidentiality in the face of the challenge, these materials have lost their "confidential" designation. Pursuant to the Agreement, Plaintiffs will seek all appropriate relief so that the Court may review the remaining "confidential" material cited in support of this motion.  In the interim, the documents AstraZeneca has labeled "confidential" will be represented with slip-sheets.

The time was late July.  Plaintiffs had filed a motion requesting sanctions for AstraZeneca's failure to produce information in usable format.  An evidentiary hearing on that motion was pending.  Issues regarding format of production were subject to intense scrutiny by the parties and the Court.  Yet, AstraZeneca chose not to deliver the information to Plaintiffs in the same usable format provided to its own counsel.  Moreover, assuming *arguendo* that .pdf might have been an appropriate format, AstraZeneca chose not to convert the Excel file directly to .pdf, so as to retain the underlying, searchable text.  Instead, in what undoubtedly required deliberate, additional steps, AstraZeneca chose to print the call notes to paper.  AstraZeneca split the sheets over two pages horizontally, making them unreadable.  AstraZeneca then scanned that hard copy, depriving Plaintiffs of searchable text.  AstraZeneca's initial disclosures for August cases are devoid of *any* indicia of good faith.

Plaintiffs brought the deficient disclosures to the Court's attention on July 27.  The Court issued an Order on August 3, compelling AstraZeneca to make disclosures in the proper format. It was well into August before AstraZeneca began to serve supplemental disclosures in August cases.

Though AZ provided call note information in Excel format, some of their supplemental disclosures omitted information which had appeared in the first unsearchable .pdf's.   For instance, on July 23, AstraZeneca disclosed contact with Plaintiff Getchell's physician via the internet, in a promotional effort known as "Virtual Detailing."  It was disclosed that Ms. Getchell's physician – Dr. Ramirez – had completed the "SEROQUEL bipolar mania virtual detail for Psychiatrists – Program 1." Because this information did not appear in the Excel sheet produced with AstraZeneca's August 9 supplemental disclosure, it was clear that AstraZeneca was again withholding information.  Plaintiffs asked that AstraZeneca identify the information

5

withheld, and requested identification and production of the material used in Virtual Detailing of physicians (Canty Dec., ¶6, Ex. 7).  AstraZeneca never responded.

AstraZeneca had indeed been withholding information.  Beginning on August 24, AstraZeneca began serving additional supplemental disclosures, containing additional information from its databases.  The Excel sheets now contained entirely new, directly relevant information not contained in either the previously served .pdf disclosures or the supplemental Excel files.  For instance, these new files contained new columns indicating the type of sales messages communicated by the representative to the physician.  More often than not, these sales messages identified topics of discussion which were not reflected in the corresponding call notes. The previously omitted sales messages included: "Favorable Weight Profile," "Minimal Weight Gain," "Metabolic" and the like.  Canty Dec., ¶6, Ex. 8.

But AstraZeneca's latest Excel disclosures now *omitted* information, as well.  The call notes produced in the Excel files were now truncated, and therefore incomplete.  Canty Dec., ¶6, Exs. 9 and 10.

AstraZeneca had the discoverable information, and failed to timely produce it pursuant to the Court's orders.  The evidence suggests this failure was deliberate.  AstraZeneca consistently produced supplemental disclosures on the eve of physician depositions, depriving Plaintiffs of meaningful review before questioning began.   These supplemental disclosures contained new information and omitted other information, and were served without advance notice, without explanation, without mention, and within hours before depositions were scheduled to begin. AstraZeneca's gamesmanship and "Gotcha!" tactics are confirmed in the deposition passage, *supra*.  AstraZeneca has offered no response to Plaintiffs' requests that it identify any additional information it may be withholding, and the reasons for the same.  As of this date, Plaintiffs have

no reason to believe that AstraZeneca has produced all available information concerning contact

with physicians.

AstraZeneca's approach to case specific discovery is identical to its approach to general

custodial production.  AstraZeneca produces information which is woefully deficient in

substance and format, without any quality control or assurance, waits for Plaintiffs to identify

issues which it should have resolved in the first instance, dances through the meet and confer

process, and then attempts to implement unsuccessful fixes after disclosure deadlines have

passed and Plaintiffs' ability to take discovery has been prejudiced.  At the hearing before

Special Master Brown on October 15, 2007, AstraZeneca's counsel in charge of CSD confirmed

that AstraZeneca takes great pride in this approach:

> MR. STEWART: Once you brought to us an issue of this is a problem,
> we've tried our best to remedy it, you know, to get on it and fix it as fast
> as we can. So, we, you know, in our view, we pride ourselves in being
> responsive to issues of Plaintiffs.   There was another issue, for
> example, Orran, some of the call notes not containing the entire
> verbiage, were being truncated. And as soon as we learned that, we
> fixed it and filed supplemental call notes.  Early on in this case, the call
> notes were produced in a way that was very difficult to read, and we
> corrected that. But it has to be a give and take between Plaintiffs and
> Defendants in talking about it and meeting and conferring about what it
> is that's going on.

Transcript of October 15, 2007 Hearing, at 33:19 – 34:10; Canty Dec., ¶4, Ex. 11.

AstraZeneca's approach has deprived Plaintiffs of timely court-ordered discovery bearing

directly on the issue of its learned intermediary defense.

B.   Failure to Provide Information Regarding Materials Shown to Physician
Witnesses

Following the Court's August 3 Order, the parties met and conferred regarding ways to

"facilitate location and review of the items provided to specific physicians at particular times,"

and to make that material "readily and promptly available to all parties in a useful format,

unambiguously, without duplication."  Order, at 2.  "Technically sophisticated representatives from both sides" met to determine "the most efficient methods for accomplishing these goals."  *Id.*  However, AstraZeneca has failed to timely produce this information for August, September and October cases.

On August 17th, AstraZeneca produced a great deal of promotional material, accompanied by two "production" indices, listing nearly 9,000 Seroquel-related written items, and 240 audio/visual items, with corresponding Promotional Regulatory Affairs ("PRA") numbers and Bates numbers.  On August 24, AstraZeneca produced in Excel form an export from its PRA database ("ESTAR"), which lists 3700 Seroquel-related materials with information regarding versions and approval dates, as well as individual PRA numbers.  Canty Dec., ¶6, Exs. 12 and 13.  Plaintiffs have tried searching and cross-referencing these indices, but due to omissions, duplication, and inconsistencies in nomenclature, identification of materials shown to physicians remains problematic.[3]

During the parties' meetings, Plaintiffs came to understand that AstraZeneca maintains a database ("MarketPro"), which tracks all promotional items ordered by and distributed to each individual sales representative, and when.  On August 23, Plaintiffs asked to meet with technically sophisticated personnel to discuss extraction of relevant data from MarketPro, and AstraZeneca produced the two responsible for its maintenance on September 7.  Through AstraZeneca's technical personnel, the following was established:

1) MarketPro is an Oracle-platform database that, at the very least, can identify materials ordered and shipped to sales representatives as far back as 2000-2001.

_____

[3] These indices do not reference the "Virtual Detailing" material mentioned in call notes.  See Canty Dec., ¶6, Exs. 7 (Getchell), and 15 (Thomas).

2)  Data exists in two subsets: (a) inception up through sometime in 2003 (archived only for performance reasons); and (b) 2003 to present (live data).

3)  Data can be extracted by query on individual sales representatives;

4)  Data can be extracted more efficiently by query on all Seroquel PRA numbers, which would then provide Plaintiffs with the ability to query on individual sales representatives as needed.

5)  All data could be query-ready in 5-10 business days, and results could be extracted shortly thereafter.

Plaintiffs requested the more efficient means of production, which would enable querying the data for all cases designated to date, as well as those to be designated in the future.  But Plaintiffs emphasized the immediate need for the material, by whatever means.  Canty Dec., ¶7, Ex. 14.

On September 18, AstraZeneca was still "in the process" of making the data query-ready. AstraZeneca indicated that it would perform queries on individual sales representatives, rather than proceed more efficiently via wholesale extraction of relevant data.  AstraZeneca indicated that it would only produce this information in cases selected for CSD *after* the data was ready (i.e., not for cases designated August, September and October CSD).  On September 20, AstraZeneca stated the data would be query-ready on October 4.

AstraZeneca knew this information was available the day it first proposed a case-specific discovery program.  AstraZeneca knew this information was available when CMO4 issued. AstraZeneca knew this information was available when it addressed the issue with the Court at the July 27 conference.  AstraZeneca knew this information was available after the August 3 Order.  AstraZeneca knew this information was available as the parties met and conferred in

9

August regarding production of the promotional material.  At all times, AstraZeneca had a Rule 26 obligation to be straightforward with the Court and the Plaintiffs concerning the availability of this information.  As of this date, AstraZeneca has failed to produce any MarketPro data to Plaintiffs.

      C.    <u>Failure to Produce Accounts Payable Records</u>

CMO4 directed AstraZeneca to produce relevant Accounts Payable records.  The August 3 Order directed that these records be produced in electronic form.  As of this date, AstraZeneca has failed to produce *any* Accounts Payable record, in *any* form, in *any* case selected for CSD. AstraZeneca has instead included in its disclosures a statement that it "has searched its database" and either "found no information" or, if information was found, a limited recitation of the dollar amount of the payment, the date of the payment, and the type of payment, (i.e. honorarium, speaker fee, etc).  AstraZeneca's disclosures reveal nothing concerning the nature of the services rendered in exchange for payment.  If, for instance, AstraZeneca paid the physician to complete a survey of his prescribing practices, Plaintiffs are entitled to that information.  If AstraZeneca paid the physician to speak to other doctors about the "Greater Efficacy" and "Minimal Weight Gain" associated with Seroquel, Plaintiffs are entitled to that information.  AstraZeneca's databases undoubtedly contain records explaining why and in connection with which marketing programs it made payments to these physicians.  AstraZeneca has defied the Court's order, and produced no actual accounts payable records.

AstraZeneca's disclosures of accounts payable information are not only insufficient, they are also inaccurate.  Notwithstanding AstraZeneca's statements in several cases that "no information can be found," review of accompanying call notes indicated that payments were indeed made to physician witnesses.  Canty Dec., ¶6, Ex. 16.  When Plaintiffs pointed to this

inconsistency, AstraZeneca stated that searches of its "multiple databases" failed, that its searches "were not collecting all available information," and that this had been true through early September.  Canty Dec., ¶6, Ex. 17.

AstraZeneca's disclosures of accounts payable information are not merely insufficient. They are not merely inaccurate.  They are also deliberately late.  AstraZeneca's disclosures in the Thomas case are typical.  On August 3, AstraZeneca first stated that no information could be found in its database.  Canty Dec., ¶7, Ex. 18.  Then, at nearly midnight on September 24, with the Plaintiff's deposition scheduled for that day, and the physician's deposition scheduled for the following day, AstraZeneca delivered a supplemental disclosure of 34 payments made by AstraZeneca to the physician between 2000 and 2006, including speaker fees and educational grants, and totaling more than $14,600.80.  Canty Dec., ¶6, Ex. 19.  Also delivered with that supplemental disclosure were the call notes for that physician witness, for the first time in Excel format, containing the new "sales message" columns described above.  AstraZeneca's position on its supplemental disclosures was made clear in this case at the physician's deposition:

> I recognize that the time was close, but would note that the obligation was to provide it before the deposition and you will agree that it was received before this deposition, correct?
>
> Deposition of F. Johnson, 119:4-17; Canty Dec., ¶3, Ex. 2.

D.    Failure to Produce Complete IMS Data

In calling on a physician witness, each AstraZeneca sales representative had available to him or her certain data regarding physician prescribing practices.  That information includes, at least, "NewRx" data (new prescriptions written during a particular period) and "TRx" data (total prescriptions filled during a particular period) for Seroquel and each of its atypical antipsychotic competitors.

11

> Q.   How about this.  What data in regard to prescription, what prescription data does a professional sales specialist have on an individual physician before that professional sales specialist goes into that doctor's office?
> A.   So they have new RX, and TRX data.
> Q.   Tell the jury new RT means new prescription data?
> A.   New prescription.
> Q.   And TRX means total prescription?
> A.   Correct.
> Q.   What else do they have?
> A.    They have that -- they have that information for Seroquel and other atypical antipsychotics.
> Q.    And the other atypical antipsychotic would be Geodon, Abilify, olanzapine, Risperdal, what else?
> A.   Correct.  Clozaril.

30(b)(6) Deposition of Alfred Paulson, 104:21-106:23; see also 198:19-200:24; Canty Dec., ¶3, Ex. 20.

The IMS data provided in AstraZeneca's first CSD disclosures covered only the most recent 24 months, and failed to include all IMS data – new and total prescriptions for Seroquel and its competitors: Zyprexa, Risperdal, Abilify, and Geodon.  Plaintiffs addressed this with the Court on July 27.  (Transcript, 37:5-25; Canty Dec., ¶4, Ex. 3.)  On August 3, the Court ordered that the IMS data be produced in readily accessible electronic form.  Though AstraZeneca's supplemental disclosures since that time have included IMS data from 1999, AZ has failed to produce it in electronic form, and the disclosures continue to exclude much of the data described by Mr. Paulson at deposition and Mr. Allen at the July 27 hearing.

Since August 3, 2007, Plaintiffs' correspondence repeatedly raised the issue of AstraZeneca's failure to comply with its obligations, specifically citing the August 3 Order.  Despite all of the foregoing, as of the October 15 hearing before the Special Master, AstraZeneca's counsel in charge of Case Specific Discovery had not even *considered* the obligation to produce information (other than call notes) in the form ordered.

> MR. STEWART: We have provided AP information for all of the physicians and we provided IMS data back in March 1999 that we have, that AZ has in

its possession. You know, Mr. Canty says that IMS is required to be produced in Excel form. I am trying to find the order here. I believe it just says that call notes electronic form.

Transcript of Hearing October 15, 2007, 22:14-21; Canty Dec., ¶4, Ex. 11.

AstraZeneca simply does not believe that it is required to follow the Court's Orders.

E.       Obstruction of Plaintiffs' Discovery

In addition to thwarting Plaintiffs' examination of physicians, AstraZeneca's failure to make proper discovery prevents Plaintiffs from obtaining the sales representative discovery to which they are entitled under CMO4. Plaintiffs are obviously prejudiced by the unavailability of evidence in preparation for deposition and examination of sales representative witnesses. But AstraZeneca also uses its deficient disclosures as a tactical weapon to prevent or delay this discovery.

The events surrounding four cases selected for September discovery (Coppola, Glover, Frederick and Thomas) are illustrative. On August 3, AstraZeneca served disclosures suffering from the myriad deficiencies described above. Canty Dec., ¶6, Exs. 21 & 22. On August 6, Plaintiffs began the meet and confer process, indicating that: "because Plaintiffs do not therefore have the same ability to manipulate and search the data as do Defendants, these are tantamount to no disclosures at all. Until the disclosures (particularly the attached call notes and IMS data) are made in a form suitable for analysis, Plaintiffs' time to designate a sales representative pursuant to CMO4 will not begin to run." Canty Dec., ¶7, Ex. 23.

On August 8, AstraZeneca agreed to "provide the call in notes in a searchable form as [Plaintiffs] requested," and indicated the parties would "discuss this again after we provide the information in a different electronic format." Canty Dec., ¶7, Ex. 24.

On August 22, Plaintiffs addressed the issue with the Court.  Transcript of August 22, 2007 Hearing; 116:23-120:10; Canty Dec., ¶4, Ex. 25.  Following that hearing, AstraZeneca still refused to serve compliant disclosures.

By September 6, Plaintiffs had still not received a compliant disclosure for *any* of these four September cases.  Without the benefit of those disclosures, Plaintiffs nevertheless designated sales representatives for deposition.  AstraZeneca never responded to that email.  Canty Dec., ¶7, Ex. 26.

Beginning on September 17, AstraZeneca began serving supplemental disclosures in the agreed and ordered Excel format, which Plaintiffs could search and manipulate, and with the entirely new, directly relevant information described above.  Canty Dec., ¶6, Ex. 27.   All of these Plaintiffs complied with their own September CSD obligations, appearing for deposition in September, as noticed, and attending physician depositions.  Plaintiffs continued to inquire of AstraZeneca when it would produce sales representatives.  On September 18, Plaintiffs pointed out that seven sales representative depositions were outstanding.  Canty Dec., ¶7, Ex. 28.  AstraZeneca again failed to respond.

On October 4, having heard nothing from AstraZeneca, Plaintiffs eventually noticed the depositions of the sales representatives.  Canty Dec., ¶7, Ex. 29.

Despite the Court's order that Plaintiffs be given what Defendants have, in the form that they have it, AstraZeneca took the position that its initial disclosures in these cases were sufficient.  AstraZeneca refused to produce the sales representatives, claiming that Plaintiffs had waived their rights to the depositions – repudiating its August 8 agreement to make the proper disclosures and then discuss the matter further.  Canty Dec., ¶7, Exs. 30 and 31.

14

AstraZeneca took those positions at a hearing before Special Master Brown.  Special Master Brown gave AstraZeneca two options: AstraZeneca could agree to produce the sales representatives, or he would order them produced.  Transcript of October 15, 2007 Hearing, 34:19 – 35:2; Canty Dec., ¶4, Ex. 11.

At the hearing, AstraZeneca indicated it had not even spoken to these sales representatives regarding Plaintiffs' designations, and therefore requested 60 days to produce them.  Transcript of October 15, 2007 Hearing, 27:24 – 28:2; 35:19 – 40:12; Canty Dec., ¶4, Ex. 11.  AstraZeneca described the prejudice it would suffer in producing these sales representatives on this delayed schedule:

> MR. STEWART: Just generally about some of these issues relating to the PSS designations, and we've discussed some of this with Ashley in the context of Ashley Cranford and the Haas deposition but, you know, I think the court entered this order in the MDL, and the case management orders are entered for the case-specific discovery for the purpose of making sure this can work, and it is a tight time frame. And I think that the court adopted this two-day designation to get things moving and make sure that this happened and we could all complete things in a timely way, and our interest and our concern is that looking -- looking back on these cases two months from now, start reopening and designating additional people to depose. It's just not going to work with our schedule. We're having -- as you know, it's all we can do now to do the 30 depositions a month, that we're doing and it's taxing us all. So that's our main concern is that we have a byline so we know when this is done and we can look back and say that there are no other PSSs that can be pulled from earlier months.

Transcript of October 15, 2007 Hearing, 12:11 – 13:8.

As a result of AstraZeneca's bad faith, Plaintiffs will suffer precisely the same prejudice. The sanction which alleviates that prejudice and levels the playing field is to resolve in Plaintiffs' favor the issue for which this discovery is sought. The Court should strike the learned intermediary defense.

## IV.     CONCLUSION

The prejudice to Plaintiffs is undeniable.  AstraZeneca's lack of good faith is palpable. The requested sanction is directly related and appropriate.  AstraZeneca's learned intermediary defense should be stricken in all cases designated for CSD in August, September and October.

## V.     L.R. 3.01(g) CERTIFICATION

As set forth in the Canty Declaration and attached correspondence, the parties have met and conferred extensively on the issues presented by this motion, and have been unable to resolve them.


Dated:  October 16, 2007                         LEVIN SIMES KAISER & GORNICK LLP


                                         _____/s/ Dennis J. Canty_____
                                         Lawrence J. Gornick (CA State Bar No. 136290)
                                         Dennis J. Canty (CA State Bar No. 207978)
                                         44 Montgomery Street, 36th Floor
                                         San Francisco, CA  94104
                                         Telephone:  415-273-8138
                                         Facsimile:  415-981-1270
                                         E-mail:        lgornick@lskg-law.com
                                                        dcanty@lskg-law.com