# EXHIBIT 2

Page 1

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE: Seroquel Products Liability
Litigation

MDL DOCKET NO. 1769

---

This Document Relates to 6:06-cv-1295

---

DEPOSITION OF FARRIS T. JOHNSON, JR., M.D.
Wednesday, September 26, 2007

610 Oglethorpe Avenue
Suite B
Athens, Georgia  30606

Reported By:
Judith L. Leitz, RPR
Georgia CCR-B-2312
Esquire Deposition Services
Atlanta Office Job No. 425003
Phone - 404-872-7890

## Page 2

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE: Seroquel Products Liability
Litigation

MDL DOCKET NO. 1769

This Document Relates to 6:06-cv-1295

Deposition of FARRIS T. JOHNSON, M.D., taken on behalf of the Defendant AstraZeneca, pursuant to the stipulations agreed to herein, before Judith L. Leitz, Certified Court Reporter, at 610 Oglethorpe Avenue, Suite B, Athens, Georgia, on Wednesday, the 26th day of September, 2007, commencing at the hour of 2:22 p.m.

Job No. 425003

## Page 3

APPEARANCES OF COUNSEL

On behalf of the Plaintiff:
DEBRA DeCARLI, ESQUIRE
LAURA M. BRANDENBERG, ESQUIRE
Levin Simes Kaiser & Gornick, L.L.P.
44 Montgomery Street
36th Floor
San Francisco, California 94104
(415) 646-7160
(415) 981-1270 fax
e-mail: ddecarli@lskg-law.com
       lbrandenberg@lskg-law.com

On behalf of the Defendant AstraZeneca:
LAURA LEWIS OWENS, ESQUIRE
Alston & Bird, L.L.P.
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309
(404) 881-7000
(404) 881-7777 fax
e-mail: lowens@alston.com

ALSO PRESENT: Marshall Willis with Alston & Bird

## Page 4

INDEX
WITNESS: FARRIS T. JOHNSON, M.D.

| EXAMINATION | PAGE |
|---|---|
| By Ms. Owens | 6 |
| By Ms. DeCarli | 82 |
| By Ms. Owens | 120 |
| By Ms. DeCarli | 135 |

EXHIBITS

| NO. | DESCRIPTION | PAGE |
|---|---|---|
| 1 | Notice of Deposition | 47 |
| 2 | 05/29/01 to 06/2/01 Discharge Summary | 47 |
| 3 | 9/16/06 To Whom it May Concern letter | 49 |
| 4 | 6/16/00 History and Physical Examination; 10/19/00 Discharge Summary; 5/26/01 History and Physical Examination | 49 |
| 5 | 3/9/04 Medical Record | 56 |
| 6 | 5/11/04 Medical Record | 58 |
| 7 | 8/23/04 Medical Record | 58 |
| 8 | 9/13/04 Medical Record | 62 |
| 9 | 10/25/04 Medical Record | 64 |
| 10 | 10/17/05 Medical Record | 72 |
| 11 | 12/1/05 Medical Record | 76 |
| 12 | CV of Dr. Johnson | 81 |
| 13 | 4/12/05 Office Note | 86 |
| 14 | Spreadsheet - Prescribing Record | 87 |

## Page 5

EXHIBITS (CONT.)

| NO. | DESCRIPTION | PAGE |
|---|---|---|
| 15 | Draft - Voicemail Script | 94 |
| 16 | Objection Handler on Atypical antipsychotics and glucose dysregulation | 95 |
| 17 | AstraZeneca - Important Drug Information - January 30, 2004 | 97 |
| 18 | Final: February 3, 2004, Diabetes Master Question and Answer Document | 99 |
| 19 | Article - June 2004 - A Survey of Reports of Quetiapine-Associated Hyperglycemia and Diabetes Mellitus | 101 |
| 20 | Article - September 2004 - Relationship Between Antipsychotic Medication Treatment and New Cases of Diabetes Among Psychiatric Inpatients | 103 |
| 21 | Article 2006 - American Journal of Epidemiology - Diabetes Risk Associated with Use of Olanzapine, Quetiapine, and Risperidone in Veterans Health Administration Patients with Schizophrenia | 104 |
| 22 | AstraZeneca - What you need to know to Detail the PCP Mania Sell Sheet for Seroquel | 107 |
| 23 | Spreadsheet - Call Notes | 109 |
| 24 | Group exhibit - Medical Records | 138 |

Page 118

1  uncommon and certainly have to be interpreted in the
2  context of the patient. Most patients with
3  extrapyramidal side effects, EPS, interestingly
4  enough don't complain of tremors. They have other
5  complaints, but tremors in my experience is not a
6  predominant complaint associated with that medication
7  by the patient.
8     Q. To your knowledge, has Ms. Thomas ever been
9  tested for EPS?
10    A. There is not a formal test for it. It's
11 more of a -- it's confirmed by physical diagnosis. I
12 would say this, she's seen enough people familiar
13 with EPS that if that had been a predominant problem,
14 I would have expected psychiatrists and neurologists
15 to pick that up pretty easily.
16    Q. Given the drugs that she was on?
17    A. Correct.
18    Q. Okay.
19    A. It's the kind of thing that you -- you
20 observe patients who are being treated with
21 psychiatric medications and I don't think it would
22 have gone unnoticed by the number of people that she
23 had seen, I don't think.
24    Q. Dr. Johnson, is it a fair summary of your
25 testimony that adequate warnings from AstraZeneca

Page 119

1  regarding diabetes risks would have altered your
2  prescribing recommendations for Ms. Thomas?
3     A. Yes.
4        MS. DeCARLI: I am going to pass the
5  witness, but I am leaving the deposition open in
6  light of the fact that just 38 hours before the
7  beginning of this deposition we received a
8  significant amount of new records. AstraZeneca's
9  first disclosure was on August 3rd and they waited
10 until September 24th at midnight to disclose records.
11 So, unfortunately, Dr. Johnson, we may have to
12 continue on another day, but I am reserving the right
13 to reopen.
14       MS. OWENS: And I recognize that the time
15 was close, but would note that the obligation was to
16 provide it before the deposition and you will agree
17 that it was received before this deposition, correct?
18       MS. DeCARLI: I will agree that it was
19 received nine hours before I met with the Plaintiff
20 to present her for her deposition and we were with
21 the Plaintiffs from 9:00 a.m. yesterday morning,
22 didn't start the deposition until 40 minutes late,
23 and didn't finish until 6:30 last evening, which did
24 not leave very much time for preparation and I don't
25 think it's very reasonable on the part of AstraZeneca

Page 120

1  to expect that that was proper notice. So we reserve
2  our right to continue based upon the late received
3  records.
4           FURTHER EXAMINATION
5  BY MS. OWENS:
6     Q. Doctor, you talked earlier about your
7  discussions you would have in your considerations of
8  risks and benefits of medications you prescribe to
9  your patients, correct?
10    A. Correct.
11    Q. So I assume to the extent that there are
12 warnings about particular drugs made by the FDA or on
13 the product labeling that you found significant those
14 would be warnings you would also discuss with your
15 patients, correct?
16    A. Yes.
17    Q. And that would be true as -- not just as to
18 all medications but as to Seroquel specifically?
19    A. Known to me at that time, yes.
20    Q. Now, some information was provided to you
21 that Ms. Thomas may have been receiving Seroquel
22 samples from someone other than you in 2004, correct?
23    A. Today, yes.
24    Q. And do you have any record of prescribing
25 Seroquel for her in 2004?

Page 121

1     A. No.
2     Q. So to the extent the records you reviewed
3  during Plaintiff's counsel's cross-examination or
4  examination of you showed numbers of patients
5  receiving prescriptions from you for Seroquel that
6  would not have included Hellen Thomas as best you can
7  tell from your records today?
8     A. Correct.
9     Q. And does the information that this patient
10 may have been obtaining samples from her psychiatrist
11 or from Advantage during 2004 change your opinion
12 that you offered earlier that Seroquel was not the
13 cause of Ms. Thomas's diabetes?
14    A. Say that again.
15    Q. Does the information that Ms. Thomas may
16 have been receiving Seroquel samples in 2004 from her
17 psychiatrist or from Advantage healthcare
18 professionals change the opinion you offered earlier
19 that Seroquel was not the cause of Ms. Thomas's
20 diabetes?
21    A. No.
22    Q. And I believe you said that in your
23 experience it has not been the case that Seroquel has
24 caused diabetes in your patients?
25    A. Correct.