# EXHIBIT 3

```
                                                                    1

 1                    UNITED STATES DISTRICT COURT
                       MIDDLE DISTRICT OF FLORIDA
 2                          ORLANDO DIVISION

 3              Docket No.6:06-MD-1769-Orl-22DAB

 4   . . . . . . . . . . . . . . ..
     IN RE:                          :
 5   SEROQUEL PRODUCTS LIABILITY     :
     LITIGATION                      :         Orlando, Florida
 6   MDL DOCKET No. 1769             :         July 27, 2007
                                     :         9:30 a.m.
 7   ALL CASES                       :
                                     :
 8   . . . . . . . . . . . . . . .:

 9
                  TRANSCRIPT OF PRETRIAL CONFERENCE
10             BEFORE THE HONORABLE DAVID A. BAKER
                  UNITED STATES MAGISTRATE JUDGE
11                             AND
              BEFORE THE HONORABLE ANNE C. CONWAY
12                 UNITED STATES DISTRICT JUDGE

13

14   APPEARANCES:

15   For the Plaintiffs:          Paul Pennock

16                                Larry M. Roth

17                                Scott Allen

18                                F.Kenneth Bailey

19                                Camp Bailey

20                                E. Ashley Cranford

21                                Dennis Canty

22                                Lawrence Gornick

23                                Lezzlie Hornsby

24                                Glenn Kramer

25                                Fletch Trammell
```

```
 1   For the Defendant
 2   AstraZeneca:                    Fred Magaziner
 3                                   Stephen J. McConnell
 4                                   James Freebery
 5                                   Robert Ciottai
 6                                   Shane Prince
 7                                   Liz Balakhani
 8                                   Meghen Rohling
 9
10   Court Reporter:  Sandra K. Tremel
11
12   Proceedings recorded by mechanical stenography, transcript
13   produced by computer-aided transcription.
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1  mooted out for today.
 2          THE COURT:  We will table that one.
 3      Next item is issues about production for prescriber
 4  information.
 5          MR. ALLEN:  Yes, Your Honor, Scott Allen for
 6  plaintiffs.  I'd like to address this matter.
 7      We did send a letter to counsel for the defense,
 8  AstraZeneca, on the 24th and we met this morning to
 9  discuss some of these issues concerning the prescriber
10  information.  The first issue we had, and I think it's
11  important for the record to get the agreement on the
12  record, otherwise it will not be enforceable, is when they
13  gave us the call note from the sales force that called on
14  the initial doctors in these first case specific
15  depositions that are coming up, call them up notes where I
16  guess what I learned is called TIFF format and they were
17  cut off.  So the notes had been cut off mid sentence.  I
18  did not have complete copies of the notes.  We have been
19  told this morning, and we'd like to verify for the record
20  that counsel for the defense when they provide us the call
21  notes for the doctors from the sales representatives will
22  now be producing these electronically in what I understand
23  is some type of Excel spreadsheet.  We will not have --
24  they'll also produce them in the format that they filed
25  them with me last week, but they'll also being producing
```

```
 1  them where all the call notes are present and they read
 2  across a line.  Because the call notes themself not only
 3  were they cut off in mid sentence, I couldn't determine
 4  the date of the call or the name of the sales
 5  representative that called on the doctor.  I think we
 6  agreed on that.  Correct, Mr. Magaziner?
 7            MR. MAGAZINER:  We have agreed.  I just want to
 8  clarify one thing, Your Honor.  These call notes exist in
 9  databases.  What we were trying to do is print the
10  database in a way that made it intelligible, but it's
11  many, many columns wide.  So if it became a real printing
12  problem what we have agreed to do is give the call notes
13  in question to the plaintiffs in an electronic form so
14  they could screen it on their computer and they can
15  manipulate through the various columns.
16       What I want to clarify is that Mr. Allen is not
17  expecting us to keep fussing with the printed version of
18  it.  If we give him the electronic version that gives, has
19  all the columns in it, we don't have to keep trying to
20  figure out some way to print this whole thing in a format
21  that makes it easy to read in hard copy.
22            THE COURT:  Are you giving it to him in the same
23  way that's stored on your --
24            MR. MAGAZINER:  Yes.
25            THE COURT:  -- server.
```

```
 1            MR. MAGAZINER:  I don't know if it's -- I think
 2  we lift it from the database and we have it in an Excel
 3  spread sheet.  So it's essentially the same thing and he
 4  can go through all the columns of information.  I'm not
 5  sure if that answers Your Honor's question.
 6            THE COURT:  Where's Mr. Jaffe when we need him?
 7            MR. ALLEN:  That's exactly what I'm saying, Your
 8  Honor.  And I've leveled with the magistrate all along and
 9  the Court I think in the last hearing, I am the person
10  that will be taking these depos, but I'm not a computer
11  person, for lack of a better word.  And all I know is I
12  would like the information in a usable fashion complete
13  where I can read all the notes, determine the date and
14  determine the sales rep, determine the events that
15  transpired.  And I would like it -- I think the Court had
16  a good question, is it going to be produced as it is in
17  your --
18            THE COURT:  I don't know how you keep them, I
19  suspect these are going to be an extract from a database.
20            MR. MAGAZINER:  Right.  The reason I didn't
21  respond to Your Honor's question by saying yes is because
22  as I understand it, the way a database like this is, is a
23  very huge -- actually there are three databases, are huge
24  amounts of database.  It is not kept in an Excel
25  spreadsheet format.  What we do is extract it, all the
```

```
 1  information --
 2          THE COURT:  Make it into an Excel file.
 3          MR. MAGAZINER:  Right.  And give that
 4  information to Mr. Allen, electronically to Mr. Allen and
 5  other plaintiffs, of course, electronically.
 6          THE COURT:  You only have do it one way if it's
 7  readable.
 8          MR. MAGAZINER:  That's all I was trying to say.
 9          MR. ALLEN:  If I get it readable, that will be
10  fine, Your Honor.
11      We have other issues concerning the product of the
12  call notes and the information made the subject of this
13  Court's case management order number 4, in particular, II:
14  Scope of case specific discovery.
15      As you know at the last hearing, Your Honor, I
16  brought up the issue of the fact that we believe that
17  fundamental fairness and due process in order to properly
18  examine the doctors.  It was fundamentally needed that we
19  had all of the information that was provided to the sales
20  force, that was provided to the physicians and all of the
21  call notes, all of the call notes which are notes that the
22  sales representatives keep electronically on either the
23  Touchstone, SnapPharma or Compass database.  They
24  literally transcribe the notes after they meet with the
25  doctor and they are sent into a database.  We have all of
```

```
 1   some of the -- of the arguments you were making last
 2   night.  It was my intention when I put that footnote in,
 3   is the depositions are going to go forward and if it turns
 4   out that defendants have things it becomes obvious that as
 5   they examine the witness or comes out later, that they had
 6   pertinent to the appropriate examination of the witness
 7   and you didn't get it in advance, then sanctions are going
 8   to be imposed.  Those depositions may be stricken or other
 9   sanctions will be imposed.  But it's up to the defendant
10   to give you that stuff, and if you don't have it, and it
11   turns out, like I say, they're using some things you
12   haven't seen, or it's clear that there are things, then
13   there will be a day of reckoning on it.
14              MR. ALLEN:  Yes, sir.  And let me -- and Scott
15   Allen's position on behalf of the plaintiffs, Your Honor,
16   when in fact it is apparent from the call notes themselves
17   before I begin this process, I can read the call notes and
18   I can determine that there's clearly information that they
19   shared with the doctor that they had note shared with us
20   already, it seems to me to be a futile exercise of massive
21   time and expense.
22        For the example I have here, I have to go to Ohio and
23   we have other call notes and I didn't want to sit there
24   and read call notes to Your Honor, but I have an example.
25   I can tell this Court right now from the call notes I read
```

1   entitled -- they're trying to increase their prescribing
2   of the doctors.  That's why the sales reps go in there.
3   That's not what Scott Allen says.  So the testimony is
4   that.
5       They didn't give me new prescribing history.  They
6   just gave me the total prescriptions.  And so I'm -- I
7   believe I ask this Court to order them to do what you have
8   already done in CMO number 4 is to give me both new and
9   old prescriptions of not only Seroquel but other atypical
10  antipsychotics, and this company has given me the TRX
11  which is total prescriptions I believe of the other
12  antipsychotics.  And I asked Mr. Paulson why that was
13  important and I could go at length.  And he told me why.
14  But they haven't given me the IMS or the prescribing data.
15      So in conclusion, Your Honor, here's what I ask for:
16  Before I go out and begin this process of taking doctors'
17  depositions and sales reps' depositions, I ask that this
18  Court order that CMO number 4 be complied with in full.
19  It seems wrong to cost us time and expense to go down that
20  road without -- when it's not necessary on the face of
21  their own notes.  I ask that they -- all the call notes
22  not limited in time for the reasons I have stated.  I
23  asked that they give us all the prescribing data for not
24  limited in time for the reasons I stated.  I ask that they
25  give us all of the videos and handouts they gave to the

```
 1   more quickly than the rules require or contemplate, I'm
 2   pretty proud that we can do that.  I don't know why Your
 3   Honor is disappointed with us.  But we're going do it as
 4   quickly --
 5             THE COURT:  I'm going to bait you on whatever
 6   hook you find yourself with respect to these first five or
 7   15 doctors.  And I warn you now that it sounds to me like
 8   you have misinterpreted CMO4.  And with respect to those
 9   cases, if the depositions go forward and there's not been
10   compliance, as I said at the last hearing and in the
11   order, there will be a day of reckoning on that.
12             MR. MAGAZINER:  I understand that.  To be
13   perfectly clear, our lawyers who are taking those
14   depositions are not going to be having access to anything
15   other than what we have given plaintiffs.  It's not like
16   we have some secret trove of information about these
17   doctors that's going to be available to our lawyers
18   deposing the lawyers and not available to the plaintiffs.
19             THE COURT:  None of your deposing lawyers have
20   looked at any of the sales or marketing materials?
21             MR. MAGAZINER:  I would think that's probably
22   true, yes.  I don't know that none of our deposing lawyers
23   have ever looked at a single sales or marketing material.
24   Our lawyers -- are we in a position now when we take a
25   deposition of a doctor on August 20 to give to our lawyer
```