# EXHIBIT 25

1

```
 1                    UNITED STATES DISTRICT COURT
                       MIDDLE DISTRICT OF FLORIDA
 2                          ORLANDO DIVISION

 3              Docket No.6:06-MD-1769-Orl-22DAB

 4   . . . . . . . . . . . . . ..
     IN RE:                        :
 5   SEROQUEL PRODUCTS LIABILITY   :
     LITIGATION                    :        Orlando, Florida
 6   MDL DOCKET No. 1769           :        August 22, 2007
                                   :        1:30 p.m.
 7   ALL CASES                     :
                                   :
 8   . . . . . . . . . . . . . .:

 9

10                 TRANSCRIPT OF PRETRIAL CONFERENCE
                BEFORE THE HONORABLE DAVID A. BAKER
                   UNITED STATES MAGISTRATE JUDGE
11

12   APPEARANCES:

13   For The Plaintiffs:          Larry M. Roth

14                                Scott Allen

15                                F. Kenneth Bailey

16                                Camp Bailey

17                                E. Ashley Cranford

18                                Dennis Canty

19                                Lawrence Gornick

20                                Glenn Kramer

21                                Fletch Trammell

22                                Holly Wheeler

23                                Angela Nixon

24                                Robert Cowen

25                                Gail Pearson
```

```
 1   For the Defendant

 2   AstraZeneca:                 Fred Magaziner

 3                                Stephen J. McConnell

 4                                James Freebery

 5                                Robert Ciotti

 6                                Liz Balakhani

 7

 8   ALSO PRESENT:  Orran Brown, Special Master

 9

10   Court Reporter:  Sandra K. Tremel

11

12   Proceedings recorded by mechanical stenography, transcript

13   produced by computer-aided transcription.

14

15

16

17

18

19

20

21

22

23

24

25
```

1   right now, today, and this week without all the documents

2   we need.  And now we're going to build in --

3          THE COURT:  You're talking about the marketing

4   materials and the --

5          MR. GORNICK:  And the training materials --

6          THE COURT:  Yes.

7          MR. GORNICK:  -- and all that stuff.

8          THE COURT:  But you've gotten some of that.  You

9   had access to --

10          MR. GORNICK:  We have some.  We definitely have

11   some.  And I'm worried that not having that stuff -- and

12   some of this doesn't have to do with technical reps.  Some

13   of it we just don't have categories.  We still don't have

14   voice mails.  We still don't have that fax attachments.

15   We still don't have track change documents.  The document

16   they put into evidence the last time --

17          THE COURT:  Well, I'm going to deal with all

18   that in September.

19          MR. GORNICK:  Okay.  I understand.  And we'll

20   move to case specific discovery.  Mr. Canty has a

21   situation that hasn't arisen yet and he's prepared to

22   explain that.

23          MR. CANTY:  Thank you, Your Honor.

24      I guess point by point, first, with respect to case

25   specific disclosures that are ongoing and ongoing

1    deficiencies in those disclosures, on July 27th you

2    ordered and defendants agreed that there would be a

3    production of the disclosure materials in the electronic

4    format in which they were maintained by the defendants,

5    manipulable, searchable and it's not happening.

6        On August 6, they made the September disclosures in

7    the same format that they made them before.  And despite

8    meet and confer efforts following that, they remain -- the

9    September disclosures are without the electronic Excel

10   files that the defendants are maintaining.

11       Further, the -- and this is the kind of thing that

12   we're getting as far as the IMS data and this is, you

13   know, virtually illegible for someone particularly like

14   somebody I'm trying to take a deposition but also

15   incomplete.  There are various forms -- various kinds of

16   data that are available to this sales representative

17   detailing the positions among them, not just Seroquel

18   prescription, total Seroquel prescriptions, new Seroquel

19   prescriptions and the same prescriptions for the other

20   atypical anti-psychotics on the market and those materials

21   just aren't being provided.

22       And that's one point I think it probably should be a

23   response and then I'll continue.

24           MR. MAGAZINER:  With regard to electronic, as I

25   understand it, and this is being handled by Fabian,

1   Benson -- maybe Mr. Freebery knows something about this.

2   No?  It's handled by Fabian, Benson.  This is the first

3   I've heard that there was a problem.

4       As far as I know, we are giving them in electronic

5   for the call notes.  Mr. Canty says they're not --

6   Mr. Canty says he's only receiving hard copies.  That's

7   news to me.

8       May I address Mr. Canty directly, Your Honor, try to

9   figure out what the problem is?

10          THE COURT:  No.  I'll tell you how we're going

11  to deal with this issue.  Let's wait until you finish the

12  August depositions and you can have a -- if there's -- you

13  can flesh this out in your meet and confer.  And then if

14  plaintiffs need to file a motion to compel after that,

15  I'll hear it in our September conference.

16          MR. CANTY:  If I may, Your Honor, there are a

17  number of things that are supposed to be -- that are going

18  to be triggered from the production of those disclosures.

19  It's going to be -- we're going to have to designate a

20  sales representative.

21      Now, we can't -- if we have the proper electronic

22  form, we can search the data, we can sort it, we can sort

23  it by, for example, sales representative by date and make

24  an assessment as to which sales rep it is that we want,

25  then we disclose a sales rep for them to find.  And if

1    that sales rep is a former employee, they have to go

2    subpoena that person, possibly, if they don't make an

3    offer of representation.

4            THE COURT:  Let me back off what I just said.

5    I'll say this, that this is -- I didn't think this would

6    be an issue, but I anticipated it might be.

7        It's a -- this is a -- the whole case specific

8    scheduling for each month is a difficult and delicate

9    dance for each side to pick your plaintiffs, pick your

10   doctor, pick your sales rep and make sure you got the

11   relevant documents and has to happen very fast in

12   sequence.  And you need to have the information -- enough

13   information to pick the sales rep you think you want, just

14   as defendants need to figure out which doctor they want so

15   that you can get these people onto a calendar.

16       So I'm going to dump this on to Mr. Brown as to

17   whether if you think you're not getting the documentation

18   you need to make your designation timely, you take it up

19   with the PMO in a specific case and he will bash heads and

20   resolve it.  And if he needs to get an order, he can get

21   an order.

22       And if he thinks you've got enough information for

23   you to proceed, you proceed.  And the whole point of

24   having the PMO is that you can do this fast enough so that

25   we don't end up running these things out beyond the end of

1   the month.

2       And, like I say, I recognize it's just a whole lot of

3   things have to happen one right after the other.  So

4   everybody has to be proceeding on that basis and that's

5   why we'll have -- that'll be a more substantive portion of

6   the PMO's undertaking and simply scheduling and telling

7   doctors to do what doctors don't like to do, just listen

8   to lawyers.

9       And if that's not working, I'll find out about it

10  from Mr. Brown in his next report.

11      What else have you got?

12          MR. CANTY:  One other issue, Your Honor, is --

13  and I'll try and fuss with my electronics here a little

14  bit at the same time, too -- but it's an issue that isn't

15  contemplated by CMO4 and it isn't something that's been

16  before the Court yet but it's something that we're

17  probably going to see a lot of and that is, CMO4

18  contemplates a situation where plaintiff has gone to one

19  physician, perhaps a psychiatrist, got a prescription for

20  Seroquel and then perhaps received treatment for the

21  resulting injuries from a different physician, more

22  typically a general practitioner or a PCP, a primary care

23  physician.

24      CMO4 has ordered disclosures of -- related to those

25  prescribing physicians, and particularly the prescribing