### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**IN RE: Seroquel Products Liability Litigation**
**MDL DOCKET NO. 1769**
_____

**This Document Relates to All Cases**

### ASTRAZENECA'S OPPOSITION TO PLAINTIFFS' MOTION AND COMBINED MEMORANDUM FOR AN ORDER DEEMING THE PLAINTIFFS' PRIOR MOTION FOR SANCTIONS AS HAVING BEEN FILED IN CERTAIN CASES

## I.  INTRODUCTION

Defendants AstraZeneca LP and AstraZeneca Pharmaceuticals LP ("AstraZeneca") hereby oppose Plaintiffs' Motion And Combined Memorandum For An Order Deeming The Plaintiffs' Prior Motion For Sanctions As Having Been Filed In Certain Cases (Doc. No. 591, "Plaintiffs' Sanctions Motion").  In that motion, plaintiffs ask that the Court "deem" their previously filed sanctions motion – which they say sought specifically to strike AstraZeneca's "learned intermediary doctrine" defense as a sanction for certain document production delays – to apply to each of the 135 individual cases that has thus far been designated for case-specific discovery.  *See* Plaintiffs' Sanctions Motion at 2-6.[1]

_____

[1] This brief responds to Plaintiffs' Sanctions Motion only.  At the appropriate time (*i.e.*, within the 11-day motion response period this Court established in CMO No. 1, § IV.A.), AstraZeneca will file its opposition to the additional "sanctions" motion filed by plaintiffs late yesterday afternoon, October 24, 2007.  Plaintiffs' newest filing is the most recent in their spate of sanctions motions filed in a transparent effort to distract AstraZeneca and the Court away from the legally and factually meritless nature of the cases pending in this MDL.  Moreover, given their own misconduct in case-specific discovery, and the numerous procedural infirmities underlying their motion, plaintiffs' most recent filing constitutes an abuse of the litigation process.

As detailed below, Plaintiffs' Sanctions Motion is procedurally and substantively improper, and should be denied for four clear reasons:

(1)     As a threshold procedural matter, the motion should be denied because plaintiffs' original sanctions motion, which the instant motion purports to apply to each specific case this motion identifies, makes no mention of sanctioning AstraZeneca by striking its learned intermediary defense;

(2)     The instant motion seeks a type of sanction this Court has already made clear it will *not* impose – *i.e.*, a sanction "unrelated" to actual problems created by the discovery conduct at issue, disproportionate to any demonstrated hardship to plaintiffs, and related to case-specific discovery despite this Court's instruction that *no* imposed sanction will "have anything to do with the case-specific discovery" (Transcript, July 5, 2007 Pretrial Conference ["7/5/07 TR."], at 6);

(3)     Given plaintiffs' failure to demonstrate the requisite *direct and specific relationship* between the punitive sanction sought and the particular discovery at issue, the Court would be committing reversible error – indeed, violating AstraZeneca's constitutional rights under Eleventh Circuit authority squarely on point – if it were to grant plaintiffs' requested sanction, *see Serra Chevrolet, Inc. v. General Motors Corp.*, 446 F.3d 1137, 1151-52 (11th Cir. 2006); and

(4)     Plaintiffs' requested sanction is not only without any proper legal basis, it is transparently motivated solely by plaintiffs' effort to evade the results of case-specific discovery, which confirm the dispositive nature of AstraZeneca's "learned intermediary" defense in the cases pending in this MDL.

As this Court knows, the learned intermediary doctrine – which has been adopted explicitly by virtually every jurisdiction in the country – is a fundamental rule of law that applies in pharmaceutical litigation to define the scope of a prescription drug manufacturer's duty to warn of risks associated with their drugs.  *See*, *e.g.*, *In re Norplant Contraceptive Prods. Liab. Litig.*, 215 F. Supp. 2d 795, 806-09 (E.D. Tex. 2002).  In this MDL, case-specific discovery conducted to date has confirmed that the substantial majority of these cases are factually and legally meritless under that well-settled doctrine.  In response, plaintiffs now seek to exploit this Court's prior sanctions ruling in an illegitimate effort to *create liability* where the facts and the

law otherwise compel the conclusion that there is *none*.  While this effort necessarily fails, it provides yet another illustration of the improper tactics to which plaintiffs' counsel are willing to resort in litigating these cases, no matter what burdens they impose on AstraZeneca or the Court. Plaintiffs' Sanctions Motion, and their baseless effort to strike AstraZeneca's learned-intermediary defense, should be denied.

## II.     BACKGROUND

On July 3, 2007, plaintiffs filed their Motion For Order Imposing Discovery Sanctions (Doc. No. 256) ["Original Sanctions Motion"].  That Original Sanctions Motion concerned several grievances about delays in AstraZeneca's production of certain documents and organizational charts, as well as its custodial production and database identification.  Plaintiffs asserted that, as "an equitable solution," the Court should implement the "case-specific discovery" plan that plaintiffs proposed but which the Court had previously rejected.  *Id.* at 2, 6. Plaintiffs asked not only for an order that the specific document production be completed, but also an order prohibiting AstraZeneca from "fil[ing] any PFS-related motion." *Id.*

Nowhere in plaintiffs' Original Sanctions Motion did they ask the Court to strike AstraZeneca's defenses based on the learned intermediary doctrine.  In fact, the words "learned intermediary" do not appear in the Original Sanctions Motion.  Nor did plaintiffs even discuss the concept of striking an affirmative defense of any kind, much less purport to make any showing that such an extreme and punitive sanction was justified by the facts or law in these circumstances.  Thus, because the issue was not even raised by plaintiffs' Original Sanctions Motion, AstraZeneca had no occasion in its opposition (Doc. No. 278) to set forth the many reasons why it would be legally illegitimate for this Court to impose such a sanction.

3

At the July 5, 2007 status conference, Magistrate Judge Baker made it very clear to the parties that the Court would *not* impose *any* sanctions "unrelated" to the particular document discovery at issue. *See* 7/5/07 TR. at 6. Indeed, the Court explicitly *rejected* the several "unrelated" sanction requests that plaintiffs had actually mentioned in their Original Sanctions Motion – making clear that any sanction order issued by the Court is "not going to have anything to do with your client's facts sheets" and is "not going to have anything to do with the case specific discovery." *Id.*

Despite this clear instruction from the Court, plaintiffs *expanded* their efforts to secure vastly disproportionate discovery sanctions that are "unrelated" to the claimed discovery conduct at issue. A few weeks after the Court's admonishment, plaintiffs filed their List of Specific Matters and L.R. 3.01(g) Certification (Doc. No. 289) ["Plaintiffs' List"], which – for the first time – included a request that the Court strike AstraZeneca's learned-intermediary defenses in relation to ongoing case-specific discovery as a discovery sanction (along with other requests that were not raised in their actual motion). Plaintiffs' List at 6.[2] As noted in AstraZeneca's subsequently filed objection (Doc. No. 300), Plaintiffs' List did "not conform to this Court's Order or the Local Rules" because it impermissibly raised "new issues not addressed in the

---

[2] Without demonstrating any specific relationship between the document production problems described in Plaintiffs' List and any of the remedies they requested, plaintiffs asked for an order imposing six different sanctions, the fifth of which asked the Court to "[s]trike the learned intermediary affirmative defense asserted by AstraZeneca in all cases to be scheduled for case-specific discovery in August and September." Plaintiffs' List at 6. Even though this aspect of Plaintiffs' "list" was *entirely absent* from their Original Sanctions Motion, plaintiffs now ask the Court to apply this supposed aspect of their "Original Sanctions Motion" to each individual case that has been designated for case-specific discovery from August through December. *See* Plaintiffs' Sanctions Motion at 2-6.

sanctions motion" that were "smuggle[d] in an improper reply brief," among other improprieties. *Id.* at 1.

At the July 26, 2007 evidentiary hearing on plaintiffs' Original Sanctions Motion, plaintiffs' counsel briefly referred to striking the learned intermediary defense as a sanction to "protect us from what's coming up."  Transcript of Motion Hearing, July 26, 2007, at 24:12.  But as AstraZeneca's counsel argued at the same hearing, the concept of striking the learned intermediary defense was not raised by plaintiffs' motion.  *See id.*, at 248:16-249:7.  Moreover, AstraZeneca's counsel emphasized that such a sweeping non-monetary sanction was legally improper, and served to exemplify the sort of game-playing by plaintiffs' counsel that has long beleaguered this litigation.  *Id.*, at 249:9-21.[3]

In its Order on plaintiffs' motion, the Court ultimately concluded that sanctions "may be imposed" for some (not all) of the discovery-related activities about which plaintiffs had complained, but the Court found "a lack of willfulness or bad faith" on AstraZeneca's part.  Order (Doc. No. 393) at 24.  Because the Court was "unable to determine the appropriate nature and amount of sanctions at th[e] time," the Order provided that plaintiffs would later have the opportunity "to present evidence and argument as to any specific prejudice or damages" that might justify entering any specific sanction, as would be their burden to prove.  *Id.* at 28.

_____

[3] As AstraZeneca's counsel explained, "some of the issues that we have heard here today" (including striking the learned intermediary defense) "exist nowhere in the plaintiffs' sanction motion that was filed on July 3rd" "which is sort of emblematic of the process that we've encountered over the last few months of kind of this vast game of Whac-a-Mole where the plaintiffs raise an issue and we try to address it, and then another one comes up and another one comes up, as if there is more of a determination to keep issues existing rather than resolving legitimate problems that exist."  Transcript of Motion Hearing, July 26, 2007, at 249.

In Plaintiffs' Sanctions Motion, however, plaintiffs present *no evidence* and make *no showing* in support of the extreme sanction they now request.  Instead, in an apparent effort to divert attention away from the factually and legally meritless nature of the cases pending in this MDL, plaintiffs perfunctorily ask the Court to "deem" their Original Sanctions Motion – which they inaccurately characterize as having "sought a striking of the Learned Intermediary defense" – as having been filed in all cases that have been designated for case-specific discovery to date. *See* Plaintiffs' Sanctions Motion at 1.  Thus, there remains in the record *no evidentiary showing* as to what, if any, genuine harm or prejudice plaintiffs have actually suffered – in deposing prescribers in case-specific discovery or otherwise – occasioned by any concrete discovery delays by AstraZeneca.

## III.    DISCUSSION

### A.    Plaintiffs' Motion Is Procedurally Improper Because Their Original Sanctions Motion Makes No Mention Of Striking AstraZeneca's Learned Intermediary Defense As A Discovery Sanction

While Plaintiffs' Sanctions Motion suffers from more fundamental problems, it should as a threshold matter be denied as procedurally defective.  Indeed, it asks merely that plaintiffs' Original Sanctions Motion "be deemed filed" in all cases designated thus far for case-specific discovery "*to the extent that* the [Original Sanctions] Motion sought a striking of the Learned Intermediary defense."  Plaintiffs' Sanctions Motion at 1 (emphasis added).  But Plaintiffs' Original Sanctions Motion made *no mention* of the learned intermediary doctrine, or even the concept of striking any affirmative defense as an appropriate sanction.  There exists no procedural mechanism that would permit a party to ask that a request for sanctions – or any sort of relief – be "deemed" made in other cases when the initial request was *never* formally made in

the original referenced motion, and indeed was never even briefed to the Court by the party

making the request.[4]  Consequently, Plaintiffs' Sanctions Motion is procedurally defective on its

face.

> **B.  This Court Has Already Categorically Rejected The Imposition Of Any Sanctions That Have Anything To Do With The "Case-Specific Discovery" Program Underway, And Which Are "Unrelated" To The Document Discovery Conduct At Issue In This Court's Prior Sanctions Ruling**

More fundamentally, Plaintiffs' Sanctions Motion should be denied because it seeks

imposition of the sort of sanctions this Court has already properly rejected.  Indeed, at the outset

of the July 5, 2007 pretrial conference, Magistrate Judge Baker made clear that the Court would

*not* impose any non-monetary sanctions "unrelated" to the specific document discovery issues

about which plaintiffs had complained.  7/5/07 TR, at 6.  In fact, the Court broadly and explicitly

instructed that it would "not" impose any sanctions that had "anything to do with the case

specific discovery" program approved by the Court.  *Id.*  Despite the Court's admonishment,

plaintiffs on July 20 added several "unrelated" sanction requests to Plaintiffs' List – including

the patently *unrelated* sanction of striking AstraZeneca's learned intermediary defense in cases

subject to *case-specific discovery*.[5]

---

[4] Plaintiffs therefore are clearly wrong to suggest that this is "merely a procedural motion" by which plaintiffs purport to "formalize the case specific relief that *was sought by the prior motion*."  Plaintiffs' Sanctions Motion, at n.1 (emphasis added).  At most, plaintiffs just mentioned the possibility of the Court's striking AstraZeneca's learned intermediary defense in Plaintiffs' List, which was filed well after Plaintiffs' Original Sanctions Motion and, notably, also after the Court had made clear at the July 5, 2007 Pretrial Conference that the Court would not entertain any such requests.

[5] Indisputably, the request in Plaintiffs' Sanctions Motion to strike AstraZeneca's defense based on the learned intermediary doctrine in those cases *subject to case-specific discovery* falls plainly within the category of sanctions that this Court has already rejected, *i.e.*, a sanction that has "anything" to do with "case-specific discovery."

Put simply, this Court has already rejected plaintiffs' effort to have this Court strike AstraZeneca's learned intermediary defense as a sanction.  Hence, plaintiffs' attempt to resurrect their failed effort to secure unrelated and wildly disproportionate punitive sanctions – including this effort to exploit the Court's sanctions ruling as a means to escape the legally dispositive force of AstraZeneca's learned intermediary doctrine defense – necessarily fails.

### C.   Under Governing Eleventh Circuit Law, Plaintiffs' Requested Sanction Of Striking AstraZeneca's Learned Intermediary Defense Is Not Only Illegitimate, But Unconstitutional, Under The Circumstances Here

Plaintiffs' Sanctions Motion faces an even more critical and insurmountable hurdle:  it would violate AstraZeneca's constitutional "due process" rights if this Court were to impose plaintiffs' requested sanction, because it lacks the requisite *direct and specific relationship* between the relief sought and the precise document discovery conduct at issue.  *Serra Chevrolet, Inc. v. General Motors Corp.*, 446 F.3d 1137, 1151-52 (11th Cir. 2006).

In *Serra Chevrolet*, the Eleventh Circuit reversed the district court's order striking certain affirmative defenses as a discovery sanction for the defendant's civil contempt in disobeying court orders mandating the production of certain documents and other materials, as well as the court's imposition of $700,000 in monetary sanctions.  *Id.*  While confirming that district courts have broad discretion to impose appropriate sanctions for discovery abuses – particularly where only monetary sanctions are involved – the Eleventh Circuit emphasized that such discretion must be exercised consistent with "the most fundamental safeguard of fairness:  the Due Process Clause of the Fifth Amendment."  *Id.* at 1150-51 (citation omitted).  To comport with Due Process, a court may only impose those discovery-related sanctions "that are both 'just' and 'specifically related to the particular 'claim' which was at issue in the order to provide

discovery.'"  *Id*. at 1151 (quoting *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinée*,

456 U.S. 694, 707 (1982)).  Because the district court's sanction orders failed to satisfy this

"basic standard of due process," they constituted reversible error.  *Id*.

Specifically, the district court's sanction of striking the defendant's "affirmative

defenses" based on doctrines of res judicata and issue preclusion was improper and

unconstitutional because it lacked the requisite *clear and direct "'nexus'"* – as opposed to a

remote and conjectural relation – to the particular discovery conduct of the defendant found to be

sanctionable.  *Id*. at 1152 (emphasis added); *accord Harris v. City of Philadelphia*, 47 F.3d 1311,

1330-31 (3d Cir. 1995) (reversing discovery sanction order given "the absence of a more decided

nexus" between sanction imposed and "the delay in submission of the documents" at issue).

That is, the sanction order reversed in *Serra Chevrolet* was constitutionally infirm because the

penalty imposed was *not* "'specifically related' to the discovery abuse" at issue.  446 F.3d at

1152.[6]  As the Eleventh Circuit held:  "Because the legal defenses [stricken by the court as a

discovery-related sanction] were not specifically related to the particular claim which was at

issue in the order to provide discovery, the sanctions violated the due process rights of [the

defendant]."  *Id*. (internal quotations and citation omitted).  Thus, *Serra Chevrolet* stands for the

---

[6] The Eleventh Circuit contrasted the situation in *Serra Chevrolet* with the facts of the U.S.
Supreme Court's decision in *Ins. Corp. of Ireland*.  In that case, the district court overruled an
objection to personal jurisdiction as a sanction for defendants' failure to provide documents
*specifically relevant* to the issue of personal jurisdiction.  456 U.S. at 695.  As the Supreme
Court reasoned, the sanction was sustainable precisely because it was "specifically related" to the
defendant's failure to provide specific discovery on the issue, which prevented plaintiff from
challenging defendant's assertion that it lacked sufficient contacts to permit the court to exercise
personal jurisdiction over it.  *Id*. at 709.

proposition that it is unconstitutional for courts to strike an affirmative defense "unrelated" to the defendant's document production failures. *Id.*

As in *Serra Chevrolet*, Plaintiffs' Sanctions Motion here seeks imposition of sanctions that lack the requisite clear and direct nexus to the particular discovery-related conduct at issue. In fact, plaintiffs have not even attempted to make the required evidentiary and legal showing that their requested sanction – striking AstraZeneca's defenses based on the learned intermediary doctrine in the cases subject to case-specific discovery – is "both 'just' and 'specifically related to'" the "particular" document discovery delays about which plaintiffs have complained. *Serra Chevrolet*, 446 F.3d at 1151 (citation omitted).  Nor could plaintiffs make such a showing here.[7] Consequently, plaintiffs' request in their Sanctions Motion is just as constitutionally infirm as the comparable sanction reversed by the Eleventh Circuit in *Serra Chevrolet*.  As in that case, it would violate AstraZeneca's fundamental due process rights if the Court were to impose plaintiffs' requested sanction on this record, given the absence of any demonstrated *direct and specific relationship* between the document discovery to which this Court's sanctions ruling relates and the vastly disproportionate and draconian sanction requested by plaintiffs.[8]

---

[7] At most, plaintiffs seem to be relying on the *utterly speculative* premise that they might have some additional hypothetical line of questioning for plaintiffs' prescribing physicians in case-specific deposition discovery, depending on the nature of AstraZeneca's full document production in this MDL, which might relate in some unstated way to a summary judgment motion based on the learned intermediary doctrine.  Yet clearly, there exist numerous less drastic procedural remedies to address any such feigned prejudice, to the extent plaintiffs ever prove with particularity that such prejudice actually exists occasioned solely by any document production delays by AstraZeneca.  *See*, *e.g*., *Harris v. City of Philadelphia*, 47 F.3d 1311, 1331 (3d Cir. 1995) (reversing sanction order where, *inter alia*, there were numerous other less-drastic remedies available to address any actual demonstrated prejudice).

[8] Moreover, plaintiffs' abusive effort to have this Court "strike" AstraZeneca's learned intermediary defense violates the most fundamental principle of *proportionality* that underlies

**D.    Plaintiffs' Sanctions Request Is Transparently Motivated By Their Recognition That Case-Specific Discovery Has Confirmed That The Discovered Cases In This MDL Are Factually And Legally Meritless Under The Learned Intermediary Doctrine**

As the Court is well aware, one of the most important case-dispositive defenses in pharmaceutical drug litigation is the learned intermediary doctrine. "The overwhelming majority of jurisdictions" in the United States "apply the learned intermediary doctrine to define a pharmaceutical company's duty to warn of risks associated with the use of a prescription drug," such as Seroquel. *In re Norplant Contraceptive Prods. Liab, Litig.*, 215 F. Supp. 2d 795, 806-09 (E.D. Tex. 2002); *accord Madsen v. America Home Prods. Corp.*, 477 F. Supp. 2d 1025, 1033-35 (E.D. Mo. 2007). Under this settled doctrine, the drug manufacturer's warning obligation extends *only* to the physician, who acts as a "learned intermediary" between the manufacturer and end-user and who has the responsibility to inform patients of drug-related risks. *Id.*

Where, as here, the learned intermediary doctrine applies, plaintiffs' claims fail as a matter of law unless they can prove both (1) that the product warnings given by the drug manufacturer to healthcare providers were "inadequate"; *and* (2) that the inadequate warnings were what "proximately caused" the plaintiffs' alleged injuries. *In re Norplant Contraceptive Prods. Liab, Litig.*, 215 F. Supp. 2d at 803-04; *see also Madsen*, 477 F. Supp. 2d at 1035. If plaintiff cannot establish either requirement, the defendant is entitled to summary judgment. *Id.* Thus, AstraZeneca has dispositive arguments under the learned intermediary doctrine if, under

---

the Eleventh Circuit's analysis in *Serra Chervrolet*, *supra*. *See also* 8A Wright, Miller & Marcus, FEDERAL PRACTICE & PROCEDURE: CIVIL 2D § 2283 (2007). Further still, plaintiffs have *never* made the required concrete evidentiary showing of "specific prejudice" in support of *any* sanction request, much less the drastic sanction they serially ask this Court to impose. Order (Doc. No. 393) at 28.

the facts of any particular case pending in this MDL, it can establish *either* that (i) the warnings

provided to the plaintiff's prescribing physician were "adequate" at the time they were given; *or*

(ii) plaintiff cannot in any event satisfy the governing "proximate causation" requirement,

because the testimony of plaintiff's prescribing physician reveals that he or she *still would have*

prescribed Seroquel to plaintiff even if more fully warned about the risks of which plaintiff

complains.  *Madsen*, 477 F. Supp. 2d at 1035-37; *accord Stafford v. Wyeth*, 411 F. Supp. 2d

1318, 1320-21 (W.D. Okla. 2006); *Seley v. G.D. Searle & Co.*, 423 N.E.2d 831, 838 (Ohio

1991).[9]

     Case-specific discovery in the substantial majority of cases taken in this MDL, including

the Florida-related cases discovered so far, has confirmed that AstraZeneca has dispositive legal

arguments on both prongs of the learned intermediary governing analysis.  Indeed, plaintiffs'

prescribing physicians have repeatedly testified that they *were* adequately informed and aware of

the risks of weight gain, diabetes mellitus, and glucose-related issues about which plaintiffs now

complain, but determined in the exercise of their medical judgment that the benefits of Seroquel

outweighed the risks for each plaintiff given his or her unique circumstances.  Further, the

prescribing physicians have testified that they *continue* to prescribe Seroquel to patients *to this*

---

[9] Plaintiffs have previously tried to suggest that AstraZeneca's learned intermediary defense
might be defeated if plaintiffs filed a self-serving declaration stating that they would not have
agreed to take Seroquel if they had been more fully warned of the risks of Seroquel.  *See, e.g.*,
Transcript of May 22, 2007 Pretrial Conference, at pp. 62-63.  But that is legally incorrect and
fundamentally "misconstrues the learned intermediary doctrine."  *Stafford v. Wyeth*, 411 F. Supp.
2d 1318, 1320-21 (W.D. Okla. 2006) (rejecting identical contention).  Indeed, under the learned
intermediary doctrine, the pharmaceutical company defendant's duty to warn runs *only* to the
plaintiff's prescribing physician and not to the individual end-user or patient who ingests the
drug.  *Id.* at 1322; *see also, e.g.*, *In re Norplant Contraceptive Prods. Liab, Litig.*, 215 F. Supp.
2d at 803 (citing cases).

*day* – often even to these plaintiffs – because these doctors and other medical professionals continue to believe that the benefits of Seroquel outweigh the risks.  Finally, the prescribing physicians overwhelmingly have testified that they *still* would have chosen to prescribe Seroquel to the plaintiffs – even if they were provided with starker and more extreme warnings about the risks of diabetes and diabetes-related injuries – because, in their medical judgment, Seroquel's benefits in treating the patient's serious mental illnesses *still* outweighed the risks for the particular plaintiff.

To provide a more concrete example, consider the very first case listed in Plaintiffs Sanction Motion at 2, involving plaintiff Deborah Elmore (MDL Case No. 6:07-cv-16085).  The facts of this case well illustrate the extreme and unjustified nature of plaintiffs' sanctions request, as well as why plaintiffs have resorted to requesting a sanction order that would constitute reversible error under Eleventh Circuit law.

Plaintiff Deborah Elmore – an Ohio resident who ingested Seroquel and suffered her alleged injury in Ohio – had been treated for bipolar disorder, schizoaffective disorder, and depression (as well as alcoholism and crack cocaine dependence) before she began taking Seroquel.[10]  Ms. Elmore's prescriber deposed by AstraZeneca, Laura DeHelian, Ph.D., testified that she first prescribed Seroquel for Ms. Elmore in October 2005 to treat her bipolar and

---

[10] *See Elmore* Amend. Cmplt. at ¶ 3; *see also* Exh. A (Deposition of Dr. Laura DeHelian at 17, 20, 23-24 (Sept. 20, 2007) [hereinafter "DeHelian Dep."] (explaining that Ms. Elmore's alcoholism has caused cirrhosis of the liver so severe that she has been seeking a liver transplant since April 2006); Exh. B (Deposition of Deborah Elmore at 70-72 (Aug. 15, 2007) [hereinafter "Elmore Dep."] (testifying to her multiple stints in rehab); *id.* at 82-83 (acknowledging her suicide attempts and prior hospitalization for bipolar disorder); *id*. at 72 (admitting that her substance abuse has precluded her from being placed on the liver transplant list).

schizoaffective disorders.  Exh. A (DeHelian Dep. at 9, 14, 21).[11]  Thus, Dr. DeHelian first

prescribed Seroquel to Ms. Elmore *after* AstraZeneca indisputably gave the FDA-approved

diabetes warning, and *well after* Dr. DeHelian testified that she was aware of the association

between atypical antipsychotic drugs and metabolic syndrome, including diabetes.  Exh. A

(DeHelian Dep. at 18-19, 59); *see also* Exh. C (January 2004 Seroquel Package Insert).  In

March 2006, Ms. Elmore was diagnosed with diabetes mellitus (*id.* at 26), but she choose to

continue to take Seroquel after Dr. DeHelian repeatedly discussed the risks and benefits with her

and both concluded that Ms. Elmore should continue taking Seroquel.  *Id.* at 13-14, 22-23, 27,

29-31.

Dr. DeHelian attributed to Seroquel marked improvements in Ms. Elmore's health during

the years she was taking the drug under her supervision.  *Id.* at 24-33.  Yet, on July 24, 2007, Ms.

Elmore told Dr. DeHelian that she wanted to stop taking Seroquel because "the people from the

law firm had told her it would be detrimental to her case to be continuing to take the Seroquel."

*Id.* at 33; *see also* 32-36.  Dr. DeHelian testified that she saw "no reason why" Ms. Elmore

should have stopped taking the drug and doing so presented a "risk [that] her [psychotic]

symptoms w[ould] come back."  *Id.* at 33, 35.  Dr. DeHelian, who continues to see plaintiff as a

patient, stressed that she was opposed to Ms. Elmore's abrupt discontinuation of Seroquel

"'because I fear for what could literally be her life.'"  *Id.* at 7, 35 (quoting Dr. DeHelian's

medical records).

---

[11] Dr. DeHelian's determination to prescribe Seroquel for Ms. Elmore beginning in October 2005
was consistent with determinations about one year earlier by other healthcare providers to
prescribe some atypical antipsychotic for her, including Risperdal and/or Seroquel.  *See* Exh. A
(DeHelian Dep. at 21, 22).

Ohio – whose state law will apply in plaintiff Elmore's case – adopted the learned intermediary doctrine in 1981. *See Tracy v. Merrell Dow Pharmaceuticals, Inc*., 569 N.E.2d 875, 878 (Ohio 1991) (citing *Seley v. G.D. Searle & Co.*, 423 N.E.2d 831, 837-38 (Ohio 1981)). Under Ohio law, plaintiff Elmore will have to establish (1) that AstraZeneca's diabetes-related warnings for Seroquel were inadequate, *and* (2) that, had her doctor been even more fully warned, she would *not* have prescribed Seroquel for plaintiff. *See*, *e.g*., *Seley*, 423 N.E.2d at 838 (where additional warnings would have made no difference in the physician's decision to prescribe, the proximate cause element between the warning and ingestion of the drug is lacking). Plaintiff Elmore cannot satisfy this burden because:

- Dr. DeHelian, a healthcare professional, prescribed Seroquel to Ms. Elmore. Exh. A (DeHelian Dep. at 9, 14);

- Plaintiff Elmore testified that she relied on her doctors' advice and medical judgment, including Dr. DeHelian's, in taking the drugs prescribed for her, including Seroquel. *See* Exh. B (Elmore Dep. at 87);

- Dr. DeHelian testified that she was adequately warned of the risks of weight gain, diabetes mellitus, and glucose-related issues before she prescribed Seroquel to Ms. Elmore. Exh. A (DeHelian Dep. at 18-19, 59);

- Dr. DeHelian testified that she weighed the risks and concluded that the benefits of Seroquel outweighed the risks for Ms. Elmore. *Id*. at 13-14, 22;

- Dr. DeHelian testified that she not only repeatedly apprised Ms. Elmore of the risks, but continued to prescribed Seroquel to Ms. Elmore after she developed diabetes. *Id*. at 23, 27, 29-31;

- Dr. DeHelian testified that she continues to believe today that it would be in Ms. Elmore's best interest if, instead of listening to her lawyers, she were to continue to take Seroquel as prescribed. *Id*. at 32-36, 60;

- Dr. DeHelian testified that she *still* would have chosen to prescribe Seroquel to Ms. Elmore – even if it contained more extreme warnings about the risks of diabetes and

diabetes-related injuries – because the benefits Seroquel provided to Ms. Elmore in treating her serious mental illness *still* outweigh the risks. *Id*. at 60-61.

Thus, case-specific discovery in plaintiff Elmore's case reveals that this plaintiff will be unable to overcome AstraZeneca's dispositive legal defense based on the learned intermediary doctrine under the governing law.

When considered in the context of the case-specific discovery conducted to date in this MDL, plaintiffs' attempt to exploit this Court's document-discovery sanctions ruling as an excuse to give them a free-pass from AstraZeneca's learned intermediary doctrine defense is simply outrageous. Plaintiffs are effectively asking the Court to *create liability* on the part of AstraZeneca in these cases where *none* otherwise exists under the facts and governing law.[12] Yet Federal Rule of Civil Procedure 37 authorizes courts to impose *only* those sanctions that "are just" under the particular circumstances. Fed. R. Civ. P. 37(b)(2); *see also Serra Chevrolet, Inc.*, 446 F.3d at 1140, 1147, 1150-52 (reversing sanction order striking affirmative defenses as unjust and unconstitutional); *Chudasama v. Mazda Motor Corp*., 123 F.3d 1353, 1365 (11th Cir. 1997) (emphasizing that courts must be "scrupulous" in meting out discovery-related sanctions and not "lightly" resort to an "extreme sanction") (internal quotations and citation omitted).

Here, plaintiffs have utterly failed to establish that their extreme requested discovery sanction is "just" under the circumstances. Instead, as shown above, Plaintiffs' Sanctions Motion is procedurally defective, contrary to this Court's prior instructions on the nature of any

---

[12] In fact, given that the learned intermediary doctrine applies "to define" the state-law legal "duty" of pharmaceutical companies such as AstraZeneca, *In re Norplant Contraceptive Prods. Liab, Litig.*, 215 F. Supp. 2d at 805, plaintiffs' sanction request effectively asks the Court to modify the defendants' *substantive legal duties under state law* as a federal procedural sanction.

sanctions that it may impose, and requests a sanction that would patently violate AstraZeneca's due process rights on this record and under the circumstances here.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs' Sanctions Motion should be denied.

DATED:  October 25, 2007

Respectfully submitted,

*/s/ Fred T. Magaziner*
  Fred T. Magaziner
  DECHERT LLP
  2929 Arch Street
  Philadelphia, PA  19103
  Telephone: (215) 994-4000
  Facsimile: (215) 994-2222
  fred.magaziner@dechert.com

  Steven B. Weisburd
  Gretchen S. Sween
  DECHERT LLP
  300 West 6th Street, Suite 1850
  Austin, TX  78701
  Telephone: (512) 394-3000
  Facsimile: (512) 394-3001

  *Counsel for AstraZeneca Pharmaceuticals LP and AstraZeneca LP*

## CERTIFICATE OF SERVICE

I hereby certify that, on October 25, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system through which all participating parties are deemed served.  I further certify that, by using the CM/ECF, the foregoing has been served on plaintiffs' liaison counsel, who is charged with serving any non-CM/ECF participants on the attached Service List.

*/s/ Gretchen S. Sween*

SERVICE LIST

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No. 1769**

| | |
|---|---|
| Scott Allen<br>Cruse, Scott, Henderson & Allen, L.L.P.<br>2777 Allen Parkway, 7th Floor<br>Houston, TX 77019<br>Tel: (713) 650-6600<br>sallen@crusescott.com | Robert L. Ciotti<br>Carlton Fields, P.A.<br>42212 W. Boy Scout Blvd., Suite 1000<br>Tampa, FL 33607-5736<br>Tel: (813) 223-7000<br>rciotti@carltonfields.com<br>tpaecf@cfdom.net<br>atravis@carltonfields.com<br>*Counsel for Defendants AstraZeneca*<br>*Pharmaceuticals, L.P, and AstraZeneca LP* |
| Mary B. Cotton<br>John D. Giddens, P.A.<br>P.O. Box 22546<br>Jackson, MS 39225-2546<br>Tel: (601) 355-2022<br>betsy@law-inc.com | Michael Davis<br>James Mizgala<br>Sidley Austin LLP<br>Bank One Plaza<br>One South Dearborn St.<br>Chicago, IL 60603<br>Tel: (312) 853-7731<br>mdavis@sidley.com<br>jmizgala@sidley.com |
| Aaron K. Dickey<br>Goldenberg and Heller, PC<br>P.O. Box 959<br>2227 S. State Route 157<br>Edwardsville, IL 62025<br>Tel: (618) 650-7107<br>aaron@ghalaw.com | Heidi Elizabeth Hilgendorff<br>Thomas Campion<br>Drinker Biddle & Reath, LLP<br>500 Campus Dr.<br>Florham Park, NJ 07932-1047<br>Tel: (973) 360-1100<br>thomas.campion@dbr.com<br>heidi.hilgendorff@dbr.com<br>jeffrey.peck@dbr.com<br>*Counsel for Defendants Janssen*<br>*Pharmaceutical Products and Johnson &*<br>*Johnson Co.* |

| | |
|---|---|
| John J. Driscoll | Kenneth T. Fibich |
| Brown & Crouppen, PC<br>720 Olive St., Suite 1800<br>St. Louis, MO 63101<br>Tel: (314) 421-0216<br>jdriscoll@brownandcrouppen.com<br>bsmith@brownandcrouppen.com<br>rbrooks@brownandcrouppen.com<br>blape@brownandcrouppen. com | Fibich, Hampton & Leebron, LLP<br>1401 McKinney St., Suite 1800<br>Five Houston Center Houston, TX 77010<br>Tel: (713) 751-0025<br>tfibich@fhl-law.com |
| Gregory P. Forney<br>Shaffer, Lombardo & Shurin<br>911 Main St., Suite 2000<br>Kansas City, MO 64105<br>Tel: (816) 931-0500<br>gforney@sls-law.com<br>rbish@sls-law.com<br>*Counsel for Defendant, Marguerite Devon French* | Todd S. Hageman<br>Simon and Passanante, PC<br>701 Market St., Suite 1450<br>St. Louis, MO 63101<br>Tel: (314) 241-2929<br>thageman@spstl-law.com |
| W. Todd Harvey<br>Joe R. Whatley, Jr.<br>2323 2nd Ave. N<br>Birmingham, AL 35203-0647<br>Tel: (205) 328-9576<br>tharvey@whatleydrake.com<br>j whatley@whatleydrake. com<br>ecf@whatleydrake.com | Jona R. Hefner<br>3441 W. Memorial, Suite 4<br>Oklahoma, OK 73134-7000<br>Tel: (405) 286-3000<br>attorneyokc@hotmail.com<br>attorneyokc@gmail.com |

| | |
|---|---|
| Lawrence J. Gornick<br>William A. Levin<br>Dennis J. Canty<br>Levin Simses Kaiser & Gornick, LLP<br>44 Montgomery St., 36th Floor<br>San Francisco, CA 94104<br>Tel: (415) 646-7160<br>lgornick@lskg-law.com<br>dcanty@lskg-law.com<br>llsimes@levins-law.com<br>jkaiser@lskg-law.com<br>echarley@lskg-law. com<br>ddecarli@lskg-law.com<br>bsund@lskg-law.com<br>astavrakaras@lskg-law.com | Scott Burdine<br>Hagans Burdine Montgomery<br>Rustay & Winchester, P.C.<br>3200 Travis, 4th Floor<br>Houston, TX 77006<br>Tel: (713) 222-2700<br>sburdine@hagans-law.com |
| Thomas Campion<br>Heidi E. Hilgendorff<br>Drinker Biddle & Reath, LLP<br>500 Campus Dr.<br>Florham Park, NJ 07932-1047<br>Tel: (973) 360-1100<br>thomas.campion@dbr.com<br>heidi.hilgendorff@dbr.com<br>jeffrey.peck@dbr.com<br>*Counsel for Defendants Janssen<br>Pharmaceutical Products and Johnson &<br>Johnson Co.* | Jona R. Hefner<br>3441 W. Memorial, Suite 4<br>Oklahoma, OK 73134-7000<br>Tel: (405) 286-3000<br>attorneyokc@hotmail.com<br>attorneyokc@gmail.com |
| Keith M. Jensen<br>Jensen, Belew & Gonzalez, PLLC<br>1024 North Main<br>Fort Worth, TX 76106<br>Tel: (817) 334-0762<br>kj@kjenselaw.com<br>kjensenlaw@gmail.com | Aaron C. Johnson<br>Summers & Johnson<br>717 Thomas<br>Weston, MO 64098<br>Tel: (816) 640-9940<br>aaron@summersandjohnson.com<br>firm@summersandjohnson.com |
| Jamie R. Kendall<br>301 Massachusetts Ave.<br>Indianapolis, IN 46204<br>Tel: 317-633-8787<br>jkendall@price-law.com<br>eamos@price-law.com | Mark A. Koehn<br>whrfrat42@yahoo.com |

| | |
|---|---|
| Benjamin A. Krass<br>Law Offices of Matthew F. Pawa, P.C.<br>1280 Centre St., Suite 230<br>Newton Centre, MA 02459<br>Tel: (617) 641-9550<br>bkrass@pawalaw.com | D. Andrew List<br>Clark Perdue Arnold & Scott<br>471 East Broad St., Suite 1400<br>Columbus, OH 43215<br>Tel: 877-220-2203<br>alist@cpaslaw.com |
| Matthew E. Lundy<br>Lundy & Davis<br>333 N. Sam Houston Pkwy., E<br>Suite 375<br>Houston, TX 77060<br>Tel: (281) 272-0797<br>mlundy@lundydavis.com<br>jdibbley@lundydavis.com | David P. Matthews<br>Abraham, Watkins, Nichols, Sorrels,<br>Matthews & Friend<br>800 Commerce St.<br>Houston, TX 77002-1776<br>Tel: (713) 222-7211<br>dmatthews@abrahamwatkins.com<br>agoff@abrahamwatkins.com<br>jrhoades@abrahamwatkins. com<br>j webster@abrahamwatkins. com |
| James Mizgala<br>Sidley Austin LLP<br>Bank One Plaza<br>One South Dearborn St.<br>Chicago, IL 60603<br>Tel: (312) 853-7731<br>mdavis@sidley.com<br>jmizgala@sidley.com<br>lmodaff@sidley.com<br>efilingnotice@sidley.com<br>*Counsel for Defendants AstraZeneca LP*<br>*and AstraZeneca Pharmaceuticals LP* | Howard Nations<br>Howard L. Nations Attorney At Law<br>4515 Yoakum Blvd.<br>Houston, TX 77006-5895<br>Tel: (713) 807-8400<br>nations@howardnations.com<br>lori@howardnations.com<br>kim@howardnations.com<br>andrea@howardnations.com<br>charles@howardnations.com<br>lezzlie@howardnations.com |
| Matthew F. Pawa<br>Law Offices of Matthew F. Pawa, P.C.<br>1280 Centre St., Suite 230<br>Newton Centre, MA 02459<br>Tel: (617) 641-9550<br>mp@pawalaw.com | Paul J. Pennock<br>Michael E. Pederson<br>Weitz & Luxenburg, P.C.<br>180 Maiden Lane – 17th Floor<br>New York, NY 10038<br>Tel: (212) 558-5500<br>Ppennock@weitzlux.com<br>Lschutlz@weitzlux.com<br>MPederson@weitzlux.com<br>JOrelli@weitzlux.com<br>*Plaintiff's Lead Counsel* |

| | |
|---|---|
| Carlos A. Prietto, III<br>Robinson Calcagnie & Robinson<br>620 Newport Center-Drive<br>7th Floor<br>Newport Beach, CA 92660<br>Tel: 940-720-1288<br>cbregman@rcrlaw.net<br>cprietto@rcrlaw.net<br>ctakanabe@rcrlaw.net<br>kschaeffer@rcelaw.net | Fred T. Magaziner<br>Marjorie Shickman<br>A. Elizabeth Balakhani<br>Shane T. Prince<br>Eben S. Flaster<br>Stephen J. McConnell<br>Brennen Joseph Torregrossa<br>Dechert, LLP<br>2929 Arch St., Cira Center<br>Philadelphia, PA 19104-2808<br>Tel: (215) 994-4000<br>Fred.magaziner@dechert.com<br>Marjorie.shiekman@dechert.com<br>shane.prince@dechert.com<br>cheryl.inwek@dechert.com<br>Eben.flster@dechert.com<br>elizabeth.balakhani@dechert.com<br>michelle.kirscEh@dechert.com<br>*Counsel for Defendant Astrazeneca*<br>*Pharmaceuticals, LP* |
| William N. Riley<br>Jamie R. Kendall<br>301 Massachusetts Ave.<br>Indianapolis, IN 46204<br>Tel: 317-633-8787<br>wriley@price-law.com<br>eamos@price-law.com | Mark P. Robinson, Jr.<br>Robinson Calcagnie & Robinson<br>620 Newport Center Dr., 7th Floor<br>Newport Beach, CA 92660<br>Tel: (949) 720-1288<br>mrobinson@robinson-pilaw.com<br>mrobinson@rcrlaw.net |
| Larry Roth<br>Law Offices of Larry M. Roth, P.A.<br>P.O. Box 547637<br>Orlando, FL 32854-7637<br>Tel: (407) 872-2239<br>lroth@roth-law.com<br>lcarrington@roth-law.com<br>epoit@roth-law.com<br>*Plaintiffs' Liaison Counsel* | Lizy Santiago<br>Abraham, Watkins, Nichols, Sorrels,<br>Matthews & Friend<br>800 Commerce St.<br>Houston, TX 77002-1776<br>Tel: (713) 222-7211<br>lsantiago@thematthewslawfirm.com<br>msalazar@thematthewslawfirm.com<br>lsantiago@abrahamwatkins.com |

| | |
|---|---|
| Robert A. Schwartz<br>Bailey & Galyen<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Tel: (281) 335-7744<br>bschwartz@galyen.com<br>anixon@galyen.com | Kenneth W. Smith<br>Aylstock Witkin Kreis & Overholtz<br>803 North Palafox St.<br>Pennsacola, FL 32501<br>Tel: (850) 916-7450<br>ksmith@awkolaw.com<br>kws6619@msn.com<br>rvasquez@awkolaw. com |
| Brennen Joseph Torregrossa<br>Dechert, LLP<br>2929 Arch St., Cira Center<br>Philadelphia, PA 19104-2808<br>Tel: (215) 994-4000<br>brennen.torregrosssa@dechert.com<br>*Counsel for Defendant Astrazeneca Pharmaceuticals, LP* | Ted C. Wacker<br>Robinson Calcagnie & Robinson<br>620 Newport Center Dr., 7th Floor<br>Newport Beach, CA 92660<br>Tel: (949) 720-1288<br>twacker@rcrlaw.net |
| W. Todd Harvey<br>Joe R. Whatley, Jr.<br>2323 2nd Ave. N<br>Birmingham, AL 35203-0647<br>Tel: (205) 328-9576<br>tharvey@whatleydrake.com<br>jwhatley@whatleydrake.com<br>ecf@whatleydrake.com | Justin Witkin<br>Ken Smith<br>Aylstock, Witkin & Sasser, PLC<br>4400 Bayou Blvd., Suite 58<br>Pensacola, FL 32503<br>Tel: (850) 916-7450<br>Jwitkins@AWS-LAW.COM<br>ablankenship@aws-law.com<br>aburrus@aws-law.com<br>asmith@aws-law.com<br>ksmith@aws-law.com<br>noverholtz@aws-law.com<br>jsafe@aws-law.com |

## NON-ECF SERVICE LIST

| | |
|---|---|
| Bridget Ahmann<br>Faegre & Benson, LLP<br>90 S. 7th St., Ste 2200<br>Minneapolis, MN 55402-3901 | Timothy Reese Balducci<br>The Langston Law Firm, P.A.<br>P.O. Box 787<br>100 South Main St.<br>Booneville, MS 38829<br>Tel: (662) 728-3138<br>tbalducci@langstonlaw.com |

| | |
|---|---|
| Kenneth W. Bean<br>Sandberg, Phoenix & von Gontard<br>One City Centre<br>15th Floor<br>St. Louis, MO 63101-1880<br>Tel: (314) 231-3332<br>kbean@spvg.com | Earl Francis Carriveau<br>1012 6th Ave.<br>Lake Charles, LA 70601-4706 |
| Robert F. Clarke<br>Phillips & Associates<br>3030 North Third St., Ste 1100<br>Phoenix, AZ 85012 | Patricia Cook |
| Cannon Curlee | Mark W. Davis<br>Davis & Feder, P.A.<br>P.O. Drawer 6829<br>Gulfport, MS 39506-7018 |
| Warren Frazier | James J. Freebery<br>McCarter & English, LLP<br>18th Floor<br>919 N. Market St.<br>Wilmington, DE 19801 |
| Michael T. Gallagher<br>The Gallagher Law Firm<br>2905 Sackett St.<br>Houston, TX 77098 | Gary Reed Gober<br>200 Fourth Ave. North<br>Suite 700<br>Nashville, TN 37219 |
| Richard D. Hailey<br>Ramey & Hailey<br>3891 Eagle Creek Pkwy.<br>Suite C<br>Indianapolis, IN 46254-2600 | Jason Matthew Hatfield<br>Lundy & Davis, LLP<br>300 North College Ave.<br>Suite 309<br>Fayetteville, AR 72701 |
| John Hawkins<br>Janssen, L.P.<br>Drinker Biddle & Reath LLP<br>500 Campus Drive<br>Florham Park, NJ 07932-1047 | Donna Higdon<br>Johnson & Johnson<br>Drinker Biddle & Reath LLP<br>500 Campus Drive<br>Florham Park, NJ 07932-1047 |

| | |
|---|---|
| Krisann C. Kleibacker Lee<br>Faegre & Benson LLP<br>90 S 7th St. Ste. 2200<br>Minneapolis, MN 55402-3901 | Louisiana Wholesale Drug Co. Inc.<br>c/o Gayle R. White<br>Registered Agent<br>Highway 167N<br>Sunset, LA 70584 |
| Salvatore M. Machi<br>Ted Machi & Associates PC<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Tel: (281) 335-7744 | Stephen J. McConnell<br>Dechert, LLP<br>2929 Arch St., Cira Center<br>Philadelphia, PA 19104-2808 |
| Eric B. Milliken<br>3 Sir Barton Ct.<br>Newark, DE 19702-2033 | Randy Niemeyer<br>15863 Pike 43<br>Bowling Green, MO 63334-2620 |
| Gale D. Pearson<br>Pearson, Randall & Schumacher, PA<br>Fifth Street Towers, Suite 1025<br>100 South 5th Street<br>Minneapolis, MN 55402 | Dale Kent Perdue<br>Clark Perdue Arnold & Scott<br>471 East Broad St., Suite 1400<br>Columbus, OH 43215 |
| Stephen J. Randall<br>Pearson, Randall & Schumacher, PA<br>First Street Towers, Suite 1025<br>100 South 5th Street<br>Minneapolis, MN 55402 | Brenda Rice |
| Evelyn Rodriguez | Robert L. Salim<br>Attorney At Law<br>P.O. Box 2069<br>Natchitoches, LA 71457-2069<br>Tel: (318) 352-5999<br>robertsalim@cp-tel.net |
| Ellen R. Serbin<br>Perona Langer Beck Lallande & Serbin<br>300 San Antonio Dr.<br>Long Beach, CA 90807-0948 | Marjorie Shickman<br>Dechert, LLP<br>2929 Arch St., Cira Center<br>Philadelphia, PA 19104-2808 |

| | |
|---|---|
| Robert H. Shultz<br>Heyl, Royster<br>103 W. Vandalia St.<br>P.O. Box 467<br>Edwardsville, IL 62025 | Robert G. Smith<br>Lorance & Thompson, PC<br>Suite 500<br>2900 N Loop W<br>Houston, TX 77092 |
| Catherine Solomon<br>3100 N.E. 83<br>Gladstone, MO 64119 | Linda S. Svitak<br>Faegre & Benson LLP<br>2200 Wells Fargo Center<br>90 South Seventh St.<br>Minneapolis, MN 55402-3901 |
| Seth S. Webb<br>Brown & Crouppen, P.C.<br>720 Olive St., Suite 1800<br>St. Louis, MO 63101-2302 | Mary J. Wrightinton |