# EXHIBIT F

Page 1

93163 eb

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE:   SEROQUEL PRODUCTS LIABILITY LITIGATION
MDL DOCKET NO. 1769

---

THIS DOCUMENT RELATES TO 6:07-cv-14238

DEPOSITION OF DEBRA SCOTT

UPON RECEIPT OF SIGNATURE, THE ORIGINAL OF THIS
DEPOSITION WILL BE IN THE CUSTODY OF:

Catherine Valerio Barrad, Esquire
Sidley Austin LLP
555 West Fifth Street
Suite 4000
Los Angeles, California   90013

Date                        Edith A. Boggs, CSR

8-16-07                     HOUSTON, TEXAS

1    Q.   Has anyone ever asked you to look for them?
2    A.   No.
3              (Exb. No. 1
4         was marked for identification.)
5    Q.   (BY MS. BARRAD)  Ms. Scott, I am handing you what
6  the court reporter has marked as Exhibit 1 in this
7  deposition.  This is the notice of deposition.
8    A.   Uh-huh.
9    Q.   Have you ever seen this before?
10   A.   No.
11   Q.   Can you turn to Page 4, please?
12   A.   (Witness complies.)
13   Q.   Have you seen Schedule A before?
14   A.   No.
15   Q.   Your lawyers did not send you a copy of Schedule
16  A when your deposition was scheduled?
17   A.   No.
18   Q.   How did you hear about this deposition?
19   A.   I do have a letter -- I have a letter at home
20  that was telling me about the deposition.
21   Q.   When did you receive that letter?
22   A.   I don't know what day that was.  It was mailed
23  out.
24   Q.   Was it last week, last month?  Approximately
25  when?

1  A.  Last month sometime.
2  Q.  Did that letter include your notice of
3  deposition?
4  A.  I think so.
5  Q.  Did that letter ask you to look for documents in
6  your home?
7  A.  No, I don't think so.
8  Q.  Did it ask you to look for the items on Schedule
9  A and bring them to the deposition?
10 A.  No.
11 Q.  Can you read Schedule A, please, and let me know
12 which of these you have?
13 A.  I think I -- I'm not sure.  I think I might have
14 got a request for the medical records, number one, and I
15 sent them in.
16 Q.  Do you still have a copy of those medical records
17 at your home?
18 A.  I think so.  I'm not sure.
19 Q.  Do you have anything from a pharmacy?
20 A.  No.
21 Q.  Any receipts or papers that they give you when
22 they prescribe -- or when they dispense medication to
23 you?
24 A.  No.
25 Q.  Are you still taking Seroquel now?

1   A.   Yes.
2   Q.   Do you have any containers of Seroquel?
3   A.   Not on me, no.
4   Q.   Do you have them in your home?
5   A.   Yeah.
6   Q.   Do you have any papers that were provided to you,
7   instructions on how to use Seroquel or anything like
8   that?
9   A.   No.
10  Q.   Anything from your doctor or your pharmacist?
11  A.   No.
12  Q.   Can you continue reading through Schedule A and
13  let me know what else you have?
14  A.   I have none of these others.
15          MS. BARRAD:  Counsel, we're going to ask
16  that all of the relevant documents within her
17  possession, custody and control be provided to us.
18          MS. WILSON:  Okay.
19  Q.   (BY MS. BARRAD)  Ms. Scott, do you visit a doctor
20  regularly?
21  A.   Yes.
22  Q.   Do you have appointments that you make to visit
23  the doctor?
24  A.   Yes.
25  Q.   How do you keep track of those appointments?

1   A.   I write down on the calendar what day that I go
2   to the doctor.
3       Q.   Where is that calendar located?
4       A.   It's in my -- in my kitchen.
5            MS. BARRAD:  Counsel, we're going to ask
6   that she provide copies of all calendars and diaries
7   associated with her medical records and medical
8   appointments as well.
9            MS. WILSON:  All right.
10      Q.   (BY MS. BARRAD)  How far back do you keep those
11  calendars?
12      A.   About two or three months back.
13      Q.   What do you do with them?
14      A.   Well, it's the kind of calendar you tear the
15  months off and, you know, I just tear them off and throw
16  them away but I keep month to month when I go to see my
17  doctor and whatnot.
18      Q.   And are you aware that when you file a lawsuit,
19  you have an obligation to keep all of the documents
20  associated -- that may be relevant to the litigation and
21  not get rid of them?
22      A.   I didn't know at the time, no.
23      Q.   Do you have access to a computer?
24      A.   No.
25      Q.   Have you ever used a computer?

1    A.   No.

2    Q.   Do you remember seeing a Dr. Alberto de Navidad?

3    A.   No.

4    Q.   Do you remember seeing a doctor named Ali Tajik?

5    A.   No.  There may have been some doctors that were
6    in the hospitals that were, you know -- that would come
7    in during the rounds, patient rounds, might have came in
8    the room and said something to me.

9           MS. WILSON:  Can I interrupt for one second?
10   You all were going so fast, I didn't get an opportunity
11   to get my objection in.  I want to object to your
12   question regarding monetary damages for her use of
13   Seroquel.  Because Ms. Scott is not an attorney, she
14   doesn't know exactly what her claims are technically in
15   her petition.

16   Q.   (BY MS. BARRAD)  Let me rephrase my question.
17        Have you spent any money out of your own pocket
18   to -- for medical care or anything else associated with
19   the injuries that you're claiming Seroquel caused you,
20   your high blood sugar or your diabetes?

21   A.   Sometimes when my -- because like on Medi-Cal,
22   you only get to use your card six times, and sometimes I
23   have to go in my pocket and pay for my medicine myself.

24   Q.   Do you have any receipts for those payments?

25   A.   No, not on me.

1  Q. Do you have them at home?
2  A. Yes.
3  Q. Are there any other expenses that you have
4  incurred --
5  A. No.
6  Q. -- in connection with your diabetes?
7  A. No.
8  Q. Or your high blood sugar?
9  A. No.
10       MS. BARRAD: Counsel, we're going to ask
11 that you produce copies of those receipts for
12 out-of-pocket expenses.
13       MS. WILSON: And, again, we're going to
14 object to that request. That request needs to be made
15 in a formal written -- as a formal written request.
16  Q. (BY MS. BARRAD) Ms. Scott, where do you get your
17 prescriptions filled?
18  A. Ross Plaza and Ward's Pharmacy.
19  Q. Where is Ross located?
20  A. 1818 Southwestern.
21  Q. Is that in the same location as Dr. Pearson?
22  A. Yes.
23  Q. And where is Ward's Pharmacy located?
24  A. At 631 East 7th Street -- 7th Street in Long
25 Beach.