UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE: Seroquel Products Liability Litigation
MDL DOCKET NO. 1769
_____

This Document Relates to All Cases

ASTRAZENECA'S OPPOSITION TO PLAINTIFFS' SECOND MOTION FOR
SANCTIONS DUE TO ALLEGED DISCOVERY MISCONDUCT

I.      INTRODUCTION

Defendants AstraZeneca LP and AstraZeneca Pharmaceuticals LP ("AstraZeneca")

oppose Plaintiffs' Motion for Sanctions for Misconduct in the Case Specific Discovery Program

(Doc. No. 604) ["Second Sanctions Motion"], wherein plaintiffs ask yet again that the Court

strike AstraZeneca's learned-intermediary defense – this time based on premature,

unsubstantiated, and demonstrably inaccurate complaints about the case-specific discovery

program.  This Second Sanctions Motion gives the false impression that the entire case-specific

discovery endeavor is unmanaged and dysfunctional.  In truth, case-specific discovery is

proceeding remarkably well.  Within 5 to 7 days of selection of plaintiffs for case-specific

discovery, AstraZeneca has been making substantial disclosures – including call notes,

professional information requests, dear healthcare provider letters, payments to physicians, and

IMS prescribing data.  The Special Master of the Project Management Office ("PMO") is

performing an excellent job of scheduling depositions, resolving disputes, and generally assuring

that case-specific discovery remains on track as per this Court's orders.

1

Plaintiffs' Second Sanctions Motion, which was brought by skirting the PMO and the meet-and-confer process entirely, is an unwarranted assault on the attorneys and project-management office who have been working hard to make the case-specific discovery program work.  The charges leveled in the motion are based on half-truths and innuendo, but worse yet, rely on disputes that have either *already been resolved* or would certainly have been resolved promptly if the plaintiffs had followed the meet-and-confer requirements of Local Rule 3.01(g), or had referred the disputes to the PMO for recommendation and resolution.

The Court, of course, understands that these issues should have been raised with the PMO and has already ordered the parties to confer with the PMO about whether the representations regarding AstraZeneca's case-specific discovery, as set forth in plaintiffs' Second Sanctions Motion, are accurate "and/or can be remedied with appropriate expedition."  Notice of Hearing and Order (Doc. No. 638) at 1.  AstraZeneca looks forward to working with the PMO.  In accordance with the Local Rules, however, AstraZeneca files this opposition to make its position clear to the Court.

Aside from being procedurally improper and premature, plaintiffs' Second Sanctions Motion should be denied for at least three additional reasons:

(1)     Plaintiffs have mischaracterized AstraZeneca's disclosures and approach to case-specific discovery;

(2)     The motion fails to demonstrate any real prejudice – let alone prejudice that is genuinely material to AstraZeneca's learned-intermediary defense in the cases discovered to date; and

(3)     Plaintiffs' extreme sanction request is wildly out of proportion to the discovery conduct identified and, thus, is legally unsustainable under the governing authorities.

## II.     BACKGROUND

Before the instant motion, plaintiffs filed a different motion also asking the Court to strike AstraZeneca's learned-intermediary defense as a discovery sanction (Doc. No. 591) ["Motion to Deem Sanctions Motion Filed"].  AstraZeneca filed an opposition (Doc. No. 609) demonstrating the defective nature of that motion.   Five days later – without *any* effort to meet-and-confer first – plaintiffs filed the instant motion seeking the same relief (striking AstraZeneca's learned-intermediary defense) on different grounds  – this time based on supposed misconduct in case-specific discovery.  The Second Sanctions Motion not only is fraught with factual inaccuracies, but also fails to show that plaintiffs have been prejudiced in deposing prescribers.  Hence, plaintiffs have not shown how imposing such an extreme sanction would be a permissible, just, or even rational discovery sanction under Federal Rule of Civil Procedure 37.

Ostensibly, plaintiffs' Second Sanctions Motion relies on the Court's Order of August 3, 2007 (Doc. No. 348) ["8/3/07 Order"], which provides that call notes be produced in electronic format – as they indisputably have been – and that other information be produced in electronic form "to the extent" those materials are available in that format.  The Court's 8/3/07 Order also provided for the appointment of the PMO, who was given broad authority with respect to case-specific discovery disputes.  *Id.* at 1.  One reason the PMO was appointed was to curtail the kind of contentious and premature motion practice exemplified by plaintiffs' Second Sanctions Motion.  The motion purports to identify six types of issues – all of which are easily rebutted:

(1)     IMS:  The issue of providing IMS in electronic format or paper was never the subject of a meet-and-confer or brought to the PMO.  Had either occurred, the dispute could have been swiftly resolved.

(2)     Call Notes:  The call notes issue was never the subject of a meet-and-confer.  Indeed, the problem was ***discovered and fixed by AstraZeneca*** before the

plaintiffs had deposed any Pharmaceutical Sales Specialists ("PSSs").  This "dispute" was resolved so quickly that there was never time to bring the matter to the PMO.

(3)     Timely Production:  Plaintiffs complain because, in *one* instance, they received supplemented disclosures 38 hours before a prescriber deposition. Aside from the fact that no prejudice came from receiving these documents *before* the deposition, any complaints should have been raised in a meet-and-confer and then, if necessary, brought to the PMO.

(4)     Payment to Physicians: The payments to physicians issue was noted by the Bailey firm, then investigated and fixed by AstraZeneca.  The issue was brought to the attention of the PMO and exemplifies how the PMO supervises dispute resolution in the case-specific discovery program.

(5)     Late PSS Designations:  ***Plaintiffs*** made several PSS designations approximately 30 days *after* the deadline imposed by CMO No. 4.  This was the subject of a meet-and-confer and was resolved by the PMO in Report and Recommendation No. 2.

(6)     MarketPro Data:  CMO No. 4 did not require AstraZeneca to produce this information in case-specific discovery.  Instead, AstraZeneca *voluntarily* agreed to produce this information as the result of a meet-and-confer regarding general discovery.   For the plaintiffs to seek sanctions against AstraZeneca for performing its agreement indicates how overreaching this entire sanctions campaign has become.

As explained further in section A below, the problems about which plaintiffs complain do not presently exist.   Those issues that were identified – whether by plaintiffs or by AstraZeneca – were immediately investigated and resolved.   The suggestion that AstraZeneca should be sanctioned because its attorneys identified and fixed problems before any prejudice occurred is not cogent.   Moreover,  plaintiffs' proposed remedy – striking the learned intermediary defense – is profoundly out of proportion, even if any legitimate issues did exist.  As AstraZeneca's opposition to plaintiffs' Motion to Deem Sanctions Motion Filed already explained, the learned-intermediary doctrine is a fundamental rule of law in pharmaceutical litigation that defines the scope of a prescription drug manufacturer's duty to warn of risks associated with their drugs.

4

*See*, *e.g.*, *In re Norplant Contraceptive Prods. Liab., Litig.*, 215 F. Supp. 2d 795, 806-09 (E.D. Tex. 2002).  Plaintiffs repeated and improper efforts to insulate their cases from this well-settled doctrine by turning this litigation into a case about sanctions should be rebuffed.  Therefore, as this Court has already recognized, the issues raised in the instant motion should have been presented to the PMO before this Second Sanctions Motion was filed.  *See* Notice of Hearing and Order (Doc. No. 638).  In short, this motion should be summarily denied.

## III.   DISCUSSION

### A.   Plaintiffs' Description Of AstraZeneca's Approach To Case-Specific Discovery Is Misleading And Appears Designed To Sow Additional Conflict, Not To Resolve Any Genuine Discovery Concerns

Plaintiffs have incorrectly described the facts that supposedly provide the basis for their Second Sanctions Motion.  Of the six issues the motion raises, only *one* was presented to the PMO.  That one issue – the effect of *plaintiffs'* late designation of AstraZeneca sales representatives for deposition in specific cases – *has already been resolved by the PMO*.  *See* Exh. 1, Declaration of Russell Stewart ["Stewart Decl."] at Exh. A.

#### 1.   IMS Data

Plaintiffs contend that AstraZeneca has failed to produce "complete" IMS data because it has "only" produced data going back to 1999 and has failed to produce it in electronic form.  Second Sanctions Motion at 12.  The first alleged failure is meritless on its face; the second requires rewriting history.  This Court emphasized that AstraZeneca only "ha[s] to do it one way [PDF or electronic] if it's readable."  *See* 7/27/07 Hearing Transcript at 21:6-7.  Plaintiffs' counsel then unequivocally responded that if the data disclosed by AstraZeneca is "readable" that "that will be fine."  *Id*. at 21:9-10.  The IMS data was produced in PDF form and is perfectly

5

readable in that format.  Furthermore, the IMS materials have essentially no metadata to search or manipulate, as was explained to plaintiffs' counsel in the same correspondence where AstraZeneca's counsel made the following offer:  "As we discussed, you are going to look again at the disclosures – I believe that the identities of field representatives are clear in the format you received from us.  I'm pleased to discuss this again . . . ."  *See* Stewart Decl. at Exh. B.  Although AstraZeneca's counsel invited Mr. Canty to follow-up if he had any questions, he never did so. Nor did Mr. Canty (or any other plaintiffs' counsel) ever suggest at the time that the IMS disclosures were inadequate in any way.  Plaintiffs elected to skip even the pretext of a meet-and-confer and filed the instant motion instead.

### 2.    Call Notes

As plaintiffs' motion acknowledges, AstraZeneca produced the first call note summaries in July in a PDF format.  *See* Second Sanctions Motion at 4.  After plaintiffs complained that the notes were not easy to read, AstraZeneca produced the material in electronic format – again, as plaintiffs' motion concedes.  *Id.* at 5.  That is precisely what the Court had ordered AstraZeneca to do:  produce the call notes in "readily accessible electronic form."  8/3/07 Order, § III.

Plaintiffs now seek to fabricate a new issue out of AstraZeneca's supplementation of call notes by accusing AstraZeneca of "intentionally" leaving material out of its *initial* disclosures because it later supplied *additional* information.  Second Sanctions Motion at 5, 6.  Certain information – namely, the product and message columns – was missing in the first set of call notes produced because that was how AstraZeneca typically produced call notes for its own purposes.  AstraZeneca discovered the missing columns when preparing a sales representative for a deposition.  The new notes with the "product" and "message" fields were rerun and

supplemental disclosures served *before* any PSS depositions took place.   The first several sets of call notes produced with "product" columns had an additional consequence – the call notes were limited to notes that the PSS entered as "Seroquel related."  Occasionally, PSSs enter text concerning Seroquel, for example, along with information classified under a different product. Accordingly, AstraZeneca reran the call notes for all products, to assure that all references to Seroquel were produced, and supplemented as necessary – again, *before* any PSSs were deposed.

Plaintiffs' counsel's suggestion that AstraZeneca's supplemental disclosures are "evidence" of "intentional" misconduct is entirely unfounded.  Equally baseless is their complaint that AstraZeneca only produced call notes for the "'relevant' time frame."  In making this argument, plaintiffs ignore the portion of the 8/3/07 Order that sets "the time period that applies" to this discovery at "six months prior to the first prescription for the particular plaintiff until December 31, 2006."  *Compare* Second Sanctions Motion at 3-4; *with* 8/3/07 Order, § III. In fact, despite the language of the 8/3/07 Order, AstraZeneca has produced all call notes for all cases (early disclosures were supplemented) ***without any date limitation whatsoever***.   Plaintiffs nonetheless contend that AstraZeneca should be sanctioned for providing ***more*** information than CMO No. 4 requires.

### 3.    Payments to Physicians

Plaintiffs incorrectly suggest that AstraZeneca failed to produce accounts payable records, but instead produced only records identifying honoraria and speaker payments.  Second Sanctions Motion at 10.  In fact, shortly after plaintiffs' counsel notified AstraZeneca that it had identified a single missing payment related to *one* case, AstraZeneca's counsel revisited its entire approach to searching across its multiple accounts payable databases.  *See* Stewart Decl. at Exh.

7

C.  AstraZeneca's counsel then alerted plaintiffs' counsel that other cases had also been affected, and it was therefore going to run separate searches in multiple databases using the appropriate codes for each database.  *Id.*   As explained in counsel's letter:  "From the date of [plaintiffs' counsel's] letter forward, AstraZeneca has searched the accounts payable databases with the appropriate codes, and all payment information disclosed since that time has been based on those searches."  *Id.*  Thus, this issue is moot – resolved several weeks *before* the instant motion was filed.  Likewise, when the Bailey firm pointed out that a particular call note mentioned a payment for which no disclosure had been made, AstraZeneca's counsel promptly investigated and supplemented.  The PMO was properly apprised of both the problem and its solution.

### 4.  Timely Production of Physician Materials

Plaintiffs allege that AstraZeneca failed to "timely produce" new records because plaintiffs' counsel, in one instance, received additional documents 38 hours *before* the deposition of the physician to whom those records related.  *See* Motion at 1, 2, 6.  Aside from the fact that the deposing counsel had these records *before* the deposition in question and so cannot reasonably argue that counsel's ability to take that deposition was hindered as a result, the PMO has authority to order any deposition reopened if a party can demonstrate that it is necessary because of the other side's late production.  Therefore, this alleged grievance also lacks merit.

### 5.  MarketPro Data

As part of general discovery, AstraZeneca provided technical personnel to consult with plaintiffs' technical personnel about a database called "MarketPro."  As a result, plaintiffs learned more about how that database works and then demanded "immediate" production of new materials.  Plaintiffs' grievance seems to focus on AstraZeneca's *agreement* to respond to these

new requests as soon as the production was "query-ready."  Second Sanctions Motion at 8-9.

CMO No. 4 requires AstraZeneca to produce certain information on prescribing physicians, but

MarketPro is *not* designed to maintain pertinent information about prescribing physicians.  It is

primarily a tool that allows AstraZeneca sales representatives to order promotional pieces in

bulk, *i.e.*, not tied to specific prescribing physicians, for distribution.  MarketPro is, accordingly,

not a source for determining which healthcare providers actually receive promotional pieces

from anyone – as plaintiffs' motion even acknowledges.  *Id.* at 8.  Although AstraZeneca was

*never* required to produce the data retained in MarketPro as part of case-specific discovery,

following a meet-and-confer with plaintiffs' counsel, AstraZeneca *agreed* to produce this

information related to sales representatives who are to be deposed.   Having agreed to respond to

this additional demand, plaintiffs now suggest that AstraZeneca's agreement somehow amounts

to sanctionable conduct, which is difficult to grasp.

### 6.        Plaintiffs' Late Designation of the Sales Representatives

CMO No. 4 gives plaintiffs 2 business days after receiving AstraZeneca's disclosures to

designate the AstraZeneca sales representatives that plaintiffs wish to depose ("PSSs"); plaintiffs

initially waited about a month to make PSS designations in approximately 7 cases.  A dispute

arose over these late designations, which was taken to the PMO.  *See* Stewart Decl. at Exhs. D,

E, A.  Before the PMO had a chance to hear the issue, plaintiffs unilaterally began noticing up

PSS depositions.  *See* Stewart Decl. at Exh. D.  The PMO then heard the dispute, as per the

agenda, and issued a report and recommendation that allowed the PSS depositions to proceed.

*See* Stewart Decl. at Exhs. F & A at 5.  The PMO, however, made it clear that, in the future, late

PSS designations would not be permitted unless the PMO was promptly informed that a PSS

could not be determined from the relevant disclosures.  *Id.* at 6.  This particular issue is the *only* matter listed in plaintiffs' Second Sanctions Motion that was raised in any way with the PMO before the instant motion was filed.  But peculiarly, this issue was also *resolved* before the motion was filed.  The PMO has not suggested that any sanctions related to this issue are warranted, nor did it indicate that AstraZeneca engaged in any intentional misconduct.  *See id.* Indeed, AstraZeneca has been fully complying with the PMO's decision.  Therefore, this issue too is moot.

In sum, plaintiffs have misrepresented these six issues, presenting them to the Court as if they were somehow ripe for adjudication.  Collectively, they are phantom issues, which were not presented to the PMO or have already been resolved.  For this additional reason, plaintiffs' Second Sanctions Motion should be denied, and any future case-specific discovery issues should be taken to the PMO in accordance with this Court's previous directives.

**B.**     **Plaintiffs' Second Sanctions Motion Fails To Provide Any Reasoned Basis For Striking The Learned-Intermediary Defense**

Apart from the clear procedural and factual infirmities in their Second Sanctions Motion, plaintiffs have failed to demonstrate a sufficient nexus between the misconduct they ascribe to AstraZeneca and some particularized harm – as the law requires.  While plaintiffs identify no authority to support their request for sanctions, their motion apparently relies on Federal Rule of Civil Procedure 37.  When considering Rule 37 sanction requests, courts properly consider whether (1) an order compelling discovery had already been issued; (2) a willful violation of that order has been demonstrated; and (3) the record establishes clear prejudice to the other party stemming from the violation.  *See* FED. R. CIV. P. 37; *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1366 (11th Cir. 1997); *Baker v. General Motors Corp.*, 86 F.3d 811, 816 (8th Cir.

1996), *rev'd on other grounds*, 520 U.S. 1142 (1997), *remanded to* 138 F.3d 1225 (8th Cir. 1998); *R.W. Int'l Corp. v. Welch Foods, Inc.*, 937 F.2d 11 (1st Cir. 1991).  Hoping to bypass these inquiries, plaintiffs' Second Sanctions Motion focuses on the issue of prejudice – but they merely assert in conclusory fashion that they have experienced "substantial prejudice" that has prevented them "from effectively examining" physician witnesses.  Second Sanctions Motion at 1, 3.  This bare assertion does not satisfy their obligation to prove how such an onerous sanction is needed to remedy actual prejudice clearly established in the record.

The Second Sanctions Motion provides only two concrete examples that are seemingly meant to show prejudice, each of which actually illuminate the illusory nature of plaintiffs' professed prejudice.

First, plaintiffs complain that, about 38 hours *before* the deposition of one witness (Farris T. Johnson, Jr., M.D.), AstraZeneca supplemented its disclosures regarding payments and provided an Excel version of previously produced call notes.  Second Sanctions Motion at 2, 11 (plaintiffs describe this example twice).  Plaintiffs do not, however, show how receiving supplemental disclosures *before* a deposition caused any genuine prejudice.  Receiving information regarding communications between some prescriber and AstraZeneca more than one day before a deposition should not prevent a deposing attorney from using the allotted two hours to ask meaningful questions.  That is, any imagined deficiency or tardiness in AstraZeneca's physician-specific disclosures certainly would not have prevented plaintiffs from asking, for instance, the following:

- *Did you ever receive payments or gifts of any kind from AstraZeneca?*

- *If so, please identify each, the value you attributed to it, and what it was for?*

- *Did these payments influence your decision to prescribe Seroquel to any of your patients?*

- *Did any action by any AstraZeneca employee ever influence you to prescribe Seroquel to "x" individual when your medical judgment counseled you to do otherwise?*

At best, the physician-related disclosures that plaintiffs claim they received late would *only* be material as *possible* impeachment evidence *if* plaintiffs somehow first succeeded in establishing that the learned-intermediary defense does *not* apply as a matter of law.  Whatever might be preventing plaintiffs' counsel from effectively deposing the healthcare professionals who have prescribed Seroquel to plaintiffs is unrelated to anything that AstraZeneca has done in the course of discovery.

Second, plaintiffs contend that delays in scheduling some sales representative depositions, *occasioned by plaintiffs' late designations*, has created sufficient "prejudice" that supports their extreme sanction request of striking AstraZeneca's learned-intermediary defense.  *Id.* at 15.  Putting aside the fact that plaintiffs' own tardiness precipitated the problem, plaintiffs do not explain how delays in scheduling PSS depositions could possibly justify the striking of that defense – nor how such delays establish harm related to the viability of the learned-intermediary doctrine.

The law is clear that no sanction may be imposed in the absence of a clear and concrete record that establishes a legally sufficient nexus between the particular sanction at issue, the precise discovery misconduct, and the actual prejudice caused by that misconduct.  *See*, *e.g.*, *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinée*, 456 U.S. 694, 707 (1982); *Serra Chevrolet, Inc. v. General Motors Corp.*, 446 F.3d 1137, 1151-52 (11th Cir. 2006).  Plaintiffs have failed to make any such showings.  Indeed, they do no more than offer bald *declarations*

that, because AstraZeneca wanted case-specific discovery to amass evidence related to its

learned-intermediary defense, striking that defense is "the sanction most directly related" to any

delays in case-specific discovery and would be "appropriate" to "level[] the playing field." *See*

Second Sanctions Motion at 3, 16, 15. Plaintiffs' unsubstantiated effort must be denied.

### C.     Striking The Learned Intermediary Defense Would Clearly Constitute A Disproportionate And Unjust Sanction Here

Federal Rule of Civil Procedure 37 authorizes courts to impose *only* those sanctions that

"are just" under the particular circumstances. FED. R. CIV. P. 37(b)(2); *see also Serra Chevrolet,*

*Inc.*, 446 F.3d at 1140, 1147, 1150-52; *Chudasama*, 123 F.3d at 1365. Sanctions are only just if

*proportionate* to the offense. *Id.*; *see also Anderson v. Beatrice Foods Co.*, 900 F.2d 388, 395

(1st Cir. 1990) (noting that, in exercising its discretion to sanction, "the judge should take pains

neither to use an elephant gun to slay a mouse nor to wield a cardboard sword if a dragon

looms"). Plaintiffs' Second Sanctions Motion seeks the imposition of unjust and vastly

disproportionate sanctions based on feigned allegations of discovery misconduct. Such an

extreme sanction such as striking the learned-intermediary defense is only appropriate "in

egregious circumstances and only after consideration of" an array of factors. MANUAL FOR

COMPLEX LITIGATION § 10.153 (4th ed. 2007); *see also id.* § 10.154 (ranking striking a defense

among the "more serious sanctions, reserved for egregious circumstances"). The Manual

identifies the following as factors that should be assessed before even considering such an

extreme sanction:

- the policy of favoring trial on the merits;

- whether the sanction will further the just, speedy, and inexpensive determination of the action;

- the degree to which the sanctioned party acted deliberately and knew or should have known of the possible consequences;

- the degree of responsibility of the affected client;

- the merits and importance of the claim(s) affected;

- the impact on other parties or the public interest; and

- the availability of less severe sanctions.

*Id.; see also Malot v. Dorado Beach Cottagers Assocs.*, 478 F.3d 40, 44, 45 (1st Cir. 2007)

(listing non-exclusive factors to consider when reviewing sanction orders and holding that the

prejudice of delay "was not proportionate to the sanction imposed"); *Harris v. City of*

*Philadelphia*, 47 F.3d 1311, 1330 n.18, 1331 (3d Cir. 1995) (identifying similar factors and

holding that sanction of dismissing a Motion to Modify was unjust because of "the absence of a

more decided nexus between [defendant's] delay in submission of the documents and the

Motion").[1]

    Plaintiffs have failed to discuss, let alone establish, how *any* relevant factors might

support imposing the extreme discovery sanction they request here.  Indisputably, striking the

---

[1] Another factor weighing against plaintiffs' meritless sanctions request is their own behavior in discovery, a factor that courts routinely consider in the context of discovery-related sanctions requests.  5A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 1336.1 (2007) (explaining that the movant's discovery conduct is a factor, identified by the Advisory Committee, "analogous to the ancient equity principle of unclean hands"); *see also, e.g., Anderson*, 900 F.2d at 393; *Conseil Alain Aboudaram, S.A. v. De Groote*, 460 F.3d 46, 53 (D.C. Cir. 2006).  As was the subject of a prior defense motion, at least some plaintiffs have relevant materials in their possession, custody, or control, although plaintiffs' verified fact sheets, which all appear to have been typed up by their attorneys, attest that *none* exist.  Even the most liberal reading of an attorney's Rule 11 obligations *should have* convinced plaintiffs' counsel to gather the fundamental facts and documents related to their clients' Seroquel use and medical history *before* filing suit.  *See, e.g., Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252 (11th Cir. 1996) (upholding district court's decision to impose Rule 11 sanctions on counsel and plaintiff for failing to conduct a reasonable investigation before filing suit).

learned-intermediary defense would constitute an extreme sanction – given that the doctrine defines the legal duty of a pharmaceutical company in litigation of this kind.  *In re Norplant Contraceptive Prods. Liab, Litig.*, 215 F. Supp. 2d at 805.  Thus, plaintiffs' request effectively asks the Court to modify the defendants' *substantive legal duties under state law* as a sanction. Moreover, they contend that this sanction is appropriate for reputed discovery issues that they never bothered to take up with either AstraZeneca or the PMO.

Case-specific discovery thus far confirms that AstraZeneca has dispositive arguments under the learned-intermediary doctrine because the evidence demonstrates that (i) the warnings provided to the plaintiff's prescribing physician were adequate at the time they were given; *and* (ii) plaintiff cannot in any event satisfy the governing "proximate causation" requirement, because the prescriber's testimony reveals that he or she *still would have* prescribed Seroquel to plaintiff even if AstraZeneca had provided starker warnings about the risks of the injury about which plaintiff now complains.  Unless plaintiffs can establish *both* of these material facts, their failure-to-warn claims will be barred as a matter of law.  *See, e.g., Madsen v. American Home Products Corp.*, 477 F. Supp. 2d 1025, 1035-37 (E.D. Mo. 2007); *accord Stafford v. Wyeth*, 411 F. Supp. 2d 1318, 1320-21 (W.D. Okla. 2006).

Many prescribers have testified that they *continue* to prescribe Seroquel to patients *to this day* – often even to these plaintiffs – because these doctors and other medical professionals continue to believe that the benefits of Seroquel in treating serious mental illnesses outweigh the risks of diabetes-related injuries.  It is no wonder, then, that plaintiffs are going to such lengths to urge this Court to strike this dispositive defense.  But imposing such a sanction on this record would be both disproportionate and illegitimate.  *See Serra Chevrolet*, 446 F.3d at 1151; *Masters*

*v. Wilhelmina Model Agency, Inc.*, 2003 WL 21089073, *2 (S.D.N.Y. May 13, 2003) (finding proposed sanction of striking opposition to class certification motion went "far beyond the violation alleged" and noting that sanctions "should be proportional to the violation"). Accordingly, justice would require that plaintiffs' motion be denied even if *any* of plaintiffs' grievances regarding case-specific discovery were legitimate.   *See, e.g., Equal Employment Opportunity Commission v. Carter Carburetor, Division of ACF Indus., Inc.*, 577 F.2d 43, 49 (1st Cir. 1978) (issuing a mandamus order that district court withdraw its sanctions order where party had precipitously filed the motion and was itself guilty of dilatory discovery).

## IV.    CONCLUSION

Viewed in the totality, plaintiffs' overhasty recourse to a sanctions motion before honoring their meet-and-confer obligations and the protocol established by the Court and its duly designated PMO should not be condoned.  Therefore, AstraZeneca respectfully asks that this Second Sanctions Motion be denied, and that AstraZeneca be awarded all costs associated with this motion.

DATED:  November 5, 2007

Respectfully submitted,

*/s/ Fred T. Magaziner*
 Fred T. Magaziner
 DECHERT LLP
 2929 Arch Street
 Philadelphia, PA  19103
 Telephone: (215) 994-4000
 Facsimile: (215) 994-2222
 fred.magaziner@dechert.com

 Steven B. Weisburd
 Gretchen S. Sween
 Eliot Walker

16

DECHERT LLP
300 West 6th Street, Suite 1850
Austin, TX  78701
Telephone: (512) 394-3000
Facsimile: (512) 394-3001

*Counsel for AstraZeneca Pharmaceuticals LP
and AstraZeneca LP*

## CERTIFICATE OF SERVICE

I hereby certify that, on November 5, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system through which all participating parties are deemed served.  I further certify that, by using the CM/ECF, the foregoing has been served on plaintiffs' liaison counsel, who is charged with serving any non-CM/ECF participants on the attached Service List.

*/s/ Gretchen S. Sween*

SERVICE LIST

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No. 1769**

| | |
|---|---|
| Scott Allen<br>Cruse, Scott, Henderson & Allen, L.L.P.<br>2777 Allen Parkway, 7th Floor<br>Houston, TX 77019<br>Tel: (713) 650-6600<br>sallen@crusescott.com | Robert L. Ciotti<br>Carlton Fields, P.A.<br>42212 W. Boy Scout Blvd., Suite 1000<br>Tampa, FL 33607-5736<br>Tel: (813) 223-7000<br>rciotti@carltonfields.com<br>tpaecf@cfdom.net<br>atravis@carltonfields.com<br>*Counsel for Defendants AstraZeneca*<br>*Pharmaceuticals, L.P, and AstraZeneca LP* |
| Mary B. Cotton<br>John D. Giddens, P.A.<br>P.O. Box 22546<br>Jackson, MS 39225-2546<br>Tel: (601) 355-2022<br>betsy@law-inc.com | Michael Davis<br>James Mizgala<br>Sidley Austin LLP<br>Bank One Plaza<br>One South Dearborn St.<br>Chicago, IL 60603<br>Tel: (312) 853-7731<br>mdavis@sidley.com<br>jmizgala@sidley.com |
| Aaron K. Dickey<br>Goldenberg and Heller, PC<br>P.O. Box 959<br>2227 S. State Route 157<br>Edwardsville, IL 62025<br>Tel: (618) 650-7107<br>aaron@ghalaw.com | Heidi Elizabeth Hilgendorff<br>Thomas Campion<br>Drinker Biddle & Reath, LLP<br>500 Campus Dr.<br>Florham Park, NJ 07932-1047<br>Tel: (973) 360-1100<br>thomas.campion@dbr.com<br>heidi.hilgendorff@dbr.com<br>jeffrey.peck@dbr.com<br>*Counsel for Defendants Janssen*<br>*Pharmaceutical Products and Johnson &*<br>*Johnson Co.* |

| John J. Driscoll | Kenneth T. Fibich |
|---|---|
| Brown & Crouppen, PC<br>720 Olive St., Suite 1800<br>St. Louis, MO 63101<br>Tel: (314) 421-0216<br>jdriscoll@brownandcrouppen.com<br>bsmith@brownandcrouppen.com<br>rbrooks@brownandcrouppen.com<br>blape@brownandcrouppen. com | Fibich, Hampton & Leebron, LLP<br>1401 McKinney St., Suite 1800<br>Five Houston Center Houston, TX 77010<br>Tel: (713) 751-0025<br>tfibich@fhl-law.com |
| Gregory P. Forney<br>Shaffer, Lombardo & Shurin<br>911 Main St., Suite 2000<br>Kansas City, MO 64105<br>Tel: (816) 931-0500<br>gforney@sls-law.com<br>rbish@sls-law.com<br>*Counsel for Defendant, Marguerite Devon French* | Todd S. Hageman<br>Simon and Passanante, PC<br>701 Market St., Suite 1450<br>St. Louis, MO 63101<br>Tel: (314) 241-2929<br>thageman@spstl-law.com |
| W. Todd Harvey<br>Joe R. Whatley, Jr.<br>2323 2nd Ave. N<br>Birmingham, AL 35203-0647<br>Tel: (205) 328-9576<br>tharvey@whatleydrake.com<br>j whatley@whatleydrake. com<br>ecf@whatleydrake.com | Jona R. Hefner<br>3441 W. Memorial, Suite 4<br>Oklahoma, OK 73134-7000<br>Tel: (405) 286-3000<br>attorneyokc@hotmail.com<br>attorneyokc@gmail.com |

| | |
|---|---|
| Lawrence J. Gornick<br>William A. Levin<br>Dennis J. Canty<br>Levin Simses Kaiser & Gornick, LLP<br>44 Montgomery St., 36th Floor<br>San Francisco, CA 94104<br>Tel: (415) 646-7160<br>lgornick@lskg-law.com<br>dcanty@lskg-law.com<br>llsimes@levins-law.com<br>jkaiser@lskg-law.com<br>echarley@lskg-law. com<br>ddecarli@lskg-law.com<br>bsund@lskg-law.com<br>astavrakaras@lskg-law.com | Scott Burdine<br>Hagans Burdine Montgomery<br>Rustay & Winchester, P.C.<br>3200 Travis, 4th Floor<br>Houston, TX 77006<br>Tel: (713) 222-2700<br>sburdine@hagans-law.com |
| Thomas Campion<br>Heidi E. Hilgendorff<br>Drinker Biddle & Reath, LLP<br>500 Campus Dr.<br>Florham Park, NJ 07932-1047<br>Tel: (973) 360-1100<br>thomas.campion@dbr.com<br>heidi.hilgendorff@dbr.com<br>jeffrey.peck@dbr.com<br>*Counsel for Defendants Janssen*<br>*Pharmaceutical Products and Johnson &*<br>*Johnson Co.* | Jona R. Hefner<br>3441 W. Memorial, Suite 4<br>Oklahoma, OK 73134-7000<br>Tel: (405) 286-3000<br>attorneyokc@hotmail.com<br>attorneyokc@gmail.com |
| Keith M. Jensen<br>Jensen, Belew & Gonzalez, PLLC<br>1024 North Main<br>Fort Worth, TX 76106<br>Tel: (817) 334-0762<br>kj@kjensenlaw.com<br>kjensenlaw@gmail.com | Aaron C. Johnson<br>Summers & Johnson<br>717 Thomas<br>Weston, MO 64098<br>Tel: (816) 640-9940<br>aaron@summersandjohnson.com<br>firm@summersandjohnson.com |
| Jamie R. Kendall<br>301 Massachusetts Ave.<br>Indianapolis, IN 46204<br>Tel: 317-633-8787<br>jkendall@price-law.com<br>eamos@price-law.com | Mark A. Koehn<br>whrfrat42@yahoo.com |

| | |
|---|---|
| Benjamin A. Krass<br>Law Offices of Matthew F. Pawa, P.C.<br>1280 Centre St., Suite 230<br>Newton Centre, MA 02459<br>Tel: (617) 641-9550<br>bkrass@pawalaw.com | D. Andrew List<br>Clark Perdue Arnold & Scott<br>471 East Broad St., Suite 1400<br>Columbus, OH 43215<br>Tel: 877-220-2203<br>alist@cpaslaw.com |
| Matthew E. Lundy<br>Lundy & Davis<br>333 N. Sam Houston Pkwy., E<br>Suite 375<br>Houston, TX 77060<br>Tel: (281) 272-0797<br>mlundy@lundydavis.com<br>jdibbley@lundydavis.com | David P. Matthews<br>Abraham, Watkins, Nichols, Sorrels,<br>Matthews & Friend<br>800 Commerce St.<br>Houston, TX 77002-1776<br>Tel: (713) 222-7211<br>dmatthews@abrahamwatkins.com<br>agoff@abrahamwatkins.com<br>jrhoades@abrahamwatkins. com<br>j webster@abrahamwatkins. com |
| James Mizgala<br>Sidley Austin LLP<br>Bank One Plaza<br>One South Dearborn St.<br>Chicago, IL 60603<br>Tel: (312) 853-7731<br>mdavis@sidley.com<br>jmizgala@sidley.com<br>lmodaff@sidley.com<br>efilingnotice@sidley.com<br>*Counsel for Defendants AstraZeneca LP*<br>*and AstraZeneca Pharmaceuticals LP* | Howard Nations<br>Howard L. Nations Attorney At Law<br>4515 Yoakum Blvd.<br>Houston, TX 77006-5895<br>Tel: (713) 807-8400<br>nations@howardnations.com<br>lori@howardnations.com<br>kim@howardnations.com<br>andrea@howardnations.com<br>charles@howardnations.com<br>lezzlie@howardnations.com |
| Matthew F. Pawa<br>Law Offices of Matthew F. Pawa, P.C.<br>1280 Centre St., Suite 230<br>Newton Centre, MA 02459<br>Tel: (617) 641-9550<br>mp@pawalaw.com | Paul J. Pennock<br>Michael E. Pederson<br>Weitz & Luxenburg, P.C.<br>180 Maiden Lane – 17th Floor<br>New York, NY 10038<br>Tel: (212) 558-5500<br>Ppennock@weitzlux.com<br>Lschutlz@weitzlux.com<br>MPederson@weitzlux.com<br>JOrelli@weitzlux.com<br>*Plaintiff's Lead Counsel* |

| | |
|---|---|
| Carlos A. Prietto, III<br>Robinson Calcagnie & Robinson<br>620 Newport Center-Drive<br>7th Floor<br>Newport Beach, CA 92660<br>Tel: 940-720-1288<br>cbregman@rcrlaw.net<br>cprietto@rcrlaw.net<br>ctakanabe@rcrlaw.net<br>kschaeffer@rcelaw.net | Fred T. Magaziner<br>Marjorie Shickman<br>A. Elizabeth Balakhani<br>Shane T. Prince<br>Eben S. Flaster<br>Stephen J. McConnell<br>Brennen Joseph Torregrossa<br>Dechert, LLP<br>2929 Arch St., Cira Center<br>Philadelphia, PA 19104-2808<br>Tel: (215) 994-4000<br>Fred.magaziner@dechert.com<br>Marjorie.shiekman@dechert.com<br>shane.prince@dechert.com<br>cheryl.inwek@dechert.com<br>Eben.flster@dechert.com<br>elizabeth.balakhani@dechert.com<br>michelle.kirscEh@dechert.com<br>*Counsel for Defendant Astrazeneca*<br>*Pharmaceuticals, LP* |
| William N. Riley<br>Jamie R. Kendall<br>301 Massachusetts Ave.<br>Indianapolis, IN 46204<br>Tel: 317-633-8787<br>wriley@price-law.com<br>eamos@price-law.com | Mark P. Robinson, Jr.<br>Robinson Calcagnie & Robinson<br>620 Newport Center Dr., 7th Floor<br>Newport Beach, CA 92660<br>Tel: (949) 720-1288<br>mrobinson@robinson-pilaw.com<br>mrobinson@rcrlaw.net |
| Larry Roth<br>Law Offices of Larry M. Roth, P.A.<br>P.O. Box 547637<br>Orlando, FL 32854-7637<br>Tel: (407) 872-2239<br>lroth@roth-law.com<br>lcarrington@roth-law.com<br>epoit@roth-law.com<br>*Plaintiffs' Liaison Counsel* | Lizy Santiago<br>Abraham, Watkins, Nichols, Sorrels,<br>Matthews & Friend<br>800 Commerce St.<br>Houston, TX 77002-1776<br>Tel: (713) 222-7211<br>lsantiago@thematthewslawfirm.com<br>msalazar@thematthewslawfirm.com<br>lsantiago@abrahamwatkins.com |

| | |
|---|---|
| Robert A. Schwartz<br>Bailey & Galyen<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Tel: (281) 335-7744<br>bschwartz@galyen.com<br>anixon@galyen.com | Kenneth W. Smith<br>Aylstock Witkin Kreis & Overholtz<br>803 North Palafox St.<br>Pennsacola, FL 32501<br>Tel: (850) 916-7450<br>ksmith@awkolaw.com<br>kws6619@msn.com<br>rvasquez@awkolaw. com |
| Brennen Joseph Torregrossa<br>Dechert, LLP<br>2929 Arch St., Cira Center<br>Philadelphia, PA 19104-2808<br>Tel: (215) 994-4000<br>brennen.torregrosssa@dechert.com<br>*Counsel for Defendant Astrazeneca<br>Pharmaceuticals, LP* | Ted C. Wacker<br>Robinson Calcagnie & Robinson<br>620 Newport Center Dr., 7th Floor<br>Newport Beach, CA 92660<br>Tel: (949) 720-1288<br>twacker@rcrlaw.net |
| W. Todd Harvey<br>Joe R. Whatley, Jr.<br>2323 2nd Ave. N<br>Birmingham, AL 35203-0647<br>Tel: (205) 328-9576<br>tharvey@whatleydrake.com<br>jwhatley@whatleydrake.com<br>ecf@whatleydrake.com | Justin Witkin<br>Ken Smith<br>Aylstock, Witkin & Sasser, PLC<br>4400 Bayou Blvd., Suite 58<br>Pensacola, FL 32503<br>Tel: (850) 916-7450<br>Jwitkins@AWS-LAW.COM<br>ablankenship@aws-law.com<br>aburrus@aws-law.com<br>asmith@aws-law.com<br>ksmith@aws-law.com<br>noverholtz@aws-law.com<br>jsafe@aws-law.com |

NON-ECF SERVICE LIST

| | |
|---|---|
| Bridget Ahmann<br>Faegre & Benson, LLP<br>90 S. 7th St., Ste 2200<br>Minneapolis, MN 55402-3901 | Timothy Reese Balducci<br>The Langston Law Firm, P.A.<br>P.O. Box 787<br>100 South Main St.<br>Booneville, MS 38829<br>Tel: (662) 728-3138<br>tbalducci@langstonlaw.com |

| | |
|---|---|
| Kenneth W. Bean<br>Sandberg, Phoenix & von Gontard<br>One City Centre<br>15th Floor<br>St. Louis, MO 63101-1880<br>Tel: (314) 231-3332<br>kbean@spvg.com | Earl Francis Carriveau<br>1012 6th Ave.<br>Lake Charles, LA 70601-4706 |
| Robert F. Clarke<br>Phillips & Associates<br>3030 North Third St., Ste 1100<br>Phoenix, AZ 85012 | Patricia Cook |
| Cannon Curlee | Mark W. Davis<br>Davis & Feder, P.A.<br>P.O. Drawer 6829<br>Gulfport, MS 39506-7018 |
| Warren Frazier | James J. Freebery<br>McCarter & English, LLP<br>18th Floor<br>919 N. Market St.<br>Wilmington, DE 19801 |
| Michael T. Gallagher<br>The Gallagher Law Firm<br>2905 Sackett St.<br>Houston, TX 77098 | Gary Reed Gober<br>200 Fourth Ave. North<br>Suite 700<br>Nashville, TN 37219 |
| Richard D. Hailey<br>Ramey & Hailey<br>3891 Eagle Creek Pkwy.<br>Suite C<br>Indianapolis, IN 46254-2600 | Jason Matthew Hatfield<br>Lundy & Davis, LLP<br>300 North College Ave.<br>Suite 309<br>Fayetteville, AR 72701 |
| John Hawkins<br>Janssen, L.P.<br>Drinker Biddle & Reath LLP<br>500 Campus Drive<br>Florham Park, NJ 07932-1047 | Donna Higdon<br>Johnson & Johnson<br>Drinker Biddle & Reath LLP<br>500 Campus Drive<br>Florham Park, NJ 07932-1047 |

| | |
|---|---|
| Krisann C. Kleibacker Lee<br>Faegre & Benson LLP<br>90 S 7th St. Ste. 2200<br>Minneapolis, MN 55402-3901 | Louisiana Wholesale Drug Co. Inc.<br>c/o Gayle R. White<br>Registered Agent<br>Highway 167N<br>Sunset, LA 70584 |
| Salvatore M. Machi<br>Ted Machi & Associates PC<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Tel: (281) 335-7744 | Stephen J. McConnell<br>Dechert, LLP<br>2929 Arch St., Cira Center<br>Philadelphia, PA 19104-2808 |
| Eric B. Milliken<br>3 Sir Barton Ct.<br>Newark, DE 19702-2033 | Randy Niemeyer<br>15863 Pike 43<br>Bowling Green, MO 63334-2620 |
| Gale D. Pearson<br>Pearson, Randall & Schumacher, PA<br>Fifth Street Towers, Suite 1025<br>100 South 5th Street<br>Minneapolis, MN 55402 | Dale Kent Perdue<br>Clark Perdue Arnold & Scott<br>471 East Broad St., Suite 1400<br>Columbus, OH 43215 |
| Stephen J. Randall<br>Pearson, Randall & Schumacher, PA<br>First Street Towers, Suite 1025<br>100 South 5th Street<br>Minneapolis, MN 55402 | Brenda Rice |
| Evelyn Rodriguez | Robert L. Salim<br>Attorney At Law<br>P.O. Box 2069<br>Natchitoches, LA 71457-2069<br>Tel: (318) 352-5999<br>robertsalim@cp-tel.net |
| Ellen R. Serbin<br>Perona Langer Beck Lallande & Serbin<br>300 San Antonio Dr.<br>Long Beach, CA 90807-0948 | Marjorie Shickman<br>Dechert, LLP<br>2929 Arch St., Cira Center<br>Philadelphia, PA 19104-2808 |

| | |
|---|---|
| Robert H. Shultz<br>Heyl, Royster<br>103 W. Vandalia St.<br>P.O. Box 467<br>Edwardsville, IL 62025 | Robert G. Smith<br>Lorance & Thompson, PC<br>Suite 500<br>2900 N Loop W<br>Houston, TX 77092 |
| Catherine Solomon<br>3100 N.E. 83<br>Gladstone, MO 64119 | Linda S. Svitak<br>Faegre & Benson LLP<br>2200 Wells Fargo Center<br>90 South Seventh St.<br>Minneapolis, MN 55402-3901 |
| Seth S. Webb<br>Brown & Crouppen, P.C.<br>720 Olive St., Suite 1800<br>St. Louis, MO 63101-2302 | Mary J. Wrightinton |