# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**IN RE: Seroquel Products Liability Litigation**
**MDL DOCKET NO. 1769**

**This Document Relates to ALL CASES**

### DECLARATION OF RUSSELL STEWART

My name is Russell Stewart, and I declare:

1.      I am over the age of eighteen, and I am competent to make this declaration.  I provide this declaration based upon my personal knowledge.  I would testify as to the facts in this declaration under oath if called upon to do so.

2.      I am an attorney with the law firm Faegre & Benson LLP, attorneys of record for AstraZeneca LP and AstraZeneca Pharmaceuticals LP ("AstraZeneca").  I submit this declaration in conjunction with the litigation captioned above.

3.      Attached hereto as Exhibit A is a true and correct copy of the Report and Recommendation No. 2 By Case-Specific Discovery Special Master.

4.      Attached hereto as Exhibit B is a true and correct copy a letter from AstraZeneca's counsel, Russell Stewart, to plaintiffs' counsel, Dennis Canty, dated August 8, 2007.

5.      Attached hereto as Exhibit C is a true and correct copy of from AstraZeneca's counsel, Russell Stewart, to plaintiffs' counsel, Buffy Martinez, dated October 12, 2007.

6.      Attached hereto as Exhibit D is a true and correct copy of a letter from AstraZeneca's counsel, Russell Stewart, to plaintiffs' counsel, Dennis Canty and Laura Brandenberg, dated October 10, 2007.

7.      Attached hereto as Exhibit E is a true and correct copy of memorandum from plaintiffs' counsel, Dennis Canty, to PMO Orran Brown, dated October 11, 2007.

8.      Attached hereto as Exhibit F is a true and correct copy of the agenda for a PMO Seroquel Status Call on October 12, 2007.


I declare under penalty of perjury under the laws of the United States of America and the laws of the state of Florida that the foregoing is true and correct to the best of my knowledge.

Signed this _____ day of November, 2007, in Denver, Colorado.

Russell Stewart

# EXHIBIT A

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE:  Seroquel Products Liability
Litigation

Case No. 6:06-md-1769-Orl-22DAB

This Document Relates to ALL CASES

REPORT AND RECOMMENDATION NO. 2 BY
CASE-SPECIFIC DISCOVERY SPECIAL MASTER

The Parties raised with the Special Master an issue pertaining to case-specific

discovery in this multidistrict litigation.  The Special Master has reviewed the written and

oral presentations of the Plaintiffs and the Defendants.  In a call on October 15, 2007, the

Special Master informed the Parties of the decision contained in this Report and

Recommendation.

I. FACTUAL BACKGROUND

This Report and Recommendation addresses these issues:

(1)   **Timeliness of Designations of Sales Representatives for Deposition:**
Whether the Plaintiffs' designation of sales representatives ("PSS") for
deposition in seven cases were timely under Paragraph II.B of Case
Management Order No. 4;

(2)   **Future Procedure for Addressing Issues of the Completeness of
Defendants Disclosures of Contact Documents:**  How to avoid delay in
Plaintiffs' designations of PSS deponents when Plaintiffs feel that
Defendants' disclosures of documents regarding contact with a prescribing
Physician under Paragraph II.A of CMO 4 are inadequate; and

(3)   **General Rule on the Sequencing of Depositions:**  Whether to adhere to the
general goal of scheduling Plaintiff depositions in the early part of the
month, with Physician and PSS depositions to follow.

These issues arose regarding Plaintiffs' designations of PSS witnesses in these seven cases:

| | Plaintiff | Two Business Days After First Disclosure | Date PSS Designated | Name of PSS |
|---|---|---|---|---|
| 1. | Haas | 8/8/07 | 9/6/07 | Wetta |
| 2. | Sonnier | 8/8/07 | 8/20/07 | Wadlington |
| 3. | Coppola | 8/7/07 | 9/6/07 | Caldes |
| 4. | Thomas | 8/7/07 | 9/6/07 | O'Rear |
| 5. | Frederick | 8/7/07 | 9/6/07 | Daly |
| 6. | Glover | 8/7/07 | 9/6/07 | Gentile |
| 7. | Olive | 7/26/07 | 8/23/07 | Whidden |

Paragraph II.A of CMO 4 requires Defendants, within five business days after the designation of a Plaintiff for case-specific discovery, "to provide all available documentation regarding contact with the prescribing physician associated with that Plaintiff." In footnote 1 to CMO 4, the Court specified that "this disclosure requirement includes, at a minimum, calls notes, the accounts payable records, the IMS information on prescribing habits, and the PIR or professional information request and any non privileged documents relied on or available to defense counsel in preparation for the depositions." In Paragraph III of the Court's Order of August 3, 2007 (Document 348), the Court directed Defendants to provide the call notes for a prescribing physician "in readily accessible **electronic form**." (emphasis original.) The Court also ordered that "[t]o the extent the accounts payable records, the IMS (or other prescription tracking database) on prescribing habits, and the PIR or professional information for the

prescribing physician associated with that Plaintiff are available in electronic form, Defendant shall provide those in readily accessible electronic form."

Paragraph II.B of CMO 4 gives Plaintiffs the option, within two business days after Defendants have provided this contact documentation, to designate for deposition one PSS associated with each prescribing Physician to be deposed.  In the seven cases listed above, Plaintiffs' designations of a PSS witness to be deposed in the case were not made within two business days after Defendants had provided their initial disclosures of call notes or other contact information.  In all seven cases, Defendants made supplemental disclosures of contact information after their initial disclosures.  For example, in the *Haas* case, Defendants served initial contact disclosures on August 6, 2007, but Plaintiffs did not designate the name of a PSS witness for deposition until September 6, 2007.  In the interim, the Parties had exchanged considerable communication regarding whether Defendants' contact disclosures were adequate or complete or legible in all respects, whether the PMO had assumed responsibility for scheduling PSS depositions, and whether that affected to whom the designation should be made.  In the *Coppola*, *Thomas*, *Frederick*, and *Glover* cases, Defendants served certain contact disclosures on Plaintiffs on August 3, 2007, and Plaintiffs did not designate PSS witnesses for deposition until September 6, 2007.  Again, in the interim, the Parties had considerable communications regarding whether Defendants' disclosures were complete and whether they were produced in the electronic form required by the Court.

Plaintiffs point to Defendants' supplemental disclosures as causing some uncertainty as to when the two business days for PSS designations under CMO 4 began to run.  Defendants contend that they have expended considerable effort to ensure that

3

their disclosures of contact information were adequate and, if not complete, were

supplemented as soon as practicable.  Defendants have also argued that the information

provided in the supplemental designations was not material to Plaintiffs' ability to select

one PSS among the often several candidates for deposition for each particular case.

Plaintiffs respond with equal vigor that the lack of the information in searchable

electronic form and the absence of information beyond call notes interfered with their

ability to make accurate and timely selections of the one PSS to be deposed in each case.

Resolving this dispute has necessitated a discussion of the adequacy and

timeliness of Defendants' disclosure of contact information under CMO 4, the process to

be followed by the Parties when Plaintiffs feel that such disclosures are not adequate, and

whether these PSS depositions can or should be scheduled, for the most part, after the

dates of the Plaintiffs' depositions.  The last issue surfaced during the debate over when

to set the PSS depositions in these seven cases.  In the telephone conference status call

with the Parties on October 15, 2007, the Special Master attempted to resolve all three of

these matters.  This Report and Recommendation addresses all these, in an effort to solve

the present problems and to prevent similar difficulties from arising in the future.

## II. ANALYSIS AND RECOMMENDATION

### A.    Timeliness of PSS Designations.

Without doubt, Plaintiffs' designations of PSS witnesses in these seven cases did

not occur within two business days after Defendants' initial disclosures of contact

information with the prescribing physician designated for deposition in each of the cases.

As a result, Defendants have objected to the taking of any PSS deposition in these seven

cases.  The Special Master concludes that the PSS depositions for the seven cases should

be allowed to proceed.  The failure to have these designations made at an earlier time resulted from some uncertainty among the Parties on the application of CMO 4; the time needed for counsel to create and implement adequate procedures to ensure timely compliance with CMO 4; and when the deadline began to run in the face of disputes over issues upon which reasonable minds could differ regarding the completeness and form of Defendants' disclosure of contact information and after supplemental contact disclosures. Further, the prejudice to the Plaintiffs of disallowing these depositions would outweigh the prejudice to Defendants of permitting them to go forward.

Accordingly, the PSS depositions shall proceed in these seven cases, unless in any instance Plaintiffs decide they do not wish to depose a PSS.  Defendants shall contact the PSS witnesses and use their best efforts to schedule such depositions as soon as reasonably practicable, and no later than 60 days from October 15, 2007.

**B.**     **Future Procedures for PSS Designations.**

The decision to permit the PSS depositions in these seven cases rests in large part upon the conclusion that the timing of the PSS designations in those cases was a function of circumstances that should not and need not reoccur and the earnest hope that we will not see this issue arise again.  Accordingly, the Special Master has directed the Parties as follows:

(1)     Defendants shall make their contact disclosures under Paragraph II.A of CMO 4 on one occasion, with the disclosures complete and in electronic form as required by the Court in its August 3, 2007 Order.

(2)     If on any occasion Defendants determine that their initial disclosures of contact information were incomplete, Defendants promptly shall make such supplemental disclosures as are necessary.

5

(3)    Plaintiffs shall designate, at their option, one PSS deponent per plaintiff within two business days after Defendants' initial disclosure of contact information.

(4)    If in any case Plaintiffs feel that Defendants' initial contact disclosures are inadequate, Plaintiffs shall notify the Defendants and the Special Master of the issue, within two business days after the initial disclosures. The Parties shall meet and confer to attempt to reach agreement on the issue. If no agreement is reached within two business days after the initial disclosures, the Parties and the Special Master immediately shall convene by telephone conference to resolve the matter before additional time elapses that delays designation of PSS deponents.

**C.    <u>Deposition Scheduling</u>.**

When the PMO first assumed duties of scheduling physician depositions and maintaining a Master Calendar in late August, 2007, the PMO and the Special Master, with the Parties' consent, adopted the general rule that Plaintiffs' depositions shall be scheduled in the first two weeks of a month, and that physician depositions scheduled by the PMO generally shall be scheduled in the second half of month, a method that for the most part mirrored the scheduling approach used by the Parties themselves before the PMO was created. The PMO is not scheduling PSS depositions, but the Parties are attempting to schedule those depositions to follow upon Plaintiff depositions.

This plan rested on several grounds. As a logistical matter, the scheduling of physician depositions later in the month permitted the PMO a greater chance of securing a deposition date from a physician for the month in which a case had been chosen for discovery, because it allowed the physician more time to assemble and copy medical records to forward to the PMO for the Parties' use at such depositions and permitted more advance notice to the physicians to find four hours of deposition time around their patient schedules. In addition, the Defendants have informed the Special Master that information is often obtained at a Plaintiff's deposition regarding the Plaintiff's contact

with a prescribing physician or the level of involvement by Plaintiff's various treating physicians that can cause the Defendants to alter their selection of physician deponents in a particular case. Changing a prescriber deponent may in turn prompt a change in the PSS chosen for deposition. If this information is learned at a Plaintiff's deposition before the physicians have been deposed, the Parties are able to avoid unnecessary or ineffective physician depositions. Further, certain scheduled Plaintiff depositions do not occur, because of unforeseen circumstances or because the Plaintiff has determined not to proceed with the case. In those circumstances, particularly the latter, the setting of Plaintiff depositions in advance of physician and sales representative depositions allows the Parties to avoid wasting time and expense on physician depositions in cases that will not continue.

Of course this general rule must on some occasions bow to the exigencies of scheduling and to another significant goal of attempting to achieve some efficiency by scheduling depositions in a particular case around the same time, where the Plaintiff, physicians, and PSS are in the same geographic area, permitting counsel to travel to that area once to conduct all the depositions in a particular case. This travel efficiency is of less concern in the cases in which the Plaintiffs have agreed to produce the Plaintiffs for deposition in counsel's offices in Houston, Texas, but in other cases the Plaintiffs and other witnesses reside in the same area and the depositions should occur on one deposition trip, if possible. Nonetheless, the Special Master has concluded that the Parties and the PMO shall adhere to the general rule of scheduling Plaintiff depositions in advance of the dates for physician and PSS depositions. The Special Master will

continue to monitor the advisability of this general rule and need for the exceptions to it when circumstances warrant.


_____
Orran L. Brown
Special Master for Case-Specific Discovery


DATED:  October 19, 2007

8

# EXHIBIT B



**FAEGRE & BENSON**
LLP

UNITED STATES | ENGLAND | GERMANY | CHINA

RUSSELL STEWART
RStewart@faegre.com
(303) 607-3688

August 8, 2007

**By e-mail**

Dennis J. Canty, Esq.
Levin Simes Kaiser & Gornick LLP
44 Montgomery Street, 36th Floor
San Francisco, CA 94104

   Re: September Disclosures

Dear Dennis:

   This responds to your e-mail of August 6, 2007, concerning September Disclosures. As you and I discussed yesterday, we will provide the call notes in a searchable form, as you requested. We can do the same with the IMS data, but candidly there is not much information there to search or manipulate. As we discussed, you are going to look again at the disclosures – I believe that the identities of field representatives are clear in the format you received from us.

   I'm pleased to discuss this again after we provide the information in a different electronic format.

       Very truly yours,

       Russell Stewart

STERO:mcwle

fb.us.2221602.01

# EXHIBIT C



UNITED STATES | ENGLAND | GERMANY | CHINA

October 12, 2007

**VIA E-MAIL**

Buffy K. Martines, Esq.
Laminack, Pirtle & Martines LLP
440 Louisiana Street
Suite 1250
Houston, TX 77002

     RE:   *Joanne Hinton v. AstraZeneca Pharmaceuticals, L.P., et al.*
           MDL No. 1769; Docket No. 6:07-cv-10304

Dear Buffy:

        Thank you for your bringing to our attention the accounts payable issue in this matter. As I've indicated, the issue you identified in the disclosures for Joanne Hinton affected several other cases, as well.

        AstraZeneca has multiple accounts payable databases. Initially, identical searches were run across each database to collect relevant case-specific payment information. After investigating the issue you raised, however, we learned that the searches were not collecting all available information because the databases were coded differently. AstraZeneca is now running separate searches, with proper codes, on each database.

        After the problem was uncovered, AstraZeneca reran searches of the accounts payable databases for all plaintiffs, and we supplemented our disclosures in all cases where payment information was incomplete. We did not supplement disclosures that, based on the new searches, were already accurate and complete. From the date of your letter forward, AstraZeneca has searched the accounts payable databases with the appropriate codes, and all payment information disclosed since that time has been based on these searches.

3200 WELLS FARGO CENTER | 1700 LINCOLN STREET | DENVER COLORADO 80203-4532

TELEPHONE 303-607-3500 | FACSIMILE 303-607-3600 | WWW.FAEGRE.COM

Buffy K. Martines, Esq.
October 12, 2007
Page 2

We are sorry for any inconvenience, and we appreciate your patience.

Very truly yours,

Russell Stewart

STERO:mcwle
cc:     Orran Brown

fb.us.2355196.01

# EXHIBIT D



UNITED STATES ⋮ ENGLAND ⋮ GERMANY ⋮ CHINA

October 10, 2007

Dennis Canty, Esq.
Laura Brandenberg, Esq.
Levin Simes Kaiser & Gornick
44 Montgomery Street, 36th Floor
San Francisco, California  94104

  Re:  Seroquel CSD Deposition Notices

Dear Dennis and Laura:

   This responds to your letter dated October 4, 2007, and the e-mail dated
October 9, 2007.  We were surprised to receive your notices of depositions for Jennifer
Caldes, Richard O'Rear, Frank Daly, and Nicholas Gentile.  The matter of PSSs designated
after the CMO 4 deadline has been on the PMOs agenda for several weeks, and will be
discussed on the October 12, 2007 call.  Enclosed with this letter is the table of late
designated PSSs which was previously provided to the PMO.  CMO 4 provides as follows:

## SCOPE OF CASE SPECIFIC DISCOVERY

   A.  In addition to the discovery authorized in the Order at Docket
number 225, within five business days of the designation of plaintiffs to be
subject to case specific discovery, Defendants shall provide all available
documentation regarding contact with the prescribing physician associated
with that Plaintiff.

   B.  *Within two business days* after provision of this documentation,
Plaintiffs may, at their option, designate for deposition one sales
representative associated with each prescribing physician to be deposed.

On August 3, 2007, we served disclosures with call notes providing the names of the sales
representatives associated with the prescribing physicians

   For Eddie Glover, the August 3, 2007 call notes disclose the following sales
representatives associated with Dr. Julie Garbutt:  Cynthia Ciarolla, Denise Minton, Edward
Mendola, Thomas Dore, and Nicholas Gentile.  The call notes contain entries from
November 1999 to July 2007.

October 10, 2007
Dennis Canty, Esq.
Laura Brandenberg, Esq.

      For James Frederick, the August 3, 2007 call notes disclose the following sales representatives associated with Dr. Stephan Gelfand:  Lisa Marcello, Cynthia Clarolla, Melissa Foreman, Frank Daly, Meg Johnson, Mathew Cestra, Sandy McCaffrey, Andrew Vaill and John Fisher.  The call notes contain entries from September 1999 to July 2007.

      For Hellen Thomas, the August 3, 2007 call notes disclose the following sales representatives associated with Dr. Farris Johnson:  Roger Thornberry, Martha Yancey, Allison Henderson, Richard O'Rear, Stephen Walker, Lori Mobley, Scott Duvall, Leslie Gardner, James Cashion and Lauren Gray.  The call notes are dated from September 2001 to July 2007.

      For James Coppola, the August 3, 2007 call notes disclosed the following sales representatives associated with Dr. Joel Glass:  Janine Stringfellow, Duane Eggie, Kevin Thomas, Jennifer Cribben, Richard Cioll, Candace Olszewski, John McKenna, Jennifer Caldes, and John McKenna.  The call notes contain entries from September 1999 to June 2007.

      According to CMO 4, the designations of the individuals to be deposed from among these names were due August 7, 2007, two business days after the disclosures.  We received your selections on September 6, 2007.

      We understand your position to be that, because the call notes were produced only in PDF, you could not make a selection within the two-day deadline of CMO 4.  Please explain why this is so.  The information contained in the PDF and Excel files is identical.  You will recall that in your August case, Beverly Getchell, we provided call notes on July 23, 2007 and you designated Amy Winstel on July 25, 2007 based upon call notes produced only in PDF format.  In addition, most of the other plaintiffs' counsel made timely designations in August and September.

      As to the electronic format, recall that the order directing production of call notes in electronic format was signed on August 3, 2007, the same day we completed the disclosures.  All disclosures served since the Court's order have been by e-mails that contain an Excel spreadsheet with the same information that is contained in the PDF file, which is also served by e-mail.  We supplemented productions made on August 3, 2007 and before, and our records show that we served you with call notes in Excel files for Getchell, Frederick and Thomas.  And after you and I spoke yesterday, we provided you call notes in the Excel format for Coppola and Glover.

      We believe that this is the type of dispute that the Court intended should first be submitted to the PMO to attempt to resolve.  That office has already heard about this matter during the last several weekly calls and remains ready to hear from you about this dispute.  In addition, the dates contained in your notices are not, in any event, dates that may

October 10, 2007
Dennis Canty, Esq.
Laura Brandenberg, Esq.

be available for the Mr. Gentile, Mr. Daly, Mr. O'Rear, or Ms. Caldes. CMO 4 permits the Plaintiffs to select the dates and locations of plaintiffs depositions, and AstraZeneca to select the dates and times for PSS depositions.

If you have any questions, please call me.

Very truly yours,

Russell Stewart

cc: Orran Brown, Esq.
    Buffy Martines, Esq.
    Richard Josephson, Esq.

| Plaintiff Name / P's Counsel | Deadline to Designate PSS | Date PSS Designated | No. Days Late | Name of PSS |
|---|---|---|---|---|
| Samantha Haas (Cranford) | 8/8/07 | 9/6/07 | 29 | James Wetta |
| Linda Sonnier (Smith) | 8/8/07 | 8/20/07 | 12 | Angelique Wadlington |
| James Coppola (Gornick) | 8/7/07 | 9/6/07 | 30 | Jennifer Caldes |
| Hellen Thomas (Gornick) | 8/7/07 | 9/6/07 | 30 | Richard O'Rear |
| James Frederick (Gornick) | 8/7/07 | 9/6/07 | 30 | Frank Daly |
| Eddie Glover (Gornick) | 8/7/07 | 9/6/07 | 30 | Nicholas Gentile |
| Wayne Olive (Mathews) | 7/26/07 | 8/23/07* | 27 | Jesicca Whidden |

fb.us.2305859.03

# EXHIBIT E



**LEVIN
SIMES
KAISER
&
GORNICK**

LLP

TO:    PMO Orran Brown

RE:    Plaintiffs Frederick, Glover, Coppola and Thomas

DATE: October 11, 2007

AstraZeneca has refused to produce for deposition certain sales representatives designated by plaintiffs for September CSD, on the basis that the designations were untimely.  Because AstraZeneca's disclosures failed to comply with Judge Baker's instructions on July 27, 2007, and his order on August 3, plaintiffs' time to designate sales representatives pursuant to CMO4 did not begin to run.  Plaintiffs' designations were early, rather than late, and without the benefit of the court-ordered disclosures.  Plaintiffs ask the PMO for a determination that the Court's orders actually mean what they say – that AstraZeneca must timely disclose "all available documentation" of contact with a physician witness, and in the proper electronic format, before any designation of a sales representative might be considered untimely.  The following is a summary of plaintiffs' position.

CMO4 provides as follows:

**II.    SCOPE OF CASE SPECIFIC DISCOVERY**

    A.    In addition to the discovery authorized in the Order at Docket number 225, within five business days of the designation of plaintiffs to be subject to case specific discovery, Defendants shall provide all available documentation[1] regarding contact with the prescribing physician associated with that Plaintiff.

    B.    Within two business days after provision of this documentation, Plaintiffs may, at their option, designate for deposition one sales representative associated with each prescribing physician to be deposed.

On July 27, 2007, with respect to disclosure of call notes, Judge Baker stated as follows:

                    20

18   THE COURT:  I don't know how you keep them, I
19   suspect these are going to be an extract from a database.
20        MR. MAGAZINER:  Right.  The reason I didn't
21   respond to Your Honor's question by saying yes is because
22   as I understand it, the way a database like this is, is a
23   very huge -- actually there are three databases, are huge
24   amounts of database.  It is not kept in an Excel
25   spreadsheet format.  What we do is extract it, all the

21

```
 1   information --
 2        THE COURT:  Make it into an Excel file.
 3        MR. MAGAZINER:  Right.  And give that
 4   information to Mr. Allen, electronically to Mr. Allen and
 5   other plaintiffs, of course, electronically.
 6        THE COURT:  You only have do it one way if it's
 7   readable.
 8        MR. MAGAZINER:  That's all I was trying to say.
 9        MR. ALLEN:  If I get it readable, that will be
10   fine, Your Honor.
```

On August 3, 2007, Judge Baker ordered as follows:

**III.   SCOPE OF CASE SPECIFIC DISCOVERY**

As to the case-specific discovery from Defendants set forth in CMO4, Defendants shall provide the call notes for the prescribing physician associated with that Plaintiff in readily accessible **electronic form.**  To the extent the accounts payable records, the IMS (or other prescription tracking database) on prescribing habits, and the PIR or professional information for the prescribing physician associated with that Plaintiff are available in electronic form, Defendant shall provide those in readily accessible electronic form.  The time period that

Despite the foregoing, on August 3, Defendants served disclosures which were not in the ordered, readily accessible electronic form.  For example:



glover original.pdf

On August 6, plaintiffs notified AstraZeneca of the insufficiency of the disclosures, stating that: "because plaintiffs do not therefore have the same ability to manipulate and search the data as do defendants, these are tantamount to no disclosures at all.  Until the disclosures (particularly the attached call notes and IMS data) are made in a form suitable for analysis, plaintiffs' time to designate a sales representative pursuant to CMO4 will not begin to run."



sept discl 1.pdf

On August 8, AstraZeneca agreed to "provide the call in notes in a searchable form as you requested," and indicated the parties would "discuss this again after we provide the information in a different electronic format."



Letter to Dennis
Canty re September l

By September 6, plaintiffs had still not received a compliant disclosure for ANY September case. Without the benefit of those disclosures, plaintiffs nevertheless designated sales representatives for deposition. Plaintiffs never received a response to that email.



depo sched 1.pdf

Beginning on September 17, AstraZeneca began serving supplemental disclosures in the agreed and ordered Excel format, which plaintiffs could search and manipulate. Not surprisingly, these spreadsheets also contained entirely new, directly relevant information not contained in the previously served .pdf disclosures. For instance, new columns were added, indicating the type of sales messages communicated by the representative to the physician. Often, these topics of discussion were not reflected in the corresponding call note. These previously omitted sales messages included: "Favorable Weight Profile" "Minimal Weight Gain" and the like. For example:



frederick supp.pdf    AZ - Call Notes -
Gelfand Supplement f

Plaintiffs complied with their own September CSD obligations, by providing dates for plaintiff depositions and attending physician depositions. Plaintiffs continued to inquire of AstraZeneca when it would produce sales representatives. On September 18, plaintiffs pointed out that seven sales representative depositions were outstanding. AstraZeneca again failed to respond.



gornick re sales
reps.pdf

On October 4, having heard nothing from AstraZeneca, plaintiffs eventually noticed the depositions of the sales representatives.



sales rep notices.pdf

On October 9 and 10, counsel had the following exchange, with which you are familiar.



depo sched 2.pdf



October 10, 2007
Letter.pdf

Plaintiffs request a determination that AstraZeneca's initial disclosures failed to include all documentation regarding contact with physician witnesses, was not in the format ordered, and omitted information relevant to plaintiff's selection of sales representative; that plaintiffs' designations are therefore timely.

Dated: October 11, 2007                    Dennis J. Canty

# EXHIBIT F

| PMO SEROQUEL STATUS CALL NO. 8 | | | |
|---|---|---|---|
| **DATE** | October 12, 2007 | **TIME** | 11:00 a.m. ET |
| **CALL-IN NUMBER** | | 1-866-739-9067 (no code needed) | |
| **DISCUSSION ITEMS** | | | |
| 1. | Depositions Scheduling Update | | |
| 2. | Medical Records Update | | |
| 3. | Late PSS Designations | | |
| 4. | Update on Dr. Glass (Coppola case):  Canceled on 46.75 hours notice; wants to keep $1,600 since not canceled on 48 hours notice | | |
| 5. | Dr. Dixon (Foreman Case):  $3,000 pre-pay or $600 per hour | | |
| 6. | Issues from the Parties | | |

#325190