UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re Seroquel Products Liability Litigation
MDL Docket No. 1769
<u>This Document Relates to All Cases</u>

ASTRAZENECA'S RESPONSE TO PLAINTIFFS' MOTION
REGARDING THE CONFIDENTIALITY OF CERTAIN CASE-SPECIFIC
<u>DISCOVERY DISCLOSURES AND RELATED MATERIALS</u>

I.    INTRODUCTION

AstraZeneca LP and AstraZeneca Pharmaceuticals LP ("AstraZeneca") hereby responds

to Plaintiffs' Motion For Leave To Lodge Allegedly "Confidential" Materials and For A

Determination Regarding Confidentiality (Doc. No. 610) ["Motion"].[1]  The Motion concerns five

categories of AstraZeneca documents or information, derived from the disclosures served on

plaintiffs by AstraZeneca in relation to the cases subject to the case-specific discovery program:

(1)    "call note" information concerning contacts by AstraZeneca sales personnel with
        the plaintiff's prescribing physician ("Category (1)");

(2)    documents containing "account payable" information reflecting payments, if any,
        by AstraZeneca to that particular physician ("Category (2)");

(3)    information regarding whether the prescribing physician is listed on the available
        distribution lists for the various AstraZeneca Dear Doctor or Dear Healthcare
        Provider Letters ("Category (3)");

(4)    certain information related to the prescribing physician obtained by AstraZeneca
        from IMS Health, Inc., a party that makes certain information available for a fee
        to those that pay for IMS's services on contractual terms that require such
        information to be maintained on a confidential basis ("Category (4)"); and

(5)    information concerning whether AstraZeneca has record of any written response

---

[1] Plaintiffs on November 1, 2007 also filed a "supplemental statement" related to their Motion
(Doc. No. 635) [hereinafter "Motion Supp. St."].

to a "Professional Information Request" received by AstraZeneca from the prescribing physician ("Category (5)").

Plaintiffs have indisputably been given access in discovery to the information and materials at issue, albeit subject to AstraZeneca's confidentiality designations pursuant to the Protective Order entered by this Court (Doc. No. 478) ["Protective Order"].  Plaintiffs' Motion, however, requests a determination that these categories of information are *not* protected as "confidential" and, specifically, an order permitting them to lodge such materials with the Court publicly, and not "under seal" as otherwise required by the Protective Order, in support of their pending sanctions motion.  *See* Pltfs' Motion Supp. St. at 1-2.

Plaintiffs' Motion should be denied on both procedural and substantive grounds.  As an initial matter, it should be denied as premature and the matters raised therein referred to Project Management Office ("PMO") because they involve discovery-related disputes related to case-specific discovery matters.  But more fundamentally, the Motion is substantively without merit. Indeed, AstraZeneca has already withdrawn its prior confidentiality designations as to Categories (3) and (5) above, so plaintiffs' Motion is moot as to those categories.[2]  Plaintiffs' Motion should be denied as Categories (1), (2) and (4) because each involves AstraZeneca's non-public proprietary information that was *properly* designated as "confidential" consistent with the governing authorities.  As detailed in the accompanying Declaration of Alfred Paulson, a national sales director at AstraZeneca ("Paulson Decl."), Categories (1), (2) and (4) involve

---

[2] Plaintiffs' counsel rushed to file their Motion days before the time had elapsed under the Protective Order in which AstraZeneca was to respond to plaintiffs' confidentiality challenge. Had plaintiffs instead first completed the meet-and-confer process with AstraZeneca as required by both Local Rule 3.01 and paragraph 4(C) of the Protective Order, then they would have had no occasion unnecessarily to burden the Court with these "additional" issues as to which there is no genuine dispute between the parties.

competitively sensitive commercial information that AstraZeneca has always maintained in a confidential manner; and public disclosure of such information would threaten to harm AstraZeneca's interests and put it at a commercial and competitive disadvantage.

Hence, "good cause" exists for these designated confidential materials to remain entitled to the safeguards established by the Protective Order – most notably the requirement that confidential discovery materials be filed under seal to prevent unnecessary access by third parties, including AstraZeneca's competitors.  *See* Protective Order, ¶¶ 6, 10.  Under the governing "balancing of interests" analysis, *Farnsworth v. Proctor & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985), AstraZeneca's interest in having these materials continue to receive the confidentiality protections afforded by the Protective Order substantially outweighs any interests on the part of plaintiffs in being free from the Protective Order's safeguards designed to prevent unwarranted disclosure of confidential discovery materials.  Indeed, Seroquel is an FDA-approved medication that remains on the market.  The same is true for those atypical antipsychotic medications that are Seroquel's market competitors, such as Eli Lilly & Co.'s "Zyprexa," Janssen Pharmaceutica's "Risperdal," and Bristol Meyer Squibb's "Abilify."  Thus, if plaintiffs were to prevail on the instant Motion and be permitted to file these confidential discovery materials without putting them under seal, AstraZeneca's competitors would readily obtain those materials and use them to the company's competitive disadvantage.  As detailed below, the Court should prevent that result, and deny plaintiffs' Motion.

## II.     BACKGROUND

Early in the MDL, the parties entered into a stipulated confidentiality agreement which included, *inter alia*, an agreed-upon process governing the designation of discovery materials as

"confidential."  On September 19, 2007, this Court entered the umbrella Protective Order that is currently in place, which in relevant respects tracks the core terms of the stipulated agreement on which the parties had been relying in the discovery process in this MDL.  Both AstraZeneca and plaintiffs have variously designated certain discovery materials as "confidential" pursuant to the Stipulated Agreement and the Protective Order entered by the Court.[3]

In the course of the case-specific discovery program, AstraZeneca was required pursuant to CMO No. 4 to make certain disclosures and provide certain documentation with respect to the prescribing physician for a particular plaintiff subject to case-specific discovery.  AstraZeneca's disclosures are made with respect to five categories, including:  (1) Call Note Information; (2) Account Payable Information; (3) Dear Doctor or Dear Healthcare Provider Letters; (4) Prescriber-level IMS Data; and (5) Professional Request Information.  *See* Declaration of Russell Stewart ("Stewart Decl."), ¶ 3.  AstraZeneca initially designated all of these disclosures, and the related documentary materials provided to plaintiffs in discovery, as "confidential" pursuant to paragraph 4(A) of the Protective Order.  *Id.*, ¶ 4.

On October 17, 2007, plaintiffs notified AstraZeneca in writing that they wished to challenge the confidentiality designation as to each of these five categories, and all related documentation, in connection with six plaintiffs subject to case-specific discovery, *i.e.*, plaintiffs Naramore, Thomas, Coppolla, James, Glover and Godfrey.  *Id.*, ¶ 5 & Exh. A.

---

[3] Consistent with the umbrella protective orders adopted in other MDLs and complex litigation, the Protective Order provides the usual array of procedural safeguards against unwarranted disclosure to unauthorized third parties (including competitors) of discovery materials that are in good faith designated "confidential" by the parties – including, *inter alia*, "use" restrictions, "disclosure" limitations, "endorsement" requirements, and procedures regarding filing confidential discovery materials "under seal."  *See*, *e.g.*, Protective Order, ¶¶ 2-4, 6-10.

Rather than await AstraZeneca's timely response consistent with paragraph 12(B) of the Protective Order, plaintiffs sent AstraZeneca an email on October 24th, demanding a complete response within 24 hours or else plaintiffs would file the instant Motion.  *Id*., ¶ 6 & Exh. B. Plaintiffs then carried through with that threat, filing their Motion on October 25th – even though (i) the 10-day initial response period afforded under the Protective Order still had not lapsed, and (ii) absent a proper meet-and-confer with AstraZeneca, as required by Local Rule 3.01 as well as the Protective Order itself.[4]

Despite plaintiffs' tactics, AstraZeneca informed plaintiffs on October 29th that it had agreed to withdraw its prior confidentiality designation as to two of the five categories of discovery at issue, *i.e*., Categories (3) and (5).  *Id*., ¶ 7 & Exh. C.  But as to the remaining categories, AstraZeneca explained that it would not agree to withdraw its confidentiality designations – because those materials involved confidential commercial information that is properly protected under Federal Rule of Civil Procedure 26(c)(7), and public disclosure of them would threaten to harm AstraZeneca by placing it at a distinct competitive disadvantage.  *Id.*

By Order dated November 1, 2007, this Court directed AstraZeneca to respond to plaintiffs' Motion by November 7, 2007.  AstraZeneca provides its timely response herein.

## III.   DISCUSSION

### A.   As A Threshold Matter, Plaintiffs' Motion Should Be Denied On Procedural Grounds And The Matters Raised Therein Referred To The PMO For Consideration In The First Instance

Plaintiffs' Motion involves certain discovery-related disputes concerning case-specific

---

[4] While Plaintiffs say they tried to meet and confer on these issues, that effort unfairly demanded that AstraZeneca respond fully – in less than 24 hours – despite the fact that any response to plaintiffs' October 17th challenge was not yet due under the Protective Order and CMO No. 4.

discovery, *i.e.*, the confidentiality of certain disclosures and information provided by AstraZeneca in connection with the ongoing case-specific discovery program. Those issues, in accordance with this Court's directions, should be addressed in the first instance by the PMO. *See* Order of November 1, 2007 (Doc. No. 638) ("the role of the SM-PMO as set forth in Doc. No. 571 is a correct interpretation of this Court's intent"). Thus, the parties should be directed to confer with PMO regarding the designations of confidential information in the case-specific discovery program. The PMO is familiar with the nature and extent of AstraZeneca's disclosures and discovery at issue. Moreover, by involving the PMO in the meet-and-confer process for case-specific discovery, these issues can be discussed and resolved without the need for the Court's time. If issues remain unresolved after the PMO conference, they would then be ripe to take up with this Court. Accordingly, Plaintiffs' Motion should be denied as premature, and the matters raised therein referred to the PMO for consideration and conference.

> **B.  The Protective Order And Federal Rule of Civil Procedure 26(c)(7) Afford Broad Protections For Discovery Materials That Involve Confidential Commercial Information, Including The Categories Of Confidential Information At Issue Here**

Paragraph 4(A) of the Protective Order provides that the parties may designate as "confidential" any documents or other materials that they, in good faith, believe to be entitled to the protection under Federal Rule of Civil Procedure 26(c). *See* Protective Order, ¶ 4(A). Rule 26(c)(7) provides that, upon good cause shown, the Court may order that any "trade secret *or other confidential research, development, or commercial information* not be revealed or be revealed only in a designated way." Fed. R. Civ. P. 26(c)(7) (emphasis added). Thus, by its plain text, Rule 26(c)(7) extends "beyond" what might be "'true' trade secrets" and provides broad protection for *any other confidential commercial information*. 8 Wright, Miller & Marcus,

FEDERAL PRACTICE & PROCEDURE: CIVIL 2D § 2043, at p. 556 (1994); *see also* 6 MOORE'S

FEDERAL PRACTICE:  CIVIL §§ 26.105[1][b], 26.105[8][a] (2007).

"Confidential business information" is a recognized form of "property," *Carpenter v.*

*United States*, 484 U.S. 19, 26 (1987), and falls squarely within the broad protections of Federal

Rule of Civil Procedure 26(c)(7).  *See Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

As the Supreme Court has emphasized, "'[c]onfidential information *acquired or compiled* by a

corporation in the course and conduct of its business is a species of property to which the

corporation has the *exclusive* right and benefit.'"  *Carpenter*, 484 U.S. at 26 (emphases added;

citation omitted).  The "extent of the property right" afforded to confidential business

information is generally determined "by the extent to which the owner of the secret protects [its]

interest from disclosure to others."  *Ruckelshaus v. Monsanto Co*., 467 U.S. 986, 1001-03 (1984).

Thus, during civil discovery in complex litigation, "[c]onfidential information is

customarily made available, if at all, under a protective order," *Ball Mem. Hosp., Inc. v. Mutual*

*Hosp. Ins.. Inc*., 784 F.2d 1325, 1346 (7th Cir. 1986), which provides "adequate safeguards" to

protect against any risk of unnecessary disclosure to the public, including competitors.

*Centurion Indus. Inc. v. Warren Steurer & Assocs*., 665 F.2d 323, 326-27 & n. 7 (10th Cir. 1981)

(emphasizing that "appropriate safeguards should attend [the] disclosure" of confidential

business information "by means of a protective order" under Rule 26(c)(7), including requiring

such materials to be "sealed" if filed with court); *Maritime Cinema Serv. Corp. v. Movies En*

*Route, Inc*., 60 F.R.D. 587, 590 (S.D.N.Y. 1973) (mandating that confidential discovery

materials be filed with court "under seal"); *see also Chicago Tribune Co. v. Bridgestone/*

*Firestone, Inc*., 263 F.3d 1304, 1313 (11th Cir. 2001) (recognizing propriety under Rule 26(c)(7)

of requiring confidential discovery materials to be filed "under seal" in many circumstances).

Although courts have not precisely defined what materials are protected under Rule 26(c)(7) as confidential commercial information, the key factors are (1) whether the party has "properly safeguarded" the proprietary information at issue by limiting access to only corporate personnel, as opposed to "sharing the allegedly confidential information with [its] competitors"; and (2) whether public disclosure of the information would threaten to place that party at a "commercial disadvantage" or "competitive disadvantage." *Nestle Foods Corp. v. Aetna Cas. & Surety Co*., 129 F.R.D. 483, 484 (D.N.J. 1990); *accord Duracell Inc. v. SW Consultants, Inc*., 126 F.R.D. 576, 577 (N.D. Ga. 1989); *Zenith Radio Corp. v. Matsushita Elec. Indus. Co*., 529 F. Supp. 866, 890 (E.D. Pa. 1981); *see also* 6 MOORE'S FEDERAL PRACTICE:  CIVIL § 26.105[8][a].[5]

Moreover, cases concerning the protections afforded "confidential commercial information" under Rule 26(c)(7) hold that "this subject matter category is broad enough to include a wide variety of business information" – such as "customer lists" and related information about "contracts with customers"; a company's financial arrangements and "contract terms" with third parties that are otherwise not publicly disclosed; and the wide variety of "financial records" maintained privately by corporations.  *Zenith Radio Corp.*, 529 F. Supp. at 890-92 & n. 42 (citing cases); *accord* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 40.27.[6]

---

[5] Some courts have also been loosely "guided" by the more stringent factors "used when determining whether certain information should be classified as trade secrets," including, *inter alia*, "the measures taken to guard the secrecy of the information." *Reliance Ins. Co. v. Barron's*, 428 F. Supp. 200, 203 (S.D.N.Y. 1977); *cf.*, *Chicago Tribune Co*., 263 F.3d at 1313 (citing "trade secret" factors).

[6] In its sample "Confidentiality Order," the Manual for Complex Litigation includes all of the following as properly subject to confidentiality protections under Rule 26(c)(7):  "customer lists" and information about customers; "financial information not publicly filed with any federal or

Here, AstraZeneca bears the initial burden of demonstrating under Rule 26(c) that "good cause" supports the continued protection of the challenged discovery materials under the umbrella Protective Order entered by the Court.  *See Chicago Tribune Co.*, 263 F.3d at 1313; *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987).  That is, AstraZeneca must make a threshold showing that Categories (1), (2) and (4) involve confidential commercial information within the scope of Rule 26(c)(7), and, thus, these materials are entitled to the Protective Order's safeguards.  In determining the existence of "good cause" under Rule 26(c), the Eleventh Circuit has also instructed courts to conduct a "balancing of interests" that weighs the parties' respective burdens under the circumstances.  *Chicago Tribune Co.*, 263 F.3d at 1313-15.  As shown below, AstraZeneca can readily satisfy its threshold burden as to Categories (1), (2) and (4), and any balancing of interests tips overwhelmingly in favor of AstraZeneca.

### C. Plaintiffs' Motion Should Be Denied As To Categories (1), (2) and (4), Because Each Involves Information And Related Materials That Are Properly Entitled To Confidentiality Protection Under Rule 26(c)(7)

The information provided in Categories (1), (2) and (4) involves facts and other matters that are entitled to confidentiality protection under the Federal Rule of Civil Procedure because each involves "confidential commercial information" within the scope of Rule 26(c)(7).  *See, e.g.*, *Zenith Radio Corp.*, 529 F. Supp. at 890-92.[7]  Hence, this discovery was properly

---

state regulatory authority"; "proprietary licensing, distribution, marketing, design, development, research, and manufacturing information – not publicly filed with any federal or state regulatory authority – regarding products and medicines, whether currently marketed or under development"; and "proprietary research" as well as any other non-public "commercial or business information."  MANUAL FOR COMPLEX LITIGATION (FOURTH) § 40.27.

[7] As one court aptly emphasized while preserving the confidentiality of comparable proprietary information under Rule 26(c)(7):  "In a competitive market, an entity's commercial information, its strategies, techniques, goals, and plans can be its life blood.  The discovery rules are not

designated "confidential" by AstraZeneca.  Indeed, each category involves AstraZeneca's non-public proprietary information, public disclosure of which would threaten to harm AstraZeneca by providing its competitors with competitively sensitive information as to which they otherwise would not have access.  *See generally* Paulson Decl.  Thus, "good cause" under Rule 26(c)(7) exists for these materials to continue to enjoy the confidentiality protections to which they are entitled by law and pursuant to the Protective Order.

Plaintiffs' Motion wrongly suggests that none of AstraZeneca's discovery materials in Categories (1), (2) or (4) could possibly constitute "confidential" commercial information protected under Rule 26(c)(7) because they bear *some* connection with "third parties."  Pltfs' Motion Supp. St. at 2.  Plaintiffs have no authoritative support for this wildly overbroad position.  As detailed above, the broad protections afforded confidential commercial information under Rule 26(c)(7) have *never* turned on whether the information at issue relates to, derives from, originated with, or otherwise has some conceivable connection to "third parties."  What matters is whether the materials at issue were maintained securely by the corporation, which denied competitor access to them, and which would be exposed to commercial or competitive disadvantage if confidentiality were not maintained.  *See* pp. 7-9, *supra* (citing authorities).  As explained below, each of the information in Categories (1), (2) and (4) was properly designated as confidential and, thus, is fully entitled to the safeguards established by the Protective Order with respect to confidential discovery materials.

---

intended to forfeit a party's ability to compete effectively in the market by opening up tangentially relevant financial and marketing information to competitors."  *Duracell Inc. v. SW Consultants, Inc.*, 126 F.R.D. 576, 577 (N.D. Ga. 1989).

<b>1.      The Information In Category (1) – AstraZeneca "Call Note"<br>Information Related To The Plaintiff's Prescribing Physician – Is<br>Entitled To Confidentiality Protection Under Rule 26(c)(7)</b>

Category (1) concerns "call note" information reflecting contacts by AstraZeneca sales personnel with prescribing physicians.  *See* Paulson Decl., ¶¶ 4-11.  In the pharmaceutical industry, the term "call notes" is commonly used to refer to documents prepared internally by pharmaceutical companies reflecting the mental impressions of sales employees about their periodic in-person discussions with physicians and other healthcare professionals.  *Id.*, ¶ 4.  Plaintiffs' Motion challenges the confidentiality designation of several sets of AstraZeneca Seroquel "call notes," which (i) reveal sales representative's thoughts and impressions of their private meetings with particular physicians about Seroquel and competing atypical antipsychotic medications; (ii) identify the dates and chronicle the history of prior sales calls with those physicians; and (iii) reflect the contents of these sales-call interactions, including core sales messages discussed therein and related AstraZeneca strategies for the future.  *Id.*, ¶¶ 4-6.

These Seroquel "call notes" include AstraZeneca's proprietary, competitively sensitive information which is entitled to confidentiality protections under Rule 26(c)(7).  Indeed, these confidentially designated discovery materials include descriptions by company sales personnel of information reflecting the individual preferences, opinions and views of each physician or healthcare provider about Seroquel as compared to competitor medications such as Zyprexa, Risperdal, and other atypical antipsychotics.  *Id.*  Call notes also explicitly reflect key messages that AstraZeneca determined to be most effective at given points in time and, thus, reflect key corporate strategies for Seroquel.  *Id.*  They also include private competitive intelligence and insights derived from the unique efforts of AstraZeneca's sales employees about particular

11

physicians, the reasons they have preferred either Seroquel or competing medications over others in the past, and the most effective strategic approaches to take with particular physicians in the future. *Id.*, ¶¶ 4-7.[8]  Among other things, the private information contained in "call notes" is variously used by AstraZeneca to facilitate internal business decisions at several different levels. *Id*.  Call-note information is also maintained in a proprietary database used by AstraZeneca and kept on a strictly confidential basis. *Id.*, ¶ 8, 10.  Like its competitors as to their confidential call-note materials, AstraZeneca treats its own call-note documentation and related information as private proprietary information. *Id*.  This information is *never* shared with competitors or anyone else outside of AstraZeneca. *Id.*, ¶¶ 8-10.  Indeed, the information is shared within the company only with appropriate authorized personnel on an as-needed basis. *Id.*, ¶¶ 7-10.

Category (1)'s "call note" information is analogous to the sort of proprietary information related to customer lists, and information regarding individual customer preferences and interactions, that courts have routinely held to constitute confidential commercial information entitled to protection under Rule 26(c)(7). *See, e.g.*, *Jazz Photo Corp. v. United States*, 439 F.3d 1344, 1358 (Fed. Cir. 2006); *Duracell Inc. v. SW Consultants, Inc.*, 126 F.R.D. 576, 578-79 (N.D. Ga. 1989); *Maritime Cinema Service Corp. v. Movies en Route, Inc.*, 60 F.R.D. 587, 590 (S.D.N.Y. 1973); *Borden Co. v. Sylk*, 289 F. Supp. 847, 848 (E.D. Pa. 1968); *see also In re Rezulin Prod. Liab. Litig.*, 2000 WL 1839744, *2 (S.D.N.Y. Dec. 13, 2000).

---

[8] This is in part because "call notes" reflect the history of prior sales calls on a particular physician.  These proprietary materials are generally reviewed by AstraZeneca sales representatives before making further calls on the particular physician, or others in their practice.  For instance, the "call notes" reflect the reasons the physician has said he or she may have preferred a particular antipsychotic in the past, which provides valuable insight to AstraZeneca's competitive interests by informing future sales calls on that physician.  Paulson Decl., ¶¶ 5-9.

Moreover, public disclosure of AstraZeneca's call-notes information and related documents – including access to such materials by competitors – would put AstraZeneca at commercial and competitive disadvantage, particularly where competitors are not simultaneously required publicly to disclose and provide AstraZeneca with their comparable confidential proprietary information and materials.  *See* Paulson Decl., ¶¶ 3, 5, 11.[9]  In this sense, such disclosure would injure AstraZeneca by forcing it to surrender observations of the pharmaceutical market that are uniquely held by AstraZeneca, thereby both diminishing the value of the information and providing an unfair competitive advantage to AstraZeneca's competitors.  Thus, Category (1)'s "call note" information and documents are protected as "confidential" under the Protective Order, which should continue to protect AstraZeneca's privacy interests in these materials.

> **2.     The Information In Category (2) – "Account Payable" Information Reflecting Certain Payments Made To Particular Physicians – Is Entitled To Confidentiality Protection Under Rule 26(c)(7)**

Category (2) concerns certain "accounts payable" information that reflects payments, if any, made by AstraZeneca to the particular prescribing physician or other healthcare provider

---

[9] As discussed in the Paulson Declaration, public disclosure of AstraZeneca's call notes would put the company at a competitive disadvantage in numerous ways.   For instance, because the information therein reflects years of competitive intelligence about how best to approach physicians and their offices in sales calls, competitor access to such private materials would allow them to "free ride" on AstraZeneca's years of efforts to their own advantage, which is fundamentally unfair.  In addition, the call notes reflect AstraZeneca's key messages and private internal insights about the effectiveness of AstraZeneca's strategies in marketing Seroquel to physicians, to which competitors cannot be afforded access without clear competitive disadvantage to AstraZeneca.  Further still, because the call notes not only reflect sales-call frequency but also which physicians and offices are important to AstraZeneca's strategic efforts to increase Seroquel's competitive market share, access to these confidential materials would wrongly enable competitors to capitalize on these insights and re-adjust their competitive sales call efforts accordingly.  *See* Paulson Decl., ¶¶ 3, 9, 10-11.

under various private contractual arrangements.  *See* Paulson Decl., ¶¶ 16-18.  This information related to whether, why, and to what extent AstraZeneca may have made payments to physicians has been maintained by the company on a confidential basis.  *Id*.  Once again, the information is not openly shared with competitors or others outside of AstraZeneca.  *Id*.

The information in Category (2) was properly designated "confidential" under the Protective Order.  The nature and extent of any payments made by AstraZeneca to particular physicians constitutes private corporate financial information that reflect payments made under written or oral agreements with those physicians, and are analogous to the sort of proprietary business information consistently entitled to confidentiality protection under Rule 26(c)(7).  *See*, *e.g.*, *Maritime Cinema Service Corp.*, 60 F.R.D. at 590 ("fees" paid to third parties under "business contracts" with those who facilitate purchases of defendant's products are protected as "confidential" commercial information under Rule 26(c)(7)); *Duracell*, 126 F.R.D. at 578-79.  Given that AstraZeneca does not have access to comparable proprietary information about payments made to physicians by its competitors, allowing plaintiffs to file these materials publicly, and not under seal, would afford AstraZeneca's competitors ready access to this competitively sensitive information and thus put the company at a distinct competitive disadvantage.  *See* Paulson Decl., ¶¶ 16-18.

In fact, this is precisely why courts have recognized the "right to keep confidential one's financial affairs," and protected such non-public financial information by imposing "restrictions" against their unnecessary disclosure.  *Hecht v. Pro-Football, Inc.*, 46 F.R.D. 605, 607 (D.D.C. 1969); *see also*, *e.g.*, *McCarthy v. Barnett Bank of Polk County*, 876 F.2d 89, 90-92 (11th Cir. 1989); *New Hampshire Indem. Co., Inc. v. Reid*, 2007 WL 2972618, *6-*8 (M.D. Fla. July 27,

2007); *accord Vollert v. Summa Corp.*, 389 F. Supp. 1348, 1351 (D. Hawaii 1975); *Carpenter*, 484 U.S. at 26.  Indeed, Rule 26(c)(7)'s broad protections afforded confidential "business information" readily encompass a company's financial arrangements and the details of contractual relations with parties that are not otherwise publicly disclosed.  *Zenith Radio Corp.*, 529 F. Supp. at 890-92.  Accordingly, AstraZeneca's good-faith designation of Category (2) materials as "confidential" under this Court's Protective Order should be confirmed by the Court, and plaintiffs' unfounded challenge to that designation should be rejected.

> **3.     The Information In Category (4) – Concerning Information Related To Plaintiff's Prescribing Physician Obtained By AstraZeneca From IMS Health, Inc – Is Entitled To Confidentiality Protection Under Federal Rule of Civil Procedure 26(c)(7)**

Category (4) concerns certain information related to plaintiff's prescribing physician obtained by AstraZeneca from IMS Health, Inc. ("IMS"), a third party that compiles and makes certain information available for a fee to those that pay for IMS's services but on contractual terms that require such information to be maintained on a confidential basis.  *See* Paulson Decl., ¶¶ 12-15.  IMS expends significant resources to obtain and compile information regarding physicians and healthcare providers, which IMS makes available to those who use and subscribe to its services, including AstraZeneca.  *Id.*  AstraZeneca pays IMS for its services.  *Id.*, ¶ 13. The information and materials in Category (4) were obtained by AstraZeneca from IMS pursuant to a contractual arrangement which requires AstraZeneca to maintain these materials on a confidential basis.  *Id.*, ¶¶ 13-14.  AstraZeneca has complied with its contractual commitments, and has maintained these materials on a confidential basis.  *Id.*  Indeed, as plaintiffs' counsel know, AstraZeneca first had to obtain IMS's prior consent before AstraZeneca could provide

plaintiffs with access to these materials in discovery, subject to AstraZeneca's designation of these materials as "confidential" under the Protective Order. *See*, *e.g.*, *id.*, ¶ 14.

Under these circumstances, plaintiffs' effort to challenge AstraZeneca's proper confidentiality designation of the information and related materials in Category (4) is particularly suspect. Indeed, public disclosure of this information would not only violate the privacy interests and expectations of AstraZeneca and IMS, *see United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986), but also effectively require AstraZeneca to breach its contractual obligation to IMS to keep these materials confidential. Plaintiffs' requested order would be tantamount to providing AstraZeneca's competitors with open access to IMS's valuable proprietary confidential data, without any requirement that they pay IMS for access to this data. Moreover, AstraZeneca itself not only consistently maintains IMS-related data on a private confidential basis, but it uses this information exclusively for internal purposes related to AstraZeneca's business strategy and has never made such information publicly available. *See* Paulson Decl., ¶ 15. It is true that AstraZeneca's competitors may also purchase some of IMS's services. But just as AstraZeneca has no basis or right to know what information or data its competitors have or use to inform their business judgments, so too are its competitors not entitled to know or have access to the confidential information AstraZeneca obtains for a fee from IMS. Any contrary result would plainly put AstraZeneca at a commercial and competitive disadvantage, by affording its competitors with access to its confidential IMS data and information while AstraZeneca continues properly to be denied access to any comparable information held privately by competitors. *Id.* Thus, AstraZeneca's designation of Category (4)

materials as "confidential" under this Court's Protective Order should be confirmed by the Court, and plaintiffs' unfounded challenge to that designation should be rejected.

> **D.      Because Any Balancing Of Hardships Overwhelming Tips In Favor Of AstraZeneca, The Court Should Continue To Afford The Protective Order's Narrowly Tailored Safeguards Against Public Disclosure Of Designated "Confidential" Materials To The Non-Public Proprietary Information In Categories (1), (2) And (4)**

As the Eleventh Circuit has emphasized, a "balancing of interests" analysis applies in circumstances such as this one. *Farnsworth v. Proctor & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985); *see also Chicago Tribune Co. v. Bridgestone/Firestone, Inc*., 263 F.3d 1304, 1313 (11th Cir. 2001). Plaintiffs' Motion calls upon the Court to weigh (1) AstraZeneca's interest in preserving the confidentiality of the materials at issue from unnecessary and unwarranted disclosure to its competitors and the general public, against (2) plaintiffs' claimed interest in not being required to comply with even the minimally invasive safeguards imposed by the Protective Order concerning confidential discovery materials, *i.e*., their wish to be free from the requirement that they file these materials with the Court under seal. There can be no question that this balancing of interests overwhelmingly tips in favor of AstraZeneca.

On the one side of the balance sits AstraZeneca's compelling interest in making sure that its competitors and the general public do not needlessly obtain access to the confidential, competitively sensitive discovery materials in Categories (1), (2) and (4). As other courts have stressed, "it is incumbent upon the district court to utilize its authority to issue an appropriate protective order to safeguard the rights of the parties" where discovery of confidential business information is at issue. *In re Remington Arms Co.*, 952 F.2d 1029, 1033 (8th Cir. 1991). Thus, courts routinely impose "adequate safeguards" to prevent compromise of such rights by means of

protective orders under Rule 26(c)(7).  *Centurion Indus. Inc. v. Warren Steurer & Assocs.*, 665

F.2d 323, 326-27 & n. 7 (10th Cir. 1981); *see also* 8 Wright, Miller & Marcus, FEDERAL

PRACTICE & PROCEDURE: CIVIL 2D § 2043; 6 MOORE'S FEDERAL PRACTICE:  CIVIL §

26.105[8][a].  To prevent the exact risk of competitive harm underlying AstraZeneca's

designation of these materials as confidential, courts repeatedly have adopted and approved the

very safeguards included in the Protective Order – including most notably the requirement that

any such materials must be filed with the Court only "under seal."  *Cavin v. Home Loan Center,*

*Inc.*, 469 F. Supp. 2d 561, 564 n.3 (N.D. Ill. 2007); *see also, e.g.*, *Jazz Photo Corp.*, 439 F.3d at

1357-58; *Maritime Cinema Serv. Corp.*, 60 F.R.D. at 590; *cf.*, *Chicago Tribune Co.*, 263 F.3d at

1313.  Thus, "the ready availability of alternatives to protect confidentiality" – including the

"sealing of records" – make plain that "plaintiffs should be able to develop their case" without

needing to damage the defendant's confidentiality interests.  *Guerra v. Board of Trustees of the*

*Calif. State Universities & Colleges*, 567 F.2d 352, 355 (9th Cir. 1977).

By contrast, on the other side of the balance sits plaintiffs' claimed interest in not being

required to file these confidentially designated discovery materials under seal in support of their

sanctions motion, as required by the Protective Order.  In their Motion, plaintiffs do not even try

to establish that complying with the Protective Order's requirement that they file these

confidential discovery under seal somehow prejudices their "trial preparation" in these

proceedings, *Farnsworth*, 758 F.2d at 1547, or otherwise imposes unwarranted and onerous

burdens on them under the circumstances.  *See also Phillips ex rel. Estates of Byrd v. General*

*Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002) (confirming propriety of requiring plaintiffs

to file confidential discovery materials "under seal," pursuant to pre-existing protective order, in

support of their "nondispositive sanctions motion filed with the court").  Nor could plaintiffs do

so.  Any slight inconvenience to plaintiffs' counsel in this regard is vastly outweighed by the

threat of competitive harm to AstraZeneca.  Indeed, plaintiffs could not claim to experience

anything more than the minimal inconvenience that all litigants readily endure in the countless

cases in which parties are required to file confidentially designated materials "under seal"

pursuant to protective orders similar to the one adopted by this Court.

 Finally, plaintiffs do not (and could not) suggest that they, the press, or the general public

have any constitutional or common-law "right of access" to the discovery materials at issue.  The

Eleventh Circuit has repeatedly held that there exists *no* such general-public right of access to

sort of pre-trial discovery materials at issue, and which are to be filed under seal pursuant to the

Protective Order.  *See Chicago Tribune Co*., 263 F.3d at 1310-13; *In re Alexander Grant & Co.*

*Litig.*, 820 F.2d at 355; *Anderson*, 799 F.2d at 1441.  As the Eleventh Circuit has instructed,

"private litigants have protectable privacy interests in confidential information disclosed through

discovery," *In re Alexander Grant & Co. Litig.*, 820 F.2d at 355, and the procedural device of

requiring parties to file such materials "under seal" is proper and well-settled form of protective

relief afforded under Rule 26(c)(7).  *Chicago Tribune Co*., 263 F.3d at 1310-13.

 In sum, under the governing balancing-of-interests test, AstraZeneca's interest in

preserving the confidential nature of the information in Categories (1), (2) and (4) plainly

outweighs plaintiffs' apparent interest in avoiding a minimal inconvenience.  AstraZeneca has

already provided these confidential discovery materials to plaintiffs, and asks merely that the

Protective Order's safeguards against unnecessary and unwarranted harm to the confidential

nature of these materials continue to apply.  Because these materials are properly entitled to

protection under Federal Rule of Civil Procedure 26(c)(7), plaintiffs' Motion should be denied.

## III.    CONCLUSION

For the foregoing reasons, plaintiffs' Motion should be denied.  The matters raised

therein should be referred to the PMO for consideration and determination in the first instance.

Moreover, plaintiffs' challenge as to Categories (1) and (3) are moot.  Their challenge to

Categories (1), (2) and (4) are without merit.  Such materials are entitled to confidentiality

protection under both the terms of the Protective Order and governing law.

DATED:  November 7, 2007                 Respectfully submitted,

_/s/ Fred T. Magaziner_
Fred T. Magaziner
Brennan Torregrossa
DECHERT LLP
2929 Arch Street
Philadelphia, PA  19103
Telephone: (215) 994-4000
Facsimile: (215) 994-2222
fred.magaziner@dechert.com

Steven B. Weisburd
Eliot Walker
DECHERT LLP
300 West 6th Street, Suite 1850
Austin, TX  78701
Telephone: (512) 394-3000
Facsimile: (512) 394-3001

_Counsel for AstraZeneca Pharmaceuticals LP
and AstraZeneca LP_

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on November 7, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system through which all participating parties are deemed served.  I further certify that, by using the CM/ECF, the foregoing has been served on plaintiffs' liaison counsel, who is charged with serving any non-CM/ECF participants on the attached Service List.

*/s/ Eliot Walker*

<u>**SERVICE LIST**</u>

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No. 1769**

| | |
|---|---|
| Paul J. Pennock<br>Michael E. Pederson<br>Weitz & Luxenberg, P.C.<br>180 Maiden Lane - 17th Floor<br>New York, NY 10038<br>Telephone: (212) 558-5500<br>Ppennock@weitzlux.com<br>MPederson@weitzlux.com<br>***Plaintiffs' Lead Counsel*** | Camp Bailey<br>Michael W. Perrin<br>Fletcher Trammell<br>Bailey Perrin Bailey LLP<br>The Lyric Centre<br>440 Louisiana, Suite 2100<br>Houston, TX 77002<br>Telephone: (713) 425-7240<br>cbailey@bpblaw.com<br>mperrin@bpblaw.com<br>***Plaintiffs' Lead Counsel*** |
| Larry Roth<br>Law Offices of Larry M. Roth, P.A.<br>Post Office Box 547637<br>Orlando, FL  32854-7637<br>Telephone: (407) 872-2239<br>LROTH@roth-law.com<br>***Plaintiffs' Liaison Counsel*** | Tommy Fibich<br>Fibich, Hampton & Leebron, L.L.P.<br>1401 McKinney, Suite 1800<br>Five Houston Center<br>Houston, TX 77010<br>Telephone: (713) 751-0025<br>tfibich@fhl-law.com |
| Matthew F. Pawa<br>Law Offices of Matthew F. Pawa, P.C.<br>1280 Centre St., Suite 230<br>Newton Centre, MA 02459<br>Telephone: (617) 641-9550<br>Mp@pawalaw.com | Robert L. Salim<br>Robert L. Salim Attorney at Law<br>P.O. Box 2069<br>Natchitoches, LA 71457-2069<br>Telephone: (318) 352-5999<br>robertsalim@cp-tel.net |
| Keith M. Jensen<br>Jensen, Belew & Gonzalez, PLLC<br>1024 North Main<br>Fort Worth, TX 76106<br>Telephone: (817) 334-0762<br>kj@kjensenlaw.com | Scott Allen<br>Cruse, Scott, Henderson & Allen, L.L.P.<br>2777 Allen Parkway, 7th Floor<br>Houston, Texas 77019<br>Telephone: (713) 650-6600<br>sallen@crusescott.com |
| Matthew E. Lundy<br>Lundy & Davis, LLP<br>333 North Sam Houston Parkway East<br>Suite 375<br>Houston, TX 77060<br>Telephone: (281) 272-0797<br>mlundy@lundydavis.com | E. Ashley Cranford<br>Whatley Drake & Kallas, LLC<br>2323 2nd Avenue North<br>Birmingham, AL 35203<br>Telephone: (205) 328-9576<br>ccf@whatleydrake.com |

| | |
|---|---|
| Robert L. Ciotti<br>Carlton Fields, P.A.<br>4221 W. Boy Scout Boulevard<br>Suite 1000<br>Tampa, FL 33607-5736<br>Telephone: (813) 223-7000<br>rciotti@carltonfields.com<br>**Attorney for Defendants AstraZeneca**<br>**Pharmaceuticals LP and AstraZeneca LP** | Gregory P. Forney<br>Shaffer Lombardo Shurin<br>911 Main Street, Suite 2000<br>Kansas City, MO 64105<br>Telephone: (816) 931-0500<br>gforney@sls-law.com<br>rbish@sls-law.com<br>**Attorney for Defendant,**<br>**Marguerite Devon French** |
| Randy Niemeyer<br>22442 Pike 309<br>Bowling Green, MO 63334-5209<br>**Pro Se** | Eric B. Milliken<br>3 Sir Barton Ct.<br>Newark, DE 19702<br>**Pro Se** |
| Catherine Solomon<br>3100 N.E. 83<br>Gladstone, MO 64119<br>**Pro Se** | Louisiana Wholesale Drug Co. Inc.<br>C/O Gayle R. White<br>Registered Agent<br>Highway 167N<br>Sunset, LA 70584<br>**Pro Se** |
| Aaron C. Johnson<br>Summers & Johnson<br>717 Thomas<br>Weston, MO 64098<br>Telephone: (816) 640-9940<br>firm@summersandjohnson.com | Robert A. Schwartz<br>Bailey & Galyen<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744<br>bschwartz@galyen.com |
| Todd S. Hageman<br>Simon and Passanante, PC<br>701 Market St., Suite 1450<br>St. Louis, MO 63101<br>Telephone: (314) 241-2929<br>thageman@spstl-law.com | Mark P. Robinson, Jr.<br>Robinson, Calcagnie & Robinson<br>620 Newport Center Drive, 7th Floor<br>Newport Beach, CA 92660<br>Telephone: (949) 720-1288<br>mrobinson@robinson-pilaw.com |
| Thomas F. Campion<br>Heidi E. Hilgendorff<br>Drinker Biddle & Reath, LLP<br>500 Campus Drive<br>Florham Park, New Jersey 07932-1047<br>Telephone: (973) 360-1100<br>Thomas.Campion@dbr.com<br>Heidi.Hilgendorff@dbr.com<br>**Attorneys for Defendants Janssen**<br>**Pharmaceutical Products and Johnson &**<br>**Johnson Co.** | Michael Davis<br>James Mizgala<br>Sidley Austin LLP<br>Bank One Plaza<br>One South Dearborn Street<br>Chicago, IL 60603<br>Telephone:  (312) 853-7731<br>mdavis@sidley.com<br>jmizgala@sidley.com<br>**Attorneys for Defendants AstraZeneca LP**<br>**and AstraZeneca Pharmaceuticals LP** |

| | |
|---|---|
| Elizabeth Raines<br>Baker, Sterchi, Cowden & Rice, LLC<br>2400 Pershing Road, Suite 500<br>Kansas City, MO 64108<br>Telephone: (816) 471-2121<br>raines@bscr-law.com | Timothy Reese Balducci<br>The Langston Law Firm, PA<br>P.O. Box 787<br>100 South Main Street<br>Booneville, MS 38829-0787<br>Telephone: (662) 728-3138<br>tbalducci@langstonlaw.com |
| Kenneth W. Bean<br>Sandberg, Phoenix & von Gontard<br>One City Centre<br>15th Floor<br>St. Louis, MO 63101-1880<br>Telephone: (314) 231-3332<br>kbean@spvg.com<br>***Attorney for Defendant Dr. Asif Habib*** | John Driscoll<br>Brown & Crouppen, PC<br>720 Olive St.<br>St. Louis, MO 63101<br>Telephone: (314) 421-0216<br>Jdriscoll@brownandcrouppen.com<br>asmith@brownandcrouppen.com<br>blape@brownandcrouppen.com |
| Aaron K. Dickey<br>Goldenberg and Heller, PC<br>P.O. Box 959<br>2227 S. State Road 157<br>Edwardsville, IL 62025<br>Telephone: (618) 650-7107<br>aaron@ghalaw.com | Matthew J. Hamilton<br>Pepper Hamilton<br>3000 Two Logan Square<br>18th & Arch Street<br>Philadelphia, PA 19103<br>Telephone: (215) 981-4000<br>hamiltonm@pepperlaw.com |
| Justin Witkin<br>Ken Smith<br>Aylstock, Witkin & Sasser, PLC<br>4400 Bayou Boulevard<br>Suite 58<br>Pensacola, FL 32503<br>Telephone: (850) 916-7450<br>Jwitkin@AWS-LAW.com<br>ablankenship@aws-law.com<br>ksmith@aws-law.com<br>noverholtz@aws-law.com | David P. Matthews<br>Lizy Santiago<br>Matthews & Associates<br>2905 Sackett Street<br>Houston, TX 77098<br>Telephone: (713) 222-8080<br>dmatthews@thematthewslawfirm.com<br>lsantiago@thematthewslawfirm.com<br>msalazar@thematthewslawfirm.com |
| Howard Nations<br>Lori A. Siler<br>Howard L. Nations Attorney At Law<br>4515 Yoakum Blvd.<br>Houston, TX 77006-5895<br>Telephone: (713) 807-8400<br>nations@howardnations.com | Mary B. Cotton<br>John D. Giddens, P.A.<br>226 North President Street<br>P.O. Box 22546<br>Jackson, MS 39225-2546<br>Telephone: (601) 355-2022<br>betsy@law-inc.com |

| | |
|---|---|
| Salvatore M. Machi<br>Ted Machi & Associates PC<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744 | Jona R. Hefner<br>3441 W. Memorial, Suite 4<br>Oklahoma City, OK 73134-7000<br>Telephone: (405) 286-3000<br>attorneyokc@hotmail.com |
| David Dickens<br>Miller & Associates<br>105 North Alfred Street<br>Alexandria, VA  22314-3010<br>(703) 519-8080<br>ddickens@doctoratlaw.com | Pete Schneider<br>Grady, Schneider & Newman, L.L.P.<br>801 Congress, 4th Floor<br>Houston, TX  77002<br>(713) 228-2200<br>pschneider@gsnlaw.com |
| Fred T. Magaziner<br>Marjorie Shiekman<br>A. Elizabeth Balakhani<br>Shane T. Prince<br>Eben S. Flaster<br>DECHERT LLP<br>Cira Centre<br>2929 Arch Street<br>Philadelphia, PA  19103<br>(215) 994-4000<br>fred.magaziner@dechert.com<br>shane.prince@dechert.com<br>marjorie.shiekman@dechert.com<br>eben.flaster@dechert.com<br>elizabeth.balakhani@dechert.com | Lawrence J. Gornick<br>William A. Levin<br>Dennis J. Canty<br>Levin Simes Kaiser & Gornick LLP<br>44 Montgomery Street, 36th Floor<br>San Francisco, CA 94104<br>Telephone: (415) 646-7160<br>lgornick@lskg-law.com<br>dcanty@lskg-law.com<br>lsimes@levins-law.com<br>jkaiser@lskg-law.com<br>echarley@lskg-law.com<br>ddecarli@lskg-law.com<br>bsund@lskg-law.com<br>astavrakaras@lskg-law.com |
| Scott Burdine<br>Hagans Burdine Montgomery<br>Rustay & Winchester, P.C.<br>3200 Travis, Fourth Floor<br>Houston, TX  77006<br>Telephone:  (713) 222-2700<br>sburdine@hagans-law.com | Lowell Finson<br>Phillips & Associates<br>3030 North 3rd Street<br>Suite 1100<br>Phoenix, AZ 85012<br>(602) 258-8900, ext. 295<br>lowellf@phillipslaw.ws |
| Gale D. Pearson<br>Stephen J. Randall<br>Pearson, Randall & Schumacher, P.A.<br>Fifth Street Towers, Suite 1025<br>100 South 5th Street<br>Minneapolis, MN 55402<br>(612) 767-7500<br>attorneys@outtech.com | Robert H. Shultz<br>Heyl, Royster<br>103 West Vandalia Street<br>P.O. Box 467<br>Edwardsville, IL 62025<br>(618) 656-4646<br>rshultz@hrva.com<br>bwallace@hrva.com |

| | |
|---|---|
| Ellen R. Serbin<br>Perona, Langer, Beck, Lalande & Serbin<br>300 San Antonio Drive<br>Long Beach, CA 90807-0948<br>(562) 426-6155<br>davidhwang@plblaw.com | Scott Armstrong<br>1719 West Main Street<br>Suite 201<br>Rapid City, SD 57702<br>(605) 399-3994<br>scottarmstrong1235@eathlink.net |
| Linda S. Svitak<br>Faegre & Benson, LLP<br>90 South 7th Street, Suite 2200<br>Minneapolis, MN 55402-3901<br>(612) 766-7000<br>lsvitak@faegre.com<br>wjohnson@faegre.com | James J. Freebery<br>McCarter & English, LLP<br>919 N. Market Street, 18th Floor<br>Wilmington, DE 19801<br>(973) 622-4444<br>jfreebery@mccarter.com<br>tpearson@mccarter.com |
| Richard D. Hailey<br>Ramey & Hailey<br>3891 Eagle Creek Parkway<br>Suite C<br>Indianapolis, IN<br>(317) 299-0400<br>rhailey@sprynet.com | B. Andrew List<br>Clark, Perdue, Arnold & Scott<br>471 East Broad Street, Suite 1400<br>Columbus, OH 43215<br>(614) 469-1400<br>alist@cpaslaw.com<br>lcollins@cpaslaw.com |