UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re Seroquel Products Liability Litigation
MDL Docket No. 1769

This Document Relates to All Cases

DECLARATION OF ALFRED PAULSON IN SUPPORT
OF ASTRAZENECA'S RESPONSE TO PLAINTIFFS' MOTION
REGARDING THE CONFIDENTIALITY OF CERTAIN CASE-SPECIFIC
DISCOVERY DISCLOSURES AND RELATED MATERIALS

My name is Alfred Paulson, and I declare:

1. I am over the age of eighteen, and am currently employed by AstraZeneca LP ("AstraZeneca") as National Sales Director for the CNS Specialty Care Team and Institutional Sales Specialists, which includes responsibility for the company's atypical antipsychotic medication, Seroquel. I am familiar with the matters stated herein, based on my personal knowledge and experience at AstraZeneca, and could and would testify competently thereto under oath.

2. It is my understanding that plaintiffs have challenged AstraZeneca's designation as "confidential" pursuant to the Protective Order the following categories of AstraZeneca documents or information:

- Seroquel "call note" information related to the plaintiff's prescribing physician;

- certain information and data purchased by AstraZeneca from IMS Health, Inc., pursuant to a contractual arrangement, that concerns the plaintiffs' prescribing physicians and Seroquel and atypical antipsychotic market prescription data; and

- documents containing "account payable" information reflecting payments, if any, by AstraZeneca to the plaintiffs' prescribing physicians.

It is my understanding that AstraZeneca has provided plaintiffs with access in discovery to these categories of information and related documentation, but subject to its designation of these discovery materials as "confidential" so as to prevent access to these competitively sensitive materials by AstraZeneca's competitors.

3. Seroquel is an FDA-approved medication that is currently marketed by AstraZeneca. It competes against other atypical antipsychotic medications, such as Eli Lilly & Co.'s "Zyprexa," Janssen Pharmaeutica's "Risperdal," and Bristol Meyer Squibb's "Abilify." Like other industries, the pharmaceutical industry is intensely competitive. The materials at issue here involve competitively sensitive information that AstraZeneca maintains on a private and proprietary basis. It is my understanding that AstraZeneca's competitors in the market for atypical antipsychotic medications have comparable internal data and information, which they, like AstraZeneca, maintain on a private and proprietary basis. Widespread public disclosure of these materials, including to AstraZeneca's competitors in the atypical antipsychotic drug market, would be unfair and put the company at a distinct competitive disadvantage – particularly when AstraZeneca does not simultaneously obtain access to the comparable proprietary information kept and maintained by its competitors.

## Call Note Information

4. "Call note" information reflects contacts by AstraZeneca sales personnel with prescribing physicians. In the pharmaceutical industry, the term "call notes" is commonly used to refer to certain documents or log entries prepared internally by sales employees of pharmaceutical companies reflecting the mental impressions of the company's sales employees about their periodic in-person discussions with physicians

2

and other healthcare professionals. In order to successfully market its products, a pharmaceutical company necessarily has to understand the particular needs of prescribing physicians and other healthcare providers, including particularized knowledge about how they practice medicine, in order to determine how the company's particular medication may be able to meet those physicians' needs.

5. In the course of my work at AstraZeneca, I have had occasion to review the company's call note materials related to Seroquel. Like other call-note information, AstraZeneca's Seroquel call notes identify the dates and chronicle the history of prior private sales calls with physicians. AstraZeneca's Seroquel call notes also reflect the contents of these private sales call interaction, including core sales messages created as part of AstraZeneca's strategic marketing plan. AstraZeneca's Seroquel call notes include, among other things, descriptions by company sales personnel of information reflecting the individual preferences, opinions, and views of each physician or healthcare provider about Seroquel as compared to the products of competitors.

6. The private proprietary information contained in Seroquel call notes and call capture systems is used by AstraZeneca for a variety of reasons, including among other things, to facilitate internal business decisions at several different levels. Call notes describe the sales employee's experience with each physician, including notes of discussions with that physician and the sales person's thoughts and ideas related to successfully detailing that physician. They also reveal the Seroquel product message that the sales person focused on during each encounter with the physician. They typically contain references to such things as particular features of Seroquel that the physician likes or dislikes, particular messages related to Seroquel that the physician thought were

3

persuasive, physicians' comments regarding competitors' products or even sales persons from competing companies, and explanations as to the physician's practice and prescribing habits that are relevant to detailing him or her. This information is critically important to the company in order to remain competitive.

7. In my 23 years of pharmaceutical working experience, I have never seen the call note information of a competitor. Moreover, in the pharmaceutical industry, it is generally recognized that each company's own internal call-note information constitutes private proprietary information that is not shared with competitors.

8. Like its competitors with respect to their comparable call notes for competing atypical antipsychotic medications, AstraZeneca has consistently maintained its Seroquel call notes on a strictly private, proprietary basis. To my knowledge, AstraZeneca has never provided its call notes information to competitors, including Seroquel call-note information. Indeed, it would be highly extraordinary for any competitor even to request to see another company's internal call notes for their competing medications, and I am certain that any such request would be denied by AstraZeneca as well as its competitors.

9. AstraZeneca's call notes information is collected and maintained by the company only through the expenditure of a substantial amount of time, energy and resources by AstraZeneca and its employees. Such information is created and maintained by AstraZeneca for competitively sensitive reasons, including to enhance the ability of AstraZeneca sales representatives to market Seroquel in an effective manner. For instance, these proprietary materials are generally reviewed by AstraZeneca sales representatives before making further calls on a particular physician, or others in their

practice. Because the materials reflect the reasons that the physician has said that he or she may have preferred a particular antipsychotic medication in the past, review of such materials provides valuable and instructive insight by informing future sales calls on that physician.

10. As noted, AstraZeneca's Seroquel call notes are maintained within the company on a strictly private, proprietary basis. All AstraZeneca employees are subject to compliance policies which require them to keep proprietary information – including the information found in Seroquel call notes – confidential and strictly within the company. The call note information is never shared with competitors and is not shared with anyone outside of the company absent appropriate confidentiality provisions. Even within AstraZeneca, the information contained in call notes, including Seroquel call notes, is shared within the company only with authorized personnel on an as-needed basis. AstraZeneca also maintains its call notes information in a call-notes database, which is a private proprietary database owned by AstraZeneca and used only within AstraZeneca on a confidential basis.

11. Public disclosure of AstraZeneca's Seroquel call notes and related documentation, including access to such materials by the company's competitors, would put AstraZeneca at a competitive and commercial disadvantage. Indeed, because the information therein reflects years of competitive intelligence about how AstraZeneca should best to approach physicians and their offices in sales calls, competitor access to such private materials would allow them to "free ride" on AstraZeneca's years of efforts to their own advantage. In addition, the call notes reflect private internal insights about the effectiveness of AstraZeneca's strategies in marketing Seroquel to physicians;

competitor access to such private competitively sensitive information would thus necessarily benefit competitors and disadvantage AstraZeneca. Moreover, because the call notes not only reflect sales-call frequency but also which physicians and offices are important to AstraZeneca's strategic efforts to increase Seroquel's competitive market share, access to these confidential materials would enable competitors to capitalize on these insights and re-adjust their competitive sales call efforts accordingly.

### IMS Prescriber-Level Data

12. AstraZeneca obtains for a fee prescribing information for specific physicians from IMS Health, Inc. ("IMS"). IMS gathers pharmaceutical information from several sources, such as physicians, pharmacies, and retailers. This data is compiled and organized to permit IMS to offer certain services to pharmaceutical manufacturers.

13. AstraZeneca purchases one of IMS's services in the form of monthly prescription data for Seroquel and the atypical antipsychotic market for physicians. AstraZeneca purchases this data from IMS pursuant to contractual terms that require such information to be maintained on a confidential basis. This information about a physician's prescribing habits assists a sales person in targeting and detailing a particular physician. It is treated within AstraZeneca as confidential and non-public proprietary commercial information, and is not publicly disseminated. Moreover, AstraZeneca uses this information exclusively for internal purposes related to the company's business strategy and competition in the marketplace.

14. Additionally, under its contractual arrangement with IMS, AstraZeneca is contractually bound to prevent the disclosure of this information and any such disclosure would place it in violation of its contractual agreement. AstraZeneca has appropriate safeguards in place so that dissemination of this information does not occur to anyone

without prior IMS consent. For example, I am informed that, in this litigation, the company was first required to, and did, obtain IMS's prior consent before AstraZeneca could provide plaintiffs with access to these materials in discovery, subject to AstraZeneca's designation of these materials as "confidential" under the Protective Order.

15. Under the circumstances, public disclosure of the IMS information at issue held by AstraZeneca on a confidential basis – including open access to such materials by AstraZeneca's competitors – would be unfair and would put AstraZeneca at a competitive and commercial disadvantage. Indeed, AstraZeneca has invested a significant amount of money to purchase this data from IMS, which the company then uses for its own internal purposes. To the extent AstraZeneca's competitors wish to obtain similar or other data, they can (and do) pay IMS for its services. If these materials were made publicly available, however, AstraZeneca's competitors would have ready access to IMS's proprietary data without any requirement that they pay IMS for access to such data.

### Account Payable Information

16. It is my understanding that plaintiffs have also sought to challenge the confidential status of certain "account payable" information, which reflects payments, if any, made by AstraZeneca to the plaintiffs' prescribing physicians or other healthcare providers at issue under various contractual relationships.

17. The information at issue is related to whether, why, and to what extent the company may have made payments to particular prescribing physicians. The nature and extent of any payments made by AstraZeneca to particular physicians is treated within the company as private corporate financial information, which reflects payments under

written or oral contracts with those physicians. AstraZeneca treats and maintains such account-payable information as confidential proprietary information within the company as to which competitors are strictly denied access. Indeed, I am informed and believe that AstraZeneca has maintained that such information constitutes proprietary commercial information that is entitled to protection as involving trade secrets. Accordingly, the company makes every effort to prevent the disclosure of such information to competitors or others outside of AstraZeneca.

18. AstraZeneca does not have access to comparable proprietary information about the nature and extent of any payments made to physicians by its competitors. Affording AstraZeneca's competitors access to this competitively sensitive information, while AstraZeneca continues to lack access to comparable information from its competitors, would put the company at a competitive disadvantage. For instance, knowledge of the amounts paid to physicians who serve as speakers and advisors to AstraZeneca would be of commercial importance to our competitors – both in terms of competing for the services of the identified physicians as speakers and advisors, and in evaluating AstraZeneca's efforts and financial commitments to speaker programs.

I declare under penalty of perjury under the laws of the United States and the laws of the state of Florida that the foregoing is true and correct to the best of my knowledge.

Dated: November 7, 2007

*[signature]*
Alfred Paulson
National Sales Director
AstraZeneca LP