UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE: Seroquel Products  Case No. 6:06-md-1769-Orl-22DAB
Liability Litigation

MDL DOCKET NO. 1769

THIS DOCUMENT RELATES TO ALL CASES

**MDL PLAINTIFFS' REPLY BRIEF SUPPORTING ITS MOTION FOR AN ORDER DEEMING THE PLAINTIFFS' PRIOR MOTION FOR SANCTIONS AS HAVING BEEN FILED IN CERTAIN CASES**

**I.   INTRODUCTION**

In its August 21, 2007 Order with regard to Plaintiffs' Motion for Sanctions (Doc. No. 256), the Court held that "AZ's failure to cooperate in the production of its databases and its failure to timely and systematically produce electronic discovery associated with eighty AZ 'custodians' in any manageable, searchable form" was sanctionable conduct, finding AZ had been "purposefully sluggish in making effective production to Plaintiffs." Doc. No. 393 at 2, 26-28.  In doing so, the Court acknowledged that, given the Court's tight mandate in the case, AZ's discovery violations were benefiting AZ "by limiting the time available to Plaintiffs to review information and follow up." S*ee Id.* at 26.  The Court, however, reserved ruling on appropriate sanctions pending further discovery and "after Plaintiffs have had the opportunity to office evidence of the specific prejudice or added costs the sanctionable conduct has occurred." S*ee Id.* at 393 at 2.

On October 19, 2007 Plaintiffs filed a procedural motion to request that Plaintiffs' prior Motion for Sanctions (Doc. No. 256) be deemed filed in actions for specific cases that have been selected in the August through December groups to the extent that the Motion for Sanctions sought a striking of the Learned Intermediary defense. *See* Doc. No. 591 at 1.  This procedural

motion was in no way intended to once again revive the issue of sanctions with the Court. The Court and Defendants are fully aware that the sanctionable conduct, which is still ongoing by Defendants regarding discovery issues, will not fully be realized until Special Master Ball reports his findings to the Court. However, on October 25, 2007, AZ filed a seventeen page "opposition" to Plaintiff's motion (*see* Doc. No. 591), which went far beyond Plaintiffs procedural request that the Court formalize the case-specific relief that was sought in its original Motion for Sanctions, now that particular cases had been identified. AZ has taken this opportunity to raise issues that are not ripe for discussion and argument.

AZ has put the Plaintiffs in a position to defend a striking of the Learned Intermediary defense as a sanction when the Court has yet to hear the complete report from Special Master Ball, which will indicate in detail, the past and present misconduct of AZ. Special Master Ball submitted his first report regarding the conduct of AZ to the Court (Doc No. 613), which was followed up in further detail at the most recent Status Conference on October 30, 2007. At this Conference, Honorable Magistrate Judge Baker noted that he was "mystified" as to why this process has been so difficult for AZ to produce large document files and why we are hearing the same answers as over a year ago from the Defendants. Magistrate Baker went on to say,

```
13 Based on what I just heard, here's what I'm thinking,
14 that I'll give you two more weeks to figure out when
15 you're going to finish this. And we will have another
16 conference in the middle of November and set a date that
17 will be the drop-dead date that AstraZeneca will be able
18 to certify that it's production of previously requested
19 and proffered documents is substantially complete and then
20 trigger the other deadlines off of that which will include
21 a schedule for completing the consideration of the
22 sanctions motion that sort of brought this to a head in
23 the summer.
24 And obviously I'll want the input from Mr. Ball about
25 that and plaintiffs' specific consideration as to what
1  time they need to analyze the documents and take corporate
```

```
2  depositions and get their experts ready.
3  And I'll tell you, frankly, that in doing that, I'm
4  putting you and me in the path of potential wrath from the
5  district judge. So keep that in mind.
```

Transcript of Status Conference, October 30, 2007, at 20:13-25 and at 21:1-5.

Due to the numerous new issues raised in AZ's opposition (Doc No. 609) to Plaintiffs' procedural motion (Doc No. 591), in this Reply Brief Plaintiffs are forced to explain several inaccuracies raised in AZ's opposition papers. Contrary to AZ's assertions, AZ was on notice that the primary relief Plaintiffs would be seeking in response to AZ's utterly inadequate and delayed discovery productions would be the striking of AZ's affirmative defenses in specific cases, once these cases had been identified, particularly related to the Learned Intermediary doctrine defense.  Moreover, contrary to AZ's contention, the striking of the Learned Intermediary doctrine defense is both "just" and  "directly related to" AZ's grievous discovery conduct under the Fifth Amendment Due Process standards for sanctions as discussed in *Serra Chevrolet, Inc. v.General Motors Corp.*, 446 F.3d 1137, 1151-52 (11th Cir. 2006).

Plaintiffs respectfully contend that given AZ's lack of response to this Court's directives on many prior occasions, this Court should strike AZ's Learned Intermediary doctrine affirmative defense in specific cases that have been selected in the August, September, October, November and December groups as described in the MDL Plaintiffs' Motion and Combined Memorandum dated October 19, 2007 (Doc. No. 591).

## II.     BACKGROUND

### A.     AZ Was On Notice That Plaintiffs Were Seeking Discovery Related To The Learned Intermediary Doctrine And Would Be Seeking Sanctions Related To AZ's Failure To Timely Produce Documents Related to This Issue

In its opposition to Plaintiffs' instant motion, AZ for the first time claimed that striking the Learned Intermediary doctrine defense would be inappropriate for a number of reasons,

3

including that the Learned Intermediary doctrine would be inappropriate given that Plaintiffs' original Motion for Sanctions purportedly did not mention the Learned Intermediary doctrine. Furthermore, the Defendants assert that striking of the Learned Intermediary defense was "unrelated" to the "actual problems created by the discovery conduct at issue . . .[and] disproportionate to any demonstrated hardship to plaintiffs." S*ee* Doc. No. 609 at 2. AZ also noted that this Court had ordered that "no imposed sanction [would] have anything to do with case-specific discovery." *Id*.

Defendants are correct in that Plaintiffs' Sanction Motion (Doc. No. 256) does not mention the words "Learned Intermediary" and that this Court noted that if sanctions were needed, they would not have anything to do with the case-specific discovery program. *Id*. However, Defendants failed to mention that striking of the Learned Intermediary defense was raised several times before the Court and Defendants at numerous status conferences. Moreover, Defendants failed to cite this Court's complete thought on the sanctions matter. The Court went on to say that, "**It's going to have to do with the information <u>that you need to prepare your case.</u> And if there are sanctions needed, there will be sanctions related to that, not other matters**."[1]

Additionally, transcript excerpts of the July and August Conferences make it clear that Plaintiffs' motion is not procedurally deficient. At the very outset of the Sanctions hearing itself, Mr. Gornick specifically noted:

```
5 So with the data we do have, we don't have what the
6 Sedona Principles say we should have.
7 And because of all of this, Your Honor, and I don't
8 know if this is the time you want to hear about what we
9 think we need, but we think we need some orders that
10 require immediate production of documents, immediate
11 production of data, and then we need sanctions to protect
```

---

[1] Transcript of July 5, 2007 Status Conference at 6:17-20

4

12 us from what's coming up.
13 We don't have the ability, Your Honor, at this time
14 to adequately prepare for the doctor depositions next
15 month and in September which are going to tee up the
16 affirmative defense of learned intermediary, so we think
17 the only fair solution is to strike that defense for all
18 those cases on the August and September discovery
19 timeline.
20 We think a related -- a sanction that might get them
21 moving is if that -- if you will order them to produce
22 what we need to produce, and I have the list, and I think
23 we put it in our last submission. If they don't do those
24 things within 30 days, learned intermediary goes away for
25 all the October cases, et cetera, et cetera. We will go
1 month by month.

Transcript of July 26, 2007 Sanctions Hearing at 25:5-25 and at 26:1.

    Mr. Gornick once again gave notice to AZ regarding the Learned Intermediary defense sanction as well as how this has affected the Plaintiffs' ability to conduct meaningful and complete depositions.

13 We think there should be issues sanctions. We, right
14 now, are taking depositions of doctors that the defendants
15 requested. The reason the defendants want those are for
16 learned intermediary.
17 We think that for each case where a doctor deposition
18 proceeds before AstraZeneca has finished producing
19 documents to us, the learned intermediary affirmative
20 defense should be struck, because we are not in a fair
21 position to take those depositions, because we don't have
22 a vast amount of information that could be and probably is
23 relevant to disproving or undermining the learned
24 intermediary defense in those individual cases.
25 We think that the preemption affirmative defense
1 should be stricken, because we're in a position we should
2 not be in. If we have to oppose learned intermediaries,
3 summary judgment motions, and we are in a position of
4 opposing a preemption summary judgment motion right now,
5 it might be a 12B6 motion, before we've had the
6 opportunity to take the relevant discovery on those
7 issues, our due process rights have been violated.
8 So we don't want to ask for the case specific
9 discovery program to be derailed. Our group is geared up.

5

10 We're ready to go. But at the same time, we can't stand
11 by and without doing anything allow or clients' due
12 process rights to be violated. So we would ask for
13 that -- those issue sanctions to be imposed.

Transcript of August 22, 2007 Status Conference at 40:13-25 and at 1:13.

Thus, AZ clearly had notice as to the Learned Intermediary defense sanction as well as the causal connection between the striking of this affirmative defense and the prejudice that has been placed on Plaintiffs. Doctor depositions are extremely crucial in pharmaceutical cases. Defendants should not be permitted to raise the Learned Intermediary defense, while their ongoing lack of complete disclosure in a timely and usable manner, as ordered by this Court in CMO 2 (Doc. No. 129), assists them in raising this affirmative defense.

### III.  LEGAL ARGUMENT

#### A.  Rule 37 Provides The Court With Broad Discretion To Determine The Appropriate Sanctions For A Party's Failure To Comply With Discovery-Related Court Orders

Pursuant to the plain language of Federal Rule of Civil Procedure 37, courts have broad discretion to fashion sanctions for violation of discovery orders, even on *sua sponte* basis when necessary to ensure compliance with a case management program. *See* Fed. R. Civ. P. 37(b)(2)(2007); MANUAL FOR COMPLEX LITIGATION §10.151 (Fourth Ed. 2004). Rule 37 sanctions "are intended to prevent unfair prejudice to the litigants and insure the integrity of the discovery process." *Gratton v. Great American Communication,* 178 F.3d 1373, 1374 (11th Cir. 1999). *See also Qantum Communications Corp. v. Star*, 473 F.Supp.2d 1249, 1278 (S.D.Fla. 2007) (noting threat to integrity of courts which cannot otherwise command respect 'if they cannot maintain a level playing field amongst participants"); *United States v. One 1999 Forty-Seven Foot Fountain Motor Vessel,* 240 F.R.D. 695, 698 n. 2 (S.D. Fla. 2007) (while sanctions should be a last resort, even the "most severe" sanctions are available to the district court in

appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such sanction, but to deter those who might be tempted to such conduct).  Arguably such sanctions are even more warranted in multidistrict litigation where "long discovery delays . . . . tend to undermine the efficiencies sought to be achieved by 42 U.S.C. §1407."  *In re Orthopedic Bone Screw Liability Litigation*. MDL 1014, 1997 WL 805219,  at *4 (E.D. Pa. December 11, 1997) ("primary goal in these pretrial proceedings is to complete the discovery process in a timely and efficient manner.").

While this Court has held  that AZ cannot complain it was "not on sufficient notice of the discovery conduct that Plaintiffs were challenging and the possibility if sanctions if it were not resolved," *see* Doc. No. 393  at 12, contrary to AZ's contention, no requirement exists that some lesser sanctions be imposed before AZ's Learned Intermediary doctrine defense is barred.  *See Profile Gear Corp. v. Foundry Allied Industries, Inc.*, 937 F.2d 351, 354 (7th Cir. 1991) (noting that there is no requirement that district court "fire a warning shot" fire to imposing sanctions) (internal quotation marks and citation omitted); *Patterson v. Cola-Cola Bottling Co. Cairo-Sikeston, Inc.,* 852 F.2d 280, 284-45  (7th Cir. 1988) (same). To require otherwise would be "inimical to the administration of justice for it would encourage, not discourage, highly sophisticated litigants and lawyers to play games with the Court because there would be little or no risk involved with such a gamble."  C*hudasama v. Mazda Motor Corp.*, No. 4:93-CV-61, 1995 WL 641984, at *3 (M.D. Ga. June 26, 1995), *overruled on appeal,* 123 F.3d 1353 (11th Cir. 1991); *United States v. One 1999 Forty-Seven Foot Fountain Motor Vessel*, 240 F.R.D. at 699 ("It seems simple really: When a court enters an order, that order should be followed - it should not be viewed as an advisory opinion that one chooses to follow or not at his or her own whim or convenience.").

In sum, AZ's continued "purposeful sluggishness," See Doc. No. 393 at 26-28, in face of this Court's prior Orders suggests that there is no reasonable expectation that any lesser sanctions would have the necessary effect, especially as related to the crucial issue of the Learned Intermediary doctrine. See, e.g. *Qantum Communications Corp. v. Star Broadcasting, Inc.*, 473 F.Supp.2d at 1278 (whether the defaulting parties conduct "relate[s] to . . . the pivotal or "linchpin" issue in this case, [is] a factor which militates heavily in favor of the severe sanction of default") (granting default judgment when defendants' conduct "hampered the ability of the [p]laintiff to present its claim on the central issue of the case"). AZ has made clear that from its general course of conduct regarding document production throughout this litigation and failure to meet discovery commitments is that it does not intend to comply with this Court's discovery orders. In sum, the striking of an affirmative defense as a discovery sanction is warranted and regularly ordered when, as here, the failure to comply with discovery orders is purposeful and in bad faith and significantly impairs the opposing party's trial preparation. See *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542-43 (11th Cir. 1993), *cert. denied,* 510 U.S. 863, 114 S.Ct 181 (1993) (default judgment sanction when defendant refused to turn over materials related to testing, design, and marketing); *Jaffee v. Grant,* 793 F.2d 1182, 1189 (11th Cir. 1986), cert. denied 480 U.S. 923, 107 S.Ct. 1506 (U.S. 1987) (striking of answer and counter claims as sanctions). If AZ did not feel it could respond to Plaintiffs' discovery requests, the appropriate action was to go back to this Court and seek to have the Court's discovery order changed. See, e.g. *United States v. One 1999 Forty-Seven Foot Fountain Motor Vessel*, 240 F.R.D. at 699 (noting failure of party to seek reversal or modification of discovery order as factor in striking claim and answer of party). In sum, for all of the above reasons, Plaintiffs respectfully content that it would be well within the Court's discretion to strike AZ's Learned Intermediary doctrine

defense.

      **B.**      **The Striking of AZ's Learned Intermediary Doctrine Would Not Violate The Due Process Clause of the Fifth Amendment As Such Sanction Would Be "Just" and "Particularly Related" To The Discovery Violations.**

The broad discretion of the district court to impose sanctions in the management of its affairs is governed by the Due Process Clause of the Fifth Amendment, which has been interpreted to impose two requirements before sanctions can be imposed: the sanction must be "just" and must be "specifically related to the particular 'claim' which was at issue in the order to provide discovery." *Serra Chevrolet, Inc. v. General Motors Corp.*, 446 F.3d 1137, 1150 (11th Cir. 2006) (citing *Insurance Corp. of Ireland* v. *Compagnies des Bauxites de Guinee,*, 456 U.S. 694, 700, 102 S.Ct. 2099, 2106-07 (1982)). In this respect, worth noting is that the *Serra* Court did not find that the sought striking of affirmative defenses and other sanctions were unjust and out of proportion to the harm caused to Serra by the production delay. *See* 446 F.3d at 1152. Instead, Eleventh Circuit's reasoning was that a remand was warranted solely because the district court had not articulated any rationale for a $50,000 per day sanction for 98 days of contempt, which the court had reduced to 14 days of contempt, again without any explanation. Thus the Eleventh Circuit "could not evaluate whether sanctions imposed were "just." *Id.* In addition, related to the issue of the striking of affirmative defenses, the Eleventh Circuit contrasted the situation before it where the defenses of res judicata, issue preclusion and judicial estoppel had *no* relationship to the alleged discovery abuse, with the Supreme Court's *Insurance Corp. of Ireland* case, in which the Court disallowed the defendants from asserting a personal jurisdiction defense where the failure of the defendants to provide discovery prevented the plaintiff from proving the extent of contracts between the defendants and the forum state. *See Serra*, 446 F.3d at 1152, discussing *Insurance Corp. of Ireland*, U.S. at 709, 102 S.Ct at 2107. In doing so, the

9

*Serra* court emphasized that the *Insurance Corp. of Ireland* sanction was specifically related "because the imposition of the sanction took as established the facts that plaintiff was seeking to establish through the discovery." *Id.* (internal quotation marks and citations omitted).

Here, similar to *Insurance Corp. of Ireland,* in that there can be no question that AZ's dilatory tactics and lack of adequate discovery production has resulted in a situation where Plaintiffs cannot prepare for the crucial Learned Intermediary doctrine issue in the physician depositions without the documents sought in discovery. Contrary to AZ's contention, the remedy of striking AZ's Learned Intermediary doctrine defense in this limited number of cases is certainly specifically related to AZ's conduct and be the only appropriate remedy for AZ's purposeful lack of cooperation with the discovery process.

## IV.   CONCLUSION

"At some point patience is not a virtue. Justice demands an element of decisiveness." *Malautea v. Suzuki Motor Co., Ltd.*, 143 F.R.D. 362, aff'd 987 F.2d 1536 (11th Cir.), *cert. denied* 510 U.S. 863, 114 S.Ct 181 (1993). For all of the above stated reasons Plaintiffs respectfully contend that its Motion for Sanctions (Doc. No. 256) striking the Learned Intermediary doctrine in the designated August to December cases as described in its October 19, 2007 Motion (Doc. No. 591) should be granted.

Respectfully submitted on this 7th day of November, 2007.

/s/ Paul J. Pennock
Paul J. Pennock
Plaintiffs' Co-Lead Counsel
WEITZ & LUXENBERG, P.C.
180 Maiden Lane, 17th Floor
New York, NY 10038
Telephone:  (212) 558-5500
Facsimile:   (212) 363-2721
E-mail:  ppennock@weitzlux.com

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on this 7th day of November, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a Notice of Electronic Filing to the counsel listed on the attached Service List.

                                        /s/ Paul J. Pennock
                                        Paul J. Pennock,
                                        Plaintiffs Co-Lead Counsel
                                        WEITZ & LUXENBERG, P.C.
                                        180 Maiden Lane
                                        New York, New York 10038
                                        Telephone: (212) 558-5500
                                        Facsimile: (212) 363-2721
                                        E-mail: ppennock@weitzlux.com