**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| IN RE:<br><br>SEROQUEL PRODUCTS<br>LIABILITY LITIGATION | IN RE:<br>MDL NO. 1769<br>CASE PENDING IN THE<br>MIDDLE DISTRICT OF<br>FLORIDA, ORLANDO<br>DIVISION |

**PAREXEL'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER REGARDING PLAINTIFFS' SUBPOENA DUCES TECUM**

This memorandum of law is submitted on behalf of non-party Parexel MMS ("Parexel") in support of its motion for a protective order under Fed. R. Civ. P. 45 and 26 to quash or, alternatively, to modify a subpoena served by plaintiffs in the above-captioned action.

Parexel does not have a dog in this fight. It is an innocent third party, at best a witness to a fight between the plaintiffs and AstraZenaeca over the drug Seroquel. Under these circumstances, Parexel should not have to spend $150,000 or more to comply with an overbroad subpoena by producing seven years' worth of documents and testifying at a deposition in a case in which it has not been sued and has nothing to gain. Accordingly, the subpoena should be quashed, or, in the alternative, narrowed to a reasonable scope with an order that plaintiffs pay Parexel's its reasonable costs incurred in responding to the subpoena.

As explained in Parexel's motion, the subpoena asks Parexel to produce every document it has that mentions or refers to the drug Seroquel. Given that Parexel and AstraZeneca have had a business relationship involving Seroquel for seven years, and that about 20 Parexel employees

have worked on Seroquel projects, the plaintiffs' demand for *everything* on Seroquel is overbroad and burdensome on its face. Surely, plaintiffs' legitimate discovery rights do not extend to gaining possession of every document Parexel has that mentions or refers to Seroquel. Morover, it is unlikely that plaintiffs could or would examine every document.

Plaintiffs and Parexel, through their respective counsel, have attempted to narrow the scope of the subpoena, and they plan to continue their discussions on the subject in the hope of reaching a resolution that would eliminate the need for the Court to decide this motion or a motion to compel by the plaintiffs. If the matter, however, cannot be resolved, then the Court is respectfully requested to grant Parexel the relief that it requests.

In *Travelers Indemnity Co. v. The Metropolitan Life Ins., Co.,* 228 F.R.D. 111, 115 (D. Conn.), Judge Smith quashed an overbroad and burdensome subpoena on the grounds that "[t]he burden of production were placed on [deponent], as an non-party, is unreasonable." Judge Smith identified the factors that should be considered in weighing the burden to the subpoenaed party against the value of the information to the serving party. "Whether a subpoena imposes an 'undue burden' depends upon 'such factors as relevance, the need of the party for the documents, the breath of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" 288 F.R.D. at 113, *quoting The United States v. Int'l Bus. Mach. Corp.,* 83 F.R.D. 97, 104 (S.D.N.Y. 1979). All these factors militate in favor of quashing the overbroad subpoena served Parexel. The over breadth of the subpoena ensures that Parexel's employees will be put to the burden and expense of locating documents which are in no way related to the issues in the underlying litigation. "'Rule 45 does not permit a party to use a subpoena to obtain information from non-parties that is unrelated to the action in

which the Rule 45 subpoena is issued.'" *Azevedo v. Club Getaway, Inc.,* 2007 WL 1732585 * 1 (D. Conn. 2007)(Smith, J.), *quoting Collins v. Experian Credit Reporting, Svc.,* 2006 WL 2850411 * 1 (D. Conn. 2006)(Katz, J.). To the extent there are relevant documents, presumably, those documents are available from defendant from the underlying action.

As supported by the affidavit of Claudia Piano, with respect to the financial burden and the burden imposed on Parexel's business, it is anticipated that it would take the 20 employees who worked on Seroquel 300 hours, at a time value in excess of $75,000, just to search for, locate, and duplicate the documents requested. There would also be the need for an additional 100 billable hours from a project manager (adding $25,000 in costs) and the need for Parexel's Client Finance Department to collect financial information for almost seven years (adding another $25,000). In addition to these costs of $125,000, Parexel would need to incur attorneys' fees and costs of complying with the subpoena, which could reach or exceed $25,000, because the subpoena demands production of confidential proprietary information, and could very well include documents protected by the attorney-client privilege and the attorney work product doctrine, and because the subpoena seeks the deposition testimony of Parexel as well.

Under Fed. R. Civ. P. 26 (c), the Court can, as a matter of discretion, grant a protective order "for good cause shown," and good cause can be a need to protect a person from "undue burden or expense." As stated in its motion and supporting affidavit, Parexel's costs of looking for, reviewing, selecting, coordinating, and producing all documents responsive to the subpoena could exceed $125,000, and its legal costs associated with the subpoena and the deposition could be another $25,000.

The Tenth Circuit's decision in *In re Coordinated Proceedings in Petroleum Products Antitrust Litigation*, 669 F. 2d 620 (10th Cir. 1982), supports Parexel's position that if it has to spend time and money responding to the subpoena, then plaintiffs should pay for it. In *Coordinated Pretrial Proceedings*, the State of Florida was the plaintiff in an antitrust action against several major oil companies, and Florida's case was consolidated with similar suits brought by other states. Florida served a Rule 45 subpoena duces tecum on Kerr-McGee Corporation, a non-party, to produce 13 categories of documents for the years 1970 through 1973. Acting upon Kerr-McGee's motion for a protective order, the District Court conditioned production of the requested documents upon Florida's paying Kerr-McGee the sum of $8,782.98. Of that total, $4,497.42 was attributable to the work hours of company personnel who searched for responsive documents, and $4,285.56 was for shipping costs and the travel costs of Kerr-McGee's house counsel who went to subsidiary offices to search for responsive documents.

On appeal, the Tenth Circuit affirmed, ruling that the District Court did not abuse its discretion. The Court of Appeals rejected Florida's argument that Kerr-McGee could afford the $8,800: "For example, $250,000 also would be but a fraction of Kerr-McGee's total assets, and yet it is difficult for us to believe that such sum would not constitute and undue burden and expense within the meaning of Fed.R.Civ.P. 26(c)." 669 F.2d at 623. While plaintiffs may not have the financial resources of Florida, that is hardly a reason for requiring Parexel to pay the costs of responding to the subpoena. After all, Parexel is "not a party to the underlying ...action," and in responding to the subpoena Parexel would be "performing no work that conceivably could inure to its benefit." *Id.* In this matter, it is plaintiffs who presumably will benefit from the discovery at issue, so they should have to pay for the benefit: "[W]e see no

reason why a district court, exercising its discretion under Fed.R.Civ.P. 26(c), should be reluctant to place the cost of discovery upon the party deriving benefit therefrom." Id. at 624 n.3.

In sum, the subpoena as issued could not be any broader or more burdensome or more expensive. As such, it should be quashed. Alternatively, if the subpoena is narrowed by agreement or by order of this Court, then Parexel's obligation to comply should be conditioned upon plaintiffs' paying Parexel for the time its employees and attorneys spend responding to the subpoena. Parexel's request is supported by precedent, common sense, and fair play.

PAREXEL MMS

By its attorneys,

_____
Edward Krumeich (CT06803)
William I. Haslun III (CT02660)
Ivey, Barum & O'Mara, LLC
170 Mason Street
Greenwich, CT 06830
203-661-6000

Of Counsel:
Kurt S. Kusiak, BBO #559254
Robert M. Mendillo, BBO #342780
SALLY & FITCH LLP
One Beacon Street, 16th Floor
Boston, MA 02108
617-542-5542

Dated: September 18, 2007

**CERTIFICATE OF SERVICE**

I, Edward Krumeich, hereby certify that a true and accurate copy of the above document was served on this 18th day of September, 2007, upon counsel of record and upon:

*For Plaintiffs:*
Holly M. Wheeler
Blizzard, McCarthy & Nabers, LLP
440 Louisiana, Suite 1710
Houston, Texas 77002
Telephone No.: (713) 844-3750
Facsimile No.: (713) 844-3755

Michael Pederson
Weitz & Luxenberg
180 Meriden Lane
New York, NY 10038-4925
Telephone No.: (212) 558-5000
Facsimile No.: (212) 344-5461

*For AstraZeneca:*
Kenneth E. Friedman
SIdley Austin LLP
555 West Fifth Street, Suite 4000
Los Angeles, CA 90013
Telephone No.: (213) 896-6055
Facsimile No.: (213) 896-6600

*For Parexel:*
Kurt S. Kusiak, BBO #559254
Robert M. Mendillo, BBO #342780
SALLY & FITCH LLP
One Beacon Street, 16th Floor
Boston, MA 02108
Telephone No.: (617) 542-5542
Facsimile No.: (617) 542-1542

Edward Krumeich