**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | |
|---|---|
| IN RE: SEROQUEL PRODUCTS LIABILITY LITIGATION<br><br>This document relates to: **ALL CASES** | **MDL DOCKET NO: 6:06-MDL-1769-ACC-DAB** |

**PLAINTIFFS' RESPONSE IN OPPOSITION AND INCORPORATED MEMORANDUM TO ASTRAZENECA'S MOTION AND MEMORANDUM SEEKING A "*LONE PINE*" ORDER REQUIRING EACH PLAINTIFF TO PRODUCE A CASE-SPECIFIC EXPERT REPORT ON INJURY AND CAUSATION**

All Plaintiffs hereby file their Response in Opposition and Incorporated Memorandum to AstraZeneca's Motion and Memorandum Seeking a "*Lone Pine*" Order Requiring Each Plaintiff to Produce a Case-Specific Expert Report on Injury and Causation (the "Motion" (Doc. 618)), and would respectfully show the Court as follows:

**I.
SUMMARY OF RESPONSE**

The Court has prudently and justly charted a course in this MDL for completion of global discovery common to all cases, transitioning to gainful case-specific discovery culminating in bellwether trials of the Florida-related cases. As the Court explained in the October 30, 2007 status conference, the Court and parties are not, and should not be, focused on "the specific cases in terms of what the evidence shows and doesn't show . . . we're not dealing with that right now." (Tr. of Oct. 30, 2007 Status Conference 4:24-25, 5:1.) Instead, the Court made clear its intent: "we will focus on [the Florida cases] and not on continuing . . . other case specific matters." (Tr. of Oct. 30, 2007 Status Conference 52:14-15.)

Perhaps in part due to the timing of its filing just prior to the last status conference, Defendants' Motion is off the map drawn by the Court for the future of this litigation. In fact, *Lone Pine* orders such as the one Defendants request are frequently sought as an *alternative to* a trial program like that which Court has already determined to undertake. *See, e.g., Morgan v. Ford Motor Co.*, No. 06-1080, 2007 WL 1456154, at *9 (D.N.J. May 17, 2007).

More critically, the *Lone Pine* order proposed by Defendants is not a fair procedural mechanism, particularly in light of Defendants' grossly incomplete and sanctionable discovery production. That such orders also function as untimely summary judgment devices, as well as violate the discovery rules relative to expert witness disclosures and reports, puts the relief Defendants' seek squarely in the crosshairs of reversal by the United States Court of Appeals for the Eleventh Circuit ("Eleventh Circuit").

Lastly, as shown below, Defendants' assertions that a *Lone Pine* order will "streamline" the litigation and that they have insufficient discovery to properly evaluate and defend against Plaintiffs' cases are mere pretext. Indeed, Defendants' true motives in filing the Motion they no longer hide, as even the Court has recognized[1]—i.e., to "weed out" Plaintiffs' cases through a procedural device that may only be described as a reversible abuse of due process.

---

[1]      *See* n. 7, *infra* at 14.

## II.
## ARGUMENT & AUTHORITIES

**A.**   ***Lone Pine* Orders Afford Defendants An Unfair, Prejudicial Advantage In The Litigation.**

Defendants' discovery failures are legion and notorious, and need not be recounted here. Despite their foot-dragging, recalcitrance, and downright incompetence in meeting their own discovery obligations, however, Defendants now demand that the Court order <u>over 5000 Plaintiffs to prove a prima facie case within the coming weeks</u>. Such an order only serves to exacerbate the inequities in discovery thus far. As Special Master Craig Ball recognized in his most recent report to the Court, Plaintiffs have been at the "short end of the discovery stick for so long." (1st Status Report of Special Master Ball, October 26, 2007, at 2.) Therefore, the Court should refuse to issue a *Lone Pine* order not only because of its patent inequities and unjustness, discussed below, but also particularly given the history of this litigation and Defendants' sanctionable discovery conduct. (Order of Aug. 21, 2007 (Doc. 393).)

Fundamentally, the problem with *Lone Pine* orders is that they emanate from procedural rules that do not specifically grant the authority for courts to issue such orders. It is not surprising, then, that Defendants cite not a single case from the Eleventh Circuit supporting their Motion. That is because no such case exists. Indeed, despite Defendants' assurances to the contrary (Mot. at 4), *Lone Pine* orders are very much the exception, rather than the rule.[2]

---

[2]   *See* n.4, *infra* at 7.

Instead of resorting to amorphous concepts such as inherent case management authority to justify a *Lone Pine* order, the Court should first look to existing procedural devices to address the issues raised, and should not ignore existing procedural rules and safeguards merely because mass tort cases are "different" from typical tort cases.  Indeed, with no real guidelines to control the parameters and scope of *Lone Pine* orders, they are fertile ground for inconsistency, prejudice, and ultra vires action.  *See* John T. Burnett, Lone Pine *Orders: A Wolf in Sheep's Clothing for Environmental and Toxic Tort Litigation*, 14 J. Land Use & Envtl. L. 53, 75-76 (1998).

More specifically, such *Lone Pine* orders are inherently unfair and prejudicial to Plaintiffs for at least two reasons: (1) they serve as improper, untimely substitutes for summary judgment motions, and (2) they ignore other existing procedural safeguards and rules.

First, Defendants *Lone Pine* request is the functional equivalent of Defendants' filing a "no evidence" summary judgment motion long before discovery is complete in this litigation.  In other words, little difference would result from Defendants' filing a summary judgment motion, asserting that Plaintiffs had no evidence of causation, instead of their *Lone Pine* Motion.  As with the grant of a *Lone Pine* order, such a summary judgment motion would put Plaintiffs to their proof, forcing them to obtain expert witness reports posthaste to overcome the motion.  Meanwhile, Defendants would not be required to further participate in discovery at all, much less produce their own expert reports.  *See Morgan*, 2007 WL 1456154, at *9 (refusing to enter defendants' requested *Lone Pine* order in part because it would give "[d]efendants an opportunity to attack" the justification for the lawsuit premised

on plaintiffs' hastily prepared medical affidavits; like the defendants, "[p]laintiffs must have an opportunity to contest the reasonableness of any experts relied upon by their adversary").

As Defendants well know, significant due process concerns prohibit such summary judgment practice, explaining why "summary judgment is appropriate only 'after adequate time for discovery' has passed." *Shotz v. City of Plantation*, 344 F.3d 1161, 1184 n.35 (11th Cir. 2003) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In fact, "[t]he law in this circuit is clear: the party opposing a motion for summary judgment should be permitted an adequate opportunity to complete discovery prior to consideration of the motion." *Jones v. City of Columbus*, 120 F.3d 248, 253 (11th Cir. 1997); *see Snook v. Trust Co. of Ga. Bank of Savannah, N.A.*, 859 F.2d 865, 870 (11th Cir. 1988) ("This court has often noted that summary judgment should not be granted until the party opposing the motion has had an opportunity for discovery."); *Littlejohn v. Shell Oil Co.*, 483 F.2d 1140, 1145 (5th Cir. 1973) (en banc), *cert. denied*, 414 U.S. 1116 (noting the high fatality rate of summary dispositions at a time before the facts have been fully developed).[3]

Contrary to the self-serving procedure Defendants propose, summary judgment motions under Federal Rule of Civil Procedure 56 are intended to impose procedural safeguards that adequately protect the interests of <u>all</u> parties, while still addressing alleged problems that *Lone Pine* orders are thought to remedy. In the normal course of pharmaceutical litigation, defendants typically move for summary judgment under Rule 56

---

[3]    Even if Defendants contend, for whatever reason, that a *Lone Pine* order itself is not the equivalent of a premature summary judgment motion, they must concede that a summary judgment motion is a necessary component of the relief they seek. Assuming *arguendo* that the Court entered a *Lone Pine* order, Defendants would assuredly contend—in short order—that numerous Plaintiffs' expert witness reports do not adequately prove causation, employing the procedural device of a summary judgment motion in order to dispense with the case on that basis. Defendants neglect to mention this critical aspect of the procedure they urge the Court to adopt in their Motion.

5

after all discovery has been conducted.   At that point, plaintiffs are required to offer evidence, expert witness testimony, and set forth specific facts that show a genuine triable issue of fact.   The Court has already indicated its intent to follow this natural course of proceedings.   (Tr. of Oct. 30, 2007 Status Conference at 54:10-13 ( "But my thought is we have the fact discovery in the Florida cases going through spring and summer of next year, and then you have got your global motions that Judge Conway will hear.").)   Issuing a *Lone Pine* order, on the other hand, shortcuts the summary judgment process by demanding that Plaintiffs prove their prima facie cases prematurely and without the benefit of full, or even reciprocal, discovery by Defendants.   This is simply impermissible, and would compel reversal by the Eleventh Circuit.

Second, under Federal Rule of Civil Procedure 26(a)(2), *all* parties are automatically mandated to disclose additional information—including expert witness information—following pretrial disclosures.   At base, the rule demands that *all* parties disclose the identity of any person who "may be used at trial" to present evidence under Federal Rules of Evidence 702, 703, or 705 and, in absence of other instruction by the court, to produce expert reports for each such witness.   Fed. R. Civ. P. 26(a)(2)(A)-(C).   Although the timing of the disclosures is ultimately within the courts' discretion, the spirit and letter of the rule requires the parties to <u>exchange</u> expert information <u>simultaneously</u> at least 90 days before the trial date.   Fed. R. Civ. P. 26(a)(2)(C).   If the evidence is intended solely to contradict or rebut testimony disclosed by another party, then the disclosure must be made within 30 days after the disclosure by the other party.   *Id.*   Thus, the rule in the Eleventh Circuit is that one side should not be accorded the palpable procedural advantage gained by unilateral production of

expert reports by its adversary.  *See Cooper v. Southern Co.*, 390 F.3d 695, 728 (11th Cir. 2004) ("Because the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise, . . . compliance with the requirements of Rule 26 is not merely aspirational.") (citation omitted).

All parties are entitled to due process.  Appellate courts, especially the Eleventh Circuit, have held time and again that summary judgment cannot be granted without first affording the party against whom judgment is entered an opportunity to conduct discovery. Moreover, as a general matter, federal litigation revolves around the generous and wide-ranging discovery provided by the Federal Rules of Civil Procedure and Federal Rules of Evidence, which in turn operate from the basic underlying principle that court procedures should be fair to *both* sides.

**B.      The Vast Majority of Courts—Particularly MDLs—Have Refused to Enter *Lone Pine* Orders, Notwithstanding Defendants' Reliance On Inapposite Cases.**

In spite of Defendants' tenuous characterization of *Lone Pine* orders as a "[]tested case management device" adopted by "[n]umerous other courts," Defendants cite only two (2) other federal MDL proceedings in which courts entered such an order.  (Mot. at 4-5.) That feeble number stands in stark contrast to the considerable volume of MDL proceedings where a *Lone Pine* order, or its functional equivalent, has not issued, including the sister litigation to this MDL, *In re Zyprexa Products Liability Litigation* (MDL-1596).[4]  In fact,

---

[4]      *See In re St. Jude Med. Ctr., Inc. Silzone Heart Valves Prods. Liab. Litig.* (MDL-1396); *In re Serzone Prods. Liab. Litig.* (MDL-1477); *In re Prempro Prods. Liab. Litig.* (MDL-1507); *In re Paxil Prods. Liab. Litig.* (MDL 1574); *In re Ephedra Prods. Liab. Litig.* (MDL 1598); *In re Deep Vein Thrombosis Litig.* (MDL-1606); *In re Vioxx Mktg., Sales Practices and Prods. Liab. Litig.* (MDL 1657); *In re Bextra and Celebrex Mktg., Sales Practices and Prods. Liab. Litig.* (MDL-1699); *In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.* (MDL-1708); *In re Medtronic, Inc. Implantable Defibrillators Prods. Liab. Litig.* (MDL-1726); *In re Celexa and Lexapro Prods. Liab. Litig.* (MDL-1736); *In re Human Tissue Prods. Liab. Litig.* (MDL-1763); *In*

most jurisdictions have not even considered *Lone Pine* orders.  James P. Muehlberger & Boyd S. Hoekel, *An Overview of Lone Pine Orders in Toxic Tort Litigation*, 71 Defs. Couns. J. 366 (2004).

Furthermore, the few out-of-Circuit cases upon which Defendants rely in support of their Motion are distinguishable and unpersuasive.  The source case for the order Defendants' propose, *Lore v. Lone Pine Corp.*, No. L. 33606-85, 1986 WL 637507 (N.J. Super. Ct. Law Div. Nov. 18, 1986), is not only not binding on *this* Court, it has absolutely no precedential value in the state court system from which it issued.  This is because unpublished New Jersey decisions are, by formal rule, bereft of precedential value.[5]

Even ignoring that the *Lone Pine* decision has "no precedential value," it was rendered under completely different circumstances.  The court issued such an order because:

- the plaintiffs had sued "some 464 defendants" for alleged wrongs associated with the Lone Pine landfill (*id.* at *1);

- one of the plaintiff's allegedly impacted properties was "20 miles from Lone Pine" and others were "two miles from the landfill in different directions" (*id.* at *3); and

- the plaintiffs' claims of injury "were completely contrary to the EPA R.O.D. [Record of Decision] which indicate[d] that there was no problem with ground

---

*re Zyprexa Prods. Liab. Litig.* (MDL-1596); *In re Bausch & Lomb Inc. Contact Lens Solution Prods. Liab. Litig.* (MDL-1785); *In re Fosamax Prods. Liab. Litig.* (MDL-1789).

[5]         Section 1:36-3 of the New Jersey Rules of Court states:

> No unpublished opinion shall constitute precedent or be binding upon any court.  Except for appellate opinions not approved for publication that have been reported in an authorized administrative law report, and except to the extent required by res judicata, collateral estoppel, the single controversy doctrine or any other similar principle of law, no unpublished opinion shall be cited by any court.  No unpublished opinion shall be cited to any court by counsel unless the court and all other parties are served with a copy of the opinion and all other relevant unpublished opinions known to counsel including those adverse to the positions of the client.

water contamination, nor indeed with the transport of pollution by air, ground water or surface water" (*id.* at *2).[6]

Here, by contrast, only a handful of Defendants are involved, all related to each other through corporate ties; Food and Drug Administration reports actually support Plaintiffs' claims; and the cases involve Plaintiffs' ingestion of one product: Seroquel.

Defendants also rely heavily on *Acuna v. Brown & Root, Inc.*, 200 F.3d 335 (5th Cir. 2000). *Acuna* involved the consolidation of two independent cases where over 1,000 plaintiffs sued more than 100 defendants for injuries arising from uranium mining activities taking place at a number of different mining locations. *Id.* at 340. The *Acuna* plaintiffs' injuries were alleged to have occurred from a number of different activities. *Id.* at 337-38. Some plaintiffs worked in the uranium mines, while others worked in uranium processing plants. *Id.* at 338. Still others were exposed through contact with family members working in the mines or the processing plants or through environmental factors such as wind and groundwater. *Id.* As noted above, it should be readily obvious that the evidentiary permutations that existed in *Acuna* do not exist here.

Further, Defendants unsurprisingly rely on their stalking horse, the *Baycol* MDL. Also unsurprising is Defendants' omission of a key occurrence in their recounting of the "remarkable" impact the *Lone Pine* order had on that court's docket. Defendants report that about 2,275 cases, or roughly 10 percent of the plaintiffs "who ever had a case in the MDL" survived the *Lone Pine* order in that litigation. But Defendants neglect to inform the Court

---

[6]    *See* Muehlberger & Hoekel, *supra*, at 370 ("A note of caution is in order regarding the ability to procure Lone Pine orders. ***Some courts have entered orders only after a state or federal agency has issued a report that either provides much of the information called for in the order or undercuts the plaintiffs' claims for personal injuries.***") (emphasis added).

that Bayer had settled thousands of the plaintiffs' cases prior to entry of the *Lone Pine* order, and the *Lone Pine* measure was only implemented to cull through the bottom-of-the-barrel cases that Bayer had refused to settle or that had not been dismissed on other grounds.

Defendants' argument gains no traction by their reliance on one other MDL case they cite, *In re Orthopedic Bone Screw Products Liability Litigation*, MDL 1014, 1997 WL 303239, at *1 (E.D. Pa. Feb. 13, 1997).  In their zeal to convince the Court that the federal court in Pennsylvania entered a *Lone Pine* order, Defendants disingenuously omit the following ("mildly" significant) portion of that court's order:

> In establishing the discovery deadlines contained in this Order, the court has taken into account the fact that with respect to many of the civil actions covered by this Order, ***the parties have substantially completed fact discovery as to liability and damages including fact discovery associated with the development and marketing of pedicle fixation devices as well as identification, disclosure, and expert discovery as to plaintiffs' and defendants' generic experts.***

*Id.* at *1 (emphasis added).  Here, as the Court is unfortunately aware, the parties are nowhere close to substantially completing fact discovery as to liability and damages, including fact discovery associated with the development and marketing of Seroquel, as well as identification, disclosure, and expert discovery relative to Plaintiffs' and Defendants' generic experts.

Equally unpersuasive is Defendants' comparison of this litigation to that in *Atwood v. Electric Brake & Clutch Co., Inc.*, 605 N.E.2d 1032 (Ill. App. 1992), wherein plaintiffs were ordered to independently certify, by way of medical expert reports, their respective identifications of medical and personal injury claims after <u>four years</u> of discovery had occurred.  Upon defendants' motion to compel outstanding plaintiff certifications, the trial

court ordered, in 1990, plaintiffs to produce responsive documentation <u>within one year</u>.  *Id*. at 1035-36.  Although plaintiffs filed the majority of outstanding certifications by the one-year deadline, defendants filed motions for partial summary judgment those cases where plaintiffs remained deficient.  *Id*. at 1036.  Consistent with its order, the trial court then dismissed personal injury claims not covered by plaintiffs' medical certifications.  Affirming, the Illinois appellate court emphasized that "five years into the litigation, the defendants were still unaware of the exact nature of claims against them."  *Id*. at 1037.

In contrast, just over one year into this litigation and less than one year from the commencement of discovery, Defendants moved this Court to order Plaintiffs to prove their prima facie cases in accordance with *Lone Pine*.  While defendants' motion in *Atwood* was arguably appropriate, considering the lengthy discovery period that had ensued from the time of filing, Defendants' Motion is conspicuously precipitous.

Defendants' additionally rely on *In re Love Canal Actions*, 547 N.Y.S.2d 174, 178, 79 (N.Y. Sup. Ct. 1989) for the unsupported proposition that New York trial courts possess the authority to order pretrial disclosure of plaintiffs' expert reports in support of each claim of injury and causation thereof.  While the Supreme Court considered such requirement appropriate, the Supreme Court, Appellate Division, modified the lower courts' grant to revoke the ability of the trial court to require pretrial disclosures of plaintiffs' expert reports. *In re Love Canal Actions*, 161 A.D.2d 1169, 1170 (N.Y. App. Div. 1990) ("the trial court lacked power to order pretrial disclosure of expert reports").  In doing so, the Appellate Division did, in fact, affirm *portions of* the lower court's amended discovery order, but was clear in its modification and rejection of the disclosure provisions upon which Defendants

rely.  *Id*. at 1170.  Attempting to shield the unfavorable appellate opinion from this Court, Defendants reported in their Motion that the Supreme Court's discovery order was strictly affirmed, and not modified as was the case.[7]

Ultimately, all that Defendants' cases establish is that a tiny fraction of courts have sometimes issued *Lone Pine* orders where (a) plaintiffs had sued dozens, if not hundreds, of unrelated defendants, (b) a government report or study called into question the validity of plaintiffs' claims, or (c) plaintiffs had already conducted ample discovery.  This litigation falls into none of those categories.  Even if it did, in would not matter inasmuch as controlling Eleventh Circuit authority precludes the entry of the order Defendants' seek, as shown above.

**C.    Notwithstanding Defendants' Pretext That A *Lone Pine* Order Will "Streamline" The Litigation, Purportedly Saving Time And Money, Such An Order Would Do The Opposite.**

Although contending that a *Lone Pine* order would "streamline" this litigation, Defendants' proposal would not do so, nor is it intended to do so.  It is intended to do three things: (1) to force Plaintiffs' experts to make do with incomplete discovery and data from Defendants so that Plaintiffs' experts' conclusions can be assailed by Defendants on that very ground; (2) to enable Defendants to prepare their attack on Plaintiffs' experts while Plaintiffs' learn nothing regarding Defendants' experts; and (3) to burden Plaintiffs with expensive and unnecessary "make work" while continuing their attempt to distract the Court

---

[7]     Urging this Court to enter a *Lone Pine* Order, Defendants similarly rely on *Turner v. Firestone Tire & Rubber*, No. 5-95-cv-00152 (E.D. Tex. May 31, 1996) for the proposition that those plaintiffs were required "to produce case-specific reports from a medical expert opining that each plaintiff's alleged injuries were caused by defendants' conduct."  In doing so, Defendants not only failed to provide a complete citation to *Turner v. Firestone Tire & Rubber*, but also failed to afford this Court and Plaintiffs the courtesy of attaching a copy of this unpublished order to which it cites.  Despite Plaintiffs' complete efforts to obtain the order, Plaintiffs remain without the ability to review the order and to evaluate Defendants' analysis thereof.

from Defendants' own discovery failings and the Court's duty to prepare the cases *overall* for remand and trial.

As Defendants and the Court know, Plaintiffs' experts cannot fully, fairly, and intelligently determine the cause of Plaintiffs' injuries absent full disclosure by Defendants of their clinical studies and trials, research and development files, and other data pertinent to Seroquel's development, use, efficacy, and safety. Indeed, each week Plaintiffs learn through depositions of Defendants' corporate representatives of additional studies, clinical trials, and even label warning changes that have not previously been disclosed to Plaintiffs. That Defendants would finally produce that information *only after* Plaintiffs prove causation without benefit of that discovery unmistakably reveals one of the motives behind Defendants' Motion.

Furthermore, this litigation does not involve 100 or even 50 defendants. There is essentially one Defendant—a consortium of related companies. It will take significantly less time to establish whether a sound basis for the imposition of liability exists as to one or more of the handful of Defendants than it will to prematurely assess the merits of over 5000 Plaintiffs' different claims of causally related injury. This is particularly important in an MDL context. *See* Manual for Complex Litigation (Fourth) § 11.211 (2004).

Last, as the Court has already determined, the standard and sensible way of managing a group of more than 5000 Plaintiffs is either by means of "bellwether," "representative," or "test" Plaintiffs' cases. The Court has already instructed the parties to jointly begin to prepare a discovery and trial plan relative to a bellwether group of trial cases. (Order of Nov. 1, 2007 (Doc. 640).) It would be wasteful and counterproductive to the trial program—not to

mention prejudicial to Plaintiffs—to simultaneously and summarily adjudicate the other 5000+ Plaintiffs' cases on the basis of unseasonable and inadequate expert reports, as the Court has aptly recognized.[8]

**D.**     **The Parties Have Conducted Ample Case Specific Discovery Thus Far In This Litigation.**

Finally, the Court should be mindful of the significant case-specific discovery already provided to Defendants by Plaintiffs in this litigation.  Plaintiffs have been required to unilaterally provide and verify extensive medical and non-medical information within a very compressed time period in the form of Plaintiffs' Fact Sheets ("PFS") and records authorizations.  The PFS already obligates Plaintiffs to provide great detail regarding the nature of the claims pursued against Defendants, and to affirm the information provided under penalty of perjury.  The information in the PFS (and from the medical records available to Defendants) establishes the foundational basis for Plaintiffs' prima facie case.  In addition, Plaintiffs are required to produce all documents, including medical records, that are within Plaintiffs' possession, custody, or control that support their claims.  Finally, the parties have already conducted several hundred case-specific depositions, as the Court is aware.

---

[8]         [Defendants'] obvious intent is to pick off the cases that [they] think[s] that are legally and factually un[su]stainable to reduce the number that actually would be eligible to go to trial through various mechanisms provided in the rules of procedure and I'm not being pejorative when I say that.  My concern is if he's successful with that, then we don't have anything left to try or very little.  I want to have enough trials if the whole program, the trial program, would be to have enough to make some sense.

(Tr. of Oct. 30, 2007 Status Conference 50:15-24.)

Therefore, unlike the few cases where *Lone Pine* orders were granted, Defendants already have more than ample information needed to commence evaluation and defense of Plaintiffs' claims.  As discovery proceeds, Defendants will garner additional case-specific information regarding Plaintiffs in due course.  The Court should deny Defendants' Motion.

## CONCLUSION

For obvious reasons, *Lone Pine* orders have developed a certain cachet among the defense bar as the new "weapon" of choice to target the "weakest evidentiary link in the plaintiffs' case" in summary fashion—without respect to safeguards and procedures imposed by the Federal Rules of Civil Procedure.  William A. Ruskin, *Prove It or Lose It: Defendant Against Mass Tort Claims Using Lone Pine Orders*, 26 Am. J. Trial Advoc. 599, 607, 611 (2003).[9]  Despite their popularity with defense-oriented commentators, however, the truth is such orders are extremely rarely entered; in fact, Defendants cite not a single case on point—from this Circuit or any other jurisdiction—supporting this Court's entry of a *Lone Pine* order here.  Further the Court should reject the request for *Lone Pine* relief as out-of-step with this Court's trial program involving the Florida cases.   The Court should deny Defendants' Motion.

---

[9]      Interestingly, Mr. Ruskin opens his commentary advocating *Lone Pine* orders with an appropriate—and telling, in terms of the defense bar's motivation with respect to such orders—excerpt from a popular non-fiction book:

> Facher had a warning before he left.  "You think you're going to put those families on the witness stand and break everybody's heart.  You think the jury's going to pull out their handkerchiefs and dab their eyes."  Facher shook his head resolutely.  "Those families will never see the light of day."

> Schlictmann regarded Facher's parting words as an idle threat.  He did not give them a second thought.  He could see no possible way that Facher could stop the families from telling their stories once he had a jury impaneled.

*Id.* at 599 (quoting Jonathan Harr, *A Civil Action* 231 (Random House 1995)).

Respectfully submitted

By:   /s/ K. Camp Bailey
      F. Kenneth Bailey Jr.
      K. Camp Bailey
      Fletcher V. Trammell
      Robert W. Cowan
      **BAILEY PERRIN BAILEY LLP**
      440 Louisiana St., Suite 2100
      Houston, Texas 77002
      (713) 425-7100 Telephone
      (713) 425-7101 Facsimile
      kbailey@bpblaw.com
      cbailey@bpblaw.com
      ftrammell@bpblaw.com
      rcowan@bpblaw.com
      **Co-Lead Attorneys for Plaintiffs**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of November, 2007, I electronically filed the foregoing: PLAINTIFFS' RESPONSE IN OPPOSITION AND INCORPORATED MEMORANDUM TO ASTRAZENECA'S MOTION AND MEMORANDUM SEEKING A "*LONE PINE*" ORDER REQUIRING EACH PLAINTIFF TO PRODUCE A CASE-SPECIFIC EXPERT REPORT ON INJURY AND CAUSATION with the Clerk of the Court by using the CM/ECF system which will send a Notice of Electronic Filing to the counsel listed on the attached Service List.

      /s/  Robert W. Cowan
      Robert W. Cowan

16

SERVICE LIST
In Re: Seroquel Products Liability Litigation
MDL Docket No. 1769

| | |
|---|---|
| Scott Allen<br>Cruse, Scott, Henderson & Allen, L.L.P.<br>2777 Allen Parkway, 7th Floor<br>Houston, TX 77019<br>Tel: (713) 650-6600<br>sallen@crusescott.com | Robert L. Ciotti<br>Carlton Fields, P.A.<br>42212 W. Boy Scout Blvd., Suite 1000<br>Tampa, FL 33607-5736<br>Tel: (813) 223-7000<br>rciotti@carltonfields.com<br>tpaecf@cfdom.net<br>atravis@carltonfields.com<br>*Counsel for Defendants AstraZeneca*<br>*Pharmaceuticals, L.P, and AstraZeneca LP* |
| Mary B. Cotton<br>John D. Giddens, P.A.<br>P.O. Box 22546<br>Jackson, MS 39225-2546<br>Tel: (601) 355-2022<br>betsy@law-inc.com | Michael Davis<br>James Mizgala<br>Sidley Austin LLP<br>Bank One Plaza<br>One South Dearborn St.<br>Chicago, IL 60603<br>Tel: (312) 853-7731<br>mdavis@sidley.com<br>jmizgala@sidley.com |
| Aaron K. Dickey<br>Goldenberg and Heller, PC<br>P.O. Box 959<br>2227 S. State Route 157<br>Edwardsville, IL 62025<br>Tel: (618) 650-7107<br>aaron@ghalaw.com | Heidi Elizabeth Hilgendorff<br>Thomas Campion<br>Drinker Biddle & Reath, LLP<br>500 Campus Dr.<br>Florham Park, NJ 07932-1047<br>Tel: (973) 360-1100<br>thomas.campion@dbr.com<br>heidi.hilgendorff@dbr.com<br>jeffrey.peck@dbr.com<br>*Counsel for Defendants Janssen*<br>*Pharmaceutical Products and Johnson &*<br>*Johnson Co.* |
| John J. Driscoll<br>Brown & Crouppen, PC<br>720 Olive St., Suite 1800<br>St. Louis, MO 63101<br>Tel: (314) 421-0216<br>jdriscoll@brownandcrouppen.com | Kenneth T. Fibich<br>Fibich, Hampton & Leebron, LLP<br>1401 McKinney St., Suite 1800<br>Five Houston Center Houston, TX 77010<br>Tel: (713) 751-0025<br>tfibich@fhl-law.com |

| | |
|---|---|
| bsmith@brownandcrouppen.com<br>rbrooks@brownandcrouppen.com<br>blape@brownandcrouppen.com | |
| Gregory P. Forney<br>Shaffer, Lombardo & Shurin<br>911 Main St., Suite 2000<br>Kansas City, MO 64105<br>Tel: (816) 931-0500<br>gforney@sls-law.com<br>rbish@sls-law.com<br>*Counsel for Defendant, Marguerite Devon French* | Todd S. Hageman<br>Simon and Passanante, PC<br>701 Market St., Suite 1450<br>St. Louis, MO 63101<br>Tel: (314) 241-2929<br>thageman@spstl-law.com |
| W. Todd Harvey<br>Joe R. Whatley, Jr.<br>2323 2nd Ave. N<br>Birmingham, AL 35203-0647<br>Tel: (205) 328-9576<br>tharvey@whatleydrake.com<br>jwhatley@whatleydrake.com<br>ecf@whatleydrake.com | Jona R. Hefner<br>3441 W. Memorial, Suite 4<br>Oklahoma, OK 73134-7000<br>Tel: (405) 286-3000<br>attorneyokc@hotmail.com<br>attorneyokc@gmail.com |
| Lawrence J. Gornick<br>William A. Levin<br>Dennis J. Canty<br>Levin Simses Kaiser & Gornick, LLP<br>44 Montgomery St., 36th Floor<br>San Francisco, CA 94104<br>Tel: (415) 646-7160<br>lgornick@lskg-law.com<br>dcanty@lskg-law.com<br>llsimes@levins-law.com<br>jkaiser@lskg-law.com<br>echarley@lskg-law.com<br>ddecarli@lskg-law.com<br>bsund@lskg-law.com<br>astavrakaras@lskg-law.com | Scott Burdine<br>Hagans Burdine Montgomery<br>Rustay & Winchester, P.C.<br>3200 Travis, 4th Floor<br>Houston, TX 77006<br>Tel: (713) 222-2700<br>sburdine@hagans-law.com |
| Thomas Campion<br>Heidi E. Hilgendorff<br>Drinker Biddle & Reath, LLP<br>500 Campus Dr.<br>Florham Park, NJ 07932-1047 | Jona R. Hefner<br>3441 W. Memorial, Suite 4<br>Oklahoma, OK 73134-7000<br>Tel: (405) 286-3000<br>attorneyokc@hotmail.com |

| | |
|---|---|
| Tel: (973) 360-1100<br>thomas.campion@dbr.com<br>heidi.hilgendorff@dbr.com<br>jeffrey.peck@dbr.com<br>*Counsel for Defendants Janssen*<br>*Pharmaceutical Products and Johnson &*<br>*Johnson Co*. | attorneyokc@gmail.com |
| Keith M. Jensen<br>Jensen, Belew & Gonzalez, PLLC<br>1024 North Main<br>Fort Worth, TX 76106<br>Tel: (817) 334-0762<br>kj@kjensenlaw.com<br>kjensenlaw@gmail.com | Aaron C. Johnson<br>Summers & Johnson<br>717 Thomas<br>Weston, MO 64098<br>Tel: (816) 640-9940<br>aaron@summersandjohnson.com<br>firm@summersandjohnson.com |
| Jamie R. Kendall<br>301 Massachusetts Ave.<br>Indianapolis, IN 46204<br>Tel: 317-633-8787<br>jkendall@price-law.com<br>eamos@price-law.com | Mark A. Koehn<br>whrfrat42@yahoo.com |
| Benjamin A. Krass<br>Law Offices of Matthew F. Pawa, P.C.<br>1280 Centre St., Suite 230<br>Newton Centre, MA 02459<br>Tel: (617) 641-9550<br>bkrass@pawalaw.com | D. Andrew List<br>Clark Perdue Arnold & Scott<br>471 East Broad St., Suite 1400<br>Columbus, OH 43215<br>Tel: 877-220-2203<br>alist@cpaslaw.com |
| Matthew E. Lundy<br>Lundy & Davis<br>333 N. Sam Houston Pkwy., E<br>Suite 375<br>Houston, TX 77060<br>Tel: (281) 272-0797<br>mlundy@lundydavis.com<br>jdibbley@lundydavis.com | David P. Matthews<br>Abraham, Watkins, Nichols, Sorrels,<br>Matthews & Friend<br>800 Commerce St.<br>Houston, TX 77002-1776<br>Tel: (713) 222-7211<br>dmatthews@abrahamwatkins.com<br>agoff@abrahamwatkins.com<br>jrhoades@abrahamwatkins.com<br>jwebster@abrahamwatkins.com |
| James Mizgala<br>Sidley Austin LLP<br>Bank One Plaza<br>One South Dearborn St. | Howard Nations<br>Howard L. Nations Attorney At Law<br>4515 Yoakum Blvd.<br>Houston, TX 77006-5895 |

| | |
|---|---|
| Chicago, IL 60603<br>Tel: (312) 853-7731<br>mdavis@sidley.com<br>jmizgala@sidley.com<br>lmodaff@sidley.com<br>efilingnotice@sidley.com<br>*Counsel for Defendants AstraZeneca LP*<br>*and AstraZeneca Pharmaceuticals LP* | Tel: (713) 807-8400<br>nations@howardnations.com<br>lori@howardnations.com<br>kim@howardnations.com<br>andrea@howardnations.com<br>charles@howardnations.com<br>lezzlie@howardnations.com |
| Matthew F. Pawa<br>Law Offices of Matthew F. Pawa, P.C.<br>1280 Centre St., Suite 230<br>Newton Centre, MA 02459<br>Tel: (617) 641-9550<br>mp@pawalaw.com | Paul J. Pennock<br>Michael E. Pederson<br>Weitz & Luxenburg, P.C.<br>180 Maiden Lane – 17th Floor<br>New York, NY 10038<br>Tel: (212) 558-5500<br>Ppennock@weitzlux.com<br>Lschutlz@weitzlux.com<br>MPederson@weitzlux.com<br>JOrelli@weitzlux.com<br>*Plaintiff's Lead Counsel* |
| Carlos A. Prietto, III<br>Robinson Calcagnie & Robinson<br>620 Newport Center-Drive<br>7th Floor<br>Newport Beach, CA  92660<br>Tel: 940-720-1288<br>cbregman@rcrlaw.net<br>cprietto@rcrlaw.net<br>ctakanabe@rcrlaw.net<br>kschaeffer@rcelaw.net | Fred T. Magaziner<br>Marjorie Shickman<br>A. Elizabeth Balakhani<br>Shane T. Prince<br>Eben S. Flaster<br>Stephen J. McConnell<br>Brennen Joseph Torregrossa<br>Dechert, LLP<br>2929 Arch St., Cira Center<br>Philadelphia, PA 19104-2808<br>Tel: (215) 994-4000<br>Fred.magaziner@dechert.com<br>Marjorie.shiekman@dechert.com<br>shane.prince@dechert.com<br>cheryl.inwek@dechert.com<br>Eben.flster@dechert.com<br>elizabeth.balakhani@dechert.com<br>michelle.kirscEh@dechert.com<br>*Counsel for Defendant Astrazeneca*<br>*Pharmaceuticals, LP* |
| William N. Riley<br>Jamie R. Kendall<br>301 Massachusetts Ave. | Mark P. Robinson, Jr.<br>Robinson Calcagnie & Robinson<br>620 Newport Center Dr., 7th Floor |

| | |
|---|---|
| Indianapolis, IN 46204<br>Tel: 317-633-8787<br>wriley@price-law.com<br>eamos@price-law.com | Newport Beach, CA 92660<br>Tel: (949) 720-1288<br>mrobinson@robinson-pilaw.com<br>mrobinson@rcrlaw.net |
| Larry Roth<br>Law Offices of Larry M. Roth, P.A.<br>P.O. Box 547637<br>Orlando, FL 32854-7637<br>Tel: (407) 872-2239<br>lroth@roth-law.com<br>lcarrington@roth-law.com<br>epoit@roth-law.com<br>*Plaintiffs' Liaison Counsel* | Lizy Santiago<br>Abraham, Watkins, Nichols, Sorrels,<br>Matthews & Friend<br>800 Commerce St.<br>Houston, TX 77002-1776<br>Tel: (713) 222-7211<br>lsantiago@thematthewslawfirm.com<br>msalazar@thematthewslawfirm.com<br>lsantiago@abrahamwatkins.com |
| Robert A. Schwartz<br>Bailey & Galyen<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Tel: (281) 335-7744<br>bschwartz@galyen.com<br>anixon@galyen.com | Kenneth W. Smith<br>Aylstock Witkin Kreis & Overholtz<br>803 North Palafox St.<br>Pensacola, FL 32501<br>Tel: (850) 916-7450<br>ksmith@awkolaw.com<br>kws6619@msn.com<br>rvasquez@awkolaw.com |
| Brennen Joseph Torregrossa<br>Dechert, LLP<br>2929 Arch St., Cira Center<br>Philadelphia, PA 19104-2808<br>Tel: (215) 994-4000<br>brennen.torregrosssa@dechert.com<br>*Counsel for Defendant Astrazeneca*<br>*Pharmaceuticals, LP* | Ted C. Wacker<br>Robinson Calcagnie & Robinson<br>620 Newport Center Dr., 7th Floor<br>Newport Beach, CA 92660<br>Tel: (949) 720-1288<br>twacker@rcrlaw.net |
| W. Todd Harvey<br>Joe R. Whatley, Jr.<br>2323 2nd Ave. N<br>Birmingham, AL 35203-0647<br>Tel: (205) 328-9576<br>tharvey@whatleydrake.com<br>jwhatley@whatleydrake.com<br>ecf@whatleydrake.com | Justin Witkin<br>Ken Smith<br>Aylstock, Witkin & Sasser, PLC<br>4400 Bayou Blvd., Suite 58<br>Pensacola, FL 32503<br>Tel: (850) 916-7450<br>Jwitkins@AWS-LAW.COM<br>ablankenship@aws-law.com<br>aburrus@aws-law.com<br>asmith@aws-law.com<br>ksmith@aws-law.com<br>noverholtz@aws-law.com<br>jsafe@aws-law.com |

NON-ECF SERVICE LIST

| | |
|---|---|
| Bridget Ahmann<br>Faegre & Benson, LLP<br>90 S. 7th St., Ste 2200<br>Minneapolis, MN  55402-3901 | Timothy Reese Balducci<br>The Langston Law Firm, P.A.<br>P.O. Box 787<br>100 South Main St.<br>Booneville, MS 38829<br>Tel: (662) 728-3138<br>tbalducci@langstonlaw.com |
| Kenneth W. Bean<br>Sandberg, Phoenix & von Gontard<br>One City Centre<br>15th Floor<br>St. Louis, MO 63101-1880<br>Tel: (314) 231-3332<br>kbean@spvg.com | Earl Francis Carriveau<br>1012 6th Ave.<br>Lake Charles, LA  70601-4706 |
| Robert F. Clarke<br>Phillips & Associates<br>3030 North Third St., Ste 1100<br>Phoenix, AZ  85012 | Patricia Cook |
| Cannon Curlee | Mark W. Davis<br>Davis & Feder, P.A.<br>P.O. Drawer 6829<br>Gulfport, MS 39506-7018 |
| Warren Frazier | James J. Freebery<br>McCarter & English, LLP<br>18th Floor<br>919 N. Market St.<br>Wilmington, DE  19801 |
| Michael T. Gallagher<br>The Gallagher Law Firm<br>2905 Sackett St.<br>Houston, TX  77098 | Gary Reed Gober<br>200 Fourth Ave. North<br>Suite 700<br>Nashville, TN  37219 |
| Richard D. Hailey<br>Ramey & Hailey<br>3891 Eagle Creek Pkwy.<br>Suite C<br>Indianapolis, IN  46254-2600 | Jason Matthew Hatfield<br>Lundy & Davis, LLP<br>300 North College Ave.<br>Suite 309<br>Fayetteville, AR  72701 |
| | |

| | |
|---|---|
| John Hawkins | Donna Higdon |
| Janssen, L.P.<br>Drinker Biddle & Reath LLP<br>500 Campus Drive<br>Florham Park, NJ 07932-1047 | Johnson & Johnson<br>Drinker Biddle & Reath LLP<br>500 Campus Drive<br>Florham Park, NJ 07932-1047 |
| Krisann C. Kleibacker Lee<br>Faegre & Benson LLP<br>90 S 7th St. Ste. 2200<br>Minneapolis, MN  55402-3901 | Louisiana Wholesale Drug Co. Inc.<br>c/o Gayle R. White<br>Registered Agent<br>Highway 167N<br>Sunset, LA 70584 |
| Salvatore M. Machi<br>Ted Machi & Associates PC<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Tel: (281) 335-7744 | Stephen J. McConnell<br>Dechert, LLP<br>2929 Arch St., Cira Center<br>Philadelphia, PA 19104-2808 |
| Eric B. Milliken<br>3 Sir Barton Ct.<br>Newark, DE 19702-2033 | Randy Niemeyer<br>15863 Pike 43<br>Bowling Green, MO 63334-2620 |
| Gale D. Pearson<br>Pearson, Randall & Schumacher, PA<br>Fifth Street Towers, Suite 1025<br>100 South 5th Street<br>Minneapolis, MN  55402 | Dale Kent Perdue<br>Clark Perdue Arnold & Scott<br>471 East Broad St., Suite 1400<br>Columbus, OH  43215 |
| Stephen J. Randall<br>Pearson, Randall & Schumacher, PA<br>First Street Towers, Suite 1025<br>100 South 5th Street<br>Minneapolis, MN  55402 | Brenda Rice |
| Evelyn Rodriguez | Robert L. Salim<br>Attorney At Law<br>P.O. Box 2069<br>Natchitoches, LA 71457-2069<br>Tel: (318) 352-5999<br>robertsalim@cp-tel.net |
| Ellen R. Serbin<br>Perona Langer Beck Lallande & Serbin | Marjorie Shickman<br>Dechert, LLP |

| | |
|---|---|
| 300 San Antonio Dr.<br>Long Beach, CA  90807-0948 | 2929 Arch St., Cira Center<br>Philadelphia, PA 19104-2808 |
| Robert H. Shultz<br>Heyl, Royster<br>103 W. Vandalia St.<br>P.O. Box 467<br>Edwardsville, IL  62025 | Robert G. Smith<br>Lorance & Thompson, PC<br>Suite 500<br>2900 N Loop W<br>Houston, TX  77092 |
| Catherine Solomon<br>3100 N.E. 83<br>Gladstone, MO 64119 | Linda S. Svitak<br>Faegre & Benson LLP<br>2200 Wells Fargo Center<br>90 South Seventh St.<br>Minneapolis, MN  55402-3901 |
| Seth S. Webb<br>Brown & Crouppen, P.C.<br>720 Olive St., Suite 1800<br>St. Louis, MO  63101-2302 | Mary J. Wrightinton |