UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE: Seroquel Products Liability Litigation　　　　　Case No. 6:06-md-1769-Orl-22DAB

_____

This Document Relates to ALL CASES

_____

**Second Status Report of Craig Ball, Special Master - Electronically Stored Information**
**November 12, 2007**

I regret that I haven't much encouraging news to share in this status report. On the plus side, counsel and consultants for both sides have been working long hours and diligently devoting themselves to the many intractable problems we face. The tenacity of those difficulties stems from the pervasiveness of the defects in production, as well as a poor appreciation of that pervasiveness by those who delegated responsibility for complex tasks without assuming adequate control or supervision. I suspect, but can't yet confirm, that efforts to shave costs may have contributed to the selection of vendors who distinguished themselves by a succession of boneheaded errors and imperceptible quality assurance. In short, more than a few folks were asleep at the switch to get us where we are now.

Through counsel, Astra Zeneca points to a succession of failures by its two principal e-discovery service providers, including some actions in the nature of concealment and misrepresentation that can't be attributed only to gross incompetence. Two telling examples are emblematic of the state of affairs.

In the first example, the plaintiffs were provided with TIFF imaged documents laden with many blank pages. During one of our conference calls, Astra Zeneca's counsel assured plaintiffs' counsel that these blank pages do not represent missing information but were solely the result of a malfunctioning "TIFFing Engine" used by its vendor to convert the native electronic evidence into images of the content. I closely questioned counsel on this precise point. In fact, when the information was reproduced, there was a considerable volume of previously absent information associated with the "blank" pages, a state of affairs not acknowledged by Astra Zeneca until plaintiffs counsel painstakingly cataloged the *sub silentio* injection of the previously unproduced evidence. The explanation has been laid at the feet of a less-than-forthcoming vendor rather than any intentional effort by counsel to misrepresent the facts, but the effect is to further erode confidence in the production.

Another startling example of the apparent absence of quality control in the defendant's production is the recent discovery of a mailbox created for the express purpose of collecting

potentially responsive evidence in connection with this lawsuit. Custodians were reportedly instructed to forward responsive messages and other items to this collection mailbox. Unfortunately (and inexplicably), it's come to light that this collection was neither retrieved nor reviewed, and accordingly its contents were not produced to the plaintiffs except to the extent that identical items might also have resided in the mailbox of key custodians who contributed to the collection mailbox. This oversight can't be as easily attributed to a vendor, but appears to be a project management failure by Astra Zeneca or its counsel.

Though I've chided Astra Zeneca's counsel more than once that it too often fell to the plaintiffs to inform Astra Zeneca of deficiencies in its productions; in this instance, it was Astra Zeneca who came forward and volunteered the failure. That, in itself, heralds a measure of progress.

It's become obvious that the prior production is riddled with problems to the point that no one on either side appears disposed to trust its integrity. Considerable effort and cost has been dedicated to trying to work around the defects and patch the leaks, but these have not achieved the goal of a complete, reliable production. Neither the image sets nor the load files are yet fully functional, so the time for patchwork solutions appears to have passed.

Accordingly, Astra Zeneca has made clear its willingness to do what can fairly be characterized as "whatever it takes to clean up the mess," including undertaking native production to plaintiffs in an effort to improve the integrity and completeness of the production or, alternatively, regenerating production in compliance with the Case Management Order in those areas where reprocessing of data pursuant to an exacting quality control regime would insure completeness and integrity of production. Regrettably, either course exacts costs in delay and expense acutely felt by both sides.

Though the disputes about keyword searching seem to have been laid to rest, the production from databases is a more complex challenge. In an occasionally contentious process, both sides have made strides in the sharing of technical information needed to properly pursue a targeted discovery of dozens of massive databases. The parties completed more than two dozen meet and confer sessions on databases within the preceding two weeks. Rocky at first, both sides now report that these are evolving into efficient, productive discussions.

I've devoted many hours to database issues, including a marathon conference last Saturday. I believe that both sides have concessions to make here. The plaintiffs' expectations are farther reaching than they need to be, principally because they are only now acquiring the familiarity with the databases required to frame focused production requests. Plaintiffs will have to zero in on fewer databases and pare overlapping demands, something I expect they will be willing and able to do once satisfied that much of the information is duplicative or irrelevant.

As well, Astra Zeneca must elevate database production as a corporate responsibility and devote adequate internal resources to the task. The preliminary proposed production dates for database productions falls far short of what it should be. Database production dragging on into the spring of 2008 is untenable and unwarranted. I'm satisfied that Astra Zeneca's e-

discovery team is paying attention to the problem and working on a more reasonable timeline. They may simply need a firm deadline imposed, along with an imperative to meet it.

I've proposed a mediated session to resolve database issues—one where we stay at it until there's nothing else we can resolve.

Despite the difficulties described, I think the ongoing processes and dialogues need a bit more time to produce satisfying results. Everyone involved in the e-discovery efforts has been working hard at it for some time, and the strain is showing. The level and quality of communication has dramatically improved, and the willingness to commit greater resources to the effort is manifest. Yet, we remain in the tunnel with no light in sight, hopeful that we are headed in the right direction.

Respectfully submitted,

**Craig D. Ball, P.C.**

Craig Ball
Texas Bar No, 01632200
1101 Ridgecrest drive
Austin, Texas 78746
TEL: 512-514-0182
FAX: 512-532-6511
E-MAIL: craig@ball.net
WEB: www.craigball.com

**CERTIFICATE OF SERVICE**

I hereby certify that on November 13, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I have served a copy of the forgoing on Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel.

Craig Ball
Texas Bar No, 01632200
1101 Ridgecrest drive
Austin, Texas 78746
TEL: 512-514-0182
FAX: 512-532-6511
E-MAIL: craig@ball.net
WEB: www.craigball.com

3