

DOC # 535

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| IN RE:  SUBPOENAS SERVED ON HARRIS INTERACTIVE, INC., KLEMTNER ADVERTISING, INC., SAATCHI & SAATCHI HEALTHCARE, AND EDELMAN | Misc. Action No. M8- 85 |
|---|---|

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| IN RE: SEROQUEL PRODUCTS LIABILITY LITIGATION  THIS RELATES TO:  ALL CASES | MDL 1769 |
|---|---|

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION REQUESTING THE TRANSFER OF THIS DISPUTE INVOLVING NONPARTIES, HARRIS INTERACTIVE, INC., KLEMTNER ADVERTISING, INC., SAATCHI & SAATCHI HEALTHCARE, AND EDELMAN, INC. TO THE UNITED STATES DISTRICT COURT, MIDDLE DISTRICT OF FLORIDA, ORLANDO DIVISION MDL 1769 OR ALTERNATIVELY GRANTING PLAINTIFFS MOTION TO COMPEL PRODUCTION OF NONPARTY DOCUMENTS

Plaintiffs respectfully request this Court enter an order transferring this dispute involving nonparties, Harris Interactive, Inc. ("Harris Interactive"), Klemtner Advertising, Inc. ("Klemtner"), Saatchi & Saatchi Healthcare ("Saatchi"), and Edelman to the United States District Court, Middle District of Florida, Orlando Division, where the Seroquel Products Liability Litigation, MDL 1769, is currently pending. Should the Court decide not to transfer this matter, Plaintiffs request the Court enter an order compelling these nonparties to comply

with the document subpoenas issued by this Court.  If the matter is transferred, Plaintiffs request that the MDL Court enter an order compelling the nonparties to comply with the document subpoenas and respond to the depositions upon written questions noticed in the MDL litigation and served on the nonparties in conjunction with the document subpoenas.

## INTRODUCTION

1.      The subpoenas before the Court were issued to Harris Interactive, Klemtner, Saatchi and Edelman in connection with the product liability MDL involving the antipsychotic prescription drug "Seroquel" manufactured by AstraZeneca Pharmaceuticals LP and AstraZeneca LP ("AstraZeneca"), which is currently pending in the United States District for the Middle District of Florida, Orlando Division, the Honorable United States District Judge Anne C. Conway presiding.  Plaintiffs took Seroquel for a variety of mental disorders and, as a result, suffered serious side effects.  More than 6000 separate actions against AstraZeneca involving Seroquel have been transferred to the MDL by the Judicial Panel on Multidistrict Litigation pursuant to its Order of July 6, 2006.  Judge Conway has assigned many of the pretrial discovery proceedings to United States Magistrate Judge David A. Baker.

2.      Harris Interactive, Klemtner, Saatchi and Edelman are third party vendors hired by AstraZeneca to provide services related to Seroquel such as marketing research, the creation of marketing/promotional materials, product forecasting, tracking and evaluation of prescribing behavior, media planning and medical publishing.  Plaintiffs seek documents, communications and contracts between AstraZeneca and those vendors relating to Seroquel-specific projects.

## BACKGROUND

3.      Seroquel belongs to a class of neuroleptic drugs known as "atypical" antipsychotics.  In September 1997, Seroquel was approved by the FDA for the treatment of

adults with schizophrenia.  On January 12, 2004, Seroquel was approved for the treatment of adults with acute mania associated with bipolar disorder.  On October 20, 2006, Seroquel was approved for the treatment of adults with major depressive episodes associated with bipolar disorder.

4.      Seroquel has been associated with a number of serious side effects including weight gain, hyperglycemia and diabetes mellitus.  Plaintiffs allege AstraZeneca, through its aggressive promotion of Seroquel, exaggerated the efficacy of Seroquel while downplaying these serious side effects and, in doing so, failed to provide physicians with critical safety information.  Through its marketing campaigns and persistent sales representatives, AstraZeneca promoted Seroquel for a number of "off-label" uses, such as the treatment of anxiety disorders and depression.

5.      AstraZeneca has been repeatedly reprimanded by the FDA for its false and misleading promotional activities.  In November 1998 and May 1999, the FDA admonished AstraZeneca for promoting Seroquel as being effective in a broader range of mental conditions than those for which it was approved, and for claiming Seroquel was proven safer and more effective than other antipsychotics.  In 2006, the FDA again admonished AstraZeneca for downplaying the association between Seroquel and diabetes.  The FDA found AstraZeneca's promotional activities (1) failed to warn doctors of the increased risk of treatment-emergent hyperglycemia-related adverse events in patients treated with Seroquel, thus undermining the FDA-approved labeling, (2) misrepresented the incidence of diabetes in post-marketing adverse event reports, and (3) failed to include relevant risk information about Seroquel.

6.      In order to facilitate its promotional campaigns for Seroquel, AstraZeneca retained the services Harris Interactive, Klemtner, Saatchi and Edelman.  Edelman was retained,

3

in part, to perform media tracking of Seroquel and its competitors.  Edelman was also involved in a number of other Seroquel-related projects and programs including, but not limited to: (1) state Medicaid atypical cost trade-off study; (2) Clinical Antipsychotic Trials in Intervention Effectiveness (CATIE) study projects, public relation activities, and media tracking; (3) BOLDER (Trial 49) study projects, public relation activities, and media tracking; (4) Bipolar Disorder Education and Awareness Project/Campaign; (5) Seroquel Call Center (tracking consumer calls regarding Seroquel); (6) NAMI Peer-to-Peer Program; (7) Negative Ad Research Project; (8) Seroquel PPD Program; and (9) Seroquel Adherence Project.  *See* Exhibit A attached to the Affirmation of Michael Pederson.[1]   Additionally, several Edelman employees were members of various Seroquel teams that also included AstraZeneca and other third party vendor representatives, including the following teams: (1) Seroquel SRM Analytics Team; (2) Seroquel SRM Market Readiness Team; (3) APA Event Team; (4) Seroquel Strategic Risk Management Team, and (4) Seroquel Communications Strategy Team.

7.      Harris Interactive conducted tracking studies and message recall for Seroquel marketing campaigns and provided quarterly attitudinal research understanding (ATU) reports which analyzed physicians' therapy choices.[2]  Harris Interactive was retained as early as 2000 to conduct research into the landscape of bipolar disorder and schizophrenia and to determine how the findings impacted AstraZeneca's promotional strategy for Seroquel.  Harris Interactive has been involved in an number of other Seroquel-related projects including, but not limited to: (1) research regarding the effectiveness of AstraZeneca's direct to consumer (DTC) marketing

---

[1]  Exhibit A is an Excel spreadsheet created by Plaintiffs' counsel which identifies a number of documents purportedly created by Edelman and produced by AstraZeneca in the MDL.  AstraZeneca has designated most of these documents as confidential.  This is not meant to be an exhaustive list but rather a sampling of Edelman documents relating to Seroquel.

[2]  This information was provided during the June 7, 2007 Rule 30(b)(6) deposition of AstraZeneca's marketing director, Charles Peipher, at 271:22-273:11.  Mr. Peipher's deposition has been designated as confidential by AstraZeneca and, as such, has not been attached as an exhibit to this Motion.

campaigns, (2) identification of optimal ways to position Seroquel for the treatment of anxiety disorders; (3) research regarding the effect of negative ad campaigns related to the diabetes/hyperglycemia warning on physician prescribing behavior; and (4) research regarding the Seroquel marketing campaigns' risk, awareness among physicians, and impact on physician prescribing habits. *See* Exhibit B attached to the Affirmation of Michael Pederson .[3]

8.  Klemtner and Saatchi are the agencies of record for general marketing visuals, campaigns and creative work, print journal ad materials, and marketing message development.[4] *See* Exhibit C attached to the Affirmation of Michael Pederson.[5]  Klemtner and Saatchi have created a number of marketing and promotional materials that were disseminated to AstraZeneca sales representatives, the medical community and the consumer public, including materials intended to "neutralize" the diabetes/hyperglycemia warning and to encourage physicians to prescribe the maximum dose of Seroquel to their patients (the "Drive the Dose" project). Klemtner and Saatchi also developed marketing and operations plans for Seroquel with the objective of targeting primary care physicians and consumers and positioning Seroquel to become the number one prescribed antipsychotic for the treatment of schizophrenia and bipolar disorder, as well as for the "off-label" treatment of dementia.  *See* Exhibit C attached to the

---

[3] Exhibit B is an Excel spreadsheet created by Plaintiffs' counsel which lists a number of documents purportedly created by Harris Interactive produced by AstraZeneca in the MDL.  AstraZeneca has designated most of these documents as confidential.  This is not meant to be an exhaustive list but rather a sampling of Harris Interactive documents relating to Seroquel.

[4] Peipher Deposition, 260:20-262:1.

[5] Exhibit C is an Excel spreadsheet created by Plaintiffs' counsel which lists a number of projects and documents purportedly created by Saatchi or Klemtner and produced by AstraZeneca in the MDL. AstraZeneca has designated most of these documents as confidential.  This is not meant to be an exhaustive list but rather a sampling of Saatchi and Klemtner documents relating to Seroquel.  On September 17, 2007, Saatchi and Klemtner provided project lists to Plaintiffs' counsel, which contained internal job numbers and a brief job description. Plaintiffs have eliminated more than 50% of the projects on those lists in order to lessen the burden and reach an agreement with Saatchi and Klemtner on the scope issue. As those lists were created by Saatchi and Klemtner, Plaintiffs are not attaching those lists as exhibits. If Saatchi and Klemtner wish to waive any privilege with respect to those lists, they can attach them as exhibits to their response to this Motion.

Affirmation of Michael Pederson.   Klemtner and Saatchi also provided strategic advice on targeting primary care physicians not comfortable with treating schizophrenia and bipolar disorder or prescribing antipsychotic drugs and nevertheless convincing those physicians to prescribe Seroquel. *See* Exhibit C attached to the Affirmation of Michael Pederson.

      9.     Twenty-three (23) document subpoenas and depositions upon written questions have been served in the Seroquel product liability litigation on nonparty vendors, including Harris Interactive, Edelman, Klemtner and Saatchi. *See* subpoenas served on Harris Interactive, Edelman, Klemtner and Saatchi, attached hereto as Exhibits D-G attached to the Affirmation of Michael Pederson.   Pursuant to Rule 45, the subpoenas were issued and signed by Plaintiffs' counsel on behalf of ten (10) district courts: Southern District of New York, Middle and Eastern Districts of Pennsylvania, Northern District of Illinois, District of New Jersey, District of Connecticut, Eastern District of Kentucky, Eastern District of California, District of Columbia, and District of Massachusetts. FED. R. CIV. P. 45(a)(3)(B).

      10.    The depositions upon written questions were noticed in the MDL litigation and were served contemporaneously with the document subpoenas. *See* Depositions Upon Written Questions served on Harris Interactive, Edelman, Klemtner and Saatchi, attached hereto as Exhibits H-K attached to the Affirmation of Michael Pederson. AstraZeneca has been served with the notices of deposition upon written questions for all nonparties. FED. R. CIV. P. 31(c).

      11.    The subpoenas and depositions upon written questions that are the subject of this Motion were served on the nonparties more than ten (10) weeks ago. Edelman was served at its offices located at 1500 Broadway, 26th Floor, New York, NY 10036 on July 2, 2007. *See* Exhibit D attached to the Affirmation of Michael Pederson. Harris Interactive was served at its offices located at 161 Sixth Avenue, New York, NY 10013 on July 2, 2007. *See* Exhibit E

6

attached to the Affirmation of Michael Pederson. Klemtner and Saatchi were served at their offices located at 375 Hudson Street, 9th Floor, New York, NY 10014 on July 3, 2007. *See* Exhibits F-G attached to the Affirmation of Michael Pederson. The subpoenas required production of the requested documents at 10:00 a.m. on July 30, 2007 at those same office locations.

12.     The subpoenas require production of six categories of documents: (1) any and all contracts or agreements between AstraZeneca and the third party vendor relating to Seroquel; (2) any and all communications between AstraZeneca and the third party vendor relating to Seroquel; (3) any and all communications between the third party vendor and any other person relating to Seroquel; (4) any and all documents prepared by, prepared for, or received by the third party vendor relating to Seroquel; (5) any and all marketing materials relating to Seroquel prepared by, prepared for, or received by the third party vendor; and (6) all documents reflecting the amount of money paid to the third party vendor by AstraZeneca relating to professional services provided by the third party vendor relating to Seroquel. *See* Exhibits D-G attached to the Affirmation of Michael Pederson.

13.     On July 20, 2007, Edelman served numerous general and specific objections to the subpoena and deposition upon written questions. *See* Exhibit L attached to the Affirmation of Michael Pederson. Edelman asserts the subpoena and deposition upon written questions are overly broad and burdensome, ambiguous and vague, premature, fail to meet the requirements of Rule 31, fail to allow a reasonable time to respond, seek documents not in Edelman's possession or control, seek documents that are confidential and proprietary and protected by various privileges, and seek documents that are not relevant to the litigation. Edelman further objects that the discovery is cumulative and obtainable from another source that is more convenient.

Edelman objects to the electronic form of production required by the discovery. Edelman objects to the definitions of "Seroquel," "AstraZeneca," and "Edelman" as overly broad and inclusive. Finally, Edelman objects to the excessive and unduly burdensome costs associated with compliance with the subpoena and seeks reimbursement for reasonable fees and costs. *See id.*

14.   On July 20, 2007, Harris Interactive served written objections to the subpoena, asserting that each of the six categories of document requests are vague, overbroad and unduly burdensome, and seek materials that are confidential, proprietary, work product, attorney/client privilege and attorney work product. *See* Exhibit M attached to the Affirmation of Michael Pederson. Harris Interactive also asserts that the documentation sought by Plaintiffs is not reasonably related to the claims in the underlying matter, that it cannot comply with the subpoena in the absence of a protective order, and estimates the cost to comply with the subpoena would be a minimum of $7,500. *See id.*

15.   Klemtner and Saatchi have not served written objections to the subpoenas or depositions upon written questions or filed a motion to quash the subpoenas.

### REQUEST FOR TRANSFER

16.   Federal Rule of Civil Procedure 45 governs the issuance, service, and enforcement of subpoenas and the procedures for objecting to them. When a person or entity objects to a subpoena served on it, "the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued." FED. R. CIV. P. 45(c)(2)(B). Rule 37 provides, "[a] party . . . may apply for an order compelling disclosure or discovery as follows" and then details in a

subsection, "[a]n application for an order to a person who is not a party shall be made to the court in the district where the discovery is being, or is to be, taken." FED. R. CIV. P. 37(a).

17.     Because the subject subpoenas were issued by this Court, Rules 37 and 45 require Plaintiffs to move for enforcement of the subpoenas in this Court. This obligation, however, does not bear on this Court's ability to transfer the dispute once the motion is brought. Of the twenty-three (23) nonparty vendors involved in this litigation, only a handful have complied with the subpoenas. This is just one of several motions Plaintiffs anticipate filing in an effort to obtain the nonparty documents. Magistrate Judge Baker has expressed his willingness to accept transfer of these disputes to his court and, in fact, has stated he intends to encourage the courts in which the motions to compel are filed to refer the matters to him. *See* Transcript from September 11, 2007 Status Conference, 8:4-9:12, attached hereto as attached to the Affirmation of Michael Pederson N.

18.     A number of courts have either transferred disputes concerning nonparty subpoenas to the district court possessing the underlying action or commented on the appropriateness of doing so. *See In re Digital Equip. Corp.,* 949 F.2d 228, 231 (8th Cir. 1991) (court that issued deposition subpoenas pursuant to Rule 45 may remit consideration of objections to court where underlying case is pending); *Petersen v. Douglas County Bank & Trust Co.,* 940 F.2d 1389, 1391 (10th Cir. 1991) (finding that magistrate judge's transfer of motion to quash nonparty subpoena was proper) ("The absence of any language in Rule 45(d) prohibiting transfer of a motion to quash, coupled with this permissive language [in Rule 26] regarding transfer of motions for protective orders which refers to Rule 45 deponents as well as to parties, is enough to validate the [transfer] action of the Kansas magistrate.") (citation omitted); *United States v. Star Scientific,* 205 F. Supp. 2d 482 (D. Md. 2002) (transferring motion to compel

nonparty to comply with subpoena to district in which the underlying action was going forward); *Smithkline Beecham Corp. v. Synthon Pharms., Ltd.,* 210 F.R.D. 163, 169 n.7 (M.D. N.C. 2002) ("The third-party subpoena route has the added benefit of allowing the court in which the main litigation is pending to make the ruling."); *Stanziale v. Pepper Hamilton LLP,* 2007 U.S. Dist. LEXIS 11320 (S.D.N.Y. Feb. 9, 2007) (Haight, Sr. D.J.) (transferring motion to compel nonparty documents to District Court for the District of Delaware in which underlying litigation is pending); *Devlin v. Transportation Communs. Int'l Union,* No. 95 Civ. 0742, 2000 U.S. Dist. LEXIS 2441, 2000 WL 249286, at *1 (S.D.N.Y. Mar. 6, 2000) (Francis, M.J.) ("There is substantial support in the caselaw, among the commentators, and in the Advisory Committee Note to Rule 26(c) of the Federal Rules of Civil Procedure for the proposition that the court from which a subpoena has issued has the authority to transfer any motion to quash or for a protective order to the court in which the action is pending.").

19.     Title 28, Section 1407 of the United States Code provides that pretrial proceedings in MDL cases "*shall* be conducted by a judge or judges to whom such actions are assigned," and the judge "may exercise the powers of a district judge in *any* district for the purpose of conducting pretrial depositions in such coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(b) (emphasis added). The reason for this is plain: consolidation of pretrial matter allows "one judge to take control of complex proceedings, the better to avoid unnecessary duplication in discovery." *In re Orthopedic Bone Screw Prods. Liability Litig.,* 79 F.3d 46, 48 (7th Cir. 1996). With respect to the subpoenas at issue here, Judge Conway and Magistrate Judge Baker have all the powers of a federal district judge in the Southern District of New York, including the power to compel compliance with the subpoena. *See United States ex rel. Pogue v. Diabetes Treatments Ctrs. of Am., Inc.,* 238 F. Supp. 2d 270, 274-75 (D.D.C. 2002)

(holding that the grant of authority in § 1407 extends to the enforcement of subpoenas duces tecum, even those not issued pursuant to a deposition notice); *In re Corrugated Container Antitrust Litigation*, 662 F.2d 875, 880-81 (D.C. Cir. 1981) ("The multidistrict judge is granted the same powers as a judge of those courts where the depositions are being taken.").

20.     Courts have frequently transferred disputes relating to nonparty discovery to MDLs, finding that § 1407(b) expressly authorizes MDL judges to preside over such matters. *See In re Subpoenas Served on Wilmer, Cutler & Pickering and Goodwin Proctor LLP*, 255 F. Supp. 2d 1, 2 (D.D.C. 2003) (district court transferred a nonparty subpoena dispute on the basis that such transfer would be to a district court presiding over the MDL, and 28 U.S.C. § 1407(b) explicitly authorizes the MDL court to hear discovery disputes from other districts); *In re Welding Rod Prods. Liab. Litig.*, 406 F.Supp.2d 1064, 1067 (N.D. Cal. 2005) (transferring motion to quash nonparty subpoena to district presiding over underlying MDL); *In re Subpoena Issued to Boies, Schiller & Flexner LLP*, No. M8-85, 2003 WL 1831426 (S.D.N.Y. Apr. 3, 2003) (transferring motion to quash subpoena to court presiding over underlying MDL). While the language of § 1407(b) provides a clearer textual basis for transfer, nothing in Rule 45 explicitly prohibits a transfer of the instant dispute.

21.     This motion relates directly to the proceedings consolidated for pretrial purposes by the Judicial Panel on Multidistrict Litigation. At the core of the motions to compel are disputes about scope, relevancy, confidentiality, privilege, and cost sharing. If these disputes are decided by the various district courts from which the subpoenas were issued, there is a likelihood of inconsistent outcomes. Judge Conway and Magistrate Judge Baker have been presiding over the Seroquel litigations pretrial discovery matters for more than a year, making them fully familiar with the underlying litigation. They are familiar with Plaintiffs' theories of the case and

11

AstraZeneca's defenses.   Therefore, they are best suited to determine whether the documents sought from the nonparty vendors are relevant to those claims and defenses.   Judge Conway and Magistrate Judge Baker are presently managing a number of confidentiality and privilege issues raised with respect to AstraZeneca's document production.   Those issues are bound to overlap with the confidentiality and privilege issues raised by the nonparties.   Moreover, the nonparty discovery is not likely to end with their subpoena compliance.   Rather, there is a possibility that Plaintiffs may pursue oral depositions of these nonparties at some point in the future. Consequently, Judge Conway and Magistrate Judge Baker are in the best position to resolve these nonparty discovery issues.   *See In re Welding Rod Prods. Liab. Litig.,* 406 F. Supp. 2d 1064, 1067 (N.D. Cal. 2005) (finding that transfer served interests of justice, judicial efficiency, and consistency, especially where the action is complex and the judge in transferee district is "readily familiar with the underlying issues" and "has already spent considerable time and effort coordinating the pretrial proceedings"); *Smithkline Beecham,* 210 F.R.D. at 169 n.7 ("[Transfer of the third-party subpoena dispute] may be particularly appropriate when relevancy of the discovery is a significant issue . . . . The court in which the litigation is pending will be in a better position to decide relevancy issues.") (citations omitted); *Star Scientific,* 205 F. Supp. at 488 (transfer of motion to compel subpoena compliance warranted where "the District of Columbia is in a better position to evaluate claims of confidentiality, undue burden, and relevancy involved in this discovery dispute.").

22.    Discovery in the MDL is moving at a fast pace.   The oral depositions of AstraZeneca's fact witnesses are scheduled to begin in early October.   Plaintiffs are entitled to discovery of the subject documents and sufficient time to review those documents before taking

these depositions. Therefore, Plaintiffs respectfully request the Court enter an order transferring

this dispute to the Seroquel Product Liability Litigation, MDL 1769, without delay.

## REQUEST FOR ORDER COMPELLING COMPLIANCE WITH SUBPOENA AND COMPLETION OF DEPOSITION UPON WRITTEN QUESTIONS

23.    The primary method for requesting that a nonparty produce documents is by

subpoena under Federal Rule of Civil Procedure 45. FED. R. CIV. P. 34(c) and 45. Rule 45

subpoenas allow a party to command a non-party to produce books, documents, or tangible items

in its possession, custody, or control. FED. R. CIV. P. 45(a)(1)(C). Rule 31 provides that "[a]

party may take the testimony of *any person*, including a party, by deposition upon written

questions . . . ." FED. R. CIV. P. 31 (emphasis added); *see Peterson v. Nadler*, 452 F.2d 754, 756-

57 (8th Cir. 1971), *overruled on other grounds*, *Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa*, 490

U.S. 296, 109 S.Ct. 1814 (1989) (Rule 31 "expressly provides the right of any party to discover

and perpetuate evidence from nonparty witnesses"). Pursuant to Rules 31 and 45, Plaintiffs have

served the nonparties with document subpoenas and depositions upon written questions. As of

the date of this filing, only three (3) nonparties have complied with the subpoenas and completed

the depositions upon written questions. Although numerous objections have been asserted by

Edelman, the primary objections appear to focus on confidentiality, scope (vague, overly broad,

burdensome), privilege and costs.

24.    **Confidentiality:** On August 20, 2007, Plaintiffs filed a Motion for Entry of an

Order Governing Third Party Discovery which addressed, among other issues, the confidentiality

of nonparty documents produced in the MDL. In conjunction with the motion, Plaintiffs

submitted a proposed confidentiality order which was modeled after the confidentiality order

found in the Manual of Complex Litigation and requested the Court enter the order. During a

recent status conference, Magistrate Judge Baker indicated he would enter a confidentiality order

to protect nonparty documents produced in this litigation. *See* September 11, 2007 Status Conference Transcript, 10:12-11:8, attached hereto as Exhibit J attached to the Affirmation of Michael Pederson. Plaintiffs informed Harris Interactive, Edelman, Klemtner and Saatchi that the Court had agreed to enter a confidentiality order. On September 19, 2007, Magistrate Judge Baker entered the protective order. *See* Exhibit O attached to the Affirmation of Michael Pederson. Upon receipt of the order on September 19, 2007, Plaintiffs' counsel provided the order to Harris Interactive, Edelman, Klemtner and Saatchi. The nonparties have not voiced any objections to the order at this time. To the extent Harris Interactive, Edelman, Klemtner and Saatchi have any objections to the protective order entered by Magistrate Judge Baker, Plaintiffs request the Court address those objections.

25.   **Privilege**:   Though Edelman and Harris Interactive have asserted various privileges to the document subpoenas and deposition upon written questions (Edelman only), no further information have been provided that would enable Plaintiffs to contest the claims. "When information subject to a subpoena is withheld on a claim that it is privileged . . . , the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim." FED. R. CIV. P. 45(d)(2)(A). The burden falls upon the party seeking to withhold information on the basis of privilege to make the claim expressly, describing the nature of the documents, communications, or things not produced or disclosed in a manner that will permit other parties to assess the applicability of the privilege. *See* FED. R. CIV. P. 26(b)(5). Plaintiffs request the Court require these nonparties to provide this necessary information.

26.    **Scope:**  Harris Interactive and Edelman have served written objections to the scope of the subpoena, claiming it is overly broad, burdensome and seeks documents not relevant to the litigation.    *See* Exhibits L-M attached to the Affirmation of Michael Pederson. Additionally, Edelman has served written objections to the deposition upon written questions. *See* Exhibit L attached to the Affirmation of Michael Pederson.

27.    Klemtner and Saatchi have not served written objections to the subpoena.  Rule 45 provides that "a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objections to producing any or all of the designated materials or inspection of the premises - or to producing electronically stored information in the form or forms requested."  FED. R. CIV. P. 45(c)(2)(B).  The failure to make timely objection to a subpoena duces tecum pursuant to this rule will waive any objection.  *Concord Boat Corp., et al., v. Brunswick Corp.,* 169 F.R.D. 44, 48 (S.D.N.Y. 1996); *Semtek International, Inc., v. Merkuriy Ltd.,* 1996 WL 238538 at 2 (N.D.N.Y. 1996) (citing *Deal v. Lutheran Hospitals & Homes,* 127 F.R.D. 166, 167-68 (D. Alaska 1989)); *Wang v. Hsu,* 919 F.2d 130, 131 (10th Cir. 1990); *Creative Gifts, Inc., v. UFO,* 183 F.R.D. 568, 570 (D.N.M. 1998); *Wright v. Montgomery County,* 1999 U.S. Dist. LEXIS 900, 1999 WL 80275 at 3-4 (E.D. Pa. Feb. 3, 1999); *Alexander v. FBI,* 186 F.R.D. 21, 1998 U.S. Dist. LEXIS 10170, 1998 WL 292083 at 6 (D.D.C. 1998).  By not serving written objections to the subpoenas, Klemtner and Saatchi have waived their objections.

28.    Harris Interactive, Klemtner and Saatchi have not served objections to the depositions upon written questions.  Rule 32 provides in relevant part that "[o]bjections to the

form of written questions submitted under Rule 31 are waived unless served in writing upon the party propounding them within the time allowed for serving the succeeding cross or other questions and within 5 days after service of the last questions authorized." FED. R. CIV. P. 32 (d)(3)(C); *Baranowski v. National Union Fire Ins. Co.*, 141 F.R.D. 55 (N.D. Tex. 1992). By not serving written objections to the depositions upon written questions, Harris Interactive, Klemtner and Saatchi have waived their objections.

      29.    Even if the Court finds that Harris Interactive, Klemtner and Saatchi have not waived their objections, the nonparties can nevertheless not demonstrate the discovery sought by Plaintiffs exceed the bounds of discovery permitted by the Federal Rules of Civil Procedure. The scope of discovery in federal litigation is broad. FED. R. CIV. P. 26(b)(1). The Federal Rules of Civil Procedure allow examination of a deponent concerning "any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of any persons having knowledge of any discoverable matter." FED. R. CIV. P. 26(b). It is well established that courts must employ a liberal discovery standard in keeping with the spirit and purpose of the discovery rules. *Tate v. United States Postal Serv.*, 2007 U.S. Dist. LEXIS 10086 *3 (S.D. Fla. 2007); *American Sec. Educators, Inc. v. Miami-Dade County*, 2006 U.S. Dist. LEXIS 81994 *2-3 (S.D. Fla. 2006); *Graham v. Casey's Gen. Stores*, 206 F.R.D. 251, 253 (S.D. Ind. 2002); *In re Theragenics Corp. Secs. Litig.*, 205 F.R.D. 631, 636-37 (N.D. Ga. 2002); *White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 364, 366 (N.D. Ill. 2001). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED.R.CIV.P. 26(b)(1).

30.     To sustain their objections in response to this motion to compel, Harris Interactive, Edelman, Klemtner and Saatchi must show that the requested discovery at issue has no possible bearing on the claims and defenses of the parties or otherwise on the subject matter of the action. *Tate*, 2007 U.S. Dist. LEXIS 10086 *4; *American Sec. Educators*, 2006 U.S. Dist. LEXIS 81994 *3; *Dunkin' Donuts Inc.*, 2001 WL 34079319 *2; *Flora v. Hamilton*, 81 F.R.D. 576, 578 (M.D.N.C. 1978); *see also Graham,* 206 F.R.D. at 254 ("The party opposing discovery has the burden of showing the discovery is overly broad, unduly burdensome, or not relevant."). This means Harris Interactive, Edelman, Klemtner and Saatchi must show either that the requested discovery (1) does not come within the broad scope of relevance as defined under Rule 26 or (2) is of such marginal relevance that the potential harm occasioned by discovery would far outweigh the ordinary presumption in favor of broad disclosure. *Giardina v. Lockheed Martin Corp.,* 2003 U.S. Dist. LEXIS 9386, 2003 WL 21276348 (E.D. La. May 30, 2003); *Gober v. City of Leesburg,* 197 F.R.D. 519, 521 (M.D. Fla. 2000).

31.     Plaintiffs have limited their requests to Seroquel specific documents.   These documents are relevant to Plaintiffs' claims that AstraZeneca's marketing campaigns overemphasized the efficacy of Seroquel, downplayed its dangerous side effects, and promoted Seroquel for use in the treatment of a number of "off-label" uses, including depression, Major Depressive Disorder (MDD), anxiety disorders including Generalized Anxiety Disorder (GAD), Attention Deficit Disorder (ADD), insomnia, and other related "mental" disorders. As evidenced in Exhibits A-C attached to the Affirmation of Michael Pederson, Harris Interactive, Edelman, Klemtner and Saatchi were hired by AstraZeneca to research, design, create, implement, and track the effects of these campaigns.   Therefore, the documents sought by the subpoenas are

discoverable or, at a minimum, are reasonably calculated to lead to the discovery of admissible evidence.

32.     To the extent the nonparties suggest the Plaintiffs can obtain the requested documents from AstraZeneca, the MDL Court is familiar with the problems Plaintiffs have encountered with AstraZeneca's electronic production, which Plaintiffs contend is far from complete and which the Court has described as incomplete and unusable.  *See* Order on Plaintiffs' Motion for Discovery Sanctions (Doc. No. 393).  Although Plaintiffs have been able to locate some of the requested documents in AstraZeneca's production, due to the widespread and recurring problems with AstraZeneca's production, Plaintiffs are far from confident that AstraZeneca's production of those documents is complete.  Furthermore, the nonparties are likely to have in their possession documents that AstraZeneca does not have, including documents that were not provided to or retained by AstraZeneca and communications between the nonparties and other nonparties, such as physicians and other vendors.

33.     Plaintiffs have been able to resolve issues regarding scope with some of the other twenty-three (23) nonparties served with document subpoenas after those nonparties provided Seroquel "project lists" to Plaintiffs.  Though Plaintiffs believe they are entitled to most if not all documents relating to Seroquel specific projects, in the spirit of compromise, Plaintiffs chose the projects that appeared the *most* pertinent to the claims in this litigation and agreed to limit the subpoena to documents, contracts and communications pertaining to those projects only, with the understanding that the lists may be revisited in the future.

34.     Saatchi and Klemtner provided two project lists – one relating to projects aimed at the medical community and one relating to projects aimed at the consumer public.  Plaintiffs have eliminated more than half of the Seroquel-related projects identified by Saatchi and

Klemtner.  Nevertheless, Saatchi and Klemtner have advised that Plaintiffs' efforts are insufficient.  Despite repeated requests, Harris Interactive has declined to provide a project list.  Likewise, Harris Interactive rejected Plaintiffs' suggestion that Harris Interactive present a representative for deposition who could provide information about the company's Seroquel related projects so that Plaintiffs could refine their document requests.  *See* Exhibits P-Q attached to the Affirmation of Michael Pederson, July 25, 2007 and July 31, 2007 letters between counsel for Plaintiffs and Harris Interactive.  Plaintiffs have provided Harris Interactive with a list of Seroquel-related projects and a list of Harris Interactive employees involved in those projects Plaintiffs were able to identify by reviewing AstraZeneca's document production.  Although Plaintiffs do not believe these lists are exhaustive, Plaintiffs hope this information will move the parties closer to resolving the scope issue.  Plaintiffs also reiterated their request for a project list from Harris Interactive.  *See* Exhibits B and R attached to the Affirmation of Michael Pederson, Harris Interactive Project List and September 14, 2007 letter from Plaintiffs' counsel to counsel for Harris Interactive.  As of the date of this filing, Plaintiffs have not yet received a response from Harris Interactive, though counsel for Harris Interactive has advised that he passed the information onto his client.

35.     Plaintiffs requested a project list from Edelman on September 7, 2007.  As of the time of this filing, Plaintiffs have not received the list.  Plaintiffs have provided Edelman with a list of Seroquel-related projects, a list of documents that appear to have been created by Edelman, and a list of Edelman employees involved in the Seroquel-related projects.  Plaintiffs were able to identify these projects, documents and employees by reviewing AstraZeneca's document production.  *See* Exhibits A and S attached to the Affirmation of Michael Pederson,

Edelman Project List and September 14, 2007 Letter from Plaintiffs' counsel to counsel for Edelman. As of the date of this filing, Plaintiffs have not yet received a response from Edelman.

36.    Plaintiffs continue their efforts to resolve this issue with the nonparties. To the extent the parties are unable to do so, Plaintiffs respectfully respect that the Court address and decide the nonparties' objections to the scope of the subpoenas.

37.    **Costs:** Plaintiffs and AstraZeneca have agreed to share copying costs incurred by the nonparties. However, many of the nonparties also seek costs and attorneys' fees associated with locating and reviewing the requested documents.

38.    Harris Interactive estimated its compliance costs will be a minimum of $7,500. *See* Exhibit M attached to the Affirmation of Michael Pederson. Plaintiffs have requested information regarding the basis for this estimate. *See* Exhibit R attached to the Affirmation of Michael Pederson. As of the date of this filing, Harris Interactive has not yet provided this information.

39.    Although Edelman has objected to the costs and fees it will incur in complying with the subpoena, Edelman has not provided an estimate of the anticipated costs and fees. Plaintiffs have requested an estimate and a basis for the estimate. *See* Exhibit S attached to the Affirmation of Michael Pederson. As of the date of this filing, Edelman had not yet provided this information.

40.    Klemtner and Saatchi have not served written objections regarding the costs or fees associated with subpoena compliance. From the outset of counsels' communications, Klemtner and Saatchi indicated there would be no problem producing the requested documents by the end of September. It was not until September 17, 2007 that counsel for Klemtner and Saatchi *verbally* indicated they would pursue reimbursement of their costs and attorneys' fees.

During this conversation, counsel for Plaintiffs requested an estimate and a basis for the estimate of the anticipated fees and costs. On September 19, 2007, Saatchi and Klemtner advised that their costs and attorneys fees would range from $45,000 to $65,000. Despite requests, a basis for this estimate has not yet been provided.

41.     To the extent the nonparties fail to provide an estimate of costs and fees, as well as a basis for those estimates, Plaintiffs request that the Court deny their requests for reimbursement of costs and fees. *See In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 303 (S.D.N.Y. 2003) (court denied third party's request for reimbursement of costs where third party was not a classic disinterested nonparty and offered no basis for determining the reasonable costs for compliance with the subpoena).

42.     Federal Rule of Civil Procedure 45(c) provides that "an order to compel production shall protect any person who is not a party . . . from significant expense resulting from the inspection and copying commanded." FED. R. CIV. P. 45(c)(2)(B). Protection from significant expense does not mean that the requesting party necessarily must bear the entire cost of compliance. *See In re Exxon Valdez*, 142 F.R.D. 380, 383 (D.D.C. 1992); *Linder v. Calero-Portcarrero*, 180 F.R.D. 168, 177 (D.D.C. 1998) (in light of the nonparty government agency's resources and the significance of plaintiffs' litigation, conditioning the nonparty's compliance with the subpoena on plaintiffs' payment of half the reasonable copying and labor costs will sufficiently protect the agency from "significant expense"); *First Am. Corp. v. Price Waterhouse LLP*, 184 F.R.D. 234, 241 (S.D.N.Y. 1998) (the equities presented in this case, specifically the role played by the nonparty and the public importance of the action, warranted a reduction in the amount of reimbursement for subpoena compliance costs requested by the nonparty). The relevant factors employed to determine how much of the production expense the requesting party

should bear include "whether the nonparty actually has an interest in the outcome of the case, whether the nonparty can more readily bear the costs than the requesting party, and whether the litigation is of public importance." *Linder*, 180 F.R.D. at 177 (citing *In re Exxon Valdez*, 142 F.R.D. at 383); *First Am. Corp.*, 184 F.R.D. at 241.[6]  Finally, the nonparty is entitled only to reimbursement for its reasonable costs.  *In re Propulsid Prods. Liab. Litig.*, 2003 U.S. Dist. LEXIS 16477 (E.D. La. 2003) (citing *Broussard v. Lemons*, 186 F.R.D. 396, 398 (W.D. La. 1999).

43.  According to its website, Edelman boasts to be "the leading independent global PR firm."  Edelman has 2,700 employees in 48 offices worldwide and had generated revenue in the amount of $299 million in 2006.  According to its website, Harris Interactive is the 12th largest market research firm in the U.S. and the 13th largest market research firm in the world.  It has 1,300 full-time employees and has annual revenue thus far in 2007 of $211.8 million.  Saatchi is owned by the French company, Publicis Groupe SA, the world's fourth largest communications group.  According to its website, Saatchi has 153 offices in 83 countries and employs nearly 7,000 people.  Saatchi represents that it works with over 60 of the top 100 worldwide advertisers and over half of the top 50 most valuable global brands.  Saatchi's New York office is the largest agency in the 153-office Saatchi global network.  Klemtner shares the same New York address as Saatchi and appears to be a predecessor or some division of Saatchi.

44.  In contrast, Plaintiffs are persons who suffer from various mental disorders including bipolar disorder and schizophrenia.  Many of the Plaintiffs' mental and metabolic

---

[6] The *Exxon* court explained that "there is no indication that [the drafters of new Rule 45] also intended to overrule prior Rule 45 case law, under which a nonparty can be required to bear some or all of its expenses where the equities of a particular case demand it." *In re Exxon Valdez*, 142 F.R.D. at 383.  The relevant factors considered under the old rule in determining how much of the costs the requesting party should bear apply to the amended rule as well. *Exxon Valdez*, 142 F.R.D. at 383; *First Am. Corp.*, 184 F.R.D. at 241; *In re Law Firms of McCourts & McGrigor Donald*, 2000 U.S. Dist. LEXIS 20287 (S.D.N.Y. 2000).

disorders are debilitating.  There is no question that Edelman, Harris Interactive, Saatchi and Klemtner can more readily bear the costs than Plaintiffs.  *In re Exxon Valdez*, 142 F.R.D. 380 (D.D.C. 1992)("[T]here can be little doubt that API, which in 1989 had gross receipts of $58 million and a net worth of $17 million . . . would be able to absorb at least some of the costs of production and copying . . . . This is especially true in comparison with the financial situation of petitioners, who are five disparate classes of Native Alaskans, fishermen, business persons, property owners, and cannery workers affected by the spill.") (citing *Wilk v. Am. Med. Ass'n*, 28 Fed. R. Serv. 2d 580 (D.D.C. 1979) (given nonparty professional association's "obvious and understandable substantial interest in the outcome," costs of compliance held to be "business overhead").

45.    Further, the nonparties' interest in the outcome and the public importance of this case warrants a conclusion that Edelman, Harris Interactive, Saatchi and Klemtner bear a portion of the costs.  *Cf. United States v. Int'l Bus. Machs.*, 71 F.R.D. 88, 92 (S.D.N.Y. 1976) (ruling in an antitrust action brought on behalf of the People that the nonparty had a duty to absorb the costs of complying with the subpoena because the case raised significant public issues and its outcome offered the nonparty certain competitive benefits).  There is no question that the pharmaceutical industry spends billions of dollars a year on promoting its products.  Television and print advertisements promoting pharmaceutical products are everywhere.  Plaintiffs believe the evidence in this litigation will overwhelmingly demonstrate that AstraZeneca paid its vendors, including Edelman, Harris Interactive, Saatchi and Klemtner, billions of dollars to market Seroquel to the medical community and consumer public and to track the effect of the marketing campaigns.  The FDA has repeatedly reprimanded AstraZeneca for its false and misleading promotional activities aimed at the public and the medical community.  Edelman,

23

Harris Interactive, Saatchi and Klemtner contributed to the design and development of those activities. As evidenced by the projects listed in Exhibits A-C attached to the Affirmation of Michael Pederson, AstraZeneca, through these nonparties, were tracking the public and medical community's reaction to the Seroquel marketing campaigns. Thus, AstraZeneca and the nonparties were fully aware that the marketing campaign messages were reaching and influencing the public and the medical community.

46.     Depending on the outcome of this litigation, AstraZeneca and the nonparties could continue or be deterred from continuing such disapproved marketing and promotional activities. The outcome could affect the parties' relationships and the nonparties' revenue generated from projects relating to Seroquel and other pharmaceutical products. Therefore, Harris Interactive, Edelman, Klemtner and Saatchi arguably have a significant financial interest in the outcome of the case. Consequently, Edelman, Harris Interactive, Saatchi and Klemtner should bear at least a portion of their costs and fees, if not the entire expense.

46.     Plaintiffs have taken reasonable steps to avoid imposing undue burden or expense on the nonparties. Plaintiffs requested AstraZeneca to share the nonparties' copying costs, which AstraZeneca agreed to do. Plaintiffs have also asked whether AstraZeneca is willing to share the nonparties' production costs and attorneys' fees. AstraZeneca has not yet responded. Plaintiffs eliminated more than half of the Seroquel-related projects identified by Saatchi and Klemtner in their lists. Plaintiffs have provided project, documents and employee lists to Edelman and Harris Interactive. Plaintiffs have requested project lists from Edelman and Harris Interactive. Plaintiffs have agreed to extensions of the production deadlines in order to give the nonparties more time to gather the requested documents. Plaintiffs have suggested oral depositions of the nonparties in order to obtain better information about their Seroquel-related projects which

24

would allow Plaintiffs to refine their document requests. Plaintiffs respectfully request the Court take these efforts into consideration when entertaining the nonparties' request for costs and attorneys' fees, including those fees incurred in responding to this Motion. *See Prescient Acquisition Group, Inc. v. MJ Publ&#x2019;g Trust*, 2006 U.S. Dist. LEXIS 75383, *6 (S.D.N.Y. 2006) (considering the willingness of the serving party to narrow the scope of the subpoena when apportioning costs).

47.     Given the number of nonparties involved, and the wide range of estimates Plaintiffs have received (one nonparty, PAREXEL MMS, has estimated compliance costs will exceed $100,000), Plaintiffs respectfully request the Court set some parameters on the *reasonable* costs and fees, and assist in determining the apportionment, if any, of these costs and fees between Plaintiffs, AstraZeneca and the nonparties.

## CONCLUSION

For these reasons, Plaintiffs respectfully request the United States District Court for the Southern District of New York enter an order transferring this dispute to the Middle District of Florida, Orlando Division, where the Seroquel Products Liability Litigation, MDL 1769, is pending. Should the Court decide not to transfer this matter, Plaintiffs request the Court enter an order overruling any existing objections and compelling Harris Interactive, Inc., Klemtner Advertising, Inc., Saatchi & Saatchi Healthcare, and Edelman to comply with the document subpoenas issued by this Court. If the matter is transferred, Plaintiffs request the MDL Court enter an order overruling any existing objections and compelling the nonparties to comply with the document subpoenas and respond to the depositions upon written questions noticed in the MDL litigation and served on the nonparties in conjunction with the document subpoenas.

Date:   September 28, 2007
        New York, New York

Respectfully submitted,

Michael Pederson
WEITZ & LUXENBERG, P.C.
180 Maiden Lane - 17th Floor
New York, NY 10038
Telephone: (212) 558-5504
MPederson@weitzlux.com
*Counsel for Plaintiffs*

Paul Pennock
WEITZ & LUXENBERG, P.C.
180 Maiden Lane - 17th Floor
New York, NY 10038
Telephone: (212) 558-5504
Ppennock@weitzlux.com

Camp Bailey
BAILEY PERRIN BAILEY LLP
The Lyric Centre
440 Louisiana, Suite 2100
Houston, TX 77002
Telephone: (713) 425-7232
cbailey@bpblaw.com

*Co-Lead Counsel for Plaintiffs in MDL 1769*

## <u>CERTIFICATE OF CONFERENCE</u>

In compliance with Local Rule 37.3, prior to seeking judicial resolution of this discovery dispute, Plaintiffs' counsel, (Ed Blizzard, Esq. and Holly Wheeler, Esq.) and counsel for the nonparties conferred in good faith by telephone, letter and e-mail in an effort to resolve the dispute.

Michael Pederson (MEP 4363)

## CERTIFICATE OF SERVICE

I, Michael Pederson, hereby certify that on this date, an original and two (2) copies of the within Plaintiff's Notice of Motion requesting the transfer of this dispute involving nonparties Harris Interactive, Inc., Klemtner Advertising, Inc., Saatchi & Saatchi Healthcare, and Edelman, Inc. to the United States District Court, Middle District of Florida, Orlando Division MDL 1769, or alternatively granting Plaintiffs' Motion to Compel Production of Nonparty Documents, Affirmation of Michael Pederson in Support of Plaintiffs' Motion with supporting Exhibits, and the Memorandum of Law in support of Plaintiffs' Motion, along with Proposed Orders and Certificate of Service were submitted to the Clerk, Daniel Patrick Moynihan Courthouse, United States Courthouse, United States District Court Southern District of New York, 500 Pearl Street, New York, New York, 10007.

By:

Michael Pederson, Esq. (MEP 4363)
WEITZ & LUXENBERG, P.C.
180 Maiden Lane
New York, NY 10038

## CERTIFICATE OF SERVICE

I, Michael Pederson, hereby certify that on the 28th day of September, 2007, a true copy of the within Plaintiff's Notice of Motion Requesting the transfer of this dispute involving nonparties Harris Interactive, Inc., Klemtner Advertising, Inc., Saatchi & Saatchi Healthcare, and Edelman, Inc. to the United States District Court, Middle District of Florida, Orlando Division MDL 1769, or alternatively granting Plaintiffs' Motion to Compel Production of Nonparty Documents, Affirmation of Michael Pederson in Support of Plaintiffs' Motion with supporting Exhibits, and the Memorandum of Law in support of Plaintiffs' Motion, along with Proposed Orders and Certificate of Service were served in compliance with Rule 5 of the Federal Rules of Civil Procedure on the parties listed below.

Michael Pederson, Esq. (MEP 4363)

Philip G. Spellane, Esq.
Harris Beach
99 Garnsey Road
Pittsford, NY 14534
*Counsel for Harris Interactive, Inc.*

Brian S. Kaplan, Esq.
Kasowitz, Benson, Torres & Friedman, LLP
1633 Broadway
New York, NY 10019-6799
*Counsel for Edelman, Inc.*

Rachel G. Balaban, Esq.
Sonnenschein Nath & Rosenthal
1221 Avenue of the Americas
New York, NY 10020-1089
*Counsel for Klemtner Advertising, Inc. and Saatchi & Saatchi Healthcare*

Fred Magaziner
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808

*Counsel for AstraZeneca Pharmaceuticals LP and AstraZeneca LP*