SONNENSCHEIN NATH & ROSENTHAL LLP
Rachel G. Balaban (RB8472)
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700
Fax: (212) 768-6800
*Attorneys for Non-Parties Klemtner Advertising, Inc.
and Saatchi & Saatchi Healthcare*



DOC # 546

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: SUBPOENAS SERVED ON HARRIS INTERACTIVE, INC. KLEMTNER ADVERTISING, INC. SAATCHI & SAATCHI HEALTHCARE, AND EDELMAN | Misc. Action No. M8-185 |

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| IN RE: SEROQUEL PRODUCTS LIABILITY LITIGATION<br><br>THIS RELATES TO:<br><br>ALL CASES | MDL 1769 |

**MEMORANDUM OF LAW IN SUPPORT OF NON-PARTIES KLEMTNER ADVERTISING, INC. AND SAATCHI & SAATCHI HEALTHCARE'S MOTION TO QUASH AND FOR A PROTECTIVE ORDER AND IN OPPOSITION TO PLAINTIFFS' MOTION REQUESTING TRANSFER TO SEROQUEL PRODUCTS LIABILITY MDL LITIGATION OR ALTERNATIVELY GRANTING MOTION TO COMPEL <u>PRODUCTION OF NON-PARTY DOCUMENTS</u>**

Klemtner Advertising, Inc. and Saatchi & Saatchi Healthcare (collectively, "Saatchi") submit this memorandum of law (1) in support of Saatchi's motion to quash two non-party subpoenas served on Saatchi and for a protective order relating to those subpoenas and (2) in opposition to plaintiffs' motion requesting the transfer of this non-party discovery dispute or, in the alternative, granting their motion to compel (the "Motion").[1]

## PRELIMINARY STATEMENT AND STATEMENT OF FACTS

Plaintiffs currently are in litigation with AstraZeneca LP ("AstraZeneca") in the Middle District of Florida, entitled *In re: Seroquel Products Liability Litigation*, relating to the prescription drug "Seroquel" manufactured by AstraZeneca (the "MDL litigation"). In July of 2007, plaintiffs served Saatchi with subpoenas duces tecum in connection with the MDL litigation demanding virtually every document and communication relating to the prescription drug "Seroquel" dating back to 1986. The subpoenas also seek depositions upon written questions, twenty in total, from Saatchi. Since 2000, Saatchi has performed various marketing services for AstraZeneca. Saatchi is not a party in the MDL litigation. Saatchi has no interest in the MDL litigation. As set forth more fully in the Balaban Affidavit, since receipt of the subpoenas, counsel for Saatchi was in good faith negotiations with counsel for plaintiffs to reach an agreement on a reasonable production of documents in a reasonable amount of time. (*See* Balaban Aff., ¶¶3-9.) Instead of continuing those negotiations, plaintiffs filed the Motion. Saatchi requests that this Court deny plaintiffs' Motion in its entirety. Saatchi also requests that this Court quash plaintiffs' excessively broad subpoenas and issue a protective order on Saatchi's behalf to protect it from the undue burden and expense plaintiffs have imposed. In addition, to

---

[1] The Affidavit of Rachel G. Balaban, sworn to on October 5, 2007 (the "Balaban Aff."), has been filed contemporaneously herewith in support of Saatchi's motion to quash and for a protective order and in opposition to plaintiffs' Motion.

- 2 -

the extent the Court orders Saatchi to produce documents, plaintiffs should be required to fully compensate Saatchi for any costs relating to the subpoenas, including attorneys' fees.

## ARGUMENT

### I. THIS COURT SHOULD QUASH PLAINTIFFS' OVERBROAD AND UNDULY BURDENSOME SUBPOENAS, ISSUE A PROTECTIVE ORDER AND DENY PLAINTIFFS' MOTION TO COMPEL

Under Rules 45 and 26 of the Federal Rules of Civil Procedure, plaintiffs have improperly imposed on Saatchi -- a non-party to the MDL litigation -- undue burden and expense in responding to subpoenas for documents and written deposition questions. *See* Fed. R. Civ. P. Rules 45(c) and 26(c). As set forth more fully in the Balaban Affidavit, plaintiffs have requested what easily could be tens of thousands of pages of documents which will require significant time and expense to prepare for production. (Balaban Aff., ¶¶10-16.) Plaintiffs also have served 20 written depositions questions which may require responses from multiple Saatchi representatives. In a good faith effort to cooperate with plaintiffs, counsel for Saatchi attempted to negotiate the subpoena requests with plaintiffs' counsel to come to an agreement on a reasonable production in a reasonable amount of time without Saatchi having to bear the expense of motion practice. Instead of continuing to do so, plaintiffs brought this Motion requiring additional time and expense on the part of a non-party to the MDL litigation. Plaintiffs now also request that this Court transfer the matter to the MDL litigation -- yet another burden on Saatchi, a New York corporation with its principal place of business in New York. This Court should deny plaintiffs' Motion, grant Saatchi's motion to quash and issue a protective order protecting it from such undue burden and expense. *See, e.g., Grigsby & Assocs., Inc. v. Rice Derivative Holdings, L.P.*, 2001 WL 1135620, *4 (S.D.N.Y. Sept. 26, 2001) (quashing non-party subpoena containing overbroad production requests); *Concord Bd. Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 54 (S.D.N.Y. 1996) (quashing non-party subpoena for imposing undue burden when

subpoena was excessively overbroad). *See also Minibooster Hydraulics A/S v. Scanwill Fluid Power ApS*, 2007 WL 1526421, *3 (W.D.N.Y. May 23, 2007) (holding that an excessively broad subpoena is unduly burdensome under Rule 45); *Palumbo v. Shulman*, 1998 WL 436367, *6 (S.D.N.Y. Jul. 27, 1998) (granting party's protective order under Rule 26(c) to prevent discovery that "would require . . . expending resources unnecessarily, in some instances, combing through a large quantity of documents dating back at least twelve years.").

### A. Plaintiffs' Subpoenas Are Overbroad And Impose An Undue Burden Upon Saatchi

Plaintiffs' subpoenas call for every possible document and communication relating to the prescription drug "Seroquel" dating back to 1986.[2] (*See* Balaban Aff., Ex. A.) While after initiating negotiation with plaintiffs' counsel, they agreed to somewhat narrow their document requests, as set forth more fully in the Balaban Affidavit, plaintiffs still demanded that an inordinate number of documents and information be produced within weeks. (*See* Balaban Aff., ¶8.) Moreover, based on the limited information provided by plaintiffs in their Motion (*see, e.g.,* Motion at p. 5 and Ex. C), it appears that much of this information already is in their possession or can be obtained from AstraZeneca, the defendant in the MDL litigation. Such unreasonable demands are impermissible under Rule 45. *See* Fed.R.Civ. P. 45(3)(A)(i) [failure to allow reasonable time for compliance] and 45(c)(1) and (3)(A)(iv) [subjects a person to undue burden]. Similarly, under Rule 26(c), Saatchi has demonstrated good cause warranting a protective order to prevent the undue burden and expense imposed by plaintiffs.

Instead of obtaining the documents from AstraZeneca, plaintiffs have insisted that Saatchi produce, at a minimum, all documents that relate to nearly 200 projects dating back to 2000. If plaintiffs continue to refuse to narrow their requests, as counsel for Saatchi has asked

---

[2] Saatchi, however, only started to do work for AstraZeneca on Seroquel in or around 2000. (*See* Balaban Aff., ¶2.)

them to do on numerous occasions, Saatchi will be required to locate, gather and review approximately 49 boxes of documents as well as electronic files, including over 14,000 computer files totaling twenty gigabytes of electronic data on Saatchi's shared drive and the e-mail accounts of dozens (at a minimum) of Saatchi employees. (*See* Balaban Aff. at ¶¶9- 15.) Once this is done and the documents are provided to Saatchi's attorneys, attorneys will have to review them for attorney-client privilege, work product and confidentiality determinations. If requested by plaintiffs, a privilege log also will have to be prepared. (Balaban Aff. at ¶15.) Simply put, "[t]he volume of potentially responsive documents and the high-ranking status of the managers and employees who will be required to spend substantial time in helping to collect these documents [will] result in a substantial diversion of resources" for Saatchi. *Concord*, 169 F.R.D. at 51; *see also Grigsby*, 2001 WL 1135620 at *4 (quashing non-party subpoena containing "overbroad production requests that would surely amount to truckloads of documents from each non-party witness").

Plaintiffs' subpoenas are overbroad, impose an undue burden upon Saatchi and fail to allow a reasonable time for compliance. As such, the subpoenas should be quashed. *See* Fed. R. Civ. P. Rule 45(c); *Concord*, 169 F.R.D. at 50 (quashing subpoena as overbroad when subpoena demanded "virtually every document in [the non-party's] files nationwide for the past ten years relating to any aspect of [the subpoenaing party's opposing party's] business"). Even as narrowed, the subpoenas remain excessively broad, requiring production in an extremely short amount of time. This has imposed, and will continue to impose, an enormous burden on Saatchi. Moreover, despite counsel for Saatchi's attempts to negotiate a reasonable production in a reasonable amount of time given the scope insisted on by plaintiffs, counsel for plaintiffs *demanded* that all documents be produced by October 3rd or they would file a motion to compel, imposing even more burden on Saatchi. (*See* Balaban Aff., ¶8, Ex. B.) Such behavior should

not be tolerated by this Court. *See, e.g., Prescient Acquisition Group, Inc. v. MJ Publ'g Trust, MJ-ATV*, 2006 WL 2996645, *3 (S.D.N.Y. Oct. 13, 2006) (fact that overbroad subpoena requests issued to non-party were narrowed after negotiations between subpoenaing party and non-party not relevant when subpoena requests remain overbroad).

### B. Plaintiffs' Subpoenas Impose An Undue Expense On Saatchi

This Court should quash the subpoenas and issue a protective order because they impose an undue expense on Saatchi. *See* Fed. R. Civ. P. 45 (c)(1) and 26(c). Plaintiffs' refusal to further narrow their requests will necessarily require an inordinate amount of time by Saatchi and its attorneys to locate, gather and review all of the requested documents. While it is premature to quantify this expense, Saatchi employees have been, and will continue to be, diverted from their normal work activities for which they earn their normal hourly rates. Saatchi also will incur significant legal fees if its attorneys have to review, make privilege and confidentiality determinations and prepare a privilege log for such a vast number of documents. All of this will result in an undue expense on Saatchi -- a non-party to the MDL litigation. Plaintiffs would like to impose such a tremendous burden in both time and expense on Saatchi without having to fully compensate it for that time and expense. They cannot have it both ways. As discussed below, to the extent Saatchi is ordered to comply with the subpoenas, it should be fully compensated for its expense. In addition, under Rule 37(a)(4), Saatchi should be awarded its costs, including attorneys' fees, associated with having to respond to plaintiffs' Motion and to bring its own motion to quash and for a protective order. Instead of continuing negotiations with Saatchi, as its counsel urged counsel for plaintiffs to do on multiple occasions, they filed the Motion taking up yet more time and money of a non-party.

## II. TO THE EXTENT SAATCHI IS ORDERED TO COMPLY WITH THE SUBPOENAS, PLAINTIFFS SHOULD COMPENSATE IT FOR ANY COSTS ASSOCIATED WITH COMPLIANCE

Rule 45 of the Federal Rules of Civil Procedure requires that an order to compel production under a subpoena "protect any person who is not a party . . . from significant expense resulting from the inspection and copying commanded." Fed. R. Civ. P. 45(c)(2)(B); *see also MacNamara v. City of New York*, 2006 WL 3298911, *15 (S.D.N.Y. Nov. 13, 2006) ("[C]ourts . . . give special weight to the burden on non-parties of producing documents to parties involved in litigation"); *Jones v. Hirschfield*, 219 F.R.D. 71, 74 (S.D.N.Y. 2003) ("[Rule 45(c) provides additional protection for non-parties subject to a subpoena"). Under Federal Rules 45 and 26, Saatchi should be protected from incurring the costs of compliance with subpoenas in a litigation in which it is neither a party nor has any interest. *See, e.g., Prescient*, 2006 WL 2996645 at *3 (shifting costs of compliance with subpoena to subpoenaing party when served subpoena was overbroad); *Israel v. Carpenter*, 2002 WL 1424594, *1 (S.D.N.Y. Jun. 28, 2002) (same). Accordingly, if this Court issues an order to compel Saatchi to comply with plaintiffs' subpoenas, the Court should direct them to compensate Saatchi for costs relating to its compliance, including attorneys' fees. *See Carpenter*, 2002 WL 1424594 (requiring subpoenaing party to pay reasonably estimated costs of production, including attorneys' fees, to non-party prior to receiving production from non-party). Indeed, plaintiffs admit that Saatchi is entitled to the reasonable costs of production. (*See, e.g.*, Motion at ¶42.)

At the outset, counsel for Saatchi informed counsel for plaintiffs that Saatchi was prepared to produce a reasonable number of documents within a reasonable period of time provided that any costs associated with such a production, including attorneys' fees, were paid for by plaintiffs. Far from attempting to evade its obligations, Saatchi has engaged in good faith negotiations with plaintiffs' counsel regarding its compliance with the subpoenas. (*See* Balaban

Aff., ¶¶4-9.) Plaintiffs, however, have refused to narrow their requests to a point where they are not overbroad and will not impose an undue burden on Saatchi. (*Id.* at ¶¶9-15.) By failing to do so, plaintiffs should fully bear Saatchi's costs of compliance, including attorneys' fees.

While plaintiffs concede their responsibility for costs (*see, e.g.*, Motion at ¶42), without any support, they claim that the Court should excuse them from paying *any* costs. (*See id.* at ¶41.) They then proceed to argue that if the Court does award costs, such an award shall be kept to a minimum. (*See id.* at ¶¶42-47.) This Court should deny plaintiffs' attempt to evade their obligations to Saatchi and the other non-parties. In determining if a non-party should have to bear any costs, the court considers: 1) whether the non-party actually has an interest in the outcome of the case; 2) whether the non-party can more readily bear the costs than the requesting party; 3) whether the litigation is of public importance, and 4) whether the subpoena as served is overbroad. *See, e.g., In re Law Firms of McCourts and McGrigor Donald*, 2001 WL 345233, *1 (S.D.N.Y. Apr. 9, 2001) (considering first three factors); *Prescient*, 2006 WL 2996645 at *3 (considering fourth factor). All of these factors mitigate in favor of plaintiffs bearing the full costs of Saatchi's compliance.

Plaintiffs concede that the subpoenas are overbroad, as evidenced by their later agreement to narrow their requests to specific Seroquel-related projects (even though this still constitutes a vast number of documents and fails to cure the overbreadth and burdensome issues). (*See* Balaban Aff. at ¶¶7-8.) Saatchi does not have an interest in the outcome of this private dispute between AstraZeneca and plaintiffs, despite plaintiffs' baseless attempt to claim otherwise.[3] Plaintiffs also have not provided any evidence that they are unable to finance their

---

[3] Plaintiffs rely on *In re Honeywell Int'l Inc. Sec. Litig.*, 230 F.R.D. 293 (S.D.N.Y. 2003) and *First American Corp. v. Price Waterhouse*, 184 F.R.D. 234 (S.D.N.Y. 1998) in support of their argument that Saatchi is an interested party to this case. (*See* Motion at ¶¶41-42.) In both *Honeywell* and *First American*, however, the subpoenaed non-party was an auditor for a defendant accused of fraudulent activities. As noted by the Court in *First American*, an auditor

defense. Moreover, the mere fact that Saatchi is a large company does not in any way obligate it, as a non-party, to pay for the cost of a massive and expensive document production. *See, e.g., McCourts*, 2001 WL 345233 at *2 (requesting party failed to prove that non-party was better able to bear costs of production when it "presented no evidence concerning the financing of their defense").

As set forth in the Balaban Affidavit, it is premature to provide a meaningful estimate of costs. (*See* Balaban Aff. at ¶16.) Consistent with New York law, however, Saatchi is prepared to supplement the record with the actual time spent by, and the fees associated with, Saatchi and their IT professionals and Sonnenschein, in responding to the non-party subpoenas, including the cost associated with having to respond to plaintiffs' Motion, for reimbursement by plaintiffs. We also will provide any other actual costs, including reproduction costs. *See, e.g., Kahn v. General Motors Corp.*, 1992 WL 208286, *3. *See also McCourts*, 2001 WL 345233 at *1 (ordering subpoenaing party to reimburse non-party for costs incurred in complying with subpoena); *Prescient*, 2006 WL 2996645 at *3 (same).

### III.  SAATCHI HAS NOT WAIVED ITS RIGHT TO OBJECT TO PLAINTIFFS' SUBPOENAS

In their Motion, plaintiffs claim that Saatchi has waived any objections to the subpoenas by not serving written objections within 14 days after service of the subpoena. (*See* Motion at ¶27.) In so doing, plaintiffs blatantly misstate the facts, (*see, e.g., id.* at ¶40), completely failing to apprise the Court of the regular communications between counsel for plaintiffs and Saatchi immediately after receipt of the subpoenas. As set forth more fully in the Balaban Affidavit,

---

is given the "unique responsibility" of scrutinizing a company's financial records and legitimizing the company's accounting practices to the investing public. *First American*, 184 F.R.D. at 242. This is wholly distinct from the marketing services provided by Saatchi. Moreover, even in *First American*, the non-party auditor was granted a substantial portion of the costs of production, including attorneys' fees. *Id.* at 244-245.

upon receipt of the subpoenas, counsel for Saatchi contacted plaintiffs' counsel to obtain an extension to respond. An initial extension was agreed to until the middle of August and plaintiffs' counsel informed counsel for Saatchi that "a longer extension will be fine." (Balaban Aff., ¶3, Ex. B.) Thereafter, counsel for Saatchi engaged in good faith negotiations with counsel for plaintiffs in an effort to narrow the overbroad and burdensome requests up until plaintiffs filed their motion to compel. (Balaban Aff., ¶¶4-9.) During this entire time, counsel for Saatchi informed plaintiffs' counsel, both verbally and in writing, that Saatchi objected to the subpoenas on grounds that they were overbroad and imposed an undue burden and expense on Saatchi. (Balaban Aff., ¶5, Ex. B.)

In support of their waiver claim, plaintiffs rely on the *Concord* opinion out of this district. (*See* Motion at ¶27 (*citing Concord*, 169 F.R.D. at 44).) This case directly contradicts their claim and supports Saatchi's motion to quash and for a protective order. In *Concord*, the court granted a non-party's motion to quash a subpoena duces tecum under Federal Rules 26(c) and 45 on grounds that the subpoena was overbroad and created an undue burden -- exactly as Saatchi requests from this Court. *See Concord* at 47-48, 53. As plaintiffs do here, the subpoenaing party claimed that the non-party should not be entitled to the relief requested because it did not submit written objections within 14 days of service of the subpoena. *Id.* at 51. The Court rejected this claim. *Id.* at 52. As is the case here, the Court found that the non-party had "no interest in the outcome of that litigation, and thus . . . should not be subject to the same burden of production that a party to the underlying litigation is subject." *Id.* at 52. In granting the non-party's motion, the Court noted that counsel -- just as counsel here -- "were in frequent contact concerning compliance with [the subpoena]," in a course of conduct that was "one of cooperation" and that led the non-party "to reasonably expect[] that [the subpoenaing party] would continue to afford an opportunity to informally negotiate the scope of [the subpoena's] document request." *Id.* at

52. *See also Semtek Int'l, Inc. v. Merkuriy Ltd.*, 1996 WL 238538, *2 (N.D.N.Y. May 1, 1996) (dismissing waiver claim because subpoena request required "production of thousands of pages of documents," imposed a "significant burden" on the non-party and there was no evidence of "intentional failure or bad faith"); *Grigsby*, 2001 WL 1135620 at *4 (dismissing waiver claim because subpoena requests were "non-specific, overbroad production requests that would surely amount to truckloads of documents from each non-party witness"); *Rouson v. Eicoff*, 2006 WL 2927161 (E.D.N.Y. Oct. 11, 2006) (same). Saatchi was at all times acting in good faith to negotiate the overbroad and unduly burdensome subpoenas served by plaintiffs. (*See* Balaban Aff. at ¶¶3-9.)[4]

## IV. THIS COURT SHOULD NOT TRANSFER THIS DISPUTE TO THE MDL LITIGATION

This Court should reject plaintiffs' request to transfer this dispute to the MDL litigation pending in the United States Court of the Middle District of Florida. This Court has jurisdiction to hear plaintiffs' Motion and Saatchi's motion to quash the subpoenas and for a protective order. Saatchi is a New York corporation with its principal place of business in New York. Saatchi is not a party to the MDL litigation and has no interest in the outcome of that litigation. It should not have to expend yet even more time and resources to be heard in the Florida federal court, along with what are apparently dozens of other non-party disputes. Transfer to the MDL Court to hear and decide these matters also undoubtedly will take a much longer time for resolution. If this Court should decide to transfer the dispute, this Court should request that the MDL Court

---

[4] Plaintiffs' reliance on non-New York cases is misplaced. *See Wang v. Hsu*, 919 F.2d 130 (10th Cir. 1990) (non-party provided no notice prior to deposition date of objections to subpoena); *Wright v. Montgomery County*, 1999 WL 292083, *9 (E.D. Pa. 1999) (no communication between the parties prior to late filing of objections); *Alexander v. FBI*, 186 F.R.D. 21 (D.D.C. 1998) (multiple non-parties provided no notice of objections prior to deposition date); *Creative Gifts, Inc. v. UFO*, 183 F.R.D. 568, 57 (D.N.M 1998) (no significant communications prior to deposition date); *Deal v. Lutheran Hospitals & Homes*, 127 F.R.D. 166, 168 (D. Alaska 1989) (same).

- 11 -

apply New York law to the dispute instead of the laws of a state where Saatchi has no connection.

In support of their request, plaintiffs rely on decisions from this district that grant transfer based on different sets of facts. In *Stanziale v. Pepper Hamilton LLP*, 2007 WL 473703 (S.D.N.Y. Feb. 9, 2007), the *non-party* requested that the case be transferred pursuant to 28 U.S.C. §1407(b) -- a fact that the court specifically noted in its ruling: "where the nonparty indicates a preference for a forum other than the issuing court, the notes and commentary to [Rule 45] suggest that transfer, in the issuing court's discretion, would accord with Rule 45's objectives." *Id.* at *4. In contrast, Saatchi strongly *opposes* transfer due to the burden it would impose on it as a non-party -- a fact that the *Stanziale* court determined would shift the ruling: "[A] motion to compel under Rule 45(c)(2)(B) should, like the motion to quash or modify, be made to the court from which the subpoena issued, which will presumably be a court in a district convenient to the nonparty since *it is of course the nonparty whose convenience Rule 45 is most concerned about protecting.*" *Id.* (internal citations omitted) (emphasis added).[5]

---

[5] The other two Southern District of New York cases cited by Plaintiff, *In re Subpoena Issued to Boies, Schiller, & Flexner LLP*, 2003 WL 1831426 (S.D.N.Y. Apr. 3, 2003) and *Devlin v. Transp. Commc'ns Int'l Union*, 2000 WL 249286 (S.D.N.Y. Mar. 6, 2000), do not address the non-party's position on the transfer motion.

## CONCLUSION

For the reasons stated herein and as set forth in the Balaban Affidavit, Saatchi respectfully requests that the Court grant its motion to quash the subpoenas and for a protective order and deny plaintiffs' Motion in its entirety.

Dated: October 5, 2007

Respectfully submitted,

SONNENSCHEIN NATH & ROSENTHAL LLP

By: _____
Rachel G. Balaban

1221 Avenue of the Americas
New York, New York, 10020-1089
(212) 768-6700

*Attorneys for Non-Parties Klemtner Advertising, Inc. and Saatchi & Saatchi Healthcare*

SONNENSCHEIN NATH & ROSENTHAL LLP
Rachel G. Balaban (RB8472)
1221 Avenue of the Americas
New York, New York 10020
(212) 768-6700
Fax: (212) 768-6800
*Attorneys for Non-Parties Klemtner Advertising, Inc.
and Saatchi & Saatchi Healthcare*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| IN RE: SUBPOENAS SERVED ON HARRIS INTERACTIVE, INC. KLEMTNER ADVERTISING, INC. SAATCHI & SAATCHI HEALTHCARE, AND EDELMAN | Misc. Action No. M8-85 |
|---|---|

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| IN RE: SEROQUEL PRODUCTS LIABILITY LITIGATION THIS RELATES TO: ALL CASES | MDL 1769 |
|---|---|

### CERTIFICATE OF SERVICE

I, Rachel G. Balaban, hereby certify that on October 5, 2007, true and correct copies of the attached document, in the above captioned proceeding, were served in accordance with the Federal Rules of Civil Procedure, via Federal Express overnight delivery, upon:

Holly Wheeler
Blizzard McCArthy & Nabers
440 Louisiana Street - Suite 1710

Houston, TX 77002
*Attorneys for Plaintiffs*

Michael Pederson, Esq.
Paul Pennock, Esq.
Weitz & Luxenberg, P.C.
180 Maiden Lane - 17th Floor
New York, NY 10038
*Co-Counsel for Plaintiffs*

Philip G. Spellane, Esq.
Harris Beach
99 Garnsey Road
Pittsford, NY 14534
*Attorneys for Harris Interactive, Inc.*

Brian S. Kaplan, Esq.
Kasowitz, Benson, Torres, & Friedman, LLP
1633 Broadway
New York, NY 10019
*Attorneys for Edelman, Inc.*

Fred Magaziner
Dechert LLP
Cira Center
2929 Arch Street
Philadelphia, PA 19104

Kenneth E. Friedman
Sidley Austin LLP
555 West Fifth Street
Los Angeles, California 90013

*Attorneys for AstraZeneca Pharmaceuticals LP and AstraZeneca LLP*

Dated: October 5, 2007
New York, New York

SONNENSCHEIN NATH & ROSENTHAL LLP

By: _____
Rachel G. Balaban

1221 Avenue of the Americas
New York, New York 10020
Phone: (212) 768-6700

2