DOC # 552   ORIGINAL

Brian S. Kaplan (BK 4922)
KASOWITZ, BENSON, TORRES
  & FRIEDMAN LLP
1633 Broadway
New York, NY 10019
(212) 506-1700
*Attorneys for Non-party Daniel J. Edelman, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: SUBPOENAS SERVED ON HARRIS INTERACTIVE, INC., KLEMTNER ADVERTISING, INC., SAATCHI & SAATCHI HEALTHCARE, AND EDELMAN | Misc. Action No. M8-185 |

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

-------------------------------------------X
IN RE SEROQUEL PRODUCTS          :
LIABILITY LITIGATION
-------------------------------------------X      MDL 1769
THIS RELATES TO                         :
ALL CASES                                 :
-------------------------------------------X

**MEMORANDUM OF LAW OF NON-PARTY EDELMAN, INC. IN
OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND IN SUPPORT
OF ITS MOTION TO QUASH THE SUBPOENA DUCES TECUM
OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**

## TABLE OF CONTENTS

FACTUAL BACKGROUND..............................................................................................................1

    A.  Extreme Overbreadth of and Undue Burden Associated With
        the Subpoena and Refusal of Plaintiffs' Counsel to Narrow Scope..................................2

    B.  Retention of Edelman's Litigation Communications
        Team as Attorney Work Product Expert Consultants .......................................................4

    C.  Additional Details Concerning the Burden Associated With Documents and
        Communications Covered By the Scope of the Subpoena as Presently Drafted .............6

ARGUMENT....................................................................................................................................10

    A.  The Subpoena Should Be Quashed And/Or A Protective
        Order Granted Because It Is Overly Broad And Unduly Burdensome ..........................11

    B.  At Minimum, The Subpoena Should Be Quashed And/Or A Protective Order
        Granted To The Extent It Seeks Materials From Edelman's Litigation Engagement ....12

    C.  In Any Event, Plaintiffs Should Be Ordered To Reimburse Edelman For The
        Anticipated Costs and Legal Fees Incurred In Responding To The Subpoena .............15

CONCLUSION ...............................................................................................................................16

i

# TABLE OF AUTHORITIES

**Cases**

*BCE West, L.P.,*
　2000 U.S. Dist. LEXIS 12590 (S.D.N.Y. Aug. 31, 2000)...........................................................13

*Byrnes v. Empire Blue Cross Blue Shield,*
　1999 U.S. Dist. LEXIS 17281 (S.D.N.Y. Nov. 4, 1999)...........................................................13

*Concord Boat Corp. v. Brunswick Corp.,*
　169 F.R.D. 44 (S.D.N.Y. 1996)..................................................................................10, 11, 12

*First American Corp.,*
　184 F.R.D. 234, 241 (S.D.N.Y. 1998).....................................................................................16

*FTC v. GlaxoSmithKline,*
　294 F.3d 141 (D.C. Cir. 2002)...........................................................................................13, 14

*Imperial Corp. of America v. Durkin,*
　174 F.R.D. 475 (S.D. Cal. 1997) ............................................................................................15

*In re Copper Market Antitrust Litigation,*
　200 F.R.D. 213 (S.D.N.Y. 2001) ............................................................................................14

*Law Firms of McCourts and McGrigor Donald,*
　2000 U.S. Dist. LEXIS 20287 (S.D.N.Y. April 9, 2001) ...................................................15, 16

*Linder v. Calero-Portocarrero,*
　251 F.3d 178, 182 (D.C. Cir. 2001)........................................................................................16

*Night Hawk Limited v. Briarpatch Ltd.,*
　2003 U.S. Dist. LEXIS 23179 (Dec. 23, 2003) ......................................................................10

*Prescient Acquisition Group, Inc. v. MJ Publishing Trust.,*
　2006 U.S. Dist. LEXIS 75383 (S.D.N.Y Oct. 3, 2006)............................................................16

*Securities and Exchange Commission v. Thrasher,*
　1996 U.S. Dist. LEXIS 3327 (S.D.N.Y. March 20, 1996) .......................................................15

*Travelers Indemnity Co. v. Metropolitan Life Ins. Co.,*
　228 F.R.D. 111 (D. Conn. 2005) ............................................................................................12

*United States v. Adlman,*
　134 F.3d 1194 (2d Cir. 1998) .................................................................................................13

*United States v. IBM Corp.* 83 F.R.D. 97 (S.D.N.Y. 1979) .........................................................10

## Other Authority

Fed. R. Civ. P. 26.................................................................................................................*passim*

Fed. R. Civ. P. 45.................................................................................................................*passim*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| IN RE: SUBPOENAS SERVED ON HARRIS INTERACTIVE, INC., KLEMTNER ADVERTISING, INC., SAATCHI & SAATCHI HEALTHCARE, AND EDELMAN | Misc. Action No. M8-185 |
|---|---|

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

-------------------------------------------------X
IN RE SEROQUEL PRODUCTS          :
LIABILITY LITIGATION             :
-------------------------------------------------X     MDL 1769
THIS RELATES TO                  :
ALL CASES                        :
-------------------------------------------------X

### MEMORANDUM OF LAW OF NON-PARTY EDELMAN, INC. IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND IN SUPPORT OF ITS MOTION TO QUASH THE SUBPOENA DUCES TECUM OR, IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER

Non-party Daniel J. Edelman, Inc. ("Edelman") submits this memorandum of law,

pursuant to Fed. R. Civ. P. 45(c) and 26(c), in opposition to Plaintiffs' motion to compel the

production of documents and in support of its motion to quash the subpoena *duces tecum* and

deposition upon written questions served by Plaintiffs or, in the alternative, for a protective order.

### FACTUAL BACKGROUND[1]

Edelman is not a party to the dispute between Plaintiffs and AstraZeneca and has no

financial interest in its outcome. It is a public relations firm which, in early 2003, began

performing public relations services for Seroquel, a drug produced by AstraZeneca, the defendant

in the underlying products liability multi-district litigation (the "MDL Litigation"). Since 2003,

---

[1] The facts in this section are derived from the accompanying Declaration of Brian S. Kaplan dated October

1

Edelman has performed over 100 separate Seroquel-related projects involving more than 50 current and former employees located in various offices throughout the country. As described in more detail below, two such projects relate to the provision of expert consulting services in pending and/or anticipated Seroquel-related litigation by certain employees in Edelman's Litigation Communications group from 2006 through in or about April 2007, for which they were retained separately by the law firm of Sidley Austin LLP, outside counsel to AstraZeneca. Moreover, Edelman continues to perform work on Seroquel-related projects on an ongoing basis, meaning that potentially responsive documents and communications are continuously being created on a daily basis by dozens of Edelman employees working on multiple projects. (Kaplan Decl. ¶ 2).

A.   Extreme Overbreadth of and Undue Burden Associated With
the Subpoena and Refusal of Plaintiffs' Counsel to Narrow Scope

On or about July 2, 2007, Plaintiffs served a subpoena *duces tecum* and deposition upon written questions (the "Subpoena") upon Edelman seeking -- literally -- every document and communication ever created from 1986 through the present relating to Seroquel. (See Kaplan Decl., Ex. A). Specifically, the Subpoena seeks, among other things, "[a]ny and all documents prepared by, prepared for, or received by Edelman relating to Seroquel," "[a]ny and all communications between AstraZeneca and Edelman relating to Seroquel," and "[a]ny and all communications between Edelman and any other person relating to Seroquel." Counsel for Edelman served written objections to the Subpoena on July 20, 2007 with a cover letter indicating Edelman's desire to discuss issues including clarification and narrowing of the excessively broad scope of the Subpoena, a copy of which are attached Exhibit B to the Kaplan Declaration.[2]

---

5, 2007 ("Kaplan Decl.") and the exhibits attached thereto.
[2] On July 13, 2007, Plaintiffs agreed to extend for seven days, from July 16, 2007 to July 23, 2007, Edelman's time to serve written objections to the Subpoena. (Kaplan Decl. ¶ 3).

(Kaplan Decl. ¶ 4).  Plaintiffs initially took the position that they were not able to compromise on the scope of the Subpoena at all, insisting that because they did not know what documents and communications Edelman possessed that would be relevant to the MDL Litigation, they needed everything.  In other words, Plaintiffs essentially admitted that the Subpoena constituted a massive fishing expedition.  (Kaplan Decl. ¶ 5).

On or about September 14, 2007, Plaintiffs requested a list of projects Edelman performed for Seroquel, which Edelman compiled and provided on September 19, 2007.  (See Kaplan Decl., Ex. C).  That same day, however, Plaintiffs purported to serve a motion to compel production of documents to Edelman and other non-parties, resulting in the motion practice that Edelman had hoped to avoid or at least mitigate through good faith discussions with Plaintiffs' counsel.[3]  (Kaplan Decl. ¶ 6).

The project list Edelman provided -- which, in Plaintiffs' memorandum of law in support of their motion to compel they incorrectly represent to this Court they never received (Pl. Mem. at 19, ¶ 35)[4] -- reflected approximately 100 different projects that Edelman worked on for Seroquel from 2003 to the present.  (Kaplan Decl. ¶ 8, Ex. E).  Unfortunately, Plaintiffs were willing to exclude only a relatively small number of projects from the list, while reserving the right to add such projects back to the list if deemed appropriate by Plaintiffs.  Given the 70 projects remaining on the list, Plaintiffs' purported accommodation was nothing of the sort.  Inasmuch as Plaintiffs continue to request all documents and communications relating to Seroquel, the Subpoena as modified remains tantamount to stating they continue to need virtually everything.  (Kaplan Decl. ¶ 9).

---

[3] Plaintiffs re-filed and served a revised motion to compel on September 28, 2007, presumably because their initial attempt to file the motion appears not to have complied with this Court's rules inasmuch as it lacked, among other things, a Notice of Motion.
[4] Indeed, in Plaintiffs' letter dated September 21, 2007, attached to the Kaplan Declaration as Exhibit F , counsel acknowledged that they received the project list on September 19, 2007.

Suffice it to say, the burden associated with complying with the Subpoena is enormous, and, as detailed below, would entail lost revenue resulting from Edelman's loss of business, costs and attorneys' fees, estimated to be several hundreds of thousands of dollars, , not to mention the tremendous inconvenience and harm to Edelman caused by diverting the time and energies of its public relations specialists to searching for documents that may very well have little to no relevance to the issues in dispute in the litigation, and which may have already been produced (or which could be produced) by AstraZeneca in the MDL Litigation.  (Kaplan Decl. ¶ 10).

B.    Retention of Edelman's Litigation Communications
       Team as Attorney Work Product Expert Consultants

In addition -- as a matter of paramount importance to Edelman and, upon information and belief, AstraZeneca -- a large quantity of documents and communications responsive to the Subpoena constitute work product of Edelman's Litigation Communications team, located in Washington D.C., performed for AstraZeneca and its lawyers in connection with the Seroquel litigation.[5]   Many such documents and communications prepared and/or received by the Litigation Communications team are thus protected by privilege, including but not limited to the attorney-client privilege and the attorney work product doctrine.  (Kaplan Decl. ¶ 11).

Specifically, SidleyAustin LLP retained Edelman's Litigation Communications team, including but not limited to Charles Bakaly, on June 30, 2006 to provide expert consulting services to assist AstraZeneca with AstraZeneca's defense of pending and anticipated Seroquel-related litigation.[6]   Edelman documents or communications created by Edelman's Litigation Communications team to assist AstraZeneca in responding to Seroquel legal claims are clearly

---

[5]  A description of Edelman's Litigation Communications group taken from Edelman's website is attached as Exhibit H to the Kaplan Declaration.

[6]  Upon information and belief, Edelman's Litigation Communications team began work for AstraZeneca in the second quarter of 2006 in anticipation of a formal retention for the litigation communications engagement.  (Kaplan Decl. ¶ 12).

protected by the work product doctrine or the attorney-client privilege. (Kaplan Decl. ¶ 12).

As supported by the Kaplan Declaration, the documents relating to the Seroquel litigation project can largely be isolated and should be excluded from any document production. It is estimated that there are approximately 11,500 emails of various lengths (approximately half with attachments), 990 electronic documents (other than emails) of various lengths, 2-4 file drawers and 5-10 binders filled with paper documents all associated with AstraZeneca's response to Seroquel-related litigation, and thus potentially responsive to the Subpoena as currently drafted. While some of these documents may not be privileged, Edelman is unaware of any circumstances that would justify the unreasonable burden that Plaintiffs seek to impose. Plaintiffs are able to obtain relevant, unprivileged documents reflecting Edelman communications from AstraZeneca – to whom (along with its counsel, Sidley Austin LLP) the right to assert privilege and work product belongs. Edelman is not a party to the litigation, and its internal communications, to the extent they do not constitute work product, are unlikely to bear on the merits of this products liability case. (Kaplan Decl. ¶ 13).

The burden on Edelman, as a non-party, would be as significant as it is unjustified. Edelman estimates that it would take the three principal Litigation Communications employees who are actively employed by Edelman and who were significantly involved with this litigation-related project several days to gather these documents -- both paper and electronic, again, all of which will have to be scrutinized for privilege -- and coordinate with Edelman's Information Technology ("IT") Engineer to have the documents copied or scanned. The hourly rates for these three employees range from $160 to $465 per hour. Thus, the efforts required for merely gathering and copying the privileged documents would likely result in excess of $20,000 in lost earnings to Edelman, as these individuals are fully engaged and would need to take time away

from other client-related projects.  Moreover, the diversion of these employees' time and energy would prevent a hardship to Edelman and its clients they are presently servicing.  (Kaplan Decl. ¶ 14).

Once the voluminous number of privileged documents are copied or scanned (at further significant expense), it would be extraordinarily labor intensive and costly for Edelman to create a detailed privilege log of tens of thousands of documents.  With Edelman's outside counsel who are involved in work relating to the Subpoena having hourly fees that range between $325 and $575 per hour, the cost of this exercise could easily exceed $75,000 in attorney's fees.  Accordingly, all documents or communications pertaining to work performed by the Litigation Communications team should be excluded from the scope of the Subpoena and Edelman should be relieved of any obligation to create a detailed privilege log associated with any such documents.  (Kaplan Decl. ¶ 15).

C.      Additional Details Concerning the Burden Associated With Documents and Communications Covered By the Scope of the Subpoena as Presently Drafted

Separate and apart from the privilege issues identified above, the work associated with identification, review, copying and production of documents and communications that are covered by the scope of the Subpoena as presently drafted, are staggeringly burdensome, as supported by the Kaplan Declaration.

Counsel is advised that the majority of the documents potentially responsive to the Subpoena are in electronic form, stored on the individual personal computer hard drives of approximately 50 different employees and, in certain instances, on the company's computer network.  (Kaplan Decl. ¶ 16).  Counsel is also advised that Edelman employees do not store and/or index emails in any single, uniform manner.  For example, certain employees store emails by month or year, others by client (e.g., AstraZeneca), others by the specific product of a client

6

(e.g., Seroquel), others by project or type of project (e.g., Media Monitoring or a specific industry conference), and still others by general subject matter or category (e.g., bipolar disorder). Thus, in many instances, Edelman would be unable to isolate Seroquel-specific data and would have to review *all* the contents of an employee's personal electronic files to locate responsive data. Moreover, given Plaintiffs' refusal to reasonably narrow the universe of data or people, or provide very specific search terms or targeted documents being sought to assist Edelman in reducing the scope of documents and communications at issue, the Subpoena essentially asks Edelman to shoulder the burden to identify, review and copy and produce (at least for its counsel's initial inspection for relevance, privilege, etc.) all work performed by employees who are reasonably likely to have performed work during the same period relating to Seroquel. (Kaplan Decl. ¶ 17).

Based on communications with several employees and the recent examination of a sampling of electronic data, Edelman estimates that the average employee who worked on Seroquel projects has between two and four gigabytes of electronic data (predominantly emails) stored in his/her personal electronic folders. Although it difficult to quantify the number of pages correlative with a single gigabyte of data without closely examining the contents of each employees' personal folders, upon information and belief a single gigabyte can be estimated to be roughly equivalent to 100,099 pages of emails (at an average of 1.5 pages per document), or 64,782 pages of Microsoft Word files (at an average of 9 pages per document).[7] Thus, an average of three gigabytes of data per employee multiplied by approximately 50 employees who worked on Seroquel projects could be expected to yield roughly: (1) 150 gigabytes of data; (2) an enormous quantity of paper that could easily exceed 1,000,000 pages; and (3) exorbitant copying/printing and reviewing costs. (Kaplan Decl. ¶ 18). Moreover, approximately ten

---

[7] Attached as Exhibit G to the Kaplan Declaration is a LexisNexis Discovery Services Fact Sheet listing the page approximations for a single gigabyte of data.

additional gigabytes of additional Seroquel-related data exists on shared folders stored on Edelman's computer network, equivalent to several hundreds of thousands of pages of documents. We are advised that these shared folders predominantly encompass documents other than emails, such as Microsoft Word documents, Microsoft Excel spreadsheets and Microsoft PowerPoint presentations. (Kaplan Decl. ¶ 19).

It is estimated that each employee would need to spend approximately two hours working with Edelman's IT Engineer to identify the data that needs to be copied. Employee hourly billing rates range between approximately $63 and $550 per hour. Employees would also have to spend additional time searching for responsive paper documents.[8] Thus, it would be expected to cost Edelman over tens of thousands of dollars of lost billing for more than 50 employees to identify responsive data requiring copying. (Kaplan Decl. ¶ 20).

Once the data is identified -- a process that alone would involve approximately dozens and possibly as much as 75 hours of an IT Engineer's time -- the IT Engineer (or his assistants, to the extent they are available) would be expected to spend up to three hours copying data for each employee, a total that could potentially reach 200 hours (not including time required for copying data residing on the shared network folders). The IT Engineer's hourly rate is $260. Accordingly, the IT Engineer's time alone would cost Edelman approximately $60,000 in lost time and/or billing. (Kaplan Decl. ¶ 21).

Finally, even though a majority of documents identified would not be expected to be privileged -- again, in contrast with the Litigation Communications team work product and communications discussed above -- once the electronic data is copied it will have to be closely reviewed by attorneys for any attorney-client privilege and work product privilege issues, as well

---

[8] Upon information and belief, Edelman's documents (exclusive of the documents generated in connection with the Seroquel Litigation Communications team project) appear to be largely stored in electronic as

as confidentiality and relevance. This is particularly so given that, reflected above, the data from certain employees' personal folders, including emails, relate to clients other than AstraZeneca and projects other than those related to Seroquel. (Kaplan Decl. ¶ 22).

The cost of such review includes attorney time, as well as the expense of converting the data into a format that enables it to be uploaded onto a searchable electronic database designed for document review. Given the enormous quantity of data, Edelman estimates that the attorney's fees and costs associated with the document review alone -- exclusive of time spent responding to the Subpoena or preparing these motion papers, conferring with Plaintiff's counsel or coordinating with Edelman employees -- could easily exceed $100,000. (Kaplan Decl. ¶ 23).

As the foregoing detail reflects, Plaintiffs have requested a gargantuan quantity of documents -- a virtually unquantifiable amount -- the production of which will cause Edelman and its employees severe burden and will impose an enormous strain on its operations. It will also cost Edelman significant lost revenue resulting from its loss of business. Indeed, the time spent by Edelman's employees investigating the detail set forth herein and conferring with Edelman's attorneys in connection with the Subpoena and this motion has already cost Edelman thousands of dollars in lost revenue. (Kaplan Decl. ¶ 24).

Accordingly, the Subpoena should be quashed in its entirety or, at minimum, quashed with respect to all documents or communications relating to work performed by Edelman's Litigation Communications team. In the alternative, a protective order should be entered to limit and reduce the scope of the Subpoena, as well as to exclude from the scope of the Subpoena all documents and communications relating to work performed by Edelman's Litigation Communications team or, at minimum, otherwise relieve Edelman of any obligation to create a detailed privilege log with respect to work performed by Edelman's Litigation Communications team. (Kaplan Decl. ¶ 25).

---

opposed to paper form.

## ARGUMENT

This Court has the authority and the jurisdiction to hear this dispute and rule on the motions, and should do so to protect non-party Edelman. Rule 45(c)(3)(A) of the Federal Rules of Civil Procedure states, in pertinent part, that "[o]n timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it . . . requires disclosure of privileged or other protected matter and no exception or waiver applies; or . . . subjects a person to undue burden." "Whether a subpoena imposes upon a witness an 'undue burden' depends upon 'such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'" Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 49 (S.D.N.Y. 1996) (quoting United States v. IBM Corp., 83 F.R.D. 97, 104 (S.D.N.Y. 1979)); see also Night Hawk Limited v. Briarpatch Ltd., 2003 U.S. Dist. LEXIS 23179, at *23 (Dec. 23, 2003) (same).

Moreover, a non-party to the underlying litigation is entitled "to consideration regarding expense and inconvenience." Concord, 169 F.R.D. at 49, 52 (citations omitted) (finding that even though a non-party had access to the resources necessary to handle a complex litigation, it was "not a party to the complex litigation underlying the instant motion, [had] no interest in the outcome of that litigation, and . . . should not be subject to the same burden of production that a party to the underlying litigation is subject"); see also Fed. R. Civ. P. 45(c)(2)(B) (noting that non-parties must be protected from "significant expense resulting from the inspection, copying, testing, or sampling commanded").

Similarly, Fed. R. Civ. P. 26(c) provides that upon a showing of good cause, the court "may make any order which justice requires to protect a party or person from annoyance, embarrassment,

oppression, or undue burden or expense. . . ."  In addition, pursuant to Rule 26, discovery shall be

limited by the court if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative,
> or is obtainable from some other source that is more convenient, less
> burdensome, or less expensive; (ii) the party seeking discovery has
> had ample opportunity by discovery in the action to obtain the
> information sought; or (iii) the burden or expense of the proposed
> discovery outweighs its likely benefit, taking into account the needs
> of the case, the amount in controversy, the parties' resources, the
> importance of the issues at stake in the litigation, and the importance
> of the proposed discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2).

### A.  The Subpoena Should Be Quashed And/Or A Protective Order Granted Because It Is Overly Broad And Unduly Burdensome

As noted above, the Subpoena seeks every document or communication ever created

relating to Seroquel from the time when Edelman first began performing services for Seroquel in

2003 through the present.  As a matter of law, the Subpoena imposes an undue burden on Edelman

and should be quashed.

In Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 49-54 (S.D.N.Y. 1996), a case

directly on point, the court granted a non-party witness' motion to quash a subpoena *duces tecum*

pursuant to Fed. R. Civ. P. 45.  In so holding, the court explained that the subpoena was overbroad

and unreasonable on its face where, as here, it "effectively [sought] every document generated,

received or maintained by [the non-party] during a ten-year period of its representation of [the

defendant]."  Id. at 53.  In addition, because of the subpoena's overbreadth, it called for the

production of documents wholly irrelevant to the underlying litigation, including documents

unrelated to the specific project at issue.  Id. at 50-53.  Moreover, the subpoena was also

unreasonable because compliance with its terms "would subject numerous [non-party] employees

and managers in several branch offices to countless hours of research, analysis, and compilation."

Id. at 53. See also Travelers Indemnity Co. v. Metropolitan Life Ins. Co., 228 F.R.D. 111, 113-15
(D. Conn. 2005) (granting motion to quash subpoena served on non-party where the burden of
production placed on the non-party was unreasonable).

In this case, as in Concord, the Subpoena is overly broad and unreasonable on its face, in
that it seeks every document or communication in Edelman's possession, custody or control
relating to Seroquel. Compliance with the Subpoena would force dozens of Edelman employees to
spend hours searching for thousands of documents that may have little to no relevance to the
products liability litigation between Plaintiffs and AstraZeneca or, to the extent even remotely
relevant, presumably have already been produced or can be requested from party AstraZeneca. It
would also require an extraordinary amount of time for attorneys to review the documents for
confidentiality and privilege, an enormous hardship to Edelman.

Accordingly, as a matter of law, the Subpoena should be quashed in its entirety and/or a
protective order should be granted because of the undue burden it would inflict on Edelman, a
non-party to this dispute.

## B. At Minimum, The Subpoena Should Be Quashed And/Or A Protective Order Granted To The Extent It Seeks Materials From Edelman's Litigation Engagement

As shown above, Plaintiffs' subpoena is especially burdensome in seeking documents
created in the course of Edelman's Litigation Communications engagement for AstraZeneca. The
subpoena seeks a large number of documents (11,500 emails alone) from this one engagement.
Many of these documents are protected by privilege and the work product doctrine. In all
likelihood, most nonprivileged documents can be obtained from Defendant AstraZeneca. These
nonprivileged documents do not seem to be material at all, let alone sufficient cause to impose a
heavy burden on Edelman, a non-party. Accordingly,all documents or communications pertaining

to work performed by the Litigation Communications team should be excluded from the scope of the Subpoena and Edelman should be relieved of any obligation to create a detailed privilege log associated with any such documents.

A subpoena that seeks materials protected from disclosure by the attorney-client privilege, work product doctrine, or other recognized privilege against disclosure should properly be quashed. See, e.g., In re BCE West, L.P., 2000 U.S. Dist. LEXIS 12590 (S.D.N.Y. Aug. 31, 2000) (granting motion to quash non-party subpoena pursuant to Fed. R. Civ. P. 45(c)(3)(A) to the extent the subpoena sought documents protected by the attorney-client privilege). In this regard, the attorney-client privilege is not limited to communications directly between client and counsel. The privilege "also encompasses contacts between the attorney and a client's agent or representative and between the client and the attorney's agent, provided that the communications are intended to facilitate the provision of legal services by the attorney to the client. Byrnes v. Empire Blue Cross Blue Shield, 1999 U.S. Dist. LEXIS 17281, at *3 (S.D.N.Y. Nov. 4, 1999).

Similarly, the work product doctrine protects from discovery "documents 'prepared in anticipation of litigation or for trial' by the party or its attorney or by an agent of the party or attorney." Byrnes, 1999 U.S. Dist. LEXIS 17281, at *15-*16. Work product protection applies to "documents prepared 'because of' litigation or the prospect of litigation, regardless of whether the document was intended to assist in such litigation." Id. at *16 (citing United States v. Adlman, 134 F.3d 1194, 1196-1203 (2d Cir. 1998)).

Both the attorney-client privilege and the work product doctrine fully protect the efforts of public relations consultants like Edelman to the extent they are an integral part of their clients' response to litigation. See FTC v. GlaxoSmithKline, 294 F.3d 141, 148 (D.C. Cir. 2002) (attorney-client privilege protects communications from public relations firm assisting lawyers for

13

drug manufacturer in responding to FTC subpoena); In re Copper Market Antitrust Litigation, 200 F.R.D. 213, 219 (S.D.N.Y. 2001) (Swain, J.) (attorney-client privilege and work product doctrine protected public relations firm in assisting client to respond to antitrust claims and related scandal). These cases recognize that, when defendants face large and publicly-significant claims, their litigation response will often include a public relations response. These decisions refused to restrict the scope of the privilege merely because the public relations consultants were not employees of the client. "There is no reason to distinguish between a person on the corporation's payroll and a consultant hired by the corporation if each acts for the corporation and possesses the information needed by attorneys in rendering legal advice." GlaxoSmithKline, 294 F.3d at 148 (quoting Copper Market, 200 F.R.D. at 219).

In this case, because Edelman's Litigation Communications team was retained by counsel for AstraZeneca specifically to provide services in connection with the defense of Seroquel-related litigation, and communicated directly with AstraZeneca's outside and in-house counsel in performing such services, a significant number of documents or communications relating to work performed by the Litigation Communications team will be protected from disclosure. Because there is no justification for the largely duplicative burden that plaintiffs seek to impose, the Subpoena should be quashed to the extent it seeks such materials, and/or a protective order should be granted providing for the same relief.

In the alternative, if the Court elects not to quash the Subpoena or grant a protective order excluding from the scope of the Subpoena all documents or communications relating to work performed by the Litigation Communications team, Edelman respectfully requests alternative relief relating to the treatment of privileged documents. Given the possibly very large quantity of privileged documents at issue -- both paper and electronic -- Edelman requests permission from

14

the Court, in accordance with this Court's decision in <u>Securities and Exchange Commission v.</u>

<u>Thrasher</u>, 1996 U.S. Dist. LEXIS 3327 (S.D.N.Y. March 20, 1996), to provide a summary of the

privileged documents by category as opposed to preparing a detailed privilege log, as a

document-by-document listing of thousands of pages of documents would be a long and expensive

project to undertake, particularly for a non-party.

In <u>Thasher</u>, the court explained the basis for limiting a person's obligation to disclose

documents pursuant to a detailed privilege log:

> [T]he courts retain discretion to permit less detailed disclosure in
> appropriate cases. For example, the governing rules specifically
> provide that if detailed disclosure would, in effect, reveal the very
> information that may be privileged, the party may tailor his response
> to mask such sensitive information. . . . <u>It is equally apparent that, in</u>
> <u>appropriate circumstances, the court may permit the holder of</u>
> <u>withheld documents to provide summaries of the documents by</u>
> <u>category or otherwise limit the extent of his disclosure. This would</u>
> <u>certainly be the case if (a) a document-by-document listing would</u>
> <u>be unduly burdensome and (b) the additional information to be</u>
> <u>gleaned from a more detailed log would be of no material benefit to</u>
> <u>the discovering party in assessing whether the privilege claim is</u>
> <u>well grounded.</u> . . .

<u>Thrasher</u>, 1996 U.S. Dist. LEXIS 3327, at *2-*3 (emphasis added); <u>see also</u> <u>Imperial Corp. of</u>

<u>America v. Durkin</u>, 174 F.R.D. 475, 478-79 (S.D. Cal. 1997) (holding that "Fed. R. Civ. P. 26(b)(5)

does not require the production of a document-by-document privilege log" and that requiring the

creation of a document-by-document privilege log of thousands of pages of documents would be

"unreasonable and overly burdensome").

### C.   In Any Event, Plaintiffs Should Be Ordered To Reimburse Edelman For The Anticipated Costs and Legal Fees Incurred In Responding To The Subpoena

Rule 45 of the Federal Rules of Civil Procedure "requires that orders to compel production,

'shall protect any person who is not a party or an officer of a party from significant expense

resulting from the inspection and copying commanded.'" <u>In re Law Firms of McCourts and</u>

McGrigor Donald, 2000 U.S. Dist. LEXIS 20287, at *2 (S.D.N.Y. April 9, 2001) (quoting Fed. R.

Civ. P. 45(c)(2)(B)) (holding that non-parties were required to produce requested documents "only

after receiving in advance the reasonably estimated costs of production, including the attorney's

fees to be incurred by respondents in reviewing and selecting the documents to be produced").  A

"nonparty's legal fees, especially where the work benefits the requesting party, have been

considered a cost of compliance reimbursable under Rule 45(c)(2)(B)."  In re First American Corp.,

184 F.R.D. 234, 241 (S.D.N.Y. 1998) (ordering party to reimburse non-party for a portion of fees

incurred in complying with a subpoena); see also Prescient Acquisition Group, Inc. v. MJ

Publishing Trust, 2006 U.S. Dist. LEXIS 75383, at *3 (S.D.N.Y. Oct. 13, 2006) ("Rule 45(c)(1),

Fed. R. Civ. P., imposes upon an attorney for a party the duty to take reasonable steps to avoid

undue burden upon a non-party in responding to a subpoena.  The court 'shall enforce this duty and

impose upon the party or attorney in breach of this duty an appropriate sanction, which may

include, but is not, limited to, lost earnings and a reasonable attorney's fee'").

In Linder v. Calero-Portocarrero, 251 F.3d 178, 182 (D.C. Cir. 2001), for example, the

court affirmed the district court's imposition of nearly $200,000 in costs against the plaintiffs in

connection with subpoenas served on certain non-parties to the litigation.  In so holding, the court

explained as follows:

> The [plaintiffs] claim the court erred in concluding that fee shifting
> was mandatory.  But Rule 45 requires precisely that -- the district
> court "shall protect" a non-party from "significant expense."  Under
> the revised Rule 45, the questions before the district court are
> whether the subpoena imposes expenses on the non-party, and
> whether those expenses are "significant."  If they are, the court must
> protect the non-party by requiring the party seeking discovery to
> bear at least enough of the expense to render the remainder
> "non-significant."  The rule is susceptible of no other interpretation.

Linder, 251 F.3d at 182.

In this case, as in the above-cited cases, the expenses to be incurred by Edelman in responding to the Subpoena would unquestionably be significant, given the sheer number of projects and employees involved in work relating to Seroquel. Accordingly, Plaintiffs should be ordered to pay Edelman the estimated costs and fees of Edelman employees and counsel involved, before requiring the production of any documents in response to the Subpoena.

## CONCLUSION

For the foregoing reasons, non-party Edelman respectfully requests that the Subpoena be quashed in its entirety or, at minimum, quashed with respect to all documents or communications relating to work performed by Edelman's Litigation Communications team. In the alternative, a protective order should be entered to limit and reduce the scope of the Subpoena, as well as to exclude from the scope of the Subpoena all documents and communications relating to work performed by Edelman's Litigation Communications team or, at minimum, otherwise relieve Edelman of any obligation to create a detailed privilege log with respect to work performed by Edelman's Litigation Communications team.

Dated: New York, New York
        October 5, 2007

                          Respectfully Submitted,

                          KASOWITZ, BENSON, TORRES &
                            FRIEDMAN LLP

                          By: _____
                               Brian S. Kaplan, Esq. (BK 4922)

                               1633 Broadway
                               New York, NY 10019
                               (212) 506-1700

                               *Attorneys for Non-Party*
                               *Daniel J. Edelman, Inc.*

17