UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:  Seroquel Products Liability Litigation

Case No. 6:06-md-1769
_____

This Document Relates to ALL CASES
_____

ASTRAZENECA'S NOTICE REGARDING SUBSTANTIAL
COMPLETION OF DOCUMENT PRODUCTION

On November 1, 2007 (Doc. No. 638), the Court ordered defendant AstraZeneca

Pharmaceutical LP and AstraZeneca LP (collectively "AZ") to provide a "firm date" by

which it could certify substantial completion of its production of documents.  At this point,

AZ can offer only a prediction, not a certification, and such a prediction is particularly

difficult given a myriad of variables:  plaintiffs have not stopped making requests and, thus,

AZ has not been able to lodge objections; this Court has not had the opportunity to make

rulings on scope, relevance, or burden; and the vicissitudes of technology await.  In the

meantime, AZ is devoting significant human, technical, and monetary resources to respond to

plaintiffs' document requests, and it is doing its best to forecast future requests and future

responses.  With the caveat that almost as much is unknown as is known regarding the

contours of certain of plaintiffs' document requests, AZ hereby provides notice that it will

continue to produce documents responsive to outstanding requests on a rolling basis,

completing some categories of production this week, some by the end of the year, some by

1

February 14, 2008, and it expects to attain substantial completion of its document production with respect to currently outstanding (that is, served by 5:00 p.m. on the date of this filing) requests by March 14, 2008.  This date is based upon extensive discussions with the Special Master for Electronically Stored Information ("SM-ESI"), thorough analysis by AZ, and expectations that this Court will impose reasonable limits on plaintiffs' discovery requests.

## I.    INTRODUCTION

Since the first MDL-1769 conference on September 7, 2006, AZ has produced approximately 12 million pages of documents.  Those documents include the Seroquel New Drug Application ("NDA"), upwards of 100 custodial collections, responses to hundreds of subject-matter requests for production ("RFPs"), database extractions, and materials relating to case-specific discovery ("CSD").  The Court's schedule for document production left little margin for error.  Massive productions of electronically stored information ("ESI") in compressed time frames inevitably pose technical challenges.  AZ has worked diligently with its vendors to meet those challenges – while still making huge, rapid productions.

In its August 21, 2007 sanctions opinion (Doc. No. 393), this Court found that AZ was "purposefully sluggish" in some of its document productions, particularly regarding custodial files and databases.  AZ strongly disagrees with this characterization.  Nevertheless, AZ responded constructively by further enhancing its document production efforts.  It hired additional lawyers and technicians to address production issues.  Even before the sanctions opinion, AZ retained a new vendor, FTI, to enhance document production.  After the opinion, AZ asked FTI to take control of ESI production.  AZ tasked even more employees to devote

even more time to document production concerns.  AZ proposed the appointment of the SM-ESI, and it has taken guidance from the SM-ESI to improve productions.

In assessing a date for substantial completion, one question must be answered: completion of what?  Plaintiffs persist in continually enlarging the scope of their discovery requests.  They have added custodians and served additional document requests.  In the past week plaintiffs have served document requests for extractions from 23 databases.  Their requests overreach.  AZ has raised and will continue to raise objections that will define the scope of what is being produced.  Moreover, the ongoing marketing of Seroquel, and thus the ongoing generation of Seroquel documents, creates a moving target.  To permit any prediction of finality, this Court must limit the scope of production and apply discovery principles that are well-established in the law.

The parties have had extensive discussions with the SM-ESI in the days leading up to this filing, including approved *ex parte* discussions between AZ and the SM-ESI concerning what it would take for AZ to arrive at substantial completion of document production.  Based on those discussions, careful analysis, an understanding that production in native format will be the most expeditious approach going forward, and an expectation that the Court will impose reasonable limitations on plaintiffs' discovery requests, AZ expects substantial completion of document production regarding currently outstanding requests as follows:

Custodial collections:  February 14, 2008

Requests for Production:  February 14, 2008

Additional search terms:  December 31, 2007

Databases:  March 14, 2008

AZ attaches affidavits setting forth the relevant resources, burdens, and methodologies to support the substantial completion date of March 14, 2008.

## II.   AZ's DOCUMENT PRODUCTIONS TO DATE

This mass tort litigation was brought by over 12,000 plaintiffs in federal and state courts against AZ, a pharmaceutical company that manufactures and markets Seroquel, an anti-psychotic medicine prescribed to millions of patients.  Seroquel has been on the market in this country for over ten years.  Unlike most other drugs that have been the subject of mass torts (*e.g.*, Vioxx or diet drugs), Seroquel is still on the market.  Seroquel is widely prescribed because doctors believe it to be effective for patients with serious medical problems.  Seroquel remains approved as safe and effective by the Food and Drug Administration ("FDA"), which continues to approve new indications for the drug as well. AZ generates new Seroquel documents every day.

### A.   The Production Process

The collection of documents in this case has been onerous, requiring custodian interviews, manual review of boxes of documents, database searches, and ESI downloads. Winchester Decl. ¶¶ 4-7.  The processing of the documents has been even more complex. Vendors such as Planet Data and Zantaz searched through millions of documents to determine potential relevance, converted the documents into TIFFs, extracted metadata, and loaded the documents onto a production database.  *Id.* at ¶¶ 8-10.  After the documents were loaded, de-duped, and filtered for potential privilege, attorney review commenced.  *Id.* at ¶ 11.  A team of contract attorneys performed an initial "first level" review.  *Id.*  Second level review was triggered once a first level reviewer coded a document as "potentially

privileged." *Id.* at ¶ 12.  If the second level reviewer determined that the document was

"privileged," it was removed from the production run and tagged for inclusion on a privilege

log.[1]  *Id.*

      After documents for a custodian were coded, Zantaz ran a "preproduction process,"

consisting of reconstructing inconsistent coding, performing quality checks, Bates stamping,

and saving to hard drives.  *Id.* at ¶¶ 14-16.  Zantaz then delivered the production media to an

AZ attorney for final quality assurance.  *Id.* at ¶ 16.  Only after all these steps were complete

could the production media be delivered to plaintiffs.  *Id.*

      **B.**      <u>Production of Custodial Files</u>

      Although this MDL was created on July 6, 2006, Case Management Order ("CMO")

No. 2 (Doc. No. 129), which set out the initial timeline and technical format for AZ's

custodial production,[2] was not entered until January 26, 2007.  AZ informed the Court in

February 2007 that it believed all fact discovery against AZ could be completed by the

beginning of February 2008.  Motion to Establish Deadlines for Discovery (Doc. No. 163) at

2, Feb. 26, 2007.  Specifically, AZ predicted that it could produce documents for the 80

custodians by the end of September 2007.  *Id.* at 2 n.1.  The Court set a June 30 deadline,

which forced AZ to undertake the enormous task of document collection, review, and

production at an unprecedented rate.

---

[1]      Additionally, AZ conducted a foreign language review.  Winchester Decl. ¶ 13.  For
the first 80 custodians, there were approximately 40,000 pages of foreign documents.

[2]      In a custodial production, the entire file set of key individuals is collected and the
relevant, non-privileged documents are produced.  Once the custodial documents are
produced and reviewed, limited discovery is employed to fill in the gaps.  This technique is
far more efficient than combing through a defendant's business files to find certain targeted
subsets of documents.

The initial list of 80 custodians was expanded by an additional 23 custodians selected by plaintiffs' counsel in July 2007.  The same steps detailed above were required to collect and process documents for the additional 23 custodians.  EU privacy laws prevented the full production for the last 13 custodians until November 1, 2007.  AZ requested additional time to produce these custodial documents on numerous occasions.  *See* Hr'g Tr. 330, July 26, 2007 (AZ could not produce the additional 23 custodians in 30 days); s*ee also* AZ's Motion for Extension of Deadline to Produce Documents from Remaining Custodians (Doc. No. 505), September 25, 2007.  Such requests were denied.

To meet the June 30, 2007 deadline for the first 80 custodians, AstraZeneca maintained three document review sites employing nearly 300 contract attorneys and routinely operating extended shifts and weekends to get through the voluminous materials that had to be examined and coded.  *See* Hr'g Tr. 330, July 26, 2007.  Internal IT personnel at AZ worked diligently in assisting with document collection.  *Id.* at 331.

C.     Requests for Production

Plaintiffs had agreed to a custodial production, the Court had set a very tight deadline for the production, and AZ had invested an enormous amount of time and resources into the completion of the production on a custodial basis.  Then plaintiffs decided to embark upon a completely different method of document production, *i.e.*, a traditional production driven by RFPs.  Plaintiffs have served 294 individual requests (counting subparts) in four sets of RFPs.[3]  Many of these requests were vastly overbroad.[4]

---

[3]     RFPs relating to databases will be discussed in the next section.

AZ has already produced on a rolling basis nearly 40,000 documents containing almost 240,000 pages, over 230 pieces of multi-media material, and one native SAS file in response to these RFPs.  AZ has also searched the custodial and other productions and specifically identified numerous Bates numbers responsive to at least 48 separate RFPs.  The parties have had at least five meet-and-confer sessions discussing the RFPs.

     D.     <u>Databases</u>

AZ utilizes many databases to collect, access, and store information necessary for its business.  Many include vast amounts of materials about foreign markets not at issue.  Some of the databases contain proprietary information relating to drugs other than Seroquel.  Draper Decl. ¶ 3.

AZ has been extracting documents from databases both for its CSD disclosures and to respond to RFPs.  The extraction of documents from databases is a time-consuming process.  AZ first must identify which databases contain potentially relevant material.  Once the databases are identified, AZ begins to extract data.  This process is not as simple as an internet search.  IT personnel need to construct a query to extract only the Seroquel-related material.  These searches are run against large databases and take time to process.  Once the data are returned, it takes additional time to extract the data and verify it, *e.g.*, to ensure that the correct physician's information has been collected.  Draper Decl. ¶¶ 6-7.

Some databases do not contain documents, as that term is traditionally understood.  Those databases contain only data, for which extraction is complicated by the fact that the

---

[4]     *See*, *e.g.*, request 19 from the First Set, which sought "All e-mails and internal memorandum from current and former employees within the non-US business entities concerning Seroquel."

data must be extracted in a way that the relationships among relevant fields are maintained so that the data can be produced in a usable format.  Draper Decl. ¶ 8.

AZ has already produced documents and/or data from the following databases either in connection with Case Specific Discovery or in response to an RFP:  GEL, CLINTRACE, MarketPro, eSTaR, Touchstone SFA, STEP2000, Compass, SnapPharma, SAP, IMS and BiShare.  Extractions of information responsive to RFPs from other databases, including the following, are currently being processed for production:  Webstir, Paris, LBX and Viewpoint.  Draper Decl. ¶ 5.  The parties have met and conferred regarding databases and the SM-ESI has offered to mediate database issues.

      E.    <u>Case Specific Discovery</u>

Every month, for each of 30 cases selected for CSD, AZ produces five categories of CSD information:  (1) Call Note Information; (2) Account Payable Information; (3) Dear Doctor or Dear Healthcare Provider Letters; (4) Prescriber-Level IMS Data; and (5) Professional Information Requests.  AZ searches multiple current and archived databases to retrieve this information.  The final product – a physician-specific disclosure – averages 75 pages, and may be more than 200 pages long.

**III.    AZ's PLAN FOR SUBSTANTIAL COMPLETION OF FUTURE DOCUMENT PRODUCTIONS**

      A.    <u>Discovery Obligations Must Be Reasonable and Not Overly Burdensome</u>

In determining the substantial completion date for AZ's document production, this Court must apply principles that are well-established in the law of discovery.  As the Supreme Court has explained, "discovery, like all matters of procedure, has ultimate and necessary boundaries."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct.

2380, 2389 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).  Discovery may be limited by the court if "the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(2)(C)(iii).[5]

Discovery of all types, including ESI, should proceed "within a reasonable pretrial schedule, while concomitantly insuring that … producing parties are not subjected to production timetables that create unreasonable burden, expense, and risk of waiver of attorney-client privilege and work product protection."  *Hopson v. Mayor & City Council of Baltimore*, 232 F.R.D. 228, 232 (D. Md. 2005).  While district courts are granted extensive authority over pretrial management, "there are limits upon the power of the district court to accelerate pretrial discovery."  *Transamerica Computer Co. v Int'l Bus. Machs. Corp.*, 573 F.2d 646, 652 (9th Cir. 1978).   The *Transamerica* court acknowledged that in certain situations "a demanding discovery schedule … would be an unreasonable exercise of the district court's discretion."  *Id.*[6]

This Court should weigh the evidence presented by the parties when considering an appropriate date for substantial completion of discovery.  Determining an appropriate

---

[5]     In addition, Rule 26 sets forth two other instances where discovery may be curtailed: if "the discovery sought is unreasonably cumulative or duplicative," or if "the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought."  *Id.*  Those provisions should also apply in this case to limit plaintiffs' cumulative, burdensome requests.

[6]     *See also Otero v. Buslee*, 695 F.2d 1244, 1248 (10th Cir. 1982) ("A court may not impose too rigorous a time limit on discovery." (citing *Transamerica Computer Co. v. Int'l Bus. Machs. Corp.*, 573 F.2d 646 (9th Cir. 1978)));  *Geiserman v. McDonald*, 893 F.2d 787, 792 (5th Cir. 1990) ("Adherence to *reasonable* [discovery] deadlines is critical to restoring integrity in court proceedings." (emphasis added)); *Gile v. United Airlines, Inc.*, 95 F.3d 492, 495 (7th Cir. 1996) (a circuit court may find that a district court abused its discretion vis-à-vis discovery if, *inter alia*, the lower court's decision "clearly appears arbitrary").

substantial completion date must take into account both the scope and complexity of outstanding discovery requests so as to ensure production that permits plaintiffs to prepare for trials in late 2008 without creating undue burdens.

**B.**   **Document Productions in Pharmaceutical Mass Torts Typically Take Years to Complete**

AZ has proposed that this Court set March 14, 2008 as the date by which AZ's document production regarding outstanding requests should be substantially complete. Under AZ's proposal, document production would be completed in less than two years from initiation of the MDL.

Merck & Co., Inc. ("Merck") produced over seven million pages of documents in connection with pending state and federal court Vioxx litigation before the federal cases were consolidated as an MDL in February 2005. *In re Vioxx Prods. Liab. Litig.* (MDL 1657), Minute Entry at p. 3-4 (E.D. La., March 18, 2005). Despite this voluminous production, Merck provided an additional five million pages to the plaintiffs after the MDL was created. Merck was still furnishing documents to the plaintiffs in April 2007 (*Vioxx*, Minute Entry at p. 3, April 12, 2007). Thus, discovery took more than two years to complete, even though Merck had already produced seven million pages prior to the inception of the MDL.

Similarly, the court presiding over the Propulsid litigation recognized that "[a]n MDL case involving perhaps several million documents, costing many millions of dollars to produce, with potential likelihood of business interruption presents peculiar problems." *In re Propulsid Prods. Liab. Litig.* (MDL 1355), Minute Entry at p. 41 (E.D. La., May 11, 2001). The court denied broad-based discovery of foreign documents sought by the plaintiffs, explaining that the "broad nature of the requests … make[s] it overly burdensome, difficult

and in the long run complicates matters more than it helps." *Id.* at 42-43.  Document

production began in December 2000, with approximately 300,000 pages of documents.

*Propulsid*, Joint Rpt. 2 at p. 2.  Production reached close to three million pages by June 15,

2001.  *Propulsid*, Joint Rpt. 8 at p. 1.  The parties asserted that domestic hard copy document

production was essentially complete in October 2001.  *Propulsid*, Joint Rpt. 11 at p. 1-2.  The

defendants still were producing documents in November 2002, having already produced over

seven million pages.  *Propulsid*, Joint Rpt. 19 at p. 1-2.  In their joint status reports, the

parties acknowledged issues with electronic discovery production, including problems with

emails and attachments processed by their vendor.  In January 2003, the defendants were

attempting to correct errors in prior productions and were still producing foreign documents,

with foreign language document production continuing through March 2003.  *Propulsid*,

Joint Rpt. No. 20 at p. 1.  Production errors were not resolved until March 2003, with the

final production occurring in late April 2003 – almost two and a half years after inception of

the MDL – with a total of more than 7 million pages produced.  *Propulsid*, Joint Rpt. 22 at p.

1; *Propulsid*, Minute Entry at p. 1 (April 29, 2003).[7]

    C.    <u>A Substantial Completion Date of March 14, 2008 Is Reasonable</u>

    Given both the experience of other MDLs and the practical considerations of this

litigation (which are explained below and in the accompanying Declarations), AZ expects

document production with respect to currently outstanding requests to be substantially

---

[7]    Similarly, document production in the Baycol litigation took over two years from
establishment of the MDL.  *In re Baycol Prods. Liab. Litig.* (MDL 1431), Parties' Status Rpt.
& Proposed Agenda at p. 2 (D. Minn., Apr. 13, 2004).

complete by March 14, 2008.[8]   Because the date(s) by which AZ can produce documents in response to future RFPs by plaintiffs cannot presently be predicted, AZ understands the Court's directive not to include productions responsive to future RFPs or to any effort by plaintiffs to "designate" additional custodians.

Document productions currently pending (including those responsive to very recent RFPs arising from database meet-and-confers) fall into the following categories:

1.      Documents and ESI responsive to RFPs;

2.      Custodial documents and ESI generated by new, agreed-upon search terms;

3.      Documents identified for production by AZ as part of its quality checks; and

4.      Production of database documents and ESI resulting from recent and ongoing database meet-and-confers.

These categories are addressed in order below.  In addition, in subpart D below AZ discusses its plan for production of documents in native format.

### 1.      Documents and ESI Responsive to RFPs

The following categories of documents are responsive to the first five sets of RFPs. Most are in an advanced state of process, and some are already complete.  The remaining productions will be accomplished on a rolling basis during the next 11 weeks, and AZ

---

[8]      This understanding is consistent with the Court's observation at the October 30, 2007 Status Conference that it would require AZ to provide a date "that AstraZeneca will be able to certify that [its] production of previously requested and proffered documents is substantially complete …"  (Tr. at 20).  AZ has no plan or intention of adding custodians, believing that its original custodial list was appropriate.  Plaintiffs have proposed no further custodial collection or production other than the 23 identified in July 2007.

expects they will be complete before February 14, 2008.  These productions, subject to AZ's

objections previously raised, include the following responsive materials:

- Consumer Marketing Material (produced November 12, 2007)
- Seroquel Value Team Materials (produced November 7, 2007)
- Foreign Labeling and Letters Astellas (produced November 12, 2007)
- Regulatory Queries and Responses Astellas (produced November 12, 2007)
- Regulatory Queries and Responses – Netherlands (produced November 12, 2007)
- Physician Information Requests ("PIRs") from the WEBSTIR database (expect to be produced by November 15, 2007)
- Agency Contacts (FDA) for Seroquel (expect to be produced by February 14, 2008)
- Voicemails and transcripts left for pharmaceutical sales specialists regarding Seroquel (expect to be produced by February 14, 2008)
- Audio recordings of Seroquel speakers (expect to be produced by February 14, 2008)
- U.S. Communications Team publications booklet (expect to be produced by February 14, 2008)

*See* AZ's Opposition to Plaintiffs' Motion to Compel Defendants' Responses to Requests for

Production of Documents (Doc. No. 662), Nov. 12, 2007.

### 2. Custodial Documents and ESI Generated by Additional, Mutually Agreed-Upon Search Terms

Prior to the appointment of the SM-ESI, the parties began discussions to determine

what additional plaintiff-suggested search terms could be agreed upon for searching across

collected documents.  Plaintiffs proposed 169 additional search terms, and AZ agreed to 101.

Plaintiffs asked the SM-ESI to require AZ to accept 68 of the remaining additional search

terms, which the SM-ESI declined to do.  With the SM-ESI's guidance, the  parties

ultimately agreed to a total of 179 search terms.  Running the 104 additional agreed-upon

terms across custodial documents not previously produced (*i.e.*, custodial documents that did

not contain *any* of the 75 search terms originally formulated by AZ) has yielded

approximately 86,000 documents.  Those documents are now being processed and will then

move through the previously described review, coding, and production process.  The review

of those 86,000 documents can be accomplished promptly, and production of these

"additional search terms" documents is expected to occur by December 31, 2007. Adams

Decl. ¶ 16.

### 3.    Documents Identified for Production by AZ as Part of Quality Assurance

Through self-initiated quality assurance activities, AZ has identified some ESI that

had not been previously produced for various, differing reasons.  The bulk of that

information has now been produced and therefore does not impact the determination of a date

by which production will be substantially complete.  The only pending production in this

category comprises approximately 2.5 gigabytes of data, consisting largely or entirely of

email.  That data will be loaded directly onto FTI's Ringtail system and should be de-

duplicated, reviewed, quality-checked, and produced by approximately December 31, 2007.

Adams Decl. ¶ 16.

### 4.    Production of Database Documents Requested by Plaintiffs

The plan for substantial completion of AZ's database begins with the ongoing meet-

and-confer process.  The parties completed "meet-and-confers" regarding 38 AZ databases,

with additional such meet-and-confers continuing through the week of November 12, 2007.

Nineteen of these databases have been designated by plaintiffs as "priority" databases.  As

contemplated by the Court's prior orders, these meet-and-confers are conducted for the

purpose of affording plaintiffs an opportunity to interview AZ personnel about the nature,

content, and function of each database.  Plaintiffs are then to request in writing the

information they wish produced from each database.  The SM-ESI has directed plaintiffs to

make these specific requests and to specify the format of production they wish AZ to employ, pursuant to Rule 34(b) of the Federal Rules of Civil Procedure.[9]

As of the preparation of this filing, plaintiffs have served 23 such requests, which include plaintiffs' 19 "priority" databases.  Plaintiffs' requests for production are grossly overbroad, seeking information well beyond that relevant to the substantive issues in the case.[10]  These database requests also impose undue burdens on AZ and make it difficult for AZ to estimate for the Court the date by which the production of those materials will be substantially complete.  AZ will timely object (as required by the SM-ESI) to each of those requests.[11]   The SMI-ESI has offered to mediate database issues and streamline requests.

Ultimately, these issues pertaining to the appropriate scope of discovery from these databases will require resolution by the Court, since they relate to the scope of discovery, a category of issues that the Court expressly retained, rather than referring to the SM-ESI. Order of October 5, 2007, Doc. No. 546.  Courts have been vigilant in limiting database discovery, which is particularly prone to overbreadth and burdensomeness.  *Cummings v.*

---

[9]      Of course, AZ is not required by the rule to produce information from its databases in the format designated by plaintiffs, but only to state its objection, if any, to any form of production requested by plaintiffs, and to specify the form or forms it intends to use.  Any disagreement over the format of production will then be resolved by agreement (preferably with advice from the SM-ESI) or, if necessary, by order of the Court.

[10]     Notably, in the Vioxx litigation the defendant made production from only eight databases.

[11]     For instance, plaintiffs served a request for data from the "Planet" database.  As plaintiffs learned on the meet-and-confer, this database contains summaries of publicly available articles about AZ products.  AZ intends to produce all of these Seroquel related summaries to plaintiffs.  The formal document request (Plaintiffs' 19th Request for Documents) served by plaintiffs directed at this database is nearly four pages long and requests, among other things, 140 metadata fields.

*Gen. Motors Corp.*, 365 F.3d 944, 954 (10th Cir. 2004) (affirming order denying database

access because the "proposed computer database searches are overly broad in scope,

duplicative of prior requests and unduly burdensome"); *Jones v. Goord*, No. 95 Civ. 8026

(GEL), 2002 U.S. Dist. LEXIS 8707, at *32-33 (S.D.N.Y. May 16, 2002) (denying request

for database where, *inter alia*, "[t]he defendants estimate that the cost of the efforts required

by plaintiffs' requests would be in excess of $100,000, not including the burden of …

shifting expert computer personnel from operational duties").

Assuming that such requests are streamlined to omit duplicative and burdensome

materials, AZ expects to substantially complete production responding to currently

outstanding requests by March 14, 2008 of documents from the 23 databases that plaintiffs

have requested.  Production from the databases will occur on a rolling basis.  To the extent

possible, AZ will vigorously attempt to produce materials from other databases not yet the

subject of RFPs by March 14, 2008, though it is impossible to predict how quickly AZ can

respond to requests that have not yet been served, objected to, met-and-conferred about, or

ruled upon, among other factors.   Further, AZ's legitimate interests in preserving privilege,

along with a radically expedited schedule, warrant a "clawback" provision permitting AZ to

retrieve any privileged or non-responsive documents that may be inadvertently produced.

Finally, the March 14, 2008 time-frame depends upon AZ's ability to make database

productions in native format.

D.     Conversion to Native Format Production

The final piece of the substantial completion plan regards AZ's efforts to determine

the universe of previously-produced (in TIFF) custodial documents affected by technical

16

issues.  To resolve these issues, to resolve certain other issues relating to the technical sufficiency of the previous custodial production, and to expedite and ensure the quality of productions going forward, AZ proposes to (1) re-produce in native format all previously-produced custodial documents (as well as documents previously produced in response to Requests for Production and in Case Specific Discovery); and (2) produce in native format all documents responsive to future Requests for Production.  These productions would include database information discussed above.

Both parties' expert technical teams, as well as the SM-ESI, agree that native file production is the best possible method for curing various past production issues.[12]  Native file production eliminates the conversion of AZ's data into TIFF, a time-consuming and laborious process.  It would produce documents to plaintiffs in functionally the same format as they exist at AZ, placing plaintiffs in a litigation position nearly identical to that enjoyed by AZ.  Combined with providing load files of metadata in a relational database format, and making certain agreed changes to the global de-duplication model, a native production should reduce technical issues going forward with the existing production.  AZ expects to complete the re-production of all previous custodial production by February 14, 2008. Adams Decl. ¶ 10.

Nevertheless, after days of meet-and-confers with the SM-ESI concerning native production, in which the above benefits of moving to native production were generally acknowledged, plaintiffs' counsel ultimately refused to agree to native production unless AZ

---

[12]     Indeed, in December 2006 plaintiffs requested that AZ produce its documents in native format.  *See* Plaintiffs' First Amended Motion for Entry of Order and to Compel Deposition (Doc. No. 92).

agreed to reimburse plaintiffs what plaintiffs' counsel estimated to be a cost of $9 million (plus or minus 35%) as the claimed costs associated with accepting native production.  AZ disagrees with this cost figure and disagrees with the concept that plaintiffs be the adjudicator as to whether they receive costs.

AZ can complete the production of outstanding custodial and database documents  in native format by March 14, 2008.  That substantial completion date incorporates several interim dates for different, rolling productions:

- Custodial Collections

AZ will completely reprocess approximately 500 gigabytes of e-mail stores and perform a reconciliation with previous vendor e-mail processing efforts.  Additionally, AZ expects to unwind a portion of global de-duplication highlighted specifically by plaintiffs as a source of confusion.  After performing these steps, custodial production should be substantially complete by February 14, 2008.  Adams Decl. ¶ 10.

- RFPs

Production of non-database ESI responsive to RFPs should be substantially complete by February 14, 2008.  Adams Decl. ¶ 10.

- Search Terms

FTI estimates that, after running approximately 100 additional search terms to the custodial collections, approximately 86,000 additional documents should be produced by December 31, 2007.  Adams Decl. ¶ 16.

- <u>Databases</u>

The date for substantially completed production of these database materials will be dependent upon the redaction and relevance review requirements.  AZ estimates that applying these and other necessary steps to the 23 requested databases results in a substantial completion date of March 14, 2008.  Adams Decl. ¶ 14.

In short, given current circumstances, native production offers the best hope of producing the information plaintiffs want in a timeframe that fits the discovery and trial schedule that this Court wants.

## IV.   CONCLUSION

For the foregoing reasons, AZ submits that March 14, 2008 is the appropriate date for substantial completion of document production.


Respectfully submitted on this the 13th day of November, 2007,


<u>/s/ Stephen J. McConnell</u>
Stephen J. McConnell
DECHERT LLP
2929 Arch Street
Philadelphia, PA  19103
Telephone: (215) 994-4000
Facsimile: (215) 994-2222
stephen.mcconnell@dechert.com

*Counsel for AstraZeneca Pharmaceuticals LP*
*and AstraZeneca LP*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the 13th day of November, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I further certify that the foregoing document and the notice of electronic filing was served on Plaintiffs' Liaison Counsel in accordance with CMO No. 1.


<u>/s/ Shane T. Prince</u>

**SERVICE LIST**

**In Re: Seroquel Products Liability Litigation
MDL Docket No. 1769**

| | |
|---|---|
| Paul J. Pennock, Esq.<br>Michael E. Pederson, Esq.<br>Weitz & Luxenberg, P.C.<br>180 Maiden Lane - 17th Floor<br>New York, NY 10038<br>Telephone: (212) 558-5500<br>Ppennock@weitzlux.com<br>MPederson@weitzlux.com<br>***Plaintiffs' Lead Counsel*** | Camp Bailey, Esq.<br>Michael W. Perrin, Esq.<br>Fletcher Trammell, Esq.<br>Bailey Perrin Bailey LLP<br>The Lyric Centre<br>440 Louisiana, Suite 2100<br>Houston, TX 77002<br>Telephone: (713) 425-7240<br>cbailey@bpblaw.com<br>mperrin@bpblaw.com<br>***Plaintiffs' Lead Counsel*** |
| Larry Roth, Esq.<br>Law Offices of Larry M. Roth, P.A.<br>Post Office Box 547637<br>Orlando, FL 32854-7637<br>Telephone: (407) 872-2239<br>LROTH@roth-law.com<br>***Plaintiffs' Liaison Counsel*** | Tommy Fibich, Esq.<br>Fibich, Hampton & Leebron, L.L.P.<br>1401 McKinney, Suite 1800<br>Five Houston Center<br>Houston, TX 77010<br>Telephone: (713) 751-0025<br>tfibich@fhl-law.com |
| Matthew F. Pawa, Esq.<br>Law Offices of Matthew F. Pawa, P.C.<br>1280 Centre St., Suite 230<br>Newton Centre, MA 02459<br>Telephone: (617) 641-9550<br>Mp@pawalaw.com | Robert L. Salim, Esq.<br>Robert L. Salim Attorney at Law<br>P.O. Box 2069<br>Natchitoches, LA 71457-2069<br>Telephone: (318) 352-5999<br>robertsalim@cp-tel.net |
| Keith M. Jensen, Esq.<br>Jensen, Belew & Gonzalez, PLLC<br>1024 North Main<br>Fort Worth, TX 76106<br>Telephone: (817) 334-0762<br>kj@kjensenlaw.com | Scott Allen, Esq.<br>Cruse, Scott, Henderson & Allen, L.L.P.<br>2777 Allen Parkway, 7th Floor<br>Houston, Texas 77019<br>Telephone: (713) 650-6600<br>sallen@crusescott.com |
| Matthew E. Lundy, Esq.<br>Lundy & Davis, LLP<br>333 North Sam Houston Parkway East<br>Suite 375<br>Houston, TX 77060<br>Telephone: (281) 272-0797<br>mlundy@lundydavis.com | E. Ashley Cranford<br>Whatley Drake & Callas<br>2001 Park Place North, Suite 1000<br>Birmingham, AL 35203<br>Telephone: (205) 328-9576<br>ACranford@wdklaw.com |

| | |
|---|---|
| Robert L. Ciotti, Esq.<br>Carlton Fields, P.A.<br>4221 W. Boy Scout Boulevard<br>Suite 1000<br>Tampa, FL 33607-5736<br>Telephone: (813) 223-7000<br>rciotti@carltonfields.com<br>***Attorney for Defendants AstraZeneca***<br>***Pharmaceuticals, LP, and AstraZeneca LP*** | Gregory P. Forney, Esq.<br>Shaffer Lombardo Shurin<br>911 Main Street, Suite 2000<br>Kansas City, MO 64105<br>Telephone: (816) 931-0500<br>gforney@sls-law.com<br>rbish@sls-law.com<br>***Attorney for Defendant,***<br>***Marguerite Devon French*** |
| Randy Niemeyer<br>22442 Pike 309<br>Bowling Green, MO 63334-5209<br>***Pro Se*** | Eric B. Milliken, Esq.<br>3 Sir Barton Ct.<br>Newark, DE 19702<br>***Pro Se*** |
| Catherine Solomon<br>3100 N.E. 83<br>Gladstone, MO 64119<br>***Pro Se*** | Louisiana Wholesale Drug Co. Inc.<br>C/O Gayle R. White<br>Registered Agent<br>Highway 167N<br>Sunset, LA 70584<br>***Pro Se*** |
| Aaron C. Johnson, Esq.<br>Summers & Johnson<br>717 Thomas<br>Weston, MO 64098<br>Telephone: (816) 640-9940<br>firm@summersandjohnson.com | Robert A. Schwartz, Esq.<br>Bailey & Galyen<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744<br>bschwartz@galyen.com |
| Todd S. Hageman, Esq.<br>Simon and Passanante, PC<br>701 Market St., Suite 1450<br>St. Louis, MO 63101<br>Telephone: (314) 241-2929<br>thageman@spstl-law.com | Mark P. Robinson, Jr., Esq.<br>Robinson, Calcagnie & Robinson<br>620 Newport Center Drive, 7th Floor<br>Newport Beach, CA 92660<br>Telephone: (949) 720-1288<br>mrobinson@robinson-pilaw.com |
| Thomas F. Campion, Esq.<br>Steven M. Selna, Esq.<br>Drinker Biddle & Reath, LLP<br>500 Campus Drive<br>Florham Park, New Jersey 07932-1047<br>Telephone: (973) 360-1100<br>Thomas.Campion@dbr.com<br>steven.selna@dbr.com<br>***Attorneys for Defendants Janssen***<br>***Pharmaceutical Products and Johnson &***<br>***Johnson Co.*** | Michael Davis, Esq.<br>James Mizgala, Esq.<br>Sidley Austin LLP<br>One South Dearborn<br>Chicago, IL 60603<br>Telephone: (312) 853-7731<br>mdavis@sidley.com<br>jmizgala@sidley.com<br>***Attorneys for Defendants AstraZeneca LP***<br>***and AstraZeneca Pharmaceuticals, LP*** |

| | |
|---|---|
| Elizabeth Raines, Esq.<br>Baker, Sterchi, Cowden & Rice, LLC<br>2400 Pershing Road, Suite 500<br>Kansas City, MO 64108<br>Telephone: (816) 471-2121<br>raines@bscr-law.com | Timothy Reese Balducci, Esq.<br>The Langston Law Firm, PA<br>P.O. Box 787<br>100 South Main Street<br>Booneville, MS 38829-0787<br>Telephone: (662) 728-3138<br>tbalducci@langstonlaw.com |
| Kenneth W. Bean, Esq.<br>Sandberg, Phoenix & von Gontard<br>One City Centre<br>15th Floor<br>St. Louis, MO 63101-1880<br>Telephone: (314) 231-3332<br>kbean@spvg.com<br>***Attorney for Defendant Dr. Asif Habib*** | John Driscoll, Esq.<br>Brown & Crouppen, PC<br>720 Olive St.<br>St. Louis, MO 63101<br>Telephone: (314) 421-0216<br>Jdriscoll@brownandcrouppen.com<br>asmith@brownandcrouppen.com<br>blape@brownandcrouppen.com |
| Aaron K. Dickey, Esq.<br>Goldenberg and Heller, PC<br>P.O. Box 959<br>2227 S. State Road 157<br>Edwardsville, IL 62025<br>Telephone: (618) 650-7107<br>aaron@ghalaw.com | Matthew J. Hamilton, Esq.<br>Pepper Hamilton<br>3000 Two Logan Square<br>18th & Arch Street<br>Philadelphia, PA 19103<br>Telephone: (215) 981-4000<br>hamiltonm@pepperlaw.com |
| Justin Witkin, Esq.<br>Ken Smith, Esq.<br>Aylstock, Witkin & Sasser, PLC<br>4400 Bayou Boulevard<br>Suite 58<br>Pensacola, FL 32503<br>Telephone: (850) 916-7450<br>Jwitkin@AWS-LAW.com<br>ablankenship@aws-law.com<br>ksmith@aws-law.com<br>noverholtz@aws-law.com | David P. Matthews, Esq.<br>Lizy Santiago, Esq.<br>Matthews & Associates<br>2905 Sackett Street<br>Houston, TX 77098<br>Telephone: (713) 222-8080<br>dmatthews@thematthewslawfirm.com<br>lsantiago@thematthewslawfirm.com<br>msalazar@thematthewslawfirm.com |
| Howard Nations<br>Lori A. Siler<br>Howard L. Nations Attorney At Law<br>4515 Yoakum Blvd.<br>Houston, TX 77006-5895<br>Telephone: (713) 807-8400<br>nations@howardnations.com | Mary B. Cotton<br>John D. Giddens, P.A.<br>226 North President Street<br>P.O. Box 22546<br>Jackson, MS 39225-2546<br>Telephone:  (601) 355-2022<br>betsy@law-inc.com |

| | |
|---|---|
| Salvatore M. Machi<br>Ted Machi & Associates PC<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744 | Jona R. Hefner, Esq.<br>3441 W. Memorial, Suite 4<br>Oklahoma City, OK 73134-7000<br>Telephone: (405) 286-3000<br>attorneyokc@hotmail.com |
| David Dickens<br>Miller & Associates<br>105 North Alfred Street<br>Alexandria, VA  22314-3010<br>(703) 519-8080<br>ddickens@doctoratlaw.com | Pete Schneider, Esq.<br>Grady, Schneider & Newman, L.L.P.<br>801 Congress, 4th Floor<br>Houston, TX  77002<br>(713) 228-2200<br>pschneider@gsnlaw.com |
| Fred T. Magaziner<br>Marjorie Shiekman<br>A. Elizabeth Balakhani<br>Shane T. Prince<br>Eben S. Flaster<br>DECHERT LLP<br>Cira Centre<br>2929 Arch Street<br>Philadelphia, PA  19103<br>(215) 994-4000<br>fred.magaziner@dechert.com<br>shane.prince@dechert.com<br>marjorie.shiekman@dechert.com<br>eben.flaster@dechert.com<br>elizabeth.balakhani@dechert.com | Lawrence J. Gornick, Esq.<br>William A. Levin, Esq.<br>Dennis J. Canty, Esq.<br>Levin Simes Kaiser & Gornick LLP<br>44 Montgomery Street, 36th Floor<br>San Francisco, CA 94104<br>Telephone: (415) 646-7160<br>lgornick@lskg-law.com<br>dcanty@lskg-law.com<br>lsimes@levins-law.com<br>jkaiser@lskg-law.com<br>echarley@lskg-law.com<br>ddecarli@lskg-law.com<br>bsund@lskg-law.com<br>astavrakaras@lskg-law.com |
| Scott Burdine, Esq.<br>Hagans Burdine Montgomery<br>Rustay & Winchester, P.C.<br>3200 Travis, Fourth Floor<br>Houston, TX  77006<br>Telephone:  (713) 222-2700<br>sburdine@hagans-law.com | Lowell Finson<br>Phillips & Associates<br>3030 North 3rd Street<br>Suite 1100<br>Phoenix, AZ 85012<br>(602) 258-8900, ext. 295<br>lowellf@phillipslaw.ws |
| Gale D. Pearson<br>Stephen J. Randall<br>Pearson, Randall & Schumacher, P.A.<br>Fifth Street Towers, Suite 1025<br>100 South 5th Street<br>Minneapolis, MN 55402<br>(612) 767-7500<br>attorneys@outtech.com | Robert H. Shultz<br>Heyl, Royster<br>103 West Vandalia Street<br>P.O. Box 467<br>Edwardsville, IL 62025<br>(618) 656-4646<br>rshultz@hrva.com<br>bwallace@hrva.com |

| | |
|---|---|
| Ellen R. Serbin<br>Perona, Langer, Beck, Lalande & Serbin<br>300 San Antonio Drive<br>Long Beach, CA 90807-0948<br>(562) 426-6155<br>davidhwang@plblaw.com | Scott Armstrong<br>1719 West Main Street<br>Suite 201<br>Rapid City, SD 57702<br>(605) 399-3994<br>scottarmstrong1235@eathlink.net |
| Linda S. Svitak<br>Faegre & Benson, LLP<br>90 South 7th Street, Suite 2200<br>Minneapolis, MN 55402-3901<br>(612)766-7000<br>lsvitak@faegre.com<br>wjohnson@faegre.com | James J. Freebery<br>McCarter & English, LLP<br>919 N. Market Street, 18th Floor<br>Wilmington, DE 19801<br>(973) 622-4444<br>jfreebery@mccarter.com<br>tpearson@mccarter.com |
| Richard D. Hailey<br>Ramey & Hailey<br>3891 Eagle Creek Parkway<br>Suite C<br>Indianapolis, IN<br>(317) 299-0400<br>rhailey@sprynet.com | B. Andrew List<br>Clark, Perdue, Arnold & Scott<br>471 East Broad Street, Suite 1400<br>Columbus, OH 43215<br>(614) 469-1400<br>alist@cpaslaw.com<br>lcollins@cpaslaw.com |