UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re: **Seroquel Products Liability Litigation**

Case No. 6:06-md-1769

This Document Relates to ALL CASES

## DECLARATION OF WILLIAM ADAMS

1. My name is William Adams. I make this declaration pursuant to 28 U.S.C. § 1746 in connection with AstraZeneca's Notice Regarding Substantial Completion of Document Production, and declare, under penalty of perjury, that the following information is true and correct.

2. The purpose of my declaration is to set forth the work that my firm, FTI Consulting, Inc. ("FTI"), is undertaking in order to assist AstraZeneca with its electronic discovery, and to explain the time required to substantially complete our work.

3. I am a senior managing director in FTI's technology practice. Among other things, FTI specializes in electronic file processing and production in connection with discovery in complex litigation. FTI is one of the leading firms in the country in this area. We are located in 24 US cities, London, and Melbourne, and FTI's total workforce consists of approximately 1,300 employees including numerous PhDs, MBAs, CPAs, CIRAs and CFEs. FTI advisors have extensive experience in many litigation support technologies, including "Ringtail," a web-based litigation support technology that enables geographically distributed legal teams to acquire, cull, review and produce both electronic and paper documents. With full Unicode capability, Ringtail

allows users to review documents in any language. Further, with Ringtail, documents may be reviewed and coded in their native format (PDF, Word, Excel) without conversion to TIFF or PDF.

4. FTI has been retained by AstraZeneca to host documents and data for review and production. FTI will host the documents and data in its secure data center in Annapolis, MD. The documents and data are being reviewed and will be produced from Ringtail.

5. FTI's role here is in the "middle slice" and "fourth slice" of the various tasks and undertakings that must occur for the electronically stored information ("ESI") to be identified, loaded, redacted by lawyers reviewing the documents, and ultimately produced. FTI's role in hosting documents and data for review and production comes after the preceding or "first slice," which consists of the collection of ESI by the client from a variety of sources, and before the "third slice," which consists of review by lawyers of the documents and information loaded into Ringtail in order to determine what exclusions and redactions are appropriate. FTI's ultimate role will be to produce the actual documents and data after it all has been reviewed and prepared for production (the "fourth slice").

6. The precise time required to assemble and finalize ESI loaded into Ringtail and fully made ready for production in litigation is dependent on a number of factors. These include the nature of the documents and data that make up the ESI, the number and nature of the redactions that must be made to the ESI for such matters as privilege and trade secrets, the type of ESI on which redactions must be made, and the time it generally takes various other parties involved in these processes to complete their tasks, some of which I understand are quite time-consuming.

7. FTI presently is in the process of transferring over 2.5 TB of review and production data from AstraZeneca's previous hosting vendor. FTI will receive the final shipment of data from

AstraZeneca's previous hosting vendor by November 20, 2007. FTI is also in possession of the original collections made by AstraZeneca (2.5TB) as well as the native file processing output of AstraZeneca's previous processing vendor (2.5TB). FTI is also in the process of acquiring the processing databases themselves from this same processing vendor. In addition to hosting and processing, FTI will also assume the role of creating production deliverables.

8. The productions of documents to plaintiffs as to which FTI is involved generally comprise two categories of material: (i) custodial production and (ii) responses to specific requests for production, including databases.

9. AstraZeneca has proposed that productions to plaintiffs comprise native files. In this context, native files also refer to emails that have been rendered from the original PST email stores. A PST file is a container that includes individual messages and attachments.

10. FTI can substantially complete the production of custodial collections in native format by February 14, 2008. This date incorporates a complete reprocessing of approximately 500 gigabytes of e-mail stores and reconciliation with previous vendor e-mail processing efforts. Additionally, FTI is going to unwind a portion of global de-duplication highlighted specifically by plaintiffs as a source of confusion. Production of the custodial collections will occur on a rolling basis. By February 14, 2008, FTI can also substantially complete the production of non-database ESI responsive to plaintiffs' pending requests for production, and reproduce in native format ESI previously produced in response to prior requests for production.

11. I understand that there are approximately 23 databases from which plaintiffs have requested production. Those databases are the following: AZER, CLINTRACE, GEL, WEBSTIR, Seroquel Lifecycle Scientific Database, Sales Insite, SnpPharma, Cornerstone, LBX, IMPACT, CFR/DEN, Radar, SPW, Planet, Touchstone Interactive, Touchstone SFA, Compass,

Viewpoint, AMOS, Step2000, SECURE, RAVE, and NICE. Some of these databases are document based while others consist simply of data. After extraction from AstraZeneca's database systems, FTI will need to process the documents and data from these databases, and load them into Ringtail or some other review platform.

12. Some of these databases are likely to contain privileged or other material and data that must be excluded or redacted. With regard to those databases, FTI will need to prepare the material and data for redaction and relevance review by the lawyers.

13. The date for complete production of these database materials will be dependent upon the redaction and relevance review requirements. The time required electronically to redact database information is highly dependent on the nature of the documents or data from which the redactions are being made, and the extent and nature of the redactions themselves. As a general matter, the time required differs depending on whether the databases are document-based or data-based. Document databases can be loaded relatively quickly, and reviewed and redacted as the case may be. The length of time for FTI to process these documents is driven by the volume of these documents and the time required by the lawyers to review them for redactions. On the pure database side, however, there are more complications from FTI's standpoint, and the work involved is more complicated and time-consuming, requiring specialized procedures appropriate to the nature of the data. For example, there may be numerous entries stored in an electronic database. This kind of data is among the most difficult to process, and additional electronic procedures will have to be applied. With data of this nature, FTI will need a method to read the entries, afford reviewers a method to mark what should be redacted (such as patient names), and then actually redact that information from the electronic document. If there are multiple fields in an extracted database that contain information requiring redaction, FTI will have to derive the

4

optimal way to handle this type of data on a case by case basis appropriate to the situation. The procedures may differ depending on the data and the specific database from which it derives. The time for the reviewers to work through multiple fields of information that contain information that must be redacted and to implement those redactions may be very labor intensive.

14. Based on my assessment of the work and difficulties involved in this aspect of the production, I have concluded that it will take until March 14, 2008 to substantially complete production from the 23 databases. Production from these databases will occur on a rolling basis.

15. I am also aware that plaintiffs have expressed an interest in seeking production from additional databases included in the 59 databases they originally identified. This production would be in addition to the production from the subset of the 23 databases discussed above. It is my understanding that, should plaintiffs make formal requests for additional database production, and subject to ensuing meet and confer discussions and/or mediation with Special Master Ball to more specifically define and narrow the data and documents involved, AstraZeneca will seek to extract information from these additional databases as expeditiously as possible and on a rolling basis. FTI will work as expeditiously as possible to process and produce data and documents from these additional databases, devoting whatever resources are necessary to the efficient and expeditious accomplishment of that task. Specifically, if AstraZeneca completes extraction from these additional databases by January 20, 2008 (which I understand is the extraction completion date for the 23 databases), FTI will make every effort and devote all appropriate resources to meet the March 14, 2008 date for substantial completion of production from these additional databases as well. For all of the reasons I note in paragraphs 11-13, however, as well as the uncertainty of what data and documents will be involved, I cannot

5

state conclusively that FTI can meet that date for these additional databases. There are too many variables, including the time required for legal review, that affect when production can be made.

16. There are two other currently pending production matters. One is the production of emails from a common collection mailbox used as part of the litigation hold process of AstraZeneca. That email has been processed and awaits further review. It will be substantially ready for production by December 31, 2007. The other is the additional documents yielded by AstraZeneca's negotiated agreement with the plaintiffs to run approximately 100 additional search terms across the custodial collection documents. Those search terms have yielded approximately 86,000 additional documents that will be substantially ready for production by December 31, 2007.

17. FTI will work through its various assigned tasks as efficiently as possible. Since the documents and data will be coming into FTI on a rolling basis, FTI will multi-task. It will load ESI into Ringtail as it receives it, and will concurrently work on whatever tasks are required for the other ESI already on its system. Working in this parallel manner will help maximize the speed with which FTI can complete all of its assigned tasks.

18. This concludes my declaration.

*William A. Adams*
/s/ William Adams