UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| IN RE: SUBPOENAS SERVED ON HARRIS INTERACTIVE, INC., KLEMTNER ADVERTISING, INC., SAATCHI & SAATCHI HEALTHCARE, AND EDELMAN | Misc. Action No. M8-185 |
|---|---|

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

-------------------------------------------------X
IN RE SEROQUEL PRODUCTS              :
LIABILITY LITIGATION                 :
-------------------------------------------------X   MDL 1769
THIS RELATES TO                      :
ALL CASES                            :
-------------------------------------------------X

## SUPPLEMENTAL SUBMISSION OF NON-PARTY DANIEL J. EDELMAN, INC.

Non-Party Daniel J. Edelman, Inc. ("Edelman"), submits this supplemental submission in accordance with the Court's request at the conference on November 20, 2007 to provide additional information regarding the potentially privileged nature of certain documents that were authored or received by employees in Edelman's Litigation Communications group (the "Litigation Group").[1] In this regard, attached herewith is the Declaration of Charles Bakaly, Practice Head of the Litigation Group, which provides additional information regarding the services performed by the Litigation Group in connection with this matter. We also write to provide further information to the Court regarding our good faith efforts to meet and confer with

---

[1] While many, if not most, privileged documents and work product may have originated from this engagement, there are other documents from other Edelman engagements that may be protected by the attorney-client privilege or be work product.

Plaintiffs' counsel in an effort to narrow the scope of the subpoena *duces tecum* (the "Subpoena") served upon Edelman.

I.      **Privilege Determinations**

To be clear, Edelman is not now, and never has, taken the position that all of the documents and communications relating to the work of the Litigation Group are privileged. We have, however, asserted that because of the unique services rendered by the Litigation Group on behalf of AstraZeneca after being engaged by AstraZeneca's outside counsel (Sidley Austin LLP) in connection with the Seroquel products liability litigation, certain documents in the files of the Litigation Group may be protected from disclosure by the attorney-client privilege and/or work product doctrine. We respectfully request that the Court allow Edelman and/or AstraZeneca to prepare a privilege log. Once plaintiffs have reviewed the log and met and conferred with Edelman and/or AstraZeneca as appropriate, if there are any disagreements about what has been withheld, then the documents can be reviewed (either individually or through a grouping or sampling process) to determine which documents are in fact privileged and protected from disclosure. A privilege log is all that Plaintiffs have requested in their motion to compel, and we are willing to agree to that request. In addition, because the privilege at issue belongs to AstraZeneca, we have asked AstraZeneca to assist in privilege determinations, and it has said it will do so on an expedited basis.

We believe that some of the documents sought by Plaintiffs from the Litigation Group may constitute confidential communications produced by, at the behest of, or for the benefit of, AstraZeneca counsel, and therefore should be shielded from discovery by the attorney-client privilege and/or work product doctrine. We believe that other documents from the Litigation Group may properly be withheld from production or redacted on the ground that they constitute

2

or contain confidential communications setting forth legal advice of AstraZeneca counsel and/or requests for such advice. As noted in Mr. Bakaly's Declaration, Edelman was retained in 2006 by Sidley Austin LLP, outside litigation counsel to AstraZeneca, specifically to assist on issues relating to the litigation concerning Seroquel. Edelman was hired at the direction of the company's internal counsel to provide strategic communications counsel as part of the Company's overall strategy with respect to nationwide litigation, and potential state Attorneys General actions regarding Seroquel. Further, Edelman took appropriate steps designed to keep its communications with AstraZeneca and AstraZeneca's counsel about the litigation confidential, such as marking reports "privileged and confidential," "attorney client communication," or "attorney work product," and not disclosing any confidential information except as expressly authorized by counsel.

At the hearing on November 20, 2007, the Court raised the issue as to whether any documents prepared by or for a public relations firm could ever be deemed privileged. As noted below, several courts have addressed this issue and have concluded that under certain circumstances the documents prepared by or for the public relations firm should be deemed privileged and protected from disclosure.

It is well established that the attorney-client privilege in appropriate circumstances extends to otherwise privileged communications that involve persons assisting a lawyer in the rendition of legal services. See United States v. Kovel, 296 F.2d 918, 921-23 (2d Cir. 1961) (noting that communications with an accountant were privileged where such communications were made for purposes of allowing the attorney to understand the client's position in order to provide legal advice). Courts have repeatedly recognized that this principle applies to public relations consultants who assist in the rendition of legal services. See Ludwig v. Nanouski, 2004

3

U.S. Dist. LEXIS 16049, at *8-*10 (N.D. Ill. Aug. 13, 2004) (holding that documents sent to or created by the defendant's public relations firm would be protected from disclosure by the attorney-client privilege upon production of an affidavit from the public relations firm's representative attesting that the communications dealt with legal advice); In re Grand Jury Subpoenas, 265 F. Supp. 2d 321, 325-31 (S.D.N.Y. 2003) (holding that communications among target of grand jury investigation, her lawyers and public relations firm for the purpose of giving or receiving legal advice were protected by attorney-client privilege); FTC v. GlaxoSmithKline, 294 F.3d 141, 148 (D.C. Cir. 2002) (holding that "[o]ur conclusion that the documents are protected by the attorney-client privilege extends also to those communications that [the defendant] shared with its public relations . . . consultants"); In re Copper Market Antitrust Litigation, 200 F.R.D. 213, 219 (S.D.N.Y. 2001) (confidential communications between public relations firm and corporation's counsel that were made for the purpose of rendering legal advice were protected by the attorney-client privilege); H.W. Carter & Sons, Inc. v. The William Carter Co., 1995 U.S. Dist. LEXIS 6578, at *7-*8 (S.D.N.Y. May 16, 1995) (holding that discussions between public relations consultants, the defendant and counsel were privileged where the "public relations consultants participated to assist the lawyers in rendering legal advice, which included how defendant should respond to plaintiff's lawsuit"); see also Edelman's Memorandum of Law at 13-15.

The court's decision in In re Grand Jury Subpoenas, 265 F. Supp. 2d 321, 326 (S.D.N.Y. 2003) is instructive here. In that case, the issue presented was "whether attorney efforts to influence public opinion in order to advance the client's legal position . . . are services, the rendition of which also should be facilitated by applying the privilege to relevant

communications which have this as their object." In denying, in part, the government's motion to compel, the court reasoned that:

> [L]awyers may need skilled advice as to whether and how possible statements to the press - ranging from "no comment" to detailed factual presentations - likely would be reported in order to advise a client as to whether the making of particular statements would be in the client's legal interest. And there simply is no practical way for such discussions to occur with the public relations consultants if the lawyers were not able to inform the consultants of at least some non-public facts, as well as the lawyers' defense strategies and tactics, free of the fear that the consultants could be forced to disclose those discussions.

Id. at 331-32.

In addition to attorney-client privilege, the work product doctrine has also been applied by courts to protect from disclosure documents sent to or created by public relations firms. See In re Vioxx Products Liability Litigation, 2007 U.S. Dist. LEXIS 23164, at *11 (E.D. La. March 5, 2007) (holding that documents prepared by public relations firms under the direction of counsel for the defendant in a multidistrict products liability litigation were entitled to work product and/or attorney-client protection and therefore not subject to disclosure); In re Grand Jury Subpoenas, 265 F. Supp. 2d at 332-33 (holding that documents withheld from production by public relations firm constituted work product prepared in anticipation of litigation); In re Copper Market Antitrust Litigation, 200 F.R.D. at 221 (holding that "[o]nce it is established that a document was prepared in anticipation of litigation, work-product immunity protects documents prepared by or for a representative of a party, including his or her agent").

Based on the foregoing, we simply request that Edelman be given a reasonable opportunity to prepare a privilege log to allow the Court, if necessary, to make appropriate determinations on any privilege disputes in accordance with the case law cited above. We

believe that Plaintiffs' counsel has no basis to object to this request inasmuch as this is the relief they had initially requested in their motion to compel.

Given the labor intensive nature of the anticipated privilege review -- our initial estimates are that potentially tens of thousands of documents may require careful scrutiny for this purpose -- and so as to minimize any hardship to Edelman and the clients presently being serviced by the Litigation Group, who will need to take time away from other client-related projects to assist in this effort, we respectfully request that the Court grant counsel until January 10, 2008 to prepare a privilege log and transmit the same to counsel for Plaintiffs, and to further require that Plaintiffs' counsel meet and confer as required by the Federal Rules of Civil Procedure prior to seeking any further Court intervention in this regard.

## II.  Meet and Confer Obligations

As to the balance of the Subpoena, Edelman continues to believe that, as written, it remains overly broad and unduly burdensome. Since last week's conference, however, we have conferred with Holly Wheeler, Esq., counsel for Plaintiffs and appear to be making significant progress towards resolving the current dispute. Specifically, by letter dated November 21, 2007, Ms. Wheeler advised counsel for Edelman that she had "re-reviewed the list of Edelman's 70 remaining Seroquel related projects" and "attempted to prioritize some of those projects" by category. Ms. Wheeler also requested additional information regarding the remaining projects. In response to Ms. Wheeler's letter we sent her copies of project briefs that describe, in detail, the projects which we understand Edelman performed for AstraZeneca with respect to Seroquel. We are hopeful that after Ms. Wheeler has an opportunity to review the project briefs we will be able to work with her to further clarify and/or narrow the scope of the Subpoena so that Edelman can begin collecting and producing documents on a rolling basis over the next several weeks.

6

As we have stated on more than one occasion to Plaintiffs' counsel, we wish to assist in discovery and have no interest in avoiding our disclosure obligations. We are hopeful, however, that Plaintiffs' counsel and the Court will recognize that non-parties should not be held to the same standard as parties to the litigation. Indeed, Fed. R. Civ. P. 45(c)(1) expressly states that "[a] party or an attorney responsible for the issuance and service of a subpoena *shall* take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued *shall* enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee." (Emphasis added); see also Fed. R. Civ. P. 45(c)(2)(B) (noting that any order to compel the production of documents pursuant to subpoena "shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded"); Linder v. Calero-Portocarrero, 251 F.3d 178, 182 (D.C. Cir. 2001) (holding that under Rule 45, "the questions before the district court are whether the subpoena imposes expenses on the non-party, and whether those expenses are 'significant.' If they are, the court must protect the non-party by requiring the party seeking discovery to bear at least enough of the expense to render the remainder 'non-significant.' The rule is susceptible of no other interpretation").

Accordingly, Edelman requests that as a non-party it be reimbursed for reasonable fees, costs and lost earnings in the event it is ordered to produce documents in response to Plaintiffs' subpoena.

Lastly, we note that had Plaintiffs' counsel prioritized the various projects and communicated with us in good faith months ago in connection with our repeated requests to meet

7

and confer to narrow the scope of the Subpoena, we never would have needed the Court's intervention to resolve this discovery dispute.

We thank the Court for its time and attention to this matter.

Dated: New York, New York
November 27, 2007

Respectfully Submitted,

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

By: _____
Brian S. Kaplan, Esq. (BK 4922)

1633 Broadway
New York, NY 10019
(212) 506-1700

*Attorneys for Non-Party
Daniel J. Edelman, Inc.*
