UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :  Misc. Action No. M8-85

IN RE: SEROQUEL PRODUCTS     :  (Underlying Case No.
LIABILITY LITIGATION              :  6:06-MD-1769-ORL-ACC-22DAB
                                        :  Currently Pending in the United States
                                        :  District Court for the Middle District of
                                        :  Florida)

THIS RELATES TO ALL CASES      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## ASTRAZENECA'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REFER THIS MATTER TO THE UNDERLYING MDL COURT (WHICH RELIEF IS UNOPPOSED) OR, IN THE ALTERNATIVE, TO QUASH SUBPOENAS OR ISSUE PROTECTIVE ORDER

12475807.2


EXHIBIT 2

## TABLE OF CONTENTS

|  | Page |
|---|---|

Table of Authorities ...................................................................................................................... ii

Preliminary Statement .................................................................................................................... 1

Discussion ....................................................................................................................................... 3

A.     The Matter Should Be Referred to the MDL Court ............................................................ 3

B.     Alternatively, the Court Should Quash the Subpoenas or Issue a Protective Order Precluding this Discovery. ................................................................................................... 8

       1.     The Documents and Information Sought Are Irrelevant ........................................ 8

       2.     The Documents and Information Sought are Protected from Discovery by the Attorney-Client Privilege and Work Product Doctrine. ............................. 12

Conclusion .................................................................................................................................... 15

Certificate of Conference ............................................................................................................. 16

## TABLE OF AUTHORITIES

### CASES

Page

*Auto-Owners Insurance Co. v. Southeast Floating Docks, Inc.*,
231 F.R.D. 426 (M.D. Fla. 2005) ............................................................................. 12, 14

*Brown v. Braddick*,
595 F.2d 961 (5th Cir. 1979) ........................................................................................ 14

*Compulit v. Banctec, Inc.*,
177 F.R.D. 410 (W.D. Mich. 1997) ......................................................................... 13, 14

*G.K. Las Vegas v. Simon Property Group*,
2007 WL. 119148 (D. Nev.) ........................................................................................ 12

*Hanan v. Corso*,
1998 WL. 429841 (D.D.C. 1998) .................................................................................. 9

*New Park Entertainment, LLC v. Electric Factory Concerts, Inc.*,
2000 WL. 62315 (E.D. Pa. 2000) ................................................................................. 14

*Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*,
238 F. Supp. 2d 270 (D. D.C. 2002) .............................................................................. 7

*State of Florida v. Jones Chemical, Inc.*,
1993 WL. 388645 (M.D. Fla. 1993) ............................................................................. 14

*Subpoena Issued to Boies, Schiller & Flexner LLP*,
2003 WL. 1831426 (S.D.N.Y. 2003) .......................................................................... 6, 7

*In re Welding Rod Products Liability Litigation*,
406 F. Supp. 2d 1064 (N.D. Cal. 2005) ......................................................................... 6

*Wilmer, Cutler & Pickering & Goodwin Proctor LLP*,
255 F. Supp. 2d 1 (D. D.C. 2003) .................................................................................. 7

### STATUTES

28 U.S.C. § 1407(b) ............................................................................................................ 6

Fed. R. Civ. P. 45(c)(3)(A)(iii) ........................................................................................ 3, 8

Fed Proc. § 65:256 ............................................................................................................ 14

9A Fed. Prac. & Proc. Civ. 2d § 2459 ........................................................................................... 6

Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure
    § 2459 (1991 & Supp. 2007) ............................................................................................. 7

Moore's Fed. Prac. 3rd § 45.50[4] .................................................................................................. 6

Fed. R. Civ. P. Rule 26(b)(1) ................................................................................................... 9, 12

Fed. R. Civ. P. Rule 26(c) .................................................................................................... 3, 8, 12

Fed. R. Civ. P. Rule 45 ................................................................................................................ 14

## PRELIMINARY STATEMENT

Defendants in the underlying litigation, AstraZeneca Pharmaceuticals LP and AstraZeneca LP ("AstraZeneca"), seek an order referring this matter for resolution to the MDL Court in the Middle District of Florida, where the underlying *In re Seroquel Products Liability Litigation* matter is pending. Such an order of referral is unopposed. The MDL court has indicated a willingness to handle discovery matters of this type and has stated that it would "encourage" other judges to refer such matters to it for resolution.

Briefly stated, AstraZeneca submits that referral to the MDL Court is appropriate for the following reasons:

- The subpoenas at issue are for deposition and document discovery from Planet Data Solutions, Inc. ("Planet Data"), a litigation support firm that assisted AstraZeneca with document production in the MDL proceeding. (Ciotti Decl. ¶ 3, Ex. A). This discovery sought from AstraZeneca's litigation vendors apparently arises from a finding by the MDL Court that certain problems in prior production of electronically stored information (ESI) resulted from "sanctionable conduct." (Ciotti Decl. ¶ 4, Ex. B). Significantly, the MDL Court reserved determination of the nature and amount of any sanction that might be imposed with a focus on what "specific prejudice or added costs," if any, the plaintiffs had incurred. (*Id.*) In fact, the MDL Court did not envision that plaintiffs would take discovery on these issues, but directed the matter to a special master, stating it would like to know:

    > how [the problems] impacted the [plaintiffs] and whether we need a further hearing on that or whether you simply want to submit documents.
    > * * *

12475807.2                                1

> I don't want this issue of sanctions and discovery responses to become any more of a mini litigation than it already has. ... [The ESI Special Master who I am appointing], will get to the bottom of this, I hope, without having to do a formal round of discovery about discovery. We'll get that presentation ... And then, ... you'll have a better idea of more precisely describing what you think has happened to you.

(Ciotti Decl. ¶ 5, Ex. C (Aug. 22, 2007 Hearing Transcript at 43-46)).

- Having the MDL Court rule on motions addressed to the Planet Data subpoenas will place those matters before the court that is already intimately familiar with the parties, the underlying litigation, and the history of MDL discovery. Moreover, that court already intends to address, at a status conference on December 18, 2007 at 10:00 a.m., the scope of allowable discovery (if any) with respect to the prejudice claimed by plaintiffs. (*See* Ciotti Decl. ¶ 6, Ex. D & E). Sending this matter to the MDL Court for decision will also avoid unnecessarily burdening this Court with the need to come up to speed on complex issues raised by the motions and will eliminate the potential for inconsistent rulings between this Court and the MDL Court, and between this Court and the Northern District of California where plaintiffs have issued identical deposition and document subpoenas to another litigation support firm, Zantaz, Inc. ("Zantaz"), that assisted AstraZeneca with the production. (Ciotti Decl. ¶ 7, Ex. F). AstraZeneca has filed a motion similar to this one in the Northern District of California with respect to that subpoena.

- The MDL Court has stated that it will "encourage" other courts facing discovery motions related to the underlying Seroquel litigation "to send them back to me for resolution." (Ciotti Decl. ¶ 8, Ex. G (Sept. 11, 2007 Hearing Transcript at 8-9)).

2

AstraZeneca respectfully submits such a referral is the most efficient course of action here.

Alternatively, if this Court chooses to hear the substance of the motion, AstraZeneca respectfully requests an order, pursuant to Fed. R. Civ. P. 45(c)(3)(A)(iii), quashing the subpoenas issued by the plaintiffs to Planet Data, or, pursuant to Rule 26(c), precluding the discovery sought by those subpoenas, because they seek documents and information that are irrelevant to the prejudice issues remaining before the MDL court (which is the only conceivable basis for these subpoenas) and, in any event, would invade the attorney-client privilege and work product doctrine.

## DISCUSSION

### A. THE MATTER SHOULD BE REFERRED TO THE MDL COURT.

The immediate background for these subpoenas makes clear that the MDL Court is the most appropriate forum for consideration of all challenges to plaintiffs' present discovery efforts. On August 21, 2007, after an evidentiary hearing the previous month on the plaintiffs' motion for sanctions, the MDL Court issued an order finding that certain problems which had arisen in AstraZeneca's production of electronically stored information (ESI) resulted from "sanctionable conduct." (Ciotti Decl. ¶ 4, Ex. B at p. 2). The Court reserved for a later time consideration of the "nature and amount" of any sanctions that might be awarded subject to any evidence plaintiffs could bring forth regarding the "prejudice or damages" they had incurred. (Ciotti Decl. Ex. B at. 28).

On November 20, 2007, the MDL Court issued a Notice setting an evidentiary hearing and oral argument for January 28, 2008, on the issues it had reserved for later decision in the Sanctions Order. (Ciotti Decl. ¶ 6, Ex. D). The Notice indicated that, at the previously set December 18, 2007 status conference, the MDL Court would consider "matters as to refinement

of issues, procedures and possible discovery" needed to prepare for that hearing and "how relevant information from the [ESI special master] bears [on] the issues ...." (*Id.*).

After that August sanctions order, the MDL Court appointed an ESI special master, making clear that it viewed this appointment as obviating any need for a "formal round of discovery about discovery" and thereby avoiding the "issue of sanctions and discovery responses [becoming] any more of a mini litigation than it already has." (Ciotti Decl. ¶ 5, Ex. C (Aug. 22, 2007 Hearing Transcript at 43-46)).

Plaintiffs nevertheless took matters into their own hands to conduct "discovery about discovery," precisely what the MDL Court had sought to avoid. Within eight days of the MDL Court's notice for the January 28 hearing, the plaintiffs had issued (from this District and the Northern District of California) subpoenas to two litigation support firms – Planet Data and Zantaz – retained to assist AstraZeneca and its counsel in its document production efforts. The subpoenas sought a wide range of documents and set a sweeping list of topics to be explored in deposition, almost all of which related to the firms' work helping AstraZeneca respond to discovery in the MDL. Plaintiffs' requests to the litigation support firms include contracts and communications among AstraZeneca, its counsel, and the litigation support entities utilized for that production; the various methods and procedures that were used in that production; the problems that were encountered; and how they were addressed.

The breadth of the subpoenas is exemplified by the following few examples from the document subpoena. The subpoena to Planet Data that is the subject of this motion seeks the production of "Documents" (including "electronically stored information") relating to AstraZeneca's "Production," defined as encompassing the "collection, processing and production

4

of Documents for the purposes of litigation related to Seroquel," (Definitions # 3 and 9), including all Documents:

- relating to "proposals or drafts or proposals" or "agreements or drafts of agreements" relating to Production (Request #'s 1 and 2) or "which reflect compensation paid or payable to [Planet Data] for professional services related to Production" (Request # 16);

- evidencing or relating to "communications to, from or within [Planet Data] regarding any problems or issues with production raised by Plaintiffs herein ... [including those reflecting] the first reported date of each issue, instructions for each issue, QC measures taken in response to each issue to prevent the future reoccurrence of the issue, documentation on the source of problems with each issue, QA methodology taken on subsequent Productions with respect to the issue, and communications of discussions with any person related to the cause of each issue (Request # 8);

- evidencing, reflecting or relating to "any work on Production that had to be redone and any delay occasioned by the same" (Request # 14);

- relating to Production which were generated, sent or received in connection with any merger or acquisition of [Planet Data] (i.e., any due diligence documents or disclosures) (Request # 17);

- relating to sub-vendors employed by [Planet Data] to work on Production [including those] reflecting the current status of each subvendor (i.e., good standing, terminated, etc.) including whether any project managers for the sub-vendors have been terminated or whether payment has been withheld" (Request # 18); and

- reflecting "the name, residence address and telephone number of any former employees of [Planet Data] who worked on the Seroquel-related document Production."

AstraZeneca is informed that the subpoenaed parties are objecting to the subpoenas and AstraZeneca has filed (or will be filing) motions addressed to them in the issuing courts and will bring the same to the MDL Court's attention. Thus, the subpoenas have initiated exactly the "formal round of discovery about discovery" and "mini litigation" about sanctions and discovery responses that the MDL Court had desired to avoid.

5

It is both appropriate and efficient to have the MDL Court rule on the motions addressed to the Planet Data and Zantaz subpoenas. The MDL Court held an evidentiary hearing on plaintiffs' motion for sanctions, entered a lengthy order with various findings thereon, has scheduled a January 28 hearing on the nature and amount of sanctions in light of whatever evidence plaintiffs may have as to prejudice and damages, and has already scheduled a December 18 status conference to consider and refine the issues for that hearing and possible discovery relating thereto. Obviously, the MDL Court is already very familiar with the various issues that would bear on the relevance and scope of discovery contained in the subpoenas. That court itself has recognized as much, indicating its intent to "encourage" judges facing discovery-related motions such as these "to send them back to me for resolution." (Ciotti Decl. ¶ 8, Ex. G).

In contrast, if the subpoena motions are not referred to the MDL Court, this Court will have to expend judicial resources to learn the very issues with which the MDL Court already is familiar. And although this issuing Court has authority to rule on motions addressed to these subpoenas, the MDL Court also has such authority – at least following a referral of such motions. 28 U.S.C. § 1407(b) (providing that the judge assigned by the MDL panel to hear the pretrial proceedings "may exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions."); *see In re Welding Rod Products Liability Litigation*, 406 F. Supp. 2d 1064 (N.D. Cal. 2005) (issuing court referred non-party's motion to quash to the MDL court in part because such referral would best serve the interests of justice, judicial efficiency, and consistency with the underlying MDL rules); *In re Subpoena Issued to Boies, Schiller & Flexner LLP,* 2003 WL 1831426, *1 (S.D.N.Y. 2003) (referring motion to quash subpoena duces tecum issued by that court to MDL court that "is already familiar with this complex litigation");

C. Wright & A. Miller, 9A Fed. Prac. & Proc. Civ. 2d § 2459 ("In multi-district litigation, the court in charge of the consolidated proceedings has the power to rule on a motion to quash subpoenas."); Moore's Fed. Prac. 3rd § 45.50[4] (MDL court "may hear and decide motions to compel or motions to quash or modify subpoenas directed to nonparties in any district.").

Indeed, in the last few days, the MDL Court itself specifically has ruled that it has jurisdiction to quash a subpoena to a third party issued from another district and referred to it for consideration, stating:

> "in multi-district litigation, the court in charge of the consolidated proceedings has the power to rule on a motion to quash subpoenas. 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2459 (1991 & Supp. 2007) (citing *Wilmer, Cutler & Pickering & Goodwin Proctor LLP*, 255 F. Supp. 2d 1 (D. D.C. 2003); *In re Subpoena Issued to Boies, Schiller & Flexner LLP*, 2003 WL 1831426, *1 (S.D. N.Y. 2003)); see also *Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 238 F.Supp.2d 270, 275-76 (D. D.C. 2002) (holding that § 1407 gave MDL judge in the District of Columbia the power to enforce subpoena duces tecum issued by the Middle District of Tennessee to non-party in that district) (collecting cases))."

(Ciotti Decl. ¶ 9, Ex. H (Order dated Dec. 6, 2007 at 4)).

Further, referring this matter to the MDL Court would avoid the specter of potentially inconsistent rulings – indeed, potential inconsistencies not only as between the rulings in this Court and the Northern District of California on the scope of permissible discovery with respect to identical subpoenas, but also as between the subpoena issue rulings of this Court and the rulings of the MDL Court on several related issues in the MDL status conference on December 18 or thereafter. *See In re Subpoena Issued to Boies, Schiller & Flexner LLP*, 2003 WL 1831426, *1 (S.D.N.Y. 2003) (referring motion to quash to the MDL court, noting that, "motions have been filed in the District of Columbia District Court to quash nearly identical subpoenas that [were] served upon two law firms located in that district. Thus, the referral will serve the interest of judicial consistency, also at the heart of § 1407).

Therefore, AstraZeneca respectfully requests that this Court refer this motion, as well as any other motions addressed to the Planet Data subpoenas, to the MDL Court – the Middle District of Florida (Orlando Division) – for resolution.

**B.     Alternatively, the Court Should Quash the Subpoenas or Issue a Protective Order Precluding this Discovery.**

If, despite the fact that no party opposed referral, this Court were to decide not to refer to the MDL Court the motions addressed to the Planet Data subpoenas, then we respectfully submit that this Court should either quash the subpoenas under Fed. R. Civ. P. 45(c)(3)(A)(iii) or issue a protective order under Rule 26(c). The information sought by those subpoenas is not discoverable for two separate and independent reasons. First, the only conceivable purpose for this discovery would be in connection with the sanctions issues raised in plaintiffs' motion for sanctions, but such "discovery about discovery" is not within the scope of the Federal Rules. Moreover, the MDL Court already has ruled that what remains to be decided in connection with that motion is "prejudice and damages" to plaintiffs and that there is no need for discovery by plaintiffs on that issue. Second, Planet Data was retained by AstraZeneca's legal department to provide assistance to AstraZeneca's counsel in responding to plaintiffs' discovery requests. Given that relationship, all of the information and documents sought by plaintiffs through these subpoenas would be subject to the attorney-client privilege or the work product doctrine.

**1.     The Documents and Information Sought are Irrelevant.**

On November 20, 2007, the MDL Court set an evidentiary hearing and oral argument for January 28, 2008, to determine the issues it reserved for later determination in its Sanctions Order. (Ciotti Decl. Ex. D (Notice of Hearing at p. 1)). In an apparent response to the MDL Court's Notice, plaintiffs issued subpoenas to both Planet Data (whose subpoenas are at issue here) and Zantaz, two litigation support firms that had assisted AstraZeneca and its counsel in

responding to plaintiffs' discovery requests giving rise to the Sanctions Order. The subpoenas seek to delve into the complete range of topics and documents that conceivably might have any bearing on the production efforts that were undertaken, including among other things, the contracts and communications among AstraZeneca, its counsel, and the litigation support entities, the various methods and procedures that were used in the production, the quality control that was retained, the problems that were encountered, and how those problems were addressed. All of that, however, is both beyond the scope of permissible discovery under Rule 26(b)(1)) and, in any event, irrelevant to the remaining issues with respect to sanctions.

Rule 26(b)(1) does not authorize discovery relating to the method, manner and means by which discovery took place – the very "discovery on discovery" that the MDL Court rejected when plaintiffs suggested it. Rather, Rule 26(b)(1) limits the scope of discovery to "any matter, not privileged, that is relevant to the claim or defense of any party …." *See Hanan v. Corso*, 1998 WL 429841, *7 (D.D.C. 1998). In *Hanan*, plaintiff filed a motion for sanctions due to Mobil's failure to produce responsive documents that allegedly existed. In connection with their motion, plaintiffs sought to compel production of "'all documents relating to Mobil's previous efforts to respond to Mr. Hanan's request for production in this case.'" *Id*. The court rejected that effort as unauthorized under the Federal Rules. As the Court put it, "no matter how liberally Rule 26(b)(1) is construed," "discovery is only permitted of information which is either relevant or likely to lead to admissible evidence. …" – the language of the Rule as it then existed. *Id*. Thus, the Court concluded, Rule 26(b)(1) did not include:

> "the discovery process itself [as] a fit subject for additional discovery. … [T]he Federal Rules already contain several provisions which mandate the consequences of failing to comply with discovery … strongly suggest[ing] that those remedies are to be deemed the exclusive consequences. To add to them another evidentiary remedy is to amend them and to open the door to discovery about discovery in every case."

*Id.* Since *Hanan*, Rule 26(b)(1) has been amended to limit discovery to matters "relevant to any party's claim or defense," making collateral 'discovery about discovery' such as plaintiffs seek here even more inappropriate.

Even if discovery about discovery were authorized under the Rules, plaintiffs' subpoenas would still be improper because the information and documents plaintiffs seek has no relevance to the underlying litigation. In its Sanctions Order, the MDL Court already has explored the evidence relating to that production and has already made its determinations as to the existence of "sanctionable conduct." The only related issue still remaining, which the MDL Court expressly reserved for later determination, was whether, and to what degree, plaintiffs had been prejudiced or suffered damages as a result of that conduct and, therefore, the nature and amount of any sanctions that might be awarded.

In its Sanctions Order, the MDL Court spent some 28 pages exploring the evidence it had heard as to each aspect of AstraZeneca's production that plaintiffs claimed was sanctionable. The MDL Court concluded that, although "some of the conduct Plaintiffs have complained of is not sanctionable," other aspects constituted "sanctionable conduct." (Ciotti Decl. Ex. B at p. 2). It then reserved ruling on the appropriate sanctions that might be imposed, stating:

> "[T]he Court is unable to determine the appropriate nature and amount of sanctions at this time. Plaintiffs will be allowed a further opportunity to present evidence and argument as to any prejudice or damages from AZ's failure timely to produce 'usable' or 'reasonably accessible' documents in this litigation, including motion costs."

(*Id.* at p. 28). Thus, from the outset, the MDL Court was clear that it could not complete its determination of the sanction motion because the plaintiffs had not yet presented evidence and argument as to prejudice, and that the focus would now shift from what it had found were

10

AstraZeneca's perceived failures in the production effort to any prejudice or damages that such failures may have caused plaintiffs to suffer.

In fact, at a hearing the very next day, the MDL Court repeatedly made this point. At the hearing, plaintiffs counsel indicated that they had "come up with some preliminary thoughts ... on the discovery we need to determine the scope and impact of the conduct at issue and the types of sanctions that we think should be on the table," and later reiterated that "we do think we need to do some discovery to get to the bottom of the scope of the hole we've been put in." (Ciotti Decl. Ex. C at p. 22, 43). The MDL Court did not agree, telling the plaintiffs both that the focus going forward would be on "prejudice" – how the production problems it already had found had "impacted" the plaintiffs – and that the discovery plaintiffs were contemplating was beyond the scope of what he envisioned. Specifically, the MDL Court stated that it wanted to address:

> "what prejudice you think there has been that you can demonstrate ... I think there has been some serious problems that I'd like to find out how that's impacted the [plaintiffs] and whether we need a further hearing on that or whether you simply want to submit documents."
>
> * * *
>
> "I don't want this issue of sanctions and discovery responses to become any more of a mini litigation than it already has. ... [The ESI Special Master who I am appointing], will get to the bottom of this, I hope, without having to do a formal round of discovery about discovery. We'll get that presentation ... And then, ... you'll have a better idea of more precisely describing what you think has happened to you."

(*Id.* at p. 23, 43-46).

Likewise, when AstraZeneca's counsel protested that plaintiffs had failed at the full day evidentiary hearing on their motion for sanctions to present evidence of the prejudice element of their claim and should not be given a second chance to prove it, the Court offered no suggestion that this second hearing was to be an opportunity again to explore the production failures. Instead, having already addressed those failures in its Sanctions Order and now turning to the

11

"nature and amount of sanctions," it stated that "I think it's in your interest that we do it that way than that I pick a sanction out of the air" – without actual evidence on prejudice – "Take me on trust on that one." (*Id.* at 29-30).

It is quite clear, then, that the issues reserved in the Sanctions Order and set for hearing on January 28 were decidedly not a further examination of AstraZeneca's culpability, but rather a focus on the remaining elements in plaintiffs' claim for sanctions – "prejudice or damages ..., including motion costs." (Ciotti Decl. Ex. B at p. 28 (Sanctions Order)). Because the discovery requested in these subpoenas to Planet Data appear designed to focus on culpability – not prejudice and damages – they are irrelevant, and a protective order should issue to preclude this discovery. *Auto-Owners Insurance Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005) ("As parties, Defendants clearly have standing to move for a protective order [with respect to a subpoena addressed to a third party] if the subpoenas seek irrelevant information."); *G.K. Las Vegas v. Simon Property Group*, 2007 WL 119148, *3 (D. Nev.) ("a party ... has standing under Rule 26(c) to seek a protective order regarding subpoenas issued to non-parties which seek irrelevant information").

### 2. The Documents and Information Sought are Protected from Discovery by the Attorney-Client Privilege and Work Product Doctrine.

Even if these subpoenas did not seek irrelevant documents and information outside the scope of Rule 26(b)(1), they improperly seek to invade the attorney-client privilege and the work product doctrine. There is no dispute that Planet Data (as well as Zantaz), as a litigation support firm, was retained to assist AstraZeneca and its counsel in responding to document requests made in AstraZeneca's on-going litigation with plaintiffs. As such, their contracts, communications, processes and procedures, and efforts to respond to any issues encountered in performing this work are all protected. That these doctrines apply in a context like that presented

here was specifically recognized in an on-point case involving a firm providing computer-assisted litigation support to a number of law firms involved in complex litigation.

In *Compulit v. Banctec, Inc.*, 177 F.R.D. 410 (W.D. Mich. 1997), a litigation support firm alleged that the scanners purchased from the defendant for use on a project for eight law firm customers did not work as represented. The defendants sought, and the Magistrate Judge granted, a motion to compel production of various documents pertaining to the litigation support firm's relationship with its law firm clients.

The *Compulit* Court found the Magistrate Judge's ruling to be clearly erroneous, explaining that "the thought processes of the law firms, including the manner in which documents are organized at the law firm's directions are protected by the work-product rule." *Id.* at 412. The Court noted that if the contract between the litigation support vendor and its law firm clients "contain[ed] outlines of how documents are to be assembled, organized and put into the program," as the Court's own experience as a lawyer in complex cases suggested could be the situation, those contracts would be immune from discovery as "either privileged or protected by the work product rule." *Id.* at 413. The Court noted that it could not know, without looking at the documents, whether that in fact was the situation, and ordered an *in camera* review.[1]

Here, of course, the plaintiffs make no effort to limit themselves to documents that may not contain such privileged information.[2] To the contrary, they seek information and documents relating to virtually every aspect of the production effort for which Planet Data (and Zantaz) were retained, making it expressly clear that all but two of their requests encompass "the

---

[1] The Court added that the attorney-client privilege would not be lost "if a law firm used an outside document copy service to copy privileged communications." *Id.* at 412. *See* Restatement (Third) of the Law Governing Lawyers, § 60, comment f ("A lawyer also may disclose [confidential client] information to independent contractors who assist in the representation, such as ... public courier companies and photocopy shops, to the extent reasonably appropriate in the client's behalf.").

[2] Nor could they limit their requests to non-privileged information, considering that Planet Data was specifically retained as a litigation support vendor and the requests all seek information about work Planet Data performed in connection with the litigation.

13

collection, processing and production of documents for purposes of litigation related to Seroquel." (Ciotti Decl. Ex. A at Subpoena Definition 9). As such, any documents responsive to any of the requests would come within the privilege identified by the *Compulit* Court. And the remaining two requests – "the project management structure and accountability within [Planet Data]" and documents relating to "the first contact and engagement of FTI Consulting," another litigation support firm retained in connection with the production, (*Id.* at Production Requests #20 and #21) likewise implicitly encompass those same categories.

Therefore, unlike in *Compulit*, there is no need for an *in camera* review and the subpoenas should be quashed pursuant to 45(c)(3)(A)(iii). *See Auto-Owners Insurance*, 231 F.R.D. at 3-4 (recognizing party's standing to challenge subpoena to non-party "if the party alleges 'a personal right or privilege' with respect to the subpoenas," citing *Brown v. Braddick*, 595 F. 2d 961, 967 (5th Cir. 1979), and *State of Florida v. Jones Chemical, Inc.*, 1993 WL 388645, *2 (M.D. Fla. 1993)); *see also New Park Entertainment, LLC v. Electric Factory Concerts, Inc.*, 2000 WL 62315, *4 (E.D. Pa. 2000) (although under Rule 45 "a motion for a protective order or to quash [typically] should be made by the party from whom the documents are sought, … an exception to this rule exists where a party claims that it has some personal right or privilege with respect to the subject matter sought in the subpoena directed to a nonparty"); Fed Proc. § 65:256 ("a party, although not the person to whom a subpoena is directed, … does have standing [for a motion to quash] if he or she has a personal right or privilege in respect to the subject matter of the subpoena …."). AstraZeneca has standing to protect its own attorney-client privilege and the work-product protections of its counsel.

## Conclusion

For the reasons expressed herein, the instant motion (and any other motions addressed to the Planet Data subpoenas) should be referred to the MDL Court – the Middle District of Florida – for resolution. Alternatively, the subpoenas should be quashed or a protective order issued precluding the discovery set forth therein.

Dated: New York, New York  
December 11, 2007

Respectfully submitted,

DECHERT LLP

By: *David Venderbush*

David Venderbush  
30 Rockefeller Plaza  
New York, NY 10112  
Telephone: (212) 698-3500  
Facsimile: (212) 698-3599

*Attorney for AstraZeneca Pharmaceuticals LP and AstraZeneca LP*

## Certificate of Conference

As set forth in the Declaration of Robert L. Ciotti dated December 10, 2007, counsel for AstraZeneca and counsel for plaintiffs have conferred in a good faith effort to resolve the disputes regarding these subpoenas and the issues raised by this motion. Although the parties agreed that an order referring this matter for resolution to the MDL Court in the Middle District of Florida would be appropriate -- and that relief is accordingly unopposed -- counsel were unable to reach agreement as to the remainder of the matters raised by this motion.

David Venderbush