1   BINGHAM MCCUTCHEN LLP
    COLIN C. WEST (SBN 184095)
2   ERICA BRAND PORTNOY (SBN 244923)
    Three Embarcadero Center
3   San Francisco, CA 94111-4067
    Telephone: (415) 393-2000
4   Facsimile: (415) 393-2286
    Email: colin.west@bingham.com
5        erica.brand@bingham.com

6   Attorneys for
    ZANTAZ, INC.

7

8

9                UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11                  SAN FRANCISCO DIVISION

12

13   IN RE: Seroquel Products Liability Litigation      **Case No.** Miscellaneous Action
                                                        (unassigned)
14
                                                        (Underlying action in Middle District of
15                                                      Florida, Orlando Division; Case No.
                                                        6:06-md-1769-Orl-22DAB; MDL
16                                                      DOCKET NO. 1769 (ALL CASES))

17                                                      **DECLARATION OF COLIN C.
                                                        WEST IN SUPPORT OF NON-
18                                                      PARTY ZANTAZ, INC.'S MOTION
                                                        TO QUASH SUBPOENAS**

19
                                                        Judge: Hon. William Alsup
20                                                         (as General Duty Judge)

21

22

23

24

25

26

1       I, Colin C. West, declare as follows:

2       1.    I am an attorney at law duly admitted to practice before all courts of the

3    State of California.  I am a Partner at Bingham McCutchen LLP, counsel of record for Non-Party

4    Zantaz, Inc.  I have personal knowledge of the matters set forth in this declaration and if called as

5    a witness I could and would testify competently to them.

6       2.    Attached as **Exhibit A** is a true and correct copy of Judge David A.

7    Baker's August 21, 2007 Order in the case *In Re: Seroquel Products Liability Litigation*, in the

8    Middle District of Florida, Orlando Division, Case No. 6:06-md-1769-Orl-22DAB; MDL Docket

9    No. 1769 (All Cases).

10       3.    Attached as **Exhibit B** is a true and correct copy of the November 20,

11    2007 Notice of Hearing entered in the case *In Re: Seroquel Products Liability Litigation*, in the

12    Middle District of Florida, Orlando Division, Case No. 6:06-md-1769-Orl-22DAB; MDL Docket

13    No. 1769 (All Cases).

14       4.    Attached as **Exhibit C** is a true and correct copy of the subpoena for

15    deposition testimony served upon the Person Most Knowledgeable, Zantaz, Inc., 5758 West Las

16    Positas Blvd, Pleasanton, CA 94588 out of the Northern District of California, in the underlying

17    case *In Re: Seroquel Products Liability Litigation*, in the Middle District of Florida, Orlando

18    Division, Case No. 6:06-md-1769-Orl-22DAB; MDL Docket No. 1769 (All Cases).

19       5.    Attached as **Exhibit D** is a true and correct copy of the subpoena *duces*

20    *tecum* and for deposition testimony served up Custodian of Records, Zantaz, Inc., 5758 West Las

21    Positas Blvd, Pleasanton, CA 94588 out of the Northern District of California, in the underlying

22    case *In Re: Seroquel Products Liability Litigation*, in the Middle District of Florida, Orlando

23    Division, Case No. 6:06-md-1769-Orl-22DAB; MDL Docket No. 1769 (All Cases).

24    / / /

25    / / /

26    / / /

1       6.     Attached as **Exhibit E** is a true and correct copy of Non-Party Custodian

2 of Records for Zantaz Inc.'s Responses and Objections to Plaintiffs' Subpoena For Production of

3 Documents, served on December 10, 2007.

4       I swear under penalty of perjury that the foregoing is true and correct and that this

5 declaration was signed in San Francisco, California on December 12, 2007.

6

7 _____

8                    Colin C. West

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

A/72347926.1

NON-PARTY ZANTAZ, INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S SUBPOENA FOR
PRODUCTION OF DOCUMENTS

# EXHIBIT A

# United States District Court
## Middle District of Florida
### Orlando Division

IN RE: Seroquel Products Liability
Litigation.

Case No.  6:06-md-1769-Orl-22DAB

_____/

## Order

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for consideration after hearing on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFFS' MOTION FOR DISCOVERY SANCTIONS** (Doc. No. 256) |
| **FILED:** | **July 3, 2007** |

**THEREON** it is **ORDERED** that the motion is **GRANTED** in part.

In this multidistrict litigation, Plaintiffs have sued Defendants for claims arising for alleged injuries from ingesting AstraZeneca's Seroquel, an atypical anti-psychotic medication that allegedly can cause diabetes and related disorders.  Doc. No. 1.

Plaintiffs have moved for sanctions based on AstraZeneca's "failure to timely comply with numerous discovery obligations since the inception of this litigation" based on four categories of conduct.  Doc. No. 256 at 1.  Plaintiffs base their Motion for Sanctions, first, on AZ's failure to produce, in a readable format, key elements of the IND/NDA in November 2006 as ordered,  not producing a key element until June 2007.  Second, Plaintiffs contend that AZ failed to produce organizational charts by January 2006 as ordered and withheld the vast majority of them until May 14, 2007.  Third, Plaintiffs argue AZ failed to identify all relevant databases which it was obligated to identify in January 2007, instead identifying only a fraction; to date, Plaintiffs have now identified

fifty-nine relevant databases.  Fourth, Plaintiffs' strongest contention is that, although AZ was to produce electronic discovery from its self-chosen "custodians"–those employees most knowledgeable about Seroquel and its development–AZ waited until mid-May to begin production of the overwhelming majority of the documents and  the documents actually produced have significant errors of omission and were not readable or searchable.

AZ contends that the Motion for Sanctions should be denied on procedural grounds because Plaintiffs have not successfully moved to compel and no sanctions are warranted because AZ has complied with the Court's discovery orders.  AZ argues that it has produced the entire IND/NDA to Plaintiffs; has produced organizational charts "early, often, and abundantly"; its custodial production was timely and appropriate; and it has not violated any orders to produce databases.

The Court finds that some of the conduct Plaintiffs have complained of is not sanctionable, however, AZ's custodial production issues, and its uncooperative efforts to resolve technical issues, are a violation of e-discovery rules and principles.  AZ's failure to produce Item 12 of the CANDA in the IND/NDA was oversight or excusable neglect.  AZ's failure to produce organizational charts per CMO2 in a timely fashion was also the result of excusable neglect.  However, AZ's failure to cooperate in the production of the databases and its failure to timely and systematically produce electronic discovery associated with eighty AZ "custodians" in any manageable, searchable form are sanctionable conduct.  The Court will reserve ruling on the appropriate sanctions pending further discovery and after Plaintiffs have the opportunity to offer evidence of the specific prejudice or added costs the sanctionable conduct has caused.

## I. BACKGROUND

This multidistrict litigation was transferred to the Middle District of Florida by the Judicial Panel on Multidistrict Litigation on July 10, 2006.  Doc. No. 1.  On August 15, 2006, Judge Conway

entered an order setting the first pretrial status and discovery conference for September 7, 2006. Doc. No. 4. At that hearing there was a substantial discussion as to expectations for the progress of discovery. It was the Court's expectation that the indisputably relevant material would be produced quickly and without difficulty, despite its volume. Counsel for AZ requested 60 days to complete electronic formatting of the NDA and IND. This extra time was deemed necessary to eliminate the possibility of being unable to meet the Court's deadlines. Doc. No. 32 at 21. The Court's reliance on experienced counsels' ability to accomplish routine matters routinely and timely was in vain.

During the status conference held on November 20, 2006, the Court requested that the parties meet and confer "to submit either agreed proposals to cover document preservation, production protocol and resolution of this issue about formatting of things already produced by December 5, 2006." Doc. No. 84 at 43. However, instead of submitting an agreed proposal for production protocol and formatting, the parties submitted competing proposals (Doc. No. 99 & 100), apparently without a good faith conference within the meaning of Local Rule 3.01(g). Three days before the December 8, 2006 status conference, the parties finally began discussions about electronic documents being produced with searchable load files, bates-stamped TIFF's[1] and various metadata fields. Doc. No. 100 at 1-2 (December 10, 2006). Following the status conferences before the Court on December 11–which the Court had to adjourn and carry over to December 12, 2006 because the parties had been unable to agree ahead of time–the parties proposed a Joint Motion to adopt two case management orders. Doc. No. 110.

---

[1]TIFF (Tagged Image File Format) is one of the most widely used and supported graphic file formats for storing bit-mapped images, with many different compression formats and resolutions. A TIFF file is characterized by its "tif" file name extension. The Sedona Conference Glossary for E-Discovery and Digital Information Management (The Sedona Conference Working Group Series, May 2005 Version), available at http://www.thesedonaconference.org; cited in *Williams v. Sprint/United Management Co.,* 230 F.R.D. 640, 643 (D. Kan. 2005).

The Joint Motion stated, "It is the stated policy of AZ counsel, and its client, that commensurate with the goals of these MDL cases to get to Plaintiffs' counsel *in a timely manner* and in *a format usable* the necessary production documents that the opposing side will need to help them develop, evaluate, and understand their cases for purposes of ultimate prosecution and/or dismissal of cases. . . . It is submitted that [proposed] CMO 2 reflects the confluence of the competing interests of both parties, and reflects a workable, practical and judicially efficient methodology and system for the production of documents to the MDL Plaintiffs." Doc. No. 110 at 4 (emphasis added). On its face, the proposal did that. Unfortunately, AZ has not lived up to producing discovery in a timely manner or useable format.

The proposed CMO 2 submitted by the parties set forth deadlines for AstraZeneca's production of organizational charts for its corporate structure, the Seroquel team, and the drug safety team for the past ten years; listings of 80 (eighty) custodians from whom it is collecting documents; listing of databases concerning document production and preservation; timing for interviews of knowledgeable AstraZeneca IT persons, and the parties' agreed format of the production of custodial files. Doc. No. 110-3. As the Court commented at the time, "The failure of the Defendant to investigate and understand its own records and documents and to prepare them for production has not met the expectations of the Court as discussed at the September 2006 Conference." Doc. No. 113. The Court also commented on its misgivings as to the "proposed CMO 2 regarding production and preservation of Defendant's documents, [which] still seems unduly cumbersome. Nonetheless, if the parties are confident that their agreement will allow them to present issues to the Court for appropriate consideration and disposition without delays engendered by claims of non production of information, the proposal can be approved." Doc. No. 113.

-4-

On January 26, 2007, Judge Conway entered CMO 2 (Doc. No. 129) portions of which were adopted verbatim from the parties' proposed CMO 2. That order set forth specific undertakings and obligations regarding provision of discovery without the need for separate requests under the rules of procedure. Matters included a schedule for production of organizational charts; identification of AZ's first round of eight chosen witnesses, all of whose documents would be produced earliest; AZ's identification of relevant databases (including informal interviews with AZ's IT staff); the required format for electronic documents (including required metadata fields); and deduplication of documents. Doc. No. 129.

On April 26, 2007, Plaintiffs filed their Motion to Compel Defendants to Provide Complete Certified Production of the First Eight Custodial Files and All Other Custodial Files Produced to Date; Suspending the Custodial Production Method upon Completion of the Production of the Outstanding Custodial Files Produced to Date; and Immediately Permitting Plaintiffs to Proceed by a Notice to Produce Method of Discovery. Doc. No. 198. The Court denied the Motion to Compel without prejudice to allow the parties time to confer "in good faith and *in extenso*" on the issues described in the Motion to Compel; the Court also set an evidentiary hearing on the matters raised in the Motion for June 13, 2007, alerting the parties:

> **ANY PARTY WHOSE CONDUCT NECESSITATES THE EVIDENTIARY HEARING SHOULD EXPECT THE IMPOSITION OF SANCTIONS FOR ANY UNREASONABLE OR INAPPROPRIATE CONDUCT OR POSITION TAKEN WITH RESPECT TO THESE MATTERS.**

Doc. No. 210 (capitals and bold in the original).

On June 8, 2007, the evidentiary hearing was canceled based on the parties' Joint Statement of Resolved Issues and Notice that a Hearing is Not Required (Doc. No. 221) filed on June 7, 2007. At that time, Plaintiffs accepted the representations made by AZ that corrections would be made to the problems Plaintiffs identified in the Motion to Compel, *e.g.*, load files, metadata, bates

-5-

numbering, page breaks, excel spreadsheets, and blank documents; the CANDA would also be produced; and the parties would continue to confer on the database production.  Doc. No. 221.

However, less than one month later, on July 3, 2007, Plaintiffs filed their Motion for Sanctions (Doc. No. 256), one business day before the July 5, 2007 Status Conference.  Following the July 5 status conference, the Court set an evidentiary hearing on the matter for July 26, 2007.  Doc. Nos. 263, 264.  The Motion for Sanctions came on for hearing in this Court on July 26, 2007.  Doc. No. 318.

## II.  LEGAL FRAMEWORK

### Standards for Electronic Discovery in Complex Litigation

As businesses increasingly rely on electronic record keeping, the number of potential discoverable documents has skyrocketed and so also has the potential for discovery abuse.  Of even more consequence in this complex litigation is the fact that it involves development of a drug that spent many years in development by an international corporation and has been distributed worldwide, with the number of Plaintiffs in this multi-district litigation exceeding 6,500.  The Manual for Complex Litigation (Fourth Edition) provides the following guidance for dealing with such vast amounts of data:

> Computerized data have become commonplace in litigation.  The sheer volume of such data, when compared with conventional paper documentation, can be staggering. . . . One gigabyte is the equivalent of 500,000 type-written pages.  Large corporate computer networks create backup data measured in terabytes, or 1,000,000 megabytes; each terabyte represents the equivalent of 500 billion [sic] typewritten pages of plain text.

> Digital or electronic information can be stored in any of the following: mainframe computers, network servers, personal computers, hand-held devices, automobiles, or household appliances; or it can be accessible via the Internet, from private networks, or from third parties.  Any discovery plan must address issues relating to such information, including the search for it and its location, retrieval, form of production, inspection, preservation, and use at trial.

For the most part, such data will reflect information generated and maintained in the ordinary course of business. As such, discovery of relevant and nonprivileged data is routine and within the commonly understood scope of Rule 26 and 34. Other data are generated and stored as a byproduct of the various information technologies commonly employed by parties in the ordinary course of business, but not routinely retrieved and used for business purposes. Such data include the following:

> *Metadata, or "information about information."* This includes the information embedded in a routine computer file reflecting the file creation date, when it was last accessed or edited, by whom, and sometimes previous versions or editorial changes. This information is not apparent on a screen or in a normal printout of the file, and it is often generated and maintained without the knowledge of the file user. . . .

* * *

The judge should encourage the parties to discuss the scope of proposed computer-based discovery early in the case, particularly any discovery of data beyond that available to the responding parties in the ordinary course of business. The requesting parties should identify the information they require as narrowly and precisely as possible, and the responding parties should be forthcoming and explicit in identifying what data are available from what sources, to allow formulation of a realistic computer-based discovery plan. Rule 26(b)(2)(iii) allows the court to limit or modify the extent of otherwise allowable discovery if the burdens outweigh the likely benefit – the rule should be used to discourage costly, speculative, duplicative, or unduly burdensome discovery of computer data and systems. . . .

There are several reasons to encourage parties to produce and exchange data in electronic form. . .

> – production of computer data on disks, CD-ROMS, or by file transfers significantly reduces the costs of copying, transport, storage, and management – protocols may be established by the parties to facilitate the handling of documents from initial production to use in depositions and pretrial procedures to presentation at trial;
> – computerized data are far more easily searched, located, and organized than paper data; and
> – computerized data may form the contents for a common document depository.

The goal is to maximize these potential advantages while *minimizing the potential problems of incompatibility among various computer systems, programs, and data, and minimizing problems with intrusiveness, data integrity, and information overload.* . . .

The relatively inexpensive production of computer-readable images may suffice for the vast majority of requested data. Dynamic data may need to be produced in native

> format, or in a modified format in which the integrity of the data can be maintained
> while the data can be manipulated for analysis. If raw data are produced, appropriate
> applications, file structures, manuals, and other tools necessary for the proper
> translation and use of the data must be provided. *Files (such as E-mail) for which
> metadata is essential to the understanding of the primary data should be identified
> and produced in an appropriate format.*

MANUAL FOR COMPLEX LITIGATION § 11.446, *Discovery of Computerized Data* (Fourth Ed. 2004)

(emphasis added). Against the backdrop of the heightened demands for usability and searchability

of the electronic discovery produced in a multi-district case, is the need for the parties to confer on

the format of the production, keeping in mind that the responding party is best situated to evaluate

the procedures, and the need to produce the information in a reasonably usable form to enable the

receiving party to have the same ability to access, search, and display the information. *Id.*

Particularly in complex litigation, there is a heightened need for the parties to confer about

the format of the electronic discovery being produced. Pursuant to Federal Rule of Civil Procedure

26, the parties are expected to confer, not only on the nature and basis of their claims and defenses,

but also to discuss "any issues relating to disclosure or discovery or electronically stored

information, including the form or forms in which it should be produced." FED. R. CIV. P. 26(f)(3).

Rule 26(f) was amended on December 1, 2006 to direct the parties to discuss discovery of

electronically stored information during their discovery-planning conference. FED. R. CIV. P. 26(f)

advisory committee notes. The Order adopting this amendment to Rule 26 provides that such

amendments "shall take effect on December 1, 2006, and shall govern in all proceedings thereafter

commenced and, insofar as just and practicable, all proceedings then pending." *W.E. Aubuchon Co.

v. Benefirst*, LLC, ___ F.R.D. ___, 2007 WL 1765610, *3 (D. Mass. Feb. 6, 2007). According to Rule

26:

> It may be important for the parties to discuss their systems, and accordingly
> important for counsel to become familiar with those systems before the conference.
> With that information, the parties can develop a discovery plan that takes into

account the capabilities of their computer systems.  In appropriate cases identification of, and early discovery from, individuals with special knowledge of a party's computer systems may be helpful.

The particular issues regarding electronically stored information that deserve attention during the discovery planning stage depend on the specifics of the given case.  *See Manual for Complex Litigation* (4th) § 40.25(2) (listing topics for discussion in a proposed order regarding meet-and-confer sessions).  For example, the parties may specify the topics for such discovery and the time period for which discovery will be sought.  They may identify the various sources of such information within a party's control that should be searched for electronically stored information. They may discuss whether the information is reasonably accessible to the party that has it, including the burden or cost of retrieving and reviewing the information. *See* Rule 26(b)(2)(B).  Rule 26(f)(3) explicitly directs the parties to discuss the form or forms in which electronically stored information might be produced.  *The parties may be able to reach agreement on the forms of production, making discovery more efficient.*  Rule 34(b) is amended to permit a requesting party to specify the form or forms in which it wants electronically stored information produced.  If the requesting party does not specify a form, Rule 34(b) directs the responding party to state the forms it intends to use in the production.  Early discussion of the forms of production may facilitate the application of Rule 34(b) by allowing the parties to determine what forms of production will meet both parties' needs.  Early identification of disputes over the forms of production may help avoid the expense and delay of searches or productions using inappropriate forms. . . . Computer programs may retain draft language, editorial comments, and other deleted matter (sometimes referred to as "embedded data" or "embedded edits") in an electronic file but not make them apparent to the reader. Information describing the history, tracking, or management of an electronic file (sometimes called "metadata") is usually not apparent to the reader viewing a hard copy or a screen image.  Whether this information should be produced may be among the topics discussed in the Rule 26(f) conference.

FED. R. CIV. P. 26(f)(3), advisory committee notes (emphasis added).

A leading resource on dealing with electronic discovery is the Second Edition of the Sedona Principles, on which AZ relied at the July 26, 2007 hearing on the Motion for Sanctions.  Principle 3 states, "Parties should confer early in discovery regarding the preservation and production of electronically stored information when these matters are at issue in the litigation and seek to agree on the scope of each party's rights and responsibilities."  *The Sedona Principles, Second Edition:*

*Best Practices, Recommendations & Principles for Addressing Electronic Document Discovery* (The

Sedona Conference[2] Working Group Series, 2007).

### Authority for Sanctions

Pursuant to Federal Rule of Civil Procedure 37, the Court may impose broad sanctions for

discovery-related abuses.  Federal Rule of Civil Procedure 37 governs a party's failure to make a

proper disclosure or cooperate in discovery.  For purposes of Rule 37, an incomplete response is to

be treated as a failure to respond.  FED. R. CIV. P. 37(a)(3).  Rule 37(b)(2) states that a court may

grant sanctions against a party that "fails to obey an order to provide or permit discovery." Sanctions

may be granted against a party under Rule 37(b)(2) if there is noncompliance with a court order,

notwithstanding a lack of wilfulness or bad faith, although such factors "are relevant . . . to the

sanction to be imposed for the failure." 8A Charles Alan Wright, Arthur R. Miller & Richard L.

Marcus, FEDERAL PRACTICE & PROCEDURE § 2283, at 608 (2d ed. 1994); *see Melendez v. Ill. Bell

Tel. Co.*, 79 F.3d 661, 671 (7th Cir.1996) ("Bad faith ... is not required for a district court to sanction

a party for discovery abuses. Sanctions are proper upon a finding of wilfulness, bad faith, or fault

on the part of the noncomplying litigant."); *Alexander v. Fed. Bureau of Investigation*, 186 F.R.D.

78, 88 (D. D.C. 1998) ("In making the determination of whether to impose sanctions, Rule 37(b)(2)

does not require a showing of willfulness or bad faith as a prerequisite to the imposition of sanctions

upon a party." (citations omitted)).  The district court has broad discretion to fashion appropriate

sanctions for the violation of discovery orders.  *United States v. Certain Real Property Located at

Route 1*, 126 F.3d 1314, 1317 (11th Cir. 1997); *see also Nat'l Hockey League v. Metro. Hockey Club,

Inc.*, 427 U.S. 639, 642 (1976)); *Friends of Animals, Inc. v. U.S. Surgical Corp.*, 131 F.3d 332, 334

---

[2]The Sedona Conference is a nonprofit legal policy research and educational organization which sponsors Working Groups on cutting-edge issues of law. The Working Group on Electronic Document Production is comprised of judges, attorneys, and technologists experienced in electronic discovery and document management matters.

(2d Cir. 1997) ("A district court has broad power to impose Rule 37(b) sanctions in response to abusive litigation practices.").

### III. CONTENTIONS AND ANALYSIS

*Procedural Posture*

AZ argues that the Motion for Sanctions should be denied on procedural grounds because there has been no motion to compel, no proper request for documents complained of, and no prejudice to Plaintiffs from the delay in the productions, relying on *United States v. Certain Real Property Located at Route 1*, 126 F.3d 1314, 1317 (11th Cir. 1997). However, in *Certain Real Property* the Eleventh Circuit reversed the harshest of sanctions, a default judgment, as a sanction for discovery abuse that had not been preceded by a court order *or*, notably, by a motion to compel. *Id.* at 1317-18 ("[O]n its face, [Rule 37] does not require that a court formally issue an order compelling discovery before sanctions are authorized. . . . [T]he absence of either a *motion to compel* filed by the government or an order of the court compelling discovery, the violation of which might implicate Rule 37, rendered inappropriate the imposition of the types of sanctions levied here" [*i.e.*, default judgment]).

In circumstances such as those present in this case, there has been a motion to compel discovery directly on point as to AZ's failings–giving adequate notice to AZ of Plaintiffs' complaints – prior to the Court imposing sanctions. Doc. Nos. 198, 221. Plaintiffs filed their Motion to Compel listing many technical issues with regard to proper load files, metadata, bates numbering, page breaks, excel spreadsheets, blank documents, and CANDA, which the Court denied without prejudice to give the parties an opportunity to meet and confer (with technical people involved) before convening an evidentiary hearing on the discovery issues that Plaintiffs raised. In the Notice setting the hearing the Court warned in words written in bold and all capitals that sanctions would

be imposed for obstreperous behavior.  Doc. No. 210.  In part, the Court allowed further conference between the parties to give counsel the opportunity to have their technical people participate in finding solutions.  Following conferences between the parties, Plaintiffs filed a notice canceling the hearing based on the representations of AZ that the technical issues would be resolved by various means; otherwise, the evidentiary hearing would have gone forward with the distinct possibility of sanctions.  When AZ failed to live up to its commitments made in the Joint Motion to resolve the technical issues, Plaintiffs filed their Motion for Sanctions raising some of the identical grounds, and the Court set these issues for hearing.  AZ has had more than sufficient notice of the possibility of sanctions for its conduct in not producing the discovery in a usable format.

The Court may also impose sanctions based on its inherent power to manage its docket and its cases. *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)); *Residential Funding Corp. v. Degeorge Fin. Corp.*, 306 F.3d 99, 106-07 (2d Cir. 2002) (court's has the "inherent power to manage its own affairs" via sanctions).  A finding of bad faith, however, is required to impose sanctions based on the Court's inherent powers. *In re Mroz*, 65 F.3d at 1575.  Notice that the conduct may warrant sanctions can come from the party seeking sanctions or from the court, and the accused must be given an opportunity to respond.  *Id.* at 1575-76.

Because the Court finds that Plaintiffs' previous Motion to Compel, and the Court's order setting the Evidentiary Hearing on the Motion gave AZ sufficient notice of the discovery conduct Plaintiffs were challenging and the possibility for sanctions if it was not resolved, the Court may sanction AZ for its conduct.  AZ apparently relies on the fact that the Court had not granted Plaintiffs' Motion to Compel and ordered AZ to produce certain documents.  That argument is disingenuous.  The sole reason the Motion to Compel was not revisited and the evidentiary hearing

on its merits not held was because AZ agreed (in the Joint Statement of Resolved Issues - Doc. No. 221) that it would make corrections to the electronic discovery to make it accessible and searchable. A party will not be permitted to gain an advantage by agreeing to cure the discovery violation, then fail to implement the cure, and hope to avoid a sanction by forestalling the sanctions ruling. AZ's stipulation to resolve the discovery issues, under threat of sanctions for obstreperous behavior, does not preclude the Court from sanctioning it under Rule 37 under the circumstances of this multi-district case. *See, e.g., In re Orthopedic Bone Screw Products Liability Litigation*, No. MDL 1014, 1997 WL 805219 (E.D. Pa. 1997) (Bechtle, J.) (imposing Rule 37 sanctions on defendants in multi-district case for failure to produce certain discovery after the court entered a general pretrial order requiring compliance with discovery requests following plaintiffs' previous motion to compel). In this case, the Court set an evidentiary hearing, threatened sanctions if the parties did not resolve the technical issues. AZ's failure to meet its own commitments and its general chosen course of conduct regarding document production and resolution of difficulties warrants imposition of Rule 37 sanctions.

***Particular Issues***

1. **IND/NDA**--Plaintiffs contend that AZ failed to produce a key element of the IND/NDA in November 2006 as ordered, not producing it until June 2007, and the materials produced were not in usable form. At the September 7, 2006 hearing, AZ stated that the electronic formatting of the IND/DNA had begun. Doc. No. 32 at 17-21. The Court allowed AZ until November 7, 2006 to produce it even though, as the Court pointed out, much of the material had been produced to the FDA in electronic format and should have been prepared for production earlier. Plaintiffs contend they had to spend "nearly two months of work" to make it suitable for substantive review and the production omitted the CANDA safety database – which was not produced until June 8, 2007.

Plaintiff's expert and fact witness, Jonathan Jaffe[3], testified that on November 15, 2007, Plaintiffs realized the IND/NDA production was not searchable for several reasons: no metadata was retrieved; there were multi-page TIFF images, some of which consisted of more than 20,000 pages; there was nothing showing bates numbering; 8% of the entire production was in one lengthy document which could only be opened with a very powerful work station; and there were no load files; thus the production was not in a usable or searchable format. At that point, on November 17, 2006, Mr. Jaffe sent to AZ's counsel an email suggesting fixes to the IND/NDA. *See* Pl. Ex. 16.01. As of nine months later, or the date of the July 26, 2007 hearing, AZ had not fixed problems according to Mr. Jaffe, whose team attempted to fix problems themselves by splitting apart the documents and the redoing bates numbering. AZ had offered to do it for $26,000 over 6 weeks; it took Mr. Jaffe's team more than a month with a few dedicated team members.

Mr. Jaffe further testified that in November to December 2006, Plaintiffs asked for electronic documents in native or near native format, with metadata, and extracted text and image files, that had page breaks in it. Mr. Jaffe, supported by several exhibits, described extensive efforts to resolve technical issues. See, *e.g.,* Pl. Ex. 16.03 and 16.04. Mr. Jaffe made multiple requests to speak to technical people, but he was told there was no IT person with whom he could confer regarding the IT issues.[4] In response to a query by the Court, Mr. Jaffe testified that he did not believe that he had had discussions about IT problems with AZ's vendors because he believed that a vendor could have straightened a lot of the issues out and would have used the same template. There was no equivalent IT expert counterpart (like Mr. Jaffe) at AZ's law firm with whom he could confer.

---

[3]Mr. Jaffe has experience with Weitz & Luxenburg working with electronic document productions. He holds a degree in economics and mathematics from Columbia University. He began IT work in 1995 in last year of high school and has worked at Weitz & Luxenburg since that time. AZ did not challenge his designation as an expert.

[4]AZ's refusal to allow contact between individuals with appropriate technical backgrounds as part of the effort to resolve technical issues is an inexplicable departure from the requirements of Rule 26, the Sedona Principles and this Court's expressed expectations.

AZ contends that it produced in November 2006 more than 450,000 pages of the IND/NDA, including any amendments and communications with the FDA, and until the April 12, 2007 status conference, Plaintiffs did not mention the omission of the CANDA, an electronic version of the NDA submitted to the FDA in addition to the paper NDA.  AZ contends that the Seroquel CANDA contains the same information as the Seroquel NDA (produced in November 2006), with the exception of Item 12 (Case Report Forms), which the FDA did not require to be submitted in hard copy and was only submitted as part of CANDA.  AZ explains that it did not produce Item 12 separately because it believed Item 12 to be duplicative of the NDA production already made. Because Item 12 was preserved on DLT tapes in a format now obsolete, AZ had to find a vendor capable of converting the tapes; after they were converted, AZ produced Item 12.  AZ's fact witness, Mr. Dupre, testified that AZ produced CANDA Item 12 on June 8 or 11, 2007.

The Court finds that AZ's failure to produce Item 12 was not more than excusable neglect or inadvertent failure not to produce what it believed had already been produced to Plaintiffs. However, the problems in formatting the IND/NDA, which Plaintiffs apparently have since resolved, especially the page break problems and the lack of metadata, no load files, and lack of search data, while cured by Plaintiffs' efforts, bear on the discussion of AZ's failures to make the custodial production usable or in reasonably accessible format (as addressed below).

2.    **Organizational Charts**--Plaintiffs contend that AZ was ordered to produce organizational charts under CMO2 by January 2006 and although approximately twenty pages of charts were produced, Plaintiffs received the majority of the rest of the organizational charts at the Rule 30(b)(6) deposition of Ann Booth-Barbarian on May 14, 2007.  AZ also produced additional charts on June 25, 2007 with custodial productions.  Doc. No. 289 at 5.  Plaintiffs have since propounded formal requests for more organizational charts, as to which AZ has indicated it is still

-15-

investigating.  Plaintiffs contend that AZ's failure to timely produce the organizational charts has delayed their ability to identify key witnesses for custodial production and deposition.

AZ contends it has complied with its discovery obligations of CMO 2 because Plaintiffs could request additional organizational charts beyond the initial production by AZ, plaintiffs have done so, and AZ has responded.  AZ argues that it should not be penalized for production of additional organizational charts at corporate representatives' Rule 30(b)(6) depositions, where Plaintiffs' deposition notices were accompanied by document requests, and the charts were responsive to those requests.

The Court finds no sanctions are warranted on this issue.  CMO 2 required that, by January 15, 2007, AstraZeneca was to produce "available organizational charts reflecting its general corporate structure, the structure of the Seroquel team, and the structure of the drug safety team for the past ten years." Doc. No. 129.  Plaintiffs could also serve written requests for additional organizational charts.  *Id.*  There was virtually no specific testimony as to the content of the charts produced and not produced.

**3. Database Production**--Plaintiffs argue AZ failed to identify all relevant databases by January 5, 2007, which it was obligated to do pursuant to CMO 2; instead AZ identified only 15 databases.  Doc. No. 256 Ex. J. However, to date, Plaintiffs have identified fifty-nine relevant databases through additional interviews, depositions, and meetings.  Plaintiffs contend that AZ has produced no information whatsoever from any of these databases, and they are resisting producing databases without Requests for Production.  Plaintiffs requested basic information about each database in order to assist with prioritization, formatting and production – information which, by its own admission, AZ refused to provide until July 2, 2007.

AZ responds that it should not be sanctioned because Plaintiffs have "not even served AZ with any discovery requests for wholesale production of the databases," AZ has not violated an order to produce, and it only identified a small number of databases initially because they only had to identify those that correlated to the 14 discrete categories identified by Plaintiffs. Doc. No. 278 at 10. In addition, AZ has produced IT witnesses for informal interviews and four days of 30(b)(6) depositions about AZ databases.

CMO 2 required that, by January 5, 2007, AstraZeneca provide Plaintiffs with a list of databases of the following type: 1) adverse event database; 2) sales call tracking database; 3) IMS database; 4) clinical communications database; 5) regulatory database; 6) regulatory contact databases; 7) clinical trial database; 8) medical literature database; 9) research report database; 10) documentum or similar databases (document management systems used by many pharmacy companies); 11) visitor speakers bureau and/or thought leader databases; 12) clinical payments database; 13) field force rosters; and 14) instant message, voicemail, discussion forum and prior website page databases, transcripts and recovery. Doc. No. 129.

By January 25, 2007, AstraZeneca was required to allow Plaintiffs to conduct informal interviews, in person or by telephone, of a knowledgeable AstraZeneca-employed IT person or persons who can adequately address plaintiffs' questions about said databases and how information can potentially be produced or extracted from them. Doc. No. 129. "If, after any such interview, Plaintiffs determine that the individual cannot adequately answer their questions or does not have the requisite knowledge about the database in question, plaintiffs shall identify the issues for which they seek additional information, and AstraZeneca shall promptly identify an IT employee with knowledge of such issues and present that person for interview." Doc. No. 129. AZ's identification

of the databases would not be construed as an agreement to produce them[5]; the parties were to confer

regarding the discoverability and feasibility of any request for production of a database, including

the form and scope of any such production. Doc. No. 129.

Testimony from the only two witnesses[6] presented who had any involvement in the discovery

process (as well as the exhibits) establishes that, with respect to identification and production of

relevant portions of databases, "what we have here is failure to communicate." Worse, the posturing

and petulance displayed by both sides on this issue shows a disturbing departure from the expected

professionalism necessary to get this case ready for appropriate disposition. Identifying relevant

records and working out technical methods for their production is a cooperative undertaking, not part

of the adversarial give and take. This is not to say that the parties cannot have reasonable disputes

regarding the scope of discovery. But such disputes should not entail endless wrangling about

simply identifying what records exist and determining their format. This case includes a myriad of

significant legal issues and complexities engendered by the number of plaintiffs. Dealing as

effective advocates representing adverse interests on those matters is challenge enough. It is not

appropriate to seek an advantage in the litigation by failing to cooperate in the identification of basic

evidence.      The parties' mode of proceeding here has prevented the presentation of any genuine

issues as to the proper scope of production of material from data bases. Both parties must bear some

of the responsibility for the breakdown, but it is primarily AZ, as the creator and owner of the

---

[5]AZ argues that it is not obligated to give Plaintiffs access to its databases, following Eleventh Circuit precedent in *In re Ford Motor Company*, 345 F.3d 1315 (11th Cir. 2003). AZ also argued that, according to the deposition testimony of Jon Dowling, a senior manager in the information services section, the databases are not Seroquel specific. Doc. No. 297-60, Def. Ex. 43 at 78-81. Mr. Dowling testified (on May 9, 2007) that it would take about six months to extract the data for a single drug such as Seroquel from one database. Doc. No. 297-63, Def. Ex. 44 at 295-97. None of this bears, however, on AZ's failure to confer in good faith on the database production.

[6]AZ's decision to offer only the testimony of a junior level attorney, only somewhat versed in technical issues and one who came late to the process is puzzling. AZ provided essentially no information as to how it organized its search for relevant material, what steps it took to assure reasonable completeness and quality control. Its efforts at finding solutions to technical problems are likewise unilluminated.

information, which has failed to make a sincere effort to facilitate an understanding of what records are kept and what their availability might be.

The Court finds sanctions are warranted for AZ's violation of the Court's explicit order in CMO 2 that the Plaintiffs were to interview AZ's IT employees and if, they still had questions after the interview, would identify the issues for which they still needed information, and AstraZeneca was to identify an IT employee with the relevant knowledge. Doc. No. 129. In addition, the parties were to confer regarding the discoverability and feasibility of any request for production of a database. Based on the testimony of Mr. Jaffe, Plaintiffs' interviews of the AZ IT employees left questions about the databases unanswered because they were not clear or specific. Plaintiffs' attempt to get further clarification through the chart was within the bounds of conferring further under CMO 2.

Based on the testimony of Mr. Dupre at the hearing, by its own admission, AZ stopped participating in the process to confer on the databases despite its explicit agreement to produce them and to cooperate in providing personnel familiar for Plaintiffs to interview to determine which ones to seek production of. Mr. Dupre also testified that AZ never intended to produce databases, it would only produce some subset of information; yet he emailed Plaintiffs' counsel that AZ would work cooperatively with Plaintiffs on production of databases (Pl. Ex. 16.20). AZ's failure to cooperate in identification leading to appropriate production of its relevant databases is conduct sanctionable under Rule 37. The relief to be awarded will be dealt with separately.

**4. Custodial Production**--AZ's biggest failure has been what can properly be characterized as "purposeful sluggishness" in the production from its self-chosen "custodians"–those employees most knowledgeable about Seroquel and its development. Plaintiffs contend AZ waited until mid-May 2007 to begin production of the overwhelming majority of the documents from these

"custodians" and the documents produced have significant errors of omission and are not readable or searchable.  Plaintiffs contend that the custodial production has a great deal of missing data, *e.g.*, although AstraZeneca has a system to deliver voicemail, faxes, and video into Outlook inboxes, none has been produced; there are few emails from some custodians, and email boxes are missing from alternate email boxes.  Plaintiffs also contend that many relevant emails and documents were not identified and produced because AZ performed an unreasonable key word search[7].  Plaintiffs allege that other relevant documents were omitted because the best available de-duplication method was not used; AZ missed deadlines and produced the electronic documents late; a significant portion of the production had blank pages; new load files were not searchable, in part because the date formats in the metadata were inconsistently loaded and email attachments not consistently associated or identified; authors were not identified as custodians for files; transposed metadata recipients/authors; and no page breaks were inserted in 3.75 million pages.

AZ responds that Plaintiffs have not met standard for imposing sanctions, which is bad faith.  AZ argues that Plaintiffs' discovery issues have been a moving target, and that issues raised by Plaintiffs have been resolved or "in the process of being resolved" by July 20, 2007.  AZ has produced "massive" amounts of discovery – 10 million pages[8] – with few mistakes and by the June 30, 2007 deadline.   AZ argues that Plaintiffs were aware that it was using search terms to limit the "custodians'" discovery to identify potentially responsive electronic documents, citing the Sedona Principles.  AZ contends that it gave Plaintiffs a list of its 60 search terms in April 2007 and if Plaintiffs wanted AZ to use additional terms, Plaintiff could have simply asked for them.  During

---

[7]Examples include omitting Seroquel's generic name, acronyms for diabetes, hyperglycaemia spelled the British way; and endocrine.  The search method apparently failed to include common misspellings or the singular forms of words and failed to make allowance for spaces or dashes.

[8]In argument, AZ has repeatedly relied on the sheer volume of documents produced as an accomplishment somehow justifying its shortcomings.  In the context of this case, the Court is not impressed by the large number of relevant documents, especially since vast quantities were produced in a virtually unusable manner.

discussions just prior to the July 26 hearing, AZ offered to run additional search terms suggested by Plaintiffs, but they have been "stubbornly unresponsive." Doc. No. 278 at 8.

AZ contends that its production is not missing "a great deal of email" as alleged by Plaintiffs because it did not intentionally exclude emails (Doc. No. 278 at 9), but systematically collected electronic information on each custodian's computer, including emails. AZ admits that it did not search proxies for the custodians, in part because, it claims, the principal would have a carbon copy of any substantive email, sent by the proxy. This supposition was not verified by any witness.

The record shows a number of specific failings[9] in AZ's chosen efforts to meet its discovery commitments. The key word search was plainly inadequate. Attachments, including non verbal files, were not provided. Relevant emails were omitted. AZ's deduplication method remains mysterious. Production was tardy. AZ's efforts in preventing and solving technical problems were woefully deficient. These shortcomings were adequately and persuasively described by Plaintiffs' witnesses.[10]  AZ's limited witness and arguments, to the extent they take issue with most of Plaintiffs' contentions, lacked foundation and completeness and were frequently off point.

AZ purported to embrace the requirements of Rule 26 and the Sedona Principles. However, the reality was to the contrary. For example, while key word searching is a recognized method to winnow relevant documents from large repositories, use of this technique must be a cooperative and informed process. Rather than working with Plaintiffs from the outset to reach agreement on appropriate and comprehensive search terms and methods, AZ undertook the task in secret.

---

[9]The full scope and ultimate impact of these shortcomings was not made clear by the testimony and likely will be the subject of further proceedings.

[10]AZ took great issue with the academic credentials of Plaintiffs' expert, John Martin.  Any puffery in Mr. Martin's resume was tangential to the technical problems he identified in AZ's production. The time and effort expended in investigating and questioning Mr. Martin about his degree and speeches would have been better spent understanding and solving real issues. The Court is satisfied that Mr. Martin possesses sufficient expertise in electronic document production to provide useful testimony.

Common sense dictates that sampling and other quality assurance techniques must be employed to meet requirements of completeness. If AZ took such steps, it has not identified or validated them.

Many of the other technical problems identified by Mr. Martin and Mr. Jaffe likely could have been resolved far sooner and less expensively had AZ cooperated by fostering consultation between the technical staffs responsible for production. Instead, AZ shielded its third party technical contractor[11] from all contact with Plaintiffs. This approach is antithetical to the Sedona Principles and is not an indicium of good faith.

This is not to say that AZ completely ignored its responsibilities. Mr. Dupre and other representatives from his firm did participate in extended efforts to confer with Plaintiffs. However, the lateness and general ineffectuality of these efforts was demonstrated by Mr. Dupre's concessions as to the limitations of his role.[12] Mr. Dupre admitted on cross-examination that he had nothing to do with developing the key word search in this case and had never prepared any other key word search before; he did not know who was the architect of the key word search. Despite this lack of knowledge, he was confident that he knew how the emails were collected. Mr. Dupre also had no knowledge of how the 80 "custodians" were chosen. In response to a query from the Court, Mr. Dupre could not identify with certainty who was responsible from AZ or its counsel or vendor for assuring document production had been sufficient to comply with the Local Rules and the Sedona Principles. In terms of the documentation about how the key word search was developed, Mr. Dupre testified that AZ used stock interview for "custodians"; but he was not privy to any sort of written protocol. He testified that there was no document production quality control or master plan with which he was familiar. He testified that the vendor never discussed the key word list with Plaintiff,

---

[11]Notably, AZ conceded that its vendor's performance has been disappointing. The project manger was discharged earlier this year due to mistakes.

[12]Mr. Dupre testified that his firm was not hired until late February 2007 or maybe the very beginning of March, at which time, three-quarters of a million documents had already been produced

and that vendors never participated in a meet and confer, although IT experts from lawyers attended the meet and confer.

The Court will not recite each of the technical problems described by the witnesses and the halting efforts to solve them. Suffice it for present purposes to observe that neither the method chosen by AZ nor the results it achieved in timely producing what was understood to be the great bulk of relevant material in a readily accessible form was satisfactory. The Court does not have confidence that AZ's production of custodial files is complete, reliable or in proper technical format. This lack of confidence extends to the solution AZ submitted to Plaintiffs on July 20 (six days prior to the hearing).[13]

AZ and its counsel had a responsibility at the outset of the litigation to "take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched." As Judge Sheindlin explained regarding the party and counsel's responsibilities in the much-cited *Zubulake v. UBS Warburg LLC,* 229 F.R.D. 422, 432 (S.D. N.Y. 2004):

> A party's discovery obligations do not end with the implementation of a "litigation hold" - to the contrary, that's only the beginning. Counsel must oversee compliance with the litigation hold, monitoring the party's efforts to retain and produce the relevant documents. Proper communication between a party and her lawyer will ensure (1) that all relevant information (or at least all sources of relevant information) is discovered, (2) that relevant information is retained on a continuing basis; and (3) that relevant non-privileged material is produced to the opposing party. . . .
>
> Once a "litigation hold" is in place, a party and her counsel must make certain that all sources of potentially relevant information are identified and placed "on hold," to the extent required in *Zubulake IV,* [220 F.R.D. at 218]. To do this, counsel must become fully familiar with her client's document retention policies, as well as the client's data retention architecture. This will invariably involve speaking with information technology personnel, who can explain system-wide backup procedures and the actual (as opposed to theoretical) implementation of the firm's recycling

---

[13]Plaintiffs were unable load this production; there was still no evidence of voice mails or faxes (other than two pages); there were no videos; no change tracking of documents; and they could not find documents by bates numbers. Although Mr. Jaffe had had hundreds of conferences with AZ representatives since November 15, 2006, AZ never discussed the key word search, and he only learned of the list AZ used in May 2007

policy. It will also involve communicating with the "key players" in the litigation, in order to understand how they stored information. In this case, for example, some [of defendant's] employees created separate computer files pertaining to [the plaintiff], while others printed out relevant e-mails and retained them in hard copy only. Unless counsel interviews each employee, it is impossible to determine whether all potential sources of information have been inspected. A brief conversation with counsel, for example, might have revealed that Tong maintained "archive" copies of e-mails concerning [the plaintiff], and that "archive" meant a separate on-line computer file, not a backup tape. Had that conversation taken place, [the plaintiff] might have had relevant e-mails from that file two years ago.

To the extent that it may not be feasible for counsel to speak with every key player, given the size of a company or the scope of the lawsuit, counsel must be more creative. It may be possible to run a system-wide *keyword search*; counsel could then preserve a copy of each "hit." Although this sounds burdensome, it need not be. Counsel does not have to review these documents, only see that they are retained. For example, counsel could create a broad list of search terms, run a search for a limited time frame, and then segregate responsive documents. When the opposing party propounds its document requests, the parties could negotiate a list of search terms to be used in identifying responsive documents, and counsel would only be obliged to review documents that came up as "hits" on the second, more restrictive search. The initial broad cut merely guarantees that relevant documents are not lost.

In short, it is not sufficient to notify all employees of a litigation hold and expect that the party will then retain and produce all relevant information. . . . Counsel must take affirmative steps to monitor compliance so that all sources of discoverable information are identified and searched. This is not to say that counsel will necessarily succeed in locating all such sources, or that the later discovery of new sources is evidence of a lack of effort. But counsel and client must take some reasonable steps to see that sources of relevant information are located.

*Zubulake v. UBS Warburg LLC,* 229 F.R.D. 422, 432 (S.D.N.Y. 2004).

Sanctions may be imposed against AZ under Rule 37(b)(2) based on its noncompliance with a court order, notwithstanding a lack of willfulness or bad faith, although such factors "are relevant . . . to the sanction to be imposed for the failure." 8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, FEDERAL PRACTICE & PROCEDURE § 2283, at 608 (2d ed.1994). Particularly in complex litigation, the rules and principles governing the imposition of sanctions in such litigation require special care because misconduct may have more severe consequences. MANUAL FOR COMPLEX LITIGATION § 10.151 (Fourth Edition 2004). "Sanctions proceedings can be disruptive,

-24-

costly, and may create personal antagonism inimical to an atmosphere of cooperation.  Moreover, a resort to sanctions may reflect a breakdown of case management. . . . On the other hand, *the stakes involved in and the pressures generated by complex litigation may lead some parties to violate the rules.*  Although sanctions should not generally be a case management tool, a willingness to resort to sanctions, *sua sponte* if necessary, may ensure compliance with the management program. . . . Although sanctions should be a last resort, they are sometimes unavoidable and may be imposed for general or specific deterrence, to punish, or to remedy the consequences of misconduct."  *Id.*

Based on the testimony at the hearing, the Court is troubled by nature of the parties' efforts to "meet and confer" on specific issues.  One of the apparently successful efforts to collaborate on discovery, which led to cancellation of the June hearing, was, to an unacceptable degree, illusory.  AZ suspects that Plaintiffs have, to some degree, attempted to manufacture issues and to raise them just prior to scheduled status conferences so as to tarnish AZ in the eyes of the Court.  This mistrust undermines the efficacy of the meet and confer requirement.  AZ itself, despite what must be considerable expenditures in attempting to comply with discovery, has failed to bring appropriate personnel to the table at appropriate times to resolve non adversarial issues.

In this case, AZ never discussed with Plaintiffs which search terms to use as part of the search.  There was no dialogue to discuss the search terms, as required by Rules 26 and 34.  AZ eventually disclosed in April 2007 that a key word search had been conducted, not in seeking collaboration on the words to use, but rather as part of the dialogue on certifying the "custodial" production. More astounding is AZ's continued failure to produce single-page TIFF documents that would be "usable" or "reasonably accessible" in accordance with the federal discovery rules and the Sedona Principles.  AZ's interpretation of CMO 2, that it did not explicitly require page breaks, is absurd – Mr. Dupre could not explain any other way the documents would be guaranteed to appear

as "single pages." Mr. Dupre attributed many of the severe problems with the load files and the metadata to vendor errors. According to the Sedona Principles[14], cited by AZ several times at the hearing, a party is responsible for the errors of its vendors. Moreover, such problems in fundamental aspects of the production, worked on by different vendors, were inevitable in a 10 million page without the requisite quality control oversight.

### CONCLUSION

The Court finds that AZ has been "purposely sluggish" in making effective production to Plaintiffs.[15] Given the Court's mandate of a tight schedule in this case, AZ's various decisions and problems that resulted in this sluggishness appears to have benefitted AZ by limiting the time available to Plaintiffs to review information and to follow up.

This inference is informed by observations from other cases. The Ninth Circuit held in considering the delay in another multi-district case:

> Prejudice from unreasonable delay is presumed. *In re Eisen*, 31 F.3d at 1452-53. Failure to produce documents as ordered is sufficient prejudice, whether or not there is belated compliance. *Id.* at 1453 (taking action after the defendant's motion to dismiss was pending does not excuse taking no action before); *Payne v. Exxon Corp.*, 121 F.3d 503, 508 (9th Cir.1997) (noting that last-minute tender of documents does not cure prejudice or restore other litigants on a crowded docket to the opportunity to use the courts); *see also Adriana*, 913 F.2d at 1413 n. 6 (recognizing that refusal to produce evidence presumptively shows that an asserted claim or defense is meritless). The risk of prejudice is exacerbated where each delay potentially affects the discovery and remand schedule in hundreds of other cases.

*In re Phenylpropanolamine (PPA) Products Liability Litigation,* 460 F.3d 1217, 1236-37 (9th Cir. 2006).

---

[14]"Ultimate responsibility for ensuring the preservation, collection, processing, and production of electronically stroed information rests with the party and its counsel, not with the nonparty consultant or vendor." Sedona Principle 6.d.

[15]A prime example is AZ's initial failure to implement Mr. Jaffe's February suggestion to insert page breaks–an idea Mr. Dupre called ingenious–until May 30, and not reproducing the documents with page breaks until July 20.

In a similar case in which the Second Circuit found that defendant's "purposeful sluggishness" would warrant the imposition of sanctions, the defendant had hindered discovery of relevant evidence, even though defendant did not cause its destruction or unavailability, where the reason defendant did not produce the e-mails was that it hired a vendor that was unable to retrieve them in a timely fashion. *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 110 & n. 5 (2nd Cir. 2002) (defendant's decision to use an outside vendor to retrieve the emails rather than turn over the back-up tapes "led to much of the delay").  As further potential evidence of the defendant's "purposeful sluggishness," the court cited the lack of an explanation as to why emails from the back-up tapes were produced for nine months of 1998, but not the last four months during the negotiations at issue in the case, and defendant's failure to explain its inability to retrieve the emails and why it failed to obtain outside assistance sooner. *Id.* at 111. Another factor the appellate court held was relevant for the trial court to consider was the reasonableness of defendant's continued reliance on the ineffective vendor "throughout months of apparently fruitless attempts to retrieve the critical e-mails, in light of [opposing party's] vendor to identify and begin to retrieve those e-mails in just four days." *Id.*

> [A]s a discovery deadline or trial date draws near, discovery conduct that might have been considered "merely" discourteous at an earlier point in the litigation may well breach a party's duties to its opponent and to the court. . . . [When defendant] had repeatedly missed deadlines to produce the e-mails - [defendant] was under an obligation to be as co-operative as possible.  Viewed in that light, [defendant's] "purposefully sluggish" acts - particularly its as-yet-unexplained refusal to answer basic technical questions about the tape until prompted to do so by the District Court - may well have constituted sanctionable misconduct in their own right.

*Id.* at 112.

Similarly, in this case, AZ has not been as cooperative as possible in resolving the custodial issues.  It is undisputed that the production "completed" on June 30, 2007 had load file, metadata, page break and key word search problems, making the 10 million pages of documents unaccessible,

unsearchable, and unusable as contemplated under the Rules. It was not clear at the July 26 hearing, or even as of the date of this Order, that these profound technical issues have been resolved by the re-production efforts delivered to Plaintiffs on July 20, 2007. The Court finds that sanctions are warranted for AZ's failure to produce "usable" or "reasonably accessible" documents.

However, the Court is unable to determine the appropriate nature and amount of sanctions at this time. Plaintiffs will be allowed a further opportunity to present evidence and argument as to any prejudice or damages from AZ's failure timely to produce "usable" or "reasonably accessible" documents in this litigation, including motion costs. The Court will confer with the parties at the next status conference regarding further proceedings in light of the findings herein.

**DONE and ORDERED** in Orlando, Florida this 21st day of August, 2007

*David A. Baker*
_____
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

IN RE: Seroquel Products Liability
Litigation

Case No.  6:06-md-1769-Orl-22DAB

_____/

## NOTICE OF HEARING

**TAKE NOTICE** that an evidentiary hearing and oral argument on the electronically stored information ("ESI") issues raised in this Court's August 21, 2007 Order finding sanctionable conduct by Defendants (Doc. No. 393); the issues raised in the Reports of SM-ESI Ball; and discovery issues raised by Plaintiffs at the ensuing status conferences (since August 21, 2007) will be held before the undersigned on **MONDAY, JANUARY 28, 2008** at **9:30 A.M.** in Courtroom #6, George C. Young U.S. Courthouse and Federal Building, 80 North Hughey Avenue, Orlando, Florida.

Matters as to refinement of issues, procedures and possible discovery needed for preparing for the Hearing will be considered at the next Status Conference. The parties should be prepared to address how relevant information from the Special Master-ESI bears on the issues and how it should be presented.

**DONE** and **ORDERED** in Orlando, Florida on November 20, 2007.

*David A. Baker*
_____
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Court Reporter Requested

**PLEASE NOTE:  Photo identification** is required to enter the United States Courthouse. Also, **cellular telephones** and **laptop computers** are prohibited in the Courthouse unless otherwise allowed pursuant to order of the Court.

# EXHIBIT C

AO88  (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

IN RE: SEROQUEL PRODUCTS LIABILITY LITIGATION

V.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]  FL MDL NO. 1769

USDC Middle District of Florida

TO:  Person Most Knowledgeable
Zantaz, Inc.
5758 West Las Positas Blvd
Pleasanton, CA 94588

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☑ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION  LEVIN SIMES KAISER & GORNICK, LLP, 44 Montgomery Street, Suite 3600, San Francisco, CA 94104 | DATE AND TIME  12/27/2007 1:00 pm |
|---|---|

☐ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE | DATE AND TIME |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).  See Attached

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE  11/26/07 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Dennis J. Canty, Esq., Levin Simes Kaiser & Gornick, 44 Montgomery St, #3600, San Francisco, CA 94104

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

Pursuant to FRCP 30(b)(6), Zantaz, Inc. shall designate individual(s) to testify regarding the following topics:

## SUBPOENA DEFINITIONS

1.    "SEROQUEL" means the drug quetiapine fumarate, also known by the brand name Seroquel, and any predecessor or non-final derivation of the drug that later became Seroquel. Also included in the definition of Seroquel are any chemical equivalents marketed in foreign countries.

2.    "ASTRAZENECA" refers to AstraZeneca Pharmaceuticals LP, AstraZeneca LP, AstraZeneca AB, AstraZeneca UK Limited and all partners, directors, officers, employees, servants, agents, attorneys, joint ventures, or other representatives, including all corporations and entities affiliated with AstraZeneca. The terms shall also include all predecessor business entities, as well as any predecessor's partners, directors, officers, employees, servants, agents, joint ventures or others acting on their behalf. The terms shall also include all foreign subsidiaries or foreign parent companies, as well as any foreign subsidiaries' or parent companies' partners, directors, officers, employees, servants, agents, joint ventures or others acting on their behalf.

3.    "DOCUMENT" or "DOCUMENTS" as used herein shall be construed in the broadest possible sense, shall include Electronically Stored Information within the meaning of the FRCP, and shall include, without limitation, reports, memorandum, records, studies, data compilations, graphs, charts, invoices, receipts, recordings, notes, photographs, studies, analyses, projections, forecasts, plans, estimates, working papers, summaries, opinions or reports of consultants, and other types of written, graphic, printed or electronic submissions of information, and all drafts thereof.

4.     "RELATED TO" and "RELATING TO" means constituting, pertaining to, in connection with, reflecting, respecting, regarding, concerning, referring to, based upon, stating, showing, evidencing, establishing, supporting, negating, contradicting, describing, recording, noting, embodying, memorializing, containing, mentioning, studying, analyzing, discussing, specifying, identifying or in any manner logically, factually, indirectly or directly, or in any other way connecting to the matter addressed in the request, in part of whole.

5.     "COMMUNICATIONS" means any manner or method in which information is passed from one human being or entity to another including (but not limited to) any written, oral or electronic contact, and/or discussion or exchange of information.

6.     "DEPONENT" means ZANTAZ and all partners, directors, officers, employees, servants, agents, attorneys, joint ventures, or other representatives, including all corporations and entities affiliated with ZANTAZ.  The terms shall also include all predecessor business entities, as well as any predecessor's partners, directors, officers, employees, servants, agents, joint ventures or others acting on their behalf.  The terms shall also include all foreign subsidiaries or foreign parent companies, as well as any foreign subsidiaries' or parent companies' partners, directors, officers, employees, servants, agents, joint ventures or others acting on their behalf.

7.     "PERSON" shall include an individual or entity, other than attorneys.

8.     "Or" and "and" will be used interchangeably.

9.     "PRODUCTION" means the collection, processing and production of DOCUMENTS for the purposes of litigation related to SEROQUEL

## TOPICS

1.  Proposals and agreements for professional services related to PRODUCTION.

2.  DEPONENT's policies or procedures related to digital chain of custody or the archival of client data, and compliance with those policies or procedures in PRODUCTION.

3.  DEPONENT's policies or procedures related to conversion and loading of data received from clients, and compliance with those policies or procedures in PRODUCTION.

4.  DEPONENT's trouble-ticket systems, customer relationship management (CRM) systems, or similar systems used in PRODUCTION.

5.  Any actual or potential issues or problems encountered in PRODUCTION.

6.  Communications between AstraZeneca and DEPONENT relating to problems or issues encountered in PRODUCTION.

7.  Communications between DEPONENT and any other person or entity relating to problems or issues encountered in PRODUCTION.

8.  Internal communications between AstraZeneca and DEPONENT relating to problems or issues encountered in PRODUCTION.

9.  The consequences of problems in PRODUCTION, including (without limitation) any degradation of the integrity, accuracy, and searchability of documents produced.

10.  Any upgrade or new deployment of DEPONENT's systems that impacted the pace of production or affected the quality of the production.

11.  Any work on PRODUCTION that had to be redone, and any delay occasioned by the same.

12.  Any sub-vendors employed by DEPONENT in connection with PRODUCTION.

13.  The project management structure and accountability within DEPONENT.

14.    The engagement of FTI Consulting.

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

|  | DATE | PLACE |
|---|---|---|
| SERVED |  |  |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
|  |  |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
|  |  |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                         DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.
(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.
(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.
(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.
(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
(i) fails to allow reasonable time for compliance;
(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;
(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) If a subpoena
(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.
(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.
(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.
(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.
(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.
(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).



**LEVIN SIMES KAISER & GORNICK LLP**
44 MONTGOMERY STREET, 36TH FLOOR
SAN FRANCISCO, CA 94104
(415) 646-7160

CITIBANK, N.A.   BR. #354
SAN FRANCISCO, CA 94105
90-7118-3211

11/26/2007

PAY TO THE
ORDER OF    Zantaz, Inc.

$  **65.00

Sixty-Five and 00/100**************************************************  DOLLARS

Zantaz, Inc.
5758 West Las Positas Blvd.
Pleasanton, CA 94588

MEMO

Security Features Included.    Details on back.

⑈011077⑈   ⑆321171184⑆   20030858⑈

# EXHIBIT D

AO88  (Rev. 12/06) Subpoena in a Civil Case

**Issued by the**

# UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| IN RE: SEROQUEL PRODUCTS LIABILITY LITIGATION | **SUBPOENA IN A CIVIL CASE** |
|---|---|
| V. | |

Case Number:[1]   FL MDL NO. 1769

USDC Middle District of Florida

TO:   Custodian of Records
      Zantaz, Inc.
      5758 West Las Positas Blvd
      Pleasanton, CA 94588

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☑ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION   LEVIN SIMES KAISER & GORNICK, LLP, 44 Montgomery Street, Suite 3600, San Francisco, CA 94104 | DATE AND TIME   12/27/2007 10:00 am |
|---|---|

☑ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

   See "EXHIBIT A" attached hereto

| PLACE | DATE AND TIME |
|---|---|

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

   Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE   11/26/07 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

   Dennis J. Canty, Esq., Levin Simes Kaiser & Gornick, 44 Montgomery St, #3600, San Francisco, CA 94104

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

## EXHIBIT "A" TO SUBPOENA

## SUBPOENA INSTRUCTIONS

1.      In responding to this Deposition Subpoena, you are required to produce all DOCUMENTS known or reasonably available to you, regardless of whether such DOCUMENTS are in your possession, custody, or control or in the possession, custody, or control of your agents, consignees, representatives or investigators, or your attorneys or their agents, employees, representatives, or investigators.

2.      All DOCUMENTS produced in response to this request shall be either:

    (a)      Produced in the order and in the manner that they are kept in the usual course of business, or

    (b)      Organized and labeled to correspond with the categories in the demand.

3.      All DOCUMENTS requested shall include all DOCUMENTS and information that relate in whole or in part to the relevant time period, or to events or circumstances during such relevant time period, even though dated, prepared, generated or received prior to the relevant time period. Unless otherwise indicated, the relevant time period for the information sought is 1995 to present.

4.      All DOCUMENTS that exist in electronic form are to be produced in electronic form and in their native form or other searchable form, not in an electronic form that is merely a picture of a document such as a TIFF file, a TIF file, or a PDF file. All DOCUMENTS that do not exist in electronic form are to be produced in single page TIFF files with corresponding load files.

## SUBPOENA DEFINITIONS

1.      "SEROQUEL" means the drug quetiapine fumarate, also known by the brand name Seroquel, and any predecessor or non-final derivation of the drug that later became Seroquel. Also included in the definition of Seroquel are any chemical equivalents marketed in foreign countries.

2.      "ASTRAZENECA" refers to AstraZeneca Pharmaceuticals LP, AstraZeneca LP, AstraZeneca AB, AstraZeneca UK Limited and all partners, directors, officers, employees, servants, agents, attorneys, joint ventures, or other representatives, including all corporations and entities affiliated with AstraZeneca. The terms shall also include all predecessor business entities, as well as any predecessor's partners, directors, officers, employees, servants, agents, joint ventures or others acting on their behalf. The terms shall also include all foreign subsidiaries or foreign parent companies, as well as any foreign subsidiaries' or parent companies' partners, directors, officers, employees, servants, agents, joint ventures or others acting on their behalf.

3.      "DOCUMENT" or "DOCUMENTS" as used herein shall be construed in the broadest possible sense, shall include Electronically Stored Information within the meaning of the FRCP, and shall include, without limitation, reports, memorandum, records, studies, data compilations, graphs, charts, invoices, receipts, recordings, notes, photographs, studies, analyses, projections, forecasts, plans, estimates, working papers, summaries, opinions or reports of consultants, and other types of written, graphic, printed or electronic submissions of information, and all drafts thereof.

4.      "RELATED TO" and "RELATING TO" means constituting, pertaining to, in connection with, reflecting, respecting, regarding, concerning, referring to, based upon, stating,

showing, evidencing, establishing, supporting, negating, contradicting, describing, recording, noting, embodying, memorializing, containing, mentioning, studying, analyzing, discussing, specifying, identifying or in any manner logically, factually, indirectly or directly, or in any other way connecting to the matter addressed in the request, in part of whole.

5.     "COMMUNICATIONS" means any manner or method in which information is passed from one human being or entity to another including (but not limited to) any written, oral or electronic contact, and/or discussion or exchange of information.

6.     "DEPONENT" means ZANTAZ and all partners, directors, officers, employees, servants, agents, attorneys, joint ventures, or other representatives, including all corporations and entities affiliated with ZANTAZ.  The terms shall also include all predecessor business entities, as well as any predecessor's partners, directors, officers, employees, servants, agents, joint ventures or others acting on their behalf.  The terms shall also include all foreign subsidiaries or foreign parent companies, as well as any foreign subsidiaries' or parent companies' partners, directors, officers, employees, servants, agents, joint ventures or others acting on their behalf.

7.     "PERSON" shall include an individual or entity, other than attorneys.

8.     "Or" and "and" will be used interchangeably.

9.     "PRODUCTION" means the collection, processing and PRODUCTION of DOCUMENTS for the purposes of litigation related to SEROQUEL.

## DOCUMENTS REQUESTED

1.      All DOCUMENTS which constitute or relate to proposals or drafts of proposals for professional services related to PRODUCTION.

2.      All DOCUMENTS which constitute or relate to agreements or drafts of agreements between AstraZeneca and DEPONENT related to PRODUCTION.

3.      All DOCUMENTS which relate to DEPONENT's policies or procedures related to digital chain of custody or the archival of client data, and all DOCUMENTS related to compliance with those policies or procedures in PRODUCTION.

4.      All DOCUMENTS which relate to DEPONENT's policies or procedures related to conversion and loading o f data received from clients, and all DOCUMENTS relat ed to compliance with those policies or procedures in PRODUCTION.

5.      All data from any trouble-ticket systems, customer relationship management (CRM) systems, or similar system related to problems or issues with PRODUCTION.

6.      All shift-change logs or other DOCUMENTS related to shift changes or hand-offs identifying or relating to problems or issues with PRODUCTION.

7.      All DOCUMENTS related to scripts or custom programs written for PRODUCTION.

8.      All DOCUMENTS which evidence or relate to communications to, from or within DEPONENT regarding any problems or issues with PRODUCTION raised by Plaintiffs herein.   These shall include, without limitation, DOCUMENTS reflecting: the first reported date of each issue, instructions for each issue, QC measures taken in response to each issue to prevent the future reoccurrence of the issue, documentation on the source of problems with each issue,

QA methodology taken on subsequent PRODUCTIONs with respect to the issue, and communications or discussions with any person related to the cause of each issue.

9.      All DOCUMENTS which evidence or relate to communications to, from, and within DEPONENT regarding any other actual or potential issues or problems related to PRODUCTION.  These shall include, without limitation, DOCUMENTS reflecting:  the first reported date of each issue, instructions for each issue, QC measures taken in response to each issue to prevent the future reoccurrence of the issue, documentation on the source of problems with each issue, QA methodology taken on subsequent PRODUCTIONs with respect to the issue, and communications or discussions with any person related to  the cause of each issue, dates of notice to the Plaintiffs or subsequent corrections and reissue of the PRODUCTION without specific notice to the Plaintiffs.

10.     All DOCUMENTS which constitute or relate to communications between AstraZeneca and DEPONENT relating to problems or issues encountered in PRODUCTION.

11.     All DOCUMENTS which constitute or relate to communications between DEPONENT and any other person or entity relating to problems or issues encountered in PRODUCTION.

12.     All DOCUMENTS which evidence, reflect or relate to the consequences of problems in PRODUCTION, including (without limitation) any degradation of the integrity, accuracy, and searchability of DOCUMENTS produced.

13.     All DOCUMENTS which evidence, reflect or relate to any upgrade or new deployment of DEPONENT's systems that impacted the pace of PRODUCTION or affected the quality of the PRODUCTION.

14.    All DOCUMENTS which evidence, reflect or relate to any work on PRODUCTION that had to be redone, and any delay occasioned by the same.

15.    All DOCUMENTS which evidence, reflect or relate to the consequences to consistency of the PRODUCTION of running in parallel teams.

16.    All DOCUMENTS which reflect compensation paid or payable to DEPONENT by AstraZeneca for professional services related to PRODUCTION.

17.    All DOCUMENTS relating to PRODUCTION which were generated, sent or received in connection with any merger or acquisition of DEPONENT (i.e. any due diligence DOCUMENTS or disclosures).

18.    All DOCUMENTS related to sub-vendors employed by DEPONENT to work on PRODUCTION.  These shall include, without limitation, DOCUMENTS reflecting the current status of each subvendor (i.e., in good standing, terminated, etc.) including whether any project managers for the sub-vendors have been terminated or whether payment has been withheld.

19.    All DOCUMENTS reflecting the name, residence address and telephone number of any former employees of DEPONENT who worked on the Seroquel-related document PRODUCTION.

20.    All DOCUMENTS which evidence, reflect or relate to project management structure and accountability within DEPONENT.

21.    All DOCUMENTS which evidence, reflect or relate to the first contact and engagement of FTI Consulting.

AO88  (Rev.  12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

| DATE | SIGNATURE OF SERVER |
|---|---|

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the production, inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).



LEVIN SIMES KAISER & GORNICK LLP
44 MONTGOMERY STREET 36TH FLOOR
SAN FRANCISCO, CA 94104
(415) 646-7160

11062

CITIBANK, N.A.    BR. #354
SAN FRANCISCO, CA 94105
90-7118-3211

11/21/2007

PAY TO THE
ORDER OF      Zantaz, Inc.                                              $  **65.00

Sixty-Five and 00/100****************************************************
                                                                          DOLLARS

Zantaz, Inc.
5758 West Las Positas Blvd.
Pleasanton, CA 94588

MEMO    Witness Fee

Security Features Included.  Details on back.

# EXHIBIT E

SF/21705150.1

1   BINGHAM MCCUTCHEN LLP
    COLIN C. WEST (SBN 184095)
2   ERICA BRAND PORTNOY (SBN 244923)
    Three Embarcadero Center
3   San Francisco, CA  94111-4067
    Telephone:  (415) 393-2000
4   Facsimile:  (415) 393-2286
    Email: colin.west@bingham.com
5          erica.brand@bingham.com

6   Attorneys for
    ZANTAZ, INC.

7

8

9               UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11                SAN FRANCISCO DIVISION

12

13   IN RE:  Seroquel Products Liability Litigation      Case No. 6:06-md-1769-Orl-22DAB
                                                         Middle District of Florida, Orlando
14                                                       Division

15                                                       **NON-PARTY CUSTODIAN OF**
                                                         **RECORDS FOR ZANTAZ, INC.'S**
16                                                       **RESPONSES AND OBJECTIONS TO**
                                                         **PLAINTIFFS' SUBPOENA FOR**
17                                                       **PRODUCTION OF DOCUMENTS**

18

19

20

21

22

23

24

25

26

A/72337630.1

1        Pursuant to Federal Rule of Civil Procedure 45(c)(2)(B), Non-Party Custodian of

2    Records for Zantaz, Inc. ("Zantaz") submits the following Responses and Objections to the

3    Subpoena for Production of Documents propounded by Plaintiffs ("Subpoena").

4                                 **GENERAL OBJECTIONS**

5        1.      These Objections are made solely for the purpose of this action.  Zantaz

6    expressly reserves all objections as to competence, relevance, materiality, admissibility, and any

7    and all other objections for this action or in any other action for any purpose whatsoever of any

8    information provided in these responses.

9        2.      Zantaz objects to the Subpoena to the extent that it is vague, ambiguous,

10   overbroad, harassing, or oppressive, or fails to identify with particularity the category of

11   documents sought, or seeks production of documents that are neither relevant to the issues in this

12   action nor reasonably likely to lead to the discovery of admissible evidence.

13       3.      Zantaz objects to the Subpoena in that it subjects Zantaz to undue burden

14   and substantial expense in violation of Federal Rule of Civil Procedure 45 and other applicable

15   rules.

16       4.      Zantaz objects to the Subpoena in that it does not command production "at

17   a specified time and place" in violation of Federal Rule of Civil Procedure 45(a)(1)(iii).

18       5.      Zantaz objects to the Subpoena to the extent that it seeks the disclosure of

19   information or documents subject to the attorney-client privilege, the attorney work product

20   doctrine, or any other applicable privilege, protection, rule, or duty of confidentiality which

21   precludes or limits production or disclosure of information therein ("privileged" materials).

22   Zantaz will not produce any privileged information or document.  The inadvertent production of

23   any privileged document shall not be construed as, nor operate as, a waiver of Zantaz's rights to

24   assert any applicable privilege with respect to any such document or any other document or

25   matter.

26       6.      Zantaz objects to the Subpoena to the extent that it is duplicative and

1    unduly burdensome in that it seeks information or documents that are already in the possession,

2    custody or control of Plaintiffs, their attorneys, or their representatives, or which are publicly

3    available and therefore readily could be collected and obtained by Plaintiffs at their own burden

4    and expense, or are available from some other source that is more convenient, less burdensome

5    or less expensive, or the burden or expense of the discovery outweighs its benefits.

6         7.    Zantaz objects to the Subpoena, including its "Subpoena Definitions" and

7    "Subpoena Instructions," to the extent that it purports to expand Zantaz's discovery obligations

8    as a non-party to this action beyond the scope permitted by Federal Rules of Civil Procedure 26

9    and 45 and applicable Court and local rules.  Zantaz shall not comply with any purported

10    obligation not imposed by law.

11         8.    Zantaz objects to the Subpoena to the extent that it is excessive,

12    cumulative or redundant.

13         9.    Zantaz objects to the Subpoena to the extent that it seeks the disclosure of

14    documents covered by a confidentiality agreement or protective order.  Zantaz will not produce

15    any such information absent an order of the Court.

16         10.    Zantaz objects to the Subpoena to the extent that it seeks confidential

17    and/or proprietary business or technical information.

18         11.    Zantaz objects to the Subpoena to the extent that it purports to seek

19    "discovery into discovery", which is beyond the scope permitted by Federal Rules of Civil

20    Procedure 26 and 45 and applicable Court and local rules.  Zantaz shall not comply with any

21    purported obligation not imposed by law.

22         12.    Zantaz objects to producing documents in response to this Subpoena

23    unless and until it is reimbursed for any and all reasonable costs incurred in connection with

24    responding to the Subpoena.

25         13.    Zantaz objects to the Subpoena to the extent that it seeks documents or

26    information which are protected or prohibited from disclosure under California, Federal or other

A/72337630.1                                    3

NON-PARTY CUSTODIAN OF RECORDS FOR ZANTAZ, INC.'S RESPONSES AND OBJECTIONS TO
PLAINTIFFS' SUBPOENA FOR PRODUCTION OF DOCUMENTS

1    applicable law, including, but not limited to, the right of privacy, as well as any other

2    confidentiality rights possessed by third parties.

3          14.    Nothing contained herein shall be construed as an admission by Zantaz

4    that any responsive information or document exists or are in Zantaz's possession, custody, or

5    control.

6          15.    These responses and objections are based upon the present knowledge,

7    information, and belief of Zantaz.  Zantaz reserves the right to modify or supplement these

8    responses and objections as appropriate.

9          16.    Zantaz reserves all objections or other questions as to the competency,

10   relevance, materiality, privilege or admissibility at trial or in any other proceeding in this or any

11   other action for any purpose whatsoever.

12         17.    The foregoing General Objections shall be applicable to and included in

13   Zantaz's objections to each and every one of the Requests in Plaintiffs' Subpoena, whether or not

14   specifically raised below.  The Specific Objections set forth below shall not be construed as a

15   waiver, in whole or in part, of any of the foregoing General Objections.

16   **RESPONSES TO DOCUMENTS REQUESTED**

17   **DOCUMENT REQUEST NO. 1:**

18       All DOCUMENTS which constitute or relate to proposals or drafts of proposals for

19   professional services related to PRODUCTION.

20   **RESPONSE TO DOCUMENT REQUEST NO. 1:**

21       In addition to the General Objections, which are incorporated herein by reference, Zantaz

22   objects to this Request on the ground that it is vague, ambiguous, overbroad and burdensome and

23   calls for documents which are neither relevant nor reasonably calculated to lead to the discovery

24   of admissible evidence.  Zantaz also objects to this Request as unduly burdensome to the extent

25   all of the information that Plaintiffs seek here can and should be sought from the defendant in the

26   underlying action, AstraZeneca.  *See Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978

NON-PARTY CUSTODIAN OF RECORDS FOR ZANTAZ, INC.'S RESPONSES AND OBJECTIONS TO
PLAINTIFFS' SUBPOENA FOR PRODUCTION OF DOCUMENTS

1   (D.C. Cir. 1993) (Where the documents requested can be obtained from a party, requiring a non-

2   party to produce them imposes on them an undue burden); *Moon v. SCP Pool Corp.*, 232 F.R.D.

3   633, 638 (C.D. Cal. 2005) (requesting party's failure to demonstrate that it had attempted to

4   obtain documents from party to underlying litigation before serving subpoena on non-party

5   weighed in court's determination that requests were an undue burden).  Zantaz further objects to

6   the terms "proposals", "drafts of proposals" and "professional services" as undefined, vague and

7   ambiguous.  Zantaz further objects to the extent that the subpoena calls for the production of

8   confidential information, including proprietary Zantaz technical information and trade secrets.

9   Zantaz also objects to the extent this Request calls for documents protected from discovery by

10   the attorney-client privilege and/or the work-product doctrine.

11   **DOCUMENT REQUEST NO. 2:**

12        All DOCUMENTS which constitute or relate to agreements or drafts of agreements

13   between AstraZeneca and DEPONENT related to PRODUCTION.

14   **RESPONSE TO DOCUMENT REQUEST NO. 2:**

15        In addition to the General Objections, which are incorporated herein by reference, Zantaz

16   objects to this Request on the ground that it is vague, ambiguous, overbroad and burdensome and

17   calls for documents which are neither relevant nor reasonably calculated to lead to the discovery

18   of admissible evidence.  Zantaz also objects to this Request as unduly burdensome to the extent

19   all of the information that Plaintiffs seek here can and should be sought from the defendant in the

20   underlying action, AstraZeneca.  *See Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978

21   (D.C. Cir. 1993) (Where the documents requested can be obtained from a party, requiring a non-

22   party to produce them imposes on them an undue burden); *Moon v. SCP Pool Corp.*, 232 F.R.D.

23   633, 638 (C.D. Cal. 2005) (requesting party's failure to demonstrate that it had attempted to

24   obtain documents from party to underlying litigation before serving subpoena on non-party

25   weighed in court's determination that requests were an undue burden).  Zantaz further objects to

26   the extent that the subpoena calls for the production of confidential information, including

1   proprietary Zantaz technical information and trade secrets.  Zantaz also objects to the extent this

2   Request calls for documents protected from discovery by the attorney-client privilege and/or the

3   work-product doctrine.

4   **DOCUMENT REQUEST NO. 3:**

5       All DOCUMENTS which relate to DEPONENT's policies or procedures related to

6   digital chain of custody or the archival of client data, and all DOCUMENTS related to

7   compliance with those policies or procedures in PRODUCTION.

8   **RESPONSE TO DOCUMENT REQUEST NO. 3:**

9       In addition to the General Objections, which are incorporated herein by reference, Zantaz

10  objects to this Request on the ground that it is vague, ambiguous, overbroad and burdensome and

11  calls for documents which are neither relevant nor reasonably calculated to lead to the discovery

12  of admissible evidence.  Zantaz also objects to this Request as unduly burdensome to the extent

13  all of the information that Plaintiffs seek here can and should be sought from the defendant in the

14  underlying action, AstraZeneca.  *See Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978

15  (D.C. Cir. 1993) (Where the documents requested can be obtained from a party, requiring a non-

16  party to produce them imposes on them an undue burden); *Moon v. SCP Pool Corp.*, 232 F.R.D.

17  633, 638 (C.D. Cal. 2005) (requesting party's failure to demonstrate that it had attempted to

18  obtain documents from party to underlying litigation before serving subpoena on non-party

19  weighed in court's determination that requests were an undue burden).  Zantaz further objects to

20  the terms "digital chain of custody" and "archival of client data" as undefined, vague and

21  ambiguous.  Zantaz further objects to the extent that the subpoena calls for the production of

22  confidential information, including proprietary Zantaz technical information and trade secrets.

23  Zantaz also objects to the extent this Request calls for documents protected from discovery by

24  the attorney-client privilege and/or the work-product doctrine.

25  **DOCUMENT REQUEST NO. 4:**

26      All DOCUMENTS which relate to DEPONENT's policies or procedures related to

1     conversion and loading of data received from clients, and all DOCUMENTS related to

2     compliance with those policies or procedures in PRODUCTION.

3     **RESPONSE TO DOCUMENT REQUEST NO. 4:**

4         In addition to the General Objections, which are incorporated herein by reference, Zantaz

5     objects to this Request on the ground that it is vague, ambiguous, overbroad and burdensome and

6     calls for documents which are neither relevant nor reasonably calculated to lead to the discovery

7     of admissible evidence.  Zantaz also objects to this Request as unduly burdensome to the extent

8     all of the information that Plaintiffs seek here can and should be sought from the defendant in the

9     underlying action, AstraZeneca.  *See Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978

10     (D.C. Cir. 1993) (Where the documents requested can be obtained from a party, requiring a non-

11     party to produce them imposes on them an undue burden); *Moon v. SCP Pool Corp.*, 232 F.R.D.

12     633, 638 (C.D. Cal. 2005) (requesting party's failure to demonstrate that it had attempted to

13     obtain documents from party to underlying litigation before serving subpoena on non-party

14     weighed in court's determination that requests were an undue burden).  Zantaz further objects to

15     the terms "conversion" and "loading of data" as undefined, vague and ambiguous.  Zantaz

16     further objects to the extent that the subpoena calls for the production of confidential

17     information, including proprietary Zantaz technical information and trade secrets.  Zantaz also

18     objects to the extent this Request calls for documents protected from discovery by the attorney-

19     client privilege and/or the work-product doctrine.

20     **DOCUMENT REQUEST NO. 5:**

21         All data from any trouble-ticket systems, customer relationship management (CRM)

22     systems, or similar system related to problems or issues with PRODUCTION.

23     **RESPONSE TO DOCUMENT REQUEST NO. 5:**

24         In addition to the General Objections, which are incorporated herein by reference, Zantaz

25     objects to this Request on the ground that it is vague, ambiguous, overbroad and burdensome and

26     calls for documents which are neither relevant nor reasonably calculated to lead to the discovery

A/72337630.1

7

NON-PARTY CUSTODIAN OF RECORDS FOR ZANTAZ, INC.'S RESPONSES AND OBJECTIONS TO
PLAINTIFFS' SUBPOENA FOR PRODUCTION OF DOCUMENTS

1 of admissible evidence.  Zantaz also objects to this Request as unduly burdensome to the extent

2 all of the information that Plaintiffs seek here can and should be sought from the defendant in the

3 underlying action, AstraZeneca.  *See Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978

4 (D.C. Cir. 1993) (Where the documents requested can be obtained from a party, requiring a non-

5 party to produce them imposes on them an undue burden); *Moon v. SCP Pool Corp.*, 232 F.R.D.

6 633, 638 (C.D. Cal. 2005) (requesting party's failure to demonstrate that it had attempted to

7 obtain documents from party to underlying litigation before serving subpoena on non-party

8 weighed in court's determination that requests were an undue burden).  Zantaz further objects to

9 the terms "trouble-ticket systems" and "customer relationship management (CRM) systems" as

10 undefined, vague and ambiguous.  Zantaz further objects to the extent that the subpoena calls for

11 the production of confidential information, including proprietary Zantaz technical information

12 and trade secrets.  Zantaz also objects to the extent this Request calls for documents protected

13 from discovery by the attorney-client privilege and/or the work-product doctrine.

14 **DOCUMENT REQUEST NO. 6:**

15  All shift-change logs or other DOCUMENTS related to shift changes or hand-offs

16 identifying or relating to problems or issues with PRODUCTION.

17 **RESPONSE TO DOCUMENT REQUEST NO. 6:**

18  In addition to the General Objections, which are incorporated herein by reference, Zantaz

19 objects to this Request on the ground that it is vague, ambiguous, overbroad and burdensome and

20 calls for documents which are neither relevant nor reasonably calculated to lead to the discovery

21 of admissible evidence.  Zantaz also objects to this Request as unduly burdensome to the extent

22 all of the information that Plaintiffs seek here can and should be sought from the defendant in the

23 underlying action, AstraZeneca.  *See Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978

24 (D.C. Cir. 1993) (Where the documents requested can be obtained from a party, requiring a non-

25 party to produce them imposes on them an undue burden); *Moon v. SCP Pool Corp.*, 232 F.R.D.

26 633, 638 (C.D. Cal. 2005) (requesting party's failure to demonstrate that it had attempted to

1    obtain documents from party to underlying litigation before serving subpoena on non-party

2    weighed in court's determination that requests were an undue burden).  Zantaz further objects to

3    the terms "shift-change logs", "shift changes" and "hand-offs" as undefined, vague and

4    ambiguous.  Zantaz further objects to the extent that the subpoena calls for the production of

5    confidential information, including proprietary Zantaz technical information and trade secrets.

6    Zantaz also objects to the extent this Request calls for documents protected from discovery by

7    the attorney-client privilege and/or the work-product doctrine.

8    **DOCUMENT REQUEST NO. 7:**

9        All DOCUMENTS related to scripts or custom programs written for PRODUCTION.

10   **RESPONSE TO DOCUMENT REQUEST NO. 7:**

11       In addition to the General Objections, which are incorporated herein by reference, Zantaz

12   objects to this Request on the ground that it is vague, ambiguous, overbroad and burdensome and

13   calls for documents which are neither relevant nor reasonably calculated to lead to the discovery

14   of admissible evidence.  Zantaz also objects to this Request as unduly burdensome to the extent

15   all of the information that Plaintiffs seek here can and should be sought from the defendant in the

16   underlying action, AstraZeneca.  *See Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978

17   (D.C. Cir. 1993) (Where the documents requested can be obtained from a party, requiring a non-

18   party to produce them imposes on them an undue burden); *Moon v. SCP Pool Corp.*, 232 F.R.D.

19   633, 638 (C.D. Cal. 2005) (requesting party's failure to demonstrate that it had attempted to

20   obtain documents from party to underlying litigation before serving subpoena on non-party

21   weighed in court's determination that requests were an undue burden).  Zantaz further objects to

22   the terms "scripts" and "custom programs" as undefined, vague and ambiguous.  Zantaz further

23   objects to the extent that the subpoena calls for the production of confidential information,

24   including proprietary Zantaz technical information and trade secrets.  Zantaz also objects to the

25   extent this Request calls for documents protected from discovery by the attorney-client privilege

26   and/or the work-product doctrine.

**DOCUMENT REQUEST NO. 8:**

All DOCUMENTS which evidence or relate to communications to, from or within DEPONENT regarding any problems or issues with PRODUCTION raised by Plaintiffs herein. These shall include, without limitation, DOCUMENTS reflecting: the first reported date of each issue, instructions for each issue, QC measures taken in response to each issue to prevent the future reoccurrence of the issue, documentation on the source of problems with each issue, QA methodology taken on subsequent PRODUCTIONs with respect to the issue, and communications or discussions with any person related to the cause of each issue.

**RESPONSE TO DOCUMENT REQUEST NO. 8:**

In addition to the General Objections, which are incorporated herein by reference, Zantaz objects to this Request on the ground that it is vague, ambiguous, overbroad and burdensome and calls for documents which are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Zantaz also objects to this Request as unduly burdensome to the extent all of the information that Plaintiffs seek here can and should be sought from the defendant in the underlying action, AstraZeneca.  *See Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (D.C. Cir. 1993) (Where the documents requested can be obtained from a party, requiring a non-party to produce them imposes on them an undue burden); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005) (requesting party's failure to demonstrate that it had attempted to obtain documents from party to underlying litigation before serving subpoena on non-party weighed in court's determination that requests were an undue burden).  Zantaz further objects to the terms "QC measures" and "QA methodology" as undefined, vague and ambiguous.  Zantaz further objects to the extent that the subpoena calls for the production of confidential information, including proprietary Zantaz technical information and trade secrets.  Zantaz also objects to the extent this Request calls for documents protected from discovery by the attorney-client privilege and/or the work-product doctrine.

1  **DOCUMENT REQUEST NO. 9:**

2       All DOCUMENTS which evidence or relate to communications to, from, and within

3  DEPONENT regarding any other actual or potential issues or problems related to

4  PRODUCTION.  These shall include, without limitation, DOCUMENTS reflecting: the first

5  reported date of each issue, instructions for each issue, QC measures taken in response to each

6  issue to prevent the future reoccurrence of the issue, documentation on the source of problems

7  with each issue, QA methodology taken on subsequent PRODUCTIONs with respect to the

8  issue, and communications or discussions with any person related to the cause of each issue,

9  dates of notice to the Plaintiffs or subsequent corrections and reissue of the PRODUCTION

10  without specific notice to the Plaintiffs.

11  **RESPONSE TO DOCUMENT REQUEST NO. 9:**

12       In addition to the General Objections, which are incorporated herein by reference, Zantaz

13  objects to this Request on the ground that it is vague, ambiguous, overbroad and burdensome and

14  calls for documents which are neither relevant nor reasonably calculated to lead to the discovery

15  of admissible evidence.  Zantaz also objects to this Request as unduly burdensome to the extent

16  all of the information that Plaintiffs seek here can and should be sought from the defendant in the

17  underlying action, AstraZeneca.  *See Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978

18  (D.C. Cir. 1993) (Where the documents requested can be obtained from a party, requiring a non-

19  party to produce them imposes on them an undue burden); *Moon v. SCP Pool Corp.*, 232 F.R.D.

20  633, 638 (C.D. Cal. 2005) (requesting party's failure to demonstrate that it had attempted to

21  obtain documents from party to underlying litigation before serving subpoena on non-party

22  weighed in court's determination that requests were an undue burden).  Zantaz further objects to

23  the terms "issues or problems", "issue", "QC measures", "QA methodology" and "corrections

24  and reissue" as undefined, vague and ambiguous.  Zantaz further objects to the extent that the

25  subpoena calls for the production of confidential information, including proprietary Zantaz

26  technical information and trade secrets.  Zantaz also objects to the extent this Request calls for

1    documents protected from discovery by the attorney-client privilege and/or the work-product

2    doctrine.

3    **DOCUMENT REQUEST NO. 10:**

4           All DOCUMENTS which constitute or relate to communications between AstraZeneca

5    and DEPONENT relating to problems or issues encountered in PRODUCTION.

6    **RESPONSE TO DOCUMENT REQUEST NO. 10:**

7           In addition to the General Objections, which are incorporated herein by reference, Zantaz

8    objects to this Request on the ground that it is vague, ambiguous, overbroad and burdensome and

9    calls for documents which are neither relevant nor reasonably calculated to lead to the discovery

10   of admissible evidence.  Zantaz also objects to this Request as unduly burdensome to the extent

11   all of the information that Plaintiffs seek here can and should be sought from the defendant in the

12   underlying action, AstraZeneca.  *See Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978

13   (D.C. Cir. 1993) (Where the documents requested can be obtained from a party, requiring a non-

14   party to produce them imposes on them an undue burden); *Moon v. SCP Pool Corp.*, 232 F.R.D.

15   633, 638 (C.D. Cal. 2005) (requesting party's failure to demonstrate that it had attempted to

16   obtain documents from party to underlying litigation before serving subpoena on non-party

17   weighed in court's determination that requests were an undue burden).  Zantaz further objects to

18   the terms "problems" and "issues" as undefined, vague and ambiguous.  Zantaz further objects to

19   the extent that the subpoena calls for the production of confidential information, including

20   proprietary Zantaz technical information and trade secrets.  Zantaz also objects to the extent this

21   Request calls for documents protected from discovery by the attorney-client privilege and/or the

22   work-product doctrine.

23   **DOCUMENT REQUEST NO. 11:**

24          All DOCUMENTS which constitute or relate to communications between DEPONENT

25   and any other person or entity relating to problems or issues encountered in PRODUCTION.

26

1   **RESPONSE TO DOCUMENT REQUEST NO. 11:**

2        In addition to the General Objections, which are incorporated herein by reference, Zantaz

3   objects to this Request on the ground that it is vague, ambiguous, overbroad and burdensome and

4   calls for documents which are neither relevant nor reasonably calculated to lead to the discovery

5   of admissible evidence.  Zantaz also objects to this Request as unduly burdensome to the extent

6   all of the information that Plaintiffs seek here can and should be sought from the defendant in the

7   underlying action, AstraZeneca.  *See Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978

8   (D.C. Cir. 1993) (Where the documents requested can be obtained from a party, requiring a non-

9   party to produce them imposes on them an undue burden); *Moon v. SCP Pool Corp.*, 232 F.R.D.

10  633, 638 (C.D. Cal. 2005) (requesting party's failure to demonstrate that it had attempted to

11  obtain documents from party to underlying litigation before serving subpoena on non-party

12  weighed in court's determination that requests were an undue burden).  Zantaz further objects to

13  the terms "problems" and "issues" as undefined, vague and ambiguous.  Zantaz further objects to

14  the extent that the subpoena calls for the production of confidential information, including

15  proprietary Zantaz technical information and trade secrets.  Zantaz also objects to the extent this

16  Request calls for documents protected from discovery by the attorney-client privilege and/or the

17  work-product doctrine.

18  **DOCUMENT REQUEST NO. 12:**

19       All DOCUMENTS which evidence, reflect or relate to the consequences of problems in

20  PRODUCTION, including (without limitation) any degradation of the integrity, accuracy, and

21  searchability of DOCUMENTS produced.

22  **RESPONSE TO DOCUMENT REQUEST NO. 12:**

23       In addition to the General Objections, which are incorporated herein by reference, Zantaz

24  objects to this Request on the ground that it is vague, ambiguous, overbroad and burdensome and

25  calls for documents which are neither relevant nor reasonably calculated to lead to the discovery

26  of admissible evidence.  Zantaz also objects to this Request as unduly burdensome to the extent

1    all of the information that Plaintiffs seek here can and should be sought from the defendant in the

2    underlying action, AstraZeneca.  *See Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978

3    (D.C. Cir. 1993) (Where the documents requested can be obtained from a party, requiring a non-

4    party to produce them imposes on them an undue burden); *Moon v. SCP Pool Corp.*, 232 F.R.D.

5    633, 638 (C.D. Cal. 2005) (requesting party's failure to demonstrate that it had attempted to

6    obtain documents from party to underlying litigation before serving subpoena on non-party

7    weighed in court's determination that requests were an undue burden).  Zantaz further objects to

8    the terms "consequences of problems", "degradation of the integrity", "accuracy" and

9    "searchability" as undefined, vague and ambiguous.  Zantaz further objects to the extent that the

10   subpoena calls for the production of confidential information, including proprietary Zantaz

11   technical information and trade secrets.  Zantaz also objects to the extent this Request calls for

12   documents protected from discovery by the attorney-client privilege and/or the work-product

13   doctrine.

14   **DOCUMENT REQUEST NO. 13:**

15        All DOCUMENTS which evidence, reflect or relate to any upgrade or new deployment

16   of DEPONENT's systems that impacted the pace of PRODUCTION or affected the quality of

17   the PRODUCTION.

18   **RESPONSE TO DOCUMENT REQUEST NO. 13:**

19        In addition to the General Objections, which are incorporated herein by reference, Zantaz

20   objects to this Request on the ground that it is vague, ambiguous, overbroad and burdensome and

21   calls for documents which are neither relevant nor reasonably calculated to lead to the discovery

22   of admissible evidence.  Zantaz also objects to this Request as unduly burdensome to the extent

23   all of the information that Plaintiffs seek here can and should be sought from the defendant in the

24   underlying action, AstraZeneca. *See Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978

25   (D.C. Cir. 1993) (Where the documents requested can be obtained from a party, requiring a non-

26   party to produce them imposes on them an undue burden); *Moon v. SCP Pool Corp.*, 232 F.R.D.

NON-PARTY CUSTODIAN OF RECORDS FOR ZANTAZ, INC.'S RESPONSES AND OBJECTIONS TO
PLAINTIFFS' SUBPOENA FOR PRODUCTION OF DOCUMENTS

1   633, 638 (C.D. Cal. 2005) (requesting party's failure to demonstrate that it had attempted to

2   obtain documents from party to underlying litigation before serving subpoena on non-party

3   weighed in court's determination that requests were an undue burden).  Zantaz further objects to

4   the terms "upgrade", "new deployment", "systems", "impacted", "pace", "affected" and

5   "quality" as undefined, vague and ambiguous.  Zantaz further objects to the extent that the

6   subpoena calls for the production of confidential information, including proprietary Zantaz

7   technical information and trade secrets.  Zantaz also objects to the extent this Request calls for

8   documents protected from discovery by the attorney-client privilege and/or the work-product

9   doctrine.

10  **DOCUMENT REQUEST NO. 14:**

11      All DOCUMENTS which evidence, reflect or relate to any work on PRODUCTION that

12  had to be redone, and any delay occasioned by the same.

13  **RESPONSE TO DOCUMENT REQUEST NO. 14:**

14      In addition to the General Objections, which are incorporated herein by reference, Zantaz

15  objects to this Request on the ground that it is vague, ambiguous, overbroad and burdensome and

16  calls for documents which are neither relevant nor reasonably calculated to lead to the discovery

17  of admissible evidence.  Zantaz also objects to this Request as unduly burdensome to the extent

18  all of the information that Plaintiffs seek here can and should be sought from the defendant in the

19  underlying action, AstraZeneca.  *See Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978

20  (D.C. Cir. 1993) (Where the documents requested can be obtained from a party, requiring a non-

21  party to produce them imposes on them an undue burden); *Moon v. SCP Pool Corp.*, 232 F.R.D.

22  633, 638 (C.D. Cal. 2005) (requesting party's failure to demonstrate that it had attempted to

23  obtain documents from party to underlying litigation before serving subpoena on non-party

24  weighed in court's determination that requests were an undue burden).  Zantaz further objects to

25  the terms "work" and "redone" as undefined, vague and ambiguous.  Zantaz further objects to

26  the extent that the subpoena calls for the production of confidential information, including

1    proprietary Zantaz technical information and trade secrets.  Zantaz also objects to the extent this

2    Request calls for documents protected from discovery by the attorney-client privilege and/or the

3    work-product doctrine.

4    **DOCUMENT REQUEST NO. 15:**

5        All DOCUMENTS which evidence, reflect or relate to the consequences to consistency

6    of the PRODUCTION of running in parallel teams.

7    **RESPONSE TO DOCUMENT REQUEST NO. 15:**

8        In addition to the General Objections, which are incorporated herein by reference, Zantaz

9    objects to this Request on the ground that it is vague, ambiguous, overbroad and burdensome and

10   calls for documents which are neither relevant nor reasonably calculated to lead to the discovery

11   of admissible evidence.  Zantaz also objects to this Request as unduly burdensome to the extent

12   all of the information that Plaintiffs seek here can and should be sought from the defendant in the

13   underlying action, AstraZeneca.  *See Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978

14   (D.C. Cir. 1993) (Where the documents requested can be obtained from a party, requiring a non-

15   party to produce them imposes on them an undue burden); *Moon v. SCP Pool Corp.*, 232 F.R.D.

16   633, 638 (C.D. Cal. 2005) (requesting party's failure to demonstrate that it had attempted to

17   obtain documents from party to underlying litigation before serving subpoena on non-party

18   weighed in court's determination that requests were an undue burden).  Zantaz further objects to

19   the terms "consequences to consistency" and "running in parallel teams" as undefined, vague and

20   ambiguous.  Zantaz further objects to the extent that the subpoena calls for the production of

21   confidential information, including proprietary Zantaz technical information and trade secrets.

22   Zantaz also objects to the extent this Request calls for documents protected from discovery by

23   the attorney-client privilege and/or the work-product doctrine.

24   **DOCUMENT REQUEST NO. 16:**

25       All DOCUMENTS which reflect compensation paid or payable to DEPONENT by

26   AstraZeneca for professional services related to PRODUCTION.

A/72337630.1

1    **RESPONSE TO DOCUMENT REQUEST NO. 16:**

2    In addition to the General Objections, which are incorporated herein by reference, Zantaz

3    objects to this Request on the ground that it is vague, ambiguous, overbroad and burdensome and

4    calls for documents which are neither relevant nor reasonably calculated to lead to the discovery

5    of admissible evidence. Zantaz also objects to this Request as unduly burdensome to the extent

6    all of the information that Plaintiffs seek here can and should be sought from the defendant in the

7    underlying action, AstraZeneca.  *See Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978

8    (D.C. Cir. 1993) (Where the documents requested can be obtained from a party, requiring a non-

9    party to produce them imposes on them an undue burden); *Moon v. SCP Pool Corp.*, 232 F.R.D.

10   633, 638 (C.D. Cal. 2005) (requesting party's failure to demonstrate that it had attempted to

11   obtain documents from party to underlying litigation before serving subpoena on non-party

12   weighed in court's determination that requests were an undue burden).  Zantaz further objects to

13   the terms "compensation" and "professional services" as undefined, vague and ambiguous.

14   Zantaz further objects to the extent that the subpoena calls for the production of confidential

15   information, including proprietary Zantaz technical information and trade secrets.  Zantaz also

16   objects to the extent this Request calls for documents protected from discovery by the attorney-

17   client privilege and/or the work-product doctrine.

18   **DOCUMENT REQUEST NO. 17:**

19   All DOCUMENTS relating to PRODUCTION which were generated, sent or received in

20   connection with any merger or acquisition of DEPONENT (i.e. any due diligence

21   DOCUMENTS or disclosures).

22   **RESPONSE TO DOCUMENT REQUEST NO. 17:**

23   In addition to the General Objections, which are incorporated herein by reference, Zantaz

24   objects to this Request on the ground that it is vague, ambiguous, overbroad and burdensome and

25   calls for documents which are neither relevant nor reasonably calculated to lead to the discovery

26   of admissible evidence.  Zantaz also objects to this Request as unduly burdensome to the extent

1  all of the information that Plaintiffs seek here can and should be sought from the defendant in the

2  underlying action, AstraZeneca. *See Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978

3  (D.C. Cir. 1993) (Where the documents requested can be obtained from a party, requiring a non-

4  party to produce them imposes on them an undue burden); *Moon v. SCP Pool Corp.*, 232 F.R.D.

5  633, 638 (C.D. Cal. 2005) (requesting party's failure to demonstrate that it had attempted to

6  obtain documents from party to underlying litigation before serving subpoena on non-party

7  weighed in court's determination that requests were an undue burden).  Zantaz further objects to

8  the terms "generated", "in connection with", "merger" and "acquisition" as undefined, vague and

9  ambiguous.  Zantaz further objects to the extent that the subpoena calls for the production of

10  confidential information, including proprietary Zantaz technical information and trade secrets.

11  Zantaz also objects to the extent this Request calls for documents protected from discovery by

12  the attorney-client privilege and/or the work-product doctrine.

13  **DOCUMENT REQUEST NO. 18:**

14         All DOCUMENTS related to sub-vendors employed by DEPONENT to work on

15  PRODUCTION.  These shall include, without limitation, DOCUMENTS reflecting the current

16  status of each subvendor (i.e., in good standing, terminated, etc.) including whether any project

17  managers for the sub-vendors have been terminated or whether payment has been withheld.

18  **RESPONSE TO DOCUMENT REQUEST NO. 18:**

19         In addition to the General Objections, which are incorporated herein by reference, Zantaz

20  objects to this Request on the ground that it is vague, ambiguous, overbroad and burdensome and

21  calls for documents which are neither relevant nor reasonably calculated to lead to the discovery

22  of admissible evidence.  Zantaz also objects to this Request as unduly burdensome to the extent

23  all of the information that Plaintiffs seek here can and should be sought from the defendant in the

24  underlying action, AstraZeneca.  *See Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978

25  (D.C. Cir. 1993) (Where the documents requested can be obtained from a party, requiring a non-

26  party to produce them imposes on them an undue burden); *Moon v. SCP Pool Corp.*, 232 F.R.D.

1    633, 638 (C.D. Cal. 2005) (requesting party's failure to demonstrate that it had attempted to

2    obtain documents from party to underlying litigation before serving subpoena on non-party

3    weighed in court's determination that requests were an undue burden).  Zantaz further objects to

4    the terms "subvendors", "subvendor", "in good standing", "terminated", "project managers" and

5    "sub-vendors" as undefined, vague and ambiguous.  Zantaz further objects to the extent that the

6    subpoena calls for the production of confidential information, including proprietary Zantaz

7    technical information and trade secrets.  Zantaz also objects to the extent this Request calls for

8    documents protected from discovery by the attorney-client privilege and/or the work-product

9    doctrine.

10    **DOCUMENT REQUEST NO. 19:**

11         All DOCUMENTS reflecting the name, residence address and telephone number of any

12    former employees of DEPONENT who worked on the Seroquel-related document

13    PRODUCTION.

14    **RESPONSE TO DOCUMENT REQUEST NO. 19:**

15         In addition to the General Objections, which are incorporated herein by reference, Zantaz

16    objects to this Request on the ground that it is vague, ambiguous, overbroad and burdensome and

17    calls for documents which are neither relevant nor reasonably calculated to lead to the discovery

18    of admissible evidence.  Zantaz also objects to this Request as unduly burdensome to the extent

19    all of the information that Plaintiffs seek here can and should be sought from the defendant in the

20    underlying action, AstraZeneca. *See Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978

21    (D.C. Cir. 1993) (Where the documents requested can be obtained from a party, requiring a non-

22    party to produce them imposes on them an undue burden); *Moon v. SCP Pool Corp.*, 232 F.R.D.

23    633, 638 (C.D. Cal. 2005) (requesting party's failure to demonstrate that it had attempted to

24    obtain documents from party to underlying litigation before serving subpoena on non-party

25    weighed in court's determination that requests were an undue burden).  Zantaz further objects to

26    the terms "worked on" as undefined, vague and ambiguous.  Zantaz further objects to the extent

1    that the subpoena calls for the production of confidential information, including proprietary

2    Zantaz technical information and trade secrets.  Zantaz also objects to the extent this Request

3    calls for documents protected from discovery by the attorney-client privilege and/or the work-

4    product doctrine.

5    **DOCUMENT REQUEST NO. 20:**

6        All DOCUMENTS which evidence, reflect or relate to project management structure and

7    accountability within DEPONENT.

8    **RESPONSE TO DOCUMENT REQUEST NO. 20:**

9        In addition to the General Objections, which are incorporated herein by reference, Zantaz

10    objects to this Request on the ground that it is vague, ambiguous, overbroad and burdensome and

11    calls for documents which are neither relevant nor reasonably calculated to lead to the discovery

12    of admissible evidence.  Zantaz also objects to this Request as unduly burdensome to the extent

13    all of the information that Plaintiffs seek here can and should be sought from the defendant in the

14    underlying action, AstraZeneca.  *See Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978

15    (D.C. Cir. 1993) (Where the documents requested can be obtained from a party, requiring a non-

16    party to produce them imposes on them an undue burden); *Moon v. SCP Pool Corp.*, 232 F.R.D.

17    633, 638 (C.D. Cal. 2005) (requesting party's failure to demonstrate that it had attempted to

18    obtain documents from party to underlying litigation before serving subpoena on non-party

19    weighed in court's determination that requests were an undue burden).  Zantaz further objects to

20    the terms "project management structure and accountability" as undefined, vague and

21    ambiguous.  Zantaz further objects to the extent that the subpoena calls for the production of

22    confidential information, including proprietary Zantaz technical information and trade secrets.

23    Zantaz also objects to the extent this Request calls for documents protected from discovery by

24    the attorney-client privilege and/or the work-product doctrine.

25    **DOCUMENT REQUEST NO. 21:**

26        All DOCUMENTS which evidence, reflect or relate to the first contact and engagement

1    of FTI Consulting.

2    **RESPONSE TO DOCUMENT REQUEST NO. 21:**

3         In addition to the General Objections, which are incorporated herein by reference, Zantaz

4    objects to this Request on the ground that it is vague, ambiguous, overbroad and burdensome and

5    calls for documents which are neither relevant nor reasonably calculated to lead to the discovery

6    of admissible evidence.  Zantaz also objects to this Request as unduly burdensome to the extent

7    all of the information that Plaintiffs seek here can and should be sought from the defendant in the

8    underlying action, AstraZeneca.  *See Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978

9    (D.C. Cir. 1993) (Where the documents requested can be obtained from a party, requiring a non-

10   party to produce them imposes on them an undue burden); *Moon v. SCP Pool Corp.*, 232 F.R.D.

11   633, 638 (C.D. Cal. 2005) (requesting party's failure to demonstrate that it had attempted to

12   obtain documents from party to underlying litigation before serving subpoena on non-party

13   weighed in court's determination that requests were an undue burden).  Zantaz further objects to

14   the terms "the first contact" and "engagement" as undefined, vague and ambiguous.  Zantaz

15   further objects to the extent that the subpoena calls for the production of confidential

16   information, including proprietary Zantaz technical information and trade secrets.  Zantaz also

17   objects to the extent this Request calls for documents protected from discovery by the attorney-

18   client privilege and/or the work-product doctrine.

19   DATED:  December 10, 2007                    Bingham McCutchen LLP

20
                                                  By:_____Colin C West / EBP_____
21                                                           Colin C. West
22                                                        colin.west@bingham.com
                                                     Attorneys for ZANTAZ, INC.
23

24

25

26

1    BINGHAM MCCUTCHEN LLP
      COLIN C. WEST (SBN 184095)
2    ERICA BRAND PORTNOY (SBN 244923)
      Three Embarcadero Center
3    San Francisco, CA  94111-4067
      Telephone:  (415) 393-2000
4    Facsimile:  (415) 393-2286
      Email: colin.west@bingham.com
5          erica.brand@bingham.com

6    Attorneys for
      ZANTAZ, INC.

7

8

9                UNITED STATES DISTRICT COURT

10             NORTHERN DISTRICT OF CALIFORNIA

11                SAN FRANCISCO DIVISION

12

13   IN RE:  Seroquel Products Liability Litigation    |   Case No. 6:06-md-1769-Orl-22DAB
                                                 Middle District of Florida, Orlando
14                                                Division

15                                               **PROOF OF SERVICE**

16

17          I am over eighteen years of age, not a party in this action, and employed in San

18 Francisco County, California at Three Embarcadero Center, San Francisco, California  94111-

19 4067.  I am readily familiar with the practice of this office for collection and processing of

20 correspondence for mail/fax/hand delivery/next business day Hand delivery, and they are

21 deposited that same day in the ordinary course of business.

22          On December 10, 2007, I served the attached:

23       **NON-PARTY CUSTODIAN OF RECORDS FOR ZANTAZ,
      INC.'S RESPONSES AND OBJECTIONS TO PLAINTIFFS'
24       SUBPOENA FOR PRODUCTION OF DOCUMENTS**

25

26

                                           1

1

2

☐ (BY FAX) by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

3

4

5

6

☐ (BY MAIL) by causing a true and correct copy of the above to be placed in the United States Mail at San Francisco, California in sealed envelope(s) with postage prepaid, addressed as set forth below.  I am readily familiar with this law firm's practice for collection and processing of correspondence for mailing with the United States Postal Service.  Correspondence is deposited with the United States Postal Service the same day it is left for collection and processing in the ordinary course of business.

7

8

9

☐ (EXPRESS MAIL/OVERNIGHT DELIVERY) by causing a true and correct copy of the document(s) listed above to be delivered by Hand in sealed envelope(s) with all fees prepaid at the address(es) set forth below.

10

11

☒ (PERSONAL SERVICE) by causing a true and correct copy of the above documents to be hand delivered in sealed envelope(s) with all fees fully paid to the person(s) at the address(es) set forth below.

12

13

Dennis J. Canty, Esq.,
Levin Simes Kaiser & Gornick
44 Montgomery Street,  #3600
San Francisco, CA 94104

14

15

16

17

18

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made and that this declaration was executed on December 10, 2007, at San Francisco, California.

19

20

21

_Angela Ius_

22

23

24

25

26

2