UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

ORLANDO DIVISION

| | |
|---|---|
| In Re:  Seroquel Products Liability Litigation<br>MDL Docket No.  1769<br><br>DOCUMENT RELATES TO ALL CASES | Case No. 6:06-md-01769-ACC-DAB<br><br>**PLAINTIFFS' STATEMENT**<br>**RE: FORMAT AND CONTENT OF**<br>**EVIDENTIARY HEARING** |

On August 21, 2007, this Court issued an Order finding that Astra Zeneca has engaged in sanctionable conduct by, among other things, its "failure to timely and systematically produce electronic discovery associated with 80 AstraZeneca 'custodians' in any manageable, searchable form."  August 21 Order (Doc. 393), at 2.  The Court reserved ruling on the appropriate sanctions, stating: "Plaintiffs will be allowed a further opportunity to present evidence and arguments as to any prejudice or damages from AstraZeneca's failure timely to produce 'usable' or 'reasonably accessible' documents in this litigation, including motion costs."  *Id*., at 28.  The extent of plaintiffs' monetary damages flowing from AstraZeneca's failing to produce "custodial" documents is now ripe for determination.

**PROCEDURAL BACKGROUND**

In late 2006, at the Court's urging, the parties engaged in extensive discussions and negotiations concerning the timing and format for AstraZeneca's production of documents. Transcript of Proceedings, December 11, 2007, at 82-83.  Those negotiations culminated in a joint motion to the Court, with a proposed CMO 2, reflecting AstraZeneca's "stated policy" ("to get to plaintiffs' counsel in a timely manner and in a format usable the necessary production [of]

1

documents") and its representations regarding custodial production (that it would be a "workable, practical and judicially efficient methodology and system for the production of documents to the MDL Plaintiffs.") Joint Motion, (Doc. 110). The Court ultimately entered CMO 2 (Doc. 129), adopting that methodology and system for production of documents to plaintiffs.

    CMO2 ordered AstraZeneca to produce custodial files according the following schedule:

    A. By December 22, 2006, AstraZeneca shall identify the eight custodians for whom it has already substantially collected documents ("the Eight Custodians") and the other custodians (approximately 72) from whom it has begun to collect documents and/or whom it has identified as persons who have custody of documents that are potentially relevant to this litigation.

    B. Plaintiffs may thereafter request that AstraZeneca collect and produce documents from AstraZeneca officers and employees who are not among the approximately 80 custodians whom AstraZeneca has identified. AstraZeneca reserves the right to object to such requests.

    C. AstraZeneca shall first produce the documents collected from the Eight Custodians. Thereafter, AstraZeneca shall attempt to produce documents to plaintiffs in the order that plaintiffs request AstraZeneca to produce such documents from custodians other than the Eight Custodians, taking into account the status of document collections already underway.

    D. AstraZeneca shall begin producing documents collected from the Eight Custodians on or before January 5, 2007, and AstraZeneca shall thereafter produce documents collected from all other custodians as soon as practicable.

CMO2, at p. 4.

    CMO2 further imposed the following, agreed-upon format requirements:

    A. Format of Production

    1. AstraZeneca shall produce all responsive hard copy and electronic documents in single-page Tagged Image File Format ("TIFF") with an accompanying load file, an extracted text file of electronic documents that are unredacted, and an Optical

Character Recognition ("OCR") text file of unredacted portions of redacted documents and hard copy documents.

2. Documents that present imaging or formatting problems shall be promptly identified and the Parties shall meet and confer to attempt to resolve the problems. The Parties are not required to produce exact duplicates of electronic documents stored in different electronic locations. The metadata for documents which have been "de-duplicated" across custodial files will indicate the names of the custodians in whose files the documents are located. The Plaintiffs shall produce documents on either DVD or CD and may produce fact sheets by email in ".pdf" format. AstraZeneca will produce documents on DVD or hard drives.

3. Each page of a produced document shall have a legible, unique page identifier ("Bates Number") and confidentiality legend (where applicable) on the face of the image at a location that does not obliterate, conceal, or interfere with any information from the source document. No other legend or stamp will be placed on the document image other than the Bates Number, confidentiality legend (where applicable), and redactions addressed above.

4. For redacted documents not yet reviewed by AstraZeneca as of the date of this order, the metadata for each document will indicate the basis for the redaction (e.g., "other AstraZeneca product," "privacy," or "privilege") at the time the redacted document is produced.

B. Metadata

To the extent possible and practicable, AstraZeneca will provide the following metadata fields:

(a) Electronic document type;
(b) Create date;
(c) File name
(d) File location;
(e) Source location;
(f) Starting production number;
(g) Ending production number;
(h) Custodian;
(I) Last date modified;
(j) Author;
(k) Recipient(s);
(l) Document date (if different from create date);

>    (m) cc(s);
>    (n) bcc(s);
>    (o) Subject;
>    (p) Title; and
>    (q) Attachment information (for e-mails).
>
> If AstraZeneca determines that it is impossible to produce certain metadata fields for a type or types of documents, AstraZeneca shall so inform plaintiffs. If AstraZeneca determines that the production of certain metadata fields for a type or types of documents would be impracticable, unduly burdensome or unduly expensive, AstraZeneca shall so inform plaintiffs, and the parties shall promptly meet and confer on what should be done, without prejudice to AstraZeneca's right to object to production of such metadata fields or plaintiffs' right to move to compel such production.

CMO2, at p. 7.

On March 7, 2007, the Court further ordered as follows:

> Defendants shall complete initial document production under the agreed "custodial" designations by **June 30, 2007** using the previously agreed protocol. Documents should be produced at a steady rate, allowing completion by this deadline. Each "custodian" will provide an appropriate certification of completeness of the documents being produced, including specification of the databases and files reviewed.

March 7 Order (Doc. 173), at 1.

AstraZeneca consistently failed to meet the Court's schedule and format requirements. Consequently, on April 26, 2007, plaintiffs filed a related motion to compel. (Doc. 198.) AstraZeneca then agreed to remedy its failures, and plaintiffs withdrew their motion. (Doc. 221.) AstraZeneca failed to remedy the problems as promised. On July 3, Plaintiffs filed their motion for sanctions. (Doc. 256.)

The Court held an evidentiary hearing on July 26. On August 21, the Court issued its Order, finding AstraZeneca's conduct sanctionable, and questioning whether AstraZeneca had remedied the "profound" problems with its custodial document production through "re-

production efforts delivered to Plaintiffs on July 20, 2007." (Order, at 28.) The Court left for a later date its determination of the amount of sanctions.

## FACTS DISCOVERED SINCE THE SANCTION HEARING

The "re-production" AstraZeneca delivered to Plaintiffs on July 20 failed to cure the problems with custodial production. In fact, it created new problems, complicated others and failed to address even others. *See* September 17, 2007 Declaration of Jonathan Jaffe on Motion to Appoint Hitachi (Doc. 470), particularly ¶10.

On August 3, the Court issued an Order which required AstraZeneca to complete production of all custodial documents by October 1. AstraZeneca failed to meet that deadline.

In late October, AstraZeneca admitted that it could not fix the "profound" problems with its custodial production in a reasonable time. AstraZeneca informed the Court that it would start over, and re-produce everything in native format. (Transcript of Proceedings, November 15, 2007, 10:17-25.) Plaintiffs objected to AstraZeneca's proposal, because this change in approach was inconsistent with CMO2, and would cost plaintiffs millions of dollars in vendor costs. (*Id*., 27:11-29:2.) The Court acknowledged plaintiffs' position, indicating the issue of added costs associated with AstraZeneca's additional native production should be presented in connection with the upcoming sanctions hearing. (*Id*., 35:8-17; 38:19-39:3; November 16 Order (Doc. 695), at 2.)

Following AstraZeneca's repudiation of its obligations under CMO2, the Court ordered AstraZeneca to complete its re-production of documents (as well as many other things) by March 14, 2008. (*Id*.) Since then, AstraZeneca has informed Plaintiffs that it will re-produce virtually all of its custodial production (approximately 12.5 million pages) between late January and March 14, 2008: a period of about seven weeks.

5

## LEGAL ANALYSIS

Authority for the imposition of sanctions for AstraZeneca's failures to comply with Court orders and failures to make discovery was presented by the parties in connection with the July 26 hearing, and thoroughly discussed by the Court in its August 21 Order (e.g. at 10-11, 23-24.) Moreover, AstraZeneca admits responsibility for the repeated discovery failures which have resulted in substantially increased costs to plaintiffs. (Transcript of Proceedings, January 4, 2008, 19:1-20:24.)

## PLAINTIFFS' COSTS AND EVIDENCE

Plaintiffs have incurred (and will present evidence to support) substantially increased costs resulting from AstraZeneca's sanctionable conduct in three major areas:

1. <u>Increased IT Costs To Date.</u> Plaintiffs (through the IT Team) have incurred substantial additional costs – in time and expenses – in investigating and analyzing problems in AstraZeneca's custodial production, conferring with AstraZeneca representatives regarding the same, providing attorneys for plaintiffs with corrections or workarounds, and attempting to ameliorate the effects of the defective production. These costs do not include (but are over and above) the costs associated with customary preparation and maintenance of its systems in connection with the loading, hosting and support of a valid, usable TIFF and load file production.

2. <u>Judicial Costs.</u> Plaintiffs (through attorneys and IT Team) have incurred substantial additional costs – in time and expenses – in bringing about judicial resolution of AstraZeneca's failures in custodial production. These include time spent in conferences with AstraZeneca, preparation of court filings, preparation for and attendance at hearings, and associated expenses, including expert witness fees.

3. <u>Costs of Additional Native Production.</u> Plaintiffs will incur substantial costs associated with AstraZeneca's additional native production. At the outset of this litigation, AstraZeneca refused plaintiffs' request for native production, promising instead a functional, usable TIFF and load file production. Plaintiffs thus expended time and money in preparation and maintenance of its systems, and loading, hosting and supporting a production with "profound," incurable problems. Though "snakebit," plaintiffs must maintain the data already produced by AstraZeneca, as that data is and will continue to be evidence in this case, and plaintiffs must preserve the work product currently existing in their systems. Now, AstraZeneca will provide a ***new, additional*** (not "replacement") production in native format. Further, AstraZeneca will make that production in a time frame even more compressed than the last – between late January and mid-March – and concurrently with its production of databases, which alone will require substantial commitment of plaintiffs' IT resources. In order to handle the new, parallel production of data in such a significantly compressed timeframe, it was necessary for plaintiffs to contract with a vendor. These are additional costs and burdens to plaintiffs resulting from AstraZeneca's sanctionable conduct. They must be borne by AstraZeneca.

**EVIDENCE**

Plaintiffs will present evidence of the foregoing costs by declarations of witnesses from the various law firms representing plaintiffs (containing foundational material and authenticating exhibits) and the live testimony of Jonathan Jaffe.

**TIME ESTIMATE**

Given the limited nature of the proceedings, plaintiffs believe they can present their case in four hours or less. This estimate does not include time that may be needed to rebut

AstraZeneca's evidence or to address issues which plaintiffs have not anticipated as being relevant at this hearing.

Dated:  January 8, 2008                    LEVIN SIMES KAISER & GORNICK LLP


                                                             /s/ Dennis J. Canty_____
Lawrence J. Gornick (CA State Bar No. 136290)
Dennis J. Canty (CA State Bar No. 207978)
44 Montgomery Street, 36th Floor
San Francisco, CA  94104
Telephone:  415-273-8138
Facsimile:  415-981-1270
E-mail:        lgornick@lskg-law.com
                  dcanty@lskg-law.com