## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

In Re: Seroquel Products Liability Litigation

Case No.  6:06-Md.-1769-Orl-22
DAB

MDL Docket No.  1769

This Document Relates TO ALL CASES

## MDL PLAINTIFFS' MEMORANDUM AND MOTION  TO COMPEL ASTRAZENECA TO PRODUCE DOCUMENTS IMPROPERLY DESIGNATED AS PRIVILEGED AND DOCUMENTS FOR WHICH PRIVILEGE SHOULD BE DEEMED WAIVED AND FOR THE APPOINTMENTOF A SPECIAL MASTER TO REVIEW PRIVILEGE LOGS

The MDL Plaintiffs ("Plaintiffs"), by and through their undersigned counsel, hereby file this Motion pursuant to M.D.L.R. 3.01(a) to respectfully request this Court to issue an order pursuant to Fed.R.Civ.P. 26(c) to:

1.    Appoint a Special Master to review privilege logs, privilege logs redactions, redaction logs and any documents identified by Plaintiffs on Defendants AstraZeneca Pharmaceuticals LP's and AstraZeneca LP's (hereinafter collectively "AZ" or "Defendants") privilege log for specific privilege abuses and to fairly resolve AZ's privilege claims and other withholding and/or redaction of documents.  The Special Master shall also supervise document discovery with respect to claims of confidentiality, privilege, and the redaction of documents and when necessary, make recommended rulings for the Court's consideration on disputes that may arise in connection with privilege/redaction issues.

2.    Direct AZ to produce an adequate privilege log.

3.    Order that AZ has waived its privilege through production of insufficient privilege logs.

4.    Direct AZ to produce a copy of the documents that have been removed from the log *sub silentio*.

## OVERVIEW OF ISSUES

Plaintiffs respectfully request that this Court order the appointment of a Special Master to review documents withheld to-date and to assist with future privilege logs.[1] The appointment of a Special Master to handle discovery matters that can not be effectively and timely addressed by MDL federal district court judges is routine. *See* Manual for Complex Litigation §11.52 (4th ed.). For example, recently Judge Norton in *In re Bausch & Lomb, Inc. Contact Lens Solution Products Liab. Litig.,* MDL. No. 1785 in the federal district court in South Carolina, and Judge Freedman in the corresponding *New York State ReNu with MoistureLoc Litig.*, Index No. 766, 000/07 case, jointly appointed well-known New York evidence professor Dan Capra to review all privilege logs, redaction logs and specific withheld documents identified by plaintiffs in that litigation to the extent necessary to test and determine the propriety of redactions and to fairly resolve privilege claims. *See* November 20, 2007 Joint Order Appointing Special Master and October 18, 2007 Joint Conference transcript pages both attached hereto as Ex. A. The Renu Defendants and its counsel, which includes Dechert, consented without motion to this order in the Renu MDL less than two months ago. Inexplicably, AZ has not only rejected the concept of an Order here before this MDL, but actually rejected and criticized the Order Plaintiffs have proposed even

---

[1] This Motion focuses on the attorney-client privilege and not work-product, because the inadequacies of AZ's privilege log described herein apply equally to the work-product analysis. *See, e.g. Carnes v. Crete Carrier Corp.*, 2007 WL 2428661, at *4 (N.D. Ga. August 23, 2007) (stating a party asserting work-product must show "that the materials withheld are 1) documents and tangible things; 2) prepared in anticipation of litigation or for trial; and 3) ". . . were prepared by or for the party or the attorney asserting the privilege" with burden met through a detailed privilege log stating basis for each document in question). In addition, AZ incorrectly assumes that regulatory proceedings are considered "litigation" for the purposes of the work product doctrine. The work-product doctrine, however, "'does not protect materials assembled . . . *pursuant to regulatory requirements*, or for other non-litigation purposes.'" *In re Vioxx Prod. Liab. Litig.*, 2007 WL 854251, No. MDL 1657 at *3 (E.D. La. March 6, 2007) (quoting *Carroll v. Praxair, Inc.*, No. 05-307, 2006 WL 1793656, at *2 (W.D. La. June 28, 2006)). *See also Pacific Gas & Elec. Co. v. U.S.*, 69 Fed. Cl. 784, 790 (Fed. Cl. 2006) (stating same). **Simply put, AZ has not submitted sufficient information for Plaintiffs to evaluate its work-product claims.**

though it was word for word of the Order they consented to before Judge Norton.

The appointment of a Special Master is necessary to determine whether or not AZ is improperly asserting privilege to suppress crucial marketing and other data related to what AZ knew at various points in time about the dangers of Seroquel. Due to AZ's lack of compliance with even the most basic privilege log fundamentals, Plaintiffs cannot evaluate what percent of the 18,936 documents withheld to date on a 3,710 page log are privileged. The breaches of standard privilege protocols include a failure to identify the persons making or receiving an alleged protected communication in a large number of entries; failure to explain the relationship between persons making or receiving communications; and failure to identify or analyze individual e-mails within an e-mail chain or individually analyze documents attached thereto.

Many of these withholdings are simply improper. For example, it appears that AZ may be funneling documents through in-house counsel in an effort to keep such documents confidential. Plaintiffs' counsel recently came across an e-mail where one AZ employee specifically instructed another AZ employee to include an attorney recipient on e-mails, in what clearly looked to be an effort to create an attorney-client privilege related to communications related to the Metabolite Submission Team work. *See* Bates No. AZSER4233407 March 4, 2005 E-mail from John (Jack) Boorstein, AZ Regulatory Project Manager-Seroquel to Jeffrey M. Goldstein attached hereto as Ex. B. *See also* Bates No. AZSER4237367 titled "FDA Metabolite Submission Team Meeting Minutes" dated March 23, 2005 attached hereto as Ex. C, in which team members are told to send "contributions and comments" to a medical writer Mark Hughes at an outside organization and to copy Julia Manning (an AZ attorney) and mark it attorney-

client privilege.[2]    From these documents, it appears that the "contributions and comments" sought were not related to legal advice.[3]  Plaintiffs also have discovered an e-mail document marked "Legally Privileged and Confidential Attorney Client Communication" which had as attachments, a *published* article containing data related to an analysis of diabetes and Seroquel and a proposed *marketing* Q and A related to the same. See Bates No. AZSER4237432 July 13, 2004 Jeffrey Goldstein e-mail chain attached as Ex. E. (Notably, and illogically, neither the Koller article or marketing Q and A are attached sequentially to this e-mail in the log, thus it is impossible to ascertain whether the Koller article or Q and A's were produced as attachments to this e-mail or marked privileged.[4]

Such e-mails, in conjunction with the large number of studies and marketing materials withheld from production, see *infra* at 8-10, leaves open the question of whether AZ has wrongly withheld such critical studies or data.[5]  These documents are merely examples related to AZ's clearly inadequate privilege log discussed *infra*. Plaintiffs respectfully request that this Court should intervene to appoint a Special Master as the withheld documents may contain information crucial to upcoming custodial depositions, resulting in potential prejudice to Plaintiffs from AZ's failure to

---

[2] This document was found while reviewing a custodial file in the preparation for the deposition of the Director of Clinical Studies at AstraZeneca, Jeffery Goldstein

[3] *See also* Bates No. AZSER4219455 attached hereto as Ex. D (more Metabolite Meeting Minutes stating "check with Jeff F. regarding proper forwarding of attorney-client privileged communications").

[4] This document had as attachment "a publication by Koller . . . from the FDA which is the data (plus some further data) from her poster from the APA 03 and is an analysis of diabetes and Seroquel," also attaching a "master diabetes Q and A's. . .[as] updated for this paper" with a suggestion that this be issued "to the marketing companies." Despite how attachments to e-mails are usually assigned the next number after the e-mail, in Jeffrey Goldstein's custodial file, the Koller publication is numbered AZSER1524384 and a summary of the publication is AZSER4237903 attached in Exhibit H. A search for the diabetes Q&A document referenced in the e-mail suggests these documents might be AZSER4237926 or AZSER4237890. Thus the question existed whether these documents were produced independently, or as an attachment.

4

comply with necessary discovery on pivotal issues.

This multi-district litigation has already been the subject of two motions to compel discovery, and one sanctions order. *See* Doc. Nos. 198, 256. 393. A dispute about the proper scope of sanctions is ongoing. See Doc. Nos. 591, 604, 614. At this late stage AZ is producing the entire document production over, as a result of serious acknowledged problems with AZ's production to date. Despite the delays in the case already and how Special Masters are routinely appointed, including in the *Renu* MDL, where the *Renu* defense counsel – again, including the Dechert firm approved the identical Special Master proposal suggested here, AZ has rejected proposals made by Plaintiff's counsel to have a Special Master appointed by consent. Instead, as with many issues in this case, AZ seems to be taking entirely different and unwarranted positions in this MDL than defendants and counsel have in many MDLs before it, including insisting that the parties continue to meet and confer to resolve discovery disputes even though it is clear that such efforts have resulted in utterly no progress. This should be a routine appointment of a Special Master, but there seems to be a proclivity for protraction of discovery production, which to a great extent has prevented Plaintiffs from fully understanding the privilege log violations to this point.    Such delays are totally inapposite to this Court's mandate to manage the MDL in an effective and efficient manner.

## LEGAL STANDARDS

### I.     Waiver Of Privilege Through Production Of Insufficient Privilege Logs.

"The law is well-settled that, if a party fails to make the required showing, by not producing a privilege log or by providing an inadequate one, the court may deem the privilege waived." *See, e.g. In re Universal Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 671 (D. Ks. 2005). The Eleventh Circuit has adopted the following test for asserting a waiver on ground of insufficient privilege log in light of Fed. Rule Civ. P. 34:

> [the] degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged (where providing particulars typically contained in a privilege log is presumptively sufficient and boilerplate objections are presumptively insufficient); the timeliness of the objection and accompanying information about the withheld documents (where service within 30 days, as a default guideline, is sufficient); the magnitude of the document production; and other particular circumstances of the litigation that make responding to discovery unusually easy (such as, here, the fact that many of the same documents were the subject of discovery in an earlier action) or unusually hard.

*Universal City Development Partners Ltd. v. Ride,* 230 F.R.D. 688, 695 (M.D. Fla. 2005).

Cases suggest that a party's failure to provide an adequate identity of persons receiving communications and an adequate listing of personnel *alone* is sufficient to waive the attorney-client privilege. *In re Universal Fund Tel. Billing Practices Litig.*, 232 F.R.D. at 672. Plaintiffs contend that as set forth in detail herein, that this Court should order the production of any document withheld of the privilege log to-date without the identification of the parties or in which attorney involvement is not identified, as AZ has utterly no excuse for such *prima facie* insufficient log entries,

6

especially in light of AZ's overall conduct in discovery.

## II.    Attorney-Client Privilege

The attorney-client privilege "protects the disclosures that a client makes to his

attorney, in confidence, for the purpose of securing legal advice or assistance. *Cox v.*

*Administrator U.S. Steel & Carnegie,* 17 F.3d 1386, 1414 (11ᵗʰ Cir. 1994) (citations

omitted).[6]    Significantly "[t]he attorney-client privilege does not apply when an

attorney is asked for business advice rather than legal advice." *In re Tom's Foods Inc.,*

345 B.R. 795, 798 (Bkrtcy. M.D. Ga. 2006) (citing cases). In terms of the privilege log

analysis, there is no presumption that everything in-house counsel comments upon is

legal advice. *See In re Vioxx Products Liability Litig.,*   501 F.Supp.2d 789, 806

(E.D.La. 2007). In fact, in the in-house context, courts tend to require a clear showing

that an attorney was acting in his or her professional legal capacity before shielding

documents behind the privilege because

> [the]  fear that businesses will immunize internal communications
> from discovery by placing legal counsel in strategic corporate
> positions and funneling documents through counsel (*viz.,*
> addressing documents to the lawyers with copies being sent to the
> employees with whom communications were primarily intended).

*Id.* at 797 (noting exacerbation of this problem by the advent of e-mail communications

which has made it "so convenient to copy legal counsel on every communication that

---

[6] The full test for invoking the attorney-client privilege in the 11ᵗʰ Circuit is that the party seeking to assert the privilege needs to establish: "(1) the asserted holder of the privilege is or sought to become a client, (2) the person to whom the communication was made is the member of a bar of a court, or his subordinate, and in connection with this communication is acting as a lawyer, (3) the communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing primarily either an opinion on law or legal services or assistance in some legal proceeding, and not for the purpose of committing a crime or tort, and (4) the privilege has been claimed and not waived by the client." *Carners  v. Crete Carrier Corp.,* 2007 WL 2428661, at * 1-2 (N.D.Ga. August 23, 2007) (citing *United States v. Noriega,* 917 F.2d 1543, 1550 (11th Cir. 1990)).

might have been seen as having some legal significance"). Thus, "merely because a legal issue can be identified [in a document] that relates to on-going communications does not justify shielding [such] from discovery." *In re Vioxx Products Liability Litig.*, 501 F.Supp.2d at 798. Instead "[t]he lawyer's role as a lawyer must be primary to her participation." *Id.* at 798-99; 809-10 (no protection related to comments and edits by a company's in-house lawyers of scientific reports, articles accepted for publications, and research proposals when addressed to non-lawyers for general review as well). *See also Burton v. R.J. Reynolds Tobacco Co.,* 200 F.R.D. 661, 669-673 (D.Kan. 2001) (draft letters and documents forwarded from non-attorneys to attorneys for review and comment similarly not protected when related to public relations and public image issues; documents drafted by attorneys related same were not of legal nature and not protected).

## III.  Privilege Log Requirements

The Eleventh Circuit courts require a party withholding documents because an alleged privilege to provide a privilege log which fully complies with the requirements of Federal Rule 26(b)(5)(A). *Williams v. Taser Intern., Inc.* 2007 WL 1630875, at \*5 (June 4, 2007 N.D. Ga. 2007). Specifically, Fed.R.Civ.P. 26(b)(5) states:

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, *will enable other parties to access the applicability of the privilege or protection.*

Fed.R.Civ.P. 26(b)(5) (2007) (emphasis added).

A blanket claim of privilege is insufficient; a log or index of materials withheld

8

under a claim of privilege must be provided. *Universal City Development Partners Ltd.*
*v. Ride & Show Engineering Co.,* 230 F.R.D. 688, 695 (M.D. Fla. 2005) (finding log
that failed to identify the role of many of the recipients insufficient to assess the claim
of privilege). The key is that "[t]he information provided [in a privilege log] must be
sufficient to enable the court to determine whether each element of the asserted
privilege or protection is satisfied." *In re Universal Serv. Fund. Tel. Billing Practices*
*Litig.,* 232 F.R.D. 559, 673 (D.Kan. 2005). Indeed, "[a] failure of proof as to any
element of the privilege causes the claim of privilege to fail." *Jones v. Boeing Co.,* 163
F.R.D. 15, 17 (D. Kan. 1995).

## DISCUSSION

### I.    The Privilege Log

Although Defendants' log has provided notice of the documents that it has
withheld, the log does not comply with the requirements established in Case
Management Order No.  2 for the production of a privilege log[7] and is woefully
incomplete under general federal privilege log law. The log is so inadequate that
practically every document on the log demonstrates the deficiencies.[8] Below is a chart
breaking down the Privilege Logs produced to date (excluding the one served only 3
days prior to this motion), which shows the prevalent problems on the log, including a
large number of unidentified authors and documents withheld from categories of

---

[7] See CMO 2,  Doc. No. 129 at 9 -10, requiring AZ to produce metadata fields related to all documents
which would include such information as author and recipients; cc(s); bcc(s); and attachment
information.   The privilege log was further required to be filed "as soon as practical, but in no event
more than 120 days after [AZ's] first production of documents for which privilege is asserted to apply
and then continuing on a rolling basis thereafter." *Id.* at 12.

[8] AZ ultimately offered to add some information to the log, but their offer could have cured little and AZ
sought it in exchange for Plaintiffs dropping their request for a Special Master at this time.

documents (agendas, calendar entries, draft documents, internal training materials, study protocols, facsimile cover sheets etc.):

| Document Type | Count | Unidentified Author |
|---|---|---|
| Agenda | 68 | 30 |
| Agreements | 295 | 188 |
| Calendar entry | 59 | 12 |
| Draft agenda | 57 | 27 |
| Draft internal training materials | 497 | 360 |
| Draft labeling | 267 | 188 |
| Draft letter | 650 | 344 |
| Draft marketing materials | 646 | 482 |
| Draft memorandum | 449 | 277 |
| Draft minutes | 97 | 40 |
| Draft publication | 219 | 129 |
| Draft report | 890 | 492 |
| Draft slides | 451 | 305 |
| Draft study protocol | 105 | 58 |
| Email | 11,353 | 64 |
| Fax cover sheet | 5 | |
| Internal training materials | 208 | 144 |
| Invoice | 3 | 3 |
| Labeling | 18 | 12 |
| Letter | 90 | 19 |

| | | |
|---|---|---|
| Marketing materials | 90 | 47 |
| Memorandum | 869 | 294 |
| Minutes | 256 | 105 |
| Note(s) | 147 | 93 |
| Report | 790 | 521 |
| Slides | 331 | 161 |
| Study protocol | 26 | 17 |
| | **18,936** | **4,412** |

In sum, AZ has withheld 4,412 documents without identifying the author of the documents, **including documents related to the key issues of this lawsuit such as labeling, marketing materials, study protocols, internal training materials, and draft publications.** Such documents would not normally be considered privileged, or if privileged information was contained therein, such documents would normally be produced with the privileged information redacted. *See, e.g.  P & B Marina, Ltd. v. LoGrande*, 136 F.R.D. 50, 54, 56  (E.D.N.Y. 1991) (facsimile transmittal memoranda or drafts of documents sent to third parties are not subject to attorney-client privilege without a showing that such contain legal advice or disclose privileged matters) (citing cases stating same).  As explained below in more detail, AZ has only provided insufficient boilerplate explanations for its withholding of documents.  In addition, a recent Excel analysis performed for the purpose of this motion led to the startling discovery that AZ has released some documents from the privilege log, **in that a total of 396 documents were listed on prior privilege logs, but not on the last,** proving

—

that AZ has categorized non-privileged documents as privileged.[9]   These documents that have disappeared from the log without notification to Plaintiffs that they were being removed include draft reports,[10] internal training materials,[11] draft labeling,[12] draft study protocols,[13] draft slides,[14] meeting minutes,[15] emails,[16] and "notes"[17]---all topics of essence to this litigation.  While we applaud AZ's re-consideration of these 396, the question of course is begged:  Why were they on the log?  Errors can happen but even a 10% error rate is prejudicial.  Moreover, the mere fact that there may be errors[18] or even differences of opinion on whether a document should be privileged or not is precisely why a Special Master is appropriate.  The question of whether these documents have actually been produced elsewhere and what they are numbered in the "main" production is another problem.  This Motion asks that Defendants be directed to produce a copy of all documents removed from the privilege log to date.

---

[9] However, because AZ has intractably used *different* Bates ranges for documents on the privilege log versus produced documents which wrongfully obscures where these documents were from and how they were grouped prior to review, Plaintiffs have no way of determining whether these missing documents have now been produced.

[10] *See, e.g.* Ex. H at Bates Nos. AZSERP0000512-529; AZSERP0015066-15093 (on September 18, 2007 and June 19, 2007 log, but not on October 22, 2007 log).

[11] *See, e.g.* Ex. H at Bates Nos. AZSERP0011736-11748 (on July 24, 2007 log, but not on October 22, log).

[12] *See, e.g.* Ex. H at Bates Nos. AZSERP0002006-2036 (on June 19, 2007 log, but not on October 22, 2007 log).

[13] *See, e.g.* Ex. H at Bates Nos. AZSERP0017949-56 (on September 18, 2007 log, but not on October 22, 2007 log).

[14] *See, e.g.* Ex. H at Bates Nos. AZSERP0002513-2515 (on July 24, 2007 log, but not on October 22, 2007 log).

[15] *See, e.g.* Ex. H at Bates Nos. AZSERP0010364-365 (on September 18, 2007 log, but not on October 22, 2007 log).

[16] *See, e.g.* Ex. H at Bates Nos. AZSERP0015062-15065; AZSERP0017973; AZSERP0017996 (on June 19, 2007 and September 18, 2007 log, but not on October 22, 2007 log).

[17] *See, e.g.* Ex. H at Bates Nos. AZSERP0000512-529 (on September 18, 2007 privilege log, but not on October 22, 2007 log).

[18] Somewhat of an answer here is that AZ used hundreds of "contract" lawyers to conduct document review and make these (at least initial) decisions.  While these lawyers are undoubtedly competent young lawyers, they are often just out of school and thus relatively inexperienced. Noteworthy, is that these lawyers do not meet the hiring criteria for a firm like Dechert.

## II.    **Deficiencies In Privilege Logs Submitted By Defendants**

### A.    **Specific Examples.**

Below are only a few of many potential examples of AZ's inadequate privilege

logs.    Whatever the cause, these examples result in further denial of important

discovery related to the crucial issues in this MDL.    Such discussion is meant to be

illustrative.    By limiting the discussion to these issues, Plaintiffs are not alleging that

these issues are the only issues that exist or that such issues are the most important.    In

fact, the dismal status of the log makes it difficult to discern what the most important

deficiencies may be.

#### 1.    **"Marketing Materials."**

One category of documents withheld on attorney-privilege and work-product

grounds are documents identified under "Doc type" as "Marketing materials,"[19]   often

times with an unidentified author, with no recipients listed, apparently from multiple

sources—***none or very few of which are identified as attorneys.***   *See, e.g.* Ex. H at

Bates Nos. AZSERP0002356;  AZSERP0002357;  AZSERP0007663 ("Marketing

materials" document listed as attachment to e-mail sent by in-house to nine recipients

and six cc's—none of which were identified as attorneys). [20]     Because marketing

---

[19] The descriptions of these "marketing materials" merely state that they "provide . . . information disclosing legal advice about marketing, adverse events and product promotion," or similarly legal advice about "development and testing, marketing, adverse events, clinical trials, laboratory research and product promotion" or about "labeling and marketing and product promotion," *see*   Bates No. AZSERP0009857-58, which is no help to understanding why such alleged legal information (assuming it was communicated by an attorney and hence protected) simply could not be redacted.

[20] While Plaintiffs should not have the tedious job of analyze the privilege log for such examples, other similar documents include Ex. H at Bates Nos. AZSERP0011103 ("marketing materials" attachment to e-mail sent from non-attorney to two recipients: one who was an attorney and the other not);
AZSERP0020567-574 ("marketing materials document without any author named, nor any recipients listed as document "provid[ing] . . .legal advice about marketing and product promotion");
AZSERP0021138-1147 (same with unidentified author and recipients listed as document " "relat[ing] to

materials are important to show what AZ knew about Seroquel's dangers at different points in time, and how such knowledge translated into AZ's specific marketing plans, Plaintiffs respectfully request an Order directing production of all documents withheld to date in which attorney involvement is not identified. Plaintiffs further request that this Court appoint a Special Master to review other marketing materials with identified attorney involvement to determine whether the lawyer(s) were acting within a legal, and not mixed capacity. *See, e.g. In re Vioxx Products Liability Litig.*, 501 F.Supp.2d at 809 -10 (establishing substantive guidelines for withholding of e-mail attachments and electronic line edits on documents, including a rule that the "initial conveyance of the documents and attachments to both lawyers and non-lawyers for both legal and non-legal purposes *prevents* documents from being primarily for legal advice and assistance, and therefore from being protected by the privilege"). In addition, if any possible attorney-client privilege is found, the Special Master should determine whether withheld marketing materials could be produced by redacting the privileged comments, and establish representative guidelines for when redaction, versus withholding should occur.

## 2. Draft Reports and Draft Memoranda.

A second kind of "Doc type" frequently listed on the privilege log is "Draft report" or "Draft memorandum." *E.g.* Ex. H at Bates Nos. AZSERP0002694 (draft memorandum); AZSERP0002701 (same). As with the other kinds of documents mentioned *supra,* the descriptions of these documents on the privilege log are insufficient as often times only non-attorney authors are listed **with no recipients listed at all** or with no attorneys listed as recipients or cc'd. *E.g.* Ex. H at Bates Nos.

---

legal advice about marketing, adverse events and communications with health care professionals:")

AZSERP0002694 (no recipients listed; draft memorandum withheld under attorney-client privilege as "relat[ing] to legal advice about labeling and marketing, adverse events and communications with health care professionals");   AZSERP0015164 – AZSERP0015173 (no attorney recipients; draft report withheld under attorney-client privilege as "relat[ing] to legal advice about development and testing; adverse events and clinical trials").    As with marketing materials, Plaintiffs respectfully request an Order directing the production of those draft reports or memorandum withheld to-date in which attorney involvement is not identified.    Plaintiffs further request the appointment of a Special Master to review a representative example of draft reports or memorandum with identified attorney involvement to determine whether such documents were properly withheld on the grounds that the lawyer(s) were acting within a legal capacity, and if work product is asserted, whether the withheld documents meet the test for the same, taking into consideration that documents prepared for regulatory purposes are normally not protected by the attorney-client privilege. *See, e.g. In re Vioxx Litig.*, 2007 WL 854251, No. MDL 1657, at * 3 (E.D. La. March 6, 2007) (citing *Carroll v. Praxair, Inc.*, No. 05-307, 2006 WL 1793656, at *2 (W.D. La. June 28, 2006).   In addition, if any possible privilege is found, such Special Master should determine whether withheld draft reports and memorandum could be produced by redacting the privileged comments, and establish representative guidelines for when redaction, versus withholding should be done.

### 3.   Internal Training Materials and Draft Internal Training Materials.

As with the earlier categories, AZ has withheld entire documents which it has characterized as "Internal training materials" or "Draft training materials" with non-

15

attorney authors and no recipients listed on the alleged grounds that such documents are protected under the attorney-client privilege as "provid[ing] information involving development and testing, potential liability to third parties, adverse events and clinical trials," or as "legal advice about potential liability to third parties and clinical trials," without any kind of explanation by log or affidavit as to why the communication is allegedly privileged. *E.g.* Ex. H at Bates Nos. AZSERP0038984-AZSERP0038986; AZSERP0038988-AZSERP0038990. Nor was the difference between draft internal training materials and internal training materials explained, nor why the alleged privileged communication could not have been redacted and the rest of the training materials provided. *See, e.g.* Bates Nos. AZSERP0002718; AZSERP0002733-AZSERP0002735; AZSERP0002741; AZSERP0002841.[21]   Plaintiffs respectfully request this Court to order the production of those draft reports or memorandum withheld to date in which attorney involvement is not identified. Plaintiffs respectfully request that other withheld documents be reviewed by a Special Master.

### 4.   Study Protocols and Draft Study Protocols.

AZ's view seems to be if clinical study protocols "were reviewed" by counsel, such documents were privileged. Letter from M. Raven, Esq. to P. Pennock Esq. dated October 16, 2007. (hereinafter "The October 16th Letter") attached hereto as Ex. F at 4, Pt. V.1.   Again, if every document sent to an attorney is deemed to be privileged because of such transmission, there would be no limitation on privilege doctrines. In addition, AZ has claimed that draft protocols are "heavily lawyered" because "they

---

[21] As with the other examples, numerous additional similar documents exist. *See, e.g.* Bates Nos. AZSERP0002835, AZSERP0002848 (mentioning clinical trials); AZSERP0002854 (same); AZSERP0002856; AZSERP0002858

contain Informed Consent Forms for the participants and Investigator Agreements and often present significant legal issues." *Id.* at Pt.V.2. AZ does not explain why such legal issues simply could not be redacted. Given that the study protocols, both proposed and rejected, would play a central role in showing what AZ knew about Seroquel, including what it choose not to study, AZ simply should not be allowed to hide documents in such a flimsy log. Therefore, Plaintiffs respectfully request that this Court order the production of those draft study protocols and draft study protocols withheld to date in which attorney involvement is not identified. Plaintiffs further respectfully request that a representative example with alleged attorney involvement be reviewed by a Special Master as discussed above related to the other examples.

## B. AZ Has Provided Insufficient Information Related To The Persons Making Or Receiving The Alleged Communications For AZ's Privilege Log To Comply With Rule 26(b)(5).

The attorney client privilege only protects communications between clients and counsel. Despite the fundamental rule that a party must provide sufficient information for the court and opposing party to be able to evaluate the asserted privilege, *see, e.g. Universal City Development Partners Ltd.*, 230 F.R.D. at 695, as demonstrated by the chart above, AZ has not provided the most basic information: the identity of the parties to a communication, thus rendering any attorney-client privilege analysis impossible. For example, AZ inexplicably has even listed one e-mail as being from an "unidentified" author to two non-attorneys as being protected by the attorney-client privilege because it allegedly reflects activities performed at the request of legal counsel about development, testing, and adverse events, without explaining the attorney involved. *See* Ex. H at Bates No. AZSERP0060984. Such entry is inadequate due to

17

failure to contain basic information such as identity of parties claimed to be part of communication. *See, e.g. Muro v. Target Corp.*, 243 F.R.D. at 304 (finding inadequate log due to failure to identify attorney); *Heartland Surgery Specialty Hospital LLC v. Midwest Division, Inc.*, 2007 WL 625809, at \*5-6 (D. Kan., Feb. 23, 2007) (finding privilege log insufficient under Rule 26(b)(5) when court was unable to determine who created the document, by or for what purpose, or when; requiring detailed privilege log sufficient to determine whether electronic material sought to be protected was a confidential communication from a client to an attorney in order to obtain legal advice or was given advice by an attorney in his capacity as legal advisor).

AZ similarly has designated a number of e-mails authored by non-attorneys with non-attorney recipients (or mixed recipients) as protected under the attorney-client privilege as allegedly providing "information" involving legal issues without any explanation of the relation between the parties and why such communications between non-attorneys is protected as privileged. *See, e.g.* Ex. H at Bates Nos. AZSERP0000853-AZSERP0000854 (e-mail from non-attorney to non-attorney "which provides information involving legal advice about potential liabilities, adverse events, distribution and litigation defense issues"); AZSERP0000865–AZSERP0000866 (e-mail authored by non-attorney sent to seven non-attorneys claimed to be privileged without explanation of relationship between these non-attorney recipients and their roles); AZSERP0009857–AZSERP0009858 (withheld "marketing material" document listed as attachment of e-mail sent by a non-attorney to twenty-six recipients and cc's only one of which is on AZ's attorney list); AZSERP0005461–AZSERP0005501 (e-mails between non-attorneys without any explanations of their roles and nature of

18

communication other than withheld as "provid[ing] information involving legal advice about corporate legal issues; commercial litigation and litigation defense issues"); AZSERP0015829–AZSERP0016219 (e-mail from non-attorney to non-attorney withheld as "request[ing] information involving legal advice about potential liability to third parties, adverse events, distribution and litigation defense issues").[22] AZ actually designated several e-mails sent from a non-attorney to the "GFR Help desk" as a privileged attorney client communication with the same boilerplate "information involving legal advice about potential liabilities, adverse events, distribution, and litigation defense issues" explanation, without explaining how such communication could potentially be considered legal advice when it is a request for information between non-attorneys. See Ex. H at Bates Nos. AZSERP0000873-AZSERP0000891; AZSERP0015681–AZSERP0015892. While such boilerplate withholding is most likely the result of AZ's decision to only provide author and receipt information related to the last e-mail on a e-mail strand or chain, instead of providing information sufficient for an analysis of individual e-mails and attached documents on such chains, the result is clear: AZ has chosen not to provide the requisite background information necessary to evaluate whether such communications between non-attorneys are protected, much less has AZ explained why any legal advice could not be redacted and non-legal parts of the e-mail provided, thus has failed to meet its burden of showing privilege. *See, e.g. Universal City Development Partners Ltd. v. Ride & Show Engineering Co.,* 230 F.R.D. at 695 (finding log that failed to identify the role of many of the recipients insufficient

---

[22] While again this is not made to be an extensive list, similar examples are Ex. H at Bates Nos. AZSERP0002854; AZSERP0002856; AZSERP0002858; AZSERP0000897–AZSERP0000911; AZSERP0000912-AZSERP0000914; AZSERP0000963–AZSERP0001510; AZSERP0015659–AZSERP0015673.

to assess the claim of privilege).[23]

### C.    AZ Has Provided Insufficient Information Related To Whether The Communication Is Legal Versus Business or Mixed Purposes.

Many cases have stated that when a corporation simultaneously sends an e-mail or document to both non-attorneys and attorneys, a corporation usually cannot claim that the document serves the primary purpose of being for legal advice or purpose because the communication served both business and legal purposes. *See, e.g. In re Vioxx Products Liab. Litig.*, 501 F.Supp.2d at 798-99; 809-13 (no presumption communication with in-house counsel is legal advice; suggesting substantive guidelines); *United States v. Chevron Corp.*, No. C 94-1885 SBA, 1996 WL 444597, at * 2   (N.D. Cal. May 30,  1996) (when document is prepared for simultaneous review by non-legal as well as legal personnel, it is not considered to have been primarily prepared to seek legal advice and the attorney-client privilege does not apply); *United States v. IBM,* 66 F.R.D. 206, 213 (S.D.N.Y. 1974) ("If the document was prepared for purposes of simultaneous review by legal and non-legal personnel, it cannot be said that the primary purpose of the document is to secure legal advice).    Yet despite withholding numerous documents that have non-legal purposes (labeling, marketing, study protocols), AZ has not provided more than boilerplate explanations as to why such would be privileged.  Specific examples are discussed *infra* in Section D, which, show that such documents must be deemed to be non-privileged.

---

[23] In this respect it should be noted that in terms of communications within a corporation, the attorney-client privilege requires proof that the dissemination of communication between a corporation's attorney and an employee of the corporation is "directly related" to that employee's employment duties such that the employee is "directly related" or "directly concerned" with the subject matter of the communication. *Muro v. Target Corp.*, 243 F.R.D. at 306 (noting privilege can be waived if communication shared with those employees who did not need access to the communication).   To date AZ has not provided any affidavits in support of its privilege logs.

**D.    AZ's Privilege Log Fails To Identify Or Analyze Individual E-Mails Within An E-mail Chain Or Individually Analyze Documents Attached Thereto.**

AZ acknowledged in the October 16th Letter, that the AZ privilege log "as generated from AZ's database only shows the sender and recipient(s) for the most recent e-mail," but claims that "in the overwhelming majority of instances, there are lawyer senders and recipients earlier in the chain."  October 16th Letter, See Ex. F at 6, Pt. X.  This may be true, but it in no way satisfies the basic requirement that a privilege log must provide sufficient information to allow an assessment of the validity of the asserted privilege.  *See, e.g. In re Universal Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 672 (D. Ks. 2005) (failure to provide adequate identity of persons receiving communications alone renders privilege log insufficient).  In addition, AZ claims that remaining e-mails in which no author was identified, a request for legal advice or work product was disclosed, but that is not the case. See October 16th Letter attached hereto as Ex. F at 6, Pt. X.   Regardless of whether this is true, this does not explain why AZ withheld all of the individual e-mails in a chain instead of just redacting the privileged e-mail, and does not excuse AZ's failure to simply not disclose sufficient facts for these withheld e-mails to comply with the requirements for privilege logs.  *See, e.g.  In re Vioxx Products Liability Litigation.*, 501 F.Supp.2d at 813 n.33 (privilege logs deficient when party "asserted privilege for an entire e-mail thread but only described the last message in the thread-substantively often the least important of the string of messages" ); *Muro v. Target,* 243 F.R.D. at 306-307, 310   (party asserting privilege must demonstrate elements of privilege have been satisfied as to each e-mail withheld and requiring production because failure to provide factual information sufficient to

21

evaluate privilege); *Universal Service,* 232 F.R.D. at 672 (declining to treat entire stand as single communication on log); *Stafford Trading, Inc. v. Lovely,* No. 05 C 4868, 2007 WL 611252, at *8 (N.D. Ill. Feb 22, 2007) (party's failure to identify and describe nature of earlier e-mail within e-mail string resulted in order to produce entire document). Courts correctly reason that "such [lack of identity and description of individual e-mails] fails to disclose important information about what is being withheld from production." *Muro v. Target,* 243 F.R.D. at 306-307. [24]

Related to Metabolite Submission Team e-mails and documents already discussed in the Requested Relief Section, *supra* at 3-4, Plaintiffs' concern is that AZ appears to be taking the position that documents sent to in-house or outside counsel may be privileged because the mere act of sending the document. In this respect, it should be noted that AZ's counsel's position in the October 16th Letter was that "if such draft were sent to a lawyer for his or her legal advice on the draft, then we would regard it as privileged, and in some cases it might be work-product." October 16th Letter, See Ex. F at 1-2, Pt. I.1.[25] Plaintiffs respectfully disagree with this contention as it is practically hornbook law that documents sent to an attorney for review do not become privileged through the mere act of sending a document to an attorney. *See, e.g. Sneider*

---

[24] AZ's proposal to add an extra column to further explain attorney involvement, see October 16th Letter attached hereto as Ex. F at 5 Pt. VIII.1 and 6 Pt. X. will not cure the deficiencies in AZ's privilege log because Plaintiffs are entitled to know what the non-privileged e-mails are involved within a string involved.

[25] For example, when asked in an e-mail by Plaintiffs' counsel to explain why the documents listed in the Bates range AZSERP0009452-89 were marked privileged, AZ's counsel explained that these documents were attachments to an e-mail chain expressing desire of AZ senior counsel to review materials in preparation for a meeting, see October 16th Letter attached hereto as Ex. F at 7, Pt. VII.1, but at no point did AZ (1) state that the advice that AZ counsel would be giving was legal, as opposed to corporate advice, or (2) explain how or why these attachments themselves would be deemed communications that satisfy the requirements of the attorney-client privilege. Thus Plaintiffs have no way of asserting whether this document was marked privileged simply because it was attached to an e-mail sent to an attorney for review.

22

*v. Kimberly Clark Corp.*, 91 F.R.D. 1, 4 (D.C. Ill. 1980) ("Attachments which do not, by their content, fall within the realm of the privilege cannot become privileged by merely attaching them to a communication with the attorney. To permit this result would abrogate the well established rule that only the communication, not the underlying facts, are privileged") (citing 2 J. Weinstein and M. Berger, Weinstein's Evidence §503(b)(04) at 503-37 (1976 ed.)); *Georgia Cash America, Inc. v. Strong*, 649 S.E.2d 548, 555 (Ga. App. Court. 2007) ("GCA's suggestion that the fact that an attorney might have reviewed or commented upon a document automatically protects the document under the attorney-client privilege is unsupported by any authority and, in fact, conflicts with prior opinions by this Court.").

## CONCLUSION

For all of the above reasons, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion and order the relief requested in this Memorandum.[26]

---

[26] Plaintiffs have timely objected to the privilege log. Under CMO 2, AZ was required to "provide a privilege log in compliance with the Federal Rules of Civil Procedure . . . in no event more than 120 days after its first production of documents for which privilege is asserted to apply and then continuing on a rolling basis thereafter." Doc. No. 129 at 11-12. According to CMO 2, the applicable custodial files were supposed to be produced to Plaintiffs on a rolling basis starting in January 2007. AZ did not actually start producing documents until February. The first privilege log was not produced until March 15, 2007. As is well known to this Court, the actual document production had massive technical problems on which the Plaintiffs were (and still are) concentrating, thus the deficiencies in the privilege log did not come to Plaintiffs' immediate attention. Plaintiffs have received six privilege log productions to date. Yet at no time did AZ inform Plaintiffs that they were simply adding documents to the same privilege log, therefore leading to two weeks of confusion in Plaintiffs' effort to analyze these documents. Finally, the October 16, 2007 Letter attached hereto as Ex. F responding to an e-mail sent by Plaintiffs' counsel related to issues that Plaintiffs' were having with the privilege log, *see* October 3, 2007 E-Mail from Paul J. Pennock, Esq. to Steven J. McConnell Esq. (herein "Pennock Email") attached hereto as Ex. G, AZ counsel informed Plaintiffs' counsel that each submitted log was intended to supersede the log that proceeded it. Later e-mails and multiple telephone attempts to work out the privilege log dispute and obtain the appointment of a Special Master have triggered this Motion.

## M.D.L.R. 3.01(g) CERTIFICATE OF CONFERENCE

Pursuant to M.D.L.R. 3.01(g) it can be certified to the court that the Plaintiffs in good faith conferred with the Defendants on multiple occasions, but they oppose this Motion. Plaintiffs contacted the Defendants as far back as September 17, 2007 via e-mail and the parties have conducted three or four, one or two hour conference calls over the past 4 months, including a most recent one on January 7, 2008, in order to resolve this issue without burdening the Court with motion practice.  As indicated earlier in Exhibits F and G, there have been detailed emails between the parties, but there has been no agreement on this matter. Plaintiffs are forced to file this Motion after over 4 months of a stalemate, due to the ongoing prejudice they face in this litigation.

Dated: New York, New York
January 10th, 2008.

                                        /s/ Paul J. Pennock
                                        Paul J. Pennock
                                        *Plaintiffs' Co-Lead Counsel*
                                        WEITZ & LUXENBERG, P.C.
                                        180 Maiden Lane
                                        New York, NY 10038
                                        (212) 558 - 5500
                                        ppennock@weitzlux.com

## CERTIFICATE- OF SERVICE

I HEREBY CERTIFY that, on January 10, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system through which all participating parties are deemed served. I further certify that, by using the CM/ECF, the foregoing has been served on plaintiffs' liaison counsel, who is charged with serving any non-CM/ECF participants on the attached Service List

/s/ Paul J. Pennock
Paul J. Pennock
***Plaintiffs' Co-Lead Counsel***
WEITZ & LUXENBERG, P.C.
180 Maiden Lane
New York, NY 10038
(212) 558 - 5500
ppennock@weitzlux.com