UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

ORLANDO DIVISION

| | |
|---|---|
| In Re:  Seroquel Products Liability Litigation<br>MDL Docket No.  1769<br><br>DOCUMENT RELATES TO ALL CASES | Case No. 6:06-md-01769-ACC-DAB<br><br>**STATEMENT OF COMPLIANCE WITH**<br>**JANUARY 15, 2008 ORDER** |

**INTRODUCTION**

Plaintiffs file this response to AstraZeneca's "Notice of Non-Compliance." AstraZeneca's "Notice" omits the material information provided by plaintiffs on January 16, and is thus misleading.  As more fully described below, plaintiffs have complied with the Court's directives, and have made complete disclosures of the witnesses and evidence to be proffered on January 28.

**PROCEDURAL POSTURE**

The format and scope of the January 28 hearing was discussed by the parties and determined by the Court at the status conference held Friday, January 4.  Plaintiffs were directed to provide a statement of the format and scope of that hearing within two business days – by Tuesday, January 8.  Though plaintiffs could not possibly marshal all of the evidence for the hearing in that timeframe, plaintiffs filed a statement indicating the narrow scope of the hearing and identifying the three major categories of evidence to be presented: increased IT costs,

1

judicial costs, and vendor costs associated with AstraZeneca's additional, native production. (Doc. 786.)

AstraZeneca was directed to meet and confer with plaintiffs before filing a response to that statement by Friday, January 11. AstraZeneca failed to meet and confer in good faith, waiting until the afternoon (ET) of January 11 before sending an email mentioning unspecified "serious objections." (Exhibit A).[1]

During the teleconference with the Court on January 15, the Court ordered plaintiffs to serve upon AstraZeneca – by January 16, the following day – witness disclosures, an exhibit list, copies of exhibits to be proffered at the January 28 hearing, time and expense records, requests for proposals, its vendor agreements, and responses to interrogatories, requests for production and requests for admission. On the afternoon of January 16, the parties exchanged email regarding the method of delivery of these documents. Plaintiffs' counsel (with offices in San Francisco) inquired as to whether AstraZeneca's counsel would accept delivery of the necessary materials at its San Francisco offices. (Exhibit B). Despite the fact that materials delivered to Dechert's San Francisco office could simply have been "downloaded to [its] network" for access by east coast attorneys, AstraZeneca refused to accept this method of delivery. (Exhibit C.)

Plaintiffs thus delivered the materials by email, beginning at approximately 4:45 ET, and completed email service by 5:30 ET on January 16.

On January 17, plaintiffs offered their only live witness, Mr. Jaffe, for deposition in Orlando on January 24. (Exhibit D.)

---

[1] AstraZeneca's counsel were aware that Mr. Gornick was in Court in another matter during this time, and that Mr. Canty was then engaged with the SM-ESI.

On Friday, January 18, at 5:00 ET, AstraZeneca served various notices of deposition of declarants (without first making application to the Court as discussed during the January 15 telephone hearing). (Transcript, Exhibit E). AstraZeneca's proposed discovery also includes entry to the offices of plaintiffs' counsel to inspect its computer systems, as well as a subpoena to plaintiffs' vendor. (Exhibit F.)

Plaintiffs will continue to meet and confer with AstraZeneca regarding appropriate discovery in advance of the hearing. However, as of this date, AstraZeneca has articulated no basis for the invasive discovery it seeks. (Exhibit G.)

AstraZeneca filed its "Notice of Non-Compliance" on Saturday, January 19.

In short, AstraZeneca has no valid complaint regarding plaintiffs' disclosures. Its requested discovery appears designed to create a dispute that can be used in support of its efforts to obtain a continuance of the January 28 hearing.

## ANALYSIS

As set forth below, plaintiffs' disclosures of witnesses and evidence fully comply with the Court's January 15 Order.

> **A. Plaintiffs' Witnesses** – Plaintiffs shall disclose to AstraZeneca by 5:00 p.m. EST on **January 16, 2008** each of their witnesses (both fact and experts, if any), separately identifying those who will testify live and those who will testify by declaration. If a witness is to testify live, the disclosure of each witness must include a good-faith but brief description of the subject matter of the witness's testimony.

Order at p. 1

Plaintiffs served upon AstraZeneca a witness statement, identifying each of their witnesses, and separately identifying those testifying live and by declaration. (Exhibit H.) Plaintiffs provided a declaration for every witness. Further, for Mr. Jaffe, plaintiffs' only live

witness, plaintiffs provided a good faith but brief description of the subject matter of his testimony:

> The substantial additional cost in investigating and analyzing problems in AstraZeneca's custodial production, conferring with AstraZeneca representatives regarding the same, providing attorneys for plaintiffs with corrections or workarounds, and attempting to ameliorate the effects defective production.
>
> The facts and circumstances surrounding plaintiffs' selection of a vendor to handle AstraZeneca's additional, "native" production.
>
> Plaintiffs' efforts to investigate and solicit bids from vendors, and to choose the most appropriate and cost-effective vendor.
>
> The facts described in plaintiffs' responses to interrogatories served herewith; and
>
> The facts described in his declarations, which are identified in the exhibit list served herewith.
>
> Witness Statement, at p. 2 (Exhibit H.)

In addition to the Witness Statement, plaintiffs referred AstraZeneca to their 30-page response to AstraZeneca's interrogatories on the subject of sanctions, in which Mr. Jaffe once again sets forth in painstaking detail the problems encountered with AstraZeneca's production of ESI. (Exhibit I.) Plaintiffs also referenced the declarations of Mr. Jaffe concurrently served and identified in the accompanying exhibit list. Contrary to AstraZeneca's representations to the Court, plaintiffs have provided AstraZeneca with a wealth of information concerning Mr. Jaffe's anticipated testimony.

> **B. Plaintiffs' Documents** – With respect to each category of "sanctionable conduct" found by the Court in its Order of August 21, 2007, Plaintiffs produce to AstraZeneca – such that they are in AstraZeneca's physical or electronic possession no later than 5:00 p.m. EST on **January 16, 2008** – each of the following documents, separating such documents into the category of "sanctionable conduct" to which the documents relate:

4

> 1. All documents Plaintiffs intend to introduce as Exhibits in their case-in-chief at the hearing (including any documents on which any of its experts may rely). Each such document must be separately numbered and identified on the form used by the Middle District for exhibit disclosures.

Order at p. 1

AstraZeneca has been on notice since at least January 4 of the sanctionable conduct to which plaintiffs' evidence relates. Plaintiffs' counsel described it on the record:

> There is a very discrete issue, though, and an important issue but fairly narrow issue, that will be ripe for January 28. It's ripe right now. And that is the amount of sanctions for AstraZeneca's failure to produce usable or reasonably accessible data. That is an item that you targeted in Your Honor's August 21 order as something to be determined at a later date. It's a discrete item.

January 4, 2007 Transcript of Hearing, 13:25-14:7. (Exhibit J)

Plaintiffs served an Exhibit List, on the form used by the Middle District for exhibit disclosures, identifying the documents listed thereon as relating to that issue, citing from the August 21 Order. AstraZeneca failed to include the Exhibit List in its "Notice." (Exhibit K.)

> 2. To the extent not produced in response to #1 above, in connection with Plaintiffs' claim that the sanctionable conduct caused Plaintiffs "substantially increased costs in three areas" (Plaintiffs' Statement, p. 6), Plaintiffs shall produce all of the following:
>
> > a. All time and expense records supporting Plaintiffs' claimed "increased IT costs to date" and "judicial costs" (id.), including the specific descriptions and supporting documentation associated with each such record.

Order at p. 2

Plaintiffs' lawyers do not keep contemporaneous time records. Therefore, they have made good faith estimates of their time by reviewing calendars, other billing records (e.g. SM-

5

ESI invoices and telephone bills) and review of files. The basis for plaintiffs' claims for the value of time is contained in declarations. Plaintiffs have produced documents to support all claimed expenses.

>b. In connection with Plaintiffs claim that "in order to handle the new, parallel production of data in such a significantly compressed time frame, it was necessary for plaintiffs to contract with a vendor" (id. at 7):
>
>>(i) All requests for proposals (or similar inquiries) made to vendors in connection with this litigation;

Order at p. 2

These documents were produced as Exhibits 16.04-16.08.

>>(ii) The contract ultimately agreed upon by Plaintiffs and a vendor.

Order at p. 2

This document was produced as Exhibit 16.09.

AstraZeneca seeks postponement of the hearing because plaintiffs' contract with their vendor "raises serious questions." AstraZeneca claims it "cannot assess the degree to which the retention of IKON/Cataphora is related to problems with AstraZeneca's prior production of documents, as opposed to a limitation in plaintiffs' current system, without inspecting the system itself." Further, "whether all the features offered by plaintiffs' new vendor are necessary to handle native file productions cannot be measured unless AstraZeneca first learns, in detail, the specifications of plaintiffs' current system."

Mr. Jaffe is the best source of the requested information, is prepared to testify concerning these issues and has been offered for deposition. Further, AstraZeneca's questions assume that plaintiffs (through Weitz & Luxenberg) are obliged to set up, receive and host AstraZeneca's new, additional production (which violates CMO2's formatting requirements). This is a fallacy.

6

Even if plaintiffs' current internal systems could handle AstraZeneca's new production, plaintiffs would not be obligated to host it internally. Like AstraZeneca, plaintiffs are entitled to us vendors, particularly in a situation such as the present one, where they will be required to receive, process and analyze approximately 12 million pages of ESI in a tightly compressed time frame. Plaintiffs have already set up, loaded and hosted one crippled production from AstraZeneca, at their own expense, and are unable and unwilling to bear the cost of a second production, in native format, as a result of AstraZeneca's sanctionable conduct. (See Schoenhaut Decl., Exhibit L.) Plaintiffs expect to receive the new, additional production, during a five to six week period between early February and March 14. They must be ready to take depositions shortly thereafter. They need a vendor with the experience, technology and capacity to receive, host and process a huge production of ESI in a very short period of time.

If AstraZeneca plans to contest whether the IKON/Cataphora agreement represents fair market value for the services rendered, then, for comparison, it should immediately produce its contracts with its current and former vendors (who loaded and hosted the very same data).

The court has found that AstraZeneca failed to produce reasonably accessible ESI, and that such failure is sanctionable. With the diligent assistance of plaintiffs' counsel and technical advisors, AstraZeneca has now admitted that the prior production is beyond repair, and proposes to make another production, which violates the technical requirements set forth in CMO2. It is only fair that AstraZeneca bear the expense.

> **C. Plaintiffs' Responses to AstraZeneca's Discovery Requests** –
> Plaintiffs shall serve by electronic mail their responses to AstraZeneca's Interrogatories, Requests for Production of Documents, and Requests for Admissions which were served December 17, 2007.

Order at p. 2

These documents were served. Many of these discovery requests dealt with issues conceded by AstraZeneca as not yet ripe for determination, such as the legal prejudice resulting from AstraZeneca's sanctionable conduct. Plaintiffs responded to all requests dealing with matters at issue on January 28. Although outrageously burdensome, plaintiffs also responded to those requests for information currently within plaintiffs' knowledge – such as more than 200 "requests for admission" that certain documents were used at deposition. (See Exhibits I, M and N.)

Perhaps the most ironic of AstraZeneca's complaints is that regarding plaintiffs' production of documents responsive to its discovery requests. Interrogatories Nos. 6(a), 8(c) and 9(c) (See Exhibit H) and Request for Production No. 1 (Exhibit L) demand that plaintiffs identify and produce communications with AstraZeneca regarding technical problems with its production. Despite valid objections, plaintiffs gathered such communications as best they could, and produced them natively, in a .pst file. In essence: after plaintiffs had already once methodically evaluated problems and communicated them to AstraZeneca, after all of the testimony and evidence at the sanctions hearing in July, after all of the painstaking documentation of technical issues since the hearing, and despite the fact that AstraZeneca already has all of those communications in its possession, AstraZeneca asked plaintiffs to assemble and produce these communications. AstraZeneca, having refused initial requests for native production, then having demonstrated (at best) gross incompetence in the production of email in TIFF and load format, and then having thus resolved to re-produce all email in quasi-native format, now claims that it cannot go forward with the hearing on sanctions because plaintiffs have instead produced documents in their true native format: the .pst. This does not appear to be a position taken in good faith.

8

## CONCLUSION

Plaintiffs have complied with the Court's January 15 order.  The January 28 hearing should go forward.


Dated:  January 21, 2008		LEVIN SIMES KAISER & GORNICK LLP

			/s/ Lawrence J. Gornick
		Lawrence J. Gornick (CA State Bar No. 136290)
		Dennis J. Canty (CA State Bar No. 207978)
		44 Montgomery Street, 36th Floor
		San Francisco, CA  94104
		Telephone:  415-273-8138
		Facsimile:  415-981-1270
		E-mail:	lgornick@lskg-law.com
			dcanty@lskg-law.com