EXHIBIT E

1

```
 1                 UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
 2                      ORLANDO DIVISION

 3              Docket No.6:06-MD-1769-Orl-22DAB

 4    . . . . . . . . . . . . . ..
      IN RE:                        :
 5    SEROQUEL PRODUCTS LIABILITY    :
      LITIGATION                     :          Orlando, Florida
 6    MDL DOCKET No. 1769            :          January 15, 2008
                                     :          1:00 p.m.
 7    ALL CASES                      :
                                     :
 8    . . . . . . . . . . . . .:

 9
                    TRANSCRIPT OF PRETRIAL CONFERENCE
10              BEFORE THE HONORABLE DAVID A. BAKER
                    UNITED STATES MAGISTRATE JUDGE
11

12    APPEARANCES:

13    For the Plaintiffs:         Larry Gornick

14                                Larry M. Roth

15                                Dennis Canty

16    For the Defendant

17    AstraZeneca:                Fred Magaziner

18                                Stephen J. McConnell

19                                Chris Coutroulis

20                                Ben Barnett

21                                Robert Pass

22    Court Reporter:  Sandra K. Tremel

23

24    Proceedings recorded by mechanical stenography, transcript

25    produced by computer-aided transcription.
```

```
 1                    P R O C E E D I N G S

 2            THE DEPUTY CLERK:  The case number is

 3   6:06-MD-1769-ORL22DAB.  In Re:  The Seroquel Products

 4   Liability Litigation.

 5        Counsel, please state your appearances for the

 6   record, and let's start with plaintiffs counsel.

 7            MR. GORNICK:  This is Larry Gornick for

 8   plaintiffs.

 9            MR. ROTH:  Larry Roth for plaintiffs.

10            MS. PEARSON:  Gail Pearson for plaintiffs.

11            MR. SEDGH:  Jonathan Sedgh for plaintiffs.

12            MR. JAFFEE:  Jonathan Jaffe, plaintiffs, non

13   counsel.

14            THE DEPUTY CLERK:  Counsel for defense, please

15   state your appearances.

16            MR. MCCONNELL:  Steve McConnell for defendant

17   AstraZeneca.

18            MR. BARNETT:  Ben Barnett for defendant

19   AstraZeneca.

20            MR. MAGAZINER:  Fred Magaziner for AstraZeneca.

21            MR. PASS:  Robert Pass for AstraZeneca.

22            MR. COUTROULIS:  Chris Coutroulis for

23   AstraZeneca.

24            THE DEPUTY CLERK:  And counsel for the for the

25   tag along case for the plaintiffs, please state your
```

3

1   appearances?

2         MS. ASCHER:  Halley Ascher, counsel for

3   plaintiffs tag along action.

4         MR. CONNEL:  Rosalee Connell, counsel for

5   plaintiffs tag along action.

6         MR. ZIEGLER:  Terrence Ziegler, counsel for

7   plaintiffs with tag along action.

8         MR. SCHELLER:  Steve Scheller, Jim Pepper and

9   Ken Smith counsel for plaintiffs in the tag along action.

10        THE COURT:  Okay.

11        MR. ROTH:  Craig Ball also on the line, Special

12   Master Ball.

13        MR. BALL:  Craig Ball, special master.

14        THE COURT:  All right.  I got the prospective

15   submissions from the parties concerning the hearing we

16   have got scheduled for the 28th.  Let me say that with

17   respect to the plaintiffs' submission, I was underwhelmed

18   by a lack of detail and much of that reflected in the

19   defendant's response.

20     Let me ask the plaintiffs to respond to the -- well,

21   to the general tenor of the defendant's position, but then

22   also specifically what they labeled their "Prehearing

23   Schedule" in their attachment.

24        MR. GORNICK:  Larry Gornick for the plaintiffs.

25   And I can do that.

4

```
 1        With respect to the criticisms, and perhaps we
 2   weren't as clear as we should have been in our submission,
 3   but what we're trying to say and what we would intend to
 4   present on the 28th is very limited.  In our view, the
 5   only question for the 28th is, what are the plaintiffs'
 6   monetary damages flowing from AstraZeneca's failure to
 7   timely produce usable or reasonably accessible, documents.
 8   Including motion costs.  That's the issue.  The only
 9   evidence we would intend to present are the time and
10   expenses associated with investigating, analyzing and
11   litigating issues related to the technical deficiency in
12   AZ's production, and the necessity for plaintiffs to hire
13   a vendor and the cost of the vendor.
14        I mean, it strikes us that the first piece, that is
15   our time and expense in investigation and analyzing the
16   issues of litigating them, that that is -- that's really a
17   routine issue that should be, we think, should be
18   submitted on declarations with AstraZeneca having the
19   ability to respond and the Court can decide.  And then the
20   issue that we think is more likely to be one that actually
21   needs an evidentiary hearing with witnesses and like
22   cross-examination in front of the Court is -- I only say
23   this because AstraZeneca has been arguing it, at least a
24   couple times in court now, that is, the necessity for the
25   plaintiffs to have to hire a vendor to process the
```

1   defendant's lead reproduction of previously produced

2   documents in native format.  And we explained that

3   Mr. Jaffe is going to be our one and only witness, and he

4   will be presented.  And so in our view it really is that

5   simple of a proceeding.  And the only thing that we didn't

6   provide was the actual numbers, the actual detail, the

7   number of hours and the total dollars that fall into each

8   of the two categories.  We didn't provide that.  The

9   defendants propounded discovery on us that is due

10  tomorrow.  We planned to respond to that discovery

11  tomorrow.  We can produce all the documents underlying

12  our -- the claims we're making for sanctions by Friday at

13  the very latest.  So that's really where we are.

14          THE COURT:  Well --

15          MR. GORNICK:  I apologize to the Court if the

16  Court -- if the Court did intend for the plaintiffs to

17  actually specify the exact amounts, the details of the

18  amounts, we did not understand that.  And I apologize for

19  that if that was the Court's intention.  But the

20  defendants will have that tomorrow when we respond to

21  their discovery on time tomorrow.

22          THE COURT:  Well, I'm assuming there's going to

23  be, at least be the possibility, if not the likelihood, of

24  some dispute about whether particular blocks of time,

25  attorney time or technical people's time that you assert

1  was necessary only because of the problems.  And

2  AstraZeneca may take the position of it's just routine

3  case preparation.  And there's got to be some opportunity

4  for that issue to be joined and tested.  I mean, I'm not

5  sure it's enough for to you simply take however many

6  different law firms and say we will we have 2,000 hours

7  and we had 200 hours and these are the ones we're

8  claiming.  How are you going to tie it back to the

9  sanctionable conduct or sanctionable results?

10         MR. GORNICK:  Well, Your Honor, if we are going

11  to proceed in the manner that I understand we are, the

12  evidentiary hearing on both of the issues, we will present

13  the documentation underlying the hour, the claims for

14  hours and underlying the claims for costs.  And the

15  defendants will have the opportunity to pick and poke at

16  those numbers.

17     Frankly, I would hope that we would be able to do it

18  by declaration, but we will be prepared to present a -- I

19  hope that we wouldn't have to bring each timekeeper.  I

20  mean, that would seem a bit tedious and not the most

21  efficient use of the Court's time.  But if you order us --

22  I mean, if that's how the Court would like us to

23  proceed --

24         THE COURT:  I don't need the timekeepers.

25  There's going to be somebody with knowledge who can say,

```
 1   you know, we assigned this team of attorneys and this team
 2   of technical people and it took -- these are the hours
 3   that they spent doing these things as set forth in the
 4   declaration, or tie back to the conduct that we're talking
 5   about.  I mean, it's that link that I'm worried about, not
 6   the method of presenting, you know, what hours are on what
 7   time sheets.
 8            MR. GORNICK:  And so we could do it one of two
 9   ways as the Court would like us to do it.  We can either
10   create that link by declaration or we can do it by live
11   witness.  And we could do it by live -- I'll tell you,
12   I'll be candid, for the technical, the investigation and
13   analysis part of it by the technical people, Mr. Jaffe
14   will be the witness on that issue, and he can easily
15   explain why we had to do all the things we had to do from
16   a technical perspective.
17        And then if the Court would actually like testimony
18   as to why lawyers had to spend time meeting and conferring
19   and drafting motions and presenting the motions at the
20   sanctions hearing and doing follow-up after that, I will
21   present a witness from my firm, not me, likely Mr. Canty.
22        But, frankly, I was anticipating that that kind of
23   thing, hours spent by lawyers meeting and conferring and
24   litigating the issues could be submitted by declaration
25   with AstraZeneca having the opportunity to file written
```

1   objections where they think anything we were claiming in

2   terms of either the length of time or the work that was

3   done to be inappropriate.

4          THE COURT:  Let me hear from AstraZeneca.

5   Mr. McConnell is this on your plate?

6          MR. MCCONNELL:  It is, Your Honor.  And I also

7   have Mr. Barnett here to address the discovery or

8   scheduling issues if we get to that.  But what I do want

9   to emphasize, it did seem to me that Your Honor was very

10  clear on January 4th, and the transcript confirms that.

11  In fact, one might say you were specific and explicit in

12  what you said, was that the plaintiffs in their filing had

13  to be specific and explicit in setting forth what they

14  were claiming in the way of incremental technical costs as

15  well the evidence that would support that.  And it did

16  seem to us what the plaintiffs filed didn't really come

17  close to doing that.  Sort of remarkably the first five or

18  six pages set out more about our bad conduct, which was

19  sort of gratuitous, and I thought Your Honor had already

20  indicated pretty clearly on January 4th that that's not

21  what this January 28 hearing was.  And then when we got to

22  the part where the plaintiffs were supposed to talk about

23  the things that you told them to talk about, we get in

24  about a page.  And I submit that the only portion that

25  really is responsive to what Your Honor said they had to

 1   do was the section on increased IT cost to date.  I
 2   actually didn't understand what they call judicial cost
 3   was really in play.  But on increased IT cost, this is
 4   really the sum and substance of what the plaintiff said.
 5   It's on page 6.  They say, "Plaintiffs through the IT team
 6   have incurred substantial additional costs in time and
 7   expenses in investigating and analyzing problems in
 8   AstraZeneca's custodial production, conferring with AZ
 9   representatives regarding the same, providing attorneys
10   for plaintiffs with corrections or work arounds, and
11   attempting to ameliorate the effect of the defective
12   production."
13        Well, we already knew all that on January 4th.  And
14   you couldn't get any more general or more vague than that.
15   It doesn't seem to be anything that is specific or
16   explicit.  If there's a vendor that had to be brought in,
17   it seems like they could have named the vendor.  If there
18   are documents that would support these claims really
19   showing, and I think this is going to be the key issue,
20   are these truly, Your Honor, incremental costs as opposed
21   to costs associated with activities that the plaintiffs
22   would have to undertake anyway?  That's really, I think,
23   going to be the big issue certainly with respect to the IT
24   cost.
25        And then to the extent Mr. Gornick wants to get into

1   attorney time, that will take a little bit of discovery.

2   And we got absolutely no notice on that whatsoever.  All

3   we hear is that there are going to be declarations of

4   witnesses from law firms and there are going to be

5   exhibits.  The only specific thing we get is that

6   Mr. Jaffe is going to testify, and that's fine.  But

7   that's sort of the way it should have been.  They should

8   have named names and then been a little bit more specific.

9        And the fact is, Your Honor, that right now sitting

10  here today, only -- I guess it's 13 days before

11  January 28th, we, the defendants, who are facing a

12  sanctions award, don't know anything more than we did on

13  January 4th.  In fact, the truth is, Your Honor, we don't

14  know anything more about the contours and scope of

15  plaintiffs' sanctions claim than we did on August 21.  And

16  the real truth is is that a lot of time has been wasted

17  since the hearing on January 4th.  It seems like it

18  wouldn't have been that hard for plaintiffs to come forth.

19  Even aside from the filing, just give us the information

20  so we can get this thing rolling.

21       And the fact is before we filed our opposition, Your

22  Honor, on last Friday, we tried to meet and confer with

23  the plaintiffs' lawyers.  We contacted Mr. Gornick.  We

24  didn't get any response whatsoever.  So it's just been the

25  kind of odd game of hide and seek.

1    But here's where we are.  Mr. Gornick just made it

2    sound like this is really no big deal on the 28th.  It's

3    pretty narrow.  It's pretty simple.  It is a big deal.

4    This is the sanctions hearing.  This is the issue of what

5    kind of sanctions are going to be imposed on us.  It's a

6    very big deal to us.  Even putting aside the fact that

7    plaintiffs have said this is a seven figure sanction,

8    which is obviously enormous, but just the fact that we're

9    being sanctioned and that we're talking about significant

10   expenses, that is a big deal.  And we're entitled to an

11   effort to defend ourselves.  I mean, we don't even know

12   what the issues are going to be because we have gotten so

13   little notice.

14       But the fact is we now have 13 days to go, and we

15   have no notice of specifics, which makes us wonder either,

16   first, is there no there -- I mean, is it the case of as

17   we sort have been suggesting all along, that we didn't

18   think there was prejudice associated with this, or are the

19   plaintiffs -- seems to us, are they trying to sandbag us?

20       And in fact when the plaintiffs filed, Your Honor,

21   the opposition to our motion to continue the January 28th

22   hearing, there is this very odd line in their opposition

23   where they said they weren't going to be baited into

24   telling us what the sanctions were or the evidence.  I

25   don't see why -- being baited?  It's just being honest and

1    moving the process along.

2        The irony here, of course, is this all started

3    because plaintiff said we didn't provide them with

4    discovery or adequate discovery.  And here we have a very

5    discreet issue, although an extremely important issue of

6    sanctions, and they're not giving us anything that even

7    approximates a discovery whatsoever.  And we don't think

8    that the hearing is appropriate.

9        Your Honor said something else.  This is something we

10   didn't quote in our paper, Your Honor, but Your Honor at

11   the hearing on January 4th -- this is on page 38 -- you

12   said, you know, we're going have the hearing but we might

13   not have this hearing if the plaintiffs don't do what they

14   are supposed to do.  And what you said at the top of page

15   38 is if the plaintiff defined it tightly enough, and if

16   you think that the defense has time to prepare, then we

17   will go forward.

18       And what I'm here to argue, Your Honor, is they

19   haven't defined it tightly enough at all.  They haven't

20   given us notice.  And the fact is we don't have time to

21   prepare.  Your Honor, it sounds like what they're arguing

22   is that they're talking about costs associated with

23   incremental technical activities that are required they

24   claim by the discovery deficiencies.  And it sounds like

25   they're talking about, you know, attorneys' fees, I guess,

 1    and it sounds like they're talking about costs.

 2         And if you just look at the most logical analogy,

 3    you know, there's cases where the U.S. is involved as a

 4    party and sometimes the prevailing party tries to seek

 5    costs or attorney's fees.  And if you look at 28 U.S.C.

 6    1924, where there has to be a listing of costs and a

 7    verification.  Or 28 U.S.C. 2412 where there would have to

 8    be an itemized statement of attorney's fees.  Those are

 9    instances where -- and you're not talking about

10    sanctions, right?  You're just talking about costs and

11    fees.  You're talking about circumstances, Your Honor,

12    where the party at risk -- us -- would have more

13    information and more time to respond to it.  You wouldn't

14    have 13 days starting from ground zero to try to figure

15    out exactly what the plaintiffs are claiming and how do we

16    test that.

17         And I think that this is just an absolutely

18    unnecessary prejudice that plaintiffs have put us to and

19    we object to the hearing going forward on this basis.

20              MR. GORNICK:  May I respond?

21              THE COURT:  Well, no.  Let me go forward here.

22    The potential for irony here is not lost on me.

23         I'm going to work on the presumption that we are

24    going forward, but there is something in what

25    Mr. McConnell argues.  I'm going go down the proposed

 1   schedule that is in AstraZeneca's attachment and tell you

 2   what needs to be done.

 3       By the end of business tomorrow you will be answering

 4   those interrogatories and responding to the discovery, but

 5   then you should include with that the summary of Mr.

 6   Jaffe's proposed testimony, the declarations that you're

 7   planning to use and any exhibits that you're planning to

 8   use at the hearing.  And then Mr. Jaffe needs to be

 9   available for deposition.  It doesn't need to be eight

10   hours, but he should be able -- he needs to be available

11   for that.

12       To the extent there's some dispute on the

13   declarations that requires -- as Mr. Gornick sort of

14   assumed, we typically do take declarations from counsel

15   about their hours and so forth to support claims for fees.

16   Sometimes there needs to be cross-examination on it,

17   sometimes there isn't.  But it's a prima facie evidentiary

18   basis that's usually satisfactory rather than bringing in

19   timekeepers or document custodians.  We can take

20   declarations as the prima facie, but if there's some real

21   disputes about the time or about the rates or what they're

22   for, and there needs to be a deposition taken of someone

23   with knowledge, not necessarily the timekeeper, but

24   whoever was managing the project, and that may be within

25   Mr. Jaffe's knowledge to the extent he was directing some

15

1    of that or coordinating it.

2        Any evidence about this third party contract

3    vendor -- when I say any evidence, I mean the ultimate

4    contract and if there was a RFP for that.  I don't think

5    responses from other vendors need to be produced.

6        AstraZeneca proposes to identify any of its witnesses

7    by noon on the 21st, that seems appropriate.  They'll be

8    responding to plaintiff's designations and they'll produce

9    their exhibits by 5:00 on Monday the 21st.  And then later

10   in the week make available any witnesses that they're

11   planning to call.

12       Mr. McConnell, do you anticipate wanting to proceed

13   in any way by declarations?

14           MR. MCCONNELL:  I'm going to turn that over to

15   Mr. Barnett.

16           MR. BARNETT:  Your Honor, it's difficult to

17   answer that question because we don't know what the

18   exhibits are, the identity of all their witnesses and what

19   they plan to say.  So we are in the unfortunate situation

20   of having to take a look at what in fact we finally get

21   and then making a decision of whether, A, we think we need

22   witnesses and then the appropriate format for

23   presentation.

24           THE COURT:  All right.  I understand what you're

25   saying.

16

```
 1              MR. GORNICK:  I can clear a little bit of that
 2    up.
 3              THE COURT:  Well, let me ask AstraZeneca.  I'm
 4    looking at the entry that you had in your proposed chart
 5    for Wednesday, the 23rd, "Objections to witnesses
 6    testifying and motions in limine."  I'm not sure that's
 7    necessary.  We can just take those things up at the
 8    hearing.
 9              MR. BARNETT:  I apologize.  I don't mean to
10    interrupt, but if we could just maybe jump back a couple
11    of steps.  Might it make sense in terms of the scheduling
12    not to set additional dates down the road but to first
13    ensure that in fact by close of business tomorrow we in
14    fact receive all of the information that you're now
15    ordering the plaintiffs to disclose?
16              THE COURT:  If that doesn't happen, the
17    hearing's off.
18              MR. BARNETT:  Okay.  And just as a larger issue,
19    Your Honor, I will tell you that we attached our proposed
20    schedule because we felt it was the right thing to do.
21    Plaintiff's provided no schedule whatsoever.  They didn't
22    even -- they didn't even -- the evidence was one line.
23    They proposed no schedule whatsoever.  And we felt like
24    consistent with the Court's guidance on the 4th, it was
25    incumbent on us to perhaps go the extra mile and at least
```

```
 1   put out a framework for a schedule, even in the absence of
 2   any sort of indication of who they were going to call and
 3   what documents they were going to rely on.
 4        And now we find ourselves in a situation where we are
 5   being in the absence right now that evidence of being put
 6   in a position where we have to live with a very compressed
 7   schedule.  So akin to what I just mentioned, perhaps we
 8   could hold off on any sort of schedule and any sort of
 9   final decision in terms of the hearing date until we see
10   evidence that the plaintiffs are willing to finally put
11   some meat on the bone and deliver all the information and
12   putting in the discovery responses, the contracts, the
13   requests for proposals, everything else by close of
14   business tomorrow.  And if that doesn't happen, then we
15   need not address the other scheduling issues.
16        THE COURT:  Well, I'd like to assume that's
17   going to happen, and if it doesn't, as I say, you can file
18   a notice and I'll take off this hearing and the issues of
19   these sanctions will be carried till the close of
20   discovery as I do in a routine case.
21        And I thought your proposed schedule, it was valuable
22   certainly in the sense of detailing the things that you
23   felt were important, and looked like a pretty good
24   aggressive way to try to get done things that ought to be
25   done.
```

1    So I'm going to go ahead and -- in effect I'm

2    following most of what you have here.  I don't think it's

3    all quite -- like I say, I don't think we need witness

4    objections and motions in limine.  Document objections,

5    it's always good to get those in advance.  So that's okay

6    with me.

7        If you do want to submit any additional legal briefs

8    on issues that -- what you think we haven't already

9    covered, close of business Thursday is a good point for

10   that.  Thursday, the 24th.

11       And in terms of your presentation of exhibits, I

12   guess what I'd like to have done is to have them filed by

13   Friday with the normal exhibit list in an electronic

14   format so that we can access them.  And if you do that,

15   then -- I'm sitting here thinking whether I want a

16   separate paper binder with them.  My preference is

17   generally not to, but if we're going to get into -- let's

18   leave that hanging for now.  And I'm not going to pose on

19   you any requirement to file them on paper, but I do want

20   them filed electronically.  If there's some where we need

21   some copies to go over some details or it's awkward to

22   print them out or awkward to look at them on the screen, I

23   may ask to you give me a courtesy copy, but I don't think

24   it will be all of them or anything.

25       All right.  It seems to me if these things stay on

1   schedule and get done, we can go forward with the hearing

2   and protect everybody's due process interests.  But if

3   there's a failure to do so, and tomorrow's the key date,

4   then I'm really in agreement with pretty much

5   Mr. McConnell has been arguing that it's not fair to go

6   forward with how -- this level of disclosure, and I would

7   take the hearing off.

8            MR. MCCONNELL:  Again, real quick, almost silly

9   housekeeping point.  When we talk about the deadline and

10  the close of business, I just want it clear on the record

11  that close of business, for example, tomorrow would be 5

12  p.m. Eastern Standard Time.

13           THE COURT:  That's correct.

14           MR. MCCONNELL:  Thank you.

15           MR. GORNICK:  May I very briefly respond to a

16  few of the things that were said earlier?

17           THE COURT:  All right.

18           MR. GORNICK:  Mr. McConnell suggested that

19  AstraZeneca attempted to meet and confer with the

20  plaintiffs.  And given -- meeting and conferring is

21  important to our side.  We understand it is to the Court.

22  And the facts are these:  Around noon on Friday I received

23  an e-mail from Mr. Barnett.  I happened to be engaged in

24  another federal court at that time.  Within a couple of

25  hours -- I'm pretty sure it's less than three -- they had

1   filed their submission.  So there wasn't any good faith

2   attempt to meet and confer.

3       And I just also would like to put on the record that

4   this Court issued an order of November 16 which said we

5   would be entitled to proceed as we are on the 28th and

6   AstraZeneca chose to wait to propound any discovery until

7   December 17th.  And we intend to respond to it tomorrow.

8   We always have and we will.

9       So this is -- AstraZeneca made their bed they're in.

10          MR. BARNETT:  Your Honor, it's Ben Barnett.

11      If I could respond in terms of the meet and confer

12  issue.

13      I did send Mr. Gornick and Mr. Canty an e-mail at

14  12:12 on Friday.  At the January 4th hearing, the Court

15  made it clear that it expected the parties to meet and

16  confer.  And looking at the transcript you could argue

17  that the meet and confer probably should have taken place

18  before either party filed its submission.  But in any

19  event, we had a deadline Friday.  We had to file ours and

20  we did that in an ordinary course of business.  The

21  reality is I never heard back from either Mr. Gornick or

22  Mr. Canty.

23      So we were not operating -- we actually were trying

24  to comply with the Court's directive to meet and confer.

25  We simply never heard back from them.

```
 1              THE COURT:  All right.

 2              MR. ROTH:  This is Larry Roth.  May I make

 3    one -- as to the Court's question here.

 4        If tomorrow at 5 or if the defendants do not believe

 5    the plaintiffs have complied and they file a notice, and

 6    as the Court knows, we haven't always agreed with, you

 7    know, everything between the lawyers, is there some

 8    vehicle or something that the plaintiffs can file in

 9    response because they may think that they have complied

10    and not just to have a unilateral notice of noncompliance

11    by the defendant and just to have a hearing kicked off

12    then?

13              THE COURT:  I'll be here all week.

14              MR. ROTH:  Okay.  We can respond to --

15    plaintiffs can respond to that notice in the event one is

16    filed?

17              THE COURT:  Right.

18              MR. ROTH:  Okay.

19              MR. BARNETT:  Ben Barnett again.

20        Two other logistical matters quickly.  Assuming that

21    in fact we believe that there is a sound basis to seek

22    depositions of the declarants that they want to rely on, I

23    assume we will have that right to make such an application

24    to the Court.

25              THE COURT:  That's right.
```

1          MR. BARNETT:  All right.  And also in terms of

2    the evidence that is going to be presented tomorrow,

3    presumably the Court's view is that there will effectively

4    be a hard stop on the evidence that they're going to rely

5    on for the 28th.  So we don't get in a situation where we

6    get something by 5:00 East Coast time tomorrow and then on

7    Tuesday or Thursday next week, something else dribbles in

8    and says, well, we plan to add this.

9          Presumably, this is their opportunity to weigh out

10   for both us and the Court what specific evidence that

11   they're going to rely on for the 28th without the right to

12   seek amendment later.

13          THE COURT:  That's right.  I mean, obviously, if

14   there's a time sheet that's got an erroneous entry or

15   something like that, they can correct that.  But there

16   shouldn't be new declarations or some new witness or some

17   new category of things.  So if there's a clerical error

18   or --

19          MR. SCHELLER:  This is Steve Scheller for the

20   tag along plaintiffs.

21          I'm in the dark on a lot of what's going on and I'm

22   just trying to understand a little bit.  As I understand

23   it, and there are some of us on the line today who have

24   individual cases that have been filed in state court in

25   New Jersey.  And AstraZeneca has been cross noticing those

1    depositions.  In fact, I just received one in a case, in

2    the cases today for -- to take place in Manchester,

3    England.  But these depositions -- and we have -- I have

4    attended them.  Jim Pepper has attended them, and others

5    have attended them from my offices.  And we have been

6    relying on the documents that have been produced.  But it

7    appears from what I'm understanding is going on in the

8    MDL, that the cross notices may require us to reattend new

9    depositions because the material that has been produced is

10   incomplete as we go through the new materials.  And I

11   don't think we have gotten any new production to go

12   through.

13       So in terms of what we may have to do is if we do get

14   the new production, we will go through it.  And then we

15   may have to redepose all of the witnesses that we've --

16   that have been deposed already.  Is that being -- we may

17   have to file a motion for sanctions of our own in state

18   court.  But I'm wondering if the court in Florida -- in

19   Florida is taking into account the cost of redeposing

20   witnesses and having to go through a complete new document

21   production because it wasn't produced adequately in the

22   first place?

23           THE COURT:  Well, we're not looking at

24   redeposition costs or claims at this point.  And how it

25   affects you and your cases is not now before the Court.

1      I was going to alert everybody on the phone here that

2  a notice will be going out this afternoon of a separate

3  joint status conference to be held the afternoon of the

4  29th.  We've got the morning conference, our usual one in

5  the personal injury cases, but I'm going to be noticing a

6  joint one for the newly transferred cases and there's --

7  there will be some specific requirements and notice that

8  all of you get together and talk about some things before

9  that hearing that you should be aware of.  And those of

10  you that are coming into Orlando in the 28th or the 29th,

11  plan to be here later in the day on 29th than you might

12  have otherwise.

13      And Judge Conway is planning to preside with me at

14  that hearing.

15          MR. SCHELLER:  Is anything happening with regard

16  to when the new proper -- call it proper production in

17  compliance with the direction of the Courts, when that's

18  going to be done so it will be available for us to

19  examine?

20          THE COURT:  Well, we talked about that in

21  extenso at the last conference.  I guess the transcript of

22  that is now been filed, so you can look at that and talk

23  to the AZ folks and you will find out more about what's

24  going on with that.

25          MR. SCHELLER:  We will do that.

1        What about these transcripts of these depositions

2   which are now going forward that are being cross noticed?

3   I'm not sure how that plays out in -- until I guess we

4   have to redepose people, the Court will consider that?

5              THE COURT:  I'll take things as I find them.

6              MR. SCHELLER:  Right.  Right.

7              THE COURT:  All right.  I'll issue a little

8   order reflecting what I've ruled on here and look forward

9   to things moving forward.

10       We're in recess.

11                    (End at 1:47 p.m.)

12                 C E R T I F I C A T E

13       I certify that the foregoing is a correct

14   transcript from the record of proceedings in the

15   above-entitled matter.

16

17

18

19

20   _____              _____

21   Sandra K. Tremel

22

23

24

25