# EXHIBIT I

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**IN RE: Seroquel Products Liability Litigation**

**MDL DOCKET NO. 1769**

_____

**This Document Relates to ALL CASES**

**PLAINTIFFS' RESPONSES TO DEFENDANTS' FIRST SET OF**
**INTERROGATORIES TO PLAINTIFFS REGARDING PLAINTIFFS'**
**REQUEST FOR SANCTIONS**

**<u>INTERROGATORIES</u>**

**<u>INTERROGATORY NO. 1</u>**

Identify each and every deposition of a treating or prescribing physician that you claim was affected by AZ's conduct and the manner in which each deposition was affected.

a) For each deposition identified above, identify the specific conduct by AZ that you claim affected your ability to prepare for and take the deposition.

b) For each deposition identified above, describe the legal prejudice you claim you suffered as a result of your claim of AZ misconduct.

c) For each deposition identified above, list the expenses and costs, if any, you claim you suffered as a result of your claim of AZ misconduct.

d) Provide all documents and/or other evidence supporting your claim of prejudice, expenses and costs identified in your response to this Interrogatory.

e) Identify and provide all documents and/or other evidence utilized by Plaintiffs during each deposition.

**<u>RESPONSE TO INTERROGATORY NO. 1</u>**

Plaintiffs object to this interrogatory as unrelated to the matters at issue on January 28.

**INTERROGATORY NO. 2**

Identify each and every deposition of an AZ Pharmaceutical Sales Specialist that you claim was affected by AZ's conduct and the manner in which each deposition was affected.

a)  For each deposition identified above, identify the specific conduct by AZ that you claim affected your ability to prepare for and take the deposition.

b)  For each deposition identified above, describe the legal prejudice you claim you suffered as a result of your claim of AZ misconduct.

c)  For each deposition identified above, list the expenses and costs, if any, you claim you suffered as a result of your claim of AZ misconduct.

d)  Provide all documents and/or other evidence supporting your claim of prejudice, expenses and costs identified in your response to this Interrogatory.

e)  Identify and provide all documents and/or other evidence utilized by Plaintiffs during each deposition.

**RESPONSE TO INTERROGATORY NO. 2**

Plaintiffs object to this interrogatory as unrelated to the matters at issue on January 28.

**INTERROGATORY NO. 3**

Identify each and every informal interview of a treating or prescribing physician, AZ Pharmaceutical Sales Specialist and/or of an AZ employee, corporate representative and/or other AZ witness that you claim was affected by AZ's conduct and the manner in which each interview was affected.

a)  For each interview identified above, identify the specific conduct by AZ that you claim affected your ability to prepare for and take the deposition.

b)  For each interview identified above, describe the legal prejudice you claim you suffered as a result of your claim of AZ misconduct.

c)  For each interview identified above, list the expenses and costs, if any, you claim you suffered as a result of your claim of AZ misconduct.

d)  Provide all documents and/or other evidence supporting your claim of prejudice, expenses and costs identified in your response to this Interrogatory.

    e)  Identify and provide all documents and/or other evidence utilized by Plaintiffs during each interview.

## RESPONSE TO INTERROGATORY NO. 3

Plaintiffs object to this interrogatory as unrelated to the matters at issue on January 28.

## INTERROGATORY NO. 4

Identify each and every deposition of an AZ employee, corporate representative and/or other AZ witness that you claim was affected by AZ's conduct and the manner in which each deposition was affected.

    a)  For each deposition identified above, identify the specific conduct by AZ that you claim affected your ability to prepare for and take the deposition.

    b)  For each deposition identified above, describe the legal prejudice you claim you suffered as a result of your claim of AZ misconduct.

    c)  For each deposition identified above, list the expenses and costs, if any, you claim you suffered as a result of your claim of AZ misconduct.

    d)  Provide all documents and/or other evidence supporting your claim of prejudice, expenses and costs identified in your response to this Interrogatory.

    e)  Identify and provide all documents and/or other evidence utilized by Plaintiffs during each deposition.

## RESPONSE TO INTERROGATORY NO. 4

Plaintiffs object to this interrogatory as unrelated to the matters at issue on January 28.

## INTERROGATORY NO. 5

Identify with specificity any document, data, or information that you contend was required to be produced to you before a deposition of a prescribing or treating physician and that was not produced.

    a)  State whether you contend counsel for AZ used any document, data, or information in any deposition that was not previously provided to you.

    b)  For all documents, data and information identified in response to this Interrogatory, provide the witness with which it was used or would have been used, the date of the deposition, and the page(s) and line(s) of transcript where it was used.

c) For each instance identified above, describe in detail the ways in which you believe this use limited your ability to proceed with the deposition.

d) For each instance identified above, describe the legal prejudice you claim you suffered as a result of your claim of AZ misconduct.

e) For each instance identified above, list the expenses and costs, if any, you claim you suffered as a result of the use.

f) Provide all documents and/or other evidence supporting your claim of prejudice, expenses and costs identified in your response to this Interrogatory.

**RESPONSE TO INTERROGATORY NO. 5**

Plaintiffs object to this interrogatory as unrelated to the matters at issue on January 28.

**INTERROGATORY NO. 6**

Identify each and every document or document production that you claim required re-Bates or corrected Bates numbering by Plaintiffs as a result of AZ's conduct and describe the nature of the defect in the original production.

a) Identify any communications with AZ or counsel for AZ regarding the documents and/or document productions you claim required re-Bates or corrected Bates numbering.

b) Describe the corrective measures taken by you with respect to these documents and identify all persons involved with these corrective measures.

c) For each document and/or document production identified above, describe the legal prejudice you claim you suffered as a result of your claim of AZ misconduct.

d) For each document and/or document production identified above, list the expenses and costs, if any, you claim you suffered as a result of your claim of AZ misconduct.

e) Provide all documents and/or other evidence supporting your claim of prejudice, expenses and costs identified in your response to this Interrogatory.

**RESPONSE TO INTERROGATORY NO. 6**

Problems with various AstraZeneca productions are described below.

a) Plaintiffs object to this request as unduly burdensome, as it calls for identification of a great number of communications over an extensive period of time, to which AstraZeneca and its counsel were themselves parties, and the records of which are

4

equally available to AstraZeneca and its counsel.  Plaintiffs nevertheless respond that these communications include: correspondence in evidence and referenced at the July 26 hearing; correspondence in subsequent court filings, including those contained in the exhibit lists served herewith; the correspondence contained in the .pst file served herewith; telephone and in-person communications in the presence of the SM-ESI; telephone and in-person meetings between Mr. Jaffe and technical representatives of AstraZeneca, including Bill Adams; telephone conferences between representatives of the parties.

b)  The Bates Number issues in the productions prevented Plaintiffs from being able to either use a pre-existing or to write a customized, standardized program by which any production could have been automatically imported into DOXS. Most productions in other litigations are standardized, that is even if they use a customized load file format, they can be loaded without substantial effort. In the productions by AstraZeneca, the constant changes with each production baffled any attempt at creating a program, even a customized program, to load subsequent productions without significant modification. As a result, much more time was spent than typically expended to customize every load.

i)  Production #2 (Bates Range beginning with AZ-SER-1317624): Bates number in the load file did not match the Bates Number provided in the metadata file. Plaintiffs needed to reprogram the import process in order to handle the match between the load files' beginning Bates number and the metadata's (dat file's) beginning Bates number.  After the import Plaintiffs needed to go into the backend and clean up the data in the fields which contained or were designated to the Bates Number.  By clean up Plaintiffs means that we removed any non-alphanumeric characters ( i.e. "-", "/") using SQL Script.

Production #2 (Bates Range beginning with AZ-SER-1341934): Bates number issue is the same as item #1.  No extra programming was needed but Plaintiffs did have to execute the cleanup routine noted in item #1.

ii)  Production #4: (All 20 Folders) Bates number in load file column contained a hyphen ("-") while Bates number in the metadata file contained slash ("AZ/SER######").   Plaintiffs needed to reprogram the import program as well as execute the cleanup program noted in item #1.

iii)  Production #5: (All Folders) Bates number in the load file now contained 2 hyphens ("-") while the Bates number in the metadata contain a slash ("AZ/SER######").  Plaintiffs needed to readjust the import program as well as adjust and run the cleanup program noted in item #1.

iv)  Production #6: Same as #3.  Program was reverted back to handle this situation.

v) Production #7: Metadata Bates number matches the load files Bates number, but Bates number continue to contain multiple hyphens.  Execution of the cleanup routine noted in item #1 was required.

vi) Production #7 (Drive 3 all subfolders): This production returned to the same format as the issue noted in #3.  Execution of the cleanup routine noted in item #1 was required.

vii) Production #8: This production returned back to the same format as noted in #6

viii)   Production #9: Same as #6

ix) Production #10: This production now reverted back to the same format noted in item #3.

x) Production #11: Bates number columns contain multiple hyphens.  Execution of the cleanup routine noted in item #1 was required.

xi) Production #12: Bates numbers contained multiple hyphens. Execution of the cleanup routine noted in item #1 was required.

xii) Production #13: Same as #12.  Plaintiffs found in this production documents which contained overlapping Bates number.  (AZSER6496458)

xiii)   Production #14: Same as #12.

xiv)   Production #15: Same as #12.

Jonathan Jaffe, Lenny Fernandez, and Sung Kim of Weitz & Luxenberg P.C. were responsible for detecting and correcting these issues.

(c)   Plaintiffs object to this request as unrelated to the matters at issue on January 28.

(d)   Documentation of the expenses and costs related to AstraZeneca's misconduct is served herewith.

 (e)   Plaintiffs object to this request to the extent it calls for information unrelated to the matters at issue on January 28.  Documentation of the expenses and costs related to AstraZeneca's misconduct is served herewith.

**INTERROGATORY NO. 7**

Describe with specificity the work undertaken by Plaintiffs to render AZ's IND/NDA production "usable" and how you claim Plaintiffs' discovery efforts were affected by AZ's conduct with respect to the IND/NDA production.

a) For the work identified above, identify the specific conduct by AZ that you claim affected your ability to engage in discovery.

b) For the work identified above, describe the legal prejudice you claim you suffered as a result of your claim of AZ misconduct.

c) For the work identified above, list the expenses and costs, if any, you claim you suffered as a result of your claim of AZ misconduct.

d) Provide all documents and/or other evidence supporting your claim of prejudice, expenses and costs identified in your response to this Interrogatory.

**RESPONSE TO INTERROGATORY NO. 7**

Plaintiffs had a multitude of problems with the IND/NDA production from AstraZeneca.  These problems required Plaintiffs to make several changes to the data import program being used for DOXS.  The following details these problems and plaintiffs' attempted solutions.

AstraZeneca never furnished a load file with the production.  The import program in DOXS will accept Summation, IPRO, Concordance or Opticon formatted load files, amongst others. These files usually include the Bates Number, relative path to the image, path to any OCR text included in the production and a page count of the current document.  Without this file, the import program needed to be customized.  The change required the program to recursively traverse each folder, checking document dates (which were the folder names) to make sure (Bates) order was preserved.  Even with these checks, the correct document order was not able to be maintained for a large portion of the documents, i.e. the Bates number in DOXS did not match the Bates number on the document image.

The order of the documents did not always match the Bates stamping in some folders (ex. ~\NDA\Agency Contacts\1995\09 (September) because the Bates numbering on the documents was inconsistent.  Only with consistent Bates numbering could this method accurately "calculate" Bates numbers.  Assuming these files were in Bates order, the import program needed to be changed to project the next beginning Bates number based on:  A) a given starting Bates number and b) the page count of the current document; however, because some documents were not in correct order, this did not work.  Documents in the same alpha order in different folders were Bated in a different

7

order.  Plaintiffs attempted to zone and OCR the Bates numbers. This was also unreliable due to the inherent mistakes in OCR in reading numbers and even more prone to error. After much effort, the DOXS development team determined that it was impossible to accurately determine the Bates numbers. Documents were left with "close" but not accurate Bates numbers, and a "low-tech" solution was implemented: reviewers were asked to check every Bates number with the actual document and, if there was a discrepancy, to fix it.  As documents were multi-page TIFF images, and many thousands of pages, effectively it became impossible to locate a document by Bates number.

AstraZeneca never furnished the Plaintiffs with a separate metadata file (.dat) for the IND/NDA.  Information about these files (type of document, document date, etc) was not furnished in a file; AstraZeneca only provided the folder structure, e.g. ~\IND\Annual Reports\1992\12 (December)\1992-12-22 (22Dec92) 01-05.tif.  Plaintiffs were required to change the import process to read this path and glean the document type (Annual Reports) and Document Date (1992-12-22) based on strategically placed folders and the file names.  The folder structure was not consistent.

Plaintiffs received production as multi-page TIFFs, with several of the TIFFs tens of thousands of pages. The size of several image files were too large to be imported (ex. ~\NDA\Original Submission\Published Submission\1996-07-29(29Jul96)\v0000192-217.tif – over 202 MB).  Other files were well over 1GB in size; a single file represented 8% of the production.  It took an extraordinary amount of time to just open these files, and as such, they could not be imported into DOXS to be reasonably useable.  To overcome this, the import program needed to be changed to recognize a large file and calculate how to split it up into individual single page TIFF files. This required a re-import of the entire production. There were many problems encountered in trying to split the largest files with repeated failures as they overwhelmed even servers put to the task.

The production did not include OCR or extracted text.  Plaintiffs already have tools to extract text from images, but they were designed for single page tiffs.  The furnished files were in a multi-page TIFF format.  Some were extremely large.  OCR text was extracted from these large multi-page TIFF documents on the first pass, but the process was slowed tremendously due to the extraordinary size of some files.  Once imported, users could find documents using a keyword search, but could not be shown on what page the keywords were found on.  Again, this was resolved by splitting all images (from above) into single page tiffs and re-importing necessitating additional time and effort.

Some documents in the IND/NDA contain links and references to other documents that were inaccessible, e.g. AZ/SER 0480440.  This document indicates that it should link to the Periodic Safety Update Report (9/26/2005), but there is no way a reviewer can access this document as, through the TIFF process, the link has been lost. For these documents, there was no workaround other than identification through manual review.

It appears that many documents in the IND/NDA were multiple documents that were combined into a single document, such as the 1GB document mentioned above. This created a technical issue as the constituent documents could not be marked and reviewed in the system by more than a single person or treated as more than a single document.  There was much discussion about how to resolve this problem, but ultimately it was decided that any solution would destroy the integrity of the production as delivered and would place too much burden on the reviewers as they would have to make several passes through the documents to determine the breaks.

(a) – (b)    Plaintiffs object to this request as unrelated to the matters at issue on January 28.

(c)    Documentation of the expenses and costs related to AstraZeneca's misconduct is served herewith.

(d)    Plaintiffs object to this request to the extent it calls for information unrelated to the matters at issue on January 28.  Documentation of the expenses and costs related to AstraZeneca's misconduct is served herewith.

## INTERROGATORY NO. 8

Identify each and every data uploading difficulty encountered by Plaintiffs allegedly due to AZ's conduct and describe how you claim Plaintiffs' discovery efforts were affected by these uploading difficulties.

a)  For each data uploading issue identified above, identify the specific manner of production by AZ that you claim caused in the data upload difficulty.

b)  Describe the corrective measures taken by you and identify all persons involved with these corrective measures.

c)  Identify any communications with AZ or counsel for AZ regarding each claimed uploading difficulty and describe the nature and content of those communications.

d)  For each data uploading issue identified above, describe the legal prejudice you claim you suffered as a result of your claim of AZ misconduct.

e)  For each data uploading issue identified above, list the expenses and costs, if any, you claim you suffered as a result of your claim of AZ misconduct.

f)  Provide all documents and/or other evidence supporting your claim of prejudice, expenses and costs identified in your response to this Interrogatory.

## RESPONSE TO INTERROGATORY NO. 8

(a) – (b)

The DOXS import program was written based on the samples AstraZeneca provided to the Plaintiffs before receipt of the first custodial production and was tested using the first production.  The following is a list of data uploading issues (with the exception of issues regarding the IND/NDA which are listed separately above) which made the program ineffective as written and prevented Plaintiffs from being able to write a standardized program by which any user can import a production into DOXS.

1) Production #1: This production contained too many files in the Image and OCR folder.  Images alone contained 266,911 TIFF files.  Just opening this folder using a high end workstation took an unacceptable amount of time.   Although this worked well regarding the links to the metadata and the load file, it took an extremely long time to process.  This was primarily due to the large numbers of files in the folders.
There was no solution to this, but the process was severely slowed.

2) Production #2: This production contained three separate imports.

   AZ-SER-0752206 was the beginning of the first range of documents to be imported.  This particular import had no issues regarding loading but had an extremely long processing time.  The processing issue again was related to the amount of files provided in one folder.  This particular production contained 315,871 images in one folder. Again, there was no solution to this, but the process was severely slowed.

   AZ-SER-1317624 was the beginning of the 2nd batch of documents to be imported.  This batch did contain loading issues.  The load file was provided to the Plaintiffs with a slash ("/") embedded in the beginning Bates number.  The associated metadata file contained the linking Bates number with a hyphen ("-"). This folder also had a change in structure in regards to the where the extracted text existed.  The extracted text existed in a folder called "OCR".  The original production's text existed in a folder called "TEXT".  To fix this and allow the import to work correctly Plaintiffs had to make adjustments to the import program to handle the linking issue.

   In AZ-SER-1317624, an extra column was introduced into the load file to denote the reason for redaction. This was unexpected, and not detected at the original time of upload as Plaintiffs expected that the redactions would be produced in a separate log. When AstraZeneca explained that redactions were being produced to the Plaintiffs in this way, Plaintiffs had to return to this and subsequent productions and reimport only the Redaction field. This was very time consuming and was a special process. Since the production had already started to be reviewed, the existing work product had to be preserved.

AZ-SER-1341934 was the beginning of the 3rd batch of documents to be imported for this production.  This production contained the same issues and resolutions noted under AZ-SER-1317624.

Plaintiffs also discovered that the load file for group AZ-SER-1341934 had some corruption.  The corruption was detected in the AZ/SER13419997 – AZ/SER1345025 range.  Other corruption was not investigated on this file due to the amount of time and effort it took to find this corruption.

3) Production #3: This productions load file and metadata file reverted back to having hyphens in the Bates numbers.  This required Plaintiffs to readjust the program back to the original code that matched the import process of item #1.

4) Production #4: Production #4 contained 20 separate folders which starting with this production converted to 20 separated load files; heretofore the Plaintiffs had been receiving a single load file for each production.  After reviewing each load file and metadata file, Plaintiffs noted that the load file now contained the Bates number with an embedded hyphen("-") and the metadata Bates number contained the Bates number with an embedded slash ("/").  This required another adjustment to the import program and re-verification of the imported data.  This issue affected all of the folders under production #4.

Some of the folders also contained well over 50,000 image files per folder, which made the import very time consuming.

5) Production #5: This production again changed the format of the beginning Bates number.  In both the load file and the metadata file and 8 folders the beginning and ending Bates number contained 2 hyphens.  Program adjustment was also required as well as validation after the import.

6) Production #6: Same as #5 for all 7 Folders.

7) Production #7: Production #7 contained 13 folders.  There was an issue with the uploading of TEXT file.  Disregarding the file extension, the file name did not match the image file name.  Plaintiffs were required to make adjustments to the import process.

Plaintiffs also discovered that the load file for this load file had some corruption.  The corruption was detected from AZ-SER-2548303– AZ-SER-2548311 range.  Other corruption was not investigated on this file due to the amount of time and effort it took to find this corruption.

8) Production #8: Production #8 contained 16 separate folders.  Issue was the same as in item #7.

9)  Production #9: Same as Production #8 for all 8 folders.  Another issue arose
    while importing the metadata.  Plaintiffs noted that the metadata file had some
    invalid characters embedded in some of the fields.  Program changes were
    required to replace these characters before importing into DOXS.

10) Production #10: This production had issues matching the metadata file to the load
    file.  Beginning Bates did not match between the files.  Metadata beginning Bates
    number contained a slash ("/") while the load file beginning Bates number
    contained multiple hyphens ("-").  Plaintiffs had to revert back to the code noted
    in item #4 as well as perform a full verification of the imported data.

    Plaintiffs also encountered the same issue regarding the text files as in Item #7.
    The folder ReppP1 also contained invalid characters embedded into a few of the
    fields as noted under item #9.

11) Production #11: This production contained Bates ranges with multiple hyphens.
    Verification needed to be performed due to the prior issues noted.  In Production
    #11 the folder where the text existed was changed to "OCR" from the prior
    "TEXT'.  A program change was needed.

12) Production #12: Same as #11 for all 3 groups.  Also the folder structure now
    changed to TEXT from OCR.  This change again required a change to program
    because the prior production was imported by means of the OCR Folder.

13) Production #13: This production contained 2 separate groups.  Each group had an
    issue matching the text file to the image file.  Re-programming of the import
    process was required.

14) Production #15: This production had issues regarding text files not matching the
    image file names for a group except for the CANDA group.  Re-programming of
    the Import process and re-verification of the import was necessary due to the 2
    different scenarios.

15) Production #16: This production contained 15 separated groups of documents.
    Each group had the issue where the image name did not match the text file name
    (Disregarding the file extension).

    With this production we also received the extracted text with page breaks.
    Plaintiffs analyzed the documents and found that the first page break was missing
    from every document, subsequently the page counts of the physical image did not
    match.

16) Production #17: With this production we received the extracted text with page
    breaks for the foreign language production.  Plaintiffs needed to create a new tool
    that would analyze these documents and match them up to the image pages thus
    ensuring that the page breaks match the document pages.

Plaintiffs later realized that the Foreign Language production introduced duplicate Bates numbers with earlier production. This caused searches to return incorrectly.

17) Production #18: This production contained the Blank Page replacements.  After analyzing the blank page metadata and load file, Plaintiffs concluded that the blank pages were not correct and requested AstraZeneca to re-produce these pages.  There was a lot of programming effort and time devoted to this conclusion.  The import process had to change because the import process was designed for new documents not for replacing documents, while keeping the original documents (in this case the original documents had been reviewed and possibly pulled for depositions, etc.).

18) Production #19: With this production the plaintiff's received extracted text, Native Excel and new Blank Page replacement productions.  Plaintiffs were required to make extensive changes to the import procedure.  These file were received with no load file.  Program had to depend on the files name to match the beginning Bates number of the document.
Many of the extracted text and native excel documents were unable to be matched to their original Bates.

19) Production #26: This production contained a folder called "ROGERS".  This folders Load file and Metadata file did not match in regards to the Bates numbers. The metadata Beginning Bates number did not contain the prefix.  Plaintiffs had to make changes to the Metadata file in order for the import process to work.

20) Production #28: This production contained 7 folders.  One of the folders "AZSER 10765223-10765304 - Seroquel USPT Materials" had an issue with the image path.  The image path was incorrect.  Plaintiffs after some debugging effort found that the path was incorrect on the load file analyzed the Image directory and recreated the load file with the correct path.  The original load file was not changed import was processed using the new load file.

21) Production #37: No load file or metadata file was provided to the Plaintiffs. Plaintiffs were unable to identify the files, and had to use the file names as the identifier, necessitating another change in the import process.

22) Production #39: No load file or metadata file was provided to the Plaintiffs. Plaintiffs were unable to identify the files, and had to use the file names as the identifier, necessitating another change in the import process.

23) Metadata Import Process:  The following are the issues encountered while attempting to import the metadata:
   a. Column counts were not consistent thru out all of the productions.  Some files contained 19 Columns others contained 21 columns.

    b.   Column names were also inconsistent.  Not all metadata files had the same column in the same position as well as spelling issues.  For instance:

        i.  In Margaret Melville's production IP4, Bates Number AZSER1576971, the 'Begin Attach Number' contains the names of people and the 'Folder' field contains a date.

        ii.  In Charles Peipher's production IP4, Bates Number AZSER1794510, the 'File Last Save Date' is blank and contains no date.

        iii.  In John (Jack) Boorstein's production IP5, Bates Number AZSER1867352, the 'Copyee/CC' field has a date.

    c.   There were instances where the data columns had more columns than the header columns. Specifically, this happened in the Corrected Load File production.

    d.   The encoding of the files changed between productions, preventing the Plaintiffs from being able to load the data without loss of information, e.g. the Corrected productions were in a different encoding than the prior productions.

      Due to the issues above analyzed prior to the import, Plaintiffs had to develop a system that will do these imports consistently and quickly.

Jonathan Jaffe, Lenny Fernandez, Brendan McAteer, and Sung Kim of Weitz & Luxenberg P.C. were all involved in the data uploading difficulties and the efforts to work around them.

      (c) Plaintiffs object to this request as unduly burdensome, as it calls for identification of a great number of communications over an extensive period of time, to which AstraZeneca and its counsel were themselves parties, and the records of which are equally available to AstraZeneca and its counsel.  Plaintiffs nevertheless respond that these communications include: correspondence in evidence and referenced at the July 26 hearing;

      (d)    Plaintiffs object to this interrogatory as unrelated to the matters at issue on January 28.

      (e)    Documentation of the expenses and costs related to AstraZeneca's misconduct is served herewith.

      (f)    Plaintiffs object to this request to the extent it calls for information unrelated to the matters at issue on January 28.  Documentation of the expenses and costs related to AstraZeneca's misconduct is served herewith.

## INTERROGATORY NO. 9

Identify each and every "special program" and "workaround" created by Plaintiffs that you claim was necessary due to AZ's conduct and describe how you claim Plaintiffs' discovery efforts were affected by these uploading difficulties.

a)   For each "special program" and "workaround" identified above, identify the specific manner of production by AZ that you claim necessitated the "special program" or "workaround."

b)   Identify all persons involved with creating the "special programs" and/or "workarounds."

c)   Identify any communications with AZ or counsel for AZ regarding the claimed production problems requiring the "special program" and/or "workaround" and describe the nature and content of those communications.

d)   For each "special program" and/or "workaround" identified above, describe the legal prejudice you claim you suffered as a result of your claim of AZ misconduct.

e)   For each "special program" and/or "workaround" identified above, list the expenses and costs, if any, you claim you suffered as a result of your claim of AZ misconduct.

f)   Provide all documents and/or other evidence supporting your claim of prejudice, expenses and costs identified in your response to this Interrogatory.

## RESPONSE TO INTERROGATORY NO. 9

(a)   A great number of workarounds and special programs have been already identified in the answers to preceding interrogatories.

The IND/NDA productions required a great deal of work.  Plaintiffs explained the problems in detail in response to Interrogatory No. 7.

Breaking TIFF files apart (again, explained in detail in response to Interrogatory No. 7).

Bates number inconsistencies were a problem with several custodial productions. Dashes and forward slashes in Bates numbers seemed random at times.  In a load file for IP2, AZ-SER0752206 was a Bates number.  In IP13, Bates numbers have 2 dashes (AZ-SER-6557224).  Finally, in a load file in IP16, no dashes (AZSER09701935).  Forward slashes are in the actual image.  This made it difficult to show reviewers how to search by Bates when the format was always changing.  A stored procedure needed to be created that looked for any special characters in the Bates numbers and removed them; however, that compromised the integrity of the data as given to Plaintiffs by AstraZeneca, so for a while, additional fields were preserved.

15

Searching by custodians was very cumbersome.  This was because the SOURCE attribute sometimes had misspelled names in it.  James Gaskill documents are a good example.  Most documents were labeled as "Gaskill, James" in the SOURCE but several had "Gaskill, J".  When reviewers ran searches on SOURCE="Gaskill, James," some documents belonging to him were not in the result set.  Plaintiffs had to create Custodian folders to help the reviewers.  Plaintiffs then created a procedure to read each document's source attribute and move a copy of the document into the respective custodian's folder.  Any discrepancies had to be manually caught and moved (Gaskill, J).

Plaintiffs needed to create a special Bates number search extension to DOXS to help make it easier to find the Bates within the productions.

Plaintiffs needed to show the extracted text/OCR to the users (a new function) and enable them to perform a double search to handle the tremendous size of the documents.

Plaintiffs needed to create a host of virtually associated documents to deal with the various replacement files and replacements on top of replacements, such as the blank page replacements which replaced a prior blank page replacement production that replaced a still prior blank page replacement production that replaced the original documents.

Plaintiffs needed to create a host of "investigational" and "verification" tools to check field order, map disparate field names (field names did not remain consistent across productions, starting with Production #4), count columns, etc.

Plaintiffs needed to create a staging area to hold the contents of the metadata while it was verified, resulting in double the storage space necessary for the metadata in the database.

Plaintiffs needed to create an application to analyze page breaks.

Plaintiffs needed to retool existing services to handle extraordinarily large multi-page TIFF files for the IND/NDA productions to break them apart.

Plaintiffs needed to create a tool to analyze the source metadata field to analyze the issue with multiple email addresses.

Plaintiffs needed to create a tool to analyze the production for image inconsistencies, i.e. to compare redeliveries of blank pages to check whether they fixed the problem.

Plaintiffs needed to develop a tool to determine the issues with deduplication missing information.

Plaintiffs needed to develop a tool to export large volumes of material to the deposition teams as much offline had to be searched the old fashioned way, manually. Plaintiffs had to build and deploy a secure FTP solution to transmit this material.

Plaintiffs needed to develop a tool to archive historical metadata that was replaced by subsequent productions.

Plaintiffs needed to develop a special program to parse the pdf version of the privilege log to enable filtering of the log.

(b)     Jonathan Jaffe, Lenny Fernandez, Boris Gonopolsky, Brendan McAteer, and Sung Kim of Weitz & Luxenberg P.C. were all involved in the data special programs.

(c)     Plaintiffs object to this request as unduly burdensome, as it calls for identification of a great number of communications over an extensive period of time, to which AstraZeneca and its counsel were themselves parties, and the records of which are equally available to AstraZeneca and its counsel.  Plaintiffs nevertheless respond that these communications include: correspondence in evidence and referenced at the July 26 hearing; correspondence in subsequent court filings, including those contained in the exhibit lists served herewith; the correspondence contained in the .pst file served herewith; telephone and in-person communications in the presence of the SM-ESI; telephone and in-person meetings between Mr. Jaffe and technical representatives of AstraZeneca, including Bill Adams; telephone conferences between representatives of the parties.

(d)     Plaintiffs object to this interrogatory as unrelated to the matters at issue on January 28.

(e)     Documentation of the expenses and costs related to AstraZeneca's misconduct is served herewith.

(f)     Plaintiffs object to this request to the extent it calls for information unrelated to the matters at issue on January 28.  Documentation of the expenses and costs related to AstraZeneca's misconduct is served herewith.


**INTERROGATORY NO. 10**

Identify each and every technical difficulty or issue you contend you have encountered with any AZ document production, including, but not limited to, any problems with load files, multipage TIFF images, OCR, page breaks, and file size, and describe the manner in which each such technical difficult or issue negatively impacted your ability to prepare your case.

a) For each instance identified above, identify the specific conduct by AZ that you claim negatively impacted your ability to prepare your case.

b) For each instance identified above, describe the legal prejudice you claim you suffered as a result of your claim of AZ misconduct.

c) For each instance identified above, list the expenses and costs, if any, you claim you suffered as a result of your claim of AZ misconduct.

d) Provide all documents and/or other evidence supporting your claim of prejudice, expenses and costs identified in your response to this Interrogatory.

## RESPONSE TO INTERROGATORY NO. 10

In addition to all of the technical difficulties laid out in the answers to the specific questions above and below, the Plaintiffs had the following technical issues with the productions:

1) All of the load files misidentified the custodians. The letters that accompanied the load files were misleading and did not represent the elimination of documents through the deduplication process as the letters identified specific ranges of Bates numbers that applied to specific custodians, when those Bates ranges actually applied to multiple custodians.

2) In the corrected load files additional non-custodians were specified in the Source field that should not have been there. This confused reviewers and made extra development work in organizing folders for these non-custodians for documents.

3) The deduplication across custodians led to many instances of email with attachments with the incorrect metadata, i.e. an attachment was deduped as paired with a loose file and either the metadata of the attachment from the email was lost or the metadata of the loose file was lost. In either case, the wrong emails pulled up from searches against the dates of attachments.

4) Some attachments on emails had dates that postdated the date of the email.

5) The deduplication process eliminated BCC data.

6) The reproduction of Excel native files did not match the Excel files that had been produced.

7) The media files were delivered without names.

8) Replacement images created overlapping Bates numbers: AZSER03317929 contains 2 pages AZSER03317929 and AZSER03317930 and Related image AZSER03317930 also contains 2 pages first page starts with AZSER03317930 which is the last page of the replacement image.

9) The page breaks in the extracted text did not match the number of the pages in the documents and in some cases numbered considerably more or less.

10) The blank pages were not really blank. They contained data. The reproduction of the blank pages (Production #41) actually introduced additional blank pages and illustrated that the entire prior production contained a notable percentage of pages that should have not been previously blank or were otherwise missing information, i.e. emails missing images, PowerPoint presentations missing images, and files previously produced with a slip sheet that they were corrupted or an unprintable type that were successfully reproduced. As a technical issue, the specific documents that contained new data were not identified and a sampling was only able to be located through a laborious process.

11) Control numbers provided by AstraZeneca are as inconsistent as the Bates numbers with different prefixes, etc.

12) Redactions were recorded at the document level, not at the field level, so Plaintiffs' software, DOXS, cannot identify the purpose of a specific redaction on documents with multiple redactions. This must be done manually by an examination of the document.

13) The addition of supplemental production (search terms, etc.) and the reissue of additional documents from previously produced custodians over many productions created a technical challenge of keeping reviewers track of what of a custodial file had been reviewed and what had not as attachments could proceed emails by weeks. There was much time spent on trying to find such workarounds to keep reviewers straight, ultimately unsuccessful.

14) The Excel TIFF images and extracted text were unusable. Excel spreadsheets printed on multiple pages over what they should have and often only a few pieces of information would be visible on a sheet.

15) The privilege log was not provided in a searchable format. Once it was provided by AstraZeneca in a searchable pdf format, it was not possible to export it into Excel to sort by custodian or date or the other fields on the log.

16) The documents did not display tracked changes. This was because the documents produced were not TIFF'd with the setting that would have displayed tracked changes.

(b)     Plaintiffs object to this interrogatory as unrelated to the matters at issue on January 28.

(c)     Documentation of the expenses and costs related to AstraZeneca's misconduct is served herewith.

(d)     Plaintiffs object to this request to the extent it calls for information unrelated to the matters at issue on January 28.  Documentation of the expenses and costs related to AstraZeneca's misconduct is served herewith.

19

## INTERROGATORY NO. 11

Identify each and every instance in which your ability to notice Rule 30(b)(6) depositions was affected by AZ's conduct and the manner in which your ability to notice those depositions was affected.

a)  For each instance identified above, identify the specific conduct by AZ that you claim affected your ability to notice the deposition.

b)  For each instance identified above, describe the legal prejudice you claim you suffered as a result of your claim of AZ misconduct.

c)  For each instance identified above, list the expenses and costs, if any, you claim you suffered as a result of your claim of AZ misconduct.

d)  Provide all documents and/or other evidence supporting your claim of prejudice, expenses and costs identified in your response to this Interrogatory.

## RESPONSE TO INTERROGATORY NO. 11

Plaintiffs object to this interrogatory as unrelated to the matters at issue on January 28.

## INTERROGATORY NO. 12

Describe with specificity how AZ's conduct has hampered your ability to identify and understand the individuals and business units and entities that contributed to bringing Seroquel to the market.

a)  Identify the specific conduct by AZ that you claim affected your ability to identify understand the role of the entities.

b)  Describe the legal prejudice you claim you suffered as a result of your claim of AZ misconduct.

c)  List the expenses and costs, if any, you claim you suffered as a result of your claim of AZ misconduct.

d)  Provide all documents and/or other evidence supporting your claim of prejudice, expenses and costs identified in your response to this Interrogatory.

## RESPONSE TO INTERROGATORY NO. 12

Plaintiffs object to this interrogatory as unrelated to the matters at issue on January 28.

**INTERROGATORY NO. 13**

Identify each and every delay and difficulty you have had with AZ's production that has hampered your ability to seek follow-up discovery and identify with specificity the follow-up discovery you claim was affected by the alleged delays and difficulties.

a) For each delay and/or difficulty identified above, identify the specific conduct by AZ that you claim affected your ability to seek follow-up discovery.

b) For each delay and/or difficulty identified above, describe the legal prejudice you claim you suffered as a result of your claim of AZ misconduct.

c) For each delay and/or difficulty identified above, list the expenses and costs, if any, you claim you suffered as a result of your claim of AZ misconduct.

d) Provide all documents and/or other evidence supporting your claim of prejudice, expenses and costs identified in your response to this Interrogatory.

**RESPONSE TO INTERROGATORY NO. 13**

Plaintiffs object to this interrogatory as unrelated to the matters at issue on January 28.

**INTERROGATORY NO. 14**

Describe with specificity how AZ's conduct has affected your ability to identify the most relevant documents for your preparation of your case.

a) Identify the specific conduct by AZ that you claim affected your ability to identify the most relevant documents for your preparation of your case.

b) Describe the legal prejudice you claim you suffered as a result of your claim of AZ misconduct.

c) List the expenses and costs, if any, you claim you suffered as a result of your claim of AZ misconduct.

d) Provide all documents and/or other evidence supporting your claim of prejudice, expenses and costs identified in your response to this Interrogatory.

**RESPONSE TO INTERROGATORY NO. 14**

Plaintiffs object to this interrogatory as unrelated to the matters at issue on January 28.

**INTERROGATORY NO. 15**

Identify each and every motion filed by AZ where you claim your ability to respond was affected by AZ's conduct and the manner in which your ability to respond was affected.

    a)  For each motion identified above, identify the specific conduct by AZ that you claim affected your ability to respond to the motion.

    b)  For each motion identified above, describe the legal prejudice you claim you suffered as a result of your claim of AZ misconduct.

    c)  For each motion identified above, list the expenses and costs, if any, you claim you suffered as a result of your claim of AZ misconduct.

    d)  Provide all documents and/or other evidence supporting your claim of prejudice, expenses and costs identified in your response to this Interrogatory.

**RESPONSE TO INTERROGATORY NO. 15**

Plaintiffs object to this interrogatory as unrelated to the matters at issue on January 28.

**INTERROGATORY NO. 16**

Identify each and every delay and difficulty you have had with AZ's production that has hampered your ability to locate experts, designate experts and prepare expert reports.

    a)  Identify with specificity the experts, expert reports, and areas of expert testimony you claim were affected by the alleged delays and difficulties.

    b)  For each delay and/or difficulty identified above, identify the specific conduct by AZ that you claim affected your ability to designate experts and prepare expert reports.

    c)  For each delay and/or difficulty identified above, describe the legal prejudice you claim you suffered as a result of your claim of AZ misconduct.

    d)  For each delay and/or difficulty identified above, list the expenses and costs, if any, you claim you suffered as a result of your claim of AZ misconduct.

    e)  Provide all documents and/or other evidence supporting your claim of prejudice, expenses and costs identified in your response to this Interrogatory.

**RESPONSE TO INTERROGATORY NO. 16**

Plaintiffs object to this interrogatory as unrelated to the matters at issue on January 28.

**INTERROGATORY NO. 17**

Describe the information technology components of your document management and/or review system(s) that you use to collect, maintain, review, query, or otherwise manipulate AZ's produced documents.

a) For each system identify the following:

i) Database services, infrastructure, platform, hardware, and mainframe relating to your document management system;

ii) Amount of memory and capacity of the hard disks;

iii) Name and version of the operating system;

iv) Name and version of software and programs;

v) Brand, manufacturer/developer and version of document management software;

vi) File and metadata storage components;

vii) Identify all individuals and their titles with access to and/or knowledge of the document management and/or review system.

b) Describe in detail the manner in which you review AZ's produced documents on your document management and/or review system(s) and/or by hard copy, including, but not limited, to the following:

i) Whether you employ contract personnel to conduct document review;

ii) Whether you conduct targeted searches for relevant documents or review every produced document;

iii) For any targeted searches, describe how those searches are conducted and who is responsible for these searches;

iv) What capabilities do reviewers have to search both the fielded and full text content data simultaneously;

v) What records are kept by the review database regarding which documents reviewers have looked at and which field(s) reviewers have coded;

vi) Does the review platform have an audit log of the reviewers' activities, including speed of review and coding;

vii) Describe the document to document speed of your review platform;

viii) State whether your review platform is internet accessible;

        ix) How your review in this litigation differs from those you conducted in prior litigation.

c) Identify the person(s) most knowledgeable about your document management system(s) and document search and review protocols.

## RESPONSE TO INTERROGATORY NO. 17

Plaintiffs employ a proprietary document management system, DOXS, developed, maintained, and hosted by Plaintiff law firm Weitz & Luxenberg P.C.  DOXS consists of a single Microsoft SQL Server 2000 database, .NET application components, and file storage.  DOXS uses the full-text indexing in Microsoft SQL Server 2000 to index the produced documents.  Dedicated workstations are setup to split apart multi-page documents and OCR documents.  Users are able to access DOXS remotely and securely through a publish Citrix application for which they are required to preinstall a certificate.

(a)  The information regarding the systems and servers that are part of DOXS is included as a separate attachment.

(b)  Plaintiffs object to this interrogatory as unrelated to the matters at issue on January 28.

(c)  Jonathan Jaffe is the person most knowledgeable about the document management system and document search and review protocols from the technical perspective.

## INTERROGATORY NO. 18

For the document management and/or review systems listed above, produce all documents supporting those systems, including user manuals.

## RESPONSE TO INTERROGATORY NO. 18

Plaintiffs object to this interrogatory as unrelated to the matters at issue on January 28.

## INTERROGATORY NO. 19

Describe the process by which your document management and/or review system(s) upload, handle, and search the documents produced by AZ.

a) For each system identify the following:

        i)  What image formats are accepted by your document management and/or review system;

        ii)  Whether your system allows for the direct import of native files;

(1) If not, what process is required to import native files into your review platform;

    iii) Describe in detail services that outside vendors would be required to perform to be able to review native files.

    iv) What data load formats are importable directly into the document management and/or review system.

b) Describe in detail what transformations need to be made to the image and data load files delivered from AZ before they can be used to update the document review database.

c) Describe the full text content engine you use to perform content searching.

    i) State whether there has been any specific difficulties caused by the format of the extracted text delivered with AZ's productions that has prevented your indexing and searching engines from working.

(1) For any difficulties encountered, describe the nature of the difficulties and what steps, if any, you have taken to remedy these difficulties.

**RESPONSE TO INTERROGATORY NO. 19**

Plaintiffs' document management system, DOXS, processes the productions from AstraZeneca in a series of steps.

i) Each production is first run through a verification process, manual and automated, to determine the structure of the production and the integrity of the load files, if any.

ii) The production is run next through an automated tool that parses out the files and OCR or extracted text.

iii) Files are copied from the source media to a temporary server location.

iv) Virtual documents within DOXS matching these files are created.

v) Indexing of the OCR/extracted text starts at this point.

vi) The associated metadata with the document is stored in a series of temporary tables apart from the document.

vii) An application reconciles and maps the metadata with existing fields (attributes) that are available for the set of documents, e.g. Beg Bates → Beginning Bates.

viii)   Any errors are logged.

ix) The application takes the mapped fields and applies them to the document as attributes.

x) A service moves the files to a permanent location.

xi) Another application moves the files based upon the metadata provided into a series of virtual folders that organize the documents by production, custodian, Bates order, and date.

xii) A review of the import determines errors.

xiii)    If the review finds for an error, then there may be further manipulation within the actual DOXS system tables.

(a) system information

i) DOXS supports the TIFF, JPEG, GIF, PNG, and PDF image formats.

ii) DOXS supports the import of native files on an individual level. DOXS is not currently a review platform for native files. Native files will open in their host applications, and while they may be stored, DOXS does not index their contents, and they cannot be searched.

(1) In order to support native file review, DOXS would have to be significantly modified to enable the searching of the documents, the "petrification" of the documents for use at depositions, i.e. printing copies with embossed hash values, performing MD5 hashes of received materials to verify authenticity, and provide a viewer to review the documents. There were developing plans to modify DOXS to this effect in December 2006; however, due to the expectation of the start of receipt of the TIFF and load file production in 2007 for the Seroquel Litigation, those were put on hold. When the troubles occurred with the TIFF and load file production, the plans were put on indefinite hold although some progress has been made toward that goal, such as the scheduled upgrade to SQL Server 2005 64bit edition this coming Sunday, January 20th, 2007.

While these upgrades to support native format were feasible in 2006, they are no longer given the quantity and compressed timeline of the native redelivery of the TIFF and load production, especially when compounded by the significant undertaking to reconcile the existing production to the redelivery and port over existing work product into the new system; furthermore, the real deadline of the deposition schedule further would complicate the effort as these documents would need to be loadable and searchable as they came in. New personnel would help, but as DOXS is a proprietary system, there is a significant learning curve to be able to write functionality to extend DOXS that is too

long for the timeline that would be required. There would be an additional burden of adding additional storage capacity to house the reproduction in a short time.

     iii)  Plaintiffs' vendor will be responsible for the loading of each production in an environment capable of native review and native searching.

     Upon receipt of the production, the vendor is expected to process the data and generate a complete inventory report of every item, down to a file-level hash value. The vendor will then assess the collection for internal consistency (integrity) and completeness, reporting any concerns. The data set must be available and searchable, and available to batch for review according to typical criteria like custodian name, date range, file type, keywords, etc. The vendor should be able to use analysis of the native data to show items likely to be non-responsive, particular tones of voice suggested by an item, and items grouped to reflect "related but not necessarily similar."

     The vendor will provide capability remotely to access the review platform.

     The vendor will import and reconcile all existing work product.

     The vendor will provide training and support.

     The vendor will provide hosting for the data for a minimum of 36 months.

     iv)  DOXS supports most common load files including ones used by Summation, Concordance, IPro, and Opticon.

     (b)  DOXS import does not allow any special characters in the Bates Number field for load files (.lpf).  Any characters like these must be removed before the load file is used.

     The same holds true for the metadata files (.dat).  Any special characters in the fields must be removed before reading the file.  That best ensures the link between image from the load file to the metadata describing the image.

     For the most part, images themselves do not need to be transformed for upload into DOXS.  Single page TIFF is preferred, but DOXS handles reasonably sized multi-page TIFFs as well as PDF, DOC, JPG, GIF.

     Any multi-valued fields, such as Source, must be broken apart to make their components individually searchable and more digestible.

     The import program recognizes load files in ASCII text.  Any extraneous headers or marks at the end of the file must be removed.

     (c)  The full-text engine used to search and index the extracted text and OCR is the engine that comes with Microsoft SQL Server 2000.

i)  There have been difficulties caused by the format of the extracted text delivered with AZ's productions, most notably the lack of page breaks in the text. The lack of page breaks in the extracted text has made it impossible from a search to locate the corresponding pages in the document with the found search terms apart from guesswork. The missing pages and other content were not able to be searched as they were not present in the extracted text. The extracted text of spreadsheets  (for instance AZSER0753236) were produced with wrapping text, destroying their searchability, i.e. if a cell wrapped, the extraction would break the text so "engorgement" became "engorgeme    nt" with the nt divorced from the rest of the word (space retained from the extracted text).

When the redelivered extracted text with page breaks was produced it contained multiple errors.

Many of the documents fell into a category where the number of pages in the text replacement provided did not match the number of pages in the original document. For a small number, this was an expected error rate, but for the majority the error includes missing or extra page breaks inexplicably. For example, one document that had 7393 page breaks in the extracted text was only 36 pages, and conversely, a 336 page document, only had 21 page breaks in the extracted text.

 In a second category of documents, the page breaks were off by one. For most the documents, it appeared as if the page break for the first page was skipped, combining pages #1 and #2, but reasonably approximating the breaks on the rest of the pages. For a good percentage of these documents, the page breaks were wildly off.

The final category of documents in the fix included documents where we were unable to find the Bates number referred to by the replacement text file's name.

(1)  For the IND/NDA, the Plaintiffs were not given Extracted Text/OCR data.  It was decided to break the multipage tiffs into single page tiffs and have these OCRed at the Plaintiffs' expense.  This produced the page breaks necessary, but without the precision of Extracted Text (which would be furnished in later productions).

For early custodial productions, AstraZeneca furnished Extracted Text for each document, but did not supply any page breaks for this text.  Due to the extraordinary amount of time and server resources required to OCR the documents, and since losing any precision of Extracted Text was not an option anyway, after investigation including solicitation from vendors for price quotes to manually add in breaks. As that was prohibitively expensive, Plaintiffs continued to press the issue with AstraZeneca and reviewers were informed about the drawback.

As one workaround, DOXS was upgraded to have the ability to expose the exact text provided by AstraZeneca in a .txt format.  This gave users the ability to at least see the context of their search.  It also gave users a "general" idea of where the resulting query landed in a document. Users had to perform two searches though to locate text

within a document, and there was no ability to perform anything more complicated than a phrase search.

        In later productions, page breaks were furnished, but several other difficulties were introduced (as set forth above).  From incorrect page counts, to not being able to match Bates numbers with associated files, it was decided to ignore the page breaks and continue to return documents with successful hits. This was an unpleasant solution, but the unreliability of the page breaks provided with the corrected and subsequent productions would have made their use ineffective.

## INTERROGATORY NO. 20

    Identify with specificity all attorneys, IT personnel, vendors and/or any other individual involved with the document review, document analysis, meet and confers with Defendants, corrections/fixes for the technical problems/issues, and/or IT issues and identify the specific nature of their involvement.

    a)  For all persons named above, provide time records related to those activities.

    b)  For all IT professionals named above, provide CVs.

## RESPONSE TO INTERROGATORY NO. 20

        Plaintiffs object to this interrogatory to the extent it calls for information unrelated to the matters at issue on January 28.

        (a) Timekeepers and records for whom plaintiffs will seek recovery on January 28 are identified in disclosures served herewith.

        (b) Plaintiffs will provide Mr. Jaffe's CV.

## INTERROGATORY NO. 21

    Describe the role of all technological consultants (including, but not limited to, Jonathan Jaffe) in your work relating to discovery in this matter.

    a)  In addition to the above-stated description, provide the following information:

       i)  Title;

       ii)  Employer;

       iii) Years of employment with current employer ;

       iv)  Salary;

       v)  Bonus, incentive-based payments, and other compensation;

       vi)  Speaking engagements;

vii) Publications; and

viii)    Involvement in litigation involving electronic discovery disputes.

b)   Provide a current copy of the CV for each identified individual.

## RESPONSE TO INTERROGATORY NO. 21

AstraZeneca is already in possession of Mr. Martin's CV.  Mr. Jaffe's will be served herewith.

## INTERROGATORY NO. 22

Identify each and every expense and cost you claim to have suffered as a result of alleged AZ misconduct.

a) For each expense or cost, specify the conduct by AZ that you claim led to the expense or cost.

b) Provide all documents and/or other evidence supporting your claim of prejudice, expenses and costs identified in your response to this Interrogatory.

## RESPONSE TO INTERROGATORY NO. 22

Plaintiffs serve herewith evidentiary support for the costs sought at the January 28 hearing.

## INTERROGATORY NO. 23

Identify each and every instance of legal prejudice you claim to have suffered as a result of alleged AZ misconduct.

a) For each example of prejudice, specify the conduct by AZ that you claim led to the prejudice.

b) Provide all documents and/or other evidence supporting your claim of prejudice, expenses and costs identified in your response to this Interrogatory.

c) Identify any and all alleged efforts Plaintiffs used to mitigate any damages identified in response to the preceding questions.

## RESPONSE TO INTERROGATORY NO. 23

Plaintiffs object to this interrogatory as unrelated to the matters at issue on January 28.

## INTERROGATORY NO. 24

Identify each and every witness you intend to call at the January 28, 2008 hearing on this matter, each and every exhibit, demonstrative, and any other document or data you intend to use or rely on at the hearing, and every other method you intend to use to establish your claims that you suffered prejudice as a result of AZ's alleged misconduct.

a)  Provide any and all documents and/or data identified in response to this Interrogatory;

b)  Provide a copy of all demonstrative materials you intend to use and/or rely upon at the hearing.

c)  Provide a copy of all exhibits you intend to use and/or rely upon at the hearing.

## RESPONSE TO INTERROGATORY NO. 24

Plaintiffs object to this interrogatory to the extent inconsistent with Court order or Local Rule, but serve herewith a witness disclosure, exhibit list and exhibits.


Dated:  January 16, 2008                    LEVIN SIMES KAISER & GORNICK LLP

                                            _____/s/ Dennis J. Canty_____
                                            Lawrence J. Gornick (CA State Bar No. 136290)
                                            Dennis J. Canty (CA State Bar No. 207978)
                                            44 Montgomery Street, 36th Floor
                                            San Francisco, CA  94104
                                            Telephone:  415-273-8138
                                            Facsimile:  415-981-1270
                                            E-mail:        lgornick@lskg-law.com
                                                            dcanty@lskg-law.com