UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE: Seroquel Products Liability Litigation          Case No. 6:06-md-1769-Orl-22DAB

This Document Relates to ALL CASES

**Fourth Status Report of Craig Ball, Special Master - Electronically Stored Information**
**January 22, 2008**

I'm pleased to report the parties have made significant progress toward resolution of ESI issues since my last report. In fact, several concerns expressed in my last report appear poised for full and satisfactory resolution, the prospect of which I credit in large part to cooperation and diligence on the part of Astra Zeneca, its counsel and vendors. Since the January 4, 2008 hearing, both sides have redoubled efforts to resolve seemingly intractable ESI difficulties, and their labors are starting to pay off in terms of sensible, well-crafted agreements, clear directives, reduced burden and cost and a welcome decrease in the time expended in each moderated meet-and-confer call. Additionally, the court's imposition of the March 14, 2008 substantial completion deadline succeeded in helping all to appreciate the benefits of prompt and amicable resolution where possible and in maturing issues for resolution by the court or the SM-ESI when agreement was not forthcoming. We are not out of the woods, but I see the tree line.

**Update: GEL**
In my last report, I detailed my concerns regarding data that was non-retained in a critically important Astra Zeneca database called GEL. I still harbor those concerns and remain frustrated at the prolonged lack of responsiveness to my efforts to determine what, if any, information created within GEL is truly gone; that is, whether it does not exist anywhere on Astra Zeneca's far-flung network. However, I've been assured that the information I've sought is forthcoming, and Astra Zeneca has lately been laudably cooperative in exploring ways it might reasonably recover other accessible data that was non-retained following the onset of the company's preservation duties for this litigation.

**Update: Redaction of Complex ESI**
Also in my last report, I took Astra Zeneca to task for its avowed intention to employ redaction methods contrary to the goals of a native production and certain to corrupt unredacted information in complex ESI. I'm happy to note that Astra Zeneca ultimately agreed to employ appropriate native redaction methods in a manner that, per agreement of the parties, is poised to fairly balance the plaintiffs' needs against Astra Zeneca's burden and cost. There are aspects of the solution that depart from what I personally regard as best practices; however, the parties have agreed in principle to an approach close enough to an optimum resolution to ameliorate my concerns.

1

**Status of Work since Jan. 4 Hearing**
The last two weeks have seen a breakthrough in the parties' ability to work together to cooperatively reach accord on key technical issues. Astra Zeneca focused on solutions, and posturing gave way to productivity. Astra Zeneca's counsel Kevin Kerns, of the Dechert firm, particularly deserves high marks for his efforts of late. Another defense counsel, Chris Coutroulis of Carlton Fields, was instrumental in shepherding resolution of the redaction dispute.

We made great strides in arriving at utile native and quasi-native forms of production for many of the databases at issue. Happily, these forms should entail a lesser burden and cost to Astra Zeneca than the forms it previously intended to produce. Such a positive prospect is attributable to the unusually high level of technical expertise on both sides. Without that parity of technical expertise, it would be difficult for counsel to embrace the sophisticated production formats employed.

The parties also reached agreement concerning the forms of production and redaction for e-mail. The agreed-upon format should materially assist the plaintiffs in their use of automated review techniques and e-mail analytics.

The parties are close to agreement on an authentication protocol for the use of ESI at deposition and in court. Further, we are progressing in terms of ferreting out and, as feasible, collecting relevant, overlooked ESI. Where it appears that the data cannot be recovered, we are exploring approaches that will allow the parties to gauge how much might be lost and assess its importance to issues in the case.

I sense that once the various loose ends are tied up, we may be approaching a "quiet" time in terms of ESI issues, at least until the production starts to roll out and we see how well agreements and expectations are met. Though our frequent discussions will continue, I'm optimistic that they will consume less time.

**Conference Call Recordings**
Another positive development follows my decision to abandon the use of written minutes to aid the participants' memories concerning matters addressed on our period conference calls. The minutes proved a battleground from the start and underscored the fact that people tend to hear what they want to hear. Minutes precipitated counter-minutes and counter-counter minutes. The plaintiffs repeatedly sought to have a court reporter on the calls, which requests I declined as unduly cumbersome and expensive. When it became clear that minutes wouldn't work, I initiated audio recording of the calls at no cost to the parties and under very restrictive conditions, e.g., the recordings may only be used by participants on the calls to refresh their recollection of what they heard and cannot otherwise be used or shared.

As both sides didn't like the decision, I was confident I was on the right track. Indeed, the existence of the recordings has had a positive impact. The parties no longer squabble about what was sought or said during the calls, and the discussions seem characterized by better

courtesy and cooperation.  More importantly, resources once devoted to preparing and quarrelling about minutes are now put to better use.

**Jan. 3-4 Orlando Meet-and-Confer**
The parties met in Orlando the day prior to the January 4, 2008 hearing in an effort to resolve issues attendant to the production of database material.  The location of this one and one-half-day meeting was chosen, in part, to be more convenient for AstraZeneca's technical representatives from Delaware and also in recognition that counsel would be traveling to Orlando for the Court's status conference

Counsel for both sides worked diligently; however, issues concerning just a single database were resolved.  Disappointing, but the time invested has since proven valuable in discussion of other databases.

**Exploration of Past ESI Collection and Production**
My investigation into the events and approaches precipitating the problems in past production continues. Despite my renewed optimism going forward, I continue to see evidence confirming a poorly conceived and executed e-discovery effort preceding the court's imposition of sanctions.  Even the most diligent current efforts of the Astra Zeneca ESI team cannot efface the electronic discovery history of this case, which I still regard as an amalgam of vendor error, internal mismanagement and inadequate oversight.  To fully detail the bases for that view would require me to reveal information furnished to me *ex parte.*  If sought, I expect to be in a position to do that *in camera* or after Astra Zeneca shares relevant, non-privileged portions of the information I've reviewed with the plaintiffs.

I also hope I can put my view in perspective.  The court has already determined that Astra Zeneca's conduct with respect to ESI was grossly flawed and purposefully sluggish.  Subsequently, I've seen ample evidence affirming the court's assessment.  The complaints voiced by the plaintiffs concerning untimely and unusable production have been consistently borne out by the facts developed in my inquiry.  That the problems were rife, serious and Astra Zeneca's responsibility is ultimately supported by Astra Zeneca's recognition of its obligation to, at great cost, start anew.

Seeing nothing to contradict the court's own observations, my principal purpose now in looking backward is to insure that past errors are identified and corrected and, most importantly, will not be repeated.  Then, if Astra Zeneca and its vendors follow though on their renewed effort as agreed and directed, I expect replacement production will be reasonably usable, electronically searchable, proportionate, substantially complete and (measured from the new beginning) timely.

Thank you for the opportunity to serve the court and the parties in this challenging case.  It's often been a pleasure and always an education to work with so many talented, articulate professionals as we hone old discovery tools and fashion new ones for a wired world.

Respectfully submitted,

**Craig D. Ball, P.C.**

_____
Craig Ball
Texas Bar No. 01632200
1101 Ridgecrest Drive
Austin, Texas 78746
TEL: 512-514-0182
FAX: 512-532-6511
E-MAIL: craig@ball.net
WEB: www.craigball.com

**CERTIFICATE OF SERVICE**

I hereby certify that on January 22, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I have served a copy of the forgoing on Plaintiffs' Liaison Counsel and Defendants' Liaison Counsel.

_____
Craig Ball
Texas Bar No, 01632200
1101 Ridgecrest drive
Austin, Texas 78746
TEL: 512-514-0182
FAX: 512-532-6511
E-MAIL: craig@ball.net
WEB: www.craigball.com

4