# Exhibit 5

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

| Northern | DISTRICT OF | ILLINOIS |

In re SEROQUEL Products Liability

V.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]   MDL No.1769 - Middle Dist. FL

TO:  Dr. Michael Jay Reinstein and/or his custodian of records
Community Mental Health Services
4755 N. Kenmore Avenue
Chicago IL 60640

☐  YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☑  YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION   4755 N. Kenmore Avenue, Chicago IL 60640 OR other mutually agreed location | DATE AND TIME  2/25/2008 1:00 pm |
|---|---|

☑  YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE ATTACHED - Documents Requested, Instructions and Definitions, and Written Question Deposition; SEE ALSO attached Protection Order entered in MDL No. 1769, in re Seroquel Products Liability Litigation

| PLACE   4755 N. Kenmore Avenue, Chicago IL 60640 OR other mutually agreed location | DATE AND TIME  2/25/2008 1:00 pm |
|---|---|

☐  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| | |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on

[1] If action is pending in district other than district of issuance, state district under case number.

Requesting Attorney:
David P. Matthews –
Matthews & Associates
Seroquel Plaintiff Discovery Committee
713 222 8080 / fax 713 535 7184
2905 Sackett St., Houston Tx 77098

AO88 (Rev. 12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|

| SERVED BY (PRINT NAME) | TITLE |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____
                              DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises—or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## NOTICE OF PROTECTIVE ORDER

**Please take notice that on September 19, 2007, the attached PROTECTIVE ORDER was entered in MDL Docket No. 1769.   SEE paragraph 8, Non-Party Designation of Discovery Material at page 8 of the PROTECTIVE ORDER.**

## SUBPOENA INSTRUCTIONS

1.     In responding to this Deposition Upon Written Questions, you are required to produce all documents known or reasonably available to you, regardless of whether such documents are in your possession, custody or control, or in the possession, custody or control of your agents, consignees, representatives or investigators, or your attorneys or their agents, employees, representatives or investigators.

2.     All documents produced in response to this request shall be either:

    a)     Produced in the order and in the manner that they are kept in the usual course of business; or

    b)  ·   Organized and labeled to correspond with the categories in the demand.

3.     All documents requested shall include all documents and information that relate in whole or in part to the relevant time period, or to events or circumstances during such relevant time period, even though dated, prepared, generated or received prior to the relevant time period.

    Unless otherwise indicated, the relevant time period for the information sought in 19865 to the present.

4.     All documents that exist in electronic form are to be produced in electronic form and in their native form or other searchable form, not in an electronic form that is merely a picture of a document such as a TIFF file, a TIF file, or a PDF file.

    All documents that do not exist in electronic form are to be produced in single page TIFF files with corresponding load files.

## SUBPOENA DEFINITIONS

1.     **"SEROQUEL"** means the drug quetiapine fumarate, also known by the brand name Seroquel, and any predecessor or non-final derivative of the drug that later became Seroquel.

    Also included in the definition of Seroquel are any chemical equivalents marketed in foreign

-1-

countries.

Further included in the definition of Seroquel are any of its formulations / reformulations / derivatives or any other "second generation atypical antipsychotic".

2. **"ASTRAZENECA"** refers to AstraZeneca Pharmaceuticals LP, AstraZeneca LP, AstraZeneca AB, AstraZeneca UK, Limited and all partners, directors, officers, employees, servants, agents, attorneys, joint venturers or other representatives, including all corporations and entities affiliated with AstraZeneca.

The term shall also include all predecessor business entities, as well as any predecessor's partners, directors, officers, employees, servants, agents, joint ventures or others acting on their behalf. This includes, but is not limited to, Zeneca Pharmaceuticals, its partners and predecessors.

The term shall also include all foreign subsidiaries or foreign parent companies, as well as any foreign subsidiaries' or parent companies' partners, directors, officers, employees, servants, agents, joint ventures or others acting on their behalf.

3. **"DOCUMENT"** or **"DOCUMENTS"** as used herein shall be construed in the broadest possible sense and means, without limitation, any reports, memoranda, records, studies, data compilations, graphs, charts, invoices, receipts, recordings, notes, photographs, studies, analyses, projections, forecasts, plans, estimates, working papers, summaries, opinions or reports of consultants and other types of written, graphic, printed or electronic submissions of information and all drafts thereof.

4. **"RECORDINGS"** as used herein shall be construed in the broadest possible sense and means, without limitation, any / all audio and video recordings, video conferences, telephone conferences, recorded messages for replay, rehearsal tapes and any / all programs of any nature relating to Seroquel in which Dr. Michael J. Reinstein participated.

5. **"RELATED TO"** and **"RELATING TO"** means constituting, pertaining to, in connection with, reflecting, respecting, regarding, concerning, referring to, based upon, stating, showing, evidencing, establishing, supporting, engaging, contradicting, describing, recording, noting, embodying, memorializing, containing, mentioning, studying, analyzing, discussing, specifying, identifying or in any manner, logically, factually, indirectly or directly, or in any other way connecting to the matter addressed in the request, in part or whole.

6. **"COMMUNICATIONS"** means any manner or method in which information is passed from one human being or entity to another including (but not limited to) any written, oral or electronic contact and/or discussion or exchange of information.

The term further includes any / all hard copies, emails, instant messages, bulletin board

postings, audio or video recordings posted or distributed in any manner.

7.    **"MARKETING MATERIALS"** includes without limitation any records or documents relating to te following:

   a)    Product pricing, selling, shipping, mailing, distributing, delivering, advertising and promoting;

   b)    Market planning;

   c)    Communications to consumers or doctors, including advertising, press releases, detail pieces (including e-detailing materials), promotional literature, Dear Doctor letters, Q&As, etc.;

   d)    Testing, including copy testing, persuasion testing, market testing and focus groups performed to determine or identify key messages to be sent to consumers or doctors;

   e)    Tracking and message recall; and

   f)    Media plans.

8.    **"KEY OPINION LEADER"** activities and communications include, but are not necessarily limited to his / her participation in conferences, advisory panels, communications and/or meetings with the FDA or any other regulatory agency, focus groups, marketing meetings, continuing medical education, medical forums, medical association meetings, patient and patient advocate group meetings and all messages, of any character, delivered or intended for physicians, pharmacists, other medical providers, patients, patient advocate groups and/or caregivers. ,

9.    **"Dr. Michael J. Reinstein "** means Dr. Michael J. Reinstein and all partners, directors, officers, employees, servants, agents, attorneys, joint venturers or other representatives, including all corporations and entities affiliated with Dr. Michael J. Reinstein.

   The term shall also include all predecessor business entities, as well as any predecessor's partners, directors, officers, employees, servants, agents, joint venturers or others acting on their behalf.

   The term shall also include all foreign parent companies, as well as any foreign subsidiaries' or parent companies' partners, directors, officers, employees, servants, agents, joint venturers or others acting on their behalf.

   The term shall also any sole proprietorship, partnership, corporation or other entity under which Dr. Michael J. Reinstein participated as a clinical trial investigator of Seroquel, or

under which Dr. Michael J. Reinstein participated in any research or analyses related to Seroquel.

**"THE WITNESS"** also refers to Dr. Michael J. Reinstein and those persons and entities identified above.

10.     **"PERSON"** shall include any individual or entity, other than attorneys.

11.     **"Or"** and **"And"** will be used interchangeably.

## DOCUMENTS REQUESTED

1.     Any and all contracts or agreements between AstraZeneca and Dr. Michael J. Reinstein relating to Seroquel.

2.     Any and all communications between AstraZeneca and Dr. Michael J. Reinstein relating to Seroquel.

3.     Any and all communications between Dr. Michael J. Reinstein and any other person relating to Seroquel.

4.     Any and all documents prepared by, prepared for, or received by Dr. Michael J. Reinstein relating to Seroquel.

5.     Any and all marketing materials prepared by, prepared for, or received by Dr. Michael J. Reinstein relating to Seroquel.

6.     Any and all key opinion leader or thought leader materials prepared by, prepared for or received by Dr. Michael J. Reinstein relating to Seroquel.

7.     Any and all research materials relating to Seroquel prepared by, prepared for or received by Dr. Michael J. Reinstein.

8.     All documents reflecting amounts paid to Dr. Michael J. Reinstein by AstraZeneca relating to professional services rendered by Dr. Michael J. Reinstein relating to Seroquel.

9.     Curriculum vitae of Dr. Michael J. Reinstein: the present and all versions drafted / distributed for the past fifteen years.

-4-

## ADDITIONAL DEFINITIONS AND CLARIFICATION
## OF THE DOCUMENTS REQUESTED

The witness is advised that compliance with the request to produce the categories of items set forth in items 1-9 above will entail the production of the documents and tangible things listed below. This listing is not exhaustive, but submitted as additional definitions and clarification of the nature of the records being sought under this subpoena.

Contracts:

10..  Any / all contracts between witness and any of the following:

     a)  AstraZeneca

     b)  Zeneca Pharmaceuticals

     c)  any/ all agencies, companies or individuals who manage or promote the witness' activities as a consultant, speaker, advisory or faculty board member or any other capacity in working with the pharmaceutical industry.

     d)  any / all agents acting on behalf of AstraZeneca, including but not limited to agents such as Parexel, Complete Health Care, CMC, etc.

     e)  any / all vendors or service providers, of any type, known by the witness to be acting on behalf of AstraZeneca

11.  Any / all confidentiality or non-disclosure agreements signed by the witness with AstraZeneca or its agents.

12.  Any / all confidentiality or non-disclosure agreements signed by the witness with any agency, company or individual representing the witness with regard to his/her services as a speaker, consultant or analyst to the pharmaceutical industry.

13.  Any / all agreements concerning "conflicts of interest" or otherwise limiting the witness' speaking activities to a specific drug, to the exclusion of other drugs in that class.

Calendars / Timesheets:

14.  Any / all calendars, including printouts from electronic calendars or other data systems, that will reflect the witness' participation in one or more of the following:

a)      All public forums in which Seroquel or any other atypical antipsychotic was discussed, including but not limited to CME programs, medical associations, patient advocacy groups.

b)      Any / all meetings, telephone conferences and/or video conferences with employees or agents of AstraZeneca

        (I)      with regard to Seroquel;

        (ii)      with regard to any / all atypical antipsychotic formulations or reformulations of quetiapine fumarate

        (iii)      with regard to any drug investigation being conducted by or on behalf of AstraZeneca;

        (iv)      with regard to any / all other drugs manufactured, promoted (co-promoted) or sold by AstraZeneca.

c)      Any / all meetings, telephone conferences or other means of communications made by the witness with representatives of the FDA and/or all other drug regulatory agencies, whether domestic (US) or foreign.

d)      Any / all meetings, telephone conferences or other means of communications made by the witness with representatives of insurance companies, drug formularies in which Seroquel or any other antipsychotic or atypical antipsychotic was discussed.

e)      Any / all meetings, telephone conferences and/or video conferences with the witness' management company or other agents who represented the witness in offering his/her services as a "key opinion leader."

Address / Contact Records:

15..      The Rolodex, electronic telephone and address records or other records that will identify the individuals employed by or otherwise acting on behalf of AstraZeneca from September, 1988 to the present with whom the witness communicated or may have communicated regarding Seroquel.

16..      The Rolodex, electronic telephone and address records or other records that will identify the agencies or individuals with whom witness communicated or may have communicated regarding his services as a "key opinion leader" or consultant concerning Seroquel or any other atypical antipsychotic or antipsychotic drug from September, 1988 to the present.

17..      The Rolodex, electronic telephone and address records or other records that will identify the

physicians, pharmacists, formulary representatives or insurance company representatives with whom witness communicated in any manner regarding Seroquel.

## Clinical Trials

18. Any / all clinical trial information and data received by the witness, from whatever sources, relating to the clinical trials conducted that involved Seroquel, either as the drug of primary investigation or as a comparator, from 1988 to the present.

19.. Any / all records relating to the witness' participation of any sort in the planning and conduct of any clinical trial that assessed Seroquel or any other atypical antipsychotic.

20.. Any / all records relating to the witness' participation of any sort in the planning and conduct of any clinical trial that included data relating to hyperglycemia, diabetes, glucose dysregulation, weight gain and/or waist circumference.

21. Any / all clinical trial information and data received by the witness, from whatever source, relating to hyperglycemia, diabetes, glucose dysregulation, weight gain and/or waist circumference.

## Financial & Time Records (1988 - 2007):

22. Any / all 1099's or W-2's received by witness or his agents from AstraZeneca.

23.. Any / all 1099's or W-2's received by witness from the agencies or companies who managed or otherwise promoted the witness' activities as a "key opinion leader", speaker or advisory / faculty board member

24. The witness' time records for any / all work, research and/or study relating to Seroquel or any other atypical antipsychotic or antipsychotic drug.

25.. The witness' travel records relating to any / all speaking engagements, conferences, consultations, CME presentations, recording sessions, etc. relating in any way to Seroquel and/or any other atypical antipsychotic and/or to diabetes, hyperglycemia, glucose dysregulation and/or weight gain.

26.. All invoices and/or renditions of time and expenses prepared by or on behalf of the witness with respect to his/her work or professional services of any nature relating to Seroquel or any formulation of atypical antipsychotic by AstraZeneca.

## Communications

27.    All written communications between witness or his/her agents and any/ all representatives of AstraZeneca or agents acting on behalf of AstraZeneca (e.g., Parexel, CMC, Complete Health Care, etc.) with regard to Seroquel or any other formulation or reformulation of an atypical antipsychotic.

28.    All written communications between witness or his/her agents and any/ all representatives of AstraZeneca or agents acting on behalf of AstraZeneca (e.g., Parexel, CMC, Complete Health Care, etc.) with regard to hyperglycemia, diabetes, glucose dysregulation, weight gain and/or waist circumference.

29..    All written communications between witness or his/her agents and any/ all representatives of AstraZeneca or agents acting on behalf of AstraZeneca that in any manner relate to guidelines, codes of conduct, ethics or standards to be complied with in regard to any presentations, promotions or other discussions and communications concerning the drugs manufactured or sold by AstraZeneca.

30..    All written communications between witness or his/her agents and any/ all representatives of AstraZeneca or agents acting on behalf of AstraZeneca or any other pharmaceutical company and its agents that in any manner relate to guidelines, codes of conduct, ethics or standards to be complied with in regard to any off-label promotions.

31.    All written communications between witness or his/her agents and any/ all representatives of AstraZeneca or agents acting on behalf of AstraZeneca or any other pharmaceutical company and its agents that in any manner relate to either (a) the witness having access to unpublished clinical trial data and/or (b) the witness presenting any information from unpublished clinical trial data.

Video Recordings / Audio Recordings:
  (Drafts and final versions)

32.    All video and audio recordings in which the witness participated that in any manner relate to Seroquel, diabetes, hyperglycemia, glucose dysregulation and/or weight gain.

PowerPoints and Other Visual Aids:
  (Drafts and final versions)

33.    All PowerPoints, Slide Kits, or any other Visual Aids in which the witness participated that in any manner relate to Seroquel, diabetes, hyperglycemia, glucose dysregulation and/or weight gain.

Focus Groups:

-8-

34.    All documents relating in any manner to "focus groups" in which the witness may have participated or for which materials were prepared by the witness.

Promotional Pieces:

35.    All documents, records and communications relating in any manner to promotional pieces regarding Seroquel that were received by, prepared for or prepared by the witness.

Responses to FDA or other Regulatory Agency Requests for Information:

36.    All documents, records and communications relating in any manner to the witness' participation in responding to requests for information from the FDA or any other regulatory agency.

Publications, Clinical Trial Reports, Journal Articles::

37.    All documents, records and communications relating in any manner to publications, clinical trial reports and/or journal articles in which the witness participated in the preparation, review and editing relating to Seroquel, diabetes, hyperglycemia, glucose dysregulation and/or weight gain.

38.    Any / all records concerning any project on which the witness' name may have been removed as an author, for any reason

The witness' research / reports / notes relating to:

39.    All documents, records and communications relating in any manner to:
       Seroquel (quetiapine fumarate)
       Hyperglycemia
       Diabetes
       Glucose Dysregulation
       Weight gain

Other communications:

40.    Hard copy and/or electronic records of any nature that document / reflect the data, written drafts, email copies, internal message broadcasts, and other information and documents of any sort whatsoever that the witness or his agents may have taken from electronic access to the websites of Zeneca Pharmaceuticals, AstraZeneca, the agents and vendors working on behalf of either Zeneca Pharmaceuticals or AstraZeneca, the FDA and/or any other third party relating to:

-9-

a)  Seroquel (quetiapine fumarate) as approved in any format by the FDA or any other regulatory agency, and/or the predecessor formulations and reformulations of quetiapine fumarate;

b)  Any/ all other atypical antipsychotic drugs;

c)  the subjects of diabetes, hyperglycemia, glucose dysregulation and/or weight gain;

d)  the comparison of any atypical antipsychotic drug as to efficacy, benefits, side effects, withdrawals, cessation, and/or rechallenge;

Research / reports provided to the witness by AstraZeneca:

41.  All documents, records and communications relating in any manner to:  research / reports provided to the witness by AstraZeneca concerning:

Seroquel (quetiapine fumarate)
Hyperglycemia
Diabetes
Glucose Dysregulation
Weight gain
Other atypical antipsychotics

Research / reports provided to the witness from any other source or secured independently by the witness from any source whatsoever:

42.  All documents, records and communications relating in any manner to research / reports provided to the witness from any other source or secured independently by the witness from any source whatsoever relating to:

Seroquel (quetiapine fumarate)
Hyperglycemia
Diabetes
Glucose Dysregulation
Weight gain
Other atypical antipsychotics

Other research and data:

43.  Any all communications, research, data sent and/or received or obtained independently on the basis of research / personal inquiry regarding the subjects of:

-10-

1)      fasting glucose
2)      non-fasting glucose
3)      waist circumference vs. weight gain as a clinical study measurement
4)      glucose dysregulation
5)      the relevance, potential impact, association and/or causal relationship between
       a)      weight gain and either hyperglycemia or diabetes
       b)      waist circumference increase and either hyperglycemia or diabetes
       c)      hyperglycemia and diabetes
       d)      glucose Dysregulation and either hyperglycemia or diabetes

Regulatory Appearances:

44.      Records of any/ all appearances the witness may have made before either (1) an Advisory Board of the FDA, or (2) a meeting between pharmaceutical company and FDA in which there was any discussion or issue of:

     1)      Seroquel (quetiapine fumarate), its predecessors or reformulation or successor formulations (including but not limited to the XR formulation

     2)      The topics of
       a)      fasting glucose
       b)      non-fasting glucose
       c)      waist circumference vs. weight gain as a clinical study measurement
       d)      glucose dysregulation
       e)      the relevance, potential impact, association and/or causal relationship between weight gain and either hyperglycemia or diabetes; waist circumference increase and either hyperglycemia or diabetes; hyperglycemia and diabetes and/or glucose dysregulation and either hyperglycemia or diabetes.

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| In re: SEROQUEL PRODUCTS | X | **Case No. 6:06-md-01769-ACC-DAB** |
| **LIABILITY LITIGATION** | X | |
| | X | |
| **MDL Docket No. 1769** | X | **PLAINTIFFS' NOTICE OF** |
| | X | **DEPOSITIONS UPON WRITTEN** |
| **Document Relates to All Cases** | X | **QUESTIONS** |

**DIRECT QUESTIONS TO BE PROPOUNDED TO WITNESS
DR. MICHAEL J. REINSEIN**

1.   Please state your full name, address, occupation and official title.

ANSWER: _____
   _____

2.   As part of your duties as custodian of records for Dr. Michael J. Reinstein, are you the custodian of the following records:

   a).   Any and all contracts or agreements between AstraZeneca and Dr. Michael J. Reinstein relating to Seroquel.

   b).   Any and all communications between AstraZeneca and Dr. Michael J. Reinstein relating to Seroquel.

   c)   Any and all communications between Dr. Michael J. Reinstein and any other person relating to Seroquel.

   d)   Any and all documents prepared by, prepared for, or received by Dr. Michael J. Reinstein relating to Seroquel.

   e)   Any and all marketing materials prepared by, prepared for, or received by Dr. Michael J. Reinstein relating to Seroquel.

   f).   Any and all key opinion leader or thought leader materials prepared by, prepared for or received by Dr. Michael J. Reinstein relating to Seroquel.

   g)   Any and all research materials relating to Seroquel prepared by, prepared for or received by Dr. Michael J. Reinstein.

-1-

h)   All documents reflecting amounts paid to Dr. Michael J. Reinstein by AstraZeneca relating to professional services rendered by Dr. Michael J. Reinstein relating to Seroquel.

i)   Curriculum vitae of Dr. Michael J. Reinstein: the present and all versions drafted / distributed for the past fifteen years.

ANSWER: _____

3.   Have you been served with a subpoena for the production of the records identified in Question No. 2?

ANSWER: _____

4.   Do you understand that the subpoena requests ALL records in your possession, custody or control relating to Seroquel?

ANSWER: _____

5.   Please tender at this time all records identified in Question No. 2 and in the SUBPOENA that has been served on you.   Have you complied?   If not, why?

ANSWER: _____

6.   Are you able to identify these records as the originals or true and correct copies of the originals?

ANSWER: _____

7.   Are the records you have tendered in response to Questions No. 2 and No. 5 a complete and accurate copy of the records described in Question No. 2?

ANSWER: _____

8.   Was it the regular course of the business of Dr. Michael J. Reinstein for he or an employee or representative in his office having personal knowledge of the act(s) recorded, to prepare the records or transmit the information included in the records you have tendered in response to Questions No. 2 and No. 5?

ANSWER: _____

-2-

9.     Were the records you have tendered in response to Questions No. 2 and No. 5made at or near the time when the acts, events, conditions and other information contained therein occurred, were observed or rendered?

ANSWER: _____

10.    Were the records you have tendered in response to Questions No. 2 and No. 5 kept in the regular course of the business of Dr. Michael J. Reinstein?

ANSWER: _____

11.    Were the records you have tendered in response to Questions No. 2 and No. 5 transmitted to your files, and did you maintain those records as part of your official duties as the custodian of records for Dr. Michael J. Reinstein?

ANSWER: _____

12.    How long does Dr. Michael J. Reinstein main his / her files, and does Dr. Michael J. Reinstein ever destroy the files?

ANSWER: _____

13.    Have you been requested or directed by any person, or has any person suggested to you, that you withhold or protect, for any reason, the records described in Question No. 2?  If so, please identify the person who conveyed this information to you and when that event occurred.

ANSWER: _____

14.    Do you know or have any reason to believe that the records you have tendered in response to Questions No. 2 and No. 5 have in any manner been edited, purged, culled, or otherwise altered?  If so, please identify the records and describe why they were altered.

ANSWER: _____

15.    If any of the documents or information requested cannot be produced in full, please specify, to the extent possible, the reasons for your inability to produce the remainder, and the approximate date(s) when you expect to product such documents, if at all.

ANSWER: _____

16.    With respect to any document that has been lost, destroyed or otherwise disposed of since its preparation or receipt, please provide the following information separately as to each such

document:

a)    A general description of the subject matter, author, recipient(s), date;

b)    The identity of each person who has received a copy or had an opportunity tor receive a copy;

c)    The last custodian of the document or copies thereof; and

d)    The full particulars or circumstances whereby the document was disposed of, destroyed or otherwise lost.

ANSWER: _____

17.    With respect to any documents that have been deemed privileged, or otherwise protected information or materials, provide the following information, designating and identifying those documents or information withheld from production on grounds of privilege:

a)    The reason for withholding the document or information;

b)    A statement of the legal basis for the claim of privilege, work product or other ground for non-disclosure;

c)    A brief description of the document including:

    I)    The date of the document;

    ii)    The number of pages, attachments and appendices; and

    iii)    The name(s) of its author(s) or preparer(s) and identification by employment and title of each such person;

    iv)    The name of each person who sent, received, was copied on, or had custody of the documents, together with an identification of each such person;

    v)    The present custodian; and

    vi)    The subject matter of the document, and in the case of any document relating or referring to a meeting or conversation, identification of such meeting or conversation in sufficient detail to enable the Court to determine the propriety of any claim of privilege.

ANSWER: _____

18.    With whom have you spoken concerning this deposition on written questions?

ANSWER: _____

19.    Identify the person or persons that assisted in you in responding to these questions.

ANSWER: _____

20.    Other than the court reporter, who is present with you at the time you prepared your answers, and/or are answering this deposition on written questions?

ANSWER: _____

_____

Witness (custodian of records)

      Before   me,   the   undersigned   authority,   on   this   day   personally   appeared
_____, known to me to be the person
whose name is subscribed to the foregoing instrument in the capacity therein stated, who being first
duly sworn, stated upon his/her oath that the answers to the foregoing questions are true and correct.
I further certify that the records attached hereto are exact duplicates of the original records.

      SWORN TO and SUBSCRIBED before me this _____ day of _____,
2008.

_____

Notary Public

My commission expires: _____

### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

IN RE: Seroquel Products Liability Litigation

### MDL DOCKET NO. 1769

This Document Relates to ALL CASES

### PROTECTIVE ORDER

To expedite the flow of discovery material, facilitate the prompt resolution of disputes over confidentiality, adequately protect confidential material, and ensure that protection is afforded only to material so entitled, the Court enters this Protective Order pursuant to Federal Rule of Civil Procedure 26(c).

**1. Discovery Materials:** This Order governs the handling of confidential discovery materials, and applies to all products of discovery and all information derived therefrom, including, but not limited to, documents, objects and things, deposition testimony and interrogatory/request for admission responses, and any copies, excerpts or summaries, produced by any party informally or pursuant to any court order in the above-captioned matter ("Discovery Materials"). Plaintiffs and Defendants, as well as their officers, directors, employees, agents and legal counsel, are referred to as the "Parties."

**2. Use of Discovery Materials:** Confidential Discovery Materials (defined below) shall be used only for the litigation, including appeals, of this action, *In re: Seroquel Products Liab. Litig.*, MDL 1769 ("Litigation"), and any other Seroquel action alleging injuries or other damages. All persons given access to Confidential Discovery Materials shall (a) read and agree to be bound by this Order, (b) sign the Endorsement of Protective Order (Exhibit "A"), and (c) consent to this

-1-

Court's continuing jurisdiction for purposes of enforcing and remedying any violations of the Order. Confidential Discovery Materials shall not be disclosed except in accordance with paragraphs 3, 5 and 6, herein.

3. **Procedure Prior to Disclosure of Confidential Discovery Materials:** Prior to access to Confidential Discovery Materials, those within subparagraph 6(a) shall be (a) provided a copy of this Order by the party providing the Confidential Discovery Materials; (b) advised that Confidential Discovery Materials may not be divulged other than as specifically provided herein; (c) required to comply with the provisions of this Order, after reading and agreeing to be bound by it; and (d) required to sign the Endorsement of Protective Order (attached as Exhibit A). Anyone who reviews or examines any item produced under this Order shall not only agree to be bound by this Order and sign Exhibit A, but also shall take steps reasonably necessary to prevent the disclosure of confidential information. However, persons who come into contact with Confidential Discovery Materials or related information for clerical or administrative purposes, and who do not retain copies, are not required to sign the Endorsement of Protective Order.

4. **Confidential Discovery Materials**

(A). For purposes of this Order, "Confidential Discovery Materials" shall mean any discovery materials that the producing party, in good faith, designates as "confidential" pursuant to this Order based on the belief that such materials are entitled to protection under Federal Rule of Civil Procedure 26(c).

(B) In addition, discovery material in the possession of AstraZeneca AB, AstraZeneca plc, and AstraZeneca U.K. ltd containing "personal data" as defined in E.U. Directive 95/46 and related

-2-

enactments in the countries of Sweden or the United Kingdom will be designated "Confidential Discovery Material." In general terms, personal data consists of any and all data including information that may refer directly or indirectly to a natural person who is alive.

(C) If any Party believes that a document has been improperly designated "confidential" and is not entitled to protection under Federal Rule of Civil Procedure 26(c), that Party will notify the disclosing Party, and the Parties will make good faith efforts to resolve any dispute regarding the confidentiality of individual documents. If the dispute cannot be resolved informally, either Party may apply to the Court for a determination of whether the designation is appropriate. The burden rests on the Party asserting the "Confidential" designation to demonstrate that the designation is proper. Plaintiffs' medical records are presumptively confidential and will be deemed confidential except as set forth in paragraph 6(d). By agreement of the Parties, Defendants may use information contained in Plaintiff Fact Sheets for required submissions to the Food and Drug Administration.

(D) The terms of this Order shall in no way affect the right of any person to withhold or redact information on grounds of immunity from discovery, such as attorney/client privilege, work product, or privacy grounds; or to withhold or redact information on grounds that such information is not relevant or reasonably calculated to lead to the discovery of admissible evidence, but upon request the reasons for such withholding or redaction shall be provided.

(E) Confidential Discovery Materials does not include information or documents produced or disclosed that are or become, without violating this Order, a matter of public record or publicly available by law or otherwise.

### 5. Designation of Confidential Discovery Materials

(A)  The Party designating Discovery Material as "Confidential" will be referred to as the · "Designating Party."

(B)  Any Discovery Material designated as "Confidential," whether the information is provided orally or by a document, will be maintained as explained herein, and will not be disclosed to any person or entity, except as set forth herein.

(C)  All Plaintiffs' medical records and Fact Sheets will be deemed confidential. The parties will direct medical record collection service(s) used in this litigation to stamp as "Confidential" any medical records collected.

(D)  All Discovery Material, whether or not filed with the Court, that contains Confidential information that the Designating Party seeks protection under this Order shall be designated as "Confidential" as follows:

> (1) Documents or other tangible Discovery Material will, at the time of their production be designated by stamping or labeling "Confidential" on each page containing any confidential information. In the case of multi-page documents bound together, the word(s) "Confidential" need· be stamped only on the first page of the document in order for the entire · document to be treated as "Confidential."

> (2)  Any non-party who is producing discovery materials in the Litigation may agree to and obtain the benefits of the terms and protections of this Order by designating as "Confidential" the discovery materials that the non-party is producing.

> (3)  Deposition testimony shall be designated "Confidential" (A) at the taking of the deposition by a statement on the record, by counsel at the time of such disclosure, or (B) by written notice sent to counsel of record for all Parties within twenty (20) days after receiving a copy

-4-

of the transcript by counsel making the designations or thirty (30) days if the deponent testified in a language other than English, identifying the specific pages designated as "Confidential" by page and line numbers. In both instances, counsel for the Designating Party will label "Confidential" the portions of the original and all copies of the transcript containing any confidential information. Counsel will not permit deposition transcripts to be distributed to persons beyond those specified in Paragraph 6, other than the deponent, until the relevant period for the designation has expired. Until the expiration of the relevant time period, the entire text of the deposition, including exhibits, shall be treated as confidential under this Order. If prior to the expiration of the twenty (20) day period a Party wishes to file any motion or pleading that will include reference to, or attach as exhibits, any portion of the deposition transcript or confidential exhibits thereto, the Party will give reasonable notice (not less than five business days prior to the filing of the motion or pleading) to the Parties and the deponent of the proposed filing date of the motion or pleading and of the pages and/or exhibits cited. Any Party or deponent who desires to designate or preserve any of the identified material as confidential will designate the material no less than two business days prior to the filing proposed date. If no Party or deponent designates any pages or exhibits from the deposition as confidential within the time frame provided, then the material will not be treated as Confidential Discovery Material.

(4) Non-documentary and non-testimonial material, such as oral statements of counsel on the record, will be designated orally at the time of disclosure and promptly confirmed in writing.

(E)  Inadvertent failure to designate Discovery Material as "Confidential" does not

constitute a waiver and may be corrected by supplemental written notice designating such Discovery

Material as "Confidential." The Party receiving such supplemental written notice will then mark

and treat materials as "Confidential" and those materials will be fully subject to this Order as if they

had been initially designated. A person disclosing Discovery Material that is subsequently

designated as "Confidential" will assist the Designating Party in retrieving such Discovery Material

from all recipients not entitled to receive it under the terms of this Order and will act in good faith

to prevent further disclosures except as authorized under the terms of this Order. This may include

seeking appropriate relief regarding any such material that may have already been filed with a court.

After receipt of such notification, the parties will treat the designated materials as Confidential, subject to their right to dispute such designation in accordance with paragraph 12.

### 6. Permissible Disclosure of Discovery Materials

(A)   Any Discovery Material designated as "Confidential," and any information derived therefrom, may be disclosed only to the following persons: (I) the Parties (including their directors, officers, and employees); (ii) counsel to the Parties who have entered appearances in the Litigation, as well as their partners and associates, contract attorneys, paralegals, secretarial staff, clerical and other regular or temporary employees, and service vendors of such counsel (including outside copying and litigation support services, such as translators and interpreters); (iii) any persons associated with or employed by such attorneys or their firms, when working in connection with this litigation under the direct supervision of partners or associates of those firms; (iv) any outside experts who have been consulted for the purpose of being retained, or who have been retained by counsel to provide assistance, expert advice or technical consultation; provided that, prior to receiving Confidential Discovery Materials, outside experts or consultants will execute the Endorsement of Protective Order attached as Exhibit A; (v) the judges of the Court, Court staff, and any essential personnel retained or appointed by the Court (including Special Masters and their staffs); (vi) any other person only upon order of the Court or upon written agreement of the Designating Party; (vii) persons working in connection with this litigation under the direct supervision of persons described in section 6(a) (i-iii) above, but only to the extent necessary to perform their work in connection with this litigation; (viii) persons who authored the confidential discovery material or who received such confidential discovery material in the ordinary course of business; (ix) any attorney for claimants in other pending U.S. litigations alleging personal injury

-6-

or arising from the alleged use, purchase, or payment of Seroquel (or as attorneys for claimants in any other pending litigation as the parties may mutually agree or the Court directs) for use in this or such other action, provided the proposed recipient agrees to be bound by this Order and complies with the provisions of paragraph 3; (x) persons noticed for depositions or designated as trial witnesses and their attorneys, or those counsel of record who expect to testify at deposition or trial, to the extent reasonably necessary in preparing to testify; and (xi) such persons as counsel for the designating party shall consent to in writing before the proposed disclosure.

(B) Nothing in this Order prevents or restricts counsel from rendering advice to their clients and, in the course thereof, relying generally on examination of stamped confidential documents. Counsel will not disclose any Confidential item unless its disclosure is pursuant to the procedures of paragraph 3.

(C) All Parties, their respective counsel, and others bound by this Order will take all steps necessary to prevent the disclosure of Confidential Discovery Materials other than in accordance with the terms of this Order.

(D) Medical records for any plaintiff may be disclosed to that plaintiff's health care providers without first obtaining an Endorsement of Protective Order from those providers. This Court's Rules relating to electronic filing procedures shall govern the filing with the Court of depositions, pleadings, or other materials that reference the use of any atypical antipsychotic, including Seroquel; the reason for the use of any atypical antipsychotic, including Seroquel; and/or any condition that a plaintiff claims was caused by Seroquel usage.

**7. Other Permissible Disclosure:** Where produced by a defendant, Confidential Discovery Materials may be disclosed to plaintiff's attorneys in other filed actions alleging injuries or damages resulting from the use of the atypical antipsychotic medication(s) manufactured by the producing defendants(s), including their paralegal, clerical, secretarial and other staff employed or retained by such counsel; provided that such counsel have agreed to be governed by the terms of this Order and have signed the Endorsement of Protective Order.

**8. Non-Party Designation of Discovery Material:** Any non party to this Litigation may designate any Discovery Material taken from it, whether pursuant to subpoena or by agreement, as "Confidential" under the terms of this Order, so long as the non party has a written agreement to be subject to and governed by the requirements of this Order. A non-party will designate any Discovery Material as "Confidential" in a manner consistent with the procedures described in Paragraph 5.

**9. Confidential Information in Depositions:** Nothing shall prevent broader disclosures beyond those limited by this paragraph if the Designating Party consents in writing to such disclosure.

(A)  A deponent may during the deposition be shown and examined about Confidential Discovery Materials if the provisions of paragraph 3 are complied with. Deponents will not retain or copy portions of the transcript of their depositions that contain confidential information not provided by them or the entities they represent unless they sign the form prescribed in paragraph 3. A deponent who is not a party, an employee or representative of a party or the attorney of said non-party, employee, or representative of a party, will be furnished with a copy of this Order before being examined about, or asked to produce potentially confidential documents.

-8-

(B)   Any physician who treated a plaintiff, non-party fact witness or any other third party may be shown confidential information prior to and during his or her deposition if (I) there is a litigation need to show the information to the physician; and (ii) the physician complies with the terms of paragraph 3 herein.

(C)   The parties will use their best efforts to make sure that every witness that will be shown Confidential Discovery Material signs the Endorsement of Protective Order. In the event that a deponent refuses to sign the endorsement, a party may not show a confidential document to the deponent unless the deponent affirms on the record in the deposition that they understand that the document and the information contained therein are confidential and understand that they are prohibited from sharing or discussing that document or the information contained therein with anyone outside the deposition.

(D)   Except as set forth in this paragraph, Confidential Discovery Material may not be provided to current employees of any pharmaceutical company or other entity involved in the distribution, manufacturing or sale of pharmaceuticals. A copy of the signed Endorsement of Protective Order shall be provided to counsel for each defendant in this action at least five (5) business days before access to Confidential Discovery Material is allowed. Any defendant may object in writing at least one business day in advance of the date which access was to be allowed, stating the grounds and serving a copy of such objection on all Parties. The Parties will meet and confer to resolve the objection if possible. If the Parties cannot resolve the objection, plaintiffs may respond to the objection in writing and will provide the objection and their response to the Court which will then resolve the issue.

-9-

**10. Filing of Confidential Discovery Materials with the Court:** Filing of material under seal in this Court is governed by Local Rule 1.09.

**11. Inadvertent Disclosures:** The inadvertent production of any Discovery Materials that would be protected from disclosure pursuant to the attorney-client privilege, the work product doctrine or any other applicable privilege or doctrine will not constitute a waiver of the applicable privilege or doctrine. If any such Discovery Materials are inadvertently produced, the recipient of the Discovery Materials agrees that, upon discovery or notification of such a disclosure, it will promptly return the Discovery Materials and all copies of the Discovery Materials in its possession, delete any versions of the Discovery Materials on any database it maintains and make no use of the information contained in the Discovery Materials; provided, however, that the party returning such Discovery Materials shall have the right to apply for an order that such Discovery Materials are not protected from disclosure by any privilege or doctrine. The person returning such material may not, however, assert as a ground for such motion the fact or circumstances of the inadvertent production. The party to whom any inadvertently produced discovery materials were returned shall retain the returned materials until the end of the case, including any appeals.

**12. Declassification**

(A) Nothing shall prevent disclosure beyond that limited by this Order if the Designating Party consents in writing to such disclosure or upon order of the Court.

(B) If at any time a Party wishes for any reason to dispute a designation of Discovery Materials as confidential, such person shall notify the Designating Party of such dispute in writing,

-10-

specifying by exact Bates number(s), the Discovery Materials in dispute. The Designating Party shall respond in writing within 10 days of receiving this notification.

(C) If the Parties are unable to amicably resolve the dispute, the proponent of confidentiality may request by motion a ruling that Discovery Materials designated as confidential are entitled to such status and protection under the Federal Rules and this Order. Such motion shall be made within thirty (30) days of receipt by the Designating Party of the notification of the recipient's challenge to the designation, or such other time period as the Parties may agree to in writing. The Designating Party shall have the burden of proof on such motion to establish the propriety of its confidential designation.

(D) If the time for filing a motion has expired without the filing of any such motion, or ten (10) business days (or such longer time as ordered by this Court) have elapsed after the appeal period for an order that the Discovery Material shall not be entitled to confidential status, the Confidential Discovery Material shall lose its designation.

13. **Confidential Discovery Materials Offered as Evidence at Trial:** The manner in which Confidential Discovery Material will be handled at trial shall be determined by the court conducting the trial.

14. **Subpoena by Other Courts or Agencies:** If another court or an administrative agency subpoenas or otherwise orders production of Confidential Discovery Materials (or confidential information) which any Party or other person has obtained under the terms of this Order, the Party or other person to whom the subpoena or other process is directed will immediately notify the Designating Party in writing of all of the following: (a) the discovery materials that are requested

-11-

for production in the subpoena; (b) the date which compliance with the subpoena is requested; (c) the location at which compliance with the subpoena is requested; (d) the identity of the party serving the subpoena; and (e) the case name, jurisdiction and index, docket, complaint, charge, civil action or other identification number or other designation identifying the litigation, administrative proceeding or other proceeding in which the subpoena or other process has been issued. Confidential Discovery Materials shall not be produced prior to the receipt of written notice by the Designating Party and after a reasonable opportunity to object has been offered. Further, the Party or person receiving the subpoena or other process will cooperate with the Designating Party in any proceeding related thereto. The Designating Party will bear the burden and all costs of opposing the subpoena on grounds of confidentiality.

15. **Return or Certified Destruction of Confidential Materials:** The provisions of this Order will not terminate at the conclusion of this Litigation. Within ninety (90) days after conclusion of any attorneys' last case in this or any other proceedings involving Seroquel in which the attorney may be permitted to use confidential information under the terms of a Protective Order, including any appeals related thereto, or such other time as the Designated Party may agree in writing, counsel will, at their option, return or destroy Confidential Discovery Materials and documents or things containing confidential information and all copies. If counsel elects to destroy Confidential Discovery Materials, they will consult with counsel for the Designating Party on the manner of destruction and obtain such Party's consent as to the method and means of destruction. Outside counsel, however, will not be required to return or destroy any pretrial or trial records that are regularly maintained by that counsel in the ordinary course of business; which records will continue to be maintained as Confidential Discovery Materials in conformity with this Order. However, counsel may retain the privileged communications, work product, signed copies of the

-12-

Endorsement of Stipulation and Protective Order pursuant to paragraph 3, and all court filed documents even though they contained Confidential Discovery Materials, but such documents will remain confidential subject to the terms of this Protective Order.

**16. Modification Permitted:** Nothing herein shall prevent any Party or other person from seeking modification of this Order, or objecting to discovery it believes to be improper.

**17. Responsibility of Attorneys as to Copies:** The attorneys of record are responsible for employing reasonable measures to control and track access to and distribution of Confidential Discovery Materials, including abstracts and summaries.

**18. No Waiver of Rights or Implication of Discoverability**

(A) No disclosure pursuant to any provision of this Order will waive any rights or privileges of any Party or person granted by this Order.

(B) This Order will not enlarge or affect the proper scope of discovery in this or any other litigation; nor will it imply that Confidential Discovery Materials are properly discoverable, relevant, or admissible in this or any other litigation. Each Party reserves the right to object to any disclosure of information or production of any documents that the Designating Party designates as Confidential Discovery Materials on any other ground it deems appropriate.

(C) The entry of this Order shall be without prejudice to the rights of the Parties, or any non-party to assert or apply for additional or different protection. Nothing herein prevents any Party from seeking an appropriate protective order to further govern the use of Confidential Discovery Materials at trial.

-13-

(D) Nothing will prevent disclosure beyond that required under this Order if the producing party consents in writing to such disclosure, or if the Court, after notice to all affected parties, orders such disclosures, subject to any review as authorized under the Federal Rules of Civil Procedure or the Local Rules of this Court.

**19. Miscellaneous:** Nothing in this Order prevents a producing Party from any use of its own documents and information.

**20. Improper Disclosure of Confidential Discovery Material:** Disclosure of Confidential Discovery Materials other than in accordance with this Order may subject the disclosing Party or person to sanctions and remedies as the Court may deem appropriate.

        **SO ORDERED this 19th day of September, 2007.**

                        *David A. Baker*

                        DAVID A. BAKER

                        UNITED STATES MAGISTRATE JUDGE

## ENDORSEMENT OF PROTECTIVE ORDER

I hereby attest to my understanding that information or documents designated as Confidential Discovery Materials or confidential information are provided to me subject to the Protective Order ("Order") dated September 18, 2007 (the "Protective Order"), in the above-captioned litigation ("Litigation"); that I have been given a copy of and have read the Order; and, that I agree to be bound by its terms. I also understand that my execution of this Endorsement of Protective Order, indicating my agreement to be bound by the Order, is a prerequisite to my review of any information or documents designated as Confidential Discovery Material or confidential information pursuant to the Order.

I further agree that I shall not disclose to others, except in accord with the Order, any Confidential Discovery Materials or Confidential Information, in any form whatsoever, and that such Confidential Discovery Materials and Confidential Information may be used only for the purposes authorized by the Order.

I further agree to return all copies of any Confidential Discovery Materials or any document or thing containing Confidential Information I have received to counsel who provided them to me, or to destroy such materials, upon completion of the purpose for which they were provided and no later than the conclusion of this Litigation.

I further agree and attest to my understanding that my obligation to honor the confidentiality of such Confidential Discovery Material and Confidential Information will continue even after this Litigation concludes.

I further agree and attest to my understanding that, if I fail to abide by the terms of the Order, I may be subject to sanctions, including contempt of court, for such failure. I agree to be subject to the jurisdiction of the United States District Court, Middle District of Florida, Orlando Division, for the purposes of any proceedings relating to enforcement of the Order. I further agree to be bound by and to comply with the terms of the Order as soon as I sign this Agreement, regardless of whether the Order has been entered by the Court.

Date: _____

By: _____