# Exhibit B

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

ORLANDO DIVISION

| | |
|---|---|
| In Re:  Seroquel Products Liability Litigation<br>MDL Docket No.  1769<br><br>DOCUMENT RELATES TO ALL CASES | Case No. 6:06-md-01769-ACC-DAB<br><br>**DECLARATION OF LAWRENCE J.<br>GORNICK IN SUPPORT OF REQUEST<br>FOR MONETARY SANCTIONS** |

I, Lawrence J. Gornick, declare:

      1.      I am an attorney licensed to practice before all California courts and am admitted to practice pro hac vice before this Court in the *In re Seroquel Product Liability Litigation* (the "Litigation").  I am a partner in the law firm of Levin Simes Kaiser & Gornick.  We represent a number of plaintiffs with cases pending in the Litigation.  I have personal knowledge of all facts stated in this Declaration and if called upon to do so, could and would competently testify to each of them.

      2.      In late June of 2007, my associate Dennis Canty and I began work on Plaintiffs' Motion for Order Imposing Discovery Sanctions against AstraZeneca.  The motion we drafted was filed by the Weitz & Luxenberg firm on July 3, 2007 (See Document No. 256).

      3.      As a result of our Motion for Sanctions, on July 5, 2007, during a Status Conference, this Court set an Evidentiary Hearing for July 26, 2007 to address the issues. Following that Status Conference, Dennis Canty and I started preparing for the hearing.  We worked intensively for the next three weeks and presented the plaintiffs' case to the Court on July 26, 2007.

1

4.      Following the Evidentiary Hearing and the Status Conference of July 27, 2007, my office (primarily Mr. Canty), along with Mr. Jaffe of Weitz & Luxenberg and his team, tried to work with AstraZeneca ("AZ") to find solutions to the many problems that we identified during the Evidentiary Hearing.  I drafted and reviewed many emails related to these issues.  I have not tried to capture the precise amount of time I spent drafting or reviewing such emails, but can estimate that the time I spent easily exceeded five hours.

5.      Following this Court's Order of August 21, 2007 finding AZ's conduct sanctionable and the Court's directions to the parties during the Status Conference of August 22, 2007, Dennis Canty and I turned our attention to identifying appropriate candidates for the role of Electronic Discovery Special Master, meeting and conferring with AZ and filing and responding to related motions.  We also interviewed two special masters suggested by the Court. I drafted and reviewed many emails related to these issues.  I have not tried to capture the precise amount of time I spent in drafting or reviewing such emails, but can estimate that the time I spent easily exceeded five hours.

6.      Once the Court appointed Special Master Ball, Mr. Canty and I engaged in numerous conference calls with Master Ball and AZ's lawyers.  Each of the calls through December 27, 2008 touched at least in part on technical deficincies in AZ's production and/or issues related to AZ's unilaterally imposed re-production of documents in native form.  Prior to every call, I would prepare individually and in a preparatory conference call with my team, which always included Mr. Jaffe.  In between conference calls with Mr. Ball, there were typically many emails related to technical and/or native production issues.  I have not tried to capture the precise amount of time I spent in drafting or reviewing such emails, but can estimate that the time I spent easily exceeded ten hours.

2

7.     I have prepared for and attended every Status Conference in the Litigation since July 26, 2007 in my role as the plaintiffs' lawyer with primary responsibility for remedying the technical deficiencies in AZ's productions, related sanction issues and in interfacing with SM-ESI Ball.

8.     I have spent at least 382.75 hours in connection with the work described above and in preparing for the Evidentiary Hearing on January 28, 2008.  Attached as Exhibit 1 is a chart showing the details underlying this estimate, less the estimates for emails described in paragraphs 4, 5 and 6 above.  The details shown in Exhibit A were derived from a review of my calendar, the Court's docket, phone records, Master Ball's bills and my recollection.  It should be noted that I have not tried to capture my time for phone calls, other than a few lengthy conference calls, and internal firm conferences prior to 2008.  I am certain that I spent tens of hours on phone calls and internal conferences related to the issues for which plaintiffs seek recovery here.

9.     I estimate that I will spend at least 50 hours in further preparation for the January 28th hearing and in connection with presenting plaintiffs' case at the hearing.

10.     My firm has incurred costs in the amount of $33,152.18 in connection with the work described above.  Attached as Exhibit 2  is a chart showing the details of these costs and corresponding bills.

11.     My hourly rate for work in connection with mass tort litigation in 2007 was $625 per hour and in 2008 it is $650 per hour.  I believe this rate to be fair and reasonable primarlily in light of the fact that in 2005, while a partner in the law firm of Paul, Hastings, Janofsky and Walker, my rate was $590 per hour and would certainly have exceeded $625 per hour in 2007 and $650 per hour in 2008.  As such, the value of the time I have spent working on the sanction-

related issues presently before the Court and in connection with plaintiffs' July 3, 2007 Motion for Sanctions and the related July 26, 2007 Evidentiary Hearing is $239,893.75. The value of the 50 hours of work I anticipate spending between now and the end of the Evidentiary Hearing on January 28, 2008 is $32,500. Accordingly, the total value of the time I will have spent working on the issues relevant here will be at least $272,000.00.

12.    My associates Dennis Canty and Laura Brandenberg have performed significant work related to the sanctions issues presently before the Court. Mr. Canty's rate in 2007 was $450 per hour, and is $470 per hour for 2008. Ms. Brandenberg's rate in 2007 was $300 per hour, and is $315 per hour in 2008. These rates are fair and reasonable as they are less then the rates charged for California lawyers of similar skill and experience engaged in complex litigation for large law firms such as some of those engaged by Defendants.

13.    I am aware of the work performed in the Litigation by Mr. Jaffe and Weitz & Luxenberg Legal Assistants Yummy Chiu and Eileen Sugiarto. Based on my experience as a partner of Paul, Hastings, Janofsky and Walker, I can say with confidence that a fair and reasonable rate for Mr. Jaffe's services is at least $125 per hour and at least $100 per hour for Ms. Chiu's and Ms. Sugiarto's services.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed this 16th day of January 2008 in San Francisco, California.

s/ Lawrence J. Gornick
Lawrence J. Gornick