US District Court
Middle District of Florida

**PLAINTIFFS' EXHIBIT**

Exhibit Number: _____10_____

6:06-md-01769-ACC-DAB

**In Re: Seroquel Products Liability Litigation**

Date Identified: _____

Date Admitted: _____

# Exhibit 10

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

ORLANDO DIVISION

| | |
|---|---|
| In Re:  Seroquel Products Liability Litigation<br>MDL Docket No.  1769<br><br>DOCUMENT RELATES TO ALL CASES | Case No. 6:06-md-01769-ACC-DAB<br><br>**DECLARATION OF MICHAEL E. PEDERSON IN SUPPORT OF REQUEST FOR MONETARY SANCTIONS** |

I, Michael E. Pederson, declare:

1.  I am an attorney duly admitted to practice law in all of the Courts of the State of New York and I am admitted in the United States District Courts for the Southern, Eastern and Northern Districts of New York.  I represent plaintiffs in the Seroquel MDL litigation on behalf of Weitz & Luxenberg, P.C. and I am fully familiar with the facts of these cases and as set forth herein.  I make this declaration in support of the MDL Plaintiffs' Request for Monetary Sanctions.

2.  In early January 2007, I began to work in earnest on trying to resolve a number of outstanding issues related to the production of discovery materials from defendant, AstraZeneca ("AZ").  I worked on these issues with Jonathan Jaffe, my office's Information Technology Department Director, who was initially assigned to only oversee the Seroquel discovery production.  However, as significantly more problems developed, due to AZ's flawed productions, he was forced to take on a more central role.

1

3. Mr. Jaffe highlighted several significant technical problems related to AZ's document production. More specifically, these issues related to problems with the load files, document searchability, page breaks, TIFFing and gaps in the document production.

4. These issues increasingly, required significant demands on my time as we were confronting these issues on a regular basis. It appeared as if every production was being done differently so as to make our loading and use of the material that much more difficult. Over the next several months, plaintiffs attempted to work with AZ's counsel and their technical support personnel to resolve these issues. However, like the productions the individuals we were working with on the defense side changed regularly.

5. Significant efforts were made by Mr. Jaffe to make defendant's production usable and searchable. In fact, Mr. Jaffe made several internal fixes and offered several technical fixes to AZ in order to make the productions usable by the plaintiffs, but it appears these solutions were rejected by AZ.

6. Document production issues were regularly brought to the attention of both this Court and AZ's counsel and plaintiffs' counsel were regularly advised that these problems were being worked upon and solutions would be forthcoming.

7. However, as reviews of the productions progressed in the litigation, plaintiffs discovered additional document production problems which compounded our problems with the document reviews. This directly impacted on plaintiff's ability to use and rely on the data received from defendants. Issues relating to missing E-mails, blank pages and search terms were brought up with AZ. These new problems were brought to AZ's attention and plaintiffs were once again assured that these serious technical problems would be fixed. This did not happen.

8. In fact, I began to put materials together to make a motion for sanctions in April 2007, but we were once again assured that these issues could be resolved and we did not move at that time.

9. However, after once again bringing these numerous production issues to this Court's attention, the parties were told to resolve these issues or a sanctions hearing would take place. The Court's admonishment brought about heightened attention by both sides and resulted in numerous telephone conferences, e-mails, and letter exchanges and face-to-face meetings in both New York and Philadelphia in May and June concerning the resolution of these various technical issues. Plaintiffs accepted AZ's representations that these problems could be fixed and agreed to seek a sanctions hearing.

10. This resulted in a joint statement being submitted to the Court on June 7, 2007, which outlined the various agreements that the parties had reached.

11. Despite this agreement, only cosmetic compliance with the agreement was made by AZ. The subsequent document productions continued to be delayed and were incomplete and the corrective measures failed to be completed, as agreed to.

12. As a result of these numerous failures by AstraZeneca, in June of 2007, I worked with Lawrence Gornick and Dennis Canty on Plaintiffs' Motion for an Order Imposing Discovery Sanctions against AstraZeneca. The motion was drafted by Mr. Gornick's office but was filed by my firm on July 3, 2007.

13. As a result of Plaintiffs' Motion for Sanctions, on July 5, 2007, during a Status Conference, this Court set an Evidentiary Hearing for July 26, 2007 to address the issues raised by plaintiffs. Thereafter, plaintiffs started preparing for the hearing. Mr. Gornick and Mr. Canty were the attorneys selected to conduct the hearing, however, my office and Mr. Jaffe worked

3

very closely with them to supply the underlying information and documentation to help them prepare.  In preparation for this motion, I reviewed our files, had meetings with our expert, Jonathan Jaffe and Mr. Gornick's office in order to prepare and submit supporting documents and statements for this motion.

14. Following the Evidentiary Hearing and the Status Conference of July 27, 2007, Mr. Canty, along with Mr. Jaffe and his staff, tried to work with AZ to find solutions to the many problems that plaintiffs had identified during the Evidentiary Hearing.  I was involved in some of these discussions, E-mail exchanges and phone calls.  I am not claiming any time for this.

15. I do not believe that I will spend any additional time preparing for the January 28th hearing, nor in presenting plaintiffs' case at the hearing.

16. Prior to making this declaration, I had my assistants pull from my E-mails all E-mails to or from Jonathan Jaffe or any E-mails that they perceived were related to ESI discovery issues in Seroquel.  I then reviewed those E-mails to determine if they were related to the ESI production and the problems associated with it.  A review of these E-mails helped me to recall various issues and the timeline of those events throughout 2007 to the present.

17. I would estimate that I spent a total of at least 100 hours regarding ESI discovery issues from January 2007 until today.  This includes all work: drafting/reviewing E-mails regarding the issues; drafting/reviewing correspondence regarding the issues; telephonic conferences; and meet and confers with all lawyers and other persons involved; meetings with Mr. Jaffe and others in my firm, including Paul Pennock, Glenn Kramer, and the newly graduated lawyer, Jonathan Sedgh and paralegals; motion review/preparation; and the preparation and review of PowerPoint Presentations concerning ESI issues that were to be presented to the Court.  This is a conservative estimate.  It is likely that the actual time I spent

dealing with ESI issues was closer to 200 + hours, but I am certain that 100 hours is not an overestimate and in order to have absolute confidence that the time I am claiming is more than fair, I am claiming 100 hours to be the amount of time spent on these matters.

18.    I am asking for compensation at the rate of $500 per hour.  I have come to learn that the competitive rate for a lawyer of my experience in New York City engaging in complex litigation for a large firm such as defendant's firms is closer to $700 per hour.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 16th day of January 2008 in New York, New York.

                                              s/ Michael E. Pederson
                                              Michael E. Pederson