UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE:  Seroquel Products Liability Litigation

MDL DOCKET NO. 1769
_____

This Document Relates to ALL CASES

ASTRAZENECA'S RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION TO COMPEL PRODUCTION OF LOGGED DOCUMENTS
AND FOR APPOINTMENT OF SPECIAL MASTER

AstraZeneca LP and AstraZeneca Pharmaceuticals LP ("AstraZeneca") submit this response in opposition to plaintiffs' motion to compel with respect to AstraZeneca's privilege log, styled as their "Motion to Compel AstraZeneca To Produce Documents Improperly Designated As Privileged And Documents For Which Privilege Should Be Deemed Waived And For The Appointment Of A Special Master To Review Privilege Logs" (hereinafter "Motion").

## I.      INTRODUCTION

Plaintiffs' Motion at best is premature and at worst misrepresents the facts and distorts the law governing resolution of privilege disputes in mass tort litigation.  The salient facts are:

- AstraZeneca began producing privilege logs on March 7, 2007, and has continued to identify privilege documents on a rolling basis, in accordance with Case Management Order No. 2 ("CMO2").  Of the approximately one million documents produced last year, AstraZeneca designated fewer than two percent as privileged and/or work product.

- Plaintiffs did not raise any substantive issue concerning AstraZeneca's logs until mid-September 2007.  During the preceding months, AstraZeneca continued to review for privilege the documents for dozens of additional custodians, unaware of any concerns that plaintiffs might have about AstraZeneca's logs and its privilege designations.

- Although AstraZeneca repeatedly has sought to discuss with plaintiffs possible solutions to their concerns, plaintiffs have not responded to AstraZeneca's proposals, even to reject

them.  Instead, plaintiffs have refused to engage and have insisted that privilege issues be dumped in the lap of yet another new special master.  *See* Part II (Background), *infra*.

None of the cases cited by plaintiffs supports their demand for a sweeping "waiver" of privilege on the record here.  Indeed, the governing authorities (including plaintiffs' cited cases) confirm that any holding of privilege waiver is *inappropriate* based on initial objections to an early iteration of a privilege log.  Nor do the cited authorities support plaintiffs' suggestion that AstraZeneca acted improperly in removing documents from its privilege log, a decision about which AstraZeneca informed plaintiffs in September.  Rather, as even plaintiffs' cited cases confirm, work on privilege issues is an evolving process in which parties are afforded multiple opportunities to amend and supplement privilege logs before courts even entertain rulings that documents listed on a privilege log are not in fact privileged.  *See* Part III.A., *infra*. Accordingly, the Court should reject plaintiffs' baseless argument that AstraZeneca has somehow waived all privilege and protection for any challenged documents on its privilege log.

That leaves the question of how to address privilege issues going forward.  Although a knowledgeable and experienced special master may provide assistance at a later point in the process to address the merits of any privilege disputes that must ultimately be adjudicated, that system would be futile *until those disputes first have been narrowed through a meaningful meet-and-confer process* – a process that plaintiffs have derailed in recent months in favor of their premature special-master strategy.  To the extent the Court wants to facilitate such a full and proper meet-and-confer process, the Court could involve Special Master Orran Brown, given his demonstrated ability to facilitate productive discussions on discovery-related disputes in a non-confrontational way, and thereby greatly reduce the number and range of disputes on privilege-log issues, if any, that require ultimate formal adjudication.  *See* Part III.B, *infra*.

## II.     BACKGROUND

Plaintiffs' Motion rests on a misleading and incomplete recitation of the facts underlying the parties' privilege log dispute. To place plaintiffs' Motion in its proper context, the following sets forth the relevant factual background.

### A.     AstraZeneca's Production of Privilege Logs

CMO2 provides that AstraZeneca shall provide privilege logs on a rolling basis within 120 days of the production of documents from each group of custodians. *See* Doc. 129 at 11-12. AstraZeneca timely furnished its initial privilege log on March 7, 2007, listing certain documents that are privileged or protected by the work product doctrine. Declaration of Marc E. Raven ¶ 3 ("Decl."). Since then, AstraZeneca timely provided updated logs on July 3, July 30, September 19, and October 23 of 2007, and January 7, 2008, covering privileged and work product documents for AstraZeneca additional custodians. *Id*. ¶ 4. Contrary to plaintiffs' representation that "at no time did AZ inform Plaintiffs that they were simply adding documents" to the same privilege log (Motion at 23 n.26), AstraZeneca made clear to plaintiffs as early as July 30, 2007, that each log was cumulative of the log that preceded it. *See* Decl. ¶ 5 & Exh. A.

### B.     Plaintiffs' March 2007 and June 2007 Objections to the Log and AstraZeneca's Responses

On March 7, 2007, upon receiving AstraZeneca's first log, plaintiffs' counsel requested that AstraZeneca provide that log and all subsequent logs in a searchable format. AstraZeneca swiftly complied with that request on March 16. Decl. ¶ 6 & Exh. C.

On May 30, 2007, plaintiffs' counsel asked AstraZeneca to amend the log in two respects, first by listing the source custodian(s) for each logged document, and second by changing its approach to numbering logged documents. Decl. ¶ 7. AstraZeneca immediately

agreed to the first change, quickly reached agreement with plaintiffs on a numbering scheme, and promptly implemented both changes in a revised log furnished on June 26.  Decl. ¶ 7 & Exh. D.

### C.  Plaintiffs' September 2007 Objections and the October 2007 Exchange of Correspondence

Over the next three months, plaintiffs lodged no other complaint about the logs, during which time AstraZeneca provided three updated logs in a format consistent with the parties' agreements reached in late May and June 2007.  Decl. ¶¶ 4, 8.  On September 19, 2007, more than *six months* after AstraZeneca produced its first log, plaintiffs' counsel sent AstraZeneca an e-mail, noting that he had "read through large portions of [AstraZeneca's] privilege logs" and criticizing various features of the log.  E-Mail from Paul Pennock to Fred Magaziner (Sept. 19, 2007) (Decl. Exh. E).  Counsel demanded that AstraZeneca "immediately":  (1) provide a list of attorneys whose names appeared on the log; (2) provide a basis for claiming attorney-client privilege for documents where a lawyer was neither recipient nor author; and (3) explain why the privilege attaches to actions directed by an attorney.  *Id*.

AstraZeneca responded two days later.  E-Mail from Marc Raven to Paul Pennock (Sept. 21, 2007) (Decl. Exh. F).  After expressing surprise at plaintiffs' late-breaking criticisms, which should have been raised months earlier, AstraZeneca addressed plaintiffs' demands.  First, AstraZeneca provided the attorney list.  *Id*.  As to the entries where neither recipient nor author was an attorney, AstraZeneca explained that: (a) most consisted of e-mail strings, (b) due to limitations of the litigation support system used to generate the log, the log lists only the authors and recipients of the last e-mail in each string, and (c) for those documents, attorney involvement was reflected elsewhere in the string.  AstraZeneca noted that, had plaintiffs raised this issue in March or June, AstraZeneca could have provided additional fields in the log, but nonetheless

offered to meet and confer to address how AstraZeneca might provide the information plaintiffs wanted. *Id*. Finally, AstraZeneca offered to meet and confer to address any other concerns plaintiffs might have. *Id*.

As agreed on a subsequent call, plaintiffs' counsel sent AstraZeneca nearly two-dozen questions about issues related to the log on October 3, 2007. E-Mail from Paul Pennock to Stephen McConnell (Oct. 3, 2007) (Decl. Exh. G). On October 16, 2007, AstraZeneca responded with a detailed, eight-page letter addressing each question. Letter from Marc Raven to Paul Pennock (Oct. 16, 2007) (Decl. Exh. H). In particular, with respect to log entries where no lawyer was listed as recipient or author, AstraZeneca again explained that most reflected e-mail chains where attorneys were authors or recipients earlier in the chain, or where the e-mail disclosed legal advice, a request for legal advice, and/or work product. *Id*. at 6. ***AstraZeneca proposed adding a column to its log to explain the attorney involvement, and asked for plaintiffs' "concurrence before putting a large number of lawyers to work on adding that information." Id.*** (emphasis added). Contrary to plaintiffs' representation that AstraZeneca offered to add this information only "in exchange for Plaintiffs dropping their request for a Special Master" (Motion at 9 n.8), AstraZeneca imposed no such condition in the October 16 letter or at any other time. Decl. ¶ 12 & Exh. H at 6.

With respect to entries where no author was identified, AstraZeneca explained that, as the log itself indicated, many of the documents were members of privileged document families (*i.e.*, emails with attachments); that attachments do not always explicitly identify their authors; and that AstraZeneca's document reviewers had been instructed not to speculate or guess about

authorship (*e.g.*, based on attached documents).  Decl. Exh. H at 5.  Still, AstraZeneca offered to reexamine those documents, determine if any were not privileged, and elaborate on its bases for claiming privilege on those that remained.  *Id*. at 5-6.

Of particular note with respect to plaintiffs' Motion, AstraZeneca expressly told plaintiffs that it planned to "release" documents that were on the log but that subsequently were determined to be non-privileged.  *Id*. at 8.  Eight days later, plaintiffs' counsel acknowledged that AstraZeneca would be removing documents from the log.  E-Mail from Paul Pennock to Marc Raven (Oct. 24, 2007) (Decl. Exh. J).  The correspondence between the parties absolutely demonstrates that plaintiffs knew AstraZeneca was dedesignating documents.  Thus, plaintiffs' accusations that AstraZeneca has been dedesignating documents *sub silentio* and that they uncovered secret dedesignations are disingenuous.  *See* Motion at 1, 11; *id.* at 11 (claiming that "a recent Excel analysis *performed for the purpose of this motion* led to the *startling discovery* that AZ has released some documents from the privilege log") (emphasis added).  Although AstraZeneca could not produce those de-designated documents immediately due to technical issues related to the migration of the document database to a new vendor, *see* Doc. No. 680, that production has now begun and should be completed by the end of February.  Decl. ¶ 25.

**D.     Parties' Discussion of AstraZeneca's October 16 Proposals**

What followed over the next two months was a series of e-mails, letters and telephone calls regarding the logs and AstraZeneca's proposals.  *See* Decl. ¶¶ 14-23 & Exhs. K-T.  The exchanges were less than productive because the parties were largely talking past one another. AstraZeneca sought to discuss its October 16 proposals and how it could provide on the privilege log the information plaintiffs needed to evaluate AstraZeneca's privilege claims.  *See*, *e.g*., Decl.

Exhs. K, L, N, P, & R.  On many occasions, AstraZeneca expressed frustration with plaintiffs'

unwillingness to meaningfully address those proposals, or even explain whether and, if so, how

and why they disagreed with AstraZeneca's responses to plaintiffs' questions of October 3.  *See*

Decl. Exhs. L, N, & R.  Plaintiffs, by contrast, not only disregarded AstraZeneca's invitation to

have meaningful meet and confers to further discuss the log, but also almost immediately began

insisting that a special master examine a sizeable number of the logged documents to determine

whether they in fact were privileged.  *See* Decl. ¶ 15, & Exhs. M & O.  At the same time,

however, ***plaintiffs' counsel acknowledged that AstraZeneca was "acting in good faith to***

***resolve the issues . . . ."***  E-Mail from Paul Pennock to Stephen McConnell (Nov. 27, 2007)

(emphasis added) (Decl. Exh. O).

Over the next several weeks, AstraZeneca reiterated that appointment of a special master

was premature because the parties still needed to resolve – or at least discuss – issues initially

raised and then ignored by plaintiffs before any issues should be referred to such a special

master.  *See* Email from Stephen McConnell to Paul Pennock (Dec. 7, 2007) (Decl. Exh. P);

Letter from Marc Raven to Paul Pennock (Jan. 4, 2008) (Decl. Exh. R).  In particular,

AstraZeneca urged that privilege disputes regarding many documents might be avoided because

they were created during a period of intense litigation and also protected by the work product

doctrine.  *See* Decl. Exh. P.[1]  Rather than responding to AstraZeneca's proposed solutions to

plaintiffs' complaints, plaintiffs announced they would file a motion.  *See* Email from Paul

Pennock to Marc Raven (Dec. 31, 2007) (Decl. Exh. Q).

---

[1] Because the first Seroquel case was filed four years ago, almost 12,000 of the approximately
20,000 documents on AstraZeneca's privilege log have been withheld as protected work product,
as well as privileged attorney-client communications.  *See* Decl. ¶ 26.

### E.     Plaintiffs' Motion to Compel

Plaintiffs filed their Motion on January 10, 2008.  The Motion contends that AstraZeneca's privilege logs are deficient in ways that plaintiffs never raised in the ten months since the logs were first produced, let alone during a meet-and-confer process.  For example, at no time did plaintiffs assert that the log must list every individual e-mail message in every e-mail string (Motion at 21-22); that any document simultaneously sent to attorneys and non-attorneys must be produced (*id*. at 20); or that AstraZeneca "has not submitted sufficient information for Plaintiffs to evaluate its work-product claims" (*id*. at 2 n.1).  *See* Decl. ¶ 24.

## III.    DISCUSSION

### A.     Plaintiffs' Sweeping Attacks On AstraZeneca's Assertion Of Privilege Are Not Supported By The Law Or The Record.

Plaintiffs' Motion asks the Court to compel the production of privileged AstraZeneca documents on two principal grounds:  (1) plaintiffs argue that waiver arises from alleged deficiencies in AstraZeneca's privilege log; and (2) plaintiffs argue that broad categories of documents identified on the log should not be privileged.  Both arguments are wrong.

#### 1.     Plaintiffs' Suggestion That The Claimed Deficiencies In AstraZeneca's Privilege Log Should Result In A Categorical "Waiver" Is Meritless And Contrary To The Governing Authorities.

This Motion represents the first time in this litigation that plaintiffs have brought to the Court any dispute over AstraZeneca's privilege log.  The record shows that AstraZeneca timely produced an enormous privilege log in accordance with CMO2.  *See* pp. 3-7, *supra*; *cf*. FED. R. CIV. PROC. 26(b)(5), Adv. Comm. Notes (1993) (Rule 26 does not define the requisite contents of a log for all cases; level of log detail in cases involving "few" privileged documents will be greater than in cases involving "voluminous documents").  Moreover, AstraZeneca has

consistently demonstrated a sincere willingness to address plaintiffs' concerns with the log.
Nevertheless, plaintiffs contend that certain alleged deficiencies in the log have caused
AstraZeneca *irrevocably to waive* attorney-client privilege and work product protection for
thousands of logged documents.  *See* Motion at 6-7.  Plaintiffs' precipitous waiver request should
be denied.

Even if AstraZeneca's privilege log were inadequate,[2] plaintiffs wrongly conflate the test
for a privilege log's *inadequacy* under Federal Rule of Civil Procedure 26(b)(5) and the far
higher standards governing *waiver* of privilege related to privilege logs.  The law is clear that a
log's failure to comport with Rule 26(b)(5) does not result in automatic waiver.  *Tyne v. Time
Warner Entertainment Co, LP*, 212 F.R.D. 596, 600 (M.D. Fla. 2002); *accord First Sav. Bank,
F.S.B. v. First Bank System, Inc.*, 902 F. Supp. 1356, 1361 (D. Kan. 1995) ("waiver does not
automatically result from noncompliance with Rule 26(b)(5)").  Instead, waiver is reserved for
"cases of unjustified delay, inexcusable conduct, and bad faith" in relation to the provision of a
grossly inadequate privilege log, or no log at all.  *United States v. Philip Morris Inc.*, 347 F.3d
951, 954 (D.C. Cir. 2003); *see also First Sav. Bank, F.S.B.*, 902 F. Supp. at 1361; 8 Wright,
Miller & Marcus, FEDERAL PRACTICE & PROCEDURE: CIVIL 2D § 2016.1, at p. 235 (1994); *Brown
v. Finlay Enters., Inc.*, 2008 U.S. Dist. LEXIS 876, *7 (N.D. Fla., Jan. 4, 2008) (emphasizing
that even total "[f]ailure to provide a privilege log does not result in an automatic waiver of
privilege").

---

[2] Although AstraZeneca has made multiple offers to meet and confer with plaintiffs about ways
to improve the usability of its log, AstraZeneca does not concede that its log is inadequate or
otherwise not in compliance with Federal Rule of Civil Procedure 26(b)(5).  Rather, for the
purposes of this section of the brief, AstraZeneca contends *arguendo* that even if its log were
inadequate, a finding of waiver would still be improper.

Consistent with these principles, courts in this District have regularly refused to hold that even a plainly inadequate privilege log results in any waiver of privilege. *Tyne*, 212 F.R.D. at 599-600; *St. Joe Co. v. Liberty Mut. Ins. Co.*, 2007 U.S. Dist. LEXIS 2899, **1-10 (M.D. Fla. Jan. 16, 2007); *AARP v. Kramer Lead Mfg. Corp.*, 2005 U.S. Dist. LEXIS 36970, **9-11 (M.D. Fla. July 26, 2005); *CSX Transp., Inc. v. Admiral Ins. Co.*, 1995 U.S. Dist. LEXIS 22359, *16 (M.D. Fla. July 20, 1995).  Indeed, those courts have denounced such a "harsh sanction," *Tyne*, 212 F.R.D. at 599-600, as "draconian," given both "the important privileges and protections" at stake, and the recognition that "[w]holesale disclosure of the documents listed in the privilege logs could result in revelation of legitimately privileged documents."  *CSX Transp.*, 1995 U.S. Dist. LEXIS 22359, at *16; *see also*, *e.g.*, *Pensacola Beach Community United Church, Inc. v. National Union Fire Ins. Co.*, 2007 WL 737499, **3-4 (N.D. Fla. Mar. 7, 2007) (rejecting waiver even where producing party did not list certain documents on log); *Trudeau v. New York State Consumer Protection Bd.*, 237 F.R.D. 325, 334 (N.D.N.Y. 2006) (waiver "would be too austere a remedy when the deficiencies can be readily rectified at this juncture of the litigation"); *Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 210 F.R.D. 100, 106 (D. Del. 2002) (rejecting "draconian remedy" of waiver, and instead "order[ing] the submission of a revised privilege log").

Plaintiffs' proposition, at bottom, is that if a privilege log is produced in an inadequate format (or a format unacceptable to plaintiffs), privilege is indiscriminately waived without opportunity to cure.  Yet plaintiffs cite no case – and AstraZeneca is aware of none – finding waiver the first time a privilege log dispute is brought to the court.  Even the lead case cited by plaintiffs, *In re Universal Serv. Fund Tel. Billing Practice Litig.*, 232 F.R.D. 669 (D. Kan. 2005),

did not impose any waiver on the defendant for submitting what the court found to be a deficient privilege log.

Contrary to plaintiffs' submission, even where courts find privilege logs to be legally "inadequate," those same courts consistently afford parties multiple opportunities to supplement those logs, as well as further opportunities to substantiate challenged privilege claims as needed by affidavit or additional briefing. *See*, *e.g*., *St. Joe Co.*, 2007 U.S. Dist. LEXIS 2899, at **1-10 (affording defendant "one last opportunity" to amend privilege log and otherwise substantiate privilege claims, despite several prior opportunities); *AARP*, 2005 U.S. Dist. LEXIS 36970, at **9-11 (providing "a final opportunity" to support privilege claims); *CSX Transp., Inc.*, 1995 U.S. Dist. LEXIS 22359, at **9-16 (providing "one last opportunity" to amend privilege logs and substantiate privilege claims). In a case plaintiffs repeatedly cite, *Muro v. Target Corp.*, 243 F.R.D. 301 (N.D. Ill. 2007), the magistrate judge ordered waiver after giving the defendant "*three chances* to sustain its claim of privilege in a manner that conforms with Rule 26(b)(5)." *Id*. at 310. What plaintiffs fail to mention is that the district court vacated that order and gave the defendant *yet another* opportunity to revise the log. *Muro v. Target Corp.*, 2007 WL 3254463, *15 (N.D. Ill. Nov. 2, 2007) ("An order that privileged documents be disclosed as a sanction is appropriate . . . only if the party that authored the log has displayed willfulness, bad faith or fault.").

Given all this, waiver is not even remotely appropriate here. Plaintiffs do not dispute that AstraZeneca has timely produced privilege logs on a rolling basis, consistent with CMO2. The preparation of AstraZeneca's enormous privilege log, in the context of an even more enormous document production, has been a substantial and difficult undertaking. Indeed, plaintiffs have

expressly acknowledged that AstraZeneca has approached the privilege log issues in "good faith." *See* p. 7, *supra*; *compare*, *e.g.*, *First Savings Bank*, 902 F. Supp. at 1362 (emphasizing that courts reject waiver where there has been "good faith attempts at complying" on privilege log issues) (citing cases). In March 2007, and again in May and June, AstraZeneca timely complied with plaintiffs' technical formatting requests. Plaintiffs did not register any other complaints about the log until September, raising issues that had been readily apparent when AstraZeneca produced its first log in March. Despite plaintiffs' dilatory approach,[3] AstraZeneca repeatedly has attempted to engage plaintiffs in productive discussion and offered good-faith solutions to plaintiffs' concerns. This is not the stuff of waiver, and plaintiffs offer no authority to conclude otherwise.

In sum, plaintiffs' suggestion that AstraZeneca waived attorney-client and work product protections for documents listed on its privilege log must be rejected. Even assuming *arguendo* that Rule 26(b)(5) required AstraZeneca further to supplement its privilege log – and in the effort to reach an amicable solution, AstraZeneca has offered, thus far without avail, to supplement – that work should be accomplished through a meaningful meet-and-confer process and not by resort to this Court. *See* Part III.B., *infra*.

---

[3] Plaintiffs make a half-hearted effort to defend their fitful attention to privilege log issues, claiming that the supposed deficiencies in the log "did not come to [their] immediate attention" because they were "concentrating" on AstraZeneca's document production. Motion, at 23 n.26. It is difficult to accept that plaintiffs had no time to focus on the logs until September 2007, particularly given that they asked for and received modifications to the log in March and June. In any event, plaintiffs' complaint that they received a less-than-perfect log from AstraZeneca is at best inconsistent with their claimed justification in ignoring for six months the logs AstraZeneca provided on a rolling basis.

2. **The Court Should Not Entertain Plaintiffs' Contentions Regarding AstraZeneca's Assertion Of Privilege For Particular Groups Of Documents.**

The Court also should reject plaintiffs' request that it deny AstraZeneca's claims of privilege for certain groups of documents on AstraZeneca's privilege log.  *See* Motion at 13-23. The law is far more nuanced than plaintiffs portray, and in some instances plaintiffs are simply wrong about what the cases have held.  In addition, it would be difficult, if not impossible, to apply the law without reference to the logged documents themselves or the circumstances in which they were created.  And more fundamentally, it would put the cart before the horse to do so before outstanding disputes regarding the privilege log are resolved.  An analysis of three plaintiffs' arguments further illustrates why privilege issues cannot be approached in the simplistic, categorical way urged by plaintiffs.

First, plaintiffs wrongly contend that draft marketing materials, reports, memoranda, training materials and study protocols are categorically unprivileged.  *See* Motion at 13-17.  As the cases make clear, drafts sent to attorneys for legal review can be privileged, even when final versions of those drafts are released to third parties.  *See, e.g.*, *The Diversified Group, Inc. v. Daugerdas*, 304 F. Supp. 2d 507, 514 (S.D.N.Y. 2003) (marketing materials); *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 474 (S.D.N.Y. 1996) (report of internal investigation); *Macario v. Pratt & Whitney Canada Inc.*, 1991 WL 6117 (E.D. Pa. Jan. 17, 1991) (draft response to press inquiry on sensitive matter).[4]

---

[4] The two cases plaintiffs cite on the matter do not assist their cause.  The first, *In re Vioxx Prod. Liability Litig.*, 501 F. Supp. 2d 789 (E.D. La. 2007), actually provides that sending drafts to attorneys is privileged if the predominant purpose of the communication is to seek the attorney's legal advice.  *Id*. at 806 ("There are instances, of course, where legal advice is the primary purpose behind lawyers' comments and where these comments are complemented by

Second, plaintiffs assert that so-called "mixed purpose" documents, or documents simultaneously sent to both lawyers and non-lawyers for legal and non-legal review, are categorically unprivileged. *See* Motion at 20 (citing *United States v. IBM*, 66 F.R.D. 206, 213 (S.D.N.Y. 1974)). Better-reasoned precedent, however, has long held that mixed-purpose communications may be privileged if their purpose is to seek legal advice. *See*, *e.g.*, *TVT Records, Inc. v. Island Def Jam Music Group*, 214 F.R.D. 143, 150-51 (S.D.N.Y. 2003) (documents, including "email communications," that were "at least copied to counsel for the purpose of allowing counsel to respond to ongoing developments with legal advice," are "appropriately protected as privileged").[5] Moreover, a privileged "implied request" for legal advice occurs "when an employee sends information to corporate counsel in order to keep them apprised of ongoing business developments, with the expectation that the attorney will respond in the event that the matter raises important legal issues." *In re Pfizer Inc. Sec. Litig.*, 1993 WL

---

grammatical and editorial changes that could reasonably be considered inextricably intertwined with the advice."). Plaintiffs cite the second case, *In re Vioxx Prod. Liability Litig.*, 2007 WL 854251, *3 (E.D. La. Mar. 6, 2007), for the proposition that "documents prepared for regulatory purposes are normally not protected by the attorney-client privilege." Motion at 15. In fact, the court simply ruled that "the work-product doctrine 'does not protect materials assembled in the ordinary course of business, pursuant to regulatory requirements, or for other non-litigation purposes.'" 2007 WL 854251, at *3 (quoting *Carroll v. Praxair, Inc.,* 2006 WL 1793656, *2 (W.D. La. June 28, 2006)). This cited decision does not consider how the attorney-client privilege operates in the regulatory sphere when an attorney's legal review of a non-final document is sought.

[5] *See also Muro*, 2007 WL 3254463, *13 ("There is no requirement that the communication involve only 'legal issues,' and factual communications made for the purpose of facilitating legal representation are also protected."); *McCook Metals LLC v. Alcoa, Inc.,* 192 F.R.D. 242, 254 (N.D. Ill. 2000) (material privileged that "simultaneously ask[ed] for or relay[ed] legal advice while updating the business people responsible for the operating unit"); *Baxter Travenol Labs., Inc. v. Abbott Labs.,* 1987 WL 12919, *5 (N.D. Ill. June 19, 1987) ("the mere fact that a document is sent to many non-legal and few legal personnel is not determinative of whether it is privileged").

561125, *6 (S.D.N.Y. Dec. 23, 1993) ("An implied request is privileged to the same extent as an explicit request.").

Third, plaintiffs contend that Rule 26(b)(5) requires that all individual messages in an e-mail string be logged. *See* Motion at 17-20, 21-23.  The magistrate judge's decision in *Muro*, 243 F.R.D. at 306-07, 309, which plaintiffs cite, supports this proposition.  However, plaintiffs fail to mention that the district judge in *Muro* reversed the magistrate judge on this very point:

> [T]he court respectfully disagrees that Rule 26(b)(5)(A) requires separate
> itemization.  As *Upjohn Co. v. United States* makes clear, the fact that non-
> privileged information was communicated to an attorney may be privileged,
> even if the underlying information remains unprotected.  449 U.S. 383, 395-96
> (1981).  As applied in the e-mail discovery context, the court understands
> *Upjohn* to mean that even though one e-mail is not privileged, a second e-mail
> which forwards that prior e-mail to counsel might be privileged in its entirety.
> In this respect, the forwarded material is similar to prior conversations or
> documents that are quoted verbatim in a letter to a party's attorney.

*Muro*, 2007 WL 3254463, at *12.  The district court concluded that the magistrate judge "erred by reading this rule to require a method of itemization that will, in some cases, force parties to disclose privileged information."  *Id.*

Indeed, plaintiffs' own lead authority on e-mail strings recognizes that there are circumstances where each individual message in a string need not be separately logged.  *See Universal Service Fund*, 232 F.R.D. at 673 ("In those instances where each and every separate e-mail within a strand is limited to a distinct and identifiable set of individuals, all of whom are clearly within the attorney-client relationship in which legal advice is being sought or given, listing the e-mail strand as one entry on the privilege log might be regarded as sufficient."); *see also Vaughan v. Celanese Ams. Corp.*, 2006 U.S. Dist. LEXIS 89888, **10-11 (W.D.N.C. Dec. 11, 2006) (approving privilege log listing e-mail strings as one document).  And the tremendous

size of AstraZeneca's document production and privilege log, coupled with CMO2's turn-around time for producing privilege logs, weighs heavily against requiring that every communication in every e-mail string be logged separately.[6]

With all of these complicated and document-specific issues, it would be impossible to make categorical judgments about privilege until questions regarding the logging of documents have been resolved. This matter, like the others, is one that AstraZeneca has been and continues to be willing to discuss with plaintiffs in an effort to reach a mutually acceptable solution that takes into account all relevant considerations.

B.     **Plaintiffs' Request For A New Special Master Is Premature.**

Plaintiffs couple their motion to compel with a request that the Court immediately appoint a new special master to resolve privilege and privilege log issues. *See* Motion at 2-5. But appointing any new special master, before the issues to be referred have been narrowed and crystallized in the meet-and-confer process, would impose an undue burden on any new special master and substantial unnecessary expense on the parties. *See* FED. R. CIV. PROC. 53(a)(3) ("In appointing a master, the court must consider the fairness of imposing the likely expenses on the

---

[6] *See* Advisory Comm. Notes to FED. R. CIV. PROC. 26(b)(5) ("The rule does not attempt to define for each case what information must be provided when a party asserts a claim of privilege or work product protection. Details concerning time, persons, general subject matter, etc. may be appropriate if only a few items are withheld, but may be unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories."); Jennifer M. Moore & Gregory S. Kaufman, *Discovery can get tangled up in 'strings'*, NAT'L L.J. (Dec. 4, 2006) ("Even when courts follow the rationale of *Universal Service Fund*, they may recognize a basis for different treatment in differing circumstances. One possible basis for distinction is the number of e-mails at issue. In *Universal Service Fund*, compliance with the magistrate judge's ruling required logging at most 131 separate e-mails. A different court may conclude that the burden of individually logging each e-mail in a string claimed to be privileged outweighs the benefit when thousands, instead of hundreds, of e-mails are at issue.").

parties and must protect against unreasonable expense or delay.").  The parties' disputes over privilege and privilege-log issues are not yet ripe for adjudication, particularly given that the parties have not even worked through the issues themselves.

The most prudent course at this time is not to appoint a "privilege log" Special Master, but instead for the Court to compel the parties to meet and confer on all disputed issues and possibly involve Orran Brown as a non-binding facilitator of that court-mandated process,[7] given that Mr. Brown has proven to be very effective at mediating discovery-related disagreements in this MDL.[8]  Such a directed meet-and-confer process could be expected to narrow, if not resolve, many of the issues raised in plaintiffs' Motion.[9]  This process must precede any submission of privilege and work product issues for formal rulings.  To proceed as plaintiffs suggest, by

---

[7] AstraZeneca is not opposed to the parties continuing to speak on their own without the assistance of Mr. Brown.  However, based on plaintiffs' filing of the instant motion and their previous refusal to have meaningful discussions about these issues and AstraZeneca's related proposals, AstraZeneca would welcome Mr. Brown's involvement at this time.

[8] In assisting with discovery-related disputes in this MDL, Mr. Brown has demonstrated the practical problem-solving ability that is necessary to move this massive litigation forward.  He has managed case-specific discovery so that most disputes are resolved without motion practice; only intractable issues have been presented to the Court.  Application of his common-sense management skills to privilege disputes will reduce the number of documents subject to privilege challenges and, where genuine disputes exist, will help the parties focus the issues for rulings.

[9] For instance, in addition to assisting in the possible resolution of disputes about "email chains" and "email families" by directing the parties' efforts in supplementing the privilege log with information so plaintiffs can confirm AstraZeneca's privilege assertions, Mr. Brown could assist in resolving the parties' disputes over work product issues.  Plaintiffs have focused almost entirely on the attorney-client privilege in discussions among counsel, and their Motion mentions "work product" only in a footnote.  Motion at 2 n.1.  Mr. Brown could direct the parties' meet-and-confer discussions on work-product issues to ensure that plaintiffs get any additional information they actually need to confirm AstraZeneca's work-product assertions for particular documents on its log – and thus narrow, if not resolve, disputes on the issue.  Mr. Brown could also facilitate discussions to narrow the scope of "mixed purpose" documents in contention and possibly resolve disputes over documents that fall at either end of a "mixed purpose" continuum, which would further reduce the number of documents requiring any privilege rulings.

dumping a large volume of documents and massive privilege log on a new special master without a preliminary narrowing process, would needlessly complicate resolution of privilege issues.  It would also impose unnecessary and undue burdens on any new special master the Court might ultimately appoint.

* * *

AstraZeneca already has begun the process of reviewing its log to dedesignate documents that may be produced in some form.  Further, AstraZeneca has offered to supplement its log to provide additional information to assist in privilege and work product review.  Plaintiffs have freely stated that AstraZeneca is acting in good faith.  The Court therefore should deny plaintiffs' motion to compel the production of privileged documents, and instead should order the parties to re-open and fully exhaust the meet-and-confer process, either on their own or with the assistance of Mr. Brown, who can help narrow, if not eliminate, any contested privilege and work product issues.

## IV.    CONCLUSION

For the foregoing reasons, plaintiffs' Motion should be denied.

DATED:        January 29, 2008                Respectfully submitted,

*/s/ Stephen J. McConnell*
Stephen J. McConnell
DECHERT LLP
2929 Arch Street
Philadelphia, PA  19103
Telephone: (215) 994-4000
Facsimile: (215) 994-2222
*stephen.mcconnell@dechert.com*

Steven B. Weisburd
DECHERT LLP
300 West 6th Street, Suite 1850
Austin, Texas 78701
Telephone: (512) 392-3000
Facsimile: (512) 394-3001

Susan A. Weber
Gary Feinerman
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, Illinois 60603
Telephone: (312) 853-7820
Facsimile: (312) 853-7036

*Counsel for AstraZeneca Pharmaceuticals LP
and AstraZeneca LP*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on January 29, 2008, I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system through which all participating parties are

deemed served.  I further certify that, by using the CM/ECF, the foregoing has been served on

plaintiffs' liaison counsel, who is charged with serving any non-CM/ECF participants on the

attached Service List.

*/s/ Eliot J. Walker*

**SERVICE LIST**

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No. 1769**

| | |
|---|---|
| Paul J. Pennock, Esq.<br>Michael E. Pederson, Esq.<br>Weitz & Luxenberg, P.C.<br>180 Maiden Lane - 17th Floor<br>New York, NY 10038<br>Telephone: (212) 558-5500<br>Ppennock@weitzlux.com<br>MPederson@weitzlux.com<br>*Plaintiffs' Lead Counsel* | Camp Bailey, Esq.<br>Michael W. Perrin, Esq.<br>Fletcher Trammell, Esq.<br>Bailey Perrin Bailey LLP<br>The Lyric Centre<br>440 Louisiana, Suite 2100<br>Houston, TX 77002<br>Telephone: (713) 425-7240<br>cbailey@bpblaw.com<br>mperrin@bpblaw.com<br>*Plaintiffs' Lead Counsel* |
| Larry Roth, Esq.<br>Law Offices of Larry M. Roth, P.A.<br>Post Office Box 547637<br>Orlando, FL  32854-7637<br>Telephone: (407) 872-2239<br>LROTH@roth-law.com<br>*Plaintiffs' Liaison Counsel* | Tommy Fibich, Esq.<br>Fibich, Hampton & Leebron, L.L.P.<br>1401 McKinney, Suite 1800<br>Five Houston Center<br>Houston, TX 77010<br>Telephone: (713) 751-0025<br>tfibich@fhl-law.com |
| Matthew F. Pawa, Esq.<br>Law Offices of Matthew F. Pawa, P.C.<br>1280 Centre St., Suite 230<br>Newton Centre, MA 02459<br>Telephone: (617) 641-9550<br>Mp@pawalaw.com | Robert L. Salim, Esq.<br>Robert L. Salim Attorney at Law<br>P.O. Box 2069<br>Natchitoches, LA 71457-2069<br>Telephone: (318) 352-5999<br>robertsalim@cp-tel.net |
| Keith M. Jensen, Esq.<br>Jensen, Belew & Gonzalez, PLLC<br>1024 North Main<br>Fort Worth, TX 76106<br>Telephone: (817) 334-0762<br>kj@kjensenlaw.com | Scott Allen, Esq.<br>Cruse, Scott, Henderson & Allen, L.L.P.<br>2777 Allen Parkway, 7th Floor<br>Houston, Texas 77019<br>Telephone: (713) 650-6600<br>sallen@crusescott.com |
| Matthew E. Lundy, Esq.<br>Lundy & Davis, LLP<br>333 North Sam Houston Parkway East<br>Suite 375<br>Houston, TX 77060<br>Telephone: (281) 272-0797<br>mlundy@lundydavis.com | E. Ashley Cranford<br>Whatley Drake & Callas<br>2001 Park Place North, Suite 1000<br>Birmingham, AL 35203<br>Telephone: (205) 328-9576<br>ACranford@wdklaw.com |

| | |
|---|---|
| Robert L. Ciotti, Esq.<br>Carlton Fields, P.A.<br>4221 W. Boy Scout Boulevard<br>Suite 1000<br>Tampa, FL 33607-5736<br>Telephone: (813) 223-7000<br>rciotti@carltonfields.com<br>***Attorney for Defendants AstraZeneca***<br>***Pharmaceuticals, LP, and AstraZeneca LP*** | Gregory P. Forney, Esq.<br>Shaffer Lombardo Shurin<br>911 Main Street, Suite 2000<br>Kansas City, MO 64105<br>Telephone: (816) 931-0500<br>gforney@sls-law.com<br>rbish@sls-law.com<br>***Attorney for Defendant,***<br>***Marguerite Devon French*** |
| Randy Niemeyer<br>22442 Pike 309<br>Bowling Green, MO 63334-5209<br>***Pro Se*** | Eric B. Milliken, Esq.<br>3 Sir Barton Ct.<br>Newark, DE 19702<br>***Pro Se*** |
| Catherine Solomon<br>3100 N.E. 83<br>Gladstone, MO 64119<br>***Pro Se*** | Louisiana Wholesale Drug Co. Inc.<br>C/O Gayle R. White<br>Registered Agent<br>Highway 167N<br>Sunset, LA 70584<br>***Pro Se*** |
| Aaron C. Johnson, Esq.<br>Summers & Johnson<br>717 Thomas<br>Weston, MO 64098<br>Telephone: (816) 640-9940<br>firm@summersandjohnson.com | Robert A. Schwartz, Esq.<br>Bailey & Galyen<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744<br>bschwartz@galyen.com |
| Todd S. Hageman, Esq.<br>Simon and Passanante, PC<br>701 Market St., Suite 1450<br>St. Louis, MO 63101<br>Telephone: (314) 241-2929<br>thageman@spstl-law.com | Mark P. Robinson, Jr., Esq.<br>Robinson, Calcagnie & Robinson<br>620 Newport Center Drive, 7th Floor<br>Newport Beach, CA 92660<br>Telephone: (949) 720-1288<br>mrobinson@robinson-pilaw.com |
| Thomas F. Campion, Esq.<br>Steven M. Selna, Esq.<br>Drinker Biddle & Reath, LLP<br>500 Campus Drive<br>Florham Park, New Jersey 07932-1047<br>Telephone: (973) 360-1100<br>Thomas.Campion@dbr.com<br>steven.selna@dbr.com<br>***Attorneys for Defendants Janssen***<br>***Pharmaceutical Products and Johnson &***<br>***Johnson Co.*** | Michael Davis, Esq.<br>James Mizgala, Esq.<br>Sidley Austin LLP<br>One South Dearborn<br>Chicago, IL 60603<br>Telephone:  (312) 853-7731<br>mdavis@sidley.com<br>jmizgala@sidley.com<br>***Attorneys for Defendants AstraZeneca LP***<br>***and AstraZeneca Pharmaceuticals, LP*** |

| | |
|---|---|
| Elizabeth Raines, Esq.<br>Baker, Sterchi, Cowden & Rice, LLC<br>2400 Pershing Road, Suite 500<br>Kansas City, MO 64108<br>Telephone: (816) 471-2121<br>raines@bscr-law.com | Timothy Reese Balducci, Esq.<br>The Langston Law Firm, PA<br>P.O. Box 787<br>100 South Main Street<br>Booneville, MS 38829-0787<br>Telephone: (662) 728-3138<br>tbalducci@langstonlaw.com |
| Kenneth W. Bean, Esq.<br>Sandberg, Phoenix & von Gontard<br>One City Centre<br>15th Floor<br>St. Louis, MO 63101-1880<br>Telephone: (314) 231-3332<br>kbean@spvg.com<br>***Attorney for Defendant Dr. Asif Habib*** | John Driscoll, Esq.<br>Brown & Crouppen, PC<br>720 Olive St.<br>St. Louis, MO 63101<br>Telephone: (314) 421-0216<br>Jdriscoll@brownandcrouppen.com<br>asmith@brownandcrouppen.com<br>blape@brownandcrouppen.com |
| Aaron K. Dickey, Esq.<br>Goldenberg and Heller, PC<br>P.O. Box 959<br>2227 S. State Road 157<br>Edwardsville, IL 62025<br>Telephone: (618) 650-7107<br>aaron@ghalaw.com | Matthew J. Hamilton, Esq.<br>Pepper Hamilton<br>3000 Two Logan Square<br>18th & Arch Street<br>Philadelphia, PA 19103<br>Telephone: (215) 981-4000<br>hamiltonm@pepperlaw.com |
| Justin Witkin, Esq.<br>Ken Smith, Esq.<br>Aylstock, Witkin & Sasser, PLC<br>4400 Bayou Boulevard<br>Suite 58<br>Pensacola, FL 32503<br>Telephone: (850) 916-7450<br>Jwitkin@AWS-LAW.com<br>ablankenship@aws-law.com<br>ksmith@aws-law.com<br>noverholtz@aws-law.com | David P. Matthews, Esq.<br>Lizy Santiago, Esq.<br>Matthews & Associates<br>2905 Sackett Street<br>Houston, TX 77098<br>Telephone: (713) 222-8080<br>dmatthews@thematthewslawfirm.com<br>lsantiago@thematthewslawfirm.com<br>msalazar@thematthewslawfirm.com |
| Howard Nations<br>Lori A. Siler<br>Howard L. Nations Attorney At Law<br>4515 Yoakum Blvd.<br>Houston, TX 77006-5895<br>Telephone: (713) 807-8400<br>nations@howardnations.com | Mary B. Cotton<br>John D. Giddens, P.A.<br>226 North President Street<br>P.O. Box 22546<br>Jackson, MS 39225-2546<br>Telephone:  (601) 355-2022<br>betsy@law-inc.com |

| | |
|---|---|
| Salvatore M. Machi<br>Ted Machi & Associates PC<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744 | Jona R. Hefner, Esq.<br>3441 W. Memorial, Suite 4<br>Oklahoma City, OK 73134-7000<br>Telephone: (405) 286-3000<br>attorneyokc@hotmail.com |
| David Dickens<br>Miller & Associates<br>105 North Alfred Street<br>Alexandria, VA  22314-3010<br>(703) 519-8080<br>ddickens@doctoratlaw.com | Pete Schneider, Esq.<br>Grady, Schneider & Newman, L.L.P.<br>801 Congress, 4th Floor<br>Houston, TX  77002<br>(713) 228-2200<br>pschneider@gsnlaw.com |
| Fred T. Magaziner<br>Marjorie Shiekman<br>A. Elizabeth Balakhani<br>Shane T. Prince<br>Eben S. Flaster<br>DECHERT LLP<br>Cira Centre<br>2929 Arch Street<br>Philadelphia, PA  19103<br>(215) 994-4000<br>fred.magaziner@dechert.com<br>shane.prince@dechert.com<br>marjorie.shiekman@dechert.com<br>eben.flaster@dechert.com<br>elizabeth.balakhani@dechert.com | Lawrence J. Gornick, Esq.<br>William A. Levin, Esq.<br>Dennis J. Canty, Esq.<br>Levin Simes Kaiser & Gornick LLP<br>44 Montgomery Street, 36th Floor<br>San Francisco, CA 94104<br>Telephone: (415) 646-7160<br>lgornick@lskg-law.com<br>dcanty@lskg-law.com<br>lsimes@levins-law.com<br>jkaiser@lskg-law.com<br>echarley@lskg-law.com<br>ddecarli@lskg-law.com<br>bsund@lskg-law.com<br>astavrakaras@lskg-law.com |
| Scott Burdine, Esq.<br>Hagans Burdine Montgomery<br>Rustay & Winchester, P.C.<br>3200 Travis, Fourth Floor<br>Houston, TX  77006<br>Telephone:  (713) 222-2700<br>sburdine@hagans-law.com | Lowell Finson<br>Phillips & Associates<br>3030 North 3rd Street<br>Suite 1100<br>Phoenix, AZ 85012<br>(602) 258-8900, ext. 295<br>lowellf@phillipslaw.ws |
| Gale D. Pearson<br>Stephen J. Randall<br>Pearson, Randall & Schumacher, P.A.<br>Fifth Street Towers, Suite 1025<br>100 South 5th Street<br>Minneapolis, MN 55402<br>(612) 767-7500<br>attorneys@outtech.com | Robert H. Shultz<br>Heyl, Royster<br>103 West Vandalia Street<br>P.O. Box 467<br>Edwardsville, IL 62025<br>(618) 656-4646<br>rshultz@hrva.com<br>bwallace@hrva.com |

| Ellen R. Serbin | Scott Armstrong |
|---|---|
| Perona, Langer, Beck, Lalande & Serbin | 1719 West Main Street |
| 300 San Antonio Drive | Suite 201 |
| Long Beach, CA 90807-0948 | Rapid City, SD 57702 |
| (562) 426-6155 | (605) 399-3994 |
| davidhwang@plblaw.com | scottarmstrong1235@eathlink.net |
| Linda S. Svitak | James J. Freebery |
| Faegre & Benson, LLP | McCarter & English, LLP |
| 90 South 7th Street, Suite 2200 | 919 N. Market Street, 18th Floor |
| Minneapolis, MN 55402-3901 | Wilmington, DE 19801 |
| (612)766-7000 | (973) 622-4444 |
| lsvitak@faegre.com | jfreebery@mccarter.com |
| wjohnson@faegre.com | tpearson@mccarter.com |
| Richard D. Hailey | B. Andrew List |
| Ramey & Hailey | Clark, Perdue, Arnold & Scott |
| 3891 Eagle Creek Parkway | 471 East Broad Street, Suite 1400 |
| Suite C | Columbus, OH 43215 |
| Indianapolis, IN | (614) 469-1400 |
| (317) 299-0400 | alist@cpaslaw.com |
| rhailey@sprynet.com | lcollins@cpaslaw.com |