# RAVEN DECLARATION EXHIBIT F

## Raven, Marc E.

| | |
|---|---|
| **From:** | Raven, Marc E. |
| **Sent:** | Friday, September 21, 2007 4:46 PM |
| **To:** | ppennock@weitzlux.com |
| **Cc:** | cbailey@bpblaw.com; Magaziner, Fred; McConnell, Stephen |
| **Subject:** | AstraZeneca/Seroquel -- privilege logs |
| **Attachments:** | Plt Jt Motion re IT issues.pdf; Untitled.pdf |

Paul:

I am writing in response to the e-mail below that you sent to Fred Magaziner and Steve McConnell at Dechert Wednesday evening, September 19, regarding AstraZeneca's privilege log.

We frankly were surprised to see an e-mail from your firm at this stage asserting that there has recently been an "important and disturbing development" inasmuch as your "preliminary observations" have brought to light a "significant problem" with AstraZeneca's privilege log, and demanding that AstraZeneca "immediately" undertake several massive projects in order to redo the entire document. As you know, AstraZeneca was required to produce privilege logs on a rolling basis corresponding to its rolling productions, and it has been doing so for more than six months. AstraZeneca served its first privilege log – with the same characteristics discussed in your e-mail as the more recent versions – in early March. In June, at a meet-and-confer, Steve and his partner Tom Munno discussed the privilege log with plaintiffs' counsel, including Mike Pederson from your firm and Messrs. Allen, Bailey, and Blizzard. The only request made of us then was that we add Bates numbers and source names to the log. We promptly did so. Plaintiffs' June 7 Joint Statement of Resolved Issues, signed by Mike Pederson, is silent on the issues you are raising now. (*See* Statement at 4-5; copy attached.) We also sent you a second log, in the same format with the same types of entries as the September 19 log, for the "Next 9" custodians in early July without hearing any of the complaints you are making now.

In short, your attempt to suggest that there suddenly exists a crisis of defendants' making is unfounded. We also strongly take exception to your inflammatory accusations ("fraudulently designated documents," "deliberate discovery order violation," "suspicious," etc.) that not only are equally unfounded but also contravene the Court's explicit instructions in this case regarding civility to opposing counsel. Let's leave the posturing aside and see if we can spare the Court further motion practice.

As background, please be aware that we have had large teams of lawyers in Chicago and Philadelphia carefully reviewing very large numbers of documents from AstraZeneca custodians for possible inclusion on AstraZeneca's privilege log. Those lawyers have accomplished this review under extraordinary time pressure. We have produced more than a million documents from this heavily-regulated company, which involves lawyers in many, if not most, of its decisions. Further, given that *Zehel-Miller* was filed in August 2003, you should not be surprised that there are a significant number of valid work-product claims covering documents created by a company the size of AstraZeneca over the nearly three subsequent years encompassed by its custodial production.

With these extensive efforts to create the privilege log in mind, our response to your e-mail is as follows:

*First*, your request for a lawyer list is reasonable, and I have attached one. We would have been happy to provide this list in March or June.

*Second*, a limitation of the litigation support system used to generate our privilege log is that it only lists the author and recipient of the last e-mail in an e-mail chain. A substantial number of documents on AstraZeneca's log are e-mails in which the relevant lawyer was not part of that last e-mail. Instead, he or she authored or received an e-mail earlier in the chain. In other instances, the lawyer is mentioned in the body of an e-mail message. Had you or your co-counsel raised this concern in March or July, we could have discussed then how much time it would take to add a field to reflect lawyers included among earlier e-mail senders and recipients or references to lawyers in the bodies of e-mails and what additional manpower AstraZeneca would need to make such changes manually to thousands of entries. Although dealing with the issue at this stage instead would necessarily entail a major expenditure of time and money, we remain willing to discuss this possibility at a proper meet-and-confer. Please bear in mind, however, that some time will be needed upfront simply to determine how best to identify lawyer involvement in the logged documents and estimate how long the process will likely take.

*Third*, we likewise are prepared to meet and confer over any realistic suggestions that plaintiffs' counsel may have to address your other concerns. For example, it may be possible to identify categories of documents as to which additional

descriptions can be provided within a reasonable period of time. In the meantime, we will continue to discuss other proposals with members of our team responsible for the log.

We are available next Wednesday or Thursday, September 26 or 27, for a meet-and-confer. We could do this in Chicago, New York, or Philadelphia. Please let me know if either date works for you and, if so, which location you'd prefer.

Thanks.

Marc


Plt Jt Motion re IT issues.pdf...


Untitled.pdf (353 KB)

---

From: Pennock, Paul [mailto:PPennock@weitzlux.com]
Sent: Wednesday, September 19, 2007 7:00 PM
To: Magaziner, Fred; McConnell, Stephen
Cc: cbailey@bpblaw.com
Subject: Privilege Logs

Dear Fred and Steve,

I have read through large portions of your privilege logs. It appears to me that you have yet another significant problem in terms of deliberate non-disclosure of discoverable information. I am happy to give you the opportunity to correct this, but we need to move very quickly. Let me sketch out for you some preliminary observations.

1. First and foremost, it is a massive log. That alone suggests that there are a large volume of fraudulently designated documents.

2. The number of alleged requests for legal advice also are suspicious. There are requests for legal advice with a dozen people on an email and I don't think there are any lawyers on the email, or if there are they do not appear to be the people to whom the email is directed. Worse yet, there are alleged requests for legal advice from "unidentified" authors. That's a new one. How do you know that the requestor has the benefit of an attorney-client relationship?

3 What appears to be a particularly egregious abuse (and deliberate discovery order violation) is the following assertion for huge numbers of documents: "This document reflects activities performed at the request of legal counsel about...." I would like an explanation of that. How is it that an action that someone takes, in one instance that I saw it was a "calendar entry", is protected by attorney client privilege? The fact that the lawyer told them to take the action might be privileged (of course, you've waived that since you've told us in the log that the lawyer directed the action) but the action isn't. There might be instances where it would be but those do not appear to be what happened with the vast majority of these "documents".

So, I have three requests at this time. As we are moving into depositions in about 2 weeks, you need to do these immediately. (Please note that this week we received about 50% of your privilege log entries).

1. By Monday, September 24th, please give me a list of every attorney whose name appears in your privilege log

and what firm or office within the company that they work for. There are no "Esq." that I saw nor did I see any law firm references. After we get that, we can talk about some further information we might be entitled to in this regard. This is very easily done, as your people have already decided that the material is attorney-client privileged, so they must have a roster of who an attorney on these documents. I assume they did anyway. If they were just guessing that someone might be a lawyer, please so advise.

2. By Monday, September 24th, please provide me with the basis for attorney-client privilege for all documents where a lawyer is neither the recipient nor the author. Again, as you've told us and the court, these documents went through levels of review. Therefore, you undoubtedly have a record for the decision that was made on each document. At present, we would like to know why each document without any attorneys being a recipient or an author are privileged.

3. By Monday, September 24th, please provide me with the legal basis there for protecting an action directed by an attorney as opposed to the communication from the attorney directing the action. I will of course be looking at this issue but, as part of your meet and confer obligations, please provide me with any law that you have on this.

Time is of the essence and so we need to speak about all of this as soon as possible. I should note that the above is what I would term the "first peal-back" only. Once we get a sense of what your people were doing and why, I would imagine that more improprieties will begin to unravel and I will point them out. So, please do not construe the above as any limitation on our complaints about this privilege log. In this regard, I've noticed thousands of "work product" designations that are equally mystifying.

Thank you for your prompt attention to this important and disturbing development.

Paul