# RAVEN DECLARATION EXHIBIT H



| | | |
|---|---|---|
| SIDLEY AUSTIN LLP | BEIJING | GENEVA | SAN FRANCISCO |
| ONE SOUTH DEARBORN | BRUSSELS | HONG KONG | SHANGHAI |
| CHICAGO, IL 60603 | CHICAGO | LONDON | SINGAPORE |
| (312) 853 7000 | DALLAS | LOS ANGELES | TOKYO |
| (312) 853 7036 FAX | FRANKFURT | NEW YORK | WASHINGTON, DC |

mraven@sidley.com
(312) 853-7152

FOUNDED 1866

October 16, 2007

**Via E-Mail**

Paul J. Pennock, Esq.
Weitz & Luxenberg P.C.
180 Maiden Lane
New York, NY 10038-4925

*In re Seroquel Products Liability Litigation.*, MDL Docket No. 1769 (M.D. Fla.)

Dear Paul:

Following up on our September 27 conference call regarding privilege log issues, we are responding on behalf of AstraZeneca ("AZ") to the questions in your October 3 e-mail to Steve McConnell. Our answers to your questions are intended to help Plaintiffs better understand the criteria AZ applied in creating its privilege log.

With the exception of the questions in Section XIII, your questions are framed as hypotheticals calling for generalizations about categories of documents. AZ's responses to these hypothetical questions are necessarily general in nature and do not discuss AZ's bases for asserting privilege for particular documents on AZ's large privilege log. Each document on the log was analyzed individually. We have not attempted to catalogue every circumstance or variable that might explain why AZ's generalizations in this letter may not apply to a given entry. Accordingly, AZ's responses are not representations regarding any specific entries in the log and are not intended to waive any grounds for supporting such entries.

As an additional prefatory note, your e-mail contains no mention of the work product doctrine, even though a large number of the actual AZ documents encompassed by your hypotheticals are protected work product, as AZ's log indicates. We have discussed the work product doctrine in many of the responses that follow, although we have not been exhaustive in this regard.

\*     \*     \*

I.

1.      *If a document is drafted by someone in the company [defined by Plaintiffs to include officers, employees, agents and third-party vendors and contractors] and then sent to an attorney for review and comment do you consider the draft, as it was constituted before the attorney makes any edits or suggested changes, as privileged?*

Paul J. Pennock, Esq.
October 16, 2007
Page 2

As a general matter, if such a draft were sent to a lawyer for the purpose of obtaining his or her legal advice on the draft, then we would regard it as privileged. Under some circumstances, such a document might also constitute work product.

    2.    *After the document comes back from the lawyer and the changes are made and circulated, without any indication that an attorney made edits and/ or suggested changes, do you consider the document privileged?*

If the draft were to come back from the lawyer without it being possible under the circumstances to discern what advice the lawyer had given or been asked for, and if there were no indication that the lawyer had commented on the draft, then we generally would not consider the document privileged.

    3.    *If that same document is finalized and incorporates the attorneys changes and then is disseminated outside of the company (e.g. to the F.D.A.), do you consider it privileged?*

Documents disseminated to the FDA or the general public are ordinarily not privileged or protected by the work product doctrine. If there are documents on the log that you believe were sent to the FDA or disclosed to the public at large, please identify them, and we will reexamine the claims asserted as to those documents.

II.

    1.    *If meeting minutes are for meetings that did not include attorneys and only a portion of the minutes are a statement of attorney advice being re-conveyed to others, do you consider all of the minutes privileged?*

To the extent that the meeting was concerned with litigation or matters addressed in reasonable anticipation of litigation, the work product doctrine may apply, and part or the entirety of the meeting minutes might be withheld. If the work product doctrine does not apply, attorney advice and comments being conveyed -- and client requests for same -- should usually be redacted and the rest of the document produced. Even if the work product doctrine does not apply, attorney advice, attorney comments, and client requests for legal advice should ordinarily be redacted as privileged communications and the remainder produced.

    2.    *If meeting minutes are for meetings that did include a lawyer, but nothing in the minutes reflect that the lawyer gave or was asked for advice, do you consider any or all of the minutes privileged? If only some of the minutes, which portions?*

Minutes should not be withheld solely because a lawyer attended the meeting. If the meeting were held to educate the lawyer about a non-litigation issue, the attorney-client privilege might apply. If the meeting concerned litigation, both the privilege and the work product doctrine might apply. In many cases, for meetings that were not primarily addressed to legal

Paul J. Pennock, Esq.
October 16, 2007
Page 3

issues and met the criteria in your questions (*"nothing in the minutes reflect that the lawyer gave or was asked for advice"*), AZ has produced unredacted minutes.

III.

      1.    *If an email did not include attorneys as recipients or authors and only a portion of the emails are a statement of attorney advice being re-conveyed to others, do you consider all of the email privileged?*

We are not sure whether this question was intended to cover individual e-mail messages, e-mail chains, or both, so we will address both in our answer. As a general matter, if only the attorney-client privilege applies, then only references to attorney advice or requests for same should be redacted under the circumstances described in your question. Depending on the context, though, e-mail messages or chains can constitute or contain work product beyond the extent that they recite attorney advice. Similarly, the attorney-client privilege may be a proper basis for withholding additional portions (or even the entire remaining portion) of such documents (e.g., a summary of the information communicated to the attorney for the purpose of obtaining the advice recited, or a set of follow-up questions intended to be posed to the attorney).

      2.    *If an email did include attorneys as recipients, but nothing in the email reflects that the lawyer gave or was asked for advice, do you consider any or all of the email privileged? If so, please explain.*

In many cases, such e-mails could be work product. As to the attorney-client privilege, AZ generally did not treat an e-mail as privileged merely because a lawyer was a recipient. AZ has produced many e-mails that were sent to (or from) lawyers in which the lawyers neither gave nor were asked for advice.

IV.

      1.    *If a document (which is not itself privileged) is received by the company and then forwarded to an attorney for review and comment, do you consider the document to be privileged by virtue of it having been forwarded to an attorney for review and comment?*

As a general matter, no. There are, however, limited circumstances where a copy of a document or of a compilation of documents forwarded to an attorney may legitimately be withheld on the basis of privilege or as work product along with an accompanying communication to the lawyer.

      2.    *If a document (which is not itself privileged) is received by the company and a summary or description of it in any form is sent to an attorney for review and comment, do you consider the document to be privileged by virtue of a summary or description of it having been forwarded to an attorney for review and comment?*

Paul J. Pennock, Esq.
October 16, 2007
Page 4

No, the document in question would not itself become privileged merely by virtue of its being described or summarized separately for the attorney. The summary may be privileged and/or work product, however.

V.

    1. *You have claimed a privilege for 36 study protocols. Please review and more fully state the basis for each of these.*

We think there are only 21 documents thus identified on the log, not 36. (Here and elsewhere, we think that the reason your numbers do not agree with ours may be that you have not accounted for the fact that each of the logs furnished by AZ to date is cumulative vis-à-vis, and thus supersedes, any other log(s) that preceded it. Thus, you may have counted some documents more than once.) We cannot yet provide you with a definite answer for each of these documents, although we have confirmed, for example, that some were reviewed by counsel. We are continuing to investigate these documents individually and will tell you more about them as soon as we can. If we determine that any are not privileged and are not work product, then we will produce them.

    2. *You have claimed a privilege for 264 draft study protocols. Please more fully state the basis for how draft study protocols can be accorded attorney client privilege.*

Our database located only 87 draft study protocols containing privilege bates numbers; it might be helpful if you could send us a list of the 264 documents that you believe fall in this category, although this might not affect our answer. Draft study protocols are heavily lawyered because, *inter alia,* they contain Informed Consent Forms for the participants and Investigator Agreements and often present significant legal issues.

VI.

    1. *Please more fully describe the basis for the calendar entries being privileged?*

Calendar entries on the log are, in fact, meeting notices that contain detailed information about the meeting to be held, including advice of counsel and/or requests for such advice. Where noted, this information is also protected by the work product doctrine.

VII.

    1. *What is your basis for asserting an attorney client privilege as follows: "This document reflects activities performed at the request of legal counsel about..." ?*

In the course of providing legal advice, and in participating in litigation, attorneys frequently request that one or more employees furnish information on a certain topic or topics. Such requests may be directed to the person or persons who first requested the legal advice, or

Paul J. Pennock, Esq.
October 16, 2007
Page 5

they may be directed to others. Either way, the ensuing activities are performed at the request of counsel. Thus communications disclosing these activities may be protected by the attorney-client privilege, and they may also constitute work product if connected to litigation.

Also, there are entries in the log where this description was used for documents reflecting work carried out by AZ advisors (e.g., public relations consultants) at the request of AZ's counsel in connection with pending or anticipated litigation, and where both attorney-client privilege and work product were properly asserted.

Beyond these types of circumstances, we believe there have been instances where the document description you quote was used by a reviewer to cover situations where counsel was responding to a request from his or her client for legal advice about proposed conduct.

    2. *Please explain how it is that an action that someone takes is protected by attorney client privilege?*

Please see answer to question VII.1. In further response to both questions, please note that it is the communication regarding an action that is privileged, not the action itself.

VIII.

    1. *Please provide a supplemental, more detailed explanation for the claimed privilege in each of the documents with an "unidentified author". If you sort your excel spread sheet, you will see that there are 8,501 documents where you claim an attorney client privilege and yet there is no author. In my opinion, you should release all of these immediately. A particularly puzzling set of examples is that you have declared an attorney client privilege for 138 documents entitled "note(s)" and yet there is no author identified.*

If you examine the log, you will see that many of these 3,489 documents (not 8,501 as you suggest) are members of privileged document families. This includes a number of the 54 (not 138) documents identified as "notes" of various kinds. It is common for privileged communications that do not identify the author on their face to be attached to other privileged documents. It may be possible in such instances to infer the identity of the attachment's author from other members of the same document family (e.g., from an e-mail), and it may even be possible to infer such information from the document itself. We instructed reviewers, however, not to speculate or guess about authorship in the course of assembling AZ's log.

There likewise are legitimate reasons why a "stand alone" document (including a set of notes) that is not part of a document family may be properly withheld as privileged even when the author is not identified on the face of the document.

Notwithstanding the types of sound reasons that routinely justify the withholding of documents in this broad category, we understand the basis for the concern you have raised and are prepared to look again at the documents in question. If in the process we identify certain documents that are not privileged (and are not work product), then we will produce them; but we

Paul J. Pennock, Esq.
October 16, 2007
Page 6

do not intend to produce any that are privileged and/or constitute work product. Further, as to documents that should properly be withheld even though their authors cannot be specifically identified, AZ would be willing to add an entry in a new column in the log elaborating on AZ's basis for asserting privilege.

IX.

> There are 526 "Draft Publications". If these are science publications, how or why would there be any attorney involvement at all? We have a tough time understanding that and therefore think that these are probably all subject to disclosure.

Here again, our numbers do not agree; we count only 193 such documents. That aside, most AZ publications, scientific and otherwise, undergo legal review prior to dissemination. AZ is a highly regulated company that sells products in a litigious environment. To the extent that a publication deals with issues in this litigation or other pending or anticipated litigation, it may, depending on the circumstances, be work product.

X.

> An overarching problem is that about 50% (nearly 17,000) of the documents for which you've declared an attorney client privilege do not have an attorney as an author or recipient. What suggestions do you have for exploring all of these, because we find that number to be very unusual.

As a threshold matter, there cannot be nearly 17,000 documents for which AZ has claimed attorney-client privilege where no attorney has been identified as an author or recipient. Indeed, there are not even 17,000 documents on AZ's privilege log in total. We recognize, however, that there are a substantial number of entries on the log meeting this general description (we believe the correct number is 3,489).

During our September 27 call, our discussion with respect to this topic focused on e-mail strings, and we assume this remains your focus. As you know, for such strings, the log as generated from AZ's database only shows sender and recipient(s) for the most recent e-mail. In the overwhelming majority of instances, there are lawyer senders and recipients earlier in the chain. In most, if not all, of the remainder, legal advice, a request for legal advice, and/or work product is disclosed.

While we continue to consider how best to deal with this issue, our current proposal is to add an extra column to the log to explain further the attorney involvement -- the same proposal we have made in response to your Question VIII. We hope that this would be an acceptable solution, but we will need your concurrence before putting a large number of lawyers to work on adding that information. Further, we will have to agree on a reasonable timetable that takes into account the number of documents for which this would be done as well as competing priorities (e.g., completion of the next privilege log).

XI.

*There are 28 documents entitled "Labeling". What are these?*

These documents are draft labels reviewed by counsel and discussions of labels with counsel. Further, we identified only 13 such documents.

XII.

*Why are "Marketing Materials" being withheld? There are 241 such documents and they are not denoted as drafts even though you have a category "draft marketing materials." So, we need a clarification of what these 241 "marketing materials" documents are.*

We believe there actually are only 80 documents in this category on the log. Based on our investigation thus far, it appears that the category broadly covers two types of situations. In some cases, the simple explanation is that the documents were identified as "marketing materials" rather than "draft marketing materials" even though they were, in fact, drafts. In other cases, the phrase "marketing materials" was applied to confidential marketing-related documents that were intended solely for use within AZ and not for disclosure outside the company. The fact that they were internal, however, does not automatically mean that they should have been withheld as privileged, and we are reexamining these documents carefully with an eye towards producing any that may have been withheld without a sufficient basis. In other situations, the term "marketing materials" appears to have been used by a reviewer to describe a document that we think would more appropriately have been identified differently. In reexamining these documents, we are focusing chiefly on whether or not each document was properly withheld from production (and we will produce any that we conclude were not), but we would be willing to provide revised descriptions for those that we continue to withhold.

XIII.

*Specific Examples (these are in no way exclusive of questions that I have regarding specific documents)*

1. *Will you please review the following documents that are within the following Bates numbered pages [AZSERP0009452-89] and either provide the document or a supplemental, more detailed explanation for the claimed privilege.*

The cited documents are privileged. These documents are four of the nine attachments to AZSERP0009386. This parent document is an e-mail chain expressly stating the desire of AZ Senior Counsel Julia Manning to review the identified materials in preparation for a meeting with a group of AZ employees where she was to advise on particular AZ programs and protocols. (Ms. Manning is present in each of the five e-mails in the chain except for the latest, which forwards the emails she sent and received. It is this latest forwarding e-mail that appears on the log, however.) The first of those documents, AZSERP0009452, is also an attachment to another document in this document family, AZSERP0009451, an e-mail from AZ Senior

Paul J. Pennock, Esq.
October 16, 2007
Page 8

Counsel Enid Stebbins, which is also on the log. Ms. Stebbins' e-mail (along with its attachment) was attached to the e-mail string numbered AZSERP0009386; this e-mail (with attachment) was among the materials furnished to Ms. Manning.

   2. *Will you please review the following documents that are within the following Bates numbered pages [AZSERP00065836-39] and either provide the document or a supplemental, more detailed explanation for the claimed privilege:*

  These two documents both are attachments to the e-mail string (AZSERP0065834) that immediately precedes them on the privilege log. The first e-mail in the string is a communication from AZ attorney Glenn Engelmann concerning an AZ corporate policy; the subsequent e-mails relay and comment on what Mr. Engelmann sent. Notwithstanding these facts, we are making some further inquiries to determine whether the privilege claim that has been asserted for these documents was correct. If we conclude that it was not, then we will produce the documents promptly.

         \*  \*  \*

  AZ continues to review its privilege and work product claims. As mentioned during our September 28 call, AZ is compiling lists of (a) documents to be released from the existing privilege log because we have determined they are not privileged and (b) documents to be retrieved from production because we have determined that these are privileged documents that should not have been produced.

  As this continuing review and AZ's responses below demonstrate, we are open to discussing privilege issues further so as to minimize the issues for the Court. Answering broad hypotheticals is not the approach we would have chosen given its inherent limitations, but we have done our best to respond constructively in order to move the ball forward. Please contact us if further discussion would be helpful. More broadly, in the future, please include me and my Sidley colleague Ken Wile as recipients on any correspondence concerning privilege log issues

             Very truly yours,

             *Marc E. Raven / K.E.W.*

             Marc E. Raven

cc: David P. Matthews, Esq.
   Thomas F. Munno, Esq.
   Stephen J. McConnell, Esq.
   Kenneth E. Wile, Esq.