UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE:  Seroquel Products Liability
Litigation

Case No. 6:06-md-1769-Orl-22DAB

This Document Relates to ALL CASES

**REPORT AND RECOMMENDATION NO. 4 BY
CASE-SPECIFIC DISCOVERY SPECIAL MASTER**

In a telephone conference requested by the Parties on February 7, 2008, counsel for Defendants presented an objection to proceeding with the depositions of Plaintiffs in cases selected for the Florida Discovery Pool under CMO No. 5, before Defendants have been able to obtain copies of the Plaintiff's medical records relating to those Plaintiffs.  Defendants' counsel argued that each Plaintiff has been required by the Plaintiff Fact Sheet ("PFS") required by CMO No. 2 to produce the medical records relating to each Plaintiff along with the PFS, which if made available would permit Defendants' counsel to review such records in advance of a Plaintiff's deposition.  Defendants' counsel contended that access to such records is necessary to permit adequate preparation for a Plaintiff's deposition, as the records often permit more precise questioning on issues relating to dates of treatment, conversations with the physician and other matters documented in the records.

On the basis of these arguments, Defendants requested that the deposition of any Plaintiff for whom no records had been obtained be suspended and rescheduled at a later date after such records have been acquired.  Specifically, Defendants had identified eight Plaintiffs scheduled

**EXHIBIT 4**

for deposition during the week beginning February 11, 2008, lacking medical records, six of which were scheduled to be deposed on Monday, February 11.

Plaintiffs' counsel opposed the suspension of any depositions of any Plaintiffs. Plaintiffs' counsel objected to Defendants' request as untimely, given the considerable effort Plaintiffs' counsel had expended in arranging a full deposition schedule beginning on February 11, 2008, as well as the travel necessary to permit such depositions to go forward on schedule.  Plaintiffs' counsel saw the request as disruptive of the deposition schedule, fearing inability to complete discovery in the Florida Discovery Pool cases within the time allowed by the Court in CMO No. 5.  Plaintiffs particularly questioned the timeliness of the request given recent discussions among Plaintiffs' and Defendants' counsel to rearrange certain depositions to accommodate the availability of Defendants' counsel to cover them.  Plaintiffs' counsel also disagreed with the characterization of the PFS issue and its requirements, arguing, among other things, that Plaintiffs had sought to have the issue of the adequacy of PFS compliance addressed by the Special Master but that Defendants had declined that opportunity.

The Defendants have obtained medical records on many Plaintiffs, using the RecordTrak service provider to seek them from the physicians.  In addition, the PMO is securing records production from physicians the PMO has been asked to schedule among the cases in the Discovery Pool.  Where Defendants do not have medical records for a Plaintiff, RecordTrak has not been able to secure them and the PMO's recently recommenced scheduling efforts have not yet yielded their production.

After discussions with the Parties during the telephone conference and consideration of the positions of both Defendants and Plaintiffs, the Special Master determined as follows and so informed the Parties orally on February 7, 2008:

(1) Suspension of any Plaintiff's deposition risked disruption to the previously arranged schedule and would require rescheduling of those depositions and perhaps others.

(2) Because when the unavailable documents could be obtained remained uncertain, despite the best efforts of Defendants and the PMO, when such depositions could be rescheduled is similarly uncertain, meaning that the length of any suspension of a Plaintiff's deposition and the ability to reset the deposition and move other scheduled depositions would be unknown form sometime.

(3) The analysis of the equities of suspending any deposition for any period of time would require review of the efforts by RecordTrak to obtain the Plaintiff's medical records from the Plaintiff's physicians and the reason such records had not been obtained, to assess the length of delay and the reasons for delay in obtaining the records.

(4) The Plaintiffs' depositions were to proceed as scheduled beginning on February 11, 2008, and continuing thereafter.

(5) Defendants' counsel have identified those Plaintiffs as to whom no medical records have yet been obtained.

(6) Plaintiffs' counsel shall survey those Plaintiffs and assess whether the Plaintiffs can produce any medical records not previously produced.

(7) The PMO shall prioritize its document collection efforts to attempt to secure Medical Records for upcoming depositions before the depositions occur.

(8) Defendants reserve the right to seek to reopen a Plaintiff's deposition at a later time if subsequent production of medical records reveal that a deposition taken of a Plaintiff without such records should, in Defendants' view, be reopened to permit further questioning of the Plaintiff in light of such records. Plaintiffs reserve their objection to the reopening of any deposition. Any such question will be taken on a case-by-case basis should Defendants make a request to reopen a deposition.

(9) Defendants also reserve the position that any reopened deposition shall not be counted against the total number of ten depositions per side permitted by Paragraph I of CMO No. 5 for cases in the Initial Trial Pool. Plaintiffs reserve their objection to this position as well.

_____
Orran L. Brown
Special Master for Case-Specific Discovery

DATED: February 15, 2008