# Exhibit D

Confidential - Wayne Macfadden, M.D.

Page 1

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

- - -

IN RE: SEROQUEL          :CASE NO.
PRODUCTS LIABILITY       :
LITIGATION               :6:06-md-01769-ACC-DAB
                         :
MDL Docket No. 1769:
                         :

- - -

December 20, 2007
CONFIDENTIAL

- - -

Oral deposition of WAYNE MACFADDEN, M.D. taken pursuant to notice, was held at the offices of Golkow Technologies, Inc., One Liberty Place, 51st Floor, 1650 Market Street, Philadelphia, Pennsylvania, beginning at 9:01 a.m., on the above date, before Ann Marie Mitchell, a Federally Approved Certified Realtime Reporter, Registered Diplomate Reporter and Notary Public for the Commonwealth of Pennsylvania.

- - -

GOLKOW TECHNOLOGIES, INC.
One Liberty Place, 51st Floor
1650 Market Street
Philadelphia, Pennsylvania 19103
877.370.3377

Confidential - Wayne Macfadden, M.D.

Page 34

```
 1        Q.    Let me rephrase the question
 2   just so we get it really clear.
 3              From the -- when did you
 4   begin working at AstraZeneca?  2001.
 5   Correct?  At least according to your CV.
 6        A.    Yes, 2001.
 7        Q.    And what month?
 8        A.    I believe it was August or
 9   September.
10        Q.    Okay.  And you left in
11   approximately August or September of
12   2006.  Right?
13        A.    Yes.
14        Q.    So you worked at AstraZeneca
15   for five years.  Correct?
16        A.    Yes.
17        Q.    Did you spend 100 percent of
18   your time or almost 100 percent of your
19   time in regard to the product Seroquel
20   while at AstraZeneca?
21        A.    Most of my time at
22   AstraZeneca was spent on job functions
23   relating to the drug Seroquel, yes.
24        Q.    Okay.  And again, I said
```

Confidential - Wayne Macfadden, M.D.

Page 35

1   almost 100 percent, and I understand,
2   well, maybe it isn't 100 percent.
3            What percent, 98, 99, 100,
4   what would it be?
5       A.   Hard to say.  At least
6   90 percent.
7       Q.   Now, I take it in a
8   five-year time period, where you spent at
9   least 90 percent of your time working on
10  Seroquel, you could not recall every --
11  each and every single event that occurred
12  concerning your job responsibilities and
13  activities during those five years; is
14  that correct?
15           MR. McCONNELL:  Objection to
16       form.
17           THE WITNESS:  I could not
18       recall every single thing that
19       happened within those five years,
20       yes.
21  BY MR. ALLEN:
22      Q.   You had to have your memory
23  refreshed, did you not?
24      A.   My memory refreshed?  What

Confidential - Wayne Macfadden, M.D.

Page 36

1  do you mean?
2      Q.    Let me see if I can use the
3  term.
4           Do you know what having your
5  memory refreshed means?
6           MR. McCONNELL:  Objection to
7      the extent it calls for a legal
8      conclusion.
9           MR. ALLEN:  It doesn't.
10     Just calls for common sense.
11 BY MR. ALLEN:
12     Q.    Do you know what it means to
13 have your memory refreshed?
14     A.    Could you give me an
15 example?
16     Q.    You really don't know?  So
17 you -- if I were to tell you something
18 like, do you need me to refresh your
19 memory, you just don't understand what
20 that means?
21          MR. McCONNELL:  Objection.
22 BY MR. ALLEN:
23     Q.    Is that your testimony under
24 oath to this jury?

Confidential - Wayne Macfadden, M.D.

Page 37

```
 1            MR. McCONNELL:  I'm sorry, I
 2      didn't mean to interrupt.
 3            Objection, calls for a legal
 4      conclusion.
 5            THE WITNESS:  I'd just like
 6      a specific example so I can
 7      understand your question better.
 8  BY MR. ALLEN:
 9      Q.    Well, let me see if I can
10  help jog your memory.
11            Do you know what it means to
12  jog your memory?
13      A.    I think that means different
14  things to different people.
15      Q.    Yes, sir.  And I'm asking
16  whatever it means to you, since you could
17  not possibly recall and no one would
18  expect you to recall each and every
19  activity you did in regard to Seroquel
20  for five years, I would expect you would
21  need your memory jogged.
22            Did you -- is that true or
23  not true?
24            MR. McCONNELL:  Objection to
```

Confidential - Wayne Macfadden, M.D.

Page 38

```
 1        the part of that that's not a
 2        question.
 3             THE WITNESS:  There are
 4        things I remembered and things I
 5        don't remember.  And that's -- I
 6        don't think any external forces
 7        would make me remember something I
 8        don't remember.
 9   BY MR. ALLEN:
10        Q.   Oh, really?
11             Okay.  You're a
12   psychiatrist --
13             MR. McCONNELL:  Objection.
14        Sorry.  Objection.
15   BY MR. ALLEN:
16        Q.   Are you a psychiatrist?
17        A.   Yes.
18        Q.   Okay.  So psychiatry deals I
19   guess with the medical workings of the
20   mind.
21             Would that be one way to
22   explain that, psychiatry?
23        A.   The medical workings of the
24   mind?
```

```
 1        Q.   I'll tell you what.  Instead
 2   of you -- instead of me putting words in
 3   your mouth, why don't you tell the jury
 4   what psychiatry is.
 5        A.   Psychiatry is a specialty
 6   within medicine that deals with mental
 7   illnesses and the treatment of mental
 8   illnesses.
 9        Q.   Yes, sir.
10             As a psychiatry -- are you
11   board certified?
12        A.   Yes, I am.
13        Q.   As a board certified
14   psychiatrist, is it your testimony under
15   oath that you do not understand the
16   terminology or meaning of either jogging
17   someone's memory or refreshing someone's
18   recollection?  You just don't understand
19   those terms.  Is that your testimony?
20             MR. McCONNELL:  Objection to
21        form.
22             THE WITNESS:  I think they
23        can have different meanings for
24        different people.
```

Confidential - Wayne Macfadden, M.D.

Page 40

1  BY MR. ALLEN:

2      Q.   Okay.  What does jog your
3  memory mean to you?

4           MR. McCONNELL:  Objection to
5      form.

6           THE WITNESS:  Jog your
7      memory?

8  BY MR. ALLEN:

9      Q.   Yes, sir.  You testified
10 under oath it could have different
11 meanings to different people.

12          You're a people, so what
13 does jog your memory mean to you?

14          MR. McCONNELL:  Objection to
15     the part of that speech that is
16     not a question.

17          THE WITNESS:  Excuse me.
18     Jog your memory to me may imply
19     something that you recall some
20     details on but perhaps not all
21     details on.

22 BY MR. ALLEN:

23     Q.   And then through discussion
24 and/or reference to a document or

Confidential - Wayne Macfadden, M.D.

Page 41

1   material, your memory can be jogged to
2   better recall the events; is that
3   correct?
4       A.   I think these memories are
5   in people, whether they are brought to
6   the forefront or not brought to the
7   forefront.
8       Q.   Okay. Did you take notes
9   when you went to college and medical
10  school?
11      A.   Yes.
12      Q.   Why did you take them? To
13  refresh your memory and jog your memory
14  when you went back and looked at your
15  notes? Is that why you took them?
16           MR. McCONNELL: I'm sorry.
17       That seemed to be more than one
18       question. Objection to form.
19           THE WITNESS: I would take
20       notes to record pertinent things
21       the instructor would say, perhaps.
22  BY MR. ALLEN:
23      Q.   Why would you want to record
24  that?

Confidential - Wayne Macfadden, M.D.

Page 42

```
 1        A.    If it was to be asked at a
 2   later point on an exam, perhaps.
 3        Q.    Right.  And you would then
 4   study those notes in order to refresh
 5   your recollection of the lecture and to
 6   jog your memory in preparation for your
 7   test, would you not?
 8              MR. McCONNELL:  Objection to
 9        form.
10              THE WITNESS:  I would often
11        review notes from class to prepare
12        for an examination.
13   BY MR. ALLEN:
14        Q.    Right.
15              And my question, therefore,
16   is -- well, no, I guess it's a fact now.
17              It's a fact that you can
18   tell this jury just in school, for
19   example, you would take notes of an event
20   as it transpired and then later go back
21   and review those notes to refresh your
22   recollection to prepare you for the test;
23   is that correct?
24              MR. McCONNELL:  Objection to
```

Confidential - Wayne Macfadden, M.D.

Page 43

1        form.
2              THE WITNESS:  I don't think
3        I used the word "refreshed my
4        recollection."  They would help me
5        prepare for the examination by
6        reviewing what was said in class.
7   BY MR. ALLEN:
8        Q.    How did it help?
9        A.    It would help remind me what
10  would -- what the teacher might ask on a
11  test.
12       Q.    Right.  And it would
13  serve -- the written document would serve
14  as a reminder of what happened; is that
15  correct?
16       A.    The written document would
17  be a reminder of what happened, yes.
18       Q.    Did you review any documents
19  in preparation for your deposition to
20  remind you what happened when you worked
21  on Seroquel at AstraZeneca?
22       A.    I reviewed documents before
23  this deposition, yes.
24       Q.    In order to remind you of

Confidential - Wayne Macfadden, M.D.

Page 44

1  the events that transpired?
2      A.   There were events that I
3  recalled and those that I didn't recall.
4      Q.   Right.  And so therefore,
5  you had to review documents to remind you
6  and to jog your memory and to refresh
7  your recollection.  True?
8      A.   If I did not recall an
9  event, a document would not -- if I did
10 not recall an event, I didn't recall an
11 event, whether there was a document or
12 not.
13     Q.   So you reviewed documents in
14 preparation for your deposition?
15          MR. McCONNELL:  That was
16     asked and answered, but you can
17     answer it again.
18          THE WITNESS:  Yes.
19 BY MR. ALLEN:
20     Q.   And it's your sworn
21 testimony under oath that if you don't
22 recall an event, then a document will not
23 assist you in helping you recall an
24 event.

Confidential - Wayne Macfadden, M.D.

Page 45

1          Is that your testimony under
2     oath?
3          MR. McCONNELL:  Objection to
4     form.
5          THE WITNESS:  Yes.
6     BY MR. ALLEN:
7          Q.   Okay.  So if I show you
8     documents today and tomorrow in your
9     deposition, if you don't recall the
10    events that transpired, then your memory
11    will be no better than the document which
12    actually records the events in the paper;
13    is that correct?
14         MR. McCONNELL:  Objection,
15         calls for speculation.
16    BY MR. ALLEN:
17         Q.   Because your testimony is,
18    if you don't recall an event, you don't
19    recall an event, and therefore, you have
20    told us a document will not help refresh
21    your recollection.
22         Is that true?
23         MR. McCONNELL:  Objection to
24         form.

Confidential - Wayne Macfadden, M.D.

Page 46

```
 1              THE WITNESS:  If I don't
 2       recall an event, then I don't
 3       recall an event.
 4  BY MR. ALLEN:
 5       Q.   And will a piece of paper
 6  help refresh your recollection or jog
 7  your memory?
 8              MR. McCONNELL:  Objection,
 9       calls for speculation.
10              THE WITNESS:  If I don't
11       recall an event, I don't think I
12       would be able to recall the event.
13  BY MR. ALLEN:
14       Q.   Okay.  So therefore, did the
15  defense counsel -- you reviewed documents
16  at home in preparation for this
17  deposition, didn't you?
18              MR. McCONNELL:  Sorry.  Did
19       you say at home?
20              Can you read that back,
21       please?
22              MR. ALLEN:  I think I said
23       at home.  It's clear as a bell.
24              MR. McCONNELL:  I didn't
```

Confidential - Wayne Macfadden, M.D.

Page 47

```
 1        hear it.
 2   BY MR. ALLEN:
 3        Q.   You reviewed documents at
 4   home in preparation for your deposition,
 5   didn't you?
 6        A.   No, I did not.
 7        Q.   Did you review any in your
 8   office?
 9        A.   In my office at --
10        Q.   In preparation for your
11   deposition.
12        A.   My office at Johnson &
13   Johnson?
14        Q.   How about this.  How about
15   this.
16             MR. McCONNELL:  Well, let
17        him answer the question.
18             MR. ALLEN:  I'll withdraw
19        the question.
20             MR. McCONNELL:  All right.
21   BY MR. ALLEN:
22        Q.   Did you review documents
23   anywhere on planet Earth in preparation
24   for your deposition?
```

Golkow Technologies, Inc. - 1.877.370.DEPS

Confidential - Wayne Macfadden, M.D.

Page 48

```
 1         A.    I met with counsel at
 2   Dechert to look at documents.
 3         Q.    Okay.  So you looked at
 4   documents at Dechert here in Philadelphia
 5   in preparation for your deposition?
 6         A.    Yes.
 7         Q.    What documents?
 8               MR. McCONNELL:  Objection.
 9         Instruct the witness not to
10         answer.  That calls for work
11         product privilege material.
12               MR. ALLEN:  We disagree.  We
13         filed a brief on that.
14               Did you have --
15               MR. McCONNELL:  Understood.
16   BY MR. ALLEN:
17         Q.    How many documents did you
18   look at?
19         A.    I can't recall the total
20   number.
21         Q.    Approximately.  You're a
22   board certified psychiatrist, an
23   intelligent man and a physician.
24               Approximately?
```

```
 1            MR. McCONNELL:  I object to
 2       the part of that speech that is in
 3       fact not a question.
 4            MR. ALLEN:  Well, I just
 5       find it amazing that a board
 6       certified psychiatrist, when asked
 7       how many documents were reviewed,
 8       has to say I don't recall the
 9       exact number.  So I guess I'll
10       just rephrase it.
11            MR. McCONNELL:  Well, I
12       object to that colloquy.
13            MR. ALLEN:  Well, I just
14       think it's a bunch of
15       gamesmanship, but let me --
16            MR. McCONNELL:  I object to
17       that colloquy.
18            MR. ALLEN:  There is no
19       question about it, actually.
20            MR. McCONNELL:  There is no
21       question to that, because it
22       wasn't a question.  It's a
23       colloquy.
24            MR. ALLEN:  It was just
```

Confidential - Wayne Macfadden, M.D.

Page 50

1    smart aleck comments.  I object.
2         Now, let's go.
3         MR. McCONNELL:  I
4    reciprocate.
5    BY MR. ALLEN:
6         Q.  Doctor, approximately,
7    approximately how many documents did you
8    review?
9         A.  Pardon me.  Perhaps 25.
10        Q.  Okay.  Do you recall what
11   they referred to?  Of the 25 documents
12   you reviewed, do you recall what they
13   referred to?
14        MR. McCONNELL:  Objection.
15        Instruct the witness not to answer
16        as that is work product protected
17        material.
18   BY MR. ALLEN:
19        Q.  Doctor, I see in your CV,
20   Exhibit 1, you graduated from medical
21   school at the Millard Fillmore -- no, no,
22   that's not right.
23        At the State University of
24   New York at Buffalo in 1985; is that