UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re Seroquel Products Liability Litigation
MDL Docket No. 1769

This Document Relates to All Cases

DECLARATION OF A. RICHARD WINCHESTER IN SUPPORT OF
ASTRAZENECA'S [EMERGENCY] MOTION FOR A LIMITED EXTENSION OF
TIME TO SEARCH FOR AND PRODUCE RESPONSIVE DOCUMENTS AS
TO TWO OF THE FIVE CATEGORIES OF DOCUMENTS ORDERED TO BE
PRODUCED IN THE FEBRUARY 21, 2008 ORDER

I, A. Richard Winchester, declare:

1.   I am an attorney licensed to practice law in the state of Delaware, and a partner at the law firm of McCarter & English, LLP, counsel for defendants AstraZeneca Pharmaceuticals LP and AstraZeneca LP (collectively, "AstraZeneca"). This Declaration is being submitted in support of AstraZeneca's [Emergency] Motion For A Limited Extension Of Time To Search For And Produce Responsive Documents As To Two Of The Five Categories Of Documents Ordered To Be Produced In The February 21, 2008 Order. The facts set forth in this Declaration are based upon my personal knowledge or information, and facts and data assembled by other McCarter & English attorneys working on this project. If called upon to do so, I could and would testify competently as to the facts set forth herein.

2.   Since February 19, 2007, I have had primary responsibility for coordinating AstraZeneca's review and production of documents in the above captioned litigation.

3.   To ensure consistency and completeness, any document production in this litigation must take the same general course, and involve each of the steps outlined below. In order to respond to the Court's recent Order requiring AstraZeneca to search for and produce

ME1 7168330v.1

documents responsive to plaintiffs' Clinical Requests 23 and 58, AstraZeneca's response necessitates: (a) *Receipt and review of a demand for a specific data set*: This may take many forms, but the most common is a Request For Production or a negotiated protocol for production of a database. (b) *Matching by AstraZeneca of the data demand to a specific production set*: This process is usually very time consuming. For example, Plaintiffs may identify a category of documents that exists in many different locations within AstraZeneca. AstraZeneca must determine those locations, which locations are redundant to which, and what reasonable subset of those shall actually be collected and reviewed for production. (c) *Collection of the data set*: Collection modality is necessarily dictated by the type of data to be collected. Paper documents, for example, are identified by custodians and gathered by paralegals. Databases usually are electronically extracted under certain protocols, and necessarily require involvement of trained specialists. The process of collecting a target data set is often quite time consuming and, depending on the number and location of sources for the target data set, may be especially labor intensive and time consuming. For example, collection of documents and data located in multiple locations domestically and abroad usually poses additional practical difficulties, and foreign collections generally may be expected to require additional time simply to identify and collect potentially responsive materials. (d) *Initial processing*: Again, processing mechanism is dictated by collection type. Paper documents, for example, must be scanned into .tiff by a processing vendor and then delivered to the E-Discovery vendor FTI Consulting Inc. Hard drive documents usually undergo an EnCase extraction that captures every bit of information on a custodian's computer. FTI must among many other things sort out the substantial "garbage" files captured, for example executables. (e) *Secondary processing*: FTI, AstraZeneca's ESI vendor, conducts substantial secondary processing work to stage a subset of collected data for

attorney review. Such secondary processing includes for example the culling of documents outside the scope of the data demand through the use of agreed search terms. (f) *Attorney review*: In this litigation, McCarter manages a team of over 800 attorneys which reviews documents for, *inter alia*, relevance, privilege and confidential patient information. Documents containing privileged and confidential information (merely as an example) must be identified, converted to .tiff, then re-reviewed and redacted. By law, AstraZeneca must redact certain confidential patient information. (g) *Production validation*: FTI and the document review team run a series of quality assurance steps to ensure that a proposed production set includes everything it purports to include, and nothing more. (h) *Production*: production modality is dictated by data type. Generally, productions are burned to hard drive or DVD and delivered by Federal Express.

    4.    All of the many steps identified in paragraph 3 take time, and many factors affect the length of time that it will take to complete each of the different necessary steps identified above for any given data set. Some examples include: (a) *The location of the documents to be collected*: The collection and processing of responsive documents located in many different places necessarily requires more time and effort than collections focused on only a few sources of potentially responsive documents. Moreover, the tasks inherent in collecting and processing documents from foreign locations including those in Europe which are generally protected by a regime of privacy laws that must be carefully navigated, in my experience present additional practical and logistical difficulties that may add to the length of time required to perform the various tasks involved. (b) *Whether the data set contains paper documents or electronic information*: As noted above, the time needed to perform the various implicated tasks will vary based on whether the target data set for any particular individual or custodian includes paper

ME1 7168330v.1

documents, electronically stored information of various different sorts, or both. (c) *The presence of foreign language documents*: Where, as with plaintiffs' Requests 23 and 58, it is anticipated that the target data set may include foreign language documents and data, the time needed to perform many of the tasks of any collection and production effort is greater than it would be in the absence of foreign language documents. AstraZeneca's attorney reviewers generally cannot review foreign language documents without the assistance of a translator. For obvious reasons, such assisted review is far slower than review of English language documents. (d) *The size of the data set*: Generally, it takes longer to collect and review a large data set than a small one. (e) *The complexity of the data set*: Data sets of documents that require plethoric redactions, for example Clinical Study documents that have confidential patient information in many places on a page, take far longer to review than documents that require no redactions, such as a bland calendar entry. (f) *The necessity of special review tools*: Many recent data sets in this case have been structured data database extracts that could not exist within FTI's document management database. Review of those sets required creation of special review platforms to allow display of the data, as well as redaction. These special review tools were generally different for each database.

    5.     I have reviewed the Court's Order of February 21, 2008. In my considered professional judgment, AstraZeneca cannot search for and produce the documents responsive to plaintiffs' Requests 23 and 58 in the time period of "11 days" from the date of that Order, i.e., March 3, 2008. Based on the information available to date, I understand the target data sets implicated by this aspect of the Order are largely uncollected, and consist of many thousands of documents in different locations domestically and abroad, including both the United Kingdom and Sweden. This implicates many complicating factors for AstraZeneca's collection and review

4

of those documents, such as for example the necessity of navigating Swedish and EU privacy law during the collection and confronting the likely presence of Swedish language documents. It is not possible for me to forecast a date by which AstraZeneca can fully comply with the February 21, 2008 Order, because I presently lack knowledge of all the inputs and complications germane to this particular production. However, based upon my experience in working with these documents and related data for nearly a year, I am certain that the March 3, 2008 date dictated by the Order is not achievable.

6. AstraZeneca's compliance with the terms of the February 21, 2008 Order in the time period presently afforded is made even more unworkable by the fact that AstraZeneca presently is devoting massive resources, including the over 800 attorney reviewers identified above, to the goal of meeting the March 14, 2008 substantial-completion deadline. Refocusing those previously committed resources to the entirely different tasks and document sets identified in the February 21, 2008 Order would severely jeopardize AstraZeneca's ability to meet the March 14, 2008 substantial completion deadline.

I declare under penalty of perjury pursuant to the laws of the state of Florida that the foregoing is true and correct, to the best of my knowledge. Executed this 27th day of February, 2008, in Wilmington, Delaware.

By: _____
A. Richard Winchester

ME1 7168330v.1