# ASTRAZENECA'S REPLY TO MR. CANTY'S FEBRUARY 5, 2008, EMAIL REGARDING ASTRAZENECA'S GEL PROPOSAL

## FEBRUARY 15, 2008

Dennis, this responds to your February 5, 2008, email, which responded to our January 28, 2008, *Proposed Plan For Reasonable Identification And Production Of Material Seroquel GEL Drafts* (the "Plan"). This is not meant as a highly detailed discussion of your email and we of course reserve the right to respond more fully to any of your criticisms or positions in the event that becomes necessary. I also respond despite the fact that, as I understand it, plaintiffs indicated on our last call that they would not be accepting or agreeing to our Plan unless it included certain aspects, noted herein, that we believe are unreasonable. We hope that you will reconsider that position so that we can move forward.

1.  We disagree that the production Plan is "critically limited." To the contrary, the Plan is a substantial proposal to identify and produce *relevant* Seroquel related GEL documents to the extent, if any, that they have not already been produced from the 103 custodial files or in response to specific Requests for Production, or to the extent they will not be produced as part of the GEL database extraction and production. Moreover, as we have stated repeatedly, your overall focus on the database in which a document is drafted obscures the real substantive point, which is what substantive categories of documents are relevant, not where they were drafted.

2.  At the outset you assert that the plan "fails to address one entire category of ESI," which you describe as ESI that "at *all times* resided *solely* in GEL, and was *never* imported or exported from it." (Emphasis added). It is unclear exactly what you intend by your reference to ESI that was never "imported" or "exported" from GEL. Specifically, it is not clear to me whether you mean to refer to ESI drafted solely within GEL *and* which no GEL user ever

12681435.1

downloaded and saved outside GEL, or only to ESI drafted solely within GEL without regard to whether it was ever downloaded and saved outside GEL.

3. ESI drafted solely within GEL can be saved by a user outside GEL, and our Plan specifically contemplates that capability in discussing how such ESI saved outside GEL would be identified and produced. If, however, you hypothesize a situation in which ESI was drafted solely within GEL and never saved or downloaded locally outside GEL, which situation we do not know to exist for any material draft or annotation, then you criticize the Plan for not doing the impossible, namely producing draft or annotation ESI which does not exist. The Plan is one for the *production* of ESI. AstraZeneca cannot produce ESI that does not exist. No plan in any case could do so.

4. From statements you have previously made, we gather that you are trying to establish that AstraZeneca has "spoliated evidence" because GEL (as distinguished from users outside GEL) by default does not (except for U.S. Clinical Development since March 2006) retain drafts and annotations once the final document is approved, but rather retains only the final, approved document. While we certainly disagree that there has been any spoliation, and will certainly oppose such a motion if filed, your criticism of GEL from this perspective simply misses the point of the Plan.

5. The Plan is a material effort on the part of AstraZeneca to identify and produce documents that exist and can be produced (to the extent, if any, not already produced), and your criticism of its supposed "critical limitation" in this (hypothesized) regard is not a constructive counterproposal, if it purports to be so intended at all. Indeed the fact that GEL does not retain drafts and annotations once a document becomes approved and final was the impetus for our proposing the Plan in the first place. The point of the Plan is to suggest a means of identifying

12681435.1

and producing, as necessary, truly material ESI not retained on GEL to the extent not already produced.

6. Moreover, you base this criticism on a hypothesized category of ESI that is not even known to be the case as to any truly relevant Seroquel related GEL material. You appear to simply assume that there is substantial ESI that is both material to the case and which never existed outside GEL, when that is not known to be the case. For the reasons set out in the Plan, it is far from obvious or certain that any significant, material ESI not retained on GEL itself was not saved outside GEL by any the 103 custodians or others with access to GEL. We know such situations existed and the Plan provides a reasonable means by which such drafts and comments to litigation relevant material may be identified and produced to the extent, if any, that has not already occurred.

7. Your second criticism in this regard is that the Plan "fails to address" what you describe as Mr. Ball's requests that AstraZeneca identify the ESI which at one time existed "and may have found its way out of GEL" and then determine whether it has been retained. You assert that the Plan therefore begins with "Step 3" rather than "Step 1."

8. Again, your criticism does not appear to reflect a focus on obtaining the production of material, available information because it is not interested in what exists but again on what *may* not exist. It appears that plaintiffs simply wish to spend time developing a claim for their often threatened "sanctions" motion, rather than obtaining additional information relevant to the case. Moreover, we believe a tailored plan that focuses on a reasonable calculation intended to locate admissible evidence is consistent with the Federal Rules of Civil Procedure. We object to any plan that would require an extensive and burdensome investigation before any such reasonable calculation is made.

3

12681435.1

9. Perhaps, as noted above, plaintiffs are principally interested in attempting to develop a "spoliation" claim rather than obtain relevant ESI. However, if so, plaintiffs' disinterest in the production of ESI is not a deficiency in the Plan, which, again, is one for production.

10. You also identify as a purported deficiency in the Plan that it does not propose to identify and produce GEL material that is no longer on GEL from countries other than the U.S. We disagree that this is a deficiency in the Plan. Rather, it presents a substantive dispute over the appropriate scope of discovery of draft material. Moreover, I would note that almost every category of documents identified in the Plan, other than the U.S. Label, are global documents not limited to the U.S. The annual PSUR, for example, is filed with global regulatory authorities throughout the world that have approved Seroquel.

11. You also assert that plaintiffs do not agree to a production of GEL materials addressed by the Plan beyond March 14, 2008. As we have made clear, we do not regard the production of former GEL material not presently contained in GEL as subject to the "substantial completion" date of March 14 because that date applies only to matters requested under the Federal Rules of Civil Procedure by the date AstraZeneca's plan for substantial completion was submitted to the Court, subject to AZ's objections. Plaintiffs did not serve such a request and in fact have not done so to this day.

12. Plaintiffs' Request for Production No. 8 came after the production of over 12 million pages of Seroquel related information, most from the files of the 103 custodians selected by AstraZeneca (as to 80 such individuals) and plaintiffs (as to 23 additional ones). RFP No. 8 sought only material presently housed in GEL. This request was itself one seeking a large amount of ESI that will, under AstraZeneca's database extraction and production plan, be

produced subject to certain objections. We do not criticize plaintiffs for not requesting all Seroquel GEL document drafts or annotations that may reside outside of GEL *in addition to* those that were part of the millions of pages of ESI produced by AstraZeneca from the files of the 103 custodians. Indeed, good reason not to seek such material is readily apparent. This begins with the simple fact that not all Seroquel documents on GEL (let alone the drafts of documents on GEL) are relevant to your claims (as you concede), and plaintiffs have already received over 12 million pages of material from the 103 custodians, many of whom utilized GEL and who retained GEL drafts that were produced to plaintiffs. Indeed, given the nature and volume of the documents already produced and the custodial nature of the production -- with custodians designated by both parties -- the likelihood that the sort of fishing expedition that plaintiffs appear to desire would yield truly relevant, much less critical, evidence not already produced or clearly pointed to by prior productions (or by the upcoming production from the GEL database) is extremely small, if not zero.

13.  I understand that plaintiffs may take the position that they somehow requested such materials by virtue of certain "Directions" that appeared in RFP No. 8, which was directed to the production of material in GEL. However, those Directions said no such thing. Rather they were phrased in terms of requesting information of the sort that should be sought by interrogatory – namely asking (among other things) for the location of material "lost, destroyed, or otherwise disposed of" from GEL -- and sought as to such documents "the identity of each person who has received a copy or had an opportunity to receive a copy." (Direction No. 3(b)). While AstraZeneca objected to that Direction on various grounds (and plaintiffs have not filed a motion to compel as to that Objection), the Direction itself indicated that, if anything, plaintiffs would seek the production of copies of material "lost, destroyed, or otherwise disposed of" from

5

12681435.1

GEL by *follow up* discovery, *if* plaintiffs judged it desirable to do so. No such subsequent Request For Production has been served.

14. Plaintiffs' refusal to agree to the Plan or to propose (if they have one) a constructive counter proposal that focuses on relevance and does not involve unduly burdensome additional "discovery about discovery" – such as your proposal to participate in interviews of untold numbers of AstraZeneca employees – hampers the process of finalizing it and producing any additional material by a reasonable date.

15. Your position that plaintiffs have somehow been materially impaired in identifying relevant custodians simply because there have been some – acknowledged -- deficiencies in the original production of custodian files is implausible. AstraZeneca has produced millions of pages of documents from custodian files as well as in response to almost 300 RFPs, including subparts. That said, if after receiving and reviewing our complete March 14 production, you learn of additional, material categories of documents that are drafted on GEL that you were unable to identify from our initial production, we would be willing to consider expanding the Plan to search for drafts of those documents.

16. Moreover, as stated in our Plan (Part E), if after reviewing documents produced from GEL under the March 14 production, plaintiffs believe specific drafts central to their case have not yet been produced, plaintiffs are free to request them (articulating the basis for that belief), and AstraZeneca will consider any such requests in good faith and investigate the location of such drafts, although obviously reserving the right to object to particular requests. I do not suggest that we believe that such documents exist or will need to be produced, but our Plan nevertheless addresses them and indicates AstraZeneca's willingness to accommodate their production should the need be truly indicated.

12681435.1

17. I would also note that we advised plaintiffs and Mr. Ball on our February 7, 2008, call that AstraZeneca would identify reasonable categories of documents maintained on GEL for the purpose of assisting plaintiffs in responding to our Plan. We have done so. Again, however, we do not anticipate that a listing of such categories will indicate the need to expand the Plan.

18. We do not agree, as indicated on our February 7 call, that it is necessary or appropriate to "produce a list of all GEL users" from the year 2000 to the present with permissions to edit GEL documents that fall into one of the "agreed" categories, along with other information concerning them identified in your email. This is in effect an overbroad and burdensome interrogatory in the form of an email and, in any event, not reasonably necessary to identify documents, if any, relevant to this case and not already produced in the voluminous custodial productions and the GEL database production.

19. We similarly disagree with your proposal that this then lead to "interviews" with AstraZeneca employees in which plaintiffs will participate. AstraZeneca's Plan reflects an interview process that it proposes to conduct to interview AstraZeneca personnel to identify other GEL contributors (if any) who may have additional documents that would be produced under the Plan. Like any litigant, AstraZeneca is entitled to carry that internal investigation out itself in preparing to respond to what amounts to discovery by plaintiffs (without following the Rules of Civil Procedure) and is not obliged (nor can it be reasonably expected) to involve plaintiffs in such discussions.

20. Frankly, this appears to us to simply be a proposal that is so facially overreaching that we can only assume that it is advanced to elicit a response as set forth above, as we believe any litigant would respond, in order to attempt to fashion not a means of getting at any needed

7

information but to allow plaintiffs to tactically argue that AstraZeneca is not cooperating in "discovery."

21. Unfortunately our overall impression to the response of plaintiffs is that it is far more focused on attempting to develop a purported "spoliation case" than to solve production issues. In our view, the response appears to reflect a desire to litigate sanctions motions not resolve issues. Despite that, we are hopeful that this is not the case and that we labor under a misimpression in that regard. Thus, we take the time to respond in the hopes that we can come to an agreeable Plan to resolve these issues rather than litigate over them. Do not take this in any way as indicating that we regard plaintiffs as having a substantial sanctions or spoliation claim regarding GEL (or anything else). We are confident in our position, and if such a motion is filed, we will respond appropriately. We nevertheless hope that is not necessary. As has been the case for some time, plaintiffs must make their own decisions in this regard. We are not encouraging plaintiffs to file or not file any motion they believe they have. While we believe a motion would be ill advised, the decision about when and whether to file is, and always has been, wholly plaintiffs'. However, it is AstraZeneca's desire, as set out in our Plan, to resolve these issues constructively, which is what we believe our Plan would do.