**Dennis Canty**

| | |
|---|---|
| **From:** | craigball@gmail.com on behalf of Craig Ball [craig@ball.net] |
| **Sent:** | Tuesday, February 12, 2008 12:14 AM |
| **To:** | Pass, Robert W. |
| **Cc:** | Larry J. Gornick; Dennis Canty; Kerns, Kevin; Adams, Bill; Field, Carmen Oveissi; Freebery, James J.; Arthur Brown |
| **Subject:** | Re: Seroquel MDL: Responses to Special Master Ball Questions Concerning GEL |

Dear Mr. Pass:

I'm sorry I missed this until now. Apparently, it came in while I was on the call and it dropped below the fold until I worked down to it this evening. I'd not seen it prior to my e-mail earlier today concerning GEL-created data, so if there is any disconnect between the two, that is the cause.

Having seen this, I'm still stymied by the absence of a unequivocal response to the issue of what's unrecoverable in the nature of GEL-originated, Seroquel-related, non-retained content. It's not that I don't *like* the answer I'm getting. I simply don't feel I'm getting my questions answered. AstraZeneca again jumbles up the issue of information created *outside* of GEL and contributed into GEL with the much different issue of information originating *within* GEL and *not* brought out before being discarded by employee-initiated document finalization.

You repeatedly characterize my questions as argumentative. They were not intended to be, and I regret you received them that way. My communication was *ex parte*, so the candor I displayed was shared in hopes that I would secure some traction on questions I've been trying to resolve for months. I just can't seem to pin down the important issues of how much Seroquel-related, GEL-originated content was purged by non-retention, what it was and whether it can it be recovered.

I feel like I ask the price of apples, and I'm told the color of oranges. The problem may lie with my asking questions inartfully, but surely that's not the only confounding element. For example, each time I referred to lost GEL-originated content, you reference only "drafts." Were drafts the <u>only</u> data lost by finalizing GEL documents? Was there not other ESI in GEL that shouldn't fairly be characterized as "drafts?" Were there no *communications*? No *commentary*? No *calendars* or *annotations*? Perhaps you mean "drafts" to encompass all, but since I asked about content and you answer about drafts, no doubt you can appreciate my confusion.

You note that AstraZeneca's U.S. Clinical Development group has been retaining drafts in GEL since March 2006. Here again, do you use the term "drafts" to encompass less than all of the ESI lost due to finalization? If so, why?

Three other questions grow from that information about AstraZeneca's U.S. Clinical Development group:
1. Has the U.S. Clinical Development group finalized any documents in GEL since March 2006?

1

2.  How were they able to accomplish same when I understood from prior discussions that it wasn't feasible to retain drafts and GEL-originated content along with the finalized document?
3. Does the retention by AstraZeneca's U.S. Clinical Development Group encompass all potentially-relevant, Seroquel-related GEL content?  If not, then aren't we not only needing to develop the facts about purging of Seroquel-related GEL content for AstraZeneca's U.S. Clinical Development Group *before* March 2006 but also about the status of such lost ESI for other GEL users until December 21, 2007?

I believe that I am obliged to determine the nature and extent of the loss of relevant ESI, if any, purged from GEL during a period when AstraZeneca was under a preservation duty in connnection with the matters at issue in this case.  My issues are pretty simple:  Does AZ have the relevant ESI?  What form is it in?  What has been purged?  How much was lost?  What form was it in?  Are there ways we can go about recovering lost relevant ESI?  How difficult and costly are they?

I am not getting very far going about the effort as I have, and after so many frustrating months at it, it's time to fashion a better solution.  We can chase hither and yon in hopes of finding the right people with a sufficiently clear years-old recollections of the contents of GEL and who perhaps kept copies.  Alternatively, we can turn to a ready source that we know contains telling examples of the ESI we seek.  The latter is likely to be the most expedient, objective and cost-effective source; but, the best and brightest way to know that is by sampling.

**Directive**
I direct the parties to (jointly or separately) propose a sampling protocol to be applied to the GEL back up tapes for the primary purpose of assessing the extent, relevance and composition of ESI, if any, formerly in GEL but that AstraZeneca did not retain while under a preservation duty in connection with matters at issue in this cause.

I further direct that such proposed protocol seek, as feasible, to meet the following goals:
1. It should target areas of GEL deemed more likely than not to contain Seroquel-related content relevant to the issues in this cause.
2. It should minimize or eliminate duplication of GEL content preserved by AstraZeneca's U.S. Clinical Development Group after March 2006.
3. It should minimize or eliminate duplication of GEL content preserved after December 21, 2007.
4. It should provide an efficient, reliable mechanism (e.g., hash analysis or other techniques) to compare the contents of potentially-relevant areas of GEL where ESI was non-retained with the corresponding areas and content on the sampled tapes reflecting intervals prior to non-retention.
5. The protocol shall identify ESI found on the sampled tapes but now absent from GEL and catalog all such items, by file name, file type and relevant metadata (including hash value, if calculated).  It must encompass both ESI in the nature of documents and in other potentially relevant forms (e.g., communictions, annotations, objects and the like).
6. Any potentially-relevant non-retained content restored from tape should be preserved in a readily accessible manner.

I further direct that AstraZeneca furnish to the plaintiffs sufficient information about the size and composition of the GEL tape back up collection to enable the plaintiffs to fashion a properly targeted and effective sampling proposal.  Such information should, as known or as may be ascertained from existing logs, labels, indices or records, include the number and types of tapes, the date each tape set was recorded, the size and scope of each back up and any other information going to the contents of the tapes that can be obtained without restoration of the tape.

I emphasize that I am seeking a **sampling** proposal, *not* a broad-based restoration.  The proposals should be **narrowly** tailored to meet the primary purpose of <u>assessing</u> the probable extent, relevance and composition of non-retained GEL ESI.  If the samples reveal that <u>relevant</u> data was lost but can be cost-effectively recovered from tape, a subsequent or broader sample may be warranted.

I will set deadlines for providing information on the tapes and submission of proposed protocols in the call on 2/12/08.  This issue should be first on our agenda.

I acknowledge that, by proposing a sampling protocol at my direction, AstraZeneca is not waiving its right to object to implementation of such protocol.  If Astra Zeneca claims that a burden or cost is excessive, or that costs should be shifted or shared, AstraZeneca should be prepared to present competent evidence of such burden and cost to me, along with evidence justifying cost allocation.  I may seek to resolve those issues by directive or defer the cost allocation issue to the court with my recommendation.  Either way, I need evidence if AstraZeneca intends to pursue these issues.

Mr. Pass:  You misapprehend me when you suggest it is not within my purview to fashion and implement a sampling protocol for ESI on back up tapes.  It seems to me that few tasks fall more squarely within the ambit of a Special Master for Electronically Stored Information than to judiciously fashion a protocol for sampling of ESI on back up media as a means to assess the nature and extent of lost ESI on more accessible media.  Whether we look to the case law, the Sedona Principles, the Rules or simply the court's appointment order, this seems precisely-- almost classically--the sort of task the court has entrusted to me.  I am not the first to turn to sampling as a means to balance the need for ESI against the burden of restoring tapes, and courts that have employed sampling of tapes did so on less compelling circumstances than we face here.

Nonetheless, I trust the directive is clear, but I'd be pleased to clarify any aspect of it in our call later this morning.

Than you.

Craig Ball


On 2/7/08, **Pass, Robert W.** <<u>RPass@carltonfields.com</u>> wrote:
<<AstraZeneca Response.pdf>>

Confidential:  This email contains a communication protected by the attorney-client privilege.  If you do not expect such a communication from Robert Pass, please delete this message without reading it or any attachment, and then notify Robert Pass at rpass@carltonfields.com of this inadvertent misdelivery.

I attach our responses to various questions posed by Special Master Ball concerning GEL.  As indicated on our call (which is going on right now), this addresses in part questions posed to us by the Special Master in an ex parte setting.

Robert Pass
Attorney at Law
Carlton Fields, P.A.
215 S. Monroe Street, Suite 500
Tallahassee, FL 32302
Phone (850) 513-3608
Fax (850) 222-0398
e-mail: rpass@carltonfields.com
www.carltonfields.com

--
Craig Ball
Attorney and Technologist
Certified Computer Forensic Examiner
1101 Ridgecrest
Austin, Texas 78746
TEL: 512-514-0182
MBL: 713-320-6066
FAX: 512-532-6511
E-MAIL: craig@ball.net
WEB: www.craigball.com