UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re Seroquel Products Liability Litigation
MDL Docket No. 1769

**This Document Relates to All Cases**

**ASTRAZENECA'S MOTION AND COMBINED MEMORANDUM FOR ENTRY OF ORDER GOVERNING PERMISSIBLE CONTACT AND RETENTION OF CERTAIN FLORIDA-RELATED PHYSICIANS AS DEFENSE EXPERTS**

Defendants AstraZeneca LP and AstraZeneca Pharmaceuticals LP ("AstraZeneca") hereby move the Court for entry of an order governing the permissible contact and retention of Florida-related physicians as defense experts for any plaintiff's case in which the physician is not among that plaintiff's physicians. As explained below, good cause exists for entry of AstraZeneca's proposed order (attached as Exhibit A) in this MDL.

**I.   INTRODUCTION**

AstraZeneca brings this motion out of an abundance of caution to confirm its right to meet with physicians about their possibly testifying as defense experts in cases brought by plaintiffs whom the physicians have *never* treated or otherwise seen as one of their patients. Experience in other coordinated proceedings suggests that plaintiffs' counsel here might try to derail those defense efforts by wrongly asserting that such contact would violate Florida's physician-patient privilege statute, and its accompanying rule against certain "ex parte communications." As shown below, Florida's statutory and decisional law prohibits ex parte communications with a particular plaintiff's physicians about that particular plaintiff's medical information in the context of that plaintiff's own case; it does not, and should not, preclude AstraZeneca from contacting a physician and perhaps retaining that physician as a defense expert

in any case involving plaintiffs that the physician has *never* seen as a patient. *See* Part III.A., *infra*. In comparable situations (involving state laws similar to Florida law), courts in other aggregated products-liability litigation – including a federal prescription-drug MDL – have entered precisely the type of order sought by AstraZeneca, so as to provide clear judicial guidance and prevent unfair efforts by plaintiffs' counsel to prevent defendants from preparing their defense by developing necessary expert testimony. *See*, *e.g*., *In re Prempro Litig.*, MDL No. 4:03-cv-1507-WRW, Order re: Retention of Experts (E.D. Ark., Dec. 7, 2005) (attached as Exhibit B); *In re Minnesota Penile Prosthesis Litig.*, No. PI 97-11183, Tr. of Proceedings (Minn. Dist. Ct., May 8, 1998) (attached as Exhibit C), & Mem. to Urologists (Minn. Dist. Ct., May 11, 1998) (attached as Exhibit D).

Because AstraZeneca is willing to abide by the additional "precautions" imposed by those other courts – which would further guard against any possible disclosure of patient-specific information that genuinely might be protected and privileged under Florida law, *see* Part III.B., *infra*. – plaintiffs have no legitimate basis to oppose the order proposed by AstraZeneca. Consequently, this motion should be granted.

## II.     BACKGROUND

There are currently 174 Florida plaintiffs with cases in this MDL proceeding, 75 of which have been set for limited case-specific discovery. For the Initial Trial Pool of Florida cases, Case Management Order No. 5 requires AstraZeneca to identify general and case-specific experts and provide their reports by September 12, 2008. AstraZeneca has undertaken to seek out top Florida experts in a number of fields – including endocrinology, epidemiology, internal medicine, psychiatry, psychology, and diabetology.[1]

---

[1] Diabetology is the branch of medicine dedicated to the study and treatment of diabetes mellitus.

AstraZeneca has taken care to avoid communications with any doctor that it knows or has any reason to believe has treated one or more of the 174 Florida plaintiffs.  AstraZeneca has done so by consulting plaintiffs' fact sheets ("PFSs") to check whether any potential physician expert has been identified by plaintiffs in this litigation as among their physicians.  Because, as the Court knows, the PFSs may be incomplete, inaccurate, or otherwise unreliable, AstraZeneca also asks potential experts whether they are aware of any of their patients being among the Florida plaintiffs who have filed suit against AstraZeneca.  If either the PFS review or the questioning of the potential expert were to reveal a relationship with a plaintiff, then AstraZeneca would promptly terminate any further communication and would not pursue the doctor's expert services in any of their patient's cases (or otherwise at this time).  AstraZeneca has never pursued developing any Florida-related physician as a defense expert in any case where that doctor has had the plaintiff as a patient.  In fact, AstraZeneca has to date adhered to a policy of terminating any contact with any Florida-related physician as soon as it may come to learn that the doctor has had any Florida plaintiff as a patient.

Case-specific discovery thus far suggests that collection of additional medical records and depositions will reveal yet additional treating doctors whom the plaintiffs failed to mention when completing their Fact Sheets.[2]  Thus, when newly-identified doctors are added to the cumulative 3,140 healthcare provider names already identified, the total number of identified doctors who treated the 174 Florida plaintiffs can be expected to increase.  Given the large number of Florida plaintiffs aggregated in this MDL and the limited number of doctors qualified and willing to serve as Florida trial experts, it is conceivable (if not likely) that one or more

---

[2] For example, plaintiff Stoudt identified (often only by partial name) about 55 healthcare providers in her initial Fact Sheet.  At her deposition, she identified at least another 40 providers.

potential Florida experts might turn out to have treated a Florida plaintiff at some time in the past. AstraZeneca brings the instant motion in consideration of that possibility.

**III.    ARGUMENT**

Even assuming for the sake of argument that Florida procedural law did properly govern these issues in these federal diversity cases, *but see Evertson v. Dalkon Shield Claimants Trust*, 1993 U.S. Dist. LEXIS 9670, *2 (D. Kan. June 2, 1993),[3] the present motion still should be granted for three reasons. First, Florida law does not prohibit contact with an expert physician who is not among the plaintiff's own physicians in a given case. Second, courts overseeing aggregated personal-injury proceedings have approved orders identical to the one that AstraZeneca seeks here. Third, AstraZeneca agrees to abide by the additional precautionary measures adopted by other courts to alleviate any genuine risks and practical concerns with respect to the physician-patient privilege. As explained below, the Florida physician-patient privilege statute and accompanying rule prohibiting certain ex parte communications do not – and could not – bestow upon any plaintiff a broad "veto" right to prevent defendants from meeting with physicians and retaining them as defense experts to testify in *other cases* involving plaintiffs that have *never been a patient of the physicians.*

---

[3] The issue presented on this motion – *i.e.*, whether and how defendants may contact and possibly retain a physician as a defense expert in the context of cases of those who are *not* among the physician's patients – is governed by federal procedural law in diversity cases (particularly given that, here, Florida's physician-patient privilege statute and authorities do not prohibit such efforts in state court, much less federal court). Under federal procedural law, there exists no rule prohibiting parties from contacting physicians and possibly retaining them as expert witnesses in pending litigation. *See*, *e.g.*, *Shots v. CSX Transp., Inc.*, 887 F. Supp. 206, 207-08 (S.D. Ind. 1995); *Galarza v. United States*, 179 F.R.D. 291, 292, 294-96 (S.D. Cal. 1998); *Evertson v. Dalkon Shield Claimants Trust*, 1993 U.S. Dist. LEXIS 9670, *2, **4-5 (D. Kan. June 2, 1993). In fact, some courts have held that the permissive federal procedural rules apply in diversity cases even where ex parte communications with the plaintiff's own physicians is at issue. *See Shots*, 887 F. Supp. at 207-08; *Evertson*, 1993 U.S. Dist. LEXIS 9670, at **4-5.

**A.     Florida's Physician-Patient Privilege Statute And Accompanying Rule Prohibiting "Ex Parte" Communications With Plaintiff's Treating Physicians In A Patient's Case Cannot Prevent AstraZeneca's Expert Witness Retention Efforts At Issue Here**

Plaintiffs might contend that Florida's physician-patient privilege statute, Florida Statutes section 456.057(7), and its accompanying rule prohibiting certain "ex parte" communications with a plaintiff's treating physicians in an individual case, should prevent AstraZeneca's expert witness development efforts in *all* cases with respect to *any* physician or medical expert that has ever treated *any* of the 174 Florida plaintiffs in this MDL. Such a contention would be wrong as a matter of law.

Florida's physician-patient privilege statute limits the disclosure of medical "records" and information about "the medical condition" of a particular "patient" without "written authorization of the patient." FLA. STAT. § 456.057(7).[4] In this way, the statute operates to achieve its purpose, which is to protect "the confidentiality" of "the medical records and the medical condition of a patient." *Acosta v. Richter*, 671 So.2d 149, 154 (Fla. 1996).

Florida state courts have interpreted section 456.057(7) as supporting a corollary rule prohibiting defense counsel from having "ex parte" communications with the plaintiff's treating physicians in the context of that plaintiff's case against defendant. *Id*. at 152; *see also Lemieux v. Tandem Healthcare of Fla., Inc.*, 862 So. 2d 745, 750 (Fla. App. 2004); *Kirkland v. Middleton*, 639 So. 2d 1002, 1004 (Fla. App. 1994). But this prohibition against ex parte communications operates to prevent defense lawyers from talking with *the plaintiff's* own physicians about *the plaintiff's* medical records, conditions and treatment in the context of *the plaintiff's* lawsuit. *See*,

---

[4] The Florida statute provides that a particular patient's medical "records may not be furnished to, and the medical condition of a patient may not be discussed with, any person other than the patient or the patient's legal representative or other health care practitioners and providers involved in the care or treatment of the patient, except upon written authorization of the patient." FLA. STAT. § 456.057(7).

*e.g.*, *West v. Branham*, 576 So. 2d 381, 383 (Fla. App. 1991) (interpreting section 456.057(7) as "closing the door to the previous practice of many defense attorneys of meeting privately or otherwise communicating ex parte with the plaintiff's treating physicians").[5]

Thus, the focus of the privilege is not the physician, but the *particular patient* of the physician – *i.e.*, the medical records and medical condition of the physician's own "patient." *Acosta*, 671 So. 2d. at 154 (ruling that section 456.057(7) creates "privilege of confidentiality as to the medical records and the medical condition *of a patient*") (emphasis added); *accord Lemieux*, 862 So. 2d at 748. Thus, what is privileged and confidential is simply what the doctor knows about the particular plaintiff learned in the course of providing medical care to that plaintiff/patient. The physician's general knowledge and experience is not rendered privileged in any respect by Florida Statute section 456.057 or any other aspect of Florida law. The Florida rule against ex parte communications with a plaintiff's *own* physicians cannot fairly be interpreted to provide plaintiff's counsel with a shield to prevent disclosure of the physician's separate expert opinions for cases filed by *others* who have never been among the physician's own patients.

Because section 456.057 operates to prohibit "defense attorneys [from] meeting privately or otherwise communicating ex parte with *the plaintiff's* treating physicians," *Acosta*, 671 So.2d at 152 (emphasis added), the necessary focus is on whether the particular doctor has provided medical care to the particular plaintiff in the particular case for which the doctor is being contacted. Where the doctor is not among "the plaintiff's treating physicians," *id.*, then ex parte communication between the defendant and that physician is permissible under Florida law. *See*,

---

[5] Notably, even in contexts (unlike this one) where the defendant may have engaged in improper ex parte communications with a plaintiff's doctor, a Florida appellate court affirmed the trial court's decision to permit the doctor to testify as a defense witness. *Phillips v. Ficarra*, 618 So. 2d 312, 314 (Fla. App. 1993).

6

*e.g., West v. Branham*, 576 So. 2d 381, 384 (Fla. App. 1991) (permitting contact between defendant and doctor performing independent medical examination "provided that the examined party [plaintiff] is not otherwise being treated by the examining doctor"). As the *West* court emphasized, "nothing" in section 456.057 or its corollary rule against ex parte communications with the plaintiff's physicians "restrict[s] communication between the defense and its retained medical expert." *Id.*[6] Thus, where (as here) the defendant seeks to communicate with a physician about his or her general knowledge and experience, or opinions about issues in cases filed by non-patients – as opposed to any information about one of the physician's own patients – then the patient-confidentiality interests protected by section 456.057 are not implicated, and its corollary rule concerning ex parte physician communications simply does not come into play. What is critical here, therefore, is that AstraZeneca seeks merely to contact and retain Florida physicians to testify as experts in other cases <u>not</u> *involving that particular physician's patients*.

In sum, the paradigm for the application of the Florida rule – and the context in which all Florida appellate courts have addressed the issue – is the single-plaintiff case in which the physician at issue had the plaintiff as a patient. In the entirely different circumstance presented in this very different MDL proceeding, the Florida rule must be applied with sensitivity to not only the numerosity of distinct cases, but also the fact that each plaintiff has a right to withhold consent to ex parte interviews *only* with that plaintiff's own physicians in the context of that plaintiff's own case.

---

[6] As the Florida appellate court explained in *West*, the "wording" of section 456.057 confirms that it "was intended to prevent the practice of defense counsel discussing a patient's condition with the patient's treating physician," but not "to restrict communication between the defense and its retained medical expert" who is not among the particular plaintiff's physicians. 576 So.2d at 384. "Certainly, if the legislature had intended that trial courts would enter orders granting plaintiff's protection from communication between the defense and a witness it is calling as an expert, it could have said so in a much more clear and explicit manner." *Id*.

> **B.     Courts In Comparable Coordinated Mass-Tort Proceedings Have Adopted Precisely The Sort Of Order Sought By AstraZeneca, And Permitted Ex Parte Communications And Retention Of Physician Experts Despite Similar State Law Rules Prohibiting Ex Parte Contacts With A Plaintiff's Physicians**

AstraZeneca is aware of no Florida court (indeed, no court anywhere) that has ever barred a defendant in coordinated or consolidated proceedings from meeting ex parte with – let alone retaining as an expert – a doctor for *one* plaintiff's case where the doctor was not *that* plaintiff's treater, but may have treated *another* plaintiff in another case.  By contrast, courts in aggregated proceedings have approved exactly what AstraZeneca now proposes.  *See*, *e.g*., *In re Prempro Litig.*, MDL No. 4:03-cv-1507-WRW, Order re: Retention of Experts (E.D. Ark., Dec. 7, 2005) ["*Prempro* Order"] (Exh. B); *In re Minnesota Penile Prosthesis Litig.*, No. PI 97-11183, Tr. of Proceedings (Minn. Dist. Ct., May 8, 1998) (Exh. C), & Mem. to Urologists (Minn. Dist. Ct., May 11, 1998) (Exh. D).

In the *Prempro* MDL, a prescription drug personal-injury litigation coordinated in the Eastern District of Arkansas, the MDL court permitted defendant Wyeth and other drug manufacturer defendants to have substantive communications with and to retain physicians as experts in non-patient cases even though the Arkansas privilege rules explicitly prohibited "[a]ny informal, ex parte contact or communication between a party or his or her attorney and the physician . . . of any other party."  Arkansas Rule of Civil Procedure 35(c)(2).  As Judge Wilson ruled in the *Prempro* order, the pharmaceutical defendants "will not be prohibited from retaining a physician as an expert witness who is identified on a plaintiff's fact sheet" but subject to certain limitations, including that "[d]efendants and their attorneys cannot use a physician as an

8

expert in a case where that physician's patient is a plaintiff in that particular case." *Prempro* Order [Exh. B], at 1.[7]

Equally instructive is the similar decision of a state court judge overseeing the coordinated Minnesota *Penile Prosthesis* Litigation. In Minnesota, as in Florida, case law prohibited "ex parte" interviews of a plaintiff's treating physicians. *Wenninger v. Muesing*, 240 N.W.2d 333, 334 (Minn. 1976). The *Penile Prosthesis* plaintiffs took the position that defendant American Medical Systems, Inc. ("AMS") should be prohibited in any case from retaining any of the 675 urologists who had treated any of the 719 plaintiffs. AMS moved for an order affirming its right to retain eight urologists as defense experts who had not treated any of the twenty bellwether plaintiffs (although they had treated other plaintiffs).[8] Like the MDL court in *Prempro*, the Minnesota state court presiding over that prescription medical device coordinated proceeding granted the motion, while adopting similar additional safeguards as those imposed in *Prempro* (and proposed by AstraZeneca here). *In re Minnesota Penile Prosthesis Litig.*, No. PI 97-11183, Mem. to Urologists (Minn. Dist. Ct., May 11, 1998) [Exh. D].

---

[7] The *Prempro* plaintiffs argued – as plaintiffs here may similarly argue – that ex parte communication between their doctors and the *Prempro* defendants supposedly would undermine their confidence in those doctors and inhibit communication with them; violate those doctors' fiduciary obligations; reveal confidential communications; and be subject to potential abuse. *See* Pltfs' Response to Dfts' Submission re Retention of Physician Experts at 1-2, *In re Prempro Prod. Liab. Litig.*, No. 4:03-cv-0157-WRW (E.D. Ark. Sept. 12, 2005) (attached as Exhibit E). But the MDL court in *Prempro* rejected those overblown arguments, just as this Court should reject them here as without basis in law or fact. *See Prempro* Order [Exh. B]; *see also Galarza*, 179 F.R.D. at 294 ("It is well recognized, that absence a privilege, no party is entitled to restrict an opponent's access to a witness, however partial or important to him, by insisting on some notion of allegiance."); *accord Doe v. Eli Lilly & Co.*, 99 F.R.D. 126, 127-129 (D.D.C. 1993).

[8] As AMS emphasized in its briefing, any contrary result would be grossly unfair: "plaintiffs' counsel would be allowed to insulate the leading physician-experts from testifying for AMS in these cases simply because, through advertising, they solicited a large number of clients and aggregated all of their cases in one forum." *See* American Medical Systems, Inc.'s Memorandum of Law Regarding Expert Urologists at 2 (emphasis added), *In re AMS Minnesota Penile Prosthesis Litig.*, No. PI 97-11183 (Minn. Dist. Ct., Apr. 21, 1998) (attached as Exhibit F).

As those courts recognized, coordinated proceedings require careful application of state law privilege rules concerning ex parte communications with doctors.  If such rules were construed as prohibiting an MDL defendant from consulting with a particular doctor about the cases of *non-patients* merely because one or more patients sued that defendant, then hundreds or even thousands of doctors in a state could be disqualified as potential defense experts.  Such a result would threaten to undermine the defendant's ability to mount its defense in products-liability cases in which expert testimony plays such an important role.  Moreover, any such restriction on the defendants' ability to retain expert witnesses would threaten to violate the party's fundamental due-process and fair-trial rights, which include a meaningful opportunity to call witnesses and otherwise present evidence on one's own behalf.  *Hamdi v. Rumsfeld*, 542 U.S. 507, 601 (2004); *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976); *In re Oliver*, 333 U.S. 257, 273 (1948); *Saunders v. Shaw*, 244 U.S. 317, 319 (1917); *see also Keller Industries v. Volk*, 657 So.2d 1200, 1202-03 (Fla. App. 1995) ("One of a party's most important due process rights is the right to call witnesses.").

The rationale underlying the *Prempro* and *Penile Prosthesis* decisions applies with full force under Florida law.  As under Arkansas and Minnesota law in those cases, Florida law may prohibit ex parte communications with the plaintiff/patient's own physicians concerning the plaintiff-patient's own case and medical records or condition – but *not* some other plaintiff/non-patient's case or medical records/condition.  Consistent with the orders in *Prempro* and *Penile Prosthesis* on which AstraZeneca relies, the Florida ex parte contact rules have never been applied to prohibit the retention of, and consulting with, a physician in a case involving claimants other than the physician's patient.  A contrary result that would prohibit any doctor from testifying as an expert about the cases of non-patients would not only be unprecedented in

10

Florida, but inconsistent with Florida law. Indeed, such a misconstruction of section 456.057 and the Florida cases interpreting it would be an invitation to mischief – particularly if even the most marginal involvement with the plaintiff/patient would operate to blackball the physician as an expert in all cases. *Compare Phillips v. Ficarra*, 618 So. 2d at 314 (affirming refusal to strike testimony of doctor called by defense who saw plaintiff in the case only once).

The problem is not just one of numbers and how wide is the swath of physicians disqualified from acting as defense experts. Whether the number is five, fifty, five hundred or more than one thousand, it matters most who the disqualified physicians are. The fact that a physician holds a license does not make the individual an expert for purposes of the issues in the litigation, and, even if technically so qualified, does not make the doctor sufficiently articulate, credible and persuasive to be a viable testifying expert in litigation. AstraZeneca expects that there will be a relatively limited number of Florida physicians who have the experience and credentials in the relevant fields and the intangible qualities to be appropriate testifying experts in the courtroom. Like any defendant in a coordinated mass tort proceeding, AstraZeneca is entitled to have access to potential local experts who can assist AstraZeneca in presenting its defense in this litigation.

### C. To Avoid Any Potential Dispute, AstraZeneca Agrees To Abide By Those Additional "Precautions" Identified By Courts In Similar Circumstances To Further Ensure Against Disclosure Of Privileged Information

As part of its proposed order, AstraZeneca moves the Court to adopt – and agrees to abide by – certain additional precautions to ensure the confidentiality of privileged communications and confidential information protected by section 456.057. These safeguards are taken directly from the orders in both the *Prempro* and *Penile Prosthesis* litigation. As presented in AstraZeneca's attached proposed order, the Court should permit AstraZeneca to contact potential Florida experts under the following conditions:

1. AstraZeneca and its attorneys will not communicate with the physician-expert about any of his patients who are involved in or are likely to become involved in this MDL.

2. AstraZeneca and its attorneys cannot use a physician as an expert in case where that physician's patient is a plaintiff in that particular case.

3. AstraZeneca and its attorneys, before having any substantive communication with a prospective physician-expert, will provide the physician with this Order and will secure the physician's written acknowledgment that he/she has read the attached Memorandum to Physicians.[9]

This approach correctly applies Florida law in the context of a multi-case coordinated proceeding: It provides court-approved and time-tested safeguards to protect patients' rights while at the same time respects the rights of AstraZeneca to defend itself by presenting to the jury expert testimony from highly qualified doctors in the state.

## IV. CONCLUSION

For the foregoing reasons, this Court should grant AstraZeneca's motion and enter its proposed order.

DATED: February 29, 2008    Respectfully submitted,

*/s/ Stephen J. McConnell*

---

[9] The "Memorandum to Physicians" proposed by AstraZeneca is identical to the one approved and adopted by other courts in similar circumstances. *See Prempro* Order at 2 [Exh. B]; *In re Minnesota Penile Prosthesis Litig.*, No. PI 97-11183, Mem. to Urologists (Minn. Dist. Ct., May 11, 1998) [Exh. D]. Those courts accompanied their orders conditionally approving the defendants' ex parte communications with, and retention of, treating physicians as experts with such a memorandum – signed by the judge and to be signed by the doctors – which served to remind the physicians of the statutory basis for the physician-patient privilege and to admonish them that they must protect the confidential communications and records of individual patients. AstraZeneca attaches hereto a proposed memorandum to doctors, which it asks the Court to approve for us in this MDL.

>Stephen J. McConnell
>DECHERT LLP
>2929 Arch Street
>Philadelphia, PA  19103
>Telephone: (215) 994-4000
>Facsimile: (215) 994-2222
>Stephen.mcconnell@dechert.com
>
>Steven B. Weisburd
>DECHERT LLP
>300 West 6th Street, Suite 1850
>Austin, TX  78701
>Telephone:  (512) 394-3000
>Facsimile:  (512) 394-3001
>steven.weisburd@dechert.com
>
>*Counsel for AstraZeneca Pharmaceuticals LP and AstraZeneca LP*

## CERTIFICATE OF CONFERENCE PURSUANT TO M.D. FLA. L.R. 3.01(g)

I hereby certify that, on February 28-29, 2008, I conferred with plaintiffs' counsel regarding the relief requested in this motion.  The parties were unable to reach agreement.

/s/  Richard Josephson

## CERTIFICATE OF SERVICE

I hereby certify that, on February 29, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system through which all participating parties are deemed served.  I further certify that, by using the CM/ECF, the foregoing has been served on plaintiffs' liaison counsel, who is charged with serving any non-CM/ECF participants on the attached Service List.

/s/  Eliot Walker

13

## SERVICE LIST

### In Re: Seroquel Products Liability Litigation
### MDL Docket No. 1769

| | |
|---|---|
| Paul J. Pennock, Esq.<br>Michael E. Pederson, Esq.<br>Weitz & Luxenberg, P.C.<br>180 Maiden Lane - 17th Floor<br>New York, NY 10038<br>Telephone: (212) 558-5500<br>Ppennock@weitzlux.com<br>MPederson@weitzlux.com<br>*Plaintiffs' Lead Counsel* | Camp Bailey, Esq.<br>Michael W. Perrin, Esq.<br>Fletcher Trammell, Esq.<br>Bailey Perrin Bailey LLP<br>The Lyric Centre<br>440 Louisiana, Suite 2100<br>Houston, TX 77002<br>Telephone: (713) 425-7240<br>cbailey@bpblaw.com<br>mperrin@bpblaw.com<br>*Plaintiffs' Lead Counsel* |
| Larry Roth, Esq.<br>Law Offices of Larry M. Roth, P.A.<br>Post Office Box 547637<br>Orlando, FL 32854-7637<br>Telephone: (407) 872-2239<br>LROTH@roth-law.com<br>*Plaintiffs' Liaison Counsel* | Tommy Fibich, Esq.<br>Fibich, Hampton & Leebron, L.L.P.<br>1401 McKinney, Suite 1800<br>Five Houston Center<br>Houston, TX 77010<br>Telephone: (713) 751-0025<br>tfibich@fhl-law.com |
| Matthew F. Pawa, Esq.<br>Law Offices of Matthew F. Pawa, P.C.<br>1280 Centre St., Suite 230<br>Newton Centre, MA 02459<br>Telephone: (617) 641-9550<br>Mp@pawalaw.com | Robert L. Salim, Esq.<br>Robert L. Salim Attorney at Law<br>P.O. Box 2069<br>Natchitoches, LA 71457-2069<br>Telephone: (318) 352-5999<br>robertsalim@cp-tel.net |
| Keith M. Jensen, Esq.<br>Jensen, Belew & Gonzalez, PLLC<br>1024 North Main<br>Fort Worth, TX 76106<br>Telephone: (817) 334-0762<br>kj@kjensenlaw.com | Scott Allen, Esq.<br>Cruse, Scott, Henderson & Allen, L.L.P.<br>2777 Allen Parkway, 7th Floor<br>Houston, Texas 77019<br>Telephone: (713) 650-6600<br>sallen@crusescott.com |
| Matthew E. Lundy, Esq.<br>Lundy & Davis, LLP<br>333 North Sam Houston Parkway East<br>Suite 375<br>Houston, TX 77060<br>Telephone: (281) 272-0797<br>mlundy@lundydavis.com | E. Ashley Cranford<br>Whatley Drake & Callas<br>2001 Park Place North, Suite 1000<br>Birmingham, AL 35203<br>Telephone: (205) 328-9576<br>ACranford@wdklaw.com |

| | |
|---|---|
| Robert L. Ciotti, Esq.<br>Carlton Fields, P.A.<br>4221 W. Boy Scout Boulevard<br>Suite 1000<br>Tampa, FL 33607-5736<br>Telephone: (813) 223-7000<br>rciotti@carltonfields.com<br>***Attorney for Defendants AstraZeneca Pharmaceuticals, LP, and AstraZeneca LP*** | Gregory P. Forney, Esq.<br>Shaffer Lombardo Shurin<br>911 Main Street, Suite 2000<br>Kansas City, MO 64105<br>Telephone: (816) 931-0500<br>gforney@sls-law.com<br>rbish@sls-law.com<br>***Attorney for Defendant, Marguerite Devon French*** |
| Randy Niemeyer<br>22442 Pike 309<br>Bowling Green, MO 63334-5209<br>***Pro Se*** | Eric B. Milliken, Esq.<br>3 Sir Barton Ct.<br>Newark, DE 19702<br>***Pro Se*** |
| Catherine Solomon<br>3100 N.E. 83<br>Gladstone, MO 64119<br>***Pro Se*** | Louisiana Wholesale Drug Co. Inc.<br>C/O Gayle R. White<br>Registered Agent<br>Highway 167N<br>Sunset, LA 70584<br>***Pro Se*** |
| Aaron C. Johnson, Esq.<br>Summers & Johnson<br>717 Thomas<br>Weston, MO 64098<br>Telephone: (816) 640-9940<br>firm@summersandjohnson.com | Robert A. Schwartz, Esq.<br>Bailey & Galyen<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744<br>bschwartz@galyen.com |
| Todd S. Hageman, Esq.<br>Simon and Passanante, PC<br>701 Market St., Suite 1450<br>St. Louis, MO 63101<br>Telephone: (314) 241-2929<br>thageman@spstl-law.com | Mark P. Robinson, Jr., Esq.<br>Robinson, Calcagnie & Robinson<br>620 Newport Center Drive, 7th Floor<br>Newport Beach, CA 92660<br>Telephone: (949) 720-1288<br>mrobinson@robinson-pilaw.com |
| Thomas F. Campion, Esq.<br>Steven M. Selna, Esq.<br>Drinker Biddle & Reath, LLP<br>500 Campus Drive<br>Florham Park, New Jersey 07932-1047<br>Telephone: (973) 360-1100<br>Thomas.Campion@dbr.com<br>steven.selna@dbr.com<br>***Attorneys for Defendants Janssen Pharmaceutical Products and Johnson & Johnson Co.*** | Michael Davis, Esq.<br>James Mizgala, Esq.<br>Sidley Austin LLP<br>One South Dearborn<br>Chicago, IL 60603<br>Telephone:  (312) 853-7731<br>mdavis@sidley.com<br>jmizgala@sidley.com<br>***Attorneys for Defendants AstraZeneca LP and AstraZeneca Pharmaceuticals, LP*** |

| | |
|---|---|
| Elizabeth Raines, Esq.<br>Baker, Sterchi, Cowden & Rice, LLC<br>2400 Pershing Road, Suite 500<br>Kansas City, MO 64108<br>Telephone: (816) 471-2121<br>raines@bscr-law.com | Timothy Reese Balducci, Esq.<br>The Langston Law Firm, PA<br>P.O. Box 787<br>100 South Main Street<br>Booneville, MS 38829-0787<br>Telephone: (662) 728-3138<br>tbalducci@langstonlaw.com |
| Kenneth W. Bean, Esq.<br>Sandberg, Phoenix & von Gontard<br>One City Centre<br>15th Floor<br>St. Louis, MO 63101-1880<br>Telephone: (314) 231-3332<br>kbean@spvg.com<br>***Attorney for Defendant Dr. Asif Habib*** | John Driscoll, Esq.<br>Brown & Crouppen, PC<br>720 Olive St.<br>St. Louis, MO 63101<br>Telephone: (314) 421-0216<br>Jdriscoll@brownandcrouppen.com<br>asmith@brownandcrouppen.com<br>blape@brownandcrouppen.com |
| Aaron K. Dickey, Esq.<br>Goldenberg and Heller, PC<br>P.O. Box 959<br>2227 S. State Road 157<br>Edwardsville, IL 62025<br>Telephone: (618) 650-7107<br>aaron@ghalaw.com | Matthew J. Hamilton, Esq.<br>Pepper Hamilton<br>3000 Two Logan Square<br>18th & Arch Street<br>Philadelphia, PA 19103<br>Telephone: (215) 981-4000<br>hamiltonm@pepperlaw.com |
| Justin Witkin, Esq.<br>Ken Smith, Esq.<br>Aylstock, Witkin & Sasser, PLC<br>4400 Bayou Boulevard<br>Suite 58<br>Pensacola, FL 32503<br>Telephone: (850) 916-7450<br>Jwitkin@AWS-LAW.com<br>ablankenship@aws-law.com<br>ksmith@aws-law.com<br>noverholtz@aws-law.com | David P. Matthews, Esq.<br>Lizy Santiago, Esq.<br>Matthews & Associates<br>2905 Sackett Street<br>Houston, TX 77098<br>Telephone: (713) 222-8080<br>dmatthews@thematthewslawfirm.com<br>lsantiago@thematthewslawfirm.com<br>msalazar@thematthewslawfirm.com |
| Howard Nations<br>Lori A. Siler<br>Howard L. Nations Attorney At Law<br>4515 Yoakum Blvd.<br>Houston, TX 77006-5895<br>Telephone: (713) 807-8400<br>nations@howardnations.com | Mary B. Cotton<br>John D. Giddens, P.A.<br>226 North President Street<br>P.O. Box 22546<br>Jackson, MS 39225-2546<br>Telephone:  (601) 355-2022<br>betsy@law-inc.com |
| Salvatore M. Machi<br>Ted Machi & Associates PC<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744 | Jona R. Hefner, Esq.<br>3441 W. Memorial, Suite 4<br>Oklahoma City, OK 73134-7000<br>Telephone: (405) 286-3000<br>attorneyokc@hotmail.com |

| | |
|---|---|
| David Dickens<br>Miller & Associates<br>105 North Alfred Street<br>Alexandria, VA  22314-3010<br>(703) 519-8080<br>ddickens@doctoratlaw.com | Pete Schneider, Esq.<br>Grady, Schneider & Newman, L.L.P.<br>801 Congress, 4th Floor<br>Houston, TX  77002<br>(713) 228-2200<br>pschneider@gsnlaw.com |
| Fred T. Magaziner<br>Marjorie Shiekman<br>A. Elizabeth Balakhani<br>Shane T. Prince<br>Eben S. Flaster<br>DECHERT LLP<br>Cira Centre<br>2929 Arch Street<br>Philadelphia, PA  19103<br>(215) 994-4000<br>fred.magaziner@dechert.com<br>shane.prince@dechert.com<br>marjorie.shiekman@dechert.com<br>eben.flaster@dechert.com<br>elizabeth.balakhani@dechert.com | Lawrence J. Gornick, Esq.<br>William A. Levin, Esq.<br>Dennis J. Canty, Esq.<br>Levin Simes Kaiser & Gornick LLP<br>44 Montgomery Street, 36th Floor<br>San Francisco, CA 94104<br>Telephone: (415) 646-7160<br>lgornick@lskg-law.com<br>dcanty@lskg-law.com<br>lsimes@levins-law.com<br>jkaiser@lskg-law.com<br>echarley@lskg-law.com<br>ddecarli@lskg-law.com<br>bsund@lskg-law.com<br>astavrakaras@lskg-law.com |
| Scott Burdine, Esq.<br>Hagans Burdine Montgomery<br>Rustay & Winchester, P.C.<br>3200 Travis, Fourth Floor<br>Houston, TX  77006<br>Telephone:  (713) 222-2700<br>sburdine@hagans-law.com | Lowell Finson<br>Phillips & Associates<br>3030 North 3rd Street<br>Suite 1100<br>Phoenix, AZ 85012<br>(602) 258-8900, ext. 295<br>lowellf@phillipslaw.ws |
| Gale D. Pearson<br>Stephen J. Randall<br>Pearson, Randall & Schumacher, P.A.<br>Fifth Street Towers, Suite 1025<br>100 South 5th Street<br>Minneapolis, MN 55402<br>(612) 767-7500<br>attorneys@outtech.com | Robert H. Shultz<br>Heyl, Royster<br>103 West Vandalia Street<br>P.O. Box 467<br>Edwardsville, IL 62025<br>(618) 656-4646<br>rshultz@hrva.com<br>bwallace@hrva.com |
| Ellen R. Serbin<br>Perona, Langer, Beck, Lalande & Serbin<br>300 San Antonio Drive<br>Long Beach, CA 90807-0948<br>(562) 426-6155<br>davidhwang@plblaw.com | Scott Armstrong<br>1719 West Main Street<br>Suite 201<br>Rapid City, SD 57702<br>(605) 399-3994<br>scottarmstrong1235@eathlink.net |

| | |
|---|---|
| Linda S. Svitak<br>Faegre & Benson, LLP<br>90 South 7th Street, Suite 2200<br>Minneapolis, MN 55402-3901<br>(612)766-7000<br>lsvitak@faegre.com<br>wjohnson@faegre.com | James J. Freebery<br>McCarter & English, LLP<br>919 N. Market Street, 18th Floor<br>Wilmington, DE 19801<br>(973) 622-4444<br>jfreebery@mccarter.com<br>tpearson@mccarter.com |
| Richard D. Hailey<br>Ramey & Hailey<br>3891 Eagle Creek Parkway<br>Suite C<br>Indianapolis, IN<br>(317) 299-0400<br>rhailey@sprynet.com | B. Andrew List<br>Clark, Perdue, Arnold & Scott<br>471 East Broad Street, Suite 1400<br>Columbus, OH 43215<br>(614) 469-1400<br>alist@cpaslaw.com<br>lcollins@cpaslaw.com |