# Exhibit E

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| In re: | § | MDL Docket No. 4:03CV1507WRW |
| | § | |
| PREMPRO PRODUCTS LIABILITY | § | |
|     LITIGATION | § | ALL CASES |

PLAINTIFFS' RESPONSE TO

DEFENDANTS' SUBMISSION RE
<u>RETENTION OF PHYSICIAN EXPERTS</u>

Plaintiffs do not deny that case law permits Defendants to designate and call a Plaintiff's treating physician as an expert witness at trial. However, that is the sum total that has been approved by the courts in the cases cited by Defendants. A very different issue is the one currently before the Court: can a Defendant hire the Plaintiff's treating physicians as consultants and retained experts so the Defendant can then interview such doctors *ex parte*. Not a single cited case so held. Indeed, courts have consistently limited Defendants to (a) conducting written discovery or depositions of treating physicians, (b) calling to trial (but not hiring) treating physicians and (c) retaining and paying non-treating doctors.

An order allowing Defendants to pay and secretly meet with Plaintiffs' doctors outside of the presence of the Plaintiffs would seriously undermine the physician-patient relationship because (1) Plaintiffs would lose confidence in their doctors and refrain from unfettered communication with them, notwithstanding Defendants' promises of proper behavior, (2) Plaintiffs would lose enjoyment of the physicians' fiduciary obligation to them, which includes their doctors refraining from any act that would

-1-

benefit their patients' adversaries, (3) Plaintiffs' confidential communications would be disclosed because Defendants could easily match physicians' descriptions of their practice with the particular Plaintiffs involved based on the records Defendants have obtained and (4) *ex parte* meetings are inherently subject to abuse.

### I. No Case Supports Defendants' Claim that They Should Be Permitted to Hire Plaintiffs' Own Treating Doctors as Consultants.

Deposing and designating a plaintiff's physician to testify at trial are a far cry from putting the doctor on the company payroll. Some cases Defendants cite have approved of the former, but none have approved of the latter. Not only does Arkansas law recognize the physician-patient relationship as sacrosanct, it prohibits *ex parte* communications with the adversary's physicians in procedural and evidentiary rules.[1]

Defendants make two arguments in an effort to overcome the strong mandate of these rules. First, Defendants note that multiple Arkansas cases have held that parties may designate their adversary's physicians as experts. However, none of those cases permitted *ex parte* meetings with the physicians, notwithstanding the party's ability to designate the doctor as a trial expert.

*Grambling v. Jennings*[2] and *Cathey v. Williams*[3] did not even address the issue. *Grambling* simply held that a physician expert's conclusory statement that the defendant was not negligent is inadmissible, whereas *Cathey* merely held that a general

---

[1] See ARK. R. CIV. P. 35(c)(2); ARK. R. EVID. 503(d)(3)(B). Plaintiffs have already fully briefed this issue (Docket No. 109) and the Court has prohibited *ex parte* interviews of Plaintiffs' treating physicians (Order, March 16, 2004 at 4, Docket No. 176).

[2] 625 S.W.2d 463 (Ark. 1981)(Defs' Submission at 2-3)

[3] 718 S.W.2d 98 (Ark. 1986).

practitioner may be qualified to testify as to the standard of care for a specialist. Neither court addressed whether the defendants had the right to use the doctors as experts, undoubtedly because the litigants never raised the issue. The decisions therefore cannot be deemed precedent for Defendant's position.[4] Further, there is no indication in either decision that *ex parte* communication took place.

Defendants' citation to *Goodwin v. Harrison*[5] is misplaced. While that court allowed the defendant to call the plaintiff's physician as a trial witness, the court expressly held that it was not approving *ex parte* communications with the physician.

> Many of the cases cited by the appellant deal with a different issue which is not now before us: whether it is proper for defense counsel to have *ex parte* communications with the plaintiff's treating physicians.[6]

Defendants' reliance on *Kraemer v. Patterson*[7] is also misplaced because the Arkansas Supreme Court in that case expressly forbad *ex parte* communications, <u>even with safeguards to ensure the physician did not discuss his treatment of the plaintiff</u>. *Kraemer* thus provides strong support for rejecting Defendants' requested relief. In *Kraemer*, the parents of a child with a birth defect sued Doctor 1 for failing to diagnose the defect. Doctor 1 sought to call as an expert Doctor 2 who subsequently performed

---

[4] Defendants claim the decisions approved the practice of designating the adversary's physicians *sub silentio* (Defs' Submission at 2-3). "Sub silentio," which means "under silence" (BLACK'S LAW DICTIONARY 1248 (6th ed. 1990) is a doctrine stating that a decision that is inconsistent with a prior decision by the same or a lesser court will be deemed to overrule the prior decision even if such is not expressly stated. The doctrine does not establish a decision as precedent on an issue that was neither raised to nor discussed by the Court.

[5] 780 S.W.2d 518 (Ark. 1989)(cited in Defendant's Submission at 3).

[6] *Id.* at 523.

[7] 29 S.W.3d 684 (Ark. 2000)(cited in Defendant's Submission at 3).

-3-

surgery on the mother to prevent her from having additional children. The intermediate appellate court approved *ex parte* communications between the defendant and Doctor 2 with restraints almost identical to those Defendants claim will exist here. In particular, the defendant could not discuss Doctor 2's treatment of the wife and could not testify about any services provided to the wife. The court even required the defendant to ensure the plaintiff's counsel was present for any meetings.[8] The Supreme Court nonetheless reversed, concluding that Arkansas law prohibits any *ex parte* communications, with or without restrictions.

> We hold, therefore, that Rule 503(b)(3)(B) by its plain language forbids *ex parte* communication with the patient's physician in the absence of the patient's consent. Further, because the Rule also denies the court the authority to compel the patient's consent, we also hold that the trial court erred in authorizing *ex parte* communication between Dr. Cloud and defense counsel without the plaintiff's consent. A writ of certiorari lies only where it is apparent on the face of the record that there has been a plain, manifest, clear, and gross abuse of discretion, and there is no other adequate remedy. Here it is apparent from the pleadings and the court's order that the court's order was inconsistent with the express language of the rule.[9]

Finally, Defendants erroneously rely on *Harlan v. Lewis*,[10] claiming that even though that court actually sanctioned the defendant's lawyer for *ex parte* meetings with the plaintiff's physicians, the court nonetheless permitted the physicians to testify. However, Judge Woods prohibited the defendant from designating the doctors as "defense experts," required the defendant to turn over all "notes, records, transcripts

---

[8] *Id.* at 685.

[9] *Id.* at 690.

[10] 141 F.R.D. 107 (E.D. Ark. 1992), *aff'd*, 982 F.2d 1255 (8th Cir.), *cert. denied*, 510 U.S. 828 (1993)(cited in Defendant's Submission at 3).

and recordings" relating to interviews with the doctors and permitted the plaintiff's counsel to attend all future meetings.[11] This is a far cry from what Defendants are proposing here.

In short, the fact that Defendants may depose Plaintiffs' physicians and, if pleased with their testimony, call them to trial as expert witnesses does not permit Defendants to hire and consult with the doctors *ex parte*.

Defendants next claim that their request is unique in that they seek to have the doctors testify in cases other than the plaintiff's case. In other words, although Defendants have consistently taken action to ensure that cases filed throughout the nation are all consolidated into a single proceeding for all pretrial rulings, they are now taking the position that each case is separate and distinct – that one has no bearing on the other. Rest assured, if this Court were to grant Defendants the relief they seek, Defendants would cite the testimony of various plaintiffs' physicians as support for dispositive motions (such *Daubert* motions to exclude a theory of causation) that would involve all cases, including those of the physicians' patients.

II. **Permitting Defendants to Hire Plaintiffs' Own Doctors to Assist the Companies in Defending Hormone Therapy Claims Would Severely Undermine the Physician-Patient Relationship.**

Defendants' submission attempts to carve out exceptions to a physician's duty of loyalty. The doctor may be paid by and help his patient's adversary in some ways but not in others. Some communications are sacred; others are not. But the physician-patient privilege is more than just an equation outlining what is and is not privileged

---

[11] *Id.* at 113-114.

information. The privilege exists to ensure the Plaintiff maintains utmost confidence and trust in her doctor so she feels comfortable disclosing all information that may, in any way, be relevant to her health. As Judge Woods wrote:

> The purpose of the physician-patient privilege is to enable the patient to secure complete and appropriate medical treatment by encouraging candid communications between patient and physician, free from fear of possible embarrassment and invasion of privacy engendered by an unauthorized disclosure of information.[12]

### A. *Ex Parte* Consultation with Plaintiffs' Treating Physicians Would Undermine Plaintiffs' Confidence and Trust in Their Physicians.

Defendants' assertion that this will not occur so long as the doctor is designated in Cause Nos. 1-901 but not a specific Plaintiff's Cause No. 902 is naïve. The doctor's testimony can and will be used to resolve common matters – by Defendant's own admission. None of this will be lost on the Plaintiff, particularly given her attorney's duty of candor in answering her questions about what the Court's ruling would mean to her. Knowing that her own physician has been retained to testify in favor of Defendants would certainly stifle a woman's right to open and candid communications with her own physician. In the back of the patient's mind, she would wonder what she should or should not tell the doctor. The very fact that women would be placed in a position of imagining what they should and should not tell their physicians means the physician-patient privilege has been undermined. And this is not to mention the inherent lack of trust a gravely ill woman would have in a doctor hired by her adversary to say the company did nothing wrong.

---

[12] *Harlan*, 141 F.R.D. at 110 (citations omitted).

### B. *Ex Parte* Communication Would Undermine a Physician's Fiduciary Duty to His Patient.

A physician's fiduciary duty to his patient is broad, and includes both testifying on her behalf as needed and taking no action to assist her legal adversaries.

> We are of the opinion that members of a profession, especially the medical profession, stand in a confidential or fiduciary capacity as to their patients. They owe their patients more than just medical care for which payment is exacted; there is a duty of total care; that includes and comprehends a duty to aid the patient in litigation, to render reports when necessary and to attend court when needed. That further includes a duty to refuse affirmative assistance to the patient's antagonist in litigation. The doctor, of course, owes a duty to conscience to speak the truth; he need, however, speak only at the proper time.[13]

Regardless of what cause number officially contains an expert designation with the treating physician's name, the physician is aiding his patient's adversary, in direct violation of this duty. Moreover, it is difficult to envision a doctor, hired by a defendant, providing needed testimony on behalf of the plaintiff. One can hardly be assured a doctor will provide candid testimony supporting his patient's claims if he is being paid a retainer and hourly rate to be available to consult with a defendant as needed. Granted, if the doctor is subpoenaed for deposition or trial testimony, he must be truthful. But as *Alexander* held, he must not volunteer his services to his patient's adversary.

---

[13] *Alexander v. Knight*, 177 A.2d 142, 146 (Pa. Super. 1962). The Western District of Arkansas cited *Alexander* and the district court decision in *Harlan* as the seminal decisions on the impropriety of *ex parte* communication in *King v. Ahrens*, 798 F. Supp. 1317, 1373 (W.D. Ark. 1992). While *King* approved such communication, the court's reasoning was subsequently rejected by both the Eighth Circuit in *Harlan* and the Arkansas Supreme Court in *Kraemer*. *See* cases cited *supra*.

### C. *Ex Parte* Communication Would Reveal Confidential Information Because Defendants Would Have Little Difficulty Ascertaining Patient Identity.

A treating physician's value as an expert is the physician's practice – the fact that he has real world experience on matters that are merely hypothetical to an academic. The doctor's value as a consultant depends upon the nature of his practice. Any communications between Defendants and a Plaintiff's treating physician will necessarily involve a discussion of the doctor's experience with patients. At best, the doctor can speak of his patients without overtly revealing their identities. However, in these consolidated proceedings, it would not be difficult for Defendants to use the medical records and fact sheets at their disposal to figure out which patient a doctor is speaking of during many of those conversations. The details of the doctor's description can be matched with the details on the records Defendants possess. In essence, it is impossible for physicians to engage in *ex parte* communications without, in many instances, revealing precisely the information that enables Defendants to ascertain the identity of the patient being discussed.

### D. The Retention of Treating Physicians Would Interfere with the Physician-Patient Relationship by Constraining the Subjects on which the Physician and Patient Can Speak.

Were Defendants allowed to retain Plaintiffs' physicians as consultants, Defendants would undoubtedly argue that their discussions with those doctors are off limits to Plaintiffs. This would mean that both Plaintiffs and physicians would have to second-guess what they speak about during appointments and treatment. That would

-8-

hardly constitute the unfettered and "candid" communication protected by the physician-patient privilege.[14]

### E. *Ex Parte* Communication Is Subject to Abuse.

Each of the preceding breaches of physician-patient privilege presupposes that Defendants, Defendants' attorneys and the doctors were to do everything in their power to honor physician-patient privilege and follow the Court's instructions. Each of the above breaches would occur even if everyone was following the rules. But everyone would not follow the rules if permitted to engage in unchecked, secret communication.

Judge Woods recognized that physicians would have difficulty following the rules even if their intent was benign. That is because they would have trouble grasping the legal implications of what they said.

> The physician, largely unschooled in legal matters, cannot by expected to make the sometimes difficult determination of what matters are relevant to the plaintiff's claims. The participation of both parties' counsel in formal discovery will help to insure that these questions are resolved to the satisfaction of both parties or that more intractable problems are submitted to the trial court for its impartial determination.[15]

If a physician were to tread into unauthorized ground, it is difficult to imagine attorneys for another party steering him in the right direction or cutting him off before he made statements that could potentially benefit their clients.

The general prohibition on *ex parte* communication exists precisely to prevent attorneys and physicians alike from covertly communicating about private matters they are not authorized to discuss. Were Defendants' promise that they will refrain from

---

[14] See *Harlan*, 141 F.R.D. at 109.

[15] *Id.* at 112.

-9-

discussing a patient's particular case deemed trustworthy on its face, then the long line of cases eschewing such communications would not exist.

It is impossible to reconcile Defendant's argument that they would keep mum about any plaintiff because of their status as officers of the court with their claim that Plaintiffs' lawyers would abuse the system if *ex parte* communication were not allowed. On the one hand, Defendants claim their own counsel will act appropriately because, after all, "Both physicians and lawyers are professionals, subject to discipline if they abuse the occasion."[16] Yet, just two pages earlier, Defendants describe Plaintiffs' attorneys as being subject to "mischief," prone to "blackball[ing]" and "checkmating" physicians.[17] In fact, there is a significant difference. Any abuse by Plaintiffs' counsel is easily checked whereas abuse by defense counsel cannot be. Indeed, the temptation to exceed restrictions on communication is greatest when the communication is performed completely in secret, without the adversary or the court present. By contrast, if Plaintiffs' attorneys file frivolous lawsuits, as Defendants suggest they might, those attorneys are subject to sanctions for such pleadings.

Finally, if there has been any "mischief" in the system, history has shown it to involve pharmaceutical defendants' concerted efforts to retain many, if not all, of the available specialists in the community in which proceedings are centralized -- thereby precluding their use by Plaintiffs. Historically, those doctors are paid a retainer, sent some basic material and never consulted again by the defendants. Clearly, this

---

[16]  Defendants' Submission at 9.

[17]  Defendants Submission at 7-8.

-10-

strategy should not be permitted at the expense of a Plaintiff's ability to have an unfettered relationship with her own physician.

### III. DEFENDANTS' NEED TO PRESENT EXPERT TESTIMONY DOES NOT TRANSLATE INTO A NEED TO HAVE *EX PARTE* MEETINGS WITH TREATING PHYSICIANS.[18]

Defendants cite Judge Woods' ruling in *Harlan* as proof of their need to hire and consult with Plaintiffs' own doctors.[19] But in the very passages they cite, Judge Woods wrote only that the defendant in that case should be allowed to call those doctors as expert witnesses at trial. He did not state that the defendants needed to consult with those doctors. In fact, he specifically opposed such contact.

Therein lies the problems with Defendants' position. Defendants are free to call any or all of Plaintiffs' treating physicians as experts at trial. Depositions may very well reveal that there are treating physicians who support Defendants' various positions. Defendants may call these doctors as expert witnesses at any trial, including the trial of the doctors' own patients. Defendants are simply prohibited from communicating with those doctors in secret. And Defendants are free to consult with any non-treating physicians, of which there are many, both within and outside Little Rock, Arkansas.

---

[18] To the extent this is even necessary, Plaintiffs object to the declaration of Lynn Pruitt (Exhibit 1 to Defendants' Submission) as conclusory. Ms. Pruitt's statements about the limited number of doctors on Defendants' "short list" (whatever that means) and the prejudice Defendants will supposedly experience if the status quo is maintained are without foundation.

[19] Defendants' Submission at 6.

-11-

## **CONCLUSION**

The sacrosanct nature of the physician-patient relationship must prevail over Defendants' desire to have no restraint at all on their ability to hire and hold *ex parte* meetings with Plaintiffs' treating physicians. Defendants can elicit opinions from those doctors that may be favorable to their cause. But they must use the normal channels of discovery to do so. *Harlan v. Lewis* and its progeny would have little meaning if Defendants were able to circumvent its restrictions merely by putting any doctor they wish to consult with in secret on the payroll.

Dated: September 12, 2005

Respectfully submitted,

/s/ Russell Marlin
_____
Russell D. Marlin
William Gary Holt
GARY EUBANKS & ASSOCIATES
708 West Second Street
Post Office Box 3887
Little Rock, Arkansas 72203-3887

Liaison Counsel for Plaintiffs

-12-

**CO-LEAD COUNSEL ON BEHALF**
**OF PERSONAL INJURY PLAINTIFFS**

Ms. Zoe Littlepage
Littlepage Booth
408 Westheimer Street
Houston, Texas 77006
Phone: (713) 529-8000
FAX: (713) 529-8044

### Certificate of Service

     I hereby certify that a copy of the foregoing document was served according to this Court's provisions for service as set forth in the pretrial orders and sent to the following counsel of record as indicated below on the 12th of September, 2005.

                                                                         /s/ Russell Marlin
                                                              _____
                                                            Russell Marlin / Gary Holt

**VIA ECF AND E-MAIL**
**FOR SERVICE ON ALL DEFENSE COUNSEL**

Ms. Lynn Pruitt
Mitchell, Williams, Selig, Gates & Woodyard
425 West Capitol, Suite 1800
Little Rock, Arkansas 72201
DEFENDANTS' LIAISON COUNSEL

-13-

**VIA ECF AND SERVICE THROUGH LIAISON COUNSEL
TO THE FOLLOWING COUNSEL**

| | |
|---|---|
| John W. Vardaman: jvardaman@wc.com<br>Lane Heard: lheard@wc.com<br>Williams & Connolly, LLP<br>725 12th Street N.W.<br>Washington, D.C. 20005<br>NATIONAL COUNSEL FOR WYETH DEFENDANTS | Linda Svitak<br>Faegre & Benson, LLP<br>2200 Wells Fargo Center<br>90 South Seventh Street<br>Minneapolis, Minnesota 55402<br>NATIONAL COUNSEL FOR NOVARTIS DEFENDANTS |
| Jay Mayesh<br>Liza Karsai<br>Kaye Scholer LLP<br>425 Park Avenue<br>New York, NY 10022<br>NATIONAL COUNSEL FOR PFIZER DEFENDANTS | Beth Deere<br>Williams & Anderson, PLC<br>111 Center Street, 22nd Floor<br>Little Rock, AR 72201<br>LOCAL COUNSEL FOR NOVARTIS DEFENDANTS |
| Elizabeth Murray<br>Friday Eldredge & Clark<br>2000 Regions Center<br>400 West Capitol<br>Little Rock, AR 72201-3493<br>LOCAL COUNSEL FOR PFIZER DEFENDANTS | K. C. Green<br>Dinsmore & Shohl, LLP<br>255 East Fifth Street<br>Suite 1900<br>Cincinnati, OH 45202<br>NATIONAL COUNSEL FOR WATSON AND AVENTIS DEFENDANTS |
| Brian Troyer<br>Thompson Hine<br>3900 Key Center<br>127 Public Square<br>Cleveland, Ohio 44114<br>NATIONAL COUNSEL FOR SOLVAY DEFENDANTS | Robert Sparks<br>Dechert LLP<br>30 Rockefeller Plaza<br>New York, NY 10112<br>NATIONAL COUNSEL FOR ORTHO MCNEIL DEFENDANTS |
| John Moore<br>Huckaby, Munson, Rowlett & Moore<br>Regions Center, Suite 1900<br>400 West Capitol<br>Little Rock, AR 72201-3436<br>LOCAL COUNSEL FOR SOLVAY DEFENDANTS | J. Andrew Vines<br>Alston Jennings<br>Wright, Lindsey & Jennings<br>200 West Capitol Avenue, Suite 2300<br>Little Rock, Arkansas 72201<br>LOCAL COUNSEL FOR ORTHO MCNEIL AND AVENTIS DEFENDANTS |
| Matthew Brammer<br>Gina Saelinger<br>Joseph Thomas<br>Ulmer & Berne, LLP<br>600 Vine Street, Suite 2800<br>*Cincinnati, Ohio 45202* | Daniel Donahue<br>Herzog Crebs<br>One City Center<br>515 North Sixth Street, 24th Floor<br>St. Louis, Missouri 63101<br>NATIONAL COUNSEL FOR MYLAN |

| | |
|---|---|
| NATIONAL COUNSEL FOR BARR DEFENDANTS | PHARMACEUTICALS DEFENDANTS |
| Glenn W. Jones<br>Barber, McCaskill, Jones & Hales, P.A.<br>400 W. Capitol, suite 2700<br>Little Rock, AR 72201<br>LOCAL COUNSEL FOR BARR AND ELAN DEFENDANTS | Stuart Feinblatt<br>Sills Cummins Epstein & Gross, P.C.<br>One Riverfront Plaza<br>Newark, NJ 07102-5400<br>NATIONAL COUNSEL FOR ORGANON DEFENDANTS |
| John Winter<br>Patterson, Belknap, Webb & Taylor, LLP<br>1133 Avenue of the Americas<br>New York, NY 10036-6710<br>NATIONAL COUNSEL FOR GALEN DEFENDANTS AND WARNER CHILCOTT | David McDonald<br>Amy Harris<br>David Colley<br>McCauley, MacDonald & Devin<br>3800 Renaissance Tower<br>1201 Elm Street<br>Dallas, Texas 75270-2084<br>NATIONAL COUNSEL FOR GALLIPOT DEFENDANTS |
| Paul Wood<br>Quattlebaum, Grooms, Tull & Burrow, PLLC<br>111 Center Street, Suite 1900<br>Little Rock, Arkansas 72201<br>LOCAL COUNSEL FOR GALEN DEFENDANTS AND WARNER CHILCOTT AND VALEANT PHARMACEUTICALS AND MONARCH AND KING AND AMARIN | Chad Graddy<br>Baker, Donelson, Bearman, Caldwell & Berkowitz, PC<br>165 Madison Avenue, Suite 1900<br>Memphis, TN 38103<br>NATIONAL COUNSEL FOR KING PHARMACEUTICALS |
| Alan Vickery<br>Sedgwick, Detert, Moran & Arnold, LLP<br>1717 Main Street, Suite 5400<br>Dallas, Texas 75202<br>NATIONAL COUNSEL FOR BRISTOL – MYERS DEFENDANTS | Alan Winchester<br>Harris Beach<br>805 Third Avenue<br>New York, NY 10022<br>NATIONAL COUNSEL FOR ELAN PHARMACEUTICALS |
| M. Samuel Jones<br>Scott Irby<br>Roger Glasgow<br>Wright, Lindsey & Jennings, LLP<br>200 West Capitol Avenue, Suite 2300<br>Little Rock, AR 72201-3699<br>LOCAL COUNSEL FOR BRISTOL – MYERS DEFENDANTS | Deidre Gallagher<br>Fox Galvin, LLC<br>One Memorial Drive, Eighth Floor<br>St. Louis, Missouri 63102<br>NATIONAL COUNSEL FOR ABBOT LABS |
| Scott Allen<br>Cruse, Scott, Henderson & Allen<br>2777 Allen Parkway, 7th Floor<br>Houston, Texas 77019<br>LIAISON COUNSEL FOR PHYSICIAN | Russell Thornton<br>Stinnett Thibaud & Remington, LLP<br>4800 Fountain Place<br>1445 Ross Avenue<br>Dallas, Texas 75202 |

| DEFENDANTS | COUNSEL FOR PHYSICIAN DEFENDANTS |
|---|---|
| M. King Hill<br>Venable LLP<br>210 Allegheny Avenue<br>PO Box 5517<br>Towson, Maryland 21285<br>NATIONAL COUNSEL FOR ABBOT LABS | Joseph Babington<br>Russell Buffkin<br>Louisa Stockman<br>Helmsing, Leach, Herlong, Newman & Rouse, PC<br>PO Box 2767<br>Mobile, Alabama 36652<br>NATIONAL COUNSEL FOR SMITH KLINE BEECHAM |
| Jim Julian<br>Chisenhall, Nestrud & Julian, PA<br>400 West Capitol, Suite 2840<br>Little Rock, AR 72201<br>LOCAL COUNSEL FOR ABBOT LABS | Susan Sharko<br>Drinker, Biddle & Reath LLP<br>500 Campus Drive<br>Florham Park, NJ 07932-1047<br>NATIONAL COUNSEL FOR BERLEX |
| Sam Blair<br>Baker, Donelson, Bearman, Caldwell & Berkowitz<br>165 Madison Avenue, Suite 200<br>Memphis, TN 38103<br>NATIONAL COUNSEL FOR MONARCH AND KING DEFENDANTS | Patrick Lysaught<br>Baker Sterchi Cowden & Rice LLC<br>Crown Center<br>2400 Pershing Road, Suite 500<br>Kansas City, MO 64108-2504<br>NATIONAL COUNSEL FOR NOVO NORDISK |
| Deborah Denton<br>Watts, Donovon & Tilley, P. A.<br>200 South Commerce Street, Suite 200<br>Little Rock, AR 72201-1769<br>LOCAL COUNSEL FOR NOVO NORDISK | Clem Trischler<br>Pietragallo, Bosick & Gordon<br>The Thirty-Eighth Floor<br>One Oxford Centre<br>Pittsburgh, PA 15219<br>ADDITIONAL COUNSEL FOR MYLAN PHARMACEUTICALS DEFENDANTS |
|  |  |

-16-