# Exhibit F

| | | |
|---|---|---|
| STATE OF MINNESOTA | FILED PSL | DISTRICT COURT |
| COUNTY OF HENNEPIN | APR 22 | FOURTH JUDICIAL DISTRICT |

In re AMS Minnesota Penile Prosthesis Litigation : No. PI 97-11183

## DEFENDANT'S MEMORANDUM OF LAW
## REGARDING EXPERT UROLOGISTS

This motion raises an issue concerning expert urologists which the Court explicitly left open at the status conference on October 23, 1997 (Tr. at 23-24).

AMS seeks to retain as experts the eight urologists who have previously served as retained experts for AMS in the past five years. None of these eight urologists is the treating physician for any of the 20 plaintiffs selected for full discovery.

Plaintiffs assert that AMS should be prohibited from retaining any of the 675 urologists who have treated the 719 plaintiffs who have filed actions in Minnesota. As shown below, however, there is no legal prohibition against a physician being retained in a case not involving one of his own patients.

AMS would be severely prejudiced if it could not use any of the 675 urologists. These 675 urologists include the eight urologists whom AMS has retained as litigation experts in the past five years. If AMS cannot use any of the eight urologists whom AMS had previously used in the past five years, the Court and jury will be deprived of testimony from those urologists who are most qualified to testify about the medical devices at issue in this case.

## ARGUMENT

I. **THIS COURT AND THE JURY WILL BE DEPRIVED OF IMPORTANT INFORMATION, AND AMS WILL BE SEVERELY PREJUDICED, IF PLAINTIFFS' PROPOSAL IS ACCEPTED**

In the past five years AMS has utilized eight urologists as expert witnesses in its product liability cases around the country: Dr. Irving J. Fishman, Dr. William Furlow, Dr. Robert Kessler, Dr. L. Dean Knoll, Dr. Terrence Malloy, Dr. Drogo Montague, Dr. John J. Mulcahy and Dr. Carlos Nazir. Johnson Aff. ¶ 3. Each of these eight urologists was retained by AMS as litigation experts before any of the Minnesota cases were filed. *Id.* ¶ 4. One of these eight urologists, Dr. Malloy, already submitted an expert affidavit for AMS in this very litigation in connection with AMS' forum non conveniens motion. See Ex. A. Each of these eight urologists has served as an investigator in clinical trials for AMS penile prostheses and each has implanted a large number of penile prostheses. Johnson Aff. ¶ 4. All but one have been teaching professors at prestigious medical schools and have published numerous articles in the medical literature about penile prostheses, and the eighth has implanted more AMS penile prostheses than any urologist in active practice. *Id.* None of the eight is a treating physician for any of the 20 selected plaintiffs. *Id.*

In short, the 675 urologists who have treated the plaintiffs in these cases include those urologists who are best qualified to testify about AMS penile prostheses. If AMS is not permitted to retain any of them as experts, including its pre-existing experts, it will be forced to use urologists with less experience with AMS penile prostheses. In effect, plaintiffs' counsel would be allowed to insulate the leading physician-experts from testifying for AMS in these cases simply because, through advertising, they solicited a large number of clients and aggregated all of their cases in one forum. If plaintiffs are allowed to succeed, the Court and the jury would be deprived of vital evidence, and AMS would be severely prejudiced.

Plaintiffs, in contrast, will not be prejudiced. At this point in time, AMS proposes to retain only urologists who have previously served as AMS experts.[1] Again, none of the eight experts is a treating physician for the 20 plaintiffs whose cases will be tried, so that no treating physician will be used as a defense expert in a case involving his own patient.

Plaintiffs' counsel has argued that these urologists would have a "conflict of interest" because they would be taking positions that are contrary to the litigation objectives of their patients who are plaintiffs in these cases. However, a treating physician is not an expert for the plaintiff, but a fact witness. As a fact witness, the treating physician owes no duty to support his patient's position; his only duty is to testify truthfully and to respect the doctor-patient privilege.

Moreover, these eight urologists have already been experts for AMS in other cases in recent years (one of them in this case). Accordingly, AMS has already discussed urological issues with them in the context of litigation, and no prejudice can result from further discussions. There is nothing unfair about permitting these urologists to present their opinions to a Minnesota jury, as they have done in cases outside of Minnesota.

## II. THERE IS NO PROHIBITION AGAINST RETAINING A UROLOGIST AS AN EXPERT IN A CASE NOT INVOLVING THE UROLOGIST'S OWN PATIENT

This Court has ruled that the 719 cases against AMS are individual actions. Because each case is separate and distinct, there is no legal restriction on AMS' right to retain a urologist who happens to have some patient who filed an action against AMS in this Court, to testify as an expert in a different case not involving his patient. That is all AMS seeks to do.

AMS' retention of urologists who would testify only in cases not involving their own patients would not violate Minn. Stat. Ann. § 595.02(1)(d), the statutory physician-patient privilege. That statute provides that a physician "shall not, without the consent of the patient, be allowed to disclose any information or any opinion based thereon which the professional

---

[1] AMS does not know the availability of these eight urologists. AMS reserves the right to seek to expand beyond the eight if the need should arise.

3

acquired in attending the patient in a professional capacity, and which was necessary to enable the professional to act in that capacity." The purpose of the statute is to protect all "confidential communications between a patient and his attending physician." *State v. Staat*, 291 Minn. 394, 397, 192 N.W.2d 192, 196 (1971).

Under AMS' proposal, the urologists would appear as experts only in cases not involving their own patients. Thus, they would not be testifying about their own patients' medical histories, and would not be called upon to divulge any confidential communications with their own patients which are protected by the physician-patient privilege. Accordingly, Minn. Stat. Ann. § 595.02(1)(d) is inapplicable here.

Nor would AMS' retention of these urologists violate Minn. R. Civ. P. 35.04. Rule 35.04 addresses the issue of discovery of a "*treating or examining*" physician in a case involving his own patient's "physical, mental or blood condition." (Emphasis added.) Rule 35.04 does not purport to address whether a physician is barred from testifying as an expert where he is not the "*treating or examining*" physician, or where the case does involve the "physical, mental or blood" condition of his own patient. Because none of the urologists AMS intends to retain as experts are treating physicians for any of the 20 plaintiffs selected for full discovery, the matters that the urologists would be consulted about do not relate to the 20 plaintiffs' "physician, mental, or blood condition." Thus, Rule 35.04, like Minnesota's patient-physician privilege, does not prohibit AMS from retaining these urologists.

AMS represents that it will not discuss, with any of its expert urologists, the medical condition or treatment of any of their patients who are plaintiffs in Minnesota. Instead, AMS intends to have the urologists testify as experts about their general knowledge and experience with penile prostheses and the medical issues relating to the 20 plaintiffs selected for full discovery, none of whom are their patients. These issues include the debilitating effects of impotence on patients' lives; the benefits of penile prostheses in restoring sexual function; the unavailability of alternative treatments at the time of plaintiffs' implantation surgeries; the

4

reliability of AMS penile prostheses; and the accuracy of AMS' disclosures to the urological community of the risks and benefits associated with penile prostheses. Johnson Aff. ¶ 5.

Previously, plaintiffs have relied upon *Wenninger v. Muesing*, 240 N.W.2d 333 (Minn. 1976), but that case has nothing to do with the retention of experts. *Wenninger* held that defense counsel could not conduct ex parte interviews with "plaintiff's attending physicians" about "privileged medical testimony" regarding their own patients. *Id.* at 334, 336. Moreover, because the experts retained by AMS would not include any of the "attending" physicians for the 20 selected plaintiffs, unlike the case in *Wenninger* they would not be discussing with AMS any "privileged" information regarding the medical condition or treatment of their patients.

As previously stated, each plaintiff's case filed in Minnesota is a separate case. No rule prevents a party from retaining a physician as an expert in one case simply because *another* one of his patients has *another* lawsuit pending.

In sum, no rule of privilege would be implicated by AMS' proposal. Accordingly, AMS has the right to retain the urologists as experts in any case not involving their own patients.

## CONCLUSION

For all of the reasons set forth above, AMS' motion for a declaratory ruling affirming its right to retain the eight urologists it has previously used and who are not treating physicians for any of the 20 plaintiffs selected for full discovery should be granted.

Dated: April 21, 1998

Respectfully Submitted,

OPPENHEIMER WOLFF & DONNELLY

By: _____
William P. Studer, # 106781
David P. Graham, # 185462
3400 Plaza VII Building
45 South Seventh Street
Minneapolis, Minnesota 55402
(612) 607-7000

Steven Glickstein
Sheila S. Boston
KAYE, SCHOLER, FIERMAN,
  HAYS & HANDLER, LLP
425 Park Avenue
New York, New York 10022
(212) 836-8000

ATTORNEYS FOR DEFENDANT
AMERICAN MEDICAL SYSTEMS, INC.

6

◆TC2: 277766 v01 4/21/98