**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | |
|---|---|
| **IN RE: SEROQUEL PRODUCTS LIABILITY LITIGATION** | **MDL DOCKET NO:** |
| This document relates to: **ALL CASES** | **6:06-MDL-1769-ACC-DAB** |

**PLAINTIFFS' RESPONSE AND COMBINED MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR ENTRY OF ORDER GOVERNING PERMISSIBLE CONTACT AND RETENTION OF CERTAIN FLORIDA-RELATED PHYSICIANS AS DEFENSE EXPERTS**

Plaintiffs in the above-captioned MDL proceeding ("Plaintiffs") timely file this response opposing entry of the proposed order urged by Defendants AstraZeneca LP and AstraZeneca Pharmaceuticals LP (collectively, "Defendants" or "AstraZeneca") in their Motion for Entry of Order Governing Permissible Contact and Retention of Certain Florida-Related Physicians as Defense Experts (Doc. 883, hereinafter the "Motion"),[1] and would respectfully show the Court as follows:

## I.
## SUMMARY OF RESPONSE

The Court should recognize Defendants' Motion for what it is: a poorly disguised attempt to commandeer the field of Plaintiffs' treating physicians and hire them as experts for the defense, thus opening a Pandora's Box of obvious bias and potential conflicts issues. The

[1] Defendants filed and served their Motion on February 29, 2008. This response is timely filed today, March 11, 2008, pursuant to Case Management Order 1 ("CMO1") § IV (A) ("Absent an Order of the Court, briefs in response to motions shall be filed 11 days after the date of service.") In addition, CMO1 § IV (A) provides that "[i]n order to be heard at a regularly scheduled status conference, a motion must be filed and served at least 20 days before said conference. Any motion filed and served less than 20 days before a status conference shall be heard not at the upcoming status conference but at the status conference thereafter."

Court should reject Defendants' Motion and proposed order for at least two reasons. First, the contact Defendants seek with Plaintiffs' physicians—premised on some ill-defined notion of a limited supply of potential experts for the Florida Trial Program—is simply not permitted under Florida law. Indeed, the Florida Supreme Court has already rejected the crux of Defendants' argument. More specifically, the supreme court rebuffed the contention that the Florida patient-physician privilege somehow allows for ex parte discussions with Plaintiffs' doctors on subjects other than Plaintiffs' medical information and/or Plaintiffs' individual lawsuits. Other Florida courts have reached similar conclusions as the supreme court. Second, as is apparently clear to all but Defendants, their overly broad, preemptive request to unilaterally and secretly communicate with, retain, and pay Plaintiffs' treating physicians constitutes the very "invitation to mischief" that Defendants purportedly seek to prevent (Mot. at 11). Little good can come from AstraZeneca's putting on its payroll the one person, besides her attorney, that is legally and ethically bound to stand in the Plaintiff's corner. The Court should deny Defendants' Motion.

## II.
## ARGUMENT AND AUTHORITIES

### A. **<u>The Florida Patient-Physician Privilege, As Interpreted By The Florida Supreme Court And Courts Of Appeal, Proscribes Defendants' Request.</u>**

Remarkably, Defendants' Motion characterizes the order they seek as containing "court-approved and time-tested safeguards" to protect Plaintiffs' rights. (Mot. at 12.) For this proposition, Defendants cite a total of two (2) federal district court orders—from Arkansas and Minnesota—where those courts have arguably permitted limited ex parte communications with plaintiffs' treating physicians. Notably, neither of the orders permitted

those defendants to retain and pay the plaintiffs' treating physicians as expert witnesses, as Defendants desire to do here. Defendants also fail to identify a single Florida case permitting such conduct. Indeed, Defendants are careful to avoid discussion of the very case—overturned by the Florida Supreme Court—which condoned defendants' ex parte communications with plaintiffs' treating physicians on subjects other than the plaintiffs' medical information or lawsuits.[2]

As currently written, Florida Statutes sections 456.057(7)(a) and (8) provide in pertinent part:

> (7)(a) Except as otherwise provided in this section and in s. 440.13(4)(c) [involving the availability of medical records in workers' compensation claims], such [medical] records may not be furnished to, and the medical condition of a patient may not be discussed with, any person other than the patient or the patient's legal representative or other health care practitioners and providers involved in the care or treatment of the patient, except upon written authorization of the patient.
>
> * * *

---

[2] Before undertaking a supposedly comprehensive discussion of the scope of the Florida patient-physician privilege and Florida law regarding ex parte communications with plaintiffs' treating physicians, Defendants set forth a half-hearted argument in a footnote that federal procedural law applies, apparently arguing that Federal procedure circumvents the Florida patient-physician privilege here. (Mot. at 4 n.3.) Defendants' note is curious, however, in light of this and other Courts' recognition that "Federal Rule of Evidence 501 provides, in pertinent part, that in civil actions where state law supplies the rule of decision, the privilege of a witness shall be determined in accordance with state law." *Shams v. State Farm Mut. Auto. Ins. Co.*, No. 6:06-CV-621-Orl-28DAB, 2007 WL 496610, at *4 (M.D. Fla. February 12, 2007) (Baker, Mag.); *see also Somer v. Johnson*, 704 F.2d 1473, 1478-79 (11th Cir. 1983); *Bush v. Michelin Tire Corp.*, 963 F.Supp. 1436, 1448 (W.D. Ky. 1996) ("The First Circuit noted that Congress clearly intended the Federal Rules of Evidence to apply in diversity cases, pointing out that 'where Congress deemed it desirable for state rules to be applied in diversity actions, it created a special proviso to that effect in the federal rule'"; quoting *McInnis v. A.M.F., Inc.,* 765 F.2d 240, 245 (1st Cir.1985)); *Peterson v. Chesapeake & Ohio Ry. Co.*, 112 F.R.D. 360, 362 (W.D. Mich. 1986) ("The federal rules of evidence regarding privileges . . . provide[] that . . . with respect to an element of a claim or a defense as to which state law supplies the rule of decision, privileges are determined in accordance with State law," and "[s]ince this is a diversity action and plaintiff seeks to establish among other things negligence under state law . . . any privilege . . . should be determined in accordance with Michigan law.").

> (8) Except in a medical negligence action or administrative proceeding when a health care practitioner or provider is or reasonably expects to be named as a defendant, information disclosed to a health care practitioner by a patient in the course of the care and treatment of such patient is confidential and may be disclosed only to other health care practitioners and providers involved in the care or treatment of the patient, or if permitted by written authorization from the patient or compelled by subpoena at a deposition, evidentiary hearing, or trial for which proper notice has been given.

Fla. Stat. Ann. §§ 456.057(7)(a), (8) (2007).

In *Acosta v. Richter*, the Florida Supreme Court interpreted the substantively similar predecessor statute to section 456.057 as creating "a broad and express privilege of confidentiality as to the medical records and medical condition of a patient." 671 So.2d 149, 154 (Fla. 1996) ("[W]e conclude that the primary purpose of the [statute] was to create a physician-patient privilege where none existed before, and to provide an explicit but limited scheme for the disclosure of personal medical information."). The supreme court acknowledged that the statute "clos[ed] the door to the previous practice of many defense attorneys of meeting privately or otherwise communicating ex parte with the plaintiff's treating physicians." *Id.* at 152 (quoting *West v. Branham*, 576 So.2d 381, 383 (Fla. Ct. App. 1991)). Thus, "[t]he privilege protects the patients' interest in keeping the details and nature of his medical treatment confidential without fear of later disclosure by the one in whom he has placed his trust." *Estate of Stephens v. Galen Health Care, Inc.*, 911 So.2d 277, 280 (Fla. Ct. App. 2005).

*Acosta* resolved conflicting interpretations of the privilege statute by the Florida Courts of Appeal. One of the lower appellate courts, in *Castillo-Plaza v. Green*, had reached the conclusion—mirroring Defendants' contention here—that the statute cloaked only the

medical records and medical condition of the patient with confidentiality, but did not touch other discussions opposing counsel might have with a plaintiff's treating physician:

> [T]he terms of the statute confine the requirement of confidentiality to the "medical records" and the "medical condition" of the patient, including information disclosed to the doctor in the course of his care and treatment. ***They do not restrict communication concerning anything else-the issues in the case, hypothetical questions concerning other patients and their treatment, or, indeed, anything beyond what the statute actually says. Moreover, there is no restriction on the manner in which conversations or discussions as to the nonforbidden topics may be conducted.***

*Castillo-Plaza*, 655 So.2d 197, 202 (Fla. Ct. App. 1995) (emphasis added; internal quotation marks, other punctuation, and citations omitted), *disapproved and opinion quashed sub nom Pierre v. North Shore Med. Ctr., Inc.*, 671 So.2d 157, 157 (Fla. 1996); *see Acosta*, 671 So.2d at 157. The *Acosta* court expressly disapproved of *Castillo-Plaza*, refusing to adopt the court of appeal's exception to the privilege for "communications as to any matter beyond the medical records and the care, treatment, and medical condition of the patient." *Acosta*, 671 So.2d at 153, 157.

The supreme court in *Acosta* also rejected the opinion by another Florida appellate court that "ex parte conferences with treating physicians may be approved so long as the physicians are not required to say anything." *Id.* at 156 (disapproving the holding to that effect in *Johnson v. Mt. Sinai Med. Ctr., Inc.*, 615 So.2d 257 (Fla. Ct. App. 1993)). "We believe it is pure sophistry to suggest that the purpose and spirit of the statute would not be violated by such conferences." *Acosta*, 671 So.2d at 156.

Finally, *Acosta* endorsed the court of appeal's opinion in *Kirkland v. Middleton*, 639 So.2d 1002 (Fla. Ct. App. 1994). *See Acosta*, 671 So.2d at 152-53. The *Kirkland* court

rejected the defendants' argument that, via ex parte communications, "they merely intend[ed] to question [the plaintiffs'] current health care providers about such non-privileged matters as scheduling deposition testimony and arranging medical records production." *Kirkland,* 639 So.2d at 1004. "Were unsupervised *ex parte* interviews allowed, . . . plaintiffs could not object and act to protect against inadvertent disclosure of privileged information, nor could they effectively prove that improper disclosure actually took place." *Acosta*, 671 So.2d at 153 (quoting *Kirkland*, 639 So.2d at 1004).

Thus, "[b]ecause this wealth of case law clearly holds that ex parte discussions between a defense attorney and the plaintiff's treating physicians are barred by section 456.057[(7), (8)], any order allowing such discussions . . . departs from the essential requirements of the law." *Lemieux v. Tandem Health Care of Fla., Inc.*, 862 So.2d 745, 750 (Fla. Ct. App. 2003) ("In the face of case law specifically prohibiting such ex parte discussions and with no case law or statute providing an applicable exception to the privilege, [an] order allowing the requested ex parte discussions depart[s] from the essential requirements of the law."). The Motion should be denied.

**B. <u>The Potential For "Mischief," Including Instillation Of Bias And Creation Of Conflicts Of Interest In Plaintiffs' Treating Physicians, Is Too Great.</u>**

There are prudent reasons for the Florida Supreme Court's adoption of the "broad and express" patient-physician privilege in *Acosta*.

First, as *Acosta* recognized, without Plaintiffs' counsel present, no safeguards exist to prevent Defendants' ex parte discussions with Plaintiffs' treating physicians from wandering into areas that are privileged. *Id.* Indeed, a very real danger of ex parte interviews of a doctor by adverse counsel is that the patient's lawyer is afforded no opportunity to object to

the disclosure of compromising medical information, even if discussed in contexts other than the lawsuit at hand. *See, e.g., W.V. ex rel. Kitzmiller v. Henning*, 437 S.E.2d 452, 455 (W.V. 1993). Indeed, without knowing the confidential information beforehand, defense counsel may elicit such a response unknowingly. *See* John Kassel, *Ex Parte Conferences With Treating Physicians; Counterpoint . . . Defense Counsel's Ex Parte Communication With Plaintiff's Doctors: A Bad One-Sided Deal*, S.C. Lawyer, Sept.-Oct. 1997, at 42, 43. As an advocate in the heated battle of litigation, defense counsel may also be compelled to resolve issues of relevance and privilege in Defendants' favor. *Id.* Ex parte contacts place counsel in the position of the fox guarding the henhouse. *Id.* The physician fares no better when asked to decide what ought to be disclosed. *Id.* "Asking the physician, untrained in the law, to assume this burden is a greater gamble and is unfair to the physician." *Roosevelt Hotel L.P. v. Sweeney*, 394 N.W.2d 353, 357 (Iowa 1986).

Second, the applicable rules of civil procedure, including discovery rules, were designed to afford all parties access to justice. *See* David G. Wirtes, Jr., R. Edwin Lamberth, Joanna Gomez, *An Important Consequence of HIPAA: No More Ex Parte Communications Between Defense Attorneys and Plaintiffs' Treating Physicians*, Am. J. Trial Advoc. 1, 14 (2003). The rules are intended to eliminate "trial by ambush" and other odious practices. *Id.* Use of discovery methods such as interrogatories and depositions provide counsel adequate opportunity to ascertain privileges and to appropriately explore in detail, and within the confines of such privileges and other confidences, aspects of medical treatment, while informing the physician of issues that are relevant to the subject matter of the suit and those portions of the patient's medical records that are considered confidential. *Id.* Conformance

with these traditional practices does not hamper the attorney's preparation of a lawful defense, or infringe upon a defendant's due process rights. *Id.* In the absence of evidence that ex parte interviews afford any greater access to discoverable information, or any reduction in cost than that available in following the methods set forth in the Federal Rules of Civil Procedure, no legitimate basis exists for Defendants' ex parte discussions with Plaintiffs' treating physicians. *Id.*; *see also Petrillo v. Syntex Labs, Inc.*, 499 N.E.2d 952, 956 (Ill. Ct. App. 1986).

Lastly, but crucially, the Court should recognize that nothing in Defendants' proposed order prevents Defendants from canvassing the entire population of Plaintiffs' treating physicians, conducting ex parte discussions with them, and potentially hiring and paying them as Defendants' expert witnesses. This hardball tactic is an affront to both the Plaintiffs' rights as patients, who are entitled to place their trust in their doctors, as well as the rights of Plaintiffs to a fair trial of their claims against wrongdoers. *See* Philip H. Corboy, *Ex Parte Contacts Between Plaintiff's Physician and Defense Attorneys: Protecting the Patient-Litigant's Right to a Fair Trial*, 21 Loy. U. Chi. L.J. 1001, 1001-02 (1990). As the United States District Court for the Southern District of Ohio acknowledged, absent some controls regarding the retaining of expert witnesses, "unscrupulous attorneys or clients will be encouraged to engage in a race for expert witnesses, and to identify potentially harmful experts and to create some type of inexpensive relationship with those experts, simply in order to keep them away from the other side." *Paul v. Rawlings Sporting Goods Co.*, 123

F.R.D. 271, 281-82 (S.D. Ohio 1988).[3] The bias and conflicts that would inevitably arise are especially problematic where, as here, the learned intermediary defense is raised, yet Defendants seek to contact and hire (pay) the very witnesses (and their colleagues) that may testify as to the adequacy of warnings given them by Defendants about Seroquel in their roles as Plaintiffs' treating physicians.

Here, it is clear that the "other cases" for which Defendants intend to retain Plaintiffs' treating physicians as expert witnesses (to the extent they, in fact, utilize them at all) are other Seroquel cases. Yet, in all the Seroquel cases, there are legal elements that apply to all (or most) cases across the board: chiefly among them causation, damages, and liability. These generic elements affect every case. So, where Defendants argue that they will only discuss Plaintiff "A's" case with Dr. "B", who has never treated Plaintiff A, and Defendants promise they will not discuss with Dr. B anything regarding Dr. B's patients' medical histories or lawsuits, they would be engaging in precisely the type of sophistry that *Acosta* proscribes. If Plaintiff A loses on the liability issue, for example, Dr. B's patient also stands to lose on that issue as well, putting Dr. B in conflict with that patient. Defendants' counsel simply cannot, and should not, be relied upon to warn Dr. B of (and guide him through) the conflicts that abound in such an arrangement, even potentially subjecting the doctor himself

---

[3] Moreover, turning the situation on its ear, Defendants would likely argue, as the defendants argued in *In re Norplant Contraceptive Products Liability Litigation*, MDL Docket No. 1038, 1997 WL 33635860 (E.D. Tex. May 7, 1997), that once they have retained Plaintiffs' treating physicians as experts to assist in their defense of the litigation, any ex parte communication with those treating physicians by Plaintiffs' counsel would be prohibited, and may subject counsel to disciplinary action. Significantly, such unavoidable communications apparently necessitated disqualification of the plaintiffs' counsel in the *Norplant* litigation. *Id*. (condemning plaintiffs' counsel's contact with plaintiffs' treating physicians once retained as expert witnesses by the defendants as "[violative] of the Texas Disciplinary Rules of Professional Conduct, the local rules of the Eastern District of Texas, and national ethical standards of professional responsibility," and deeming it "clear grounds for counsel's disqualification").

to tort liability for breach of patient confidences. *See Gracey v. Eaker*, 837 So.2d 348, 354 n.6 (Fla. 2002) ("This Court . . . has determined that a fiduciary relationship exists between physician and patient . . . . [A physician] who has created a fiduciary relationship with his client owes that client a duty of confidentiality, [a breach of which] is actionable in tort."); *see also Petrillo*, 499 N.E.2d at 595 ("At the very heart of every [patient-physician] fiduciary relationship . . . there exists an atmosphere of trust, loyalty, and faith in the discretion of a fiduciary. [W]e find it difficult to believe that a physician can engage in an ex parte conference with the legal adversary of his patient without endangering the trust and faith invested in him by his patient.")

**CONCLUSION**

For the foregoing reasons, the Court should DENY Defendants' Motion.

Respectfully submitted

By: /s/ Robert W. Cowan

F. Kenneth Bailey Jr.
K. Camp Bailey
Fletcher V. Trammell
Robert W. Cowan
**BAILEY PERRIN BAILEY LLP**
440 Louisiana St., Suite 2100
Houston, Texas 77002
(713) 425-7100 Telephone
(713) 425-7101 Facsimile
kbailey@bpblaw.com
cbailey@bpblaw.com
ftrammell@bpblaw.com
rcowan@bpblaw.com
**Co-Lead Counsel for Plaintiffs**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of March, 2008, I electronically filed the foregoing: PLAINTIFFS' RESPONSE AND COMBINED MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR ENTRY OF ORDER GOVERNING PERMISSIBLE CONTACT AND RETENTION OF CERTAIN FLORIDA-RELATED PHYSICIANS AS DEFENSE EXPERTS with the Clerk of the Court by using the CM/ECF system which will send a Notice of Electronic Filing to the counsel listed on the attached Service List.

/s/ Robert W. Cowan
Robert W. Cowan

SERVICE LIST
In Re: Seroquel Products Liability Litigation
MDL Docket No. 1769

| | |
|---|---|
| Scott Allen<br>Cruse, Scott, Henderson & Allen, L.L.P.<br>2777 Allen Parkway, 7th Floor<br>Houston, TX 77019<br>Tel: (713) 650-6600<br>sallen@crusescott.com | Robert L. Ciotti<br>Carlton Fields, P.A.<br>42212 W. Boy Scout Blvd., Suite 1000<br>Tampa, FL 33607-5736<br>Tel: (813) 223-7000<br>rciotti@carltonfields.com<br>tpaecf@cfdom.net<br>atravis@carltonfields.com<br>*Counsel for Defendants AstraZeneca Pharmaceuticals, L.P, and AstraZeneca LP* |
| Mary B. Cotton<br>John D. Giddens, P.A.<br>P.O. Box 22546<br>Jackson, MS 39225-2546<br>Tel: (601) 355-2022<br>betsy@law-inc.com | Michael Davis<br>James Mizgala<br>Sidley Austin LLP<br>Bank One Plaza<br>One South Dearborn St.<br>Chicago, IL 60603<br>Tel: (312) 853-7731<br>mdavis@sidley.com<br>jmizgala@sidley.com |
| Aaron K. Dickey<br>Goldenberg and Heller, PC<br>P.O. Box 959<br>2227 S. State Route 157<br>Edwardsville, IL 62025<br>Tel: (618) 650-7107<br>aaron@ghalaw.com | Heidi Elizabeth Hilgendorff<br>Thomas Campion<br>Drinker Biddle & Reath, LLP<br>500 Campus Dr.<br>Florham Park, NJ 07932-1047<br>Tel: (973) 360-1100<br>thomas.campion@dbr.com<br>heidi.hilgendorff@dbr.com<br>jeffrey.peck@dbr.com<br>*Counsel for Defendants Janssen Pharmaceutical Products and Johnson & Johnson Co.* |

| | |
|---|---|
| John J. Driscoll<br>Brown & Crouppen, PC<br>720 Olive St., Suite 1800<br>St. Louis, MO 63101<br>Tel: (314) 421-0216<br>jdriscoll@brownandcrouppen.com<br>bsmith@brownandcrouppen.com<br>rbrooks@brownandcrouppen.com<br>blape@brownandcrouppen.com | Kenneth T. Fibich<br>Fibich, Hampton & Leebron, LLP<br>1401 McKinney St., Suite 1800<br>Five Houston Center Houston, TX 77010<br>Tel: (713) 751-0025<br>tfibich@fhl-law.com |
| Gregory P. Forney<br>Shaffer, Lombardo & Shurin<br>911 Main St., Suite 2000<br>Kansas City, MO 64105<br>Tel: (816) 931-0500<br>gforney@sls-law.com<br>rbish@sls-law.com<br>*Counsel for Defendant, Marguerite Devon French* | Todd S. Hageman<br>Simon and Passanante, PC<br>701 Market St., Suite 1450<br>St. Louis, MO 63101<br>Tel: (314) 241-2929<br>thageman@spstl-law.com |
| W. Todd Harvey<br>Joe R. Whatley, Jr.<br>2323 2nd Ave. N<br>Birmingham, AL 35203-0647<br>Tel: (205) 328-9576<br>tharvey@whatleydrake.com<br>jwhatley@whatleydrake.com<br>ecf@whatleydrake.com | Jona R. Hefner<br>3441 W. Memorial, Suite 4<br>Oklahoma, OK 73134-7000<br>Tel: (405) 286-3000<br>attorneyokc@hotmail.com<br>attorneyokc@gmail.com |

| | |
|---|---|
| Lawrence J. Gornick<br>William A. Levin<br>Dennis J. Canty<br>Levin Simses Kaiser & Gornick, LLP<br>44 Montgomery St., 36th Floor<br>San Francisco, CA 94104<br>Tel: (415) 646-7160<br>lgornick@lskg-law.com<br>dcanty@lskg-law.com<br>llsimes@levins-law.com<br>jkaiser@lskg-law.com<br>echarley@lskg-law.com<br>ddecarli@lskg-law.com<br>bsund@lskg-law.com<br>astavrakaras@lskg-law.com | Scott Burdine<br>Hagans Burdine Montgomery<br>Rustay & Winchester, P.C.<br>3200 Travis, 4th Floor<br>Houston, TX 77006<br>Tel: (713) 222-2700<br>sburdine@hagans-law.com |
| Thomas Campion<br>Heidi E. Hilgendorff<br>Drinker Biddle & Reath, LLP<br>500 Campus Dr.<br>Florham Park, NJ 07932-1047<br>Tel: (973) 360-1100<br>thomas.campion@dbr.com<br>heidi.hilgendorff@dbr.com<br>jeffrey.peck@dbr.com<br>*Counsel for Defendants Janssen Pharmaceutical Products and Johnson & Johnson Co.* | Jona R. Hefner<br>3441 W. Memorial, Suite 4<br>Oklahoma, OK 73134-7000<br>Tel: (405) 286-3000<br>attorneyokc@hotmail.com<br>attorneyokc@gmail.com |
| Keith M. Jensen<br>Jensen, Belew & Gonzalez, PLLC<br>1024 North Main<br>Fort Worth, TX 76106<br>Tel: (817) 334-0762<br>kj@kjensenlaw.com<br>kjensenlaw@gmail.com | Aaron C. Johnson<br>Summers & Johnson<br>717 Thomas<br>Weston, MO 64098<br>Tel: (816) 640-9940<br>aaron@summersandjohnson.com<br>firm@summersandjohnson.com |
| Jamie R. Kendall<br>301 Massachusetts Ave.<br>Indianapolis, IN 46204<br>Tel: 317-633-8787<br>jkendall@price-law.com<br>eamos@price-law.com | Mark A. Koehn<br>whrfrat42@yahoo.com |

| | |
|---|---|
| Benjamin A. Krass<br>Law Offices of Matthew F. Pawa, P.C.<br>1280 Centre St., Suite 230<br>Newton Centre, MA 02459<br>Tel: (617) 641-9550<br>bkrass@pawalaw.com | D. Andrew List<br>Clark Perdue Arnold & Scott<br>471 East Broad St., Suite 1400<br>Columbus, OH 43215<br>Tel: 877-220-2203<br>alist@cpaslaw.com |
| Matthew E. Lundy<br>Lundy & Davis<br>333 N. Sam Houston Pkwy., E<br>Suite 375<br>Houston, TX 77060<br>Tel: (281) 272-0797<br>mlundy@lundydavis.com<br>jdibbley@lundydavis.com | David P. Matthews<br>Abraham, Watkins, Nichols, Sorrels,<br>Matthews & Friend<br>800 Commerce St.<br>Houston, TX 77002-1776<br>Tel: (713) 222-7211<br>dmatthews@abrahamwatkins.com<br>agoff@abrahamwatkins.com<br>jrhoades@abrahamwatkins.com<br>jwebster@abrahamwatkins.com |
| James Mizgala<br>Sidley Austin LLP<br>Bank One Plaza<br>One South Dearborn St.<br>Chicago, IL 60603<br>Tel: (312) 853-7731<br>mdavis@sidley.com<br>jmizgala@sidley.com<br>lmodaff@sidley.com<br>efilingnotice@sidley.com<br>*Counsel for Defendants AstraZeneca LP and AstraZeneca Pharmaceuticals LP* | Howard Nations<br>Howard L. Nations Attorney At Law<br>4515 Yoakum Blvd.<br>Houston, TX 77006-5895<br>Tel: (713) 807-8400<br>nations@howardnations.com<br>lori@howardnations.com<br>kim@howardnations.com<br>andrea@howardnations.com<br>charles@howardnations.com<br>lezzlie@howardnations.com |
| Matthew F. Pawa<br>Law Offices of Matthew F. Pawa, P.C.<br>1280 Centre St., Suite 230<br>Newton Centre, MA 02459<br>Tel: (617) 641-9550<br>mp@pawalaw.com | Paul J. Pennock<br>Michael E. Pederson<br>Weitz & Luxenburg, P.C.<br>180 Maiden Lane – 17th Floor<br>New York, NY 10038<br>Tel: (212) 558-5500<br>Ppennock@weitzlux.com<br>Lschutlz@weitzlux.com<br>MPederson@weitzlux.com<br>JOrelli@weitzlux.com<br>*Plaintiff's Lead Counsel* |

| | |
|---|---|
| Carlos A. Prietto, III<br>Robinson Calcagnie & Robinson<br>620 Newport Center-Drive<br>7th Floor<br>Newport Beach, CA 92660<br>Tel: 940-720-1288<br>cbregman@rcrlaw.net<br>cprietto@rcrlaw.net<br>ctakanabe@rcrlaw.net<br>kschaeffer@rcelaw.net | Fred T. Magaziner<br>Marjorie Shickman<br>A. Elizabeth Balakhani<br>Shane T. Prince<br>Eben S. Flaster<br>Stephen J. McConnell<br>Brennen Joseph Torregrossa<br>Dechert, LLP<br>2929 Arch St., Cira Center<br>Philadelphia, PA 19104-2808<br>Tel: (215) 994-4000<br>Fred.magaziner@dechert.com<br>Marjorie.shiekman@dechert.com<br>shane.prince@dechert.com<br>cheryl.inwek@dechert.com<br>Eben.flster@dechert.com<br>elizabeth.balakhani@dechert.com<br>michelle.kirscEh@dechert.com<br>*Counsel for Defendant Astrazeneca Pharmaceuticals, LP* |
| William N. Riley<br>Jamie R. Kendall<br>301 Massachusetts Ave.<br>Indianapolis, IN 46204<br>Tel: 317-633-8787<br>wriley@price-law.com<br>eamos@price-law.com | Mark P. Robinson, Jr.<br>Robinson Calcagnie & Robinson<br>620 Newport Center Dr., 7th Floor<br>Newport Beach, CA 92660<br>Tel: (949) 720-1288<br>mrobinson@robinson-pilaw.com<br>mrobinson@rcrlaw.net |

| | |
|---|---|
| Larry Roth<br>Law Offices of Larry M. Roth, P.A.<br>P.O. Box 547637<br>Orlando, FL 32854-7637<br>Tel: (407) 872-2239<br>lroth@roth-law.com<br>lcarrington@roth-law.com<br>epoit@roth-law.com<br>*Plaintiffs' Liaison Counsel* | Lizy Santiago<br>Abraham, Watkins, Nichols, Sorrels, Matthews & Friend<br>800 Commerce St.<br>Houston, TX 77002-1776<br>Tel: (713) 222-7211<br>lsantiago@thematthewslawfirm.com<br>msalazar@thematthewslawfirm.com<br>lsantiago@abrahamwatkins.com |
| Robert A. Schwartz<br>Bailey & Galyen<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Tel: (281) 335-7744<br>bschwartz@galyen.com<br>anixon@galyen.com | Kenneth W. Smith<br>Aylstock Witkin Kreis & Overholtz<br>803 North Palafox St.<br>Pensacola, FL 32501<br>Tel: (850) 916-7450<br>ksmith@awkolaw.com<br>kws6619@msn.com<br>rvasquez@awkolaw.com |
| Brennen Joseph Torregrossa<br>Dechert, LLP<br>2929 Arch St., Cira Center<br>Philadelphia, PA 19104-2808<br>Tel: (215) 994-4000<br>brennen.torregrosssa@dechert.com<br>*Counsel for Defendant Astrazeneca Pharmaceuticals, LP* | Ted C. Wacker<br>Robinson Calcagnie & Robinson<br>620 Newport Center Dr., 7th Floor<br>Newport Beach, CA 92660<br>Tel: (949) 720-1288<br>twacker@rcrlaw.net |
| W. Todd Harvey<br>Joe R. Whatley, Jr.<br>2323 2nd Ave. N<br>Birmingham, AL 35203-0647<br>Tel: (205) 328-9576<br>tharvey@whatleydrake.com<br>jwhatley@whatleydrake.com<br>ecf@whatleydrake.com | Justin Witkin<br>Ken Smith<br>Aylstock, Witkin & Sasser, PLC<br>4400 Bayou Blvd., Suite 58<br>Pensacola, FL 32503<br>Tel: (850) 916-7450<br>Jwitkins@AWS-LAW.COM<br>ablankenship@aws-law.com<br>aburrus@aws-law.com<br>asmith@aws-law.com<br>ksmith@aws-law.com<br>noverholtz@aws-law.com<br>jsafe@aws-law.com |