# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**IN RE:  Seroquel Products Liability Litigation**

**MDL DOCKET NO. 1769**
_____

**This Document Relates to ALL CASES**

### ASTRAZENECA'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL IDENTIFICATION AND PRODUCTION OF "INTERMEDIATE DATA" FROM ASTRAZENECA'S GEL DATABASE

## I.    INTRODUCTION

AstraZeneca LP and AstraZeneca Pharmaceuticals LP ("AstraZeneca") oppose plaintiffs' motion to compel concerning drafts or "intermediate data" in connection with AstraZeneca's Global Electronic Library ("GEL") database.  *See* Doc No. 877 ["Motion"].  That Motion relates to issues that are currently before the SM-ESI pursuant to this Court's directions, including most recently in its order of February 21, 2008 (Doc. No. 869) ("Order").  Yet plaintiffs ask this Court again to address GEL-draft issues, and to enter a radically overbroad and unwarranted compel order, *before* the SM-ESI has concluded his ongoing work on these very issues.  As plaintiffs know, AstraZeneca is in the process of implementing a plan concerning GEL-related drafts – in the context of the SM-ESI's ongoing meet-and-confer process – which includes both the sampling of backup tapes and the identification and production of potentially relevant drafts from key GEL users.  These efforts are currently underway, at considerable effort and expense. In an apparent effort to sidestep the productive work of AstraZeneca and the SM-ESI on these very issues, plaintiffs raced to file their Motion without basis and without allowing the meet-and-confer process, and the ongoing work that has emerged from that process, to play out and be

completed.  As shown below, plaintiffs' Motion should be denied for several compelling

reasons:

- *First*, by raising intermediate data issues presently before the SM-ESI per this Court's direction, plaintiffs' Motion is counterproductive to the ongoing efforts to address those complex issues in an organized, systematic and balanced fashion.  At a minimum, consideration of the Motion should be deferred until AstraZeneca and the SM-ESI have completed their work. Any contrary result would waste judicial and party resources and would be unhelpful to the massive discovery process in this MDL.

- *Second*, plaintiffs nowhere demonstrate that the supposed relevancy and probative value (if any) of the GEL-related drafts at issue outweigh the massive undue burden they seek to impose on AstraZeneca.  Instead, their Motion repeatedly asserts in conclusory fashion and without factual support, that *all* GEL Seroquel-related drafts or intermediate data are highly relevant, which even plaintiffs have previously acknowledged is inaccurate.  Particularly in the context of the work underway before the SM-ESI on these issues, the onerous relief proposed in plaintiffs' Motion would involve an unjustified "fishing expedition" that should be denied.  *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1420-21 (11th Cir. 1994).

- *Third*, plaintiffs' attempt to pre-argue some potential "spoliation" motion that they might file in the future is particularly improper and, ultimately, serves only to confirm the meritless and unripe nature of their aggressive accusations in light of the governing authorities and circumstances here.  *See Flury v. Daimler Chrysler*, 427 F.3d 939, 944 (11th Cir. 2005); *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997).

At bottom, plaintiffs' Motion seeks relief that the meet-and-confer process has shown to

be unnecessarily overbroad and with which AstraZeneca could not possibly comply.  Plaintiffs

seek an order to identify and produce "all" Seroquel-related intermediate data (Motion at 16) –

even though, as they have acknowledged, many categories of GEL Seroquel-related materials

have *no* conceivable relevancy to this litigation in final (much less draft) form; and even though,

as plaintiffs are aware, AstraZeneca has no way to identify all potentially deleted GEL drafts.

Plaintiffs' precipitous action in filing their Motion at this time and seeking such overbroad relief

suggests that their true objectives are purely tactical if not punitive.  AstraZeneca urges the Court

to reject Plaintiffs' attempt to draw it prematurely into discovery-related matters Plaintiffs have

apparently concluded would be to their tactical advantage.  The Court has already established

other procedures and involved the SM-ESI to ensure that discovery matters such as this one are

considered in a sensible, orderly and efficient manner.[1]  That remains the proper forum within

which these issues should be and are being addressed.

## II.      BACKGROUND

Plaintiffs' Motion seeks court approval to launch an extensive, costly, invasive and time-

consuming discovery expedition concerning "intermediate data," or drafts, related to

AstraZeneca's GEL database.  *See* Motion at 16.  The GEL database was designed to assist the

company in responding to federal, foreign and international regulatory requirements relating to

all new and existing AstraZeneca drugs by storing *final* information for submission to regulatory

bodies throughout the world.  *See* Declaration of Darryl Draper, previously filed and dated Jan.

2, 2008 (Doc. No. 768-11) ["1/2/08 Draper Decl."], ¶¶ 4-5.  It was not intended to house drafts

of a particular regulatory-related document after it is identified as approved in the database.  *Id.*,

¶ 6.  GEL is not a Seroquel-specific system; rather, it is a company-wide database used daily by

thousands of AstraZeneca employees in 75 sites in 50 countries to author, review, edit and store

regulatory submissions for dozens of AstraZeneca prescription pharmaceutical products.  *Id.*, ¶¶

7-8.  GEL currently houses about 1.75 million documents of which approximately 128,000 relate

to Seroquel.  *Id.*, ¶ 9.

---

[1] The Court should continue to reserve to itself the issues regarding the scope of materials that
may eventually be produced.  AstraZeneca does not concede that any of the documents requested
in the Motion were either properly requested by Plaintiffs under Rule 34 or the proper subject of
discovery in this litigation.  AstraZeneca likewise does not waive its rights to file objections
under Federal Rules of Civil Procedure 34 and 53 should the need arise.

Specifically, plaintiffs' Motion asks the Court (i) to compel AstraZeneca to identify and produce all Seroquel-related intermediate data not on the GEL database, to produce logs of all intermediate data removed from GEL over the last eight years, and to identify and produce a detailed list of all users with permission to enter Seroquel-related intermediate data over the last eight years; and (ii) also to permit plaintiffs to subject those users to deposition by written questions, as well as oral depositions of ten GEL users.  *See* Motion at 16.  Plaintiffs' demands would require AstraZeneca, in the context of GEL-related drafts, to respond to discovery implicating many hundreds of individuals and their custodial files worldwide.  *See* Declaration of Darryl Draper, March 14, 2008 ["3/14/08 Draper Decl."].[2]  Indeed, given that it is estimated that there are approximately 1800 authors of GEL documents and an additional number of GEL users, located domestically and abroad within AstraZeneca, *id.*, ¶ 2, the burden inherent in plaintiffs' requested relief is enormous.

As part of its custodial and database productions, AstraZeneca has produced a massive volume of regulatory and clinical documents, including nearly five million pages of documents from GEL alone.  At this Court's direction, the SM-ESI has spent months exploring and facilitating production from GEL, and is presently directing the parties' ESI-related efforts, including issues implicated by plaintiffs' Motion.  *See* Transcript of MDL Status Conference, March 11, 2008 (Doc. No. 902), at 80-82.

---

[2] In support of this Opposition, AstraZeneca also hereby cites to and incorporates by reference the Declarations of Kevin T. Kerns (Doc. No. 876-2), A. Richard Winchester (Doc. No. 876-3), and William Adams (Doc. No. 876-4), filed recently – which relatedly address the enormous burdens and time-consuming process involved in domestic and especially foreign search-and-production efforts in this litigation, and which apply here as well in the context of the unwarranted and unduly burdensome discovery effort sought by plaintiffs' Motion.

- **It is undisputed that many GEL Seroquel-related drafts are irrelevant to plaintiffs' claims:** GEL currently contains approximately 128,000 documents relating to Seroquel. *See* 1/2/08 Draper Decl., ¶ 9. Because GEL houses *all* global regulatory submissions, a wide range of Seroquel regulatory documents on GEL clearly have nothing to do with the issues in this litigation – such as (to give a few illustrative examples) ones related to environmental impact studies regarding toxicity of Seroquel to Bluegill fish and green algae; the drug's inactive ingredients; bulk substances before incorporation into the final product; the selection of the drug's generic name and trademark; the color and appearance of tablets, or the design and label of the product carton; the drug's shelf life or appropriate storage temperature; manufacturing or packing sites, or quality control; and the chemistry underlying the product's molecular structure. Further still, there are many remaining categories that, while perhaps of some attenuated relevancy in *final* form, are of no (or at best *de minimis*) probative value to this litigation in draft form. In fact, plaintiffs themselves have admitted that they "have no interest" whatsoever in massive categories of *irrelevant* GEL Seroquel-related documents, including any related "drafts." Declaration of Robert Pass ("Pass Dec."), ¶ 8; Feb. 5, 2008 Email from Canty to Pass (Exh. I)[3] ("Plaintiffs agree that GEL likely contains documents in which plaintiffs have no interest (i.e., inactive ingredients, bulk substances, etc.) and share AstraZeneca's desire to eliminate drafts of such documents from the search, review and production process").

- **Plaintiffs have never articulated any genuine litigation-related need for GEL-related drafts:** In mid-October 2007, during a non-adversarial interview of AstraZeneca's technical personnel, plaintiffs learned that GEL by default does not retain drafts once a document is

---

[3] All of the exhibits cited herein refer to the exhibits attached to the Pass Declaration.

marked as approved within the database.  *See* Motion at 3-4.  Yet plaintiffs also learned that many GEL-related drafts that are no longer housed on GEL exist in other places, such as custodial files.[4]  Plaintiffs served AstraZeneca with requests for production of Seroquel-related data *from* GEL for the first time on November 5, 2007.  Although plaintiffs were aware of GEL draft issues at that time, their request did not seek GEL-related drafts that exist outside of GEL.  Plaintiffs' Request for Production No. 8 (Exh. A).  Plaintiffs' request included an instruction to identify missing or destroyed documents, but did not ask for production of such documents nor did it mention GEL-related drafts.  *See id.* at 2.[5]  In its response, AstraZeneca specified what from GEL it would be producing, while objecting to the missing documents instruction.[6]

In December 2007, at the direction of the SM-ESI, AstraZeneca proposed a plan to search for and identify any relevant drafts that are no longer housed on GEL but exist elsewhere.  In its proposal, AstraZeneca outlined the extreme burden associated with the identification and

---

[4] Contrary to plaintiffs' assertion (Motion at 7), there is nothing about the way GEL operates that would preclude the continued existence of drafts outside of GEL, even after a document is marked approved, and drafts are deleted from GEL.  This is true regardless of whether the document is GEL-originated or GEL-contributed.

[5] In fact, although AstraZeneca produced its entire NDA and IND files, which include U.S. regulatory submissions that are predominantly housed on GEL, plaintiffs at no time requested drafts of those documents.  This is particularly telling considering that plaintiffs served on AstraZeneca approximately 300 Rule 34 requests for production (including subparts) in 2007 and explicitly specified for which documents they were interested in also obtaining drafts.

[6] Plaintiffs have wrongly suggested that, by March 14, AstraZeneca must produce all drafts that at any time existed in GEL (even if they may now exist elsewhere).  *See* Feb. 5, 2008 Email from Canty to Pass (Exh. I).  The March 14 substantial-completion deadline applies to discovery requests that were pending as of November 13, 2007, the date AstraZeneca proposed its substantial completion deadline, subject to AstraZeneca's objections.  *See* AstraZeneca's Notice Regarding Substantial Completion of Document Production (Doc. No. 680).  Plaintiffs, however, did not serve requests for production of Seroquel-related drafts outside of GEL before November 13, 2007 (and in fact still have not formally served such requests for production today).

production of every draft outside of GEL.  *See* AstraZeneca's Dec. 12, 2007 Submission to SM-ESI Regarding Identification and Production of GEL drafts (Exh. B).  Despite AstraZeneca's repeated requests, plaintiffs have never articulated any genuine litigation-related need and relevancy for their request for all drafts of GEL Seroquel-related documents.[7]

• ***At the direction of the SM-ESI, AstraZeneca has proposed, and is in the process of implementing, a reasonable plan to identify and locate additional GEL-related drafts***:  Over the last several months, AstraZeneca has worked diligently to provide the SM-ESI and plaintiffs with information about GEL drafts.  AstraZeneca was not "unresponsive and evasive," Motion at 6, in January 2008; on the contrary, it spent January in discussions with the SM-ESI to develop a proposal for identification and production of additional potentially relevant draft GEL documents.  Pass Decl., ¶ 6.  AstraZeneca discussed these issues separately with the SM-ESI. *Id.*; Emails from SM-ESI to plaintiffs' and defendants' counsel dated January 21, 2008, and January 24, 2008 (Exh. F and G).  AstraZeneca also addressed GEL-related issues on all but one weekly call in the month of January, *id.*; Agendas for Weekly SM-ESI Calls (Exh. C, D, and E), and ultimately presented its GEL proposal to plaintiffs on January 28, 2008, *id.*, ¶ 7.

Despite strong reservations that any GEL drafts not in the produced files of the 103 custodians would have any genuine probative value in this litigation, AstraZeneca has established and begun to implement an extensive plan to identify additional GEL users that may have Seroquel-related GEL drafts and to collect and produce responsive materials in their files.

---

[7] By focusing on the GEL document-management *system* on which documents were drafted, as opposed to the relevancy (if any) of particular substantive information within specific drafts of GEL documents, plaintiffs' unduly broad requests for all GEL drafts are not even facially calculated to lead to the discovery of admissible evidence here.  FED. R. CIV. PROC. 26(b)(1).

*Id.*; AstraZeneca's Proposed Plan for Reasonable Identification and Production of Material

Seroquel GEL Drafts (Exh. H).  That plan does not distinguish between "GEL-originated" and

"GEL-contributed" drafts (*see* Motion at 7-8), but rather is designed to identify both.  The plan

identifies seven "key" categories of GEL documents that AstraZeneca reasonably expected may

involve materials relevant to plaintiffs' claims – including (1) U.S. label changes; (2) Core Data

Sheets;[8] (3) Safety Evaluation and Review Meeting ("SERM") minutes; (4) SERM Discussion

Documents[9]; (5) SERM Clinical Overview Documents;[10] (6) Periodic Safety Update Reports;

and (7) Safety Position Papers[11] – to facilitate the identification and production of document

drafts in those categories.  Pass Decl., ¶ 7; AstraZeneca's Proposed Plan at 2-3.  The plan entails

interviews of AstraZeneca employees involved in the preparation of those regulatory and safety

documents, to identify both the location of any drafts that may exist, and the names of additional

employees likely to have had substantive drafting input.  *Id.*

AstraZeneca offered plaintiffs the opportunity – after reviewing documents produced

from GEL under the March 14 production – to request any specific draft they believe would be

---

[8] The Core Data Sheet contains medically and scientifically documented, relevant and most current information on an AZ product for inclusion in the global labeling for that product.

[9] A Discussion Document presents a topic for discussion at a SERM meeting.  Often drafts of Discussion Documents were prepared solely for legal review by the AstraZeneca Legal Department before being distributed to a larger group, and thus are subject to the attorney-client and/or work product privilege.

[10] A Clinical Overview Document, previously known as a "Justification Document," supports a recommended change to core product information, such as that contained in the Core Data Sheet, and contains the rationale for clinical and regulatory sign-off of that change as well as providing a documented record within AstraZeneca as to why that change was made.

[11] A Safety Position Paper records the rationale for making a "no change" decision for Core Data Sheet, if such documentation of the decision is considered necessary.  A Safety Position Paper is not always required.

relevant and central to their case but which has not been produced.  Pass Decl., ¶ 9; AstraZeneca's Reply to Canty Email Regarding GEL (Exh. J).  In that event, AstraZeneca would investigate the location of such requested drafts, while reserving the right to object to specific requests.  In an effort to ensure that plaintiffs receive any genuinely relevant GEL-related drafts – including any identified by plaintiffs in good faith – AstraZeneca is in the process of implementing its plan and remains willing to entertain plaintiffs' good-faith suggestions.  Pass Decl., ¶ 10.

In addition, AstraZeneca has agreed to the sampling of GEL backup tapes to provide plaintiffs with exemplar drafts from GEL.  On February 20 and 26, 2008, AstraZeneca identified backup tapes containing GEL materials.  Pass Decl., ¶ 12.  The SM-ESI directed both AstraZeneca and plaintiffs to propose a sampling protocol that may further demonstrate whether additional relevant drafts exists (or whether alternatively, as AstraZeneca has long contended, the drafts are of no genuine probative value).  *See* Pass Decl., ¶ 11.  AstraZeneca provided its protocol for sampling of the backup tapes to the SM-ESI on February 29, 2008; to plaintiffs on March 3, 2008; and, on March 7, provided an update to the SM-ESI and plaintiffs that addressed questions raised by the SM-ESI.  Pass Decl., ¶ 14.  AstraZeneca has now begun the arduous and time-consuming process of implementing its protocol, as it reported to the SM-ESI on March 7. *See id.*  Notably, plaintiffs' own plan focused on the same seven categories of documents that were identified in AstraZeneca's plan, as discussed above.  Pass Decl., ¶ 15.

### III.    ARGUMENT

### A.    Plaintiffs' Motion Should Be Denied Because It Is An Improper Effort To Circumvent The Work Of The SM-ESI On These Exact Issues, And To Evade Both The Ongoing Meet-And-Confer Process And This Court's Recent Order Concerning GEL "Drafts"

As a threshold matter, plaintiffs' Motion is both improper and premature.  It was filed only a few days after this Court's Order on February 21, 2008 made clear that the SM-ESI was to oversee and manage discovery issues concerning GEL-related intermediate data.  That Order concerned requests for particular GEL-related "drafts" of Dear Doctor/Healthcare Provider letters, patient information sheets and package inserts, from five foreign countries.  Order, at 1-2 ("As to the drafts, it is ORDERED that the matter is referred to the SM-ESI for his determination as to whether 'other accessible data that was non-retained following the company's preservation duties for this litigation' exists.").  Without question, the issues the Court recently referred to the SM-ESI involve those implicated by plaintiffs' Motion – *i.e.*, the best process for identifying accessible and potentially relevant drafts that may have existed in GEL at one time.  Hence, at a minimum, the Court should defer consideration of the issues raised in plaintiffs' Motion until the SM-ESI has completed his work on these issues.  Any other result would waste the SM-ESI's valuable learning and direction on these complex ESI issues, would delay or derail AstraZeneca's investigatory efforts presently underway, and would needlessly expend judicial and party resources.[12]

---

[12] AstraZeneca has been conferring for months now with the SM-ESI and plaintiffs over numerous GEL-related issues, including the best process for identification and production of additional GEL-related "draft" materials, if any, that may genuinely be relevant to plaintiffs' claims in this litigation.  That process has already narrowed and clarified many issues in dispute, and resulted in the development of a reasonable plan – which AstraZeneca has already begun to

In fact, plaintiffs' Motion not only *evades* their own meet-and-confer obligations in connection with the process currently underway within the purview of the SM-ESI, but also seeks to have this Court enter a wide-ranging compel order that *disregards* the extensive work performed to date in that process. For instance, while their Motion wrongly asserts that "all" GEL-related drafts or intermediate data is highly "relevant," Motion at 10, 16, plaintiffs admitted in the proceedings directed by the SM-ESI that entire broad categories of such drafts are of no interest to them, *i.e.*, they are simply irrelevant to their claims. *See* pp. 4-5, *supra*. This is one of the reasons why AstraZeneca, as part of its GEL-related search and production effort under the direction of the SM-ESI, is in the process of "sampling" GEL-related backup tapes. The SM-ESI directed AstraZeneca to propose such a sampling protocol both to illuminate whether additional relevant drafts exist, and also to test whether such GEL-related "draft" materials have any genuine relevancy or probative value to plaintiffs' claims at all. This protocol was provided to the SM-ESI and plaintiffs on February 29th and revised March 7th to address the SM-ESI's questions; AstraZeneca has already begun to implement it.[13] Until the results of that process before the SM-ESI is completed and the SM-ESI has made his recommendations, the Court should not address any of the issues raised by plaintiffs' Motion.

---

implement – to search for additional relevant drafts that may not exist within the files of the 103 custodians already produced.

[13] AstraZeneca believes that the sampling presently underway will demonstrate that the drafts or intermediary data removed from GEL are not genuinely relevant or material to this litigation – and, instead, involve predominantly routine editing and fact checking. Considering the massive burden that plaintiffs' Motion seeks to impose, AstraZeneca should at least be given the opportunity to demonstrate the dubious (if any) relevancy of such drafts in the context of this litigation, once the process currently underway at the direction of the SM-ESI is completed.

Moreover, in the meet-and-confer process on these issues before the SM-ESI, AstraZeneca recently provided plaintiffs with their requested list of categories of potentially relevant documents related to GEL and, in good-faith, offered to add *additional* reasonable categories of relevant documents as proposed by plaintiffs. *See* pp. 7-9, *supra*. At plaintiffs' request, AstraZeneca then provided them with a list of over 14,000 categories of Seroquel-related documents in GEL to help plaintiffs inform their requests, if any, for additional GEL-related documents. Rather than permit the meet-and-confer process to run its course, and without selecting any new categories of documents from AstraZeneca's list, plaintiffs raced to file the instant Motion with this Court a few days later – seeking its needlessly overbroad, unduly burdensome, and improperly punitive relief – in the apparent hope of circumventing the process underway on these issues before the SM-ESI. AstraZeneca respectfully submits that the Court should not countenance such tactics. Indeed, in the coming weeks, AstraZeneca's efforts under the SM-ESI's direction will further clarify the issues that plaintiffs have prematurely brought to the Court in their Motion. In the meantime, the Court should deny plaintiffs' Motion and, at a minimum, defer these issues until the SM-ESI's work and recommendations on these issues is completed.

> **B.    Plaintiffs' Motion Should Be Denied Because Any Conceivable Relevancy Or Probative Value Is Vastly Outweighed By The Unduly Burdensome Nature Of The Overbroad Relief They Propose, Which Amounts To An Improper Fishing Expedition**

The Court should also deny plaintiffs' Motion because it seeks to impose a massive undue burden on AstraZeneca with respect to GEL-related draft materials without any showing that their relevancy and probative value warrants plaintiffs' requested fishing expedition. Plaintiffs' Motion nowhere demonstrates the relevancy of the intermediate data they seek, as was

their obligation.  *See Alexander v. F.B.I.*, 186 F.R.D. 154, 159 (D.D.C. 1999) ("[T]he proponent

of a motion to compel discovery bears the initial burden of proving that the information sought is

relevant."); *accord Peacock v. Merrill*, 2008 WL 176375, *8 (S.D. Ala. Jan. 17, 2008); *see also

West v. Miller*, 2006 WL 2349988, *2 (Aug. 11, 2006), *aff'd*, 2007 WL 541943 (N.D. Ill. 2007).

Instead, plaintiffs just repeatedly assert in conclusory fashion that all GEL-related drafts are

highly "relevant" without providing any basis for that sheer speculation, *see* Motion at 12 –

speculation that is contrary to their own admission that many entire categories of GEL Seroquel-

related final documents and intermediate drafts are of no interest to them and simply *irrelevant*

in this litigation.[14]  Moreover, plaintiffs' failure to detail how and why any, much less all, GEL-

related *drafts* are actually relevant is telling – particularly because plaintiffs have now received

production of all *final* versions of GEL-related documents, and also GEL-related *drafts* that were

preserved *elsewhere* in multiple locations, such as custodial files.  AstraZeneca has produced

many such drafts and has now produced the entire GEL database as it relates to Seroquel, which

will contain certain additional drafts captured by GEL.  The work underway before the SM-ESI

on GEL issues – including the sampling of back-up tapes – is intended to answer the precise

question of whether GEL drafts are potentially relevant or, as AstraZeneca has long contended,

they are of little or no relevance.  In the context of the work underway before the SM-ESI on

---

[14] Although plaintiffs now try to assert in their Motion that all "GEL intermediate data unquestionably contains evidence of the state of AstraZeneca's knowledge regarding the safety and efficacy of Seroquel" (Motion at 12), they ignore that the plan AstraZeneca agreed to implement was specifically designed to focus on GEL drafts related to that *exact* issue.  *See* Exh. H at 2-3.  In fact, plaintiffs' own plan to sample GEL backup tapes focuses on the *same* seven categories of documents that are the focus of AstraZeneca's plan.  *See* Exh. N.  Plaintiffs provide no reasons why any other categories of drafts of GEL documents are likely to be relevant to this litigation, let alone every draft as plaintiffs request.

these issues, the onerous relief proposed in plaintiffs' Motion involves an improper "fishing expedition" that should be denied.  *See, e.g., Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1420-21 (11th Cir. 1994); *Melendex v. Mason*, 2007 WL 1471799, *1 (M.D. Fla. May 21, 2007); *New York State Org. for Women v. Cuomo*, 1998 U.S. Dist. LEXIS 10520, **7-8 (S.D.N.Y. July 4, 1998).

Indeed, plaintiffs' request to compel identification of *all* GEL users, followed by depositions and written interrogatories of each person worldwide who has ever used GEL, is excessively overbroad, unduly burdensome, and unnecessary as it will not meaningfully assist in the identification and location of additional potentially relevant GEL-related drafts already underway.  As plaintiffs know, there approximately 1800 GEL *authors* for Seroquel, *see* Objections to SM-ESI's Third Report, Ex. 9, p. 2 (Doc. No. 767), and even more GEL users located domestically and abroad.  *See also* 3/14/08 Draper Decl., ¶ 2.  Unlike plaintiffs' present effort to launch off on a court-approved fishing expedition of costly and invasive discovery in the speculative search for information of dubious marginal relevancy to their claims, AstraZeneca's proposed plan at the direction of the SM-ESI involves a good-faith investigation to identify and produce additional potentially relevant GEL drafts that is reasonable under the circumstances.  If plaintiffs wish AstraZeneca to expand that effort in some particular way in relation to some additional category of drafts that in good-faith they propose as genuinely probative of their claims, AstraZeneca remains willing to entertain such requests.[15]  In the

---

[15] Plaintiffs' demand for a compelled list of all GEL users is sought merely to facilitate their proposed effort for costly satellite discovery (including depositions and written interrogatories) as to each individual who has ever used the GEL database – which is not only itself objectionable, but particularly unwarranted in the undifferentiated manner sought by plaintiffs in the face of AstraZeneca's efforts presently underway under the direction of the SM-ESI.

meantime, the Court should deny plaintiffs' Motion and instead direct plaintiffs to participate in the SM-ESI directed meet-and-confer process on these very issues.

### C.   The Motion's Improper Effort To Pre-Argue Plaintiffs' "Spoliation" Contentions Is Pure Gamesmanship And Must Be Rejected

After emphasizing that they are *not* moving for "spoliation," plaintiffs devote pages to the topic and why they think Rule 37(e)'s "safe harbor" should not apply.  *See* Motion 11-15. AstraZeneca responds briefly to that improper effort to influence the Court on issues before they are presented, because plaintiffs' unripe spoliation accusations are unsupported and without merit under the governing authorities.  *See Flury v. Daimler Chrysler*, 427 F.3d 939, 944 (11th Cir. 2005); *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997); *Lockheed Martin Corp. v. L-3 Comms. Corp.*, 2007 U.S. Dist. LEXIS 79572, *9 (M.D. Fla. Oct. 25, 2007).[16]

Although plaintiffs acknowledge some of the many weighty burdens imposed on those making spoliation assertions, *see* Motion at 11, their conclusory averments and speculative assertions with respect to GEL-related drafts are clearly insufficient to support any finding of spoliation (to the extent plaintiffs ever bring such a motion).  It is well settled that the party asserting spoliation may not rely on speculation; it must make a concrete evidentiary showing

Moreover, plaintiffs are free to inquire about GEL usage in the upcoming depositions of AstraZeneca science and regulatory personnel, which further confirms the meritless nature of plaintiffs' overbroad requests in their Motion.

[16] AstraZeneca has no occasion now to address plaintiffs' arguments with respect to the application of Federal Rule of Civil Procedure 37(e), and reserves its rights to argue this issue – and all other issues related to plaintiffs' "spoliation" accusations – if plaintiffs ultimately file a motion on the issue at some future time.  For present purposes, AstraZeneca notes simply that plaintiffs' unripe and over-reaching spoliation arguments lack credibility and are premised on numerous misstatements; for instance, they even try to suggest that GEL *Seroquel*-related document preservation obligations arose as early as the year 2000 with a U.S Government inquiry pertaining to Zoladex® (*see* Motion at 11-12), an entirely different AstraZeneca drug with nothing to do with Seroquel or plaintiffs' claims in this litigation.

not only that specific evidence actually "existed at one time" and was subject to a "duty to preserve," but also that such evidence is truly "critical" to the party's ability to prove its prima facie case.  *See*, *e.g.*, *Flury*, 427 F.3d at 945-46; *Kimbrough v. City of Cocoa*, 2006 U.S. Dist. LEXIS 87572, **19-20 (M.D. Fla. Dec. 4, 2006) (same); *New York State Org. for Women v. Cuomo*, 1998 U.S. Dist. LEXIS 10520, **1, 7-8 (S.D.N.Y. July 4, 1998) (rejecting spoliation motion where absence of certain "computer database" materials effectively just "deprived [plaintiffs] of a pond in which they would like to have gone on a fishing expedition"); *see also Floeter v. City of Orlando*, 2007 U.S. Dist. LEXIS 9527, **19-20 (M.D. Fla. Feb. 9, 2007); *Lockheed Martin Corp.*, 2007 U.S. Dist. LEXIS 79572, at *9; *Wells v. Orange County School Board*, 2006 U.S. Dist. LEXIS 81265, *7 (M.D. Fla. Nov. 7, 2006).  As the Eleventh Circuit has emphasized, spoliation accusations may pertain only to missing evidence that is "critically important" to the movant's case, *i.e.*, evidence that "goes to the heart of [that] party's ability" to prove its case in chief.  *Flury*, 427 F.3d at 945-46; *see also Kimbrough*, 2006 U.S. Dist. LEXIS 87572, at **19-20.  Put simply, plaintiffs' conclusory assertions that GEL-related drafts are not only "clearly relevant," but "critical" to any ability to make out their prima facie case (Motion at 11-12), are specious, unsupported, and conjectural.  They are plainly insufficient to support any sanction for spoliation.[17]  Thus, while plaintiffs' spoliation contentions are woefully premature at

---

[17] *Compare Kimbrough*, 2006 U.S. Dist LEXIS 87572, at *1 (rejecting spoliation where missing evidence not shown to undermine plaintiffs' ability to make out their prima facie case); *with Flury*, 427 F.3d 939 (finding spoliation where missing automobile was "crucial" to party's claim in crashworthiness case).  Plaintiffs' arguments are also inconsistent with CMO No. 2.  *See* Doc. No. 129, at p. 13 ("failure of any party to have preserved in the past every potentially relevant document . . . shall not in and of itself mean that said party has engaged in spoliation of evidence"); *see also Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997) (emphasizing that "'[m]ere negligence' in losing or destroying the records is not enough"; affirming rejection of spoliation sanctions where missing relevant evidence was "'destroyed under routine procedures

this time, their misguided effort to pre-argue these issues to the Court actually serves only to

confirm the dubious nature of that effort under the governing authorities.

## IV.     CONCLUSION

For the foregoing reasons, plaintiffs' Motion should be denied as premature and the

parties instead ordered to continue negotiating GEL draft issues before the SM-ESI.

Dated:  March 17, 2008                              Respectfully submitted,


                                                    */s/ Benjamin R. Barnett*
                                                    Stephen J. McConnell
                                                    Benjamin R. Barnett
                                                    Philip N. Yanella
                                                    A Elizabeth Balakhani
                                                    DECHERT LLP
                                                    2929 Arch Street
                                                    Philadelphia, PA  19103
                                                    Telephone: (215) 994-4000
                                                    Facsimile: (215) 994-2222
                                                    stephen.mcconnell@dechert.com

                                                    Steven B. Weisburd
                                                    DECHERT LLP
                                                    300 West 6th Street, Suite 1850
                                                    Austin, TX  78701
                                                    Telephone:  (512) 394-3000
                                                    Facsimile:  (512) 394-3001
                                                    steven.weisburd@dechert.com

                                                    *Counsel for AstraZeneca Pharmaceuticals LP*
                                                    *and AstraZeneca LP*

---

without bad faith'") (citation omitted); *Lockheed Martin Corp.*, 2007 U.S. Dist. LEXIS 79572, at
*10 (spoliation contention rejected where moving party did not establish that allegedly missing
emails were not independently "produced in discovery" from another source).

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on March 17, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system through which all participating parties are deemed served.  I further certify that, by using the CM/ECF, the foregoing has been served on plaintiffs' liaison counsel, who is charged with serving any non-CM/ECF participants on the attached Service List.

*/s/ Eliot Walker*

**SERVICE LIST**

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No. 1769**

| | |
|---|---|
| Paul J. Pennock, Esq.<br>Michael E. Pederson, Esq.<br>Weitz & Luxenberg, P.C.<br>180 Maiden Lane - 17th Floor<br>New York, NY 10038<br>Telephone: (212) 558-5500<br>Ppennock@weitzlux.com<br>MPederson@weitzlux.com<br>*Plaintiffs' Lead Counsel* | Camp Bailey, Esq.<br>Michael W. Perrin, Esq.<br>Fletcher Trammell, Esq.<br>Bailey Perrin Bailey LLP<br>The Lyric Centre<br>440 Louisiana, Suite 2100<br>Houston, TX 77002<br>Telephone: (713) 425-7240<br>cbailey@bpblaw.com<br>mperrin@bpblaw.com<br>Plaintiffs' Lead Counsel |
| Larry Roth, Esq.<br>Law Offices of Larry M. Roth, P.A.<br>Post Office Box 547637<br>Orlando, FL  32854-7637<br>Telephone: (407) 872-2239<br>LROTH@roth-law.com<br>*Plaintiffs' Liaison Counsel* | Tommy Fibich, Esq.<br>Fibich, Hampton & Leebron, L.L.P.<br>1401 McKinney, Suite 1800<br>Five Houston Center<br>Houston, TX 77010<br>Telephone: (713) 751-0025<br>tfibich@fhl-law.com |
| Matthew F. Pawa, Esq.<br>Law Offices of Matthew F. Pawa, P.C.<br>1280 Centre St., Suite 230<br>Newton Centre, MA 02459<br>Telephone: (617) 641-9550<br>Mp@pawalaw.com | Robert L. Salim, Esq.<br>Robert L. Salim Attorney at Law<br>P.O. Box 2069<br>Natchitoches, LA 71457-2069<br>Telephone: (318) 352-5999<br>robertsalim@cp-tel.net |
| Keith M. Jensen, Esq.<br>Jensen, Belew & Gonzalez, PLLC<br>1024 North Main<br>Fort Worth, TX 76106<br>Telephone: (817) 334-0762<br>kj@kjensenlaw.com | Scott Allen, Esq.<br>Cruse, Scott, Henderson & Allen, L.L.P.<br>2777 Allen Parkway, 7th Floor<br>Houston, Texas 77019<br>Telephone: (713) 650-6600<br>sallen@crusescott.com |
| Matthew E. Lundy, Esq.<br>Lundy & Davis, LLP<br>333 North Sam Houston Parkway East<br>Suite 375<br>Houston, TX 77060<br>Telephone: (281) 272-0797<br>mlundy@lundydavis.com | E. Ashley Cranford<br>Whatley Drake & Callas<br>2001 Park Place North, Suite 1000<br>Birmingham, AL 35203<br>Telephone: (205) 328-9576<br>ACranford@wdklaw.com |

Case 6:06-md-01769-ACC-DAB   Document 904   Filed 03/17/08   Page 20 of 23 PageID 17019

| | |
|---|---|
| Robert L. Ciotti, Esq.<br>Carlton Fields, P.A.<br>4221 W. Boy Scout Boulevard<br>Suite 1000<br>Tampa, FL 33607-5736<br>Telephone: (813) 223-7000<br>rciotti@carltonfields.com<br>*Attorney for Defendants AstraZeneca*<br>*Pharmaceuticals, LP, and AstraZeneca LP* | Gregory P. Forney, Esq.<br>Shaffer Lombardo Shurin<br>911 Main Street, Suite 2000<br>Kansas City, MO 64105<br>Telephone: (816) 931-0500<br>gforney@sls-law.com<br>rbish@sls-law.com<br>*Attorney for Defendant,*<br>*Marguerite Devon French* |
| Randy Niemeyer<br>22442 Pike 309<br>Bowling Green, MO 63334-5209<br>*Pro Se* | Eric B. Milliken, Esq.<br>3 Sir Barton Ct.<br>Newark, DE 19702<br>*Pro Se* |
| Catherine Solomon<br>3100 N.E. 83<br>Gladstone, MO 64119<br>*Pro Se* | Louisiana Wholesale Drug Co. Inc.<br>C/O Gayle R. White<br>Registered Agent<br>Highway 167N<br>Sunset, LA 70584<br>*Pro Se* |
| Aaron C. Johnson, Esq.<br>Summers & Johnson<br>717 Thomas<br>Weston, MO 64098<br>Telephone: (816) 640-9940<br>firm@summersandjohnson.com | Robert A. Schwartz, Esq.<br>Bailey & Galyen<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744<br>bschwartz@galyen.com |
| Todd S. Hageman, Esq.<br>Simon and Passanante, PC<br>701 Market St., Suite 1450<br>St. Louis, MO 63101<br>Telephone: (314) 241-2929<br>thageman@spstl-law.com | Mark P. Robinson, Jr., Esq.<br>Robinson, Calcagnie & Robinson<br>620 Newport Center Drive, 7th Floor<br>Newport Beach, CA 92660<br>Telephone: (949) 720-1288<br>mrobinson@robinson-pilaw.com |
| Thomas F. Campion, Esq.<br>Steven M. Selna, Esq.<br>Drinker Biddle & Reath, LLP<br>500 Campus Drive<br>Florham Park, New Jersey 07932-1047<br>Telephone: (973) 360-1100<br>Thomas.Campion@dbr.com<br>steven.selna@dbr.com<br>*Attorneys for Defendants Janssen*<br>*Pharmaceutical Products and Johnson &*<br>*Johnson Co.* | Michael Davis, Esq.<br>James Mizgala, Esq.<br>Sidley Austin LLP<br>One South Dearborn<br>Chicago, IL 60603<br>Telephone:  (312) 853-7731<br>mdavis@sidley.com<br>jmizgala@sidley.com<br>*Attorneys for Defendants AstraZeneca LP*<br>*and AstraZeneca Pharmaceuticals, LP* |

| | |
|---|---|
| Elizabeth Raines, Esq.<br>Baker, Sterchi, Cowden & Rice, LLC<br>2400 Pershing Road, Suite 500<br>Kansas City, MO 64108<br>Telephone: (816) 471-2121<br>raines@bscr-law.com | Timothy Reese Balducci, Esq.<br>The Langston Law Firm, PA<br>P.O. Box 787<br>100 South Main Street<br>Booneville, MS 38829-0787<br>Telephone: (662) 728-3138<br>tbalducci@langstonlaw.com |
| Kenneth W. Bean, Esq.<br>Sandberg, Phoenix & von Gontard<br>One City Centre<br>15th Floor<br>St. Louis, MO 63101-1880<br>Telephone: (314) 231-3332<br>kbean@spvg.com<br>Attorney for Defendant Dr. Asif Habib | John Driscoll, Esq.<br>Brown & Crouppen, PC<br>720 Olive St.<br>St. Louis, MO 63101<br>Telephone: (314) 421-0216<br>Jdriscoll@brownandcrouppen.com<br>asmith@brownandcrouppen.com<br>blape@brownandcrouppen.com |
| Aaron K. Dickey, Esq.<br>Goldenberg and Heller, PC<br>P.O. Box 959<br>2227 S. State Road 157<br>Edwardsville, IL 62025<br>Telephone: (618) 650-7107<br>aaron@ghalaw.com | Matthew J. Hamilton, Esq.<br>Pepper Hamilton<br>3000 Two Logan Square<br>18th & Arch Street<br>Philadelphia, PA 19103<br>Telephone: (215) 981-4000<br>hamiltonm@pepperlaw.com |
| Justin Witkin, Esq.<br>Ken Smith, Esq.<br>Aylstock, Witkin & Sasser, PLC<br>4400 Bayou Boulevard<br>Suite 58<br>Pensacola, FL 32503<br>Telephone: (850) 916-7450<br>Jwitkin@AWS-LAW.com<br>ablankenship@aws-law.com<br>ksmith@aws-law.com<br>noverholtz@aws-law.com | David P. Matthews, Esq.<br>Lizy Santiago, Esq.<br>Matthews & Associates<br>2905 Sackett Street<br>Houston, TX 77098<br>Telephone: (713) 222-8080<br>dmatthews@thematthewslawfirm.com<br>lsantiago@thematthewslawfirm.com<br>msalazar@thematthewslawfirm.com |
| Howard Nations<br>Lori A. Siler<br>Howard L. Nations Attorney At Law<br>4515 Yoakum Blvd.<br>Houston, TX 77006-5895<br>Telephone: (713) 807-8400<br>nations@howardnations.com | Mary B. Cotton<br>John D. Giddens, P.A.<br>226 North President Street<br>P.O. Box 22546<br>Jackson, MS 39225-2546<br>Telephone:  (601) 355-2022<br>betsy@law-inc.com |

| | |
|---|---|
| Salvatore M. Machi<br>Ted Machi & Associates PC<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744 | Jona R. Hefner, Esq.<br>3441 W. Memorial, Suite 4<br>Oklahoma City, OK 73134-7000<br>Telephone: (405) 286-3000<br>attorneyokc@hotmail.com |
| David Dickens<br>Miller & Associates<br>105 North Alfred Street<br>Alexandria, VA  22314-3010<br>(703) 519-8080<br>ddickens@doctoratlaw.com | Pete Schneider, Esq.<br>Grady, Schneider & Newman, L.L.P.<br>801 Congress, 4th Floor<br>Houston, TX  77002<br>(713) 228-2200<br>pschneider@gsnlaw.com |
| Fred T. Magaziner<br>Marjorie Shiekman<br>A. Elizabeth Balakhani<br>Shane T. Prince<br>Eben S. Flaster<br>DECHERT LLP<br>Cira Centre<br>2929 Arch Street<br>Philadelphia, PA  19103<br>(215) 994-4000<br>fred.magaziner@dechert.com<br>shane.prince@dechert.com<br>marjorie.shiekman@dechert.com<br>eben.flaster@dechert.com<br>elizabeth.balakhani@dechert.com | Lawrence J. Gornick, Esq.<br>William A. Levin, Esq.<br>Dennis J. Canty, Esq.<br>Levin Simes Kaiser & Gornick LLP<br>44 Montgomery Street, 36th Floor<br>San Francisco, CA 94104<br>Telephone: (415) 646-7160<br>lgornick@lskg-law.com<br>dcanty@lskg-law.com<br>lsimes@levins-law.com<br>jkaiser@lskg-law.com<br>echarley@lskg-law.com<br>ddecarli@lskg-law.com<br>bsund@lskg-law.com<br>astavrakaras@lskg-law.com |
| Scott Burdine, Esq.<br>Hagans Burdine Montgomery<br>Rustay & Winchester, P.C.<br>3200 Travis, Fourth Floor<br>Houston, TX  77006<br>Telephone:  (713) 222-2700<br>sburdine@hagans-law.com | Lowell Finson<br>Phillips & Associates<br>3030 North 3rd Street<br>Suite 1100<br>Phoenix, AZ 85012<br>(602) 258-8900, ext. 295<br>lowellf@phillipslaw.ws |
| Gale D. Pearson<br>Stephen J. Randall<br>Pearson, Randall & Schumacher, P.A.<br>Fifth Street Towers, Suite 1025<br>100 South 5th Street<br>Minneapolis, MN 55402<br>(612) 767-7500<br>attorneys@outtech.com | Robert H. Shultz<br>Heyl, Royster<br>103 West Vandalia Street<br>P.O. Box 467<br>Edwardsville, IL 62025<br>(618) 656-4646<br>rshultz@hrva.com<br>bwallace@hrva.com |

| | |
|---|---|
| Ellen R. Serbin<br>Perona, Langer, Beck, Lalande & Serbin<br>300 San Antonio Drive<br>Long Beach, CA 90807-0948<br>(562) 426-6155<br>davidhwang@plblaw.com | Scott Armstrong<br>1719 West Main Street<br>Suite 201<br>Rapid City, SD 57702<br>(605) 399-3994<br>scottarmstrong1235@eathlink.net |
| Linda S. Svitak<br>Faegre & Benson, LLP<br>90 South 7th Street, Suite 2200<br>Minneapolis, MN 55402-3901<br>(612)766-7000<br>lsvitak@faegre.com<br>wjohnson@faegre.com | James J. Freebery<br>McCarter & English, LLP<br>919 N. Market Street, 18th Floor<br>Wilmington, DE 19801<br>(973) 622-4444<br>jfreebery@mccarter.com<br>tpearson@mccarter.com |
| Richard D. Hailey<br>Ramey & Hailey<br>3891 Eagle Creek Parkway<br>Suite C<br>Indianapolis, IN<br>(317) 299-0400<br>rhailey@sprynet.com | B. Andrew List<br>Clark, Perdue, Arnold & Scott<br>471 East Broad Street, Suite 1400<br>Columbus, OH 43215<br>(614) 469-1400<br>alist@cpaslaw.com<br>lcollins@cpaslaw.com |