# PASS DECLARATION EXHIBIT M

## Pass, Robert W.

| | |
|---|---|
| **From:** | Bogdonoff, Michael [michael.bogdonoff@dechert.com] |
| **Sent:** | Friday, February 29, 2008 11:01 AM |
| **To:** | Craig Ball |
| **Cc:** | Pass, Robert W.; Kerns, Kevin; Coutroulis, Chris S. |
| **Subject:** | GEL Sampling Protocol |
| **Attachments:** | GEL_Back.pdf |

Attached pursuant to your e-mail below is AstraZeneca's ex parte sampling protocol. As established in the below call, once plaintiffs have submitted their protocol to you, you may thereafter provide the parties with both protocols simultaneously.

Michael Bogdonoff

---

**From:** craigball@gmail.com [mailto:craigball@gmail.com] **On Behalf Of** Craig Ball
**Sent:** Friday, February 29, 2008 10:49 AM
**To:** Larry J. Gornick; Dennis Canty; Jaffe, Jonathan
**Cc:** rpass@carltonfields.com; Coutroulis, Chris S.; Kerns, Kevin; Bogdonoff, Michael
**Subject:** GEL Sampling Protocol

I just completed a very brief *ex parte* call with Messrs. Pass and Coutroulis. I've rcently had other *ex parte* calls on the GEL back up systems and tapes, including technical representatives from the UK.

AZ asks that each side submit their proposed sampling protocol to me *ex parte* and that I republish them to all upon receipt of both. I agreed to handle it that way. This is a reminder to the plaintiffs that I'm expecting a proposal from them, as well. Once we drifted past the noon Wednesday submission deadline, I lost track of when each side would submit theirs. I'm expecting AZ's any minute. How do matters stand with the plaintiffs? The pending motion doesn't obviate the need for the sampling protocol. Thank you.

--
Craig Ball
Attorney and Technologist
Certified Computer Forensic Examiner
1101 Ridgecrest
Austin, Texas 78746
TEL: 512-514-0182
MBL: 713-320-6066
FAX: 512-532-6511
E-MAIL: craig@ball.net
WEB: www.craigball.com

```
"EMF <dechert.com>" made the following annotations.
------------------------------------------------------------
```
This e-mail is from Dechert LLP, a law firm, and may contain information that is con
==============================================================================

3/14/2008

**Confidential**

## PROPOSED SAMPLING PROTOCOL REGARDING GEL BACKUP TAPES SUBMITTED PURSUANT TO THE ESI-SPECIAL MASTER'S 2/12/08 DIRECTIVE ON BEHALF OF DEFENDANT ASTRAZENECA

### Introduction

AstraZeneca submits the following sampling protocol regarding GEL backup tapes pursuant to the Special Master's February 12, 2007 Directive ("the Directive"). As set forth in the Directive, the primary purpose for this sampling protocol is to assess the extent, relevance and composition of ESI, if any, formerly in GEL but which was not retained in that database. The Directive establishes the principle that this effort is to be a sampling proposal, and is not to be a broad-based restoration process. We note that while the Directive also provides, [i]f the samples reveal that <u>relevant</u> data was lost but can be cost-effectively recovered from tape, a subsequent or broader sample may be warranted," the Directive also makes clear that it does not direct that any tapes be restored, but rather seeks only a proposal for sampling at this point. Although the Directive is clear in this regard, AstraZeneca does not waive, and expressly reserves, its right to object to the actual implementation of any sampling protocol, together with its right to pursue cost shifting or cost sharing, as appropriate, in connection with the implementation of any sampling protocol or any follow-up activity, if any, related thereto.

Subject to these reservations, in accord with the Directive, AstraZeneca has designed the within sampling protocol with the intent, also expressed in the Directive, that it "be **narrowly** tailored to meet the primary purpose of <u>assessing</u> the probable extent, relevance and composition of non-retained GEL ESI."

The Directive states six goals to be achieved by such sampling protocol:

1. It should target areas of GEL deemed more likely than not to contain Seroquel-related content relevant to the issues in this cause.

2. It should minimize or eliminate duplication of GEL content preserved by AstraZeneca's U.S. Clinical Development Group after March 2006.

3. It should minimize or eliminate duplication of GEL content preserved after December 21, 2007.

4. It should provide an efficient, reliable mechanism (e.g., hash analysis or other techniques) to <u>compare</u> the contents of potentially-relevant areas of GEL where ESI was non-retained with the corresponding areas and content on the sampled tapes reflecting intervals prior to non-retention.

5. The protocol shall identify ESI found on the sampled tapes but now absent from GEL and catalogue all such items, by file name, file type and relevant metadata (including hash value, if calculated). It must encompass both ESI in the nature of documents and in other potentially relevant forms (e.g., communications, annotations, objects and the like).

6. Any potentially-relevant non-retained content restored from tape should be preserved in a readily accessible manner.

AstraZeneca submits that the within protocol meets the above stated goals. While the parties have not yet discussed the timing and manner of production of any such GEL content derived from implementation of the sampling protocol, subject to the reservation of rights stated above, any such

1

**Confidential**

production would be made pursuant to a schedule to be developed following good faith discussions involving the plaintiffs and the Special Master, taking into consideration the volume of GEL content at issue.

### Background

This sampling protocol is the second phase of the Directive. During phase one, AstraZeneca undertook a rigorous investigation to identify existing, useable backup tapes that might contain GEL content. The results of that investigation have been provided to plaintiffs and the Special Master and are summarized briefly as follows:

<u>Available Backup Tapes</u>:

UK: In its transmittal dated February 20, 2008, AstraZeneca identified 499 GEL backup tapes maintained in the UK by IBM.[1] These include several daily backups which, because of their incremental nature and their cycling schedules are unlikely to yield GEL content consistent with the Directive. However, these UK tapes include 13 full backups that may contain Seroquel-related data for the period February, 2007 to the present. In the UK tapes, AstraZeneca believes that Seroquel content would be located on backup tapes for server ▮ and metadata associated with such content would be located on backup tapes for ▮ server ▮.

Sweden: In its transmittal dated February 28, 2008, AstraZeneca identified 1,055 backup tapes maintained in Sweden by IBM that are derived from AstraZeneca's disaster recovery ▮▮. The Swedish tapes include 21 distinct full backups of GEL for the period commencing November 2005 to the present. AstraZeneca believes that Seroquel related content and associated metadata would be located on the Swedish backup tapes for server ▮.

All tapes were backed up by IBM using the ▮ backup program, using tape types LTO1, 2 or 3.

<u>Sampling Protocol</u>[2]:

In consultation with IBM representatives in both the UK and Sweden, AstraZeneca has determined that it is not possible to ascertain the specific content of GEL backup tapes without restoring them. Therefore, it is proposed that GEL content be sampled by the following general protocol:

1. AstraZeneca will identify the dates on which the 13 UK full backup sets and the 21 Swedish full backup sets would have completed their backup of GEL content potentially containing Seroquel content.

---

[1] IBM has determined that at least three tapes are not readable due to either physical damage or I/O errors, including CT0250L1, CT0294L1 and CT0012L1.

[2] This protocol involves systems in the UK, Sweden and the United States as well as complex implementation and other issues for which information is still being gathered. As such, AstraZeneca reserves the right to modify this protocol as may be necessary as such additional information is obtained.

2

**Confidential**

2. AstraZeneca will prepare a list of Seroquel documents approved during the period for which full backup tapes are available, November, 2005 through February, 2006.

3. Plaintiffs will select from the list provided in (2) above a date or closely proximate dates on which Seroquel documents of interest were approved.

4. AstraZeneca will then restore the GEL backup set rendered closest in time to the approval date(s) selected by plaintiffs.

5. Once restored, the resultant GEL content will be extracted by AstraZeneca and transferred to FTI for processing.

6. FTI will then compare such newly extracted GEL content, consistent with the above identified goals regarding de-duplication, to identify intermediate data (i.e. drafts and annotations) related to approved Seroquel documents derived from the restored backup set.

7. Plaintiffs and AstraZeneca will then confer regarding the volume of such restored intermediate data for each of the approved Seroquel documents within the restored backup to select the approved Seroquel document(s) for which intermediate data will be produced, taking into account the objective of efficiently and expeditiously reviewing and producing the intermediate data derived and avoiding unreasonable burden on AstraZeneca in doing so.

### Implementation Details

Details concerning the timing and manner of restoring such a full backup set are set forth below.

Methodology:

The AstraZeneca protocol for sampling GEL backup tapes requires first that the documents and metadata be retrieved from backup tapes. This will require AstraZeneca to create a system environment into which the data can be restored consisting of a ████ server with 1 terabyte of storage available to hold the restored data, together with compatible tape drives. AstraZeneca intends to use the Disaster Recovery system (DR) in ████████, where it will install and build ████ ████████████ on a separate operating environment on this system. No additional hardware acquisition and installation would be required to restore the Swedish tapes; if UK tapes are selected, additional, compatible tape drives will be required. If the ████ facility is, for unforeseen reasons, unavailable for this purpose, addition time will be necessary to (a) purchase a ████ server, 1 TB of storage space and necessary software and licences; (b) build the server and install Oracle; and (c) build and validate the Documentum installation on the server.

To restore data, the pro-forma docbases will be cloned to allow the restored metadata to be loaded, various configuration settings will need to be updated before the docbase is bounced and brought on line. Once all the data is restored, the docbase will be validated.

The data will be extracted from the system environment into spreadsheets using the same tool previously used to extract the draft and approved documents from the GEL production system. The extracted data spreadsheets will then be transmitted to FTI for further processing.

3

**Confidential**

Timing:

System development: AstraZeneca estimates it would require approximately 10 days to build the system environment within the existing ▮▮▮▮ system to reach the point at which restoration of the first Swedish tape set could occur. To build the system environment using the existing ▮▮▮▮ system to the point where AstraZeneca would be ready to restore the first UK tape set would take an additional increment of time because, among other things, necessary tape drives will need to be acquired, installed and appropriately configured.

Restoration of a full backup set: AstraZeneca estimates it will require approximately 25 days to restore data from a single set of full backup tapes, with required activities including (a) restoration of the chosen tape set; (b) validation and reactivation of docbase; (c) database extraction; (d) migration to FTI's environment; and (e) data de-duplication.

Any production of documents or data derived pursuant to this protocol will be subject to AstraZeneca's review process, including determinations regarding privilege, confidentiality and, as appropriate, redaction.

4