# PASS DECLARATION EXHIBIT Q

| | | |
|---|---|---|
| To: | Craig Ball, SM-ESI | March 12, 2008 |
| Fr: | Dennis Canty | |
| Re: | GEL Sampling Protocol | |

As we have previously advised during SM-ESI conferences, plaintiffs continue to harbor at least two major concerns with the sampling protocols suggested by AstraZeneca.

First, the limited time period for which backup tapes are available will not provide a representative sample of the data AstraZeneca removed from GEL. This time period excludes events of substantial importance to the litigation, most notably the early 2004 U.S. label change to reflect diabetes-related warnings. Any sampling of these tapes will therefore suffer from that inherent flaw, and will not conclusively answer questions concerning the extent and relevance of ESI which AstraZeneca removed from GEL.

Plaintiffs' second major concern is the delay associated with the suggested protocols. Plaintiffs have here synthesized the various components of AstraZeneca's latest proposal (March 7 ) and produced a timeline. The timeline reflect plaintiffs' computation of the various dates associated with AstraZeneca's proposal, and is intended as an initial framework for discussion, for ferreting out hidden delays, and to assist in finding ways to accelerate the timetable wherever possible. The timeline also reflects plaintiffs' proposed changes to the protocol.

**Comment [DJC1]:** Revised Samplin Protocol - Markup

March 11?   AstraZeneca estimates it will require approximately 10 days for the system environment to be built and validated on the existing Mölndal hardware such that restoration of backup tapes may commence. This effort is scheduled to commence [March 10-11].

**Comment [DJC2]:** Has the process begun? If not, why not?

March 14   AstraZeneca will identify the dates on which the 13 UK full backup sets and the 21 Swedish full back up sets would have completed their backup of GEL content potentially containing Seroquel content. This information will be provided to plaintiffs on or before March 14, 2008.

March 14   AstraZeneca will prepare a list of all Seroquel documents approved during the period for which full backup tapes are available (November, 2005 through February, 2008) and the dates those documents were approved, and will provide all audit trails and logs of those approval events.

**Deleted:** ,

March 21   Based upon this list of Seroquel documents, the audit trails, and logs, Plaintiffs will identify up to three monthly periods during which Seroquel documents of interest were approved.

**Deleted:** select from the list provided in (2) above a date or closely proximate dates on

|  |  |
|---|---|
|  | AstraZeneca will then restore the GEL backup set for the period immediately prior to the approval events, and most likely to capture the intermediate data destroyed during the time periods selected by plaintiffs. |
|  | Once restored, the resultant GEL content will be extracted by AstraZeneca and transferred to FTI for processing. |
|  | FTI will then compare such newly extracted GEL content, consistent with the above identified goals regarding de-duplication, to identify the intermediate data (i.e. drafts and annotations) related to approved Seroquel documents derived from the restored backup set. |
| April 15 | AstraZeneca estimates it will require approximately 25 days to restore data from a single set of full backup tapes, with required activities including (a) restoration of the chosen tape set; (b) validation and reactivation of docbase; (c) database extraction; (d) migration to FTI's environment; and (e) data de-duplication. |
|  | AstraZeneca will provide the Special Master as soon as practicable upon receipt the de-duplicated raw intermediate GEL content derived from the restored tapes on an ex parte basis to enable the Special Master to evaluate such GEL content contemporaneous with AstraZeneca's review and production process. |
|  | AstraZeneca will provide plaintiffs with information regarding the volume and nature of the restored intermediate data.  Plaintiffs and AstraZeneca will then confer in order to determine whether any of the restored intermediate data may be excluded from the review and production process, taking into account: (a) that this is a "sample" data set, and is therefore already substantially limited; and (b) this sampling process is necessitated by AstraZeneca's failure to preserve this data during a period of obligation to do so. |
| April 18 | AstraZeneca will begin review of all intermediate data not excluded by agreement. |
| May 9 | AstraZeneca will produce all intermediate data to plaintiffs. |

Margin notes (Deleted):
- rendered
- closest in time to the approval date(s)
- regarding the volume of such restored intermediate data for each of the approved Seroquel documents within the restored backup to select the approved Seroquel document(s) for which intermediate data will be produced,
- the objective of efficiently and expeditiously reviewing and producing the intermediate data derived and avo
- iding unreasonable burden on AstraZeneca in doing so.

Proceeding with AstraZeneca's proposal means that plaintiffs will not be reviewing these documents until the middle of May.

Had AstraZeneca been forthcoming when the issue of GEL intermediate data was first surfaced in October, this proposed sampling process would be complete.  The frustratingly circular response to the GEL investigation is the only reason that the parties face these time constraints.  These facts should inform whatever SM-ESI directives may be necessary to obtain a representative sample as expediently as possible.  To that end, plaintiffs suggest the following alternative protocol and time frame:

| Date | Action |
|---|---|
| March 12 | AstraZeneca will prepare whatever system environment may be necessary for the following. |
| March 14 | AstraZeneca will identify the dates on which the 13 UK full backup sets and the 21 Swedish full back up sets would have completed their backup of GEL content potentially containing Seroquel content. This information will be provided to plaintiffs on or before March 14, 2008. |
| March 14 | AstraZeneca will prepare a list of all Seroquel documents approved during the period for which full backup tapes are available (November, 2005 through February, 2008) and the dates those documents were approved, and will provide all audit trails and logs of those approval events. |
| March 21 | Based upon this list of Seroquel documents, the audit trails, and logs, Plaintiffs will identify up to three monthly periods during which Seroquel documents of interest were approved.<br><br>AstraZeneca will then restore only the database portion of the GEL backup set for the period immediately prior to the approval events, and most likely to capture the intermediate data destroyed during the time periods selected by plaintiffs. |
| March 25 | From the restored databases, AstraZeneca will produce a list of Seroquel-related documents, including the path and filename, information regarding the existence and volume of intermediate data associated with each, (i.e., the number of drafts, revisions, annotations and comments), and any descriptive fields. Omitted from this list will be any documents or intermediate data included in AstraZeneca's March 14 GEL production. |
| March 28 | Plaintiffs will identify 200 documents from that list. |
| March 31 | AstraZeneca will restore and produce to SM-ESI all selected documents and associated metadata. |
| April 4 | AstraZeneca will review and produce all selected documents and associated intermediate data to plaintiffs. |

**Comment [DJC3]:** If AstraZeneca seriously contends that this cannot be done, or would require more than one day per database to perform, AstraZeneca should provide evidence of the same.

**Comment [DJC4]:** If AstraZeneca seriously contends that this cannot be done, or that complete production would require full restoration of the GEL environment, AstraZeneca should provide evidence of the same.