UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

ORLANDO DIVISION

| | |
|---|---|
| In Re:  Seroquel Products Liability Litigation<br>MDL Docket No.  1769<br><br>DOCUMENT RELATES TO ALL CASES | Case No. 6:06-md-01769-ACC-DAB<br><br>**SUPPLEMENTAL STATEMENT IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL IDENTIFICATION AND PRODUCTION OF "INTERMEDIATE DATA" FROM ASTRAZENECA'S "GEL" DATABASE** |

## INTRODUCTION

At the March 24 hearing on plaintiffs' motion, the SM-ESI accurately summarized the state of the record: there is no question that AstraZeneca decided not to retain relevant ESI during a period of preservation obligation; the questions remaining are the extent to which plaintiffs have been prejudiced by AstraZeneca's failures, and the extent to which that prejudice may be mitigated.  Transcript of Hearing, March 24, 2008; 51:14-52:3.  In order to answer the remaining questions, plaintiffs request the Court's assistance in the following areas:

1) Identification of all relevant intermediate data destroyed;

2) Restoration of all relevant intermediate data from the limited available backup tapes; and

3) Recovery of all relevant intermediate data which AstraZeneca contends may have been retained outside of GEL.

The specific relief requested in each of these areas is addressed below.

**IDENTIFICATION OF ALL INTERMEDIATE DATA DESTROYED**

As set forth in plaintiffs' motion, in October of 2007, the SM-ESI inquired of AstraZeneca whether GEL tracks the destruction of intermediate data. In November of 2007, AstraZeneca informed the SM-ESI that it did not. Plaintiffs' motion provided evidence to the contrary. Though that evidence was featured prominently at the hearing, it remained unrefuted by AstraZeneca.

The day after the hearing, during a telephone conference with the SM-ESI, AstraZeneca confessed that log files did indeed exist, but informed plaintiffs and the SM-ESI that such log files had been overwritten on a monthly basis, and had not been backed up. (Exhibit 1.) In other words, for five months after informing the SM-ESI that the information did not exist, AstraZeneca has continued to periodically delete it. After "covering its tracks" by deleting intermediate data related to how and why it changed or decided not to change warnings of Seroquel side effects, AstraZeneca has covered the covering, by deleting the log files.

On April 3, AstraZeneca reversed field again, indicating that the log files may have been backed up on AstraZeneca's UK servers. (Exhibit 2).

Also on April 3, the day before this filing was due, AstraZeneca produced a sample of the log files created by GEL. While plaintiffs have not had the opportunity to fully analyze what was delivered, the attached excerpt appears to indicate that GEL logs information such as the identity of the final document to which deleted data relates, the date intermediate data was deleted, the user performing the deletion, and the number of versions which were deleted. (Exhibit 3.)

Plaintiffs are entitled to any information which would assist in the identification of all relevant ESI that AstraZeneca deleted from GEL. If log files or audit trails exist or may be

recovered, they may assist the parties, the SM-ESI and the Court in recovering ESI (if possible) and in assessing the extent of prejudice resulting from irretrievable loss. AstraZeneca continues to be less than candid with respect to GEL's ability to track the deletion of intermediate data. Plaintiffs request that the Court issue an order as follows:

> The SM-ESI (with such technical assistance he may deem appropriate) shall conduct an inspection of the GEL database. The SM-ESI shall:
>
> (a) assess the operation and capability of GEL and related backup systems to capture and retain information associated with deletion of Seroquel-related intermediate data, including (without limitation), logs or audit trails;
> (b) ascertain the extent to which such records exist;
> (c) investigate the facts and circumstances surrounding any failure to retain such data; and
> (d) identify any GEL functionality or content which may otherwise assist in identification or recovery of Seroquel-related intermediate data deleted from GEL.
>
> Within seven days, AstraZeneca will provide SM-ESI with unfettered access to all systems, documentation, and technically sophisticated representatives necessary to perform the inspection.

## RESTORATION OF DATA FROM BACKUP TAPES

In the weeks prior to the March 24 hearing, the SM-ESI directed the parties each to devise a proposed sampling protocol, in order to determine the nature and volume of deleted ESI which might be obtained from restoration of backup tapes. At the hearing, plaintiffs presented evidence of the substantive nature and significant volume of the ESI destroyed. Following the hearing, AstraZeneca finally produced some "GEL-originated" material: GEL users' XML annotations proposing changes to draft documents. The annotations were produced with no apparent method to associate them with their corresponding draft documents. As before, plaintiffs extracted some excerpts at a cursory first glance, without the aid of any document review platform. It is clear from the annotations themselves that their content is vitally relevant

to the substantive issues in the case (Exhibit 4.) If there remained any doubt that this ESI was of critical importance, the question is now answered conclusively.

Plaintiffs objected to the sampling protocol proposed by AstraZeneca for various reasons, but most importantly because AstraZeneca could give no date by which the relevant ESI from the backup tapes would be delivered to plaintiffs. AstraZeneca nevertheless "began the process of implementing" its own suggested protocol, restoring the earliest backup tape set in existence, which dates to November 2005. At the hearing, AstraZeneca informed the Court that, pursuant to its protocol, it would submit to plaintiffs information regarding the data restored from that tape set, and the data would be ready for processing by the end of that week. Transcript of Hearing March 24, 56:14-25. AstraZeneca failed to live up to this promise.

Instead, during the March 27 SM-ESI conference, AstraZeneca proposed to skip the sampling protocol and made a new proposal. Essentially, AstraZeneca proposed to restore backup tapes at trimester intervals over a two-year period, hoping to recover as much of the destroyed ESI as possible. AstraZeneca's proposal would not preclude restoration of additional tapes in the event plaintiffs identified relevant material that the initial restoration effort failed to reach. AstraZeneca proposed to then review and produce a comparatively small portion of the restored data – only that ESI which fell into one of seven production "categories" it had previously identified. Again, AstraZeneca's proposal failed to articulate a date by which the ESI would be delivered to plaintiffs. Plaintiffs posed questions related to AstraZeneca's proposal, to which AstraZeneca promised to provide answers (Exhibit 5.) Based upon AstraZeneca's promise to provide this information, plaintiffs agreed not to oppose AstraZeneca's motion for an extension of time to file the submittals ordered by the court on March 24. (*Id.*)

The following day, without providing the answers to plaintiffs' questions, AstraZeneca announced its intention to begin restoration tapes on a trimester basis – without first determining that backup tape sets existed for the time periods it proposed to restore. (Exhibit 6.) As has become the norm in this litigation, plaintiffs attempted to assist AstraZeneca in the analysis of its own ESI. Unfortunately, because AstraZeneca had not provided plaintiffs with data which might assist in making a qualitative analysis of backup tape sets, (i.e., which sets might contain concentrations of the most relevant intermediate data) plaintiffs were only able to provide AstraZeneca with a quantitative analysis (i.e., which sets might contain the most intermediate data overall). (*Id*.) Ultimately, AstraZeneca states it has selected seven backup tape sets for restoration, and that it has begun the restoration process. (Exhibit 2.)

AstraZeneca did not respond to plaintiffs' inquiries regarding its proposal until yesterday, April 3. In its response, AstraZeneca failed to answer most of plaintiffs' questions, including (most importantly) when the restored data would reach plaintiffs. (*Id*.)

The infirmities in AstraZeneca's proposal are at least twofold: <u>first</u>, plaintiffs are entitled to all relevant intermediate data, not just ESI falling into certain categories vaguely described by AstraZeneca; <u>second</u>, there is no date upon which plaintiffs can expect that production of this critically relevant ESI will be complete.

AstraZeneca was on notice of its obligation to seek out, recover and produce this ESI certainly no later than October of 2007, and no information "discovered" in AstraZeneca's "investigations," no evidence presented by plaintiffs' motion, and nothing unearthed by the SM-ESI's efforts was unknown or unknowable to AstraZeneca in October. To the extent any delay in production is attributable to the process of review by AstraZeneca's attorneys, that is a luxury to which AstraZeneca (by virtue of its delay, sleight of hand and misdirection) is no longer

entitled. In order to ensure that the documents are produced as quickly as possible, plaintiffs are willing to enter into a clawback agreement to preserve claims of privilege. Plaintiffs request that the Court enter the following order:

> AstraZeneca shall restore GEL backup tapes for the periods March, May, September and December 2006 and March, June and August 2007. From the resulting data set, AstraZeneca shall produce to plaintiffs all data from the Clinical and Regulatory folder paths of the GEL Seroquel cabinet, deduplicated, no later than May 30, 2008.

## RECOVERY OF DATA OUTSIDE GEL

During the March 27 teleconference with the SM-ESI, AstraZeneca indicated that it continues with a process to identify ESI which may have been saved by GEL users on local drives. However, as of March 27, AstraZeneca had interviewed only 10-11 people, and identified the files of only 20-25 people for review and collection. (Exhibit 5.) The need for transparency in this process could not be clearer. Though AstraZeneca offered to make this process more transparent, it failed to specifically commit to how that might be accomplished, and failed to respond to plaintiffs questions regarding the same.

Plaintiffs therefore request the following order:

Within 11 days, AstraZeneca shall:

(a) identify all persons with permissions to "approve" Seroquel-related GEL documents, from January 1, 2000 to present, providing name, dates of employment, and positions held;
(b) identify all persons which AstraZeneca has interviewed or plans to interview in efforts to recover Seroquel-related intermediate data deleted from GEL;
(c) identify the substance of the interviews conducted and the results;
(d) identify all potential sources for the recovery of such data.

AstraZeneca shall produce to plaintiffs all documents or ESI which it contends were retained by GEL users outside of GEL no later than May 30, 2008.

Plaintiffs are authorized to proceed with discovery of facts and circumstances surrounding AstraZeneca's failure to retain Seroquel-related intermediate data in the GEL database, including depositions on written questions or oral examination.

Dated:  April 4, 2008                LEVIN SIMES KAISER & GORNICK LLP


                        /s/ Dennis J. Canty
                    Lawrence J. Gornick (CA State Bar No. 136290)
                    Dennis J. Canty (CA State Bar No. 207978)
                    44 Montgomery Street, 36th Floor
                    San Francisco, CA  94104
                    Telephone:  415-273-8138
                    Facsimile:  415-981-1270
                    E-mail:     lgornick@lskg-law.com
                                dcanty@lskg-law.com