UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE:  Seroquel Products Liability Litigation

MDL DOCKET NO. 1769

_____

This Document Relates to ALL CASES

ASTRAZENECA'S POSITION PAPER CONCERNING
IDENTIFICATION AND PRODUCTION OF ADDITIONAL GEL DRAFTS

I.    INTRODUCTION

Pursuant to the Court's directive at the March 24, 2008 hearing, AstraZeneca LP and

AstraZeneca Pharmaceuticals LP ("AstraZeneca") respectfully submit this position paper to

outline a workable proposal for the identification and production of additional Seroquel GEL

draft documents.

At the outset, AstraZeneca notes that it has to date produced ten million pages of

custodial documents, including tens of thousands of pages of draft clinical and regulatory

documents, and nearly *nine million pages* of Seroquel documents from GEL, of which almost

half are drafts.  It is unlikely that draft documents significant to plaintiffs' claims have not yet

been produced, and plaintiffs have not identified one draft document relevant, let alone critical,

to their case that is missing.  Nevertheless, AstraZeneca continues to actively work under the

auspices of the Special Master-ESI ("SM-ESI") to identify and produce additional Seroquel GEL

draft documents yielded by AstraZeneca's initiatives described below.

As explained at the March 24 hearing, AstraZeneca has implemented two separate

initiatives to identify and produce additional Seroquel draft documents.  Since the hearing,

AstraZeneca has expanded the scope of both initiatives.  First, AstraZeneca has undertaken an

ongoing comprehensive targeted interview plan to identify authors/contributors with responsibility for 7 categories of key documents. This interview plan has yielded the names of an additional 16 AstraZeneca employees who may possess draft documents in the 7 key categories. Mindful of the Court's desire for a prompt resolution of this issue, AstraZeneca has already substantially collected documents from these additional custodians and begun processing those draft documents for review and production. AstraZeneca expects to begin rolling production by April 25, 2008, and anticipates substantially completing this production by May 30, 2008. AstraZeneca is prepared to provide significant detail about its interview plan to accommodate plaintiffs' request for transparency into the interview process. Additionally, AstraZeneca has also broadened its plan to utilize GEL metadata to identify additional GEL authors within the key categories of Seroquel documents, contact those authors to determine if their files contain draft Seroquel GEL documents, and produce additional relevant drafts.

Second, AstraZeneca has initiated restoration of GEL backup tapes dating back to the earliest existing tapes (November 2005). It expects to complete restoring the seven sets of backup tapes selected by the plaintiffs by approximately May 5, 2008, and to commence reviewing and producing documents restored therefrom on a rolling basis while such restorations proceed. Importantly, with the assistance of the SM-ESI, AstraZeneca has revised and expanded its backup tapes proposal significantly—the plan now calls for full restoration and production from seven (7) key categories of GEL content rather than sampling. This modification addresses plaintiffs' concerns that the sampling protocol as initially formulated was too limited in scope.

AstraZeneca's two-pronged initiative continues to be the most effective and sensible mechanism for the identification and production of additional drafts. In contrast, Plaintiffs'

request for a sweeping order for immediate production of all Seroquel GEL drafts within the

company regardless of relevance to this case—an order with which AstraZeneca cannot possibly

comply—is unnecessary, punitive, and without merit.  Similarly, plaintiffs' overreaching and

legally insufficient request that GEL be made available for inspection or placed in receivership is

unnecessary and without legal basis.  Accordingly, the Court should reject Plaintiffs' requested

relief and permit AstraZeneca to continue its work under the auspices of the SM-ESI.

## II.    ARGUMENT

### A.    AstraZeneca's Two Initiatives Provide A Comprehensive Mechanism For Identification And Production Of Additional Draft GEL Documents.

AstraZeneca has launched two separate initiatives—a targeted interview plan and the

restoration of GEL backup tapes—to identify and produce additional draft GEL documents.

These initiatives were crafted and implemented at significant expense, after careful consideration

of the dispute before the Court, and modified to take into account the SM-ESI and plaintiffs'

suggestions and concerns.  Since the March 24 hearing, AstraZeneca has augmented each of its

two initiatives to broaden the scope of its efforts, and identify and produce as many additional

Seroquel GEL drafts as reasonably possible.  Importantly, in an effort to resolve the issues before

the Court, AstraZeneca has made significant concessions, both on the scope of its restoration

program and its willingness to provide information concerning the interview process.

#### 1.    AstraZeneca's Targeted Interview Plan Has Thus Far Yielded Identification And Collection Of The Files For Additional Custodians In 7 Key Categories.

GEL contains *all* global regulatory submissions for all products.  A wide range of

Seroquel regulatory documents on GEL have absolutely nothing to do with the issues in this

litigation.[1] AstraZeneca has therefore devised a plan consisting of targeted interviews using objective criteria to identify individuals (beyond the 103 custodians) that may have drafts of *relevant* GEL Seroquel documents in their files. *See* AstraZeneca's Proposed Plan for Reasonable Identification and Production of Material Seroquel "GEL Drafts" (Doc. 906-9). AstraZeneca's plan focuses on locating GEL drafts in 7 categories of key regulatory and safety documents,[2] which relate specifically to plaintiffs' failure to warn claims, and aims to identify individuals within the company with substantive responsibility for those categories. Rather than a needless search for each and every draft document, concentrating on limited key categories enables AstraZeneca to identify and produce additional relevant drafts efficiently and quickly. Indeed, a search for drafts of *all* Seroquel documents, many of which plaintiffs admit are of no interest and irrelevant, would be unduly burdensome and unnecessary.

This targeted interview process makes sense because as AstraZeneca has repeatedly explained, there is nothing about the way GEL operates that would preclude the continued existence of drafts and annotations outside of GEL, even after a GEL document is approved, and drafts and annotations are removed from the system. GEL users have the ability to save draft documents and related annotations to their email files, hard drive or document management system, or alternatively, can print and save hard copies. For Seroquel, in particular, many authors and key users routinely operated outside the GEL system, and saved draft documents locally to their files. The interview process targets the files of these individuals; any Seroquel

---

[1] AstraZeneca provided the Court with examples of GEL documents not relevant to this litigation in its opposition to plaintiffs' motion to compel (Doc. 904) at page 5.

[2] Notably, the demonstrative exhibits plaintiffs used at the March 24 hearing were drafts of a Discussion Document and a Justification Document, and thus, would have been included in this plan.

draft GEL documents contained within their custodial files will be produced. Significantly, this plan is without any time limitations, regardless of when the GEL drafts were created, revised, or saved.

Over the last month, under the guidance of the SM-ESI, AstraZeneca began this process and interviewed high level employees to gather the names of other employees likely to have had substantive drafting input on the 7 categories. The interviews focused on the individuals' roles with respect to categories of key documents, their specific practices concerning use of GEL and drafting and/or commenting on documents, and names of other individuals within their department with drafting or commenting responsibilities relating to the 7 categories. These interviews have thus far yielded the names of 16 additional authors/contributors (in addition to those whose files have already been produced to plaintiffs) with potential responsibility for the 7 categories. AstraZeneca has already interviewed 15 of the individuals identified, and substantially collected their custodial documents. Any Seroquel draft GEL documents contained in the files of these individuals is being processed for review and production to plaintiffs. AstraZeneca approximates that it will begin rolling production of non-privileged draft documents as early as April 25, 2008, and subject to unexpected delays, anticipates that it will complete the production for these 16 custodians by May 30, 2008.

The targeted interview plan has thus far confirmed that nearly all drafts of key regulatory and safety documents have already been produced from the files of the 103 custodians. Draft documents (not previously produced) that may exist in the files of the 16 additional custodians lie, at best, at the outer margins of discovery plaintiffs reasonably need in this case. This will likely be true for other individuals identified through the interview process. Nevertheless, AstraZeneca will continue with this interview initiative to identify other pertinent individuals and

will keep the Court, the SM-ESI and plaintiffs apprised of its progress. AstraZeneca expects to complete these interviews by April 18, 2008.

In addition to identifying other authors/contributors through employee interviews, AstraZeneca has broadened its plan and undertaken a process to utilize GEL metadata to compile a list of GEL authors of Seroquel documents within the key categories. AstraZeneca intends to contact these individuals to determine whether their files contain any draft documents. Relevant non-privileged draft GEL documents, not previously produced, will be produced.

Plaintiffs have criticized the supposed lack of transparency in AstraZeneca's interview plan. While AstraZeneca objects to plaintiffs' direct involvement in the attorney-client privileged, work product interviews of AstraZeneca employees, it is willing to share reasonable information as to the interview process with plaintiffs without waiving any privileges. For example, AstraZeneca is willing to provide plaintiffs with a list of the interviewees, a general description of the subject areas to be covered at the interviews, and whether AstraZeneca will collect and produce documents from the interviewees. Moreover, plaintiffs are welcome to suggest additional interview topics. Short of allowing plaintiffs to sit-in on the interviews—which is a violation of AstraZeneca's due process rights and the attorney-client and work product privileges—AstraZeneca is willing to entertain plaintiffs' suggestions for other ways to make the process more transparent.

### 2.   AstraZeneca Has Implemented A Plan For Restoration And Production Of GEL Drafts From Backup Tapes.

Since the March 24, 2008 hearing, AstraZeneca has revised its proposal to sample GEL backup tapes to address plaintiffs' concerns that the former plan was too limited in scope. Although the SM-ESI has expressed a preference for a *sampling* protocol—and rejected plaintiffs' prior demands for wholesale production of drafts from backup tapes—in an effort to

resolve this issue, AstraZeneca has agreed to move beyond a sampling protocol and to *produce* Seroquel GEL drafts restored from the backup tapes. AstraZeneca initially offered to restore 6 backup tape sets (on a trimester basis) and began preparing to go forward with the restoration. Late last week, however, plaintiffs demanded that more tape sets be restored. After negotiations with plaintiffs, AstraZeneca has now agreed to restore eight (8) backup tape sets—four (4) tape sets from 2006, three (3) tape sets from 2007, and a tape set from November 2005 (which has already been restored)—or one tape set for each 4 month period for which such tapes are available. Once each tape set is restored, AstraZeneca will extract draft documents and will prepare for production to plaintiffs those falling within the 7 key categories.

With this input from plaintiffs, AstraZeneca began restoration on March 31, 2008. AstraZeneca has done so with the understanding that plaintiffs may request a broader production of documents at a later date (although AstraZeneca expressly specifically reserves its right to object to additional restorations). AstraZeneca has devoted significant resources to this process, worked with its vendors to invent a new restoration and extraction tools and taken steps to secure additional capacity to handle the project. The scheduled restoration completion date must now account for 8 backup tape sets, which necessarily will take longer to restore than AstraZeneca's proposed 6 tape sets. If matters proceed as scheduled, AstraZeneca hopes to complete the restoration of the 8 backup tape sets by May 5, 2008. The restoration process, however, involves many unique and complex technical variables that impact AstraZeneca's ability to precisely predict a completion date, and therefore, the May 5 projection is an estimate.

Throughout this period, however, AstraZeneca anticipates that tapes will be restored, and documents reviewed and produced to plaintiffs on a rolling basis. AstraZeneca expects to begin production of draft documents restored from the backup tapes by May 1, 2008. Of course, this

7

date hinges on a number of unknown variables, notably the volume of the drafts restored. Because certain documents may be privileged or contain patient identifying information that AstraZeneca is obligated, pursuant to federal and many foreign laws, to redact, AstraZeneca is not in a position today to project a production completion date—although AstraZeneca is optimistic that deadlines can be proposed in the coming weeks as the restoration process moves ahead.

### B. Plaintiffs' Proposed Relief Is Unnecessary, Overbroad, And, In Some Respects, Simply Impossible.

Plaintiffs continue to advocate an order—namely, immediate production of all intermediate data—with which AstraZeneca cannot comply. As late as last week, plaintiffs forwarded a proposed order to the SM-ESI, which sought broad production of *all* intermediate data by May 1, 2008. *See* March 27, 2008 Canty Email and attached Proposed Order (Exh. A). Plaintiffs are well aware that AstraZeneca cannot possibly produce all intermediate data on such a short schedule, and their insistence for such an impossible order only highlights their true motivations here. Plaintiffs' request that AstraZeneca search for and produce all Seroquel GEL drafts that exist within the company is unreasonable and burdensome, especially considering plaintiffs concede that many document types on GEL are facially irrelevant.

Similarly, plaintiffs' proposal that the SM-ESI "inspect" GEL is clearly unreasonable and without legal basis. Because of the enormous inconvenience, disruption to ongoing business operations, and the potential for access to privileged or confidential materials, direct access to live databases in strongly disfavored. *See In re Ford Motor Co.*, 345 F.3d 1315 (11th Cir. 2003) (direct access to party's databases is strongly disfavored); Fed. R. Civ. P. 34, Advisory Committee Notes ("Courts should guard again undue intrusiveness resulting from inspecting or testing such systems.") . Plaintiffs have articulated no basis to support such an intrusive remedy.

8

AstraZeneca has already produced to plaintiffs all Seroquel-related materials on the GEL database as of December 2007, and developed an export utility to preserve all Seroquel GEL draft from that time forward.  Moreover, before the Court is a motion to compel discovery, and the appointment of SM-ESI to "inspect" GEL is not designed to locate and produce the additional GEL intermediate data sought by plaintiffs, which ought to be the focus of any judicial remedy.  Plaintiffs' proposal is essentially a premature court-sanctioned exercise to develop additional facts to support plaintiffs' purported spoliation motion.

Plaintiffs' proposed order also asks that SM-ESI also take possession of GEL back-up tapes and commission another party to do the very restoration that AstraZeneca is currently in the process of completing.  This too is both illogical and without legal merit.  Plaintiffs' request is tantamount to asking for receivership of the GEL back-up tapes, which is a remedy strongly disfavored in this Circuit.  *Citronelle-Mobile Gathering, Inc. v. Watkins*, 934 F.2d 1180, 1188 (11th Cir. 1991) (quoting *SEC v. Spence & Green Chem Co.*, 612 F.2d 896, 904 (5th Cir. 1980))("[T]he imposition of a receivership on a corporation is a drastic measure, the detrimental business effects of which should be carefully considered.").  Its also fundamentally unnecessary insofar as AstraZeneca has already begun to restore draft materials from the GEL backup tapes. Appointing a vendor to do exactly what AstraZeneca is doing now would unnecessarily add complexity and substantially impair AstraZeneca's ability to complete the restoration project in the timeframe set forth above.[3]

---

[3] Plaintiffs' Proposed Order furthermore does not explain exactly what such a vendor would do with the tapes.  If, for example, plaintiffs expect the vendor would assume AstraZeneca's responsibility to review the restored tapes for privilege and patient identifying information, AstraZeneca further objects to this proposal for obvious reasons.

C.    **The Court Should Permit AstraZeneca To Continue With Its Restoration And Custodial Interview Plans As These Initiatives Are the Most Effective And Comprehensive Plan To Locate Additional Relevant Seroquel Draft GEL Documents.**

The backup restoration and custodian interview plans that AstraZeneca has already begun and expects to complete by early May are the most effective mechanisms for locating additional relevant draft GEL documents. As opposed to Plaintiffs' draconian requests for relief, the plan AstraZeneca has implemented is a good faith, substantial effort to resolve the issues before the Court. It has already led to tangible results. AstraZeneca has identified 16 additional custodians with potential responsibilities for key Seroquel regulatory submissions, and substantially collected their files. Draft Seroquel GEL documents in the files of these 16 custodians will be substantially produced by May 30, 2008. The restoration of the backup tapes is expected to be complete by approximately May 5, and the review and production of additional draft documents derived from the restored tapes is expected to commence on May 1, 2008 and continue on a rolling basis. Given the substantial progress that has been made in the past week on these issues, it would be a waste of valuable resources to short-circuit the ongoing restoration and custodial interview process in favor of the relief proposed by plaintiffs, which is in many respects impossible, and in any event unduly burdensome.

**III.    CONCLUSION**

For the foregoing reasons, AstraZeneca asks that the Court deny Plaintiffs' motion and permit AstraZeneca to continue with the plan set forth above, under the auspices of the SM-ESI.

Respectfully submitted on April 4, 2008,

/s/ Benjamin R. Barnett
Stephen J. McConnell
Benjamin R. Barnett
Philip N. Yannella
A. Elizabeth Balakhani
DECHERT LLP
2929 Arch Street
Philadelphia, PA  19103
Telephone: (215) 994-4000
Facsimile: (215) 994-2222
stephen.mcconnell@dechert.com

Robert W. Pass
Chris S. Coutroulis
Carlton Fields, P.A.
Corporate Center Three at International Plaza
4221 W. Boy Scout Blvd.
Tampa, Florida  33607
Telephone:  (813) 223-7000
Facsimile:  (813) 229-4133
rpass@carltonfields.com

*Counsel for AstraZeneca Pharmaceuticals LP
and AstraZeneca LP*

## CERTIFICATE OF SERVICE

I hereby certify that, on April 4, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system through which all participating parties are deemed served. I further certify that, by using the CM/ECF, the foregoing has been served on plaintiffs' liaison counsel, who is charged with serving any non-CM/ECF participants on the attached Service List.

/s/ A. Elizabeth Balakhani

SERVICE LIST

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No. 1769**

| | |
|---|---|
| Paul J. Pennock, Esq.<br>Michael E. Pederson, Esq.<br>Weitz & Luxenberg, P.C.<br>180 Maiden Lane - 17th Floor<br>New York, NY 10038<br>Telephone: (212) 558-5500<br>Ppennock@weitzlux.com<br>MPederson@weitzlux.com<br>***Plaintiffs' Lead Counsel*** | Camp Bailey, Esq.<br>Michael W. Perrin, Esq.<br>Fletcher Trammell, Esq.<br>Bailey Perrin Bailey LLP<br>The Lyric Centre<br>440 Louisiana, Suite 2100<br>Houston, TX 77002<br>Telephone: (713) 425-7240<br>cbailey@bpblaw.com<br>mperrin@bpblaw.com<br>***Plaintiffs' Lead Counsel*** |
| Larry Roth, Esq.<br>Law Offices of Larry M. Roth, P.A.<br>Post Office Box 547637<br>Orlando, FL 32854-7637<br>Telephone: (407) 872-2239<br>LROTH@roth-law.com<br>***Plaintiffs' Liaison Counsel*** | Tommy Fibich, Esq.<br>Fibich, Hampton & Leebron, L.L.P.<br>1401 McKinney, Suite 1800<br>Five Houston Center<br>Houston, TX 77010<br>Telephone: (713) 751-0025<br>tfibich@fhl-law.com |
| Matthew F. Pawa, Esq.<br>Law Offices of Matthew F. Pawa, P.C.<br>1280 Centre St., Suite 230<br>Newton Centre, MA 02459<br>Telephone: (617) 641-9550<br>Mp@pawalaw.com | Robert L. Salim, Esq.<br>Robert L. Salim Attorney at Law<br>P.O. Box 2069<br>Natchitoches, LA 71457-2069<br>Telephone: (318) 352-5999<br>robertsalim@cp-tel.net |
| Keith M. Jensen, Esq.<br>Jensen, Belew & Gonzalez, PLLC<br>1024 North Main<br>Fort Worth, TX 76106<br>Telephone: (817) 334-0762<br>kj@kjensenlaw.com | Scott Allen, Esq.<br>Cruse, Scott, Henderson & Allen, L.L.P.<br>2777 Allen Parkway, 7th Floor<br>Houston, Texas 77019<br>Telephone: (713) 650-6600<br>sallen@crusescott.com |
| Matthew E. Lundy, Esq.<br>Lundy & Davis, LLP<br>333 North Sam Houston Parkway East<br>Suite 375<br>Houston, TX 77060<br>Telephone: (281) 272-0797<br>mlundy@lundydavis.com | W. Todd Harvey, Esq.<br>E. Ashley Cranford, Esq.<br>Whatley Drake & Kallas, LLC<br>2323 2nd Avenue North<br>Birmingham, AL 35203<br>Telephone: (205) 328-9576<br>THARVEY@whatleydrake.com<br>ccf@whatleydrake.com |

| | |
|---|---|
| Robert L. Ciotti, Esq.<br>Carlton Fields, P.A.<br>4221 W. Boy Scout Boulevard<br>Suite 1000<br>Tampa, FL 33607-5736<br>Telephone: (813) 223-7000<br>rciotti@carltonfields.com<br>***Attorney for Defendants AstraZeneca***<br>***Pharmaceuticals, LP, and AstraZeneca LP*** | Gregory P. Forney, Esq.<br>Shaffer Lombardo Shurin<br>911 Main Street, Suite 2000<br>Kansas City, MO 64105<br>Telephone: (816) 931-0500<br>gforney@sls-law.com<br>rbish@sls-law.com<br>***Attorney for Defendant,***<br>***Marguerite Devon French*** |
| Randy Niemeyer<br>22442 Pike 309<br>Bowling Green, MO 63334-5209<br>*Pro Se* | Eric B. Milliken, Esq.<br>3 Sir Barton Ct.<br>Newark, DE 19702<br>*Pro Se* |
| Catherine Solomon<br>3100 N.E. 83<br>Gladstone, MO 64119<br>*Pro Se* | Louisiana Wholesale Drug Co. Inc.<br>C/O Gayle R. White<br>Registered Agent<br>Highway 167N<br>Sunset, LA 70584<br>*Pro Se* |
| Aaron C. Johnson, Esq.<br>Summers & Johnson<br>717 Thomas<br>Weston, MO 64098<br>Telephone: (816) 640-9940<br>firm@summersandjohnson.com | Robert A. Schwartz, Esq.<br>Bailey & Galyen<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744<br>bschwartz@galyen.com |
| Todd S. Hageman, Esq.<br>Simon and Passanante, PC<br>701 Market St., Suite 1450<br>St. Louis, MO 63101<br>Telephone: (314) 241-2929<br>thageman@spstl-law.com | Mark P. Robinson, Jr., Esq.<br>Robinson, Calcagnie & Robinson<br>620 Newport Center Drive, 7th Floor<br>Newport Beach, CA 92660<br>Telephone: (949) 720-1288<br>mrobinson@robinson-pilaw.com |
| Thomas F. Campion, Esq.<br>Steven M. Selna, Esq.<br>Drinker Biddle & Reath, LLP<br>500 Campus Drive<br>Florham Park, New Jersey 07932-1047<br>Telephone: (973) 360-1100<br>Thomas.Campion@dbr.com<br>steven.selna@dbr.com<br>***Attorneys for Defendants Janssen***<br>***Pharmaceutical Products and Johnson &***<br>***Johnson Co.*** | Michael Davis, Esq.<br>James Mizgala, Esq.<br>Sidley Austin LLP<br>One South Dearborn<br>Chicago, IL 60603<br>Telephone:  (312) 853-7731<br>mdavis@sidley.com<br>jmizgala@sidley.com<br>***Attorneys for Defendants AstraZeneca LP***<br>***and AstraZeneca Pharmaceuticals, LP*** |

| | |
|---|---|
| Elizabeth Raines, Esq.<br>Baker, Sterchi, Cowden & Rice, LLC<br>2400 Pershing Road, Suite 500<br>Kansas City, MO 64108<br>Telephone: (816) 471-2121<br>raines@bscr-law.com<br>***Attorneys for Defendant AstraZeneca, PLC*** | Timothy Reese Balducci, Esq.<br>The Langston Law Firm, PA<br>P.O. Box 787<br>100 South Main Street<br>Booneville, MS 38829-0787<br>Telephone: (662) 728-3138<br>tbalducci@langstonlaw.com |
| Kenneth W. Bean, Esq.<br>Sandberg, Phoenix & von Gontard<br>One City Centre<br>15th Floor<br>St. Louis, MO 63101-1880<br>Telephone: (314) 231-3332<br>kbean@spvg.com<br>***Attorney for Defendant Dr. Asif Habib*** | John Driscoll, Esq.<br>Brown & Crouppen, PC<br>720 Olive St.<br>St. Louis, MO 63101<br>Telephone: (314) 421-0216<br>Jdriscoll@brownandcrouppen.com<br>asmith@brownandcrouppen.com<br>blape@brownandcrouppen.com |
| Aaron K. Dickey, Esq.<br>Goldenberg and Heller, PC<br>P.O. Box 959<br>2227 S. State Road 157<br>Edwardsville, IL 62025<br>Telephone: (618) 650-7107<br>aaron@ghalaw.com | Matthew J. Hamilton, Esq.<br>Pepper Hamilton<br>3000 Two Logan Square<br>18th & Arch Street<br>Philadelphia, PA 19103<br>Telephone: (215) 981-4000<br>hamiltonm@pepperlaw.com |
| Justin Witkin, Esq.<br>Ken Smith, Esq.<br>Aylstock, Witkin & Sasser, PLC<br>4400 Bayou Boulevard<br>Suite 58<br>Pensacola, FL 32503<br>Telephone: (850) 916-7450<br>Jwitkin@AWS-LAW.com<br>ablankenship@aws-law.com<br>ksmith@aws-law.com<br>noverholtz@aws-law.com | David P. Matthews, Esq.<br>Lizy Santiago, Esq.<br>Matthews & Associates<br>2905 Sackett Street<br>Houston, TX 77098<br>Telephone: (713) 222-8080<br>dmatthews@thematthewslawfirm.com<br>lsantiago@thematthewslawfirm.com<br>msalazar@thematthewslawfirm.com |
| Howard Nations<br>Lori A. Siler<br>Howard L. Nations Attorney At Law<br>4515 Yoakum Blvd.<br>Houston, TX 77006-5895<br>Telephone: (713) 807-8400<br>nations@howardnations.com | Mary B. Cotton<br>John D. Giddens, P.A.<br>226 North President Street<br>P.O. Box 22546<br>Jackson, MS 39225-2546<br>Telephone:  (601) 355-2022<br>betsy@law-inc.com |
| Salvatore M. Machi<br>Ted Machi & Associates PC<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744 | Jona R. Hefner, Esq.<br>3441 W. Memorial, Suite 4<br>Oklahoma City, OK 73134-7000<br>Telephone: (405) 286-3000<br>attorneyokc@hotmail.com |

| | |
|---|---|
| David Dickens<br>Miller & Associates<br>105 North Alfred Street<br>Alexandria, VA 22314-3010<br>(703) 519-8080<br>ddickens@doctoratlaw.com | Pete Schneider, Esq.<br>Grady, Schneider & Newman, L.L.P.<br>801 Congress, 4th Floor<br>Houston, TX 77002<br>(713) 228-2200<br>pschneider@gsnlaw.com |
| Fred T. Magaziner<br>Marjorie Shiekman<br>A. Elizabeth Balakhani<br>Shane T. Prince<br>Eben S. Flaster<br>DECHERT LLP<br>Cira Centre<br>2929 Arch Street<br>Philadelphia, PA 19103<br>(215) 994-4000<br>fred.magaziner@dechert.com<br>shane.prince@dechert.com<br>marjorie.shiekman@dechert.com<br>eben.flaster@dechert.com<br>elizabeth.balakhani@dechert.com | Lawrence J. Gornick, Esq.<br>William A. Levin, Esq.<br>Dennis J. Canty, Esq.<br>Levin Simes Kaiser & Gornick LLP<br>44 Montgomery Street, 36th Floor<br>San Francisco, CA 94104<br>Telephone: (415) 646-7160<br>lgornick@lskg-law.com<br>dcanty@lskg-law.com<br>lsimes@levins-law.com<br>jkaiser@lskg-law.com<br>echarley@lskg-law.com<br>ddecarli@lskg-law.com<br>bsund@lskg-law.com<br>astavrakaras@lskg-law.com |
| Scott Burdine, Esq.<br>Hagans Burdine Montgomery<br>Rustay & Winchester, P.C.<br>3200 Travis, Fourth Floor<br>Houston, TX 77006<br>Telephone: (713) 222-2700<br>sburdine@hagans-law.com | Lowell Finson<br>Phillips & Associates<br>3030 North 3rd Street<br>Suite 1100<br>Phoenix, AZ 85012<br>(602) 258-8900, ext. 295<br>lowellf@phillipslaw.ws |
| Gale D. Pearson<br>Stephen J. Randall<br>Pearson, Randall & Schumacher, P.A.<br>Fifth Street Towers, Suite 1025<br>100 South 5th Street<br>Minneapolis, MN 55402<br>(612) 767-7500<br>attorneys@outtech.com | Robert H. Shultz<br>Heyl, Royster<br>103 West Vandalia Street<br>P.O. Box 467<br>Edwardsville, IL 62025<br>(618) 656-4646<br>rshultz@hrva.com<br>bwallace@hrva.com |
| Ellen R. Serbin<br>Perona, Langer, Beck, Lalande & Serbin<br>300 San Antonio Drive<br>Long Beach, CA 90807-0948<br>(562) 426-6155<br>davidhwang@plblaw.com | Scott Armstrong<br>1719 West Main Street<br>Suite 201<br>Rapid City, SD 57702<br>(605) 399-3994<br>scottarmstrong1235@eathlink.net |

| | |
|---|---|
| Linda S. Svitak<br>Faegre & Benson, LLP<br>90 South 7th Street, Suite 2200<br>Minneapolis, MN 55402-3901<br>(612)766-7000<br>lsvitak@faegre.com<br>wjohnson@faegre.com | James J. Freebery<br>McCarter & English, LLP<br>919 N. Market Street, 18th Floor<br>Wilmington, DE 19801<br>(973) 622-4444<br>jfreebery@mccarter.com<br>tpearson@mccarter.com |
| Richard D. Hailey<br>Ramey & Hailey<br>3891 Eagle Creek Parkway<br>Suite C<br>Indianapolis, IN<br>(317) 299-0400<br>rhailey@sprynet.com | B. Andrew List<br>Clark, Perdue, Arnold & Scott<br>471 East Broad Street, Suite 1400<br>Columbus, OH 43215<br>(614) 469-1400<br>alist@cpaslaw.com<br>lcollins@cpaslaw.com |

CHI 4125722v.2