# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

| | |
|---|---|
| IN RE: SEROQUEL PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO: |
| This document relates to: | 6:06-MDL-1769-ACC-DAB |
| **ALL CASES** | |

## PLAINTIFFS' APPEAL FROM, OBJECTIONS TO, AND MOTION TO VACATE MAGISTRATE JUDGE'S ORDER GOVERNING PERMISSIBLE CONTACT AND RETENTION OF CERTAIN FLORIDA-RELATED PHYSICIANS AS DEFENSE EXPERTS

Under Federal Rule of Civil Procedure 72(a), Plaintiffs in the above-referenced cases ("Plaintiffs") respectfully appeal from, object to, and move to vacate the Order entered on March 21, 2008 by United States Magistrate Judge Baker (Doc. 912, hereinafter the "Order"), which granted the Motion for Entry of Order Governing Permissible Contact and Retention of Certain Florida-Related Physicians as Defense Experts (Doc. 883, hereinafter the "Motion"). Plaintiffs request the opportunity to present oral argument in support of their appeal, objections, and Motion to Vacate, and have filed herewith a Request for Oral Argument Pursuant to Local Rule 3.01(j).[1]

---

[1]     On March 25, 2008, Plaintiffs filed their Motion to Stay Operation of the Magistrate Judge's Order (Doc. 915, hereinafter "Motion to Stay"), but the Court has not yet ruled on that Motion. Plaintiffs again re-urge the Court to enter promptly the order requested in the Motion to Stay for the reasons stated therein. Namely, irreparable harm and prejudice may result to those Plaintiffs' cases wherein Defendants have already commenced such contact while this appeal is pending; a temporary stay of the application of the Order during the pendency of Plaintiffs' appeal of the Order would serve the interests of justice.

# I.
## SUMMARY

Plaintiffs respectfully submit that Magistrate Baker erred in entering the Order permitting Defendants' ex parte contact with and retention as expert witnesses of Plaintiffs' treating physicians.  There are 174 "Florida Plaintiffs."  Only 30 of those Plaintiffs' cases will ultimately make up the Florida Trial Pool.  The Order hinges on Defendants' unsubstantiated assertions that it has identified 3,140 "healthcare providers" who have treated the Florida Plaintiffs.  Based on that number and Defendants' speculation that such a large number of "healthcare providers" may hinder Defendants' ability to locate and retain qualified local experts, the Magistrate concluded that a prohibition on Defendants' contacting and retaining Plaintiffs' treating physicians has the potential to deprive Defendants of a fair opportunity to present their defense.  That conclusion is clearly erroneous because, as detailed below, Defendants never stated that they had identified 3,140 *treating physicians* who were presumably qualified as expert witnesses in these cases, much less offered any evidence substantiating that number or the total number of potentially qualified experts available in Florida.

In addition, the Order is contrary to law because the Florida physician-patient privilege prohibits *any contact* by Defendants' counsel with Plaintiffs' doctors.  The Order never addresses the Florida law that proscribes the ex parte contact Defendants seek.

Finally, the Order imposes too few controls to prevent abuses of the communications and relationships between Defendants' counsel and Plaintiffs' doctors.  Absent vacating the Order, the Court should impose additional safeguards, as proposed herein, to minimize Defendants' opportunities to abuse the contacts granted by the Order.

## II.
## BACKGROUND

There are 174 Florida Plaintiffs with cases pending in this MDL; 75 have been set for limited case-specific discovery.  (Order at 1.)  Only 30 cases will comprise the "Initial Trial Pool," for which Plaintiffs and Defendants must designate expert witnesses in August and September of this year, respectively.  (Case Management Order ("CMO") No. 5 at 3-5.)

Defendants filed their Motion, requesting broad, unmonitored contacts with the Florida Plaintiffs' treating physicians, on February 29, 2008.  Plaintiffs timely responded to the Motion on March 11, 2008.[2]  Although Plaintiffs had not yet responded to the Motion, and although it was not yet ripe for consideration by the Court under CMO1,[3] the Court insisted upon hearing oral argument on the Motion at the status conference on March 11, 2008 (Order at 1 & n.1), notwithstanding the parties' agreement prior to the status conference not to argue the Motion and Response until the following scheduled status conference. Magistrate Baker issued his Order granting the Motion on March 21, 2008, prompting this timely appeal by Plaintiffs.

## III.
## ARGUMENT & AUTHORITIES

### A.    Standard of Review.

Pursuant to Federal Rule of Civil Procedure 72(a), the district judge in a case "must consider timely objections" to a magistrate judge's nondispositive order and "set aside any

---

[2]    The Order incorrectly states that Plaintiffs filed their Response on March 12, 2008.

[3]    "In order to be heard at a regularly scheduled status conference, a motion must be filed and served at least 20 days before said conference.  Any motion filed and served less than 20 days before a status conference shall be heard not at the upcoming status conference but at the status conference thereafter."  CMO1 § IV(A). Defendants' Motion was filed only 11 days before the regularly scheduled status conference on March 11, 2008.

part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). Under

that standard, the district judge must not defer to the magistrate's factual findings that are

clearly erroneous, and reviews the magistrate's legal conclusions *de novo*. *See, e.g., Cooper-*

*Houston v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994); *Robinson v. Jacksonville*

*Shipyards, Inc.*, 118 F.R.D. 525, 526 (M.D. Fla. 1988); *see also Mitchell v. Consol.*

*Freightways Corp.*, 747 F.Supp 1446, 1447 n.1 (M.D. Fla. 1990) (stating there is no material

distinction between "*de novo*" and "contrary to law" review).

**B.      The Conclusion That Defendants Cannot Fairly Present Its Defense Absent Contact With And Retention Of Plaintiffs' Doctors Is Clearly Erroneous Because It Is Without Any Basis In Fact.**

Based on Defendants' conjecture and unsupported calculations regarding the total

number of Florida Plaintiffs' "healthcare providers"—without any information regarding the

identity, location, or nature of practice of such healthcare providers, or the total number of

potentially qualified local experts—the Magistrate erred in concluding that "a prohibition on

AZ's contacting and retaining physicians has the potential to deprive AstraZeneca of a fair

opportunity to present its defense in the cases to be tried in Florida."  (Order at 6.)

In its Motion, Defendants flatly stated that 3,140 "healthcare providers" had treated

the 174 Florida Plaintiffs—without identifying the providers to which it referred—and

expressed concerns that Defendants' search for local, qualified experts may lead to the

possible contact and retention of Plaintiffs' treating physicians.  Defendants' Motion sought

permission to contact and retain Plaintiffs' doctors based upon a perceived (but unfounded)

shortage of available local experts.

4

Defendants failed to identify whether those 3,140 "healthcare providers" are doctors, psychologists, therapists, nurses, or some other type of provider,[4] or even whether the providers they have identified are located or licensed in Florida.  Defendants also failed to identify whether the healthcare providers were seen by Florida Plaintiffs for purposes related to their ingestion of Seroquel or diagnoses with Seroquel-related injuries, or for some other, unrelated purpose.  Additionally, Defendants do not provide the source of the information from which these healthcare providers were identified—e.g., Plaintiffs' Fact Sheet ("PFS") responses, medical records, deposition testimony, etc.  In the same vein, Defendants did not sufficiently explain  the unlikelihood—based on Defendants' own numbers—that each and every Florida Plaintiff saw an average of _18_ distinct (not overlapping) treating physicians— especially where the Florida PFS responses reveal that the Florida Plaintiffs each saw an approximate average of between 5-7 treating physicians.

Defendants predictably argue that the PFS responses are incomplete (Mot. At 3), but fail to identify the source of additional information from which they have gleaned the sizeable number of "healthcare providers" they quantify in their Motion.  Significantly, with respect to the lone example of Plaintiff Stoudt's PFS response, which Defendants seize upon in their Motion (Mot. at 3, n.2), more than half of the 55 healthcare providers that she identified in her PFS response (28 of them, in fact) were names of *facilities*, rather than treating physicians' names.  Facilities obviously cannot serve as defense experts.  Plaintiffs wonder how many additional facilities and/or practitioners unqualified to serve as defense

---

[4]     Plaintiffs do not concede that their communications with and medical information in the possession of psychologists and psychotherapists is not privileged, *see* Fla. Stat. Ann. § 90.503 (West 2008)(statutory psychotherapist – patient privilege), but the Order here addresses only "doctors" subject to the patient-physician privilege.

experts Defendants have included in their total of 3,140 "healthcare providers" so as to inflate that number.[5]  In addition, as noted, Defendants fail to identify whether any of these healthcare providers have any background or expertise relative to patients' treatment with Seroquel or the diagnosis and treatment of Seroquel-related injuries so as to qualify as a potential expert.

Based upon Defendants' supposition, the Magistrate found, without evidence, that "[m]ore than 3,100 *physicians* have already been identified as treating physicians for Plaintiffs . . . ."  (Order at 5; emphasis added.)  ***The above shows that Defendants' Motion never stated as much—much less provided evidence of that number.***  Most importantly, the Magistrate concluded that the more than 3,100 "*physicians* identified as *treating physicians* for Plaintiffs . . . limits the local pool of physicians available to serve as experts significantly*."  (Order at 5, emphasis added.)  Yet, assuming *arguendo* that Defendants' calculation of 3,140 healthcare providers is accurate, and that it refers *only* to the Florida Plaintiffs' *treating physicians*—which, as shown above, is untrue—that number still represents a tiny fraction of Florida-licensed physicians.  Indeed, some 52,717 medical doctors currently hold Florida medical licenses according to Florida Department of Health ("FDOH") records.[6]  Therefore, the inflated total of 3,140 Plaintiffs' treating physicians represents fewer than 6% of the total number of currently licensed Florida physicians—far

---

[5]    Because of confidentiality concerns, Plaintiffs do not submit herewith its calculations regarding the number of Plaintiffs' treating physicians, but will file such information with the Court for in camera  inspection promptly upon the Court's request.

[6]    Plaintiffs ask the Court to take judicial notice of this information provided by the Florida Department of Health's website, available at *https://ww2.doh.state.fl.us/IRM00PRAES/PRASLIST.ASP#theBottom*. Admittedly, according to FDOH records, some unidentified, though presumably small, fraction of these licensed medical doctors apparently do not reside in Florida.

from what the Magistrate should have considered a "significant[]" limitation on the number of local potential experts.[7]  (*See* Order at 5.)

For the foregoing reasons, the Magistrate's findings—that Plaintiffs were treated by 3,140 distinct physicians, and that the local pool of potential experts available to testify on Defendants' behalf was significantly limited by the size of that number—were clearly erroneous.  Plaintiffs respectfully request that the District Court vacate the Magistrate's Order on this basis alone.

**C.**     **The Order's Legal Conclusions Are Contrary To The Florida Patient-Physician Privilege As Interpreted By Florida's Highest Court.**

The Magistrate's Order is also contrary to law in that the Order fails to address the legal prohibitions, under applicable Florida privilege law, which Plaintiffs set forth in their Response to Defendants' Motion.  (Doc. 895.)  Indeed, the proper application of Florida privilege law in this context could not be more certain.

As this and other Courts have recognized, even in multi-district litigation, where state law supplies the rule of decision in civil diversity jurisdiction cases, "the privilege of a witness, person, government, State, or political subdivision thereof ***shall be determined in accordance with State law***."  Fed. R. Evid. 501 (emphasis added); *see Hanger Orthopedic Group, Inc. v. McMurray*, 181 F.R.D. 525, 528 (M.D. Fla. 1998) (Conway, J.) (applying, pursuant to Rule 501, Florida husband-wife privilege to communications in a diversity

---

[7]     Defendants argue in their Motion that "[w]hether the number five, fifty, five hundred, or more than one thousand, it matters most who the disqualified physicians are."  (Mot. At 11.)  Therefore, Defendants contend that they may be deprived of hiring certain experts because of their affiliation with Plaintiffs, regardless of the actual number.  However, it is always the case in litigation that if one party obtains the services of a particular expert, that expert is conflicted from offering his/her services to the opposing side.  Defendants' argument, in this regard, does nothing to further its contention, or the Magistrate's conclusion, that Defendants are hindered in presenting their defense because of Plaintiffs' affiliation with certain potential experts.

jurisdiction case); *Shams v. State Farm Mut. Auto. Ins. Co.*, No. 6:06-CV-621-Orl-28DAB, 2007 WL 496610, at *4 (M.D. Fla. February 12, 2007) (Baker, Mag.) ("Federal Rule of Evidence 501 provides, in pertinent part, that in civil actions where state law supplies the rule of decision, the privilege of a witness shall be determined in accordance with state law.") *see also Somer v. Johnson,* 704 F.2d 1473, 1478-79 (11th Cir. 1983); *In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, MDL 1532, 2007 WL 1668634, at *1 (D. Me. June 5, 2007) (citing Rule 501 for proposition that "[f]or the state damage claims, state attorney client privilege law applies, state by state for the 20 plus states where damage claims remain"); *In re Parmalat Sec. Litig.*, No. 04MD1653 (LAK), 04 Civ. 9771, 2006 WL 2668367, at *1 (S.D.N.Y Sept. 14, 2006); *In re Accutane Prods. Liab. Litig.*, Nos. 8:04-md-2523-T-30TBM,8:05-cv-926-T-30TBM, MDL 1626, 2006 WL 1281598, at *2 n.5 (M.D. Fla. May 9, 2006) ("State law controls the privileged nature of material sought in discovery in a diversity action.").

Therefore, the Magistrate was bound to follow the rulings governing the Florida patient-physician privilege by Florida's highest court.  *See Admiral Ins. Co. v. Feit Mgmt. Co.*, 321 F.3d 1326, 1329 (11th Cir. 2003) ("Sitting in diversity, we apply the substantive law of the forum state . . . .  The rulings of the highest court of the forum state control our decision."); *Hyde Const. Co. v. Koehring Co.*, 455 F.2d 337, 340 (5th Cir. 1972) ("[I]n diversity cases legislative created privileges [including, specifically, the patient-physician privilege] must be treated as substantive."); *see also* Fed. R. Evid. 501.

As currently written, Florida Statutes sections 456.057(7)(a) and (8) provide in pertinent part:

> (7)(a) Except as otherwise provided in this section and in s. 440.13(4)(c) [involving the availability of medical records in workers' compensation claims], such [medical] records may not be furnished to, and the medical condition of a patient may not be discussed with, any person other than the patient or the patient's legal representative or other health care practitioners and providers involved in the care or treatment of the patient, except upon written authorization of the patient.
>
> <div align="center">*   *   *</div>
>
> (8) Except in a medical negligence action or administrative proceeding when a health care practitioner or provider is or reasonably expects to be named as a defendant, information disclosed to a health care practitioner by a patient in the course of the care and treatment of such patient is confidential and may be disclosed only to other health care practitioners and providers involved in the care or treatment of the patient, or if permitted by written authorization from the patient or compelled by subpoena at a deposition, evidentiary hearing, or trial for which proper notice has been given.

Fla. Stat. Ann. §§ 456.057(7)(a), (8) (West 2007).

In *Acosta v. Richter*, the Florida Supreme Court interpreted those provisions as creating "a broad and express privilege of confidentiality as to the medical records and medical condition of a patient." 671 So.2d 149, 154 (Fla. 1996) ("[W]e conclude that the primary purpose of the [statute] was to create a physician-patient privilege where none existed before, and to provide an explicit but limited scheme for the disclosure of personal medical information."). The supreme court acknowledged that the statute "***clos[ed] the door to the previous practice of many defense attorneys of meeting privately or otherwise communicating ex parte with the plaintiff's treating physicians***." *Id.* at 152 (quoting *West v. Branham*, 576 So.2d 381, 383 (Fla. Ct. App. 1991)) (emphasis added). Thus, "[t]he privilege protects the patients' interest in keeping the details and nature of his medical

<div align="center">9</div>

treatment confidential without fear of later disclosure by the one in whom he has placed his trust." *Estate of Stephens v. Galen Health Care, Inc.*, 911 So.2d 277, 280 (Fla. Ct. App. 2005).

Most significantly, the Florida Supreme Court in *Acosta* expressly considered, and firmly rejected, limitations on the privilege that Defendant proposed and the Magistrate adopted here. In particular, the Florida Supreme Court disapproved and quashed the opinion of the Florida Court of Appeal in *Castillo-Plaza v. Green*, which had reached the conclusion—mirroring Defendants' request here—that the patient-physician privilege statute cloaked with confidentiality <u>only</u> the <u>medical records</u> and <u>medical condition</u> of the patient, but did not reach other discussions opposing counsel might have with a plaintiff's treating physician:

> [T]he terms of the statute confine the requirement of confidentiality to the "medical records" and the "medical condition" of the patient, including information disclosed to the doctor in the course of his care and treatment. ***They do not restrict communication concerning anything else-the issues in the case, <u>hypothetical questions concerning other patients and their treatment</u>, or, indeed, anything beyond what the statute actually says. Moreover, there is no restriction on the manner in which conversations or discussions as to the nonforbidden topics may be conducted.***

*Castillo-Plaza*, 655 So.2d 197, 202 (Fla. Ct. App. 1995) (emphasis added; internal quotation marks, other punctuation, and citations omitted), *disapproved and opinion quashed sub nom Pierre v. North Shore Med. Ctr., Inc.*, 671 So.2d 157, 157 (Fla. 1996); *see Acosta*, 671 So.2d at 157. The *Acosta* court expressly acknowledged, but refused to adopt, *Castillo-Plaza's*

10

exception to the privilege for "communications as to any matter beyond the medical records and the care, treatment, and medical condition of the patient." *Acosta*, 671 So.2d at 153, 157.[8]

The supreme court in *Acosta* also specifically rejected another Florida Court of Appeal's holding that "ex parte conferences with treating physicians may be approved so long as the physicians are not required to say anything." *Id.* at 156 (disapproving *Johnson v. Mt. Sinai Med. Ctr., Inc.*, 615 So.2d 257 (Fla. Ct. App. 1993)). The Florida Supreme Court was unequivocal in its repudiation of that holding: "We believe it is pure sophistry to suggest that the purpose and spirit of the statute would not be violated by such conferences." *Acosta*, 671 So.2d at 156.

Finally, *Acosta* endorsed the Florida Court of Appeal opinion in *Kirkland v. Middleton*, 639 So.2d 1002 (Fla. Ct. App. 1994). *See Acosta*, 671 So.2d at 152-53. The *Kirkland* court rejected the defendants' argument that, via ex parte communications, "they merely intend[ed] to question [the plaintiffs'] current health care providers **about such non-privileged matters** as scheduling deposition testimony and arranging medical records production." *Kirkland*, 639 So.2d at 1004 ("But that can be coordinated through the

---

[8]         As the Florida Bar Journal concluded:

> Given *Acosta's* summary rejection of *Castillo-Plaza*, it is unlikely that there are any "unprivileged" or "nonforbidden" topics which are exempt from the statute's prohibitions, and would therefore qualify for ex parte discussions, such as "issues in the case, hypothetical questions concerning other patients and their treatment, or indeed anything beyond what the Statue actually says." [Citing *Castillo-Plaza.*] * * * And what about mass torts and products liability cases involving hundreds or perhaps thousands of plaintiffs? * * * [T]he court's expansive view of the privilege would seem to preclude ex parte contacts in these instances as well.

J.N. Harris, *The Limits of Ex Parte Communications With a Plaintiff's Treating Physicians Under Florida Law*, 70 Fla. L.J. 57, 59-60 (1996).

[plaintiffs'] attorneys, or if cooperation is not forthcoming, through notice and depositions, pursuant to the Florida Rules of Civil Procedure.")  "Were unsupervised *ex parte* interviews allowed, . . . plaintiffs could not object and act to protect against inadvertent disclosure of privileged information, nor could they effectively prove that improper disclosure actually took place." *Acosta*, 671 So.2d at 153 (quoting *Kirkland*, 639 So.2d at 1004).

Thus, "[b]ecause this wealth of case law clearly holds that ex parte discussions between a defense attorney and the plaintiff's treating physicians are *barred* by section 456.057[(7), (8)], **any order allowing such discussions . . . departs from the essential requirements of the law**." *Lemieux v. Tandem Health Care of Fla., Inc.*, 862 So.2d 745, 750 (Fla. Ct. App. 2003) (emphasis added); *see id.* ("In the face of case law specifically prohibiting such ex parte discussions and with no case law or statute providing an applicable exception to the privilege, [an] order allowing the requested ex parte discussions depart[s] from the essential requirements of the law.").  The Magistrate's Order is contrary to law for the fundamental reason that it permits ex parte contact and discussions between Defendants' counsel and Plaintiffs' treating physicians, in violation of the expansive reach of section 456.057, as interpreted by *Acosta*.

D.      **The Order Imposes Insufficient Controls Against Abuses Of Defendants' Proposed Contacts With And Retention Of Plaintiffs' Treating Physicians.**

The Magistrate essentially adopted an Order similar to those entered by two (2) other federal district courts—from Arkansas and Minnesota—which permitted limited ex parte communications with plaintiffs' treating physicians.  Despite Defendants' characterization of such orders as containing "court-approved and time-tested safeguards" to protect Plaintiffs' rights—research revealed no other courts that have entered similar orders.  (Mot. at 12.)

12

Defendants and the Magistrate certainly fail to identify a single Florida court, or federal court within the Eleventh Circuit, permitting such conduct.  Indeed, there are prudent reasons the Florida Supreme Court adopted the "broad and express" patient confidentiality holding it did in *Acosta*.

First, as *Acosta* recognized, without Plaintiffs' counsel present, no safeguards exist to prevent Defendants' ex parte discussions with Plaintiffs' treating physicians from wandering into areas that are privileged.  *Id.*  Indeed, a very real danger of ex parte interviews of a doctor by adverse counsel is that the patient's lawyer is afforded no opportunity to object to the disclosure of compromising medical information, even if discussed in contexts other than the lawsuit at hand.  *See, e.g., W.V. ex rel. Kitzmiller v. Henning*, 437 S.E.2d 452, 455 (W.V. 1993).  In short, ex parte contacts place defense counsel in the position of the fox guarding the henhouse.  *See* John Kassel, *Ex Parte Conferences With Treating Physicians; Counterpoint . . . Defense Counsel's Ex Parte Communication With Plaintiff's Doctors: A Bad One-Sided Deal*, S.C. Lawyer, Sept.-Oct. 1997, at 42, 43.  And the physician fares no better when asked to decide what ought to be disclosed.  *Id.*  "Asking the physician, untrained in the law, to assume this burden is a greater gamble and is unfair to the physician."  *Roosevelt Hotel L.P. v. Sweeney*, 394 N.W.2d 353, 357 (Iowa 1986).

Second, the applicable rules of civil procedure, including discovery rules, were designed to afford all parties access to justice.  *See* David G. Wirtes, Jr., R. Edwin Lamberth, Joanna Gomez, *An Important Consequence of HIPAA: No More Ex Parte Communications Between Defense Attorneys and Plaintiffs' Treating Physicians*, Am. J. Trial Advoc. 1, 14 (2003).  The rules are intended to eliminate "trial by ambush" and other odious practices.  *Id.*

Use of discovery methods such as interrogatories and depositions provide counsel adequate opportunity to ascertain privileges and to appropriately explore in detail, and within the confines of such privileges and other confidences, aspects of medical treatment, while informing the physician of issues that are relevant to the subject matter of the suit and those portions of the patient's medical records that are considered confidential. *Id.* Conformance with traditional practices does not hamper the attorney's preparation of a lawful defense, or infringe upon a defendant's due process rights. *Id.* S*ee also Petrillo v. Syntex Labs, Inc.*, 499 N.E.2d 952, 956 (Ill. Ct. App. 1986).

Lastly, but crucially, the Court should recognize that nothing in the Order prevents Defendants from canvassing the entire population of Plaintiffs' treating physicians, conducting ex parte discussions with them, and potentially hiring and paying them as Defendants' expert witnesses. Such tactics severely impinge upon Plaintiffs' rights as patients, who are entitled to place their trust in their doctors, as well as the rights of Plaintiffs to a fair trial of their claims against wrongdoers. *See* Philip H. Corboy, *Ex Parte Contacts Between Plaintiff's Physician and Defense Attorneys: Protecting the Patient-Litigant's Right to a Fair Trial*, 21 Loy. U. Chi. L.J. 1001, 1001-02 (1990). As the United States District Court for the Southern District of Ohio acknowledged, absent some controls regarding the retaining of expert witnesses, "unscrupulous attorneys or clients will be encouraged to engage in a race for expert witnesses, and to identify potentially harmful experts and to create some type of inexpensive relationship with those experts, simply in order to keep them away

from the other side." *Paul v. Rawlings Sporting Goods Co.*, 123 F.R.D. 271, 281-82 (S.D. Ohio 1988).[9]

The Magistrate dismissed Plaintiffs' concerns about Defendants' "monopolizing" all of Plaintiffs' treaters as expert witnesses because such concern is "matched by the prospect of the Plaintiffs' collectively disqualifying the substantial number of treaters they have used." (Order at 6.)  The comparison ignores the different sources of those relationships.  Plaintiffs established their relationships with their physicians for purely medical reasons, without anticipation of litigation, and it is the communications and information that Plaintiffs shared with those doctors in the context of their medical treatment that Plaintiffs now seek to protect against unlawful disclosure.  In contrast, Defendants seek contact with those same physicians solely to gain an advantage in this litigation, with Plaintiffs' privileged communications with their doctors hanging in the balance.

It is unmistakable that the "other cases" for which Defendants intend to retain Plaintiffs' treating physicians as expert witnesses (whether or not they, in fact, *utilize* them at all) are other Seroquel cases.  Yet, in all the Seroquel cases, there are legal elements that apply to all cases across the board: chiefly among them causation, damages, and liability.  These generic elements affect every case.  So, where Defendants promise that they will only

---

[9]         Moreover, turning the situation on its ear, Defendants would likely argue, as the defendants argued in *In re Norplant Contraceptive Products Liability Litigation*, MDL Docket No. 1038, 1997 WL 33635860 (E.D. Tex. May 7, 1997), that once they have retained Plaintiffs' treating physicians as experts to assist in their defense of the litigation, any ex parte communication with those treating physicians by Plaintiffs' counsel would be prohibited, and may subject counsel to disciplinary action.  Significantly, such unavoidable communications apparently necessitated disqualification of the plaintiffs' counsel in the *Norplant* litigation.  *Id.* (condemning plaintiffs' counsel's contact with plaintiffs' treating physicians once retained as expert witnesses by the defendants as "[violative] of the Texas Disciplinary Rules of Professional Conduct, the local rules of the Eastern District of Texas, and national ethical standards of professional responsibility," and deeming it "clear grounds for counsel's disqualification").

discuss Plaintiff "A's" case with Dr. "B", who has never treated Plaintiff A, and will not discuss with Dr. B anything regarding Dr. B's treatment of Plaintiff "B" or Plaintiff's B's medical history, they would be engaging in precisely the type of "sophistry" that *Acosta* proscribes.  671 So.2d at 156.  If Plaintiff A loses on the causation or liability issues based on Dr. B's expert opinion, for example, Plaintiff B also stands to lose on those issues, putting Dr. B in conflict with that patient.[10]  Defendants' counsel simply cannot, and should not, be relied upon to warn Dr. B of the conflicts that abound in such an arrangement, even potentially subjecting the doctor to liability.  *See Gracey v. Eaker*, 837 So.2d 348, 354 n.6 (Fla. 2002) ("This Court . . . has determined that a fiduciary relationship exists between physician and patient . . . .  [A physician] who has created a fiduciary relationship with his client owes that client a duty of confidentiality, [a breach of which] is actionable in tort."); *see also Petrillo*, 499 N.E.2d at 595 ("At the very heart of every [patient-physician] fiduciary relationship . . . there exists an atmosphere of trust, loyalty, and faith in the discretion of a fiduciary.  [W]e find it difficult to believe that a physician can engage in an ex parte conference with the legal adversary of his patient without endangering the trust and faith invested in him by his patient.").

For all the above reasons, the Order is clearly erroneous and contrary to law and should be vacated.  The threat of compromising Plaintiffs' patient-physician privilege rights is too great under the Order.  Because the likely invasion of the physician-patient privilege

---

[10]     Another particularly harmful example is the fact that nothing in the Order restricts Defendants from discussing Plaintiff B's medical condition, diagnosis, or other treatment aspects in the context of a "hypothetical," so as to solicit medical opinions from Dr. B that may hurt Plaintiff B's case, without ever mentioning Plaintiff B's name to Dr. B.

creates a circumstance of Plaintiffs' inability to "un-ring the bell," Plaintiffs may have no choice but to seek further review of the Order if the Court refuses to vacate it.

At a minimum, the Order imposes too few controls to avoid infringing upon Plaintiffs' patient-physician privilege rights afforded them under Florida law. Therefore, without conceding in any way the impropriety and unlawfulness of such ex parte contacts, if the Court refuses to vacate the Magistrate's Order in its entirety, Plaintiffs propose the following modifications to the Order prior to its adoption:

1. Defendants must provide five (5) business days advance written notice to the Court and the Plaintiffs' lead counsel prior to any contact with Plaintiffs' treating physicians, including the name(s) of the treating physician(s) Defendants intend to contact, and the name(s) of the Plaintiff(s) who are or have ever been patient(s) of those treating physician(s).

2. Plaintiffs' counsel should be permitted to attend and/or participate in the first contact and/or meeting between defense counsel and a Plaintiff's treating physician to ensure that the terms of the Order are sufficiently covered and that the treating physician fully comprehends the scope of the Order and the concomitant limitations on his/her discussions with Defendants' counsel. Plaintiffs' counsel would not participate in or be privy to any discussions involving legal strategy or other substantive issues between Defendants' counsel and a treating physician.

3. The date, time, and length of any contact with any of Plaintiffs' treating physicians must be reported in writing to Plaintiffs' lead counsel within three (3) days following any contact with Plaintiffs' treating physicians.

4. Defendants should be limited to contacting and/or retaining no more than 30 of Plaintiffs' treating physicians, which represents the equivalent of one distinct medical expert per case in the Florida Trial Pool, so as to limit potential abuses or oversaturation of the pool of potential expert witnesses by Defendants.

## CONCLUSION

For the foregoing reasons, the Court should vacate the Magistrate's Order.  At a minimum, the Court should modify the Order to incorporate the additional safeguards that Plaintiffs have proposed.

DATED:  April 4, 2008

<div style="margin-left:40%">

Respectfully submitted

By:    /s/ Robert W. Cowan
       F. Kenneth Bailey Jr.
       K. Camp Bailey
       Fletcher V. Trammell
       Robert W. Cowan
       **BAILEY PERRIN BAILEY LLP**
       440 Louisiana St., Suite 2100
       Houston, Texas 77002
       (713) 425-7100 Telephone
       (713) 425-7101 Facsimile
       kbailey@bpblaw.com
       cbailey@bpblaw.com
       ftrammell@bpblaw.com
       rcowan@bpblaw.com
       **Co-Lead Counsel for Plaintiffs**

</div>

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 4th day of April, 2008, I electronically filed the foregoing: PLAINTIFFS' APPEAL FROM, OBJECTIONS TO, AND MOTION TO VACATE MAGISTRATE JUDGE'S ORDER GOVERNING PERMISSIBLE CONTACT AND RETENTION OF CERTAIN FLORIDA-RELATED PHYSICIANS AS DEFENSE EXPERTS with the Clerk of the Court by using the CM/ECF system which will send a Notice of Electronic Filing to the counsel listed on the attached Service List.

/s/  Robert W. Cowan
Robert W. Cowan

**CM/ECF SERVICE LIST**
(Updated April 2, 2008)

In Re: Seroquel Products Liability Litigation
MDL Docket No. 1769 – Orlando – 22DAB

| | |
|---|---|
| Scott Allen<br>Cruse, Scott, Henderson & Allen, L.L.P.<br>2777 Allen Parkway, 7th Floor<br>Houston, TX 77019<br>Tel: (713) 650-6600<br>sallen@crusescott.com | Rachel G. Balaban<br>rbalaban@sonnenschein.com |
| Craig D. Ball, PC<br>1101 Ridgecrest Dr<br>Austin, TX 78746<br>512/514-0182<br>craig@ball.net | Brian A. Bender<br>bbender@harrisbeach.com |
| Ed Blizzard<br>Blizzard McCarthy & Nabers, LLP<br>440 Louisiana St., Suite 1710<br>Houston, TX 77002-1689<br>713/844-3750<br>713/844-3755 (fax)<br>eblizzard@blizzardlaw.com<br>sgebhardt@blizzardlaw.com | Mitchell M. Breit<br>Whatley, Drake & Kallas, LLC<br>2001 Park Place N - Ste 1000<br>PO Box 10647<br>Birmingham, AL 35203<br>205/328-9576<br>205/328-9669 (fax)<br>mbreit@whatleydrake.com |
| William Louis Bross<br>wlbross@hgdlawfirm.com<br>ccorrero@hgdlawfirm.com | Orran L. Brown<br>Obrown@browngreer.com |
| Scott Burdine<br>Hagans, Burdine, Montgomery,<br>Rustay & Winchester, P.C.<br>3200 Travis, 4th Floor<br>Houston, TX 77006<br>Tel: (713) 222-2700<br>sburdine@hagans-law.com | Thomas Campion<br>Heidi E. Hilgendorff<br>Drinker, Biddle & Reath, LLP<br>500 Campus Dr.<br>Florham Park, NJ 07932-1047<br>Tel: (973) 360-1100<br>thomas.campion@dbr.com<br>heidi.hilgendorff@dbr.com<br>jeffrey.peck@dbr.com<br>***Counsel for Defendants Janssen Pharmaceutical Products and Johnson & Johnson Co.*** |

| | |
|---|---|
| Robert L. Ciotti<br>Chris S. Coutroulis<br>Carlton Fields, P.A.<br>42212 W. Boy Scout Blvd., Suite 1000<br>Tampa, FL 33607-5736<br>Tel: (813) 223-7000<br>rciotti@carltonfields.com<br>tpaecf@cfdom.net<br>atravis@carltonfields.com<br>ccoutroulis@carltonfields.com<br>ejones@carltonfields.com<br>***Counsel for Defendants AstraZeneca***<br>***Pharmaceuticals, L.P, and AstraZeneca*** | Mary B. Cotton<br>John D. Giddens, P.A.<br>P.O. Box 22546<br>Jackson, MS 39225-2546<br>Tel: (601) 355-2022<br>betsy@law-inc.com |
| Michael Davis<br>James Mizgala<br>Timothy F. Capshandy<br>Mark Haddad<br>Sidley Austin LLP<br>Bank One Plaza<br>One South Dearborn St.<br>Chicago, IL 60603<br>Tel: (312) 853-7731<br>mdavis@sidley.com<br>jmizgala@sidley.com<br>jjobes@sibley.com<br>tcapshandy@sibley.com<br>mhaddad@sibley.com | Aaron K. Dickey<br>Goldenberg and Heller, PC<br>P.O. Box 959<br>2227 S. State Route 157<br>Edwardsville, IL 62025<br>Tel: (618) 650-7107<br>aaron@ghalaw.com |
| John J. Driscoll<br>Brown & Crouppen, PC<br>720 Olive St., Suite 1800<br>St. Louis, MO 63101<br>Tel: (314) 421-0216<br>jdriscoll@brownandcrouppen.com<br>bsmith@brownandcrouppen.com<br>rbrooks@brownandcrouppen.com<br>blape@brownandcrouppen.com | Kenneth T. Fibich<br>Fibich, Hampton & Leebron, LLP<br>1401 McKinney St., Suite 1800<br>Five Houston Center Houston, TX 77010<br>Tel: (713) 751-0025<br>tfibich@fhl-law.com |

| | |
|---|---|
| Lowell W. Finson<br>lowellf@phillipslaw.ws<br>brandyt@phillipslaw.ws<br>ronf@phillipslaw.ws | Gregory P. Forney<br>Shaffer, Lombardo & Shurin<br>911 Main St., Suite 2000<br>Kansas City, MO 64105<br>Tel: (816) 931-0500<br>gforney@sls-law.com<br>rbish@sls-law.com<br>***Counsel for Defendant, Marguerite Devon French*** |
| Lawrence J. Gornick<br>William A. Levin<br>Dennis J. Canty<br>Levin, Simes, Kaiser & Gornick, LLP<br>44 Montgomery St., 36th Floor<br>San Francisco, CA 94104<br>Tel: (415) 646-7160<br>lgornick@lskg-law.com<br>dcanty@lskg-law.com<br>llsimes@levins-law.com<br>jkaiser@lskg-law.com<br>echarley@lskg-law.com<br>ddecarli@lskg-law.com<br>bsund@lskg-law.com<br>astavrakaras@lskg-law.com<br>lbrandenburg@lskg-law.com<br>lsabel@lskg-law.com<br>ndeming@lskg-law.com | Todd S. Hageman<br>Simon and Passanante, PC<br>701 Market St., Suite 1450<br>St. Louis, MO 63101<br>Tel: (314) 241-2929<br>thageman@spstl-law.com |
| Jona R. Hefner<br>3441 W. Memorial, Suite 4<br>Oklahoma, OK 73134-7000<br>Tel: (405) 286-3000<br>attorneyokc@hotmail.com<br>attorneyokc@gmail.com | Keith M. Jensen<br>Jensen, Belew & Gonzalez, PLLC<br>1024 North Main<br>Fort Worth, TX 76106<br>Tel: (817) 334-0762<br>kj@kjensenlaw.com<br>kjensenlaw@gmail.com |

| | |
|---|---|
| Aaron C. Johnson<br>Summers & Johnson<br>717 Thomas<br>Weston, MO 64098<br>Tel: (816) 640-9940<br>aaron@summersandjohnson.com<br>firm@summersandjohnson.com | Brian S. Kaplan<br>bkaplan@kasowitz.com |
| Jamie R. Kendall<br>301 Massachusetts Ave.<br>Indianapolis, IN 46204<br>Tel: 317-633-8787<br>jkendall@price-law.com<br>eamos@price-law.com | Mark A. Koehn<br>whrfrat42@yahoo.com |
| Edward T. Krumeich<br>ekrumeich@ibolaw.com | D. Andrew List<br>Clark Perdue Arnold & Scott<br>471 East Broad St., Suite 1400<br>Columbus, OH 43215<br>Tel: 877-220-2203<br>alist@cpaslaw.com |
| L. Leonard Lundy<br>llundy@lundylaw.com | Matthew E. Lundy<br>Lundy & Davis<br>333 N. Sam Houston Pkwy., E<br>Suite 375<br>Houston, TX 77060<br>Tel: (281) 272-0797<br>mlundy@lundydavis.com<br>jdibbley@lundydavis.com |

| | |
|---|---|
| Joshua Aaron Machlus<br>jmachlus@rumberger.com<br>docketingorlando@rumberger.com | Fred T. Magaziner<br>Marjorie Shickman<br>A. Elizabeth Balakhani<br>Shane T. Prince<br>Eben S. Flaster<br>Stephen J. McConnell<br>Gretchen Sween<br>Brennen Joseph Torregrossa<br>Dechert, LLP<br>2929 Arch St., Cira Center<br>Philadelphia, PA 19104-2808<br>Tel: (215) 994-4000<br>Fred.magaziner@dechert.com<br>Marjorie.shiekman@dechert.com<br>shane.prince@dechert.com<br>cheryl.inwek@dechert.com<br>Eben.flaster@dechert.com<br>elizabeth.balakhani@dechert.com<br>michelle.kirscEh@dechert.com<br>elliot.gardner@dechert.com<br>gretchen.sween@dechert.com<br>iliano.guerrero@dechert.com<br>Amanda.lanham@dechert.com<br>Christina.keddie@dechert.com<br>Elizabeth.kimmelman@dechert.com<br>Nathaniel.bessie@dechert.com<br>Margaret.osborne@dechert.com<br>Brennan.torregrossa@dechert.com<br>Elliot.walker@dechert.com<br>Stephen.mcconnell@dechert.com<br>***Counsel for Defendant Astrazeneca Ph.*** |

| David P. Matthews<br>Abraham, Watkins, Nichols, Sorrels,<br>Matthews & Friend<br>800 Commerce St.<br>Houston, TX 77002-1776<br>Tel: (713) 222-7211<br>dmatthews@abrahamwatkins.com<br>agoff@abrahamwatkins.com<br>jrhoades@abrahamwatkins.com<br>jwebster@abrahamwatkins.com<br>lsantiago@thematthewslawfirm.com<br>msalazar@thematthewslawfirm.com | Brian J. McCormick<br>bjmccormick@sheller.com |
| --- | --- |
| Sean K. McElligott<br>Koskoff, Koskoff & Bieder, PC<br>350 Fairfield Ave<br>Bridgeport, CT 06604<br>203/336-4421<br>smcelligott@koskoff.com | Robert Mendillo<br>Amber Anderson<br>Kurt S. Kusiak<br>rmm@sally-fitch.com<br>ara@sally-fitch.com<br>ksk@sally-fitch.com<br>cah@sally-fitch.com |
| James Mizgala<br>Sidley Austin LLP<br>Bank One Plaza<br>One South Dearborn St.<br>Chicago, IL 60603<br>Tel: (312) 853-7731<br>jmizgala@sidley.com<br>lmodaff@sidley.com<br>efilingnotice@sidley.com<br>***Counsel for Defendants AstraZeneca LP***<br>***and AstraZeneca Pharmaceuticals LP*** | Howard Nations<br>Howard L. Nations Attorney At Law<br>4515 Yoakum Blvd.<br>Houston, TX 77006-5895<br>Tel: (713) 807-8400<br>nations@howardnations.com<br>lori@howardnations.com<br>kim@howardnations.com<br>andrea@howardnations.com<br>charles@howardnations.com<br>lezzlie@howardnations.com |

| | |
|---|---|
| Matthew F. Pawa<br>Benjamin Krass<br>Law Offices of Matthew F. Pawa, P.C.<br>1280 Centre St., Suite 230<br>Newton Centre, MA 02459<br>Tel: (617) 641-9550<br>mp@pawalaw.com<br>bkrass@pawalaw.com | Paul J. Pennock<br>Michael E. Pederson<br>Weitz & Luxenburg, P.C.<br>180 Maiden Lane – 17th Floor<br>New York, NY 10038<br>Tel: (212) 558-5500<br>Ppennock@weitzlux.com<br>Lschutlz@weitzlux.com<br>MPederson@weitzlux.com<br>JOrelli@weitzlux.com<br>esugiarto@weitzlux.com<br>jdillon@weitzlux.com<br>jsedgh@weitzlux.com<br>ychiu@weitzlux.com<br>***Plaintiff's Lead Counsel*** |
| Francis Edmund Pierce, III<br>fpierrce@cmlbro.com<br>cmiller@cmlbro.com<br>dmalinowski@cmlbro.com | Carlos A. Prietto, III<br>Ted C. Wacker<br>Robinson Calcagnie & Robinson<br>620 Newport Center-Drive, 7th Floor<br>Newport Beach, CA 92660<br>Tel: 940-720-1288<br>cbregman@rcrlaw.net<br>cprietto@rcrlaw.net<br>ctakanabe@rcrlaw.net<br>kschaeffer@rcelaw.net<br>twacker@rcelaw.net |
| William N. Riley<br>Jamie R. Kendall<br>301 Massachusetts Ave.<br>Indianapolis, IN 46204<br>Tel: 317-633-8787<br>wriley@price-law.com<br>eamos@price-law.com<br>jkendall@price-law.com | Mark P. Robinson, Jr.<br>Robinson Calcagnie & Robinson<br>620 Newport Center Dr., 7th Floor<br>Newport Beach, CA 92660<br>Tel: (949) 720-1288<br>mrobinson@robinson-pilaw.com<br>mrobinson@rcrlaw.net |

| | |
|---|---|
| Larry Roth<br>Law Offices of Larry M. Roth, P.A.<br>P.O. Box 547637<br>Orlando, FL 32854-7637<br>Tel: (407) 872-2239<br>lroth@roth-law.com<br>lcarrington@roth-law.com<br>epoit@roth-law.com<br>**Plaintiffs' Liaison Counsel** | Robert A. Schwartz<br>Bailey & Galyen<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Tel: (281) 335-7744<br>bschwartz@galyen.com<br>anixon@galyen.com |
| Kenneth W. Smith<br>Aylstock Witkin Kreis & Overholtz<br>803 North Palafox St.<br>Pennsacola, FL 32501<br>Tel: (850) 916-7450<br>ksmith@awkolaw.com<br>kws6619@msn.com<br>rvasquez@awkolaw.com<br>rbaggett@awkolaw.com<br>churt@awkolaw.com<br>gcosby@awkolaw.com | Russell O. Stewart<br>Bridgett Ahmann<br>Linda Svitak<br>Faegre & Benson LLP<br>90 S. 7th St., Suite 2200<br>Minneapolis, MN 55402<br>rstewart@faegre.com<br>lmcwhirt@faegre.com<br>nmalik@faegre.com<br>mbeliveau@faegre.com<br>lsvitak@faegre.com |
| Joe R. Whatley, Jr.<br>W. Todd Harvey<br>2323 2nd Ave. N<br>Birmingham, AL 35203-0647<br>Tel: (205) 328-9576<br>tharvey@whatleydrake.com<br>jwhatley@whatleydrake.com<br>ecf@whatleydrake.com | Justin Witkin<br>Ken Smith<br>Aylstock, Witkin & Sasser, PLC<br>4400 Bayou Blvd., Suite 58<br>Pensacola, FL 32503<br>Tel: (850) 916-7450<br>Jwitkins@AWS-LAW.COM<br>ablankenship@aws-law.com<br>aburrus@aws-law.com<br>asmith@aws-law.com<br>ksmith@aws-law.com<br>noverholtz@aws-law.com<br>jsafe@aws-law.com |

**NON-CM/ECF SERVICE LIST**

| | |
|---|---|
| Mr. Terry Bryant<br>Gregg A. Anderson<br>Terry Bryant, LLP<br>8584 Katy Freeway, Suite 100<br>Houston, Texas  77024 | John M. Bailey<br>Law Offices of John M. Bailey<br>5978 Knight Arnorld, Suite 400<br>Memphis, TN  38115 |
| Timothy Reese Balducci<br>The Langston Law Firm, P.A.<br>P.O. Box 787<br>100 South Main St.<br>Booneville, MS 38829<br>Tel: (662) 728-3138<br>tbalducci@langstonlaw.com | Kenneth W. Bean<br>Sandberg, Phoenix & von Gontard<br>One City Centre<br>15th Floor<br>St. Louis, MO 63101-1880<br>Tel: (314) 231-3332<br>kbean@spvg.com |
| Barry A. Bohrer<br>Morvillo, Abramowitz, Grand<br>565 Fifth Avenue<br>New York, NY  10017 | Philip Bohrer<br>Scott Brady<br>Bohrer Law Firm, LLC<br>8721 Jefferson Highway, Suite B<br>Baton Rouge, La/  70809 |
| Earl Francis Carriveau<br>1012 6th Ave.<br>Lake Charles, LA  70601-4706 | Robert F. Clarke<br>Phillips & Associates<br>3030 North Third St., Ste 1100<br>Phoenix, AZ  85012<br>602/258-8900 |
| Lee Coleman<br>Hughes & Coleman<br>444 James Robertson Pkwy., Suite 201<br>Nashville, TN  37219 | Patricia Cook |
| J. Aaron Cooke<br>Cooke Law Firm<br>331 Columbia Street<br>Lafayette, IN  47902-0188 | Elizabeth Ashley Cranford<br>Russell Jackson Drake<br>2001 Park Plaace N., Suite 1000<br>PO Box 10647<br>Birmingham, AL  35203 |
| Cannon Curlee | Mark W. Davis<br>Davis & Feder, P.A.<br>P.O. Drawer 6829<br>Gulfport, MS 39506-7018 |

28

| | |
|---|---|
| Jason B. Eshelman<br>Eshelman Legal Group<br>263 Portage Trail Ext.<br>West Cuyahoga Falls, OH  44223 | Russell Jackson Drake |
| Kelly Fowler<br>Fowler Law Offices<br>PO Box 952<br>Owensboro, KY  42302 | Warren Frazier |
| James J. Freebery<br>McCarter & English, LLP<br>18th Floor<br>919 N. Market St.<br>Wilmington, DE  19801 | Michael T. Gallagher<br>The Gallagher Law Firm<br>2905 Sackett St.<br>Houston, TX  77098 |
| Gary Reed Gober<br>200 Fourth Ave. North<br>Suite 700<br>Nashville, TN  37219<br>615/297-8300 | Christopher Gomez<br>Miller & Associates<br>555 E. City Avenue, Suite 910<br>Bala Cynwyd, PA  19004 |
| Richard D. Hailey<br>Ramey & Hailey<br>3891 Eagle Creek Pkwy.<br>Suite C<br>Indianapolis, IN  46254-2600 | Jason Matthew Hatfield<br>Lundy & Davis, LLP<br>300 North College Ave.<br>Suite 309<br>Fayetteville, AR  72701 |
| Stacy K. Hauer<br>Charles Zimmerman<br>651 Nicollet Mall, Suite 501<br>Minneapolis, MN  55402 | John Hawkins |
| Marcus Edward Hayes, Sr.<br>Crumley & Associates<br>2400 Freeman Mill Rd.<br>Greensboro, NC  27406 | Donna Higdon |
| Gail Holt | Marshall Hurley<br>Marshall Hurley PLLC<br>2400 Freemand Mill Road, Suite 200<br>Greensboro, NC  27406 |

| | |
|---|---|
| Gary Thomas Iscoe<br>Steinger Iscoe & Phillips<br>1645 Palm Beach Lakes Blvd., Suite 900<br>West Palm Beach, FL  33401-2204 | Janssen, L.P.<br>Drinker Biddle & Reath LLP<br>500 Campus Drive<br>Florham Park, NJ 07932-1047 |
| Johnson & Johnson<br>Drinker Biddle & Reath LLP<br>500 Campus Drive<br>Florham Park, NJ 07932-1047 | Louisiana Wholesale Drug Co., Inc.<br>c/o Gayle White, Registered Agent<br>Highway 167 N<br>Sunset, La  70584 |
| Lois M. Lynch | Salvatore M. Machi<br>Ted Machi & Associates PC<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Tel: (281) 335-7744 |
| Michael J. Miller<br>Miller & Associates<br>105 N. Alfred St.<br>Alexandria, VA  22314 | Michael J. Miller<br>The Miller Firm, LLC<br>108 Railroad Avenue<br>Orange, VA  22960 |
| Eric B. Milliken<br>3 Sir Barton Ct.<br>Newark, DE 19702-2033 | Randy Niemeyer<br>15863 Pike 43<br>Bowling Green, MO 63334-2620 |
| Angela Parker | Gale D. Pearson<br>Stephen J. Randall<br>Pearson, Randall & Schumacher, PA<br>Fifth Street Towers, Suite 1025<br>100 South 5th Street<br>Minneapolis, MN  55402<br>612/767-7500 |
| Dale Kent Perdue<br>Clark Perdue Arnold & Scott<br>471 East Broad St., Suite 1400<br>Columbus, OH  43215 | Thomas E. Pittenger<br>Eric Guirard, PLC<br>1075 Government Street<br>Baton Rouge, La.  70802 |
| Joseph Ronald Poirot<br>Ferrer, Poirot & Wansborough<br>2603 Oak Lawn Avenue, Suite 300<br>Dallas, Texas  75219 | Stephen Randall<br>Pearson Randall & Schumacher<br>Fifth Street Towers, Suite 1025<br>100 South 5th Street<br>Minneapolis, MN  55402 |

| | |
|---|---|
| Brenda Rice | Evelyn Rodriguez |
| Seth S. Webb<br>Brown & Crouppen, P.C.<br>720 Olive St., Suite 1800<br>St. Louis, MO  63101-2302 | Robert L. Salim<br>Attorney At Law<br>P.O. Box 2069<br>Natchitoches, LA 71457-2069<br>Tel: (318) 352-5999<br>robertsalim@cp-tel.net |
| Alan G. Schwartz<br>Wiggin & Dana<br>PO Box 1832<br>Natchitoches, La.  71457-2069 | Ellen R. Serbin<br>Perona Langer Beck Lallande & Serbin<br>300 San Antonio Dr.<br>Long Beach, CA  90807-0948 |
| Robert H. Shultz<br>Heyl, Royster<br>103 W. Vandalia St.<br>P.O. Box 467<br>Edwardsville, IL  62025<br>618/656-4646 | Robert G. Smith<br>Lorance & Thompson, PC<br>Suite 500<br>2900 N Loop W<br>Houston, TX  77092 |
| Catherine Solomon<br>3100 N.E. 83<br>Gladstone, MO 64119 | John Hunter Stevens<br>PO Box 16570<br>Jackson, MS  39236-6570 |
| James J. Walker<br>Carter Mario Injury Lawyers<br>54 Broad Street<br>Milford, CT  06460 | Seth Webb<br>Brown & Crouppen, PC<br>720 Olive Street, Suite 1800<br>St. Louis, MO  63101-2302 |
| Colin C. West<br>Bingham McCutchen, LLP<br>3 Embarcadero Ctr<br>San Francisco, CA  94110 | Mary J. Wrightinton |