UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE: Seroquel Products Liability Litigation
MDL DOCKET NO. 1769

_____

This Document Relates to All Cases

ASTRAZENECA'S OPPOSITION TO PLAINTIFFS' APPEAL FROM, OBJECTION
TO, AND MOTION TO VACATE MAGISTRATE JUDGE'S ORDER GOVERNING
PERMISSIBLE CONTACT AND RETENTION OF CERTAIN FLORIDA-RELATED
PHYSICIANS AS DEFENSE EXPERTS

AstraZeneca LP and AstraZeneca Pharmaceuticals LP ("AstraZeneca") hereby oppose

plaintiffs' appeal (Doc. No. 927) ["Appeal"] from Magistrate Judge Baker's Order dated March

21, 2008 (Doc. No. 912) ["Order"], which granted AstraZeneca's Motion for Entry of an Order

Governing Permissible Contact and Retention of Certain Florida-Related Physicians as Defense

Experts (Doc. No. 883) ["Motion"].

I.      INTRODUCTION

AstraZeneca filed its Motion to confirm its right – subject to certain precautionary

restrictions – to meet with Florida physicians about their possibly testifying as defense experts in

cases brought by plaintiffs whom the physicians have *never* treated or otherwise seen as one of

their patients.  Plaintiffs opposed that effort, contending that any such contact would violate

Florida's physician-patient privilege statute, Florida Statutes section 456.057(7), and its

accompanying rule against certain "ex parte" communications.

As Magistrate Judge Baker correctly recognized, plaintiffs' position was premised on an

erroneous and overly broad reading of Florida cases concerning efforts by defendants to have ex

parte contacts with the plaintiff's own treating physicians in the context of *that* plaintiff's own

case.  No Florida statute or case authority prohibits a defendant from contacting, and possibly

retaining as a defense expert, a physician who has never treated the plaintiff but who may have treated some *other* patient who is a plaintiff in *some other case*.  Moreover, no Florida court has ever addressed application of section 456.057(7), or its corollary rule against certain ex parte contacts, in the context of aggregated mass tort litigation.

Given the absence of any Florida authority on point in comparable contexts, Magistrate Judge Baker properly followed the approach taken by courts in other mass aggregated products-liability litigation that permitted the sort of contacts sought by AstraZeneca (despite state physician-patient privilege law similar to Florida law here), but subject to the same additional "precautions" imposed by those courts to ensure against any invasion of rights genuinely protected by the physician-patient privilege.  Order at 5-8; *In re Prempro Litig.*, MDL No. 4:03-cv-1507-WRW, Order re: Retention of Experts (E.D. Ark., Dec. 7, 2005) [Motion, Exh. B]; *In re AMS Minnesota Penile Prosthesis Litig.*, No. PI 97-11183, Tr. of Proceedings (Minn. Dist. Ct., May 8, 1998), & Mem. to Urologists (Minn. Dist. Ct., May 11, 1998) [Motion, Exhs. C & D].

As explained further below, plaintiffs' Appeal is without merit for several reasons:

(1)     Plaintiffs fail to show that Magistrate Judge Baker's Order is legally incorrect – much less so "clearly wrong" that it must be reversed by this Court as contrary to law under Federal Rule of Civil Procedure 72(a).  *Dominguez v. Metropolitan Miami-Dade County*, 359 F. Supp. 2d 1323, 1345 (S.D. Fla. 2004).  In fact, the Order is legally correct. Moreover, plaintiffs fail to demonstrate that the additional precautionary restrictions imposed by the Magistrate Judge do not serve to protect any rights or interests protected by Florida's physician-patient privilege statute and authorities.  *See* Part IV.A., *infra*.

(2)     Plaintiffs' request that this Court consider imposing their new-found additional precautionary restrictions is procedurally improper, as plaintiffs waived any such contentions by failing to present them to the Magistrate Judge.  *See Mitchell v. Consolidated Freightways Corp.*, 747 F. Supp. 1446, 1447 (M.D. Fla. 1990).  In any event, those additional restrictions are baseless and without any authoritative support. *See* Part IV.B., *infra*.

(3)     Plaintiffs are also wrong to assert that the Order must be vacated on the ground that it is fatally dependent upon "clearly erroneous" factual findings, because it supposedly "hinges" on a miscalculation of the number of potentially implicated Florida physicians.

Appeal at 2, 7. The Order's conclusion and holding is simply not dependent on whether the actual number of affected physicians is 5, 10, 100, 1000, or "3,140" physicians, and plaintiffs' suggestion to the contrary is unavailing. *See* Part IV.C., *infra*.

At bottom, plaintiffs' Appeal does little more than reassert the same flawed contentions based on the same authorities that plaintiffs argued to the Magistrate Judge. Plaintiffs simply persist in their misguided effort to have the Court infer an expansive penumbra around Florida's physician-patient privilege and accompanying ex parte contact principles that is so broad, and ballooned beyond recognition in the context of mass aggregated litigation in this MDL, that it would prohibit AstraZeneca's expert witness development efforts even in *non-patient cases*. But plaintiffs provide no legitimate basis for this federal court sitting in diversity to apply Florida law more broadly than any Florida state court ever has. In short, because Magistrate Judge Baker's Order is legally sound, consistent with the decisions of other courts in comparable mass tort litigation, and certainly not inconsistent with Florida law, plaintiffs' Appeal should be denied.

## II.     BACKGROUND

AstraZeneca filed its Motion on February 29, 2008 out of an abundance of caution, seeking an order in this aggregated MDL proceeding that permits defense counsel to contact and possibly retain Florida physicians as defense experts for any plaintiff's case in which the physician is not among that plaintiff's physicians. *See* Motion at 1. As the Motion explained, CMO No. 5 requires AstraZeneca to identify general and case-specific experts and provide their reports by September 12, 2008; thus, AstraZeneca has been seeking out top experts in a variety of medical-related fields, including local Florida experts for the cases in the Initial Florida Trial Pool. *Id*. at 2-3. The Motion also emphasized that AstraZeneca has taken care to avoid communications with any physician that it knows or has reason to believe has treated one or more of the 174 Florida plaintiffs, and adhered to a policy of promptly terminating contact with

3

any Florida-related physician if it learns that the doctor has any Florida plaintiff as a patient. *Id.* at 3.[1]  AstraZeneca believed that these extraordinary steps were unwarranted.  Thus, AstraZeneca brought its Motion in consideration of the possibility – given the large number of Florida plaintiffs aggregated in this MDL and the comparatively limited number of local physicians that may be qualified and willing to serve as Florida trial experts – that one or more potential Florida defense experts might have treated a Florida plaintiff at some time in the past. *Id.* at 3-4.

AstraZeneca's Motion acknowledged that Florida law regarding the physician-patient privilege prohibits a defendant's ex parte communications with a particular plaintiff's physicians in the context of that plaintiff's own case. *Id.* at 5-7.  It emphasized, however, that courts in other MDLs and comparable mass aggregated litigation (under state law comparable to Florida) adopted precisely the sort of Order proposed by AstraZeneca in its Motion – which *permitted* the contacts proposed by AstraZeneca, but subject to certain *precautionary measures* imposed by the courts to alleviate any genuine risks and practical concerns with respect to the physician-patient privilege. *Id.* at 8-12 & Exhs. A, B, & D.  Specifically, those additional precautions included:

- a prohibition on any communication by AstraZeneca or its counsel with the physician-expert about any of that physician's patients who are involved in or likely to become involved in this MDL;

- a prohibition against AstraZeneca or its counsel using a physician as an expert in a case where that physician's patient is a plaintiff in that particular case; and

---

[1] There is no support for plaintiffs' charge that AstraZeneca brought its Motion to lock up as defense experts all physicians identified in plaintiffs' PFSs after "canvassing the entire population of Plaintiffs' treating physicians." Appeal at 14.  In fact, AstraZeneca made plain that it had been avoiding *any* expert development efforts in *all* cases with any Florida-based physician that it had any reason to know had ever treated any of the plaintiffs. *See* Motion at 3. Plaintiffs' PFSs were consulted only to *eliminate* physicians from consideration, and certainly *not as the starting point* for AstraZeneca's efforts to prepare Florida cases for trial by seeking out the relatively limited number of Florida physicians who have the experience and credentials in the relevant fields and the intangible qualities to be appropriate testifying experts. *Id.* at 3, 11.

- a requirement that – prior to any substantive communication with the prospective physician-expert – AstraZeneca and its counsel must provide the physician with the Court's Order and secure the physician's written acknowledgement that he or she has read a court-approved "Memorandum to Physicians" (which reminds the physicians of the statutory basis for the physician-patient privilege and admonishes them that they must protect the confidential communications and records of individual patients).

*Id.* at 11-12 & n.9.  AstraZeneca expressed its willingness to abide by those judicially imposed restrictions and precautions, which would protect any rights and interests genuinely protected by Florida's physician-patient privilege statute and related authorities.  *Id.* at 2, 11-12.

In their opposition (Doc. No. 895) ["Response"], plaintiffs argued that Florida law concerning the physician-patient privilege categorically precluded AstraZeneca's request, which they said created the potential for mischief.  *See* Response at 3-11.  Nowhere did plaintiffs' Response mention, or advance any argument concerning, either (1) the number of plaintiffs' healthcare providers referenced in AstraZeneca's Motion; or (2) any restrictions on AstraZeneca's contact with plaintiffs' healthcare providers.  Rather, plaintiffs' Response relied on the argument that AstraZeneca's proposal was wholly illegal under Florida's physician-patient privilege.  *See* Response at 3; *see also* Order at 5 (describing plaintiffs' arguments).

Magistrate Judge Baker entered his Order on March 21, 2008 (Doc. No. 912), which granted AstraZeneca's Motion in part.  The Order first notes that AstraZeneca "is in the process of locating Florida experts in a number of fields," and that "[s]ome of these Florida experts may have treated some of the one hundred seventy-four Florida Patient-plaintiffs (or for that matter, any of the 6,000 Plaintiff-patients) in this nation-wide MDL."  Order at 2.  It then quotes Florida's physician-patient privilege statute, and acknowledges the ban on ex parte contacts between a defense attorney and the plaintiff's treating physician "as set forth in Florida case law by Plaintiff."  *Id.* at 3.  As the Order recognizes, however, AstraZeneca seeks only to pursue physician contacts and possibly secure their testimony as defense experts in individual Florida

Trial Pool cases where the particular physician/expert *never* treated the particular plaintiff – and, thus, seeks contacts that have never been held to be prohibited by any of plaintiffs' cited Florida authorities. *Id.* at 3, 5. As further support for its conclusion, the Order notes that plaintiffs' requested "prohibition on [defense counsel's] contacting and retaining physicians has the potential to deprive AstraZeneca of a fair opportunity to present its defense in the cases to be tried in Florida." *Id.* at 6. After balancing AstraZeneca's rights against plaintiffs' concerns for the Florida physician-patient privilege, the Order concludes that the balance tips in favor of granting AstraZeneca's Motion. *Id.* at 5-7. Finally, noting that "[p]laintiffs did not comment on the proposed safeguards proposed by [AstraZeneca]," *id.* at 5, the Order permits contact with and retention of Florida physicians albeit subject to "restrictions" substantially as proposed by AstraZeneca and used by other courts. *Id.* at 5, 7. In accordance with Florida law, the Order proscribes use of "a physician as a consulting or testifying expert in a case where that physician's present or former patient is a plaintiff in that particular case." *Id.* at 7.[2]

## III.    STANDARD OF REVIEW

Under Rule 72(a), "a district judge must affirm a magistrate judge's order on a nondispositive matter unless that order is found to be 'clearly erroneous or contrary to law.'" Feb. 28, 2008 Order (Doc. No. 880), at 2 (quoting FED. R. CIV. PROC. 72(a)). Under that quite deferential standard, "this Court's review of the magistrate judge's [nondispositive] order in this instance is not *de novo*, but rather is limited to a finding of clear error." *Id.* at 8.[3] Indeed, "the

---

[2] Before filing this Appeal, plaintiffs moved to stay the Order pending appeal, *see* Doc. No. 915, which AstraZeneca timely opposed, *see* Doc. No. 933.

[3] Plaintiffs' new-found contention that a full "de novo" standard of review applies under Rule 72(a)'s "contrary to law" standard (*see* Appeal at 4) is – ironically – flatly at odds with their own opposition to AstraZeneca's previous appeal from a different order of the Magistrate Judge in this MDL, in which plaintiffs argued to this Court that magistrate "orders are not subject to a *de*

objecting party is obliged to demonstrate that the magistrate judge was clearly wrong."

*Dominguez v. Metropolitan Miami-Dade Cnty.*, 359 F. Supp. 2d 1323, 1345 (S.D. Fla. 2004).

Moreover, no magistrate order may be vacated under Rule 72(a) on the ground that it is premised

on "clearly erroneous" factual findings unless the reviewing court is left with the definite, firm

conviction that a mistake was made which is outcome determinative.  Feb. 28, 2008 Order (Doc.

No. 880), at 2; *Nord v. United States Steel Corp.*, 758 F.2d 1462, 1467-68 (11th Cir. 1985);

*American Nat'l Bank of Jacksonville v. F.D.I.C.*, 710 F.2d 1528, 1534-35 (11th Cir. 1983).

## IV.   ARGUMENT

Magistrate Judge Baker's Order should be affirmed as a reasonable and legally correct

resolution of the issue presented by AstraZeneca's Motion.  Because plaintiffs fail to show that

the Order is either "contrary to law" or fatally premised upon "clearly erroneous" findings, their

Appeal should be denied.

### A.   Plaintiffs Have Failed To Demonstrate That Magistrate Judge Baker's Order Is "Contrary To Law" Under Federal Rule Of Civil Procedure 72(a)

Plaintiffs' principal argument in their Appeal is that the Order must be vacated as

"contrary to law" under Rule 72(a) because Magistrate Judge Baker supposedly misconstrued

and misapplied Florida law – which plaintiffs interpret as imposing a *blanket prohibition* in this

MDL against any conceivable ex parte contacts by AstraZeneca with any physician that has

treated one of the many plaintiffs whose claims are now pending before this Court.  *See* Appeal

at 7-12.  According to plaintiffs, Florida's physician-patient privilege statute, and its

accompanying rule prohibiting certain "ex parte" communications with a plaintiff's treating

---

*novo* determination."  *See* Plaintiffs' Opposition to AstraZeneca's Appeal From, Objection to
and Motion to Vacate Magistrate Judge's Order Granting Plaintiffs' Motion to Compel Re:
Documents Reviewed by Witness in Preparation for Depositions (Doc. No. 863), at 2-3.

physicians in an individual case, should *categorically* prevent AstraZeneca's expert witness development efforts in *all* cases with respect to *any* physician or medical expert that has ever treated *any* of the 174 Florida plaintiffs in this MDL. That is wrong as a matter of law, and plaintiffs' Appeal on this score fails for two fundamental reasons. First, as Magistrate Judge Baker aptly recognized, plaintiffs' broad argument is not supported by the Florida authorities on which they rely. Second, plaintiffs fail to demonstrate any error in the Magistrate Judge's determination to follow the approach taken to resolve the identical issue by several other courts in comparable mass aggregated litigation – nor do they show how or why the additional precautions imposed by the Magistrate Judge fail to protect against any unwarranted invasion of rights genuinely protected by Florida's physician-patient privilege.

> **1.     The Magistrate Judge Correctly Recognized That Florida's Physician-Patient Privilege Statute And Authorities Do Not Prohibit AstraZeneca's Expert Witness Retention Efforts At Issue Here**

As they did before Magistrate Judge Baker, plaintiffs purport to base their argument on *Acosta v. Richter*, 671 So. 2d 149 (Fla. 1996), *Kirkland v. Middleton*, 639 So. 2d 1002 (Fla. App. 1994), and *Lemieux v. Tandem Health Care of Fla., Inc.*, 862 So. 2d 745 (Fla. App. 2003). *See* Appeal at 9-12. Yet each of those authorities involved a simple *single-plaintiff case* in which the physician at issue had the plaintiff as a patient. None of plaintiffs' cited cases involved the entirely different circumstances presented in complex mass aggregated litigation – such as this very different MDL proceeding – in which plaintiffs' counsel sought to invoke section 456.057(7) and its accompanying ex parte contacts rule as the basis for any claimed "veto" right to prevent defendants from meeting with physicians and possibly retaining them as defense

experts to testify in cases involving plaintiffs that have *never been patients of the physicians* at issue.  As Magistrate Judge Baker recognized, this is a distinction with a difference.[4]

Florida's physician-patient privilege statute limits the disclosure of medical records and information about the medical condition of a particular "patient" without "written authorization of the patient."  FLA. STAT. § 456.057(7).  In this way, the statute operates to achieve its purpose, which is to protect the "confidentiality" of the medical records and the medical condition "of a patient."  *Acosta*, 671 So. 2d at 154.

Florida state courts have interpreted section 456.057(7) as supporting a corollary rule prohibiting defense counsel from having "ex parte" communications with the plaintiff's treating physicians in the context of that plaintiff's case against defendant.  *Id.* at 152; *see also Lemieux*, 862 So. 2d at 750; *Kirkland*, 639 So. 2d at 1004.  But this prohibition against ex parte communications operates to prevent defense lawyers from talking with *the plaintiff's* own physicians about *the plaintiff's* medical records, conditions and treatment in the context of *the plaintiff's* lawsuit.  *See West v. Branham*, 576 So. 2d 381, 383 (Fla. App. 1991) (interpreting section 456.057(7) as "closing the door to the previous practice of many defense attorneys of meeting privately or otherwise communicating ex parte with the plaintiff's treating physicians").

The focus of the privilege is not the physician, but the *particular patient* of the physician

---

[4] Plaintiffs acknowledge this distinction only in a footnote, which misleadingly quotes a snippet from a Florida Bar Journal article.  *See* Appeal at 11 n.8.  Although the article hazards a guess about the possible effects of *Acosta* on mass tort litigation, its author admits that "these questions remain unanswered" by Florida courts – a concession plaintiffs conspicuously omit.  J.N. Harris, *The Limits of Ex Parte Communications With a Plaintiff's Treating Physician Under Florida Law*, 70 FLA. B. J.57, 60 (1996) (noting that *Acosta* "raise[s] more questions than it answers").  Moreover, after emphasizing that the answers to such issues remain "yet to be written" after *Acosta*, the author suggests that they may best be resolved by avoiding any unduly restrictive approach to ex parte physician contacts – particularly where a more permissive approach would further interests of judicial economy and defendants' rights to mount their defense.  *Id.*

– *i.e.*, the medical records and medical condition of the physician's own "patient." *Acosta*, 671 So. 2d. at 154 (ruling that section 456.057(7) creates a "privilege of confidentiality as to the medical records and the medical condition *of a patient*") (emphasis added); *accord Lemieux*, 862 So. 2d at 748.  Hence, what is privileged and confidential is simply what the doctor knows about the particular plaintiff learned in the course of providing medical care to that plaintiff/patient. The physician's general knowledge and experience is not rendered privileged in any respect by Florida Statutes section 456.057 or any other aspect of Florida law.  As Magistrate Judge Baker correctly concluded, the Florida rule against ex parte communications with a plaintiff's *own* physicians cannot fairly be interpreted to provide plaintiff's counsel with a shield to prevent disclosure of the physician's separate expert opinions for cases filed by *others* who have never been among the physician's own patients.  *See* Order at 4-5.[5]

Indeed, where the doctor is not among the particular plaintiff's treating physicians, then ex parte communication between the defendant and that physician is permissible under Florida law.  *See, e.g., West*, 576 So. 2d at 384 (permitting contact between defendant and doctor performing independent medical examination "provided that the examined party [plaintiff] is not otherwise being treated by the examining doctor").  In fact, "nothing" in section 456.057 or its corollary rule against ex parte communications with the plaintiff's physicians "restrict[s]

_____

[5] Plaintiffs cite *Acosta*'s prohibition on any defense contact with the plaintiff's doctor in the context of the plaintiff's own case to argue that it is irrelevant whether the contact involves plaintiff's medical condition or some other matter.  *See* Appeal at 11-12.  In this regard, *Acosta* merely concluded – in the single-plaintiff context – that it would be "pure sophistry" for the defendant to suggest that its ex parte communications with the plaintiff's treating physician were for some reason *unrelated* to obtaining confidential information about the plaintiff or other information pertaining to the plaintiff's lawsuit.  *Acosta*, 671 So. 2d at 156.  But that rationale plainly has no application in this mass aggregated MDL proceeding – in which AstraZeneca has entirely legitimate reasons to contact Florida physicians about possibly testifying as experts in *non-patient cases* even if they may have treated one or more of the 174 Florida plaintiffs here.

communication between the defense and its retained medical expert." *Id.* As the Florida appellate court explained in *West*, the "wording" of section 456.057 confirms that it "was intended to prevent the practice of defense counsel discussing a patient's condition with the patient's treating physician," but not "to restrict communication between the defense and its retained medical expert" who is not among the particular plaintiff's physicians: "Certainly, if the legislature had intended that trial courts would enter orders granting plaintiff's protection from communication between the defense and a witness it is calling as an expert, it could have said so in a much more clear and explicit manner." *Id.*

Thus, where (as here) the defendant seeks to communicate with a physician about his or her general knowledge and experience, or opinions about issues in cases filed by *non-patients* – as opposed to any information about one of the physician's own patients – then the patient-confidentiality interests protected by section 456.057 are not implicated, and its corollary rule concerning ex parte physician communications simply does not come into play. Florida law has never permitted any plaintiff to prevent ex parte contacts by defendants except with that plaintiff's physicians in the context of that plaintiff's own case. Thus, as Magistrate Judge Baker correctly recognized, the critical fact here is that AstraZeneca seeks merely to contact and possibly retain Florida physicians to testify as experts in other cases *not* involving that particular physician's patients. Because none of plaintiffs' cited cases address such a circumstance, they do not support the conclusion that the Order is clearly wrong and contrary to Florida law.

> **2.    In The Absence Of Adverse Florida Authority On Point, The Magistrate Judge Properly Balanced The Competing Interests And Correctly Followed The Approach Taken In Comparable Circumstances By Courts In Other Mass Aggregated Litigation**

Magistrate Judge Baker conditioned court approval of AstraZeneca's contacts with physicians on compliance with the same core "precautions" that other courts have imposed in

comparable circumstances in mass tort litigation, to guard against the potential for any invasion of rights genuinely protected by the physician-patient privilege. Order at 5-7 (citing *In re Prempro Litig.*, *supra*, and *In re AMS Minnesota Penile Prosthesis Litig.*, *supra*).

In the *Prempro* MDL, the court rejected arguments identical to those made by plaintiffs here, and permitted the drug-manufacturer defendants to have substantive communications with and to retain physicians as experts in non-patient cases even though the Arkansas privilege rules explicitly prohibited "[a]ny informal, ex parte contact or communication between a party or his or her attorney and the physician ... of any other party." Motion, at 8-9 & Exh. B (*Prempro* Order, at 1); *see also* ARK. R. CIV. PROC. 35(c)(2). As the *Prempro* court ruled, defendants "will not be prohibited from retaining a physician as an expert witness who is identified on a plaintiff's fact sheet" subject to certain limitations, including that "[d]efendants and their attorneys cannot use a physician as an expert in a case where that physician's patient is a plaintiff in that particular case." Motion, at 8-9 & Exh. B (*Prempro* Order, at 1).

Similarly, in the *AMS Minnesota Penile Prosthesis* coordinated proceedings, the court affirmed the defendant's right to retain eight urologists as defense experts who had not treated any of the 20 bellwether plaintiffs (although they had treated other plaintiffs), even though Minnesota prohibited "ex parte" interviews of a plaintiff's treating physicians. *See Wenninger v. Muesing*, 240 N.W.2d 333, 334 (Minn. 1976). The court adopted similar additional safeguards as those imposed in *Prempro*, and by Magistrate Judge Baker here. Motion, at 9-10 & Exh. D.

In their Appeal, plaintiffs fail meaningfully to address – much less distinguish – the *Pempro* and *AMS* decisions followed by Magistrate Judge Baker. While saying that their research uncovered no other courts following that approach, *see* Appeal at 12, plaintiffs fail to cite even a single case *rejecting* it in mass aggregated litigation. Plaintiffs simply assert the same

policy arguments that they unsuccessfully pressed before Magistrate Judge Baker – again to no avail. For instance, while plaintiffs posit that the Order *might* result in the disclosure of compromising medical information or a loss of trust between plaintiffs and their doctors, *id.* at 13-16, their speculative assertions simply do not demonstrate that the Order is "contrary to law" under Rule 72(a). That is not to say the Magistrate Judge was insensitive to plaintiffs' concerns. In fact, his Order recognizes "the potential for misuse of this authorization, the danger of inappropriate communications and the possibility of conflicts and complexities as the cases develop and the varying roles of physicians intertwine," and thus provides that it "will be subject to review and potential modification as may be needed" by the Court in the future. Order at 6.

Moreover, the speculative consequences about which plaintiffs complain are unlikely given the additional precautions imposed by Magistrate Judge Baker. The Order, its accompanying Memorandum to Physicians, and a doctor's own ethical obligations all guard against any genuine risk that improper disclosure of confidential medical information about the doctor's patients will actually occur as a result of the Magistrate Judge's ruling. Further, plaintiffs' arguments related to any claimed impairment to the "trust" they have in their own physicians are simply inapposite here. "It is well recognized, that absent a privilege, no party is entitled to restrict an opponent's access to a witness, however partial or important to him, by insisting on some notion of allegiance." *Galarza v. United States*, 179 F.R.D. 291, 294 (S.D. Cal. 1998); *accord Doe v. Eli Lilly & Co.*, 99 F.R.D. 126, 127-29 (D.D.C. 1993).[6] Finally,

---

[6] Notably, the *Prempro* plaintiffs argued – like plaintiffs here – that ex parte communications between any of their doctors and the defendants even in non-patient cases supposedly would undermine their confidence in those doctors; violate those doctors' fiduciary obligations; threaten to reveal confidential information; and be subject to potential abuse and mischief. *See* Motion at 9 n.7 & Exh. E. But the MDL court in *Prempro* rejected those overblown arguments, just as Magistrate Judge Baker properly rejected them here. *Id.*; *see also* Order.

plaintiffs' fears and policy arguments must ultimately be balanced against AstraZeneca's rights to develop and present local Florida expert testimony in its defense of these Florida-related cases, as Magistrate Judge Baker recognized. *See* Order at 6.

In sum, given the absence of adverse Florida authority on point in any analogous context, it was entirely reasonable and proper for Magistrate Judge Baker to follow the decisions of courts in other jurisdictions with similar privilege regimes faced with the same issue in comparable mass aggregated products-liability litigation – and, thus, to permit the contacts proposed by AstraZeneca, subject to the same precautionary restrictions imposed by those other courts. Plaintiffs' suggestion that Magistrate Judge Baker's Order is so clearly wrong that it must be vacated as "contrary to law" is patently without merit.

**B.     The Court Should Reject Plaintiffs' New-Found Additional "Restrictions" – Which Plaintiffs Never Presented To The Magistrate Judge, And Which Are Without Merit In Any Event**

Plaintiffs further argue that – if the Court does not vacate the Order – it should consider amending the Order by imposing four additional restrictions on AstraZeneca. *See* Appeal at 17. Yet plaintiffs raise each of these new-found restrictions for the first time in this Appeal. Plaintiffs had a full and fair opportunity to propose those additional restrictions to Magistrate Judge Baker for his consideration, but plaintiffs failed to do so. *See* Order at 5 (emphasizing that "[p]laintiffs did not comment on the proposed safeguards proposed by [AstraZeneca], but sought instead to bar all such contacts"). It is well settled that "arguments not presented" first to a magistrate judge cannot properly be raised for the first time in an appeal under Federal Rule of Civil Procedure 72(a). *Mitchell v. Consolidated Freightways Corp.*, 747 F. Supp. 1446, 1447 (M.D. Fla. 1990) (disregarding arguments made for the first time in a Rule 72(a) appeal where the party bringing the appeal "did not present these grounds to the Magistrate") (citing cases).

In any event, even if the Court were inclined to consider plaintiffs' additional proposed restrictions, it should reject them as without justification or authoritative support. Indeed, plaintiffs do nothing more than list at the end of their brief the four additional restrictions they ask the Court to impose – restrictions that are onerous, invasive, unworkable, and patently unreasonable on their face. Nowhere do plaintiffs even attempt to set forth any good cause or substantial justification for their adoption. Nor could they. Plaintiffs' proposals seek to impose wide-ranging notice, reporting, and monitoring requirements on AstraZeneca – which seem more designed to hinder AstraZeneca's efforts in developing expert testimony in its defense than actually protecting any conceivable rights or interests related to the physician-patient privilege.

**C.     Plaintiffs' Contention That The Order Should Be Vacated Under Rule 72(a) Because It Hinges Entirely On Some Claimed Miscalculation Of The Number Of Potentially Implicated Florida Physicians Is Entirely Without Merit**

Finally, plaintiffs advance the demonstrably incorrect contention that the Order supposedly "hinges" on a miscalculation of the number of potentially implicated Florida physicians and, thus, should be vacated under Rule 72(a) on the ground that it is fatally dependent upon "clearly erroneous" factual findings. *See* Appeal at 2, 4-7.

As a threshold matter, plaintiffs failed ever to raise any contentions before the Magistrate Judge about the number of implicated Florida physicians – either in their briefing, at oral argument, or in any motion for reconsideration. Thus, plaintiffs waived this claimed ground for reversal, which they raise for the first time on appeal. *See Mitchell*, 747 F. Supp. at 1447.

But more fundamentally, plaintiffs are wrong to assert that Magistrate Judge Baker's conclusion and holding fatally "hinges" on the precise *number* of potentially implicated Florida physicians who may have treated one or more of the plaintiffs. Appeal at 2. Regardless of the exact number of implicated physicians, the Magistrate Judge based his decision on the *principle*

that the law does not permit plaintiffs "collectively to disqualify[] the substantial number of treaters they have used," Order at 6, or otherwise to use the fact that all of their cases have been aggregated into this MDL as a "shield" to prevent AstraZeneca from meeting with and perhaps retaining Florida physicians as experts in cases of non-patient plaintiffs, *id.* at 4.  Moreover, as AstraZeneca's Motion made clear, the problem here is *not* simply one of "numbers":

> Whether the number is five, fifty, five hundred or more than one thousand, it matters most who the disqualified physicians are…. AstraZeneca expects that there will be a relatively limited number of Florida physicians who have the experience and credentials in the relevant fields and the intangible qualities to be appropriate testifying experts in the courtroom.

Motion at 11.[7]  Thus, yet another reason why Florida's physician-patient privilege law does not preclude AstraZeneca's efforts in this MDL to develop Florida physicians as defense experts in non-patient cases is that any contrary result could lead to "hundreds or even thousands of doctors" in the state being "disqualified as potential defense experts."  *Id.* at 10.  Hence, Magistrate Judge Baker correctly rejected any categorical "prohibition" on AstraZeneca's "contacting and retaining physicians" as experts in non-patient cases, because it "has the potential to deprive AstraZeneca of a fair opportunity to present its defense in cases to be tried in Florida."  Order at 6.[8]

In short, the Order does not hinge on whether the number of affected Florida physicians implicated by AstraZeneca's Motion is 5, 10, 100, 1000, or "3,140" (Appeal at 2) and, thus,

---

[7] In fact, it may be likely that the Florida doctors with the most expertise in Seroquel-related issues will be those who have the most clinical experience in prescribing Seroquel to many patients, some of whom might be plaintiffs in this litigation.

[8] Indeed, plaintiffs' desired result would not only threaten to undermine AstraZeneca's ability to mount its defense in products-liability cases in which expert testimony plays such an important role, but also to violate AstraZeneca's due-process and fair-trial rights, which include a meaningful opportunity to call witnesses and present evidence.  *Hamdi v. Rumsfeld*, 542 U.S. 597, 601 (2004); *see also Keller Indus. v. Volk*, 657 So. 2d 1200, 1202-03 (Fla. App. 1995).

plaintiffs' Appeal fails for this reason as well.  *See Nord v. United States Steel Corp.*, 758 F.2d 1462, 1467-68 (11th Cir. 1985) (factual findings that are "technical," "unimportant," or not "critical" to a decision cannot justify reversal).

## V.    CONCLUSION

For the foregoing reasons, this Court should overrule plaintiffs' Appeal and affirm Magistrate Judge Baker's Order dated March 21, 2008.

DATED:  April 15, 2008                         Respectfully submitted,

                                                         */s/ Stephen J. McConnell*
                                                         Stephen J. McConnell
                                                         DECHERT LLP
                                                         2929 Arch Street
                                                         Philadelphia, PA  19103
                                                         Telephone: (215) 994-4000
                                                         Facsimile: (215) 994-2222
                                                         stephen.mcconnell@dechert.com

                                                         Steven B. Weisburd
                                                         Molly Stephens
                                                         DECHERT LLP
                                                         300 West 6th Street, Suite 1850
                                                         Austin, TX  78701
                                                         Telephone: (512) 394-3000
                                                         Facsimile: (512) 394-3001

                                                         *Counsel for AstraZeneca Pharmaceuticals LP*
                                                         *and AstraZeneca LP*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on April 15, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system through which all participating parties are deemed served.  I further certify that, by using the CM/ECF, the foregoing has been served on Plaintiffs' liaison counsel, who is charged with serving any non-CM/ECF participants on the attached Service List.

*/s/ Eliot J. Walker*

## SERVICE LIST

### In Re: Seroquel Products Liability Litigation
### MDL Docket No. 1769

| | |
|---|---|
| Paul J. Pennock, Esq.<br>Michael E. Pederson, Esq.<br>Weitz & Luxenberg, P.C.<br>180 Maiden Lane - 17th Floor<br>New York, NY 10038<br>Telephone: (212) 558-5500<br>Ppennock@weitzlux.com<br>MPederson@weitzlux.com<br>***Plaintiffs' Lead Counsel*** | Camp Bailey, Esq.<br>Michael W. Perrin, Esq.<br>Fletcher Trammell, Esq.<br>Bailey Perrin Bailey LLP<br>The Lyric Centre<br>440 Louisiana, Suite 2100<br>Houston, TX 77002<br>Telephone: (713) 425-7240<br>cbailey@bpblaw.com<br>mperrin@bpblaw.com<br>***Plaintiffs' Lead Counsel*** |
| Larry Roth, Esq.<br>Law Offices of Larry M. Roth, P.A.<br>Post Office Box 547637<br>Orlando, FL 32854-7637<br>Telephone: (407) 872-2239<br>LROTH@roth-law.com<br>***Plaintiffs' Liaison Counsel*** | Tommy Fibich, Esq.<br>Fibich, Hampton & Leebron, L.L.P.<br>1401 McKinney, Suite 1800<br>Five Houston Center<br>Houston, TX 77010<br>Telephone: (713) 751-0025<br>tfibich@fhl-law.com |
| Matthew F. Pawa, Esq.<br>Law Offices of Matthew F. Pawa, P.C.<br>1280 Centre St., Suite 230<br>Newton Centre, MA 02459<br>Telephone: (617) 641-9550<br>Mp@pawalaw.com | Robert L. Salim, Esq.<br>Robert L. Salim Attorney at Law<br>P.O. Box 2069<br>Natchitoches, LA 71457-2069<br>Telephone: (318) 352-5999<br>robertsalim@cp-tel.net |
| Keith M. Jensen, Esq.<br>Jensen, Belew & Gonzalez, PLLC<br>1024 North Main<br>Fort Worth, TX 76106<br>Telephone: (817) 334-0762<br>kj@kjensenlaw.com | Scott Allen, Esq.<br>Cruse, Scott, Henderson & Allen, L.L.P.<br>2777 Allen Parkway, 7th Floor<br>Houston, Texas 77019<br>Telephone: (713) 650-6600<br>sallen@crusescott.com |
| Matthew E. Lundy, Esq.<br>Lundy & Davis, LLP<br>333 North Sam Houston Parkway East<br>Suite 375<br>Houston, TX 77060<br>Telephone: (281) 272-0797<br>mlundy@lundydavis.com | E. Ashley Cranford<br>Whatley Drake & Callas<br>2001 Park Place North, Suite 1000<br>Birmingham, AL 35203<br>Telephone: (205) 328-9576<br>ACranford@wdklaw.com |

| | |
|---|---|
| Robert L. Ciotti, Esq.<br>Carlton Fields, P.A.<br>4221 W. Boy Scout Boulevard<br>Suite 1000<br>Tampa, FL 33607-5736<br>Telephone: (813) 223-7000<br>rciotti@carltonfields.com<br>**Attorney for Defendants AstraZeneca**<br>**Pharmaceuticals, LP, and AstraZeneca LP** | Gregory P. Forney, Esq.<br>Shaffer Lombardo Shurin<br>911 Main Street, Suite 2000<br>Kansas City, MO 64105<br>Telephone: (816) 931-0500<br>gforney@sls-law.com<br>rbish@sls-law.com<br>**Attorney for Defendant,**<br>**Marguerite Devon French** |
| Randy Niemeyer<br>22442 Pike 309<br>Bowling Green, MO 63334-5209<br>**Pro Se** | Eric B. Milliken, Esq.<br>3 Sir Barton Ct.<br>Newark, DE 19702<br>**Pro Se** |
| Catherine Solomon<br>3100 N.E. 83<br>Gladstone, MO 64119<br>**Pro Se** | Louisiana Wholesale Drug Co. Inc.<br>C/O Gayle R. White<br>Registered Agent<br>Highway 167N<br>Sunset, LA 70584<br>**Pro Se** |
| Aaron C. Johnson, Esq.<br>Summers & Johnson<br>717 Thomas<br>Weston, MO 64098<br>Telephone: (816) 640-9940<br>firm@summersandjohnson.com | Robert A. Schwartz, Esq.<br>Bailey & Galyen<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744<br>bschwartz@galyen.com |
| Todd S. Hageman, Esq.<br>Simon and Passanante, PC<br>701 Market St., Suite 1450<br>St. Louis, MO 63101<br>Telephone: (314) 241-2929<br>thageman@spstl-law.com | Mark P. Robinson, Jr., Esq.<br>Robinson, Calcagnie & Robinson<br>620 Newport Center Drive, 7th Floor<br>Newport Beach, CA 92660<br>Telephone: (949) 720-1288<br>mrobinson@robinson-pilaw.com |
| Thomas F. Campion, Esq.<br>Steven M. Selna, Esq.<br>Drinker Biddle & Reath, LLP<br>500 Campus Drive<br>Florham Park, New Jersey 07932-1047<br>Telephone: (973) 360-1100<br>Thomas.Campion@dbr.com<br>steven.selna@dbr.com<br>**Attorneys for Defendants Janssen**<br>**Pharmaceutical Products and Johnson &**<br>**Johnson Co.** | Michael Davis, Esq.<br>James Mizgala, Esq.<br>Sidley Austin LLP<br>One South Dearborn<br>Chicago, IL 60603<br>Telephone: (312) 853-7731<br>mdavis@sidley.com<br>jmizgala@sidley.com<br>**Attorneys for Defendants AstraZeneca LP**<br>**and AstraZeneca Pharmaceuticals, LP** |

| | |
|---|---|
| Elizabeth Raines, Esq.<br>Baker, Sterchi, Cowden & Rice, LLC<br>2400 Pershing Road, Suite 500<br>Kansas City, MO 64108<br>Telephone: (816) 471-2121<br>raines@bscr-law.com | Timothy Reese Balducci, Esq.<br>The Langston Law Firm, PA<br>P.O. Box 787<br>100 South Main Street<br>Booneville, MS 38829-0787<br>Telephone: (662) 728-3138<br>tbalducci@langstonlaw.com |
| Kenneth W. Bean, Esq.<br>Sandberg, Phoenix & von Gontard<br>One City Centre<br>15th Floor<br>St. Louis, MO 63101-1880<br>Telephone: (314) 231-3332<br>kbean@spvg.com<br>***Attorney for Defendant Dr. Asif Habib*** | John Driscoll, Esq.<br>Brown & Crouppen, PC<br>720 Olive St.<br>St. Louis, MO 63101<br>Telephone: (314) 421-0216<br>Jdriscoll@brownandcrouppen.com<br>asmith@brownandcrouppen.com<br>blape@brownandcrouppen.com |
| Aaron K. Dickey, Esq.<br>Goldenberg and Heller, PC<br>P.O. Box 959<br>2227 S. State Road 157<br>Edwardsville, IL 62025<br>Telephone: (618) 650-7107<br>aaron@ghalaw.com | Matthew J. Hamilton, Esq.<br>Pepper Hamilton<br>3000 Two Logan Square<br>18th & Arch Street<br>Philadelphia, PA 19103<br>Telephone: (215) 981-4000<br>hamiltonm@pepperlaw.com |
| Justin Witkin, Esq.<br>Ken Smith, Esq.<br>Aylstock, Witkin & Sasser, PLC<br>4400 Bayou Boulevard<br>Suite 58<br>Pensacola, FL 32503<br>Telephone: (850) 916-7450<br>Jwitkin@AWS-LAW.com<br>ablankenship@aws-law.com<br>ksmith@aws-law.com<br>noverholtz@aws-law.com | David P. Matthews, Esq.<br>Lizy Santiago, Esq.<br>Matthews & Associates<br>2905 Sackett Street<br>Houston, TX 77098<br>Telephone: (713) 222-8080<br>dmatthews@thematthewslawfirm.com<br>lsantiago@thematthewslawfirm.com<br>msalazar@thematthewslawfirm.com |
| Howard Nations<br>Lori A. Siler<br>Howard L. Nations Attorney At Law<br>4515 Yoakum Blvd.<br>Houston, TX 77006-5895<br>Telephone: (713) 807-8400<br>nations@howardnations.com | Mary B. Cotton<br>John D. Giddens, P.A.<br>226 North President Street<br>P.O. Box 22546<br>Jackson, MS 39225-2546<br>Telephone:  (601) 355-2022<br>betsy@law-inc.com |
| Salvatore M. Machi<br>Ted Machi & Associates PC<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744 | Jona R. Hefner, Esq.<br>3441 W. Memorial, Suite 4<br>Oklahoma City, OK 73134-7000<br>Telephone: (405) 286-3000<br>attorneyokc@hotmail.com |

| | |
|---|---|
| David Dickens<br>Miller & Associates<br>105 North Alfred Street<br>Alexandria, VA  22314-3010<br>(703) 519-8080<br>ddickens@doctoratlaw.com | Pete Schneider, Esq.<br>Grady, Schneider & Newman, L.L.P.<br>801 Congress, 4th Floor<br>Houston, TX  77002<br>(713) 228-2200<br>pschneider@gsnlaw.com |
| Fred T. Magaziner<br>Marjorie Shiekman<br>A. Elizabeth Balakhani<br>Shane T. Prince<br>Eben S. Flaster<br>DECHERT LLP<br>Cira Centre<br>2929 Arch Street<br>Philadelphia, PA  19103<br>(215) 994-4000<br>fred.magaziner@dechert.com<br>shane.prince@dechert.com<br>marjorie.shiekman@dechert.com<br>eben.flaster@dechert.com<br>elizabeth.balakhani@dechert.com | Lawrence J. Gornick, Esq.<br>William A. Levin, Esq.<br>Dennis J. Canty, Esq.<br>Levin Simes Kaiser & Gornick LLP<br>44 Montgomery Street, 36th Floor<br>San Francisco, CA 94104<br>Telephone: (415) 646-7160<br>lgornick@lskg-law.com<br>dcanty@lskg-law.com<br>lsimes@levins-law.com<br>jkaiser@lskg-law.com<br>echarley@lskg-law.com<br>ddecarli@lskg-law.com<br>bsund@lskg-law.com<br>astavrakaras@lskg-law.com |
| Scott Burdine, Esq.<br>Hagans Burdine Montgomery<br>Rustay & Winchester, P.C.<br>3200 Travis, Fourth Floor<br>Houston, TX  77006<br>Telephone:  (713) 222-2700<br>sburdine@hagans-law.com | Lowell Finson<br>Phillips & Associates<br>3030 North 3rd Street<br>Suite 1100<br>Phoenix, AZ 85012<br>(602) 258-8900, ext. 295<br>lowellf@phillipslaw.ws |
| Gale D. Pearson<br>Stephen J. Randall<br>Pearson, Randall & Schumacher, P.A.<br>Fifth Street Towers, Suite 1025<br>100 South 5th Street<br>Minneapolis, MN 55402<br>(612) 767-7500<br>attorneys@outtech.com | Robert H. Shultz<br>Heyl, Royster<br>103 West Vandalia Street<br>P.O. Box 467<br>Edwardsville, IL 62025<br>(618) 656-4646<br>rshultz@hrva.com<br>bwallace@hrva.com |
| Ellen R. Serbin<br>Perona, Langer, Beck, Lalande & Serbin<br>300 San Antonio Drive<br>Long Beach, CA 90807-0948<br>(562) 426-6155<br>davidhwang@plblaw.com | Scott Armstrong<br>1719 West Main Street<br>Suite 201<br>Rapid City, SD 57702<br>(605) 399-3994<br>scottarmstrong1235@eathlink.net |

| | |
|---|---|
| Linda S. Svitak<br>Faegre & Benson, LLP<br>90 South 7th Street, Suite 2200<br>Minneapolis, MN 55402-3901<br>(612)766-7000<br>lsvitak@faegre.com<br>wjohnson@faegre.com | James J. Freebery<br>McCarter & English, LLP<br>919 N. Market Street, 18th Floor<br>Wilmington, DE 19801<br>(973) 622-4444<br>jfreebery@mccarter.com<br>tpearson@mccarter.com |
| Richard D. Hailey<br>Ramey & Hailey<br>3891 Eagle Creek Parkway<br>Suite C<br>Indianapolis, IN<br>(317) 299-0400<br>rhailey@sprynet.com | B. Andrew List<br>Clark, Perdue, Arnold & Scott<br>471 East Broad Street, Suite 1400<br>Columbus, OH 43215<br>(614) 469-1400<br>alist@cpaslaw.com<br>lcollins@cpaslaw.com |