UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

SUSAN ZEHEL-MILLER, as next friend,
Parent and guardian to Vallent Zehel,
a minor; REBAJEAN SIMMONS;
KERRY DIXON; and THERESA HOLSTED;
individually and on behalf of those
similarly situated,

                Plaintiffs,

v.

ASTRAZENACA PLC;
ASTRAZENACA PHARMACEUTICALS, LP,

                Defendants.

Case No: 6-03-CV-1258-ORL-18

JURY TRIAL REQUESTED
CLASS ACTION COMPLAINT

## CLASS ACTION COMPLAINT

Plaintiff, on behalf of himself and all others similarly situated, allege as follows:

## I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 (diversity) in that the state of citizenship of Plaintiffs is different from the state of citizenship of the Defendants, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

2. Plaintiffs allege an amount in controversy in excess of $75,000.00 exclusive of interest and costs, as to himself and each member of the proposed Class. In addition, the Class has an undivided interest in obtaining injunctive and equitable relief including the establishment of a medical monitoring program which exceeds $75,000.00 in value.

3. Venue is properly set in the Middle District of Florida as Plaintiff Susan Zehel-Miller resides and is domiciled in Orlando, Florida, which is in the Middle District of Florida.

-1-

## II. **PARTIES**

4.   Plaintiff, Susan Zehel-Miller, as next friend, parent and guardian of Vallent Zehel, a minor, is a resident of Florida.  Vallent Zehel was prescribed, purchased and ingested Seroquel. The minor's physician prescribed Seroquel to assist in sleeping problems, after sales representatives encouraged this off-label use in children.  After using Seroquel, Plaintiff suffered from rapid weight gain, increased thirst, frequent urination, and other symptoms commonly associated with the onset of diabetes.

5.   Plaintiff, Rebajean Simmons is a resident of Pennsylvania.  Plaintiff was prescribed, purchased and ingested Seroquel  and continues to ingest Seroquel today. After using Seroquel, Plaintiff suffered from rapid weight gain, increased thirst, frequent urination, and other symptoms commonly associated with the onset of diabetes.

6.   Plaintiff, Kerry Dixon, is a resident of Michigan.  Plaintiff was prescribed, purchased and ingested Seroquel and is currently on the medication. After using Seroquel, Plaintiff suffered from rapid weight gain, increased thirst, frequent urination, and other symptoms commonly associated with the onset of diabetes.

7.   Plaintiff, Theresa Holsted, is a resident of Washington.  Ms. Holsted was prescribed, purchased and ingested Seroquel.  After using Seroquel, Ms. Holsted suffered from rapid weight gain, increased thirst, frequent urination, and other symptoms commonly associated with the onset of diabetes.  While using Seroquel, Ms. Holsted was diagnosed with diabetes.  Because of her diabetes, Ms. Holsted is at an increased risk of serious diabetic complications, including but not limited to ketoacidosis, pancreaitis, coma, seizures, blindness, heart disease, and death. Because of his diabetes, Ms. Holsted will require regular medical monitoring, and medical treatment and care.

-2-

8.   Made Defendants herein are

    (i)    **AstraZenaca, PLC**, a foreign (Sweden) corporation which does business in the State of Florida by distributing, marketing, selling and/or profiting from Seroquel in the State of Florida and the United States. AstraZenaca PLC was formed in 1999 as a result of the merger between Zenaca Group PLC and Astra AB.  In 1997, Zenaca's US Subsidiary, Zenaca Pharmaceuticals had launced Seroquel to the U.S. Market.  AstraZenaca PLC's principal headquarters are in London, (UK).

    (ii)    **AstraZenaca Pharmaceuticals LP,**, a foreign (Delaware) corporation which does business in the State of Florida by distributing, marketing, selling and/or profiting from Seroquel in the State of Florida and the United States.  AstraZenaca Pharmaceuticals LP, is the U.S. Subsidiary of AstraZenaca PLC, and was created as a result of the union of Zenaca Pharmaceuticals and Astra Pharmaceuticals LP in the U.S after the 1999 merger.  AstraZenaca Pharmaceuticals LP's principal place of business is in Deleware.

9.   At all times material hereto, AstraZenaca, PLC and AstraZenaca Pharmaceuticals LP (a wholly owned subsidiary of AstraZenacaPLC.) (collectively referred to as "AstraZenaca" or "Manufacturing Defendants" have shared many of the same officers and directors and have had a unity of interest in ownership sufficient to make them indistinguishable.

### III. <u>FACTS</u>

10.   On August 22, 2003, Seroquel was associated with reports of an unacceptable number of instances of diabetes associated with the ingestion of the drug.

11.   AstraZenaca obtained, licensed, manufactured, promoted, marketed, developed

and placed in the stream of commerce the pharmaceutical "quetiapine fumarate" which was sold in the United States under the trade name "Seroquel."

12.     The prescription drug "Seroquel" (quetiapine fumarate) is an "anti-psychotic" medication, belonging to a class of drugs referred to as "atypical anti-psychotics." (Other atypicals include Zyprexa (Eli Lilly), Risperdal (Johnson & Johnson), and Abilify (Bristol-Myers Squibb), which have been in use in the United States since the early to mid 1990's.)

13.     Seroquel causes serious and sometimes fatal injuries to the liver, kidneys, and pancreas. Its adverse effects have included ketoacidosis, pancreatitis, and diabetes mellitus, and other serious health problems associated with the onset of diabetes including heart disease, blindness, coma, seizures, and death.

14.     In June, 1997, the Food and Drug Administration ("FDA") approved the newest atypical anti-psychotic, Seroquel, for use in the United States. At that time, Seroquel was approved for use in dosages of  50mg, 100mg,  or 200 mg.

15.     From at least 1997 through today , the Pharmaceutical Defendants individually and collectively manufactured, labeled, packaged, distributed, supplied, marketed, advertised, dispensed and sold, and by said activities, caused Seroquel to be placed into the stream of commerce throughout the United States, including the State of Florida, and to ultimately reach the Plaintiff for consumption.

16.     At all times material hereto, the Pharmaceutical Defendants, individually and/or collectively, did manufacture, create, design, test, label, sterilize, package, distribute, supply, market, sell, advertise, warn, and/or otherwise caused the product Seroquel to be placed into the stream of commerce, and ultimately to be ingested by the Plaintiff.

17.   Seroquel had been widely advertised, marketed and represented by the Pharmaceutical

Defendants as a safe and effective atypical anti-psychotic.

18.   The product warnings for Seroquel in effect during the relevant time period were vague, incomplete or otherwise wholly inadequate, both substantively and graphically, to alert prescribing physicians as well as consumer patients of the actual risks associated with this drug.

19.   Seroquel, also known as quetiapine fumarate, is a medication commonly prescribed to patients to aid in the treatment of depression. The pharmacologic action of Seroquel is thought to be dependent on its ability to block or moderate the level of dopamine, a chemical found in the brain that in excessive amounts is believed to cause abnormal thinking and hallucinations.  It appears to work primarily by blocking neurotransmitter sites of serotonin and dopamine, as well as muscarinic and alpha-adrenergic, and histamine receptors.

20.      Seroquel comes in 4 strengths: 25 mg, 100 mg, 150mg, and 200 mg. The total daily dose for the first four days of therapy is 50 mg (Day 1), 100 mg (Day 2), 200 mg (Day 3) and 300 mg (Day 4). From Day 4 onwards, the dose should be titrated to an effective dose in the range of 300-450 mg/day or less.  The anti-psychotic drug market is enormous. Defendant viewed Seroquel as a blockbuster product with significant projected growth potential. In 2002 alone, Seroquel reached over $1.2 Billion in sales. Seroquel has been associated with diabetes mellitus, and the serious complications stemming therefrom including seizures, coma, death, liver disease, kidney disease, blindness, and other serious side effects including rapid weight gain, pancreatitis, increased thirst, and hypoglycaemia.

21.   The risk associated with Seroquel and diabetes is nearly 3.34 times higher than older drugs used to treat schizophrenia, such as Haldol.  Compared to other atypical antipsychotics (Zyprexa, Eli Lilly & Co. – 1.27 times more likely, and Risperdal (Johnson & Johnson- 1.49 times more likely), Seroquel has a much greater increased association with the onset of diabetes

mellitus than any other anti-psychotic on the market.

22.   Seroquel was marketed heavily by the Defendants as safe and effective treatment for the treatment of schizophrenia, promising fewer side effects than other similar treatments including the other atypical antipsychotics on the market.

23.   AstraZenca, through its marketing department, its sales managers, and field sales force promoted the drug for uses beyond its approved indications, offering incentives to doctors to increase prescriptions.  Through these marketing efforts, AstraZenaca was able to capture a larger market share in the anti-psychotic market.

24.   These marketing efforts were designed and implemented to create the impression in physicians' minds that Seroquel was safe and effective for their patients, and that it carried less risk of side effects and adverse reactions than other available treatments.

25.   The marketing and promotion efforts of AstraZenaca, its advertisers, and sales force served to overstate the benefits of Seroquel, and minimize and downplay the risks associated with the drug.  These promotional efforts were made, while fraudulently withholding important safety information from the physicians, the FDA, and the public, specifically that AstraZenaca was aware of numerous reports of diabetes associated with the use of Seroquel, well beyond the background rate, and well beyond the rate for other anti-psychotic agents.

26.   In August 2003, new reports were issued which confirmed previous studies describing a link between the class of atypical antipsychotics and diabetes.  These new reports, described an increased incidence of diabetes in patients receiving Seroquel, than patients receiving older anti-psychotics, or even other atypicals, including Zyprexa, Clozaril, and Risperdal.

27.   Clozaril (clozapine) was the first atypical introduced in the early 1990's.  Risperdol, (risperidone), was approved for use in the United States in 1994. In September 1996 the Food

and Drug Administration (FDA) approved another new atypical antipsychotic, Zyprexa (olanzapine), for use in schizophrenia, and Seroquel (quetiapine) was approved in September 1997.

28.    These look-a-like, copycat drugs are nothing new in the pharmaceutical industry, as major manufacturers, who have poured so much money into marketing, and away from research are forced to introduce copycat drugs to the market rapidly, to avoid losing market share to their competitors.  The copycat drugs are often accompanied by promises of better efficacy and less side effects, but typically, they are approved without the requirements of significant testing, riding the coat tails of drugs already on the market.

29.    The Japanese label for Seroquel provides a detailed warning regarding the risks of diabetes associated with Seroquel, and specifically informs physicians regarding the necessity of medical monitoring of patients on Seroquel.  The manufacturer has not adopted this safer, more accurate, label for the U.S. distribution of Seroquel.

30.    Upon information and belief, the Japanese label warns specifically of the diabetes risk, prominently in the beginning of the package label stating:

- *Quetiapine is contraindicated for use in patients with diabetes or a history of diabetes.*

- *Quetiapine should be used with caution in patients with risk factors for diabetes, including hyperglycemia, obesity or a family history of diabetes.*

- *Patients receiving quetiapine should be carefully monitored for symptoms of hyperglycemia and the drug should be discontinued if such symptoms occur. The symptoms of severe hyperglycemia include weakness, excessive eating, excessive thirst, and excessive urination.*

- *Physicians should educate patients and their family members about the risk of serious*

*hyperglycemia associated with the quetiapine and how to identify the symptoms of hyperglycemia*

31.    In regulatory action overseas, the Ministry of Health, Labor, and Welfare in Japan has ordered a Dear Doctor warning for AstraZeneca's quetiapine (Seroquel) after the ministry received 13 reports of serious side effects, including one death, since the drug's launch in that country in February 2001. Case reports involved elevated levels of blood glucose, diabetic ketoacidosis, and coma.

32.    Japanese researchers report that severe weight gain can be a serious side effect of combination therapy involving atypical antipsychotics and certain SSRIs. In particular, in a retrospective chart review, they identified the combination of risperidone and paroxetine as associated with severe weight gain—as much as 14 kg over four months in one patient—that also resulted in diabetic complications. The authors speculate that the cause is a drug-drug interaction involving inhibitory actions by both drugs on the cytochrome P450 enzyme, CYP2D6.

33.    While warning of the association of Seroquel with diabetes, increased glucose tolerance, ketoacidosis, weight gain, and the need for medical monitoring in Japan, AstraZenaca has left the US public and physicians in the dark.

## IV.  CLASS ACTION ALLEGATIONS

34.    Plaintiffs bring this class action pursuant to Federal Rules of Civil Procedure Rule 23 on behalf of a Class consisting of all persons in the United States who purchased and/or used Seroquel.

35.    Also included in the Class are any other persons asserting the right to sue the Defendants independently or derivatively by reason of their personal relationship with persons who used Seroquel, including without limitation, spouses, parents, children, dependents, other

relatives or "significant others" ("derivative claimants").

36.      Excluded from the Class are the Defendants, including any parent, subsidiary, affiliate or controlled person of the Defendants and their officers, directors, agents or employees and members of their immediate families. Also excluded from the Class are the judicial officers presiding over the litigation and members of their immediate family.

37.      Plaintiffs are members of the Class they seek to represent. The members of the Class are so numerous that joinder is impracticable and would involve thousands of individual actions.

38.      There are questions of law and fact common to the Class including, but not limited to:

   a.   Whether Defendants designed, manufactured and/or marketed Seroquel with knowledge that it was a dangerously defective product;

   b.   Whether Defendants acted negligently in marketing and selling Seroquel;

   c.   Whether Defendants conducted, either directly or indirectly, adequate testing of Seroquel;

   d.   Whether Defendants failed to adequately warn consumers of the adverse health hazards caused by using Seroquel;

   e.   Whether Defendants falsely and fraudulently misrepresented in their advertisements, promotional materials and other materials, among other things, the safety of using Seroquel; and

   f.   Whether Defendants knowingly omitted, suppressed or concealed material facts about the unsafe and defective nature of Seroquel from governmental regulators, the medical community and/or the consuming public;

g. Whether Defendants' conduct constituted an unfair, deceptive and/or unconscionable trade practice;

h. Whether Defendants' conduct constituted the knowing or intentional concealment, suppression or omission of material information intended to be relied upon by others in connection with the sale of Seroquel;

i. Whether Defendants' actions support a cause of action for medical monitoring;

j. Whether medical monitoring of Plaintiffs and the proposed Class who used Seroquel is reasonably necessary;

k. Whether Defendants have violated Consumer Protection Statutes and/or Deceptive and Unfair Trade Practices Act, including Florida's Deceptive and Unfair Trade Praactice Act ("FDUTPA").

l. Whether the class is entitled to a return of the purchase price of Seroquel or other such relief.

39. The claims of the named Plaintiffs are typical of the claims of the Class in that the named Plaintiffs and the members of the Class used Seroquel designed, manufactured, supplied, distributed, sold and or placed in the stream of interstate commerce by Defendants, and did suffer or may suffer harm as a result.

40. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Plaintiffs have retained counsel competent and experienced in complex class actions and products liability litigation. Plaintiffs have no known interests which are adverse to the interests of the other members of the Class.

41. Class certification is also appropriate pursuant to Fed.R.Civ.P. 23(b)(2) because

-10-

Defendants have acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiffs and the Class members.  Specifically, Plaintiffs seek injunctive relief in the form of court ordered medical monitoring, revised drug warnings to assist Plaintiffs and the Class members in the detection and treatment of medical conditions which may befall consumer patients who used Seroquel, and an emergency notice to the Class regarding the dangers of Seroquel.

42.    Class certification is appropriate under Fed.R.Civ.P. Rule 23(b)(3) because common issues of law and fact relative to the design, manufacture and marketing of Seroquel predominate over individual issues.  A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual joinder of all members of the Class is impracticable.

43.    A class action is superior to any other available method for the fair and efficient adjudication of this dispute because common questions of law and fact overwhelming predominate any questions that may affect only individual Class members, and there would be enormous economies to the courts and the parties in litigating the common issues on a classwide instead of repetitive individual basis.  A class action approach would serve to consolidate and create a scenario with far fewer management difficulties because it provides the benefits of unity adjudication, judicial economy, economies of scale and comprehensive supervision by a single court.  Any person who has been seriously injured and wishes to pursue an individual action outside the remedy sought in this complaint will have the opportunity to opt out.

44.    Class certification is appropriate under 23(c)(4) because particular classes or issues, including the common issues identified above, would be best adjudicated on a classwide basis, even were the court to determine that issues of Class members' injuries and compensatory

damages should be adjudicated individually.

## COUNT I

## NEGLIGENCE

45.   Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

46.   The Defendants are the designers, manufacturers, sellers, and suppliers of the drug Seroquel.

47.     When placed in the stream of commerce, Seroquel was not accompanied by any meaningful warnings regarding the significant risk of diabetes mellitus and other problems associated with the ingestion of Seroquel.  The warnings given by the Defendants did not accurately reflect the existence of the risk, let alone the incidence, symptoms, scope, or severity of such injuries.

48.     Defendants failed to perform adequate testing concerning the safety of the drug Seroquel in that adequate testing would have shown that Seroquel poses a serious risk of diabetes mellitus and other problems which would have permitted adequate and appropriate warnings to have been given by Defendants to prescribing physicians and the consuming public.

49.     Defendants failed to effectively warn users and physicians that numerous other anti-psychotic medications, including other atypicals, should be the first or exclusive method of reducing this disease, particularly for certain high risk individuals.

50.     Defendants had a duty to exercise reasonable care in the design, manufacture, sale, and distribution of the drug Seroquel, including a duty to assure that the product did not cause users to suffer from unreasonable, dangerous side effects when used alone or in foreseeable combination with other drugs.

51.     Defendants were negligent in the design, manufacturing, testing, advertising, marketing, promotion, labeling, warnings given, and sale of Seroquel in that, among other things, they:

(a)     Failed to accompany the product with proper warnings regarding all possible adverse side effects associated with the use of Seroquel;

(b)     Failed to conduct adequate pre-clinical and clinical testing and post-marketing surveillance to determine the safety of the drug Seroquel;

(c)     Failed to provide adequate training and instruction to medical care providers for appropriate use of the drug Seroquel;

(d)     Failed to warn Plaintiffs and the Class, prior to actively encouraging the sale of Seroquel, either directly or indirectly, orally or in writing, about the following:  1) the need for a battery of diagnostic tests to be performed on the patient prior to ingesting Seroquel to discover and ensure against potentially fatal side effects; or 2) the need for comprehensive, regular medical monitoring to ensure early discovery of potentially fatal side effects;

(e)     Failed to warn that the risks associated with the ingestion of Seroquel exceeded the risks of other comparable forms of medication for schizophrania;

(f)     Failed to effectively warn about the increased danger and potentially fatal relationship in combining use of Seroquel with various other drugs or use with certain identifiable disorders;

(g)     Negligently marketed Seroquel despite the fact that the risks of the drug were so high and the benefits of the drug were so speculative that no

reasonable pharmaceutical company, exercising due care, would have done so;

(h)     Recklessly, falsely, and deceptively represented or knowingly omitted, suppressed, or concealed material facts regarding the safety and efficacy of Seroquel from prescribing physicians and the consuming public, and that had prescribing physicians and the consuming public known of such facts, the drug Seroquel would never have been prescribed to, or used by, Plaintiff or members of the Class;

(i) Remained silent despite their knowledge of the growing public acceptance of misinformation and misrepresentations regarding both the safety and efficacy of the ingestion of Seroquel, and did so because the prospect of huge profits outweighed health and safety issues, all to the significant detriment of Plaintiff and the Class;

(j) Failed to perform their post-manufacturing and continuing duty to warn which arose when they knew, or with reasonable certainty should have known, that their drug was being prescribed in a fatal or injurious combination or manner; and

(k)     Was otherwise careless, negligent, grossly negligent, reckless, and acted with willful and wanton disregard for the rights of Plaintiff and the Class.

52.   Despite the fact that the Defendants knew or should have known that Seroquel caused unreasonable, dangerous side effects which many users would be unable to remedy by any means, the Defendants continued to market Seroquel to consumers, including Plaintiff and the Class, when there were safer alternative methods of treating schizophrenia.

53.   Defendants knew or should have known that consumers such as Plaintiff and the Class

would foreseeably suffer injury as a result of the Defendants' failure to exercise ordinary care as described above.

54. Defendants' actions as described herein constitute knowing omissions, suppression, or concealment of material facts, made with the intent that others rely upon such concealment, suppression, or omissions in connection with the marketing of Seroquel.

55. As the direct and proximate cause and legal result of the Defendants' failure to supply appropriate warnings for the drug Seroquel, and as a direct and legal result of the negligence, carelessness, other wrongdoing and actions of Defendants described herein, the Plaintiff and the Class ingested Seroquel and suffered a significantly increased risk of medical conditions for which medical monitoring, in the form requested herein, is necessary, appropriate, and beneficial.

56. Defendants' negligence was a proximate cause of the increased risk of harm suffered by the Seroquel recipient Plaintiff and the Class as previously set forth herein.

57. As a direct and proximate cause and legal result of the Defendants' negligence, carelessness, and the other wrongdoing and actions of the Defendants as described herein, the Derivative Claimants have suffered a loss of consortium, services, love and affection, and have incurred financial expenses and have suffered economic losses.

## COUNT II

### FRAUD

58. Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

59. Defendants either knew or should have known that Seroquel was dangerous and not as effective for its purpose as represented, and posed greater risks than disclosed, and otherwise not as represented to be as alleged above.

60.   Defendants were under a duty to disclose this information to the Plaintiff and the Class under the common law as well as laws requiring it not to engage in false and deceptive trade practices, and as otherwise alleged in this complaint, because Defendants made representations and partial disclosures concerning the nature and quality of their product which they had a duty to correct, because Defendants were in a superior position to know the true state of the facts about the dangerous and defective nature of Seroquel and its known risks to the Plaintiffs and the Class.  These deliberate and/or intentional omissions of material facts and misrepresentations include but are not limited to:

      a.   suppressing, failing to disclose and mischaracterizing the known risks of ingesting Seroquel;

      b.   omitting material information showing that Seroquel was no more effective than other anti-psychotic drugs on the market available;

      c.   failure to timely and fully disclose the actual results of clinical tests and studies related to Seroquel;

      d.   failing to issue adequate warnings concerning the risks and dangers of ingesting Seroquel which would disclose the nature and extent of the side effects of Seroquel;

      e.   failing to disclose that adequate and/or standard and/or generally accepted standards for pre-clinical and clinical testing had not been done;

      f.   failing to disclose that adequate and/or standard and/or generally accepted standards for post-marketing testing had not been done;

      g.   making the representations concerning the safety, efficacy and benefits of Seroquel as detailed in this complaint without full and adequate

disclosure of the underlying facts which rendered such statements false and misleading.

61.   Plaintiffs and Class members did not know, and could not learn, the material facts and important information Defendants omitted and suppressed.  The facts and information suppressed and concealed by Defendants is material, and of such a nature that it can be reasonably presumed that the suppression and concealment of such facts caused, contributed to, and/or was a substantial factor in causing change to Plaintiffs and the Plaintiff Class.

62.   As a result of Defendants' fraud, suppression and omission of material facts, the Plaintiffs and the Class acted to their detriment in purchasing and ingesting Seroquel, which they would not have purchased or ingested had they been told the truth, and should be reimbursed what they spent.

63.   As a result of Defendants' practices, Plaintiffs and Class members have suffered actual damages in that they have purchased and ingested Seroquel which is dangerous and defective that has caused and will continue to cause Plaintiffs and Class members expenses for medical testing, health monitoring and/or treatment, which they incurred in the past and which continues.

## COUNT III

### FAILURE TO WARN

64.   Plaintiffs repeat and reallege the allegations set forth in the paragraphs above as if fully set forth herein.

65.   Defendants are manufacturers and/or sellers of Seroquel.

66.   Defendants are manufacturers and/or suppliers and/or distributors of Seroquel.

67.   The Seroquel manufactured and/or supplied by Defendants was and is unaccompanied by proper warnings regarding all possible adverse side-effects and the comparative severity and

duration of such adverse effects; the warnings given did and do not accurately reflect the severity or duration of the adverse side effects or the true potential and/or likelihood or rate of the side effects.

68.   Defendants failed to warn of material facts regarding the safety and efficacy of Seroquel, such that this drug would likely never have been approved, and no physician would have been able to prescribe this drug for use in the United States.

69.   Defendants failed to perform adequate testing in that adequate testing would have shown that Seroquel possessed serious potential side effects with respect to which full and proper warnings accurately and fully reflecting symptoms, scope and severity should have been made with respect to the use of Seroquel.

70.   The Seroquel manufactured and/or distributed and/or supplied by Defendants was defective due to inadequate post-marketing warning or instruction because, after the Defendants knew or should have known of the risk of injury from Seroquel, they failed to provide adequate warnings to physicians, users or consumers of Seroquel and continued to aggressively promote Seroquel.

71.   As the proximate cause and legal result of the defective condition of Seroquel as manufactured and/or supplied and/or distributed by Defendants, and as a direct and legal result of the negligence, carelessness, other wrongdoing and action(s) of Defendants described herein, Plaintiffs and Class members have been damaged.

## COUNT IV

## STRICT PRODUCT LIABILITY

### (Failure to Warn)

72.   Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully

set forth herein.

73.  The Seroquel manufactured and/or supplied by Defendants was and is unaccompanied by proper warnings regarding all possible adverse side-effects and the comparative severity and duration of such adverse effects; the warnings given did not and do not accurately reflect the severity or duration of the adverse side effects or the true potential and/or likelihood or rate of the side effects. Defendants failed to perform adequate testing in that adequate testing would have shown that Seroquel possessed serious potential side effects with respect to which full and proper warnings accurately and fully reflecting symptoms, scope and severity should have been made with respect to the use of Seroquel. Had the testing been adequately performed, the product would have been allowed to enter the market, if at all, only with warnings that would have clearly and completely identified the risks and dangers of the drug.

74.  The Seroquel manufactured and/or distributed and/or supplied by Defendants was defective due to inadequate post-marketing warning or instruction because Defendants failed to provide adequate warnings to users or consumers of Seroquel and continued to aggressively promote Seroquel.

75.  As the proximate cause and legal result of the defective condition of Seroquel as manufactured and/or supplied and/or distributed by Defendants, and as a direct and legal result of the negligence, carelessness, other wrongdoing and action(s) of Defendants described herein, Plaintiff and Class members have been damaged.

**COUNT V**
**STRICT PRODUCT LIABILITY**
**(Pursuant to Restatement Second of Torts 402a (1965))**

76.  Plaintiff repeats and realleges the allegations set forth in the paragraphs above as if fully set forth herein.

77.   The Seroquel manufactured and/or distributed and/or supplied by Defendants was defective in design or formulation in that, when it left the hands of the manufacturers and/or suppliers and/or distributors, the foreseeable risks exceeded the benefits associated with the design or formulation.

78.   Alternatively, the Seroquel manufactured and/or distributed and/or supplied by Defendants was defective in design or formulation in that, when it left the hands of the manufacturers and/or suppliers and/or distributors, it was unreasonably dangerous, it was more dangerous than an ordinary consumer would expect and more dangerous than other atypical anti-psychotic drugs.

79.   There existed, at all times material hereto, safer alternative medications.

80.   Defendants did not perform adequate testing on Seroquel.  Adequate testing would have shown that Seroquel caused serious adverse effects with respect to which full and proper warnings accurately and fully reflecting symptoms, scope and severity should have been made.

81.   The Seroquel manufactured, designed, marketed, distributed and/or sold by Defendants were unaccompanied by proper and adequate warnings regarding adverse effects associated with the use of Seroquel, and the severity and duration of such adverse effects; the warnings given did not accurately reflect the symptoms, scope or severity of adverse effects and did not accurately relate the lack of efficacy.

82.   Defendants did not warn the public, physicians, consumers or regulatory agencies including the FDA of material facts regarding the safety and efficacy of Seroquel, which facts defendant knew or should have known.

83.   The Seroquel manufactured and/or distributed and/or supplied by Defendants was defective due to inadequate post-marketing warning or instruction because, after the Defendants

-20-

knew or should have known of the risk of injury from Seroquel, they failed to provide adequate warnings to users or consumers of Seroquel and continued to promote Seroquel.

84.   As a result of the defective condition of Seroquel, Plaintiffs and Class members have been damaged.

## COUNT VI
## BREACH OF EXPRESS WARRANTY

85.   Plaintiffs repeat and reallege the allegations set forth in the paragraphs above as if fully set forth herein.

86.   Defendants expressly warranted that Seroquel was safe and well accepted by clinical studies.

87.   Seroquel does not conform to these express representations because Seroquel is not safe and has high levels of serious, life-threatening side effects.

88.   As a direct and proximate result of the breach of said warranties, Plaintiffs and Class members have been damaged.

## COUNT VII

## BREACH OF IMPLIED WARRANTY

89.   Plaintiffs repeat and reallege the allegations set forth in the paragraphs above as if fully set forth herein.

90.   At the time Defendants marketed, sold and distributed Seroquel for use by Plaintiff and Class members, Defendants knew of the use for which Seroquel was intended and impliedly warranted Seroquel to be of merchantable quality and safe and fit for such use.

91.   Plaintiffs and the Class members reasonably relied upon the skill and judgment of Defendants as to whether Seroquel was of merchantable quality and safe and fit for its intended use.

92.   Contrary to such implied warranty, Seroquel was not of merchantable quality or safe or fit for its intended use, because Seroquel was and is unreasonably dangerous and unfit for the ordinary purposes for which it was used as described above.

93.   As a direct and proximate result of the breach of implied warranty, Plaintiff and Class members have been damaged.

## COUNT VIII
## CONCEALMENT, SUPPRESSION, OR OMISSION OF MATERIAL FACTS

94.   Plaintiffs repeat and reallege the allegations set forth in the paragraphs above as if fully set forth herein.

95.   Defendants are manufacturers and/or distributors of Seroquel.

96.   Defendants omitted, suppressed, or concealed material facts concerning the dangers and risks associated with the use of Seroquel, including but not limited to the risks of diabetes mellitus and other injuries.  Further, Defendants purposely downplayed and understated the serious nature of the risks associated with Seroquel use in order to increase the sales of Seroquel.

97.   Defendants falsely and deceptively misrepresented or knowingly omitted, suppressed, or concealed facts of such materiality that, the drug would never have been approved and no reasonable physician would have prescribed this drug to Plaintiff and to members of the Class.

98.   Defendants knew or should have known (or would have known had appropriate testing been done) that use of Seroquel caused serious and potentially life-threatening side effects of diabetes.

99.   Defendants engaged in calculated silence despite their knowledge of the growing public acceptance of misinformation and misrepresentations regarding both the safety and efficacy of the use of Seroquel, and did so because the prospect of significant future profits caused them to ignore concerns regarding health and safety issues, all to the significant detriment of the public,

including the Plaintiff and members of the Class.

100.  Many safer and less expensive anti-psychotics were available to patients being treated with Seroquel.

101.  Defendants purposefully downplayed the side effects or provided misinformation about adverse reactions and potential harms from Seroquel, and succeeded in persuading large segments of the relevant consumer market to request, i.e., the average consumer, and large segments of the medical community to prescribe Seroquel, despite both the lack of efficacy and the presence of significant dangers, as set forth herein.

102.  Defendants had a post-manufacturing and continuing duty to warn, which arose when they knew, or with reasonable care should have known, that Seroquel was injurious or fatal.

103.  Defendants omitted, suppressed, or concealed material facts concerning the dangers and risks associated with the use of Seroquel, including but not limited to the risks of death, disease and other health problems associated with the use of Seroquel.  Defendants have purposely downplayed and/or understated the serious nature of the risks associated with the use of Seroquel and have implicitly encouraged the use of this drug despite knowledge of the dangerous side effects that this drug presents to the patient population.

104.  Defendants falsely and deceptively misrepresented or knowingly omitted, suppressed or concealed facts of such materiality regarding the safety and efficacy of Seroquel to or from the public, physicians, and the FDA such that, had the FDA known of such facts, the drug would never have been approved and no physician would have been able to or would have prescribed this drug to Plaintiff and/or to other members of the Class.

105.  The Defendants knew or should have known, and would have known had appropriate testing been done, that the use of Seroquel caused the serious and potentially life threatening side

effects of adverse health related problems or death.

106. Defendants' actions as set forth herein constitute knowing omission, suppression or concealment of material facts, made with the intent that others will rely upon such concealment, suppression or omission, in connection with the marketing of Seroquel.

107. Defendants' actions as described above evidence lack of good faith, honesty in fact and observance of fair dealing so as to constitute unconscionable commercial practices.

108. Plaintiff and members of the Class have suffered ascertainable loss -- economic losses that include the purchase price of the drug, the out-of-pocket cost of interim medical tests and services and other costs incidental to their ingestion of a harmful and defective product - - for which Defendants, jointly and severally, are liable to Plaintiffs and the members of the Class.

109. As a proximate result of consuming Seroquel, Plaintiffs and the members of the Class have been significantly exposed to toxic chemicals and thereby have suffered an increased risk of disease and/or injury, making the periodic examination of such persons both reasonable and medically necessary.

110. There currently exists a means to detect the onset of disease and/or injury, as well as the other adverse health problems caused by the use of Seroquel, at an early stage, such that subsequent treatment would have a higher chance of success at prolonging life and reducing suffering than would exist without such monitoring and treatment.

111. The prescribed monitoring regime is different from that normally recommended in the absence of the exposure to this drug, and is reasonably necessary according to contemporary scientific principles.

112. The increased susceptibility to injuries and irreparable threat to the health of Plaintiff and other Class members resulting from their exposure to this hazardous substance can only be

mitigated or redressed by the creation of a court-supervised medical monitoring fund to provide

for a medical monitoring program, that would include:

    a.  Locating persons who used Seroquel and notifying them of the potential

        harm from the use of this drug;

    b.  An epidemiological or data analysis component to detect trends of adverse

        health effects related to the Class members' use of Seroquel, including

        population-based studies of and for the benefit of the Class and the

        establishment of an adverse health effects registry;

    c.  Gathering and forwarding to treating physicians information related to the

        diagnosis and treatment of injuries that may result from the use of

        Seroquel; and

    d.  Aiding in the early diagnosis and treatment of resulting injuries through

        ongoing testing and monitoring of Seroquel users.

113. As a result of Defendants' marketing of Seroquel and Plaintiffs' consumption thereof,

Plaintiffs and members of the Class are entitled to medical monitoring services funded by

Defendants, including but not limited to, testing, preventative screening, care and treatment of

the resultant medical conditions of disease and other latent adverse health problems associated

with the use of Seroquel in addition to costs and reasonable attorneys' fees.

114. Seroquel users have no adequate remedy at law in that monetary damages alone do not

compensate for the continuing nature of the harm to them, and a monitoring program which

notifies them of possible injury and aids in their treatment can prevent the greater harms which

may not occur immediately, or for which there may be no noticeable symptoms, and which may

be treatable if proper investigation is conducted and the health risks are diagnosed and treated

before they occur or become worse.

## COUNT IX

## MEDICAL MONITORING, INJUNCTIVE AND EQUITABLE RELIEF

115.  Plaintiffs repeat and reallege the allegations set forth in the paragraphs above as if fully set forth herein.

116.  The foregoing wrongful and negligent acts, omissions and conduct by Defendants constitute actionable negligence under the common law and/or Florida law or under similar statutes in effect in other states, and/or actionable conduct under the common law of products liability and/or actionable conduct under similar statutes in other states.

117.  Defendants' negligent and wrongful acts are a proximate cause of the Plaintiff's and Class members' suffering an increased risk of serious injury and disease, which they will continue to suffer.  Plaintiffs and Class members have been exposed to a hazardous product and suffer a significantly increased risk of contracting serious injury.  This increased risk makes periodic diagnostic and medical examinations reasonable and necessary.

118.  Medical monitoring is particularly appropriate, and, indeed, imperative, with respect to this action as:

      a.  Seroquel has been found to cause diabetes mellitus.

      b.  It is reasonably believed that the injury and damage caused by Seroquel may be latent, asymptomatic, chronic and/or undiscovered.

119.  Early detection and diagnosis of these diseases is clinically invaluable since it can prevent, reduce and/or significantly delay resulting discomfort, suffering and/or death and since these conditions can be often asymptomatic absent proper testing.

120.  Easily administered, cost-effective monitoring and testing procedures exist which make

the early detection and treatment of such injuries or disease possible and beneficial. Early diagnosis of diseases and conditions will allow prompt and effective treatment which will reduce the risk of morbidity and mortality which these patients would suffer if treatment were delayed until their condition became overly symptomatic.

121. The recommended testing procedures will be subject to expert testimony at the time of Class certification and/or trial. Appropriate testing regimes will likely include non-invasive, readily administrate able initial tests and procedures.

122. Many individuals at risk for disease and injury cannot afford to get appropriate testing and/or have not been advised, and do not otherwise know, of the need to undergo testing. Class members also need to be advised of the availability of non-invasive testing as a diagnostic tool and treatment which will prevent even more grave injury.

123. The increased susceptibility to injuries and irreparable threat to the health of Plaintiffs and the Class members resulting from their exposure to Seroquel can only be mitigated or addressed by the creation of a comprehensive medical monitoring program:

    a. Notifying individuals who use or used Seroquel of the potential harm from Seroquel either alone or in combination with other drugs;

    b. Funding further studies of the long term effects of Seroquel either alone or in combination with other drugs;

    c. Aiding in the early diagnosis and treatment of resulting injuries through ongoing testing and monitoring of the users of Seroquel;

    d. Providing for medical examinations for all members of the Class;

    e. Providing for accumulation and analysis of relevant medical and demographic information from Class members including, but not limited

to the results of tests performed on Class members;

f.   Providing for the creation, maintenance, and operation of a registry in which relevant demographic and medical information concerning all Class members is gathered, maintained and analyzed;

g.   Providing for medical research concerning the incidence, prevalence, natural course and history, diagnosis and treatment of Seroquel induced diseases; and

h.   Publishing and otherwise disseminating all such information to members of the Class and their physicians.

124.   Plaintiffs and members of the Class have no adequate remedy at law in that monetary damages alone do not compensate for the continuing nature of harm to them.  A monitoring program will enable Class members to ascertain the presence of injury and/or disease which are presently asymptomatic or only slightly symptomatic.  Early detection and warnings aids in Class members' treatment and may prevent the greater harms if the adverse conditions caused by Seroquel are treated before they become worse.

125.   Without a court-approved medical monitoring program, the users of Seroquel will not receive prompt medical care which could prolong their productive lives, increase prospects for improvement and minimize disability.  The Class does not have an adequate remedy at law.

126.   By reason of the foregoing, Defendants are liable, jointly and/or severally to Plaintiff and every Class member for injunctive and equitable relief including periodic medical monitoring, as well as the other relief set forth herein.

## COUNT XII
## UNJUST ENRICHMENT

127.   Plaintiffs repeat and reallege the allegations set forth in the paragraphs above as if fully

set forth herein.

128. Defendants have been unjustly enriched in the amount of the profits they have earned as a result of the Defendants' conduct as alleged herein.

129. The Defendants have been unjustly enriched at the expense of and to the detriment of the Plaintiff and each member of the Class.

130. Defendants should be ordered to disgorge the profits they made from their wrongful sale of Seroquel.

131. An Order declaring this action to be proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class or Classes, and finding that Plaintiffs are proper representatives of the Class;

**COUNT XIII**
**DECEPTIVE AND UNFAIR TRADE PRACTICES**

132. Plaintiffs repeat and reallege the allegations set forth in the paragraphs above as if fully set forth herein.

133. This is an action to recover damages caused by Defendants' unfair and deceptive trade practices in violation of consumer protection statutes and deceptive and unfair trade practices acts of Florida and other states.

134. Defendants' unfair and deceptive trade practices as stated above have caused an injury to the Plaintiffs.

135. As a result of Defendants' unfair and deceptive trade practices, Plaintiffs had no reasonable opportunity to avoid paying for Defendants defective product, Seroquel, and necessary medical testing and treatment

136. As a result of Defendants' unfair and deceptive trade practices, Plaintiffs and the class suffered damages, including but not limited to:

a.     The actual price paid for the drug Seroquel;

b.     Cost of medical testing and treatment;

c.     Interest upon same.

137.  Plaintiffs and the class are entitled to an award of attorney's fees pursuant to FDUTPA, Florida Statutes, Section 501.2105, and other states' deceptive and unfair trade practices acts, and consumer protection statutes, if they and the class prevail.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves and the Class members they seek to represent, request the following relief:

a.  An order declaring this action to be proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class or Classes, and finding that Plaintiffs are proper representatives of the Class;

b.  Creation of a court-supervised trust fund, paid for by Defendants, to finance a medical monitoring program to deliver services, including, but not limited to, testing, preventative screening and surveillance for conditions resulting from, or potentially resulting from consumption of Seroquel, as well as establishment or a medical research and education fund and a medical/legal registry;

c.  Ordering that Defendants refund and make restitution of all monies acquired from the sale of Seroquel to Plaintiffs and members of the Class;

d.  Awarding Plaintiffs and Class members compensatory and punitive damages in an amount to be proven at trial for the wrongful acts complained of;

e.  Awarding Plaintiff sand Class members statutory damages as permitted, including any applicable exemplary damages;

-30-

f.   Awarding Plaintiffs and Class members punitive damages to deter Defendants'
outrageous and wanton conduct and flagrant disregard for the lives and health of the Class
members;

g.   Awarding Plaintiffs and the Class pre-judgment and post-judgment interest;

h.   Awarding Plaintiffs and the Class their costs and expenses in this litigation, including,
but not limited to, expert fees and reasonable attorneys' fees; and

i.   Awarding Plaintiffs and the Class such other and further relief as may be just and
proper.

Respectfully submitted:

By: _____

Bryan F. Aylstock, Esq. - Florida Bar No.:  78263
Justin G. Witkin, Esq. - Florida Bar No.:  0109584
Neil D. Overholtz, Esq. – Florida Bar No.: 0188761
Douglas A. Kreis, Esq. – Florida Bar No.: 0129704
Aylstock, Witkin & Sasser, P.L.C.
55 Baybridge Drive
Gulf Breeze, FL 32561
(850)916-7450
(850)916-7449 facsimile
ATTORNEYS FOR PLAINTIFF


**Of Counsel: (Motions for Pro Hac Vice Being Submitted)**
Herb Waichman
Jerry Parker
Parker & Waichman
111 Great Neck Road
Great Neck, New York  11021
(718) 469-6900 Telephone
(516) 466-6665 Facsimile