Case 6:06-md-01769-ACC-DAB   Document 949-4   Filed 04/15/08   Page 1 of 2 PageID 17540



# Form 20-F

ASTRAZENECA PLC - AZN

Filed: March 12, 2004 (period: December 31, 2003)

Registration of securities of foreign private issuers pursuant to section 12(b) or (g)

Back to Contents

104

Case 6:06-md-01769-ACC-DAB   Document 949-4   Filed 04/15/08   Page 2 of 2 PageID 17541

AstraZeneca Annual Report and
Form 20-F Information 2003

Financial Statements

# Notes to the Financial Statements continued

**31 Assets pledged, commitments and contingent liabilities (continued)**

Barr made a claim that AstraZeneca improperly thwarted Barr's entry into the tamoxifen market and caused Barr monetary damages. AstraZeneca disputes the claim.

*Plendil* **(felodipine)**
In August 2000, AstraZeneca LP received a letter from Mutual Pharmaceutical Co., Inc. informing AstraZeneca of Mutual's intention to market a generic version of AstraZeneca's *Plendil* extended release tablets (felodipine) prior to the expiration of AstraZeneca's patent covering the extended release formulation. AstraZeneca filed a patent infringement action against Mutual in the US District Court for the Eastern District of Pennsylvania. Mutual responded and filed counterclaims alleging non-infringement and invalidity. In March 2003, the District Court granted summary judgement in favour of AstraZeneca as to the infringement claim holding that Mutual infringed AstraZeneca's formulation patent. In August 2003, the District Court granted summary judgement in favour of AstraZeneca as to the validity claim holding that AstraZeneca's patent is valid. Mutual has filed a notice of appeal as to both of these decisions to the US District Court of Appeals for the Federal Circuit.

*Seroquel* **(quetiapine fumarate)**
AstraZeneca PLC and AstraZeneca Pharmaceuticals LP have been named as defendants in the case of Susan Zehel-Miller et al. v. AstraZenaca [sic], AstraZenaca Pharmaceuticals, LP [sic], a putative class action suit filed in August 2003 in the US District Court for the Middle District of Florida. The named plaintiffs are seeking damages and injunctive relief on behalf of a purported class "consisting of all persons in the United States who purchased and/or used *Seroquel* ". Although the scope of the allegations in the complaint is very broad, the primary focus appears to be the contention that the Company failed to provide adequate warnings in connection with an alleged association between *Seroquel* and the onset of diabetes. AstraZeneca denies the material allegations of the plaintiffs' complaint and is vigorously defending the litigation.

*Toprol-XL* **(metoprolol succinate)**
In March 2003, AstraZeneca LP received a letter from KV Pharmaceutical Company informing AstraZeneca of KV's intent to market a generic version of *Toprol-XL* tablets in the 200mg dosage prior to the expiration of AstraZeneca's patents covering the substance and its formulation, the latest of which expires in March 2008. AstraZeneca filed a patent infringement action against KV in the US District Court for the Eastern District of Missouri. KV responded and filed counterclaims alleging non-infringement and invalidity. Discovery is scheduled to close in August 2004. The trial is scheduled for April 2005.

In July 2003, AstraZeneca received a similar letter from KV with respect to the 100mg dosage of *Toprol-XL* tablets. AstraZeneca filed another patent infringement complaint against KV in the same court. KV filed counterclaims alleging non-infringement and invalidity. This case has been consolidated with the initial case.

In December 2003, AstraZeneca received a letter from Andrx Pharmaceuticals LLC with notification that Andrx has filed an abbreviated new drug application to market a generic form of *Toprol-XL* extended release tablets in the 50mg dose which it intends to sell prior to the expiration of AstraZeneca's patents listed in the FDA's Orange Book, the latest of which expires in March 2008. Andrx claims that each of the listed patents are invalid and/or not infringed. AstraZeneca is considering whether to file a suit for patent infringement against Andrx.

*Zestril* **(lisinopril)**
In 1986, AstraZeneca's predecessor company and Merck & Co., Inc. entered into licence agreements under which AstraZeneca was granted the right to make, use and sell lisinopril ( *Zestril* ), in return for which AstraZeneca agreed to pay royalties to Merck. In April 2002, AstraZeneca commenced arbitration proceedings against Merck under one of the licence agreements. In the arbitration, AstraZeneca sought repayment of approximately $38m of prior royalty amounts and a prospective reduction in the royalty rate going forward. The case was settled in May 2003. Under the settlement agreement, Merck paid $37m to AstraZeneca and the parties agreed that the royalty rate going forward would not be reduced.

*Zoladex* **(goserelin acetate implant) investigation**
In June 2003, AstraZeneca announced the settlement of a multi-year investigation into US sales and marketing practices for *Zoladex* , a treatment for prostate cancer. Under the terms of the settlement, AstraZeneca Pharmaceuticals LP admitted to having violated the Prescription Drug Marketing Act by providing free samples of *Zoladex* to physicians during the period 1993 to 1996, with the understanding that these physicians would bill Medicare for reimbursement. AstraZeneca also settled, without admitting liability, civil claims involving allegations that the Company provided inducements to physicians to purchase *Zoladex* and for improperly setting and reporting its price. The total payment associated with the settlement was $355m. This amount included funds set aside to cover individual settlement agreements with the states involving related claims. As previously disclosed by the Company, in 2002 it accrued $350m to cover these settlement costs.

The settlement also provides for a five-year Corporate Integrity Agreement with the Office of Inspector General (OIG) for the Department of Health and Human Services under which AstraZeneca Pharmaceuticals LP is required, among other obligations, to keep in place its current compliance programme and provide periodic reports to the OIG on the status of compliance activities.