```
 1                 UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
 2                      ORLANDO DIVISION

 3              Docket No.6:06-MD-1769-Orl-22DAB

 4    . . . . . . . . . . . . . . ..
      IN RE:                        :
 5    SEROQUEL PRODUCTS LIABILITY   :
      LITIGATION                    :        Orlando, Florida
 6    MDL DOCKET No. 1769           :        July 29, 2008
                                    :        2:00 p.m.
 7    ALL CASES                     :
                                    :
 8    . . . . . . . . . . . . . . .:

 9
                    TRANSCRIPT OF PRETRIAL CONFERENCE
10            BEFORE THE HONORABLE ANNE C. CONWAY
                   UNITED STATES DISTRICT JUDGE
11                            AND
              MAGISTRATE JUDGE DAVID A. BAKER
12            UNITED STATES MAGISTRATE JUDGE

13

14    APPEARANCES:

15    For the Plaintiffs:          Paul Pennock

16                                 Camp Bailey

17                                 Jonathan Sedgh

18                                 Dennis Canty

19                                 Renee Baggett

20                                 Lori Siler

21                                 Edward Blizzard

22                                 Larry Roth

23    Court Reporter:      Sandra K. Tremel, RMR/CRR

24    Proceedings recorded by mechanical stenography, transcript

25    produced by computer-aided transcription.
```

```
 1   APPEARANCES CONTINUED
     FOR THE PLAINTIFF:              Holly Wheeler
 2                                   Lowell Finson

 3

 4   For the Defendant

 5   AstraZeneca:                    Fred Magaziner

 6                                   Stephen J. McConnell

 7                                   Robert Pass

 8                                   Liz Balakhani

 9                                   Russell Stewart

10                                   Kris Henning

11                                   Gary Feinerman

12   ALSO PRESENT:

13                                   Craig Ball

14                                   Orran Brown

15                                   Brian McCormick

16

17

18

19

20

21

22

23

24

25
```

```
 1                  P R O C E E D I N G S
 2          THE COURT:  Good afternoon.  Could we have
 3   appearances, please.
 4          MR. PENNOCK:  Paul Pennock, Weitz & Luxenberg,
 5   for the plaintiffs.
 6          MR. BAILEY:  Camp Bailey for the plaintiffs.
 7          MR. BLIZZARD:  Ed Blizzard, Blizzard, McCarthy
 8   and Neighbors for the plaintiffs.
 9          MR. ROTH:  Larry Roth, liaison counsel for
10   plaintiffs.
11          MR. SEDGH:  Jonathan Sedgh for plaintiffs.
12          MR. McCORMICK:  Brian McCormick liaison for the
13   third party plaintiffs.
14          MR. MAGAZINER:  Fred Magaziner for AstraZeneca,
15   Your Honor.
16          MR. MCCONNELL:  Good afternoon, Your Honor,
17   Steve McConnell on behalf of defendants.
18          MR. CIOTTI:  Robert Ciotti for AstraZeneca.
19          MR. PASS:  Robert Pass for AstraZeneca.
20          MS. BALAKHANI:  Liz Balakhani for AstraZeneca.
21          THE COURT:  All right.  We have just one issue
22   that you all have listed on the joint status report.  Who
23   would like to speak to that?
24          MR. ROTH:  Your Honor, there are some -- excuse
25   me.  There are some folks on the phone.  I didn't know if
```

```
 1    you wanted to --

 2              THE COURT:  Okay.

 3              MR. BROWN:  Good afternoon, Your Honor.  This is

 4    Orran Brown, the special master for case-specific

 5    discovery.

 6              MR. BALL:  This is Craig Ball, the special

 7    master for electronically stored information.

 8              MR. STEWART:  Your Honor, Russell Stewart for

 9    the AstraZeneca defendant.

10              MS. BAGGETT:  Your Honor, Renee Baggett for the

11    plaintiffs.

12              MR. FINSON:  Your Honor, Lowell Finson for

13    various plaintiffs.

14              MR. FEINERMAN:  Gary Feinerman for AstraZeneca.

15              MS. KENNY:  Colleen Kenny for AstraZeneca.

16              MS. WHEELER:  Holly Wheeler for the plaintiffs.

17              MS. SILER:  Your Honor, Lori Siler for the

18    plaintiffs.

19              MR. HENNING:  Kris Henning for AstraZeneca.

20              MR. CANTY:  Dennis Canty for plaintiffs.

21              MR. BROWN:  Those are all the counsel appearing

22    by telephone today.

23              THE COURT:  All right.

24              MR. BRADY:  And Scott Brady for plaintiffs.

25              MR. BROWN:  Except for Scott.  Thank you.
```

1           THE COURT:  Okay.  Who would like to address

2   AstraZeneca's proposal relating to the dispositive motion

3   briefing?

4           MR. MAGAZINER:  Fred Magaziner, Your Honor.

5   We've been working with Magistrate Judge Baker for some

6   time trying to figure out a way to streamline the filing

7   of dispositive motions before Your Honor.  And what we've

8   come up with is described in the submission that we made.

9   I recognize --

10          THE COURT:  Have you discussed it with

11  plaintiff's counsel?

12          MR. MAGAZINER:  We have.

13          THE COURT:  Is there any objection to your

14  proposal?

15          MR. MAGAZINER:  There is none.

16          THE COURT:  All right.

17          MR. PENNOCK:  Your Honor, Paul Pennock for

18  plaintiffs.  I didn't have an opportunity to discuss this

19  with Mr. Magaziner in the following issue.  In terms of

20  the briefing, we were fine with it, but there was a

21  reference, I think, in the proposal regarding a

22  stipulation of an entry of judgment on the warranty

23  claims.  And I think that the discussions had been that we

24  were going to withdraw those -- withdraw those claims,

25  might be a slight difference in how we were going to

6

1    approach eliminating those claims.  So we didn't actually

2    have a discussion on entry of judgment.  But in the final

3    analysis, we do agree that those claims will be withdrawn.

4    That's mentioned at page 2 of the motion that was filed

5    on, I think, Friday.

6         And also there was a reference in the papers that the

7    warranty claims would be, "eliminated from the

8    litigation."  And I think what we had contemplated was

9    only that the warranty claims would be withdrawn with

10   respect to the Florida plaintiffs, where Florida law we

11   think we are in agreement with the defendants would not

12   support those claims.  But many other jurisdictions,

13   should these cases ever be remand to other jurisdictions,

14   would support the warranty claims.

15        So we were withdrawing them not consenting to

16   judgment and only on the Florida cases.  Other than that,

17   we don't have any objection, I think, to the briefing.

18             MR. MAGAZINER:  Your Honor, with regard to the

19   last issue that Mr. Pennock admits, it was certainly not

20   our intention to suggest to the Court that there is an

21   agreement, but the warranty claims of all plaintiffs in

22   all jurisdictions would be dismissed or judgment entered.

23             THE COURT:  I read that paragraph to

24   specifically relate to Florida law.

25             MR. MAGAZINER:  And that is how it was intended,

1   Your Honor.

2        And with regard to the other issue, a colleague of

3   Mr. Pennock's and a colleague of mine have been engaged in

4   discussions about the procedure by which the warranty

5   claims governed by Florida law would disappear from

6   litigation and those discussions are ongoing.  But they

7   will disappear either by dismissal or withdraw.

8             THE COURT:  All right.  So I understand it, what

9   you would like is a 60-page master brief?

10             MR. MAGAZINER:  Yes, Your Honor.

11             THE COURT:  With 20-page -- maximum of 20-page

12   brief of the 12 individual cases.

13             MR. MAGAZINER:  Yes.

14             THE COURT:  Sounds like a pretty good proposal

15   to me.

16             MR. MAGAZINER:  Thank you.

17             THE COURT:  The plaintiffs would have the same

18   page limits.

19             MR. MAGAZINER:  Well, we'd actually propose that

20   they have half as many pages, if that's all right with the

21   Court.

22             THE COURT:  And I'm sure they would like twice

23   as many.

24             MR. MAGAZINER:  We hadn't discussed that, but I

25   think that's a fair way to do it.

1          THE COURT:  All right.  Well, is there anything

2     else we need to discuss?  I am not going to extend any of

3     the deadlines.  I just simply cannot do that.  So --

4          MR. MAGAZINER:  Both Mr. Blizzard and I would

5     appreciate an opportunity to discuss that with the Court

6     if the Court would indulge us.

7          THE COURT:  Always happy to hear you.

8          MR. BLIZZARD:  Your Honor, good afternoon.  My

9     name is Ed Blizzard.  I haven't had the pleasure of being

10    in Orlando except for one occasion and not before this

11    Court, but I have  been involved in the litigation in

12    terms of planning and taking many of the corporate witness

13    depositions from AstraZeneca.  I'm also involved in

14    preparing or trying to prepare the expert witnesses to

15    file reports and to give testimony.  And I will be

16    involved in trials that occur here and elsewhere, not all

17    of them but certainly some of them.

18         One of the key issues in the trials of the case, of

19    course, will be what did AstraZeneca know and when did it

20    know it about the scientific information that Seroquel

21    could cause diabetes.  And one of the critical pieces of

22    information about what they knew and when did they know it

23    would be located in their clinical trial database.

24         And while AstraZeneca, obviously, has had that

25    clinical trial database for years and has scientists that

1   have analyzed it and reanalyzed it, it was only when we

2   took the corporate witness depositions and their chief

3   scientists, which began really from mid May of this year

4   until the latter part of June of this year, that we had a

5   good understanding of what glucose data or diabetes data

6   they had in their clinical trial database that might need

7   to be analyzed by our experts.

8         So we finished -- we deposed their chief scientist on

9   this issue, Dr. Brecker, and -- between May 28 and May 30.

10  We deposed the head of drug safety for the company on

11  June 19 and 20th in the United Kingdom.  And immediately

12  following the completion of our discovery, our corporate

13  discovery, we then sought out to try to locate and

14  assemble and get to our experts all the clinical trial

15  data that they would need to analyze in order to address

16  the issue of what did the company know and when did they

17  know it.

18        So if I could hand up to the Court a single sheet

19  that we've prepared.  This is a listing of -- could I

20  approach?

21              THE COURT:  Yes.

22              MR. BLIZZARD:  Thank you, Your Honor.  I have

23  another copy for Judge Baker.

24              THE COURT:  Thank you.

25              MR. BLIZZARD:  Your Honor, this is a listing of

1   some of the clinical study reports -- actually, all the

2   clinical study reports that we provided to some of our

3   experts, epidemiologists, who will be addressing the

4   question of what did the company know, what was in their

5   own database from their clinical studies.

6        And as the Court can see from this single sheet of

7   paper, these documents were provided on July 18 of this

8   year of 2008, and see that there are a large number of

9   these reports.  All of these reports contained glucose

10  data that they gathered during the testing of the product,

11  primarily for whether it was effective or not.  Only one

12  of these studies, study 125, was a study that addressed

13  the specific issue, the safety issue, of what effect does

14  it have on glucose tolerance.

15       But in all of these studies actually collecting

16  glucose data, some randomly, some fasting glucose.  And

17  you can see that most of these reports are thousands of

18  pages long.  For example, clinical study 127, which was

19  completed in June of 2007, is 6,434 pages long.  And then

20  there's an errata list for the same study that's 8,755

21  pages long.

22       What we learned in the testimony that -- was that

23  these two studies are the reason why the company recently

24  changed its label, or I say recently, I mean in the summer

25  and fall of 2007, they changed their label and added some

1   language on hyperglycemia.  And we had been asking

2   witnesses about this for some time, but it wasn't until

3   the summer, May and June of this year, that we actually

4   found witnesses who knew about these safety studies.  And

5   so we have now been able to gather these studies as well

6   as these other studies and provide them to our experts.

7        The Court can see from this printout this is quite a

8   bit to bite off and chew and digest for any expert.  And

9   to say it another way, it's a lot to ask them to analyze

10  this, to form an opinion about it, and then write about

11  it.

12       And so from talking with the experts, there is no way

13  that they can be ready to complete their analysis of this

14  data in less than a month's time.  Currently our expert

15  deadline for expert reports is August 8th.

16       We provided this information as quickly as we could

17  following the completion of the corporate witness

18  depositions.  We're able to pull it together by July 18

19  and get it out on disk and hard drives to these witnesses,

20  but we just simply can't get it done by August 8th.

21       Now, as this Court probably knows, the -- AstraZeneca

22  has retained a formidable line up of defense lawyers.

23  There's Williams and Conley and there's Bartlett, Beck as

24  well as the Dechert firm, Sidley and Austin, Baker and

25  Botts.  They have good trial lawyers that we've faced

1  before in other litigations.  And I assume they're not

2  doing this to scare us, they're planning to try the cases

3  and we're prepared to meet that challenge.  But because

4  the parties are investing significant resources in -- both

5  from the standpoint of time and money and because we're

6  aware that the Court is going to be investing significant

7  resources in time and ruling on some of the motions that

8  will be presented as these cases get ready for -- get

9  closer to trial, we want the result to be useful, the

10 results of the trials to be useful to both the parties and

11 the Court.

12      And we think that the only way that they're going to

13 be useful to the parties and the Court and to justify the

14 investment of the Court's time and our time and resources

15 in this is if both sides are ready.

16      And I guess what I'll tell the Court and I think

17 AstraZeneca has indicated to the Court in the joint status

18 report is that both sides along with the special master

19 that has been appointed, Orran Brown, to try to schedule

20 the depositions of the -- of the treating doctors, that

21 despite the fact that everybody's worked as hard as they

22 can that we can't be ready on the current schedule.

23      So appreciate the Court listening to me after you

24 made the comments of what you couldn't or likely to do on

25 this, but I think it is the parties' firm belief that the

1   current schedule, despite the parties having worked --

2   having worked hard to meet it, can't be met with the

3   parties being ready to do what we need to do to

4   effectively present these cases.

5        Thank you, Your Honor.

6             THE COURT:  Thank you.

7             MR. MAGAZINER:  May I be heard on the subject as

8   well?

9             THE COURT:  Yes.

10            MR. MAGAZINER:  I'm not able either to agree

11  with or disagree with what Mr. Blizzard said about the

12  feasibility of getting information to the plaintiff's

13  expert at an earlier time.  But there are many other

14  reasons why I would urge the Court, despite the Court's

15  very considerable misgivings, to consider the joint

16  submission that we made requesting that the dates be

17  changed.

18       As Judge Baker could confirm to Your Honor, this has

19  been a hard fought litigation to date and there have not

20  been very many instances when the parties have completely

21  agreed on issues, but this is one instance when that has

22  happened.

23       As we face the deadlines that are looming both for

24  the Plaintiffs and for AstraZeneca, we realize how all of

25  those deadlines were premised on the depositions of the

1    physicians being completed by July 31.  Every deadline

2    that follows in the present orders is premised on the

3    completion of those physician depositions.

4         Judge Baker alluded at the last conference of the

5    possibility that it might be some clean-up to be done

6    after the deadline.  But what has happened, through no

7    fault of plaintiffs, no fault of AstraZeneca, no fault of

8    the PMO, what has happened is that a great number of the

9    physician depositions have not yet been scheduled.

10        Unfortunately, despite the best efforts of the

11   parties, the extraordinary efforts of the PMO, physicians

12   whose depositions need to be taken have made themselves --

13   have not made themselves available on the schedule that

14   the parties and the Court wish them to be deposed.

15        And nothing can be done about it other than to push

16   as hard as they can be pushed, then hope that the

17   physician depositions can be schedule.

18        The PMO, Mr. Brown, is on the telephone, and I'm sure

19   he can speak to this himself.  But as he said in his

20   written report, this is through no fault of the parties,

21   and it's certainly through no fault of the PMO himself.

22        As a result of these deposition not being taken, many

23   of the facts upon which these cases may well turn are not

24   yet known.  It's not very often that one of the defense

25   lawyers has gotten up here and said, we think the

1   plaintiffs need more time.  But I'm saying that to you

2   today.

3        If the plaintiffs have to submit reports on

4   August 12th, case specific expert reports, for example, as

5   the present schedule contemplates, they will necessarily

6   be submitting reports that are incomplete and that will

7   need to be supplemented and modified down the road when

8   more facts are known.  Many of the crucial facts are not

9   yet known.

10        I took a deposition yesterday -- or I cross-examined

11   a doctor yesterday, the plaintiffs took the deposition in

12   one of the initial trial pool cases, it's the number two

13   case on the plaintiff's list, Burns, we learned yesterday

14   of things that no one knew until yesterday.  That case --

15   that deposition was done by July 31, it was yesterday.

16   But there are other equally important depositions that are

17   going to be in August and I dare say are going to be in

18   September which will -- the outcome determinative or at

19   least outcome -- of great outcome importance, let's put it

20   that way, to these cases.  And any expert reports that are

21   submitted by the plaintiffs or by AstraZeneca about these

22   cases when so many of the most significant facts are not

23   yet known are flawed reports which will have to be redone

24   later on.

25        And we've discussed this at length with the

```
 1    plaintiffs.  They're the ones that feel the initial brunt
 2    of the present order because they have reports due early
 3    in August.  We have reports due a month later.  But both
 4    of us are in the same boat as we are submitting -- going
 5    to experts and asking them to analyze cases where all the
 6    facts are not yet known because discovery is not yet
 7    complete.  We're engaged in a very flawed and wasteful and
 8    inefficient system that can only result in some sort of
 9    chaos in the fall when we come back to Your Honor, to
10    Judge Baker and say, we now need to supplement this
11    report.  We now need to supplement the other report.  We
12    need to have new depositions.  We need to have new
13    responsive reports.  And this whole schedule is going to
14    fall into disarray, I believe.
15          So I -- we are well aware, and Judge Baker has
16    pointed out to us and emphasized to us repeatedly, I'm
17    sure Your Honor would be pleased to know this, repeatedly
18    how extremely --
19                THE COURT:  I've read all of the transcripts.
20                MR. MAGAZINER:  Okay.  Well, then, Your Honor
21    knows how --
22                THE COURT:  Those I didn't listen to in person.
23                MR. MAGAZINER:  Well, then Your Honor knows that
24    Judge Baker has emphasized again and again how important
25    these deadlines are.  And we have taken it to heart and we
```

1    are doing everything we can.

2         But a great number, I would say the majority, but a

3    very large portion of the depositions that were supposed

4    to be completed by July 31 will not be completed by

5    July 31.  That's absolutely certain.  And that's what the

6    PMO has said in his report.

7         So here's how I see this, Your Honor, and I say this

8    reluctantly because I know how disappointing this is to

9    the Court, but we have put in place with the procedures

10   that we negotiated and developed with the plaintiffs and

11   that we've submitted to the Court, we put in place a

12   process that if it's allowed to proceed will result in

13   trials of cases that will be of significance to the Court

14   and of significance to the litigation.

15        We will have trials from which the Court and the

16   parties will learn a great deal and which will help the

17   Court and the parties figure out how to get through this

18   litigation and bring it to some sort of end.

19        But it is an orderly process that we've developed

20   with the plaintiffs.  It's a process that we believe in,

21   and it's a process that is premised in the present

22   schedule on fact discovery being completed by July 31.

23        If that premise is false, what we urge the Court to

24   allow us to do is adhere to the process, let it work out

25   the way we envision, but give us the continuance that

 1  we've requested so that the depositions can be completed,

 2  and we can proceed in an orderly manner through expert

 3  disclosure, expert depositions, motions, et cetera, as the

 4  process contemplates.

 5      To our mind, and I think I speak for the plaintiffs

 6  as well, it is more important that we end up trying cases

 7  that are significant having gone through pretrial

 8  proceedings that are fair and that allow all the issues to

 9  be well vetted and developed, than it is that the trial be

10  60 days earlier or 60 days later.

11      We think -- as much as the plaintiffs and we would

12  like to have had the earlier trial date, we think it is

13  not realistic.  We think it is, in fact, impossible.  And

14  we would urge the Court to take seriously our joint

15  submission and work with us in trying to keep this process

16  in place as we have envisioned it and developed it over

17  time.

18      Of course, Mr. Blizzard and I and other counsel will

19  be happy to address any concerns Your Honor has or any

20  specific questions you may have.

21          THE COURT:  I don't have any questions.  The

22  first trial is going to start February 2nd.  I will look

23  at the dates and see what we can tweak and still give us

24  time to rule on the motions.

25          MR. BROWN:  Your Honor, this is Orran Brown, the

1   special master for case specific discovery.  May I inform

2   the Court just briefly on the logistics that Mr. Magaziner

3   and Mr. Blizzard were speaking to in our efforts to

4   conclude these depositions?

5        We have been relentless since the first cases were

6   designated in April for the initial trial pool cases in

7   scheduling the depositions of the physicians and the sales

8   representatives, the plaintiffs, and the other witnesses

9   that are involved in these -- this program for the trial

10  cases.

11       And the parties themselves, I just want the Court to

12  know that the plaintiffs and the defendants through their

13  representatives, Ms. Martinez and Mr. Stewart, have really

14  poured it on to try to make this happen.  They have gone

15  to great lengths to schedule these depositions and get

16  people there.  And whenever we run into, as we do each

17  day, problems from the physicians' offices about schedules

18  or amount of time they will give us, the parties have been

19  working together delightfully to make that happen.

20       And the impediment for all of us collectively has

21  been physicians schedules.  They -- as I recounted in our

22  report, we regularly have run into the normal things you

23  run into with the doctors and their patient schedules and

24  how much time they allow for depositions and the fees they

25  want and getting their records and the normal things.

1    In this time of year in the summer, and particularly

2  now that these depositions because they -- some of them de

3  bene esse depositions and they can be videotaped and they

4  can occupy up to a total of seven hours, it's harder to

5  arrange that on a doctor's schedule.  That has taken more

6  time.  And we're also seeing a number of the physicians,

7  more so than in the discovery program we had before the

8  trial pool cases, are now wanting their own lawyers

9  involved which delays the process and slows it up because

10  we have to convince the lawyers of the time, place and

11  manner that these depositions are going to be done.

12    We have been using all the Court's orders that Judge

13  Baker and the Court entered to assist this process to

14  convince these physicians and their lawyers that they have

15  to cooperate, they have to provide the time to us.  We've

16  been begging for nights and weekends, not successful much

17  in getting physicians to help us on nights or weekends.

18  But we have really done the most we can and the parties

19  have, I think, to try to get these depositions in by

20  July 31 with the harsh reality being that we have not been

21  successful in getting all of these set by July 31.  We

22  have completed 66 depositions.  We have 19 depositions

23  that are going on between now and the end of business on

24  the 31st on Thursday.

25    Because we didn't want to lose the opportunity, we

1    have set and grabbed the dates for another 34 depositions

2    in July -- in August.  So it's after the Court's deadline

3    of July 31, but we grabbed the dates in August for fear of

4    losing them if we didn't take them.  And we have another

5    50 physician depositions to set in these trial pool cases

6    that we have not been able to set yet, because we have

7    been contacting offices trying to get dates, trying to

8    make sure we locate them.  In some instances, the

9    addresses are out of date and it takes a while to get to

10   the right people to schedule them.

11        But as a -- the harsh reality is that we have about

12   90 depositions total that have been designated as

13   witnesses in these trial period -- trial pool cases that

14   we and the parties have not been able to force schedule by

15   July 31.  And we plan, if the Court allows us, to continue

16   the full court press to schedule them and get them done.

17   But I think realistically it will take us all of August

18   and perhaps September to get every single one of those

19   depositions concluded.

20        And one reason I mention this at length is to say

21   that, of course, we cannot take any depositions after

22   July 31 in the trial pool cases without the Court's

23   blessing, because paragraph H of CMO5 requires us to be

24   finished by July 31.

25        And that's where we are today, Your Honor.  I hate to

1    be the bearer of bad news myself, but that's the practical

2    reality that we and the parties have been facing.

3         THE COURT:  All right.  Well, there has not been

4    a motion filed for permission to take those depositions

5    outside the time, and certainly that motion will be

6    granted for any of the depositions that are presently

7    scheduled, but no one has filed such a motion.

8         MR. MAGAZINER:  We will certainly file such a

9    motion Your Honor, but --

10        THE COURT:  Well, you can consider that any

11   deposition that is scheduled for August can be taken.

12        MR. BROWN:  Thank you, Your Honor.

13        THE COURT:  If you want anything beyond that,

14   you should file a motion.

15        MR. MAGAZINER:  May I be heard for just a moment

16    more, Your Honor?

17        THE COURT:  Yes.

18        MR. MAGAZINER:  Thank you.  I don't want to over

19   extend my welcome.  But when we talk about motions, we

20   filed a joint motion some time ago asking for a

21   modification of the then existing schedule, anticipating

22   that there were going to be problems doing as much as was

23   contemplated by CMO5.  And we proposed a decrease in the

24   number of cases being worked up, and that's the first.

25   You may remember, we proposed two smaller groups of six

1   cases each.

2       One of the things that has made it even more

3   difficult to make as much progress as we and the Court

4   would like to be making here is that the Court did not see

5   fit to grant our motion and required us to work up 24

6   cases rather than -- or actually all 30, rather than the

7   six that we had proposed in the first group.

8       And if we could perhaps revisit with the Court the

9   feasibility of going back to something like what the

10  parties had jointly proposed involving a smaller number of

11  cases, perhaps not the exact proposal we previously made

12  but some other proposal that would take into account where

13  we are on discovery and the realities that we are now

14  facing and that would result in some smaller number of

15  cases being worked up rather than the large number as

16  presently contemplated, perhaps Your Honor would allow us

17  to make such a presentation to the Court and keep the

18  present deadline, but make it more feasible in terms of

19  the proceedings that have to occur between now and then.

20      But for the reasons that Mr. Brown has just

21  described, we have 90 depositions not yet taken which will

22  not be in the can when plaintiffs have to submit their

23  reports and may not be yet taken when we have to submit

24  our reports.  As I said a few moments ago, and I won't

25  reiterate, but for this one time, but it's going to result

1    in reports that are not very useful.

2            MR. PENNOCK:  Your Honor, Paul Pennock.  May I

3    speak briefly to this --

4            THE COURT:  Yes.

5            MR. PENNOCK:  -- prior proposal?

6        Essentially, Judge Baker has made clear previously

7    and as you've made clear today, that the Court wants to

8    try a case on February 2nd, wants us ready for trial with

9    several cases, in case some fall out, by February 2nd.

10       And I think what Mr. Magaziner is just suggesting,

11   because I passed him a note and asked him if he would

12   agree, to go back to a prior agreement we had to have the

13   Court reconsider this.  It's simply reducing the number of

14   cases, keeping the February trial date, but as the Court

15   said, tweaking some of these deadlines on the more limited

16   number of cases.

17       Because when you get right down to it, what's driving

18   this entire problem is the shear number of depositions.

19   And if we reduce the number of cases, we will consequently

20   reduce the shear number of depositions from which a lot of

21   this has been triggered.

22       So the proposal was keeping enough of a group to

23   ensure that the Court will have cases to try on

24   February 2nd.  We had a three plus three, we pick three,

25   they pick three.  We had an agreement on how they would

1    get replacements right away if for some reason their cases

2    fell out.  And that agreement contemplated our reports

3    being due on September 12th, which we think, as

4    Mr. Blizzard pointed out, we would be able to meet that

5    deadline for the more limited group of cases, and then

6    there would be a shadow group, also three plus three, that

7    would shadow those six, which those deadlines I don't

8    remember those specifically, but they didn't fall much

9    behind the first group.

10       So consequently we would clearly have a group of

11   cases ready, which we now understand is fixed in stone,

12   the February 2nd date.  And we would have them ready, we

13   would be ready to go to trial, we would have not just one

14   case but several cases should the Court determine after

15   trying the initial case that the Court would like to have

16   other judges involved, which I think may have been

17   mentioned at some point.

18       And then immediately behind those six, we're talking

19   February 2nd, by March or April there would be another six

20   ready.  And as the Court is undoubtedly aware, if you look

21   at any MDL -- and although this MDL has moved at light

22   speed, and to our satisfaction, it has, it's moved very

23   quickly compared to most MDLs for a lot of reasons, but if

24   we ended up trying 12 cases in this MDL, that would be

25   double the number of any MDL I'm aware of that I've ever

1    been involved in.  Even Vioxx I think there were only five

2    trials in Judge Fallon's MDL.

3         So if the Court would like us to sort of rerun that

4    proposal, knowing as we do now that February 2nd is not

5    moving, have cases ready for this Court to try, I think we

6    can get there.  I think we can avoid all the problems that

7    the -- that Special Master Brown was alluding to and that

8    Mr. Blizzard was alluding to and that have been discussed

9    here today.  We will have our expert reports out on

10   September 12th.  We will move ahead with the same

11   timetable, essentially, that the Court has currently

12   proposed, and have the trial on February 2nd.

13             THE COURT:  All right.  Well, if you want to

14   come back with some proposal knowing that we're going to

15   start the first case February 2nd, I'm happy to consider

16   it.

17             MR. PENNOCK:  Thank you very much, Judge.

18             MR. MCCONNELL:  Your Honor, very briefly, I'm

19   Steve McConnell on behalf of defendant AstraZeneca.

20        You mentioned that there's a possibility that you

21   might tweak some of the intermediate dates.  And the one

22   thing I just wanted to make sure of was that the Daubert

23   hearing process be adequately considered.

24        We don't, obviously, have that much information now

25   in terms of what experts the plaintiffs are going to

1   propound or what they're going to address.  We have a

2   pretty good idea that in a case like this and given the

3   depositions that issues of epidemiology, biostatistics,

4   general causation, specific causation, regulatory matters

5   are all going to be in play.  And I know that Your Honor

6   has had ample experience in the past with Daubert hearings

7   and you know that they can be extensive and hearings can

8   take a number of days.

9        All I would say, two things:  One, to the extent you

10  tweak the schedule, that that figures in there in a

11  prominent way.  And second, I'd request that possibly it

12  might make sense before the next hearing or the parties

13  perhaps to brief any topic that you would find helpful to

14  discuss the possible contours of Daubert hearings in this

15  case, which I think will be extensive.  And I wouldn't

16  want that to get lost as almost an afterthought at the end

17  of the scheduling and prior to the February 2nd trial.

18              THE COURT:  The Daubert hearings will be set far

19  in advance.

20              MR. MCCONNELL:  Okay.  Thank you, Your Honor.

21              MR. PENNOCK:  Your Honor, just so I'm clear, we

22  will get back to the Court immediately with a proposal

23  that keeps the February 2nd trial date and works out all

24  these issues including -- in terms of tweaking to ensure

25  that everything happens in line.  Thank you, Judge.

1          THE COURT:  Keep in mind that it does take us

2    some time to rule on motions.

3          MR. PENNOCK:  We understand.  Thank you, Judge.

4          THE COURT:  Is there anything else?  All right.

5    Thank you.

6          MAGISTRATE JUDGE BAKER:  Let me ask whether the

7    parties want to schedule another status conference in

8    August?

9          MR. MAGAZINER:  We actually discussed that as

10   well, Your Honor, and talked to them.  If Your Honor's

11   addressing this to Judge Baker because I assume this is

12   going to be in front of Your Honor, if Your Honor's

13   schedule allows September 3rd or 4th, that would work best

14   for the parties, rather than the last week of August.

15         MAGISTRATE JUDGE BAKER:  As I was walking down

16   the hall to meet with Judge Conway, I was remarking that I

17   felt like I should be carrying a baton to pass the burden

18   of this case to her to -- although I'm confident there are

19   things left for me to do in the case.

20      Labor day is the 1st.  You're talking about doing it

21   Tuesday the 2nd or --

22         MR. MAGAZINER:  No, we were thinking Wednesday

23   the 3rd or Thursday the 4th if one of those dates would

24   work well for Your Honor.

25         MAGISTRATE JUDGE BAKER:  Wednesday is better.

```
 1              MR. MAGAZINER:  Thank you, Your Honor.  What
 2    time would you like to do this?
 3              MAGISTRATE JUDGE BAKER:  I think 10:00.
 4              MR. MAGAZINER:  Thank you very much, Your Honor.
 5              MR. BLIZZARD:  Your Honor, may I ask one more
 6    question in favor of the Court --
 7              THE COURT:  All right.
 8              MR. BLIZZARD:  -- before we adjourn?
 9         Having heard the suggestion by Mr. Pennock and the
10    Court's response to that, I have some people who are
11    working on expert reports who are pulling their hair out.
12    And so we have this --
13              THE COURT:  I don't need much time to decide
14    that motion.
15              MR. BLIZZARD:  Okay.  Thank you, Your Honor.
16    Because when I come back, they're going to ask me what
17    does tweaking mean and what's it mean with respect to
18    August 8?
19              THE COURT:  I would like to have it done this
20    week, so --
21              MR. BLIZZARD:  Okay.  Thank you, Your Honor.
22              THE COURT:  All right.  Thank you.
23                        (End at 2:39 p.m. )
24
25
```

```
 1                    C E R T I F I C A T E

 2          I certify that the foregoing is a correct

 3    transcript from the record of proceedings in the

 4    above-entitled matter.

 5

 6    s\Sandra K. Tremel   August 1, 2008

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```