# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

IN RE:  Seroquel Products Liability Litigation

**MDL DOCKET NO. 1769**

This document relates to:

| | |
|---|---|
| Linda Guinn | 6:07-cv-10291 |
| Janice Burns | 6:07-cv-15959 |
| Richard Unger | 6:07-cv-15812 |
| Connie Curley | 6:07-cv-15701 |
| Linda Whittington | 6:07-cv-10475 |
| Eileen McAlexander | 6:07-cv-10360 |
| ~~Sandra Carter~~ | ~~6:07-cv-13234~~ |
| ~~Clemmie Middleton~~ | ~~6:07-cv-10949~~ |
| ~~Hope Lorditch~~ | ~~6:07-cv-12657~~ |
| David Haller | 6:07-cv-15733 |
| ~~Charles Ray~~ | ~~6:07-cv-11102~~ |
| ~~William Sarmiento~~ | ~~6:07-cv-10425~~ |

---

## ASTRAZENECA'S MOTION AND SUPPORTING MEMORANDUM OF LAW TO EXCLUDE NON-CAUSATION EXPERT TESTIMONY UNDER FEDERAL RULES OF EVIDENCE 702, 401 AND 403

### I.    INTRODUCTION

Defendants AstraZeneca Pharmaceuticals LP and AstraZeneca LP ("AstraZeneca")

hereby move to exclude portions of the proposed testimony of seven of plaintiffs' expert

witnesses pursuant to *Daubert* and Federal Rules of Evidence 702, 401 and 403.[1]  In separate

*Daubert* motions, AstraZeneca moves to exclude the "medical causation" opinions of plaintiffs'

---

[1] Addressed in this motion are (1) plaintiffs' three generic experts, Drs. Arnett, Plunkett and Wirshing; and (2) four case-specific experts, Drs. Abramson, Perry, Tulloch, and Young.  In addition, the following plaintiffs have designated Dr. Jennifer Marks as an expert:  Janice Burns, Connie Curley, and Linda Guinn.  Her report and deposition do not include opinions that are subjects of this motion.  Under Fed. R. Civ. P. 26(a)(2)(B)(i), Dr. Marks cannot expand her opinions to address the issues that are the subject of this motion.  Plaintiffs also designated Dr. Mohan Nair for the Carter case, but that case has been dismissed and this motion will not address his opinions.

five case-specific experts and three generic experts.  This motion addresses the non-medical causation opinions of these witnesses.  Some of the challenges raised in this brief will also be the subject of pre-trial motions in limine.  AstraZeneca includes them in this motion because numerous courts have considered and ruled on similar questions under Rule 702 in the context of *Daubert* motions, and because this Court may wish to address all issues related to expert testimony at this time.

The broad array of topics about which plaintiffs' experts propose to testify is not only outside those experts' areas of claimed expertise, but concern matters that courts have consistently found inappropriate for expert testimony under the Federal Rules of Evidence. Indeed, the testimony of plaintiffs' experts strays into areas for which they lack any legitimate experience or qualifications.  A few examples illustrate the problems:

- An epidemiologist (Dr. Arnett) opines on the company's intent based on the "tone" of e-mails, and another witness (Dr. Tulloch) opines on AstraZeneca's state of mind based on an oral briefing from a paralegal working for plaintiffs' counsel.

- Several witnesses (Drs. Plunkett and Young) wish to testify about regulatory actions in foreign countries — even though they have absolutely no expertise in that field.

- Several witnesses (Drs. Wirshing, Arnett, Abramson, Perry, and Young) speculate about the impact of marketing on doctors' prescribing decisions, including marketing materials the prescribing physicians in these cases never saw or relied upon.

- All witnesses have been given a counsel-selected collection of deposition exhibits and wish to provide the jury with a narrative of plaintiffs' view of key events.

This is not the first pharmaceutical multidistrict litigation ("MDL") in which courts have been asked to limit testimony similar to that offered here.  For example, in the Rezulin MDL, Judge Lewis Kaplan rejected the use of "'expert' witnesses whose intended role is more to argue the client's cause from the witness stand than to bring to the fact-finder specialized knowledge or expertise that would be helpful in resolving the issues of fact presented by the lawsuit." *In re*

*Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 538 (S.D.N.Y. 2004) (excluding expert testimony that provided, *e.g.*, commentary on evidence, opinions about the intent and ethics of companies, speculation about the impact of labeling on physicians, and the expert's personal interpretation of certain events); *accord In re Prempro Prods. Liab. Litig.*, 554 F. Supp. 2d 871 (E.D. Ark. 2008) (striking expert testimony that discussed internal company documents and provided personal, speculative assessments of company motives); *In re Baycol Prods. Liab. Litig.*, 532 F. Supp. 2d 1029 (D. Minn. 2007) (excluding proposed expert testimony about corporate intent, foreign labeling, and purported suppression of research); *In re Diet Drugs Prods. Liab. Litig.*, 2001 WL 454586 (E.D. Pa. Feb. 1, 2001) (excluding proposed expert testimony consisting of speculation about the impact of labeling, and experts testifying outside of their true area of competence).

As detailed below, each of plaintiffs' expert witnesses crosses the clear lines established by other MDL courts. Indeed, they wish to render opinions and offer testimony outside their areas of expertise and qualifications; that is the product of no scientifically or otherwise valid methodology; and that is based on an inherently unreliable selection of cherry-picked documents. Accordingly, AstraZeneca seeks to exclude those opinions. For the Court's convenience, a chart identifying each expert and the opinions that AstraZeneca challenges is attached as Appendix A to this brief.

## II.   LEGAL FRAMEWORK

### A.   Limitations On Expert Testimony

Federal Rule of Evidence 702 governs the admissibility of expert testimony:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon

sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

As Rule 702 requires, federal courts "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). "The court serves as a gatekeeper, charged with screening out experts whose methods are untrustworthy or whose expertise is irrelevant to the issue at hand." *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1250 (11th Cir. 2007). Under Rule 702, the following well-recognized principles and limitations on expert testimony apply.

### 1. Expert Testimony Must Relate To Scientific, Technical, Or Other Specialized Knowledge Outside The Understanding Of Jurors

Experts cannot testify about matters that require no "scientific, technical, or other specialized knowledge." The "word 'knowledge' connotes more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590. "Expert testimony is properly excluded when it is not needed to clarify facts and issues of common understanding which jurors are able to comprehend for themselves." *Hibiscus Assocs. Ltd. v. Board of Trustees of the Policemen and Firemen Retirement Sys. of the City of Detroit*, 50 F.3d 908, 917 (11th Cir. 1995) (citing *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962)). In particular, "[e]xpert testimony should not merely reiterate arguments based on inferences that can be drawn by laypersons; those can properly be advanced by the parties in their summations. Neither should it include testimony that 'undertakes to tell the jury what result to reach . . . [or] attempts to substitute the expert's judgment for the jury's.'" *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994). *See also In re Air Crash Disaster at New Orleans, La.*, 795 F.2d 1230, 1233 (5th Cir. 1996) ("the trial judge

ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument").[2]

### 2.   Expert Testimony Must Assist The Trier Of Fact

Rule 702's requirement "that the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue' . . . goes primarily to relevance" and the Court must ensure that the proposed expert testimony is "relevant to the task at hand." *Daubert*, 509 U.S. at 591; *see also* 4 Jack B. Weinstein & Margaret A. Becker, *Weinstein's Federal Evidence* § 702.03[1] (2d ed. 1997) (Rule 702's "helpfulness requirement" is "akin to the relevance requirement of Rule 401" but "goes beyond mere relevance," requiring "expert testimony to have a valid connection to the pertinent inquiry").

### 3.   Expert Witnesses Must Be Qualified

This Court "must determine whether [plaintiffs' proposed expert] testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'" *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999) (quoting *Daubert*, 509 U.S. at 592). Plaintiffs bear the burden of showing that each "expert is qualified to testify competently regarding matters he intends to address." *Corwin*, 475 F.3d at 1250. As a result, an "expert may be generally qualified but may lack qualifications to testify outside his area of expertise." *Calhoun v. Yamaha Motor Corp.*, 350 F.3d 316, 322 (3d Cir. 2003).

---

[2] In addition, an expert "witness also may not testify to the legal implications of conduct; the court must be the jury's only source of law." *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990); *accord Brevard Emergency Servs. v. Emcare, Inc.*, 2006 WL 2425423, at *6 (M.D. Fla. Aug. 21, 2006).

### 4.      Expert Testimony Must Be Reliable

"[T]he requirement that an expert's testimony pertain to 'scientific knowledge' establishes a standard of evidentiary reliability." *Daubert*, 509 U.S. at 590; *id.* at 592-93 (trial courts must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue"). The trial court's "basic gatekeeping obligation" imposed by Rule 702 also ensures that any expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co.*, 526 U.S. at 152. "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). Based on these principles, courts have held that experts who base their opinions on a limited set of materials selected for them by counsel have not employed a reliable methodology. *See Miller v. Pfizer, Inc.*, 196 F. Supp. 2d 1062, 1086-87 (D. Kan. 2002), *aff'd*, 356 F.3d 1326 (10th Cir. 2004); *In re TMI Litig.*, 193 F.3d 613, 698 (3d Cir. 1999).

### B.      Application Of General Principles Governing Expert Testimony In Pharmaceutical And Other Product Liability Litigation

The principles described above and well-settled law in pharmaceutical and other product liability litigation directly support the relief requested in this motion. Plaintiffs' experts should be precluded from offering "expert" testimony in the following areas.

### 1.      Expert Witness Commentary On Internal Corporate Documents

In the guise of offering expert opinion testimony, plaintiffs' putative experts propose (in varying degrees) to provide subjective commentary about internal AstraZeneca documents given to them by plaintiffs' counsel and to draw negative inferences from them. Courts consistently

have excluded such testimony under Rule 702 because it does not bear on any scientific, technical or other specialized knowledge and jurors are fully capable of reading and drawing inferences or conclusions from documents without expert assistance.  *See, e.g., Rezulin*, 309 F. Supp. 2d at 551 (excluding an expert's "glosses" on a pharmaceutical manufacturer's internal corporate documents as it represented the expert's "simple inferences drawn from uncomplicated facts that serve only to buttress plaintiffs' theory of the case" and "'does no more than counsel for plaintiff will do in argument, *i.e.*, propound a particular interpretation of [defendant]'s conduct'"); *Prempro*, 554 F. Supp. 2d at 886 (excluding as inadmissible expert's impressions of pharmaceutical manufacturer's internal documents shown to her by plaintiff's counsel, which "did not provide…expertise" and "did not 'give the jury the tools they need to look at those documents'").  Because such "testimony – or reading – invade[s] areas that require[ ] no expert assistance, it [i]s inappropriate 'expert' testimony." *Id.*[3]

## 2.    Expert Testimony Regarding State Of Mind, Motives Or Ethics

Drs. Wirshing, Arnett, and Young propose to testify regarding the state of mind (*e.g.* what AstraZeneca supposedly knew and when) or the motives and intent underlying AstraZeneca's actions or those of its employees.  Courts consistently have held such "state of mind" testimony inadmissible under Rule 702.  *See, e.g., Rezulin*, 309 F. Supp. 2d at 547 ("Inferences about the intent or motive of parties or others lie outside the bounds of expert testimony."); *In re Diet Drugs Prods. Liab. Litig.*, 2000 WL 876900, at *9 (E.D. Pa. June 20,

---

[3] *See also United States v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991) (reversing admission of expert testimony consisting of "nothing more than drawing inferences from the evidence that [expert] was no more qualified than the jury to draw"); *Brevard Emergency Servs.*, 2006 WL 2425423, at *6 (excluding expert testimony that "reads, for the most part, like a lawyer's closing argument").

2000) ("question of intent is a classic jury question and not one for experts").  This Court should do the same.

As the *Rezulin* MDL court explained, such opinions "have no basis in any relevant body of knowledge or expertise" and result in plaintiffs' experts "improperly . . . assum[ing] the role of advocates for plaintiffs' case."  309 F. Supp. 2d. at 546.  The "testimony is improper also because it describes 'lay matters which a jury is capable of understanding and deciding without the expert's help.'"  *Id.* (citation omitted); *accord In re Baycol Prods. Liab. Litig.*, 495 F. Supp. 2d 977, 1001 (D. Minn. 2007) (excluding expert testimony "to the extent that he speculates as to Bayer's motive, intent, or state of mind"); *Diet Drugs*, 2001 WL 454586, at *2 (same); *DePaepe v. General Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998) (error to allow expert testimony in product liability case that company failed to add safety feature to "save money" because expert "lacked any scientific basis for an opinion about . . . motives").[4]

### 3.    Expert Testimony Regarding Foreign Regulatory Actions

Drs. Plunkett and Young addressed regulatory actions taken by foreign countries with regard to Seroquel in their reports and depositions.  The other experts have been given documents that relate to this area.  In ruling on *Daubert* motions, courts have held that such testimony is inadmissible for two independent reasons.  First, courts have held that such expert testimony should be excluded because it is irrelevant and would confuse the jury.  As the court held in *Baycol*, "allowing admission of evidence of foreign regulatory actions, in a case that is

---

[4] For similar reasons, courts have routinely barred testimony concerning corporate ethics, *see Rezulin*, 309 F. Supp. 2d at 542-43 ("opinions of plaintiffs' witnesses, however distinguished these individuals may be as physicians and scientists, concerning the ethical obligations of pharmaceutical companies and whether the defendants' conduct was ethical are inadmissible"); *Baycol*, 532 F. Supp. 2d at 1053 (same); *In re Welding Fume Prods. Liab. Litig.*, 2006 WL 4507859, at *21 (N.D. Ohio Aug. 8, 2006) (manufacturer's conduct would be judged against a legal standard -- "not what an ethical corporation 'should have done'"); and testimony drawing legal conclusions.  *Rezulin*, 309 F.Supp.2d at 547.

governed by domestic law, would likely cause jury confusion." *Baycol*, 532 F. Supp. 2d at 1054

(citing *Deviner v. Electrolux Motor, A.B.*, 844 F.2d 769, 771 n.2, 773 (11th Cir. 1988)).   Second,

courts have concluded, without deciding whether such evidence is relevant, that facts regarding

foreign regulatory actions are capable of proof without expert assistance.   As the court explained

in *Rezulin*, facts regarding foreign regulatory actions constitute "lay matter," which does not

qualify as "'scientific, technical or other specialized knowledge.'"   *Rezulin*, 309 F. Supp. 2d at

553.[5]

### 4.     Expert Testimony Regarding Submissions To FDA

Drs. Arnett and Plunkett intend to opine on the content and form of AstraZeneca's

submissions of information to FDA.   Courts have excluded such testimony because witnesses are

not qualified to comment on adherence to FDA regulations and because facts about the

disclosure of information to FDA are within the common understanding of jurors and expert

assistance is unnecessary.[6]

It is well settled "that extensive regulations govern the form and content of clinical data

submissions to FDA."   *Rezulin*, 309 F. Supp. 2d at 549.   It follows, as the *Rezulin* court held, that

"proffered opinions on FDA standards and regulations" by witnesses with no specialized

knowledge in those areas "are inherently unreliable."   *Id.*   As the *Rezulin* court also held, expert

testimony concerning what was or was not disclosed to FDA or the manner in which information

---

[5] AstraZeneca will file a more-detailed motion in limine to exclude all evidence of foreign regulatory actions before trial.   Because some courts have addressed the relevance of such evidence under Rule 702 we have included it in this motion.

[6] To the degree these experts intend to testify that AstraZeneca committed a fraud on FDA, the doctrine of preemption bars the testimony.   *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001); Omnibus Legal Memorandum In Support Of AstraZeneca's Summary Judgment Motions In The Florida Trial Pool "Group One" Cases ("Omnibus Legal Mem.") at 31.   AstraZeneca will file a motion in limine should plaintiffs advance such a claim.

was submitted to FDA also should be excluded for the independent reason that "it constitutes lay matter that the fact finder can understand without the assistance of experts, regardless of [how] much experience the[] witnesses have with clinical trials." *Id.* If admissible, "plaintiffs' counsel may present [such documents] directly to the fact-finder while arguing his or her view as to their significance." *Id.* at 550.

### 5.    Expert Testimony Regarding How Doctors Understood Pharmaceutical Labeling Or Marketing Materials

Drs. Plunkett, Arnett, Abramson, Perry, and Young wish to substitute their own opinions for those of plaintiffs' doctors on their understanding of Seroquel's FDA-approved labeling or how those doctors' prescribing practices were affected by AstraZeneca's marketing. While courts have held that physicians can offer an assessment of the medical accuracy of labeling information, they cannot address how other physicians read labeling or purely regulatory questions about labeling absent appropriate study and experience. Courts repeatedly have excluded such unsupported testimony under Rule 702 on the ground that it is speculative and not the proper subject of expert testimony. In *Rezulin*, the court excluded opinions concerning "the practices of physicians as to reading labels or package inserts and their understandings of the contents of the Rezulin label . . . under Rule 702 as speculative testimony." 309 F. Supp. 2d at 556. The court also excluded, as "similarly speculative," testimony "as to whether physicians would have prescribed Rezulin if different information about Rezulin had been available." *Id.* at 557; *accord Diet Drugs*, 2001 WL 454586, at *18 (such testimony is "purely speculative and not based on scientific knowledge") and at *9 (physician lacked basic knowledge about FDA regulatory structure to offer labeling opinion).

III.    **ARGUMENT**

A.    **Dr. Laura Plunkett**

Dr. Plunkett is a Ph.D toxicologist and pharmacologist.[7]  She is not a medical doctor.[8]  In recent years she has devoted a substantial portion of her professional work to serving as an expert witness for plaintiffs' lawyers in product liability litigation—over 30% of her income comes from this work.[9]  Dr. Plunkett intends to opine that the labeling for Seroquel was deficient.[10]  Dr. Plunkett also indicates that she may address several other issues, including the labeling for Seroquel in foreign countries,[11] and whether the risks of Seroquel outweigh its benefits.[12]  Finally, Dr. Plunkett has been provided a box of documents from AstraZeneca's internal company files—mostly exhibits from depositions of company employees.  While she mentioned only a handful of these documents in her report, and did not include any of them on the list of materials that she reviewed and relies on for her opinions, Dr. Plunkett intends to offer commentary on these documents.[13]

Dr. Plunkett should be barred from addressing these issues.  She lacks the qualifications to offer competent expert testimony in these areas.  In addition, she has followed no discernible methodology in reaching her conclusions -- indeed her opinions constitute no more than her

---

[7] Expert Report of Dr. Laura Plunkett ("Plunkett Report"), at 1, ¶1 (Notice of Filing, filed concurrently herewith ("NF") Tab 1).  Unless otherwise noted, the Exhibits referenced herein are attached to the Notice of Filing.

[8] Deposition of Dr. Laura Plunkett, dated October 2, 2008 and October 21, 2008 ("Plunkett Dep."), at 54:22-55:2 (NF Tab 2).

[9] Plunkett Dep., at 82:19-83:3 (NF Tab 2).

[10] Plunkett Dep., at 179:19-182:8, 274:7-278:9 (NF Tab 2).

[11] Plunkett Dep., at 33:7-34:3, 306:2-307:22 (NF Tab 2).

[12] Plunkett Dep., at 53:2-55:2 (NF Tab 2).

[13] Plunkett Dep., at 37:12-22 (NF Tab 2).

subjective beliefs lacking any expert analysis.  Finally, several aspects of her proposed opinion are not the proper subjects of expert testimony.

### 1.   Dr. Plunkett's Testimony Regarding The Adequacy Of Seroquel Labeling Should Be Excluded

Dr. Plunkett concedes that Seroquel's labeling identified diabetes, hyperglycemia and weight gain as adverse events that had occurred with the product.[14]  Nevertheless, she opines that the label was "confusing," and that the labeling needed to include basic medical information such as risks associated with obesity and the symptoms of diabetes.[15]  She also claims that although metabolic adverse events were contained in the label, she expected AstraZeneca after 1999 to "put[ ] something that the doctor is going to see as up front under the warning section, not . . . something in the adverse action section that is buried."[16]

This Court should prohibit Dr. Plunkett from offering testimony about Seroquel's labeling for numerous reasons.  First, she lacks qualifications to do so—Dr. Plunkett is not a medical doctor.  While her background might enable her to discuss information contained in the pharmacology section of the labeling, she cannot address the safety issues at the heart of this case.  Moreover, as a pharmacologist, Dr. Plunkett has no experience using a label to weigh risk and benefit information for individual patients.[17]

---

[14] Plunkett Dep., at 284:24-285:13 (NF Tab 2).

[15] Plunkett Dep., at 277:17-278:9 (NF Tab 2).

[16] Plunkett Dep., at 280:4-18 (NF Tab 2).

[17] Courts have held that only physicians may offer expert testimony about the adequacy of labeling. *Upjohn Co. v. MacMurdo*, 562 So. 2d 680, 683 (Fla. 1990) ("medical expert [must] testi[fy that] the package insert was insufficient," and the testimony of a "pharmacologist who endeavored to testify what the[ ] terms [in the product insert] meant to physicians" was not "considered probative on this issue") (*citing Dion v. Graduate Hosp. of the Univ. of Pa.*, 520 A.2d 876, 879 (Pa. Super. Ct. 1987)); *Hill v. Squibb & Sons*, 592 P.2d 1383, 1388 (Mont. 1979) (same); *Webster v. Pacesetter. Inc.*, 259 F. Supp. 2d 27, 35, 36 n.10 (D.D.C. 2003) ("The adequacy of the warnings that accompany a medical device must be assessed from the perspective of the physician using the device.").

Second, Dr. Plunkett's opinion reflects only her personal views about how physicians read and understand labels. For example, she concludes that the inclusion of the risk of diabetes, hyperglycemia and weight gain as adverse events was inadequate because physicians may not "understand the implications" of the adverse events section of drug labeling.[18] Dr. Plunkett also suggests that doctors need to see basic medical information such as the "metabolic complications" of weight gain in pharmaceutical labeling.[19] But she admits that she has not undertaken any study or research to verify these claims.[20] Rule 702 plainly bars such speculative testimony. *E.g. Rezulin*, 309 F. Supp. 2d at 555-56.[21]

Because of her lack of qualifications and the subjective nature of her labeling opinions, courts have repeatedly held that Dr. Plunkett cannot testify concerning the labeling of prescription pharmaceutical products. *See, e.g., Arrigale v. Merck & Co., Inc.*, No. JCCP No. 4247, slip op. at 22 (Cal. Super. Ct. L.A. Co. Aug. 1, 2006) ("Dr. Plunkett is not qualified to opine with regard to . . . the adequacy of [Merck's] warnings.");[22] *In re Texas Second Region Baycol Litig.*, No. 0247408, slip op. at 2 (Tex. Dist. Ct. Harris Co. Jan. 28, 2004) (Dr. Plunkett "not qualified under Texas Rules of Evidence 702 to offer opinions regarding the labeling of

---

[18] Plunkett Dep., at 282:1-282:9 (NF Tab 2).

[19] Plunkett Dep., at 281:15-282:9 (NF Tab 2).

[20] Plunkett Dep., at 283:3-8 (NF Tab 2).

[21] Dr. Plunkett has no experience, outside of litigation, assessing and analyzing pharmaceutical labels. Plunkett Dep., at 57:1-59:6 (NF Tab 2). She has never been asked to prepare or assess a pharmaceutical label as a consultant. Plunkett Dep., at 57:13-58:13 (NF Tab 2). She has never assessed whether safety information belonged in the adverse events or warning section of a label. Plunkett Dep., at 63:3-64:9 (NF Tab 2).

[22] Attached hereto as NF Tab 3.

Baycol, [or] the appropriateness or adequacy of any warnings or lack of warnings in Baycol's label").[23]

Finally, even if she were qualified, Dr. Plunkett should be barred from addressing labeling at trial because she failed to examine basic materials that she admits are necessary to assess Seroquel's labeling. Dr. Plunkett testified that it is her practice when asked to offer opinions on labeling to look at key documents in the drug's NDA, such as the summary of safety, and assessments from doctors and scientists at FDA.[24] That did not happen in this case – Dr. Plunkett concedes she did not look at those materials for Seroquel.[25]

### 2. Dr. Plunkett's Commentary On AstraZeneca Internal Corporate Documents Should Be Excluded

Plaintiffs' counsel provided Dr. Plunkett with a small set of AstraZeneca documents,[26] and "reserves the right" to have Dr. Plunkett comment on those documents at trial. Such testimony should be excluded. Federal Rule of Evidence 702 requires that all experts base their opinions on "sufficient facts or data;" therefore, "expert testimony is admissible only if an expert knows of facts which enable him to express a reasonably accurate conclusion." *United States v. City of Miami,* 115 F.3d 870, 873 (11th Cir. 1997) (citations omitted). Contrary to the requirements of the rules of evidence and established case law, Dr. Plunkett did not conduct the requisite full and proper investigation of the facts underlying her opinion, and instead relied exclusively on information "preselected" for her by plaintiffs' counsel. *Crowley v. Chait,* 322 F.

---

[23] Attached hereto as NF Tab 4.

[24] Plunkett Dep., at 100:25-101:10, 103:11-106:13 (NF Tab 2).

[25] Plunkett Dep., at 91:15-23, 94:24-96:8, 104:25-105:22, 111:7-113:2 (NF Tab 2).

[26] Plunkett Dep., at 29:21-30:24 (NF Tab 2). Counsel did not provide Dr. Plunkett with witness depositions that might provide context for the documents.

Supp. 2d 530, 546-47 (D.N.J. 2004).  Opinions based on this type of "spoon-fed" information are routinely excluded by the courts as "simply too unreliable to be trusted." *Id.*

This is exactly the kind of effort to have experts serve as "oathhelpers" that has been consistently rejected by courts in product liability litigation as outside the scope of appropriate expert testimony. *Rezulin*, 309 F. Supp. 2d at 538.  As Judge Wilson explained in the Prempro MDL litigation, "[o]pinion given through the mouth of an expert does not necessarily make it *expert* opinion." 544 F. Supp. 2d at 887 (emphasis in original).  The Court should exclude Dr. Plunkett's testimony concerning AstraZeneca documents.

### 3.   Dr. Plunkett's Testimony Regarding Foreign Regulatory Actions Taken With Respect To Seroquel Should Be Excluded

In her report and deposition, Dr. Plunkett refers to Seroquel labeling changes that took place in other countries.[27]  Dr. Plunkett concedes in her deposition that she lacks experience or expertise concerning foreign regulatory standards.[28]  This requires exclusion of her opinion under Rule 702.  *See e.g.*, *Corwin*, 475 F.3d at 1250.  But, even if her admitted lack of knowledge in this area does not compel preclusion, her testimony concerning foreign regulatory decisions and standards should be excluded because it is irrelevant, *see Baycol*, 532 F. Supp. 2d at 1054, and because it is not the proper subject of expert testimony.  *See Rezulin*, 309 F. Supp. 2d at 553.

### 4.   Dr. Plunkett's Risk-Benefit Testimony Should Be Excluded

Dr. Plunkett's report includes a brief discussion of efficacy data concerning Seroquel and her assertion that safer alternatives to Seroquel exist.[29]  In her deposition she suggested she

---

[27] Plunkett Report, at 13, ¶43 (NF Tab 1); Plunkett Dep., at 33:7-34:3 (NF Tab 2).

[28] Plunkett Dep., at 306:2-307:9 (NF Tab 2).

[29] Plunkett Report, at 9, ¶33 (NF Tab 1).

would address this issue,[30] though she conceded, as she must, that as a pharmacologist she lacks the medical training to serve as a true expert in this area.[31]   In addition, she concedes that she has not reviewed key materials such as the summary of safety included in the Seroquel NDA or FDA reviews of the Seroquel clinical data.[32]

Dr. Plunkett cannot offer these opinions.  Her work as a pharmacologist does not qualify her to assess whether other medications provide a safer alternative to Seroquel for all patients, a subgroup of patients or indeed, for any patients.  Courts have carefully limited *physicians* from providing these complicated judgments in areas unrelated to their medical discipline.  *Rezulin*, 309 F. Supp. 2d at 549; *Diet Drugs*, 2001 WL 454586, at *7.  This limitation applies more forcefully to a *non-physician* like Dr. Plunkett.

Dr. Plunkett also employs an inappropriate standard.  While she admits that Seroquel is effective at treating schizophrenia and bipolar disorder, and that the medication meets FDA approval standards,[33] she nevertheless believes there are "safer alternatives" to Seroquel.[34]  The court in *Rezulin* confronted this very issue – proposed testimony that the risks of an anti-diabetes drug approved by the FDA outweighed the benefits – and found it too speculative.  309 F. Supp. 2d at 560.  This reasoning applies to Dr. Plunkett.

---

[30] Plunkett Dep., at 119:6-22, 123:10-24, 131:23-133:18, 308:14-310:22 (NF Tab 2).

[31] Plunkett Dep., at 135:2-136:17, 138:4-140:8 (NF Tab 2).  Indeed, another federal court excluded Dr. Plunkett's opinions about medical causation based on a similar admission.  *In re Ephedra Prods. Liab. Litig.*, 2006 WL 489741 (S.D.N.Y. Feb. 28, 2006).

[32] Plunkett Dep., at 91:12-23, 95:3-21, 104:25-105:21, 111:7-113:2 (NF Tab 2).

[33] Plunkett Dep., at 123:5-124:4, 128:5-129:14 (NF Tab 2).

[34] Plunkett Dep., at 133:11-135:20, 308:14-310:22 (NF Tab 2).

Finally, Dr. Plunkett has reviewed only a small fraction of the data concerning the efficacy of Seroquel and other medications that treat mental disorders.[35]  As noted above, review of a fraction of the relevant scientific data does not constitute a reliable methodology.

### 5.   Dr. Plunkett's Testimony Regarding The Disclosure Of Facts To The FDA Should Be Excluded

Dr. Plunkett asserted in both her expert report and deposition that she "believe[d]" that AstraZeneca did not provide information to FDA concerning the safety of Seroquel.[36]  She offered no details to support these allegations, stating only that she "believe[d] [she had] documents" to support this claim.[37]  She conceded that she "ha[d]n't seen a document that indicated a dialogue" occurred between AstraZeneca and FDA.[38]  This testimony constitutes impermissible speculation under Rule 702.  *Rezulin*, 309 F. Supp. 2d at 548-49.

### B.   Dr. William C. Wirshing

Dr. Wirshing is a psychiatrist.[39]  He has devoted a considerable part of his career to the treatment of schizophrenia.  For a number of years he taught at the University of California at Los Angeles and worked at the affiliated Veterans Administration Hospital.  After that institution dismissed him in 2006, he moved to an entity called Exodus Recovery, Inc., where he currently works.[40]

---

[35] Plunkett Dep., at 91:15-23, 94:24-95:21, 104:25-105:21, 111:7-113:2 (NF Tab 2).

[36] Plunkett Report, at 13, ¶41 (NF Tab 1); Plunkett Dep., at 275:20-277:16, 284:1-23, 298:4-17 (NF Tab 2).

[37] Plunkett Dep., at 275:20-277:16 (NF Tab 2).

[38] Plunkett Dep., at 277:2-9 (NF Tab 2).

[39] Expert Report of  Dr. William C. Wirshing  ("Wirshing Report"), at 1 (NF Tab 5).

[40] Deposition of Dr. William C. Wirshing, dated September 26, 2008 ("Wirshing Dep."), at 5:24-25, 198:1-4 (NF Tab 6).

While it is far from clear what parts of Dr. Wirshing's report consist of opinions and what parts consist of background, it appears that Dr. Wirshing will offer testimony in four areas unrelated to causation and outside his area of expertise: (1) the adequacy of Seroquel's labeling; (2) commentary on various deposition exhibits; (3) the propriety and impact of AstraZeneca's marketing; and (4) AstraZeneca's state of mind, motives and legal concepts.

Dr. Wirshing's report lacks an explanation of the foundation for many of his opinions. He does not describe any qualifications in the areas related to his opinions, his methodology nor the standards that he employed. Dr. Wirshing may be an experienced psychiatrist who can offer some testimony about mental illness and its treatment, but that does not give him license to stray into the other issues outlined above. As one court has explained, "[m]erely because a person is an expert and can assist the jury to understand discrete issues raised by the parties does not mean he must opine about *every* important issue in the case." *Welding Fumes*, 2006 WL 4507859, at *6 (emphasis in original).

### 1.    Dr. Wirshing's Labeling Testimony Should Be Excluded

Like Dr. Plunkett, Dr. Wirshing admits that the Seroquel labeling identified diabetes and weight gain as adverse events that had occurred with the product.[41] He concedes that the data on weight gain was accurate—challenging only its placement.[42] Dr. Wirshing contends that information concerning weight gain should have appeared in the warning section of the labeling rather than the adverse event section.[43] In addition, Dr. Wirshing offers the view that the

---

[41] Wirshing Dep., at 202:4-13, 245:17-20 (NF Tab 6).

[42] Wirshing Dep., at 218:19-219:10, 231:3-14, 243:6-9 (NF Tab 6).

[43] Wirshing Report, at 7 (NF Tab 5).

current, FDA-imposed class warning about diabetes and hyperglycemia "sucks"[44] and is "laced with generalities, disclaimers and distracting verbiage."[45] He also believes that the labeling should include a specific discussion of the impact of "increases in adiposity" on glucose regulation.[46]

At its root, Dr. Wirshing's proposed testimony regarding labeling concerns the interpretation of FDA's regulations and how physicians read labels rather than an analysis of the accuracy of the information provided. While Dr. Wirshing can assess the medical data in a label, he lacks relevant experience to address the formatting of a pharmaceutical label. He admits that he has never been involved with preparing a drug's label.[47] Further, Dr. Wirshing asserts, without citation, that physicians could not find information in the Seroquel package insert, or understand its meaning.[48] This is exactly the kind of opinion that Rule 702 bars. Courts have found testimony suggesting that physicians do not pay attention to labeling—a broader version of Dr. Wirshing's opinion that physicians do not comprehend information in the adverse event section of labeling—speculative and inadmissible. *Rezulin*, 309 F. Supp. 2d at 555-56.[49]

---

[44] Wirshing Dep., at 221:12-16 (NF Tab 6). Dr. Wirshing adds that the class warning in Seroquel's labeling "does not suck anymore in [Seroquel's] label than it does in everyone else's label." Wirshing Dep., at 221:19-20 (NF Tab 6).

[45] Wirshing Report, at 8 (NF Tab 5).

[46] Wirshing Report, at 8 (NF Tab 5). Dr. Wirshing also criticizes the way the Seroquel labeling treats certain adverse events not at issue in the first round of MDL cases -- the effect of Seroquel on lipids and triglycerides and information about the possibility of addiction. Wirshing Report, at 8, 9 (NF Tab 5). These opinions are not relevant to these cases.

[47] Wirshing Dep., at 223:23-25 (NF Tab 6).

[48] *See, e.g.*, Wirshing Dep., at 221:23-222:19, 231:3-14 (NF Tab 6).

[49] While Dr. Wirshing does not mention foreign labeling in his report, plaintiffs' counsel has given him documents that mention those labels. For the reasons described above, the issue of foreign labeling is not the proper subject of expert testimony, nor is it relevant. *See* pp. 8-9, *supra*.

2.      **Dr. Wirshing's Testimony Regarding AstraZeneca's Marketing Practices Should Be Excluded**

Dr. Wirshing offers his personal reactions to several statements used in marketing materials by AstraZeneca over the eleven years the company has sold Seroquel.  In particular, he challenges the use of certain terms in individual marketing pieces.[50]  More generally, he believes AstraZeneca "oversold" Seroquel's efficacy, though he does not explain the standard he uses or what expertise he employs for making such judgments about marketing.[51]  Dr. Wirshing offers the additional view that AstraZeneca engaged in "indirect" off-label marketing.[52]  He does not define the term but considers the practice "technically within the letter of the law."[53]

Neither in his report nor in his deposition does Dr. Wirshing explain how his career as a psychiatrist has prepared him to address how pharmaceutical companies market their product, or how physicians make prescribing decisions.  Dr. Wirshing did not perform a study about the impact of Seroquel's labeling on physicians.  He did not review more general literature about how physicians read labels or how they make prescribing decisions.[54]  Absent some type of relevant expertise, Dr. Wirshing cannot share his view with the jury.  *See, e.g.*, *Rezulin*, 309 F. Supp. 2d at 549, 556; *Diet Drugs*, 2001 WL 454586, at *18.

In addition, Dr. Wirshing's testimony in this area reflects little more than his guess as to how physicians understood marketing materials and Seroquel's labeling.[55]  Expert testimony

---

[50] Wirshing Report, at 6 (NF Tab 5).

[51] Wirshing Report, at 7 (NF Tab 5).

[52] Wirshing Report, at 9 (NF Tab 5).

[53] Wirshing Report, at 9 (NF Tab 5).

[54] Wirshing Report, Reliance List (NF Tab 5).

[55] Wirshing Dep., at 221:23-222:19, 231:3-14 (NF Tab 6).

purporting to address how physicians read labels and prescribe medications is inadmissible. *Rezulin*, 309 F. Supp. 2d at 556; *Diet Drugs*, 2000 WL 876900 at *12.[56]

### 3.  Dr. Wirshing's Commentary On AstraZeneca Internal Corporate Documents Should Be Excluded

Dr. Wirshing's report does not cite internal company materials. Plaintiffs' counsel, however, has given him a four-volume chronological collection of materials made up in significant part of exhibits from AstraZeneca company depositions.[57] This counsel-selected collection does not approach a complete, or even representative, record of AstraZeneca documents concerning Seroquel.

Dr. Wirshing should not be allowed to tell a story about Seroquel based solely on a lawyer-selected document collection. As Judge Kaplan explained in *Rezulin*, a "'narrative of the case [delivered by an expert] which a juror is equally capable of constructing'" or a "commentary of what happened" does not meet the standards for admissibility. *Rezulin*, 309 F. Supp. 2d at 551 (citations omitted). Or as Judge Wilson explained in *Prempro*, "[h]aving an expert witness simply summarize a document (which is just as easily summarized by a jury) with a tilt favoring a litigant, without more, does not amount to expert testimony." 544 F. Supp. 2d at 887.

---

[56] Dr. Wirshing expresses his opinions in this area as "beliefs." Wirshing Report, at 9 (NF Tab 5). This by definition makes his opinions speculative. *Rezulin*, 309 F. Supp. 2d at 543 n.27 (rejecting testimony as speculative because witness' report states expert "believes" conduct was unethical).

[57] Wirshing Dep., at 9:8-15, 287:10-13 (NF Tab 6). In addition, Dr. Wirshing's testimony is irrelevant absent evidence that plaintiffs' doctors reviewed and relied on AstraZeneca marketing materials. *See generally* Omnibus Legal Mem. at 48-50.

###### 4.    Dr. Wirshing's Testimony On The State Of Mind, Intent Or Motives Of AstraZeneca Or Its Employees Should Be Excluded

Having been shown a set of internal documents cherry-picked by plaintiffs' counsel, Dr. Wirshing proposes to offer various negative opinions about AstraZeneca's corporate ethics, its motives and intentions, and whether AstraZeneca's actions meet certain legal thresholds.[58]  Dr. Wirshing's judgments about ethics and state of mind constitute no more than the articulation of his personal beliefs.  Courts have stricken such speculative testimony, *e.g. Baycol*, 532 F. Supp. 2d at 1053-54; *Welding Fumes*, 2006 WL 4507859, at *20-21; *Rezulin*, 309 F. Supp. 2d at 546-47; *Diet Drugs*, 2000 WL 876900, at *9, and this Court should prohibit Dr. Wirshing's testimony as well.

### C.    Dr. Donna Arnett

Dr. Arnett is a Ph.D epidemiologist with a focus on chronic disease and pharmacogenetics.[59]  She is not a medical doctor.[60] Dr. Arnett intends to offer four central non-causation opinions, that:  (1) AstraZeneca "could have made the data presentation clearer within the [NDA,] and in scientific publications;" (2) the risks of Seroquel therapy outweigh its benefits; (3) AstraZeneca engaged in inappropriate marketing of Seroquel; and (4) AstraZeneca improperly withheld funding for studies.[61]  In addition, Dr. Arnett has been provided with thousands of internal AstraZeneca documents -- a collection described in a 293-page exhibit to

---

[58] *See*, *e.g.*, Wirshing Report, at 6- 9 (NF Tab 5).

[59] Expert Report of Dr. Donna Arnett ("Arnett Report"), at 1 (NF Tab 7); *see also* Deposition of Dr. Donna Arnett, dated October 6, 2008 and October 7, 2008 ("Arnett Deposition"), at 8:19-9:4 (NF Tab 8).

[60] Arnett Dep., at 47:3-4 (NF Tab 8).

[61] Arnett Report, Section C (NF Tab 7); *see also* Arnett Dep., at 245:19-246:12 (AstraZeneca misled FDA in how it formatted its NDA in 1997), 80:14-81:5, 260:7-13 (NF Tab 8).

her report.[62]  While the proposed opinions described above have little to do with epidemiology, Dr. Arnett states that she "developed these opinions utilizing the normal methodology that I exercise as an epidemiologist in the ordinary scope of my practice."[63]

Much like Dr. Plunkett, Dr. Arnett lacks the experience and qualifications to give these opinions.  In addition, she fails to employ appropriate standards or any stated methodology.  Her opinions consist of nothing more than her personal views.

### 1.     Dr. Arnett's Risk-Benefit Testimony Should Be Excluded

Dr. Arnett believes that Seroquel is "unsafe."[64]  As with Dr. Plunkett, the fact that she is not a physician means she lacks the qualifications required to address this issue.  In support of her risk-benefit views, Dr. Arnett cites one internal AstraZeneca e-mail from 1997 that discussed the "competitive opportunity" for Seroquel at that time, the drop-out rate in pre-1997 clinical trials for Seroquel and one study that compared Seroquel to several other antipsychotic medications.[65]  Dr. Arnett reached her conclusions regarding Seroquel without having looked at FDA's full assessment of Seroquel,[66] all of the clinical trials for the product,[67] any of the submissions for approval of supplemental indications, any Seroquel labeling other than the current labeling, or the labeling for any other antipsychotic medication.[68]  For this reason, she

---

[62]  Arnett Dep., at 83:8-13, 83:23-25 (NF Tab 8).

[63]  Arnett Report, Section C (NF Tab 7).

[64]  Arnett Dep., at 81:2-5, 82:1-16 (NF Tab 8).

[65]  Arnett Report, Section E (NF Tab 7).

[66]  Arnett Dep., at 67:14-18, 204:24-205:5, 241:22-24 (NF Tab 8).

[67]  Arnett Dep., at 125:12-23 (NF Tab 8).

[68]  Arnett Dep., at 119:12-18, 244:1-5, 256:7-9 (NF Tab 8).

admitted that she "ha[sn't] reviewed efficacy data," and that her "focus has been exclusively on the safety data."[69]  Thus, as to one half of the risk-benefit equation, Dr. Arnett is a blank slate.

Dr. Arnett's opinion was not formed through a methodology that this Court can sanction. Her admission that she did not consider the benefits of Seroquel, combined with her failure to look at basic materials, precludes her testimony here.[70]

### 2.    Dr. Arnett's Testimony Regarding The Formatting Of The Seroquel NDA Should Be Excluded

Dr. Arnett has reviewed summary documents included in AstraZeneca's 1997 NDA submission.[71]  Based on this review, she offers the opinion that AstraZeneca did not properly present the data with respect to Seroquel's metabolic risks.[72]  In particular, Dr. Arnett criticizes the emphasis put on metabolic issues in a safety summary, the use of medians rather than means in the description of weight gain experienced with Seroquel, and alleges that AstraZeneca "buried [data] in [a] mountain of documentation" in its NDA.[73]

In *Rezulin*, the plaintiffs designated several experts to offer similar attacks on the NDA submission for that drug.  The Court rejected that testimony.  First, the court concluded that because the experts did not have sufficient knowledge of FDA standards governing NDA submissions, the testimony lacked reliability.  309 F. Supp. 2d at 549-50.  Second, the court held

---

[69] Arnett Dep., at 258:20-25 (NF Tab 8).

[70] Dr. Arnett's testimony suggested that she might go even further and offer an opinion on the adequacy of Seroquel labeling.  Arnett Dep., at 59:13-60:3 (NF Tab 8).  She ultimately testified that she did not intend to offer such an opinion "at this time."  Arnett Dep., at 245:1-4 (NF Tab 8).  That was a wise concession in light of the fact that she is not a medical doctor and admitted that she has never "done any work relating to labeling of a prescription drug" or "drafted a label for a prescription drug."  Arnett Dep., at 57:8-13 (NF Tab 8).

[71] Arnett Dep., at 87:9-19, 91:7-24 (NF Tab 8).

[72] Arnett Report, Section C (NF Tab 7); Arnett Dep., at 79:8-22, 239:4-240:2, 245:19-246:12 (NF Tab 8).

[73] Arnett Dep., at 246:2-3 (NF Tab 8); Arnett Report, Section C.1.1 (NF Tab 7).

that testimony based on inferences drawn from the submission would not assist the jury because jurors themselves could interpret the materials.  *Id.*

The holding of Rezulin applies to Dr. Arnett's testimony here.  Like the Rezulin experts, Dr. Arnett has no relevant experience.  She has <u>never</u> prepared materials for inclusion in an NDA.[74]  Indeed, in a deposition in another matter, she admitted she has not done <u>any</u> "work with regard to the approval of a pharmaceutical" and has never done research on a pharmaceutical prior to its approval.[75]  Dr. Arnett also conceded that she had not looked at regulations governing the submission of NDAs because she "has no need to."[76]  Nor does she mention in her report or her deposition the regulations and guidances that govern the formatting of NDAs.[77]  Nor does she consider herself an expert in FDA's review process.[78]  Thus, as in *Rezulin*, this opinion is unreliable.

Further, like the Rezulin experts, Dr. Arnett offers nothing more than inferences drawn from her review of a portion of the NDA submissions.  *See Rezulin*, 309 F. Supp. 2d at 549-51.  This testimony will not assist the jury, which can read and review this material on their own.

Finally, Dr. Arnett's testimony is objectionable because she failed to follow an appropriate methodology.  Dr. Arnett has not reviewed the initial labeling for Seroquel or FDA's

---

[74] Arnett Dep., at 57:5-7 (NF Tab 8).

[75] Vioxx Deposition of Dr. Donna Arnett, dated September 6, 2006 ("Arnett 9/06/06 Vioxx Dep."), at 85:11-14, 86:11-20 (NF Tab 9).

[76] Arnett 9/06/06 Vioxx Dep., at 122:13-17 (NF Tab 9).

[77] *E.g.,* Guideline for the Format and Content of the Clinical and Statistical Sections of an Application (July 1988) (*available at* http://www.fda.gov/cder/guidance/statnda.pdf); Reviewer Guidance: Conducting a Clinical Safety Review of a New Product Application and Preparing a Report on the Review (Feb. 2005) (*available at* http://www.fda.gov/cder/guidance/3580fnl.pdf).

[78] Vioxx Deposition of Dr. Donna Arnett, dated October 20, 2006 ("Arnett 10/20/06 Vioxx Dep."), at 110:9-12 (NF Tab 9).

reviews of the NDA.[79]  Thus, Dr. Arnett has no idea whether FDA ever criticized AstraZeneca's reporting of data on metabolic parameters.[80]  Dr. Arnett's failure to look at basic materials reflects the complete lack of a methodology underpinning her work.  Under Rule 702, this fatally compromises her opinion.  *See, e.g., Joiner*, 522 U.S. at 146.

### 3.  Dr. Arnett's Commentary On AstraZeneca Internal Corporate Documents Should Be Excluded

Plaintiffs' counsel has provided Dr. Arnett with thousands of internal AstraZeneca documents.[81]  Dr. Arnett admitted in her deposition that she has looked at only a fraction of this mass of materials.[82]  She has made no effort to understand the context of the materials she is looking at.  She has not reviewed any corporate depositions, nor has she looked at any materials related to those documents that she has discussed in her report.[83]  But, with respect to the few she has looked at, Dr. Arnett suggested in her report that she will offer opinions about such matters as the document's "tone."[84]

This kind of testimony does not involve the application of expert knowledge.  Indeed, Dr. Arnett candidly admits that she does not review or rely on corporate e-mails and documents as part of her work as an epidemiologist,[85] and that the jury can figure out the meaning of e-mails for itself.[86]  Moreover, as in the cases of Drs. Plunkett and Wirshing, the fact that she based her

---

[79] Arnett Dep., at 241:22-24 (never read FDA medical officer reviews); 258:20-259:7 (NF Tab 8).

[80] *See* Arnett Dep., at 119:5-8 (NF Tab 8).

[81] Arnett Dep., at 83:23-25 (NF Tab 8).

[82] Arnett Dep., at 83:23-84:2, 86:1-4, 87:8-19 (NF Tab 8).

[83] *E.g.,* Arnett Dep., at 92:7-8, 261:23-262:5 (NF Tab 8).

[84] Arnett Dep., at 261:10-11 (the "tone of the e-mail is quite negative") (NF Tab 8).

[85] Arnett Dep., at 92:23-93:5 (NF Tab 8).

[86] Arnett Dep., at 77:10-24 (NF Tab 8).

opinions exclusively on information "preselected" for her by plaintiffs' counsel, requires their exclusion.[87]   The Court should not allow Dr. Arnett to offer her interpretation of corporate documents.  *See Rezulin*, 309 F. Supp. 2d at 538; *Prempro*, 544 F. Supp. 2d at 887.

### 4.   Dr. Arnett's Testimony Regarding Marketing Should Be Excluded

Dr. Arnett is not an expert in the marketing of prescription drugs.[88]   She has never done any work relating to pharmaceutical advertisement.[89]   Nor has she reviewed all of the materials used in marketing Seroquel.[90]   Nor does her curriculum vitae reflect a single publication addressing marketing of pharmaceuticals.[91]   Nor does her list of reliance materials include a single article on this topic.[92]   Nevertheless, on the basis of a handful of documents, she intends to offer the opinion that AstraZeneca undertook "a concerted effort to promote Seroquel as safe and metabolically neutral . . . ."[93]   Dr. Arnett's opinions lack reliability or an appropriate foundation. She does not possess qualifications to address marketing of pharmaceuticals.  She proposes to give the jury her interpretation of a handful of AstraZeneca documents.  The courts are clear that the jury can interpret these documents without the assistance of an epidemiologist.  *See, e.g.*, *Rezulin*, 309 F. Supp. 2d at 554; *Diet Drugs*, 2000 WL 876900, at *9; *Benson*, 941 F.2d at 604 (where expert testimony is "nothing more than drawing inferences from the evidence," it is

---

[87] *See* pp. 6-7, 14-15, 21, *supra.*

[88] Arnett Dep., at 60:12-14 (NF Tab 8).

[89] Arnett 9/06/06 Vioxx Dep., at 85:18-21 (NF Tab 9).

[90] Arnett Dep., at 263:24-264:12 (NF Tab 8).

[91] Arnett Report, Curriculum Vitae (NF Tab 7).

[92] Arnett Report, Reference List (NF Tab 7).

[93] Arnett Report, Section F (NF Tab 7).

properly excluded).[94]

### 5.    Dr. Arnett's Testimony Regarding AstraZeneca's Alleged Failure To Fund Studies Should Be Excluded

Dr. Arnett argues in her report that AstraZeneca withheld support for studies that she believes would have shown metabolic risks associated with Seroquel.[95]   Dr. Arnett proposes to discuss a handful of AstraZeneca documents that discuss the funding of a small number of particular studies.[96]   Dr. Arnett does not know the basic facts relating to what studies AstraZeneca did fund.[97]   She has not identified any experience with internal company policies for funding studies.   Dr. Arnett does not articulate a methodology by which she came to her opinions concerning the funding of studies.   Accordingly, her testimony is unreliable and should be excluded.

The court in *Rezulin* addressed similar testimony claiming that pharmaceutical companies suppressed research.   309 F. Supp. 2d at 554.   Like Dr. Arnett, the witness in *Rezulin* only reviewed a selection of company documents and the court concluded that such testimony represented argument "based on non-technical evidence" that invaded the province of the jury. *Id.*; *see also Baycol*, 532 F. Supp. 2d at 1067 (finding such testimony improper "legal argument").   The reasoning of *Rezulin* and *Baycol* applies here and the Court should bar Dr. Arnett's opinions concerning AstraZeneca's funding decisions.

---

[94] In addition, as noted above, this testimony is irrelevant absent evidence that plaintiffs' doctors reviewed and relied on AstraZeneca marketing materials.  *See* Omnibus Legal Mem. at 48-50.

[95] Arnett Report, Section C (NF Tab 7).

[96] Arnett Report, Section G (NF Tab 7); Arnett Dep., at 267:12-18, 268:1-11, 270:7-16 (NF Tab 8).

[97] Arnett Dep., at 266:16-267:5 (Dr. Arnett does not know how many studies AstraZeneca performed or funded) (NF Tab 8).

### D.    Dr. Israel Jack Abramson

Dr. Abramson is a medical doctor, engaged in the practice of general and forensic psychiatry.[98]  Since the 1990s, he has devoted a substantial portion of his professional work to serving as an expert witness for plaintiff's lawyers in medical malpractice and product liability litigation.[99]  "[C]lose to a third" of his income stems from his work as a plaintiff's expert.[100]  He advertises his services as an expert and works with expert witness brokers.[101]

Dr. Abramson intends to offer one opinion relevant to this motion:  Seroquel's labeling did not provide plaintiffs' doctors with sufficient information to permit them to make an appropriate risk-benefit analysis.[102]  Dr. Abramson also indicates that he may address several other issues in his testimony, including commenting on the intent and conduct of AstraZeneca employees.[103]  Finally, in preparing his report, Dr. Abramson relied on myriad documents from AstraZeneca's company files—mostly emails from company employees—supplied entirely by plaintiffs' attorneys.[104]

This Court should bar Dr. Abramson from addressing these issues.  He lacks the qualifications to offer competent expert testimony in all of these areas, has followed no

---

[98] Expert Report of Dr. Israel Jack Abramson ("Abramson Report"), at 1 (NF Tab 10).  Dr. Abramson has been designated as an expert by the following plaintiffs:  Eileen McAlexander and David Haller.  His proposed testimony in each of the cases, which is the subject of this motion, is substantially similar.

[99] Deposition of Dr. Israel Jack Abramson, dated October 7, 2008 and October 8, 2008 ("Abramson Dep."), at 54:2-7, 57:4-15 (Notice of Filing filed in Support of AstraZeneca's Motion to Exclude the Specific-Causation Testimony of Plaintiffs' Case-Specific Causation Witnesses ("SCNF"), Tab 6).

[100] Abramson Dep., at 61:14-17 (SCNF Tab 6).

[101] Abramson Dep., at 60:9-63:24 (SCNF Tab 6).

[102] Abramson Dep., at 91:11-92:10, 255:5-17, 320:9-22 (SCNF Tab 6).

[103] Abramson Dep., at 134:4-24 (SCNF Tab 6).

[104] Abramson Dep., at 6:7-8:23, 19:5-20:20 (SCNF Tab 6).

methodology in reaching his conclusions, and offers no more than his subjective beliefs.  Finally,

several aspects of his proposed opinion fall outside the scope of appropriate expert testimony.

       **1.**    **Dr. Abramson's Testimony Regarding The Adequacy Of Seroquel Labeling And How Physicians' Weigh Risk-Benefit Data Should Be Excluded**

With respect to Seroquel's labeling, Dr. Abramson concedes that diabetes,

hyperglycemia, and weight gain were identified as adverse events occurring incident to Seroquel

therapy, but asserts that AstraZeneca "should have strengthened its [labeling] warnings" before it

did.[105]  He also indicated that he disagrees with the placement of metabolic side effects in the

adverse events section because, although the "side effects were in the label," he believes they

"were just hidden among [an]other universe of side effects."[106]  Dr. Abramson however,

disclaimed any knowledge about when a drug label should be changed under FDA

regulations.[107]

Dr. Abramson should not be allowed to testify about Seroquel's labeling because he

offers a personal opinion barred by Rule 702.  Dr. Abramson's view is that information

regarding diabetes and weight gain should have been in the warning section of the labeling

sooner -- a purely regulatory issue.[108]  During his deposition, he fully acknowledged that he

lacked even rudimentary knowledge of the proper labeling standards, never having "read the

---

[105] Abramson Dep., at 131:15-24, 144:2-145:6 (SCNF Tab 6).  Dr. Abramson believes that hyperglycemia and diabetes should have been listed in the warnings section of the label prior to 2004.  Abramson Dep., at 131:15-24 (SCNF Tab 6).

[106] Abramson Dep., at 120:25-121:16, 131:15-24, 144:2-145:6 (SCNF Tab 6).

[107] Abramson Dep., at 129:23-130:19 (SCNF Tab 6).

[108] Abramson Dep., at 144:2-145:7 (SCNF Tab 6).

federal regulations that govern the labeling of prescription medication."[109]  Dr. Abramson has

never "participated in the drafting of a label for a medicine," has "never advised a

pharmaceutical company on the labeling of its medicine," and has never "been involved in

making decisions about changing [drug] labels."[110]  Finally, Dr. Abramson conceded that FDA

determines the content and placement of information that is contained in prescription medication

labeling -- the heart of his criticism of Seroquel's labeling.[111]

Dr. Abramson's report also contains a discussion of how a risk-benefit assessment should

be performed by clinicians to determine the appropriateness of prescribing Seroquel.[112]  Dr.

Abramson intends to opine on how additional or different information would have affected the

risk-benefit analyses and prescribing decisions of plaintiffs' doctors.[113]

Dr. Abramson's speculative testimony about the information available to plaintiffs'

doctors and how such information may have impacted their prescribing decisions is not

admissible expert opinion.  While he admits that Seroquel is effective at treating schizophrenia,

bipolar disorder and psychoses,[114] he nevertheless believes that other drugs might have better

side effect and efficacy profiles.  The court in *Rezulin* determined that this exact testimony was

---

[109] Abramson Dep., at 141:25-142:3 (SCNF Tab 6).

[110] Abramson Dep., at 141:19-24 (SCNF Tab 6).

[111] Abramson Dep., at 142:4-9 (SCNF Tab 6).  Dr. Abramson suggests in his deposition, but not his report, that he may rely on foreign regulatory events to support his labeling opinion.  Abramson Dep., at 100:10-101:13 (SCNF Tab 6).  For the reasons described above, such events are irrelevant and not the proper subject of expert testimony.  *See* pp. 8-9, *supra*.  In addition, Dr. Abramson conceded that changes to foreign labels were governed by a "whole different system of regulation" and that there may be "changes that are appropriate in [a foreign nation] that are not appropriate in the US."  Abramson Dep., at 154:16-22 (SCNF Tab 6).

[112] Abramson Report, at 3 (NF Tab 10); Abramson Dep., at 121:9-122:15 (SCNF Tab 6).

[113] Abramson Report, at 4 (NF Tab 10).

[114] Abramson Dep., at 146:9-24 (SCNF Tab 6).

too speculative for admission.  309 F. Supp. 2d at 557; *accord Diet Drugs*, 2001 WL 454586, at

*18.

### 2.     Dr. Abramson's Commentary On AstraZeneca Internal Corporate Documents Should Be Excluded

Plaintiffs' counsel provided Dr. Abramson with a selected group of internal AstraZeneca

corporate documents.[115]  Although he indicated in his deposition that he would offer his views

on these documents,[116] he did not address them in his report.

Dr. Abramson's possible commentary should be barred.  His report and deposition are

devoid of any evidence that he will apply his expertise as a psychiatrist to these materials.  He

did not review deposition transcripts of AstraZeneca company employees where witnesses

addressed the documents he intends to comment on.[117]  Dr. Abramson concedes that this failure

makes it "possible" that he would interpret a document incorrectly.[118]  Furthermore, although he

intends to offer testimony about the propriety of AstraZeneca's conduct, Dr. Abramson

recognizes that he does not "know the context" of internal company documents and cannot know

the "intention of the author[s]" because he did not review any witness depositions.[119]  He has

done no more than interpret certain documents in a vacuum, having ignored all witness

testimony, and therefore lacks the most basic foundation to begin discussing these documents.

This testimony falls outside the scope of appropriate expert testimony.  *Rezulin*, 309 F. Supp. 2d

at 538; *Prempro*, 544 F. Supp. 2d at 880, 887.

---

[115] Abramson Dep., at 7:5-9:4 (SCNF Tab 6).

[116] Abramson Dep., at 142:17-143:21 (SCNF Tab 6).

[117] Abramson Dep., at 142:17-143:21 (SCNF Tab 6).

[118] Abramson Dep., at 142:17-143:21 (SCNF Tab 6).

[119] Abramson Dep., at 142:17-143:21 (SCNF Tab 6).

F.     Dr. Bruce D. Perry

Dr. Perry is a psychiatrist who is board certified in general adult and child and adolescent

psychiatry, and is a pharmacologist.[120]  Dr. Perry intends to offer the view that because of the

inadequacy of the Seroquel labeling and AstraZeneca's marketing practices, plaintiffs' doctors

lacked the information that would have permitted them to make an appropriate risk-benefit

analysis.[121]  As with their other experts, plaintiffs' counsel has given Dr. Perry a collection of

AstraZeneca company documents for him to discuss at trial.[122]

1.     Dr. Perry's Commentary On AstraZeneca Internal Corporate
       Documents Should Be Excluded

Plaintiffs' counsel provided Dr. Perry with a compact disk containing, among other

things, "depositions of several drug representatives from AstraZeneca" and "a number of e-mails

regarding internal memorandum about weight gain."[123]  Dr. Perry intends to testify, among other

things, that "from what I saw from the internal documents from AstraZeneca that weight gain

was a significant issue."[124]

Dr. Perry should not be permitted to give that testimony or any similar testimony

consisting of his commentary on internal AstraZeneca documents because he brings no

scientific, technical or specialized knowledge to that area.  *Prempro*, 554 F. Supp. 2d at 886;

*Rezulin*, 309 F. Supp. 2d at 551.  Jurors are capable of drawing inferences from AstraZeneca

---

[120] Expert Report of Dr. Bruce D. Perry, ("Perry Report"), at 1 (NF Tab 11).  Dr. Perry has been
designated as an expert by the following plaintiffs:  Janice Burns, Connie Curley and Linda Guinn.  His
proposed testimony in each of the cases, which is the subject of this motion, is substantially similar.

[121] Deposition of Dr. Bruce D. Perry, dated October 8, 2008 and October 9, 2008 ("Perry Dep."), at 71:2-
72:16, 73:1-5 (SCNF Tab 5); *see also* Perry Report, at 3 (NF Tab 11).

[122] Perry Dep., at 9:10-10:3, 10:7-23 (SCNF Tab 5).

[123] Perry Dep., at 10:7-8 (SCNF Tab 5).

[124] Perry Dep., at 49:11-13 (SCNF Tab 5); *see id.*, at 126:16-127:4 (SCNF Tab 5).

documents without the assistance of Dr. Perry or any other expert.  Indeed, jurors are in a better

position to do that because they will see all the evidence in its full context, which Dr. Perry

admitted he was unable to do.  In fact, Dr. Perry testified that it is important in arriving at his

conclusions "to look at a fair representation of the material and not look at just material

supporting one side as opposed to another."[125]  But he conceded that was not the case with

regard to AstraZeneca's internal documents because he reviewed only what counsel provided

him, which he acknowledged "wasn't a fair representation."[126]

### 2.    Dr. Perry's Labeling Testimony Should Be Excluded

According to Dr. Perry, the Seroquel "labeling is softer than it should be."[127]  In his view,

with respect to the 2004 Seroquel labeling, which referred to diabetes in the warning section, "a

black box warning would have been more appropriate" because "the regular prescribing

physician is probably not going to be as aware of the potential risks even though they're

articulated to some degree in [the warning] section."[128]

Dr. Perry conceded that FDA determines the content and placement of information in

prescription medication labeling[129], admitting, "I'm not an expert on the FDA or their

labeling."[130]  Indeed, he has never read any of the FDA regulations relating to labeling of

---

[125] Perry Dep., at 48:18-22 (SCNF Tab 5).

[126] Perry Dep., at 82:11-17 (SCNF Tab 5).

[127] Perry Dep., at 163:12-13 (SCNF Tab 5).

[128] Perry Dep., at 169:6-7 (SCNF Tab 5).

[129]  Dr. Perry does not challenge FDA's repeated determinations that Seroquel is safe and effective for use as indicated in its label.  Perry Dep., at 164:18-166:11 (SCNF Tab 5).  Nor can Dr. Perry identify any data concerning weight gain or glucose regulation in AstraZeneca's possession that was not submitted to FDA. Perry Dep., at 127:5-10 (SCNF Tab 5).

[130] Perry Dep., at 170:23-24 (SCNF Tab 5); *see* Perry Dep., at 81:3-5, 348:10-349:4 (SCNF Tab 5).

prescription medications in the United States.[131]  Further, his testimony about how physicians

read and understand warnings in labels is speculative and unsupported by study.  Accordingly,

Dr. Perry is not qualified to opine on the adequacy of Seroquel labeling.

### 3.    Dr. Perry's Marketing Testimony Should Be Excluded

Dr. Perry intends to comment on AstraZeneca's marketing and promotional practices

before the jury.[132]  He admitted, however, that he has no experience with the marketing of

pharmaceuticals.[133]  Thus, he lacks relevant experience.  In addition, Dr. Perry's testimony

concerning AstraZeneca's marketing practices would not assist the jury to determine a fact in

issue because, as Dr. Perry admitted, plaintiffs' doctors testified that AstraZeneca's sales

representatives did not influence their prescribing decisions.[134]  Dr. Perry further admitted that

plaintiffs' doctors did not even see the only marketing piece that Dr. Perry identified as a

"misrepresentation."[135]  Accordingly, Dr. Perry's marketing testimony lacks relevance.  *Daubert*,

509 U.S. at 597.

### 4.    Dr. Perry's Testimony Regarding The Risk-Benefit Analyses And Prescribing Decisions Of Plaintiffs' Doctors Should Be Excluded

Dr. Perry also intends to opine on how additional or different information would have

affected the risk-benefit analyses and prescribing decisions of plaintiffs' doctors.[136]  But, Dr.

Perry's opinions regarding the information about which plaintiffs' doctors were aware is based

on "what I presume was [their] ability to have access to the information about those relationships

---

[131] Perry Dep., at 348:10-13 (SCNF Tab 5).

[132] Perry Report at 2, 3 (NF Tab 11); Perry Dep., at 157:11-23 (SCNF Tab 5).

[133] Perry Dep., at 80:8-81:2 (SCNF Tab 5).

[134] Perry Dep., at 162:15-22, 260:8-15, 342:7-15 (SCNF Tab 5).

[135] Perry Dep., at 162:15-22 (SCNF Tab 5).

[136] Perry Report, at 3 (SCNF Tab 5).

based upon, you know, the labeling and available data."[137]  Dr. Perry admitted that the

depositions of plaintiffs' doctors "speak to what they knew and understood at the time."[138]  He

further conceded that each of plaintiffs' doctors knew that Seroquel might cause weight gain

when they prescribed it for their respective patients and that they would make the same

prescribing decision today based on all the information now available concerning Seroquel.[139]

Dr. Perry also admitted that he cannot say whether plaintiffs' doctors would have changed their

prescribing decisions if a warning about diabetes had appeared in a black box on the label  --

"I'm only speculating" because the prescribing doctor "would really be the person to be able to

answer that question."[140]  Such testimony is inadmissible.  *Rezulin*, 309 F. Supp. 2d at 557; *Diet*

*Drugs*, 2001 WL 454586, at *18.

### G.    Dr. Brian Tulloch

Dr. Tulloch is a physician and practicing endocrinologist.[141]  He agreed to act as an

expert in the Seroquel litigation because he is "duck hunting friends" with an attorney for the

plaintiffs.[142]  In his report, Dr. Tulloch opined that AstraZeneca did not provide physicians with

accurate information concerning risks of diabetes, weight and elevated triglycerides.[143]  In

---

[137] Perry Dep., at 250:6-8 (SCNF Tab 5).

[138] Perry Dep., at 73:9-11 (SCNF Tab 5).

[139] Perry Dep., at 158:21-159:6, 250:9-17, 251:16-252:13, 350:19-351:6 (SCNF Tab 5); *see generally* Omnibus Legal Mem. at 48-50.

[140] Perry Dep., at 350:1-21, 354:9-10 (SCNF Tab 5).

[141] Expert Report of Dr. Brian Tulloch ("Tulloch Report"), at 1 (NF Tab 12).

[142] Deposition of Dr. Brian Tulloch, dated October 2, 2008, October 8, 2008, October 9, 2008, October 15, 2008, and October 16, 2008 ("Tulloch Dep."), at 12:4-14 (SCNF Tab 1).  Dr. Tulloch has been designated as an expert by the following plaintiffs:  Linda Whittington, Richard Unger, David Haller, and Eileen McAlexander.  His proposed testimony in each of the cases, which is the subject of this motion, is substantially similar.

[143] Tulloch Report, at 9 (NF Tab 12).

addition, a reliance list of counsel-selected corporate documents has been attached to Dr. Tulloch's reports and Dr. Tulloch suggested in his report that he would testify about some of the materials.[144]   Based on his own admissions at his deposition, Dr. Tulloch cannot address labeling or corporate documents.

### 1.  Dr. Tulloch's Labeling Opinions Should Be Excluded

In his deposition, Dr. Tulloch indicated that he would not offer any labeling opinions.[145] He withdrew this topic of testimony only after admitting that he had no expertise with respect to pharmaceutical labeling or FDA standards.[146]   He also conceded he had never drafted or commented on a pharmaceutical label.[147]   And, like the experts on labeling that plaintiffs do intend to proffer, he admitted that his methodology for assessing labeling involved the application of his "personal view."[148]

### 2.  Dr. Tulloch's Commentary On AstraZeneca Internal Corporate Documents Should Be Excluded

Dr. Tulloch's report includes a 17-page materials list, describing, for the most part, AstraZeneca internal documents.[149]   Counsel provided him with compact disks containing, among other things, medical chronologies for each of the plaintiffs and internal AstraZeneca company documents.[150]   Dr. Tulloch suggested in his report that he had relied on internal

---

[144] Tulloch Report, at 9, Reference Exhibit List (NF Tab 12).

[145] Tulloch Dep., at 670:15-17 (SCNF Tab 1).

[146] Tulloch Dep., at 631:2-6 ("I suspect that the Court will be addressed by folk[s] who are experts in that field."); 631:7-25 (SCNF Tab 1).

[147] Tulloch Dep., at 631:19-25 (SCNF Tab 1).

[148] Tulloch Dep., at 632:8 (SCNF Tab 1).

[149] Tulloch Report, Reference List (NF Tab 12); *see also* Tulloch Dep., at 16:10-14 (SCNF Tab 1).

[150] Tulloch Dep., at 17:2-8, 18:2-5 (SCNF Tab 1).

company documents in reaching his conclusions about labeling -- specifically that AstraZeneca "had evidence that Seroquel was associated with glucose dysregulation in 1999 and 2000."[151] But in his deposition, Dr. Tulloch admitted that he had not looked at any documents but instead simply relied on an oral presentation from a paralegal employed by plaintiffs' counsel.[152] Indeed, the statement in the report was taken word for word from the paralegal.[153]  Of the entire collection provided by counsel, Dr. Tulloch admitted that he had only looked at one document -- a 1997 e-mail that provided the sole basis for a representation in his report concerning AstraZeneca's knowledge of an association between weight gain and Seroquel.[154]  In light of this record, and the inherent unreliability of expert testimony based solely on counsel-selected documents and a paralegal's narrative, the Court should bar Dr. Tulloch from discussing <u>any</u> corporate documents on his reliance list.[155]

**H.     Dr. Mitchell Alan Young**

Dr. Young is a psychiatrist.[156]  He offers general opinions about the treatment of mental disorders that AstraZeneca does not challenge.  Dr. Young also intends to address a number of issues outside of his area of true expertise including:  (1) the adequacy of Seroquel's labeling; (2) the impact of non-U.S. labeling of Seroquel; (3) AstraZeneca's marketing practices; and (4) AstraZeneca's motives and intent in taking certain actions.  Similar to plaintiffs' other experts,

---

[151] Tulloch Report, at 9 (NF Tab 12).

[152] Tulloch Dep., at 622:18-623:3, 628:7-25, 629:8-630:10 (SCNF Tab 1).

[153] Tulloch Dep., at 628:7-25, 629:8-630:10 (SCNF Tab 1).  Dr. Tulloch did not ask to see any evidence to support the statement, though he promised he would look at it before trial.  *Id.*

[154] Tulloch Dep., at 621:6-21 (SCNF Tab 1).

[155] *See* pp. 6-7, 14-15, 21, *supra.*

[156] Dr. Young has been designated as an expert by the following plaintiffs:  Richard Unger and Linda Whittington.  His proposed testimony in each of these cases, which is the subject of this motion, is substantially similar.

counsel provided Dr. Young with a collection of deposition exhibits and he gives his impressions of some of those documents in his report and deposition.  Dr. Young's opinions are similar to those of plaintiffs' other witnesses and the Court should strike them.

### 1.    Dr. Young's Labeling Testimony Should Be Excluded

Dr. Young asserts that AstraZeneca "buried" the issue of diabetes in Seroquel's labeling.[157]  He draws support for this opinion from the fact that labeling in the Netherlands and Japan differed from that used in the United States after 2002.[158]  Dr. Young's criticism does not appear to extend to the FDA-imposed class labeling -- he concedes that the dissemination of that labeling through a letter to healthcare providers by AstraZeneca did not constitute "burying" of the information about the risk.[159]

Dr. Young's opinions represent no more than personal impressions about the formatting of labeling.  He admitted in his deposition that he is not an expert on (1) labeling; (2) FDA regulations; (3) the specific standards governing the inclusion of safety information in the warning section of a U.S. label; (4) foreign labeling generally; (5) labeling standards in Japan; and (6) labeling standards applicable to Dutch regulators.[160]  Dr. Young also concedes that regulators at FDA reviewed more information about Seroquel than he did; that he has never drafted a pharmaceutical label; and that he does not know the information upon which the Japanese and Dutch regulators relied in making their decisions.[161]  Nevertheless, Dr. Young

---

[157] Expert Report of Dr. Mitchell Alan Young ("Young Report"), at 4, 9-10 (NF Tab 13).

[158] Young Report at 6-7 (NF Tab 13); *see also* Deposition of Dr. Mitchell Alan Young, dated October 13, 2008 ("Young Dep."), at 103:5-20, 146:11-147:14 (SCNF Tab 7).

[159] Young Dep., at 66:21-67:3, 67:9-12 (SCNF Tab 7).

[160] Young Dep., at 44:3-6, 36:5-7, 54:5-55:10, 56:1-20, 103:9-13, 147:15-18 (SCNF Tab 7).

[161] Young Dep., at 148:8-12, 44:9-11, 103:14-16, 147:12-14 (SCNF Tab 7).

disagrees with FDA's decision to include information about the risk of diabetes, hyperglycemia and weight gain in the adverse event section of the Seroquel labeling between 1997 and 2003.[162]

As with plaintiffs' other experts, Dr. Young expresses a view on the quintessentially regulatory question of where in a drug's labeling a certain safety issue should be discussed even though he lacks experience or expertise in that area.  Rule 702 bars such an unsupported opinion. In addition, like several of plaintiffs' other experts, Dr. Young's view that a disclosure in the adverse event section of the labeling is not "readily accessible" to physicians,[163] represents a speculative, inadmissible opinion concerning how physicians read labels.  *Rezulin*, 309 F. Supp. 2d at 555-57.  Finally, Dr. Young's use of foreign regulatory decisions as support for his labeling opinions suffers from the same flaws as Dr. Plunkett's similar approach.[164]

### 2.   Dr. Young's Testimony Regarding Marketing And Prescribing Decisions Of Plaintiffs' Doctors Should Be Excluded

Dr. Young plans to testify broadly about AstraZeneca's marketing activities and their impact on prescribing physicians.  Like Drs. Wirshing and Perry, he criticizes the use of the terms "improvement without impairment" and "weight neutral" in individual marketing pieces.[165]  He asserts, without citation or explanation, that he believes that the "primary and more likely than not most persuasive source of information [about a drug for physicians] is 'pharmaceutical sales representative detailing' . . . ."[166]  Dr. Young plans to offer the opinion that "sales reps for AstraZeneca failed to warn physicians of the risks of significant weight gain,

---

[162] Young Dep., at 65:18-66:12 (SCNF Tab 7).

[163] Young Report at 9-10 (NF Tab 13).

[164] *See* p. 15, *supra.*

[165] Young Report, at 4, 7 (NF Tab 13).

[166] Young Report, at 10 (NF Tab 13).

dyslipidemia and diabetes . . . ."[167]   Indeed, Dr. Young plans to testify that "[i]t is more likely than not given the marketing and branding strategy of the company" that AstraZeneca misled Plaintiff Unger's physician even though Dr. Young admitted that he has no knowledge of anything said to that physician.[168]

Dr. Young concedes that he is not an expert on pharmaceutical marketing but suggests that he has become an expert in this field because he has received pharmaceutical marketing materials.[169]   Although claiming expertise in pharmaceutical marketing, during his deposition Dr. Young admitted that he knew nothing about the division of FDA that regulates marketing of pharmaceutical companies.[170]   His report reflects no more than his personal impressions of a handful of AstraZeneca marketing documents.   He describes no methodology by which he has reached his conclusions, nor the standard against which he assesses the materials he reviewed. His list of materials reviewed includes a smattering of documents relating to marketing selected by counsel.   He has not written or reviewed an article in the area of pharmaceutical marketing.[171] Thus, Dr. Young's views on marketing represent no more than inadmissible "subjective speculation that masquerades as scientific knowledge." *Glastetter v. Novartis Pharm. Corp.*, 252 F.3d 986, 989 (8th Cir. 2001).

As to marketing to the prescribing physicians here, Dr. Young could remember no details at his deposition.[172]   Even if he had mastered the record he adds nothing to it.   The jury will

---

[167] Young Report, at 10 (NF Tab 13).

[168] Young Dep., at 87:6-21 (SCNF Tab 7).

[169] Young Dep., at 59:10-15, 60:13-19 (SCNF Tab 7).

[170] Young Dep., at 60:20-61:1 (SCNF Tab 7).

[171] Young Report, Attachments A, C (NF Tab 13).

[172] Young Dep., at 87:2-13 (SCNF Tab 7).

serve as the ultimate arbiter of those facts.  Dr. Young's opinion about the reasons that witnesses

in this case acted as they did is no more admissible than the testimony of a mind reader.[173]

### 3.   Dr. Young's Commentary On AstraZeneca Internal Corporate Documents Should Be Excluded

Plaintiffs' counsel has provided Dr. Young with a collection of internal AstraZeneca

documents identified on eight pages of his 18-page reliance list.[174]  Dr. Young only looked at a

handful of those documents.[175]  Based on this small subset of materials, Dr. Young apparently

plans to tell a narrative of AstraZeneca's marketing and labeling practices over time.[176]  As in

*Rezulin*, where the court barred a physician from giving a narrative history of that drug based on

internal documents, the proposed testimony here undermines the role of the jury.  309 F. Supp.

2d at 538.  Plaintiffs' counsel can seek to have documents reflecting AstraZeneca marketing

activities admitted into evidence and then argue the significance of that evidence to the jury.  In

addition, as discussed above with respect to Drs. Plunkett, Wirshing, and Arnett, this testimony

should be excluded as inherently unreliable because Dr. Young did not conduct the requisite full

and proper investigation of the facts underlying his opinion, instead relying exclusively on

information "preselected" for him by plaintiffs' counsel.[177]  Dr. Young adds nothing to the

process of interpreting these documents.  Indeed, he concedes he brings no expertise to the

interpretation of corporate documents.[178]

---

[173] *See* Omnibus Legal Mem. at 48-50.

[174] Young Report, Attachment C (NF Tab 13).

[175] Young Dep., at 30:14-31:5, 32:9-21 (SCNF Tab 7).

[176] Young Report, at 7, 9-10 (NF Tab 13).

[177] *See* pp. 6-7, 14-15, 21, *supra.*

[178] Young Dep., at 61:2-10 (SCNF Tab 7).

**4.    Dr. Young's Testimony Regarding The State Of Mind Or
Intent Of AstraZeneca Or Its Employees Should Be Excluded**

Dr. Young's report includes several references to the intent of AstraZeneca or its employees.  For example, he notes that from "the "get go it was AstraZeneca['s] . . . intention to enter the CNS market and become number one in its class."[179]  Dr. Young intends to offer these views even though he recognizes that he is not an expert on "company conduct."[180]  For the reasons described above with respect to Dr. Wirshing, Rule 702 and well-settled precedent bar the admission of this testimony.[181]

---

[179] Young Report, at 9; *see also* Young Report, at 8 (AstraZeneca's intent in using certain marketing materials); Young Report, at 10 (internal documents reveal AstraZeneca's "attitude") (NF Tab 13).

[180] Young Dep., at 61:2-6 (SCNF Tab 7).

[181] *See* pp. 7-8, 22, *supra.*

## CONCLUSION

For the reasons set forth above, this Court should grant AstraZeneca's motion to exclude

non-causation expert testimony under Federal Rules of Evidence 702, 401 and 403.


DATED:  November 3, 2008              Respectfully submitted,

                                     */s/ William Hoffman*
                                     William Hoffman
                                     KAYE SCHOLER LLP
                                     901 15th St NW # 1100
                                     Washington, DC 20005
                                     Telephone: (202) 682-3550
                                     Facsimile: (202) 682-3580
                                     whoffman@kayescholer.com

                                     */s/ Chris S. Coutroulis*
                                     Chris S. Coutroulis (Fla. Bar No. 300705)
                                     Robert L. Ciotti (Fla. Bar No. 333141)
                                     CARLTON FIELDS, P.A.
                                     Corporate Center Three at International Plaza
                                     4221 W. Boy Scout Blvd.
                                     Tampa, FL  22607
                                     Telephone: (813) 223-7000
                                     Facsimile: (813) 229-4133
                                     ccoutroulis@carltonfields.com
                                     rciotti@cartlonfields.com

                                     *Counsel for AstraZeneca LP and AstraZeneca*
                                     *Pharmaceuticals LP*

## CERTIFICATE OF SERVICE

I hereby certify that, on November 3, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system through which all participating parties are deemed served.  I further certify that, by using the CM/ECF, the foregoing has been served on plaintiffs' liaison counsel, who is charged with serving any non-CM/ECF participants on the attached Service List.

/s/Chris S. Coutroulis _____

## SERVICE LIST

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No. 1769**

| | |
|---|---|
| Paul J. Pennock, Esq.<br>Michael E. Pederson, Esq.<br>Weitz & Luxenberg, P.C.<br>180 Maiden Lane - 17th Floor<br>New York, NY 10038<br>Telephone: (212) 558-5500<br>Ppennock@weitzlux.com<br>MPederson@weitzlux.com<br>***Plaintiffs' Lead Counsel*** | Camp Bailey, Esq.<br>Michael W. Perrin, Esq.<br>Fletcher Trammell, Esq.<br>Bailey Perrin Bailey LLP<br>The Lyric Centre<br>440 Louisiana, Suite 2100<br>Houston, TX 77002<br>Telephone: (713) 425-7240<br>cbailey@bpblaw.com<br>mperrin@bpblaw.com<br>***Plaintiffs' Lead Counsel*** |
| Larry Roth, Esq.<br>Law Offices of Larry M. Roth, P.A.<br>Post Office Box 547637<br>Orlando, FL  32854-7637<br>Telephone: (407) 872-2239<br>LROTH@roth-law.com<br>***Plaintiffs' Liaison Counsel*** | Tommy Fibich, Esq.<br>Fibich, Hampton & Leebron, L.L.P.<br>1401 McKinney, Suite 1800<br>Five Houston Center<br>Houston, TX 77010<br>Telephone: (713) 751-0025<br>tfibich@fhl-law.com |
| Matthew F. Pawa, Esq.<br>Law Offices of Matthew F. Pawa, P.C.<br>1280 Centre St., Suite 230<br>Newton Centre, MA 02459<br>Telephone: (617) 641-9550<br>Mp@pawalaw.com | Robert L. Salim, Esq.<br>Robert L. Salim Attorney at Law<br>PO Box 2069<br>Natchitoches, LA 71457-2069<br>Telephone: (318) 352-5999<br>robertsalim@cp-tel.net |
| Keith M. Jensen, Esq.<br>Jensen, Belew & Gonzalez, PLLC<br>1024 North Main<br>Fort Worth, TX 76106<br>Telephone: (817) 334-0762<br>kj@kjensenlaw.com | Scott Allen, Esq.<br>Cruse, Scott, Henderson & Allen, L.L.P.<br>2777 Allen Parkway, 7th Floor<br>Houston, Texas 77019<br>Telephone: (713) 650-6600<br>sallen@crusescott.com |
| Matthew E. Lundy, Esq.<br>Lundy & Davis, LLP<br>333 North Sam Houston Parkway East<br>Suite 375<br>Houston, TX 77060<br>Telephone: (281) 272-0797<br>mlundy@lundydavis.com | W. Todd Harvey, Esq.<br>E. Ashley Cranford, Esq.<br>Whatley Drake & Callas<br>2001 Park Place North, Suite 1000<br>Birmingham, AL 35203<br>Telephone: (205) 328-9576<br>ACranford@wdklaw.com |

| | |
|---|---|
| Robert L. Ciotti, Esq.<br>Carlton Fields, P.A.<br>4221 W. Boy Scout Boulevard<br>Suite 1000<br>Tampa, FL 33607-5736<br>Telephone: (813) 223-7000<br>rciotti@carltonfields.com<br>**Attorney for Defendants AstraZeneca**<br>**Pharmaceuticals, LP, and AstraZeneca LP** | Gregory P. Forney, Esq.<br>Shaffer Lombardo Shurin<br>911 Main Street, Suite 2000<br>Kansas City, MO 64105<br>Telephone: (816) 931-0500<br>gforney@sls-law.com<br>rbish@sls-law.com<br>**Attorney for Defendant,**<br>**Marguerite Devon French** |
| Randy Niemeyer<br>22442 Pike 309<br>Bowling Green, MO 63334-5209<br>**Pro Se** | Eric B. Milliken, Esq.<br>3 Sir Barton Ct.<br>Newark, DE 19702<br>**Pro Se** |
| Catherine Solomon<br>3100 N.E. 83<br>Gladstone, MO 64119<br>**Pro Se** | Louisiana Wholesale Drug Co. Inc.<br>C/O Gayle R. White<br>Registered Agent<br>Highway 167N<br>Sunset, LA 70584<br>**Pro Se** |
| Aaron C. Johnson, Esq.<br>Summers & Johnson<br>717 Thomas<br>Weston, MO 64098<br>Telephone: (816) 640-9940<br>firm@summersandjohnson.com | Robert A. Schwartz, Esq.<br>Bailey & Galyen<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744<br>bschwartz@galyen.com |
| Todd S. Hageman, Esq.<br>Simon and Passanante, PC<br>701 Market St., Suite 1450<br>St. Louis, MO 63101<br>Telephone: (314) 241-2929<br>thageman@spstl-law.com | Mark P. Robinson, Jr., Esq.<br>Robinson, Calcagnie & Robinson<br>620 Newport Center Drive, 7th Floor<br>Newport Beach, CA 92660<br>Telephone: (949) 720-1288<br>mrobinson@robinson-pilaw.com |
| Thomas F. Campion, Esq.<br>Heidi E. Hilgendorff, Esq.<br>Drinker Biddle & Reath, LLP<br>500 Campus Drive<br>Florham Park, New Jersey 07932-1047<br>Telephone: (973) 360-1100<br>Thomas.Campion@dbr.com<br>Heidi.Hilgendorff@dbr.com<br>**Attorneys for Defendants Janssen**<br>**Pharmaceutical Products and Johnson &**<br>**Johnson Co.** | Michael Davis, Esq.<br>James Mizgala, Esq.<br>Sidley Austin LLP<br>One South Dearborn<br>Chicago, IL 60603<br>Telephone: (312) 853-7731<br>mdavis@sidley.com<br>jmizgala@sidley.com<br>**Attorneys for Defendants AstraZeneca LP**<br>**and AstraZeneca Pharmaceuticals, LP** |

| | |
|---|---|
| Elizabeth Raines, Esq.<br>Baker, Sterchi, Cowden & Rice, LLC<br>2400 Pershing Road, Suite 500<br>Kansas City, MO 64108<br>Telephone: (816) 471-2121<br>raines@bscr-law.com | Timothy Reese Balducci, Esq.<br>The Langston Law Firm, PA<br>P.O. Box 787<br>100 South Main Street<br>Booneville, MS 38829-0787<br>Telephone: (662) 728-3138<br>tbalducci@langstonlaw.com |
| Kenneth W. Bean, Esq.<br>Sandberg, Phoenix & von Gontard<br>One City Centre<br>15th Floor<br>St. Louis, MO 63101-1880<br>Telephone: (314) 231-3332<br>kbean@spvg.com<br>***Attorney for Defendant Dr. Asif Habib*** | John Driscoll, Esq.<br>Brown & Crouppen, PC<br>720 Olive St.<br>St. Louis, MO 63101<br>Telephone: (314) 421-0216<br>Jdriscoll@brownandcrouppen.com<br>asmith@brownandcrouppen.com<br>blape@brownandcrouppen.com |
| Aaron K. Dickey, Esq.<br>Goldenberg and Heller, PC<br>P.O. Box 959<br>2227 S. State Road 157<br>Edwardsville, IL 62025<br>Telephone: (618) 650-7107<br>aaron@ghalaw.com | Matthew J. Hamilton, Esq.<br>Pepper Hamilton<br>3000 Two Logan Square<br>18th & Arch Street<br>Philadelphia, PA 19103<br>Telephone: (215) 981-4000<br>hamiltonm@pepperlaw.com |
| Justin Witkin, Esq.<br>Ken Smith, Esq.<br>Aylstock, Witkin, Kreis & Overholtz<br>803 N. Palafox St.<br>Pensacola, FL 32501<br>Telephone: (850) 916-7450<br>Jwitkin@AWS-LAW.com<br>ablankenship@aws-law.com<br>ksmith@aws-law.com<br>noverholtz@aws-law.com | David P. Matthews, Esq.<br>Lizy Santiago, Esq.<br>Matthews & Associates<br>2905 Sackett Street<br>Houston, TX 77098<br>Telephone: (713) 222-8080<br>dmatthews@thematthewslawfirm.com<br>lsantiago@thematthewslawfirm.com<br>msalazar@thematthewslawfirm.com |
| Howard Nations<br>Lori A. Siler<br>Howard L. Nations Attorney At Law<br>4515 Yoakum Blvd.<br>Houston, TX 77006-5895<br>Telephone: (713) 807-8400<br>nations@howardnations.com | Mary B. Cotton<br>John D. Giddens, P.A.<br>226 North President Street<br>P.O. Box 22546<br>Jackson, MS 39225-2546<br>Telephone:  (601) 355-2022<br>betsy@law-inc.com |
| Salvatore M. Machi<br>Ted Machi & Associates PC<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744 | Jona R. Hefner, Esq.<br>3441 W. Memorial, Suite 4<br>Oklahoma City, OK 73134-7000<br>Telephone: (405) 286-3000<br>attorneyokc@hotmail.com |

3

| | |
|---|---|
| David Dickens<br>Miller & Associates<br>105 North Alfred Street<br>Alexandria, VA 22314-3010<br>(703) 519-8080<br>ddickens@doctoratlaw.com | Pete Schneider, Esq.<br>Grady, Schneider & Newman, L.L.P.<br>801 Congress, 4th Floor<br>Houston, TX 77002<br>(713) 228-2200<br>pschneider@gsnlaw.com |
| Fred T. Magaziner<br>Marjorie Shiekman<br>A. Elizabeth Balakhani<br>Shane T. Prince<br>Eben S. Flaster<br>DECHERT LLP<br>Cira Centre<br>2929 Arch Street<br>Philadelphia, PA 19103<br>(215) 994-4000<br>fred.magaziner@dechert.com<br>shane.prince@dechert.com<br>marjorie.shiekman@dechert.com<br>eben.flaster@dechert.com<br>elizabeth.balakhani@dechert.com | Lawrence J. Gornick, Esq.<br>William A. Levin, Esq.<br>Dennis J. Canty, Esq.<br>Levin Simes Kaiser & Gornick LLP<br>44 Montgomery Street, 36th Floor<br>San Francisco, CA 94104<br>Telephone: (415) 646-7160<br>lgornick@lskg-law.com<br>dcanty@lskg-law.com<br>lsimes@levins-law.com<br>jkaiser@lskg-law.com<br>echarley@lskg-law.com<br>ddecarli@lskg-law.com<br>bsund@lskg-law.com<br>astavrakaras@lskg-law.com |
| Scott Burdine, Esq.<br>Hagans Burdine Montgomery<br>Rustay & Winchester, P.C.<br>3200 Travis, Fourth Floor<br>Houston, TX 77006<br>Telephone: (713) 222-2700<br>sburdine@hagans-law.com | Lowell Finson, Esq.<br>Phillips & Associates<br>3030 North 3rd Street<br>Suite 1100<br>Phoenix, AZ 85012<br>(602) 258-8900<br>lowellf@phillipslaw.ws |
| Gale D. Pearson, Esq.<br>Stephen J. Randall, Esq.<br>Pearson, Randall & Schumacher, P.A.<br>Fifth Street Towers, Suite 1025<br>100 South 5th Street<br>Minneapolis, MN 55402<br>(612) 767-7500<br>attorneys@outtech.com | Robert H. Shultz<br>Heyl, Roster<br>103 West Vandalia Street<br>P.O. Box 467<br>Edwardsville, IL 62025<br>(618) 656-4646<br>rshultz@hrva.com<br>bwallace@hrva.com |
| Ellen R. Serbin<br>Perona, Langer, Beck, Lalande & Serbin<br>300 San Antonio Drive<br>Long Beach, CA 90807-0948<br>(562) 426-6155<br>davidhwang@plblaw.com | Scott Armstrong<br>1719 West Main Street<br>Suite 201<br>Rapid City, SD 57702<br>(605) 399-3994<br>Scottarmstrong1235@earthlink.net |

| Linda S. Svitak | James J. Freebery |
|---|---|
| Faegre & Benson, LLP | McCarter & English, LLP |
| 90 South 7th Street, Suite 2200 | 919 N. Market Street, 18th Floor |
| Minneapolis, MN  55402-3901 | Wilmington, DE  19801 |
| (612) 766-7000 | (973) 622-4444 |
| lsvitak@faegre.com | jfreebery@mccarter.com |
| wjohnson@faegre.com | tpearson@mccarter.com |
| Richard D. Hailey | B. Andrew List |
| Ramey & Hailey | Clark, Perdue, Arnold & Scott |
| 3891 Eagle Creek Parkway | 471 East Broad Street, Suite 1400 |
| Suite C | Columbus, OH  43215 |
| Indianapolis, IN  46254 | (614) 469-1400 |
| (317)299-0400 | alist@cpaslaw.com |
| rhailey@sprynet.com | lcollins@cpaslaw.com |

5