| 226 | Tamara | Priest | WA |
|---|---|---|---|
| 227 | David W | Pruden, Jr | MN |
| 228 | Tammie | Purcell | MN |
| 229 | Emily | Quinones-Sanchez | PR |
| 230 | Rochelle | Rainey | NM |
| 231 | Benjamin | Rainwater | MN |
| 232 | Lindsay | Read | WA |
| 233 | Joseph | Replogle | IA |
| 234 | Jakob | Richards | ID |
| 235 | Gussie | Richardson Jr. | WA |
| 236 | Nyla | Richert | MN |
| 237 | Earline | Riley | IL |
| 238 | Merlenet | Riley | CA |
| 239 | Mary | Robinson | FL |
| 240 | Anthony | Rodgers | MO |
| 241 | Kevin | Rohde | ND |
| 242 | Bernadette | Rolling | MN |
| 243 | Maria | Rosa | FL |
| 244 | Tiena | Rose | FL |
| 245 | Maryann | Roy | NV |
| 246 | Jesse | Runner | FL |
| 247 | William | Sarmiento | FL |
| 248 | Yolande | Sarnol | MI |
| 249 | Michael Paul | Schapiro | FL |
| 250 | Renda | Scheiber | MN |
| 251 | Wanda | Schell | MN |
| 252 | James | Schillaci | MN |
| 253 | Carolyn | Schmidt | MN |
| 254 | Bret | Schneider | WA |
| 255 | Debra | Schroeder | MN |
| 256 | Michel | Schroeter | FL |
| 257 | Anthony | Schwartz | MN |
| 258 | Joyce | Semenuk | FL |
| 259 | Diane | Semlijatschenko | FL |
| 260 | Troy | Sigmundik | MN |
| 261 | Troy | Sigmundik | MN |
| 262 | Brittney | Smith | WA |
| 263 | Darnette | Smith | FL |
| 264 | Maria | Smith | CA |
| 265 | Theresa | Smith | WA |
| 266 | Leon | Sotnikow | CA |
| 267 | Gary | Spaulding | ID |
| 268 | Cheri | Sperry | FL |
| 269 | Pamela | Stafford | WA |
| 270 | Craig | Stein | MN |
| 271 | Shirley | Stevens | FL |
| 272 | Kelly | Stine | WA |

11

Case 1:06-cv-10743-NG    Document 1-1    Filed 04/2006    Page 12 of 22

| 273 | Jessamy | Stoudt | FL |
|-----|---------|--------|-----|
| 274 | Jessica | Sundquist | MN |
| 275 | Michael | Sweeney | MN |
| 276 | Pearly | Tackett | KY |
| 277 | Joseph | Taylor | OH |
| 278 | Carlos | Taylor, III | WA |
| 279 | Cassandra | Tellez | MN |
| 280 | Leslie | Thomas | FL |
| 281 | Richard | Thornton | WV |
| 282 | Julien | Timmerman | FL |
| 283 | Judy | Turner | WA |
| 284 | Nancy | Valdez | NM |
| 285 | Angela | Van Hauter | NV |
| 286 | Genevieve | Velarde | WA |
| 287 | Gary | Vincent | OR |
| 288 | Jennifer | Waite | WA |
| 289 | Lance | Warren | FL |
| 290 | James | Warriner | WI |
| 291 | Carol | Washington | WV |
| 292 | Brad | Watkins | MT |
| 293 | Lee | Wendland | MN |
| 294 | Charles | West | FL |
| 295 | Noreen | West | WA |
| 296 | Rhunette | White | FL |
| 297 | Austina | Whitner | MN |
| 298 | Linda | Whittington | FL |
| 299 | Davina | Wilcox | TX |
| 300 | Vincent | Williams | FL |
| 301 | Kerry | Wilson | MO |
| 302 | Ingemar | Woods | WA |
| 303 | Cally | Wressell | WA |
| 304 | Crystal | Wrightinton | GA |
| 305 | Allen | Young | MN |
| 306 | Gilbert | Young | FL |
| 307 | Douglas | Zappa | WI |

**B.    DEFENDANTS**

3.    Defendant **ASTRAZENECA LP**, is a company organized and existing under the laws of the State of Delaware with its principal place of business at 50 Otis Street, Westborough, MA 01581-4500. At all material times herein, this Defendant has conducted business and advertised, marketed, promoted, sold and/or distributed Seroquel in the State of Massachusetts.

Case 1:06-cv-1█████3-NG      Document 1-1      Filed 04███/2006      Page 13 of 22

This Defendant may be served with process of this Court upon its registered agent for service in Massachusetts, to wit:  CT Corporation System, 101 Federal Street, Boston, MA 02110.

4.      Defendant **ASTRAZENECA PHARMACEUTICALS LP,** is the general partner of AstraZeneca LP, and is a company organized and existing under the laws of the State of Delaware with its principal place of business in Delaware.  At all material times herein, this Defendant has conducted business and advertised, marketed, promoted, sold and/or distributed Seroquel in the State of Massachusetts.  This Defendant may be served with process of this Court upon its registered agent for service in Massachusetts, to wit:  CT Corporation System, 101 Federal Street, Boston, MA 02110.

5.      Defendant **KBI SUB INC.,** is the limited partner of AstraZeneca LP, and is a company organized and existing under the laws of the State of Delaware with its principal place of business in New Jersey.  At all material times herein, this Defendant has conducted business and advertised, marketed, promoted, sold and/or distributed Seroquel in the State of Massachusetts.  This Defendants may be served with process of this Court pursuant to M.G.L. 156D § 15.10, by serving the Massachusetts Secretary of State, Corporations Division, who shall then mail the summons and complaint via CM/RRR to Defendants' proper address at: KBI SUB Inc., c/o Merck & Co., Inc., One Merck Drive, Whitehouse Station, New Jersey 08889-0100.

6.      Defendant **ASTRAZENECA AB,** is the general partner of AstraZeneca Pharmaceuticals LP, and is a foreign company with its principal place of business at SE-151 85, Södertälje, Sweden.  At all material times herein, this Defendant has conducted business and advertised, marketed, promoted, sold and/or distributed Seroquel in the State of Massachusetts. This Defendant may be served with process via Registered, Return Receipt Requested, International Mail to its principal place of business pursuant to Articles 10(a) and 15 of the

Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters..

7.    Defendant **ASTRA U.S.A., INC.**, is the limited partner of AstraZeneca Pharmaceuticals LP, and is a company organized and existing under the laws of the State of New York with its principal place of business at 128 Sidney Street, Cambridge, MA 02139.  At all material times herein, this Defendant has conducted business and advertised, marketed, promoted, sold and/or distributed Seroquel in the State of Massachusetts.  This Defendant may be served with process of this Court pursuant to M.G.L. 156D § 15.10, by serving the Massachusetts Secretary of State, Corporations Division, who shall then mail the summons and complaint via CM/RRR to Defendants' proper address at: Astra U.S.A., Inc., 1800 Concord Pike, Wilmington, DE 19850-5437.

8.    Defendant **ASTRAZENECA R&D BOSTON**, is a company organized and existing under the laws of the State of Delaware with its principal place of business at 35 Gatehouse Drive, Waltham, MA 02451.  At all material times herein, this Defendant has conducted business and advertised, marketed, promoted, sold and/or distributed Seroquel in the State of Massachusetts.  This Defendant may be served with process of this Court upon its registered agent for service in Massachusetts, to wit:  CT Corporation System, 101 Federal Street, Boston, MA 02110.

9.    Defendant **ASTRAZENECA R&D WILMINGTON**, is a company organized and existing under the laws of the State of Delaware with its principal place of business in Delaware. At all material times herein, this Defendant has conducted business and advertised, marketed, promoted, sold and/or distributed Seroquel in the State of Massachusetts.  This Defendants may be served with process of this Court pursuant to M.G.L. 156D § 15.10, by serving the

Massachusetts Secretary of State, Corporations Division, who shall then mail the summons and complaint via CM/RRR to Defendants' proper address at: AstraZeneca R&D Wilmington, 1800 Concord Pike, Wilmington, DE 19850-5437.

10.    Defendant **ASTRAZENECA PLC**, is the ultimate parent company of all Defendants, and is a foreign company with its principal place of business at 15 Stanhope Gate, London, W1K 1LN, England, United Kingdom.  This Defendant's principal place of business in the United States is located at 35 Gatehouse Drive, Waltham, MA 02451.  At all material times herein, this Defendant has conducted business and advertised, marketed, promoted, sold and/or distributed Seroquel in the State of Massachusetts.  This Defendant may be served with process via Registered, Return Receipt Requested, International Mail to its principal place of business pursuant to Articles 10(a) and 15 of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters.

11.    These companies have acted together and in concert to cause Plaintiffs' damages, and shall be hereinafter referred to collectively as "Defendants."

### III.    JURISDICTION & VENUE

12.    The Court has jurisdiction over this lawsuit under 28 U.S.C. §1332(a)(1) because all Plaintiffs are citizens of different states from all Defendants, and the amount in controversy exceeds $75,000, excluding interest and costs.  This Federal Court sitting in diversity may exercise personal jurisdiction over Defendants under the Massachusetts long-arm statute, which permits jurisdiction over a person to the full extent of the due process clause of the United States Constitution.  Venue is proper in this Court under 28 U.S.C. §1391(a)(1) because all Defendants "reside" in this judicial district as that term is defined in 28 U.S.C. §1391(c) and other law, under 28 U.S.C. §1391(a)(2) in that a substantial part of the events or omissions giving rise to these

claims arose in this judicial district, and/or, under 28 U.S.C. §1391(a)(3) because there is no district in which the action may otherwise be brought and at least one Defendant is subject to personal jurisdiction in this district.

## IV.   FACTS

13.   At all times relevant herein, Defendants were in the business of designing, testing, monitoring, manufacturing, labeling, advertising, marketing, promoting, selling and distributing pharmaceuticals, including Seroquel, for use by the mainstream public, including Plaintiffs.

14.   Seroquel is among a group of drugs known as "atypical antipsychotics" or "second generation antipsychotics," and was initially approved in September 1997 by the U.S. Food and Drug Administration (hereinafter the "FDA").

15.   The initial indication for Seroquel approved by the FDA was solely for treatment of adults with schizophrenia, a relatively rare condition that affects less than one percent of the population of the United States.

16.   In January 2004, Defendants received FDA approval to market Seroquel for the short-term treatment of acute manic episodes associated with bipolar I disorder.

17.   Like schizophrenia, bipolar 1 disorder is relatively rare, also affecting less than one percent of the population of the United States.

18.   Despite its limited approval, and relatively small indicated target population, in 2005, Seroquel had become the thirteenth-best selling drug in the United States, and has passed Zyprexa and Risperdal as the highest selling antipsychotic in the United States. Seroquel's worldwide sales in 1998, its first full year on the market were a modest $63 million. According to Defendants' 2005 Annual Report, worldwide Seroquel sales exceeded $2.76 billion, which made Seroquel Defendants' second highest selling drug behind only Nexium at $4.63 billion.

19.  Critical to this blockbuster success was Defendants' aggressive marketing of Seroquel, which consisted chiefly of overstating the drug's uses (including massive off-label promotion), while understating and consciously concealing its life-threatening side effects.

20.  Medical literature dating back as far as the 1950s, demonstrated that Seroquel, like other atypical antipsychotics had the potential to cause diabetes, diabetes-related injuries (e.g. severe weight gain, hyperglycemia, diabetic ketoacidosis), pancreatitis, cardiovascular complications, and other severe adverse effects. Defendants' own pre-clinical studies regarding Seroquel confirmed this to Defendants. Despite this knowledge, Defendants never attempted to provide an adequate warning label until they were finally forced to do so by the FDA.

21.  Shortly after Seroquel's product launch and first widespread usage, the number of adverse event reports involving diabetes-related illnesses associated with Seroquel, spiked. These reports were filed with the FDA's Medwatch database, all of which were reported and known to Defendants.

22.  On September 11, 2003, the FDA informed all manufacturers of atypical antipsychotic drugs, including Defendants, that due to an increasing prevalence of diabetes-related illnesses associated with this class of drugs, all labeling must bear the following language in the Warnings section:

> Hyperglycemia, in some cases extreme and associated with ketoacidosis or hyperosmolar coma or death, has been reported in patients treated with atypical antipsychotics. Assessment of the relationship between atypical antipsychotic use and glucose abnormalities is complicated by the possibility of an increased background risk of diabetes mellitus in patients with schizophrenia and the increasing incidence of diabetes mellitus in the general population. Given these confounders, the relationship between atypical antipsychotic use and hyperglycemia-related adverse events is not completely understood. However, epidemiologic studies suggest an increased risk of treatment emergent hyperglycemia-related adverse events in patients treated with

atypical antipsychotics. Precise risk estimates for hyperglycemia-related adverse events in patients treated with atypical antipsychotics are not available.

Patients with an established diagnosis of diabetes mellitus who are started on atypical antipsychotics should be monitored regularly for worsening of glucose control. Patients with risk factors for diabetes mellitus (e.g., obesity, family history of diabetes) who are starting treatment with atypical antipsychotics should undergo fasting blood glucose testing at the beginning of treatment and periodically during treatment. Any patient treated with atypical antipsychotics should be monitored for symptoms of hyperglycemia including polydipsia, polyuria, polyphagia, and weakness. Patients who develop symptoms of hyperglycemia during treatment with atypical antipsychotics should undergo fasting blood glucose testing. In some cases, hyperglycemia has resolved when the atypical antipsychotic was discontinued; however, some patients required continuation of anti-diabetic treatment despite discontinuation of the suspect drug.

23.   Despite the FDA action, Defendants waited until January 30, 2004 to send out a "Dear Doctor" letter attempting to advise treating physicians of the new warnings. On April 22, 2004 Defendants were forced to send out a revised "Dear Doctor" letter due to the fact that the first one was misleading, as it potentially downplayed the need to continually monitor a patient's blood sugar levels while on the drug.   This critical information did not make it into the *Physicians' Desk Reference* until the 2005 edition.

24.   In January 2006, Defendants were notified that the U.S. Attorney's Office in Los Angeles, California had commenced an investigation of Defendants' field promotional activities related to its products, including Seroquel.

25.   Despite Defendants' knowledge regarding the safety risks its drug posed, they continued to ignore, downplay, sidestep, and delay the dissemination of open and frank information that patients and physicians needed to avoid the life-threatening injuries that Seroquel could cause.   As a result of this callous disregard for human safety in the name of profits, Plaintiffs have suffered the injuries, damages, and losses complained of herein.

## V. DISCOVERY RULE & FRAUDULENT CONCEALMENT

26. The nature of Plaintiffs' injuries and their relationship to Seroquel use were inherently undiscoverable; and, consequently, the discovery rule should be applied to toll the running of the statute of limitations until Plaintiffs knew or through the exercise of reasonable care and diligence should have known of the existence of their claims against Defendants. Plaintiffs did not discover, and through the exercise of reasonable care and due diligence, could not have discovered, their injuries earlier.

27. Further, Plaintiffs did not have knowledge of facts that would lead a reasonable, prudent person to make inquiry to discover Defendants' tortious conduct. Under appropriate application of the "discovery rule," Plaintiffs' suit was filed well within the applicable statutory limitations period.

28. Defendants affirmatively and intentionally lulled, induced, and otherwise prevented Plaintiffs from discovering the existence of their various causes of action against Defendants through its fraudulent acts, omissions, concealments, and suppression of the dangers associated with its drug and other information necessary to put Plaintiffs on notice. Plaintiffs have therefore been kept in ignorance of vital information essential to the pursuit of their claims, without any fault or lack of diligence on their part. Plaintiffs could not reasonably have discovered the fraudulent nature of Defendants' conduct. Accordingly, Defendants are estopped from relying on any statute of limitations to defeat any of Plaintiffs' claims.

Case 1:06-cv-10    8-NG    Document 1-1    Filed 04    2006    Page 20 of 22

## VI.   CAUSES OF ACTION

### A. STRICT PRODUCTS LIABILITY

29.   Defendants are liable as the manufacturers, distributors and/or sellers of Seroquel because Seroquel, when sold, was in a defective and unreasonably dangerous condition. Defendants owed a strict duty to Plaintiffs not to harm Plaintiffs through the use of their drug.

#### 1.   DESIGN DEFECT

30.   Seroquel was defective in design and/or formulation in that, when it left the hands of Defendants and/or its representatives, the foreseeable risks of serious harm posed by the drug outweighed its alleged benefits.   The foreseeable risks of serious harm were so great that Plaintiffs, and the general public, having known of such foreseeable risks and alleged benefits, would not have ingested Seroquel.

31.   Seroquel was placed into the stream of commerce by Defendants, acting through authorized agents, servants, employees and/or representatives.   Plaintiffs were prescribed Seroquel by Plaintiffs' physicians and used the drugs in a manner reasonably foreseeable by Defendants.

32.   The Seroquel ingested by Plaintiffs was expected to and did reach Plaintiffs without substantial change in its condition as tested, manufactured, designed, labeled, packaged, marketed and distributed.   As a result of their use of Seroquel, Plaintiffs suffered severe, permanent and disabling injuries and related damages.

#### 2.   MARKETING DEFECT-INADEQUATE AND IMPROPER WARNINGS

33.   Seroquel was marketed to physicians to be prescribed to their patients and was marketed and advertised directly to the consuming public.   Seroquel, as manufactured and supplied to healthcare professionals and the general public, was unaccompanied by proper

warnings regarding the serious risks of ingesting the drug. The information provided to consumers did not reflect Defendants' knowledge that Seroquel was not safe and effective as indicated in its aggressive marketing campaign, nor were consumers made aware that ingesting the drug could result in serious injury, pain and discomfort and/or death. Additionally, Defendants committed overt acts and issued doublespeak in order to downplay the truth which began to surface. This information began to emerge in the form of adverse event reports, medical studies, and the 2003 FDA labeling change mandate. Any attempts by Defendants to satisfy its duty to warn were compromised by the backdrop of Defendants' actions. Full and proper warnings that accurately and fully reflected the risks of serious injury and/or sudden death due to the ingestion of Seroquel should have been disclosed by Defendants.

34.   Plaintiffs were prescribed Seroquel by physicians who utilized the drug in a manner reasonably foreseeable by Defendants. Seroquel was expected to and did reach Plaintiffs without substantial change in its condition as tested, manufactured, designed, labeled, packaged, marketed and distributed. Plaintiffs were not aware of, and could not have reasonably discovered, the unreasonably dangerous nature of Seroquel.

35.   As the producing cause and legal and direct result of the failure to warn consumers of the defective condition of Seroquel, as manufactured and/or supplied by Defendants and its representatives, Plaintiffs have suffered severe, permanent and disabling injuries and related damages.

### B. NEGLIGENCE

36.   Defendants owed Plaintiffs legal duties in connection with putting Seroquel into the marketplace to be ingested by potential patients such as Plaintiffs. Defendants breached its duties, proximately causing Plaintiffs' injuries. Specifically, Defendants failed to meet its duties

to use reasonable care in the testing, creating, designing, manufacturing, labeling, packaging, marketing, selling, and warning of Seroquel.  Defendants is liable for acts and/or omissions amounting to negligence, gross negligence and/or malice including, but not limited to the following:

    a. Failure to adequately warn Plaintiffs and Plaintiffs' physicians of the respective known or reasonably foreseeable danger that Plaintiffs would suffer a serious injury or death by ingesting Seroquel;

    b. Failure to adequately warn Plaintiffs and Plaintiffs' physicians of the known or reasonably foreseeable danger that Plaintiffs would suffer a serious injury or death by ingesting Seroquel in unsafe doses;

    c. Failure to use reasonable care in testing and inspecting Seroquel, so as to ascertain whether or not it was safe for the purpose for which it was designed, manufactured and sold;

    d. Failure to use reasonable care in implementing and/or utilizing a reasonably safe design in the manufacture of Seroquel;

    e. Failure to use reasonable care in the process of manufacturing Seroquel in a reasonably safe condition for the use for which it was intended;

    f. Failure to use reasonable care in the manner and method of warning Plaintiffs and Plaintiffs' physicians as to the danger and risks of using Seroquel in unsafe doses;

    g. Failing to use reasonable care in maintaining its continuing duty to warn Plaintiffs and Plaintiffs' physicians of after acquired knowledge;

    h. Failure to use reasonable care under the circumstances in acquiring information about patient experience with actual usage of Seroquel, observed effects of Seroquel, monitoring and analyzing information on the quality, safety, efficacy, and all other aspects of reasonable vigilance and ongoing monitoring of a dangerous pharmaceutical (e.g. negligent pharmacovigilance); and,

    i. Such further acts and/or omissions that may be proven at trial.

    37.  The above-described acts and/or omissions of Defendants were direct and proximate causes of Plaintiffs' injuries, diseases, and damages complained of herein.