### C. INTENTIONAL MISREPRESENTATION

38. Defendants made material representations that were false and that were either known to be false when made or were asserted recklessly without knowledge of their truth. These misrepresentations involved material facts concerning the character and quality of the drug in question, and reasonably implied to consumers that Seroquel was safe and would not cause injury. Defendants failed to disclose material facts regarding the dangerous propensities of Seroquel that were known to Defendants and within the knowledge of Defendants. Defendants were well aware of the lack of knowledge on behalf of consumers such as Plaintiffs, and of the incredible disparity between Defendants' and Plaintiffs' opportunity to fully appreciate and discover the dangerous character of Seroquel. By failing to disclose the knowledge known and appreciated by Defendants, Defendants intended to induce Plaintiffs and their physicians into continuing to prescribe, purchase and use Seroquel without worry. Without appropriate knowledge and the benefit and right of informed choice regarding the dangers known to Defendants, Plaintiffs' suffered the injuries, diseases, and damages complained of herein.

39. Defendants had in its possession adverse drug event reports, drug studies, and other documentation about Seroquel, and yet made the following misrepresentations:

   a. Misrepresentations regarding the respective frequency of Seroquel-related adverse event reports or occurrences in the drug's label, package insert or PDR label;

   b. Misrepresentations as to the respective existence, occurrence and frequency of occurrences, severity and extent of the overall risks of Seroquel;

   c. Misrepresentations as to the respective efficacy of Seroquel for both FDA approved and non-approved indications;

   d. Misrepresentations as to the respective number of adverse events and deaths reported with the use of Seroquel; and,

   e. Misrepresentations regarding the respective nature, seriousness, and severity of adverse events reported with the use of Seroquel.

23

40. Defendants intended that these misrepresentations be relied upon by physicians, including Plaintiffs' physicians, healthcare providers and consumers. Plaintiffs did rely upon the misrepresentations that caused Plaintiffs' injuries.

41. As a proximate cause and legal and direct result of Defendants' misrepresentations, Plaintiffs' suffered the injuries, diseases, and damages complained of herein.

### D. NEGLIGENT MISREPRESENTATION

42. Long after Defendants became aware of the risks posed by the ingestion of Seroquel, Defendants failed to communicate those risks to Plaintiffs and the general public. Instead, Defendants continued to represent in its marketing that Seroquel was safe and effective.

43. Plaintiffs bring this cause of action against Defendants under the theory of negligent misrepresentation for the following reasons:

   a. Defendants, individually, and through its agents, representatives, distributors and/or employees, negligently misrepresented material facts about Seroquel, in that they made such misrepresentations when they knew or reasonably should have known of the falsity of such misrepresentations. Alternatively, Defendants made such misrepresentations without exercising reasonable care to ascertain the accuracy of these representations;

   b. These misrepresentations were made in the course of Defendants' sales of Seroquel to the general public, Plaintiffs and Plaintiff's physicians for the purpose of inducing continued sales and use of Seroquel;

   c. Defendants knew that the risk of severe physical harm existed as a result of its misrepresentations;

   d. Plaintiffs and Plaintiffs' healthcare providers justifiably relied on Defendants' misrepresentations; and,

   e. Consequently, Plaintiffs ingested Seroquel to Plaintiffs' detriment.

44. Defendants' negligent misrepresentations were direct and proximate causes of Plaintiffs' injuries, diseases, and damages complained of herein.

### E. EXPRESS WARRANTY

45. Defendants are merchants and/or sellers of Seroquel. Defendants sold Seroquel to consumers, including Plaintiffs, for the ordinary purpose for which such drugs are used by consumers. Defendants made representations to Plaintiffs about the quality or characteristics of Seroquel by affirmation of fact, promise and/or description.

46. The representations by Defendants became part of the basis of the bargain between Defendants and Plaintiffs. Seroquel did not comport with the representations made by Defendants in that it was not safe for the use for which it was marketed. Plaintiffs have notified Defendants that Defendants has breached its express warranties. This breach of warranty by Defendants was a proximate cause of the injuries and monetary loss suffered by Plaintiffs.

### F. IMPLIED WARRANTY

#### 1. WARRANTY OF MERCHANTABILITY

47. Defendants are merchants and/or sellers of Seroquel. Plaintiffs purchased Seroquel as placed in the stream of commerce by Defendants and used it for the ordinary purpose for which such drugs are used by consumers. At the time it was purchased by Plaintiffs, Seroquel was not fit for the ordinary purpose for which such drugs are used because it was not manufactured, designed or marketed in a manner to accomplish its purpose safely. Defendants' breach of its implied warranty of merchantability was a direct and proximate cause of Plaintiffs' injuries, diseases, and damages complained of herein.

#### 2. WARRANTY OF FITNESS

48. Defendants placed Seroquel into the stream of commerce with the knowledge that Plaintiffs were purchasing said drugs for a particular purpose. Further, Defendants knew, or

25

should have known, that Plaintiffs were relying on Defendants' skill or judgment to select goods fit for Plaintiffs' purpose.

49. Defendants delivered goods that were unreasonably dangerous and unfit for Plaintiffs' particular purpose, in that they were defectively designed and did not come with adequate warnings.

50. Defendants' failure to select and sell a product which was reasonably safe for its intended use was a direct and proximate cause of Plaintiffs' injuries, diseases, and damages complained of herein.

### G. CIVIL CONSPIRACY

51. Defendants knowingly agreed, contrived, combined, confederated and conspired amongst themselves and with captured research groups, physicians, and trade groups to cause Plaintiffs' injuries, diseases, and damages by continuous downplaying of the risks associated with Seroquel in the name of more sales. They further conspired to deprive consumers such as Plaintiffs of the opportunity of informed free choice as to whether to use Seroquel or to expose themselves to its hidden dangers. Defendants committed the above described wrongs by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of Seroquel.

52. In furtherance of said conspiracies, Defendants and its co-conspirators performed the following overt acts:

   a. For years, Defendants and its co-conspirators, have been in possession of medical and scientific data, literature, test reports, doctors' inquiries and adverse event reports which clearly indicated that Seroquel and other antipsychotic drugs could cause diabetes, diabetes-related injuries (e.g. severe weight gain, hyperglycemia, diabetic ketoacidosis), pancreatitis, cardiovascular complications, and other severe adverse effects; and,

b. Despite the medical and scientific data, literature, and test reports possessed by and available to Defendants, Defendants and its co-conspirators fraudulently, willfully, and maliciously:

   i. Withheld, concealed, and suppressed said medical and scientific data, literature, test reports, doctors' inquiries and adverse event reports regarding the risks of diabetes, diabetes-related injuries (e.g. severe weight gain, hyperglycemia, diabetic ketoacidosis), pancreatitis, cardiovascular complications, and other severe adverse effects from the general public, Plaintiffs and Plaintiffs' physicians; and

   ii. Caused to be released, published and disseminated medical and scientific data, literature, test reports, and marketing and promotional materials containing information and statements regarding the risks of diabetes, diabetes-related injuries (e.g. severe weight gain, hyperglycemia, diabetic ketoacidosis), pancreatitis, cardiovascular complications, and other severe adverse effects, which Defendants knew were incorrect, incomplete, outdated and misleading.

53. By the false and fraudulent representations, omissions and concealments set forth above, Defendants and its co-conspirators intended to induce Plaintiffs and Plaintiffs' physicians to rely upon said false and fraudulent representations, omissions and concealments, to continue to expose themselves to the dangers inherent in the use of Seroquel.

54. As a result of their participation in the joint venture of designing, testing, monitoring, manufacturing, labeling, advertising, marketing, promoting, selling and distributing Seroquel, all Defendants can be held liable jointly and severally for Plaintiffs' injuries, diseases, and damages complained of herein.

55. Defendants' participation in this conspiracy was a direct and proximate cause of Plaintiffs' injuries, diseases, and damages complained of herein.

### VII. DAMAGES

56. Upon trial of this case, Plaintiffs respectfully request the Court and Jury to determine the amount of loss Plaintiffs have incurred in the past and will incur in the future, not only from a financial standpoint, but also in terms of good health and freedom from pain and

worry. There are certain elements of damages provided by law that Plaintiffs are entitled to have the Jury separately consider to reasonably compensate Plaintiffs for the injuries, damages and losses incurred, as well as those to be incurred in the future. Plaintiffs have been damaged as a result of Defendants' acts and omissions complained of herein in the following particulars:

   a. Plaintiffs have incurred medical, pharmaceutical, hospital, and related expenses and may be reasonably expected to incur additional expenses in the future due to the progressive nature of their injuries;

   b. The likely progression and related life-threatening medical conditions reasonably anticipated to accompany Plaintiffs' injuries will require lifetime medical monitoring as well as domestic help and nursing care as their conditions deteriorates;

   c. Plaintiffs are subject to an extraordinarily increased likelihood of developing heart disease, strokes, high blood pressure, blindness, kidney disease, nervous system disease, amputations, dental disease, pregnancy complications, sexual dysfunction, and other diabetes related complications;

   d. Plaintiffs have endured pain and suffering, mental and emotional anguish and anxiety, and loss of the enjoyment of a normal life as a result of their injuries, and they will continue to endure the same in the future;

   e. Plaintiffs have had their future wage earning capacity impaired as a result of their injuries;

   f. Plaintiffs will likely suffer from a degree of permanent physical impairment, disability, and disfigurement as a result of their injuries as they progress in the future;

   g. Plaintiffs have been and will otherwise be prevented from participating in and enjoying the benefits of a full and complete life;

   h. Plaintiffs' spouses, where named, also seeks damages for loss of consortium; and,

   i. Plaintiffs assert a claim for prejudgment interest on all elements of damages as allowed by law.

### VIII.   WRONGFUL DEATH & SURVIVAL DAMAGES

57. In the case where Plaintiffs have suffered a wrongful death due to Defendants' acts and omissions complained of herein, Plaintiffs' heirs and representatives seek compensation for

the following general and special damages including, but not limited to, damages for survival and wrongful death claims that Plaintiffs have sustained both in their individual capacity and as personal representatives of the estate:

    a. The conscious physical pain and suffering sustained by Decedent prior to their death;

    b. The mental anguish sustained by Decedent prior to their death;

    c. The physical impairment suffered by Decedent prior to their death;

    d. The disfigurement suffered by Decedent prior to their death;

    e. Reasonable and necessary medical expenses incurred by Decedent prior to their death;

    f. Reasonable funeral and burial expenses incurred by Decedent and their estate;

    g. Decedent's lost earning capacity;

    h. The loss of household services, consortium, pecuniary loss, companionship and society which Plaintiffs received from Decedent prior to their last illnesses and death;

    i. The mental anguish suffered by Plaintiffs as a consequence of the last illnesses and death of Decedent; and,

    j. Prejudgment interest on all elements of damages as allowed by law.

## VIII. PUNITIVE DAMAGES

58. At all times relevant hereto, Defendants had actual knowledge of the defective nature of Seroquel as set forth herein and continued to design, manufacture, market, distribute and sell it so as to maximize sales and profits at the expense of the public's health and safety and in conscious disregard of the foreseeable serious harm caused by the drug. Defendants' conduct exhibits such an entire want of care as to establish that its actions were a result of fraud, ill will, recklessness, gross negligence, malice and/or willful and intentional disregard for the safety and

rights of consumers of its drugs such as Plaintiffs. Plaintiffs are therefore entitled to punitive damages.

### IX.   JURY DEMAND

59.   Plaintiffs hereby request a trial by jury on all issues in this case.

### X.   PRAYER

60.   WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that upon final hearing, Plaintiffs have and recover judgment from Defendants, pursuant to the above and foregoing allegations in such amounts as found proper by a jury, which is in excess of the jurisdictional minimum of this court and as the evidence may show proper at the time of trial, together with interest thereon at the legal rate; punitive an/or exemplary damages; Plaintiffs' costs and attorneys' fees expended in prosecuting this matter; and for such other and further relief, both general and special, at law and in equity, to which Plaintiffs may be justly entitled.

Respectfully submitted,

_/s/ Matthew F. Pawa_
Matthew F. Pawa, Esq.
BBO # 652933
mp@pawalaw.com
Benjamin A. Krass
BBO # 659643
bkrass@pawalaw.com
**LAW OFFICES OF MATTHEW F. PAWA, P.C.**
1280 Centre Street, Suite 230
Newton Centre, MA 02459
Telephone: (617) 641-9550
Facsimile: (617) 641-9551

*Of Counsel*:

Michael W. Perrin, Esq.
mperrin@bpblaw.com
K. Camp Bailey, Esq.
cbailey@bpblaw.com
F. Kenneth Bailey, Jr., Esq.
kbailey@bpblaw.com
**BAILEY PERRIN BAILEY LLP**
440 Louisiana St., Suite 2100
Houston, TX 77002
Telephone: (713) 425-7100
Facsimile: (713) 425-7101

ATTORNEYS FOR PLAINTIFFS