# EXHIBIT 4

# Guidance for Industry

## Labeling for Human Prescription Drug and Biological Products — Implementing the New Content and Format Requirements

*DRAFT GUIDANCE*

**This guidance document is being distributed for comment purposes only.**

Comments and suggestions regarding this draft document should be submitted within 90 days of publication in the *Federal Register* of the notice announcing the availability of the draft guidance. Submit comments to the Division of Dockets Management (HFA-305), Food and Drug Administration, 5630 Fishers Lane, rm. 1061, Rockville, MD 20852. All comments should be identified with the docket number listed in the notice of availability that publishes in the *Federal Register*.

For questions regarding this draft document contact (CDER) Janet Norden at 301-796-2270, or (CBER) Toni Stifano at 301-827-6190.

U.S. Department of Health and Human Services
Food and Drug Administration
Center for Drug Evaluation and Research (CDER)
Center for Biologics Evaluation and Research (CBER)

January 2006
Labeling

# Guidance for Industry

## Labeling for Human Prescription Drug and Biological Products — Implementing the New Content and Format Requirements

*Additional copies are available from:*

*Office of Training and Communications*
*Division of Drug Information, HFD-210*
*5600 Fishers Lane*
*Rockville, MD 20857*
*(Tel) 301-827-4573*
*(Internet) http://www.fda.gov/cder/guidance/index.htm*

*or*

*Office of Communication, Training and*
*Manufacturers Assistance, HFM-40*
*Center for Biologics Evaluation and Research*
*Food and Drug Administration*
*1401 Rockville Pike, Rockville, MD 20852-1448*
*(Tel) 800-835-4709 or 301-827-1800*
*(Internet) http://www.fda.gov/cber/guidelines.htm.*

**U.S. Department of Health and Human Services**
**Food and Drug Administration**
**Center for Drug Evaluation and Research (CDER)**
**Center for Biologics Evaluation and Research (CBER)**

**January 2006**
**Labeling**

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

## TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................................. 1

II. BACKGROUND .................................................................................................................... 2

III. CONSIDERATIONS FOR REVISING LABELING ........................................................ 3
    A. General Principles ......................................................................................................... 3
        *1. Developing New Sections .......................................................................................... 4*
        *2. Data Analyses ............................................................................................................ 4*
        *3. Updating Claims ....................................................................................................... 4*
    B. Distributing Information Among Sections ................................................................. 5
        *1. Creating Hierarchy ................................................................................................... 5*
        *2. Avoiding Redundancy ............................................................................................... 5*
        *3. Using Cross-References ........................................................................................... 6*
        *4. Illustrative Example .................................................................................................. 6*

IV. HIGHLIGHTS ....................................................................................................................... 7
    A. General Principles ......................................................................................................... 7
    B. Information in Highlights ............................................................................................. 8
        *1. Initial U.S. Approval (§ 201.57(a)(3)) ...................................................................... 8*
        *2. Boxed Warning (§ 201.57(a)(4)) ............................................................................... 8*
        *3. Recent Major Changes (§ 201.57(a)(5)) ................................................................... 8*
        *4. Indications and Usage (§ 201.57(a)(6)) .................................................................. 10*
        *5. Dosage and Administration (§ 201.57(a)(7)) ......................................................... 10*
        *6. Dosage Forms and Strengths (§ 201.57(a)(8)) ....................................................... 11*
        *7. Contraindications (§ 201.57(a)(9)) ........................................................................ 11*
        *8. Warnings and Precautions (§ 201.57(a)(10)) ........................................................ 11*
        *9. Adverse Reactions (§ 201.57(a)(11)) ...................................................................... 11*
        *10. Drug Interactions (§ 201.57(a)(12)) ..................................................................... 12*
        *11. Use in Specific Populations (§ 201.57(a)(13)) ..................................................... 13*

V. PROCEDURAL INFORMATION .................................................................................... 13
    A. Applications Covered by the Final Rule .................................................................. 13
        *1. New NDAs, BLAs, and Efficacy Supplements ........................................................ 14*
        *2. Approved and Pending Applications ...................................................................... 14*
    B. Appending FDA-Approved Patient Labeling ........................................................... 15
    C. Submitting Electronic Versions of Labeling ............................................................ 16
    D. Applying for a Waiver from Highlights' One-Half Page Requirement ................ 16
    E. Class Labeling ............................................................................................................. 16
        *1. Mandated Statements ............................................................................................. 16*
        *2. Class Labeling Statements That Are Not Mandated by Regulation ...................... 17*
    F. Abbreviated New Drug Application (ANDA) Products ......................................... 18

VI. FORMATTING ................................................................................................................... 18

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

| | | |
|---|---|---|
| A. | Subheadings | 18 |
| B. | Omitted Sections (§ 201.56(d)(4)) | 18 |
| C. | Cross-references | 19 |
| D. | Type Size | 20 |

**APPENDIX A — Frequently Asked Questions** ............................................................................ 21

**APPENDIX B — Prescription Drug Labeling Sections** ............................................................ 24

**APPENDIX C — Reorganizing Labeling Sections** .................................................................... 25

**APPENDIX D — Implementation Plan** ....................................................................................... 26

**APPENDIX E — Type Size Requirements for Labeling and FDA-Approved Patient Labeling Included with Labeling** ............................................................................................ 27

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

# Guidance for Industry[1]

# Labeling for Human Prescription Drug and Biological Products — Implementing the New Content and Format Requirements[2]

> This draft guidance, when finalized, will represent the Food and Drug Administration's (FDA's) current thinking on this topic. It does not create or confer any rights for or on any person and does not operate to bind FDA or the public. You can use an alternative approach if it satisfies the requirements of the applicable statutes and regulations. If you want to discuss an alternative approach, contact the FDA staff responsible for implementing this guidance. If you cannot identify the appropriate FDA staff, call the appropriate number listed on the title page of this guidance.

## I.   INTRODUCTION

This guidance is intended to assist applicants in complying with the new content and format requirements of labeling for human prescription drug and biological products (21 CFR 201.56(d) and 201.57).[3]  FDA recognizes the broad scope and complexity of these new regulations and is issuing this guidance to provide recommendations for applicants revising labeling of already approved products and for applicants drafting labeling for new products to be submitted with a new drug application (NDA) or biologics license application (BLA).  FDA also recognizes that, as both applicants and the Agency become more familiar with writing labeling that complies with these new regulations, good examples and practices will emerge.  FDA has appended a list of Frequently Asked Questions (FAQs) (Appendix A) and has posted illustrative examples of labeling in the new format at www.fda.gov/cder/regulatory/physLabel/default.htm.  The information at this Web site will be updated with new examples, if needed, as they become available.

This guidance provides recommendations on the following subjects:

---

[1] This guidance has been prepared by the Medical Policy Coordinating Committees in the Center for Drug Evaluation and Research (CDER) and Center for Biologics Evaluation and Research (CBER) at the Food and Drug Administration.

[2] See the final rule "Requirements on Content and Format of Labeling for Human Prescription Drug and Biological Products" published in the *Federal Register* in January 2006.

[3] This guidance applies to drugs, including biological drug products. For the purposes of this guidance, *drug* or *drug product* will be used to refer to human prescription drug and biological products that are regulated as drugs.

1

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

- Issues to consider when revising labeling for approved products to meet the new content and format requirements, including:
    - how to distribute information among newly created sections
    - when it is important to repeat information in varying levels of detail in different sections
    - how to minimize redundancy
    - when to cross-reference
- Issues to consider when developing "Highlights of Prescribing Information" (Highlights)
- Procedural information, including:
    - how to determine which applications are covered
    - how to submit labeling
    - how to apply for a waiver
    - information about class labeling
    - information about abbreviated new drug applications (ANDAs)
- How to format labeling, including the use of subheadings, cross-references, type size, and how to address omitted sections

FDA has also made minor amendments to the regulations for labeling of prescription drug and biological products not subject to the new content and format requirements (see 21 CFR 201.56(e) and 201.80 and sections V.A and V.B of this document).

FDA's guidance documents, including this guidance, do not establish legally enforceable responsibilities. Instead, guidances describe the Agency's current thinking on a topic and should be viewed only as recommendations, unless specific regulatory or statutory requirements are cited. The use of the word *should* in Agency guidances means that something is suggested or recommended, but not required.

## II.   BACKGROUND

In January 2006, the Agency published a final rule that amended the requirements for the content and format of labeling for human prescription drug and biological products. The new regulations are designed to make information in prescription drug labeling easier for health care practitioners to access, read, and use, thereby facilitating practitioners' use of labeling to make prescribing decisions. Changes to the labeling format include the addition of introductory prescribing information, entitled "Highlights of Prescribing Information" (Highlights), and a "Table of Contents" (Contents) for the "Full Prescribing Information" (FPI). Highlights contains selected information from the FPI that health care practitioners most commonly reference and consider most important. The Contents lists the sections and subsections of the FPI. The final rule also reorders and reorganizes the FPI, makes minor changes to the content of the FPI, and sets

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

minimum graphical requirements for the format of the labeling. For the purpose of this guidance, the term *new format* refers to labeling that meets the content and format requirements at §§ 201.56(d) and 201.57. The term *old format* refers to labeling formatted to meet the requirements of the 1979 final rule (former §§ 201.56 and 201.57).[4] See Appendix B for a listing of prescription drug labeling sections in the old and new formats.

This guidance focuses on the major issues applicants may face when developing new labeling or when revising labeling to meet the new requirements and provides procedural information important for implementation. FDA expects that the most challenging aspects of this new regulation will be developing Highlights and distributing information among sections that have been substantially affected by this rule, particularly when the information must be culled from the labeling in the old format. Therefore, the guidance focuses primarily on these issues and not on developing sections that have not been changed by this rule. Additional guidance documents that address content and format for specific FPI sections are available and should be consulted when developing labeling.[5]

### III.   CONSIDERATIONS FOR REVISING LABELING

#### A.   General Principles

The FPI in the new format contains substantially the same information as labeling in the old format, typically with reordering and reorganization of the information. For example, new labeling sections (e.g., DRUG INTERACTIONS, USE IN SPECIFIC POPULATIONS, PATIENT COUNSELING INFORMATION) contain information formerly included in the PRECAUTIONS section. Certain sections (e.g., CLINICAL STUDIES, NONCLINICAL TOXICOLOGY) that were previously optional are now required (§ 201.56(d)). Therefore, although labeling in the old format for approved products does not contain the new section headings, most of the content already is included in the labeling under different headings or subheadings. For example, information from the old WARNINGS section and old PRECAUTIONS section is consolidated into a single new section (WARNINGS AND PRECAUTIONS) and information in certain old PRECAUTIONS subsections (e.g., *Information for Patients, Drug Interactions, Pregnancy, Labor and Delivery, Nursing Mothers, Pediatric Use*,

---

[4] See 44 FR 37434, "Labeling and Prescription Drug Advertising; Content and Format for Human Prescription Drugs," Final Rule, June 26, 1979.

[5] See the following FDA guidances for industry: *Adverse Reactions Section of Labeling for Human Prescription Drug and Biological Products — Content and Format* and *Clinical Studies Section of Labeling for Human Prescription Drugs and Biological Products — Content and Format*. FDA has issued a draft guidance, *Warnings and Precautions, Contraindications, and Boxed Warning Sections of Labeling for Human Prescription Drug and Biological Products — Content and Format*. Once finalized, it will represent the Agency's thinking on this topic.

We update guidances periodically. To make sure you have the most recent version of a guidance, check the CDER guidance page at http://www.fda.gov/cder/guidance/index.htm

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

*Geriatric Use*) is relocated to new labeling sections (e.g., PATIENT COUNSELING INFORMATION, DRUG INTERACTIONS, USE IN SPECIFIC POPULATIONS).

FDA recommends following these general principles when revising labeling in the old format.

1.   *Developing New Sections*

FDA expects that most sections or subsections from labeling in the old format can be moved, with little or no modification, to corresponding sections in the new format. See Appendix C for information on how to reorganize labeling sections and subsections within the new format.

In some cases, however, the labeling in the old format may not include the information specified by the new regulations or the content of a section may be inadequate. If the information or section in the old format is inadequate, it must be revised (§ 201.56(a)).

If the labeling in the old format lacks an entire section that is required in the new format, then the section must be developed unless it is clearly inapplicable (§ 201.56(d)). For example, if the labeling in the old format does not contain an *Information for Patients* subsection in the PRECAUTIONS section, the applicant must develop a PATIENT COUNSELING INFORMATION section unless the section is clearly inapplicable to use of the drug.

2.   *Data Analyses*

FDA recognizes that revising labeling to comply with the new regulations is an excellent opportunity to update labeling content to ensure that it accurately reflects current knowledge. FDA expects that, in most cases, the revisions will involve limited rewriting aimed at clarifying text, eliminating redundancies, and updating outdated terminology. FDA emphasizes that no new data analyses of the information in the old format are required as long as the labeling that is developed is truthful and accurate. However, if new information is available that causes the labeling to be inaccurate, the labeling must be updated to incorporate the new information (§ 201.56(a)(2)). In some cases, new data analyses may be necessary.

3.   *Updating Claims*

Although the content of information in labeling in the old format will not significantly change when converted to the new format, the process of updating labeling provides a unique opportunity for the applicant to systematically evaluate information in labeling to identify unsubstantiated claims or outdated information and revise it accordingly. By regulation, all express or implied claims in labeling must be supported by substantial

4

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

evidence.[6] If unsubstantiated claims currently exist in labeling, the applicant must revise the labeling to remove such claims (§ 201.56(a)(3)).

**B.     Distributing Information Among Sections**

When revising labeling in the old format to comply with the new regulations, applicants will face many decisions about where to put information and whether to repeat information in more than one section. Often sections or subsections can be moved with little or no modification (see Appendix C). In some cases, it will be more appropriate to move certain information from a labeling section in the old format to a different labeling section in the new format or to consolidate similar issues under a new subheading. In other cases, it will be appropriate to divide portions of information in a single labeling section among two or more sections. The following general principles and examples are offered to help applicants make decisions about where to locate information in the new format.

*1.     Creating Hierarchy*

It is often important to repeat information in varying levels of detail in different labeling sections, based on the type and clinical relevance of the information. Important clinical information relevant to prescribing decisions should be identified, prioritized, and located in the labeling section that most appropriately communicates the type of information being considered.

*2.     Avoiding Redundancy*

Detailed information about a particular topic should be consolidated in a single labeling section. Often, other sections of labeling should more briefly describe or refer to the topic, but not repeat the same level of detail. For example, clinically relevant information about a drug interaction that rises to the level of a warning will typically be described in the WARNINGS AND PRECAUTIONS section, with supporting detail in the DRUG INTERACTIONS section and other sections as appropriate (e.g., DOSAGE AND ADMINISTRATION section if a dosage modification is necessary).

In some instances, information repeated in different sections of labeling in the old format can be combined in the new format. For example, the old WARNINGS and old PRECAUTIONS sections sometimes each contained information about a similar issue; this information can now be consolidated under one subheading in the new WARNINGS AND PRECAUTIONS section. When moving and consolidating information in labeling, optional subheadings can be ordered to reflect the importance and relative public health significance of the information.

---

[6] See § 201.56(a)(3). See also §§ 201.57(c)(2)(iii), (c)(2)(iv), (c)(2)(v), (c)(7)(iii), and (c)(15)(i), and 201.80(c)(2)(i), (c)(2)(ii), (g)(4), and (m)(1)(i).

*Contains Nonbinding Recommendations*
*Draft — Not for Implementation*

3. *Using Cross-References*

When information about the same topic is contained in more than one section, the section with greatest clinical relevance (i.e., containing the most important information relevant to prescribing) will typically include a succinct description and will cross-reference the related sections that contain additional detail. If the detailed information is appropriately divided into more than one section, those sections should cross-reference each other. In some cases, cross-references are required (e.g., § 201.57(c)(1), (c)(6)(iv), and (c)(15)(ii)).

4. *Illustrative Example*

The Agency expects that distributing information among certain sections may present special challenges. Based on our experience in developing mock labeling, we have identified several basic principles. The following discussion of distributing information among labeling sections illustrates these principles. Although drug interaction information has been selected for this example, these principles also apply to other labeling sections.

- Drug interaction information typically appears in the CLINICAL PHARMACOLOGY and DRUG INTERACTIONS sections. Frequently, there is a subset of information that is clinically relevant and essential for prescribing decisions. That subset of information may be distributed among several sections, including the BOXED WARNING, CONTRAINDICATIONS, WARNINGS AND PRECAUTIONS, and DOSAGE AND ADMINISTRATION (§ 201.57(c)(3)(i)(H) and (c)(8)). FDA recommends using a descriptive header of summary concepts preceding a discussion of specific information (e.g., "CYP3A inhibitor").

- When drug interaction information rises to the level of a warning, precaution, or contraindication or necessitates a dosage adjustment, this information should be discussed briefly in the applicable section(s), with details in the DRUG INTERACTIONS section (§ 201.57(c)(8)).

- The DRUG INTERACTIONS section contains clinically relevant information, such as the need to modify a dose or regimen. It can include information about the observed absence of a drug interaction if that interaction would otherwise be anticipated or is of special concern (e.g., other drugs in the class need a dosage adjustment or if the drugs are commonly coadministered).

- More detail about drug interaction studies, including negative results of drug interaction studies, and any clinically relevant, nonclinical data should be included in the CLINICAL PHARMACOLOGY section.