*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

## IV.    HIGHLIGHTS

### A.    General Principles

The purpose of Highlights is to provide immediate access to the information that practitioners most commonly refer to and view as most important.  Highlights is intended to serve as an information tool, drawing attention to this information and guiding the practitioner to the section in the FPI where detailed information can be obtained. Highlights is not a verbatim repetition of selected information from the FPI, or simply a repetition of the Contents, but a concise, informative summary of crucial prescribing information.  Rarely, it may be appropriate to repeat information verbatim from the FPI (e.g., a succinct boxed warning statement or short indication statement), but in most cases, the information should be summarized and presented in an easily accessible format (e.g., bulleted, tabular).

It is critical that the summarized content of Highlights be consistent with the more detailed information in the FPI, but not all of that information will be included in Highlights.  Selecting the information to include in Highlights requires judgment about the data in relation to the clinical setting in which the drug is used.  The information considered of greatest importance will vary, depending on factors such as differences in safety profiles or dosing considerations for different indications or populations.

Information about a topic, or similar topics, extracted from the FPI should be grouped together and summarized with a brief, clear statement.  For example, several warnings from the FPI about a similar issue could be condensed into one bulleted item under the Warnings and Precautions heading in Highlights.

Summarized information should be presented in direct language that is succinct and imparts a complete piece of information (e.g., for a warning:  a description of the risk,  its consequences, and the actions to take to prevent or mitigate it).  In some cases, the information can be summarized in a few words, while in others, a few short phrases or sentences are more appropriate.  Each summarized statement should be located under the appropriate Highlights heading and must cross-reference the section(s) or subsection(s) of the FPI that contains more detailed information (§ 201.56(d)(3)).

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

**B.    Information in Highlights**

*1.    Initial U.S. Approval (§ 201.57(a)(3))*

On the line immediately beneath the established name (or for biologics, the proper name of the product), the verbatim statement "Initial U.S. Approval" must be presented, followed by the four-digit year in which FDA initially approved the new molecular entity, the new biological product, or the new combination of active ingredients (e.g., Initial U.S. Approval: 2004).

Multiple dates should not be listed for products with multiple formulations approved or licensed in different years. For these products, list the initial approval date of the new molecular entity, new biologic product, or new combination of active ingredients.

*2.    Boxed Warning (§ 201.57(a)(4))*

The Boxed Warning in Highlights must contain a concise summary of the information from the BOXED WARNING in the FPI, and is limited in length to 20 lines. Because the BOXED WARNING in the FPI is an abbreviated description of the drug's most important warnings and contraindications, the Boxed Warning in Highlights serves to emphasize such information, as well as to direct attention to the complete box and to the sections in the FPI that contain more detailed information.

FDA recommends that the information under the Boxed Warning heading in Highlights be summarized in a bulleted format, with each bullet communicating a discrete warning or contraindication. In rare instances, the BOXED WARNING in the FPI may be sufficiently concise to warrant repeating the statement verbatim in the Boxed Warning in Highlights.

*3.    Recent Major Changes (§ 201.57(a)(5))*

When substantive labeling changes are made to any of the following sections of the FPI, the heading(s) of the changed section(s) must be listed in Highlights under the heading Recent Major Changes:

- Boxed Warning
- Indications and Usage
- Dosage and Administration
- Contraindications
- Warnings and Precautions

Minor corrections, such as typographical errors or grammatical changes, are not considered substantive labeling changes.

8

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

- **What must be included**

  — At a minimum, the section heading, identifying number, and the date on which the change was incorporated in the labeling in month/year format (e.g., 6/2005 or June 2005)

  — If appropriate, the section subheading (e.g., when there are multiple subheading listings for a section)

- **Multiple labeling changes**

  — If there are changes in more than one section of the labeling, the sections in Recent Major Changes should be listed in the same order as they appear in the FPI.

  — If there is more than one change in the same labeling section during the 1-year period listed and the change is to the content under the same subheading, the date that supersedes the previous one should be listed. For example, if a new indication (hypertension) was added to the labeling in March 2005, and a limitation to the hypertension indication was added in June 2005, the change under the Recent Major Changes heading should be listed as:

    Indications and Usage, Hypertension (1.2)   6/2005

  — If there is more than one change in the same labeling section during the 1-year period listed, but the change is to the content under different subheadings, each section heading, subheading, identifying number, and date should be listed separately. For example:

    Indications and Usage, Hypertension (1.2)   6/2005
    Indications and Usage, Heart Failure (1.3)   9/2005

- **Listing related information from different FPI sections**
  When a drug product is approved for a new indication, new information is often added to other sections of labeling (e.g., DOSAGE AND ADMINISTRATION, WARNINGS AND PRECAUTIONS, CLINICAL STUDIES). If there are changes in any of the five applicable sections, each changed section should be listed under the Recent Major Changes heading. For example:

    Indications and Usage, Hypertension (1.2)          June 2005
    Dosage and Administration, Hypertension (2.2)      June 2005
    Warnings and Precautions, Hyperkalemia (5.6)       June 2005

- **Marking text in the FPI with a vertical line**
  The corresponding new or modified text in the FPI sections listed under Recent Major Changes must be marked with a vertical line on the left edge (§ 201.57(d)(9)). It is

9

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

unusual for information to be completely deleted from labeling (e.g., removing a warning as opposed to moving the warning to a different section), but if this occurs, the review division will determine how best to identify this change.

- **Initial submission of revised labeling in the new format**
  The Agency acknowledges that whether to include the Recent Major Changes heading when converting labeling to the new format may be unclear because it is difficult to anticipate if the 1-year time period for listing the changed labeling section will elapse before the labeling in the new format is approved. Therefore, applicants should include any substantive labeling changes under the Recent Major Changes heading in the draft labeling submitted for review. At the time of approval, the review division will determine whether the section is still applicable.

- **Removing a listing from Recent Major Changes**
  A changed section must be listed under Recent Major Changes for at least 1 year after the date the labeling change was approved and can continue to be listed until the labeling is reprinted for the first time after the 1-year period. When the 1-year time period expires, the applicant can choose (1) to reprint labeling immediately to remove the listing or (2) to wait until the next reprinting to remove the listing. FDA recommends that applicants notify the Agency in their Annual Report about removal of a listing from Recent Major Changes and the corresponding vertical line in the FPI (see 21 CFR 314.70(b)(2)(v)(C)(*1*) and 601.12(f)(3)(i)(D)(*1*)).

4.    *Indications and Usage (§ 201.57(a)(6))*

Information under the Indications and Usage heading must include a concise statement of each of the drug's indications, briefly noting any major limitations. FDA recommends that the information be presented in a bulleted format. In unusual circumstances, it may be appropriate to present the indications verbatim from the FPI (e.g., when a product has one indication and the statement in the FPI is sufficiently concise). For a product with limitations of use that are applicable to all of the product's indications or with a major safety concern associated with all its uses, it is appropriate to list those limitations or concerns together, under an appropriately titled subheading (e.g., Important Limitations).

If the drug is a member of an established pharmacologic class, the information under Indications and Usage must include the statement "(*Drug*) is a (*name of class*) indicated for (*indication(s)*)." If the drug is not a member of an established pharmacologic class, the statement should be omitted.

5.    *Dosage and Administration (§ 201.57(a)(7))*

Information under the Dosage and Administration heading must contain a concise summary of the recommended dosage regimen, starting dose, dose range, critical differences among population subsets, monitoring recommendations, if any, and other clinically significant clinical pharmacology information that affects dosing

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

recommendations (e.g., dosing adjustments recommended for concomitant therapy, specific populations with coexisting conditions, clinically relevant food effects). FDA recommends a tabular format to enhance accessibility of information (e.g., when there are different dosing regimens for different indications). When applicable and important, special storage or handling information can be mentioned under this heading (e.g., special handling of chemotherapeutic agents, need for refrigeration, reconstitution prior to administration of the drug).

6.   *Dosage Forms and Strengths (§ 201.57(a)(8))*

Information under the Dosage Forms and Strengths heading must include a concise summary of the dosage form and strength and whether the drug product is scored. If a drug product has numerous dosage forms, bulleted subheadings (e.g., capsules, tablets, injectable, suspension) or tabular presentations are recommended.

7.   *Contraindications (§ 201.57(a)(9))*

Information under the Contraindications heading must include either a concise summary of the situations in which the drug should not be used because the risk clearly outweighs any possible therapeutic benefit or the statement "none" if no contraindicated situations have been identified. "Relative contraindications" (i.e., circumstances under which the drug may be used with caution) are not true contraindications and are not appropriate for inclusion under this heading.

8.   *Warnings and Precautions (§ 201.57(a)(10))*

Information under the Warnings and Precautions heading must include a concise summary of the most clinically significant safety concerns that affect decisions about whether to prescribe the drug, recommendations for patient monitoring to ensure safe use of the drug, and measures that can be taken to prevent or mitigate harm. Thus, although it is unlikely that all of the safety information listed in the FPI will be included in Highlights, the most clinically significant safety concerns should be addressed.

9.   *Adverse Reactions (§ 201.57(a)(11))*

- **Most frequently occurring adverse reactions**

Information under the Adverse Reactions heading must include a listing of the most frequently occurring adverse reactions, even if they are included elsewhere in Highlights, and the criteria used to determine inclusion (e.g., incidence rate). The listing should be concise, not lengthy or comprehensive. This listing may include adverse reactions that are important for reasons other than frequency (e.g., leading to discontinuation or dosage adjustments) unless they are included elsewhere in Highlights (e.g., under Warnings and Precautions or Contraindications).

11

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

The adverse reactions listed as *most frequently occurring or most common* should be selected from the table of adverse reactions from clinical trials in the FPI. Rates of most common adverse reactions vary, but should be appropriate to the nature of a drug's adverse reactions profile and the size and composition of the safety database. The criteria for determining inclusion must be identified along with the listing (e.g., >2%). If adverse reaction profiles vary significantly for different indications, list the most common adverse reactions by indication. Also note if different criteria for determining inclusion are used for different indications.

- **Adverse reaction reporting contact information**

Highlights must also contain adverse reaction reporting contact information that includes:
1. The verbatim statement "To report SUSPECTED ADVERSE REACTIONS, contact" followed by the manufacturer's name and phone number for adverse reaction reporting,
2. the manufacturer's Web address of the direct link to its Web site for voluntary reporting of adverse reactions (if available),[7] and
3. FDA's phone number and Web address for voluntary reporting of adverse reactions (see below).

   **FDA's phone numbers and Web addresses for voluntary reporting of adverse reactions:**

   MedWatch (for drug products other than vaccines)
   Phone number – 1-800-FDA-1088
   Web address – www.fda.gov/medwatch

   VAERS (for vaccines)
   Phone number – 1-800-822-7967
   Web address – www.fda.gov/vaers[8]

10. *Drug Interactions (§ 201.57(a)(12))*

Information under the Drug Interactions heading includes a concise summary of:
- a list of other drugs (or classes of drugs) or foods that interact or are predicted to interact in clinically significant ways with the drug
- practical instructions for preventing or decreasing the likelihood of the interaction

---

[7] If a manufacturer does not have a Web site for voluntary reporting of adverse reactions, the manufacturer is not required to create one.

[8] For vaccines, this Web address is also used for required reporting by health care providers.

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

Descriptive subheadings of summary concepts (e.g., CYP3A inhibitor) may precede specific information. In general, drugs that were found not to interact or to interact in a nonclinically relevant way should not be included under this heading, nor should details of drug interaction studies. However, it may be appropriate to include pertinent negative findings of drug interaction studies under this heading if the interaction would otherwise be anticipated or is of special concern (e.g., other drugs in the class need a dosage adjustment or if the drugs are commonly coadministered). A tabular format is recommended for presentation of drug interaction information for drugs with numerous clinically significant interactions.

Interactions with particularly serious clinical consequences that are summarized under the Contraindications or Warnings and Precautions heading in Highlights would be described in greater detail in the DRUG INTERACTIONS section in the FPI.

Because some drugs are associated with a large number of clinically significant drug interactions, it may not be possible to concisely summarize all the critical information in Highlights. In these instances, include a statement under the Drug Interactions heading in Highlights that alerts the prescriber to the presence and significance of the drug interaction information in the FPI.

*11.    Use in Specific Populations (§ 201.57(a)(13))*

Information under the Use in Specific Populations heading includes a concise summary of any clinically important differences in response or recommendations for use of the drug in specific populations (e.g., differences between adult and pediatric responses, need for specific monitoring in patients with hepatic impairment, need for dosing adjustments in patients with renal impairment). Typically, information under this heading includes limitations or precautions for specific populations or established differences in response.

Ordinarily, the absence of information about the safety and effectiveness of a drug in a specific population (e.g., pregnant women, children) should not be included under this heading. It may be appropriate to include some information about use in specific populations under other headings in Highlights (e.g., Contraindications, Warnings and Precautions, Dosage and Administration) based on the type and clinical relevance of the information.

## V.    PROCEDURAL INFORMATION

### A.    Applications Covered by the Final Rule

Section 201.56(b)(1) provides that the final rule applies to prescription drug products with an NDA, BLA, or efficacy supplement that:
- is submitted on or after the effective date of the final rule,
- is pending on the effective date of the final rule, or

13

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

- has been approved in the 5 years prior to the effective date of the final rule.

Although FDA recognizes the effort involved in revising labeling, the Agency strongly believes that the new format is a significant advance in communicating drug information. Therefore, we encourage applicants with products to which the final rule does not apply to voluntarily revise the labeling of their products to comply with the new content and format requirements.

*1.    New NDAs, BLAs, and Efficacy Supplements*

After the effective date of the final rule, draft labeling submitted with new NDAs, BLAs, and efficacy supplements must be in the new format.  Consistent with current practice, the labeling will be reviewed with the application or supplement.

The following efficacy supplements trigger the requirement to revise labeling to the new format:

- A new indication or a significant modification of an existing indication, including removal of a major limitation of use
- A new dosage regimen, including an increase or decrease in daily dosage or a change in frequency of administration
- A comparative efficacy or comparative pharmacokinetics claim naming another drug
- A change expected to significantly affect the size of the patient population to be given the drug, either broadening or narrowing the population (e.g., pediatrics, geriatrics)
- Clinical data to verify and describe the clinical benefit for a drug approved based on a surrogate endpoint or on an effect on a clinical endpoint other than survival or irreversible morbidity (see 21 CFR 314.510 and 601.41)
- A labeling supplement with clinical data[9]

*2.    Approved and Pending Applications*

The timing for submitting labeling in the new format is based on the implementation plan (see § 201.56(c) and Appendix D), but an applicant can voluntarily convert product labeling to the new format prior to the date specified in the implementation plan.  For an approved application, the labeling would be submitted as a *prior approval* labeling supplement.[10]  Applicants voluntarily revising older labeling would also submit draft labeling as a prior approval labeling supplement.  Under § 201.56(c)(2), for applications

[9] See FDA's draft guidance for industry *Submitting Separate Marketing Applications and Clinical Data for the Purposes of Assessing User Fees* for the definition of clinical data.  Once finalized, this guidance will represent the Agency's thinking on this topic.

[10] See §§ 314.70(b) and 601.12(f) about supplements requiring FDA approval before the change is made.

14

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

pending when the rule becomes effective, FDA would approve labeling in the old format and the applicant then would have the implementation period to submit a prior approval labeling supplement. When more than one approval for the same product occurred in the 5 years prior to the effective date of the final rule (e.g., NDA and efficacy supplement), the date of the most recent approval determines the timing of submission of labeling in the new format according to the implementation plan. After labeling is approved in the new format, any subsequent changes to Highlights, other than identified minor exceptions, require submission of a prior approval supplement (§§ 314.70(b) and (c) and 601.12(f)).

## B.   Appending FDA-Approved Patient Labeling

The final rule requires that, 1 year after the effective date, any FDA-approved patient labeling either accompany the labeling or be reprinted immediately following the last section of the labeling (§§ 201.57(c)(18) and 201.80(f)(2)).[11]

Prior to the final rule, the regulations required that any printed patient information or Medication Guide required to be distributed to patients be reprinted at the end of labeling. The final rule changes these requirements as follows:

- Any FDA-approved patient labeling, and not just labeling required by regulation to be distributed to patients, must be reprinted in or accompany the labeling. Because distribution of Medication Guides to patients has always been required (see 21 CFR part 208), the final rule does not change this requirement.
- This requirement applies to the labeling of all drugs, not just those subject to the new format requirements.
- The final rule provides the option of either reprinting the FDA-approved patient labeling (including Medication Guides) immediately following the last section of labeling or having the FDA-approved patient labeling accompany the labeling as a separate document.

When the only change to the labeling is the addition of FDA-approved patient labeling (either reprinted in or accompanying the labeling as a separate document), a labeling supplement is unnecessary. The Agency recommends notifying FDA of this change in the annual report (see §§ 314.81 and 601.12). If there are changes to the labeling other than those listed in the annual report, submit the appropriate labeling supplement (e.g., changes being effected (CBE) or prior approval).

---

[11] The term *FDA-approved patient labeling* refers to any labeling that has been reviewed and approved by the Agency that provides information for patients and is intended for distribution to patients who are prescribed a drug.

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

### C.    Submitting Electronic Versions of Labeling

For information about submitting labeling electronically, applicants should consult the guidances for industry on *Providing Regulatory Submissions in Electronic Format — Human Pharmaceutical Product Applications and Related Submissions Using the eCTD Specifications* and *Providing Regulatory Submissions in Electronic Format — Content of Labeling.*[12]

### D.    Applying for a Waiver from Highlights' One-Half Page Requirement

The new regulations require that Highlights, excluding the boxed warning, be limited in length to one-half page (§ 201.57(d)(8)).  FDA recognizes that under certain circumstances, particularly when a product has many indications or many serious warnings that merit inclusion in Highlights, it may not be possible to accommodate all the required information within one-half page.  In this case, the applicant can submit a waiver request with the submission (e.g., NDA, BLA, efficacy supplement, or labeling supplement).  (See 21 CFR 201.58.)  The applicant should prominently identify the submission as one that includes a waiver request.  In the waiver request, the applicant should explain why the one-half page requirement could not be met.  The Agency will discuss the waiver request with the applicant during labeling negotiations and will formally document its decision in an action letter.

### E.    Class Labeling

*1.    Mandated Statements*

In some instances, a statement(s) for a drug or class of drugs is required by regulation to be included in a particular section of the labeling.  For example, 21 CFR 310.517 requires that labeling for oral hypoglycemics of the sulfonylurea class include a statement in the WARNINGS section.  When converting labeling to the new format, the statement must be included in the corresponding section in the new format (e.g., a statement required to be included in the BOXED WARNING in the old format must be included in the BOXED WARNING in the new format).  For sections that have been altered or eliminated, see Table 1 for the location of the statement in the new format.

---

[12] We update guidances periodically.  To make sure you have the most recent version of a guidance, check the CDER guidance page at http://www.fda.gov/cder/guidance/index.htm.

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

**Table 1 — Location of Statements Required To Be Included in Labeling**

| Location in Old Format | Location in FPI of New Format |
|---|---|
| WARNINGS | WARNINGS AND PRECAUTIONS |
| PRECAUTIONS (General) | WARNINGS AND PRECAUTIONS |
| PRECAUTIONS (Drug Interactions) | DRUG INTERACTIONS |
| PRECAUTIONS (Special Populations) | USE IN SPECIFIC POPULATIONS |
| PRECAUTIONS (Information for Patients) | PATIENT COUNSELING INFORMATION |
| HOW SUPPLIED (or after HOW SUPPLIED) | HOW SUPPLIED/STORAGE AND HANDLING |

The Agency will consider, on a case-by-case basis, those instances where statements are required to be included in labeling in the new format, but not in a specific labeling section. Whether a specific statement required by regulation must appear in Highlights will be determined by the Agency.

*2.    Class Labeling Statements That Are Not Mandated by Regulation*

In some cases, the labeling of all members of a class of drugs includes identical statements, even though they are not mandated by regulation. These *class labeling* statements describe a risk or effect that is typically associated with members of the class, based on what is known about the pharmacology or chemistry of the drugs. For example, the boxed warning about the risk of using an ACE inhibitor during the second and third trimesters of pregnancy is uniformly presented in all labeling for this class of drugs.

To ensure consistent presentation of class labeling statements within drug classes, the Agency will determine during the labeling review and approval process: (1) the appropriate location of a class labeling statement in the FPI, (2) whether the information merits inclusion in Highlights, and (3) the content and location of the summarized statement in Highlights. Applicants should propose content and location of class labeling statements in the new format in the draft labeling submitted with their applications or supplements.

*Contains Nonbinding Recommendations*

*Draft — Not for Implementation*

### F.   Abbreviated New Drug Application (ANDA) Products

Under 21 CFR 314.94(a)(8), the labeling of a drug product submitted for approval under an ANDA must be the same as the labeling of the listed drug referenced in the ANDA, except for changes required because:

1.   differences have been approved under a suitability petition filed under 21 CFR 314.93
2.   the ANDA product and the reference listed drug are produced or distributed by different manufacturers
3.   aspects of the listed drug's labeling are protected by patent or exclusivity

Thus, if the labeling of the reference listed drug is revised to comply with the final rule, the labeling of the ANDA product must also be revised in accordance with 21 CFR 314.127(a)(7).

ANDA applicants are encouraged to consult the guidance for industry on revising ANDA labeling following revision of the reference listed drug labeling for information about when and how to submit labeling supplements.[13]

## VI.   FORMATTING

The final rule includes certain formatting requirements (e.g., ordering, numbering, type size) that were designed to enhance readability and accessibility of labeling information (§ 201.57(d)). Beyond these requirements, the Agency expects that some flexibility in formatting will be necessary because of variability in the type and quantity of labeling information for different drugs. The Agency recommends the use of a two-column format for Highlights and Contents because this format enhances effective communication of the labeling information. Other general recommendations for specific formatting issues are described below.

### A.   Subheadings

The use of subheadings, in addition to those required by the final rule to help organize information in the FPI, is encouraged (e.g., to identify individual warnings). Each subheading that is used must be assigned a decimal number that corresponds to its placement and order in the FPI (§§ 201.56(d)(2) and 201.57(c)).

### B.   Omitted Sections (§ 201.56(d)(4))

Any required section, subsection, or specific information that is clearly inapplicable must be omitted from Highlights and the FPI. For example, if a drug is indicated for use only in males, and there are no preclinical or clinical data relevant to women of childbearing

---

[13] See FDA's guidance for industry *Revising ANDA Labeling Following Revision of the RLD Labeling.*

18