```
 1                 UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF FLORIDA
 2                       ORLANDO DIVISION

 3              Docket No.6:06-MD-1769-Orl-22DAB

 4   . . . . . . . . . . . . . . ..
     IN RE:                        :
 5   SEROQUEL PRODUCTS LIABILITY   :
     LITIGATION                    :        Orlando, Florida
 6   MDL DOCKET No. 1769           :        November 12, 2008
                                   :        10:00 a.m.
 7   ALL CASES                     :
                                   :
 8   . . . . . . . . . . . . . .  :

 9

                TRANSCRIPT OF PRETRIAL CONFERENCE
10            BEFORE THE HONORABLE DAVID A. BAKER
                 UNITED STATES MAGISTRATE JUDGE
11

12   APPEARANCES:

13   For the Plaintiffs:         Paul Pennock

14                               Larry M. Roth

15                               Scott Allen

16

17   For the Defendant

18   AstraZeneca:                Fred Magaziner

19                               Stephen J. McConnell

20

21

22   Court Reporter:  Sandra K. Tremel

23

24   Proceedings recorded by mechanical stenography, transcript

25   produced by computer-aided transcription
```

```
 1                      P R O C E E D I N G S

 2            THE DEPUTY CLERK:  The case number is

 3    6:06MD1769-0RL22DAB.  In re: The Seroquel Products

 4    Liability Litigation.

 5         Counsel for plaintiffs please state your appearances

 6    for the record.

 7            MR. ROTH:  Larry Roth on behalf of the

 8    plaintiffs as liaison counsel.

 9            MR. PENNOCK:  Paul Pennock.

10            MR. ALLEN:  This is Scott Allen in Houston along

11    with me are Mr. Ken Bailey, Mr. Camp Bailey, and Miss

12    Holly Gibson who is formerly Holly Wheeler from

13    Mr. Blizzard's firm.

14            MR. KIRCHMER:  Chris Kirchmer.

15            MS. BAGGETT:  Renee Baggett, plaintiff.

16            MR. SEDGH:  Jonathan Sedgh, plaintiff.

17            MS. SILER:  Lori Siler for the plaintiff.

18            THE DEPUTY CLERK:  Counsel for defense, please

19    state your appearances.

20            MR. CIOTTI:  Rob Ciotti for AstraZeneca.

21            MR. MAGAZINER:  This is Fred Magaziner for

22    AstraZeneca.  Along with me is Liz Balakhani.

23            MR. MCCONNELL:  Good morning, Your Honor.  This

24    is Steve McConnell representing defendant AstraZeneca.

25            MR. FEINERMAN:  Gary Feinerman representing
```

1    AstraZeneca.  I will be joined by Colleen Kenney.

2         MR. BROWN:  Good morning.  Orran Brown, special

3    master for case specific discovery.

4         MS. LEGER:  Monya Leger listening for Bob

5    Schwartz, plaintiff.

6         THE COURT:  Okay.  The status report that was

7    filed last week in terms of agenda for this hearing is

8    what I'll call slightly mysterious or at least non

9    specific as to some items, so I'm going to call on

10   plaintiffs to let me know what they want to talk about.

11        MR. ALLEN:  Scott Allen for the plaintiffs.

12    I'll be taking charge so we don't speak over each

13   other, and at the time I conclude my remarks, I will ask

14   anybody on our side if they have anything additional to

15   say, but I will be in charge.

16    Your Honor, I agree with you -- first of all, I

17   looked at the agenda.  It does appear to be mysterious.

18   But I think there are really two issues with subparts that

19   I have identified that we need to talk about.  The first

20   issue is the deposition.  This would be under A1 on page 4

21   which would be more accurately described as the

22   designation of Dr.Ihor, that's I-H-O-R, Rak, R-A-K, by

23   AstraZeneca as a trial witness.  And our issue here is the

24   need to take Dr. Rak's deposition, the production of

25   Dr. Rak's documents, the ability to use the documents of

 1    Dr. Rak and his deposition testimony to rebut and answer

 2    the defendant's Daubert motions.  That's the issues.

 3         I think that most of this, Your Honor, after e-mail

 4    correspondence, I believe, you will see, has been agreed

 5    to but we need to bring you up to date on that.  So

 6    Dr. Rak and his subparts, for lack of a better word, is

 7    issue number one.

 8         Issue number two is the issue of supplementation of

 9    discovery primarily dealing with 2000 -- what I'll call

10    primarily dealing with 2008 documents.  It is also related

11    to the Dr. Rak issue and it's particularly addressed in

12    2008 material dealing with correspondence submissions to

13    the FDA and things of that nature by and between the FDA

14    and AstraZeneca that is related to Dr. Rak.  But those are

15    the two issues we need to talk about.

16         Are you there?

17              THE COURT:  Yes.  What do you want me to do?

18              MR. ALLEN:  Is this Judge Baker?

19              THE COURT:  Yes.

20              MR. ALLEN:  I don't know if you wanted me to

21    just give you the agenda.

22         All right.  And bear with me, Your Honor.  Let's talk

23    about Dr. Rak.  On October 14 of this year, a month ago,

24    Mr. McConnell, on behalf of AstraZeneca, sent Mr. Camp

25    Bailey an e-mail and he -- and I'll just briefly read the

1    sentence because it says more than I can say.  It says:

2    We will be producing documents from the files of Ihor Rak,

3    a potential AZ trial witness, whose documents have not

4    thus far been produced as part of a custodial file.

5         So on October 14th, they, AstraZeneca identified Dr.

6    Ihor Rak as a trial witness, and said his documents have

7    thus far not been produced in this discovery.  And he thus

8    far has not been identified as a custodial file witness.

9    Now I can sit here and I hope -- I'm trying to avoid

10   this -- I'll tell Mr. McConnell and Mr. Magaziner now, the

11   purpose of this hearing is not to argue, but I can argue

12   the motion or argue the issue, but let's just say, to keep

13   it short, that the plaintiffs were not pleased with the

14   designation of Dr. Rak as a potential trial witness and

15   identification that his custodial file had not been

16   produced or identified as of October 14.  There was

17   various e-mail correspondence that went back and forth.

18   But as we understand it, and Mr. McConnell and Mr.

19   Magaziner, I can let you all describe better who Dr. Rak

20   is, I can't put a title on him but is he a fairly upper

21   echelon high position at AstraZeneca whose testimony they

22   have identified he will be called in the trial of this

23   case and his materials, documents and evidence will be

24   used, as I understand it, on issues involving Daubert.

25        So the long story short, Your Honor, is obviously we

1   wanted the deposition of Dr. Rak and we believe that

2   Dr. Rak's files should be produced in their entirety.  As

3   of October 14, that did not occur.

4        Now, I apologize to the other side and to the Court

5   if I missed this by a day or two, but it's my

6   understanding that we did not get Dr. Rak's production of

7   his custodial file until Monday or last Friday, something

8   of that nature.  In other words, within the last seven

9   days we have received the production of Dr. Rak's files or

10  what we were told were the production of Dr. Rak's files.

11       Now, Your Honor, we then also obviously would want to

12  take the deposition of Dr. Rak as we have indicated so we

13  could determine, A, what Dr. Rak was going to say at any

14  trial of the case, and B, Dr. Rak's knowledge concerning

15  issues involving Seroquel, diabetes, FDA submissions and

16  correspondence, et cetera.

17       We then inquired and we noticed in looking at the

18  files of Dr. Rak that have been produced that it did not

19  appear to us that Dr. Rak's material contained any

20  evidence relevant to 2008 which is obviously very

21  important.  And I will talk about that in a second, Your

22  Honor, with the Court's indulgence on both issues of

23  Dr. Rak and supplementation of discovery.

24       Long story short, e-mail correspondence went back

25  between both sides, the plaintiffs and the defendants,

1   asking for the complete production of Dr. Rak's files, and

2   including 2008.  And I'm just reading from an e-mail we

3   received at 8:21 p.m. Central Standard Time last night

4   from Mr. McConnell, it says:  My understanding is that we

5   produced all of Rak's files up through December 31, 2007.

6   And then in parens, he says, the cut off date applied with

7   all the other witnesses.  Then he says:  The 2008

8   submission should be -- would be covered by the database

9   production.

10        Now, we read that as telling us that the production

11   of Dr. Rak, their trial witnesses that we believe was late

12   designated but we are working with it.  We're not here to

13   argue about that, but we will if we have to, that we need

14   Dr. Rak's entire custodial file, not just through

15   December 31, 2007, but all of that material and all of

16   this material through, as we speak today, November the

17   12th, 2008.  All of it.

18        Now, Mr. McConnell alluded to a little after 8:00

19   last night there may be material in the database

20   production.  We don't feel that's sufficient.  If it's

21   Dr. Rak's material, we need the specificity as required by

22   the rules of what documents they're talking about.

23        Now the reason all of this is highly relevant, Your

24   Honor, without getting into an argument is, since we have

25   agreed to go ahead and proceed with Dr. Rak's deposition,

1    as the Court knows our response to the Daubert motions are

2    due on November 24th.  And the Court is having a Daubert

3    hearing on December 4th and 5th.  We asked for a

4    deposition of Dr. Rak, again without going through the

5    back and forth e-mails, Dr. Rak may have agreed to produce

6    on November 24th.  I mean, it's just self-evident that

7    therefore we could not obviously guess the material of

8    Dr. Rak.  We're still waiting on all the production of the

9    material including 2008, take the deposition of Dr. Rak

10   with that material, and then supplement our responses on a

11   day when we're taking the deposition.  That would

12   obviously be physically impossible.

13        The defense, as I understand it, and I think it's in

14   an e-mail for Mr. McConnell on November 11th, so,

15   yesterday, at 12:45 in the afternoon, and again, if

16   there's other e-mails I haven't seen, they have

17   essentially agreed that we can supplement our Daubert

18   responses with any newly discovered Dr. Rak custodial file

19   material and any deposition testimony.

20        Of course, an agreement between counsel, AstraZeneca

21   and counsel for plaintiffs, that we're entitled to

22   supplement with a custodial file and evidence that we got

23   last week at a deposition we're not taking until the day

24   our response is due, we appreciate their concession in

25   that regard without getting into a dispute whether or not

1    it should have been done sooner.  But it will not do us

2    any good if the Court does not allow us to supplement,

3    that we believe the Court -- we're asking the Court to, I

4    guess, enforce and make as a Court order the agreement of

5    AstraZeneca to allow us to supplement any Daubert

6    responses, both with Dr. Rak's deposition testimony as

7    well as Dr. Rak's documents which would include, of

8    course, the documents I guess which are currently in

9    dispute, the need to supplement through 2008.

10        Now, lastly, obviously, the problem on this issue is

11   since we don't have a Dr. Rak custodial file through 2008

12   based upon Mr. McConnell's e-mail of last night, since we

13   don't have that, we need it long before today.  But I

14   understand that probably is not going to be possible.  But

15   we need all the material in his file, you know, as soon as

16   possible because we have a deposition coming up, I guess,

17   what's that, 10 to 12 days from now.  So we think that

18   needs to be done as quickly as possible ASAP.

19        To sum up, therefore, Your Honor, on issue number

20   one, and Dr. Rak, we're asking the Court to allow

21   supplementation to the Daubert responses that we have due,

22   and to enforce the agreement of parties.  We're asking the

23   Court to require a complete custodial file production of

24   Dr. Rak as urgently as possible including documents

25   through 2008.  And we're asking the Court to not rule or

1    otherwise prejudice the counsel, the plaintiffs, on the

2    Daubert responses until such time as all that is done and

3    we have time to submit any supplements based on Dr. Rak's

4    deposition.

5         That's issue number one, and then issue number two is

6    supplementation of discovery.  I'm willing to wait for a

7    response or does the Court want me to proceed?

8              THE COURT:  Well, let me ask you a couple of

9    questions about Dr. Rak.  Did he submit anything,

10   affidavit or anything else in support of the defendants'

11   Daubert motion?

12             MR. ALLEN:  It is my recollection, Your Honor --

13   and Mr. McConnell and Mr. Magaziner could more helpful

14   possibly on this -- it is not my recollection that he

15   necessarily did, except I think Dr. Rak -- and again, Your

16   Honor, we're talking millions of pages of documents, their

17   Daubert motion is dealing with 2008, a bunch of 2008

18   evidence.  And it is my understanding that Dr. Rak was

19   involved in the 2008 evidence as -- and I don't know his

20   exact title, so I would like to have his exact title.  I

21   think that would be demonstrative of what his evidence is.

22   I believe -- this is my recollection, who I believe

23   Dr. Rak to be is the global Seroquel physician who

24   probably took over from Dr. Brecker.  I mean Dr. Rak's

25   name came up in discovery, Your Honor.  There's no doubt.

1    We didn't focus on him.  He wasn't a custodian.  I have

2    been handed a note that says he's vice president of

3    clinical neuroscience.  If that's correct, that's

4    obviously dealing with this issue.

5         So the answer to the question is Dr. Rak is vice

6    president and I think he's an international vice president

7    of clinical neuroscience, and his 2008 evidence would

8    obviously be relevant, whether or not he actually

9    submitted an affidavit or not.

10         MR. PENNOCK:  Your Honor, this is Paul Pennock.

11   He did not submit an affidavit.  But the affidavit of

12   those witnesses that were submitted make many detailed

13   references to the 2008 submission.  And all what we would

14   view as potentially very relevant causation evidence in

15   the 2008 submission, and my understanding is that Dr. Rak

16   was essentially in charge of those 2008 submissions.  And

17   from having been involved in the Daubert opposition now

18   since we got the motions 10 days ago, there's no question

19   in my mind that he will be asked and will be giving

20   answers that are relevant to the Daubert issues.  His work

21   product is, as they say, all over the Daubert motions.

22         THE COURT:  All right.  Mr. Allen, why don't you

23   talk about the second issue.

24         MR. ALLEN:  Okay, Your Honor.  The second issue

25   is dealing with supplementation of discovery and is part

1    and parcel of the first issue.

2         At the time they identified Dr. Rak, Mr. McConnell's

3    e-mail of October 14, they said as follows -- again, I'll

4    quote directly as opposed to making any argument.

5    Mr. McConnell's e-mail says, as follows:  "In the past we

6    have come to agreements regarding updating of document

7    productions for custodians.  We need to know your position

8    with respect to any updating of custodians who are

9    designated as trial witnesses. "  That was what he said on

10   the 14th.  Obviously -- and I have other issues on there,

11   but obviously, Your Honor, it is our position and I can

12   give you personal experience that is highly relevant, I

13   believe, to this issue, that the ongoing supplementation

14   rules of discovery require that the document discovery

15   be -- continue to be supplemented.  Now, I will tell you

16   then -- and so that's our position.  And particularly,

17   Your Honor, this is where it's highly relevant.  Let me

18   give you some background.

19        We know for a fact, for example, that AstraZeneca did

20   a -- what's known as a changes being effected, changes to

21   their warning and their adverse reaction section

22   concerning hyperglycemia and diabetes in summer of 2007.

23   We learned that through the discovery process.  We know

24   since that change -- and this was done -- and I'm giving

25   approximations -- in June I think they submitted a letter

1  to the FDA.  My recollection is on June 14, 2007,

2  following a June 8th meeting in which they determined that

3  hyperglycemia, which we believe is diabetic levels, in

4  their words was a common adverse event of Seroquel.  They

5  submitted a changes being effected and changed their own

6  label.

7       We know since that time, Your Honor, they have

8  received -- and I apologize for my lack of recall for

9  every detail -- but they have received an approval based

10  upon that supplementation and other evidence for -- and

11  again I apologize -- for extended release bipolar

12  maintenance or some other approval following that

13  submission.  We also learned in depositions and that they

14  have filed other submissions for approval to the FDA.

15       Now, Your Honor, I know from experience not only in

16  this case but in the Zyprexa case that I did try in Alaska

17  last year, that when submissions are made to the FDA

18  concerning not -- concerning labeling and other issues,

19  not just formal submission documents take place, but

20  correspondence concerning the submissions takes place.

21  And particularly I know for a fact that in the Eli Lilly

22  case shortly before we went to trial there was

23  correspondence by and between Eli Lily and the FDA

24  concerning a labeling change that was then being discussed

25  concerning the risk of hyperglycemia and diabetes.  And

1   Lilly had to make that change.  And I can show it to the

2   Court and send it in.  And it is not a -- this is not a

3   Scott Allen word -- would not be a good change for

4   defendants to make their label right before trial.  And I

5   know from reviewing that correspondence between the FDA

6   and Eli Lilly that they said they were continuing to look

7   into the issue of hyperglycemia and diabetes not just in

8   regard to Eli Lily but all the other manufacturers.

9        A long way of saying, Your Honor, I suspect and I

10  would believe based upon reasonable evidence and belief

11  concerning not only AstraZeneca's submissions but what we

12  have seen in regard to the other manufacturers, that there

13  is likely to have been much correspondence by and between

14  AstraZeneca and the FDA concerning the issue of

15  hyperglycemia and diabetes.  We know it existed prior to

16  2008 and we have some of that evidence in the case.

17       In that regard, on September 26, 2008 -- and again

18  without trying to argue -- but after March of 2008, when

19  the defendants had told the Court that the discovery was

20  substantially complete, on September -- on or about

21  September 26, 2008, produced and downloaded to our

22  production was a 2008 submission entitled -- I believe

23  this is the exact title -- but this is the one that's

24  being used, "metabolic parameters" submission.  In fact,

25  we were told that is one of the things that Dr. Rak would

1    be discussing in his deposition and testimony in trial.

2         So we know in September -- we know a new submission

3    is taking place on metabolic parameters.  As we well know

4    hyperglycemia and diabetes would be that issue.  We also

5    know based upon the evidence that trials -- either

6    clinical trials in house to AstraZeneca, trials 125, 126,

7    and 127 which were the trials that they submitted to the

8    FDA and were part and parcel of the changes being

9    effected, changed their warning adverse reaction is a

10   matter of ongoing correspondence and submission between

11   AstraZeneca and the FDA.

12        A long story short, Your Honor, we don't think

13   there's any question and we hope there's no dispute that

14   ongoing correspondence and submissions concerning the

15   safety of Seroquel concerning diabetes and hyperglycemia,

16   concerning changes to the label, ongoing correspondence

17   and submissions, both internal documents where they

18   discuss this in house at AstraZeneca, and I'm thinking

19   about documents we know existed in other cases, called

20   literally discussion documents, justification documents,

21   safety position papers, meeting minutes, things of that

22   nature, we know that are maintained and kept concerning

23   FDA issues.

24        We know that there is continuing to be FDA

25   submissions.  We know that that's taking place.  That's

1    part and parcel and that was part and parcel I believe of

2    AstraZeneca's Daubert motions.

3        And so when they asked us in an e-mail of October 14

4    what is our position with respect to updating of custodial

5    files that we designated, I mean, my answer is quite

6    simple is that they need to be continuously updated.

7    However, on November 10th, which is Monday, at 4:15,

8    Mr. McConnell wrote an e-mail concerning this issue, and

9    I'll just quote again.  Mr. McConnell's e-mail says, "The

10   more I and others over here think about the issue of

11   updates, the more we conclude that plaintiffs' counsel

12   will have to take a shot at describing as well as you can

13   what you want updated. "

14       Then last night, of course, from the e-mail I read

15   last night at 8:21 in Houston, Mr. McConnell indicates we

16   produced all of Rak's files up through December 31, 2007.

17       Now, Your Honor, we don't -- and one other thing,

18   e-mail yesterday at 2:08 in the afternoon, Mr. McConnell

19   says in regard to Dr. Rak in particular, but I'm asking

20   for supplementation for all witnesses in the entire case.

21   He says, "I don't know if the 2008 documents which were

22   generated quite recently were collected and processed.

23   I'm trying to find out."

24       Long story short, Your Honor, we believe and Mr.

25   McConnell's inquiry of October 14th to the extent it was

1    meant to be cooperative, we appreciate it.  And to the

2    extent that they're trying to continue cooperation, we

3    appreciate it.  But the fact of the matter is regardless

4    of cooperation we believe there's a duty and

5    responsibility, and we would ask the Court to assist us on

6    this to require a continuing production, and specifically

7    and most importantly, a production of 2008 material by and

8    between the FDA, not just formal submissions.  I'm talking

9    telephone call note records where they have telephone

10   conferences with the FDA.  I'm talking about

11   correspondence concerning labeling and labeling issues or

12   any regulatory correspondence.  And then documents

13   internal, internal to AstraZeneca concerning all these

14   issues.

15        Now, we believe we are entitled to that so when Mr.

16   McConnell asks for what's our position, that's our

17   position.  And I don't know if I could say it any clearer.

18   I'm willing to talk to Mr. McConnell and Mr. Magaziner

19   again after this call and see if they'll agree to it,

20   because I think it should be agreeable.  But if they're

21   not agreeable, we're asking the Court to make sure we get

22   that material because it would be fundamentally unfair for

23   us not to have material dealing with FDA submissions prior

24   to a trial.  They're talking evidence in this case.  I

25   again will remind the Court, and I have actual experience

 1  in the Eli Lily case, it was some of the most critical

 2  evidence developed was the correspondence and submission

 3  materials going back and forth between Lily and FDA right

 4  before that trial, and we need to see that evidence.

 5      So those are our issues, Your Honor.  I hope I've

 6  done a service.  I'll ask any of my colleagues on my side

 7  or on the phone to fill in the blanks now and then we will

 8  turn it over to the other side, Your Honor.  If anybody

 9  needs to fill it in.  I guess they don't, Your Honor.  I

10  guess that's where we are.

11          THE COURT:  All right.  Who's going to speak for

12  the defendant?

13          MR. MCCONNELL:  Your Honor, this is Steve

14  McConnell.  I will.

15      I'll begin by saying the reason this is a telephonic

16  conference is because I was under the impression that we

17  reached an agreement with the plaintiffs.  That's what we

18  were presenting to the Court today, basically were

19  agreements.  And, in fact, so it's not lost in all this

20  other stuff, we actually do agree with the plaintiffs that

21  Ihor Rak should be deposed as quickly as he's available,

22  and that's November 24th and 25th.  And if anything

23  emerges from that testimony that is relevant to the

24  opposition that the plaintiffs filed or Daubert and other

25  motions, that we agree that they should be able to file a

1   supplement on him.  I actually don't think he's going to

2   say anything that's relevant.  But that's not for me to

3   decide.  And if they find something in there that's

4   relevant they can do so.

5       But let me give you the background on the Rak issue,

6   and it really does dovetail into the updating issue which

7   I think is really the major issue that Mr. Allen devoted

8   his time to.  Ihor Rak is a very high level person at the

9   company now.  He's vice president of clinical

10  neuroscience, global neuroscience.  So I think Mr. Pennock

11  and Ms. Gibson got it right.  He's somebody who worked on

12  Seroquel very early on before the year 2001.  And then

13  from 2001 until 2005, he didn't have anything to do with

14  Seroquel and then he came back to Seroquel in a much more

15  senior capacity.

16      So when we initially designated our custodians in the

17  case, he wasn't included just because he was away for so

18  much of the key period.  But he was present during the

19  developmental period.  We had other witnesses who played a

20  crucial role in terms of development of Seroquel in the

21  early development.  People like Mark Brecker, Jeffrey

22  Goldstein, Jack Schwartz and others.  That's names you

23  probably have heard.  Those three individuals who were

24  custodians and were deposed in this case have all over the

25  last six months or so left the company.

1      So when we started looking at trial and who's going

2   to testify and tell the Seroquel development story, we had

3   an issue in terms of not having people at the company any

4   more and in looking around, and seeing that Ihor Rak had

5   come back to Seroquel and was on Seroquel in 2007, 2008,

6   when there was the change in 2007 and there was a FDA

7   submission, we wanted to use him as a trial witness.  And

8   we gave notice to plaintiffs as soon as we could.  And I

9   sent the e-mail, which I think Mr. Allen read from, and we

10  also gathered up his document and produced -- those

11  documents actually, according to my records, were produced

12  on October 20th, not last week.

13      Those documents were produced for the period up

14  through December 2007.  And the reason is is because

15  that's the cut off period that the parties had agreed

16  upon.  Initially, Your Honor, the cut off -- and as Your

17  Honor knows this is a very difficult case because we're

18  talking about a product that's still on the market.

19  Documents are being created everyday, even when we go to

20  trial in February, there's still going to be documents

21  created every day.  This idea of sort of a continuous

22  production is not workable and hasn't really been done in

23  any other case.  There has to be some sort of agreement by

24  the parties or court order, something reasonable to

25  something which has been something we've been trying to

1    work out for awhile.  But in any event, we had an initial

2    discovery cut off of the date the MDL was created in 2006.

3    And then subsequently I reached an agreement with

4    Mr. Blizzard.  We had a document cut off the December 31,

5    2007.  And that was something to that applied to

6    substantial completion.

7        Now, we continued to produce GEL documents.  You will

8    remember all the discussions we had over GEL and GEL was

9    the repository of regulatory documents.

10       Those are basically up to date.  Certainly the 2008

11   submission has been produced.  That was produced in August

12   actually.  And the plaintiff had that.  But let me make

13   clear, again, on the motion of agreement as opposed to

14   argument.  We agree that there has to be some sort of

15   update because important things are continuing to happen

16   with respect to Seroquel.  The metabolic submission to the

17   FDA clearly is important and it's something that is

18   relevant to the issue of causation.  I agree with all

19   that.  And that's why months ago I raised the issue with

20   the plaintiffs of updating, how do you want to update

21   this.

22       Now, I will say this as a legal matter and if this

23   has to be briefed, it has to be briefed, I don't agree

24   with Mr. Allen that there is a legal obligation of

25   continuous production in response to discovery request for

1    newly created documents.  I do agree that if there's a

2    request that applies to a body of documents and we

3    produce -- and then we later find out that we missed some

4    documents, I absolutely agree we're supposed to produce

5    those documents.  In fact, we're doing that.  We have a QA

6    process.  We try to make sure that we produce everything.

7    I don't think it applies to newly created documents.  I

8    think that the parties have to submit new requests or they

9    have to reach reasonable agreements.  Again, this is going

10   to be particularly difficult in this case because it's

11   moving up -- every day there are new documents.  And

12   again, I don't think this Court is going to say that right

13   up to the day of trial or the day before trial we have to

14   produce everything relating to Seroquel.

15       Your Honor knows how difficult the process of

16   document collection and processing and production has been

17   especially with all the databases.  It's just not

18   reasonable.  There has to be something reasonable and

19   that's what we have been asking the plaintiffs to do.

20   What do you guys want?  Do you want to update in terms of

21   custodians?  And I don't think all custodians would make

22   sense, all hundred plus custodians.  But you guys, the

23   plaintiffs, you now have been living with the case, you've

24   taken depositions.  Who are the custodians that you really

25   think are important?  Or do you want to do an early

1    exchange of trial witnesses and we can do a production

2    there?  Or are there categories.  Your Honor, we have been

3    asking that.  And Mr. Allen read my e-mail of October 14.

4    We have been raising that issue.  The problem is we didn't

5    get a response from the plaintiffs.  Now we get a response

6    today, you owe us everything is continuous which is sort

7    of counterproductive.

8        But we need to work that out.  And Your Honor knows

9    in the past that when we unilaterally made our own

10   decisions, for example, on search terms, that didn't work

11   out so well.  We really have been trying to work

12   collaboratively with the plaintiffs to come with an

13   agreement what sort of update is appropriate.

14       Now, getting specific to Mr. Rak, should his

15   documents from 2008 be produced?  If that's what they're

16   asking for, I have to agree, it makes sense.  And we

17   worked that out, and we do that.  And we will try to get

18   them out as soon as possible.  Or if there's some

19   categorical focus they want to offer so we can get these

20   things in their hands sooner rather than later I want to

21   do that.  And if there are other custodians or other

22   witnesses or other categories, we will do it.  But we need

23   to have an agreement.  This all or nothing thing that we

24   just heard from Mr. Allen, I don't think is legally

25   correct, and, frankly, it's not workable.

1          I mean, this is really a formula for putting these

2     trials off forever.  I'd be half joking when I say the

3     only solution is to put these trials off until the patent

4     runs out, which of course is ridiculous.

5          The plaintiffs filed these cases -- they filed some

6     of these cases years ago.  And there has to be a moment

7     when the record is cut off.  And I want to be absolutely

8     reasonable about that, and we're trying very hard to do

9     that, and all I can say is that -- and Mr. Allen says we

10    want direction from you, we do, and I would like some sort

11    of framework or I'd like to get a commitment from the

12    plaintiff that we're going to talk about this seriously

13    and really try to come up with a constructive way of

14    getting the documents produced but also having some degree

15    of closure.  I mean, that applies to Mr. Rak.  That

16    applies to everything else.  That applies to the record

17    that we're going to have for trials.

18         So, Your Honor, again, I thought that we were here

19    basically to talk about our agreement.  The main point

20    being the agreement that the plaintiffs can file whatever

21    supplement they want to file if Mr. Rak says anything that

22    pertains to Daubert.  But on these other issues, I have to

23    confess to being a little surprised at the tone of today's

24    proceeding and really frustrated with the process.

25              THE COURT:  Well, specifically, what about the

1   up-to-date FDA correspondence and formal submissions?

2           MR. MCCONNELL:  Your Honor, that's -- the formal

3   submissions I know are in GEL.  I'm not sure about the

4   surrounding documents.  I think a lot of it is in there.

5   If it's not in there, if that's what they want, obviously

6   we will produce it.  That's at least a focus category.  I

7   can understand that, Your Honor.  I can go look for it, I

8   can get it, and I can give it to them.  I agree with that.

9           MR. ALLEN:  This is Scott Allen.  I'm prepared

10  to speak when you want.

11          THE COURT:  All right. Go ahead.

12          MR. ALLEN:  Let me address number one.  The

13  issue of Rak.  I don't want this to collapse on this issue

14  of production, which is the second issue, the two to meld

15  together and not demonstrate the difference between Rak as

16  opposed to the ongoing production.  They do overlap in

17  some respects but they entirely also have separate issues.

18  Since Dr. Rak has been designated as a trial witness, and

19  they designated him for the first time and told us about

20  him on October 14, and he is the going to address issues

21  not just dealing with prior to 2001, but as Mr. McConnell

22  said 2007 and 2008 issues.

23      In regard to Dr. Rak, I thought our agreement was and

24  we needed enforced by the Court and that's what our issue

25  was is they will produce all of Dr. Rak's custodial files

1    including 2008 issues.  Including 2008 issues.  And as of

2    last night they said it hasn't been done.  And I would

3    like the Court to issue an order.

4         So that's -- on Dr. Rak, that's the point I'm making.

5    He's different.  They designated him late and we want all

6    of his documents before he's deposed.

7         Just briefly on the issue of the date, Mr. McConnell

8    said they might have produced it over the last week in

9    October.  When they produce it, it has to be uploaded on

10   the computer.  It was uploaded last week.  So there's

11   really no dispute.  So that's number one.

12        The issue on the production, and I thought maybe even

13   when I'm trying to be sweet I can't be sweet.  But Mr.

14   McConnell indicated that he was surprised at the tone.  My

15   tone on that was, Your Honor, is I don't think

16   unreasonable at all.  I'm willing to sit down with Mr.

17   McConnell.  And I was giving you an update, and I was

18   giving you an update of what I thought was important about

19   2008, and I'm not -- and I'm saying we need to come to

20   resolution on that.  I was bringing the Court the update

21   on the 2008 production.  I think the best way to address

22   that issue is to allow me to talk to Mr. McConnell.  But I

23   was giving you a status conference update.  But I was

24   trying to inform the Court on that update of how important

25   these documents are.  And the only thing that concerned me

27

1   about Mr. McConnell's comments was we finally -- you know

2   this issue, we finally need a cut off date.

3        Your Honor, I understand not every document produced

4   at AstraZeneca from now until Kingdom come is what I want,

5   but I think when we're having continuous documents that

6   are being created, as Mr. McConnell said, dealing with the

7   issue of hyperglycemia, diabetes, and the safety of the

8   product, it's going to be my position that all those

9   documents should be supplemented.  And, Your Honor, I can

10  take it to the extreme, and that's not I was trying to do.

11  I think Mr. McConnell is trying to take it to the extreme.

12       But assume hypothetically, Your Honor, this literally

13  happens, as opposed to figurative.  I'm giving the Court a

14  concrete example.  Shortly before the trial in the Zyprexa

15  trial and Eli Lilly, if they had taken the same position

16  we would have not been produced a letter from the FDA that

17  says, change your label.  Your product and the evidence

18  you submitted indicates to us, and I'm paraphrasing, is

19  risky for diabetes and hyperglycemia, and you have

20  withheld evidence and change your label.  And that's what

21  the letter I'm paraphrasing says.  If Mr. McConnell's

22  position was to be accepted that we get a cut off, if that

23  would have happened to me in Alaska, that letter would

24  have not have occurred.  So I hope -- my tone was not

25  meant to be anything but demonstrative and illustrative of

1    how certain documents -- and I can identify those with Mr.

2    McConnell -- continuously need to be updated, and

3    correspondence by and between the FDA would be one.

4         So I just want the Court to know there's two issues.

5    The Rak issue which overlaps into that discovery but

6    that's separate.  Since they just designated we want his

7    whole file.

8         The second issue of ongoing production requirements,

9    I brought that up because it was brought up Mr.

10   McConnell's e-mail and then it was brought up again and

11   then last night they said, again, Dr. Rak he hadn't

12   produced any 2008 documents.

13        So those are two issues.  Number one, the

14   agreement -- we just wanted it enforced, but we want the

15   2008 Rak file.  The other issue, that's a status update,

16   Your Honor.  I'll be glad to talk Mr. McConnell about it.

17             MR. MCCONNELL:  Your Honor, if I may very

18   quickly on the Rak thing, on the -- we were just listening

19   to Mr. Allen say we designated him late and all of that.

20   I just want to give you the background that this is a guy

21   that we genuinely came to late as a guy that we might want

22   to use as a trial witness.

23        Now there isn't any pretrial order in place yet as to

24   when the parties have to exchange lists of trial

25   witnesses.  And Ihor Rak is somebody that the plaintiffs

1  could have added as a custodian when they saw whatever

2  documents he had.  They didn't.  I don't blame them.  It's

3  hard.  There's a lot of witness.  There's a lot of

4  documents.  It's not the easiest thing in the world to

5  figure out.  I just want to say, I think that we, the

6  defendants were acting out of a lot of good faith, and as

7  soon as we figured out that there was this guy, Ihor Rak,

8  who is not a custodian who they hadn't deposed -- I could

9  see some parties seeing, gee, that's great they haven't

10  deposed him, what a great surprise for trial.  I thought

11  that we were acting out of an abundance of caution and

12  courtesy by as soon as we figured out that he was the guy

13  we might to want use at trial, we should let the

14  plaintiffs know about it and we went and checked his

15  documents.

16      Now -- so I just don't -- hope there isn't any sort

17  of whiff of that that there is something improper.  I

18  thought we were acting just as good as we can with respect

19  to Rak.

20      In terms of the documents, this is where I want to be

21  clear, this is just a problem in terms of saying, we want

22  his whole file or we want 2008 file because of course you

23  look at a calendar, it is 2008.  I mean, if you take that

24  literally -- and I suppose the day of the deposition we

25  would have to produce to the other side Ihor Rak's files

1  up to the day of the deposition.  I mean, today I'm sure

2  he's doing something relating to Seroquel.  It's just how

3  do we do something that's workable.  I guess that's what

4  I'm saying.  So when I talk about a cut off, I'm talking

5  about a date cut off not only with respect to his

6  deposition, but with respect to trial.  But there's also

7  got to be some sort of categorical or subject matter cut

8  off.  And obviously if you're talking about things like

9  FDA communications, I agree.  There are probably others

10  the plaintiffs can come up with too.  And I just think we

11  need to do that.

12        And, again, I was hoping this was an agreement.  And

13  if it's an agreement to try to reach further agreements,

14  I'm all in favor of that.  All I can tell Your Honor --

15  and we have been through a long slog in this case in terms

16  of discovery.  We all learned a lot of hard lessons.  I'm

17  just here to assure you and I hope you'll accept this, on

18  Rak and all this issue of updating, we try to be

19  proactive, and trying to be as on top of things and

20  offering things constructive and try to just be as

21  effective as we can, and try to spare this Court as much

22  unnecessary argument as we can.  All I can tell you is

23  that really and truly has been our attitude and will

24  continue to be.

25              THE COURT:  All right.  Are there issues the

1    defendant wants to bring up?

2            MR. MAGAZINER:  There's one issue on agenda.

3    This is Fred Magaziner.  There's one issue on the agenda

4    as Your Honor stated which concerns the approximately

5    5,000 cases in the MDL that have not been focused on

6    because they're not Florida cases and they're not part of

7    any of the ongoing programs or the programs that the Court

8    has launched.  I had assumed we were not going to argue

9    this because, like Mr. McConnell, it's my understanding

10   that this conference was being conducted by telephone

11   because the parties had agreed on all the issues that had

12   to be raised and there was no need for further argument.

13       Apparently Mr. Allen feels that there is still need

14   for argument.  I will refrain from arguing this very much,

15   as I told Mr. Bailey I would refrain from doing.

16       So let me just say this:  We have been in dialogue

17   with plaintiffs' counsel, Mr. Ken Bailey in particular,

18   and also Camp Bailey about this issue.  I believe Mr.

19   Bailey, both Mr. Baileys, understand why we on the

20   AstraZeneca side want to address the issue.  And Mr.

21   Bailey, Ken Bailey, has assured me that he will meet with

22   me sometime over the next few weeks.  And we're going to

23   have what I'm told is going to be a productive

24   constructive conversation about ways to address the issue.

25   So I think we're today -- I'll just tell the Court that

1    we're looking at that and that we will come back with the

2    Court after those conversations, either with some sort of

3    proposal that we have reached by agreement or if need be

4    we will be making formal motions to address the issue of

5    the other cases that are just sitting there in the MDL and

6    many of which we think, even plaintiffs would agree,

7    should be dismissed.

8         MR. ALLEN:  Your Honor, Scott Allen for

9    plaintiffs.

10        Mr. Magaziner is correct on that issue.  And that's

11   what's been agreed to.  So we don't have any issues in

12   that regard.  But I do need to respond.  I think maybe it

13   could be a tactic the other side continues to use.  I'm

14   arguing, Your Honor, I'm arguing because in order to

15   bring -- get the Court's assistance to enforce the

16   agreement that the supplementation on Dr. Rak needs to be

17   done and we need to take his deposition.  I have to give

18   the Court background.  And so I don't want the Court to

19   believe or go along with their position.  And I'm creating

20   argument where there was none.  And I didn't say that -- I

21   gave facts.  I read from the e-mails.  And Dr. Rak was

22   identified on October 14.  As of right now we don't have

23   his files in 2008.  We're asking the Court to order that

24   they be produced.  We're asking the Court to enforce an

25   agreement that can be supplemented, the Daubert responses

```
 1    and other motions can be supplemented with Dr. Rak's --

 2    with that, I don't know what other word to use it, late

 3    filed designation or whatever word needs to be used by Mr.

 4    McConnell.  But we're asking the Court to do that.  We

 5    couldn't make these agreements on our own.  And so the

 6    Dr. Rak issue, I'm just reporting facts and asking the

 7    Court's assistance to allow us to take the deposition

 8    which is scheduled the day our responses are due, so it

 9    would be impossible for us to do it without the Court's

10    intervention and agreement.

11         The second issue, again, of production is a status

12    update, and I was bringing the Court up to date on the

13    status but I did not do so without giving the relevant

14    factors surrounding that issue, Your Honor.

15              THE COURT:  All right.

16              MR. MCCONNELL:  Your Honor, with respect to an

17    order, just so it's clear, I know judges always want to

18    hear from parties what actually they want.  I actually

19    don't think an order is necessary with respect to Rak.

20    But if there is to be an order, it just can't be an order

21    of produce all the files, all the 2008 materials.  That

22    ends up being nonsense.  What I suggest if you're going to

23    do anything at all in this area would be an order that the

24    defendant attempt as much as possible to produce 2008

25    materials relating to the FDA submission, and there's no
```

1    waiver of right, if the plaintiffs want to come back and

2    suggest in any way that their deposition was hindered

3    because they didn't get what they were supposed to.

4    They're absolutely free to come back and seek whatever

5    relief they want.

6            THE COURT:  All right.  Let me take the issues

7    in a different order then they were presented.

8        Just a comment on the cases that are not set for

9    trial.  It's been my -- I haven't talked to Judge Conway

10   about this in any detail.  I suspect she has ideas of her

11   own that will control, but my thought was that we were

12   putting all of those basically on the shelf.  That's the

13   way we have been proceeding, and that sometime early next

14   year after some number of cases are tried, we were going

15   to relook, and maybe before then, but look at all the

16   issues of case management and ADR and discovery of those

17   cases.  And Judge Conway's going to make a determination

18   as to how -- with her duties as the MDL judge and whether

19   they all have to be ready for trial when she sends them

20   back or whether they simply need to have had the more

21   significant legal issues decided so that individual

22   discovery can be done back in their own districts.  So

23   that's -- those are issues for the future.  And we will

24   deal with them when the time comes.

25       In terms of Dr. Rak, I'm not going to make any jokes

1    about his name and hard places, but we are up against some

2    deadlines.  And it does seem to me the circumstances that

3    the documents pertinent to any aspect of the issues raised

4    in Daubert motions or FDA submissions or his proposed

5    trial testimony including 2008 material should be

6    produced.  It obviously is impractical to do it on a

7    day-by-day or minute-by-minute basis, but through some cut

8    off, the end of October or some other deadline, they

9    should be produced so that he can be properly deposed.

10       In terms of allowing the plaintiffs to do a

11   supplemental submission on the Daubert motions, I'm not

12   clear on how important Dr. Rak is on that.  Defendant says

13   not very or maybe not at all.  Plaintiffs think maybe a

14   lot.  And it's certainly awkward to have to do a full

15   response and then do a supplement.  That's supposed to add

16   to argument you made or raise a new argument or two.  But

17   I guess that's preferable to delaying the entire

18   submission.

19       So I will approve allowing plaintiffs to submit a

20   supplement to their Daubert response based on anything

21   that rises out of Dr. Rak's deposition.  I'm going to make

22   that due on Friday the 28th so that Judge Conway will have

23   time to digest it before the argument.

24       And with respect to the other supplementation, it

25   does seem clear to me that there will be an obligation for

1    the defendant to, as of now and again closer to trial, to

2    keep current production with respect to FDA submissions

3    and correspondence that relates to the issues that are

4    present in the case.

5         With respect to the other supplements, I'm going to

6    give the parties an opportunity to -- I may be using the

7    word generously -- continue their meet and confer on that,

8    and if there's an issue that needs to be raised for court

9    resolution that you can't resolve, you can file a motion.

10   We can have another hearing either later this month or in

11   December to get that resolved.

12        Is that sufficiently concrete guidance so the parties

13   can go through to --

14        MR. MCCONNELL:  Your Honor, Steve McConnell.

15        Only thing I request when you're talking about the

16   Rak documents and date cut off, I'll tell you I have been

17   talking with my people and October 1 cut off is just not

18   going to be doable in time for the depo and in fact the

19   FDA submission metabolic was in June.  So I'm going to ask

20   for a July 1 cut off.

21        MR. ALLEN:  This is Scott Allen.

22        I mean, I'm kind of arguing in the dark on that

23   point.  So it's kind of hard for me to know.  But it seems

24   to me if documents are being gathered in a category of

25   Dr. Rak, there should be no good reason that they all

1    should not be gathered at the same time.  And then under

2    the duty of supplement, if they missed something, if they

3    missed something they can come back later and we can look

4    at it.  We shouldn't just have a July cut off.  If when

5    they're looking at the documents they have other

6    documents, they ought to go ahead and produce it, and

7    later if they missed something, they can come back and

8    supplement it.

9         On the issue, by the way of the 28th, Your Honor, on

10   Dr. Rak's deposition on the 24th, I'll remind the Court

11   that's Thanksgiving week.  So we're taking the deposition

12   on Monday and the 25th.  We agreed to do it on two days

13   during the Thanksgiving week, take the deposition.  I

14   doubt that the court reporter can get us a transcript

15   before Thanksgiving, Thursday and Friday traditionally.

16   So I would ask for just an additional time.  I mean, I

17   tried to say, you know, December 3rd or 4th, at least that

18   Monday to Thursday, you know.  Well, the Monday -- I think

19   that week is going to be tough on us.  I would ask for

20   December 4 which I think is a Wednesday or 5th which is

21   a -- you know, we can supplement on the day of the hearing

22   when we come down to the hearing on the 4th, and if we

23   find anything, I think that, you know, if they feel that

24   our supplementation is some surprise, I think we should

25   have until the 4th, to be honest and truthful.

1          THE COURT:  Well, I'm not going to do that to

2    Judge Conway.  She doesn't go into hearings that way.

3          MR. ALLEN:  Okay.

4          THE COURT:  I know we got a holiday week there.

5    Just have to do the best you can.  I'll have some extra

6    Turkey if anybody wants to come over.

7          MR. ALLEN:  Well, I do.  I'm recently divorced.

8    I don't have anybody to spend Thanksgiving with, so I'll

9    be at your house.

10         THE COURT:  We will have all the usual fixings.

11         MR. ALLEN:  I guess that's where we are, Your

12   Honor.  So I disagree with Mr. McConnell and I ask for it

13   to be -- they produce all through --

14         THE COURT:  Well, I'm going to set -- produce

15   them through September 30.  And then if something shows up

16   at the deposition that suggests that there have been some

17   developments since then, we will deal with that later.

18      All right.  Any other issues?  Hearing none, we're in

19   recess.

20                   (End at 10:56 a.m.)

21               C E R T I F I C A T E

22         I certify that the foregoing is a correct

23   transcript from the record of proceedings in the

24   above-entitled matter.

25   s\Sandra K. Tremel   November 13, 2008