UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE:  Seroquel Products Liability Litigation,
MDL DOCKET NO. 1769

JURY TRIAL DEMANDED

This document relates to:

*Kevin Barnette v. AstraZeneca Pharmaceuticals LP, et al.*,
Case No. 6:08-cv-01941-ACC-DAB
_____/

**ANSWER AND AFFIRMATIVE AND/OR SEPARATE DEFENSES OF
ASTRAZENECA PHARMACEUTICALS LP AND ASTRAZENECA LP TO
PLAINTIFF'S COMPLAINT**

Defendants AstraZeneca Pharmaceuticals LP and AstraZeneca LP, erroneously named herein as "AstraZeneca, LP" (hereinafter referred to collectively as "AstraZeneca") answer Plaintiffs' Original Complaint ("Complaint") as follows:

1.      This action is brought by Plaintiff seeking damages for personal injuries and economic damages suffered as a result of a defective and dangerous pharmaceutical product, Seroquel, which was manufactured, marketed, distributed and/or sold by AstraZeneca to the general public.

**ANSWER:**  AstraZeneca admits that, pursuant to approval by the Food and Drug Administration ("FDA"), it manufactures, markets, distributes, and sells SEROQUEL® (quetiapine fumarate) for prescription by licensed physicians in the United States.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 1.

**JURISDICTION AND VENUE**

2.      The Court has jurisdiction over this lawsuit under 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000, excluding interest and costs and there is diversity of the parties.

Venue is proper in this district based upon Defendants' commercial activities and Plaintiff's residence.

**ANSWER:**   AstraZeneca states that the allegations of paragraph 2 constitute legal conclusions to which no response is required.  To the extent that the allegations regarding jurisdiction over AstraZeneca are construed as factual allegations directed to AstraZeneca, AstraZeneca admits that, pursuant to approval by the FDA, it distributes, markets, and sells SEROQUEL® for prescription by licensed physicians in the United States, including the state of Maryland. AstraZeneca further admits that this Court has subject matter jurisdiction over this action. AstraZeneca denies any remaining or inconsistent allegations of paragraph 2.

3.      Defendants placed the dangerous and defective pharmaceutical atypical antipsychotic drug Seroquel into the stream of interstate and worldwide commerce, including the State of Maryland.

**ANSWER:**   AstraZeneca admits that it manufactures, promotes, markets, advertises, and sells SEROQUEL® for prescription by licensed physicians, and thereby causes SEROQUEL® to be placed into the stream of commerce in Maryland, among other states.  AstraZeneca further admits that SEROQUEL® is an "antipsychotic" medication and belongs to a class of drugs referred to as "atypical antipsychotics."  AstraZeneca denies any remaining or inconsistent allegations of paragraph 3.

4.      As a direct and proximate result of Defendants placing Seroquel into the stream of commerce, Plaintiff has suffered and continues to suffer injuries including, but not limited to physical, mental and economic loss, pain and suffering, and he will continue to experience such injuries indefinitely.

**ANSWER:**    AstraZeneca denies the allegations of paragraph 4.

5.    Upon information and belief, at all relevant times, Defendants were present and transacted, solicited and conducted business in the State of Maryland and derived substantial revenue from such business.

**ANSWER:**    AstraZeneca admits that it manufactures, promotes, markets, advertises, and sells SEROQUEL® for prescription by licensed physicians, and thereby causes SEROQUEL® to be placed into the stream of commerce in Maryland, among other states.  AstraZeneca states that the phrase "derived substantial revenue" is vague and ambiguous.  Accordingly, AstraZeneca lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5, and therefore denies same.

6.    At all relevant times, Defendants expected or should have expected that their acts would have consequences within the United States and the State of Maryland.

**ANSWER:**    AstraZeneca admits that it manufactures, promotes, markets, advertises, and sells SEROQUEL® for prescription by licensed physicians, and thereby causes SEROQUEL® to be placed into the stream of commerce in Maryland, among other states.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 6.

7.    This action includes claims for injuries to Kevin Barnette caused by his ingestion of Seroquel and therefore should be, and plaintiff consents to, transfer to **Multidistrict Litigation No. 1769 In Re: Seroquel Products Liability Litigation**, United States District Court, Middle District of Florida, Orlando Division, the Honorable Anne C. Conway.

**ANSWER:**    AstraZeneca states that the allegations of paragraph 7 constitute legal conclusions to which no response is required.  To the extent the allegations of paragraph 7 are construed as

factual allegations, AstraZeneca admits that transfer of this action to MDL No. 1769, *In re: Seroquel Products Liability Litigation*, is proper.  AstraZeneca denies the remaining allegations of paragraph 7.

## PARTIES

8.     Plaintiff, Kevin Barnette, is a resident of Havre De Grace, Maryland.  Plaintiff was prescribed, purchased and ingested Seroquel.  After using Seroquel, Plaintiff was diagnosed with Diabetes Mellitus.

**ANSWER:**     AstraZeneca states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 8, and therefore denies same.

9.     AstraZeneca Pharmaceuticals LP, is a Delaware limited partnership doing business in the State of Delaware, and the United States.  AstraZeneca Pharmaceuticals LP, is the United States Subsidiary of AstraZeneca PLC, and was created as a result of the union of Zeneca Pharmaceuticals and Astra Pharmaceuticals LP in the United States after the 1999 merger. AstraZeneca Pharmaceuticals LP's principal place of business is in Delaware, 1800 Concord Pike, P.O. Box 15347, Wilmington, Delaware 19850.  Upon information and belief AstraZeneca Pharmaceuticals LP's general and limited partners are:  AstraZeneca AB, a Swedish corporation with its principal place of business in Sweden; Zeneca Inc., a Delaware corporation with its principal place of business in Delaware; Astra USA Inc., a New York corporation with it's principal place of business in Delaware; and Astra US Holdings Corporation, A Delaware corporation with it's principal place of business in Delaware.   Therefore, AstraZeneca Pharmaceuticals LP is a citizen of Delaware, New York and Sweden.

**ANSWER**:    AstraZeneca admits that AstraZeneca Pharmaceuticals LP is a Delaware limited partnership with its principal place of business in Delaware.   AstraZeneca further admits that AstraZeneca Pharmaceuticals LP does business in Delaware and elsewhere in the United States. AstraZeneca states that AstraZeneca plc is a U.K. public limited company headquartered in London, and that AstraZeneca plc was formed in 1999 as a result of the merger between Zeneca Group plc and Astra AB.   AstraZeneca further admits that AstraZeneca Pharmaceuticals LP's general and limited partners are: AstraZeneca AB, a Swedish corporation with its principal place of business in Sweden; Zeneca Inc., a Delaware corporation with its principal place of business in Delaware; Astra USA, Inc., a New York corporation with its principal place of business in Delaware; and Astra US Holdings Corporation, a Delaware corporation with its principal place of business in Delaware.   AstraZeneca states that the allegations of paragraph 9 regarding the citizenship of AstraZeneca Pharmaceuticals LP state legal conclusions to which no response is required.   To the extent that such allegations are construed as factual allegations directed to AstraZeneca, AstraZeneca states that, for purposes of diversity, AstraZeneca Pharmaceuticals LP is a citizen of Delaware, New York, and Sweden.   AstraZeneca denies any remaining or inconsistent allegations of paragraph 9.

10.     Defendant, AstraZeneca LP, is a Delaware limited partnership doing business in the State of Delaware and the United States.   AstraZeneca LP's principal place of business is in Delaware. Upon information and belief AstraZeneca LP's general partner is AstraZeneca Pharmaceuticals LP, which as stated above is a citizen of Delaware, New York, and Sweden.   AstraZeneca LP's sole limited partner, KBI Sub Inc., is incorporated in the State of Delaware and its principal place of business is in New Jersey.   Therefore, AstraZeneca LP is a citizen of Delaware, New York, New Jersey and Sweden.

**ANSWER:**    AstraZeneca admits that AstraZeneca LP is a Delaware limited partnership with its principal place of business in Delaware.   AstraZeneca further admits that AstraZeneca LP does business in Delaware and elsewhere in the United States.   AstraZeneca admits that AstraZeneca LP's general partner is AstraZeneca Pharmaceuticals LP.   AstraZeneca further admits that KBI Sub Inc., a Delaware corporation with its principal place of business in New Jersey, is the sole limited partner of AstraZeneca LP.   AstraZeneca states that the allegations of paragraph 10 regarding the citizenship of AstraZeneca LP state legal conclusions to which no response is required.   To the extent that such allegations are construed as factual allegations directed to AstraZeneca, AstraZeneca states that, for purposes of diversity, AstraZeneca LP is a citizen of Delaware, New Jersey, New York, and Sweden.   AstraZeneca denies any remaining or inconsistent allegations of paragraph 10.

11.    AstraZeneca Pharmaceuticals LP, and AstraZeneca LP, shall be collectively referred to as "AstraZeneca" or "Defendants".   At all times relevant herein, the Defendants' were in the business of designing, testing, monitoring, manufacturing, labeling, advertising, marketing, promoting, selling and distributing pharmaceuticals, including Seroquel, for the use by the mainstream public, including Plaintiff Jean Thomas.

**ANSWER:**    AstraZeneca admits that Plaintiff purports to refer to AstraZeneca Pharmaceuticals LP and AstraZeneca LP collectively as "AstraZeneca" or "Defendants." AstraZeneca further admits that, pursuant to approval by the FDA, it tests, monitors, manufactures, labels, advertises, markets, promotes, sells, and distributes SEROQUEL® for prescription by licensed physicians in the United States.   AstraZeneca denies that it sells prescription medications directly to the "mainstream public" and further denies any remaining or inconsistent allegations of paragraph 11.

## **FACTUAL BACKGROUND**

12.     This is an action against the AstraZeneca Defendants on behalf of the Plaintiff who was prescribed the prescription drug Seroquel, which is an "anti-psychotic" medication belonging to a class of drugs referred to as "atypical anti-psychotics".

**ANSWER:**     AstraZeneca lacks knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff was prescribed SEROQUEL®, and therefore denies same. AstraZeneca admits that SEROQUEL® is an antipsychotic medication and belongs to a class of medications referred to as atypical antipsychotics.   AstraZeneca denies any remaining or inconsistent allegations of paragraph 12.

13.     Plaintiff ingested the prescribed dosage of said drug in accordance with the prescription written for the Plaintiff.

**ANSWER:**   AstraZeneca lacks knowledge or information sufficient to form a belief as to the allegations of paragraph 13, and therefore denies same.

14.     Seroquel causes serious and sometimes fatal injuries including but not limited to, ketoacidosis, pancreatitis, and diabetes mellitus, and other serious health problems associated with the onset of diabetes including heart disease, blindness, coma, seizures and death.

**ANSWER:**   AstraZeneca admits that there have been reports of diabetes and other events in people with schizophrenia and other ailments who were treated with SEROQUEL®, but denies that SEROQUEL® causes diabetes or complications from diabetes.   AstraZeneca denies any remaining or inconsistent allegations of paragraph 14.

15.     At all times relevant herein, the AstraZeneca defendants, either directly or through their agents, servants, and employees, designed, manufactured, marketed, advertised, distributed, and sold Seroquel for the treatment of schizophrenia, bipolar disorder, and other "off-label" uses.

**ANSWER:**   AstraZeneca admits that, pursuant to approval by the FDA, it manufactures, markets, advertises, distributes, and sells SEROQUEL® for prescription by licensed physicians in the United States in accordance with its FDA-approved labeling.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 15.

16.     Those persons who were prescribed and ingested Seroquel, including Plaintiff, have suffered severe and permanent personal injuries, including diabetes, pancreatitis, hyperglycemia, diabetic ketoacidosis, diabetic coma, and death, as well as other severe and permanent injuries.

**ANSWER:**   AstraZeneca admits that there have been reports of diabetes and other events in people with schizophrenia and other ailments who were treated with SEROQUEL®, but denies that SEROQUEL® causes diabetes or complications from diabetes.  AstraZeneca states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegation that Plaintiff was prescribed and ingested SEROQUEL®, and has suffered injuries, and therefore denies same.  AstraZeneca further denies any remaining or inconsistent allegations of paragraph 16.

### History of Seroquel

17.     In September 1997, the Food and Drug Administration ("FDA") approved the newest "atypical anti-psychotic," Seroquel, for use in the United States.  At that time, Seroquel was approved for use in dosages of 25 mg, 100 mg, and 200 mg tablets.

**ANSWER:**  AstraZeneca states that SEROQUEL® was approved by the FDA on September 26, 1997 for prescription by licensed physicians in the United States in accordance with its FDA-approved labeling.  AstraZeneca denies that SEROQUEL® "was approved for use in [the] dosages" identified in paragraph 17, and states that, in September 1997, SEROQUEL® was available for prescription by licensed physicians in 25 mg, 100 mg, 200 mg, and 300 mg tablets.  AstraZeneca denies any remaining or inconsistent allegations of  paragraph 17.

18.     Seroquel is now available in 25 mg, 50 mg, 100 mg, 200 mg, 300 mg, and 400 mg dosages.

**ANSWER:**  AstraZeneca denies that SEROQUEL® "is now available in 25 mg, 50 mg, 100 mg, 200 mg, 300 mg, and 400 mg dosages," and states that SEROQUEL® is available for prescription by licensed physicians in the United States in 25 mg, 50 mg, 100 mg, 200 mg, 300 mg, and 400 mg tablets.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 18.

19.     The prescription drug Seroquel is an "anti-psychotic" medication, belonging to a class of drugs referred to as "atypical anti-psychotics".  Other atypical anti-psychotics include Zyprexa (Eli Lilly), Risperdal (Johnson & Johnson) and Abilify (Bristol-Myers Squibb), which have been in use in the United States since the early to mid 1990's.

**ANSWER:**  AstraZeneca admits that SEROQUEL® is an antipsychotic medication and belongs to a class of medications referred to as atypical antipsychotics.  AstraZeneca further admits that atypical antipsychotic medications other than SEROQUEL® are available in the United States.  AstraZeneca states that it lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 19, and therefore denies same.

20.     Seroquel is a medication commonly prescribed to patients to aid in the treatment of mental disorders including schizophrenia.  The pharmacologic action of Seroquel is thought to be dependent on its ability to block or moderate the level of dopamine, a chemical found in the brain that in excessive amounts is believed to cause abnormal thinking and hallucinations.  It appears to work primarily by blocking neurotransmitted sites of serotonin and dopamine, as well as histamine receptors.

**ANSWER:** AstraZeneca states that the allegations of paragraph 20 do not fully and accurately describe the purposes for which physicians prescribe SEROQUEL®, nor do they fully and accurately describe prevailing medical prescribing practices and the state of medical and scientific understanding with respect to the pharmacodynamics of the medication, and therefore Plaintiff's allegations pertaining to same are denied.  AstraZeneca further denies any remaining or inconsistent allegations of paragraph 20.

21.     Seroquel was widely advertised, marketed and represented by the AstraZeneca Defendants, in its label, package insert, *Physicians Desk Reference* entry and otherwise, as a safe and effective atypical anti-psychotic.

**ANSWER:**  AstraZeneca states that the phrase "widely advertised, marketed and represented" is vague and ambiguous.  Accordingly, AstraZeneca denies any allegations of paragraph 21 pertaining to same.  AstraZeneca admits that, pursuant to approval by the FDA, it advertises and markets SEROQUEL® for prescription by licensed physicians in the United States.  AstraZeneca further admits that, as the FDA has concluded, SEROQUEL® is safe and effective when prescribed and used in accordance with its FDA-approved labeling.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 21.

22.     Seroquel was marketed heavily by the AstraZeneca Defendants as a safe and effective treatment for the treatment of schizophrenia and the AstraZeneca Defendants' promised fewer side effects than other similar treatments including the other atypical anti-psychotics on the market.

**ANSWER:**     AstraZeneca states that the phrase "marketed heavily" is vague and ambiguous. Accordingly, AstraZeneca denies any allegations of paragraph 22 pertaining to same. AstraZeneca admits that, as the FDA has concluded, SEROQUEL® is safe and effective when prescribed and used in accordance with the FDA-approved labeling.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 22.

23.     The AstraZeneca Defendants, through their marketing departments, sales managers, and field sales force and other agents, servants and employees promoted the drug for uses beyond its approved indications, offering incentives to doctors to increase prescriptions.  Through these marketing efforts, the AstraZeneca Defendants were able to capture a larger market share in the anti-psychotic market.

**ANSWER:**     AstraZeneca denies the allegations of paragraph 23.

24.     These marketing efforts were designed and implemented to create the impression in physicians', patients' and plaintiff's minds that Seroquel was safe and effective and that it carried less risk of side effects and adverse reactions than other available treatments.

**ANSWER:**     AstraZeneca admits that, as the FDA has concluded, SEROQUEL® is safe and effective when prescribed and used in accordance with its FDA-approved labeling.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 24.

25.     The marketing and promotion efforts of the AstraZeneca Defendants, their agents, servants and/or employees served to overstate the benefits of Seroquel and minimize and downplay the risks associated with the drug.

**ANSWER:**     AstraZeneca denies the allegations of paragraph 25.

26.     On May 6, 1999, the AstraZeneca Defendants were told by the FDA that materials they continued to distribute, despite a warning letter dated November 24, 1998, were "determined to be false, lacking in fair balance, or otherwise misleading, and in violation of the Federal Food, Drug and Cosmetic Act and the regulations promulgated thereunder."

**ANSWER:**  AstraZeneca admits that it received letters from the FDA on May 6, 1999 and on November 24, 1998, and states that these documents speak for themselves.  AstraZeneca denies that the November 24, 1998 letter made any reference to SEROQUEL®.  AstraZeneca further denies that the allegations of paragraph 26 accurately characterize the nature or content of the letters received by AstraZeneca.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 26.

27.     The FDA had specific objections to numerous promotional materials that they directed be "[I]mmediately discontinued...".  These objections involved the AstraZeneca Defendants use of promotional materials and included the following:

   a.     Materials that state or imply that Seroquel is effective in a broader range of mental conditions, including bipolar disorder and schizoaffective disorder, are misleading (e.g., brochures #SQ1035, #SQ1112).  Seroquel is indicated for the manifestations of psychotic disorders as determined by clinical trials in schizophrenic inpatients.  Application to broader or additional mental disorders would require substantiation from adequate and well-controlled studies designed to examine the specific mental conditions.

   b.     The mechanism of action of Seroquel, as well as other antipsychotic drugs, is unknown.  Therefore, materials that discuss how Seroquel "works" without

stressing the theoretical nature of this information, are misleading (e.g., brochures #SQ1059, #PR 1048).

    c.    Materials in which the prominence and readability of the risk information fails to be reasonably comparable to the information regarding the effectiveness of Seroquel lack fair balance (e.g., journal ad #SQ1089, brochure #SQ1139).  In addition, materials that fail to disclose the important warnings and precautions (i.e., neuroleptic malignant syndrome, tardive dyskinesia, orthostatic hypotension, risk of cataract development, and seizures) are lacking fair balance because these are considered to be priority safety consideration (e.g., journal #SQ1088).

**ANSWER:**  AstraZeneca admits that it  received a letter from the FDA on May 6, 1999, and further states that the letter speaks for itself.  AstraZeneca denies that the allegations of paragraph 27 fully and accurately quote the content of the May 6, 1999 letter.  AstraZeneca further denies any remaining or inconsistent allegations of paragraph 27, including all its subparts.

28.     The AstraZeneca Defendants made affirmative assertions of material fact including but not limited to Seroquel was safe if used as directed, no specific laboratory tests were recommended and Seroquel was safer than other alternative medications.

**ANSWER:**  AstraZeneca admits that, as the FDA has concluded, SEROQUEL® is safe and effective when prescribed and used in accordance with its FDA-approved labeling.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 28.

29.     The AstraZeneca Defendants knew these assertions to be false or recklessly failed to ascertain their truth or falsity.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 29.

30.     The AstraZeneca Defendants also fraudulently concealed important safety information from physicians, the FDA, the public and Plaintiff, including but not limited to the AstraZeneca Defendants' awareness of numerous reports of diabetes associated with the use of Seroquel,

beyond the background rate, and beyond the rate for other anti-psychotic agents.  The

AstraZeneca Defendants as manufacturers of ethical drugs had a duty to disclose said

information

**ANSWER:**  AstraZeneca admits that there have been reports of diabetes in people with

schizophrenia and other ailments who were treated with SEROQUEL®, but denies that

SEROQUEL® causes diabetes or complications from diabetes.  AstraZeneca further

states that the allegations of paragraph 30 pertaining to AstraZeneca's "duty" fail to fully and

accurately state AstraZeneca's duty under the law, and therefore denies same.  AstraZeneca

admits that it complied with its duty under the law at all relevant times.  AstraZeneca denies any

remaining or inconsistent allegations of paragraph 30.

31.    The AstraZeneca Defendants were aware that the drug caused diabetes mellitus,

pancreatitis and ketoacidosis, but the AstraZeneca Defendants concealed such information and

made misrepresentations that the drug was safe.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 31.

32.    The anti-psychotic drug market is one of the largest drug markets worldwide.

**ANSWER:**  AstraZeneca states that the allegations of paragraph 32 are conclusory, vague, and

ambiguous.  Accordingly, AstraZeneca states that it lacks knowledge or information sufficient to

form a belief as to the truth of the allegations of paragraph 32, and therefore denies same.

33.    The AstraZeneca Defendants viewed Seroquel as a blockbuster product with significant

projected growth potential.  In 2002 alone, Seroquel reached over $1.1 Billion in sales.

**ANSWER:**  AstraZeneca states that the allegation of paragraph 33 that "[d]efendants viewed

Seroquel as a blockbuster product" is conclusory, vague, and ambiguous.  Accordingly,

AstraZeneca states that it lacks knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph 33 pertaining to same, and therefore denies same.

AstraZeneca denies the annual sales allegations of paragraph 33 to the extent that the figures are

inconsistent with those reported by AstraZeneca plc in its annual financial statements, which

reports are publicly available.  AstraZeneca further denies the remaining allegations of paragraph

33.

34.     Upon information and belief, Seroquel is one of the AstraZeneca Defendants' top-selling

drugs.

**ANSWER:**  AstraZeneca states that the allegation of paragraph 34 that SEROQUEL® "is one of

the AstraZeneca Defendants' top-selling drugs" is conclusory, vague, and ambiguous.

Accordingly, AstraZeneca states that it lacks knowledge or information sufficient to form a

belief as to the truth of the allegations of paragraph 34, and therefore denies same.

35.     Since the AstraZeneca Defendants introduced Seroquel in 1997, over 24.6 million

prescriptions have been made and it has been prescribed to more than 13 million people

worldwide.

**ANSWER:**  AstraZeneca admits that over 24.6 million prescriptions have been written for

SEROQUEL®, constituting more than 13 million patient exposures worldwide.  AstraZeneca

denies any remaining or inconsistent allegations of paragraph 35.

36.     In 2003, approximately seven million prescriptions for Seroquel were dispensed,

resulting in more than $2 Billion in sales.

**ANSWER:**  AstraZeneca denies the annual sales allegations of paragraph 36 to the extent that

the figures are inconsistent with those reported by AstraZeneca plc in its annual financial

statements, which reports are publicly available.  AstraZeneca further denies any remaining or

inconsistent allegations of paragraph 36.

37.     In 2005, Seroquel reached approximately $2.7 Billion in annual sales and controlled approximately 31% of the market share for atypical anti-psychotics.

**ANSWER:**  AstraZeneca denies the annual sales allegations of paragraph 37 to the extent that the figures are inconsistent with those reported by AstraZeneca plc in its annual financial statements, which reports are publicly available.  AstraZeneca states that the remaining allegations of paragraph 37 are conclusory, vague, and ambiguous.  Accordingly, AstraZeneca states that it lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 37, and therefore denies same.

38.     Worldwide sales of Seroquel in the first quarter of 2006 compared with sales a year ago in the same period were $807 million, up 27 percent.

**ANSWER:**  AstraZeneca denies the annual sales allegations of paragraph 38 to the extent that the figures are inconsistent with those reported by AstraZeneca plc in its annual financial statements, which reports are publicly available.  AstraZeneca further denies any remaining or inconsistent allegations of paragraph 38.

**<u>Adverse Effects Related to Seroquel Use</u>**

39.     In an extensive independent study of over 8,000 New York mental health patients, published in September of 2004, it was found that the risk of diabetes was over 300% higher in patients who took Seroquel.

**ANSWER:**  AstraZeneca states that the phrase "an extensive independent study" is vague and ambiguous.  Accordingly, AstraZeneca states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 39 pertaining to same, and therefore denies same.  AstraZeneca further denies any remaining or inconsistent allegations of paragraph 39.

40.     The use of Seroquel is now known by the public, the FDA, and physicians to cause serious and sometimes fatal injuries including, but not limited to, ketoacidosis, pancreatitis, and diabetic mellitus, and other serious health problems associated with diabetes including heart disease, blindness, coma, seizures, and death.

**ANSWER:**  AstraZeneca admits that there have been reports of diabetes in people with schizophrenia and other ailments who were treated with SEROQUEL®, but denies that SEROQUEL® causes diabetes or complications from diabetes.  AstraZeneca further denies any remaining or inconsistent allegations of paragraph 40.

41.     In August 2003, the AstraZeneca Defendants became further aware of the link between Seroquel and diabetes.  These new reports, described an increased incidence of diabetes in patients receiving Seroquel, than in patients receiving older anti-psychotics, or even other atypicals, including Zyprexa, Clozaril, and Risperdal.

**ANSWER:**  AstraZeneca states that the phrase "[t]hese new reports" is vague and ambiguous.  Accordingly, AstraZeneca states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 41 pertaining to same, and therefore denies same.  AstraZeneca admits that there have been reports of diabetes in people with schizophrenia and other ailments who were treated with SEROQUEL®, but denies that SEROQUEL® causes diabetes or complications from diabetes.  AstraZeneca further denies any remaining or inconsistent allegations of paragraph 41.

42.     The reported risk associated with Seroquel and the onset of diabetes is nearly 3.34 times higher than older drugs used to treat schizophrenia, such as Haldol.  According to these reports, compared to other drugs in its class, Zyprexa, (Eli Lilly & Co.) - 1.27 times more likely, and

Risperdal (Johnson & Johnson) - 1.49 times more likely, Seroquel has a much greater increased association with the onset of diabetes mellitus than any other anti-psychotic on the market.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 42.

43.     Consumers, including Plaintiff, who have used Seroquel, have available several alternative anti-psychotic medications.

**ANSWER:**  AstraZeneca states that the phrase "several alternative anti-psychotic medications" is vague and ambiguous.  Accordingly, AstraZeneca states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 43, and therefore denies same.

44.     In fact, in December 2000, the AstraZeneca Defendants knew that there was no clear evidence that Seroquel was more effective or better tolerated than conventional anti-psychotics including Haldol and Thorazine.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 44.

45.     It should be noted that there is a significant difference among the costs of Haldol and Seroquel per month: $35 versus $414, respectively.

**ANSWER:**  AstraZeneca denies that the allegations of paragraph 45 fully and accurately state the purchase price for SEROQUEL® or Haldol per month, which necessarily depends upon dosage and other critical factors.  AstraZeneca further states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegation that Haldol costs $35 per month, and therefore denies same.  AstraZeneca further denies any remaining or inconsistent allegations of paragraph 45.

**Seroquel Causes Diabetes and Other Serious Injuries**

46.     Shortly after the AstraZeneca Defendants began selling Seroquel, the AstraZeneca

Defendants began to receive reports of consumers who were using Seroquel suffering from

hyperglycemia, acute weight gain, exacerbation of diabetes mellitus (hereinafter "diabetes"),

development of diabetes, pancreatitis, and other several diseases and conditions.  The

AstraZeneca Defendants knew, or should have been aware of these reports.

**ANSWER**:  AstraZeneca admits that there have been reports of diabetes and other adverse

events in people with schizophrenia and other ailments who were treated with SEROQUEL®,

but denies that SEROQUEL® causes diabetes or complications from diabetes.  AstraZeneca

denies any remaining or inconsistent allegations of paragraph 46.

47.     By July 2001, the AstraZeneca Defendants had received at least 46 reports of patients

taking Seroquel and developing hyperglycemia or diabetes mellitus, of which there were 21

cases of ketoacidosis or acidosis and 11 deaths.  By December 31, 2003, the AstraZeneca

Defendants had received reports of at least 23 additional cases, bringing the total to 69.  Most of

these patients developed the above conditions within six months of their use of Seroquel.

**ANSWER**:  AstraZeneca states that the phrase "reports" is vague and ambiguous.  Accordingly,

AstraZeneca states that it lacks knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph 47, and therefore denies same.

48.     The AstraZeneca Defendants were or should have been aware of studies and articles in

1998 and 1999 confirming a link between drugs like Seroquel and new onset diabetes and

permanent hyperglycemia related adverse events.  *Wirshing.  DA, Novel Antipsychotics and New*

*Onset Diabetes*. Biol. Psychiatry, 1998: 15, 44:778-83; *Allison*, *DB, Antipsychotic-Induced*

*Weight Gain: A Comprehensive Research Synthesis*.  Am. J. Psychiatry, 1999:156:1686-96.

**ANSWER:**  AstraZeneca states that, upon information and belief, a 1998 article in *Biological Psychiatry*, and a 1999 article in the *American Journal of Psychiatry*, discuss antipsychotics, and further states that these articles speak for themselves.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 48.

49.    Studies conducted in the United States and Europe have established that numerous patients treated with Seroquel experienced a significantly higher incidence of severe and permanent diseases and conditions, including dangerous rises in blood glucose levels.

**ANSWER:**  AstraZeneca admits that there have been reports of diabetes and other adverse events in people with schizophrenia and other ailments who were treated with SEROQUEL®, but denies that SEROQUEL® causes diabetes or complications from diabetes.  AstraZeneca states that the remaining allegations of paragraph 49 are vague and ambiguous, especially the phrase "[s]tudies conducted in the United States and Europe."  Accordingly, AstraZeneca states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 49, and therefore denies same.

### **Defendants' Failure to Warn of the Dangers of Seroquel**

50.    At the time of the prescription of Seroquel to the Plaintiff, the AstraZeneca Defendants had not adequately warned Plaintiff or his physicians, and/or did not adequately and effectively communicate all warnings about the risk of diabetes, hyperglycemia, diabetic ketoacidosis, or other serious injuries caused by Seroquel.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 50.

51.    The product warnings for Seroquel in effect during the relevant time period were vague, incomplete or otherwise inadequate, both substantively and graphically, to alert prescribing physicians as well as consumer patients of the actual risks presented by the use of this drug.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 51.

52.     In fact, the product information section for Seroquel in the *Physicians Desk Reference* for the years 1999, 2000, 2001, 2002, 2003 and 2004, contains no statement in the WARNINGS section to alert anyone of the risks of diabetes, ketoacidosis or pancreatitis associated with the use of Seroquel.

**ANSWER:**  AstraZeneca denies that the allegations of paragraph 52 fully and accurately state the warnings and information provided in past and current SEROQUEL® labeling, and therefore denies same.  AstraZeneca further denies any remaining or inconsistent allegations of paragraph 52.

53.     However, in Japan, the AstraZeneca Defendants warned of the risks of diabetes since 2002.

**ANSWER:**  AstraZeneca states, upon information and belief, that Japan's Ministry of Health, Labor, and Welfare has required language in the labeling of SEROQUEL® in Japan relating to diabetes and glucose monitoring, but denies that the Japanese labeling for SEROQUEL® is safer or more accurate than the FDA-approved U.S. labeling for SEROQUEL®.  AstraZeneca further denies that Plaintiff has accurately characterized the nature of safety information required by Japan's Ministry of Health, Labor, and Welfare.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 53.

54.     The Japanese "label" for Seroquel provides, and has provided since 2002, a detailed warning regarding the risks of diabetes associated with Seroquel, and specifically informs physicians regarding the necessity of monitoring patients on Seroquel.  At the time Plaintiff ingested Seroquel, the AstraZeneca Defendants had not adopted this label for the distribution of Seroquel in the United States.

**ANSWER:**  AstraZeneca states, upon information and belief, that Japan's Ministry of Health, Labor, and Welfare has required language in the labeling of SEROQUEL® in Japan relating to diabetes and glucose monitoring, but denies that the Japanese labeling for SEROQUEL® is safer or more accurate than the FDA-approved U.S. labeling for SEROQUEL®.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 54.

55.     The label the AstraZeneca Defendants issued in Japan, but not in the United States, warns specifically of the diabetes risk, prominently in the beginning of the package label stating:

     a.     Quetiapine is contraindicated for use in patients with diabetes or a history of diabetes;

     b.     Quetiapine should be used with caution in patients with risk factors for diabetes, including hyperglycemia, obesity or a family history if diabetes;

     c.     Patients receiving quetiapine should be carefully monitored for symptoms of hyperglycemia and the drug should be discontinued if such symptoms occur.  The symptoms of severe hyperglycemia include weakness, excessive eating, excessive thirst, and excessive urination; and,

     d.     Physicians should educate patients and their family members about the risk of serious hyperglycemia associated with quetiapine and how to identify the symptoms of hyperglycemia.

**ANSWER:**  AstraZeneca states, upon information and belief, that Japan's Ministry of Health, Labor, and Welfare has required language in the labeling of SEROQUEL® in Japan relating to diabetes and glucose monitoring, but denies that the allegations of paragraph 55 fully and accurately state that warning.  AstraZeneca further denies that SEROQUEL® causes diabetes, and denies any remaining or inconsistent allegations of paragraph 55, including all its subparts.

56.     On September 11, 2003, the FDA informed the AstraZeneca Defendants that they must make labeling changes to Seroquel, due to an increasing prevalence of diabetes-related illnesses associated with this drug.  The following information appeared in the WARNINGS section for Seroquel in the 2005 *Physicians Desk Reference*:

Hyperglycemia, in some cases extreme and associated with ketoacidosis or hyperosmolar coma or death, has been reported in patients treated with atypical antipsychotics, including Seroquel. Assessment of the relationship between atypical antipsychotic use and glucose abnormalities is complicated by the possibility of an increased background risk of diabetes mellitus in patients with schizophrenia and the increasing incidence of diabetes mellitus in the general population. Given these confounders, the relationship between atypical antipsychotic use and hyperglycemia-related adverse events is not completely understood. However, epidemiologic studies suggest an increased risk of treatment emergent hyperglycemia-related adverse events in patients treated with atypical antipsychotics. Precise risk estimates for hyperglycemia-related adverse events in patients treated with atypical antipsychotics are not available.

Patients with an established diagnosis of diabetes mellitus who are started on atypical antipsychotics should be monitored regularly for worsening of glucose control. Patients with risk factors for diabetes mellitus (e.g., obesity, family history of diabetes) who are starting treatment with atypical antipsychotics should undergo fasting blood glucose testing at the beginning of treatment and periodically during treatment. Any patient treated with atypical antipsychotics should be monitored for symptoms of hyperglycemia including polydipsia, polyuria, polyphagia, and weakness. Patients who develop symptoms of hyperglycemia during treatment with atypical antipsychotics should undergo fasting blood glucose testing. In some cases, hyperglycemia has resolved when the atypical antipsychotic was discontinued; however, some patients required continuation of anti-diabetic treatment despite discontinuation of the suspect drug.

**ANSWER:**  AstraZeneca admits that it received a letter from the FDA dated September 11, 2003, directed to all manufacturers of atypical antipsychotics, which provided class labeling that included warnings related to glucose dysregulation. AstraZeneca, upon information and belief, admits that information regarding SEROQUEL® appears in the 2005 *Physicians Desk Reference*, but denies that the allegations of paragraph 56 fully and accurately reiterate that information. AstraZeneca denies any remaining or inconsistent allegations of paragraph 56.

57.     Recently, researchers at the National Institute of Mental Health published a report on atypical anti-psychotics, including Seroquel, which found that the majority of patients in each

group discontinued their assigned treatment owing to inefficacy or intolerable side effects or for other reasons and that the atypicals, including Seroquel, were no more effective than the older, cheaper, and still available conventional antipsychotic perphenazine.  This report echoes the conclusions reported in the *British Medical Journal* in 2000.

**ANSWER**:  AstraZeneca states that, upon information and belief, the National Institutes of Health, Office of Science and Planning, provided support for a study on weight gain in schizophrenics, and states that the study speaks for itself.  AstraZeneca further states that, upon information and belief, an article comparing the use of atypical antipsychotics in the treatment of schizophrenia was published in a December 2000 issue of the *British Medical Journal*, and states that the article speaks for itself.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 57.

58.     The AstraZeneca Defendants misrepresented and failed to appropriately warn consumers, including Plaintiff, and the medical and psychiatric communities of the dangerous risk of developing diabetes, pancreatitis, hyperglycemia, diabetic ketoacidosis, and diabetic coma, as well as other severe and permanent health consequences caused by Seroquel, and consequently placed their profits above the safety of its customers.

**ANSWER**:  AstraZeneca denies the allegations of paragraph 58.

59.     By reason of the foregoing, Plaintiff has been severely and permanently injured and will require constant and continuous medical care and treatment.

**ANSWER**:  AstraZeneca denies the allegations of paragraph 59.

<b><u>Plaintiff's Use of Seroquel</u></b>

60.     Plaintiff was prescribed and began taking Seroquel as prescribed by his prescriber.

**ANSWER:**  AstraZeneca states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 60, and therefore denies same.

61.     Plaintiff used Seroquel as prescribed and in a foreseeable manner.

**ANSWER:**  AstraZeneca states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 61, and therefore denies same.

62.     As a direct and proximate result of using Seroquel, Plaintiff was seriously injured and has developed the permanent, life threatening condition of diabetes.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 62.

63.     Plaintiff, as a direct and proximate result of ingesting Seroquel, has suffered severe pain and has sustained permanent injuries and emotional distress.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 63.

64.     Had Plaintiff known of the full extent of the risks and dangers associated with Seroquel, Plaintiff would not have taken Seroquel.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 64.

## Equitable Tolling of Applicable Statutes of Limitations

65.     The running of any statute of limitation has been tolled by reason of the AstraZeneca Defendants' fraudulent conduct.  The AstraZeneca Defendants, through their affirmative misrepresentations and omissions, actively concealed from Plaintiff and Plaintiff's prescribing physicians the true risks associated with taking Seroquel.

**ANSWER:**  AstraZeneca states that the allegations of paragraph 65 pertaining to tolling of the statute of limitations constitute legal conclusions to which no response is required.  To the extent that such allegations are construed as factual allegations directed to AstraZeneca, they are denied.  AstraZeneca denies all remaining allegations of paragraph 65.

66.     As a result of the AstraZeneca Defendants actions, Plaintiff and Plaintiff's prescribing physicians were unaware, and could not reasonably know or have learned through reasonable diligence that Plaintiff had been exposed to the risks alleged herein and that those risks were the direct and proximate result of the AstraZeneca Defendants' acts and omissions.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 66.

67.     Furthermore, the AstraZeneca Defendants are estopped from relying on any statute of limitations because of their fraudulent concealment of the truth, quality and nature of Seroquel. The AstraZeneca Defendants were under a duty to disclose the true character, quality and nature of Seroquel because this was non-public information over which the AstraZeneca Defendants had and continue to have exclusive control, and because the AstraZeneca Defendants knew that this information was not available to the Plaintiff, medical providers and/or to health facilities. In addition, the AstraZeneca Defendants are estopped from relying on any statute of limitation because of their intentional concealment of these facts.

**ANSWER:**  AstraZeneca states that the allegations of paragraph 67 constitute legal conclusions to which no response is required.  To the extent that such allegations are construed as factual allegations directed to AstraZeneca, it denies that the allegations of paragraph 67 fully and accurately state its duty under the law.  AstraZeneca admits that it complied with its duty under the law at all relevant times.  AstraZeneca denies the remaining allegations of paragraph 67.

68.     The Plaintiff had no knowledge that the AstraZeneca Defendants were engaged in the wrongdoing alleged herein.  Because of the fraudulent acts of concealment of wrongdoing by the AstraZeneca Defendants, Plaintiff could not have reasonably discovered the wrongdoing at any time prior.  Also, the economics of this fraud should be considered.  The AstraZeneca Defendants had the ability to and did spend enormous amounts of money in furtherance of their

purpose of marketing and promoting a profitable drug, notwithstanding the known or reasonably

known risks.  Plaintiff and his/her medical professionals could not have afforded and could not

have possibly conducted studies to determine the nature, extent and identify of related health

risks, and were forced to rely on the AstraZeneca Defendants' representations.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 68.

**COUNT I**
**NEGLIGENCE**

69.     Plaintiff hereby adopts and incorporates by reference all preceding paragraphs as if fully

set forth herein and further alleges as follows:

**ANSWER:**  AstraZeneca incorporates by reference the preceding paragraphs of this Answer as

if fully set forth herein.

70.     The AstraZeneca Defendants were in the business of testing, designing, manufacturing,

packaging, promoting, distributing, performing quality assurance evaluations and/or selling

Seroquel.

**ANSWER:**  AstraZeneca admits that, pursuant to approval by the FDA, it tests, manufactures,

packages, promotes, distributes, and sells SEROQUEL® for prescription by licensed physicians

in the United States.  AstraZeneca denies any remaining or inconsistent allegations of paragraph

70.

71.     The AstraZeneca Defendants owed a duty of reasonable care to Plaintiff to license, test,

design, manufacture, package, properly and adequately warn, promote, distribute, perform

quality assurance evaluations, and/or sell Seroquel in a safe condition.

**ANSWER:**  AstraZeneca states that the allegations of paragraph 71 constitute legal conclusions

to which no response is required.  To the extent that the allegations of paragraph 71 are construed

as factual allegations directed to AstraZeneca, it states that the allegations of paragraph 71 are

27

conclusory, vague, and ambiguous and denies that the allegations fully and accurately state its duty under the law.  AstraZeneca admits that it complied with its duty under the law at all relevant times.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 71.

72.     The AstraZeneca Defendants had a duty not to introduce a pharmaceutical drug, such as Seroquel, into the stream of commerce that caused users of said drug, including Plaintiff to suffer from unreasonable, dangerous and adverse side effects.

**ANSWER**:  AstraZeneca states that the allegations of paragraph 72 constitute legal conclusions to which no response is required.  To the extent that the allegations of paragraph 72 are construed as factual allegations directed to AstraZeneca, it states that the allegations are conclusory, vague and ambiguous and denies that the allegations fully and accurately state its duty under the law.  AstraZeneca admits that it complied with its duty under the law at all relevant times.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 72.

73.     The AstraZeneca Defendants breached their duty in that they and/or their agents, servants or employees failed to exercise reasonable care and were negligent and/or were reckless in the licensing, testing, quality assurance, design, manufacture, packaging, warning, advertising, promotion, distribution and sale of the product.

**ANSWER**:  AstraZeneca states that the allegations of paragraph 73 constitute legal conclusions to which no response is required.  To the extent that the allegations of paragraph 73 are construed as factual allegations directed to AstraZeneca, it denies that the allegations of paragraph 73 fully and accurately state its duty under the law, and therefore denies same.  AstraZeneca admits that it complied with its duty under the law at all relevant times.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 73.

74.     The AstraZeneca Defendants' conduct was wanton, reckless and malicious so as to permit the recovery of punitive damages.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 74.

75.     By reason of the foregoing, Plaintiff was caused bodily injury, pain, suffering and economic loss.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 75.

76.     As a direct and proximate result of one or more of these wrongful acts or omissions of the AstraZeneca Defendants, or some or any one of them, Plaintiff suffered profound injuries which are permanent and continuing in nature; required and will require medical treatment and hospitalization; have become and will become liable for medical and hospital expenses; lost and will lose financial gains; have been and will be kept from ordinary activities and duties and have and will continue to experience mental and physical pain and suffering, disability and loss of enjoyment of life, all of which damages will continue in the future.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 76.

WHEREFORE, Plaintiff demands judgment against each of the AstraZeneca Defendants individually, jointly and/or severally for all such compensatory, statutory and punitive damages available under applicable law, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

**ANSWER:**  AstraZeneca denies the allegations of the unnumbered paragraph on page 15 of the Complaint, and denies that Plaintiff is entitled to any damages or any other relief of any kind whatsoever.

**COUNT II**
**FRAUD**

77.     Plaintiff hereby adopts and incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

**ANSWER:**  AstraZeneca incorporates by reference the preceding paragraphs of this Answer as if fully set forth herein.

78.     As set forth under the facts herein, and pending discovery, the AstraZeneca Defendants' representatives through national advertising, promotional campaigns, standardized package inserts, related materials, purchased or subsidized so-called expert opinions both orally and in print and in correspondence to healthcare professionals, and in submissions and reports to the FDA, and product information regarding the characteristics of and the quality of Seroquel, were false, misleading, materially incorrect in fact, and were made knowingly, intentionally, and /or willfully to deceive without regard to the safety and use of the product and were acted on in reasonable reliance by Plaintiff's prescribing physicians and medical professionals and Plaintiff, to Plaintiff's substantial detriment and injury.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 78.

79.     The AstraZeneca Defendants distributed false and misleading materials to physicians, Plaintiff's physicians and Plaintiff that the FDA "determined to be false, lacking in fair balance, or otherwise misleading, and in violation of the Federal Food, Drug and Cosmetic Act and the regulations promulgated thereunder."

**ANSWER:**  AstraZeneca denies the allegations of paragraph 79.

80.     The FDA directed that the AstraZeneca Defendants discontinued the use of various promotional materials that were distributed to physicians, Plaintiff's physicians and Plaintiff and stated as follows:

  a.      Materials that state or imply that Seroquel is effective in a broader range of mental conditions, including bipolar disorder and schizoaffective disorder, are

30

misleading (e.g., brochures #SQ1035, #SQ1112).  Seroquel is indicated for the manifestations of psychotic disorders as determined by clinical trials in schizophrenic inpatients.  Application to broader or additional mental disorders would require substantiation from adequate and well-controlled studies designed to examine the specific mental conditions.

b.     The mechanism of action of Seroquel, as well as other antipsychotic drugs, is unknown.  Therefore, materials that discuss how Seroquel "works" without stressing the theoretical nature of this information, are misleading (e.g., brochures #SQ1059, #PR 1048).

c.     Materials in which the prominence and readability of the risk information fails to be reasonably comparable to the information regarding the effectiveness of Seroquel lack fair balance (e.g., journal ad #SQ1089, brochure #SQ1139).  In addition, materials that fail to disclose the important warnings and precautions (i.e., neuroleptic malignant syndrome, tardive dyskinesia, orthostatic hypotension, risk of cataract development, and seizures) are lacking fair balance because these are considered to be priority safety consideration (e.g., journal #SQ1088).

**ANSWER:**  AstraZeneca admits that AstraZeneca Pharmaceuticals LP and AstraZeneca LP received a letter from the FDA on May 6, 1999, and further states that the letter speaks for itself.  AstraZeneca denies that the allegations of paragraph 80 fully and accurately quote the content of the May 6, 1999 letter.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 80, including all its subparts.

81.     Material information concerning the development of a serious injury related to the use of Seroquel was fraudulently concealed by the AstraZeneca Defendants from Plaintiff's treating physicians and Plaintiff.  The FDA had received reports of 11 Seroquel related deaths and numerous diabetes related injuries.  The AstraZeneca Defendants knew or reasonably should have known of this information and this information was not disclosed to Plaintiff's physicians or to Plaintiff.

**ANSWER:**  AstraZeneca states that the phrase "reports" is vague and ambiguous.  Accordingly, AstraZeneca states that it lacks knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph 81 pertaining to said reports, and therefore denies same. AstraZeneca denies the remaining allegations of paragraph 81.

82.     As part of the warning label in Japan, the AstraZeneca Defendants were required to disclose that individuals with diabetes or a family history of diabetes should not take Seroquel. This important and material information was not communicated to Plaintiff's physicians or to Plaintiff in the United States.

**ANSWER**:  AstraZeneca states, upon information and belief, that Japan's Ministry of Health, Labor, and Welfare has required language in the labeling of SEROQUEL® in Japan relating to diabetes, but denies that the allegations of paragraph 82 fully and accurately state that warning. AstraZeneca further denies that the Japanese labeling for SEROQUEL® is safer or more accurate than the FDA-approved U.S. labeling for SEROQUEL®, and denies that SEROQUEL® causes diabetes.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 82.

83.     The AstraZeneca Defendants intended that the Plaintiff's physicians and patients, including Plaintiff would rely upon such misrepresentations.

**ANSWER**:  AstraZeneca denies the allegations of paragraph 83.

84.     The AstraZeneca Defendants' representations as set forth above regarding the quality and characteristics of Seroquel were willful and/or reckless misrepresentations of material fact made with the intent to induce Plaintiff and Plaintiff did, without knowledge of their falsity, directly or indirectly, justifiably act upon those willful misrepresentations to Plaintiff's injury.

**ANSWER**:  AstraZeneca denies the allegations of paragraph 84.

85.     Plaintiff relied to their detriment on these material misrepresentations and suffered serious injuries including but not limited to diabetes mellitus, ketoacidosis and pancreatitis.

**ANSWER**:  AstraZeneca denies the allegations of paragraph 85.

86.      As a result of the foregoing, Plaintiff was caused bodily injury, pain, suffering and economic loss.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 86.

87.      As a direct and proximate result of one or more of these wrongful acts or omissions of the AstraZeneca Defendants, or some or any one of them, Plaintiff suffered profound injuries which are permanent and continuing in nature; required and will require medical treatment and hospitalization; have become and will become liable for medical and hospital expenses; lost and will lose financial gains; have been and will be kept from ordinary activities and duties and have and will continue to experience mental and physical pain and suffering, disability and loss of enjoyment of life, all of which damages will continue in the future.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 87.

WHEREFORE, Plaintiff demands judgment against each of the AstraZeneca Defendants individually, jointly and/or severally for all such compensatory, statutory and punitive damages available under applicable law, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

**ANSWER:**  AstraZeneca denies the allegations of the unnumbered paragraph on page 18 of the Complaint, and denies that Plaintiff is entitled to any damages or any other relief of any kind whatsoever.

### COUNT III
### FRAUDULENT CONCEALMENT

88.      Plaintiff hereby adopts and incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

**ANSWER:** AstraZeneca incorporates by reference the preceding paragraphs of this Answer as if fully set forth herein.

89.     As set forth under the facts herein, and pending discovery, the AstraZeneca Defendants fraudulently concealed from the Plaintiff's physicians and Plaintiff that Seroquel was dangerous and not as effective for its purpose as represented, and imposed greater risks than disclosed.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 89.

90.     The AstraZeneca Defendants as the manufacturer of ethical drugs were under a duty to timely disclose adequate warnings and information to the medical profession, Plaintiff's physicians and Plaintiff under laws requiring them not to engage in false and deceptive trade practices, and because the AstraZeneca Defendants were experts in the field, they are under a continuous duty to keep abreast of scientific developments touching on Seroquel and to know the true state of the facts about the dangerous and defective nature of Seroquel.

**ANSWER:**  AstraZeneca states that the allegations of paragraph 90 constitute legal conclusions to which no response is required.  To the extent that the allegations of paragraph 90 are construed as factual allegations directed to AstraZeneca, it states that the allegations of paragraph 90 are conclusory, vague, and ambiguous.  AstraZeneca denies that the allegations of paragraph 90 fully and accurately state its duty under the law, and therefore denies same.  AstraZeneca admits that it complied with its duty under the law at all relevant times.  AstraZeneca further denies any remaining or inconsistent allegations of paragraph 90.

91.     The AstraZeneca Defendants had actual knowledge gained from research and adverse event reports, and constructive knowledge from scientific literature and other means of communication, to know of the true risk of Plaintiff's use of Seroquel.  This medical information was fraudulently concealed from Plaintiff's physicians and Plaintiff.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 91.

92.     Material information concerning the development of a serious injury related to the use of Seroquel was fraudulently concealed from Plaintiff's treating physicians and Plaintiff.  The FDA had received reports of 11 Seroquel related deaths and numerous diabetes related injuries.  The AstraZeneca Defendants knew or reasonably should have known of this information and this information was not disclosed to Plaintiff's physicians or to Plaintiff.

**ANSWER:**  AstraZeneca states that the phrase "reports" is vague and ambiguous.  Accordingly, AstraZeneca states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 92 pertaining to said reports, and therefore denies same.  AstraZeneca further denies any remaining or inconsistent allegations of paragraph 92.

93.     Significantly, the AstraZeneca Defendants were required to disclose in Japan specific information that individuals with diabetes or a family history of diabetes should not take Seroquel.  This important and significant information was not communicated to Plaintiff's physicians or to Plaintiff in the United States.

**ANSWER:**  AstraZeneca states, upon information and belief, that Japan's Ministry of Health, Labor, and Welfare has required language in the labeling of SEROQUEL® in Japan relating to diabetes, but denies that the allegations of paragraph 93 fully and accurately state that warning.  AstraZeneca further denies that the Japanese labeling for SEROQUEL® is safer or more accurate than the FDA-approved U.S. labeling for SEROQUEL®, and denies that SEROQUEL® causes diabetes.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 93.

94.     The AstraZeneca Defendants also concealed information that in Japan they had warned, that if a patient developed symptoms of hyperglycemia, then patients should be carefully monitored and Seroquel should be discontinued.  This material information was not disclosed and was fraudulently concealed from Plaintiff's physicians and Plaintiff in the United States.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 94.

95.     These intentional representations suppressed and/or concealed material facts, including

but not limited to:

      a.     suppressing and/or mischaracterizing the known risks to health and effectiveness;

      b.     failing to timely and fully disclose the results of tests and studies on the risks to health and effectiveness;

      c.     failing to disseminate adequate warnings which would disclose the nature and extent of the side effects of the product, the risks to health and effectiveness;

      d.     failing to disclose that adequate and/or standard and/or generally accepted standards for pre-clinical testing had not been done;

      e.     failing to disclose that adequate and/or standard and/or generally accepted standards for post-marketing testing had not been done;

      f.     failing to disclose that alternative products and methods available posed less risk than Seroquel and were at least effective;

      g.     failing to conduct adequate tests and studies on the product prior to marketing and making representations as set forth in this complaint;

      h.     failing to reveal the full nature and extent of the known risks and hazards associated with Seroquel; and

      i.     as otherwise described in this complaint to be discovered during this litigation and to be proven at trial.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 95, including all its subparts.

96.     Plaintiff had no knowledge of the dangerous risks associated with the use of Seroquel and

relied on the AstraZeneca Defendants fraudulent representations and suffered injury as a result

thereof.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 96.

97.     Plaintiff could not have taken any action to reasonably discover that the AstraZeneca

Defendants representations were false and fraudulent.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 97.

98.     By reason of the foregoing, Plaintiff was caused bodily injury, pain, suffering and economic loss.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 98.

99.     As a direct and proximate result of one or more of these wrongful acts or omissions of the AstraZeneca Defendants, or some or any one of them, Plaintiff suffered profound injuries which are permanent and continuing in nature; required and will require medical treatment and hospitalization; have become and will become liable for medical and hospital expenses; lost and will lose financial gains; have been and will be kept from ordinary activities and duties and have and will continue to experience mental and physical pain and suffering, disability and loss of enjoyment of life, all of which damages will continue in the future.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 99.

        WHEREFORE, Plaintiff demands judgment against each of the AstraZeneca Defendants individually, jointly and/or severally for all such compensatory, statutory and punitive damages available under applicable law, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

**ANSWER:**  AstraZeneca denies the allegations of the unnumbered paragraph on page 21 of the Complaint, and denies that Plaintiff is entitled to any damages or any other relief of any kind whatsoever.

### COUNT IV
### FAILURE TO ADEQUATELY WARN

100.    Plaintiff hereby adopts and incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

**ANSWER:** AstraZeneca incorporates by reference the preceding paragraphs of this Answer as if fully set forth herein.

101.    The AstraZeneca Defendants, as a manufacturer of pharmaceuticals, had a duty to warn of adverse drug reactions, which they know or have reason to know, are inherent in the use of its pharmaceutical products.

**ANSWER:**  AstraZeneca states that the allegations of paragraph 101 pertaining to AstraZeneca's "duty" fail to fully and accurately state AstraZeneca's duty under the law, and therefore denies same.  AstraZeneca admits that it complied with its duty under the law at all times.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 101.

102.    The AstraZeneca Defendants failed to adequately warn Plaintiff, Plaintiff's physicians and the general public of the risks of Seroquel being used by Plaintiff.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 102.

103.    The AstraZeneca Defendants failed to adequately warn of dangers inherent with the use of Seroquel and the AstraZeneca Defendants misrepresentations and inadequate disclosure to the Plaintiff's physicians, Plaintiff, and the general public, made the product unreasonably dangerous for normal use.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 103.

104.    The AstraZeneca Defendants are strictly liable in tort to the Plaintiff upon the grounds that:

    a.    Seroquel was unsafe, defective and unreasonably dangerous for its intended and/or foreseeable uses, by reason of inadequately warning and/or inadequately communicating warnings.

    b.    In distributing, promoting and selling Seroquel not accompanied by adequate warnings of the dangers that were known or should have been known; by failing to provide adequate warnings regarding all known or reasonably knowable potential side effects associated with the use of Seroquel, and the comparative nature, extent, severity, incidence and duration of such adverse effects; failing to provide adequate warnings regarding the signs, symptoms, incidence, scope or severity of the side effects, and/or identify appropriate testing, monitoring and/or remedial action; failing to provide adequate warnings in a timely manner and

information necessary for their purposes, thus placing the Plaintiff and consuming public at risk;

c.     The AstraZeneca Defendants were aware that Seroquel would be used without inspection and study for the defects inherent in Seroquel as alleged, and that given the resources of the Plaintiff and his/her physicians, any reasonably anticipated inspection would have failed to detect the defects;

d.     The AstraZeneca Defendants expected and knew that Seroquel would reach the consuming public and Plaintiff.  Seroquel was, in fact, received by Plaintiff without change in the condition in which the drug and its labeling was first manufactured and sold.

e.     Plaintiff was a foreseeable users of the product in its intended manner and suffered serious harm because of said use.

**ANSWER:**  AstraZeneca lacks knowledge or information regarding the allegation that Plaintiff received or ingested SEROQUEL®, and therefore denies same.  AstraZeneca denies all remaining allegations of paragraph 104, including all its subparts.

105.    The Seroquel manufactured and/or supplied by the AstraZeneca Defendants was defective due to inadequate post-marketing warnings and/or instructions because, after the AstraZeneca Defendants knew or should have known of the risks of injury from Seroquel use, they failed to provide adequate warnings to consumers of the product, including Plaintiff, and continued to aggressively promote Seroquel.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 105.

106.    By reason of the foregoing, Plaintiff was caused bodily injury, pain, suffering and economic loss.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 106.

107.    As a direct and proximate result of one or more of these wrongful acts or omissions of the AstraZeneca Defendants, or some or any one of them, Plaintiff suffered profound injuries which are permanent and continuing in nature; required and will require medical treatment and hospitalization; have become and will become liable for medical and hospital expenses; lost and will lose financial gains; have been and will be kept from ordinary activities and duties and have

and will continue to experience mental and physical pain and suffering, disability and loss of enjoyment of life, all of which damages will continue in the future.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 107.

WHEREFORE, Plaintiff demands judgment against each of the AstraZeneca Defendants individually, jointly and/or severally for all such compensatory, statutory and punitive damages available under applicable law, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

**ANSWER:**  AstraZeneca denies the allegations of the unnumbered paragraph on page 24 of the Complaint, and denies that Plaintiff is entitled to any damages or any other relief of any kind whatsoever.

## COUNT V
## STRICT LIABILITY-DEFECTIVE DESIGN

108.    Plaintiff hereby adopts and incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

**ANSWER:**  AstraZeneca incorporates by reference the preceding paragraphs of this Answer as if fully set forth herein.

109.    The Seroquel manufactured and/or supplied by the AstraZeneca Defendants was placed into the stream of commerce in a defective and unreasonably unsafe condition in that the foreseeable risks of its use exceeded the benefits associated with the design or formulation.

**ANSWER:**  AstraZeneca admits that, pursuant to approval by the FDA, it manufactures and supplies SEROQUEL® for prescription by licensed physicians in the United States. AstraZeneca denies any remaining or inconsistent allegations of paragraph 109.

110.    The AstraZeneca Defendants knew or should have known at the time of manufacture that Seroquel was defective in design or formulation and that Seroquel created a risk of harm to

consumers such as Plaintiff when used in the way it was intended to be used, and in a manner which was reasonably foreseeable by the AstraZeneca Defendants.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 110.

111.    The Seroquel manufactured and/or supplied by the AstraZeneca Defendants was placed into the stream of commerce when they knew or should have known of the defective design or formulation and a reasonable person would have concluded that the utility of Seroquel did not outweigh the risk inherent in marketing Seroquel designed in that manner.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 111.

112.    As set forth in this complaint and otherwise, the AstraZeneca Defendants knew of Seroquel's defective nature at the time of its manufacture, but continued to design, manufacture, market, promote, and represent to the consuming public, prescribing doctors, and Plaintiff that Seroquel was safe for the sole purpose of maximizing sales and profits at the expense of the public health and safety in conscious disregard of foreseeable harm caused by Seroquel.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 112.

113.    By reason of the foregoing, Plaintiff was caused bodily injury, pain, suffering and economic loss.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 113.

114.    As a direct and proximate result of one or more of these wrongful acts or omissions of the AstraZeneca Defendants, or some or any one of them, Plaintiff suffered profound injuries which are permanent and continuing in nature; required and will require medical treatment and hospitalization; have become and will become liable for medical and hospital expenses; lost and will lose financial gains; have been and will be kept from ordinary activities and duties and have

and will continue to experience mental and physical pain and suffering, disability and loss of enjoyment of life, all of which damages will continue in the future.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 114.

WHEREFORE, Plaintiff demands judgment against each of the AstraZeneca Defendants individually, jointly and/or severally for all such compensatory, statutory and punitive damages available under applicable law, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

**ANSWER:**  AstraZeneca denies the allegations of the unnumbered paragraph on page 25 of the Complaint, and denies that Plaintiff is entitled to any damages or any other relief of any kind whatsoever.

**COUNT VI**
**BREACH OF EXPRESS WARRANTY**

115.    Plaintiff hereby adopts and incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

**ANSWER:**  AstraZeneca incorporates by reference the preceding paragraphs of this Answer as if fully set forth herein.

116.    The AstraZeneca Defendants expressly warranted that Seroquel was safe for its intended use and as otherwise described in this complaint.  Seroquel did not conform to these express representations, including, but not limited to, the representation that it was well accepted in patient studies, the representation that it was safe, and the representation that it did not have high and/or unacceptable levels of life-threatening side effects and as otherwise set forth in this complaint and/or AstraZeneca Defendants' materials.

**ANSWER:**  AstraZeneca admits that, as the FDA has concluded, SEROQUEL® is safe and effective when prescribed and used in accordance with its FDA-approved labeling.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 116.

117.   The express warranties represented by AstraZeneca Defendants were a part of the basis for Plaintiff's use of Seroquel.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 117.

118.   At the time of the making of the express warranties, the AstraZeneca Defendants had knowledge of the purpose for which the aforestated product was to be used and warranted same to be in all respects safe, effective and proper for such purpose.

**ANSWER:**  AstraZeneca admits that, as the FDA has concluded, SEROQUEL® is safe and effective when prescribed and used in accordance with its FDA-approved labeling.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 118.

119.   Seroquel does not conform to these express representations because Seroquel is not safe or effective and may produce serious side effects, including among other things, diabetes, pancreatitis, ketoacidosis and death.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 119.

120.   As a direct and proximate result of one or more of these wrongful acts or omissions of the AstraZeneca Defendants, or some or any one of them, Plaintiff suffered profound injuries which are permanent and continuing in nature; required and will require medical treatment and hospitalization; have become and will become liable for medical and hospital expenses; lost and will lose financial gains; have been and will be kept from ordinary activities and duties and have and will continue to experience mental and physical pain and suffering, disability and loss of enjoyment of life, all of which damages will continue in the future.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 120.

WHEREFORE, Plaintiff demands judgment against each of the AstraZeneca Defendants individually, jointly and/or severally for all such compensatory, statutory and punitive damages available under applicable law, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

**ANSWER:**  AstraZeneca denies the allegations of the unnumbered paragraph on page 27 of the Complaint, and denies that Plaintiff is entitled to any damages or any other relief of any kind whatsoever.

**COUNT VII**
**BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE**

121.    Plaintiff hereby adopts and incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

**ANSWER:**  AstraZeneca incorporates by reference the preceding paragraphs of this Answer as if fully set forth herein.

122.    The AstraZeneca Defendants impliedly warranted that it would sell and deliver Seroquel in a condition that was fit for the particular purposes for which it was intended.

**ANSWER:**  AstraZeneca states that the allegations of paragraph 122 constitute legal conclusions to which no response is required.  To the extent that the allegations of paragraph 122 are construed as factual allegations directed to AstraZeneca, it admits that, as the FDA has concluded, SEROQUEL® is safe and effective when prescribed and used in accordance with its FDA-approved labeling.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 122.

123.    The AstraZeneca Defendants knew that Plaintiff intended to use the Seroquel for the particular purpose of medication and that as such, that the medication needed to be safe for use by Plaintiff.

**ANSWER:**  AstraZeneca states that the phrase "the particular purpose of medication" is conclusory, vague, and ambiguous.  Accordingly, AstraZeneca states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations pertaining to same, and therefore denies the allegations of paragraph 123 pertaining to same.  AstraZeneca admits that, as the FDA has concluded, SEROQUEL® is safe and effective when prescribed and used in accordance with its FDA-approved labeling.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 123.

124.    Plaintiff relied upon the AstraZeneca Defendants' skill and/or judgment in their ability to furnish suitable Seroquel that was safe for its intended use.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 124.

125.    The Seroquel was not safe for its intended use in that it was defective and caused serious side effects and the AstraZeneca Defendants therefore breached its implied warranty of fitness for a particular purpose.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 125.

126.    As a direct and proximate result of the foregoing, Plaintiff was caused bodily injury, pain, suffering and economic loss.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 126.

127.    As a direct and proximate result of one or more of these wrongful acts or omissions of the AstraZeneca Defendants, or some or any one of them, Plaintiff suffered profound injuries which are permanent and continuing in nature; required and will require medical treatment and

hospitalization; have become and will become liable for medical and hospital expenses; lost and will lose financial gains; have been and will be kept from ordinary activities and duties and have and will continue to experience mental and physical pain and suffering, disability and loss of enjoyment of life, all of which damages will continue in the future.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 127.

WHEREFORE, Plaintiff demands judgment against each of the AstraZeneca Defendants individually, jointly and/or severally for all such compensatory, statutory and punitive damages available under applicable law, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

**ANSWER:**  AstraZeneca denies the allegations of the unnumbered paragraph on page 28 of the Complaint, and denies that Plaintiff is entitled to any damages or any other relief of any kind whatsoever.

<u>**COUNT VII**</u>
<u>**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**</u>

128.    Plaintiff hereby adopts and incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

**ANSWER:**  AstraZeneca incorporates by reference the preceding paragraphs of this Answer as if fully set forth herein.

129.    At all times material hereto, the AstraZeneca Defendants marketed, sold and distributed Seroquel and knew and promoted the use for which the aforesaid drug was being used by Plaintiff and impliedly warranted to Plaintiff that Seroquel was of merchantable quality and fit for the ordinary purpose for which it was intended.

**ANSWER:**  AstraZeneca admits that, pursuant to approval by the FDA, it markets, sells, and distributes SEROQUEL® for prescription by licensed physicians in the United States.

AstraZeneca states that the phrase "the use for which the aforesaid drug was being used" is vague and ambiguous.  Accordingly, AstraZeneca states that it lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 129 pertaining to same, and therefore denies same.  AstraZeneca further denies any remaining or inconsistent allegations of paragraph 129.

130.    Plaintiff reasonably relied on the skill, expertise, and judgment of the AstraZeneca Defendants and its representations as to the fact that Seroquel was of merchantable quality.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 130.

131.    The Seroquel manufactured and supplied by the AstraZeneca Defendants was not of merchantable quality, as warranted by the AstraZeneca Defendants, in that the drug had dangerous and life threatening side effects and was thus not fit for the ordinary purpose for which it was intended.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 131.

132.    As a direct and proximate result of the foregoing, Plaintiff was caused bodily injury, pain, suffering and economic loss.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 132.

133.    As a direct and proximate result of one or more of these wrongful acts or omissions of the AstraZeneca Defendants, or some or any one of them, Plaintiff suffered profound injuries which are permanent and continuing in nature; required and will require medical treatment and hospitalization; have become and will become liable for medical and hospital expenses; lost and will lose financial gains; have been and will be kept from ordinary activities and duties and have and will continue to experience mental and physical pain and suffering, disability and loss of enjoyment of life, all of which damages will continue in the future.

**ANSWER**: AstraZeneca denies the allegations of paragraph 133.

WHEREFORE, Plaintiff demands judgment against each of the AstraZeneca Defendants individually, jointly and/or severally for all such compensatory, statutory and punitive damages available under applicable law, together with interest, costs of suit, attorneys' fees and all such other relief as the Court deems proper.

**ANSWER**: AstraZeneca denies the allegations of the unnumbered paragraph on page 29 of the Complaint, and denies that Plaintiff is entitled to any damages or any other relief of any kind whatsoever.

**COUNT IX**
**CONCEALMENT, SUPPRESSION, OR OMISSION OF MATERIAL FACTS**

134. Plaintiff hereby adopts and incorporates by reference all preceding paragraphs as if fully set forth herein and further alleges as follows:

**ANSWER**: AstraZeneca incorporates by reference the preceding paragraphs of this Answer as if fully set forth herein.

135. The AstraZeneca Defendants omitted, suppressed or concealed material facts concerning the dangers and risks associated with the use of their drugs, including but not limited to the risks of diabetes mellitus and other injuries. Further, the AstraZeneca Defendants purposely downplayed and understated the serious nature of the risks associated with use of their drugs in order to increase the sales of those drugs.

**ANSWER**: AstraZeneca denies the allegations of paragraph 135.

136. The AstraZeneca Defendants knew or should have known (and would have known had appropriate testing been done) that use of their drugs caused serious and potentially life-threatening side effects.

**ANSWER**: AstraZeneca denies the allegations of paragraph 136.

137.    The AstraZeneca Defendants engaged in calculated silence despite their knowledge of the growing public acceptance of misinformation and misrepresentations regarding both the safety and efficacy of their drugs and did so because the prospect of significant future profits caused them to ignore concerns regarding health and safety issues, all to the significant detriment of the public, including the Plaintiff.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 137.

138.    Many safer and less expensive anti-psychotics were available to patients being treated with the AstraZeneca Defendants' drugs.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 138.

139.    The AstraZeneca Defendants purposefully downplayed the side effects or provided misinformation about adverse reactions and potential harms from their drugs, and succeeded in persuading large segments of the relevant consumer market to request their drugs and large segments of the medical community to prescribe their drugs, despite both the lack of efficacy and the presence of significant dangers, as set forth herein.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 139.

140.    The AstraZeneca Defendants had a post-manufacturing and continuing duty to warn, which arose when they knew, or with reasonable care should have known, that their drugs were injurious or fatal.

**ANSWER:**  AstraZeneca states that the allegations of paragraph 140 regarding its "duty" fail to fully and accurately state AstraZeneca's duty under the law, and therefore denies same. AstraZeneca admits that it complied with its duty under the law at all times.  AstraZeneca denies any remaining or inconsistent allegations of paragraph 140.

141.     The AstraZeneca Defendants omitted, suppressed, or concealed material facts concerning the dangers and risks associated with the use of their drugs, including but not limited to the risks of death, disease and other health problems associated with the use of their drugs.  The AstraZeneca Defendants have purposely downplayed and/or understated the serious nature of the risks associated with the use of their drugs and have implicitly encouraged the use of these drugs despite knowledge of the dangerous side effects that their drugs presents to the patient population.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 141.

142.     The AstraZeneca Defendants purposefully and knowingly promoted their drugs for "off label" uses beyond the scope of the FDA approved uses and beyond those uses supported by medical science.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 142.

143.     The AstraZeneca Defendants unlawfully provided financial incentives to physicians and others to prescribe and approve "off label" uses.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 143.

144.     The AstraZeneca Defendants knew or should have known, and would have known had appropriate testing been done, that the use of their drugs caused the serious and potentially life threatening side effects.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 144.

145.     The AstraZeneca Defendants' actions as set forth herein constitute knowing omission, suppression or concealment of material facts, made with the intent that others would rely upon such concealment, suppression or omission, in connection with the marketing, sale and use of their drugs.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 145.

146.    In fact, the Plaintiff directly and/or through prescribing physicians was induced by the AstraZeneca Defendants' omissions and suppression and concealment of facts to use AstraZeneca Defendants' drugs.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 146.

147.    As a direct and proximate result of the Plaintiff's ingestion of AstraZeneca Defendants' drugs caused by the aforesaid acts and failure to act by the AstraZeneca Defendants, Plaintiff suffered damages including but not limited to past, present and future pain and suffering, serious physical injuries, loss of enjoyment of life, past and future medical expenses, and past and/or future lost wages.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 147.

148.    The AstraZeneca Defendants' conduct is outrageous because of reckless indifference to the health and safety of Plaintiff and to the public so as to justify an award of punitive damages.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 148.

WHEREFORE, Plaintiff demands judgment against the AstraZeneca Defendants for damages for pain and suffering, loss of enjoyment of life, past and future medical expenses, past and future lost wages, and punitive damages, together with interest from the date of injury and costs.

**ANSWER:**  AstraZeneca denies the allegations of the unnumbered paragraph on page 31 of the Complaint, and denies that Plaintiff is entitled to any damages or any other relief of any kind whatsoever.

**COUNT X**
**UNJUST ENRICHMENT**

149.    Plaintiff repeats and reallages the allegations set forth in the paragraphs above as if fully set forth herein.

**ANSWER:**  AstraZeneca incorporates by reference the preceding paragraphs of this Answer as if fully set forth herein.

150.    Defendant has been unjustly enriched in the amount of the profits they have earned as a result of Defendant's conduct as alleged herein.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 150.

151.    Defendant has been unjustly enriched at the expense of and to the detriment of the Plaintiff.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 151.

152.    As a direct and proximate cause of Defendants conduct, the Plaintiff demands judgment in his favor and against AstraZeneca in a sum in excess of $75,000.00; for costs herein incurred; attorneys fees; for such other and further relief as this Court deems just and proper.

**ANSWER:**  AstraZeneca denies the allegations of paragraph 152.

WHEREFORE, Plaintiff demands judgment against the AstraZeneca Defendants for damages for pain and suffering, loss of enjoyment of life, past and future medical expenses, past and future lost wages, and punitive damages, together with interest from the date of injury and costs.

**ANSWER:**  AstraZeneca denies the allegations of the unnumbered paragraph on page 31 of the Complaint, and denies that Plaintiff is entitled to any damages or any other relief of any kind whatsoever.

## <u>SEPARATE AND AFFIRMATIVE DEFENSES</u>

1.      Plaintiff's alleged injuries were proximately caused by circumstances, events, or persons over whom AstraZeneca had no authority or control and for which AstraZeneca is not answerable in damages to Plaintiff.

2.      Plaintiff assumed the risks, if any, inherent in the use and continued use of SEROQUEL®.

3.      To the extent Plaintiff's claims were caused by the actions, omissions, or products of persons or entities over whom AstraZeneca has no dominion, authority, or control, AstraZeneca is entitled to have its liability to the Plaintiff, if any, reduced as a result of the negligence or fault of said persons or entities, pursuant to governing law.

4.      Plaintiff's recovery is barred and/or should be reduced under the applicable law because of Plaintiff's contributory negligence or fault and/or comparative negligence or fault.

5.      Plaintiff's alleged injuries, if related to Plaintiff's use of SEROQUEL®, were caused by an unforeseeable material and substantial alteration, change, improper handling, or misuse of the product after it left the control of AstraZeneca.

6.      The New Drug Application for SEROQUEL® was approved by the FDA under the applicable statute, 21 U.S.C. § 301 <u>et</u> <u>seq</u>., and regulations promulgated thereunder.  Compliance with such statutes and regulations by Defendants demonstrates that SEROQUEL® was safe and effective and not unreasonably dangerous and, further, preempts and bars Plaintiff's claims against AstraZeneca.  Compliance with such regulations also demonstrates that due care was exercised with respect to the design, manufacture, testing, marketing and sale of this prescription drug, and that it was neither defective nor unreasonably dangerous.

7.      Plaintiff's claims are preempted, in whole or in part, by federal law pursuant to the Supremacy Clause of the United States Constitution because of the pervasive federal regulation of prescription drug manufacturing, testing, marketing, and labeling.

8.      All labeling for SEROQUEL® has been approved by the FDA under the applicable statute, 21 U.S.C. § 201 et seq., and regulations promulgated thereunder.  As the agency charged with implementing the Food, Drug, and Cosmetic Act, the FDA affirmatively has stated that "under existing preemption principles, FDA approval of labeling . . . preempts conflicting or contrary State law."   71 Fed. Reg. at 3,934.   Moreover, the FDA has stated, "Given the comprehensiveness of FDA regulation of . . . labeling under the act, additional requirements for the disclosure of risk information are not necessarily more protective of patients.  Instead, they can erode and disrupt the careful and truthful representations of benefits and risks that prescribers need to make appropriate judgments about drug use.  Exaggeration of risk could discourage appropriate use of a beneficial drug."  Id. at 3,935.  Plaintiff's claims based on the labeling for SEROQUEL® are therefore preempted by federal law pursuant to the Supremacy Clause of the United States Constitution.

9.      Plaintiff's claims against AstraZeneca are barred as a matter of law pursuant to relevant provisions of the Restatement (Third) of Torts and the Restatement (Second) of Torts, including, but not limited, to Section 402A, comment k.

10.     Persons other than AstraZeneca stood in the position of learned intermediary between Plaintiff and AstraZeneca, which therefore owed and breached no duty to warn Plaintiff directly, and the SEROQUEL® Plaintiff allegedly used was therefore neither unreasonably dangerous nor defective by virtue of any alleged absence of adequate warnings or instructions.

11.     Plaintiff's Complaint fails to state a claim upon which relief can be granted against AstraZeneca in that the methods, standards, and techniques utilized with respect to the design, manufacture, marketing, and sale of the prescription drug SEROQUEL®, including adequate warnings and instructions with respect to the product's use included in the product's package insert and other literature, conformed to the applicable state of the art, and the applicable standard of care based upon available medical and scientific knowledge.

12.     Plaintiff's claims are barred, in whole or in part, by the applicable statutes of limitations and/or repose.

13.     Plaintiff's Complaint against AstraZeneca fails to state a claim upon which relief may be granted.

14.     Plaintiff's claims against AstraZeneca are barred, in whole or in part, by laches, waiver, and/or estoppel.

15.     Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to mitigate alleged damages.

16.     The injuries and damages claimed by Plaintiff, if any, resulted from an intervening or superseding cause and/or causes, and any act or omission on the part of AstraZeneca was not the proximate and/or competent producing cause of such alleged injuries and damages.

17.     Any claims by Plaintiff relating to alleged communications with regulatory agencies of the United States government are barred in whole or in part by operation of applicable law, including First Amendment rights to petition the government.

18.     The alleged injuries and damages, if any, were the result of unavoidable circumstances that could not have been prevented by any person, including AstraZeneca.

19. Plaintiff's Complaint fails to state a claim upon which relief can be granted as to costs, attorney's fees, expert fees, expenses, pre-judgment interest, post-judgment interest, refund, rescission, unjust enrichment, disgorgement, or restitution.

20. Plaintiff's claims are barred in whole or in part because the commercial speech relating to SEROQUEL® was not false or misleading and is protected under the First Amendment to the United States Constitution and the applicable state constitution.

21. Plaintiff's claims regarding warnings and labeling are barred in whole or in part by the doctrine of primary jurisdiction, in that the FDA is charged under law with determining the content of warnings and labeling for prescription drugs.

22. Plaintiff cannot state a claim with regard to warnings and labeling for prescription drugs because the remedy sought by Plaintiff is subject to the exclusive regulation of the FDA.

23. This Court should abstain from adjudicating Plaintiff's claims relating to warnings and labeling in deference to the interpretation of regulations relating to prescription drug labeling by the FDA.

24. Upon information and belief, each item of economic loss alleged in the Complaint was, or with reasonable certainty will be, replaced or indemnified in whole or in part from collateral sources.

25. Plaintiff did not detrimentally rely on any labeling, warnings, or information concerning SEROQUEL®.

26. Plaintiff's alleged injuries and damages, if any, were the result of an idiosyncratic reaction which AstraZeneca could not reasonably foresee.

27. Plaintiff or Plaintiff's physicians were aware or should have been aware of any potential hazards reported to be associated with the use of SEROQUEL® and appreciated or should have

appreciated these potential hazards based, in part, on the directions, information, and warnings provided by AstraZeneca and others generally available in the medical and scientific literature. Therefore, Defendant AstraZeneca had no duty to warn of any alleged danger or defect.

28.     Plaintiff is barred from recovering any damages by virtue of the fact that there was no practical or technically feasible alternative design or formulation that would have prevented the harm alleged by the Plaintiff without substantially impairing the usefulness or intended purpose of the product.

29.     Plaintiff's claims for breach of warranty are barred because Plaintiff failed to give timely notice of any alleged breach of warranty.

30.     AstraZeneca did not sell or distribute the prescription drug SEROQUEL® directly to Plaintiff, and Plaintiff did not receive or rely upon any representations or warranties as alleged in the Complaint.  Plaintiff's claims are therefore barred by lack of privity between Plaintiff and AstraZeneca.

31.     Plaintiff's claims for breach of warranty, express or implied, are barred by the applicable provisions of the applicable state's Uniform Commercial Code.

32.     Plaintiff's Complaint fails to state a claim for which relief can be granted for fraud, misrepresentation, deception, omission, or concealment insofar as Plaintiff has failed to plead such claims with sufficient particularity as required by law.

33.     Plaintiff's claims purportedly asserted under statutes and regulations relating to prescription drugs fail, in whole or in part, because these statutes and regulations do not contain or create any private cause of action.

34.     Plaintiff's Complaint fails to state a claim against AstraZeneca upon which relief can be granted for punitive or exemplary damages.

35.     Plaintiff's claim for punitive or exemplary damages is barred under the applicable state and federal law, including *State Farm Mut. Auto. Ins. Co. v. Campbell et al.*, 538 U.S. 408 (2003).  Permitting recovery of punitive or exemplary damages in this action would contravene AstraZeneca's rights as reserved by the Fifth, Seventh, Eighth, and Fourteenth Amendments to the United States Constitution and other provisions of the United States Constitution and the applicable state constitutions.

36.     Unless AstraZeneca's liability for punitive damages and the appropriate amount of punitive damages are required to be established by clear and convincing evidence, any award of punitive damages would violate AstraZeneca's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by the applicable state constitutions, and also would be improper under the applicable state common law and public policies.

37.     Plaintiff's claim for punitive damages against AstraZeneca cannot be maintained, because an award of punitive damages would be void for vagueness, both facially and as applied. Among other deficiencies, there is an absence of adequate notice of what conduct is subject to punishment; an absence of adequate notice of what punishment may be imposed; an absence of a predetermined limit, such as a maximum multiple of compensatory damages or a maximum amount, on the amount of punitive damages that a jury may impose; a risk that punitive damages will be imposed retrospectively based on conduct that was not deemed punishable at the time the conduct occurred; and it would permit and encourage arbitrary and discriminatory enforcement, all in violation of the due process clause of the Fourteenth Amendment to the United States Constitution, the applicable state constitutions, and the applicable state common law and public policies.

38.     Plaintiff's claim for punitive damages against AstraZeneca cannot be maintained because any award of punitive damages would be by a jury that: (1) is not provided standards of sufficient clarity for determining the appropriateness, and the appropriate size, of a punitive damages award; (2) is not adequately instructed on the limits on punitive damages imposed by the applicable principles of deterrence and punishment; (3) is not expressly prohibited from awarding punitive damages, or determining the amount of an award of punitive damages, in whole or in part, on the basis of invidiously discriminatory characteristics, including the residence, wealth, and corporate status of AstraZeneca; (4) is permitted to award punitive damages under a standard for determining liability for punitive damages that is vague and arbitrary and does not define with sufficient clarity the conduct or mental state that makes punitive damages permissible; and (5) is not subject to adequate trial court and appellate judicial review for reasonableness and furtherance of legitimate purposes on the basis of objective standards.  Any such verdict would violate AstraZeneca's due process rights guaranteed by the Fourteenth Amendment to the United States Constitution and by the applicable state constitutions, and also would be improper under the applicable state common law and public policies.

39.     To the extent that the applicable state law permits punishment to be measured by the net worth or financial status of AstraZeneca and imposes greater punishment on defendants with larger net worth, such an award would be unconstitutional because it permits arbitrary, capricious and fundamentally unfair punishments, allows bias and prejudice to infect verdicts imposing punishment, and allows dissimilar treatment of similarly situated defendants, in violation of the due process and equal protection provisions of the Fourteenth Amendment to the

United States Constitution, the Commerce Clause of the United States Constitution, and the applicable state constitutions.

40.      With respect to Plaintiff's demand for punitive or exemplary damages, AstraZeneca specifically incorporates by reference any and all standards or limitations regarding the determination or enforceability of punitive or exemplary damages awards under federal law and the applicable state law.

41.      No act or omission of AstraZeneca was willful, unconscionable, oppressive, fraudulent, wanton, malicious, reckless, intentional, or with actual malice, with reckless disregard for the safety of Plaintiff or with conscious disregard and indifference to the rights, safety and welfare of Plaintiff, and therefore Plaintiff's Complaint fails to state a claim upon which relief can be granted for punitive or exemplary damages.

42.      Plaintiff's Complaint seeks damages in excess of those permitted by law.  AstraZeneca asserts any statutory or judicial protection from punitive or exemplary damages which is available under the applicable law, and any award of punitive or exemplary damages is barred.

43.      Should AstraZeneca be held liable to Plaintiffs, which liability is specifically denied, AstraZeneca would be entitled to a set-off for all sums of money received or available from, or on behalf of, any tortfeasors for the same injuries alleged in Plaintiffs' Complaint pursuant to pursuant to Section 20 of the Uniform Contribution Among Tortfeasors Act (Maryland Code Annotated, Article 50, Section 16 et seq.).

44.      AstraZeneca reserves the right to modify, clarify, amend, or supplement these separate or affirmative defenses as discovery proceeds in this case.

## **JURY DEMAND**

AstraZeneca hereby demands a trial by jury.

## **PRAYER**

WHEREFORE, AstraZeneca prays that this Court enter judgment on its behalf and against Plaintiff, that Plaintiff take nothing thereby, and that the Court grant AstraZeneca such other and further relief as allowed by law.

This the 22nd day of December, 2008.

Respectfully Submitted,

SIDLEY AUSTIN LLP

s/ Michael W. Davis
Michael W. Davis
Sherry Knutson
SIDLEY AUSTIN LLP
1 South Dearborn Street
Chicago, IL  60603
Telephone:      (312) 853-7000
Facsimile:      (312) 853-7036
E-mail:          mdavis@sidley.com
                sknutson@sidley.com

Fred T. Magaziner
Shane T. Prince
DECHERT LLP
2929 Arch Street
Philadelphia, PA
Telephone:      (215) 994-4000
Facsimile:      (215) 994-2222
E-mail:          fred.magaziner@dechert.com
                shane.prince@dechert.com

Attorneys for Defendants
AstraZeneca Pharmaceuticals LP and
AstraZeneca LP

## **PROOF OF SERVICE**

I hereby certify that on the 22nd of December, 2008, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I further certify that, by using

CM/ECF, the foregoing has been served on Plaintiff's liaison counsel, who is charged with serving any non-CM/ECF participants on the attached Service List.

s/ Michael W. Davis
Michael W. Davis
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL  60603
Telephone:    (312) 853-7000
Facsimile:    (312) 853-7036
E-mail:        mdavis@sidley.com

Attorney for Defendants AstraZeneca Pharmaceuticals LP and AstraZeneca LP

## SERVICE LIST

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No. 1769**

| | |
|---|---|
| Paul J. Pennock, Esq.<br>Michael E. Pederson, Esq.<br>Weitz & Luxenberg, P.C.<br>180 Maiden Lane - 17th Floor<br>New York, NY 10038<br>Telephone: (212) 558-5500<br>Ppennock@weitzlux.com<br>MPederson@weitzlux.com<br>***Plaintiffs' Lead Counsel*** | Camp Bailey, Esq.<br>Michael W. Perrin, Esq.<br>Fletcher Trammell, Esq.<br>Bailey Perrin Bailey LLP<br>The Lyric Centre<br>440 Louisiana, Suite 2100<br>Houston, TX  77002<br>Telephone: (713) 425-7240<br>cbailey@bpblaw.com<br>mperrin@bpblaw.com<br>***Plaintiffs' Lead Counsel*** |
| Larry Roth, Esq.<br>Law Offices of Larry M. Roth, P.A.<br>Post Office Box 547637<br>Orlando, FL  32854-7637<br>Telephone: (407) 872-2239<br>LROTH@roth-law.com<br>***Plaintiffs' Liaison Counsel*** | Tommy Fibich, Esq.<br>Fibich, Hampton & Leebron, L.L.P.<br>1401 McKinney, Suite 1800<br>Five Houston Center<br>Houston, TX  77010<br>Telephone: (713) 751-0025<br>tfibich@fhl-law.com |
| Matthew E. Pawa, Esq.<br>Law Offices of Matthew E. Pawa, P.C.<br>1280 Centre St., Suite 230<br>Newton Centre, MA 02459<br>Telephone: (617) 641-9550<br>Mp@pawalaw.com | Robert L. Salim Esq.<br>Robert L. Salim Attorney at Law<br>P.O. Box 2069<br>Natchitoches, LA 71457-2069<br>Telephone: (318) 352-5999<br>robertsalim@cp-tel.net |
| Keith M. Jensen, Esq.<br>Jensen, Belew & Gonzalez, PLLC<br>1024 North Main<br>Fort Worth, TX  76106<br>Telephone: (817) 334-0762<br>kj@jensenlaw.com | Scott Allen, Esq.<br>Cruse, Scott, Henderson & Allen, L.L.P.<br>2777 Allen Parkway, 7th Floor<br>Houston, Texas 77019<br>Telephone: (713) 650-6600<br>sallen@crusescott.com |
| Matthew E. Lundy, Esq.<br>Lundy & Davis, LLP<br>333 North Sam Houston Parkway East<br>Suite 375<br>Houston, TX  77060<br>Telephone: (281) 272-0797<br>mlundy@lundydavis.com | E. Ashley Cranford<br>Whatley Drake & Callas<br>2001 Park Place North, Suite 1000<br>Birmingham, AL 35203<br>Telephone: (205) 328-9576<br>ACranford@wdklaw.com |

| | |
|---|---|
| Robert L. Ciotti, Esq.<br>Carlton Fields, P.A.<br>4221 W. Boy Scout Boulevard<br>Suite 1000<br>Tampa, FL 33607-5736<br>Telephone: (813) 223-7000<br>rciotti@carltonfields.com<br>***Attorney for Defendants AstraZeneca***<br>***Pharmaceuticals LP and AstraZeneca LP*** | Gregory P. Forney, Esq.<br>Shaffer Lombardo Shurin<br>911 Main Street, Suite 2000<br>Kansas City, MO 64105<br>Telephone: (816) 931-0500<br>gforney@sls-law.com<br>rbish@sls-law.com<br>***Attorney for Defendant,***<br>***Marguerite Devon French*** |
| Randy Niemeyer<br>22442 Pike 309<br>Bowling Green, MO 63334-5209<br>***Pro Se*** (via U.S. Mail) | Eric B. Milliken, Esq.<br>3 Sir Barton Ct.<br>Newark, DE 19702<br>***Pro Se*** (via U.S. Mail) |
| Catherine Solomon<br>3100 N.E. 83<br>Gladstone, MO 64119<br>***Pro Se*** (via U.S. Mail) | Louisiana Wholesale Drug Co. Inc.<br>C/O Gayle R. White<br>Registered Agent<br>Highway 167N<br>Sunset, LA 70584<br>***Pro Se*** (via U.S. Mail) |
| Aaron C. Johnson, Esq.<br>Summers & Johnson<br>717 Thomas<br>Weston, MO 64098<br>Telephone: (816) 640-9940<br>firm@summersandjohnson.com | Robert A. Schwartz, Esq.<br>Bailey & Galyen<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744<br>bschwartz@galyen.com |
| Todd S. Hageman, Esq.<br>Simon and Passanante, PC<br>701 Market St., Suite 1450<br>St. Louis, MO 63101<br>Telephone: (314) 241-2929<br>thageman@spstl-law.com | Mark P. Robinson, Jr., Esq.<br>Robinson, Calcagnie & Robinson<br>620 Newport Center Drive, 7th Floor<br>Newport Beach, CA 92660<br>Telephone: (949) 720-1288<br>mrobinson@robinson-pilaw.com |
| Thomas F. Campion, Esq.<br>Steven M. Selna, Esq.<br>Drinker Biddle & Reath, LLP<br>500 Campus Drive<br>Florham Park, New Jersey 07932-1047<br>Telephone: (973) 360-1100<br>Thomas.Campion@dbr.com<br>steven.selna@dbr.com<br>***Attorneys for Defendants Janssen***<br>***Pharmaceutical Products and Johnson &***<br>***Johnson Co.*** | Michael Davis, Esq.<br>James Mizgala, Esq.<br>Sidley Austin LLP<br>One South Dearborn<br>Chicago, IL 60603<br>Telephone: (312) 853-7731<br>mdavis@sidley.com<br>jmizgala@sidley.com<br>***Attorneys for Defendants AstraZeneca LP***<br>***and AstraZeneca Pharmaceuticals LP*** |

| | |
|---|---|
| Elizabeth Raines, Esq.<br>Baker, Sterchi, Cowden & Rice, LLC<br>2400 Pershing Road, Suite 500<br>Kansas City, MO 64108<br>Telephone: (816) 471-2121<br>raines@bscr-law.com | Timothy Reese Balducci, Esq.<br>The Langston Law Firm, PA<br>P.O. Box 787<br>100 South Main Street<br>Booneville, MS 38829-0787<br>Telephone: (662) 728-3138<br>tbalducci@langstonlaw.com |
| Kenneth W. Bean, Esq.<br>Sandberg, Phoenix & von Gontard<br>One City Centre<br>15th Floor<br>St. Louis, MO 63101-1880<br>Telephone: (314) 231-3332<br>kbean@spvg.com<br>**Attorney for Defendant Dr. Asif Habib** | John Driscoll, Esq.<br>Brown & Crouppen; PC<br>720 Olive St.<br>St. Louis, MO 63101<br>Telephone: (314) 421-0216<br>Jdriscoll@brownandcrouppen.com<br>asmith@brownandcrouppen.com<br>blape@brownandcrouppen.com |
| Aaron K. Dickey, Esq.<br>Goldenberg and Heller, PC<br>P.O. Box 959<br>2227 S. State Road 157<br>Edwardsville, IL 62025<br>Telephone: (618) 650-7107<br>aaron@ghalaw.com | Matthew J. Hamilton, Esq.<br>Pepper Hamilton<br>3000 Two Logan Square<br>18th & Arch Street<br>Philadelphia, PA 19103<br>Telephone: (215) 981-4000<br>hamiltonm@pepperlaw.com |
| Justin Witkin, Esq.<br>Ken Smith, Esq.<br>Aylstock, Witkin & Sasser, PLC<br>4400 Bayou Boulevard<br>Suite 58<br>Pensacola, FL 32503<br>Telephone: (850) 916-7450<br>Jwitkin@AWS-LAW.com<br>ablankenship@aws-law.com<br>ksmith@aws-law.com<br>noverholtz@aws-law.com | David P. Matthews, Esq.<br>Lizy Santiago, Esq.<br>Matthews & Associates<br>2905 Sackett Street<br>Houston, TX 77098<br>Telephone: (713) 222-8080<br>dmatthews@thematthewslawfirm.com<br>lsantiago@thematthewslawfirm.com<br>msalazar@thematthewslawfirm.com |
| Howard Nations<br>Lori A. Siler<br>Howard L. Nations Attorney At Law<br>4515 Yoakum Blvd.<br>Houston, TX 77006-5895<br>Telephone: (713) 807-8400<br>nations@howardnations.com | Mary B. Cotton<br>John K. Giddens, P.A.<br>226 North President Street<br>P.O. Box 22546<br>Jackson, MS 39225-2546<br>Telephone: (601) 355-2022<br>betsy@law-inc.com |

| | |
|---|---|
| Salvatore M. Machi<br>Ted Machi & Associates PC<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744<br>(via U.S. Mail) | Jona R. Hefner, Esq.<br>3441 W. Memorial, Suite 4<br>Oklahoma City, OK 73134-7000<br>Telephone: (405) 286-3000<br>attorneyokc@hotmail.com |
| David Dickens<br>Miller & Associates<br>105 North Alfred Street<br>Alexandria, VA 22314-3010<br>(703) 519-8080<br>ddickens@doctoratlaw.com | Pete Schneider, Esq.<br>Grady, Schneider & Newman, L.L.P.<br>801 Congress, 4th Floor<br>Houston, TX 77002<br>(713) 228-2200<br>pschneider@gsnlaw.com |
| Fred T. Magaziner<br>Marjorie Shiekman<br>A. Elizabeth Balakhani<br>Shane T. Prince<br>Eben S. Flaster<br>DECHERT LLP<br>Cira Centre<br>2929 Arch Street<br>Philadelphia, PA 19103<br>(215) 994-4000<br>fred.magaziner@dechert.com<br>shane.prince@dechert.com<br>marjorie.shiekman@dechert.com<br>eben.flaster@dechert.com<br>elizabeth.balakhani@dechert.com | Lawrence J. Gornick, Esq.<br>William A. Levin, Esq.<br>Dennis J. Canty, Esq.<br>Levin Simes Kaiser & Gornick LLP<br>44 Montgomery Street, 36th Floor<br>San Francisco, CA 94104<br>Telephone: (415) 646-7160<br>lgornick@lskg-law.com<br>dcanty@lskg-law.com<br>lsimes@levins-law.com<br>jkaiser@lskg-law.com<br>echarley@lskg-law.com<br>ddecarli@lskg-law.com<br>bsund@lskg-law.com<br>astavrakaras@lskg-law.com |
| Scott Burdine, Esq.<br>Hagans Burdine Montgomery<br>Rustay & Winchester, P.C.<br>3200 Travis, Fourth Floor<br>Houston, TX 77006<br>Telephone: (713) 222-2700<br>sburdine@hagans-law.com | Lowell Finson<br>Phillips & Associates<br>3030 North 3rd Street<br>Suite 1100<br>Phoenix, AZ 85012<br>(602) 258-8900, ext. 259<br>lowellf@phillipslaw.ws |
| Gale D. Pearson<br>Stephen J: Randall<br>Pearson, Randall & Schumacher, P.A.<br>Fifth Street Towers, Suite 1025<br>100 South 5th Street<br>Minneapolis, MN 55402<br>(612) 767-7500<br>attorneys@outtech.com | Robert H. Shultz<br>Heyl, Royster<br>103 West Vandalia Street<br>P.O. Box 467<br>Edwardsville, IL 62025<br>(618) 656-4646<br>rshultz@hrva.com<br>bwallace@hrva.com |

| | |
|---|---|
| Ellen R. Serbin<br>Perona, Langer, Beck, Lalande & Serbin<br>300 San Antonio Drive<br>Long Beach, CA 90807-0948<br>(562) 426-6155<br>davidhwang@plblaw.com | Scott Armstrong<br>1719 West Main Street<br>Suite 201<br>Rapid City, SD 57702<br>(605) 399-3994<br>scottarmstrong1235@earthlink.net |
| Linda S. Svitak<br>Faegre & Benson, LLP<br>90 South 7th Street, Suite 2200<br>Minneapolis, MN 55402-3901<br>(612) 766-7000<br>lsvitak@faegre.com<br>wjohnson@faegre.com | James Freebery<br>McCarter & English, LLP<br>919 N. Market Street, 18th Floor<br>Wilmington, DE 19801<br>(973) 622-4444<br>jfreebery@mccarter.com<br>tpearson@mccarter.com |
| Richard D.Hailey<br>Ramey & Hailey<br>3891 Eagle Creek Parkway<br>Suite C<br>Indianapolis, IN<br>(317) 299-0400<br>rhailey@sprynet.com | B. Andrew List<br>Clark, Perdue, Arnold & Scott<br>471 East Broad Street, Suite 1400<br>Columbus, OH 43215<br>(614) 469-1400<br>alist@cpaslaw.com<br>lcollins@cpaslaw.com |