# EXHIBIT 1

#371: 06-20-03 ASTRAZENECA PHARMACEUTICALS LP PLEADS GUI...ME; COMPANY AGREES TO PAY $355 MILLION TO SETTLE CHARGES



# Department of Justice

**FOR IMMEDIATE RELEASE**
**FRIDAY, JUNE 20, 2003**
**WWW.USDOJ.GOV**

**CIV**
**(302) 573-6277**

### ASTRAZENECA PHARMACEUTICALS LP PLEADS GUILTY TO HEALTHCARE CRIME; COMPANY AGREES TO PAY $355 MILLION TO SETTLE CHARGES

The United States Attorney's Office for the District of Delaware, the Department of Health and Human Services Acting Principal Deputy Inspector General Dara Corrigan, Terrell L. Vermillion, Director, Office of Criminal Investigations, Food & Drug Administration, and SAIC Edward T. radley of the Northeast Field Office for the Defense Criminal Investigative Service announced that AstraZeneca Pharmaceuticals LP ("AstraZeneca"), a major pharmaceutical manufacturer headquartered in Wilmington, Delaware, today pleaded guilty in federal district court in Wilmington, Delaware to a healthcare crime and agreed to pay $355,000,000 to resolve criminal charges and civil liabilities in connection with its drug pricing and marketing practices with regard to Zoladex, a drug sold by AstraZeneca Pharmaceuticals LP and used primarily for the treatment of prostate cancer. The general components of the global agreement are as follows:

AstraZeneca pleaded guilty to conspiring to violate the Prescription Drug Marketing Act ("PDMA") by causing to be submitted claims for payment for the prescription of Zoladex which had been provided as free samples to urologists. This criminal conduct caused losses of $39,920,098 to Medicare, Medicaid and other federally funded insurance programs. As part of the plea agreement, AstraZeneca agreed to pay a $63,872,156 criminal fine;

AstraZeneca agreed to settle its federal civil False Claim Act liabilities and to pay the U.S. government $266,127,844 to resolve allegations that the company caused false and fraudulent claims to be filed with the Medicare, TriCare, Department of Defense and Railroad Retirement Board Medicare programs as a result of AstraZeneca's fraudulent drug pricing schemes and sales ind marketing misconduct;

http://www.usdoj.gov/opa/pr/2003/June/03_civ_371.htm (1 of 4) [6/6/2008 1:41:43 PM]

EXHIBIT NO. 16.
6-2-08
L. GOLKOW

#371: 06-20-03 ASTRAZENECA PHARMACEUTICALS LP PLEADS GUI...ME; COMPANY AGREES TO PAY $355 MILLION TO SETTLE CHARGES

AstraZeneca agreed to settle its civil liabilities to the Medicaid program by paying to the United States and the states a total of $24,900,000 to resolve allegations that it caused false and fraudulent laims to be filed with the states as a result of its drug pricing and marketing misconduct and that it ...ailed to provide the state Medicaid programs AstraZeneca's best price for those drugs as required by law. The National Association of Medicaid Fraud Control Units has reached an agreement in principle to settle the state portion of these liabilities on behalf of the state Attorneys General; and

AstraZeneca has agreed to comply with the terms of a corporate integrity agreement which ensures, among other things, that AstraZeneca will report to the Medicare and Medicaid programs the average sale price for drugs reimbursed by those programs and will promote, through internal training and other programs and policies, marketing and sales practices that are in full compliance with the law.

Zoladex is marketed by AstraZeneca primarily for the treatment of prostate cancer, as is the drug Lupron which is produced by TAP Pharmaceuticals, Inc. ("TAP"). In October 2001, TAP agreed to pay $875,000,000 to resolve civil and criminal liabilities in connection with its pricing and marketing of Lupron.

While Medicare does not pay for most drugs needed by Medicare beneficiaries, Medicare covers some drugs, such as Zoladex, that must be injected under the supervision of a physician.

\ documents filed with this case, the United States alleged that from January 1991 through December 31, 2002, Astra Zeneca engaged in the following conduct involving the marketing, sale and pricing of Zoladex for the treatment of prostate cancer:

(i) Employees of AstraZeneca provided thousands of free samples of Zoladex to physicians knowing and expecting that certain of those physicians would prescribe and administer the free drug samples to their patients and thereafter bill those free samples to the patients and to Medicare, Medicaid, and other federally funded insurance programs;

(ii) In order to induce certain physicians, physicians' practices, and others to purchase Zoladex, AstraZeneca offered and paid illegal remuneration in various forms including free Zoladex, unrestricted educational grants, business assistance grants and services, travel and entertainment, consulting services, and honoraria;

(iii)Also in order to induce physicians to purchase Zoladex, AstraZeneca marketed a "Return-to-Practice" program to physicians. This Return-to-Practice program consisted of inflating the Average Wholesale Price ("AWP") used by Medicare and others for reimbursement of the drug , deeply discounting the price paid by physicians to AstraZeneca for the drug ("the discounted rice"), and marketing the spread between the AWP and the discounted price to physicians as

#371: 06-20-03 ASTRAZENECA PHARMACEUTICALS LP PLEADS GUI...ME; COMPANY AGREES TO PAY $355 MILLION TO SETTLE CHARGES

additional profit to be returned to the physician's practice from Medicare reimbursements for Zoladex;

(iv) AstraZeneca set the AWP for Zoladex at levels far higher than the majority of its physician customers actually paid for the drug. As a result, AstraZeneca's customers received reimbursement from Medicare and state Medicaid programs and others at levels significantly higher than the physicians' actual costs or the wholesalers' average price; and

(v) AstraZeneca misreported and underpaid its Medicaid rebates for Zoladex used for treatment of prostate cancer, i.e., the amounts that it owed to the states under the federal Medicaid Rebate Program. AstraZeneca was generally required on a quarterly basis to rebate to each state Medicaid program the difference between the Average Manufacturer Price ("AMP") and its "Best Price". AstraZeneca falsely reported the Best Price for Zoladex used for treatment of prostate cancer because AstraZeneca calculated its Best Prices for Zoladex without accounting for off-invoice price concessions provided in various forms including cash discounts in the form of grants, services and free goods contingent on any purchase requirement.

The investigation commenced after the filing of a civil False Claim Act suit by Douglas Durand who was employed as the Vice President of Sales for TAP Pharmaceutical Products, Inc. The civil False Claims Act allows for private individuals like Durand to file a whistleblower suit to bring the government information about wrongdoing. Where persons submit, cause others to submit, or conspire to submit false or fraudulent claims to the United States government, the government is entitled to recover treble damages and $5,500 to $11,000 for each false or fraudulent claim. If the government is successful in resolving or litigating its claims, the whistleblower may share in the recovery by receiving from 15 to 25% of the amount recovered. As part of this settlement, Durand will receive a 17% share of the civil recovery pursuant to the False Claims Act whistleblower provisions. This amounts to approximately $47.5 million.

Prior to today's guilty plea by AstraZeneca, three physicians have been charged, and two have pleaded guilty, for their role in conspiring to bill for Zoladex samples. Dr. Saad Antoun, a urologist practicing in Holmdel, New Jersey, was charged on January 15, 2002, and pleaded guilty to conspiracy on September 18, 2002. Dr. Stanley Hopkins, a urologist practicing in Boca Raton, Florida, was charged on September 30, 2002, and pleaded guilty to conspiracy on December 17, 2002. Dr. Robert Berkman, a urologist practicing in Columbus, Ohio, was charged on May 19, 2003.

"This prosecution of a pharmaceutical company demonstrates our resolve to protect federal health insurance programs when they are abused to enrich drug companies and doctors. We will pursue those whose criminal conduct imposes enormous expense on trust funds that the taxpayers fund to protect and preserve the health of our elderly, our poor, our military, and its dependents." said

Associate Attorney General Robert D. McCallum, Jr. of the United States Department of Justice.

"The public has been well served by the investigators who uncovered the extent of this scheme and .ought it to an end," said Commissioner of Food and Drugs Mark B. McClellan, M.D., Ph.D. "FDA will not tolerate criminal conduct that exploits patients, plunders the national treasury, and adds to the cost of health care."

"Today's settlement shows that the federal government is holding the pharmaceutical industry strictly accountable for improper conduct as well as those who conduct business with them," Department of Health and Human Services Acting Principal Deputy Inspector General Dara Corrigan stated. "The Office of Inspector General, along with our partners, will not tolerate this type of behavior, and we will continue to investigate allegations of illegal conduct concerning the pharmaceutical industry."

"Today's plea and settlement demonstrates our strong commitment to protecting the American public from corporate greed, in whatever form that it may occur", said SAC Bradley. "This commitment extends to all participants in the many healthcare systems in this country, including our brave service men and women and their dependents. This case sends a strong message to the pharmaceutical industry that fraudulent activity, such as the scheme perpetrated by AstraZeneca, will not be tolerated and will be investigated and prosecuted to the full extent of the law."

he entire amount of the nearly $64 million criminal fine paid by AstraZeneca will go to the Department of Justice's Crime Victims Fund. The Fund was established in 1984 by the Victims of Crime Act ("VOCA") and serves as a major funding source for victim services throughout the country. Victims of federal as well as state crimes are eligible to receive VOCA-funded services, and state Assistance programs use VOCA funds to provide or contract for services to victims of rape, drunk driving, child abuse, domestic violence, homicide, and other crimes.

The investigation has been conducted by the Office of Inspector General for the U.S. Department of Health and Human Services, the Office of Criminal Investigations for the Food and Drug Administration, the Defense Criminal Investigative Service and the Federal Bureau of Investigation. On the criminal side, the investigation and prosecution are being handled by Assistant U.S. Attorney Beth Moskow-Schnoll. On the civil side, the investigation and prosecution are being handled by Assistant U.S. Attorney Virginia Gibson.

Press contact: Beth Moskow-Schnoll, (302) 573-6277 x 130.

### ###

3-371