# EXHIBIT B

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re Seroquel Products Liability Litigation
MDL Docket No. 1769

MDL DOCKET NO:
6:06-MDL-1769-ACC-DAB

This Document Relates to All Cases


DECLARATION OF CHARLES PEIPHER IN SUPPORT OF ASTRAZENECA'S
MOTION TO MAINTAIN THE CONFIDENTIALITY OF CERTAIN CHALLENGED
DOCUMENTS FILED UNDER SEAL AS EXHIBITS TO
PLAINTIFFS' MOTION RESPONSES

My name is Charles Peipher, and I hereby declare:

       1.     I am over the age of eighteen, and am currently employed by AstraZeneca LP ("AstraZeneca"). From March 2003 through June 2008 I served as the Seroquel Brand Director for Managed Markets, and Healthcare Professionals. I make all statements in this declaration based on my personal knowledge and experience at AstraZeneca, and could and would testify competently thereto under oath.

       2.     It is my understanding that plaintiffs have challenged AstraZeneca's confidential designation of various Seroquel® documents, including Call Notes which I will specifically address in detail below. It is my understanding that AstraZeneca has provided plaintiffs with access to these materials according to a Protective Order under which AstraZeneca has designated certain discovery materials as "confidential" to prevent disclosure of those and other competitively sensitive materials to AstraZeneca's competitors, among other limitations.

| PLAINTIFFS MOTION & SEALED EXHIBIT # | DESCRIPTION |
| --- | --- |
|  |  |

| | |
|---|---|
| Haller SJ Motion Ex. 9-10<br>McA SJ Motion Ex. 10-13<br>Unger SJ Motion Ex. 12-14<br>Whittington SJ Motion Ex. 5-7<br>Guinn SJ Motion Ex. 10, 12, 13<br>Burns SJ Motion Ex. 16<br>Curley SJ Motion Ex. 9-11 | Call Notes |

3.      In addition to challenging Call Notes, Plaintiffs have challenged various other documents related to, *inter alia*: product planning; promoting and prescriber habits; employees' internal analyses, interpretations, and comparisons of product data; discussions concerning the rationale behind why studies were done in certain ways; proposed issues or flaws in study methods and design that might be adjusted in future studies; how to interpret and present study data within the strategic plan; comparisons to competitors' products and how to strategically position Seroquel®; formulation of possible marketing/promotional claims supported by the study data; global marketing documents that may have no application to the U.S. market; and the manner in which AstraZeneca communicates with, trains, guides, informs and instructs its sales representatives about developing issues and detailing practices.

4.      Internal deliberations regarding the safety profile of Seroquel®, if taken out of context and made public, could convey false and misleading product information.  Internal discussions revolving around potential product concerns and issues take place at many levels within the company on a daily basis as part of AstraZeneca's continuous efforts to ensure that its products are safe and efficacious.  Some of these internal documents may reflect one person's views on the issue while, for reasons required by the FDA as well as company policy, a multi-disciplinary team is required to review all issues and ultimately approve the appropriate course of action, primarily for patient safety.  This review process is important to ensure the product information that is actually presented is accurate and balanced and not misleading.  Internal

documents and communications that don't go through this review process may be misleading. The dissemination of such product information is heavily restricted by the FDA because of the dangers of both underwarning and overwarning.  AstraZeneca's obligation under the FDA requirements, as well as its internal policies, is to provide only accurate information as deemed accurate and required by the FDA.  Thus, not only could release of these documents cause competitive economic harm to AstraZeneca, but also and more importantly it could create harm to public health and safety.

5.      AstraZeneca and the FDA have the responsibility of ensuring the accuracy of the information.   Medications like Seroquel® have literally life-and-death implications.   If incomplete, inaccurate and misleading data were made public, there would be very serious public health concerns.  If patients on Seroquel® (or other atypical antipsychotics) reacted to publicly released out-of-context materials and stopped taking their medications on their own, very serious consequences would occur – for example, patients living with schizophrenia could deteriorate quickly, and patients with bipolar disorder would be at increased risk of suicide.  Thus, public disclosure of these documents would present a public health concern.

6.      AstraZeneca's Call Notes are particularly commercially sensitive.   In the pharmaceutical industry, the term "call notes" is commonly used to refer to certain documents or log entries prepared internally by sales employees reflecting the mental impressions of the company's sales employees about their periodic in-person discussion with physicians and other healthcare professionals. In order to successfully market its products, a pharmaceutical company necessarily has to understand the particular needs of prescribing physicians and other healthcare providers, including particularized knowledge about how they practice medicine, in order to determine how the company's particular medication may be able to meet those physicians'

needs.  Thus, call notes reflect the contents of these private sales calls, including core sales messages created as part of AstraZeneca's strategic marketing plan.  Call notes also reflect, among other things, the individual preferences, opinions, and views of each physician or healthcare provider about Seroquel as compared to competitors' products.

7.      The private proprietary information contained in call notes and proprietary call capture systems is used by AstraZeneca for a variety of reasons, including to facilitate internal business decisions at several different levels.  Call notes describe the sales employee's experience with each physician and ideas related to successfully detailing that physician.  They typically contain references to such things as particular features of Seroquel that the physician likes or dislikes, particular messages related to Seroquel that the physician thought were persuasive, physicians' comments regarding competitors' products, and explanations as to the physician's practice and prescribing habits that are relevant to detailing him or her.  This information is critically important to the company in order to remain competitive.

8.      Call notes embody years of competitive intelligence that would provide a roadmap for any competitor on how to detail a particular physician including optimal sales call frequency.  Additionally, because the call notes reflect private internal insights about the effectiveness of AstraZeneca's strategies in marketing Seroquel, as well as which physicians are important to AstraZeneca's strategic efforts, access to these confidential materials would enable competitors to capitalize on these insights and re-adjust their competitive sales call efforts accordingly.

9.      AstraZeneca's research, product development, marketing, strategic planning, and other commercial information are generated and maintained by the company only through the expenditure of a substantial amount of time, energy and resources by AstraZeneca and its

competitors. Such information is created and maintained by AstraZeneca for competitively sensitive reasons, including to enhance the ability of AstraZeneca to market Seroquel® in an effective manner.

10.     In order to successfully market its products, a pharmaceutical company necessarily has to understand matters such as the particular needs of prescribing physicians and other healthcare providers, the size and nature of the market for prescription drugs, and the efficacy of various advertising and marketing techniques.

11.     The information at issue is never publicly disseminated because it could provide competitors with a distinct advantage. The product development, market analyses, business purposes and strategies which are clearly set forth in these documents are developed based upon AstraZeneca's long-term customer knowledge and experience marketing in the atypical antipsychotic market. Access to these confidential materials would enable competitors to easily determine when and where AstraZeneca invests in particular research/development, and to learn about its marketing tactics and strategies and to capitalize on these insights by re-adjusting their own competitive efforts accordingly. Because the information therein reflects years of competitive intelligence about how AstraZeneca can best meet the needs of different market segments and what messages are best received by particular market segments, competitor access to such private materials would allow them to get a "free ride" on AstraZeneca's years of efforts to their own advantage and AstraZeneca's disadvantage.

12.     Although some of the documents at issue were drafted several years ago, those older documents contain the types of information – such as long-term strategic objectives and planning, suggestions as to what goals and strategies to pursue at a particular time, analyses of product strengths and weaknesses – that remain applicable and sensitive today. Their disclosure

would harm AstraZeneca's present business and marketing efforts by informing competitors how AstraZeneca got to where it is today and allowing them to adjust their own strategies accordingly. Marketing and strategic planning documents drafted several years ago, contain information, such as long-term objectives and sales projections, that would still be of interest to AstraZeneca's competitors and would cause present harm to AstraZeneca's business and marketing efforts if released.

13.     Public disclosure would put AstraZeneca at a commercial and competitive disadvantage, particularly since AstraZeneca would be compelled to surrender its knowledge of the pharmaceutical market while its competitors are not simultaneously required to disclose their comparable confidential proprietary information.

14.     These are all internal company communications that are part of developing and executing the overall strategic plan for Seroquel®. AstraZeneca has a legitimate interest in keeping internal communications confidential outside of the litigation context. These internal, preliminary deliberations, sometimes simply an individual's own interpretation around the analysis, taken out of context could mislead the public and consumers.

15.     As its competitors do with their confidential materials, AstraZeneca treats its own documentation and related information as private proprietary information. It is AstraZeneca's policy that documents such as these are *never* shared with competitors or anyone else outside of AstraZeneca absent appropriate non-disclosure agreements or other procedural safeguards. This information is particularly confidential, safeguarded within AstraZeneca, and only used for internal purposes.

16.     I declare under penalty of perjury under the laws of the United States and the laws of the state of Florida that the foregoing is true and correct to the best of my knowledge.

Executed this _12th_ day of January 2009

Charles Peipher
Brand Director for Healthcare Professionals
AstraZeneca LP