# EXHIBIT C

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re Seroquel Products Liability Litigation
MDL Docket No. 1769

MDL DOCKET NO:
6:06-MDL-1769-ACC-DAB

This Document Relates to All Cases

# DECLARATION OF ARTHUR LAZARUS IN SUPPORT OF ASTRAZENECA'S MOTION TO MAINTAIN THE CONFIDENTIALITY OF CERTAIN CHALLENGED DOCUMENTS FILED UNDER SEAL AS EXHIBITS TO <u>PLAINTIFFS' MOTION RESPONSES</u>

My name is Dr. Arthur Lazarus, and I hereby declare:

1. I am over the age of eighteen, am currently employed by AstraZeneca LP ("AstraZeneca") as Senior Director, Clinical Development, which position I have held since 2003, devoting the majority of my time to Seroquel®. I make all of the statements in this declaration based on my personal knowledge and experience at AstraZeneca, and could and would testify competently thereto under oath.

2. It is my understanding that plaintiffs have challenged AstraZeneca's confidential designation of several Seroquel® documents containing research, product development, marketing, strategic planning, regulatory and other commercial information. It is my understanding that AstraZeneca has provided plaintiffs with access to these materials according to a Protective Order under which AstraZeneca has designated certain discovery materials as "confidential" to prevent disclosure of those and other competitively sensitive materials to AstraZeneca's competitors, among other limitations.

3.   Although plaintiffs have challenged various documents, I will specifically address in more detail below the following documents which encompass various sensitive Seroquel® clinical/science issues:

| PLAINTIFFS MOTION RESPONSE & SEALED EXHIBIT # | DESCRIPTION |
|---|---|
| Genl Cause - Generic and Case-Specific Ex. 15 | 06/12/2006 CSR for study 125 - attaching only 5 pertinent pages, but providing entire CSR on disc (4,582 pages) |
| Genl Cause - Generic and Case-Specific Ex. 19 | 04/01/2008 CSR for study 144 – attaching only one page, but providing entire CSR on disc (1,922 pages) |
| Genl Cause - Generic and Case-Specific Ex. 28 | 03/08/1996 IND for Seroquel -- attaching only 2 pages, but providing entire IND on disc (5,224 pages) |
| Genl Cause - Generic and Case-Specific Ex. 29 | 11/30/2006 CSR for study 165 - attaching only 2 pages, but providing entire CSR on disc (1,800 pages) |
| Genl Cause - Generic and Case-Specific Ex. 32 | 06/19/2007 CSR for study 127 -- attaching only one page, but providing entire CSR on disc (6,434 pages) |
| Genl Cause - Generic and Case-Specific Ex. 57 | Manuscript - Newcomer, J, et al., A 24-Week, Multicenter, Open Label, Randomized Study to Compare Changes in Glucose Metabolism In Patients with Schizophrenia Receiving Treatment with Olanzapine, Quetiapine and Risperidone (draft Study 125 manuscript) |

4.   Seroquel® is an FDA-approved medication that AstraZeneca currently markets. Seroquel® competes against other atypical antipsychotic medications, including among others, Eli Lilly & Co.'s "Zyprexa," Janssen Pharmaceutical's "Risperdal" and "Invega," and Bristol-Myers Squibb's "Abilify," and Pfizers' "Geodon." The pharmaceutical industry is intensely competitive.

5.   The challenged internal documents describe and discuss non-public, proprietary clinical research aspects and shed insight into AstraZeneca's strategic plans to further research

and develop various aspects of the product, and compete in the market for atypical antipsychotic drugs, given AstraZeneca's unique understanding of market conditions.

6. Included in the challenged documents are those related to: clinical trial data; trade secret and sensitive information contained in Seroquel's IND; employees' internal preliminary analyses, interpretations, and comparisons of study data and product safety issues; preliminary and ongoing discussions concerning the rationale behind why studies were done in certain ways; internal discussions regarding clinical study methodology/design and future studies; preliminary discussions regarding possible interpretation and presentation of study data within the strategic plan; comparisons to competitors' products; and preliminary suggestions and ongoing discussion regarding the existence of scientific support for and formulation of possible marketing/promotional claims.

7. In the pharmaceutical industry, it is generally recognized that each company's research, product development, marketing, strategic planning, and other commercial information constitute private proprietary information that is not shared with competitors. AstraZeneca's competitors in the market for atypical antipsychotic medications presumably have comparable internal data and information, which they, like AstraZeneca, maintain on a private and proprietary basis.

8. Except under unique circumstances not present here, AstraZeneca is not permitted to publicly disseminate safety/efficacy information that deviates from its FDA-approved and mandated product labeling. To allow public access to this same type of information via the plaintiffs' release of these sensitive documents to the public would run afoul of the principles and purposes behind the FDA regulatory scheme. False or incomplete risk information or data, that has not been substantiated through the FDA review process, cannot and should not be

released to physicians or the public. It is extremely important for information disseminated publicly to be accurate and substantiated by the FDA to accomplish the FDA's regulatory task of ensuring that labeling does not "overwarn" by including scientifically unjustified risks. Thus, another reason why these types of internal documents, discussing, analyzing and commenting on study data and whether certain risks exist, must be maintained by AstraZeneca personnel as confidential. These discussions are very preliminary and require multi-disciplinary review to determine what is supported and what course of action is warranted to present accurate and balanced information to consumers and physicians. These preliminary deliberations could easily be misconstrued by healthcare providers and consumers. It is essential that healthcare providers and consumers do not receive false and misleading information that has not gone through the multi-disciplinary review process to confirm its accurate representation because people's lives are at stake since many patients (schizophrenics and bipolar) who would read some of this inaccurate and misleading information if disclosed in the press might decide, independent of their physicians, to alter their dose or stop taking their medication which could have very serious public health consequences given the issues facing people suffering from schizophrenia and bipolar disorder – thus, why the FDA regulates what information can be disseminated to the public regarding prescription drugs. Several of the challenged documents reference study methodology and data. AstraZeneca has a multi-disciplinary procedure in place for reviewing clinical trial data, which can often be interpreted in various different ways, to determine the most accurate presentation of the data. Such preliminary information could be misleading if it has not been thoroughly analyzed and a conclusion reached that the data or approach is substantiated.

9. With respect to the challenged documents that I am specifically addressing, Plaintiffs have submitted to the Court 5224 pages of the 1996 IND for Seroquel. IND

- 5 -

submissions like this one, by their very nature, contain trade secret, confidential and competitively sensitive information relating to Seroquel's physical, chemical and pharmacological properties and development and manufacturing processes that is safeguarded within AstraZeneca.

10. Plaintiffs have also submitted to the Court unpublished clinical study reports and draft manuscripts for Trials 125, 127, 144, and 165 (ranging in volume from 1,800 pages to approximately 6,400 pages), which contain non-public proprietary research, methodologies and analyses. Additionally, these studies are currently in the peer-review publication process with publication expected to occur in 2009. Disclosing these confidential documents publicly now could jeopardize the publication.

11. I declare under penalty of perjury under the laws of the United States and the state of Florida that the foregoing is true and correct to the best of my knowledge.

Executed on this 12th day of January 2009

_____
Arthur Lazarus, MD
Sr. Director, Clinical Development
AstraZeneca LP