**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

IN RE:  Seroquel Products Liability Litigation

MDL DOCKET NO. 1769

This Document Relates to:

| | |
|---|---|
| Linda Guinn | 6:07-cv-10291 |
| Janice Burns | 6:07-cv-15959 |
| Richard Unger | 6:07-cv-15812 |
| Connie Curley | 6:07-cv-15701 |
| Linda Whittington | 6:07-cv-10475 |
| Eileen McAlexander | 6:07-cv-10360 |
| David Haller | 6:07-cv-15733 |

**ASTRAZENECA'S MEMORANDUM OF LAW IN OPPOSITION**
**TO PLAINTIFFS' MOTION FOR AN AGGRAVATION INSTRUCTION**

I.   **INTRODUCTION**

Plaintiffs ask the Court to rule now, before trial, that their proposed charge based on Florida Standard Jury Instruction 6.2(g) [hereafter "Instruction 6.2(g)"] will be part of the jury charge on damages.  The Court should not do so.  Now is not the right time to decide whether Instruction 6.2(g) will be given; the time to do that is the charge conference, after the close of evidence and argument from the parties.  AstraZeneca expects that it will then be clear that Instruction 6.2(g) does not fit the evidence that can and will be admitted at trial. Indeed, Instruction 6.2(g) is inapplicable given the recognition of plaintiffs' counsel and their own experts that, due to plaintiffs' many pre-existing diabetes risk factors (including most notably their long-term obesity), the plaintiffs were going to get diabetes at some point even if they never took Seroquel.  Plaintiffs suggest that Seroquel may have caused them to be

diagnosed with diabetes when they were, but they apparently do not intend to present expert testimony to any reasonable degree of medical probability as to what quantifiable period of time Seroquel caused the plaintiffs' onset of diabetes to be hastened or accelerated. The speculative nature of plaintiffs' causation evidence not only means that AstraZeneca should be entitled to summary judgment and its *Daubert* motions granted, but it also supports denial of their requested Instruction 6.2(g). *See Caputo v. Taylor*, 403 So. 2d 551, 552-54 & n.1 (Fla. App. 1981) (not error to refuse Instruction 6.2(g) where plaintiff's causation and aggravation testimony amounted to "speculation"). Moreover, plaintiffs are plainly trying to use Instruction 6.2(g), which is only a damages instruction, to obscure and evade their burden of proof on causation and effectively to shift the burden to AstraZeneca to disprove causation or else face liability for diabetes injuries plaintiffs would have suffered even if they had never taken Seroquel. To grant their Motion – at least at this juncture, before trial – would be a gross distortion and misapplication of Instruction 6.2(g), and would also raise fundamental due process issues.

II.     **ARGUMENT**

    A.     **The Court Should Defer Ruling On Plaintiffs' Motion Until The Close Of The Evidence.**

As an initial procedural matter, the Court should not now decide whether to give plaintiffs' proposed jury instruction in a vacuum, as plaintiffs seek here. Instead, it should defer consideration of plaintiffs' request until the charge conference, after the close of evidence, at which time the Court can determine, after having heard focused argument based on the evidence admitted at trial, whether this charge should be given. This approach will serve judicial efficiency, given that some issues "are better resolved within the context of a

trial when the Court can make a more informed decision." *Walton v. Saady*, No. 8:05-cv-1004, 2006 WL 5112616, *1 (M.D. Fla. 2006); *Stewart v. Hooters of America, Inc.*, No. 8:04-cv-40, 2007 WL 1752841, *1 (M.D. Fla. 2007). That is the circumstance here. *See Thomason v. Gordon*, 782 So. 2d 896, 898-99 (Fla. App. 2001) (determining whether to give requested Instruction 6.2(g) at jury "charge conference" after close of evidence and argument from parties).

It is undisputed that Instruction 6.2(g) is a *damages-apportionment charge* that can come into play only after the plaintiff has first satisfied his or her burden of proving causation: "The instruction permits the jury to apportion damages '*once causation or legal liability has been found*.'" Pls.' Mot. at 2 (emphasis added; quoting *Reyka v. Halifax Hosp. Dist.*, 657 So. 2d 967, 969 (Fla. App. 1995)). In these cases, plaintiffs and their experts do not genuinely dispute that it was inevitable that plaintiffs would get diabetes at some point given their pre-existing risk factors; their contention is that Seroquel supposedly caused them to get diagnosed with diabetes *when* they did (*i.e.*, at an earlier time than they otherwise would have contracted the disease). Under these circumstances, plaintiffs' burden under Florida law to present "non-speculative evidence" of causation, sufficient to present a jury question, requires plaintiffs to prove and "quantify" *how much sooner* Seroquel supposedly caused them to get diabetes than they otherwise would have due to their pre-existing risk factors even if they had never taken Seroquel. *Reynard v. NEC Corp.*, 887 F. Supp. 1500, 1502, 1505-07 (M.D. Fla. 1995) (Nimmons, J.) (defense summary judgment in case alleging defendant's "cellular phone accelerated and aggravated the course of an already existing tumor" where plaintiff's expert failed to "quantify" what plaintiff's condition would have

been without defendant's allegedly aggravating conduct, as well as how much plaintiff's injury was supposedly accelerated).[1]

AstraZeneca strongly believes that plaintiffs will be unable to satisfy their threshold causation burdens in these cases and, thus, no issue of damages or damage apportionment ever arises. But in all events, the specific evidence plaintiffs present at trial, subject to this Court's upcoming *Daubert* and other rulings, will dictate the nature and scope of any damages instruction, including whether any "aggravation" instruction is warranted. *See*, *e.g.*, *Christopher v. Cutter Labs.*, 53 F.3d 1184, 1194 (11th Cir. 1995) (it is error to give any jury instruction that does not fit the evidence and is not supported by the admissible proofs actually adduced at trial); *Reyka v. Halifax Hosp. Dist.*, 657 So. 2d 967, 969 (Fla. App. 1995) (holding that the trial court did not err in refusing to give Instruction 6.2(g) because it did not fit the evidence at trial).

*Caputo v. Taylor*, 403 So. 2d 551 (Fla. App. 1981), is particularly instructive. The Florida appellate court in *Caputo* held that it was not error for the trial court to *refuse* to give the plaintiff's requested Instruction 6.2(g) where her causation evidence, *i.e.*, that the defendant physician's failure to diagnose and treat a cancerous lump in plaintiff's breast supposedly caused or aggravated plaintiff's condition, was ultimately "based on speculation." *Id*. at 552-54 & n.1. As here, plaintiff's physicians and experts could *not* testify to any "reasonable degree of medical probability" that plaintiff's breast lump was in fact aggravated and worsened by the defendant's alleged negligence; instead, as here, plaintiff's expert "testified that there was no way to tell" without speculation. *Id*. Hence, *Caputo* illustrates

---

[1] AstraZeneca has challenged plaintiffs' ability to prove causation – in its *Daubert* and summary judgment motions.

the importance of deciding whether to give plaintiffs' requested Instruction 6.2(g) only after the close of evidence, when the Court can gauge whether plaintiffs have adduced the requisite *non-speculative* evidence required under *Caputo* and *Reynard*.

*Llompart v. Lavecchia*, 374 So. 2d 77 (Fla. App. 1979) is also instructive on why this Court should hear the actual trial evidence before ruling on the instructions to be given. There, the Florida appellate court held it was not error for the trial court to refuse giving the mentally-ill plaintiff's requested charge based on Instruction 6.2(g). The issue of an aggravation of a preexisting injury, the Court held, was not "clearly presented" to the jury when plaintiff's expert testified merely that "plaintiff's mental condition arose from a triggering action of a preexisting 'propensity' for the injury (although no prior 'injury' existed)," and the defendant's evidence showed that the plaintiff's mental troubles were the natural result of his pre-existing mental illness long pre-dating and unrelated to the accident. *Id.* at 80. For present purposes, *Llompart* further illustrates why the Court must look to the evidence as presented at trial to determine what, if any, instruction should be given.

In sum, the Court should defer consideration of whether to give this disputed jury instruction until the jury charge conference after the close of the evidence and full argument from the parties in the context of the actual admissible evidence adduced at trial. For this reason alone, the Court should deny plaintiffs' Motion without prejudice, permitting the parties to brief and argue the issue in more depth after the close of evidence and based on the law as applied to the evidence as it comes in.

### B. These Cases Do Not Fit The Scenario Contemplated By Instruction 6.2(g).

AstraZeneca believes that it will become clear in the context of the actual evidence admitted at trial that neither the language of Instruction 6.2(g) nor the Florida case law applying it fit the actual facts of these cases, no matter how hard plaintiffs' counsel try to force that result.

First, the initial requirement under Instruction 6.2(g) is that the plaintiff must first prove that the defendant's alleged tortious misconduct caused plaintiff to suffer some legally cognizable "injury," which injury in turn had the effect of either aggravating a physical defect or activating a latent disease already suffered by plaintiff. *See* Instruction 6.2(g). Plaintiffs' Motion points to the "weight gain" these individuals claim to have experienced while on Seroquel, or the alleged resulting "hyperglycemia" supposedly caused by that weight gain, as the threshold "injury" they contend to have been caused by Seroquel. *See* Pls.' Mot. at 3. As the Court will recall, each of plaintiffs' case-specific witnesses likewise relied on the plaintiffs' alleged short-term incremental *weight gain* "while" plaintiffs were on Seroquel as the lynchpin of their challenged causation opinions. But at the *Daubert* hearing (and at their depositions), each of the putative experts openly admitted that they cannot say to *any* reasonable degree of medical certainty or probability that Seroquel caused *any* of the weight gain plaintiffs may have experienced while taking Seroquel – not 1, 2, 5, 10 or even any pounds.[2] Hence, there is no basis in the current record to find any "aggravation" or

---

[2] *See* Transcript of MDL *Daubert* Hearing on Specific Causation, Jan. 14, 2009, at pp. 98-99 (Dr. Abrahamson) (testifying that he could not say what, if any, number of pounds of Plaintiff Haller's weight gain while on Seroquel was caused by Seroquel, nor what portion of such weight gain was caused by Seroquel); Transcript of MDL *Daubert* Hearing on Specific Causation, Jan. 15, 2009, at pp. 73-74 (Dr. Tulloch) (testifying that he could not say whether Seroquel caused Mr. Haller to gain

"activation" of *anything* that was proximately caused by Seroquel. For this critical threshold reason, Instruction 6.2(g) does not fit the facts of these cases.

Second, Instruction 6.2(g) further requires that plaintiffs have suffered a preexisting "physical defect" for the instruction to apply. Plaintiffs assert that their pre-existing diabetes risk factors (*e.g.*, their age, family history of diabetes, long-term chronic obesity) or supposed pre-diabetes constitute the required "physical defect." Pls.' Mot. at 2-3. Plaintiffs cite no authority for their position. In fact, plaintiffs' pre-existing diabetes risk factors are clearly *not* the sort of pre-existing injury or "physical defect" required under the governing Florida cases, which typically involve plaintiffs who have a *pre-existing physical injury* which is aggravated as a result of the defendants' tortious misconduct. *See*, *e.g.*, *C.F. Hamblen, Inc. v. Owens*, 172 So. 694, 695-96 (1937) (plaintiff had pre-existing leg injury); *Esancy v. Hodges*, 727 So. 2d 308, 309 (Fla. App. 1999) (plaintiff had pre-existing back injury); *Gross v. Lyons*, 721 So. 2d 304, 304-05 (Fla. App. 1998) (plaintiff had pre-existing back injury and "spinal defect").[3] Here, plaintiffs did not have, and do not even claim to have had, any such pre-existing physical injury that was supposedly aggravated.

---

zero, one, two, or twenty pounds); *id*. at pp. 188, 195 (Dr. Marks) (testifying that she could not say whether Seroquel caused any pounds of Plaintiff Guinn's weight gain while on Seroquel, and that she knew of no methodology by which to determine that Seroquel caused any weight gain in Ms. Guinn).

[3] Likewise, plaintiff counsel's suggestion, offered to get their requested Instruction 6.2(g), that plaintiffs already had "pre-diabetes" as an existing physical defect and disease, cannot suffice. In fact, it cannot be squared with their position, offered in opposition to AstraZeneca's *Daubert* and summary judgment motions, that these plaintiffs' elevated glucose readings before they first took Seroquel were explainable by factors unrelated to their having diabetes, hyperglycemia, or "pre-diabetes." Nonetheless, for purposes of their proposed damages-apportionment charge, plaintiffs would have to *concede or prove* that – before taking Seroquel – each plaintiff either had been diagnosed as having hyperglycemia/pre-diabetes, or actually already had hyperglycemia/pre-diabetes. They cannot have it both ways. Nor can plaintiffs hope to rely on their expert's "speculation" to support giving a charge based on Instruction 6.2(g). *See Caputo*, 403 So. 2d at 553-54 & n.1.

Third, the "activation of a latent disease" component of Instruction 6.2 clearly does not apply here. The only way this aspect of Instruction 6.2(g) might conceivably apply in these cases is if the plaintiffs were to prove that they *already had diabetes* as a "latent disease" before taking Seroquel, such that their latent diabetes was somehow provably "activated" by their tortiously induced ingestion of Seroquel. Yet plaintiffs do not advance that theory here, nor could they. In fact, plaintiffs and their experts insist that plaintiffs did *not* have diabetes, latent or otherwise, before they started taking Seroquel.

Fourth, the very premise of an aggravation claim under Florida law is that, *but for* the "injury" caused by the defendant's tort (which is the claimed "aggravating" or "activating" event), the plaintiff – despite his or her pre-existing condition – *would not have suffered the ultimate injury* for which he is suing. For instance, in *C.F. Hamblen, Inc. v. Owens*, 172 So. 694 (1937), the plaintiff had a pre-existing leg injury in the form of a "germ" lurking for years in plaintiff's leg tissue that was activated by his fall from a ladder caused by defendant's negligence, resulting in amputation of plaintiff's leg. There, the plaintiff would not have needed to have his leg amputated *but for* the defendant's negligence resulting in plaintiff's fall from a ladder. 172 So. at 695-96. Likewise, in *Gross*, the plaintiff would not have needed surgery and suffered permanent injury *but for* defendant's negligence causing the car accident in which plaintiff was harmed; although the plaintiff was also injured later in a second car accident, the plaintiff's physician testified "he was convinced that the first accident [caused by defendant's negligence] was a proximate cause of the [plaintiff's] ultimate condition, *without which* the surgery and permanent impairment *would not have occurred*." 721 So. 2d at 307 (emphases added). Here, in stark contrast, plaintiffs' pre-

existing diabetes risk factors made it inevitable that these plaintiffs *would* get diabetes even if they had never taken Seroquel.

None of the cases that plaintiffs cite in their Motion supports the application of Instruction 6.2(g) in these very unique and distinguishable cases.[4] In fact, *C.F. Hamblen, Inc. v. Owens* makes clear that the injury caused by the defendant's tort must be "the prime cause which opens the way and sets in motion the other cause" to produce plaintiff's ultimate injury. *See* 172 So. at 695-96. Hence, the apportionment rationale of *Hamblen* – embodied in Instruction 6.2(g) – does not and should not apply where the defendant's alleged misconduct was not the prime cause of plaintiffs' ultimate injury and, indeed, that injury *would have* occurred anyway even without the defendant's alleged tort. *Id*.

      **C.    On These Unique Facts, Plaintiffs' Requested "Damages" Charge Cannot Be Invoked To Excuse Or Obscure Their Failure To Establish "Causation" In The Non-Speculative Manner Required By Law, Consistent With Florida Law And AstraZeneca's Due Process Rights.**

Finally, plaintiffs press their proposed jury instruction in the apparent hopes of obscuring the fatal defects in their own causation proofs. But, in doing so, plaintiffs effectively seek to shift their burden to prove causation of plaintiffs' alleged injury to AstraZeneca to disprove causation of the injury, in whole or in part, or else face the prospect of paying full damages for the entirety of diabetes injuries that these individuals would have

---

[4] The other cases cited by plaintiffs do not remotely support application of the requested charge here. Indeed, the question presented and resolved in *Thomason v. Gordon*, 782 So. 2d 896 (Fla. App. 2001), *Esancy v. Hodges*, 727 So. 2d 308 (Fla. App. 1999), *Dutcher v. Allstate Ins. Co*. 655 So. 2d 1217 (Fla. App. 1995), and *Marinelli v. Grace*, 608 So. 2d 833 (Fla. App. 1992) – cited by plaintiffs in their Motion – was whether a plaintiff is entitled to a "concurrent cause" instruction in a case in which the defendants claimed that their negligence was only partly to blame for the plaintiff's alleged injuries. None of the holdings in any of these cases say anything about the extent of damages that may be awarded where, as here, the evidence shows that the plaintiff would have gotten the disease at issue anyway even if he or she had not taken the defendant's prescription medicine.

gotten anyway even if they never took Seroquel.  Plaintiffs cite no authority for the proposition, as there is none.

It is important to recognize that plaintiffs have sought to evade satisfying their causation burdens based on their contention that these burdens are "impossible" for them to satisfy.  For instance, plaintiffs contend it is *impossible* for them to prove or their experts to say how much sooner Seroquel supposedly caused them to get diabetes then they would have had they not taken Seroquel.  And they contend it is *impossible* for them to prove or their experts to say how much, if any, of the weight they gained while on Seroquel was supposedly caused by Seroquel.  Yet without ever genuinely satisfying their threshold causation burdens, plaintiffs wish to invoke their proposed Instruction 6.2(g) in a readily apparent effort *to shift* to AstraZeneca the burden to prove and "apportion" what subset of their diabetes injuries were caused and not caused by Seroquel or else face paying damages for the entire amount of plaintiffs' diabetes injuries that they would have suffered at some point even if they never took Seroquel.  No Florida law supports such a grossly unfair result.

When coupled with the extraordinary facts of these cases, application of plaintiffs' requested jury charge based on Instruction 6.2(g) threatens to violate AstraZeneca's due process rights under the United States and Florida Constitutions, including the protection "against arbitrary deprivations of property [in violation of] … the Due Process Clause." *Honda Motor Co., Ltd. v. Oberg*, 512 U.S. 415, 430 (1994).[5]  On this record, plaintiffs'

---

[5] In *Honda Motor Co.*, the U.S. Supreme Court reaffirmed the fundamental rule that use of state procedures to abrogate "well-established common-law protection against arbitrary deprivations of property raises a presumption that [the] procedures violate the Due Process Clause."  512 U.S. at 430 (emphasizing that since the Court's "first due process cases," parties have at times "been deprived of liberty or property without the safeguards of common-law procedure" through fundamentally unfair

experts have testified that it is *impossible* to quantify Seroquel's claimed contributory role in allegedly causing the plaintiffs' diabetes injuries – even while they concede that the plaintiffs would have gotten diabetes anyway even if they had never taken Seroquel. Even though the plaintiffs' weight gain "while" on Seroquel was the critical lynchpin to the specific-causation opinions of plaintiffs' case-specific experts, none of them could testify that Seroquel actually *caused any* of the plaintiffs' weight gain – because they said it was "impossible" to do so. For this reason, AstraZeneca has argued that its *Daubert* motions must be granted, or in the alternative, it is entitled to summary judgment, because plaintiffs cannot satisfy their burdens on the essential element of causation under *Gooding*, *Reynard*, and Florida law. In this truly extraordinary context, it would deny AstraZeneca's constitutional due process rights to forgive plaintiffs' inability to prove causation in the required non-speculative manner, and instead, through the back-door procedural device of plaintiffs' requested jury charge based on Instruction 6.2(g), effectively to shift the burden to AstraZeneca to prove what plaintiffs and their experts say is "impossible" to prove or else AstraZeneca will be held liable for each plaintiff's full damages for alleged diabetes injuries that would have occurred anyway regardless of whether the plaintiff ever took Seroquel. That is precisely the sort of

---

state procedural machinations; "When the absent procedures would have provided protection against arbitrary and inaccurate adjudication, this Court has not hesitated to find the proceedings violative of due process."). Here, the common law protection against arbitrary deprivation of property is the settled rule of Florida law that *plaintiffs bear the burden of proving causation* of injury and damages, and cannot recover for injuries and damages that would have occurred without the defendant's alleged tort where the plaintiffs' causation proofs are mere "speculation" (much less impossible to satisfy, as plaintiffs contend here). *Gooding v. University Hosp. Bldg., Inc.*, 445 So. 2d 1015, 1018-20 (Fla. 1984); *see also Hoffman v. Jones*, 280 So. 2d 431 (Fla. 1973); *Scruggs v. United States*, 959 F. Supp. 1537, 1547 (S.D. Fla. 1997).

fundamental unfairness and arbitrary imposition of civil liability that the Due Process Clause forbids.

## III. CONCLUSION

For the foregoing reasons, the Court should either (a) defer consideration of plaintiffs' Motion until the conference on jury instructions after the close of evidence at trial, at which time the issue will be ripe for decision; (b) deny plaintiffs' Motion without prejudice to reconsidering the issue at the jury charge conference; or, in the alternative, (c) deny plaintiffs' Motion on the merits.

DATED: January 23, 2009      Respectfully submitted,

*/s/ Steven B. Weisburd*
Steven B. Weisburd
DECHERT LLP
300 West 6th Street, Suite 1850
Austin, TX 78701
Telephone: (512) 394-3000
Facsimile: (512) 394-3001
steven.weisburd@dechert.com

Fred T. Magaziner
Stephen J. McConnell
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-4000
Facsimile: (215) 994-2222
stephen.mcconnell@dechert.com


*/s/ Chris S. Coutroulis*
Chris S. Coutroulis (Fla. Bar No. 300705)
Robert L. Ciotti (Fla. Bar No. 333141)
CARLTON FIELDS, P.A.
Corporate Center Three at International Plaza
4221 W. Boy Scout Blvd.

- 13 -

Tampa, FL  22607
Telephone: (813) 223-7000
Facsimile: (813) 229-4133
ccoutroulis@carltonfields.com
rciotti@carltonfields.com

*Counsel for Defendants AstraZeneca LP and
AstraZeneca Pharmaceuticals LP*

## CERTIFICATE OF SERVICE

I hereby certify that, on January 23, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system through which all participating parties are deemed served. I further certify that, by using the CM/ECF, the foregoing has been served on plaintiffs' liaison counsel, who is charged with serving any non-CM/ECF participants on the attached Service List.

*/s/_A. Elizabeth Balakhani*

## SERVICE LIST

### In Re: Seroquel Products Liability Litigation
### MDL Docket No. 1769

| | |
|---|---|
| Paul J. Pennock, Esq.<br>Michael E. Pederson, Esq.<br>Weitz & Luxenberg, P.C.<br>180 Maiden Lane - 17th Floor<br>New York, NY 10038<br>Telephone: (212) 558-5500<br>Ppennock@weitzlux.com<br>MPederson@weitzlux.com<br>*Plaintiffs' Lead Counsel* | Camp Bailey, Esq.<br>Michael W. Perrin, Esq.<br>Fletcher Trammell, Esq.<br>Bailey Perrin Bailey LLP<br>The Lyric Centre<br>440 Louisiana, Suite 2100<br>Houston, TX 77002<br>Telephone: (713) 425-7240<br>cbailey@bpblaw.com<br>mperrin@bpblaw.com<br>Plaintiffs' Lead Counsel |
| Larry Roth, Esq.<br>Law Offices of Larry M. Roth, P.A.<br>Post Office Box 547637<br>Orlando, FL 32854-7637<br>Telephone: (407) 872-2239<br>LROTH@roth-law.com<br>*Plaintiffs' Liaison Counsel* | Tommy Fibich, Esq.<br>Fibich, Hampton & Leebron, L.L.P.<br>1401 McKinney, Suite 1800<br>Five Houston Center<br>Houston, TX 77010<br>Telephone: (713) 751-0025<br>tfibich@fhl-law.com |
| Matthew F. Pawa, Esq.<br>Law Offices of Matthew F. Pawa, P.C.<br>1280 Centre St., Suite 230<br>Newton Centre, MA 02459<br>Telephone: (617) 641-9550<br>Mp@pawalaw.com | Robert L. Salim, Esq.<br>Robert L. Salim Attorney at Law<br>P.O. Box 2069<br>Natchitoches, LA 71457-2069<br>Telephone: (318) 352-5999<br>robertsalim@cp-tel.net |
| Keith M. Jensen, Esq.<br>Jensen, Belew & Gonzalez, PLLC<br>1024 North Main<br>Fort Worth, TX 76106<br>Telephone: (817) 334-0762<br>kj@kjensenlaw.com | Scott Allen, Esq.<br>Cruse, Scott, Henderson & Allen, L.L.P.<br>2777 Allen Parkway, 7th Floor<br>Houston, Texas 77019<br>Telephone: (713) 650-6600<br>sallen@crusescott.com |
| Matthew E. Lundy, Esq.<br>Lundy & Davis, LLP<br>333 North Sam Houston Parkway East<br>Suite 375<br>Houston, TX 77060<br>Telephone: (281) 272-0797<br>mlundy@lundydavis.com | E. Ashley Cranford<br>Whatley Drake & Callas<br>2001 Park Place North, Suite 1000<br>Birmingham, AL 35203<br>Telephone: (205) 328-9576<br>ACranford@wdklaw.com |

| | |
|---|---|
| Robert L. Ciotti, Esq.<br>Carlton Fields, P.A.<br>4221 W. Boy Scout Boulevard<br>Suite 1000<br>Tampa, FL 33607-5736<br>Telephone: (813) 223-7000<br>rciotti@carltonfields.com<br>*Attorney for Defendants AstraZeneca Pharmaceuticals, LP, and AstraZeneca LP* | Gregory P. Forney, Esq.<br>Shaffer Lombardo Shurin<br>911 Main Street, Suite 2000<br>Kansas City, MO 64105<br>Telephone: (816) 931-0500<br>gforney@sls-law.com<br>rbish@sls-law.com<br>*Attorney for Defendant, Marguerite Devon French* |
| Randy Niemeyer<br>22442 Pike 309<br>Bowling Green, MO 63334-5209<br>*Pro Se* | Eric B. Milliken, Esq.<br>3 Sir Barton Ct.<br>Newark, DE 19702<br>*Pro Se* |
| Catherine Solomon<br>3100 N.E. 83<br>Gladstone, MO 64119<br>*Pro Se* | Louisiana Wholesale Drug Co. Inc.<br>C/O Gayle R. White<br>Registered Agent<br>Highway 167N<br>Sunset, LA 70584<br>*Pro Se* |
| Aaron C. Johnson, Esq.<br>Summers & Johnson<br>717 Thomas<br>Weston, MO 64098<br>Telephone: (816) 640-9940<br>firm@summersandjohnson.com | Robert A. Schwartz, Esq.<br>Bailey & Galyen<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744<br>bschwartz@galyen.com |
| Todd S. Hageman, Esq.<br>Simon and Passanante, PC<br>701 Market St., Suite 1450<br>St. Louis, MO 63101<br>Telephone: (314) 241-2929<br>thageman@spstl-law.com | Mark P. Robinson, Jr., Esq.<br>Robinson, Calcagnie & Robinson<br>620 Newport Center Drive, 7th Floor<br>Newport Beach, CA 92660<br>Telephone: (949) 720-1288<br>mrobinson@robinson-pilaw.com |
| Thomas F. Campion, Esq.<br>Steven M. Selna, Esq.<br>Drinker Biddle & Reath, LLP<br>500 Campus Drive<br>Florham Park, New Jersey 07932-1047<br>Telephone: (973) 360-1100<br>Thomas.Campion@dbr.com<br>steven.selna@dbr.com<br>*Attorneys for Defendants Janssen Pharmaceutical Products and Johnson & Johnson Co.* | Michael Davis, Esq.<br>James Mizgala, Esq.<br>Sidley Austin LLP<br>One South Dearborn<br>Chicago, IL 60603<br>Telephone: (312) 853-7731<br>mdavis@sidley.com<br>jmizgala@sidley.com<br>*Attorneys for Defendants AstraZeneca LP and AstraZeneca Pharmaceuticals, LP* |

| | |
|---|---|
| Elizabeth Raines, Esq.<br>Baker, Sterchi, Cowden & Rice, LLC<br>2400 Pershing Road, Suite 500<br>Kansas City, MO 64108<br>Telephone: (816) 471-2121<br>raines@bscr-law.com | Timothy Reese Balducci, Esq.<br>The Langston Law Firm, PA<br>P.O. Box 787<br>100 South Main Street<br>Booneville, MS 38829-0787<br>Telephone: (662) 728-3138<br>tbalducci@langstonlaw.com |
| Kenneth W. Bean, Esq.<br>Sandberg, Phoenix & von Gontard<br>One City Centre<br>15th Floor<br>St. Louis, MO 63101-1880<br>Telephone: (314) 231-3332<br>kbean@spvg.com<br>Attorney for Defendant Dr. Asif Habib | John Driscoll, Esq.<br>Brown & Crouppen, PC<br>720 Olive St.<br>St. Louis, MO 63101<br>Telephone: (314) 421-0216<br>Jdriscoll@brownandcrouppen.com<br>asmith@brownandcrouppen.com<br>blape@brownandcrouppen.com |
| Aaron K. Dickey, Esq.<br>Goldenberg and Heller, PC<br>P.O. Box 959<br>2227 S. State Road 157<br>Edwardsville, IL 62025<br>Telephone: (618) 650-7107<br>aaron@ghalaw.com | Matthew J. Hamilton, Esq.<br>Pepper Hamilton<br>3000 Two Logan Square<br>18th & Arch Street<br>Philadelphia, PA 19103<br>Telephone: (215) 981-4000<br>hamiltonm@pepperlaw.com |
| Justin Witkin, Esq.<br>Ken Smith, Esq.<br>Aylstock, Witkin & Sasser, PLC<br>4400 Bayou Boulevard<br>Suite 58<br>Pensacola, FL 32503<br>Telephone: (850) 916-7450<br>Jwitkin@AWS-LAW.com<br>ablankenship@aws-law.com<br>ksmith@aws-law.com<br>noverholtz@aws-law.com | David P. Matthews, Esq.<br>Lizy Santiago, Esq.<br>Matthews & Associates<br>2905 Sackett Street<br>Houston, TX 77098<br>Telephone: (713) 222-8080<br>dmatthews@thematthewslawfirm.com<br>lsantiago@thematthewslawfirm.com<br>msalazar@thematthewslawfirm.com |
| Howard Nations<br>Lori A. Siler<br>Howard L. Nations Attorney At Law<br>4515 Yoakum Blvd.<br>Houston, TX 77006-5895<br>Telephone: (713) 807-8400<br>nations@howardnations.com | Mary B. Cotton<br>John D. Giddens, P.A.<br>226 North President Street<br>P.O. Box 22546<br>Jackson, MS 39225-2546<br>Telephone: (601) 355-2022<br>betsy@law-inc.com |

| | |
|---|---|
| Salvatore M. Machi<br>Ted Machi & Associates PC<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744 | Jona R. Hefner, Esq.<br>3441 W. Memorial, Suite 4<br>Oklahoma City, OK 73134-7000<br>Telephone: (405) 286-3000<br>attorneyokc@hotmail.com |
| David Dickens<br>Miller & Associates<br>105 North Alfred Street<br>Alexandria, VA 22314-3010<br>(703) 519-8080<br>ddickens@doctoratlaw.com | Pete Schneider, Esq.<br>Grady, Schneider & Newman, L.L.P.<br>801 Congress, 4th Floor<br>Houston, TX 77002<br>(713) 228-2200<br>pschneider@gsnlaw.com |
| Fred T. Magaziner<br>Marjorie Shiekman<br>A. Elizabeth Balakhani<br>Shane T. Prince<br>Eben S. Flaster<br>DECHERT LLP<br>Cira Centre<br>2929 Arch Street<br>Philadelphia, PA 19104<br>(215) 994-4000<br>fred.magaziner@dechert.com<br>shane.prince@dechert.com<br>marjorie.shiekman@dechert.com<br>eben.flaster@dechert.com<br>elizabeth.balakhani@dechert.com | Lawrence J. Gornick, Esq.<br>William A. Levin, Esq.<br>Dennis J. Canty, Esq.<br>Levin Simes Kaiser & Gornick LLP<br>44 Montgomery Street, 36th Floor<br>San Francisco, CA 94104<br>Telephone: (415) 646-7160<br>lgornick@lskg-law.com<br>dcanty@lskg-law.com<br>lsimes@levins-law.com<br>jkaiser@lskg-law.com<br>echarley@lskg-law.com<br>ddecarli@lskg-law.com<br>bsund@lskg-law.com<br>astavrakaras@lskg-law.com |
| Scott Burdine, Esq.<br>Hagans Burdine Montgomery<br>Rustay & Winchester, P.C.<br>3200 Travis, Fourth Floor<br>Houston, TX 77006<br>Telephone: (713) 222-2700<br>sburdine@hagans-law.com | Lowell Finson<br>Phillips & Associates<br>3030 North 3rd Street<br>Suite 1100<br>Phoenix, AstraZeneca 85012<br>(602) 258-8900, ext. 295<br>lowellf@phillipslaw.ws |
| Gale D. Pearson<br>Stephen J. Randall<br>Pearson, Randall & Schumacher, P.A.<br>Fifth Street Towers, Suite 1025<br>100 South 5th Street<br>Minneapolis, MN 55402<br>(612) 767-7500<br>attorneys@outtech.com | Robert H. Shultz<br>Heyl, Royster<br>103 West Vandalia Street<br>P.O. Box 467<br>Edwardsville, IL 62025<br>(618) 656-4646<br>rshultz@hrva.com<br>bwallace@hrva.com |

| | |
|---|---|
| Ellen R. Serbin<br>Perona, Langer, Beck, Lalande & Serbin<br>300 San Antonio Drive<br>Long Beach, CA 90807-0948<br>(562) 426-6155<br>davidhwang@plblaw.com | Scott Armstrong<br>1719 West Main Street<br>Suite 201<br>Rapid City, SD 57702<br>(605) 399-3994<br>scottarmstrong1235@eathlink.net |
| Linda S. Svitak<br>Faegre & Benson, LLP<br>90 South 7th Street, Suite 2200<br>Minneapolis, MN 55402-3901<br>(612)766-7000<br>lsvitak@faegre.com<br>wjohnson@faegre.com | James J. Freebery<br>McCarter & English, LLP<br>919 N. Market Street, 18th Floor<br>Wilmington, DE 19801<br>(973) 622-4444<br>jfreebery@mccarter.com<br>tpearson@mccarter.com |
| Richard D. Hailey<br>Ramey & Hailey<br>3891 Eagle Creek Parkway<br>Suite C<br>Indianapolis, IN<br>(317) 299-0400<br>rhailey@sprynet.com | B. Andrew List<br>Clark, Perdue, Arnold & Scott<br>471 East Broad Street, Suite 1400<br>Columbus, OH 43215<br>(614) 469-1400<br>alist@cpaslaw.com<br>lcollins@cpaslaw.com |