```
 1                    UNITED STATES DISTRICT COURT
                       MIDDLE DISTRICT OF FLORIDA
 2                         ORLANDO DIVISION

 3                     Docket No.6:06-MD-1769

 4    . . . . . . . . . . . . . ..
      IN RE:                         :
 5                                   :
      THE SEROQUEL PRODUCTS          :
 6    LIABILITY LITIGATION           :        Orlando, Florida
                                     :        January 26, 2009
 7    . . . . . . . . . . . . . .:          10:00 a.m.

 8
                       TRANSCRIPT OF PRETRIAL CONFERENCE
 9             BEFORE THE HONORABLE DAVID A. BAKER
                  UNITED STATES MAGISTRATE JUDGE
10

11    APPEARANCES:

12    For the Plaintiffs:

13                                   Larry M. Roth

14                                   Fletch Trammell

15                                   Ken Bailey

16    For the Defendant

17    AstraZeneca:                   Chris Coutroulis

18                                   Earl Austin

19

20

21

22

23    Court Reporter:  Sandra K. Tremel

24    Proceedings recorded by mechanical stenography, transcript

25    produced by computer-aided transcription
```

2

```
 1              P R O C E E D I N G S

 2              THE DEPUTY CLERK:  Case number is

 3    6:06-MD-1769-ORL-22DAB.  In re:  The Seroquel Products

 4    Liability Litigation.

 5         Counsel, please state your appearances for the

 6    record.

 7              MR. ROTH:  Larry Roth in the courtroom,

 8    plaintiff's counsel.

 9              MR. BAILEY:  Ken Bailey, plaintiff's.

10              MR. TRAMMELL:  Fletch Trammell, counsel for

11    David Haller, MDL plaintiffs.

12              MS. MARTINES:  Buffy Martines, counsel for

13    plaintiffs, Linda Guinn and MDL plaintiffs.

14              MR. BAGGETT:  Renee Baggett, plaintiff for

15    counsel -- counsel for plaintiff, excuse me.

16              MR. CANTY:  Dennis Canty, plaintiffs.

17              MR. SEDGH:  Jonathan Sedgh, plaintiffs.

18              MR. AUSTIN:  Earl Austin for AstraZeneca.

19              MR. KERNS:  Kevin Kerns for AstraZeneca.

20              MR. COUTROULIS:  Chris Coutroulis for

21    AstraZeneca.

22              MR. CIOTTI:  Robert Ciotti for AstraZeneca.

23              THE COURT:  Is that everybody?  All right.

24    We're going to ask Professor Saltzburg to join the call in

25    a few minutes.  Before we do that I wanted to solicit any
```

3

1    further views from the parties and tell you what my plans

2    are.

3        I've read the matters that were filed Friday with

4    respect to the respective positions of the parties.  It's

5    my intention, subject to anything that parties may say

6    right now to -- in terms of Professor Saltzburg's

7    authority to appoint him as special master for ADR, and to

8    set his compensation at his normal hourly rate to be split

9    by the parties 50/50.  And to give him authority to act as

10   he deems best:  As a mediator, facilitator, conciliator,

11   tyrant, whatever technique he thinks best.  And I would

12   give him authority to meet ex parte with the sides, both

13   sides as he deems useful, and would direct him to focus

14   his immediate attention on the cases that are in the

15   current trial groups, but as appropriate to look more

16   globally, including, if appropriate, at the state court

17   cases.  That's obviously going to be outside his direct

18   authority, but if it becomes pertinent.  And then would

19   require him to report periodically to the Court but in

20   those reports not to reveal any confidential discussions

21   or actual negotiations but to include any actual

22   settlements that have been confirmed as well as if there's

23   any failure to participate in good faith or if he needs to

24   request additional powers or authority from the Court or

25   specific direction from the Court as to how to proceed.

4

1    So those are my thoughts.  Mr. Bailey, do you want to

2    comment?

3         MR. BAILEY:  Thank you, Your Honor.

4    Your Honor, we met with Mr. Austin last week as

5    directed by the Court, and I agree that the beginning of a

6    dialogue is good.  It's always good to talk and to discuss

7    the possibility.  I'm not going to put words

8    in Mr. Austin's mouth, but I also after having done ADRs

9    and mediations over the years, it of course has to be the

10   intent of both sides to sit down and try to work out

11   something.  Having said that, you answered one question I

12   had here this morning and that is the special master is

13   going to call it either a mediation for the first group of

14   cases.  I would hope that we could work towards the ADL

15   process which I understand has always been my

16   interpretation that has to do with the resolution possibly

17   of the entire litigation.

18        I will say -- again, I'm not trying to put words

19   in Mr. Austin's mouth, but he indicated that they were not

20   going to go down the trail that Eli Lilly went down.  I

21   want to advise the Court that this is a sister litigation

22   to that Eli Lilly and that in that instance what we did

23   was exactly what ADL is, and that is that we established

24   some basic concepts and that is that the plaintiffs had to

25   have taken the drug and that they had to have a diabetic

1    related condition in order to even pass the first level.

2    And at that time we furnished documentation to the

3    representatives of Eli Lilly.  They had the right to

4    review it, to contest it.  A special master was appointed.

5    Any disputes that we had in those two elements went to the

6    special master for him to resolve it.  We established a

7    grid that set out certain categories that people would

8    fall into that was under the direction of the special

9    master, and that if anything did not meet those criteria,

10   then those people did not get paid.  And I would ask the

11   mediator to look at this and see if that has some basis

12   that we can work along.

13        I also want to advise you, Magistrate Baker, that

14   several months ago while the other lawyers were battling

15   over the trial preparations and everything, I reached out

16   to the AstraZeneca lawyers telling them that I had -- now

17   had a chance to go back and review some of the other cases

18   based upon what the experts were saying and that I have

19   made an attempt to dismiss a number of cases unilaterally.

20   To date, I think that number is somewhere in excess of 230

21   cases.  And we're continuing to review these.

22        So I want to say that from the plaintiffs'

23   perspective, if this gets off the ground and if there is

24   some cooperation from the other side, that we will do

25   everything in our power to look at these cases, get the

6

```
 1   basis for what we think is a fair evaluation of them, and

 2   we will work with the special master the best we can.

 3             THE COURT:  Mr. Austin?

 4             MR. AUSTIN:  I think, Your Honor, we certainly

 5   are willing and happy to work with the special master.

 6   You know, ultimately any settlement's going to have to

 7   reflect the merits of the individual cases or some method

 8   to ascertain the merits of cases.  Right now we have a

 9   mass of undiscovered cases as to which really no one knows

10   the merits.  The only glimpse we have of those cases are

11   the discovery that we have been able to conduct in the

12   cases that we have thus far which has resulted in the

13   dismissal of five of the six which is consistent by the

14   way of what is happening in other jurisdictions.  And in

15   the remaining seven cases, the ones that the plaintiffs

16   believe apparently are the best cases, we frankly just

17   don't think they're strong cases.

18       Now -- and we haven't received a settlement demand in

19   those cases.  So you know, we're a week from the first

20   trial.  We have no demand, and we don't think yet they're

21   strong cases.  So we are certainly willing to participate

22   in this endeavor.  And we think it's very premature to be

23   talking about ADR when we have -- ADR cases we don't know

24   anything about.  Then we have seven cases that have been

25   worked up, and I think that are known quantities that we
```

7

```
 1   don't even have settlement demands on.  So just as a

 2   practical matter, it seems to us, makes sense that

 3   discussions ought to start there.  But certainly going

 4   forward, we're happy to participate, just recognizing that

 5   we're not prepared to talk about settling cases

 6   irrespective of their merits.  That's not just something

 7   we're interested in.

 8           THE COURT:  Tell me the -- what's the procedural

 9   status of the state court cases?

10           MR. AUSTIN:  We have got -- we got cases in

11   Delaware that are, I think the first one is set for trial

12   I believe in April, and perhaps Mr. Canty and others can

13   correct me if I'm wrong on that, but my recollection is

14   that first case there is set for April.  We have a number

15   of cases set in New Jersey as to which I don't believe a

16   trial setting has been set yet.  But those cases are

17   relatively early in the discovery process.  And then we

18   have a few cases in Missouri, and my recollection is that

19   the first case there is set in October.

20           THE COURT:  Any of those cases have dispositive

21   motions pending?

22           MR. AUSTIN:  The only ones -- I don't think

23   they're pending.  If they are, they're just in the very

24   beginning of the pipeline, would be in Delaware.  I don't

25   remember the exact deadlines for filing there.  My guess
```

8

```
1   is it's this month.

2             THE COURT:  And have there been any efforts

3   toward ADR in any of those cases?

4             MR. AUSTIN:  Not to my knowledge.

5             THE COURT:  All right.

6             MR. AUSTIN:  Let me back up.  I think in

7   Delaware there is -- a mediation has been discussed and

8   perhaps a date set and I think a mediator selected.  And,

9   again, I would like to have Mr. Canty and others who are

10  more directly involved in Delaware to fill in the details.

11      So there has been a selection of a mediator, perhaps

12  identification of a mediation date; although I don't

13  believe the mediation has occurred.

14            MR. CANTY:  Your Honor, Dennis Canty.

15      On that issue, Mr. Austin is right:  We do have a --

16  I think a sitting judge in Delaware is going to be looking

17  at the first two cases and first two cases only, and that

18  is scheduled for Friday.  There may be some question about

19  whether it's going to happen.  I'm not sure, but right now

20  it's scheduled for this Friday.  That's all I know.

21            THE COURT:  Is Mr. Redfern still working on

22  that, those cases?

23            MR. CANTY:  He is, Your Honor.  He's working as

24  a special master for discovery purposes capacity.  Judge

25  Jordan, I believe of the Delaware bench, has been
```

9

1    appointed to be on -- Friday on mediation.

2              MR. AUSTIN:  That's correct.

3              THE COURT:  All right.  Any reason not to have

4    Professor Saltzburg join us now?

5              MR. ROTH:  Your Honor, Larry Roth.

6         I can add just one clarification.  When you mentioned

7    about the powers of Professor Saltzburg to look more

8    globally, you mentioned state courts.  Did you also mean

9    to include the entire MDL here as well?

10             THE COURT:  Yes.  But again that's going to be

11   up to his -- you know, he talks to -- obviously the

12   parties disagree about that.  And my thought is after he

13   talks to everybody, if he decides that's

14   counterproductive, he shouldn't do it.  If he thinks it's

15   productive, he should do it.  And obviously both sides are

16   free to maintain their positions.  This is not a coercive

17   process or in the end this side of it is not going to be

18   judgmental.  It's going to be whatever it is.  And if the

19   defendants simply do not want to make any offers or even

20   talk about a structure for trying to consider all the

21   cases, then that's not going to happen.

22        But if -- you know, mediators and other

23   intermediaries have a way, perhaps, of getting people to

24   open their eyes to looking at things.  So if that happens,

25   then -- my point is simply that he should be free if he

```
 1   thinks it's productive to encompass as much as -- if he

 2   gets the ball rolling, you know, we could all celebrate if

 3   everything goes away.  But I'm going to leave that all up

 4   to him.

 5           MR. ROTH:  Okay.  I just wanted to clarify that

 6   as to the entire -- our MDL.

 7           THE COURT:  He will have authority to do that as

 8   far as I'm concerned.

 9       All right.  We will ask them to join.  Have somebody

10   call him and then he will call in.

11           MR. BAILEY:  Magistrate Baker, while we're

12   waiting for the special master to get on the phone, we

13   wanted to advise you that we are filing a motion today,

14   sanctions motion.

15           THE COURT:  I saw the notice of intent to file.

16           MR. BAILEY:  Yes, sir.  And because of the

17   shortness of time we have until trial, would like to see

18   if the Court could assist us to have some type of a

19   immediate hearing on that.  And we can be down there as

20   early as Wednesday.  We would like for that to be heard

21   because it is very important to our first trial.

22           THE COURT:  Well, Judge Conway has got you

23   coming in on Wednesday.  We can take up the subject of the

24   response and hearing of that motion at that time.

25           MR. COUTROULIS:  In response to what we received
```

```
 1    on Friday night, which was the plaintiff's filing a notice

 2    of intent to move, I think they have now filed some

 3    motions paper just a few minutes before this hearing came

 4    up.  We did file under seal this morning a response to

 5    their filings this past Friday night.  I did want to

 6    apprise the Court of that.

 7              MR. BAILEY:  Magistrate Baker, also at that

 8    conference with you on Wednesday, we would like to once

 9    again discuss with the Court and the defendant's

10    attorneys, the privilege log.  Just alerting the Court.

11    We will file whatever is necessary to notice everybody.

12              MR. COUTROULIS:  The only set hearing I'm aware

13    of at this point is the hearing in front of Judge Conway

14    on Wednesday.

15              THE COURT:  That's correct.  I'm planning to go

16    ahead and notice up a hearing for a half hour before that

17    to go over these motions to seal, make sure I understand

18    what everybody's up to with respect to that.

19              MR. SALTZBURG:  This is Steve Saltzburg.

20              THE COURT:  Professor Saltzburg, good morning.

21              MR. SALTZBURG:  Good morning.

22              THE COURT:  We have got -- this is Judge Baker.

23    We've got Larry Roth, the liaison for the plaintiffs, here

24    in the courtroom.  Everybody else is on the telephone.

25    Before you joined, I outlined to them what my intention
```

1  was in terms of appointing you.

2      I'll tell you now that you would be appointed as a

3  special master for alternative dispute resolution.  You

4  will be compensated at your standard hourly rates to be

5  split by the parties 50/50.  You will have authority to

6  act as a mediator, facilitator, conciliator.  I even used

7  the word tyrant, if that's appropriate.  I won't put that

8  in the order, but just so you have an idea.  I want you to

9  feel plenary in your approach here.  That you'll have --

10  you would be authorized to meet with the parties and their

11  representatives on an ex parte basis if you deem it

12  appropriate in the mediation function.  You would be

13  authorized to direct representatives from both sides to

14  attend in person or by telephone as you deem it

15  appropriate.  Your immediate focus will be on the cases

16  that -- in the trial groups that are now set, but you will

17  have a mandate to include consideration of all the cases

18  in the MDL.  And if the momentum is such that it's

19  appropriate to talk about the state court cases, obviously

20  I have no authority over those and neither will you under

21  the Court's authority.  But if that becomes a pertinent

22  topic, you can keep that ball rolling as well.

23      I understand there is a state court mediator that's

24  been pointed in Delaware, a sitting judge, for a couple of

25  their cases that are set for later this year, and he may

13

1   be meeting with the parties as soon as this week.  But

2   that may get postponed.

3        And I want you to report to the Court in writing

4   status of things without revealing any confidential

5   discussions.  Obviously it would include any actual

6   settlements of individual cases or groups of cases.  If

7   there's any failure of the parties to participate in good

8   faith, you should report that.  Or if you need additional

9   authority or enforcement of any actions that you're

10  taking, you can put that in your report and I'll act on it

11  to see what needs to be done.

12       My thought would be that upon appointment you would

13  go ahead and talk to the designated individual lawyers

14  from both sides and decide whether you want to proceed,

15  how quickly.  And we do have the first case set in

16  February.  It's coming right up for trial.  There's

17  pending motions that Judge Conway is going to be dealing

18  with this week which obviously will change the shape of

19  things a little bit as some of the issues may disappear or

20  whatever.  But does that give you enough direction to

21  proceed?

22            MR. SALTZBURG:  Yes, it does.

23       You may have talked to the parties about this, but

24  since they're on the phone -- if this were -- if this were

25  an ordinary mediation, one of the first things I ask is

14

1    for a confidential mediation statement so that the parties

2    can fill me in on how they view the status of things, what

3    suggestions they might have for things to avoid, things

4    that might prove to be fruitful in terms of mediation.

5    Not to be served upon the other side, but just upon me,

6    and to include any documents that they would like me to

7    review.  And I think it makes sense to begin that way with

8    that being -- the sooner I get that, the better I'll be

9    situated in order to make a judgment about what order to

10   do things in and whom to contact.  In fact, all

11   suggestions about those sort of things would be welcome.

12           THE COURT:  That's consistent with the mediation

13   practice that we have in this Court and in the Florida

14   state courts.  And I'll order that that they get that to

15   you by Wednesday.  The only -- based on my experience in

16   the case, I think we should put a page limit on it for

17   them.  Do you have a thought as to what --

18           MR. SALTZBURG:  Ordinarily I would agree with

19   you, but at the moment I come into this with no

20   information, I sort of would rather error on the side of

21   preparing well at the beginning so that I take the risk

22   that I would have to read more than perhaps I'd like in

23   the ideal word, but I think that may be better than a

24   strict page limit.

25           THE COURT:  All right.  Don't say you weren't

15

1  warned.

2          MR. SALTZBURG:  I hear you.  I do hear you.

3          THE COURT:  I would suggest to the parties they

4  might want to limit that statement to 20 or 25 pages plus

5  any attachments that you want to make of the other

6  documents that you want Professor Salztburg to read.

7      Was that you, Mr. Bailey?  You want to say something?

8          MR. COUTROULIS:  It actually was Chris

9  Coutroulis.

10      I was going to say, Judge, that I know that

11  defendants in their statements that they filed Friday -- I

12  think the plaintiffs as well -- referred to certain docket

13  entries here that we thought might be useful for the

14  mediator to review.

15          MR. SALTZBURG:  If it works for you guys, the

16  thing for me is since you probably have those documents

17  right at hand and you're going to send me your

18  confidential statements by e-mail, if you just attach them

19  or if it's too much to put in one e-mail, then several

20  attachments, that's probably the easiest way for me get

21  them.

22          MR. COUTROULIS:  Okay.  Because I think a lot of

23  those filed papers frame the issues quite well.

24          MR. SALTZBURG:  I thought they might.  That's

25  exactly what I'd like to see.

```
 1          THE COURT:  He'll obviously read those.  The

 2    other statement will be further, I think, a little bit of

 3    what you talked about with me, both sides, before we

 4    brought Professor Saltzburg on the phone, but obviously in

 5    more detail as to -- and no secret here, it's revealed in

 6    the statements that were filed Friday, the parties differ

 7    greatly as to how to go about this, but it will include

 8    the things that you identified, Professor Saltzburg, in

 9    terms of what each side ought to be avoided and what ought

10    to be emphasized and what approach might work.

11          And as you're undoubtedly aware, a lot of plaintiffs'

12    attorneys were involved in the Zyprexa settlement and they

13    have got ideas that are based on that and AstraZeneca

14    obviously doesn't think that's appropriate, but they're

15    obviously also prepared to talk about why they don't think

16    it's appropriate, and they will do that.

17          And then you can take all that into consideration in

18    deciding what strategy you want to use to try to find out

19    if there is any common ground here that's worth pursuing.

20          MR. SALTZBURG:  I said this to the parties, my

21    basic rule is I will never repeat anything that you tell

22    me orally or in writing without your permission to the

23    other side.  And so this confidential statement is just

24    for me.  And so the things I really find helpful are if

25    you know that there are hot button issues, certain
```

17

```
 1   suggestions which drives your client up the wall, I'd like

 2   to know that.  And if your perception is that the other

 3   side, in your view, that there are certain things that

 4   whatever you go near them problems arise and other things

 5   that seem to go down easier, even if you're wrong about

 6   it, and that's your perception, it's helpful to know that

 7   just so that I know where the landmines are or at least

 8   perceived to be.  And as I say, since it's confidential

 9   that will just give me a guide and help me get started

10   since it sounds like this trial schedule you have that

11   sooner rather than later is what's needed here.

12           THE COURT:  All right.  Any other questions that

13   you have, Professor Saltzburg?

14           MR. SALTZBURG:  No.

15       I take it you circulated my resume so that has my

16   e-mail, telephone numbers.  I don't know if it has my cell

17   phone which I should just give out.  I don't mind being

18   called on it if something comes up.  That's 202-489-7464.

19           THE COURT:  All right.  I'll enter an order of

20   appointment and put everybody to work.  And -- well, I'll

21   leave it at that, and we'll wait to hear from everybody.

22       And we're in recess.

23           MR. COUTROULIS:  Before we break may I ask for a

24   clarification about Wednesday's hearings that you

25   indicated you would have for 30 minutes before the one
```

18

```
 1   with Judge Conway?

 2           THE COURT:  Right.

 3           MR. COUTROULIS:  Will that just relate to the

 4   sealed nature of the filings as to the motions that were

 5   filed this morning and were previewed on Friday, or do you

 6   anticipate that you would want to hear those motions on

 7   the merits?  That's one question I have.

 8       And then, secondly, Mr. Bailey said he wanted to

 9   raise privilege issues.  There's no motion of which I'm

10   aware that relates to any privilege issues where five days

11   before the beginning of trial, don't know what that

12   relates to or whether the Court would entertain any of

13   that on Wednesday or what the issues even are.

14           THE COURT:  Well, my 9:30 hearing, I was

15   intending it to cover the motions that were filed last

16   week to put things under seal to make sure I understand

17   what all that is so I can dispose of those things.  I am

18   not going to get into the motion about these FDA letters

19   or any privilege except insofar as to set a further

20   schedule for how to consider those.  I'm not going to get

21   in the merits of either of those.  In fact, my thought was

22   to leave both of those, to the extent that they're in the

23   record, for Judge Conway's conference.  And my guess is

24   that she will set something for later consideration of the

25   merits of those things unless she's able to deal with it
```

1    on the spot.

2         But as I was thinking through it this morning I

3    thought I'd do the 9:30 hearing here and I'll probably go

4    sit in on the 10:00 hearing either as I did the other day

5    in the jury box or on the bench, depending what Judge

6    Conway wants me to do, and then see if there's other

7    things that I need to take care of before the week is out.

8              MR. TRAMMELL:  Fletch Trammell for plaintiffs.

9         As Mr. Coutroulis says, they have already joined

10   our -- well, at least the merits of our motion for

11   sanctions.  We start trial next Monday.  That motion, as

12   you know, deals with documents that, as we say in our

13   papers, they're right to the heart of our liability case

14   and their defense.  Those documents, you know, were served

15   on us literally last week.  It's going to be important to

16   us and simply we can raise this with the Judge, but it's

17   going to be important to us to get a hearing, get some

18   resolution of the issues that we raised there before we

19   start trial.

20             THE COURT:  Well, Judge Conway will have looked

21   at everything that's been filed before the hearing, I can

22   assure you of that.  All right.

23        Thank you, Professor Saltzburg.  Thank you, counsel.

24        We're in recess.

25                       (End at 10:39 a.m.)

20

```
1                    C E R T I F I C A T E

2            I certify that the foregoing is a correct

3     transcript from the record of proceedings in the

4     above-entitled matter.

5

6     s\Sandra K. Tremel   January 26, 2009

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```