# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

IN RE: Seroquel Products Liability
Litigation.

Case No.  6:06-md-1769-Orl-22DAB

*Individual Case:*
**David Haller v. AstraZeneca LP, et al.**          **Case No. 6:07-cv-15733-Orl-22DAB**

_____/

## ORDER

Plaintiffs in the Trial Group One Cases have filed three motions *in limine* seeking to preclude introduction by AstraZeneca of certain types of evidence at the trials in individuals cases within the Multidistrict Litigation *In re Seroquel*. The Court considers each Motion *in Limine* individually and rules as set forth below.

### STANDARD FOR MOTIONS IN LIMINE

A motion *in limine* presents a pretrial issue of admissibility of evidence that is likely to arise at trial, and as such, the order, like any other interlocutory order, remains subject to reconsideration by the court throughout the trial. *Stewart v. Hooters of America, Inc.*, Civ. No. 8:04-cv-40-T-17-MAP, 2007 WL 1752843, *1 (M.D. Fla. 2007). "The real purpose of a motion *in limine* is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence which may irretrievably effect the fairness of the trial. A court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds." *Id*. (citing *Luce v. United States*, 469 U.S. 38, 41 (1984) (federal district courts have authority to make in limine rulings pursuant to their authority to manage trials).

Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context. *See generally* 21 Charles A. Wright & Kenneth W. Graham, Jr., FEDERAL PRACTICE AND PROCEDURE ¶ 5042 (1977 & Supp.1993). It is the better practice to wait until trial to rule on objections when admissibility substantially depends upon what facts may be developed there. *Bowden ex rel. Bowden v. Wal-Mart Stores, Inc.*, Case No. Civ. A 99-D-880-E, 2001 WL 617521, *1 (M.D. Ala. Feb. 20, 2001) (citing *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir.1975)).

The movant has the burden of demonstrating that the evidence is inadmissible on any relevant ground. *Bowden*, 2001 WL 617521 at *1 (citing *Plair v. E.J. Brach & Sons, Inc.*, 864 F.Supp. 67, 69 (N.D. Ill.1994)). At trial, the court may alter its *limine* ruling based on developments at trial or on its sound judicial discretion. *Luce v. United States*, 469 U.S. 38, 41 (1984). "Denial of a motion *in limine* does not necessarily mean that all evidence contemplated by the motion will be admitted at trial." *Hawthorne Partners v. AT & T Tech.*, 831 F.Supp. 1398, 1401 (N.D. Ill. 1993). Instead, denial of the motion means the court cannot determine whether the evidence in question should be excluded outside the trial context. *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989). The court will entertain objections on individual proffers as they arise at trial, even though the proffer falls within the scope of a denied motion *in limine*. *Id*. A ruling *in limine* does not "relieve a party from the responsibility of making objections, raising motions to strike or making formal offers of proof during the course of trial." *Thweatt v. Ontko*, 814 F.2d 1466, 1470 (10th Cir. 1987).

Evidence may be excluded when the probative value is outweighed by its prejudice. Under Rule 403, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.

R. Evid. 403. Rule 403 permits a district court to exclude relevant evidence only when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *United States v. Ross*, 33 F.3d 1507, 1524 (11th Cir.1994). Rule 403 is "an extraordinary remedy" whose "major function . . . is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. Grant*, 256 F.3d 1146, 1155 (11th Cir. 2001).

| | |
|---|---|
| **MOTION:** | **PLAINTIFFS' MOTION [FOR] THEIR REQUESTED AGGRAVATION OF PREEXISTING CONDITION INSTRUCTION (Doc. No. 1207)** |
| **FILED:** | **January 13, 2009** |

**THEREON** it is **ORDERED** that the Motion is **DENIED without prejudice** to its reassertion at the appropriate charge conference.

Plaintiffs have asked for their Requested Instruction No. 28 ("Instruction 28"), which concerns damages for a pre-existing condition, to be included in the Jury Instructions for the Trial Group One cases:

> If you find that the Defendant caused a bodily injury, and that the injury resulted in an aggravation of an existing physical defect or the activation of a latent disease or physical defect, you should attempt to determine what portion of Plaintiff's condition resulted from the aggravation or activation. If you can make that determination, then you should award only those damages resulting from the aggravation or activation. However, if you cannot make that determination, or if it cannot be said that the condition would have existed apart from the injury, then you should award damages for the entire condition suffered by the Plaintiff.

*See* Parties' Requested Jury Instructions at 59. Plaintiffs contend that Instruction 28 derives directly from the Florida Standard Jury Instructions 6.2g(1), which "is intended for use in situations in which a pre-existing physical condition is aggravated by the injury, or the injury activates a latent condition." Note on Use, Fla. Standard Jury Instruction 6.2g(1).

AstraZeneca is opposed to inclusion, at this juncture, of Instruction 28, arguing that the proper time to decide whether Instruction 28 should be given is at the charge conference, after the close of evidence and argument from the parties; at that point, AstraZeneca contends, "it will then be clear that Instruction 28 does not fit the evidence that can and will be admitted at trial." AstraZeneca argues that Instruction 28 is inapplicable "given the recognition of Plaintiffs' counsel and their own experts that, due to Plaintiffs' many pre-existing diabetes risk factors (including most notably their long-term obesity), the Plaintiffs were going to get diabetes at some point even if they never took Seroquel"; however, Plaintiffs have failed to present expert testimony "to any reasonable degree of medical probability as to what quantifiable period of time Seroquel caused the Plaintiffs' onset of diabetes to be hastened or accelerated." Doc. No. 1233 at 1-2. AstraZeneca also contends that Plaintiffs will use Instruction 28, a *damages* instruction, to shift Plaintiffs' burden on causation to AstraZeneca to disprove causation or "else face liability for diabetes injuries that Plaintiffs would have suffered even if they had never taken Seroquel. Doc. No. 1233 at 2.

In support of Plaintiffs' argument that the instruction is necessary because the Trial Group One Plaintiffs suffer from preexisting latent disease, Plaintiffs point to testimony in the *Guinn* case from "Defendants' expert witness Dr. Eugene Barrett, [which] characterized Plaintiff Linda Guinn as suffering from "pre-diabetes" and as being "pre-disposed" to Type II diabetes at the time she was prescribed Seroquel." Doc. No. 1207 at 2 (citing Barrett Dep. at 284). However, in the *Guinn* case, Chief Judge Conway has very recently ruled on January 30, 2009[1], in the first Trial Group One case, that "Florida's concurring cause rules are, at best, unsettled":

> After careful analysis of Florida's case law and standard jury instructions regarding causation, *the Court concludes that Florida's concurring cause rules are, at best,*

---

[1]Plaintiffs' Motion was filed well before, and without the benefit of, Chief Judge Conway's disposition in the *Guinn* case. *See Guinn v. AstraZeneca*, Case No. 07-cv10291-22DAB.

*unsettled.* In particular, it is unclear whether, as *Stahl* states, the "substantial factor" test applies "only in those concurring cause cases where each of the said concurring causes could have alone produced the plaintiff's injury," 438 So.2d at 19 (emphasis added), or whether, as Florida Standard Jury Instruction 5.1(b) and the preexisting condition cases cited above can be read to suggest, causation is satisfied where the plaintiff establishes that the defendant's negligence substantially contributed to the plaintiff's injury, even though such negligence was one of perhaps many concurring causes that acted in combination to cause the injury. Ultimately, however, the lack of clarity in the law does not hinder the Court's decision in [*Guinn*], as the record does not create a triable issue under either of these two tests.

*Guinn v. AstraZeneca*, Case No. 07-cv-10291-22DAB, Doc. No. 47 at 11 (emphasis added).

Accordingly, until such time as the causation issue is crystalized by Plaintiffs and after the Court has

heard all of the evidence, it is premature for the Court to rule on whether Instruction 28 would be

appropriate. Denial of Plaintiffs' Motion for Their Requested Aggravation of Preexisting Condition

Instruction [No. 28] (Doc. No. 1207) is **DENIED without prejudice** to its reassertion at the charge

conference on the jury instructions in the appropriate case.

| | |
|---|---|
| **MOTION:** | **PLAINTIFFS' MOTION IN SUPPORT OF THEIR REQUESTED SPOLIATION INSTRUCTION (Doc. No. 1208)** |
| **FILED:** | **January 13, 2009** |
| | _____ |
| **THEREON** it is **ORDERED** that the Motion is **DENIED**. | |

Plaintiffs move the Court to include a spoliation instruction in the Trial Group One cases. See

Plaintiffs' Requested Jury Instruction No. 25. Plaintiffs contend that a spoliation instruction is

necessary because of the "disappearance and apparent destruction of a signed copy of AstraZeneca's

Safety Position Paper for Seroquel, prepared and signed by Wayne Gellar, AstraZeneca's Global

Safety Director for Seroquel, and transmitted to an AstraZeneca employee in Holland for presentation

to the Dutch authorities." Doc. No. 1208 at 2. The Dutch prescription drug authority, the Medicines

Evaluation Board ("MEB"), serves (or served) as the reference member state for Seroquel for the

European Union. Plaintiffs argue the Safety Position Paper is a key document because three months after receipt of the Safety Position Paper from AstraZeneca, the MEB required AstraZeneca to add a warning to Seroquel regarding hyperglycemia and exacerbation of pre-existing diabetes. Doc. No. 1208.

AZ responds that the spoliation instruction is unwarranted because AstraZeneca has produced the Safety Position Paper to Plaintiffs. Doc. No. 1232. Plaintiffs do not deny that they received a copy of the Safety Position Paper, albeit one that was not signed: "Although the AstraZeneca employee in Holland, Dorothy Wientjens, confirms . . . that she has received a facsimile of the signed, eleven-page document, and that it was forwarded to the Dutch authorities, AstraZeneca has been unable to produce the signed version of the Safety Position Paper in discovery. Apparently, AstraZeneca did not retain the signed version." Doc. No. 1208 at 2. AstraZeneca also produced the revised Safety Position document (correcting certain facts AstraZeneca contends were errors) that was submitted to the MEB in January 2001. Doc. No. 1232 at 2.

AZ stipulates that it will refrain from arguing that the Safety Position Paper is not the company's position merely because it is the "unsigned" version; AstraZeneca will not dispute it was the document sent to the MEB in September 2000. Doc. No. 1232 at 2-3 (setting forth precise stipulation). As AstraZeneca points out, Plaintiffs have had the benefit of the "unsigned" version in discovery and in opposing summary judgment. Moreover, the Court has already ruled in reference to AstraZeneca's motion *in limine* (Doc. No. 1202) that evidence regarding the Dutch regulatory authority's decision to ask Astra Zeneca to add language about hyperglycemia and diabetes to the Seroquel label in 2000-2001 would be excluded, except potentially for purposes of rebuttal. *See* Doc. No. 1253.

<table>
<tr><td>MOTION:</td><td>PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE EVIDENCE AND ARGUMENT RELATED TO CERTAIN ISSUES AND/OR REQUEST FOR LIMITING INSTRUCTIONS (Doc. No. 1209)</td></tr>
<tr><td>FILED:</td><td>January 13, 2009</td></tr>
</table>

**THEREON** it is **ORDERED** that the Motion is **GRANTED in part** and **DENIED in part.**

Plaintiffs' final motion *in limine* seeks to exclude evidence and argument, or alternatively seeks a limiting instruction, regarding twenty different issues. Doc. No. 1231.

### I. Unopposed or partially unopposed issues

AZ responds that it does not intend to introduce evidence or otherwise argue nine of the issues raised.[2] These issues include:

*A. That a verdict for the Plaintiff will adversely impact pharmaceutical companies' incentive/ability to develop new medications.*

*B. That any award of damages in this case will adversely affect the ability of any member of the jury to purchase, or have available medications in the future, or affect the cost thereof, or have any adverse effect on the medical, or health products available to individuals or industries in the United States or worldwide.*

*C. That this case or other Seroquel or second generation antipsychotic product liability litigation cases may have a negative impact on the stock price of AstraZeneca or any other publicly traded pharmaceutical manufacturer, or cause it or its employees any sort of financial hardship or loss of employment.*

*D. That this case or any other AstraZeneca or second generation antipsychotic products liability case may cause an increase in the cost of purchasing or maintaining insurance.*

*E. That this case or any other AstraZeneca product liability case may cause an increase in the cost of purchasing medications for the public.*

*P. References to jury consultants.*

_____

[2]For issues A through E, AstraZeneca responds that it does not intend to introduce evidence on these issues, except to the extent Plaintiffs "open the door" to such evidence, and then AstraZeneca will respond. Decisions as to the admissibility of such evidence is left to the trial judge.

*Q. References to settlement, negotiations, or lack thereof.*

*R. References to stipulations.*

*S. References to motions to exclude or in limine.*

AstraZeneca has additionally agreed not to introduce evidence concerning four of the other issues raised by Plaintiffs, with AstraZeneca stating only some general caveats that appear to be either reasonable or unlikely to arise during trial.

*F. That the Plaintiff is covered by some form of insurance or other collateral source for the incident in question.*

AstraZeneca does not intend to introduce evidence or otherwise argue that Plaintiffs' expenses were covered by some form of insurance or other collateral source, thus AstraZeneca agreed to Joint Requested Instruction No. 27, which instructs the jury on the collateral source rule in accordance with Florida Standard Jury Instruction 6.13.1. To the extent plaintiffs seek to exclude evidence of AstraZeneca's patient prescription assistance programs, AstraZeneca is opposed to the Motion. While there is no evidence that any of the Trial Group One Plaintiffs received prescription assistance and it is thus not relevant for that reason, if Plaintiffs "open the door" on another basis, it may be relevant for AstraZeneca may introduce evidence of its charitable programs to rebut that claim. That issue is left for the trial judge to decide.

*H. The purported 'litigation crisis,' 'lawsuit crisis,' 'lawsuit abuse,' or similar terms or phrases.*

*I. That Plaintiffs' attorneys and their law firms[3] primarily represent plaintiffs in lawsuits or specialize in personal injury or product liability litigation, advertise, seek to obtain clients in a manner different from that used by defense counsel, or routinely employ contingent fee arrangements.*

---

[3] To the extent Point I also requests exclusion of evidence or argument about attorney advertising generally, AstraZeneca will not introduce evidence or argue about attorney advertising generally. The discussion about Seroquel-specific attorney advertising, which AstraZeneca argues is relevant and admissible in appropriate cases, is discussed below in Point N.

AstraZeneca does not intend to introduce evidence on or otherwise argue Issues H and I, unless to rebut Plaintiffs' disparaging arguments that AstraZeneca is "Big Pharma," or characterizations of the defense team as "corporate lawyers," or use similar terms or phrases, which the Court anticipates the trial judge will not allow.

*J. Other Seroquel cases and other cases involving Plaintiffs' counsel or other drugs.*

AstraZeneca does not intend to introduce evidence or argument about the number of other Seroquel cases, their outcomes, nor about counsels' involvement in other pharmaceutical litigation generally. However, AstraZeneca argues that it should not be barred from introducing relevant evidence or argument relating to the Zyprexa MDL, such as evidence that a Plaintiff took Zyprexa or participated in that litigation is clearly relevant and admissible, as it undermines (if not bars) any claim that Seroquel caused the injury alleged here. AstraZeneca also argues it is entitled to explore on cross-examination of Plaintiffs' experts whether they also participated in the Zyprexa litigation and their involvement in other pharmaceutical litigation, and the relationships with plaintiffs' counsel because such evidence goes to the experts' credibility and bias. The Court generally agrees that such cross-examination is allowable, but leaves that decision up to the trial judge to decide base on the evidence before her.

## II.  Issues on which AstraZeneca is completely opposed

There are only seven remaining issues Plaintiffs raise to which AstraZeneca is completely opposed. The Court considers these seven issues in turn.

*G. That an award of punitive damages in this case is unconstitutional, illegal, or not supported by the current state of the law.*

Plaintiffs argue in two sentences merely that "[f]ederal and Florida state law both permit the award of punitive damages. To suggest otherwise is improper and would be unduly prejudicial. Doc. No. 1209 at 5 (citation omitted). While AstraZeneca "does not dispute the general principle that

federal and Florida law permit the award of punitive damages in certain circumstances" it argues that "such damages are inappropriate in these cases as a matter of both law and fact" and has reserved the issue in the proposed jury instructions. Doc. No. 1231. The Court agrees that AstraZeneca should not be precluded from arguing to the jury that the facts of particular cases do not warrant an award of punitive damages and/or that the record does not support one or more of the legal requirements set forth in any instruction the Court may give on punitive damages. Whether a punitive damage instruction is appropriate is a matter best left for the trial court judge to decide after hearing the all of the evidence.

     *K. Unsupported hearsay statements of health care providers.*

     Plaintiffs argue AstraZeneca should be precluded from eliciting, referencing, or introducing any statements based upon hearsay discussions with healthcare providers because such statements would violate Federal Rules of Evidence 702 and 703. AstraZeneca argues the Motion is vague about which statements Plaintiffs seek to bar, and such statements could conceivably fit within exceptions to the hearsay rule. This is clearly a category of evidence best left to the discretion of the trial judge to decide if and when such evidence is introduced.

     *M. The fees received and/or charged by Plaintiffs' experts for work in lawsuits involving drugs other than Seroquel and reference to them as 'paid litigation experts' or the like.*

     Plaintiffs move to preclude AstraZeneca from presenting evidence or argument concerning Plaintiffs' experts having received substantial sums of money for work in other kinds of cases. At the same time, Plaintiffs do concede that evidence of fees received in this MDL is "arguably relevant to show potential bias" but argue that evidence relating to work in other cases involving other drugs has no probative value and irrelevant.

     AstraZeneca in opposition argues that the fact that certain experts previously testified on behalf of other plaintiffs in other products liability litigations, testify on behalf of only plaintiffs, or

made significant sums of money testifying as experts is all relevant to bias and credibility, and thus is a permissible area of cross-examination under Rule 611(b). This decision is best left to the discretion of the trial judge to decide based on the evidence and argument at trial.

*N. That any Plaintiffs' counsel may have advertised for persons injured by the use of Seroquel or in any other manner.*

Plaintiffs argue that AstraZeneca should be precluded from evidence or argument concerning advertising by Plaintiffs' counsel as to Seroquel.[4] Plaintiffs contend that counsel has a First Amendment right to advertise, and introduction of such matters before the jury would be so prejudicial as to likely cause a mistrial; any such reference should be excluded under Rules 402 and 403 because even if such evidence or argument is relevant, its minuscule probative value is vastly outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or causing undue delay and waste of time.

AZ contends such advertising by Plaintiffs' counsel may become relevant at trial and AstraZeneca may argue there is a nexus between Seroquel-specific lawyer advertising and for example, a particular Plaintiff's treatment decisions, or where it played a role in a Plaintiff's belief that he or she suffered injury as a result of Seroquel. AstraZeneca specifically cites the example in the case of one of the Plaintiffs, Mr. Unger, where he discussed possible Seroquel discontinuance with his endocrinologist after seeing a lawyer advertisement; AstraZeneca argues it is entitled to explore the extent to which Mr. Unger's request was based not on the medical opinion of any of his treating physicians, but instead on his lawyers' advertisements. This decision is also one best left to the discretion of the trial judge to decide based on the testimony of Plaintiffs presented at trial.

*L. The potential impact on pharmaceutical companies and the FDA if Plaintiffs' failure to warn claims prevail.*

---

[4]AZ represents that it does not intend to argue about general advertising by Plaintiffs' counsel.

*O. That FDA approval of Seroquel means that AstraZeneca met its standard of care and/or fulfilled its duty to warn as a matter of law.*

Plaintiffs argue the Court should exclude or limit any evidence or argument that FDA approval of Seroquel means that Defendants met their standard of care and/or fulfilled their duty to warn as a matter of law because it is an incorrect statement of Florida law and it will confuse the issues and mislead the jury; Plaintiffs alternatively seek a limiting instruction.        Plaintiffs also seek to exclude any statements from AstraZeneca that a verdict for Plaintiffs on their state failure to warn claims would have detrimental societal effects such as causing drug manufacturers to add unsubstantiated, false, or invalid warnings in order to avoid lawsuits; (2) undercutting the FDA's mission to provide only scientifically valid warnings; (3) frustrating the FDA's protective regime; and (4) diluting the effectiveness of warnings generally where too many serious warnings are included.  Plaintiffs contend such arguments are irrelevant, highly subjective, constitute unsupported speculation, and are likely to involve matters outside the record, and appeal to a "community conscience" or collective self-interest.

AZ in response argues that, by filing these lawsuits, Plaintiffs have placed directly at issue the adequacy of the warning mandated by the FDA[5], and AstraZeneca is entitled to present evidence regarding the FDA's regulatory scheme generally, the FDA's regulation of Seroquel, and the FDA's regulatory determinations regarding Seroquel, and the specific warnings required on atypical antipsychotic medications, including Seroquel.  AstraZeneca points to Plaintiffs' arguments in other pleadings that the FDA is "underfunded," "understaffed," or fails adequately to assess the risks and benefits of medications prior to and after approval.  The Court agrees that AstraZeneca should not be foreclosed from presenting evidence and argument to defend against Plaintiffs' failure to warn claims should Plaintiffs raise these issues at trial.  AstraZeneca cites as specific examples evidence

---

[5]AZ also contends that Plaintiffs' challenges are barred as a matter of law by the doctrine of implied preemption, an issue which the Court may reach at a later date, but is not to be decided in this Motion.

it will present at trial in its defense: positions espoused by Plaintiffs' experts would contradict or subvert the FDA's regulatory scheme and its regulatory determinations with respect to Seroquel; and the FDA's regulatory determinations with respect to Seroquel reflect the agency's careful balancing of competing objectives and considerations embodied in Seroquel's FDA-approved labeling, and the FDA's careful balancing of competing considerations would be undermined by the labeling changes suggested by Plaintiffs' experts. Again, as on several of the other matters raised by Plaintiffs, this is a decision best left to the discretion of the trial judge to decide after hearing the evidence and testimony presented at trial.

*T. Product labeling and other evidence of drugs other than Seroquel taken by Plaintiffs.*

Plaintiffs seek to categorically exclude evidence and any reference to the warning labels accompanying other prescription drugs Plaintiffs took. AstraZeneca questioned Plaintiffs during depositions at length regarding the other prescriptions drugs that Plaintiffs had taken over the years, which were prescribed or provided to Plaintiffs by their physicians. Plaintiffs contend that Plaintiffs' personal knowledge and understanding, if any, of risks associated with other drugs and other warnings – which Plaintiffs argue are addressed to physicians – is irrelevant given the learned intermediary doctrine under Florida law. They also argue that the "microscopic" probative value of such evidence is outweighed is "vastly" outweighed by the potential for undue prejudice, confusion as to the standard of care and Plaintiffs' role therewith, and misleading the jury. They argue such evidence is highly prejudicial, confusing and misleading, would require Plaintiffs to present evidence on the collateral issue of the ameliorative measures Plaintiffs' medical providers have taken to address the issues raised by such warnings, and other factors by the prescriber with respect to the other drug.[6]

---

[6] Plaintiffs also argue this is a *Daubert* issue, which is inappropriate to decide on a motion *in limine*.

AstraZeneca opposes the motion as vague and overbroad, and argue that exclusion of *all* evidence of other drugs taken by Plaintiffs is inappropriate where other treatments would be relevant to causation, the seriousness of Plaintiffs' illness, and other risk factors. AstraZeneca also argues that the labeling for other drugs that Plaintiffs took is relevant as to the potential side effects the other drugs caused and to the risk/benefit analysis Plaintiffs' prescribers undertook when making treating decisions. AstraZeneca contends the prescribers' risk/benefit analysis is central to Plaintiffs' failure to warn and design defect claims, *i.e.*, that the prescribers would not have prescribed Seroquel had the risks alleged by Plaintiffs been more fully disclosed. The Court agrees that evidence of warnings and side effects from other drugs taken by Plaintiffs is a factor in their prescibers' treatment calculations and AstraZeneca should not be categorically excluded from presenting such evidence. Having said that, the decision is best left to the trial judge to decide, based on the testimony of prescribers presented at trial.

**DONE** and **ORDERED** in Orlando, Florida on February 4, 2009.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record