# EXHIBIT A

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| IN RE: SEROQUEL PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO: 6:06-MDL-1769-ACC-DAB |

STATE OF TEXAS § § §
COUNTY OF HARRIS

### AFFIDAVIT OF K. CAMP BAILEY

Before me, the undersigned notary, on this day personally appeared K. CAMP BAILEY, the "Affiant," a person whose identity is known to me. After I administered an oath to Affiant, Affiant testified:

1. "My name is Camp Bailey. I am competent to make this affidavit. The facts stated in this affidavit are within my personal knowledge and are true and correct.

2. I am a partner in the law firm of Bailey Perrin Bailey in Houston, Texas. Bailey Perrin Bailey represents the five remaining Plaintiffs in Trial Group One with cases currently pending before this Court: *Burns v. AstraZeneca Pharm. LP, et al.* (No. 6:07-cv-10291); *Curley v. AstraZeneca Pharm. LP, et al.* (No. 6:07-cv-15701); *Unger v. AstraZeneca Pharm. LP, et al.* (No. 6:07-cv-15812); *McAlexander v. AstraZeneca Pharm. LP, et al.* (No. 6:07-cv-10360); and *Whittington v. AstraZeneca Pharm. LP, et al.* (No. 6:07-cv-10475) (collectively, 'Plaintiffs'). My law firm is co-lead counsel for those and other cases in the *In re Seroquel Products Liability Litigation* MDL.

3. On January 11, 2008, the Court entered Case Management Order No. 5, establishing a bellwether trial program consisting of Florida-resident Plaintiffs' cases. (Doc. 792.) The Court approved 12 cases for inclusion in Trial Group One on July 14, 2008. (Doc. 1044.) General causation, specific causation, and/or damages experts for all 12 cases were diligently researched, interviewed, and identified, and Plaintiffs designated their expert witnesses and served expert reports by early September 2008. (Doc. 1059.) Plaintiffs' designated experts then had between September 15, 2008 and October 3, 2008 to sit for their depositions, several of which extended multiple days. (*Id.*) Plaintiffs responded to Defendants' summary judgment and *Daubert* motions on November 24, 2008. (*Id.; see, e.g.,* Doc. 1158.) On January 6, 2009, the Court ordered that Plaintiffs Guinn's and Haller's specific causation experts appear for a *Daubert* hearing commencing on January 14, 2009. (Doc. 1189.) On January 14, 2009, Brian Tulloch, M.D. appeared and testified as Plaintiff Haller's specific causation endocrinologist. On January 15, 2009, Israel Jack Abramson, M.D., Plaintiff Haller's case-specific psychiatrist, and Jennifer Marks, M.D., Plaintiff Guinn's case-specific endocrinologist, appeared and testified before the Court.

1

4.  Dr. Marks is also the designated case-specific endocrinologist for the *Burns* and *Curley* cases. Dr. Tulloch is also the designated case-specific endocrinologist for the *Unger*, *Whittington*, and *McAlexander* cases.

5.  I am familiar with the Court's Orders granting AstraZeneca's summary judgment motions on specific causation grounds in the *Guinn v. AstraZeneca Pharmaceuticals LP, et al.* (No. 6:07-cv-10291) (Doc. 47) and *Haller v. AstraZeneca Pharmaceuticals LP, et al.* (No. 6:07-cv-15733) (Doc. 50). The Court issued the Order in *Guinn* on January 30, 2009 and in *Haller* on February 6, 2009. The Orders are expressly limited to the facts of the *Guinn* and *Haller* cases and the application of Florida law thereto, and according to their terms were in no way intended to prevent a full and fair evaluation of the specific facts of each of the other cases involved in the litigation. (*Guinn* Doc. 47 at 15; *Haller* Doc. 50 at 67.)

6.  The particulars of the *Guinn* and *Haller* summary judgment Orders are described in Plaintiffs' Combined Supplemental Memorandum in Response to Defendants' *Daubert* and Summary Judgment Motions, and Plaintiffs' Incorporated Rule 56(f) Motion for Continuance (the 'Motion') at 2-5, to which this Affidavit is attached as Exhibit A. Put succinctly, the Court determined that whether the "but for" or "substantial factor" specific causation test applies to Guinn's and Haller's claims is, "at best, unsettled" under Florida law. (*Guinn* Doc. 47 at 11; *Haller* Doc. 50 at 65.) As a result of the Orders, it is unclear whether the Court will require Plaintiffs' experts to meet the 'but for' or 'substantial factor' tests, or both, to survive the pending or future *Daubert* and summary judgment motions. (Motion at 2-5.)

7.  Prior to the Court's issuance of the *Guinn* and *Haller* summary judgment Orders, Plaintiffs' counsel advised the Court on January 28, 2009 that based on the Orders, there may be additional summary judgment evidence as to specific causation with which Plaintiffs may seek to supplement the summary judgment record—e.g., through declaration of Plaintiffs' designated specific causation experts. (Tr. Hr'g, Jan. 28, 2009, at 29:7-12.) In response, the Court expressed its strong view that testimony by Plaintiffs' specific causation experts made after the experts' reports issued, depositions were taken, and summary judgment motions were filed, would be viewed with disfavor to the extent it constituted 'new' opinion evidence and would not be considered by the Court if deemed '[in]appropriate' under *Daubert*. (*Id.* at 29:13-30:3.) The Court instructed, 'That's not how *Daubert* is supposed to work.' (*Id.* at 29:19.) Ultimately, the Court admonished Plaintiffs' counsel to 'think before you file something.' (*Id.* at 30:8.)

8.  Plaintiffs vigorously contend that 'but for' causation is a wholly improper standard for concurring cause cases such as these, and that the overwhelming weight of Florida and other jurisprudence supports Plaintiffs' position. (Motion at 3-4.) In addition, Plaintiffs respectfully disagree with the Court regarding the aptness of particularized inquiries the Court made of plaintiffs' specific causation experts in *Guinn* and *Haller*, such as whether the expert must quantify the relative contributions of other risk factors versus Seroquel's contribution to Plaintiffs' injuries, (*Guinn* Doc. 47 at 13), whether other risk factors as to the cause of diabetes must be ruled out (*id.* at 14), whether the expert must determine if other risk factors of diabetes were the sole cause (*Haller* Doc. 50 at 53 n.263), whether the expert must identify an 'exact mechanism' by which the drug caused the Plaintiffs' diabetes (*id.* at 58), whether the expert must opine that Plaintiff never would have suffered the same injury absent his ingestion of the drug (*id.* at 60), whether a multi-factorial disease can ever be a provable, recoverable injury under this

2

interpretation of Florida law (*id.* at 59-60 & n.282), or whether any doctor (or expert) utilizing the same general process used by medical professionals to reach opinions as to diagnosis, prognosis, and course of treatment (i.e., differential diagnosis) can ever be used to determine the cause of diabetes in any individual (*id.* at 45 n.252).

9. Although Plaintiffs diligently used the discovery process, through timely identifying their experts, allowing for review of the tens of thousands of pages of medical records, clinical studies, peer-reviewed articles, and other relevant documents, and generating expert reports—all in a greatly compressed period of approximately 39 business days—and subsequently and timely offering the experts for deposition, Plaintiffs did not reasonably anticipate the Court's recent interpretation of Florida specific causation law, given the multi-factorial nature of diabetes and Florida law on concurrent causation, nor did Plaintiffs know that the Court would deem Florida law on the issue to be, 'at best, unsettled.' Further, as noted, the Court admonished Plaintiffs' counsel not to attempt to modify with 'new' opinion testimony Plaintiffs' specific causation experts' opinions that were already of record. (*See* ¶ 7, *supra*.) Plaintiffs are left without a choice but to seek leave of the Court to conduct additional expert witness discovery in light of the Court's Orders.

10. In order to fairly incorporate the Court's interpretation of Florida specific causation law as announced in the Court's first two dispositive opinions in this litigation, without prejudicing the Plaintiffs and summarily dispensing with nearly a year of trial preparation in 5 cases, Plaintiffs request time to designate 1-2 additional case-specific expert witnesses per case in Trial Group One, and to complete attendant discovery. Plaintiffs contend that the bulk of that discovery may be completed within approximately 60 days, and that the next trial may be fully prepared in approximately 90 days. Plaintiffs request that the Court enter the following schedule for completing additional specific-causation discovery:

| | |
|---|---|
| Trial Group One Plaintiffs designate 1-2 additional case-specific expert witnesses per case and provide reports | March 9, 2009 |
| Defendants' depositions of Plaintiffs' newly designated case-specific experts completed | March 30, 2009 |
| Defendants' combined case-specific *Daubert* and summary judgment motion on newly designated case-specific experts (one motion) | April 6, 2009 |

3

| | |
|---|---|
| Plaintiffs' combined case-specific *Daubert* and summary judgment response on newly designated case-specific experts (one response) | April 13, 2009 |
| *Daubert* hearings | Week of April 20, 2009 |
| Trial setting in Plaintiffs' next Florida trial selection | May 18, 2009 |

11. For good cause shown, Plaintiffs seek this relief from the Court not for delay only, but so that justice may be done. Plaintiffs cannot obtain the identified information from any other source. No trial date has been scheduled for the cases remaining in Trial Group One."

FURTHER AFFIANT SAYETH NOT.

_____
K. Camp Bailey

SWORN TO and SUBSCRIBED before me by K. CAMP BAILEY on February 13, 2009.

_____
Notary Public in and for the State of Texas

CINDY C HARRISON
NOTARY PUBLIC
State of Texas
Comm. Exp. 01-26-2010

4