1

```
 1                    UNITED STATES DISTRICT COURT
                        MIDDLE DISTRICT OF FLORIDA
 2                          ORLANDO DIVISION

 3                     Docket No.6:06-MD-1769

 4     . . . . . . . . . . . . . . . . .
       IN RE:                          :
 5                                      :
       THE SEROQUEL PRODUCTS           :
 6     LIABILITY LITIGATION            :      Orlando, Florida
                                        :      February 18, 2009
 7     . . . . . . . . . . . . . . . .:      9:00 a.m.

 8
            TRANSCRIPT OF ORAL ARGUMENT SUMMARY JUDGMENT MOTION
 9            BEFORE THE HONORABLE ANNE C. CONWAY
                 CHIEF UNITED STATES DISTRICT JUDGE
10

11     APPEARANCES:

12     For the Plaintiffs:          Camp Bailey

13                                  Rob Cowan

14     For the Defendant

15     AstraZeneca:                 David Venderbush

16                                  Chris Coutroulis

17                                  Steven Weisburd

18                                  Robert Ciotti

19

20

21     Court Reporter:  Sandra K. Tremel

22                          (407)245-3110

23

24     Proceedings recorded by mechanical stenography, transcript

25     produced by computer-aided transcription
```

```
 1                    P R O C E E D I N G S

 2              THE COURT:  Good morning.

 3          Could we have appearances, please?

 4              MR. COWAN:  Robert Cowan for the plaintiffs,

 5   Your Honor.

 6              MR. CAMP BAILEY:  Camp Bailey on behalf of the

 7   plaintiffs.

 8              MR. COUTROULIS:  Chris Coutroulis on behalf of

 9   the defendants.

10              MR. WEISBURD:  Steven Weisburd on behalf of

11   defendants, Your Honor.

12              MR. VENDERBUSH:  David Venderbush for

13   defendants.

14              MR. CIOTTI:  Robert Ciotti for defendants.

15              THE COURT:  All right.  I take it from the

16   response that the plaintiffs filed that you have no new

17   evidence presently.  Is that correct?

18              MR. COWAN:  That's correct, Your Honor.  We're

19   not supplementing the summary judgment record at this

20   time.

21              THE COURT:  All right.  And the motions in the

22   group 2 cases are due on Monday.  Right?

23              MR. COUTROULIS:  Your Honor, when we were before

24   the Court last time, we had asked that that date be

25   adjourned and Your Honor had indicated that that was
```

1    satisfactory.  So I don't believe we have a due date for

2    the group 2 cases at this time.

3              THE COURT:  All right.  Do you intend to appeal

4    the orders in *Guinn* and *Haller*?

5              MR. COWAN:  We are strongly considering an

6    appeal of the *Guinn* case.  We are debating as to whether

7    or not to pursue the *Haller* case.

8              THE COURT:  All right.  Well, what I intend to

9    do then is to -- if you appeal, then I'll stay the Florida

10   cases.  If you don't appeal, we're just going to keep

11   going forward.

12             MR. COWAN:  I understand, Your Honor.

13             THE COURT:  All right.  And I have briefing

14   schedules on the non-Florida cases.  I'm going to go ahead

15   on all the motions that are pending that are not related

16   just specifically to the Florida cases.

17        Sorry, this is allergy season.  You look like you're

18   having trouble hearing me.

19        But -- so we'll go forward with the other motions

20   that are pending and then we'll look at the -- one other

21   thought that I had when you're going to brief the

22   non-Florida cases is that we should get all of the experts

23   and AstraZeneca's -- your witnesses of AstraZeneca all

24   ready to be used at a trial, which means we'll go ahead

25   and take their testimony and I'll rule on the objections

1  and you'll have your videotape all ready to go.  And the

2  same would be true of any of the causation experts that

3  the plaintiffs are going to use.

4      All right.  So just keep that in mind when you brief

5  what we're going to do for the non-Florida cases.  All

6  right?

7      Is there anything else you'd like to take up at this

8  time?  I know Judge Baker has got a hearing next week, I

9  believe.

10     There are some -- one question I had, and not to take

11 away from anything Judge Baker is going to do, but the

12 supplemental memorandum that AstraZeneca filed was under

13 seal.  I don't really think that it needs to be under

14 seal.  Is there any objection from the plaintiffs?  It's

15 all -- it's not AstraZeneca information.  It's plaintiff's

16 information.  But I think it needs to be in the public

17 record.  There's nothing in there that wouldn't be in the

18 orders.

19          MR. CAMP BAILEY:  I wonder, is that in regard to

20 the hearing next week?  Or is that in regard to --

21          THE COURT:  No.  AstraZeneca filed their

22 supplemental memorandum that was to be filed for this

23 hearing today, under seal.  I don't think it should be

24 under seal.

25          MR. COUTROULIS:  And I can say for the record,

1   Your Honor, the only reason that memorandum, which was

2   filed this past Friday, I believe, was filed under seal,

3   is because it discusses the specific medical information

4   relating to these five other plaintiffs.  That's the

5   reason we filed it under seal.

6        THE COURT:  I don't have any objection to the

7   actual medical records being under seal, but I don't

8   think -- I didn't file my orders under seal and I don't

9   think there's -- and you didn't file your motion to

10   continue under seal, so I'm going to order that it be

11   filed in the public record.  And as to all the other

12   issues, I'll let Judge Baker handle those.

13        MR. COWAN:  I understand, Your Honor.

14        THE COURT:  Is there anything else?

15        MR. COUTROULIS:  Can we just confer for one

16   second?

17        THE COURT:  Yes.

18        MR. COWAN:  Your Honor, Robert Cowan for

19   plaintiffs.

20     It was our understanding that, and we had discussions

21   with defense counsel, that we would present a very short

22   argument this morning on the remaining five trial group 1

23   cases collectively.

24     I will say that the argument from plaintiffs'

25   perspective focuses largely on the standard, and I would,

1  lack of a better word, characterize the uncertainty of the

2  standard as set in -- or as set forth in the *Guinn* and

3  *Haller* cases.  That's primarily what we were intending to

4  discuss with Your Honor in our argument was the

5  application of one standard versus the other.

6      I understand Your Honor has heard that argument or

7  similar argument already, and also we've indicated our

8  intention to appeal to the Eleventh Circuit, at least that

9  we're strongly considering it in the *Guinn* case.

10     But I wanted to apprize Your Honor of our intention

11 in that regard, at least up to this point, to make an

12 argument this morning.

13          THE COURT:  All right.  Well, if you have

14 something new, I'll hear it.  If you're just going to

15 rehash -- I thought very long and hard about that order,

16 and you didn't file any supplement that would make me

17 reconsider my rulings.  So if you've got something new,

18 I'll be glad to hear it, but I don't see any point in

19 wasting our time.

20          MR. CAMP BAILEY:  Well, and I think on the *Guinn*

21 case, when you asked us if we plan on appeal, I think our

22 deadline to file a motion for reconsideration has not

23 passed.  And we were contemplating whether to file a

24 motion for reconsideration with you pointing out some

25 specific things in the *Guinn* and *Haller* opinion that we're

1   still grappling with, trying to reconcile how we would go

2   about meeting the standard in those opinions, and thought

3   that when we were arguing these five cases today, we could

4   make sort of a quasi motion for reconsideration on --

5             THE COURT:  Well, I'd rather --

6             MR. CAMP BAILEY:  -- still the uncertainty we

7   still have on trying to meet the burden here.

8             THE COURT:  I'd rather hear it on your motion

9   for reconsideration, if you're going to file one.

10            MR. CAMP BAILEY:  Prior to just going straight

11  to an appeal, that's what we had been talking about.

12            THE COURT:  All right.  Well, I think your time

13  is running out.

14            MR. CAMP BAILEY:  I think it's tomorrow.

15            THE COURT:  Okay.  I was thinking it was today

16  but --

17            MR. COWAN:  I believe because of the national

18  holiday, we have an extra day.

19            THE COURT:  Right.

20            MR. WEISBURD:  Your Honor, Steven Weisburd.

21  Just a brief response.

22       What I understand from counsel is that they'd like to

23  argue the Florida causation standard with respect to the

24  but-for test and the substantial factor test as they set

25  out in their briefs, which as Your Honor recognized in

1   both the *Haller* and the *Guinn* opinions, was really

2   immaterial to the *Daubert* analysis that the Court

3   undertook, and in fact explicitly concluded that under

4   either standard the testimony of those three specific

5   causation witnesses, which are three of the five witnesses

6   that we would be talking about in the remaining five

7   cases, is inadmissible under *Daubert* regardless of that

8   standard.

9        So if that's the extent of the discussion, then I

10  think the briefing accurately and adequately covers the

11  issue and it's still immaterial to the summary judgment

12  motions on specific causation that are before the Court

13  right now in five remaining group 1 cases.

14            MR. COUTROULIS:  And, Your Honor, if I may, the

15  only thing I would add is they went into their views on

16  the standard in their filing this past Friday.  We did, as

17  well, on Friday and again in our submission on Monday.  I

18  believe all that's before the Court.

19            THE COURT:  All right.

20            MR. COWAN:  The only other thing I'll add, Your

21  Honor, is I can very briefly run through some of the

22  questions that the *Guinn* and *Haller* opinions raise for us

23  and -- but, you know, if Your Honor prefers to --

24            THE COURT:  That's fine.  Go ahead.

25            MR. COWAN:  And it's -- please understand my

9

1    intent here is not to say that we don't think the Court

2    worked very hard on either of those opinions, because we

3    think they do, and we also understand the Court's

4    uncertainty as the applicable standard, but because that

5    we so strongly advocate the substantial factor standard in

6    a concurring cause case such as this, and they're so

7    adamant that we have to also meet -- at least also meet

8    but-for standard, our concern really lies in how we

9    prepare the cases going forward.

10        Obviously, you know, without conceding anything, the

11   writing may be on the wall for, you know, the cases that

12   are currently teed up, but going forward in future trial

13   groups in Florida, and perhaps that's Your Honor's

14   intention of staying the Florida cases until the Eleventh

15   Circuit has an opportunity to rule, we're left with the

16   assumption that we would have to meet both the but-for and

17   substantial factor tests, although we think we have

18   substantial reason why we're not able to make -- to meet

19   both of those tests in the typical case.

20              THE COURT:  All right.  Whatever you want to

21   say, I'm listening.

22              MR. COWAN:  Essentially, Your Honor, when we

23   received the opinions in the *Guinn* and *Haller* cases, our

24   concerns centered on obviously, one, that the plaintiffs

25   had apparently misjudged what the applicable standard

1   might be that the Court would deem applying to these

2   cases, and that is the but-for standard, even though the

3   Court also deemed the law unsettled.

4        And we're also concerned even under the substantial

5   factor test by some additional inquiries, even though the

6   Court acknowledged that the substantial factor test, at

7   least the way we read the opinions, that the substantial

8   factor test may be the test that applies to a case like

9   this, we were concerned about additional inquiries that

10  the defendants initially made of Dr. Marks and

11  Dr. Tulloch, but then the Court kind of highlighted those

12  in the shortcomings that the Court found in their --

13  Dr. Marks' and Dr. Tulloch's testimony.

14       And please understand, we acknowledge many of the

15  problems that were evident in Dr. Marks' and Dr. Tulloch's

16  testimony, although we may not see eye to eye precisely,

17  certainly with defendants, on what the standard is, and

18  there may be, as we believe, a reason why their

19  methodology might have been questioned based on improper

20  inquiries made of them under an improper test.

21       And the types of inquiries I'm talking about are

22  things like quantifying the relative contributions of

23  other risk factors and not ruling out the other risk

24  factors, as those were a couple of things that jumped out

25  at us on the *Guinn* opinion.

1        And then in the *Haller* opinion, not being able to

2    determine whether other risk factors may have been the

3    sole cause, which is really a mirror image of ruling out,

4    not identifying an exact mechanism by which the drug

5    caused diabetes, and not opining that plaintiff never

6    would have contracted diabetes despite his -- or absent

7    his ingestion of Seroquel.

8        And I can run through a 20-minute argument on why

9    those separate inquiries, beyond the substantial factor

10   test, may be impossible to meet.  And I think I understand

11   part of the Court's dilemma on it from the inquiries and

12   other comments the Court made in the opinions, but those

13   are some of the areas that we've -- we're struggling with

14   in terms of going forward.

15       And as I said, if it's the Court's desire to stay the

16   Florida cases while the *Guinn* and/or *Haller* appeals are

17   pending, then maybe that's the best course of action for

18   getting an answer on what the precise inquiry is for the

19   future cases.

20            THE COURT:  Well, the *Guinn* case was selected by

21   you, right?

22            MR. COWAN:  That was our case.

23            THE COURT:  As to be one of your better cases.

24   It may be one of your better cases on appeal.

25            MR. COWAN:  Understood, Your Honor.  We

1   certainly hope so.

2       So that's my brief rendition of just some of the

3   issues that we're grappling with going forward.

4               THE COURT:  Okay.

5               MR. WEISBURD:  Brief response, Your Honor?

6               THE COURT:  Yes.

7               MR. WEISBURD:  Thank you.  Steven Weisburd.

8       As I commented earlier, the issue that is the core

9   analysis of the Court's *Guinn* and *Haller* opinions does not

10  involve whether the but-for or substantial factor test

11  applies.  The Court explicitly was not premising the

12  analysis on which of those standards apply.

13      The Court's analysis correctly was *Daubert* and was

14  driven by *Daubert*, and the Supreme Court's mandate that

15  scientifically unreliable testimony is inadmissible in a

16  federal court regardless of what the underlying state

17  causation standard is.  I think both opinions make that

18  explicit.

19      Counsel is talking about grappling with some problems

20  about the Florida standard with respect to quantifying

21  relative contributions and not ruling out or eliminating

22  other causes.  Our arguments on those points were not

23  Florida law arguments, although I'll explain in a second

24  why interestingly Florida law is consistent with the

25  *Daubert* law that was the core of our arguments.

1       The principal of quantification of relative

2   contributors comes from the Eleventh Circuit's *Daubert*

3   position as we argued last time we were here in *McDowell*

4   *v. Brown*, and we briefed it and we argued it.  And that's

5   *Daubert* law, not the Florida standard.

6       The issue of ruling out or eliminating other causes

7   as the sole cause comes straight from the *McClain* case out

8   of the Eleventh Circuit under *Daubert* law.  Again, *Daubert*

9   analysis is threshold analysis that must be survived

10  before you analyze whether the testimony meets an

11  underlying state substantive causation standard.  And the

12  Court's opinions made that clear.

13      So the confusion about the Florida standard that

14  counsel is talking about is kind of mixing apples and

15  oranges with respect to the *Daubert* standard of

16  admissibility of expert testimony as a threshold matter.

17      And then the next question that the Court didn't have

18  to resolve and didn't resolve in its *Haller* and *Guinn*

19  opinions with respect to whether the but-for test or the

20  substantial factor test applied in these concurring cause

21  cases, counsel's right that AstraZeneca has briefed and

22  argued that both tests properly apply under Florida law.

23  But that is not the material issue in these five cases or

24  in the *Guinn* and the *Haller* case leading to the Court's

25  summary judgment rulings.

1        I wanted to get to Florida law, though, because in

2   the *Reynard* case in Judge Nimmons' decision, as we talked

3   about, Judge Nimmons granted summary judgment because the

4   failure to quantify led to the conclusion that as a matter

5   of Florida law, the testimony was too speculative in that

6   acceleration and aggravation case.  That's the cell phone

7   and the brain cancer case.  And we made that argument as

8   well, but we made that in addition to and after making the

9   threshold *Daubert* arguments.

10       So interestingly, even again before you get to

11  whether the but-for test or substantial factor test

12  applies in these concurring cause cases, the plaintiffs

13  first have to get past the *Daubert* hurdle, which they

14  haven't done.  And then second, they also have kind of a

15  screening device under Florida law that says speculative

16  causation testimony is inadmissible, is unsufficient, it

17  can't raise a triable issue of material fact.

18       So when the Court concluded properly that Dr. Marks'

19  testimony and Dr. Tulloch's testimony and Dr. Abrams'

20  testimony failed to satisfy *Daubert*, but also failed to

21  satisfy that threshold screening device of Florida law

22  that says no speculative testimony can come in and raise a

23  triable issue of fact under Florida law as well.

24       So in that respect, there are fundamental problems

25  that plaintiffs have to grapple with in these cases.

 1   They're *Daubert* problems in the first instance.  Then they

 2   are Florida law's prohibition on speculative causation

 3   testimony in the next instance.  And that's before you

 4   even get to the question of whether the but-for test and

 5   the substantial factor test apply as in the *Gooding* case

 6   or in the *Reeves* case that we cited in Florida, or whether

 7   just the substantial factor test should apply.

 8        And that one comment on the substantial factor test,

 9   teeing it up and linking it up to the scientific evidence

10   that's before the Court in these five cases on the closed

11   record, same as in *Guinn* and *Haller*, is that what

12   plaintiffs' counsel do in their brief is try to invoke the

13   limited substantial factor exception to the general

14   but-for rule that the *Stahl* Court, the Court of Appeal in

15   *Stahl* talked about.  And if you look at their supplemental

16   brief, many of the cases that they cite are riffing off of

17   the exact same language that circumscribes the limited

18   *Stahl* exception, substantial factor exception to the

19   but-for rule.

20        And the premise of that exception is that the

21   defendant's cause and the other concurring cause alone

22   could have caused the ultimate injury identically.  It

23   just so happened they happened at the same time, like the

24   famous hornbook examples of the two fires converging at

25   the same time from two independent sources that burn down

1   a building.  Well, either fire alone would have burned

2   down the building.  So application in that narrow context

3   of the but-for test is set to fail.  And that's when the

4   substantial factor test alone applies in a concurring

5   cause case because generally, as we argue, you apply both

6   the but-for test and the substantial factor test in a

7   concurring cause case.

8        And as the *Terwilliger* case that we cited out of

9   Florida held, it's reversible error not to give both in

10   the ordinary concurring cause case under Florida law.

11       Another hornbook example of the *Stahl* exception where

12   each of the concurring causes alone could have produced

13   the ultimate result is when somebody stabs a person at the

14   same time somebody hits the same person in the head with a

15   rock and breaks their skull.  Either of those violent acts

16   would have killed the person and produced the same result.

17   They happened at the same time.  They're concurring causes

18   in producing the death, but either one alone could have

19   killed the person.

20       If you apply the but-for test in that narrow, narrow

21   context, well, then either assailant would get off.  They

22   wouldn't be held liable and accountable because had the

23   rock not bashed the guy's skull, he still would have died

24   from the stab at the same time.  That's the *Stahl* limited

25   exception, the limited substantial factor exception.  And

1    we discussed this at length in our briefing.

2         And the plaintiffs' counsel are trying to make a

3    confusion out of this.  And now I want to tie it up to the

4    scientific evidence in this case.

5         Both the *Guinn* opinion by the Court and the *Haller*

6    opinion by the Court correctly quoted Dr. Tulloch and

7    Dr. Marks' testimony that they couldn't testify to any

8    reasonable degree of medical probability or certainty

9    about any direct effect by which Seroquel could cause

10   diabetes in a person, no direct effect on the pancreas, no

11   other direct effect.

12        Well, to invoke the limited *Stahl* exception, they

13   would have to demonstrate that, with competent admissible

14   scientific evidence that survives *Daubert*, that Seroquel

15   alone could somehow cause diabetes if the person didn't

16   have any of these other risk factors like their long-term

17   obesity that alone is the overwhelming cause of diabetes

18   and the multiple other risk factors that the Court talked

19   about in its opinions.

20        So basically the scientific evidence and the state of

21   the record is such that this limited *Stahl* exception that

22   they're trying to invoke could not possibly apply in these

23   Seroquel concurring cause cases.

24        Instead, as in *Gooding*, a concurring cause case,

25   *Reeves*, a concurring cause case, *Terwilliger*, a concurring

1    cause case, and the other cases cited in our briefing,

2    both the but-for test and the substantial factor test

3    apply in these cases, as we explained, but it all doesn't

4    matter for purposes of *Daubert* analysis, which is the

5    dispositive point underlying the Court's opinions in *Guinn*

6    and *Haller*, and it should be in the Court's opinions in

7    the remaining five cases which are fully briefed.

8         Thank you, Your Honor.

9              THE COURT:  All right.  Response?

10             MR. COWAN:  Very brief.

11        I feel us digressing into our argument that I told

12   you we wouldn't make, but I'll be very brief.

13        The plaintiffs' main point is that we believe that

14   the *Daubert* and summary judgment issues are inextricably

15   intertwined and that when you have a situation where the

16   inquiries that I mentioned are made, for example, of

17   Dr. Marks and Tulloch, yet they're improper or indicative

18   of the wrong test to be applied, then it also creates an

19   appearance of an unreliable methodology under *Daubert* if

20   the experts are unable to satisfactorily respond to those

21   inquiries.

22        For example, Dr. Marks' unwillingness to testify that

23   Seroquel was the sole cause of plaintiff's diabetes ruling

24   out all other causes does not establish that her

25   methodology of examining the patient's records or

1  concerning the family history or the other risk factors in

2  the actual general causation proof that applied was

3  unsound.

4       As the United States Supreme Court in *General*

5  *Electric vs. Joyner* said, trained experts commonly

6  extrapolate from existing data.

7       And with respect to the jury instruction, I'll simply

8  say that that seems to be consistently defendant's

9  fallback argument, is that, "Well, you have to give both

10  instructions."  And as the defense counsel well knows, we

11  haven't disagreed with that.  Under Florida law, it's our

12  position, too, that both but-for and the substantial

13  factor instruction have to be given.

14       However, they make a leap from that to say that just

15  because those both have to be given, that somehow that

16  we're able to instruct the jury on how those are to be

17  applied, and that's left for the jury to decide, you know,

18  whether a but-for standard or, if they find concurring

19  causes, a substantial factor test is going to be applied.

20            THE COURT:  Well, you have to have evidence to

21  support both of those factors before a jury could make

22  that decision.

23            MR. COWAN:  I understand, Your Honor.

24       I'll simply say that, you know, it is our position

25  that the summary judgment and the failings that the Court

1   determined with respect to methodology are, as I said,

2   intertwined, and that is something that obviously we will

3   deal with in our motion for reconsideration and/or appeal.

4   And I'll just leave it at that for today.

5           THE COURT:  All right.  So just so that I'm

6   clear, you would prefer that I not rule on the other five

7   until you decide what to do about the *Guinn* and *Haller*

8   cases as far as reconsideration or appeal?

9           MR. COWAN:  Yes, Your Honor.

10          THE COURT:  All right.  Just so it's clear, if

11  there is not an appeal, and obviously you don't have to

12  file an appeal until any motion for reconsideration is

13  decided, but if there is not an appeal, I will go forward

14  on the other motions.

15          MR. COWAN:  We understand, Your Honor.

16          THE COURT:  All right.

17          MR. COUTROULIS:  Your Honor, is it the Court's

18  intention, if there is an appeal in either one of those

19  two cases, to hold in abeyance the summary judgment

20  motions on the other five?

21          THE COURT:  Yes.

22          MR. COUTROULIS:  We would submit, Your Honor,

23  that given the problems that the Court noted in the two

24  cases, which go well beyond the Florida standard and go

25  right to *Daubert* and the other requirements that the Court

1    discusses extensively, and given the fact that the records

2    in these other five cases suffer from precisely the same

3    problems, that those cases could be disposed of.

4           I certainly understand the Court's indication that it

5    may want to wait for the Eleventh Circuit, that could take

6    some time, and we just don't see how at least in these

7    five other cases --

8           THE COURT:  Well, there really isn't any

9    difference between administratively closing the files and

10   granting a summary judgment because it's going to be the

11   same effect depending on what the Eleventh Circuit does,

12   and it's just a little less work for them.

13          The case -- as far as I'm concerned, the cases are

14   concluded.  They will not be permitted to do any more

15   discovery or submit any more expert reports.  But -- so I

16   don't -- the only difference is the Eleventh Circuit only

17   has one or two cases to look at rather than seven.  And

18   since they're individual cases, they could end up with

19   individual panels which would be good or bad, but I just

20   wanted to make sure that there wasn't some other case you

21   would rather have going up than *Guinn* or *Haller*.

22          MR. COUTROULIS:  Understood, Your Honor.

23          And the only other thing I would say is with respect

24   to this Florida standard on causation, as I indicated

25   before, we did address it again in our Friday submission

1    in the last six pages --

2              THE COURT:  I did read your Friday submission.

3              MR. COUTROULIS:  -- and again Monday.

4         And we believe that analysis is correct, that they

5    have consistently confused what it means to be a but-for

6    cause.  They quote *Stahl* completely out of context leaving

7    out some critical language.

8         Our position remains that in a global concurrent

9    cause case when you give instructions 5.1A and 5.1B, it

10   means that the jury has to find both that it was a

11   substantial factor and that but for that factor, the

12   injury would not have occurred, not that it has to be the

13   sole factor, but if you dropped it out of the equation,

14   you wouldn't get the same result.

15             THE COURT:  Well, Mr. Coutroulis, you can raise

16   it again if they file a motion for reconsideration, or

17   certainly you can put it in your brief to the Eleventh

18   Circuit.

19        One other point is I'm going to set Dr. Arnett for a

20   *Daubert* hearing.  I'll probably set it for April 7 since

21   you're already going to be here.  So that will probably

22   moot out your motion for a deposition.

23             MR. WEISBURD:  Your Honor, if I may respond

24   briefly.

25        I don't believe it would moot out the request for the

 1   deposition, in fact.  And I would ask Your Honor to

 2   consider the motion for the deposition, in fact, to

 3   prepare for the *Daubert* hearing especially.  It could be

 4   focused on her new change of opinions.  I mean, she has

 5   switched and been a moving target with respect to her

 6   opinions, as our motion suggests.  And with all due

 7   respect, I would request that we be permitted a brief

 8   amount of time to depose her prior to the *Daubert* hearing.

 9           MR. COWAN:  Your Honor, if I may briefly

10   respond.

11       I mean, as defense counsel argued the last time we

12   were here, the litigation itself is a bit of a moving

13   target.  I mean, there is new evidence coming out from the

14   FDA virtually every other week regarding the causation of

15   this drug affecting diabetes in patients.

16       And so it's unsurprising that any of our experts

17   have, you know, adapted their opinions based on evidence

18   that's discovered in the course of the last round of

19   *Daubert* hearings.  I believe it was the day the Lancett

20   article came out that we cited in the hearing, so I mean

21   it's --

22           THE COURT:  I think if I remember correctly,

23   Dr. Arnett's changed opinions were filed in November.  And

24   has she filed a new declaration that addresses the

25   information that's come out since then?

```
 1            MR. COWAN:  No, Your Honor, not that I'm aware

 2   of.

 3            THE COURT:  Well, if she does have any opinions

 4   that relate to anything outside of the declarations you

 5   filed in November, then I'll permit a deposition.

 6   Otherwise, you can deal with it as you did at the other

 7   Daubert hearings.

 8            MR. COUTROULIS:  The main thing I would ask the

 9   Court to consider, Your Honor, is when -- before the

10   Daubert hearing that took place in early December, right

11   on the eve of that hearing, very shortly before it, we got

12   new declarations from Dr. Marks and Dr. Tulloch, and that

13   included, I think, an Arnett declaration.  Those witnesses

14   were coming to testify.  We had very limited time.  So we

15   dealt with that --

16            THE COURT:  All right.  Well, in the notice of

17   hearing, I'll require any amended declarations to be filed

18   30 days before the hearing which would be essentially

19   March 7th.  So, all right?

20            (Proceedings concluded at 10:30 a.m.)

21                  C E R T I F I C A T E

22            I certify that the foregoing is a correct

23   transcript from the record of proceedings in the

24   above-entitled matter.

25   s\Sandra K. Tremel  February 20, 2009
```