## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

IN RE:  Seroquel Products Liability Litigation

MDL DOCKET NO. 1769

This Document Relates To All Cases

_____

## ASTRAZENECA'S OPPOSITION TO BLOOMBERG L.P.'S REQUEST FOR ACCESS TO CERTAIN JUDICIAL RECORDS AND MEMORANDUM OF LAW

Defendants AstraZeneca LP and AstraZeneca Pharmaceuticals LP ("AstraZeneca")

hereby file this memorandum in opposition to non-party Bloomberg L.P.'s ("Bloomberg")

motion seeking access to certain judicial records ("Bloomberg Mot.") (Doc. No. 1284).[1]

## I.      INTRODUCTION

Under clear Eleventh Circuit law, this Court must balance the parties' interest in

confidentiality and the public's interest in disclosure when deciding whether to unseal documents

designated as confidential by the parties.  *Chicago Tribune Co. v. Bridgestone/Firestone*, 263

F.3d 1304, 1310-11 (11th Cir. 2001).  Bloomberg has not shown that the Eleventh Circuit's

balancing test justifies its sweeping request for public disclosure of every document filed under

seal in this litigation.  Bloomberg asserts an overbroad and vague interest in full access to all

records in this proceeding to "ensure the integrity of this Court's process," Bloomberg Mot. at 3,

while barely acknowledging AstraZeneca's countervailing interest in protecting its competitively

sensitive and confidential information.  Bloomberg asserts a sweeping "public health" interest

favoring disclosure, while refusing to acknowledge the public health interest in *preventing*

_____

[1] On February 13, 2009, Bloomberg moved to intervene to seek access to the confidential material attached to the briefing filed by the parties in the Florida "Group One" cases.  On February 19, Magistrate Judge Baker granted in part the motion to intervene, permitting Bloomberg to be heard at the February 26, 2009 hearing (Doc. No. 1297).  AstraZeneca submits this brief in opposition to Bloomberg's request for access to particular confidential documents.

premature disclosure of confidential, ongoing FDA deliberations to avoid incomplete and potentially misleading information from reaching the public.

AstraZeneca recognizes that the de-designation of confidentiality for large portions of documents filed under seal by the parties is appropriate at this time. Indeed, AstraZeneca has been trying to work with plaintiffs for months to identify those documents previously designated as "confidential" that now can and should be de-designated. AstraZeneca has been diligently evaluating and continues to evaluate the confidential materials submitted in connection with the Florida "Group One" briefing, and has also unilaterally decided to no longer assert confidentiality for a large portion of these materials. Indeed, in view of this Court's recent order that AstraZeneca's supplemental brief in support of summary judgment must be filed openly in the public record rather than under seal, AstraZeneca has likewise determined that, at this stage, it will now similarly permit many of the confidential documents and exhibits legitimately in the record on the recent motions to be filed publicly. AstraZeneca has decided to de-designate 82 of the 147 documents previously designated as confidential and attached as exhibits to the Group One briefing.

There are a few categories of documents, however, for which the balance still tips decidedly in favor of maintaining confidentiality *at this time*. These categories are:

(1)     ***2008 FDA submissions and correspondence that have not resulted in final action*** – these documents are subject to the FDA's confidentiality restrictions relating to pending applications, and should be kept confidential because they reflect ongoing FDA deliberative processes. This is a very narrow category of fewer than ten documents. Through the meet and confer process, the parties have agreed to de-designate certain documents involving issues that are no longer subject to the FDA's ongoing deliberative process. For example, until very

recently, the FDA's December 18, 2008 letter responding to AstraZeneca's Changes Being
Effected proposed labeling revision was confidential, and was thus filed under seal in connection
with Plaintiffs' Emergency Motion for Sanctions (Doc. No. 42 and Ex. A).  Now, however, the
labeling changes reflected in the December 18, 2008 Letter have become final, *see*
http://www1.astrazeneca-us.com/pi/Seroquel.pdf., and AstraZeneca agrees with plaintiffs that the
December 18 Letter may properly be de-designated and disclosed at this time.  Conversely,
plaintiffs have agreed that the December 22, 2008 Complete Response Letter ("CRL") from the
FDA should remain confidential at this time.

(2)      ***Four Unpublished Clinical Study Reports*** – Two of these reports are currently in the
peer-review process and are slated for publication in medical journals within a few months.  The
other two studies are still in draft form.  Moreover, detailed synopses of three of these four
studies are currently publicly available on AstraZeneca's website
(http://www.astrazenecaclinicaltrials.com); thus, the public already has access to certain
information about these studies.  AstraZeneca requests the Court maintain the confidentiality of
the unpublished clinical study reports for the brief period of time until they are finalized and
published.  Courts routinely safeguard against the premature release of ongoing scientific
research in its entirety, as Bloomberg has requested here, because of its confidential nature.

(3)      ***Proprietary Prescription Data Purchased From IMS Health, Inc.*** – In response to
AstraZeneca's motion *in limine* to exclude evidence of alleged "ghostwriting," plaintiffs attached
proprietary prescribing data purchased from IMS Health, Inc. ("IMS") by AstraZeneca.
AstraZeneca obtained those data pursuant to a confidentiality agreement with IMS that
AstraZeneca is bound to respect and enforce.  Plaintiffs have agreed that the IMS data should
remain confidential at this time.

(4)   ***Non-Public Documents Reflecting Foreign Regulatory Actions*** – As Magistrate Judge Baker recognized in his January 30, 2009 Order, evidence of foreign regulatory actions is irrelevant and unfairly prejudicial.

(5)   ***Call Notes Reflecting Competitively Sensitive Information*** – Call notes reflect proprietary business information concerning the reach, frequency, and focus of AstraZeneca's marketing efforts relating to a drug that remains on the market while competitors market competing drugs, and are entitled to continued confidentiality protection at this time because of the competitive harm their disclosure would cause to AstraZeneca.

(6)   ***The Macfadden Documents*** – The Court is familiar with the sensitive nature of the Macfadden documents, and has previously taken steps to ensure the continued sensitive and confidential handling of these documents.  AstraZeneca believes there is no public interest in disclosing these documents while, in contrast, disclosure would unfairly embarrass persons who are not parties to this litigation.

AstraZeneca has demonstrated good cause for maintaining the confidentiality of the above categories of documents at this time, and plaintiffs have agreed that certain of these documents – most notably FDA correspondence relating to the FDA's ongoing deliberative process – should remain confidential.  Maintaining confidentiality for these limited categories of documents strikes the appropriate balance between the interest in public disclosure and the need to protect competitively sensitive and confidential information from premature and/or unjustified disclosure.  Moreover, AstraZeneca recognizes that as the litigation and the FDA's deliberative process further unfolds, and studies are published, many of these documents will no longer require the same level of protection required at this time.

4

Although Bloomberg likens this case to the *Zyprexa* litigation, it fails to acknowledge that *Zyprexa* involved a different drug, different facts, and a different litigation posture. Indeed, it should be clear to any observer that this litigation is very different from *Zyprexa*. Moreover, in *Zyprexa*, courts agreed to unseal previously confidential documents after a trial and significant settlements. There has been no trial here because the first two plaintiffs to have their cases heard by this Court could not provide sufficient evidence that they had diabetes caused by their Seroquel use. Plaintiffs' claims should continue to be tested in this Court, and not tried in a premature and one-sided fashion in the newspapers.

AstraZeneca therefore respectfully submits that the balancing test set forth by the Eleventh Circuit in *Chicago Tribune* weighs in favor of maintaining the confidentiality of certain limited categories of documents, summarized above and described in greater detail below. There is ample good cause to maintain confidentiality, and the public interest will be served, not hindered, by keeping these documents under seal at this time.

## II.   DISCUSSION

As the parties and Bloomberg agree, the Eleventh Circuit articulated the governing standard for determining whether confidential documents should be publicly disclosed in *Chicago Tribune Co. v. Bridgestone/Firestone*, 263 F.3d 1304 (11th Cir. 2001). *Chicago Tribune* establishes several fundamental principles:

- First, the common law right of access mirrors the "good cause" standard articulated by Rule 26 and requires the Court to balance the respective interests at stake, including the parties' legitimate interest in confidentiality and the public's interest in disclosure. *Id.* at 1310-11, 1314-15.[2]

- Second, the media and public presumptively have access to "items which may *properly* be considered public or judicial records," but do not have presumptive access to discovery documents, procedural motions, or other non-judicial records. *Id.* at 1311-13 (emphasis added). Although dispositive motions may be entitled to an initial presumption in favor of public disclosure, "the fact that sealed material is … submitted in connection with a substantive motion does not mean that the confidentiality imposed by Rule 26 is automatically forgone." *Id.* at 1313.

- Third, in balancing the parties' interests, the courts should consider the importance of facilitating the discovery process as a means expeditiously to resolve disputes and conserve judicial resources.[3]

In accord with this balancing standard, the Eleventh Circuit in *Chicago Tribune* reversed the district court's decision to unseal confidential records in response to press motions to intervene filed after the case had settled. *Id.* at 1310. In this case, consistent with *Chicago Tribune*, the balancing standard favors protection of certain narrow categories of documents for the reasons described below.

---

[2] Bloomberg's motion wrongly suggests that AstraZeneca must establish that all of the documents at issue contain "trade secrets" to prevent their disclosure. Rule 26(c) protective orders properly protect confidential research, development, or commercial information, *see* Fed. R. Civ. P. 26(c), and it is well settled that the protection afforded "confidential commercial information" under the Rule "is broad enough to include a wide variety of business information." *Zenith Radio Corp. v. Matsushita Elec. Indus. Co.*, 529 F. Supp. 866, 890-92 & n.42 (E.D. Pa. 1981); *see also In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 415 (E.D.N.Y. 2007) (Rule 26's "'open-ended series of terms … need not be limited to true trade secrets'") (citing 8 Wright & Miller at § 2043). Indeed, as the United States Supreme Court has emphasized, "[c]onfidential information *acquired or compiled* by a corporation in the course and conduct of its business is a species of property to which the corporation has the *exclusive* right and benefit." *Carpenter v. United States*, 484 U.S. 19, 26 (1987) (emphasis added). At the upcoming hearing on February 26, 2009, AstraZeneca will make an evidentiary showing that further demonstrates the confidential and protected nature of the materials as to which the company continues to maintain its confidentiality designations.

[3] The Eleventh Circuit has previously recognized the utility of umbrella protective orders to this process, particularly in cases like this one. "In complicated cases where document-by-document review of discovery materials would be unfeasible, an 'umbrella' protective order … should be used to protect documents designated in good faith by the producing party as confidential." *In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 356 (11th Cir. 1987) (explaining that judicial review of parties' confidentiality designations should be "limited to those materials relevant to the legal issues raised"). Such orders ensure "maximum participation in the discovery process, conserve judicial resources, and prevent the abuses of annoyance, oppression, and embarrassment." *Id.* at 357; *see also In re Zyprexa Injunction*, 474 F. Supp. 2d at 416 ("The value of umbrella orders has been well-documented ….").

A.   **The "Presumption Of Public Access" Should Not Apply To These Confidential Materials Because Of The Nature Of Their Disclosure By Plaintiffs.**

AstraZeneca did not submit the confidential materials at issue as evidence in support of its dispositive motions; rather, plaintiffs attached the materials to their oppositions. When the challenged confidential material is filed in opposition to a dispositive motion, there should be no "presumption of public access." As the Eleventh Circuit has explained: "There is no voluntariness … where one's adversary submits the presumptively confidential material." *Chicago Tribune*, 263 F.3d at 1315, n.15. In that situation, the "court should consider the fact that [the party claiming confidentiality] has exhibited behavior consistent with its claim of reliance in connection with the good cause balancing test." *Id.*; *see also Estate of Martin Luther King, Jr., Inc. v. CBS, Inc.*, 184 F. Supp. 2d 1353, 1367 (N.D. Ga. 2002) (the fact that the opposing party filed the confidential documents meant their disclosure was not voluntary and weighed in favor of the party claiming confidentiality). Because AstraZeneca did not submit the confidential materials, it did not voluntarily disclose their contents as part of these proceedings; this tips the balance strongly in favor of retaining the materials' confidentiality designation.

Moreover, unlike the case where each of the documents sought is critical to a dispositive resolution of the case, many of the documents sought by Bloomberg here are irrelevant to the critical issues in the case, as the Court recognized when reviewing the filings. Dec. 3, 2008 Order (Doc No. 1173) (plaintiffs' filings "serve[d] more to bury the Court in paperwork (much of which does not appear relevant) than to clarify and narrow the issues."). In other words, the materials are simply not the sort of "judicial documents" that should be subject to public disclosure. *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) (to qualify as a judicial document, the document "must be relevant to the performance of the judicial function and useful

in the judicial process"); *In re Zyprexa Injunction*, 474 F. Supp. 2d at 412 ("The claim of public

access is strongest when the documents play a substantial role in 'determining litigants'

substantive rights.'") (internal citations omitted).  Here, in the Court's view, many of the

documents played no role whatsoever in determination of the parties' substantive rights, further

weakening the presumption of public access to those documents.  Further, Magistrate Judge

Baker's January 30, 2009 motion *in limine* rulings confirm the irrelevance of some of the

confidential material submitted by plaintiffs.

Finally, at least one specific exhibit – the December 2008 FDA CRL – is a document that

the parties have now agreed should remain confidential and that was not attached to a

"dispositive or substantive motion" at all.  Rather, it was attached to plaintiffs' emergency

motion for sanctions for discovery abuse, which the Court denied.  Moreover, Bloomberg's

unsubstantiated claim that the letter "contained 'critical information directly supporting

Plaintiffs' liability case,'" Bloomberg Mot. at 10, is belied by this Court's determination that the

letter did not impact plaintiff Guinn and plaintiff Haller's cases, and does not convert that

discovery motion into a dispositive motion giving rise to the presumption of access.  Indeed, the

law guards against such a result:

> [A] holding that discovery motions and supporting materials are subject to a
> presumptive right of access would make raw discovery, ordinarily
> inaccessible to the public, accessible merely because it had to be included in
> motions precipitated by inadequate discovery responses or overly aggressive
> discovery demands.  This would be a holding based more on expediency than
> principle.…The public policy implications of an expansion of the common
> law presumption of access to discovery motions are unclear, and this alone
> should counsel restraint.

*Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 998 F.2d 157, 164-65 (3d Cir. 1993)

(cited in *Chicago Tribune*, 263 F.3d at 1312); *see also Phillips v. General Motors Corp.*, 307

F.3d 1206, 1213 (9th Cir. 2002)  ("It makes little sense to render the district court's protective

order useless simply because the plaintiffs attached a sealed discovery document to a

nondispositive sanctions motion filed with the court.").[4]

**B.    Courts Rarely Unseal The Record To Permit Expansive Press Publication Of Confidential Documents At This Stage Of The Proceedings.**

Bloomberg's motion seeks wholesale public disclosure of confidential documents

without regard for whether the parties agree they should remain confidential, and at a stage of the

proceedings where no plaintiff has demonstrated that he or she has a triable claim, and thus no

trial is currently scheduled in this MDL.  In this regard, this case is entirely different from the

*Zyprexa* proceedings relied on so heavily by Bloomberg.  In *Alaska v. Eli Lilly and Co.*, No.

3AN-06-5630 (Alaska Sup. Ct. June 13, 2008) (Bloomberg Mot. Ex. A), Bloomberg sought to

intervene on the eve of trial, after discovery had concluded and the jury was empanelled.  *Id.* at

2.  Even then, the court decided to defer consideration of Bloomberg's motion to unseal certain

records *until after trial concluded*.  *Id.* at 3.  After trial had begun, the parties settled, and only

then did the court unseal certain records.  *Id.*  In deciding to unseal records, the court noted that

many of the documents and deposition excerpts had been introduced and discussed extensively at

trial and thus there was an inadequate showing that disclosure would cause harm to Eli Lilly.

*See, e.g., id.* at 13-16, 18, 25-26.  Here, of course, there has not been a trial, the Court has not

found the confidential documents to be relevant and admissible evidence (and in the case of

foreign regulatory documents, has already ruled the documents are *inadmissible*), and thus the

documents have not been disclosed to the public.

This litigation is also unlike the Zyprexa civil litigation*, see In re Zyprexa Prods. Liab.*

*Litig.*, 253 F.R.D. 69 (E.D.N.Y. 2008), where the vast majority of those cases had already settled

---

[4] As noted above, AstraZeneca agrees the other FDA letter attached to plaintiffs' Emergency Motion for Sanctions – the December 18, 2008 CBE letter – no longer requires confidential treatment because the labeling changes reflected therein have become final.

(including 8,000 personal injury claims in 2005 and another 18,000 in 2007) at the time the *Zyprexa* court considered the propriety of unsealing certain materials. *Id.* at 79-80. Moreover, in those private action proceedings, the parties relied heavily on materials from summary judgment motions filed in previous cases and on documents filed in connection with the State of Alaska proceedings, which had *already* been made public. *Id.* at 81. As is apparent from both of these opinions, the *Zyprexa* cases were at such an advanced stage of proceedings that public disclosure of various documents would be expected to have very little – if any – negative impact on the parties. Indeed, Judge Weinstein himself recognized the need to take into account the posture of the litigation when deciding whether to unseal confidential documents. *Id.* at 208 ("Lilly's legitimate interest in confidentiality does not outweigh the public interest in disclosure at this stage of the litigation."). A year and a half earlier, Judge Weinstein had issued a permanent injunction to prevent disclosure of Lilly's confidential documents. *In re Zyprexa Injunction*, 474 F. Supp. 2d 385 (E.D.N.Y. 2007). Given subsequent litigation developments, such as the significant settlements in the private litigation as well as the trial of the Alaska Attorney General's claims against Eli Lilly, the balances shifted over time and the public interest ultimately weighed in favor of disclosure in *Zyprexa*. The *Zyprexa* situation is obviously much different than these MDL proceedings, where over 6000 cases on the Court's docket remain pending and where these plaintiffs have yet to demonstrate that they have triable claims.

In fact, courts rarely unseal confidential records and documents at this stage of the proceedings, but rather wait until trial, settlement, or dismissal. *See generally, e.g., Chicago Tribune Co. v. Bridgestone/Firestone*, 263 F.3d 1304 (11th Cir. 2001) (considering press motion to unseal documents after settlement of the products liability action); *Brown v. Advantage Engineering, Inc.*, 960 F.2d 1013 (11th Cir. 1992) (unsealing documents after case had settled);

*Estate of Martin Luther King, Jr., Inc. v. CBS, Inc.*, 184 F. Supp. 2d 1353 (N.D. Ga. 2002) (considering whether to unseal documents after the parties had stipulated to a dismissal of the plaintiff's action with prejudice).

Hence, Bloomberg's effort to rely on the *Zyprexa* cases to support its public disclosure demands here fails. If anything, the procedural history in *Zyprexa* supports continued confidentiality protection of the materials at issue.

### C.   AstraZeneca Has Demonstrated Good Cause To Retain The Confidentiality Designation For The Documents Attached To Various Pleadings In This Case.

Since filing its motions in the Florida "Group One" cases in November, AstraZeneca has been attempting to reach agreement with plaintiffs to redact and make public the dispositive briefing now sought by Bloomberg, while at the same time de-designating certain confidential documents. In other words, this is not a case where AstraZeneca has attempted to litigate under a "veil of secrecy." Indeed, of the documents now sought by Bloomberg, AstraZeneca seeks to keep only a handful of those documents confidential and under seal at this time: (1) various interim FDA submissions and ongoing communications with the FDA; (2) certain unpublished Clinical Study Reports ("CSR"), some of which are currently subject to the peer-review process; (3) proprietary prescription data purchased from a non-party that AstraZeneca is contractually obligated to keep confidential; (4) foreign regulatory documents that Magistrate Judge Baker has already excluded from evidence as irrelevant and unfairly confusing; (5) call notes reflecting AstraZeneca's commercially sensitive marketing strategies; and (6) certain documents relating to alleged inappropriate conduct by Dr. Wayne Macfadden, which the Court has twice ruled are properly subject to the Protective Order. In total, these materials constitute 65 of the 147

documents submitted under seal by the parties in connection with the Group One briefing.[5] These documents include highly sensitive and ongoing regulatory deliberations, proprietary and trade secret information that could competitively damage AstraZeneca if it were publicly disclosed, and sensitive personal emails that are potentially embarrassing to non-parties.

For this limited subset of documents, AstraZeneca has carried its burden of establishing good cause to maintain the documents' confidentiality. Not only has AstraZeneca consistently treated the confidential materials as highly sensitive regulatory, proprietary, and/or trade secret information, the company has articulated numerous bases for retaining the information's confidentiality – including, most notably, to avoid misleading the public into an alarmist reaction based on incomplete information with regard to an important drug that treats serious mental disease.

1. **AstraZeneca has consistently safeguarded the confidential materials to prevent their dissemination to the public.**

Neither Bloomberg nor plaintiffs can seriously argue that AstraZeneca has failed to guard the confidential materials from public disclosure. Contrary to Bloomberg's suggestion that AstraZeneca has disclosed certain documents to its competitors by using those documents as exhibits during critical depositions, *see* Bloomberg Mot. at 20, AstraZeneca used those documents only upon the *express agreement* of counsel that the contents of those exhibits *would not be discussed with or disclosed to their clients*, who are AstraZeneca's competitors.[6] Thus,

---

[5] Most of the confidential materials are call notes (25 exhibits), the Wayne Macfadden documents (10 exhibits), documents reflecting irrelevant foreign regulatory actions (10 exhibits), and case-specific disclosures containing additional call notes and IMS data (10 exhibits).

[6] To safeguard competitively sensitive information from disclosure to competitors, AstraZeneca entered into confidentiality agreements with Janssen, L.P., Janssen Pharmaceutica Inc., and Johnson & Johnson, as well as Eli Lilly and Company. *See* Confidentiality Agmt. Between AstraZeneca Pharmaceuticals LP and Eli Lilly and Company (Ex. 1); Confidentiality Agmt. Between AstraZeneca Pharmaceuticals LP and Janssen, L.P., Janssen Pharmaceutica Inc. and Johnson & Johnson, (Ex. 2). These agreements were necessary because Janssen and Lilly lawyers were permitted to attend depositions in those cases pending in New Jersey state court where Janssen and

AstraZeneca took appropriate steps to safeguard the confidentiality of its sensitive information. *See Estate of Martin Luther King, Jr.*, 184 F. Supp. 2d at 1357-58, 1366-67 (finding plaintiff "treated the information at issue as extremely sensitive and took steps to preserve its confidentiality" where counsel secured express agreement of opposing counsel that deposition testimony would be kept confidential). Moreover, though certain confidential exhibits were put into evidence *by plaintiffs* and discussed in *summary fashion* at the December 4, 2008 *Daubert* hearing, the parties expressly asked the Court to retain the confidentiality designation for any exhibits used during the hearing. *See Daubert* Hearing Transcript (Dec. 4, 2008) at 4:8-5:5.[7] AstraZeneca has not itself disclosed *any* of the confidential materials or otherwise allowed those materials to be discussed in detail in open court.

> **2.    AstraZeneca has demonstrated "good cause" to keep these particular confidential materials under seal at this time.**
>
> **a.    *The 2008 FDA Submission and Correspondence***

Bloomberg seeks to unseal AstraZeneca's June 2008 submission of metabolic data to the FDA and related correspondence, and one FDA CRL received by AstraZeneca in December 2008. Each of these documents is part of FDA's ongoing regulatory deliberations regarding Seroquel. As such, applicable FDA regulations mandate the continued confidentiality of these documents to preserve the public health and safety. The parties agree that the December 2008 CRL should remain confidential at this time.

---

Lilly were cross-noticed as parties. If a particular deposition was not cross-noticed, Janssen and Lilly lawyers were not allowed to attend. The agreements provide a further safeguard, effectively preventing defense counsel for these pharmaceutical companies from sharing other companies' confidential information with their clients.

[7] Although Bloomberg characterizes testimony at the *Daubert* hearing about Wayne Geller's 2000 Safety Position Paper as tantamount to "public disclosure of the contents of this report," *see* Bloomberg Mot. at 7, the actual testimony reveals that the report was neither discussed at length nor its contents read verbatim in open court. Moreover, Laura Plunkett's testimony about AstraZeneca's June 2008 submission to the FDA only scratched the surface of that nearly 1,200-page submission, and again the testimony was summary in nature and in no way revealed the detailed contents of that lengthy submission.

Under applicable FDA regulations, "[t]he FDA will determine the public availability" of any part of a drug application or abbreviated application, including the underlying reports, data, chemical ingredients, and analytical procedure used. 21 C.F.R. § 314.430(a). As a result, the drug company sponsoring a particular application to the FDA is constrained in its ability to disseminate information regarding the application without FDA approval. Moreover, the FDA may not publicly disclose "the existence of an application or abbreviated application before an approval letter is sent to the applicant." 21 C.F.R. § 314.430(b).

Thus, it is not plaintiffs' counsel, or even Bloomberg, who properly may dictate the timing and content of disclosures to the public health community regarding the benefit/risk analyses or proposed prescribing information contained in AstraZeneca's applications related to Seroquel. The FDA's ongoing deliberative process may reflect requests for additional data, or tentative opinions and open questions that are ultimately discarded when the FDA makes a final determination. The FDA and AstraZeneca are entitled to maintain the confidentiality of submitted applications and interim correspondence relating to those submissions to ensure that unapproved or tentative information does not prematurely leak to the public, which would risk confusing or alarming patients and perhaps even causing them to inappropriately discontinue their medication. This risk is particularly apparent in this litigation, where discovery has demonstrated that many plaintiffs made decisions about their health based on seeing legal advertisements, or on the advice of their attorneys and not their physicians, including some plaintiffs who decided to stop taking Seroquel altogether on the advice of their attorneys, and where many of the plaintiffs require an atypical antipsychotic like Seroquel to help control dangerous behavior, both to themselves and to others.

Further, the FDA confidentiality requirement expressly safeguards sensitive competitive information contained in a pending application for a new indication. To the extent a drug company submits "trade secret or confidential commercial or financial information" to the FDA, such information is "not available for public disclosure." 21 C.F.R. § 20.61(c). Disclosure of these documents would put AstraZeneca at a serious competitive disadvantage because they contain sensitive information regarding, among other things, the timing and likelihood of approval for potential future indications.

*The December 2008 FDA correspondence.* It is clear that the December 22, 2008 CRL from the FDA, which the parties have agreed should remain confidential, is part of the ongoing deliberative process underlying AstraZeneca's pending Supplemental New Drug Application ("sNDA") for Seroquel and therefore must remain confidential under the FDA regulations. 21 C.F.R. § 314.430(a)-(b). Moreover, the CRL contains confidential trade secret information of commercial value, including the regulatory process for obtaining approval for this use of this particular drug, interim, non-final FDA comments regarding the potential benefits and risks of Seroquel for a particular use, and specific steps AstraZeneca must take to obtain final approval.[8] AstraZeneca's competitors could unfairly benefit from having this information, at great cost to

---

[8] As one court concluded:

> Information from unapproved supplements [i.e. sNDAs] is considered particularly sensitive, as reflected in FDA's regulations, which provide that no unapproved information is available for public disclosure....For example, the information pertains to a product dosage form or an indication that is developmental and not yet marketed. Consequently, these documents contain a high percentage of trade secret, confidential, commercial, and agency deliberative information that, as unapproved, does not currently have any impact on the public. It is only if these supplements are approved that the public has an interest in the information....

*Citizens Comm'n on Human Rights v. FDA*, 1993 WL 1610471, at *11 (C.D. Cal. May 10, 1993) (granting summary judgment in FOIA challenge and denying plaintiff's request for NDA and sNDAs relating to Prozac), aff'd in pert. part, rev'd and remanded in part, 45 F.3d 1325 (9th Cir. 1995).

AstraZeneca.  As a result, there is good cause to maintain the confidentiality of the CRL at this time.[9]

   *The June 2008 metabolic submission.*  AstraZeneca also seeks to maintain the confidentiality of its June 2008 metabolic submission to the FDA.  This submission was made in connection with sNDAs; both the applications and the data itself are currently under review by the FDA, and thus deserve protection pursuant to the FDA's confidentiality regulations.

### b.      *The Four Unpublished CSRs*

   Courts have regularly protected ongoing scientific research from discovery; indeed, even Judge Weinstein has recognized this protection.  *In re Zyprexa Injunction*, 474 F. Supp. 2d at 404 ("confidential preliminary research" is protectable);  *see also, e.g.*, Order, *Schwab v. Philip Morris USA Inc.*, No. 04-1945 (Apr. 20, 2005) (precluding discovery of a "massive, ongoing research study" sponsored by defendant Philip Morris, in case presided over by Judge Weinstein) (Ex. 3); *Dow Chemical Co. v. Allen*, 672 F.2d 1262, 1273 (7th Cir. 1982) ("[F]orced production" of an unpublished study would likely "jeopardize the study … and would be a heavy burden … on those involved in the research.") (internal citations omitted); *Cumberland Packing Corp. v. Monsanto Co.*, 184 F.R.D. 504, 506 (E.D.N.Y. 1999) (confidential research information is commonly protected and filed under seal).

   The need to protect unpublished scientific data from public disclosure is no less profound when the materials have been disclosed in discovery pursuant to a confidentiality order in a mass tort case like this one.  Here, two of the unpublished CSRs are currently in the peer-review publication process and slated for publication in medical journals later this year.  Disclosure of

---

[9] Additionally, for the reasons discussed *supra* at 8, Bloomberg has no presumptive access to the CRL because it was attached as an exhibit to a discovery motion.

these confidential documents now could jeopardize those publications.[10] The medical journals themselves have interests in preventing the premature disclosure of research that is still undergoing peer review and editing, and is about to be published.    Further, the other two CSRs contain preliminary analysis and interpretations that could be misconstrued or misinterpreted if prematurely disclosed.  Declaration of Arthur Lazarus In Support Of AstraZeneca's Motion To Maintain The Confidentiality Of Certain Challenged Documents Filed Under Seal As Exhibits To Plaintiffs' Motion Responses, ¶¶ 6, 8 (Doc. No. 1222-4).  Thus, there is good cause to maintain the confidentiality of the CSRs until publication.  Conversely, there is no legitimate public need for premature disclosure now of the full studies, particularly when detailed synopses of three of the four studies are currently on AstraZeneca's clinical trial website, two of the studies will be published within months, and the other two studies will be made available upon publication.

### c.    *IMS Data*

AstraZeneca purchases proprietary data showing prescribing trends from IMS. AstraZeneca obtained those data pursuant to a confidentiality agreement with IMS that AstraZeneca is bound to respect and enforce.  *See* Decl. of Alfred Paulson In Support Of AstraZeneca's Response To Plaintiffs' Motion Regarding The Confidentiality Of Certain Case-Specific Discovery Disclosures And Related Materials, ¶¶ 12-15 (Doc. No. 647) (hereafter Paulson Decl.).  In accord with that agreement, the Court should not require disclosure of this confidential data, and Bloomberg can articulate no *bona fide* reason why disclosure of

---

[10] AstraZeneca seeks to maintain confidentiality of the CSRs until publication of the related studies.  At present, Study 125 is slated for publication in April 2009 and Study 127 will likely be published in the second quarter of this year.  Finally, Study 144 and Study 165 are still in draft form.  Thus, AstraZeneca is only asking the Court to retain the confidentiality designation for a short period of time to ensure these studies are finalized and their underlying conclusions and methodologies are found to be valid.

proprietary prescription data relating to a handful of Florida prescribing physicians is in the public interest. Plaintiffs have agreed the IMS data should be kept confidential.

### d.    *Non-Public Foreign Regulatory Actions*

Magistrate Judge Baker has already ruled that foreign regulatory actions are irrelevant and unfairly confusing and prejudicial. *See* Jan. 30, 2009 Order (Doc. No. 1253). The documents underlying these actions – which have nothing to do with Seroquel labeling or marketing in the United States – are similarly irrelevant to the remaining U.S.-based MDL cases. As a result, it is unclear that the presumption of public access should even apply to these documents, and even if it did, there is no legitimate public interest in confidential communications between AstraZeneca and foreign regulators.

### e.    *The Call Notes*

As set forth in detail in AstraZeneca's Motion to Maintain the Confidentiality of Certain Challenged Documents Filed Under Seal As Exhibits To Plaintiffs' Motion Responses (Doc. No. 1222) ("Jan. Confidentiality Mot."), the company's "call notes" reflect proprietary business information regarding the reach, frequency, and focus of its marketing efforts, all of which it acquired or compiled in the course of its business, including years of research about how AstraZeneca approaches sales calls, and reveal internal insight about the effectiveness of AstraZeneca's strategies for marketing Seroquel. Jan. Confidentiality Mot. at 11 & Paulson Decl., ¶¶ 6-8. The call notes also include descriptions by company sales personnel reflecting the personal preferences, views, and opinions of each physician or healthcare provider about Seroquel as compared to competitor medications. *Id*. Because of their highly sensitive nature, involving a drug that remains on the market with competing drugs, all notes are maintained on a strictly confidential basis at AstraZeneca. *Id*. at ¶ 11. This is just the sort of proprietary information – much like individual customer preferences and interactions – that courts have

routinely held are commercial information entitled to protection. *See, e.g., Jazz Photo Corp. v. United States*, 439 F.3d 1344, 1358 (Fed. Cir. 2006); *Duracell Inc. v. SW Consultants, Inc.*, 126 F.R.D. 576, 578-79 (N.D. Ga. 1989). In fact, even plaintiffs concede that call notes are protected "to the extent that they reveal confidential marketing strategies that are currently in use and otherwise protected from disclosure to its competitors by AstraZeneca." *See* Plaintiffs' Resp. in Opp. to Jan. Confidentiality Mot., at 2 (Doc. No. 1258).

### f.     *The Macfadden Documents*

This Court has already repeatedly ruled that the Macfadden documents *are confidential* and, in fact, has expressly directed the parties not to disseminate redacted portions of those documents. *See* Sept. 20, 2007 Order (Doc. No. 485); Oct. 23, 2007 Order (Doc. No. 601). The Court's October 2007 Order specifically admonishes plaintiffs' attorneys and personnel "to use the utmost care in handling these documents, as the parties have been specifically ordered by Magistrate Judge Baker '**NOT** to make any dissemination of redacted portions ....'" Oct. 23, 2007 Order at 4 (emphasis in original). In other words, both Magistrate Judge Baker and Judge Conway have reviewed the documents in question and determined that the redacted portions were properly designated confidential and made subject to the Protective Order. In view of these holdings, the Court need not revisit whether good cause exists to maintain the confidentiality of these documents. Disclosure of the Macfadden documents would further no public interest, but instead would risk embarrassment of persons who have never been involved in this litigation.

### D.     The Public Interest Does Not Outweigh AstraZeneca's Interest In Maintaining The Confidentiality Of Its Documents And, In Fact, The Public Interest Supports Retention Of The Confidential Designation.

Bloomberg's Motion rests primarily on two purported "public interests." First, Bloomberg argues that the "public health and safety" depend on full disclosure of every confidential document filed in this case, yet offers no factual support or declaration. In fact, as

described above, the "public health and safety" may depend on maintaining the integrity and confidentiality of the substance of the FDA's ongoing deliberations about those applications. Premature publication of these interim and ongoing deliberations could lead members of the public to make detrimental decisions concerning their health based on faulty or incomplete information, or on FDA tentative opinions that are subject to more study and possible change. Second, Bloomberg argues a general "public interest" in "ensuring the integrity of this Court's process." Bloomberg Mot. at 3. This appears to be nothing more than a veiled request for access to scores of confidential exhibits that the Court itself found unhelpful and likely irrelevant when granting summary judgment to AstraZeneca; indeed, if Bloomberg had genuine interest in understanding "plaintiffs' allegations" and affording the public "an opportunity to gauge AstraZeneca's response to these allegations," *id.*, the redacted briefing that AstraZeneca is prepared to offer should suffice. Indeed, once Bloomberg reviews those filings and the scores of documents de-designated by the parties, it will see that its hyperbole is misplaced, and this litigation is not "a replay" of *Zyprexa*; rather it is a case of plaintiffs "advancing claims that they cannot sustain." *Id.* at 22.

**III.   CONCLUSION**

For the foregoing reasons, Bloomberg's request for access should be denied.

DATED:  February 24, 2009          Respectfully submitted,

 */s/ Stephen J. McConnell*
Stephen J. McConnell
DECHERT LLP
2929 Arch Street
Philadelphia, PA  19103
Telephone: (215) 994-4000
Facsimile: (215) 994-2222
stephen.mcconnell@dechert.com

 */s/ Chris S. Coutroulis_____*

Chris S. Coutroulis (Fla. Bar No. 300705)
Robert L. Ciotti (Fla. Bar No. 333141)
CARLTON FIELDS, P.A.
Corporate Center Three at International Plaza
4221 W. Boy Scout Blvd.
Tampa, FL  22607
Telephone: (813) 223-7000
Facsimile: (813) 229-4133
ccoutroulis@carltonfields.com
rciotti@cartlonfields.com

*Counsel for Defendants AstraZeneca LP and*
*AstraZeneca Pharmaceuticals LP*

## CERTIFICATE OF SERVICE

I hereby certify that, on February 24, 2009, I electronically filed the foregoing with the

Clerk of the Court by using the CM/ECF system through which all participating parties are

deemed served.  I further certify that, by using the CM/ECF, the foregoing has been served on

plaintiffs' liaison counsel, who is charged with serving any non-CM/ECF participants on the

attached Service List.

*/s/ Eliot J. Walker*

# SERVICE LIST

## In Re: Seroquel Products Liability Litigation
## MDL Docket No. 1769

| | |
|---|---|
| Paul J. Pennock, Esq.<br>Michael E. Pederson, Esq.<br>Weitz & Luxenberg, P.C.<br>180 Maiden Lane - 17th Floor<br>New York, NY 10038<br>Telephone: (212) 558-5500<br>Ppennock@weitzlux.com<br>MPederson@weitzlux.com<br>*Plaintiffs' Lead Counsel* | Camp Bailey, Esq.<br>Michael W. Perrin, Esq.<br>Fletcher Trammell, Esq.<br>Bailey Perrin Bailey LLP<br>The Lyric Centre<br>440 Louisiana, Suite 2100<br>Houston, TX 77002<br>Telephone: (713) 425-7240<br>cbailey@bpblaw.com<br>mperrin@bpblaw.com<br>Plaintiffs' Lead Counsel |
| Larry Roth, Esq.<br>Law Offices of Larry M. Roth, P.A.<br>Post Office Box 547637<br>Orlando, FL 32854-7637<br>Telephone: (407) 872-2239<br>LROTH@roth-law.com<br>*Plaintiffs' Liaison Counsel* | Tommy Fibich, Esq.<br>Fibich, Hampton & Leebron, L.L.P.<br>1401 McKinney, Suite 1800<br>Five Houston Center<br>Houston, TX 77010<br>Telephone: (713) 751-0025<br>tfibich@fhl-law.com |
| Matthew F. Pawa, Esq.<br>Law Offices of Matthew F. Pawa, P.C.<br>1280 Centre St., Suite 230<br>Newton Centre, MA 02459<br>Telephone: (617) 641-9550<br>Mp@pawalaw.com | Robert L. Salim, Esq.<br>Robert L. Salim Attorney at Law<br>P.O. Box 2069<br>Natchitoches, LA 71457-2069<br>Telephone: (318) 352-5999<br>robertsalim@cp-tel.net |
| Keith M. Jensen, Esq.<br>Jensen, Belew & Gonzalez, PLLC<br>1024 North Main<br>Fort Worth, TX 76106<br>Telephone: (817) 334-0762<br>kj@kjensenlaw.com | Scott Allen, Esq.<br>Cruse, Scott, Henderson & Allen, L.L.P.<br>2777 Allen Parkway, 7th Floor<br>Houston, Texas 77019<br>Telephone: (713) 650-6600<br>sallen@crusescott.com |
| Matthew E. Lundy, Esq.<br>Lundy & Davis, LLP<br>333 North Sam Houston Parkway East<br>Suite 375<br>Houston, TX 77060<br>Telephone: (281) 272-0797<br>mlundy@lundydavis.com | E. Ashley Cranford<br>Whatley Drake & Callas<br>2001 Park Place North, Suite 1000<br>Birmingham, AL 35203<br>Telephone: (205) 328-9576<br>ACranford@wdklaw.com |

| | |
|---|---|
| Robert L. Ciotti, Esq.<br>Carlton Fields, P.A.<br>4221 W. Boy Scout Boulevard<br>Suite 1000<br>Tampa, FL 33607-5736<br>Telephone: (813) 223-7000<br>rciotti@carltonfields.com<br>*Attorney for Defendants AstraZeneca*<br>*Pharmaceuticals, LP, and AstraZeneca LP* | Gregory P. Forney, Esq.<br>Shaffer Lombardo Shurin<br>911 Main Street, Suite 2000<br>Kansas City, MO 64105<br>Telephone: (816) 931-0500<br>gforney@sls-law.com<br>rbish@sls-law.com<br>*Attorney for Defendant,*<br>*Marguerite Devon French* |
| Randy Niemeyer<br>22442 Pike 309<br>Bowling Green, MO 63334-5209<br>*Pro Se* | Eric B. Milliken, Esq.<br>3 Sir Barton Ct.<br>Newark, DE 19702<br>*Pro Se* |
| Catherine Solomon<br>3100 N.E. 83<br>Gladstone, MO 64119<br>*Pro Se* | Louisiana Wholesale Drug Co. Inc.<br>C/O Gayle R. White<br>Registered Agent<br>Highway 167N<br>Sunset, LA 70584<br>*Pro Se* |
| Aaron C. Johnson, Esq.<br>Summers & Johnson<br>717 Thomas<br>Weston, MO 64098<br>Telephone: (816) 640-9940<br>firm@summersandjohnson.com | Robert A. Schwartz, Esq.<br>Bailey & Galyen<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744<br>bschwartz@galyen.com |
| Todd S. Hageman, Esq.<br>Simon and Passanante, PC<br>701 Market St., Suite 1450<br>St. Louis, MO 63101<br>Telephone: (314) 241-2929<br>thageman@spstl-law.com | Mark P. Robinson, Jr., Esq.<br>Robinson, Calcagnie & Robinson<br>620 Newport Center Drive, 7th Floor<br>Newport Beach, CA 92660<br>Telephone: (949) 720-1288<br>mrobinson@robinson-pilaw.com |
| Thomas F. Campion, Esq.<br>Steven M. Selna, Esq.<br>Drinker Biddle & Reath, LLP<br>500 Campus Drive<br>Florham Park, New Jersey 07932-1047<br>Telephone: (973) 360-1100<br>Thomas.Campion@dbr.com<br>steven.selna@dbr.com<br>*Attorneys for Defendants Janssen*<br>*Pharmaceutical Products and Johnson &*<br>*Johnson Co.* | Michael Davis, Esq.<br>James Mizgala, Esq.<br>Sidley Austin LLP<br>One South Dearborn<br>Chicago, IL 60603<br>Telephone: (312) 853-7731<br>mdavis@sidley.com<br>jmizgala@sidley.com<br>*Attorneys for Defendants AstraZeneca LP*<br>*and AstraZeneca Pharmaceuticals, LP* |

| | |
|---|---|
| Elizabeth Raines, Esq.<br>Baker, Sterchi, Cowden & Rice, LLC<br>2400 Pershing Road, Suite 500<br>Kansas City, MO 64108<br>Telephone: (816) 471-2121<br>raines@bscr-law.com | Timothy Reese Balducci, Esq.<br>The Langston Law Firm, PA<br>P.O. Box 787<br>100 South Main Street<br>Booneville, MS 38829-0787<br>Telephone: (662) 728-3138<br>tbalducci@langstonlaw.com |
| Kenneth W. Bean, Esq.<br>Sandberg, Phoenix & von Gontard<br>One City Centre<br>15th Floor<br>St. Louis, MO 63101-1880<br>Telephone: (314) 231-3332<br>kbean@spvg.com<br>Attorney for Defendant Dr. Asif Habib | John Driscoll, Esq.<br>Brown & Crouppen, PC<br>720 Olive St.<br>St. Louis, MO 63101<br>Telephone: (314) 421-0216<br>Jdriscoll@brownandcrouppen.com<br>asmith@brownandcrouppen.com<br>blape@brownandcrouppen.com |
| Aaron K. Dickey, Esq.<br>Goldenberg and Heller, PC<br>P.O. Box 959<br>2227 S. State Road 157<br>Edwardsville, IL 62025<br>Telephone: (618) 650-7107<br>aaron@ghalaw.com | Matthew J. Hamilton, Esq.<br>Pepper Hamilton<br>3000 Two Logan Square<br>18th & Arch Street<br>Philadelphia, PA 19103<br>Telephone: (215) 981-4000<br>hamiltonm@pepperlaw.com |
| Justin Witkin, Esq.<br>Ken Smith, Esq.<br>Aylstock, Witkin & Sasser, PLC<br>4400 Bayou Boulevard<br>Suite 58<br>Pensacola, FL 32503<br>Telephone: (850) 916-7450<br>Jwitkin@AWS-LAW.com<br>ablankenship@aws-law.com<br>ksmith@aws-law.com<br>noverholtz@aws-law.com | David P. Matthews, Esq.<br>Lizy Santiago, Esq.<br>Matthews & Associates<br>2905 Sackett Street<br>Houston, TX 77098<br>Telephone: (713) 222-8080<br>dmatthews@thematthewslawfirm.com<br>lsantiago@thematthewslawfirm.com<br>msalazar@thematthewslawfirm.com |
| Howard Nations<br>Lori A. Siler<br>Howard L. Nations Attorney At Law<br>4515 Yoakum Blvd.<br>Houston, TX 77006-5895<br>Telephone: (713) 807-8400<br>nations@howardnations.com | Mary B. Cotton<br>John D. Giddens, P.A.<br>226 North President Street<br>P.O. Box 22546<br>Jackson, MS 39225-2546<br>Telephone: (601) 355-2022<br>betsy@law-inc.com |
| Salvatore M. Machi<br>Ted Machi & Associates PC<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744 | Jona R. Hefner, Esq.<br>3441 W. Memorial, Suite 4<br>Oklahoma City, OK 73134-7000<br>Telephone: (405) 286-3000<br>attorneyokc@hotmail.com |

| | |
|---|---|
| David Dickens<br>Miller & Associates<br>105 North Alfred Street<br>Alexandria, VA  22314-3010<br>(703) 519-8080<br>ddickens@doctoratlaw.com | Pete Schneider, Esq.<br>Grady, Schneider & Newman, L.L.P.<br>801 Congress, 4th Floor<br>Houston, TX  77002<br>(713) 228-2200<br>pschneider@gsnlaw.com |
| Fred T. Magaziner<br>Marjorie Shiekman<br>A. Elizabeth Balakhani<br>Shane T. Prince<br>Eben S. Flaster<br>DECHERT LLP<br>Cira Centre<br>2929 Arch Street<br>Philadelphia, PA  19104<br>(215) 994-4000<br>fred.magaziner@dechert.com<br>shane.prince@dechert.com<br>marjorie.shiekman@dechert.com<br>eben.flaster@dechert.com<br>elizabeth.balakhani@dechert.com | Lawrence J. Gornick, Esq.<br>William A. Levin, Esq.<br>Dennis J. Canty, Esq.<br>Levin Simes Kaiser & Gornick LLP<br>44 Montgomery Street, 36th Floor<br>San Francisco, CA 94104<br>Telephone: (415) 646-7160<br>lgornick@lskg-law.com<br>dcanty@lskg-law.com<br>lsimes@levins-law.com<br>jkaiser@lskg-law.com<br>echarley@lskg-law.com<br>ddecarli@lskg-law.com<br>bsund@lskg-law.com<br>astavrakaras@lskg-law.com |
| Scott Burdine, Esq.<br>Hagans Burdine Montgomery<br>Rustay & Winchester, P.C.<br>3200 Travis, Fourth Floor<br>Houston, TX  77006<br>Telephone:  (713) 222-2700<br>sburdine@hagans-law.com | Lowell Finson<br>Phillips & Associates<br>3030 North 3rd Street<br>Suite 1100<br>Phoenix, AZ 85012<br>(602) 258-8900, ext. 295<br>lowellf@phillipslaw.ws |
| Gale D. Pearson<br>Stephen J. Randall<br>Pearson, Randall & Schumacher, P.A.<br>Fifth Street Towers, Suite 1025<br>100 South 5th Street<br>Minneapolis, MN 55402<br>(612) 767-7500<br>attorneys@outtech.com | Robert H. Shultz<br>Heyl, Royster<br>103 West Vandalia Street<br>P.O. Box 467<br>Edwardsville, IL 62025<br>(618) 656-4646<br>rshultz@hrva.com<br>bwallace@hrva.com |
| Ellen R. Serbin<br>Perona, Langer, Beck, Lalande & Serbin<br>300 San Antonio Drive<br>Long Beach, CA 90807-0948<br>(562) 426-6155<br>davidhwang@plblaw.com | Scott Armstrong<br>1719 West Main Street<br>Suite 201<br>Rapid City, SD 57702<br>(605) 399-3994<br>scottarmstrong1235@eathlink.net |

| Linda S. Svitak | James J. Freebery |
|---|---|
| Faegre & Benson, LLP | McCarter & English, LLP |
| 90 South 7th Street, Suite 2200 | 919 N. Market Street, 18th Floor |
| Minneapolis, MN 55402-3901 | Wilmington, DE 19801 |
| (612)766-7000 | (973) 622-4444 |
| lsvitak@faegre.com | jfreebery@mccarter.com |
| wjohnson@faegre.com | tpearson@mccarter.com |
| Richard D. Hailey | B. Andrew List |
| Ramey & Hailey | Clark, Perdue, Arnold & Scott |
| 3891 Eagle Creek Parkway | 471 East Broad Street, Suite 1400 |
| Suite C | Columbus, OH 43215 |
| Indianapolis, IN | (614) 469-1400 |
| (317) 299-0400 | alist@cpaslaw.com |
| rhailey@sprynet.com | lcollins@cpaslaw.com |