# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

IN RE:  Seroquel Products Liability Litigation

MDL DOCKET NO. 1769

This document relates to:

| | |
|---|---|
| Linda Guinn | 6:07-cv-10291 |
| Janice Burns | 6:07-cv-15959 |
| Richard Unger | 6:07-cv-15812 |
| Connie Curley | 6:07-cv-15701 |
| Linda Whittington | 6:07-cv-10475 |
| Eileen McAlexander | 6:07-cv-10360 |
| ~~Sandra Carter~~ | ~~6:07-cv-13234~~ |
| ~~Clemmie Middleton~~ | ~~6:07-cv-10949~~ |
| ~~Hope Lorditch~~ | ~~6:07-cv-12657~~ |
| David Haller | 6:07-cv-15733 |
| ~~Charles Ray~~ | ~~6:07-cv-11102~~ |
| ~~William Sarmiento~~ | ~~6:07-cv-10425~~ |

---

### ASTRAZENECA'S MOTION AND SUPPORTING MEMORANDUM UNDER *DAUBERT* AND FEDERAL RULES OF EVIDENCE 702, 401 AND 403 TO EXCLUDE OR LIMIT TESTIMONY OF PAUL DEUTSCH AND FREDERICK RAFFA

Pursuant to Federal Rule of Evidence 401, 402, 403, 702 and 703 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny, Defendants AstraZeneca Pharmaceuticals LP and AstraZeneca LP ("AstraZeneca") hereby move the Court to exclude or limit the testimony of Paul Deutsch, Ph.D. ("Deutsch"), and Frederick Raffa, Ph.D. ("Raffa"), the two "damages" experts proffered by six of the seven remaining Florida initial trial pool plaintiffs, *i.e.*, Plaintiffs Guinn, Burns, Unger, Curley, Whittington, and McAlexander ("Plaintiffs").[1]  Because the roles and methods of approach of these two experts require some

---

[1] No damages reports or testimony from Deutsch and Raffa, or from any other damages experts, have been proffered by David Haller, the last remaining Group One plaintiff.

background and explanation, the specific elements of relief sought by this motion are set forth in the conclusion.

I.      **INTRODUCTION**[2]

In an effort to meet their burden of proving damages associated with the diabetes allegedly caused by Seroquel, Plaintiffs have proffered the Rule 26 reports and testimony of two putative experts: (1) Deutsch, a "life care" and vocational rehabilitation planner, and (2) Raffa, an economist. Although neither is a medical doctor, together they attempt to derive *the nature and cost of future medical care* for each Plaintiff's diabetes on the assumption that AstraZeneca should be wholly responsible for those damages.

In essence, Deutsch offers his own medical opinions as to a recommended "rehabilitation program" for each Plaintiff's diabetes, with significant elements of his programs – especially the so-called "case management" modality, which he recommends for five of the six plaintiffs – having no medical doctor's support at all. Relying on Deutsch's estimates of the current cost of each proposed element in these rehabilitation programs, Raffa then calculates the total cost of each Plaintiff's program over the Plaintiff's remaining statistical life, discounted to present value. This is the "damages" testimony on which Plaintiffs rely. In his reports, Deutsch also presents a general description of the potential complications and costs of diabetes, but says he is not opining – and admits that he is not qualified to opine – that any of the Plaintiffs will suffer any such complications. Raffa does not include any of that information in his damages calculations.

As demonstrated below, the testimony of Plaintiffs' two putative "damages" experts should be excluded or otherwise limited. As a threshold matter, it bears noting that in all of these

---

[2] All of the materials referenced herein are attached as separate tabs in the Notice of Filing filed concurrently herewith and will be cited below as at "NF Tab___" respectively.

14144299.3

Plaintiffs' cases, testimony concerning damages is completely irrelevant unless and until Plaintiffs first prove that Seroquel *caused* their diabetes – something which, as noted, Deutsch and Raffa simply *assumed* and on which they offer no opinions of their own.  As set forth in AstraZeneca's other concurrently filed *Daubert* motions, Plaintiffs have no competent admissible evidence that can satisfy their burden to prove both specific medical causation and general medical causation.  *McClain v. Metalife Int'l, Inc.*, 401 F.3d 1233, 1237 (11th Cir. 2005). Thus, because the assumed "causation" on which these two damages experts rely does not exist, their damages testimony is irrelevant, cannot assist the trier-of-fact, and should be excluded under Federal Rules of Evidence 702, 401 and 403, and *Daubert*.[3]

Apart from this general ground for exclusion, the testimony of these two purported damages experts suffers from serious methodological flaws that independently require that the testimony either be excluded or substantially limited.

*First*, Deutsch is not a medical doctor and he lacks the qualifications to express opinions that include elements in a rehabilitation program for diabetes beyond a medical doctor's recommendation.  In an unrelated case, Magistrate Judge Baker rejected Deutsch's opinions because he had ventured into opinions as to a plaintiff's medical condition even though Deutsch "is not a physician."  The Court held that those opinions went beyond Deutsch's expertise as a "vocational rehabilitation expert."  *See Lozada v. Delta Family-Care Disability and Survivorship Plan*, 1998 U.S. Dist. LEXIS 11290 *12-13 (M.D. Fla. July 24, 1998).  Here, too, Deutsch has traveled beyond vocational rehabilitation and ventured into the proper treatment for a medical

---

[3] *See Torres-Ocasio v. Texaco Puerto Rico, Inc.*, 2007 WL 2245731, *5 (D.P.R. 2007) (excluding testimony of an economist whose opinions were based on the already excluded opinions of another expert); *Davidson v. United States*, 2007 WL 3251921 (E.D. Ky. 2007) (excluding testimony of an expert whose opinion was based purely on a life planner's already excluded opinion recommending mental stimulation care for a brain damaged child).

condition.  Accordingly, to the extent that his rehabilitation opinions are not supported by a medical doctor's recommendation, such testimony should be excluded.

*Second,* although Deutsch admits that his rehabilitation plans should not include costs for elements that would have existed even in the absence of diabetes, his methodology fails to provide the necessary information required to determine which elements should be excluded on this basis.  Deutsch himself could not fill this gap because he lacks the qualifications to do so: Not only is he not a medical doctor, he has no experience developing diabetes-specific rehabilitation plans and no experience with seriously mentally ill individuals such as these Plaintiffs.

*Third,* in deciding whether a particular element of rehabilitation was required *only* because of diabetes and whether to *expand* the elements of rehabilitation beyond those recommended by a medical doctor, Deutsch used a completely subjective, "black-box"[4] methodology that is not consistent, replicable or testable, and therefore under *Daubert,* is unreliable.  Based on that methodology, he includes case management conferences for 2 to 4 hours per month for life for five of the six Plaintiffs.  Yet, not one of those Plaintiffs' treating physicians or testifying experts recommended case management – this is something Deutsch, a non-medical doctor, came up with completely on his own.  Moreover, Deutsch admitted that, in his view, case management would be appropriate for these five Plaintiffs even apart from their diabetes -- so he cannot even link the substantial associated costs of this rehabilitation element solely to these Plaintiffs' diabetes.

---

[4] In computing, a *black box program* is one where the user cannot see its inner workings.  *See http://en.wikipedia.org/wiki/Black_box.  See also Schubert v. Nissan Motor Corp. in U.S.A.,* 148 F.3d 25, 32 (1st Cir. 1998) (affirming exclusion of expert testimony and citing with approval district court's declaration that "no black-box opinions will go to the jury").

14144299.3

*Fourth,* Deutsch has no first-hand knowledge of, and is not otherwise qualified to testify about, Plaintiffs' medical histories.  He of course is not any Plaintiff's treating physician.  Nor has he ever spoken with Plaintiffs' treating physicians, read these physicians' depositions, or even had access to Plaintiffs' full medical records.

*Fifth*, it is uncontested that Deutsch, as a non-medical doctor, is not qualified to testify about any future complications that may or may not result from Plaintiffs' diabetes.  Although Deutsch included a general description of such possible complications and average costs in each of his expert reports, he testified at his deposition that he is not opining – and that he is not qualified to opine – that it is more likely than not, let alone reasonably certain, that any Plaintiff would develop such complications.  Therefore, any testimony he may purport to give or that he may be asked to give as to possible complications or costs of diabetes for any of these Plaintiffs or in general would be irrelevant and excludable under Rules 702, 401 and 403, as well as *Daubert*.

*Finally*, because Raffa's testimony is entirely derivative of and dependant on the rehabilitation opinions of Deutsch, Raffa's testimony should likewise be excluded or accordingly limited.

## II.   ARGUMENT

### A.   The Legal Standards Governing Admissibility Of Expert Testimony Under *Daubert* And Federal Rule Of Evidence 702

Under Federal Rule of Evidence 702, expert testimony is admissible only if the witness is properly *qualified* by way of knowledge, skill, experience, training, or education to give the testimony that he purports to offer; and the testimony is not the subject of "subjective belief or unsupported speculation" but instead is "'based upon sufficient facts or data;'" and is "'the product of reliable principles and methods'" that the witness has applied "'reliably to the facts of

14144299.3

the case.'" *McClain v. Metalife Int'l, Inc.*, 401 F.3d 1233, 1237-38 (11th Cir. 2005) (quoting Fed. R. Evid. 702). The burden of laying the proper foundation for the admission of expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

*Daubert* charges this Court with a strict gate-keeping duty "to ensure that speculative, unreliable expert testimony does not reach a jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002); *Cayenta Canada, Inc. v. Orange Cty, Fla. Bd. of Cty. Comm'rs*, 2002 WL 34373972, *4 (M.D. Fla. Nov. 20, 2002) (Conway, J.). "Rulings on admissibility under *Daubert* inherently require the trial court to conduct an exacting analysis of the proffered expert's methodology." *McCorvey*, 298 F.3d at 1257. *Daubert* guarantees that any expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *McClain*, 401 F.3d at 1255 (quoting *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)).

"The importance of *Daubert*'s gatekeeping requirement cannot be overstated" given the "talismanic significance" that expert testimony can have "in the eyes of lay jurors." *United States v. Frazier*, 387 F.3d 1244, 1260, 1263 (11th Cir. 2004) (en banc); *see also Allison*, 184 F.3d at 1310 (emphasizing that *Daubert*'s "special gatekeeping role" is critical because juries are "less equipped than the judge to make reliability and relevance determinations and more likely than the judge to be awestruck by the expert's mystique"). As the Eleventh Circuit has held, a district court "abuses its discretion by failing to act as a gatekeeper." *McClain*, 401 F.3d at 1238.

This Court must engage in "a rigorous three-part inquiry" that requires Plaintiffs to show by a preponderance of the evidence that (1) each expert is qualified; (2) the expert's

methodology and opinions are reliable; and (3) the proposed expert testimony is relevant and assists the trier of fact. *Frazier*, 387 F.3d at 1260 (citation omitted).  Significantly, "the court must consider the testimony with the understanding that 'the burden of establishing qualification, reliability and helpfulness rests on the proponent of the expert opinion.'"  *McClain*, 401 F.3d at 1238 (quoting *Frazier*, 387 F.3d at 1260).

**B.      The Court Should Exclude Or Limit Deutsch's And Raffa's Testimony Because It Fails To Meet The Rule 702 and *Daubert* Standard**

As shown below, this Court should exercise its gatekeeper responsibilities and exclude the testimony of Deutsch and Raffa because their testimony fails, for multiple reasons, to meet the Rule 702 and *Daubert* standard.

**1.      Deutsch's Rehabilitation Opinions That Lack A Medical Doctor's Support Should Be Excluded**

Deutsch's rehabilitation plan for each Plaintiff consists of a list that includes six primary categories and various elements within each category.  These are: (1) therapeutic modalities (consisting of two elements: depression/anxiety counseling and case management conferences); (2) health care evaluations (e.g., addressing nutritional needs and driving limitations); (3) medical care (including visits to primary care physicians, podiatrists, endocrinologists, and lab testing); (4) prescribed medications; (5) supplies; and (6) health-strength maintenance (such as gym memberships).[5]

---

[5] *See generally* Expert Report of Paul Deutsch – Janice Burns, dated July 28, 2008 ("Deutsch Rpt. for Janice Burns")(NF Tab 3); Expert Report of Paul Deutsch – Connie Curley, dated July 29, 2008 ("Deutsch Rpt. for Connie Curley")(NF Tab 4); Expert Report of Paul Deutsch – Linda Guinn, dated July 30, 2008 ("Deutsch Rpt. for Linda Guinn")(NF Tab 5); Expert Report of Paul Deutsch – Eileen McAlexander, dated July 28, 2008 ("Deutsch Rpt. for Eileen McAlexander")(NF Tab 6); Expert Report of Paul Deutsch – Linda Whittington, dated July 30, 2008 ("Deutsch Rpt. for Linda Whittington")(NF Tab 7); Expert Report of Paul Deutsch – Richard Unger, dated July 31, 2008 ("Deutsch Rpt. for Richard Unger")(NF Tab 8).

14144299.3

Many elements of Deutsch's proposed rehabilitation plans lack the required and necessary medical doctor's support under Rule 702 and *Daubert*.  In fact, Deutsch not only attempts to make recommendations that no medical doctor has recommended, but in some instances his recommendations are in fact contrary to what a medical doctor has said.[6]  In addition, Deutsch failed to gather from Plaintiffs' doctors their view as to what elements of his rehabilitation plans were already required by the particular Plaintiff's other mental and physical health conditions, and instead made his own medical decisions as to what elements should or should not be excluded from his plan on that basis.  Deutsch seeks to offer these medical opinions, even though he is not a medical doctor, has never prepared a stand-alone diabetes "rehabilitation" program, and cannot support critical elements of his program with any scholarly or practical support.  Further, he follows no replicable or testable methodology in determining (1) whether a particular element should be included in the plan, (2) the frequency with which it would be required, and (3) the expected duration of use.

Thus, Deutsch's opinions on these elements are merely his subjective determinations and are insufficient under Rule 702 or *Daubert*.

> **a.    Absent A Medical Doctor's Support, Deutsch Lacks The Requisite Qualifications To Express Opinions Regarding An Appropriate Rehabilitation Plan For Diabetes**

It is a fundamental requirement that an expert must be "'qualified to testify competently regarding the matters he [or she] intends to address.'"  *Medina v. Louisville Ladder, Inc.*, 496 F.

---

[6] *E.g.*, Deposition of Paul Deutsch, taken October 7, 2008 ("Deutsch 10/07 Dep."), at 37:24-38:15 (NF Tab 2) (recommending nutritional evaluation for Plaintiff Guinn); *id.* at 92:1-94:4 (NF Tab 2) (recommending two to four visits per year to endocrinologist for Plaintiff Guinn when treating physician indicated he would need to reevaluate her before making a recommendation); *id.* at 221:1-225:3 (NF Tab 2) (recommending neurologist visits for Plaintiff Burns 12 times per year when treating physician recommended only one-fourth to one-third as many visits); *id.* at 197:4-198:4, 204:20-205:2 (NF Tab 2) (attributing costs of methadone and lyrica to diabetic neuropathy until a subsequent letter from Ms. Burns' physician convinced him to reduce his recommendation by at least 20 percent).

14144299.3

Supp. 2d 1324, 1327 (M.D. Fla. 2007) (Conway, J.) (quoting *United States v. Abreu*, 406 F.3d 1304, 1306 (11th Cir. 2005)).  In these cases, Deutsch has expressed opinions as to the appropriate rehabilitation plan for each Plaintiff with respect to his or her diabetes and has provided his estimate of the current cost associated for each element of the plan.  In this motion, AstraZeneca does not challenge those elements (or their costs) that have a medical doctor's support, such as a medical record in which the Plaintiff's doctor clearly ties a particular treatment or medication solely to the Plaintiff's diabetes and not to another mental or physical health condition.  But as indicated above and developed more fully below, Deutsch's opinions go well beyond this, journeying outside his own field and into the field of medicine even though he admitted in deposition that he is not qualified to do so.[7]  Under Rule 702, Deutsch lacks the necessary qualifications to express medical opinions.  *See Frazier*, 387 F.3d at 1263 n.16; *Medina*, 496 F. Supp. 2d at 1327 (excluding expert who had "no material background" on issue on which he sought to opine); *see also Copley v. Smith & Nephew, Inc.*, 2000 WL 223404, *3 (S.D. Tex. Feb. 2, 2000) (anesthesiologist not qualified to opine on orthopedic causation issues); *In re Orthopedic Bone Screw Products Liability Litig.*, 1997 WL 39583 (E.D. Pa. Jan. 23, 1997) (orthopedic bioengineer who lacked a medical degree was not qualified to testify on how the body responded medically to pedicle screws).

Deutsch is not a medical doctor.[8]  Rather, he holds a bachelor's degree in psychology, a master's degree in rehabilitation counseling and the "experimental analysis of behavior," and a doctorate in counseling psychology and counselor education (with an emphasis in rehabilitation

---

[7] *See* Deposition of Paul Deutsch, taken October 2, 2008 ("Deutsch 10/02 Dep."), at 50:12-18; 51:20-52:12 (NF Tab 1).

[8] *Id.* at 14:16-18, 46:22-47:2 (NF Tab 1).

and a sub-specialty in spinal cord injuries).[9]  His primary emphasis in his Ph.D. program was in rehabilitation and his sub-specialization was in spinal cord injuries.[10]

Deutsch also has no experience developing medical plans or rehabilitation plans for individuals who, like Plaintiffs, have severe, pre-existing mental health issues.[11]  He has never done rehabilitation plans for patients solely for the purpose of diabetes[12] or even where diabetes was the "primary diagnosis."[13]  Instead, more than 90% of his practice focuses on catastrophic disabilities "such as spinal cord injuries, severe brain injuries, multiple amputations."  As Deutsch agreed, Plaintiffs' diabetes is not a catastrophic disability, but instead is a "medical situation."[14]  Given his background, it is not surprising that, prior to his work on this litigation, the information Deutsch had in his files on diabetes "would not have been" sufficient to support his rehabilitation plan.[15]

Moreover, given this background, even if Deutsch were an expert in his chosen field of life care planning and rehabilitation planning for persons with catastrophic injuries, this would not qualify him as an expert in the treatment of diabetes, a medical condition.  "[T]hat a witness qualifies as an expert with respect to certain matters or areas of knowledge does not necessarily mean that he or she is qualified to express expert opinions as to other fields."  *Torres-Ocasio v. Texaco Puerto Rico, Inc.*, 2007 WL 2245731 (D.P.R. 2007) (internal citation omitted); *Norwest Bank, N.A. v. Kmart Corp.*, 1997 WL 33479072, *1 (N.D. Ind. 1997) (citing *Hardin v. Ski*

---

[9] *Id.* at 17:16-18:22 (NF Tab 1).

[10] *Id.* at 18:6-22 (NF Tab 1).

[11] *Id.* at 68:5-70:7, 137:11-139:1 (NF Tab 1).

[12] *Id.* at 68:5-70:7 (NF Tab 1).

[13] *Id.* at 68:14-69:16 (NF Tab 1).

[14] *Id.* at 9:20-10:21, 12:5-23 (NF Tab 1).

[15] *Id.* at 222:11-224:6 (NF Tab 1).

*Venture, Inc.*, 50 F.3d 1291, 1296 (4th Cir. 1995) ("Declaring him to be an expert is only the beginning, of course: the world's most respected cardiologist might not be qualified to testify about the operation of nuclear reactors, and the world's top nuclear physicist might not be qualified to value an injured person's lost future income."); *Calhoun v. Yamaha Motor Corp.*, 350 F.3d 316, 322 (3d Cir. 2003)(an "expert may be generally qualified but may lack qualifications to testify outside his area of expertise"); *McCullock v. H.B. Fuller Co.*, 981 F.2d 656, 657 (2d Cir. 1992)).

That basic principle was applied in *Israel v. Spring Indus., Inc.*, 2006 WL 3196956, *7 (E.D.N.Y. 2006) to exclude a life care planner's testimony, in part, because he had "no direct experience treating patients with allergies similar to" plaintiff's particular injuries. The same is true with respect to Deutsch here and the same result should follow.

Deutsch himself has recognized this principle in explaining *Daubert* issues to life care planners: "[S]tay within your field and you'll do fine."[16] But, as shown above, Deutsch did not follow his own advice here. In fact, this Court previously has concluded that Deutsch failed to "stay within [his] field" by attempting to offer medical – rather than vocational rehabilitation – opinions. *Lozada v. Delta Family-Care Disability and Survivorship Plan*, 1998 U.S. Dist. LEXIS 11290 *12-13 (M.D. Fla. July 24, 1998). In *Lozada*, Magistrate Judge Baker held that Deutsch's opinions as to the medical condition of a plaintiff who was denied long-term disability benefits should have been rejected by the administrators of his disability plan precisely because Deutsch "is not a physician and his area of expertise is that of a vocational rehabilitation expert." *Id.* at 12-13. Judge Baker's holding squarely applies here.[17]

---

[16] *Id.* at 62:24-64:10 (NF Tab 1).

[17] Although Deutsch does rehabilitation plans for the purpose of returning those with such catastrophic disabilities to the workforce, he acknowledged that this also did not apply to the situations here because

Deutsch lacks the knowledge, skill, experience, training, or education that would qualify him to express expert opinions, absent a medical doctor's recommendation, as to the appropriate elements of a rehabilitation plan for an individual with diabetes.  He also is not qualified to determine whether a given element of a rehabilitation plan should be charged to AstraZeneca because it relates solely to diabetes and would not be appropriate to treat the Plaintiff's pre-existing mental and physical health conditions.  Therefore, under Rule 702, those elements of his rehabilitation opinions that are not grounded in a medical doctor's recommendation should be excluded.

> **b.     Deutsch's Opinions That Are Based on a Flawed**
> **"Black Box" Methodology That Is Neither**
> **<u>Repeatable Nor Testable Should Be Excluded</u>**

In *Daubert*, the Supreme Court listed four nonexclusive factors that the trial court may consider in assessing reliability:  (1) whether the opinion at issue is susceptible to testing and has been subjected to such testing; (2) whether the opinion has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been accepted in the scientific community.  509 U.S. at 593-94.

The law is clear that speculative "*ipse dixit*" testimony must be excluded under *Daubert* and its progeny.  *See General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert."); *McClain*, 401 F.3d at 1243-44; *Frazier*, 387 F.3d at 1261; *Brown v. Bray & Gilespie III Mgmt. LLC*, 2008 WL 2397601, *6 (M.D. Fla. June 10, 2008); *see also Oddi v. Ford Motor Co.*, 234 F.3d 136, 156 (3d Cir. 2000)

---

each of the Plaintiffs already was disabled before contracting diabetes.  *Id.* at 8:11-9:19, 10:19-12:4 (NF Tab 1).

14144299.3

(affirming exclusion of expert testimony grounded on "haphazard intuitive inquiry" instead of reliable methodology); *Fuesting v. Zimmer, Inc.*, 421 F.3d 528 (7th Cir. 2005) (absence of studies, tests or experiments to validate expert testimony fails to satisfy reliability standard). Here, Deutsch's opinion that case management and other recommendations unsupported by a medical doctor's recommendation are warranted for Plaintiffs' diabetes – and thus that the cost of them is recoverable as damages in this litigation – is nothing more than inadmissible *ipse dixit* and those opinions should be excluded.

Deutsch concedes, as he must, that the *only* costs that can properly be included as damages in this matter are those that "specifically and solely result[] from diabetes,"[18] and that his "damages" "should not include cost[s] that would have been present in any instance."[19] Deutsch testified that, if a Plaintiff needed a particular rehabilitation treatment going forward but that need also existed prior to the onset of diabetes, the treatment should not be included "as an element of damage on which Raffa would make his calculations."[20] Simply put, a recovery in damages cannot be founded on costs that should have "occur[red] anyway."[21] *See also Israel*, 2006 WL 3196956, *7 (life care planner's opinion regarding life plan costs inadmissible because he failed to exclude costs for conditions that pre-existed plaintiff's exposure to defendant's product). However, Deutsch's methodology failed to comply with the framework he conceded he must follow.

While Deutsch reviewed the medical records of each Plaintiff as the starting point to determine which elements of his rehabilitation plan were to be included as "damages," he failed

---

[18] Deutsch 10/07 Dep. at 220:5-21 (NF Tab 2).

[19] Deutsch 10/02 Dep. at 174:11-175:12 (NF Tab 1).

[20] Deutsch 10/07 Dep. at 274:17-275:1 (NF Tab 2).

[21] Deutsch 10/02 Dep. at 58:15-19 (NF Tab 1).

to review *all* medical records associated with each Plaintiff.  Instead, he reviewed only those records that were cherry-picked by Plaintiffs' counsel.[22]   It was left to Deutsch, a non-medical doctor, to decide whether he had been provided all of the relevant records, and he assumed he had unless it was "clear" or "obvious" that some were missing.[23]   Courts have held that experts who base their opinions on a limited set of materials selected for them by counsel have not employed a reliable methodology.  *See Miller v. Pfizer, Inc.*, 196 F. Supp. 2d 1062, 1086-87 (D. Kan. 2002), *aff'd* 356 F.3d 1326 (10th Cir. 2004); *In re TMI Litig.*, 193 F.3d 613, 698 (3d Cir. 1999).

In a failed attempt to meet the *Daubert* requirements that his testimony be supported by a medical doctor's opinion, Deutsch sent a questionnaire to Plaintiffs' doctors asking certain questions concerning the Plaintiffs' recommended medical care.  But, as described in detail below,  Deutsch failed to ask the appropriate questions of these doctors, nor did he follow up with the doctors when they provided no answer or when the doctor gave an ambiguous or qualified answer.  Based on the responses to the questionnaires, Deutsch supplied his own medical judgment to determine what elements and costs were required only because of the diagnosis of diabetes and which costs would have been recommended regardless of that diagnosis.[24]

Deutsch's recommendations as to a rehabilitation plan for Plaintiff Guinn may be the most egregious example of Deutsch impermissibly making medical recommendations.  Deutsch received no responses to his questionnaire from Guinn's treating physicians,[25] and

---

[22] *Id.* at 118:10-122:7 (NF Tab 1).

[23] *Id.* at 123:18-124:14 (NF Tab 1).

[24] *Id.* at 177:12-178:12 (NF Tab 1).

[25] Deutsch 10/07 Dep. at 90:23-91:1 (NF Tab 2).

14

her endocrinologist stated that he would have to reevaluate her before responding.[26]  Despite having no medical doctor's support whatsoever, Deutsch nonetheless crafted a rehabilitation plan for her.

Even when a medical doctor did respond, the questionnaire did not ask the appropriate questions that would have provided Deutsch with the necessary information to determine which costs "would have been present in any instance" and, therefore, should not be included as an element of damages.[27]  In particular, the questionnaire asked the doctor to include all "medical recommendations *relating to* [the] diagnosis and treatment of diabetes," but did not ask the doctor to exclude those recommendations that would have been made whether or not the Plaintiff had diabetes.[28]  Thus, the questionnaire did not ask the Plaintiffs' doctors, the only individuals qualified to make such a determination, whether a particular recommendation "specifically and solely result[ed] from diabetes" or was one that "would have been present in any instance." Deutsch did not follow up with the Plaintiffs' doctors or read the doctors' depositions, but decided on his own that the doctors must have asked themselves the questions he failed to ask and must have "understood" that they were to exclude from their answers recommendations that would have been made even in the absence of diabetes.[29]

Deutsch's flawed methodology did not stop with his subjective decision-making regarding the completeness of the selected medical records or interpretation of answers to problematic questionnaires.  Instead, acting on his own and without any medical doctor's support – without even talking to the Plaintiffs' doctors or reading their deposition testimony, and

---

[26] *Id.* at 91:2-97:15 (NF Tab 2).

[27] Deutsch 10/02 Dep. at 174:11-175:12 (NF Tab 1).

[28] *Id.* at 177:12-178:11 (NF Tab 1); *see, e.g.,* Deutsch Ex. 39 (NF Tab 9).

[29] Deutsch 10/02 Dep. at 297:14-21, 126:15-128:4 (NF Tab 1); Deutsch 10/07 Dep. at 9:10-16 (NF Tab 2).

14144299.3

without sending his rehabilitation plans to the Plaintiffs' doctors for approval[30] – Deutsch made additional treatment recommendations that no medical doctor had made.

Under his therapeutic modality category of his reports, Deutsch recommended that five of the six Plaintiffs receive "case management" counseling.  For example, Deutsch recommended that Plaintiff Burns receive case management services for "[t]wo to four hours per month [which currently costs] $1,788 to $3,576 per year" for the remainder of her life.[31]  He made nearly identical recommendations for Plaintiffs Guinn, Curley, Whittington and McAlexander. Although no medical doctor had recommended or approved of case management services for any of these Plaintiffs,[32] Deutsch recommended the same level of case management for each of them based on his subjective belief that "if they understood better some of the issues that were related and were given the assistance in management, that they would address these more effectively."[33] Given the magnitude of his case management recommendations, the impact on the claimed damages for these five Plaintiffs is substantial.

Even apart from Deutsch's inability to ground case management in a medical doctor's recommendation, he could not provide any support for the nature and level of case management he included in his diabetic rehabilitation plans.[34]  In fact, at his deposition, Deutsch could not identify a single clinical guideline for diabetes, a scholarly publication,[35] or even his own experience or knowledge of what happens as a practical matter in the community to support his

---

[30] *See* Deutsch 10/02 Dep. at 127:2–128:4, 131:8-14 (NF Tab 1); Deutsch 10/07 Dep. at 9:10-16; 245:10 – 246:4; 133:15-17 (NF Tab 2).

[31] Deutsch Rpt. for Janice Burns, p. 25 (NF Tab 3).

[32] *See, e.g.,* Deutsch 10/02 Dep. at 179:2-12 (NF Tab 1);  Deutsch 10/07 Dep. at 227:6-228:19; 242:16-243:5; 246:23-247:18; 290:16-291:1 (NF Tab 2).

[33] Deutsch 10/02 Dep. at  228:22-230:3 (NF Tab 1).

[34] *Id.* at 207:10-208:24 (NF Tab 1).

[35] Deutsch 10/07 Dep. at 74:3-75:17 (NF Tab 2).

purported opinions in this regard. Deutsch conceded that he could not name a single hospital or insurance company that recommends monthly case management visits *for the rest of the patient's life* or even for two to four hours per month for some shorter duration.[36] In fact, Deutsch's sole example in support of his alleged opinion was that of Aetna, which provides case management "by telephone with … one or two calls a month"[37] Moreover, Deutsch himself testified that he has never successfully justified case management at two-to-four hours per month for diabetes alone to any third party payor (such as an insurance company).[38]

Nor were Deutsch's case management recommendations based on the results of any scientific testing. Although Deutsch did conduct psychological testing of each Plaintiff, he infused his own subjective medical opinions into the results. Thus, in explaining why he did not include case management in the recommendations for Plaintiff Unger, as he had for the other Plaintiffs, Deutsch admitted that, based on the results of those tests, he probably would have included case management in his rehabilitation plan but decided not to do so because he took into account judgments he had formed as the result of his "clinical interview." He explained that Plaintiff Unger's clinical interview "played a significant role" in his decision not to include case management "and in interpreting the test results as well,"[39] but he could provide no real

---

[36] Deutsch 10/02 Dep. at 212:6-213:8 (NF Tab 1).

[37] *Id.* at 210:17-211:12 (NF Tab 1).

[38] Deutsch 10/07 Dep. at 83:19-24 (NF Tab 2).

[39] *Id.* at 320:7-23; *accord id.* at 153:18-154:11 (NF Tab 2). As with case management, Deutsch made other recommendations for rehabilitation that were not founded on a doctor's recommendation. *See, e.g., Id.* at 37:24-38:15; 93:9-94:4 (NF Tab 2) (nutritional evaluation and two-to-four visits per year to an endocrinologist for Guinn), *id.* at 221:1-224:19 (NF Tab 2) *(*twelve visits per year to a neurologist for Burns); *id.* at 310:13-312:21 (NF Tab 2) (Ativan for Alexander in connection with anxiety related to self injections but which medical records indicated she was taking prior to her diabetes); *id.* at 147:20-150:14 (NF Tab 2) (four-to-six visits per year to a podiatrist for Unger); *id.* at 259:10-260:19 (NF Tab 2)(two visits per year to a podiatrist for Whittington). In reaching these decisions, Deutsch often relied on the statements made to him by the Plaintiffs as to their understanding as to what was needed, without confirming that with their doctors, even though, as he recognized, a patient's understanding of what

specific reason why.   This kind of subjective, black box determination by a non-medical doctor underscores the problem with Deutsch's methodology and its lack of reliability, testability, and consistency.

Finally, Deutsch admits that, in his view, each of the five Plaintiffs for whom he recommended this therapeutic modality had a preexisting need for it.[40]  For example, with respect to Plaintiff Burns, Deutsch testified that, if she had presented to him pre-diabetes but with all of her risk factors, he would have recommended case management along the lines recommended in his report.[41]  Deutsch provided similar opinions with respect to Plaintiffs Curley,[42] Guinn,[43] Whittington,[44] and McAlexander.[45]  Moreover, as to Curley, he agreed that the "main focus" of the case management in his rehabilitation plan would be on the co-morbidities she had *before* contracting diabetes.[46]  Despite this, however, Deutsch offered no real explanation as to why he nevertheless included case management services as an element of damages for these Plaintiffs, having previously explained that only those elements specifically and solely related to their diabetes should be included.  When confronted with the direct contradiction between what he said he did and what he actually did, Deutsch could only offer

---

treatment he has received, as well as when and why, "can easily be different than what the doctor's thinking" because doctors "don't break it down that clearly to a patient, particularly [for patients] whose understanding is going to be somewhat limited."  *Id.* at 204:2-12 (NF Tab 2).

[40]Deutsch 10/02 Dep. at 234:19-236:13 (NF Tab 1); Deutsch 10/07 Dep. at 62:19-63:18 (NF Tab 2).

[41] *Id.* at 189:7-18 (NF Tab 2).

[42] Deutsch 10/02 Dep. at  283:19-286:20 (NF Tab 1).

[43] Deutsch 10/07 Dep. at 53:9-54:12, 32:11-21 (NF Tab 2).

[44] *Id.* at 254:5-21 (NF Tab 2).

[45] *Id.* at 317:9-17, 304:22-305:22 (NF Tab 2).

[46] Deutsch 10/02 Dep. at 295:10-23, 293:15-23 (NF Tab 1).

14144299.3

that, in his view, these Plaintiffs – having now contracted diabetes – needed the counseling even more than before.[47]

The inscrutability of Deutsch's approach is also apparent in the inconsistent manner in which he handled his two elements under therapeutic modalities -- "individual counseling" for anxiety and depression (which he recommended for all six Plaintiffs) and case management (which, as discussed above, he recommended for all Plaintiffs except Unger).  He excluded any cost for anxiety and depression counseling because, in his view, it was required for each of the six Plaintiffs prior to the onset of diabetes and any diabetes-specific counseling would simply be worked into what already existed.[48]  As noted, he included the cost for case management even though, in his view, there was a pre-existing need for this modality based on each of the five Plaintiffs mental and physical condition apart from any diabetes.  Obviously, there is no principled basis for including the costs of one therapeutic modality element as part of damages, but excluding the cost of the other, when the expert himself testified that both were appropriate pre-onset of diabetes.

All of the foregoing highlights the serious methodological flaw in Deutsch's approach.  As these examples illustrate, Deutsch's methodology lacks reliability across his

---

[47] Deutsch 10/02 Dep. at 287:2-292:6 (NF Tab 1); Deutsch 10/07 Dep. at 53:9-62:17 (NF Tab 2).  As with case management, Deutsch often failed to account for other treatments that were – or should have been – occurring prior to the onset of diabetes.  Thus, for Unger, he attributed the cost of evaluating whether he is subject to driving limitations to the diabetes even though the health-related complaints Unger was making prior to the onset of diabetes would have caused him to recommend such an evaluation.  Deutsch 10/07 Dep. at 103:4-104:7; 112:9-113:2 (NF Tab 2).  Likewise, in his report for Burns, Deutsch attributed the costs of her Methadone and Lyrica solely to her diabetic neuropathy.  *Id.* at 200:14-201:10 (NF Tab 2).  A subsequent letter from Burns' doctor convinced Deutsch that his attribution failed to account for her need for these medications unrelated to her diabetes, and therefore he acknowledged a need to reduce this recommendation by at least 20% and perhaps in full if the prescription had not changed from what was needed pre-onset.  *Id.* at 197:4-199:17; 204:20-205:2 (NF Tab 2).

[48] Deutsch Rpt. for Janice Burns, at 25 (NF Tab 3); Deutsch Rpt. for Linda Guinn, at 26 (NF Tab 5); Deutsch Rpt. for Eileen McAlexander, at 28 (NF Tab 6); Deutsch Rpt. for Linda Whittington, at 18, (NF Taab 7); Deutsch Rpt. for Connie Curley, at 20 (NF Tab 4).

14144299.3

recommendations.  In analogous situations, courts have found that this kind of subjective

methodology fails to satisfy Rule 702 and *Daubert* and should be excluded.

      For example, in *Norwest Bank v. Kmart Corp.*, 1997 WL 33479072 (N.D. Ind. 1997), the

court excluded the testimony of a life planner who provided a "forecast" of future medical

expenses for a plaintiff who had suffered brain injuries.  As here, the court noted that the expert's

"forecasts" were not based on a medical doctor's testimony but were instead based on the

experts' own subjective judgment.  *Id.,* *4.  As here, the planner  could not even cite to any

literature in the field supporting his opinion.  *Id.*  And as here, the expert could not relate his

opinion to a scientific principle known in the literature.  *Id.*, *5.  His opinion was based solely on

"his years of experience in the field."  *Id.*  In the absence of a link between the expert's opinion

and a scientific principle, the court found his opinions unreliable under *Daubert*:

> "It is impossible to say that any principle underlying [the expert's] opinions
> concerning medical needs has been subjected to peer review, or its error rate established,
> because the opinions are based solely upon the judgmental skills [the expert] has
> developed in his years of experience."

*Id.*, *6.

      The basis for excluding Deutsch's testimony is substantially stronger than in *Norwest*.

As in *Norwest*, Deutsch's opinion is based on subjective judgment, is not supported by any

literature in the field and is not related to any scientific principle known in the literature.

Further, unlike the expert in *Norwest*, Deutsch does not have "years of experience" developing

diabetes related rehabilitation plans.  Indeed, until these cases, he has never created a

rehabilitation plan involving the primary care of diabetes.  *See supra at 10.*  Thus, even more so

than in *Norwest*, Deutsch's opinion should be excluded.

      Similarly, in *Elcock v. Kmart Corp.*, 233 F.3d 734 (3d Cir. 2000), the Third Circuit

vacated a district court's decision to admit the testimony of a vocational rehabilitation expert

who opined that the plaintiff was 50-60% disabled.  The court determined that his technique

failed to satisfy the *Daubert* reliability test because the expert "never explained his method in

rigorous detail" and it would have been "nearly impossible" for the defendant's experts to repeat

his "subjective methods." *Id.* at 747.  Nor did the Plaintiff introduce evidence that his method

was "referenced in the vocational rehabilitation literature." *Id.* at 749.  Thus, as here, the expert

failed to prove that his method was generally accepted and that there was any relationship

between his method and "methods which have been established to be reliable." *Id.* at 748.

Likewise, in *Davidson v. United States, Dept. of Health and Human Servs.*, 2007 WL

3251921 (E.D. Ky. 2007) the plaintiff submitted the expert opinion of a life care planner that a

severely brain damaged child should recover damages for the cost of neural stimulation therapy.

After the defendant objected to the specific provider of such therapy as being "controversial," the

plaintiff substituted local community based therapists as the providers under the life care plan.

The court nonetheless excluded the testimony because the plaintiff failed to provide any basis to

"demonstrate that [the] reasoning and methodology are based on valid science." *Id.  See also

Oddi*, 234 F.3d at 158 (excluding expert testimony because the expert used "little, if any

methodology, beyond his own intuition").

The same is true here.  Deutsch could not provide any legitimate scientific basis for his

recommendations.  He had no methodology other than his own subjective view that these

rehabilitation elements were appropriate.  As in *Elcock* and *Davidson*, his subjective opinion

with respect to these elements is unsupported by a medical doctor's testimony and should be

excluded.

Under this Circuit's precedent, "any step that renders the analysis unreliable under the

*Daubert* factors renders the expert's testimony inadmissible." *McClain*, 401 F.3d at 1245

14144299.3

(quoting *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002)). Here, Deutsch opines about medical recommendations that have no medical doctor's support; and he subjectively determines, without a medical doctor's recommendation or approval, which elements of the Plaintiffs' rehabilitation plans were unrelated to Plaintiff's pre-existing medical conditions and should therefore be included in the damage calculations. Deutsch's methodology is unreliable and cannot be replicated or tested because of its subjectivity. As such, it is not reliable under the Rule 702 and *Daubert* standard and should be excluded.

### 3. To The Extent That Deutsch's Testimony Is Excluded, Raffa's Entirely Derivative Testimony Must Be Excluded As Well

As discussed above, Raffa's testimony is entirely derivative of Deutsch's opinions (which, as noted, are themselves derived from the legally deficient causation opinions of other experts). Raffa merely calculates the present value of the future costs of the elements in each of Deutsch's rehabilitation plans. Without Deutsch's opinions, Raffa would have no opinions at all. Therefore, to the extent Deutsch cannot, consistent with *Daubert* and its progeny, offer his opinions regarding these elements, Raffa's opinions as to the discounted value of the future costs of such elements are irrelevant and excludable. Accordingly, under *Daubert,* Raffa should not be permitted to offer such testimony. *See Davidson v. United States*, 2007 WL 3251921 (E.D. Ky. 2007) (excluding testimony of an expert whose opinion was based purely on a life planner's already excluded opinion recommending mental stimulation care for a brain damaged child); *Torres-Ocasio*, 2007 WL 2245731, *5 (excluding testimony of an economist whose opinions were based on the already excluded opinions of another expert).

### C. Deutsch Should Not Be Allowed to Testify as to the Plaintiffs' Medical Histories

Deutsch's testimony and documentation pertaining to Plaintiffs' medical histories was

founded on information obtained from Plaintiffs' past recollections and his review of medical

records selected by attorneys for the Plaintiffs. Deutsch did not discuss the Plaintiffs' medical

histories with their respective doctors or family members, has not treated any of the Plaintiffs,

and did not have access to the entirety of the Plaintiffs' medical histories. Deutsch should not be

allowed to testify as to the Plaintiffs' medical histories.

"A testifying expert cannot be a mere conduit for another non-testifying expert." *State of*

*Miss. ex rel. Miss. Highway and Transp. Comm'n v. Modern Tractor and Supply Co.*, 839

S.W.2d 642, 655. The regurgitation of medical advice received from doctors is nothing more

than inadmissible hearsay. *See id. citing Chicago & Illinois Midland v. Crystal Lake*, 588 N.E.2d

337 (Ill. App. 3 Dist. 1992) ("[i]f the testifying expert merely acts as a conduit for another non-

testifying expert's opinion, the 'expert opinion' is hearsay and is inadmissible"). The mere

recital of factual information does not provide any probative value for the trier of fact and is an

improper function of the expert witness. Thus, Deutsch's testimony relating to Plaintiffs'

medical histories should be excluded.

### D. Deutsch's Testimony About Future Complications From Diabetes Is Incompetent And Irrelevant, And Should Be Excluded

Although Deutsch admits that he lacks the knowledge base to address the "complications

of diabetes" that may occur if the disease is not controlled,[49] he nonetheless includes in each of

his reports an "appendix" consisting of two "boilerplate" statements that he has retrieved from

publicly available sources regarding the possible "complications of diabetes" and the average

"costs of diabetes".[50] Deutsch admits, however, that: (1) these statements were only included in

---

[49] *See* Deutsch 10/02 Dep. at 243:21-244:21, 249:6-250:25, 253:17-254:5 (NF Tab 1).

[50] *Id.* at 240:15-241:7, 254:6-17, 256:7-19 (NF Tab 1); *see also* Deutsch Rpt. for Janice Burns, at 27-31 (NF Tab 3); Deutsch Rpt. for Linda Guinn, at 27-30 (NF Tab 5); Deutsch Rpt. for Eileen McAlexander, at

14144299.3

his reports for what he calls "educational purposes;" (2) he has made no rehabilitation recommendations based on these possible complications; (3) he does not intend to opine that these are the possible complications of diabetes that any specific Plaintiff will or may develop; and (4) he did not include these complications (or the average costs) in the costs Raffa was to use in determining damages.[51] Deutsch confirms all of this by stating that, unless a doctor testifies "within a reasonable degree of medical certainty" that a "specific type of complication is about to occur or will occur for an individual, I can't include the cost."[52]

Since there is no medical doctor's testimony that a Plaintiff is about to or will encounter any of these complications, Deutsch's "educational" observations as to the possible complications of diabetes are wholly irrelevant and singularly unhelpful to the trier-of-fact. As such, they fail to meet the standard set by Rule 702 and *Daubert* and should be excluded in the event Deutsch purports to offer them or the Plaintiffs seek to elicit them.[53] Not only does Deutsch have no basis or qualifications to offer such testimony, any such opinions would also be irrelevant because, under Florida law, damages for risk of future injury are not even recoverable in the absence of proof that such injury is *reasonably certain* to occur. *See Eagle-Picher Indus., Inc. v. Cox*, 481 So. 2d 517, 523-24 (Fla. App. 1986); *Petito v. A.H. Robbins Co.*, 750 So. 2d 103, 108 (Fla. App. 1999); *see also Merced v. Oazi*, 811 So. 2d 702, 705 (Fla. App. 2002).

## III.    CONCLUSION

---

31-34 (NF Tab 6); Deutsch Rpt. for Linda Whittington, at 20-23 (NF Tab 7); Deutsch Rpt. for Connie Curley, at 22-26 (NF Tab 4); Deutsch Rpt. for Richard Unger, at 25-28 (NF Tab 8).

[51] Deutsch 10/02 Dep. at 241:8-242:17, 249:6-250:25, 253:17-254:17 (NF Tab 1).

[52] *Id.* at 240:15-242:17 (NF Tab 1).

[53] Some of the complications Deutsch lists would not even be possible for a particular plaintiff even though they appear in his report. For example, plaintiff Curley cannot contract gum disease because her teeth were pulled. Deutsch 10/02 Dep. at 254:22-256:6 (NF Tab 1). Moreover, even as a general matter, Deutsch's lacks the qualifications to educate a jury on the medical complications of diabetes. *See supra* at pp. 6-10.

For the reasons set forth in AstraZeneca's other concurrently filed *Daubert* motions, Plaintiffs have no competent admissible evidence that can satisfy their burden to prove both specific and general medical causation. There is therefore no basis for reaching the question of damages. Accordingly, the Court should exclude Deutsch and Raffa in their entirety because their opinions and testimony rest on causation assumptions that lack support.

In the event Deutsch and Raffa are not excluded in their entirety, the Court should enter an order as follows:

Deutsch's opinions and testimony regarding case management should be excluded. The record undisputedly shows that Plaintiffs have not – and cannot – meet their burden of establishing that, at the time Deutsch prepared his reports, case management was recommended at all by any medical doctor for these Plaintiffs, let alone that it was recommended solely for the treatment of diabetes. To the contrary, this was Deutsch's recommendation alone, which he made without any medical doctor's support and which he viewed as something that would be appropriate for these Plaintiff even in the absence of diabetes.

As to Deutsch's opinions and testimony regarding any other recommended rehabilitation element, these also must be excluded unless Plaintiffs establish that, when he rendered his reports, Deutsch had a medical doctor's recommendation supporting that element and that it was intended solely for diabetes treatment and not for the Plaintiff's pre-existing mental or physical health conditions.

Further, Deutsch's testimony should be excluded with respect to possible future complications of diabetes, as well as the average cost of diabetes, since there is no evidence establishing that it is reasonably certain or even likely that any of the Plaintiffs will suffer from these complications, and since Deutsch concedes he is not qualified to render any such opinions.

14144299.3

In addition, since Deutsch, as a non-medical doctor, also lacks expertise to testify as to the Plaintiffs' medical histories, any testimony he would offer in this regard should also be excluded.

Finally, because Raffa's testimony is entirely derivative of Deutsch's testimony, to the extent elements in the rehabilitation plans have been excluded from Deutsch's testimony, Raffa should not be permitted to testify as to their associated future or present value costs.

DATED:  November 3, 2008

Respectfully submitted,

*Chris S. Coutroulis*

Chris S. Coutroulis
Florida Bar Number 300705
Robert L. Ciotti
Florida Bar Number 333141
Carlton Fields, P.A.
Corporate Center Three at International Plaza
4221 W. Boy Scout Blvd.
Tampa, Florida  33607
Telephone:  (813) 223-7000
Facsimile:  (813) 229-4133
ccoutroulis@carltonfields.com
rciotti@carltonfields.com

*Steven B. Weisburd*

Steven B. Weisburd
DECHERT LLP
300 West 6th Street, Suite 1850
Austin, TX  78701
Telephone: (512) 394-3000
Facsimile: (512) 394-3001
steven.weisburd@dechert.com

Stephen J. McConnell
DECHERT LLP
2929 Arch Street
Philadelphia, PA  19103
Telephone: (215) 994-4000
Facsimile: (215) 994-2222
stephen.mcconnell@dechert.com

*Counsel for AstraZeneca Pharmaceuticals LP
and AstraZeneca LP*

## CERTIFICATE OF SERVICE

I hereby certify that, on November 3, 2008, pursuant to a service agreement with

Plaintiffs' counsel, I e-mailed an electronic copy of the foregoing brief, filed under seal, to the

individuals identified on the attached service list.  I further certify that at the same time, I sent a

hard copy of all exhibits cited in the foregoing brief, also filed under seal, via Federal Express

for overnight delivery to the individuals identified on the attached service list.


Attorney

<u>**SERVICE LIST**</u>

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No. 1769**

| | |
|---|---|
| Camp Bailey, Esq.<br>Bailey Perrin Bailey LLP<br>The Lyric Centre<br>440 Louisiana, Suite 2100<br>Houston, TX 77002<br>Telephone: (713) 425-7240<br>cbailey@bpblaw.com<br>***Plaintiffs' Lead Counsel*** | Larry Roth, Esq.<br>Law Offices of Larry M. Roth, P.A.<br>Post Office Box 547637<br>Orlando, FL 32854-7637<br>Telephone: (407) 872-2239<br>LROTH@roth-law.com<br>***Plaintiffs' Liaison Counsel*** |