UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE: Seroquel Products Liability Litigation

MDL DOCKET NO. 1769

This document relates to:

| | |
|---|---|
| **Linda Guinn** | 6:07-cv-10291 |
| **Janice Burns** | 6:07-cv-15959 |
| **Richard Unger** | 6:07-cv-15812 |
| **Connie Curley** | 6:07-cv-15701 |
| **Linda Whittington** | 6:07-cv-10475 |
| **Eileen McAlexander** | 6:07-cv-10360 |
| ~~Sandra Carter~~ | ~~6:07-cv-13234~~ |
| ~~Clemmie Middleton~~ | ~~6:07-cv-10949~~ |
| ~~Hope Lorditch~~ | ~~6:07-cv-12657~~ |
| **David Haller** | 6:07-cv-15733 |
| ~~Charles Ray~~ | ~~6:07-cv-11102~~ |
| ~~William Sarmiento~~ | ~~6:07-cv-10425~~ |

## OMNIBUS LEGAL MEMORANDUM IN SUPPORT OF ASTRAZENECA'S SUMMARY JUDGMENT MOTIONS IN THE FLORIDA TRIAL POOL "GROUP ONE" CASES

Pursuant to this Court's Order dated August 1, 2008 (Doc. No 1059), defendants AstraZeneca LP and AstraZeneca Pharmaceuticals LP ("AstraZeneca") submit this Omnibus Legal Memorandum to set forth the legal framework and overarching arguments in support of AstraZeneca's dispositive motions filed in the "Group One" Florida Trial Pool cases.

### I. INTRODUCTION

After months of considering the utility of test cases and a bellwether program, the Court and the parties agreed to an Initial Florida Trial Pool program to gain a clear understanding of the actual cases in this MDL. With discovery completed in the first twelve

based on (1) a mere "temporal relationship" between use of the product and injury, *Baker v. Danek Med.*, 35 F. Supp. 2d 875, 879 (N.D. Fla. 1998); *Alexander*, 37 F. Supp. 2d at 1350, or (2) the assertions of experts either that defendant's product "can cause" injury or death, *Blinn*, 55 F. Supp. 2d at 1361, or that the reported "rate" of injuries from use of defendant's product "is significantly higher than the rate" of injuries from use of other competing products. *Edgar*, 1999 WL 1054864, at **2, 4; *Cornelius*, 2004 WL 48102, at *5 (summary judgment on "design defect" claim; all drugs have "certain risks," but that does not make them "defective").

Plaintiffs' experts suggest that Seroquel has not in their view been proven "more effective" than other FDA-approved first and second generation antipsychotic drugs, and that they believe other competing FDA-approved antipsychotic drugs "may" have a lesser reported risk of weight gain, diabetes and hyperglycemia.[55] Yet even plaintiffs' experts do not dispute that prescribing physicians *need to have a wide array* of different antipsychotic medications available as *options* to treat patients' serious mental illnesses and other conditions due to the tremendous variance in patient responses to different antipsychotic drugs.[56] Moreover, plaintiffs' prescribers repeatedly testified in deposition that they *continue to prescribe* Seroquel for many patients because, in their independent medical judgment, its

---

[55] Plunkett Report, at 9-10 (Exh. 39); *see also, e.g.*, Marks Dep., at 435:13-436:5 (other atypical antipsychotics "might" have been better choices because they "may not have the same metabolic effects as Seroquel") (Exh. 45).

[56] For instance, the medical provider who prescribed Seroquel for plaintiff David Haller to control his violent and criminal sexually deviant behavior testified that Seroquel was effective for Mr. Haller while other antipsychotic medications were not. *See* Deposition of Dee Burke, dated Aug. 9, 2008, at pp. 43:4-56:22, 99:11-100:7, 114:2-115:5 (Exh. 42). Remarkably, *plaintiff's counsel* told Mr. Haller to stop taking Seroquel, even though it was the only drug that helped him control his anti-social behavior, because they said it would "hurt [his] case if [he] stayed on Seroquel." Deposition of David Haller, dated July 15, 2008, at 111:22-112:17 (Exh. 43).