# EXHIBIT E – Part 3

CONFIDENTIAL



REDACTED

Page 8 of 9

MDL-WhittingtonL-0710475
0000371-CONFIDENTIAL

CONFIDENTIAL

| A | B | C | D | E | F | G | H | I | J | K | L | M | N |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SHIPPED_YEAR | SHIP_DATE | REP_NAME | SAMPLE_CARD_ID | CONTACT_ID | FULL_NAME | ADDRESS_LINE_1 | ADDRESS_LINE_2 | CITY | STATE_CODE | POSTAL_CODE_FIVE | PRODUCT_ID | PRODUCT_DESCRIPTION | PRODUCT_QUANTITY |

REDACTED

Page 9 of 9

MDL-WhittingtonL-0710475
0000372-CONFIDENTIAL

# EXHIBIT E

CONFIDENTIAL

| | A | B | C | D | E | F | I | J | K | L | M | N | O | P | Q | R | S | T | U |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | PREP_ITEM_ID | ENTRY_EMPLID | CONTACT_ID | FIRST_NAME | LAST_NAME | PAYEE_ADDRESS_LINE_1 | PAYEE_CITY | PAYEE_STATE | PAYEE_ZIP | APPROVER_ROLE | APPROVER_ID | BRAND_ID | BRAND_NAME | FINANCE_TYPE_CODE | PROGRAM_TYPE | COMPENSATION | PROGRAM_DATE | PREP_CATEGORY | TALK_TOPIC |
| 1 | 102665991016 | 40061289 | 85201015 | Richard | Malcolm | 1408 San Marco Blvd | Jacksonville | FL | 32207 | DSM | 40006500 | 390006 | Seroquel | 202 | Tutorial | 300 | 07/12/2005 | Central Nervous System | |
| 2 | | | | | | | | | | | | | | | | | | | |

Page 1 of 1

MDL-WhittingtonL-0710475
0000373-CONFIDENTIAL

CONFIDENTIAL

| | A | B | C | D | E | F | G | H | I | J | K | L |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | First Name | Middle Name | Last Name | Activity Title | Activity ID | Activity Type Code | Venue | Venue Type | City | State | Program Start Date | Program End Date |
| 2 | RICHARD | D. | MALCOLM | Psychiatry Series: New Insights in the Treatment of Bipolar Depression: VOL. 1 | 5906794 | SP | Matthew's | REST | Jacksonville | FL | 3/8/2007 18:30 | 3/8/2007 20:30 |
| 3 | RICHARD | D. | MALCOLM | Psychiatry Series: New Insights in the Treatment of Bipolar Depression: VOL. 1 | 769372 | RSP | Bistro Aix | REST | Jacksonville | FL | 11/29/2006 18:30 | 11/29/2006 20:30 |
| 4 | RICHARD | D. | MALCOLM | Burden Of Akathisia | 723042 | RSP | Ruth's Chris Steak House | REST | Jacksonville | FL | 2/2/2006 18:30 | 2/2/2006 20:30 |
| 5 | RICHARD | D. | MALCOLM | Psychiatry Series: New Insights in the Treatment of Bipolar Depression: VOL. 1 | 5906793 | SP | Matthew's | REST | Jacksonville | FL | 3/8/2007 18:30 | 3/8/2007 20:30 |
| 6 | RICHARD | D. | MALCOLM | Optimizing Therapy: Opportunities to Enhance Medication Adherence | 5920356 | SP | Wine Cellar | REST | Jacksonville | FL | 8/23/2007 18:30 | 8/23/2007 20:00 |
| 7 | RICHARD | D. | MALCOLM | Psychiatry Series: New Insights in the Treatment of Bipolar Depression: VOL. 1 | 772523 | SP | Wine Cellar | REST | Jacksonville | FL | 1/10/2007 18:30 | 1/10/2007 20:30 |
| 8 | RICHARD | D. | MALCOLM | Burden Of Akathisia | 747639 | RSP | Morton's Steakhouse- Jacksonville | REST | Jacksonville | FL | 6/1/2006 18:30 | 6/1/2006 20:00 |

MDL-WhittingtonL-0710475
0000374-CONFIDENTIAL

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE:  Seroquel Products Liability Litigation

MDL Docket NO. 1769

This Document Relates to:

Linda Whittington v. AstraZeneca Pharmaceuticals LP, et al.

CASE NUMBER:  6:07-cv-10475

---

### AstraZeneca's First Supplemental Disclosure of Available Case Specific Discovery Information and Documentation for RICHARD MALCOLM Pursuant to Case Management Order Nos. 4 and 5 for Plaintiff LINDA WHITTINGTON

---

Defendants AstraZeneca Pharmaceuticals LP and AstraZeneca LP ("AstraZeneca")

provided plaintiffs with a disclosure on June 13, 2008 that included data AstraZeneca identified

based on searches of relevant systems for "Richard Malcolm."  This supplement provides

additional data, including:

I.      Call Note and Detail Information – Exhibit A

II.     AstraZeneca Sponsored Events – Attendance and Speaker Program Reports – Exhibit B

Dated: September 16, 2008

*Russell O. Stewart* /MTF

Russell O. Stewart
Nadia G. Malik
Faegre & Benson LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, Colorado  80203
Telephone:  (303) 607-3500
Facsimile:   (303) 607-3600
E-Mail:  rstewart@faegre.com
　　　　 nmalik@faegre.com

Fred Magaziner
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA  19104-2808
Telephone:  (215) 994-4000
Facsimile:  (215) 994-2222
E-Mail:  fred.magaziner@dechert.com

*Counsel for AstraZeneca Pharmaceuticals*
*LP and AstraZeneca LP*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of September, 2008, I caused to be served a true and correct copy of the foregoing on K. Camp Bailey, Esq., Plaintiffs' Counsel, and Larry Roth, Plaintiffs' Liaison Counsel, via electronic mail and first-class mail.  Service on Plaintiffs' Liaison Counsel constitutes service on all unrepresented plaintiffs.

*Russell O. Stewart* /MTF

Russell O. Stewart
Nadia G. Malik
Faegre & Benson LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO  80203-4532
(303) 607-3500

*Counsel for Defendants AstraZeneca*
*Pharmaceuticals LP and AstraZeneca LP*

**EXHIBIT A**

CONFIDENTIAL

| | A | B | C | D | E | F | G | H | I | J | K | L | M | N | O | P | R | S | T | U | V | W | X | Y |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | ACTID | ACTDATE | ACCTID | USERTERRHISTID | USERID | ACCTTYPE | TERRITORYID | REP_FIRST_NAME | REP_LAST_NAME | REP_MIDDLE_NAME | NOTEID | HCP_FIRST_NAME | HCP_LAST_NAME | HCP_MIDDLE_NAME | HCP_NAME | HCP_ADDRESS1 | HCP_CITY | HCP_STATE | HCP_ZIP | PROD_CODE | PRODUCT | PROD_Message/Indication | Reprints/Promo Items | NOTETEXT |
| 2 | 755500976 | 11/23/1998 | 755499308 | 474228 | 36242 | PROF | 510806 | Randy | Miley | M | 755500844 | DAN | MALCOLM | | ACT | 1220 WILLIS AVE. | DAYTONA BEACH | FL | 32114 | 271M | Seroquel Major | Psychotic Disorders | | |
| 3 | 755501376 | 04/16/1999 | 755499308 | 474228 | 36242 | PROF | 510806 | Randy | Miley | M | 755501229 | DAN | MALCOLM | | ACT | 1220 WILLIS AVE. | DAYTONA BEACH | FL | 32114 | 271M | Seroquel Major | Psychotic Disorders | | |
| 4 | 755501639 | 05/12/1999 | 755499308 | 474228 | 36242 | PROF | 510806 | Randy | Miley | M | 755501449 | DAN | MALCOLM | | ACT | 1220 WILLIS AVE. | DAYTONA BEACH | FL | 32114 | 271M | Seroquel Major | Psychotic Disorders | | |
| 5 | 755502184 | 11/11/1999 | 755499308 | 474228 | 36242 | PROF | 510806 | Randy | Miley | M | 755501959 | DAN | MALCOLM | | ACT | 1220 WILLIS AVE. | DAYTONA BEACH | FL | 32114 | | | | | Practicing with Dr. Raimondo as well. Nasrallah's 1st line comments, Reinstein's article, Quest Info. INC/Same. |

MDL_WhittingtonL_0710475
0000375_CONFIDENTIAL

CONFIDENTIAL

| | A | B | C | D | G | H | I | J | K | L | M | N | O |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | CONTACT_ID | FULL_NAME | CONTACT_TYPE | ADDRESS_LINE_1 | CITY | STATE | ZIPCODE | REP_NAME | CALL_DATE | CALL_TYPE | CALL_NOTES | PRODUCT | PRODUCT_MESSAGE |
| 2 | 89169101 | MALCOLM, DAN | Unknown | 1220 WILLIS AVE. | DAYTONA BEACH | FL | 32114 | Miley, Randy M. | 11/11/1999 | Appt. - Sit Down/Detail | Practicing with Dr. Raimondo as well. Nasrallah's 1st line comments, Reinstein's article, Quest info. NC/Same. | Seroquel | Psychotic Disorders |

REDACTED

MDL_WhittingtonL_0710475
0000376_CONFIDENTIAL

**EXHIBIT B**

CONFIDENTIAL

|   | A | B | C | D | E | F | G | H |
|---|---|---|---|---|---|---|---|---|
| 1 | Nomination Type | Level | Brand | Status | Nominated By | Date Nominated | Specialty | IsAlternate |
| 2 | 2007 Speaker | Local | Seroquel | Approved | Allan Smith | 8/15/2006 7:28 | | FALSE |
| 3 | 2006 Speaker | Local | Seroquel | Approved | Allan Smith | 1/6/2006 14:43 | | FALSE |
| 4 | 2005 Speaker | Local | Seroquel | Pending | Keith McKeen | 10/29/2004 16:38 | | TRUE |

Page 1 of 1

MDL_WhittingtonL_0710475
0000377_CONFIDENTIAL

# Preferred Method of Contact Information

Listed below is the current contact information we have for you. If you would like to change this information, please use the area below and resubmit with the attached signed agreement.

Richard Malcolm
1408 San Marco Blvd
Jacksonville, FL 32207
Phone:
Fax:
Email:



*852010150*

**Note: Please type or print neatly**

| M | a | l | c | o | l | m | | | R | i | c | h | a | r | d | | | | | | | | | | | | | | | |

Last Name (Legal Name)　　　　　　　First Name　　　　　　　Degree

Company Name/Institution

| 1 | 7 | 2 | 1 | | E | a | s | t | | B | a | y | | C | i | r | c | l | e | | | | | | | | | | |

Street Address (Where meeting information should be sent — **NO PO BOXES**)

| O | r | a | n | g | e | | P | a | r | k | | | | | | | | | | | F | L | | 3 | 2 | 0 | 7 | 3 | - | |

City　　　　　　　State　　　　　　　　　　　　　　Zip Code

| 9 | 0 | 4 | | 5 | 3 | 7 | - | 0 | 0 | 3 | 6 | | | | | | | | | - | | | |

Business Phone Number　　　　　　　Business Fax Number

REDACTED

E-mail

Languages: ☐ Spanish ☐ Chinese – Mandarin ☐ Hindi ☐ Russian ☐ Other _____

Your signature is required on page 8 of the agreement. Additional information is required on pages 1 and 7. If you are a Federal Government Employee, you will also need to sign attachment C, page 11. Please return the completed agreement that is attached to this form in the return Federal Express envelope with the circular AstraZeneca sticker and keep the second copy for your records. If you have any questions please call 888-AZHELPU / (888) 294-3578.

MDL_WhittingtonL_0710475
0000378_CONFIDENTIAL

## SPEAKER SERVICES AGREEMENT

This Speaker Services Agreement (this "**Agreement**") is made effective as of January 24, 2006 (the "**Effective Date**"), by and between *[AstraZeneca LP] [AstraZeneca Pharmaceuticals LP]*, a Delaware limited partnership with offices at 1800 Concord Pike, Wilmington, Delaware 19803 ("**AstraZeneca**") and Richard Malcolm , an individual with a principal place of business at The Center for Medicine and Psychiatry 1408 San Marco Blvd Jacksonville, FL 32207 ("**Professional**").

**Background**: AstraZeneca wants to use the services of Professional in order to obtain the benefit of the experience and ability of Professional. Professional wants to render such services to AstraZeneca and will devote Professional's best efforts to the services that are to be provided to AstraZeneca.

1. **Services.** AstraZeneca retains Professional to provide the services set forth on Attachment A (the "Services"). Professional will use *Professional's* best efforts in the performance of the Services and will perform such Services diligently and conscientiously with the highest professional standards and in compliance with all applicable laws, regulations and AstraZeneca policies. Professional will not use subcontractors for the purpose of performing the Services.

Attached to this Agreement is a copy of the AstraZeneca Commitment to Responsible Sales and Marketing Practices (Attachment B). This document summarizes the standards that all AstraZeneca employees must adhere to when interacting with healthcare professionals. Professional agrees that in providing services to AstraZeneca Professional will accommodate the efforts of AstraZeneca to ensure compliance with these standards.

2. **Compensation.** In return for the Services performed under this Agreement, AstraZeneca will pay to Professional reasonable fair market value compensation, the amount of which will be agreed upon in writing when each speaking event or speaker training program is scheduled. Details of the programs at which Professional will speak will be set forth in a confirmation letter provided by AstraZeneca for each program.

3. **Expenses.** Professional will furnish, at Professional's own expense, any and all materials, equipment, services or supplies necessary or useful to successfully completing the Services. AstraZeneca will reimburse Professional for authorized reasonable and necessary expenses Professional incurs in performing the Services, provided that Professional provides AstraZeneca with satisfactory documentation, including original receipts, for such expenses. In no event will Professional incur any expenses that exceed one thousand dollars ($1,000) for any one item or five thousand dollars ($5,000) in the aggregate in any month without prior written consent from AstraZeneca. At no time will AstraZeneca reimburse Professional for expenses related to (a) travel or subsistence expenses for spouses or guests; (b) secretarial or word

Agreement Effective through December 31, 2006

1



MDL_WhittingtonL_0710475
0000379_CONFIDENTIAL

processing services; (c) staff services; (d) computer time; (e) express delivery services; (f) facsimile charges, or (g) photocopying in excess of ten cents per page.

4. **Method of Payment.** AstraZeneca will issue a check to Professional for the amount due to Professional for Services rendered and expenses incurred within sixty (60) days after receipt of satisfactory supporting documentation. AstraZeneca will have no obligation to reimburse Professional for authorized expenses that are not submitted within ninety (90) days after the date Professional incurred such expense. Professional acknowledges and agrees that the fees and expenses set forth in Sections 2 and 3 hereof represent AstraZeneca's full and complete obligation for the Services to be rendered, and expenses incurred, by or on behalf of Professional under this Agreement.

5. **Independent Contractor.**

(a) Professional agrees that Professional is acting as an independent contractor in performing the Services and for all other purposes under this Agreement and that the relationship between Professional and AstraZeneca will not constitute a partnership, joint venture or agency. Professional is not an employee, agent or legal representative of AstraZeneca and has no authority to represent AstraZeneca or to enter into any contracts or assume any liabilities on behalf of AstraZeneca. PROFESSIONAL AGREES THAT NEITHER THIS AGREEMENT NOR THE SERVICES PERFORMED HEREUNDER WILL ENTITLE PROFESSIONAL TO PARTICIPATE IN OR ACCRUE OR RECEIVE BENEFITS UNDER ANY PENSION PLAN, DEFERRED CONTRIBUTION PLAN, HEALTH PLAN, LIFE INSURANCE PLAN, OR DISABILITY PLAN, ANY OTHER EMPLOYEE BENEFIT PLAN (AS DEFINED BY THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974), OR ANY ARRANGEMENT, PROGRAM, OR POLICY MAINTAINED BY ASTRAZENECA THAT PROVIDES EMPLOYEE BENEFITS. IN ADDITION, IN THE EVENT PROFESSIONAL IS RECLASSIFIED BY ANY COURT OR AGENCY TO BE AN EMPLOYEE OF ASTRAZENECA, PROFESSIONAL HEREBY EXPRESSLY WAIVES ALL RIGHTS TO PARTICIPATE IN THE PLANS AND ARRANGEMENTS REFERENCED ABOVE FOR THE TERM OF THIS AGREEMENT.

(b) Professional will be solely and unconditionally responsible for paying any and all city, state and federal taxes and assessments, including, without limitation, all income, social security withholding and self-employment taxes, relating to any income or other consideration that Professional derives from this Agreement.

6. **Training.**

(a) Regulatory. Prior to performing any of the Services hereunder, Professional will successfully complete the AstraZeneca regulatory training program and any other required training as AstraZeneca shall advise. Upon signing this Agreement, Professional agrees to promptly complete the training program and certify successful completion in accordance with the instructions provided.

MDL_WhittingtonL_0710475
0000380_CONFIDENTIAL

(b)   Other.   In addition to the regulatory training required under Section 6(a) above, prior to performing any of the Services hereunder, Professional will successfully complete such product and/or disease state training as required by AstraZeneca. Such training may be provided online, at in-person training sessions or via such other media as identified by AstraZeneca, and will include, but not be limited to, review of all approved product-specific presentation material and frequently asked questions developed by AstraZeneca.

7.    **Confidential Information.**   Professional acknowledges and agrees that Professional will have access to, or become acquainted with, Confidential Information of AstraZeneca in the performance of the Services. For purposes of this Agreement, "Confidential Information" will mean all confidential, proprietary, or trade secret information, property, or material of AstraZeneca and any derivatives, portions, or copies thereof, including, without limitation, information resulting from or in any way related to (i) the Services; (ii) the business practices, plans, or relationships of AstraZeneca; and (iii) any other information or material that AstraZeneca designates as Confidential Information. Confidential Information does not include information that (a) Professional can prove by competent evidence was known to Professional prior to the Effective Date and that was not subject to confidentiality restrictions; (b) was lawfully obtained from a third party without any confidentiality obligations; or (c) is or becomes part of the public domain through no violation of any confidentiality obligation. Professional will keep all Confidential Information in strict confidence and will not, at any time during or for ten (10) years after the expiration or earlier termination of this Agreement, without the prior written consent of AstraZeneca, disclose, publish, disseminate or otherwise make available, directly or indirectly, any item of Confidential Information to anyone. Professional will use the Confidential Information only in connection with the performance of the Services hereunder and for no other purpose.

8.    **Equitable Relief.**   Professional recognizes that any threatened breach or breach of Sections 7 or 11 of this Agreement will cause irreparable harm to AstraZeneca that is inadequately compensable in damages and that, in addition to other remedies that may be available at law or equity, AstraZeneca is entitled to injunctive relief for such a threatened or actual breach.

9.    **Term and Termination.**      The Term of this Agreement is not for less than one (1) year and will commence as of the Effective Date and terminate on March 31, 2006, unless terminated earlier as provided by this Agreement. AstraZeneca may terminate this Agreement at any time either upon its determination that such termination is in its best interest, or in the event of Professional's failure to comply with any of the provisions set forth herein. If AstraZeneca terminates by reason of its best interest, AstraZeneca will pay Professional for all expenses reasonably and necessarily incurred in accordance with this Agreement prior to the date of termination (provided that such expenses cannot be canceled or recovered by Professional from third parties), less any payments made by AstraZeneca to Professional pursuant to this Agreement; provided, however that no such payment will be made if AstraZeneca terminates this Agreement by reason of Professional's failure to comply with any of the provisions set forth herein. Any such payment for expenses under this Section 9 will be contingent upon receipt of

Agreement Effective through December 31, 2006

MDL_WhittingtonL_0710475
0000381_CONFIDENTIAL

satisfactory documentation by AstraZeneca that such expenses have been incurred and are not cancelable or recoverable, and in no event will it exceed the limits provided for herein.

10. **Program Cancellation**.  If a program for which Professional was to provide Services is canceled by AstraZeneca less than seven (7) business days prior to the program, AstraZeneca will pay Professional for the Services in connection with such program.

11.  **Representations, Warranties and Covenants of Professional.**   Professional represents, warrants and covenants that:

(a)    Professional is qualified by training and experience to perform the Services and is free to enter into this Agreement and perform the Services.  Professional's participation in the proposed health education activity, the retention of Professional by AstraZeneca and Professional's performance of the Services do not and will not (i) create any conflict of interest with respect to Professional's employment or other activities, or (ii) breach any agreement that obligates Professional to keep in confidence any trade secrets or confidential information of Professional or of any other party or to refrain from competing, directly or indirectly, with the business of any other party;

(b)    entering into this Agreement and performing the Services hereunder does not and will not cause Professional to be in non-compliance with any policy or procedure of any institution or entity by which he or she is employed, and that such institution has no financial, proprietary or other interest in (i) the Services that Professional is conducting, (ii) the fees that are being paid to Professional for the performance of the Services, or (iii) the results of the Services;

(d)    Professional will perform the Services in compliance with all applicable federal, state and local laws and regulations and Professional will comply with AstraZeneca's Commitment to Responsible Sales and Marketing Practices, a copy of which is set forth on Attachment B;

(e)    Professional acknowledges and confirms that Professional was selected to provide the Services because of Professional's expertise in the relevant subject matter and presentation qualifications, and not, in any way as an inducement to, or in return for prescribing, purchasing, recommending, using, obtaining preferential formulary status or dispensing of an AstraZeneca product, and

(f)    Professional will complete the regulatory training prior to providing any of the Services and all other training required by AstraZeneca prior to any presentations.

(g)    Professional will comply with the following during any presentation that includes a discussion of products:

Agreement Effective through December 31, 2006

4

MDL_WhittingtonL_0710475
0000382_CONFIDENTIAL

*(i)    Professional's remarks will conform to the approved labeling for any product discussed.   If in response to questions from the audience, Professional believes it is essential to discuss information that does not conform to approved labeling, Professional will emphasize that fact to the audience, provide a brief response and promptly direct the discussion back to areas that conform to the approved labeling.*

(ii)    Professional will focus the presentation on the educational needs of the audience.

(iii)    To the extent that drugs are discussed, Professional's presentation will be balanced and will discuss both their risks and benefits.

(iv)    Professional's presentation will not be false or misleading in any manner.

(v)    Professional will discuss only marketed products and not products under investigation.

(vi)    Professional will conduct each presentation based on a topic selected by AstraZeneca and will utilize outlines and slides provided by AstraZeneca.  Any slides, other than slides provided by AstraZeneca, that refer or relate to AstraZeneca products may only be used if approved by AstraZeneca in advance of their use in any presentation by Professional.

(vii)    Supplemental anecdotal clinical experience and unsupported opinion will not form a significant part of Professional's presentation and disease state information must be based on a complete and accurate discussion of science generally accepted in the medical community.

(vii)    Professional will disclose to the audience the role of AstraZeneca in the design of the program and its financial support.

12.    **Federal Government Employees (FGEs).**  If Professional is employed on a full- or part-time basis by or is providing services to any federal government agency, department or branch, including but not limited to: National Institutes of Health, Department of Veterans Affairs, or Military Treatment Facilities, before providing any of the Services Professional will complete the AstraZeneca Government Employee/Services Provider Form set forth on Attachment C (the "Form").   The Form confirms that: (a) the FGE's participation in the proposed health education activity does not create any apparent or real conflict of interest with the FGE's employment with or services to the federal government; (b) any payment for services or other compensation given to the FGE does not constitute a prohibited gift; and (c) any compensation given to the FGE does not constitute compensation or payment to the FGE relating to Professional's official duties.  No payment will be due from AstraZeneca unless the completed

MDL_WhittingtonL_0710475
0000383_CONFIDENTIAL

Form has been provided to AstraZeneca by Professional. Professional will immediately notify AstraZeneca of any changes regarding Professional's employment status with regard to the federal government

13.   **Regulatory Inspections.**  If any governmental or regulatory authority (a) contacts Professional with respect to the Services or (b) takes, or gives notice of its intent to take, any other regulatory action alleging improper or inadequate practices with respect to any activity of Professional, Professional will notify AstraZeneca within three (3) business days after such contact or notice, or sooner if necessary to permit AstraZeneca to be present at, or otherwise participate in, any such regulatory action with respect to the Services, and will supply AstraZeneca with all information pertinent thereto. AstraZeneca will have the right to be present at and to participate in any such regulatory action with respect to the Services. Professional will provide AstraZeneca with copies of all documentation issued by any governmental or regulatory authority in connection therewith and any proposed response thereto. No such response will include any false or misleading information with respect to the Services or AstraZeneca.

14.   **Debarment.**   Professional represents, warrants and covenants that Professional (a) is not excluded, debarred, suspended or otherwise ineligible to participate in Federal health care programs, Federal procurement, or non-procurement programs; (b) has not been convicted of a criminal offense that is governed by 42 U.S.C. § 1320a-7(a); or (c) otherwise is disqualified or suspended from performing the Services or otherwise subject to any restrictions or sanctions by the FDA or any other governmental or regulatory authority or professional body with respect to the performance of the Services (a "**Debarred Person**"). Professional will immediately notify AstraZeneca in writing if Professional is or becomes a Debarred Person or if any action, suit, claim, investigation, or other legal or administrative proceeding is pending or, to the best of Professional's knowledge, threatened, that would make any person performing services hereunder a Debarred Person or would preclude Professional from performing the Services.

15.   **Assignment.**  Neither party will assign this Agreement without the prior written consent of the other party, which consent will not be unreasonably withheld; provided, however, that AstraZeneca will have the right to assign or otherwise transfer this Agreement to its Affiliates or to any successor in interest.

16.   **Amendment; Waiver.**   This Agreement may be amended only by a written instrument signed by the parties hereto. Each party will have the right to enforce the provisions of this Agreement in strict accordance with its terms. The failure of either party at any time to enforce its rights hereunder strictly in accordance with the same will not be construed as having created a custom contrary to the specific provisions hereof or as having in any way modified or waived same.

17.   **Governing Law.**  This Agreement and the rights and obligations of the parties hereunder will be governed by and construed under the laws of the State of Delaware without reference to its principles of choice of law. All disputes pertaining to this Agreement will be

MDL_WhittingtonL_0710475
0000384_CONFIDENTIAL

decided by a state or federal court located in Wilmington, Delaware, and Professional hereby consents to personal jurisdiction in such courts.

18. **Notices.**

    (a)    Any notice that is required or permitted hereunder will be deemed given only if delivered personally or sent by facsimile (with transmission confirmed) or by registered or certified mail, return receipt requested and postage prepaid, or by a nationally recognized overnight delivery service, addressed to the parties at their respective addresses first set forth below or to such other addresses at which notice of change will have been given.

    (b)    AstraZeneca and Professional hereby agree that by providing their mailing address, e-mail address and facsimile numbers as set forth below, each party consents to receive communications sent by or on behalf of the other party via direct mail, e-mail and/or facsimile to such addresses.

AstraZeneca
c/o Discovery Chicago:

Professional:
RICHARD MALCOLM

Address:    see 18c below    REDACTED

E-mail:    see 18c below    REDACTED

Facsimile #:    see 18c below

    (c)    Professional will address any questions concerning this Agreement or the Services to the Discovery Chicago for AstraZeneca, toll-free at 1-888-AZHELPU (294-3578), facsimile at (866) 885-1103, email at azhelpu@mededgroup.com, with written correspondence to Discovery Chicago for AstraZeneca, 35 West Wacker, Suite 2200, Chicago, IL 60601, or such other contact as AstraZeneca may advise in writing.

19. **Entire Agreement.** This Agreement, including Attachment A and Attachment B hereto, sets forth and constitutes the entire agreement and understanding between the parties with respect to the subject matter hereof and all prior agreements, understanding, promises and representations, whether written or oral, with respect thereto are superseded hereby.

20. **Severability.** The provisions of this Agreement will be several. Invalidity or unenforceability of one provision will not affect any other provision of this Agreement.

21. **Survival.** The respective rights and obligations of the parties set forth in this Agreement will indefinitely survive the expiration or termination of this Agreement to the extent necessary to the intended preservation of such rights and obligations.

22. **Headings.** The headings in this Agreement are for convenience only and do not in any way limit or amplify their terms in this Agreement.



MDL_WhittingtonL_0710475
0000385_CONFIDENTIAL

23.    **Use of Name**. Professional will not mention or otherwise use the name of AstraZeneca (or any abbreviation or adaptation thereof) in any publication, press release, promotional material or other form of publicity without the prior written approval of AstraZeneca in each instance.

24.    **Counterparts**. This Agreement may be executed in two or more counterparts, each of which will be deemed an original and all of which will together be deemed to constitute one agreement.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the Effective Date.

[PROFESSIONAL]                              [ASTRAZENECA LP]
                                            [ASTRAZENECA PHARMACEUTICALS LP]
By: _____            By: _____

Name: _____RICHARD MALCOLM_____            Name: John J. Devlin IV

Title: _____         Title:  Director of Advocacy Development

Date: _____2-13-2006_____

MDL_WhittingtonL_0710475
0000386_CONFIDENTIAL

## Attachment A

### Services

Services to be provided:

I.      Training

- Speaker Training: Professional will actively participate in speaker training programs as required by AstraZeneca, which may include, but not be limited to, training on regulatory rules, disease state, AstraZeneca drug specific content and presentation skills.  Such programs may be provided online, at in-person training sessions or via such other medium as AstraZeneca identifies.

II.     Presentations

- At AstraZeneca's request, Professional will conduct such number of presentations as are mutually agreed upon by Professional and AstraZeneca.  Details concerning such presentations shall be as confirmed in writing.

All services and other deliverables provided by Professional shall be furnished to AstraZeneca in a form and with content acceptable to AstraZeneca in its sole discretion. AstraZeneca will make no payments due under this Agreement for services or deliverables it deems unacceptable or that are not delivered on time.  Time is of the essence.

Agreement Effective through December 31, 2006

MDL_WhittingtonL_0710475
0000387_CONFIDENTIAL

**Attachment B**

# AstraZeneca Commitment to Responsible Sales and Marketing Practices

*Our company is dedicated to discovering and marketing new medicines designed to improve the health and quality of life of patients around the world. This is a mission that carries with it a responsibility to conduct business in a manner that ensures that we continue to be welcomed as a valued and trusted member of the scientific, healthcare and global communities. We place great value on the quality of our relationships with healthcare professionals. Individual integrity, ethical conduct and full compliance with the many laws and regulations that govern the healthcare community in the United States are essential constituents of these relationships. To help ensure that our sales and marketing practices are conducted in a responsible manner, we make the following commitments:*

**PhRMA Code**
We comply with the PhRMA Code on Interactions with Healthcare Professionals. Our relations with healthcare professionals focus on the meaningful exchange of medical information, enhancement of the practice of medicine and patient health.

**Support for Medical Education**
We support medical education through grants to appropriate institutions or entities, not to individuals or physician practices. Where applicable, grants comply with ACCME and FDA guidelines, and we have no influence over the content of the program or the selection of speakers. AstraZeneca funds may not be used to pay for the costs of travel, lodging or other personal expenses of non-faculty healthcare professionals attending educational conferences or meetings.

**Meals, Gifts and Entertainment**
We will pay for a modest meal with a healthcare professional if the meal occurs in the context of providing medical information. Because these meals are intended to facilitate a professional discussion, spouses or guests may not attend. Gifts or entertainment, of any kind, are not permitted. Items primarily for the benefit of patients or to enhance the practice of medicine may be offered to healthcare professionals if they are not of substantial value and offered infrequently.

**Compensation for Services**
We compensate healthcare professionals for legitimate and bona fide services provided a signed contract exists and compensation is at fair market value. Healthcare professionals who speak on behalf of AstraZeneca receive training on FDA regulatory requirements.

**Product Discussions**
We provide objective and balanced information about our products that complies with FDA regulations and conforms to the full prescribing information approved by the FDA. We do not promote off-label uses for our products, and take appropriate measures to ensure that any healthcare professionals engaged as speakers do the same.

**Patient Privacy**
AstraZeneca respects the personal health information of consumers. AstraZeneca does not disclose or otherwise use such personal health information without consent.

**Samples**
We distribute samples in compliance with regulations to provide an opportunity for the physician and patient to determine tolerability and effectiveness in an appropriate patient. Samples may never be resold, redistributed or submitted for payment.

If you have questions or concerns relating to AstraZeneca marketing practices, please contact your AstraZeneca sales representative. You may also send e-mail to Compliance.Connection@AstraZeneca.com

David Brennan
*President & CEO*

Glenn Engelmann
*VP, General Counsel & Compliance Officer*

Agreement Effective through December 31, 2006

10

MDL_WhittingtonL_0710475
0000388_CONFIDENTIAL

**Attachment C**

## *2006 Federal Government Employee/Service Provider Form*

**(NOTE: THIS FORM MUST BE RETURNED TO AstraZeneca LP TOGETHER WITH THE EXECUTED AstraZeneca LP SPEAKER AGREEMENT)**

I, _____ , have decided to accept the following:

*(Circle all that apply)*    **Compensation/ Speaker Expenses**

from AstraZeneca LP ("AstraZeneca") in consideration for my providing professional services to AstraZeneca in 2006 under the terms and conditions set forth in the speaker agreement by and between you and AstraZeneca, dated _____ .

I declare, after appropriate review and inquiry, that my participation in the AstraZeneca speaker programs in 2005 presents no real or apparent conflict of interest with my work or provision of services to the Federal government and that the compensation or speaker expenses would not constitute a prohibited gift or unlawful compensation or payment to a government employee for performing official duties.  I also declare that the speaking or other activities that I will perform under this Federal Government Employee/Service Provider Form do not relate to my official Government duties.  I agree only to accept reasonable compensation, travel, lodging, and subsistence expenses for any programs that I conduct under this Federal Government Employee/Service Provider Form.

I do hereby certify to AstraZeneca that my participation in the AstraZeneca speaker programs in 2006 and that my acceptance of the compensation and speaker expenses described above have been approved by the my supervisor as evidenced by the signature of that official set forth below.

Signature of Federal
Government Employee: _____

Printed Name: _____

Social Security Number: _____

Address: _____

Telephone: _____

Fax: _____

ACKNOWLEDGED AND APPROVED:

Signature of Supervisor
of Employee: _____

Printed Name: _____

Title: _____

Address: _____

Telephone: _____

Fax: _____

Agreement Effective through December 31, 2006



MDL_WhittingtonL_0710475
0000389_CONFIDENTIAL