# EXHIBIT G – Part 3

## Professional Detail Report                                    ViewPoint

### Person Details

**Mohamed O Saleh, MD**

Center for Medicine and Psychiatry
P.O. Box 10339
Jacksonville, FL 32247

**SFA ID:** 711381004

**Person Type:** Professional

**Languages:** Arabic
Italian
Spanish

### Identifiers

| Identifier Type | Value | Qualifier |
|---|---|---|
| Primary SFA Customer ID | 711381004 | |
| DEA | AS2550071 | |
| DEA | BS1436066 | |
| HMSID | PIF0FPH6D4 | |
| IMS DR | 0731268 | |
| ME NUMBER AS PROVIDED BY AMA. 11 DIGITS | 56101790156 | |
| Medical Education Number | 5610179015 | |
| MEDICARE UNIQUE PHYSICIAN IDENTIFIER NUMBER | D61065 | |
| State License Number | 0000011784 | Nevada |
| State License Number | 0000043827 | Florida |

### Brand Snapshot

| Brand | KOL Level | Speaker | Media Trained | Presentation Trained | Do Not Use |
|---|---|---|---|---|---|
| Seroquel | | | ☐ | ☐ | |
| Global Seroquel | | | ☐ | ☐ | |

### Address

| Address 1 | Address 2 | City | State | Zip | Country | Type |
|---|---|---|---|---|---|---|
| 1408 San Marco Blvd | | Jacksonville | FL | 32207 | US | Invalid |
| Center for Medicine and Psychiatry | P.O. Box 10339 | Jacksonville | FL | 32247 | US | Speaker |
| Center for Medicine and | P.O. Box 10339 | Jacksonville | FL | 32247 | US | LBX |

*Powered by* ViewPoint   CONFIDENTIAL - © Copyright 2008 AstraZeneca Pharmaceuticals LP. All rights reserved.

MDL-WhittingtonL-0710475
000247-CONFIDENTIAL

## Professional Detail Report 

Psychiatry

## Contact Numbers

| Number | Type | Contact |
|---|---|---|
| (904) 346-0887 | Fax | |
| (904) 398-0009 | Business | |
| 904-346-0887 | Speaker Fax | |
| 904-346-0887 | Fax | |
| 904-398-0009 | Speaker Phone | |
| 904-398-0009 | Business | |

## Email Addresses

**Email Address**

REDACTED

## Activity History

| Brand | Activity Name | Activity Date | Program Name | Role | Invited | Attended |
|---|---|---|---|---|---|---|
| Seroquel | Regional Speaker Program | 2/24/2005 | | Speaker | Yes | Yes |
| Seroquel | Roundtable | 5/5/2005 | | Speaker | Yes | Yes |
| Seroquel | Roundtable | 5/19/2005 | | Speaker | No | Yes |
| Seroquel | Roundtable | 6/16/2005 | | Speaker | Yes | Yes |
| Seroquel | Regional Speaker Program | 7/21/2005 | | Speaker | Yes | Yes |
| Seroquel | Balancing The Goals - Efficacy and Tolerability Considerations When Treating Patients with Acute Bipolar Mania | 8/25/2005 6:30:00 PM | | Speaker | Yes | No |
| Seroquel | Balancing The Goals - Efficacy and Tolerability Considerations When Treating Patients with Acute Bipolar Mania | 9/15/2005 6:30:00 PM | | Speaker | Yes | No |
| Seroquel | Talk Title: Dosing Considerations When Treating Acute Bipolar Mania with a Psychotropic | 10/6/2005 6:30:00 PM | | Speaker | Yes | Yes |
| Seroquel | Balancing The Goals - Efficacy and Tolerability Considerations When Treating Patients with Acute Bipolar Mania | 10/11/2005 12:00:00 PM | | Speaker | Yes | No |

Powered by ViewPoint   CONFIDENTIAL - © Copyright 2008 AstraZeneca Pharmaceuticals LP. All rights reserved.

MDL-WhittingtonL-0710475
000248-CONFIDENTIAL

## Professional Detail Report

| | | | | | |
|---|---|---|---|---|---|
| Seroquel | Balancing The Goals - Efficacy and Tolerability Considerations When Treating Patients with Acute Bipolar Mania | 10/11/2005 6:30:00 PM | Speaker | Yes | No |
| Seroquel | Balancing The Goals - Efficacy and Tolerability Considerations When Treating Patients with Acute Bipolar Mania | 10/13/2005 6:30:00 PM | Speaker | Yes | Yes |
| Seroquel | Burden Of Akathisia | 2/23/2006 6:30:00 PM | Attendee | Yes | Yes |
| Seroquel | Balancing the Goals - Outcomes and Tolerability Considerations When Treating Patients with Schizophrenia | 2/24/2006 12:00:00 PM | Speaker | Yes | Yes |
| Seroquel | Tolerability of Quetiapine | 3/30/2006 6:30:00 PM | Speaker | Yes | Yes |
| Seroquel | Burden Of Akathisia | 6/1/2006 6:30:00 PM | Speaker | Yes | Yes |
| Seroquel | Agitation and Violence in Psychiatric Patients | 9/28/2006 6:30:00 PM | Speaker | Yes | Yes |
| Seroquel | Psychiatry Series: Schizophrenia - Treating the Whole Person | 5/24/2007 7:30:00 AM | Speaker | Yes | Yes |
| Seroquel | Psychiatry Series: Schizophrenia - Treating the Whole Person | 5/24/2007 12:00:00 PM | Speaker | Yes | Yes |
| Seroquel | Psychiatry Series: New Insights in the Treatment of Bipolar Depression: VOL. 1 | 5/24/2007 6:30:00 PM | Speaker | Yes | Yes |
| Crestor | Effectiveness of Statin Therapy in Treating Hypercholesterolemia in Patients with Metabolic Syndrome | 6/14/2007 6:30:00 PM | Attendee | Yes | Yes |
| Seroquel | SCORE - SChizOphREnia: A Discussion of Efficacy and Effectiveness Studies | 6/14/2007 6:30:00 PM | Speaker | Yes | Yes |
| Seroquel | Psychiatry Series: New Insights in the Treatment of Bipolar Depression: Highlights | 1/22/2008 6:30:00 PM | Speaker | Yes | No |
| Seroquel | Psychiatry Series: New Insights in the Treatment of Bipolar Depression: Highlights | 2/12/2008 6:30:00 PM | Speaker | Yes | No |
| Seroquel | Psychiatry Series, Clinical Insights in the Treatment of Bipolar Depression | 2/26/2008 6:30:00 PM | Speaker | Yes | No |

Powered by ViewPoint   CONFIDENTIAL - © Copyright 2008 AstraZeneca Pharmaceuticals LP. All rights reserved.

MDL-WhittingtonL-0710475
000249-CONFIDENTIAL

## Professional Detail Report                    ViewPoint

| Seroquel | Proven Efficacy in Schizophrenia: Highlights | 3/11/2008 6:30:00 PM | | Speaker | Yes | No |
| Seroquel | Psychiatry Series, Clinical Insights in the Treatment of Bipolar Depression | 3/25/2008 6:30:00 PM | | Speaker | Yes | No |

## Brand Team Interactions

| Type | Rating | Date | Comment | Contact |
| --- | --- | --- | --- | --- |
| No data available | | | | |

## Indications and Interests

| Topic | Role |
| --- | --- |
| No data available | |

## Specialties

| Specialty Name | Specialty Type |
| --- | --- |
| Psychiatry | Primary |

## Related Organizations

| Name | Start Year | End Year | Role | Key Contact | AZ Relationship |
| --- | --- | --- | --- | --- | --- |
| No data available | | | | | |

## Related Centers

| Name | Start Year | End Year | Role | Key Contact |
| --- | --- | --- | --- | --- |
| No data available | | | | |

## Trials & Investigations

| Study Code | Short Description | Type | Compound | Status |
| --- | --- | --- | --- | --- |
| No data available | | | | |

## Secondary Publications

| Title | Target Audience | Start Date | Submiss-ion Date | Publicat-ion Date | Status | Target Journal | Type | Primary Author |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| No data available | | | | | | | | |

Powered by ViewPoint    CONFIDENTIAL - © Copyright 2008 AstraZeneca Pharmaceuticals LP. All rights reserved.

MDL-WhittingtonL-0710475
000250-CONFIDENTIAL



11/21/2006

# For Your Records
### Individualized Compensation Form

AstraZeneca structures speaker compensation based on predetermined, objective criteria that takes into account both credentials and professional achievements.

- **Compensation** – the table below reflects your compensation on a per program basis.[1]

- **Subject to Prorating** – per program compensation includes various assumptions that do not necessarily apply if multiple programs are performed in a single day. Consequently, AstraZeneca will pay a pro-rated compensation amount for multiple programs conducted in a single day.
  - ♦ The compensation framework sets a daily limit of three (3) programs per calendar day (please note a Visiting Professorship is equivalent to 2 programs).

| MOHAMED SALEH | | | |
|---|---|---|---|
| **2007 Framework** | **Program Type** | **Subject to Prorating** | **Compensation** |
| In Office Programs | Teleconference | No | $750.00 |
| | Web Ex | No | $750.00 |
| Out of office Programs | Round Table | Yes | $1500.00 |
| | Case Study | Yes | $1500.00 |
| | Speaker Program | Yes | $1500.00 |
| | Visiting Professorship (Full Day) | Yes | $2400.00 |
| Educational Programs | Tutorial | No | $300.00 |
| | Preceptorship | No | $300.00 |
| Marketing Team Promotional Driven Programs | | Yes | $1500.00 |

Confirmation letters for 2007 programs will reflect all activity for a single day.

If you have any questions, please contact the AstraZeneca Helpdesk at 888-AZHELPU (888-294-3578) and reference the 2007 Speaker Agreement.

---

[1] Please note that your compensation is confidential commercial information of AstraZeneca, and consistent with the obligations outlined in your current signed Speaker Services Agreement with AstraZeneca, your compensation information should not be shared with others. This information is for your records only.

M2Symb Thank you: CV received 1-5-06 Version 2

MDL-WhittingtonL-0710475
000251-CONFIDENTIAL

February 7, 2006

Mohamed Saleh
1408 San Marco Blvd
Jacksonville, FL 32207

RE:   Addendum to Speaker Services Agreement between Mohamed Saleh and
AstraZeneca

Dear Mohamed Saleh:

Reference is made to the Speaker Service Agreement (the "Agreement"), by
and between AstraZeneca LP, and Mohamed Saleh.  Capitalized terms used herein
and not otherwise defined herein shall be given the definition provided in the
Agreement.

The Term of the Agreement will expire on March 31, 2006.

AstraZeneca desires that you continue to provide the speaker services set forth
in Attachment A of the Agreement through December 2006.   Accordingly,
AstraZeneca has agreed to extend the initial term of the Agreement through December
2006.

Except as amended by this letter agreement, the Agreement is hereby ratified
and confirmed in all respects.  The Agreement as herein modified is in full force and
effect.

Assuming the foregoing accurately sets forth the mutual understanding of the
parties with respect to the amendment of the Agreement, please sign the two (2)
enclosed originals of this letter agreement and return one executed original to
AstraZeneca c/o Discovery Chicago in the provided labeled Federal Express envelope.
Please retain one executed original for your files.

USER ID

*7113810 04*

MDL-WhittingtonL-0710475
000252-CONFIDENTIAL

Page 2

      We appreciate your confirming in writing the agreed upon extension.  Thank you for your cooperation.

Sincerely,

*John J. Devlin*

Director of Advocacy Development


AGREED AND ACCEPTED BY:
Mohamed Saleh

By: _____

Name: _____M. SALEH_____

Title: _____CEO / PSYCHIATRIST_____

Date: _____2/8/06_____


USER ID

*7 1 1 3 8 1 0 0 4 *

MDL-WhittingtonL-0710475
000253-CONFIDENTIAL

## SPEAKER SERVICES AGREEMENT

This Speaker Services Agreement (this "**Agreement**") is made effective as of ___12-13-04___ (the "**Effective Date**"), by and between *[AstraZeneca LP]* *[AstraZeneca Pharmaceuticals LP]*, a Delaware limited partnership with offices at 1800 Concord Pike, Wilmington, Delaware 19803 ("**AstraZeneca**") and ___MOHAMED SALEH MD___ an individual with a principal place of business at ___1408 SAN MARCO BLVD. JAX, FLORIDA 32207___ ("**Professional**").

**Background:** AstraZeneca wants to use the services of Professional in order to obtain the benefit of the experience and ability of Professional. Professional wants to render such services to AstraZeneca and will devote Professional's best efforts to the services that are to be provided to AstraZeneca.

1. **Services.** AstraZeneca retains Professional to provide the services set forth on Attachment A (the "**Services**"). Professional will use *Professional's* best efforts in the performance of the Services and will perform such Services diligently and conscientiously with the highest professional standards and in compliance with all applicable laws, regulations and AstraZeneca policies. Professional will not use subcontractors for the purpose of performing the Services.

Attached to this Agreement is a copy of the AstraZeneca Commitment to Responsible Sales and Marketing Practices (Attachment B). This document summarizes the standards that all AstraZeneca employees must adhere to when interacting with healthcare professionals. Professional agrees that in providing services to AstraZeneca Professional will accommodate the efforts of AstraZeneca to ensure compliance with these standards.

2. **Compensation.** In return for the Services performed under this Agreement, AstraZeneca will pay to Professional reasonable fair market value compensation, the amount of which will be agreed upon in writing before each speaking event or speaker training program is scheduled. Details of the programs at which Professional will speak will be set forth in a confirmation letter provided by AstraZeneca for each program.

3. **Expenses.** Professional will furnish, at Professional's own expense, any and all materials, equipment, services or supplies necessary or useful to successfully completing the Services. AstraZeneca will reimburse Professional for authorized reasonable and necessary expenses Professional incurs in performing the Services, provided that Professional provides AstraZeneca with satisfactory documentation, including original receipts, for such expenses. In no event will Professional incur any expenses that exceed one thousand dollars ($1,000) for any one item or five thousand dollars ($5,000) in the aggregate in any month without prior written consent from AstraZeneca. At no time will AstraZeneca reimburse Professional for expenses related to (a) travel or subsistence expenses for spouses or guests; (b) secretarial or word processing services; (c) staff services; (d) computer time; (e) express delivery services; (f) facsimile charges, or (g) photocopying in excess of ten cents per page.

Speaker Services Agreement – November 2004
14445-1 – Contract effective Jan 1, 2005 through March 31, 2006

MDL-WhittingtonL-0710475
000254-CONFIDENTIAL

4.     **Method of Payment.**  AstraZeneca will issue a check to Professional for the amount due to Professional for Services rendered and expenses incurred within sixty (60) days after receipt of satisfactory supporting documentation.  AstraZeneca will have no obligation to reimburse Professional for authorized expenses that are not submitted within ninety (90) days after the date Professional incurred such expense.  Professional acknowledges and agrees that the fees and expenses set forth in Sections 2 and 3 hereof represent AstraZeneca's full and complete obligation for the Services to be rendered, and expenses incurred, by or on behalf of Professional under this Agreement.

5.     **Independent Contractor.**

(a)     Professional agrees that Professional is acting as an independent contractor in performing the Services and for all other purposes under this Agreement and that the relationship between Professional and AstraZeneca will not constitute a partnership, joint venture or agency. Professional is not an employee, agent or legal representative of AstraZeneca and has no authority to represent AstraZeneca or to enter into any contracts or assume any liabilities on behalf of AstraZeneca.  PROFESSIONAL AGREES THAT NEITHER THIS AGREEMENT NOR THE SERVICES PERFORMED HEREUNDER WILL ENTITLE PROFESSIONAL TO PARTICIPATE IN OR ACCRUE OR RECEIVE BENEFITS UNDER ANY PENSION PLAN, DEFERRED CONTRIBUTION PLAN, HEALTH PLAN, LIFE INSURANCE PLAN, OR DISABILITY PLAN, ANY OTHER EMPLOYEE BENEFIT PLAN (AS DEFINED BY THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974), OR ANY ARRANGEMENT, PROGRAM, OR POLICY MAINTAINED BY ASTRAZENECA THAT PROVIDES EMPLOYEE BENEFITS.  IN ADDITION, IN THE EVENT PROFESSIONAL IS RECLASSIFIED BY ANY COURT OR AGENCY TO BE AN EMPLOYEE OF ASTRAZENECA, PROFESSIONAL HEREBY EXPRESSLY WAIVES ALL RIGHTS TO PARTICIPATE IN THE PLANS AND ARRANGEMENTS REFERENCED ABOVE FOR THE TERM OF THIS AGREEMENT.

(b)     Professional will be solely and unconditionally responsible for paying any and all city, state and federal taxes and assessments, including, without limitation, all income, social security withholding and self-employment taxes, relating to any income or other consideration that Professional derives from this Agreement.

6.     **Ownership of Work Product.**

AstraZeneca will own and control worldwide all work, reports, data, marks, slogans, ideas, inventions, discoveries, know-how or other intellectual property, whether or not patentable or copyrightable, that are created, developed, conceived, reduced to practice or otherwise made by Professional in connection with the Services, including any intellectual property rights with respect to the foregoing (the "Work Product").  Professional will promptly disclose to AstraZeneca in writing the creation, development, conception, reduction to practice or making of all Work Product.  AstraZeneca will be the sole owner of all Work Product and, to effect such ownership, Professional will (i) and does hereby assign and transfer to AstraZeneca any and all

14445-1
Contract effective Jan 1, 2005 through March 31, 2006

MDL-WhittingtonL-0710475
000255-CONFIDENTIAL

right or interest Professional may have in and to such Work Product throughout the world, (ii) upon the request and at the sole expense and control of AstraZeneca, assist AstraZeneca in preparing, prosecuting, obtaining, registering, maintaining, defending and enforcing all patent, copyright, trademark, trade secret and other proprietary rights, and any applications therefor, throughout the world, and (iii) execute all papers and perform all acts necessary or desirable to carry out the purposes of (i) and (ii), all without further consideration. Assignment and transfer of each item of Work Product will occur instantly and automatically upon the earliest of the creation, development, conception, reduction to practice or making of such Work Product and will not require any further deeds or documents to be exchanged between Professional and AstraZeneca.

7.    **Training.**

(a) Regulatory.   Prior to performing any of the Services hereunder, Professional will successfully complete the AstraZeneca regulatory training program to be accessed online only at http://azregulatory.digiscript.com.  Upon signing this Agreement, Professional agrees to promptly complete the training program and certify successful completion online in accordance with the instructions set forth on the web site.

(b) Other.   In addition to the regulatory training required under Section 7(a) above, prior to performing any of the Services hereunder, Professional will successfully complete such product and/or disease state training as required by AstraZeneca.  Such training may be provided online, at in-person training sessions or via such other media as identified by AstraZeneca, and will include, but not be limited to, review of all approved product-specific presentation material and frequently asked questions developed by AstraZeneca.

8.    **Confidential Information.**   Professional acknowledges and agrees that Professional will have access to, or become acquainted with, Confidential Information of AstraZeneca in the performance of the Services.  For purposes of this Agreement, "Confidential Information" will mean all confidential, proprietary, or trade secret information, property, or material of AstraZeneca and any derivatives, portions, or copies thereof, including, without limitation, information resulting from or in any way related to (i) the Services; (ii) the business practices, plans, or relationships of AstraZeneca; and (iii) any other information or material that AstraZeneca designates as Confidential Information.  Confidential Information does not include information that (a) Professional can prove by competent evidence was known to Professional prior to the Effective Date and that was not subject to confidentiality restrictions; (b) was lawfully obtained from a third party without any confidentiality obligations, or (c) is or becomes part of the public domain through no violation of any confidentiality obligation.  Professional will keep all Confidential Information in strict confidence and will not, at any time during or for ten (10) years after the expiration or earlier termination of this Agreement, without the prior written consent of AstraZeneca, disclose, publish, disseminate or otherwise make available, directly or indirectly, any item of Confidential Information to anyone.  Professional will use the Confidential Information only in connection with the performance of the Services hereunder and for no other purpose.

14445-1
Contract effective Jan 1, 2005 through March 31, 2006

MDL-WhittingtonL-0710475
000256-CONFIDENTIAL

(d)     Professional will perform the Services in compliance with all applicable federal, state and local laws and regulations and Professional will comply with AstraZeneca's Commitment to Responsible Sales and Marketing Practices, a copy of which is set forth on Attachment B;

(e)     Professional acknowledges and confirms that Professional was selected to provide the Services because of Professional's expertise in the relevant subject matter and presentation qualifications, and not, in any way as an inducement to, or in return for prescribing, purchasing, recommending, using, obtaining preferential formulary status or dispensing of an AstraZeneca product, and

(f)     Professional will complete the regulatory training prior to providing any of the Services and all other training required by AstraZeneca prior to any presentations.

(g)     Professional will comply with the following during any presentation that includes a discussion of products:

    *(i)     Professional's remarks will conform to the approved labeling for any product discussed.  If in response to questions from the audience, Professional believes it is essential to discuss information that does not conform to approved labeling, Professional will emphasize that fact to the audience, provide a brief response and promptly direct the discussion back to areas that conform to the approved labeling.*

    (ii)     Professional will focus the presentation on the educational needs of the audience.

(iii)     To the extent that drugs are discussed, Professional's presentation will be balanced and will discuss both their risks and benefits.

(iv)     Professional's presentation will not be false or misleading in any manner.

(v)     Professional will discuss only marketed products and not products under investigation.

(vi)     Professional will conduct each presentation based on a topic selected by AstraZeneca and will utilize outlines and slides provided by AstraZeneca.  Any slides, other than slides provided by AstraZeneca, that refer or relate to AstraZeneca products may only be used if approved by AstraZeneca in advance of their use in any presentation by Professional.

(vii)     Supplemental anecdotal clinical experience and unsupported opinion will not form a significant part of Professional's presentation and disease state information must be based on a complete and accurate discussion of science generally accepted in the medical community.

14445-1
Contract effective Jan 1, 2005 through March 31, 2006

MDL-WhittingtonL-0710475
000257-CONFIDENTIAL

(vii)    Professional will disclose to the audience the role of AstraZeneca in the design of the program and its financial support.

13.    **Federal Government Employees (FGEs).**  If Professional is employed on a full- or part-time basis by or is providing services to any federal government agency, department or branch, including but not limited to: National Institutes of Health, Department of Veterans Affairs, or Military Treatment Facilities, before providing any of the Services Professional will complete the AstraZeneca Government Employee/Services Provider Form set forth on Attachment C (the "Form").  The Form confirms that: (a) the FGE's participation in the proposed health education activity does not create any apparent or real conflict of interest with the FGE's employment with or services to the federal government; (b) any payment for services or other compensation given to the FGE does not constitute a prohibited gift; and (c) any compensation given to the FGE does not constitute compensation or payment to the FGE relating to Professional's official duties.  No payment will be due from AstraZeneca unless the completed Form has been provided to AstraZeneca by Professional.  Professional will immediately notify AstraZeneca of any changes regarding Professional's employment status with regard to the federal government

14.    **Regulatory Inspections.**  If any governmental or regulatory authority (a) contacts Professional with respect to the Services or (b) takes, or gives notice of its intent to take, any other regulatory action alleging improper or inadequate practices with respect to any activity of Professional, Professional will notify AstraZeneca within three (3) business days after such contact or notice, or sooner if necessary to permit AstraZeneca to be present at, or otherwise participate in, any such regulatory action with respect to the Services, and will supply AstraZeneca with all information pertinent thereto.  AstraZeneca will have the right to be present at and to participate in any such regulatory action with respect to the Services.  Professional will provide AstraZeneca with copies of all documentation issued by any governmental or regulatory authority in connection therewith and any proposed response thereto.  No such response will include any false or misleading information with respect to the Services or AstraZeneca.

15.    **Debarment.**    Professional represents, warrants and covenants that Professional (a) is not excluded, debarred, suspended or otherwise ineligible to participate in Federal health care programs, Federal procurement, or non-procurement programs; (b) has not been convicted of a criminal offense that is governed by 42 U.S.C. § 1320a-7(a); or (c) otherwise is disqualified or suspended from performing the Services or otherwise subject to any restrictions or sanctions by the FDA or any other governmental or regulatory authority or professional body with respect to the performance of the Services (a "**Debarred Person**").  Professional will immediately notify AstraZeneca in writing if Professional is or becomes a Debarred Person or if any action, suit, claim, investigation, or other legal or administrative proceeding is pending or, to the best of Professional's knowledge, threatened, that would make any person performing services hereunder a Debarred Person or would preclude Professional from performing the Services.

14445-1
Contract effective Jan 1, 2005 through March 31, 2006

MDL-WhittingtonL-0710475
000258-CONFIDENTIAL

16.     **Assignment.**  Neither party will assign this Agreement without the prior written consent of the other party, which consent will not be unreasonably withheld; provided, however, that AstraZeneca will have the right to assign or otherwise transfer this Agreement to its Affiliates or to any successor in interest.

17.     **Amendment; Waiver.**  This Agreement may be amended only by a written instrument signed by the parties hereto.  Each party will have the right to enforce the provisions of this Agreement in strict accordance with its terms.  The failure of either party at any time to enforce its rights hereunder strictly in accordance with the same will not be construed as having created a custom contrary to the specific provisions hereof or as having in any way modified or waived same.

18.     **Governing Law.**  This Agreement and the rights and obligations of the parties hereunder will be governed by and construed under the laws of the State of Delaware without reference to its principles of choice of law.  All disputes pertaining to this Agreement will be decided by a state or federal court located in Wilmington, Delaware, and Professional hereby consents to personal jurisdiction in such courts.

19.     **Notices.**

(a)     Any notice that is required or permitted hereunder will be deemed given only if delivered personally or sent by facsimile (with transmission confirmed) or by registered or certified mail, return receipt requested and postage prepaid, or by a nationally recognized overnight delivery service, addressed to the parties at their respective addresses first set forth below or to such other addresses at which notice of change will have been given.

(b)     AstraZeneca and Professional hereby agree that by providing their mailing address, e-mail address and facsimile numbers as set forth below, each party consents to receive communications sent by or on behalf of the other party via direct mail, e-mail and/or facsimile to such addresses.

| AstraZeneca: | Professional: |
| --- | --- |
| Address: | 1408 SAN MARCO BLVD JAX FL. 32207 |
| E-mail: | REDACTED |
| Facsimile #: | 904-346-0887 |

(c)     Professional will address any questions concerning this Agreement or the Services to the Lecture Bureau for AstraZeneca, toll-free at 1-888-595-7737, with written correspondence to Lecture Bureau for AstraZeneca, 220 East 42nd Street, 3rd Floor, New York, NY 10017, or such other contact as AstraZeneca may advise in writing.

14445-1
Contract effective Jan 1, 2005 through March 31, 2006

MDL-WhittingtonL-0710475
000259-CONFIDENTIAL

## Attachment A

### Services

<u>Services to be provided:</u>

I.      <u>Training</u>

- <u>Speaker Training:</u> Professional will actively participate in speaker training programs as required by AstraZeneca, which may include, but not be limited to, training on regulatory rules, disease state, AstraZeneca drug specific content and presentation skills.   Such programs may be provided online, at in-person training sessions or via such other medium as AstraZeneca identifies.

The goods, services, or other deliverables described above must be furnished to AstraZeneca in a form and with content acceptable to AstraZeneca in its sole discretion.   AstraZeneca will make no payments due under this Agreement for deliverables it deems unacceptable or that are not delivered on time.   Time is of the essence.

MDL-WhittingtonL-0710475
000260-CONFIDENTIAL

9. **Equitable Relief.** Professional recognizes that any threatened breach or breach of Sections 6, 8 or 12 of this Agreement will cause irreparable harm to AstraZeneca that is inadequately compensable in damages and that, in addition to other remedies that may be available at law or equity, AstraZeneca is entitled to injunctive relief for such a threatened or actual breach.

10. **Term and Termination.** The Term of this Agreement is not for less than one (1) year and will commence as of the Effective Date and terminate on March 31, 2006, unless terminated earlier as provided by this Agreement. AstraZeneca may terminate this Agreement at any time either upon its determination that such termination is in its best interest, or in the event of Professional's failure to comply with any of the provisions set forth herein. If AstraZeneca terminates by reason of its best interest, AstraZeneca will pay Professional for all expenses reasonably and necessarily incurred in accordance with this Agreement prior to the date of termination (provided that such expenses cannot be canceled or recovered by Professional from third parties), less any payments made by AstraZeneca to Professional pursuant to this Agreement; provided, however that no such payment will be made if AstraZeneca terminates this Agreement by reason of Professional's failure to comply with any of the provisions set forth herein. Any such payment for expenses under this Section 10 will be contingent upon receipt of satisfactory documentation by AstraZeneca that such expenses have been incurred and are not cancelable or recoverable, and in no event will it exceed the limits provided for herein.

11. **Program Cancellation.** If a program for which Professional was to provide Services is canceled by AstraZeneca less than seven (7) business days prior to the program, AstraZeneca will pay Professional for the Services in connection with such program.

12. **Representations, Warranties and Covenants of Professional.** Professional represents, warrants and covenants that:

(a) Professional is qualified by training and experience to perform the Services and is free to enter into this Agreement and perform the Services. Professional's participation in the proposed health education activity, the retention of Professional by AstraZeneca and Professional's performance of the Services do not and will not (i) create any conflict of interest with respect to Professional's employment or other activities, or (ii) breach any agreement that obligates Professional to keep in confidence any trade secrets or confidential information of Professional or of any other party or to refrain from competing, directly or indirectly, with the business of any other party;

(b) entering into this Agreement and performing the Services hereunder does not and will not cause Professional to be in non-compliance with any policy or procedure of any institution or entity by which he or she is employed, and that such institution has no financial, proprietary or other interest in (i) the Services that Professional is conducting, (ii) the fees that are being paid to Professional for the performance of the Services, or (iii) the results of the Services;

14445-1
Contract effective Jan 1, 2005 through March 31, 2006

MDL-WhittingtonL-0710475
000261-CONFIDENTIAL

20.    **Entire Agreement.** This Agreement, including Attachment A and Attachment B hereto, sets forth and constitutes the entire agreement and understanding between the parties with respect to the subject matter hereof and all prior agreements, understanding, promises and representations, whether written or oral, with respect thereto are superseded hereby.

21.    **Severability.** The provisions of this Agreement will be several.  Invalidity or unenforceability of one provision will not affect any other provision of this Agreement.

22.    **Survival.**  The respective rights and obligations of the parties set forth in this Agreement will indefinitely survive the expiration or termination of this Agreement to the extent necessary to the intended preservation of such rights and obligations.

23.    **Headings.**  The headings in this Agreement are for convenience only and do not in any way limit or amplify their terms in this Agreement.

24.    **Use of Name.** Professional will not mention or otherwise use the name of AstraZeneca (or any abbreviation or adaptation thereof) in any publication, press release, promotional material or other form of publicity without the prior written approval of AstraZeneca in each instance.

25.    **Counterparts.**  This Agreement may be executed in two or more counterparts, each of which will be deemed an original and all of which will together be deemed to constitute one agreement.

   **IN WITNESS WHEREOF,** the parties hereto have executed this Agreement as of the Effective Date.

[PROFESSIONAL]

By: _____

Name: MOHAMED SALEH, MD.

Title: CEO / PRESIDENT

Date: 12/13/04

[ASTRAZENECA LP]
[ASTRAZENECA PHARMACEUTICALS LP]

By: _____

Name: Dana Thomas

Title:  Leader, Professional Education Department

14445-1
Contract effective Jan 1, 2005 through March 31, 2006

MDL-WhittingtonL-0710475
000262-CONFIDENTIAL

Attachment B

## AstraZeneca Commitment to Responsible Sales and Marketing Practices

*Our company is dedicated to discovering and marketing new medicines designed to improve the health and quality of life of patients around the world. This is a mission that carries with it a responsibility to conduct business in a manner that ensures that we continue to be welcomed as a valued and trusted member of the scientific, healthcare and global communities. We place great value on the quality of our relationships with healthcare professionals. Individual integrity, ethical conduct and full compliance with the many laws and regulations that govern the healthcare community in the United States are essential constituents of these relationships. To help ensure that our sales and marketing practices are conducted in a responsible manner, we make the following commitments:*

### PhRMA Code
We comply with the PhRMA Code on Interactions with Healthcare Professionals. Our relations with healthcare professionals focus on the meaningful exchange of medical information, enhancement of the practice of medicine and patient health.

### Support for Medical Education
We support medical education through grants to appropriate institutions or entities, not to individuals or physician practices. Where applicable, grants comply with ACCME and FDA guidelines, and we have no influence over the content of the program or the selection of speakers. AstraZeneca funds may not be used to pay for the costs of travel, lodging or other personal expenses of non-faculty healthcare professionals attending educational conferences or meetings.

### Meals, Gifts and Entertainment
We will pay for a modest meal with a healthcare professional if the meal occurs in the context of providing medical information. Because these meals are intended to facilitate a professional discussion, spouses or guests may not attend. Gifts or entertainment, of any kind, are not permitted. Items primarily for the benefit of patients or to enhance the practice of medicine may be offered to healthcare professionals if they are not of substantial value and offered infrequently.

### Compensation for Services
We compensate healthcare professionals for legitimate and bona fide services provided a signed contract exists and compensation is at fair market value. Healthcare professionals who speak on behalf of AstraZeneca receive training on FDA regulatory requirements.

### Product Discussions
We provide objective and balanced information about our products that complies with FDA regulations and conforms to the full prescribing information approved by the FDA. We do not promote off-label uses for our products, and take appropriate measures to ensure that any healthcare professionals engaged as speakers do the same.

### Patient Privacy
AstraZeneca respects the personal health information of consumers. AstraZeneca does not disclose or otherwise use such personal health information without consent.

### Samples
We distribute samples in compliance with regulations to provide an opportunity for the physician and patient to determine tolerability and effectiveness in an appropriate patient. Samples may never be resold, redistributed or submitted for payment.

If you have questions or concerns relating to AstraZeneca marketing practices, please contact your AstraZeneca sales representative. You may also send e-mail to Compliance.Connection@AstraZeneca.com

David Brennan
*President & CEO*

Glenn Engelmann
*VP, General Counsel & Compliance Officer*

MDL-WhittingtonL-0710475
000263-CONFIDENTIAL

**Attachment C**

### *2005 Federal Government Employee/Service Provider Form*

**(NOTE: THIS FORM MUST BE RETURNED TO AstraZeneca LP TOGETHER WITH THE EXECUTED AstraZeneca LP SPEAKER AGREEMENT)**

I, _MOHAMED SALEH, MD_ , have decided to accept the following:
  *[Enter name here]*
*(Circle all that apply)*    **Compensation/ Speaker Expenses**

from AstraZeneca LP ("AstraZeneca") in consideration for my providing professional services to AstraZeneca in 2005 under the terms and conditions set forth in the speaker agreement by and between you and AstraZeneca, dated _12-18-04_ .
  *[insert date of letter agreement]*

I declare, after appropriate review and inquiry, that my participation in the AstraZeneca speaker programs in 2004 presents no real or apparent conflict of interest with my work for or provision of services to the Federal government and that the compensation or speaker expenses would not constitute a prohibited gift or unlawful compensation or payment to a government employee for performing official duties. I also declare that the speaking or other activities that I will perform under this Federal Government Employee/Service Provider Form do not relate to my official Government duties. I agree only to accept reasonable compensation, travel, lodging, and subsistence expenses for any programs that I conduct under this Federal Government Employee/Service Provider Form.

I do hereby certify to AstraZeneca that my participation in the AstraZeneca speaker programs in 2005 and that my acceptance of the compensation and speaker expenses described above have been approved by the my supervisor as evidenced by the signature of that official set forth below.

Signature of Federal
Government Employee: _____

Printed Name: _MOHAMED O. SALEH, MD._

Social Security Number: REDACTED

Address: _1408 SAN MARCO BLVD. 32207_

Telephone: _904-399-5036_

Fax: _904-346-0887_

**ACKNOWLEDGED AND APPROVED:**

Signature of Supervisor
of Employee: _____

Printed Name: _____

Title: _____

Address: _____

Telephone: _____

Fax: _____

MDL-WhittingtonL-0710475
000264-CONFIDENTIAL

# AstraZeneca Lecture Bureau

RECEIVED

AUG 0 8 2007

BY:

Mohamed Saleh
Center for Medicine and Psychiatry
1408 San Marco Blvd.
Jacksonville, FL 32247

Please confirm or deny your participation in each event below by checking the appropriate box(es).

| MeetingID | MeetingDate | Brand | MeetingType | Compensation* | I Certify that this program did/did not occur | | I choose NOT to be paid for this program | |
|---|---|---|---|---|---|---|---|---|
| 707252 | 10/13/2005 | Seroquel | Regional Speaker Program | $1,500.00 | ☑ Did | ☐ Did Not | ☐ | (initial) |
| 728196 | 2/24/2006 | Seroquel | Regional Speaker Program | $1,500.00 | ☑ Did | ☐ Did Not | ☐ | (initial) |
| 747638 | 6/1/2006 | Seroquel | Regional Speaker Program | $1,500.00 | ☑ Did | ☐ Did Not | ☐ | (initial) |

I ALWAYS COMPLETE MY PAPERWORK IN TIME —
WE HAVE BEEN UNDERGOING WHY IS IT THAT HONORARIUMS ARE ALWAYS LATE
OR DON'T ARRIVE A COMPANY LIKE YOURS SHOULD HAVE A BETTER SYSTEM
TO TRACK DOWN THESE SIMPLE ISSUES, NOT PAY OUT FOR THREE WEEKS

REDACTED

**SS#/Tax ID**

**Signature**
**(Must be original signature, no stamps)**

8/5/07
**Date**

**RETURN completed, signed form in the attached FED-EX envelope within 14 business days.**

* Compensation amounts for programs conducted in 2007 may differ based upon the 2007 compensation framework.
Payment for programs completed will be issued as separate checks in approximately 3-4 weeks.
Please note, if you have already submitted expenses and they have been approved, they will be included as part of your compensation for the program.

MDL-WhittingtonL-0710475
000265-CONFIDENTIAL

# Preferred Method of Contact Information

Listed below is the current contact information we have for you.  If you would like to change this information, please use the area below and resubmit with the attached signed agreement.

Mohamed Saleh
1408 San Marco Blvd
Jacksonville, FL   32207
Phone: 904-398-0009
Fax: 904-346-0887
Email: mohamed.saleh@email.com

RECEIVED BY
OCT 11 2006

* 7 1 1 3 8 1 0 0 4 *

**Note: Please type or print neatly**

| Last Name (Legal Name) | First Name | Degree |
|---|---|---|
| MOHAMED O SALEH MD | BCFM | FAPA |

Company Name/Institution
CENTER FOR MEDICINE AND PSYCHIATRY

Street Address (Where meeting information should be sent --- **NO PO BOXES**)
P O BOX 10339

| City | State | Zip Code |
|---|---|---|
| JACKSONVILLE | FLORIDA | 32242 |

| Business Phone Number | Business Fax Number |
|---|---|
| 904 398-0009 | 904 346-0887 |

Tax ID #

SSN
REDACTED

E-Mail
REDACTED

Languages:  ☑ Spanish   ☐ Chinese – Mandarin   ☐ Hindi   ☐ Russian   ☑ Other  ITALIAN , ARABIC , ERITREAN

Your signature is required on page 8 of the agreement.  Additional information is required on pages 1 and 7.  Please return the completed agreement that is attached to this form in the return Federal Express envelope with the circular AstraZeneca sticker no later than December 1, 2006.

Keep the copy attached to the green compensation sheet for your records.

If you have any questions please call 888-AZHELPU / (888) 294-3578.

| | | | |
|---|---|---|---|
| **Federal Employee** | ___/___No | _____Yes | (If yes, you must complete page 11) |
| **State Employee** | ___/___No | _____Yes | (If yes, you must complete pages 12 & 13) |

MDL-WhittingtonL-0710475
000266-CONFIDENTIAL

### SPEAKER SERVICES AGREEMENT

This Speaker Services Agreement (this "**Agreement**") is made effective as of __January 1, 2007__ (the "**Effective Date**"), by and between *[AstraZeneca LP][AstraZeneca Pharmaceuticals LP]*, a Delaware limited partnership with offices at 1800 Concord Pike, Wilmington, Delaware 19803 ("**AstraZeneca**"), and _____Mohamed Saleh_____, an individual with a principal place of business at
_____
("**Professional**").

### Background

AstraZeneca wants to engage the services of Professional in order to obtain the benefit of the experience and ability of Professional and Professional wants to render such services to AstraZeneca, all on the terms and conditions set forth herein.

### Agreement

1.   **Services.**  AstraZeneca hereby retains Professional to conduct such presentations and perform such other services as may be mutually agreed upon in writing by Professional and AstraZeneca from time to time (the "Services").  Professional acknowledges and agrees that all Services provided by Professional hereunder will be in a form and with content acceptable to AstraZeneca in its sole discretion.  AstraZeneca will make no payments under this Agreement for Services it deems unacceptable or that are not delivered by the date or otherwise in accordance with the terms agreed by Professional and AstraZeneca.

2.   **Compensation; Fair Market Value; No Inducement.**  In consideration of the Services performed under this Agreement, AstraZeneca will pay to Professional an amount to be agreed in writing by Professional and AstraZeneca prior to each presentation or other activity that constitutes Services hereunder.  The parties acknowledge and agree that all compensation to be paid by AstraZeneca to Professional hereunder will be determined through good faith, arms-length negotiation and will constitute the fair market value of the Services being rendered by Professional.  Professional acknowledges and agrees that Professional was selected to perform the Services because of Professional's expertise in the relevant subject matter and qualifications, and not in any way as an inducement to, or in return for, the prescribing, purchasing, recommending, using, obtaining preferential formulary status or dispensing of any pharmaceutical or other product manufactured or sold by AstraZeneca or its Affiliates.  No payment by AstraZeneca to Professional under this Agreement is contingent or dependent upon the purchase, order, sale, recommendation, or other arrangement by Professional relating to any pharmaceutical or other product manufactured or sold by AstraZeneca or any of its Affiliates.

3.   **Expenses.**  Professional will furnish, at Professional's own expense, any and all materials, equipment, services or supplies necessary or useful to complete the Services. AstraZeneca will reimburse Professional for reasonable and necessary expenses Professional incurs in performing the Services that are approved in advance by AstraZeneca, provided that Professional provides AstraZeneca with appropriate documentation, including original receipts, for such expenses.  At no time will AstraZeneca reimburse Professional for expenses related to



MDL-WhittingtonL-0710475
000267-CONFIDENTIAL

(a) travel or subsistence expenses for spouses or guests; (b) secretarial or word processing services; (c) staff services; (d) computer time; (e) express delivery services; (f) facsimile charges, or (g) photocopying in excess of ten cents per page for black and white copies and seventy cents per page for color copies.

4.  **Method of Payment.**  AstraZeneca will issue a check to Professional for the amount due to Professional for Services rendered and expenses incurred within sixty (60) days after receipt of satisfactory supporting documentation.  AstraZeneca will have no obligation to reimburse Professional for authorized expenses that are not submitted within ninety (90) days after the date Professional incurred such expense.  Professional acknowledges and agrees that the fees and expenses paid in accordance with Sections 2 and 3 hereof represent AstraZeneca's full and complete obligation for the Services to be rendered, and expenses incurred, by or on behalf of Professional under this Agreement.

5.  **Independent Contractor.**

(a)  Professional acknowledges and agrees that Professional is acting as an independent contractor in performing the Services and that the relationship between Professional and AstraZeneca will not constitute a partnership, joint venture or agency.  Professional is not an employee, agent or legal representative of AstraZeneca and has no authority to represent AstraZeneca or to enter into any contracts or assume any liabilities on behalf of AstraZeneca. PROFESSIONAL AGREES THAT NEITHER THIS AGREEMENT NOR THE SERVICES PERFORMED HEREUNDER WILL ENTITLE PROFESSIONAL TO PARTICIPATE IN OR ACCRUE OR RECEIVE BENEFITS UNDER ANY PENSION PLAN, DEFERRED CONTRIBUTION PLAN, HEALTH PLAN, LIFE INSURANCE PLAN, OR DISABILITY PLAN, ANY OTHER EMPLOYEE BENEFIT PLAN (AS DEFINED BY THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED), OR ANY ARRANGEMENT, PROGRAM, OR POLICY MAINTAINED BY ASTRAZENECA THAT PROVIDES EMPLOYEE BENEFITS.  IN ADDITION, IN THE EVENT PROFESSIONAL IS DETERMINED BY ANY COURT OR AGENCY TO BE AN EMPLOYEE OF ASTRAZENECA, PROFESSIONAL HEREBY EXPRESSLY WAIVES ALL RIGHTS TO PARTICIPATE IN THE PLANS AND ARRANGEMENTS REFERENCED ABOVE FOR THE TERM OF THIS AGREEMENT.

(b)  Professional will be solely and unconditionally responsible for paying any and all city, state and federal taxes and assessments, including, without limitation, all income, social security withholding and self-employment taxes, relating to any income or other consideration that Professional derives from this Agreement.

6.  **Training.**  Prior to performing any Services hereunder, Professional will successfully complete regulatory training, product and/or disease state training, and any other training required by AstraZeneca.  Such training may be provided online, at in-person training sessions or via such other media as identified by AstraZeneca.

7.  **Confidential Information.**  Professional acknowledges and agrees that Professional will have access to, or become acquainted with, Confidential Information of AstraZeneca in the performance of the Services.  For purposes of this Agreement, "Confidential

46032-4

2

MDL-WhittingtonL-0710475
000268-CONFIDENTIAL

Information" means all information, property, or material provided by AstraZeneca to Professional in connection with the Services or this Agreement and any derivatives, portions, or copies thereof, including, without limitation, information resulting from or in any way related to (i) the business practices, plans, or relationships of AstraZeneca and (ii) any other information or material that AstraZeneca designates as Confidential Information.  Confidential Information does not include information that (a) Professional can prove by competent evidence was known to Professional prior to the Effective Date and that was not subject to confidentiality restrictions; (b) was lawfully obtained from a third party without any confidentiality obligations; or (c) is or becomes part of the public domain through no violation by Professional of this Agreement. Professional will keep all Confidential Information in strict confidence and will not, at any time during or for ten (10) years after the expiration or earlier termination of this Agreement, without the prior written consent of AstraZeneca, disclose, publish, disseminate or otherwise make available, directly or indirectly, any item of Confidential Information to anyone.  Professional will use the Confidential Information only in connection with the performance of the Services hereunder and for no other purpose.  Professional further agrees that he or she shall maintain as confidential the compensation and other terms of this Agreement.  Professional shall not disclose the compensation or other terms of this Agreement without prior written consent by AstraZeneca except as may be required by applicable law.  Professional acknowledges and agrees that any threatened breach or breach of this Section 7 will cause irreparable harm to AstraZeneca that is inadequately compensable in damages and that, in addition to any other remedies that may be available at law or equity, AstraZeneca will be entitled to injunctive relief for such a threatened or actual breach.

8.  **Term and Termination.**  The Term of this Agreement is not for less than one (1) year and will commence as of the Effective Date and terminate on ___March 31, 2008___, unless terminated earlier as provided by this Agreement.  AstraZeneca may terminate this Agreement at any time (a) for any reason or no reason upon seven (7) business days advance written notice to Professional or (b) in the event of Professional's breach of this Agreement immediately upon written notice to Professional.  If AstraZeneca terminates this Agreement pursuant to the foregoing clause (a), AstraZeneca will pay Professional in accordance with Section 4 for all fees and reimbursable expenses incurred in accordance with this Agreement prior to the date of termination (provided that such expenses cannot be recovered by Professional from third parties) not theretofore paid by AstraZeneca.

9.  **Representations, Warranties and Covenants of Professional.**  Professional represents, warrants and covenants that:

(a)  Professional is qualified by training and experience to perform the Services.  Professional's performance of the Services does not and will not (i) create any conflict of interest with respect to Professional's employment or other activities, or (ii) breach any agreement that obligates Professional to keep in confidence any trade secrets or confidential information of Professional or of any third party or to refrain from competing, directly or indirectly, with the business of any third party.

(b)  Entering into this Agreement and performing the Services hereunder does not and will not cause Professional to be in non-compliance with any policy or procedure of any institution or entity by which he or she is employed, and such institution or entity has no

46032-4

3

MDL-WhittingtonL-0710475
000269-CONFIDENTIAL

financial, proprietary or other interest in (i) the Services, (ii) the fees that will be paid to Professional for the performance of the Services, or (iii) the results of the Services.

(c)    Professional will use Professional's best efforts in the performance of the Services and will perform such Services diligently and conscientiously with the highest professional standards and in compliance with all applicable laws, regulations and applicable AstraZeneca policies that are part of Professional's training pursuant to Section 6.  Professional will not use subcontractors for the purpose of performing the Services.

(d)    Professional will comply with AstraZeneca's Commitment to Responsible Sales and Marketing Practices, a copy of which is attached hereto as Attachment A.

(e)    Professional will comply with each of the following during any presentation that includes a discussion of an AstraZeneca product:

(i)    Professional's remarks with respect to any prescription medicine will conform to the approved labeling for such medicine; provided that if in response to questions from the audience, Professional believes it is essential to discuss information that does not conform to approved labeling, Professional will emphasize that fact to the audience, provide a brief response and promptly direct the discussion back to areas that conform to the approved labeling.

(ii)    Professional will focus the presentation on the educational needs of the audience.

(iii)    To the extent that prescription medicines are discussed, Professional's presentation will be balanced and will discuss both their risks and benefits.

(iv)    Professional's presentation will not be false or misleading in any manner.

(v)    Professional will discuss only marketed prescription medicines and not any medicines that have not been approved by the Food and Drug Administration.

(vi)    Professional will conduct each presentation based on a topic selected by AstraZeneca and will utilize outlines and slides provided by AstraZeneca.  Any slides, other than slides provided by AstraZeneca, that refer or relate to AstraZeneca prescription medicines or disease states may only be used if approved by AstraZeneca in advance of their use in any presentation by Professional.

(vii)    Supplemental anecdotal clinical experience and unsupported opinion will not form a significant part of Professional's presentation, and disease state information must be based on a complete and accurate discussion of science generally accepted in the medical community.

46032-4

4

MDL-WhittingtonL-0710475
000270-CONFIDENTIAL

(viii)   Professional will disclose to the audience the role of AstraZeneca in the design of the program and the fact that AstraZeneca is providing financial support to Professional.

(f)   Professional immediately shall notify AstraZeneca of any breach of the foregoing clauses (a) through (e) or if any representation or warranty made in the foregoing clauses (a) through (e) ceases to be accurate.

10.   **Federal Government Employees (FGEs).**  If Professional is employed on a full- or part-time basis by, or is providing services to, any United States federal government agency, department or branch, including but not limited to, the Department of Veterans Affairs or Military Treatment Facilities, then simultaneously with the execution and delivery of this Agreement will complete and submit to AstraZeneca the AstraZeneca Government Employee/Services Provider Form attached hereto as Attachment B (the "FGE Form").  No payment will be due from AstraZeneca hereunder unless Professional has provided the completed FGE Form to AstraZeneca.  Professional will immediately notify AstraZeneca of any changes regarding Professional's employment status with regard to the United States federal government.  Professional warrants that he or she has confirmed with his or her supervisor or relevant government ethics official that Professional is permitted to accept speaking or consulting compensation from AstraZeneca.

11.   **State Government Employee (SGEs).**  If Professional is employed on a full-time or part-time basis by, or is providing services to, any state, county, or local government agency, department or branch, then simultaneously with the execution and delivery of this Agreement, Professional will complete and submit to AstraZeneca the AstraZeneca State Government Employee/Service Provider Form attached hereto as Attachment C (the "SGE Form").  No payment will be due from AstraZeneca hereunder unless Professional has provided the completed SGE Form to AstraZeneca.  Professional will immediately notify AstraZeneca of any changes regarding Professional's employment status with regard to any state, county, or local government.  Professional warrants that he or she has confirmed with his or her supervisor or relevant government ethics official that Professional is permitted to accept speaking or consulting compensation from AstraZeneca.

12.   **Regulatory Actions.**  If any governmental or regulatory authority (a) contacts Professional with respect to the Services or (b) takes, or gives notice of its intent to take, any regulatory action alleging improper or inadequate practices with respect to any activity of Professional, Professional will notify AstraZeneca within twenty-four (24) hours after such contact or notice and will supply AstraZeneca with all information pertinent thereto. AstraZeneca will have the right to be present at and to participate in any such regulatory action with respect to the Services.  Professional will provide AstraZeneca with copies of all documentation issued by any governmental or regulatory authority in connection therewith and any proposed response thereto.  No such response by Professional will include any false or misleading information with respect to the Services or AstraZeneca.

13.   **Debarment.**  Professional represents, warrants and covenants that Professional (a) is not excluded, debarred, suspended or otherwise ineligible to participate in federal health

46032-4

5

MDL-WhittingtonL-0710475
000271-CONFIDENTIAL

care programs, federal procurement, or non-procurement programs; (b) has not been convicted of a criminal offense that is governed by 42 U.S.C. § 1320a-7(a); or (c) is not otherwise disqualified or suspended from performing the Services or otherwise subject to any restrictions or sanctions by the FDA or any other governmental or regulatory authority or professional body with respect to the performance of the Services (a "Debarred Person"). Professional will immediately notify AstraZeneca in writing if Professional is or becomes a Debarred Person or if any action, suit, claim, investigation, or other legal or administrative proceeding is pending or, to the best of Professional's knowledge, threatened, that would make Professional a Debarred Person or would preclude Professional from performing the Services.

14.    **Force Majeure.**  No delay or failure of performance by either party under this Agreement will be considered to be a breach hereof if and to the extent that an occurrence or occurrences beyond the control of the party affected caused such delay or failure of performance.

15.    **Assignment.**  Neither party will assign this Agreement without the prior written consent of the other party, which consent will not be unreasonably withheld; provided, however, that AstraZeneca will have the right to assign or otherwise transfer this Agreement to its Affiliates or to any successor in interest.

16.    **Amendment; Waiver.**  This Agreement may be amended only by a written instrument signed by the parties hereto.  Each party will have the right to enforce the provisions of this Agreement in strict accordance with its terms.  The failure of either party at any time to enforce its rights hereunder strictly in accordance with the same will not be construed as having created a custom contrary to the specific provisions hereof or as having in any way modified or waived the same.

17.    **Governing Law.**  This Agreement and the rights and obligations of the parties hereunder will be governed by and construed under the laws of the State of Delaware without reference to its principles of choice of law.  All disputes pertaining to this Agreement (other than appeals therefrom) will be decided exclusively by a state or federal court located in Wilmington, Delaware, and Professional hereby consents to personal jurisdiction in such courts.

18.    **Notices.**

(a)    Any notice that is required or permitted hereunder will be deemed given only if delivered personally or sent by facsimile (with transmission confirmed) or by registered or certified mail, return receipt requested and postage prepaid, or by a nationally recognized overnight delivery service, addressed to the parties at their respective addresses set forth below or to such other addresses at which notice of change will have been given in accordance with this Section 18.

(b)    AstraZeneca and Professional hereby agree that by providing its mailing address and facsimile number as set forth below, each party consents to receive communications sent by or on behalf of the other party via direct mail and/or facsimile to such addresses.

46032-4

6

MDL-WhittingtonL-0710475
000272-CONFIDENTIAL

AstraZeneca                     Professional:
c/o Scientific Voice:           **MOHAMED SALEH**

Address:      see 18(c) below   P.O. BOX 10339 JACKSONVILLE FLORIDA 32297

E-mail:       see 18(c) below   SALEHFLD AOL.COM

Facsimile #:  see 18(c) below   904 3460887

(c)     Professional will address any questions concerning this Agreement or the Services to Scientific Voice for AstraZeneca, toll-free at 1-888-AZHELPU (294-3578), facsimile at (866) 885-1103, email at astrazenecahelpu@mededgroup.com, with written correspondence to Scientific Voice for AstraZeneca, 35 West Wacker, Suite 2200, Chicago, Illinois 60601, or such other contact as AstraZeneca may advise in writing.

19.     **Entire Agreement.** This Agreement sets forth and constitutes the entire agreement and understanding between the parties with respect to the subject matter hereof and all prior agreements, understandings, promises and representations, whether written or oral, with respect thereto are superseded hereby.

20.     **Severability.** The provisions of this Agreement will be several. Invalidity or unenforceability of one provision will not affect any other provision of this Agreement.

21.     **Survival.** The respective rights and obligations of the parties set forth in this Agreement will indefinitely survive the expiration or termination of this Agreement to the extent necessary to the intended preservation of such rights and obligations.

22.     **Headings.** The headings in this Agreement are for convenience only and do not in any way limit or amplify their terms in this Agreement.

23.     **Use of Name.** Professional will not mention or otherwise use the name of AstraZeneca (or any abbreviation or adaptation thereof) in any publication, press release, promotional material or other form of publicity without the prior written approval of AstraZeneca in each instance.

24.     **Counterparts.** This Agreement may be executed in two or more counterparts, each of which will be deemed an original and all of which will together be deemed to constitute one agreement.

46032-4

7

*711381004*

MDL-WhittingtonL-0710475
000273-CONFIDENTIAL

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the Effective Date.

[PROFESSIONAL]

By: _____

Name: _____ MOHAMED SALEH

Title: _____ PSYCHIATRIST

Date: _____ 9/28/06

[AstraZeneca LP]
[AstraZeneca Pharmaceuticals LP]
By:



Name: Ronan Barrett, PhD

Title: Director, Professional Programs and Education

46032-1

8

MDL-WhittingtonL-0710475
000274-CONFIDENTIAL

## Attachment A

## AstraZeneca Commitment to Responsible Sales and Marketing Practices

Our company is dedicated to discovering and marketing new medicines designed to improve the health and quality of life of patients around the world. This is a mission that carries with it a responsibility to conduct business in a manner that ensures that we continue to be welcomed as a valued and trusted member of the scientific, healthcare and global communities. We place great value on the quality of our relationships with healthcare professionals. Individual integrity, ethical conduct and full compliance with the many laws and regulations that govern the healthcare community in the United States are essential constituents of these relationships.

To help ensure that our sales and marketing practices are conducted in a responsible manner, we make the following commitments:

**PhRMA Code**

We comply with the PhRMA Code on Interactions with Healthcare Professionals. Our relations with healthcare professionals focus on the meaningful exchange of medical information, enhancement of the practice of medicine and patient health.

**Support for Medical Education**

We support medical education through grants to appropriate institutions or entities, not to individual healthcare professionals. Grants comply with the ACCME and FDA guidelines, and we have no influence over the content of the program or the selection of the speakers. We also follow the instructions relating to educational grants in the Compliance Program Guidance for Pharmaceutical Manufacturers. AstraZeneca has established a Medical Education Grants Office to review and approve grant requests.

**Meals, Gifts and Entertainment**

We will pay for a modest meal with a healthcare professional if the meal occurs in the context of providing medical information. Because these meals are intended to facilitate a professional discussion, spouses or guests may not attend. Gifts or entertainment, of any kind, are not permitted. Items primarily for the benefit of patients or to enhance the practice of medicine may be offered to healthcare professionals if they are not of substantial value and offered infrequently.

**Compensation for Services**

We compensate healthcare professionals for legitimate and *bona fide* services provided a signed contract exists and compensation is at fair market value. Healthcare professionals who speak on behalf of AstraZeneca receive training on FDA regulatory requirements.

**Product Discussions**

We provide objective and balanced information about our products that complies with FDA regulations and conforms to the full prescribing information approved by the FDA. We do not promote off-label uses for our products and take appropriate measures to ensure that any healthcare professionals engaged as speakers will do the same.

**Patient Privacy**

AstraZeneca respects the personal health information of consumers. AstraZeneca does not disclose or otherwise use such personal health information without consent.

46032-4

9

MDL-WhittingtonL-0710475
000275-CONFIDENTIAL

**Samples**

We distribute samples in compliance with regulations to provide an opportunity for the healthcare professional and patient to determine tolerability and effectiveness. Samples may never be resold, redistributed, or submitted for payment.

**Policy Action Line**

AstraZeneca offers a Policy Action Line to assist Sales employees in the field with questions related to policies and practices.  On average, 250 calls a month come in to the call line.  AstraZeneca Compliance & Ethics Leaders answer these calls and provide employees with comprehensive guidance on how to pursue their business objectives within AstraZeneca policy.

If you have questions or concerns relating to AstraZeneca sales and marketing practices, please contact your AstraZeneca sales representative. You may also send e-mail to: Compliance.Connection@AstraZeneca.com

Tony P. Zook
President & CEO, AstraZeneca US

Glenn Engelmann
VP Policy, Legal and Scientific Affairs & General Counsel

46032-4

10

MDL-WhittingtonL-0710475
000276-CONFIDENTIAL

**Attachment C**

## *State Government Employee/Service Provider Form*

**NOTE: THIS FORM MUST BE EXECUTED AND RETURNED TO [*ASTRAZENECA LP*] [*ASTRAZENECA PHARMACEUTICALS LP*] PRIOR TO ANY FUTURE SPEAKING OR CONSULTING ENGAGEMENTS**

PLEASE NOTE THAT THE LAWS AND REGULATIONS IN SOME STATES PROHIBIT STATE, COUNTY OR LOCAL GOVERNMENT EMPLOYEES FROM ACCEPTING COMPENSATION FOR THE PROVISION OF BONA FIDE SPEAKING OR CONSULTING SERVICES TO ENTITIES REGULATED BY OR DOING BUSINESS WITH THE STATE.  IF YOU ARE A STATE GOVERNMENT OR MUNICIPAL EMPLOYEE OR ARE COMPENSATED BY THE STATE TO PROVIDE HEALTH CARE SERVICES, YOU MAY BE RESTRICTED OR PROHIBITED FROM ACCEPTING COMPENSATION FROM OUTSIDE SOURCES.  YOU MUST CHECK WITH YOUR SUPERVISOR OR RELEVANT GOVERNMENT ETHICS OFFICIAL TO DETERMINE IF IT IS PERMISSIBLE FOR YOU TO ACCEPT SPEAKING OR CONSULTING COMPENSATION FROM [*ASTRAZENECA LP*] [*ASTRAZENECA PHARMACEUTICALS LP*].

I, _____ have decided to accept the following:
*(Circle all that apply)* Compensation/ Reimbursement of Speaker or Consulting Expenses

from [*AstraZeneca LP*] [*AstraZeneca Pharmaceuticals LP*] ("AstraZeneca") in consideration for my providing bona fide professional services to AstraZeneca under the terms and conditions set forth in the Speaker Services Agreement (the "Agreement") by and between me and AstraZeneca, dated,

I declare, after appropriate review and inquiry, that my participation in the AstraZeneca speaking or consulting programs:
➢ presents no real or apparent conflict of interest with my work for or provision of services to the _____ government; and
➢ does not relate to my official government duties.

I also declare that compensation for my services or reimbursement for my reasonable expenses would not constitute a prohibited gift or unlawful compensation or payment to a government employee under state law, regulation, or guidance.  I agree only to accept reasonable compensation, travel, lodging, and subsistence expenses for any programs that I conduct as a promotional speaker or consultant to AstraZeneca.

I do hereby certify to AstraZeneca that my participation in the AstraZeneca speaking or consulting programs and my acceptance of the compensation and speaker expenses described above have been approved by my supervisor as evidenced by the signature of that official set forth below.

Signature of State(s)
Government Employee: _____

Printed Name: _____

Social Security Number: _____

Department/Org Name: _____

Address: _____

Telephone & Fax: _____

Type of Department/Org:
  Corrections          Hospital          Educational/Teaching Inst          Mental Health
  Long Term Care       Other: _____

46032-4

12

MDL-WhittingtonL-0710475
000277-CONFIDENTIAL

ACKNOWLEDGED AND APPROVED:
Signature of Supervisor
of State Employee: _____

Printed Name: _____

Title: _____

Address: _____

Telephone & Fax: _____



46032-4

13

MDL-WhittingtonL-0710475
000278-CONFIDENTIAL

| | |
|---|---|
| **MEDICAL EDUCATION:** | University of Bologna, Italy<br>Graduated, 1979 |



| | |
|---|---|
| **INTERNSHIP:** | Sant'Orsola Hospital Bologna, Italy<br>June 1978-June 1979 |

M.O. Saleh M.D.
B.C.F.M.

| | |
|---|---|
| **SECOND INTERNSHIP:** | University of Florida, Gainesville, Florida.<br>College Of Medicine<br>July 1986-June 1987 |
| **RESIDENCY:** | University of Florida, Gainesville, Florida<br>College of Medicine, Department of Psychiatry<br>March 1983- March 1986 |
| **SECOND RESIDENCY:** | Columbia University, New York, New York<br>Internal Medicine<br>March 1982-March 1983 |
| **SCHOLARSHIP:** | Full Medical Scholarship from Italian Government, 1971-1979,<br>Grants 1972,1973,1974 |
| **GRANTS:** | -Outstanding Service Award from Alachua County Florida Commissioners<br>-Recipient of the 1994 Exemplary Psychiatrist Award from the National Alliance for the Mentally Ill. |
| **LICENSURE:** | <ul><li>Active License to Practice Medicine in Florida</li><li>ACLS, ATLS, APLS Trained.</li></ul> |
| **CERTIFICATION:** | <ul><li>M. Saleh, M.D., B.C.F.M.</li><li>Diplomat American Board of Psychiatry and neurology, ABPN</li><li>ABPN, Board Certified in</li></ul> |

MDL-WhittingtonL-0710475
000279-CONFIDENTIAL

Forensic Psychiat
- ABPN, Board Certified in - Addiction Psychiatry
- ASAM, Certified, American Society Addiction Medicine
- MROCC, Certified medical Review officer

**LANGUAGES:**  English, Eritrean, Italian, Spanish, Arabic and two African Dialects

**JULY 1987– FEB 1988:**  Staff Physician at the Mental health Resource Center of Jacksonville, Florida.

**FEB. 1988– FEB 1989**  Medical Director with the Mental Health Center of Jacksonville, Florida.

**FEB. 1989– PRESENT:**  private Practice, Center for Medicine & Psychiatry, Jacksonville, Florida.

**JAN 1990– MAR 1995:**  Medical Director for the Methodist Hospital Pathway Chemical Dependency Program

**JAN. 1992– DEC. 1993:**  Vice-Chairman, Department of Psychiatry, Baptist Medical Center of Jacksonville, Florida

**JAN. 1994– JAN. 1995:**  Chairman, Department of Psychiatry, Baptist medical Center of Jacksonville, Florida.

**JAN. 1998– PRESENT:**  Chairman, Department of Psychiatry, Baptist Medical Center; reelected to serve through December, 2003.

**FEB. 1999– JULY 2001:**  Chairman, St. Clair Medical Center

MDL-WhittingtonL-0710475
000280-CONFIDENTIAL

|  |  |  |
|---|---|---|
|  | FEB 1992-PRESENT | Medical Director, Community Rehabilitation Center (C.R.C.) |
|  | FEB 1993-PRESENT | Medical Director, Northwest Behavioral Health Services(NBHS) |
| **OTHER CURRENT POSITIONS:** | FEB 1991-PRESENT | -Medical Director, Keepsafe Day Treatment Program<br><br>-Coordinator for Psychiatric Services at Quality Life PHP<br><br>-Ten Broeck Hospital, Medical Director.<br><br>-Consultant Sutton Place of Nassau<br><br>-Consultant Forensic Services, Nassau County Jail.<br><br>-Consultant psychiatric services, Baker County CMHS.<br><br>-Consultant psychiatric services, Luthern Social Services.<br><br>-Founder Eritrean Psychiatric Foundation |

MDL-WhittingtonL-0710475
000281-CONFIDENTIAL

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE:  Seroquel Products Liability Litigation

MDL Docket NO. 1769

This Document Relates to:

Linda Whittington v. AstraZeneca Pharmaceuticals
LP, et al.

CASE NUMBER:  6:07-cv-10475

---

**AstraZeneca's Supplemental Disclosure of Available Case Specific Discovery
Information and Documentation for Dr. Mohamed Omar Saleh
Pursuant to Case Management Order
Nos. 4 and 5 for Linda Whittington**

---

**I.      Dear Doctor or Dear Healthcare Provider Letters**

AstraZeneca found the name "Mohamed Omar Saleh" on the distribution lists for the

January 30, 2004  and April 22, 2004 letters.  **Exhibit A** sets forth the contact information as

it appears on the lists.

Dated: <u>April 23, 2008</u>

Russell O. Stewart
Nadia G. Malik
Faegre & Benson LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, Colorado 80203
Telephone:  (303) 607-3500
Facsimile:  (303) 607-3600
E-Mail:  <u>rstewart@faegre.com</u>
            <u>nmalik@faegre.com</u>


Fred Magaziner
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104-2808
Telephone: (215) 994-4000
Facsimile: (215) 994-2222
E-mail: <u>fred.magaziner@dechert.com</u>

*Counsel for AstraZeneca Pharmaceuticals
LP and AstraZeneca LP*

2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of April, 2008, I caused to be served a true and correct copy of the foregoing on K. Camp Bailey, Esq., Plaintiffs' Counsel, and Larry Roth, Plaintiffs' Liaison Counsel, via electronic mail and first-class mail.  Service on Plaintiffs' Liaison Counsel constitutes service on all  unrepresented plaintiffs.

Russell O. Stewart
Nadia G. Malik
Faegre & Benson LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO  80203-4532
303-607-3500

*Counsel for Defendants AstraZeneca Pharmaceuticals LP and AstraZeneca LP*

fb.us.2805147.01

3

**<u>EXHIBIT A</u>**

AZP 1/2004 Dear Doctor/ Dear Health Care Provider Distribution List

| | A | B | C | D | E | F | G | H | I | J | K |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | FULL NAME | COMPANY | ALTRNTA DD1 | ALTRNT ADDR | ALTRNT 2ADD | ALTRNT ADD | DLVRY ADDRS | CITY | STATE | ZIP4 | DLVR YPNT |
| 1 | | | | | | | | | | | |
| 2 | Mohamed Omar Saleh MD | | | | | | 1408 San Marco Blvd | Jacksonville | FL | 32207-8536 | 08 |

Page 1 of 1

MDL-WhittingtonL-0710475
0000282

AZP 4/2004 Dear Doctor/ Dear Health Care Provider Distribution List

| | A FULL NAME | B COMPANY | C ALTRNT ADDL1 | D ALTRNT ADDR | E ALTRNT 2 ADD | F ALTRNT ADD | G DLVRY ADDRS | H CITY | I STATE | J ZIP4 | K DLVR Y PLN TI |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | | | | |
| 2 | Mohamed Omar Saleh MD | | | | | | 1408 San Marco Blvd | Jacksonville | FL | 32207-8536 | 08 |

Page 1 of 1

MDL-WhittingtonL-0710475
0000283

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE:  Seroquel Products Liability Litigation

MDL Docket NO. 1769

This Document Relates to:

Linda Whittington v. AstraZeneca Pharmaceuticals
LP, et al.

CASE NUMBER:  6:07-cv-10475

_____

**AstraZeneca's Second Supplemental Disclosure of Available Case Specific Discovery
Information and Documentation for Mohamed Saleh Pursuant to
Case Management Order Nos. 4 and  5**

_____

**I.        AstraZeneca Sponsored Events – Attendance and Speaker Program Reports**

AstraZeneca previously produced to Plaintiff's counsel Seroquel-related information

from ViewPoint, Compass/Prep, and Lecture Bureau Express databases.  AstraZeneca again

searched those databases for information related to "Mohamed Saleh."

AstraZeneca's search returned information from these databases related to "Mohamed

Saleh," attached as **Exhibit A,** and is also produced in electronic form as Excel spreadsheets.

Dated: June 18, 2008

Russell O. Stewart
Nadia G. Malik
Faegre & Benson LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, Colorado  80203
Telephone:  (303) 607-3500
Facsimile:  (303) 607-3600
E-Mail:  rstewart@faegre.com
           nmalik@faegre.com

Fred Magaziner
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA  19104-2808
Telephone:  (215) 994-4000
Facsimile:  (215) 994-2222
E-Mail:  fred.magaziner@dechert.com

*Counsel for AstraZeneca Pharmaceuticals
LP and AstraZeneca LP*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th of June, 2008, I caused to be served a true and correct copy of the foregoing on K. Camp Bailey, Esq., Plaintiffs' Counsel, and Larry Roth, Plaintiffs' Liaison Counsel, via electronic mail and first-class mail.  Service on Plaintiffs' Liaison Counsel constitutes service on all unrepresented plaintiffs.

Russell O. Stewart
Nadia G. Malik
Faegre & Benson LLP
3200 Wells Fargo Center
1700 Lincoln Street
Denver, CO  80203-4532
(303) 607-3500

*Counsel for Defendants AstraZeneca*
*Pharmaceuticals LP and AstraZeneca LP*

fb.us.2967747.01

3

# EXHIBIT A

CONFIDENTIAL

| | A PREP_ITEM_ID | B ENTRY_EMP_LID | C CONTACT_ID | D FIRST_NAME | E LAST_NAME | F COMPA NY... | G COMPANY_NAME | H PAYEE_NAME | I PAYEE_ADDRESS_LINE_1 | J PAYEE_CITY | K PAYEE_STATE | N PAYEE_ZIP | O APPROV_BK_ROLE | P APPROV_VIEW_UP | Q BRAND_ID | R BRAND_NAME | S FINANCIAL_TYPE_CODE | T COMPENSATION | U PROGRAM_DATE | V PREP_CATEGORY | W TALK_TOPIC |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | 7912017S 39100819 | | 711381004 | Mohamed | Saleh | | | Mohamed Saleh | 1408 San Marco Blvd | Jacksonville | FL | 32207 | | | 380000 | Seroquel | 201 | $ 750.00 | 10/07/2004 00:00:00 | Central Nervous System | Balancing The Goals - Optimizing Outcomes & Maximizing Safety In Patients With Bipolar Mania |
| 3 | 6512017S 39100819 | | 711381004 | Mohamed | Saleh | | | Mohamed Saleh | 1408 San Marco Blvd | Jacksonville | FL | 32207 | | | 380000 | Seroquel | 201 | $ 1,500.00 | 09/02/2005 00:00:00 | Central Nervous System | Quetiapine fumarate: Efficacy and Tolerability for Acute Bipolar Mania |
| 4 | 6712017S 39100819 | | 711381004 | Mohamed | Saleh | | | Mohamed Saleh | 1408 San Marco Blvd | Jacksonville | FL | 32207 | | | 380000 | Seroquel | 201 | $ 750.00 | 09/10/2004 00:00:00 | Central Nervous System | Assessment and Management of Noncompliance in Schizophrenia |
| 5 | 8912017S 39100819 | | 711381004 | Mohamed | Saleh | | | Mohamed Saleh | 1408 San Marco Blvd | Jacksonville | FL | 32207 | | | 380000 | Seroquel | 201 | $ 1,500.00 | 07/21/2005 00:00:00 | Central Nervous System | Clinical Insights: Psychotropic Therapy in the Treatment of Schizophrenia in Adults |
| 6 | 2317046940020464 | | 711381004 | Mohamed | Saleh | | | Mohamed Saleh | 1408 San Marco Blvd | Jacksonville | FL | 32207 | | | 380000 | Seroquel | 201 | $ 1,500.00 | 02/24/2005 00:00:00 | Central Nervous System | Balancing The Goals - Optimizing Outcomes & Maximizing Safety In Patients With Bipolar Mania |
| 7 | 7112017S 39100819 | | 711381004 | Mohamed | Saleh | | | Mohamed Saleh | 1408 San Marco Blvd | Jacksonville | FL | 32207 | | | 380000 | Seroquel | 205 | $ 750.00 | 09/10/2004 00:00:00 | Central Nervous System | Antipsychotic Use in Special Populations |
| 8 | 8310204640014449 | | 711381004 | Mohamed | Saleh | | | Mohamed Saleh | 1408 San Marco Blvd | Jacksonville | FL | 32207 | | | 380000 | Seroquel | 205 | $ 1,500.00 | 09/16/2005 00:00:00 | Central Nervous System | Clinical Insights: Psychotropic Therapy for Acute Bipolar Mania |
| 9 | 6412017S 39100819 | | 711381004 | Mohamed | Saleh | | | Mohamed Saleh | 1408 San Marco Blvd | Jacksonville | FL | 32207 | | | 380000 | Seroquel | 201 | $ 750.00 | 05/20/2005 00:00:00 | Central Nervous System | Clinical Insights: Psychotropic Therapy for Acute Bipolar Mania |
| 10 | 1002699991019 39100161 | | 711381004 | Mohamed | Saleh | | | Mohamed Saleh | 1408 San Marco Blvd | Jacksonville | FL | 32207 | | | 380000 | Seroquel | 205 | $ 750.00 | 05/19/2005 00:00:00 | Central Nervous System | Clinical Insights: Psychotropic Therapy for Acute Bipolar Mania |
| 11 | 9841789101640055650 | | 711381004 | Mohamed | Saleh | | | Mohamed Saleh | 1408 San Marco Blvd | Jacksonville | FL | 32207 | | | 380000 | Seroquel | 205 | $ 1,000.00 | 05/01/2005 00:00:00 | Central Nervous System | Balancing The Goals - Efficacy and Tolerability Considerations when Treating Patients With Acute Bipolar Mania |

Page 1 of 1

MDL-WhittingtonL-0710475
0000374-CONFIDENTIAL

**<u>EXHIBIT B</u>**

Page 1 of 1

MDL-WhittingtonL-0710475
000073-CONFIDENTIAL

| A VENDOR NUMBER | B VENDOR NAME | C STREET ADDRESS | D CITY | E ST | F ZIP | G DOCUMENT TYPE | H GL ACCOUNT | I ACCOUNT NAME | J DOCUMENT HEADER PURCHASE ORDER TEXT | K POSTING DATE | L DOCUMENT NUMBER | M LINE | N AMOUNT | O PL | P COST CENTER | Q COST CENTER NAME | R | S DETAIL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

MDL-WhittingtonL-0710475
000074-CONFIDENTIAL