# EXHIBIT 9

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| IN RE: SEROQUEL PRODUCTS LIABILITY LITIGATION | MDL DOCKET NO. |
| This document relates to: | 6:06-MDL-1769-ACC-DAB |
| ALL CASES | |

## DECLARATION OF WILLIAM C. WIRSHING, M.D.

1. My name is William C. Wirshing, M.D. I am competent to make this declaration and the facts stated herein are within my personal knowledge and are true and correct.

2. I graduated in 1978 from the College of Engineering at the University of California at Berkeley with highest honors (cumulative G.P.A. 3.93) and a Bachelors of Science degree in Electrical Engineering and Computer Science (minor in bioelectric systems). I received my M.D. from the University of California at Los Angeles in 1982, graduating with a 3.97 G.P.A. and receiving the Sandoz Awared for "Excellence in the Behavioral Sciences." I remained at UCLA for both my rotating internship, during which I focused on internal medicine, neurology, and pediatrics and for my three-year residency training in psychiatry. My final year of residency was at the West Los Angeles Veterans Affairs Medical Center. Over the next two years, I was a Post Doctoral Research Scholar at UCLA, a fellowship position through the National Institute of Mental Health during which I learned and applied clinical research techniques for the study of persons with severe schizophrenia.

1

3. I am the Vice-President in charge of research and continuing medical education for Exodus Inc. in Culver City, California and also Clinical Director of Exodus Real Recovery in Agoura Hills, California. In my clinical psychiatric practice, I see approximately 325 new patients in a typical month; supervise nearly a dozen psychology doctoral candidates; and teach over a dozen nursing, social work, and nurse practitioner students.

4. Over the decades between 1986 and 2006, both my clinical work and research focus remained on the treatment of persons with schizophrenia. I was the Chief of the Schizophrenia Treatment Unit at the VA Medical Center during the vast bulk of this epoch, and was also the Co-Chief of the Schizophrenia Outpatient Research Clinic during the last ten years. I have attached my curriculum vitae and the report I submitted to counsel for Plaintiffs in this litigation as Exhibits A and B respectively, and I incorporate those documents by reference herein.

5. In my 25-plus years of clinical and research experience, I have had countless, significant, and frequent opportunities to read, review, and apply to my clinical practice with patients the information contained on FDA-approved prescription medicine labels/package inserts. I am particularly familiar with the warnings and other labeling information accompanying a class of antipsychotic medications commonly referred to as second generation antipsychotics such as risperidone ("Risperdal"), olanzapine ("Zyprexa"), ziprasidone ("Geodon"), aripiprazole ("Abilify"), and quetiapine (Seroquel).

6. With particular respect to Seroquel's 1997-to-present label concerning weight gain, it is my opinion that, rather than adequately "warn" about the 23%-33% or higher risk

2

of statistically significant weight gain that AstraZeneca observed in clinical trials of Seroquel, the company obscured and buried the weight gain data and, more importantly, the effect of the data by putting it in the "adverse reaction" section of the label. AstraZeneca has never "warned" about weight gain because the necessary information concerning weight gain is not clearly stated in the "warnings" section of the label. As a practicing clinician, it is unclear, ambiguous, and misleading to prescribing doctors for the single most prominent serious toxic characteristic of this drug (statistically significant weight gain) not to be included in the "warnings" section of the label where a prescribing physician would expect to find such information. The "adverse reactions" section on the package insert is near the end of the labeling, very often several dozen paragraphs following the "warnings" section, and is akin to a laundry list. In practice, it is quite simply not given the same attention or priority by prescribers as the "warnings" and "precautions" sections near the beginning of the label. Therefore, the warning given regarding weight gain is inadequate. As shown by the true and correct copy of the Physicians' Desk Reference section on Seroquel from 2004, attached as Exhibit C, the highlighted weight gain information is dwarfed by the overwhelming balance of other information about the drug.

7. The 1997-to-present Seroquel label is also unclear, inaccurate, and misleading because weight gains of the magnitude that Seroquel causes, according to its own label and the company's data, are impressively large and impact an amazingly large and consistent percentage of patients. The serious and frequently deadly health consequences associated with weight gain (namely hyperglycemia and diabetes mellitus, and complications therefrom) necessitated adequate warning. Such warning should have appeared in the "warnings" not

3

"adverse reactions" section of the label. Placement of the weight gain clinical trials data in the "adverse reactions" section inadequately conveys to prescribing physicians the severity of the health consequences associated with a 23%-33% or more weight increase associated with Seroquel treatment, further rendering the inclusion of such data in the adverse reactions section inadequate. Additionally, the label fails to describe any of the health consequences for which weight gain creates an increased risk—i.e., hyperglycemia and diabetes mellitus, among other serious and potentially lethal health concerns including increases in total cholesterol and triglycerides in the blood, secondary risks for cardiovascular disease, increased rates of degenerative osteoarthritis, and even increased risks for certain malignancies (e.g., colon cancer). To put it another way, the labeling fails to state a "cause and effect" relationship between the statistically significant weight gain accompanying Seroquel use and the increase in glucose dysregulation that was also revealed by AstraZeneca's clinical trials and company data that I have reviewed.

8.  Regarding AstraZeneca's marketing materials during this same period with respect to weight gain, as well as sales representatives' direct messages (discussions) to physicians, the materials that I have reviewed, including Doctor Brecher's 2000 article and Doctor Nasrallah's 2002 article, informed doctors that Seroquel did not cause weight gain or had favorable weight profiles. Sales materials profiling patient experiences with Seroquel by a Doctor Reinstein, which I have reviewed, implied that weight loss along with improvement of diabetes was a beneficial side effect of Seroquel. Further, despite information identifying weight gain as a dose-dependent side effect, AstraZeneca has repeatedly stated in its sponsored literature and marketing material that I reviewed (e.g., the Brecher and Nasrallah

4

articles) that there is no dose-dependent relationship between Seroquel and weight gain Other marketing messages included claims that Seroquel is "weight neutral" or causes "minimal weight gain," further obscuring and diluting the severity of any mention of clinically significant weight gain in the label's adverse reaction section. At best, such promotional messages further render the so-called "adverse reaction" regarding seriously hazardous weight gain unclear and ambiguous because on the one hand, the label and company data revealed that 23%-33% or more of Seroquel users will experience clinically significant weight gain, but the sales message was that the drug is "weight neutral" causes "minimal weight gain" or has a "favorable weight profile." These sales messages not only contradicted what AstraZeneca knew about weight gain and Seroquel, from my review of Seroquel clinical trial data and company documents, they actually contradicted Seroquel's own approved label, undermining the clarity, accuracy, and unambiguousness of the label.

9. With respect to the pre-2004 label concerning hyperglycemia and diabetes mellitus, it is my opinion that AstraZeneca obscured and buried any mention of hyperglycemia and diabetes in the pre-2004 label by simply mentioning those words and characterizing the conditions as "infrequent" in the adverse reactions section of the label. AstraZeneca further obscures and confuses the issue by also listing "hypoglycemia" and "weight loss" as "infrequent" adverse reactions. This is simply no warning at all as to the true frequency and severity of those side effects suffered by Seroquel users. Documents I have reviewed showed that the company knew, prior to Seroquel's launch, that statistically significant weight gain increases by Seroquel users, would seriously impact patient health in terms of glucose dysregulation. Moreover, at least by 2000, documents I reviewed showed

5

that the company's medical safety director had concluded that Seroquel can cause impaired glucose dysregulation including diabetes.

10. The pre-2004 label is inadequate to warn prescribing physicians of the nature, severity, and frequency of the risk of hyperglycemia and diabetes mellitus associated with Seroquel, and for the above reasons is unclear, inaccurate, and ambiguous. It does not convey in a meaningful way the toxic potential of the drug and is confusing.

11. In addition, AstraZeneca's marketing materials and sales representatives' direct message "discussions" to physicians during this time further undermined any attempt by AstraZeneca to warn of hyperglycemia and diabetes mellitus in the pre-2004 label. For example, Dr. Nasrallah's 2002 paper cites a now discredited study by Dr. Reinstein suggesting that Seroquel patients lost weight and had their diabetes cured after taking Seroquel for ten weeks.

12. With respect to the 2004-2007 label for Seroquel regarding hyperglycemia and diabetes mellitus, the so-called "class label" warning section on hyperglycemia and diabetes is inadequate, unclear, and ambiguous because it is laced with generalities, disclaimers, and distracting verbiage. Specifically, it fails to accurately and clearly state the measured increases in new onset diabetes that are specific to Seroquel, which were significantly greater based on clinical trials and company documents that I have reviewed as compared to certain other second generation antipsychotics that also bear the class label warning.

13. Moreover, the class label neglects to accurately describe the level of Seroquel's risk of those side effects, which was extraordinary according to the clinical trials

6

and company documents that I have reviewed and as compared to second generation antipsychotics such as aripiprazole and ziprasidone, which studies show do not cause clinically significant weight gain and hyperglycemia/diabetes. Instead, the 2004-2007 label describes merely that hyperglycemia and related serious complications "has been reported" without any data whatsoever quantifying the rate of incidents and severity of such risks and complications, or identifying which second generation antipsychotics were the subject of such "reports." The label language then further waters down the "warning" by indicating that measurement of glucose abnormalities is complicated by factors such as an increased rate in diabetes among the schizophrenic or general populations. This warning is far from a model of clarity and unambiguousness given the conclusions that the company and other foreign regulatory bodies reached that a reasonable association between Seroquel and hyperglycemia/diabetes (if not a causal association as well) had already been established before and during the time period this label was in effect.

14. In addition, AstraZeneca's marketing materials and sales representatives' direct message "discussions" to physicians during this time further undermined and diluted the warning. For example, company documents reveal that physicians were still receiving correspondence from the company referencing the Reinstein study concluding that Seroquel may cause weight loss and reverse diabetes in sizeable numbers of patients. Other internal company communication revealed that the Brecher article was still being disseminated. The FDA also reprimanded AstraZeneca in 2006 for failing to disclose in promotional material the increased risk of hyperglycemia and diabetes mellitus in patients treated with Seroquel, resulting in the promotional material being "misleading" and "undermin[ing] the warning."

15. Based on clinical experience, the so-called class label warning is inadequate to communicate the true nature and severity of the hyperglycemia/diabetes mellitus risk associated with Seroquel alone to physicians prescribing Seroquel to their patients.

16. Additionally, based on documents I have reviewed, language associated with the class label warning was a product of negotiations between AstraZeneca and the FDA. For example, with respect to the January 2004 "Dear Doctor" letter relative to the "class label" warning sent by AstraZeneca, earlier correspondence between the FDA and AstraZeneca revealed that AstraZeneca desired to characterize the new "warning" as simply being "about hyperglycemia and diabetes in patients taking these medications," but the FDA stated that it "preferred" the statement "<u>describing increased risk of</u> hyperglycemia and diabetes in patients taking these medications." From the correspondence I reviewed, it appears as though AstraZeneca determined not to further press the issue with the FDA.

17. With respect to the label change that occurred in 2007 regarding the hyperglycemia and diabetes mellitus warning contained on Seroquel, while it directs one to new language in the "adverse events" section, it is my opinion that the 2007 label change is still inadequate because it fails to clearly, accurately, and unambiguously describe the alarming rate at which Seroquel users in long-term clinical trials contracted diabetes, and the necessary warning language that a prescribing physician would expect to see relative to that very significant risk is not contained in the "warnings" section. Instead mere cross-reference is made to clinical trials data the "adverse reactions" section. The "adverse reactions" section does not mention the word "diabetes," but examination of the data reveals that Seroquel patients in long-term clinical trials were over twice as likely to suffer diabetes than

patients taking placebo. Company documents that I have reviewed show that AstraZeneca has characterized the risk of diabetes-level blood glucose abnormalities associated with Seroquel as "common." The label is facially unclear, inaccurate, and misleading because the frequency and severity of the diabetes risk is not mentioned in the "warnings" section but instead is buried in the "adverse reactions" section, and because what is truly diabetes-level blood sugar is characterized merely as "hyperglycemia" and "increased blood sugar"—i.e., fasting blood glucose measurements (those taken 8 hours after a meal) that are $\geq$ 126 mg/dL or non-fasting blood glucose measurements $\geq$ 200 mg/dL is frank diabetes, not merely hyperglycemia. The label is also inadequate because it fails to clearly and unambiguously warn of a "cause and effect" relationship between Seroquel use and diabetes-level blood glucose abnormalities.

18.     The FDA is not satisfied with AstraZeneca's most recent Seroquel label change, as indicated in the June 2008 correspondence I have reviewed from the FDA to AstraZeneca. The FDA requested that the updated label be changed to add the additional information that "[t]he mean change in glucose from baseline was +5.0 mg/dl for SEROQUEL and –0.05 mg/dl for placebo," indicating that the FDA desires for AstraZeneca to reveal that there was more than a 5-fold increase in blood glucose levels between those subjects taking Seroquel and those taking placebo. The FDA also asked that AstraZeneca add the statement: "Because of limitations in the study design of these long-term trials as well as lack of confirmed fasting glucose data, the effects of Seroquel on blood glucose may be underestimated." In its letter, the FDA supported the additional statement above as follows:

9

> Since the 2-week long-term placebo-controlled bipolar maintenance trial studies were randomized withdrawal trials, there is some bias in that only subjects who were able to tolerate quetiapine in the open-label phase are then randomized. If subjects did not tolerate quetiapine in the open label phase, if they dropped out due to elevations in blood glucose for example, they would not be randomized and the overall effect of the drug on this parameter would be skewed. Therefore, because of this design issue, the overall effect of Seroquel on blood glucose could be underestimated.

Thus, the FDA wanted to provide clarity that the already negative blood glucose results stated in the new label—based on studies that effectively prescreened participants who did not well-tolerate Seroquel—actually may be even worse than the label reveals. AstraZeneca has not made the labeling changes that the FDA has requested as of the date of execution of this Declaration. AstraZeneca's evasive treatment and abstruseness with respect to this label change further confirms my opinion that AstraZeneca has not been forthright with physicians who prescribe Seroquel in the sense of "full disclosure" of pertinent, potentially life threatening (or certainly life-altering) healthcare information such that physicians may fully consider the risks and benefits and adequately advise and consult with their patients.

19. Overall, the inadequacy of Seroquel's labeling and accompanying misstatements of the risks associated with its use make it prohibitively difficult for a physician relying on such information to appreciate the true nature of Seroquel's risks and discuss those risks with his or her patients.

20. Furthermore, in my opinion, AstraZeneca's warnings for Seroquel appear to have been designed to obscure known risks associated with the drug, rather than to clearly, accurately, and unambiguously communicate risks to prescribing physicians in a frank,

explanatory manner such that they would have ready access to such critical information in treating their patients.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this the 19th day of November, 2008.

William C. Wirshing, M.D.