UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE: SEROQUEL PRODUCTS
LIABILITY LITIGATION

This document relates to:

ALL CASES

MDL DOCKET NO:
6:06-MDL-1769-ACC-DAB

PLAINTIFFS' RENEWED MOTION TO DE-DESIGNATE
DOCUMENTS IMPROPERLY CLAIMED AS PRIVILEGED

By this Motion, Plaintiffs identify dozens of additional, exemplifying entries on AstraZeneca's current privilege log, provided to Plaintiffs two months ago, referencing documents that AstraZeneca has already identified as responsive to Plaintiffs' discovery requests, but withheld from production because of privilege assertions—most likely in violation of this Court's and others' privilege rulings.

After *in camera* inspection of a small sampling of AstraZeneca documents by the Court last summer, the Court determined that ***more than half*** of the documents it reviewed had ***no sustainable privilege protection***. Yet, after AstraZeneca's re-review and reclassification of the so-called privileged documents as a whole, ***only 15 to 27 percent*** of the documents on the original privilege log were produced. In light of that significant numeric discrepancy, as well as the Court's recent instructions for the parties to turn their attention to preparing the non-Florida cases for possible remand,[1] it is entirely reasonable and appropriate to re-raise this issue before the MDL Court. In a nutshell, it is critical that Your Honor check

---

[1]     *See* Order of Feb. 11, 2009 (Doc. 1270); Pls.' Mem. in Support of Remand of Transferred Cases to the Transferor Cts. (Doc. 1387).

AstraZeneca's work to establish, with some level of judicial satisfaction and legal certainty, that AstraZeneca has substantially complied with the Court's instructions regarding the scope of privilege assertions.  All there is currently in that regard is the Company's "word," which is undermined by the facts that:

- on a pro rata basis, AstraZeneca produced something *less than half* the documents that the Court determined had no sustainable privilege associated with them;

- descriptions of the documents on the privilege log continue to be so vague and uninformative that Plaintiffs cannot reasonably determine where the attorneys' role arose with respect to particular communications, if it did at all, and whether any such role was exclusively or at least primarily for the purpose of giving legal advice;[2]

- it is well-documented that AstraZeneca over-designated both allegedly privileged and non-privileged/"confidential" documents;[3]

- AstraZeneca's dilatory conduct in discovery has already been found sanctionable;[4] and

- AstraZeneca failed to preserve intermediate, draft data relevant to the litigation.[5]

It is also prudent to review AstraZeneca's recounting of the privilege principles reportedly articulated by the Court in its *ex parte* meeting with defense counsel regarding privileged documents (the "Principles"),[6] especially since it appears AstraZeneca may have exclusively

---

[2]     *See* discussion of description inadequacies on the privilege log, *infra* at § II.B.

[3]     *See* Order of 5/7/2008 (Doc. 980, hereinafter the "Privilege Order"); Pls.' Resp. in Opp'n to AstraZeneca's Mot. to Maintain the Confidentiality of Certain Challenged Docs. Filed Under Seal as Ex. to Pls.' Mot. Resps. (Doc. 1258); Mot. of Bloomberg L.P. to Intervene to Seek Access to Judicial Rs. and Mem. of Law (Doc. 1284); Tr. of Feb. 26, 2009 Hr'g (Doc. 1325).

[4]     Order of 8/21/2007 (Doc. 393).

[5]     Order of 6/24/2008 (Doc. 1029).

[6]     AstraZeneca's Summ. of Att'y-Client Privilege and Work Product Principles Articulated by Magistrate Baker at May 19, 2008 *Ex Parte* Hearing (Doc. 1034).

relied on the broadly stated Principles as opposed to the Principles <u>and</u> the Court's Privilege Order in re-reviewing and reclassifying documents on the privilege log.

Fully desiring *not* to impose a significant burden on the Court to adjudge the faithfulness of AstraZeneca's current privilege designations—consisting of 16,009 log entries (presumably one entry per "document")—Plaintiffs request that the Court inspect a smaller, second subset consisting of 36 documents chosen by Plaintiffs from the log, all of which are identified and described herein based on the privilege log entries, and make a finding through a written Order that AstraZeneca either has or has not substantially complied with the Court's Privilege Order and applicable case law on which it is based.

To the extent the Court finds that AstraZeneca has *not* substantially complied with the Court's Orders, Plaintiffs request that the Court fashion an Order—without AstraZeneca's involvement or contribution—describing the deficiencies found by the Court and commanding that AstraZeneca re-review its privilege designations and produce documents with strict adherence to that Order within 30 days of issuance.  In that circumstance, Plaintiffs also request that the Court grant Plaintiffs leave to move promptly (and again) for discovery sanctions against AstraZeneca.

Furthermore, to the extent the Court agrees with Plaintiffs that the Principles are overly broad or inconsistent with the Court's Privilege Order and/or applicable law, Plaintiffs request that the Court articulate its own, revised principles—or permit Plaintiffs to do so on the Court's behalf—and order AstraZeneca to re-review the claimed privileged documents for production within 30 days in compliance with those revised principles and the Privilege Order.  Again, Plaintiffs would ask the Court to permit them leave to move for discovery

sanctions if Plaintiffs deem such action to be necessary.

Finally, if the Court is satisfied that AstraZeneca did meet its obligation with respect to the current privilege log and corresponding documents withheld from production, Plaintiffs respectfully request that the Court so indicate in its written Order following the requested *in camera* review.

# I.
# BACKGROUND

In January 2008, as the Florida Trial Program was in its infancy, Plaintiffs moved AstraZeneca for the first time to compel the production of documents that were improperly claimed as privileged.  (Doc. 789.)  Four months later, in May 2008, after one *in camera* review of approximately 75 documents, the Court issued its Privilege Order (Doc. 980) stating that the Court found "***most of the claims of privilege*** not sustained."[7]  (*Id.* at 13

---

[7]     With respect to the 75 documents reviewed by the Court, it noted the following significant discrepancies regarding Plaintiffs' document choices for the Court's review from privilege log entries, versus the documents that AstraZeneca ultimately provided the Court for inspection:

> At a status conference on March 11, 2008, the Court ordered Plaintiffs to select and AstraZeneca to file under seal the documents and privilege log entries from the 100 documents selected by Plaintiffs in two batches of 50 documents each on March 13 and 14, 2008.  Doc. No. 893.  The Court decided on 100 as the total size of the sample for rulings that would allow a fair representation to guide the parties going forward.

> As Plaintiffs describe it, after they served AstraZeneca with the list of the first 50 documents on March 13, 2008, AstraZeneca informed them that 13 of the documents were pulled off the privilege log by AstraZeneca; 17 more were produced to Plaintiffs the following day.  Doc. No. 916[].  AstraZeneca allowed Plaintiffs to identify additional choices in the next selection due March 14.  Doc. No. 916.  Plaintiffs contend that by their count, after several submissions to AstraZeneca totaling 147 documents, 26 documents remained in dispute, but AstraZeneca ultimately chose only 75 to submit for *in camera* review.  Doc. No. 916.  The Court's intent in having Plaintiffs choose 100 documents was to pick a large enough sample with enough variety to provide the parties with some meaningful guidance on whether the privileges as asserted by AstraZeneca applied to the chosen documents.  ***AstraZeneca's self-selected reduction supports the inferences that it has more than generally over-designated documents as privileged***

(emphasis added).)  "[A]ttorneys' roles [with respect to many exemplars reviewed by the Court were found] to be incidental at best."  (*Id.*)  "Attorney involvement look[ed] to be largely editorial (such as, for example, deleting a comma), rather than legal."  (*Id.* at 14.)  "***The great bulk of AstraZeneca's privilege claims*** suffer from [the] approach of simply relying on an attorney's tangential involvement in the process of creating a document to shield the entire process of gathering information and drafting and revising the document."  (Doc. 980 at 11 (emphasis added).)  Such a "'collaborative effort' argument, if successful, would effectively immunize all internal communications of the drug industry, thereby defeating the broad discovery authorized by the Federal Rules of Civil Procedure."  (*Id.* (citation omitted).)

In light of its above findings, among others, the Court endeavored to "provide guidance" to AstraZeneca "as to reclassification of the other documents withheld."  On May 19, 2008, the Court reviewed the selected documents with a designated AstraZeneca representative.  Thereafter, at the Court's instruction, AstraZeneca's counsel drafted and filed on June 27, 2008 its Summary of Attorney-Client Privilege and Work Product Principles Articulated by Magistrate Judge Baker at May 19, 2008 *Ex Parte* Hearing.  (Doc. 1034.)  Near the end of August 2008, Plaintiffs' co-lead counsel received the final production of documents resulting from AstraZeneca's renewed review and reclassification following the *ex parte* hearing.  In February 2009, Plaintiffs' co-lead counsel received the current privilege log.

---

***and that a significant number of unprivileged documents have not been produced.***

(Doc. 980 at 2-3 (emphasis added).)

Importantly, although the Court apparently determined that **more than 50 percent** of the 75 documents submitted for *in camera* inspection by the Court in early 2008 were not privileged (*see* Doc. 980 at 13 ("Applying these principles to the sample documents produce by AstraZeneca, the Court finds **most of the claims of privilege not sustained**")), AstraZeneca ultimately produced only 15 to 27 percent of the documents on the original privilege log.[8]

## III.
## ARGUMENT & AUTHORITIES

In view of the Court's consideration of a suggestion of remand to the Judicial Panel for Multidistrict Litigation of the non-Florida cases, one of the areas that the Court should finally resolve for the transferor courts is the matter of AstraZeneca's over-designation of documents on its privilege log, and concomitant withholding of those documents from production.  As before, Plaintiffs have identified examples from the log of likely over-designations and have listed and described them below.  Plaintiffs ask the Court to again undertake a brief review of the identified documents (*see* § II.B, *infra*) to ensure that AstraZeneca has fulfilled its obligations to the Court and under the federal evidence and civil procedure rules.  First and foremost, however, the Court should review AstraZeneca's rendition of the Principles it reports that the Court articulated, and determine whether those Principles are in full accordance with the Court's Privilege Order (Doc. 980) and applicable

---

[8]    Plaintiffs state that between 15 and 27 percent of the documents on the original privilege log were produced because there was a discrepancy, noted by the Court in its Privilege Order (Doc. 980), between Plaintiffs' and AstraZeneca's original counts of documents claimed as privileged.  (Doc. 980 at 1 & n.2.) Plaintiffs stated that 18,936 documents were originally claimed as privileged, while AstraZeneca claimed that number to be approximately 22,000.  (*Id.*)  By Plaintiffs' count, the current privilege log lists 16,009 documents.  Therefore, Plaintiffs contend, based on the discrepant original counts of documents claimed as privileged, that between 15 to 27 percent of the documents on the original list were removed and produced after the Court proceedings described above.

case law.  The Court may then determine whether AstraZeneca complied with the same.

A.    **AstraZeneca's Privilege Principles That It Reports Were Articulated By The Court Are Inconsistent With The Court's Privilege Order, And In Any Case Did Not Sufficiently Guide AstraZeneca's Privilege Determinations.**

It appears that AstraZeneca's re-review and reclassification of the documents claimed as privileged may have been guided only by the privilege Principles it drafted, rather than by the Principles *as well as* the Court's prior Order (Doc. 980) and applicable privilege law, as Plaintiffs contend should have been the case.  Aspects of the Privilege Principles (Doc. 1034) are overly broad and permit continued over-inclusion of non-privileged documents on the privilege log.  Plaintiffs note the following:

- Principle No. 1 states:  "The fact that the lawyer made only editorial changes, or no changes at all, does not mean that the lawyer did not provide legal review, for the lawyer's approval of a draft in its entirety or in large part still could arise from the lawyer's legal judgment, and in those circumstances would convey the lawyer's advice that the draft is acceptable from a legal perspective."  (Doc. 1034.)

- In addition, Principle No. 4 states in part:  "[O]nly the draft prepared for the lawyer's review, and statements referring to the advice to be sought from the lawyer, would be protected by the attorney-client privilege."

After extensive meeting and conferring with AstraZeneca's counsel during the months of March and April 2009, Plaintiffs' counsel learned that it is AstraZeneca's interpretation of this Principle that if a draft of a document was submitted to a lawyer for review, then the submitted document—and any transmitting (cover) document—is privileged in its entirety, whether or not the lawyer made any substantive comments or changes to the document, whether the document's original purpose or the lawyer's review is demonstrated to be "primarily legal," and/or whether subsequent versions of the document are produced.  That

position, however, is inconsistent with the following rationales from the Court's Privilege

Order (Doc. 980):

- "No misconception seems to be more common . . . than the belief that if a document or draft has been through the hands of an attorney, it thereby automatically becomes enshrouded in privilege's veil of secrecy . . . . Nothing is further from reality . . . .  Insulation from discovery cannot be so readily or fraudulently obtained."  (Doc. 980 at 11.)

- "***If the ultimate document is purely a business document which would not have received any protection based upon privilege in any event, draft language also receives no protection***.  But if there is attorney input on the draft, then the attorney-client or work product privileges may be implicated.  Drafts may be considered privileged if they were ***<u>prepared with the assistance of the attorney for the purpose of obtaining legal advice</u>*** or, ***after an attorney's advice, contain information a client considered but decided not to include in the final version***.  In other words, if the draft is prepared with attorney assistance, and contains words or language that do not appear in the final version, ***those words may be protected***."  (Doc. 980 at 4-5 (emphasis added).)

Therefore, contrasting Principle No. 1 with the above language from the Privilege Order, it is

clear that strict adherence to the Principle would still permit AstraZeneca to shield from

disclosure (as it did at least prior to the Court's first privilege review) business,

technological, science, marketing, and other non-legal documents because they were

submitted to an attorney, purportedly for review.  As this Court declared in its Privilege

Order:

- "When documents concern business decisions or are the product of corporate committees responsible for business decisions in the area of "technological, science, public relations, or marketing," . . . it is the party claiming the privilege who has the burden of showing that the communications at issue are more than simply grammatical, editorial, technological, scientific, public relations, or marketing suggestions, ***and are specifically in the nature of legal advice***."  (Doc. 980 at 12.)

Thus, Plaintiffs are rightly concerned that documents ***still listed on the privilege log and withheld***, such as the 42 "agendas" (9 with the author unidentified), the 245 "draft internal training materials," 298 "draft marketing materials," 107 "draft labeling," 1,146 "draft reports" (364 with unidentified authors), 26 "marketing materials," 773 "reports" (394 with unidentified authors), and 246 slides (72 with unidentified authors), to name a few, are <u>business documents</u> not "specifically in the nature of legal advice," as the Privilege Order requires. (Doc. 980.) (*See* § II.B, *infra*.) The mere fact that they may have been submitted to a lawyer for review at some point in the chain does not automatically cloak the entire document in secrecy.

Similarly, Plaintiffs have grave concerns about the cavernous protections provided by Principle No. 2, which states:

> • If a draft or other communication is sent to a mixed audience of lawyers and non-lawyers, it is protected by the attorney-client privilege if (a) the lawyer's role was legal and (b) the lawyer's legal role predominated over the non-legal roles played by the non-lawyers. A lawyer's legal role can predominate in the following circumstances: (i) the non-lawyers were included on the communication to keep them informed that legal advice was being sought; (ii) the non-lawyers were included for the purpose of allowing them to assist the lawyer to render legal advice; or (iii) the draft was in the nature of a legal instrument (*e.g.*, a contract). A lawyer's legal role would not predominate if the non-lawyers were commenting for non-legal purposes as opposed to the purposes just described. (Doc. 1034.)

For example, it is impossible for Plaintiffs to tell whether, in the instance that "non-lawyers were [supposedly] included on the communication to keep them informed that legal advice was being sought," that the lawyer's role in the communication (if any—other than merely being copied on the communication) was "legal," as is required. (Doc. 980 at 4 ("Corporate house counsel are often called upon to perform tasks that go beyond the traditional tasks

performed by lawyers.  Thus each document must be perused to see whether the attorney was involved in rendering legal advice . . . .") (citation omitted).)  Again, this description throws open the doors for continued, unjustified protection of non-privileged documents.

Furthermore, Principle 2 must be read in the context of the Privilege Order, which appears inconsistent at least as much as the Privilege Order states a presumption that "mixed audience" communications are not privileged:

- "When the business 'simultaneously sends communications to both lawyers and non-lawyers, *it usually cannot claim* that the primary purpose of the communication was for legal advice or assistance *because the communication served both business and legal purposes*.  If the document was prepared for purposes of simultaneous review by legal and non-legal personnel, *it cannot be said that the primary purpose of the document is to secure legal advice*.  <u>*Consequently, the privilege does not protect such communications.*</u>"  (Doc. 980 at 6.)[9]

- "*When non-legal departments of a corporation primarily concerned with technology, science, public relations or marketing make comments among themselves about matters within their corporate responsibilities, those communications are not protected by the attorney-client privilege.  When*

---

[9]     As the Court observed from Judge Fallon's privilege rulings in the *Vioxx* MDL:

> When these simultaneous conveyances for mixed purposes are through an e-mail message that lists the lawyers' names in the header of the e-mail message, [the defendant] Merck is revealing the contents of the single message that may have been conveyed to its lawyer primarily for legal assistance.  In that circumstance, the single message could have been withheld as a privileged communication had Merck sent blind copies to the lawyers, instead of electing this format.  Through a blind copy, the content of what was communicated to its attorney would have remained confidential after future discovery of the document from the other recipient's files, its purpose would have been primarily legal, and the privilege would have been applicable.  Similarly, if Merck had sent a wholly separate e-mail communication with the same materials to the lawyer, the same claim could be successfully made for that single communication even though it otherwise served mixed purposes.  In modern vernacular, Merck, in a variety of instances, "could have had a V-8," but it chose another format and manner of document circulation and cannot now be heard to complain about the consequences of those choices.  Otherwise, Merck would be able to limit the scope of what adversaries can discover by the way in which it chooses to communicate.

> *lawyers make the same comments about technology, science, public relations, or marketing, a different result is not warranted unless Merck demonstrates that those comments are primarily related to legal assistance.*" (Doc. 980 at 13 (emphasis in original).)

As Plaintiffs complained before, numerous documents on AstraZeneca's privilege log were sent to "mixed audiences" for "mixed purposes," and Plaintiffs cannot reason from the privilege log entries that such documents are entitled to protection. In any case, as described below, it appears that many "mixed audience" documents and communications listed on AstraZeneca's privilege log could not have involved a lawyer's "predominant" legal role.

**B.      Numerous Documents Listed On The Privilege Log Still Appear To Be Undeserving Of Privilege Protection.**

Plaintiffs are always at a disadvantage in determining whether a defendant has met its good faith obligations with respect to documents withheld for privilege. Such evaluation continues to be especially challenging in regard to AstraZeneca's privilege log because there are no descriptions of the documents provided other than a categorical identifier—e.g., "email," "agreement," "drafts," etc.[10] Defendants in related litigation have, for example, at least provided a document title, such as a "Dear Healthcare Provider Response" or "Final Draft of a DDMAC Response." *See* Fed. R. Civ. P. 26(b)(5) (privilege log must "describe the nature of the documents, communications, or tangible things not produced or disclosed— and do so in a manner that, without revealing information ***itself*** privileged or protected, ***will enable other parties to assess the claim***") (emphasis added). A consistent question with respect to all the documents listed below is whether the documents (many of which are multiple pages) could have had any legal advice therein redacted, with the remainder of the

---

[10]      A copy of the privilege log pages containing the entries described in this Motion, among others, is attached hereto as Exhibit A.

documents produced.

Nevertheless, Plaintiffs' counsel has now spent months and countless hours analyzing AstraZeneca's February 2009 privilege log, and has identified the following areas and documents that likely do not comply with the Court's Privilege Order:

1.   ***Entries with no identified author(s) or recipient(s), much less identified <u>attorney</u> author(s) or recipient(s)***

Out of the 16,009 documents on the privilege log, some 2047 contain no information identifying the documents' authors or recipients.  For example,

- **AZSERP181999-2008**  (a ten-page draft slide set, which supposedly "<u>forwards</u> [?] document providing legal advice about development and testing and clinical trials"; however, there is no document on the log listed as an attachment to this slide set).

- **AZSERP0141857-59**  (a three-page memorandum, which reportedly "<u>forwards</u> [?] document requesting legal advice about development and testing and adverse events"; however, no document on the log is identified as an attachment to the memorandum).

- **AZSERP0064946-52** (a seven-page draft report, which purportedly "<u>forwards</u> [?] document requesting legal advice about development and testing and clinical trials" (emphasis added); however, there is no document on the log listed as an attachment to this draft report).

- **AZSERP0161363-66** (a four-page draft of <u>marketing materials</u>, which purportedly "conveys <u>legal advice</u> received from counsel about marketing, internal training and communications with health care professionals"; however, no attorney or other source of "legal advice" is identified anywhere in the entry).

- **AZSERP0049400-01** (a two-page draft report, which reportedly "conveys legal advice received from counsel about corporate legal issues and clinical trials"; however, no attorney or other source of "legal advice" or "legal information" is identified anywhere in the entry).

>    **2.**     ***Entries that fail to identify attorney involvement in the communication***

Plaintiffs cannot tell from the following log entries what the role of an attorney was, much less whether the attorney's role was "legal":

- **AZSERP0134291-307** (a seventeen-page report authored by Wayne Geller, Medical Director, Drug Safety with no identified recipients; the report supposedly "reflects <u>activities performed at the request of legal counsel</u> about corporate legal issues and regulatory litigation").

- **AZSERP0058476** (a one-page draft report authored by a non-attorney and received by unknown individuals; the draft reportedly "<u>forwards</u> document requesting legal advice about development and testing, clinical practices and clinical trials"; yet, no document on the privilege log is identified as an attachment to the draft report).

- **AZSERP0039811** (a one-page email authored by a non-attorney and sent to the Seroquel Global Core Team; the email purportedly "conveys legal advice received from counsel about corporate legal issues and internal corporate management issues").

- **AZSERP0000335 and AZSERP0000336-337** (a one-page email and a two-page internal training document; the email was written by J. Rastad, Seroquel Global Product Director, to numerous email groups; the email supposedly "conveys legal advice received from counsel about corporate legal issues, communications with health care professionals and internal training" and "[f]orwards memorandum from legal regarding guidance on the creation of business documents"; the attached internal training document has no identifying information and purportedly "provides legal advice about corporate legal issues, internal training and communications with health care professionals").

- **AZSERP196294 and AZSERP196295-298** (a one-page email and a four-page draft of internal training materials; the email was written by a non-attorney and received by a non-attorney; the email reportedly "conveys legal advice from counsel about corporate legal issues and advertising" and "forwards document containing legal revision"; the attached draft materials have no identified author and/or recipient; the draft allegedly "conveys legal advice received from counsel about corporate legal issues and advertising").

3.    *Entries where no attorneys are listed as authors or recipients, but attorneys names are merely listed in the "reason for withholding"*

The following document sets generally contain multiple components, but it is not clear what the attorneys' role was (if any) as to all the components, or if the entirety of the document sets contain "legal advice"—i.e., whether at least parts of the documents could have been produced, or redacted and produced, instead of the documents being withheld from production in their entirety:

- **AZSERP0045474-75** (a two-page email sent and received by non-attorneys; the email supposedly "conveys legal advice received from counsel about corporate legal issues and agreements" and "[f]orwards an email from Michele Campbell rendering legal advice regarding Congressional Inquiry").

- **AZSERP0152244-45, AZSERP0045637-56, and AZSERP0045657-88** (a two-page email with two attachments; the attachments are a twenty-page draft slide set and a thirty-two page draft slide set; the email and attachments were authored and received by non-attorneys; the email reportedly "conveys legal advice received from counsel about corporate legal issues and communications with health care professionals" and "[f]orwards earlier email from Julia Manning providing legal advice regarding marketing"; the first attached slide set purportedly "conveys legal advice received from counsel about corporate legal issues, product promotion and communications with health care professionals" and "provid[es] legal advice regarding marketing"; the second attached slide set supposedly "conveys legal advice received from counsel about corporate legal issues and communications with health care professionals" in addition to "providing legal advice regarding marketing").

- **AZSERP0099399-400 and AZSERP0099401-415** (a two-page email and a fifteen-page draft memorandum; the email was authored and received by non-attorneys; identifying information for the memorandum is not present; the email reportedly "conveys legal advice received from counsel about contracts, development and testing, communications with patients or patient groups and clinical trials" and "[f]orwards email and document from Michelle Dillione that provides legal advice regarding informed consent"; the attached draft memorandum purportedly "conveys legal advice received from counsel about contracts, development and testing, communications with patients or patient groups and clinical trials").

- **AZSERP0028659 and AZSERP0028660** (a one-page email and one-page draft letter; the email was authored and received by non-attorneys, while the author and recipients of the draft letter are unidentified; the email supposedly "conveys legal advice received from counsel about contracts and product promotion" and "[f]orwards email and attachment from Michelle Dillione providing legal advice regarding product promotion"; the draft letter reportedly "conveys legal advice received from counsel about contractual matters, product promotion and communications with health care professionals" and the document was purportedly "sent by Michelle Dillione providing legal advice regarding an agreement").

- **AZSERP0054696-98 and AZSERP0054699-70** (a three-page email and two-page internal training document both of which were authored and received by non-attorneys; the email supposedly "conveys legal advice received from counsel about corporate legal issues, product promotion and clinical practices" and "[r]eflects activities performed at the request of Michelle Dillione regarding clinical practices"; the internal training materials reportedly "conveys legal advice received from counsel about corporate legal issues and clinical practices" while "conveying legal advice from Michelle Dillione regarding clinical practices").

### 4. *Documents authored by non-attorneys and sent to mixed audiences of non-attorneys and one or more attorneys*

Plaintiffs cannot identify whether the following documents, authored and transmitted by non-attorneys to mixed audiences, are "primarily legal" in nature or have instead a non-privileged business, or mixed business/legal, purpose:

- **AZSERP0234669-70** (a two-page email authored by a non-attorney and received by a mixed audience, including one attorney (Julia Manning); the email reportedly "conveys legal advice received from counsel about corporate legal issues and actions by competitors").

- **AZSERP0068619** (a one-page email authored by a non-attorney, received by non-attorneys, and carbon copying an attorney (Ann Booth-Barbarin); the email purportedly "conveys legal advice from counsel about contractual matters and communications with health care professionals" and "[r]equests legal approval of contracts and sales vouchers from Ann Booth-Barbarin").

- **AZSERP0099500-501** (a two-page email authored by a non-attorney and received by thirty-one individuals, one of whom was an attorney (Julia

15

Manning); the email supposedly "conveys legal advice received from counsel about contractual matters, clinical trials and agreements").

- **AZSERP0116574** (a one-page email authored by a non-attorney, sent to a group ("SQL ALL SDL") and carbon copied to 15 individuals including one attorney (Michelle Dillione); the email purportedly "conveys legal advice received from counsel about corporate legal issues and clinical trials" and "provides legal advice received from AZ Legal Department regarding clinical trials").

- **AZSERP182290, AZSERP182291-95 and AZSERP182296** (a one-page email and two attachments authored by a non-attorney, received by non-attorneys and carbon copied to two attorneys (Julia Manning and Laura Davies); the attachments are a five-page draft slide set and a one-page draft slide; the email reportedly "conveys legal advice received from counsel about corporate legal issues and adverse events" and "[f]orwards documents conveying legal advice received from the AZ Legal Team"; the attached draft slides purportedly "reflect activities performed at the request of legal counsel about corporate legal issues and adverse events").

### 5.     *Documents to or from third parties outside AstraZeneca*

The documents listed below were sent to or received from persons and/or third parties

outside the AstraZeneca corporate umbrella, to which the attorney-client privilege does not

extend, (Doc. 980 ("Documents prepared for dissemination to third parties are not protected

from discovery by either the attorney-client or the work product privilege.")):

- **AZSERP0229016-25** (a ten-page report authored by an employee of Parexel, a third-party responsible for medical communications and publications, with unidentified recipients; the report supposedly "conveys legal advice received from counsel about corporate legal issues and agreements" and "[d]etails attorney involvement in pending agreements, licensing, and legal issues").

- **AZSERP191518 and AZSERP191519-21** (a one-page email and three-page draft report authored by an employee of Simpson Healthcare, a medical education services and marketing company,  received by additional Simpson Healthcare staff and non-attorneys at AstraZeneca; the email reportedly "conveys legal advice received from counsel about corporate legal issues and communications with health care professionals" and "[c]onveys legal advice from Michelle Dillione regarding training of speakers"; the attached draft

report purportedly "conveys legal advice received from counsel about
corporate legal issues and communications with health care professionals").

- **AZSERP0141725-26** (a two-page email authored by a non-attorney and
received by employees of Saatchi & Saatchi, an advertising firm; the email
supposedly "conveys legal advice received from counsel about contracts and
advertising" and "[f]orwards legal advice from Enid Stebbins regarding
contractual matters").

- **AZSERP211846 and AZSERP211847-79** (a one-page email and thirty-three
page agreement; the email was authored by a non-attorney and received by an
employee of Mapi Values USA, a company responsible for health economic
and patient reported outcomes projects and reportedly "conveys legal advice
received from counsel about contractual matters and agreements" and
"[f]orwards a document from Michelle Dillione that provides legal advice
regarding clinical studies"; the attached agreement, created three years prior to
the creation of the email, was authored by attorneys and purportedly "provides
legal advice about contracts and agreements").

- **AZSERP182404,   AZSERP182405-406,   AZSERP182407-410   and
AZSERP182411-412** (a one-page email and three attached agreements; the
email authored by a non-attorney was received by employees of Burson-
Marsteller, a public relations firm, and carbon copied AstraZeneca personnel
and one attorney; additionally, the email supposedly "conveys legal advice
received from counsel about contractual matters and clinical trials" and
"conveys legal advice from Enid Stebbins regarding contracts"; the attached
agreements lack any identifying information and reportedly "convey legal
advice received from counsel about contractual matters and clinical trials").

6.   *Entries that reflect documents on studies, trials, research, or scientific data*

With respect to the following sampling of documents, it is unclear whether any legal

purpose of the documents is primary to the apparent business purposes:

- **AZSERP0070340** (a one-page email authored by the Seroquel Global Brand
Manager, was received by a mixed audience including two attorneys; the
email purportedly "conveys legal advice received from counsel about
contracts, corporate legal issues and clinical trials").

- **AZSERP0158885** (a one-page email authored and received by non-attorneys
was withheld because it supposedly "conveys legal advice received from
counsel about corporate legal issues and clinical trials" and "[f]orwards an

email from Margaret Anderson that provides legal advice regarding a draft marketing document").

- **AZSERP0109682 and AZSERP0109683-84** (a one-page email and two-page memorandum; the email was authored by an attorney and sent to non-attorneys and reportedly "provides legal advice about corporate legal issues and clinical trials"; the attached memorandum is authored by a non-attorney with no identified recipients and purportedly "conveys legal advice received from counsel about corporate legal issues and clinical trials").

- **AZSERP0172256** (a one-page email from a non-attorney to a paralegal; the email supposedly "conveys legal advice received from counsel about contracts and clinical trials").

- **AZSERP0037159 and AZSERP0037160-64** (a one-page email and five-page draft internal training document; the email was authored by a non-attorney and received by twenty-three individuals, including two attorneys; the email reportedly "conveys legal advice received from counsel about development and testing, clinical trials and adverse events" and "[c]onveys updates provided by Laura Davies of AZ legal"; the attached training document was authored by a non-attorney with unknown recipients and purportedly "conveys legal advice received from counsel about development and testing, clinical trials and adverse events" and "[c]onveys updates provided by AZ legal via Laura Davies").

### 7. *Entries that reflect marketing, promotional activity, and/or public relations*

Again, Plaintiffs are unable to determine whether any legal purpose of the documents

overcomes the apparent business purposes:

- **AZSERP203914 and AZSERP203915-18** (a one-page email and four-page draft letter; the email was authored and received by non-attorney personnel and reportedly "provides information disclosing legal advice about contracts and marketing" and "[f]orwards legal advice on contract from Michelle Dillione"; the author and recipients of the draft letter are unidentified and the document was withheld because it purportedly "conveys legal advice received from counsel about contracts and marketing").

- **AZSERP0067914-15** (a two-page email authored by a non-attorney and received by a mixed audience, including one attorney; the email supposedly "conveys legal advice received from counsel about contracts, corporate legal issues, product promotion and communications with health care professionals").

- **AZSERP0054767, AZSERP0054768-801, and AZSERP0033901-912** (a one-page calendar entry with two attachments, a thirty-four page draft slide set and a twelve-page draft slide set; the calendar entry was received by a mixed audience; one slide set has no identifying information, while the other was authored by non-attorneys and lists no recipients; the calendar entry reportedly "requests legal advice about development and testing and product promotion"; the first slide set purportedly "provides information involving legal advice about development and testing and product promotion"; the second slide set supposedly "provides information involving legal advice about marketing and product promotion").

8. *Documents that discuss regulatory issues*

- **AZSERP0115309-10** (a two-page email authored and received by non-attorneys was withheld because it reportedly "conveys legal advice received from counsel about contracts, product licensing and agreements" and "[f]orwards and email from Luke Talbutt that conveys legal advice regarding international regulatory issues").

- **AZSERP0242480-86** (a seven-page report with unidentified authors and recipients the purportedly "reflects activities performed at the request of legal counsel about corporate legal issues and regulatory issues" and "[r]eflects results of a project performed at the request of counsel relating to non-U.S. countries").

- **AZSERP0070741-73 and AZSERP0070744-64** (a three-page email and twenty-one page report; the email was authored and received by non-attorneys and supposedly "reflects activities performed at the request of legal counsel about corporate legal issues and communications with regulatory authorities" and "Reflects activities performed at the forwarded request of Marc Stanislawczyk regarding government inqui[ry]"; the attached report has no identified authors or recipients and reportedly "reflects activities performed at the request of legal counsel about corporate legal issues and communications with regulatory authorities" and "[p]rovides information in response to a request by Marc Stanislawczyk regarding government inquiries").

\* \* \*

Plaintiffs are able to provide the Court numerous other examples, if the Court so requests. However, for purposes of an expeditious and less-burdensome review, Plaintiffs at a minimum ask the Court to review the above-identified documents *in camera*.

**III.**

**CONCLUSION**

For all the foregoing reasons, Plaintiffs respectfully request that the Court undertake an *in camera* review of the documents identified herein and thereafter grant Plaintiffs the relief they seek in this Motion. (*See* p. 3, *supra*.)

DATED: April 25, 2009                Respectfully submitted,

By:    /s/ F. Kenneth Bailey Jr.
              F. Kenneth Bailey Jr.
              K. Camp Bailey
              Fletcher V. Trammell
              Robert W. Cowan
              **BAILEY PERRIN BAILEY**
              440 Louisiana St., Suite 2100
              Houston, Texas 77002
              (713) 425-7100 Telephone
              (713) 425-7101 Facsimile
              kbailey@bpblaw.com
              cbailey@bpblaw.com
              ftrammell@bpblaw.com
              rcowan@bpblaw.com
              **Co-Lead Counsel for Plaintiffs**

<u>**CERTIFICATE OF CONFERENCE PURSUANT TO L.R. 3.01(g)**</u>

I HEREBY CERTIFY that prior to filing the foregoing PLAINTIFFS' RENEWED MOTION TO DE-DESIGNATE DOCUMENTS IMPROPERLY CLAIMED AS PRIVILEGED, Plaintiffs counsel met and conferred with defendants' counsel in an effort to resolve this dispute without Court involvement.  Plaintiffs and defendants were unable to resolve the matter absent Court involvement.

/s/  Robert W. Cowan
Robert W. Cowan

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 25th day of April, 2009, I electronically filed the foregoing: PLAINTIFFS' RENEWED MOTION TO DE-DESIGNATE DOCUMENTS IMPROPERLY CLAIMED AS PRIVILEGED with the Clerk of the Court by using the CM/ECF system which will send a Notice of Electronic Filing to all counsel of record that are registered with the Court's CM/ECF system.

/s/  Robert W. Cowan
Robert W. Cowan