# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

IN RE:  Seroquel Products Liability Litigation

MDL DOCKET NO. 1769

This Document Relates to All Cases

_____

## ASTRAZENECA'S SUBMISSION REGARDING POST-REMAND DISCOVERY AND OUTSTANDING LEGAL ISSUES

In accordance with the Court's May 1, 2009 Order, Doc. No. 1419 (the "May 1 Order"), AstraZeneca Pharmaceuticals LP and AstraZeneca LP ("AstraZeneca") hereby submit the following proposal regarding (a) the appropriate scope of case-specific discovery after remand, and (b) the significant case-specific and state law issues remaining for adjudication.  *See* Doc. No. 1419 at 3.

**I.   Appropriate Scope of Case-Specific Discovery After Remand**

**A.   Status of Case-Specific Discovery in the Non-Florida Cases**

1.   Plaintiffs in most of the active, non-Florida cases have served AstraZeneca with verified Plaintiff Fact Sheets ("PFSs") and signed medical records authorizations.  The only exceptions are (a) approximately 40 cases recently transferred to this MDL in which PFSs are not yet due, and (b) approximately 173 cases in which plaintiffs failed to serve verified PFSs and records authorizations when due.  AstraZeneca has moved to dismiss cases in the latter category.  *See, e.g.*, 05/13/09 Motion to Dismiss, Doc. No. 1430 (moving to dismiss 95 plaintiffs for PFS failures).  This Court should not remand any case in

which plaintiff has not yet served a verified PFS and a signed records authorization.

(Attached as Appendix A is a current list of all such cases).

2.      **No depositions have been taken** in any of the nearly 6,000 non-Florida cases, except for the 66 active cases listed in Appendix B.  Consequently, all of the case-specific deposition discovery work in each case still must occur in the proceedings after remand.

3.      **Both AstraZeneca and plaintiffs have previously told the Court that they intend to name additional general experts** in the non-Florida cases.

4.      **No case-specific experts have been designated** by either plaintiffs or AstraZeneca in any of the non-Florida cases.

5.      Pursuant to Case Management Order ("CMO") No. 4, Doc. No. 263, a limited number of fact depositions (no more than four per case) were taken in 66 active non-Florida cases.  (Appendix B lists those cases.)  This is, of course, a very small subset of the deposition discovery that will need to occur in each of the 66 non-Florida cases and, again, no case-specific deposition or other discovery has been done in the remainder of the cases to be remanded.

**B.      General Approach To Post-Remand Case-Specific Discovery**

The discovery program that the Court implemented in the Florida Initial Trial Pool ("ITP") cases worked well.  This Court should recommend that the transferor courts implement similar or comparable programs, as set forth in subsections 1-7, below, with respect to each group of cases in which discovery is taken.  AstraZeneca respectfully suggests, however, that the Court not recommend to the transferor courts how many cases

should be subject to discovery at one time or on what schedule, or how groups of cases should be chosen for discovery; those issues will turn on many factors specific to each transferor court.  In addition, AstraZeneca respectfully suggests that this Court not recommend any time periods or cut-off dates for case-specific fact and expert discovery, or for motion practice following the close of discovery – except that AstraZeneca would request this Court advise the transferor courts that AstraZeneca should be afforded adequate time to take and complete all of the case-specific discovery that remains to be done in each of the remanded cases.

### 1.       PFS Requirements

CMO No. 2 required every plaintiff to provide a PFS, *see* Doc. No. 129 at 2-4, but the PFSs provided under CMO No. 2 proved to be grossly inaccurate and incomplete, and plaintiffs largely ignored their obligation to update their PFSs.  Accordingly, the Court issued CMO No. 5, which required each Florida plaintiff to supplement his/her PFS to cure deficiencies that AstraZeneca had identified.  Doc. No. 792 at 4.  The PFS supplementation program under CMO. No. 5 worked well:  173 of the 174 Florida plaintiffs provided substantive information that had not been included in their original PFSs.  Even the supplemental PFSs were often inaccurate, however, and in many cases, the fundamental facts, *e.g.*, dates of Seroquel use and diabetes diagnosis, were not revealed until depositions were taken.

The original PFSs of the non-Florida plaintiffs are no doubt just as outdated, inaccurate and incomplete as the original PFSs of the Florida plaintiffs.  Accordingly, the Court should recommend that the transferor courts implement a program requiring each

3

plaintiff to provide a supplemental PFS that cures whatever deficiencies AstraZeneca identifies, but the Court should also inform the transferor courts that even supplemental PFSs will often be largely inaccurate.

### 2.      Medical Records Authorizations

Plaintiffs' medical records authorizations are valid for five years from the date of signing.  Because many doctors and other providers refused to honor authorizations more than 90 days old, however, the Court entered an Order requiring  providers to accept all authorization forms dated after July 1, 2006 without requesting or requiring a differently dated authorization. CS Administrative Order No. 4, Doc. No. 867 at paragraph 4(h).  This Court should recommend that transferor courts enter similar orders.

### 3.      Fact Depositions

CMO No. 5 established a protocol for full case-specific fact discovery in the Florida ITP cases.  *See* Doc. No. 792.  Except as specified, all discovery was to "be conducted in accordance with the Federal Rules of Civil Procedure;" each party was allowed to take up to 10 fact depositions; and depositions of sales representative were limited to 5 hours. *Id.* at 4-6.

This Court also adopted a series of "CS Administrative Orders" proposed by the parties and the Special Master and Project Management Office for Case-Specific Discovery ("PMO").  *See* Doc. Nos. 483; 484; 867; 1000; 1006.  These Orders established general deposition procedures, Doc. No. 1006, and assisted the parties and the PMO in scheduling doctor depositions, Doc. No. 483, compensating doctors for deposition attendance, Doc. No. 484, and collecting plaintiffs' medical records, Doc. Nos. 867; 1000.  This Court also ordered

that lawyers did not have to be admitted *pro hac vice* in order to participate in MDL depositions. *See* Doc. No. 403.

This Court's orders and protocols related to case-specific fact depositions in the ITP cases worked well. The Court should recommend that the transferor courts adopt similar protocols.

### 4.      General Expert Disclosures and Depositions

AstraZeneca is filing today a Motion for Clarification of the Court's May 1, 2009 Order, asking the Court to clarify whether designation of additional general experts for the non-Florida cases is to occur in the MDL or in the transferor courts, after remand. If the Court decides that the designation and depositions of additional general expert witnesses in the non-Florida cases (together with *Daubert* motions and hearings) should occur in the transferor courts, then the Court should recommend that the transferor courts adopt protocols for general experts that are consistent with those set forth in the Court's Order of August 1, 2008, Doc. No. 1059, in combination with CMO No. 5 and the Court's July 14, 2008 Order, Doc. No. 1044 at 3.

### 5.      Case-Specific Expert Disclosures and Depositions

CMO No. 5, in combination with the Court's Orders of July 14, 2008 and August 1, 2008, established a protocol for the disclosure of case-specific expert witnesses, service of reports, depositions of the experts, and *Daubert* motion practice in the ITP cases. *See* Doc. Nos. 792 at 6-7; 1044 at 2-3; 1059 at 1-3. The Court set a date following the close of fact discovery by which plaintiffs had to designate and provide reports for their case-specific experts; AstraZeneca was given a set amount of time thereafter to designate and provide

reports for its case-specific experts; the parties were given a fixed time period thereafter to depose all case-specific experts; and the Court ordered that if both parties designated experts with the same specialization in the same case (*e.g.*, an endocrinology expert for plaintiff John Doe), plaintiff's expert would be deposed before AstraZeneca's.  Doc. Nos. 792 at 6; 1044 at 2; 1059 at 1-2.

Daubert motion practice then followed after the close of expert discovery.  Doc. Nos. 792 at 6-7; 1044 at 2-3; 1059 at 2-3.  The parties also were permitted to request an evidentiary hearing on their motions.  Doc. No. 792 at 6-7; 1059 at 2.  Finally, the Court dismissed for failure to prosecute the cases of those ITP plaintiffs who failed to serve case-specific expert reports and refused to dismiss their cases voluntarily after their counsel moved to withdraw.  *See Michael v. AstraZeneca LP, et al.*, Case No. 6:07-cv-15762, Doc. No. 18; *Browning v. AstraZeneca LP, et al.*, Case No. 6:07-cv-13182, Doc. No. 18.

The Court's orders and protocols for case-specific experts worked well in the ITP cases.  The Court should recommend that the transferor courts implement similar or comparable orders and protocols.  However, AstraZeneca respectfully requests that this Court leave it to the discretion of the transferor courts to establish timelines governing expert witness disclosures, deposition practice, and resulting motion practice following the close of expert witness discovery.  Moreover, given the potentially dispositive significance of AstraZeneca's *Daubert* motion practice with respect to each plaintiff's case-specific causation witnesses – as illustrated by this Court's experience in the *Guinn* and *Haller* cases – this Court should consider advising the transferor courts to exercise their best discretion to ensure that both sides have ample and adequate time to develop and challenge under *Daubert*

the case-specific expert testimony that still must be developed and tested in each of the approximately 6,000 cases at issue.

### 6.    Written Discovery

This Court entered a series of Orders defining AstraZeneca's obligation to provide plaintiffs with case-specific documents and written information (call notes, accounts payable records, IMS data, and professional information requests related to a plaintiff's prescribing doctor) in conjunction with depositions that had been noticed by one or the other party. *See* Doc. Nos. 263 at 3; 348 at 2-3; 792 at 5. Other than that, the Court has not entered any orders addressing the parties' right to seek written discovery (*e.g.*, document requests, interrogatories, and requests for admission).

AstraZeneca expects that this Court will recommend that the transferor courts implement similar protocols.

### 7.    Timing of Discovery

The timing of case-specific discovery in each transferor court necessarily will have to take into account: (a) the number of cases remanded to each transferor court, (b) the timing of such remands, (c) the number of cases in which discovery will occur, (d) each transferor court's caseload, (e) whether some or all of the cases will be further transferred under 28 U.S.C. § 1404 to plaintiffs' districts of residence, and (f) the timing and number of such further transfers. The Court should not recommend any particular schedule for the completion of case-specific fact and expert discovery in the transferor courts.

### 8.      Scope of Generic Witness Testimony

Pursuant to the May 1 Order, the parties filed today a joint list of generic fact witnesses whose testimony they intend to offer at trial in any form other than live testimony. Doc. No. 1439.  The parties, however, disagree as to the scope of generic witness testimony that must be identified.

AstraZeneca is submitting testimony from generic fact witnesses relating to general issues of liability and injury.  Such testimony includes, inter alia, labeling, clinical trials, efficacy, alleged injuries, and company conduct.  These and other issues will be relevant to hundreds, if not thousands, of the cases in the MDL, and accordingly fall squarely within the scope of generic fact witness testimony that was to be taken and must be designated in the MDL.  Plaintiffs, however, apparently take a much narrower view of what the Court's Order contemplates.  Plaintiffs' position is that the only generic testimony embraced by the Court's Order is that which would necessarily appear in every single case.  That position is untenable and inconsistent with even plaintiffs' characterization of issues as generic or not generic.

For example, neither plaintiffs nor AstraZeneca dispute that diabetes is a generic issue in this case, but there are cases in the MDL where diabetes is not even a claimed injury.  At the same time, plaintiffs are now claiming that any injury other than diabetes is not a generic issue, even though there are 850 cases in which plaintiffs allege injuries other

than diabetes,[1] and plaintiffs were afforded every opportunity within the MDL to conduct discovery on such injuries.  Indeed, the Court expected that discovery of AstraZeneca relating to all cases would occur in this MDL.  *See* Case Management Order No. 5 , Doc. No. 792 (setting deadlines for completion of general discovery and depositions of all corporate witnesses, without regard to the types of cases or issues pending); *see also* April 30, 2008 Status Conference Transcript, *Hensley v. AstraZeneca*, 6:08-cv-6000 (the Court instructed plaintiff's counsel in a Neuroleptic Malignant Syndrome ("NMS") case to review NMS-related discovery already produced and determine what additional discovery of AstraZeneca related to NMS would need to be done in the MDL within the general discovery deadlines set by the Court).  Plaintiffs also conducted discovery of AstraZeneca relating to issues such as off-label promotion which have limited applicability to a subset of cases.

As other Courts have recognized, generic discovery is discovery that has "widespread application to **many** cases." *In re Wilson*, 451 F.3d 161, 164 (3d Cir. 2006) (emphasis added).  Plaintiffs' counsel represented to this Court that remand is now in order because **all** general discovery for **all** the cases in this MDL is complete.  *See* April 22, 2009 Hearing Tr. at 52:22-25; 53:10; 54:19-21; 73:22-24; Plaintiffs' Memorandum in Support of Remand, Doc. No. 1387 at 2.  Yet it now appears that plaintiffs seek to preserve various significant generic factual issues for resolution by the various transferor courts, thereby guaranteeing

---

[1] There are, for example, approximately 605 cases in which plaintiffs allege that their use of Seroquel caused them to suffer pancreatitis.  According to plaintiffs, testimony regarding whether Seroquel is even capable of causing pancreatitis in any individual, let alone whether it actually did cause pancreatitis in a specific plaintiff, is all case-specific and not generic. Plaintiffs' position cannot be right, and completely blurs the distinction this Court has repeatedly drawn between, for example, general causation issues and specific causation issues.

duplicative work, inconsistent rulings, and a thorough undermining of the entire purpose of the MDL.  Now is the time to address and resolve all generic factual issues, not just some of those issues.  What should remain for the transferor courts are case-specific factual issues, i.e., those that pertain solely to an individual plaintiff's claims.[2]

### C.   Post-Remand Role of the PMO

The PMO has been invaluable to the success of the discovery programs established by CMO Nos. 4 and 5.  AstraZeneca favors having the PMO play the same role in the case-specific discovery process after remand.  *See* Doc. Nos. 263; 271; 348; 638; 943.

### D.   Protective Order

This Court entered a Protective Order to protect confidential materials produced by the parties.  Doc. No. 487.  The provisions of the Protective Order will continue to remain in effect even after the conclusion of the litigation, including any appeals.  *See* Doc. 487 at ¶ 15.  AstraZeneca requests that the Court notify the transferor courts of the existence of the Protective Order.  In addition, AstraZeneca expects that any remaining confidentiality issues will be resolved by this Court before remand, and that the Court will so inform the transferor courts.

---

[2] Plaintiffs rely on the footnote in the Court's Order for their narrow view of what constitutes generic testimony.  The footnote refers to generic witnesses as "those witnesses who will offer testimony on issues common to all cases in this MDL."  (Doc. 1419).  As the foregoing discussion illustrates, plaintiffs place an overly literal reading on the Court's reference to "all" cases.  AstraZeneca respectfully submits that the Court's language does not mean that the only testimony to be designated must pertain to each and every single case as that would result in virtually no testimony being considered generic, but rather includes testimony that has "widespread application to many cases."  *See In re Wilson*, 451 F.3d at 164.

**II.    Significant Case-Specific and State Law Issues Remaining for Adjudication**

The May 1 Order also provided AstraZeneca an opportunity to submit a proposal for inclusion in the Court's order to the transferor courts that involves an "outline of the significant case-specific and state law issues remaining for adjudication, e.g., specific causation and the applicability of the learned intermediary doctrine." Doc. No. 1419 at 3. In what follows, AstraZeneca provides its best response under the circumstances, and does so without prejudicing or otherwise compromising any of its defenses and arguments in subsequent litigation of each individual case in the transferor courts.

As approximately 6,000 cases are set for remand, it is, of course, impossible to identify all of the significant case-specific and state law issues that may remain for litigation and adjudication – particularly given that the disparate laws of all fifty states may be implicated, depending on the resolution of choice-of-law issues in each case. Nonetheless, the following provides a non-exhaustive overview of significant case-specific and state-law issues that will or may need to be developed and determined in subsequent proceedings in the remanded cases. In terms of organization, AstraZeneca provides its response in the context of a *procedural sequence* that tracks those case-specific and other legal issues that this Court has confronted in the MDL proceedings over which it has so far presided, including the case-specific proceedings in the "Group One" Florida Trial Pool cases.

First, in the absence of a stipulated agreement between the parties in a given case, a threshold case-specific issue that every transferor court will need to confront is choice of law. Earlier in these MDL proceedings, the Court made this point in denying without prejudice AstraZeneca's Rule 12(c) motion for judgment on the pleadings with respect to the "design

defect" claims asserted by the several thousand MDL plaintiffs who reside in states that do not recognize such claims in the prescription drug context.  *See* Doc. No. 721.  As the Court observed, choice-of-law issues are sometimes best deferred until after certain discovery has been completed.  Here, virtually *no* case-specific discovery has been performed in approximately 99% of the cases to be remanded.  Thus, in the absence of some stipulated agreement between the parties, a substantial amount of work must be performed in each remanded case even before choice-of-law issues can be resolved by transferor courts.  Once the applicable law is determined, the transferor court can then assess whether and to what extent the particular state law governing the individual plaintiff's claims recognizes the causes of action asserted.  That applicable law will also frame other important questions concerning the legal requirements and other applicable substantive rules that govern, and limit, the plaintiff's ability to proceed on the claims asserted.  It is only after choice-of-law issues have been resolved – whether by stipulated agreement between the parties, or resolution of disputed issues by the applicable court – that the transferor courts could resolve appropriate motion practice to eliminate claims not recognized or otherwise limited by the underlying substantive state law.

Second, as the Court knows, one of the most important case-specific issues that will need to be addressed in each remanded case is whether the specific causation proof and testimony of plaintiffs' case-specific experts survives *Daubert* scrutiny – or, alternatively, as in *Guinn* and *Haller*, whether the testimony is scientifically unreliable and thereby rendered

inadmissible.[3]  Consequently, in each of the 6,000 remanded cases, there must ultimately be afforded adequate time in each case for collection of medical records, discovery of prescribing and treating physicians, case-specific expert witness development and disclosure of Rule 26 expert reports; for defense counsel to prepare for and take the deposition of each case-specific expert witness identified by each plaintiff; for defense counsel to receive and review the expert deposition transcripts, and then draft each case-specific *Daubert* motion to exclude each witness's specific causation testimony; and for completed briefing, *Daubert* hearings, and argument of all case-specific *Daubert* motions.  As the Court will recall from *Guinn*, *Haller*, and the remainder of the "Group One" Florida Trial Pool cases, the amount of work and substantive legal briefing on these potentially case-dispositive motions in each remanded case is very substantial and time consuming.

Third, as the Court is also aware from the dispositive motion practice in the "Group One" Florida Trial Pool cases, AstraZeneca expects to have numerous additional case-specific summary judgment arguments under applicable state law for judgment as a matter of law on all or some of each plaintiff's state-law claims.  The specific identity of each of the many arguments AstraZeneca may advance in each case will turn on the particular case-specific factual record developed in discovery in each individual case, as well as the particular underlying state law governing each individual plaintiff's claims.  This Court's experience in presiding over AstraZeneca's summary judgment motions in the "Group One"

---

[3] The critical nature of this case-specific inquiry is underscored by the recent *Daubert* exclusion decisions of Judge Slights of the Delaware Superior Court in this Seroquel litigation, and U.S. District Court Judge Weinstein of the Eastern District of New York in the Zyprexa litigation, both of which excluded case-specific expert testimony on "specific causation" under *Daubert* and its progeny along the same lines as this Court's rulings in *Guinn* and *Haller*.

Florida Trial Pool cases provides a useful illustration of at least some of the significant state law issues and arguments that can be expected to arise in each remanded case. *See* Omnibus Legal Memorandum, Doc. No. 1113. Those motions were governed by Florida law; the particular nature of each legal issue AstraZeneca may raise in these individual cases on remand will vary, perhaps significantly, depending on the particular state law determined to govern each plaintiff's substantive claims. As the Court will recall, AstraZeneca's summary judgment arguments under Florida state law in its dispositive motions filed in the Group One Florida Trial Pool cases included the following contentions:

- that plaintiffs could not satisfy their burden of proving that their alleged injuries were caused by Seroquel, because their case-specific expert testimony was either inadmissible under *Daubert* or insufficient under the governing state law causation standard;

- that plaintiffs' inadequate warning claims failed as a matter of law under Florida's learned intermediary doctrine, either because Seroquel's challenged labeling and risk disclosures were legally adequate under Florida law and/or because plaintiffs could not satisfy their burden to prove that their alleged injuries were proximately caused by the alleged warning inadequacy on the facts of each case (*e.g.*, plaintiffs' prescribers still would have prescribed Seroquel to plaintiff despite the alleged warning inadequacy);

- that plaintiffs' fraud and negligent misrepresentation claims failed due to lack of reliance, lack of causation, and/or failure to identify any actionable misstatement seen or heard by plaintiffs or their prescribers;

- that plaintiffs' various "off label" contentions failed, either because they were not cognizable under Florida law or because plaintiffs failed to prove that their prescribers actually relied on any alleged off-label promotion in prescribing Seroquel to plaintiffs;

- that plaintiffs' "design defect" claims failed for a variety of reasons under Florida law (including plaintiffs' failure to identify any "defect" in Seroquel's design or chemical composition as well as the absence of any safer alternative design), and the claims were also impliedly preempted by federal law;

- and plaintiffs' non-substantive "conspiracy" claims failed with their other claims and also because civil conspiracy is not an independent tort under Florida law.

AstraZeneca anticipates that it will advance comparable arguments in the remanded cases,[4] as well as other arguments that are supported by both the governing state law and undisputed facts developed in the case-specific discovery that remains to be done in each case.

Fourth, the identity of additional case-specific issues that remain for adjudication on remand include topics akin to those that this Court was called upon to address in case-specific motions *in limine* that relate to particular issues or disputes arising from the specific facts and circumstances of each plaintiff's case, situation and background (*e.g.*, Plaintiff David Haller's criminal history); as well as the jury instructions applicable to each case. As confirmed by the Court and the parties' experience with the initial "Group One" Florida Trial

---

[4] AstraZeneca's various summary judgment arguments were themselves premised on certain undisputed *factual propositions* derived from discovery – including the depositions of each plaintiff, the plaintiff's prescribing and treating physicians, and other relevant third party witnesses (*e.g.*, family members), and from plaintiff's medical records. For example, AstraZeneca's "causation" arguments were premised on documentary and deposition discovery from plaintiffs and their prescribing medical providers regarding plaintiffs' pre-existing obesity, weight history, and many other diabetes risk factors, as well as plaintiffs' dates of diabetes diagnoses and dates, duration and dosage of Seroquel use. AstraZeneca's "learned intermediary" arguments related to discovery from plaintiffs' prescribers regarding their reasons for their Seroquel prescription decisions, independent knowledge of the risks, whether they still would prescribe Seroquel for plaintiff with additional warnings, and whether they still stand by their decisions to prescribe Seroquel for plaintiff. AstraZeneca's "fraud" arguments were premised on discovery from plaintiffs and their prescribers regarding what alleged misstatements of material fact they were exposed to, and whether and to what extent they relied, if at all, on any such alleged misstatements. And AstraZeneca's "design defect" arguments were further supported by deposition testimony from plaintiffs' prescribers that they continue to believe the benefits of Seroquel outweighed the risks for the plaintiff, and also continue to prescribe Seroquel today because they continue to believe the medicine's benefits outweigh its risks. These are merely a sample of the many factual propositions derived from discovery that laid the foundation for AstraZeneca's arguments in the MDL, and future cases – whether remanded or heard here – will doubtless involve countless new factual scenarios requiring different and additional discovery.

Pool cases, each case can be expected to call upon the courts to address a variety of potentially significant state law issues related to each plaintiff's claims, defenses to those claims, burdens of proof, potentially applicable evidentiary presumptions, and other issues still.

Finally, as a general response to the aspect of the May 1 Order requesting an outline of significant case-specific and state law issues remaining for adjudication on remand, AstraZeneca identifies the following legal issues and questions of general significance in these cases (subject to the caveats set forth above):

- whether each plaintiff's case-specific expert testimony survives the remand court's gatekeeping scrutiny under *Daubert* and its progeny;

- what are the legal requirements and essential elements governing each of the claims asserted by the plaintiff in a given case under the applicable state law, and whether the facts adduced in case-specific discovery demonstrate that the plaintiff cannot establish one or more elements or showings required of the plaintiff in the claims asserted;

- determination of the governing state law standards that plaintiffs must satisfy to bear their burden of proving the essential element of causation (including whether the state law requires plaintiffs to satisfy the but-for or substantial-factor tests or both, and whether the state law prohibits recovery based on speculative causation testimony or a mere possibility of causation), and whether plaintiff's causation proofs are sufficient under those governing standards;

- whether and to what extent the governing state law follows the "learned intermediary doctrine" and, if so, whether and to what extent the warnings provided by AstraZeneca were adequate under the governing state law and/or whether the facts and circumstances of each case reveal that the plaintiff cannot satisfy his or her burden to prove that the allegedly inadequate warnings proximate caused the plaintiff's alleged injury and the prescription decisions of plaintiff's medical providers, as well as whether the governing state law recognizes any so-called "exceptions" to the doctrine (and whether the plaintiff can make the requisite showing in any given case required to invoke any such exceptions);

- whether and under what circumstances the governing state law prevents plaintiff from establishing proximate causation on inadequate warning or failure to warn claims in

different factual scenarios (*e.g.*, where plaintiff or her prescribing medical providers failed to pay attention to the allegedly inadequate warnings provided);

- whether and to what extent the governing state law provides that provision of FDA-approved warnings and risk disclosures, and/or other compliance with FDA regulations, forecloses or otherwise limits the plaintiff's inadequate warning claims with respect to Seroquel and plaintiff's state-law attacks on the adequacy and sufficiency of Seroquel's FDA-approved labeling;

- whether and to what extent the governing state law recognizes any "heeding presumption" in the prescription drug context, and how any such presumption applies under the facts and circumstances of each individual case;

- whether and to what extent the governing state substantive law entitles either plaintiff or defendant to any other presumptions – including presumptions in support of or against any finding of causation (or lack thereof), breach of duty (or lack thereof), or any other material aspect of the case;

- whether and to what extent the governing state law recognizes "design defect" claims in the prescription drug context and/or with respect to Seroquel, whether under Rest. (2d) of Torts § 402A comment k, Rest. (3d) of Torts, Products Liability § 6(c) or otherwise;

- whether and to what extent the governing state law requires plaintiffs asserting design defect claims to prove a specific, identifiable "defect" in the design of a prescription drug that caused the plaintiff's alleged injury and/or to prove the existence of a reasonably safer alternative design, or otherwise establishes any limits on design defect claims in the prescription drug context with respect to injuries allegedly caused by FDA-approved medicines;

- whether the particular claims asserted by a plaintiff under the governing state law in a given case are barred or limited, in whole or in part, by those aspects of AstraZeneca's preemption defense that may be outside the scope of its pending motion for partial summary judgment on federal preemption grounds that remains pending in this Court, for determination on an MDL-wide basis;

- whether and to what extent the particular injury or any of the injuries allegedly sustained by the plaintiff constitute a legally cognizable "injury" under the governing state law;

- whether and to what extent the governing state law establishes legal standards controlling determination of whether a plaintiff may recover for an alleged "aggravation" of a pre-existing injury or condition, and what effect, if any, such law has on the plaintiff's claims under the facts and circumstances of each case;

17

- whether and to what extent the governing state law requires privity between the plaintiff and the defendant on express or implied warranty claims, or otherwise establishes procedural or other requirements that must first be satisfied before the claims may proceed (*e.g.*, notice) and whether plaintiff cannot satisfy those requirements under the facts of the case;

- whether and to what extent the governing state law permits common law fraud claims where the plaintiff did not actually rely on the alleged misstatements made by defendant, or otherwise establishes legal impediments to plaintiffs' ability to proceed on their fraud-based allegations based on the facts in each case;

- whether and to what extent plaintiffs assert claims under consumer fraud statutes and, if so, the nature of the legal limitations on and requirements governing such claims;

- what are the statutes of limitations governing each of the claims asserted by the plaintiff under state law, and whether and to what extent the plaintiff's claims are time barred in whole or in part;

- whether and to what extent the governing state law establishes any limitations on the plaintiff's ability to recover damages or particular types of damages (*e.g.*, present recovery of future injuries not reasonably certain to occur, limits on emotional distress damages, caps or limitations on awards of punitive or exemplary damages, etc.);

- whether the plaintiff's claims are barred in whole or in part by virtue of the plaintiff's recovery under the *Zyprexa* settlement or any other settlement or prior recovery;

- whether, even aside from preemption, FDA conduct or statements demonstrate that the Seroquel label furnished an adequate warning at the relevant time;

- whether the plaintiff's claims and recovery of damages are barred or limited, in whole or in part, by virtue of any of AstraZeneca's affirmative defenses, including (without limitation) under the doctrines of failure to mitigate damages, contributory fault, comparative negligence, or estoppel in bankruptcy, among others;

- whether and to what extent the governing state law establishes requirements or limitations with respect to any subrogation claims that may be raised by third-party insurers.

In addition, while it is not feasible to delineate the multitude of fact-laden case-specific matters and issues of significance that must be developed in the transferor courts in

each of the approximate 6,000 cases to be remanded, AstraZeneca identifies at least the following (again subject to the caveats above):

- whether the plaintiff had contracted or was diagnosed as having the alleged injury (*e.g.*, diabetes) before plaintiff first took Seroquel;

- whether the plaintiff can establish specific medical causation (that the plaintiff's use of Seroquel is what specifically caused the plaintiff to get diabetes);

- whether the plaintiff can demonstrate that his or her alleged injury was actually and proximately caused by his or her ingestion of Seroquel;

- whether the plaintiff's alleged injury would have been suffered even if plaintiff never took Seroquel;

- whether the plaintiff was in fact treated with Seroquel as a result of any proven breach of duty by AstraZeneca;

- whether, consistent with then-available and evolving scientific knowledge, plaintiff's prescribing medical provider was adequately warned of Seroquel's risks by AstraZeneca under the particular facts and circumstances of the given case, as adduced in case-specific discovery;

- whether AstraZeneca failed adequately to warn or provide disclosures concerning foreseeable risks that were known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time Seroquel was prescribed for a plaintiff;

- whether the risk disclosures and warnings received by plaintiff's prescribing medical provider from AstraZeneca were consistent with the "state of the art" scientific knowledge at the time Seroquel was prescribed for the plaintiff;

- what precise warning plaintiff claims should have been provided by AstraZeneca to plaintiff's prescribing medical provider, and whether the plaintiff's prescribing medical provider still would have prescribed Seroquel for the plaintiff even if AstraZeneca had provided the warnings urged by plaintiff;

- whether AstraZeneca's allegedly inadequate warnings and risk disclosures with respect to Seroquel caused a plaintiff's prescribing healthcare providers to prescribe Seroquel for a plaintiff when they otherwise would not have done so – i.e., whether the allegedly inadequate warnings affected the decisions of a plaintiff's prescribing healthcare providers to prescribe Seroquel for a plaintiff, and whether they would not have prescribed Seroquel for a plaintiff but for the allegedly inadequate warnings;

- whether the plaintiff's prescribing medical provider made the decision to prescribe Seroquel for the plaintiff based on his or her independent medical judgment, and not because of any alleged misstatement or allegedly deceptive promotion of Seroquel by AstraZeneca;

- whether the plaintiff's prescribing medical provider made the decision to prescribe Seroquel for the plaintiff based on his or her independent medical judgment that Seroquel's benefits outweighed its potential risks as to this particular plaintiff;

- whether the plaintiff or the plaintiff's prescribing medical provider was actually exposed to, influenced by, and detrimentally relied on, any misrepresentations or omissions of material fact actually made by AstraZeneca to him or her;

- whether, at the time a plaintiff took Seroquel, there existed some defect in the design of Seroquel (chemically known as quetiapine fumarate) that rendered the medicine in a defective condition unreasonably dangerous to anyone who ingested the medicine such that the risks of harm posed by such defect in design outweigh the potential benefits;

- whether, at the time a plaintiff took Seroquel, there existed a reasonably safer alternative design for Seroquel that would have eliminated or reduced the risks about which the plaintiff complains;

- whether any matters AstraZeneca allegedly failed to disclose to a plaintiff's prescribing medical providers were open, obvious, or commonly known to prescribing medical professionals;

- whether the plaintiff was contributorily negligent or otherwise responsible, in whole or in part, for his or her alleged injuries by failing to take due care of his or her health, diet, weight, smoking, exercise, abuse of medications or alcohol, failure to follow physician's health recommendations, or otherwise;

- whether plaintiff has actually suffered any medical complications resulting from her alleged diabetes injury;

- whether and to what extent plaintiff suffered any damages that plaintiff would not have suffered and incurred anyway even in the absence of any proven breach of duty by AstraZeneca and/or even if plaintiff had not taken Seroquel;

- whether pre-existing or co-existing morbidities or therapies are intervening causes;

- whether there are other parties responsible for all of part of plaintiff's damages.

- whether, and to what extent, a plaintiff failed to mitigate damages and injury;

- whether there is a factual basis for awarding punitive damages against AstraZeneca.

As noted, the foregoing lists are non-exhaustive and merely illustrative of the myriad case-specific and state law issues that may arise in the transferor courts, and each of the foregoing issues may themselves have significant sub-issues that may be complex and warrant independent investigation and/or briefing and consideration by the parties and the courts on remand.

## III.    Specifics of the Remand Protocol

The May 1 Order makes clear that a Suggestion of Remand will issue once the Court has resolved the remaining generic matters in this MDL, but the Order does not specify what remand protocol the Court will ultimately decide to include in its Suggestion of Remand. Although Plaintiffs disagree, now that the Court has expressed its decision to remand cases, AstraZeneca believes that it would be helpful if the parties could make supplemental submissions on a specific remand protocol after the remaining work identified by the Court in this MDL is substantially completed.  Specifically, AstraZeneca suggests that the parties be permitted to make such submissions simultaneously, on a date to be set by the Court, approximately 30 to 45 days before the date that the Court expects to issue its Suggestion of Remand.

Given the many complex issues that ultimate remand of some 6,000 cases would entail, AstraZeneca believes that supplemental submissions after the work of this MDL is basically complete would be helpful to the Court in achieving as efficient and fair a remand process as possible.  Indeed, as the Court concludes its work on generic issues, it may

become necessary for the parties to amend their respective submissions on post-remand discovery and outstanding legal issues, including their suggestions for procedures to be included in this Court's order accompanying transfers to the transferor courts.

AstraZeneca submits that for the sake of efficiency, any remand protocol should not only be staggered but should be structured to take practical realities and other relevant factors into consideration.  *See In re Diet Drugs Prods Liab. Litig.*, MDL No. 1203, 2001 WL 497313, at *1, 9 (E.D. Pa. May 9, 2001) (ordering "an ongoing remand program to foster prompt adjudication of cases . . . that have completed the pretrial process" consisting of a series of consecutively numbered Suggestion of Remand Orders); *In re Silicone Gel Breast Implant Prods Liab. Litig.*, MDL 926 (staggered remand of 5,228 out of 27,426 total cases over the course of four years).  This involves creating a program that will not only transfer the cases at an appropriate pace, giving due consideration to the actual number of cases filed in the various transferor courts and the ultimate likely venues for those cases, but that will be otherwise fair, orderly, and balanced to both sides and workable for the judicial system.[5]  For instance, any approach that remands on a schedule depending on the location of the particular federal circuit involved must, at a minimum, take into consideration the number of cases being remanded to the circuit, as well as further venue transfers that may occur based on the

---

[5]  One possibility, for example, would be for this Court to remand an initial pool of cases, either from two or three select jurisdictions where the numbers are manageable or at random from around the country.  This process could serve as a test that could help identify any problems that need to be addressed before the remaining cases are remanded.  For example, plaintiffs have indicated that they intend to reopen certain generic discovery issues in the transferor courts, which AstraZeneca believes would be inappropriate and contrary to this Court's orders.  Among other benefits, a staggered remand would permit this Court to police any efforts that would undermine the MDL process.

place of claimed injury.  As the Court is aware, the largest number of cases pending in this MDL (approximately 4,900 out of 6,000) were filed in the District Court of Massachusetts. Thus, if the remand order were to set a date for remand of the First Circuit cases, and another date for remand of the Eleventh Circuit cases, for example, the number and timing of cases remanded would be extremely lopsided and unworkable. An all-at-once remand to the District of Massachusetts would inundate the Massachusetts court with over 4,900 cases and essentially spawn a second MDL.

A carefully prepared matrix may need to be developed that takes all these factors into consideration and looks at the pace of work and numbers of active cases in the various jurisdictions once the dust settles and the cases are in their respective trial courts in active litigation.

The Suggestion of Remand will be a major event in this MDL, and AstraZeneca believes, given the importance of that issue, that it would be appropriate for the parties to have an opportunity to weigh in on the specifics as that milestone approaches.

DATED:  June 1, 2009                    Respectfully submitted,


                                        /s/ Fred T. Magaziner
                                        Fred T. Magaziner
                                        Stephen J. McConnell
                                        A. Elizabeth Balakhani
                                        Shane T. Prince
                                        DECHERT LLP
                                        2929 Arch Street
                                        Philadelphia, PA  19103
                                        Telephone: (215) 994-4000
                                        Facsimile: (215) 994-2222
                                        fred.magaziner@dechert.com


                                        Steven B. Weisburd
                                        DECHERT LLP
                                        300 West 6th St., Suite 1850
                                        Austin, TX 7801
                                        Telephone: (512) 394-3000
                                        Facsimile: (512) 394-3001
                                        steven.weisburd@dechert.com

                                        /s/ Chris S. Coutroulis
                                        Chris S. Coutroulis (Fla. Bar No. 300705)
                                        Robert L. Ciotti (Fla. Bar No. 333141)
                                        CARLTON FIELDS, P.A.
                                        Corporate Center Three at International Plaza
                                        4221 W. Boy Scout Blvd.
                                        Tampa, FL  22607
                                        Telephone: (813) 223-7000
                                        Facsimile: (813) 229-4133
                                        ccoutroulis@carltonfields.com
                                        rciotti@carltonfields.com

                                        *Counsel for AstraZeneca LP and AstraZeneca
                                        Pharmaceuticals LP*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on June 1, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, through which all participating parties are deemed served.  I further certify that, by using the CM/ECF, the foregoing has been served on Plaintiffs' Liaison Counsel, who is charged with serving non-CM/ECF participants on the attached Service List.

<u>/s/ A. Elizabeth Balakhani</u>

**SERVICE LIST**

**In Re: Seroquel Products Liability Litigation**
**MDL Docket No. 1769**

| | |
|---|---|
| Paul J. Pennock, Esq.<br>Michael E. Pederson, Esq.<br>Weitz & Luxenberg, P.C.<br>180 Maiden Lane - 17th Floor<br>New York, NY 10038<br>Telephone: (212) 558-5500<br>Ppennock@weitzlux.com<br>MPederson@weitzlux.com<br>***Plaintiffs' Lead Counsel*** | Camp Bailey, Esq.<br>Michael W. Perrin, Esq.<br>Fletcher Trammell, Esq.<br>Bailey Perrin Bailey LLP<br>The Lyric Centre<br>440 Louisiana, Suite 2100<br>Houston, TX 77002<br>Telephone: (713) 425-7240<br>cbailey@bpblaw.com<br>mperrin@bpblaw.com<br>***Plaintiffs' Lead Counsel*** |
| Larry Roth, Esq.<br>Law Offices of Larry M. Roth, P.A.<br>Post Office Box 547637<br>Orlando, FL  32854-7637<br>Telephone: (407) 872-2239<br>LROTH@roth-law.com<br>***Plaintiffs' Liaison Counsel*** | Tommy Fibich, Esq.<br>Fibich, Hampton & Leebron, L.L.P.<br>1401 McKinney, Suite 1800<br>Five Houston Center<br>Houston, TX 77010<br>Telephone: (713) 751-0025<br>tfibich@fhl-law.com |
| Matthew F. Pawa, Esq.<br>Law Offices of Matthew F. Pawa, P.C.<br>1280 Centre St., Suite 230<br>Newton Centre, MA 02459<br>Telephone: (617) 641-9550<br>Mp@pawalaw.com | Robert L. Salim, Esq.<br>Robert L. Salim Attorney at Law<br>P.O. Box 2069<br>Natchitoches, LA 71457-2069<br>Telephone: (318) 352-5999<br>robertsalim@cp-tel.net |
| Keith M. Jensen, Esq.<br>Jensen, Belew & Gonzalez, PLLC<br>1024 North Main<br>Fort Worth, TX 76106<br>Telephone: (817) 334-0762<br>kj@kjensenlaw.com | Scott Allen, Esq.<br>Cruse, Scott, Henderson & Allen, L.L.P.<br>2777 Allen Parkway, 7th Floor<br>Houston, Texas 77019<br>Telephone: (713) 650-6600<br>sallen@crusescott.com |
| Matthew E. Lundy, Esq.<br>Lundy & Davis, LLP<br>333 North Sam Houston Parkway East<br>Suite 375<br>Houston, TX 77060<br>Telephone: (281) 272-0797<br>mlundy@lundydavis.com | W. Todd Harvey, Esq.<br>E. Ashley Cranford, Esq.<br>Whatley Drake & Kallas, LLC<br>2323 2nd Avenue North<br>Birmingham, AL 35203<br>Telephone: (205) 328-9576<br>THARVEY@whatleydrake.com<br>ccf@whatleydrake.com |

| | |
|---|---|
| Robert L. Ciotti, Esq.<br>Carlton Fields, P.A.<br>4221 W. Boy Scout Boulevard<br>Suite 1000<br>Tampa, FL 33607-5736<br>Telephone: (813) 223-7000<br>rciotti@carltonfields.com<br>***Attorney for Defendants AstraZeneca***<br>***Pharmaceuticals, LP, and AstraZeneca LP*** | Gregory P. Forney, Esq.<br>Shaffer Lombardo Shurin<br>911 Main Street, Suite 2000<br>Kansas City, MO 64105<br>Telephone: (816) 931-0500<br>gforney@sls-law.com<br>rbish@sls-law.com<br>***Attorney for Defendant,***<br>***Marguerite Devon French*** |
| Randy Niemeyer<br>22442 Pike 309<br>Bowling Green, MO 63334-5209<br>***Pro Se*** | Eric B. Milliken, Esq.<br>3 Sir Barton Ct.<br>Newark, DE 19702<br>***Pro Se*** |
| Catherine Solomon<br>3100 N.E. 83<br>Gladstone, MO 64119<br>***Pro Se*** | Louisiana Wholesale Drug Co. Inc.<br>C/O Gayle R. White<br>Registered Agent<br>Highway 167N<br>Sunset, LA 70584<br>***Pro Se*** |
| Aaron C. Johnson, Esq.<br>Summers & Johnson<br>717 Thomas<br>Weston, MO 64098<br>Telephone: (816) 640-9940<br>firm@summersandjohnson.com | Robert A. Schwartz, Esq.<br>Bailey & Galyen<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744<br>bschwartz@galyen.com |
| Todd S. Hageman, Esq.<br>Simon and Passanante, PC<br>701 Market St., Suite 1450<br>St. Louis, MO 63101<br>Telephone: (314) 241-2929<br>thageman@spstl-law.com | Mark P. Robinson, Jr., Esq.<br>Robinson, Calcagnie & Robinson<br>620 Newport Center Drive, 7th Floor<br>Newport Beach, CA 92660<br>Telephone: (949) 720-1288<br>mrobinson@robinson-pilaw.com |
| Thomas F. Campion, Esq.<br>Steven M. Selna, Esq.<br>Drinker Biddle & Reath, LLP<br>500 Campus Drive<br>Florham Park, New Jersey 07932-1047<br>Telephone: (973) 360-1100<br>Thomas.Campion@dbr.com<br>steven.selna@dbr.com<br>***Attorneys for Defendants Janssen***<br>***Pharmaceutical Products and Johnson &***<br>***Johnson Co.*** | Michael Davis, Esq.<br>James Mizgala, Esq.<br>Sidley Austin LLP<br>One South Dearborn<br>Chicago, IL 60603<br>Telephone: (312) 853-7731<br>mdavis@sidley.com<br>jmizgala@sidley.com<br>***Attorneys for Defendants AstraZeneca LP***<br>***and AstraZeneca Pharmaceuticals, LP*** |

| | |
|---|---|
| Elizabeth Raines, Esq.<br>Baker, Sterchi, Cowden & Rice, LLC<br>2400 Pershing Road, Suite 500<br>Kansas City, MO 64108<br>Telephone: (816) 471-2121<br>raines@bscr-law.com | Timothy Reese Balducci, Esq.<br>The Langston Law Firm, PA<br>P.O. Box 787<br>100 South Main Street<br>Booneville, MS 38829-0787<br>Telephone: (662) 728-3138<br>tbalducci@langstonlaw.com |
| Kenneth W. Bean, Esq.<br>Sandberg, Phoenix & von Gontard<br>One City Centre<br>15th Floor<br>St. Louis, MO 63101-1880<br>Telephone: (314) 231-3332<br>kbean@spvg.com<br>***Attorney for Defendant Dr. Asif Habib*** | John Driscoll, Esq.<br>Brown & Crouppen, PC<br>720 Olive St.<br>St. Louis, MO 63101<br>Telephone: (314) 421-0216<br>Jdriscoll@brownandcrouppen.com<br>asmith@brownandcrouppen.com<br>blape@brownandcrouppen.com |
| Aaron K. Dickey, Esq.<br>Goldenberg and Heller, PC<br>P.O. Box 959<br>2227 S. State Road 157<br>Edwardsville, IL 62025<br>Telephone: (618) 650-7107<br>aaron@ghalaw.com | Matthew J. Hamilton, Esq.<br>Pepper Hamilton<br>3000 Two Logan Square<br>18th & Arch Street<br>Philadelphia, PA 19103<br>Telephone: (215) 981-4000<br>hamiltonm@pepperlaw.com |
| Justin Witkin, Esq.<br>Ken Smith, Esq.<br>Aylstock, Witkin & Sasser, PLC<br>4400 Bayou Boulevard<br>Suite 58<br>Pensacola, FL 32503<br>Telephone: (850) 916-7450<br>Jwitkin@AWS-LAW.com<br>ablankenship@aws-law.com<br>ksmith@aws-law.com<br>noverholtz@aws-law.com | David P. Matthews, Esq.<br>Lizy Santiago, Esq.<br>Matthews & Associates<br>2905 Sackett Street<br>Houston, TX 77098<br>Telephone: (713) 222-8080<br>dmatthews@thematthewslawfirm.com<br>lsantiago@thematthewslawfirm.com<br>msalazar@thematthewslawfirm.com |
| Howard Nations<br>Lori A. Siler<br>Howard L. Nations Attorney At Law<br>4515 Yoakum Blvd.<br>Houston, TX 77006-5895<br>Telephone: (713) 807-8400<br>nations@howardnations.com | Mary B. Cotton<br>John D. Giddens, P.A.<br>226 North President Street<br>P.O. Box 22546<br>Jackson, MS 39225-2546<br>Telephone:  (601) 355-2022<br>betsy@law-inc.com |

| | |
|---|---|
| Salvatore M. Machi<br>Ted Machi & Associates PC<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744 | Jona R. Hefner, Esq.<br>3441 W. Memorial, Suite 4<br>Oklahoma City, OK 73134-7000<br>Telephone: (405) 286-3000<br>attorneyokc@hotmail.com |
| David Dickens<br>Miller & Associates<br>105 North Alfred Street<br>Alexandria, VA  22314-3010<br>(703) 519-8080<br>ddickens@doctoratlaw.com | Pete Schneider, Esq.<br>Grady, Schneider & Newman, L.L.P.<br>801 Congress, 4th Floor<br>Houston, TX  77002<br>(713) 228-2200<br>pschneider@gsnlaw.com |
| Fred T. Magaziner<br>Marjorie Shiekman<br>A. Elizabeth Balakhani<br>Shane T. Prince<br>Eben S. Flaster<br>DECHERT LLP<br>Cira Centre<br>2929 Arch Street<br>Philadelphia, PA  19103<br>(215) 994-4000<br>fred.magaziner@dechert.com<br>shane.prince@dechert.com<br>marjorie.shiekman@dechert.com<br>eben.flaster@dechert.com<br>elizabeth.balakhani@dechert.com | Lawrence J. Gornick, Esq.<br>William A. Levin, Esq.<br>Dennis J. Canty, Esq.<br>Levin Simes Kaiser & Gornick LLP<br>44 Montgomery Street, 36th Floor<br>San Francisco, CA 94104<br>Telephone: (415) 646-7160<br>lgornick@lskg-law.com<br>dcanty@lskg-law.com<br>lsimes@levins-law.com<br>jkaiser@lskg-law.com<br>echarley@lskg-law.com<br>ddecarli@lskg-law.com<br>bsund@lskg-law.com<br>astavrakaras@lskg-law.com |
| Scott Burdine, Esq.<br>Hagans Burdine Montgomery<br>Rustay & Winchester, P.C.<br>3200 Travis, Fourth Floor<br>Houston, TX  77006<br>Telephone:  (713) 222-2700<br>sburdine@hagans-law.com | Lowell Finson<br>Phillips & Associates<br>3030 North 3rd Street<br>Suite 1100<br>Phoenix, AZ 85012<br>(602) 258-8900, ext. 295<br>lowellf@phillipslaw.ws |
| Gale D. Pearson<br>Stephen J. Randall<br>Pearson, Randall & Schumacher, P.A.<br>Fifth Street Towers, Suite 1025<br>100 South 5th Street<br>Minneapolis, MN 55402<br>(612) 767-7500<br>attorneys@outtech.com | Robert H. Shultz<br>Heyl, Royster<br>103 West Vandalia Street<br>P.O. Box 467<br>Edwardsville, IL 62025<br>(618) 656-4646<br>rshultz@hrva.com<br>bwallace@hrva.com |

| | |
|---|---|
| Ellen R. Serbin<br>Perona, Langer, Beck, Lalande & Serbin<br>300 San Antonio Drive<br>Long Beach, CA 90807-0948<br>(562) 426-6155<br>davidhwang@plblaw.com | Scott Armstrong<br>1719 West Main Street<br>Suite 201<br>Rapid City, SD 57702<br>(605) 399-3994<br>scottarmstrong1235@eathlink.net |
| Linda S. Svitak<br>Faegre & Benson, LLP<br>90 South 7th Street, Suite 2200<br>Minneapolis, MN 55402-3901<br>(612)766-7000<br>lsvitak@faegre.com<br>wjohnson@faegre.com | James J. Freebery<br>McCarter & English, LLP<br>919 N. Market Street, 18th Floor<br>Wilmington, DE 19801<br>(973) 622-4444<br>jfreebery@mccarter.com<br>tpearson@mccarter.com |
| Richard D. Hailey<br>Ramey & Hailey<br>3891 Eagle Creek Parkway<br>Suite C<br>Indianapolis, IN<br>(317) 299-0400<br>rhailey@sprynet.com | B. Andrew List<br>Clark, Perdue, Arnold & Scott<br>471 East Broad Street, Suite 1400<br>Columbus, OH 43215<br>(614) 469-1400<br>alist@cpaslaw.com<br>lcollins@cpaslaw.com |