UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| IN RE: SEROQUEL PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>ALL CASES | MDL DOCKET NO:<br>6:06-MDL-1769-ACC-DAB |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO ASTRAZENECA'S
MOTION FOR CLARIFICATION OF THE COURT'S MAY 1, 2009 ORDER**

As a general matter, Plaintiffs take no issue with any party's request for the Court to clarify an order where such clarification is warranted. But where parties, like Defendants here, utilize a "Motion for Clarification" as an opportunity to reargue motions that the Court has heard and considered (already on several occasions), ruled upon, and *clearly* denied, Plaintiffs must oppose such a motion, and the Court should deny it. This is particularly true where the apparent aim of AstraZeneca's Motion for Clarification (the "Motion" (Doc. 1441)) is again simply to delay progress of remanding the non-Florida cases to the transferor courts.

**I.  The Court Rejected AstraZeneca's Proposal to Conduct Additional "Generic" Expert Witness Discovery, Ultimately (and Correctly) Determining that Such Discovery Was Complete.**

Over the course of the litigation, AstraZeneca's positions regarding whether additional general expert discovery must be conducted during pendency of the MDL have been at best inconsistent or at worst self-serving.

1

In AstraZeneca's December 3, 2007 request (Doc. 728) that the Court reconsider Magistrate Judge Baker's Report and Recommendation (Doc. 695) that ultimately became (in modified form) Case Management Order No. 5 ("CMO 5" (Doc. 792)), AstraZeneca's filing expressly contemplated that "MDL-wide general experts" would be designated and discovered *in the MDL*, without any provision for *later* additional designation and discovery of general experts *in the MDL Court or otherwise*. (Doc. 728 at 3-6.) AstraZeneca apparently rethought that position two weeks later and filed a joint motion to modify the Report and Recommendation (Doc. 755), in which AstraZeneca and Plaintiffs requested that the parties be able to designate additional general experts after the deadline set by the Court for the Florida cases. (*Id.* at 2.) Such later expert designations and discovery would occur "on dates that may be set by agreement of the Parties or by later orders of this Court ***or transferor courts***." (*Id.*) Thus, AstraZeneca then acknowledged that additional generic expert discovery may need to be conducted in the transferor courts. As noted above, that provision, proposed in part by AstraZeneca, was later adopted by the Magistrate Judge and approved by the Court in CMO 5. (Orders of Dec. 21, 2007 (Doc. 759) at 2, 4-5, Jan. 11, 2008 (Doc. 791), and Jan. 11, 2008 (Doc. 792) at 3.) The Parties have operated under CMO 5 for the last 17 months.

On February 11, 2009, when the Court asked for briefing from the parties regarding subsequent proceedings in the MDL and the return of the non-Florida cases to their transferor courts, the Court stated that it "assumes that . . . discovery" of "general experts in non-Florida cases . . . is complete." (Order of Feb. 11, 2009 (Doc. No. 1270) at 1.) That assumption was well-founded. At that time, AstraZeneca had already designated 18 generic

2

experts, and Plaintiffs had not challenged any of those experts through motions *in limine* or other *Daubert*-related motions or proceedings.

But, in its submissions pursuant to the February 11 Order, AstraZeneca claimed that substantial additional general expert discovery must still be done, and it again reversed position by asserting that all remaining general expert discovery must be conducted in the MDL—*not in the transferor courts*.[1]  Notably, AstraZeneca did not set forth any specific needs for which it might require additional generic experts, other than to say that having to defend "hundreds (or thousands) of cases around the country in many different courts – perhaps simultaneously – might well require AstraZeneca to designate a limited number of additional generic experts . . . ."  (Doc. 1395 at 6.)

The Court's Order of April 27, 2009, though, reminded AstraZeneca that neither it nor Plaintiffs had conducted so-called "general" discovery on certain minority subsets of cases.  That prompted yet another argument *de jour* urging additional general expert witness discovery in this Court.  AstraZeneca identifies those subsets of cases in its Motion, including, for example, neuroleptic malignant syndrome ("NMS") cases (< 1% of total MDL cases), blood pressure or cholesterol "issues" (< .16% of total MDL cases), and cardiovascular "problems" (< .12% of total MDL cases).  (Doc. 1441 at 2-3 n.1.)  In the joint submission regarding NMS cases on May 8, 2009, AstraZeneca announced for the first time in the MDL that it intended to identify at least one general expert for every NMS case, and

---

[1]  Doc. 1386 at 3-4 ("One of the core MDL functions is coordination of generic expert discovery and related *Daubert* motion practice.  . . . .  [The parties should]: (a) identif[y] . . . "generic" experts for all MDL cases; (b) discover[] . . . those experts' opinions; and (c) [engage in] *Daubert* proceedings to enable the Court to perform its gatekeeping function . . . .  This Court's *Daubert* rulings on the admissibility of "generic" expert opinions will apply to all cases . . . .").

again insisted that discovery and *Daubert* practice related thereto be conducted in the MDL. (Doc. 1427 at 2-3.) To reiterate, AstraZeneca raised none of those case-type specific discovery needs when the Court specifically asked for briefing on such topics in the context of remand and the future of the MDL, or at oral argument thereon. (Docs. 1386, 1395, & Tr. of 4/22/2009 Hr'g (Doc. 1412).)

Hence, the only clarification needed is the clarification Plaintiffs provide above regarding AstraZeneca's machinations relative to the general expert discovery issue. The Court's Order of May 1, 2009 (the "Order") declared that "general discovery is complete" and "closed." (Doc. 1419 at 1.) The Court made that determination after four submissions and oral argument from the parties concerning that very subject. There is simply nothing left to clarify with respect to the Order.[2]

## II. The Court Rejected Case-Screening Based On Its Findings That Plaintiffs' Counsel Complied With Their Duty Under Rule 11 and That Transferor Courts Should Oversee Further Case-Specific Discovery.

Similarly, with respect to its case-evaluation assertions, AstraZeneca rehashes arguments that the Court considered on at least three prior occasions and denied, in the hopes that the Court will issue a more favorable order. The Order's meaning with respect to case screening and Federal Rule of Civil Procedure 11 is plain. The Court declined to undertake case screening in this Court after determining that Plaintiffs' counsel had evaluated their

---

[2] With respect to the NMS cases and other tangential subsets of non-diabetes-related injury cases identified by AstraZeneca in its Motion (Doc. 1441 at 2-3 n.1), Plaintiffs stand on and incorporate by reference their position set forth in the Parties' May 8, 2009 joint submission regarding NMS cases, and extend that argument to the other non-NMS, non-diabetes classes of cases AstraZeneca identifies in its Motion. (*See* Doc. 1427 at 3-4.) Plaintiffs specifically reiterate that the J.P.M.L. has recently refused to transfer non-diabetes-related injury cases to the MDL, holding that such cases were outside "the main focus of the centralized proceedings [which] is on the alleged risk of diabetes." (*Id.* at 3 (quoting J.P.M.L.'s Apr. 9, 2009 Order Denying Transfer) (internal quotation marks omitted).)

cases consistent with Rule 11, and after AstraZeneca failed to convince the Court that it was better suited than the transferor courts to oversee further case-specific discovery. The Court at the same time acknowledged a procedural reality of which AstraZeneca and Plaintiffs are fully aware: that the transferee courts are free to deal with the cases remanded to them as they see fit, including through bellwether trial programs, case-specific discovery, or, if those courts deem warranted (over Plaintiffs' objections), adoption of the case-screening devices that AstraZeneca so ardently endorses. Similarly, if any Rule 11 disputes arise, the transferor courts will address those as well. But the Court's own assessment—after three years of exposure to thousands of MDL cases—that it was satisfied that Plaintiffs' counsel had complied with Rule 11 is correct, and AstraZeneca cites no authority or facts in support of the Court's modification of that finding. Instead, the Court should deny AstraZeneca's transparent attempt to secure more favorable rulings than the Court was willing or intending to make by employing the contrivance that the Court's Order was "unclear."

## CONCLUSION

For the foregoing reasons, the Court should deny AstraZeneca's Motion for Clarification of the Court's May 1, 2009 Order.

DATED: June 9, 2009                           Respectfully submitted,

By:     /s/ K. Camp Bailey
    F. Kenneth Bailey Jr.
    K. Camp Bailey
    Fletcher V. Trammell
    Robert W. Cowan
    **BAILEY PERRIN BAILEY**
    440 Louisiana St., Suite 2100
    Houston, Texas 77002
    (713) 425-7100 Telephone

(713) 425-7101 Facsimile
kbailey@bpblaw.com
cbailey@bpblaw.com
ftrammell@bpblaw.com
rcowan@bpblaw.com
**Co-Lead Counsel for Plaintiffs**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of June, 2009, I electronically filed the foregoing: PLAINTIFFS' RESPONSE IN OPPOSITION TO ASTRAZENECA'S MOTION FOR CLARIFICATION OF THE COURT'S MAY 1, 2009 ORDER with the Clerk of the Court by using the CM/ECF system which will send a Notice of Electronic Filing to all counsel of record that are registered with the Court's CM/ECF system.

/s/ Robert W. Cowan
Robert W. Cowan