# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**IN RE: Seroquel Products Liability Litigation.**

**Case No. 6:06-md-1769-Orl-22DAB**

_____/

## ORDER

This cause came on for consideration with oral argument[1] on the following motion filed herein:

> **MOTION:** **MOVANT BLOOMBERG L.P.'S MOTION TO UNSEAL REMAINING CONFIDENTIAL DOCUMENTS (Doc. No. 1464)**
>
> **FILED:** June 19, 2009
> _____
>
> **THEREON** it is **ORDERED** that the Motion is **GRANTED in part** and **DENIED in part**.

In February 2009, Bloomberg moved to unseal six categories of documents filed under seal in support of or in opposition to various summary judgment motions or motions to limit or exclude expert testimony. *See* Doc. No. 1284. The parties gradually agreed to unseal all but three categories of documents (*see* Doc. No. 1463, filed on June 16, 2009), upon which Bloomberg's current Motion to Unseal Remaining Confidential Documents is based: (1) post-2004 call notes by AstraZeneca sales representatives; (2) data supplied by IMS Health Inc. reflecting the histories of prescribing physicians for use in marketing; and (3) two documents reflecting foreign regulatory actions (Dutch

---

[1] Argument on the general issue of Bloomberg's Motion to Intervene to seek to have documents unsealed (Doc. No. 1284) was originally heard on these issues on February 26, 2009; since oral argument, the categories sought to be unsealed have been narrowed to three categories. *See* Doc. Nos. 1444, 1463, 1464.

and French). Doc. Nos. 1463, 1464. Bloomberg maintains its original position that AstraZeneca has not shown good cause for maintaining a seal on any of these document categories.

**I. Standard**

Public disclosure of discovery material is subject to the discretion of the trial court and the federal rules governing discovery. *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.,* 263 F.3d 1304, 1310 (11th Cir. 2001) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984)). When discovery materials are in dispute, the constitutional right of access standard is identical to that of Rule 26(c) of the Federal Rules of Civil Procedure. *Chicago Tribune*, 263 F.3d at 1310 (citing *McCarthy v. Barnett Bank of Polk County*, 876 F.2d 89, 91 (11th Cir. 1989). If a third party seeks access to material disclosed during discovery and covered by a protective order, the party seeking protection is required to show good cause to keep the documents from being disclosed. *Id*. The Court is required to (1) determine whether valid grounds for the issuance of a protective order have been presented; and (2) balance the public's interest in access against the litigant's interest in confidentiality. *In re Estate of Martin Luther King, Jr., Inc*., 184 F. Supp.2d 1353, 1366 (N.D.Ga. 2002).

**II. Application**

    **A. Call Notes**

Bloomberg seeks to have unsealed the call notes by AstraZeneca sales representatives created on or after January 1, 2004. Bloomberg argues that the call notes created by sales representatives are central to the litigation and important to public health and safety because the "notes may reflect whether the defendant has engaged in unlawful marketing of the product in dispute and whether doctors have been prescribing the product in accordance with such marketing, possibly jeopardizing public health." Bloomberg disputes AstraZeneca's claims that the sales representatives call notes

are "trade secrets" since all pharmaceutical manufacturers have ready access to the prescribing histories of all doctors and thousands of sales representatives from all manufacturers frequently visit doctors to discuss their prescribing practices, it seems likely that the competitive value of the call notes – some of which are more than five years old – would be of limited competitive value. Bloomberg argues the public interest in the substance of the communications between sales representatives and doctors would outweigh whatever competitive interest might exist.

AstraZeneca argues that, based on the uncontradicted testimony of Alfred Paulson, National Sales Director, at the February 26, 2009 hearing, the documents at issue should remain confidential because post-January 1, 2004 call notes reflect ongoing commercial strategy and proprietary business information, including AstraZeneca's marketing efforts, customer lists, reach and frequency of detailing and customer reactions, the information is commercially valuable, and AstraZeneca would suffer competitive harm from disclosure.  Doc. No. 1325 (February 26, 2009 Hearing Transcript) at 51-59, 62-63.

Bloomberg counters that, to the extent the call notes contain trade secret information, the Court could protect that information, such as the identities of specific doctors, while releasing those portions of any call notes reflecting that Seroquel had been marketed in a fashion inconsistent with FDA regulations because there is a no legitimate interest in maintaining the confidentiality of evidence of any unlawful marketing.

In a recent ruling in the *In re Zyprexa Products Liability Litigation* case, the special discovery master appointed by Judge Weinstein was faced with a similar issue where plaintiffs sought to unseal and post on the internet approximately 132,000 call notes made by sales representatives, which were produced by Eli Lilly under the confidentiality order governing document production. Case No. 04-MDL-1596, 2009 WL 791540, *4 (E.D. N.Y. March 23, 2009)

(Weinstein, J., adopting case management order of special discovery master), *modifying*, 2009 WL 1870931, *1 (E.D. N.Y. June 23, 2009) (ordering redacted call notes to be made available "to those who seek access to them" in "consolidated electronic form"). At Judge Weinstein's direction, the special discovery master was charged with determining the extent to which particular sales call notes contained information that might cause "unnecessary embarrassment or damage to any party" as part of their unsealing by the Court. *Id.* at *1.

After hearing the parties' views on the matter[2] and a careful analysis of how to avoid "unnecessary embarrassment or damage" to the doctors and their staff members, the special discovery master ruled that the names and addresses of all physicians and members of the physicians' staff, along with any additional information capable of identifying a particular physician or staff member, would be redacted from all sales call notes, and replaced by numbers to permit later identification in the event that became necessary; similarly the names and addresses of all patients (replaced by numbers), and other identifying information, would be redacted from all sales call notes. *Id.* at *6. The special discovery master reasoned:

> First, the broad worldwide dissemination of physicians' names through the internet as envisioned by plaintiffs may have unintended consequences, such as harassment of physicians by patients, former patients and others opposed to the use of Zyprexa ( *see, e.g.*, Lilly December 18, 2008 letter to the Special Discovery Master at 2-3, describing incident related in sales call note where patient, reading information about the *Zyprexa* litigation posted on the internet, threatened to kill his prescribing physician). Second, although identification of individual physicians in the call notes might be useful to class members, as argued by plaintiffs, for example in connection with the administration of their prescriber networks or otherwise, that purpose can be accomplished through other mechanisms. Under the number system described above, for instance, a class member could provide a list of the prescribing doctors in its network to class counsel, who could in turn provide a list of the physician numbers so that the class member can correlate sales call visits with its network of prescribing physicians should that be necessary.

---

[2] Plaintiffs argued only 488 of 132,00 call notes required redaction of the doctors' personal information, while Lilly argued 4,066 call notes required redaction. 2009 WL 791540 at *6.

*Id.* at *6. As the special discovery master noted, "[t]he parameters of exactly what personal information could cause 'unnecessary embarrassment or damage' are not readily susceptible to bright line delineation, especially given the many different kinds of personal information contained in the call notes." *Id.* at *7.

The special discovery master also required the redaction, in addition to the names of physicians and staff, of information identifying a particular physician or staff member: (1) descriptions of the personal health of the physicians and family members (*e.g.*,"found out that Dr. [name redacted] had emergency surgery and had his kidney removed because he had a huge tumor" or "talked about Dr. [name redacted] and how he is doing since his daughter's death."); (2) observations concerning physicians' personality and habits, and personal interactions with physicians (*e.g.,* "took Dr. [name redacted]'s smoke break with him."); and (3) notes about various personal activities, career plans and other events in the lives of physicians (e.g., "Keep this Hush, but [name redacted] said that [name redacted] may be going to be a Hospital and leaving practice." and "Dr. [name redacted] had just been married and they are going to South Carolina to honeymoon on the beaches there.").

In this case, although Plaintiffs have had access to the unredacted call notes, they are bound by the confidentiality order and have not sought to make the information public. Rather, it is Bloomberg News who is seeking to unseal the documents and publicly disseminate the information. Paulson testified that the stack of call notes was approximately "12 inches," but did not identify the exact number of call notes. The concerns of public disclosure of doctor's or staff members' identities in this case are the same as in the *Zyprexa* MDL, which is whether public disclosure of the call notes would cause "unnecessary embarrassment or damage" to plaintiffs or non-parties. Accordingly, the Court finds that the best way to balance the interests of the public access to the

information with certain privacy interests is to order that the call notes be removed from the confidentiality order with redaction similar to those ordered in the *Zyprexa* MDL as follows.

1. Call notes shall be made available with the redaction of all the names and addresses of all physicians and members of the physicians' staff, and replaced by numbers to permit later identification in the event that became necessary, along with any additional information capable of identifying a particular physician or staff member;

2. The call notes shall also have redaction of the names and addresses of all patients, replaced by numbers to permit later identification in the event that became necessary;

3. The redaction shall also include all information identifying a particular physician or staff member: (1) descriptions of the personal health of the physicians and family members; (2) observations concerning physicians' personality and habits, and personal interactions with physicians; and (3) notes about various personal activities, career plans and other events in the lives of physicians.

4. AstraZeneca is **ORDERED** to provide the redacted call notes by September 11, 2009.

**B. IMS Data**

Bloomberg seeks to have unsealed the data supplied by IMS Health Inc. to AstraZeneca which reflects the prescribing histories of doctors that AstraZeneca uses in marketing Seroquel. *See* Doc. No. 1325 at 74. AstraZeneca argues that IMS data is proprietary information which cannot be produced because it is governed by a confidentiality agreement between IMS Health, Inc. and AstraZeneca, and public release of the IMS data would make it difficult for IMS to generate or sell the information in the future. *See generally* Doc. No. 1325 at 61 (disclosure would harm IMS). Based on Paulson's testimony, the IMS data AstraZeneca buys includes data about competitors' sales and competitors also buy that information; there is no difference between what competitors can

buy and what AstraZeneca can buy; there are various prices for various levels of information, but basically anybody who wants to buy it can get it. Doc. No. 1325 at 79. Bloomberg argues that such a private agreement between parties cannot supersede the standards for sealing documents in court.

The issues underlying the proprietary nature of the IMS data can be solved by redaction from the IMS data of all the names and addresses of all physicians, replaced by numbers to permit later identification in the event that became necessary, and redaction of prescribing habits for all drugs other than Seroquel. AstraZeneca is **ORDERED** to provide the redacted IMS data by September 11, 2009.

### C. Foreign regulatory documents (Dutch and French)

Bloomberg seeks to have unsealed the documents involved in [labeling] and drug approval by Dutch and French regulators. Bloomberg argues that foreign regulatory bodies may have an interest in maintaining the confidentiality of their proceedings involving AstraZeneca, but, like private party agreements, foreign requests to parties do not supersede the rules that govern the sealing of documents and since AstraZeneca has not shown good cause for keeping the Dutch and French sealed, thus, those documents should be released.

AstraZeneca argues that the two foreign regulatory documents should remain confidential because the Court has already ruled that foreign regulatory actions "have no relevance to Plaintiffs' main case." Doc. No. 1466 at 2 (citing Doc. No. 1253). On March 11, 2009, Chief Judge Conway overruled Plaintiff's objection granting AstraZeneca's motion *in limine* to preclude introduction of foreign regulatory documents at trial. doc. No. 1348. Judge Conway ruled that "[e]ven though *information* the foreign regulators communicated to AstraZeneca regarding the dangers of Seroquel may be admissible in AstraZeneca's main case, *the regulatory documents themselves are not*. The Court has examined the three documents and sees no practical way to redact them so as to alleviate

-7-

the significant potential for jury confusion and unfair prejudice to AstraZeneca." Doc. No. 1348 at 10 n.3 (emphasis added). The documents Bloomberg seeks have produced have already been held to be inadmissible at trial by Judge Conway, thus, they will not be part of this case. Accordingly, the public policy favoring open files is inapplicable.

**DONE** and **ORDERED** in Orlando, Florida on August 10, 2009.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record