

Slip Copy, 2009 WL 791540 (E.D.N.Y.)
**(Cite as: 2009 WL 791540 (E.D.N.Y.))**

Only the Westlaw citation is currently available.

United States District Court,
E.D. New York.
In re ZYPREXA PRODUCTS LIABILITY LITIGATION.
UFCW Local 1776 and Participating Employers Health and Welfare Fund, Eric Tayag, and Mid-West National Life Insurance Company of Tennessee, on behalf of themselves and others similarly situated, Plaintiffs,
v.
Eli Lilly and Company, Defendant.
Local 28 Sheet Metal Workers on behalf of themselves and others similarly situated, Plaintiffs,
v.
Eli Lilly and Company, Defendant.
Sergeants Benevolent Association Health and Welfare Fund, on behalf of itself and all others similarly situated, Plaintiff,
v.
Eli Lilly and Company, Defendant.
**MDL No. 1596.**
**Nos. 05 CV 2948(JBW), 05 CV 4115(JBW), 06 CV 0021(JBW), 06 CV 6322(JBW).**

March 23, 2009.

### ORDER FOR UNSEALING

JACK B. WEINSTEIN, Senior District Judge.

**\*1** The Court and the parties are in receipt of Case Management Order No. 9 ("CMO No. 9") unsealing certain documents produced by Defendant Eli Lilly and Company. The parties shall file any notice of appeal of CMO No. 9 to this court within twenty days. Any public comments shall be submitted in writing within twenty days.

On May 1, 2009, at 11:00 am, the court shall hold a hearing on CMO No. 9; any party or member of the public may be heard. Parties wishing to participate by telephone should contact Case Manager June Lowe at 718-613-2525.

SO ORDERED.

### CASE MANAGEMENT ORDER No. 9 (Unsealing of Documents Produced by Lilly)

PETER H. WOODIN, Special Master.

**BACKGROUND:**

Plaintiff Third Party Payors sought to lift the confidentiality designations of various documents produced by Lilly in the Zyprexa litigation under an order of confidentiality. In the Memorandum & Order on Motion for Class Certification, dated September 5, 2008 (the September 5, 2008 Order), the Court ordered that various documents be unsealed, and directed the Special Discovery Master "to supervise the unsealing so as to avoid unnecessary embarrassment or damage to any party." *September 5, 2008 Order* at 292. The Court further provided that "the special master may order specific items redacted or to be sealed in part or whole." *Id.*

The Special Discovery Master subsequently scheduled a hearing for October 21, 2008 to consider what, if any, documents among those ordered unsealed by the Court might cause "unnecessary embarrassment or damage to any party." Following briefing by the parties, the Special Discovery Master made various oral rulings at the October 21, 2008 hearing, and scheduled an additional hearing for October 31, 2008. At the second hearing the Special Discovery Master made further rulings, and directed the parties to review the approximately 132,000 sales call notes previously produced by Lilly, which were among those documents ordered unsealed by the Court, to determine to what extent particular sales call notes contained information that might cause "unnecessary embarrassment or damage to any party." Plaintiffs commenced a review of the sales call notes which was completed by November 4, 2008, and Lilly's review was completed by December 18, 2008.

Now, having considered the various submissions of

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 791540 (E.D.N.Y.)
**(Cite as: 2009 WL 791540 (E.D.N.Y.))**

the parties in connection with the October 21 and October 31, 2008 hearings, the arguments of the parties at those hearings, and the later submissions of the parties during and after the period of sales call note review, the Special Discovery Master here confirms, modifies and supplements oral rulings made at those hearings. Accordingly, IT IS HEREBY ORDERED AS FOLLOWS:

**DOCUMENTS (other than Sales Call Notes):**

In its October 3, 2008 submission to the Special Discovery Master, Lilly emphasized that it did not agree with the Court's ruling ordering the release of its confidential documents, but that in compliance with the September 5, 2008 Order it had identified various documents that in its view met the "unnecessary embarrassment or damage" standard articulated by the Court. In Lilly's view, therefore, these documents should remain sealed in whole or in part. Not including sales call notes, Lilly sought continued protection for 284 documents under the Court's standard.

**\*2** At the October 21, 2008 hearing the Special Discovery Master ruled that, other than material concerning the identities and personal information of patients, physicians and others, a document would cause "unnecessary embarrassment or damage" only where release of the document would cause Lilly competitive harm in its current marketing, promotional and sales efforts for Zyprexa. *October 21, 2008 Hearing Transcript* at 182-183. By way of example, the Special Discovery Master identified two Lilly documents which appeared to meet that standard (ZY204335881-890 and ZY204338744-749, discussed below). With that guidance, the Special Discovery Master directed Lilly to review the remainder of the 284 documents and identify those documents which Lilly believed would, if unsealed, cause Lilly competitive harm in its current marketing, promotional or sales efforts for Zyprexa.

Lilly subsequently reviewed the 284 documents and identified 9 additional documents which it believed met the standard articulated by the Special Discovery Master. Those documents were reviewed at the October 31, 2008 hearing, and at that time the Special Discovery Master ruled on some of the documents and reserved decision on others.

**RULINGS (Documents other than Sales Call Notes):**

All documents (other than sales call notes, discussed *infra*) that were ordered unsealed by the Court in the September 5, 2008 Order shall be unsealed except as set forth below. Those documents, or portions of documents, whose unsealing would cause competitive harm to Lilly in its current marketing, promotional and sales efforts for Zyprexa are identified below, and will not be unsealed "so as to avoid unnecessary embarrassment or damage" to Lilly.

Here follow the Special Discovery Master's rulings on 11 documents: two identified at the October 21, 2008 hearing, and nine additional documents which Lilly believes meet the standard set forth by the Court in the September 5, 2008 Order, as applied by the Special Discovery Master:

1) *ZY 204335881-ZY20433590*

This is a 10 page untitled internal Lilly document. It is undated, but appears to have been created in 2004. The document lists a large number of managed-care organizations and state entities, and for each one provides "Z" (Zyprexa) gross sales figures, the number of individuals within the scope of the plan involved, applicable rebate percentages and other information. It is reasonable to conclude that if this document were unsealed, any of these organizations or entities could determine whether they had received more or less favorable terms from Lilly compared to other organizations historically, and on that basis attempt to renegotiate or seek in the future more favorable contractual arrangements for Zyprexa, resulting in competitive harm to Lilly.

This document shall remain sealed in its entirety.

2) *ZY204338744-ZY204338749*

This is a six page internal Lilly document titled "Zyprexa Financial Impact of MFN Applied to Medco Closed Managed Medicaid Plans." The document, which is dated October 13, 2003, dis-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 791540 (E.D.N.Y.)
  **(Cite as: 2009 WL 791540 (E.D.N.Y.))**

cusses various details of the Merck-Medco/Lilly relationship with respect to the sale of Zyprexa. It sets forth internal tactics and strategy with respect to Lilly's negotiation of future relationships with Merck-Medco, and sets forth possible sales figures with respect to various relationship scenarios. It is reasonable to conclude that unsealing this document would provide Medco, a current customer of Lilly with respect to Zyprexa, considerable insight into Lilly's previous tactics and strategy in negotiating with Medco, which would in turn likely provide Medco with a significant advantage in negotiating current and future arrangements with Lilly, thereby causing Lilly competitive harm.

**\*3** This document shall remain sealed in its entirety.

3) *ZY206184420-ZY206184450*

This is a 31 page internal Lilly document titled "ZYPREXA GLOBAL BRAND PLAN 2005-2007." The document, which is in draft form and appears to have been created in 2004, discusses schizophrenia, bipolar disorder and the drugs currently available to treat these conditions, followed by what appears to be a draft marketing plan. Lilly states that the document was created to guide Lilly's future marketing strategies, and reflects the company's still current views and objectives with respect to the marketing of Zyprexa. Lilly confirms that the first nine pages of the document largely summarize publicly available information. Given that the document could be used by competitors to gain insight into Lilly's present and future marketing strategies for Zyprexa, it is reasonable to conclude that unsealing the document in its entirety would cause Lilly competitive harm. The document shall be unsealed in part as follows:

- pages ZY206184420-427 shall be unsealed in their entirety;

- page ZY206184428 shall be unsealed through the words "Brief discussion on most common side effects" and the remainder of the page will be redacted;

- the remaining pages of the document shall remain sealed.

4) *ZY203275823-ZY203275835*

This is a 13 page internal Lilly document titled "The Case For B2G Funding." The document, which appears to date from 2000 or 2001, concerns Lilly's marketing and sales of Zyprexa to state Medicaid programs and managed-care organizations. Some portions of the document appear to focus on Lilly's strategic approaches to marketing Zyprexa to public payor entities generally and to some specific states individually. Given that Lilly has current contracts with public payors, it seems likely that knowledge by the payors of Lilly's marketing strategies, particularly with respect to distinctions it might draw between specific public payors, would cause competitive harm to Lilly in its current business. Other portions of the document appear to contain information about relationships with public payors generally that, if released, would not pose harm to Lilly's current marketing and sales efforts, especially given the approximately eight-year age of the information.

The document shall be unsealed in part as follows:

- pages ZY203275824, 828-830, 833-834 shall be unsealed;

- pages ZY203275823, 825-827, 831-832, 835 shall remain sealed.

5) *ZY203652365-ZY203652371*

6) *ZY203887783-ZY203887788*

7) *ZY204339174-ZY204339178*

8) *ZY204340803-ZY204340805*

These four documents are internal Lilly emails of varying dates in 2002-2004. The documents discuss Lilly's marketing efforts, sales relationships and negotiation strategy for Zyprexa with respect to various entities: Florida Medicaid (ZY203652365-ZY203652371), Express Scripts (ZY203887783-ZY203887788), the Veterans Ad-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 791540 (E.D.N.Y.)
 **(Cite as: 2009 WL 791540 (E.D.N.Y.))**

ministration (ZY204339174-ZY204339178), and the state of Colorado (ZY204340803-ZY204340805). Some if not all of these entities have current contractual relationships with Lilly involving Zyprexa. If unsealed, the documents would provide current Lilly customers, including managed-care organizations, PBM's and governmental entities, valuable insights into the strategy and tactics adopted by Lilly in negotiating its marketing relationships. It is reasonable to conclude that such knowledge would cause Lilly current competitive harm.

**\*4** These documents shall remain sealed in their entirety.

9) *ZY203652364-ZY203652366*

This document is a three-page internal email dated April 29, 2004, from a Lilly employee to various Lilly addressees. The document summarizes remarks made by a Lilly representative at a public hearing in connection with Lilly's marketing efforts for Zyprexa to the state of Texas. Given that the document simply summarizes remarks delivered in a public forum, there is no reason to keep this document sealed.

This document shall be unsealed in its entirety.

10) *ZY204323194-ZY204323196*

This is a three-page internal document titled "Zyprexa Partnership Agreement." It appears to have been created in 2002, and summarizes various business objectives that Lilly will seek to further in its relationships with payor customers and strategies for attaining those objectives. Given Lilly's continuing business relationships with payor customers, it is reasonable to expect that release of this document would provide current payor customers of Lilly with valuable insights into Lilly's objectives in this segment of the market which could be used to the customers' advantage in negotiations with Lilly, thereby causing competitive harm to Lilly in its current marketing and sales efforts. This document shall remain sealed in its entirety.

11) *ZY207401920-ZY207401977*

This is a 58 page document titled "Answers That Matter." The document appears to have been created in 2000, and Lilly describes it as a presentation reflecting Lilly's strategic approach for setting the price of Lilly pharmaceuticals. Plaintiffs maintain that the document simply presents, in summary form, basic and well-known principles of pharmacoeconomics, along with publicly available sales information of various pharmaceuticals, that nothing in the document is specifically aimed at Zyprexa, and very little is specifically aimed at Lilly's business practices as opposed to the practices of the pharmaceutical industry generally. A review of the document reveals generalized principles of pharmaceutical pricing, and data concerning national health care expenditures and pharmaceutical pricing, none of which Lilly has claimed is proprietary to the company. It is not clear in what way release of this document would cause Lilly competitive harm in the current pharmaceutical marketplace.

This document shall be unsealed in its entirety.

**SALES CALL NOTES:**

The sales call notes are notes made by Lilly sales representatives following visits to physicians. In connection with the litigation of the personal injury cases, some 132,000 call notes were produced by Lilly under the confidentiality order governing document production in the Zyprexa litigation. While maintaining its position that none of the call notes should be unsealed, Lilly argued in its October 3, 2008 submission that the release of call notes revealing patient and physician names, or containing personal information about physicians and others, or descriptions of physicians' ideas, opinions, statements and details of the physicians' practices, would cause "unnecessary embarrassment or damage," and therefore all such call notes should remain sealed.

**\*5** In the September 5, 2008 Order, the Court directed that "[n]ames of individual plaintiffs shall be redacted and referred to by number, to permit later identification if that becomes necessary." *September 5, 2008 Order* at 292. In addition to the redaction of

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 791540 (E.D.N.Y.)
 **(Cite as: 2009 WL 791540 (E.D.N.Y.))**

all patient names appearing in the call notes, the Special Discovery Master ruled at the October 21, 2008 hearing that any additional information identifying a particular patient should be redacted as well. *October 21, 2008 Hearing Transcript* at 100.

A more difficult issue was to what extent physicians' names, personal information and other details of particular physicians' views or practices might be within the ambit of the Court's "unnecessary embarrassment or damage" standard. Plaintiffs strenuously opposed redaction of the names of physicians, and also opposed redaction of personal details about the physicians because, in plaintiffs' view, these details as recorded by the Lilly sales representatives demonstrate the close relationships that the sales representatives formed with the physicians to whom they marketed Zyprexa. Lilly took the position that release of the sales call notes generally would cause "unnecessary embarrassment or damage," given both that the notes contain personal details about the physicians lives and practices, and basically express the private impressions and opinions of Lilly's sales representatives.

At the October 21, 2008 hearing, the Special Discovery Master concluded that as a general matter the physicians' names should not be redacted, unless accompanied by personal information about the physician or the physician's family that would cause "unnecessary embarrassment or damage," in which case the physician's name should be redacted along with the city and state of the physician's practice. *Id.* at 100-101.

There was a substantial amount of discussion at the October 21, 2008 hearing concerning exactly what type of personal information might cause "unnecessary embarrassment or damage" and therefore should be redacted along with the physician's name and identifying information. *Id.* at 81-86. An important factor in this analysis was that plaintiffs intend to post the sales call notes and information contained within them on the internet for the broadest possible public dissemination, with capabilities that will allow anyone who wishes to review and search them, including searches keyed to doctors' names. *Id.* at 75. With that in mind, it was the Special Discovery Master's view that information concerning such things as the health of the physician or members of the physician's family, the physician's lifestyle (e.g., vacation plans, taste in wines or cars, etc.), and similar personal information was sufficiently private in nature so that wide access to that information by others on the internet could cause "unnecessary embarrassment or damage" to the individuals involved. The Special Discovery Master directed the parties to review the call notes and identify those notes containing personal information which in their view met the standard. The Special Discovery Master decided to defer further consideration of the scope and application of the standard until the parties completed their review and there could be a fuller understanding of the range of material potentially implicated. *Id.* at 102.

**\*6** Plaintiffs completed their review of the approximately 132,000 sales call notes by November 4, 2008. They identified 488 call notes to which they proposed redactions of one form or another. Lilly completed its review of the call notes by December 18, 2008. Lilly identified 4,066 call notes which it believed fell within the ambit of the Court's standard as applied by the Special Discovery Master.

**RULINGS (Sales Call Notes):**

After further review of the parties' positions as set forth in their various submissions and at the hearings of October 21, 2008 and October 31, 2008, and following review of the various submissions of the parties from November 4, 2008 through December 18, 2008, including the redactions proposed by the parties therein, prior oral rulings with respect to sales call notes are confirmed, supplemented or modified as follows:

1. *The names and addresses of all patients, along with any additional information capable of identifying a particular patient, shall be redacted from all sales call notes.* As directed by the Court in the September 5, 2008 Order, patients' names will be replaced by numbers to permit later identification in the event that becomes necessary.

2. *The names and addresses of all physicians and members of the physicians' staffs, along with any additional information capable of identifying a particular physician or staff member, shall be re-*

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 791540 (E.D.N.Y.)
 **(Cite as: 2009 WL 791540 (E.D.N.Y.))**

*dacted from all sales call notes.* Physicians' and staff members' names will be replaced by numbers to permit later identification in the event that becomes necessary. This ruling represents a change from the ruling delivered orally at the October 21, 2008 hearing (although this approach was briefly raised, without further discussion, by the Special Discovery Master at that hearing, *see October 21 Hearing Transcript* at 47).

First, the broad worldwide dissemination of physicians' names through the internet as envisioned by plaintiffs may have unintended consequences, such as harassment of physicians by patients, former patients and others opposed to the use of Zyprexa (*see,* e.g., Lilly December 18, 2008 letter to the Special Discovery Master at 2-3, describing incident related in sales call note where patient, reading information about the Zyprexa litigation posted on the internet, threatened to kill his prescribing physician). Second, although identification of individual physicians in the call notes might be useful to class members, as argued by plaintiffs, for example in connection with the administration of their prescriber networks or otherwise, that purpose can be accomplished through other mechanisms. Under the number system described above, for instance, a class member could provide a list of the prescribing doctors in its network to class counsel, who could in turn provide a list of the physician numbers so that the class member can correlate sales call visits with its network of prescribing physicians should that be necessary.

**\*7** 3. *In light of the ruling that the names of physicians and staff members shall be redacted, it is unnecessary to redact information that would otherwise cause "unnecessary embarrassment or damage" to the individual involved, unless the information is capable of identifying a particular physician or staff member.* The parties' review of the sales call notes demonstrates the wide variety of personal information about physicians which the notes contain. Examples (with doctors' names redacted) include:

(i) *material that describes the personal health of the physicians and family members* (e.g.,"found out that Dr. [name redacted] had emergency surgery and had his kidney removed because he had a huge tumor ...," ZY 10055 45879; "Tomorow he is having nasal surgury [sic]," ZY SOUTHERM 94); doctor "was feeling sick-he said jet lag from his trip ...," ZY SOUTHERM 192; "talked about Dr. [name redacted] and how he is doing since his daughter's death ...," ZY 10055 37052;

(ii) *observations concerning physicians' personality and habits, and personal interactions with physicians* (e.g. "same old same old with himhe tries to be funny and sarcastic...," ZY GRAYT 398; "took dr. [name redacted]'s smoke break with him ...," ZY GRAYT 406); "[name redacted] made a comment about me in a BikiniI am not real sure if that was supposed to be pretty or not...,", ZY RYANR 88; and

(iii) *notes about various personal activities, career plans and other events in the lives of physicians* (e.g., "Keep this Hush, but [name redacted] said that [name redacted] may be going to be a Hospitalist and leaving practice." ZY 10055 95601; "Dr. [name redacted] wants us to be on the look-out for him another job. He talked at length about how he is ready to move on ...," ZY MALABUYOCW 79; "Place is wild today. A lot of changes has mad all the Dr.s mad and no one is taling to anyone. There is a meeting tonight about how the Dr.s are treated and I will not be suprised if someone is gone soon ..., [sic]" ZY MALABUYOCW 98; "just was his same old self-going on vacation to vegas next week ...," ZY GRAYT 400; "Dr. [name redacted] had just been married and they are going to South Carolina to honeymoon on the beaches there." ZY 10055 95637).

The parameters of exactly what personal information could cause "unnecessary embarrassment or damage" are not readily susceptible to bright line delineation, especially given the many different kinds of personal information contained in the call notes. The difficulty of the inquiry can be seen in the efforts of the parties to identify material that meets this standard-as noted above, Lilly identified 4,066 sales call notes containing such material, while plaintiffs identified only 488.

This difficulty is yet another reason in support of

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 791540 (E.D.N.Y.)
 **(Cite as: 2009 WL 791540 (E.D.N.Y.))**

the redaction of the names of physicians and staff members. Redacting names avoids the need for-and arguments about-weighing each individual item of personal information contained in the 132,000 call notes and attempting to derive and apply some consistent standard of what details of a particular individual's personal life might cause "unnecessary embarrassment or damage."

**\*8** Lilly made clear at the hearings of October 21 and October 31, 2008 that it intended to seek review of the Special Discovery Master's rulings, and requested that any implementation of the rulings, when formally issued, be stayed to permit Lilly time to prepare and file its appeal. Accordingly, the rulings set forth herein are stayed for 10 days or, if longer, for the time permitted under prior case management orders or local rules to appeal rulings of the Special Discovery Master.

E.D.N.Y.,2009.
In re Zyprexa Products Liability Litigation
Slip Copy, 2009 WL 791540 (E.D.N.Y.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.