UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE: Seroquel Products Liability Litigation

MDL DOCKET NO. 1769

This Document Relates to All Cases

---

## ASTRAZENECA'S MOTION AND MEMORANDUM OF LAW PROPOSING A PLAN FOR REMAND

I. **INTRODUCTION**

AstraZeneca requested in its June 1, 2009 submission that each party be permitted to propose a specific remand plan 30 to 45 days before this Court suggests remand to the Judicial Panel on Multidistrict Litigation ("JPML"). *See* Doc. No. 1440 at 21-23. Since then, the Court has made considerable progress in completing the tasks that it set out to accomplish before remand. Accordingly, AstraZeneca respectfully suggests that the time is ripe for the Court and the parties to consider the specific procedure by which the cases in this MDL will be remanded to the transferor courts.

On October 12, 2009, AstraZeneca filed a motion requesting a status conference to discuss remand and proposing that the conference take place during the week of November 16. *See* Doc. No. 1532. AstraZeneca's motion explained that, although the parties disagree on a number of issues, both plaintiffs and AstraZeneca do agree on one fundamental tenet: that any plan for remand should focus at the outset on managing the development of a limited group of cases. *See id.* AstraZeneca's motion expressed a hope that the parties would meet

prior to the conference and potentially narrow, if not fully resolve, their areas of disagreement. *See id.* Plaintiffs have declined to meet. Accordingly, and in conformity with its June 1 request, which sought to assist the Court in determining a remand plan, AstraZeneca respectfully submits this motion to identify a proposed framework for a controlled remand.[1]

## II. ASTRAZENECA'S PROPOSAL

However this Court decides to craft its specific plan for remand, AstraZeneca respectfully requests that the Court follow three basic principles:

(1) Only a manageable number of cases should be remanded at the outset;[2]

---

[1] AstraZeneca has not previously proposed a formal remand plan because the Court's orders did not request that the parties submit remand proposals. Believing that remand was premature (a position it still holds), AstraZeneca explained the bases for that belief and suggested additional tasks for completion in the MDL in response to the Court's February 11, 2009 Order permitting "Briefing and Argument ... Regarding Further Proceedings in the MDL and the Return of Non-Florida Cases to Their Home Districts," Doc. No. 1270. *See* Doc. Nos. 1386, 1395. Plaintiffs apparently had the same understanding as AstraZeneca of what the Court's order required, arguing in their March filings that the cases were ripe for remand, but without proposing a specific remand plan. *See* Doc. Nos. 1387, 1394. On June 1, 2009, however, in violation of the Court's Order that the June 1 filings were to be limited to the "scope of case-specific discovery after remand" and the outstanding "case-specific and state law issues," plaintiffs went ahead and filed a detailed remand plan, *see* Doc. No. 1442, which elaborated on the contours of what they had outlined orally to the Court at the April 22, 2009 hearing, *see* 04/22/09 Hearing Tr. at 62:20-63:20. Having taken the liberty of setting forth a detailed plan in their June filing even though the Court had not invited such a submission, plaintiffs have now advised AstraZeneca that, in their view, a motion such as the instant one is untimely. *See* Doc. No. 1537. For the stated reasons, including AstraZeneca's request in its own June 1 filing that the parties brief these issues to the Court, AstraZeneca does not agree. Moreover, given the critical importance of an appropriate remand plan to the future of this litigation, the judiciary, and the parties, and the lack of prejudice from the filing of this motion at this time, AstraZeneca respectfully requests that the Court accept its filing.

[2] Test cases or bellwether cases often have been valuable in moving pharmaceutical mass torts toward resolution. *See* Manual for Complex Litigation § 22.315 (4th Ed. 2009). Indeed, this Court itself established a bellwether trial schedule for 24 cases drawn from the Initial

2

    (2)  The first group of remanded cases should be concentrated in a small number of jurisdictions that have some degree of significance to the litigation; and

    (3)  After remand, all cases should go forward in the jurisdictions where plaintiffs reside, and not in the jurisdictions where plaintiffs filed their lawsuits.

Using these principles as guideposts, there are many ways that the Court could effectuate a controlled remand. For example, the Court could: (a) select 4 or 5 judicial districts from among those that are significant to the litigation, *e.g.*, the 21 districts in which more than 100 plaintiffs reside;[3] (b) randomly select a reasonable number of cases – 15 or 20, for example – in each of the selected districts from among all the cases filed by plaintiffs who reside in the selected districts; (c) suggest to the JPML that the selected cases be remanded to the transferor courts (*i.e.*, the courts where they originally were filed), with the request that to the extent necessary, the transferor courts use 28 U.S.C. § 1404 to transfer the cases to the districts where plaintiffs reside (*i.e.*, the 4 or 5 selected districts);[4] and (d) administratively close or stay all the non-selected cases pending the outcome of the cases that

---

Trial Pool ("ITP") of Florida-resident plaintiffs. *See* Case Management Order ("CMO") No. 5, Doc. No. 792. None of the ITP cases were tried, however, because the Court granted summary judgment to AstraZeneca in *Haller* and *Guinn*, and administratively closed the remaining cases pending appellate review in *Guinn*.

[3] Exhibit 1 lists these 21 districts in alphabetical order, based on the cases currently in this MDL.

[4] As this Court is well aware, most of the 6,000+ MDL cases were filed in districts that have no particular connection to the plaintiffs or to this litigation. For example, nearly 5,000 currently-active cases were filed in the District of Massachusetts, even though (a) more than 99% of the plaintiffs who filed those cases reside, were prescribed and ingested Seroquel, and suffered their alleged injuries in other states, and (b) AstraZeneca is neither incorporated nor headquartered in Massachusetts, and plaintiffs have never alleged that AstraZeneca did anything in Massachusetts that is of significance to this litigation.

were remanded, thereby allowing the parties to focus on the selected cases and avoid placing needless burdens on other courts.[5] After the disposition of the first group of cases, the Court could confer with the parties and determine how to proceed with the remaining cases. Alternatively, the Court could require the parties each to select a handful of districts with some degree of significance to the litigation, and each to identify a reasonable number of cases to proceed in those districts. Or, the court could embrace a system that identifies cases for remand based on some set of indicia of representativeness (*e.g.*, type of injury, reason for Seroquel use, timing of Seroquel use, dosage).[6]

Regardless of the details, any plan that incorporates the three principles described above would benefit this litigation, for several reasons.

First, by limiting the number of jurisdictions that are impacted on remand, the Court would reduce the burden on the federal judiciary. As this Court is acutely aware, there is a great deal of work entailed in adjudicating a Seroquel case. Among other things, in the pretrial phase alone, a court has to rule on numerous discovery and *in limine* motions, wade through voluminous medical records and deposition testimony, conduct *Daubert* hearings and decide *Daubert* motions, determine the substantive state law legal standards, and apply those standards in deciding summary judgment motions. Moreover, if one of these cases is

---

[5] If the Court administratively closes the non-remanded cases while the remanded cases are being worked up and disposed of, it would avoid, at least for the time being, forcing scores of transferor courts to incur the administrative burden of processing and transferring thousands of cases to the districts in which they should have been filed in the first place.

[6] Additionally, the Court could remand cases randomly (either by selecting districts by chance or by remanding cases in filing order), although such a system would not necessarily result in selecting districts with some significant connection to the litigation.

4

actually able to get past the *Daubert* phase and proceed to trial (something which has yet to happen in the Seroquel litigation), the trial judge would have to deal with many additional evidentiary and substantive law issues that would consume substantial judicial resources. It is burdensome and inefficient to force scores of courts across the country to undertake this volume of work when more can be accomplished by focusing on a limited number of courts in jurisdictions where most of the plaintiffs reside.

Second, the remand of a limited number of cases to a controlled number of jurisdictions in which large numbers of plaintiffs reside not only would permit the parties to continue to manage the litigation efficiently, but also would allow the parties to work up the remanded cases in an efficient manner. Moreover, the disposition of these cases would reveal to the parties and the courts how differences in state substantive law, jury pools, or other factors might impact the outcome of the cases of the numerous other plaintiffs who reside in the selected jurisdictions, just as the disposition of the first two trial cases in the Florida Initial Trial Pool has shed light on the entire group of Florida MDL cases.

Finally, as this Court has repeatedly recognized, it is far more appropriate that Seroquel cases be adjudicated by the courts of the districts where plaintiffs actually reside, used Seroquel, and allegedly sustained injuries because these courts have the most significant connection to the cases and are most familiar with the applicable state law.

### III.  PLAINTIFFS' REMAND PROPOSAL IS SEVERELY FLAWED

In their proposed plan for remand, plaintiffs suggest that they be permitted, unilaterally and with no oversight, to select 52 bellwether cases in 52 separate courts. *See* Doc. No. 1442. For the reasons discussed below, plaintiffs' proposed plan would be a

burden on the federal judiciary, is inconsistent with this Court's stated objectives, and is patently unfair.

The only workable part of plaintiffs' remand proposal is that, like AstraZeneca's plan, it focuses at the outset on a limited number of cases while all the remaining cases are placed on hold. Plaintiffs apparently recognize, like AstraZeneca, that it would be virtually impossible for the federal court system and the parties to deal with 6,000+ cases at one time. In every other regard, however, plaintiffs' plan is highly inefficient and lacking in merit. Plaintiffs' plan would needlessly burden many more federal judges than AstraZeneca's proposal, while taking longer to dispose of fewer cases.[7]

### A. Details of Plaintiffs' Plan

Plaintiffs propose that they be permitted unilaterally to select a single case for work-up and trial in each of the 52 transferor districts. *See* 04/22/09 Hearing Tr. at 62:20-63:20; Doc. No. 1442 at 1-4. After final disposition of plaintiff's hand-selected case in each district,

---

[7] Plaintiffs post-remand discovery program is also problematic. Contrary to CMO No. 5 and the Federal Rules of Civil Procedure, *see* Doc. No. 792 at 5 (permitting each side to take 10 depositions in the ITP cases); Fed. R. Civ. P. 30(a)(2)(A), plaintiffs propose that AstraZeneca be limited to taking only 6 depositions per case. Since it is often necessary to depose numerous treating and prescribing doctors about plaintiffs' mental illnesses and past and current medical conditions, however, AstraZeneca would be prejudiced by this proposed deviation from CMO No. 5 and the Federal Rules. Moreover, plaintiffs propose a lopsided and unworkable discovery schedule. As of their June filing, they were suggesting that there be 3 fact depositions in September, up to 42 in October, 115 in November, 188 in December (*i.e.*, 6 depositions per day, including weekends and holidays), 140 in January, 92 in February, and 44 in March. These numbers would nearly double if each party took the 10 depositions per case permitted by CMO No. 5 and the Federal Rules. To exacerbate the staggering logistical problems, plaintiffs have objected to further involvement of a PMO, and propose that the parties themselves be responsible for scheduling the hundreds of depositions, although this MDL has demonstrated that even a PMO often has difficulties scheduling the depositions of multiple doctors with busy calendars. *See* Doc. No. 1442 at 3-4. Indeed, it is often difficult even to get plaintiffs to a deposition.

6

plaintiffs propose that AstraZeneca would select a case in that district. *Id.* After disposition of AstraZeneca's selection, plaintiffs would select another case, and so on and so forth. *Id.* Under plaintiffs' plan, all 6,000+ cases would be remanded within six months,[8] but no more than 52 cases – in 52 different districts – would be active at any one time. All other cases would be put on hold. *Id.*

### B. Plaintiffs' Plan Would Needlessly Burden Scores of Federal Judges

Plaintiffs' plan would impose a much greater burden on federal judges across the country than AstraZeneca's plan, while actually accomplishing much less.

Plaintiffs propose to force each of 52 separate federal district courts to deal substantively with Seroquel cases, including those in districts that are relatively insignificant to the resolution of the Seroquel litigation because so few plaintiffs filed their lawsuits or reside there. For example, plaintiffs would have a judge in the Eastern District of North Carolina, with its one case (filed by a resident of Virginia, no less), shoulder the same burdens, at least initially, as the judge in the District of Massachusetts, with its nearly 5,000 cases. Worse, plaintiffs' plan gives the same weight to the single case filed by a resident of Puerto Rico as it does to the 375 cases filed by residents of South Carolina, even though the resolution of the Puerto Rico resident's case would have no additional significance to the litigation, while the rulings in a South Carolina case could establish standards that might well lead to the dismissal of hundreds of other cases filed by South Carolina plaintiffs and governed by South Carolina law.

---

[8] In their June filing, Plaintiffs propose a rolling remand beginning in August, 2009 and extending through January, 2010. *See* Doc. No. 1442. Given the passage of time, Plaintiffs would presumably push back the start date, but not the sequencing, of the remands.

A carefully structured remand plan would burden as few judges as possible. Plaintiffs' plan does just the opposite.

### C. Plaintiffs' Plan Ignores the Principle That Seroquel Cases Should Be Adjudicated by the District Courts Where Plaintiffs Reside

This Court has stated on a number of occasions that Seroquel cases are best adjudicated by a judge in the plaintiff's district of residence. Consistent with this principle, the Court has indicated its intent to recommend that each transferor court, after remand, transfer to the plaintiffs' home districts any cases that belong there (which would include almost all of the nearly 5,000 cases filed in the District of Massachusetts). *See, e.g.*, 01/28/09 Hearing Tr. at 18:7-18. There are additional compelling reasons for doing so. Almost all plaintiffs reside in the same districts where they were prescribed and used Seroquel, allegedly sustained injuries, and received medical treatment. Moreover, the witnesses are usually located in the districts where plaintiffs reside, and except for the very few plaintiffs who may have moved to other states, the governing law will almost always be that of plaintiffs' home states.

Plaintiffs' remand plan simply ignores this basic principle. Plaintiffs would force judges in distant states to adjudicate cases that plaintiffs chose to file there, no matter how inconvenient and inappropriate. At the same time, plaintiffs would deprive the judges in plaintiffs' home districts of the opportunity to try their cases. For example, since only 2 of the 375 South Carolina residents in this MDL filed their cases in South Carolina, the United States District Court for the District of South Carolina could try only those two cases under plaintiffs' plan, while other district courts – mainly the District of Massachusetts – would

have to deal with the remaining 373 cases filed by South Carolina residents. The situation would be the same in many other states and districts.

Plaintiffs have not suggested any reason why this Court should abandon its principles. This Court should recommend that transferor courts use their authority under 28 U.S.C. § 1404 to transfer mis-filed cases to the plaintiffs' home districts.

### D. Plaintiffs' Plan Is Inefficient

Plaintiffs' plan to work up only one case at a time in each district would make this litigation last decades. Indeed, even if the parties were somehow able, with record-setting efficiency, to dispose of one case per week in the District of Massachusetts, it would take over 96 years to work their way through the nearly 5,000 cases filed in that court. Indeed, as the Court knows from its own experience with the Florida ITP cases, even if a sizeable group of cases is selected, only a handful of cases will get to the dispositive motion stage, and actual trials are even rarer. In fact, all Seroquel cases that have gotten as far as dispositive motions – two in the MDL[9] and one in Delaware state court[10] – have ended with summary judgment for AstraZeneca. Working up only one case at a time, as plaintiffs propose, would result in intolerable delay.

---

[9] *See Guinn v. AstraZeneca LP, et al.*, MDL Case No. 6:07-cv-10291, Doc. No. 47; *Haller v. AstraZeneca LP, et al.*, MDL Case No. 6:07-cv-15733, Doc. No. 50. As the Court is aware, the *Guinn* decision is currently on appeal.

[10] *See* Order Granting Summary Judgment, *Scaife v. AstraZeneca LP, et al.*, Case No. 06C-04-218 SER (June 9, 2009 Del. Super. Ct.), *available online at* http://courts.delaware.gov/opinions/(z2ifw4jqq1mtzg45c3p4lbe3)/download.aspx?ID=122790. Plaintiffs appealed this decision as well, but later voluntarily dismissed the appeal. *See* Notice of Voluntary Dismissal, *Scaife v. AstraZeneca LP, et al.*, Case No. 391,2009 (August 7, 2009 Del.).

The most efficient way to move this litigation toward resolution is to allow the simultaneous work-up of an appropriately-sized, manageable group of cases in a handful of selected districts. That way, one or two cases in each district might survive to the summary judgment stage or even, perhaps, all the way to trial.[11]

### E. Plaintiffs' Plan Would Lead to Inconsistent Rulings and Delay

Plaintiffs' plan might well require 52 separate judges to wrestle with the same legal issue simultaneously, which likely would result in numerous inconsistent or even conflicting rulings. Worse, plaintiffs' plan would require multiple judges within each circuit simultaneously to interpret that circuit's *Daubert* law, further increasing the likelihood of conflicts. For example, under plaintiff's plan, ten separate district judges would be asked to interpret Fifth Circuit *Daubert* law in the first round of cases. Similarly, multiple judges – some from distant states – would be forced to determine a given state's substantive law. Inconsistent or conflicting rulings, particularly on dispositive issues, likely would be appealed, further delaying the resolution of this litigation. By proposing only a handful of courts, AstraZeneca's plan offers a better chance for coordination among the courts and consistency in rulings.

---

[11] It is also worth noting that although plaintiffs' plan purports to implement strict deadlines (*e.g.*, fact discovery to be completed 60 days after remand), in reality, based on Plaintiffs' June submission (and even without moving the benchmarks forward given the passage of time), discovery would not be complete in the first group of cases until the end of June 2010. *See* Doc. No. 1442 at 2-3. Factoring in additional time for *Daubert* and dispositive motions and trial, the parties would be hard-pressed to close the first group of cases in 2010.

### F.   Plaintiffs' Plan Unfairly Favors Plaintiffs

Finally, plaintiffs' plan would permit plaintiffs to hand-select the first 52 cases. Under plaintiffs' plan, the only Seroquel activity in federal courts for many months, and the first 52 federal Seroquel trials (if all of plaintiffs' selections made it to trial), would occur in plaintiffs' hand-selected cases and in plaintiffs' hand-selected courts, which often have no relationship at all to the cases.[12]  That is patently unfair.

Any sensible plan for bellwether trials would involve either randomly-selected cases, which is what the Manual for Complex Litigation recommends, *see* § 22.315, or cases selected equally by both parties.  Nothing useful can be learned from focusing only on plaintiffs' hand-selected cases.

### IV.   CONCLUSION

For all these reasons, AstraZeneca asks that the Court reject plaintiffs' plan and suggest AstraZeneca's remand plan to the Judicial Panel on Multidistrict Litigation. AstraZeneca hopes that the Court will grant AstraZeneca's request for a status conference, so that the parties will have an opportunity to discuss with the Court their views on remand plans.

---

[12] Further, 9 of the 52 districts have only one Seroquel case on their docket, which means that AstraZeneca would never make a selection in those districts.  Even in the other 43 districts, where AstraZeneca would select the second case, based on the Florida ITP experience, as well as the experience in the state courts of Delaware and New Jersey, plaintiffs likely would dismiss AstraZeneca's selections.

DATED:  October 19, 2009                    Respectfully Submitted,

/s/ *Fred T. Magaziner*
Fred T. Magaziner
Shane T. Prince
DECHERT LLP
2929 Arch Street
Philadelphia, PA  19104
Telephone: (215) 994-4000
Facsimile: (215) 994-2222
fred.magaziner@dechert.com
shane.prince@dechert.com

/s/ *Chris S. Coutroulis*
Chris S. Coutroulis (Fla. Bar No. 300705)
Robert L. Ciotti (Fla. Bar No. 333141)
CARLTON FIELDS, P.A.
Corporate Center Three at International Plaza
4221 W. Boy Scout Blvd.
Tampa, FL  22607
Telephone: (813) 223-7000
Facsimile: (813) 229-4133
ccoutroulis@carltonfields.com
rciotti@carltonfields.com

*Counsel for AstraZeneca LP and AstraZeneca Pharmaceuticals LP*

## CERTIFICATE OF CONFERENCE

Counsel for AstraZeneca conferred with counsel for plaintiffs in a good faith attempt to resolve the issues presented in this Motion, but counsel were unable to agree on their resolution.

/s/ *Chris S. Coutroulis*

## CERTIFICATE OF SERVICE

I hereby certify that, on October 19, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system through which all participating parties are deemed served. I further certify that, by using the CM/ECF, the foregoing has been served on plaintiffs' liaison counsel, who is charged with serving any non-CM/ECF participants on the attached Service List.

/s/ *Chris S. Coutroulis*

# SERVICE LIST

## In Re: Seroquel Products Liability Litigation
## MDL Docket No. 1769

| | |
|---|---|
| Paul J. Pennock, Esq.<br>Michael E. Pederson, Esq.<br>Weitz & Luxenberg, P.C.<br>700 Broadway<br>New York, NY 10003<br>Telephone: (212) 558-5500<br>Ppennock@weitzlux.com<br>MPederson@weitzlux.com<br>***Plaintiffs' Lead Counsel*** | Camp Bailey, Esq.<br>Michael W. Perrin, Esq.<br>Fletcher Trammell, Esq.<br>Robert Cowan, Esq.<br>Bailey Perrin Bailey LLP<br>The Lyric Centre<br>440 Louisiana, Suite 2100<br>Houston, TX 77002<br>Telephone: (713) 425-7240<br>cbailey@bpblaw.com<br>mperrin@bpblaw.com<br>rcowan@bpblaw.com<br>***Plaintiffs' Lead Counsel*** |
| Larry Roth, Esq.<br>Law Offices of Larry M. Roth, P.A.<br>Post Office Box 547637<br>Orlando, FL 32854-7637<br>Telephone: (407) 872-2239<br>LROTH@roth-law.com<br>***Plaintiffs' Liaison Counsel*** | Tommy Fibich, Esq.<br>Fibich, Hampton & Leebron, L.L.P.<br>1401 McKinney, Suite 1800<br>Five Houston Center<br>Houston, TX 77010<br>Telephone: (713) 751-0025<br>tfibich@fhl-law.com |
| Matthew F. Pawa, Esq.<br>Law Offices of Matthew F. Pawa, P.C.<br>1280 Centre St., Suite 230<br>Newton Centre, MA 02459<br>Telephone: (617) 641-9550<br>Mp@pawalaw.com | Robert L. Salim, Esq.<br>Robert L. Salim Attorney at Law<br>PO Box 2069<br>Natchitoches, LA 71457-2069<br>Telephone: (318) 352-5999<br>robertsalim@cp-tel.net |
| Keith M. Jensen, Esq.<br>Jensen, Belew & Gonzalez, PLLC<br>1024 North Main<br>Fort Worth, TX 76106<br>Telephone: (817) 334-0762<br>kj@kjensenlaw.com | Scott Allen, Esq.<br>Cruse, Scott, Henderson & Allen, L.L.P.<br>2777 Allen Parkway, 7th Floor<br>Houston, Texas 77019<br>Telephone: (713) 650-6600<br>sallen@crusescott.com |
| Matthew E. Lundy, Esq.<br>Lundy & Davis, LLP<br>333 North Sam Houston Parkway East<br>Suite 375<br>Houston, TX 77060<br>Telephone: (281) 272-0797<br>mlundy@lundydavis.com | W. Todd Harvey, Esq.<br>E. Ashley Cranford, Esq.<br>Whatley Drake & Callas<br>2001 Park Place North, Suite 1000<br>Birmingham, AL 35203<br>Telephone: (205) 328-9576<br>ACranford@wdklaw.com |

| | |
|---|---|
| Robert L. Ciotti, Esq.<br>Carlton Fields, P.A.<br>4221 W. Boy Scout Boulevard<br>Suite 1000<br>Tampa, FL 33607-5736<br>Telephone: (813) 223-7000<br>rciotti@carltonfields.com<br>***Attorney for Defendants AstraZeneca Pharmaceuticals, LP, and AstraZeneca LP*** | Gregory P. Forney, Esq.<br>Shaffer Lombardo Shurin<br>911 Main Street, Suite 2000<br>Kansas City, MO 64105<br>Telephone: (816) 931-0500<br>gforney@sls-law.com<br>rbish@sls-law.com<br>***Attorney for Defendant, Marguerite Devon French*** |
| Randy Niemeyer<br>22442 Pike 309<br>Bowling Green, MO 63334-5209<br>*Pro Se* | Eric B. Milliken, Esq.<br>3 Sir Barton Ct.<br>Newark, DE 19702<br>*Pro Se* |
| Catherine Solomon<br>3100 N.E. 83<br>Gladstone, MO 64119<br>*Pro Se* | Louisiana Wholesale Drug Co. Inc.<br>C/O Gayle R. White<br>Registered Agent<br>Highway 167N<br>Sunset, LA 70584<br>*Pro Se* |
| Aaron C. Johnson, Esq.<br>Summers & Johnson<br>717 Thomas<br>Weston, MO 64098<br>Telephone: (816) 640-9940<br>firm@summersandjohnson.com | Robert A. Schwartz, Esq.<br>Bailey & Galyen<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744<br>bschwartz@galyen.com |
| Todd S. Hageman, Esq.<br>Simon and Passanante, PC<br>701 Market St., Suite 1450<br>St. Louis, MO 63101<br>Telephone: (314) 241-2929<br>thageman@spstl-law.com | Mark P. Robinson, Jr., Esq.<br>Robinson, Calcagnie & Robinson<br>620 Newport Center Drive, 7th Floor<br>Newport Beach, CA 92660<br>Telephone: (949) 720-1288<br>mrobinson@robinson-pilaw.com |
| Thomas F. Campion, Esq.<br>Heidi E. Hilgendorff, Esq.<br>Drinker Biddle & Reath, LLP<br>500 Campus Drive<br>Florham Park, New Jersey 07932-1047<br>Telephone: (973) 360-1100<br>Thomas.Campion@dbr.com<br>Heidi.Hilgendorff@dbr.com<br>***Attorneys for Defendants Janssen Pharmaceutical Products and Johnson & Johnson Co.*** | Michael Davis, Esq.<br>James Mizgala, Esq.<br>Sidley Austin LLP<br>One South Dearborn<br>Chicago, IL 60603<br>Telephone: (312) 853-7731<br>mdavis@sidley.com<br>jmizgala@sidley.com<br>***Attorneys for Defendants AstraZeneca LP and AstraZeneca Pharmaceuticals, LP*** |

| | |
|---|---|
| Elizabeth Raines, Esq.<br>Baker, Sterchi, Cowden & Rice, LLC<br>2400 Pershing Road, Suite 500<br>Kansas City, MO 64108<br>Telephone: (816) 471-2121<br>raines@bscr-law.com | Timothy Reese Balducci, Esq.<br>The Langston Law Firm, PA<br>P.O. Box 787<br>100 South Main Street<br>Booneville, MS 38829-0787<br>Telephone: (662) 728-3138<br>tbalducci@langstonlaw.com |
| Kenneth W. Bean, Esq.<br>Sandberg, Phoenix & von Gontard<br>One City Centre<br>15th Floor<br>St. Louis, MO 63101-1880<br>Telephone: (314) 231-3332<br>kbean@spvg.com<br>***Attorney for Defendant Dr. Asif Habib*** | Seth S. Webb, Esq.<br>Brown & Crouppen, PC<br>720 Olive St.<br>St. Louis, MO 63101<br>Telephone: (314) 421-0216<br>swebb@brownandcrouppen.com<br>asmith@brownandcrouppen.com<br>blape@brownandcrouppen.com |
| Aaron K. Dickey, Esq.<br>Goldenberg and Heller, PC<br>P.O. Box 959<br>2227 S. State Road 157<br>Edwardsville, IL 62025<br>Telephone: (618) 650-7107<br>aaron@ghalaw.com | Matthew J. Hamilton, Esq.<br>Pepper Hamilton<br>3000 Two Logan Square<br>18th & Arch Street<br>Philadelphia, PA 19103<br>Telephone: (215) 981-4000<br>hamiltonm@pepperlaw.com |
| Justin Witkin, Esq.<br>Ken Smith, Esq.<br>Aylstock, Witkin, Kreis & Overholtz<br>803 N. Palafox St.<br>Pensacola, FL 32501<br>Telephone: (850) 916-7450<br>Jwitkin@AWS-LAW.com<br>ablankenship@aws-law.com<br>ksmith@aws-law.com<br>noverholtz@aws-law.com | David P. Matthews, Esq.<br>Lizy Santiago, Esq.<br>Matthews & Associates<br>2905 Sackett Street<br>Houston, TX 77098<br>Telephone: (713) 222-8080<br>dmatthews@thematthewslawfirm.com<br>lsantiago@thematthewslawfirm.com<br>msalazar@thematthewslawfirm.com |
| Howard Nations<br>Lori A. Siler<br>Howard L. Nations Attorney At Law<br>4515 Yoakum Blvd.<br>Houston, TX 77006-5895<br>Telephone: (713) 807-8400<br>nations@howardnations.com | Mary B. Cotton<br>John D. Giddens, P.A.<br>226 North President Street<br>P.O. Box 22546<br>Jackson, MS 39225-2546<br>Telephone: (601) 355-2022<br>betsy@law-inc.com |
| Salvatore M. Machi<br>Ted Machi & Associates PC<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>Telephone: (281) 335-7744 | Jona R. Hefner, Esq.<br>3441 W. Memorial, Suite 4<br>Oklahoma City, OK 73134-7000<br>Telephone: (405) 286-3000<br>attorneyokc@hotmail.com |

| | |
|---|---|
| David Dickens<br>Miller & Associates<br>105 North Alfred Street<br>Alexandria, VA 22314-3010<br>(703) 519-8080<br>ddickens@doctoratlaw.com | Pete Schneider, Esq.<br>Grady, Schneider & Newman, L.L.P.<br>801 Congress, 4th Floor<br>Houston, TX 77002<br>(713) 228-2200<br>pschneider@gsnlaw.com |
| Fred T. Magaziner<br>Marjorie Shiekman<br>A. Elizabeth Balakhani<br>Shane T. Prince<br>Eben S. Flaster<br>DECHERT LLP<br>Cira Centre<br>2929 Arch Street<br>Philadelphia, PA 19103<br>(215) 994-4000<br>fred.magaziner@dechert.com<br>shane.prince@dechert.com<br>marjorie.shiekman@dechert.com<br>eben.flaster@dechert.com<br>elizabeth.balakhani@dechert.com | Lawrence J. Gornick, Esq.<br>William A. Levin, Esq.<br>Dennis J. Canty, Esq.<br>Levin Simes Kaiser & Gornick LLP<br>44 Montgomery Street, 36th Floor<br>San Francisco, CA 94104<br>Telephone: (415) 646-7160<br>lgornick@lskg-law.com<br>dcanty@lskg-law.com<br>lsimes@levins-law.com<br>jkaiser@lskg-law.com<br>echarley@lskg-law.com<br>ddecarli@lskg-law.com<br>bsund@lskg-law.com<br>astavrakaras@lskg-law.com |
| Scott Burdine, Esq.<br>Hagans Burdine Montgomery<br>Rustay & Winchester, P.C.<br>3200 Travis, Fourth Floor<br>Houston, TX 77006<br>Telephone: (713) 222-2700<br>sburdine@hagans-law.com | Lowell Finson, Esq.<br>Phillips & Associates<br>3030 North 3rd Street<br>Suite 1100<br>Phoenix, AZ 85012<br>(602) 258-8900<br>lowellf@phillipslaw.ws |
| Gale D. Pearson, Esq.<br>Stephen J. Randall, Esq.<br>Pearson, Randall & Schumacher, P.A.<br>Fifth Street Towers, Suite 1025<br>100 South 5th Street<br>Minneapolis, MN 55402<br>(612) 767-7500<br>attorneys@outtech.com | Robert H. Shultz<br>Heyl, Roster<br>103 West Vandalia Street<br>P.O. Box 467<br>Edwardsville, IL 62025<br>(618) 656-4646<br>rshultz@hrva.com<br>bwallace@hrva.com |
| Ellen R. Serbin<br>Perona, Langer, Beck, Lalande & Serbin<br>300 San Antonio Drive<br>Long Beach, CA 90807-0948<br>(562) 426-6155<br>davidhwang@plblaw.com | Scott Armstrong<br>1719 West Main Street<br>Suite 201<br>Rapid City, SD 57702<br>(605) 399-3994<br>Scottarmstrong1235@earthlink.net |

| | |
|---|---|
| Linda S. Svitak<br>Faegre & Benson, LLP<br>90 South 7th Street, Suite 2200<br>Minneapolis, MN  55402-3901<br>(612) 766-7000<br>lsvitak@faegre.com<br>wjohnson@faegre.com | James J. Freebery<br>McCarter & English, LLP<br>919 N. Market Street, 18th Floor<br>Wilmington, DE  19801<br>(973) 622-4444<br>jfreebery@mccarter.com<br>tpearson@mccarter.com |
| Richard D. Hailey<br>Ramey & Hailey<br>3891 Eagle Creek Parkway<br>Suite C<br>Indianapolis, IN  46254<br>(317)299-0400<br>rhailey@sprynet.com | B. Andrew List<br>Clark, Perdue, Arnold & Scott<br>471 East Broad Street, Suite 1400<br>Columbus, OH  43215<br>(614) 469-1400<br>alist@cpaslaw.com<br>lcollins@cpaslaw.com |
| Jane F. Thorpe<br>Scott A. Elder<br>Alston & Bird LLP<br>1201 West Peachtree Street<br>Atlanta, GA  30309<br>(404) 881-7000<br>jane.thorpe@alston.com<br>scott.elder@alston.com | |