# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

IN RE: Seroquel Products Liability
Litigation.

Case No.  6:06-md-1769-Orl-22DAB

_____/

# ORDER

This cause came on for consideration without oral argument on the following motions filed

herein:

| MOTION: | PLAINTIFF'S RENEWED MOTION TO DE-DESIGNATE DOCUMENTS IMPROPERLY CLAIMED AS PRIVILEGED (Doc. No. 1414) |
|---|---|
| FILED: | April 25, 2009 |

THEREON it is ORDERED that the motion is DENIED.

| MOTION: | ASTRAZENECA'S MOTION TO STRIKE PLAINTIFFS' RENEWED MOTION TO DE-DESIGNATE DOCUMENTS IMPROPERLY CLAIMED AS PRIVILEGED OR, IN THE ALTERNATIVE, FOR AN ENLARGEMENT OF TIME TO RESPOND (Doc. No. 1426) |
|---|---|
| FILED: | May 7, 2009 |

THEREON it is ORDERED that the Motion is DENIED as moot.

Plaintiffs seek to compel de-designation of documents AstraZeneca has withheld from

production based on privilege assertions first asserted in the July 2008 privilege log (most recently

revised in February 2009).  Doc. No. 1414.  Plaintiffs allege that the documents are being improperly

designated as privileged "most likely in violation of this Court's and others' privilege rulings[1]."
Doc. No. 1414.  In response, AstraZeneca moves to strike Plaintiffs' Motion to de-designate
documents, arguing the Motion is untimely, filed "nearly a year late" without any explanation for
the delay.[2]

### Background related to privileged document designations

In January 2008, Plaintiffs filed a motion to compel documents "improperly" designated as
privileged and argued privilege was waived through production of insufficient privilege logs.  Doc.
789.  At the time, Plaintiffs contended that they could not evaluate how many of the 18,936
documents withheld on the 3,170 page-log were actually privileged because AstraZeneca failed to
identify the persons making or receiving the protected communications in a large number of entries,
failed to explain the relationship between persons making or receiving communications, and failed
to identify individual emails in an email chain or in attachments.  Doc. No. 980.  At a status
conference on March 11, 2008, the Court ordered Plaintiffs to select, and AstraZeneca to file under
seal, the documents and privilege log entries for 100 documents[3] selected by Plaintiffs, in two
batches of 50 documents each.  Doc. No. 893.

As Plaintiffs described it, after they served AstraZeneca with the list of the first 50
documents on March 13, 2008, AstraZeneca pulled 13 of the documents off the privilege log and

---

[1]Plaintiffs assign inordinate weight to Chief Judge Conway's May 1, 2009 order stating that she planned to resolve
"all remaining confidentiality designations and privilege log issues" before suggesting remand of the MDL to tranferor courts.
Doc. No. 1419.  However, because Plaintiffs' Motion to De-Designate was only filed on April 25, 2009, and was not ripe on
May 1, 2009 when her Order was entered, inclusion of the privileged document issue was merely a recognition that Plaintiffs'
Motion was pending.

[2]Alternatively, AstraZeneca seeks an extension to file its response fourteen days following any ruling on its Motion
to Strike.  Because the basis of the Motion to Strike adequately addresses the untimeliness issue, no further briefing is necessary.

[3]The Court decided on 100 as the total size of the sample for rulings that would allow a fair representation to guide
the parties going forward.

produced 17; after several submissions to AstraZeneca totaling 147 documents, AstraZeneca ultimately chose only 75 to submit for *in camera* review. Doc. No. 916. AstraZeneca invoked the attorney-client privilege for several categories of documents: communications seeking or relaying legal advice between in-house counsel and company personnel, including documents involving litigation matters or legal analysis of safety, scientific, technical, and regulatory matters; draft documents seeking or conveying legal advice; "mixed purpose" communications seeking or conveying legal advice; and documents created and disseminated to facilitate legal advice in the corporate context. Doc. No. 908.

On May 7, 2008, the Court granted Plaintiffs' Motion to Compel in part, finding that AstraZeneca's self-selected reduction supported the inference that it had generally over-designated documents as privileged and that a significant number of unprivileged documents had not been produced.  Doc. No. 980.  After reviewing all of the 75 documents selected by Plaintiffs based on privilege log entries and provided to the Court by AstraZeneca, the Court found that for the great bulk of them, AstraZeneca had failed to establish that communication to attorneys – of "technological, science, public relations, or marketing" documents, including a manual for sales representatives, "Dear Healthcare Provider" letters, draft press statements, and "questions and answers" for the sales representatives to use – were made primarily to facilitate the rendition of legal advice; thus, most of AstraZeneca's claims of privilege were not sustained.  Doc. No. 980 at 13.

The Court set an *ex parte* hearing for the purpose of allowing AstraZeneca to select a representative to testify to provide context for the documents that had some possible basis for a privilege or work product claim.  Doc. No. 990.  In quoting the salient language from *In re Vioxx*, 501 F.Supp.2d at 805-07, the Court expressed its similar approach that it is the burden of the entity asserting the privilege to demonstrate that "legal advice is the primary purpose behind lawyers'

comments" even if these "comments are complemented by grammatical and editorial changes that could reasonably be considered inextricably intertwined with the advice."  Doc. No. 980 at 13.

On May 19, 2008, the Court conducted the *ex parte* hearing at which it elaborated upon the attorney-client and work-product privileges governing AstraZeneca's document production after hearing the testimony of Ms. Davies.  Doc. 996.  At the status conference on June 14, 2008, the Court ordered AstraZeneca to file and serve on Plaintiffs a summary outlining the attorney-client and work-product privilege guidelines that the Court articulated at the *ex parte* hearing. Doc. 1034. Applying these principles, AstraZeneca explains that it then "embarked on a comprehensive, time-consuming and expensive review of the logged documents — producing those that did not satisfy the Court's rulings (approximately 60 percent of the documents on the October 22, 2007 log challenged in plaintiffs' January 2008 motion) and maintaining privilege for those that did."  Doc. No. 1426.  According to AstraZeneca, in July 2008, it provided Plaintiffs with a revised privilege log, and having heard no further objections from Plaintiffs about privilege issues, continued to review, produce, and withhold hundreds of thousands of documents pursuant AstraZeneca's understanding of the Court's rulings.  More than ten months after the court-ordered revisions to the privilege log[4], on April 25, 2009, Plaintiffs filed their Renewed Motion to De-Designate Documents Improperly Claimed as Privileged.  (Doc. No. 1414), and in lieu of a response, AstraZeneca filed its Motion to Strike Plaintiffs' Renewed Motion as untimely.  Doc. No. 1426.

**Motion to De-Designate Documents Improperly Claimed as Privileged**

Plaintiffs contend that even after AstraZeneca's re-review and reclassification of their documents designated as privileged, AstraZeneca has only produced "15 to 27 percent" of the documents originally on the October 2007 privilege log. Doc. No. 1414 at 1.  Plaintiffs contend that

---

[4]AstraZeneca provided a second revised log to Plaintiffs in February 2008.

they are raising the issue at this late juncture because of the discrepancy in the percentage of documents de-designated and the impending remand of non-Florida cases.  Plaintiffs contend that it is critical for the Court to "check AstraZeneca's work to establish, with some level of judicial satisfaction and legal certainty, that AstraZeneca has substantially complied with the Court's instructions regarding the scope of privilege assertions."  Doc. No. 1414 at 1-2.  Plaintiffs cite in support their other grievances against AstraZeneca that have arisen in the last three years of discovery and argue that "descriptions of the documents on the privilege log continue to be so vague and uninformative that Plaintiffs cannot reasonably determine where the attorneys' role arose with respect to particular communications, if it did at all, and whether any such role was exclusively or at least primarily for the purpose of giving legal advice."  Doc. No. 1414 at 2.  According to Plaintiffs, the revised privilege log as it stands now contains approximately 16,000 entries.  Plaintiffs suggest that the Court inspect a group of documents they have chosen (*see* Doc. No. 1414), for the Court to determine whether AstraZeneca has complied with the Court's directions on production of the privileged documents.

Plaintiffs believe that AstraZeneca is still erroneously shielding from "disclosure (as it did at least prior to the Court's first privilege review) business, technological, science, marketing, and other non-legal documents[5] because they were submitted to an attorney, purportedly for review."  Doc. No. 1414 at 8.  Plaintiffs contend that they waited (until after Judge Conway indicated her willingness to suggest remand of the cases at the April 22, 2009 hearing) because they did not learn until "March and April 2009" that "it is AstraZeneca's interpretation . . . if a draft of a document was submitted to a lawyer for review, then the submitted document—and any transmitting (cover)

---

[5]Plaintiffs list as examples, they following types of documents listed on the privilege log:  "agendas"; "draft internal training materials"; "draft marketing materials"; "draft labeling"; "draft reports"; "marketing materials" ; "reports"; and slides.

document—is privileged in its entirety, whether or not the lawyer made any substantive comments or changes to the document, whether the document's original purpose or the lawyer's review is demonstrated to be "primarily legal," and/or whether subsequent versions of the document are produced." Doc. No. 1414 at 7. Plaintiffs also complain that numerous documents on AstraZeneca's privilege log were sent to "mixed audiences" for "mixed purposes," and Plaintiffs cannot discern from the privilege log entries that such documents are entitled to protection, and many "mixed audience" documents and communications listed on AstraZeneca's privilege log could not have involved a lawyer's "predominant" legal role.

AstraZeneca's statements are consistent with  the Court's rulings at the May 19, 2009 *ex parte* hearing.  At the May 19, 2008 *ex parte* hearing, Ms. Davies, who is deputy general counsel responsible for AstraZeneca's United States legal department of forty lawyers, testified at length at the hearing.  Doc. No. 1511 (sealed).  She testified that the general litigation section, specifically the products liability litigation section, is responsible for the Seroquel MDL.  Doc. No. 1511 at 5.  The Court questioned Ms. Davies at length concerning certain business documents, such as press releases.  The Court ruled that, to the extent that an attorney is looking at it "for a legal eye and not a business eye or editorial eye," that specific "legal eye" input would be protected.  Doc. No. 1511 at 6.  Reviewing the documents submitted for the *in camera* hearing, the Court "did not get the sense that as to most of [them] that the involvement of the other people – I'm sure some of them were, but not in general – were assisting her in doing her legal analysis. . . [T]he fact that it goes out to 16 people plus [Ms. Davies], those 16 people are having their own input, which is not legal. . . [T]hey've got whatever their involvement is, whatever their responsibility is.  And the fact that she gets a copy doesn't, to me, protect their involvement in the evolution of the draft."  Doc. No. 1511 at 13.  Typically, Ms. Davies testified, "legal was the final step before approval" of the question and

answer sales-representative documents and press statements that would eventually be "for public consumption."  Doc. No. 1511 at 15, 17.

AstraZeneca's counsel clarified, "[I]f the process leading up to the draft being ready to send to the lawyer resulted, let's say, in five or six drafts before that, that didn't involve any lawyers, that you're distinguishing those from the one that's actually communicated for legal advice," to which the Court responded counsel's application of the ruling was correct.  Doc. No. 1511 at 29.  As to Ms. Davies' work "it was much more clear to [the Court] that she was doing a lawyer's work and that things were coming to her" as she described at the hearing, which did not seem to be the case with the other privileged documents who were "down in the trenches with what I call the business people. Some of them are medical and some of them are wordsmiths . . . it just didn't look like they were getting the kind of consultation for legal advice that Ms. Davies was providing."  Doc. No. 1511 at 32-33.  AstraZeneca's "Summary of Principles" and application of the Summary is consistent with the Court's rulings at the *ex parte* hearing.

AstraZeneca moves to strike Plaintiffs' Motion to De-Designate (Doc. 1414) arguing Plaintiffs have raised the de-designation "nearly a year late without even attempting to show reasonable cause for the delay."  Following the filing of its Summary of Attorney-Client Privilege and Work-Product Principles ("the Summary") (Doc. No. 1034) last summer, on June 27, 2008, AstraZeneca reviewed more than 12,000 documents that had been produced with privilege or work-product redactions and reduced or removed redactions from 7,100 of the documents, reproducing them on July 15, 2008, and produced the revised privilege log ten days later on July 25, 2008.

AstraZeneca argues that Plaintiffs' calculations are incorrect as to the percentage of documents which remain on the privilege log – it is not 15% to 27% of the documents.  Instead, as

a result of AstraZeneca's reproduction, of the 18,900[6] documents originally withheld, 11,490 do not appear on the most current revised February 2, 2009 privilege log, which resulted in removal of approximately 60% of the documents on the original October 2007 log[7].  Doc. No. 1426 at 5 n.2.

According to AstraZeneca, during its re-review of the logged and redacted documents, AstraZeneca made clear that it applied the tests summarized in its Summary, and it applied the principals stated in the Court's May 7, 2008 Order, one of which provides that attorney-client privilege applies only where the purpose of the lawyer's review is "primarily legal."  Doc. No. 1426 at 6 n. 3.  AstraZeneca states that it also applied another ruling by the Court, from the *in camera* hearing, that "the lawyer's role was legal if she 'reviewed the draft with a legal eye as opposed to a business eye or editorial eye,'" even if the lawyer made only editorial changes or no changes at all, as "the lawyer's approval of a draft in its entirety or in large part still could arise from the lawyer's legal judgment," citing Doc. No. 1024 at 1 and Doc. No. 1511 at 22-24.

 At the June 24, 2008 status hearing, plaintiffs' counsel expressed concern that they did not know what rulings at the *ex parte* hearing the Court made to guide AstraZeneca in reviewing the privileged documents.  The Court directed AstraZeneca "write up what you think my guidance was in a way that doesn't reveal any of the things that were privileged, but lets them know what you thought I said and that was the basis for the review that's been ongoing, and you can share that with them." Doc. No. 1042 at 16, 17-18.  AstraZeneca's counsel explained that they had been applying the principles elucidated at the May 19, 2008 hearing, and had conducted a document by document review of the 27,000 documents on the privilege log – a very document-specific undertaking that

---

[6]AstraZeneca's counsel said at he June 24, 2008 status hearing that counsel had reviewed 27,000 documents on the log.  Doc. No. 1426 at 4.  AstraZeneca stated at oral argument on March 24, 2008 it had claimed privilege in the log for approximately 22,000 documents.  Doc. No. 908.

[7]Based on AstraZeneca's representations, the Court calculates that approximately 7,400 documents remain on the privilege log.  Plaintiffs contend that there remain 16,000 log entries.  Doc. No. 1414 at 3.

could not begin until the principles were clearly stated. Doc. No. 1042 at 18-19. On June 27, 2008, AstraZeneca filed AstraZeneca's "Summary of Attorney-Client Privilege and Work Product Principles Articulated by Magistrate Judge Baker at May 19, 2008 *Ex Parte* Hearing" (Doc. 1034), which set forth six sets of attorney-client and work product principles articulated by the Court at the *ex parte* hearing.

On August 28, 2008, the parties filed a Joint Motion to Continue the September 3, 2008 Status Conference, which reported that "the Parties have no issues to raise with the Court at this time." Doc. 1068. According to AstraZeneca, "For nearly eight months after receiving the July 25, 2008 privilege log, plaintiffs did not raise any specific questions regarding the [Summary of] Principles, the privilege log, or any of the several updated logs provided by AstraZeneca. During this time, AstraZeneca examined hundreds of thousands of documents and, applying the May 7, 2008 Order and the Principles, either logged or produced the documents." Doc. No. 1426.

Plaintiffs' Renewed Motion to De-designate was filed at literally the "eleventh hour" – two days after the hearing at which Chief Judge Conway discussed closing general fact discovery and suggesting remand of the nearly 6,000 cases to the transferor courts. *See* Doc. No. 1419 (May 1, 2009). In her follow-up order to the hearing, she ruled, "Given the fact that general discovery is complete, and additional case-specific discovery will be reserved for the transferor courts after remand, only a few matters remain to be resolved in this MDL before a suggestion of remand can be made." Doc. No. 1419.

Plaintiffs did not file their Motion to De-Designate until April 25, 2009, or until they learned of Judge Conway's intention to suggest remand. Given the efforts demonstrated by AstraZeneca to review their claims of privilege following the Court's rulings, Plaintiffs' Motion to De-Designate is untimely and appears related more to the timing of Judge Conway's suggestion of remand at the

-9-

April 22, 2009 hearing and less related to their concern over the actual entries on the privilege log provided ten months prior to the motion, in July 2008.

      **DONE** and **ORDERED** in Orlando, Florida on November 6, 2009.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record