**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

IN RE:  Seroquel Products Liability
Litigation

                              Case No. 6:06-md-1769-Orl-22DAB

_____

This Document Relates to ALL CASES

_____

**REPORT AND RECOMMENDATION NO. 9 BY**
**CASE-SPECIFIC DISCOVERY SPECIAL MASTER**

**I.  INTRODUCTION**

After the Court's Order on November 24, 2009 (Document 1586) identifying the Eleventh Circuit Trial Group Cases and directing that case-specific discovery be conducted in them, the PMO and the Special Master resumed the processes working with representative counsel for Plaintiffs and for the Defendants to obtain medical records from prescribing and treating physicians and to schedule depositions of physicians.  The PMO is following the procedures used previously for case-specific discovery in this MDL, including those set out in CS Administrative Order No. 5 entered on May 29, 2008 (Document 1006).

The PMO schedules depositions of prescribing physicians ("Prescribers") and treating physicians ("Treaters") after Plaintiffs and Defendants have identified to the PMO the physicians they wish to depose.  The PMO created an on-line secure web-based application for the Parties to use to inform the PMO of those selections.  Plaintiffs and Defendants make their designations independently, without seeing those physicians selected by the other side.  Certain physicians may be chosen only by one side.  In most cases, both Plaintiffs and Defendants designate one or

#369458                                            **EXHIBIT 1**

more of the same physicians for deposition.  A Prescriber or Treater selected by both Plaintiffs and Defendants creates an "Overlap" situation.

The PMO has to assign each Overlap to either Plaintiffs or Defendants, because:

(1) Under Case Management Order No. 5, each party is limited to a total of ten depositions.  An Overlap assigned to a party counts as one of that party's ten permitted depositions for that case.

(2) The party to whom a deposition is assigned is responsible for securing a court reporter and videographer, if necessary, for that deposition.

(3) The party to whom a deposition is assigned is entitled to question the deponent first at the deposition.

After the PMO allocates an Overlap to either Plaintiffs or Defendants, the Notice of Deposition issued by the PMO for that witness indicates which side's deposition it is considered to be.  The first two of the three consequences of allotting a deposition to one side or the other are important housekeeping matters, but the opportunity to question the witness initially is perceived by the Parties to be the most significant, because of its strategic value.

Each Party enters its physician elections on-line when they are ready to do so.  There are no deadlines currently applicable to their completion of this task.  Each side alerts the PMO and the other side when they have made choices in a particular case.  As a result, the designations come into the PMO at different times for different cases.  Though generally each Party makes the bulk of its deposition selections in one on-line session, at times a party enters some selections at one time and then others on a later date.

In the previous case-specific discovery stages of this litigation, the PMO allocated each Overlap to one side or the other as the Overlaps became apparent in the designations received from both Parties, alternating back and forth between Plaintiffs and Defendants from one Overlap to the next, within a case and from case to case, and without regard to whether the Overlap was a Prescriber or Treater, how many Overlaps were occurring in a particular case, or

whether the methodology resulted in a disproportionate assignment of one type of physician in a particular case. The PMO maintained a running account from case to case. As an Overlap arose in any case, it was assigned to the Party whose turn it was in the back and forth alternating process. The system was completely neutral and blind to any aspects of its outcome in a particular case or over time.

In the setting of depositions for the Eleventh Circuit Trial Group, the PMO resumed assigning Overlaps using the same methodology. This matter came under review when Plaintiffs questioned the relative allocation of physician depositions in a particular case where, because of the sequence in which the Parties had made their choices and the number of physicians designated by Defendants that were non-Overlaps, Defendants had been assigned a total of four physician depositions, all of which were Prescribers. This included two Prescribers whom Defendants alone had designated and thus were not Overlaps. Plaintiffs were primarily responsible for one physician deposition, that of a Treater, and neither of the two Prescriber Overlaps. All of Plaintiffs' physician designations had been Overlaps. This led to discussions among the Special Master, Plaintiffs and Defendants regarding the manner in which Overlap designations are to be allocated between the Parties.

## II.  RULING

The Special Master and the Parties considered three alternative methods for allocating Overlap depositions:

(1) Option 1: Continue the previous method, by alternating back and forth from Plaintiffs and Defendants as each Overlap arises, without regard to whether the Overlap is a Prescriber or Treater, and without regard to the number of physician designations made by either Party in a particular case. An Overlap is assigned to the Party to whom the previous Overlap was not assigned, from case to case, on a running basis over all cases.

(2) Option 2: Separate the Overlaps by physician type by tracking the Overlaps that are Prescribers and those that are Treaters. Alternate back and forth between Plaintiffs and Defendants within each physician type, so that an Overlap

3

>Prescriber is assigned to the side to whom the previous Overlap Prescriber was not assigned, and an Overlap Treater is assigned to the Party to whom the previous Overlap Treater was not assigned. Continue to keep a running account of the assignments over all cases, without regard to the number of designations made in a particular case.
>
>(3)  Option 3:  Separate the Overlaps by physician type by tracking the Overlaps that are Prescribers and those that are Treaters as in Option (2) and allocate the Overlaps by physician type Option (2), but rather than determine to whom the first Overlap in a case is assigned by looking at who received the last Overlap assignment made in a previous case, consider each case separately.  After receiving all physician designations from the Parties in a particular case, determine the Overlap Prescribers and Overlap Treaters.  Then assign the first Overlap of each physician type to the Party that had made fewer total physician designations in that particular case.

Defendants request that the PMO continue to use Option 1 as it did in the past, contending that over time the method will achieve substantial justice in allocating relatively equal numbers of Prescribers or Treaters to each side.  This option also is easy to administer, because it is indifferent to the type of physician or the number of deposition designations made by either side in a particular case.

Plaintiffs urge that a different methodology be adopted with a greater likelihood of achieving numerical equity by physician type in particular cases, as well as overall in all cases. Thus, Plaintiffs request that the PMO employ a system that is sensitive to the type of physician presenting the Overlap, as contemplated by both Option 2 and Option 3.  Plaintiffs prefer that the PMO adopt Option 3, arguing that because Defendants regularly designate a greater number of physicians for deposition in each case, Defendants should always go second on the allocation of Overlaps of each type within a particular case, in an effort to equalize the overall physician deposition numbers.  Defendants counter that they are forced to designate more physicians for deposition than Plaintiffs, because Plaintiffs are in a better position to talk with their current or former physicians informally to gather information without the need for a deposition.  Plaintiffs

are not entirely convinced by this argument, saying that often physicians decline to talk with them as well until forced to do so at a deposition.

The Overlap allocations methodology should be as neutral as possible. It should be designed to minimize the impact on the strategical decisions made by the Parties and be relatively simple and efficient in its administration. It should also work to promote parity between Defendants and Plaintiffs as to all Overlaps. A statistical analysis of the designations in the Eleventh Circuit Trial Group cases to date shows that Option 1 has yielded a 10 percent higher allocation of Overlap Physicians to Defendants.

While this imbalance may even out to be less significant over time after the assignments in all cases have been concluded, it is appropriate to modify the methodology to consider the type of physician presenting the Overlap so that the Overlap designations of each physician type have a greater likelihood of resulting in equal distribution. While we cannot achieve perfect equity in the division of all physician depositions, largely because Defendants find it necessary to depose more physicians than Plaintiffs do, we can adopt a rule to enhance the potential of dividing the Overlaps of each physician type evenly.

Thus, the PMO will use a method that tracks the Overlaps by physician type and will allocate the Overlaps alternating from Plaintiffs to Defendants within each physician type. Under this rule, if an Overlap Prescriber is awarded to Plaintiffs, the next overlap Prescriber will be assigned to Defendants, even if an Overlap Treater has arisen in the interim. The Overlap Treaters will be handled in the same manner, alternating back and forth between Plaintiffs and Defendants as Overlap Treaters arise. This method is inherent in both Option 2 and Option 3.

There remains only the question of how to determine to which side the first Overlap Prescriber or Overlap Treater in a case is assigned. Under Option 2, it would be assigned to the Party who did not receive the last Overlap physician of the same type in the previous case.

Under Option 3, it would be assigned to the Party who had made the fewer total physician deposition designations in that particular case. A statistical review of the depositions in the Eleventh Circuit Trial Group cases to date shows that Option 2 and Option 3 achieve almost identical outcomes in the allocation of Overlap Treaters and Prescribers, with Option 2 assigning one more Prescriber to Plaintiffs than given them under Option 3. Option 3 would be somewhat more difficult to administer and could delay the assignment of Overlaps in a particular case, for it would require the PMO to wait until both Parties have signaled that they have concluded all their physician designations in a particular case, for only then could the PMO determine the Party that had made the fewer designations and thus would be awarded the first Overlap of each physician type. While the Parties generally make all their deposition designations in one on-line session, at times supplemental designations are made on later dates as the Parties receive more medical records or circumstances require designation of physicians in lieu of prior designations. We should avoid any potential for delaying the Overlap assignments.

As a result, the PMO will apply Option 2 as the method for assigning Overlap Prescriber and Overlap Treater designations. Where a physician was both a Prescriber and Treater, for purposes of this rule, the physician will be treated as a Prescriber. If at any time the Parties feel that the application of the Option 2 rule has achieved inequitable results in a particular case or is not functioning fairly over all cases, they are to bring their concerns to the attention of the Special Master and this issue will be reviewed at that time.

*[signature]*
Orran L. Brown
Special Master for Case-Specific Discovery

DATED: March 9, 2010