United States District Court
Middle District of Florida
Orlando Division

**In Re: Seroquel Products Liability Litigation**

Case No. 6:06-md-1769-Orl-22DAB

_____

**This Document Relates to ALL CASES**

_____

**MEDIATOR'S STATUS REPORT**

**Date: April 2, 2010**

## I. Summary of Mediation Status

A. Following the submission of my January 26, 2010 Status Report, I forwarded to the parties a "MEDIATION PROTOCOL FOR MEDICAL RECORDS" which was intended to advance the mediation by having plaintiffs' counsel submit samples of their clients' medical records to AstraZeneca ("AZ") counsel so that AZ would be in a position to assess the overall strength of the thousands of claims involved in the mediation. I attach a copy of the protocol to this Status Report as Appendix I.

B. My judgment is that AZ will be prepared to engage in serial negotiations with all plaintiffs' firms once it has sufficient medical records to make an assessment of how it values the entire universe of claims.

C. Some plaintiffs' firms have been diligent in providing records while others have been slow to provide them. There may be something of a free rider problem here in that some firms may assume that negotiations will occur after other firms provide records and seek to avoid sending those records that they have previously collected in support of their own claims.

D. One complication is that there are approximately 3 ½ times as many cases in state court as in the Multidistrict Litigation, and some firms with few or no cases in the MDL have been slow to provide records.

E. The protocol does not require production of all records except from law firms with few cases. For firms with larger inventories, sampling is all that is required for now. As mediation discussions proceed, additional information and records will be necessary. For example, plaintiffs' firms can expect, as to plaintiffs for whom they are not providing complete medical records, to provide at least a fact sheet on each plaintiff.

F. Without a representative sample of the medical records, it is difficult to conceive how

either plaintiffs, AZ or I can truly value the claims of any particular firm.

G. Neither AZ nor I can evaluate the inventories of counsel who fail to comply with the Protocol or and do not offer an adequate sample of medical records. As to those firms that do comply with the Protocol, once AZ has had a chance to examine the records the parties will still need to negotiate criteria to determine what value claims may have.

G. The Court's encouragement of prompt submission of medical records by plaintiff firms that are in the MDL might help to get the medical records in more quickly. The reality is that discussions on the value of claims requires that AZ be able to make a realistic estimate of what the universe of claims actually is, and this requires an examination of medical records of MDL plaintiffs and non-MDL plaintiffs. If the Court were to direct the MDL law firms to promptly discuss with and provide to AZ medical records in the MDL cases within in a prescribed period of time (e.g., 30-45 days), this might also stimulate the production of medical records in the non-MDL cases.[1]

## II. State of Medical Records Production

A. I asked AZ counsel to provide me with a summary of the state of the medical records production as of the end of March 2010. The following represents that summary:

The deadline for production of records and information pursuant to the Mediation Protocol for Medical Records (the "Protocol") was March 8, 2010. To date, only 21 out of 46 firms[2] with

---

[1] If a firm has only a few MDL cases and many non-MDL cases, provision of medical records in only the MDL cases will not produce sufficient information to enable AZ to assess the value of that firm's portfolio.

[2] This number does not include two law firms who had serious settlement discussions with AZ before the mediation began. The 46 firms are those firms that AZ has identified as a "lead" firm. Many of the plaintiffs are represented by multiple law firms, and for counting purposes, for

cases in the MDL had provided medical records to AstraZeneca. Of those 21 firms, 13 have fully complied with the Protocol and 8 are not compliant. Moreover, out of the approximately 15,500 plaintiffs represented by these 46 firms,[3] AZ should have received records for approximately 3,100 plaintiffs (*i.e.*, 20% of the total plaintiffs). Instead, it has received records for only 1,124 plaintiffs[4] (*i.e.*, 7 % of the total Seroquel plaintiffs).

B. It seems preferable in this Status Report not to identify individual firms by name. It should suffice to say that some firms with large inventories have provided few medical records. To varying degrees these firms have complied with the Protocol. To the extent they have not followed the Protocol, some firms have been responsive to communications from AZ counsel pointing out any deficiencies in their production, and expressed that they are doing their best to comply.

C. I have pointed out to firms that have been slow or reluctant to provide medical records that provision of such records does not constitute any admission or concession that AZ's initial position during the New York mediation with respect to medical criteria that would disqualify claimants or diminish the value of claims is correct; nor does it indicate that AZ has settled upon any particular criteria for compensability. But, the provision of medical records is a first, necessary step toward negotiating with actual facts rather than speculation.

---

each plaintiff, AZ has designated a single "lead" firm based on information it has gleaned from the litigation and the mediation. The numbers of plaintiffs and firms identified in this memo are based on this procedure.

[3] This number does not include those plaintiffs represented by the two firms mentioned in footnote 1.

[4] Two firms account for more than 50% of the 1,126 plaintiffs for whom the Company has received records.

D. The firms with the fewest cases thus far have expressed the greatest willingness to provide medical records.

### III. Conclusion

If the plaintiff law firms produce the medical records pursuant to the protocol, serious efforts at settlement will commence without delay. Whether or not the plaintiffs' firms and AZ ultimately will be able to agree on how to value claims is unknown. The only certainties are that AZ has taken the reasonable position that neither it nor the plaintiffs can fairly discuss value without some reliable information as to what the medical records show, and I cannot offer an independent judgment on claim valuation without access to the same information. It is my hope that assistance that the Court can provide in encouraging compliance with the Protocol will move the mediation process forward.

RESPECTFULLY SUBMITTED,

**s/ Stephen A. Saltzburg**
Stephen A. Saltzburg
George Washington University Law School
2000 H Street, NW
Washington, D.C. 20052
Tel: 202.994.7089
Fax: 202.994.7143
E-Mail: ssaltz@law.gwu.edu

**Certificate of Service**

I certify that on this 2nd day of April 2010, I electronically filed the foregoing with the Clerk of the court by using the CM?ECF system. I futher certify that I have served an electronic copy of the forgoing on Plaintiff's Liaison Counsel, Larry Roth, Esquire, and on Defendant's Liaison Counsel, Chris Coutroulis.

**s/ Stephen A. Saltzburg**
Stephen A. Saltzburg
George Washington University Law School
2000 H Street, NW
Washington, D.C. 20052
Tel: 202.994.7089
Fax: 202.994.7143
E-Mail: ssaltz@law.gwu.edu

# Appendix I

January 29, 2010

## MEDIATOR'S MEMORANDUM

TO: ALL COUNSEL

FROM: STEPHEN SALTZBURG

RE: MEDIATION PROTOCOL FOR MEDICAL RECORDS

    To permit the mediation to proceed to further discussions between AZ and Plaintiffs' firms without undue delay, I ask Plaintiffs' counsel to submit medical records to Arthur Brown as explained below and within the time periods set forth below. My goal is to get settlement discussions moving as quickly as possible after medical records have been produced and analyzed by AZ. Once the records are produced, I intend to give AZ a reasonable, but fixed time to review them. I am asking both sides to proceed with reasonable speed.

Production of Medical Records

1.
  a. Each firm with more than 100 cases will provide medical records for 20% of its cases.
     i. The firm should provide medical records for the first 10% of plaintiffs who retained the firm; AND
     ii. The firm should provide medical records for the last 10% of plaintiffs who retained the firm.
     iii. <u>Example</u>: If Firm X has 1,000 plaintiffs in its inventory, it should provide records for the first 100 clients who retained it and the last 100 clients who retained the firm.
     iv. In the event that multiple firms have aligned for purposes of the court-ordered mediation, <u>each</u> firm within the aligned group is expected to provide medical records for 20% of its own cases according to the criteria described in I.A.1-2 above.
  b. Each firm with 20 or fewer cases will provide medical records for all plaintiffs who retained the firm.
  c. Each firm with 21-100 cases will provide medical records for 30% of plaintiffs who retained the firm but in no event less than 20 cases. The firm should provide records for the first 15%, or if records of only 20 plaintiffs are provided the first 10 plaintiffs who retained the firm; and records for the last 15%, or if records of only 20 plaintiffs are provided, the last 10 plaintiffs who retained the firm.

d. For the medical records to be useful in promoting a discussion about the value of cases, it is important that each firm produce *all* medical records currently in its possession for each plaintiff for which it is required to produce records. The records will be reviewed by AZ in order to, at a minimum, (1) confirm that the plaintiff used Seroquel; (2) confirm the dates on which plaintiff used Seroquel; (3) confirm that plaintiff has been diagnosed with his or her claimed injury; (4) confirm the extent of plaintiff's alleged injury; (5) provide information relating to plaintiff's pre-Seroquel medical history (including, but not limited to, any pre-existing diabetic conditions or diabetes risk factors); and (6) provide other information relevant to plaintiff's claim, including weight fluctuations before, during and after Seroquel use and other SGA use. The records will also enable firms to highlight portions that they believe are important.

e. The time frame for providing the medical records is the following:

    i. Records for (a) the first 10% of plaintiffs represented by a firm with more than 100 cases (*i.e.*, those firms identified in §I.A), (b) half the plaintiffs represented by firms with 20 or fewer cases (*i.e.*, those firms identified in §I.B), and (c) the first 10 plaintiffs or the first 15% of the plaintiffs represented by firms with 21-100 cases (*i.e.*, those firms identified in §I.C) should be delivered to Arthur Brown by February 15, 2010, but if additional time is needed, no later than February 23, 2010.

    ii. Records for the last 10% of plaintiffs represented by a firm with more than 100 cases (*i.e.*, those firms identified according to §I.A), the last half of the plaintiffs represented by firms with 20 or fewer cases (*i.e.*, those firms identified in §I.B), and the last 10 plaintiffs or the last 15% of plaintiffs represented by firms with 21-100 cases (*i.e.*, firms identified in §I.C), should be delivered to Arthur Brown by March 1, 2010, but if additional time is needed, no later than March 8, 2010.

    iii. The production of records should be accompanied by a list of those plaintiffs for whom records would have been provided pursuant to this protocol but are not in the possession of the firm.

II. Information Sheets

As both an alternative to production of medical records for all plaintiffs and a method to enable the parties to engage in a full discussion of the portfolio of cases of each firm, it seems very productive to have an Information Sheet provided for each plaintiff. The Information Sheet is relatively simple and is set forth in a separate Excel file. To avoid delay in the mediation, I ask that you complete the Inventory Sheet for each plaintiff in the Excel file and e-mail it as an Excel file to Arthur Brown (ABrown@kayescholer.com) by March 1, 2010.