UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**IN RE: Seroquel Products Liability Litigation**

**MDL DOCKET NO. 1769**

**This Document Relates to All Cases**

_____

**ASTRAZENECA'S RESPONSE TO PLAINTIFFS' NOTICE
REGARDING THE MEDIATOR'S STATUS REPORT OF APRIL 2, 2010**

On April 2, 2010, the court-appointed Mediator in this matter, Professor Stephen Saltzburg, submitted a Report (Doc. 1617) advising the Court of the disappointing status of plaintiffs' counsel's voluntary production of medical records in a specified sample of cases. The production was to occur pursuant to a Protocol the Mediator had implemented as a means of advancing the mediation process.[1] Professor Saltzburg indicated, among other things, that the failure on the part of many firms to comply with the Protocol had effectively hamstrung both AstraZeneca and himself in evaluating the inventories of cases held by particular plaintiffs' counsel. Professor Saltzburg stated that, "the provision of medical records is a first, necessary step toward negotiating with actual facts, rather than speculation," and expressed his "hope that assistance that the Court can provide in encouraging compliance with the Protocol will move the mediation process forward."

On April 5, 2010, Plaintiffs submitted a Notice in Response to Professor's Saltzburg's Report (Doc. 1618). In that Response, Plaintiffs take the position that, rather than the Court assisting its appointed Mediator in furthering compliance with the Protocol, the Court should simply do nothing. As Plaintiffs see it, their provision of Plaintiff Fact Sheets (PFS) and medical

---

[1] The Protocol also sought some basic individual case information from plaintiffs, including when Seroquel was prescribed and when any diagnosis of diabetes occurred.

record authorizations was enough, and the burden of actually obtaining necessary medical records, even for the purpose of advancing mediation, should be on AstraZeneca rather than on Plaintiffs' counsel.  Plaintiffs' counsel advance this argument despite the fact that when they decided to file these thousands of cases, they had a pre-filing obligation to confirm that each case had the requisite evidentiary support that the applicable rules and professional obligations require, and they are the parties seeking a substantial monetary settlement payment.  *See In re Digitek Prods. Liab. Litig.*, No. 2:08-md-1968, slip op. (S.D. W. Va. Aug. 26, 2009) (attached as Exhibit A) (filing of pharmaceutical personal-injury lawsuits without first obtaining and reviewing "medical and pharmacy records" as part of the required "pre-filing investigation" is generally unreasonable).  Indeed, the signing of an authorization for medical records does not relieve a plaintiff's counsel of its obligation to document the evidentiary basis for its lawsuit before filing.

Plaintiffs' position is meritless.  In the first place, a PFS is not a medical record and cannot substitute for the sampling of medical records called for by the Mediator's Protocol.  Experience in these cases has shown that many PFS's have proven to be so inaccurate that they are unreliable even as to the basic facts they are intended to present.  Moreover, despite the fact that under CMO 2 and the PFS requirement contained therein, Plaintiffs were required to produce all medical records in their possession as well as any that came into their possession at a later time, in the vast majority of cases in this MDL, no medical records whatsoever have ever been produced.  Specifically, of the 6,190 current plaintiffs in the MDL who provided PFS's, 3,878 of them (63%) have not provided any medical records at all.  These observations are consistent with what has occurred overall in the litigation across the jurisdictions where PFS's have been required (the MDL, New Jersey, and Delaware).  In total, across those jurisdictions,

there are 10,114 active plaintiffs and 7,429 (73%) of them have not provided any medical records.

The absence of medical records poses a significant problem since it hardly can be assumed that any individual case has potential merit in light of the Seroquel litigation history. The fact is, no Seroquel plaintiff to date has been able to convince any judge or jury in any jurisdiction that his or her claims have merit.[2] Given these repeated results across plaintiffs' self-described best cases and in a variety of jurisdictions, coupled with the failure of plaintiffs to provide medical record support for the overwhelming majority of cases, AstraZeneca believes that an alarmingly large percentage of the remaining cases were filed without review of plaintiffs' medical records and without the sort of pre-filing investigation that should have been undertaken. Thus, without compliance with the Mediator's Protocol as a first step, it is difficult to see how settlement could be achieved given that it is simply impossible for AstraZeneca to assess which individual cases have potential merit and therefore warrant meaningful settlement consideration. In these circumstances, plaintiffs' position in their Notice – that they should not be burdened with production of medical records, even those in their possession -- is especially troubling.

Plaintiffs' reference to a statement made four years ago by AstraZeneca's counsel is a red herring. The statement was made in connection with sharing certain costs relating to detailed case workup post-filing. The statement is irrelevant to plaintiffs' obligation prior to filing suit to investigate whether an evidentiary basis for the suit existed. Tellingly, Plaintiffs never even raised this argument when the Mediator implemented his protocol or in the ensuing months. In

---

[2] Most of the cases included in any court's bellwether trial-pool program have been voluntarily dismissed by plaintiffs' counsel, but only after AstraZeneca was forced to spend millions of dollars exposing the cases as meritless. Likewise, plaintiffs' specific medical causation experts have been uniformly stricken by courts under *Daubert,* thereby leading to summary judgments for AstraZeneca. In the only case to be tried, the New Jersey jury found for AstraZeneca, determining that its warning was not inadequate.

3

any event, at this point, all the Mediator's Protocol requires insofar as medical records are concerned is production of records plaintiffs <u>already have in hand</u>. There is no reason why plaintiffs firms should not be required to produce the records they presumably and ought to possess, and which are called for by the Protocol, especially now -- so many years into this litigation. As Professor Saltzburg has indicated, non-compliance with the Protocol cannot possibly be expected to lead to a successful mediation. For plaintiffs to take the position, as they apparently do, that even in the mediation context, they should not have to do the most basic work to assess their inventory of cases, and that the burden should fall on AstraZeneca, is really quite remarkable.

AstraZeneca concurs with what Mediator Saltzburg has requested with respect to plaintiffs' firms full compliance with the Mediator's Protocol.

Dated: <u>April 7, 2010</u>

Respectfully submitted,

*/s/ Chris S. Coutroulis*
Chris S. Coutroulis
Fla. Bar No. 300705
Robert L. Ciotti
Fla. Bar No. 333141
**CARLTON FIELDS, P.A.**
Corporate Center Three at International Plaza
4221 W. Boy Scout Blvd.
Tampa, FL  22607
Telephone: (813) 223-7000
Facsimile: (813) 229-4133
ccoutroulis@carltonfields.com
rciotti@carltonfields.com
*Counsel for AstraZeneca LP and*
*AstraZeneca Pharmaceuticals LP*

4

## **CERTIFICATE OF SERVICE**

I hereby certify that, on April 7, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system through which all participating parties are deemed served. I further certify that, by using the CM/ECF, the foregoing has been served on plaintiffs' liaison counsel, who is charged with serving any non-CM/ECF participants on the attached Service List.

/s/ Robert L. Ciotti
Robert L. Ciotti