UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**IN RE DIGITEK ®**
    **PRODUCT LIABILITY LITIGATION**           **MDL NO. 1968**

─────────────────────────────────

**THIS DOCUMENT RELATES TO ALL CASES**

**PRETRIAL ORDER # 39**
**(Rule 11 Discovery)**

      Pending before the court is the defendants' Rule 36(a)(6) Motion to Determine Sufficiency of Plaintiffs' Master Objections to Defendants' First Requests for Admission to Various Plaintiffs. (Docket # 157.) The plaintiffs have responded in opposition (# 176), and the defendants have filed their reply (# 184).

BACKGROUND

      In April 2008, the United States Food and Drug Administration announced a recall of all lots of the drug Digitek® (Digoxin) distributed by Mylan Bertek Pharmaceuticals, Inc. and UDL Laboratories, Inc. The recall stated that the tablets may have contained as much as twice the approved level of the drug's active ingredient, thereby exposing patients with renal failure who consumed the drug to the risk of digitalis toxicity. (Master Compl., # 73, ¶ 38.) Soon thereafter, the plaintiffs filed civil actions against the defendants in state and federal courts across the country. In August 2008, the Judicial Panel on Multidistrict Litigation entered an order establishing a multidistrict litigation ("MDL") proceeding in this District which consolidated federal Digitek® related actions for joint case management. The plaintiffs generally allege that the defendants

manufactured, marketed, tested, promoted, and/or distributed Digitek® with inconsistent amounts of the active ingredient. Id. at ¶¶ 51-53.

During the course of discovery, the defendants served three requests for admission in thirty-nine individual cases pursuant to Rule 36 of the Federal Rules of Civil Procedure. The requests target Rule 11 information relating to whether the plaintiff in each identified case had sufficient evidentiary support to justify filing a claim. The requests at issue state:

> **REQUEST FOR ADMISSION NO. 1:** Admit that you did not serve Defendants with any of Plaintiff's medical records when you served the Plaintiff Fact Sheet.
> **REQUEST FOR ADMISSION NO. 2:** Admit that you did not have any of Plaintiff's medical records or pharmacy records in your possession when you filed the Complaint in this case.
> **REQUEST FOR ADMISSION NO. 3:** Admit that you did not have Plaintiff's medical records or pharmacy records in your possession when you served Defendants with the Plaintiff Fact Sheet on XX/XX/2009.

(# 154, p. 1.) After the various plaintiffs were served with the requests, the Plaintiffs' Steering Committee submitted the plaintiffs' master objections to the defendants' requests. Id. Subsequently, the defendants filed the pending motion pursuant to Rule 36(a)(6) to determine the sufficiency of those objections.

POSITIONS OF THE PARTIES

The plaintiffs contend that the defendants' requests for admission are improper under both the Court's previously entered pretrial orders and the Federal Rules of Civil Procedure. With respect to the Court's previously entered orders, the plaintiffs primarily rely on Pretrial Order ("PTO") #16. They contend that PTO #16 renders the requests improper for three reasons. First, the plaintiffs argue that the requests are untimely under PTO #16. They assert that before the parties may begin discovery on an individual case, that case must be selected for inclusion in a trial group. Id. at 1-2.

2

Second, they allege that the defendants are attempting to cure deficient Plaintiff Fact Sheets with the requests, and that under PTO #16, disputes over Plaintiff Fact Sheets must be cured through the deficiency process outlined in that Order. (# 176, p. 6.) Third, they claim that since the Plaintiff Fact Sheets constitute discovery responses under PTO #16, the defendants cannot pursue sanctions under Rule 11. Id. at 5.

The plaintiffs also argue that the requests for admission are improper under the Federal Rules of Civil Procedure. Foremost, they contend that the requests violate the policy against engaging in satellite litigation on Rule 11 issues. Id. at 3-5. In addition, the plaintiffs assert that the requests are prohibited under Rule 36 because they are not reasonably calculated to lead to the discovery of admissible evidence. (# 154, p. 2.) Finally, they argue that the targeted information is protected by the attorney-client privilege and/or the work product doctrine. Id. at 3. Thus, the plaintiffs urge the Court to sustain their objections to the requests.

The defendants insist that the requests for admission are not improper and ask the Court to require the plaintiffs in the identified cases to serve answers. (# 157, p. 6.) They contend that nothing contained in PTO #16 prevents them from serving requests for admission on individual plaintiffs and that the requests are not an attempt to cure deficient Plaintiff Fact Sheets. Id. at 2. Moreover, they maintain that the information targeted in the requests is relevant to their defense and is not protected by the attorney-client privilege or the work product doctrine. Id. at 5-6. Lastly, the defendants argue that the Federal Rules do not prohibit a party from engaging in discovery to determine whether another party committed sanctionable conduct. (#184, p. 5.) Consequently, they ask the Court to deem the plaintiffs' objections insufficient.

DISCUSSION

The defendants have expressed serious concerns about the merits of many of the cases filed thus far. They believe that a large number of cases lack sufficient evidentiary support demonstrating that the identified plaintiffs exhibited digitalis toxicity as a result of ingesting nonconforming Digitek® tablets. The defendants are attempting to determine whether the plaintiffs served with the requests possessed their medical and pharmacy records at the time their complaints were filed and the Plaintiff Fact Sheets were submitted. The defendants suspect they were not. If their suspicions prove true, the answers to the requests may be used to support future Rule 11 motions for sanctions.

Based upon the parties' arguments, four issues are raised. First, the Court must determine whether previously entered pretrial orders in this litigation prevent the defendants from serving the requests. Next, if the requests are not prohibited by those orders, the Court must then address whether the information is outside the scope of discoverable material under Rule 36. If the Court concludes that the targeted information is discoverable, the Court must decide whether the information sought in the requests is protected by the attorney-client privilege and/or the work product doctrine. Finally, if the information is not subject to privilege or protection, it must determine the extent to which discovery is permissible on Rule 11 issues.

A. *The Defendants' Requests for Admission Are Not Prohibited By Previously Entered Pretrial Orders.*

The parties dispute whether previously entered pretrial orders prevent the defendants from serving discovery requests on individual cases at this time. Both sides point to PTO #16 in support of their positions. The plaintiffs' primary argument is that the requests are untimely under Section VII of the order. Section VII(D) generally provides a mechanism for dividing cases into trial groups.

In addition, Section VII(E) sets out a schedule designating when discovery may be initiated for each trial group. The plaintiffs argue that the defendants may not engage in discovery relating to an individual case until that plaintiff is selected for a trial group and the discovery initiation date for that group is triggered. Thus, they believe that the requests are premature.

The defendants insist that nothing in PTO #16 precludes them from submitting requests for admission on an individual plaintiff at any time during the litigation. They argue that the plaintiffs have failed to identify any provision contained in PTO #16 that states otherwise. Additionally, the defendants point to Section I(D) which states that the defendants do not have to provide answers to Short-Form Complaints. They assert that the last sentence of Section I(D) allows them to engage in discovery to prepare for a motion. That sentence states: "[Section I(D)] does not preclude the filing of Rule 12 motions or any other motion in any particular case at other times, as appropriate." (PTO # 16, p. 3.) The defendants claim that the plaintiffs' answers will enable them to file summary judgment and/or Rule 11 motions for sanctions.

The defendants are correct that PTO #16 does not contain any language preventing them from serving discovery requests on individual plaintiffs. Even though PTO #16 does contain some provisions relating to discovery, the order's main purpose is to set a schedule for claim resolution. Moreover, both the plaintiffs and the defendants fail to cite an applicable provision in PTO #22. PTO #22 addresses the conduct of discovery. Section R of PTO #22 provides that:

> With regard to other forms of discovery, including Interrogatories, Requests to Produce Documents, Requests to Admit and Right to Entry and Inspection, nothing contained herein shall limit or abridge the parties' rights or prerogatives under previously entered orders of this Court, the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

5

(PTO # 22, p. 13.) Thus, PTO #22 expressly permits the parties to serve discovery requests outside the discovery periods for trial groups set forth in PTO #16. The plaintiffs contended in oral argument that Section R of PTO #22 is inapplicable because PTO #16 reflects an understanding that discovery may not be initiated on individual cases or plaintiffs not in the first trial group. They argue that permitting such discovery violates the purpose behind joint case management. The Court is not persuaded by the plaintiffs' argument. Section R of PTO #22 does not draw the distinction or contain the limitations the plaintiffs propose. Thus, the provisions and stipulations contained in previously entered pretrial orders do not prohibit the defendants from serving requests for admission on individual plaintiffs at this time.

The plaintiffs also assert two arguments that the defendants' first and third requests concerning Plaintiff Fact Sheets are improper due to provisions contained in PTO #16. First, they claim that the defendants have failed to follow the process for curing a deficient Plaintiff Fact Sheet as outlined in PTO #16. They argue that the defendants are attempting to cure Plaintiff Fact Sheets through the requests for admission. To the contrary, the defendants are not seeking information that must be contained in a Plaintiff Fact Sheet. Rather, they are seeking Rule 11 information relating to whether the plaintiffs had a sufficient evidentiary basis to file suit. The requests specifically target information concerning whether the thirty-nine plaintiffs possessed their medical and pharmacy records at particular times. This information is outside the scope required to be disclosed in a Plaintiff Fact Sheet. The deficiency process described in PTO #16 has no application in determining whether the defendants' requests for admission are proper.

The second argument that plaintiffs make is that the defendants may not seek sanctions under Rule 11 because the Plaintiff Fact Sheets constitute discovery responses under PTO #16. Rule 11(d)

6

states that the Rule "does not apply to disclosures and discovery requests, responses, objections, and motions under Rules 26 through 37." The plaintiffs are correct that Plaintiff Fact Sheets are considered discovery responses according to the order. Their argument is premature, however, because the defendants have not yet filed a Rule 11 motion for sanctions. Even so, the plaintiffs again miss the point of the defendants' requests. The defendants are not attempting to discover whether the plaintiffs committed sanctionable conduct in their Plaintiff Fact Sheets. Instead, they are trying to gather information as to whether there were appropriate Rule 11 prefiling investigations. Again, the requests target information outside the scope of the Plaintiff Fact Sheets, and Rule 11(d) would not apply. Therefore, the Court finds that previously entered pretrial orders in this case do not prohibit the defendants from submitting discovery requests on individual cases at this time.

      B.     *The Information Targeted by the Defendants' Requests Is Relevant to Their Defense and Is Therefore within the Scope of Discoverable Material.*

The plaintiffs also maintain that the requests are improper under Rule 36. The Rule states that a party may serve upon another party a request to admit the "truth of any matter within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents." Fed. R. Civ. P. 36. Rule 26(b)(1) specifies that the scope of discovery includes:

> Any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1). The plaintiffs contend that the requests are not reasonably calculated to lead to the discovery of admissible evidence because the specific facts and considerations factoring into the decision to file suit do not relate to issues of liability and damages. Thus, they claim that the targeted information is outside the scope of discoverable material and therefore the Federal Rules do not require them to submit answers.

The court finds that the requests are specifically aimed at discovering information relevant to the defendants' defense. If the plaintiffs in the thirty-nine identified cases in fact failed to comply with Rule 11, serious issues arise as to the merits of those plaintiffs' claims. The defendants would be able to use the information gathered from the requests to support a defense that the claims lack evidentiary basis. Thus, the information sought by the defendants is within the scope of discoverable material under Rule 26(b)(1). The defendants' requests for admission therefore comply with Rule 36.

    C.    *The Defendants' Requests Do Not Seek Information Protected By the Attorney-Client Privilege or the Work Product Doctrine.*

The plaintiffs further contend that even if the requests target discoverable subject matter, the information sought by the defendants is protected by the attorney-client privilege and/or the work product doctrine. They argue that the information is privileged because the requests are directed to an attorney rather than a party. Rule 36(a) provides that a request for admission be directed to a "party." The three requests appear to be directed to certain named plaintiffs although the Court has not been provided with the requests as served. That is, the Court has no information as to whether the word "you" was defined to include each plaintiff's attorney. In the absence of that information, the Court assumes that the requests were directed at specific plaintiffs.

8

The Court acknowledges that information relating to Rule 11 may raise potential privilege and conflict issues. However, if the information received by an attorney from a client is relevant to whether a complaint is well-founded, it probably will eventually be disclosed, either in a pleading or in later discovery. Schwarzer, Sanctions Under the New Federal Rule 11--A Closer Look, 104 F.R.D. 181, 199 (1985). Thus, the fact that information may be incorporated into work product does not immunize it from disclosure. Id. An attorney's assertion of privilege over Rule 11 information should therefore be viewed with skepticism. Id. Otherwise, Rule 11 would be rendered meaningless and parties would be precluded from discovering facts to support motions for sanctions.

Here, the plaintiffs have failed to meet their burden of demonstrating that the information targeted by the requests is protected by the attorney-client privilege and/or the work product doctrine. The party asserting privilege bears the burden of showing its applicability. In re Grand Jury Subpoena: Under Seal, 415 F.3d 333, 338-39 (4th Cir. 2005). Rule 26(b)(5) provides a mechanism for a party asserting privilege to meet the burden. Under the Rule, the party must expressly claim that the information is privileged and submit a privilege log describing the nature of the information. Fed. R. Civ. P. 26(b)(5). The plaintiffs have failed to produce such a privilege log. They also have failed to proffer any reason as to why the privileges might apply. Thus, the plaintiffs have failed to satisfy their burden. The information targeted by the requests does not appear to implicate either the attorney- client privilege or the work product doctrine.

D.  *The Circumstances of This Case Warrant Limited Discovery on Rule 11 Issues.*

Although the requests are permissible under the previously entered pretrial orders and the Federal Rules, the Court must determine the extent to which discovery on Rule 11 issues is proper. The defendants appear to believe that the plaintiffs served with the requests lacked sufficient

9

evidentiary support to file a claim. They contend the requests are designed to identify the cases where it is apparent counsel failed to conduct an appropriate prefiling investigation. Thus, the defendants' requests are narrow, concise and specifically target information relating to Rule 11 issues.

One of the central purposes of Rule 11 is to "deter baseless filing in district court and thus…streamline the administration and procedure of the federal courts." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990). Under Rule 11, an attorney who files a signed pleading "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that "the claims, defenses, and other legal contentions are warranted by existing law or by nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," and that "the factual contentions have evidentiary support, or if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(2)-(3). Thus, the function of Rule 11 is to demonstrate to the individual signer his personal, nondelegable responsibility. Pavelic & LeFlore v. Marvel Entm't Group, 493 U.S. 120, 126 (1989); In re Kunstler, 914 F.2d 505, 514 (4th Cir. 1990).

Attorneys have an obligation to comply with Rule 11(b)(3) when initiating an action. The Fourth Circuit has held that Rule 11 requires an attorney to conduct a "reasonable investigation of the factual and legal basis for his claim before filing." Brubaker v. City of Richmond, 943 F.2d 1363, 1373 (4th Cir. 1991) (citing Cleveland Demolition Co. v. Azcon Scrap Corp., 827 F.2d. 984, 987 (4th Cir. 1987)). That investigation must be objectively reasonable. Kunstler, 914 F.2d at 518. To be reasonable, the prefiling investigation must uncover some information to support the

allegations in the complaint. Brubaker, 943 F.2d at 1373. A complaint containing allegations unsupported by *any* information obtained prior to filing violates the requirement of conducting a reasonable prefiling factual investigation. Kunstler, 914 F.2d at 516. Likewise, blind reliance on the client is seldom a sufficient inquiry. Id. at 514.

While it is clear that an attorney must conduct an appropriate prefiling investigation before pleading a claim, the defendants' requests raise the issue of whether parties may engage in discovery to determine whether sanctionable conduct occurred. Whether a court may allow discovery on Rule 11 matters is an area of the law without much precedent. The 1983 Advisory Committee Notes to Rule 11 shed some light on the subject. The Notes provide:

> To assure that the efficiencies achieved through more effective operation of the pleading regimen will not be offset by the cost of satellite litigation over the imposition of sanctions, the court must to the extent possible limit the scope of sanction proceedings to the record. Thus, discovery should be conducted only by leave of the court, and then only in extraordinary circumstances.

Fed. R. Civ. P. 11, Advisory Committee Notes. The few courts that have confronted the issue have echoed the concerns expressed by the Advisory Committee. However, those courts decided the issue only after Rule 11 motions were filed. The Court is unaware of any analogous precedent addressing whether parties may engage in discovery to determine whether a party committed sanctionable conduct. The Court notes that in Byrne v. Nezhat, 261 F.3d 1075, 1116 n.82 (11th Cir. 2001), the Eleventh Circuit found that "the district court did not abuse its discretion in directing Rule 11 discovery at the outset of the case, particularly since the court envisioned that discovery would be completed in forty-five days."

The leading case on Rule 11 discovery was decided by the United States Court of Appeals for the Seventh Circuit. In Indianapolis Colts v. Mayor & City Council of Baltimore, 775 F.2d 177,

11

183 (7th Cir. 1985), the court upheld the district court's ruling prohibiting discovery for the purpose of imposing Rule 11 sanctions. Out of a concern that discovery on Rule 11 issues may invite protracted satellite litigation, it held that the record in the case afforded the district court an adequate basis for determining what sanctions, if any, were necessary. Id. The Fourth Circuit has expressed similar concerns about preventing satellite litigation over Rule 11 sanctions. In Kunstler, 914 F.2d at 521, the court stated that to the extent possible the scope of sanction proceedings should be limited to the record. The court in Indianapolis Colts cited to the Advisory Committee Notes that discovery on Rule 11 issues should be conducted only in "extraordinary circumstances." Indianapolis Colts, 775 F.2d at 183. District courts confronting the issue have similarly expressed the view that limited discovery on a Rule 11 sanctions request is appropriate only upon a showing of extraordinary circumstances. See generally Lenior v. Tannehill, 660 F. Supp. 42, 44 (S.D. Miss. 1986); Sosland Publishing Co. v. Mulholland, No. 87 CIV. 8432 (MBM), 1988 WL 87335, at *1 (S.D.N.Y. Aug. 17, 1988); Hall v. Forest River, Inc., No. 3:04-CV-259 RM, 2007 WL 2349620, at *1 (N.D. Ind. Aug. 15, 2007); Fairchild Semiconductor Corp. v. Third Dimension Semiconductor, Inc., Civil No. 08-158-P-H, 2009 WL 536917, at **2-5 (D. Me. Feb. 25, 2009). While it is unclear from these cases exactly what type of discovery was sought, it appears that the concern about protracted satellite litigation arises in primarily two contexts: (1) where the defendant attempts to use Rule 11 to assert an independent cause of action in a counterclaim; and (2) where the parties attempt to engage in discovery evaluating attorneys' fees.

    A showing of extraordinary circumstances is clearly a high burden to satisfy. Nevertheless, a number of factors in this matter justify allowing discovery to proceed. First, the defendants have voiced serious concerns about whether certain counsel had sufficient evidentiary support to justify

12

initiating suit. Based upon the allegations contained in the complaints, a prefiling investigation without first obtaining medical and pharmacy records would be reasonable only in an extremely limited set of circumstances. The records would be essential in determining whether the plaintiffs have a colorable claim. "A lawyer is an officer of the court, and he should never file a lawsuit without confidence that it has a reasonable basis in fact." Kunstler, 914 F.2d at 516. The attorneys in this case are experienced and have the time and the means to conduct a responsible prefiling factual investigation. If plaintiffs in fact failed to possess the records prior to initiating suit, the defendants may have grounds to serve a motion for sanctions using Rule 11's "safe harbor" provision.

Rule 11 applies to the same extent in mass tort and multidistrict litigation as it does in more conventional disputes. See In re Taxable Mun. Bond Securities Litigation, Civ. A. No. MDL-863, 1994 WL 599762, at **4-5 (E.D.La. Oct. 31, 1994) (imposing Rule 11 sanctions on plaintiffs' counsel for failing to conduct an adequate prefiling investigation in multidistrict litigation); In re Welding Fume Products Liability Litigation, No. 1:03-CV-17000, MDL No. 1535, 2006 WL 1173960, at *3 (N.D.Ohio April 5, 2006) (applying Rule 11's mandatory safe harbor provision in multi-district litigation where the defendants asserted that certain plaintiffs' counsel lacked a factual basis to file claim under Rule 11(b)(3)). Indeed the Court has an interest in ensuring the effective operation of the pleading regime through Rule 11, particularly in the MDL context. When abuses occur, judges "should act sternly and expeditiously to root them out, stop lawyer misconduct and set a deterrent." In re New Motor Vehicles Antitrust Litigation, 244 F.R.D. 70, 74 (D. Me. 2007). Requiring the plaintiffs to answer the requests now promotes the goals of resolving disputes

13

efficiently and curbing potentially abusive practices. Waiting until later stages of the litigation to determine whether sanctionable conduct occurred in some cases increases costs and results in delays.

The court finds that limited discovery of the nature proposed by the defendants is necessary because the current record does not contain any information as to whether sanctionable conduct took place. While the Advisory Committee Notes and <u>Indianapolis Colts</u> suggest that sanction proceedings should be limited to the record, they do not suggest that a court is prohibited from developing a record to determine whether sanctionable conduct occurred. By allowing the parties to engage in limited discovery, some record will be created.

The defendants' requests for admission are sufficiently and narrowly tailored to reveal whether the plaintiffs were in possession of the relevant records at the time suit was initiated. The requests will not cause the plaintiffs any undue burden or hardship as the information necessary to answer the requests should be readily ascertainable. The requests are concise, simple, and straight forward; it is not likely the discovery requests will result in protracted satellite litigation. The requests are the most efficient method of developing a record. With the answers, the defendants should be able to determine if further sanction or summary judgment motions are appropriate.

For these reasons, the Court finds that limited discovery is appropriate to determine whether the plaintiffs served with the requests possessed relevant medical and pharmacy records prior to filing their complaints and serving their Plaintiff Fact Sheets. The defendants should have the opportunity to develop a record on the issue. The requests are the proper vehicle to develop this record. Therefore, the plaintiffs must serve answers to the defendants' requests.

CONCLUSION

The Court **FINDS** that the plaintiffs' objections to the defendants' First Requests for Admission to various plaintiffs are insufficient. It is hereby **ORDERED** that the plaintiffs shall serve answers within twenty (20) days of entry of this Order.

The Clerk is directed to file this Order in 2:08-md-1968 which shall apply to each member Digitek®-related case previously transferred to, removed to, or filed in this district, which includes counsel in all member cases up to and including civil action number 2:09-cv-00951. In cases subsequently filed in this district, a copy of the most recent pretrial order will be provided by the Clerk to counsel appearing in each new action at the time of filing of the complaint. In cases subsequently removed or transferred to this court, a copy of the most recent pretrial order will be provided by the Clerk to counsel appearing in each new action upon removal or transfer. It shall be the responsibility of the parties to review and abide by all pretrial orders previously entered by the court. The orders may be accessed through the CM/ECF system or the court's website at www.wvsd.uscourts.gov.

ENTER: August 26, 2009

_Mary E. Stanley_
Mary E. Stanley
United States Magistrate Judge

15