UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE:  Seroquel Products Liability
Litigation

Case No. 6:06-md-1769-Orl-22DAB

This Document Relates to ALL CASES

REPORT AND RECOMMENDATION NO. 10 BY
CASE-SPECIFIC DISCOVERY SPECIAL MASTER

I.  INTRODUCTION

A.   General Background on the Group 1 and Group 2 Cases.

On November 23, 2009, the Court entered an Order (Document 1586) designating thirty-eight cases for trial and directing the Parties to employ the services of the Special Master and the Project Management Office to supervise and coordinate case-specific discovery in those suits. On December 16, 2009, the Court entered Case Management and Scheduling Orders setting a discovery completion deadline of May 3, 2010 for the 15 cases in Group 1, while discovery on the 23 cases in Group 2 must be concluded by August 2, 2010.  On February 3, 2010, the Court entered an Order (Document 1606) returning 19 cases to the Eleventh Circuit Trial Group and by separate Order of February 3, 2010, the Court placed these cases in Group 2 subject to the August 2, 2010 discovery deadline for these cases.  After dismissals of certain suits, seven active cases remain in Group 1, while 24 active cases are in Group 2.

B.   The *D'Angelo* Suit.

The suit by plaintiff Steven D'Angelo is one of the remaining Group 1 cases.  Beginning on December 11, 2010, Defendants and Plaintiffs began sending requests to the PMO to collect

#370950

Mr. D'Angelo's medical records. Between December 11, 2009 and January 28, 2010, the PMO received requests to collect the records at seven different facilities.

On February 12, 2010, Defendants entered their designations for physician depositions in the *D'Angelo* case. On February 16, 2010, Plaintiffs designated the physicians they wish to depose in the suit, making a total of five physicians. The PMO immediately contacted these doctors' offices to arrange dates for these depositions and successfully scheduled the depositions of three of the five designated physicians, as shown in Table 1:

| Table 1 | Physicians Designated in Michael D'Angelo | | | | |
|---|---|---|---|---|---|
| | Deponent Last Name | Deponent First Name | Physician Type | Deponent Designated By | Deposition Date |
| 1. | Arbuckle | Michael | Treating | Both Parties; assigned to Plaintiffs | 4/20/10 |
| 2. | Bonaccorsi | Diane | Treating | Defendant | TBA |
| 3. | Goldis | Michael | Treating | Plaintiff | 3/18/10 |
| 4. | Preble | Debbie | Treating | Both Parties; assigned to Defendants | 4/21/10 |
| 5. | Sparrow | Francis | Prescribing | Both Parties; assigned to Plaintiffs | TBA |

C.   **Problems with Dr. Bonaccorsi and Dr. Sparrow.**

The scheduling of the depositions of Dr. Diane Bonaccorsi and Dr. Francis Sparrow has been delayed by circumstances beyond the control of the Parties and the PMO. The PMO first contacted Dr. Bonaccorsi, whose offices are in Reading, Pennsylvania on February 17, 2010, to arrange her deposition. On February 17, 2010, Dr. Bonaccorsi's office notified the PMO that the doctor was on medical leave and may be admitted for back surgery. The office requested the PMO call back in one week. When the PMO called to follow-up on February 26, 2010, the PMO

2

learned that Dr. Bonaccorsi was indeed scheduled for back surgery in mid-March and would not return to work until mid-May 2010, which is after the May 3, 2010 discovery cut-off in the Group 1 cases. According to her staff, the nature of Dr. Bonaccorsi's injury and treatment prevented her from participating in a deposition prior to surgery.

Collecting the medical records from Dr. Sparrow has presented a series of challenges:

(1) 12/18/09: The PMO first contacted Philhaven Hospital in Mt. Gretna, Pennsylvania, where Dr. Sparrow practices, to collect its records for Mr. D'Angelo.

(2) 12/29/09: The medical records department at Philhaven Hospital contacted the PMO to request an additional Release of Information Form. The PMO responded the same day and provided the facility with a copy of CS Administrative Order No. 4 (Document 867), which instructs offices to accept the medical authorizations provided by the plaintiffs as part of the Seroquel Litigation.

(3) 1/5/10: The PMO contacted the hospital to follow-up one week later. At that time, the facility indicated Mr. D'Angelo had a "closed chart," but that its staff was working to gather the records.

(4) 1/13/10: The PMO contacted the office again and was told that the hospital was waiting to review CS Administrative Order No. 4 with its legal counsel on Monday, January 18, 2010.

(5) 1/20/10: The PMO called to follow up again. At that time, Dr. Sparrow's office responded that they were still waiting to review CS Order No. 4 with their legal counsel. In addition, they informed the PMO they did not have a complete set of records for Mr. D'Angelo and they were unable to locate records for the years 2003-2006.

(6) 1/22/10: The hospital contacted the PMO to report they were still attempting to locate the medical records for the years 2003-2006, but they would send the PMO copies of the available records.

(7) 1/26/10: The PMO received 25 pages of records from Philhaven Hospital, comprised of notes of the doctor's treatment. They did not include the records from 2003-2006. They did, however, contain a letter from Dr. Sparrow dated January 26, 2010, which described Mr. D'Angelo's treatment and referred to dates and treatment during the years 2003-2006, leading the PMO to believe that records for those year existed and that Dr. Sparrow had had access to them to be able to prepare his letter. The PMO continued to follow-up with Philhaven regularly to obtain the medical records from 2003-2006. The confusion over and lack of records delayed setting Dr. Sparrow's deposition, because the Parties did not want to examine him before having the opportunity to review his complete file.

(8)   2/17/10:  Rather than continue to wait for the records, the PMO began its attempts to schedule a deposition with Dr. Sparrow.

(9)   3/1/10:  The Medical Records Director/HIPAA Privacy Office of Philhaven Hospital contacted the PMO and reported that the missing records could be located at an outpatient facility and that she was trying to find them.

(10)  3/1/10 through 3/11/10:  The PMO made four more calls to follow-up on the whereabouts of the missing records, but received no further information.

(11)  3/15/10:  Dr. Sparrow's attorney, Robert G. Yosua, contacted the PMO.  The PMO explained to Mr. Yosua the efforts made thus far to obtain Mr. D'Angelo's medical records for the 2003-2006 period.

(12)  3/17/10:  Dr. Sparrow's attorney contacted the PMO to confirm the records in question were from Mr. D'Angelo's treatment at Philhaven Hospital. Further, he had been in contact with Philhaven Hospital and the facility would produce the records in question.  He requested that a new medical release be executed by Mr. D'Angelo granting permission for Dr. Sparrow to discuss his treatment, and refused to confirm a date for Dr. Sparrow's deposition without it.

(13)  3/19/10:  Dr. Sparrow's attorney provided the PMO the medical release form he was requiring and the PMO emailed it to Plaintiffs' lead counsel to have it signed by Mr. D'Angelo.

(14)  3/24/10:  Plaintiffs emailed the PMO the signed new medical release and the PMO emailed it to Dr. Sparrow's attorney.

(15)  3/ 26/10:  The PMO received additional medical records from Dr. Sparrow treatment and provided the records to the Parties.

(16)  4/2/10:  Defendants' lead counsel notified the PMO they believed the records provided by Philhaven Hospital may still be incomplete.  The PMO provided Defendants' counsel with contact information for Dr. Sparrow's attorney to permit them to contact him directly to discuss the records in question and attempt to obtain some explanation of whether other records exist.

Dr. Bonaccorsi's deposition cannot occur before May 3, 2010.  Dr. Sparrow's deposition was delayed by the missing medical records and his counsel's requirement of a particular medical release form.

## II. RECOMMENDATION

Because of her medical condition, we will not be able to hold Dr. Bonaccorsi's deposition until "mid-May" at the earliest, which is after the May 3, 2010 deadline to complete case-specific discovery in the Group 1 cases. We cannot conduct Dr. Bonaccorsi's deposition after May 3, 2010, unless the Court grants permission to do so.

With the Court's permission, the *D'Angelo* case should be moved from Group 1 to Group 2 to permit its discovery to be concluded by the August 2, 2010 deadline for Group 2 cases. Both Plaintiffs and Defendants view Dr. Bonaccorsi as an indispensable deponent. We have considered simply leaving *D'Angelo* in Group 1 and, with the Court's approval, completing his deposition beyond the May 3, 2010 cut-off. If the case were left in Group 1, however, the Parties likely would be required to meet certain pre-trial submission deadlines, set forth in the Court's February 9, 2010 Scheduling Order for Group 1 cases, without full information on the facts and testimony in the case. Without her deposition, the Parties will be at a disadvantage in compiling their expert reports and other pre-trial materials on the schedule set for Group 1 cases. Thus the Special Master recommends that *D'Angelo* be moved from Group 1 to Group 2 to permit her deposition to be held in May and allow the Parties to prepare their pre-trial submissions under the schedule applicable to the Group 2 cases.

Placing *D'Angelo* in Group 2 will have the added benefit of allowing time to determine the full facts about Dr. Sparrow's records and obtain all the materials that exist, wherever they may be, for the Parties to review before he is examined. As the only prescribing physician in the case, the Parties also see Dr. Sparrow's testimony as indispensable. The Parties remain unsure that they have received all of his records and may have to conduct, as a prelude to Dr. Sparrow's deposition, a deposition of a records custodian to attempt to sort out the confusion over what records he has and where they are located. Those issues must be cleared up before Dr. Sparrow

can be effectively deposed. Allowing the Parties until August 2, 2010 will facilitate the completion of those efforts. Further, with Dr. Bonaccorsi and Dr. Sparrow both located in the Philadelphia, Pennsylvania area, moving *D'Angelo* to Group 2 will allow both depositions to be set and conducted on successive days, which will reduce the cost and time of travel for both Parties.

     For these reasons, the Parties and the Special Master request that the Court move *D'Angelo* from the Group 1 cases to the Group 2 cases.

_____
Orran L. Brown
Special Master for Case-Specific Discovery

DATED: April 8, 2010