**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

IN RE:  Seroquel Products Liability Litigation

MDL Docket No. 1769

This Document Relates to ALL CASES

_____

**ASTRAZENECA'S OPPOSITION TO PLAINTIFFS' MOTION**
**REGARDING THE COURT'S SUGGESTION OF REMAND, AND COMBINED**
**MOTION AND MEMORANDUM SEEKING A CERTIFICATION PROGRAM**

This Court has stated its intention to suggest remand of the non-Florida plaintiff, non-Eleventh Circuit cases in this MDL.  *See* Doc. Nos. 1478; 1582.  In deciding when to remand, the Court will no doubt take into account a variety of factors, including the status of the litigation, the developments of the past year in this and the other jurisdictions, the interests of judicial efficiency, the tasks that remain to be completed in the MDL, and most importantly, the ongoing programs that this Court itself has initiated for streamlining the litigation.

Ignoring most of these considerations and distorting the rest, plaintiffs instead urge the Court to remand now.  *See* Doc. No. 1627.  Not surprisingly, Plaintiffs' Motion comes on the heels of the Court's recent Order requiring compliance with the Court-appointed SM-ADR's protocol for the production of medical records, which plaintiffs had strenuously opposed.  *See* Doc. No. 1621.  Plaintiffs have made their motives clear – they want to get out of this Court now, without further scrutiny of their cases.

The Court should deny plaintiffs' Motion. Plaintiffs may want to get away from this Court and into courts that are strangers to the litigation, but an immediate remand would be counterproductive to processes this Court has put in place. First, a remand now would hinder the Court-ordered mediation and Eleventh Circuit bellwether programs. Second, certain pre-remand tasks before this Court are not yet fully accomplished. Third, even though plaintiffs represented to this Court that they had completed their common issue discovery of AstraZeneca, plaintiffs' co-lead counsel in this MDL is now seeking such discovery in the New Jersey coordinated litigation. Finally, ongoing developments continue to reveal that many of the Seroquel cases lack even facial merit, that plaintiffs often dismiss their cases when they are forced to review their claims, and that more often than not, any cases that survive plaintiffs' review are dismissed by the courts. As a result, immediate remand would burden 90+ courts around the country with thousands of cases that should be dismissed rather than remanded. To that end, AstraZeneca renews its request for a program that will avoid flooding federal courts throughout the nation, when remand does occur, with thousands of claims that have never been subject to even minimal scrutiny by plaintiffs' counsel.

### A. This Court's Continued Jurisdiction Over The MDL Cases Is Important If The Court Intends To Continue The Court-Ordered Mediation Program.

If the Court intends for its mediation program to continue, the program would benefit greatly from the Court's continuing jurisdiction over the MDL cases. This Court appointed the SM-ADR and created the mediation program, and only this Court has the authority to issue whatever orders may be needed to keep the mediation process moving forward. This

Court has already had to issue one Order supporting the mediation, and the need for further Court involvement can be anticipated.[1]

Remanding the cases now no doubt would hinder the efforts of the SM-ADR because upon remand, this Court would lose its jurisdiction over the cases, and the SM-ADR would lose his authority.  Moreover, once the SM-ADR loses his authority and support from the Court after remand, plaintiffs will be able to ignore the SM-ADR's requests and protocols which are essential to the mediation process.  *See* 4/2/10 Mediator's Report, Doc. No. 1617 at 2-3:

> Without a representative sample of the medical records, it is difficult to conceive how either plaintiffs, AZ or I can truly value the claims of any particular firm.  Neither AZ nor I can evaluate the inventories of counsel who fail to comply with the Protocol … and do not offer an adequate sample of medical records….  The reality is that discussions on the value of claims requires that AZ be able to make a realistic estimate of what the universe of claims actually is, and this requires an examination of medical records of MDL plaintiffs and non-MDL plaintiffs.

If the Court elects to retain jurisdiction of the MDL cases, AstraZeneca will continue to comply with the Court's orders and participate in good faith in the mediation program, and plaintiffs will be unable to circumvent the SM-ADR's requests and protocols.

---

[1] The SM-ADR asked plaintiffs' counsel on January 29, 2010 to produce by March 8 medical records in their possession for approximately 20% of the MDL plaintiffs.  *See* Doc. No. 1617 at 3-4.  As of April 2, however, less than half of the plaintiffs' firms had complied with the SM-ADR's protocol. *Id.*  Consequently, the SM-ADR was forced to petition this Court to require plaintiffs to produce the requested records so that mediation might continue.  *Id.* at 5 ("It is my hope that assistance that the Court can provide in encouraging compliance with the Protocol will move the mediation process forward.").  The Court promptly ordered plaintiffs to produce the records within 45 days.  *See* Doc. No. 1621.

**B.     The Eleventh Circuit Trial Group Program Is Worth Preserving.**

A remand at this time would also threaten the Eleventh Circuit Trial Group program that this Court created in November 2009.  As the Court envisioned, discovery is underway in the 27 cases that remain active (23 cases already have been dismissed; plaintiffs' counsel have moved to withdraw from 6 cases; and one case was removed from the Trial Group pursuant to agreement of the parties and Court order).  *See* Doc. No. 1625.  This Court created the Trial Group program with the expectation that its rulings in those cases and their disposition would guide scores of federal courts in the resolution of the remaining MDL cases after remand.  Indeed, recognizing the benefits of the program, the Court stated that it would recommend that all remanded cases be put on hold until the Trial Group cases have been worked up.  *See* Doc. No. 1582 at 27:14-17; 28:25-29:5 (stating "I will recommend that they wait and see what happens in these cases ….").

Plaintiffs have a different idea, however.  They want the cases to be remanded now so that they can forum shop and ask selected federal courts to disregard this Court's recommendation to stay the cases pending the rulings that this Court will provide through the Trial Group program.  Indeed, plaintiffs' Motion for Remand belittles any benefits to be gained from that program, *see* Doc. 1627 at 4-5, even though the Court crafted the program to include cases governed by the laws of many different states, thereby providing guidance to remand courts on how cases would fare under different legal regimes.  *See* Doc. No. 1582 at 27:14-17; 28:25-29:5.

Much benefit from this Court's work on the Eleventh Circuit Trial Group program would be lost if remand occurred now and plaintiffs were successful in implementing such a strategy.

### C.     Several Pre-Remand Tasks Have Not Yet Been Completed.

The Court has said that it hopes to accomplish certain generic tasks before suggesting remand. *See* Doc. No. 1419. The Court indicated its intention to decide AstraZeneca's preemption motion, of course, and to resolve the disputes on designations, counter-designations, and objections to the generic deposition testimony that the parties have selected for use at future trials.

Additionally, in its May 1, 2009 Order, and again at the November 18, 2009 hearing, this Court stated that it intended to issue a comprehensive order for the benefit of those courts that will end up with the MDL cases after remand, addressing the progress of the MDL, summarizing controlling issues, and outlining a blueprint for final pretrial discovery, motion practice, and trial. *See* Doc. No. 1419 at 2; Doc. No. 1582 at 25:21-26:20; 27:14-17; 28:25-29:6. The Court has not yet issued such an order, which by its very nature and scope can be a matter of some length and complexity. AstraZeneca respectfully submits that it may be helpful to the Court if the parties were to provide their thoughts in connection with the Court's anticipated order. (By separate motion, AstraZeneca is asking the Court to allow the parties to submit their suggestions for the anticipated order.)

### D.     Notwithstanding Their Representations To This Court, Plaintiffs Are Seeking More Generic Discovery From AstraZeneca.

One of the bases for this Court's statement that it would remand these cases was plaintiffs' representation that they had completed their generic discovery of AstraZeneca.

*See* Doc. Nos. 1419, 1627.  Contrary to those representations, however, plaintiffs are now

seeking in the New Jersey coordinated litigation the very generic discovery that they told this

Court they would not seek.  *See* Statement by Attorney Paul Pennock, plaintiffs' Co-Lead

Counsel in this MDL, in the New Jersey consolidated litigation, 4/15/10 Hearing Tr. at

58:22-60:24, attached as Exhibit 1 (discussing plaintiffs' desire for additional depositions and

data production); *see also* 4/26/10 and 4/27/10 emails from Mr. Pennock to Glenn Pogust (a

lawyer for AstraZeneca), attached as Exhibit 2.

        The list of generic discovery sought by plaintiffs continues to grow.  Plaintiffs'

counsel has now advised counsel for AstraZeneca during meetings involving the New Jersey

litigation that he intends to open up generic discovery to the extent of rehashing previously-

conducted MDL discovery, such as taking several more depositions of AstraZeneca

personnel (including re-deposing some personnel who were already deposed in the MDL)

and demanding production of vast amounts of clinical trial data that were previously the

subject of the extensive electronic discovery issues mediated to conclusion more than a year

ago by this Court's Special Master for Electronic Discovery.

        In deciding whether to remand the MDL cases now, AstraZeneca submits that this

Court should consider that plaintiffs have now run to a different court to seek the precise

discovery that they previously told this Court they did not want or need – discovery they

undoubtedly will attempt to use in any remanded federal cases.

**E.    Recent Developments Reveal That Immediate Remand Would Be Counterproductive, And That This Court Instead Should Implement A Program To Weed Out Meritless Cases Before Any Remand.**

The last year of Seroquel litigation has been telling.  It is now clear that plaintiffs' counsel have filed and maintained thousands of cases in this Court and in the Delaware and New Jersey state courts without even minimal investigation of plaintiffs' claims.  It is now also clear that even when plaintiffs are allowed to hand-select their cases, the cases cannot withstand scrutiny; plaintiffs either end up dismissing them or they fail at the summary judgment stage, and in the only case that has been allowed to go to trial, the jury found for AstraZeneca.  Notably:

- **Specific causation expert opinions have not met evidentiary standards**. AstraZeneca has prevailed on legal motion in every case – including plaintiffs' counsel's hand-picked "best" cases – where the issue of specific medical causation has been assessed under *Daubert*'s expert admissibility standard; each plaintiff's specific medical causation testimony was ruled scientifically unreliable and inadmissible, including *Guinn* and *Haller* in this Court, and *Scaife*, *Hopkins*, and *Jones* in the Delaware proceedings.  *See Guinn v. AstraZeneca Pharm. LP*, 598 F. Supp. 2d 1239 (M.D. Fla. 2009), *aff'd* ___ F.3d ___, 2010 WL 1286947 (11th Cir. April 6, 2010); *Haller v. AstraZeneca Pharm. LP*, 598 F. Supp. 2d 1271 (M.D. Fla. 2009); *Scaife v. AstraZeneca LP*, 2009 WL 1610575 (Del. Super. Ct. June 9, 2009); *Hopkins v. AstraZeneca Pharm. LP*, C.A. No. 06C-01-325 SER (Del. Super. Ct. Mar. 31, 2010); *Jones v. AstraZeneca LP*, C.A. No. 07C-01-420-SER (Del. Super. Ct. Mar. 31, 2010).

  Even in New Jersey, where *Daubert* is not the standard, AstraZeneca won the *Tate* case after the trial court excluded plaintiff's specific causation testimony as unreliable under New Jersey's *Kemp* standard.  *See Tate v. AstraZeneca Pharm. LP*, No. MID-L-1608-07-MT (N.J. Super. Ct. Law Div. Feb. 5, 2010).

- **The only jury verdict was for AstraZeneca**.  The only Seroquel case ever to survive to trial resulted in a verdict for AstraZeneca.  After a four week trial in *Baker v. AstraZeneca Pharm. LP*, No. MID-L-1099-07-MT (N.J. Super. Ct. Law Div.), the jury found 7-1 that the risk disclosures and warnings provided by AstraZeneca in the original Seroquel label were not inadequate.  Plaintiff's Motion for a new trial was denied.  *See id.*, 4/30/10 Order.

- **Most of the cases selected for bellwether programs have disappeared from the dockets**.  Of the 57 cases that this Court selected for the Eleventh Circuit bellwether trial program, only 27 cases remain active; the other 30 cases have fallen by the wayside, primarily because plaintiffs dismissed them or because plaintiffs' counsel have sought to withdraw their appearances.

  Only 12 of the 24 Florida Initial Trial Pool Cases remain active – 10 were dismissed voluntarily or after plaintiffs' counsel sought to withdraw (but not until AstraZeneca had been forced to expend significant resources to take wasteful discovery and prepare needless expert reports in those cases).  Dispositive motions are pending in 5 of the 12 remaining cases.

  The same is true in New Jersey and Delaware, where plaintiffs voluntarily dismissed (or withdrew from) most of the cases selected for the bellwether trial programs prior to dispositive motions – 15 out of 18 in New Jersey (83%), and 32 out of 45 in Delaware (71%).  In Delaware, 19 cases (42%) disappeared at the conclusion of fact discovery, and 13 more evaporated after plaintiffs were forced to file expert reports.

- **Cases also disappear from dockets when plaintiffs' counsel are forced to review their inventory**.  This Court and the New Jersey and Delaware courts have dismissed around 1,700 cases, many with prejudice, because of plaintiffs' failure to satisfy the most rudimentary requirement that they serve Plaintiff Fact Sheets and records authorizations.  And in Delaware, where plaintiffs' counsel are "re-reviewing" their cases to make attorney representations about the sufficiency of the evidence regarding plaintiffs' Seroquel usage, alleged injuries, and potential statute of limitations issues in response to AstraZeneca's application for a certification program, plaintiffs' counsel have abandoned approximately 50 of the 200 cases reviewed thus far after applying this most basic, threshold scrutiny.

- **Thousands of cases apparently were filed without counsel having obtained any medical records**.  As of April 7, 2010, AstraZeneca had not received medical records from 63% of plaintiffs in this MDL (nor from 73% of plaintiffs across all jurisdictions in which some sort of case-specific discovery has begun), even though the Plaintiff Fact Sheet required each plaintiff to produce such records in his/her possession.  Indeed, plaintiffs routinely have represented in their Fact Sheets that neither they nor their counsel possess any medical or pharmacy records, and even when ordered by the SM-ADR to produce medical records supporting the bases of their claims, many MDL plaintiffs were unable to do so.[2]

---

[2] Plaintiffs' counsel have tried to justify this blatant failure to investigate their cases by invoking an arrangement with AstraZeneca, after the MDL was formed and after the bulk of the MDL cases had already been filed, that medical records would be collected during the discovery process by a third party.  This completely misses the point.  Any agreement about how discovery would be conducted has nothing at all to do with the threshold issue of whether plaintiffs' counsel met their Rule 11

Hence, even if there was any doubt in April 2009 when this Court conducted a hearing on the future of the MDL, it has since become crystal clear that the MDL docket includes thousands of uninvestigated cases, many of which should have never been filed and are not worthy of remand.  Plaintiffs' strategy seems obvious:  file as many cases as possible nationally to drive up the inventory, hoping that the enormous cost of defending tens of thousands of cases, regardless of their merit, will force AstraZeneca into quickly settling claims in the aggregate without anyone closely examining the cases individually.

Plaintiffs' mass tort strategy may have worked in other litigations.  In this litigation, however, AstraZeneca has vigorously defended itself in all jurisdictions and has prevailed in every single case to be evaluated, whether by plaintiffs' counsel, the courts, or a jury. Indeed, after almost seven years of litigation, *no Seroquel plaintiff has been able to establish that his or her claims have any merit.*

The parties now have spent years working up cases in handfuls, at a cost and burden to the courts and parties that even plaintiffs decry as excessive, and with an outcome that plaintiffs refuse to acknowledge.  Despite the cost, and despite what past experience tells us

---

obligations to investigate plaintiffs' claims before filing suit.  Moreover, it cannot excuse the obligation of plaintiffs' counsel, throughout this litigation, to ensure that there has been an adequate evidentiary basis, consistent with Rule 11, to *maintain* these actions on the Court's docket.

This MDL is not a class action; indeed, class certification was denied years ago.  This MDL consists of individual cases, each one of which must satisfy the strictures of Rule 11.  As the Southern District of West Virginia has found, the filing of pharmaceutical personal-injury lawsuits without first obtaining and reviewing "medical and pharmacy records" as part of the required "pre-filing investigation" consistent with Rule 11 is generally unreasonable.  *See In re Digitek Prods. Liab. Litig.*, No. 2:08-md-1968, slip op. (S.D. W.Va. Aug. 26, 2009); *see also In re Digitek*, slip op. (S.D. W.Va. Sept. 23, 2009) (upholding the magistrate judge's Order); *cf. Richardson v. Actavis Totowa, LLC*, No. 2:09-cv-00447, 2010 U.S. Dist. LEXIS 36557 (S.D. W.Va. April 13, 2010) (in the *Digitek* litigation, declining to dismiss cases under Rule 11 when plaintiffs' counsel demonstrated that he had performed a diligent pre-trial investigation despite having failed to obtain medical records prior to filing complaint).

about the likely outcome, plaintiffs urge more of the same – indeed, much more of the same, but for no good reason.

There are currently more than 20,000 Seroquel personal injury cases in courts across the country, with nearly a third of those cases pending before this Court.  This litigation continues to place a heavy burden on the judiciary as well as AstraZeneca.  The Seroquel litigation is now at a crossroads, and this Court – before any remand – is uniquely positioned to prevent the burden of meritless cases from spreading further throughout the federal judiciary.

With its vast Seroquel experience and expertise, this Court is especially well-prepared to separate the many Seroquel cases that are meritless from those that may be worthy of consideration by other federal courts after remand.  AstraZeneca requests, therefore, that rather than acceding to plaintiffs' demand for immediate remand, this Court use its authority to put additional requirements in place to ensure that only those cases worthy of serious consideration are remanded.

Specifically, AstraZeneca respectfully asks the Court to implement a requirement that each plaintiff produce, as a condition for remand, a certification signed by plaintiff (before a notary) and by plaintiffs' counsel stating:  (a) that counsel has obtained and reviewed (or had another responsible person review) plaintiffs' medical records, and indicating when that occurred; (b) that plaintiff used Seroquel, and provide dates and dosages of Seroquel treatment with citations to the supporting medical records; (c) that plaintiff has diabetes, and provide date of diagnosis with citations to the supporting medical records; and (d) plaintiff's body mass index before taking Seroquel and at the time of diagnosis.

Should the Court be so inclined, cases that survive the certification process could then move to a further step of examination before the parties undertake the expense of conducting full case-specific discovery.  As to what that next step would be, there are multiple options, including one that AstraZeneca previously raised with the Court under different circumstances – entering an order requiring each plaintiff to produce a Rule 26 case-specific expert report on injury and causation (*i.e.*, a *Lone Pine* order).  *See* Doc. No. 618.  Another option might include contention interrogatories that would require plaintiffs and their counsel to scrutinize their cases beyond the basic certification.  This requirement could be imposed for all cases in the MDL as another prerequisite for remand, or it could be applied to the Florida and Eleventh Circuit cases with a recommendation that transferor courts implement similar requirements after remand.  However specifically tailored, experience in this mass tort suggests that an additional screen would be invaluable to weed out cases that cannot survive summary judgment and should not be subjected to complete case workup by this or any other court.  Such a phased approach is currently under consideration by the Delaware court, and would save the parties and the judiciary an enormous amount of time, burden, and expense.

   1. A Certification Requirement Would Weed Out Meritless Cases Before Remand.

The experience with Seroquel cases in this Court and in courts nationwide shows that unless forced to do so, either through case-specific discovery, expert report requirements, or the possibility of trial, plaintiffs' counsel will not examine the merits of their cases.  Plaintiffs' strategy – to keep thousands of meritless claims on the dockets of all Seroquel courts as long as possible – places a heavy burden on the courts, as well as on AstraZeneca.

This burden will be magnified if 6,000 uninvestigated cases are remanded to courts across the country.

A certification requirement would effectively weed through the uninvestigated cases that should have never been filed in the first place. The Honorable Joseph R. Slights, who presides over the Seroquel litigation in Delaware, indicated at a May 3, 2010 hearing that he would expand the certification program that has been in place in that court since July 2009 (and that has thus far resulted in a 25% dismissal rate, *see* p. 8, *supra*), and require Delaware plaintiffs to certify key facts that had been requested in Plaintiff Fact Sheets so that AstraZeneca could rely on those facts for motion practice. He also found that such a certification program could substantially reduce the Court's docket, and that a meaningful grouping or "bundling" of similar cases for consolidated dispositive motions could then occur.[3]  Similarly, a certification requirement in this MDL would streamline this litigation for the benefit of the remand courts and their dockets.

A certification requirement need not interfere with the Court's ultimate remand goals. The Court can implement such a requirement now, while both the mediation and the Eleventh Circuit Trial Group programs are ongoing, and when the time for remand comes, the Court could simply require certification as a condition for remand of each case, along with any other conditions that the Court might wish to impose.

---

[3] At the time of this filing, the transcript of the May 3, 2010 Delaware hearing was not available.  If the Court wishes to review that transcript, AstraZeneca will be happy to provide it as soon as it becomes available.

2.   A Certification Requirement Would Place The Responsibility On Plaintiffs For Culling Out Cases That Lack The Bare Minimum Of Medical Proof.

Plaintiffs' litigation strategy has been to shift plaintiffs' counsel's obligation to conduct a reasonable pre-filing investigation to AstraZeneca, forcing AstraZeneca to spend very significant resources conducting discovery and motion practice in cases that present no colorable claim and should never have been filed, and making this and other courts oversee discovery, manage thousands of cases that lack the bare minimum of medical proof, and invest time holding hearings and issuing opinions dismissing cases on the merits.  It is plaintiffs who filed all these uninvestigated cases, but it has been this and other courts and AstraZeneca that have been saddled with the brunt of the cost and burden of investigating whether those cases have any merit.

A certification program would only require plaintiffs' counsel to do now what they should have done a long time ago – carefully examine their cases, identify those in which the plaintiff can actually muster the requisite evidence necessary to continue with the case, and allow the rest of the cases to be dismissed.  In short, a certification requirement would simply put the responsibility of weeding out legally deficient claims where the law places it in the first instance – on plaintiffs.  *See* Fed. R. Civ. P. 11; *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir.), *cert denied*, 530 U.S. 1229 (2000).

3.   A Certification Requirement Does Not Impose Any Undue Burden On Plaintiffs.

Any requirement that plaintiffs certify the bare minimum information about their claims is hardly a new obligation, let alone an undue obligation even if it were new.  Indeed, a lawyer who files a complaint in an MDL has no less duty than a lawyer who files a single

automobile accident case to investigate the claim and satisfy him/herself that the claim is factually well founded. *See* Fed. R. Civ. P. 11; *see also Acuna*, 200 F.3d at 340 ("Each plaintiff should have had at least some information regarding the nature of his injuries, the circumstances under which he could have been exposed to harmful substances, and the basis for believing that the named defendants were responsible for his injuries."). A certification requirement like that described herein would only require plaintiffs to do what they should have done long ago.

Similarly, ordering Rule 26 expert reports on injury and causation (*i.e.*, *Lone Pine* reports) or contention interrogatories in cases where a certification is made would not impose any new duty upon plaintiffs. Whether here in this Court, or in other federal courts after remand, plaintiffs bear the burden of proving both "injury" and "causation" through expert testimony. While such an order might require that plaintiffs' causation reports be produced earlier in the litigation than otherwise, this modification in discovery sequence is well within a federal court's authority to manage complex cases efficiently. *See* Fed. R. Civ. P. 16(c)(2)(L).

In short, the Court should not allow plaintiffs to continue to consume judicial resources and burden AstraZeneca and the courts with cases that have no factual basis. Instead, this Court should require each plaintiff to set forth the minimum evidentiary support for his/her claim. Cases that lack this necessary evidentiary support do not belong in this or any other court.

## <u>CONCLUSION</u>

For all these reasons, AstraZeneca respectfully submits that remand now would be premature and inconsistent with this Court's stated objectives.  Accordingly, AstraZeneca respectfully requests that this Court deny Plaintiffs' Motion Regarding the Court's Suggestion of Remand.  Instead, AstraZeneca requests that this Court grant AstraZeneca's Motion and implement a certification requirement as a condition for remand, as well as any additional programs the Court finds appropriate, as set forth above.  Plaintiffs who fail to comply – like those plaintiffs who failed to produce Fact Sheets – should have their cases dismissed with prejudice.

Respectfully submitted on this the 6th day of May, 2010.

/s/ Fred T. Magaziner
Fred T. Magaziner
A. Elizabeth Balakhani
Shane T. Prince
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA  19104
T:  (215) 994-4000
F:  (215) 994-2222
fred.magaziner@dechert.com
shane.prince@dechert.com

/s/ Chris S. Coutroulis
Chris S. Coutroulis (Fla. Bar No. 300705)
Robert L. Ciotti (Fla. Bar No. 333141)
CARLTON FIELDS, P.A.
Corporate Center Three at International Plaza
4221 W. Boy Scout Blvd.
Tampa, FL  22607
T:  (813) 223-7000
F:  (813) 229-4133
ccoutroulis@carltonfields.com
rciotti@carltonfields.com

Counsel for AstraZeneca Pharmaceuticals LP
and AstraZeneca LP

## CERTIFICATE OF CONFERENCE

In accordance with Rule 3.01(g) of the Local Rules of the United States District Court for the Middle District of Florida, I hereby certify that moving counsel has conferred with plaintiffs' counsel regarding the issues raised by this Motion, but counsel have not agreed on the resolution of those issues.

*/s/ Shane T. Prince*

## CERTIFICATE OF SERVICE

I hereby certify that, on May 6, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, through which all participating parties are deemed served.  I further certify that, by using the CM/ECF, the foregoing has been served on Plaintiffs' Liaison Counsel, who is charged with serving non-CM/ECF participants on the attached Service List.

*/s/ Shane T. Prince*

<u>**SERVICE LIST**</u>

**In re: Seroquel Products Liability Litigation**
**MDL Docket No. 1769**

| | |
|---|---|
| Camp Bailey<br>Michael W. Perrin<br>Fletcher Trammell<br>Laurence Tien<br>Robert W. Cowan<br>F. Kenneth Bailey, Jr.<br>Bailey Perrin Bailey LLP<br>The Lyric Centre<br>440 Louisiana, Suite 2100<br>Houston, TX 77002<br>(713) 425-7240<br>cbailey@bpblaw.com<br>mperrin@bpblaw.com<br>ltien@bpblaw.com<br>rcowan@bpblaw.com<br>kbailey@bpblaw.com<br>***Plaintiffs' Lead Counsel*** | Paul J. Pennock<br>Michael E. Pederson<br>Ellen Relkin<br>Weitz & Luxenberg, P.C.<br>700 Broadway<br>New York, NY 10003<br>(212) 558-5500<br>ppennock@weitzlux.com<br>mpederson@weitzlux.com<br>erelkin@weitzlux.com<br>***Plaintiffs' Lead Counsel*** |
| Larry Roth<br>Law Offices of Larry M. Roth, P.A.<br>Post Office Box 547637<br>Orlando, FL 32854-7637<br>(407) 872-2239<br>LROTH@roth-law.com<br>***Plaintiffs' Liaison Counsel*** | Tommy Fibich<br>Fibich, Hampton & Leebron, L.L.P.<br>1401 McKinney, Suite 1800<br>Five Houston Center<br>Houston, TX 77010<br>(713) 751-0025<br>tfibich@fhl-law.com |
| Robert L. Ciotti<br>Chris S. Coutroulis<br>Carlton Fields, P.A.<br>4221 W. Boy Scout Boulevard<br>Suite 1000<br>Tampa, FL 33607-5736<br>(813) 223-7000<br>rciotti@carltonfields.com<br>ccoutroulis@carltonfields.com | E. Ashley Cranford<br>Michael M. Breit<br>Whatley Drake & Kallas, LLC<br>2001 Park Place N – Ste 1000<br>PO Box 10647<br>Birmingham, AL 35203<br>(205) 328-9576<br>mbreit@whatleydrake.com<br>ecf@whatleydrake.com |
| Keith M. Jensen<br>Jensen, Belew & Gonzalez, PLLC<br>1024 North Main<br>Fort Worth, TX 76106<br>(817) 334-0762<br>kj@kjensenlaw.com | Scott Allen<br>Cruse, Scott, Henderson & Allen, L.L.P.<br>2777 Allen Parkway, 7th Floor<br>Houston, TX 77019<br>(713) 650-6600<br>sallen@crusescott.com |

| | |
|---|---|
| Matthew E. Lundy<br>Lundy & Davis, LLP<br>333 North Sam Houston Parkway East<br>Suite 375<br>Houston, TX 77060<br>(281) 272-0797<br>mlundy@lundydavis.com | Robert L. Salim<br>Robert L. Salim Attorney at Law<br>P.O. Box 2069<br>Natchitoches, LA 71457-2069<br>(318) 352-5999<br>robertsalim@cp-tel.net |
| Randy Niemeyer<br>22442 Pike 309<br>Bowling Green, MO 63334-5209<br>*Pro Se* | Eric B. Milliken<br>3 Sir Barton Ct.<br>Newark, DE 19702<br>*Pro Se* |
| Catherine Solomon<br>3100 N.E. 83<br>Gladstone, MO 64119<br>*Pro Se* | Louisiana Wholesale Drug Co. Inc.<br>C/O Gayle R. White<br>Registered Agent<br>Highway 167N<br>Sunset, LA 70584<br>*Pro Se* |
| Aaron C. Johnson<br>Summers & Johnson<br>717 Thomas<br>Weston, MO 64098<br>(816) 640-9940<br>firm@summersandjohnson.com | Robert A. Schwartz<br>Bailey & Galyen<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>(281) 335-7744<br>bschwartz@galyen.com |
| John Driscoll<br>Seth S. Webb<br>Brown & Crouppen, PC<br>Suite 1800<br>720 Olive St.<br>St. Louis, MO 63101<br>(314) 421-0216<br>jdriscoll@brownandcrouppen.com<br>asmith@brownandcrouppen.com<br>blape@brownandcrouppen.com<br>swebb@brownandcrouppen.com | Mark P. Robinson, Jr.<br>Ted B. Wacker<br>Karen Barth Menzies<br>Carlos A. Prietto, III<br>Robinson, Calcagnie & Robinson<br>620 Newport Center Drive, 7th Floor<br>Newport Beach, CA 92660<br>(949) 720-1288<br>mrobinson@rcrlaw.net<br>twacker@rcrlaw.net<br>kbmenzies@rcrlaw.net |
| Elizabeth Raines<br>Baker, Sterchi, Cowden & Rice, LLC<br>2400 Pershing Road, Suite 500<br>Kansas City, MO 64108<br>(816) 471-2121<br>raines@bscr-law.com | Todd S. Hageman<br>Simon and Passanante, PC<br>701 Market St., Suite 1450<br>St. Louis, MO 63101<br>(314) 241-2929<br>thageman@spstl-law.com |

| | |
|---|---|
| Thomas F. Campion<br>Steven M. Selna<br>Heidi Elizabeth Hilgendorff<br>Drinker Biddle & Reath, LLP<br>500 Campus Drive<br>Florham Park, NJ 07932-1047<br>(973) 360-1100<br>thomas.campion@dbr.com<br>steven.selna@dbr.com<br>heidi.hilgendorff@dbr.com<br>***Attorneys for Defendants Janssen***<br>***Pharmaceutical Products and Johnson &***<br>***Johnson Co.*** | Bryan Frederick Aylstock<br>Debra Renee Sherrer Baggett<br>Daniel J. Thornburgh<br>Justin Witkin<br>Aylstock, Witkin & Sasser, PLC<br>803 N Palafox St<br>Pensacola, FL 32503<br>(850) 916-7450<br>baylstck@awkolaw.com<br>jwitkin@awkolaw.com<br>ablankenship@aws-law.com<br>noverholtz@aws-law.com<br>rbaggett@awkolaw.com |
| Kenneth W. Bean<br>Sandberg, Phoenix & von Gontard<br>One City Centre<br>15th Floor<br>St. Louis, MO 63101-1880<br>(314) 231-3332<br>kbean@spvg.com<br>***Attorney for Defendant Dr. Asif Habib*** | Timothy Reese Balducci<br>The Langston Law Firm, PA<br>P.O. Box 787<br>100 South Main Street<br>Booneville, MS 38829-0787<br>(662) 728-3138<br>tbalducci@langstonlaw.com |
| Aaron K. Dickey<br>Goldenberg and Heller, PC<br>P.O. Box 959<br>2227 S. State Road 157<br>Edwardsville, IL 62025<br>(618) 650-7107<br>aaron@ghalaw.com | Matthew J. Hamilton<br>Pepper Hamilton<br>3000 Two Logan Square<br>18th & Arch Street<br>Philadelphia, PA 19103<br>(215) 981-4000<br>hamiltonm@pepperlaw.com |
| Gregory P. Forney<br>Shaffer Lombardo Shurin<br>911 Main Street, Suite 2000<br>Kansas City, MO 64105<br>(816) 931-0500<br>gforney@sls-law.com<br>rbish@sls-law.com<br>***Attorney for Defendant,***<br>***Marguerite Devon French*** | David P. Matthews<br>Lizy Santiago<br>Matthews & Associates<br>2905 Sackett Street<br>Houston, TX 77098<br>(713) 222-8080<br>dmatthews@thematthewslawfirm.com<br>lsantiago@thematthewslawfirm.com<br>msalazar@thematthewslawfirm.com |
| Salvatore M. Machi<br>Ted Machi & Associates PC<br>18333 Egret Bay Blvd., Suite 120<br>Houston, TX 77058<br>(281) 335-7744 | Jona R. Hefner<br>3441 W. Memorial, Suite 4<br>Oklahoma City, OK 73134-7000<br>(405) 286-3000<br>attorneyokc@hotmail.com |

| | |
|---|---|
| Howard Nations<br>Lori A. Siler<br>Howard L. Nations Attorney At Law<br>4515 Yoakum Blvd.<br>Houston, TX 77006-5895<br>(713) 807-8400<br>nations@howardnations.com | Mary B. Cotton<br>John D. Giddens, P.A.<br>226 North President Street<br>P.O. Box 22546<br>Jackson, MS 39225-2546<br>(601) 355-2022<br>betsy@law-inc.com |
| David Dickens<br>Miller & Associates<br>105 North Alfred Street<br>Alexandria, VA 22314-3010<br>(703) 519-8080<br>ddickens@doctoratlaw.com | Pete Schneider<br>Grady, Schneider & Newman, L.L.P.<br>801 Congress, 4th Floor<br>Houston, TX 77002<br>(713) 228-2200<br>pschneider@gsnlaw.com |
| Fred T. Magaziner<br>A. Elizabeth Balakhani<br>Shane T. Prince<br>Margaret S. Osborne<br>DECHERT LLP<br>Cira Centre<br>2929 Arch Street<br>Philadelphia, PA  19103<br>(215) 994-4000<br>fred.magaziner@dechert.com<br>shane.prince@dechert.com<br>elizabeth.balakhani@dechert.com<br>margaret.osborne@dechert.com | Lawrence J. Gornick<br>William A. Levin<br>Dennis J. Canty<br>Levin Simes Kaiser & Gornick LLP<br>44 Montgomery Street, 36th Floor<br>San Francisco, CA 94104<br>(415) 646-7160<br>lgornick@lskg-law.com<br>dcanty@lskg-law.com<br>lsimes@levins-law.com<br>jkaiser@lskg-law.com<br>echarley@lskg-law.com<br>ddecarli@lskg-law.com<br>bsund@lskg-law.com<br>astavrakaras@lskg-law.com |
| Scott Burdine<br>Hagans Burdine Montgomery<br>Rustay & Winchester, P.C.<br>3200 Travis, Fourth Floor<br>Houston, TX  77006<br>(713) 222-2700<br>sburdine@hagans-law.com | Lowell Finson<br>Phillips & Associates<br>3030 North 3rd Street<br>Suite 1100<br>Phoenix, AZ 85012<br>(602) 258-8900, ext. 295<br>lowellf@phillipslaw.ws |
| Gale D. Pearson<br>Stephen J. Randall<br>Pearson, Randall & Schumacher, P.A.<br>Fifth Street Towers, Suite 1025<br>100 South 5th Street<br>Minneapolis, MN 55402<br>(612) 767-7500<br>attorneys@outtech.com | Robert H. Shultz<br>Heyl, Royster<br>103 West Vandalia Street<br>P.O. Box 467<br>Edwardsville, IL 62025<br>(618) 656-4646<br>rshultz@hrva.com<br>bwallace@hrva.com |

| | |
|---|---|
| Ellen R. Serbin<br>Perona, Langer, Beck, Lalande & Serbin<br>300 San Antonio Drive<br>Long Beach, CA 90807-0948<br>(562) 426-6155<br>davidhwang@plblaw.com | Scott Armstrong<br>1719 West Main Street<br>Suite 201<br>Rapid City, SD 57702<br>(605) 399-3994<br>scottarmstrong1235@eathlink.net |
| Linda S. Svitak<br>Faegre & Benson, LLP<br>90 South 7th Street, Suite 2200<br>Minneapolis, MN 55402-3901<br>(612)766-7000<br>lsvitak@faegre.com<br>wjohnson@faegre.com | James J. Freebery<br>McCarter & English, LLP<br>919 N. Market Street, 18th Floor<br>Wilmington, DE 19801<br>(973) 622-4444<br>jfreebery@mccarter.com<br>tpearson@mccarter.com |
| Richard D. Hailey<br>Ramey & Hailey<br>3891 Eagle Creek Parkway<br>Suite C<br>Indianapolis, IN<br>(317) 299-0400<br>rhailey@sprynet.com | B. Andrew List<br>Clark, Perdue, Arnold & Scott<br>471 East Broad Street, Suite 1400<br>Columbus, OH 43215<br>(614) 469-1400<br>alist@cpaslaw.com<br>lcollins@cpaslaw.com |
| John C. Evans<br>Specter Specter Evans & Manogue, P.C.<br>26th Floor, Koppers Building<br>Pittsburg, PA 15219<br>(412) 642-2300<br>jce@ssem.com | Rhett A. McSweeney<br>McSweeney & Fay<br>2116 Second Avenue South<br>Minneapolis, MN 55404<br>(612) 333-6900 |
| Michael Davis<br>James Mizgala<br>Sidley Austin LLP<br>One South Dearborn<br>Chicago, IL 60603<br>(312) 853-7731<br>mdavis@sidley.com<br>jmizgala@sidley.com | Philip Bohrer<br>Scott E. Brady<br>Bohrer Law Firm, L.L.C<br>8712 Jefferson Hwy, Suite B<br>Baton Rogue, LA 70809<br>(225) 925-5297<br>phil@bohrerlaw.com<br>scott@bohrerlaw.com |
| Christopher Thomas Kirchmer<br>Provost Umphrey, LLP<br>490 Park St<br>PO Box 4905<br>Beaumont, TX 77704<br>(409) 835-6000<br>ckrichmer@provostumphrey.com | Ed Blizzard<br>Holly M. Wheeler<br>J. Scott Nabers<br>Blizzard McCarthy & Nabers, LLP<br>440 Louisiana St., Suite 1710<br>Houston, TX 77002-1689<br>eblizzardlaw.com |

| | |
|---|---|
| Brian J. McCormick<br>Sheller, PC<br>1528 Walnut Street, 3rd Floor<br>Philadelphia, PA 19102<br>(215) 790-7325<br>bjmccormick@sheller.com | Brian S. Kaplan<br>Kasowitz, Benson, Torres & Friedman<br>1633 Broadway<br>New York, NY 10019-6022<br>(212) 506-1700<br>bkaplan@kasowitz.com |
| Matthew F. Pawa<br>Benjamin A. Krass<br>Law Offices of Matthew F. Pawa, P.C.<br>1280 Centre St., Suite 230<br>Newton Centre, MA 02459<br>(617) 641-9550<br>mp@pawalaw.com<br>bkrass@pawalaw.com | David L. Friend<br>Hissey Kientz, LLP<br>Arboretum Plaza One<br>9442 Capital of Texas Highway N.,<br>Suite 400<br>Austin, TX 78759<br>(512) 320-9100<br>dfriend@hkllp.com |
| James T. Capretz<br>Don K. Ledgard<br>Capretz & Associates<br>Suite 2500<br>5000 Birch St<br>Newport Beach, CA 92660<br>DLedgard@capretz.com | Edward T. Krumeich<br>Ivey, Barnum & O'Mara, LLC<br>170 Mason St<br>PO Box 1689<br>Greenwich, CT 06830<br>(203) 661-6000<br>ekrumeich@ibolaw.com |
| Michael T. Gallagher<br>The Gallagher Law Firm<br>2905 Sackett St.<br>Houston, TX 77098<br>(713) 222-8080<br>shawnaf@gld-law.com | J.H. Trey Allen<br>Allen Law Firm<br>4514 Cole Avenue, Suite 705<br>Dallas, TX 75205<br>(214) 521-2300<br>trey@allenfirm.net |
| Jamie R. Kendall<br>William N. Riley<br>Price, Waicukauski, Riley & DeBrota, LLC<br>301 Massachusetts Ave<br>Indianapolis, IN 46204<br>jkendall@price-law.com<br>wriley@price-law.com | Joshua Aaron Machlus<br>Rumberger, Kirk & Caldwell, PA<br>300 S Orange Ave – Suite 1400<br>PO Box 1873<br>Orlando, FL 32802-1873<br>(407) 872-7300<br>jmachlus@rumberger.com |
| Kurt S. Kusiak<br>Robert Mendillo<br>Sally & Fitch, LLP<br>One Beacon St., 16th Floor<br>Boston, MA 02108<br>(617) 542-5542<br>ksk@sally-fitch.com<br>rmm@sally-fitch.com | W. Lewis Garrison, Jr.<br>William Louis Bross<br>Heninger Garrison Davis, LLC<br>2224 First Ave N<br>PO Box 11310<br>Birmingham, AL 35202<br>wlgarrison@hgdlawfirm.com<br>wlbross@hgdlawfirm.com |

| | |
|---|---|
| Mark. A. Koehn<br>Mark Allen Koehn, PC<br>429 Kansas City St – Ste 14<br>PO Box 9655<br>Rapid City, SD 57709-9655<br>(605) 394-5941<br>Whrfrat42@yahoo.com | L. Leonard Lundy<br>Lundy Law<br>19th Floor<br>1635 Market St.<br>Philadelphia, PA 19103<br>(215) 567-3000<br>llundy@lundylaw.com |
| Orran L. Brown<br>BrownGreer, PLC<br>Suite 400<br>115 S 15th St<br>Richmond, VA 23219-4209<br>(804) 521-7201<br>obrown@browngreer.com | Rachel G. Balaban<br>Sonnenschein, Nath & Rosenthal, LLP<br>24th Floor<br>1221 Avenue of the Americas<br>New York, NY 10020-1089<br>(212) 768-6700<br>rbalaban@sonnenschein.com |
| Scott Elder<br>Alston & Bird, LLP<br>1201 W Peachtree St<br>Atlanta, GA 30309-3424<br>(404) 881-7000<br>scott.elder@alston.com | Sean K. McElligott<br>Koskoff, Koskoff & Bieder, PC<br>350 Fairfield Ave<br>Bridgeport, CT 066604<br>(203) 336-4421<br>smcelligott@koskoff.com |
| Spencer P. Browne<br>Heygood, Orr, Reyes, Pearson & Bartolomei<br>2331 W. Northwest Hwy., 2nd Floor<br>Dallas, TX 75220<br>(214) 526-7900<br>spencer@reyeslaw.com | Stephen A. Saltzburg<br>George Washington University Law School<br>2000 H Street NW<br>Washington, DC 20052<br>(202) 994-7089<br>ssaltz@law.gwu.edu |
| Windle Turley<br>T Nguyen<br>Turley Law Firm<br>1000 Turley Law Center<br>6440 N. Center Expwy.<br>Dallas, TX 75206<br>(214) 691-4025<br>win@wturley.com<br>tn@wturley.com | Eli Lilly & Company<br>Francis Edmund Pierce, III<br>Cooney, Mattson, Lance, Blackburn,<br>Richards & O'Connor<br>111 N Orange Ave – Ste 850<br>PO Box 4850<br>Orlando, FL 32802-4580<br>(407) 843-2100<br>fpierce@cmlbro.com |
| Tobias L. Millrood<br>Pogust, Braslow & Millrood, LLC<br>161 Washington St., Suite 1520<br>Conshohocken, PA 19428<br>(610) 641-4204<br>tmillrood@pbmattorneys.com | Tim K. Goss<br>Freese & Goss, PLLC<br>1031 Allen St., Suite 100<br>Dallas, TX 75204<br>(214) 550-5226<br>goss39587@aol.com |

| | |
|---|---|
| Thomas R. Julin<br>Hunton & Williams, LLP<br>Suite 2500<br>1111 Bricknell Ave.<br>Miami, FL 33131-1802<br>(305) 810-2500<br>tjulin@hunton.com | Tor A. Hoerman<br>SimmonsCooper, LLC<br>707 E. Berkshire Blvd.<br>P.O. Box 521<br>East Alton, IL 62024<br>(618) 259-2222<br>thoerman@simmonscooper.com |
| William G. Rosch, III<br>Edward Repp<br>Rosch & Ross<br>4605 Post Oak Place Dr., Suite 224<br>Houston, TX 77027<br>(713) 222-9595<br>rosch@rosch-ross.com | W. Todd Harvey<br>Burke Harvey & Frankowski LLC<br>One Highland Place<br>2151 Highland Avenue, Suite 120<br>Birmingham, AL 35205<br>(205) 930-9091<br>tharvey@bhflegal.com |
| Russell O. Stewart<br>Nadia G. Malik<br>Faegre & Benson, LLP<br>Suite 3200<br>1700 Lincoln St<br>Denver, CO 80203-4532<br>(303) 607-3702<br>nmalik@faegre.com<br>mbeliveau@faegre.com<br>rstewart@faegre.com<br>lmcwhirt@faegre.com | Brett Austin Hiser<br>Patrick J. Mulligan<br>Eric Roberson<br>Reid Stewart<br>The Mulligan Law Firm<br>4514 Cole Avenue, Suite 300<br>Dallas, TX 75205-5412<br>(214) 219-9779<br>bhiser@mulliganlaw.com<br>pmulligan@mulliganlaw.com |
| Kenneth W. Smith<br>Sheller, PC<br>225 Reinekers Lane, Suite 690<br>Alexandria, VA 22314<br>(703) 778-5978<br>ksmith@sheller.com | Craig Ball<br>Craig D. Ball, PC<br>1101 Ridgecrest Drive<br>Austin, TX 78746<br>(512) 514-0182<br>craig@ball.net |
| Joe R. Whatley, Jr.<br>Whatley, Drake & Kallas, LLC<br>37th Floor<br>1540 Broadway<br>New York, NY 10036<br>(212) 447-7070<br>jwhatley@whatleydrake.com | Jason A. Perkins<br>Carlton Fields, PA<br>450 S. Orange Ave, Suite 500<br>P.O. Box 1171<br>Orlando, FL 32802-1171<br>(407) 849-0300<br>jperkins@carltonfields.com |