# EXHIBIT 1

Page 1

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION: MIDDLESEX COUNTY

- - -

IN RE:                          :   CIVIL ACTION
RISPERDAL/SEROQUEL/ZYPREXA      :
LITIGATION                      :
                                :
                                :
                                :   CASE CODE 274

- - -

April 15, 2010

- - -

BEFORE:   THE HONORABLE JESSICA MAYER

- - -

        Case management conference in the above-captioned matter, was held at the MIDDLESEX COUNTY COURT HOUSE, 56 Paterson Street, New Brunswick, New Jersey, beginning at approximately 10:00 a.m., on the above date, the court reporter being Kimberly A. Cahill, a Certified Shorthand Reporter and Notary Public for the State of New Jersey.

- - -

GOLKOW TECHNOLOGIES, INC.
877.370.3377 ph | 917.591.5672 fax
deps@golkow.com

1  much time would you like?
2              MR. FANNING:  I talked to Mr. Sedgh
3  about this today and I was going to propose 60 days.
4              THE COURT:  Is that acceptable?
5              MR. SEDGH:  Yes.
6              THE COURT:  So 60 days would put you
7  into June 15.
8              MR. FANNING:  Right.
9              THE COURT:  Which is probably not 15,
10 but we'll say June 15 extension for, it would be
11 Little, Lufsky, and Gasparetti only.
12             MR. FANNING:  Correct.
13             THE COURT:  Okay.  So that takes care
14 of the AstraZeneca items.
15             Mr. Pennock, did we address your
16 items as to AstraZeneca by way of your reply or not?
17 I'm not sure --
18             MR. PENNOCK:  There is one additional
19 --
20             THE COURT:  Oh, the request to speak
21 to the jury.
22             MR. PENNOCK:  There's that.  The
23 first one I would address is, you know, again, as
24 litigations moved forward and as we tried the first
25 case, it became apparent based on that trial that

Page 59

1  there are some additional depositions that we need
2  to do in order to resolve evidentiary issues and the
3  admissibility of documents.  So we're keeping it
4  very limited and it is a product of the trial, not
5  something that we had foreseen.
6              So I would like the opportunity to --
7  if Your Honor indicates that you might be amenable
8  to that, depending upon the scope, I'd like the
9  defendants to meet with me so I can have a
10 meet-and-confer with them about what we want and try
11 and work it out.
12             At this point, I think their position
13 is, we don't get any discovery, so I don't -- you
14 know, it's either we make a motion or they meet and
15 confer.
16             THE COURT:  I would like somebody
17 from AstraZeneca to meet and confer.  I'm familiar
18 with what Mr. Pennock's discussing and some of the
19 admissibility issues turned on rulings that I made;
20 and if it's a very limited deposition, purely to get
21 the relevancy of the document or whatever background
22 I suggested was needed, I don't know that that would
23 be inappropriate as long as it was extremely
24 limited.
25             And you might have specific

1  documents.  In my own head, I probably could name
2  them by exhibit number.
3              MR. PENNOCK:  Right.  There are some
4  specific ones and, you know, the breadth of the
5  deposition would, of course, depend upon what the
6  witness says about the document.  It may have to
7  result in some cross-examination if they start
8  back-pedalling off it and so forth.
9              There's that and then there are
10 issues that -- there's one issue that came up
11 regarding, I mean, the general causation issue in
12 the clinical trials that, as the Court knows as well
13 as anyone now, the clinical trial defense to general
14 causation on low dose and that there is no low dose
15 -- I mean, all that.  Remember when Jerry Kristal
16 and I kept coming over the podium every time they
17 put the 2009 clinical review up?
18              So there is a database of what's
19 called SAS data of the clinical trial data.  It's
20 really literally just, here's the hard drive with
21 the database.  It's not a major discovery, but based
22 upon how that -- you know, some of the ways the case
23 was tried, we'd be talking to them about the SAS
24 data, also.
25              THE COURT:  Why don't we at least do

```
 1   that in part of the meet-and-confer when I have you
 2   come back to talk to me?  Is that acceptable to
 3   AstraZeneca?
 4                  MR. BROCK:  That's acceptable.
 5                  THE COURT:  No commitment, but --
 6                  MR. BROCK:  Right.  Okay.  For the
 7   record --
 8                  THE COURT:  I'm beginning to learn
 9   your answer, which is, I'm not making a commitment,
10   but I'll discuss it.
11                  MR. BROCK:  I'm always willing to
12   discuss; and if we can't work it out, I do have some
13   things of substance to say about this, but I'll hold
14   that for another day.
15                  THE COURT:  That's fair enough.
16                  MR. PENNOCK:  We did have a request
17   to speak with members of the jury.
18                  THE COURT:  I didn't know if
19   defendant had a chance to figure anything out or
20   want to respond to that.
21                  MR. BROCK:  I only had a chance to
22   just look at the rule on it very briefly.
23                  THE COURT:  Yeah, I had my lunch hour
24   yesterday.
25                  MR. BROCK:  Right.  And in looking at
```