# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

IN RE: Seroquel Products Liability Litigation          MDL No. 1769

**This Document Relates to:**

Cathy Church v. AstraZeneca Pharm. LP, et al.          Case No. 6:07-cv-01698
Kendra Harper-Howell v. AstraZeneca Pharm. LP, et al.          Case No. 6:08-cv-00622
David McCormick v. AstraZeneca Pharm. LP, et al.          Case No. 6:08-cv-00352
_____

### PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL DEFENSE EXPERT ENDOCRINE AND PSYCHIATRIC MEDICAL EXAMINATIONS OR, ALTERNATIVELY, MOTION FOR PROTECTIVE ORDER

Plaintiffs Kendra Harper-Howell ("Plaintiff Howell"), Cathy Church ("Plaintiff Church"), and David McCormick ("Plaintiff McCormick") seek an order from the Court denying the Motion to Compel Endocrine and Psychiatric Medical Examinations ("Defendants' Motion") filed by AstraZeneca LP and AstraZeneca Pharmaceuticals LP ("Defendants") pursuant to Federal Rule of Civil Procedure 35. As demonstrated below, Plaintiffs have neither put their physical or mental health "in controversy," nor is there "good cause" for such examinations. *See* FED. R. CIV. P. 35. While Plaintiffs have designated case-specific experts on the issue of causation, none of those experts have conducted medical examinations of Plaintiffs and none are offering opinions relating to Plaintiffs' psychiatric conditions. Furthermore, Defendants' request for medical examinations and the filing of their Motion are untimely as the discovery period for these cases ended on May 3, 2010 and Defendants' expert disclosures are due in a matter of days.

Alternatively, should the Court disagree with Plaintiffs' and grant Defendants' Motion, Plaintiffs seek a Protective Order placing reasonable restrictions on the time, location, manner, conditions and scope of the examinations.

## MEMORANDUM OF LAW

### I.
#### BACKGROUND

Pursuant to the Court's Amended Case Management and Scheduling Order (Doc. No. 8), the discovery period in these cases ended on May 3, 2010.[1]  Discovery has been extensive. Thousands of pages of Plaintiffs' medical, pharmacy, employment, education, Social Security, insurance, and Medicare/Medicaid records have been obtained through the parties and the Project Management Office.  Depositions of Plaintiffs, their family members, numerous treating and prescribing physicians, and pharmaceutical sales specialists have been taken.  Plaintiffs have served their expert disclosures.  The deadline for Defendants to serve their expert disclosures in Harper-Howell is June 14, 2010.[2] The deadline for Defendants to serve their expert disclosures in McCormick and Church is June 21, 2010.[3]  All expert depositions must be completed by July 30, 2010.[4]

### A.    *Plaintiff Kendra Harper-Howell*

Plaintiff Howell suffers from bipolar disorder and major depression.[5]  She began taking Seroquel in April 2002[6] and was diagnosed with diabetes in October 2007.[7]

---

[1] *See* Amended Case Management and Scheduling Order (Doc. No. 8).
[2] *See id*.
[3] By agreement of the parties, Plaintiffs Church and McCormick made their expert disclosures on May 24, 2010.  In those cases, Defendants' expert disclosures are due on June 21, 2010.  *See* 5/13/10 and 5/14/10 emails between Plaintiff's counsel and defense counsel (Ex. 1).
[4] *See* Amended Case Management and Scheduling Order (Doc. No. 8).
[5] *See* Excerpts from the Deposition of Praveen Moolamalla, M.D. ("Moolamalla Dep."), 32:2-16 (Ex. 2).
[6] *See* Excerpts from the Deposition of Meena Vyas, M.D. ("Vyas Dep."), 48:7–50:3 (Ex. 3).
[7] *See* Excerpts from the Deposition of Ramon Cruz, M.D. ("Cruz Dep."), 20:17-21:1 (Ex. 4).

Plaintiff Howell designated case-specific endocrinologist, Dr. Kenneth Snow, on May 17, 2010.[8]  Though Dr. Snow conducted a 10-15 minute telephone interview with Plaintiff Howell, he did not perform a medical examination.[9] Plaintiff Howell did not designate a case-specific psychiatrist or other mental healthcare provider.[10]

The depositions of Plaintiff Howell, her father, and six of her treating physicians have been taken over a period of approximately 20 hours.[11] These physicians include four psychiatrists and two family practitioners.  The treatment provided by these physicians spans a period of 18 years.[12]

Defendants have in their possession approximately 3,000 pages of Plaintiff Howell's medical, pharmacy, and Social Security Disability records, some of which date as far back as 1989.[13]  These records contain extensive histories, psychiatric evaluations, questionnaires completed by Plaintiff Howell, documentation of her Seroquel use and potential pre-existing risk factors for diabetes, weight measurements and lab results, including blood/urine glucose and hemoglobin A1c results.[14]  The psychiatric records from Denton County MHMR Center, where Plaintiff Howell received treatment from psychiatrists Dr. Meena Vyas, Dr. Daniel Creson and Dr. Bharat Patel, are approximately 650 pages and contain detailed descriptions of Plaintiff Howell's psychiatric condition and care beginning in 1992.  Drs. Vyas, Creson and Patel were

---

[8] *See* Plaintiff Howell's Expert Disclosures (Ex. 5).
[9] *See id.*
[10] *See* Ex. 5.
[11] *See* Vyas Dep., 1:20 (Ex. 3); Moolamalla Dep., 1:18; 179:17 (Ex. 2); Cruz Dep., 1:19 (Ex. 4); Excerpts from the Deposition of Kendra Harper-Howell ("Howell Dep."), 1:20 (Ex. 7); Excerpts from the Deposition of Bharat Patel , M.D. ("Patel Dep."), 1:20 (Ex. 8); Excerpts from the Deposition of Daniel Creson, M.D. ("Creson Dep."), 1:20; 87:4 (Ex. 9); Excerpts from the Deposition of Richard Perry, M.D. ("Perry Dep."), 1:20–21 (Ex. 10); Excerpts from the Deposition of Kenneth Howell ("K. Howell Dep."), 1:20; 64:22 (Ex. 11).
[12] *See* Patel Dep., 9:7-10:19 (April 1992-Jan. 2007) (Ex. 8); Vyas Dep., 72:5-9 (Feb. 2001-Jan. 2004) (Ex. 3); Creson Dep., 24:11-14; 61:19-64:22 (Aug. 2004-Jan. 2006) (Ex. 9); Moolamalla Dep., 9:23-10:6; 14:20-15:9; 17:22-18:17 (Feb. 2008-present) (Ex. 2); Perry Dep., 17:14-16; 23:7-9 (Nov. 2001-Sept. 2006) (Ex. 10); Cruz Dep., 13:21-14:4; 86:22-24 (Oct. 2006-present) (Ex. 4).
[13] *See* Affidavit of Holly W. Gibson (Ex. 12).
[14] To demonstrate the comprehensiveness of these records, Plaintiff Howell's case-specific endocrinologist, Dr. Kenneth Snow, was able to trace her blood glucose results over a period of 15 years. *See* Ex. 6, pp. 6-7.

questioned at length about their treatment of Plaintiff Howell.  Likewise, Plaintiff Howell was questioned extensively during her deposition about her psychiatric and medical history, her family's psychiatric and medical history, any information she provided to her physicians, her diet and activity level.[15]  The records of Dr. Ramon Cruz, who treats Plaintiff Howell for diabetes, are approximately 300 pages and include visits as recent as April 12, 2010.[16]  Dr. Cruz was also questioned extensively about Plaintiff Howell's medical history, her current medical condition, and his treatment of her diabetes.

At this time, Plaintiff Howell has neither been diagnosed with, nor does she claim to suffer from, diabetic neuropathy, diabetic retinopathy or any other diabetic complication.[17]  During his April 12, 2010 visit with Plaintiff Howell, Dr. Cruz noted that her diabetes remains uncomplicated.[18]  Furthermore, Plaintiff Howell does not contend that she is unable to perform any physical activities due to her diabetes.[19]

**B.**     *Plaintiff Cathy Church*

Plaintiff Church was initially prescribed Seroquel in August 2002 for sleep.[20]  From August 2002 through August 2005, Plaintiff Church's Seroquel was gradually increased as it was not controlling her symptoms.[21]  Plaintiff was diagnosed with diabetes on August 19, 2005 by Dr. Danny Hall.[22]  At the time of her diabetes diagnosis, Plaintiff Church's Seroquel dose had been increased to 750 mg.[23]

---

[15] *See e.g.*, Howell Dep., 42:9-44:19; 85:19-90:6; 123:8-127:4 (Ex. 7).
[16] *See* Cruz Dep., 3:19; 86:22-24 (Ex. 4).
[17] *See* Howell Dep., 84:14-16; 158:18-159:2; 160:13-161:2 (Ex. 7).
[18] *See* Cruz Dep., 86:20-87:17 (Ex. 4).  Dr. Cruz defined "uncomplicated" as having no symptoms as a result of diabetes.  *See id.* at 85:12-17.
[19] *See* Howell Dep., 85:14-16; 87:4-7 (Ex. 7).
[20] *See* Excerpts from the Deposition of Susan Kessler, ("Kessler Dep."), 103:12-103:18 (Ex. 13).
[21] *See* Excerpts from the Deposition of Cathy Church, ("Church Dep."), 187:1-188 (Ex. 14).
[22] *See* CCHURCH/CUMBERLANDCOUNTYHEALTHDEPT/00019 (Ex. 15).
[23] *See* Church Dep., 181:1-25 (Ex. 14).

4

Dr. Hall continued to treat Plaintiff Church's diabetes until January 19, 2006.[24] Plaintiff Church then transferred her care to Dr. Rexford Agbenohevi who continuously treated her diabetes through September 2009.[25] On March 10, 2006, Plaintiff Church was diagnosed with diabetic retinopathy by Dr. Scott Segal.[26] On April 7, 2006, Dr. Agbenohevi diagnosed her with diabetic neuropathy.[27] Currently, she receives her diabetes treatment from Dr. Roy Anderson and Karen Joyce, APN.[28]

Defendants have taken the depositions of Plaintiff Church, two nurse practitioners, two family practitioners and two psychiatrists. The testimony elicited from Dr. Agbenohevi reflected questioning as to Plaintiff Church's diagnosis of diabetes, retinopathy and neuropathy.[29] Notably, Defendants specifically chose not to depose or question Karen Joyce regarding Plaintiff Church's current diabetic condition or Dr. Segal regarding Plaintiff Church's retinopathy.

In addition to deposition testimony, Defendants have in their possession thousands of pages of Plaintiff Church's medical, pharmacy, and Social Security Disability records, some of which date back to at least 1997.  These records contain extensive histories, psychiatric evaluations, ophthalmology reports, neurological testing, questionnaires completed by Plaintiff, documentation of any potential risk factors for diabetes, documentation of Plaintiff's Seroquel use, weight measurements and lab results, including blood/urine glucose and hemoglobin A1c results.  Defendants have access to all psychiatric records for Plaintiff from 1997 to the present.[30] Defendants have access to ophthalmology records from four (4) different facilities detailing the

---

[24] *See* Excerpts from the Deposition of Danny Hall, M.D. ("Hall Dep."), 17 (Ex. 16). Dr. Hall was questioned for roughly three hours regarding his care and treatment of Plaintiff, including his diagnosis of diabetes.
[25] *See* Excerpts from the Deposition of Rexford Agbenohevi, M.D. ("Agbenohevi Dep.") 8:24-9:8 (Ex. 17). Dr. Agbenohevi was questioned with respect to his care and treatment of Plaintiff for nearly 5 hours at deposition.
[26] *See* CCHURCH/MIDDLETNEYECAREASSOCIATES/00007, 00008, 00020 (Ex. 18).
[27] *See* Agbenohevi Dep., 22:5, 34:9-20, 38:12 (Ex. 17); *see also*, CCHURCH/MERCYCLINIC/00020-21 (Ex. 19).
[28] *See* Church Dep., 53:21-54:5, 55:13-24 (Ex. 14).
[29] *See* Agbenohevi Dep., pp. 22, 34-35, 38-39, 64, 166-169 (Ex. 17).
[30] These include records from the following facilities: Lakeside Alternatives, Cumberland Mountain Mental Health, Chelsea Bay Family Psychiatry, Therapeutic Interventions, Dr. Jeffrey Prickett, and LifeCare Family Services.

diagnosis, care and treatment of Plaintiff from 2003, including her treatment for retinopathy.[31] Defendant has access to all records detailing Plaintiff Church's treatment for diabetes and neuropathy from 2005 to present, including records as current as March 22, 2010.[32]

Plaintiff Church designated Elizabeth Gaufberg, M.D., an internist and psychiatrist, as a case-specific expert on May 21, 2010.[33] Dr. Gaufberg has not conducted a physical examination of Plaintiff Church as the deposition testimony and medical records were sufficient to form the basis for her opinion.

## C.   *Plaintiff David McCormick*

Plaintiff McCormick suffers or has suffered from Sleep Disturbance, Irritability and Aggressiveness, Post Traumatic Stress Disorder (PTSD) and Bipolar Disorder/Depression.[34] He began taking Seroquel in May of 2001.[35] He was generally prescribed the Seroquel for unapproved conditions, meaning the Seroquel was given for off–label conditions.  He was diagnosed with diabetes in February of 2007 during an admission to treat a broken ankle at Claiborne County Hospital and Nursing Home.[36]  Subsequently, the use of Seroquel was discontinued. However, after being treated with a variety of medications, he was resumed on Seroquel as this was the only medication he was prescribed which allowed him to sleep.[37]

Plaintiff McCormick also designated case-specific expert Elizabeth Gaufberg, MD, on May 24, 2010.[38]  Dr. Gaufberg has not conducted a physical examination of Plaintiff

---

[31] Plaintiff Church's records are from Middle Tennessee Eye Institute, Baptist Eye Institute, Turner & Boyd PLLC, and Southeastern Retina Associates.
[32] *See* Records for Karen Joyce, CC-22-000013-17 (Ex. 20).
[33] *See* Plaintiff Church's Expert Disclosures (Ex. 21).
[34] *See* Excerpts of Medical Records of Cherokee Health Systems including treatment by Dr. Bilal Ahmed, Dr. Kimberly Quigley, and Dr. Lanny Leftwich ("Cherokee Records") (Ex. 22).
[35] *See* Excerpts of Medical Records of Cherokee Health System ("Cherokee") (Ex. 22) and Medical Center Pharmacy Records ("Pharmacy") (Ex. 23).
[36] *See* Discharge Diagnosis of Claiborne County Hospital ("Claiborne") (Ex. 24)
[37] *See* Excerpts from the Deposition of David McCormick ("McCormick Dep."), 34:20-35:8;165:18-20 (Ex. 25).
[38] *See* Plaintiff McCormick's Expert Disclosures (Ex. 26).

McCormick as the deposition testimony and medical records were sufficient to form the basis for her opinion.

The depositions of Plaintiff McCormick, his mother, and five of his treating physicians have been taken over a period of approximately 22 hours. These physicians include three psychiatrists and two family practitioners. The treatment provided by these physicians spans a period of 11 years.[39]

Defendants have in their possession more than 3,200 pages of Plaintiff McCormick's medical, pharmacy, VA/military, VA claims center, hospitalization, rehabilitation, and Social Security Disability records which date back to 1969.[40] These records contain extensive medical histories, psychiatric evaluations, questionnaires completed by Plaintiff, documentation of any potential risk factors for diabetes, documentation of Plaintiff's Seroquel use, weight measurements and lab results, including blood/urine glucose and hemoglobin A1c results.[41]

The psychiatric records from Cherokee Health Systems where Plaintiff McCormick received treatment from psychiatrists Dr. Bilal Ahmed, Dr. Kimberley Quigley, Dr. Lanny Leftwich, all physicians deposed by Defendants, and a series of other psychiatrists, are approximately 227 pages and document Plaintiff McCormick's psychiatric care as far back as 1999. Further, the records from the VA claims center, approximately 560 pages, document psychiatric treatment as early as 1994. Moreover, Defendants have general family practitioner records of Dr. Charles DeBusk, Dr. William Smith (both deposed by Defendants), and Dr. Mircea - total 575 pages, where Plaintiff McCormick receives care for his diabetes. Defendants are also in possession of Plaintiff's VA claims center records which document medical care as

---

[39] *See* Affidavit of William Bross (Ex. 27).
[40] *See id.*
[41] *See id.*

early as 1969.[42]   At this time, Plaintiff McCormick has not been diagnosed and is not claiming that he suffers from diabetic neuropathy, diabetic retinopathy or any other diabetic complications.

## II.
## ARGUMENT

**A.    In Order To Prevail On Their Motion To Compel, Defendants Must Make An Affirmative Showing That Each Condition As To Which Examinations Are Sought Are Genuinely In Controversy And That Good Cause Exists To Conduct Such Examinations.**

A court may order a party whose mental or physical condition is in controversy to submit to a physical or mental examination only on a motion for good cause.  FED. R. CIV. P. 35(a).  The United States Supreme Court has noted, when interpreting Federal Rule of Civil Procedure 35, a party "who asserts mental or physical injury ... places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury."  *Schlagenhauf v. Holder*, 379 U.S. 104, 119 (1964). The Court explained that, *inter alia*, the "in controversy" requirement is "not met by mere conclusory allegations of the pleadings-nor by mere relevance to the case-but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy…"  *Id*. at 118.  "The ability of the movant to obtain the desired information by other means is also relevant."  *Id*.  Interpreting *Schlagenhauf*, "courts have more recently held that good cause has not been shown where examinations would be needlessly duplicative, cumulative, or invasive."  *Peters v. Nelson*, 153 F.R.D. 635, 638 (N.D. Iowa 1994).  Thus, Defendants must show that there is something to be gained by doing their own independent medical examinations.  *See Shumaker v. West*, 196 F.R.D. 454, 457 (S.D.

---

[42] *See id.*

W.Va. 2000). If they are unable to do so, there is no good cause for the examinations. *See Schlagenhauf*, 379 U.S. 104, 118 (1964).

"Mental and physical examinations are only to be ordered upon a discriminating application by the district judge of the limitations prescribed by the Rule." *Id.* at 121. There is no inherent right to examine the mental or physical health of a party, and such examinations should not be routine. *See id.*; *Hertenstein v. Kimberly Home Health Care*, 189 F.R.D. 620, 623 (D. Kan. 1999). "Even when the 'good cause' and 'in controversy' requirements are met, it is still in the sound discretion of the trial court whether to order the examination." *Hardy v. Riser*, 309 F. Supp. 1234, 1241 (N.D. Miss. 1970).

> **1.     Physical Examinations Of Plaintiffs By Endocrinology Experts: Defendants Have Failed To Make An Affirmative Showing That Plaintiffs' Medical Conditions Are In Controversy And That Good Cause Exists For Allowing Such Examinations.**

Defendants do not dispute that Plaintiffs Howell, Church and McCormick have diabetes.[43] Thus, there is certainly no controversy in that respect. What Defendants appear to be suggesting is that these examinations are necessary because "the timing and etiology of Plaintiffs' alleged diabetes, their diabetes risk factors, and their current health status are all part of the analysis and opinions of AstraZeneca's endocrinology experts."[44] Yet, this Court has noted in the past that medical examinations are not necessarily required in order for the parties' experts to formulate their specific causation opinions:

> The Court accepts as a general proposition that a physician need not necessarily examine a patient, interview that patient, or speak with the patient's treating physician(s) in order to render opinions regarding diagnosis, prognosis, course of treatment and perhaps even causation. In other words, the Court does not deem it

---

[43] *See generally*, Defendants' Motion.
[44] Defendants' Motion, p. 10.

necessarily fatal that an expert medical witness has relied on medical records alone to reach a specific causation opinion.[45]

The true purpose of discovery is to prevent trials from being "carried on in the dark." *Hickman v. Taylor*, 329 U.S. 495, 501 (1947). Defendants are not in the dark and it is unclear what *new* information relating to "the timing and etiology of Plaintiffs' alleged diabetes, their diabetes risk factors, and their current health status" Defendants will gain through these examinations.

Rather than identifying for the Court what kind of information they believe is lacking, Defendants list a series of allegations they anticipate Plaintiffs will make and suggest that these allegations alone put Plaintiffs' physical health in controversy.[46] For example, Defendants argue that Plaintiffs will contend they "either suffer from diabetes complications or may suffer from such complications in the future, even though none of the Plaintiffs is currently under the care of a diabetes specialist."[47] As demonstrated above, Plaintiff Howell does not contend, nor has any treating physician testified, that she currently suffers from diabetic complications or physical limitations.[48] Her testimony alone that she has "swelling of the feet"[49] hardly provides a basis for a medical examination. Similarly, Plaintiff McCormick does not claim to suffer from any diabetic complications at this time.[50] Assuming *Defendants* do not intend to suggest that Plaintiffs Howell and McCormick suffer from diabetic complications, then their current medical conditions are not genuinely "in controversy." It is reasonable to assume that Plaintiffs Howell and McCormick could suffer from diabetic complications in the future; however, Defendants

---

[45] Order granting Defendants' Motion for Summary Judgment in *Haller vs. AstraZeneca Pharmaceuticals LP, et al.* (Doc. 50), p. 45 (February 6, 2009).
[46] Defendants' Motion, p. 10.
[47] *See id.*
[48] *See* Howell Dep., 85:14-16; 87:4-7; 158:18-159:2; 160:13-161:2 (Ex. 7); Cruz Dep., 85:12-17; 86:20-87:17 (Ex. 4).
[49] *See* Defendants' Motion, p. 7.
[50] *See* McCormick Dep., 183:17-184:14 (Ex. 25).

have failed to demonstrate how medical examinations by their expert endocrinologists *at this time* will provide any information relating to diabetic complications they may or may not suffer in the future.

With respect to Plaintiff Church, who has suffered from diabetic neuropathy and diabetic retinopathy since 2006, Defendants already possess voluminous medical records detailing the diagnosis and treatment of those conditions for these past four years. Furthermore, Defendants have deposed two nurse practitioners and two physicians who have treated her for those conditions. As such, Defendants have ample information about Plaintiff Church's current medical condition and have failed to demonstrate the necessity of a medical examination as the desired information can be obtained through other sources.

Defendants further argue that Plaintiffs have put their physical health in controversy because Plaintiffs will contend that "Seroquel, rather than any of Plaintiffs' myriad other overwhelming risk factors, caused Plaintiffs' diabetes," and that they "did not have diabetes until they took Seroquel and but for Seroquel would not have gotten diabetes when they did."[51] Even if it were true that Plaintiffs suffer from a "myriad of other risk factors," Defendants have failed to demonstrate how any examination by their endocrinology experts would reveal any information relevant to Plaintiffs' medical conditions *before* they developed diabetes, including their pre-existing risk factors for diabetes. Defendants already possess the best sources of information relating to Plaintiffs' pre-existing risk factors, the timing of their Seroquel use, and the onset of their diabetes – those being Plaintiffs' medical records, their deposition testimony, and the testimony of multiple treating physicians. Thus, Defendants have once again failed to demonstrate a need for these examinations.

---

[51] Defendants' Motion, p. 10.

Defendants further argue that Plaintiffs' medical records and deposition testimony leave open questions and that there are gaps in Plaintiffs' current levels of weight and glucose control, and that no doctors have evaluated Plaintiffs' current medications to determine whether they are receiving effective treatments.[52] Though Defendants' possess all deposition transcripts and Plaintiffs' medical records, they provide absolutely no support for these statements. On the contrary, Defendants have abundant information about Plaintiffs' current weights, glucose control and medications. By way of example, records provided by Dr. Ramon Cruz (Harper-Howell) dated April 12, 2010, provide Plaintiff Howell's current weight, her body mass index (BMI), her current medications, and the results of a urinalysis test which was negative for glucose.[53]

Defendants further argue that no doctor has done a comprehensive review of Plaintiffs' medical history to determine when metabolic abnormalities likely developed, or to determine the extent to which pre-existing risk factors contributed to Plaintiffs' diabetes, or to evaluate whether Plaintiffs are receiving appropriate treatment. Again, however, all of the information needed for Defendants' endocrinologist to make such an assessment is contained within Plaintiffs' medical and the deposition testimony obtained through discovery. Indeed, Defendants have failed to articulate with any specificity whatsoever what information is allegedly lacking that will prevent "a true endocrinologist"[54] from making a thorough assessment. Without such a showing, there is no justification for requiring that Plaintiffs undergo unnecessary and burdensome examinations.

2.    **Mental Examinations Of Plaintiffs By Psychiatry Experts: Defendants Have Failed to Demonstrate That Plaintiffs Have Put Their Mental Health In Controversy And That Good Cause Exists For Allowing Such Examinations.**

---

[52] *See id.* at p. 12.
[53] *See* Medical Record of Dr. Ramon Cruz, April 12, 2010, which was attached as Exhibit 4 to his deposition (Ex. 28).
[54] Defendants' Motion, p. 12.

Plaintiffs are not making a claim for psychiatric injuries.  Therefore, they have not put their mental health in controversy.  This is evidenced by the fact that their case-specific experts have offered no opinions about their psychiatric conditions.   Defendants assert that "a complete picture of each Plaintiff's past and present mental condition is *helpful* to the analysis and opinions of AstraZeneca's psychiatric experts."[55] Thus it seems that even Defendants acknowledge that the requested psychiatric evaluations are not *necessary*. As demonstrated above,  "a complete picture" of Plaintiffs' past and current mental conditions can be ascertained through their medical records and depositions, as well as the numerous depositions taken of their mental health providers.  In the Harper-Howell case for example, Defendants deposed ***four*** of Plaintiff Howell's treating psychiatrists.

Despite Defendants' assertions to the contrary, Plaintiffs do not intend to "criticize an AstraZeneca expert for failing to conduct a psychiatric examination."[56] As Plaintiffs' experts did not conduct psychiatric examinations of Plaintiffs, Defendants' experts are at no disadvantage by having to rely on Plaintiffs' medical records and the depositions of Plaintiffs and their treating physicians.

Defendants argue that Plaintiffs will contend they "have experienced mental or emotional pain and suffering as a result of diabetes and Plaintiffs' Seroquel use."[57]  To be clear, Plaintiffs do not claim they suffered mental or emotional pain and suffering as a result of taking Seroquel.  Rather, these damages claims relate to Plaintiffs' development of diabetes.  It is widely accepted that a plaintiff does not place her mental health in controversy merely by pleading mental anguish or emotional distress resulting from another injury or tort.  *See, e.g.*, *Jarrar v. Harris*, 2008 U.S. Dist. LEXIS 57307, *12 (E.D. N.Y. 2008); *Nolan v. Int'l Bhd. Of Teamsters Health &*

---

[55] Defendants' Motion, p. 12 (emphasis added).
[56] *Id*. at p. 13.
[57] *Id*. at p. 10.

*Welfare & Pension Funds*, 199 F.R.D. 272, 275 (N.D. Ill. 2001); *Ricks v. Abbott Labs.*, 198 F.R.D. 647, 648–49 (D. Md. 2001); *Turner v. Imperial Stores*, 161 F.R.D. 89, 95 (S.D. Cal. 1995); *Bennett v. White Lab.*, 841 F. Supp. 1155, 1158 (M.D. Fla. 1993).   There is a distinction between "garden variety" emotional injuries and emotional injuries requiring an independent mental health examination.  *Jarrar*, 2008 U.S. Dist. LEXIS, *5.  In these cases, Plaintiffs' claims of mental anguish and pain and suffering simply do not provide justification for psychiatric evaluations.

Defendants suggest Plaintiffs will contend they "are not reasonably able or will not be reasonably able to control their diabetes, and caring for their diabetes seriously affects their quality of life."[58]   There is no genuine dispute or controversy that persons who suffer from mental illness have difficulty controlling a complicated disease such as diabetes which, for example, requires maintenance of a strict diet and close monitoring of glucose levels.  Although Plaintiffs have not yet been able to depose Defendants' experts in these cases as they have not yet been designated, Defendants' endocrinology and psychiatric experts in other Seroquel cases have generally agreed that diabetes is a serious condition that generally affects all persons with this disease.[59]  Psychiatric examinations of Plaintiffs by Defendants' experts would lend absolutely nothing of value to these issues.  Furthermore, Plaintiffs were already questioned in their depositions about the effect diabetes has had on their lives.[60]  Thus, any further examination into this subject matter would be unnecessary and duplicative.

---

[58] Defendants' Motion, p. 10.
[59] *See, e.g.*, Excerpts from the Deposition of Eugene Barrett, M.D., Ph.D. ("Barrett Dep."), 107:18–25 (Ex. 29); Excerpts from the Deposition of James Lenhard, M.D. ("Lenhard Dep."), 34:14–22 (Ex. 30).
[60] *See* Howell Dep., 84:1-85:10 (Ex. 7); Church Dep., 85-87, 94-97, 121-122, 211-213 (Ex. 14); McCormick Dep. 184: 21–185:6 (Ex. 25).

Defendants further argue that Plaintiffs will contend that "Seroquel was either ineffective to treat Plaintiffs' serious mental illness, or Plaintiffs did not need the Seroquel at all."[61]  Once again, Defendants fail to demonstrate how examinations by their experts *at this time* will provide any insight into whether Plaintiffs needed Seroquel at the time it was prescribed or whether it was ineffective at the time Plaintiffs were taking Seroquel.  Such inquiries are better directed at the physicians who prescribed Seroquel - not for Plaintiffs.  In fact, Plaintiffs' treating psychiatrists were all questioned during their depositions about these very issues.[62]  Furthermore, even if such questions were appropriately directed at Plaintiffs, they were already questioned in their depositions about whether Seroquel worked for them.[63]  Any further examination of Plaintiffs into this subject matter would be unnecessary and duplicative.

Defendants also argue that examinations by their experts are necessary because Plaintiffs may contend that "there were more effective treatments that carried less risk."[64]  This claim is based on the scientific literature relating to the efficacy and safety risks of Seroquel and on Defendants' internal documents which reveal what Defendants' knew about the efficacy, or lack thereof, and the metabolic risks of Seroquel.  Plaintiffs do not have any knowledge about whether there are more effective treatments that carry less risk.  This is an issue to be addressed by the physicians and experts – not Plaintiffs.  Thus, Defendants have failed to demonstrate how psychiatric examinations by Defendants' experts would have any bearing on this issue.

---

[61] Defendants' Motion, p. 10

[62] *See* Vyas Dep. (Howell), 45:13-22; 49:6-50:3; 58:8-16 (Ex. 3); Creson Dep. (Howell), 60:14-17; 67:21-25; 69:15-21 (Ex. 9); Patel Dep. (Howell), 53:24-54:6 (Ex. 8); Moolamalla Dep. (Howell), 19:1-20:22; 78:9-13 (Ex. 2); Kessler Dep. (Church), 61-62, 64-68, 107-109 (Ex. 13); Excerpts from the Deposition of Aysha Meloukheia ("Meloukheia Dep.") (Church), 165-166, 172-173 (Ex. 35); Excerpts from the Deposition of Nile Remsing ("Remsing Dep.") (Church), 92-93 (Ex. 36); Excerpts from Deposition of Bilal Ahmed ("Ahmed Dep.") (McCormick) 34:21 – 35:2 (Ex. 31); Excerpts from Deposition of Dr. Lanny Leftwich ("Leftwich Dep.") (McCormick) 153:5–22 (Ex. 32).

[63] *See* Howell Dep., 76:16-77:2 (Ex. 7); Church Dep., 187-188 (Ex. 14); McCormick Dep., 34:20-35:8;165:18 (Ex. 25).

[64] Defendants' Motion, p. 10.

In sum, Plaintiffs' mental health is not "really and genuinely in controversy." *Schlagenhauf*, 379 U.S. at 118. There is no dispute that Plaintiffs have suffered from mental health issues or, in Plaintiff Church's case insomnia, and that they were prescribed Seroquel for a time to deal with those issues. However, these cases concern Plaintiffs' development diabetes as a result of their Seroquel use. Even if the Court finds that Plaintiffs' mental health is in controversy, there is no good cause to conduct a psychiatric examination as Defendants have failed to demonstrate anything that will be gained from such an examination.

In the New Jersey litigation, Defendants sought psychiatric examinations pursuant to New Jersey Court Rule 4:19, which by its plain language is a different standard than Rule 35. Specifically, the New Jersey rule does not include a "good cause" requirement.[65] Nevertheless, Plaintiffs do not contend that they suffered mental or emotional anguish as a result of taking Seroquel. Rather, Plaintiffs allege that they suffer mental and emotional anguish as a result of diabetes. Judge Mayer did *not* preclude plaintiffs in the New Jersey litigation from introducing such evidence. Moreover, as previously noted, Plaintiffs do not intend to cross-examine Defendants' witnesses or make arguments as to Defendants' failure to conduct independent psychiatric examinations. With respect to whether Plaintiffs' mental or emotional condition has improved absent Seroquel, Plaintiffs' retained experts have offered no such opinions and Plaintiffs do not intend to make any such argument. As such there is no good cause for a psychiatric evaluation.[66]

**B.     Defendants' Request For Defense Expert Endocrine And Psychiatric Medical Examinations And Their Motion To Compel Same Are Untimely.**

---

[65] *See* N.J. COURT RULES, R. 4:19 (Ex. 34).

[66] The supplemental authority filed by Defendants on June 9, 2010 from Delaware is inapposite. *See* Notice of Supplemental Authority, p. 1. The provision relating to medical examinations in that case was "agreed to by the parties." *Id.* The parties in this case do not agree. Further, the agreement was entered weeks before Defendants expert reports were even due. Here, Defendants have delayed their motion to just days before the deadline for expert reports in this case. *See id.* at Exhibit 1, p. 3.

A motion for an independent medical examination is left to the court's discretion and may be dismissed for being untimely. *See Lamour v. Applied Credit*, 2003 U.S. Dist. LEXIS 27430, *5–6 (S.D. Fla. 2003); *Miksis v. Howard*, 106 F.3d 754, 759 (7th Cir. 1997). This Court's Case Management and Scheduling Order specifically states that "each party shall timely serve discovery requests so that the Rules allow for a response prior to the discovery deadline . . . . The Court may deny as untimely all motions to compel filed after the discovery deadline."[67]

In *Lamour*, the defendants filed a Rule 35 motion for a medical examination two weeks before the discovery deadline. *Lamour*, 2003 U.S. Dist. LEXIS 27430 at *5. "It is profoundly unreasonable for a party to issue a Rule 35 examination request some two weeks shy of the discovery cut off date, with the expectation that an examination could be concluded and the requisite detailed written report delivered to the opposing party within that time frame…" *Id.*

Here, Defendants waited until May 18, 2010, two weeks *after* the close of discovery to request the examinations of Plaintiffs.[68] Defendants acknowledge they would need to complete the examinations before their expert reports are due.[69] Yet, they waited until May 28, 2010 to file their Motion – just 17 days before their expert disclosures are due in Harper-Howell and 22 days before their disclosures are due in McCormick and Church. Defendants' disclosures are due in the Harper-Howell case on June 14, 2010 – *just four days from now*. Defendants' disclosures are due in the McCormick and Church cases only a week later. Defendants' position that two examinations of each Plaintiff can be accomplished prior to their expert disclosure deadline is unrealistic.

---

[67] Amended Case Management and Scheduling Order (Doc. 8), p. 3.
[68] *See* 5/18/10 e-mail from defense counsel to Plaintiff's counsel (Ex. 33).
[69] *See id.*

Defendants' assertion that "Plaintiffs routinely dismiss cases" does not excuse their failure to diligently conduct discovery in Harper-Howell, Church and McCormick.[70] Defendants have now delayed to the point where the deadlines for their expert reports, and possibly their experts' depositions, will need to be extended in order for their experts to conduct these examinations. Because Defendants' motion is untimely and unduly burdensome, Plaintiffs respectfully request that it be denied.

**C.     Alternatively, If Defendants' Experts Are Permitted To Conduct Physical And/Or Mental Examinations Of Plaintiffs, Plaintiffs Request That The Examinations Be Limited.**

Should the Court grant Defendants' request in whole or in part, Plaintiffs respectfully request the Court enter Protective Orders pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, placing certain limitations on the experts' examinations of Plaintiffs.

With respect to Plaintiff Howell, Defendants claim that the parties should be on "equal footing" and references the fact that Plaintiff Howell's expert endocrinologist, Dr. Kenneth Snow, conducted a phone interview of Plaintiff Howell.[71] None of the experts retained by Plaintiffs Howell, McCormick or Church performed physical or psychiatric examinations of Plaintiffs. Therefore, at most, Plaintiffs would request that Defendants' expert endocrinologist's examination be limited to a 10-15 minute telephone interview with Plaintiff Howell, which is the amount of time Dr. Snow spoke with her, and that Plaintiff Howell's counsel be allowed to listen.

If the Court permits the medical and psychiatric examinations, Plaintiffs request the examinations take place in the Plaintiffs' hometowns.  Requiring Plaintiffs to travel to Florida

---

[70] Defendants' Motion, p. 14.
[71] Defendants' Motion, p. 12.

and/or Maryland to comply with Defendants' belated discovery requests would create an unreasonable and undue burden on Plaintiffs who already suffer from severe mental illnesses. Plaintiff Howell is so uncomfortable traveling alone that her attorney had to pick her up in Denton, Texas and transport her the 50 miles to her deposition in Dallas.[72] Likewise, Plaintiff McCormick is uncomfortable travelling any significant distance. He continues to suffer from his broken ankle, and finds it difficult to sit for extended periods of time. Furthermore, the potential stress caused by such travel could aggravate Plaintiffs' mental and physical conditions and possibly skew any results of the examinations.

Additionally, any defense examination of Plaintiffs cannot be considered an "independent" examination. In a physical or mental examination, the defense-retained doctor is hardly unbiased, and as such, that doctor should be treated as the defense representative that he or she is. Thus, when being examined, Plaintiffs have full right to have counsel present, as they would at a deposition, and defendants' interest is accounted for by the presence of their retained doctor. If these examinations are permitted to proceed, Plaintiffs request that they be videotaped and that Plaintiffs be allowed to have counsel present. Federal courts allow third parties and recording devices to be present during Rule 35 examinations if their presence is unobtrusive. *See, e.g.*, *T.B. v. Chico Unified Sch. Dist.*, 2009 U.S. Dist. LEXIS 32653, *9 (E.D. Cal. 2009); *Bennett*, 841 F. Supp. at 1159.

### III.
### CONCLUSION

Plaintiffs respectfully request the Court deny Defendants' Motion to Compel Defense Expert Endocrine and Psychiatric Medical Examinations. Alternatively, Plaintiffs request that

---

[72] *See* Howell Dep., 15:1-2 (Ex. 7).

the Court enter a Rule 26(c) Protective Order limiting the defense expert examinations in accordance with part C above.

Respectfully submitted on this the 10th day of June, 2010,

By:   /s/ Holly W. Gibson
       Holly W. Gibson (Tex Bar No.: 24006035)
       Blizzard, McCarthy & Nabers
       440 Louisiana, Suite 1710
       Houston, Texas 77002
       Telephone: (713) 844-3750
       Facsimile:  (713) 844-3755
       hgibson@blizzardlaw.com

       /s/ William L. Bross
       Heninger Garrison Davis, LLC
       2224 1st Avenue North
       Birmingham, AL 35203
       Telephone: (205) 326-3336
       Facsimile:  (205) 326-3332
       william@hgdlawfirm.com

       /s/ David J. Dickens
       The Miller Firm, LLC
       The Sherman Building
       108 Railroad Avenue
       Orange, VA 22980
       Telephone: (540) 672-4224
       Facsimile: (540) 672-3055
       DDickens@millerfirmllc.com

       *Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on June 10, 2010, the foregoing Plaintiffs' Response In Opposition To Defendants' Motion To Compel Defense Expert Endocrine And Psychiatric Medical Examinations Or, Alternatively, Motion for Protective Order, has been served on all Defendants' counsel listed below via electronic mail and via Federal Express.

Stephen J. McConnell
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
Telephone: (215) 994-4000
Facsimile: (215) 994-2222
stephen.mcconnell@dechert.com

Chris S. Coutroulis
Robert L. Ciotti
Carlton Fields, P.A.
Corporate Center Three at International Plaza
4221 W. Boy Scout Blvd.
Tampa, FL 22607
Telephone: (813) 223-7000
Facsimile: (813) 229-4133
ccoutroulis@carltonfields.com
rciotti@carltonfields.com

Counsel for AstraZeneca Pharmaceuticals LP