**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**IN RE: Seroquel Products Liability Litigation**     Case No.  **6:06-md-1769-Orl-22DAB**

*Individual Cases:*
Cathy Church v. AstraZeneca LP, et al.                  Case No. **6:07-cv-01698-Orl-22DAB**
Kendra Harper-Howell v. AstraZeneca LP, et al.     Case No. **6:08-cv-00622-Orl-22DAB**
David McCormick v. AstraZeneca LP, et al.           Case No. **6:08-cv-00352-Orl-22DAB**

_____/

**ORDER**

This cause came on for consideration without oral argument on the following motions filed herein:

| | |
|---|---|
| **MOTION:** | **ASTRAZENECA'S MOTION TO COMPEL DEFENSE EXPERT ENDOCRINE AND PSYCHIATRIC MEDICAL EXAMINATIONS (Doc. No. 1656 in MDL)[1]** |
| **FILED:** | **MAY 28, 2010** |
| **THEREON** it is **ORDERED** that the motion is **GRANTED in part** and **DENIED in part** as set forth herein. | |
| **MOTION:** | **PLAINTIFFS' MOTION FOR PROTECTIVE ORDER (Doc. No. 1657 in MDL)** |
| **FILED:** | **June 10, 2010** |
| **THEREON** it is **ORDERED** that the motion is **GRANTED in part** and **DENIED in part** as set forth herein. | |

AstraZeneca seeks an order permitting its experts to perform endocrine and psychiatric examinations of these three Plaintiffs, Cathy Church, Kendra Harper-Howell, and David McCormick, whose cases have been designated to go to trial in January 2011 as Trial Group 1 ("Group 1

---

[1]The motion to compel was also docketed in the individual cases and this ruling applies in all three cases.

Plaintiffs"). The discovery deadline for these cases is July 30, 2010; AstraZeneca's expert designation deadlines are June 14 and 21, 2010 in the three cases, and depositions must be completed by July 30, 2010.

AstraZeneca argues that it is entitled to have its experts examine these Group 1 Plaintiffs because they have put into controversy their physical and mental health, and good cause exists for conducting the examinations. Group 1 Plaintiffs are opposed to the examinations and seek protective orders preventing the examinations on the basis that Plaintiffs have not put their physical and mental health "in controversy," there is not good cause for such examinations, Plaintiffs' own experts have not conducted such examinations, and none of Plaintiffs' experts are offering opinions relating to Plaintiffs' psychiatric conditions.

Because the Court finds there is good cause for endocrine examinations but not for psychiatric examinations of Plaintiffs, the Motion to Compel is **GRANTED in part** and **DENIED in part** and Plaintiffs' Motion for Protective Order is **GRANTED in part** and **DENIED in part** as set forth below.

**Standard of Review**

Under Federal Rule of Civil Procedure 35, the Court may order a party to submit to a physical or mental examination by a licensed examiner when the physical or mental condition of that party is in controversy. FED. R. CIV. P. 35(a). Rule 35 provides, in relevant part:

> (a) (1) In General. The court where the action is pending may order a party whose mental or physical condition-including blood group-is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. . . .
> (2) Motion and Notice; Contents of the Order.
> The order:
>  (A) may be made only on motion for good cause and on notice to all parties and the person to be examined; and
>  (B) must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it.

Fed. R. Civ. P. 35.

It is well established that this rule requires courts to determine whether the matter for which the medical examination is sought is "in controversy" and whether "good cause" for the requested examination exists-inquiries that are "necessarily related." *See Schlagenhauf v. Holder*, 379 U.S. 104, 118-19 (1964). These standards are more restrictive than the broad scope of discovery set forth by Federal Rule of Civil Procedure 26, and the burden falls on the party moving for the independent medical examination to demonstrate their satisfaction. *See id.* at 117-19.

The "in controversy" and "good cause" requirements of Rule 35 "are not met by mere conclusory allegations of the pleadings-nor by mere relevance to the case-but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." *Id.* at 118-19. As another judge of this District has observed:

> [D]espite these requirements, limited situations exist where the pleadings alone may suffice to show that the matters for which the examination are sought are "in controversy," and there is "good cause" to conduct the examination. In this regard, the Supreme Court has recognized that the pleadings in a negligence action where the plaintiff asserts mental or physical injury place that mental or physical injury "clearly in controversy and provide[ ] the defendant with good cause for an examination to determine the existence and extent of such asserted injury."

*Roberson v. Church*, 2009 WL 5214989 (M.D. Fla. Dec. 29, 2009) (quoting *Schlagenhauf v. Holder*, 379 U.S. at 118-19).

**Application**

Plaintiff Harper-Howell, who suffers from bipolar disorder and major depression, began taking Seroquel in April 2002 and was diagnosed with diabetes in October 2007. Plaintiff Church was initially prescribed Seroquel in August 2002 for insomnia associated with depression, and she was diagnosed with diabetes in August 2005. Plaintiff McCormick, who suffers from several conditions

including Post Traumatic Stress Disorder (PTSD) and bipolar disorder/depression, began taking Seroquel in May 2001 and was diagnosed with diabetes in February 2007. Although the use of Seroquel was discontinued, he began taking Seroquel again in 2009.[2]

AstraZeneca seeks examinations of these Plaintiffs by its endocrine and psychiatric experts, arguing that the Group 1 Plaintiffs have put their physical and mental health into controversy and good cause exists to require them to submit to examinations. Plaintiff argues that they have not put either their physical or mental health in controversy and there is not good cause for such examinations. Doc. No. 1657. As such, they seek protective orders prohibiting the examinations, or setting limitations.

*A. Physical Examinations*

AstraZeneca argues that the Group 1 Plaintiffs have put their medical conditions "in controversy" and there is "good cause" to order the physical examinations because these Plaintiffs have alleged they developed diabetes while taking Seroquel, Seroquel caused or substantially contributed to their diabetes, they have suffered or will suffer additional physical harm and are at risk of numerous health consequences secondary to their diabetes. AstraZeneca argues none of the Group 1 Plaintiffs is currently under the care of an endocrinologist who can testify from personal experiences as to Plaintiffs' current level of diabetic control or related consequences; they have received differing amounts of care at different times; and Plaintiffs' testimony varies from the symptoms and diagnoses listed in their medical records.

Plaintiffs do not dispute those arguments, but argue instead that AstraZeneca should not allowed to conduct independent medical examinations because, even though Plaintiffs have designated case-specific experts on the issue of causation, none of Plaintiffs' own experts have

---

[2]Citations to the record for these background facts is found in Doc. No. 1657.

conducted medical examinations of Plaintiffs. Plaintiffs also argue that physical examinations are not necessary because "[t]housands of pages of Plaintiffs' medical, pharmacy, employment, education, Social Security, insurance, and Medicare/Medicaid records have been obtained through the parties and the Project Management Office. Depositions of Plaintiffs, their family members, numerous treating and prescribing physicians, and pharmaceutical sales specialists have been taken." Doc. No. 1657. Plaintiff Howell designated Dr. Kenneth Snow, who only conducted a 10-15 minute telephone interview with Plaintiff Howell, and did not perform a medical examination. Plaintiffs Church and McCormick have designated Elizabeth Gaufberg, M.D., an internist and psychiatrist, as their case-specific expert. Dr. Gaufberg did not conduct a physical examination of either of these Plaintiffs, but relied on the deposition testimony and medical records for her opinions.

Plaintiffs argue their current diabetic conditions are undisputed and it is "unclear" what new information AstraZeneca hopes to gain relating to "the timing and etiology of Plaintiffs' alleged diabetes, their diabetes risk factors, and their current health status" through these examinations. Plaintiff concedes that Plaintiffs could suffer from diabetic complications in the future, but argues AstraZeneca has failed to demonstrate how current medical examinations by expert endocrinologists will provide information about future diabetic complications, or new information not already contained in the "extensive" records. AstraZeneca argues that no treating doctor has done a comprehensive review of past history or current health to determine when metabolic abnormalities likely developed or to determine the extent to which pre-exiting risk factors caused or contributed to Plaintiffs' diabetes. They similarly argue that the records and deposition testimony are the best sources for information of Plaintiffs' pre-existing risk factors for diabetes, and not a current examination because Plaintiffs have clearly already developed the condition.

At the crux of the Group 1 cases are the Plaintiffs' allegations that they were damaged when they developed diabetes while taking Seroquel. They allege AstraZeneca was negligent in the design, manufacturing, and marketing of Seroquel which caused Plaintiff Church to "suffer physical personal injury, including but not limited to, being diagnosed with diabetes mellitus, medical expenses, future medical expense." Church Complaint ¶ 67; *see also* McCormick Complaint at ¶ 62 ("As a direct and proximate result of said negligent acts by Defendants, Plaintiff has suffered injuries and damages.") Plaintiff Harper-Howell alleges "as a result of her use of Seroquel, Plaintiff contracted diabetes and suffered severe, permanent and disabling injuries." Howell Complaint ¶ 67. Plaintiffs allege that Seroquel "increased the users' risks of weight gain, hyperglycemia, metabolic syndrome, diabetes, and other illnesses." *See, e.g.*, Harper-Howell Complaint ¶ 74.

Given these allegations in Plaintiffs' cases, they can hardly argue that their physical health is not "in controversy" – it is at the very center of it. *See* Roberson v. Church, 2009 WL 5214989, *1 (M.D. Fla. Dec. 29, 2009) (in negligence cases, physical injuries are "clearly in controversy"). As AstraZeneca points out, the timing and etiology of Plaintiffs' diabetes, their diabetes risk factors, and their current health status are important parts of the causation opinions for AstraZeneca experts, as well as Plaintiffs' experts. *See, generally Guinn v. AstraZeneca Pharms. LP,* 598 F. Supp. 2d 1239 (M.D. Fla. 2009), *aff'd,* No. 09-11104, 2010 WL 1286947 (11th Cir. April 6, 2010); *Haller v. AstraZeneca Pharms. LP,* 598 F. Supp. 2d 1271 (M.D. Fla. 2009). In the only other Seroquel case to proceed to trial, AstraZeneca's expert endocrinologist examined the plaintiff. *Ted & Deborah Baker v. AstraZeneca Pharm. LP*, Case No. MID-L-001099-07 MT (N.J. Super. Ct. Law Div. Middlesex County)[3].

---

[3]In arguing against the mental examinations, Plaintiffs argue that the standard under New Jersey Court Rule 4:19 is different than Federal Rule of Civil Procedure 35 because it does not require good cause.

Moreover, Plaintiffs' choice of litigation strategy and trial preparation decisions in prosecuting the case do not dictate AstraZeneca's strategy in defending the claims against it. From the standpoint of a *Daubert* challenge, if a competent expert's normal procedure is to conduct an interview to determine the cause of a patient's weight gain, rather than solely a review of selections from the patient's medical records, then AstraZeneca's experts should not be handicapped in their assessments from conducting such interviews or examinations. *See Guinn v. AstraZeneca Pharmaceuticals LP*, 2010 WL 1286947, *8 (11th Cir. Apr. 6, 2010) (where expert admitted that she would normally conduct an interview to determine the cause of a patient's weight gain, and had only reviewed selections from medical records prepared by attorneys in case, deviation from normal practice cast doubt on method used to assess weight gain).

*B. Mental Examination*

AstraZeneca also argues the Group 1 Plaintiffs have put their mental conditions "in controversy" and there is "good cause" to order mental examinations for all three because they allege they have suffered mental and emotional distress as a result of their Seroquel use, and they would not have taken Seroquel had they known of its risks because they could have taken a safer alternative or taken nothing at all. AstraZeneca argues the mental examinations would generate "a complete picture of each Plaintiff's past and present mental condition" which would be "helpful to the analysis and opinions of AstraZeneca's psychiatric experts." Doc. No. 1656 (sealed) at 12.

Plaintiffs respond that psychiatric examinations are not warranted because Plaintiffs are not making a claim for psychiatric injuries, they have not put their mental health in controversy, and none of Plaintiffs' case-specific experts is offering an opinion relating to Plaintiffs' underlying psychiatric conditions. Plaintiffs argue (again) that "a complete picture" of Plaintiffs' past and current mental conditions can be ascertained through their medical records and depositions, as well as the numerous

depositions taken of their mental health providers. "To be clear, Plaintiffs do not claim they suffered mental or emotional pain and suffering as a result of taking Seroquel. Rather, these damages claims relate to Plaintiffs' development of diabetes." Doc. No. 1657 at 13.

As to Plaintiffs' other allegations of mental or emotional pain and suffering from diabetes that AstraZeneca points to, *i.e.*, Seroquel was ineffective to treat Plaintiffs' serious mental illness, or Plaintiffs did not need it at all, or there were more effective treatments that carried less risk, Plaintiffs argue that such inquiries are better directed at the physicians who prescribed Seroquel, not to the Plaintiffs themselves, and the treating psychiatrists have already been deposed on these issues. Alternatively, the scientific literature concerning the efficacy and the risks of Seroquel, not a mental examination, addresses whether there were more effective treatments. Mental examinations of Plaintiffs are also not necessary to address Plaintiffs' argument that caring for diabetes seriously affects the quality of life because experts can testify in general that diabetes is a serious condition that generally affects all persons with the disease, and a psychiatric examination would not add value to the issue; Plaintiffs' testimony on the issue is sufficient

Other courts have held that the "garden variety" emotional distress claims does not warrant a mental examination of a plaintiff: "'Emotional distress' is not synonymous with the term 'mental injury,'" and in order to establish that a party's mental condition is in controversy, the moving party "must show more than that the party in question has claimed emotional distress." *Turner v. Imperial Stores*, 161 F.R.D. 89, 97 (S.D. Cal.1995); *In re Methyl Tertiary Butyl Ether (""MTBE") Products Liability Litigation,* 528 F.Supp.2d 303, 319 (S.D. N.Y. 2007). In general, a mental condition is "in controversy" when a plaintiff alleges mental disorders or psychiatric injuries, or consults psychologists in connection with the claimed emotional distress. *See Turner*, 161 F.R.D. at 93-95 (collecting cases).

When the plaintiff's emotional distress is "garden variety," and no more than "that which is normally experienced by plaintiffs under [the] circumstances," courts have not ordered plaintiffs to submit to mental exams. *MTBE Products Liability Litigation*, 528 F.Supp.2d at 319 (citing *Turner*, 161 F.R.D. at 93, 95-97).

In this case, it is the Plaintiffs' prior, pre-existing psychiatric conditions which led to the prescription of Seroquel; mental health treatment did not begin solely as a result of alleged injuries from Seroquel. Plaintiffs do not intend to allege they suffered mental or emotional pain and suffering as a result of taking Seroquel; they will be bound by this representation at trial. Plaintiffs do not intend to cross-examine AstraZeneca's witnesses or make arguments as to AstraZeneca's failure to conduct independent psychiatric examinations. Plaintiffs also represent that their retained experts have offered no opinions as to whether Plaintiffs' mental or emotional condition has improved absent Seroquel, and Plaintiffs do not intend to make any such argument.

AstraZeneca has failed to show "good cause" warranting mental health examinations of the Group 1 Plaintiffs pursuant to Rule 35. However, the Court will preclude Plaintiffs from introducing evidence that he or she suffers mentally or emotionally as a result of taking Seroquel and that his or her mental or emotional condition has improved absent the use of Seroquel. Plaintiffs will also be precluded from cross-examining or making arguments as to AstraZeneca's failure to conduct an independent psychiatric examination of the Plaintiffs.

*C. Untimely Request*

Plaintiffs argue AstraZeneca's request is untimely in that the Amended Case Management and Scheduling Order set the discovery deadline in the Group 1 Plaintiffs' cases for May 3, 2010, and that deadline has passed. AstraZeneca responds, "Had each of these Plaintiffs brought a stand alone lawsuit, earlier examinations might have been practical, but these cases are proceeding through

discovery in groups, with the overwhelming majority of lawsuits being dropped late in the discovery period or after discovery has closed. Of the fifteen original Group 1 discovery cases, there are only three left. . . . It would have been needlessly wasteful and unproductive to try to schedule and conduct examinations during a time when both sides surely knew that most Plaintiffs' claims would not survive through the production of expert reports. . . With only three remaining cases, AstraZeneca believes these examinations can be completed before the deadlines for its expert reports and/or before its experts are deposed and is willing to bear travel costs or otherwise work with Plaintiffs' counsel to accommodate their schedules and minimize any inconvenience."

The Court finds that there are unusual circumstances in this MDL and the groupings designed by the trial judge, sufficient to deviate from strict adherence to the discovery deadlines, as usually established in a single-plaintiff negligence case. Practical experience has shown in this MDL that the groupings are constantly being redefined and narrowed by dismissals as discovery progresses. The Motion will not be denied on the basis it was untimely filed. The deadlines for expert depositions have not yet passed and six weeks remains in the discovery period[4].

*D. Logistical Concerns*

Plaintiffs request that the physical examinations be limited to one 15 minute phone interview of Plaintiff Howell, as Plaintiffs' expert, Dr. Snow, decided to do in Howell's case. Alternatively, if the examinations are ordered, Plaintiff asks that they be performed in Plaintiffs' hometowns because the travel would present daunting obstacles for two of the Plaintiffs and "possibly skew any results of the examinations." AstraZeneca has agreed to pay for Plaintiffs' travel expenses and "will attempt to conduct the examinations at a location convenient to Plaintiffs." Doc. 1656 (sealed version) at 15. However, AstraZeneca contends it is most "convenient" to conduct the examinations where

---

[4] According to the PMO Status Report No. 34, records for Plaintiff McCormick from Lincoln Trail Behavioral Health Center will not be available until June 30, 2010. Doc. No. 1659.

AstraZeneca's experts are, in Florida or Maryland, which is not at all convenient for Plaintiffs. *Id.* at 15 n. 53. AstraZeneca will be required to schedule the examinations within 100 miles of Plaintiffs' hometowns[5].

AstraZeneca agrees to limit the scope of the physical examination to a "history and physical, and in the case of the endocrinologists, a simple blood test – which Plaintiffs need as part of routine good health care." *Id.* Plaintiffs propose at the physical examinations to have counsel present, as well as Plaintiffs' expert physicians, and that the examinations be videotaped. As a district court weighing limitation for an independent medical examination explained:

> To restrict a physician from questioning a patient during a physical examination unduly restricts the physician's ability to obtain the information necessary to reach medical conclusions. The questioning of the plaintiffs by defense counsel during the taking of their depositions, the historical medical records, and the answers of the plaintiffs to interrogatories are no substitute for the answers to questions that a physician must pose to a patient during a physical examination. All of the questions that a medical doctor needs to ask, in particular the follow-up questions, cannot be determined in advance of the medical examination. The court will not prohibit the taking of oral medical histories by [defendant's doctor and] the physical therapist. [Defendant's doctor] and his staff may ask any questions necessary to conduct the examinations and to formulate opinions as to the medical conditions of the plaintiffs and the causes of their physical abnormalities.

*McCloskey v. United Parcel Service General Services Co.,* NO. CIV. 95-420-FR, 1997 WL 252339, *2 (D. Or. May 6, 1997). This Court recognizes that AstraZeneca's experts require the ability to conduct these examinations unhindered to obtain the information necessary to reach medical conclusions. AstraZeneca has already agreed to limit the examination to a history and physical, and "a simple blood test – which Plaintiffs need as part of routine good health care." As for attendance by counsel and a court reporter, there is no evidence that defense counsel was invited to attend Dr. Snow's questioning of Plaintiff Howell, nor that a court reporter attended and recorded the interview. Indeed, it appears to the Court that the attendance of additional persons at such an examination might

---

[5] Alternatively, AstraZeneca may move to schedule the endocrine examinations one week before trial in Orlando.

impact the validity of the examination, and would certainly make it more intrusive than necessary.

It is **ORDERED** as follows:

1. To the extent AstraZeneca seeks endocrine examinations of Plaintiffs, the Motion to Compel is **GRANTED in part**. Each Plaintiff is **ordered** to submit to a physical examination by an endocrinologist, consisting of a history and physical, and "a simple blood test – utilized as part of routine good health care, in each Plaintiff's hometown, at AstraZeneca's expense and at a time mutually agreed to by the parties. The Court expects counsel to cooperate in the scheduling of this examination, consistent with the spirit of the relief granted.

2. To the extent AstraZeneca seeks psychiatric examinations of Plaintiffs, the Motion to Compel is **DENIED in part**; however, each Plaintiff is precluded from introducing evidence that he or she suffers mentally or emotionally as a result of taking Seroquel and that his or her mental or emotional condition has improved absent the use of Seroquel. Plaintiffs are also precluded from cross-examining or making arguments as to AstraZeneca's failure to conduct an independent psychiatric examination of the Plaintiffs.

3. Plaintiffs' Motion for Protective Order is **GRANTED in part** and **DENIED in part** as set forth above.

**DONE** and **ORDERED** in Orlando, Florida on June 18, 2010.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record